# Exhibit 12

GPO Box 9990 IN YOUR CAPITAL CITY


Australian Government
Australian Taxation Office

Coin-Exch Pty Ltd
C/- Clayton Utz
Attn: Andrew Sommer
Level 15, 1 Bligh Street
Sydney   NSW   2000

| | | |
|---|---|---|
| Reply to: | | |
| Our reference: | | 1-526DVU8 |
| Contact officer: | | Andrew Miller |
| Phone: | | (02) 9354 6379 |
| Fax: | | (02) 6225 0929 |
| ABN: | | 31 163 338 467 |

22 June 2015

## Completion of audit
For your information and action

Dear Mr Sommer

We have completed the audit of Coin-Exch Pty Ltd for the period 1 July 2013 to 30 September 2013. Thank you for your time and cooperation during this audit.

The result of this audit is:

| | |
|---|---|
| Reduced activity statement credit | $3,787,429.00 |
| Administrative penalty (activity statement) | $1,893,714.50 |
| **Total amount payable** | **$5,681,143.50** |

### Our decision
The reasons for our decision were explained in the audit position paper sent to you on 26 September 2015. We have also enclosed our administrative penalty decision.

A penalty amount of $1,893,714.50 also applies. You will also receive a notice of assessment of administrative penalty shortly.

### What will happen next
Your objection to the amended assessment has been received and the officer managing your objection is speaking with you about this matter.

### Record keeping
You need to keep your business records for five years, including all records examined as part of this audit. We don't intend to audit your activity statement for the period 1 July to 30 September 2013 again.  However, we may need to look at the records again if new information suggests the need for further enquiries.

### Your right to object
You may object to:
- the assessment of a tax shortfall penalty
- a decision not to remit all of the tax shortfall penalty.

We understand that you have already objected to the assessment of revised GST amounts and another ATO officer is speaking with you in respect of this matter.

### How to lodge your objection
Your objection needs to:
- be in writing
- be signed and dated

70122.005612-09-2013

- state fully and in detail the grounds you are relying on, and
- be sent via:
  – the tax agent or business portals
  – fax to **1300 139 031**, or
  – mail to:
     Australian Taxation Office
     PO Box 3524
     ALBURY  NSW  2640

Time limits of 60 days or four years apply when lodging an objection.

Objection forms and further information about how to lodge an objection, including advice on time limits, agent declarations and documents to send with your objection form, are available from our website at **ato.gov.au** by searching for 'objection' or by phoning **13 28 66** between 8.00am and 6.00pm, Monday to Friday.

**More information**
If you have any questions, please phone **13 28 69** between 8.00am and 5.00pm, Monday to Friday, and ask for Andrew Miller on extension **46379**.

Yours sincerely


James O'Halloran
Deputy Commissioner of Taxation

**Reasons for our Penalty Decision**
**Coin-Exch Pty Ltd**
**ABN: 31 163 338 467**

**Shortfall amount**
Section 284-75 of Schedule 1 to the *Taxation Administration Act 1953* (TAA) imposes an administrative penalty if you make a statement to us which is false or misleading in a material particular whether because of things in it or omitted from it. A material particular is something that is likely to affect a decision regarding the calculation of an entity's tax-related liability or an entitlement to a credit or payment.

Where a shortfall arises as a result of making a false or misleading statement, the penalty is assessed in four stages:
- determine the shortfall amount,
- work out the base penalty amount,
- the base penalty amount may be increased and/or reduced, and
- consider remission of the penalty amount.

You made a statement to the Commissioner by lodging your activity statement. The statement was false or misleading as it incorrectly stated the assessed net amount. The assessed net amount includes any amount of GST that you have to pay. This is explained in the issue relating to the shortfall.

Your shortfall amount for penalty purposes is $3,787,429.

Miscellaneous Taxation Ruling MT 2008/1 *Penalty relating to statements: meaning of reasonable care, recklessness and intentional disregard* explains that you are required to take the same level of care to fulfil your tax obligations that could be expected of a reasonable person in your position, taking into account your own personal circumstances, knowledge, experience, education and skill.

You are not liable to a penalty for making a false or misleading statement if you exercised reasonable care in making the statement.

**Base penalty Amount**
Where a false or misleading statement results in a shortfall amount, the base penalty amount is worked out according to the level of care taken by the taxpayer in making the statement.

Additionally, as you are responsible for the authorised actions of your employees and representatives, their behaviour may also be relevant to determining your behaviour for penalty purposes.

MT2008/1 explains that the reasonable care test requires that a taxpayer to take the same care in fulfilling their tax obligations that could be expected of a reasonable ordinary person in their position. The standard of care required is commensurate with a reasonable person with the same background as the person making the statement.

Please refer to the following paragraphs in our decision with regards to the level of care taken by you at the time of, and leading up to, the making of the false or misleading statement.

MT 2008/1 explains that recklessness is gross carelessness. You act recklessly when your conduct clearly shows disregard of, or indifference to, consequences that are foreseeable by a reasonable person as being a likely result of your actions.

We have determined that you are liable to an administrative penalty because you behaved recklessly when you made the statement. This is because the facts show that you should have reasonably foreseen that your actions may have led to a shortfall amount.

We have taken the following into consideration:
- On 30 September 2013, you made a statement to the Commissioner when you lodged your BAS for the quarter ended 30 September 2013;
- Your statement to the Commissioner included purported transactions for the acquisition of a software licence from the Trustee for the Wright Family Trust (DeMorgan) which is considered an entity related to you. In evidence of the purported transactions, you provided tax invoices prepared by Craig Wright on behalf of DeMorgan, issued on 1 July 2013. On 11 August 2014, during an interview with Counsel engaged by the ATO, your Director and controlling mind, Craig Wright, has admitted that he backdated these invoices.
- You claim that the purported acquisition of the software licence is evidenced by these invoices; and also by an 'IP Deed of Assignment' with DeMorgan dated 15 September 2013 and an 'Intellectual Property Licence' dated 22 August 2013. Under the intellectual property licence, you claim to have acquired a licence to use software, said to be owned by Craig Wright who 'has clear title internationally based on the judgement from NSWSC 2013/245661'. This is understood this to be a reference to a New South Wales Supreme Court Case (number 2013/245661) which was not finalised until 6 November 2013; after the deed date of 22 August 2013. That is, the licence agreement makes specific reference to an event which had not yet occurred, raising questions as to its validity.
- DeMorgan purports to have acquired the software (which it licenced to you) from Craig Wright, pursuant to a contract dated 15 July 2013, which predates its existence and establishment as a trust. DeMorgan cannot have licenced to you something which it did not validly own. Craig Wright, in acting on your behalf, would have known this as he created documents relating to the sales and licencing of the software, such as invoices and contracts; many of which are signed or dated before any valid transaction could have occurred;
- You also claim to have paid up share capital of $41,500,000, as disclosed to ASIC. Craig Wright initially advised the ATO that your share capital was paid in Bitcoin (not dollars) and later, on 18 February 2014, advised that your share capital is in the form of equitable interests in a Seychelles Trust which holds Bitcoin. You claim that this share capital was paid to you by Craig Wright under a 'Deed of Assignment of Equitable Interests', though this does not explain how the capital was paid, for shares owned by other entities. You purport to have expended a significant portion of this share capital as consideration paid to DeMorgan for purchase of the aforementioned software licence.
- Craig Wright purports to have received a loan of 650,000 Bitcoin from the Seychelles Trust pursuant to a Deed of Loan entered into with the Trustee for the Seychelles Trust; a company called Design by Human Ltd (DBH). However, records show Craig Wright was only informed of the existence of this company on a date after the purported Deed of Loan was entered into. Furthermore, the Deed of Loan was not validly executed by an authorised person, and signed on a date where DBH was merely a dormant shelf company. As it was Craig Wright who modified the Directorship of DBH in January 2014 (after the date you made this statement to the Commissioner) he had knowledge that the person purportedly signing the Deed of Loan on behalf of DBH did not have authority to do so and therefore that the deed was invalid.
- Craig Wright may claim that he was not reckless as he sought a private ruling from the Tax Office in relation to transactions involving you and your related entities. However, his ruling request related to the transfer of Bitcoin and therefore bears no resemblance to your purported transactions. There is clearly a difference between transferring Bitcoin and transferring interests in an offshore trust and Craig Wright would not have entered into the purported arrangement involving offshore trust interests if it did not offer a benefit of some kind. The private ruling issued to Craig Wright in December 2013 explained that GST would be levied on supplies of Bitcoin and therefore if you had acquired the purported software licence and paid in Bitcoin, you would not have been entitled to the GST refund you claimed. The effect of your purported arrangement involving transferring interests in an offshore trust is that, prima facie, you are entitled to claim a refund, removing the effect of GST on Bitcoin. This is understood to be the benefit Craig Wright was seeking to obtain.
- Furthermore, information obtained from Her Majesty's Revenue and Customs (HMRC) confirms that your Director, Craig Wright, only obtained control of DBH in January 2014 (after the ATO issued its private ruling) and had no prior involvement with the company. It also suggests he backdated the Directorship of Uyen Nguyen and Dave Kleiman. He would therefore have been

- aware that the company could not have entered into the Deed of Loan on 23 October 2012 and as a result, that the purported rights could not have been transferred as consideration.
- Your lodged BAS claimed a refund of $3,787,429; purported to be the GST paid on your acquisition of the aforementioned software licence from DeMorgan. In claiming such a substantial refund, a reasonable person would take necessary steps to ensure the statement they are making is correct. Craig Wright, as your representative, has not shown this level of care.
- Craig Wright made the following statement to us on 28 March 2014 in response to questions asked of one of your related entities. '*The agreements are all centred on the following mantra: Bitcoin is not to be sold or transacted… in any country that is not free. The least free of any country is that which taxes money. Any country that taxes money is to be avoided. Fiat is not true money. Bitcoin and Gold are… If a value added tax is applied, we will create a system that undermines this through the use of legal avenues. We will create financial instruments based on the item we wish to promote, but as a derivative that undermines the effect of the tax*'. This mantra shows a level of indifference to the law. The arrangement involving interests in an offshore trust undermines the effects of tax which would otherwise be payable on transactions.
- Additionally, you have not demonstrated an ability to earn income other than claiming ATO refunds, you have not traded with any third parties or employed any staff. As set out in our decision relating to the shortfall, your intended business activities could not turn a profit and there has not been any real or lasting contribution to your share capital by your purported shareholders. There is therefore, no evidence that you were conducting an enterprise during the period for which the statement was made.

This finding is consistent with paragraphs 28, 56, 61, 79, 92, 102, 105, 106 and example 8 contained in MT 2008/1.

Paragraph 56 says that '*in determining whether a person having special skill or competence has breached the standard of reasonable care, the appropriate benchmark is the level of care that would be expected of an ordinary and competent practitioner practising in that field and having the same level of expertise*'. Craig Wright, acting on your behalf, has a Masters Degree in Law, yet made this statement to the Commissioner despite knowledge of the facts and details in which the purported Deed of Loan was entered into. This includes the fact that it was only in January 2014 that he had any involvement with DBH, prior to which it was a dormant shelf company. Paragraph 79 explains that if an employee fails to meet the reasonable care standard, the employer is liable for that failure.

Paragraph 61 explains that reasonable care can be taken when an entity makes a genuine effort to research and support a position. However, as set out above, the private ruling sought by Craig Wright is not commensurate with your purported transactions as you claim to have dealt with equitable interests in a trust, not Bitcoin. Craig Wright has not made a genuine effort to research and support a position.

Paragraph 92 states that the size of the shortfall arising from the false or misleading statement indicates the magnitude of the risk. We consider your claimed refund of $3,787,429 to be significant and therefore requiring a higher standard of care. However, this standard of care has clearly not been taken.

In *Hart v FC of T*[1] the Full Federal Court endorsed the comments of Cooper J in *BRK (Bris) Pty Ltd v Federal Commissioner of Taxation*[2] who said:

> *Recklessness in this context means to include in a tax statement material upon which the Act or regulations are to operate, knowing that there is a real, as opposed to a fanciful risk that the material may be incorrect, or be grossly indifferent as to whether or not the material is true and correct, and a reasonable person in the position of the statement-maker would see there was a real risk that the Act and regulations may not operate correctly to lead to the assessment of the proper tax payable because of the content of the tax statement.*

---

[1] Hart v FC of T (2003) 131 FCR 2003
[2] BRK (Bris) Pty Ltd v Federal Commissioner of Taxation [2001] FCA 164

Paragraphs 105 and 106 of MT2008/1 summarise the issues in Hart explaining the finding that a reasonably informed person would address the possibility that no business was being carried on and that a rational consideration of the facts may assist in concluding whether a business is being carried on. You have not adequately addressed the possibility that no business was being conducted for the relevant tax period. You and Craig Wright knew there would be a real risk that your statement may be incorrect and, according to the 'mantra', were grossly indifferent to the application of the law.

Section 284-90 of Schedule 1 to the TAA sets a base penalty amount of 50% of your shortfall amount when the shortfall results from recklessness.

**Increase or reduction of the base penalty amount**
The base penalty amount is increased or reduced in accordance with criteria set out in the law.  In your case there are no facts that warrant any change to the base penalty amount.

**Remission considerations**
Section 298-20 of Schedule 1 to the TAA enables us to remit all or part of the penalty in appropriate circumstances. To guide us in making these decisions, the Commissioner has issued several Law Administration Practice Statements.

Law Administration Practice Statement PS LA 2012/5 *Administration of penalties for false or misleading statement that result in shortfall amounts* outlines the circumstances in which the Commissioner considers it fair and reasonable to remit penalties applying to false or misleading statements resulting in shortfall amounts.

PS LA 2012/5 confirms that our remission decisions need to consider that a major objective of the penalty regime is to promote consistent treatment by reference to specified rates of penalty and that objective would be compromised if the penalties imposed at the rates specified in the law were remitted without just cause. Remission is only appropriate to the extent that the prescribed rates of penalty cause unintended or unjust results.

We have considered remission under PS LA 2012/5 which gives guidance on grounds for remission. Further, remission was also considered under the principles of the ATO compliance model and the Taxpayers' Charter. In your case we have decided that there are no facts that warrant any remission of penalty.

The following tables are a summary of the shortfall identified in the audit and the level of penalty to be applied to each.

## Issue List

| Issue # | Issue description | Tax type | Issue Shortfall $ | * Penalty Shortfall $ | Total Penalty $ |
|---|---|---|---|---|---|
| 1 | Overstated Acquisitions | Goods and services tax | 3,787,429 | 3,787,429 | 1,893,714.50 |
| | Total (all issues) | | 3,787,429 | 3,787,429 | 1,893,714.50 |

* Credit offsets applied within the same tax period result in differences between the issue shortfall and penalty shortfall amounts. Credit offsets cannot be applied across different tax periods and may result in the total penalty shortfall being higher than the total issue shortfall. The *Summary of activity statement amendments* provides issue details for each tax period.

## Summary of penalty decision – net amount*

| Period | Issue # | Penalty Shortfall $ | Behaviour | Base Penalty % | Base Penalty Amount $ | Increase $ | Reduction $ | Remission $ | Penalty Payable $ |
|---|---|---|---|---|---|---|---|---|---|
| 1 July 2013 – 30 September 2013 | 1 | 3,787,429 | Recklessness | 50% | 1,893,714.50 | - | - | - | 1,893,714.50 |
| Totals (all periods) | | 3,787,429 | | | | | | | 1,893,714.50 |

* **Net amount** includes any goods and services tax (activity statement labels 1A and 1B), wine tax (activity statement labels 1C and 1D) and luxury car tax (activity statement labels 1E and 1F) applicable to you. If you are a GST instalment payer, the total GST instalments paid by you (activity statement label 1H) are taken into account in working out your net amount.