### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

**Case No. 18-cv-80176**

IRA KLEIMAN,
as personal representative of
the estate of David Kleiman,

      Plaintiff,

v.

CRAIG WRIGHT,

      Defendant.

_____/

## <u>MOTION TO DISMISS THE COMPLAINT</u>

Dr. Craig Wright moves to dismiss the complaint filed by plaintiff Ira Kleiman, brother

of the late Dave Kleiman and personal representative of his estate. Plaintiff's complaint is a thin

soup of supposition, speculation, conflicting allegations, hearsay and innuendo, all of which arise

from plaintiff's assumption that his late brother owned a great many bitcoins when he died,

bitcoins that plaintiff cannot cash in because his brother failed to share the computer codes

needed to access them. The complaint (and its exhibits) fairly scream these facts, but instead

attempt to shakedown Dr. Wright for the purported value of bitcoins and intellectual property

owned by Dr. Wright. That attempted shakedown would require this Court to void two

judgments of the Supreme Court of New South Wales, Australia, on grounds that they were

procured by fraud, in abject violation of the fundamental rule that a court that supposedly was

defrauded *is the court that gets to decide* whether it was defrauded. That rule is obeyed by courts

of different districts, states, and nations, whether as a matter of interstate or international comity.

But the complaint is inherently and fatally infirm for numerous other reasons, including

the facts that plaintiff lacks standing, the Australian judgments preclude this action, Dr. Wright is

not subject to personal jurisdiction, the complaint fails to state any legally sufficient claims, and this action is entirely based on allegations of which plaintiff has no personal knowledge.

To summarize, the complaint alleges that Dr. Wright and Dave Kleiman were involved in the creation of Bitcoin and had an oral partnership to mine bitcoins and create intellectual property. It alleges that after Dave Kleiman died, his share of bitcoins and intellectual property allegedly owned by the purported partnership were improperly taken by Dr. Wright. Plaintiff has no personal knowledge of any of these allegations, because Dave Kleiman kept his involvement in Bitcoin a secret from his family, including the plaintiff. In fact, plaintiff learned about Dave Kleiman's involvement in Bitcoin *from Dr. Wright*, who emailed condolences to Dave's father after Dave's death, and told him that Dave might have left a legacy in the form of bitcoins and codes on hard drives held by the estate. No good deed goes unpunished.

After seeing Dr. Wright's email to his father, plaintiff searched for what he hoped was a fortune in bitcoins on his brother's hard drives, only to find that any possible fortune was inaccessible because Dave Kleiman, an encryption specialist, had not only failed to leave the codes to the estate, but had encrypted his hard drives. Unable to access Dave Kleiman's bitcoins, Ira Kleiman trained his sights on Dr. Wright's bitcoins. He then mined Australian tabloids for the raw materials needed to cook up his stew of contradictory, absurd, and legally insufficient allegations.

 Dr. Wright moves to dismiss the complaint because plaintiff lacks standing to bring his claims, which, are not pleaded with legal sufficiency and are precluded by two prior judgments entered by the Supreme Court of New South Wales, Australia in 2013. Moreover, there is no personal jurisdiction over Dr. Wright in Florida, and the potential witnesses and sources of evidence in this case are not subject to compulsory process in Florida.

The complaint failed to identify a single witness in Florida with personal knowledge of its allegations. In contrast, it identifies at least 16 potential witnesses, companies, government officials and documents located in Australia, the purported situs of Dr. Wright's allegedly wrongful conduct. None of those witnesses, companies, government officials or documents are subject to compulsory process by any court located in Florida. Thus, even if plaintiff had standing to bring his claims, even if the Court could assert personal jurisdiction over Dr. Wright, even if plaintiff had alleged legally sufficient claims, and even if those claims were not precluded by prior judgments of Australian courts, dismissal still would be required on grounds of forum non conveniens and international abstention.

## I.    THE ALLEGATIONS OF THE COMPLAINT

Plaintiff Ira Kleiman tells a disjointed, confusing, and contradictory tale in his complaint. By his own admission, he was not involved in any of the events alleged except for digital communications with Craig Wright from February 15, 2014, to about October 9, 2015 (Compl. ¶¶ 104-16, Exs. 3, 18), and, at the time of his brother's death, was not aware of Dave Kleiman's alleged involvement in Bitcoin. *Id.* ¶ 5.[1] We do our best to put plaintiff's secondhand allegations into an orderly narrative, taking as true—***only*** for purposes of this motion—the complaint's sloppy pastiche of hearsay, stolen emails, information published on unreliable internet web sites, and improperly leaked transcripts of secret Australian government investigative interviews. *See, e.g.*, ¶ 52.

---

[1] We adopt the complaint's use of the term "Bitcoin" to refer to "the protocol, software, and community," and the term "bitcoins" to refer to the "units of exchange." Compl. ¶ 1 n. 1.

### A.  Dr. Wright and Dave Kleiman's Relationship

Dave Kleiman and Craig Wright met in an online cryptography forum in 2003 and became friends. Compl. ¶¶ 43, 51. Both men were obsessed with cryptography and data security. *Id*. ¶ 2. Craig Wright is an Australian computer scientist who lives in London. *Id*. ¶¶ 2, 14, 41. Dave Kleiman was an IT security expert from Palm Beach who died on April 26, 2013. *Id*. ¶¶ 2, 8, 39. They kept their relationship hidden from most of their family and friends, and "communicated almost exclusively through various private email accounts." *Id*. ¶¶ 2, 4.[2]

### B.  Dr. Wright and Dave Kleiman's Involvement in Bitcoin

The complaint suggests that Craig Wright is or may be "Satoshi Nakamoto," the pseudonymous inventor of Bitcoin. Compl. ¶¶ 4, 42, 52, 53. During 2008, Wright asked Dave Kleiman to help in creating the Bitcoin blockchain. *Id*. ¶¶ 46-47. The following year, Dave told plaintiff he was helping a "wealthy foreign man" create "digital money." *Id*. ¶ 49. The complaint alleges that Wright and Kleiman had mined more than a million bitcoins by the time of Kleiman's death (*id*. ¶ 55) and "accumulated a vast wealth of bitcoins from 2000 through 2013." *Id*. ¶ 4.

### C.  The Formation and Dissolution of W&K Info Defense and Research LLC

On February 14, 2011, Kleiman formed W&K Info Defense Research LLC ("W&K") in Florida, listing himself as the registered agent and sole member, using his home address as the place of business. Compl. ¶ 56. The complaint also suggests that Kleiman may have owned only half of W&K (*id*. ¶ 57) and alleges that Wright was Kleiman's "former business partner in W&K . . ." *Id*. ¶ 14. W&K was administratively dissolved in September 2012.

---

[2] The complaint does not allege that the two men ever met in person anywhere or that Wright has ever been in Florida.

W&K was reinstated almost a year after Dave Kleiman's death by a person named Uyen Nguyen, who removed Dave Kleiman as W&K's registered agent, added herself as registered agent, manager, and secretary for W&K, and added Coin-Exch Pty Ltd. as director. Compl. ¶ 60, Ex. 5, at 2.[3] On September 23, 2016, W&K was again administratively dissolved. *Id*. ¶ 61.

### D.  The Alleged Scheme to Obtain Bitcoins and Intellectual Property

The complaint alleges that, after Dave Kleiman's death, Dr. Wright wrongfully obtained possession and control of Kleiman's share of intellectual property and of bitcoins "that belonged to Dave and [Dr. Wright] jointly through W&K." *Id*. ¶ 75. Specifically, the complaint alleges that Dr. Wright fabricated contracts between himself and W&K with the intent to use those contracts to fraudulently cause the Supreme Court of New South Wales, Australia, to issue judgments awarding him sole rights to intellectual property developed by W&K. *Id*. ¶¶ 6-7, 90-101.

### E.  The Allegedly Fabricated Contracts

The complaint attaches and cites three contracts it claims were fabricated by Dr. Wright. Compl. Exs. 4, 10-11. The first is an April 2011 deed between Dr. Wright and W&K entitled "Intellectual Property License Funding Agreement" (the "Deed"). *Id*. Ex. 10, at 2-3, 5 [¶ 1]. Under the terms of the Deed, Dr. Wright allegedly (1) transferred 215,140 bitcoins to W&K (*id*. Ex. 10, at 3 [¶ F]), (2) loaned hardware to W&K that it could use to mine bitcoins at an anticipated rate of 12,000 bitcoins (or "BTC") per month (*id*. Ex. 10, at 4 [¶¶ L, P]), and (3) licensed intellectual property to W&K, including software that W&K could improve and use in

---

[3] The "Title Abbreviations" on the Florida Division of Corporations' website define "M" as Manager, "S" as Secretary, and "D" as "Director." http://dos.myflorida.com/sunbiz/search/guides/corporation-records/title-abbreviations/.

the course of its business "in Australia and/or Overseas . . . ." *Id.* Ex. 10, at 3 [¶ B-C, H-J], 7 [¶ 3], 9 [¶ 5]. The Deed values the software at 20 million AUD. *Id.* Ex. 10, at 7 [¶ 3].

The Deed required W&K to repay Dr. Wright 250,000 BTC by June 30, 2013, another 50,000 BTC by December 30, 2013 (Compl. Ex. 10, at 7 [¶ 3(a)-(b)]), and assign and transfer to Dr. Wright all "right title and interest to the improvements" to the software, "including all claims as they relate to the improvements." *Id.* Ex. 10, at 5 [¶ 1(e)]; 9 [¶ 5]. The Deed has choice-of-law and forum-selection clauses selecting the law of New South Wales, Australia, and specifying that the parties agreed to "submit to the non-exclusive jurisdiction of the courts of that state." *Id.* Ex. 10, at 6 [¶ 2].

The parties to the second contract are Dr. Wright, W&K, and Kleiman. Compl. Ex. 4. It is entitled "Contract for the Sale of Shares of a Company Owning Business," and is dated April 2, 2013 (the "New Venture Contract"). *Id.* Ex. 4, at 2-3. Like the Deed, the New Venture contract includes choice-of-law and forum-selection clauses selecting the law of New South Wales, Australia, and specifying that the parties agreed to "submit to the non-exclusive jurisdiction of the courts of that state." *Id.* Ex. 4, at 4 [¶ 1].

The New Venture Contract states that it reduces W&K's repayment amount under the Deed by 49,500 BTC (Compl. Ex. 4, at 5 [¶ 2(c)]), and creates a framework for a future venture in Australia between Kleiman and Dr. Wright called Coin-Exch Pty Ltd ("Coin-Exch"). *Id.* Ex. 4, at 5 [¶ 4(b)-(d)]. It specifies that Kleiman would receive a 49.5% interest in Coin-Exch under the New Venture Contract, in exchange for transferring his shares in W&K and 323,000 BTC to Dr. Wright, who then would transfer them to Coin-Exch as capital. *Id.* Ex. 4, at 5 [¶ 4(b)-(c)].

The third allegedly fabricated contract is entitled "Deed of Loan" and dated October 23, 2012. Compl. ¶ 76(b). Plaintiff alleges the Deed of Loan demonstrates conflicts between the

three contracts. *Id*. ¶ 84. Neither Kleiman nor W&K is a party to the Deed of Loan (*id*. Ex. 11), which contains a handwritten note that plaintiff claims is in Dr. Wright's handwriting. *Id*. ¶ 73. According to the complaint, the note says: "as agreed, all wallets to be held in UK in trust until all regulatory issues solved and Group Company formed with Dave K and CSW." *Id*.

### F.  The Judgments Rendered by the Supreme Court of New South Wales, Australia

Kleiman died before the New Venture Contract's deadline for W&K to repay Dr. Wright for the bitcoins he had transferred to W&K through the Deed and to transfer Kleiman's interests in the 323,000 BTC to Dr. Wright as capital to be held by Coin-Exch. Compl. ¶ 6, Ex. 4, at 5 [¶ 2(c)-3(a)], 5 [¶ 4(a)].

The complaint alleges that Dr. Wright filed a statement of claim against W&K on July 25, 2013, in the Supreme Court of New South Wales, case number 2013/225983 (the "First Australian Lawsuit"). Compl. Ex. 13, at 8-11. This First Australian Lawsuit states that, by a contract dated October 27, 2008, W&K agreed to pay Dr. Wright for property and consulting services to complete research. *Id*. Ex. 13, at 9. The "contract was executed with an agreement that all created Intellectual property reverts to the ownership of [Wright] with interest if the project concludes without the assignment of shares in [W&K]." *Id*.

On November 6, 2013, the Supreme Court of New South Wales entered a judgment against W&K in the First Australian Lawsuit, with the consent of the parties, finding that W&K owed Wright 28,254,666.00 AUD. Compl. Ex. 16, at 2. The court noted "the agreement of the parties that the plaintiff will accept transfer of Intellectual property held by the plaintiff in full and final satisfaction of the judgment." *Id*. The complaint alleges that W&K's consent to the First Australian Judgment was invalid because of a lack of authorized consent. *Id.* ¶ 99.

According to the complaint, on August 13, 2013, Dr. Wright filed a second statement of claim against W&K in the Supreme Court of New South Wales, case number 2013/245661 (the "Second Australian Lawsuit"). Compl. Ex. 13, at 2-7. The Second Australian Lawsuit states that Dr. Wright had loaned W&K money and that W&K had defaulted on a contract dated January 8, 2009, under which W&K had "agreed to pay [Wright] for property and consulting services to complete research." *Id.* Ex. 13, at 3. The Second Australian Lawsuit also alleges that the "contract was executed with an agreement that all created Intellectual property reverts to the ownership of [Wright] with interest if the project concludes without the assignment of shares in [W&K]," and that the "IP is software and code used in the creation of a Bitcoin system." *Id.* Ex. 13, at 4. According to the complaint, the Second Australian Lawsuit alleged that W&K was "unable to complete its responsibilities due to the death of its director, Mr. Kleiman," and, after depreciation for hardware provided to W&K, Dr. Wright was entitled to a judgment of 28,533,016.19 AUD. *Id.*

The Supreme Court of New South Wales entered a judgment in the Second Australian Lawsuit, dated August 28, 2013, against W&K of 28,534,049.79 AUD in favor of Dr. Wright. Compl. Ex. 15. The court "note[d] the agreement of the parties that [Dr. Wright] will accept transfer of Intellectual property held by [him] in full and final satisfaction of the judgment." *Id.* W&K's consent is signed J. Wilson, who is listed as an "authorized officer," but the complaint alleges that J. Wilson was not authorized and that W&K's consent was invalid. *Id.* ¶ 98.

### G.  The Complaint Alleges that Dave Kleiman Kept Secret His Involvement in Bitcoin and His Relationship with Dr. Wright

According to the complaint, Dave Kleiman never told his family about his involvement in Bitcoin and his relationship with Dr. Wright (Compl. ¶ 105), except for once allegedly telling plaintiff that he was creating "digital money" with a "wealthy foreign man." *Id.* ¶ 49.

### H.  Alleged Communications Between Dr. Wright and Plaintiff

The complaint alleges that Dr. Wright initiated contact with the Kleiman family when he emailed Kleiman's father on February 11, 2014. Compl. ¶¶ 104-05, Ex. 17, at 2. According to the complaint, plaintiff took over the email exchanges with Dr. Wright shortly after the first email contact from Wright. *Id.* ¶ 106. It was in these email exchanges that Dr. Wright alerted plaintiff to Dave Kleiman's activities, including his bitcoin mining, all of which were unknown to plaintiff. *Id.* ¶¶ 8, 104-05. The complaint alleges that Dr. Wright told plaintiff that Dave Kleiman's estate was entitled to and would receive shares in Coin-Exch (*id*. ¶ 108) and that Dr. Wright offered to make plaintiff a director of Coin-Exch, permit him to inspect its books and records, and asked him how Dave Kleiman's shares should be transferred to the estate. *Id.* Ex. 18, at 12, 19-20.

The complaint alleges that plaintiff was contacted by the Australian Tax Office (the "ATO") on April 15, 2014. Compl. ¶¶ 110-12. An ATO employee told plaintiff that ATO was investigating Dr. Wright and gave him copies of the contracts between Dr. Wright and W&K. *Id.* ¶ 110. These statements from the ATO representative made plaintiff suspicious. *Id*. at 111-12.

Plaintiff and Dr. Wright exchanged emails discussing different proposals and counter-proposals related to Dave Kleiman's rights to bitcoins and intellectual property. *Id.* ¶¶ 109-15; Ex. 18, at 10-15, 20-21. Plaintiff alleges that Dr. Wright ceased responding to his emails on October 9. *Id*. ¶ 116.

### I.  Plaintiff's Allegations About Jurisdiction and Venue

Plaintiff makes the generalized and conclusory allegations that Dr. Wright, a citizen of Australia and resident of London, England, is subject to personal jurisdiction in Florida because he (1) is Kleiman's "former business partner in W&K[], a company operating in the state of

Florida and formed pursuant to its laws," (2) "committed tortious acts within the state[,]" and (3) "caused injury to persons and property within this state at or about the time he was engaged in solicitation and services activities within the state." Compl. ¶ 14. As for venue, plaintiff alleges that "a substantial part of the events giving rise to these claims occurred in this District," including "the mining of a substantial amount of bitcoins through the use of computer equipment located within this District," and the development of certain blockchain related intellectual property within this District." *Id.* ¶ 16.

## III.  ARGUMENT

### A.  Dismissal is Required for Lack of Standing, Because Members of a Limited Liability Company Cannot Sue Individually to Recover Company Property from Another Member or Third Party

Plaintiff alleges that he is entitled to Dave Kleiman's share of the intellectual property and bitcoins allegedly belonging to W&K because Kleiman once was a member of W&K. Compl. ¶¶ 75, 121, 128, 133, 139, 143. But even if Kleiman had not let W&K be administratively dissolved the year before his death, this plaintiff would lack standing to bring the claims for W&K's property because members of a limited liability company ("LLC") lack standing to sue other members or third parties to recover LLC assets. *See* Fla. Stat. § 605.0110(4). The member of an LLC must bring his or her claims derivatively on behalf of the company. *See* Fla. Stat. § 605.0803. Moreover, plaintiff cannot, in any event, bring derivative claims against W&K because a former member of an LLC lacks standing to bring derivative claims on its behalf; neither Kleiman nor his estate were members of W&K when the complaint in this action was filed. *See* Compl. Ex. 5.

"Standing is 'the threshold question in every federal case.'" *In re Whittle*, 449 B.R. 427, 429 (Bankr. M.D. Fla. 2011) (quoting *Maverick Media Grp., Inc. v. Hillsborough Cnty.*,

Fla., 528 F.3d 817, 819 (11th Cir.2008). The plaintiff must prove standing, which is determined as of "the time the plaintiff's complaint is filed." *See Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1340 (11th Cir. 2014). Here, plaintiff seeks to recover bitcoins and intellectual property allegedly once owned by W&K, a Florida LLC governed by Florida Statutes. *See* Fla. Stat. § 605.0110(1). The Florida statute broadly defines an LLC's property as "[a]ll property originally contributed to the limited liability company or subsequently acquired by a limited liability company by purchase or other method." *Id.* Only W&K could sue directly to recover its alleged assets. Under Florida law, LLC members have "no interest in any specific limited liability property." Fla. Stat. § 605.0110(4). Thus, an LLC member suing for recovery of its property must bring a derivative action on the LLC's behalf. *See In re Whittle*, 449 B.R. 427, 430 (Bankr. M.D. Fla. 2011) (members of LLC lacked standing to bring direct action against another member for his alleged misuse of LLC property); *see also Dinuro Inv., LLC v. Camacho*, 141 So. 3d 731, 739 (Fla. 3d DCA 2014) (shareholder cannot maintain direct action based on alleged injuries that "flow subsequently from an initial harm to the company").

But plaintiff did not and could not bring a derivative action. A "derivative action to enforce a right of a limited liability company may be maintained *only* by a person who is a member at the time the action is commenced." Fla. Stat. § 605.0803 (emphasis added). Plaintiff admits that neither Kleiman nor his estate were members of W&K when this action was commenced on February 2, 2018. Compl. ¶¶ 60-61, Ex. 5. Kleiman created W&K in 2011, allowed it to be administratively dissolved, and never reinstated it. *See id.* He died in April 2013 (*id.* ¶ 5), and was removed as a member of W&K in 2014, when it was reinstated by another person. *Id*. Ex. 5. It was administratively dissolved again in 2016. *Id.* ¶¶ 60-61, Ex. 5. The

complaint itself alleges that plaintiff was notified that Kleiman resigned from W&K before he died. *Id*. ¶ 111, Ex. 18, at 19-20.

Plaintiff also cannot allege or demonstrate standing under Fla. Stat. § 605.0801, which governs actions among LLC members. By its own terms, that statute applies only to members, and plaintiff was not a member of W&K when he brought this lawsuit. *See* Compl. Ex. 5. Moreover, plaintiff did not (and could not) allege that Dr. Wright is a member of W&K. *Id.* But even if both (instead of neither) of the parties had been members of W&K when plaintiff filed this action, section 605.0801 would have required alleging an individual injury independent of any injury suffered by W&K. A member plaintiff must "plead and prove an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited liability company." Fla. Stat. § 605.0801(2). As a matter of law, an LLC member has not alleged and cannot demonstrate an independent injury where the member asserts a right to recover the LLC's property. *See In re Whittle*, 449 B.R. at 430 (LLC members failed to allege independent injury where they alleged that member defendant had wrongfully obtained funds from the LLC); *cf* Compl. ¶¶ 75, 121, 128, 133, 139, 143 (asserting a right to recover Kleiman's share of LLC property that allegedly was wrongfully taken from W&K). Plaintiff has failed to (and cannot) allege, much less prove, standing.

### B. Plaintiff's Claims Arising from Dr. Wright's Possession of the Intellectual Property Are Barred by Res Judicata Because They Were Already Decided by the Supreme Court of New South Wales, Australia

Plaintiff—who never knew a thing about what Kleiman and Dr. Wright were working on, let alone their alleged friendship, plans, or agreements—asks this Court to disregard two judgments of the Supreme Court of New South Wales, Australia, against W&K in cases filed there by Dr. Wright almost five years ago. Those judgments were rendered by a common law

court that employs procedural safeguards similar to this Court's, and they bar plaintiff's claims. *See* Expert Affidavit of G. Grieve, attached as Exhibit A, ¶¶ 30-39.

The Supreme Court of New South Wales has already entered judgments that Dr. Wright is the rightful owner of the intellectual property that plaintiff claims is W&K's. W&K assigned that intellectual property to Dr. Wright in contracts between them, appeared as a defendant before the Supreme Court of New South Wales in two cases brought by Dr. Wright (together, the "Australian Lawsuits"), conceded that Dr. Wright was the owner of the intellectual property under the contracts, and then consented to transfer to Dr. Wright title to that intellectual property in full and final satisfaction of debts exceeding 40 million AUD in judgments entered by the Supreme Court of New South Wales (the "Australian Judgments") against W&K in Dr. Wright's favor.

As demonstrated above, plaintiff, suing on behalf of Dave Kleiman's estate, lacks standing to sue for the property of W&K, and his claims must therefore be dismissed. But even if he were to attempt to amend and state claims in the name of the real party in interest, W&K, those claims would be barred by the res judicata effect of the Australian Judgments, which would preclude any alleged claims of W&K arising from Dr. Wright's ownership and possession of W&K's intellectual property.

A federal court sitting in diversity must apply forum law to determine whether claims are barred by res judicata. *Andreu v. HP Inc.*, 272 F. Supp. 3d 1329, 1332 (S.D. Fla. 2017). Under Florida law, claims are barred by a prior judgment if the following "four identities" are present: "1) identity of the thing sued for; 2) identity of the cause of action; 3) identity of the persons and parties to the actions; and 4) identity of the quality or capacity of the person for or against whom

13

the claim is made." *ICC Chem. Corp. v. Freeman*, 640 So. 2d 92, 93 (Fla. 3d DCA 1994);

*Charles v. Citizens Prop. Ins. Corp.*, 199 So. 3d 495, 496 (Fla. 3d DCA 2016).

### 1.   There is Identity of the Thing Sued For

The complaint seeks damages for Dr. Wright's purportedly wrongful possession of

W&K's intellectual property. According to plaintiff, Dr. Wright wrongfully obtained that

intellectual property from W&K in the Australian Lawsuits. *See* Compl. ¶¶ 75-76, 98-99. Thus,

the W&K intellectual property at issue in this lawsuit is the same intellectual property that was at

issue in the Australian Lawsuits. There is "identity of the thing sued for."

### 2.   There is Identity of Parties

Plaintiff appears here as Kleiman's personal representative and alleges that Kleiman, as a

member of W&K, would have been entitled to some or all of W&K's intellectual property. *See*

Compl. ¶¶ 13, 56-57, 74,121. As demonstrated above, plaintiff lacks standing to sue for W&K's

intellectual property. The real party in interest as to those claims is, of course, W&K. But, even if

plaintiff were allowed to amend to state a derivative claim, such amendment would conclusively

establish the identity of parties between those in the Australian Judgments and those in an

amended complaint identifying W&K as the real party in interest suing Dr. Wright, the named

defendant here.

### 3.   There is Identity of Causes of Action

For purposes of res judicata, the test for identity of causes of action is identity of facts

necessary for the maintenance of the actions. *ICC Chemical Corp.*, 640 So.2d at 92. Although

this test sounds extremely narrow, it is not. Identity of facts necessary for the maintenance of the

actions is properly construed to mean that the evidence used to prove the claims in the second

suit would essentially be the same as the evidence used to prove the claims in the first suit. *See*

14

*Gordon v. Gordon*, 59 So.2d 40, 44-45 (Fla.), *cert. denied*, 344 U.S. 878 (1952). The claims raised in the second suit need not be the same as the claims raised in the first suit. *See Sodikart USA v. Geodis Wilson USA, Inc.*, 2014 WL 3928555, at *2 (S.D. Fla. Aug. 12, 2014) ("Florida law does not require the causes of action to be duplicative . . ."); *see, e.g.*, *ICC Chem. Corp.*, 640 So.2d 92 (fraudulent misrepresentation claim held barred by res judicata, because the question whether a fax was fraudulent was related to the defense of bad faith and coercion claims in the first lawsuit).

The Australian Judgments for Dr. Wright against W&K were based on his allegations that W&K owed him contractual rights. W&K's breach of the contracts entitled him to W&K's intellectual property in satisfaction of amounts owed him. Here, plaintiff alleges that W&K is entitled to damages because Dr. Wright misappropriated W&K's intellectual property, was thereby unjustly enriched, and wrongfully took possession of it, all based on the theory that the contracts between Wright and W&K are invalid because they are false and fraudulent. To maintain its claims, plaintiff must re-litigate the validity of the very same contracts on which the Australian Judgments are based.

The validity of the contracts in question is as critical to the Australian Judgments as it is to the plaintiff's claims here. The existence and validity of the contracts is the central fact as to the key question in both actions: whether Wright is the rightful owner of the W&K intellectual property. Because the contracts themselves are the key to both actions, and because the evidence about their validity must be the same, these claims meet the identity requirement.

### 4. *Identity of Quality and Capacity*

Finally, this action is brought against Dr. Wright, who was the plaintiff in the Australian Lawsuits. If it were brought derivatively for W&K, plaintiff would sue for W&K in its capacity

as a corporation, the same capacity in which W&K was sued in the Australian Lawsuits. *See, e.g., Gomez-Ortega*, 670 So. 2d at 1108 (action by condominium owners held barred by condo association's prior action). Thus, there is identity of the status of the persons suing and being sued.

### 5.   *Plaintiff's Claims Are Barred Because W&K Did Not Raise Them in the Australian Cases*

"Res judicata applies to all matters actually raised and determined as well as to all other matters which could properly have been raised and determined in the prior action, whether they were or not." *ICC Chem. Corp. v. Freeman*, 640 So. 92, 93 (Fla. 3d DCA 1994); *Gomez-Ortega v. Dorten, Inc.*, 670 So. 2d 1107, 1108 (Fla. 3d DCA 1996). W&K could have defended against Dr. Wright's claim of entitlement to W&K's intellectual property on any available grounds, including the allegations that plaintiff raises in the complaint challenging the contracts between Wright and W&K. Thus, plaintiff would be barred from raising those claims on W&K's behalf in this lawsuit even if he attempted to amend to correct his standing problem. *Charles v. Citizens Prop. Ins. Corp.*, 199 So. 3d 495, 496 (Fla. 3d DCA 2016) (party that failed to address dispositive issue in prior lawsuit was barred from bringing subsequent action); *Media Placement, Inc. v. Combined Broad., Inc.*, 659 So. 2d 1328, 1328 (Fla. 3d DCA 1995).

### C.  The Court Should Dismiss the Complaint on Grounds of Forum Non Conveniens

Even if plaintiff had standing to bring this action, and even if his potential derivative claims were not precluded by the Australian Judgments, this lawsuit should be dismissed on grounds of forum non conveniens. Plaintiff's choice of forum is not convenient for the Court, Dr. Wright, or even the plaintiff, unless his objective is to obstruct access to relevant evidence and complicate this litigation beyond reason. *See Kolawole v. Sellers*, 863 F.3d 1361, 1369 (11th Cir.

2017) ("[T]he 'central purpose'" of forum non conveniens doctrine is "'to ensure that the trial is convenient'") (quoting *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983)). The complaint's allegations are diffuse, scattered and contradictory, but ineluctably lead to the conclusion that most, if not all, of the evidence the Court would need to adjudicate plaintiff's alleged claims is outside the forum, outside Florida, outside the United States altogether, and not subject to jurisdiction or compulsory process anywhere in this country.

This lawsuit was filed against a citizen of Australia, about alleged conduct in Australia, involving potential witnesses and documents in Australia (including Australian government officials and reports), and requiring the application of Australian law. Even if the complaint's purported claims hadn't already been adjudicated by the Supreme Court of New South Wales, Australia, this action would belong in Australia (if anywhere). This Court has broad discretion to dismiss an action on grounds of forum non conveniens when "(1) an adequate, alternative forum is available and (2) the public and private factors weigh in favor of dismissal." *Kolawole*, 863 F.3d at 1369. Here, the Supreme Court of New South Wales is an adequate, alternative forum, and the public and private interest factors weigh heavily in favor of dismissal. *See Banco Latino v. Gomez Lopez*, 17 F. Supp. 2d 1327, 1331 (S.D. Fla. 1998) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 240 (1981)).

> **1. *The Supreme Court of New South Wales, Australia is an Alternate Forum that is Both Available and Adequate***

"Demonstrating the availability of a forum is not an especially onerous burden for a defendant seeking dismissal for *forum non conveniens*." *Kolawole*, 863 F.3d at 1369; *Banco Latino*, 17 F. Supp. 2d at 1331. A forum is available if the defendant is amenable to process there. *See Banco Latino,* 17 F. Supp. 2d at 1331 ("Ordinarily, this requirement will be satisfied where the defendant is amenable to process in the other jurisdiction."). The Supreme Court of

New South Wales is an available forum because Dr. Wright is amenable to service of process in New South Wales. *See* Declaration of Craig Wright, attached as Exhibit B, ¶ 23; *Grieve* Aff. ¶¶ 49-56.

An alternative forum is adequate when it provides remedies that are similar to those available in the plaintiff's selected forum. *Kolawole*, 863 F.3d at 1370 (forum adequate where expert testimony showed that alternative forum had substantially similar remedies); *accord Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1314 (11th Cir. 2001); *Banco Latino*, 17 F. Supp. 2d at 1331 (describing an inadequate forum as one that is so "clearly . . . unsatisfactory that it is no remedy at all"); *Cleveland v. Kerzner Int'l Resorts, Inc.*, 2015 WL 5695276, at *5 (S.D. Fla. 2015), *aff'd*, 657 F. App'x 924 (11th Cir. 2016). The Supreme Court of New South Wales is an adequate forum, because the courts of New South Wales are English-speaking, common-law courts that employ procedural safeguards like those of this Court, and the laws of New South Wales provide legal and equitable remedies that are substantially similar to the remedies available in this Court. *See Grieve* Aff. ¶¶ 57-58.

### 2. The Private Interest Factors Overwhelmingly Favor Dismissal

"The private interests courts may weigh include the 'ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Kolawole*, 863 F.3d at 1372. Plaintiff has not identified a Florida-based witness with any relevant evidence or personal knowledge of his allegations, including himself. *See* Compl. ¶¶ 4-5, 104-05. The only Florida-based evidence the complaint cites are some corporate records (*id*. Exs. 2, 5), which anyone with an internet connection or telephone can obtain from anywhere in the world. *See* www.sunbiz.org.

Lacking any Florida-based witnesses or documents to support his claims, and lacking any personal knowledge of his own allegations, plaintiff relied almost exclusively on online tabloids that purported to provide unlawful leaks of confidential ATO transcripts and stolen or hacked emails. *See* Compl. ¶¶ 54, 63-70; Ex. 1, 7-8, 12. Plaintiff's complaint also relied on Australian legal documents, including the Australian Judgments rendered by the Supreme Court of New South Wales, and the Deed and New Venture Contracts, which require the application of Australian law and contain the parties' agreement to submit any dispute to the jurisdiction of the courts of New South Wales, Australia. *See id.,* Exs. 4, 7, 10-13, 15-16. This Court would not have authority to compel Australian citizens, hackers, thieves, or the Australian government to produce and authenticate confidential documents, or to compel Australian government officials or attorneys to testify about privileged or confidential matters. *See Cleveland v. Kerzner Int'l Resorts, Inc.*, 2015 WL 5695276, at *6, n. 8 (S.D. Fla. 2015), *aff'd,* 657 F. App'x 924 (11th Cir. 2016).

Even assuming, *arguendo*, that plaintiff had personal knowledge of his allegations, he would be the only potential witness identified in the complaint who is located in Florida. But he admits he has no personal knowledge of the matters at issue. *See* Compl. ¶¶ 4-6, 105. In contrast, there are at least 16 potentially relevant witnesses and companies located outside in Australia. *Wright* Aff. ¶¶ 20-21. Of the potential witnesses in Australia, five are former or current Australian government officials. *Id.* at 20(a)-(b), (d)-(e), (i). According to the complaint, Australian tax officials would be witnesses to statements taken during a confidential investigation they conducted and potentially would have access to related documents (*see* Compl. ¶¶ 62, 64-66, Exs. 6-7, 12), which also would be confidential and protected from disclosure by Australian law. *Grieve* Aff. ¶¶ 9-22. Another witness located in Australia is

Andrew Sommer, Wright's Australian attorney. *Wright* Aff. ¶ 20(h). His potential testimony is subject to an attorney-client privilege bounded by Australian law.

Thus, even if this Court could compel these potential witnesses to appear in Florida, they still could not lawfully testify about privileged or confidential matters, unless ordered do so by an Australian court applying Australian law. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 242, 258 (1981) (Dismissal on grounds of forum non conveniens is appropriate where necessary witnesses are not subject to compulsory process in the forum.); *Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003) ("Perhaps the most important 'private interest' of the litigants is access to evidence."); *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1335 (11th Cir. 2011) (affirming that district court's inability to compel defendants' "third-party witnesses or the production of documents from those witnesses . . . is both unusually extreme and materially unjust") (internal quotation marks omitted); *Montgomery v. Oberti*, 945 F. Supp. 2d 1367, 1376 (S.D. Fla. 2013) ("[N]o adequate substitute exists for the witnesses' live testimony and that lack of access to [] testimony . . . . strongly outweigh[s] Plaintiff's choice of a United States forum."). Further, even if this Court could compel those witnesses to appear, and an Australian court compelled them to testify, bringing them here from the other side of the globe would be extremely costly and disruptive. Plaintiff, who cites few (if any) sources of evidence in Florida, cannot possibly justify needlessly asking or attempting to compel most of the relevant witnesses to spend more than 24 hours traveling more than 10,000 miles from Australia to testify in Florida about events that happened in Australia. *See Ford,* 319 F.3d at 1308 (holding that private interest factors favored dismissal where alleged acts occurred in Hong Kong and, as a result, "much of the evidence is likely to be in Hong Kong"). To make matters worse, this Court could not properly adjudicate this lawsuit without disregarding, disrespecting, and undermining the Australian court that rendered the

Australian Judgments and that court's unique interest in determining whether someone committed a fraud on it. *See Florida Evergreen Foliage v. E.I. Dupont De Nemours & Co.*, 336 F. Supp. 2d 1239, 1271 (S.D. Fla. 2004), *aff'd,* 470 F.3d 1036 (11th Cir. 2006).

In contrast, this Court's dismissal of this action on forum non conveniens grounds would not prejudice plaintiff. The complaint demonstrates that even if there is *any evidence* in Florida, it is minimal and easily transferrable to, or obtainable in, Australia. Moreover, even if this case were to proceed in this Court, plaintiff would need Australian counsel to litigate in Australia the privacy and confidentiality issues arising from confidential communications and other evidence located there and subject exclusively to Australian jurisdiction. *Grieve* Aff. ¶¶ 9-22; *Wright* Aff. ¶¶ 17-18, 22. Finally, even if it were possible (it's clearly not) for the Court to conveniently adjudicate this case and render a judgment for plaintiff, he still would need to retain foreign counsel for foreign proceedings to enforce that judgment. *Grieve* Aff. ¶¶ 23-29; *Wright* Aff. ¶ 5.

Australian courts are competent, common-law courts where plaintiff could bring his claims, seek similar relief with similar procedural safeguards (*Grieve* Aff. ¶¶ 39, 57-58) and discuss the case with his attorneys and testify in English. The private interest factors overwhelmingly support dismissal.

### 3.   *The Public Interest Factors Overwhelmingly Favor Dismissal*

The public interest factors overwhelmingly favor the Court's dismissal of this case. They include: "(1) the administrative difficulties stemming from court congestion; (2) the interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (4) the avoidance of unnecessary problems of conflict of laws, or the application of foreign law; and (5) the

unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981).

The Southern District of Florida is one of the busiest districts in the United States. This lawsuit could take years to adjudicate and would heavily (and completely unnecessarily) tax the Court's time and resources. *See Kalb v. Marriott Int'l, Inc.*, 2017 WL 6565243, at *4 (S.D. Fla. 2017) ("The Court notes that the Southern District of Florida has one of the busiest dockets in the country, and this factor, thus weighs in favor of dismissal."). As we demonstrate below, Dr. Wright is not subject to personal jurisdiction in this district, but even if he were, and even if this case could be adjudicated here, it would require not only all the time and resources required by a complicated commercial dispute, but an unknown and unknowable additional amount of time and resources arising from the need to obtain almost all of the evidence in Australia, in satellite proceedings subject to Australian law. The likelihood that a case will spawn significant satellite proceedings in a foreign jurisdiction heavily skews the public interest in favor of adjudicating the entire case there. *See Kolawole v. Sellers*, 863 F.3d 1361, 1372 (11th Cir. 2017)

For example, the complaint relies heavily on tabloid reports of alleged admissions by Dr. Wright in documents purporting to be leaked transcripts of a confidential interview conducted by the ATO. Compl. Exs. 6-7. The complaint relies so heavily on these tabloid reports that it attempts to base claims on a self-serving interpretation of a purported statement by an ATO auditor regarding what that auditor may have been led to believe by an unnamed person. *Id.* ¶ 65. The problems arising from that allegation alone are thorny and potentially insurmountable because of the limits on the Court's jurisdiction over potential witnesses and documents. Those problems include the near impossibility of obtaining testimony from the employees of a foreign sovereign concerning a confidential investigation. *Grieve* Aff. 7-22.

22

Plaintiff's claims are based entirely on alleged conduct that occurred outside of Florida and rely on a threshold claim that Dr. Wright allegedly committed fraud on an Australian court in two lawsuits.[4] The Supreme Court of New South Wales and the judges who adjudicated the Australian Cases are in the best position to decide whether a fraud was committed. *See Tr. Int'l Corp. v. Nagy*, 2017 WL 5248425, at *4–5 (S.D. Fla. 2017). Moreover, asking the Australian witnesses in those cases to appear here so plaintiff can assail their testimony, then demand that this Court second guess the Australian judges and decide that Australian procedures were inadequate, would be extraordinarily improper. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 242-43 (1981).

This case is the paradigm of a dispute that is not localized in Florida and should be adjudicated elsewhere. Plaintiff never participated in Dave Kleiman's work or even knew about it. He invested nothing, in Florida or anywhere else, in creating Bitcoin, operating W&K, or developing any intellectual property. Moreover, Dave Kleiman's Florida apartment was merely a place where he kept computers that allowed him to conduct international business activities in an international marketplace. Dave Kleiman and Dr. Wright first met in an online cryptocurrency forum, and Dr. Wright has only been to Florida once in his life to attend a conference entirely unrelated to the allegations of the lawsuit. *Wright* Aff. ¶ 1. Dave Kleiman even told plaintiff that he was working with a "*foreign* man" to create "digital money." Compl. ¶ 49 (emphasis added). That foreign man was an Australian citizen, and the foreign judgment plaintiff demands to

---

[4]As a matter of law, a court that allegedly was defrauded is the court that gets to decide if it was defrauded. *Florida Evergreen Foliage v. E.I. Dupont De Nemours & Co.*, 336 F. Supp. 2d 1239, 1271 (S.D. Fla. 2004), *aff'd,* 470 F.3d 1036 (11th Cir. 2006). This rule is ironclad, except in rare cases where due process and fundamental fairness are lacking in the other court. *Id.* No allegation that the courts of Australia will not afford plaintiff due process have (or could have been) been made in the complaint.

relitigate and set aside was rendered by an Australian court. If any relitigation is to occur, it should not be in the Southern District of Florida.

### D. The Court Should Dismiss the Complaint on Grounds of International Abstention Because This Dispute Was Adjudicated in 2013 by the Supreme Court of New South Wales, Australia

The Supreme Court of New South Wales entered the Australian Judgments in 2013. W&K appeared before the Supreme Court of New South Wales in both cases and conceded that it owed Dr. Wright two contractual debts, each exceeding 20 million AUD. In his statements of claim for the First and Second Australian Lawsuits, Dr. Wright alleged that under the contracts, W&K had agreed that "all created intellectual property reverts to the ownership of [Dr. Wright] with interest if the project concludes without assignment of shares in [W&K]." Compl. Ex. 13, at 4, 10. In each of the Australian Judgments, the Supreme Court of New South Wales noted "the agreement of the parties that [Dr. Wright] will accept the transfer of Intellectual property held by [Dr. Wright] in full and final satisfaction of the judgment." *Id*. Ex. 15, at 2, Ex. 16, at 2. In the Australian Judgment concluding the First Australian Lawsuit, the court ordered that the "deed of transfer for the Intellectual Property is to be completed before 01 Sept 2013." *Id*. Ex. 16, at 2.

 In this case, plaintiff alleges that Dr. Wright obtained the Australian Judgments by committing a fraud on the Australian courts. Compl. ¶ 101. Plaintiff demands that this Court review and void those judgments, supplanting its findings for those rendered by the Supreme Court of New South Wales almost five years ago. The Court should abstain from this intrusion on the sovereignty of the Australian courts, and allow the Supreme Court of New South Wales to decide whether its findings and judgments were correct, or whether a fraud was committed on it.

Abstaining on grounds of international comity promotes: "(1) a proper level of respect for the acts of our fellow sovereign nations—a rather vague concept referred to in American

jurisprudence as international comity; (2) fairness to litigants; and (3) efficient use of scarce judicial resources." *See Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1518 (11th Cir. 1994). Below, we demonstrate that the criteria relevant to these principles, *e.g., Tr. Int'l Corp. v. Nagy*, 2017 WL 5248425, at *4–5 (S.D. Fla. 2017), all support abstention here.

### 1.  Abstention Advances the Goal of International Comity with Australian Courts

The United States and Australia have long acknowledged and respected each other's legal systems and judgments. *See Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 359 (10th Cir. 1996); *Auxer v. Alcoa, Inc.*, 406 F. App'x 600, 603 (3d Cir. 2011). The complaint did not and could not allege otherwise. Whether abstention advances the principle of international comity depends on "(1) whether the judgment was rendered via fraud; (2) whether the judgment was rendered by a competent court utilizing proceedings consistent with civilized jurisprudence; and (3) whether the foreign judgment is prejudicial, in the sense of violating American public policy because it is repugnant to fundamental principles of what is decent and just." *Turner Entm't Co.*, 25 F.3d at 1518 (internal citation omitted).

### a.  The Complaint Does Not Allege that the Australian Judgments Were Rendered by Fraud Committed by the Australian Court

Whether a foreign judgment was rendered by fraud relates exclusively to "whether a foreign court was acting fraudulently and is a forum so incompetent in its standards that its procedures cannot be squared with the principles underlying the American legal system." *Tr. Int'l Corp.*, 2017 WL 5248425, at *6. The question is manifestly not "whether the parties have acted deceptively or fraudulently." *Id.* That is a question that should be answered by the foreign court that rendered the judgment. *Id.* ("A party can act fraudulently before any court. If Defendant has used the Hungarian legal system in some way which was not above board, then the Hungarian forum was the correct place to address this concern."). This is an unexceptional

principle that also drives the unexceptional rule that a court in the United States that allegedly was defrauded is the court that gets to decide whether it was defrauded. *See Florida Evergreen Foliage v. E.I. Dupont De Nemours & Co.*, 336 F. Supp. 2d 1239, 1271 (S.D. Fla. 2004), *aff'd,* 470 F.3d 1036 (11th Cir. 2006) ("[T]he proper forum in which to assert that a party has perpetrated a fraud on the court is the court which allegedly was a victim of that fraud.") (internal quotation marks omitted). A court of another state or federal jurisdiction does not look over the first court's shoulder and purport to decide whether the first court was defrauded. *Banco Latino v. Gomez Lopez*, 17 F. Supp. 2d 1327, 1332 (S.D. Fla. 1998) ("It is not the business of our courts to assume responsibility for supervising the integrity of the judicial system of another sovereign nation.") (quoting *Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 982 (2nd Cir.1993) (internal quotation marks omitted).

Here, plaintiff alleges that Dr. Wright obtained the Australian Judgments "by perpetuating a fraud on the New South Wales court." Compl. ¶ 101. Whether there is any truth to that allegation is a question that must be addressed to the foreign court that rendered the judgments in question, namely, the Supreme Court of New South Wales. *E.g., Banco Latino*, 17 F. Supp. 2d at 1332. Plaintiff did not (and could not) allege that the Supreme Court of New South Wales "was acting fraudulently and is a forum so incompetent in its standards that its procedures cannot be squared with the principles underlying the American legal system." *Tr. Int'l Corp.*, 2017 WL 5248425, at *6.

> b. *The Judgments were Rendered by a Competent Court in Proceedings Consistent with Civilized Jurisprudence*

The Supreme Court of New South Wales, Australia is a competent, English-speaking, common-law court that employs procedural safeguards similar to those of this Court. *See Grieve* Aff. ¶¶ 30-39; *Auxer v. Alcoa, Inc.*, 406 F. App'x 600, 603 (3d Cir. 2011) ("[N]umerous federal

courts have found Australia to be an adequate alternative forum . . . ."); *Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 1992 WL 398446, at *6 (S.D.N.Y. Dec. 21, 1992), *aff'd,* 994 F.2d 996 (2d Cir. 1993) (dismissing claims to be litigated in Australian courts); *Interpane Coatings, Inc. v. Australia & New Zealand Banking Grp. Ltd.*, 732 F. Supp. 909, 918 (N.D. Ill. 1990) (dismissing claims to be heard by the Supreme Court of New South Wales, Australia).

   c.   *The Foreign Judgments Do Not Violate American Public Policy as Repugnant to Fundamental Principles of What is Decent and Just*

A judgment entered on a defendant's unequivocal admission of liability does not violate American or Australian public policies and is not repugnant to fundamental principles of what is decent and just. *See Blanco GmbH ±Co. KG v. Vlanco Indus., LLC*, 992 F. Supp. 2d 1225, 1245 (S.D. Fla. 2014), *aff'd sub nom., Blanco GmbH ±Co. KG v. Laera*, 620 Fed. Appx. 718 (11th Cir. 2015) ("A consent judgment has the same effect as any other judgment rendered by a court."). In the Australian Lawsuits, Dr. Wright alleged that W&K had breached two contracts and that he owned the rights to the intellectual property. Compl. Ex. 13, at 4, 10. W&K conceded the breaches and Dr. Wright's full rights to the intellectual property. *Id*. Exs. 15-16. The Supreme Court of Australia entered the Australian Judgments finding that W&K had breached its contractual obligations, ordered W&K to transfer the deed for the intellectual property to Dr. Wright, and concluded that Dr. Wright would accept the intellectual property in full and final satisfaction of the Australian Judgments. *Id.* The Australian Judgments are final adjudications of the Australian Lawsuits on their merits. *Grieve* Aff. ¶ 37.

   The Australian Judgments do not violate American public policy or fundamental principles of what is decent and just, because W&K's admissions and consent would have had the same effect if they had made before this Court. *See Mil-Tec USA, Inc. v. ABC Tool, Inc.*, 939 F. Supp. 853, 854 (M.D. Fla. 1996) (enforcing terms of consent judgment where defendant

admitted that the plaintiff was the owner of intellectual property); *see also Belize Telecom, Ltd. v. Gov't of Belize*, 528 F.3d 1298, 1307 (11th Cir. 2008) (abstaining on grounds of international comity where foreign court enforced contract based on plain-language interpretation of its terms). Moreover, the Supreme Court of New South Wales permits a plaintiff to challenge the validity of judgments rendered as a result of a fraud on the court. *Grieve* Aff. ¶¶ 40-48. Thus, dismissal would not prejudice plaintiff.

### d.   The Australian Interests Outweigh the American Interests

"Also relevant to considerations of international comity are the relative strengths of the American and [foreign jurisdiction's] interests." *Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1521 (11th Cir. 1994). Plaintiff seeks recovery for purported misconduct that occurred outside of the United States, relating to Dave Kleiman's participation in overseas business activities, including creating "digital money" with a "foreign man." Compl. ¶ 49. There are no American interests implicated in this action other than a Florida plaintiff's desire for a money judgment, evidently driven by his inability to learn the codes that would unlock Dave Kleiman's Bitcoin wallet. *Id*. ¶ 20. On the other hand, there are numerous Australian interests involved in protecting the integrity of proceedings and judgments of Australian courts in matters involving an Australian citizen's business interests in Australia, and Australian government investigations of those interests, including investigations by the ATO. *See Florida Evergreen Foliage v. E.I. Dupont De Nemours & Co.*, 336 F. Supp. 2d 1239, 1271 (S.D. Fla. 2004), *aff'd,* 470 F.3d 1036 (11th Cir. 2006); *Piguet v. J.P. Morgan Chase Bank, N.A.*, 2017 WL 1655234, at *3 (S.D. Fla. May 2, 2017); *Manzaro v. D'Alessandro*, 229 So. 3d 843, 845 (Fla. 4th DCA 2017), *review denied*, 2018 WL 507417 (Fla. Jan. 23, 2018). They plainly outweigh the

solitary American interest of a Florida plaintiff seeking a money judgment for activities distant from our soil.

### 2. *Abstention is Fair to the Litigants*

"With respect to the goal of fairness, relevant considerations include: (1) the order in which the suits were filed; (2) the more convenient forum; and (3) the possibility of prejudice to parties resulting from abstention." *Turner Entm't Co.*, 25 F.3d at 1521–22.

#### a. *The Australian Lawsuits Were Filed First*

The Australian Lawsuits were filed and concluded long before this action was commenced. Accordingly, for plaintiff's case to proceed, this Court would have to void the Australian Judgments without giving the Australian court its opportunity to determine if it was defrauded.

#### b. *The Australian Courts are the More Convenient Forum*

As demonstrated above, none of the witnesses and relevant documents are located in Florida, except for corporate records that can be accessed by phone or online, anywhere in the world. In contrast, the complaint lists at least 16 potentially relevant witnesses and companies located in Australia. *Wright* Aff. ¶¶ 20-21. Of those, five are current or former employees of the ATO. *Id.* at 20(a)-(b), (d)-(e), (i). The court lacks jurisdiction over those parties and the authority to compel their presence here. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 242 (1981) ("[B]ecause crucial witnesses and evidence were beyond the reach of compulsory process . . . it would be 'unfair to make [the defendents] proceed to trial in this forum.'"). Moreover, it would be repugnant to fairness, convenience, and efficiency to require those potential witness to travel from Australia to testify in Florida about events that happened in Australia, especially when a competent, English-speaking, common-law court in Australia entered two judgments precluding

plaintiff's claims and would provide plaintiff the opportunity to be heard on whether those Australian Judgments were, as he alleges, the result of a fraud on the court. *Grieve* Aff. ¶¶ 40-48, 57-58; *see Florida Evergreen Foliage*, 336 F. Supp. 2d at 1271 ("[T]he proper forum in which to assert that a party has perpetrated a fraud on the court is the court which allegedly was a victim of that fraud."); *Banco Latino v. Gomez Lopez*, 17 F. Supp. 2d 1327, 1332 (S.D. Fla. 1998) (internal citation omitted); *see also Tr. Int'l Corp. v. Nagy*, 2017 WL 5248425, at *4–5 (S.D. Fla. 2017).

### c.   There Will be No Legally Cognizable Prejudice to the Parties from Abstention

There will be no legally cognizable prejudice to the parties from abstention, because under Australia's Uniform Civil Procedure Rules, plaintiff can petition an Australian court to set aside the Australian Judgments (*Grieve* Aff. ¶¶ 39-48), and he can bring causes of action that are the same or substantially similar to those in the complaint. *Grieve* Aff. ¶¶ 57-58. In contrast, not abstaining would deny Dr. Wright access to potential witnesses and evidence he would need to rebut the allegations against him. *See Wright* Aff. ¶¶ 20-21.

### 3.   Abstention Will Promote the Efficient Use of Scarce Judicial Resources

In determining whether abstention will promote the efficient use of scarce judicial resources, the Court should consider "(1) the inconvenience of the federal forum, (2) the desirability of avoiding piecemeal litigation, (3) whether the actions have parties and issues in common and (4) whether the alternative forum is likely to render a prompt disposition." *ITL Int'l, Inc. v. Walton & Post, Inc.*, 741 F. Supp. 2d 1313, 1317 (S.D. Fla. 2010). Here, Dr. Wright has established the inconvenience of this forum because the Court lacks authority to compel any of at least 16 potential witnesses and companies in Australia to appear for trial or produce documents. *Wright* Aff. ¶¶ 20-21. Moreover, abstention promotes the policy of avoiding piecemeal litigation.

If the Court were to retain jurisdiction, the parties still would have to litigate issues in Australian courts regarding documents and witnesses in Australia that are exclusively subject to its laws and jurisdiction. *See id.; Grieve* ¶¶ 11-29.

As demonstrated above, the Australian Judgments concluded disputes about Dr. Wright's rights to W&K's intellectual property, the same intellectual property that plaintiff demands this Court find was owned by W&K. The Supreme Court of New South Wales is the proper forum to adjudicate whether those Australian Judgments were entered as a result of a fraud on that court. *See Tr. Int'l Corp.*, 2017 WL 5248425, at *4–5. Moreover, it offers remedies to invalidate fraudulent judgments, and can adjudicate plaintiff's claims without delay. *Grieve* Aff. ¶¶ 39-48, 57-58.

### E.  There is No Personal Jurisdiction Over Wright in Florida

Plaintiff alleges that the Court may exercise specific personal jurisdiction pursuant to sections 48.193(1)(a)(1), (2), and (6) of Florida's long-arm statute. Compl. ¶ 14. Specific personal jurisdiction must "arise out of a party's activities in the forum that are related to the cause of action alleged in the complaint." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). Moreover, a plaintiff "must do more than allege facts that show a *possibility* of jurisdiction." *L.O.T.I. Grp. Prods. v. Lund*, 907 F. Supp. 1528, 1530–31 (S.D. Fla. 1995) (citing *Jet Charter Serv. Inc. v. Koeck,* 907 F.2d 1110, 1112 (11th Cir.1990) (emphasis added), *cert. denied,* 499 U.S. 937 (1991)).

Here, the complaint proves only the impossibility of personal jurisdiction over Dr. Wright in Florida because: (1) Dr. Wright did not operate or engage in a Florida business or business venture; (2) plaintiff cannot demonstrate that Dr. Wright committed a tort in Florida with claims based on purportedly fraudulent conduct before an Australian court; and (3) plaintiff does not

allege a claim for physical damage to a person or property, but cites a provision of Florida's

long-arm statute that applies only to cases involving physical damage to persons or property.

### 1. There is No Personal Jurisdiction Under Fla. Stat. § 48.193(1)(a)(1) Because Dr. Wright Never Operated or Engaged in a Business or Business Venture in Florida

Under section 48.193(1)(a)(1), a plaintiff must demonstrate that its claims "arise from"

the nonresident defendant's "general course of business activity in the state for pecuniary

benefit," as evidenced by: "(1) 'the presence and operation of an office in Florida'; (2) 'the

possession and maintenance of a license to do business in Florida'; (3) 'the number of Florida

clients served'; and (4) 'the percentage of overall revenue gleaned from Florida clients.'"

*Stonepeak Partners, LP v. Tall Tower Capital, LLC*, 231 So. 3d 548, 555 (Fla. 2d DCA 2017)

(quoting *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 Fed. Appx. 779, 783 (11th Cir.

2014)). Here, plaintiff attempts to satisfy section 48.193(1)(a)(1) by alleging that Dr. Wright was

Kleiman's business partner in W&K, a purported joint venture. Compl. ¶¶ 14, 138.

Plaintiff cannot establish that Kleiman and Dr. Wright were engaged in a joint venture in

Florida. Under Florida law, a "joint venture must arise from a contract that includes all of the

following elements: "(1) a community of interest in the performance of the common purpose, (2)

joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to

share in the profits and (5) a duty to share in any losses which may be sustained." *Stonepeak

Partners*, 231 So. 3d at 553 (quoting *Jackson–Shaw Co. v. Jacksonville Aviation Auth.*, 8 So.3d

1076, 1089 (Fla. 2008)); *Vannamei Corp. v. Elite Int'l Telecommunications, Inc.*, 881 So. 2d 561,

562–63 (Fla. 3d DCA 2004) ("[S]uch a contract is an indispensable prerequisite."). "If one

element is absent it precludes the finding of a joint venture." *Stonepeak Partners*, 231 So. 3d at

553. When, as here, the alleged joint venture is *not* evidenced by a written contract, "the burden

of establishing the existence of such contract, including all of its essential elements, is indeed, as it should be, a heavy and difficult one." *Vannamei Corp.*, 881 So. 2d at 562–63 (Fla. 3d DCA 2004) (quoting *Kislak v. Kreedian,* 95 So.2d 510, 515 (Fla.1957)).[5]

Plaintiff did not (and cannot) establish personal jurisdiction over Dr. Wright under section 48.193(1)(a)(1) because Dr. Wright has never operated or engaged in a business or business venture in Florida. *Wright* Aff. ¶ 12. He does not have assets, property, funds, business interests, or bank accounts in the United States. *Id.* ¶ 5. He's never had an office in Florida (*id.* ¶ 6), or had a license to do business in Florida. *Id*. ¶ 7. Dr. Wright has never advertised services in Florida or to Florida residents (*id*. ¶ 8), or ever been a member, director, shareholder, officer, employee or representative of W&K or of any Florida business. *Id*. ¶ 12. He has never shared in the profits, or had a duty to share in the losses, of W&K or any Florida business. *Id*. ¶ 10. Dr. Wright never exercised authority or control over W&K or any Florida business, nor had any right to do so. *Id*. ¶ 13. He has never been an agent for W&K or any Florida business. *Id*. ¶ 11. Dr. Wright is a citizen of Australia and a resident of London who has been to Florida only once in his life for approximately seven days to speak at a conference unrelated to Bitcoin, W&K, or Kleiman. *Id.* ¶ 1.

Plaintiff cites official records from the Florida Department of State Division of Corporation that establish that Dr. Wright was not a member of W&K. Compl. Exs. 2, 5. Those records show that Kleiman established W&K in 2011. *Id.* Ex. 2. He listed *himself* as the sole manager, member, and registered agent of the company. *Id.* ¶ 56, Ex. 2. Kleiman allowed W&K to be administratively dissolved within a year and never reinstated it. *Id*. Ex. 5, at 2. To the

---

[5] Plaintiff's purported "oral joint venture" theory also violates the statute of frauds, as demonstrated below.

extent that W&K had a presence or operation in Florida, it would have been located at Kleiman's home, which he listed as W&K's principal office. *Id.* ¶ 56, Ex. 2. Dr. Wright has never been to Kleiman's home or any office of W&K anywhere. *Id.* ¶ 4.

> **2. There is No Personal Jurisdiction Under Fla. Stat. § 48.193(1)(a)(2) Because There is No Allegation that a Substantial Aspect of the Alleged Torts Occurred in Florida**

Section 48.193(1)(a)(2) applies to nonresident defendants who commit a "tortious act within the state." A plaintiff must show that the nonresident committed a "substantial aspect of the alleged tort in Florida by establishing that the activities in Florida were essential to the success of the tort." *Live Face on Web, LLC v. Tweople, Inc.*, 2014 WL 12611357, at *2 (M.D. Fla. 2014) (quoting *Cable/Home Commc'ns Corp. v. Network Prods., Inc.*, 902 F.2d 829, 857 (11th Cir. 1990)); *accord Banco de los Trabajadores v. Moreno*, 2018 WL 522186, at *6 (Fla. 3d DCA 2018) (no personal jurisdiction found, where "*no* element of the underlying tort is alleged to have occurred in Florida"); *Miami Breakers Soccer Club, Inc. v. Women's United Soccer Ass'n,* 140 F. Supp. 2d 1325, 1329 (S.D. Fla. 2001) (substantial aspect of trademark infringement did not occur in Florida even though website with trademarked content could be seen in Florida and trademarks were used during the NFL combine and draft in Florida). Suffering alleged effects in Florida of a tort committed elsewhere is insufficient to confer personal jurisdiction over a nonresident defendant. *See Stonepeak Partners*, 231 So. 3d at 554.

In *L.O.T.I. Grp. Prods. v. Lund*, 907 F. Supp. 1528 (S.D. Fla. 1995), a Florida filmmaker sued a nonresident defendant alleging that he tortiously violated the filmmaker's copyrights by distributing certain films in Florida and Europe. The court lacked personal jurisdiction because "[e]very aspect of the allegedly tortious conduct, other than the delivery of 3 video cassettes, took place outside [Florida]." *Id.* at 1532.

Similarly, in *Wiggins v. Tigrent, Inc.*, 147 So. 3d 76 (Fla. 2d DCA 2014), the court lacked personal jurisdiction over a nonresident defendant sued for conversion for allegedly taking funds from the Florida plaintiff's bank account in Delaware. The court reasoned that a substantial aspect of the alleged conversion had not occurred in Florida because the defendant "allegedly gained dominion and control over the funds" outside of Florida. *Id.* at 87. And, in *Musiker v. Projectavision, Inc.*, 960 F. Supp. 292 (S.D. Fla. 1997), the court found that the nonresident defendant did not commit a substantial aspect of the alleged tort in Florida where he made misrepresentations on "[t]wo telephone calls out of six months of allegedly continuous contact." 960 F. Supp. at 297.

This lawsuit arises from plaintiff's claim that Dr. Wright took bitcoins and intellectual property from W&K by "perpetuating a fraud on the Supreme Court of New South Wales" (Compl. ¶ 101), causing entry of the Australian Judgments finding that those assets belonged to Dr. Wright pursuant to two contracts between W&K and Dr. Wright. *Id.* Exs. 15-16. Plaintiff alleges that Kleiman held some or all of those bitcoins in trusts outside of the United States, including in trusts in the Seychelles, Singapore, and the UK. *Id.* ¶¶ 66, 68-69, 73. He does not allege that W&K or Kleiman held any bitcoins in the United States and, to the extent he did have any in bitcoins in the United States, it is likely that the private keys needed to access them are on Kleiman's encrypted hard drives being held by plaintiff. *Id.* ¶ 63, Ex. 9, at 2, Ex. 18, at 8-9, 12, 20. Plaintiff offered to send those hard drives to Dr. Wright, who declined to accept them. *Id*. Ex. 18, at 8, 20.

Plaintiff did not (and cannot) allege that Dr. Wright did anything in Florida to obtain the Australian Judgments, the intellectual property, or the related bitcoins. Dr. Wright's single trip to Florida was in March 2009 (*Wright* Aff. ¶ 1), more than four years before he purportedly

"perpetuated a scheme against [plaintiff]," which the complaint alleges commenced after Kleiman died in April 2013. Compl. ¶¶ 6, 75. Thus, plaintiff has failed to (and cannot) allege that Dr. Wright committed a tortious act within the State.

> **3.** **There is No Personal Jurisdiction under Fla. Stat. § 48.193(1)(a)(6)(a) Because Plaintiff Did Not Allege Personal Injury or Physical Property Damage, and Dr. Wright Has Never Engaged in Solicitation or Service Activities in Florida**

Florida courts exercise personal jurisdiction under section 48.193(1)(a)(6)(a) only where a plaintiff has alleged that a nonresident caused physical injury to persons or property within Florida, while engaged in solicitation or service activities in Florida. Section 48.193(1)(a)(6)(a) does not apply where, as here, plaintiff asserts "only economic loss unaccompanied by personal injury or physical property damage." *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 2013 WL 12091142, at *4 (M.D. Fla. 2013), *aff'd,* 579 F. App'x 779 (11th Cir. 2014); *Aetna Life & Cas. Co. v. Therm-O-Disc, Inc.*, 511 So. 2d 992, 994 (Fla. 1987) ("We hold that the provisions of [former] section 48.193(1)(f) contemplate personal injury or physical property damage."); *Turi v. Stacey*, 2015 WL 403228, at *10 (M.D. Fla. 2015), *aff'd,* 627 F. App'x 904 (11th Cir. 2015) (no personal jurisdiction under section 48.193(1)(a)(6) where plaintiff alleged conversion of property); *Hinkle v. Cont'l Motors, Inc.*, 268 F. Supp. 3d 1312, 1325–26 (M.D. Fla. 2017), *appeal dismissed,* 2017 WL 5635149 (11th Cir. 2017).

Moreover, even if plaintiff had (or could have) alleged personal injury or physical property damage, this provision could not apply, because despite making a frivolous (and sanctionable) allegation that Dr. Wright was engaged in solicitation or service activities within Florida at the time of the alleged torts that purportedly were committed in Australia (Compl. ¶ 14), plaintiff never revisited this conclusory (and false) statement, much less supported it with any facts. Dr. Wright has only ever been in Florida once in his life, for reasons unrelated to Dave

Kleiman, W&K, the plaintiff, or any of the matters alleged in the complaint. *Wright* Aff. ¶ 1. He

has never been engaged in any solicitation or service activities in Florida. *Id*. ¶¶ 4-16. The Court

lacks personal jurisdiction under section 48.193(1)(a)(6)(a).

### 4. *Even if Plaintiff Had (or Could Have) Adequately Alleged Personal Jurisdiction Under Fla. Stat. § 48.193(1)(a)(1), (2), or (6)(a), Dr. Wright Does Not Have Minimum Contacts with Florida*

Even if the complaint had (or could have) adequately alleged long-arm jurisdiction under

Fla. Stat. § 48.193(1)(a)(1), (2), or (6)(a), Dr. Wright would not be subject to personal

jurisdiction in this case because his paltry contacts with Florida do not come close to satisfying

the constitutional minimum contacts requirement.

Dr. Wright has visited Florida once, for a conference in 2009 that dealt with cyber

security. *Wright* Aff. ¶ 1. That visit was unrelated to Dave Kleiman, W&K, the plaintiff, or any

of the matters alleged in the complaint. *Id.* The only other contacts alleged in the complaint were

a handful of emails, many of which were responses to emails from the plaintiff demanding

money or bitcoins after Dave Kleiman died. Courts do not take lightly a plaintiff's attempt to

manufacture long-arm jurisdiction in such fashion. *See Polynesian Isles Resort Condo. Ass'n IV,*

*Inc. v. Diamond Resorts Mgmt., Inc.*, 2009 WL 10670577, at *2 (M.D. Fla. Dec. 22, 2009). In

any event, one unrelated, brief trip to Florida nine years ago and the emails cited in the complaint

would not satisfy the due process requirement of minimum contacts, even if the complaint had

(or could have) adequately alleged long-arm jurisdiction under Fla. Stat. § 48.193(1)(a)(1), (2),

or (6)(a), which it utterly failed to (and could not) do.

### F.  The Complaint Fails to State Claims Upon Which Relief Could be Granted

To survive a Rule 12(b)(6) motion to dismiss, a complaint must provide a "short and

plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)

sufficient to provide the defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quote omitted). A complaint must offer more than "labels and conclusions or a formulaic recitation of the elements of a cause of action . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not survive a motion to dismiss. *Id.* The complaint fails to meet this standard.

### 1. The Complaint's Contradictory Allegations Demonstrate the Impossibility of Granting Any Relief on the Basis of Plaintiff's Contrived Story

The United States Supreme Court has made clear that a district court must scrutinize a complaint early—at the pleading stage—and dismiss it unless the plaintiff sets forth sufficient factual allegations to establish not just a claim, but a plausible claim. *Twombly*, 550 U.S. at 544; *see Iqbal*, 556 U.S. at 662. Plausibility means more likely than not, and is context specific. *Twombly*, 550 U.S. at 555-56. A mere possibility of wrongdoing is not enough. The plaintiff must plead facts, not "labels," "conclusions," or "formulaic recitation of the elements" to persuade this Court that a plausible claim exists. *Iqbal*, 556 U.S. at 678. The Court is "not required to 'accept factual claims that are internally inconsistent.'" *McMahon v. City of Riviera Beach*, 2008 WL 4108051, at *3 (S.D. Fla. Aug. 28, 2008) (quoting *Campos v. Immigration & Naturalization Serv.*, 32 F.Supp.2d 1337, 1343 (S.D. Fla. 1998)).

Indeed, the Court's first order of business is to scrub a complaint of any legal conclusions or even conclusions masquerading as "facts" because neither are entitled to any weight. *See Iqbal*, 556 U.S. at 678-79. After cleansing the complaint of conclusions, the Court must "draw on its judicial experience and common sense" and determine whether the plaintiff has pleaded a plausible claim and whether other, alternative explanations of innocence are more likely than plaintiff's allegations of wrongdoing. *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009)

("[T]he court's assessment of the pleadings is context-specific, requiring the reviewing court to draw on its judicial experience and common sense."). This analysis depends on the full factual picture, not facts in isolation, and a complaint should be dismissed when the complaint cannot support a plausible claim or the alternative explanations make the claim unlikely. *See Twombly*, 550 U.S. at 570 (concluding that the plaintiffs did not nudge their claims across the line from conceivable to plausible where defendants offered obvious alternative explanations); *see also Iqbal*, 556 U.S. at 680 (finding alleged wrongdoing more compatible with, and more likely explained by, lawful conduct).

Plaintiff did not have to admit that he has no personal knowledge of his allegations because his lack of knowledge is made obvious by the complaint's "threadbare recitals" of conclusory allegations and its contradictions. The Court should not accept the following "internally inconsistent" allegations, which are fatal to the complaint:

- Plaintiff's attempt to establish personal jurisdiction over Dr. Wright, and plead legally sufficient claims for breach for fiduciary duty (Count IV) and breach of partnership agreement (Count V) are premised on plaintiff's allegation that Wright was Kleiman's business partner in W&K. Compl. ¶¶ 14, 139, 141. That allegation is contradicted directly and irrefutably by exhibits 2 and 5 of the complaint, which are official corporate records demonstrating that Kleiman was the only member of W&K until he died and that Wright has never had any authority, ownership, or control over W&K. *See id*. ¶ 56, Exs. 2 and 5;

- In an unnumbered heading of the complaint at page 28, plaintiff claims that Dr. Wright contacted him to "cover up the fraud." But, to the contrary, plaintiff quotes and cites emails showing that it was Dr. Wright who initiated contact with Kleiman's family and volunteered details of Kleiman's secret cyber legacy, tried to show plaintiff how to access any bitcoins that Kleiman might have stored on his hard drives, told him about Kleiman's shares in Coin-Exch, and even offered Kleiman $12 million for those shares;

- In count I for conversion, plaintiff alleges in conclusory fashion that Dr. Wright is exercising exclusive possession over the private keys necessary to access and spend

the bitcoins plaintiff claims would have been Kleiman's through his ownership of W&K. In support of his claims, however, plaintiff cites to emails in which Dr. Wright explains that he and Kleiman never shared their private keys and that it was likely that those private keys were located on Kleiman's hard drives, which plaintiff admits he could not access. Thus, it appears plaintiff is or was in possession of the bitcoins and intellectual property he claims to own, but since he can't access the hard drives, he asks the Court to assume instead that Dr. Wright has them based on the most conclusory of allegations.

### 2. *The Independent-Tort Doctrine Bars Each of Plaintiff's Tort Claims Because Those Claims Are Not Independent of Plaintiff's Breach of Partnership Claim*

The independent-tort doctrine prohibits a party from bringing a tort claim that is predicated on the same facts as a breach of contract claim. *Certain Underwriters at Lloyd's of London, UK Subscribing to Policy No. B1230AP56189A14 v. Ocean Walk Resort Condo. Ass'n, Inc.*, 2017 WL 3034069, at \*10 (M.D. Fla. 2017). To allege a valid tort claim, a party must "demonstrate that all of the required elements for a cause of action are satisfied, *including that the tort is independent of any breach of contract claim.*" *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399, 408 (Fla. 2013) (Pariente, J., concurring) (citing *Lewis v. Guthartz*, 428 So.2d 222, 224 (Fla. 1982) (emphasis added)); *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 495 (Fla. 3d DCA 1994). Where the facts surrounding a breach of contract action are "indistinguishable from the alleged tort . . . a plaintiff is barred from bringing a separate tort action." *Fla. Coll. of Osteopathic Med., Inc. v. Dean Witter Reynolds Inc.*, 982 F. Supp. 862, 866 (M.D. Fla. 1997). This rule is at least sixty years old. *Griffith v. Shamrock Village*, 94 So. 2d 854, 858 (Fla. 1957).

The complaint arises from Dr. Wright's alleged breach of a purported, unwritten, partnership agreement between the parties. Plaintiff alleges that Kleiman and Dr. Wright entered into a "partnership through their bitcoin mining activities," and that Dr. Wright breached the partnership agreement when he "transferred all bitcoin related assets to himself personally."

Compl. ¶¶ 141-42. Plaintiff's allegations in support of his breach of contract claim are indistinguishable from his remaining claims, all of which are in tort. They are indistinguishable because the tortious act he claims in support of his conversion, misappropriation, replevin, breach of fiduciary duty, and unjust enrichment claims—namely, that Dr. Wright wrongfully transferred and used the bitcoins and intellectual property—is the same act that he claims is a breach of the partnership agreement. *See* Compl. ¶¶ 75, 120, 124, 135, 139, 147. Thus, Counts I, II, III, IV and VI must be dismissed because they fail to allege any facts "separate and distinct from the breach of contract." *Dantzler Lumber & Exp. Co. v. Bullington Lumber Co.*, 968 F. Supp. 1543, 1547 (M.D. Fla. 1997) (citing *HTP, Ltd. v. Lineas Aereas Costarricenses,* 685 So. 2d 1238, 1239 (Fla.1996)).

### 3. The Complaint Fails to Adequately Allege a Claim for Conversion of Bitcoins That Were Owned by the Alleged Partnership Because It Did Not (and Could Not) Specifically Identify Any Bitcoins That Were Owned by Kleiman

In addition to being barred by the independent-tort doctrine, the conversion claim is legally insufficient because it did not (and could not) specifically identify any bitcoins that allegedly were owned by plaintiff (or Dave Kleiman). Conversion is "an unauthorized act which deprives another of his property permanently or for an indefinite time." *Mattocks v. Black Entm't Television LLC*, 43 F. Supp. 3d 1311, 1321 (S.D. Fla. 2014) (citing *Fogade v. ENB Revocable Trust,* 263 F.3d 1274, 1291 (11th Cir. 2001)). A plaintiff must allege facts sufficient to show "ownership of the subject property and facts that the other party wrongfully asserted dominion over that property." *Id.*

When money is the subject of a purported conversion claim,[6] the plaintiff must allege "(1) specific and identifiable money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so." *United States v. Bailey*, 288 F. Supp. 2d 1261, 1264 (M.D. Fla. 2003), *aff'd,* 419 F.3d 1208 (11th Cir. 2005). Moreover, conversion of money cannot be alleged "unless the money is a specifically identifiable fund such as an escrow account, a bag of gold coins, or the like." *In re Mouttet*, 493 B.R. 640, 662 (Bankr. S.D. Fla. 2013). Additionally, no allegation of the conversion of fungible money can stand. *Id.* Money is identifiable where "it is delivered at one time, by one act and in one mass, or where the deposit is special and the identical money is to be kept for the party making the deposit, or where wrongful possession of such property is obtained." *Batlle v. Wachovia Bank, N.A.*, 2011 WL 1085579, at *2 (S.D. Fla. 2011).

The complaint does not allege any facts to demonstrate that plaintiff was in fact the owner of any of the bitcoins referenced in the complaint. Moreover, the complaint contradicts itself in numerous ways. First, it fails to allege exactly how many bitcoins plaintiff (or Dave Kleiman) supposedly owned at any time in the past. Compl. ¶¶ 62, 66. Second, the complaint alleges that W&K was solely owned by Kleiman, but then alleges that Kleiman owned only 50% of W&K. Compl. ¶¶ 56-57. If the allegation that Kleiman is entitled to 50% of some unidentified amount of bitcoins owned by W&K were accepted as true, then the unidentified bitcoins mined by W&K belonged to ***both*** Kleiman and Dr. Wright. This allegation, which is repeated throughout the complaint (*see* Compl. ¶¶ 66, 68, 75, 121), fails to demonstrate how plaintiff ever

---

[6] As alleged in the complaint, bitcoin is a form of cryptocurrency (Compl. ¶ 3) and, therefore, a form of money. *E.g., United States v. Faiella*, 39 F. Supp. 3d 544, 545 (S.D.N.Y. 2014).

claimed "ownership of the subject property." *Mattocks*, 43 F. Supp. 3d at 1321. For this reason alone, the conversion claim requires dismissal.

The conversion claim also should be dismissed because the complaint is devoid of any allegation that the unidentified bitcoins are specific and identifiable, *Bailey*, 288 F. Supp. 2d at 1264, or that Kleiman ever delivered or transferred any specific sum of bitcoins to Dr. Wright. On the contrary, the complaint alleges that Kleiman and Dr. Wright owned and controlled more than 1,100,000 bitcoins that they purportedly mined and held in trusts outside of the United States. Compl. ¶¶ 62, 66. Thus, plaintiff can only guess which or how many bitcoins ever belonged to plaintiff (or Dave Kleiman) because merely mining bitcoins does not establish a legal right to possess them.

Furthermore, it is a legal impossibility to specifically identify bitcoins that are comingled. *Fla. Desk, Inc. v. Mitchell Int'l, Inc.*, 817 So. 2d 1059, 1061 (Fla. 5th DCA 2002) (holding that unsegregated money placed in a general operating account was not specific and identifiable). The mere allegation that the purported "overseas trusts" contained "at least 300,000" bitcoins held in trust for Kleiman fails to meet this standard. Compl. ¶ 121. The case law is clear: "The fact that the amount is certain does not make an 'identifiable fund.'" *Fla. Desk, Inc.*, 817 So. 2d at 1061; *Walinbay S.A. v. Fresh Results, LLC*, 2014 WL 1259901, at *3 (S.D. Fla. 2014); *Guevara v. Republica Del Peru*, 2008 WL 11333432, at *3 (S.D. Fla. 2008). Because the complaint fails to allege that any of the purported bitcoins were specifically identifiable, or that Kleiman had exclusive ownership of any identifiable bitcoins, the Court should dismiss Count I of the complaint.

### 4. *Plaintiff Fails to State a Claim for Replevin Because Replevin Does Not Apply to Intangible Property, and the Court Lacks In Rem Jurisdiction Over the Purportedly Improperly Seized Bitcoins*

In addition to being barred by the independent-tort doctrine, the replevin claim is legally insufficient because, like the conversion claim, it did not (and could not) specifically identify any bitcoins that allegedly were owned by plaintiff (or Dave Kleiman). This claim also must be dismissed because there is no claim for replevin of intangible property, and because the bitcoins at issue, if they exist at all, are located "overseas," not in Florida.

Replevin is a remedy for the "wrongful taking or wrongful detention of any *specific personal property*." *Williams Mgmt. Enterprises, Inc. v. Buonauro*, 489 So. 2d 160, 161 n.1 (Fla. 5th DCA 1986) (citing Fla. Stat. § 78.01) (emphasis added). Under Florida law, a replevin claim must allege, *inter alia*, a "description of the claimed property that is sufficient to make possible its identification and a statement . . . of the value of such property and its location." Fla. Stat. § 78.055.

Replevin is a possessory action and requires a court to have *in rem* jurisdiction over the property sought to be replevied, i.e., the property must be located within Florida. *Prestige Rent-A-Car, Inc. v. Advantage Car Rental & Sales, Inc. (ACRS)*, 656 So. 2d 541, 544 (Fla. 5th DCA 1995). Moreover, there is no claim under Florida law for replevin of intangible property, which bitcoins plainly are. *Charter Sch. Capital, Inc. v. N.E.W. Generation Preparatory High Sch. of Performing Arts, Inc.*, 2015 WL 2239061, at *3 (S.D. Fla. 2015).

Thus, the complaint's replevin claim fails for the same reasons as its conversion claim. Plaintiff demands that the Court order the return of unidentified digital currency located in overseas accounts. A replevin action simply will not lie. First, as demonstrated above, bitcoins are intangible property. Second, they are not specifically identifiable. Bitcoins in a trust account

"are not the type of specific, tangible property capable of particular identification and manual seizure toward which the writ of replevin is aimed." *Charter Sch.*, 2015 WL 2239061, at *3. Third, the complaint alleges that the bitcoins in question are located in trust accounts *overseas*, Compl. ¶ 66, thus depriving the Court of *in rem* jurisdiction. *Prestige*, 656 So. 2d at 544. The Court should dismiss Count III with prejudice.

### 5. Plaintiff Failed to State a Legally Sufficient Claim for Misappropriation Because His Claim is Time-Barred and Because the Complaint Fails to Reasonably Identify a Trade Secret with the Requisite Particularity

In addition to being barred by the independent-tort doctrine, the misappropriation claim (Count II) is legally insufficient because, like the conversion and replevin claims, it did not (and could not) specifically identify the property that purportedly was misappropriated. This claim also must be dismissed as time-barred by the three-year limitations period of Fla. Stat. § 688.007.

The statute of limitations begins to run once "the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." Fla. Stat. § 688.007. Plaintiff filed the complaint on February 14, 2018. Thus, his claim is time-barred if, in the exercise of reasonable diligence, plaintiff should have discovered the alleged misappropriation before February 14, 2015. The emails attached to the complaint demonstrate that ten months earlier, in April 2014, plaintiff already believed that Dr. Wright had misappropriated W&K's assets, including its intellectual property. *See* Compl. Ex. 18, at 2-10, 16-20 (documents that purport to be April 2013 email exchanges between plaintiff and Wright in which plaintiff calls Wright's honesty into question and claims to have evidence of alleged misappropriation); *see, e.g.*, Compl. Ex. 18, at 20 (Plaintiff's email dated April 23, 2014 stating that he had believed there were "questionable discrepancies" in documents provided to plaintiff by ATO, including discrepancies relating to Department of Homeland Security project in which "trade secrets" purportedly were

used.); Compl. Ex. 18, at 6 (Wright's email dated April 23, 2014, responding to plaintiff's email from the same day, stating, "I don't know what you have been led to believe. But I am not trying to take anything from Dave's estate."). Thus, plaintiff not only should have known, but had reason to know, if not actual knowledge, of the alleged basis for this claim.

A plaintiff seeking recovery for misappropriation under Fla. Stat. § 688.004 must list and describe the trade secrets at issue with "reasonable particularity." *See Levenger Co. v. Feldman*, 516 F. Supp. 2d 1272, 1287 (S.D. Fla. 2007); *Del Monte Fresh Produce Co. v. Dole Food Co. Inc.*, 148 F. Supp. 2d 1322, 1325 (S.D. Fla. 2001). The complaint makes no attempt at reasonable particularity, and merely alleges that the supposed trade secrets are "*generally described* as programs, methods, techniques, and processes relating to blockchain based technologies." Compl. ¶ 127 (emphasis added). That "description" is insufficient as a matter of law because it fails to specifically describe anything. By now, thousands of "technologies" are "blockchain based." Moreover, Dr. Wright cannot reasonably be expected to defend a claim for misappropriation of trade secrets that are no more than "generally described" as those purportedly owned by W&K or Kleiman, because he cannot possibly know what trade secrets plaintiff thinks W&K or Kleiman might have owned, let alone what trade secrets plaintiff thinks Wright might have misappropriated.

Plaintiff also fails even to allege that any particular "blockchain-based technology" was a trade secret, as defined by Fla. Stat. § 688.002(4). A trade secret is "information" that, among other things, is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Id.* Plaintiff claims that some unidentified "blockchain-related technology" that was (or was part of) the intellectual property owned by W&K, which he claims was an oral partnership between Kleiman and Dr. Wright. Although plaintiff claims that Kleiman "made reasonable

efforts to maintain the secrecy" of the unidentified blockchain-based technologies, Kleiman's actions alone would not have made this purportedly shared intellectual property a "trade secret." Rather, Dr. Wright also would have had to make reasonable efforts to maintain the secrecy of the unidentified blockchain-based technology, which is exactly what plaintiff claims Dr. Wright *did not* do.

Because the unidentified blockchain-related technology was not made a trade secret through Kleiman and Dr. Wright's conduct, any obligation to treat it as a trade secret could have arisen only by contract. Plaintiff does not allege the existence of any such contract. The only possibility is an alleged oral partnership or joint venture agreement, as to which the complaint and its hundreds of pages of exhibits offer no evidence. Even if they did, such allegations also would be barred on their face by the independent-tort doctrine and the statute of frauds.

> ### 6. *Plaintiff Failed to Allege a Legally Sufficient Claim for Breach of a Partnership Agreement and Breach of Fiduciary Duty Because Even if Plaintiff Had Sufficiently Alleged the Existence of a Partnership Agreement, Its Enforcement Would Be Barred by the Statute of Frauds*

"Under well-settled Florida law, the statute of frauds bars the enforcement of [an oral] contract when the parties intended and contemplated that performance of the agreement would take longer than one year." *Dwight v. Tobin*, 947 F.2d 455, 459 (11th Cir. 1991). The Court may "infer[] from the 'surrounding circumstances' or the 'object to be accomplished'" whether the parties intended that an oral contact's performance would take more than one year.

No inference is required here. The complaint alleges that Kleiman and Dr. Wright "had a valid partnership through their bitcoin mining activities," which the complaint alleges lasted *four years*. Compl. ¶¶ 4, 141. Plaintiff does not allege that the parties ever executed a written agreement to enter into this partnership. Accordingly, plaintiff's claims for breach of this

purported oral partnership agreement (Count V) and for breach of fiduciary duties (Count IV), both are barred by the statute of frauds. Fla. Sta. § 725.01.

Even if these claims were not barred by the statute of frauds, the complaint failed to allege a legally sufficient claim for breach of a partnership agreement because it failed to allege the elements needed to establish the existence of a partnership agreement, including a joint right of control, a right to share in the profits of the alleged partnership, and a duty to share in its losses. *E.g., Stonepeak Partners, LP v. Tall Tower Capital, LLC*, 231 So. 3d 548, 553 (quoting *Jackson–Shaw Co. v. Jacksonville Aviation Auth.*, 8 So. 3d 1076, 1089 (Fla. 2008)). Moreover, the absence of a written partnership agreement precludes a finding that Kleiman and Dr. Wright were engaged a joint venture that could give rise to any fiduciary duties. Thus, the complaint also fails also to state a legally sufficient claim for breach of fiduciary duty, which also is barred by the independent-tort doctrine.

### 7. *The Complaint Fails to State a Legally Sufficient Claim for Unjust Enrichment Because Plaintiff Does Not Own the Alleged Bitcoin or Intellectual Property*

In Count VI, the complaint attempts to allege that Dr. Wright was unjustly enriched by his purportedly "unauthorized use of bitcoins and intellectual property belonging to Dave's estate." Compl. ¶ 146. This allegation cannot avoid the obvious conclusion that whatever "bitcoins and intellectual property" plaintiff thinks belonged "to Dave's estate" were the result of the supposed oral partnership agreement. This necessarily means that the unjust enrichment claim is based on a purported contract between Kleiman and Dr. Wright. It is settled law in Florida that no unjust enrichment claim will lie for matters that are based on, or derive from, a contract. The complaint expressly alleges a purported breach of a purported contract governing the same "bitcoins and intellectual property," and the unjust enrichment claims must be dismissed on this basis alone.

Moreover, the complaint is devoid of any allegation that plaintiff ever mined a single bitcoin or created any intellectual property. Instead, the complaint alleges that Dave Kleiman and Dr. Wright jointly owned bitcoins and intellectual property through W&K. Thus, even if Dr. Wright had been unjustly enriched by any of the purported assets vaguely described in the complaint, they would not be assets "belonging to Dave's estate." Instead, they would be assets belonging to W&K. It is beyond dispute that W&K is not a party to this lawsuit and cannot be represented in it by this plaintiff.

## IV.  CONCLUSION

Plaintiff has sued where he couldn't sue and shouldn't have sued. The complaint does not (and cannot not) adequately allege plaintiff's own standing or personal jurisdiction to hale Dr. Wright into this Court. It improperly demands that this Court decide that the Supreme Court of New South Wales, Australia, was defrauded, despite the plain fact that all jurisprudential norms require any such determination to be made by the judges of that sovereign nation, because those judges were the alleged victims of purported frauds on their courts. Moreover, plaintiff demands to proceed with litigation in South Florida, despite the fact none of the relevant events occurred here, and none of the potential witnesses, documents or other evidence are located here. Finally, even if this Court had been the right place to consider plaintiff's claims, the complaint fails to allege legally sufficient claims because of their implausibility and failure to state cognizable claims as a matter of law. This complaint was filed in the wrong place and the wrong time. It

should be dismissed with prejudice.

RIVERO MESTRE LLP
*Attorneys for Craig Wright*
2525 Ponce de Leon Boulevard,
Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: jmestre@riveromestre.com
Email: arolnick@riveromestre.com
Email: dsox@riveromestre.com
Email: receptionist@riveromestre.com

By: s/ Andres Rivero
ANDRES RIVERO
Florida Bar No. 613819
JORGE A. MESTRE
Florida Bar No. 88145
ALAN H. ROLNICK
Florida Bar No. 715085
DANIEL SOX
Florida Bar No. 108573

## CERTIFICATE OF SERVICE

I certify that on April 16, 2018, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

s/ Daniel Alvarez Sox
Daniel Alvarez Sox