# EXHIBIT 10

# INTELLECTUAL PROPERTY LICENCE
# FUNDING AGREEMENT

**PARTIES**

**Craig Wright R&D**
ABN 97 481 146 384
(Financer)

**AND**

**W&K Info Defense LLC**
(Provider)

Ref: CEWK01

*K C*

**THIS DEED** dated 22nd day of April 2011

**BETWEEN**

    Craig Wright of Craig Wright R&D                                               (Financer)

And

    Dave Kleiman for W & K Info Defense LLC                                 (Provider)

**RECITALS**

**A.** The Financer controls the following Bitcoin (BTC) addresses:
- (a) 12hRmmSda9qSSEH656zBaKEbeisH6ZhdTm.
- (b) 12C9c9VQLMrLi4Ffzq2wDvwrKnUPaAaNFp.

**B.** The Provider desires the intellectual property for the permitted use and to extend this for other purposes desirable to both parties.

**C.** The Provider will use the funding for the development of several software products.

**D.** The provider will return the loaned finances (in Bitcoin) on or before 01 July 2013 and 30 Dec 2013.

**E.** The Provider will remain completely confidential on all matters in this deed (including even that family members do not have knowledge of the transaction).

**F.** The financer will send the following amounts (in Bitcoin) to to following address by 30 April 2011:
- (a) 165,140 BTC
- (b) 1MSUvGS9BEjpL35CKu7feF4HaPCXv2cht7

**G.** The financer will send the following amounts (in Bitcoin) to toe following address by 30 August 2011:
- (a) 50,000 BTC
- (b) 1JjtxXmbC95sgn5kE2Hm92axA7hcbDkRhK

**H.** The Financer and the Provider wish to record the licence, which has been granted to the Provider to use the intellectual property in accordance with this deed.

**I.** The Financer is the absolute owner of the entire unencumbered copyright in the works described in the schedule when complete.

**J.** The Financer has agreed to license the works to the Provider and the Provider has agreed to accept such licence on the following terms and conditions.

**K.** The provider will fund the software development using Bitcoin.

L. The Financer will provide 1,024 core Xeon and GPU based hardware solution.
   (a) It is acknowledged that two SGI ICE XE310 – 512 core hosts have been provided and are in a data centre specified by the provider
   (b) The provider will use these systems to mine Bitcoin
   (c) The provider expects to earn 12,000 BTC per month using these systems for the period to 30 June 2013
   (d) The systems will be hosted in the US at a facility managed by the provider.

M. The provider will pay for the use of the systems and the loan as follows:
   (a) 250,000 BTC to be repaid on 30 June 2013
   (b) 50,000 BTC to be repaid on 30 Dec 2013
   (c) The developed software will be exclusively licensed perpetually to the financer (as of 30 June 2013).
   (d) The software may be used but not distributed by the provider.

N. The contract is complete when 300,000 BTC have been repaid.

O. It is agreed that the value of the loan to be repaid is $ AUD 20,000,000 in two parts (for a total of $40,000,000).

P. The server systems will return to the Financer at the completion of the contract.

Q. On default, the contract is to be repaid in full to the financer.

*K*

3

**OPERATIVE PART**

1. **Definitions**

    In this deed:

    (a) Business means the business operated by the Provider described as such in the schedule;

    (b) Business day means a day, not being a Saturday, Sunday or gazetted public holiday, on which banks are open for commercial business where performance of an obligation under this deed is to take place;

    (c) Claim means, in relation to a person, a claim, demand, remedy, suit, injury, damage, loss, cost liability, action, proceeding, right of action, chose in action, claim for compensation or reimbursement or liability incurred by or to be made or recovered by or against the person, however arising and whether ascertained or unascertained, or immediate, future or contingent;

    (d) Commencement date means the date so specified in the schedule;

    (e) Confidential information means all technical and other information and know how, including all information and know how in any eye or machine readable form or other format, disclosed or given to the Provider from any source in respect of or incidental to:

        (i) The product;

        (ii) The technology;

        (iii) The Financer; and

        (iv) Any other information disclosed or given to the Provider by the Financer which is declared by the Financer to be confidential information;

    (f) Improvements means any improvement, modification, enhancement or derivative of the intellectual property arising during the term;

    (g) Intellectual property means:

        (i) The confidential information;

        (ii) The improvements;

        (iii) The patent; and

        (iv) The trade mark;

    (h) Licence fee means the amount calculated and paid by the Provider to the Financer specified in the schedule;

4

(i) Notice means a written notice, consent approval, direction, order or other communication;

(j) Obligation means any legal, equitable, contractual, statutory or other obligation, deed, covenant, commitment, duty, undertaking or liability;

(k) Patent means the registered patent or patent application including the provisional and complete specifications described in the schedule;

(l) Permitted use means to conduct the business to exploit market, promote, develop, integrate, research, sell and conduct and any other activity undertaken with respect to the product for profit or reward;

(m) Product means the product described as such in the schedule;

(n) Right includes a legal, equitable, contractual, statutory or other right, power, authority, benefit, privilege, remedy, discretion or cause of action;

(o) Technology means all that technical information which relates to or forms part of the product, including, without limitation, methodology, techniques, drawings, outlines, notes, algorithms, detailed designs, flow charts, results, software: partial or intermediate versions and prototypes, data, formulae and other proprietary information and know how in the Provider's possession or control or which is revealed to the Provider which relates to the product;

(p) Term means the term set out in the schedule; and

(q) Trade mark means the registered trade mark, trade mark registration application and common law trademarks described in the schedule.

2. Interpretation

This deed is governed by the law of NSW and the parties submit to the non-exclusive jurisdiction of the courts of that state.

In the interpretation of this deed:

(a) References to legislation or provisions of legislation include changes or re-enactments of the legislation and statutory instruments and regulations issued under the legislation;

(b) Words denoting the singular include the plural and vice versa; words denoting individuals or persons include bodies corporate and vice versa; references to documents or deeds also mean those documents or deeds

as changed, novated or replaced, and words denoting one gender include all genders;

(c) Grammatical forms of defined words or phrases have corresponding meanings;

(d) Parties must perform their obligations on the dates and times fixed by reference to the schedule;

(e) Reference to an amount of money is a reference to the amount in the lawful currency of the Commonwealth of Australia;

(f) If the day on or by which anything is to be done is a Saturday, a Sunday or a public holiday in the place in which it is to be done, then it must be done on the next business day;

(g) References to a party are intended to bind their executors, administrators and permitted transferees; and

(h) Obligations under this deed affecting more than one party bind them jointly and each of them severally.

3. **Licence**

The Financer hereby grants to the Provider an exclusive licence to use the intellectual property for the permitted use on the terms of this deed.

In consideration of the licence fee payable hereunder the Financer grants to the Provider an exclusive transferrable licence to copy publish sell or otherwise use the works in the course of its business in Australia and/or Overseas in respect of the whole or any part of the works commencing on 01st July 2013.

In consideration of the licence hereby granted to the Provider the Provider must pay a one off licence fee of $20,000,000 (GST exclusive) to the Financer on or before the 30th June 2013. The provider will also transfer the designated account of the provider:

(a)     250,000 BTC to be repaid on 30 June 2013
(b)     50,000 BTC to be repaid on 30 Dec 2013

The payment is to be issued in Bitcoin as per the schedule.

4. **Provider's promises**

   (a) **Undertakings**

   The Provider undertakes to:

   (i) Use its reasonable commercial endeavours to:
   
   (1) Preserve the value and validity of the intellectual property; and
   
   (2) Create, promote, retain, and enhance the goodwill in the intellectual property;

   (ii) During the term and thereafter the termination of this deed not to allow or facilitate the use, nor exploit the intellectual property in a manner in any way detrimental to the Financer and not contravene, deny or contest the rights subsisting in the intellectual property, and take such steps as may be appropriate and available to the Provider to prevent the infringement of any and all the rights subsisting in the intellectual property;

   (iii) In connection with the permitted use not give any warranty:
   
   (1) Beyond that which the Provider is obliged in law to give; or
   
   (2) Which has not been approved in writing by the Financer;

   (iv) To use the intellectual property only for the permitted use and not for any other use;

   (v) Treat as confidential the confidential information except that which at the time of its disclosure to the Provider was generally available, or subsequently became known to the public provided always that this covenant shall continue in full force and effect notwithstanding that this deed has terminated; and

   (vi) Devote all reasonable commercial endeavours in the conduct and operation of the business.

   (b) **Indemnity**

   (i) The Provider hereby agrees to fully, effectually, and promptly indemnify the Financer against any loss, either direct or indirect, damage or expense whatsoever which the Financer may suffer or incur in respect of:
   
   (1) Any breach by the Provider of the provisions of this deed; or

7

(2) Any claim by any person against the Financer arising out of or in respect of the exploitation of the intellectual property by the Provider; and

(ii) The Provider hereby irrevocably releases the Financer and waives all claims which the Provider may have in the future against the Financer, in respect of any action claim or remedy whatsoever in any way attributable to the exploitation of the intellectual property by the Provider.

5. **Improvements**

If the Provider develops any improvements, the Financer hereby irrevocably:

(a) Grants to the Provider the right to apply for any incidental intellectual property rights available in respect of that improvement and in connection with such application, the Financer shall:

(i) Make, supply and assist in the preparation of all models, plans, drawings or specifications necessary or convenient for the proper understanding or development of the improvements; and

(ii) Grant and do all things necessary to give effect to an assignment of the intellectual property rights in respect of the improvements to the Provider;

(b) Assigns, transfers and sets over absolutely to the Provider all right title and interest to the improvements including all claims as they relate to the improvements.

6. **GST**

(a) GST means a goods and services tax as defined in A New Tax System (Goods and Services Tax) Act 1999.

(b) In respect of any taxable supply, the Provider must pay to the Financer an additional amount equal to the prevailing GST rate on the supply. The additional amount referred to in this clause is payable at the same time and in the same manner as the licence fee subject to the receipt by the Provider of a valid tax invoice, as defined in A New Tax System (Goods and Services Tax) Act 1999.

7. **Term and termination**

   (a) **Term**

   This deed begins on 01st July 2016 the commencement date and will continue for the term unless it is earlier terminated.

   (b) **Termination on notice**

   Either party may terminate this deed by notice in writing to the other if the other party commits any breach of any provision of this deed, and has failed to remedy such breach within fourteen days of receipt of notice specifying:

   (i) The exact nature of the breach committed by the defaulting party; and

   (ii) What is required by the defaulting party to remedy the breach;

8. **Licence fee**

   (a) **Payment of licence fee**

   The Provider must pay the licence fee specified in the schedule to the Financer during the term.

   (b) **Late payment**

   If the licence fee or any other monies payable by the Provider to the Financer remain unpaid for seven days after the due date for payment, whether or not formal demand has been made, then the Provider shall pay, in addition to any monies actually owing to the Financer, interest at the rate of 2% over the bank indicator lending rate nominated by the Financer on such monies from the date the payment actually fell due until such monies are recovered and paid to the Financer.

9. **Warranties by Financer**

   The Financer warrants to the Provider that:

   (a) The Financer has the power and authority to enter into this deed; and

   (b) The intellectual property rights granted under this deed will not when used in accordance with this deed infringe the intellectual property rights of any person.

10. **Third party claim**

    (a) Provided that the Provider is not in breach of its obligations under this deed, if a third party makes a claim against the Provider alleging that use of the intellectual property infringes its intellectual property rights, the Financer will defend, indemnify and hold harmless the Provider from such a claim provided that the:

    (i) The Provider notifies the Financer in writing promptly of the claim;

    (ii) The Provider provides such information, assistance and co-operation as the Financer may reasonably request and at its expense, from time to time; and

    (iii) The Financer has full discretion to defend, compromise or settle any such claim on such terms as the Financer deems fit.

    (b) If the Financer cannot satisfactorily settle the claim so as to retain ownership of the intellectual property, its liability will be limited to terminating this deed, and refunding the Provider an amount equal to the portion of any licence fee paid for the period following termination.

    (c) Nothing in this clause authorises the Provider to defend, compromise or settle any claim on the Financer's behalf.

11. **Limitation of liability**

    (a) Other than in respect of a party's:

    (i) Breach of the confidentiality provisions of this deed; or

    (ii) Infringement of another party's intellectual property rights; or

    (iii) Indemnification obligations under this deed; or

    (iv) Wilful misconduct.

    (b) Neither party will be liable to the other for any consequential, special or punitive damages arising out of this deed. Each party's cumulative direct damages will be limited to the licence fee payable under this deed in the prior twelve month period. This clause survives the termination or expiration of this deed.

## 12. Assignment

No party may assign its rights or obligations under this deed without the prior written consent of the other parties, which consent may be given or withheld, or given on conditions, in the absolute discretion of those other parties.

## 13. Time

The parties hereto agree that time shall in all respects be of the essence in regards this deed.

## 14. Notices

A communication required by this deed, by a party to another, must be in writing and may be given to them by being:

(a) Delivered personally; or

(b) Posted to their address specified in this deed, or as later notified by them, in which case it will be treated as having been received on the second business day after posting; or

(c) Faxed to the facsimile number of the party with acknowledgment of receipt received electronically by the sender, when it will be treated as received on the day of sending, or

(d) Sent by email to their email address, when it will be treated as received on that day.

## 15. Waiver or variation

(a) A party's failure or delay to exercise a power or right does not operate as a waiver of that power or right.

(b) The exercise of a power or right does not preclude:

(i) Its future exercise; or

(ii) The exercise of any other power or right; or

(iii) The variation or waiver of a provision of this deed or a party's consent to a departure from a provision by another party will be ineffective unless in writing executed by the parties.

16. **Counterpart**

    This deed may be executed in any number of counterparts each of which will be an original, but counterparts together will constitute one and the same instrument, and the date of the deed will be the date on which it is executed by the last party.

17. **Costs**

    (a) Each party will pay its own costs of and incidental to this deed.

    (b) The Provider will bear all duty payable on this deed and keep indemnified the Financer in respect of that liability.

    (c) The Provider will bear all GST payable in respect of any supply under this deed upon receipt of tax invoice issued by the Financer.

18. **Escrow**

    (a) The paper Bitcoin Wallet with address 1933phfhK3ZgFQNLGSDXvqCn32k2buXY8a will be held by the financer as assurance or the contract and will convert to the ownership of the financer on default of the provider.

    (b) All source code and agreements are to be held in a manner that the financer can access on default.

REFERENCE SCHEDULE

**Deed date:**            01st April 2011

**Licence fee:**          (a)   250,000 BTC to be repaid on 30 June 2013
                          (b)   50,000 BTC to be repaid on 30 Dec 2013
                          (ex GST) for exclusive perpetual assignment

**Product:**              Bitcoin and Exchange Software in C/C++/C#/R code

**Commencement date:**    01st July 2011

**Term:**                 Two (2) years

**Trademark:**            All Marks Associated with C01N and associated marks
                          To be filed

**Patent:**               All IP under BAA-001 / 002 / 003 / 004

**SIGNED AS A DEED**

Executed by
W & K Info Defense LLC             )
in accordance with s.127            )
Corporations Act 2001 (CTH) and its constitution      )


*Dave Kleiman*

Dave Kleiman
 DIRECTOR


Executed by
Craig Wright R&D (A.B.N. 97 481 146 384)

*Craig S Wright*

Craig S Wright

14