**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K INFO DEFENSE RESEARCH, LLC | CASE NO.:  9:18-cv-80176-BB |
|      Plaintiffs, | |
| v. | |
| CRAIG WRIGHT | |
|      Defendant. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STAY**
**DISCOVERY PENDING RESOLUTION OF HIS MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

LEGAL STANDARD ......................................................................................................... 2

ANALYSIS ......................................................................................................................... 4

    A.   Defendant's motion should be denied because he ignores and misconstrues governing law ........................................................................................................................... 4

    B.   Defendant's motion should be denied because his motion to dismiss is not fully briefed .. 5

    C.   Defendant's motion should be denied because the case is already set for trial and a stay would prevent the parties from complying with the Court's schedule ............................... 6

    D.   Defendant's motion should be denied because it fails to set forth good cause; there is no undue burden; and Plaintiffs would be prejudiced if it's granted ....................................... 7

    E.   Defendant's motion should be denied because Plaintiffs' claims are not "especially dubious" and dismissal with prejudice is nowhere near a "forgone conclusion" ............... 8

        1.   Plaintiffs' have standing to bring these claims ............................................................ 8

        2.   Plaintiffs' claims are not barred by *res judicata* ........................................................ 9

        3.   The doctrine of international abstention does not require dismissal ............................. 11

        4.   This Court has personal jurisdiction over Defendant .................................................... 12

        5.   The Amended Complaint plausibly alleges facts sufficient to state claims upon which relief can be granted ................................................................................................... 15

        6.   Plaintiffs' claims are timely ....................................................................................... 15

        7.   The doctrine of forum non conveniens does not require dismissal ............................... 16

CONCLUSION ................................................................................................................... 20

Plaintiffs respectfully submit this brief in opposition to Defendant's Motion to Stay Discovery Pending Resolution of His Motion to Dismiss. D.E. 38.

## INTRODUCTION

This case concerns the relationship between Craig Wright – a self-proclaimed billionaire residing in the United Kingdom, Dave Kleiman – a computer expert and Florida resident who died in 2013, and W&K Info Defense Research, LLC – the Florida company both men used to mine a fortune of bitcoin and develop valuable intellectual property. After Dave died, Craig seized control of these assets and perpetuated a fraud against W&K and Dave's estate to conceal his tortious acts.

The issues at the heart of this case include discovering the exact relationship between Craig and Dave, the extent of their collaboration as the "Satoshi Nakamoto team,"[1] the way they agreed (if at all) to divide their digital fortune, and the way these assets were actually distributed. Craig's filing of fraudulent Australian cases are but one small part of this complex case.

After being lulled into inaction by Craig through false promises of multi-million dollar payouts, fraudulent concealment of Craig's actions, and misrepresentations into what actually occurred, Ira finally began to uncover Craig's true fraud through the assistance of counsel and hundreds of hours of research. Ira filed suit against Craig on February 14, 2018. Craig immediately doubled down on his fraud by falsely swearing – based on personal knowledge and subject to penalty of perjury – that he had no role in W&K's business. D.E. 24, ¶¶ 160-170.

Immediately after this Court entered its scheduling order, Ira served Craig with discovery aimed at uncovering the nature of his relationship with Dave and their bitcoin related activities. In response, Craig asked this Court to stay discovery until it resolves his motion to dismiss.

---

[1] Satoshi Nakamoto refers to the pseudonymous name used by the individual or individuals who authored the original Bitcoin white paper and subsequently launched the Bitcoin protocol.

But Craig's motion to stay is premature – the parties haven't briefed the motion to dismiss yet – and staying discovery will interfere with this Court's scheduling order. Staying discovery will also prejudice Plaintiff by leaving much important evidence with an individual who has already tried to avoid this suit by providing undisputedly false testimony to this Court.

Finally, motions to stay are heavily disfavored in this district, and only appropriate when a plaintiff's claims are "especially dubious," "clearly lack[ing in] merit," and "surely destined" for complete dismissal with prejudice. As demonstrated below, none of Defendant's defenses will dispose of this case, and none even approach the type of "slam-dunk" defenses necessary to grant a stay. Plaintiffs respectfully request this Court deny Defendant's motion.

## LEGAL STANDARD

Motions to stay discovery "are not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *Koppelman v. Galt Ocean Manor Condo. Ass'n, Inc.,* No. 16-CV-62175, 2016 WL 6777896, at *1 (S.D. Fla. Nov. 16, 2016) (Bloom, J.). Indeed, "[t]his District's Local Rules make clear . . . that a stay of discovery pending the determination of a motion to dismiss is the exception rather than the rule." *Ray v. Spirit Airlines, Inc.,* No. 12-61528-CIV, 2012 WL 5471793, at *1, 3 (S.D. Fla. Nov. 9, 2012); *see* S.D. Fla. Local Rules, App. A, Discovery Practices Handbook I.D(5) (unilateral motions to stay discovery are generally denied).

Stated simply, a "stay of discovery should be a sparingly ordered thing," *Ray,* 2012 WL 5471793, at *3. The filing of a motion to dismiss that is only *potentially* meritorious doesn't justify a stay. *Id.* at *3. (emphasis added) ("The Court is not at liberty to abdicate its case management responsibilities just because the defendant files a motion to dismiss *that may have merit*."). Instead, a stay should only be issued when a defendant moves to dismiss an "especially dubious" claim that

2

"clearly lacks merit," so that complete dismissal with prejudice is a "forgone conclusion":

> a defendant should not be forced to expend substantial resources answering discovery when the plaintiff's claims *clearly lack merit* . . . [but this court will not] grant a wholesale stay of discovery either. Dismissal of the case with prejudice *is not a foregone conclusion* . . . Having preliminarily examined the motion to dismiss and the Complaint here, the Court cannot say that this case is *surely destined* for dismissal.

*Id*. at *2 (emphasis added); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1360 (11th Cir. 1997) (stay should have been granted due to unreasonable delay and plaintiff's "*especially dubious*" claim) (emphasis added); *Bocciolone v. Solowsky*, No. 08-20200-CIV, 2008 WL 2906719, at *2 (S.D. Fla. July 24, 2008) (rejecting stay where court undertook a "cursory examination of the merits of Defendants' Motion to Dismiss and there [was] sufficient reason to question whether Defendants' Motion will prevail on *all* claims") (emphasis added).[2]

To determine whether a motion to dismiss is *clearly* meritorious and truly *case dispositive*, courts must "take a preliminary peek at the merits of the motion." *Ray*, 2012 WL 5471793, at *1. Consequently, as a procedural matter, courts deny motions to stay if the motion to dismiss isn't fully briefed – as the court cannot adequately assess the merits of the motion to dismiss without full briefing. *See Koppelman*, 2016 WL 6777896 at *2; *Bocciolone*, 2008 WL 2906719, at *1.

If the motion is fully briefed, and the court reaches the "preliminary peek" stage, the "proponent of the stay bears the burden of demonstrating its necessity, appropriateness, and

---

[2] *See Montoya v. PNC Bank, N.A.*, No. 14-20474-CIV, 2014 WL 2807617, at *2 (S.D. Fla. June 20, 2014) (rejecting stay where court's "incomplete and preliminary review suggests that the motions may not be the 'slam-dunk' submissions the Defendants describe them to be); *S.K.Y. Mgmt. LLC v. Greenshoe, Ltd.*, 2007 WL 201258, at *1-2 (S.D. Fla. Jan. 24, 2007) (rejecting stay where defendant raised colorable legal defenses, but plaintiff presented strong rebuttal arguments that could result in its claims surviving a motion to dismiss); *Flecha*, 944 F. Supp. 2d at 1203 (rejecting stay where "genuine dispute" presented in parties' papers); *cf. Minton v. Jenkins*, 2011 WL 2038700, at *2 (N.D. Fla. May 24, 2011) (staying discovery where the court perceive[d] an immediate and clear possibility that the motion [to dismiss] will be granted and this action entirely terminated")

reasonableness." *Koppelman*, 2016 WL 6777896 at *1; *Bocciolone*, 2008 WL 2906719, at *2. In weighing the appropriateness of a motion to stay, the interference with pre-set deadlines and trial schedules are perhaps the "most importan[t] consideration when deciding to deny motions to stay discovery. *Montoya*, 2014 WL 2807617, at *3.

<u>ANALYSIS</u>

**A.    Defendant's motion should be denied because he ignores and misconstrues governing law**

Defendant's motion relies on a single out-of-context quote from *Chudasama*, that "a motion to dismiss . . . should . . . be resolved before discovery begins." 123 F.3d at 1367. But Defendant's reliance is misplaced. *Chudasama* and its progeny stand for the unremarkable proposition that "courts should not delay ruling on a likely meritorious motion to dismiss while undue discovery costs mount." *Koock v. Sugar & Felsenthal, LLP*, No. 8:09-CV-609-T-17EAJ, 2009 WL 2579307, at *2 (M.D. Fla. Aug. 19, 2009). In *Chudasama*, the district court failed to rule on a fully briefed motion to dismiss for over 18 months. 123 F.3d at 1360. Thus, when the Eleventh Circuit opined that "the district court should rule on the motion [to dismiss] before entering discovery orders, if possible," the Court's "primary concern . . . was with the district court's delay and prolonging of the parties' discovery and costs unnecessarily. . . . This does not indicate a broad rule that discovery should be deferred whenever there is a pending motion to dismiss." *Gannon v. Flood*, No. 08-60059-CIV, 2008 WL 793682, at *1 (S.D. Fla. Mar. 24, 2008). As this Court and others have recognized, *Chudasama*'s holding is limited to its "exceptional circumstances." *Koppelman*, 2016 WL 6777896, at *2 (holding that *Chudasama* is inapposite absent similar "exceptional circumstances" and denying defendant's motion to stay). No such exceptional circumstances are present here.

This Court has promptly ruled on every motion the parties have filed and there is no reason to suspect the Court will not rule on Defendant's motion to dismiss expeditiously once it is fully

briefed. Accordingly, *Chudasama* is inapposite and is not, as Defendant argues, precedent that supports Defendant's requested relief here.

**B.  Defendant's motion should be denied because his motion to dismiss is not fully briefed**

Defendant's motion should be denied as premature because his Motion to Dismiss has not been fully briefed. As mentioned above, one of the extremely rare instances a discovery stay is justified is when a court takes a "preliminary peek at the merits of [the] dispositive motion" and determines it to be "clearly meritorious and truly case dispositive." *Bocciolone*, 2008 WL 2906719, at *2; *Feldman v. Flood*, 176 F.R.D. 651, 652-53 (M.D. Fla. 1997).

But a "preliminary peek" conducted *"*without the benefit of full briefing, falls well short of putting the Court in a position to determine that a motion to dismiss by the Defendants will be both granted and case dispositive." *Koppelman*, 2016 WL 6777896, at *2. Numerous district courts have agreed with this Court's holding in *Koppelman*. *See Bocciolone*, 2008 WL 2906719, at *1 ("the Court summarily denied Defendants' first Motion to Stay Discovery . . . because their Motion to Dismiss had not been fully briefed at that time."); *Montoya v. PNC Bank, N.A.*, No. 14-20474-CIV, 2014 WL 2807617, at *1-2 (S.D. Fla. June 20, 2014) (denying motion for stay on the ground, among others, that the motion was not fully briefed and ruling would require comprehensive analysis of myriad issues); *Miller's Ale House, Inc. v. DCCM Rest. Group, LLC*, 2015 WL 6123984, at *2 (M.D. Fla. Oct. 16, 2015) (distinguishing *Chudasama* on the ground, among others, that defendant's motion to dismiss was not yet fully briefed).

This Court should deny Defendant's motion for the simple procedural reason that, as demonstrated by the authorities cited above, it cannot conduct a "preliminary peek" without completed briefing on Defendant's motion to dismiss.

**C.   Defendant's motion should be denied because the case is already set for trial and a stay would prevent the parties from complying with the Court's schedule**

As mentioned above, motions to stay discovery "are not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *Koppelman*, 2016 WL 6777896, at *1.

In fact, interference with pre-set deadlines and trial schedules are perhaps the "most importan[t]" consideration when deciding to deny motions to stay discovery. *See Montoya*, 2014 WL 2807617, at *3; *Chimeno-Buzzi v. Hollister Co.*, No. 14-23120-CIV, 2015 WL 11233196, at *2 (S.D. Fla. Apr. 9, 2015) (denying stay motion as the "Court's duty is to enforce the scheduling Order and ensure that the parties are prepared to comply with [its deadlines]. A continued delay of discovery would indeed frustrate that duty. . .").

Under the current trial schedule, discovery will need to be completed by February 8, 2019. D.E. 21. Discovery will be complex. The case centers around cryptocurrency and other technologies established for the very purpose of avoiding disclosure. And Defendant's history of forgeries, misrepresentations, and willful deception – including submitting false testimony to this Court[3] – will likely require significant third party discovery, expert analysis, and may even require the parties to seek some international discovery.

In sum, "[i]t is therefore difficult to imagine how the parties could *ever* complete all discovery by [the] deadline if a discovery stay were to remain in effect for two or three months." *Montoya*, 2014 WL 2807617 at *3 (emphasis in original). Thus, Defendant's motion to stay discovery must be denied.

---

[3] D.E. 24 at ¶¶ 160-170.

**D.   Defendant's motion should be denied because it fails to set forth good cause; there is no undue burden; and Plaintiffs would be prejudiced if it's granted**

Defendant's motion should be denied because it fails to set forth good cause. In order to obtain a stay, a Defendant must "show a particular and specific need for it, as opposed to making stereotyped or conclusory statements." *Ray*, 2012 WL 5471793, at *2. But Defendant's motion sets forth nothing more than conclusory statements about the cost of complying with Plaintiffs' discovery requests. D.E. 38 at 4.[4]

Defendant cites caselaw ordering a partial stay against one-of-many defendants where that one defendant "*lacked in-house resources* to identify and capture the requested information . . ." *Id.*; *Wilson v. Everbank, N.A.*, 2014 WL 12774848, at *3 (S.D. Fla. Nov. 18, 2014). Defendant does not lack resources. Plaintiffs claim he has stolen billions from them. Defendant confirms he is a billionaire with more money than the country of Rwanda, that he has a private jet and a yacht, and is capable of going "full billionaire mode" when he desires.[5]

Plaintiffs have supported their allegations of a multi-billion dollar theft with 53 pages of allegations and over 450 pages of evidence. In a desperate attempt to maintain his ill-gotten wealth, Defendant proffered false testimony to this Court to avoid its jurisdiction. D.E. 24 ¶¶ 160-170. Plaintiffs' Amended Complaint also demonstrates Defendant forged documents, altered others,

---

[4] At bottom, defendant claims "discovery should be stayed simply because this a complex . . . case . . . involve[ing] burdensome and costly discovery. . . These arguments won't do. They are premature and speculative: "extensive, expensive discovery has not yet proceeded and likely will not have proceeded very far by the time the Court issues a ruling." *Ray*, 2012 WL 5471793, at *3 *citing Gannon v. Flood,* 2008 WL 793682, at *1 (S.D. Fla. Mar. 24, 2008).

[5] Josiah Wilmoth, '*I've Got More Money Than Your Country': Craig Wright tells Rwanda*, YAHOO! FINANCE (May 24, 2018), available at https://finance.yahoo.com/news/ve-got-more-money-country-144050021.html; https://youtu.be/yqOtKCUfP1M?t=62 (Defendant states Rwanda's GDP is $5-8B); https://youtu.be/yqOtKCUfP1M?t=108 (Defendant states "I've got more money than your country"); Ex. 1 (enclosing tweets from Defendant).

and defrauded the Australian courts. This same Defendant has sole possession of many documents necessary to prosecute this case. Given Defendant's conduct, Plaintiffs urge this Court not to delay Defendant's disclosure obligations any longer and risk serious prejudice to Plaintiffs' claims.

In light of Plaintiffs' claims, Defendant's conduct, and Defendant's stolen wealth – Plaintiffs' targeted discovery requests cannot be said to impose an undue burden.

**E.  Defendant's motion should be denied because Plaintiffs' claims are not "especially dubious" and dismissal with prejudice is nowhere near a "forgone conclusion"**

Defendant bears the burden of proving, not that his motion is potentially meritorious, but that Plaintiffs' claims are so "dubious," so "clearly lacking in merit," that it is a "forgone conclusion" his motion will be granted, and plaintiffs' claims dismissed with prejudice. *Ray*, 2012 WL 5471793, at *2; *Chudasama*, 123 F.3d at 1360; *Bocciolone*, 2008 WL 2906719, at *2; K*oppelman*, 2016 WL 6777896, at *2; *see supra*, n.2. Defendant falls far short of this burden.

In fact, the length of his own briefing undermines any claim that his motion is "clearly meritorious."

> [S]imple recognition of the length of the parties' respective motions and responses is also a good indication here that the Motion is not clearly meritorious (Defendants needed 35 pages to argue their Motion to Dismiss and Plaintiffs required 27 pages to argue their Response).

*Bocciolone*, 2008 WL 2906719, at *2. Here, Defendant used *50* pages for his motion to dismiss along with a 91 page expert affidavit. Plaintiffs anticipate requiring a similar amount to respond.

Plaintiffs will respond in full to Defendant's motion to dismiss on July 17, 2018. But for the limited purpose of demonstrating it is not a "forgone conclusion" that Plaintiffs claims will be dismissed, Plaintiffs briefly respond to each of Defendant's arguments for dismissal below.

### 1.  Plaintiffs' have standing to bring these claims

Defendant argues Plaintiffs lack standing because Ira (i) could not "cause W&K to sue Dr. Wright" and (ii) failed to allege the existence of a partnership.

Both arguments fail as a matter of law. First, the Amended Complaint clearly alleges that "Dave was the sole member of W&K," (D.E. 24, ¶ 71) and that "Craig did not have a direct ownership interest in W&K. . ." *Id.* at ¶ 192. As the Personal Representative of Dave's estate, Ira is now the sole member of W&K with authority to control its actions. Further, the only other *potential* member of W&K was Defendant, who swore to this Court that he never had any interest in W&K. D.E. 12-2 at ¶ 12. Thus, by Defendant's own admission – Dave was, or at a minimum his estate now remains, W&K's sole member.[6] Second, Defendant's argument that Ira failed to allege a partnership is absurd in light of Ira's allegation and attachment of Defendant's email that includes **Defendant's express admission that** "**we did partner ;).**" D.E. 24, ¶ 63.

### 2.   Plaintiffs' claims are not barred by *res judicata*

Defendant asserts the suit is barred by *res judicata* because of two fraudulent Australian judgments. This defense fails for two reasons. First, the judgments are void and do not carry *res judicata* effect. Second, even if valid (they're not) *res judicata* can only dismiss a tiny fraction of plaintiffs' claims – thereby leaving the overwhelming majority pending in this Court.

Starting with the second, Plaintiffs' Amended Complaint alleges Defendant stole (i) bitcoins valued at over $11 billion dollars, and (ii) intellectual property valued at a several hundred million. D.E. 24, ¶¶ 7, 11-15. The fraudulent Australian judgments, if valid (they're not), *only* transferred title to the *intellectual property*. *Id.* at ¶ 130. Consequently, at best, their preclusive effect would only bar Plaintiffs claims to W&K's intellectual property, leav*ing the overwhelming majority of Plaintiffs' claims*, *i.e.*, recovery of over $11 billion dollars in stolen bitcoins, *pending in this Court*. Because Defendant's best case scenario under *res judicata* is not even almost case

---

[6] Importantly, in a worst case scenario, Ira can amend the complaint to include a derivative claim.

dispositive, a stay is inappropriate.

Furthermore, the judgments are void because (i) the Australian court lacked jurisdiction and (ii) because they were procured by *extrinsic* fraud. A judgment is void and has no *res judicata* effect if the issuing court lacked personal jurisdiction. *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc*., 734 F.2d 639, 640–41 (11th Cir. 1984) (no *res judicata* given to "judgment issued from a court lacking personal jurisdiction"). Neither Australian lawsuit was served on W&K, so the Australian court lacked personal jurisdiction.  D.E. 24, ¶ 100; *Hansberry v. Lee*, 311 U.S. 32, 40 (U.S. 1940) ("It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment . . . in which he . . . has not been made a party by service of process."). The same is true for judgments procured by extrinsic fraud. *Burtoff v. Tauber*, 2011 WL 248547, at *2 (S.D. Fla. 2011). Extrinsic fraud occurs when the defendant "has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court . . . or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff . . . ." *United States v. Throckmorton*, 98 U.S. 61, 65-66 (1878) *accord*, *e.g*., *Parker v. Parker*, 950 So.2d 388, 391 (Fla. 2007) ("extrinsic fraud occurs where a defendant has somehow been prevented from participating in a cause").[7] This is precisely what happened here. Defendant filed two suits in Australia against W&K in 2013, *after* Dave died. D.E. 24-11. He did not want W&K or Dave's family to stop his misappropriation of W&K's property, so he failed to serve W&K with the suits. Instead, he filed papers in Australia *fraudulently purporting to appear for* W&K as its "Director/Australian Agent" and then *falsely* consented to

---

[7] In contrast, *intrinsic* fraud, which does not ordinarily prevent *res judicata*, is "fraudulent conduct that arises within a proceeding and pertains to the issues in the case that have been tried," such as the use of false testimony or other false evidence that was "submitted to and received consideration by the court." *Parker*, 950 So.2d at 391. It is *this* type of fraud that is for the defrauded forum to unwind.

judgment, thereby again preventing W&K from actually participating in the lawsuit. D.E. 24-30, 24-19. He also intentionally failed to contact Dave's father, brother, or business partners *at all* until February 2014, months after the court had entered the "consent judgments," and he had taken W&K's property. D.E. 24 ¶133. In light of the jurisdictional deficiencies and extrinsic fraud, Defendant's *res judicata* defense is frivolous. Discovery should not be stayed awaiting its disposition.

### 3.   The doctrine of international abstention does not require dismissal

Defendant urges this Court to abstain from adjudicating this case because he obtained fraudulent Australian court orders against W&K, without W&K knowing, and without ever serving W&K. As with *res judicata*, this claim doesn't merit a stay because, at best, it only resolves Plaintiff's intellectual property claims and leaves $11 billion of bitcoin claims pending.

But the defense also fails as a matter of law. Where a defendant requests dismissal based on a prior foreign judgment, the dispositive factors for comity are "whether the foreign court was competent, whether the foreign judgment was fraudulent, and whether that judgment violated American public policy notions of decency and justice." *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1030 (11th Cir. 2014). Defendant's request for comity must be rejected, as it fails all three prongs of this test. The Australian court wasn't competent as it lacked jurisdiction. The judgment was fraudulent as obtained by extrinsic fraud. And the judgment violates American policy notions of decency and justice because W&K wasn't served and couldn't defend itself. *Hilton v. Guyot*, 159 U.S. 113, 205 (1895) (comity only given to foreign judgment by a court "having jurisdiction of the cause and of the parties" and is not provided to judgment "affected by fraud or prejudice" or there was no "opportunity to defend") (quoted in *Turner Entertainment Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1519 (11th Cir. 1994).

Defendant's theory would lead to an absurd result; a wrongdoer can file suit against a U.S.

citizen in a distant country, consent to judgment, thereby foreclose access to U.S courts, and thus force the U.S. citizen to travel around the world to reclaim his property. That is not the law and Defendant's attempt to invoke this rare doctrine, under these egregious facts, to show that *Plaintiffs'* claims are completely without merit – is absurd.

> 4.   This Court has personal jurisdiction over Defendant

Defendant's challenges to this Court's personal jurisdiction are similarly meritless. Defendant tacitly concedes this point; after Plaintiffs exposed the falsity of the sworn declaration he filed to support his jurisdictional arguments, he removed – **without explanation** – many of the statements contained in his original declaration (*compare* D.E. 12-2 *with* D.E 33-3) and truncated his personal jurisdictional attack from nearly six pages in his original motion to dismiss to just over two. *Compare* D.E. 12 at 31-37 *with* D.E. 33 at 34-36.

Addressing the substance of his Motion, this Court plainly has jurisdiction over Defendant under Florida's long arm statute because Defendant committed tortious acts in Florida.[8] *Fla. Stat.* § 48.193(1)(a)(2).

Defendant claims Plaintiffs' allegations don't establish he "committed a tortious act within this state" because Plaintiffs never alleged Defendant committed an *element* of the alleged torts, or a "substantial aspect that was essential to the success of the tort," in Florida. D.E. 33 at 35.

But "in order to 'commit a tortious act' in Florida, a defendant's physical presence is not required." *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). Indeed, the Eleventh Circuit has *repeatedly* held that a court may assert jurisdiction over a "nonresident defendant who commits a tort outside of the state that causes injury inside the state." *Brennan v. Roman Catholic Diocese of*

---

[8] As will be explained in Plaintiffs' opposition to Defendant's motion to dismiss, this Court also has personal jurisdiction over Defendant because he operated a business here.

*Syracuse New York, Inc*., 322 F. App'x 852, 855 (11th Cir. 2009) *citing Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1217 (11th Cir. 1999).

Applying this binding precedent, federal courts in Florida consistently hold that when an out of state defendant commits an intentional tort against a Florida citizen, the defendant has caused the necessary Florida injury and is subject to jurisdiction under 1(b). *See Canadian Steel, Inc. v. HFP Capital Markets, LLC*, No. 11-23650-CIV, 2012 WL 2326119, at *4 (S.D. Fla. June 19, 2012) (following the "clear weight of binding Eleventh Circuit authority on this question" and holding plaintiffs' established personal jurisdiction under 1(b) solely "on the basis of its allegations that it suffered injury in Florida from Defendants' intentional torts.")

This approach is pervasive and federal courts throughout Florida are in accord for claims of intentional torts like the ones asserted by Plaintiff here, *i.e.,* conversion, breach of fiduciary duty, breach of the duty of loyalty, and fraud. *See e.g.*, *Black v. Bryant*, 905 F. Supp. 1046, 1053 (M.D. Fla. 1995) (Holding if intentional torts of fraud, conversion, and civil theft were specifically designed to cause harm to Plaintiffs in state of Florida, it would bring defendant "squarely within the confines of Florida's Long-Arm State").[9]

---

[9] *See also Elandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1329 (S.D. Fla. 2010) (when "an individual breaches a fiduciary duty to a company that has a principal place of business or place of incorporation in Florida the individual is subject to jurisdiction in Florida under long-arm statute § 48.193(1)(b)."); *Stateline Power Corp. v. Kremer*, 404 F. Supp. 2d 1373, 1378 (S.D. Fla. 2005) (plaintiff alleges defendant "breached his fiduciary duty to the company and misappropriated funds . . . [plaintiff] is a Florida corporation with its principle place of business located [in] Florida . . . As such, any injury suffered by [plaintiff] will be suffered in Florida."); *Sport Mgmt. Sys., LLC v. Woolley Grp., LLC*, No. 15-CIV-62224, 2016 WL 8793333, at *3-4 (S.D. Fla. Mar. 23, 2016) (Bloom, J.) (plaintiff's "allegations of conversion [were] sufficient to invoke Florida long-arm statute" because defendant's default "financially injured" plaintiff and "would cause harm to Plaintiff that would be suffered in Florida."); *VAS Aero Servs., LLC v. Arroyo*, 868 F. Supp. 2d 1374, 1380 (S.D. Fla. 2012) (subsection 1(b) satisfied for claims of misappropriation, breach of duty of loyalty, and conversion because defendant's "conduct was intentionally directed at . . . a Florida-based company, and the harm his actions caused was felt primarily—if not exclusively— in Florida."); *HME Providers, Inc. v. Heinrich*, No. 6:09CV2186-ORL-31GJK, 2010 WL 557106,

Inexplicably, Defendant completely fails to cite *any* of this overwhelming authority. Other courts have found this type of failure, "disturbing." *Mehlenbacher*, 2005 WL 4585859, at *11 n.14.

Regardless, the heart of Plaintiffs' Amended Complaint alleges Defendant stole Plaintiffs' bitcoins and intellectual property assets and otherwise defrauded Plaintiffs. Both Plaintiffs are Florida citizens, incorporated here, with their primary place of business here. The Amended Complaint's causes of action are all aimed at recovering these assets, and almost all are intentional torts claims sounding in conversion, misappropriation, breach of fiduciary duty, breach of the duties of loyalty and care, and fraud.[10]

Plaintiffs have alleged facts demonstrating they are located in Florida and that, therefore, if Defendant committed these intentional torts, their injury occurred in Florida. *Posner*, 178 F.3d at 1216. Nothing in Defendant's sworn declaration combats these assertions. Consequently, this Court must "accept the allegations stated in the complaint as true for purposes of resolving the jurisdictional issue under the requirements of the Florida long-arm statute and the Due Process Clause," and find Plaintiffs have established personal jurisdiction under subsection 1(b). *Id.* at 1215. This Court clearly has jurisdiction over Defendant and his contentions otherwise should be summarily rejected. He comes nowhere near the high bar of demonstrating that Plaintiffs' claims

---

at *3 (M.D. Fla. Feb. 11, 2010) (court bound, under *Posner*, to conclude subsection 1(b) satisfied when an out of state defendant misappropriated trade secrets and converted intellectual property belonging to Florida plaintiff as it caused pecuniary injury in Florida); *Mehlenbacher ex rel. Asconi Corp. v. Jitaru*, No. 6:04CV1118ORL-22KRS, 2005 WL 4585859, at *11 (M.D. Fla. June 6, 2005) (subsection 1(b) satisfied by non-resident defendants breaching fiduciary duties owed to plaintiff whose principal place of business was Florida).

[10] Plaintiffs' remaining claims are for unjust enrichment and permanent injunction, but also seek return of the stolen assets. This court has jurisdiction over those claims too. "If the forum's long-arm statute provides jurisdiction over one claim, the district court has personal jurisdiction over the entire case so long as the claims arose from the same jurisdiction generating event." *Brennan*, F. App'x at 854.

are so "especially dubious," and "clearly lack[ing] merit," that a complete dismissal with prejudice is a "forgone conclusion."

     5.    <u>The Amended Complaint plausibly alleges facts sufficient to state claims upon which relief can be granted</u>

Defendant did not move to dismiss each claim on 12(b)(6) grounds individually, but rather argues all claims should be dismissed because the Amended Complaint doesn't allege "a coherent or justiciable basis for relief." D.E. 33 at 11.[11] The factual allegations in Plaintiffs' Amended Complaint are consistent and straight-forward: Defendant stole bitcoins and related intellectual property belonging to Dave's estate shortly after his death.  D.E. 24 ¶¶ 7-19.  It is Defendant's own forgeries, misrepresentations, and lies (like the fraud committed on this Court) that have resulted in a complicated and long story.  Defendant cannot rely on the convolutedness of his own fraud to delay Plaintiffs' discovery of relevant facts.

     6.    <u>Plaintiffs' claims are timely</u>

Plaintiffs' claims are not barred by Florida's statute of limitations as, even assuming the claims accrued when Defendant claims they did, the statutes were tolled under Florida law.

Florida law expressly provides that "the running of the time under any statute of limitations . . . is tolled by . . . [a]bsence from the state of the person to be sued." Fla. Stat. § 95.051. Florida law also "permits a tolling of the statute of limitations where there has been fraud or fraudulent concealment." *Razor Capital, LLC v. CMAX Fin. LLC*, 17-80388-CIV, 2017 WL 3481761, at *4 (S.D. Fla. Aug. 14, 2017).

Defendant admits he was absent from Florida for the relevant time period.  D.E. 33-3 at ¶ 6. Further, as detailed in the Amended Complaint, he fraudulently concealed material facts relevant

---

[11] Plaintiffs will respond to Defendant's arguments to dismiss the conversion and constructive fraud counts in their July 17 opposition because these arguments are not "case dispositive."

to Plaintiffs' claims against him (*e.g.*, D.E. 33 ¶¶ 202-12), and lulled Ira into not taking action by, *inter alia*, promising him $12 million in October 2014. *Id.* at ¶ 145. Thus, under the facts alleged, that include Defendant's forgeries, lies, and wilful deception of this Court, it would be wholly inappropriate to dismiss Plaintiffs' claims at the motion to dismiss stage. *Razor Capital*, 2017 WL 3481761, at *5 ("Whether or not fraudulent concealment is sufficient to toll the statute of limitations is a question of fact.").[12]

Defendant's argument for dismissal on statute of limitations grounds is, at bottom, an outrageous request that this Court reward his years-long scheme to defraud Plaintiffs; a scheme that culminated in him, based on personal knowledge and subject to penalty of perjury, submitting a false sworn declaration to this Court. As described above, he cannot assert a statute of limitations defense, let alone one that is "clearly meritorious" and "case dispositive." His motion to stay should be denied.

### 7.   The doctrine of forum non conveniens does not require dismissal

Defendant asks this Court to dismiss this case under the discretionary doctrine of forum non conveniens, arguing that "most, if not all" the relevant evidence is in Australia and outside the Court's jurisdiction. D.E. 33 at 19-27. But Defendant ignores binding precedent, misstates caselaw, and perpetuates his fraud on this Court by distorting facts to suit his purpose.

First, this Court does not have "broad discretion" to oust Florida Plaintiffs from seeking redress in their home forum for injuries they suffered in Florida. Supreme Court precedent dictates that "a plaintiff's choice of forum should *rarely* be disturbed," when plaintiffs are U.S. citizens. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 253 (1981) (emphasis added). Because deference

---

[12] Also, Defendant does not have a facially plausible argument to assert a limitations defense against Plaintiffs' fraud claim, thus again, rendering his motion to dismiss, at best, less than dispositive.

to a "plaintiff's choice of forum is *especially* strong in the Eleventh Circuit," that choice can only be disturbed on "positive evidence of unusually extreme circumstances," where the court is "thoroughly convinced that material injustice is manifest." *SME Racks, Inc., v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004) (emphasis added).[13]

Defendant has produced no evidence of unusually extreme circumstances, let alone that he – a billionaire who fled Australia for England – would suffer "manifest" and "material injustice" from litigating in the forum he stole from. Defendant partnered with a Florida citizen and company to mine bitcoins and develop intellectual property. D.E. 24 ¶¶ 52-78. He stole those Florida assets and breached fiduciary duties owed to those Florida citizens, thereby victimizing Floridians. *Id.* at ¶¶ 95-116. It would not be unusually extreme or materially unjust for him to defend those actions here. On the contrary, it would be unjust to force these innocent victims to chase Defendant half a world away.

But even if it was, somehow, "manifestly" "unjust" to have Defendant litigate here (it's not), he must still demonstrate that the private and public interest factors favor dismissal, and that Ira can reinstate the case in Australia without undue inconvenience. They don't and he cannot.

In regard to the private factors, the evidence is easily accessible here, obtainable here, and cheaper to get as well. Defendant tells a false narrative focusing on alleged "Australian evidence." Copious amounts of evidence, witnesses, and documents exist in Florida and the United States. *Wilson v. Island Seas Investments, Ltd.*, 590 F.3d 1264, 1271 (11th Cir. 2009) (the entire United States is the appropriate venue for FNC). For example, the following witnesses all live, or exist, *in Florida*: (1) Ira Kleiman (Plaintiff); (2) Patrick Page (Dave's business partner and best friend

---

[13] Much of Defendant's caselaw is inapposite because, *inter alia*, it dealt with foreign plaintiffs or plaintiffs that signed forum selection clauses, both of whom don't enjoy this deference. *Piper Aircraft*, 454 U.S. at 238; *Ford v. Brown*, 319 F.3d 1302, 1308-09 (11th Cir. 2003).

who communicated with Craig); (3) the Global Institute for Cyber Security Research (Craig acted as a director of this entity and stated that a GICSR trust was related to Dave's bitcoin, (e.g., D.E. 24-1, 14); (4) Deborah Kobza (GICSR executive); (5) Joseph Karp (Ira's prior counsel who had communications with Craig and his counsel); (6) Carter Conrad (Dave's business partner who also communicated with Craig); (7) Kourtnery Karr (Dave's ex-fiancé); and (8) Computer Forensics, LLC (Dave's business, possible business records, and vendors, e.g., email storage). Furthermore, the following witnesses all reside *in the United States*: (9) Uyen Nguyen;[14] (10) Gavin Andresen;[15] (11) Bob Radvanovsky (third person in W&K's DHS proposals); (12) the U.S. Department of Homeland Security (Craig claimed they funded the creation of bitcoin (D.E. 24-6)); (13) Ross Ulbricht (creator of Silk Road who met with Craig at least once (D.E. 24-1 at 49)); (14) Wei Dai (Craig claimed to have been in communication with him while developing Bitcoin (*id*. at 29)); (15) Michele Seven (confidant of Craig).

Further, the Court's inability to compel a few foreign "Australian" witnesses to testify does not support dismissal where, as here, Defendant has the ability to obtain the evidence because it consists of his own testimony/documents and those of his agents, employees, and companies controlled by him.[16] Defendant does not need the Court's compulsory process to compel testimony

---

[14] A "powerful figure in the trust" (D.E. 24-1 at 37), director of key companies (*id*.), signatory to D.E. 24-15, and close confidant/agent who assisted Craig's acquisition of W&K's assets (D.E. 24, ¶¶138-39). Ms. Nguyen is likely one of the most important witnesses in this case.

[15] Craig claims to have been in communication with Mr. Andresen when Bitcoin was being developed. D.E. 24-1 at 32. Craig told him about the trust, his bitcoin holdings, and what happened to them. *Id*. at 63. Mr. Andresen claimed Craig "cleared up a lot of mysteries, including why he disappeared when he did and what he's been busy with since 2011. *Id*. at 81. Further, Mr. Andresen witnessed Craig's use of the private keys related to the bitcoins at issue in this case. *Id*. at 63-67.

[16] *Wagner v. Island Romance Holidays, Inc.*, 984 F. Supp. 2d 1310, 1315 (S.D. Fla. 2013) (non-U.S. witnesses are insufficient to overcome strong presumption of home forum because witnesses are "at least arguably associated with or employees" of defendant); *TNT USA Inc.*, 434 F. Supp.

18

from these individuals/entities. *Id.* Further, to the extent a few pieces of evidence are not controlled by Defendant, Plaintiff and/or Defendant can seek it through letters rogatory. *See Belik v. Carlson Travel Grp.*, 26 F. Supp. 3d 1267, 1286 (S.D. Fla. 2013) (foreign witnesses didn't require dismissal because letters rogatory were available); *Sun Trust Bank*, 184 F. Supp. 2d at 1264 (same).

Finally, regarding costs, the main "foreign" witnesses reside in the United Kingdom, not Australia. Specifically, the Defendant, his wife, Robert MacGregor, and Andrew O'Hagan. Notably, the UK is 4000 miles from Florida, but 9400 miles from Australia, thus making it cheaper and more convenient to have these witnesses come to Florida over Australia.

The public factors favor Florida as well. Both the U.S. and Florida have a strong interest in providing a local forum for their citizens who suffer harm on "home soil." *SME Racks*, 382 F.3d at 1104. Second, all claims are brought under Florida and U.S. law, making this forum the one most familiar with applicable law. Third, jurors in this forum plainly have a connection to this dispute and will be intimately concerned that Defendant stole billions of dollars of assets from a Florida company and estate.

The Court "must ensure that plaintiffs can reinstate their suit in the alternate forum without undue inconvenience or prejudice." *Wilson*, 590 F.3d at 1272. Plaintiffs would suffer severe economic and personal inconvenience and prejudice by being forced to litigate in a foreign jurisdiction that is, as Defendant notes, 24 hours and more than 10,000 miles away from their home and where they suffered their injuries. D.E. 33 at 23-24. Unlike Defendant, Plaintiffs are not wealthy. Dismissal to litigate in Australia would *severely* prejudice these Florida Plaintiffs.

Thus, all private, public, and other factors weigh against dismissing this case under the

---

2d at 1334; *Sun Trust Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1263-64 (S.D. Fla. 2001).

discretionary doctrine of forum non conveniens. Consequently, Plaintiffs believe Defendant will not prevail on this doctrine on the merits. But at this time and under these facts, Defendant cannot credibly claim Plaintiffs' chosen forum is so wrong that it is a "forgone conclusion" this Court will exercise its discretion to override "the strong presumption in favor" of Plaintiffs' chosen forum.

## <u>CONCLUSION</u>

Plaintiffs have shown Defendant's motion to stay discovery is premature, will materially interfere with this Court's scheduling order, and will prejudice Plaintiffs. Further, Plaintiffs have demonstrated their claims are not "especially dubious" and dismissal with prejudice is nowhere near a "forgone conclusion." Consequently, Plaintiffs respectfully request this Court deny Defendant's Motion for Temporary Stay of Discovery.

Dated:  July 9, 2018

Respectfully submitted,

By: */s/Velvel Devin Freedman*
Velvel (Devin) Freedman
**BOIES SCHILLER FLEXNER LLP**
100 SE Second Street
Miami, FL 33131
Tel.      (305)539-8400
Fax.     (305)539-1307
Email: vfreedman@bsfllp.com

Kyle Roche
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Tel.      (914)749-8200
Fax.     (914)749-8300
Email: kroche@bsfllp.com
*Admitted pro hac vice*

Attorneys for Plaintiffs
IRA KLEIMAN in his capacity as Personal
Representative of the Estate of David Kleiman and
W&K Info Defense Research, LLC.

## <u>CERTIFICATE OF SERVICE</u>

     I HEREBY CERTIFY that on July 9, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which caused a copy to be served on all counsel of record.

*/s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman
