UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-80176

IRA KLEIMAN,
as personal representative of
the estate of David Kleiman,

    plaintiff,

v.

CRAIG WRIGHT.
_____/

**DEFENDANT'S REPLY IN SUPPORT
OF THE MOTION TO STAY DISCOVERY**

Even though a reasonable likelihood of dismissal is the legal standard for staying discovery during the pendency of a motion to dismiss, Plaintiff[1] demands premature, costly, intrusive and burdensome, worldwide discovery after *voluntarily dismissing* his original complaint in the face of a well-taken motion to dismiss, and filing an amended complaint with no more merit than the original, *which he also intends to amend*. Plaintiff's Opposition [D.E. 40] ("Opposition" or "Opp.") to Dr. Wright's Motion to Stay Discovery [D.E. 36] ("Motion to Stay") accuses Dr. Wright of "misconstruing the law," in arguments that not only misconstrue cases but rely on deceptive truncations of Florida Statutes for frivolous misstatements of the law.[2]

---

[1] Ira Kleiman, the real-party-in-interest ("Plaintiff") here, is Dave Kleiman's brother and personal representative of his estate. AC ¶ 49. He recently reincorporated W&K Info Defense and Research LLC, naming himself as its managing member to use is as a nominal plaintiff in this case. *See* MTD at 3.

[2] Plaintiff argues that that "the absence from the State of the person to be sued" tolls the running of limitations periods under Fla. Stat. § 95.051(1)(a). *See* Opp. at 15. This theory couldn't possibly be correct or no claim against a non-resident defendant ever would be time-barred. And it isn't correct, because *the same statute* expressly provides that "[p]aragraphs (a)-(c) shall not apply *if service of process* or service by publication *can be made* in a manner sufficient to confer jurisdiction to grant the relief sought." Fla. Stat. § 95.051(1). Plaintiff's frivolous argument relies

Plaintiff fails to rebut Dr. Wright's demonstration of "good cause and reasonableness" for a stay of costly and intrusive worldwide discovery pending resolution of Dr. Wright's Motion to Dismiss the Amended Complaint ("Motion to Dismiss" or "MTD") [D.E. 33]. *See Zamber v. Am. Airlines, Inc.*, 2017 WL 5202748, at *3 (S.D. Fla. 2017) ("The test for whether a stay should be granted pending the resolution of a motion to dismiss is straightforward: a stay 'is appropriate where the movant shows good cause and reasonableness.'") (quoting *Pierce v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 12528362, at *1 (S.D. Fla. 2014)).

In this case—already dismissed once (and voluntarily dismissed, at that)—Dr. Wright would be seriously prejudiced if he were forced to scour the world for more than a decade's worth of documents and data purportedly relevant to a second complaint that also is due to be dismissed, on any of seven different grounds set forth in the Motion to Dismiss. *Zamber,* 2017 WL 5202748, at *3 ("'Good cause' for a stay can exist where a pending motion to dismiss will dispose of the entire action if granted . . . . A discovery stay is [] reasonable to avoid unnecessary expense for the defendant."). Contrariwise, any cost to staying this action pending the resolution of the Motion to Dismiss would, at most, amount to a brief delay that (if necessary) could easily be made up before the scheduled trial date of May 27, 2019. *See Pierce*, 2014 WL 12528362, at *1 ("[T]he Court finds that a brief stay in discovery would not prejudice Plaintiff and should the case proceed, Plaintiff will have ample opportunity to conduct discovery.").

Dr. Wright's Motion to Dismiss is every bit as likely to entirely dispose of this action as his first motion was. That motion [D.E. 12] inspired Plaintiff to concede its merit by abandoning his complaint and seeking time to file a new one, just eight days after the first motion to dismiss. *See* D.E. 14. Moreover, four days after service of the pending Motion to Dismiss, Plaintiff stated

---

on a *deliberate truncation and misrepresentation* of Section 95.051. It violates Rule 11, and Dr. Wright reserves all rights.

his intention to seek leave to amend the amended complaint [D.E. 24]. *See* Letter from Plaintiff (attached as Exhibit A). It takes a lot of nerve to oppose a stay of costly and intrusive worldwide discovery during the pendency of a motion to dismiss an amended complaint *that Plaintiff already said he hopes to further amend*.

In any event, the amended complaint is highly likely to face a fate similar to that of the original, because it fails for the same reasons, including lack of standing, res judicata, international abstention, forum non conveniens, lack of personal jurisdiction, and multiple pleading defects. Moreover, the amended complaint injects new exhibits, adding to the bounty of documents supporting each ground for dismissal and further contradicting Plaintiff's incoherent, time-barred claims. Among the newly added exhibits is an email from Dave Kleiman to Dr. Wright that renders Plaintiff's claims impossible (let alone plausible). *See* MTD at 42-43.

We demonstrate below that nothing in Plaintiff's Opposition alters the conclusion that a stay of discovery pending resolution of the Motion to Dismiss is warranted to prevent unfair prejudice to Dr. Wright and the squandering of judicial and party resources. *See Chevaldina v. Katz*, 2017 WL 6372620, at *3 (S.D. Fla. 2017) ("Defendants should not be required to suffer monetary burdens or expenses when it appears that Plaintiff's claims may fail for several reasons as a matter of law."). The Motion to Stay is well-founded and should be granted.

## ARGUMENT

### A. The Opposition Shows the Amended Complaint Should Not Survive Dismissal

In the Opposition, Plaintiff previews the arguments for his opposition to the Motion to Dismiss (due tomorrow). *See* Opp. at 8-20. This preview demonstrates that a discovery stay is warranted because Plaintiff's arguments will not save his amended complaint from dismissal.

3

### 1. *Discovery Should be Stayed Because Plaintiff's Opposition Demonstrates That His Claims Should Be Dismissed for Lack of Standing*

#### a. *Plaintiff Failed to Adequately Allege Standing to Bring the Estate's Purported Claims*

The amended complaint seeks to recover bitcoins and intellectual property allegedly "stolen" by Dr. Wright from two entities. *See* MTD at 12-15. According to Plaintiff, the first is an oral partnership between Dr. Wright and Dave Kleiman that existed until February 2011 (when W&K was created), and the second is W&K itself. *See id.* at 12-13. Dave Kleiman's estate is subject to dismissal because Plaintiff did not adequately allege standing to sue on behalf of the purported pre-February 2011 entity and, based on Plaintiff's allegations, the amended complaint's other claims for intellectual property and bitcoins belong solely to W&K. *See id.*

Plaintiff did not allege standing to sue on behalf of the purported pre-February 2011 entity because he failed to allege four of the five elements needed to establish its existence and, in any case, the statute of frauds would bar all claims brought on its behalf. MTD at 13-15. Thus, a "preliminary peek" at Plaintiffs' arguments against dismissal confirms a stay of discovery is warranted because the alleged claims of Dave Kleiman's estate are due for dismissal.

#### b. *Plaintiff Admits He Does Not Know Whether He Has Standing to Cause W&K to sue Dr. Wright*

Dr. Wright demonstrated in his first motion to dismiss that Dave Kleiman's estate does not have standing to sue Dr. Wright directly for the recovery of any alleged W&K property. *See* D.E. 12 at 10-12. Plaintiff attempted to amend his complaint by adding W&K as a plaintiff (after he reinstated that dissolved entity for this very purpose). *See* D.E. 24. The amended complaint put in issue whether Plaintiff had authority to cause W&K to sue Dr. Wright by, among other things, admitting that Plaintiff is "unclear" about W&K's ownership structure. *See* MTD at 5.

The admission that Plaintiff is "unclear" about W&K's ownership contradicts his more recent argument that he adequately alleged standing to cause W&K to sue Dr. Wright because the amended complaint "clearly alleges that 'Dave was the sole member of W&K,' and that 'Craig did not have a direct ownership interest in W&K[.]'" *See* Opp. at 9 (internal citation omitted). But the amended complaint contradicts and undermines those supposedly "clear[]" allegations, saying also that Dave Kleiman may only have owned 50% of W&K's shares, that Dr. Wright may also have had a 50% voting in interest in W&K, and that maybe none of these contradictory allegations are true because Plaintiff has no personal knowledge of W&K's operation or ownership structure during Dave Kleiman's lifetime. *See* MTD at 15. Thus, a peek at the arguments Plaintiff intends to make in his opposition to the Motion to Dismiss confirms that a stay of discovery is warranted because W&K and its claims are due for dismissal.

> **2. Discovery Should Be Stayed Because Plaintiff's Arguments Against Res Judicata and International Abstention Ignore the Well-Settled Rule that the Court Allegedly Defrauded is the Court that Gets to Decide Whether it was Defrauded**

Plaintiff argues that the Court should not dismiss his claims on grounds of res judicata or international abstention because the Australian Judgments obtained by Dr. Wright against W&K are invalid. *See* Opp. at 9, 11. He claims that Dr. Wright obtained them by means of extrinsic fraud because of alleged misconduct that prevented Plaintiff, as a purported successor owner of W&K, from participating in the Australian lawsuits. *Id.* at 10. Of course, those lawsuits were not against any shareholder of W&K, but the entity itself. More importantly, Plaintiff alleges that, *because of allegedly fraudulent evidence Dr. Wright submitted*, the Supreme Court of New South Wales found that W&K's authorized representative was before it and provided valid consents to the Australian Judgments. *See* AC ¶¶ 120-21; Exs. 19, 30.

5

Thus, the amended complaint—including its exhibits—purports to allege a claim that Dr. Wright committed *a fraud on the court* in order to obtain the Australian Judgments against W&K. Fraud on the court is intrinsic fraud, as a matter of law, and is subject to the bright-line rule that a court which allegedly was defrauded by a litigant is the court that gets to decide whether it was defrauded. *See* MTD at 29; *e.g., Florida Evergreen Foliage v. E.I. Dupont De Nemours & Co.*, 336 F. Supp. 2d 1239, 1271 (S.D. Fla. 2004), *aff'd,* 470 F.3d 1036 (11th Cir. 2006) ("[T]he proper forum in which to assert that a party has perpetrated a fraud on the court is the court which allegedly was a victim of that fraud.") (internal quotation marks omitted).

Although Plaintiff now (necessarily) labels his claim one of "extrinsic" fraud, he effectively admits that the alleged fraud was intrinsic. He argues that Dr. Wright "filed papers in Australia *fraudulently purporting to appear for* W&K . . . and then *falsely* consenting to judgment," all before the Australian court. Opp. at 10-11 (emphasis in original). As Plaintiff admits, "false evidence that was 'submitted to and received consideration by the court'" is the "type of fraud that is for the defrauded forum to unwind." Opp at 10, n.4 (citation omitted).

Plaintiff's admission should be the end of the matter (and this case) on the motion to dismiss, but even litigating Plaintiff's theory would require this Court to look over the shoulder of the Supreme Court of New South Wales from the other side of the globe, in considering whether to "void" its finding that W&K appeared before it almost five years ago. The Supreme Court of New South Wales undoubtedly is in the best position to decide whether fraudulent evidence was submitted to it in connection with its own judgments. *See* MTD at 26. Thus, a peek at Plaintiff's arguments in opposition to the Motion to Dismiss confirms that a stay of discovery is warranted because Plaintiff's claims regarding the purported intellectual property are due to be dismissed on grounds of res judicata and international abstention.

6

### 3. *Discovery Should be Stayed Because the Amended Complaint Doesn't Make Sense*

Plaintiff argues that he has alleged a coherent claim because his allegations are "consistent and straight forward," and that his story is "complicated and long" only because of the "convolutedness" of Dr. Wright's alleged fraud. Opp. at 15. Plausibility has nothing to do with whether the amended complaint is long or complicated. *See* MTD at 40-47. Rather, the complaint does not state a plausible claim because Plaintiff's story doesn't make any sense. *Id*.

Among other things, the Opposition fails to address the amended complaint's pandemic contradictions, further contradicted by its exhibits. Those contradictory exhibits include an email from Dave Kleiman to Dr. Wright demonstrating that Plaintiff's claims about supposedly stolen bitcoins and intellectual property are false. *See* MTD at 40-47. Further, the Opposition fails to address the implausibility (and, at times, absurdity) of Plaintiff's story, including the absurd notion that Wright would contact Plaintiff to alert him to the existence of bitcoins that Wright already had stolen and had the private keys to control. *Id*. at 44-47. Thus, a preliminary peek at Plaintiff's arguments in opposition to the Motion to Dismiss confirms that a stay of discovery is warranted because Plaintiff did not plead a plausible claim against Dr. Wright.

### 4. *Discovery Should be Stayed Because the Opposition Demonstrates Plaintiff's Inability to Dispute That His Claims are Time-Barred*

In response to Dr. Wright's argument that Plaintiff's claims are time-barred, Plaintiff blatantly misstates and misrepresents Fla. Stat. § 95.015(1)(a). Plaintiff argues that "Florida law expressly provides that 'the running of the time under any statute of limitations . . . is tolled by . . . [a]bsence from the state of the person to be sued.'" Opp. at 15. As noted above, this can't possibly be the law. *Supra* note 2. If it were, no claim against a nonresident defendant ever would be time-barred. Plaintiff's reliance on Fla. Stat. § 95.015(1)(a) is wholly misplaced, because the last paragraph of § 95.015(1) expressly provides that "Paragraphs (a)-(c) shall not

7

apply if service of process . . . can be made in a manner sufficient to confer jurisdiction to grant the relief sought." Fla. Stat. § 95.015(1)(a) plainly applies to defendants who have gone underground or are ducking service. Plaintiff's frivolous argument blatantly misrepresents the statute. At bottom, Plaintiff's claims were not tolled by Fla. Stat. § 95.015(1)(a), and are due to be dismissed.

### 5. Discovery Should be Stayed Because Plaintiff's Opposition Demonstrates That There is No Personal Jurisdiction Over Dr. Wright

Plaintiff's argument that the Court should exercise personal jurisdiction over Dr. Wright ignores Florida law and the very cases Plaintiff travels on. Even if Dr. Wright had minimum contacts with Florida (he doesn't), there could be no personal jurisdiction under Fla. Stat. § 48.193(1)(a)(2), because Plaintiff failed to adequately allege that Dr. Wright committed a tortious act *within Florida*, as part of a claim for tortious conduct specifically directed or "aimed" at injuring a Florida plaintiff in Florida. *Licciardello v. Lovelady*, 544 F.3d 1280, 1287 (11th Cir. 2008) (Defendant "aimed" tortious conduct so as to injure plaintiff in Florida through its unauthorized use of plaintiff's trademark and picture *in Florida*.). For example, Plaintiff cites *Brennan v. Roman Catholic Diocese of Syracuse, New York, Inc.*, 322 Fed. Appx. 852 (11th Cir. 2009). In *Brennan*, the court exercised personal jurisdiction over a nonresident whose allegedly tortious communications were directed at the plaintiff in Florida and allegedly caused plaintiff to suffer damages in Florida from an alleged intentional infliction of emotional distress. *Id*. at 855.

In contrast, there is no personal jurisdiction over a nonresident defendant alleged to have committed a tort (even an intentional tort) against a Florida resident, where the tortious conduct was not intentionally aimed at a Florida plaintiff and intended to cause that plaintiff's injuries in Florida. *See* MTD 34-36. For example, in *Banco de los Trabajadores v. Cortez Moreno,* the plaintiff sued a Guatemalan bank and its directors--who allegedly were trying to murder him--for

assault and battery. 237 So. 3d 1127 (Fla. 3d DCA 2018). Although the plaintiff was a Florida citizen, the Third DCA found no personal jurisdiction over the nonresident defendants because no element of the alleged assault and battery occurred *in Florida*. *Id*. at 1136.

To establish jurisdiction over claims based on an alleged conversion, the allegedly tortious conduct must be directed to, and the plaintiff's alleged injuries must be suffered in, the forum where the property was taken or ultimately was converted through the defendant's wrongful exercise of dominion and control over the property. In *Wiggins v. Tigrent, Inc.*, 147 So. 3d 76, 87 (Fla. 2d DCA 2014), the plaintiff sued a nonresident defendant for conversion, alleging that the nonresident had converted funds he was obligated to process and ultimately transfer to the plaintiff's bank account in Florida, where the plaintiff was headquartered. *Id.* at 76, 87. The court found no personal jurisdiction over the nonresident because the alleged conversion did not occur in Florida. *Id.* at 87. It occurred either in Delaware, where the funds were withdrawn, or Washington, where the nonresident defendant gained dominion and control over the funds. *Id.*

Every one of Plaintiff's purported claims arises from Dr. Wright's alleged conversion of certain supposed bitcoins and intellectual property. Bitcoins, like fungible currency, are not subject to a conversion claim. MTD at 47-48. But even if they were, and even if the supposed intellectual property at issue actually existed, Plaintiff did not allege that their purported conversion occurred in Florida. In fact, he alleges that Dave Kleiman purposely sent those bitcoins and intellectual property out of Florida, to Dr. Wright and global trusts located in countries where they would not be subject to the jurisdiction of this Court or any court in the United States. *See* MTD at 26-27, 31, 35-37. Moreover, Plaintiff does not allege that Dave Kleiman ever shared the private keys to his bitcoins with anyone in Florida, or that Dr. Wright ever did anything in Florida, physically, electronically, or otherwise, to obtain these purported

9

bitcoins or intellectual property, which were located overseas. Thus, a preliminary peek at the Plaintiff's arguments against the Motion to Dismiss his amended complaint (which he intends to further amend),[3] confirms that discovery should be stayed because Plaintiff did not plead a legally sufficient basis for personal jurisdiction over Dr. Wright, and even if he had, those allegations would fail because minimum contacts are lacking.

### B. Discovery Should be Stayed Because Plaintiff Has Wholly Ignored 13 Cases That Support Staying Discovery Pending Resolution of the Motion to Dismiss

Plaintiff falsely represents that the Motion to Stay relies exclusively on *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997), and misrepresents some supposedly strict standard for staying discovery during the pendency of a motion to dismiss. *See* Opp. at 4. The Motion to Stay cited thirteen (13) post-*Chudasama* decisions demonstrating that a stay is warranted here to avoid squandering judicial and party resources on premature, costly, intrusive and burdensome, worldwide discovery (1) in an ill-founded action that shouldn't have been filed in this country, state or Court, (2) which was filed here for the sole purpose of avoiding judgments of an Australian court, (3) in a blatant attempt at improper forum shopping.[4] Plaintiff didn't even address any of these thirteen decisions, each of which supports the stay sought here. *See* Exhibit B.

Further, in the Opposition, Plaintiff misconstrued governing law by arguing that *Chudasama* and its progeny somehow limit, instead of endorse, this Court's inherent power to grant the stay sought here. *See* Opp. at 4. To the contrary, *Chudasama* highlighted that it is

---

[3] Plaintiff has stated his intention to further amend his amended complaint to allege a civil theft claim, *see* Exhibit A, despite the fact that there is no such claim for the supposed "theft" of fungible assets like money, which bitcoins surely are. *See* MTD at 47-48; *Batlle v. Wachovia Bank*, 2011 WL 1085579, at *3 (S.D. Fla. Mar. 21, 2011). Further, a civil theft claim would not support exercising personal jurisdiction over Dr. Wright, and would fail for the same reasons as Plaintiff's conversion claim. *Id.*

important for the Court to use its broad discretion to avoid imposing costly discovery in actions that, like this one, are due to be dismissed. *E.g.*, *Chevaldina v. Katz*, 2017 WL 6372620, at *3 (S.D. Fla. 2017). The *Chevaldina* court noted that the defendants there (like Dr. Wright here) already had incurred "tens of thousands of dollars in attorneys' fees for an action that is not properly before this Court," and held "that it would be a continued waste of judicial economy to allow Plaintiff to litigate this action when the entire case may soon be dismissed." *Id.* (citing *Chudasama*, 123 F.3d at 1368). The thirteen (13) post-*Chudasama* cases that Plaintiff ignored demonstrate that this principle commonly and frequently justifies granting a stay of discovery even where dismissal of the case is far less certain than it is here. *See* Exhibit B.

### C. The Court Has Broad Discretion to Rule on the Motion to Stay Before the Motion to Dismiss Has Been Fully Briefed

Plaintiff's argument that the Motion to Dismiss must be fully briefed before the Court even considers the Motion to Stay discovery is a red herring. *See* Opp. at 5. The Court has broad discretion to order the brief stay requested by Dr. Wright, because Dr. Wright has more than demonstrated that an order staying discovery is supported by "good cause and reasonableness" based on his Motion to Dismiss and its numerous and compelling grounds for dismissal of this entire action. *Pierce v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 12528362, at *1 (S.D. Fla. 2014); *Zamber v. Am. Airlines, Inc.*, 2017 WL 5202748, at *4 (S.D. Fla. 2017).

Moreover, and as demonstrated above, Plaintiff's preview of the arguments he intends to make in actually defending (instead of abandoning) the amended complaint (before seeking leave to further amend it), all but guarantee that the amended complaint will be dismissed, either by the Court's hand or Plaintiff's own. Consequently, the Motion to Stay Discovery should be granted.

Dated:  July 16, 2018

          RIVERO MESTRE LLP
          *Attorneys for Craig Wright*
          2525 Ponce de Leon Boulevard,
          Suite 1000
          Miami, Florida 33134
          Telephone: (305) 445-2500
          Fax: (305) 445-2505
          Email: arivero@riveromestre.com
          Email: jmestre@riveromestre.com
          Email: arolnick@riveromestre.com
          Email: dsox@riveromestre.com
          Email: receptionist@riveromestre.com

          By: s/ Andres Rivero
          ANDRES RIVERO
          Florida Bar No. 613819
          JORGE A. MESTRE
          Florida Bar No. 88145
          ALAN H. ROLNICK
          Florida Bar No. 715085
          DANIEL SOX
          Florida Bar No. 108573

**CERTIFICATE OF SERVICE**

    I certify that on July 16, 2018, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

          s/ Daniel Alvarez Sox
          Daniel Alvarez Sox