# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 18-cv-80176

IRA KLEIMAN,
as personal representative of
the estate of David Kleiman,

      Plaintiff,

v.

CRAIG WRIGHT,

      Defendant.

_____/

## DEFENDANT'S REPLY IN SUPPORT OF THE
## MOTION TO DISMISS THE AMENDED COMPLAINT[1]

---

[1] For purposes of this reply, **"Plaintiff"** shall refer to Ira Kleiman because he is the real-party-in-interest plaintiff here. He is Dave Kleiman's brother and personal representative of his estate (AC ¶ 49). **"W&K"** shall refer to W&K Info Defense and Research LLC, which Plaintiff recently reinstated and named himself as the managing member to use as the nominal plaintiff in this action. **"MTD"** shall refer to Dr. Wright's Motion to Dismiss the Amended Complaint [D.E. 33]. **"Opposition"** or **"Opp."** [D.E. 50] shall refer to Plaintiff's Memorandum in Opposition to the Motion to Dismiss. **"AC"** shall refer to the Amended Complaint [D.E. 24].

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ...................................................................................................ii

INTRODUCTION..........................................................................................................1

1.   The Court Should Dismiss on Grounds of *Forum Non Conveniens* .......................2

    *A.*   *Plaintiff's Choice of Forum is Entitled to Little or No Deference*.................2

        *1.*   *Deference to Plaintiff's Choice of Forum is Unwarranted Because This is a Dispute Over Foreign Assets* ....................................3

        *2.*   *Plaintiff's Choice of Forum Warrants No Deference Where the Alleged Acts Were Committed Exclusively Outside of the United States by a Foreign Party*........................................................3

        *3.*   *The Attenuated Connection Among the Parties, Dispute, and Florida Diminishes any Deference That Might Have Been Afforded to Plaintiff's Choice of Forum* ....................................................4

    *B.*   *Dr. Wright Has Demonstrated That It Would Be Materially Unjust to Adjudicate This Dispute Anywhere in the United States*.............................6

        *1.*   *The Unavailability in this District of Sources of Evidence Identified by Plaintiff Would Make It Materially Unjust to Adjudicate this Action in the United States*............................6

        *2.*   *It Would Be Materially Unjust to Force Dr. Wright to Relitigate a Dispute on the Other Side of the World from the Place Where It Already Was Adjudicated in His Favor* ........................8

        *3.*   *There are Few if Any Sources of Evidence in the United States* ....................................................................................................9

    *C.*   *Plaintiff's Fraud Allegations Weigh Heavily in Favor of Dismissing this Action on Grounds of Forum Non Conveniens* ...................11

2.   The Court Should Dismiss this Action on Grounds of International Comity ..........................................................................................................................12

    *A.*   *It is Impossible to Adjudicate This Dispute in Florida Without this Court Acting as If It Were a Court of Appeals for the Supreme Court of New South Wales*..............................................................................12

    *B.*   *Plaintiff's Allegation That the Australian Judgments Are Void Has No Bearing on International Comity* ...............................................................13

3.   W&K's Claims are Barred by Principles of *Res Judicata*.....................................15

    *A.*   *W&K was Properly Served Under the Hague Convention* ............................15

    *B.*   *Plaintiff's "Extrinsic Fraud" Theory Fails as a Matter of Law* ...................18

      C.      *W&K's Alleged Claims Here Were Compulsory Counterclaims in the Australian Lawsuits* ....................................................................... 19

**4.**    **There Is No Personal Jurisdiction Over Dr. Wright** ............................................... 20

      A.      *Plaintiff's Theory of Long-Arm Jurisdiction Under Fla. Stat. § 48.193(1)(a)(2) Never Was, and is Not Now, the Law of Florida* ................ 20

      B.      *Even Under Posner's Incorrect "Effects Test" or "Injury Only" Standard, Plaintiff Failed to Adequately Allege Personal Jurisdiction* ........................................................................................... 22

      C.      *Dr. Wright is Not Subject to "Doing Business in Florida" Long-Arm Jurisdiction* ......................................................................................... 23

**5.**    **The Case Should be Dismissed for Lack of Standing** ............................................. 23

      A.      *Plaintiff Lacks Standing and Cannot Amend to add W&K as a Party* ..................................................................................................... 23

      B.      *Plaintiff Failed to Allege That the Purported Partnership Agreement was in Writing* ...................................................................... 24

**6.**    **The Amended Complaint Still Fails to State a Plausible Claim** ............................ 25

      A.      *The Complaint's Allegations are Directly Contradicted by Its Exhibits* ................................................................................................. 25

      B.      *Bitcoin is Money and Must be Specific and Identifiable for a Conversion Claim to Survive Dismissal* ......................................... 27

      C.      *Plaintiff Failed to Adequately Allege a Claim for Constructive Fraud* ................................................................................................... 29

**CONCLUSION** ....................................................................................................................... 30

**CERTIFICATE OF SERVICE** ............................................................................................. 31

## <u>INTRODUCTION</u>

Plaintiff's Memorandum in Opposition to the Motion to Dismiss [D.E. 50], is a laborious recitation of baseless arguments defending speculative, conflicting, and conclusory allegations, some stated or recast for the first time in the Opposition. It further demonstrates that this case is due for dismissal on numerous grounds. We list those grounds below, then reply to the Opposition in greater detail, but as a threshold matter, we wish to remind the reader that this case amounts to a demand for relief from a validly rendered judgment of an English-speaking, British Commonwealth court. Nothing Plaintiff alleges changes this, or the extensive body of law holding that federal courts don't give relief from another federal court's judgment, let alone a state or foreign court's judgment, based on a purported intrinsic fraud on the court that issued the prior judgment, which is what Plaintiff's complaint boils down to.

Having finally realized this, Plaintiff now argues that this Court may second-guess the Australian court by falsely asserting that he was "prevented" by lack of notice, a type of extrinsic fraud, from appearing in the Australian Lawsuits, ***despite the fact that service of process was timely made*** in accordance with Australian law, at the address of record for W&K's registered agent. W&K's registered agent was the late Dave Kleiman, and his apartment was listed as the address of record. Plaintiff Ira Kleiman, Dave's brother ***and personal representative***, cannot plausibly argue that he didn't know his late brother's address, didn't have the keys, or didn't know he was supposed to check the mail box, in which there was timely, actual notice of the Australian Lawsuits. Florida, like all common-law jurisdictions, requires plaintiffs alleging fraud to have exercised reasonable diligence for their own protection. This plaintiff may not now claim he did anything of the sort after ignoring timely service of process in the Australian Lawsuits. Instead of appearing in those lawsuits, Plaintiff sat on his hands for five years, then came into this Court falsely claiming he'd been "prevented" from appearing. His lassitude drives home the correctness of dismissal on the following grounds:

1

*First*, the Court should dismiss this case on *forum non conveniens* grounds because Australia is the proper, alternative forum. *Second*, international comity compels dismissal of this action because this Court may not act as an appellate court to review judgments rendered against W&K by an Australian court. *Third*, W&K's claims are barred by *res judicata* because they were previously decided by an Australian court nearly five years ago, in which W&K was properly served. *Fourth*, the Court does not have personal jurisdiction over Dr. Wright because no tort occurred in Florida. *Fifth*, the amended complaint fails to demonstrate Plaintiff's standing to sue because of insufficient factual allegations to plausibly allege that a partnership existed between Dave Kleiman and Dr. Wright, and because Plaintiff lacked standing at the outset, he was not permitted to attempt to manufacture standing by amending the complaint to join another party. *Finally*, the amended complaint should be dismissed for failure to state plausible claims against Dr. Wright.

1.      **The Court Should Dismiss on Grounds of *Forum Non Conveniens***

  *A.      Plaintiff's Choice of Forum is Entitled to Little or No Deference*

Plaintiff argues that the Court must give almost unequivocal deference to his choice of a Florida forum, because Dave Kleiman was and W&K is a Florida citizen and, as such, the state should provide him a forum to adjudicate his claims. Opp. at 16-17. While there is a general presumption favoring a U.S.-based plaintiff's choice of forum, the Court has broad discretion to find that deference "diminished" when, as here, the action relates to foreign assets and arises from the parties' alleged conduct outside of the United States.[2]

---

[2] *See Aaron Data Sys., Inc. v. GLD Int'l, Inc.*, 2018 WL 1973653, at *4, 8 (S.D. Fla. 2018), *report and recommendation adopted,* 2018 WL 1972439 (S.D. Fla. 2018) (Florida-based plaintiffs, including Florida corporation, brought conversion and breach of fiduciary duty claims in cryptocurrency-related action that was dismissed on *forum non conveniens* grounds, because "the very nature of this case militates against according Plaintiff's forum choice much, if any, deference" where, "[o]n the whole, the conduct giving rise to the alleged injury in this case took place in Queensland, Australia, involved Australian gold, Australian actors, Australian documents, and in most other pertinent respects was centered in Australia"); *J.C. Renfroe &*

1.    *Deference to Plaintiff's Choice of Forum is Unwarranted Because This is a Dispute Over Foreign Assets*

Plaintiff's insistence that the Court defer to his choice of a Florida forum is paradoxical, because the amended complaint purports to state claims for the recovery of bitcoins and intellectual property that Dave Kleiman allegedly sent, pushed, or kept out of Florida, expressly beyond the reach of this or any other U.S. jurisdiction. MTD at 31 (citing AC ¶¶ 84, 88, 93-94). Based on the amended complaint, Dave Kleiman gave Dr. Wright purported intellectual property and private keys needed to use bitcoins, and supposedly commingled those bitcoins with Dr. Wright's bitcoins in shared trusts overseas, including in the Seychelles and Singapore. *Id*. Thus, Plaintiff's choice of this forum is afforded minimal deference because Florida does not have a localized interest in providing Plaintiff a forum to retrieve assets that he sent, pushed, or kept out of Florida and all other U.S. jurisdictions.[3]

2.    *Plaintiff's Choice of Forum Warrants No Deference Where the Alleged Acts Were Committed Exclusively Outside of the United States by a Foreign Party*

Further, any deference that generally might be afforded to a plaintiff's forum choice is diminished here because Plaintiff did not allege that Dr. Wright **did anything** in the United States, physically or virtually, to obtain the purported intellectual property or bitcoins. *See, e.g.*, *J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co., Ltd.*, 515 F. Supp. 2d 1258, 1275 (M.D. Fla.

---

*Sons, Inc. v. Renfroe Japan Co., Ltd.*, 515 F. Supp. 2d 1258, 1275 (M.D. Fla. 2007) (diminished deference given to Florida plaintiffs' choice of a Florida forum where action arose from plaintiffs' overseas business activities and the parties' conduct overseas); *Warter v. Boston Sec., S.A.*, 380 F. Supp. 2d 1299, 1314 (S.D. Fla. 2004).

[3] *See Aaron Data Sys., Inc.*, 2018 WL 1973653, at *4 (Florida plaintiffs' lawsuit about "a deal centered around Australian gold" dismissed for *forum non conveniens*); *Warter*, 380 F. Supp. 2d at 1314. ("Although courts usually afford deference to a Plaintiff's choice of forum, when 'an American plaintiff chooses to invest in a foreign country and then complains of fraudulent acts occurring primarily in that country, the plaintiff's ability to rely upon citizenship as a talisman against *forum non conveniens* dismissal is diminished.'") (quoting *Sussman v. Bank of Israel,* 801 F. Supp. 1068, 1073 (S.D.N.Y.1992), *aff'd,* 990 F.2d 71, 71–72 (2d Cir.1993)).

2007) (diminished deference given to Florida plaintiffs' chosen Florida forum, because "plaintiffs here are suing over alleged conduct by Japanese individuals and corporations which occurred entirely in Japan."). Moreover, Plaintiff does not allege that any bitcoins were mined *into* Florida, meaning that there is no allegation that the alleged bitcoins ever had a physical or virtual presence in this state.[4] *See* AC ¶ 26 (mining bitcoin is an internet-based activity).

>    3.   *The Attenuated Connection Among the Parties, Dispute, and Florida*
>         *Diminishes any Deference That Might Have Been Afforded to Plaintiff's*
>         *Choice of Forum*

Plaintiff touts W&K's place of incorporation and Dave Kleiman's residence as alleged facts that compel deference to his choice of forum. MTD at 16-17. A plaintiff's incorporation or residence in Florida is relevant to whether the plaintiff's choice of a Florida forum is entitled to any deference at all, not the amount. The amount of deference afforded (if any) varies, depending on the connection among the plaintiff, the dispute, and the state. *See Aaron Data Sys., Inc.*, 2018 WL 1973653, at *9 ("The state with the most significant relationship to the events alleged in Counts 4 and 5 is in Australia, either Queensland State or New South Wales."). Here, that connection was *de minimis* because W&K was a Florida company for approximately *one* year. AC ¶¶ 69, 138; Ex. 3. W&K ceased to exist after a year, because it was administratively dissolved. *Id.* It never was reinstated by Dave Kleiman. *Id.* Moreover, W&K ceased to exist in September 2011, more than a year before the alleged date of the purported theft of bitcoins and intellectual property. *See* MTD at 37 (citing AC ¶ 171).

W&K's decision to file its complaint in Florida is not entitled to any deference based on its fleeting existence as a Florida company, which ended more than a year before the alleged

---

[4] To the extent Plaintiff claims that emails he attached to the amended complaint regarding Dave Kleiman's encrypted hard drives (AC Ex. 24 at 9-10) constitute an allegation that Dave mined bitcoins into Florida, that allegation would support immediate dismissal of this action. Even assuming they were authentic, those emails would demonstrate that Dave Kleiman's bitcoins were not stolen, but, at most, might be stored on hard drives that are in Plaintiff's possession. Plaintiff cannot access those drives because they are encrypted, and Dave Kleiman did not leave him the passwords needed to unlock and access them.

occurrence of any of the allegedly tortious conduct giving rise to this action, none of which was alleged to have occurred in Florida. *See, e.g.*, *Aaron Data Sys., Inc.*, 2018 WL 1973653, at *4.

Similarly, the connection between Plaintiff and Florida is miniscule because, based on the amended complaint, Dave Kleiman's apartment in Florida was merely a place that housed the computers he used to conduct his overseas business activities (MTD at 26-27), including: (1) allegedly helping Dr. Wright, the "foreign man" from Australia (whom he'd met online), to create a decentralized, global digital currency (AC ¶¶ 58-61); (2) allegedly holding his bitcoins overseas and giving private keys and intellectual property to Dr. Wright, (*id.* ¶¶ 84, 88, 93-94); (3) entering into contracts with Dr. Wright that included choice-of-law and forum-selection clauses selecting the laws and jurisdiction of New South Wales, Australia for any disputes (*id.* Ex. 5 at 4, Ex. 10 at 6); (4) entering into one of those contracts for the creation of an Australian joint venture with Dr. Wright (*id.* Ex. 5 at 4), as confirmed by Dave Kleiman's own email (MTD at 42-43; AC Ex. 4 at 24); and (5) allegedly submitting four applications with Dr. Wright to obtain grants from the U.S. Department of Homeland Security ("DHS") to fund research in Australia. AC ¶ 167; Ex. 4.

The DHS applications (referenced in point 5 above) alone undermine Plaintiff's attempts to characterize Dr. Wright's and Dave Kleiman's alleged business relationship as one centered in Florida. According to Plaintiff, the DHS applications "clearly evidence [Dr. Wright's] participation in operating W&K from Florida to solicit business from the United States DHS." AC ¶ 167. That statement is demonstrably false. The DHS applications seek funding for scholarships and research "to be conducted with Charles Sturt University and [] follow the standard commercialization processes of the University[.]" AC Ex. 4. at 55, 62, 69, 74, 82, 87. Charles Sturt University isn't in Florida, or anywhere else in the United States. It is a public university in Australia with a campus in New South Wales, Australia.[5] What's more, the

---

[5] https://www.csu.edu.au/

applications state that the proposed research would use "an empirical study of in-house software coding practices in Australian companies . . . ." *Id*. Ex. 4 at 85. Thus, if anything, the DHS applications demonstrate that Dr. Wright and Dave Kleiman were requesting funds to support Australian-based work in New South Wales, Australia, and that this is an Australian-based dispute that should be dismissed on grounds of *forum non conveniens*.

> **B.    Dr. Wright Has Demonstrated That It Would Be Materially Unjust to Adjudicate This Dispute Anywhere in the United States**

Even if Plaintiff's forum choice were entitled to the highest possible deference (it is not), Dr. Wright has demonstrated that it would be materially unjust to adjudicate this action in Florida (or anywhere in the United States), because the primary sources of evidence are located outside the Court's compulsory process and the Supreme Court of New South Wales already adjudicated this dispute in Dr. Wright's favor. *See* MTD at 21-26.

> 1.    *The Unavailability in this District of Sources of Evidence Identified by Plaintiff Would Make It Materially Unjust to Adjudicate this Action in the United States*

Plaintiff argues that Dr. Wright has failed to demonstrate that it would be materially unjust to adjudicate this matter in Florida on the notion that Dr. Wright merely conjured up a list of potential witnesses located outside of the United States without demonstrating the importance of their testimony or documents in their possession. Opp. at 21. The importance to this action of those foreign sources of evidence should be obvious to Plaintiff because ***he relied on them exclusively for almost every material allegation*** in the amended complaint. *See* MTD at 21-22. It is disingenuous for Plaintiff to derive his "information and belief" allegations (D.E. 1 at 2) entirely from those foreign sources of evidence and then argue that this matter could be adjudicated conveniently, or at all, without them. *See Ford v. Brown,* 319 F.3d 1302, 1308 (11th Cir. 2003) ("Perhaps the most important 'private interest' of the litigants is access to evidence.").

Plaintiff further argues that Dr. Wright has failed to "prove" that potential foreign witnesses "would not testify" voluntarily in the United States (Opp. at 22), or that their testimony

would be unattainable through The Hague Convention or letters rogatory. Opp. at 24. No such standard exists,[6] and even if it did, the unrebutted affidavit of Australian law expert, Gordon Grieve, definitively demonstrated that Australian law would bar the ATO and its employees from testifying or producing documents without being compelled to do so *by an Australian court*. MTD at 22-24. Similarly, Plaintiff fails to explain how this Court could compel the judges and other employees of the Supreme Court of New South Wales to testify in the United States about who appeared and what occurred in the Australian Lawsuits and their reasons for adjudicating this dispute in Dr. Wright's favor.

      Finally, Plaintiff argues that the Australian-based witnesses and documents (on which he relied almost exclusively for his complaint) are unnecessary because he already has many of the documents and can display them on a computer or print them. He further maintains that foreign evidence can be obtained through The Hague Convention or letters rogatory. These arguments ignore the realities of trial, the rules of evidence (including the need to authenticate documents and the inadmissibility of the hearsay, double hearsay, and triple hearsay on which Plaintiff relies). Those arguments also ignore the well-settled rule that *any one* of the many obstacles to litigating this action in the United States—the unavailability of key witnesses, the risk of spawning foreign proceedings, the need to apply foreign law, or the fact that this matter already was adjudicated by a court in the foreign forum best situated to adjudicate it, which can do so without prejudice to Plaintiff—would compel dismissal on grounds of *forum non conveniens*.

---

[6] *See Aaron Data Sys.,* 2018 WL 1973653, at *5 ("Although Plaintiffs proffer that they have secured his agreement to appear and have submitted a Declaration from Walton to that effect, the Court cannot rely on that Declaration to compel his appearance should he change his mind or should other matters arise precluding his travel from Australia to Florida."). Plaintiff's argument that Dr. Wright should be required to rely on letters rogatory or other substitutes for live witness testimony is, itself, an admission that this case should be dismissed on grounds of *forum non conveniens*. *See Montgomery v. Oberti*, 945 F. Supp. 2d 1367, 1376 (S.D. Fla. 2013) ("[N]o adequate substitute exists for the witnesses' live testimony and that lack of access to [] testimony . . . . strongly outweigh[s] Plaintiff's choice of a United States forum.").

> 2.      *It Would Be Materially Unjust to Force Dr. Wright to Relitigate a Dispute on the Other Side of the World from the Place Where It Already Was Adjudicated in His Favor*

Plaintiff argues that it would be unjust to "force [Plaintiff] into chasing [Dr. Wright] half a world away" to litigate this dispute. Opp. at 18. His characterization as the would-be victim of a *forum non conveniens* dismissal is unwarranted:

*First*, there would be no need to "chase" Dr. Wright, who has agreed to accept service in New South Wales, Australia. MTD at 20.

*Second*, it is Dr. Wright who would suffer severe prejudice and hardship if Plaintiff were allowed to hale Dr. Wright into court halfway around the world, into a forum where he has no contacts and has been only once in his life (for mere days, at a time that predates, and for reasons wholly unrelated to, anything alleged in the amended complaint). That prejudice and hardship is magnified by the fact that Plaintiff essentially seeks relief from adverse judgments of the Supreme Court of New South Wales, in order to relitigate a dispute that already was litigated there and reduced to final judgments in Dr. Wright's favor, by a court that had jurisdiction over the parties and applied its own laws, pursuant to contracts it found binding and enforceable.

*Third*, it would be materially unjust to drag Dr. Wright to Florida based on second-hand, contradictory, and specious allegations as to which Plaintiff has no personal knowledge.

*Fourth*, Plaintiff, who engaged the 70th-largest firm in the United States, which "has established a record of taking on and winning complex, groundbreaking, and cross-border matters in diverse circumstances and industries for many of the world's most sophisticated companies,"[7] isn't suing for a few pennies. Plaintiff is asking the Court to compel an Australian citizen to pay more than $11 billion, an amount that would make Plaintiff (Dave Kleiman's sole heir) one of the top 140 richest people on earth.[8] Forcing Plaintiff to file his claims in Australia is in no way unjust, prejudicial, or even a burden given the extraordinary relief he seeks, which is

---

[7] https://www.bsfllp.com/about-us/overview.html
[8] https://www.forbes.com/billionaires/list/

all the more extraordinary given that a competent, English-speaking, common-law court in Dr. Wright's home country, applying similar procedural safeguards to those employed in this District, decided this dispute in Dr. Wright's favor almost five years ago.

*Finally*, as demonstrated in the Motion to Dismiss and the undisputed affidavit of Gordon Grieve, Plaintiff would suffer no prejudice from litigating this action in the Supreme Court of New South Wales.

### 3.     *There are Few if Any Sources of Evidence in the United States*

The Motion to Dismiss identifies from the amended complaint, and Dr. Wright's sworn declaration, 19 witnesses and companies located in Australia. By comparison, the amended complaint and Plaintiff's initial disclosures did not name a single U.S.-based witness with personal knowledge of any material allegation of the amended complaint. Plaintiff's attempt to remedy that imbalance is misleading and ineffective.

In his Opposition, Plaintiff lists 16 individuals and entities he claims are necessary to prove the factual issues at the core of his claims. He identifies those "core issues" as "the exact relationship between Craig and Dave, the extent of their collaboration in the creation of Bitcoin, the amount of bitcoins they mined in Florida, the type of intellectual property projects they pursued in Florida for W&K, the way they agreed to divide their digital fortune, and the way these assets were actually distributed." Opp. at 19. But his descriptions of these potential witnesses, including their supposed knowledge of the "core issues," fails to demonstrate that they have any personal knowledge of said "core issues."

Plaintiff's list of U.S.-based witnesses includes Patrick Paige, Carter Conrad, and Computer Forensics, LLC ("Computer Forensics"). Despite Plaintiff's descriptions of these potential witnesses, Paige and Conrad were Dave's business partners in Computer Forensics, which has nothing to do with W&K or anything relating to this action. Moreover, the emails attached to the amended complaint demonstrate that Paige and Conrad didn't communicate with Dr. Wright until after Dave passed away and had no personal knowledge of the "core issues." In

fact, when they finally communicated with Dr. Wright, Paige and Conrad asked Dr. Wright to tell them about Dave Kleiman's involvement in bitcoin because they didn't know anything about it. AC Ex. 8 at 4-5. Thus, the proffered testimony of Computer Forensics, Paige, and Conrad would, at most, be insignificant and, more likely, irrelevant or otherwise inadmissible if this action ever were to go to trial here.

Similarly, Plaintiff lists Joseph Karp, Kourtney Karr, and David Kuharick as U.S.-based witnesses. Karp, however, does not have personal knowledge of the "core issues," because Plaintiff admits that the first time he ever communicated with Dr. Wright, through his attorney or otherwise, was more than a year after Dave Kleiman died. Moreover, Plaintiff doesn't argue that Karp was his attorney while Dave Kleiman was alive. Similarly, he doesn't claim to know when Karr was Dave's fiancé or when Kuharick was Dave's accountant, let alone whether either had a relationship with Dave at any time relevant to the amended complaint, or whether either has any personal knowledge of the "core issues."

Another supposed U.S.-based witness—named as two different witnesses on Plaintiff's list, perhaps to make the list appear longer than it is—is the Global Institute for Cyber Security Research ("GICSR") and its CEO, Deborah Kobza. Plaintiff argues that "[Dr. Wright] stated that a GICSR trust was related to Dave's bitcoins," which he purportedly learned from a purported email from Dr. Wright. Even assuming its authenticity, this email would demonstrate that Dr. Wright sent it in response to an email from Paige, who had asked Dr. Wright for help in identifying where Dave Kleiman had accounts. Dr. Wright listed four names under the heading "These may help you," one of which was referred to as the "GICSR Trust," which Plaintiff understood to be in Belize, not Florida. Contrary to Plaintiff's claim, Dr. Wright's response ***does not*** refer to bitcoins, a bitcoin account, or anything related to this dispute. Moreover, Plaintiff's description of GICSR erroneously includes an argument "that [Dr. Wright] was a director of this Florida entity," even though Dr. Wright never has been listed as a director of any Florida entity, including GICSR.

Plaintiff did not rebut the expert affidavit of Gordon Grieve demonstrating that it would not be merely inconvenient, but impossible, to compel Australian-government entities and employees to testify or produce evidence in this U.S. proceeding. Attempting to identify a non-compellable foreign sovereign of his own, Plaintiff lists the United States Department of Homeland Security ("DHS") as a U.S.-based witness. Plaintiff claims that DHS has evidence of the core issues, however, DHS already sent Plaintiff a letter stating that it has no such evidence.

### C.       Plaintiff's Fraud Allegations Weigh Heavily in Favor of Dismissing this Action on Grounds of _Forum_ _Non_ _Conveniens_

Plaintiff argues against a _forum non conveniens_ dismissal on the basis that he is the supposed victim of an alleged fraud committed by Dr. Wright. But his allegations of fraud, apart from wholly failing to satisfy the particularity of pleading standard of Rule 9(b), have the opposite effect, and actually support a _forum non conveniens_ dismissal. The relevant question is not _whether_ a fraud occurred, but _which forum_ could most efficiently and conveniently decide whether a purported fraud occurred. Here, the Supreme Court of New South Wales is the superior forum. The alleged fraud is an intrinsic fraud, or fraud on the (Australian) court, purportedly based on documents submitted to and reviewed by the Australian court, on which it relied to enter the Australian Judgments in Dr. Wright's favor. When federal courts are asked to overturn a judgment allegedly tainted by intrinsic fraud in a prior proceeding, they send the plaintiff back to the court that rendered the judgment, federal, state, or foreign.

Moreover, as noted above and discussed further below, Plaintiff has no basis for arguing that any extrinsic fraud kept him from appearing in the Australian Lawsuits, because W&K was properly and timely served at Dave Kleiman's Florida address. Plaintiff is not only Dave Kleiman's brother, but his estate's personal representative. Plaintiff may not have had his late brother's bitcoin codes, but he must have had the house keys, and the law presumes that he checked the mail. If he didn't, that would have been a failure of minimal diligence, sufficient to defeat any purported lack of notice as a matter of law.

The Motion to Dismiss demonstrates that Australia is the only jurisdiction that can efficiently and conveniently adjudicate this dispute, that it is the prerogative of the Supreme Court of New South Wales to adjudicate this dispute, and that it would be materially unjust to force Dr. Wright to adjudicate this dispute in any other court, anywhere in the world. These factors far outweigh the minimal deference, if any, that should be given Plaintiff's forum choice.

**2. The Court Should Dismiss this Action on Grounds of International Comity**

**A. *It is Impossible to Adjudicate This Dispute in Florida Without this Court Acting as If It Were a Court of Appeals for the Supreme Court of New South Wales***

Plaintiff argues that international comity would, "at best, only bar [his] claims to W&K's intellectual property." Opp. at 35. This is plainly wrong. Plaintiff admits that "[i]n Australia, the thing sued for was money." *Id.* at 35. Specifically, Dr. Wright sued W&K for breach of the Intellectual Property License Funding Agreement (the "Deed"), by which he is the owner of the bitcoins and intellectual property Plaintiff sues for here. The Australian Judgments for over $50 million AUD are Dr. Wright's damages for W&K's failure to repay the bitcoins and re-transfer the intellectual property.

Under the Deed, Dr. Wright loaned the bitcoins to W&K and allowed W&K to use and improve his intellectual property on the condition that W&K would assign and transfer to Dr. Wright all "right title and interest to the improvements" to the intellectual property, "including all claims as they relate to the improvements." *See* Ex. 10 at 5 [¶ 1(e)]; 9 [¶ 5]. The Supreme Court of New South Wales entered the Australian Judgments finding that W&K breached the Deed by not repaying the bitcoin loan and re-transferring the intellectual property. W&K consented to the Australian Judgments, including Dr. Wright's agreement that he would accept the intellectual property in full and final satisfaction of the money owed him.

Plaintiff claims he is the rightful owner of the bitcoins and intellectual property that the Supreme Court of New South Wales found were Dr. Wright's property. Dismissal on grounds of international comity is warranted because this Court could not adjudicate any of the amended

complaint without improperly acting as if it were a court of appeal for the Supreme Court of New South Wales, and Plaintiff could not prevail unless that court were "overruled." There are courts that properly might do such things. They are in Australia.

### B. Plaintiff's Allegation That the Australian Judgments Are Void Has No Bearing on International Comity

Plaintiff argues that his new, false claims of extrinsic fraud, insufficient service of process, and lack of jurisdiction bar dismissing this action on grounds of international comity. This argument confuses international comity with *res judicata* and either ignorantly or intentionally seizes on the use of the term "comity" in that context to support misstatements of law. Plaintiff demands that the Court misapply "comity" as if this were an action to enforce or vacate a prior judgment rendered by a foreign court. In such a case, "comity" refers to a court's obligation to give full faith and credit to the prior judgment by forever barring any attempt to assail it. Courts may refrain from imposing full-faith and credit "comity" where a party plausibly alleges that entry of the prior judgment violated its right to due process, so as to prevent enforcement of a judgment the party never had a fair opportunity to contest.[9] No such risk exists here in the application of the abstention doctrine known as "international comity."

Comity in the context of an action to enforce a prior judgment asks *whether* a matter should be adjudicated, but international comity asks only *where* a matter should be adjudicated. In the application of international comity, there is no risk that a party will be denied due process or the opportunity to challenge the validity of a prior judgment, so long as that party has an opportunity to be heard in a competent jurisdiction, as Plaintiff will have here. Dr. Wright's international comity argument plainly is not that Plaintiff should be "denied" a forum to bring his claims, but that Plaintiff should bring them in the Supreme Court of New South Wales, because

---

[9] No such allegation was made here, ***nor could it have been***, since timely, valid service was made on W&K. Whether Plaintiff's failure to respond was negligent or intentional is immaterial. What matters is that Plaintiff did nothing, and any attack on "sufficiency of process" under Australian law would properly be addressed to an Australian court.

his claims assail the Australian Judgments and it would not be possible to adjudicate them fairly or efficiently in the United States. Accordingly, Plaintiff's argument that the Australian Judgments should be voided or held invalid for lack of service, lack of personal jurisdiction, or any sort of fraud (however impermissibly vaguely alleged) are unavailing. If anything, those allegations compel dismissal on grounds of international comity.

It is beyond cavil that a court which allegedly was defrauded has the right, and is in the best position, to decide whether it was defrauded. Plaintiff does not dispute that principle, but argues (without citing any cases) that it doesn't apply here because he purportedly alleged extrinsic fraud. This distinction is irrelevant when it comes to international comity. Here, the question is whether an alleged fraud was committed *by the foreign court*, which Plaintiff did not (and could not) allege. The Motion to Dismiss quoted *Tr. Int'l Corp. v. Nagy*, 2017 WL 5248425, at *5 (S.D. Fla. 2017), in which Judge Zloch succinctly stated this principle:

> As to the issue of fraud and unfairness in prior litigation, after a thorough review of the facts in the above-styled long-entrenched legal feud between these Parties, the Court does not think that it is necessary to make any finding about the actions of the Parties before a previous and different foreign tribunal. ***The international abstention consideration of fraud does not ask whether parties have acted deceptively or fraudulently. Instead, that piece of the analysis asks whether a foreign court was acting fraudulently and is a forum so incompetent in its standards that its procedures cannot be squared with the principles underlying the American legal system.*** Plaintiff appears to believe that this point should be decided in its favor because it argues that Defendant has acted fraudulently. This is not the correct consideration. A party can act fraudulently before any court. If Defendant has used the Hungarian legal system in some way which was not above board, then the Hungarian forum was the correct place to address this concern.

*Tr. Int'l Corp.*, 2017 WL 5248425, at *5 (emphasis added).

Plaintiff attempts to distinguish *Tr. Int'l Corp.* by arguing that the plaintiff therein did not allege extrinsic fraud, which is wholly irrelevant. The decision makes clear that the only alleged fraud the court would consider was a fraud committed by the foreign court that entered the prior judgment. It states plainly that any other claims of fraud are inconsequential, because international comity dismissal is warranted where, as here, the

14

foreign court is better situated to adjudicate the dispute and long-standing precedent establishes its prerogative to do so.

**3.       W&K's Claims are Barred by Principles of *Res Judicata***

Plaintiff argues that this action is not precluded by the Australian Judgments on the notion that: (1) W&K purportedly was not served with process or notified of the Australian Lawsuits, even though the exhibits attached to the amended complaint demonstrate that W&K was timely and properly served under Australian law; (2) the Australian Judgments were thus procured through extrinsic fraud and are void, even though as a matter of law (and logic) there was no extrinsic fraud because W&K was timely and properly served; and (3) the claims involved in the Australian Lawsuits were for money and not bitcoins, even though (a) bitcoins are a form of money,[10] and (b) any claim W&K had for bitcoins was a compulsory counterclaim that had to have been raised in the Australian Lawsuits. We demonstrate below that Plaintiff's claims were resolved in the Australian actions and *res judicata* bars relitigating them here.

### A.       *W&K was Properly Served Under the Hague Convention*

Plaintiff argues that Dr. Wright's service by mail on W&K was improper because "[u]nder the rules of the Australian court," a defendant may be served under the Hague Convention, or "in accordance with the law where the defendant resides." Opp. at 32. Then, plaintiff argues that the Hague Convention "*requires* service via the 'Central Authority' of the defendant's state," and that "Florida law requires service by the county sheriff." *Id.* (emphasis added). This is a gross misstatement of the law.

---

[10] The only time Dave Kleiman ever said anything about bitcoins to Plaintiff was when he told Plaintiff in 2009 that he was involved in creating an alternative "money" with "a wealthy foreign man." AC ¶¶ 58-61. Plaintiff's rhetorical gyrations in this case require him to ignore this fact, as well as the fact that "money" is a synonym for "currency," and the overwhelmingly dominant synonym at that. *E.g.,* https://www.powerthesaurus.org/currency, last accessed on August 17, 2018 (listing 689 synonyms for "currency," the first of which is "money").

The United States and Australia are signatories to the Hague Convention. *Norden-Powers v. Beveridge*, 125 F.Supp.2d 634, 637 (E.D.N.Y. 2000) ("Both Australia and the United States are signatories [] to the Hague Convention.").[11] Thus, the Hague Convention controls the question whether Dr. Wright properly served W&K in the Australian Lawsuits. *Id.*; *Darko, Inc. v. MegaBloks, Inc.*, 2006 WL 2945954, at *1 (N.D. Ohio 2006) (The "Hague Convention clearly applies to this case, as [the foreign country] is a signatory to the convention . . . ."). However, and contrary to plaintiff's argument, it is well-established that ***service through the Central Authority "is __not__ the only acceptable method of service under the [Hague] Convention . . . the Hague Convention permits alternate channels of service so long as they are not objected to by the receiving State*** ." *Dimensional Commc'n, Inc. v. OZ Optics Ltd.*, 218 F.Supp.2d 653, 655-56 (D.N.J. 2002) (emphasis added); *DeJames v. Magnificence Carriers*, 654 F.2d 280, 288 (3d Cir.1981).

The United States has not objected to Article 10 of the Hague Convention, which permits service by mail.  *Ackermann v. Levine*, 788 F.2d 830, 839-40 (2d Cir. 1986) (Federal courts "construing the Hague Convention have apparently consistently upheld mail service" where a country, "like the United States, is a signatory to the Convention and has not objected to mail service under Article 10(a)"). Therefore, in a foreign proceeding, service of process by mail on an American party is proper. *Id.* ("To uphold mail service when effected against foreign defendants in signatory states that do not object to such service, but to invalidate such service when effected against an American defendant, would undermine the Hague Convention's purpose of unifying the rules of service of process abroad."); *TracFone Wireless, Inc. v. Unlimited PCS Inc.*, 279 F.R.D. 626 (S.D. Fla. 2012) (Service by mail of judicial documents may be made under the Hague Convention, so long as the destination country does not object to that

---

[11] *See* Table Reflecting Applicability of Articles 8(2), 10(a)(b) and (c), and 15(2) and 16(3) of the Hague Service Convention, https://assets.hcch.net/docs/6365f76b-22b3-4bac-82ea-395bf75b2254.pdf, last accessed August 20, 2018)

manner of service.). No sheriff was required to make service on anybody. Again, Plaintiff travels on a sanctionably rank misstatement of applicable law, and Dr. Wright reserves all rights.

Plainitff's amended complaint demonstrates that in the Australian Lawsuits, Dr. Wright attested that on July 26, 2013, he mailed a copy of his Statement of Claim to the registered mailing address for W&K, in Palm Beach Gardens, Florida. *See* AC, Ex. 4 ¶ 9. That mailing address had been listed by Dave Kleiman with the State of Florida as the address for service on W&K. AC Ex. 3. This was proof of service in the Australian Lawsuits, which plaintiff failed to refute. *Bodyup Fitness, LLC v. 2080039 Ontario, Inc.*, 2008 WL 516996, at *4 (S.D. Fla. 2008) (once there is an affidavit attesting to service, "[t]he burden then shifts to defendant to refute by ***strong and convincing evidence*** that service was not properly effectuated.") (emphasis added).

The only "evidence" plaintiff submitted to refute this demonstration of good service was his own declaration stating that *he* never received service of process of the Australian actions. Opp. Ex. 1 ¶ 10. For a party that can't stop accusing his adversary of fraud and false swearing, this is too cute by half. There was no requirement to serve anything on Plaintiff, who never had anything to do with W&K until a few weeks ago, when he reinstated it so he could amend his complaint. Dr. Wright was required to serve W&K at its registered address for service, which he did. *See Cam-La, Inc. v. Fixel*, 632 So.2d 1067, 1068 (Fla. 3d DCA 1994) ("Service on a corporation's registered agent is effective notice to the corporation of the pending litigation.").

Moreover, as noted above and discussed further below, Plaintiff was not only Dave Kleiman's brother, but his personal representative. He may not have had his brother's bitcoin codes, but he had the keys to his brother's apartment, as well as a legal duty to check the mail. It makes no difference whether he failed to check the mail, or picked up the service of process, sat on his hands for five years, and then swore "he" hadn't been served. Service on W&K in the Australian Lawsuits was proper under Australian law, U.S. law, and the Hague Convention.

17

### B.   Plaintiff's "Extrinsic Fraud" Theory Fails as a Matter of Law

Plaintiff argues that this Court has jurisdiction to hold the Australian Judgments "void" because they purportedly were obtained by "extrinsic fraud." Opp. at 32. To demonstrate extrinsic fraud, however, plaintiff had to show that W&K was prevented from participating in the Australian Lawsuits. *E.g., Nero, Sr. v. Mayan Mainstreet Inv. 1 LLC*, 2014 WL 12610668, at *14 (M.D. Fla. 2014) (Extrinsic fraud exists only where a party "has somehow been prevented from participating in a cause."); *Parker v. Parker*, 950 So.2d 388, 391 (Fla. 2007) ("[E]xtrinsic fraud occurs where a defendant has somehow been prevented from participating in a cause.").[12]

As a matter of law, there can be no extrinsic fraud where the party asserting it was served with process and had notice of the prior action:

> A party who has been given proper notice of an action, however, and who has not been prevented from full participation, has had an opportunity to present his case to the court and to protect himself from any fraud attempted by his adversary. Fraud perpetrated under such circumstances is intrinsic . . . .

*George v. McClure*, 245 F.Supp.2d 735, 739 (M.D.N.C. 2003). Plaintiff's Opposition concedes that there is no extrinsic fraud where a party had notice of the prior action. *See* Opp.at 33, n. 31. Plaintiff cites *In re Estate of O'Keefe*, in which the Second DCA found no extrinsic fraud— despite allegations that plaintiffs fraudulently induced defendant into entering a contract— because there was "no evidence of any conduct on the part of the [plaintiffs] that prevented [defendant] from appearing, defending, or otherwise objecting in either the arbitration or the California proceeding." *Id.* at 161.

As demonstrated above, W&K was properly served in the Australian Lawsuits. Plaintiff may not assert extrinsic fraud merely by claiming that *he* didn't know about them until 2014, even if that claim is not false. There was no need to serve Plaintiff—he was not involved with W&K, nor was he its registered agent. Moreover, timely notice of the Australian Lawsuits was

---

[12] Any other purported fraud in a prior proceeding is intrinsic, which, as plaintiff concedes, "is left for the defrauded forum to unwind." Opp. at 33 n. 31. That forum is in Australia, not here.

sent to W&K's mailbox in 2013, a mailbox that Plaintiff had a legal duty to check as Dave Kleiman's personal representative. Noticeably absent from Plaintiff's declaration (and opposition) is any statement that he ever checked W&K's mail.[13] His failure to check W&K's mail cannot support a claim of "extrinsic fraud."

Florida law requires a plaintiff claiming any sort of fraud to have exercised "reasonable diligence for his own self-protection," or his claim is legally insufficient as a matter of law.. *Brooks Tropicals, Inc. v. Acosta*, 959 So.2d 288, 296 (Fla. 3 DCA 2007) (stating that for a fraud claim, plaintiff is charged with facts that "should have been discovered with the exercise of due diligence . . . ."). Plaintiff is charged with timely notice of the Australian Lawsuits as a matter of law, and any claimed "fraud" in those lawsuits was intrinsic, which only the Australian courts may resolve.

### C.   W&K's Alleged Claims Here Were Compulsory Counterclaims in the Australian Lawsuits

Finally, Plaintiff argues that there is no identity of the "thing sued for" because the Australian actions involved money, which this case does not, because Plaintiff is suing to recover bitcoins. As noted above, Dave Kleiman said he was working on an alternative "currency," and lists of synonyms for "currency" invariably start with "money." *See supra,* note 12. There is no currency that is not money, even if one might invest in bitcoins hoping their market value (as currency) might go up. There is identity of the thing sued for, and this action is barred by *res judicata*.

Moreover, even if Plaintiff had standing to assert claims on behalf of W&K (he doesn't), its purported claims herein were compulsory counterclaims in the Australian Lawsuits, which were not asserted, and were thereby waived. *E.g.*, *Yost v. Am. Nat. Bank*, 570 So.2d 350, 351 (Fla. 1st DCA 1990) ("Under Florida law, the failure to raise a compulsory counterclaim in the

---

[13] In fact, despite being Dave Kleiman's personal representative, Plaintiff says he wasn't even aware that W&K existed until Dr. Wright told him about it. *See* AC at ¶¶ 135-136.

original suit will result in the waiver of that claim."). Waiver of compulsory counterclaims occurs even where a prior action resulted in a default judgment. *See, e.g., Pesce v. Linaido*, 123 So.2d 747, 749 (Fla. 3d DCA 1960). At bottom, principles of *res judicata* bar plaintiff's claims.

**4.      There Is No Personal Jurisdiction Over Dr. Wright[14]**

> **A.      Plaintiff's Theory of Long-Arm Jurisdiction Under Fla. Stat. § 48.193(1)(a)(2) Never Was, and is Not Now, the Law of Florida**

Plaintiff argues that he was not required to allege that Dr. Wright committed a tortious act *within* Florida to assert long-arm jurisdiction under Fla. Stat. § 48.193(1)(a)(2), which expressly applies only to a "tortious act *within* Florida" (emphasis added). According to Plaintiff, the mere fact that *he* is in Florida means he was injured in Florida, and all he needed to allege was an "effect" in Florida from a tort committed elsewhere, even if his purported claims accrued elsewhere, involve events that occurred elsewhere, assets located elsewhere, and a defendant who did nothing in Florida. Opp. at 12.  ("Plaintiffs' have alleged facts demonstrating they are located in Florida and that, therefore, if [Dr. Wright] committed these intentional torts, their injury occurred in Florida."). This is a rank misstatement of Florida law, which expressly rejected the so-called "effects test" decades ago. It even misstates what the Eleventh Circuit said in *Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1216 (11th Cir. 1999), a hard case that purported to make bad law. *Posner* is the damaged cornerstone of Plaintiff's theory that alleging mere injury in Florida from an alleged tort committed elsewhere supports long-arm jurisdiction under Fla. Stat. § 48.193(1)(a)(2). In order to sustain the complaint, the *Posner* court conjured up a

---

[14] Plaintiff makes the absurd argument that Dr. Wright somehow would be estopped from contesting minimum contacts (which do not exist), because it was not argued in the Motion to Dismiss. Opp. at 8. Under *Venetian Salami v. Parthenais,* 554 So.2d 499, 502 (Fla. 1989), that question is ***never*** reached unless a plaintiff adequately alleges long-arm jurisdiction under Fla. Stat. § 48.193. Plaintiff has failed to do so. If the Court were to decide otherwise, Florida law plainly would require evidence to be submitted regarding minimum contacts. *Id.* Dr. Wright's affidavits on this Motion (and its predecessor) demonstrate that no minimum contacts exist. If that factual question ever were to be reached, it would require an evidentiary hearing. *Id.*

supposed "conflict among the state district courts of appeal" regarding the "broader construction of subsection (1)(b)" (since renumbered (1)(a)(2) with no changes). *Posner*, 178 F.3d at 1216.

We submit that no conflict ever existed, and Fla. Stat. § 48.193(1)(a)(2) never meant what it ***did not*** say. [15] But if any "conflict" ever existed, none exists now. After *Posner*, four of Florida's five DCAs unequivocally rejected the ideea that a non-resident may be haled into court on the mere allegation that a plaintiff suffered an injury in Florida.[16] This Court sits in the jurisdictions of the Third and Fourth DCAs, which expressly reject the "effects test," as do the Second and Fifth DCAs. *See supra*, note 18. Even if it might be "unclear" how the First DCA would rule on this question, the Florida Supreme Court has indicated that it would side with the Second, Third, Fourth, and Fifth DCAs, and disapprove *Posner* and Plaintiff's misinterpretation of Florida law.[17]

---

[15] The *Posner* court chose what it called an "old Fifth circuit" interpretation of former subsection (1)(a)(2), ignoring a more recent decision of that court which had rejected the so-called "effects test" or "place of injury" theory. *See* 178 F.3d at 1216 (ignoring *Thompson v. Doe,* 596 So.2d 1178, 1179 (Fla. 5th DCA 1992), *decision approved by Doe v. Thompson,* 620 So.2d 1004 (Fla. 1993)).

[16] *See Stonepeak Partners, LP v. Tall Tower Capital, LLC*, 231 So. 3d 548, 552 (Fla. 2d DCA 2017); *Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1136 (Fla. 3d DCA 2018). In *Casita, L.P. v. Maplewood Equity Partners L.P.*, the Third DCA, citing the Fourth DCA (in whose jurisdictions this Court sits), held that alleged injury to a Florida plaintiff from an alleged tort committed outside Florida is legally insufficient. *See* 960 So. 2d 854, 857 (Fla. 3d DCA 2007) (citing *Consol. Energy Inc. v. Strumor,* 920 So.2d 829 (Fla. 4th DCA 2006) *Homeway Furniture Co. of Mount Airy, Inc. v. Horne,* 822 So.2d 533 (Fla. 2d DCA 2002), and *Thompson v. Doe,* 596 So.2d 1178, 1179 (Fla. 5th DCA 1992), *decision approved by Doe v. Thompson,* 620 So.2d 1004 (Fla. 1993)). The *Posner* court ignored *Thomson* in favor of "old 5th Circuit" cases.

[17] In 2009, the Eleventh Circuit began to undo its mischief in *Posner*. Plaintiff cites *Brennan v. Roman Catholic Diocese of Syracuse New York, Inc*., 322 F. App'x 852, 855 (11th Cir. 2009), to argue that this never happened. However, that opinion's lone reference to *Posner* related to its holding under a different section of Florida's long-arm statute. *See id*. The *Brennan* opinion did not cite *Posner's* holding regarding section (1)(a)(2), although it would have had reason to do so if that holding remained viable. Instead, the Eleventh Circuit avoided what, by then, had plainly become a manifestly incorrect statement of Florida law.

Among the recent opinions rejecting an "injury only" standard for sub-section (1)(a)(2) jurisdiction is *Wiggins v. Tigrent, Inc.*, 147 So. 3d 76, 87 (Fla. 2d DCA 2014), which Plaintiff disparages as a mere "state court" case. Of course, Florida law is declared by "state courts," not the Eleventh Circuit. *Wiggins* has been cited with approval by Florida's Second and Third DCAs.

In rejecting the "injury only" approach to section (1)(a)(2) jurisdiction, *Wiggins* analyzed whether the alleged tort occurred "within the state," ***by identifying where the cause of action (conversion) accrued***. Plaintiff incorrectly argues that this Court rejected that approach in *Sport Mgmt. Sys., LLC v. Woolley Grp., LLC*, 2016 WL 8793333, at *3 (S.D. Fla. 2016) (Bloom, J.). As in *Wiggins*, the *Sport Mgmt.* plaintiff brought a conversion claim and, as in *Wiggins*, this Court analyzed whether section (1)(a)(2) jurisdiction had been adequately alleged by identifying ***where the plaintiff's conversion claim accrued.*** The last act needed to establish the Florida plaintiff's conversion claim occurred where the nonresident wrongfully obtained dominion and control over the allegedly converted property, which this Court held occurred outside of Florida and dismissed the case for lack of personal jurisdiction.

As in *Wiggins*, Plaintiff alleges that Dr. Wright wrongfully obtained possession and control of alleged bitcoins and intellectual property outside of Florida (and outside of the United States, for that matter). Thus, based on the standard applied by at least four of Florida's five DCAs, including the *Wiggins* court and this Court *in Sport Mgmt.*, personal jurisdiction over Dr. Wright has not been (and cannot be) adequately alleged under Fla. Stat. § 48.193(1)(a)(2).

**B.      Even Under <u>Posner's</u> Incorrect "Effects Test" or "Injury Only" Standard, Plaintiff Failed to Adequately Allege Personal Jurisdiction**

Even if *Posner* accurately reflected Florida law, that court's interpretation of what it means to be injured in Florida conflicts directly with the interpretation advanced by Plaintiff, who argues that he suffered injury in Florida even though he did not (and could not) allege that the alleged bitcoins and intellectual property were "converted" or "stolen" ***from Florida***.

In *Posner*, a nonresident insurance company issued the plaintiff four insurance policies to cover four properties in Florida. After Hurricane Andrew, the plaintiff submitted claims. The plaintiff alleged that his claims were wrongfully denied at the behest of the insurance company's majority owner, a Pennsylvania company. The plaintiff alleged personal jurisdiction over the majority owner on his claim for tortious interference and the court agreed, finding that the alleged injury occurred *in Florida* because "the property covered by the insurance policies was *in Florida*." (emphasis added). In stark, dispositive contrast, Plaintiff did not allege that any property was stolen from Florida, or even located in Florida when it allegedly was converted.

### C.    *Dr. Wright is Not Subject to "Doing Business in Florida" Long-Arm Jurisdiction*

The motion to dismiss demonstrates the legal insufficiency of Plaintiff's allegation that Dr. Wright was "doing business" in Florida. MTD at 34-36. But even if Plaintiff had adequately alleged that Dr. Wright was "doing business" in Florida, there is not and could not be any connexity between the alleged business activities and the alleged conversion, because the alleged conversion occurred after Dave Kleiman died, after W&K had ceased to exist, and after any alleged business activity had ended. Without connexity, there can be no specific jurisdiction, and there is none here. *Camp Illahee Investors, Inc. v. Blackman*, 870 So.2d 80, 85 (Fla. 2d DCA 2003) ("By its terms, section 48.193(1) requires connexity between the defendant's activities and the cause of action.") (citing *Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla. 2002)).

### 5.    The Case Should be Dismissed for Lack of Standing

### A.    *Plaintiff Lacks Standing and Cannot Amend to add W&K as a Party*

For the reasons demonstrated in Dr. Wright's motion to dismiss, Plaintiff lacks standing to pursue his claims, because he has not plausibly alleged that Dave Kleiman and Dr. Wright were partners. *See* MTD at 12-15. Because Plaintiff lacked standing at the outset, he was not permitted to attempt to manufacture standing by amending the complaint to join another party.

*E.g., Summit Office Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. 1981).[18] As of the February 24, 2018 (the date the case was filed), W&K was a defunct entity. In an attempt to create standing, Plaintiff reinstated W&K before filing the amended complaint. MTD at 3-4.

Because Plaintiff lacked standing, Plaintiff necessarily lacked "standing to amend the complaint and control the litigation by substituting new plaintiffs . . . ." *Summit Office Park, Inc.*, 639 F.2d at 1282; *Wright v. Dougherty Cty., Ga.*, 358 F.3d 1352, 1356 (11th Cir. 2004) ("By lacking standing to bring a claim the appellants also lack standing to amend the complaint to consolidate with a party who may have standing."); *Wingate v. U.S. Dep't of Homeland Sec.*, 2012 WL 1964114, at *3 (M.D. Fla. 2012) ("If a plaintiff lacks standing, such plaintiff also lacks the ability to substitute a real party in interest."); *Gordon v. U.S.*, 2012 WL 1988711, at *2 (M.D. Fla. 2012). Accordingly, dismissal is required.

### B.    Plaintiff Failed to Allege That the Purported Partnership Agreement was in Writing

Plaintiff argues that a partnership agreement may be oral and need not satisfy the statute of frauds, even if it purportedly was ongoing, with no end date, and the parties did not contemplate completing it within a year. Opp. at 7. The mere possibility of performance within a year does not satisfy Florida's statute of frauds, as the Eleventh Circuit held in *Dwight v. Tobin*, 947 F.2d 455, 459 (11th Cir. 1991).[19] Interpreting Florida law, the Eleventh Circuit held that an alleged oral business partnership to purchase and develop real estate failed to comply with the statute of frauds and was unenforceable. *Id.* at 460. Under Florida law, "the statute of frauds bars

---

[18] Fifth Circuit decisions rendered on or before September 30, 1981, are binding on the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

[19] *Accord Saeme v. Levine*, 502 F. App'x 849, 853 (11th Cir. 2012) (oral partnership agreement contemplating "a profitable business venture" violated the statute of frauds); *Chernys v. Standard Pac. of S. Fla., G.P. Inc.*, 2010 WL 11504280, at *4 (S.D. Fla. 2010) ("[T]he statute of frauds renders unenforceable those contracts where it is apparent, from the purpose of the contract and the surrounding circumstances, that the understanding of the parties was that the agreement was not to be performed within a year from the time it was made."); *Roberts v. Stutman*, 2011 WL 13225074, at *3 (S.D. Fla. 2011).

24

the enforcement of a contract when the parties intended and contemplated that performance of the agreement would take longer than one year." *Id.* at 459. The intent of the parties may be inferred by the "surrounding circumstances or the object to be accomplished." *Id.* (internal quotes omitted). Moreover, partial performance does not lift this bar to enforcement. *Id.* at 460.

Here, Plaintiff argues that Dave Kleiman and Dr. Wright "created, released, and mined ***the first bitcoins*** in under a year," whatever that means. Opp. at 7 (emphasis added). Even if that were true, this would, at most, be partial performance of the alleged partnership agreement, which does not lift the bar of the statute of frauds. *See Dwight*, 947 F.2d at 459. The amended complaint stated that "the purpose of W&K was clear: Craig and Dave created it to mine bitcoin and develop intellectual property." AC at ¶ 72. Plaintiff further alleged that Dave and Dr. Wright were "'creating' or 'mining' bitcoin and intellectual property . . . ***continuous[ly] from 2009 until Dave's passing in 2013***." AC at ¶ 64 (emphasis added). This is not less than a year.

The amended complaint plainly alleged that the parties intended an ongoing arrangement to mine bitcoins and develop intellectual property, and did so for four years. As in *Dwight*, there is no way to repair that allegation by merely arguing that the parties could have completed this purported, ongoing agreement in less than one year. Accordingly, the alleged "partnership" between Dave Kleiman and Dr. Wright fails to satisfy the statute of frauds, and all claims based on that purported partnership should be dismissed. *See Saeme*, 502 F. App'x at 853.

**6.     The Amended Complaint Still Fails to State a Plausible Claim**

  ***A.     The Complaint's Allegations are Directly Contradicted by Its Exhibits***

Plaintiff's opposition does little to untangle the mess of conclusory and contradictory allegations of the amended complaint. On the one hand, Plaintiff relies on the exhibits attached to the amended complaint for some things, like W&K's standing and the assertion of long-arm jurisdiction over Dr. Wright. *See* Opp. at 5, 14. On the other hand, Plaintiff runs away from Dave Kleiman's February 2, 2013 email, which also was attached to the amended complaint and directly contradicts its allegations. AC Ex. 4 at 24. After attaching that email to his amended

complaint, Plaintiff now demands that it be ignored, making the absurd factual claim that it must have been forged because Dr. Wright is the "sole source" of the email. Opp. at 44.

We are here on a motion to dismiss, and Plaintiff's exhibits are a part of the complaint for all purposes. If they contradict his allegations, the amended complaint must be dismissed. *Hamilton v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 5231483, at *2 (M.D. Fla. 2013) ("Generally, if the exhibits conflict with the allegations in the complaint, the exhibits control.") (citing *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007)). Moreover, Plaintiff has no personal knowledge of any relevant facts, as his amended complaint makes abundantly clear. Dave Kleiman kept Plaintiff completely out of the loop, except to once mention that he had some involvement with a "wealthy foreign man" in developing "currency." This email was sent *from Dave Kleiman to Dr. Wright*. No one else was copied on it. Moreover, Plaintiff's theory that this email "must be" a forgery is without merit for another distinct reason.

In a desperate attempt to avoid the effect of Dave Kleiman's email, Plaintiff speculates that it must have been forged by Dr. Wright because it used the "European" day-month format, and not the "American" month-day format. *See* Opp. at 44. This absurd theory is based on nothing but speculation. Plaintiff assumes that Dave Kleiman ordinarily used the month-day format, even though the U.S. military trains personnel to use the day-month format, and the amended complaint alleges that Dave Kleiman was a helicopter technician in the U.S. Army, where he was trained to write dates in day-month format. AC, ¶ 42.[20] Further, Dave Kleiman belonged to several international computer security organizations. AC, ¶ 45. Finally, he was internationally corresponding with Dr. Wright, and avoiding date confusion easily could have motivated him to use the "European" day-month format for dates such as "30 Apr.," the date written in the email.

---

[20] The U.S. Army's Study Guide states that the Army requires the Day-Month format. *See* https://www.armystudyguide.com/content/Prep_For_Basic_Training/Prep_for_basic_general_information/making-sense-of-military-2.shtml, last accessed August 21, 2018.

Plaintiff never had knowledge of what Dave Kleiman was doing and has no personal knowledge of anything he's talking about. Complaints do not survive motions to dismiss based on rank speculation about the veracity of exhibits attached to them. Because Dave Kleiman's email directly contradicts the conclusory and speculative allegations of the amended complaint, the exhibits control. *E.g., Lawrence v. U.S.*, 597 Fed.Appx. 599, 602 (11th Cir. 2015) ("we are not required to accept mere conclusory allegations as true, nor are we required to accept as true allegations in the complaint that are contrary to factual details presented in the exhibits."); *Griffin Indus., Inc.*, 496 F.3d at 1205. Thus, Plaintiff's theory that the email, his own exhibit, "must have been" a forgery is unavailing, and that email compels dismissal of this case.[21]

### B.   Bitcoin is Money and Must be Specific and Identifiable for a Conversion Claim to Survive Dismissal

Plaintiff makes the absurd argument that he wasn't required to allege that the alleged bitcoins at issue are "specific and identifiable," because "bitcoins aren't money," and aren't legal tender. Opp. at 47. A majority of courts across the country have rejected that argument.[22] Under its ordinary meaning, "money" is defined as "[s]omething generally accepted as a medium of exchange, a measure of value, or a means of payment." *Sec. & Exch. Comm'n v. Shavers*, 2014 WL 12622292, at *7 (E.D. Tex. 2014). Bitcoins meet, and were created to meet, that definition.[23]

---

[21] Plaintiff also speculates that Dr. Wright fabricated the Deed and New Venture Contract to justify a tax position taken in filings with the ATO. Opp. at 45. But those documents were verified by Dave Kleiman's email, and that email is part of the complaint for all purposes. Plaintiff had years to read documents and state legally sufficient claims. A plaintiff simply is not permitted to run away from his own exhibits that completely undermine his allegations, make up theories on the fly, or make factual arguments on a motion to dismiss. Moreover, even if there were any truth to the rank speculation that Dr. Wright fabricated documents submitted to the ATO, that still would not support a plausible claim for which **Plaintiff** would be entitled to relief.

[22] *See U.S. v. Mansy*, 2017 WL 9672554, at *1 (D. Me. 2017) (Bitcoin is money); *U.S. v. Murgio*, 209 F. Supp. 3d 698, 707 (S.D.N.Y. 2016) (same); *U.S. v. Faiella*, 39 F. Supp. 3d 544, 545-46 (S.D.N.Y. 2014) (same); *Sec. & Exch. Comm'n v. Shavers*, 2014 WL 12622292, at *7 (E.D. Tex. 2014) (same).

[23] IRS guidance also holds that Bitcoin is money. According to the IRS, Bitcoin "received by 'mining' is taxable as self-employment income, and Bitcoin paid to an employee by an employer constitutes wages and is subject to federal income tax withholding, and other federal taxes." *Shavers*, 2014 WL 12622292, at *7. Thus, for federal tax purposes, Bitcoin is money.

As noted above, the only time Dave Kleiman said anything about Bitcoin to Plaintiff was in 2009, when he said he was involved in creating "currency" with "a wealthy foreign man." AC. ¶¶ 58-61. No amount of fevered hair-splitting can change the fact that "money" is the dominant, usually first-listed, synonym for "currency" in any thesaurus. *E.g.,* https://www.powerthesaurus.org/currency, last accessed on August 17, 2018 (listing 689 synonyms for "currency," the first of which is "money").

Bitcoins fit within the ordinary meaning of the term "money." First, plaintiffs concede that bitcoins are the "most valuable cryptocurrency." Opp. at 2. They are a measure of value, and are accepted as a means of payment by major companies, including Overstock.com, Expedia, Microsoft, Subway, and PayPal.[24] Plaintiff's absurd contention that bitcoins are not money also is undermined by the amended complaint's allegations, including allegations that Bitcoin is the "world's first decentralized cryptocurrency," and "digital currency," AC at ¶¶ 9, 20. Plaintiff also alleges that Dave Kleiman told him "he was making 'digital money.'" AC at ¶ 60; Opp. at 2. When faced with these allegations, Plaintiff can't seriously contend that bitcoins are not money, but unbridled chutzpah keeps him talking, and making it up as he goes. He relies on irrelevant cases involving investments in Bitcoin-related businesses that have nothing to do with what bitcoins are used for, namely buying things, which is what Plaintiff hopes to do with them.

Because bitcoins are currency, and currency plainly is money, an action alleging conversion of bitcoins must be dismissed unless the bitcoins are specific and identifiable.[25] The

---

[24] https://www.nasdaq.com/article/7-major-companies-that-accept-cryptocurrency-cm913745, last accessed August 21, 2018.

[25] Plaintiff also misapprehends the reason why allegedly converted money must be specific and identifiable. *Cf.* Opp. at 48. Conversion is derived from the common-law action for trover, for the return of lost goods that the finder had converted to his or her own use. *E.g., Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th DCA 1970). Thus, Florida law defines conversion as an "act of dominion wrongfully asserted over another's ***property*** inconsistent with his ownership of it." *Id.* (emphasis added). In *Belford Trucking*, the court analyzed the term "property" as it relates to conversion of money or intangibles. *Id.* The court found that money may be considered a proper subject of a conversion action only if it consists of "specific money

amended complaint contains no allegations specifically identifying any bitcoins, and no legally

sufficient (let alone plausible) claim for conversion. Nowhere did Plaintiff allege a specific sum

of bitcoins that supposedly belonged to Dave Kleiman or W&K. Allegations that bitcoins are in

unidentified "wallets," or unspecified "trusts" are insufficient.[26] *Cf.* Opp. at 48.

      Plaintiff also cites authority that undermines his position. *See* Opp. at 48 (citing *Batlle v.

Wachovia Bank, N.A.*, 2011 WL 1085579, at *2 (S.D. Fla. 2011)). In *Batlle*, the court dismissed

a conversion claim because plaintiff failed to allege that the money was specific was identifiable,

despite the fact that the plaintiffs had alleged far more detail (*i.e.*, a specific sum of

$159,518.36), than Plaintiff did here. *Id.* at *1. The mere allegation that a claim "concerns an

amount certain does not make it an 'identifiable fund.'" *Id.* (quoting *Fla. Desk, Inc. v. Mitchell

Int'l, Inc.*, 817 So.2d 1059, 1061 (Fla. 5th DCA 2002)). Plaintiff did not (and never would be

able to) allege an exact number of bitcoins that purportedly were converted, because he has no

idea how many bitcoins are at issue. *See* AC at ¶ 112 ("[T]he exact number of bitcoins . . .

remains to be determined . . . ."). Because the amended complaint fails to allege that the

supposed bitcoins were specific or identifiable, the conversion claim should be dismissed.

### C.    *Plaintiff Failed to Adequately Allege a Claim for Constructive Fraud*

      Plaintiff's purported claim for constructive fraud should be dismissed because the

amended complaint does not allege any express "fiduciary or confidential relationship" between

Plaintiff and Dr. Wright. *Karaali v. Wintrust Capital Mgmt., LLC*, 2011 WL 862328, at *1 (M.D.

Fla. 2011). Plaintiff argues that he "trusted" Dr. Wright after Dr. Wright revealed Dave

Kleiman's involvement in Bitcoin. Opp. at 45. So what? It is not enough to merely argue that

Plaintiff "trusted" Dr. Wright. Among other things that were not alleged, Plaintiff had to allege

---

capable of identification." *Id.* This rule of Florida law has been applied by the Eleventh Circuit.
*Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1541 (11th Cir. 1990) ("Money may be the
subject of a conversion only where 'it consists of specific money capable of identification.'")
(quoting *Belford Trucking*, 243 So. 2d at 648).

that Dr. Wright "recognized, accepted, or undertook the duties of a fiduciary . . . [,]" *Amoco Oil Co.*, 125 F. Supp. 2d 492, 509-10 (S.D. Fla. 2000).

Moreover, even if the requirements for pleading a fiduciary relationship had been met, an allegation that Plaintiff "trusted" Dr. Wright would have been contradicted by his statement that he didn't trust Dr. Wright. *See* AC, Ex. 24 at 18. Even if Plaintiff had alleged, and actually had, "reposed trust in [Dr. Wright], there is no evidence that [Dr. Wright] agreed to accept it and to act to protect [Plaintiff]." *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 542 (Fla. 5th DCA 2003).

Further, as the personal representative of Dave Kleiman's estate, Plaintiff has the same statutory obligations as a trustee, including the duty to exercise "reasonable care, skill, and caution." § 736.0804, Fla. Stat. When Dr. Wright reached out to Dave Kleiman's father on February 11, 2014, Plaintiff was unaware of Dave Kleiman's involvement in Bitcoin or W&K, despite the passage of nearly 10 months since Dave Kleiman's death. Plaintiff then began emailing an unknown person (Dr. Wright) about his late brother's involvement in the creation of a highly-valued cryptocurrency. In the circumstances, Plaintiff should have exercised reasonable care and caution, which puts the lie to his argument that there was a relationship of trust and confidence between him and Dr. Wright. Plaintiff was not permitted to ignore his duty to exercise reasonable diligence for his self-protection, let alone his statutory duty to do so as personal representative of Dave Kleiman's estate, merely by now arguing that he "relied" on Dr. Wright's emails. The constructive fraud claim is legally insufficient, cannot be repaired, and should be dismissed.

## CONCLUSION

For all the foregoing reasons, the amended complaint should be dismissed.

Respectfully submitted,

RIVERO MESTRE LLP
*Attorneys for Craig Wright*
2525 Ponce de Leon Boulevard,
Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: jmestre@riveromestre.com
Email: arolnick@riveromestre.com
Email: dsox@riveromestre.com
Email: receptionist@riveromestre.com

By: s/ Andres Rivero
ANDRES RIVERO
Florida Bar No. 613819
JORGE A. MESTRE
Florida Bar No. 88145
ALAN H. ROLNICK
Florida Bar No. 715085
DANIEL SOX
Florida Bar No. 108573

## CERTIFICATE OF SERVICE

I certify that on August 21, 2018, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

s/ Andres Rivero
Andres Rivero

31