**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC<br><br>*Plaintiffs,*<br><br>v.<br><br>CRAIG WRIGHT<br><br>*Defendant.* | CASE NO.: 9:18-cv-80176-BLOOM/REINHART |

**PLAINTIFFS' DISCOVERY MEMORANDUM IN SUPPORT OF COMPELLING DEFENDANT TO RESPOND TO (1) PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION ("RFP"); (2) PLAINTIFFS' FIRST SET OF INTERROGATORIES ("ROG"); AND (3) PLAINTIFFS' SECOND SET OF ROGS**

Defendant ("Craig") has objected to *every single one* of Plaintiffs' initial discovery requests.[1] Indeed, Craig seems to believe he is not subject to the discovery rules of this Court as manifested by his use of general boiler plate objections (*e.g.* describing the majority of Plaintiff's RFP's as "unintelligible"), his claiming some combination of a "vague," "overly broad," or "unduly burdensome" objection *for every single one* of Plaintiff's RFPs without conferring before serving them, and by his attempt to re-write the discovery requests served on him.

At its core, this case is about a collaboration between Dave Kleiman ("Dave") and Craig to create the Bitcoin protocol, to mine bitcoins, and create Bitcoin related IP. By all accounts, that collaboration was a positive one, at least until Dave passed away. Since the filing of suit, Craig has maintained that despite substantial evidence to the contrary, the collaboration between the two men produced no jointly owned assets. Dave's estate claims, consistent with Craig's pre-litigation admissions, that Dave and Craig jointly owned billions of dollars in bitcoin and other valuable intellectual property. The discovery requests now before this Court seek to flesh out the contours of the Dave/Craig collaboration, the whereabouts of the assets produced by the collaboration, and related topics. Craig is attempting to thwart that legitimate and necessary discovery.

When Dave died in 2013, Plaintiffs didn't understand the extent of his involvement with creating Bitcoin, mining a fortune of bitcoins, and developing valuable blockchain IP (all done in partnership with Craig). This only became clear when Craig admitted it in a series of statements via emails, telephone calls, interviews, television appearances, Australian Tax Office submissions,

[1] At issue in this motion are Craig's Responses and Objections to: (1) Plaintiffs' First RFP (Ex. 1); (2) Plaintiff's First ROGs (Ex. 2); Plaintiffs Second ROGs (Ex. 3). While Defense counsel never contacted Plaintiff's counsel prior to objecting to Plaintiff's RFPs, counsel telephonically conferred after receipt of Defendant's objections for over two and a half hours, the result of which is reflected in an email which unfortunately did little to clarify what objections Craig had agreed to forgo. (Ex. 4.) Plaintiffs still don't understand what Craig has agreed to produce and what he hasn't.

and court submissions. DE 83 ¶¶ 55-65, 79-88.[2] Unfortunately, as a result of Dave's untimely passing, an imbalance of information has been created where Craig is in many instances the sole custodian of documents and other information regarding the collaboration between the two men. This imbalance is exacerbated by the fact that Dave and Craig operated in the world of cypherpunks,[3] an extremely secretive group of people who communicate on encrypted networks. Craig's attempts to stonewall the discovery process prejudices Plaintiff's ability to proceed on claims which, after Fla. Stat. § 772.11 trebles damages, are worth over $82 billion. (DE 83-33).

Plaintiff will be prepared to discuss each of the disputed requests at the coming hearing. But for ease of reference, Plaintiff's discovery requests generally fall into the following categories:

1. Requests concerning personal and business interactions between Dave and Craig during the relevant period (RFP Nos. 1, 2, 3, 4, 5, 9, 10, 11, 12, 13, 14);
2. Requests concerning interactions between Craig and other people with knowledge of his relationship with Dave and their early activities in creating, mining, and developing Bitcoin (RFP Nos. 4, 6, 15, 16; ROG Nos. 5, 6);[4]
3. Requests concerning Craig and Dave's drafting and publication of the Bitcoin white paper, *i.e.*, the first published evidence of their early partnership that spawned the creation of the very assets in dispute (RFP Nos. 1, 3, 4, 6; ROG Nos. 5, 6);
4. Requests concerning entities/persons Craig is involved with that potentially possess the stolen bitcoins and IP, *e.g.*, an entity that purportedly holds 650K bitcoins in trust for Craig and Dave (DE 83-15) (RFP No. 6, 7, 8, 9, 10, 11, 12, 13, 14; ROG Nos. 3, 4);
5. Requests aimed at identifying Craig's bitcoin holdings and transaction activity during the relevant period to track where the stolen bitcoins may be located (RFP No. 7, 8, 9, 10, 11, 12, 13; ROG Nos. 1, 2, 3, 4).

---

[2] Craig moved to dismiss Plaintiffs claims alleging, *inter alia*, that the complaint was "implausible on its face." DE 68, at 33. That motion was denied and the district court rejected Craig's implausibility defense. *Id*.

[3] https://en.wikipedia.org/wiki/Cypherpunk ("A cypherpunk is any activist advocating widespread use of strong cryptography and privacy-enhancing technologies as a route to social and political change.")

[4] For example, while Craig admits that he, Dave, and a third party partnered to become "Satoshi Nakamoto" and create Bitcoin (DE 83, at ¶ 63) – the technology that spawned Craig and Dave's partnership to mine billions of dollars in bitcoin and develop extremely valuable intellectual property – he refuses to identify Dave and Craig's third partner (Ex. 3 at 3-4), a witness privy to the intimate details of Craig and Dave's early partnership with access to documents and communications that will help define the contours of Craig's self-admitted partnership with Dave.

Each of these requests are relevant to Plaintiffs' claims in this matter and Craig should be ordered to produce all responsive documents.[5]

The first category goes to the heart of understanding the full nature of Dave and Craig's business-related activities and any agreements between them. Craig's objections are frivolous.

The second category is related to the first, and properly seeks communications between Craig and others that will shed light on the nature of Craig and Dave's collaboration. As described in the Second Amended Complaint ("SAC"), these individuals were either involved with Dave and Craig's Bitcoin-related partnership, Craig's theft of those assets, or Craig's fraud on Plaintiffs. This is perfectly appropriate discovery aimed directly at the core issues in the case.

The third category seeks evidence related to the central purpose of Craig/Dave's collaboration – the creation of Bitcoin. There simply isn't a good faith basis to object.

The fourth category seeks information related to entities mentioned in the SAC that are closely tied to Craig, bitcoins, and Plaintiffs. Some of these entities received intellectual property belonging to Dave, others entered into agreements to hold billions of dollars of bitcoins in trust for Dave, others are entities used in Craig's fraud against Plaintiffs, and others are trusts believed to hold bitcoins belonging to Dave. Again, this is narrowly tailored, perfectly appropriate discovery.

The fifth category is relevant for the same reasons. This case alleges Craig stole assets from Dave and transferred them to himself, trusts, and corporations. Discovery into Craig's current bitcoin holdings is not financial discovery aimed at collecting a judgment. It is discovery relevant to proving Craig stole Dave's bitcoins, and is hiding these assets in wallets, trusts, and companies.

---

[5] "The scope of discovery under Rule 26(b)(1) is to be broadly and liberally construed." *Matter of Application of O'Keeffe*, 184 F. Supp. 3d 1362, 1367 (S.D. Fla. 2016) (*aff'd sub nom. In re O'Keeffe*, 660 Fed. Appx. 871 (11th Cir. 2016)). "When discovery appears relevant on its face, the party resisting the discovery has the burden to establish facts justifying its objections by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1); or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *In re Takata Airbag Products Liab. Litig.*, 2017 WL 8812734, at *3 (S.D. Fla. July 5, 2017).

Dated: February 13, 2019

Respectfully submitted,

*s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman, Esq.
BOIES SCHILLER FLEXNER LLP
100 SE Second Street, Suite 2800
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307
vfreedman@bsfllp.com

Kyle W. Roche, Esq.
*Admitted Pro Hac Vice*
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300
kroche@bsfllp.com

*Counsel to Plaintiff Ira Kleiman as Personal Representative of the Estate of David Kleiman and W&K Info Defense Research, LLC.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 13, 2019, a true and correct copy of the foregoing and all of its Exhibits was filed with CM/ECF, which caused a copy to be served on all counsel of record.

*/s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman

**CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY that the parties have complied with the pre-hearing communication requirement set forth in this Court's Standing Discovery Order (DE 22).

*/s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman