Exhibit 1

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC | CASE NO.:  9:18-cv-80176-BB |
| *Plaintiffs,* | |
| v. | |
| CRAIG WRIGHT | |
| *Defendant.* | |

### PLAINTIFFS' FIRST REQUEST FOR PRODUCTION TO DEFENDANT CRAIG WRIGHT

Plaintiffs hereby serve their first request for production to Defendant Craig Wright and request that Craig Wright produce the following for inspection, copying, and examination within (30) thirty days from the date hereof, pursuant to Federal Rule of Civil Procedure 34 as follows:

### DEFINITIONS

For the purposes of this Request for Production, the following definitions shall apply:

1. The term "Plaintiffs" shall mean IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC.

2. The terms "Defendant," "you," "yours" and/or "yourselves" shall mean Defendant Craig Wright.

3. The term "Action" shall mean the lawsuit currently pending *Ira Kleiman, et al. v. Craig Wright*, Case No. 9:18-cv-80176-BB in the U.S. District Court, Southern District of Florida.

5. The terms "document" or "documents" shall mean any written, typewritten, handwritten, printed, graphic, photographic, electronic or recorded materials, including, but not

limited to the following: correspondence and drafts of correspondence; e-mails; SMS messages; Whatsapp messages; Signal messages; Twitter DMs; Facebook messages; any other form of messages or communications; notes or summaries of conversations; forms; schedules or worksheets; memoranda; reports; comments; worksheets; plans; minutes; notes; notices or notifications; findings; brochures; circulars; bulletins; advertisements; records; summaries or other reports of conferences, meetings, visits, surveys, discussions, inspections, and examinations; journals; logs; ledgers; balance sheets; profit and loss statements; purchase orders; quotations; estimates; invoices; bids; receipts; pledge commitments; acknowledgments; credit memoranda; contract or lease offers or proposals; income tax returns; check stubs (front and back); sales vouchers or records; executed or proposed agreements; contracts; deeds; franchise agreements; licenses; leases; insurance policies and riders or options; proposals; diaries; desk calendars; appointment books; evaluations; applications; telephone call books, notes or records; affidavits, deposition transcripts, statements or summaries or excerpts thereof; stenographic notes; financial data; newspaper or magazine articles; pamphlets; books; texts; notebooks; magazines; manuals; publications; notepads; tabulations; data compilations; calculations; or computations; schedules; drafts; charts and maps; forecasts and projections; feasibility studies; drawings, designs, plans, specifications; graphs, blueprints, sketches, or diagrams; printouts or other stored information from computers or other information retention or processing systems; hard drives, USB drives, disks, CD's, DVD's, tapes, videotapes; photographic matter or sound reproduction matter however produced, reproduced or stored; computer data of any kind whatsoever; any exhibits, attachments, or schedules to or with the foregoing; any drafts of the foregoing; any of the foregoing that exist in a form by which they are protected by computer encryption; any copies or duplicates of the foregoing that are different because of marginal or handwritten notations, or because of any

markings thereon; the inclusion of specific examples within any individual request does not limit the definition provided herein and should be viewed as merely as examples meant to facilitate production.

6.      "Copy" when used in reference to a document means any color, or black and white facsimile reproduction of a document, regardless of whether that facsimile reproduction is made by means of carbon papers, pressure sensitive paper, xerography or any other means of process.

7.      "Communication" and "communicate" shall mean any recordation, exchange or transfer of information, whether in writing, audio, oral or other form, including, but not limited to, memoranda or notes, telephone conversations and meetings, letters, telegraphic and telex communications, email communications, SMS messages, Twitter DMs, Facebook messages, Whatsapp messages, Signal messages, any other form of messages or communications, blogs, voicemails, and includes all information relating to all oral or written communications and "documents" (as herein above defined), whether or not such document, or information contained herein was transmitted by its author to any other person; the inclusion of specific examples within any individual request does not limit the definition provided herein and should be viewed as merely as examples meant to facilitate production.

8.      "Person" or "persons" shall mean each and every individual, corporation, partnership, joint venture, social or political organization, or any other entity, incorporated or unincorporated, or encompassed within the usual and customary meaning of "person" or "persons."

9.      "Agent" shall mean: any agent, employee, officer, director, attorney, independent contractor or any other person acting at the direction of or on the behalf of another.

10.     "Date" shall mean the exact day, month and year if ascertainable or, if not, the best approximation, including relationship to other events.

11.     The term "materials" shall mean (1) the elements, constituents, or substances of which something is composed or can be made; something (as data) that may be worked into a more finished form (2) apparatus necessary for doing or making something; (3) The substance or substances out of which a thing is or can be made; and/or (4) Tools or apparatus for the performance of a given task.

12.     The term "third party" or **"third parties"** refers to individuals or entities that are not a party to this action.

13.     "Identify" when used in reference to:

a.     a person, shall mean to state his or her full and present or last known address (including zip code), phone number and present or last known position or business affiliation (designating which), and the job description;

b.     a firm, partnership, corporation, proprietorship, entity/business, or association, shall mean to state its full name and present or last known address (designating which) and to state the name and address of each person within the entity likely to have knowledge of the relationship between the entity and Plaintiff;

c.     in the case of a document, the date, author, sender, recipient, type of document or some other means of identifying it and its present location and custodian;

d.     in the case of an oral communication, the date, the communicator, communicate, and the nature of the communication;

e.     in the case of a document within the possession, custody or control of Plaintiff, whether Plaintiff will make it available to Defendants' counsel for inspection and/or copying;

f.     in the case of a document that was, but is no longer in the possession, custody or control of Plaintiff, what disposition has been made of the document.

14.     As used in this Request for Production of Documents, the singular shall include the plural, and vice versa; the use of the word "any" shall include and encompass the word "all," and vice versa; the use of the disjunctive shall include the conjunctive, and vice versa; and, unless context indicates otherwise, the use of any gender includes all other genders.

15.     The term "cryptocurrency" shall mean any digital currency in which encryption techniques are used to regulate the generation of units of currency and verify the transfer of funds, operating independently of a central bank. It shall include, but not be limited to, Bitcoin, Bitcoin Cash, any other "forked" Bitcoin asset, and Etherium's Ethers.

16.     The term "trust" shall include any arrangement, entity, vehicle, agreement, deed, or relationship, in any jurisdiction, where the person with title or control over property has duties to deal with it for another's benefit. Due to variances in various jurisdictions' laws, this definition should not be given an overly formulistic construction, but a liberal one. It should include any arrangement bearing a similarity to a "trust," and any such arrangement you (or others) have actually referred to as a "trust."

17.     Unless explicitly stated otherwise, the requests set forth below relate to the time period of on or about January 2006 through the present.

## REQUESTS FOR PRODUCTION

**REQUEST 1.**     All communications between you and David Kleiman occurring between January 2006 and June 2013.

**REQUEST 2.**     All documents, communications, or computer data (or copies of same) that belonged to David Kleiman and are in your possession or control. There is no time limit for this request.

**REQUEST 3.**     All documents, communications, or computer data (or copies of same) that David Kleiman left in your possession. There is no time limit for this request.

**REQUEST 4.**     All documents and communications related to the drafting and publication of the white paper entitled "Bitcoin: A Peer-to-Peer Electronic Cash System," written under the pseudonymous name Satoshi Nakamoto (including drafts of same).

**REQUEST 5.**     All documents, agreements, and communications relating in any way to W&K Info Defense Research, LLC.

**REQUEST 6.**     All documents, agreements, and communications between you and Ramona Watts occurring between January 2006 and the present, that relate in any way to David Kleiman, W&K Info Defense Research, LLC, the whitepaper referenced in REQUEST 4, the Bitcoin protocol, bitcoins, bitcoin cash, or any other cryptocurrency.

**REQUEST 7.**     All documents and communications that relate in any way to a trust and/or company, corporation, or legal entity that are, in anyway connected or related to you, and that incorporates the word "tulip" or "tulips" in its name and/or documents.

**REQUEST 8.**     All documents and communications that relate in any way to any trust that involves or relates to you, and which previously or presently, directly or indirectly, held, holds, controlled, or controls, or in any way holds an ownership interest in, bitcoins, bitcoin cash, or any

other cryptocurrency. This includes a future expected interest and the right to control the cryptocurrency at some future date. For purposes of this request, "involved or relates to you" shall be construed in the broadest sense and includes trusts of which you obtained or will obtain any benefit from whatsoever no matter how indirect, or on which you serve as a trustee (or similar position), or over which you hold influence or control.

**REQUEST 9.**     All documents and communications that relate in any way to any company, corporation, or other legal entity that involves or relates to you, and which previously or presently, directly or indirectly, held, holds, controlled, or controls, or in any way holds an ownership interest in, bitcoins, bitcoin cash, or any other cryptocurrency. This includes a future expected interest and the right to control the cryptocurrency at some future date. For purposes of this request, "involved or relates to you" shall be construed in the broadest sense and includes companies, corporations, or legal entities you held or currently hold an ownership interest in (no matter how indirect), and ones you served as an officer, director, employee, agent, or person of authority to.

**REQUEST 10.**     The complete and final version, without redaction, of the document or draft of document, attached as Exhibit A.

**REQUEST 11.**     All documents and communications that in any way relate to the trust or trusts referenced by the attached Exhibit A in the following places (emphasis added):

- I acknowledge the trust and the transfer of Bitcoins **to this trust**.
- David Kleiman, shall become the **trustee** for the transfer of the satoshi I have received from Craig Wright.
- I will form a **trust** to be managed by at least three people but not more than seven at any time.
- The return will be in the form of a return of control of a company to Dr Wright. The company and **trust** will be managed and held in the Seychelles. This will be designated by Tulips . . .
- The **trust** MUST hold a balance of at least 100,000 Bitcoin at transfer to Dr Wright in 2020 and all means to ensure this will be followed.

7

- The **trust** will be accessible by two (2) of five keys . . .
- If Dr Wright should die before 2020, the entire minus an amount noted below value and **trust** holdings are to be transferred to Ramona Watts
- If I should die, Dr Wright will be retuned shares in the **Tulip trust** and company 15 months after my death at his discretion.

**REQUEST 12.**    All documents and communications that in any way relate to the company referenced by the attached Exhibit A in these specific instances:

- The return will be in the form of a return of control of a **company** to Dr Wright. The **company** and trust will be managed and held in the Seychelles. This will be designated by Tulips . . .
- Dr Wright will be retuned shares in the Tulip trust and **company** 15 months after my death at his discretion.

**REQUEST 13.**    All documents relating to any company, corporation, legal entity, or trust that is in anyway related to you and is in anyway associated with the Seychelles.

**REQUEST 14.**    All documents and communications relating to Design by Human Ltd.

**REQUEST 15.**    All communications between you and Uyen Nguyen that occurred between January 1, 2007 and the present.

**REQUEST 16.**    All communications between you and Ross Ulbricht that occurred between January 1, 2010 and January 1, 2014. For purposes of this interrogatory any communications with "Dread Pirate Roberts" should be considered communications with Ross Ulbricht.

Dated: May 30, 2018.                              Respectfully submitted,

                                                 *s/ Velvel (Devin) Freedman*
                                                 Velvel (Devin) Freedman, Esq.
                                                 BOIES SCHILLER FLEXNER LLP
                                                 100 SE Second Street, Suite 2800
                                                 Miami, Florida  33131
                                                 Telephone:  (305) 539-8400
                                                 Facsimile:   (305) 539-1307
                                                 vfreedman@bsfllp.com

Kyle W. Roche, Esq.
*Admitted Pro Hac Vice*
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300
kroche@bsfllp.com

*Counsel to Plaintiff Ira Kleiman as Personal*
*Representative of the Estate of David Kleiman*
*and W&K Info Defense Research, LLC.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 30, 2018, a true and correct copy of the foregoing was served on all counsel of record identified on the Service List below via e-mail:

Andres Rivero, Esq.
Jorge A. Mester, Esq.
Alan H. Rolnick, Esq.
Daniel Sox, Esq.
RIVERO MESTRE LLP
2525 Ponce de Leon Boulevard
Suite 1000
Coral Gables, FL 33134
305-445-2500
(305) 445-2505 (fax)
arivero@riveromestre.com
jmestre@riveromestre.com
arolnick@riveromestre.com
dsox@riveromestre.com
receptionist@riveromestre.com

*/s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman

# EXHIBIT A

To whom it may concern,

CC:     Dr Craig Wright

I acknowledge the trust and the transfer of Bitcoins to this trust. I have full control of all software and the keys used to manage bitcoin as of this date, Thu 06/09/2011.

**It is agreed that:**

I, David Kleiman, shall become the trustee for the transfer of the satoshi I have received from Craig Wright.

No record of this transaction will be filed in the US or Australia.

The transfer is valued at USD 100,000 for Australian Tax purposes.

**I acknowledge:**

I, Dave Kleiman have received 1,100,111 Bitcoin from Craig Wright (of ███████████████ Bagnoo, NSW Australia). At the time of transfer this is valued at around $100,000 USD.

I will form a trust to be managed by at least three people but not more than seven at any time.

All Bitcoin will be returned to Dr Wright on Jan 01st 2020.

The return will be in the form of a return of control of a company to Dr Wright. The company and trust will be managed and held in the Seychelles. This will be designated by "Tulips" and the trading that was noted to have not been a bubble but

No record of this arrangement will be made public at any time.

Dr Wright has noted that he is facing bankruptcy due to the following and that he understands moving assets (at value) in a manner that he cannot access may be a breach of Australian law if he fails to provide information on these assets. This would be in the event of an insolvency.

Dr Wright has noted that he has agreed to forgo other assets to maintain these assets and has agreed with his wife, Ms Lynn Wright that they he will maintain the Bitcoin at the expense of all other assets he may have a right to.

The trust MUST hold a balance of at least 100,000 Bitcoin at transfer to Dr Wright in 2020 and all means to ensure this will be followed.

Dr Wright MAY request a loan of Bitcoin for the following reasons (and no others):

- Furthering research into peer to peer systems, IPv6 and Bitcoin
- Commercial activities that enhance the value and position of Bitcoin.

In all events, all transactions in loaned funds will be concluded outside of Australia and the USA until and unless a clear and acceptable path to the recognition of Bitcoin as currency has occurred.


The trust will be accessible by two (2) of five keys of which the following are to always be incorporated into this (by PGP fingerprint):

- 56EC 672A 6B67 266A 5E21  1514 A0DA 0EB2 E545 EB7B
- DBB7 E697 59EF D7FE EB4C  F51B 4FF1 CFEB C941 FE6D

- 0AC1 8AFE 1F8D 3512 BE15  6909 B18B BF41 1F55 6274
- DE4E FCA3 E1AB 9E41 CE96  CECB 18C0 9E86 5EC9 48A1

Another party will be selected without Dr Wright's knowledge.

The following conditions are applicable at all times:

- If Dr Wright should die before 2020, the entire minus an amount noted below value and trust holdings are to be transferred to Ramona Watts (Sydney Australia, born ████1970).
- If I should die, Dr Wright will be retuned shares in the Tulip trust and company 15 months after my death at his discretion.
- The amount not included to be sent to Ramona Watts will be used to show the "lies and fraud perpetrated by Adam Westwood of the Australian Tax Office against Dr Wright"
- The last condition is listed as a direct quote of Dr Wright who has specified against my advice that he requires this line to be included.

I lastly acknowledge that I will not divulge the identity of the Key with ID C941FE6D nor of the origins of the satoshin@gmx.com email.

Respectfully,

Dave Kleiman - http://www.ComputerForensicExaminer.com -
http://www.DigitalForensicExpert.com

████████████
Palm Beach Gardens, FL 33410
561.310.8801

GIZMODO

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IRA KLEIMAN,
as personal representative of
the estate of David Kleiman,
and W&K INFO DEFENSE RESEARCH,
LLC

      Plaintiffs,

v.                                                          **Case No. 9:18-cv-80176 (BB/BR)**

CRAIG WRIGHT,

      Defendant.

_____/

**CRAIG WRIGHT'S RESPONSE TO**
**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION**

      In accordance with Rule 34 of the Federal Rules of Civil Procedure, Defendant Craig

Wright responds to Plaintiffs' First Request for Production (the "Requests") as follows:

**PRELIMINARY STATEMENT**

      Dr. Wright has not completed his investigation of this action. The responses set forth

below are based on his knowledge, information, and belief at this time. The individual responses

and objections are not intended to be, and should not be interpreted as, a representation as to the

existence or nonexistence of specific documents in his possession, custody, or control. Dr.

Wright incorporates by reference this preliminary statement in each of his specific responses

below and reserves the right to amend or supplement his response to each specific request.

      Dr. Wright has provided a draft confidentiality order to Plaintiffs and the parties are

currently negotiating such an order, but with no confidentiality order in place, Dr. Wright objects

to the production of any documents until such order has been entered by the Court. Further, the

parties have not yet agreed on an ESI protocol. Dr. Wright objects to the production of any electronic documents until after the parties agree to an ESI protocol and search terms, due to the facts that potentially responsive ESI is located outside the United States and Plaintiffs seek documents and information dating back more than a decade.

Subject to the responses and objections set forth below, Dr. Wright agrees to produce responsive, non-privileged documents in his possession, custody, or control in a mutually agreeable fashion on a rolling basis as such documents become available. Dr. Wright's counsel is available to meet and confer with Plaintiffs' counsel regarding these responses and objections at a mutually convenient time.

## SPECIFIC RESPONSES TO DEFINITIONS

### Definition No. 5[1]

Dr. Wright objects to this definition to the extent it includes documents that are protected by the attorney-client privilege, attorney work-product doctrine, spousal privilege, or any other privilege or protection from production under relevant statutes and case law, including the laws of foreign nations. He also objects to this definition to the extent that it seeks to impose on him obligations greater than those set forth in the Federal Rules of Civil Procedure. In addition, Dr. Wright objects to this definition because it is vague and overbroad; for instance, "computer data of any kind whatsoever" is both overbroad and utterly unclear as to the specific data or type of data sought. Dr. Wright further objects to this definition to the extent that it seeks documents available in the public domain, which are more convenient, less burdensome, and less expensive to obtain.

---

[1] Dr. Wright notes that there is no Definition No. 4 and responds to the definitions as numbered in Plaintiff's First Request for Production.

**Definition No. 6**

Dr. Wright objects to this definition to the extent that it seeks duplicative documents, including, but not limited to, electronic documents with the same hash value.

**Definition No. 7**

Dr. Wright objects to this definition to the extent that it seeks documents available in the public domain. Moreover, Dr. Wright objects to this definition to the extent that it seeks documents protected and restricted by the laws of foreign nations where the data was created or is maintained.

**Definition No. 8**

Dr. Wright objects to this definition to the extent that it seeks documents not in his possession, custody, or control. Dr. Wright further objects to this definition to the extent that it seeks documents that may be covered under confidentiality or non-disclosure agreements. Moreover, Dr. Wright objects to this definition to the extent that it seeks documents protected and restricted by the laws of foreign nations where the data was created or is maintained.

**Definition No. 13**

Dr. Wright objects to this definition to the extent that it seeks to impose on him obligations greater than those set forth in the Federal Rules of Civil Procedure. Dr. Wright further objects to this definition as it has no relevance to the requests and is not used here.

**Definition No. 14**

Dr. Wright objects to the use of the disjunctive to include the conjunctive (and vice versa), because it makes the requests unintelligible.

**Definition No. 16**

Dr. Wright objects to this definition to the extent that it seeks documents outside of his possession, custody, or control. Moreover, Dr. Wright objects to this definition to the extent that it seeks documents protected and restricted by the laws of foreign nations where the data was created or is maintained.

**Definition No. 17**

Dr. Wright objects to the time frame of "January 2006 through the present" as the claims in the Second Amended Complaint relate to actions and events beginning on March 12, 2008, at the earliest. Dr. Wright will not search for documents before March 12, 2008, or after the date the original complaint was filed on February 14, 2018.

## SPECIFIC RESPONSES TO REQUESTS FOR PRODUCTION

**Request No. 1**

All communications between you and David Kleiman occurring between January 2006 and June 2013.

**Response to Request No. 1**

Dr. Wright objects to this request because it is grossly overbroad, unduly burdensome, harassing and oppressive, not proportional to the needs of the case, demands production of information that may contain trade secrets or confidential commercial information without the protections of a confidentiality order, and is not limited to information within Dr. Wright's possession, custody, or control. Moreover, Dr. Wright objects to this request to the extent that it seeks documents protected and restricted by the laws of foreign nations where the data was created or is maintained.

Specifically, this request is grossly overbroad, unduly burdensome, harassing, and

oppressive for (1) seeking "all communications" from 13 years ago, even though the allegations in the Complaint begin with alleged events that purportedly occurred on March 12, 2008, and (2) for seeking communications with David Kleiman after his death in April 2013. As drafted, this request seeks information that has no relevance to the issues as framed by the pleadings and is wholly unnecessary for Plaintiffs to litigate their claims. This kind of discovery is expressly forbidden by the federal rules, which limit the scope of discovery to "nonprivileged matter[s] that [are] *relevant* to any party's *claim* or defense . . . ." Fed. R. Civ. P. 26(b)(1).

Finally, this request also improperly demands production of information that constitutes trade secrets, confidential commercial information, without the protection of a confidentiality order.

Notwithstanding these objections, Dr. Wright will search for communications with David Kleiman in Dr. Wright's possession, custody, and control beginning on March 12, 2008, through April 2013, regarding cryptocurrency, W&K Info Defense Research, LLC, presentations to the United States Department of Homeland Security, and trusts created for either Dr. Wright's or David Kleiman's benefit, after the parties agree to an ESI protocol and search terms. Dr. Wright will only produce any responsive material after a confidentiality order is entered by the Court.

## Request No. 2

All documents, communications, or computer data (or copies of same) that belonged to David Kleiman and are in your possession or control. There is no time limit for this request.

## Response to Request No. 2

Dr. Wright objects to this request because it is vague and unintelligible, overbroad, unduly burdensome, and demands production of information that may contain trade secrets or confidential commercial information without the protection of a confidentiality order.

The request is improperly vague and unintelligible because Plaintiffs do not explain how, let alone what, documents, communications, or computer data might have "belonged" to David Kleiman, and provide no definition of this term. Further, whether David Kleiman ever had an ownership interest in any information Dr. Wright might possess is a matter of dispute. Moreover, the term "computer data" is undefined, and it is unclear what is meant by this term. Depending on the definition of "computer data", this request could encompass data that cannot be reduced to discoverable form. Accordingly, Dr. Wright is unable to readily identify which documents, if any, might be responsive to this request.

Even if it were not vague and unintelligible, this request would remain overbroad and unduly burdensome. It is not limited to a relevant time period or subject matter and Plaintiffs have not narrowed its scope to the issues as framed by the pleadings. It is not proportional to the needs of the case and is not necessary for Plaintiffs to adequately litigate their claims. Moreover, the term "computer data" is undefined and improperly vague, and its meaning is unclear. Depending on the definition of "computer data", this request could include data that cannot be reduced to discoverable form. Accordingly, Dr. Wright is unable to readily identify which documents, if any, might be responsive to this request.

**Request No. 3**

All documents, communications, or computer data (or copies of same) that David Kleiman left in your possession. There is no time limit for this request.

**Response to Request No. 3**

Dr. Wright objects to this request because it is vague and unintelligible, overbroad, unduly burdensome, and demands production of information that may contain trade secrets or confidential commercial information without the protection of a confidentiality order.

The request is improperly vague and unintelligible because Plaintiffs do not explain how, let alone what, documents, communications, or computer data David Kleiman might have "left" in Dr. Wright's possession, and provide no definition of this term. Further, the implication of the request is that the David Kleiman had some ownership interest in the "documents, communications, or computer data" requested. However, whether David Kleiman ever had an ownership interest in any information Dr. Wright might possess is a matter of dispute. Additionally, whether any "documents, communications or computer data" David Kleiman may have been "left" with Dr. Wright were intended to be "left" with him is also a matter of dispute. Moreover, the term "computer data" is undefined and improperly vague, and it is unclear what is meant by this term. Depending on the definition of "computer data", this request could include data that cannot be reduced to discoverable form. Accordingly, Dr. Wright is unable to readily identify which documents, if any, might be responsive to this request.

Even if it were not vague and unintelligible, this request would remain overbroad and unduly burdensome. It is not limited to a relevant time period, subject matter, or to the issues as framed by the pleadings. It is, thus, not proportional to the needs of the case and is not necessary for Plaintiffs to adequately litigate their claims.

**Request No. 4**

All documents and communications related to the drafting and publication of the white paper entitled "Bitcoin: A Peer-to-Peer Electronic Cash System," written under the pseudonymous name Satoshi Nakamoto (including drafts of same).

**Response to Request No. 4**

Dr. Wright objects to this request as improperly overbroad because it is not limited to the issues as framed by the pleadings, namely, David Kleiman's alleged involvement in the

publication referenced above. Dr. Wright also objects to this request to the extent it is duplicative of Request No. 1 and incorporates by reference his response to Request No. 1 as if fully stated here.

Moreover, Dr. Wright objects because this request demands production of information that may contain privileged attorney-client communications and attorney-work product, as well as information that constitutes trade secrets or confidential commercial information, without the protection of a confidentiality order.

Notwithstanding these objections, Dr. Wright will search for documents and communications with David Kleiman relevant to the drafting and publication of the white paper entitled "Bitcoin: A Peer-to-Peer Electronic Cash System," written under the pseudonymous name Satoshi Nakamoto from March 12, 2008, through April 2013, after the parties agree to an ESI protocol and search terms. In addition, Dr. Wright will only produce any responsive material after a confidentiality order is entered by the Court.

**Request No. 5**

All documents, agreements, and communications relating in any way to W&K Info Defense Research, LLC.

**Response to Request No. 5**

Dr. Wright objects to this request as improperly overbroad because it is not limited to the issues as framed by the pleadings, demands information that has no relevance to those issues, and is not proportional to the needs of the case. For example, the Second Amended Complaint alleges that W&K Info Defense Research, LLC, didn't even exist until February 14, 2011. Dr. Wright, further objects to this request to the extent that it seeks documents not within his possession, custody, or control. He also objects to this request to the extent it is duplicative of

Request No. 1 and incorporates his response to that request here. Finally, Dr. Wright objects to this request to the extent it seeks information that contains privileged attorney-client communications, attorney work-product, or information that constitutes trade secrets or confidential commercial information without the protection of a confidentiality order.

Notwithstanding these objections, Dr. Wright will search for communications, documents, and agreements relating to W&K Info Defense Research, LLC from January 1, 2011, through the February 14, 2018, after the parties agree to an ESI protocol and search terms. In addition, Dr. Wright will only produce any responsive material after a protective order is entered by the Court.

**Request No. 6**

All documents, agreements, and communications between you and Ramona Watts occurring between January 2006 and the present, that relate in any way to David Kleiman, W&K Info Defense Research, LLC, the whitepaper referenced in REQUEST 4, the Bitcoin protocol, bitcoins, bitcoin cash, or any other cryptocurrency.

**Response to Request No. 6**

Dr. Wright objects to this request because it is overbroad, improperly intrusive, oppressive and harassing, demands production of irrelevant information, is not proportional to the needs of the case, is unduly burdensome, seeks information that is not in his possession, custody, or control, and demands information that may contain attorney-client communications, attorney work-product, spousal communications, trade secrets, or confidential commercial information. Moreover, Dr. Wright objects to this request to the extent that it seeks documents protected and restricted by the laws of foreign nations where the data was created or is maintained.

Specifically, this request is improperly overbroad and unduly burdensome because it demands information regarding communications with a non-party that may have occurred twelve years ago, even though none of the alleged events in the Second Amended Complaint are alleged to have occurred before March 12, 2008.

Dr. Wright further objects to this request as improperly intrusive, oppressive, and harassing because it demands production of private communications between Dr. Wright and his spouse, Ramona Watts, that occurred during the time they were married and are protected from disclosure by the spousal communications privilege.

Notwithstanding these objections, Dr. Wright will search for documents, agreements, and communications between himself and Ramona Watts occurring between March 12, 2008, and November 22, 2013 (the day before their marriage), that relate to David Kleiman or W&K Info Defense Research, LLC, after the parties agree to an ESI protocol and search terms. In addition, Dr. Wright will only produce any responsive material after a confidentiality order is entered by the Court.

**Request No. 7**

All documents and communications that relate in any way to a trust and/or company, corporation, or legal entity that are, in anyway [*sic*] connected or related to you, and that incorporates the word "tulip" or "tulips" in its name and/or documents.

**Response to Request No. 7**

Dr. Wright objects to this request because it is overbroad, demands production of irrelevant information, is not proportional to the needs of the case, is unduly burdensome, seeks documents that are not in Dr. Wright's possession, custody, or control, and demands production of information that may contain attorney-client communications, attorney work-product, trade

10

secrets, or confidential commercial information without the protections of a protective order. Dr. Wright further objects to this request to the extent that it seeks documents that may be subject to confidentiality agreements or non-disclosure agreements. Moreover, Dr. Wright objects to this request to the extent that it seeks documents protected and restricted by the laws of foreign nations where the data was created or is maintained.

Notwithstanding these objections, Dr. Wright will search for documents and communications that relate to any trust, company, corporation, or legal entity in which he has any interest and incorporates the word "tulip" or "tulips" in "its name and/or documents" from January 1, 2011, through February 14, 2018, after the parties agree to an ESI protocol and search terms. In addition, Dr. Wright will only produce any responsive material after a confidentiality order is entered by the Court.

**Request No. 8**

All documents and communications that relate in any way to any trust that involves or relates to you, and which previously or presently, directly or indirectly, held, holds, controlled, or controls, or in any way holds an ownership interest in, bitcoins, bitcoin cash, or any other cryptocurrency. This includes a future expected interest and the right to control the cryptocurrency at some future date. For purposes of this request, "involved or relates to you" shall be construed in the broadest sense and includes trusts of which you obtained or will obtain any benefit from whatsoever no matter how indirect, or on which you serve as a trustee (or similar position), or over which you hold influence or control.

**Response to Request No. 8**

Dr. Wright objects to this request because it is vague and unintelligible, overbroad, improperly intrusive, oppressive, harassing and burdensome, not proportional to the needs of the

11

case, amounts to financial discovery that no plaintiff may seek until and unless it obtains a final judgment, and demands production of trade secrets and confidential commercial information without the protection of a confidentiality order. Dr. Wright further objects to this definition to the extent that it seeks documents that may be covered under confidentiality or non-disclosure agreements. Moreover, Dr. Wright objects to this request to the extent that it seeks documents protected and restricted by the laws of foreign nations where the data was created or is maintained.

This request is vague and unintelligible because it seeks documents that "relate" to "any trust" that "*relates*" to Dr. Wright, an undefined concept that makes no sense as written, which makes it impossible for Dr. Wright to discern what Plaintiffs are talking about. Plaintiffs magnify the impropriety of this unintelligible formulation by claiming that it should be "construed in the broadest sense," which reduces this request to alphabet soup.

Even if it were not vague and unintelligible, this request would remain improperly overbroad because it relies on an improperly overbroad purported definition of the term "trust," is not limited to any time period as framed in the Amended Compliant or any location, seeks documents that have absolutely no relevance to the issues as framed by the pleadings, is not proportional to the needs of the case, and is not necessary for Plaintiffs to adequately litigate their claims.

Moreover, this request amounts to oppressive harassment badly disguised as an unduly burdensome discovery request. No plaintiff may demand harassing and burdensome financial discovery that is not only wholly irrelevant to its purported claims but is the sort of inherently intrusive discovery that no plaintiff may seek until and unless it has obtained a final judgment.

Dr. Wright reserves all rights to seek appropriate sanctions for Plaintiffs' conduct, including an action for abuse of process and malicious prosecution.

Even if Plaintiffs were permitted to harass Dr. Wright with wholly irrelevant, overbroad, premature financial discovery, this request would remain unduly burdensome. Requiring Dr. Wright to produce documents relating to "trusts" located anywhere in the world would be unduly burdensome because it would force Dr. Wright to incur massive expense and inconvenience in obtaining documents anywhere on Earth that might be responsive to this unintelligible, overbroad, oppressive, and harassing request.

Dr. Wright further objects to this request to the extent it seeks documents that are not in his possession, custody, or control, or contain privileged attorney-client communications, attorney work-product, or information that constitutes trade secrets or confidential commercial information.

Notwithstanding these objections, Dr. Wright will search for documents and communications from January 1, 2011, through February 14, 2018, related to any trust for which he is a beneficiary or trustee that holds or held any ownership in or rights to cryptocurrency, and that were contemplated in any contract with David Kleiman or W&K Info Research Defense, LLC, after the parties agree to an ESI protocol and search terms. In addition, Dr. Wright will only produce any responsive material after a confidentiality order is entered by the Court.

**<u>Request No. 9</u>**

All documents and communications that relate in any way to any company, corporation, or other legal entity that involves or relates to you, and which previously or presently, directly or indirectly, held, holds, controlled, or controls, or in any way holds an ownership interest in, bitcoins, bitcoin cash, or any other cryptocurrency. This includes a future expected interest and

the right to control the cryptocurrency at some future date. For purposes of this request, "involved or relates to you" shall be construed in the broadest sense and includes companies, corporations, or legal entities you held or currently hold an ownership interest in (no matter how indirect), and ones you served as an officer, director, employee, agent, or person of authority to.

**Response to Request No. 9**

Dr. Wright objects to this request because it is vague and unintelligible, overbroad, improperly intrusive, oppressive, harassing and burdensome, not proportional to the needs of the case, amounts to financial discovery that no plaintiff is entitled to until and unless it obtains a final judgment, and demands production of trade secrets and confidential commercial information without the protection of a confidentiality order. Dr. Wright further objects to this request to the extent that it seeks documents that may be covered under confidentiality or non-disclosure agreements. Moreover, Dr. Wright objects to this request to the extent that it seeks documents protected and restricted by the laws of foreign nations where the data was created or is maintained.

This request is vague and unintelligible because it seeks documents that "relate" to "any company, corporation or other legal entity" that "*relates*" to Dr. Wright, an undefined concept that makes no sense as written, which makes it impossible for Dr. Wright to discern what Plaintiffs are talking about. Plaintiffs magnify the impropriety of this unintelligible formulation by claiming that it should be "construed in the broadest sense," which reduces this request to alphabet soup.

Even if it were not vague and unintelligible, this request would remain improperly overbroad because it relies on an improperly overbroad, purported definition of "company, corporation or other legal entity," is not limited to any location, seeks documents that have

absolutely no relevance to the issues as framed by the pleadings, is not proportional to the needs of the case, and is not necessary for Plaintiffs to adequately litigate their claims.

Moreover, this request amounts to oppressive harassment badly disguised as an unduly burdensome discovery request. No plaintiff may demand harassing and burdensome financial discovery that is not only wholly irrelevant to its purported claims, but the sort of inherently intrusive discovery a plaintiff may not seek until and unless it has obtained a final judgment. Dr. Wright reserves all rights to seek appropriate sanctions for Plaintiffs' conduct, including an action for abuse of process and malicious prosecution.

Even if Plaintiffs were permitted to harass Dr. Wright with wholly irrelevant, overbroad, premature financial discovery, this request would remain unduly burdensome. Requiring Dr. Wright to produce documents relating to "company[ies], corporation[s] or other legal entit[ies]" located anywhere in the world would be unduly burdensome because it would force Dr. Wright to incur massive expense and inconvenience in obtaining documents anywhere on Earth that might be responsive to this unintelligible, overbroad, oppressive and harassing request, whether or not in his possession, custody, or control.

Dr. Wright further objects to this request to the extent it seeks documents that are not in his possession, custody, or control, and may contain privileged attorney-client communications, attorney work-product, or information that constitutes trade secrets or confidential commercial information.

**<u>Request No. 10</u>**

The complete and final version, without redaction, of the document or draft of document, attached as Exhibit A.

**Response to Request No. 10**

Dr. Wright objects to this request as unintelligible because it demands production of the "final version" of a "draft of" a document, an oxymoron that makes no sense. Dr. Wright also objects because this request is based on an illegally obtained document that has not been and cannot be authenticated. Dr. Wright further objects to this request to the extent that it seeks documents that are not within his possession, custody, or control.

This request cites and relies on a wholly unauthenticated, unverified document, that was retrieved from an untrustworthy online source. The document referred to as "Exhibit A" appears to have a watermark from the website Gizmodo as well as three redactions. Dr. Wright has no idea whether Plaintiffs, their online source, or someone else made modifications to this document, let alone what modifications were made. Accordingly, this request boils down to an improper fishing expedition.

Moreover, if and to the extent a responsive document might exist and might be in Dr. Wright's possession, custody, or control, this request would be duplicative of Requests Nos. 1 and 7. As such, Dr. Wright incorporates by reference his responses to Requests Nos. 1 and 7 as if fully stated here.

**Request No. 11**

All documents and communications that in any way relate to the trust or trusts referenced by the attached Exhibit A in the following places (emphasis added):

- I acknowledge the trust and the transfer of Bitcoins **to this trust**.

- David Kleiman, shall become the **trustee** for the transfer of the satoshi I have received from Craig Wright.

- I will form a **trust** to be managed by at least three people but not more than seven at any time.

- The return will be in the form of a return of control of a company to Dr Wright. The company and **trust** will be managed and held in the Seychelles. This will be designated by Tulips . . .

- The **trust** MUST hold a balance of at least 100,000 Bitcoin at transfer to Dr Wright in 2020 and all means to ensure this will be followed.

- The **trust** will be accessible by two (2) of five keys . . .

- If Dr Wright should die before 2020, the entire minus an amount noted below value and **trust** holdings are to be transferred to Ramona Watts

- If I should die, Dr Wright will be retuned shares in the **Tulip trust** and company 15 months after my death at his discretion.

**<u>Response to Request No. 11</u>**

Dr. Wright incorporates by reference his response to Request No. 10 as if fully stated here. This request also is vague and unintelligible because it seeks documents and communications that "in any way relate" to a "trust or trusts referenced by the attached Exhibit A," which are unnamed and unidentified trusts in a document obtained from questionable online sources, and which makes it impossible for Dr. Wright to identify what documents, if any, might be responsive to this request.

This request also is improperly overbroad because it demands "all documents and communications that in any way relate to the trust or trusts referenced by the attached Exhibit A," with no limitation as to the issues Plaintiffs purport to raise in this action. This request also is improperly intrusive, oppressive, harassing, and burdensome.

Even if Plaintiffs were permitted to harass Dr. Wright with wholly irrelevant, overbroad demands for "all documents" relating to any trust or company purportedly alluded to in documents purportedly retrieved from questionable internet sources, this request would remain unduly burdensome because it would force Dr. Wright to incur massive expense and inconvenience in obtaining documents anywhere on Earth that might be responsive to this overbroad, oppressive, and harassing request.

Dr. Wright further objects to this request to the extent it seeks documents that are not in his possession, custody, or control, or contain privileged attorney-client communications, attorney work-product, or information that constitutes trade secrets or confidential commercial information.

Moreover, if and to the extent any responsive document might exist and might be in Dr. Wright's possession, custody, or control, this Request would be duplicative of Requests Nos. 1, 7, and 8. As such, Dr. Wright incorporates by reference his responses to Requests Nos. 1, 7, and 8 as if fully stated here.

**<u>Request No. 12</u>**

All documents and communications that in any way relate to the company referenced by the attached Exhibit A in these specific instances:

- The return will be in the form of a return of control of a **company** to Dr Wright. The **company** and trust will be managed and held in the Seychelles. This will be designated by Tulips . . .

- Dr. Wright will be retuned shares in the Tulip trust and **company** 15 months after my death at his discretion.

**Response to Request No. 12**

Dr. Wright incorporates by reference his responses to Requests Nos. 10 and 11 as if fully stated here. Moreover, if and to the extent a document similar to the attached Exhibit A might exist and might be in Dr. Wright's possession, custody, or control, this Request would be duplicative of Requests Nos. 1 and 7-9. As such, Dr. Wright incorporates by reference his responses to Requests Nos. 1 and 7-9 as if fully stated here.

**Request No. 13**

All documents relating to any company, corporation, legal entity, or trust that is in anyway related to you and is in anyway associated with the Seychelles.

**Response to Request No. 13**

Dr. Wright objects to this request because it is vague and unintelligible as written, overbroad, improperly intrusive, oppressive and harassing, unduly burdensome, and neither relevant nor proportional to the needs of the case. Moreover, Dr. Wright objects to this request to the extent that it seeks documents protected and restricted by the laws of foreign nations where the data was created or is maintained.

This request is vague and unintelligible because it seeks documents "relating" to "any company, corporation, legal entity, or trust" that is "in anyway [sic] related" to Dr. Wright and is "in anyway [sic] associated" with the Seychelles. Even if "in any way related" were not impermissibly vague and overbroad, "in anyway associated with the Seychelles" is both. That a trust might be "associated with" a country is an undefined concept that makes no sense as written, which makes it impossible for Dr. Wright to discern what Plaintiffs are talking about.

Even if it were not vague and unintelligible, this Request would remain overbroad because it is not limited to allegations in the Second Amended Complaint either in terms of time

19

period or subject matter. Dr. Wright objects to the overbreadth of this request because it is neither relevant nor proportional to the needs of the case and is not necessary for Plaintiffs to adequately litigate their claims.

Even if it Plaintiffs were permitted to harass Dr. Wright with wholly irrelevant, overbroad discovery, this request would remain unduly burdensome. Requiring Dr. Wright to produce documents located anywhere in the world relating to "any company, corporation, legal entity, or trust" that is "associated" with the Seychelles (whatever that means) would be unduly burdensome, because it would force Dr. Wright to incur massive expense and inconvenience in obtaining documents anywhere on Earth that might be responsive to this unintelligible, overbroad, oppressive, and harassing request.

Finally, Dr. Wright objects to this request to the extent it seeks documents that are not in his possession, custody, or control, or contain privileged attorney-client communications, attorney work-product, or information that constitutes trade secrets or confidential commercial information without the protection of a confidentiality order.

Notwithstanding these objections, Dr. Wright will search for documents related to any company, corporation, legal entity, or trust in which he has an interest that is located or incorporated in the Seychelles, and that was contemplated in any contract with David Kleiman or W&K Info Research Defense, LLC from January 1, 2011, through February 14, 2018, after the parties agree to an ESI protocol and search terms. In addition, Dr. Wright will only produce any responsive material after a confidentiality order is entered by the Court.

**<u>Request No. 14</u>**

All documents and communications relating to Design by Human Ltd.

**Response to Request No. 14**

Dr. Wright objects to this request because it is grossly overbroad, unduly burdensome, not relevant or proportional to the needs of the case, demands production of information that may contain trade secrets or confidential commercial information, and is not limited to information within Dr. Wright's possession, custody, or control.

Dr. Wright objects to this request as improperly overbroad because it is not limited to a relevant time period or subject matter, demands information that has no relevance to the issues as framed by the pleadings, is not relevant or proportional to the needs of the case, is not necessary for Plaintiffs to adequately litigate their claims, and amounts to an improper fishing expedition.

Moreover, even if this request were not improperly overbroad, attempting to comply with it would impose undue burden and expense on Dr. Wright. This request also improperly demands production of information that is not within Dr. Wright's possession, custody, or control. Dr. Wright further objects to this request to the extent that it seeks documents that may be subject to confidentiality or non-disclosure agreements. Moreover, Dr. Wright objects to this request to the extent that it seeks documents protected and restricted by the laws of foreign nations where the data was created or is maintained. Finally, Dr. Wright objects to this request to the extent it seeks information that contains trade secrets or confidential commercial information without the protection of a confidentiality order.

Notwithstanding these objections, Dr. Wright will search for documents and communications relating to Design by Human Ltd. and relevant to David Kleiman or W&K Info Defense, Inc., in his possession, custody, and control from March 12, 2008, through February 14, 2018, after the parties agree to an ESI protocol and search terms. In addition, Dr. Wright will only produce any responsive material after a confidentiality order is entered by the Court.

21

**Request No. 15**

All communications between you and Uyen Nguyen that occurred between January 1, 2007 and the present.

**Response to Request No. 15**

Dr. Wright objects to this request because it is grossly overbroad, unduly burdensome, oppressive and harassing, is not relevant or proportional to the needs of the case, demands production of information that may contain privileged attorney-client communications, attorney work-product, trade secrets or confidential commercial information, and is not limited to information within Dr. Wright's possession, custody, or control. Specifically, this request is grossly overbroad for seeking "all communications" beginning in 2007, in a case where Plaintiffs' allegations regarding Ms. Nguyen begin in October 2012, and there is no allegation relevant to the Second Amended Complaint before March 12, 2008. Moreover, this request also is overbroad and improper for expressly seeking information that has no relevance to the issues as framed by the pleadings. It also improperly demands information that is not relevant or proportional to the needs of the case, is not necessary for Plaintiffs to adequately litigate their claims and amounts to an improper fishing expedition.

The request also is oppressive and harassing, as well as unduly burdensome, for demanding "all communications" for 12 years, which would impose undue burden and expense on Dr. Wright. Dr. Wright also objects to this request to the extent it seeks information that contains privileged attorney-client communications, attorney work-product, or information that constitutes trade secrets or confidential commercial information without the protection of a confidentiality order. Moreover, Dr. Wright objects to this request to the extent that it seeks

documents protected and restricted by the laws of foreign nations where the data was created or is maintained.

Notwithstanding these objections, Dr. Wright will search for communications with Uyen Nguyen relevant to David Kleiman or W&K Info Defense, Inc., in his possession, custody, and control from March 12, 2008, through February 14, 2018, after the parties agree to an ESI protocol and search terms. In addition, Dr. Wright will only produce any responsive material after a confidentiality order is entered by the Court.

**Request No. 16**

All communications between you and Ross Ulbricht that occurred between January 1, 2010 and January 1, 2014. For purposes of this interrogatory any communications with "Dread Pirate Roberts" should be considered communications with Ross Ulbricht.

**Response to Request No. 16**

Dr. Wright objects to this request because it is harassing, impertinent and scandalous, grossly overbroad, unduly burdensome, not proportional to the needs of the case, demands production of information that may contain trade secrets or confidential commercial information, and is not limited to information within Dr. Wright's possession, custody, or control. First, this request is impermissibly overbroad and improper for seeking information that has no relevance to the issues as framed by the pleadings. Neither the "Dread Pirate Roberts" nor "Ross Ulbricht" are mentioned anywhere in the Second Amended Complaint. This request also is impermissibly overbroad for demanding information from 9 years ago.

Moreover, this request also is overbroad and improper for expressly seeking information that has no relevance to the issues as framed by the pleadings. It expressly demands information that is not relevant or proportional to the needs of the case, is not necessary for Plaintiffs to

adequately litigate their claims and amounts to an improper fishing expedition.

Finally, Dr. Wright objects to this request to the extent that it seeks documents protected and restricted by the laws of foreign nations where the data was created or is maintained.

**RIVERO MESTRE LLP**

*Attorneys for Craig Wright*
2525 Ponce de León Blvd., Suite 1000
Miami, Florida 33134
Telephone:  (305) 445-2500
Facsimile:   (305) 445-2505
E-mail: arivero@riveromestre.com
E-mail: amcgovern@riveromestre.com
E-mail: arolnick@riveromestre.com
E-mail: zmarkoe@riveromestre.com
E-mail: zkass@riveromestre.com
Secondary: receptionist@riveromestre.com

By:      /s/ Andrés Rivero_____
         ANDRES RIVERO
         Florida Bar No. 613819
         JORGE A. MESTRE
         Florida Bar No. 088145
         AMANDA MCGOVERN
         Florida Bar No. 964263
         ALAN H. ROLNICK
         Florida Bar No. 715085
         ZAHARAH R. MARKOE
         Florida Bar No. 504734

## CERTIFICATE OF SERVICE

I certify that on January 18, 2019, I electronically served this document on all counsel of record by e-mail.

/s/ Andrés Rivero_____
ANDRÉS RIVERO