**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC

    plaintiffs,

v.                                    **Case No. 9:18-cv-80176 (BB/BR)**

CRAIG WRIGHT,

    defendant.
_____/

**DR. CRAIG WRIGHT'S OPPOSITION TO**
**PLAINTIFFS' MOTION TO STRIKE AFFIRMATIVE DEFENSES**

Dr. Wright's affirmative defenses [D.E. 87] tell his story, the facts of which give rise to distinct legal theories that are specifically designated as affirmative defenses under Rule 8(c), and operate to defeat plaintiffs' claims, in whole or in part. Plaintiffs' Motion to Strike Affirmative Defenses [D.E. 95] (the "Motion") ***does not*** argue that Dr. Wright's affirmative defenses fail to meet Rule 8(c)'s requirements, which simply require they provide plaintiffs with fair notice of issues that may be raised at trial. *E.g., Bergquist v. Fid. Info. Servs., Inc.*, 197 F. App'x 813, 815 (11th Cir. 2006) ("From our review of the record, it is plain that the purpose of Rule 8(c)—simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate—was satisfied here.").

Ignoring what Rule 8(c) actually requires, plaintiffs' Motion demands that the Court cripple Dr. Wright's defense by striking seven affirmative defenses.[1] Plaintiffs tell the Court that

---

[1] Plaintiffs demand that the Court strike seven affirmative defenses; the Fifth (release); Sixth (payment); Seventh (waiver); Eighth (estoppel); Ninth (unclean hands); Eleventh (lack of personal jurisdiction); and Twelfth (*res judicata*). The answer has a scrivener's error, and two seventh and two twelfth affirmative defenses. We are moving to fix that error by amendment, but for present purposes will use the current numbering scheme, as plaintiffs did in the Motion.

three of them (release, estoppel and unclean hands) "must be stricken" as legally insufficient based on the legally insufficient theory that they supposedly do not meet inapplicable, heightened, fact-pleading standard (at a point in time when fact development has only just begun).

The Motion also floats the novel theory that two affirmative defenses (payment and waiver) should be stricken as "duplicative and redundant" of another (accord and satisfaction), which asserts a different legal theory based on the same facts. But just as one set of facts may support more than one claim, one set of facts may support more than one affirmative defense. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense *or in separate ones*.") (emphasis added).

Finally, the Motion argues that two affirmative defenses (personal jurisdiction and *res judicata*) were "overruled" in the Court's decision on Dr. Wright's motion to dismiss. That motion challenged pleading adequacy, before any of the complex facts herein (including prior judicial proceedings) were subjected to any discovery, and those defenses may be preserved for appeal as affirmative defenses under any view of the reach of a decision on a motion to dismiss.

As further demonstrated below, the Court should deny plaintiffs' demand for the "drastic remedy" of striking affirmative defenses, because plaintiffs failed to show they are entitled to any such relief. *E.g., Sparta Ins. Co. v. Colareta, 2013 WL 5588140*, at *1 (S.D. Fla. 2013) (A motion to strike affirmative defenses "is a drastic remedy to be resorted to only when required for the purposes of justice and only when the stricken material has no possible relation to the

controversy.") (citing *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962)).[2]

1. **Fifth Affirmative Defense—Dr. Wright Adequately Alleged That a Release Bars Plaintiffs' Claims**

Dr. Wright's Fifth Affirmative Defense alleges that plaintiffs released Dr. Wright from their purported claims when Ira Kleiman, on behalf of Dave Kleiman's estate, accepted from Dr. Wright a significant number of shares in Coin-Exch Pty Ltd ("Coin-Exch"), an Australian company that was working toward creating an exchange for cryptocurrency. Plaintiffs argue that the Court should strike this affirmative defense because, in their view, Dr. Wright did not adequately allege the existence of a contract.[3] Of the many infirmities in this argument, the most glaring is its failure to note that unilateral contracts are not proven by an exchange of promises, but an exchange of performances, exactly as Dr. Wright alleged here. Moreover, plaintiffs again fail to address the strict standard for the "drastic remedy" of striking affirmative defenses, which only ever may occur "when required for the purposes of justice," with regard to material that has "no possible relation to the controversy." *Colareta*, 2013 WL 5588140, at *1; *Paul v. Bradshaw*, 2013 WL 12084299, at *1 (S.D. Fla. 2013); *Larise Atlantis, Inc. v. Pac. Ins. Co.*, 2011 WL 1584359, at *2 (S.D. Fla. 2011). Dr. Wright alleged all that Rule 8(c) requires, and even if some heightened pleading standard were applicable to affirmative defenses, Dr. Wright did allege the existence of a release. Dr. Wright's Fifth Affirmative Defense is legally sufficient under the Federal Rules and is clearly related to this controversy, as further demonstrated below.

---

[2] Decisions of the former Fifth Circuit rendered prior to October 1, 1981 are binding on courts of the Eleventh Circuit. *Bonner v. City of Prichard, Alabama*, 661 F2d 1206 (11th Cir. 1981).
[3] Plaintiffs' entire case is based on the purported existence of an indefinite oral partnership, as to which no written agreement ever was executed.

3

The Second Amended Complaint [D.E. 83] (the "Complaint") alleges that Dr. Wright explained to Ira that Dave completed work through W&K (computer coding) in exchange for shares in Coin-Exch. *Id*. ¶ 14 ("[Dr. Wright] claimed Dave signed all these property rights away in exchange for a non-controlling share of a nonoperational Australian company worth 'millions.'"). Plaintiffs, however, allege that what Dr. Wright told them is a "lie," *id*. ¶ 15, describing Coin-Exch as an attempt to "defraud[] the Kleimans," claiming that Coin-Exch "was merely [Dr. Wright] seizing control of W&K from the shadows." *Id*. ¶¶ 138, 139. These allegations boil down to an attempt to slap pejorative labels on purported facts in order to "allege" a bald legal conclusion (which is itself legally insufficient and the proper subject of a motion to strike). If this arrangement was not a "lie," then Ira released Dr. Wright from the estate's purported claims based on Dave's work through W&K, when Ira accepted, on behalf of the estate, compensation in the form of shares in Coin-Exch. Whether that is what happened is an issue for summary judgment or trial, where parties' competing characterizations of facts are resolved.

Dr. Wright asserted the Fifth Affirmative Defense to afford him the opportunity to tell his side of the story, which will demonstrate that even if plaintiffs were somehow able to prove their claims, plaintiffs released Dr. Wright from those claims. The evidence, including Dave's own words, will demonstrate that Dave's compensation for work performed through W&K was shares in Coin-Exch. Consequently, when Dave died before Coin-Exch was finalized, Dr. Wright offered Ira, as the representative of Dave's estate, shares in Coin-Exch. Upon that transfer, Dr. Wright was released from the estate's claims based on Dave's work with W&K.

For these reasons, Dr. Wright asserted the affirmative defense of release, alleging the following: (1) ***An Offer***—Dr. Wright offered Dave's estate shares in Coin-Exch; (2) ***An***

4

*Acceptance*—Ira, on behalf of Dave's estate, accepted the shares; and (3) *Consideration*—a release of claims relating to Dave's work with W&K was consideration for acceptance of the shares. This goes beyond what Rule 8(c) requires, which "simply [] guarantee[s] that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it." *Colareta*, 2013 WL 5588140, at *3; *Rodriguez v. Allstate Ins. Co.*, 2011 WL 13223734, at *1 (S.D. Fla. 2011) (the "purpose of Rule 8(c) is simply to guarantee that the opposing party has notice of any additional issues that may be raised at trial so that he or she is prepared to properly litigate it.") (citing *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988)). Moreover, plaintiffs' contention that a contract did not exist, *see* Motion at 3, is a fact-based argument that cannot be resolved on a motion to strike as a matter of law. Whether there existed a contract for release between the parties is so obviously a fact-intensive inquiry that plaintiffs' attempt to argue otherwise on a motion to strike is all but frivolous. *E.g., Myers v. Toojay's Mgmt. Corp.*, 2009 WL 10670507, at *2 (M.D. Fla. 2009) ("[T]he Court cannot determine on a motion to strike whether the release was a binding contract, because the existence of a contract is a question of fact to be determined by consideration of all the facts and circumstances."); *Gulf Grp. Holdings, Inc. v. Coast Asset Mgmt. Corp.*, 516 F. Supp. 2d 1253, 1266 (S.D. Fla. 2007) (whether a release exists is a question of fact).

The Fifth Affirmative Defense of release was adequately alleged.

**2.      Eighth Affirmative Defense—Dr. Wright Adequately Alleged Estoppel**

Plaintiffs argue that Dr. Wright's Eighth Affirmative Defense of Estoppel should be stricken on three grounds, none of which have any merit:

(**1**) Plaintiffs argue that they can't tell whether judicial or equitable estoppel has been alleged, even though the Federal Rules only require that Dr. Wright allege "estoppel";

(**2**) Plaintiffs argue that judicial estoppel cannot apply because (a) Dave's estate was not a party to the Australian proceedings, even though plaintiff W&K was, and (b) W&K purportedly is not taking a position in this case that is inconsistent with the position it took in the Australian proceedings, even though it is; and

(**3**) Plaintiffs argue that equitable estoppel cannot apply because Dr. Wright purportedly did not detrimentally rely on any of plaintiffs' statements or actions, even though the evidence will show that Dr. Wright's actions after Dave's death were consistent with and based on Dave's statements and actions in assisting Dr. Wright with his issues with the Australian Tax Office ("ATO").

As a threshold matter, plaintiffs' arguments again are inappropriate and cannot be decided on a motion to strike, because Dr. Wright's Eighth Affirmative Defense plainly has a "possible relation to the case," and plaintiffs' arguments require factual determinations. *E.g., Marley v. Jetshares Only, LLC*, 2011 WL 2607095, at *1 (S.D. Fla. 2011) ("Motions to strike are generally disfavored and are usually denied unless the allegations have *no possible relation to the controversy* and may cause prejudice to one of the parties.") (emphasis added) (citing *Pandora Jewelers 1995, Inc. v. Pan dora Jewelry, LLC.*, 2010 WL 5393265, at *1 (S.D. Fla. 2010)); *Gigena v. Tapas & Tintos, Inc.*, 2012 WL 696947, at *1 (S.D. Fla. 2012). Even if the Court were to entertain plaintiffs' arguments on a motion to strike, they should be rejected for the following reasons:

*First*, Rule 8(c) does not impose a hyper-technical requirement that a party must differentiate between judicial and equitable estoppel in asserting an affirmative defense of estoppel. *See* Rule 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . estoppel . . . ."); *accord Bergquist v. Fid. Info.*

*Servs., Inc.*, 197 F. App'x 813, 815 (11th Cir. 2006) (quoting *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988) ("We must avoid the hypertechnicality in pleading requirements and focus, instead, on enforcing the actual purpose of rule [8(c)].")).

*Second*, W&K was a party to the Australian proceedings, was served in those proceedings, and consented to a judgment in favor of Dr. Wright. Plaintiffs' argument for striking this affirmative defense boils down to a disagreement about the proper characterization of disputed facts, which must be resolved by the trier of fact. Further, the evidence in this case will show that Dave personally appointed a member of W&K to act as a "director," and that person had authority to act in the Australian proceedings and appointed a proxy who participated in the proceedings. Years after Dave's death, Ira improperly reinstated W&K for the purpose of filing this lawsuit, in which W&K now makes allegations that are inconsistent with its actions in the Australian proceedings, supporting the application of judicial estoppel. *See, e.g., De Leon v. Comcar Indus., Inc.*, 321 F.3d 1289, 1291 (11th Cir. 2003).

*Third*, Ira, as representative of Dave's estate, stands in Dave's shoes. *See Magwood v. Tate*, 835 So. 2d 1241, 1243 (Fla. 4th DCA 2003) (citing *Sullivan v. Sessions*, 80 So.2d 706, 707 (Fla. 1955)). Equitable estoppel can apply here because Dr. Wright's actions after Dave's death were consistent with Dave's actions and statements before his death. As the estate's representative, however, Ira's allegations against Dr. Wright have been anything but consistent with Dave's statements and actions. For example, Dave was well aware of the many ATO issues and, in fact, assisted Dr. Wright with those issues. Plaintiffs' allegations contradict Dave's statements and actions, and plaintiffs are estopped from alleging theories that are inconsistent with Dave's actions. The Eighth Affirmative Defense of estoppel was adequately alleged.

### 3. Ninth Affirmative Defense—Dr. Wright Adequately Alleged Unclean Hands

Plaintiffs argue that Dr. Wright's Ninth Affirmative Defense of Unclean Hands should be stricken on the notion that (1) Ira's violations of law, including privacy law (a) are not connected to this case, and (b) did not harm Dr. Wright. *See* Mot. at 6. Plaintiffs are wrong on both counts. "One who seeks the aid of equity must do so with clean hands." *Pilafian v. Cherry*, 355 So.2d 847, 849 (Fla. 3d DCA). Ira's hands have been anything but clean—he has engaged in (and continues to engage in) improper conduct that is directly connected to this lawsuit.

Significantly, Ira knew that Dave was aware of the ATO issues and that he assisted Dr. Wright with those issues, but then he attached confidential ATO documents, which have little to do with his claims, to his Complaint. Dr. Wright already has provided the Court (and plaintiffs) with an expert affidavit stating that plaintiffs violated Section 355-155 of the Australian Tax Act by attaching Dr. Wright's tax documents to the Complaint. *See* Decl. of G. Grieve [D.E. 12-1] ¶¶ 21-22. Plaintiffs cannot simultaneously attach documents to their Complaint in violation of Australian law, and then argue that their violation of law has no connection to the case. Moreover, those Australian laws exist to protect Dr. Wright's privacy, and Plaintiffs' disclosure of his confidential documents is not only illegal *per se*, but has caused, and is causing, legal harm to Dr. Wright. *See*, *e.g.*, *Doe v. Chao*, 540 U.S. 614, 634 (2004) (under U.S. law, "Privacy Act violations commonly cause fear, anxiety, or other emotional distress . . . .").

Further, the evidence will show that Ira has manipulated Dave's estate to avoid paying taxes. In addition, Ira has misrepresented the facts regarding W&K and Dr. Wright to drive this lawsuit. Specifically, Dave was not the only member of W&K. There were other members, and before Dave died, he appointed one of those members to be the managing member of W&K. After Dave's death, Ira unlawfully reinstated W&K, naming himself as the managing member so

8

he could bring this lawsuit. Upon information and belief, no other member of W&K, including its managing member, was even notified about, much less authorized, Ira's takeover of W&K.

4. **Sixth and Seventh Affirmative Defenses—Dr. Wright's Affirmative Defenses of Payment and Waiver are not "Redundant and Duplicative"**

Plaintiffs argue that Dr. Wright's Sixth and Seventh Affirmative defenses of Payment and Waiver should be stricken because they purportedly are duplicative of his Fourth Affirmative Defense Number Four of Accord and Satisfaction, and are therefore "redundant," because all three defenses seek the same relief, "that is, to bar Plaintiffs' claims in their entirety." *See* Mot. at 7. This is stuff and nonsense. If the shoe were on the other foot, and plaintiffs were challenged about "duplicative and redundant" claims (e.g., their conversion and civil theft claims), they surely would argue that they are masters of their complaint. One doubts they're unaware that a defendant is the master of his defenses.

The Court should summarily reject this argument because ***all*** affirmative defenses, by definition, seek to bar, defend, defeat or mitigate a litigant's claims and damages, in whole or in part. It is of no consequence that more than one affirmative defense arises from the same underlying facts, if each affirmative defense "present[s] *distinct legal reasons* why [plaintiffs'] claim[s] may not succeed on the merits . . . ." *Who Dat, Inc. v. Rouse's Enter., LLC*, 2013 WL 395477, at *4 (E.D. La. 2013) (rejecting arguments similar to those plaintiffs make here, because the affirmative defenses asserted distinct legal theories) (emphasis added). If plaintiffs' argument were correct, the Court would be required to strike all of the Complaint's "duplicative and redundant" counts that are based on the same facts, even if they present different legal theories. Sauce for the goose is sauce for the gander. It is completely irrelevant as a matter of law that the Sixth and Seventh Affirmative Defenses of payment and waiver might arise from the same facts

9

as the Fourth Affirmative Defense of accord and satisfaction. None may be stricken on that basis. *See* Fed. R. Civ. P. 8(d)(2).

5. **Eleventh and Twelfth Affirmative Defenses—The Ruling on the Motion to Dismiss Does Not Bar Dr. Wright From Asserting (and Preserving) His Affirmative Defenses of Lack of Personal Jurisdiction and *Res Judicata***

Finally, plaintiffs argue that Dr. Wright's Eleventh and Twelfth Affirmative Defenses of Lack of Personal Jurisdiction and *Res Judicata* should be stricken on the theory that the Court decided them in its order on the motion to dismiss [D.E. 68]. This argument is more than a bit ironic, because after the Court dismissed plaintiffs' counts III and IV with prejudice, plaintiffs simply re-alleged those counts anyway in their Second Amended Complaint, despite the fact that they'd been dismissed with prejudice.

Nonethless, the Court should reject plaintiffs' argument because defenses based on lack of personal jurisdiction and *res judicata* are fact intensive, and at the motion to dismiss stage, a district court is required to accept a plaintiff's factual allegations as true. When the facts are further developed through discovery, Dr. Wright should be permitted to re-assert these defenses. *See Jenkins v. Grant Thornton LLP*, 2014 WL 12634916, at *2 (S.D. Fla. 2014) (denying plaintiff's motion to strike the affirmative defense of *res judicata* because the court's order on a motion to dismiss accepted the complaint's facts as true); *Grasso v. Grasso*, 2015 WL 12843863, at *2 (M.D. Fla. 2015) (same); *Apothecary Dev. Corp. v. City of Marco Island Fla.*, 2012 WL 12897094, * 3 (M.D. Fla. 2012) (denying motion to strike, stating that "in denying Defendants' Motion to Dismiss, [the court] simply found that the Plaintiffs had alleged sufficient facts to survive the Defendants' motion . . . The instant case is not at [the summary judgment] stage in the litigation, and this issue is more properly raised on summary judgment."). At a bare minimum, Dr. Wright is allowed to assert these affirmative defenses to preserve his rights on

10

appeal. *See Diamond Crystal Brands, Inc. v. Food Movers Int'l*, 593 F.3d 1249, 1256 (11th Cir. 2010) (rejecting plaintiff's argument that defendant waived the defense of lack of personal jurisdiction, where defendant had preserved the defense as an affirmative defense in its answer, *after* its motion to dismiss for lack of personal jurisdiction was denied).

Irrespective of whether the Court revisits Dr. Wright's lack of personal jurisdiction or *res judicata* defenses on summary judgment, he has the right to preserve them for appeal as affirmative defenses. Dr. Wright's Eleventh and Twelfth Affirmative Defenses of lack of personal jurisdiction and *res judicata* should not be stricken.

## **CONCLUSION**

For all the foregoing reasons, Dr. Wright respectfully requests that the Court deny Plaintiffs' Motion to Strike Affirmative Defenses [D.E. 95].

Respectfully submitted,

RIVERO MESTRE LLP
*Attorneys for Dr. Craig Wright*
2525 Ponce de Leon Boulevard, Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: amcgovern@riveromestre.com
Email: arolnick@riveromestre.com
Email: bpaschal@riveromestre.com

By: s/ Andres Rivero
ANDRES RIVERO
Florida Bar No. 613819
ALAN H. ROLNICK
Florida Bar No. 715085
AMANDA MCGOVERN
Florida Bar No. 964263
BRYAN L. PASCHAL
Florida Bar No. 091576

**CERTIFICATE OF SERVICE**

      I certify that on February 28, 2019, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record either by transmission of Notices of Electronic Filing generated by CM/ECF or by U.S. Mail.

                                                                                                /s/Andres Rivero  
                                                                                              ANDRES RIVERO