# COMPOSITE EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC | CASE NO.:  9:18-cv-80176-BB |
| *Plaintiffs,* | |
| v. | |
| CRAIG WRIGHT | |
| *Defendant.* | |

**PLAINTIFFS' SECOND REQUEST FOR PRODUCTION**
**TO DEFENDANT CRAIG WRIGHT**

Plaintiffs hereby serve their second request for production to Defendant Craig Wright and request that he produce the following for inspection, copying, and examination within thirty (30) days from the date hereof, pursuant to Federal Rule of Civil Procedure 34 as follows:

**DEFINITIONS**

For the purposes of this Request for Production, the following definitions shall apply:

1.      The term "Plaintiffs" shall mean IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC.

2.      The terms "Defendant," "you," "yours" and/or "yourselves" shall mean Defendant Craig Wright and any Person or Trust (as defined herein) of which Craig Wright is a manager, director, officer, trustee, or beneficiary of, or whom any of the aforementioned control.

3.      The term "Action" shall mean the lawsuit currently pending *Ira Kleiman, et al. v. Craig Wright*, Case No. 9:18-cv-80176-BB in the U.S. District Court, Southern District of Florida.

5.      The terms "document" or "documents" shall mean any written, typewritten, handwritten, printed, graphic, photographic, electronic or recorded materials, including, but not

limited to the following: correspondence and drafts of correspondence; e-mails; SMS messages; Whatsapp messages; Signal messages; Twitter DMs; Facebook messages; message board posts or DMs; any other form of messages or communications; code; programming; notes or summaries of conversations; forms; schedules or worksheets; memoranda; reports; comments; worksheets; plans; minutes; notes; notices or notifications; findings; brochures; circulars; bulletins; advertisements; records; summaries or other reports of conferences, meetings, visits, surveys, discussions, inspections, and examinations; journals; logs; ledgers; balance sheets; profit and loss statements; purchase orders; quotations; estimates; invoices; bids; receipts; pledge commitments; acknowledgments; credit memoranda; contract or lease offers or proposals; income tax returns; check stubs (front and back); sales vouchers or records; executed or proposed agreements; contracts; deeds; franchise agreements; licenses; leases; insurance policies and riders or options; proposals; diaries; desk calendars; appointment books; evaluations; applications; telephone call books, notes or records; affidavits, deposition transcripts, statements or summaries or excerpts thereof; stenographic notes; financial data; newspaper or magazine articles; pamphlets; books; texts; notebooks; magazines; manuals; publications; notepads; tabulations; data compilations; calculations; or computations; schedules; drafts; charts and maps; forecasts and projections; feasibility studies; drawings, designs, plans, specifications; graphs, blueprints, sketches, or diagrams; printouts or other stored information from computers or other information retention or processing systems; hard drives, USB drives, disks, CD's, DVD's, tapes, videotapes; photographic matter or sound reproduction matter however produced, reproduced or stored; computer data of any kind whatsoever; any exhibits, attachments, or schedules to or with the foregoing; any drafts of the foregoing; any of the foregoing that exist in a form by which they are protected by computer encryption; any copies or duplicates of the foregoing that are different because of marginal or

handwritten notations, or because of any markings thereon; the inclusion of specific examples within any individual request does not limit the definition provided herein and should be viewed as merely as examples meant to facilitate production.

6.      "Copy" when used in reference to a document means any color, or black and white facsimile reproduction of a document, regardless of whether that facsimile reproduction is made by means of carbon papers, pressure sensitive paper, xerography or any other means of process.

7.      "Communication" and "communicate" shall mean any recordation, exchange or transfer of information, whether in writing, audio, oral or other form, including, but not limited to, memoranda or notes, telephone conversations and meetings, letters, telegraphic and telex communications, email communications, SMS messages, Twitter DMs, Facebook messages, Whatsapp messages, Signal messages, message board posts or DMs, any other form of messages or communications, blogs, voicemails, and includes all information relating to all oral or written communications and "documents" (as herein above defined), whether or not such document, or information contained herein was transmitted by its author to any other person; the inclusion of specific examples within any individual request does not limit the definition provided herein and should be viewed merely as examples meant to facilitate production.

8.      "Person" or "persons" shall mean each and every individual, corporation, partnership, joint venture, social or political organization, or any other entity, incorporated or unincorporated, or encompassed within the usual and customary meaning of "person" or "persons."

9.      "Agent" shall mean: any agent, employee, officer, director, attorney, independent contractor or any other person acting at the direction of or on the behalf of another.

10.     "Date" shall mean the exact day, month and year if ascertainable or, if not, the best approximation, including relationship to other events.

11.     The term "materials" shall mean (1) the elements, constituents, or substances of which something is composed or can be made; something (as data) that may be worked into a more finished form (2) apparatus necessary for doing or making something; (3) The substance or substances out of which a thing is or can be made; and/or (4) Tools or apparatus for the performance of a given task.

12.     The term "third party" or "third parties" refers to individuals or entities that are not a party to this action.

13.     "Identify" when used in reference to:

a.      a person, shall mean to state his or her full and present or last known address (including zip code), phone number and present or last known position or business affiliation (designating which), and the job description;

b.      a firm, partnership, corporation, proprietorship, entity/business, or association, shall mean to state its full name and present or last known address (designating which) and to state the name and address of each person within the entity likely to have knowledge of the relationship between the entity and Plaintiff;

c.      in the case of a document, the date, author, sender, recipient, type of document or some other means of identifying it and its present location and custodian;

d.      in the case of an oral communication, the date, the communicator, communicate, and the nature of the communication;

4

      e.     in the case of a document within the possession, custody or control of Plaintiff, whether Plaintiff will make it available to Defendants' counsel for inspection and/or copying;

      f.     in the case of a document that was, but is no longer in the possession, custody or control of Plaintiff, what disposition has been made of the document.

14.    As used in this Request for Production of Documents, the singular shall include the plural, and vice versa; the use of the word "any" shall include and encompass the word "all," and vice versa; the use of the disjunctive shall include the conjunctive, and vice versa; and, unless context indicates otherwise, the use of any gender includes all other genders.

15.    The term "cryptocurrency" shall mean any digital currency in which encryption techniques are used to regulate the generation of units of currency and verify the transfer of funds, operating independently of a central bank. It shall include, but not be limited to, Bitcoin, Bitcoin Cash, Bitcoin Cash SV, any other "forked" Bitcoin asset, and Ethereum's Ethers.

16.    The term "trust" shall include any arrangement, entity, vehicle, agreement, deed, or relationship, in any jurisdiction, where the person with title or control over property has duties to deal with it for another's benefit. Due to variances in various jurisdictions' laws, this definition should not be given an overly formalistic construction, but a liberal one. It should include any arrangement bearing a similarity to a "trust," and any such arrangement you (or others) have actually referred to as a "trust."

17.    Unless explicitly stated otherwise, the requests set forth below relate to the period of time beginning on or about January 2006 through the present.

## REQUESTS FOR PRODUCTION

**REQUEST 1.**    All documents or communications that provide and/or estimate the value of your cryptocurrency holdings. This includes, but is not limited to, loan applications, financial statements, tax returns, life insurance applications, financing agreements, sale papers, assignment contracts, etc.

**REQUEST 2.**    All documents and communications related to any assignment of the rights to cryptocurrency that was assigned by you.

**REQUEST 3.**    All documents or communications that provide and/or estimate the value of your intellectual property holdings. This includes, but is not limited to, loan applications, financial statements, tax returns, life insurance applications, financing agreements, sale papers, assignment contracts, etc.

**REQUEST 4.**    All documents and communications related to any assignment of the rights to Intellectual Property that was assigned or sold by you between January 1, 2008 and the present.

**REQUEST 5.**    A copy of the "2 million lines of code" from 2010 that you reference in your April 23, 2014 email to Ira Kleiman.  (*See* D.E. 83-24 at 3).

**REQUEST 6.**    A copy of the "6 million lines of code" that you referred to in your April 23, 2014 email to Ira Kleiman.  (*See* D.E. 83-24 at 3).

**REQUEST 7.**    A copy of all software and code used by the US Military, DHS, and other associated parties mentioned at paragraph 13 of the 25 July 2013 Statement of Claim filed in the NSW Supreme Court, Case Number 2013/225983 ("Statement of Claim #1") ( D.E. 83-11 at 10).

**REQUEST 8.**    A copy of the 27 October 2008 contract referred to in paragraph 3 of Statement of Claim #1.

**REQUEST 9.**    All communications and documents related to:

      a.  BAA 11-02-TTA 01-0127-WP: TTA 01 – Software Assurance: Software Assurance through Economic Measures;

      b.  BAA 11-02-TTA 05-0155-WP: TTA 05 – Secure, Resilient Systems and Networks

      c.  BAA 11-02-TTA 09-0049-WP: TTA 09 – Cyber Economics

      d.  BAA 11-02-TTA 14-0025-WP: TTA 14 – Software Assurance MarketPlace (SWAMP)

**REQUEST 10.**    All documents and communications related to the Au $20,000,000.00 bond mentioned in paragraph 11 of Statement of Claim #1.

**REQUEST 11.**    All documents and communications related to "the projects for the development of software started in 2009 under a company names Integyrs Pty Ltd" referenced in paragraph 27 of the Affidavit of Craig S Wright – 31st Oct 2013 filed in NSW Supreme Court Case number 2013/225983 & 2013/245661 ("10/31/13 CSW Affidavit," D.E. 83-4 at 3).

**REQUEST 12.**    All documents and communications related to the development of software that was "extended considerably in the period between 2011-2013" referenced in paragraph 28 of the 10/31/13 CSW Affidavit.

**REQUEST 13.**    All documents and communications related to the software products referenced in paragraph C of the intellectual properly license funding agreement attached as exhibit 10 to the second amended complaint (D.E. 83-10 at 3).

**REQUEST 14.**    All documents and communications related to the "arrangement with a large multi-national form [sic] for the export of software and mathematical algorithms" referenced in paragraph 1a of Appendix N to the 10/31/13 CSW Affidavit ("Appendix N").

**REQUEST 15.**    All documents and communications related to the "research" referenced in paragraph 1e of Appendix N.

**REQUEST 16.**    A true and correct copy of the "request by the ATO, ref. 1011685995901" referenced in Appendix N, and all communications and documents related to the request.

**REQUEST 17.**   All communications and documents related to the published malware papers and processes (peer reviewed) and published statistical libraries referenced in Appendix N.

**REQUEST 18.**   A true and correct copy of the "disk" referred to throughout Appendix N.

**REQUEST 19.**   A true and correct copy of the "contract – copy on disk" referenced in Appendix N.

**REQUEST 20.**   True and correct copies of the "2010 income tax return," "invoices – see disk," "payments – see disk," "loans – see disk," referenced in Appendix N.

**REQUEST 21.**   A true and correct copy of the "loan contracts" for the "Loan from Lynn Wright," "Loan from Craig Wright," "Other Loans (Visa and sundry expenses)"that are referenced in Appendix N.

**REQUEST 22.**   A true and correct copy of the "MYOB File on disk" referenced in Appendix N.

**REQUEST 23.**   A true and correct copy of all "contracts created by Mitche Shehadie and Co." referenced in Appendix N.

**REQUEST 24.**   A true and correct copy of the "schedule as what IP was transferred" referenced in Appendix N.

**REQUEST 25.**   A true and correct copy of the "spreadsheet" with the "breakdowns of loans by Lynn Wright" referenced in Appendix N.

**REQUEST 26.**   A true and correct copy of the DeMorgan Pty Ltd contract for $105,000 referenced in Appendix N.

**REQUEST 27.**   A true and correct copy of the supplier agreements referenced in Appendix N.

**REQUEST 28.**   A true and correct copy of the bank statements referenced in Appendix N.

**REQUEST 29.**   All communications and documents related to the ATO "audit and review" of Integyrs referenced in Appendix N.

**REQUEST 30.**   All documents related to the assertion that W&K Info Defense LLC "is the owner of and conducts the business known as Bitcoin mining and software development / Research" made in the contract attached as Appendix A to the November 4, 2013 sworn affidavit of Craig Wright filed in NSW Supreme Court Case number 2013/225983 & 2013/24566 ("Sworn Appendix A," attached hereto as Exhibit 1).

**REQUEST 31.**   All documents and communications related to the "escrow" referenced in paragraph 2(b) of Sworn Appendix A.

**REQUEST 32.**   All documents and communications related to the "the ASIC mining hardware hosted at a site known to Mr Kleiman" that had "a nominal value of $8,828,571.29 before depreciation" referenced in paragraph 8(e) of Sworn Appendix A.

**REQUEST 33.**   All documents and communications related to the "Agent and Merkele Tree problems developed by Professor David Reese referenced in paragraph 8(f) of Sworn Appendix A.

**REQUEST 34.**   All documents and communications related to the "Bitcoin software and suit of C/C++/C# and Python Blockchain software source codes" referenced in paragraph 8(g) of Sworn Appendix A.

**REQUEST 35.**   All documents and communications that comprise the "software, research material and other aspects of the business" referred to in Sworn Appendix A.

**REQUEST 36.**   All decisions, letters, communications, and documents issued by the Australian Taxation Office ("ATO") in regard to Craig Wright, Lynn Wright, Ramona Watts, David Kleiman, Ira Kleiman, Louis Kleiman, DeMorgan Ltd, Coin-Exch Pty. Ltd, Hotwire

Preemptive Intelligence Pty Ltd, Cloudcroft Pty Ltd, Craig Wright R&D, W&K Information Defense Research LLC, any Person with "W&K" in its name, Design by Human Ltd, Panopticrypt Pty Ltd, Denariuz SG, Tulip Trading Ltd., any Seychelles Trust, the Wright Family Trust, MT Gox, Silk Road, and Liberty Reserve.

**REQUEST 37.**    All documents and communications, submitted to the ATO in regard to Craig Wright, Lynn Wright, Ramona Watts, David Kleiman, Ira Kleiman, Louis Kleiman, DeMorgan Ltd, Coin-Exch Pty. Ltd, Hotwire Preemptive Intelligence Pty Ltd, Cloudcroft Pty Ltd, Craig Wright R&D, W&K Information Defense Research LLC, any Person with "W&K" in its name, Design by Human Ltd., Panopticrypt Pty Ltd, Denariuz SG, Tulip Trading Ltd., any Seychelles Trust, the Wright Family Trust, MT Gox, Silk Road, and Liberty Reserve, from January 2012 to the present.

**REQUEST 38.**    A true and correct copy of the "record of client contact" documenting a February 26, 2014 meeting that took place in interview room 1, ATO Parramatta Office 2-12 Macquarie Street, Parramatta NSW 2150 beginning at approximately 1:00pm and ending at approximately 2:50PM, and any other record or document memorializing or recording this meeting.

**REQUEST 39.**    A true and correct copy of the "Transcript of Proceedings" created by Auscript Australiasia PTY Limited that records a meeting between Craig Wright, John Chester, Andrew Sommer, Des McMaster, Marina Folevski, and Hoa Doa that took place in Syndey on February 18, 2014.

**REQUEST 40.**    All documents that in anyway make a record of, a conversation, meeting, or other verbal exchange among Craig Wright and/or his agent(s) and the ATO which took place from January 2010 until the present.

**REQUEST 41.**    All documents that in anyway make a record of, a conversation, meeting, or other verbal exchange, which took place at any time between January 2010 until the present, among or between the ATO and any of the following (or their agents): Craig Wright, Lynn Wright, Ramona Watts, David Kleiman, Ira Kleiman, Louis Kleiman, DeMorgan Ltd, Coin-Exch Pty. Ltd, Hotwire Preemptive Intelligence Pty Ltd, Cloudcroft Pty Ltd, Craig Wright R&D, W&K Information Defense Research LLC, any Person with "W&K" in its name, Design by Human Ltd., Panopticrypt Pty Ltd, Denariuz SG, Wright Family Trust, Tulip Trading Ltd., any Seychelles Trust, and Silk Road.

**REQUEST 42.**    All communications and documents related to the Australian Taxation Office ("ATO") investigation referenced in the Second Amended Complaint.  (D.E. 83 ¶¶ 117-43).

**REQUEST 43.**    All documents and communications received from, or submitted to, the ATO in connection with the investigation that resulted in the ATO's issuance of the June 22, 2015 "completion of audit" letter with an "our reference" of 1-526DVU8.  (D.E. 83-18).

**REQUEST 44.**    All communications, documents, and agreements concerning any projects developed for, submitted to, or commissioned by the U.S. Department of Homeland Security that Dave, you, W&K Info Defense Research, LLC, your Agents, or Persons controlled by you were involved in.

**REQUEST 45.**    All communications related to Bitcoin, cryptocurrency, cryptocurrency mining, Dave Kleiman, Ira Kleiman, Louis Kleiman, Satoshi Nakamoto, Uyen Nguyen, DeMorgan Ltd, Coin-Exch Pty. Ltd, Hotwire Preemptive Intelligence Pty Ltd, Cloudcroft Pty Ltd, Craig Wright R&D, W&K Information Defense Research LLC, any Person with "W&K" in its name, Wright Family Trust, Design by Human Ltd., Panopticrypt Pty Ltd, Denariuz SG, Tulip Trading

Ltd., any Seychelles Trust, any Trust, Liberty Reserve, MT Gox, Silk Road, and the ATO –
between you, your Agents, or any Person controlled by you, and:

    a.  Hal Finney
    b.  Wei Dai
    c.  Lynn Wright
    d.  Ramona Watts
    e.  Jimmy Nguyen
    f.  Calvin Ayre
    g.  Roger Ver
    h.  Robert MacGregor
    i.  Stefan Matthews
    j.  Gavin Andresen
    k.  Mike Hearn
    l.  Uyen Nguyen
    m. Dave Kleiman
    n.  Michele Seven
    o.  Patrick Page
    p.  Carter Conrad
    q.  Any person at Computer Forensics LLC
    r.  Any person at the Global Institute for Cyber Security Research ("GISCR")
    s.  Deborah Kobza
    t.  Ross Ulbricht (any communications with "Dread Pirate Roberts" should be included)
    u.  Shyaam Sundhar
    v.  Andrew O'Hagan
    w. John Chester
    x.  Jamie Wilson

**REQUEST 46.**    All communications and documents that support your assertion "that other companies in other countries that also contained W&K in their names were in existence prior to 2011." (See D.E. 80 ¶ 129).

**REQUEST 47.**    All communications and documents between you and Joseph Karp.

**REQUEST 48.**    All communications and documents referencing, directly or indirectly, Dave Kleiman, including reference by any nicknames, abbreviations, or pronouns.

**REQUEST 49.**    All communications and documents referencing, directly or indirectly, Ira Kleiman, including reference by any nicknames, abbreviations, or pronouns.

**REQUEST 50.**   All communications and documents referencing, directly or indirectly, W&K Info Defense Research, LLC including reference by any nicknames, abbreviations, or pronouns.

**REQUEST 51.**   All communications and documents referencing any Electronic Storage Device owned or possessed by Dave Kleiman.  For purposes of this Request, Electronic Storage Device shall be defined as any electronic device used for storing data, including but not limited to hard drives, USB drives, disks, CD's, DVD's, tapes, videotapes, and cloud based storage.

**REQUEST 52.**   All communications between you and Ira Kleiman.

**REQUEST 53.**   All communications between you and Louis Kleiman.

**REQUEST 54.**   All communications, documents, and agreements that relate to the mining of any cryptocurrency, including but not limited to Bitcoin, between January 1, 2008 and May 1, 2013.

**REQUEST 55.**   All communications and documents discussing any potential legal claims the estate of Dave Kleiman may have against you.

**REQUEST 56.**   All communications and documents discussing any potential legal claims Ira Kleiman may have against you

**REQUEST 57.**   All communications and documents discussing this Litigation.   For purposes of this Request, the term "Litigation" shall be defined as the lawsuit between you and Ira Kleiman, as personal representative of the estate of Dave Kleiman, and W&K Info Defense Research, LLC with the civil docket number 9:18-cv-80176-BB.

**REQUEST 58.**   All communications and documents concerning Ross Ulbricht.

**REQUEST 59.**   All communications and documents concerning Silk Road.

**REQUEST 60.**   All communications, documents, and agreements concerning any bitcoin mining operations taking place in the United States.

**REQUEST 61.**   All communications, documents, and agreements concerning any bitcoins mined by Dave Kleiman and/or W&K Info Defense Research, LLC.

**REQUEST 62.**   All communications, documents, and agreements concerning any bitcoins mined by you between January 1, 2008 and January 1, 2015.

**REQUEST 63.**   All communications and documents concerning the circumstances surrounding the "leak" that provoked the *Wired*[1] and *Gizmodo*[2] stories.  (*See* D.E. 24-1 at 30–31).

**REQUEST 64.**   All communications and documents concerning any bitcoin transactions sent or received by you between January 1, 2009 and January 1, 2014.

**REQUEST 65.**   All communications and documents concerning any bitcoin transactions sent or received by Satoshi Nakamoto between January 1, 2009 and January 1, 2014.

**REQUEST 66.**   All communications and documents concerning any bitcoin transactions sent or received by Dave Kleiman between January 1, 2009 and January 1, 2014.

**REQUEST 67.**   All communications and documents concerning any bitcoin transactions sent or received by W&K Info Defense Research, LLC between January 1, 2009 and January 1, 2014.

**REQUEST 68.**   All communications and documents concerning any trips you made to the United States between January 1, 2009 and January 1, 2014.

**REQUEST 69.**   All communications and documents concerning any transactions made by you, your Agents, or Persons controlled by you on the bitcoin exchange known as Mt. Gox.

---

[1] https://www.wired.com/2015/12/bitcoins-creator-satoshi-nakamoto-is-probably-this-unknown-australian-genius/
[2] https://gizmodo.com/this-australian-says-he-and-his-dead-friend-invented-bi-1746958692

**REQUEST 70.**   All communications and documents concerning any transactions made by Dave Kleiman on the bitcoin exchange known as Mt. Gox.

**REQUEST 71.**   All communications and documents concerning any transactions made by you, your Agents, or Persons controlled by you on the bitcoin exchange known as BTC-e.

**REQUEST 72.**   All communications and documents concerning any transactions made by Dave Kleiman on the bitcoin exchange known as BTC-e.

**REQUEST 73.**   All communications, documents, and agreements concerning any Persons whose name contained "W&K" or any Person that you and/or Dave Kleiman had/have any interest in.  (*See* D.E. 80 ¶ 129.)

**REQUEST 74.**   All communications, documents, and agreements concerning any computer code developed by Dave Kleiman.

**REQUEST 75.**   All communications and documents that support and/or relate to your assertion that "Plaintiffs' claims are barred by the applicable statute(s) of limitations." (D.E. 80).

**REQUEST 76.**   All communications and documents that support your assertion that "Plaintiffs unreasonably delayed filing this action . . . Plaintiffs' claims are barred by the doctrine of laches." (D.E. 80).

**REQUEST 77.**   All communications and documents that support and/or relate to your assertion that Plaintiff's "unreasonable delay prejudiced Dr. Wright's assertion of rights and defenses." (D.E. 80, at 30).

**REQUEST 78.**   All communications and documents that support and/or relate to your assertion that "Dr. Wright acted in good faith to effectuate David Kleiman's intent after David Kleiman's death." (D.E. 80, at 30).

**REQUEST 79.**   All communications and documents that support and/or relate to your assertion that "Plaintiffs' claims are barred by accord and satisfaction because, by agreement, Plaintiffs received shares in a corporation from Dr. Wright as compensation for rights of David Kleiman." (D.E. 80, at 31).

**REQUEST 80.**   All communications and documents that support and/or relate to your contention that "Plaintiffs, by accepting shares in a corporation from Dr. Wright as compensation for rights of David Kleiman, released Dr. Wright." (D.E. 80, at 31).

**REQUEST 81.**   All communications and documents that support and/or relate to your contention that "Plaintiffs' claims are barred because they received payment in the form of shares in a corporation." (D.E. 80, at 31).

**REQUEST 82.**   All communications and documents that support and/or relate to your contention that "Plaintiffs' damages, if any, are set-off by their receipt of shares in a corporation from Dr. Wright as compensation for rights of David Kleiman." (D.E. 80, at 31).

**REQUEST 83.**   All communications and documents that support and/or relate to your contention that "Plaintiffs failed to mitigate their alleged damages because Plaintiffs failed to sell the shares in the corporation they received from Dr. Wright as compensation for rights of David Kleiman when offered money in exchange for those shares." (D.E. 80, at 31).

**REQUEST 84.**   All communications and documents that support and/or relate to your contention that "Plaintiffs' claims are barred by waiver because Plaintiffs accepted shares in a corporation as satisfaction of David Kleiman's rights and waited years to file this action." (D.E. 80, at 31).

**REQUEST 85.**   All communications and documents that support and/or relate to your contention that "Plaintiffs are estopped from asserting their claims of fraud against Dr. Wright

because they were aware of the Australian Taxation Office investigation, as well as the New South Wales lawsuit against W&K Info Defense Research, LLC, no later than April 2014, and took no action in those proceedings that are in any way consistent with the allegations they now make about those proceedings in this action." (D.E. 80, at 31-32).

**REQUEST 86.**   All communications and documents that support and/or relate to your contention that "Plaintiffs' claims are barred by the doctrine of unclean hands because, *inter alia*, Ira Kleiman, as the representative of David Kleiman's estate, manipulated his dead brother's estate to avoid payment of taxes." (D.E. 80, at 32).

**REQUEST 87.**   All communications and documents that support and/or relate to your contention that "The res judicata and collateral estoppel effect of judgments rendered more than five years ago by the Supreme Court of New South Wales bar Plaintiffs' claims arising from Dr. Wright's alleged ownership and possession of W&K Info Defense Research, LLC's intellectual property." (D.E. 80, at 32).

**REQUEST 88.**   All communications and documents that relate to the June 29, 2015 agreement involving you and Robert MacGregor referenced in *The Satoshi Affair*.  (D.E. 24-1 at 12.)

Dated: January 17, 2019.

Respectfully submitted,

*s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman, Esq.
BOIES SCHILLER FLEXNER LLP
100 SE Second Street, Suite 2800
Miami, Florida  33131
Telephone:  (305) 539-8400
Facsimile:   (305) 539-1307
vfreedman@bsfllp.com

Kyle W. Roche, Esq.
*Admitted Pro Hac Vice*
BOIES SCHILLER FLEXNER LLP

333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300
kroche@bsfllp.com

*Counsel to Plaintiff Ira Kleiman as Personal Representative of the Estate of David Kleiman and W&K Info Defense Research, LLC.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 17, 2019, a true and correct copy of the foregoing was served on all counsel of record identified on the Service List below via e-mail:

Andres Rivero, Esq.
Jorge A. Mester, Esq.
Alan H. Rolnick, Esq.
RIVERO MESTRE LLP
2525 Ponce de Leon Boulevard
Suite 1000
Coral Gables, FL 33134
305-445-2500
(305) 445-2505 (fax)
arivero@riveromestre.com
jmestre@riveromestre.com
arolnick@riveromestre.com
dsox@riveromestre.com
receptionist@riveromestre.com

*/s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC | CASE NO.:  9:18-cv-80176-BB |
| *Plaintiffs,* | |
| v. | |
| CRAIG WRIGHT | |
| *Defendant.* | |

## PLAINTIFFS' THIRD REQUEST FOR PRODUCTION
## TO DEFENDANT CRAIG WRIGHT

Plaintiffs hereby serve their third request for production to Defendant Craig Wright and request that he produce the following for inspection, copying, and examination within thirty (30) days from the date hereof, pursuant to Federal Rule of Civil Procedure 34 as follows:

## DEFINITIONS

For the purposes of this Request for Production, the following definitions shall apply:

1.      The term "Plaintiffs" shall mean IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC.

2.      The terms "Defendant," "you," "yours" and/or "yourselves" shall mean Defendant Craig Wright and any Person or Trust (as defined herein) of which Craig Wright is a manager, director, officer, trustee, or beneficiary of, or whom any of the aforementioned control.

3.      The term "Action" shall mean the lawsuit currently pending *Ira Kleiman, et al. v. Craig Wright*, Case No. 9:18-cv-80176-BB in the U.S. District Court, Southern District of Florida.

4.      The terms "document" or "documents" shall mean any written, typewritten, handwritten, printed, graphic, photographic, electronic or recorded materials, including, but not

limited to the following: correspondence and drafts of correspondence; e-mails; SMS messages; Whatsapp messages; Signal messages; Twitter DMs; Facebook messages; message board posts or DMs; any other form of messages or communications; code; programming; notes or summaries of conversations; forms; schedules or worksheets; memoranda; reports; comments; worksheets; plans; minutes; notes; notices or notifications; findings; brochures; circulars; bulletins; advertisements; records; summaries or other reports of conferences, meetings, visits, surveys, discussions, inspections, and examinations; journals; logs; ledgers; balance sheets; profit and loss statements; purchase orders; quotations; estimates; invoices; bids; receipts; pledge commitments; acknowledgments; credit memoranda; contract or lease offers or proposals; income tax returns; check stubs (front and back); sales vouchers or records; executed or proposed agreements; contracts; deeds; franchise agreements; licenses; leases; insurance policies and riders or options; proposals; diaries; desk calendars; appointment books; evaluations; applications; telephone call books, notes or records; affidavits, deposition transcripts, statements or summaries or excerpts thereof; stenographic notes; financial data; newspaper or magazine articles; pamphlets; books; texts; notebooks; magazines; manuals; publications; notepads; tabulations; data compilations; calculations; or computations; schedules; drafts; charts and maps; forecasts and projections; feasibility studies; drawings, designs, plans, specifications; graphs, blueprints, sketches, or diagrams; printouts or other stored information from computers or other information retention or processing systems; hard drives, USB drives, disks, CD's, DVD's, tapes, videotapes; photographic matter or sound reproduction matter however produced, reproduced or stored; computer data of any kind whatsoever; any exhibits, attachments, or schedules to or with the foregoing; any drafts of the foregoing; any of the foregoing that exist in a form by which they are protected by computer encryption; any copies or duplicates of the foregoing that are different because of marginal or

handwritten notations, or because of any markings thereon; the inclusion of specific examples within any individual request does not limit the definition provided herein and should be viewed as merely as examples meant to facilitate production.

5.      "Copy" when used in reference to a document means any color, or black and white facsimile reproduction of a document, regardless of whether that facsimile reproduction is made by means of carbon papers, pressure sensitive paper, xerography or any other means of process.

6.      "Communication" and "communicate" shall mean any recordation, exchange or transfer of information, whether in writing, audio, oral or other form, including, but not limited to, memoranda or notes, telephone conversations and meetings, letters, telegraphic and telex communications, email communications, vistomail, SMS messages, Twitter DMs, Facebook messages, Whatsapp messages, Signal messages, message board posts or DMs, any other form of messages or communications, blogs, voicemails, and includes all information relating to all oral or written communications and "documents" (as herein above defined), whether or not such document, or information contained herein was transmitted by its author to any other person; the inclusion of specific examples within any individual request does not limit the definition provided herein and should be viewed merely as examples meant to facilitate production.

7.      "Person" or "persons" shall mean each and every individual, corporation, partnership, joint venture, social or political organization, or any other entity, incorporated or unincorporated, or encompassed within the usual and customary meaning of "person" or "persons."

8.      "Agent" shall mean: any agent, employee, officer, director, attorney, independent contractor or any other person acting at the direction of or on the behalf of another.

9.      "Date" shall mean the exact day, month and year if ascertainable or, if not, the best approximation, including relationship to other events.

10.      The term "materials" shall mean (1) the elements, constituents, or substances of which something is composed or can be made; something (as data) that may be worked into a more finished form (2) apparatus necessary for doing or making something; (3) The substance or substances out of which a thing is or can be made; and/or (4) Tools or apparatus for the performance of a given task.

11.      The term "third party" or "third parties" refers to individuals or entities that are not a party to this action.

12.      "Identify" when used in reference to:

a.      a person, shall mean to state his or her full and present or last known address (including zip code), phone number and present or last known position or business affiliation (designating which), and the job description;

b.      a firm, partnership, corporation, proprietorship, entity/business, or association, shall mean to state its full name and present or last known address (designating which) and to state the name and address of each person within the entity likely to have knowledge of the relationship between the entity and Plaintiff;

c.      in the case of a document, the date, author, sender, recipient, type of document or some other means of identifying it and its present location and custodian;

d.      in the case of an oral communication, the date, the communicator, communicate, and the nature of the communication;

      e.     in the case of a document within the possession, custody or control of Plaintiff, whether Plaintiff will make it available to Defendants' counsel for inspection and/or copying;

      f.     in the case of a document that was, but is no longer in the possession, custody or control of Plaintiff, what disposition has been made of the document.

13.    As used in this Request for Production of Documents, the singular shall include the plural, and vice versa; the use of the word "any" shall include and encompass the word "all," and vice versa; the use of the disjunctive shall include the conjunctive, and vice versa; and, unless context indicates otherwise, the use of any gender includes all other genders.

14.    The term "cryptocurrency" shall mean any digital currency in which encryption techniques are used to regulate the generation of units of currency and verify the transfer of funds, operating independently of a central bank. It shall include, but not be limited to, Bitcoin, Bitcoin Cash, Bitcoin Cash SV, any other "forked" Bitcoin asset, and Ethereum's Ethers.

15.    The term "trust" shall include any arrangement, entity, vehicle, agreement, deed, or relationship, in any jurisdiction, where the person with title or control over property has duties to deal with it for another's benefit. Due to variances in various jurisdictions' laws, this definition should not be given an overly formalistic construction, but a liberal one. It should include any arrangement bearing a similarity to a "trust," and any such arrangement you (or others) have actually referred to as a "trust."

16.    Unless explicitly stated otherwise, the requests set forth below relate to the period of time beginning on or about January 2006 through the present.

17.    The term "control" means in your possession, custody, under your direction, or available to you upon reasonable demand, and includes in the possession, custody, or available

upon reasonable demand, of those under the direction of you or your employees, subordinates, counsel, accountants, consultants, experts, parent, subsidiary or affiliated corporations, and any persons acting or purporting to act on your behalf.

## INSTRUCTIONS

1.  Defendant should produce the documents as follows: (1) in the exact order in which they are kept in the ordinary course of business; or (2) classified according to the specific request(s) to which they are responsive.

2.  To the extent that you do not have possession, custody, or control of any documents identified as responsive to a particular request herein, please indicate the lack of possession, custody, existence, or control of the responsive documents in your response.

3.  All electronic documents and e-mail are requested to be produced in electronic format by a forensically sound method, with all original metadata preserved and intact.

4.  ESI should be produced as follows:

    a.    Email, instant messaging, calendar, contacts, and word processing files must be derived from the original electronic media and converted to singlepage .tiff images with accompanying system metadata (e.g., author, recipient(s), "cc" recipient(s), "bcc" recipient(s), date and time of creation and receipt, date and time of modification, etc.) and substantive metadata (e.g., the substance of the changes, etc.), with all attachments. All chronological metadata shall be standardized to Eastern Standard Time. Plaintiffs reserve the right to request native format production for ESI. Upon such request, Defendant shall produce specific documents (identified by Bates number or range) in original native electronic format.

      b.      Dynamic files (e.g. databases, spreadsheets, project files, etc.) shall be produced in original native format with all accompanying metadata, along with all such software necessary to interpret the produced information if such software is not readily commercially available.

      c.      For all ESI not specified above, production shall be made in native format with all accompanying metadata, along with all software necessary to interpret the produced information if such software is not readily commercially available, unless the Plaintiffs specifically agree to a different form of production.

5.  If any responsive document was, but no longer is, in your possession, custody, or control, state the following for each document in your response:

      a.      the type of document (e.g., correspondence, memorandum, e-mail, etc.);

      b.      the date of the document;

      c.      any person(s) who created or edited the document;

      d.      any person(s) who signed the document;

      e.      any person(s) who received the document or a copy of it;

      f.      any person(s) now in possession of the document;

      g.      the substance of the document; and

      h.      the disposition of the document, including the date of disposition.

6.  This Request for Production of Documents does not seek the production of documents protected by the attorney-client privilege or work-product rule. However, if you withhold production of a document requested here as privileged, work product or on any other basis, please state the following in a privilege log for each document withheld:

      a.  the type of document (e.g., correspondence, memorandum, e-mail);

b.  the date of the document;

c.  the person(s) who signed the document;

d.  the person(s) who received the document or a copy of it;

e.  the reason for non-production; and

f.  the substance of the document.

## REQUESTS FOR PRODUCTION

1. All documents that you received from any person or entity, including from David Kleiman, that reference or indicate his ownership in or of any cryptocurrency.

2. All documents and communications relating to agreements, contracts, invoices or leases between Dave Kleiman and Craig Wright, including the contracts referenced in any exhibit to the Second Amended Complaint.

3. All documents relating to invoices or requests for payment between Dave Kleiman and Craig Wright, including communications.

4. All documents relating to invoices or requests for payment between W&K Info Defense Research, LLC and Craig Wright, including communications

5. All documents relating to any Belize companies, corporations, entities, or trusts, in which David Kleiman held any interest, including communications.

6. All documents relating to the GICSR Trust, including communications.

7. All documents relating to TTA-1-14, including communications.

8. All documents relating to Design by Human, Ltd. including communications.

9. All documents relating to the Panama Fund, including communications.

10. All documents relating to Gold bonds, including communications.

11. All documents relating to the Strasan Agreement, including communications.

12. All documents relating to C01N, including communications.

13. All documents relating to the COIN supercomputer, including communications.

14. All documents relating to the Denariuz Seychelles Trust, including communications.

15. All documents relating to the white paper entitled "Bitcoin: A Peer-to-Peer Electronic Cash System."

16. All documents and communications relating to the following Cryptocurrency wallets or addresses:

      a. 1933phfhK3ZgFQNLGSDXvqCn32k2buXY8a;

      b. 1MSUvGS9BEjpL35CKu7feF4HaPCXv2cht7; and,

      c. JjtxXmbC95sgn5kE2Hm92axA7hcbDkRhK.

17. All documents and communications relating to any cryptocurrency wallet mentioned in the Second Amended Complaint, its exhibits, and the exhibits attached to CSW aff (Exhibit 1).

18. All documents and communications relating to the following Cryptocurrency keys:

      a. 56EC 672A 6B67 266A 5E21 1514 ADDA 0EB2 E545 EB7B;

      b. DBB7 E697 59EF D7FE EB4C F51B 4FF1 CFEB C941 FE6D;

      c. 0AC1 SAFE 1F8D 3512 BE15 6909 B18B BF41 1F55 6274; and,

      d. DE4E FCA3 E1AB 9E41 CE96 CECB 18C0 9E86 5EC9 48A1.

19. All documents and communication relating to David Kleiman's ownership of intellectual property.

20. All documents and communication relating to David Kleiman's ownership of Cryptocurrency.

21. All documents relating to Coin-Exch Pty, LTD, including communications.

22. All documents that you received either formally or informally from any source that relate in any way to the claims in the Second Amended Complaint, including correspondence.

23. All documents you provided to any testifying experts and all materials that you allowed them to inspect. This Request is ongoing in nature, and thus covers all documents that you provide to any testifying expert and all materials that You allow them to inspect during the pendency of this litigation.

24. All documents relating to the metal-encased USB drive that you indicate David Kleiman kept on his person.

25. All documents relating to communications between you and the ATO.

26. All documents relating to Liberty Reserve, including communications with that entity.

27. All documents relating to companies, corporations, trusts, or entities in which David Kleiman had any ownership or financial interest.

28. All documents relating to companies, corporations, trusts, or entities in which you had or have any ownership or financial interest.

29. Your tax returns.

30. All documents relating to phone records reflecting calls or communications between you and Dave Kleiman from January 1, 2013 through April 27, 2013. This request includes your home phone, work phone, cellular, or any other phone that you used to communicate with Dave Kleiman.

31. All documents reflecting any and all communications with Dave Kleiman during his illness and hospital stays.

Dated: January 18, 2019.                          Respectfully submitted,

                                                  *s/ Velvel (Devin) Freedman*
                                                  Velvel (Devin) Freedman, Esq.
                                                  BOIES SCHILLER FLEXNER LLP
                                                  100 SE Second Street, Suite 2800
                                                  Miami, Florida  33131
                                                  Telephone:  (305) 539-8400
                                                  Facsimile:   (305) 539-1307
                                                  vfreedman@bsfllp.com

                                                  Kyle W. Roche, Esq.
                                                  *Admitted Pro Hac Vice*
                                                  BOIES SCHILLER FLEXNER LLP
                                                  333 Main Street

Armonk, NY10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300
kroche@bsfllp.com

*Counsel to Plaintiff Ira Kleiman as Personal*
*Representative of the Estate of David Kleiman*
*and W&K Info Defense Research, LLC.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 18, 2019, a true and correct copy of the foregoing was served on all counsel of record identified on the Service List below via e-mail:

Andres Rivero, Esq.
Jorge A. Mester, Esq.
Alan H. Rolnick, Esq.
RIVERO MESTRE LLP
2525 Ponce de Leon Boulevard
Suite 1000
Coral Gables, FL 33134
305-445-2500
(305) 445-2505 (fax)
arivero@riveromestre.com
jmestre@riveromestre.com
arolnick@riveromestre.com
receptionist@riveromestre.com

*/s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

IRA KLEIMAN, as the personal representative
of the Estate of David Kleiman, and W&K Info
Defense
Research, LLC

       *Plaintiffs,*

v.

CRAIG WRIGHT

       *Defendant.*

CASE NO.:  9:18-cv-80176-BB

## PLAINTIFFS' FOURTH REQUEST FOR PRODUCTION
## TO DEFENDANT CRAIG WRIGHT

Plaintiffs hereby serve their fourth request for production to Defendant Craig Wright and request that he produce the following for inspection, copying, and examination within thirty (30) days from the date hereof, pursuant to Federal Rule of Civil Procedure 34 as follows:

### DEFINITIONS

For the purposes of this Request for Production, the following definitions shall apply:

1.      The term "Plaintiffs" shall mean IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC.

2.      The terms "Defendant," "you," "yours" and/or "yourselves" shall mean Defendant Craig Wright and any Person or Trust (as defined herein) of which (a) Craig Wright is an owner, shareholder, member, manager, director, officer, trustee, employee, or beneficiary of ("CSW Persons/Trusts"), or that (b) is controlled by Craig Wright or any CSW Persons/Trusts.

3.      The term "Action" shall mean the lawsuit currently pending *Ira Kleiman, et al. v. Craig Wright*, Case No. 9:18-cv-80176-BB in the U.S. District Court, Southern District of Florida.

4.      The terms "document" or "documents" shall mean any written, typewritten, handwritten, printed, graphic, photographic, electronic or recorded materials, including, but not limited to the following: correspondence and drafts of correspondence; e-mails; SMS messages; Whatsapp messages; Signal messages; Twitter DMs; Facebook messages; message board posts or DMs; any other form of messages or communications; code; programming; notes or summaries of conversations; forms; schedules or worksheets; memoranda; reports; comments; worksheets; plans; minutes; notes; notices or notifications; findings; brochures; circulars; bulletins; advertisements; records; summaries or other reports of conferences, meetings, visits, surveys, discussions, inspections, and examinations; journals; logs; ledgers; balance sheets; profit and loss statements; purchase orders; quotations; estimates; invoices; bids; receipts; pledge commitments; acknowledgments; credit memoranda; contract or lease offers or proposals; income tax returns; check stubs (front and back); sales vouchers or records; executed or proposed agreements; contracts; deeds; franchise agreements; licenses; leases; insurance policies and riders or options; proposals; diaries; desk calendars; appointment books; evaluations; applications; telephone call books, notes or records; affidavits, deposition transcripts, statements or summaries or excerpts thereof; stenographic notes; financial data; newspaper or magazine articles; pamphlets; books; texts; notebooks; magazines; manuals; publications; notepads; tabulations; data compilations; calculations; or computations; schedules; drafts; charts and maps; forecasts and projections; feasibility studies; drawings, designs, plans, specifications; graphs, blueprints, sketches, or diagrams; printouts or other stored information from computers or other information retention or processing systems; hard drives, USB drives, disks, CD's, DVD's, tapes, videotapes; photographic matter or sound reproduction matter however produced, reproduced or stored; computer data of any kind whatsoever; any exhibits, attachments, or schedules to or with the foregoing; any drafts

of the foregoing; any of the foregoing that exist in a form by which they are protected by computer encryption; any copies or duplicates of the foregoing that are different because of marginal or handwritten notations, or because of any markings thereon; the inclusion of specific examples within any individual request does not limit the definition provided herein and should be viewed as merely as examples meant to facilitate production.

5.      "Copy" when used in reference to a document means any color, or black and white facsimile reproduction of a document, regardless of whether that facsimile reproduction is made by means of carbon papers, pressure sensitive paper, xerography or any other means of process.

6.      "Communication" and "communicate" shall mean any recordation, exchange or transfer of information, whether in writing, audio, oral or other form, including, but not limited to, memoranda or notes, telephone conversations and meetings, letters, telegraphic and telex communications, email communications, vistomail, SMS messages, Twitter DMs, Facebook messages, Whatsapp messages, Signal messages, message board posts or DMs, any other form of messages or communications, blogs, voicemails, and includes all information relating to all oral or written communications and "documents" (as herein above defined), whether or not such document, or information contained herein was transmitted by its author to any other person; the inclusion of specific examples within any individual request does not limit the definition provided herein and should be viewed merely as examples meant to facilitate production.

7.      "Person" or "persons" shall mean each and every individual, corporation, partnership, joint venture, social or political organization, or any other entity, incorporated or unincorporated, or encompassed within the usual and customary meaning of "person" or "persons."

8.      "Agent" shall mean: any agent, employee, officer, director, attorney, independent contractor or any other person acting at the direction of or on the behalf of another.

9.      "Date" shall mean the exact day, month and year if ascertainable or, if not, the best approximation, including relationship to other events.

10.     The term "materials" shall mean (1) the elements, constituents, or substances of which something is composed or can be made; something (as data) that may be worked into a more finished form (2) apparatus necessary for doing or making something; (3) The substance or substances out of which a thing is or can be made; and/or (4) Tools or apparatus for the performance of a given task.

11.     The term "third party" or "third parties" refers to individuals or entities that are not a party to this action.

12.     "Identify" when used in reference to:

a.      a person, shall mean to state his or her full and present or last known address (including zip code), phone number and present or last known position or business affiliation (designating which), and the job description;

b.      a firm, partnership, corporation, proprietorship, entity/business, or association, shall mean to state its full name and present or last known address (designating which) and to state the name and address of each person within the entity likely to have knowledge of the relationship between the entity and Plaintiff;

c.      in the case of a document, the date, author, sender, recipient, type of document or some other means of identifying it and its present location and custodian;

d.      in the case of an oral communication, the date, the communicator, communicate, and the nature of the communication;

4

e.      in the case of a document within the possession, custody or control of Plaintiff, whether Plaintiff will make it available to Defendants' counsel for inspection and/or copying;

f.      in the case of a document that was, but is no longer in the possession, custody or control of Plaintiff, what disposition has been made of the document.

13.      As used in this Request for Production of Documents, the singular shall include the plural, and vice versa; the use of the word "any" shall include and encompass the word "all," and vice versa; the use of the disjunctive shall include the conjunctive, and vice versa; and, unless context indicates otherwise, the use of any gender includes all other genders.

14.      The term "cryptocurrency" shall mean any digital currency in which encryption techniques are used to regulate the generation of units of currency and verify the transfer of funds, operating independently of a central bank. It shall include, but not be limited to, Bitcoin, Bitcoin Cash, Bitcoin Cash SV, any other "forked" Bitcoin asset, and Ethereum's Ethers.

15.      The term "trust" shall include any arrangement, entity, vehicle, agreement, deed, or relationship, in any jurisdiction, where the person with title or control over property has duties to deal with it for another's benefit. Due to variances in various jurisdictions' laws, this definition should not be given an overly formalistic construction, but a liberal one. It should include any arrangement bearing a similarity to a "trust," and any such arrangement you (or others) have actually referred to as a "trust."

16.      Unless explicitly stated otherwise, the requests set forth below relate to the period of time beginning on or about January 2006 through the present.

17.      The term "control" means in your possession, custody, under your direction, or available to you upon reasonable demand, and includes in the possession, custody, or available

upon reasonable demand, of those under the direction of you or your employees, subordinates, counsel, accountants, consultants, experts, parent, subsidiary or affiliated corporations, and any persons acting or purporting to act on your behalf.

## INSTRUCTIONS

1.   Defendant should produce the documents as follows: (1) in the exact order in which they are kept in the ordinary course of business; or (2) classified according to the specific request(s) to which they are responsive.

2.   To the extent that you do not have possession, custody, or control of any documents identified as responsive to a particular request herein, please indicate the lack of possession, custody, existence, or control of the responsive documents in your response.

3.   All electronic documents and e-mail are requested to be produced in electronic format by a forensically sound method, with all original metadata preserved and intact.

4.   ESI should be produced as follows:

   a.      Email, instant messaging, calendar, contacts, and word processing files must be derived from the original electronic media and converted to singlepage .tiff images with accompanying system metadata (e.g., author, recipient(s), "cc" recipient(s), "bcc" recipient(s), date and time of creation and receipt, date and time of modification, etc.) and substantive metadata (e.g., the substance of the changes, etc.), with all attachments. All chronological metadata shall be standardized to Eastern Standard Time. Plaintiffs reserve the right to request native format production for ESI. Upon such request, Defendant shall produce specific documents (identified by Bates number or range) in original native electronic format.

      b.      Dynamic files (e.g. databases, spreadsheets, project files, etc.) shall be produced in original native format with all accompanying metadata, along with all such software necessary to interpret the produced information if such software is not readily commercially available.

      c.      For all ESI not specified above, production shall be made in native format with all accompanying metadata, along with all software necessary to interpret the produced information if such software is not readily commercially available, unless the Plaintiffs specifically agree to a different form of production.

5.  If any responsive document was, but no longer is, in your possession, custody, or control, state the following for each document in your response:

      a.      the type of document (e.g., correspondence, memorandum, e-mail, etc.);

      b.      the date of the document;

      c.      any person(s) who created or edited the document;

      d.      any person(s) who signed the document;

      e.      any person(s) who received the document or a copy of it;

      f.      any person(s) now in possession of the document;

      g.      the substance of the document; and

      h.      the disposition of the document, including the date of disposition.

6.  This Request for Production of Documents does not seek the production of documents protected by the attorney-client privilege or work-product rule. However, if you withhold production of a document requested here as privileged, work product or on any other basis, please state the following in a privilege log for each document withheld:

      a.      the type of document (e.g., correspondence, memorandum, e-mail);

b.  the date of the document;

c.  the person(s) who signed the document;

d.  the person(s) who received the document or a copy of it;

e.  the reason for non-production; and

f.  the substance of the document.

## **REQUESTS FOR PRODUCTION**

1.  For Plaintiff's first set of request for production served on May 30, 2018, please produce any documents or communications that would be responsive when the term "you" or "your" used in requests number 1, 2, 3, 6, 7, 8, 9, 13, 15, and 16 is interpreted to mean "any Person or Trust (as defined herein) of which (a) Craig Wright is an owner, shareholder, member, manager, director, officer, employee, trustee, or beneficiary of ("CSW Persons/Trusts"), or that (b) is controlled by Craig Wright or any CSW Persons/Trusts." This requests excludes documents and communications already requested under the definition provided therein.

2.  A copy of all of Craig Wright's marriage certificates and/or licenses.

3.  A copy of any prenup or postnup (including all drafts) relating to Craig Wright.

Dated: January 25, 2019

Respectfully submitted,

*s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman, Esq.
BOIES SCHILLER FLEXNER LLP
100 SE Second Street, Suite 2800
Miami, Florida  33131
Telephone:  (305) 539-8400
Facsimile:   (305) 539-1307
vfreedman@bsfllp.com

Kyle W. Roche, Esq.
*Admitted Pro Hac Vice*
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300
kroche@bsfllp.com

*Counsel to Plaintiff Ira Kleiman as Personal Representative of the Estate of David Kleiman and W&K Info Defense Research, LLC.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 25, 2019, a true and correct copy of the foregoing was served on all counsel of record identified on the Service List below via e-mail:

Andres Rivero, Esq.
Jorge A. Mester, Esq.
Alan H. Rolnick, Esq.
RIVERO MESTRE LLP
2525 Ponce de Leon Boulevard
Suite 1000
Coral Gables, FL 33134
305-445-2500
(305) 445-2505 (fax)
arivero@riveromestre.com
jmestre@riveromestre.com
arolnick@riveromestre.com
receptionist@riveromestre.com

*/s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC<br><br>   *Plaintiffs,*<br><br>v.<br><br>CRAIG WRIGHT<br><br>   *Defendant.* | CASE NO.:  9:18-cv-80176-BB |

### PLAINTIFF IRA KLEIMAN'S REVISED FIRST AND SECOND SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26 and 33 and Local Rule 26.1, Plaintiff Ira Kleiman, as personal representative of the estate of David Kleiman, hereby serves the following Interrogatories, and requests that within thirty (30) days after service, Defendant Craig Wright answer the Interrogatories fully, in writing, and under oath.

### DEFINITIONS

For the purposes of these interrogatories, the following definitions shall apply:

1.  The term "Plaintiff" shall mean IRA KLEIMAN, as the personal representative of the Estate of David Kleiman.

2.  The terms "Defendant," "you," "yours" and/or "yourselves" shall mean Defendant Craig Wright and any Person or Trust (as defined herein) of which (a) Craig Wright is an owner, shareholder, member, manager, director, officer, trustee, employee, or beneficiary of ("CSW Persons/Trusts"), or that (b) is controlled by Craig Wright or any CSW Persons/Trusts.

1

3.      The term "Action" shall mean the lawsuit currently pending *Ira Kleiman, et al. v. Craig Wright*, Case No. 9:18-cv-80176-BB in the U.S. District Court, Southern District of Florida.

4.      The terms "document" or "documents" shall mean any written, typewritten, handwritten, printed, graphic, photographic, electronic or recorded materials, including, but not limited to the following: correspondence and drafts of correspondence; e-mails; SMS messages; Whatsapp messages; Signal messages; Twitter DMs; Facebook messages; any other form of messages or communications; notes or summaries of conversations; forms; schedules or worksheets; memoranda; reports; comments; worksheets; plans; minutes; notes; notices or notifications; findings; brochures; circulars; bulletins; advertisements; records; summaries or other reports of conferences, meetings, visits, surveys, discussions, inspections, and examinations; journals; logs; ledgers; balance sheets; profit and loss statements; purchase orders; quotations; estimates; invoices; bids; receipts; pledge commitments; acknowledgments; credit memoranda; contract or lease offers or proposals; income tax returns; check stubs (front and back); sales vouchers or records; executed or proposed agreements; contracts; deeds; franchise agreements; licenses; leases; insurance policies and riders or options; proposals; diaries; desk calendars; appointment books; evaluations; applications; telephone call books, notes or records; affidavits, deposition transcripts, statements or summaries or excerpts thereof; stenographic notes; financial data; newspaper or magazine articles; pamphlets; books; texts; notebooks; magazines; manuals; publications; notepads; tabulations; data compilations; calculations; or computations; schedules; drafts; charts and maps; forecasts and projections; feasibility studies; drawings, designs, plans, specifications; graphs, blueprints, sketches, or diagrams; printouts or other stored information from computers or other information retention or processing systems;

2

hard drives, USB drives, disks, CD's, DVD's, tapes, videotapes; photographic matter or sound reproduction matter however produced, reproduced or stored; computer data of any kind whatsoever; any exhibits, attachments, or schedules to or with the foregoing; any drafts of the foregoing; any of the foregoing that exist in a form by which they are protected by computer encryption; any copies or duplicates of the foregoing that are different because of marginal or handwritten notations, or because of any markings thereon; the inclusion of specific examples within any individual request does not limit the definition provided herein and should be viewed as merely as examples meant to facilitate production.

5.      "Copy" when used in reference to a document means any color, or black and white facsimile reproduction of a document, regardless of whether that facsimile reproduction is made by means of carbon papers, pressure sensitive paper, xerography or any other means of process.

6.      "Communication" and "communicate" shall mean any recordation, exchange or transfer of information, whether in writing, audio, oral or other form, including, but not limited to, memoranda or notes, telephone conversations and meetings, letters, telegraphic and telex communications, email communications, SMS messages, Twitter DMs, Facebook messages, Whatsapp messages, Signal messages, any other form of messages or communications, blogs, voicemails, and includes all information relating to all oral or written communications and "documents" (as herein above defined), whether or not such document, or information contained herein was transmitted by its author to any other person; the inclusion of specific examples within any individual request does not limit the definition provided herein and should be viewed as merely as examples meant to facilitate production.

7.     "Person" or "persons" shall mean each and every individual, corporation, partnership, joint venture, social or political organization, or any other entity, incorporated or unincorporated, or encompassed within the usual and customary meaning of "person" or "persons."

8.     "Agent" shall mean: any agent, employee, officer, director, attorney, independent contractor or any other person acting at the direction of or on the behalf of another.

9.     "Date" shall mean the exact day, month and year if ascertainable or, if not, the best approximation, including relationship to other events.

10.     The term "materials" shall mean (1) the elements, constituents, or substances of which something is composed or can be made; something (as data) that may be worked into a more finished form (2) apparatus necessary for doing or making something; (3) The substance or substances out of which a thing is or can be made; and/or (4) Tools or apparatus for the performance of a given task.

11.     The term "third party" or **"third parties"** refers to individuals or entities that are not a party to this action.

12.     "Identify" when used in reference to:

a.     a person, shall mean to state his or her full and present or last known address (including zip code), phone number and present or last known position or business affiliation (designating which), and the job description;

b.     a firm, partnership, corporation, proprietorship, entity/business, or association, shall mean to state its full name and present or last known address (designating which) and to state the name and address of each person within the entity

4

likely to have knowledge of the relationship between the entity and Plaintiffs or Defendant in this Action;

      c.    a document, shall mean the date, author, sender, recipient, type of document or some other means of identifying it and its present location and custodian;

      d.    an oral communication, shall mean the date, the communicator, communicate, and the nature of the communication;

      e.    in the case of a document within the possession, custody or control of Defendant, whether Defendant will make it available to Plaintiff's counsel for inspection and/or copying;

      f.    in the case of a document that was, but is no longer in the possession, custody or control of Defendant, what disposition has been made of the document.

      g.    a public key or public address shall mean the entire public key and hashed public address and the date you came to possess the private keys and/or the identification of the possessor of the private keys.

13.    As used in this Interrogatory, the singular shall include the plural, and vice versa; the use of the word "any" shall include and encompass the word "all," and vice versa; the use of the disjunctive shall include the conjunctive, and vice versa; and, unless context indicates otherwise, the use of any gender includes all other genders.

14.    The term "cryptocurrency" shall mean any digital currency in which encryption techniques are used to regulate the generation of units of currency and verify the transfer of funds, operating independently of a central bank. It shall include, but not be limited to, Bitcoin, Bitcoin Cash, any other "forked asset" as defined by the Amended Complaint (D.E. 24), and Etherium's Ethers.

15.    The term "Electronic cash without a trusted third party" shall mean the paper You referred to here: https://twitter.com/ProfFaustus/status/1022370998346231808.

16.    The term "*Bitcoin: A Peer-to-Peer Electronic Cash System*" shall mean the famous Bitcoin whitepaper released by "Satoshi Nakamoto" on October 31, 2008.

17.    The term "genesis block" shall refer to the first block of the Bitcoin blockchain created by Satoshi Nakamoto on January 3, 2009 and that included the following text: "The Times 03/Jan/2009 Chancellor on brink of second bailout for banks."

**REVISED INTERROGATORIES PER THE COURT'S FEBRUARY 22, 2019 ORDERS**

**REVISED INTERROGATORY NOS. 1-4[1]:** Please identify the public key of all bitcoins (1) that you mined from January 3, 2009 until April 31, 2013; (2) that Dave Kleiman mined during that same period, and (3) that W&K Info Defense Research mined during that same period.

**REVISED INTERROGATORY NO. 5**: Identify any and all persons that you know have ever had control over the satoshin@gmx.com, satoshi@vistomail.com, or satoshi@anonymousspeech.com accounts. For purposes of this Interrogatory No. 5, the term "control" means anyone you know has (i) had the login credentials to any of these accounts or (i) has been involved in drafting or sending an email from any of these accounts.

**REVISED INTERROGATORY NO. 6:** Identify any and all persons you know that either (1) assisted in drafting the paper "*Bitcoin: A Peer-to-Peer Electronic Cash System*" or it precursor "*Electronic Cash Without A Trusted Third Party*"; (2) were involved in writing the software / computer code that constituted the initial Bitcoin protocol used to mine Bitcoin's "genesis block" on January 3, 2009; or (3) were, prior to January 3, 2009, otherwise involved in the original release of the aforementioned papers or code, this includes but is not limited to, the identity of the "three key people behind Bitcoin" you referred to in your February 11, 2014 email to Louis Kleiman cited at paragraph 133 of the Amended Complaint (D.E. 24).

---

[1] Plaintiff Ira Kleiman's revisions to these Interrogatories is served pursuant to Judge Reinhart's ruling on Defendant's objection to these interrogatories. Specifically, that the Court "will let [Plaintiffs] trace [the Defendant's bitcoin holdings] forward not backward." (Hearing Tr. at 120:15-20 (February 20, 2019). Accordingly, if Defendant asserts these Interrogatories count against Ira's total, Ira will plan to raise this with the Court at the upcoming March 6, 2019 hearing.

Dated: February 22, 2019.

Respectfully submitted,

*s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman, Esq.
BOIES SCHILLER FLEXNER LLP
100 SE Second Street, Suite 2800
Miami, Florida  33131
Telephone:  (305) 539-8400
Facsimile:   (305) 539-1307
vfreedman@bsfllp.com

Kyle W. Roche, Esq.
*Admitted Pro Hac Vice*
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300
kroche@bsfllp.com

*Counsel to Plaintiff Ira Kleiman as Personal*
*Representative of the Estate of David Kleiman*
*and W&K Info Defense Research, LLC.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 22, 2019, a true and correct copy of the foregoing was served on all counsel of record identified on the Service List below via e-mail:

Andres Rivero, Esq.
Jorge A. Mester, Esq.
Alan H. Rolnick, Esq.
Daniel Sox, Esq.
RIVERO MESTRE LLP
2525 Ponce de Leon Boulevard
Suite 1000
Coral Gables, FL 33134
305-445-2500
(305) 445-2505 (fax)
arivero@riveromestre.com
jmestre@riveromestre.com
arolnick@riveromestre.com
dsox@riveromestre.com
receptionist@riveromestre.com

_/s/ Velvel (Devin) Freedman_____
Velvel (Devin) Freedman

## NOTARY ATTESTATION

I, _____, DO HEREBY AFFIRM THAT THE ANSWERS TO ALL OF THE ABOVE INTERROGATORIES ARE TRUE AND CORRECT TO THE BEST OF MY PERSONAL AND PROFESSIONAL KNOWLEDGE.

The foregoing instrument was acknowledged before me on this _____ day of _____, 2019, by _____, who is personally known to me or has produced _____ as a valid form of identification for these purposes.

State of            )
                    )
County of           )
(Please indicate)

_____
Notary public sign

_____
Notary public print

_____
Commission number and expiration date of same

10