# EXHIBIT E

**Velvel (Devin) Freedman**

| | |
|---|---|
| **From:** | Velvel (Devin) Freedman |
| **Sent:** | Tuesday, March 12, 2019 4:38 PM |
| **To:** | 'Zaharah Markoe'; Kyle Roche; Bryan Paschal |
| **Cc:** | Zalman Kass; Andres Rivero; Maxwell Pritt; William T Dzurilla; Robert Keefe (RKeefe@BSFLLP.COM) |
| **Subject:** | RE: Kleiman v. Wright |

Zaharah,

We went back and reviewed the transcript and while we don't agree with your reading, we have edited our topics to make it more clear that we are focusing on what we believe to be permissible topics. It should now be clear that the topics below are designed to help identify the scope of relevant discovery rather than address topics disputed by the parties. Please let us know which ones you object to, and we will identify it for the Court to resolve.

1. The location and existence of documents along with the identification of witnesses, including information about their whereabouts and role(s) in the subject matter of the pleadings.

2. What trusts or companies involved Dave Kleiman or W&K and which did/do not, along with information on the purposes of those entities, their organizational and ownership structure, assets created by them, and their document management systems.

3. Details surrounding Craig and Dave's partnership to create Satoshi Nakamoto, including the methods of communication they used during that period, the accounts they held to collaborate (technological and money), the general process of their collaboration, and to identify the computers and servers "Satoshi Nakamoto" used to draft the whitepaper, program Bitcoin, and mine the first few bitcoins.

4. The location and duration of Dave, W&K, and Craig's mining of bitcoins from 2009 until April 2013, the methods of communication they used during that time, the accounts they held to collaborate (technological and money), the general process of their collaboration, the computers and servers they used to mine these coins, and where they stored the bitcoins.

5. Identification of the times and projects that Dave and Craig collaborated on to create intellectual property, the types of intellectual property they created, the methods of communication they used during that period, the accounts they held to collaborate (technological and money), the general process of their collaboration, identification of the computers and servers they used to collaborate, along with where that intellectual property ended up, and why.

6. Inquiry into the scope of knowledge and information possessed by the individuals and entities identified in Craig's sworn statement (ECF No. 33-3), his relationship to those people, and other general questions about this sworn statement.

7. Inquiry into the individuals and entities identified in the Australian Court proceedings 2013 / 225983 & 2013 / 245661 (Craig Steven Wright v. W&K Info Defense Research LLC, NSW Supreme Court) along with what documents exist relevant to the lawsuit, and where those documents are held.

8. Inquiry into the Australian Tax Office investigations to understand how many there were, what they related to, which ones are relevant to the current claims, and who has possession of those documents.

9. Inquiry into Design By Human, including why it existed, who created it, how it obtained control over the bitcoin wallets identified in Ex. 15 of the SAC, information about the handwritten trust the 650K bitcoin were held in, how and why it was dissolved, where its documents are located, and where those bitcoins ended up.

10. Inquiry into the entities and projects referenced in Ex. 5, Ex. 10, and Ex. 15 of the SAC. This should include identification of the relevant time periods, the circumstances that led to these contracts, the computers and servers involved in fulfilling these contracts, the accounts held to facilitate these contracts (technological and money), the method of collaboration fulfilled by these contracts, the types of research created pursuant to these contracts, who controlled the bitcoin wallets referenced by these contracts, where the hardware referenced by this contract was held, whether any loans were taken pursuant to these contracts, by whom, and the status of those loans.

Thanks,
-Vel
**Velvel (Devin) Freedman**
Counsel

**BOIES SCHILLER FLEXNER LLP**
100 SE 2ND Street Suite 2800
Miami, FL 33131
(t) +1 305 357 8438
(m) +1 305 753 3675
vfreedman@bsfllp.com
www.bsfllp.com

**From:** Zaharah Markoe [mailto:zmarkoe@riveromestre.com]
**Sent:** Monday, March 11, 2019 3:14 PM
**To:** Kyle Roche; Bryan Paschal; Velvel (Devin) Freedman
**Cc:** Zalman Kass; Andres Rivero
**Subject:** RE: Kleiman v. Wright

Kyle,

Judge Reinhart made clear during our last discovery conference that these early depositions of Dr. Wright and Ira Kleiman are not on the merits; rather they about topics such as the location of things and what things were (3/7/19 Hrg. Tr. 50:9-13, 54:10-55:19). The below topics with the exception of topic 11 go well into the merits of this case, and are thus improper for the initial deposition of Dr. Wright. Please reformulate your proposed topics to follow what Judge Reinhart described as the purpose and scope of these depositions.

Best,

Zaharah

**Zaharah Markoe**

**RIVERO MESTRE LLP**