UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC

  plaintiffs,

v.                    Case No. 9:18-cv-80176 (BB/BR)

CRAIG WRIGHT,

  defendant.

_____/

# JOINT DISCOVERY MEMORANDUM[1]

With the exception of the second point raised by Defendant,[2] the parties certify they have complied with the requirements for pre-hearing consultation contained in the Court's Standing Discovery Order, ECF No. [102], 9. The following issues require resolution by the Court:

**1. Defendant's Submission**

  **A. Dr. Wright Requests that the Court Resolve Two Key Discovery Disputes**

**Defendant:** Dr. Wright requests that the Court resolve two discovery disputes, each of which stem from a single issue—the discovery of Dave Kleiman's documents and devices. Those issues are as follows: (1) plaintiffs have not produced *a single* document from Dave Kleiman; and (2) plaintiffs are attempting to block the depositions of two non-parties who likely have information regarding a central, yet unanswered, question: what happened to Dave's devices after his death.

---

[1] The Court has scheduled the discovery hearing to take place on March 26, 2019, at 2:30 p.m.
[2] To be clear, Dr. Wright disagrees with this statement regarding his second point, which involves his attempts to schedule non-party depositions. *See* **Ex. B**.

*First*, despite the importance of Dave's documents and devices to this action, and the seriousness of the nature of plaintiffs' claims, there is no excuse—particularly at this stage—for plaintiffs' failure to produce any of Dave's documents. Plaintiffs have not provided any explanation for withholding these critical documents. Instead, they refer to their initial production of "1,000 documents" from Ira Kleiman, not Dave.[3] That is insufficient—Dr. Wright is entitled to defend himself against plaintiffs' unsubstantiated claims for civil theft, starting now.

Separately, plaintiffs have not told us what search terms they used to collect their initial production from Ira. This unilateral document production process has proven, as should have been expected, to be a wasteful exercise. The undisclosed search terms generated batches of documents that were nothing more than a Facebook logo, Facebook notification, or redacted "thank you for your payment" emails from credit-card companies. This initial production does not solve the problem of a prioritized production of Dave's documents, or otherwise mean plaintiffs have complied with the robust production that the Court contemplated in its previous order.

*Second*, plaintiffs are objecting to the issuance of subpoenas to depose two non-parties—Dave's former business partners, Patrick Paige and Carter Conrad. *See* V. Freedman email to B. Paschal, dated March 19, 2019, attached as **Exhibit B**. Plaintiffs have identified Paige and Conrad to have information regarding the preservation of Dave's devices. Therefore, Paige and Conrad are directly relevant to this action, and plaintiffs should not be allowed to block these depositions.

---

[3] *See* A. McGovern email to K. Roche, dated March 20, 2019, attached as **Exhibit A**.

Plaintiffs are objecting to these depositions because they want a full production from Dr. Wright before they will even schedule the depositions. *See* **Ex. B**. However, even if that were a basis for holding up the scheduling of these depositions, plaintiff Ira Kleiman has been engaged in separate litigation with Carter and Paige *since November 21, 2016*, and he has taken discovery in that case regarding Dr. Wright and Dave. Plaintiffs, therefore, have already received whatever documents that they need in advance of Paige and Conrad's depositions (which, notably, they have yet to produce to us).

**Plaintiffs' response to #1**: As explained in more detail below, Defendant's assertion that Plaintiffs haven't turned over any of Dave Kleiman's documents is misleading because Defendant *just* requested Plaintiffs prioritize these documents late last week. Before then, Defendant's top priority was obtaining the forensic images of Dave Kleiman's drives and producing documents based on "W&K" search terms. Plaintiffs are now switching gears to accommodate Defendant's request and by the time of hearing expect to have already produced ~2000 of Dave Kleiman's documents.

To respond in greater detail, without the benefit of search terms Plaintiffs proactively ran searches and produced over 1000 documents of emails between (i) ***Dave*** and Ira, (ii) Ira and Craig, (iii) Ira and Ramona, (iv) Ira and Stefan Matthews, and (v) Ira and Andrew Sommer.[4] Subsequently, Plaintiffs produced another 1,355 documents that hit on "W&K" search terms the

---

[4] Plaintiffs used the following search terms to produce this data: dex561@yahoo.com; dex561@aol.com; goldkey@gmail.com; craig.wright@information-defense.com; craigswright@acm.org; craig@rcjbr.org; craig.wright@demorgan.com.au; ramona.watts@hotwirepe.com; ut.ng@hotwirepe.com; ramona@rcjbr.org ramona@demorgan.com.au; stefan.matthews@demorgan.com.au; asommer@claytonutz.com; kleimandave@yahoo.com; davesdigitalforensics@gmail.com; dave@davekleiman.com ; dave@netmedic.net ; dave@isecureu.com

3

Defendant requested Plaintiffs prioritize and will shortly supplement that production with another few thousand documents, approximately 2000 of which are expected to be from Dave Kleiman.

Late last week, Defendants asked Plaintiffs to prioritize documents from Dave Kleiman. Plaintiffs had a call with their ESI vendor and are working on reshuffling production to prioritize sources of ESI from Dave Kleiman. To be sure, Plaintiffs are working diligently to produce documents. Counsel spent over three hours conferring with Defendant about their search terms last week. Furthermore, in addition to ESI specialists, Plaintiffs have a team of seven attorneys who are engaged in the full time review of Plaintiffs documents for production. In short, Plaintiffs are prioritizing Dave Kleiman's documents and doesn't see a dispute for this Court to resolve.

**Plaintiffs' response to #2:** Plaintiffs requested Defendant speak with Plaintiffs (on the phone or in person) about this issue, even citing this Court's requirement that the parties do so, but Defendant declined. Plaintiffs remain hopeful the parties can work this out without Court intervention, but includes its position below in case the Court decides to resolve it prior to then.

The Defendant has simple requests from Mr. Page and Mr. Conrad. He wants to learn about Dave Kleiman's devices. Admittedly, this doesn't take much document production. But Plaintiffs need to depose these witnesses too. And Plaintiffs area of inquiry is complex and detailed. These witnesses spoke with the Defendant and had correspondence with him about Dave's role in creating Bitcoin, mining bitcoins, and developing intellectual property. They are Dave Kleiman's former best friends. In fact, the Second Amended Complaint quotes directly from some emails Craig sent to Mr. Page in support of its intellectual property related claims: "**[Dave] did a fair amount of research with me. Most yet to be completed and published . . .** When it all comes out, there is no way Dave will be left out. **We need at least a year more**."lECF. No. [83], ¶¶ 151, 153 (emphasis in original).

4

Both parties have subpoenaed these witnesses, but no response has yet been received. Both parties have search terms related to these witnesses, but production of documents that hit on those search terms has not yet occurred.

In sum, Plaintiffs remain hopeful the parties can be reasonable about scheduling these witnesses for deposition at a reasonable time after relevant documents production has taken place. But if Defendant won't try to schedule these with Plaintiffs offline, Plaintiffs request the Court instruct Defendant to wait until the relevant production has taken place.

**2.     Plaintiffs' Submission**

**A.     Defendant's objections to Plaintiffs' revised interrogatories 5 and 6**

**Plaintiffs**: Revised interrogatories No. 5 and 6 seek the identity of all persons who collaborated in the initial projects of the Satoshi Nakamoto partnership and who controlled the partnership's email accounts. **Exhibit C**. The answer to this interrogatory is directly relevant to establishing the existence of a partnership and identifying relevant witnesses. Plaintiffs alleged that in c. 2008 Dave and Craig formed the Satoshi Nakamoto partnership and through it created Bitcoin, mined bitcoins, and developed blockchain based IP. Plaintiffs alleged this association as co-owners of a business for profit continued under the Satoshi Nakamoto name until at least 2011 when W&K was formed, so that when Craig took sole possession of the partnership's bitcoins and intellectual property he, *inter alia*, breached his duties of loyalty and care to the partnership. ECF No. [83], ¶ 197. At trial, Plaintiffs have the burden of proof to demonstrate that Craig and Dave's formation of the Satoshi Nakamoto partnership was the association of co-owners of a business for profit. If the answer to this interrogatory is "Dave and Craig were the sole participants," it helps Plaintiffs' case. If it includes other individuals, they are relevant witnesses, and Plaintiffs must be aware of their existence to prepare for trial. Defendant's objection, that the identity of who

5

participated in the partnership is "not relevant to plaintiffs' claims," when one of Plaintiffs' claims is for breach of the duties of loyalty and care owed to the Satoshi Nakamoto partnership, is patently frivolous.

**Defendant**: Plaintiffs' Revised Interrogatories 5 and 6 continue to seek irrelevant and highly sensitive information. Who had access to certain email accounts that were associated with a pseudonym provides no information whatsoever as to whether or not Dave Kleiman and Dr. Wright were partners in a "business for profit." Similarly, who assisted in draft a paper that was published in 2008 and who worked on writing the software/computer code that constitute intellectual property that was made public in 2009 has nothing to do with whether or not Dave and Dr. Wright were partners, even less to do with any allegation that Dr. Wright stole anything since those materials were made public long before Dave died and Dave never made any such allegation.

### B. Defendant's claim that there are no email addresses with potentially relevant ESI

**Plaintiffs:** Pursuant to the parties ESI agreement Dr. Wright has disclosed there are no email addresses relevant to this case. To date, however, Plaintiffs have compiled a list of 18 email addresses for Dr. Wright they believe are relevant to the case.[5] Furthermore, based on production to date, it appears that Craig and Dave corresponded heavily through Bitmessage, an encrypted communications protocol,[6] but Defendant has failed to identify these accounts as well. *See e.g.*

---

[5] craig@rcjbr.org; craig.wright@demorgan.com.au; craig.wright@hotwirepe.com; craig.wright@Information-defense.com; craig.wright@gicsr.org; overlyqualified@gmail.com; craig@panopticrypt.com; craig.wright@itmasters.edu.au; mad.men@hushmail.com; Craig.Wright@bdo.com.au; cwright@bdosyd.com.au; craigsw@ozemail.com.au; craig.wrigh@asx.com.au; wright_c@demorgan.com.au; doshai@pip.com.au; craigswright@acm.org; tuliptrading@hushmail.com; craigw@dg.ce.com.au.

[6] https://en.wikipedia.org/wiki/Bitmessage

**Exhibit D**.[7] Plaintiffs seek an order directing Defendant to fully disclose all email accounts, Bitmessage accounts, and to conduct a full collection of them all.

**Defendant:** Dr. Wright disclosed, as agreed all sources of potentially relevant ESI. Dr. Wright does not maintain as long as the relevant of time. We have collected numerous .pst files from the over 31 electronic devices we have collected from Dr. Wright. Those .pst files contain potentially relevant emails, and Dr. Wright disclosed those facts to plaintiffs. Moreover, as is clear from the productions thus far, Dr. Wright prints out or .pdfs certain emails, and those have been produced and will continue to be produced.

### C. Defendant's refusal to collect documents from his Australian attorneys

**Plaintiffs**: At the last hearing, the Court ordered Defendant to obtain all documents within his possession, custody, or control unless he moves not to on burden grounds. Plaintiffs requested the Defendant collect documents from his Australian attorneys because the Defendant swore "**I have no documents in my possession from any ATO investigation.** To the extent that my attorneys have any documents from any ATO investigation related to me, those documents would be located in Australia." ECF No. [33-3] at 3-4 (emphasis added). In an email to counsel, however, Ms. McGovern has now stated that "documents that would be produced by attorneys would be duplicative." **Exhibit E** (highlight added). This is in complete conflict with his sworn statement above. Plaintiffs seek an order directing Dr. Wright to collect documents from his Australian attorneys.

**Defendant:** It is clear from the productions thus far that Dr. Wright was mistaken in his statement in the affidavit. Indeed, we have produced responsive and relevant documents from

---

[7] Defendant has marked **Exhibit D** (DEF_00000049-68) "confidential." To facilitate expeditious resolution, Plaintiffs will bring it to the hearing for the Court's review instead of filing it.

various ATO investigations. Defendant's counsel made clear that documents relating to the ATO proceedings were produced. Ms. Markoe personally went to Dr. Wright's home and reviewed binders of materials from the ATO investigations that were hardcopies of materials provided to counsel, and often had counsel's names on the binders. Further, Ms. Markoe has reviewed a sampling of the privileged ESI that contain email addresses from Dave Kleiman and that ESI consisted of communications to Dr. Wright's counsel and Dr. Wright's companies' counsel providing them with documents related to various ATO investigations.

**D.     Defendant's failure to cooperate in the coordination of ESI**

**Plaintiffs**: The Court ordered Defendant to:

> be transparent about what you've got, where it is, what it is, the categories you have. Because the more transparent you can be, then it is going to help Mr. Freedman and his team target in on what they want to prioritize . . . This is a historical case. The facts are what they are. The faster you all come to that realization and work it out and get the information exchanged, then you can really focus on the things that are important in this case. So I order the parties to do all of that.

2/20/19 Hr. Tr. at 37:3-7, 39:5-8. Plaintiffs have tried to work with Defendant to understand the scope of discovery, and narrow requests into high yield areas, but Defendant has refused to provide certain highly relevant information in advance of Mr. Wright's deposition on April 4. Plaintiffs ask the Court to order Defendant: (1) to provide the names of the 30 trusts and companies he claims involved him, but not Dave Kleiman; and (2) to provide a list of Australian companies, attorneys, accountants, and employees he's collected ESI from. Both these lists will help focus Defendant's deposition (and all discovery) into more high-yield areas of inquiry. Plaintiffs believe these requests are reasonable and consistent with this Court's directives, but Defendant has refused to provide them.

**Defendant**: The compilation of the names of the 30 trusts and companies we discussed with the Court at the March 6th hearing is work product. To date, Dr. Wright has produced over

8

22,000 pages of documents to plaintiffs consisting of over 5,000 documents (less than 1,000 of which are hard copies). Many of those documents provide the information plaintiffs seek. Dr. Wright is under no obligation to create documents that do not otherwise exist but can be gleaned from a review of produced materials.

**E.     Disputed search terms**

**Plaintiffs**: have listed the search terms it requests, but Defendant objects to, and their hits, in **Exhibit F**. Plaintiffs believe these search terms are patently relevant and narrowly tailored. Plaintiffs are prepared to discuss them if the Court has any questions.

**Defendant:** As can be seen from the hit count report attached as **Exhibit G,** these search terms are not narrowly tailored, and some of them are simply not relevant based on this Court's previous rulings.

**F.     Outstanding RFPs**

At the last discovery hearing, the Court deferred ruling on Plaintiffs' Second Set of RFPs No. 16, 18-27, 36-37, 40-41, 45, and 88. These RFPs have been briefed by the parties in ECF No. [114], at 4-7. **Defendant:** With regard to RFPs 36-37, 40-41, 45, plaintiffs provided usable search terms after 11 p.m. on March 19. Dr. Wright provided hit counts on those searches on March 20. *See* **Exhibit H.**

Respectfully submitted,

*Counsel to Plaintiffs Ira Kleiman as Personal Representative of the Estate of David Kleiman and W&K Info Defense Research, LLC.*

s/ *Velvel (Devin) Freedman*
Velvel (Devin) Freedman, Esq.
BOIES SCHILLER FLEXNER LLP
100 SE Second Street, Suite 2800
Miami, Florida  33131
Telephone:  (305) 539-8400

*Attorneys for Dr. Craig Wright*

RIVERO MESTRE LLP
2525 Ponce de Leon Boulevard, Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: amcgovern@riveromestre.com
Email: zmarkoe@riveromestre.com
Email: receptionist@riveromestre.com

Facsimile: (305) 539-1307
vfreedman@bsfllp.com

Kyle W. Roche, Esq.
Admitted Pro Hac Vice
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300
kroche@bsfllp.com

By: s/ *Andres Rivero*
ANDRES RIVERO
Florida Bar No. 613819
AMANDA MCGOVERN
Florida Bar No. 964263
ZAHARAH MARKOE
Florida Bar No. 504734

## CERTIFICATE OF SERVICE

I certify that on March 24, 2019, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record either by transmission of Notices of Electronic Filing generated by CM/ECF or by U.S. Mail.

/s/ Velvel (Devin) Freedman
Velvel (Devin) Freedman