## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

IRA KLEIMAN, as the personal
representative of the Estate of David
Kleiman, and W&K Info Defense
Research, LLC

     *Plaintiffs,*

v.

CRAIG WRIGHT

     *Defendant.*

CASE NO.:  9:18-cv-80176-BB

## PLAINTIFFS' RESPONSE TO DEFENDANT'S
## MOTION FOR URGENT STATUS CONFERENCE

Contrary to their representation to the Court, Defendant has not conferred with Plaintiff for the relief requested. In fact, Plaintiff **believes it will be able** to produce the requested documents by the date requested, and Plaintiff **does not object** to a status conference, but does think the Parties should meet and confer before one is set. Defendant's motion completely mischaracterizes Plaintiffs' titanic effort to streamline the discovery process and otherwise move this case through discovery at an expedited pace.

Responding to this motion, much of which was likely unnecessary had Defendant actually engaged in a meet and confer, has cost Plaintiffs time and expense that should never have been incurred if proper court rules had been followed.

Plaintiffs respond to Defendant's motion below.

**A.**     **The scope of Dave Kleiman's documents have not been misrepresented**

Plaintiffs did not misrepresent the scope of documents on Dave Kleiman's devices.  At Tuesday's hearing, Plaintiffs' informed the court:

MR. FREEDMAN:  As part of the hit reports that we've been turning over to the defendant, it shows the universe of documents searched, and those searched reports were broken out by the Dave Kleiman devices, Ira's e-mails and Dave's e-mails. So the defendant does have the total data amounts, I believe, of Dave Kleiman's devices, Ira Kleiman's e-mails and Dave Kleiman's e-mails, which is I think what they are asking for.

**What we don't have is the exact division between when you look at Dave Kleiman's devices, what of that is Ira's and what of that is Dave's. That's because we have just started coming to agreement on how to do that because they were commingled.**

3/26/19 Hearing Tr. 21:13-21 (emphasis added).)  Indeed, during a meet and confer on Monday at 3:00 p.m. – the day before the hearing – Kyle Roche discussed this issue with Zalman Kass and proposed a solution designed to identify Dave's documents as best as possible.  That solution was to allocate all documents that had a "last modified date" of before April 30, 2013 (a few days after Dave died) and designate all those files as "Dave's documents."

On Wednesday, March 27 – **the day after** the hearing above – Mr. Kass finally agreed to this procedure.  (Ex. 1.)  After Mr. Roche received the final set of search terms requested by Defendant, he requested the e-Discovery vendor divide the hit reports based on ESI from (1) Ira's emails; (2) Ira's devices; (3) Dave's email; and (4) Dave's devices according to the procedure agreed upon with opposing counsel. (Ex. 2.)  Given the complexity of these searches, it took many hours to complete these tasks, but Plaintiffs' e-Discovery vendor worked well past *midnight* to provide the data in advance of the meet and confer.  (*Id.*)

These hit reports revealed that, despite the fact that Dave's devices contained well north of 100,000 documents, the files contained on these devices created before April 30, 2013 amounted to 31,304 documents. (Ex. 3.)  Adding this total to the 21,719 emails Plaintiffs possess of Dave's (Ex. 4.) meant that the parties were able to limit the universe of Dave's documents to approximately 53,023 documents.

**B.    The set of 2,196 documents Defendant seeks was just identified *yesterday* and is expected to be produced by Tuesday - 4/2/19.**

The parties have met and conferred frequently over the past month to discuss document production, search terms, the prioritization of review, and to arrange the delivery of forensic copies of Dave's devices. In contrast to Defendant, Plaintiffs have *voluntarily* provided *every* document hit report that the Defendant has requested relating to Plaintiffs' document collection. Furthermore, Plaintiffs have complied with *every* request from Defendant to prioritize search terms. First, Defendant's asked Plaintiffs' to prioritize review of documents related to the preservation of Dave's devices and documents related to W&K, but did not request such searches be limited to any particular subset of data.  (Ex. 5, March 13, 2019 email from Zalman Kass).  As the parties continued to meet and confer on search terms, Defendant's then requested Plaintiffs to change gears and focus *only* on documents belonging to Dave. Then, at the March 26 hearing, Ms. McGovern requested (for the first time) that Plaintiffs' prioritize "all documents that reference Craig Wright, W&K, or Bitcoin from Dave's devices" and that they be produced "within ten days." (Hearing Tr. 16:20-22.)  While the Court did not grant this specific relief, as explained below, Plaintiffs have done everything possible to comply with this request, and will in fact deliver on this request very quickly.[1]

Per the Court's order, counsel met and conferred over search terms yesterday for 13 hours. That exercise proved fruitful and the parties appear to have reached agreement on search terms. That said, it was during this exercise that the parties worked together to identify the subset

---

[1] In fact, Plaintiff will produce 2000 additional documents today. These documents are from Ira Klieman, but that's because Plaintiffs already produced all the documents from Dave Kleiman that Defendant asked us to prioritize. See Exhibit 5. As discussed above, Plaintiffs are in the process of reviewing and prioritizing the subset of Dave Kleiman's documents that Defendant requested just yesterday.

of 2,196 documents Defendant wants prioritized. Thankfully, and because Defendant has a habit of mischaracterizing Plaintiffs' efforts in providing the discovery they request, the entire effort was documents by Plaintiffs via email with UnitedLex ("UL"), Plaintiffs' e-discovery vendor. (Ex. 6.)[2]

1. **1:16pm:** Mr. Roche requested UL run the search terms Defendant requested over Dave Kleiman's emails and documents, *i.e.,* those last modified before his date of death. He requested they be sent as soon as possible.
2. **1:36pm:** UL responds with the search terms.
3. **2:16pm:** Mr. Roche asks UL to batch all these hits up, and prioritize them for review.
4. **4:01pm:** UL confirms the batches have been completed.
5. **4:05pm:** Mr. Roche asks UL to confirm they can switch gears and have Plaintiffs seven reviewers turn to this specific document set.
6. **4:14pm:** UL confirms they're making the switch then.

**UL now predicts that absent unforeseen circumstances, this entire set of documents will be reviewed and produced on Tuesday, April 2, 2019.** Had Defendant actually met and conferred with Plaintiffs before filing this frivolous motion, he would have known this.

To be clear, the universe of Plaintiffs' documents collected to date **consists of over 1.7 million documents, communications, and other computer files**. During the many hours of meeting and conferring, the parties have been able to whittle down and target the types of documents the Defendant finds most important for preparing to defend his case.  The ever-narrowing scope of documents Defendant is seeking does not demonstrate delay or bad faith. To the contrary, it shows that Plaintiffs are being transparent and helping Defendant locate the documents he wants most.

In sum, Plaintiffs have moved exceptionally quickly, their e-discovery vendor has moved exceptionally quickly, and Defendant's characterization otherwise is simply in bad faith.

---

[2] The vendor is located in California. For convenience, all times have been converted to EDT.

**C.      Depositions of Plaintiff's wife and prior counsel**

Defendant requested dates for the depositions of the Ira Kleiman's wife and his prior counsel. Plaintiffs are willing to provide dates for these witnesses, and indicated they were willing to do so. Counsel simply requested the Defendant confirm – before setting a deposition of these sensitive witnesses so early in a complex case involving many years of history, foreign jurisdictions, and billions of dollars – and where discovery only started 88 days ago[3] (and Defendant's requests for documents were only received 84, 70, and 38 days ago respectively), that Defendant was assuming the risk of this early deposition and not simply going to wait for Plaintiffs document production, and then seek to re-depose these witnesses.

But instead of responding to this email, instead of picking up the phone and calling counsel, Defendant simply threw this issue into a motion before the Court, without any discussion or good faith meet and confer. This is not the first time Defendant has done this. This is ironic, since it was Defendant who, at the last hearing, requested that the Court direct the parties to actually meet and confer before coming to the Court.

**D.      Defendant's request to meet and confer on Plaintiffs answers to interrogatories**

As demonstrated above, and as demonstrated by the hours and hours Plaintiffs have met and conferred with Defendant, Plaintiffs have been working overtime to expedite discovery. Plaintiffs are happy to meet and confer with Defendant on the interrogatory responses. But as this Court has suggested, and as Defendant has requested, Plaintiffs are trying to focus its efforts on high yield areas of discovery first. Counsel can only do so much at one time.

Furthermore, the areas of inquiry Defendant seeks a meet and confer on – whether Ira has made arrangements to ensure he can afford international litigation against a billionaire who stole

---

[3] ECF No. 72

his brother's assets, are irrelevant to this case[4] – and to the extent they exist, are privileged work product materials.[5]

Assuming *arguendo*, that Ira obtained litigation financing, why is that relevant to the Defendant's defenses? And how will that help narrow the scope of discovery and solidify the issues in dispute, *i.e.*, the very purpose of Ira's early deposition? Certainly nothing about this

---

[4] *Space Data Corp. v. Google LLC*, 2018 WL 3054797, at *1 (N.D. Cal. 2018) (denying motion to compel on grounds of relevance and proportionality); *MLC Intellectual Property, LLC v. Micron Technology, Inc.*, 2019 WL 118595 (N.D. Cal. 2019); *Kaplan v. S.A.C. Capital Advisors, L.P.*, 12-9350, 2015 WL 5730101, at *5 (S.D.N.Y. 10 Sept. 2015); *Yousefi v. Delta Elec. Motors*, No. C13-1632 RSL, 2015 WL 11217257, at *2 (W.D. Wash. May 11, 2015) ("Whether plaintiff is funding this litigation through savings, insurance proceeds, a kickstarter campaign, or contributions from the union is not relevant to any claim or defense at issue.").

[5] *Lambeth Magnetic Structures, LLC v. Seagate Technology (US) Holdings, Inc*., Nos. 16-538, 16-541, 2018 WL 466045, at *1-2 (W.D. Pa. 18 Jan. 2018) (affording work-product protection to funding agreement and communications with funder); *Viamedia, Inc. v. Comcast Corporation*, No. 16-5486, 2017 WL 2834535, at *3 (N.D. Ill. 30 June 2017) (holding that communications with funders are entitled to work-product protection); *Odyssey Wireless, Inc. v. Samsung Elecs. Co., Ltd*., No. 15-01735, 2016 WL 7665898, at *5 (S.D. Cal. 20 Sept. 2016) (noting that many courts have found that work product protection is applicable to litigation finance documents); *United States v. Homeward Residential, Inc*., No. 12-461, 2016 WL 1031154, at *6 (E.D. Tex. 15 Mar. 2016) ("The Court finds that the litigation funding information is protected by the work product doctrine."); *United States v. Ocwen Loan Serv., LLC*, No. 12-543, 2016 WL 1031157, at *6 (E.D. Tex. 15 Mar. 1 2016) (same); *In re Int'l Oil Trading Co*., 548 B.R. 825, 835 (Bankr. S.D. Fla. 2016) (concluding that the documents concerning the negotiation of a litigation funding agreement were protected by the attorney-client privilege and the work-product doctrine and citing the 'common enterprise' approach); *Charge Injection Techs., Inc. v. E.I. Dupont De Nemours & Co*., No. 07C-12-134-JRJ, 2015 WL 1540520, at *4 (Del. Super. Ct. 31 Mar. 2015) (concluding that litigation funding documents were protected by the attorney-client privilege and the work-product doctrine); *Doe v. Soc'y of Missionaries of Sacred Heart*, No. 11-02518, 2014 WL 1715376, at *3 (N.D. Ill. 1 May 2014) ('[T]he Financing Materials identified by Plaintiff in his privilege log constitute opinion work product. These materials incorporate opinions by Plaintiff's counsel regarding the strength of Plaintiff's claims, the existence and merit of certain of Defendants' defenses, and other observations and impressions regarding issues that have arisen in this litigation.') (internal quotations omitted); *Mondis Tech., Ltd. v. LG Elecs., Inc*., Nos. 07-565, 08-478, 2011 WL 1714304, at *3 (E.D. Tex. 4 May 2011) ('All of the documents were prepared . . . with the intention of coordinating potential investors to aid in future possible litigation. The Court holds that these documents are protected by the work product protection.').

6

area of inquiry is "urgent" to necessitate an immediate status conference. After all, Defendant will have another opportunity to depose Ira.

**E.      Defendant's request to re-image Plaintiff's drives**

Before handing over the forensic images to Defendant, the Court ordered the parties' experts to meet and confer over the integrity of the images. They did, and Defendant's experts found the method of collection acceptable. As recognized by Defendant, the errors AlixPartners have found may be (and in fact likely are) on the drives themselves.

Plaintiffs discussed this issue with its forensic collection experts, who indicated the issue is the drives, not the images. Plaintiffs proposed solution to this issue, had Defendants actually met and conferred on this topic as the Court and local rules require, would be to have the experts talk to each other again to determine if AlixPartners really needs to re-image the drives. As the Court is aware, those drives contain extremely sensitive information on them, and Plaintiffs would be extremely uncomfortable in handing over the original drives to a third party. Consequently, Plaintiffs would like to explore other alternatives or compromises before deciding whether to raise this issue with the Court.

**F.      Conclusion**

Plaintiffs request the Court deny Defendant's motion and allow Plaintiffs to continue their production in good faith. Plaintiff's also ask that the Court order Defendant to actually meet and confer with Plaintiffs before seeking a status conference, and to award any other relief this Court deems appropriate.

Dated: March 29, 2019.                              Respectfully submitted,

                                                    *s/ Velvel (Devin) Freedman*
                                                    Velvel (Devin) Freedman, Esq.
                                                    BOIES SCHILLER FLEXNER LLP
                                                    100 SE Second Street, Suite 2800
                                                    Miami, Florida  33131

Telephone:  (305) 539-8400
Facsimile:   (305) 539-1307
vfreedman@bsfllp.com

Kyle W. Roche, Esq.
*Admitted Pro Hac Vice*
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300
kroche@bsfllp.com

*Counsel to Plaintiffs Ira Kleiman as Personal
Representative of the Estate of David Kleiman
and W&K Info Defense Research, LLC.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 29, 2019, a true and correct copy of the foregoing was served on all counsel of record identified on the Service List below via CM/ECF:

Andres Rivero, Esq.
Jorge A. Mester, Esq.
Alan H. Rolnick, Esq.
Daniel Sox, Esq.
RIVERO MESTRE LLP
2525 Ponce de Leon Boulevard
Suite 1000
Coral Gables, FL 33134
305-445-2500
(305) 445-2505 (fax)
arivero@riveromestre.com
jmestre@riveromestre.com
arolnick@riveromestre.com
dsox@riveromestre.com
receptionist@riveromestre.com

*/s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman