UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC,

       *Plaintiffs,*

v.

CRAIG WRIGHT,

       *Defendant.*

CASE NO.: 9:18-cv-80176-BB

## PLAINTIFFS' MOTION FOR EXTENSION OF DISCOVERY CUTOFF DATE AND FOR CONTINUANCE OF TRIAL DATE

Plaintiffs file this motion for a six-month extension of the discovery cutoff and trial date set by this Court in its Amended Scheduling Order. (ECF No. [78]). This is a complex multi-billion-dollar case involving international witnesses and documents, against a Defendant who has already twice perjured himself to this Court, where Plaintiffs have alleged a complex theft and fraud of intellectual property and bitcoin – a digital asset which, by design, is difficult to trace.

As explained below, despite Plaintiffs' diligent efforts to narrow the scope of discovery, each party has collected over a million documents, the vast majority of responsive documents have not been reviewed or produced, issues abound on whether Defendant ("Craig") has collected all the documents Rule 34 requires him to, numerous legal issues related to discovery are being briefed, and assistance from the Courts of the United Kingdom will still be required to obtain some important discovery. Furthermore, while the parties took limited depositions to narrow discovery, Craig pled ignorance to even the most basic facts that would help expedite discovery. Instead, he

insisted many times that Plaintiffs would need to present him with documents to answer these basic questions; documents that only he has and that he has yet to produce.

Unfortunately, the six months the Court originally scheduled for discovery has turned out not to be sufficient time to prepare this matter for trial.

In the parties' Joint Scheduling Report, Craig initially claimed to need more than 365 days for discovery. (ECF No. [20] at 7.) Now, however, he has changed his tune and opposes a discovery extension or trial continuance. This abrupt change in opinion is a patent effort to run out the clock and force Plaintiffs to trial without adequate discovery. These tactics should not be awarded. Plaintiffs' motion should be granted and the Court should enter a schedule consistent with Plaintiff's proposed amended scheduling order.

## BACKGROUND

On February 14, 2018, Plaintiffs filed their original complaint – alleging Craig stole $11 billion worth of bitcoins and intellectual property from Dave Kleiman ("Dave"). (ECF No. [1]).

On May 11, 2018, the Parties filed a Joint Scheduling Report where both parties agreed the case should follow the "complex case management track pursuant to S.D. Fla. L.R. 16.1A.2. (ECF No. [20], 10). As part of that report, Craig claimed that "365 days . . . would not be enough time to complete discovery." (*Id*. at 7). That said, and unsurprisingly, he "agree[d] that the parties would need *at least* 365 days for discovery." *Id*. (emphasis added).

On May 29, 2018, Plaintiff served their first discovery requests. At Defendant's request, Plaintiffs (and then this Court) provided Defendant with some extensions of time to respond. (ECF No [54].) On August 2, 2018, and before Defendant responded to *any* of Plaintiffs requests, the Court stayed discovery pending resolution of the motion to dismiss. (ECF No. [57]). The Court later denied Craig's motion to dismiss (ECF No. [68]) and lifted the discovery stay on December

31, 2018 (ECF No. [72]). Thus, discovery really didn't commence until January 1, 2019. On January 3, 2019, the Court entered its amended Order (ECF No. [78]) providing for six months of discovery (June 10, 2019) and setting trial for September 30, 2019.

When Craig finally did respond to Plaintiffs first discovery requests, he papered his responses with nothing but objections. (ECF No. [91-2]; ECF No. [91-4].) Since then, the parties have been involved with ongoing discovery disputes, including numerous multi-hour meet and confers concerning the entry of a confidentiality agreement and an ESI protocol to govern discovery. (ECF No. [88]; ECF No. [105-1].) The negotiation of these agreements delayed discovery production because the parties could not produce documents without governing procedures in place. Counsel also participated in a court-ordered, in-person, thirteen-hour straight meet and confer to resolve the parties' disputes on search terms. Furthermore, over the course of the past ~90 days, the parties have attended five discovery hearings before Judge Reinhart to resolve numerous discovery disputes – which have been incredibly helpful in expediting discovery.

Plaintiffs have spared no expense trying to meet this Court's deadlines. At Judge Reinhart's direction, Plaintiffs flew to London to depose Craig in an attempt to narrow the scope of necessary discovery. Furthermore, in addition to the many attorneys working up the case and reviewing documents produced in this matter, Plaintiffs have employed seven additional attorneys to work exclusively and full time on reviewing documents Craig's requested. To be sure, this effort has paid off. To date, Plaintiffs have produced 12,512 documents compared to the 9,766 Craig has.

In short, Plaintiffs, Judge Reinhart, and Defense counsel have been working as hard as possible to finish discovery in the time provided by the Court, but just haven't been able to. As Judge Reinhart observed:

> "If Judge Bloom asks me, I will tell her that I have been doing everything I can, the parties have been doing everything they can to move the case forward, but both sides

> recognize – this is a tight discovery schedule for a case this big. If Judge Bloom asks me -- she doesn't always ask me; sometimes she does -- I will truthfully tell her that you all are trying really hard to meet her discovery cutoff.

(Ex. 1, March 26, 2019 Hrg. Trn. 32:21-33:3.)

As explained below, the amount and type of outstanding discovery, complexity of the case, and outstanding issues justify a six-month extension of time to complete discovery.

### A. The outstanding document discovery alone justifies an extension of the discovery schedule

Both parties have collected, to date, north of 1 million documents each. As discussed above, the parties engaged in a Court ordered thirteen-hour meet and confer to resolve disputes concerning the search terms to be used to identify responsive documents within that universe of 2+ million documents. As a result of the agreements reached at that meet and confer, each party has agreed to review north of 100,000 responsive documents.

Given that the Defendant has produced less than 10,000 documents, more than 90,000 remain outstanding. Of course, this figure doesn't include the additional documents that will be called for under Plaintiffs' upcoming requests for production, or the additional documents Defendant may have to collect from his Australian counsel, accountants, and companies. (ECF No. [68], 21-22).[1] At Defendant's current pace, however, he will fall well short of even completing document production before the discovery cutoff.

The volume of documents to be produced, coupled with Defendant's professed inability to recollect core facts and his demands that Plaintiff present him with documents, demonstrates that a six month extension of time is appropriate.

---

[1] *Id.* (finding that "documents from the ATO investigation, the Australian court filings, and documents in the possession of the Defendant and/or his Australian companies" are "under the direct control of the Defendant . . . .")

4

**B. Attempts at narrowing the scope of discovery to fit into the current schedule have failed**

To facilitate the narrowing of discovery at issue in this complex matter, and to avoid needless document production, Judge Reinhart encouraged the parties to take a limited deposition to better understand how to focus the parties' discovery efforts.[2] On April 4, 2019, and at great cost, Plaintiffs' counsel flew to London and took this limited deposition of Craig. Unfortunately, Craig's incredulous claims of ignorance to basic facts related to the allegations in the complaint, and his demands that he needs documents to answer these basic questions, demonstrate that broad document discovery is still necessary.

For example, at his April 4 deposition, Craig testified that he could not answer questions concerning the operations and ownership structure of his companies without being able to review relevant documents. Incredibly, Craig admitted to purposely structuring his complex web of 30+ companies in a way where he does not know who owns them, who has their records, who helped him form them, or what property each entity owns. He claimed not to remember vast amounts of information, including being unable to recall the names of witnesses, trusts, trustees, beneficiaries, and the employees of his companies. He claimed not to remember which of his companies the Australian Tax Office ("ATO") had investigated, what the dates of ATO audits were, which Australian attorneys would have his ATO related documents, which email address accounts he and Dave used, and what happened to critical documents. Instead, and as mentioned above, Craig insisted, multiple times, that if Plaintiffs put documents before him, he can answer.

---

[2] The parties will be taking a full second deposition once document production is complete.

### C. International discovery is needed in this case

*1. Andrew O'Hagan*

As Plaintiffs have stated numerous times, the Second Amended Complaint (SAC) is premised mostly on admissions from Craig himself. One source of Craig's admissions is a work done by acclaimed author Andrew O'Hagan entitled *The Satoshi Affair*. In the Satoshi Affair, O'Hagan recounted Craig and Dave's creation of Bitcoin, their joint mining activities, their development of intellectual property, and Craig's arrangement to sell "Satoshi's life rights" and intellectual property to investors. The story has an over 14-page section entitled "Kleiman." (ECF No. [83-1], at 25-34).

O'Hagan was afforded incredible access to Craig, his friends, and business associates to write the story. (*Id.* at 15 ("for those first few months . . . nobody refused me access.").) O'Hagan interviewed Craig for six months. In fact, these interviews resulted in O'Hagan obtaining "many hours of tape," of Craig discussing the origin story of Craig and Dave's collaboration, the fruits of that collaboration, and the current location of those assets. (*Id.* at 25-28.) He was also afforded access to copies of relevant documents and emails Plaintiffs have not seen and the opportunity to confer about these issues (orally and in writing) with Craig's wife, ex-wife, close friends, and business associates. (*Id.* at 29-31.)

The Satoshi Affair contains statements and admissions from Craig on *inter alia*, (i) the bitcoins at issue in this litigation, (*Id*. at 36.); (ii) on the joint nature of the bitcoins (*id.* at 39), (iii) on the various trusts and companies Craig is using to hold the bitcoins and intellectual property he stole from Dave Kleiman (*id.* at 36), and (iv) on the intellectual property at issue and its joint nature (*Id*. at 17, 25).

At Craig's deposition on April 4, 2019, he disavowed the entire story as "a work of fiction." Because Mr. O'Hagan resides in the United Kingdom, this incredulous denial leaves Plaintiffs with no choice but to seek a letter rogatory from this Court to obtain international legal assistance from the English courts.

2. *Ramona Watts*

Ramona Watts is Craig's longtime friend and business associate, whom he claims became his spouse in November of 2013.[3] Ms. Watts communicated directly with Ira about Craig's fraud, and directed Ira to take certain actions while Craig was being investigated by the ATO. She appears in much of the document production Plaintiffs have received and appears to have been intimately involved in Craig's business affairs. In fact, Craig admits she's an important witness and identified her in his initial disclosures as an individual with knowledge of the core facts underlying Plaintiffs' claims, *e.g.,* stating that she has knowledge of the Defendant's "ownership of certain bitcoins referred to in the amended complaint." (Ex. 2.)

Ms. Watts began communicating with Ira in June of 2015 before she and Craig abruptly stopped all communications that July. (*See eg*. Ex. 3.) During these communications, Ms. Watts appeared to be providing Ira with information related to the ATO's investigation of the Defendant as well as updates concerning shares in an entity called Coin-Exch. She also appears to possess certain knowledge concerning Dave Kleiman's finances, claiming at one point in their correspondence that "[o]ne of Dave's companies had significant investments in Liberty Reserve [but] the US government shut that down and confiscated all his money." (Ex. 3 at

---

[3] Plaintiffs requested a copy of Defendant's marriage license, but Defense counsel claimed such a request was "offensive," and has, to date, not produced it.

KLEIMAN_00004792). Her testimony and the documents in her possession will be important for proving Plaintiffs' claims and determining the merits of Craig's asserted defenses.

Plaintiffs had hoped that Craig could help explain Ms. Watts' relevance to the issues in this litigation, but he refused to answer questions related to Ms. Watts at his deposition. The parties are before Judge Reinhart to resolve this refusal, but regardless of its outcome, Plaintiffs should still be afforded the opportunity to question Ms. Watts themselves. Given her first-hand knowledge of many issues in the complaint, there will certainly be important issues she can testify to that come nowhere near the spousal communications privilege.

To be sure, Plaintiffs asked Defendant if, to save the Court, parties, and counsel the time and expense of this motion practice, he'd agree to facilitate answers to discovery requests issued to his wife under the Federal Rules of Civil Procedure. As is his right, he declined, necessitating this motion practice – and consequently more time for discovery.

### D. Craig's deposition has raised additional issues that must be resolved

Craig's deposition raised significant issues that will impact discovery. Some of these are currently before Judge Reinhart and a briefing schedule has been set for their resolution, while others will likely require further motion practice by Plaintiffs'.

*First*, one of the most critical components of discovery that Plaintiffs have requested is the identification of public bitcoin addresses held by Craig as of December 2013. Judge Reinhart agreed this was relevant and ordered Defendant to produce it:

> And, you know, to your point, Judge Bloom has found that they have pled a plausible claim here. Once they've pled a plausible claim, they're entitled to discovery to support their claim. It would seem to me in support of that claim what Bitcoin existed on December 31st, 2013, and where it's gone since then is relevant to their claim.

(Ex. 4, March 14, 2019 Hearing Tr. 21:3-8.) Judge Reinhart ordered Craig to provide this information ahead of his April 4, 2019 deposition or else file a motion objecting to this production

8

on burden grounds by March 22. (*Id.* at 27:23-28:13.) Craig flouted this directive, failing to either file a protective order on burden grounds or provide Plaintiffs with the requested discovery in advance of the April 4 deposition. The parties are before Judge Reinhart on this issue now, but Craig's disregard of Court ordered deadlines has not helped this case move forward quickly and is yet another reason an extension is required.

*Second*, Craig refused to answer certain questions relating to the identification of key witnesses on the grounds of United States National security. (ECF No. [137], 2). For example, Plaintiffs showed Craig an email he wrote Dave's father in which he stated "[y]our son Dave and I are **two of the three key people behind Bitcoin**." (ECF No. [83], 29) (emphasis added). Craig was instructed by his counsel not to answer this question on United States National security grounds. Judge Reinhart deferred ruling on this issue at Craig's deposition to provide the United States Government an opportunity to weigh in. (*Id.*) But at the next discovery hearing, counsel for Craig walked this assertion back claiming that the United States' national security is not actually at issue, just Craig's personal security. (Ex. 5, April 11, 2019 Hrg. Trn. 42:6-46:7.) Judge Reinhart ordered Craig to file a motion for a protective order on these issues by April 19, 2019. The identity of this third individual is critical as Plaintiffs assert that Craig and Dave formed the Satoshi Nakamoto partnership to create Bitcoin, mine bitcoins, and create valuable blockchain intellectual property. (ECF No. [83] ¶ 197.) This third individual likely has direct knowledge of the relationship between Dave and Craig.

*Third*, Craig refused to answer questions about his ex-wife and current wife – both of whom appear to have been heavily involved in Bitcoin and Craig's complex web of companies. Judge Reinhart has set briefing on this issue as well. (Ex. 5 at 65:5-8.)

9

## ARGUMENT

In light of the significant outstanding discovery to be completed by both parties, Craig's inability to identify information necessary to narrow the scope of that discovery, and the significant economic stakes and complexity of this litigation, Plaintiffs cannot fairly be asked to complete discovery by June. Accordingly, Plaintiffs seek a six-month extension, and believe this relief should be granted.

To that end, Plaintiffs have attached a proposed amended scheduling order to this motion that lays out a schedule Plaintiffs believe will provide sufficient time to get this case prepared for trial as expeditiously as possible.

"This Court is afforded broad discretion in the management of its cases and maintains substantial authority to control the pace of litigation occurring before it. While this ability is not unfettered, it is nonetheless expansive." *National Union Fire Insurance Co. v. Tyco Integrated Security, LLC*, 2015 WL 11251733, at *2 (S.D.Fla. 2015) (Bloom, J.). If a "Plaintiff's request is reasonable" and the "Defendant does not demonstrate prejudice," a timely request for a continuance should be granted. *Dix v. United Parcel Service, Inc.*, 2006 WL 8433952, at *4 (S.D.Fla. 2006) (Marra, J.).

In adjudicating a motion for continuance, courts "consider four factors: (1) the moving party's diligence; (2) the likelihood of achieving the aim sought by continuance; (3) inconvenience to the Court, the non-moving parties, and the witnesses involved, were the court to grant a continuance; and (4) the extent to which the moving party would suffer harm as a result of denial. *Jacobson v. R.J. Reynolds Tobacco Company*, 2013 WL 12094890, at *1 (S.D.Fla. 2013) (Ungaro, J.). *See United States v. Davis*, 854 F.3d 1276, 1294 (11th Cir. 2017).

In this case, all four factors strongly favor Plaintiffs' requested relief. First, Plaintiffs have been highly diligent, with a team of 14+ lawyers actively working this case up, reviewing documents requested by Craig, and reviewing the documents he has produced thus far.

Judge Reinhardt has expressly commented that the discovery issues are "complicated," that the parties are "doing everything they can" to move the case forward, and that there is "tremendous time pressure" due to the current scheduling order. (*See e.g.* Ex.4 at 56:2-4 ("I am aware that the parties are working diligently to try to get this done. I am aware that you are under tremendous time pressure with Judge Bloom"); Ex. 1 at 53:6-8, 13-14 ("I think you are all acting in good faith and there are a lot of complicated issues that need to get decided here . . . Trust me. I see both sides are working through a very difficult situation together."); Ex. 5 at 21:17-22:10 ("I will say this. I do see the parties, both sides, working very hard. I see the amount of documents that both sides have produced. I have presided at these hearings . . . So I want to actually commend the parties . . . But, certainly, I don't want either party to think that the Court does not notice the effort that is being made here.").

Second, relief would likely achieve "the aim sought by continuance" – the completion of adequate discovery. Due to the tragic and unexpected death of Dave Kleiman, there is a significant information gap between Plaintiffs and Craig as Plaintiffs have very little firsthand knowledge of Dave and Craig's early efforts to create Bitcoin, mine a significant amount of bitcoin, and create blockchain IP. Accordingly, Plaintiffs need discovery (including some international discovery) to gain admissible evidence of Defendant's admissions to others and to obtain third party knowledge concerning Dave and Craig's shared bitcoin assets.

Third, since Plaintiffs are moving months before trial, there will be little or no "inconvenience to the Court, the non-moving parties, and the witnesses involved," since travel

plans have yet to be made. Indeed, considering that Craig contemplated "well beyond 365 days" for discovery, this Court should carefully scrutinize any attempted claim of prejudice. Fourth and finally, Plaintiffs will suffer extensive harm if this motion is denied, as they would be forced to proceed to trial without documents and deposition testimony critical for effectively trying this case.[4]

Finally, Craig has repeatedly lied to this Court under oath,[5] and Plaintiffs should not be required to accept Craig's word about the existence and relevance of requested materials. His proclivity for making false statements and for altering and forging documents has been often recognized by government agencies, his peers, and the press. (*See* ECF No. [83] ¶110.) In light of Craig's established pattern of misconduct, this Court should take especial care when evaluating any declaration he may submit in opposition to this motion.

Plaintiffs are eager to try this case at the earliest possible date, but they need to obtain adequate discovery to effectively prepare this case for a jury trial. Defendant should not be allowed to *run out the clock* or otherwise force Plaintiffs to a premature trial. Plaintiffs' requests are reasonable and timely, and this motion should be granted.

---

[4] In cases where a continuance was denied, there was typically a last-minute motion that would cause major inconvenience, the result of a clear lack of diligence by the movant. *See*, *e.g*., *Cazorla Salinas v. Weinkle*, 2015 WL 11198231, at *2 (S.D.Fla., 2015) (Bloom, J) (continuance denied when requested on the day of trial with "thirty jurors waiting outside the courtroom door); *Jacobson v. R.J. Reynolds Tobacco Co*., 2013 WL 12094890, at *2 (S.D.Fla., 2013) (Ungaro, J.) (continuance would create a "serious impediment in the Court's ability to efficiently manage its docket" and force witnesses to "incur the additional burden of having to reschedule their own affairs").

[5] As the Court may recall, in his very first submission to this Court, Craig falsely testified that he had "never been an agent of W&K or any Florida business," "never been a director, member, shareholder, officer, employee, or representative of W&K or of any Florida business," and "never exercised authority or control over W&K or any Florida business." ECF No. [12-2] at 2. It was later revealed that he had testified in Australia that he owned 50% of W&K, had exercised authority over W&K, and had explicitly (and repeatedly) held himself out as W&K's "authorized agent" and "technical contact." ECF No. [24-4] at 4-5, 45-46, 50, 56, 64, 71, 76-77, 83-84, 90; ECF No. [24-30]; ECF No. [24-19]. Craig later submitted a second perjured declaration alleging that he had no documents in his possession "from any ATO investigation," and that any such documents would be in the possession of his attorneys "in Australia." DE 33-3 at 3-4. He now admits this was incorrect and claims he was "mistaken" in his declaration. ECF No. [127] at 7. Finally, he claimed "national security" was at issue to avoid answering questions at his deposition, later to admit there was no such concern, but instead – a "personal security" issue.

## CONCLUSION

In light of the forgoing, Plaintiffs request the Court grant a six month continuance in accordance with the specific proposed scheduling order attached hereto to bring this complex case within the schedule contemplated by S.D. Fla. L.R. 16.1A.2

### S.D. FLA. L.R. 7.1 CERTIFICATION

In accordance with S.D. Fla. L.R. 7.1(a)(3), counsel for Plaintiffs conferred with Defendant's counsel who opposes the relief sought here.

Respectfully submitted,

Dated: April 15, 2019

*/s/ Velvel Freedman*
Velvel (Devin) Freedman, Esq.
Florida Bar No. 99762
BOIES SCHILLER FLEXNER LLP
100 SE Second Street, Suite 2800
Miami, Florida  33131
Telephone:  (305) 539-8400
Facsimile:   (305) 539-1307
vfreedman@bsfllp.com

Kyle W. Roche, Esq.
*Admitted Pro Hac Vice*
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300
kroche@bsfllp.com

*Counsel to Plaintiff Ira Kleiman as Personal Representative of the Estate of David Kleiman and W&K Info Defense Research, LLC*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 15, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document

is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

<u>*/s/ Velvel Freedman*</u>
VELVEL (DEVIN) FREEDMAN