# EXHIBIT 4

```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                      WEST PALM BEACH DIVISION
                      CASE NO. 18-80176-CIVIL-BLOOM
 3

 4    IRA KLEIMAN, as Personal          West Palm Beach, Florida
      Representative of the
 5    Estate of David Kleiman,
      et al.,
 6
                      Plaintiffs,        March 14, 2019
 7
            vs.
 8
      CRAIG WRIGHT,
 9
                      Defendant.         Pages 1 to 89
10    _____

11
                      DISCOVERY STATUS CONFERENCE
12          BEFORE THE HONORABLE BRUCE E. REINHART,
                   UNITED STATES MAGISTRATE JUDGE
13            (TRANSCRIBED FROM DIGITAL AUDIO RECORDING)

14

15    APPEARANCES:

16
      FOR THE PLAINTIFFS:       DEVIN FREEDMAN, ESQ.
17    (Appearing               BOIES SCHILLER FLEXNER, LLP
       Telephonically)         100 Southeast Second Street
18                             Suite 2800
                               Miami, Florida 33121
19
                               KYLE ROCHE, ESQ.
20                             BOIES SCHILLER FLEXNER, LLP
                               333 Main Street
21                             Armonk, New York 10504

22
      FOR THE DEFENDANT:        ANDRES RIVERO, ESQ.
23    (Appearing               ZAHARAH R. MARKOE, ESQ.
       Telephonically)         ZALMAN KASS, ESQ.
24                             RIVERO MESTRE, LLP
                               2525 Ponce de Leon Boulevard
25                             Suite 1000
                               Coral Gables, Florida 33134
```

```
 1   TRANSCRIBED BY:          LISA EDWARDS, RDR, CRR
                              (305) 439-7168
 2                            Reporterlisaedwards@gmail.com

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
 1            THE COURT:  Good afternoon.

 2            This is Case No. 18-80176, Ira Kleiman, as Personal

 3  Representative of the Estate of David Kleiman, and W&K Info

 4  Defense Research, LLC, versus Dr. Craig Wright.

 5            May I have counsels' appearances, please, starting with

 6  counsel for the Plaintiffs.

 7            MR. FREEDMAN:  Good afternoon, your Honor.  Devin

 8  Freedman on behalf of the Plaintiffs.

 9            THE COURT:  Mr. Freedman, good afternoon.

10            MR. ROCHE:  Good afternoon, your Honor.  Kyle Roche,

11  also on behalf of the Plaintiffs.

12            THE COURT:  Mr. Roche, good afternoon.

13            On behalf of the Defendant?

14            MR. RIVERO:  Good afternoon, your Honor.  Andres Rivero

15  appearing, Judge, appearing for Dr. Wright and pinch-hitting

16  for Amanda McGovern, who is recovering from a medical emergency

17  this week, Judge.

18            THE COURT:  Oh, no.  I'm sorry to hear that.

19            Well, Mr. Rivero, I know this has been Ms. McGovern's

20  case all along.  So I'm sure you can ably stand in.  But please

21  tell her we all hope she's feeling better.

22            MR. RIVERO:  Thank you, Judge.  I'll do my best.

23            MS. MARKOE:  Zaharah Markoe, also for Dr. Wright.

24            MR. KASS:  And Zalman Kass, also for Dr. Wright.

25            THE COURT:  Very well.  Welcome to all three of you.
```

1    Good to have you.

2          Okay.  So this is before the Court on the joint

3    discovery motion that was filed.

4          But also, Judge Bloom had emailed me today and asked me

5    to also handle the confidentiality stipulation issue, which is

6    at -- I forget -- Docket Entry whatever.  So in any event,

7    we'll deal with that today as well.

8          And actually, let me deal with that one first.  115.

9    Okay.  Let me deal with the confidentiality stipulation.  I had

10   talked to the parties about that last time.  They did submit

11   each proposal.  The only difference was the debate as to

12   whether folder names should be given without first having the

13   approval of the Plaintiff.

14         Mr. Freedman, is that correct?  That's the only

15   remaining objection that you have?

16         MR. FREEDMAN:  That's correct, your Honor.  I'm happy

17   to elaborate on that.  But it seems the Court has a handle on

18   it.

19         THE COURT:  I read the pleadings that were filed, and I

20   understand your concern.  But I'm going to overrule the

21   objection.  I'm going to enter the confidentiality order that

22   the Defendant proposed.

23         And here's why:  If there's such a folder that you're

24   concerned about that by the nature of the name on the folder it

25   suggests there might be privileged material inside, I know

1    Mr. Rivero and his firm are going to be the kind of ethical,

2    professional lawyers they're supposed to be and they're not

3    going to look at it anyway.

4         So I think, while I respect your concern and I

5    understand your concern, I am -- I have no expectation that

6    that concern is ever going to come to be, because I think the

7    other side is going to be careful about it.  So I'm going to

8    overrule the objection and I'll enter the confidentiality order

9    proposed by the Defendants -- Defendant.  So we'll dispose of

10   that.

11        Let me --

12        MR. FREEDMAN:  Thank you.

13        THE COURT:  -- then turn to the discovery memorandum at

14   Docket Entry 114.  And we'll just go through them one at a time

15   and see where we end up.  Okay?

16        So the first issue in the discovery memorandum is, when

17   I boil it down, it appears to me to be the Defendant's request

18   that we get a firm date by which the Plaintiffs will be able to

19   produce Mr. Kleiman's -- no; I got this backwards --

20   Plaintiffs' request for a firm date by which Defendants will be

21   producing ESI discovery.

22        Mr. Freedman, have I -- can I confirm that that's what

23   you're asking for in the first objection?

24        MR. FREEDMAN:  Yes, your Honor, except not so much ESI

25   discovery, but [inaudible] there hasn't been any production of

```
 1    ESI discovery.  It's more focused than that.  It's on the exact
 2    email between the decedent Kleiman and Dr. Wright.
 3           And, your Honor, I'm trying -- I was trying to
 4    [inaudible], but I'm just trying to get my discovery.  And I
 5    just haven't been able to.  I've been getting the run-around.
 6    And I think we just need some deadlines to just get this thing
 7    out there.
 8           I mean, we're fine working the center of this case
 9    outward.  This is the epicenter of the case, the communications
10    of the two parties that formed the [inaudible] partnership that
11    formed W&K, that created all these assets.
12           We served -- this is the first request for production
13    ever served.  It was served nine and a half months ago.  Two
14    and a half months after this discovery date listed:  Nothing.
15    41 days after the Defendant agreed to produce the emails:
16    Nothing.
17           And just to illustrate a little bit about this
18    run-around that I'm talking about, [inaudible] we don't have
19    the emails because he couldn't produce them without service
20    [inaudible].
21           And that's hogwash, as they like to say where I come
22    from.  I mean, we don't ask for [inaudible], and yet the
23    Plaintiff has produced all emails between Ira as the personal
24    representative and Craig Wright, between Ira and Ramona Watts,
25    between Ira and Andrew Summer, between Ira and Steve Matthews,
```

```
 1   and I'm pretty sure between Ira and Dave, but we have to run a
 2   couple of searches just to nail down all of them.
 3        We need the Plaintiff -- we need the Defendant to give
 4   us those emails.  We know what they are.  And the Defendant
 5   corresponded with Dave Kleiman for years.  He knows what those
 6   are.  It's a simple [inaudible], to/from and produce them.
 7        And your discovery called for 88 days, your Honor.  How
 8   is [inaudible] represents [inaudible] documents in the case?
 9   How am I supposed to know what more documents I need for a
10   second charge, so to speak, a document without knowing what
11   documents [inaudible]?
12        And what it [inaudible] for me is just frustration that
13   I can't get the discovery from the Defendants, that Plaintiffs
14   have produced over double the amount of documents Defendants
15   have to date, that despite the fact that this is the most
16   important issue, it's not the only problem we're having again
17   from Defendants.
18        We have asked; and we haven't been told what emails
19   accounts are being collected, what agents are being collected
20   from, what companies he collected from.
21        We can't get search term hit reports from the
22   Defendant.  The Defendant has stipulated to sign deadlines and
23   then says, you know, that there was confusion.
24        Okay.  Fine.  You'd think we'd get it two, three days
25   later.
```

1            No, no.  Two weeks is when the Defendant says we'll get

2    it.

3            I mean, the Defendant comes before the Court.  There's

4    30 trusts and companies [inaudible] produced.  We [inaudible].

5    But it doesn't give us the hit reports to let us know how that

6    really breaks down.

7            Is it one company generating a 90 percent hit?  Maybe

8    we could take that out and we're left with 1,000 documents.

9            The fact -- I guess [inaudible] another date.  But

10   we're in the dark; and we're trying to get out of the dark so

11   we can figure out what's going on.

12           The first [inaudible] are documents.  And we need them,

13   like, yesterday.  We really did.

14           THE COURT:  Mr. Rivero?

15           MR. RIVERO:  Yes, Judge.

16           I've obviously been talking to my folks and read a cold

17   record, so I may not bring as much heat to this.  But, Judge, I

18   think there are a couple of serious problems going on that we

19   need accommodation from the Plaintiff on to get this going in

20   the right direction.

21           We have, as counsel just pointed out -- we have

22   completed the review of all of our copy materials, and we have

23   produced most of that.  I think we're on -- what's remaining is

24   two boxes of quality control, the quality control to finish

25   that production.  They're about to be done by the end of the

1    week; if not, early next week.

2          But, Judge, on the ESI -- and I've read carefully the

3    transcripts -- the Court has described the process of moving

4    from a bull's-eye to outer layers.  The Court directed both

5    sides to work on search terms, Judge.  Everybody does these big

6    document cases.  And for at least the last ten years, our

7    practice has been dominated by search terms in big

8    documentations.

9          We have -- we proposed search terms to Plaintiffs'

10   counsel on February 25, Judge.  They did not respond to the

11   proposed search terms until March 5.

12         I do not believe the response was the right way to deal

13   with it, because they didn't suggest we'll accept, you know, 1,

14   3, 7, et cetera.  They instead suggested an entire new set, so

15   that effectively, Judge, a week ago yesterday, we were still at

16   the point of -- we had search terms and they hadn't sent us

17   search terms.

18         Ms. Markoe had to sit with Defendants.  And so we

19   agreed with what we thought was what the Plaintiff was telling

20   us, the bull's-eye was, which was initially search terms that

21   were related to Dave -- for example, Judge, Dave within three

22   of Kleiman and a set of search terms like that on Friday,

23   Judge, because there's an apple-and-oranges problem.

24         We thought that was the bull's-eye that was being

25   identified by the Plaintiff, was a certain set of search terms

```
 1    that we agreed on both set -- both search terms, including

 2    those proposed by the Plaintiff last Wednesday.

 3           On Friday, for the first time, for the first time,

 4    Judge -- and I have the email in front of me -- counsel wrote

 5    to Ms. Markoe, saying:  Where are my emails?

 6           Ms. Markoe then said:  I want to meet and confer.

 7    We're meet and conferring on other issues.

 8           And the first issue raised at the meet and confer on

 9    Monday is:  Where are the emails?

10           Ms. Markoe, understanding that to mean, "Okay, you want

11    the emails first, now that we thought you have prioritized" --

12    which, by the way, the hits are, if I remember correctly, about

13    18,000, of which -- sorry -- Ms. Markoe is correcting me.  How

14    many -- on the day -- pardon me one second, Judge.  I will have

15    to confer on some of the details.

16           Let me just say, Judge, I can't say the exact name --

17    number on that set.

18           But, Judge, based on what was said by counsel on

19    Monday, Ms. Markoe shifted to look at -- Judge, it was 58

20    different domain names identified for the first time last

21    Wednesday by the Plaintiff, that the first 15 items on those

22    search terms are domain names, which were expected to be

23    associated with emails.

24           We ran the hit report immediately.  Ms. Markoe asked

25    the -- [inaudible] the whole process of it.  That was done --
```

1   requested after the meet and confer.  So we had it by Tuesday.

2   She batched out those 58 domain names on Tuesday, Judge.  But

3   we're getting -- Tuesday or Wednesday, Judge.

4          We're getting a demand for a date certain on something

5   that was identified for the first time as a bull's-eye last

6   Friday.  And we're working with the search terms.

7          But even right now, you know, I'm trying to describe

8   what the problem is here.  There's an apples-to-oranges

9   problem.  We're working from search terms.  That's something

10  that every sophisticated litigator uses in these kinds of

11  massive document cases.

12         But right now, when counsel say, "Forget about search

13  terms; I want the to/from" -- but, Judge, to/from what email

14  addresses?  He hasn't provided us a single email address.  We

15  can't just run the names Dave Kleiman and Craig Wright.  We get

16  very large hits on that search.

17         So if they want -- as I sit here now, I'm not sure we

18  have the right priority as we speak because we've now attached

19  58 domain names.  We have hits that are approximately 15,000

20  documents.  We have a team of [inaudible], Judge, that are

21  already working on these 15,000 documents.

22         If that's what they want, they can tell us that.  But

23  they can't just start this hearing, which is about an orderly

24  set of things, saying, "We're getting the run-around" because,

25  Judge, you know, I don't like using that kind of language in

1    this kind of situation.  But that could be said each way.

2         We simply need to know which search terms are they, are

3    the ones that they consider the bull's-eye?  And we're going to

4    work on that as fast as humanly possible.

5         THE COURT:  Okay.  Mr. Freedman, I'll give you the last

6    word.

7         MR. FREEDMAN:  Your Honor, you know, that's true with

8    ESI.  We understand that for the general ESI.  I'm talking

9    about just emails.

10        The facts are in this case that our client is dead.

11   And Dr. Wright knows the emails better than we do.  He knows

12   the cyber [inaudible].  They've had emails that they didn't use

13   regularly.  They may have used emails [inaudible].

14        A search to or from the [inaudible] of Dave Kleiman,

15   that he knew were Dave Kleiman's emails.  It says

16   dave@davekleiman.com.

17        You know, when we agreed to produce them 41 days ago,

18   it would have been a [inaudible] production.  And you know, if

19   they didn't have all of them out, no problem.  A rolling

20   production.

21        But to say that they couldn't even start producing Dave

22   Kleiman's emails to Craig Wright until the email search terms

23   just doesn't -- [inaudible] trying to tell which emails we know

24   about and which ones we don't.  It's absurd.  Our client's

25   dead.

```
 1              THE COURT:  Okay.  Well, have you -- okay.  So with
 2    what I'm hearing you say, though -- and I hear both sides.  But
 3    Mr. Rivero is asking for prioritization here.
 4              So what I hear you saying, Mr. Rivero, is you'd like to
 5    prioritize email addresses for Dave Kleiman to and from, that
 6    that you believe that should be the first thing they do and
 7    presumably easily done because there shouldn't be privileged
 8    communication there.  So any review should be minimal.  And you
 9    think that should be done quickly and you'd like to prioritize
10    that first.
11              Is that correct?
12              MR. RIVERO:  Well, that's why we asked -- we thought we
13    had that agreement in place --
14              THE COURT:  Okay.
15              MR. RIVERO:  -- in our meet and confer on February 1st.
16              THE COURT:  Okay.  Well, listen, the past is the past.
17    And I can't change the past.  So let's just move forward from
18    here.
19              Mr. Rivero, Ms. Markoe, if that's the prioritization
20    request, how quickly can you do that?
21              MS. MARKOE:  Your Honor, we have already started
22    batching out the emails, and we will produce them as quickly as
23    we can on a rolling basis.  There are a large number of search
24    term hits that hit on the various domain names that Plaintiffs
25    have provided to us.  And that's what we have batched out.
```

```
 1            And we'll get that done on a rolling basis as quickly

 2     as possible.

 3            THE COURT:  Okay.

 4            MR. RIVERO:  Judge, if I may, if I may, because I

 5     really don't want confusion here:  Ms. Markoe's referring to 58

 6     domain names supplied by the Plaintiff.

 7            What I'm hearing right now the Plaintiff say is:  We

 8     know what the -- essentially what I'm hearing is:  We know --

 9     our guy has to know what the email addresses are.  Let me know

10     the addresses you know and give us all the email addresses.

11            That's not the same as the 58 domains.  If they want to

12     participate in trying to figure that out, that's fine.

13     [Inaudible], Judge, I am glad to commit to ask -- well, one,

14     the one he just said, davekleiman@davekleiman.com immediately.

15     See what the hits are on the rest.

16            But if there are other -- if there are others, we'll

17     certainly ask our client.  We'll do that first.

18            Whatever -- but what I want the Court to understand is,

19     even right now when we're talking, the first time that we've

20     been told the specific email address that [inaudible] is right

21     now on this phone call.

22            THE COURT:  Okay.

23            MR. RIVERO:  I --

24            MR. FREEDMAN:  Your Honor, Mr. Rivero, I know you

25     weren't participating.  So I don't blame you for this.
```

1          But that's -- that's not -- not accurate.  We provided

2     these, you know, last week when we were at our meet and confer.

3     Many email addresses have been provided, actual [inaudible]

4     email addresses.

5          And just so I can clarify, so it's clear what we're

6     asking:  Yes, we gave you email addresses and domains that Dave

7     owned.  And so we asked you to search those.

8          To the extent that you know that your client knows of

9     additional emails, we're seeking those, too.  And just because

10    you haven't identified them as a search term doesn't -- and the

11    case law is pretty clear on this -- doesn't mean the Defendant

12    doesn't have to produce them.

13          THE COURT:  And I think that --

14          MR. FREEDMAN:  And the Defendant --

15          THE COURT:  Hold on.  Hold on.  Mr. Freedman, hold on.

16          I think I heard Mr. Rivero just say he agrees with you,

17    that they will go talk to their client and ask -- they'll show

18    him the ones you've given him and he'll ask their client to

19    identify any other emails that he recalls using with Dave

20    Kleiman, and they will produce all of those.

21          Did I hear you correctly, Mr. Rivero?

22          MR. RIVERO:  Yes, Judge.  Absolutely.

23          THE COURT:  Okay.

24          MR. RIVERO:  Absolutely.

25          The only thing I would add, Judge, is, you know, again,

1    more heat than light, the search terms that are being referred

2    to were provided to us last -- 58 domain names provided last

3    Wednesday.

4         We'll ask our client. We absolutely agree to that.

5    And we'll start immediately, Judge.

6         THE COURT: Okay. All right. You know, and do a

7    rolling production as quickly as you can. I can't order you --

8    I'm not going to order a termination date, because I just don't

9    know. I don't have any sense.

10        But continue to be talking to one another. Share the

11   hit reports. Give Mr. Freedman a sense of, you know, how many

12   emails come back on the hit report so he can continue to

13   prioritize. Maybe he wants the davekleiman@davekleiman.com

14   ones first. Maybe he wants those last. Maybe there's one

15   account that has 90 percent of the emails and he wants to

16   prioritize that.

17        I can't micromanage this process from where I sit. But

18   I think we now have an understanding of the prioritization and

19   we have a commitment to look for the things that Mr. Freedman

20   is asking for. And all I can do is direct you to get it out as

21   soon as possible.

22        So that's all I can do on that one.

23        Let me turn to --

24        MR. FREEDMAN: Judge --

25        THE COURT: Yes.

1           MR. FREEDMAN:  Could we have a date for the first batch

2    of production?  Maybe Mr. Rivero would be able to commit to a

3    first date of the rolling production.

4           THE COURT:  Well, I think he said --

5           MS. MARKOE:  And you --

6           THE COURT:  Ms. Markoe?

7           MS. MARKOE:  Sorry.  No.  Go ahead, your Honor.

8           THE COURT:  No.  Go ahead.  I was going to call on you.

9    So go ahead.

10          MS. MARKOE:  So, you know, we have these batched out in

11   batches of 500.  I think that's -- you know, it depends on how

12   quickly our reviewers get through each batch.

13          I don't know what would be sufficient for Plaintiff to

14   be considered a fair start, whether that's one batch, two

15   batches, five batches, you know.  And then there is some time

16   after the review -- there is some QC time that needs to happen.

17   And then our ESI vendor -- he can -- we can try to get it

18   faster.  But usually, it'll be -- the time that they're willing

19   to commit to is a 48-hour lead time.

20          THE COURT:  Okay.

21          MS. MARKOE:  So once the documents are reviewed and

22   QC'd, then, you know, it'll be sort of a 48-hour lead time

23   before we can get it to them.

24          THE COURT:  All right.  So here's what I'm going to

25   direct you to do:  Whatever you have that's good to go by 5:00

1    on Monday, please send out on Monday.  And then sort of do that

2    on a rolling basis every 48 hours or so until Mr. Freedman gets

3    everything.  Okay?

4         MR. FREEDMAN:  Thanks, your Honor.

5         THE COURT:  Great.  Okay.

6         So on to the next one, which is Request For Production

7    No. 1, having to do with documents that existed in December of

8    2013 which estimate the value of the Defendant's Bitcoin

9    holdings at that time.

10        Mr. Freedman, help me out with the relevance factor

11   there.  Is this just an attempt to determine what Bitcoin he

12   had such that -- to support your argument that some of that

13   Bitcoin belonged to Mr. Kleiman?  Or is there some other theory

14   behind this?

15        MR. FREEDMAN:  Well, that's right, your Honor.  You

16   know, at the first hearing, the Court said that it would let us

17   trace forward, but not backwards.  So we went to 2013.  It did

18   decline in value in 2013.

19        Remember, Plaintiffs' contention is that the

20   [inaudible] had just started in 2008, circa 2008.  The joint

21   mining continues from that time until W&K was created in 2011,

22   then continued thereafter.

23        So it couldn't help the Defendant -- I mean, I'd be

24   willing to go back even to the day of death, I guess, if the

25   Court's inclined to do that.  But Bitcoin that belonged to

1   [inaudible] at that point who have been [inaudible] property of

2   the partnership.  And, I mean, that's Plaintiffs' allegation,

3   obviously.

4          And then we need to trace forward to see where it went.

5   This is our part of our conversion claims which they're

6   [inaudible] claimed and things like that.

7          So it's just an attempt to find the partnership's

8   assets.  Remember --

9          THE COURT:  Right.  Now --

10         MR. FREEDMAN:  -- this does not [inaudible] the

11   portion.  It isn't like an [inaudible] feed that, you know,

12   held its own documents.  These were two people, you know,

13   carrying on business for profit together, but in separate

14   places.

15         So, I mean --

16         THE COURT:  No.  I understand.  I understand.

17         MR. FREEDMAN:  So that --

18         THE COURT:  I was a little confused, I think, when I

19   read your request, that you said "Produce any documents which

20   estimate the value of the Bitcoin holdings."

21         I thought what you were asking for was just essentially

22   a listing of all the Bitcoin that was owned on December 31st,

23   2013.  Isn't that really what you want?

24         MR. FREEDMAN:  Yes, your Honor.  That's a better way to

25   phrase it.  That's what I intended to say.  And that is a

```
 1    better way to phrase it.
 2         THE COURT:  Okay.  So assuming that's the request, for
 3    a list of all the Bitcoin held by Mr. Wright directly or
 4    indirectly on December 31st, 2013 -- let me turn to the
 5    Defendant.
 6         MS. MARKOE:  Your Honor, I think that we're sort of
 7    getting back to where we were the first hearing.  And this is
 8    very -- Amanda's point to me, and I think she made it quite
 9    well -- which is that this is still putting the cart before the
10    horse.
11         Until they can establish or provide a shred of evidence
12    that there was a piece of -- that there was a public address
13    that was Dave Kleiman's and then that Craig Wright
14    misappropriated in some manner, then they get that.
15         And second of all, I think that this point that your
16    Honor made at the last hearing was excellent in that to the
17    extent that they're saying, for instance, with Exhibit -- I
18    believe it's 15 -- that there are email addresses that
19    they're -- sorry; not email addresses -- public key addresses
20    that they're asserting that Dave Kleiman had an interest in,
21    well, they have that information.  The ledger is public.
22         They can do their searching on what happened to
23    those -- to those -- to the Bitcoin associated with those
24    public addresses.
25         THE COURT:  Right.  I hear you.
```

1          But my point was, that was a portion of them.  They're

2     asking here for all, all of them.

3          And, you know, to your point, Judge Bloom has found

4     that they have pled a plausible claim here.  Once they've pled

5     a plausible claim, they're entitled to discovery to support

6     their claim.  It would seem to me in support of that claim what

7     Bitcoin existed on December 31st, 2013, and where it's gone

8     since then is relevant to their claim.

9          So the question then becomes proportionality and

10    burden.

11         So I know Ms. McGovern is really the one who's been

12    running with this.  I don't have a sense, and I'd be happy to

13    give you a window of time to collect this information.  But how

14    difficult would it be to come up with this information?  I

15    assume it's just a list of Bitcoin wallets from December of

16    2013.

17         MS. MARKOE:  Well, it's a list of -- it would be a list

18    of public addresses, but it would identify Craig Wright as

19    being the owner of those addresses, which sort of like opens

20    the door to, you know, a lot of financial information, and

21    without any evidence that all of those -- or what portion of

22    those Dave Kleiman had an interest in.

23         And really, the key here is Dave Kleiman and what Dave

24    Kleiman had an interest in.  And to the extent that there is a

25    specific allegation regarding a specific key that Dave

 1    Kleiman -- that Dave Kleiman had an interest in, you know,

 2    we've already -- we've already -- actually, with our first

 3    terms, there was a couple that were identified; and Plaintiffs

 4    have identified others that we have agreed to search for,

 5    documents related those public address keys.

 6          So, you know, I think anything further than that really

 7    goes beyond what is necessary or appropriate or relevant to

 8    this -- the allegations in this case.

 9          THE COURT:  Okay.  I hear you.

10          I think it's relevant.  As I said, the question is

11    whether it's proportional to require production of all of them,

12    given that they have some of them from that other exhibit,

13    which is the issue I was looking at last time, and whether it

14    would be unduly burdensome for you to have to produce the

15    balance of the Bitcoin wallet.

16          But I don't think you get to say, "They have to tell us

17    which ones were Dave's, and then we'll tell them if they're

18    right or not."

19          I think they're entitled to work backwards to that

20    under the unique circumstances of this case.  I think they're

21    entitled at some point to ask your client in deposition to go

22    through the list of Bitcoin wallets and identify which ones are

23    his and which ones are Mr. Kleiman's or were Mr. Kleiman's at

24    some point.

25          So -- but I will -- I understand Ms. McGovern's not on

1    the call.  I understand she's really the person on top of this.

2    And I don't think this is something that needs to be resolved

3    today.

4         But I will give you an opportunity to go back and look

5    through it and determine whether you believe it is unduly

6    burdensome to have to produce this information.  And if you do,

7    I'll allow you to file a motion to that effect.

8         MS. MARKOE:  Okay.

9         THE COURT:  All right?

10        MS. MARKOE:  Thank you, your Honor.

11        THE COURT:  Sure.  Certainly.

12        As to Request For Production No. 3, which relates to

13   the Bitcoin-related and blockchain-related IP:  Mr. Freedman,

14   is that the same argument, just trying to establish a baseline

15   of what existed and then try to work forward from that?

16        MR. FREEDMAN:  Exactly, your Honor.

17        THE COURT:  And I did see that also merges with Request

18   No. 4, which is sort of, "Tell me what you had in 2013 and then

19   tell me who you've transferred it to since then."

20        MR. FREEDMAN:  Correct, your Honor.

21        THE COURT:  Okay.

22        MS. MARKOE:  And, your Honor, what I would like to

23   point out is to the extent that any of that IP related to --

24   related to Dave Kleiman, we agreed to produce that.

25        I mean, with regard to, I think, Request No. 3, we're

1  not agreeing to produce, you know, finance -- [inaudible]

2  patients' financial statements, tax returns, life insurance

3  applications, financial agreements.

4          THE COURT:  I think they've backed off of that.

5          MS. MARKOE:  Right.

6          But, you know, with regard to Request 4, we did agree

7  that we would search for documents [inaudible] that related to

8  any assignment of rights and intellectual property that refer

9  or relate to Dave Kleiman or any trust in which he was a

10  trustee or beneficiary and W&K, which is for -- what we

11  understood your Honor had ordered the first tranche of

12  discovery to be in any event.

13          So that's -- that's what we've -- that's our position.

14          THE COURT:  No.  I understand that.

15          And never has a word that I've said been quoted so much

16  as my phrase "The initial tranche of discovery should be

17  limited to."

18          But nevertheless, I emphasize that the important word

19  in that sentence was "initial."  I wasn't saying all discovery;

20  I was saying initial discovery.

21          So if what you're telling me is that as a starting

22  point as to 3 and 4 you're going to produce what you've

23  identified, what you're going to self-identify as what used to

24  belong to Mr. Kleiman or that there's some connection to

25  Mr. Kleiman directly or W&K, I think that's a good first step.

    1          But I just -- I do think ultimately we'll have to

    2   confront the question.  Just because it doesn't have

    3   Mr. Kleiman -- the theory of the case is, just because it

    4   doesn't have Mr. Kleiman's name on it doesn't mean it belongs

    5   to Dr. Wright and doesn't belong to Mr. Kleiman.

    6          So we get to the question of:  How were you

    7   differentiating the -- what belongs to Mr. Kleiman from what

    8   belongs to Dr. Wright?

    9          Let me ask you, when is Dr. Wright's deposition

   10   scheduled?

   11          MR. RIVERO:  Judge, we've proposed April 4th.  But I

   12   think that there's -- there's an issue on the Plaintiffs' side

   13   in terms of April 4th.

   14          THE COURT:  Mr. Freeman, when do you anticipate you'll

   15   be able to take that deposition?

   16          MR. FREEDMAN:  Your Honor, you know, April 4th was a

   17   bad day.  And we asked if they could propose at least three

   18   alternate dates.  I would ask if they can do that.  If they

   19   can't, I would just find someone else to cover my hearing on

   20   April 4th.

   21          It's less than ideal, because in addition to having a

   22   hearing the Thursday, I may not be able to make it back to

   23   Miami for Sabbath with my family --

   24          THE COURT:  Right.

   25          MR. FREEDMAN:  -- which I will do to get this done

1   because the case takes up more time than that weekend in London

2   will.  And I think this will move it along.

3          But if we could just get a couple dates proposed, and

4   I'll go out there as soon as I can.  I'll go out there this

5   month.

6          THE COURT:  Okay.

7          MR. RIVERO:  Judge, we've already asked for dates the

8   following week.  Ms. McGovern and I both have issues for the

9   prior week, which is part of the problem.  It's -- but we're

10  asking for dates for the following week.  Dr. Wright's supposed

11  to be in Japan the following week.  We'll -- we'll propose more

12  dates as soon as we can get some.

13         THE COURT:  The reason I asked that is, you know, at

14  some point -- and I think I said this the last time -- on some

15  of these issues, I think Dr. Wright's answers to questions at

16  his deposition are going to guide what's cumulative and what's

17  not, which is why we're doing his deposition early on.

18         So as to the assignment of Bitcoin or

19  blockchain-related IP, so the Plaintiff is saying they're

20  agreeing to produce anything that they can identify that

21  relates to or refers to Mr. Kleiman or any trust or beneficiary

22  or W&K.  Is that correct?

23         MS. MARKOE:  Yes.

24         THE COURT:  I'm reading here on Page 4 of the joint

25  discovery request.  Okay.

1        For the time being, I'm not going to compel anything

2   more than that.  But I'm going to reserve until after

3   Dr. Wright's deposition and revisit this question based upon

4   his answers to questions at the deposition.  And I'll give

5   Mr. Freedman some leeway at the deposition to explore this

6   topic.

7        All right.  Let's shift to --

8        MR. FREEDMAN:  Thank you.

9        Your Honor -- and this is Mr. Freedman.

10        THE COURT:  Yes.

11        MR. FREEDMAN:  As to Request For Production No. 1 and

12   3, I'm sensitive to the fact that Ms. McGovern was ill.

13        But could the Court with that in consideration set a

14   date by which the Plaintiff actually has to either move for --

15   you know, for [inaudible] or not?  Again, it doesn't have to be

16   that week.  We could take it [inaudible].  I just want to have

17   a date by -- I don't want this to be stuck in limbo and, you

18   know --

19        THE COURT:  Yes.

20        MR. FREEDMAN:  -- they never have to take a position on

21   it.

22        THE COURT:  Yes.

23        Here's the deal:  I want that produced before

24   Dr. Wright's deposition so we can all work backward from

25   whenever that will be.

 1          But if the Plaintiff -- I'm sorry.  If the Defendant is

 2     going to object on burden grounds to request for production --

 3     to the request for production that I've already ruled on --

 4          When do you expect Ms. McGovern will be in good health

 5     and back to the office, Mr. Rivero?

 6          MR. RIVERO:  Judge, I'm hoping by Monday.

 7          It could be tomorrow, but I'm hoping certainly by

 8     Monday.

 9          THE COURT:  Okay.  How about if I give you until the

10     next week to file -- if you have any objections on those, file

11     one by the end of next week.  And if we need to have a hearing,

12     I'll set a hearing at the very beginning of the following week

13     so I can resolve any objections.

14          MR. RIVERO:  Thank you, Judge.

15          MR. FREEDMAN:  Judge, just so the record is clear,

16     that's Requests For Production 1 and 3.  But Request For

17     Production 4, the Court is not compelling anything additional

18     at this time?

19          THE COURT:  That's correct.  I'm reserving on that

20     until after the deposition.

21          Okay.  As to --

22          MR. FREEDMAN:  Thank you, your Honor.

23          THE COURT:  As to 16, 18 through 27, I apologize.  I

24     have no idea what Appendix N, as in Nancy, is.  So it's hard

25     for me to prepare for this topic -- these topics, because I

```
 1    have no idea what you're talking about.

 2              So, Mr. Freedman?

 3              MR. FREEDMAN:  Your Honor, this is Mr. Freedman.

 4              And, you know, in my attempt to be concise, I realized

 5    that I overplayed my hand here.  And I apologize.

 6              I think I can get the Court up to speed on it pretty

 7    quickly.  But if not, I'm happy to leave this set for the next

 8    hearing.

 9              What happened is, Appendix N is an attachment to

10    Dr. Wright's affidavit.

11              So, as the Court remembers from the -- from the amended

12    complaint, Plaintiffs allege that part of Dr. Wright's theft

13    and fraud of the estate was to go to Australia, file losses

14    against W&K and steal its intellectual property, title to its

15    intellectual property in other lawsuits.

16              THE COURT:  Right.

17              MR. FREEDMAN:  As part of those lawsuits where

18    Dr. Wright sued W&K for its intellectual property, he submitted

19    a sworn affidavit.  And part of that affidavit is a document,

20    an exhibit, which references various different documents in

21    support of its argument that W&K's intellectual property now

22    belongs to Dr. Wright.

23              And what Plaintiffs have done is pick out specific

24    documents referenced by that affidavit and say:  Please give us

25    those documents.
```

```
 1              Like, for example, the docket references ATO Request

 2     No. 2349.  So we said, "Please give us ATO Request No. 2349."

 3     So it's Plaintiffs' position that this must be relevant because

 4     it was submitted by Dr. Wright in his claim to W&K's

 5     intellectual property.  And it's not burdensome because it

 6     literally seeks one doc.

 7              THE COURT:  Okay.  Here's what I'd like to do:  I am

 8     going to -- here's what I'm going to do:  I am going to set

 9     another hearing -- let me set another hearing in this case.

10     How's that?  So we can work towards that.

11              How's everybody looking next Thursday the 21st in terms

12     of availability to do a followup hearing?

13              And Ms. McGovern can be present as well, hopefully.

14              Mr. Freedman, how does next Thursday look to you?

15              MR. FREEDMAN:  That's fine for me, your Honor.

16              THE COURT:  And Mr. Rivero, Ms. Markoe?  I know you may

17     not have Ms. McGovern's calendar there in front of you.  But as

18     best you know, does next Thursday work?

19              MR. RIVERO:  I would expect it to, Judge, and I would

20     plan to cover it.  I'm looking -- because I have a flight that

21     evening.

22              THE COURT:  Sure.

23              MR. RIVERO:  I just want to make sure I don't run

24     into --

25              THE COURT:  I'm no longer -- I am no longer,
```

```
 1    thankfully, in criminal duty next week.  So if you all wanted

 2    to do it in the morning, I could do it at 9:30 as opposed to

 3    the early afternoon.

 4              MR. RIVERO:  Let me ask Ms. Markoe.

 5              THE COURT:  Yes.

 6              MR. RIVERO:  Judge, I see my flight clear in the

 7    evening, so it really doesn't -- it's fine in the afternoon.

 8              THE COURT:  All right.  Mr. Freedman, any preference

 9    between morning or afternoon?

10              MR. FREEDMAN:  I'd prefer to do it in the afternoon,

11    your Honor, just because I have some things that morning of a

12    personal nature.

13              THE COURT:  No problem.

14              MR. FREEDMAN:  That could be rescheduled.

15              THE COURT:  No.  I wouldn't make you do that.

16              I've got another hearing at 2:00 for an hour and a

17    half.  So you can do 3:45 on the 21st?

18              MR. FREEDMAN:  That works for me, your Honor.

19              THE COURT:  Okay.

20              MR. RIVERO:  That's fine, Judge.

21              THE COURT:  And, Mr. Rivero, if it turns out there's a

22    problem because of Ms. McGovern's unavailability and you can't

23    cover it, you'll let us know and we'll try to work with you.

24              But with that said, I'm going to defer anything having

25    to do with Exhibit -- Appendix N, Exhibit N, whatever it is.
```

1   And I'd ask the Plaintiff to submit a copy of that to me so

2   that I can review it before the hearing.

3           MR. FREEDMAN:  Yes, your Honor.

4           THE COURT:  Okay.  Great.  That'll be helpful.

5           Okay.  So then we can jump ahead, then, to the Request

6   For Productions 40 and 41.

7           MR. FREEDMAN:  Your Honor, 36 and 37.

8           THE COURT:  Oh, I skipped that one.  You're right.

9   Thank you.

10          So here again, I was a little confused.  And I did go

11  back and reread the second amended -- the amended complaint

12  again.  It's still not clear to me why the -- what aspects of

13  the Australian tax investigation are relevant.

14          I understand to the extent that the Plaintiff is

15  arguing that Dr. Wright made statements during those

16  proceedings that may be admissions as to the Plaintiffs'

17  claims, particularly that, you know, Dr. Wright claims he

18  didn't own this or he did own that or whatever; but beyond

19  that, it's unclear to me what else about those proceedings are

20  relevant.  And as I read your request, I didn't really

21  understand the full theory of relevance.

22          So, Mr. Freedman, maybe you could clarify that for me

23  as to 36, 37, and I think 40 and 41.

24          MR. FREEDMAN:  Absolutely, your Honor.

25          I think the Court hit the nail on the head in that to

1    date, some of the admissions that the Plaintiffs have put

2    forward have come from statements that Dr. Wright and his

3    agents have made to the Australian tax office.

4          Unfortunately, we're a little in the dark like the

5    Court is on what exactly those proceedings were about because

6    we don't have access to all of them.

7          However, what we did in order to kind of shrink the

8    bull's-eye down, you know, as we heard from the Court, was to

9    take out some of the more sensitive individuals, like Ms. Lynn

10   Wright and Ms. Ramona Watts, which were both -- you know, the

11   former spouse and current spouse of the Defendant, and some of

12   the more, as the Defendant was calling, fallacious, you know,

13   [inaudible] documents [inaudible] and leave in -- so we said:

14   Give us documents that involve the Australian tax office.  As

15   we've seen, there are substantive admissions that go to the

16   core of Plaintiffs' claims in those documents.  But only

17   documents that also mention individuals or entities which we

18   know are relevant to the claims.

19         Many of these individuals in the list Defendants had

20   sworn are relevant to the lawsuit.  In his -- in Docket Entry

21   33-3, he goes through it and lists off many of these

22   individuals as being relevant to the lawsuit.  I mean, I could

23   go through them for the Court.

24         But Demoragan Hotwire, Cloudcroft, Design by Humans,

25   Panopticrypt -- and I think there's one more; I'd have to pull

```
 1   out the affidavit -- but so many of these Defendants had sworn

 2   are relevant.

 3        Others, the Defendants have documents, like the Design

 4   by Human trust, which we know from the Australian tax office

 5   documents is the trustee of a Seychelles trust --

 6        THE COURT:  Right.

 7        MR. FREEDMAN:  -- and which is an entity that the Court

 8   had seen, all 650,000 [inaudible] in trust for defense.

 9        So we kind of narrowed -- although the ATO documents

10   are a large, you know, universe, we took a very small subset of

11   that universe saying:  All right.  Give us these relevant

12   portions of that universe.  And then once we get those, we'd

13   broaden out if we have to.

14        THE COURT:  Right.  And I see -- I'm looking at --

15        I'll hear from you in a second, Mr. Rivero and

16   Ms. Markoe.

17        I'm looking at your response -- your objections at

18   Docket Entry 114-1 at Page 24, where you had offered to search

19   for, using search terms, documentation that references David

20   Kleiman or trusts related to David Kleiman, Ira Kleiman, Louis

21   Kleiman, Coin-Exchange Pty., Limited, or WK ID.

22        So where do you draw the line in the sand?  You just

23   think some of these other entities are not something you should

24   have to search for using search terms?

25        MS. MARKOE:  Well, there's that.  And I think that that
```

```
 1   sort of goes back to, you know, what we had -- what we talked
 2   about at the last hearing, which is that, you know, searching
 3   for, you know, documents related to these other companies at
 4   this point in time, your Honor agreed that were not
 5   appropriate, and at the time it doubled what we would have to
 6   be looking at.  We're already looking at a significant amount
 7   of data.
 8          But what I'd also like to point out is, you know, one
 9   of the things that is not mentioned actually in our response is
10   one of the requests was for Tulip Trading, Limited, and we had
11   already agreed to provide anything regarding that entity or any
12   entity that has tulip in the name.  So that's another thing
13   that we're adding in.
14          You know, we now have a good understanding about Design
15   by Human and its relationship to Dave Kleiman.  So they're
16   getting stuff related to Design by Human.
17          And, you know, to the extent that there are
18   communications with the ATO or documents related to ATO
19   proceedings, they don't relate to those -- you know, a pretty
20   significant number of individuals or entities.
21          It's our position that it's both unduly burdensome as
22   well as not relevant, at least at this time.
23          THE COURT:  Okay.  Mr. Freedman?
24          MR. FREEDMAN:  Your Honor, I would just say that, you
25   know, the Plaintiffs' first requests for production were pretty
```

1    broad, and the Court made us see that.  And so were these.  And

2    we kind of narrowed it down, and we worked hard.  We withdrew a

3    lot of them.

4         But the entities left in this list are entities that

5    the Defendants swore were relevant.

6         I don't understand how if Defendants swore they were

7    relevant to this Court why they wouldn't be relevant for

8    purposes of discovery.

9         You know, there's a -- if there's a burdensome

10   objection, then let the Defendant make that objection and let's

11   see what the actual hit reports say instead of -- relevance

12   can't be argued.  It's a sworn statement from the party that's

13   relevant.

14        So now the question is:  How burdensome is it?  And we

15   don't have any hit reports to justify a burden argument.

16        And one thing I'd say is, you know, I've been

17   [inaudible] as it comes.  But, you know, it's a

18   multibillion-dollar lawsuit.  There's lots of documents in

19   these lawsuits.

20        I think the Court understands my position.

21        THE COURT:  Okay.  Ms. Markoe, I did hear you making

22   the burdensome argument, if I heard you correctly.

23        So what I'm going to do is, again, on this topic, let's

24   take this up again next Thursday.

25        In the meantime, Ms. Markoe, if you're able to get

```
 1    some -- I apologize if you had this data last time and I don't

 2    remember it.  But if you can collect any data that you have to

 3    establish the actual burden that would be required to add

 4    additional names like he's requesting, maybe we can prioritize

 5    those.

 6            Again, maybe this is something I'll end up deciding to

 7    defer until after the Plaintiff -- the Defendant's deposition

 8    because he can be asked about these entities and perhaps his

 9    answers will help focus this a little bit more.

10            So I'm going to defer until next Thursday.  But ask the

11    Defendant to be prepared to address the burdensome argument --

12    burdensomeness argument next Thursday.

13            MR. FREEDMAN:  Your Honor, just so I can -- this is

14    Mr. Freedman.

15            Just so I can help this process along, the last time we

16    did this, we were given no information until the Defendant

17    appeared in court; and then afterwards, we were produced the

18    search terms that were used, but not any hit reports.  And some

19    of them are overly broad.

20            If the Court would -- and maybe the Defendants are just

21    willing to do this.  But if the Plaintiff -- why don't we

22    suggest specific requests.  Let us suggest the search terms the

23    Defendant should run.  We will get them over to the Defendants

24    within the next two days.

25            And then the Defendant can run those search terms and
```

```
 1    give us a hit report and be ready to talk about burden as per

 2    our request, if that makes sense.

 3         THE COURT:  Ms. Markoe?  First of all, is that

 4    agreeable?  And second of all, can it be done within the time

 5    frame we're talking about without derailing other things that

 6    are more important?

 7         MS. MARKOE:  I mean, we can do our best.  We want to

 8    work with Plaintiffs.  But, you know, we're also trying to

 9    actually get them things and actually get them what they've

10    asked for.  But, you know, it seems to be an ever-shifting

11    target.

12         If they can get us the search terms that they want us

13    to run and they're actually directed at these requests as

14    opposed to something else, so I would imagine that you would

15    have, you know, ATO in there, you know, I think we can

16    certainly run those reports and share those reports with regard

17    to the companies that we're not already covering.

18         THE COURT:  Okay.

19         MS. MARKOE:  So I think that it more matters -- I want

20    to make sure that they understand what we're going to be doing.

21    We're going to be running their terms not against everything.

22    We're going to run it against what we're not already looking at

23    and against the hard-copy documents that have been marked as

24    not relevant --

25         THE COURT:  Okay.
```

```
 1            MS. MARKOE:  -- so that it would be what is in

 2   addition.

 3            THE COURT:  All right.  Again, why don't you talk

 4   amongst yourselves so we don't have any misunderstanding about

 5   what's being done.  But assuming it can be done, I think that

 6   would be very helpful to me next Thursday to have that

 7   information.  I think it would be helpful if Mr. Freedman has

 8   that information in advance, if possible, so that we can all

 9   know where we're coming from and try to continue to prioritize

10   here.

11            I appreciate everybody's efforts.  I know we're all

12   kind of screwing about.  But the best we can continue to focus

13   and prioritize, I'd like to do that.  So that's what we'll do

14   with 36 and 37.

15            All right.  Now --

16            MS. MARKOE:  And 40 and 41 too?

17            THE COURT:  40, 41:  Let me look at that.

18            Mr. Freedman, do you think the process -- that's the

19   right process for 40 and 41 as well?

20            MR. FREEDMAN:  I mean, if the Court is comfortable with

21   it, that's fine.  This is an even smaller subset.  It's just

22   like transcript- or minute-type documents.  But I'm happy to

23   wait for the next hearing, if that would be good for the Court.

24            THE COURT:  Here's my feeling on it.  And maybe I'm

25   lumping it into a broader category:  I said earlier, I think
```

1   communications with the ATO that could be deemed to be some

2   sort of an admission or something of that nature would be

3   relevant.

4           Now, we've put aside proportionality and burden for a

5   second.  But it'd be relevant.  And that would be the goal, is

6   to try to identify those.  And at some point, they're

7   cumulative.  So whether it's a deposition, whether it's an

8   affidavit, whether it's an email, whether it's a letter is less

9   of concern to me and I hope would be less of concern to the

10  parties than coming up with an ability to search for the right

11  substantive materials.

12          So if 40 and 41 sort of fall into that same general

13  category --

14          And, Ms. Markoe, it seems to me you seem to think it

15  is?

16          MS. MARKOE:  Well, I think that Mr. Freedman had lumped

17  these together with 36 and 37 when we first started talking.

18  And that's where my confusion came in.

19          With regard to 40 and 41, we have offered the same

20  exact information, that they will get communications and

21  documents related to the entities that we have previously

22  discussed and Dave Kleiman and W&K and the Coin-Exchange and

23  all that.

24          THE COURT:  So the only question in dispute is whether

25  the universe of entities for which searching is done should be

1    expanded.

2           MS. MARKOE:  Right.  Well, also, with Request No. 40,

3    they want any and all communications that Craig Wright or any

4    of his agents had with the ATO from 2010 through 2018.  But,

5    you know --

6           MR. FREEDMAN:  Your Honor --

7           MS. MARKOE:  [Inaudible] communications.

8           THE COURT:  Mr. Freedman?

9           MR. FREEDMAN:  This is Mr. Freedman.

10          Ms. Markoe, I think you may be forgetting.  We limited

11   that in our -- in our meet and confers, and as reflected in the

12   submission at Docket Entry 114 at 5.

13          We're seeking any documents that makes a record or

14   conversation between Craig and his agents and the Australian

15   tax office that -- and that also references the list of people

16   that are at 36 to 37.  And those are the people that the

17   Defendant has previously sworn are relevant.

18          THE COURT:  Okay.

19          MR. FREEDMAN:  Giving [inaudible] to our position

20   that -- you know, Plaintiffs' position is they are relevant.

21   It's a burdensome argument.  And I'm assuming the Court is

22   going to ask us to address burden at the next hearing.

23          THE COURT:  Burden and proportionality.  Don't leave

24   out proportionality.

25          MS. MARKOE:  We don't agree on the relevance with

```
 1    regard to all of these entities as well.  But we've made that

 2    position.

 3           THE COURT:  You've made that position clear.  And

 4    again, that's something that, depending on your client's

 5    testimony at his deposition, we may revisit that.  But for the

 6    time being, he did swear an affidavit in support of his motion

 7    to dismiss where he said these entities were relevant.

 8           Now, I understand his position that relevance may be

 9    different from relevance for trial purposes.  But at least from

10    where I sit right now, I have to sort of live with that and ask

11    you to -- so I'll lump 40 and 41 together with 37 and 36,

12    because I do think it's the same question.

13           The question is not that Dr. Wright is saying that

14    there is nothing here that's responsive and relevant; it's just

15    a question of:  How broadly should we search?  And if we find

16    anything, is it actually relevant?  And is it unduly burdensome

17    to search or is it disproportionate to produce?  So those are

18    the issues I'll take up next Thursday.

19           All right.  And --

20           MR. FREEDMAN:  Thank you, your Honor.

21           THE COURT:  Sure.

22           No. 45.  It says interrogatory.  Does that mean

23    interrogatory or request for production?  Hold on.

24           MR. FREEDMAN:  Your Honor, that's Plaintiffs' mistake.

25    It says interrogatory, but it's supposed to be request for
```

```
 1    production.

 2            THE COURT:  All right.  Trust me, I make that mistake

 3    all the time.

 4            MR. FREEDMAN:  Sorry.

 5            THE COURT:  No reason to apologize.

 6            Okay.  So what are we looking for here?  Is this --

 7            MR. FREEDMAN:  Your Honor, this is a -- did the Court

 8    want me to summarize the --

 9            THE COURT:  Let me just look, because I'm shuffling

10    through the two documents.  Hold on.

11            Okay.  This is just communications generally between

12    Dr. Wright and a bunch of people regarding Bitcoin and any

13    cryptocurrency, cryptocurrency mining, et cetera.

14            MR. FREEDMAN:  It's that same list, your Honor.  It's

15    that same core list with 36 and 37, I believe, of the entities

16    sworn to be relevant and people known to be relevant.

17            And then -- so what we did is there are two levels of

18    narrowing.  Right?  It's communications between Craig Wright

19    and people we know to be relevant to the case.  And I can go

20    through and explain to you why they're relevant.

21            And then on top of that, it only seeks the

22    communications between Craig Wright and these relevant

23    witnesses to the extent they also touch on individuals that

24    have been sworn to be relevant or are patently relevant to the

25    case.
```

```
 1              THE COURT:  Okay.  Ms. Markoe?

 2              MR. FREEDMAN:  Again, your Honor, we're just trying to

 3      shrink that bull's-eye down.

 4              THE COURT:  I understand.  So this is just -- this

 5      is -- we've already been through communications between

 6      Dr. Wright directly with Mr. Kleiman.  These are now

 7      communications between Dr. Wright and third parties other than

 8      the Australian tax authority.  Same theory.

 9              MR. FREEDMAN:  Correct.

10              THE COURT:  All right.  Defendant?

11              MS. MARKOE:  Yes.

12              I believe that they -- one of the topics that they kept

13      in was Bitcoin generally.

14              And, you know, again, we're sticking with our

15      limitation that for now we think the appropriate thing to do is

16      to search for and produce all the documents that your Honor --

17      on the topics that your Honor identifies, and we've actually

18      expanded based on some additional information at the February

19      20th discovery conference.

20              THE COURT:  Yes.  I have to tell you, to search

21      generally for communications to Dr. Wright and all these people

22      just generally about Bitcoin I think is casting a very, very,

23      very wide net.

24              Now, if it's going to be Bitcoin --

25              MR. FREEDMAN:  Your Honor, I agree.
```

1          THE COURT:  -- Bitcoin and Dave Kleiman or Bitcoin and

2   these other things, that may be more narrow.

3          Is that what you're asking for?  Or are you asking for

4   a general search about Bitcoin standing alone?

5          MR. FREEDMAN:  Your Honor, I would never misrepresent

6   anything to the Court.  I was asking for Bitcoin.  But I agree

7   that it's too wide in this instance because some of these

8   individuals are -- clearly postdate the relevant Bitcoin.

9          Let me think about how we [inaudible] to the next

10  hearing.  But we'll move it for now without prejudice to our

11  right to bring it back in.

12         Again, you know, again, here's the thing:  The Court --

13  as the Court has said, this all was search terms at the end.

14  So we can limit the Bitcoin, wide net of Bitcoin further to use

15  the search terms.  And I'm happy to do that and work with

16  counsel to do that and, if we can't reach agreement, bring it

17  back in front of the Court.

18         But the other ones are not nearly as wide as that.

19         THE COURT:  And I have to tell you, again, I'm not as

20  deep into this, obviously, as you all are.  But it seems to me

21  that at some point the relevant search terms are the relevant

22  search terms, whatever we're searching for.  You know, the

23  relevant search terms at some point kind of become universal

24  across all platforms in this case.

25         So whether we're searching Australian tax authority,

```
1    whether we're searching communications with third parties,

2    whether we're searching whatever else other than direct

3    communications with Mr. Kleiman, obviously, that's broader.  So

4    hopefully, maybe you all will agree and maybe come to some

5    agreement as to the scope of what we should be searching and

6    maybe all this kind of fades away as the search terms come more

7    into focus.

8         So at the Plaintiffs' request, I'll put this off until

9    next Thursday as well.

10        All right.  So then we move to Number --

11        MR. FREEDMAN:  Your Honor?

12        THE COURT:  Yes.

13        MR. FREEDMAN:  Your Honor, I was just going to say that

14   it made sense to do that because it's the simple issue as 36,

15   37, 40, 41.  It's, you know, whether these individuals are

16   relevant or not.  It's really -- it's a burdensome issue.  It

17   applies to Bitcoin, which is -- which is too wide standing

18   alone.

19        THE COURT:  Right.  Okay.  So -- but like I said, I'm

20   hoping as you all continue to reflect -- now maybe everybody

21   understands that we're shooting at the same target and maybe

22   you can refine the search terms between yourselves in a way

23   that -- cross-cutting all these issues.  The search terms save

24   us from ourselves.

25        Okay.  Let me jump ahead, then, to -- is it 57, the
```

```
 1    next one?  I think 57 is the next one.  So 57 is communications
 2    discussing this litigation -- yes.  I remember that I ruled on
 3    this.
 4         Someone refresh me as to why these were relevant and
 5    why 30 days was the number.  I honestly don't remember; and you
 6    all apparently have a transcript.  So remind me of what I was
 7    thinking.
 8         MR. FREEDMAN:  Your Honor, this is Mr. Freedman.
 9         We didn't -- I don't think the general topic of the
10    time frame ever came up.  It was as regards to the time frame
11    of the first request for production.  There was a dispute over
12    time frame.
13         And in court, in an effort to just move to the next
14    one, I agreed to limit the time frame to 30 days after the
15    filing of the complaint.  I didn't mean -- and I think it's
16    pretty clear from the transcript -- that I didn't mean to
17    impose a limit on every single request for production we've
18    ever put forward that I should be limited to 30 days.
19         The Court's concern was, we had asked for everything up
20    to the present.
21         And the Court said to me:  [Inaudible].  Previously
22    produced.
23         And I said:  Oh, I'd like to do 30 days after the
24    complaint.
25         Here, the target is the date of the request.  Just
```

1    everything up to the date of the request.

2          THE COURT:  Okay.

3          MR. FREEDMAN:  And that's where the target ends.

4          THE COURT:  Okay.  And from the defense, Ms. Markoe,

5    Mr. Rivero, what's your position on that?  So it's just a

6    question of extending the deadline.

7          MS. MARKOE:  Our position is that we're searching for

8    documents through one month after the date of the -- for one

9    month after the date that the complaint was originally filed.

10   And we think that that's more than reasonable and we think

11   that's fair and appropriate.

12         And searching for all communications and documents

13   discussing this litigation thereafter would sort of inherently

14   involve the privilege.

15         THE COURT:  Right.

16         MR. RIVERO:  Judge, if I may on this, I've read the

17   record.  In fact, what happened was that I think the initial

18   indication was -- from the Court was the date of the complaint.

19   Then [inaudible] Plaintiffs asked for another month.

20   Ms. Markoe agreed to another month.

21         But, Judge, that, I think, was less burdensome than

22   this.  If you read this request, all communications and

23   documents discussing this litigation, obviously, from the date

24   the litigation is filed, there would be a significant increase

25   in communications between us and our client, since it was our

1    client before this.  And all this would do would be create --

2    create a massive privilege logging problem and a lot of burden.

3         I don't understand why this should extend beyond the

4    litigation.

5         THE COURT:  All right.  Well --

6         MR. RIVERO:  And [inaudible].

7         THE COURT:  Hold on.  Hold on.  Hold on one second.

8         Under our local rule, you don't have to log anything

9    that relates to the current litigation that arises after the

10   litigation, as I recall.

11        But, Mr. Freedman, remind me why this whole category of

12   documents was relevant.  I'm sure it was or I wouldn't have

13   allowed you it.  But why communications by Dr. Wright with

14   other people about this case up to the date of this case would

15   be -- or 30 days or however long after this case -- explain

16   your theory of relevance there.

17        MR. FREEDMAN:  Yeah, your Honor.

18        This just goes to capturing the admissions, relevant

19   admissions about the lawsuit, where, you know, a close friend

20   reaches out and says, "Hey, did you -- did you hear about

21   Bitcoin [inaudible]?"  And Dr. Wright responds, you know, "A

22   few" or something like that.

23        The Court's right in that the local rules provide that

24   no logging has to be done between Rivero and [inaudible] his

25   client.  Certainly, if they didn't, we would stipulate no

```
 1    logging would have to be done between Rivero, [inaudible] and

 2    their client.

 3            You know, I can't imagine there's going to be a lot of

 4    documents here.  But the relevance is admissions from

 5    Dr. Wright about the lawsuit.  So it's relevant.  And then the

 6    question then becomes:  Okay.  Is it burdensome?  I think our

 7    search terms will reveal that.

 8            THE COURT:  Okay.  I'm going to overrule that

 9    objection.  I'm going to stick with the 30 days.

10            I think if that's the theory of relevance, it's highly

11    speculative that he's going to have those sorts of emails.  And

12    the burden to go and find them -- given everything else we've

13    got to do in this case, I just think this is very much at the

14    edge of what's necessary to the case.

15            And so I'll leave -- I'll sustain my prior ruling,

16    which is 30 days after the filing of the complaint.

17            Okay.  Number --

18            MR. FREEDMAN:  [Inaudible].

19            THE COURT:  -- 60.  No. 60.  Communications, documents

20    on any Bitcoin money operations taking place in the United

21    States.

22            Explain to me what -- someone tell me what the dispute

23    is.

24            MR. FREEDMAN:  Well, your Honor -- this is

25    Mr. Freedman.
```

1          We'd agreed to -- there's an agreement on everything

2    but one aspect of this case, which is the Plaintiffs are

3    seeking documents that date pre-2014, so it's documents as of

4    the year of the theft.

5          In addition to that limitation, it relates to both

6    mining in the United States, mining Bitcoin in the United

7    States, and that also mention Ms. Uyen Nguyen, who Plaintiffs

8    have a lot of documentation to show was the agent of Craig

9    Wright, who retained control of the 602,000 Bitcoins at trust,

10   has reached out to third parties -- [inaudible] production from

11   third parties identify herself as the trustee [inaudible] the

12   trust, which was filed over the Bitcoin.

13         Again, [inaudible].  Plaintiffs' [inaudible] of the

14   partnership of Craig Wright and Dave Kleiman.  This is a highly

15   relevant individual who is alleged to have been complicit with

16   Dr. Wright in the defrauding of the Plaintiffs in W&K's

17   research.

18         So it's in the complaint.  So it's a high-level

19   individual.  And it's a very narrow subset of documents,

20   pre-2014, to relate to Bitcoin mining in the United States that

21   also mention Ms. Nguyen.

22         THE COURT:  Okay.  Ms. Markoe, Mr. Rivero?

23         MS. MARKOE:  And, your Honor, I think that our point is

24   that they'll get anything that relates to Dave -- trusts that

25   Dave was associated with and W&K whether Nguyen is on it or

1   not.

2          And so to the extent that it relates to anything

3   related to the Plaintiff or -- and Nguyen, they're getting it.

4          To the extent that it relates to Dr. Wright talking to

5   Nguyen about something else, which I actually -- I don't know,

6   to be honest, that it exists -- about other sort of mining

7   activity, then it's not relevant.

8          THE COURT:  Okay.  You also note in your -- in the

9   joint memo your objection to the definition of "you," which I

10  don't have in front of me.  So what's your objection to the

11  definition?

12         MS. MARKOE:  I think we addressed this at the last --

13  at the last discovery conference.

14         And that was how they assigned you to include Craig

15  Wright, any entity that he's ever been associated with, any

16  company that he's ever owned shares in, any trusts that he

17  might even be a beneficiary of.  It would be an overly

18  expansive definition of "you."  I think it was summarily

19  discussed at the last discovery conference.

20         THE COURT:  Didn't I -- let me turn to Mr. Freedman.

21         Didn't I rule on that and say it was limited to

22  whatever would ordinarily fall within the concept of whatever

23  was in Dr. Wright's care, custody and control?

24         MR. FREEDMAN:  Yes, your Honor.  Actually, the

25  Plaintiffs withdrew that definition and basically told the

```
 1    Court that it was an attempt to address the dispute over
 2    possession, custody and control.  And the Court was all
 3    [inaudible].
 4         So I'm not sure why it's still here.  There's no
 5    dispute --
 6         THE COURT:  Okay.  So --
 7         MR. FREEDMAN:  -- on the definition of "you."
 8         THE COURT:  So the dispute seems to be whether --
 9         I'm sorry, Ms. Markoe.  Can you reframe your position
10    for me again?  You don't think you should have to look for what
11    that you're not already looking for?  What are they asking you
12    to look for that you don't think you should have to look for?
13         MS. MARKOE:  Communications, documents, agreements
14    concerning Bitcoin mining operations take placing in the US
15    unrelated to Dave Kleiman or W&K with Nguyen.
16         THE COURT:  Okay.  So here's what I'm going to do:  For
17    the time being, you know, on the one hand, I can hear
18    Mr. Freedman thinking, you know, We're trusting you to tell us
19    which ones Dave Kleiman was involved in and which ones he
20    wasn't.  And they don't necessarily have to take your word for
21    it.  They are entitled to probe that a little bit.
22         On the other hand, I hear you saying:  That's an
23    incredibly broad way to deal with that topic, and they should
24    just trust us.  We're going to do it in good faith, which I
25    have no doubt you will.
```

1          So here's what I'm going to do on this:  I'm going to

2     defer this as well until after Dr. Wright's deposition.  And

3     I'll allow Mr. -- Mr. Freedman at the deposition to probe

4     Dr. Wright about what Bitcoin mining operations he was involved

5     with in or about the end of 2013 and whether or not Mr. Kleiman

6     had any involvement in those.  And if Dr. Wright denies it and

7     Mr. Freedman has some other basis to suggest that there would

8     be contrary evidence to be searched for, we can address that

9     issue at that time.

10          All right.  Number -- so I'm going to defer deciding

11     this one until after Dr. Wright's deposition.

12          62.  This is -- I think -- is this more or less the

13     same thing, Mr. Freedman?  Just having to do with Bitcoin

14     itself he obtained as opposed to -- hold on.

15          MR. FREEDMAN:  So this has to do with the fact -- I

16     guess this takes up a little bit.  And the Court may remember

17     this from the complaint.  But the complaint alleges Craig and

18     Dave came together to create a Satoshi Nakamoto partnership,

19     created Bitcoin and then mined it together.

20          And so anything mined before Dave's death -- it's

21     Plaintiffs' position that anything mined before Dave's death is

22     either part of the partners' -- Satoshi Nakamoto partnership

23     property or the W&K's property.

24          After he died, I mean, we just don't have enough

25     information to know what happened.  But certainly [inaudible]

1    if he died.  Plaintiffs' theory is, it's partnership property

2    and, you know, Plaintiffs [inaudible] breached this partnership

3    duties of, you know, loyalty and care and breach of partnership

4    and --

5            THE COURT:  Right.

6            MR. FREEDMAN:  -- [inaudible].  And this goes to what

7    was created by the partnership, you know.  And Dr. Wright

8    wouldn't be able to mine without being part of the partnership

9    because that was the business, being Satoshi Nakamoto.

10           THE COURT:  Understood.

11           If I'm giving you a listing of all of the Bitcoin

12   Dr. Wright had at the end of -- potentially had filed a status

13   to Request No. 1 -- or was it 2 or 3 or one of those requests?

14   Potentially, you're going to need a list of all the Bitcoin

15   that Dr. Wright had at the end of 2013 and you're going to get

16   all the communications between Dr. Wright and Mr. Kleiman

17   during that time period.

18           Doesn't that get you a long way towards what you're

19   looking for here?

20           MR. FREEDMAN:  It certainly does, your Honor.  And my

21   only concern is, you know, obviously, we're taking this in

22   layers.  It's just -- our dates are coming up.

23           But yes, your Honor.  It definitely gets us a lot of

24   the way there.

25           THE COURT:  And listen:  I mean -- let me make a

1    comment and then I'll hear from Ms. Markoe and Mr. Rivero.

2         I am aware that the parties are working diligently to

3    try to get this done.  I am aware that you are under tremendous

4    time pressure with Judge Bloom.  I do communicate with Judge

5    Bloom.

6         And to the extent I see everyone working hard and in

7    good faith and you simply really just don't have enough time

8    and you reach the point when it's clear you simply don't have

9    enough time, I am not adverse to going to talk to Judge Bloom

10   on your behalf and trying to get you some more time.  I just

11   did that in another case with Judge Rosenberg.

12        Part of the reason I want to keep meeting with you and

13   part of the reason I want to keep kicking this along quickly is

14   that if -- you know, if any of us have to go to Judge Bloom at

15   some point to try to get you more time, I want you to have a

16   good record that you've been working diligently.  So that's

17   part of my thought process here.

18        But as to No. 62, let me hear from Ms. Markoe or

19   Mr. Rivero.

20        MR. RIVERO:  Judge, if I may briefly on this:  I think

21   what the Court is inclined, frankly, on one I think we may

22   already be a layer beyond the full line in the first layer's

23   run, Judge.

24        It's hard to distinguish based on this request between

25   net-worth discovery and merit discovery in this case, because

1   this request asks for all the mining that Mr. Wright -- this

2   would ask for everything that Mr. Wright mined whether or not

3   Mr. Kleiman was [inaudible].

4           I don't think in a normal case we'd get this kind of

5   discovery asking for judgment.  I think we're at the last layer

6   of this onion and not a part.

7           So -- and, Judge, just on a separate point:  We -- let

8   me be clear:  We are not -- we think -- we know it's a tight

9   time frame.  If we get orderly requests for prioritization, we

10  think we can get -- and we need to get stuff from the

11  Plaintiffs, too.  We have issues that we'll bring up in the

12  next session.  We can do the bull's-eye; we can get the first

13  layer; we can get the second layer and the third layer, but not

14  if we're doing the last layer.

15          And, Judge, I think this is at the last layer.

16          THE COURT:  Okay.  I hear you.  I hear you.

17          So I think at this point as to 62, if you get the other

18  two things, Mr. Freedman, I think that's a good start for you.

19  So I'm going to deny 62 or your objection to 62 at this time

20  without prejudice.  And again, after you get some more

21  discovery and you get some communications, if you think there's

22  things that are missing and things that are likely to be found,

23  then we can revisit that issue.

24          All right.  No. 88.  Explain to me the relevance of

25  this, Mr. Freedman, please.

1          MR. FREEDMAN:  So, your Honor, again, the complaint

2   alleges that Dr. Wright and Mr. Kleiman, Dave Kleiman, created

3   the Satoshi Nakamoto partnership and together mined Bitcoin and

4   created intellectual property.

5          The Satoshi affair is Exhibit 1 to the complaint.  It's

6   a recounting of the kind of beginnings of Bitcoin --

7          THE COURT:  Yes.

8          MR. FREEDMAN:  -- and admits inside that article --

9   discusses the fact that Robert MacGregor entered into an

10  agreement with Dr. Wright to sell the life rights of the Dave

11  Kleiman and Craig Wright partnership and to sell the

12  intellectual property that belonged to Satoshi Nakamoto.

13         The article clearly spelled out that this -- this was

14  an attempt to gain publicity and say:  Hey, Dr. Wright is at

15  Satoshi Nakamoto and this is Satoshi Nakamoto's intellectual

16  property.  Come one, come all at the auction block.  They were

17  talking about billions of dollars, you know, being made from

18  it.

19         So Plaintiffs' theory is that there will be -- that

20  communications and documents that relate to that agreement are

21  going to be relevant in identifying what intellectual property

22  belonged to Satoshi Nakamoto, meaning what intellectual

23  property belonged to Dave Kleiman and Craig Wright.

24         THE COURT:  Okay.  Mr. Rivero, Ms. Markoe?

25         MR. RIVERO:  Judge, let me just say this from

```
1    [inaudible] somewhat [inaudible] not only because -- there was

2    no meet and confer.  And we're scrambling.  We know the request

3    exists.

4           But, Ms. Markoe, I don't know if you have -- if you --

5           THE COURT:  Okay.  Listen, if your position is that you

6    haven't had a chance or somebody did it, it was Ms. McGovern

7    and you're not up to it today, Mr. Rivero, I understand

8    completely.  It doesn't seem to me that this can't be put off

9    until next week as well.  So if that's -- if you're requesting

10   that, I'll be happy to grant that.

11          MR. RIVERO:  Actually, Judge, I think the simplest

12   thing is to request that, because we are to some extent

13   scrambling on this one right now.

14          THE COURT:  Okay.

15          MR. RIVERO:  So I appreciate it.

16          THE COURT:  Yes.  I'll put it off.

17          Mr. Freedman, any objection to putting it off?

18          MR. FREEDMAN:  No objection to putting it off.

19          Just for the record, there was a meet and confer on

20   this.  I don't mind if it goes until next week, but I just

21   don't want the Court to think we brought it to the Court's

22   attention without any meet and confer.  It would be, I think,

23   ridiculous to assume we met and conferred on everything in the

24   request for production [inaudible] the last request.

25          THE COURT:  All right.
```

60

```
 1              MR. FREEDMAN:  So no problem putting it off.  But make
 2   no misunderstanding:  We held a meet and confer on it.
 3              THE COURT:  Understood.  And I think there's just a
 4   misunderstanding.  No problem.  We'll put off 88 until next
 5   Thursday's hearing as well.
 6              Okay.  Let's see.  The third request for production.
 7   Okay.  So this is the sauce-for-the-goose provision, that they
 8   asked for it so we get to ask for it, and how can they object
 9   because we didn't object?
10              MR. FREEDMAN:  Right.  Good for the goose, good for the
11   gander, your Honor.
12              THE COURT:  Okay.  Mr. Rivero, Ms. Markoe?  What's your
13   thought?
14              MS. MARKOE:  I say we're not in a goose-gander
15   situation here because our requests were made to the estate of
16   David Kleiman and W&K.
17              Their requests are not.
18              So our requests were inherently limited to the issues
19   in this action.
20              Theirs are not, because they're not so limited.
21              So I don't think it's really a goose-gander situation.
22   And what we've agreed to is that we will produce all of the --
23   I think their response to almost every single one was that we
24   would produce as it relates to Dave Kleiman, the trust, W&K and
25   the like.  So, you know, that's essentially what we asked of
```

```
 1    that.
 2              THE COURT:  Okay.
 3              MS. MARKOE:  We're willing to do that.
 4              THE COURT:  All right.  Mr. Freedman, anything further?
 5              MR. FREEDMAN:  Your Honor, I can walk this Court
 6    through why these things are relevant and not burdensome if we
 7    go through them one by one.  I just didn't think it was
 8    necessary.
 9              These are purely relevant things, as demonstrated by
10    the fact that the Defendant has asked for them.  So it seems
11    the Defendant does not contest relevance.
12              So now it becomes a burdensome objection.  And they
13    have made no showing of burden.
14              THE COURT:  Okay.  Here's what I'm going to do on this
15    one.  Oh, this basically goes to all the entities.  Right?  It
16    seems --
17              MS. MARKOE:  No.
18              THE COURT:  It goes to a bunch of different entities.
19    Right?
20              MS. MARKOE:  It goes to a bunch of different themes.
21              THE COURT:  Like Paramount?  I'm just looking quickly.
22    And 8 is -- 8 is Design by Human.
23              10 is -- right  -- gold bonds.
24              12 is Seize Your 1N.
25              13 is coin supercomputer.
```

```
1              14 is the Seychelles trust.

2              Okay.  But to be clear, the Defendant is agreeing to

3    produce the communications related to those that you deem to be

4    related to Dave Kleiman.  And that'll be based, I presume, upon

5    search term location?

6              MS. MARKOE:  Correct.

7              THE COURT:  Okay.  I think that's --

8              MR. FREEDMAN:  Your Honor --

9              THE COURT:  Mr. Freedman?

10             MR. FREEDMAN:  Sorry.

11             Your Honor, it's just that what I -- what's frustrating

12   to me -- and it's not anything anyone's doing.  It's just -- I

13   guess it's having trouble dissecting this -- is that what is

14   being made here as a relevance objection based on the potential

15   for lots of documents when there has been no showing that these

16   documents exist.

17             I mean, the way I [inaudible] previously is, you know,

18   it is relevant.  The answer to that clearly is yes because the

19   Defendant asked about it.

20             So now it's:  Is it burdensome?  And that can't be

21   decided without a hit report.

22             THE COURT:  Well --

23             MR. FREEDMAN:  I mean, there could be five documents

24   that relate to this.

25             THE COURT:  Well, there's two things, though.  They
```

```
 1    have to define what the "it" is.  When you say, "Is it
 2    burdensome," what they're saying is, "The scope of what they're
 3    asking for is clearly limited only to Mr. Kleiman and W&K."
 4            And then you're asking -- you're not limiting it
 5    similarly.
 6            And secondly, you keep skipping over the
 7    proportionality question.  You know, you don't go directly from
 8    relevance to burden.  You've got to go through proportionality
 9    to get there.
10            And I think their argument is:  Look, we're going to
11    give you everything that relates directly to Mr. Kleiman that's
12    clearly related to Mr. Kleiman.  And so everything else around
13    the edges would be disproportional.
14            I'm not saying I'm ruling on it that way, but I think
15    that's their argument.
16            Have I correctly stated your argument, Mr. Rivero and
17    Ms. Markoe?
18            MS. MARKOE:  Yes, your Honor.
19            THE COURT:  Okay.  Here's what I'm going to do on this
20    one:  I think, again, this is a topic that can be better
21    narrowed and addressed if they produce the communications
22    you're talking about, and you can question Dr. Wright about
23    this at his initial deposition.
24            And then, depending on the answers that he gives, we
25    can revisit this question as to whether you'll get more than
```

 1    what they've agreed to give so far.

 2          So without prejudice, I'm going to deny your request as

 3    to 8, 10, 12, 13, 14, 15 until after Dr. Wright's deposition

 4    until after the production of the other communications.  So

 5    then we can have a -- not just an assessment of burden, but an

 6    assessment of whether it's proportional and cumulative.

 7          All right.  No. 17.

 8          MR. FREEDMAN:  Your Honor, are we going to get the

 9    documents they agree to produce before deposition?

10          THE COURT:  Look, there's only so much they can

11    produce.  I'll leave that to you all to sit down and have a

12    meet and confer and talk about priority.  I mean, they have

13    limited time and limited work.  And I understand you want

14    everything now, Mr. Freedman, and I would want everything now

15    if I were you as well.

16          But I can't order -- I'm not going to order them at

17    this time.  If you all want to meet and confer and try to come

18    up with some agreements; and if you can't by next Thursday,

19    then I will entertain entering in orders.  But I'm not going to

20    be making those decisions off the cuff.  I think everyone knows

21    to go back, reassess the scope of what we're all shooting at

22    here and then we can revisit that then next Thursday.

23          Okay.  No. 17 is what?  All documents relating to any

24    cryptocurrency while it's mentioned in the second complaint and

25    the exhibits attached to Mr. Wright's affidavit.

 1          MR. FREEDMAN:  Let me just say, that says

 2    cryptocurrency.  It should say Bitcoin.

 3          THE COURT:  Okay.  So what --

 4          MR. FREEDMAN:  And this is just -- again, your Honor,

 5    everyone mentioned in the second complaint as joint property

 6    and this is, you know -- I'm happy to -- this is just search

 7    terms that are there to lay out the names of the wallets and

 8    ask for documents that hit on the relevant wallets.

 9          THE COURT:  Okay.  I'm going to defer on this one.  I

10    think again -- if you get a list of the Bitcoin wallets that

11    Dr. Wright had at the end of 2013 and you get all the

12    communications between Dr. Wright and Mr. Kleiman, you're

13    getting a big step forward.

14          So at this point, I'm not going to order more than that

15    as it relates to this.  I think this as drafted is somewhat

16    broad.  But if you all should agree on search terms that can

17    make it work, I'll leave you to that.  But I'm not going to

18    order it produced as written.

19          All right.  The fourth request for production.  I have

20    to find it.  Oh, this is the prenup and postnup.  Why is that

21    relevant?

22          MR. FREEDMAN:  Your Honor, we don't need to know the

23    dates of it; but assuming there are dates and the date falls in

24    the relevant time period, it would be potentially a

25    nondisclosure or cryptocurrency he held.  If it falls in the

```
 1   2013 frame or somewhere around there, it could be relevant to

 2   determining what cryptocurrency he held.

 3          Again, so that's why we agreed to [inaudible] this and

 4   the dates of that.  And then we can determine if they're

 5   relevant.

 6          THE COURT:  Okay.  Mr. Rivero, Ms. Markoe?

 7          MS. MARKOE:  Your Honor, I don't see how it could

 8   possibly -- how the, I guess, personal intrusion could possibly

 9   outweigh the potential relevance, particularly given your

10   Honor's rulings today on receiving a list of [inaudible]

11   through 2013 and the like.

12          And, you know, I don't know.  I can tell you personally

13   that if someone asked me whether I had a pre- or postnup, you

14   know, while I'm in the midst of collaboration, I would be very

15   offended and put out.

16          THE COURT:  So --

17          MS. MARKOE:  While I understand that litigation

18   involves being a defendant and put out, this is a deeply

19   personal intrusion with de minimis relevancy and return, given

20   the information that Plaintiffs are going to be receiving.

21          THE COURT:  All right.  So here's --

22          MR. FREEDMAN:  Your Honor, may I make a suggestion?

23          THE COURT:  Yes.

24          MR. FREEDMAN:  If the Court is willing, perhaps the

25   Defendant could disclose this information to the Court to make
```

```
 1    a determination on whether the time frame is relevant and then

 2    we could take it from there.

 3              THE COURT:  That's exactly what I was going to suggest.

 4              Ms. Markoe, Mr. Rivero, any objection to doing that?

 5    I'll let you all go back and talk to your client.

 6              And I guess the first question -- the first would just

 7    simply be a yes-or-no question:  Did any even exist in the

 8    first place?  If they didn't exist, then we don't have to go

 9    down the rest of this road.  If there is either a prenup or a

10    postnup, I don't have a problem conducting an in-camera review

11    determining whether it's something that I would even consider

12    making discoverable.

13              So if you --

14              MR. RIVERO:  Judge, if --

15              THE COURT:  Yes, Mr. Rivero.

16              MR. RIVERO:  If I could have the opportunity to talk to

17    my client and if we could answer that next week, I'd appreciate

18    it.

19              THE COURT:  Yes.  Of course.  We'll defer that one

20    until next Thursday.

21              But I would be willing to do an in-camera inspection.

22    I think that's a good balance.

23              All right.  We're getting close to the end, because I'm

24    on Page 9 of 11, so that's good.

25              All right.  The scope of the deposition.
```

1          MR. FREEDMAN:  Yes.

2          THE COURT:  Go.

3          MR. FREEDMAN:  Your Honor, this is Mr. Freedman.

4      This -- I guess the best way on this is to turn to

5  Exhibit C -- E, rather, on Docket Entry 114-5.

6          THE COURT:  Yes.

7          MR. FREEDMAN:  And there, Plaintiff has listed out the

8  topics of deposition and made an extreme effort to show that

9  this would not be testing like, Did you steal Kleiman's Bitcoin

10 or go into the kind of -- you know, What email did you use to

11 communicate?  How did you communicate?  What technological

12 accounts did you hold together?  You know, were there some

13 cloud-based accounts that you used to kind of program at the

14 same time?  When did you do it?  The computers and the servers

15 you used to do it?

16         And then, of course, the questions about:  What is this

17 trust, you know?  What is it about?  When was it formed?  Okay.

18 That doesn't seem to be relevant.

19         Or, you know:  Where is it located?

20         And it just -- we're not going to be drilling down

21 into, Did you steal Dave Kleiman's Bitcoin?  Why did you take

22 Dave Kleiman's intellectual property?

23         But it's an effort to do what the Court said, which is

24 identify what [inaudible] did you look and what to get a basic

25 story from the Defendant of what he claims really happened so

1    that we understand where we -- what we have to fight and what

2    we don't have to fight.

3         It's not going to be super deep, but it's going to give

4    up the groundwork of what we're here for.  And Defendant keeps

5    telling us:  All you can ask for is, you know, what is your

6    document retention policies?  And did Dave Kleiman have to do

7    with this trust?  And maybe one or two questions after that and

8    then that's it.

9         So --

10        THE COURT:  Mr. Rivero, Ms. Markoe?

11        MR. RIVERO:  Yes.

12        Judge, first, we didn't put our list of what we

13   objected to.  But I would just give you a flavor because I've

14   read -- I've read the Court's statements about this and

15   participated in it, Judge.  And I understand the sheep-herding

16   concept that you talked about and also the 30(b)(6).

17        For example, we asked -- and there's a number of

18   topics.  The identification of Dave Kleiman's electronic

19   devices.  [Inaudible] Dave Kleiman's electronic devices.  The

20   preservation of Dave Kleiman's electronic devices.  Did

21   [inaudible] have access to Dave Kleiman's electronic devices?

22        By contrast, Judge, I'll just take No. 3, just to take

23   it at random:  Details surrounding Craig and Dave's partnership

24   to complete Satoshi Nakamoto.

25        Judge, a personal fact:  I don't think that any of the

 1    discussion of what the Court said -- it's not, you know, Round

 2    1 of the merits depo and then you'll get a longer Round 2

 3    later, which is essentially when [inaudible].  The basic story

 4    of what really happened, that is the merits of the case.

 5         So however -- you know, the characterization right now

 6    is not the issue.  The characterization is in the -- in the

 7    topics.

 8         Details about the partnership, which I don't even think

 9    the issue -- the legal agreement of the partnership, details of

10    the partnership to create Satoshi Nakamoto and the general

11    process of the collaboration to go further, that is the entire

12    complaint, Judge.

13         This is the second time that the Plaintiffs give us

14    what we view as a radically overbroad set of topics.  The Court

15    identified a couple today that I think need to go into this,

16    because the Court -- and it's in the transcript.  I'm sure

17    we'll look at it.

18         But to give you another example, Judge, if you look at

19    No. 5, the general process of the collaboration:  The

20    identification of the times and projects that Craig and Dave

21    collaborated on to create intellectual property.

22         Judge, that is nothing other than -- what they want to

23    ask is:  Did you create intellectual property for the purpose

24    of saying you [inaudible] intellectual property?  And they want

25    to get into the [inaudible] of the collaboration.

1          That's the whole story.  These topics are -- if you go

2     one by one, inquiry into the individuals and entities

3     identified in the Australian proceeding.  Although, Judge,

4     actually, No. 7 might be -- I should say No. 7.  I'm not sure

5     about that.

6          But, Judge, an inquiry into the Australian tax office

7     investigations, to understand how many there were, what they

8     related to, which ones -- which ones are relevant to the

9     claims, I think might be relevant.

10          Let's take No. 8, Judge:  Under Australian law, all the

11     information that's been attached to this complaint is illegal

12     to have.  It is barred by Australian law for that information

13     to have been leaked and published.

14          So to -- for them to ask as a topic, "I want to know

15     everything that the ATO investigated by you, Dr. Wright," is

16     way, way beyond this case.  And I think we probably even get

17     close to start to define an appropriate set of sheep-herding

18     topics.

19          THE COURT:  Mr. Freedman, anything further?

20          MR. FREEDMAN:  I mean, it's a somewhat incomplete

21     statement.  I mean, I don't know if Mr. Rivero is just reading

22     out the objectionable portions.  But it goes further to the

23     claim.

24          You have the details surrounding Craig -- this is under

25     3, so I'm at Docket Entry 114-5, Page 2, 3:  Details

 1    surrounding Craig and Dave's partnership to create Satoshi

 2    Nakamoto, including the methods of communication they used

 3    during that period, the accounts they held to collaborate

 4    (technological and money), the general process of their

 5    collaboration, and to identify the computers and servers

 6    Satoshi Nakamoto used to draft the white paper, program Bitcoin

 7    and mine the first few Bitcoins.

 8            I mean, yes, it touches on the merits.  This is not

 9    going to be like:  Why did you do this?  How did you do this?

10    But the purpose of this is just to try to get like a flavor of

11    where we need to focus discovery.

12            And the issue, your Honor, that we were just discussing

13    [inaudible] the investigation.  The Court deferred it, you

14    know.  I'm never one to [inaudible] deposition, the transcript.

15            But the point is, if you can't even ask about what they

16    were about and -- then how do we determine really which ones

17    are relevant and which ones are irrelevant?  Then you've got to

18    give up of all of them.

19            I don't know, your Honor.  I'm just -- I don't want

20    to -- I didn't want to have to come to you about this.  But I

21    can't figure out a way to ask the questions and the subjects

22    that'll get us the information that we need to take literally

23    thousands of dollars of document review and stuff like that in

24    this case and agree with the Defendant on it.

25            So I leave it to the Court.

73

1          THE COURT:  All right.

2          MR. RIVERO:  Judge, if I may.

3          THE COURT:  Yes.

4          MR. RIVERO:  Yes, Judge.

5          Look, let me take an example, because I think -- I

6    don't think this is that complicated.  I would have no

7    objection if No. 3 -- No. 3 were the methods of communication

8    between Craig Wright and Dave Kleiman during whatever period of

9    time.

10          I think it would be better to describe it by time

11    period, if they want to say '07 until whenever, you know,

12    Bitcoin was issued; and then Dr. Wright's going to say what

13    he's going to say about that.  I have absolutely no objection

14    to that.  That's plainly within what the Court's talking about.

15          But the general process of their collaboration, let's

16    assume the question is subject to general parts of the

17    collaboration for the creation of Satoshi Nakamoto, Judge.

18    First of all, I'm not even sure that's part of this case.  But

19    to the extent it is, it goes to the entire merits of the case.

20          All I'm suggesting, Judge, is the way that this is

21    being written is inviting that by Question 3 -- and, Judge,

22    I've been doing this for 33 years.  I don't think I've ever

23    made a relevance objection that was not permitted.  But the

24    Court certainly said an [inaudible] circumstance under the --

25    because of the concept that it would be hard to.

```
 1              I don't want to make those objections, Judge.  I don't

 2      want to have that being contested before the Court as to

 3      whether it's sanctionable or not.  I think it is just a recipe

 4      for disaster.

 5              Judge, I've had a judge, a special master at a

 6      deposition.  I don't know if we could convince you to come to

 7      London.  But for any kind of topic like that, I think my client

 8      would agree with me for us to pay you to be there.  And

 9      [inaudible] to the list.

10              THE COURT:  All right.  I don't think the

11      Administrative Office of the US Courts would allow me to go to

12      London.  But I appreciate the offer.  Okay.

13              Listen, I think this is fun.  I think this is exactly

14      what I planned.  I think the more information that can be

15      exchanged about the case earlier through simply asking and

16      getting answers is better.  It's going to help us.

17              Everything we've talked about today in terms of

18      document production can be narrowed.  Everything we're going to

19      talk about in terms of further production in the future can be

20      narrowed.  I've told you I will make myself available by

21      telephone on the day in which the deposition occurs in London.

22      And I will rule on, you know, anything I need to rule on at

23      that time.

24              When I read No. 3, I'm hoping that the real emphasis is

25      after the "including" clause, not before the "including"
```

1    clause.

2         But the only argument you haven't heard from them yet

3    is that none of this is relevant.  The argument is, they

4    shouldn't be able to ask about it yet.  But everything that's

5    in here is relevant and necessary to the efficient remedy of

6    the case, and I'll allow it.  And I'll allow you to say

7    [inaudible] when you depose whoever the Plaintiff -- whoever

8    the Defendant chooses to depose.  If you chose to depose

9    Mr. Kleiman, then I'll give you the same leeway.

10        So as to an objection to the deposition topics, it's

11   overruled.  And I'll rule on them as I need to at the time.

12        All right.  Have I now dealt with everything that was

13   before the Court today?

14        MR. FREEDMAN:  Only, your Honor -- the Court imposed a

15   deadline of today to hand the drives over to -- Dave Kleiman's

16   drives to our partner.  I know the drives are in New York.  We

17   were waiting for the Court to enter a confidentiality order,

18   which it will now do.

19        THE COURT:  Yes.  How much time do you need?

20        MR. FREEDMAN:  We could deliver it tomorrow if the

21   Court enters a confidentiality order today.

22        THE COURT:  Okay.  And, Mr. Rivero, Ms. Markoe, it's

23   5:30 in the afternoon.  Any objection to getting the drives

24   tomorrow as opposed to today?

25        MS. MARKOE:  I mean, I don't think we really have much

 1   of a choice in the matter.

 2          THE COURT:  I don't think you do, either, but I thought

 3   I'd be polite and ask you anyway.

 4          MS. MARKOE:  Yes.  As long as we have them as early as

 5   possible tomorrow.

 6          THE COURT:  Right.

 7          I'm going to -- as soon as I walk out of the courtroom,

 8   my clerk is sitting here next to me.  We're going to go

 9   downstairs.  We'll pull up your proposed order and we'll enter

10   the order in the next 25 minutes.

11          And so, Mr. Freedman, start to make the arrangements to

12   get the drive delivered tomorrow.  And please do it as early in

13   the day as you can.

14          And I guess we'll all be back together again next

15   Thursday.  And unless you need me sooner, you know how to find

16   me.

17          All right.  We'll be in recess.  Thank you.

18          MR. FREEDMAN:  Judge, can I -- I lost the Court.

19          (Proceedings concluded.)

20

21

22

23

24

25

1

2

                    C E R T I F I C A T E

3          I hereby certify that the foregoing is an

4    accurate transcription of the proceedings in the

5    above-entitled matter produced to the best of my ability.

6

7

     _____          /s/Lisa Edwards
8         DATE               LISA EDWARDS, RDR, CRR
                             (305) 439-7168
9                            Reporterlisaedwards@gmail.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**'**

**'07** [1] - 73:11

**/**

**/s/Lisa** [1] - 77:7

**1**

**1** [8] - 1:9, 9:13, 18:7, 27:11, 28:16, 55:13, 58:5, 70:2
**1,000** [1] - 8:8
**10** [2] - 61:23, 64:3
**100** [1] - 1:17
**1000** [1] - 1:25
**10504** [1] - 1:21
**11** [1] - 67:24
**114** [2] - 5:14, 41:12
**114-1** [1] - 34:18
**114-5** [2] - 68:5, 71:25
**115** [1] - 4:8
**12** [2] - 61:24, 64:3
**13** [2] - 61:25, 64:3
**14** [3] - 1:6, 62:1, 64:3
**15** [3] - 10:21, 20:18, 64:3
**15,000** [2] - 11:19, 11:21
**16** [1] - 28:23
**17** [2] - 64:7, 64:23
**18** [1] - 28:23
**18,000** [1] - 10:13
**18-80176** [1] - 3:2
**18-80176-CIVIL-BLOOM** [1] - 1:2
**1N** [1] - 61:24
**1st** [1] - 13:15

**2**

**2** [3] - 55:13, 70:2, 71:25
**2008** [2] - 18:20
**2010** [1] - 41:4
**2011** [1] - 18:21
**2013** [3] - 18:8, 18:17, 18:18, 19:23, 20:4, 21:7, 21:16, 23:18, 54:5, 55:15, 65:11, 66:1, 66:11
**2018** [1] - 41:4
**2019** [1] - 1:6
**20th** [1] - 44:19

**21st** [2] - 30:11, 31:17
**2349** [2] - 30:2
**24** [1] - 34:18
**25** [2] - 9:10, 76:10
**2525** [1] - 1:24
**27** [1] - 28:23
**2800** [1] - 1:18
**2:00** [1] - 31:16

**3**

**3** [14] - 9:14, 23:12, 23:25, 24:22, 27:12, 28:16, 55:13, 69:22, 71:25, 73:7, 73:21, 74:24
**30** [8] - 8:4, 47:5, 47:14, 47:18, 47:23, 49:15, 50:9, 50:16
**30(b)(6)** [1] - 69:16
**305** [2] - 2:1, 77:8
**31st** [3] - 19:22, 20:4, 21:7
**33** [1] - 73:22
**33-3** [1] - 33:21
**33121** [1] - 1:18
**33134** [1] - 1:25
**333** [1] - 1:20
**36** [8] - 32:7, 32:23, 39:14, 40:17, 41:16, 42:11, 43:15, 46:14
**37** [8] - 32:7, 32:23, 39:14, 40:17, 41:16, 42:11, 43:15, 46:15
**3:45** [1] - 31:17

**4**

**4** [5] - 23:18, 24:6, 24:22, 26:24, 28:17
**40** [10] - 32:6, 32:23, 39:16, 39:17, 39:19, 40:12, 40:19, 41:2, 42:11, 46:15
**41** [11] - 6:15, 12:17, 32:6, 32:23, 39:16, 39:17, 39:19, 40:12, 40:19, 42:11, 46:15
**439-7168** [2] - 2:1, 77:8
**45** [1] - 42:22
**48** [1] - 18:2
**48-hour** [2] - 17:19, 17:22
**4th** [4] - 25:11, 25:13, 25:16, 25:20

**5**

**5** [3] - 9:11, 41:12, 70:19
**500** [1] - 17:11
**57** [3] - 46:25, 47:1
**58** [6] - 10:19, 11:2, 11:19, 14:5, 14:11, 16:2
**5:00** [1] - 17:25
**5:30** [1] - 75:23

**6**

**60** [2] - 50:19
**602,000** [1] - 51:9
**62** [5] - 54:12, 56:18, 57:17, 57:19
**650,000** [1] - 34:8

**7**

**7** [3] - 9:14, 71:4

**8**

**8** [4] - 61:22, 64:3, 71:10
**88** [3] - 7:7, 57:24, 60:4

**9**

**9** [1] - 67:24
**90** [2] - 8:7, 16:15
**9:30** [1] - 31:2

**A**

**ability** [2] - 40:10, 77:5
**able** [8] - 5:18, 6:5, 17:2, 25:15, 25:22, 36:25, 55:8, 75:4
**ably** [1] - 3:20
**above-entitled** [1] - 77:5
**absolutely** [5] - 15:22, 15:24, 16:4, 32:24, 73:13
**absurd** [1] - 12:24
**accept** [1] - 9:13
**access** [2] - 33:6, 69:21
**accommodation** [1] - 8:19

**account** [1] - 16:15
**accounts** [4] - 7:19, 68:12, 68:13, 72:3
**accurate** [2] - 15:1, 77:4
**action** [1] - 60:19
**activity** [1] - 52:7
**actual** [2] - 15:3, 36:11, 37:3
**add** [2] - 15:25, 37:3
**adding** [1] - 35:13
**addition** [3] - 25:21, 39:2, 51:5
**additional** [4] - 15:9, 28:17, 37:4, 44:18
**address** [8] - 11:14, 14:20, 20:12, 22:5, 37:11, 41:22, 53:1, 54:8
**addressed** [2] - 52:12, 63:21
**addresses** [14] - 11:14, 13:5, 14:9, 14:10, 15:3, 15:4, 15:6, 20:18, 20:19, 20:24, 21:18, 21:19
**Administrative** [1] - 74:11
**admission** [1] - 40:2
**admissions** [6] - 32:16, 33:1, 33:15, 49:18, 49:19, 50:4
**admits** [1] - 58:8
**advance** [1] - 39:8
**adverse** [1] - 56:9
**affair** [1] - 58:5
**affidavit** [8] - 29:10, 29:19, 29:24, 34:1, 40:8, 42:6, 64:25
**afternoon** [11] - 3:1, 3:7, 3:9, 3:10, 3:12, 3:14, 31:3, 31:7, 31:9, 31:10, 75:23
**afterwards** [1] - 37:17
**agent** [1] - 51:8
**agents** [4] - 7:19, 33:3, 41:4, 41:14
**ago** [3] - 6:13, 9:15, 12:17
**agree** [10] - 16:4, 24:6, 41:25, 44:25, 45:6, 46:4, 64:9, 65:16, 72:24, 74:8
**agreeable** [1] - 38:4
**agreed** [14] - 6:15, 9:19, 10:1, 12:17, 22:4, 23:24, 35:4, 35:11, 47:14, 48:20, 51:1, 60:22, 64:1,

66:3
**agreeing** [3] - 24:1, 26:20, 62:2
**agreement** [7] - 13:13, 45:16, 46:5, 51:1, 58:10, 58:20, 70:9
**agreements** [3] - 24:3, 53:13, 64:18
**agrees** [1] - 15:16
**ahead** [5] - 17:7, 17:8, 17:9, 32:5, 46:25
**al** [1] - 1:5
**allegation** [2] - 19:2, 21:25
**allegations** [1] - 22:8
**allege** [1] - 29:12
**alleged** [1] - 51:15
**alleges** [2] - 54:17, 58:2
**allow** [5] - 23:7, 54:3, 74:11, 75:6
**allowed** [1] - 49:13
**almost** [1] - 60:23
**alone** [2] - 45:4, 46:18
**alternate** [1] - 25:18
**Amanda** [1] - 3:16
**Amanda's** [1] - 20:8
**amended** [3] - 29:11, 32:11
**amount** [2] - 7:14, 35:6
**ANDRES** [1] - 1:22
**andres** [1] - 3:14
**Andrew** [1] - 6:25
**answer** [2] - 62:18, 67:17
**answers** [5] - 26:15, 27:4, 37:9, 63:24, 74:16
**anticipate** [1] - 25:14
**anyway** [2] - 5:3, 76:3
**apologize** [4] - 28:23, 29:5, 37:1, 43:5
**APPEARANCES** [1] - 1:15
**appearances** [1] - 3:5
**appeared** [1] - 37:17
**appearing** [2] - 3:15
**Appearing** [2] - 1:17, 1:23
**Appendix** [3] - 28:24, 29:9, 31:25
**apple** [1] - 9:23
**apple-and-oranges**

[1] - 9:23
**apples** [1] - 11:8
**apples-to-oranges**
[1] - 11:8
**applications** [1] -
24:3
**applies** [1] - 46:17
**appreciate** [4] -
39:11, 59:15, 67:17,
74:12
**appropriate** [5] -
22:7, 35:5, 44:15,
48:11, 71:17
**approval** [1] - 4:13
**April** [4] - 25:11,
25:13, 25:16, 25:20
**argued** [1] - 36:12
**arguing** [1] - 32:15
**argument** [13] -
18:12, 23:14, 29:21,
36:15, 36:22, 37:11,
37:12, 41:21, 63:10,
63:15, 63:16, 75:2,
75:3
**arises** [1] - 49:9
**Armonk** [1] - 1:21
**arrangements** [1] -
76:11
**article** [2] - 58:8,
58:13
**aside** [1] - 40:4
**aspect** [1] - 51:2
**aspects** [1] - 32:12
**asserting** [1] - 20:20
**assessment** [2] -
64:5, 64:6
**assets** [2] - 6:11,
19:8
**assigned** [1] - 52:14
**assignment** [2] -
24:8, 26:18
**associated** [4] -
10:23, 20:23, 51:25,
52:15
**assume** [3] - 21:15,
59:23, 73:16
**assuming** [4] - 20:2,
39:5, 41:21, 65:23
**ATO** [9] - 30:1, 30:2,
34:9, 35:18, 38:15,
40:1, 41:4, 71:15
**attached** [3] - 11:18,
64:25, 71:11
**attachment** [1] - 29:9
**attempt** [5] - 18:11,
19:7, 29:4, 53:1,
58:14
**attention** [1] - 59:22
**auction** [1] - 58:16
**AUDIO** [1] - 1:13

**Australia** [1] - 29:13
**Australian** [11] -
32:13, 33:3, 33:14,
34:4, 41:14, 44:8,
45:25, 71:3, 71:6,
71:10, 71:12
**authority** [2] - 44:8,
45:25
**availability** [1] -
30:12
**available** [1] - 74:20
**aware** [2] - 56:2, 56:3

## B

**backed** [1] - 24:4
**backward** [1] - 27:24
**backwards** [3] -
5:19, 18:17, 22:19
**bad** [1] - 25:17
**balance** [2] - 22:15,
67:22
**barred** [1] - 71:12
**based** [7] - 10:18,
27:3, 44:18, 56:24,
62:4, 62:14, 68:13
**baseline** [1] - 23:14
**basic** [2] - 68:24,
70:3
**basis** [4] - 13:23,
14:1, 18:2, 54:7
**batch** [3] - 17:1,
17:12, 17:14
**batched** [3] - 11:2,
13:25, 17:10
**batches** [3] - 17:11,
17:15
**batching** [1] - 13:22
**BEACH** [1] - 1:2
**Beach** [1] - 1:4
**become** [1] - 45:23
**becomes** [3] - 21:9,
50:6, 61:12
**BEFORE** [1] - 1:12
**beginning** [1] - 28:12
**beginnings** [1] - 58:6
**behalf** [4] - 3:8, 3:11,
3:13, 56:10
**behind** [1] - 18:14
**belong** [2] - 24:24,
25:5
**belonged** [5] - 18:13,
18:25, 58:12, 58:22,
58:23
**belongs** [4] - 25:4,
25:7, 25:8, 29:22
**beneficiary** [3] -
24:10, 26:21, 52:17
**best** [6] - 3:22,

30:18, 38:7, 39:12,
68:4, 77:5
**better** [7] - 3:21,
12:11, 19:24, 20:1,
63:20, 73:10, 74:16
**between** [21] - 6:2,
6:23, 6:24, 6:25, 7:1,
31:9, 41:14, 43:11,
43:18, 43:22, 44:5,
44:7, 46:22, 48:25,
49:24, 50:1, 55:16,
56:24, 65:12, 73:8
**beyond** [5] - 22:7,
32:18, 49:3, 56:22,
71:16
**big** [3] - 9:5, 9:7,
65:13
**billions** [1] - 58:17
**bit** [4] - 6:17, 37:9,
53:21, 54:16
**Bitcoin** [45] - 18:8,
18:11, 18:13, 18:25,
19:20, 19:22, 20:3,
20:23, 21:7, 21:15,
22:15, 22:22, 23:13,
26:18, 43:12, 44:13,
44:22, 44:24, 45:1,
45:4, 45:6, 45:8,
45:14, 46:17, 49:21,
50:20, 51:6, 51:12,
51:20, 53:14, 54:4,
54:13, 54:19, 55:11,
55:14, 58:3, 58:6,
65:2, 65:10, 68:9,
68:21, 72:6, 73:12
**Bitcoin-related** [1] -
23:13
**Bitcoins** [2] - 51:9,
72:7
**blame** [1] - 14:25
**block** [1] - 58:16
**blockchain** [2] -
23:13, 26:19
**blockchain-related**
[2] - 23:13, 26:19
**Bloom** [6] - 4:4, 21:3,
56:4, 56:5, 56:9,
56:14
**BOIES** [2] - 1:17,
1:20
**boil** [1] - 5:17
**bonds** [1] - 61:23
**Boulevard** [1] - 1:24
**boxes** [1] - 8:24
**breach** [1] - 55:3
**breached** [1] - 55:2
**breaks** [1] - 8:6
**briefly** [1] - 56:20
**bring** [4] - 8:17,
45:11, 45:16, 57:11

**broad** [4] - 36:1,
37:19, 53:23, 65:16
**broaden** [1] - 34:13
**broader** [2] - 39:25,
46:3
**broadly** [1] - 42:15
**brought** [1] - 59:21
**BRUCE** [1] - 1:12
**bull's** [8] - 9:4, 9:20,
9:24, 11:5, 12:3, 33:8,
44:3, 57:12
**bull's-eye** [8] - 9:4,
9:20, 9:24, 11:5, 12:3,
33:8, 44:3, 57:12
**bunch** [3] - 43:12,
61:18, 61:20
**burden** [13] - 21:10,
28:2, 36:15, 37:3,
38:1, 40:4, 41:22,
41:23, 49:2, 50:12,
61:13, 63:8, 64:5
**burdensome** [17] -
22:14, 23:6, 30:5,
35:21, 36:9, 36:14,
36:22, 37:11, 41:21,
42:16, 46:16, 48:21,
50:6, 61:6, 61:12,
62:20, 63:2
**burdensomeness**
[1] - 37:12
**business** [2] - 19:13,
55:9
**BY** [1] - 2:1

## C

**calendar** [1] - 30:17
**camera** [2] - 67:10,
67:21
**capturing** [1] - 49:18
**care** [2] - 52:23, 55:3
**careful** [1] - 5:7
**carefully** [1] - 9:2
**carrying** [1] - 19:13
**cart** [1] - 20:9
**CASE** [1] - 1:2
**case** [30] - 3:20, 6:8,
6:9, 7:8, 12:10, 15:11,
22:8, 22:20, 25:3,
26:1, 30:9, 43:19,
43:25, 45:24, 49:14,
49:15, 50:13, 50:14,
51:2, 56:11, 56:25,
57:4, 70:4, 71:16,
72:24, 73:18, 73:19,
74:15, 75:6
**Case** [1] - 3:2
**cases** [2] - 9:6, 11:11
**casting** [1] - 44:22

**category** [3] - 39:25,
40:13, 49:11
**center** [1] - 6:8
**certain** [2] - 9:25,
11:4
**certainly** [8] - 14:17,
23:11, 28:7, 38:16,
49:25, 54:25, 55:20,
73:24
**certify** [1] - 77:3
**cetera** [2] - 9:14,
43:13
**chance** [1] - 59:6
**change** [1] - 13:17
**characterization** [2]
- 70:5, 70:6
**charge** [1] - 7:10
**choice** [1] - 76:1
**chooses** [1] - 75:8
**chose** [1] - 75:8
**circa** [1] - 18:20
**circumstance** [1] -
73:24
**circumstances** [1] -
22:20
**claim** [7] - 21:4, 21:5,
21:6, 21:8, 30:4,
71:23
**claimed** [1] - 19:6
**claims** [7] - 19:5,
32:17, 33:16, 33:18,
68:25, 71:9
**clarify** [2] - 15:5,
32:22
**clause** [2] - 74:25,
75:1
**clear** [10] - 15:5,
15:11, 28:15, 31:6,
32:12, 42:3, 47:16,
56:8, 57:8, 62:2
**clearly** [5] - 45:8,
58:13, 62:18, 63:3,
63:12
**clerk** [1] - 76:8
**client** [14] - 12:10,
14:17, 15:8, 15:17,
15:18, 16:4, 22:21,
48:25, 49:1, 49:25,
50:2, 67:5, 67:17,
74:7
**client's** [2] - 12:24,
42:4
**close** [3] - 49:19,
67:23, 71:17
**cloud** [1] - 68:13
**cloud-based** [1] -
68:13
**Cloudcroft** [1] -
33:24
**coin** [1] - 61:25

**Coin** [2] - 34:21, 40:22
**Coin-Exchange** [2] - 34:21, 40:22
**cold** [1] - 8:16
**collaborate** [1] - 72:3
**collaborated** [1] - 70:21
**collaboration** [7] - 66:14, 70:11, 70:19, 70:25, 72:5, 73:15, 73:17
**collect** [2] - 21:13, 37:2
**collected** [3] - 7:19, 7:20
**comfortable** [1] - 39:20
**coming** [3] - 39:9, 40:10, 55:22
**comment** [1] - 56:1
**commit** [3] - 14:13, 17:2, 17:19
**commitment** [1] - 16:19
**communicate** [3] - 56:4, 68:11
**communication** [3] - 13:8, 72:2, 73:7
**communications** [28] - 6:9, 35:18, 40:1, 40:20, 41:3, 41:7, 43:11, 43:18, 43:22, 44:5, 44:7, 44:21, 46:1, 46:3, 47:1, 48:12, 48:22, 48:25, 49:13, 50:19, 53:13, 55:16, 57:21, 58:20, 62:3, 63:21, 64:4, 65:12
**companies** [4] - 7:20, 8:4, 35:3, 38:17
**company** [2] - 8:7, 52:16
**compel** [1] - 27:1
**compelling** [1] - 28:17
**complaint** [16] - 29:12, 32:11, 47:15, 47:24, 48:9, 48:18, 50:16, 51:18, 54:17, 58:1, 58:5, 64:24, 65:5, 70:12, 71:11
**complete** [1] - 69:24
**completed** [1] - 8:22
**completely** [1] - 59:8
**complicated** [1] - 73:6
**complicit** [1] - 51:15
**computers** [2] -

68:14, 72:5
**concept** [3] - 52:22, 69:16, 73:25
**concern** [8] - 4:20, 5:4, 5:5, 5:6, 40:9, 47:19, 55:21
**concerned** [1] - 4:24
**concerning** [1] - 53:14
**concise** [1] - 29:4
**concluded** [1] - 76:19
**conducting** [1] - 67:10
**confer** [12] - 10:6, 10:8, 10:15, 11:1, 13:15, 15:2, 59:2, 59:19, 59:22, 60:2, 64:12, 64:17
**conference** [3] - 44:19, 52:13, 52:19
**CONFERENCE** [1] - 1:11
**conferred** [1] - 59:23
**conferring** [1] - 10:7
**confers** [1] - 41:11
**confidentiality** [6] - 4:5, 4:9, 4:21, 5:8, 75:17, 75:21
**confirm** [1] - 5:22
**confront** [1] - 25:2
**confused** [1] - 19:18, 32:10
**confusion** [3] - 7:23, 14:5, 40:18
**connection** [1] - 24:24
**consider** [2] - 12:3, 67:11
**consideration** [1] - 27:13
**considered** [1] - 17:14
**contention** [1] - 18:19
**contest** [1] - 61:11
**contested** [1] - 74:2
**continue** [5] - 16:10, 16:12, 39:9, 39:12, 46:20
**continued** [1] - 18:22
**continues** [1] - 18:21
**contrary** [1] - 54:8
**contrast** [1] - 69:22
**control** [5] - 8:24, 51:9, 52:23, 53:2
**conversation** [1] - 41:14
**conversion** [1] - 19:5
**convince** [1] - 74:6

**copy** [3] - 8:22, 32:1, 38:23
**Coral** [1] - 1:25
**core** [2] - 33:16, 43:15
**correct** [8] - 4:14, 4:16, 13:11, 23:20, 26:22, 28:19, 44:9, 62:6
**correcting** [1] - 10:13
**correctly** [4] - 10:12, 15:21, 36:22, 63:16
**corresponded** [1] - 7:5
**counsel** [7] - 3:6, 8:21, 9:10, 10:4, 10:18, 11:12, 45:16
**counsels'** [1] - 3:5
**couple** [5] - 7:2, 8:18, 22:3, 26:3, 70:15
**course** [2] - 67:19, 68:16
**court** [2] - 37:17, 47:13
**COURT** [145] - 1:1, 3:1, 3:9, 3:12, 3:18, 3:25, 4:19, 5:13, 8:14, 12:5, 13:1, 13:14, 13:16, 14:3, 14:22, 15:13, 15:15, 15:23, 16:6, 16:25, 17:4, 17:6, 17:8, 17:20, 17:24, 18:5, 19:9, 19:16, 19:18, 20:2, 20:25, 22:9, 23:9, 23:11, 23:17, 23:21, 24:4, 24:14, 25:14, 25:24, 26:6, 26:13, 26:24, 27:10, 27:19, 27:22, 28:9, 28:19, 28:23, 29:16, 30:7, 30:16, 30:22, 30:25, 31:5, 31:8, 31:13, 31:15, 31:19, 31:21, 32:4, 32:8, 34:6, 34:14, 35:23, 36:21, 38:3, 38:18, 38:25, 39:3, 39:17, 39:24, 40:24, 41:8, 41:18, 41:23, 42:3, 42:21, 43:2, 43:5, 43:9, 44:1, 44:4, 44:10, 44:20, 45:1, 45:19, 46:12, 46:19, 48:2, 48:4, 48:15, 49:5, 49:7, 50:8, 50:19, 51:22, 52:8, 52:20, 53:6, 53:8, 53:16, 55:5,

55:10, 55:25, 57:16, 58:7, 58:24, 59:5, 59:14, 59:16, 59:25, 60:3, 60:12, 61:2, 61:4, 61:14, 61:18, 61:21, 62:7, 62:9, 62:22, 62:25, 63:19, 64:10, 65:3, 65:9, 66:6, 66:16, 66:21, 66:23, 67:3, 67:15, 67:19, 68:2, 68:6, 69:10, 71:19, 73:1, 73:3, 74:10, 75:19, 75:22, 76:2, 76:6
**Court** [51] - 4:2, 4:17, 8:3, 9:3, 9:4, 14:18, 18:16, 27:13, 28:17, 29:6, 29:11, 32:25, 33:5, 33:8, 33:23, 34:7, 36:1, 36:7, 36:20, 37:20, 39:20, 39:23, 41:21, 43:7, 45:6, 45:12, 45:13, 45:17, 47:21, 48:18, 53:1, 53:2, 54:16, 56:21, 59:21, 61:5, 66:24, 66:25, 68:23, 70:1, 70:14, 70:16, 72:13, 72:25, 73:24, 74:2, 75:13, 75:14, 75:17, 75:21, 76:18
**Court's** [6] - 18:25, 47:19, 49:23, 59:21, 69:14, 73:14
**courtroom** [1] - 76:7
**Courts** [1] - 74:11
**cover** [3] - 25:19, 30:20, 31:23
**covering** [1] - 38:17
**Craig** [21] - 3:4, 6:24, 11:15, 12:22, 20:13, 21:18, 41:3, 41:14, 43:18, 43:22, 51:8, 51:14, 52:14, 54:17, 58:11, 58:23, 69:23, 70:20, 71:24, 72:1, 73:8
**CRAIG** [1] - 1:8
**create** [7] - 49:1, 49:2, 54:18, 70:10, 70:21, 70:23, 72:1
**created** [6] - 6:11, 18:21, 54:19, 55:7, 58:2, 58:4
**creation** [1] - 73:17
**criminal** [1] - 31:1
**cross** [1] - 46:23
**cross-cutting** [1] - 46:23
**CRR** [2] - 2:1, 77:8

**cryptocurrency** [6] - 43:13, 64:24, 65:2, 65:25, 66:2
**cuff** [1] - 64:20
**cumulative** [3] - 26:16, 40:7, 64:6
**current** [2] - 33:11, 49:9
**custody** [2] - 52:23, 53:2
**cutting** [1] - 46:23
**cyber** [1] - 12:12

**D**

**dark** [3] - 8:10, 33:4
**data** [2] - 35:7, 37:1, 37:2
**date** [21] - 5:18, 5:20, 6:14, 7:15, 8:9, 11:4, 16:8, 17:1, 17:3, 27:14, 27:17, 33:1, 47:25, 48:1, 48:8, 48:9, 48:18, 48:23, 49:14, 51:3, 65:23
**DATE** [1] - 77:8
**dates** [9] - 25:18, 26:3, 26:7, 26:10, 26:12, 55:22, 65:23, 66:4
**Dave** [44] - 7:1, 7:5, 9:21, 11:15, 12:14, 12:15, 12:21, 13:5, 15:6, 15:19, 20:13, 20:20, 21:22, 21:23, 21:25, 22:1, 23:24, 24:9, 35:15, 40:22, 45:1, 51:14, 51:24, 51:25, 53:15, 53:19, 54:18, 58:2, 58:10, 58:23, 60:24, 62:4, 68:21, 68:22, 69:6, 69:18, 69:19, 69:20, 69:21, 70:20, 73:8, 75:15
**Dave's** [5] - 22:17, 54:20, 54:21, 69:23, 72:1
**dave@davekleiman .com** [1] - 12:16
**davekleiman@ davekleiman.com** [2] - 14:14, 16:13
**David** [5] - 1:5, 3:3, 34:19, 34:20, 60:16
**days** [12] - 6:15, 7:7, 7:24, 12:17, 37:24, 47:5, 47:14, 47:18, 47:23, 49:15, 50:9,

50:16
**de** [2] - 1:24, 66:19
**dead** [2] - 12:10, 12:25
**deadline** [2] - 48:6, 75:15
**deadlines** - 6:6, 7:22
**deal** [6] - 4:7, 4:8, 4:9, 9:12, 27:23, 53:23
**dealt** [1] - 75:12
**death** [3] - 18:24, 54:20, 54:21
**debate** [1] - 4:11
**decedent** [1] - 6:2
**December** [5] - 18:7, 19:22, 20:4, 21:7, 21:15
**decided** [1] - 62:21
**deciding** [2] - 37:6, 54:10
**decisions** [1] - 64:20
**decline** [1] - 18:18
**deem** [1] - 62:3
**deemed** [1] - 40:1
**deep** [2] - 45:20, 69:3
**deeply** [1] - 66:18
**Defendant** [33] - 3:13, 4:22, 5:9, 6:15, 7:3, 7:4, 7:22, 8:1, 8:3, 15:11, 15:14, 18:23, 20:5, 28:1, 33:11, 33:12, 36:10, 37:11, 37:16, 37:23, 37:25, 41:17, 44:10, 61:10, 61:11, 62:2, 62:19, 66:25, 68:25, 69:4, 72:24, 75:8
**defendant** [2] - 1:9, 66:18
**DEFENDANT** [1] - 1:22
**Defendant's** [3] - 5:17, 18:8, 37:7
**Defendants** [13] - 5:9, 5:20, 7:13, 7:14, 7:17, 9:18, 33:19, 34:1, 34:3, 36:5, 36:6, 37:20, 37:23
**defense** [2] - 34:8, 48:4
**Defense** [1] - 3:4
**defer** [7] - 31:24, 37:7, 37:10, 54:2, 54:10, 65:9, 67:19
**deferred** [1] - 72:13
**define** [2] - 63:1, 71:17

**definitely** [1] - 55:23
**definition** [5] - 52:9, 52:11, 52:18, 52:25, 53:7
**defrauding** [1] - 51:16
**deliver** [1] - 75:20
**delivered** [1] - 76:12
**demand** [1] - 11:4
**demonstrated** [1] - 61:9
**Demoragan** [1] - 33:24
**denies** [1] - 54:6
**deny** [2] - 57:19, 64:2
**depo** [1] - 70:2
**depose** [3] - 75:7, 75:8
**deposition** [25] - 22:21, 25:9, 25:15, 26:16, 26:17, 27:3, 27:4, 27:5, 27:24, 28:20, 37:7, 40:7, 42:5, 54:2, 54:3, 54:11, 63:23, 64:3, 64:9, 67:25, 68:8, 72:14, 74:6, 74:21, 75:10
**derailing** [1] - 38:5
**describe** [2] - 11:7, 73:10
**described** [1] - 9:3
**Design** [5] - 33:24, 34:3, 35:14, 35:16, 61:22
**despite** [1] - 7:15
**details** [6] - 10:15, 69:23, 70:8, 70:9, 71:24, 71:25
**determination** [1] - 67:1
**determine** [4] - 18:11, 23:5, 66:4, 72:16
**determining** [2] - 66:2, 67:11
**devices** [4] - 69:19, 69:20, 69:21
**DEVIN** [1] - 1:16
**devin** [1] - 3:7
**died** [2] - 54:24, 55:1
**difference** [1] - 4:11
**different** [5] - 10:20, 29:20, 42:9, 61:18, 61:20
**differentiating** [1] - 25:7
**difficult** [1] - 21:14
**DIGITAL** [1] - 1:13

**diligently** [2] - 56:2, 56:16
**direct** [3] - 16:20, 17:25, 46:2
**directed** [2] - 9:4, 38:13
**direction** [1] - 8:20
**directly** [5] - 20:3, 24:25, 44:6, 63:7, 63:11
**disaster** [1] - 74:4
**disclose** [1] - 66:25
**discoverable** [1] - 67:12
**DISCOVERY** [1] - 1:11
**discovery** [25] - 4:3, 5:13, 5:16, 5:21, 5:25, 6:1, 6:4, 6:14, 7:7, 7:13, 21:5, 24:12, 24:16, 24:19, 24:20, 26:25, 36:8, 44:19, 52:13, 52:19, 56:25, 57:5, 57:21, 72:11
**discussed** [2] - 40:22, 52:19
**discusses** [1] - 58:9
**discussing** [4] - 47:2, 48:13, 48:23, 72:12
**discussion** [1] - 70:1
**dismiss** [1] - 42:7
**dispose** [1] - 5:9
**disproportional** [1] - 63:13
**disproportionate** [1] - 42:17
**dispute** [6] - 40:24, 47:11, 50:22, 53:1, 53:5, 53:8
**dissecting** [1] - 62:13
**distinguish** [1] - 56:24
**DISTRICT** [2] - 1:1, 1:1
**DIVISION** [1] - 1:2
**doc** [1] - 30:6
**Docket** [7] - 4:6, 5:14, 33:20, 34:18, 41:12, 68:5, 71:25
**docket** [1] - 30:1
**document** [7] - 7:10, 9:6, 11:11, 29:19, 69:6, 72:23, 74:18
**documentation** [2] - 34:19, 51:8
**documentations** [1] - 9:8
**documents** [50] -

7:8, 7:9, 7:11, 7:14, 8:8, 8:12, 11:20, 11:21, 17:21, 18:7, 19:12, 19:19, 22:5, 24:7, 29:20, 29:24, 29:25, 33:13, 33:14, 33:16, 33:17, 34:3, 34:5, 34:9, 35:3, 35:18, 36:18, 38:23, 39:22, 40:21, 41:13, 43:10, 44:16, 48:8, 48:12, 48:23, 49:12, 50:4, 50:19, 51:3, 51:19, 53:13, 58:20, 62:15, 62:16, 62:23, 64:9, 64:23, 65:8
**dollar** [1] - 36:18
**dollars** [2] - 58:17, 72:23
**domain** [7] - 10:20, 10:22, 11:2, 11:19, 13:24, 14:6, 16:2
**domains** [2] - 14:11, 15:6
**dominated** [1] - 9:7
**done** [14] - 8:25, 10:25, 13:7, 13:9, 14:1, 25:25, 29:23, 38:4, 39:5, 40:25, 49:24, 50:1, 56:3
**door** [1] - 21:20
**double** [1] - 7:14
**doubled** [1] - 35:5
**doubt** [1] - 53:25
**down** [9] - 5:17, 7:2, 8:6, 33:8, 36:2, 44:3, 64:11, 67:9, 68:20
**downstairs** [1] - 76:9
**Dr** [49] - 3:4, 3:15, 3:23, 3:24, 6:2, 12:11, 25:5, 25:8, 25:9, 26:10, 26:15, 27:3, 27:24, 29:10, 29:12, 29:18, 29:22, 30:4, 32:15, 32:17, 33:2, 42:13, 43:12, 44:6, 44:7, 44:21, 49:13, 49:21, 50:5, 51:16, 52:4, 52:23, 54:2, 54:4, 54:6, 54:11, 55:7, 55:12, 55:15, 55:16, 58:2, 58:10, 58:14, 63:22, 64:3, 65:11, 65:12, 71:15, 73:12
**draft** [1] - 72:6
**drafted** [1] - 65:15
**draw** [1] - 34:22
**drilling** - 68:20
**drive** [1] - 76:12

**drives** [4] - 75:15, 75:16, 75:23
**during** [4] - 32:15, 55:17, 72:3, 73:8
**duties** [1] - 55:3
**duty** [1] - 31:1

## E

**early** [5] - 9:1, 26:17, 31:3, 76:4, 76:12
**easily** [1] - 13:7
**edge** [1] - 50:14
**edges** [1] - 63:13
**Edwards** [1] - 77:7
**EDWARDS** [2] - 2:1, 77:8
**effect** [1] - 23:7
**effectively** [1] - 9:15
**efficient** [1] - 75:5
**effort** [3] - 47:13, 68:8, 68:23
**efforts** [1] - 39:11
**either** [4] - 27:14, 54:22, 67:9, 76:2
**elaborate** [1] - 4:17
**electronic** [4] - 69:18, 69:19, 69:20, 69:21
**email** [16] - 6:2, 10:4, 11:13, 11:14, 12:22, 13:5, 14:9, 14:10, 14:20, 15:3, 15:4, 15:6, 20:18, 20:19, 40:8, 68:10
**emailed** [1] - 4:4
**emails** [22] - 6:15, 6:19, 6:23, 7:4, 7:18, 10:5, 10:9, 10:11, 10:23, 12:9, 12:11, 12:12, 12:13, 12:15, 12:22, 12:23, 13:22, 15:9, 15:19, 16:12, 16:15, 50:11
**emergency** [1] - 3:16
**emphasis** [1] - 74:24
**emphasize** [1] - 24:18
**end** [10] - 5:15, 8:25, 28:11, 37:6, 45:13, 54:5, 55:12, 55:15, 65:11, 67:23
**ends** [1] - 48:3
**enter** [4] - 4:21, 5:8, 75:17, 76:9
**entered** [1] - 58:9
**entering** [1] - 64:19
**enters** [1] - 75:21
**entertain** [1] - 64:19

**entire** [3] - 9:14, 70:11, 73:19
**entities** [14] - 33:17, 34:23, 35:20, 36:4, 37:8, 40:21, 40:25, 42:1, 42:7, 43:15, 61:15, 61:18, 71:2
**entitled** [5] - 21:5, 22:19, 22:21, 53:21, 77:5
**entity** [4] - 34:7, 35:11, 35:12, 52:15
**Entry** [7] - 4:6, 5:14, 33:20, 34:18, 41:12, 68:5, 71:25
**epicenter** [1] - 6:9
**ESI** [7] - 5:21, 5:24, 6:1, 9:2, 12:8, 17:17
**ESQ** [5] - 1:16, 1:19, 1:22, 1:23, 1:23
**essentially** [4] - 14:8, 19:21, 60:25, 70:3
**establish** [3] - 20:11, 23:14, 37:3
**Estate** [2] - 1:5, 3:3
**estate** [2] - 29:13, 60:15
**estimate** [2] - 18:8, 19:20
**et** [3] - 1:5, 9:14, 43:13
**ethical** [1] - 5:1
**evening** [2] - 30:21, 31:7
**event** [2] - 4:6, 24:12
**ever-shifting** [1] - 38:10
**evidence** [3] - 20:11, 21:21, 54:8
**exact** [3] - 6:1, 10:16, 40:20
**exactly** [4] - 23:16, 33:5, 67:3, 74:13
**example** [5] - 9:21, 30:1, 69:17, 70:18, 73:5
**excellent** [1] - 20:16
**except** [1] - 5:24
**Exchange** [2] - 34:21, 40:22
**exchanged** [1] - 74:15
**Exhibit** [5] - 20:17, 31:25, 58:5, 68:5
**exhibit** [2] - 22:12, 29:20
**exhibits** [1] - 64:25
**exist** [3] - 62:16, 67:7, 67:8

**existed** [3] - 18:7, 21:7, 23:15
**exists** [2] - 52:6, 59:3
**expanded** [2] - 41:1, 44:18
**expansive** [1] - 52:18
**expect** [2] - 28:4, 30:19
**expectation** [1] - 5:5
**expected** [1] - 10:22
**explain** [4] - 43:20, 49:15, 50:22, 57:24
**explore** [1] - 27:5
**extend** [1] - 49:3
**extending** [1] - 48:6
**extent** [12] - 15:8, 20:17, 21:24, 23:23, 32:14, 35:17, 43:23, 52:2, 52:4, 56:6, 59:12, 73:19
**extreme** [1] - 68:8
**eye** [8] - 9:4, 9:20, 9:24, 11:5, 12:3, 33:8, 44:3, 57:12

## F

**fact** [8] - 7:15, 8:9, 27:12, 48:17, 54:15, 58:9, 61:10, 69:25
**factor** [1] - 18:10
**facts** [1] - 12:10
**fades** [1] - 46:6
**fair** [2] - 17:14, 48:11
**faith** [2] - 53:24, 56:7
**fall** [2] - 40:12, 52:22
**fallacious** [1] - 33:12
**falls** [2] - 65:23, 65:25
**family** [1] - 25:23
**far** [1] - 64:1
**fast** [1] - 12:4
**faster** [1] - 17:18
**February** [3] - 9:10, 13:15, 44:18
**feed** [1] - 19:11
**few** [2] - 49:22, 72:7
**fight** [2] - 69:1, 69:2
**figure** [3] - 8:11, 14:12, 72:21
**file** [4] - 23:7, 28:10, 29:13
**filed** [6] - 4:3, 4:19, 48:9, 48:24, 51:12, 55:12
**filing** [2] - 47:15, 50:16
**finance** [1] - 24:1

**financial** [3] - 21:20, 24:2, 24:3
**fine** [7] - 6:8, 7:24, 14:12, 30:15, 31:7, 31:20, 39:21
**finish** [1] - 8:24
**firm** [3] - 5:1, 5:18, 5:20
**first** [37] - 4:8, 4:12, 5:16, 5:23, 6:12, 8:12, 10:3, 10:8, 10:11, 10:20, 10:21, 11:5, 13:6, 13:10, 14:17, 14:19, 16:14, 17:1, 17:3, 18:16, 20:7, 22:2, 24:11, 24:25, 35:25, 38:3, 40:17, 47:11, 56:22, 57:12, 67:6, 67:8, 69:12, 72:7, 73:18
**five** [2] - 17:15, 62:23
**flavor** [2] - 69:13, 72:10
**FLEXNER** [2] - 1:17, 1:20
**flight** [2] - 30:20, 31:6
**FLORIDA** [1] - 1:1
**Florida** [3] - 1:4, 1:18, 1:25
**focus** [4] - 37:9, 39:12, 46:7, 72:11
**focused** [1] - 6:1
**folder** [3] - 4:12, 4:23, 4:24
**folks** [1] - 8:16
**following** [4] - 26:8, 26:10, 26:11, 28:12
**followup** [1] - 30:12
**FOR** [2] - 1:16, 1:22
**foregoing** [1] - 77:3
**forget** [2] - 4:6, 11:12
**forgetting** [1] - 41:10
**formed** [3] - 6:10, 6:11, 68:17
**former** [1] - 33:11
**forward** [7] - 13:17, 18:17, 19:4, 23:15, 33:2, 47:18, 65:13
**fourth** [1] - 65:19
**frame** [8] - 38:5, 47:10, 47:12, 47:14, 57:9, 66:1, 67:1
**frankly** [1] - 56:21
**fraud** [1] - 29:13
**FREEDMAN** [83] - 1:16, 3:7, 4:16, 5:12, 5:24, 12:7, 14:24, 15:14, 16:24, 17:1, 18:4, 18:15, 19:10,

19:17, 19:24, 23:16, 23:20, 25:16, 25:25, 27:8, 27:11, 27:20, 28:15, 28:22, 29:3, 29:17, 30:15, 31:10, 31:14, 31:18, 32:3, 32:7, 32:24, 34:7, 35:24, 37:13, 39:20, 41:6, 41:9, 41:19, 42:20, 42:24, 43:4, 43:7, 43:14, 44:2, 44:9, 44:25, 45:5, 46:11, 46:13, 47:8, 48:3, 49:17, 50:18, 50:24, 52:24, 53:7, 54:15, 55:6, 55:20, 58:1, 58:8, 59:18, 60:1, 60:10, 61:5, 62:8, 62:10, 62:23, 64:8, 65:1, 65:4, 65:22, 66:22, 66:24, 68:1, 68:3, 68:7, 71:20, 75:14, 75:20, 76:18
**Freedman** [42] - 3:8, 3:9, 4:14, 5:22, 12:5, 15:15, 16:11, 16:19, 18:2, 18:10, 23:13, 27:5, 27:9, 29:2, 29:3, 30:14, 31:8, 32:22, 35:23, 37:14, 39:7, 39:18, 40:16, 41:8, 41:9, 47:8, 49:11, 50:25, 52:20, 53:18, 54:3, 54:7, 54:13, 57:18, 57:25, 59:17, 61:4, 62:9, 64:14, 68:3, 71:19, 76:11
**Freeman** [1] - 25:14
**Friday** [3] - 9:22, 10:3, 11:6
**friend** [1] - 49:19
**FROM** [1] - 1:13
**front** [4] - 10:4, 30:17, 45:17, 52:10
**frustrating** [1] - 62:11
**frustration** [1] - 7:12
**full** [2] - 32:21, 56:22
**fun** [1] - 74:13
**future** [1] - 74:19

## G

**Gables** [1] - 1:25
**gain** [1] - 58:14
**gander** [3] - 60:11, 60:14, 60:21
**general** [9] - 12:8, 40:12, 45:4, 47:9,

70:10, 70:19, 72:4, 73:15, 73:16
**generally** [4] - 43:11, 44:13, 44:21, 44:22
**generating** [1] - 8:7
**given** [7] - 4:12, 15:18, 22:12, 37:16, 50:12, 66:9, 66:19
**glad** [1] - 14:13
**goal** [1] - 40:5
**gold** [1] - 61:23
**goose** [4] - 60:7, 60:10, 60:14, 60:21
**goose-gander** [2] - 60:14, 60:21
**grant** [1] - 59:10
**great** [2] - 18:5, 32:4
**grounds** [1] - 28:2
**groundwork** [1] - 69:4
**guess** [8] - 8:9, 18:24, 54:16, 62:13, 66:8, 67:6, 68:4, 76:14
**guide** [1] - 26:16
**guy** [1] - 14:9

## H

**half** [3] - 6:13, 6:14, 31:17
**hand** [4] - 29:5, 53:17, 53:22, 75:15
**handle** [2] - 4:5, 4:17
**happy** [4] - 4:16, 21:12, 29:7, 39:22, 45:15, 59:10, 65:6
**hard** [6] - 28:24, 36:2, 38:23, 56:6, 56:24, 73:25
**hard-copy** [1] - 38:23
**head** [1] - 32:25
**health** [1] - 28:4
**hear** [15] - 3:18, 13:2, 13:4, 15:21, 20:25, 22:9, 34:15, 36:21, 49:20, 53:17, 53:22, 56:1, 56:18, 57:16
**heard** [4] - 15:16, 33:8, 36:22, 75:2
**hearing** [22] - 11:23, 13:2, 14:7, 14:8, 18:16, 20:7, 20:16, 25:19, 25:22, 28:11, 28:12, 29:8, 30:9, 30:12, 31:16, 32:2, 35:2, 39:23, 41:22, 45:10, 60:5

**heat** [2] - 8:17, 16:1
**held** [6] - 19:12, 20:3, 60:2, 65:25, 66:2, 72:3
**help** [5] - 18:10, 18:23, 37:9, 37:15, 74:16
**helpful** [3] - 32:4, 39:6, 39:7
**herding** [2] - 69:15, 71:17
**hereby** [1] - 77:3
**herself** [1] - 51:11
**high** [1] - 51:18
**high-level** [1] - 51:18
**highly** [2] - 50:10, 51:14
**hit** [14] - 7:21, 8:5, 8:7, 10:24, 13:24, 16:11, 16:12, 32:25, 36:11, 36:15, 37:18, 38:1, 62:21, 65:8
**hits** [5] - 10:12, 11:16, 11:19, 13:24, 14:15
**hitting** [1] - 3:15
**hogwash** [1] - 6:21
**hold** [10] - 15:15, 42:23, 43:10, 49:7, 54:14, 68:12
**holdings** [2] - 18:9, 19:20
**honest** [1] - 52:6
**honestly** [1] - 47:5
**Honor** [68] - 3:7, 3:10, 3:14, 4:16, 5:24, 6:3, 7:7, 12:7, 13:21, 14:24, 17:7, 18:4, 18:15, 19:24, 20:6, 20:16, 23:10, 23:16, 23:20, 23:22, 24:11, 25:16, 27:9, 28:22, 29:3, 30:15, 31:11, 31:18, 32:3, 32:7, 32:24, 35:4, 35:24, 37:13, 41:6, 42:20, 42:24, 43:7, 43:14, 44:2, 44:16, 44:17, 44:25, 45:5, 46:11, 46:13, 47:8, 49:17, 50:24, 51:23, 52:24, 55:20, 55:23, 58:1, 60:11, 61:5, 62:8, 62:11, 63:18, 64:8, 65:4, 65:22, 66:7, 66:22, 68:3, 72:12, 72:19, 75:14
**Honor's** [1] - 66:10
**HONORABLE** [1] - 1:12

**hope** [2] - 3:21, 40:9
**hopefully** [2] - 30:13, 46:4
**hoping** [4] - 28:6, 28:7, 46:20, 74:24
**horse** [1] - 20:10
**Hotwire** [1] - 33:24
**hour** [1] - 31:16
**hours** [1] - 18:2
**Human** [4] - 34:4, 35:15, 35:16, 61:22
**humanly** [1] - 12:4
**Humans** [1] - 33:24

## I

**ID** [1] - 34:21
**idea** [2] - 28:24, 29:1
**ideal** [1] - 25:21
**identification** [2] - 69:18, 70:20
**identified** [9] - 9:25, 10:20, 11:5, 15:10, 22:3, 22:4, 24:23, 70:15, 71:3
**identifies** [1] - 44:17
**identify** [9] - 15:19, 21:18, 22:22, 24:23, 26:20, 40:6, 51:11, 68:24, 72:5
**identifying** [1] - 58:21
**ill** [1] - 27:12
**illegal** [1] - 71:11
**illustrate** [1] - 6:17
**imagine** [2] - 38:14, 50:3
**immediately** [3] - 10:24, 14:14, 16:5
**important** [3] - 7:16, 24:18, 38:6
**impose** [1] - 47:17
**imposed** [1] - 75:14
**in-camera** [2] - 67:10, 67:21
**inaudible** [62] - 5:25, 6:4, 6:10, 6:18, 6:22, 7:6, 7:8, 7:11, 7:12, 8:4, 8:9, 8:12, 10:25, 11:20, 12:14, 12:18, 12:23, 14:13, 14:20, 15:3, 18:20, 19:1, 19:6, 19:10, 19:11, 24:1, 24:7, 27:15, 33:13, 34:8, 36:17, 41:7, 41:19, 45:9, 48:19, 49:21, 49:24, 50:1, 51:10, 51:11, 51:13, 54:25, 55:2,

59:1, 59:24, 62:17, 66:3, 66:10, 68:24, 69:19, 69:21, 70:24, 70:25, 72:13, 72:14, 73:24, 74:9, 75:7
**inaudible]** [13] - 6:20, 8:4, 12:12, 12:13, 27:16, 47:21, 49:6, 50:18, 51:13, 53:3, 55:6, 57:3, 70:3
**inclined** [2] - 18:25, 56:21
**include** [1] - 52:14
**including** [4] - 10:1, 72:2, 74:25
**incomplete** [1] - 71:20
**increase** [1] - 48:24
**incredibly** [1] - 53:23
**indication** [1] - 48:18
**indirectly** [1] - 20:4
**individual** [2] - 51:15, 51:19
**individuals** [9] - 33:9, 33:17, 33:19, 33:22, 35:20, 43:23, 45:8, 46:15, 71:2
**Info** [1] - 3:3
**information** [17] - 20:21, 21:13, 21:14, 21:20, 23:6, 37:16, 39:7, 39:8, 40:20, 44:18, 54:25, 66:20, 66:25, 71:11, 71:12, 72:22, 74:14
**inherently** [2] - 48:13, 60:18
**initial** [5] - 24:16, 24:19, 24:20, 48:17, 63:23
**inquiry** [2] - 71:2, 71:6
**inside** [2] - 4:25, 58:8
**inspection** [1] - 67:21
**instance** [2] - 20:17, 45:7
**instead** [2] - 9:14, 36:11
**insurance** [1] - 24:2
**intellectual** [15] - 24:8, 29:14, 29:15, 29:18, 29:21, 30:5, 58:4, 58:12, 58:15, 58:21, 58:22, 68:22, 70:21, 70:23, 70:24
**intended** [1] - 19:25
**interest** [4] - 20:20, 21:22, 21:24, 22:1

**interrogatory** [3] - 42:22, 42:23, 42:25
**intrusion** [2] - 66:8, 66:19
**investigated** [1] - 71:15
**investigation** [2] - 32:13, 72:13
**investigations** [1] - 71:7
**inviting** [1] - 73:21
**involve** [2] - 33:14, 48:14
**involved** [2] - 53:19, 54:4
**involvement** [1] - 54:6
**involves** [1] - 66:18
**IP** [3] - 23:13, 23:23, 26:19
**Ira** [7] - 3:2, 6:23, 6:24, 6:25, 7:1, 34:20
**IRA** [1] - 1:4
**irrelevant** [1] - 72:17
**issue** [13] - 4:5, 5:16, 7:16, 10:8, 22:13, 25:12, 46:14, 46:16, 54:9, 57:23, 70:6, 70:9, 72:12
**issued** [1] - 73:12
**issues** [7] - 10:7, 26:8, 26:15, 42:18, 46:23, 57:11, 60:18
**it'd** [1] - 40:5
**it'll** [2] - 17:18, 17:22
**items** [1] - 10:21
**itself** [1] - 54:14

## J

**Japan** [1] - 26:11
**joint** [5] - 4:2, 18:20, 26:24, 52:9, 65:5
**JUDGE** [1] - 1:12
**Judge** [52] - 3:15, 3:17, 3:22, 4:4, 8:15, 8:17, 9:2, 9:5, 9:10, 9:15, 9:21, 9:23, 10:4, 10:14, 10:16, 10:18, 10:19, 11:2, 11:3, 11:13, 11:20, 11:25, 14:13, 15:22, 15:25, 16:5, 21:3, 28:14, 30:19, 31:20, 48:21, 56:4, 56:9, 56:11, 56:14, 56:23, 57:7, 57:15, 59:11, 69:15, 69:22, 70:12, 70:18, 71:3, 71:6, 71:10,

73:4, 73:17, 73:20, 73:21, 74:1
**judge** [18] - 14:4, 16:24, 25:11, 26:7, 28:6, 28:15, 31:6, 48:16, 56:20, 58:25, 67:14, 69:12, 69:25, 70:22, 73:2, 74:5, 76:18
**judgment** [1] - 57:5
**jump** [2] - 32:5, 46:25
**justify** [1] - 36:15

## K

**KASS** [2] - 1:23, 3:24
**Kass** [1] - 3:24
**keep** [3] - 56:12, 56:13, 63:6
**keeps** [1] - 69:4
**kept** [1] - 44:12
**key** [3] - 20:19, 21:23, 21:25
**keys** [1] - 22:5
**kicking** [1] - 56:13
**kind** [14] - 5:1, 11:25, 12:1, 33:7, 34:9, 36:2, 39:12, 45:23, 46:6, 57:4, 58:6, 68:10, 68:13, 74:7
**kinds** [1] - 11:10
**KLEIMAN** [1] - 1:4
**Kleiman** [54] - 1:5, 3:2, 3:3, 6:2, 7:5, 9:22, 11:15, 12:14, 13:5, 15:20, 18:13, 20:20, 21:22, 21:23, 21:24, 22:1, 23:24, 24:9, 24:24, 24:25, 25:3, 25:5, 25:7, 26:21, 34:20, 34:21, 35:15, 40:22, 44:6, 45:1, 46:3, 51:14, 53:15, 53:19, 54:5, 55:16, 57:3, 58:2, 58:11, 58:23, 60:16, 60:24, 62:4, 63:3, 63:11, 63:12, 65:12, 69:6, 73:8, 75:9
**Kleiman's** [15] - 5:19, 12:15, 12:22, 20:13, 22:23, 25:4, 68:9, 68:21, 68:22, 69:18, 69:19, 69:20, 69:21, 75:15
**knowing** [1] - 7:10
**known** [1] - 43:16
**knows** [5] - 7:5,

12:11, 15:8, 64:20
**KYLE** [1] - 1:19
**Kyle** [1] - 3:10

# L

**language** [1] - 11:25
**large** [3] - 11:16, 13:23, 34:10
**last** [23] - 4:10, 9:6, 10:2, 10:20, 11:5, 12:5, 15:2, 16:2, 16:14, 20:16, 22:13, 26:14, 35:2, 37:1, 37:15, 52:12, 52:13, 52:19, 57:5, 57:14, 57:15, 59:24
**law** [3] - 15:11, 71:10, 71:12
**lawsuit** [5] - 33:20, 33:22, 36:18, 49:19, 50:5
**lawsuits** [3] - 29:15, 29:17, 36:19
**lawyers** [1] - 5:2
**lay** [1] - 65:7
**layer** [7] - 56:22, 57:5, 57:13, 57:14, 57:15
**layer's** [1] - 56:22
**layers** [2] - 9:4, 55:22
**lead** [2] - 17:19, 17:22
**leaked** [1] - 71:13
**least** [4] - 9:6, 25:17, 35:22, 42:9
**leave** [7] - 29:7, 33:13, 41:23, 50:15, 64:11, 65:17, 72:25
**ledger** [1] - 20:21
**leeway** [2] - 27:5, 75:9
**left** [2] - 8:8, 36:4
**legal** [1] - 70:9
**Leon** [1] - 1:24
**less** [5] - 25:21, 40:8, 40:9, 48:21, 54:12
**letter** [1] - 40:8
**level** [1] - 51:18
**levels** [1] - 43:17
**life** [2] - 24:2, 58:10
**light** [1] - 16:1
**likely** [1] - 57:22
**limbo** [1] - 27:17
**limit** [3] - 45:14, 47:14, 47:17
**limitation** [2] - 44:15, 51:5
**limited** [9] - 24:17,

41:10, 47:18, 52:21, 60:18, 60:20, 63:3, 64:13
**Limited** [2] - 34:21, 35:10
**limiting** [1] - 63:4
**line** [2] - 34:22, 56:22
**LISA** [2] - 2:1, 77:8
**list** [15] - 20:3, 21:15, 21:17, 22:22, 33:19, 36:4, 41:15, 43:14, 43:15, 55:14, 65:10, 66:10, 69:12, 74:9
**listed** [2] - 6:14, 68:7
**listen** [4] - 13:16, 55:25, 59:5, 74:13
**listing** [1] - 19:22, 55:11
**lists** [1] - 33:21
**literally** [2] - 30:6, 72:22
**litigation** [8] - 47:2, 48:13, 48:23, 48:24, 49:4, 49:9, 49:10, 66:17
**litigator** [1] - 11:10
**live** [1] - 42:10
**LLC** [1] - 3:4
**LLP** [3] - 1:17, 1:20, 1:24
**local** [2] - 49:8, 49:23
**located** [1] - 68:19
**location** [1] - 62:5
**log** [1] - 49:8
**logging** [3] - 49:2, 49:24, 50:1
**London** [4] - 26:1, 74:7, 74:12, 74:21
**look** [16] - 5:3, 10:19, 16:19, 23:4, 30:14, 39:17, 43:9, 53:10, 53:12, 63:10, 64:10, 68:24, 70:17, 70:18, 73:5
**looking** [12] - 22:13, 30:11, 30:20, 34:14, 34:17, 35:6, 38:22, 43:6, 53:11, 55:19, 61:21
**losses** [1] - 29:13
**lost** [1] - 76:18
**Louis** [1] - 34:20
**loyalty** [1] - 55:3
**lump** [1] - 42:11
**lumped** [1] - 40:16
**lumping** [1] - 39:25
**Lynn** [1] - 33:9

# M

**MacGregor** [1] - 58:9
**MAGISTRATE**[1] - 1:12
**Main** [1] - 1:20
**manner** [1] - 20:14
**March** [2] - 1:6, 9:11
**marked** [1] - 38:23
**Markoe** [33] - 3:23, 9:18, 10:5, 10:6, 10:10, 10:13, 10:19, 10:24, 13:19, 17:6, 30:16, 31:4, 34:16, 36:21, 36:25, 38:3, 40:14, 41:10, 44:1, 48:4, 48:20, 51:22, 53:9, 56:1, 56:18, 58:24, 59:4, 60:12, 63:17, 66:6, 67:4, 69:10, 75:22
**MARKOE** [38] - 1:23, 3:23, 13:21, 17:5, 17:7, 17:10, 17:21, 20:6, 21:17, 23:8, 23:10, 23:22, 24:5, 26:23, 34:25, 38:7, 38:19, 39:1, 39:16, 40:16, 41:2, 41:7, 41:25, 44:11, 48:7, 51:23, 52:12, 53:13, 60:14, 61:3, 61:17, 61:20, 62:6, 63:18, 66:7, 66:17, 75:25, 76:4
**Markoe's** [1] - 14:5
**massive** [2] - 11:11, 49:2
**master** [1] - 74:5
**material** [1] - 4:25
**materials** [2] - 8:22, 40:11
**matter** [2] - 76:1, 77:5
**matters** [1] - 38:19
**Matthews** [1] - 6:25
**McGovern** [7] - 3:16, 21:11, 26:8, 27:12, 28:4, 30:13, 59:6
**McGovern's** [4] - 3:19, 22:25, 30:17, 31:22
**mean** [25] - 6:8, 6:22, 8:3, 10:10, 15:11, 18:23, 19:2, 19:15, 23:25, 25:4, 33:22, 38:7, 39:20, 42:22, 47:15, 47:16, 54:24, 55:25, 62:17, 62:23,

64:12, 71:20, 71:21, 72:8, 75:25
**meaning** [1] - 58:22
**meantime** [1] - 36:25
**medical** [1] - 3:16
**meet** [13] - 10:6, 10:7, 10:8, 11:1, 13:15, 15:2, 41:11, 59:2, 59:19, 59:22, 60:2, 64:12, 64:17
**meeting** [1] - 56:12
**memo** [1] - 52:9
**memorandum** [2] - 5:13, 5:16
**mention** [3] - 33:17, 51:7, 51:21
**mentioned** [3] - 35:9, 64:24, 65:5
**merges** [1] - 23:17
**merit** [1] - 56:25
**merits** [4] - 70:2, 70:4, 72:8, 73:19
**MESTRE** [1] - 1:24
**met** [1] - 59:23
**methods** [2] - 72:2, 73:7
**Miami** [2] - 1:18, 25:23
**micromanage** [1] - 16:17
**midst** [1] - 66:14
**might** [4] - 4:25, 52:17, 71:4, 71:9
**mind** [1] - 59:20
**mine** [2] - 55:8, 72:7
**mined** [5] - 54:19, 54:20, 54:21, 57:2, 58:3
**minimal** [1] - 13:8
**minimis** [1] - 66:19
**mining** [9] - 18:21, 43:13, 51:6, 51:20, 52:6, 53:14, 54:4, 57:1
**minute** [1] - 39:22
**minute-type** [1] - 39:22
**minutes** [1] - 76:10
**misappropriated** [1] - 20:14
**misrepresent** [1] - 45:5
**missing** [1] - 57:22
**mistake** [2] - 42:24, 43:2
**misunderstanding** [3] - 39:4, 60:2, 60:4
**Monday** [6] - 10:9, 10:19, 18:1, 28:6, 28:8

**money** [2] - 50:20, 72:4
**month** [5] - 26:5, 48:8, 48:9, 48:19, 48:20
**months** [2] - 6:13, 6:14
**morning** [2] - 31:2, 31:9, 31:11
**most** [2] - 7:15, 8:23
**motion** [4] - 4:3, 23:7, 42:6
**move** [6] - 13:17, 26:2, 27:14, 45:10, 46:10, 47:13
**moving** [1] - 9:3
**MR** [113] - 3:7, 3:10, 3:14, 3:22, 3:24, 4:16, 5:12, 5:24, 8:15, 12:7, 13:12, 13:15, 14:4, 14:23, 14:24, 15:14, 15:22, 15:24, 16:24, 17:1, 18:4, 18:15, 19:10, 19:17, 19:24, 23:16, 23:20, 25:11, 25:16, 25:25, 26:7, 27:8, 27:11, 27:20, 28:6, 28:14, 28:15, 28:22, 29:3, 29:17, 30:15, 30:19, 30:23, 31:4, 31:6, 31:10, 31:14, 31:18, 31:20, 32:3, 32:7, 32:24, 34:7, 35:24, 37:13, 39:20, 41:6, 41:9, 41:19, 42:20, 42:24, 43:4, 43:7, 43:14, 44:2, 44:9, 44:25, 45:5, 46:11, 46:13, 47:8, 48:3, 48:16, 49:6, 49:17, 50:18, 50:24, 52:24, 53:7, 54:15, 55:6, 55:20, 56:20, 58:1, 58:8, 58:25, 59:11, 59:15, 59:18, 60:1, 60:10, 61:5, 62:8, 62:10, 63:4, 64:8, 65:1, 65:4, 65:22, 66:22, 66:24, 67:14, 67:16, 68:1, 68:3, 68:7, 69:11, 71:20, 73:2, 73:4, 75:14, 75:20, 76:18
**MS** [37] - 3:23, 13:21, 17:5, 17:7, 17:10, 17:21, 20:6, 21:17, 23:8, 23:10, 23:22, 24:5, 26:23, 34:25, 38:7, 38:19, 39:1,

39:16, 40:16, 41:2, 41:7, 41:25, 44:11, 48:7, 51:23, 52:12, 53:13, 60:14, 61:3, 61:17, 61:20, 62:6, 63:18, 66:7, 66:17, 75:25, 76:4
**multibillion** [1] - 36:18
**multibillion-dollar** [1] - 36:18
**must** [1] - 30:3

## N

**nail** [2] - 7:2, 32:25
**Nakamoto** [12] - 54:18, 54:22, 55:9, 58:3, 58:12, 58:15, 58:22, 69:24, 70:10, 72:2, 72:6, 73:17
**Nakamoto's** [1] - 58:15
**name** [4] - 4:24, 10:16, 25:4, 35:12
**names** [11] - 4:12, 10:20, 10:22, 11:2, 11:15, 11:19, 13:24, 14:6, 16:2, 37:4, 65:7
**Nancy** [1] - 28:24
**narrow** [2] - 45:2, 51:19
**narrowed** [5] - 34:9, 36:2, 63:21, 74:18, 74:20
**narrowing** [1] - 43:18
**nature** [3] - 4:24, 31:12, 40:2
**nearly** [1] - 45:18
**necessarily** [1] - 53:20
**necessary** [4] - 22:7, 50:14, 61:8, 75:5
**need** [19] - 6:6, 7:3, 7:9, 8:12, 8:19, 12:2, 19:4, 28:11, 55:14, 57:10, 65:22, 70:15, 72:11, 72:22, 74:22, 75:11, 75:19, 76:15
**needs** [2] - 17:16, 23:2
**net** [3] - 44:23, 45:14, 56:25
**net-worth** [1] - 56:25
**never** [4] - 24:15, 27:20, 45:5, 72:14
**nevertheless** [1] - 24:18

**new** [1] - 9:14
**New** [2] - 1:21, 75:16
**next** [33] - 9:1, 18:6, 28:10, 28:11, 29:7, 30:11, 30:14, 30:18, 31:1, 36:24, 37:10, 37:12, 37:24, 39:6, 39:23, 41:22, 42:18, 45:9, 46:9, 47:1, 47:13, 57:12, 59:9, 59:20, 60:4, 64:18, 64:22, 67:17, 67:20, 76:8, 76:10, 76:14
**Nguyen** [6] - 51:7, 51:21, 51:25, 52:3, 52:5, 53:15
**nine** [1] - 6:13
**NO** [1] - 1:2
**nondisclosure** [1] - 65:25
**none** [1] - 75:3
**normal** [1] - 57:4
**note** [1] - 52:8
**nothing** [4] - 6:14, 6:16, 42:14, 70:22
**Number** [1] - 46:10
**number** [7] - 10:17, 13:23, 35:20, 47:5, 50:17, 54:10, 69:17

## O

**object** [3] - 28:2, 60:8, 60:9
**objected** [1] - 69:13
**objection** [20] - 4:15, 4:21, 5:8, 5:23, 36:10, 50:9, 52:9, 52:10, 57:19, 59:17, 59:18, 61:12, 62:14, 67:4, 73:7, 73:13, 73:23, 75:10, 75:23
**objectionable** [1] - 71:22
**objections** [4] - 28:10, 28:13, 34:17, 74:1
**obtained** [1] - 54:14
**obviously** [6] - 8:16, 19:3, 45:20, 46:3, 48:23, 55:21
**occurs** [1] - 74:21
**OF** [1] - 1:1
**offended** [1] - 66:15
**offer** [1] - 74:12
**offered** [2] - 34:18, 40:19
**office** [6] - 28:5, 33:3, 33:14, 34:4,

41:15, 71:6
**Office** [1] - 74:11
**once** [3] - 17:21, 21:4, 34:12
**one** [44] - 4:8, 5:14, 8:7, 10:14, 14:13, 14:14, 16:10, 16:14, 16:22, 17:14, 18:6, 21:11, 28:11, 30:6, 32:8, 33:25, 35:8, 35:10, 36:16, 44:12, 47:1, 47:14, 48:8, 49:7, 51:2, 53:17, 54:11, 55:13, 56:21, 58:16, 59:13, 60:23, 61:7, 61:15, 63:20, 65:9, 67:19, 69:7, 71:2, 72:14
**ones** [14] - 12:3, 12:24, 15:18, 16:14, 22:17, 22:22, 22:23, 45:18, 53:19, 71:8, 72:16, 72:17
**onion** [1] - 57:6
**opens** [1] - 21:19
**operations** [3] - 50:20, 53:14, 54:4
**opportunity** [2] - 23:4, 67:16
**opposed** [4] - 31:2, 38:14, 54:14, 75:24
**oranges** [2] - 9:23, 11:8
**order** [13] - 4:21, 5:8, 16:7, 16:8, 33:7, 64:16, 65:14, 65:18, 75:17, 75:21, 76:9, 76:10
**ordered** [1] - 24:11
**orderly** [2] - 11:23, 57:9
**orders** [1] - 64:19
**ordinarily** [1] - 52:22
**originally** [1] - 48:9
**ourselves** [1] - 46:24
**outer** [1] - 9:4
**outward** [1] - 6:9
**outweigh** [1] - 66:9
**overbroad** [1] - 70:14
**overly** [2] - 37:19, 52:17
**overplayed** [1] - 29:5
**overrule** [3] - 4:20, 5:8, 50:8
**overruled** [1] - 75:11
**own** [3] - 19:12, 32:18
**owned** [3] - 15:7, 19:22, 52:16

**owner** [1] - 21:19

## P

**Page** [4] - 26:24, 34:18, 67:24, 71:25
**Pages** [1] - 1:9
**PALM** [1] - 1:2
**Palm** [1] - 1:4
**Panopticrypt** [1] - 33:25
**paper** [1] - 72:6
**Paramount** [1] - 61:21
**pardon** [1] - 10:14
**part** [12] - 19:5, 26:9, 29:12, 29:17, 29:19, 54:22, 55:8, 56:12, 56:13, 56:17, 57:6, 73:18
**participate** [1] - 14:12
**participated** [1] - 69:15
**participating** [1] - 14:25
**particularly** [2] - 32:17, 66:9
**parties** [8] - 4:10, 6:10, 40:10, 44:7, 46:1, 51:10, 51:11, 56:2
**partner** [1] - 75:16
**partners'** [1] - 54:22
**partnership** [17] - 6:10, 19:2, 51:14, 54:18, 54:22, 55:1, 55:2, 55:3, 55:7, 55:8, 58:3, 58:11, 69:23, 70:8, 70:9, 70:10, 72:1
**partnership's** [1] - 19:7
**parts** [1] - 73:16
**party** [1] - 36:12
**past** [3] - 13:16, 13:17
**patently** [1] - 43:24
**patients'** [1] - 24:2
**pay** [1] - 74:8
**people** [8] - 19:12, 41:15, 41:16, 43:12, 43:16, 43:19, 44:21, 49:14
**per** [1] - 38:1
**percent** [2] - 8:7, 16:15
**perhaps** [2] - 37:8, 66:24

**period** [5] - 55:17, 65:24, 72:3, 73:8, 73:11
**permitted** [1] - 73:23
**person** [1] - 23:1
**Personal** [2] - 1:4, 3:2
**personal** [5] - 6:23, 31:12, 66:8, 66:19, 69:25
**personally** [1] - 66:12
**phone** [1] - 14:21
**phrase** [3] - 19:25, 20:1, 24:16
**pick** [1] - 29:23
**piece** [1] - 20:12
**pinch** [1] - 3:15
**pinch-hitting** [1] - 3:15
**place** [3] - 13:13, 50:20, 67:8
**places** [1] - 19:14
**placing** [1] - 53:14
**plainly** [1] - 73:14
**Plaintiff** [21] - 4:13, 6:23, 7:3, 8:19, 9:19, 9:25, 10:2, 10:21, 14:6, 14:7, 17:13, 26:19, 27:14, 28:1, 32:1, 32:14, 37:7, 37:21, 52:3, 68:7, 75:7
**Plaintiffs** [21] - 1:6, 3:6, 3:8, 3:11, 5:18, 7:13, 13:24, 22:3, 29:12, 29:23, 33:1, 38:8, 48:19, 51:2, 51:7, 51:16, 52:25, 55:2, 57:11, 66:20, 70:13
**PLAINTIFFS** [1] - 1:16
**Plaintiffs'** [5] - 5:20, 9:9, 18:19, 19:2, 25:12, 30:3, 32:16, 33:16, 35:25, 41:20, 42:24, 46:8, 51:13, 54:21, 55:1, 58:19
**plan** [1] - 30:20
**planned** [1] - 74:14
**platforms** [1] - 45:24
**plausible** [2] - 21:4, 21:5
**pleadings** [1] - 4:19
**pled** [1] - 21:4
**point** [23] - 9:16, 19:1, 20:8, 20:15, 21:1, 21:3, 22:21, 22:24, 23:23, 24:22,

26:14, 35:4, 35:8, 40:6, 45:21, 45:23, 51:23, 56:8, 56:15, 57:7, 57:17, 65:14, 72:15
**pointed** [1] - 8:21
**policies** [1] - 69:6
**polite** [1] - 76:3
**Ponce** [1] - 1:24
**portion** [3] - 19:11, 21:1, 21:21
**portions** [2] - 34:12, 71:22
**position** [15] - 24:13, 27:20, 30:3, 35:21, 36:20, 41:19, 41:20, 42:2, 42:3, 42:8, 48:5, 48:7, 53:9, 54:21, 59:5
**possession** [1] - 53:2
**possible** [5] - 12:4, 14:2, 16:21, 39:8, 76:5
**possibly** [2] - 66:8
**postdate** [1] - 45:8
**postnup** [3] - 65:20, 66:13, 67:10
**potential** [2] - 62:14, 66:9
**potentially** [3] - 55:12, 55:14, 65:24
**practice** [1] - 9:7
**pre** [1] - 66:13
**pre-2014** [2] - 51:3, 51:20
**prefer** [1] - 31:10
**preference** [1] - 31:8
**prejudice** [2] - 45:10, 57:20, 64:2
**prenup** [2] - 65:20, 67:9
**prepare** [1] - 28:25
**prepared** [1] - 37:11
**present** [2] - 30:13, 47:20
**preservation** [1] - 69:20
**pressure** [1] - 56:4
**presumably** [1] - 13:7
**presume** [1] - 62:4
**pretty** [6] - 7:1, 15:11, 29:6, 35:19, 35:25, 47:16
**previously** [4] - 40:21, 41:17, 47:21, 62:17
**prioritization** [4] - 13:3, 13:19, 16:18,

57:9
**prioritize** [7] - 13:5, 13:9, 16:13, 16:16, 37:4, 39:9, 39:13
**prioritized** [1] - 10:11
**priority** [2] - 11:18, 64:12
**privilege** [2] - 48:14, 49:2
**privileged** [2] - 4:25, 13:7
**probe** [2] - 53:21, 54:3
**problem** [12] - 7:16, 9:23, 11:19, 12:19, 26:9, 31:13, 31:22, 49:2, 60:1, 60:4, 67:10
**problems** [1] - 8:18
**proceeding** [1] - 71:3
**proceedings** [6] - 32:16, 32:19, 33:5, 35:19, 76:19, 77:4
**process** [11] - 9:3, 10:25, 16:17, 37:15, 38:18, 39:19, 56:17, 70:11, 70:19, 72:4, 73:15
**produce** [23] - 5:19, 6:15, 6:19, 7:6, 12:17, 13:22, 15:12, 15:20, 19:19, 22:14, 23:6, 23:24, 24:1, 24:22, 26:20, 42:17, 44:16, 60:22, 60:24, 62:3, 63:21, 64:9, 64:11
**produced** [9] - 6:23, 7:14, 8:4, 8:23, 27:23, 37:17, 47:22, 65:18, 77:5
**producing** [2] - 5:21, 12:21
**Production** [5] - 18:6, 23:12, 27:11, 28:16, 28:17
**production** [23] - 5:25, 6:12, 8:25, 12:18, 12:20, 16:7, 17:2, 17:3, 22:11, 28:2, 28:3, 35:25, 42:23, 43:1, 47:11, 47:17, 51:10, 59:24, 60:6, 64:4, 65:19, 74:18, 74:19
**Productions** [1] - 32:6
**professional** [1] - 5:2

**profit** [1] - 19:13
**program** [2] - 68:13, 72:6
**projects** [1] - 70:20
**property** [20] - 19:1, 29:8, 29:14, 29:15, 29:18, 29:21, 30:5, 54:23, 55:1, 58:4, 58:12, 58:16, 58:21, 58:23, 65:5, 68:22, 70:21, 70:23, 70:24
**proportional** [2] - 22:11, 64:6
**proportionality** [6] - 21:9, 40:4, 41:23, 41:24, 63:7, 63:8
**proposal** [1] - 4:11
**propose** [2] - 25:17, 26:11
**proposed** [8] - 4:22, 5:9, 9:9, 9:11, 10:2, 25:11, 26:3, 76:9
**provide** [3] - 20:11, 35:11, 49:23
**provided** [6] - 11:14, 13:25, 15:1, 15:3, 16:2
**provision** [1] - 60:7
**Pty** [1] - 34:21
**public** [6] - 20:12, 20:19, 20:21, 20:24, 21:18, 22:5
**publicity** [1] - 58:14
**published** [1] - 71:13
**pull** [2] - 33:25, 76:9
**purely** [1] - 61:9
**purpose** [2] - 70:23, 72:10
**purposes** [2] - 36:8, 42:9
**put** [10] - 33:1, 40:4, 46:8, 47:18, 59:8, 59:16, 60:4, 66:15, 66:18, 69:12
**putting** [4] - 20:9, 59:17, 59:18, 60:1

## Q

**QC** [1] - 17:16
**QC'd** [1] - 17:22
**quality** [2] - 8:24
**questions** [5] - 26:15, 27:4, 68:16, 69:7, 72:21
**quickly** [9] - 13:9, 13:20, 13:22, 14:1, 16:7, 17:12, 29:7, 56:13, 61:21

**quite** [1] - 20:8
**quoted** [1] - 24:15

## R

**radically** [1] - 70:14
**raised** [1] - 10:8
**Ramona** [2] - 6:24, 33:10
**ran** [1] - 10:24
**random** [1] - 69:23
**rather** [1] - 68:5
**RDR** [2] - 2:1, 77:8
**reach** [2] - 45:16, 56:8
**reached** [1] - 51:10
**reaches** [1] - 49:20
**read** [10] - 4:19, 8:16, 9:2, 19:19, 32:20, 48:16, 48:22, 69:14, 74:24
**reading** [2] - 26:24, 71:21
**ready** [1] - 38:1
**real** [1] - 74:24
**realized** [1] - 29:4
**really** [17] - 8:6, 8:13, 14:5, 19:23, 21:11, 21:23, 22:6, 23:1, 31:7, 32:20, 46:16, 56:7, 60:21, 68:25, 70:4, 72:16, 75:25
**reason** [4] - 26:13, 43:5, 56:12, 56:13
**reasonable** [1] - 48:10
**reassess** [1] - 64:21
**receiving** [2] - 66:10, 66:20
**recess** [1] - 76:17
**recipe** [1] - 74:3
**record** [6] - 8:17, 28:15, 41:13, 48:17, 56:16, 59:19
**RECORDING** [1] - 1:13
**recounting** [1] - 58:6
**recovering** [1] - 3:16
**refer** [1] - 24:8
**referenced** [1] - 29:24
**references** [4] - 29:20, 30:1, 34:19, 41:15
**referred** [1] - 16:1
**referring** [1] - 14:5
**refers** [1] - 26:21
**refine** [1] - 46:22
**reflect** [1] - 46:20

**reflected** [1] - 41:11
**reframe** [1] - 53:9
**refresh** [1] - 47:4
**regard** [5] - 23:25, 24:6, 38:16, 40:19, 42:1
**regarding** [3] - 21:25, 35:11, 43:12
**regards** [1] - 47:10
**regularly** [1] - 12:13
**REINHART** [1] - 1:12
**relate** [5] - 24:9, 35:19, 51:20, 58:20, 62:24
**related** [18] - 9:21, 22:5, 23:13, 23:23, 23:24, 24:7, 26:19, 34:20, 35:3, 35:16, 35:18, 40:21, 52:3, 62:3, 62:4, 63:12, 71:8
**relates** [10] - 23:12, 26:21, 49:9, 51:5, 51:24, 52:2, 52:4, 60:24, 63:11, 65:15
**relating** [1] - 64:23
**relationship** [1] - 35:15
**relevance** [15] - 18:10, 32:21, 36:11, 41:25, 42:8, 42:9, 49:16, 50:4, 50:10, 57:24, 61:11, 62:14, 63:8, 66:9, 73:23
**relevancy** [1] - 66:19
**relevant** [58] - 21:8, 22:7, 22:10, 30:3, 32:13, 32:20, 33:18, 33:20, 33:22, 34:2, 34:11, 35:22, 36:5, 36:7, 36:13, 38:24, 40:3, 40:5, 41:17, 41:20, 42:7, 42:14, 42:16, 43:16, 43:19, 43:20, 43:22, 43:24, 45:8, 45:21, 45:23, 46:16, 47:4, 49:12, 49:18, 50:5, 51:15, 52:7, 58:21, 61:6, 61:9, 62:18, 65:8, 65:21, 65:24, 66:1, 66:5, 67:1, 68:18, 71:8, 71:9, 72:17, 75:3, 75:5
**remaining** [2] - 4:15, 8:23
**remedy** [1] - 75:5
**remember** [7] - 10:12, 18:19, 19:8, 37:2, 47:2, 47:5,

54:16
**remembers** [1] - 29:11
**remind** [2] - 47:6, 49:11
**report** [4] - 10:24, 16:12, 38:1, 62:21
**Reporterlisaedwards@gmail.com** [2] - 2:2, 77:9
**reports** [8] - 7:21, 8:5, 16:11, 36:11, 36:15, 37:18, 38:16
**Representative** [2] - 1:4, 3:3
**representative** [1] - 6:24
**represents** [1] - 7:8
**request** [28] - 5:17, 5:20, 6:12, 13:20, 19:19, 20:2, 26:25, 28:2, 28:3, 32:20, 38:2, 42:23, 42:25, 46:8, 47:11, 47:17, 47:25, 48:1, 48:22, 56:24, 57:1, 59:2, 59:12, 59:24, 60:6, 64:2, 65:19
**Request** [12] - 18:6, 23:12, 23:17, 23:25, 24:6, 27:11, 28:16, 30:1, 30:2, 32:5, 41:2, 55:13
**requested** [1] - 11:1
**requesting** [2] - 37:4, 59:9
**Requests** [1] - 28:16
**requests** [9] - 35:10, 35:25, 37:22, 38:13, 55:13, 57:9, 60:15, 60:17, 60:18
**require** [1] - 22:11
**required** [1] - 37:3
**reread** [1] - 32:11
**rescheduled** [1] - 31:14
**Research** [1] - 3:4
**research** [1] - 51:17
**reserve** [1] - 27:2
**reserving** [1] - 28:19
**resolve** [1] - 28:13
**resolved** [1] - 23:2
**respect** [1] - 5:4
**respond** [1] - 9:10
**responds** [1] - 49:21
**response** [4] - 9:12, 34:17, 35:9, 60:23
**responsive** [1] - 42:14
**rest** [2] - 14:15, 67:9

**retained** [1] - 51:9
**retention** [1] - 69:6
**return** [1] - 66:19
**returns** [1] - 24:2
**reveal** [1] - 50:7
**review** [6] - 8:22, 13:8, 17:16, 32:2, 67:10, 72:23
**reviewed** [1] - 17:21
**reviewers** [1] - 17:12
**revisit** [5] - 27:3, 42:5, 57:23, 63:25, 64:22
**ridiculous** [1] - 59:23
**rights** [2] - 24:8, 58:10
**RIVERO** [31] - 1:22, 1:24, 3:14, 3:22, 8:15, 13:12, 13:15, 14:4, 14:23, 15:22, 15:24, 25:11, 26:7, 28:6, 28:14, 30:19, 30:23, 31:4, 31:6, 31:20, 48:16, 49:6, 56:20, 58:25, 59:11, 59:15, 67:14, 67:16, 69:11, 73:2, 73:4
**Rivero** [31] - 3:14, 3:19, 5:1, 8:14, 13:3, 13:4, 13:19, 14:24, 15:16, 15:21, 17:2, 28:5, 30:16, 31:21, 34:15, 48:5, 49:24, 50:1, 51:22, 56:1, 56:19, 58:24, 59:7, 60:12, 63:16, 66:6, 67:4, 67:15, 69:10, 71:21, 75:22
**road** [1] - 67:9
**Robert** [1] - 58:9
**ROCHE** [2] - 1:19, 3:10
**Roche** [2] - 3:10, 3:12
**rolling** [6] - 12:19, 12:23, 14:1, 16:7, 17:3, 18:2
**Rosenberg** [1] - 56:11
**Round** [2] - 70:1, 70:2
**rule** [5] - 49:8, 52:21, 74:22, 75:11
**ruled** [2] - 28:3, 47:2
**rules** [1] - 49:23
**ruling** [2] - 50:15, 63:14
**rulings** [1] - 66:10
**run** [12] - 6:5, 6:18, 7:1, 11:15, 11:24,

30:23, 37:23, 37:25, 38:13, 38:16, 38:22, 56:23
**run-around** [3] - 6:5, 6:18, 11:24
**running** [2] - 21:12, 38:21

# S

**Sabbath** [1] - 25:23
**sanctionable** [1] - 74:3
**sand** [1] - 34:22
**Satoshi** [14] - 54:18, 54:22, 55:9, 58:3, 58:5, 58:12, 58:15, 58:22, 69:24, 70:10, 72:1, 72:6, 73:17
**sauce** [1] - 60:7
**sauce-for-the-goose** [1] - 60:7
**save** [1] - 46:23
**scheduled** [1] - 25:10
**SCHILLER** [2] - 1:17, 1:20
**scope** [4] - 46:5, 63:2, 64:21, 67:25
**scrambling** [2] - 59:2, 59:13
**screwing** [1] - 39:12
**search** [51] - 7:21, 9:5, 9:7, 9:9, 9:11, 9:16, 9:17, 9:20, 9:22, 9:25, 10:1, 10:22, 11:6, 11:9, 11:12, 11:16, 12:2, 12:14, 12:22, 13:23, 15:7, 15:10, 16:1, 22:4, 24:7, 34:18, 34:19, 34:24, 37:18, 37:22, 37:25, 38:12, 40:10, 42:15, 42:17, 44:16, 44:20, 45:4, 45:13, 45:15, 45:21, 45:22, 45:23, 46:6, 46:22, 46:23, 50:7, 62:5, 65:6, 65:16
**searched** [1] - 54:8
**searches** [1] - 7:2
**searching** [10] - 20:22, 35:2, 40:25, 45:22, 45:25, 46:1, 46:2, 46:5, 48:7, 48:12
**second** [12] - 7:10, 10:14, 20:15, 32:11, 34:15, 38:4, 40:5,

49:7, 57:13, 64:24, 65:5, 70:13
**Second** [1] - 1:17
**secondly** [1] - 63:6
**see** [11] - 5:15, 14:15, 19:4, 23:17, 31:6, 34:14, 36:1, 36:11, 56:6, 60:6, 66:7
**seeking** [3] - 15:9, 41:13, 51:3
**seeks** [2] - 30:6, 43:21
**seem** [4] - 21:6, 40:14, 59:8, 68:18
**Seize** [1] - 61:24
**self** [1] - 24:23
**self-identify** [1] - 24:23
**sell** [2] - 58:10, 58:11
**send** [1] - 18:1
**sense** [5] - 16:9, 16:11, 21:12, 38:2, 46:14
**sensitive** [2] - 27:12, 33:9
**sent** [1] - 9:16
**sentence** [1] - 24:19
**separate** [2] - 19:13, 57:7
**serious** [1] - 8:18
**served** [3] - 6:12, 6:13
**servers** [2] - 68:14, 72:5
**service** [1] - 6:19
**session** [1] - 57:12
**set** [13] - 9:14, 9:22, 9:25, 10:1, 10:17, 11:24, 27:13, 28:12, 29:7, 30:8, 30:9, 70:14, 71:17
**Seychelles** [2] - 34:5, 62:1
**share** [2] - 16:10, 38:16
**shares** [1] - 52:16
**sheep** [2] - 69:15, 71:17
**sheep-herding** [2] - 69:15, 71:17
**shift** [1] - 27:7
**shifted** [1] - 10:19
**shifting** [1] - 38:10
**shooting** [2] - 46:21, 64:21
**show** [3] - 15:17, 51:8, 68:8
**showing** [2] - 61:13, 62:15

**shred** [1] - 20:11
**shrink** [2] - 33:7, 44:3
**shuffling** [1] - 43:9
**side** [2] - 5:7, 25:12
**sides** [2] - 9:5, 13:2
**sign** [1] - 7:22
**significant** [3] - 35:6, 35:20, 48:24
**similarly** [1] - 63:5
**simple** [2] - 7:6, 46:14
**simplest** [1] - 59:11
**simply** [5] - 12:2, 56:7, 56:8, 67:7, 74:15
**single** [3] - 11:14, 47:17, 60:23
**sit** [5] - 9:18, 11:17, 16:17, 42:10, 64:11
**sitting** [1] - 76:8
**situation** [3] - 12:1, 60:15, 60:21
**skipped** [1] - 32:8
**skipping** [1] - 63:6
**small** [1] - 34:10
**smaller** [1] - 39:21
**someone** [4] - 25:19, 47:4, 50:22, 66:13
**somewhat** [3] - 59:1, 65:15, 71:20
**somewhere** [1] - 66:1
**soon** [4] - 16:21, 26:4, 26:12, 76:7
**sooner** [1] - 76:15
**sophisticated** [1] - 11:10
**sorry** [8] - 3:18, 10:13, 17:7, 20:19, 28:1, 43:4, 53:9, 62:10
**sort** [11] - 17:22, 18:1, 20:6, 21:19, 23:18, 35:1, 40:2, 40:12, 42:10, 48:13, 52:6
**sorts** [1] - 50:11
**Southeast** [1] - 1:17
**SOUTHERN** [1] - 1:1
**special** [1] - 74:5
**specific** [5] - 14:20, 21:25, 29:23, 37:22
**speculative** [1] - 50:11
**speed** [1] - 29:6
**spelled** [1] - 58:13
**spouse** [1] - 33:11
**stand** [1] - 3:20
**standing** [2] - 45:4,

46:17
**start** [7] - 11:23,
12:21, 16:5, 17:14,
57:18, 71:17, 76:11
**started** [3] - 13:21,
18:20, 40:17
**starting** [2] - 3:5,
24:21
**statement** [2] -
36:12, 71:21
**statements** [4] -
24:2, 32:15, 33:2,
69:14
**STATES** [2] - 1:1,
1:12
**States** [4] - 50:21,
51:6, 51:7, 51:20
**status** [1] - 55:12
**STATUS** [1] - 1:11
**steal** [3] - 29:14,
68:9, 68:21
**step** [2] - 24:25,
65:13
**Steve** [1] - 6:25
**stick** [1] - 50:9
**sticking** [1] - 44:14
**still** [4] - 9:15, 20:9,
32:12, 53:4
**stipulate** [1] - 49:25
**stipulated** [1] - 7:22
**stipulation** [2] - 4:5,
4:9
**story** [3] - 68:25,
70:3, 71:1
**Street** [2] - 1:17, 1:20
**stuck** [1] - 27:17
**stuff** [3] - 35:16,
57:10, 72:23
**subject** [1] - 73:16
**subjects** [1] - 72:21
**submission** [1] -
41:12
**submit** [2] - 4:10,
32:1
**submitted** [2] -
29:18, 30:4
**subset** [3] - 34:10,
39:21, 51:19
**substantive** [2] -
33:15, 40:11
**sued** [1] - 29:18
**sufficient** [1] - 17:13
**suggest** [5] - 9:13,
37:22, 54:7, 67:3
**suggested** [1] - 9:14
**suggesting** [1] -
73:20
**suggestion** [1] -
66:22
**suggests** [1] - 4:25

**Suite** [2] - 1:18, 1:25
**summarily** [1] -
52:18
**summarize** [1] - 43:8
**Summer** [1] - 6:25
**super** [1] - 69:3
**supercomputer** [1] -
61:25
**supplied** [1] - 14:6
**support** [5] - 18:12,
21:5, 21:6, 29:21,
42:6
**supposed** [4] - 5:2,
7:9, 26:10, 42:25
**surrounding** [3] -
69:23, 71:24, 72:1
**sustain** [1] - 50:15
**swear** [1] - 42:6
**swore** [2] - 36:5,
36:6
**sworn** [7] - 29:19,
33:20, 34:1, 36:12,
41:17, 43:16, 43:24

---

## T

**target** [4] - 38:11,
46:21, 47:25, 48:3
**tax** [9] - 24:2, 32:13,
33:3, 33:14, 34:4,
41:15, 44:8, 45:25,
71:6
**team** [1] - 11:20
**technological** [2] -
68:11, 72:4
**telephone** [1] - 74:21
**Telephonically** [2] -
1:17, 1:23
**ten** [1] - 9:6
**term** [4] - 7:21,
13:24, 15:10, 62:5
**termination** [1] -
16:8
**terms** [40] - 9:5, 9:7,
9:9, 9:11, 9:16, 9:17,
9:20, 9:22, 9:25, 10:1,
10:22, 11:6, 11:9,
11:13, 12:2, 12:22,
16:1, 22:3, 25:13,
30:11, 34:19, 34:24,
37:18, 37:22, 37:25,
38:12, 38:21, 45:13,
45:15, 45:21, 45:22,
45:23, 46:6, 46:22,
46:23, 50:7, 65:7,
65:16, 74:17, 74:19
**testimony** [1] - 42:5
**testing** [1] - 68:9
**thankfully** [1] - 31:1

**that'll** [3] - 32:4,
62:4, 72:22
**THE** [147] - 1:12,
1:16, 1:22, 3:1, 3:9,
3:12, 3:18, 3:25, 4:19,
5:13, 8:14, 12:5, 13:1,
13:14, 13:16, 14:3,
14:22, 15:13, 15:15,
15:23, 16:6, 16:25,
17:4, 17:6, 17:8,
17:20, 17:24, 18:5,
19:9, 19:16, 19:18,
20:2, 20:25, 22:9,
23:9, 23:11, 23:17,
23:21, 24:4, 24:14,
25:14, 25:24, 26:6,
26:13, 26:24, 27:10,
27:19, 27:22, 28:9,
28:19, 28:23, 29:16,
30:7, 30:16, 30:22,
30:25, 31:5, 31:8,
31:13, 31:15, 31:19,
31:21, 32:4, 32:8,
34:6, 34:14, 35:23,
36:21, 38:3, 38:18,
38:25, 39:3, 39:17,
39:24, 40:24, 41:8,
41:18, 41:23, 42:3,
42:21, 43:2, 43:5,
43:9, 44:1, 44:4,
44:10, 44:20, 45:1,
45:19, 46:12, 46:19,
48:2, 48:4, 48:15,
49:5, 49:7, 50:8,
50:19, 51:22, 52:8,
52:20, 53:6, 53:8,
53:16, 55:5, 55:10,
55:25, 57:16, 58:7,
58:24, 59:5, 59:14,
59:16, 59:25, 60:3,
60:12, 61:2, 61:4,
61:14, 61:18, 61:21,
62:7, 62:9, 62:22,
62:25, 63:19, 64:10,
65:3, 65:9, 66:6,
66:16, 66:21, 66:23,
67:3, 67:15, 67:19,
68:2, 68:6, 69:10,
71:19, 73:1, 73:3,
74:10, 75:19, 75:22,
76:2, 76:6
**theft** [2] - 29:12, 51:4
**theirs** [1] - 60:20
**themes** [1] - 61:20
**theory** [8] - 18:13,
25:3, 32:21, 44:8,
49:16, 50:10, 55:1,
58:19
**thereafter** [2] -
18:22, 48:13

**they've** [5] - 12:12,
21:4, 24:4, 38:9, 64:1
**thinking** [2] - 47:7,
53:18
**third** [6] - 44:7, 46:1,
51:10, 51:11, 57:13,
60:6
**thousands** [1] -
72:23
**three** [4] - 3:25, 7:24,
9:21, 25:17
**Thursday** [14] -
25:22, 30:11, 30:14,
30:18, 36:24, 37:10,
37:12, 39:6, 42:18,
46:9, 64:18, 64:22,
67:20, 76:15
**Thursday's** [1] - 60:5
**tight** [1] - 57:8
**title** [1] - 29:14
**to/from** [2] - 7:6,
11:13
**today** [11] - 4:4, 4:7,
23:3, 59:7, 66:10,
70:15, 74:17, 75:13,
75:15, 75:21, 75:24
**together** [8] - 19:13,
40:17, 42:11, 54:18,
54:19, 58:3, 68:12,
76:14
**tomorrow** [5] - 28:7,
75:20, 75:24, 76:5,
76:12
**took** [1] - 34:10
**top** [2] - 23:1, 43:21
**topic** [8] - 27:6,
28:25, 36:23, 47:9,
53:23, 63:20, 71:14,
74:7
**topics** [10] - 28:25,
44:12, 44:17, 68:8,
69:18, 70:7, 70:14,
71:1, 71:18, 75:10
**touch** [1] - 43:23
**touches** [1] - 72:8
**towards** [2] - 30:10,
55:18
**trace** [2] - 18:17,
19:4
**Trading** [1] - 35:10
**tranche** [2] - 24:11,
24:16
**TRANSCRIBED** [2] -
1:13, 2:1
**transcript** [5] -
39:22, 47:6, 47:16,
70:16, 72:14
**transcription** [1] -
77:4
**transcripts** [1] - 9:3

**transferred** [1] -
23:19
**tremendous** [1] -
56:3
**trial** [1] - 42:9
**trouble** [1] - 62:13
**true** [1] - 12:7
**trust** [13] - 24:9,
26:21, 34:4, 34:5,
34:8, 43:2, 51:9,
51:12, 53:24, 60:24,
62:1, 68:17, 69:7
**trustee** [3] - 24:10,
34:5, 51:11
**trusting** [1] - 53:18
**trusts** [4] - 8:4,
34:20, 51:24, 52:16
**try** [9] - 17:17, 23:15,
31:23, 39:9, 40:6,
56:3, 56:15, 64:17,
72:10
**trying** [11] - 6:3, 6:4,
8:10, 11:7, 12:23,
14:12, 23:14, 38:8,
44:2, 56:10
**Tuesday** [3] - 11:1,
11:2, 11:3
**Tulip** [1] - 35:10
**tulip** [1] - 35:12
**turn** [5] - 5:13, 16:23,
20:4, 52:20, 68:4
**turns** [1] - 31:21
**two** [13] - 6:10, 6:13,
7:24, 8:1, 8:24, 17:14,
19:12, 37:24, 43:10,
43:17, 57:18, 62:25,
69:7
**type** [1] - 39:22

---

## U

**ultimately** [1] - 25:1
**unavailability** [1] -
31:22
**unclear** [1] - 32:19
**under** [6] - 22:20,
49:8, 56:3, 71:10,
71:24, 73:24
**understood** [3] -
24:11, 55:10, 60:3
**unduly** [4] - 22:14,
23:5, 35:21, 42:16
**unfortunately** [1] -
33:4
**unique** [1] - 22:20
**United** [4] - 50:20,
51:6, 51:20
**UNITED** [2] - 1:1,
1:12

**universal** [1] - 45:23
**universe** [4] - 34:10, 34:11, 34:12, 40:25
**unless** [1] - 76:15
**unrelated** [1] - 53:15
**up** [20] - 5:15, 21:14, 26:1, 29:6, 36:24, 37:6, 40:10, 42:18, 47:10, 47:19, 48:1, 49:14, 54:16, 55:22, 57:11, 59:7, 64:18, 69:4, 72:18, 76:9
**US** [2] - 53:14, 74:11
**uses** [1] - 11:10
**Uyen** [1] - 51:7

## V

**value** [3] - 18:8, 18:18, 19:20
**various** [2] - 13:24, 29:20
**vendor** [1] - 17:17
**versus** [1] - 3:4
**view** [1] - 70:14
**vs** [1] - 1:7

## W

**W&K** [14] - 3:3, 6:11, 18:21, 24:10, 24:25, 26:22, 29:14, 29:18, 40:22, 51:25, 53:15, 60:16, 60:24, 63:3
**W&K's** [4] - 29:21, 30:4, 51:16, 54:23
**wait** [1] - 39:23
**waiting** [1] - 75:17
**walk** [2] - 61:5, 76:7
**wallet** [1] - 22:15
**wallets** [5] - 21:15, 22:22, 65:7, 65:8, 65:10
**wants** [3] - 16:13, 16:14, 16:15
**Watts** [2] - 6:24, 33:10
**Wednesday** [4] - 10:2, 10:21, 11:3, 16:3
**week** [17] - 3:17, 9:1, 9:15, 15:2, 26:8, 26:9, 26:10, 26:11, 27:16, 28:10, 28:11, 28:12, 31:1, 59:9, 59:20, 67:17
**weekend** [1] - 26:1
**weeks** [1] - 8:1
**welcome** [1] - 3:25

**WEST** [1] - 1:2
**West** [1] - 1:4
**white** [1] - 72:6
**whole** [3] - 10:25, 49:11, 71:1
**wide** [5] - 44:23, 45:7, 45:14, 45:18, 46:17
**willing** [6] - 17:18, 18:24, 37:21, 61:3, 66:24, 67:21
**window** [1] - 21:13
**withdrew** [2] - 36:2, 52:25
**witnesses** [1] - 43:23
**WK** [1] - 34:21
**word** [4] - 12:6, 24:15, 24:18, 53:20
**works** [1] - 31:18
**worth** [1] - 56:25
**Wright** [55] - 3:4, 3:15, 3:23, 3:24, 6:2, 6:24, 11:15, 12:11, 12:22, 20:3, 20:13, 21:18, 25:5, 25:8, 29:18, 29:22, 30:4, 32:15, 32:17, 33:2, 33:10, 41:3, 42:13, 43:12, 43:18, 43:22, 44:6, 44:7, 44:21, 49:13, 49:21, 50:5, 51:9, 51:14, 51:16, 52:4, 52:15, 54:4, 54:6, 55:7, 55:12, 55:15, 55:16, 57:1, 57:2, 58:2, 58:10, 58:11, 58:14, 58:23, 63:22, 65:11, 65:12, 71:15, 73:8
**WRIGHT** [1] - 1:8
**Wright's** [13] - 25:9, 26:10, 26:15, 27:3, 27:24, 29:10, 29:12, 52:23, 54:2, 54:11, 64:3, 64:25, 73:12
**written** [2] - 65:18, 73:21
**wrote** [1] - 10:4

## Y

**year** [1] - 51:4
**years** [3] - 7:5, 9:6, 73:22
**yes-or-no** [1] - 67:7
**yesterday** [2] - 8:13, 9:15
**York** [2] - 1:21, 75:16
**yourselves** [2] -

39:4, 46:22

## Z

**ZAHARAH** [1] - 1:23
**Zaharah** [1] - 3:23
**ZALMAN** [1] - 1:23
**Zalman** [1] - 3:24