# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC,

        *Plaintiffs,*

v.

CRAIG WRIGHT,

        *Defendant.*

CASE NO.: 9:18-cv-80176-BB

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR REQUEST TO RE-DEPOSE CRAIG WRIGHT ON THE INVOLVEMENT OF HIS FORMER AND CURRENT WIFE IN THE SUBJECT MATTER OF THE PLEADINGS

Plaintiffs file this brief in support of their request that this Court compel the Defendant ("Craig") to appear for a limited, two-hour deposition to answer questions related to Lynn Wright (his ex-wife) and Ramona Watts (his wife)[1] for the purposes of identifying relevant areas of discovery and narrowing the scope of discovery in this case.

On April 4, 2019, Plaintiffs' counsel travelled to London in order to depose Craig on certain topics pre-approved by this Court. The goal of this deposition was to narrow the scope of discovery by determining where relevant evidence might be found and identifying the issues actually disputed by the parties. Pursuant to this goal, the first topic the Plaintiffs requested Craig to be prepared to answer was:

> The location and existence of documents along with the identification of witnesses, including information about their whereabouts and role(s) in the subject matter of the pleadings.

---

[1] Plaintiffs have asked Craig to provide proof of his marriage to Ms. Watts, but have still not received any evidence of marriage.

1

(ECF No. [114-5].) But at this deposition, Craig refused to answer even basic questions about Ms. Watts or Ms. Wright.

With respect Lynn Wright (née Black), Craig essentially refused to answer any questions on the basis that an oath he executed as part of their divorce settlement prevents him from doing so. (Ex.1, Craig Wright Dep. Tr. at 16:15-17:20 (April 4, 2019).)[2] In an effort to avoid wasting time, counsel for Plaintiffs asked Craig "[s]o we do not have to go through every single question [, a]re you refusing to answer questions about Ms. Lynne Black?" (*Id.* at 17:12-14.) Craig affirmed, stating that "[y]ou are asking me to break an oath, and unless instructed by a judge . . . I will not do that." (*Id.* at 17:18-20.)

With respect to Ms. Ramona Watts (née Ang), Craig also refused to answer any questions about his wife even though his lawyer did not instruct him not to answer on the basis of privilege. Specifically, after determining that Ms. Watts previously went by the surname of "Ang," the following exchange occurred:

Q. When did [her name] change to Watts?

MS. MARKOE: Objection.

THE WITNESS: I am not answering questions about my wife. My wife is privileged in the UK. My marriage is privileged. You should know that, as a lawyer. Are you seeking to have me breach marital privilege?

BY MR. FREEDMAN:

Q. Dr. Wright, it will not be productive for us to have a conversation about whether or not the time of when your wife's name changed from Ang to Watts is covered by [spousal] privilege, but ----

---

[2] At Craig's deposition, counsel for Craig asserted that they were marking the entire deposition transcript as confidential and that they would de-designate the portions of the transcript that were not confidential. As that process is not yet complete, Plaintiffs will submit a copy of Exhibit 1 by email to Judge Reinhart. All quotations contained in this brief are not confidential because (1) they are non-answers or (2) they are already a matter of public record. (*See* ECF No. [145-6].)

**A. I do not discuss my family, full stop.**

(*Id.* at 18:9-21 (emphasis added).)

Towards the end of Craig's deposition, the parties called Judge Reinhart in order to receive instructions concerning how the Court wanted to handle Craig's refusal to answer. As to both individuals, Judge Reinhart deferred ruling to allow Craig's counsel to file briefing as to whether Craig should be entitled not to answer questions about his wife and ex-wife. (*Id.* at 369:5-23.) At a follow-up discovery hearing a week later, the parties noted that a robust record wasn't made relating to the types of questions Plaintiffs' counsel wanted to ask because the line of questioning was shut down. (ECF No. [145-6] at 55:3-21.) At the hearing, Plaintiffs explained that the most productive way to obtain this information would be in an interactive deposition setting where there is some fluidity and flexibility to understand the true scope of Ms. Watts and Wright's knowledge, participation, and possession of documents related to the litigation. (*Id.* at 57:01-09.)

While the Court understood the benefit of a deposition session over sending interrogatories on these topics (Id. at 59:23-60:04), the Court asked Plaintiffs' counsel to submit this briefing to generally identify the topics that Plaintiffs would like to ask Craig about that touch upon his current and former wives. (*Id*. at 60:11-20.)

Accordingly, Plaintiffs have identified, in the following table, the general topics they seek to depose Craig on that relate to Ms. Wright and Ms. Watts. Furthermore, and for the Court's convenience, Plaintiffs have included a short statement on why these topics are relevant. [3] Finally, Plaintiffs are unable to advance any argument on why privilege may not apply until Craig asserts it. Similarly, despite testifying that there is an "oath" in Australia preventing any testimony about Ms. Wright, and a hearing on this issue having occurred, Craig has failed to produce a copy of this

---

[3] That said, this is by no means meant to be a full recital of all bases for asking these questions.

"oath." Consequently, to the extent Craig asserts privilege, or actually produces this alleged "oath,"

Plaintiffs request an opportunity to respond:

| **Topic** | **Relevance** |
|---|---|
| Basic background/biographical/contact information about Ms. Wright and Ms. Watts. | This will help Plaintiffs create a basic timeline about when Ms. Wright and Ms. Watts obtained knowledge about the facts alleged in the complaint and will provide Plaintiffs with some basic information they can use to conduct independent research on these important witnesses. |
| Information related to Ms. Wright or Ms. Watts's participation with, and knowledge of:<br><br>1. Craig's interactions with Dave;<br>2. The creation of Bitcoin;<br>3. Craig or Dave's mining of bitcoins until c. 2013;<br>4. The development of blockchain IP;<br>5. The sale of the Satoshi Nakamoto partnership's "life rights" and intellectual property, along with the plan to "come out" as Satoshi in 2016.<br>6. The Australian Tax Office investigations over Craig's entities<br>7. The formation of various trusts at issue in this litigation, and information about their beneficiaries, trustees, and anyone who assisted in their formation.<br>8. Craig's business operations, employees, accountants, attorneys, and whether they may better recall the names and identities of relevant witnesses to this litigation | These questions may help Plaintiffs narrow the scope of further document discovery by enabling Plaintiffs to seek this information from Ms. Watts, Ms. Wright, or other relevant witnesses.<br><br>Craig has produced documents demonstrating that Ms. Wright has funded entities related to this litigation, had founded at least one company Craig swore was relevant to this lawsuit, and was cc'd on communications between Craig and Dave when they were creating W&K.<br><br>Craig has likewise produced much documentation demonstrating that Ms. Watts was heavily involved in the businesses Craig swore were relevant to this lawsuit, was cc'd on much correspondence related to the issues in the complaint, interacted directly with Ira on Craig's behalf, and was also heavily involved in the sale of the Satoshi Nakamoto partnership's life rights, IP, and Craig's discussions with third parties about this sale and the partnership's origin.<br><br>Plaintiffs have alleged, and Craig has admitted, that "Satoshi Nakamoto" is one part of the manifestation of Dave and Craig's partnership. Communications aimed at selling those partnership "life rights" and intellectual property are relevant to Plaintiffs' breach of partnership duties of care and loyalty claims, their origin story, how the partnership was formed, what become of the partnership's assets. |

4

| | |
|---|---|
| Information related to any communications between Ms. Wright or Ms. Watts and Dave. | The existence of communications between Dave and Craig's wives would likely be a relevant source of important ESI as these communications may discuss the arrangement between Craig and Dave, and facts about that partnership. |
| Information related to any discussions with Ms. Wright or Ms. Watts concerning the creation of Bitcoin, Craig or Dave's bitcoin mining before 2014, or the development of any bitcoin related IP. | To the extent these discussions are not privileged, *e.g.,* if they predate the marriage, post-date it, or were held before third parties, these communications could contain highly relevant admissions. |
| Information related to any financial interest Ms. Wright or Ms. Watts have in any of the bitcoins or intellectual property at issue in this litigation. | Whether these individuals have a financial interest in the subject assets of this litigation, they become even more important witnesses. |
| Ms. Wright's involvement in the projects W&K submitted to the Department of Homeland Security. | Lynn Wright was copied on emails between Craig and Dave discussing the submission of these projects to the Department of Homeland Security. (*See e.g.* Ex. 2 DEF_00009667.) Since these proposals were submitted by W&K, her participation in these discussions suggests that Ms. Wright has some knowledge of W&K or participation in its activities. |

In light of Craig's refusal to permit Plaintiffs exploration of these topics at his deposition, and the purposeful word games Craig played to avoid answering questions (*see, e.g.,* 53:24-54:21, 113:18-114:9, 117:5-119:12), Plaintiffs request this Court compel him to sit for an additional two-hour continuance of his April 4, 2019 deposition.[4]

---

[4] It should be noted that the parties specifically contemplated this might occur, and for this reason, and at Defense counsel's insistence, Plaintiff reserved approximately 22.5 minutes from the first deposition session.

5

Dated: April 19, 2019

Respectfully submitted,

*/s/ Velvel Freedman*_____
Velvel (Devin) Freedman, Esq.
Florida Bar No. 99762
BOIES SCHILLER FLEXNER LLP
100 SE Second Street, Suite 2800
Miami, Florida  33131
Telephone:  (305) 539-8400
Facsimile:   (305) 539-1307
vfreedman@bsfllp.com

Kyle W. Roche, Esq.
*Admitted Pro Hac Vice*
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300
kroche@bsfllp.com

*Counsel to Plaintiff Ira Kleiman as Personal Representative of the Estate of David Kleiman and W&K Info Defense Research, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 19, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Velvel Freedman*_____
VELVEL (DEVIN) FREEDMAN