# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC,<br><br>*Plaintiffs,*<br><br>v.<br><br>CRAIG WRIGHT,<br><br>*Defendant.* | CASE NO.:  9:18-cv-80176-BB |

# PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS FOR LACK OF SUBJECT-MATTER JURISDICTION

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................. ii

INTRODUCTION ............................................................................................................................... 1

ARGUMENT ...................................................................................................................................... 2

    I.    THIS COURT HAS SUBJECT-MATTER JURISDICTION OVER THIS ACTION. ..... 3

        A.    Dave was W&K's sole member. ................................................................................. 3

        B.    The evidence Craig cites, even if accepted as authentic, shows absolutely nothing related to the membership of W&K. ....................................................................... 4

    II.    CRAIG'S EXHIBIT A IS A FORGERY HE CREATED A YEAR AFTER DAVE'S DEATH AND WHICH HE ONLY WITHDREW IN THE FACE OF MASSIVE PUBLIC CONDEMNATION FOR SUBMITTING FRAUDULENT DOCUMENTS TO THIS COURT. ................................................................................................................................ 6

        A.    The email is a forgery. .................................................................................................. 7

        B.    Without the fraudulent email, the entire motion falls. ................................................ 11

    III.    THIS COURT HAS SUPPLEMENTAL JURISDICTION IN ANY EVENT. ................ 11

# **TABLE OF AUTHORITIES**

**Cases**

*Ametex Fabrics, Inc. v. Just In Materials, Inc.*,
 140 F.3d 101 (2d Cir.1998) .................................................................................................. 13

*Canales v. ALM Media, LLC*,
 No. 12-CV-1036, 2013 WL 12121453 (W.D. Tex. Jan. 9, 2013) ............................................ 5

*Carter v. Bayview Loan Servicing LLC*,
 No. 4:18-CV-00822, 2018 WL 5732083 (S.D. Tex. Aug. 27, 2018) ....................................... 5

*Delgado v. Pawtucket Police Dept.*,
 668 F.3d 42 (1st Cir. 2012) ................................................................................................... 13

*Enercomp, Inc. v. McCorhill Pub., Inc.*,
 873 F.2d 536 (2d Cir. 1989) .................................................................................................. 13

*HCA Health Services of Florida v. Hillman*,
 906 So. 2d 1094 (Fla. 2nd DCA 2004) ................................................................................. 14

*Koul v. Strong Memorial Hospital*,
 282 F.Supp.3d 569 (W.D.N.Y. 2017) .................................................................................... 13

*McElmurray v. Consol. Govt. of Augusta-Richmond County*,
 501 F.3d 1244 (11th Cir. 2007) .............................................................................................. 2

*Moore v. Ocwen Loan Servicing, LLC*,
 No. 1:17-CV-1867, 2017 WL 8186863 (N.D.Ga., 2017) ....................................................... 4

*New Hampshire v. Maine*,
 532 U.S. 742 (2001) ................................................................................................................ 3

*Palmer v. Hospital Authority of Randolph Co.*,
 22 F.3d 1559 (11th Cir. 1994) ............................................................................................... 12

*Parker v. Scrap Metal Processors, Inc.*,
 468 F.3d 733 (11th Cir. 2006) ......................................................................................... 12, 14

*Pilkington v. United Airlines, Inc.*,
 921 F.Supp. 740 (M.D.Fla. 1996) ......................................................................................... 13

*Roe v. Michelin N. Am., Inc.*,
 613 F.3d 1058 (11th Cir.2010) ................................................................................................ 2

*Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*,
 374 F.3d 1020 (11th Cir. 2004) .............................................................................................. 4

*Scarfo v. Ginsberg*,
   175 F.3d 957 (11th Cir.1999) .................................................................................................. 2

*Silver Crown Investments, LLC v. Team Real Estate Mgmt., LLC*,
   349 F. Supp. 3d 1316 (S.D. Fla. 2018) (Martinez J.) ................................................................. 4

*Slater v. United States Steel Corp.*,
   871 F.3d 1174 (11th Cir. 2017) ............................................................................................... 3

*Thomas v. United Steelworkers Local 1938*,
   743 F.3d 1134 (8th Cir. 2014) ................................................................................................ 13

*United Mine Workers v. Gibbs*,
   383 U.S. 715 (1966) ........................................................................................................ 11, 12

**Other Authorities**

13D Wright & Miller, Fed. Prac. & Proc. Juris. § 3567.3 (3d ed.) ............................................... 13

28 USC § 1367(a) ....................................................................................................................... 11

Fla. Stat. § 608.0407 ................................................................................................................ 4, 5

Fla. Stat. § 608.422-.4229 ........................................................................................................ 4, 5

Fla. Stat. §§ 608.402 (18)-(22) ................................................................................................. 4, 5

Ira Kleiman ("Ira") and W&K Info Defense Research, LLC ("W&K") (collectively "Plaintiffs") respectfully submit this opposition to Defendant's ("Craig's") Motion for Judgment on the Pleadings for Lack of Subject-Matter Jurisdiction (ECF No. [144]).

## INTRODUCTION

This case arises from Craig's theft of over $11 billion worth of bitcoins and intellectual property from the estate of Dave Kleiman ("Dave") and W&K shortly after Dave's 2013 death. W&K is a Florida LLC founded by Dave in February 2011.

Craig has now moved for judgment on the pleadings claiming that W&K has alien members which destroy diversity. As explained below, Craig's motion fails to provide any evidence to demonstrate alien **membership** in W&K. Furthermore, and in any event this Court has supplemental jurisdiction.

That aside, and as discussed below in detail, Craig has lied to this Court every single time he's tried to dismiss this case. This motion is no exception.

On April 16, 2018, Craig moved to dismiss Plaintiff's original complaint. (ECF No. [12]). In support of his argument that this Court lacked personal jurisdiction, Craig submitted false testimony claiming he had no relationship with W&K. (ECF No. [12-1], at 2.) Plaintiffs caught him in this lie and exposed that he swore the opposite to the Australian courts. (ECF No. [83], at ¶¶160-170).

After Plaintiffs amended the complaint – in part to expose his lies – Craig moved to dismiss again. (ECF No. [33]). Craig argued this Court should dismiss the case on forum non conveniens grounds because the relevant evidence was in Australia. (*Id*. at 19-27.) In support of this argument, Craig again submitted false testimony claiming "I have no documents in my possession from any ATO investigation" and that if such documents existed, they were with his attorneys "in Australia." (ECF No. [33-3] at ¶18). During discovery, however, Craig completely contradicted this

testimony. He now claims that he has so many documents from the ATO investigation in his own possession that he should not be required to ask his Australian lawyers for copies, and he has expressly admitted his prior contrary sworn statement was "mistaken." (ECF No. [127] at 7.)

Craig's most recent motion – requesting that this Court dismiss Plaintiffs' case for lack of subject-matter jurisdiction – demonstrates that his proclivity for lying to this Court has no bounds. In support of his motion, Craig attached an email that purportedly shows Dave appointing Uyen Nguyen ("Uyen") as a "director" of W&K. However, as explained below, Craig forged this fraudulent email a year after Dave's death in an effort to facilitate his theft of W&K's property.

For these reasons, and the reasons articulated below, Craig's motion should be denied.

## ARGUMENT

"[A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint." *McElmurray v. Consol. Govt. of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007). "A 'facial attack' on the complaint require[s] the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* (internal quotations omitted). "'Factual attacks,' on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Id.* (internal quotations omitted). "In a factual attack, the presumption of truthfulness afforded a plaintiff under Federal Rule of Civil Procedure 12(b)(6) does not attach, and the court is free to weigh the evidence." *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir.1999). Further, "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir.2010). Because Plaintiffs have met this burden and sufficiently demonstrated that Dave

Kleiman was W&K's sole member – and Craig has not shown this Court any evidence to demonstrate otherwise – his motion must be denied.

## I. THIS COURT HAS SUBJECT-MATTER JURISDICTION OVER THIS ACTION.

### A. Dave was W&K's sole member.

Plaintiffs adequately alleged that Dave was W&K's sole member (ECF No. [83] ¶¶ 69-71), and the evidence demonstrates the truth of this allegation. Craig testified that it was Dave's idea to create W&K. (Redacted Craig Dep. Tr. 218:7-8, attached as Ex. 1). Dave created W&K in Florida on February 14, 2011. (ECF No. [83-3]). Further, when Dave filed W&K's articles of organization, he listed solely *himself* as its **member** and manager. (ECF No. [83-3], at 3 (listing "David A. Kleiman" with the title "MGRM"); *compare with* Ex. 2, available at https://efile.sunbiz.org/llc_ar_help.html (defining "MGRM - A person who is a **member** and also manages the company"); *see also* ECF No. [83] at ¶69.) As explained below, there is no other evidence of additional members in W&K, and Craig cannot claim to have any information to the contrary because he testified at his deposition that he has "no idea" who owns W&K. (Ex. 1, 219:12-220:01).[1]

As demonstrated by W&K's articles of organization and Craig's own statements, Dave, a Florida resident, was the sole member of W&K. The Personal Representative of his estate

---

[1] Craig has previously claimed an ownership interest in W&K alongside Dave. (ECF No. [83-4] at 5). But no evidence supports his claim and he has sworn to this Court that his past statement was untrue in that he never owned any interest in W&K. (ECF No. [12-2] ¶¶ 9, 12.) He swore the same at his deposition, disavowing any interest in W&K, in any form. (Ex. 1 at 219:10-11, 15-16, 230:19-21. (Q: "Did you have any ownership in W&K?" A: "No." . . . Q: "who owned W&K in reality?" A: "not me." . . . Q: "Was W&K your company?" . . . A: "No.").) Consistent with his testimony to this Court, Craig's motion also never claims any ownership in W&K. Indeed, any such assertion would be barred under the doctrine of judicial estoppel. *See New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001); *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1180–82 (11th Cir. 2017) (*en banc*). Craig's testimony, consistent with the evidence cited above, leaves Dave as W&K's sole member.

3

succeeded to that membership interest upon his death and Craig's motion has produced no evidence – legitimate or fraudulent – to suggest otherwise.  (ECF No. [83] ¶ 71.).

### B. The evidence Craig cites, even if accepted as authentic, shows absolutely nothing related to the membership of W&K.

Craig is correct that, for diversity purposes, an LLC has the citizenship of its members, and that diversity is destroyed if aliens are on both sides of the "v." But W&K has no alien membership, and nothing Craig has submitted even begins to show membership in W&K at all.

Said simply, even if all the evidence Craig submitted with his motion were legitimate – it's not – this Court would still have subject-matter jurisdiction over this action. Craig's motion is premised entirely on the notion that alleged foreign nationals Uyen and Coin-Exch PTY Ltd. ("Coin-Exch") are **members** of W&K. But Craig has submitted **no evidence at all** that Uyen and Coin Exch were ever W&K **members**. Instead, his evidence – at best – demonstrates that Uyen and Coin Exch were directors, managers, and secretaries of W&K. But officers of a company do nothing to establish residence for jurisdictional purposes.

Under Florida law, an LLC is owned by "members," and is managed by either the members themselves, non-owner "managers," or by "member managers." Fla. Stat. §§ 608.402 (18)-(22), .0407, 422-.4229 (effective January 1, 2006 to June 10, 2015); *see also Moore v. Ocwen Loan Servicing, LLC*, No. 1:17-CV-1867, 2017 WL 8186863, at *1 (N.D.Ga., 2017) ("By definition, an LLC is owned by its members.").

"But for purposes of diversity jurisdiction, it is the citizenship of an LLC's *members*—not its managers—that is relevant." *Silver Crown Investments, LLC v. Team Real Estate Mgmt., LLC*, 349 F. Supp. 3d 1316, 1324 (S.D. Fla. 2018) (Martinez J.) (emphasis in original) *citing Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004); *Carter v. Bayview Loan Servicing LLC*, No. 4:18-CV-00822, 2018 WL 5732083, at *3 (S.D. Tex. Aug.

4

27, 2018) ("While Plaintiff identifies a list of some individuals—who may or may not be—acting as various officers and directors of Bayview (e.g. president, secretary, chief financial officer, etc.), they are not the members of Bayview from whom its citizenship is determined."); *Canales v. ALM Media, LLC*, No. 12-CV-1036, 2013 WL 12121453 at *3 (W.D. Tex. Jan. 9, 2013) ("The application lists three individuals who are identified as managers of ALM Media. None of these persons are identified as members of the company or as owning a membership interest in the company.").

Craig's motion relies on a March 2014 online Sunbiz filing, submitted a year after Dave's death, by Craig's agent Uyen, who listed herself (with a false Florida address) as W&K's new "registered agent" for service when she fraudulently reinstated W&K. (ECF No. [83-25], at 2). In that same filing, Uyen added herself and Coin Exch under the "authorized persons" section of W&K's reinstatement with specific "titles," giving herself the position of "MS" (*i.e.,* manager and secretary) and Coin Exch the position of "DR" (*i.e.,* director) [2]. (*Id.*) Putting aside the fact that Uyen was never authorized to file this document, it in no way states or implies that Uyen or Coin Exch were **members** of W&K.

W&K's publicly filed articles of organization identify only Dave as the LLC's **member** and manager. Uyen's subsequent filing – even if not fraudulent – does not suggest otherwise. An LLC's registered agent need not be, and often is not, an LLC member. The same is true for an LLC's managers and "authorized representatives," such as a "secretary" or a "director" (actually,

---

[2] The "Title Abbreviations" on the Florida Division of Corporations' website define "M" as Manager, "S" as Secretary, and "D" as "Director." (Ex. 3, available at https://dos.myflorida.com/sunbiz/search/guides/corporation-records/title-abbreviations/.) True to form, Craig completely fails to mention that he himself admitted Uyen "added herself as registered agent, manager, and secretary for W&K, and added Coin-Exch Pty Ltd. as director" in his first motion to dismiss the case where he never mentioned a word about their alleged "**membership**" in W&K. (ECF No. [12], at 5).

5

LLCs do not even have directors). Fla. Stat. §§ 608.402 (18)-(22), .0407, 422-.4229 (effective January 1, 2006 to June 10, 2015); *Cox & Hazen*, *supra*. Craig's motion states repeatedly that Uyen and Coin Exch have been "publicly identified" as W&K "members," but he cites literally nothing that so says, and he does not even attempt to explain how a secretary or director or registered agent can *ipso facto* be deemed a member of an LLC.

Thus, even putting aside the audacious forgery he submitted in support of this motion (*see* Part II below), his attempt to "attack" the jurisdiction of this Court by identifying "alien" members of W&K has no supporting authority or evidence, and should be rejected by this Court as frivolous.

## II. CRAIG'S EXHIBIT A IS A FORGERY HE CREATED A YEAR AFTER DAVE'S DEATH AND WHICH HE ONLY WITHDREW IN THE FACE OF MASSIVE PUBLIC CONDEMNATION FOR SUBMITTING FRAUDULENT DOCUMENTS TO THIS COURT.

The sole basis for Craig's claim that Uyen had authority to make the 2014 Sunbiz filing he relies on is his false allegation that Uyen was a "director" of W&K. Craig's motion asserts (at 3) that "before his death, Dave Kleiman (and not Dr. Wright) personally appointed Ms. [Uyen] Nguyen as a 'director' of W&K." The basis for this allegation is a purported December 20, 2012 email that Craig alleged Dave sent to Uyen and signed with a PGP key. (ECF No. [144-1].) But within hours of Craig filing his motion, the cryptocurrency community erupted with news that the PGP signature at the bottom of the email was generated on March 12, 2014 – one year *after* Dave's

death and a few short weeks before Uyen's fraudulent Sunbiz filing.[3] Dave did not write or send this email (he was dead). It is a fake forged by Craig.

Recognizing he had been caught in yet another lie, Craig withdrew the exhibit "because he cannot verify the date of the email exchange." (ECF No. [154].) This was another lie. He knows for a fact when it was created because, as demonstrated below, documents produced in discovery prove that Craig himself drafted the fraudulent email mere minutes before a PDF of the forgery was created.

### A.     The email is a forgery.

Suspiciously, Craig produced the "email" attached to his motion as Exhibit A (ECF No. [141-1]) as a PDF and not an original email file. (Edman Aff. ¶ 16, attached hereto as Ex. 9.) Tellingly, the metadata on the PDF file shows that it was created on April 16, 2014, *i.e.,* almost a year and a half after it was allegedly sent by Dave Kleiman, and a year after he died. (*Id.* at ¶¶ 29-30.) The metadata further indicates that the local time zone of the computer on which the PDF was created is the same time zone associated with eastern Australia (*id.* at ¶ 29) – the country Craig lived in during 2014.

But if that itself wasn't enough to call the "email" PDF into question, *just six minutes* before Craig last modified that PDF, he emailed a "draft" of the final forgery from himself to himself! (Ex. 10, DEF_00030487). Notably, the forgery-in-progress wasn't yet complete – it was missing the critical fields stating that the email came "From: Dave Klieman [sic]," went "To: Uyen

---

[3] *See e.g.* Ex. 4, available at https://www.ccn.com/craig-wright-allegedly-submits-fake-e-mail-in-dave-kleiman-lawsuit; Ex. 5, available at https://www.reddit.com/r/Bitcoin/comments/bdxkii/the_fraud_continues_craig_wright_just_purposely/; Ex. 6, available at https://www.chepicap.com/en/news/8963/did-craig-wright-just-submit-a-faked-email-as-evidence-for-his-lawsuit-.html; Ex. 7, available at https://www.cryptovibes.com/crypto-news/faketoshi-craig-wright-presents-provably-fake-documents-in-kleiman-case/; Ex. 8, available at https://twitter.com/DrFunkenstein6/status/1118229116711518211.

7

Nguyen," and was dated "December 20, 2012." (ECF No. [144-1].) In the intervening six minutes, Craig completed the forgery, saving it as a PDF, but was apparently too rushed to correctly spell the name of his deceased "best friend." (*Id.* (spelling Dave Kl**ei**man's last name "Kl**ie**man"); (Ex. 1 at 48:17-18)). For the Court's convenience, the draft forgery and the final forgery are reproduced below:

**Draft Forgery**
**(Ex. 10, (Email file sent from Craig to Craig, dated April 16, 2014).)**

From: Craig S Wright
Sent: Wednesday, April 16, 2014 10:22 PM
To: Craig Wright
Subject: Apppointment letter

-----BEGIN PGP SIGNED MESSAGE-----
Hash: SHA1
UT
Craig speaks highly of you.
I am going to need and ask for your help. You know Craig well and I am an enigma. I have been unwell and in the VA far too much. I need a person who can run around. Craig is too far away and we need him to remain off of this.
I will ask you to be a director with me in W&K Information Defense Research LLC. We are setting up a company in Australia and will move the assets back from Panama once this is complete. We placed them there to protect Craig.
At the time, the Australian IRS valued the IP at nothing, now it is ok, but one day it could be worth more than anything we can imagine. For this reason, we need to work to stop it being seen in the wrong light.
Craig is a great guy, but too volatile. He also does not know when to accept that rules get broken by others far too much. Unless I hear otherwise, I will assume you are coming on-board. I will work out a time to meet with you in May if my health improves. Do not let Craig badger you too much.
Dave
-----BEGIN PGP SIGNATURE-----
Version: GnuPG v2.0.19 (MingW32)
iQEcBAEBAgAGBQJTH+uQAAoJELiFsXrEW+0bCacH/3KruseVIurwbAVr3b2ckSiv
YXX5lMkwsBXTVfkxm/at1nvCwrzYNroiv1Ee5jLIOhFZhr7mqpqAQ7yYURUPtNi9
U3Eh+tXaH20eLrXayUaFvEKzS6N0cA+W+8DWLt/VmlycxdYojxAoHXDM2UAp6RFl
w5T8yZ6Z1acAUgmvaX+sTm8tQ1P0U2BYC7T0cpTZ2mX+dhYCuJDyhFo2IoeHlhs7
D7ruF+/QepxDDySN70qi3lstNOkMNyc4H3Kw9rbEizy0y3xtM7FjcNtOPW1t4/Ge
ePFcinXZaHk/Aw5RT6F1lFBjTaCZ58WQnxgiehDTvGNatTGsszBHjM9IwoMs0YU=
=7JsV
-----END PGP SIGNATURE-----

8

**Final Forgery**
**(ECF No. [144-1] (PDF file with email headers forged and "Kleiman" misspelled).)**

From: Dave Kleiman
To: Uyen Nguyen
Subject: Apppointment letter
Date: Thursday, 20 December 2012 8:19:03 AM

-----BEGIN PGP SIGNED MESSAGE-----
Hash: SHA1

UT
Craig speaks highly of you.

I am going to need and ask for your help. You know Craig well and I am an enigma. I have been unwell and in the VA far too much. I need a person who can run around. Craig is too far away and we need him to remain off of this.

I will ask you to be a director with me in W&K Information Defense Research LLC. We are setting up a company in Australia and will move the assets back from Panama once this is complete. We placed them there to protect Craig.

At the time, the Australian IRS valued the IP at nothing, now it is ok, but one day it could be worth more than anything we can imagine. For this reason, we need to work to stop it being seen in the wrong light.

Craig is a great guy, but too volatile. He also does not know when to accept that rules get broken by others far too much. Unless I hear otherwise, I will assume you are coming on-board. I will work out a time to meet with you in May if my health improves. Do not let Craig badger you too much.

Dave
-----BEGIN PGP SIGNATURE-----
Version: GnuPG v2.0.19 (MingW32)

iQEcBAEBAgAGBQJTH+uQAAoJELiFsXrEW+0bCacH/3KruseVlurwbAVr3b2ckSiv
YXX5IMkwsBXTVfkxm/at1nvCwrzYNroiv1Ee5jLIOhFZhr7mqpqAQ7yYURUPtNI9
U3Eh+tXaH20eLrXayUaFvEKzS6NOcA+W+8DWLt/VmlycxdYojxAoHXDM2UAp6RFl
w5T8yZ6Z1acAUgmvaX+sTm8tQ1P0U2BYC7T0cpTZ2mX+dhYCuJDyhFo2loeHlhs7
D7ruF+/QepxDDySN70qi3lstNOkMNyc4H3Kw9rbEizyOy3xtM7FjcNtOPW1t4/Ge
ePFclnXZaHk/Aw5RT6F1IFBjTaCZ58WQnxgiehDTvGNatTGss2BHjM9lwoMsOYU=
=7JsV
-----END PGP SIGNATURE-----

9

Finally, if there were any doubt remaining as to the email's fraudulent nature – there isn't – Craig's attempt to make the perfect forgery backfired. Craig included a "PGP Signature" in the email in an attempt to make it cryptographically "indisputable" that the email was sent by Dave Kleiman. This proved to be his undoing.

Pretty Good Privacy ("PGP") is a computer software program that, allows a user to, among other things, encrypt and decrypt data such as emails, files, or documents. (Ex. 9 ¶ 18.) Communication programs, such as GnuGP, leverage PGP encryption so that a recipient can verify the data received has (i) originated from the sender and (ii) has not been altered. (*Id.* at ¶¶ 19-20.) In order to create a PGP signature of an email, the sender creates a hash of the emails' content with a "private key" that is possessed by the sender. **Critically**, the resulting signature creates a timestamp indicating when the digital signature was created. (*Id.* at ¶ 22.) Furthermore, while that timestamp is present, it's not obvious to the uninitiated and takes advanced computer knowledge to decode. (*Id.*)

After the flurry of helpful public analysis from the cryptocurrency community, Plaintiffs retained Dr. Matthew J. Edman. Dr. Edman has a Ph.D in Computer Science and is an expert in cryptography, bitcoin, and PGP Software. (*Id.*) As explained in detail in his affidavit, Dr. Edman confirmed that the PGP signature was in fact created on March 12, 2014 at 5:07:28 AM UTC according to the computer on which the signature was created. (*Id.* at ¶¶ 15, 23-24.) That is, **more than a year after Dave died** and a mere two weeks before Uyen filed her fraudulent Sunbiz filing.

Clearly this email purporting to show Dave appointing Uyen as a "director" of W&K is a forgery. Dave **never** appointed Uyen to be a director in any company. In fact, Uyen told Ira via email that she knew nothing about Dave. (Ex. 11, KLEIMAN_00004796.) But after being caught

lying to this Court for the fourth time,[4] he withdrew the exhibit under the pretense of yet a *fifth* lie, that he couldn't verify the date he'd drafted and sent the forgery. (ECF No. 154).

### B. Without the fraudulent email, the entire motion falls.

When Craig withdrew the fake email as an exhibit, he stated that he was nevertheless "not withdrawing the motion and maintains that this Court lacks subject-matter jurisdiction over this action." (*Id.* at 1-2.) However, without this exhibit, there is no evidence that Uyen was ever authorized to act for W&K and file the 2014 Sunbiz filing. In which case, Craig has **nothing** at all to support his contention that Uyen's 2014 Sunbiz filing was legitimate.

To be sure, and as explained above, the substance of the evidence – even it was all legitimate – would not support Craig's motion for dismissal based on subject matter jurisdiction because they say nothing about W&K's membership.

### III. THIS COURT HAS SUPPLEMENTAL JURISDICTION IN ANY EVENT.

As shown above, there is no evidence that anyone other than Dave Kleiman was a member of W&K. Accordingly, this Court plainly has diversity jurisdiction for this case. But even if it did not, the Court has supplemental jurisdiction under 28 USC § 1367, which codified *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). This Court undisputedly had original jurisdiction prior to the dismissal of Plaintiffs' federal trade secrets claim and thus, under § 1367(a), the Court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The state claims are all closely related to the federal claim and are part of the same "case or controversy," arising from the same "common nucleus of operative fact."

---

[4] Before Judge Reinhart, Craig also falsely a national security objection as a basis for not answering certain questions at his deposition, later having his counsel retract that assertion, claiming instead that his personal security was at issue. (ECF No. [145] at 9.)

*Gibbs*, 383 U.S. at 725.

Of course, the exercise of this supplemental jurisdiction is subject to 28 USC § 1367(c)(3), which gives the Court the discretion to decline to retain jurisdiction if all federal claims are dismissed. The Court's discretion should be guided by principles of "judicial economy, convenience, fairness to the parties, and whether all the claims would be expected to be tried together." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 745 (11th Cir. 2006); *Palmer v. Hospital Authority of Randolph Co.*, 22 F.3d 1559, 1569 (11th Cir. 1994). Plaintiffs submit that these factors warrant retention of jurisdiction by this Court.

With respect to judicial economy, this Court and Judge Reinhart have already devoted countless hours to this case that has been pending before this Court for over a year. Judge Reinhardt has:

- reviewed numerous discovery memorandums
- held five lengthy courtroom discovery hearings;
- held a telephone hearing during Craig's London deposition;
- adjudicated a dispute regarding the confidentiality stipulation;
- adjudicated a dispute over the forensic imaging of Dave Kleiman's drives;
- issued a report and recommendation on a motion; and
- handled various other matters in this complicated case.

(*See* ECF No. [79], [90], [103], [104], [107], [110], [117], [122-24], [129-30], [135], [137], [146].)

In addition, this Court has authored a 39-page opinion largely denying Craig's motion to dismiss (which consisted of over 150 pages of briefing), a four-page opinion granting Craig's motion to stay discovery, set and amended the case scheduling order and trial date, and resolved various other issues. (*See* ECF No. [21], [28], [30], [39], [54], [57], [68], [72], [78], [143], [148].)

In light of the extensive expenditure of judicial and party resources, it would not make sense to force the parties to start anew in state court. *See*, *e.g.*, *Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1141 (8th Cir. 2014) (no error in exercising supplemental jurisdiction given the "substantial amount of time and judicial resources expended in this case"); *Enercomp, Inc. v. McCorhill Pub., Inc.*, 873 F.2d 536, 546 (2d Cir. 1989) (in light of "over eleven months of often heated pretrial litigation," it "would have been a pointless waste of judicial resources to require a state court to invest the time and effort necessary to familiarize itself with a case well-known to the presiding federal judge"); 13D Wright & Miller, Fed. Prac. & Proc. Juris. § 3567.3 (3d ed.) ("the federal court should retain supplemental jurisdiction if it has already invested substantial judicial resources in the supplemental claims").[5]

With respect to convenience, this federal court is more convenient to all parties and witnesses than the Palm Beach County state court. Both parties' counsel are in Miami, and the Miami International Airport has many more flights than its Palm Beach counterpart. As for "whether all the claims would be expected to be tried together," the answer is a definite yes, as all

---

[5] There are cases suggesting a court should "usually" decline to exercise supplemental jurisdiction if all federal claims are dismissed "before trial" but, as the above-cited authorities demonstrate, that is not so where, as here, substantial federal judicial resources have been spent on the case. *Accord*, *e.g.*, *Delgado v. Pawtucket Police Dept.*, 668 F.3d 42, 48 (1st Cir. 2012) (affirming retention of jurisdiction where "the court had already determined many substantial questions of state law at summary judgment"); *Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 105–06 (2d Cir.1998) (no abuse of discretion in maintaining jurisdiction after discovery and a settlement conference had taken place); *Koul v. Strong Memorial Hospital*, 282 F.Supp.3d 569, 570–71 (W.D.N.Y. 2017) (jurisdiction retained because the court had "already developed knowledge about the case and the respective positions of the parties" and dismissal would "involve significant duplication of efforts not only by the attorneys but by a state court judge"); *Pilkington v. United Airlines, Inc.*, 921 F.Supp. 740, 747-48 (M.D.Fla. 1996) (retaining jurisdiction in light of extensive discovery and the substantial "amount of time and effort expended by the Court and the litigants in developing this case").

of Plaintiffs' claims arise from a "common nucleus of operative fact." *Parker*, 468 F.3d at 743 (citing *Gibbs*, 383 U.S. at 725).

Last but not least is simple fairness. This case involves the outright theft of billions of dollars' worth of property. Plaintiffs are entitled to a prompt day in court, particularly in light of Craig's perjury and delay tactics. Furthermore, as the case has been pending for over a year, should the Court dismiss this case and force Plaintiffs to file again in state court, Craig will certainly try to argue that all of Plaintiffs' claims are time barred. *See HCA Health Services of Florida v. Hillman*, 906 So. 2d 1094 (Fla. 2nd DCA 2004).

This Court has diversity jurisdiction so any discussion of supplemental jurisdiction is moot, but in any event, all of the discretionary factors point in favor of the retention of jurisdiction by this Court. Craig's motion should be denied, and he should be told that his incessant use of lies and fraudulent evidence will not be condoned.

Dated: April 28, 2019                                Respectfully submitted,

*/s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman, Esq.
Florida Bar No. 99762
BOIES SCHILLER FLEXNER LLP
100 SE Second Street, Suite 2800
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307
vfreedman@bsfllp.com

Kyle W. Roche, Esq.
*Admitted Pro Hac Vice*
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300
kroche@bsfllp.com

*Counsel to Plaintiff Ira Kleiman as Personal Representative of the Estate of David Kleiman and W&K Info Defense Research, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 28, 2019 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

          */s/ Velvel (Devin) Freedman*
VELVEL (DEVIN) FREEDMAN