UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC

    plaintiffs,

v.                                                       **Case No. 9:18-cv-80176 (BB/BR)**

CRAIG WRIGHT,

    defendant.

_____/

# DR. WRIGHT'S REPLY IN SUPPORT
# OF HIS MOTION FOR JUDGMENT ON THE
# PLEADINGS FOR LACK OF SUBJECT MATTER JURISDICTION

Article III federal courts are courts of limited jurisdiction, *e.g., Marbury v. Madison*, 5 U.S. 137 (1803), and "[w]hen a federal court acts outside its statutory subject-matter jurisdiction, it violates the fundamental constitutional precept of limited federal power," *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). The requirements for this Court to have subject-matter jurisdiction are "inflexible and without exception,"[1] and plaintiffs ***must*** establish that this Court has jurisdiction because "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *RG Martin Inv., LLC v. Virtual Tech. Licensing, LLC*, 2017 WL 7792564, at *1 (S.D. Fla. 2017) (Bloom, J.) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

Within this framework, contrary to plaintiffs' belief, issues of credibility (or the purported lack of it) does not establish that this Court has jurisdiction, nor does it change what the pleadings and evidence establish. That is, plaintiffs cannot invoke this Court's diversity jurisdiction because they do not know who W&K's members are. *See, e.g., RG Martin Inv. LLC*, 2017 WL 7792564, at *2 (To invoke diversity jurisdiction, "a party must list the citizenships of all the members of the limited liability company.") (citing *Mallory & Evans Contrs. & Eng'rs, LLC v. Tuskegee Univ.*, 663 F.3d 1304, 1305 (11th Cir. 2011)).[2]

In their Second Amended Complaint [D.E. 83] (the "Third Complaint"), plaintiffs alleged that W&K's "ownership structure is unclear," *id*. at ¶ 70, then speculated that Dave Kleiman was the sole member of W&K, *id*. at ¶ 71, while also alleging that Dr. Wright might be a member of W&K, *id*. at ¶ 149.[3] This guesswork regarding W&K's membership is insufficient to invoke the Court's diversity jurisdiction, as a matter of law. *See*, *e.g.*, *Investissement Yves Auclair, Inc. v. MLM*

---

[1] *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (Subject-matter jurisdiction "functions as a restriction on federal power," and its requirements are "inflexible and without exception.").

[2] *Accord Trutie v. Republic Nat. Distrib. Co.,* 718 F. Supp. 2d 1350, 1352 (S.D. Fla. 2010) (remanding case*, sua sponte*, because removing LLC defendant failed to list the citizenship of its members and demonstrate that they were diverse from plaintiff); *Tvestments, Ltd v. L.K. Station Grp., LLC*, 2008 WL 4613070, at *1 (S.D. Fla. 2008) (dismissing complaint, *sua sponte*, because plaintiff failed to allege the citizenship of members of LLC defendants); *Hurok Marble LLC v. Akar*, 2017 WL 7794327, at *1 (S.D. Fla. 2017) (dismissing complaint, *sua sponte*, because of the "unknown permanent residence status, or citizenship, of one of the Plaintiff LLC's members"); *Tilkin & Cagen, Inc. v. United Metal Receptacle Corp.*, 2008 WL 2339825, at *1 (N.D. Ill. 2008) ("It is certainly time that complaints such as the present one should trigger an automatic dismissal when counsel for a plaintiff in a diversity action clearly fails to carry the plaintiff's burden of establishing subject matter jurisdiction where any party . . . is a limited liability company.").

[3] It goes without saying that if Dr. Wright were a member of W&K, there would be no diversity.

*Experts, LLC*, 2018 WL 1832867, at *2 (M.D. Fla. 2018) ("[A]llegations based upon information and belief are not a substitute for establishing jurisdictional facts."); *Newsom v. Caliber Auto Transfer of St. Louis, Inc.*, 2010 WL 415388, at *3 (S.D. Ill. 2010) ("On the record before the Court it is impossible to ascertain Davenport's correct state citizenship for diversity purposes, an intolerable situation given that 'subject matter jurisdiction must be a matter of certainty and not of probabilities (however high)[.]'") (quoting *Murphy v. Schering Corp.*, 878 F. Supp. 124, 125-26 (N.D. Ill.1995)).

Ignoring their failure to sufficiently allege diversity in their Third Complaint, plaintiffs' opposition to this Motion [D.E. 159] (the "Opposition") proffers only W&K's articles of incorporation as purported evidence of the citizenship of its members. Opp. at 3. This argument is an invitation to error because, under Fla. Stat. § 605.0201, articles of incorporation are not evidence of an LLC's complete membership, let alone dispositive evidence. *See Commerce & Indus. Ins. Co. v. S. Constr. Labor Servs., LLC*, 2017 WL 10058585, at *1 (M.D. Fla. 2017) ("Florida law does not require LLCs to publicly disclose their members.") (citing Fla. Stat. § 605.0201). In fact, Florida's Department of Corporations affirmatively instructs LLCs *to not* list their members in their articles of incorporation.[4]

After providing no meaningful evidence to establish W&K's complete membership, plaintiffs then improperly attempted to shift their burden to Dr. Wright,[5] with the wholly irrelevant (and false) assertion that Dr. Wright "has submitted no evidence at all" regarding W&K's membership. Opp. at 4. It was, is, and always will be plaintiffs' complete burden to demonstrate a basis for this Court's jurisdiction, which plaintiffs failed to do. Plaintiffs then devote nearly half of their Opposition to a withdrawn exhibit, arguing that Dr. Wright forged a timestamp and that causes the entire Motion to fail. Opp. at 11.

---

[4] A copy of the Department of Corporations' Instructions for Articles of Organization (FL LLC) is attached as **Exhibit A**. The instructions expressly state: "[d]o not list members." *Id.* at 3 (also available at: https://dos.myflorida.com/sunbiz/start-business/efile/fl-llc/instructions/ (last accessed April 30, 2019)).

[5] *RG Martin*, 2017 WL 7792564, at *2 ("[T]he burden of pleading diversity of citizenship is upon the party invoking federal jurisdiction, and if jurisdiction is properly challenged, that party also bears the burden of proof."). Dr. Wright never had any burden to "disprove" jurisdiction that plaintiffs' never established.

*First*, the evidence does not show that Dr. Wright forged that exhibit. *See* Decl. of B. Roberson.[6] Dr. Wright withdrew the exhibit because he could not authenticate a "PGP" timestamp. *See* D.E. 154. *Second*, in bombastically proclaiming that this "entire motion falls" because of one withdrawn exhibit, plaintiffs failed to address the substantial evidence demonstrating that W&K has additional members that destroy diversity.[7] The withdrawn exhibit was hardly the only evidence of W&K's additional members, nor was that exhibit necessary to demonstrate that plaintiffs have failed to invoke this Court's subject-matter jurisdiction.

Finally, plaintiffs request—*for the first time in this case*—that the Court exercise supplemental jurisdiction under 28 U.S.C. § 1367(a). As demonstrated below, supplemental jurisdiction is not available, because the purported claim on which federal question jurisdiction was based was time-barred on its face, rendering the claim "insubstantial" as a matter of law.[8] Furthermore, Section 1367(c), and every factor set forth in *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966), foreclose the possibility of asserting supplemental jurisdiction over plaintiffs' state-law claims. Notably, despite arguing how "unfair" and "inconvenient" it will be to litigate in state court, plaintiffs fail to address the fact that plaintiff Ira Kleiman did just that, suing two of Dave's friends and former business partners (Patrick Paige and Carter Conrad)—in state court—for

---

[6] Mr. Roberson's Declaration is attached as **Exhibit B**. In it, Mr. Roberson explains that there are several reasons why a PGP timestamp may not match the date in an email's header. *Id.*

[7] As further demonstrated below, plaintiffs failed to address in any meaningful way the facts that: (1) Coin-Exch was a member of W&K at the time of the acts complained of; (2) Ira was a shareholder of Coin-Exch; (3) Coin-Exch has a government-appointed liquidator that never resigned Coin-Exch from membership in in W&K; (4) Ms. Uyen Nguyen submitted to the Department of Corporations a sworn statement that she is a "manager" or "manager member" of W&K; (5) Ms. Nguyen and Coin-Exch paid past and present dues for W&K's reinstatement; and (6) Ms. Nguyen and Coin-Exch held themselves out to the public as members of W&K.

[8] "If the federal claims [on which supplemental jurisdiction depends] are 'obviously frivolous' or 'so attenuated and unsubstantial as to be absolutely devoid of merit,' *Hagans v. Lavine,* 415 U.S. 528, 536–37 (1974) (internal quotation marks and citations omitted), a federal court lacks subject-matter jurisdiction over those claims and, consequently, any local law claims." *Decatur Liquors, Inc. v. D.C.*, 478 F.3d 360, 362-63 (D.C. Cir. 2007). Federal claims (like plaintiffs') that are time-barred on their face are insubstantial as a matter of law. *See*, *e.g.*, *Stigall v. Lexington Fayette Urban Cty. Gov't*, 2009 WL 2507895, at *2 (E.D. Ky. 2009) ("The obvious statute of limitations bar renders Stigall's Complaint patently insubstantial and therefore, subject to dismissal pursuant to Fed. R .Civ. P. 12(b)(1)."). Moreover, plaintiffs' facially time-barred federal claim was so insubstantial that it was "immaterial" and incapable of supporting federal question jurisdiction in the first place. *E.g., Marine Coatings of Ala. Inc. v. U.S.*, 792 F.2d 1565, 1567 (11th Cir. 1986) (citing *Bell v. Hood*, 327 U.S. 678, 681 (1946)).

the return of Dave's alleged bitcoins, which is precisely the same relief plaintiffs purport to seek here. *See* Mot. at 7.

As more fully demonstrated below, plaintiffs' Third Complaint should be dismissed for lack of subject-matter jurisdiction.

### 1. The Complaint Fails to Adequately Allege That the Court Has Diversity Jurisdiction

In the Third Complaint, plaintiffs admit that they do not know W&K's "ownership structure." Third Compl. ¶ 70 ("W&K has no operating agreement and ***its exact ownership structure is unclear*** due to Craig's contradictory statements.") (emphasis added). From there, plaintiffs allege that "***[a]s best as can presently be discerned***, Dave was the sole 'member' of W&K . . . ." *Id.* ¶ 71 (emphasis added). These allegations demonstrate that plaintiffs are guessing at W&K's membership, which is improper, and inadequate to demonstrate diversity jurisdiction. *See Newsom*, 2010 WL 415388, at *3 ("On the record before the Court it is impossible to ascertain Davenport's correct state citizenship for diversity purposes, an intolerable situation given that 'subject matter jurisdiction must be a matter of certainty and not of probabilities (however high)[.]'"). Moreover, the phrase "as best as can presently be discerned" is functionally equivalent to "upon information and belief," and district courts recognize that jurisdictional allegations "upon information and belief" are insufficient to allege citizenship or the membership of an LLC. *E.g.*, *Investissement Yves Auclair, Inc. v. MLM Experts, LLC*, 2018 WL 1832867, at *2 (M.D. Fla. 2018) ("allegations based upon information and belief are not a substitute for establishing jurisdictional facts.") (citing *White v. Impac Funding Corp.*, 2011 WL 836947, at *3 (M.D. Fla. 2011).[9]

After speculating about W&K's membership, the Third Complaint then made a diversity-destroying allegation. It alleged in the alternative that Dr. Wright is a member of W&K. Third Compl. ¶ 194 ("In the alternative, ***if Craig was an actual member in W&K Info Defense LLC***, Craig owed fiduciary duties of care, loyalty, and good faith to W&K, Dave, and his estate pursuant to Fla. Stat. § 605.04091.") (emphasis added). In other words, plaintiffs plan to establish, in the alternative, that Dr. Wright was both a member of W&K and the defendant, which destroys complete diversity.

---

[9] *Accord Pettit v. Spectrum Five LLC*, 2013 WL 12205086, at *1 (C.D. Cal. 2013) (holding that the alleging an LLC's membership "upon information and belief . . . is not sufficient for the Court to determine that it has subject-matter jurisdiction over this case."); *Fifth Third Bank v. Flatrock 3, LLC*, 2010 WL 2998305, at *3 (D.N.J. 2010) (holding that the phrase "upon information and belief," when used to allege an LLC's membership, "is insufficient to affirmatively establish diversity jurisdiction.").

Based on the plain language of the Third Complaint's allegations, this action should be dismissed for lack of subject-matter jurisdiction.

2. **The Evidence Demonstrates That Plaintiffs Have Failed to Allege W&K's Complete Membership**

   A. *Plaintiffs Have Failed to Present Evidence of W&K's Complete Membership*

The only evidence that plaintiffs present in support of their argument that "Dave was W&K's sole member" is W&K's articles of incorporation, which plaintiffs also cited in their Third Complaint (one paragraph before alleging that "W&K's exact ownership structure is unclear"). Third Compl. ¶ 69. Plaintiffs unintentionally got one thing right on this point—W&K's articles of incorporation do not evidence its complete membership.

***First***, under Fla. Stat. § 605.0201(2), an LLC's articles of incorporation (or organization) are not required to identify the LLC's members. *See Commerce & Indus. Ins. Co*, 2017 WL 10058585, at *1 ("Plaintiff correctly notes that it can be difficult to identify the members of a Florida LLC *because Florida law does not require LLCs to publicly disclose their members*.") (emphasis added) (citing Fla. Stat. § 605.0201). ***Second***, the Division of Corporations' published Instruction for Articles of Organization (FL LLC), **Ex**. **A** at 3, expressly instructs the registrant to "not list members" of the LLC. ***Third***, in a July 6, 2015 Department of Corporations' email to Ira, which has a subject line of "articles of incorporation," the Department told Ira that it "does not monitor the members of an LLC. *The names and addresses of the members of a Florida LLC are an internal matter*." *See* D.E. 144-8 (emphasis added). Plaintiffs addressed none of these dispositive points in arguing that W&K's articles of incorporation demonstrate W&K's complete membership.

Moreover, plaintiffs recently filed an exhibit with the Court which evidences that Dave Kleiman never was W&K's sole member. *See* D.E. 157-2. That exhibit is a February 16, 2011 email regarding W&K from Dave to Ms. Lynn Wright (Dr. Wright's ex-wife), which Dave sent the same day W&K was created. He attached W&K's articles of incorporation to the email, and asked Ms. Wright: "[d]o you think I can list you as a mgr or mgrm with a foreign address, or you think they would kick it back?"[10] *Id*. at 2. "Mgr" is the sunbiz.org abbreviation for "manager," and "mgrm" is

---

[10] Dr. Wright also received this email. However, Dave's question was directed to Lynn Wright (Dr. Wright's ex-wife) because Dr. Wright never had an interest in W&K. Plaintiffs allege that the "W" in W&K refers to "Dr. Wright," *see* Third Complaint ¶ 70, apparently unaware that the "W" could have referred to Lynn Wright (who also would destroy diversity as a W&K member). Plaintiffs' chronic cries of "perjury" are not only unsubstantiated and improper, but also irrelevant to this issues on this Motion, which they do nothing but obscure.

its abbreviation for "manager member."[11] If Dave was to be W&K's sole member, why would he have asked Lynn Wright if she wanted to be listed on W&K's articles of incorporation as a manager or managing member?

### B. *Plaintiffs Fail to Address the Substantial Evidence of W&K's Other Members*

Plaintiffs do not address in their Opposition, the substantial evidence of W&K's additional members, including:

(1) In W&K's 2015 Annual Report, Ms. Uyen Nguyen certified under oath that she was a "managing member" or "member" of W&K;[12]

(2) To reinstate W&K in 2014, Ms. Nguyen and Coin-Exch paid past due annual fees to Florida's Department of Corporations (*see* D.E. 1-7);[13]

(3) In response to *two* separate questions from the Australian Tax Office (the "ATO") (questions 8 and 10), *Ira told the ATO that Dave had appointed Ms. Nguyen as a director of W&K* (D.E. 144-7 at 2);

(4) In a March 28, 2016 email, Ira asked Dave's former partner, Patrick Paige, if he was "ever contacted *by the girl (Uyen) that took over David's position as director for W&K*?" (I. Kleiman's email to P. Paige, dated March 28, 2016, attached as **Exhibit C**) (emphasis added);

(5) Ira was a shareholder of Coin-Exch while it was a publicly-listed member of W&K (*see* D.E. 144-2 at 3), *and he never objected to Coin-Exch's membership in W&K*; and

(6) Ira never mentioned removing Coin-Exch or filing this lawsuit to the Australian government-appointed liquidator for Coin-Exch, even though he communicated with the liquidator (*see id*. at 4).

Because W&K's "exact ownership structure is unclear," Third Complaint ¶ 70, the above evidence is crucial in determining W&K's membership because "[t]he acts and conduct of the parties may constitute sufficient evidence of a person's status as a shareholder or member." *In re Williams*, 455 B.R. 485, 494-97 (Bankr. E.D. Va. 2011).[14] The "acts and conduct" of Ms. Nguyen

---

[11] https://efile.sunbiz.org/llc_ar_help.html (last accessed April 30, 0219).
[12] http://search.sunbiz.org/Inquiry/CorporationSearch/GetDocument?aggregateId=flal-l11000019904-dce79b55-176a-4442-93a7-3c8896316aa2&transactionId=l11000019904-6efb390f-c395-49c0-9044-b4fb681c0f8c&formatType=PDF (last accessed May 3, 2019).
[13] Under Fla. Stat. § 605.0715(1), Ms. Nguyen or Coin-Exch were required to "submit all fees and penalties then owed by the company at the rates provided by law at the time the company applies for reinstatement, together with an application for reinstatement" of W&K.
[14] Citing 18A Am. Jur. 2d *Corporations* § 738 (1985).

and Coin-Exch, as noted above, demonstrate that they were members of W&K. Specifically: (1) Ms. Nguyen signed documents on behalf of W&K; (2) she attested under oath that she was a manger or managing member of W&K; (3) she and Coin-Exch paid fees to Florida on behalf of W&K; (4) and they held themselves out to the public as members of W&K. *See id.* at 496 (finding that a person was a member of an LLC where that person signed documents on its behalf, paid its taxes and fees, and held himself out as its president).

**3.      The Court Should Reject Plaintiffs' Burden-Shifting Argument**

Plaintiffs argue that Dr. Wright "has submitted no evidence at all that Uyen [Nguyen] and Coin Exch were ever W&K members. Instead, his evidence—at best—demonstrates that Uyen and Coin Exch were directors, managers, and secretaries of W&K." Opp. at 4. This argument fails for a few reasons.

*First*, plaintiffs base this entire argument on a table of abbreviations [D.E. 159-3], which itself states that the listed abbreviations are "not comprehensive" and that "[o]ther abbreviations may be used that are not identified here." *Id*. at 2. In other words, under Florida's LLC law, Ms. Nguyen and Coin-Exch could have used whatever abbreviations they wanted, and those abbreviations could mean whatever they wanted them to mean.[15]

*Second*, the abbreviations that Ms. Nguyen and Coin-Exch used in W&K's sunbiz.org filings do not mean that they were *merely* officers of W&K. Again, Florida law does not require an LLC to publicly identify its membership. Therefore, even if they were officers of W&K, that would not (and does not) demonstrate that they are not members of W&K.

*Third*, plaintiffs bear the complete burden of establishing that complete diversity exists, and in doing so, must overcome the presumption that this Court does not have subject-matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.") (citations omitted); *RG Martin Inv.,* 2017 WL 7792564, at *1-2. Therefore, it is not Dr. Wright's burden to establish W&K's membership. Plaintiffs always have had that burden because they chose to file their action in federal court.

---

[15] For example, in a separate document—the Department of Corporation's Limited Liability Company Annual Report Help—the department provides that "MGR" can mean manager and adding an "M" can mean managing member. *See* https://efile.sunbiz.org/llc_ar_help.html (last accessed April 30, 2019).

8

**4.    The Court Does Not Have Supplemental Jurisdiction Over Plaintiffs' State-Law Claims**

Finally, plaintiffs belatedly assert a basis for subject-matter jurisdiction that they never alleged or sought to invoke, arguing that the Court has supplemental jurisdiction over their state-law claims under 28 U.S.C. § 1367(a). A district court only may exercise supplemental jurisdiction over state-law claims "that arise out of a '*common nucleus of operative fact* with a *substantial federal claim*.'" *Mercado v. Cong. Auto Parts Co.*, 2018 WL 3353059, at *2 (S.D. Fla. 2018) (Bloom, J.) (severing and remanding state-law claims that did not arise out of a common nucleus of operative facts with the federal claim, where a removing defendant *actually had invoked* supplemental jurisdiction) (emphasis added) (citing *Lucero v. Trosch*, 121 F.3d 591 (11th Cir. 1997)).

Supplemental jurisdiction cannot exist for a number of reasons. First, plaintiffs' state-law claims and their dismissed federal claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA") do not arise out of a common nucleus of operative fact. Second, their DTSA claim was not only (a) "insubstantial" under *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. § 1367, which made it incapable of supporting supplemental jurisdiction, but also (b) "immaterial" under 28 U.S.C. § 1331, which made it incapable of invoking federal question jurisdiction in the first place.

### A.    *The DTSA Claim and the Remaining State-Law Claims do not Arise from a Common Nucleus of Operative Fact*

"In deciding whether a state law claim is part of the same case or controversy as a federal issue, [courts] look to whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence." *Mercado*, 2018 WL 3353059, at *2 (citing *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455 (11th Cir. 1996)).[16] The DTSA claim, and its state-law counterpart under Florida's Uniform Trade Secret Act, Fla. Stat. § 688.04 ("FUTSA"),[17] alleged a misappropriation of purported trade secrets. The DTSA and FUTSA claim were nearly identically alleged, and both were time-barred on their face, as the Court held in dismissing them with prejudice. *Kleiman v. Wright*, 2018 WL 6812914, at *14 (S.D. Fla. 2018) ("The Court has carefully reviewed the Amended Complaint, and finds that the Plaintiffs' misappropriation claims are barred by the three-

---

[16] *Moura v. Culinary Advisors, Inc.*, 2014 WL 979104, at *1 (S.D. Fla. 2014) (citing *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1563-64 (11th Cir.1994) (common nucleus standard was met where federal and state claims involved same witnesses, presentation of same evidence, and determination of same facts)).

[17] Plaintiffs' FUTSA and DTSA claims are nearly identically pleaded. Second Compl. ¶¶ 178-191.

year statute of limitations based on the facts as alleged on the face of the Amended Complaint."). In sharp and dispositive contrast, plaintiffs' eight remaining state-law claims all allege a "theft" of bitcoin and intellectual property.

Plaintiffs merely state, with no support or analysis, that "[t]he state claims are all closely related to the federal claim and are part of the same 'case or controversy,' arising from the same 'common nucleus of operative fact.'" Opp. at 11 (citing *Gibbs*, 383 U.S. at 725). This *ipse dixit* is insufficient to invoke supplemental jurisdiction. *E.g., Anderson v. Branch Banking & Tr. Co.*, 119 F. Supp. 3d 1328, 1345 (S.D. Fla. 2015) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. [The Court] will not do his research for him.") (citing *Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) (Posner, J.)).

Moreover, it is hard to imagine how claims for "theft" of bitcoin could arise "out of a common nucleus of operative fact" with a claim for misappropriation of trade secrets. Bitcoin, like money, is not a trade secret. If plaintiffs are now arguing that their unidentified intellectual property also is, or is based on, the purported trade secret alleged in the FUTSA and DTSA claims, plaintiffs' entire action has to be dismissed *with prejudice*. Under Fla. Stat. § 688.08, all state-law claims based on misappropriation of trade secrets are displaced or preempted by FUTSA. *See Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329, 1335 (S.D. Fla. 2002) (Fla. Stat. § 688.08 "displace[s] conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.").

Thus, if the Court were to conclude that plaintiffs' purported trade secret and misappropriation claims arise out of a "common nucleus of operative facts," dismissal of this action altogether would be required, because the "*common nucleus of operative facts*" standard also controls the question whether plaintiffs' common-law claims are displaced or preempted by the FUTSA claim, a claim this Court already *dismissed with prejudice*. *See Deerpoint Grp., Inc. v. Agrigenix, LLC*, 345 F. Supp. 3d 1207, 1238 (E.D. Cal. 2018) (interpreting California's uniform trade secret act, which is identical to Florida's, and stating that the act "will not preempt non-trade secret related civil claims if the civil claims do not share *a common nucleus of operative facts* with the CUTSA misappropriation claim") (emphasis added); *Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329, 1335 (S.D. Fla. 2002) (applying Fla. Stat. § 688.08 and dismissing state-law unfair competition claim because plaintiff "has not identified any *material distinction* between the

wrongdoing alleged in the trade secret claim and that alleged in the unfair competition claim.") (emphasis added).

Thus, even if plaintiffs had alleged and argued supplemental jurisdiction prior to opposing this Motion, the Court cannot exercise supplemental jurisdiction, either because plaintiffs' common-law claims do not arise from a common nucleus of operative facts with their DTSA and FUTSA claims, or they do, in which case they were displaced and preempted by the FUTSA claim. Either conclusion requires dismissal, and the latter conclusion requires dismissal with prejudice.

### B. The DTSA Claim was an Insubstantial Federal Claim that Could Not Support Federal Question Jurisdiction in the First Place

The record demonstrates that plaintiffs only alleged the DTSA claim when they faced a problem with diversity jurisdiction from the required joinder of W&K. The DTSA claim was time-barred on its face, as the Court recognized in dismissing it with prejudice. On this record, the DTSA claim was insubstantial, "immaterial and made solely for the purpose of jurisdiction[,]" which never could support federal-question jurisdiction in the first place. *See Marine Coatings of Ala. Inc. v. U.S.*, 792 F.2d 1565, 1567 (11th Cir. 1986) (citing *Bell v. Hood*, 327 U.S. 678, 681 (1946)). "If the federal claims [on which supplemental jurisdiction depends] are 'obviously frivolous' or 'so attenuated and unsubstantial as to be absolutely devoid of merit,' *Hagans v. Lavine,* 415 U.S. 528, 536–37 (1974) (internal quotation marks and citations omitted), a federal court lacks subject-matter jurisdiction over those claims and, consequently, any local law claims." *Decatur Liquors, Inc. v. District of Columbia*, 478 F.3d 360, 362-63 (D.C. Cir. 2007).

Plaintiffs' original complaint had alleged only state-law claims. D.E. 1. It was not until Dr. Wright argued in his motion to dismiss that this action cannot proceed without W&K, that plaintiff Ira Kleiman reinstated W&K and joined it as a plaintiff. Aware of a problem with diversity jurisdiction because of W&K's membership, plaintiffs then asserted the DTSA claim, even though it was time-barred on its face. *See Kleiman*, 2018 WL 6812914, at *14. This is an inverted form of artful pleading, where a bogus federal claim is alleged solely to manufacture federal-question jurisdiction. *See Marine Coatings of Ala. Inc.*, 792 F.2d at 1567.

Moreover, even if the DTSA claim had not been "immaterial and made solely for the purpose of jurisdiction," it is clear from the body of the Third Complaint, and its previous incarnations, that the DTSA claim was not a "substantial" federal claim. It was merely one of plaintiffs' ten counts, in a case where plaintiffs already had asserted a state-law misappropriation claim (FUTSA) alleging the same facts and requesting the same relief as the DTSA claim.

Moreover, plaintiffs have described their case as one that is based on the sate-law claims for "theft" of bitcoin and intellectual property. *See*, *e.g*., D.E. 145 (plaintiffs describing their case as one "where [they] have alleged a complex theft and fraud of intellectual property and bitcoin . . . .") Therefore, because plaintiffs' state-law claims "constitute[] the real body of a case, to which the federal claim is only an appendage, *the state claim may fairly be dismissed*." *Gibbs*, 383 U.S. at 727 (emphasis added).

> C. **Even if the Court Were to Determine That It Could Exercise Supplemental Jurisdiction, Section 1367(c) and the <u>Gibbs</u> Factors Would Weigh in Favor of Declining Supplemental Jurisdiction**

Even if the Court were to find that it could exercise supplemental jurisdiction over plaintiffs' state-law claims, every basis in Section 1367(c) and every factor under *Gibbs* would weigh against it, and in favor of dismissal.

> *(1)   Section 1367(c)'s Factors Permit the Court to Decline Supplemental Jurisdiction*

Under Section 1367(c), even where the dismissed federal claim (1) was not insubstantial and immaterial, and (2) it arose out of a common nucleus of operative fact with the remaining state-law claims, a district court may decline to exercise supplemental jurisdiction in the following situations:

> (1) the [state-law] claim raises a novel or complex issue of State law,
> (2) the[state-law] claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

All four factors exist here, which would warrant dismissal, even if this question had to be reached.

(1)    **Novel or complex issues of state law**: Plaintiffs' state-law claims are novel and complex because, even though they are ordinary state-law claims, they involve the treatment of bitcoin and cryptocurrency. For example, under Florida law, a claim for conversion of money requires that "there must be an obligation to keep intact or deliver the specific money in question, so that money can be identified." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1056 (Fla. 3d DCA 2008). Whether this rule applies to bitcoin or cryptocurrency is a novel issue that Florida's state courts have not had the opportunity to address. Moreover, plaintiffs themselves call their state-law claims complex. D.E. 145 ("This is a ***complex*** multibillion-dollar case involving international

12

witnesses and documents . . . where Plaintiffs have alleged a complex theft and fraud of intellectual property and bitcoin—a digital asset which, by design, is difficult to trace.") (emphasis added). On these facts, the exercise of supplemental jurisdiction—despite it being based on an immaterial, insubstantial federal claim—would be an abuse of discretion because of the novel issues presented by the state-law claims. *See Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 536 (11th Cir. 2015) (district court abused its discretion in exercising supplemental jurisdiction over complex and novel state-law claims).

(2) **The state-law claims substantially predominate over the dismissed DTSA claim**: For the reasons stated above, the DTSA claim *never* was a substantial claim, and plaintiffs' remaining state-law claims overwhelmingly predominate over the DTSA claim.

(3) **The Court dismissed the only federal claim**: The Court dismissed plaintiffs' sole federal claim, with prejudice, at the first opportunity, on a motion to dismiss, because it was time-barred on its face.

(4) **There are other compelling reasons for declining jurisdiction**: In their Opposition, plaintiffs fail to advise the Court, or even address the fact that up until April 29, 2019—*the day after they filed their Opposition*—plaintiffs were seeking identical relief—an injunction for the return of Dave's alleged bitcoins—in Florida state court, against two of Dave's close friends and former partners, Patrick Paige and Carter Conrad. *See* Mot. at 7 (citing *Ira Kleiman v. Patrick Paige, et al.*, Palm Beach County Circuit Court Case No. 50-2016-CA-013045). Plaintiffs never disclosed this related, similar case to the Court, despite Local Rule 3.8's requirements, and also failed to disclose it to Dr. Wright in response to his interrogatories.

*(2) The Gibbs Factors Weigh in Favor of Dismissal*

If the Court were to reach this issue despite the immateriality and insubstantiality of plaintiffs' time-barred DTSA claim, *and* were to find that any of the four Section 1367(c) situations applicable, then the *Gibbs* factors—judicial economy, convenience, fairness, and comity—"may influence the court's discretion to exercise supplemental jurisdiction." *Ameritox, Ltd.*, 803 F.3d at 537. Both the Supreme Court and Eleventh Circuit have stated that where a federal claim has been dismissed *before* trial, the *Gibbs* factors favor *declining* supplemental jurisdiction:

> [I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—*will point toward declining to exercise jurisdiction over the remaining state-law claims*.

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (emphasis added); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.") (citing *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984). Despite Circuit precedent that strongly favors dismissal of this case because of the early dismissal (at the first opportunity) of plaintiffs' frivolous DTSA claim, each *Gibbs* factors also would weigh in favor of dismissal:

**Judicial economy:** Plaintiffs argue in their Opposition that an "extensive expenditure of judicial and party resources" has been made on this case. Opp. at 11. It's hard to reconcile that statement with plaintiffs' argument two weeks ago that the case was still in a nascent stage of discovery and a discovery extension and continuation of trial were needed. *See generally* D.E. 145. The reality is that there is much more work to be done than has been done in this case, and it would promote judicial economy if that work were done in a court that actually has jurisdiction.[18] Further, and as noted above, this case involves novel and complex issues, and "judicial economy and fairness to the parties are not served if the Court makes several essentially first-impression decisions about novel and complex state-law issues." *Hellwege v. Tampa Family Health Centers*, 103 F. Supp. 3d 1303, 1314 (M.D. Fla. 2015) (collecting cases).

**Convenience:** Plaintiffs argue that convenience weighs in favor of supplemental jurisdiction on the theory that "this federal court is more convenient to all parties and witnesses than the Palm Beach County state court[,]" and that counsel for both parties "are in Miami, and the Miami International Airport has many more flights than its Palm Beach counterpart." Opp. at 13. We have no idea how a federal court is more convenient than a state court in the same city, or what Miami International Airport has to do with the relative convenience of two courts in Palm Beach. But we submit that it will be more convenient to try this case in state court, which actually has subject-matter jurisdiction.

**Fairness**: Plaintiffs argue that they are "entitled to a prompt day in court," Opp. at 14, even though they moved for a continuance of the trial date. D.E. 145. Plaintiffs also argue that if this case

---

[18] Moreover, the parties' document production is still ongoing, we have yet to take a single deposition on the merits, and when Dr. Wright tried to schedule depositions in May, plaintiffs said that those depositions were "early." Plaintiff have yet to file any motions for letters rogatory, even though they've been saying they would do so for the past four months. There will be substantial briefing on dispositive and trial motions. There may still be a need for a trial.

14

is dismissed, Dr. Wright will "certainly try to argue that all of Plaintiffs' claims are time barred." *Id*. Congress addressed this argument, rendering it moot, by enacting Section 1367(d).

**Comity:** Again, this case involves novel and complex issues of Florida law. As *Gibbs* instructs: "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id*. at 726. The Court also should reject plaintiffs' request that their novel state-law claims be adjudicated in a federal district court, because, as the Eleventh Circuit has stated, doing so creates constitutional concerns:

> And because the Constitution unambiguously confers this jurisdictional power to the sound discretion of Congress, federal courts 'should proceed with caution in construing constitutional and statutory provisions dealing with [their] jurisdiction.'
>
> Accordingly, '[w]hen a federal court acts outside its statutory subject-matter jurisdiction, it violates the fundamental constitutional precept of limited federal power.' Indeed, such an action unconstitutionally invades the powers reserved to the states to determine controversies in their own courts, as well as 'offends fundamental principles of separation of powers[.]'

*Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409-10 (11th Cir. 1999) (citations omitted).

## **CONCLUSION**

Plaintiffs never properly invoked this Court's original jurisdiction. The Court should deny Plaintiffs' request that the Court exercise supplemental jurisdiction because (1) plaintiffs' time-barred federal claim was "immaterial" and "insubstantial," and (2) the federal claim and the state-law claims do not arise from a common nucleus of operative facts. Finally, even if the Court were to find that it can exercise supplemental jurisdiction, it should decline to do so because 28 U.S.C. § 1367(c), and the factors set out in *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966), all "point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

                              Respectfully submitted,

RIVERO MESTRE LLP
*Attorneys for Dr. Craig Wright*
2525 Ponce de Leon Boulevard, Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: jmestre@riveromestre.com
Email: arolnick@riveromestre.com
Email: receptionist@riveromestre.com

By: s/ Andres Rivero
ANDRES RIVERO
Florida Bar No. 613819
ALAN H. ROLNICK
Florida Bar No. 715085
AMANDA MCGOVERN
Florida Bar No. 964263
BRYAN L. PASCHAL
Florida Bar No. 091576

## **CERTIFICATE OF SERVICE**

I certify that on May 6, 2019, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record either by transmission of Notices of Electronic Filing generated by CM/ECF or by U.S. Mail.

                              /s/Andres Rivero
                                  ANDRES RIVERO