Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

---

IRA KLEIMAN, as the personal ) CASE NO:
representative of the Estate ) 9:18-cv-80176-BB/BR
of David Kleiman, and W&K Info )
Defense Research, LLC )
)
      Plaintiffs, )
)
v. )
)
)
CRAIG WRIGHT )
)
      Defendant. )
)
)

---

Videotape Deposition of
CRAIG STEVEN WRIGHT

On Thursday, 4th April 2019

Taken at the offices of:

Boies Schiller Flexner LLP
5 New Street Square,
London EC4A 3BF

Reported by:  Paula Foley



```
 1              A P P E A R A N C E S
 2   On behalf of the Plaintiffs:
 3          VELVEL (DEVIN) FREEDMAN, ESQ.
            Boies Schiller Flexner LLP
 4          100 SE Second Street, Suite 2800,
            Miami, Florida 33131
 5
            KYLE W. ROCHE, ESQ.
 6          Admitted Pro Hac Vice
            Boies Schiller Flexner LLP
 7          333 Main Street
            Armonk, NY 10504
 8
 9   On behalf of the Defendant:
10          ANDRÉS RIVERO
            ZAHARAH R. MARKOE
11          Rivero Mestre LLP
            2525 Ponce de Leon Blvd.
12          Ste. 1000 Miami,
            FL 331134
13
14
     Court Reporter:
15
            PAULA FOLEY
16          Magna Legal Services
            1635 Market Street,
17          Philadelphia,
            PA 19103
18          United States
19
     Also Present:
20
            PHILIP HILL (Videographer, Magna Legal
21          Services)
22          ANDREW S. BRENNER, ESQ (Boies Schiller
            Flexner LLP) for the Plaintiff By Telephone
23
            JOHN MCADAMS, ESQ (Boies Schiller Flexner
24          LLP) By Telephone
25          IRA KLEIMAN (Plaintiff) By Telephone
```



Page 3

```
 1                         I N D E X
 2
     Deponent                                      Page
 3
     DR. CRAIG STEVEN WRIGHT
 4
     Questions by MR. FREEDMAN                     5 - 385
 5
 6
 7                    - - - - - - - - - -
 8
 9       Exhibits marked during this deposition
10           Exhibit                               Page
11              1                                    78
                2                                   126
12              3                                   189
                4                                   227
13              5                                   239
                6                                   259
14              7                                   296
                8                                   314
15              9                                   333
               10                                   347
16
17
18
19
20
21
22
23
24
25
```



Page 16

1  MR. FREEDMAN:  Okay.  Are you going to
2  instruct him not to answer any question about his first
3  wife?
4  MR. RIVERO:  Mr. Freedman, you have the
5  right to ask questions.  Ask the questions.  You are
6  wasting your own time.  If you want to take up that
7  question with the court I am ready to call now if you
8  want to find the judge.  When did he meet his first
9  wife?  Please, move on.
10  MR. FREEDMAN:  We will deal with it in
11  the court.
12  MR. RIVERO:  Please move on.  Next
13  question.
14  BY MR. FREEDMAN:
15      Q.   When did you get married to
16  Ms. Lynne Black?
17      A.   In the '90s.  I have an oath, as part of
18  my divorce settlement, that I will not discuss anything
19  about my wife or my former marriage.  I will not break
20  that.  Thank you.
21      Q.   When did you get divorced?
22      A.   I have an oath with my wife that I am
23  divorced from that I will not discuss anything about her
24  or my former marriage that is part of our settlement.
25  Thank you.



```
                                                         Page 17
 1          Q.    Including the date of the divorce?
 2          A.    I have an oath with my former wife that
 3    I will not discuss anything about her or my former
 4    marriage.  I will not break that.
 5          Q.    Have you stayed in touch with your
 6    ex-wife after the date of the divorce?
 7                MS. MARKOE:  Objection.
 8                THE WITNESS:  I have an oath with my
 9    former wife that I will not discuss anything about her
10    in any way or my marriage, and I will not break an oath.
11    BY MR. FREEDMAN:
12          Q.    So we do not have to go through every
13    single question.  Are you refusing to answer any
14    questions about Ms. Lynne Black?
15          A.    I am not refusing to answer questions.
16    I have an oath that has been filed within a court in
17    Australia.  I will not breach oath and perjure myself or
18    break oath.  You are asking me to break oath, and unless
19    instructed by a judge, etcetera, etcetera, I will not do
20    that.
21          Q.    What is the name of your second wife?
22          A.    My second wife is called Ramona.
23          Q.    When did you meet Ramona Wright?
24                MS. MARKOE:  Objection.
25    BY MR. FREEDMAN:
```



```
1         Q.    What is her last name?
2         A.    Watts.
3         Q.    Was it always Watts?
4         A.    No.
5         Q.    What was it before it was Watts?
6         A.    It was Ang.
7         Q.    Can you spell that, please?
8         A.    A-N-G.
9         Q.    When did it change to Watts?
10              MS. MARKOE:  Objection.
11              THE WITNESS:  I am not answering
12   questions about my wife.  My wife is privileged in the
13   UK.  My marriage is privileged.  You should know that,
14   as a lawyer.  Are you seeking to have me breach marital
15   privilege?
16   BY MR. FREEDMAN:
17        Q.    Dr. Wright, it will not be productive for
18   us to have a conversation about whether or not the time
19   of when your wife's name changed from Ang to Watts is
20   covered by spells of privilege, but ----
21        A.    I do not discuss my family, full stop.
22        Q.    Dr. Wright, you understand that you are
23   being sued in this case?
24        A.    I understand perfectly well that a con
25   man in America has made up a fraudulent claim, yes.
```



```
                                                    Page 19
 1           Q.    And you understand that you tried to
 2   dismiss this case?
 3                MS. MARKOE:  Objection.  Sir, Vel, we
 4   have a lit of topics.  These were approved by the court.
 5   This is not part of your list of topics.
 6                MR. FREEDMAN:  It certainly is,
 7   Ms. Markoe.
 8                MS. MARKOE:  Explain to me in what way.
 9                MR. FREEDMAN:  Because the list of topics
10   approved by the court approved the inquiry into
11   witnesses and Ms. Ramona Watts is heavily and was
12   heavily involved with Dr. Wright's businesses.
13                MS. MARKOE:  That topic says:
14   "Identification of witnesses, including information
15   about their whereabouts and roles in the subject matter
16   of the pleadings".  Your questions do not go ----
17                MR. FREEDMAN:  Sure they do.
18                MS. MARKOE:  ---- to those issues.  Your
19   questions do not go to those issues.  Ask questions that
20   go to those issues and he will answer the questions that
21   go to those issues to the extent that they are not part
22   of a privilege.  Continue.
23                MR. FREEDMAN:  We are trying to determine
24   at what point she entered into this circle of companies
25   and this helps us determine that.
```



1    further, Mr. Freedman?
2                    MR. FREEDMAN:  No, your Honour.
3                    THE JUDGE:  Thank you.  Let me rule.  As
4    to the first area, which is enquiring of Dr. Wright
5    under oath how much Bitcoin he mined in 2009/2010,
6    I will defer that.  I will not require him to answer
7    that question today because I believe if I determine
8    that as a proper subject matter area, that can be
9    responded to through a targeted interrogatory and if
10   I determine that it is relevant, I would require him to
11   respond to that interrogatory under oath as if he were
12   asked the question live.  Since that is simply a fairly
13   straightforward question of how much Bitcoin that should
14   not be too burdensome to respond to, but I will deal
15   with that in the context of any motion and I will grant
16   leave for the defence to file a motion relating to
17   providing a list of the Bitcoin, because again obviously
18   if I order him to provide the list you are going to get
19   a lot more detail than just the final number.  So, as to
20   that issue, I will not require him to answer those
21   questions today.
22                   As to the area of questioning about
23   whether he told Dave Kleiman how much he mined, I will
24   direct him to answer those questions.  I believe that
25   is not unduly burdensome.  I believe it is relevant to



1    the plaintiff's theory that there was a partnership
2    here, and his answers are what they are.  If he told
3    Mr. Kleiman what he was doing he should answer that and
4    if he did not he can answer that.
5                 As to the issues relating to the ex-wife,
6    Lynne Wright, I will allow the defence to file a
7    briefing as to whether, as a matter of law, I am
8    precluded from compelling this testimony.  I will not
9    opine as to whether -- I would probably be inclined to
10   compel the testimony if the law allows me to do so, but
11   I cannot claim to be an expert on Australian law or the
12   interactions between US law and Australian law on this
13   issue.  Given that I have already said that Dr. Wright
14   can be deposed a second time, I will defer that issue
15   and allow the defence time to file any motion they want
16   to file on that.
17                My ruling will be the same as to the
18   questions relating to any communications or testimony
19   relating to his current wife.  Again I will allow the
20   defence to flush out any privilege arguments they want
21   to make.  I will allow the plaintiffs to respond only to
22   any privilege arguments as to either the current or past
23   wife and I will rule on that at a later time.
24                I think I have now dealt with the four
25   areas that were raised.

