# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC<br><br>    *Plaintiffs,*<br><br>v.<br><br>CRAIG WRIGHT<br><br>    *Defendant.* | CASE NO.: 9:18-cv-80176-BB |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION REGARDING PRODUCTION OF A LIST OF THE PUBLIC ADDRESSES OF HIS BITCOINAS OF DECEMBER 31, 2013
## FILED UNDER SEAL

Craig has twice defaulted on this Court's order to identify all bitcoins he owned as of December 31, 2013 or move for a protective order on burden grounds. The first time, he simply ignored the Court's deadline to produce or object in advance of his deposition (which prevented Plaintiffs from asking relevant questions at his deposition). This time, he's filed a "motion" that's woefully insufficient as a matter of law and that raises more questions than it answers. For the reasons below, Craig should be compelled to provide a list of the bitcoin he owned as of December 31, 2013. If, as Craig claims, he "transferred ownership of all his Bitcoin into a blind trust" in 2011 (Mot. at 2), then he must provide a list of all bitcoin allegedly transferred. Moreover, Craig's dubious assertion that he made this transfer contradicts evidence he produced in this litigation. Accordingly, additional discovery is necessary to determine the details of the alleged transfer and trust, which Plaintiff was thwarted from pursuing at Craig's initial deposition by his failure to comply with the Court's pre-deposition disclosure Order.

1

I. **Craig's motion is insufficient to show undue burden as a matter of law,**

Craig's motion falls woefully short of demonstrating undue burden. "Courts in the Eleventh Circuit have made clear that to demonstrate an undue burden, the moving party must put forth either affidavits or other evidence that reveals the nature of the burden." *TIC Park Ctr. 9, LLC v. Cabot*, No. 16-24569, 2017 WL 3099317, at *2 n. 1 (S.D. Fla. April 12, 2017) (Torres J.). Said differently, "courts should only limit discovery based on *evidence* of the burden involved, not on a mere recitation that the discovery request is unduly burdensome." *Trinos v. Quality Staffing Servs. Corp.*, 250 F.R.D. 696, 698 (S.D. Fla. 2008) (emphasis in original) (quotation omitted) (Hopkins J.). In this District, it's universally accepted that "conclusory" statements of burden are wholly insufficient. *Century Commc'ns of Fla., Inc. v. Bright House Networks, LLC*, No. 09-81108, 2010 WL 11597661, at *2 (S.D. Fla. Aug. 2, 2010) (Seltzer J.) (denying motion for protective order because "[m]ovant's assertion that the review of their respective past records . . . caused an undue burden is merely conclusory.").[1]

---

[1] S*ee also Rosen v. J.M. Auto, Inc.*, No. 07-61234-CIV, 2008 WL 11332060, at *3 (S.D. Fla. Dec. 30, 2008) (Rosenbaum J.) ("Although Plaintiffs object to this request as being unduly burdensome, they have made no showing that gathering the documents would, in fact, be unduly burdensome. Indeed, Plaintiffs have not presented the Court with affidavits or any other concrete evidence that the request would present an undue burden."); *Sallah v. Worldwide Clearing LLC*, 855 F. Supp. 2d 1364, 1376 (S.D. Fla. 2012) (Rosenbaum J.) ("[C]laims of undue burden should be supported by statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome."); *Boldstar Tech., LLC v. Home Depot, U.S.A. Inc.*, No. 07-80435-Civ, 2008 WL 11320007, at *7 (S.D. Fla. June 5, 2008) (Hopkins J.) ("[B]ecause [defendant] has failed to submit any affidavits, its claim of undue burden fails."); *Goodman-Gable-Gould Co., Inc. v. Tiara Condo. Ass'n, Inc.*, No. 06-80441, 2007 WL 9701950, at *3 (S.D. Fla. Apr. 6, 2007) (Hopkins J.) ("[Movant] has failed to offer any affidavits or other evidence in support of its argument that the subpoena imposes an undue burden and expense. Accordingly, this Court overrules [Movant's] objection to the subpoena in that regard."); *Century Commc'ns*, 2010 WL 11597661, at * (denying motion for protective order because the movants "failed to proffer any detailed explanation (by affidavit or otherwise) demonstrating that complying with the subpoenas imposed an undue burden").

2

The only support Craig offers for his undue burden argument is the unsworn statements from his counsel that Craig – in a case involving the theft of billions of dollars – should not have to identify his bitcoin holdings because he simply "did not keep track of which Bitcoin blocks he mined" so he "does not have a complete list of the public addresses that he owned as of any date." (Mot. at 1.) This unsupported statement falls woefully short of showing undue burden as a matter of law. *See Century Commc'ns supra.*

Craig's claim is unsupported by *any* affidavit or evidence. He does not claim to have undertaken *any effort* to identify the Bitcoin he owned as of 2013 or 2011.[2] Nor does he proffer *any* explanation demonstrating how or why such an undertaking would be unduly burdensome. Instead, Craig barely identified ▮% of the bitcoins at issue in this dispute and essentially disregarded the Court's order compelling him to produce a list of his bitcoin holdings.[3]

To be sure, records identifying these bitcoins *must* exist. Craig's assertion that Bitcoin public addresses "are not intended to be memorized" only demonstrates the fact that this information was *memorialized* somewhere other than Craig's memory. Furthermore, while Craig claims he transferred all his bitcoins into a blind trust, the bitcoins have not moved across the public bitcoin ledger. This means the only way he could have transferred control of these assets

---

[2] To be sure, records identifying these bitcoins *must* exist. Craig's assertion that Bitcoin public addresses "are not intended to be memorized" only demonstrates the fact that this information was *memorialized* somewhere other than Craig's memory. Furthermore, while Craig claims he transferred all his bitcoins into a blind trust, the bitcoins have not moved across the public bitcoin ledger. This means the only way he could have transferred control of these assets would have been to memorialize the private keys to his bitcoin and provide a copy of those keys to the "trustee."

[3] Plaintiffs have alleged Craig and Dave Kleiman jointly mined approximately 1,100,111 bitcoins (ECF No. [83], ¶ 79) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3

would have been to memorialize the private keys to his bitcoin and provide a copy of those keys to the "trustee."

Craig has failed to demonstrate undue burden, and the Court should compel him to comply with this Court's prior Order to identify the bitcoin he owed as of December 31, 2013, or the bitcoins he owned that were allegedly transferred to this "blind trust" in 2011.

### II. Craig's claim is contradicted by the evidence.

Yesterday, Plaintiffs filed a brief demonstrating unequivocally that Craig submitted **a document he forged** in support of a motion for judgment on the pleadings. (ECF No. [159]). Frankly, after he's sworn falsely in every attempt to dismiss this action to date (*id.* at 1-2), it's sadly not surprising to find out that, once again, his statements to this Court are untrue.[4]

Craig's assertion that all of his bitcoins were transferred to a blind trust in 2011 is directly contradicted by Craig's pre-litigation statements. For example, in a May 3, 2017 e-mail to ▇▇, Craig indicated t▇▇ ▇▇ ▇▇ (Ex. 1.) Furthermore, on October 9, 2013 Craig e-mailed ▇▇ ▇▇ ▇▇ (Ex. 2 (emphasis added).) While these e-mails shed light on multiple important issues in this case, for purposes of this motion, they serve to demonstrate Craig had control over bitcoins in late 2013. Additionally, in 2016, Craig signed multiple messages with the

---

[4] What is surprising, however, is that Craig's counsel is still willing to make direct representations to the Court based on information Craig has provided. (3/26/19 Hrg. Trs. 70:9-11) ("I have been in practice for 30 years. I have learned the lesson sometimes you can rely on your client and sometimes you can't."); *see also Bernal v. All American Investment Realty, Inc.,* 479 F. Supp. 2d 1291 (S.D. Fla. 2007).

4

private key to block 9, demonstrating he still does have control over some of these public addresses [ECF No. 83-1, at 80-81]. Craig doubled down on his retaining control over these bitcoins in a 2016 interview with GQ where Craig stated:

> I'm not going to sign every [expletive] key I own in the world. I've got the first [expletive] nine keys, I've got the [expletive] genesis [expletive] block. I've got the [expletive] code, I've got the [expletive] papers. I'm not going to go through [expletive] everything.[5]

It is impossible to square Craig's claims of control over certain Bitcoin in 2013, 2016, and 2017 with his claim that he owns nothing and transferred ownership of all of his Bitcoin to a "blind trust" in 2011. Thus, as demonstrated above, Craig's motion presents more questions than answers. His new claims require Plaintiffs to undertake additional discovery to determine the details of the alleged transfer of ownership of Craig's bitcoin to a trust.

## III.    Relief Requested

In light of the fact that Craig has, again, wholly failed to meet his burden, and that fact that his prior failures successfully prevented Plaintiffs from using Craig's deposition time effectively, Plaintiffs request that Craig's motion for protective order be denied and the Court order the following relief:

1. Craig be ordered to identify all bitcoins he owned as of December 31, 2013.

2. Craig be ordered to conduct a robust search of all his records, contact all his prior professionals (including his attorneys, accountants, and financial managers), contact the trustee of the blind trust, and provide a complete response, under oath, listing all the bitcoins he transferred to the blind trust in 2011, no later than May 15, 2019.

3. Craig be ordered to provide a full copy of the 2011 blind trust document/deed to Plaintiffs by May 8, 2019.

4. Craig be ordered to provide, under oath, (i) the identity and current contact information for every trustee (past and present) of the blind trust; (ii) the identify and current contact information for every beneficiary (past and present) of the blind trust; (iii) a detailed

---

[5] Available at https://www.youtube.com/watch?v=7YUTq7_vO3A.

5

account of the mechanics of how the trustee came to control all of Craig's bitcoin in 2011, no later than May 10, 2019.[6]

5. After the disclosure provided in ¶¶1-4 above, Plaintiffs be afforded an opportunity to depose Craig for an additional two hours on questions related to the bitcoins he allegedly mined before 2013, their transfer to, and control by, a "blind trust," Dave's part in this mining and transfer, and Craig's later inconsistent claims of control/ownership over bitcoins.

Dated: April 29, 2019

Respectfully submitted,

*s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman, Esq.
Florida Bar No. 99762
BOIES SCHILLER FLEXNER LLP
100 SE Second Street, Suite 2800
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307
vfreedman@bsfllp.com

Kyle W. Roche, Esq.
*Admitted Pro Hac Vice*
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300
kroche@bsfllp.com

*Counsel to Plaintiff Ira Kleiman as Personal Representative of the Estate of David Kleiman and W&K Info Defense Research, LLC.*

---

[6] As mentioned above, the bitcoins have never moved across the public blockchain, so there must have been a physical or digital handoff of the private keys which control the bitcoin assets. *See supra* n2.

6

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 29, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via email.

*s/ Velvel (Devin) Freedman*
VELVEL (DEVIN) FREEDMAN
