```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                     WEST PALM BEACH DIVISION
                 CASE NO.  18-cv-81076-BLOOM/Reinhart
 3

 4      IRA KLEIMAN, et al.,

 5                     Plaintiffs,

 6           vs.

 7                                         West Palm Beach, Florida
                                           May 6, 2019
 8      CRAIG WRIGHT,                      Pages 1-16

 9                     Defendant.
        _____
10
                     TRANSCRIPT OF TELEPHONIC MOTION HEARING
11                 BEFORE THE HONORABLE BRUCE E. REINHART
                     UNITED STATES MAGISTRATE JUDGE
12
        APPEARANCES:
13
        FOR THE PLAINTIFF:
14                             Bois, Schiller, Flexner, LLP
                               BY:  DEVIN FREEDMAN, ESQ.
15                             100 Southeast Second Street
                               Suite 2800
16                             Miami,  Florida 33131
                               (Appearing telephonically)
17
        FOR THE DEFENDANT:
18                             Rivero Mestre, LLP
                               BY:  AMANDA McGOVERN, ESQ.
19                             BY:  ZAHARAH MARKOE, ESQ.
                               BY:  BRYAN PASCHAL, ESQ.
20                             2525 Ponce De Leon Boulevard
                               Suite 1000
21                             Coral Gables, Florida 33134
                               (Appearing telephonically)
22
        TRANSCRIBED BY:     DAWN M. SAVINO, RPR
23                          Official Court Stenographer
                            400 N. Miami Avenue, 10S03
24                          Miami, Florida  33128
                            Telephone:  305-523-5598
25
```

```
 1                    P-R-O-C-E-E-D-I-N-G-S
 2          THE COURT:  Calling case number 18-80176, case of Ira
 3     Kleiman and W&K Info Defense Research versus Craig Wright.
 4          May I have Counsel's appearances, starting with the
 5     counsel for the Plaintiff please.
 6          MR. FREEDMAN:  Devin Freedman for the Plaintiff, Your
 7     Honor.
 8          THE COURT:  Good evening, Mr. Freedman.
 9          And for the Defense.
10          MS. McGOVERN:  Amanda McGovern from Rivero Mestre for
11     the Defendant, Dr. Wright.
12          MS. MARKOE:  And Zaharah Marcoe from Rivero Mestre for
13     Defendant Dr. Wright as well.
14          THE COURT:  Okay.  Great.  Thank you all very much for
15     making yourselves available.
16          I have before me Dr. Wright's motion for enlargement of
17     time filed at Docket Entry 167, which was filed earlier today.
18     I had entered an order granting a brief extension, then it
19     occurred to me that that might have been precipitous because I
20     haven't heard from the parties.  So I wanted to get us on the
21     phone quickly and try to address this issue.
22          So let me -- well, anybody new on the call?
23          MR. PASCHAL:  Bryan Paschal for Dr. Wright.
24          THE COURT:  I'm sorry.  Who is that?
25          MR. PASCHAL:  Bryan Paschal.
```

1          MS. McGOVERN:  That's Bryan Paschal.

2          THE COURT:  On behalf of Dr. Wright.  Okay.

3    Mr. Paschal, good afternoon.

4          Okay.  So I have before me the motion for enlargement

5    of time which asks for essentially a 10-day extension of the

6    deadlines that I set.  And the question I have is why.  Let me

7    explain the background to that question.

8          MS. McGOVERN:  Your Honor, this is Amanda McGovern.

9          THE COURT:  Ms. McGovern, you're going to want me to

10   explain the background before you say anything.  So let me give

11   the background to my question.

12         MS. McGOVERN:  I'm sorry.

13         THE COURT:  Going all the way back to February the 1st

14   in response to the Plaintiff's first set of interrogatories,

15   there are interrogatories about Dr. Wright's Bitcoin holdings,

16   and the response was there were objections filed with legal

17   objections, and no one ever said Dr. Wright doesn't know what he

18   has and can't figure out what he has.

19         Then there were requests for production filed, and

20   there were objections lodged to those.  And the objections were

21   that the request to know what Bitcoin Dr. Wright had on December

22   31, 2013 was overly broad, unduly burdensome and harassing.

23   Again, it was not stated that Dr. Wright transferred all his

24   assets to a blind trust and doesn't know what he has and can't

25   figure out what he has.

1          Based on that, I had multiple discovery hearings and I

2     entered orders, and one of the orders I entered was that Dr.

3     Wright was to provide the copy of a list -- I'm sorry, he was to

4     prepare a list of his Bitcoin holdings effective December 31,

5     2013.  I entered that order orally on March the 14th which was

6     seven weeks ago, and I said if it's unduly burdensome to produce

7     that list, you can file a motion for protective order.

8          Three weeks after that, not hearing a word, Dr. Wright

9     sat for his deposition and Ms. Markoe acknowledged on the record

10    that the Court has ordered him to produce this list subject to

11    an undue burden motion, and said that you would be filing a

12    motion for undue burden shortly.

13         That motion was finally filed on April the 18th and for

14    the very first time, I'm told all Dr. Wright's Bitcoin are in a

15    blind trust.  So I assumed that since that pleading was signed

16    by Mr. Rivero subject to Rule 11, which says that a lawyer who

17    files a pleading and signs the pleading certifies that to the

18    best of the person's knowledge, information and belief, before

19    and after an inquiry reasonable under the circumstances, the

20    factual contentions have evidentiary support.  So I assumed that

21    before filing that motion, Mr. Rivero and his firm had done due

22    diligence to determine if a blind trust exists, who the trustee

23    is, where it is, and that they can accurately reflect to me that

24    it does in fact exist, which is why I put you on a very short

25    deadline to tell me about this blind trust because you have been

1    the most fervent advocates in this case that discovery needs to

2    move, it needs to move quickly, that we're on a tight deadline,

3    discovery needs to be narrowed, et cetera.

4          So I now go back to my question.  Why do you need ten

5    days to figure out what you should have known two months ago?

6    And you can answer me, Ms. McGovern.

7          MS. McGOVERN:  Your Honor, okay.  The reason for that,

8    Your Honor, is because the understanding is not complete and

9    because we have had -- we had a sworn declaration that needs to

10   be filed, we want to make sure before we -- not before we, but

11   before we have a sworn declaration signed which sets forth all

12   the information -- well, not all the information, the

13   information that the Court asks for is very reasonable, and but

14   the explanation of the manner in which the blind trust is set up

15   is -- it's complex and it involves issues concerning foreign

16   law.

17         So what we should have done and what we did not do was

18   go and understand all of the ramifications of the trust under

19   the different multiple jurisdictions at the time.  What we -- we

20   were addressing the discovery, we were being very -- we were

21   being very thorough about it, but when we're talking about the

22   actual explanation of these trusts, in order to have a fulsome

23   understanding, a full understanding of these trusts and really

24   just being able to explain them in a straightforward manner and

25   have the information sworn to, we want to make sure it is

1   absolutely, unequivocally not confusing and accurate.

2          As you know, there are issues regarding -- well, I

3   guess, allegations of lies and things like that in this case.

4   We're being very hypersensitive to it.  If we weren't dealing

5   with -- in fact, actually Zaharah and I are flying to London in

6   a couple hours.  And the purpose for the extra time was really

7   just to make sure that we've got it 100% right.

8          THE COURT:  Okay.

9          MS. McGOVERN:  That's really it, Your Honor.  I don't

10  have anything else to say about it other than wanting to make

11  sure that whatever is stated is absolutely correct, which is

12  what we always do, but this is -- these are complex trusts.  I

13  don't have a full understanding of it, and I want to make sure

14  that -- we do want to make sure that when we comply with this

15  order, the issues don't come back later and oh, you said this,

16  we just don't want that to happen.  That's why we needed more

17  time, Your Honor.

18         THE COURT:  Okay.  Why didn't you do this seven weeks

19  ago?  Why have I been running around in circles when I should

20  have been told he can't produce when you ordered him to produce?

21         MS. McGOVERN:  Your Honor --

22         THE COURT:  Hold on.  That's Question 1.

23         Question 2 is, other than because your client told you

24  so, what due diligence have you done to determine that this

25  blind trust even exists?

1        MS. McGOVERN:  Well, we're speaking with counsel from

2  different jurisdictions, Your Honor, and we've actually been

3  doing that not in connection with this, but in connection with

4  all of the other issues that have come up, including location of

5  documents and other things.

6        THE COURT:  Okay.  How long have you known that the

7  blind trust exists?

8        MS. McGOVERN:  Your Honor, with respect to the trust,

9  there have been a lot of documentation that has been produced in

10  the case regarding draft trusts and things like that.  You know,

11  Your Honor, I'm not able to answer specifically because I don't

12  have the pleading in front of me with respect to the listing of

13  the public addresses.  Our feeling was, and this is probably a

14  mistake, but our feeling was, you know -- it is inconceivable

15  that you never knew when public addresses existed and our

16  *(unintelligible)* in response to the discovery request was well,

17  you know, what are all the public addresses that you knew as of

18  December 31st.  We were actually trying to provide more

19  information than less.

20        And our concern was, and our response to that was what

21  are the public addresses, how are they -- we won't even call

22  that December 31, 2013 and our response was none.

23  *(Unintelligible)* blind trust.  Well, it doesn't go to the issue

24  of what were they, what knowledge do you have.  We actually

25  included in our response the issue of the trust and we provided

the public addresses that we pushed and pushed to be able to find, and then we were able to determine okay, these were the ones and we provided that information.

So it may not seem like it, but the effort was to provide information that -- it didn't just get out of the discovery request, but that tried to explain the background and as much facts as we possibly can because we're trying -- we're defending this case, and facts help us.  And just sort of conclusory statements like we don't know what this is does not help us, particularly when we're dealing with issues regarding credibility and other things.

So we included the information of the trust, but we also provided the first 70 blocks, and in fact, in providing those 70 blocks, we didn't have that information at our disposal, we went back and we matched the information ourselves so we could list everything that has since been -- it's the 70 addresses that Your Honor redacted in the motion.  And that information was not just push a button and it's available; it was well, if you mine the first 70, we can determine by going to these different websites what those also were and we provided that information.

THE COURT:  Now answer my question please.  My question is when did you know that a blind trust exists and that Dr. Wright had allegedly transferred all of his Bitcoin into a blind trust in 2011?

1          MS. McGOVERN:  I believe we learned that, Your Honor,

2     when we put that in response to the motion.  Zaharah can correct

3     me if I'm wrong, but that's my understanding.

4          THE COURT:  And what due diligence -- and what due

5     diligence have you done to determine if that statement is

6     actually true?

7          MS. McGOVERN:  Pardon me?

8          THE COURT:  What steps did you take to determine if in

9     fact such a blind trust exists?  Because it would seem to me,

10    which is why I made this the quick answer, that you should know

11    who the trustee is and where it's located at a minimum.  So why

12    can't you provide that information to me now?

13         MS. MARKOE:  Your Honor, this is Zaharah Marcoe.  With

14    regards to the location of the trust, I believe that is probably

15    information we can get quickly.

16         With regard to the trustee, it's our understanding that

17    some of these trusts are structured -- and that's why we're

18    going to get more information about this -- in such a way where

19    our client doesn't have knowledge of all the trustees.  And so,

20    you know, this is going to require us, you know, getting more

21    information from our client, talking to other people that have

22    -- that they have additional information that we can provide to

23    the Court and further, you know, we're going to -- we're

24    searching through the documents further to see if there's any

25    clues in those.

1       THE COURT:  You realize it is facially incredible that

2  in 2011 your client transferred potentially billions of dollars

3  in Bitcoin to someone and you can't tell me who that was.  You

4  understand that, right?

5       MS. MARKOE:  We understand that, but Your Honor, I

6  think that what's important -- and I've actually discussed this

7  a lot with other members of my firm -- is that yes, there's

8  billions of dollars in today's money.  At the time that the

9  funds -- that the Bitcoin rights were transferred into the blind

10  trust, they were not worth billions of dollars.

11       Now, I do understand your point that it is difficult to

12  believe that there's, you know, something of value of any sort

13  was transferred to a trust and one doesn't have the information

14  that one would expect them to, and that's why we're heading to

15  London tonight to dig deeper.

16       THE COURT:  All right.  Mr. Freedman, I'll hear from

17  you.

18       MR. FREEDMAN:  Thank you, Your Honor.  I mean, you've

19  summarized our feelings of the case.  I don't think I need to

20  add anything unless the Court has specific questions.

21       THE COURT:  No.

22       MS. McGOVERN:  Could I just make a comment, Your Honor?

23       THE COURT:  You may.

24       MS. McGOVERN:  That -- you know, at the risk of, you

25  know, adding more tension, I do want to say that separate and

 1   apart from the issue of knowing this information immediately,

 2   which is what -- which I know that's the issue, that's the

 3   question on the table, but I want to make that a separate point

 4   in this which is the relationship to this case, in other words

 5   these trusts --

 6           THE COURT:  I have already ruled this is irrelevant.

 7   If you're going to make a discoverability argument, save your

 8   voice.  I've ruled and ordered you client to produce this.  So

 9   if you're going to make that argument, save your breath.

10           If you want to make a different argument, go ahead.

11           MS. McGOVERN:  No, I'm not -- I wasn't trying to make a

12   discovery argument, I was just simply trying to explain that --

13   I was trying to get *(unintelligible)* that with respect to the

14   creation of these trusts, apparently they were created a long,

15   long, long, long time ago.  But I understand, Your Honor.  I

16   understand the question, I understand the point that you're

17   making, and that is the reason that we're going to London to get

18   this information and make sure that it's accurate.  And we

19   responded to that as soon as we received your order.

20           THE COURT:  So what you've -- it says in Paragraph 3 of

21   your motion that Dr. Wright needs time because these trusts were

22   structured in such a way that he does not have direct knowledge

23   of some of the required information.  So what can you produce

24   right away?

25           MS. McGOVERN:  Your Honor, the reason that we're

1    hesitating to respond to it is because we have -- we are going

2    to get the information with everything in front of us so we have

3    a clear understanding of what these trusts mean.  You know,

4    there are issues that are guiding the creation of these trusts

5    that I don't have a full appreciation for, and that's the only

6    reason I was making the relationship to this case is because the

7    creation of it isn't related to the case, I'm not making a

8    discovery argument at all.  Simply saying that because the

9    creation of these trusts do not relate to this particular case

10   but relates to other issues, I hesitate to make a statement

11   before we have a full and complete understanding of what it is.

12   And a lot of it is also *(unintelligible)*, which is another level

13   of understanding along with our jurisdiction laws of the trusts,

14   because we certainly are not -- we are going to probe as we must

15   also understanding what the true limitation of the trust funds

16   are, because the questions that we're asking on this particular

17   -- just like we have with respect to the other *(unintelligible)*

18   and the documents we're looking for, they don't end with simply

19   a lawyer saying or the client saying this is what it is.  We're

20   not traveling on that.  We're going to the actual core of it.  I

21   don't have a full appreciation of what information can be

22   provided to you at this time.  But we will comply with your

23   order, Your Honor.  Whatever that order is, we are going to

24   comply.

25              THE COURT:  Well, here's what I am trying to figure

1    out, okay?

2         MS. McGOVERN:  Yeah.

3         THE COURT:  Your client certainly knows these trusts

4    exist.  Your client was involved in the formation of these

5    trusts.  You have filed a pleading in this case pursuant to Rule

6    11 saying that these trusts exist, and he transferred all those

7    assets there in 2011.  So I have to assume you know something

8    about these trusts right now, because otherwise Mr. Rivero could

9    not have signed that pleading.

10        So what I want to know is what can you tell me now, and

11   then I'll see about giving you time to tell me what else you

12   need to figure out.

13        MS. MARKOE:  Your Honor, right now I think we can

14   probably tell you the name of one of the trusts.  I believe we

15   can tell you the location of one of the trusts.  I'm unclear,

16   and we need to dig deeper into this, whether we have accurate

17   information of at least the name of some of the trustees, and I

18   believe we might have some information about some beneficiaries

19   and some trusts.  So, you know, we're working towards getting a

20   more -- making sure that that information that we currently have

21   is accurate, and seeing what else we can get so that we can

22   provide as complete and as accurate an answer as is possible.

23        THE COURT:  Okay.  So you are flying tonight?  You will

24   be there tomorrow?

25        MS. MARKOE:  Yes, we arrive at like 2 p.m. London time

1    tomorrow.

2          THE COURT:  On the 7th.  Well then, by close of

3    business on the 8th, you will provide me a sworn declaration

4    from your client with whatever information you then have as to

5    the names, locations of the trusts, the names and contact

6    information of the trustees current and past, and the names and

7    contact information of the beneficiaries current or past.  You

8    may indicate in there that it is not a complete list, it is what

9    you know up to that point, and you can supplement it at a date

10   and time I will give you later on.

11         How about giving me the documents that constitute the

12   trust, the trust documents.  How long do you need for that?

13         MS. MARKOE:  We're -- part of our goal in London is to

14   -- it is -- we're not sure where these documents reside, and to

15   the extent that they are not easy to locate, we're trying to

16   figure out if there are others that we can get in touch with

17   that can get us those materials as quickly and as efficiently as

18   possible, at least with regards to the formation documents.

19         THE COURT:  All right.  I'll give you a week from

20   today, 5:00, from today, whatever that is, May 13th, to comply

21   with Paragraph B of my order.

22         And as to paragraph C of my order, I'll give you until

23   the 25th to get me all the transactional documents and in

24   particular, the documents showing the transfer that occurred in

25   2011.  Because once again, it is facially not credible to me

1    that your client has no record of transferring 70 or more

2    Bitcoin to somebody else.

3          When you submit the declaration on Wednesday -- that's

4    two days from now?  Yes.  You can indicate at that time how much

5    more time you need to get me a complete listing of the trustees

6    and the beneficiaries in the trust, and I'll evaluate that at

7    that time.

8          But to be clear, and I think this is clear in my

9    standing order, as you can tell I am not happy when this

10   happens.  When someone gets a discovery request, objects to it,

11   forces the Court to rule and adjudicate the objections and then

12   comes back at the end and says oh, by the way, we don't have

13   anything and we can't get anything because that's just a waste

14   of the Court's time.  And your client needs to understand that.

15   Your client needs to understand he is under the jurisdiction of

16   this Court.  I will not hesitate to order him to come to the

17   United States and appear in front of me to explain himself.  So

18   I don't know what other priorities he has in his life right now,

19   but this better be one of them.

20         Anything further from the Plaintiff?

21         MR. FREEDMAN:  No, Your Honor.  Thank you.

22         THE COURT:  Anything further from the defense?

23         MS. McGOVERN:  No, Your Honor.

24         THE COURT:  All right.  Have a safe trip.

25         (PROCEEDINGS CONCLUDED)

1                              * * * * *

2                        C E R T I F I C A T E
   I certify that the foregoing is a correct transcript from the
3  digital audio recording of proceedings in the above-entitled
   matter.
4

5  5/17/2019                    /s/ Dawn M. Savino
   Date                         DAWN M. SAVINO, RPR
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25