```
 1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION
                     CASE NO. 9:18-cv-80176-BB
 3
      IRA KLEIMAN, as the personal
 4    representative of the Estate of
      David Kleiman, and W&K Info
 5    Defense Research, LLC,

 6              Plaintiffs,                    July 10, 2019
                                              9:03 a.m.
 7         vs.

 8    CRAIG WRIGHT,

 9              Defendant.                     Pages 1 THROUGH 109

10    _____

11                    TRANSCRIPT OF MOTION HEARING
                  BEFORE THE HONORABLE BETH BLOOM
12                   UNITED STATES DISTRICT JUDGE

13    Appearances:

14    FOR THE PLAINTIFF:   BOIES SCHILLER FLEXNER
                           DEVIN FREEDMAN, ESQ.
15                         100 Southeast 2nd Street, Suite 2800
                           Miami, Florida 33131
16
                           BOIES SCHILLER FLEXNER
17                         KYLE ROCHE, ESQ.
                           333 Main Street
18                         Armonk, NY 10504

19    FOR THE DEFENDANT:   RIVERO MESTRE, LLP
                           ANDRES RIVERO, ESQ.
20                         AMANDA MARIE MCGOVERN, ESQ.
                           BRYAN LEE PASCHAL, ESQ.
21                         ZAHARAH R. MARKOE, ESQ.
                           2525 Ponce de Leon Boulevard, Suite 1000
22                         Coral Gables, Florida 33134

23    COURT REPORTER:      Yvette Hernandez
                           U.S. District Court
24                         400 North Miami Avenue, Room 10-2
                           Miami, Florida 33128
25                         yvette_hernandez@flsd.uscourts.gov
```

```
1          (Call to order of the Court, 9:03 a.m.)

2              COURTROOM DEPUTY:  Calling Civil Case Number 18-80176,

3     Kleiman v. Wright.

4              Counsel, please state your appearances for the record.

5              MR. RIVERO:  Good morning, Your Honor.  Andres Rivero,

6     together with Amanda McGovern, Bryan Paschal, and Zaharah

7     Markoe.

8              MS. MCGOVERN:  Good morning, Your Honor.

9              MR. RIVERO:  All with Rivero Mestre, Judge, for

10    Dr. Wright.

11             THE COURT:  Hi.  Good morning.

12             MR. FREEDMAN:  Good morning, Your Honor.  Vel Freedman

13    for the Plaintiff, the Estate of Dave Kleiman and W&K Info

14    Defense Research, together with Kyle Roche, Boies Schiller &

15    Flexner, and Dr. Matthew Edman, our digital forensics exert.

16             THE COURT:  Good morning to each of you as well.

17             I recognize there has been a flurry of filings.  The

18    Court did grant the Plaintiff's latest motion.

19             So let me, before we proceed, advise the parties what

20    the Court has reviewed in preparation for today, and then

21    hopefully narrow the issues.

22             Before the Court for hearing, as we know, is the

23    Defendant's motion for judgment on the pleadings claiming lack

24    of subject matter jurisdiction.  The Court notes that the

25    Defendant has withdrawn Exhibit A to that motion.
```

1      The Court has certainly reviewed the Plaintiff's

2  response, as well as all of the exhibits, Docket Entry 159, the

3  Defendant's reply, Docket Entry 171.  The Court then permitted

4  a surreply and has reviewed the Plaintiff's surreply with

5  Exhibits, Docket Entry 192.

6      Yesterday, the Court did permit the Defendant to

7  supplement the record with portions of Mr. Wright's deposition

8  testimony, Docket Entry 239.  And early this morning, the Court

9  did grant the Plaintiff's request to supplement the record and

10  certainly has reviewed those exhibits.

11      As well, I do wish the parties to know that the Court

12  has fully reviewed the transcripts from the hearings before

13  Judge Reinhart on February 20th, 2019, Docket Entry 107; March

14  7th, Docket Entry 122; March 14th, Docket Entry 124; April

15  11th, Docket Entry 146; May 6th, Docket Entry 195; June 11th,

16  Docket Entry 221; and June 28th, Docket Entry 236.

17      Let me state that I believe that the Court has

18  sufficient briefing on the issue of supplemental jurisdiction.

19  After the Court entered its order with regard to the claim, the

20  sole federal claim of the defense of Trade Secrets Act.  So I'd

21  like to allow the time today to focus on the issues relating to

22  the Defendant's motion as to the lack of diversity.

23      And Mr. Rivero, let me just ask you, since in your

24  motion you made a factual challenge to the Plaintiff's claim of

25  diversity, but yet, in your reply you focused on a facial

1    challenge.  So are you making a factual or facial challenge at

2    this time?

3         MR. RIVERO:  Judge, the description's correct.  Judge,

4    the issue presented is whether they have -- whether there's a

5    lack of subject matter jurisdiction.  And for both reasons,

6    there's a lack of subject matter jurisdiction, Judge.  So we're

7    relying on both theories, Your Honor, and I'm ready to address

8    each.

9         Judge, a procedural matter before we start.  When the

10   Court set this hearing, you did not notice it as an evidentiary

11   hearing, and so we don't believe -- we're not prepared for an

12   evidentiary hearing and we don't believe it is.  But if it is,

13   Your Honor, one of the -- and it is, Judge, we'd intend to call

14   Dr. Wright and Lynn Wright, a representative of Coin Exchange,

15   and our expert on these issues.  The Court hasn't said it's

16   that.  But if it is, Judge, they have present one of their

17   witnesses and I don't know that that's appropriate, if we're

18   going to proceed as an evidentiary hearing, for the expert

19   witness to be hearing commentary on the actual details of the

20   facts that he'll be testifying about.  So I raise that as an

21   initial matter with the Court.

22        THE COURT:  Mr. Freedman?

23        MR. FREEDMAN:  Your Honor, at this time, Dr. Edman is

24   here if the Court has any questions.  As there is no other fact

25   witness here or any witness whatsoever, I don't think there

1   would be a problem with him hearing argument that's going on.

2   He is essential to counsels' arguments on the documents that

3   Dr. Wright has put forward.  Plaintiffs claim that they are

4   forgeries created by Dr. Wright.  Dr. Edman was -- is essential

5   to that theory.  And even if there were witnesses here today,

6   which there aren't, there is substantial case law to show that

7   when an expert is essential to the case they can't preclude it

8   from the proceedings.

9           THE COURT:  Well, certainly the expert would not be

10   precluded from the proceeding.

11           With regard to additional evidence, let me state that,

12   since the Defendant has filed this motion, the Defendant does

13   have a burden of production, and then certainly the Court would

14   look to any argument that the Plaintiff is making with regard

15   to this issue of diversity.

16           But let me start -- the Court did not notice it as an

17   evidentiary hearing.  I believe that there were more exhibits

18   and evidence that was presented to the Court to allow the Court

19   to make a determination based on what's been provided.  If

20   there's additional evidence to be presented, and there's not an

21   issue of prejudice because that information was known to the

22   parties, then you can certainly advise the Court at the

23   appropriate time.

24           But since, Mr. Rivero, the Defendant has the burden of

25   production, let me ask you, sir:  As of February 14th, 2018,

1    who were the members of W&K?

2            MR. RIVERO:  Your Honor, first of all, the answer is

3    there is evidence on a number of sides -- I've been told,

4    Judge, that I should put this on.  So let me just do that.

5            THE COURT:  You can also speak from the microphone if

6    you're at the podium, sir.

7            MR. RIVERO:  Let me -- Judge, if I can, though, just

8    to make sure because I -- in case I stray.

9            Your Honor, the answer to that question is:  We

10   believe that the more substantial evidence establishes that

11   there was at least an additional member of W&K and that that

12   person was a foreigner.  Now, Judge, who that is exactly, we're

13   not obligated to prove.  But I want to --

14           THE COURT:  Mr. Rivero, my question is very simple,

15   sir.

16           MR. RIVERO:  Yes.

17           THE COURT:  You are making a challenge.  I recognize

18   that the burden ultimately rests on the Plaintiff, but you have

19   a burden of production.  So my question is:  Who were the

20   members of W&K and what evidence supports the challenge at this

21   time?

22           MR. RIVERO:  Judge, Dr. Wright -- the Court reviewed

23   the transcripts of the recent hearing before Judge Reinhart and

24   we've submitted to this Court.  Dr. Wright has testified that

25   at the time of the formation of this company in February of

1   2011 that half of the shares belonged to Lynn Wright, his then

2   wife, who is a foreigner.  There is record evidence --

3        THE COURT:  If that's the case, are the statements

4   that were made to the Australian court a lie, when he stated

5   that he owned 50 percent and Mr. Kleiman owned 50 percent?

6        MR. RIVERO:  Well, Judge, first of all, I can't -- I

7   don't know in terms of the timing, because it's clear to me

8   from his testimony that the ownership can have changed over

9   time, and he testifies to that.  So I cannot tell the Court, at

10  the time that that statement was made, that it was a falsehood,

11  Your Honor.  But there's no doubt there's a contradiction.

12        However, Judge, on the question that the Court's

13  asking me, the only burden -- and Your Honor, my view is

14  actually that the Eleventh Circuit law is somewhat different --

15  the burden is always theirs.  This is the question, the

16  fundamental question of invoking this Court's limited power.

17  And one of the leading writers on this subject in the last few

18  years has been you, Your Honor.  And that test is on them.

19        But I am coming forward.  I'm trying to meet the

20  burden you say, Judge.  There is record evidence that

21  foreigners are members of W&K.  So I'm talking

22  specifically about the -- the question before the Court is:

23  Have they properly alleged and then met the burden of showing

24  by a preponderance --

25        THE COURT:  We're not speaking of allegations now.

1    We're speaking of a factual attack.  And the Eleventh Circuit

2    has made very clear, in the case OSI v. United States, 285 F.3d

3    947, that factual attacks differ because they challenge the

4    existence of subject matter jurisdiction in fact.

5            And as you know, matters outside of the pleadings,

6    such as testimony and affidavits, are considered.  But the

7    Defendant must show a lack of diversity by meeting its burden

8    of production for a factual attack and then the Plaintiff would

9    respond and is required to respond with proof definitively

10   evincing that diversity exists.

11           So my question with regard to the burden of production

12   is:  What evidence do you have that shows who the members of

13   W&K were as of February 14th, 2018?

14           MR. RIVERO:  Judge, may I show the evidence to meet

15   the burden the Court is defining?

16           THE COURT:  Certainly.

17           MR. RIVERO:  And I'm not sure how to turn on the ELMO.

18   I think I may have to ask for somebody to do that.

19           THE COURT:  Yvette, if you don't mind just -- I think

20   it should be on.

21           MR. RIVERO:  And Judge, let me just say I think part

22   of this is you're asking about 2018.  What I want to address

23   is --

24           THE COURT:  2018, at the time that the Complaint was

25   filed.

1        MR. RIVERO:  Right.  I'm going to address different

2   points in time.  But first, this is what meets the burden that

3   there was a foreign member as an initial point.  Dr. Wright has

4   just testified, on examination by counsel for the Plaintiffs,

5   Freedman --

6        MR. FREEDMAN:  Excuse me.

7        MR. RIVERO:  It wasn't solicited by us in this recent

8   testimony.

9        MR. FREEDMAN:  Your Honor, we can't see the document

10  on the screen.  I see it on Mr. Rivero's screen, but it's not

11  appearing on our screen.

12       MR. RIVERO:  Judge, I have a copy that I can hand to

13  counsel.  Since I'm still firmly in the paper age, Your Honor,

14  I have a hard copy.

15       THE COURT:  And Mr. Freedman, is the screen not ...

16       MR. FREEDMAN:  It's black.

17       MR. RIVERO:  Judge, I'm also handing a copy to

18  Mr. Freedman.  And just for purposes of this hearing, I would

19  mark this for purposes of identification as Defendant's 1.  And

20  what I am referring to, Your Honor, is from the hearing before

21  Judge Reinhart on July 9th.  And this is questioning, Your

22  Honor, by counsel for the Plaintiffs.

23       The testifying party is Judge -- is Dr. Wright.  And

24  the questions are:  "Was she involved in your companies" --

25  this is a reference to Dr. Wright's then wife Lynn Wright.  And

1    the answer was:  "Lynn had been involved in my companies, yes."

2           "Which companies was she involved in?"  And then

3    you'll see here, Judge, I've highlighted -- this is at lines 15

4    to 17, as the Court can see:  "Lynn was also involved in W&K

5    Information Defense in Florida with Dave and she helped him

6    there."

7           Now, Judge, on the following pages -- that was at 415.

8    On Page -- not the following page, but 420, Mr. Freedman

9    continues -- this is line 17, Your Honor:  "Did she have shares

10   in a business that you worked for or with?"

11          "Yes."

12          "Can you name those?"

13          Dr. Wright goes into other companies, the Morgan and

14   Ridge Estate.  But at Page 421, asked about -- a follow-up

15   question:  "Are those all the ones that you can remember now?"

16          He answered:  "I need to look up what she has.  I know

17   that she had shares in W&K, but I didn't work for that."

18          And then, Judge, at lines 8 and 99, he said:  "And

19   what happened to her shares in W&K?"

20          "That would still be her shares."

21          So --

22          THE COURT:  Mr. Rivero, that doesn't answer the

23   Court's question.  My question was very specific.  What

24   evidence supports the challenge that she was a member or anyone

25   else was a member of W&K?  The law is very clear that an LLC

1    has the citizenship of its members.

2            MR. RIVERO:  Yes.

3            THE COURT:  So if she has shares in the company, that

4    doesn't tell the Court anything.  The question is whether she

5    was a member.

6            MR. RIVERO:  Judge, under Florida law, about LLCs,

7    Judge, LLCs are a statutory evolution of partnership law in the

8    state.  And we can go back and show the Court this.  So under

9    partnership law, any owner is a partner.  Under Florida LLC

10   law, any owner is a member.  Only members can be owners.

11           So that -- this is testimony that she was a

12   shareholder and therefore a member in W&K, Judge.  That is the

13   entire legal definition of membership under Florida law.

14           THE COURT:  So on April 4th, 2019, in Mr. Wright's

15   depo, at ECF 242-1, where he states:  "I did not own W&K.  I do

16   not know who owns W&K," was that a lie?

17           MR. RIVERO:  Judge, I don't -- I'm not telling the

18   Court that there aren't contradictions, but the Court has asked

19   me --

20           THE COURT:  But this is the same individual that

21   stated that his wife owned shares.

22           MR. RIVERO:  That's correct, Judge.

23           THE COURT:  The same individual who states he does not

24   know who owns shares, and the same individual that testified

25   under oath before an Australian court that the only two

1    individuals that owned shares were 50 percent Mr. Wright and 50

2    percent Dave Kleiman, and the same individual that stated in an

3    affidavit to the Court that he owns zero and has no interest in

4    W&K.

5            So how is it that the Court is now to accept this late

6    testimony that now Lynn, his ex-wife, owned shares in the

7    company?

8            MR. RIVERO:  Judge, I'm put in mind of when I was a

9    federal prosecutor and I had cooperators whose credibility was

10   severely challenged -- and I'm sure the Court has seen these

11   circumstances.  So I think the answer to the fact finder every

12   time on such a question is:  First of all, my obligation is --

13   initially to put this in play, is to show the Court evidence.

14   The Court can weigh the evidence.  But this is evidence -- but

15   here's the point, Judge, as with a cooperator who has

16   problematic credibility, I'm going to ask the Court to look at

17   contemporaneous documents that are not challenged and that were

18   put forward by the Plaintiff in this litigation to support the

19   statement that I'm showing you, Judge.

20           So what I'm saying to you is:  I understand the

21   Court's issues with credibility very clearly.  And, Judge, I

22   also want to say I'm very clear on advocacy.  I've been doing

23   this for a long time.  There's only one thing that has value in

24   advocacy, and that's credibility.  There's no crypto

25   credibility.  The document I'm going to show you is not subject

```
 1    to attack from Edman.  It's not subject to attack.  It's been
 2    put forward by the Plaintiffs.  So this is the next document I
 3    want to show the Court.
 4         It is somewhat cut off in this version, Judge, but I
 5    will represent to the Court what the top line says.  I have a
 6    copy if counsel doesn't have it.  But this is key to understand
 7    this, Judge.  This is a David Kleiman email dated February 15.
 8    Judge, there are two -- there's a fork in this email.  And no
 9    one has challenged this.  Now, Judge, it's hard to read.  I'll
10    start at the bottom, as emails do.  So this one in particular,
11    Judge, this line of emails --
12         MR. FREEDMAN:  Your Honor -- Mr. Rivero, could we get
13    a copy?  I'm sorry.  The screen isn't working.
14         MR. RIVERO:  Okay.  Just a moment, Judge.  Judge, I'll
15    hand a paper copy to ...
16      (Pause in proceedings.)
17         MR. RIVERO:  Judge, I'm handing -- and for purposes of
18    the hearing, I'll identify this as Defendant's 2.  And I'm
19    handing that to opposing counsel.
20         MR. FREEDMAN:  Thank you.
21         MR. RIVERO:  Judge, let me explain the context.  What
22    I am saying, Judge, is the Court is calling into question the
23    credibility of Dr. Wright on this fact, which is as to our
24    burden to put this in play.  But Judge, there's contemporary
25    documentary evidence that tends to support what he's saying,
```

and that's independent of his testimony.

So Judge, this is -- the formation -- I'll show the Court in a minute. The formation of W&K is in February of 2011. The initial email here, as you'll see, Judge -- and I'm not sure if I'm zooming enough.

THE COURT: I see it.

MR. RIVERO: You see it. Yeah.

I also have a paper copy, if the Court would like to see it in paper, Judge.

THE COURT: I see it.

MR. RIVERO: Judge, Dr. Wright writes to David Kleiman and Lynn Wright. And Judge, you'll notice that the -- first of all, the name of the email at which he's addressing -- which he's addressing from and addressing Lynn Wright at is Information Defense, which ties into W&K Information Defense.

Judge, Dr. Wright says -- at the outset, he says: "The first has to do with the attached papers." And there's some papers attached there.

There is then a response to that from Dave Kleiman, Judge. And unfortunately, this copy is cut off here. I'm not sure if you can see it. Judge, up here, you can see the bottom of his name, Dave Kleiman. I'll represent to the Court that in a clean copy we would see this is from Dave Kleiman to Craig Wright @information-defense and Lynn Wright@information-defense. And he says -- I believe it says:

1   "Last page of attached.  Do you think I can list you as MGR or

2   MGRM with a foreign address, or do you think they would kick it

3   back?"  Right, Judge?

4           Judge, there is not a doubt in the world -- although

5   there's been a lot of heat here, Judge.  I'm trying to shed

6   some light.  There's not a doubt in the world that Dave Kleiman

7   is writing two foreigners.  They've argued that this is only to

8   Craig Wright.  It's to both Craig Wright and Lynn Wright, and

9   it says:  "Do I list you as MGR?"  The Florida definitions have

10  for "MGR" manager.  "Or do I list you as MGRM?"  Your Honor,

11  the definitions say MGRM is manager/member.

12          Judge, not only that -- this is Defense 2 --

13          THE COURT:  And Mr. Rivero, if I may ask.  This is a

14  Defense exhibit that was produced in discovery?  Is this a

15  Defense Bates-stamped document?

16          MR. RIVERO:  One moment.  May I confirm on that?  I

17  just want to make sure.

18          THE COURT:  Certainly.

19    (Pause in proceedings.)

20          MR. RIVERO:  Judge, I'm told -- and as the Court

21  understands, I'm not the one who's doing each thing.  It's

22  attached to the Defendant's Complaint.  It was initially

23  produced by the Defendant and we've also produced a copy in

24  production.  And Judge, no challenge has been placed to this

25  document and it's being relied on and traveled on by the

```
1    Plaintiff.
2           THE COURT:  And in asking if it's okay to list you as
3    a manager or managing member with a foreign address, was there
4    ever a response by Lynn or --
5           MR. RIVERO:  I have another email, Judge.  But I just
6    want to show the Court first what's going on contemporaneously
7    in documents that aren't challenged by this expert or by
8    anybody and it was put into their Complaint.
9           Judge, but before I get -- because I want to get to
10   that next one, but here's the attachment.  The attachment's
11   critical for the Court to understand.  I think I've now -- it's
12   in play.  I've now got testimony and I've got a document that's
13   showing Kleiman talking to two foreigners about listing them
14   potentially as MGRM.  Judge, there isn't any evidence to the
15   other side of this.  That's the problem they have.
16          But let me go ahead.  Here is his draft.  You'll see
17   the first page is it's a Florida state form.  Attached to the
18   form is instructions --
19          COURT REPORTER:  Your mic is off.
20          MR. RIVERO:  Oh, I'm sorry.
21          Judge, again, I want to stay with light and not heat.
22   So let me slow down.
23          Judge, what I'm trying to show the Court is that this
24   is the form for the formation of a Florida LLC.  As you can see
25   on the first page, it has a set of instructions, Judge.  And
```

1    that's -- all that's that instructions.  Judge, this is

2    attached.

3         So this is David Kleiman -- you know, one of the big

4    problems here is the only people who know what happened at the

5    time are David Kleiman, Craig Wright, and Lynn Wright.  But

6    this is David Kleiman's draft.  And it's for W&K Info --

7    Information Defense, like that email that we've looked at which

8    has the email address for Lynn Wright and Craig Wright.  And it

9    shows correspondence should go to Dave Kleiman.  And then it

10   goes on and says the name, Judge, of the entity, and the

11   address, and then it says the registered agent is Dave Kleiman,

12   Judge.

13        But here's the key part --

14        MR. FREEDMAN:  Your Honor, can I just say I recognize

15   the first email on this page.  I don't have -- I don't -- I

16   have not seen the attachment.  I'm not sure that means that

17   it's not been produced.  It's just there's no Bates stamp.  So

18   I'm not familiar with this document.  I don't know where it

19   came from.

20        MR. RIVERO:  Judge, let me ask --

21        MR. FREEDMAN:  It wasn't part of any of the previous

22   filings with the Court.  So ...

23     (Pause in proceedings.)

24        MR. RIVERO:  Judge, we have previously produced this

25   in discovery and there's a Bates stamp.  I don't have it at the

1    moment.  I don't think there's any doubt this is this

2    attachment.  I'll show another email that shows the title of

3    this document.  So that's what I have to say about it at this

4    point.  I've marked it as Defense 2 for identification.  I

5    haven't sought yet its admission.

6          Judge, here -- and this is -- this goes to the --

7    remember I told you that the meaning of "MGR" is manager and

8    the meaning of "MGRM" is managing member.  So when Dave Kleiman

9    is asking:  "Do I list you as MGR or MGRM," he has a draft

10   where he's listing himself as MGR.  Right, Judge?  That was

11   his -- that's his document.  That's his intention at this

12   particular moment in time.  I'm not saying that's what

13   happened, Judge.  But I'm trying to show you that there is

14   evidence that is independent of Dr. Wright's testimony.

15         Let me go to the other email, Judge, and also show you

16   what happens ultimately.  Judge, this is -- I'll mark this as

17   Defense 3 for purposes of identification.  And just note

18   that -- okay, Judge.  This is the same -- this is an email

19   related to the one we've just been talking about.

20         MR. FREEDMAN:  Mr. Rivero, could I get a copy again?

21   I'm sorry.

22         MR. RIVERO:  Yeah.  Just a moment.

23      (Pause in proceedings.)

24         MR. RIVERO:  Your Honor, I'm not seeing a paper copy.

25   Let me just see if my colleagues have a -- I'll ask if they

1    have a copy.

2         (Pause in proceedings.)

3              MR. RIVERO:  Judge, I don't believe we have another

4    copy.  I don't know if counsel's able to see this.

5              MR. FREEDMAN:  I'll try to follow on the screen.

6              THE COURT:  Mr. Freedman, your screen isn't on, sir?

7              MR. FREEDMAN:  No.  It's dark, Your Honor.  This

8    screen is working.  This one is not.

9              THE COURT:  Is there a way to ...

10             MR. FREEDMAN:  That one's too far.  But I'll manage on

11   this screen.

12             THE COURT:  Okay.

13             MR. RIVERO:  May I proceed, Your Honor?

14             THE COURT:  Yes.  Of course.

15             MR. RIVERO:  Yes.

16             Judge, this is a couple days later from the previous

17   one we saw, which was dated -- I'm sorry it's the day before.

18   It starts the day before.  And it says here -- the first email

19   says:  "Dave Kleiman," on Monday, February 14th, 2011, to Craig

20   Wright, copying Lynn Wright at information-defense.com, linked

21   to R and D site.  That's the start of it.

22             Then, Kleiman then follows -- on the next day, the day

23   they were just looking at, December 15, sent an email to see if

24   there's an expedited online way to accomplish.  "In any case,

25   how about a name?"  He's asking here both Wright and Lynn

```
1    Wright.  Craig Wright, Judge, responds -- and this has been
2    commented on in the papers.  So Plaintiff has been aware of
3    this.  Craig Wright responds, on Monday the 14th, to Dave
4    Kleiman, and says:  "Lynn," question mark.  And Judge, this is
5    cut off, but from Lynn Wright, Tuesday, February 15, Dave
6    Kleiman copied Craig Wright, "Re:  Linked to RD address."  It's
7    cut off, but it's:  "Either/or.  You choose."
8                Now, ultimately -- and this subject here is all in the
9    time period that W&K is being formed.
10               Now, as the Court is doubtlessly aware, there is a
11   document ultimately presented, which is of record, and which is
12   the actual official document in the State that --
13               THE COURT:  Which was filed the next day, on
14   February 16th, 2011.
15               MR. RIVERO:  I'm showing the Court.
16               THE COURT:  In which it states specifically that the
17   only managing member is Dave Kleiman.
18               MR. RIVERO:  That is correct, Judge.  My point is this
19   though, Judge:  It doesn't say -- and I'll show the
20   instructions from the State that say so.  This document is not
21   supposed to list all the members.  In fact, the State says:
22   "Don't list your members."  You are to list the manager or the
23   manager-member, but you're not to list the members.  And I'll
24   show that to the Court in the moment.
25               But you're right, Judge.  The Court's already read
```

1  this.  This is -- the very next day, what does Kleiman

2  ultimately do, is he files it with himself as MGRM, David A.

3  Kleiman.  That's right, Judge.  But Judge, this is the entire

4  sum and substance of the Plaintiff's position about David

5  Kleiman's ownership role -- membership in W&K.

6       And we are not disputing that David Kleiman was a

7  member.  What we're saying is that they have both failed to

8  allege every member of W&K and the citizenship of each member,

9  as this Court has said must be done in RG and also in

10 Professional LED, as Judge Tjoflat just said in December in the

11 Caran case, and as multiple courts of this district and the

12 Eleventh Circuit have repeatedly held just on the allegation

13 side.

14      But here's the point:  Now turning from the initial

15 burden to put this in play to the balance then of evidence,

16 Judge.  If I may, Judge, the Plaintiff in its papers and in

17 fact has absolutely nothing to say to this Court, either in an

18 allegation -- which it can't allege it because it doesn't have

19 it -- or as a matter of evidence beyond these Articles of

20 Incorporation.  The only other thing they point to are the

21 statements of Craig Wright.  Judge, that's in the papers.  You

22 can listen today, either the statements or writings of Craig

23 Wright.  The only evidence -- the only evidence they've pointed

24 to is this document or the testimony of Craig Wright.

25      Judge, this document does not either as a matter of

1    allegation or as a matter of proof eliminate other members.  It

2    cannot.  I'll show the Court the State's instructions --

3          THE COURT:  But it affirmatively states that

4    Mr. Kleiman is the member.  And if, in fact, Mr. Kleiman, or

5    Mr. Kleiman, is relying upon documents that have been filed

6    publicly, it appears that Mr. Kleiman can also rely upon a

7    statement made under oath, an affidavit by Mr. Wright, in which

8    he states that the shareholding of W&K Info Defense LLC was

9    Craig Wright 50 percent, David Kleiman 50 percent, which is

10   consistent with what has been alleged in the Second Amended

11   Complaint, which is the third Complaint, in Paragraph 71.

12         MR. RIVERO:  Well, Judge, let me just say this -- this

13   is an important point.  They do allege that at one point in the

14   Second Amended Complaint, and there is evidence for that

15   position as well.  If that is the case -- that's not what I'm

16   advocating.  If that is the case, there is no subject matter

17   jurisdiction for this Court because Wright is an Australian

18   citizen.  And Judge, I think this really goes to the --

19         THE COURT:  And that would be the case.  However, your

20   client, subsequent to that affidavit, stated under oath that he

21   owns no interest in W&K.  And it was based on that

22   representation that it was unclear as to whether Mr. Kleiman

23   was a one hundred percent owner in W&K or Mr. Kleiman was a 50

24   percent owner.

25         So once your client made that statement -- and the

1    reason why I ask you, Mr. Rivero, is that at some point your

2    client has made statements that directly, directly conflict

3    with other sworn testimony that was given.  So I ask you, sir,

4    as an officer of the Court:  What statement should the Court

5    rely upon?  Should the Court rely upon a statement made to an

6    Australian court that he was a 50 percent owner or should the

7    Court rely on a statement made under oath to this Court that he

8    had no interest and that Mr. Kleiman was a one hundred percent

9    owner?

10            MR. RIVERO:  Judge, I've been practicing before this

11   Court for 32 years.  This is the first courtroom -- not this

12   Court, but this Court was the first court I was ever present

13   in.  I saw that seal, Judge, as one of the things that caused

14   me to practice law and I am an officer of the Court.

15            Judge, the point is this -- and it's not the first

16   time I face doubts about the credibility of a witness.  I am

17   not telling the Court that you should rely on this last

18   statement naked.  I understand what the Court's saying about

19   contradictory statements.

20            THE COURT:  I'm merely asking:  Which statement should

21   the Court rely upon as truthful?

22            MR. RIVERO:  My point is it should rely on the other

23   evidence, which is not challenged as tainted, which includes

24   the conduct of David Kleiman and his inquiry right at the

25   outset.

1          But there's more, Judge.  But all I've been trying to

2    to do right now is show the Court where, not relying solely on

3    the statement of Craig Wright, this is in play.  Then if the

4    Court wants to talk about a balance of weight -- because

5    remember, Judge -- Your Honor, I understand.  And I would

6    understand a hundred percent if the Court is upset --

7          THE COURT:  I'm certainly not upset.  I'm just trying

8    to determine -- since you've made a factual attack, the Court

9    has a responsibility to evaluate and weigh the evidence.

10         I'm merely asking:  Where the Defendant states in one

11   sworn document that he is a 50 percent owner, and then in

12   another sworn document that he has zero percent ownership,

13   which statement is the Court to believe?

14         MR. RIVERO:  Judge, my position and based on

15   Dr. Wright's statements to me and his sworn testimony on July

16   9th, which is the most recent testimony on this and which is

17   also consistent with the affidavit he filed last year, is that

18   he was not an owner, but instead at the outset his then-wife

19   Lynn Wright was a shareholder.  Right?

20         That, Judge -- again, I understand the Court saying:

21   "But that's in doubt."  I get that.  But Judge, what I'm doing

22   is I'm showing contemporaneous evidence that supports that the

23   foreigner was a member with Dave Kleiman.  And Judge, once I

24   meet that burden -- and I need to meet that burden and get in

25   play -- I understand that -- there's more evidence.  There's

1    more evidence about subsequent -- subsequently who are members.

2          And the Court -- I'm not saying it's easy -- and in

3    fact, that's been commented on significantly.  Judge Spaulding

4    in Orlando I've had the pleasure to be before a number of

5    times, magistrate judge, but former head of appellate section

6    in Orlando, has said alleging the membership and citizenship of

7    a Florida LLC is not easy.  Because, as she acknowledges, the

8    State says -- and there's evidence in this record.  I don't

9    need to necessarily show everything.  The State says:  "Don't

10   list it."  The State says:  "We don't keep track of it."  They

11   told this Plaintiff that.  And you're not obligated to say in

12   the public filings who the membership is.  And David Kleiman

13   doesn't say:  "I'm the only member," because that's not what

14   that form says.

15         So what I'm saying, Judge, is:  There's evidence,

16   number one, in the contemporaneous documents which support the

17   last statement that Dr. Wright made.  I understand, Your Honor,

18   that you may determine to discredit Dr. Wright's testimony.

19         THE COURT:  And again, if the initial statement to the

20   Australian court was a lie, then isn't that enough to create

21   some doubt in every claimed truth that is now being expressed

22   by Mr. Wright?

23         MR. RIVERO:  Well, I think that's right, Judge.  And

24   that's why I'm saying to the Court I'm not asking you to rely

25   on Craig Wright's recent statement not solicited by us,

 1    solicited by Plaintiff's counsel.

 2            During examination -- and just in context for a

 3    moment -- and the Court read a record.  This is a fact.

 4    Dr. Wright broke down in tears twice during that examination.

 5    Plainly, a high-stress situation because Judge Reinhart had

 6    told him it was a show cause hearing to determine whether to

 7    recommend contempt sanctions to you.  And Judge, he had

 8    previously refused to testify about his ex-wife or his current

 9    wife.  And during this hearing, complying with the Court's

10    orders, he testified about Mrs. Wright.

11            All that's to say, Judge, I understand that the Court

12    is raising serious issues about Wright's credibility.  But

13    that's why I'm going to extrinsic evidence to support this.

14    And Judge, once I do that, once I show the Court that there is

15    evidence -- there's not a requirement that I show a

16    preponderance.  I need to show evidence to the Court that there

17    are other foreign members, that there's an issue about foreign

18    membership.

19            Judge, I have done that.  I'm showing you not just his

20    statement, which is sworn testimony, which you could discredit.

21    But Judge, this puts me in mind of -- I remember from evidence

22    in law school that one of the lines that really stuck with me

23    was from Wigmore that each piece of evidence was a brick and a

24    brick is not a wall.  And I'm not -- I'm not required to build

25    the wall.  They are required to build the wall.

1          And if I can step back for a moment, Judge, there is a

2    transcendent question here, and that's the question that we

3    posed.  Have they properly invoked the Court's power?  And

4    that's the question, then, once I raise enough evidence to call

5    into question whether there are other members and what the

6    citizenship of those members is.  And Judge, I believe I've

7    done that and I can show the Court additional evidence about

8    that.

9          Judge, it's very clear from your ruling on RG -- Judge

10   Tjoflat did sua sponte on appeal in Caran that the burden is

11   theirs by preponderance.  And I can demonstrate to you, Judge,

12   that they don't have evidence about the complete membership.

13   They don't have an allegation about the complete membership.

14   The Court cited to one where they say a hundred percent, that

15   they've said elsewhere 50/50.

16          Judge, it's not -- I take seriously -- I respect the

17   power of this Court and the power of this Court to say:  "I'm

18   allowed to discredit Craig Wright."  I get that, Judge.  But

19   the power of this Court ought not be invoked when it doesn't

20   exist.  As you so correctly said in RG, this is a court of

21   limited jurisdiction.  And Judge, there's a transcendent

22   principle involved here, which is these federal courts, your

23   court, your power, and the district courts, is the kind of

24   power that right now current events -- it was the 4th of July

25   when I was preparing for this, Judge.  And I, within the last

```
 1    two weeks, for the first time saw Independence Hall, which was
 2    a room much smaller than this one.  And those founding fathers
 3    set up a federal judicial power of a limited nature in a
 4    federal system.  And this Court and the Eleventh Circuit have
 5    been very clear about that.
 6         And Judge, why is it important to protect your power?
 7    Not just because you have the power to sanction Craig Wright if
 8    you determine that he hasn't told the truth before you.  That's
 9    important in each proceeding.  It's certainly not the weeds of
10    these details -- and I'm going to go through the weeds.  The
11    transcendent issue, Judge, is that district courts like yours
12    are determining right now whether the President of the United
13    States can ask on a census questions of citizenship.  A judge
14    of this court ordered desegregation in this district when I was
15    a child, Judge C. Clyde Atkins, who I had the honor to appear
16    before years later.
17         Judge, if this Court's power is frittered away in
18    cases because any Tom, Dick, and Harry comes in and invokes
19    your power for a garden-variety state palimony, business
20    palimony lawsuit, then the power of this Court will be
21    dissipated.  That's the principle --
22         THE COURT:  And Mr. Rivero, thank you.  I appreciate
23    the recognition of the importance of the work that we do here
24    in the federal court.  But in focusing on the factual attack
25    and the evidence that you've asked the Court to consider, your
```

```
 1   client signed a contract, at 83-3 in the record, stating that

 2   Dave owned legal title to one hundred percent of W&K.  And then

 3   at 83-5 there's another contract where your client states the

 4   vendor, that was the vendor who he was suing, is the owner of

 5   all issued shares in W&K.

 6            MR. RIVERO:  Judge, I won't pull it out, since you

 7   have it in front of you and you're clearly aware of this

 8   record.  But the Court's also aware that in one or the other

 9   Dr. Wright says that he holds 50 percent of those shares in

10   trust --

11            THE COURT:  That was another sworn statement.

12            MR. RIVERO:  That's right.

13            THE COURT:  In his affidavit, where he states that

14   he's a 50 percent owner.

15            MR. RIVERO:  No.  I think it's in one of the two

16   contracts, but I don't want to quibble with the Court.  There

17   is a -- in one of the two contracts you just referred to --

18            THE COURT:  So in the Australian court he made a

19   representation that he was a 50 percent owner?

20            MR. RIVERO:  No.  That his 50 percent interest was

21   held in trust by Kleiman, who had a hundred percent.  Which is

22   the equivalent of saying:  "I have 50.  He's holding it for me

23   in trust."

24            Judge, I get that there are a number of different

25   statements by Dr. Wright.
```

1           THE COURT:  But you can't ask the Court to ignore your

2     client's statements that were made at specific times during the

3     course of his relationship, both when Mr. Kleiman was alive and

4     then following his death.

5           MR. RIVERO:  Judge, what I'm asking the Court to do is

6     to address -- is to go to the question that we've presented

7     which is:  Is your authority improperly invoked?  And that on a

8     facial basis -- I could demonstrate to you why that's all over

9     the place.

10          THE COURT:  Is this the extent of the evidence with

11    regard to his ex-wife Lynn Wright?

12          MR. RIVERO:  Judge, as to Lynn Wright, it may be.  But

13    let me -- let me -- I can tell you there's other evidence, and

14    we have a case we've cited that's important, which is In Re:

15    Williams, Eastern District of Virginia, which says that in

16    determining membership in the LLCs, the Court should look at

17    the acts and conduct of persons who are involved in the company

18    and that those acts and conduct are extrinsic evidence of the

19    membership of the LLC.  It's cited in our papers.

20          And Judge, there are other acts that -- in that case

21    they talk about acts and conduct like serving as an officer of

22    the company of the LLC, signing papers for the LLC, paying fees

23    for the LLC, doing acts for the LLC.  It is plain after this

24    initial time period, where I've presented to the Court evidence

25    about Lynn Wright's -- the evidence of Lynn Wright being a

1    member, that in 2014, Uyen Nguyen -- Your Honor, that's spelled

2    U-Y-E-N N-G-U-Y-E-N.  I've learned a lot more about Vietnamese

3    pronunciation than I knew before this case.

4         When Uyen Nguyen reinstates this company and puts

5    herself down as a manager, and then in the following years she

6    and Coin Party Exchange pay the annual fees for the

7    reinstatement, and Coin Party Exchange is listed as a director,

8    when all that happens, Judge, that is extrinsic evidence of

9    their being members at that point in time of W&K Info --

10        THE COURT:  And I just want to make sure, Mr. Rivero.

11   So we are now leaving Lynn Wright and we are going to Uyen

12   Nguyen and Coin Exchange.  Is there any further evidence and

13   acts and conduct of Lynn Wright that the Court should consider?

14        MR. RIVERO:  Judge, at this point, I don't believe

15   that I have -- if it occurs to me, of course, I will bring it

16   up as we go because there is a lot of detail and it might be

17   addressed in our papers.

18        But Judge, I do want to say this:  The extrinsic --

19   pardon me.  Between the testimony and then the contemporaneous

20   documents which show Dave Kleiman directing a question to both

21   Lynn Wright and Craig Wright, about:  "Should I list you as

22   manager or manager-member," is independent evidence that

23   Kleiman was viewing them as -- either foreigner -- as a member.

24   And so, Judge, what I want to say is on the question of Lynn

25   Wright and that initial outset, we've met our obligation to put

1    this in play.  Even if the Court discredits Craig Wright's

2    testimony, there is separate contemporaneous written evidence

3    that's not challenged.

4         That said, Judge, the other conduct that I'm talking

5    about under the case law is extrinsic evidence of membership by

6    that person and that entity.  That, too, would meet the initial

7    burden, but I would really go a different way, Judge.  Because

8    I get it that the Court's asking me:  Do you put this in play?

9    I'm now giving the Court two kinds of evidence.

10        By the way, their challenge is to Uyen Nguyen's

11   statements.  I get that.  But I'm not talking about -- this is

12   public filings with the State of Florida, as I think the Court

13   is aware.  But if the Court wants me to -- it's in our papers.

14   Judge, I'm talking about the 2014 reinstatement that's filed

15   with the Department of State, that's signed electronically by

16   Uyen Nguyen, and nobody's challenging that that was done and

17   that that was Uyen Nguyen.  They say it was under the control

18   of Craig Wright.  That's fine.  But the point is:  For the

19   purpose of extrinsic evidence, as we see in In Re:  Williams,

20   you've got Uyen Nguyen acting for W&K, listing herself as an

21   executive at W&K.  In the following year, the annual report

22   shows Coin Party Exchange -- Coin Exchange PTY -- pardon me,

23   Judge -- listing itself as a officer.  Between the two of them,

24   paying fees for the company.  These are all the indicia that In

25   Re:  Williams talks about as extrinsic evidence in the acts and

1   conduct of persons affiliated with a company to demonstrate

2   membership.

3          By the way, Judge, I think there's something important

4   here as I get to this because what I -- my ultimate -- sort of

5   the punchline to all this is if you put all that evidence

6   together -- even the parts -- like the testimony of Wright, if

7   you completely discredit it, that evidence is something about

8   the membership of W&K.  We're not required to come to

9   preponderance.  They don't have any evidence besides that

10  initial Article of Incorporation.  They've pointed to nothing,

11  except here's the initial Article of Organization and liar,

12  liar, pants on fire.  That's the entire set of evidence that

13  they have ever referred to.

14         And my point is, Judge, you cannot beat something with

15  nothing.  Because the Articles of Organization do not and

16  cannot legally block out the entire membership because that's

17  not what the form does.  So you don't have a hundred percent.

18  It doesn't say he's the sole owner.  It doesn't say he's the

19  hundred percent owner.

20         Judge, on the factual side, there's an important

21  consideration here -- and I do want to, if the Court will

22  permit me to dovetail back.  Because my -- at bottom, the

23  factual analysis is, Judge, we do put evidence in, evidence in,

24  to make the factual attack in both places, as to Lynn Wright

25  and as to the other two.  Once we put evidence in, then the

1    question is:  Do they have evidence superior to that so they

2    get to the 51 percent, the preponderance?

3          And Judge, I think that's the principal question for

4    the other side:  Do you have anything besides the Articles of

5    Incorporation -- of Organization?

6          THE COURT:  All right.  And we've spoken of Lynn

7    Wright.  Are we now moving to Uyen Nguyen?

8          MR. RIVERO:  Yes.  Judge, Uyen Nguyen -- I think I've

9    also addressed Uyen Nguyen.

10         THE COURT:  Have you addressed Uyen Nguyen other than

11   the Articles of Incorporation where she lists herself as a

12   director, as well as a -- I believe a manager and secretary?

13         MR. RIVERO:  Well, Judge, first of all, let me say I'm

14   not going to make too much of that detail, but --

15         THE COURT:  Well, you stated that that document is not

16   in dispute.  So the Court can rely upon the statements made in

17   that filing.  And in fact, in 2014, she lists herself as a

18   manager and secretary.  And in 2015 she lists herself as a

19   manager and secretary.

20         So should the Court rely upon that statement, that

21   she's the manager and secretary?

22         MR. RIVERO:  Well, Judge, I think the way to analyze

23   this evidence is that under the In Re:  Williams case, which is

24   the authority that we found -- I haven't seen anything cited by

25   the other side 455 B.R. 485, the acts and conduct of persons

1    associated with the LLC are extrinsic evidence of the

2    membership.

3        And yes, Judge, the fact that the listing as an

4    officer or as a person involved -- now, Judge, there's an

5    ambiguity, though.  And let me be clear.  We characterized last

6    year M and S to mean member -- I'm sorry -- pardon me --

7    manager and secretary.  But I want to tell the Court, as we've

8    dug into this the State's approach to use of abbreviations is,

9    frankly, shoddy.  And the instructions tell you at the

10   beginning that the -- basically, they say the abbreviations

11   aren't the limit -- the abbreviations they list aren't the

12   limit and you can use other ones.

13       But Judge, for the purpose of this discussion, we can

14   think of "M" as manager.  But I just want to suggest to the

15   Court the way the State sets this up there's an ambiguity and

16   it could also mean member.  Secretary could mean secretary -- I

17   mean, S could mean secretary.  I can't think of anything else

18   it would mean.  But that's not limited by the definitions by

19   the State.  The State doesn't tell you to use "M" for manager.

20   In fact, the State tells you to use "MGR" for manager.  So

21   there's some ambiguity here.

22       She used "M" and she used "S."  I'm supposing she

23   didn't mean "Ms.", Judge, but --

24       THE COURT:  And Coin Exchange was listed as DR.

25       MR. RIVERO:  DR, Judge.  And there's no --

```
 1              THE COURT:  Is that director?
 2              MR. RIVERO:  Well, Judge, again, I think you've got to
 3    draw -- these are factual -- all I'm trying to say is now
 4    you're in the role of fact finder.  "DR," in logic, I can't see
 5    what else it would be.  I'm just saying that there's -- as to
 6    "M," there's an ambiguity because the instructions tell you
 7    that if it's manager you're supposed to say:  "MGR."  And they
 8    say that the abbreviations aren't complete.
 9              But that's not even my point, really.  My point is
10    this:  If you're looking at extrinsic evidence of conduct, yes,
11    this listing in and of itself is extrinsic evidence.  It's acts
12    and conduct by Nguyen saying that if she meant manager that
13    she's an officer of the company.  And that's one of the kinds
14    of acts and conduct that's extrinsic evidence of membership.
15              THE COURT:  But a manager or director of an LLC is
16    different than a member.
17              MR. RIVERO:  That's right, Judge.  But again,
18    remember, these forms don't tell you:  "List members."  So what
19    Williams teaches is what you look at when you try to figure out
20    membership, when it's unclear -- and remember, a number of
21    courts -- Judge Spaulding has said this very clearly.  It's
22    difficult to determine membership in a Florida LLC because of
23    these limitations of the way the State works.
24              The fact that she holds herself out as an officer, the
25    fact that Coin Exchange PTY holds itself out as an officer, is
```

1    an act that is extrinsic evidence of actual membership.

2            Similarly, Judge, filing the papers, which Nguyen did,

3    or somebody purporting to be Nguyen did, that's also an act of

4    extrinsic evidence conduct, which tends to show membership.

5    Paying the annual fee in 2015.  So there's a filing in 2014.

6    Then there's a filing in 2015 with the same titles.  So you

7    repeat the conduct.  Now there's a payment of the fees.

8            THE COURT:  But couldn't a payment be made by a

9    director or a manager?

10           MR. RIVERO:  But the point is that the case law says,

11   when you can't determine membership, you can look to the acts

12   and conduct as extrinsic evidence.  And one of the acts

13   Williams says specifically that you look at is whether the

14   person signed on behalf of the LLP, whether it paid taxes and

15   fees, whether it held him or herself out as an officer.  Those

16   are all -- and there's a number of others.  Those are all facts

17   that the Court can take into account.

18           Now, Judge, you're the fact finder.  You could

19   ultimately determine that they don't weigh much.  I get that.

20   But the point is they are facts.  There is case law that this

21   is how you go about determining it.  And all these facts go

22   towards the membership of Nguyen and Coin Exchange.

23           But Judge, I ask you to use the same framework of

24   analysis on the party whose burden it is, once we put this in

25   play with some facts and evidence to show by a preponderance.

1    Where is it that they show anyone else besides these foreigners

2    paying for fees?  Where is it that they show anyone else

3    besides these foreigners -- every single person we're talking

4    about, Lynn Wright, Craig Wright, Uyen Nguyen and Coin Exchange

5    is a foreigner, every single one.  Where is it that they show

6    anyone else besides a foreigner paying a fee?  Where is it that

7    they show anyone else besides a foreigner filing a document?

8    I'm not talking about Ira Kleiman.  Where is it that they show

9    anyone other than a foreigner holding themselves out as a

10    manager after David Kleiman's death all the way up to the

11    filing of this Complaint?

12         And Judge -- this is an important fact, too, Judge.  I

13    appreciate the Court is holding me very strictly to my proofs

14    and questions of credibility.

15         THE COURT:  Well, I'm merely asking about the evidence

16    that was submitted to the Court.  And I recognize, now that we

17    are addressing Uyen Nguyen, that you did withdraw Exhibit A

18    because there was a question with regard to when it was

19    prepared.  But are you questioning the authenticity of the

20    email that was authored on the same date, December 20th, 2012,

21    that is attached to your filings 144-6?

22         MR. RIVERO:  Is this F, Judge?

23         THE COURT:  This is from Dave Kleiman to Uyen Nguyen

24    on December 20th, 2012, in your filings, Docket Entry 144-6.

25    Where he states:  "Uyen, I'm glad you will accept being a

```
1    director of W&K."

2              MR. RIVERO:  Judge, we are not relying on that.

3              THE COURT:  Well, you didn't withdraw it.

4              MR. RIVERO:  Right.

5              THE COURT:  So should the Court consider it?

6              MR. RIVERO:  We're not relying on it under these

7    circumstances because last night we learned that their expert

8    is challenging that document.  So Judge, for this purpose, I

9    would withdraw it now.

10             But the point is I haven't referenced it yet, and we

11   don't need to rely on that.  Because again, the extrinsic --

12   all that would do would be another data point of what we have

13   multiple data points on, which is Uyen Nguyen holding herself

14   out as, acting as, an officer.  So that's all that would do.

15             THE COURT:  Let me ask:  Just out of curiosity -- I

16   understand you're withdrawing the documents, but these emails,

17   regardless of the date, were sent to Uyen Nguyen by

18   Mr. Kleiman.  How is it that your client has possession of

19   these documents?  Your client produced these as part of

20   discovery.

21             MR. RIVERO:  Judge, that is a subject that -- and is

22   still -- Dr. Wright has just testified about these issues

23   before Judge Reinhart.  And those are ultimately questions of

24   credibility and fact that either Judge Reinhart or this Court

25   will determine.  But I don't have an answer.  My expert says,
```

1    though, Judge, on that question --

2           THE COURT:  Well, these were given to you by your

3    client, weren't they?  They are Defense exhibits.

4           MR. RIVERO:  Can I consult about that, because

5    again --

6           THE COURT:  Specifically the December 20th, 2012

7    email.

8           MR. RIVERO:  May I have one moment, Judge?

9           Thank you.

10      (Pause in proceedings.)

11          MR. RIVERO:  Judge, so in answer to your question, we

12   obtained them from my client.  But my client's also testified

13   that the documents produced included records of companies that

14   he received -- that he obtained when he left Australia.  And in

15   fact, I've seen those, Judge.  He has boxes of corporate

16   documents.

17          He's testified before Judge Reinhart -- and Judge,

18   this is way outside what I think is necessary for this -- that

19   there were persons who were opposed to what he was doing, who

20   have falsified documents, and that he is not aware of what

21   happened here.

22          But here's the point, Judge, my expert also has

23   innocent explanations for the questions about the PGP

24   signature, which is what's being raised by their expert.  But

25   that's not the issue for this hearing.

1          THE COURT:  Well, it was the issue because you didn't

2     withdraw this document.  So the Court can certainly rely on

3     what's expressed.  But if you are now questioning the

4     authenticity of the email, then --

5          MR. RIVERO:  Judge, I haven't argued it and I choose

6     not to rely on it because I don't want to go off to a side

7     issue, which isn't the core question of whether they can meet

8     their burden first to allege that there's completely diverse

9     citizenship and no alien citizen in W&K.  And second, prove it.

10          Judge, if the Court would indulge -- and I know you've

11     given me a lot of time -- I would like to take a few moments to

12     show the Court why it's important that they can't prove it and

13     why -- we didn't draw their Complaint.  We're not the ones who

14     chose to insert W&K into this thing.  They did.  And they chose

15     that difficult burden of establishing complete diversity, which

16     requires them to allege the complete membership and then the

17     citizenship of each member, Judge.

18          And the reason is, Judge, if we look -- so on the

19     facts, I'm not avoiding the facts.  I've already stated a

20     series of facts that are evidence of Lynn Wright being a member

21     at the outset and Uyen Nguyen and Coin Exchange acting in a

22     fashion that, as a matter of evidence, would tend to establish

23     them as being members.

24          And on the factual attack, I do just want to say --

25     Judge, this is the key point, is once I put that in play, then

1   you have to weigh:  "Okay.  What do they have?"  And other than

2   the Articles of Incorporation and inconsistencies in my

3   client's statements -- and by the way, inconsistencies, Judge,

4   don't establish who the members were.  It just establishes

5   whether or not you weigh my client's statements.  Because Craig

6   Wright never says anybody except Lynn Wright or Dave Kleiman or

7   himself.  If it's Lynn Wright or Craig Wright, there's an

8   alienage problem, Judge.

9           But why do we get into this in the first place?

10  Judge, as you'll recall, the way this case is alleged is -- in

11  the Second Amended Complaint is that W&K's obviously alleged as

12  a Defendant.  They allege the parties are completely diverse.

13  And then, Judge, they say -- those are Paragraphs 2 and 4 --

14  they say -- this is what this case is about:  "Further, Dave,

15  in partnership with Craig, created intellectual property both

16  in his individual capacity and through W&K."

17          And then they also say:  "From February 2011, Craig

18  and Dave conducted their Bitcoin mining activities and

19  intellectual property research and development through W&K."

20  And here's the point, Judge:  The reason they alleged this in

21  the fist place was the case was originally stated as a claim by

22  Ira Kleiman against Craig Wright without any federal question

23  where there would be diversity.  But they allege that, starting

24  in February of 2011, the activities were a partnership that

25  Craig Wright and Dave Kleiman had in W&K.

1    When we pointed out, in our initial motion to dismiss,

2    that without W&K there was a missing necessary party, six days

3    later -- first thing they did was withdraw their Complaint.

4    And six days later, Ira Kleiman ran to the Department of State

5    and reinstated W&K and listed himself as MGRM.  That's a fact

6    of -- that's a fact, Judge.

7    By the way, Judge, in terms of a good-faith basis,

8    where is the evidence between the death of David Kleiman all

9    the way until the reinstatement of the estate -- and in 2015,

10   there was -- Kleiman had himself recognized as the personal

11   representative.  There's no activity by -- David Kleiman's

12   passed away -- or by Ira Kleiman to act as a member of W&K.  If

13   David Kleiman was the only member, this company passed its 90

14   days and would have been dissolved and disappeared in that time

15   period.

16   Why does he go running to the Secretary of State 60

17   days -- I'm sorry -- six days after a motion to dismiss?

18   Because he needs to reestablish W&K to get himself as the

19   member of W&K, to state he's the sole member of W&K, to

20   establish diversity, to be able to allege that to this Court.

21   And there's case law in Castillo and elsewhere about doing

22   that, Judge, and that's a matter of record and a fact.

23   And even with that, they say after he's acted as

24   though he were the hundred percent owner, Judge, after Ira

25   Kleiman has sworn to State of Florida that he has the authority

```
 1    to act as a sole owner, he tells this Court that the exact

 2    ownership is unclear.  And he tells this Court at other places

 3    that Craig Wright could be the 50/50 owner, Judge.  As I can

 4    show you at Paragraph 139, Your Honor.

 5           So Judge, in terms of -- so let me just show the Court

 6    that.  This is after a time where to exert the authority as a

 7    hundred percent member -- I'm sorry -- to reinstate on his own

 8    authority, there can't be a 50/50 deadlock.  There cannot be a

 9    50/50 deadlock.  He has to be a hundred percent owner.  He

10    swears to Florida he's the hundred percent member.  But he

11    tells this Court -- within 20 days, he says as best can be

12    presently discerned Dave was a sole owner.  I'm sorry, Judge.

13    But then at Paragraph 72, regardless of his exact ownership

14    structure.  And the page before he says, as you've seen, that

15    he doesn't know the exact ownership structure.

16           But then later in the same pleading he says, Judge --

17    at Page 193, he says:  "In the alternative, just as the

18    shareholders of a closely held corporation have

19    partnership-like fiduciary duties to each other, Craig and Dave

20    acted as partners in the management and operation of W&K."

21    Well, under the operation of Florida law, that would make Craig

22    a partner if he acted as and operated it, and he would be a

23    member.  But to go ahead and put icing on the cake, they say,

24    at 194:  "In the alternative, if Craig was an actual member in

25    W&K."  So they plead in the alternative that he was.
```

1          Judge, I understand all the credibility issues -- and

2    the Court has raised a lot of them this morning -- as to

3    Mr. Wright.  What about the credibility of the Plaintiff who

4    goes to the State and swears that he's a hundred percent owner

5    six days after he realizes that he needs W&K as an

6    indispensable party?  And then within three weeks comes to this

7    Court and makes a pleading under Rule 11 that says at one

8    place: "Maybe he's a sole owner.  Maybe Craig is a 50 percent

9    owner."  We can't tell for sure.  If Craig's a 50 percent

10   owner, how can I reclaim and swear that he has the ability to

11   instate himself as a member?  Because a 50/50 deadlock would

12   prevent him doing that, Judge.

13          But the whole point here, Judge -- by the way, this is

14   a claim for Bitcoin and for intellectual property.  The claim

15   for David Kleiman's Bitcoin, if there was any -- and that's not

16   proven -- Judge, lays properly -- that's a theft that would

17   lie -- the Court knows this.  There's no federal -- the federal

18   question of jurisdiction would lay in the state court.  And in

19   fact, Ira Kleiman knows that because he brought a claim for the

20   very same Bitcoin, Judge, against two people who are foreign

21   partners of David Kleiman, Patrick Paige and Carter Conrad, in

22   Palm Beach state court, and he claimed the selfsame Bitcoin

23   wallets that he's now claiming against Dr. Wright.

24          THE COURT:  Those were recovery of a similar relief,

25   but it wasn't the same cause of action.

```
 1            MR. RIVERO:  Judge, I believe David Kleiman --
 2            THE COURT:  In fact, the Complaint that was filed with
 3       the Court shows that it was an entirely different cause of
 4       action.
 5            MR. RIVERO:  I don't believe that's true, Judge.  The
 6       issue is -- in this case, the issue as alleged -- and it's very
 7       important that we talk about that because I've sort of done
 8       this backwards.  What is this claim?  What Ira Kleiman is
 9       saying at this point is that his brother, who he had no
10       knowledge of -- and I can show you that evidence we've
11       submitted -- who he didn't see, he saw once from 2009 until his
12       death, even though he lived within a half a mile.  So he
13       doesn't have personal knowledge anyway.  He's saying that
14       there's an unwritten agreement between 2009 and 2011 that
15       Wright and Kleiman would split everything, that even though --
16       that 50/50.  And then there's an unwritten agreement -- because
17       there's no operating agreement for W&K from February 2011 until
18       Dave Kleiman's death -- there's an unwritten agreement that it
19       would be 50/50.
20            This, Judge, reminds me -- I've often called the kind
21       of work I do business divorce and business paternity.  This
22       isn't a divorce.  This is a palimony suit.  What they are
23       saying is that because of whatever supposed agreement there was
24       between them, which isn't written down, 50 percent of what
25       Craig Wright has is, in fact, Dave Kleiman's.
```

```
 1              And what they're saying, though, over on -- what they
 2      said as to Paige and Carter was Paige and Carter had the
 3      Bitcoin wallets of Kleiman.  In other words, they didn't
 4      say there:  "Oh, and we also believe Craig Wright had the
 5      Bitcoin of Dave Kleiman."  It's only one set of Bitcoin, Judge.
 6              So I'm not sure -- when the Court is saying different
 7      causes of actions, they're saying there -- I can show you the
 8      paragraph, Judge --
 9              THE COURT:  I have the First Amended Complaint before
10      the Court, the action against Computer Forensics and Mr. Conrad
11      and Mr. Paige.
12              But I think that's somewhat beside the point.  In
13      terms of the relief, certainly.  But there's a claim that there
14      was an operating agreement that allowed Mr. Kleiman as the
15      personal representative to seek relief against that company and
16      those two gentlemen.  But I think it's separate and apart from
17      why we're here, and that is to determine if, in fact, there is
18      diversity jurisdiction.
19              And I believe, since you have the burden of
20      production, we have now spoken of Ms. Wright.  We've spoken of
21      Uyen Nguyen.  We've spoken of Coin Exchange.  Are there any
22      other aliens that you want to bring to the Court's attention?
23              Of course Mr. Wright, which it's a little unclear from
24      his testimony whether he is or is not a member.  Although he
25      would be in the best position to know that.
```

1          MR. RIVERO:  Judge, if you'll permit me, I just wanted

2    to point to this one line in the claim that Ira Kleiman makes

3    over there against Carter Paige.  He says David Kleiman created

4    and maintained Bitcoin wallets, which were his personal

5    property during the time he was a member.  He's claiming for

6    the selfsame Bitcoin and wallets where they're held here.  So

7    it's not different property.

8          Judge, I believe I have covered all of the evidence

9    that we have as to anyone's membership.  But I think the Court

10   has just said something important.  The only evidence there is

11   as to membership is that Kleiman was the manager member in the

12   first filing.  And then the evidence that I've pointed to of

13   Lynn Wright, both direct testimony, subject to the issues the

14   Court has raised, plus contemporaneous documentation that

15   looked as though she or her then-husband are being asked:

16   "Should you be listed as a manager/member," and then the acts

17   and conduct of Uyen Nguyen and Coin Exchange.

18         But here's the critical point:  In all this sort of

19   palimony claim, there isn't -- other than David Kleiman, there

20   isn't an American citizen in the entire lot.  Every single

21   person is a foreigner.  And Judge, that's the issue.  This

22   Court has jurisdiction here not under federal question, only on

23   diversity.  And if the Court is to exercise its awesome power

24   under diversity citizenship, then the Plaintiff has to show you

25   that Dave -- the only way they do is to show you that Dave

1   Kleiman was the sole member.  And they don't have any evidence

2   that he was a sole member.  The only evidence they have is that

3   he was the managing member at the outset, and they don't have

4   other evidence that would outweigh however the judge -- the

5   Court lessens the weight, the other evidence, Judge.

6           The only thing they have to do is to say that Wright

7   is not credible.  But Judge, they can't have it every way.  If

8   Wright is the partner, there's not diversity.  If Wright's

9   lying that he's not the partner, then they don't have

10  diversity.  If Wright's lying that -- about all these things,

11  you can't -- he's either not credible for all purposes,

12  Judge -- so then that doesn't outweigh his testimony on the

13  other side.  But we have other evidence.

14          At the end of the day, Judge, they had to allege the

15  complete membership and the citizenship being US.  And they

16  have to prove that by preponderance once it's in play.  We've

17  put it in play, Judge.  They can't do it.  This case ought not

18  to be here.  And I'm glad to talk about supplemental

19  jurisdiction, but I think the Court is aware -- and if the

20  Court wants to talk about supplemental jurisdiction, I'm glad

21  to.

22          But Judge, that is -- it comes down to that.  You

23  can't beat something with nothing.  No matter how much you

24  devalue the statements of Wright, there is other evidence.  And

25  if you devalue the statements of Wright to zero, then you can't

1    give it weight when he says the Kleiman is the sole owner.

2    He's either not credible for all purposes -- he can't be

3    credible when it adds to their side and not credible when it

4    adds to my side.

5           If his testimony is worthless for me, Judge, it's

6    worthless for them.  And if they don't have that, they don't

7    have anything besides the Articles of Organization.  And the

8    Articles of Organization doesn't permit them under Rule 11 to

9    allege -- they have now said they would amend -- doesn't permit

10   them under Rule 11 to say Kleiman was the only member because

11   it doesn't prove that in any way.  Ira Kleiman has said he

12   doesn't know.  And they don't have evidence to outweigh the

13   acts and conduct of Uyen Nguyen and Coin Exchange or to

14   outweigh the contemporaneous evidence of what Dave Kleiman

15   thought about the subject when he asks Craig Wright and Lynn

16   Wright:  "Should I list you as a manager or a manager-member?"

17          Judge, I don't know if you have other questions, but I

18   think I've addressed the points that we have to make.

19          THE COURT:  Thank you.

20          MR. RIVERO:  Thank you, Judge.

21          MR. FREEDMAN:  Your Honor, if I may, one procedural

22   issue and one just semi-substantive, which is just noting for

23   the record that the West Palm Beach Complaint, besides saying

24   that it's only to the extent they had Bitcoin, was abandoned by

25   Mr. Kleiman shortly after it was filed and has been dismissed

1    by the State court for lack of prosecution.

2            On a procedural level, if it would be possible, could

3    we just take a two-minute break?  I would just love to run to

4    the restroom and --

5            THE COURT:  Yes.  Of course.  Of course.

6            Let's go ahead and take a five-minute recess.

7            MR. FREEDMAN:  Thank you.

8        (Recess from 10:15 a.m. to 10:26 a.m.)

9            MR. FREEDMAN:  Thank you, Your Honor, for the break.

10           THE COURT:  Mr. Freedman, before we proceed, if you

11   can answer the question for me -- and that is:  Why did your

12   client, Ira Kleiman, remove Ms. Uyen Nguyen as Coin Exchange

13   and replace himself on April 12th, 2018?

14           MR. FREEDMAN:  Sure.

15           So Your Honor, Defendants initially challenged the

16   ability to proceed with the lawsuit without W&K.  And while

17   Plaintiffs didn't agree that that was, in fact, the case, they

18   thought, instead of quarreling over it, Ira Kleiman was the

19   properly appointed personal representative of the Estate of

20   Dave Kleiman.  Dave Kleiman was the sole member of W&K Info

21   Defense Research.  I understand that's now in dispute.  And

22   that the easiest way to do it would be just to reinstate W&K

23   that had been administratively dissolved.

24           It has been Plaintiff's entire theory of this case,

25   and Plaintiffs have shown it by exposing various documents and

52

1   forgeries, that there was a collusion of fraud between Ms. Uyen

2   Nguyen and Craig Wright, that Craig Wright had proceedings

3   going on in front of the Australian Tax Office, which he needed

4   to justify certain tax rebates that he had taken by drudging

5   out his work in W&K and Dave Kleiman.  And that in order to

6   protect against anything that the Australian Tax Officer, the

7   ATO, would come for, he had Uyen Nguyen reach out into Florida

8   and fraudulently reinstate W&K.  And so those are fraudulently

9   done.

10          There's zero evidence and credible evidence,

11  non-forged evidence, showing that Uyen Nguyen had any authority

12  to act on behalf of W&K.  And so when Ira reinstated W&K, he

13  listed himself in his capacity as personal representative as

14  the managing member of W&K.

15          THE COURT:  And is Mr. Rivero correct that the only

16  evidence that supports that Mr. Kleiman was W&K's sole member

17  is the Articles of Incorporation where he lists himself solely

18  as the manager and member?

19          MR. FREEDMAN:  No, Your Honor.

20          Obviously, that is the crown jewel of the evidence, so

21  to speak, which is -- and we can go through this a little bit

22  in more detail, but Mr. Rivero just showed an email exchange

23  between Craig and Dave Kleiman.  I know that Defendant is

24  arguing that it was between Lynn Wright and Dave Kleiman.

25  That's just patently untrue by looking at the face of the

1    document, and I'll go through that in a minute -- where Dave

2    suggests listing him as a manager or managing member.  And then

3    ultimately there was a decision not to list him as a managing

4    member or a member and Dave listed himself as the managing

5    member.  And then --

6         THE COURT:  I'm sorry.  When you say that ultimately

7    there was a decision, is that reflected in a email or just by

8    the act of listing only Mr. Kleiman?

9         MR. FREEDMAN:  Well, in the act of only listing

10   Mr. Kleiman, as well as in, you know, Craig's sworn statements

11   to the Court that he is not a member of W&K and has never been

12   a member of W&K; his signing of contracts, which, yes,

13   Plaintiffs claim are fraudulent, but yet Dr. Wright testified

14   that it is his signature on the contract where he states that

15   Dave Kleiman was the one hundred percent owner of legal title

16   to W&K.

17        And so if you give me one moment -- and then

18   historically, if you look at Craig's historic declarations,

19   while they are all over the place on the ownership, one

20   thing -- there is one clear pattern, which is it's either Dave

21   Kleiman with Craig Wright in some capacity or the other.  There

22   is never a prior declaration, sworn statement, or anything

23   identifying an additional owner -- or member, rather, of W&K

24   besides Dave Kleiman and Craig Wright.

25        And so, when you take a look overall at all of Craig's

```
 1    evidence, it shows that it was either Dave Kleiman alone, with

 2    Craig having some kind of beneficial interest, or Dave Kleiman

 3    alone and Craig owning 50 percent.  And what we say is -- and

 4    we've laid this out in the Complaint -- that clearly what had

 5    happened was there was an original agreement of some kind where

 6    there was some economic interest -- not a membership interest,

 7    but some kind of economic interest that Craig had in W&K.  That

 8    is why -- we'll get to this in a minute.  But that's why

 9    Plaintiffs say the exact ownership structure is unclear.  Not

10    the membership was unclear, the ownership structure was

11    unclear.  Because there was some kind of gentleman's agreement

12    or something where Craig had some interest in it.

13              But he was never a legal member of W&K.  And when he

14    swore to this Court that he was not, and is not, a member of

15    W&K, he has disclaimed any interest.  And at his deposition he

16    testified that he is not the owner in any way, shape, or form.

17              And so the evidence tends -- I guess, to sum it up,

18    the evidence is the Articles of Incorporation list Dave Kleiman

19    as the sole managing member.  Craig has signed a document -- a

20    contract stating that Dave Kleiman is the one hundred percent

21    legal owner.  And Craig's historic testimony shows that the

22    only potential members of W&K are Dave and himself, and he has

23    unequivocally taken himself out of that equation currently,

24    whether historically it was true or not, by swearing to this

25    Court in 2018 that he was not a member of W&K, which leaves
```

1    only Dave Kleiman to be the sole member of W&K.

2          So I guess that would be our evidence, so to speak,

3    but --

4          THE COURT:  I understand the evidence.  That's with

5    regard to Craig Wright.  But there are three other aliens that

6    the Defendant has put forth by way of its production.  And that

7    is Uyen Nguyen, Lynn Wright, and Coin Exchange.  So if you can

8    address the evidence and documents and other testimony that may

9    support the Plaintiff's claim in this factual attack.

10         MR. FREEDMAN:  Absolutely.

11         I think the first thing to keep in mind is something

12    the Court touched on previously.  The presumption in a factual

13    attack is not for either party.  It's -- the Eleventh Circuit

14    and the Roe decision has characterized Plaintiff's burden as

15    not an onerous burden, but rather to prove more likely than not

16    Plaintiffs have identified the proper owners.

17         In making this determination, the Eleventh Circuit has

18    said, again, in the Roe case that the Court should use its

19    judicial experience and common sense.  And the Pretka and

20    Patterson decisions from the Eleventh Circuit also make it

21    clear that Plaintiffs do not have to prove diversity beyond --

22    jurisdiction beyond all doubt or to banish all uncertainty.

23    It's a preponderance of the evidence standard.

24         But before we even get to that standard, and the Court

25    touched on this earlier, that Kleiman has a burden of

1    production.  That's from the RG Martin case from this Court

2    where the Court said:  "If jurisdiction is properly challenged,

3    then Plaintiffs bear the burden of proof.

4          And Judge Altonaga, in the JPMCC case, really drilled

5    down on this more.  And that's 2010 Westlaw 11452084.  And in

6    the JPMCC case, Judge Altonaga held that a Plaintiff's burden

7    to prove diversity is only triggered if the Defendant has shown

8    evidence of a lack of diversity.  And that when the factual

9    attack is -- and I quote -- devoid of evidentiary support

10   because the attack fails to provide -- and again quoting --

11   credible evidence, then the attack is not well-taken and the

12   attack fails.

13         So it is Plaintiff's position that Dr. Wright has

14   failed to provide any credible evidence.  His attack is devoid

15   of any evidentiary support and therefore there isn't even a

16   burden on Plaintiffs to show a preponderance because he has not

17   made a successful factual attack.

18         I'm going to drill down, if I can, on some of the

19   evidence to go through why the evidence shown by Dr. Wright is

20   completely not credible or irrelevant, frankly, to the

21   proceedings in front of the Court.

22         So Craig's evidence is comprised of W&K's public

23   filings, which mention Uyen Nguyen and Coin Exchange.  There

24   are two problems with these filings.  The first is, taken on

25   their face, they show absolutely nothing about the membership

```
 1    of W&K, as opposed to directorships or managing positions.  The

 2    second is that they were fraudulently filed without

 3    authorization, they are a part of a fraud, and cannot be relied

 4    on.

 5              So to drill down on the specific documents --

 6              THE COURT:  When you say they were fraudulently filed,

 7    is there any evidence to support the fact that perhaps Uyen

 8    Nguyen did, in fact, file that document herself?

 9              MR. FREEDMAN:  I think she did.  But we have produced

10    evidence to show that Uyen Nguyen was Craig Wright's poppet

11    essentially.  So I can show the Court that -- actually, there's

12    two pieces of evidence that are relevant to this.  The first is

13    that the two emails that are the sole support for Uyen Nguyen

14    having any authority to act on behalf of W&K are the emails

15    from -- purportedly from Dave Kleiman to Uyen Nguyen.

16              We've just found out that those have both been

17    withdrawn.  And they should be withdrawn because they are

18    lawsuit forgeries and Dr. Edman has put forward evidence

19    showing that they are absolute are forgeries, which means Uyen

20    Nguyen -- there is zero evidentiary support to show that Uyen

21    Nguyen had any authority to act on behalf of W&K at all.  The

22    entire house of cards of Uyen Nguyen having authority to act on

23    behalf of W&K was pulled down when those two exhibits were

24    pulled down.

25              In addition to that -- and this is, I believe, at
```

1    Docket Entry 191-3 or 192-3, our surreply.  I think I have the

2    record wrong.  It was filed under seal, so -- but this is an

3    email from Uyen Nguyen to Ramona Watts, which is Craig Wright's

4    current spouse.  And it's an interaction between her --

5    Ms. Nguyen and Ms. Watts.  It was produced by the Defendant.

6    It's Bates labeled Defense 30089, where Ms. Nguyen --

7               COURT REPORTER:  Your mic is off.

8               MR. FREEDMAN:  Oh.  Better?

9               COURT REPORTER:  Yes.  Thank you.

10              MR. FREEDMAN:  It is interaction where Ms. Nguyen

11    tells Ms. Watts that while she was engaging with the Australian

12    Tax Office and interacting with them over their audit of Craig

13    Wright's activities, she turned -- she says here -- and there's

14    some profanity here, so I'm going to skip it -- "Yeah.  They

15    demanded to turn on the video."  And then if you go down to the

16    bottom, you can see she says:  "Yeah.  All bloody questions

17    from left to right, from above to below, from east to west.  I

18    was like:  'Oh, oh, how do you say that words?' I f-ing know

19    how to say South Arabian.  But Craig typed a bit slow, so I

20    played silly act on them to buy more time.  Ha-ha.  It was hell

21    a fun and mother of stress.  LOL."

22              This, again, is showing that Ms. Nguyen was working

23    with Craig to deceive governmental authorities, taking and

24    repeating answers that were provided to her by Craig.

25              In addition to this, Plaintiffs have also introduced

1    into the record -- and this is 159-11 -- an email exchange, one

2    of the only email exchanges between Ira Kleiman and Ms. Nguyen

3    herself.  Plaintiffs have tried to locate Ms. Nguyen and cannot

4    find her, and the Defendant claims he hasn't spoken to her

5    since 2016.  But this is back in 2014.  And you can see here

6    Ira writes to Ms. Nguyen saying:  "Hi.  Can you tell me how you

7    knew my brother?  Is there any insight you can give me to

8    better understand how Dave was involved in all this?"

9            And then Ms. Nguyen writes back:  "Hi, Ira.  I had not

10   met your brother Dave.  I knew him via Craig, as I worked with

11   Craig in some projects.  I have no insight information about

12   Dave except the day he passed away and that he was a computer

13   forensic expert.  Please let me know if there's anything I can

14   help you in.  I am in the States so it will be easier.  Uyen

15   Nguyen."

16           And then Ira wrote back where she did not respond.

17   And this is produced -- it's in the record, again, at 159-11,

18   but it's also Kleiman 4796.

19           Again, this is the only communication we have from

20   Ms. Nguyen herself stating that she actually didn't even know

21   Dave Kleiman, nothing about her acting as a director or being

22   appointed as a director.  And again, that makes sense because

23   as we have just shown -- as Dr. Edman has shown, rather -- and

24   he's here if the Court has questions -- both emails purporting

25   to appoint Ms. Nguyen were abject forgeries.  And they were

1    sent by Craig Wright to Craig Wright, then modified six minutes

2    later.  A PGP signature was placed onto them.  The text was

3    edited.  Dr. Edman's recent affidavit lays out for the Court

4    with red font the areas of the emails that were changed.  I

5    mean, they are egregious forgeries.

6           So when I say that Ms. Nguyen fraudulently filed

7    these, it's because Plaintiff's contention is -- and Plaintiffs

8    have shown substantial evidence to support it -- that Craig

9    Wright was in a dispute with the Australian Tax Office, needed

10   W&K's activities, and had his agent reach out into Florida and

11   reinstate W&K.

12          Of course, putting aside for a minute the veracity of

13   the evidence or the legitimacy or the weight of the evidence,

14   even if the Court were to accept all the evidence provided by

15   the Plaintiff about Uyen Nguyen and Coin Exchange, none of it

16   has anything to do with membership.  And membership, not

17   ownership.  And I just wanted to correct something that

18   Mr. Rivero said earlier.  You can certainly be an owner of a

19   LLC and not be a member.  There are certainly operating

20   agreements which make it that -- you know, if you transfer

21   ownership you get certain rights, but you're not a member.

22   There are certainly ways to do that.

23          But getting back to the issue, membership is the

24   barometer of diversity jurisdiction.  That's clear from the

25   Eleventh Circuit's Rolling Greens case.  And this exact mistake

1    of conflating officers/managers from members has been addressed

2    by numerous district courts, including Judge Martinez, in the

3    Silver Crown Investments case, which is 349 F.Supp 3d 1361

4    [sic] where -- and I'm going to quote:  But for purposes of

5    diversity jurisdiction, it's the citizenship of LLC's members,

6    which is italicized, not its managers, that is relevant.

7            And with that barometer in mind, the first email which

8    was withdrawn is a purported email from Dave Kleiman to Nguyen

9    appointing her as a director, not a manager.  The second is a

10   purported, again, fraudulent email -- but putting that aside

11   for a minute -- from Dave Kleiman to Uyen Nguyen, thanking her

12   for being a director.  Again, not a member.

13           The other evidence is Ira Kleiman emails to the

14   Australian Tax Office talking about Uyen Nguyen being the

15   director after Dave.  Obviously, again, putting aside the fact

16   that everything Ira was saying was coming from Craig at that

17   time, even if accepted as true, "director" is irrelevant to

18   diversity jurisdiction.

19           They also put forward the 2014 reinstatement of W&K.

20   Again, putting aside that it's a fraudulent document,

21   Ms. Nguyen identifies herself in the document as being a MS,

22   which is a manager or secretary.  Now, I'm going to profess

23   that I was not aware of this, but it was Defendant who pointed

24   this out in his own original motion to dismiss, that the

25   Florida Division of Corporations provides for definitions of

1    what these terms mean.  And I have here a copy of it.  Let me

2    just grab it for the Court.  This is -- looks like 159-3.  And

3    this is the title abbreviations supplied by the Florida

4    Division of Corporations.  And if you go down to "M," it is

5    here clearly as manager.  And "S" is secretary.

6          And then eventually Coin Exchange -- I'll get back to

7    it in a minute -- is identified "D," as director.  But again,

8    it was the Defendant who argued in the original motion to

9    dismiss that Ms. Nguyen identified herself as the manager,

10   secretary, and registered agent.  And this is a pattern with

11   Dr. Wright, where he says one thing, it's torn down, and he

12   comes back with a completely contradictory statement.

13         And so the 2014 reinstatement, again, taken on face

14   value, ignoring the fact that it's a fraud, identifies her only

15   as a manager and a secretary and registered agent, nothing

16   about membership, which, again, is the barometer of diversity

17   jurisdiction.

18         There's also a W&K 2015 annual support -- annual

19   report where Ms. Nguyen certifies that she's a manager or a

20   managing member.  This is the closest they come anywhere,

21   except, first of all, it's completely consistent with

22   Plaintiff's story that -- again putting aside the fraud -- she

23   was a manager and not a managing member.  But most importantly,

24   that 2015 annual report has her -- and I don't have -- I

25   think -- give me just one second to pull that exhibit.

```
1              THE COURT:  Are you speaking of the filing?

2              MR. FREEDMAN:  The 2015.  I believe it's filed in --

3              THE COURT:  April 22nd.

4              MR. FREEDMAN:  Yeah.  Unfortunately -- if the Court

5    has it ...

6              THE COURT:  I have it as part of Document 1-7.

7              MR. FREEDMAN:  Is that the 2015 filing?

8              THE COURT:  Yes.  The filing on April 22nd, 2015,

9    where Ms. Uyen Nguyen -- her title is MS.

10             MR. FREEDMAN:  Right.  Okay.  That's what I was going

11   to point out to the Court, which is right after her name she

12   again indicates again "MS," meaning, again, manager and

13   secretary.  So therefore, although she certifies that she's

14   either a manager or a managing member, she then indicates that

15   she is a manager and secretary in the document.

16             THE COURT:  So if I may ask that you address the

17   argument that the Defendant made in its motion with regard to

18   the Florida Revised Limited Liability Company Act, which states

19   that the only basis for disassociation is if a member grants

20   their express will to withdraw as a member and the argument

21   that Mr. Kleiman has no authority to substitute himself as a

22   managing member.

23             MR. FREEDMAN:  And this has to do with removing ...

24             THE COURT:  Removing Ms. Uyen Nguyen and Coin Exchange

25   and replacing -- and your client replacing himself.
```

1          MR. FREEDMAN:  So again, that statute has to do with

2     members of an LLC, and Ms. Nguyen, by her own admission, and

3     her own fraudulent document, states that she's a manager and a

4     secretary.  So that statute was inapplicable.  It doesn't --

5     it's not a disassociation of a member.  Again, there's zero

6     evidence that Ms. Nguyen or Coin Exchange were members of W&K.

7          And so those are the documents that are put forth to

8     support Ms. Nguyen's membership.  And as just shown, even

9     taking them at their face value, which the Court should not,

10    they show nothing about membership, which, again, the barometer

11    of diversity.

12         And then, if we jump to Coin Exchange, there's the

13    exact same problem.  The 2014 reinstatement identifies it as

14    "DR," which is, again, a director.  Again, I went through the

15    Court with -- the Florida Division of Corporation shows that it

16    is "director."  And again, it was the Defendant himself who

17    made this argument in his original motion to dismiss that Coin

18    Exchange was listed as a director.  Nothing was said about it

19    being a member or anything like that until the motion to

20    dismiss was lost.  And then, you know, there's a pivot on the

21    position.

22         The other really, really problematic issue with Coin

23    Exchange being a member is that Coin Exchange was incorporated

24    nine days before Dave Kleiman was found in an advanced state of

25    decomposition.  So Coin Exchange was -- this is 191-6 and

1    191-5, their minutes, showing that Coin Exchange was

2    established on April 17th, 2013, and Dave Kleiman was found in

3    an advanced state of decomposition on April 26th, 2013.

4          So it doesn't say exactly how long he had been dead,

5    but you know -- and I apologize because it's a little gruesome.

6    But if the Court reads through the autopsy report, it says he's

7    in an advanced state of decomposition, which means he was at

8    least dead for some time.  And then before that he had huge

9    decubitus ulcers all over himself.  We know that there were

10   coronary artery disease and hemorrhaging.  He was in no

11   position to admit members at all.

12         And under anyone's concept, he at least owned 50

13   percent of the entity.  And so they couldn't admit another

14   member without him.  So just another indicia of fraud here that

15   there is no way Dave Kleiman in that state admitted another

16   member to W&K.

17         So all the evidence put forward by the Defendant on

18   its face is -- does not show anything about W&K's membership.

19   And so the Court should, in its analysis here, find that

20   Defendant has not met its burden of production.

21         However, if the Court wanted to go further, the

22   initial email was filed by Dr. Wright.  And it wasn't until the

23   public outcry -- you know, Your Honor, the fact is this case is

24   highly watched by the media and the cryptocurrency community,

25   and they watch what's going on.  There's an interest in the

1    case for a variety of different reasons.  And the filings are

2    dissected at times by various members of the public.

3         Dr. Wright filed this email with no intention of

4    saying anything about the fact that he knew it was a forgery.

5    The public exposed it as a fraud.  And hours after the public

6    had exposed it as a fraud, and it went viral on news sites, on

7    Reddit, on Twitter, Dr. Wright withdrew the exhibit because he

8    could not verify the time frame in which it was sent.

9         Now, again, this was just another pattern of

10   Dr. Wright saying one thing and then pivoting again.  But the

11   Plaintiffs have laid out in their original motion how that

12   document really was forged.  And not only was it forged, but

13   the basis of that forgery was an email Dr. Wright sent from

14   himself to himself six minutes before he created the PDF of

15   that email.  And then, Dr. Edman has gone through how he has

16   changed the text from Craig Wright to Craig Wright to be Dave

17   Ira Kleiman to Uyen Nguyen.  And then he changed the time

18   period in which it was sent from 2014 back to December of 2012.

19        Of course, he also changed from it being from Craig

20   Wright to Craig Wright to being to Dave Kleiman.  And in so

21   doing, misspelled "Kleiman."  There's no way Dave Kleiman

22   misspelled his own name.

23        And then, of course, he dropped the PGP signature into

24   the bottom of the email, which was meant to kind of be the

25   finishing touch in the forgery because everybody knows

```
 1    encryption can't be beat, except it turns out what Dr. Wright

 2    didn't know is that PGP signatures contain hidden time stamps.

 3          And again, the Internet was the one that originally

 4    came up with this, but they demonstrated it and it was verified

 5    by Dr. Edman and sworn to in an affidavit to this Court,

 6    that -- you know, I don't understand all the science behind it.

 7    But converting hex to decimal and then identifying the right

 8    range, it gives a number, which is then converted from the

 9    amount of seconds that have passed since January 1st, 1970.

10    Turns out the PGP signature was actually created March 12th of

11    2014, almost a year after Dave Kleiman was dead, and two weeks

12    before Uyen Nguyen had to file her filings in Florida to

13    reinstate W&K.  I mean, the timing is just too coincidental.

14          And then the second email Plaintiffs have not yet had

15    Dr. Wright -- sorry -- Dr. Edman examine, which is the one

16    where Dave Kleiman says:  "Oh, thank so much for accepting the

17    directorship."  As the Court is familiar with the transcript,

18    Dr. Wright was confronted with a lot of forged evidence,

19    allegations of forgery.  Judge Reinhart has not made a

20    determination yet on that issue.

21          And as part of that analysis, we became more familiar

22    with the modus operandi of the Defendant and Dr. Edman was then

23    able to look again at Exhibit F, which is that second email

24    that says:  "Thank you for acting as a director."  And looking

25    at it, has now again submitted last night to the Court showing
```

```
1     that, in fact, that document is sourced from the original
2     forged document of Exhibit A that was withdrawn by the
3     Defendant.  It contains the same document ID, which is the
4     metadata tag that shows that these documents are revisions of
5     the same document.  And Dr. Edman again showed what was
6     changed.  The time was changed.  And it's really a powerful
7     thing to look at to see all the characters that were changed.
8     And then he changed the entire body of the email again.
9          And again, when confronted last night with the fact
10    that that email was also a forgery, the Defendant withdraws the
11    exhibit again.  It's just -- Dr. Wright just puts up whatever
12    he can.  And when it's forged, he says:  "Oh, you know, all
13    right.  I'm just going to withdraw it," or "Oh, somebody hacked
14    me," or "Oh" -- you know, some other ridiculous excuse.
15         So those two emails are really important not just
16    because they are evidence of forgery and they go to
17    credibility, but also because those two emails are the
18    foundation on which all of Uyen Nguyen's filings are premised.
19    Those are the ones that gave her authority to act for W&K.  But
20    those are forgeries, which means there is zero evidence to show
21    Uyen Nguyen had any authority to act for W&K at all.  And she
22    didn't.  It was a complete forgery and a fraud.
23         And that brings me to Ms. Lynn Wright.
24         THE COURT:  And if I could just stay with Uyen Nguyen.
25         So the only record evidence with regard to any
```

1     statements made by Ms. Uyen Nguyen that the Court can rely upon

2     are the texts between Ms. Nguyen and Ramona Watts following her

3     testimony given in the Australian -- following the Australian

4     judgment by the ATO, when the investigation arose.  That would

5     be the first piece.  And the second is the response to Ira

6     Kleiman when he reached out to her by email and she stated she

7     didn't know Dave Kleiman.

8           MR. FREEDMAN:  Correct.

9           Obviously, not to the exclusion of Plaintiff's

10    arguments that, even taken on face value, the other documents

11    filed by Ms. Nguyen don't establish her membership, but --

12          THE COURT:  But I understand what was filed with the

13    Division of Incorporation.  I'm speaking of any conversations

14    between Ms. Nguyen and anyone else in this case.

15          MR. FREEDMAN:  Yes, Your Honor.

16          So with that, if the Court -- unless the Court has

17    other questions about Ms. Nguyen or Coin Exchange, I'm going to

18    jump to Ms. Wright.

19          THE COURT:  Thank you.

20          And Ramona Watts, so I understand, is Mr. Wright's --

21          MR. FREEDMAN:  Dr. Wright's current wife, yes.

22    Married in 2013, I believe.

23          THE COURT:  Thank you.

24          MR. FREEDMAN:  So I think it's important to view the

25    context in which the allegation that Ms. Wright became a member

1    of W&K -- how that arose.

2          So litigation is going on for over a year.  There's

3    over 150 pages of briefing and a motion to dismiss.  There's 50

4    or so pages of briefing on a motion to stay discovery.  There's

5    numerous discovery disputes, 17 and a half hours of hearing

6    time in court with Judge Reinhart.  And this never comes up

7    once until Plaintiffs file their response to Dr. Wright's

8    motion for judgment on the pleadings and tear down every piece

9    of evidence that has been put forward, either by showing that

10   on its face it's irrelevant to diversity jurisdiction, because

11   it has nothing to do with members, or by showing that the

12   entire foundation of the house of cards is a fraud.

13         And then Dr. Wright pulls out with:  "Oh, my ex-wife

14   was a member."  And that was premised originally on --

15   actually, let's drill down into that a little bit more.  What

16   originally happened was the Defendant pointed to an email

17   chain, 157-2, which I have here, and said:  "This email is

18   evidence that Ms. Wright was a member."

19         So if we look at this email, you can see this is the

20   body of the email.  But right here, the original message is

21   from Craig Wright to Dave Kleiman, with a cc to Lynn Wright.

22   Dave then responds to Craig:  "Did you already create a user

23   name and password?"  Dave again follows up, last page of the

24   attached:  "Do you think I can list you as a manager or

25   managing member with a foreign address or do you think they

1    would kick it back?"

2            He gets no response.  He responds again that it's

3    under vendor registration.  Then Craig -- sorry -- Dave says:

4    "Are either one of these your current address?"  So it's Dave

5    responding to an email from Craig and he then sends subsequent

6    messages to Craig and he finally gets a response.  The response

7    comes from Craig Wright.

8            Now, before we get up to this email, I want to drop

9    down here again where it says -- last page of the attached:

10   "Do you think I can list you as a manager or managing member

11   with a foreign address?"

12           So Craig Wright -- let me just -- I didn't realize

13   that was off screen.  So Craig Wright sends the original

14   message.  Dave responds and then responds again.  It's Dave

15   responding to Craig's original message, and he says:  "Do you

16   think I can list you as the managing -- as the manager or

17   managing member," not "you both," not "you and your wife," not

18   "all of you," "all of us."  "Do I think I can list you as a

19   manager or managing member of W&K?"  This is an email from Dave

20   to Craig, not to Ms. Lynn Wright.

21           Then if we come all the way back up to the top here,

22   we see that finally Craig responds.  And when he does so, he

23   removes Ms. Lynn Wright from the email chain.  She's gone.  He

24   deletes her from the email.  Dave puts her back in, but only as

25   a cc when he responds from the last time.

```
 1              So this email chain was put forward by the Defendant
 2      as, you know, evidence that Ms. Lynn Wright was a member.  In
 3      our reply, Plaintiffs tore this down by showing it was Dave
 4      Kleiman responding, that Craig is the first listed recipient.
 5      Lynn never sends anything in this email chain.  Dave moves Lynn
 6      to the cc line.  Craig removes Lynn from the actual email
 7      chain.  And Dave says -- this is not made in our papers, but it
 8      was something I realized when looking over the papers in
 9      preparation for this hearing, that he says:  "Can I list you,"
10      not "you both" or "both of you" or "you and your wife."  It's
11      an email directed to Craig.
12              So this email exchange, Plaintiffs pointed out, does
13      not show that Lynn had anything to do with it.  It shows that
14      they were contemplating making Craig a managing member.  And we
15      know from Craig's sworn statements that they eventually did
16      not.
17              THE COURT:  And Mr. Freedman, let me ask -- because
18      this email was in February of 2011.  Dr. Wright files his claim
19      in the Australian court in July of 2013.  In any of those
20      filings, did he represent that his wife owned shares or was a
21      member or had any interest in W&K?
22              MR. FREEDMAN:  So -- you know, you got to be careful
23      about proving a negative.  But from all the documents that
24      Plaintiffs have reviewed -- and we requested the Court file
25      from the Australian courts -- the answer is no.  The Defendant
```

 1    has never put forward anything identifying her, that I'm aware

 2    of, as a shareholder in that litigation.

 3           So now -- so Defendants -- again, all of the evidence

 4    is torn down.  They have nothing left to support their factual

 5    attack.  So Defendant comes and says:  "Well, hey, there's this

 6    email here that shows Lynn Wright was on initial communications

 7    with W&K, and so therefore she's a member."  Plaintiffs point

 8    out that doesn't show she's a member.  In fact, it shows Craig

 9    was the potentially anticipated member.  And then, magically,

10    at Craig Wright's deposition, all of a sudden, Lynn is a

11    shareholder of W&K.

12           Now, as an initial matter, the Court pointed out that

13    LLCs have members that are relevant for diversity jurisdiction.

14    I'm not sure what Dr. Wright meant when he said she was a

15    shareholder.  Maybe he was just speaking colloquially and isn't

16    aware of the phraseology or maybe she had some kind of economic

17    interest like we said Craig did.  I'm not sure what he meant,

18    but that is an issue.

19           What we do know, however, is that there is a body of

20    case law cited in Plaintiff's response to Dr. Wright's motion

21    for leave to supplement the record, which shows that the

22    Eleventh Circuit and courts here in the Southern District give

23    very little credibility to self-serving declarations in the

24    diversity jurisdiction context.  It usually comes up when

25    talking about the intention of domicile, but the statement

```
 1    remains the statement.  Self-serving declarations are given
 2    very little weight.
 3          But in addition to that, that weight -- it should be
 4    given even less weight because this is coming from a Defendant
 5    who has lied multiple times under oath, first stating he had
 6    nothing to do with W&K, in conflict with his sworn statement in
 7    Australia.  Second, he said in response -- in his responses to
 8    interrogatories, he said that he has -- I believe it was in
 9    response to interrogatories.  He said he has no Australian Tax
10    Office documents and therefore shouldn't have to -- it may have
11    been an RFP response.  I don't recall off the top of my head,
12    Your Honor.
13          Do you remember what -- right.  Sorry, Your Honor.
14          In -- when Dr. Wright moved to dismiss the case, one
15    of the grounds he moved to dismiss were forum non conveniens.
16    And he said this Court shouldn't deal with it because all the
17    documents are in Australia, everything is in Australia.  In
18    fact, all the documents I have about this case are in
19    Australia.
20          So Plaintiffs send a Request for Production saying:
21    "Hey, give us all the Australian -- give us all -- go to your
22    Australian lawyers and ask them for all the documents that they
23    have over there, send them over to us."  As the Court pointed
24    out, in the digital age, it's not such a big deal.  You just
25    email them over.
```

1          Well, Dr. Wright responded saying: "No.  No.  No.  I

2    don't have to do that.  That's unduly burdensome because I have

3    all the documents from the Australian Tax Office investigation

4    with me here in London.  So going to Australia to ask my

5    lawyers would be duplicative."

6          So, again, sworn statement under oath stating:

7    "Court, dismiss this case for forum non conveniens because all

8    of my records are in Australia."  And then as soon as he loses

9    that, a 180-degree turn.  "Oh, no.  I have all those documents.

10   I don't -- you don't need to go -- I don't need to go to

11   Australia."  So second lie under oath.

12         The third was at his deposition.  I was deposing

13   Dr. Wright.  He refused to answer questions based on alleged

14   United States national security concerns.  Judge Reinhart

15   eventually pushed him to file certain things under seal to

16   figure that out.  But his own lawyers had to retract that

17   statement in open court and say:  "It wasn't United States

18   national security.  It was Dr. Wright's personal security that

19   was at issue."  So lie number three under oath.

20         And then the fourth misrepresentation or lie, in some

21   ways, it's worth -- it's not under oath, but yet Dr. Wright

22   submitted documents he forged, he knows he forged, in support

23   of this motion for judgment on the pleadings.  And then the

24   Court's familiar with the June 28th hearing.  Again, not yet

25   resolved, but numerous -- he was confronted with numerous

1   indicia that he forged additional documents.  And he swore to

2   the authenticity of those documents, and then had to say:

3   "Well, they're authentically what I received.  I don't know if

4   some secret hacker maybe like purposely set me up and went with

5   a computer of my user name and my own email account and messed

6   with these documents that perfectly benefit me at the time I

7   needed them."

8          So first of all, self-serving declarations are not

9   credible.  Second of all, this is a not credible witness.

10  Third of all, and most damningly, in Dr. Wright's April 4th

11  deposition, seconds after I asked him if there was anybody else

12  involved in the -- and you know what?  I'm going to grab this

13  because --

14      (Pause in proceedings.)

15          MR. FREEDMAN:  So this is the April 4th deposition of

16  Dr. Wright, taken in London.  And I said here:  "Was anyone

17  else involved in initial communications about W&K?"

18          And he says:  "Yes."

19          I said:  "Who?"

20          "My ex-wife."

21          All right.  And this is Page 218.  So on the next

22  page, 219, literally seconds after he had just said that

23  Ms. Wright was involved in the initial communications about

24  W&K, I said to him:  "Do you have any ownership in W&K?"

25          "No."

```
 1                "Who owned W&K?"

 2                "The records exist.  I do not know if the records are

 3      accurate."

 4                "Who owned W&K in reality?"

 5                "Not me."

 6                "Who?"

 7                "Who owns BHP Billiton in reality?  It's not my

 8      company.  I do not care."

 9                "You have no idea who owns W&K?"

10                "I do not" --

11                THE COURT:  Can you pull it up for me, just so I can

12      see it.

13                MR. FREEDMAN:  Oh, sorry.  I got to get used to that.

14      Sorry.

15           (Pause in proceedings.)

16                MR. FREEDMAN:  So:  "Do you have any ownership in W&K"

17      is up here.  I'm going to watch the screen now so it doesn't

18      happen again.

19                "Do you have any ownership in W&K?"

20                "No."

21                "Who owned W&K?"

22                "The records for W&K exist.  I do not know if they are

23      accurate," which is, again, a clever hedge in case something

24      comes up he doesn't like.

25                "Who owned W&K in reality?"
```

1           "Not me."

2           "Who?"

3           "Who owns BHP Billiton in reality?  It is not my

4    company, I do not care."

5           "You have no idea who owns W&K?"

6           "I do not know that."

7           Seconds after acknowledging that his wife was involved

8    in -- the ex-wife was involved in the initial communications

9    around W&K, he testified he has no idea who the owners of W&K

10   are.

11          Then, here, I asked him who was responsible for W&K's

12   operations.  And this is Docket Entry 242-1, and unfortunately

13   we missed the second page.  It is attached to our motion -- it

14   is attached to our opposition.  It's in the record.

15          What's the record cite?

16          240-1.  Unfortunately, we left it out of this

17   particular submission, but -- so 234, we say, again, down here:

18   "Who was responsible for W&K's operations?"

19          And then he says:  "Again, you are asking me" -- and

20   here's Page 235.  I'm just going to just zoom in on 235.  He

21   says:  "You are asking me something -- who was responsible for

22   the operations in this office."

23          "So you do not know who was responsible for the

24   operations of W&K to create this intellectual property?"

25          "I have already said I do not know who is responsible

1    for half the things that happened in my own office right at the

2    moment, nor do I intend to be," implying again that he has no

3    idea who is responsible for the operations of W&K.

4           And then, finally, when asked about Ms. Uyen Nguyen's

5    involvement in W&K -- and here it says:  "Did Ms. Nguyen have a

6    role in W&K?"

7           "W&K is not my company.  I cannot talk about W&K," all

8    under oath, all before he had the need to fabricate the fact

9    that Lynn Wright was a member of W&K.

10          And so, again, self-serving declaration, multiple lies

11   under oath, and inconsistent statements taken mere months ago

12   before he had incentive to lie about Lynn Wright's membership.

13          THE COURT:  Just out of curiosity, Mr. Freedman -- you

14   may not have Page 288, but since the Court has been given this

15   testimony in somewhat of a piecemeal fashion, there was a

16   question, on line 24, Page 287:  "Are you aware of any role she

17   played with W&K?"

18          MR. FREEDMAN:  We do have it.  I believe he says she

19   was a director.  We have it here.  I'll show it to the Court.

20   But I believe his response is she's a director.

21      (Pause in proceedings.)

22          MR. FREEDMAN:  So here's -- yeah.  "Are you aware of

23   any role she played with W&K?"

24          Sorry.  Here's:  "Are you aware of any role she played

25   with W&K?"

1        And then answer:  "I believe she was a director."

2        So even -- so the Court brings up a good point, which

3  is, even Craig's own previous testimony says "director," not

4  "member."

5        So it's Plaintiff's position that, just like this

6  Court's decision in RG Martin that there's a burden of

7  production, and just like Judge Altonaga drilled down heavily

8  in the JPMCC case, Dr. Wright's factual attack is so devoid of

9  evidentiary support that -- and any credible evidence, that

10  there's simply -- the attack fails on its face.  There has been

11  nothing presented which attacks the representations made in the

12  pleading that the sole member of W&K is Dave Kleiman.

13        Of course, there is evidence in the event that

14  actually -- the Court does give any evidence enough and decides

15  that it's credible to the extent -- Your Honor, Mr. Roche just

16  pointed out that I should ask your permission to enter these --

17  288 into the record after the hearing, if that's --

18        THE COURT:  Thank you.  I appreciate that because it

19  completes the testimony.

20        MR. FREEDMAN:  And we'll also file the missing page

21  from the exhibit that we failed to file last night.

22        So there is -- of course, if the Court finds that

23  somehow there is some credibility here, enough to even put a

24  finger on the scale, which Plaintiffs strenuously argue that

25  there is not, the preponderance of the evidence, it's not an

1   onerous burden.  The Court's allowed to use its common sense,

2   its reasonable inferences.  Plaintiffs have shown that after

3   discussing whether or not to list Dr. Wright as a managing

4   member Dave Kleiman actually listed only himself as a managing

5   member, that Craig Wright signed contracts saying Dave Kleiman

6   was the one hundred percent legal title, and that Dave -- and

7   that Craig's historic statements are consistent where he had

8   some kind of beneficial ownership interest like that, 50

9   percent in trust, I mean, some kind of economic interest, which

10  was subsequently disavowed.

11          The only way to make his absolute conflicting

12  testimony somewhat into a narrative form is he had some kind of

13  tangential interest in it, whether it was a gentleman's

14  agreement or not.  And eventually that interest was disclaimed

15  by him and is gone.

16          I do want to address the In Re:  Williams case, which

17  was brought up by the Defendant as extraneous evidence of

18  conduct showing membership.  First of all, that was a Virginia

19  bankruptcy case.  But even taking In Re:  Williams, it is a

20  completely different factual scenario.  The In Re:  Williams

21  case, there was no operator agreement listing any member of the

22  LLC and there was a fight over who owned the LLC.  That was

23  what was in dispute.  The Court had to make a finding over who

24  owned the LLC and there was no operating agreement in place.

25  Here there is an operating agreement.  Here there is an

1    operation agreement.  Here the operating agreement lists Dave

2    Kleiman as the managing member.

3          There also was, in that case, other issues that there

4    was a -- there was a -- somebody was managing the operations,

5    the day-to-day operations of the LLC, in view of all the other

6    parties of the dispute, but there was no document which

7    appointed them as a manager.

8          And so the Court reasoned to say:  "Well, if

9    everybody's standing by and allowing this person to manage, and

10   there's no document appointing them as a manager, then they

11   must be a member."  So it was a complete -- obviously, this is

12   advocacy on how -- I'm not sure the Court says those exact

13   words.  But if this Court reads that decision, that's what will

14   be seen.  And so that case is irrelevant.

15         I also want to point out that when Mr. Rivero was up

16   here, he pointed out that Craig and Lynn Wright's email

17   addresses were @information-defense.  But throughout discovery

18   negotiations in this case, we have been represented by

19   Defendant multiple times that Information Defense is a company

20   that's wholly unrelated to this case and that therefore we

21   should not get search terms that use Information Defense

22   because it will bring back thousand of irrelevant documents.

23         So while there is symmetry between the names, the

24   representations of counsel, to us in the negotiations, have

25   been that that company is unrelated.  And I'm happy to ask the

1    Court for the Defendant to make their representation now, if

2    the Court's curious, but that's what's been told to us.

3           That's all I had about the factual attack on the

4    Court's diversity jurisdiction.  I can take a minute to address

5    the facial challenge.

6           THE COURT:  And that's what I was going to ask you as

7    well, Mr. Freedman.  Assuming that the Court finds that neither

8    the Defendant has met its burden of production or finds that it

9    has and the greater weight of the evidence supports the

10   Plaintiff's claim that there is diversity, what do you believe

11   is the appropriate remedy with regard to the Plaintiff's Second

12   Amended Complaint, which is in essence the third Complaint,

13   Docket Entry 83, with reference to the membership set forth in

14   Paragraphs 71 and 3?

15          MR. FREEDMAN:  So I think it's important to understand

16   what was going on there.

17          The Complaint alleges that Dave was the sole member.

18   It does qualify that statement as best can possibly be

19   discerned, and I'm going to get to that moment.  But I want to

20   first address something that Defendant has highlighted multiple

21   times, which is that a statement that the exact ownership

22   structure is unclear.

23          And I touched on this earlier in the hearing, which

24   is, the exact ownership structure was unclear due to Craig's

25   contradictory statement, not its membership structure.  Craig

1    had some kind of economic, some kind of deal with Dave that

2    they were going to split something.  It's unclear what it was.

3    And that's why we said it is -- the ownership structure is

4    unclear.

5           So -- and then the reason that Plaintiff said:  "As

6    best as can possibly be discerned" is because -- Plaintiffs are

7    trying to take the exact opposite tact here of just being

8    completely candid, which is, our client has no personal

9    knowledge of anything that happened in this case.  We represent

10   a deceased estate.  Our client is dead.  And we don't have

11   direct evidence of what happened.

12          So what we have are the documents, all publicly

13   available information, which is what Judge Altonaga found

14   sufficient in the JPMCC case.  We have -- in addition to all

15   publically available information, we have statements and

16   documents that were not publicly available that were given to

17   us by the Defendant and by the Australian Tax Office.  And so

18   we were just being careful, saying:  "Look, as best as can be

19   discerned, based on everything we have, on our information and

20   belief, and on all the evidence available to us, publically

21   available and privately available, Dave Kleiman was the sole

22   member."

23          Since that allegation was made, many, many, many

24   months have passed, and tens of thousands of documents have

25   exchanged hands.  Plaintiffs are now fully confident that Dave

```
 1   Kleiman was the sole member of W&K.  If the Court's
 2   uncomfortable with that characterization, surely there's a lot
 3   of case law to allow leave to amend to clarify jurisdictional
 4   allegations.  We'd be happy to do so.  We don't think it's
 5   necessary because you're allowed to allege on information and
 6   belief and all publicly available information, if you have a
 7   good-faith basis to say so, which Plaintiff certainly had.
 8         So I mean, the legal issue is here a 12(b)(6)-style
 9   standard where everything is construed in Plaintiff's favor.
10   The allegations don't have to be based on firsthand knowledge.
11   But beyond the JPMCC case, there's Ninth Circuit, Seventh
12   Circuit, Third Circuit case law that establishes -- this is all
13   cited in Plaintiff's surreply, I believe.
14         And as Judge Torres put it, a court may dismiss the
15   Complaint based on a facial challenge only if it is clear that
16   no relief can be granted under any set of facts that could have
17   proved consistent with the allegations.  If Plaintiffs prove
18   their allegations that Dave Kleiman was the sole member of W&K,
19   and Craig Wright had some kind of beneficial interest, which he
20   subsequently disclaimed before the filing of this lawsuit, then
21   this is absolute complete diversity.
22         W&K was owned solely by Dave Kleiman, now the personal
23   representative of his Estate, Ira Kleiman.  And Craig Wright is
24   a foreign national.  And that gives us a Florida domicile -- a
25   Florida citizen through W&K, a Florida citizen through Ira
```

1    Kleiman, and an alien citizen as the Defendant.

2            And so because we can prove those allegations, the

3    facial sufficiency of the Complaint is not really not seriously

4    at issue.

5            THE COURT:  But addressing Mr. Wright, with regard to

6    his status, whether he, in fact, was a member is obviously in

7    dispute.  I know that there is not a determination as to

8    whether he had some type of a beneficial ownership interest.

9    But I guess my question is:  Is there any record evidence that

10   would support that Mr. -- Dr. Wright is a member of W&K?

11   Because --

12           MR. FREEDMAN:  Only his previous statements that he

13   was a member, 50 percent member, which I think need to be

14   viewed in the context that at the time those statements were

15   weighed Dr. Wright was committing another fraud, which was

16   going to Australian courts -- and this is laid out in

17   Plaintiff's Amended Complaint -- and trying to -- let me take

18   one step back.

19           Plaintiff's basic theory of the Complaint is Dave

20   Kleiman and Craig Wright had access to all these Bitcoin

21   together.  When Dave died, Craig saw an opportunity.  And he

22   realized that nobody knew he had all of Dave Kleiman's Bitcoin.

23   And so what he could do was -- in conjunction with covering

24   himself in the Australian Tax Office investigation, was create

25   fraudulent contracts that made it seem as if Dave Kleiman owed

1    him certain Bitcoin and software, that Dave Kleiman defaulted

2    on the obligation to pay him Bitcoin that he already had, and

3    that therefore he was entitled to foreclose on W&K's

4    intellectual property.

5            And he went to the Australian courts and said:  "These

6    are the contracts.  I don't have Dave Kleiman's Bitcoin.  Dave

7    never paid me.  Let me execute," and he consented to judgment

8    on behalf of W&K, and he elected a director on behalf of W&K.

9    And in order to do that, he had to have some authority to do

10   that.  And so he lied and said:  "I'm a 50 percent shareholder

11   of W&K."  And so his previous statements saying:  "Oh, I am a

12   50 percent shareholder" have to be viewed in that context.

13   They were completely not credible and consistent with

14   Dr. Wright's predilection to say whatever the lie du jour is.

15   I mean, it's frankly incredible, Your Honor.

16           But again, on a facial challenge, Defendants have

17   stated clearly in the Second Amended Complaint that whatever

18   interest he had -- and this is at 14 -- whatever interest he

19   once held in W&K, he has disclaimed it.  And if that is true,

20   if that's proven to be true, then there's a set of facts that

21   could be proven consistent with the Second Amended Complaint,

22   which would enable diversity jurisdiction to be exercised, and

23   the facial challenge fails.

24           Of course, if the Court disagrees, we're more than

25   happy to amend to clarify our jurisdictional obligations, but I

 1   don't think that's necessary.

 2           THE COURT:  Thank you, Mr. Freedman.

 3           MR. FREEDMAN:  Your Honor, the only thing I would say

 4   about supplemental jurisdiction -- I know the Court is fully

 5   briefed on it -- is that subsequent to our filing, there has

 6   been significantly more work.  One of the factors to look at

 7   under Gibbs is the amount of the judicial -- judicial -- I'm

 8   blanking out.

 9           THE COURT:  Judicial labor.

10           MR. FREEDMAN:  Thank you.

11           And so, at this point, we've calculated it.  There

12   have been 53 motions, eight hearings, one more on schedule, 83

13   orders, 17 and a half minutes in court -- sorry -- 17 hours --

14   17 and a half hours in court, not including today.  And so, you

15   know, Plaintiff's position would be that forcing a State court

16   judge to become familiar with the complex facts at issue in

17   this case, forcing Judge -- you know, Judge Reinhart has spent

18   a significant amount of time understanding Shamir's Secret

19   Sharing algorithm and cryptocurrencies.  It would be a complete

20   waste of the parties' time.  There simply is no prejudice to

21   Dr. Wright to continuing to stay in federal court, whereas

22   Plaintiffs would be severely set back, over a year and a half,

23   if we had to start again in State court.

24           THE COURT:  And I'm not certain if the Defendant would

25   concede that.  But that may, in fact, be the strongest factor

```
 1    in the Plaintiff's favor.

 2            I see that there was a significant amount of time that

 3    Judge Reinhart devoted not only to this case, but being on call

 4    with regard to issues related to the depositions and the many,

 5    many pleadings and orders that have been generated in this

 6    case.

 7            MR. FREEDMAN:  He also, Your Honor -- I'm not sure if

 8    Your Honor's aware of this, but he also -- beyond being

 9    available for deposition in London, and allowing us to call in

10    and resolving disputes in London, he also presided over a

11    two-hour deposition in court on June 28th, before the show

12    cause hearing.

13            THE COURT:  Yes.

14            Thank you, Mr. Freedman.

15            MR. FREEDMAN:  Thank you, Your Honor.

16            THE COURT:  Mr. Rivero, I want to ensure that the

17    Court is fully advised of any other exhibits that the Defendant

18    seeks to withdraw and not have the Court consider.

19            MR. RIVERO:  Judge, there is nothing else.  And the

20    answer is, no, Your Honor.

21            THE COURT:  All right.  And if I may ask:  What is the

22    Defendant's position?  Is Dr. Craig Wright a member of W&K or

23    is he not a member of W&K?

24            MR. RIVERO:  Judge, his testimony as of July 9 is that

25    he was not a member, and that is his testimony.
```

1        Judge --

2        THE COURT:  Do you rest on that testimony, that he is

3   not a member?

4        MR. RIVERO:  I do, Your Honor.

5        THE COURT:  Thank you.

6        MR. RIVERO:  Judge, but let me take this in reverse

7   order.

8        First, the supplemental jurisdiction question, which

9   has been briefed.  But it's very important, Your Honor,

10  everything that was referred to by Plaintiff goes to non-merits

11  issues in this case principally arising from the Plaintiff

12  having to decided to bring this to federal court.

13       The depositions that he refers to, Judge, are strictly

14  related to discovery issues.  In fact, Your Honor, when the

15  Court had set a June trial date -- I believe it was a June

16  trial date -- looking at the reality of the calendar, we

17  requested the right to start taking merits discovery.  The

18  discovery period was going to end, I believe, Memorial Day

19  weekend, and the Plaintiff's objected to our taking any merits

20  discovery.  No merits discovery, including the depositions

21  referred to, has been taken.

22       Those were a very unusual kind of deposition that

23  Judge Reinhart ordered solely for questions of production of

24  discovery, Your Honor.  So any labor that's on gone on was

25  non-merit.  And Judge, it's plain, given that the merits

1    haven't been addressed -- and Judge, despite what went on

2    today, this isn't a jury trial.  The merits have not been

3    entered into, Your Honor.  The labor that remains to be done

4    far, far eclipses any labor that's been done, Your Honor.

5         And on the supplemental jurisdiction -- going to the

6    only point that the Plaintiff has, because on the legal grounds

7    you have to have a common nucleus of initial entitlement to

8    that dismissed federal claim.  But going on this burden

9    question, what would create an enormous loss burden here is if

10   the Court went from here to go through all the merits

11   discovery, had a trial, and this matter went to the Eleventh

12   Circuit and were reversed for the absence of subject matter

13   jurisdiction.  That would be a tremendous waste of this Court's

14   time.

15        Judge, let me take these by parts because I predicted

16   that the argument would be:  "Liar, liar, pants on fire."  But

17   the problem is that, in that process of tearing down, there was

18   a lot of tearing, Judge, but there wasn't much building up.

19   But one of the efforts to build up, I want to show you.

20   Plaintiff's counsel just told you that the evidence of the

21   ownership -- the sole ownership is that Kleiman is in the

22   Articles of Organization and the operating agreement of the

23   company.  He just said that.  But the problem is, Judge, there

24   is no operating agreement of this company.

25        MR. FREEDMAN:  Your Honor, I misspoke.  There is no

1    operating agreement.

2         MR. RIVERO:  Yes, Judge.  It's wrong.  And I guess now

3    if we're going to start withdrawing statements, I suppose we

4    both have to.  Judge, there was no operating agreement.

5         But why is that so critical in this argument to you?

6    Because Judge, they've got no evidence.  So to throw out the

7    operating agreement, Judge, goes to the critical question in

8    this hearing.  And Judge, I don't want to -- I'm interested

9    in -- every single hearing in this case -- we've been

10   practicing here, Ms. McGovern and I, Ms. Markoe, Mr. Paschal,

11   for many, many years.  Those allegations about false statements

12   extend in many instances -- maybe counsel doesn't understand

13   his statements -- to the conduct of -- our conduct, Judge.

14        And what I want to tell the Court is that that's not

15   the case.  We have not -- when I told you -- I said to you,

16   Your Honor, as you know, in the initial argument, that we had

17   said last year that "M" and "S" referred to a manager and

18   secretary.  So I told you that in the initial argument.  Then

19   he says:  "Now they're changing position because they're saying

20   'M' and 'S' don't stand for 'manager' and 'secretary.'"

21        Judge, when we said that last year, I wasn't aware of

22   this document, which is Exhibit 3 to our papers, where -- and

23   this isn't discussed by Plaintiff -- that says -- this is the

24   State.  This is from the State of Florida -- says -- talking

25   about title abbreviations:  "This list is not comprehensive.

1    Other abbreviations may be used that are not identified here."

2         Then he showed you -- he talked to you about

3    "manager."  But he didn't point out that they also have "MGR"

4    for "manager."  And Judge, other abbreviations can be used.

5    This is not an exclusive list.  So when we said last year "M"

6    and "S," we did our best.  And there's other information now

7    about the fact how that "M" and "S" can, in fact, be ambiguous

8    and mean "member."

9         Judge, there's no operating agreement, and the single

10   shred of evidence --

11        THE COURT:  The document that you just referred to,

12   that's a document that's available on the Department of -- I

13   guess the Division of Incorporations' website?

14        MR. RIVERO:  That's correct, Judge.  This comes from

15   the Department -- I'll just show the Court.

16        THE COURT:  The Florida Department of State?

17        MR. RIVERO:  Yeah.  This is the --

18        THE COURT:  Thank you.

19        MR. RIVERO:  -- Department of State.

20        And Judge, we've cited it in the papers.  So it's not

21   something -- it's of record.

22        THE COURT:  It is.

23        MR. RIVERO:  Judge, the question that's presented to

24   you is:  Do we put in play the facial attack?  First of all, I

25   think that the concession was clear.  This Complaint was always

1    defective and doesn't state jurisdiction.  We can look at the

2    cases from Caran to your RG case.  The Eleventh Circuit has

3    been crystal clear.  Also, on information and belief,

4    allegations are not permitted.

5          The only cases they cite about information and belief

6    allegations, to be clear, which are a Ninth Circuit and Seventh

7    Circuit, and other circuits, are -- it's very interesting.

8    There's situations where the Plaintiff doesn't have sufficient

9    information to state the membership of Defendant LLCs.

10         There isn't a single case decided in the federal

11   courts where a Plaintiff LLC can't state its own members.

12   They're asking you to go out on the farthest, thinnest branch

13   that there can be, Judge.  They are W&K.  The law requires them

14   to state who the members are.  They can't.  That's why they

15   didn't plead it.  They can't plead it today, Judge.

16         And why can't they plead it, Judge?  I put this in

17   play because I showed you not just Wright's testimony.  I

18   showed you an email.  And the only -- a series of emails.  And

19   the only thing you got from them about the series of emails is

20   interpretations which are extremely speculative, about what was

21   in David Kleiman's head.  So it's about whether David Kleiman

22   cc'd Lynn or whether Craig Wright left her off on one of the

23   emails in this chain.  But even in the interpretation he gives

24   you, it's David Kleiman who adds Lynn Wright back in.

25         And what cannot be changed by any of those

1    interpretations is the question that is asked by Dave Kleiman.

2    Judge.  And there's a series of emails from -- this may not be

3    the one.  But the question that's asked by Dave Kleiman, it's

4    at different places in different emails -- I mean, different

5    strings, Judge.  This question from Dave Kleiman, Tuesday,

6    February 15th, the day before the Article of Organization --

7    it's not an Article of Incorporation, as stated by Plaintiff --

8    and this stuff is important, Judge.  I know that if you get hot

9    you may not be able to say things precisely.  It's an Article

10   of Organization and there is no operating agreement.

11       But Dave Kleiman is referring to -- look at the

12   attachment, Judge.  The attachment is:  "W&K Info Defense

13   Research, LLC," and there's no doubt that's the Florida entity.

14   And he's referring to the last page of the attached.  And I

15   showed it to you before, and I'll show it to you again, Judge.

16   The last page of that attached is that draft where he lists

17   himself as MGR, not as MGRM.  And if we're trying to

18   interpret -- the interpretations don't turn on the question of

19   whether Lynn Wright is listed first, or Lynn Wright is listed

20   second, or whether she's the cc of the two.  There is no way

21   counsel can tell you -- what he said is simply impossible in

22   logic.

23       When Dave Kleiman asks these two individuals, Craig

24   Wright, a foreigner, and Lynn Wright, a foreigner, last page of

25   the attached:  "Do you think I can list you as MGR or MGRM with

```
1    a foreign address" -- they are foreigners -- or:  "Do you think

2    you will be kicked out," he is plainly talking about MGRM,

3    Judge, which is member.  There's no doubt about it.  That's

4    what's in Dave Kleiman's head.  This is the most important

5    evidence about what was actually happening when this was

6    incorporated.  And this is consistent with Craig Wright's July

7    9th testimony about Lynn Wright.  Or the other possibility is

8    what he, as the Court says, has disclaimed -- Craig Wright.

9    There's no way to get around that.

10            So how is he going to list them as MGRM, unless they

11   are members?  He doesn't do it ultimately, Judge, but perhaps

12   of this concern about whether a foreign address would work --

13   and Judge, interestingly, here in the same email chain, the one

14   that's Craig Wright to Dave Kleiman -- I'm sorry -- that's Dave

15   Kleiman to Craig Wright and Lynn Wright:  "Are either of these

16   your current address," and it shows the two foreign addresses.

17   It fits together.  And then Craig Wright does answer directly

18   only to Kleiman.  He names a foreign address.

19            But when he finally comes to the end, and he's talking

20   about it:  "Look over the attached real quickly.  Let me know

21   if it is okay," Judge, who are you going -- I don't understand.

22   If he's the sole member, why is he asking:  "Let me know if

23   it's okay"?  If he's the only member, and he's a hundred

24   percent owner, and they have nothing to do it, which is their

25   contention, why is he asking, about the filing of the Article
```

1    of Organization, which is their entire evidence:  "Is it okay?

2    Because he needs their approval because one or the other is a

3    member.  And I understand, Judge --

4              THE COURT:  So are you asking -- I guess I'm --

5    because you yourself have said this is highly speculative.  So

6    are you asking the Court from this email chain to find that

7    both Dr. Craig Wright and Lynn Wright were both members?

8    Because it speaks to "you."  And then I'm looking at a document

9    the next day, filed with the Department of State, that only

10   lists Mr. Kleiman as managing member.

11             MR. RIVERO:  That's right.

12             THE COURT:  So I'm just -- I understand that you're

13   bringing it to bear.  But what are you asking the Court to find

14   in terms of evidence, that both of these individuals were

15   managing members?

16             MR. RIVERO:  Judge, what's highly speculative is to

17   say that the person that the email is directed to is the first

18   among two recipients.  That's what I'm saying is highly

19   speculative.

20             THE COURT:  It could be one or the other.  But I guess

21   my answer to you is:  It says "you" and it's directed to both.

22   And I understand that at some point Ms. Wright is off the

23   chain.  Then Mr. Kleiman puts her back on.  But are you asking

24   the Court to find that both of these individuals are members?

25             MR. RIVERO:  I'm asking the Court to see that there is

```
 1   no way -- when David Kleiman is the person who files these and

 2   purports to act as the member, and as far as we can tell is a

 3   member, he is asking two foreign individuals -- I don't know

 4   which one it is, Judge.  That's the speculative part.  I don't

 5   know if he's saying it to Craig Wright or to Lynn Wright.  I

 6   don't know.  But I do know he's saying it to one of two

 7   foreigners.  He's saying: "Do I list you as manager or

 8   manager/member?"

 9           Then later, when he adds Lynn Wright back in, he asks

10   two foreigners:  "Is the draft Article of Organization and the

11   way I've listed myself as MGR -- is that okay?"

12           Judge, my point is this is not speculative.  You don't

13   ask two foreigners:  "Can I list you as MGRM or MGR, unless

14   those two people, in the view of Kleiman, one or the other is a

15   member.  I understand that it could be either.  I understand

16   the speculation is one or the other.  But you don't ask that

17   unless one of them is potentially a member.  And you don't

18   ask -- I mean, I'd say you don't ask about the actual

19   organization of the LLC:  "Is this filing okay," to people who

20   have nothing to do and are not -- don't have a say.  You ask:

21   "Is it okay" because you need their approval to do it.

22           So what I'm saying is, Judge, combining -- actually,

23   this is my only point -- is whether or not I have put enough in

24   on evidence to put in play the factual question of whether they

25   meet the preponderance burden that they have, I have, Judge.
```

1    Because this contemporaneous email, which is not Craig Wright's

2    testimony, tells you in the only logical -- and, you know,

3    counsel referred to common sense.  You are the fact finder

4    here, Judge.  So applying common sense, Kleiman is not going to

5    ask two foreigners:  "Can I list you as a member," unless one

6    of them is a member.  Doesn't matter.  Either one destroys

7    diversity.

8         And secondly, he doesn't ask the two foreigners:  "Is

9    the Articles of Incorporation I'm going to file for this LLC

10   okay," unless they have a say in the matter because they, too,

11   are in the LLC.  This puts it in play.  I don't have to meet

12   some lofty burden.  Once it's in play, here's the problem they

13   have in the discussion that's just been had, there's not a

14   shred -- there's no operating agreement, Judge.  What did he

15   refer to?  "Craig Wright's a liar.  This is a liar.  This is a

16   lie.  This one's inconsistent.  That's a lie.  He said this.

17   He said that.  He said that."  But all of that just tears down

18   Craig Wright.  It doesn't add up about their evidence to show

19   the complete membership and the complete US citizenship of the

20   membership of W&K.

21        And Judge, it doesn't rebut -- they can say:  "Look,

22   this email between Uyen Nguyen and Ramona Watt years later" --

23   okay, Judge.  So what they're saying is Uyen Nguyen knows

24   Wright's wife very well and she's in on it with Craig Wright

25   about what's going to be said to the ATO.  Well, Judge, that

1   strongly suggests to me that she knows Wright well and that

2   she -- you know, Wright has always claimed, I don't think

3   there's any contradiction, that he was a very close friend of

4   Dave Kleiman.  So what does that prove about whether or not

5   they were members?  All it says, again, they're liars.  So

6   everything is -- but Judge, if everything's a lie, then the

7   stuff they rely on when Wright files a contract, or when Wright

8   makes a statement, can't be credited either.  All of it comes

9   tumbling down to zero.

10          So where is their evidence?  The evidence I present to

11   the Court is this email of the acknowledged member asking for

12   permission and asking:  "Can I list you as a member?"

13          THE COURT:  Well, there was no response to this.

14          MR. RIVERO:  No, Judge.  I think -- and I can't point

15   it out right now.  I do think there was testimony there was

16   discussion after this.  But you're right.  Here on the --

17          THE COURT:  I'm sorry.  When you say there was

18   discussion --

19          MR. RIVERO:  Discussion.  In other words, there was

20   continuing conversation about it.  I think --

21          THE COURT:  Mr. Kleiman, Ms. Wright, and --

22          MR. RIVERO:  And Mr. Wright.  I think it's in the

23   testimony that we already looked at.  And I can go back to

24   it --

25          THE COURT:  Where Ms. Wright acknowledged that she

```
1    would be a member?
2            MR. RIVERO:  My understanding -- I'm making inferences
3    from the testimony.  But I believe that Wright -- Craig Wright
4    testified that there were discussions between her.  In fact, I
5    can go back to it, Judge, because it was just shown to you that
6    there were discussions at the beginning between Lynn Wright and
7    Dave Kleiman at the time of the formation of the entity.
8            THE COURT:  All right.  But not with regard to whether
9    she was going to be a member.  There were merely discussions
10   with regard to the formation of W&K.
11           MR. RIVERO:  Well, Judge, one of the issues about
12   formation is membership.  I mean, yes -- no.  I'm not saying
13   that there's testimony that they discussed specifically
14   membership.
15           THE COURT:  Of course.  I just wanted to make sure
16   there was perhaps testimony that I wasn't aware of.
17           MR. RIVERO:  No, Judge.  There's very little evidence.
18   There's very little evidence on these questions.  In other
19   words, when you take out all the evidence about lack of
20   credibility, and he's a liar, and that's forged, and that's
21   fake, the actual evidence on membership is very limited.
22           And Judge, I just want to give this to you.  You know,
23   the Court has the ability to pierce through all this and has a
24   lot of experience, Judge.  But the point is, when we really
25   talk about the evidence, what I'm telling you is this email,
```

1    combined with however little weight you want to give to

2    Wright's sworn statement, goes to a foreigner being a member.

3    And this, in common sense, is the acknowledged member asking a

4    foreigner:  "Should I list you as a member," and asking:  "Is

5    this okay with you," about the actual Article of Organization.

6          There is the draft Article of Organization, Judge,

7    where he doesn't put himself as a member at the time he's

8    asking them should they be the MGRM.  There's the final, where

9    he puts himself as a member.  But here's the key, Judge:  That

10   final does not say -- it's not supposed to say:  "This is the

11   sole member."  They can't -- they have no evidence whatsoever

12   on that point.  And they have to have evidence because they

13   have to outweigh what I have.  They don't have any evidence.

14         And then, Judge, and I have -- and by the way, the

15   reason the operating agreement question came up was that

16   Plaintiff's counsel claimed that Williams had no resemblance to

17   our case because Williams dealt with a situation where there

18   was no operating agreement, and the Court needed to figure out

19   what the citizenship was of an LLC -- the membership and the

20   citizenship of an LLC, and there was a fact question.

21         And there the Court did exactly what this Court needs

22   to do here, where there's no operating agreement and the

23   question is what's the membership and who are the citizens.

24   That's exactly what the Williams court did in its instruction,

25   because there the Court said:  "You can look to extrinsic

1     evidence," and that's the other line of authority.  I don't

2     need to repeat it, Judge.

3            THE COURT:  Right.

4            MR. RIVERO:  Whether it was -- the arguments are

5     that's all lies and lies and lies.  But it's there, Judge.  It

6     is evidence.  And it is Nguyen holding herself out as an

7     officer, Nguyen and Coin Exchange both holding themselves out

8     as officers, paying the fees -- somebody paid the fees --

9     paying the fees and taking actions for the cooperation.

10           Judge, there's one important thing that I need to

11    remind the Court.  It's in the papers.  Coin Party Exchange, at

12    the time of the filing of the Complaint, which is actually

13    before the time that W&K is named -- and you said it before,

14    and we realized.  February of '18 is some months before W&K's

15    public filings are changed.  So when the case is filed, and

16    it's filed strictly as a diversity case, it's listed publically

17    as MS, Uyen Nguyen, and -- or actually, no.  I'm sorry, Judge.

18    That may have expired then, but the last listing -- I should

19    say the last listing was Uyen Nguyen and Coin Party Exchange.

20           Ira Kleiman knew that Coin Party Exchange had been

21    taken over by an Australian liquidator, Judge.  And Ira Kleiman

22    was in contact with the Australian liquidator for Coin Exchange

23    PTY.  This is the email exchange, Judge, that's of record.

24    This is Ira Kleiman -- I don't know why --

25           COURT REPORTER:  Mr. Rivero?

```
 1              MR. RIVERO:  Yes?

 2              COURT REPORTER:  Your mic is off.

 3              MR. RIVERO:  Oh, I'm sorry.

 4              I don't know why -- Judge, this is Ira Kleiman writing

 5      to the liquidator for Coin Exchange PTY Ltd. in 2017.  This is

 6      about -- if I'm not mistaken, Judge, that was about six months

 7      before filing.  And he's saying:  "I want you to" -- bottom

 8      line is it's an exchange of email where he's saying:  "I want

 9      you to sue Craig Wright on these different theories."

10              And by the way, Judge, it's in the record.  So I won't

11      beat a dead horse.  But what the liquidator said is:  "You

12      don't have evidence.  You know, you got a bunch of blog posts,

13      but you don't have evidence."  But they are going back and

14      forth on this and then -- in fact, he asks -- the liquidator

15      here is asking Ira Kleiman and he's answering -- the liquidator

16      says:  "Do you have any tangible evidence besides these blog

17      posts and this other stuff you've supplied me?"

18              And he says:  "Jeremy, I have tangible evidence that

19      Coin Exchange had an IP in its possession."  So they go through

20      all this.  But Judge, what he doesn't say to the liquidator for

21      Coin Exchange PTY is:  "I intend to take Coin Exchange PTY off

22      the papers of W&K."  And he doesn't say it at that time and he

23      doesn't say it -- it's actually 10 months later when he does

24      it.  Even though he knows who's representing the Coin Exchange

25      PTY, he doesn't reach out to say:  "Hey, you're listed on this
```

1    thing.  Do you have any standing here?  Do you have any

2    records?"  He asks -- files suit.  He asks for evidence, all

3    this stuff.  But he doesn't ask about that, even though he

4    knows and he's been in touch with the liquidator for Coin

5    Exchange PTY.

6          Judge, what he does is he uses self-help.  And I

7    actually know about this, Judge, because I've been a business

8    litigator for a long time, and I've in a situation where we

9    have analyzed and determined that the last officer of a company

10   was a certain person and that Florida law permits the last

11   officer to take action.  And we've done that.  Right, Judge?

12         But the last listed officers here were Uyen Nguyen and

13   Coin Exchange PTY.  If you're going to use self-help, you need

14   to follow the law.  And if you're going to use self-help --

15   they won't acknowledge it here, but the reason you use

16   self-help without checking with the last lawfully listed people

17   for this thing is because he realized he didn't have

18   jurisdiction in this court.  And he went and tried to create

19   jurisdiction, which is what Castillo Grand, the leading

20   Southern District case, about why -- you know, a 1359 and

21   collusion and improper invention of jurisdiction.  That's what

22   it's all about.

23         And Judge, it comes back to one thing -- and I

24   don't -- you know, I don't want to make a -- it's not a 4th of

25   July patriotic speech.  But it is the transcendent point.  You

1   can say all you want, that Craig Wright's a liar, that his

2   lawyers are liars, that all the documents are lies.  The

3   problem is there's evidence.  The exchange between Kleiman and

4   Lynn Wright and Craig Wright is not challenged.  Nobody's

5   challenging that.  And there, David Kleiman's asking about

6   listing foreigners as members.  And he's asking foreigners:

7   "Is the Articles of Incorporation, where I've just put myself

8   as manager -- is that okay?"  That's evidence, Judge.

9        And why is that evidence important?  Why is it

10  important at the end of the day?  Because they invoke your

11  power.  They improperly invoke your power.

12       And Judge, my last appeal to you on this is -- because

13  you know the facts and the rest -- is an improper appeal to

14  your power that is permitted to go forward not only risks -- I

15  think they're risking leading to error acknowledged by the

16  Eleventh Circuit and the rest.  But that -- Judge, that is

17  transitory.  I know you don't -- I don't want you to be wrong.

18  Nobody wants you to be wrong.  But that's transitory still,

19  Judge, because it's not personal to you.  It's about the power

20  of this Court.  If the power of this Court is abused, it

21  dissipates.  And when it's really needed, it won't be

22  available.

23       Judge, I ask you -- they simply -- I did put this in

24  play.  They don't have any evidence.  The only evidence they

25  have is an Article of Organization, not an operating agreement.

1    But they are forgetting the draft, they are forgetting the

2    emails, and they are forgetting conduct, that Williams says is

3    exactly the kind of evidence that you have to look to.  All of

4    it's evidence.  You can say:  "Oh, it's all" -- but Judge, it

5    can't be:  "Everything's a lie, except when the lie helps me."

6    And that's what -- their position boils down to:  "The Articles

7    of Organization only have Dave."  But it doesn't say "only

8    Dave" and it doesn't say "sole member Dave."  And they're

9    saying:  "And everything inconvenient that he said or every

10   document that he completed is a lie.  But if he said something

11   that helps me, it's not a lie."  That, Judge, will not meet

12   their burden.  I ask you to find they don't have subject matter

13   jurisdiction.

14            And Judge, thank you for patience.

15            THE COURT:  Yes.  Of course.

16            Thank you, Mr. Rivero.  And Mr. Freedman, I want to

17   thank you as well.  I also want to thank the team.  Because I

18   know from the transcripts that I've read that certainly it is a

19   team effort on both sides to get to this point.

20            I will have an order filed in short order.  But I do

21   want to thank each of you for the extraordinary effort in

22   educating the Court and the time that you have taken to file

23   the initial briefings and, of course, the supplements and the

24   time that you spent this morning.

25            Is there anything further?

1          MR. RIVERO:  Not from us, Your Honor.

2          Thank you.

3          THE COURT:  Mr. Freedman?

4          MR. FREEDMAN:  No, Your Honor.  Thank you.

5          THE COURT:  Okay.  Have a pleasant afternoon.

6          MR. RIVERO:  Thank you, Judge.

7       (Proceedings concluded at 11:48 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    UNITED STATES OF AMERICA        )

2    ss:

3    SOUTHERN DISTRICT OF FLORIDA  )

4                    C E R T I F I C A T E

5            I, Yvette Hernandez, Certified Shorthand Reporter in

6    and for the United States District Court for the Southern

7    District of Florida, do hereby certify that I was present at

8    and reported in machine shorthand the proceedings had the 10th

9    day of July, 2019, in the above-mentioned court; and that the

10   foregoing transcript is a true, correct, and complete

11   transcript of my stenographic notes.

12           I further certify that this transcript contains pages

13   1 - 109.

14           IN WITNESS WHEREOF, I have hereunto set my hand at

15   Miami, Florida this 4th day of August, 2019.

16

17                        /s/Yvette Hernandez
                          Yvette Hernandez, CSR, RPR, CLR
18                        Certified Shorthand Reporter
                          400 North Miami Avenue, 10-2
19                        Miami, Florida 33128
                          (305) 523-5698
20                        yvette_hernandez@flsd.uscourts.gov

21

22

23

24

25