UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-80176-BLOOM/Reinhart

IRA KLEIMAN, *et al.*,

    Plaintiffs,
v.

CRAIG WRIGHT,

    Defendant.
_____/

## **ORDER**

**THIS CAUSE** is before the Court upon Defendant Craig Wright's Motion for Judgment on the Pleadings, ECF No. [144] ("Motion"). The Court has reviewed the Motion, all supporting and opposing submissions, the record and applicable law, considered the arguments presented by counsel at the hearing on July 10, 2019, and is otherwise fully advised. For the reasons that follow, the Motion is denied.

    **I.    BACKGROUND**

The factual background giving rise to this action has been set forth previously in prior opinions issued by this Court and are incorporated by reference. *See e.g.* ECF No. [68]. The facts relevant to the instant Motion are as follows. On April 15, 2019, the Defendant filed the instant Motion challenging the Court's subject matter jurisdiction. Specifically, the Defendant argues that the record evidence demonstrates that Dave Kleiman was not the sole member of Plaintiff W&K Info Defense Research, LLC ("W&K"), and that other members of the company exist whose membership would destroy diversity. The other proposed members include: 1) Uyen Nguyen ("Nguyen"); 2) Coin-Exch PTY Ltd. ("Coin-Exch"); and 3) Lynn Wright.

Further, the Defendant argues that the Second Amended Complaint ("SAC"), ECF No. [83], is deficient because it alleges that both that W&K's exact ownership structure is "unclear due to Craig's contradictory statements" and that "[a]s best as can presently be discerned, [Dave Kleiman] was the sole 'member' of W&K." ECF No. [83], at ¶¶ 70-71. Therefore, the Defendant challenges the Court's subject matter jurisdiction in both a factual and facial attack. On July 10, 2019, the Court held an extensive hearing ("Hearing") on the instant Motion.

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). It is presumed that a federal court lacks jurisdiction in a particular case until the plaintiff demonstrates the court has jurisdiction over the subject matter. *See id.* (citing *Turner v. Bank of No. Am.*, 4 U.S. 8, 11 (1799); *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 182 (1936) ("It is incumbent upon the plaintiff properly to allege the jurisdictional facts ....")). A district court may inquire into the basis of its subject matter jurisdiction at any stage of the proceedings. *See* 13 C. WRIGHT, A. MILLER & E. COOPER, Federal Practice & Procedure § 3522 (1975).

Attacks on subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure may be either facial or factual. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). Like a Rule 12(b)(6) motion, "[a] 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the complaint are taken as true...." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Factual attacks differ because they "challenge[ ] the existence of subject matter jurisdiction in fact ... and matters outside of the pleadings, such as testimony and affidavits, are

considered." *Id.* If a defendant shows a lack of diversity by meeting its burden of production for a factual attack, then the plaintiff must respond with proof definitively evincing diversity exists. *See OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002). Factual attacks also differ from facial attacks because "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891.

### III. DISCUSSION

In the instant Motion, the Defendant argues that the SAC should be dismissed because the Court lacks subject matter jurisdiction over this action. Federal district courts have subject matter jurisdiction over civil actions where the amount in controversy exceeds $75,000.00 and the suit is between citizens of different states. *See* 28 U.S.C. § 1332(a). In analyzing diversity, the citizenship of a limited liability company is determined by the citizenship of its members. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) (requiring all LLC members to be diverse from all opposing parties). In the Defendant's Motion, he asserts a factual challenge on subject matter jurisdiction. However, in his Reply, the Defendant has focused on a facial challenge. *Compare* ECF No. [144], at 9-14 *with* ECF No. [171], at 5. As for his factual attack, the Defendant suggests that other foreign members of W&K exist and thus diversity jurisdiction is destroyed. ECF No. [144], at 9-14. As for the Defendant's facial argument, the Defendant contends that the SAC fails to allege the complete membership of W&K and includes language that reveals that the Plaintiff may be uncertain as to the company's actual ownership. ECF No. [171], at 5. Thus, the Defendant claims that the SAC is facially deficient by failing to adequately allege diversity jurisdiction exists. The Court addresses each argument in turn.

*a) Factual Attack*

Defendant first focuses his factual attack on the Court's subject matter jurisdiction. "While the plaintiff has the burden to prove diversity in a factual attack, that burden exists only if the defendant has first proffered evidence to show a lack of diversity." *JPMCC 2005-CIBC13 Collins Lodging*, 2010 WL 11452084, at *3 (denying motion because defendant's "factual attack on diversity of citizenship is *devoid of evidentiary support*") (emphasis added); s*ee also RG Martin Investments, LLC v. Virtual Tech. Licensing, LLC*, 2017 WL 7792564 at *2 (S.D. Fla. July 7, 2017) ("The burden of pleading diversity of citizenship is upon the party invoking federal jurisdiction, and if jurisdiction is *properly challenged*, that party also bears the burden of proof.") (emphasis added). For the reasons that follow, the Court finds that the Defendant has failed to provide *credible* evidence showing a lack of diversity. As such, he has failed to satisfy his burden of production.

In his Motion, Defendant argues that both Nguyen and Coin-Exch were members of W&K, and that their membership would destroy diversity in this action. ECF No. [144], at 11-13. Then, for the first time in his Reply, the Defendant argues that his ex-wife Lynn Wright was also a member of W&K. ECF No. [171], at 6-7.

> *"Oh! What a tangled web we weave when first we practice to deceive."*
> **Sir Walter Scott, <u>Marmion</u> (1808).**

This is not the first time that the Defendant has made certain representations regarding the membership of W&K. Indeed, the Court notes that the Defendant has made ***several conflicting statements*** regarding even his own ownership of W&K. ECF No. [256], at 29:24-25 ("Judge, I get that there are a number of different statements by Dr. Wright.")

4

These statements include:

On *April 2, 2013*, the Defendant signed a contract, representing that Dave Kleiman is **100% owner** of W&K, which was filed before the Supreme Court of New South Wales. ECF No. [83-5], at 1.

On or about *July and August of 2013*, the Defendant filed a sworn affidavit in the Supreme Court of New South Wales declaring that he and Dave Kleiman each **owned 50%** of W&K. ECF No. [83-4], at 4.

On *April 16, 2018*, in a sworn affidavit the Defendant stated that he has "**never** been a member of W&K." ECF No. [12-2], at ¶ 12 (emphasis added).

On *June 28, 2019*, during his deposition the Defendant testified under oath that he has "**no idea**" who the owners of W&K were, and unequivocally stated that he was not an owner of W&K. *See* ECF No. [242-1], at (233:12-14) ("Q: Who owned W&K in reality? A. Not me.") and (233:22-23) ("Q. You have no idea who owns W&K? A. I do not know that.").

Now, in his Motion and contrary to the statements above, the Defendant argues that three additional parties may be members of W&K. Defendant claims that the record evidence supports the presence of the additional members. ECF No. [144], at 11-14. The Defendant recognizes, in both his Motion and at the Hearing, that in determining whether the Defendant has sufficiently challenged subject matter jurisdiction on a factual attack, the Court is "free to weigh the evidence" presented by the Defendant in his challenge. ECF No. [144], at n.3 (citing *RG Martin Inv., LLC v. Virtual Tech. Licensing, LLC*, 2017 WL 7792564, at *2); ECF No. [256], at 12:14 ("[M]y obligation is—initially to put this in play, is to show the Court evidence. The Court can weigh the evidence."). The Court has thus conducted a careful review of the evidence presented by the Defendant and the record in this case, and finds, however, that the Defendant has failed to present any *credible* evidence showing that any of the parties he suggests are *members* of W&K.

i) **Uyen Nguyen & Coin-Exch**

In his Motion, the Defendant argues that Nguyen, a Vietnamese national, is a member of W&K and Coin-Exch, an Australian corporation, is a member of W&K. ECF No. [144], at 11-13.

5

Because Nguyen is a foreign national and Coin-Exch is a foreign corporation, Defendant asserts that their membership in W&K destroys diversity jurisdiction. *Id.* At the time the Defendant filed his Motion, the Defendant's evidentiary support for these assertions included emails between Dave Kleiman, Craig Wright, and Lynn Wright, public filings available on the Florida Department of State Division of Corporations ("Sunbiz"), and several letters from Ira Kleiman to the Australian Tax Office ("ATO").

As for the emails, which were between Nguyen and Dave Kleiman, the Defendant claimed it evidenced Dave Kleiman extending an offer to serve as a "director" of W&K to Nguyen. ECF No. [144-1]. Three days after the instant Motion was filed, the Defendant filed a Notice Withdrawing Exhibit A. ECF No. [154] (the "Notice"). In the Notice, the Defendant indicated that Exhibit A was being withdrawn because the Defendant could not "verify the date of the email exchange." ECF No. [154]. At the Hearing, the Defendant also withdrew another exhibit (Exhibit F), ECF No. [144-6], attached to his Motion, which was an additional email exchange between Dave Kleiman and Nguyen for the same reasons presented in his Notice. ECF No. [256], at 39:6-9 ("We're not relying on [Exhibit F] ... I would withdraw it now."). In their Response to the Motion, Plaintiffs argued that Exhibit A was a forged email which came to light as a result of the public exposing it as a fraud. ECF No. [159], at 6-11. Specifically, the Plaintiffs claim Exhibit A was withdrawn after members of the public uncovered that the "PGP signature"[1] of the email, purported to be authored/sent by Dave Kleiman, was created ***a year after his death***. *Id.* at 6-7. Nonetheless, because the Defendant has now withdrawn each of these exhibits[2] the Court will not consider either for the purposes of this Motion.

---

[1] "PGP" stands for "Pretty Good Privacy" and is a computer software program that allows a user to "encrypt and decrypt data such as emails, files, or documents." ECF No. [159], at 10.

[2] The Court also notes that the emails in question were produced by the Defendant during discovery. The Defendant, however, is not the sender, recipient, nor copied to the emails. At the Hearing, given that the

As for the Sunbiz filings, the Defendant contends that the March 28, 2014, Sunbiz filing evidences that Nguyen and Coin Exch were members, because Nguyen listed herself as the registered agent and "MS," and Coin Exch as "DR." *Id.* At the Hearing, the Defendant argued that "DR" stood for "director" but that there was some ambiguity as to what "MS" possibly meant. Defendant claims that "M" could be an abbreviation for "manager," however, it could also stand for "member." ECF No. [256], at 35:13-16 ("But Judge, for the purpose of this discussion, we can think of 'M' as manager. But I just want to suggest to the Court the way the State sets this up there's an ambiguity and it could also mean member.").

Taking the 2014 Sunbiz filing at face value, it cannot be discerned that Nguyen nor Coin-Exch were listed as members of W&K. Indeed, in the March 2014 Sunbiz filing, Nguyen solely listed herself as W&K's "registered agent" and "MS." ECF No. [83-25]. Nguyen further listed Coin Exch as holding the position of "DR." *Id.* Sunbiz provides a "Title Abbreviations" index for the public to utilize. *See* ECF No. [159-3]. This index states that the list of abbreviations is not exhaustive and further, that other abbreviations "may be used that are not identified." However, the index provides that the listed abbreviations can hold the following meanings: 1) M = Manager; 2) S = Secretary; and 3) D = Director. ECF No. [159-3], at 3-4. Therefore, the evidence the Defendant attempts to utilize to support the additional membership of Nguyen and Coin-Exch in W&K is completely speculative in nature.

Concerning the May 1, 2014, letter from Ira Kleiman to the ATO, this document evidences solely Ira Kleiman's belief that Nguyen was a director of W&K. *See* ECF No. [144-7], at 2 ("I understand that Ms[.] Nguyen was appointed as a director [of W&K]."). Even the Defendant

---

Defendant claims he has not been in contact with Nguyen "in years," the Court questioned how the Defendant came into possession of the emails. The Defendant claimed he received them as "records" from companies when he left Australia.

testified during his deposition that he understood Nguyen to be the director and not the manager of W&K. *See* ECF No. [246-1] (287:24-288:1) ("Q. Are you aware of any role [Nguyen] played with W&K? A. I believe she was a director."). For purposes of diversity jurisdiction, it is the citizenship of an LLC's members—not its managers—that is relevant. *Silver Crown Investments, LLC v. Team Real Estate Mgmt., LLC*, 349 F. Supp. 3d 1316, 1324 (S.D. Fla. 2018) (Martinez J.) (citing *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004).

The Defendant also argues that the Court should look at the extrinsic evidence to demonstrate that Nguyen is a member of W&K. Specifically, he cites her reinstatement of W&K and the payment of the annual fees in 2014. ECF No. [171], at 7-8. The Court first notes that these filings occurred after Dave Kleiman's death. Further, it is disputed by the parties whether Nguyen or Coin-Exch were even authorized to file on behalf of W&K after Dave Kleiman's death. As such, the "extrinsic evidence" that the Defendant argues should be considered in his factual attack relating to whether Nguyen and Coin Exch were members of W&K is simply not credible. The Defendant also contends that Ira Kleiman did not have the authority to remove Nguyen and Coin-Exch as members of W&K. ECF No. [144], at 13. Because the Court finds that no credible evidence has been presented that Nguyen and Coin-Exch were even members of W&K it need not address this argument.

The evidence proffered by the Defendant is insufficient to meet his burden of production. If the evidence proffered is representative of anything, it does nothing more than represent that other people/entities held officer positions within the company. It does not evidence that W&K had other members.

### ii) Lynn Wright

For the first time and in his Reply, the Defendant argues that his ex-wife, Lynn Wright, may also be a member of W&K. ECF No. [171], at 6-7. As evidence of Lynn Wright's membership, the Defendant proffered a February 16, 2011, email between Dave Kleiman, Lynn Wright, and the Defendant. *See generally* ECF No. [157-2]. At the Hearing, the parties disputed whether the email exchange was truly between Dave Kleiman, the Defendant, and Lynn Wright, or just Dave Kleiman and the Defendant due to the varying names that appear in the sender, recipient, and courtesy copy lines of the emails. The sum and substance of the email exchange includes the inquiry by Dave Kleiman as to whether he could list "you as mgr or mgrm with a foreign address." *Id.* at 2. First, the Court notes that it is unclear whether this question was directed to the Defendant or Lynn Wright. Second, the email chain does not show the response by either the Defendant or Lynn Wright to this question. *See generally id.*

As for the parties surmising what Dave Kleiman intended, even the Defendant's counsel conceded at the Hearing that interpretation of these emails was "extremely speculative." *See* ECF No. [256], at 94:18-21 (". . . the series of emails is interpretations which are extremely speculative, about what was in David Kleiman's head."). Nonetheless, this email does not demonstrate what ultimately occurred. Indeed, upon the first registration of W&K as a limited liability company in Florida, Dave Kleiman listed himself as the "mgrm," the managing member. *See* ECF No. [83-3].

Further, in the Defendant's June 14, 2019 sworn affidavit, the Defendant identified "all potential witnesses relevant to this lawsuit." ECF No. [33-3], at ¶ 20. Of note is that while the Defendant now claims that this email evidences that his then wife Lynn Wright was a member of W&K, he did not list her as a relevant witness at that time. *Id.* Then at his April 4, 2019 deposition, the Defendant testified that he had no idea who owned W&K. *See* ECF No. [242-1], at 22-23 ("Q.

9

You have no idea who owns W&K? A. I do not know that."). Similar to the claims made relating to Nguyen and Coin-Exch, the Defendant fails to proffer any credible evidence challenging the Court's subject matter jurisdiction.

At the Hearing, Defendant argued that the Court cannot both rely upon and find that the statements and evidence provided by him are untrue. *See* ECF No. [256], at 100:6-9 ("Judge, if everything's a lie, then the stuff they rely on when Wright files a contract, or when Wright makes a statement, can't be credited either."). Here, Defendant's argument is novel. He seems to argue that even though his numerous conflicting statements are the very reason confusion has been created as to the ownership of W&K, the Court should nonetheless use these statements as a basis to challenge the Court's subject matter jurisdiction. In essence, the Defendant uses the evidence proffered as both his sword and his shield. Unfortunately, the record is replete with instances in which the Defendant has proffered conflicting sworn testimony before this Court. In weighing the evidence, the Court simply does not find the Defendant's testimony to be credible. As for the remaining "extrinsic evidence," none of the evidence demonstrates additional membership in W&K other than Dave Kleiman.

Accordingly, the Court finds that the Defendant's assertions in his Motion are insufficient as he has failed to provide any credible evidence showing a lack of diversity. While the plaintiff has the burden to prove diversity in a factual attack, that burden exists only if the defendant has first proffered evidence to show a lack of diversity. *See OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002). The Defendant has utterly failed in his burden of production.

    b) *Facial Attack*

As for his facial attack, Defendant argues in his Reply that the SAC insufficiently alleges the citizenship of the parties. ECF No. [171], at 5. A complaint survives a facial attack on subject

matter jurisdiction if the plaintiff's allegations, which are taken as true, sufficiently provide a basis for subject matter jurisdiction. *See Menchaca*, 613 F.2d at 511. As a limited liability company, W&K's citizenship is determined by the citizenship of its members. The SAC alleges that the "exact ownership structure [of W&K] is unclear due to Craig's contradictory statements." ECF No. [83], at ¶ 70. However, the SAC then alleges in the next paragraph that "[a]s best as can presently be discerned, Dave was the sole 'member' of W&K." *Id.* at ¶ 71. During the Hearing, Plaintiff argued that the SAC was drafted to reflect that the only possible members of W&K could have been the Defendant or Dave Kleiman. ECF No. [256], at 84:17-22 ("And so we were just being careful, saying: "Look, as best as can be discerned, based on everything we have, on our information and belief, and on all the evidence available to us, [publicly] available and privately available, Dave Kleiman was the sole member."). Since the initiation of this case, however, the Defendant has unequivocally affirmed in a sworn affidavit that he has "never been a director, member, shareholder, officer, employee, or representative of W&K." ECF No. [12-2], at ¶ 12. A "[c]ourt may dismiss the complaint based on a facial challenge only if it is clear that no relief could be granted *under any set of facts that could be proven consistent with the allegations*." *World Fuel Servs., Inc. v. Pan Am World Airways Dominicana, S.A.*, No. 18-20321-Civ, 2018 WL 3730903, at *2 (S.D. Fla. Apr. 17, 2018) (Torres, J.) (emphasis added) (quoting *Hames v. City of Miami*, 479 F. Supp. 2d 1283-84 (S.D. Fla. 2007)).

Here, the Court is cognizant of the Defendant's argument that the SAC includes an allegation that the exact ownership structure of W&K is "unclear." However, by the Defendant's own admission, he was not an owner nor a member of W&K. Thus, any ambiguity in the SAC is easily dispelled. Further, the SAC also directly states that Dave Kleiman was the "sole owner" of

W&K. As such, the Court concludes that the SAC survives the facial attack related to the Court's diversity jurisdiction.

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [144]**, is **DENIED**.

**DONE AND ORDERED** in Chambers, at Miami, Florida, on August 15, 2019.

**BETH BLOOM**  
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record