

```
-----Original Message-----
From: Craig S Wright [mailto:craig.wright@information-defense.com]
Sent: Wednesday, 12 March 2008 6:37 PM
To: dave kleiman
Subject: FW: Defamation and the diffculties of law on the Internet.
```

I need your help editing a paper I am going to relase later this year. I
have been working on a new form of electronic money. Bit cash, Bitcoin...

You are always there for me Dave. I want you to be a part of it all.

I cannot release it as me. GMX, vistomail and Tor. I need your help and I
need a version of me to make this work that is better than me.

Craig



# EXHIBIT 7

---------- Forwarded message ----------
From: **Craig S Wright** <craig.wright@hotwirepe.com>
Date: Fri, Apr 25, 2014 at 11:22 PM
Subject: Chronology of Craig Wright.docx
To: Ira K

And more reading

## Chronology of Craig Wright (CSW) activities & transactions

**2009**   Craig Wright mines some bitcoins and attempts to incorporate IP into Integyrs

**2010**   ATO Rejects IP transaction and CSW retains IP

**2011**   CSW sends Bitcoin overseas. Value at that stage AUD $0.02   Founds a company in USA with David Kleiman, a business associate from forensic & security related IT areas.  Kleiman & Wright co-authored books on the subject and had fairly longstanding relationship.  The established was W&K Info Defense.  It was set up to further statistical and risk mitigating algorithms, to develop some ideas around CBT learning methodologies (CSW was by then lecturing regularly for Charles Sturt University and others) and to mine Bitcoin.  This was done on behalf of entities in Belize (related to Kleiman) and entities in Singapore and the Seychelles (related to Wright).   There is an agreement between CSW and W&K whereby CSW loans his Bitcoin and expertise to the company with payback and payment to be received in Bitcoin. In all, 1.1 million Bitcoin reverted to Sq and Seychelles accounts.  It is unkown how much reverted to Belize and Kleiman.

**2012**   CSW forms 2 UK trust companies  (non trading)  and owned through Seychelles.
          Permanent Success   &   Design by Human
Plans from W&K develop to the point where there is imminent product in the eLearning space.  Discussions progress.  At the same time CSW is contemplating Bitcoin and its regulation.

**2013**   Structural discussions progress to a plan and an agreement between W&K and CSW.  See share sale agreement. See also Strasan Agreement.   This is done by early April 2013.  David Kleiman dies shortly thereafter reportedly from infections related to injuries incurred in US military. He was wheelchair bound and had related circulatory issues.  Per terms of the Agreement, CSW forms Hotwire Pre-emptive Intelligence Pty Ltd in Australia and continues the planned program. ( June 2013) Acquires IP and software from Strasan and registers for R&D with AusIndustry. All prior to June 30.  AusIndustry accepts his application and both AI and ATO do an audit.  Hotwire passes AI audit but ATO audit drags on.

During the early 2013 period, CSW is pursuing Exchange and banking ideas with Bitcoin.  At the same time he is a lecturer and a speaker at functions on topics around IT security and SCADA.  At one of these in March 2013, he meets a fellow introduced as Mark Ferrier.  They chat about mining and security and CSW says he's is actively pursuing the Bitcoin banking possibility but is stumbling due to the need for core banking software. Nothing more said. Within days, weeks he starts receiving emails from Ferrier (MJF) who intimates he may have someone who can help with the banking stuff.  There are a series of emails that follow this and a further meeting at some point and it all culminates on the 2nd of June 2013, when CSW agrees to buy a variety of things through MJF's company as agent.  These include:

- Core banking software and source code from al Baraka
- Seimens automation software
- Exchange software - micropayments
- Some gold ore
- And even MJF's father providing some consulting. Ian Ferrier – noted accountant

There are invoices for all of this.  CSW did due diligence on MJF through ASIC D&B  Whois etc and both the individual and his company came up clean. The notion of Ian Ferrier lent some credibility.  Missed social media however, which would probably have given him a better idea as to who he was dealing with.  Payment was from one of the UK entities and a directed payment supported by a Loan agreement to CSW.  He has since traced destination as somewhere in Africa.

The software and source code have all been delivered.  It has been determined that MJF is unable to deliver the gold ore and his father denies any knowledge of any agreement and purports to be estranged from his son.  On that basis CSW took action in the Supreme court of NSW for recovery of his Bitcoin or value for the Ore Purchase and consulting fees. Judgment has been given.

Emails, contracts and any correspondence has been provided both in court and to the ATO in support of the facts.  CSW has offered to assist the ATO in pursuit of MJF should they choose to do so.  We are prepared and have briefed counsel on a Federal court action for misleading and deceptive behavior as well as the judgment debt.

Return to early July 2013, CSW communicates with ATO and briefs them on his intention to do the MJF transaction including the offshore payment in Bitcoin.  He states at that time his relative holding or control of considerable quantities of Bitcoin and a hope/intention of developing a regulated Bitcoin bank in Australia. He has actively pursued Private Rulings with ATO on many of his transactions and processes;  forms a nucleus of companies for Research and Development of the eLearning opportunity and also eBanking.

Since that time, CSW has populated Hotwire with some top people to pursue both R&D projects.  He has paid for all this through cashing in Bitcoin when and where possible and after a long struggle with the ATO receiving 1.45Million in R&D rebate from the 2013 tax return for Hotwire.  He has spent about 450,000 BTC over that period, much of it at values less than $120.00 so there is no questioning his commitment to trying to do something positive in Australia.

He has also been under audit for most of 2014 financial year by one entity or another.  And that leads us to today.  What the hell is he up to?

There is a lot of IP and 'stuff' in the mix.  All up, it's around a hundred million dollars' worth.  This IP originates in work CSW has been doing for more than 10years; it originates in things that came from W&K; it has to do with the software acquired.  The values and distribution have all

been given to the ATO.  It amounts to a third each for Cloudcroft  Hotwire and Coin exch.
Cloudcroft gets the security related IP,  Coin-Exch gets the banking and exchange and Hotwire
gets all of the automation and  R&D based stuff.  The transactions were all intended to go into
the Trust to be distributed.  That may or may have been the way it transacted.  That is the
cleanest solution.

Why not just run the purchase through the entities?  Because each transaction had a mix of
acquisitions that needed to parsed to different entities.   MJF had banking, automation,
exchange and Ore; W&K also had variety as did the other.  The neatest solution was to bring
them into one pot and then distribute accordingly.  And that is the mess we are in.



# EXHIBIT 14

---------- Forwarded message ----------
From: **Craig S Wright** <craig.wright@hotwirepe.com>
Date: Sat, Mar 1, 2014 at 3:00 PM
Subject: Re: Bond villains
To: Ira K <clocktime2020@gmail.com>


Around that. Minus what was needed for the company's use

Sent from my HTC

----- Reply message -----
From: "Ira K" <clocktime2020@gmail.com>
To: "Craig S Wright" <craig.wright@hotwirepe.com>
Subject: Bond villains
Date: Sun, Mar 2, 2014 06:42

Just to clarify on thoughts from previous email... In one of the email exchanges between Dave and you, he mentioned that you had 1 million Bitcoins in the trust and since you said he has 300,000 as his part. I was figuring the other 700,000 is yours.  Is that correct?

Ira


On Sat, Mar 1, 2014 at 9:23 AM, Ira K <clocktime2020@gmail.com> wrote:
Can you allocate 20% to my dad and 80% to myself?

So if I understand correctly, you have the rights to the remaining portion of Bitcoins stored on one of Dave's drives here?  If that's true we just need to figure out how to decrypt the drives.

Ira


On Friday, February 28, 2014, Craig S Wright <craig.wright@hotwirepe.com> wrote:
The trust Dave setup should have around 300,000

We moved everything offshore as a result of my early fight with the Tax office. This was back in 2011. The BTC would be on a server or hard drive, just the rights are overseas.

The price is displayed in the diagram below.


I do not know what was going on with Dave before he died, or if he was taking notice – he seemed distant and we did not talk much in April other than a couple company matters. In the couple months before the end, it finally started to be worth something. Then it crashed just before he died, then it recovered.

I need to allocate shares to Dave's estate. You need to tell me how.

Craig

**From:** Ira K [mailto:clocktime2020@gmail.com]
**Sent:** Saturday, 1 March 2014 12:53 PM
**To:** Craig S Wright
**Subject:** Re: FW: Bond villains

Hi Craig,

I was just noticing the sentence where Dave mentioned Bitcoins were not worth much at the time.

That must be why he never cashed any in.

Do you still have a million bitcoins in the trust he setup?  And do you think there is a chance of finding

the bank holding them?  If I can be of help just let me know what you need.  Since Dave setup the trust,

perhaps my identification is needed in order to gain access?

Do you know how the bitcoins are stored in the trust?  Are they on a hard drive?

I don't quite understand why it was necessary to keep them in these offshore places.

And are there two seperate trusts?

1.) GICSR Trust in Belize.

2.) Design by Human in Seychelles.

Sorry if I sound a bit confused... it's because I am.  :-)

Ira

On Fri, Feb 28, 2014 at 12:54 AM, Craig S Wright <craig.wright@hotwirepe.com> wrote:

Just some emails from Dave.

**From:** Craig S Wright
**Sent:** Monday, 25 January 2010 2:15 PM
**To:** 'Craig Wright'
**Subject:** Bond Villains

-----BEGIN PGP SIGNED MESSAGE-----

Hash: SHA1

Craig,

How does the following sound?

*I very much wanted to find some way to include a short message, but the problem is, the whole world would be able to see the message. As much as you may keep reminding people that the message is completely non-private, it would be an accident waiting to happen.*

Look up Wotty - it is not a mistake.

Are you really sure you want to know nothing of the Panama fund? I know you are having tax problems, but Bitcoins are not worth enough to be a bother. They are a wonderful idea, but you need to get some others involved and actually accept help from somebody other than me one day. I am not going to be here for you forever you know.

Worse, if you send yourself bankrupt it will not help anyone. I know you are a stubborn bastard mate (I can be an Ozzie too), I have helped you in many of the fights you get into online and more, but you need to know when to stop. Leave the government for now. Stop or they will really do some damage to you.

Dave

PS, thanks for making me a part of this.



# EXHIBIT 11

FILED

1 3 AUG 2013

VO

Form 3B (version 4)
UCPR 6.2

# STATEMENT OF CLAIM

## COURT DETAILS

| | |
|---|---|
| Court | NSW Supreme Court |
| Division | General division / Common Law |
| List | General |
| Registry | Sydney |
| Case number | 2013 | 245661 |

## TITLE OF PROCEEDINGS

| | |
|---|---|
| Plaintiff | **Craig Steven Wright (ABN 97 481 146 384)** |
| Defendant | **W&K INFO DEFENSE RESEARCH LLC** |

## FILING DETAILS

| | |
|---|---|
| Filed for | **Craig S Wright** |
| | Plaintiff |
| Contact name and telephone | Craig S Wright |
| | 0417 683 914 |
| Contact email | Craig S Wright (craigswright@acm.org) |

## TYPE OF CLAIM

Mercantile Law - Sale of Goods and Services – Contractual Dispute

Mercantile Law – ~~Other~~ Money ~~Lent~~

## RELIEF CLAIMED

1     That the defendant pay the plaintiff the total amount claimed below.

| | |
|---|---|
| Amount of claim | $ $28,533,016.79 |
| Interest | $ 0 |
| Filing fees | $ 999.00 |
| Service fees | $ 34.00 |
| Solicitors fees | $ 0.00 |
| **TOTAL** | **$ $28,534,049.79** |

## PLEADINGS AND PARTICULARS

1     Between 2011 and 2013 the plaintiff provided contract labour services to the defendant. The plaintiff loaned money to the defendant to the defendant at a set interest rate with a commercial expectation that the said monies would be repaid in full when a project was completed.

2     This was issued in Bitcoin. The value at the current date is $13,917,775.

3     The Software and SDK developed under this project is guaranteed against the amounts of this claim.

4     The defendant is a company that operates from Palm Beach, FL, USA and does research in homeland security research.

5     By contract dated 8 January 2009, the Defendant agreed to pay the Plaintiff for property and consulting services to complete research. The contract was bonded against the intellectual property of the defendant.

6     The material terms of the purchase contract were:

     a.  The Plaintiff was the contractor and financier

     b.  The Defendant was the Vendor

     c.  Completion was to take place on 30 June 2013.

     d.  Time was of the essence of the contract.

     e.  That in the event that the Purchaser breached the contract, the Seller could either affirm or terminate the contract with a full return of value.

7     The plaintiff conducted a project for the development of a Bitcoin SDK and exchange.



3

8       The contract was executed with an agreement that all created Intellectual property reverts to the ownership of the plaintiff with interest if the project concludes without assignment of shares in the defendant.

9       The contract set the interest rate at 12% calculated annually.

10      The exchange rate was contracted with a formula to be $1.12 at the point of breach.

11      The funding was supplied using Bitcoin and Gold bonds.

12      A bond of Au $20,000,000.00 was provided to cover funding aspects of the research and for the provision of ASC hardware as a pooled amount with a depreciated capitals value of $8,828,571.29 with straight line depreciation which has 5 years remaining.

13      The contract stated that a breach would lead to liquidated damages to the amounts stated as the project limits. If the liquidated amount is not paid all IP and systems returns to the sole ownership of the plaintiff.

14      The IP is software and code used in the creation of a Bitcoin system.

15      The defendant is unable to complete its responsibilities due to the death of its director, Mr Kleiman.

16      The total debt after depreciation of the hardware comes to $22,746,346.29 in Australian dollars. The Interest on this amount is calculated at $AU 5,786,670.50.

17      The plaintiff claims:

        Debt of $ $28,533,016.79.

        Interest pursuant to section 100 Civil Procedure Act 2005 from 01 July 2013 to judgement.


**SIGNATURE**

I acknowledge that court fees may be payable during these proceedings.  These fees may include a hearing allocation fee.

Signature

Capacity                    Plaintiff

Date of signature           1 2 Aug 13

**NOTICE TO DEFENDANT**

**If you do not file a defence within 28 days of being served with this statement of claim:**

- **You will be in default in these proceedings.**
- **The court may enter judgment against you without any further notice to you.**

The judgment may be for the relief claimed in the statement of claim and for the plaintiff's costs of bringing these proceedings. The court may provide third parties with details of any default judgment entered against you.

**HOW TO RESPOND**

**Please read this statement of claim very carefully. If you have any trouble understanding it or require assistance on how to respond to the claim you should get legal advice as soon as possible.**

You can get further information about what you need to do to respond to the claim from:

- A legal practitioner.
- LawAccess NSW on 1300 888 529 or at www.lawaccess.nsw.gov.au.
- The court registry for limited procedural information.

You can respond in one of the following ways:

1   **If you intend to dispute the claim or part of the claim,** by filing a defence and/or making a cross-claim.

2   **If money is claimed, and you believe you owe the money claimed,** by:
    - Paying the plaintiff all of the money and interest claimed.  If you file a notice of payment under UCPR 6.17 further proceedings against you will be stayed unless the court otherwise orders.
    - Filing an acknowledgement of the claim.
    - Applying to the court for further time to pay the claim.

3   **If money is claimed, and you believe you owe part of the money claimed**, by:
    - Paying the plaintiff that part of the money that is claimed.
    - Filing a defence in relation to the part that you do not believe is owed.

Court forms are available on the UCPR website at www.lawlink.nsw.gov.au/ucpr or at any NSW court registry.

**REGISTRY ADDRESS**

| | |
|---|---|
| Street address | 184 Phillip St, Sydney NSW 2000 |
| Postal address | Supreme Court of NSW, GPO Box 3, Sydney NSW 2001 Australia  2000 |
| Telephone | (02) 9377 5840 |

**#AFFIDAVIT VERIFYING**

| | |
|---|---|
| Name | Craig Steven Wright |
| Address | 43 St Johns Ave Gordon NSW 2072 |
| Occupation | Lecturer/Director |
| Date | 12 Aug2013 |

I say on oath:

1    I am the plaintiff.

2    I believe that the allegations of fact in the statement of claim are true.

SWORN at                          Gordon

Signature of deponent

Name of witness           ~~Craig Steven Wright~~

Address of witness 818 Pacific Hwy
                   Gordon NSW 2072

Capacity of witness                Justice of the peace

CHRISTIAN HOFMANN
Reg. No 195484
Justice of the Peace in and for
the State of New South Wales

And as a witness, I certify the following matters concerning the person who made this affidavit (the **deponent**):

1    #I saw the face of the deponent. [OR, delete whichever option is inapplicable]
     ~~#I did not see the face of the deponent because the deponent was wearing a face covering, but I am~~
     ~~satisfied that the deponent had a special justification for not removing the covering.*~~

2    ~~#I have known the deponent for at least 12 months. [OR, delete whichever option is inapplicable]~~
     #I have confirmed the deponent's identity using the following identification document:

     _NSW Driver Licence_

     Identification document relied on (may be original or certified copy) †

Signature of witness

Note:  The deponent and witness must sign each page of the affidavit.  See UCPR 35.7B.

---

[* The only "special justification" for not removing a face covering is a legitimate medical reason (at April 2012).]

[†"Identification documents" include current driver licence, proof of age card, Medicare card, credit card, Centrelink pension card, Veterans Affairs entitlement card, student identity card, citizenship certificate, birth certificate, passport or see Oaths Regulation 2011.]

6

## #PARTY DETAILS

### PARTIES TO THE PROCEEDINGS

**Plaintiff**

Craig Steven Wright

**Defendant**

W&K INFO DEFENSE RESEARCH LLC

4371 Norhtlake Blvd #314

Palm Beach

FL 33410 - 6253 [Defendant]

### FURTHER DETAILS ABOUT PLAINTIFF[S]

**Plaintiff**

| | |
|---|---|
| Name | Craig Steven Wright |
| Address | 43 St Johns Ave |
| | Gordon NSW 2072 |

### Contact details for plaintiff acting in person or by authorised officer

| | |
|---|---|
| Address for service | as above |
| Telephone | 0417 683 914 |
| Email | craigswright@acm.org |

### DETAILS ABOUT DEFENDANT

**Defendant**

| | |
|---|---|
| Name | W&K INFO DEFENSE RESEARCH LLC |
| Address | 4371 Norhtlake Blvd #314 |
| | Palm Beach |
| | FL 33410 - 6253 |



Form 3B (version 4)
UCPR 6.2

# STATEMENT OF CLAIM

## COURT DETAILS

Court      NSW Supreme Court

Division      General division   Common Law

List      General

Registry      Sydney

Case number      2013 / 225985

## TITLE OF PROCEEDINGS

Plaintiff      **Craig Steven Wright (ABN 97 481 146 384)**

Defendant      **W&K INFO DEFENSE RESEARCH LLC**

## FILING DETAILS

Filed for      **Craig S Wright**

     Plaintiff

Contact name and telephone      Craig S Wright

     0417 683 914

Contact email      Craig S Wright (craigswright@acm.org)

## TYPE OF CLAIM

Mercantile Law - Sale of Goods and Services – Contractual Dispute -

~~Mercantile Law – Other – Money Lent~~



2

## RELIEF CLAIMED

1    That the defendant pay the plaintiff the total amount claimed below.

| | |
|---|---|
| Amount of claim | $ 28,253,633.00 |
| Interest | $ 0 |
| Filing fees | $ 999.00 |
| Service fees | $ 34.00 |
| Solicitors fees | $ 0.00 |
| **TOTAL** | **$ 28,254,666.00** |

## PLEADINGS AND PARTICULARS

1    Between 2011 and 2013 the plaintiff provided contract labour services to the defendant. The plaintiff loaned money to the defendant to the defendant at a set interest rate with a commercial expectation that the said monies would be repaid in full when a project was completed.

2    The defendant is a company that operates from Palm Beach, FL, USA and does research in homeland security research.

3    By contract dated 27 October 2008, the Defendant agreed to pay the Plaintiff for property and consulting services to complete research. The contract was bonded against the intellectual property of the defendant.

4    The material terms of the purchase contract were:

     a.  The Plaintiff was the contractor and financier

     b.  The Defendant was the Vendor

     c.  Completion was to take place on 30 June 2013.

     d.  Time was of the essence of the contract.

     e.  That in the event that the Purchaser breached the contract, the Seller could either affirm or terminate the contract with a full return of value.

5    The plaintiff conducted four (4) projects associated with the DHS (Dept. of Homeland Security USA) with the defendant under contract:

     a.  BAA 11-02-TTA 01-0127-WP: TTA 01 - Software Assurance: Software Assurance through Economic Measures



3

    b. BAA 11-02-TTA 05-0155-WP: TTA 05 - Secure. Resilient Systems and Networks

    c. BAA 11-02-TTA 09-0049-WP: TTA 09 - Cyber Economics

    d. BAA 11-02-TTA 14-0025-WP: TTA 14 - Software Assurance MarketPlace (SWAMP)

6    In May 2013 the primary director of the defendant died leaving the project not transferred to the plaintiff and not returning funds. These funds were rated as:

    a. TTA 01    US$ 650,000

    b. TTA 05    US$ 1,8000,000

    c. TTA 09    US$ 2,200,000

    d. TTA 14    US$ 1,200,000

7    The contract was executed with an agreement that all created Intellectual property reverts to the ownership of the plaintiff with interest if the project concludes without assignment of shares in the defendant.

8    The contract set the interest rate at 8% calculated annually.

9    The exchange rate was contracted with a formula to be $1.12 at the point of breach.

10    The funding was supplied using Bitcoin and Gold bonds.

11    A bond of Au $20,000,000.00 was provided to cover funding aspects of the research.

12    The contract stated that a breach would lead to liquidated damages to the amounts stated as the project limits. If the liquidated amount is not paid all IP returns to the sole ownership of the plaintiff.

13    The IP is software and code used by the US Military, DHS and other associated parties.

14    The defendant is unable to complete its responsibilities due to the death of its director, Mr Kleiman.

15    The debt of US$ 5,850,000 comes to $6,552,000 in Australian $. The Interest on this amount is calculated at $AU 1,701,633.00.

16    The plaintiff claims:

Debt of $ 28,253,633.00



4

Interest pursuant to section 100 Civil Procedure Act 2005 from 01 July 2013 to judgement.

## SIGNATURE

I acknowledge that court fees may be payable during these proceedings. These fees may include a hearing allocation fee.

Signature

Capacity                    Plaintiff

Date of signature           25 Jul 13

5

**NOTICE TO DEFENDANT**

**If you do not file a defence within 28 days of being served with this statement of claim:**

- **You will be in default in these proceedings.**

- **The court may enter judgment against you without any further notice to you.**

The judgment may be for the relief claimed in the statement of claim and for the plaintiff's costs of bringing these proceedings. The court may provide third parties with details of any default judgment entered against you.

**HOW TO RESPOND**

**Please read this statement of claim very carefully. If you have any trouble understanding it or require assistance on how to respond to the claim you should get legal advice as soon as possible.**

You can get further information about what you need to do to respond to the claim from:

- A legal practitioner.

- LawAccess NSW on 1300 888 529 or at www.lawaccess.nsw.gov.au.

- The court registry for limited procedural information.

You can respond in one of the following ways:

1    **If you intend to dispute the claim or part of the claim,** by filing a defence and/or making a cross-claim.

2    **If money is claimed, and you believe you owe the money claimed,** by:

- Paying the plaintiff all of the money and interest claimed.  If you file a notice of payment under UCPR 6.17 further proceedings against you will be stayed unless the court otherwise orders.

- Filing an acknowledgement of the claim.

- Applying to the court for further time to pay the claim.

3    **If money is claimed, and you believe you owe part of the money claimed,** by:

- Paying the plaintiff that part of the money that is claimed.

- Filing a defence in relation to the part that you do not believe is owed.

Court forms are available on the UCPR website at www.lawlink.nsw.gov.au/ucpr or at any NSW court registry.

**REGISTRY ADDRESS**

| | |
|---|---|
| Street address | 184 Phillip St, Sydney NSW 2000 |
| Postal address | Supreme Court of NSW, GPO Box 3, Sydney NSW 2001 Australia  2000 |
| Telephone | (02) 9377 5840 |

6

## #AFFIDAVIT VERIFYING

Name                    Craig Steven Wright

Address                 43 St Johns Ave Gordon NSW 2072

Occupation              Lecturer/Director

Date                    23 July 2012

I say on oath:

1        I am the plaintiff.

2        I believe that the allegations of fact in the statement of claim are true.

SWORN at                Gordon

Signature of deponent

Name of witness         Craig Steven Wright        Karle Wiggins.

Address of witness      KARLIE WIGGINS
                        Reg. No. 194194
                        A Justice of the Peace in and for the      **Ku·ring·gai Council**
                        State of New South Wales
Capacity of witness     Justice of the peace      818 Pacific Highway, Gordon
                                                  Locked Bag 1056, Pymble, NSW 2073
                                                  ABN: 86 408 856 611

And as a witness, I certify the following matters concerning the person who made this affidavit (the **deponent**):

1        #I saw the face of the deponent. [OR delete whichever is not applicable]
         #I did not see the face of the deponent because the deponent was wearing a face covering, but I am
         satisfied that the deponent had a special justification for not removing the covering.*

2        #I have known the deponent for at least 12 months. [OR delete whichever is not applicable]
         #I have confirmed the deponent's identity using the following identification document:

                        NSW D/L    12510410

                        Identification document relied on (may be original or certified copy) †

Signature of witness

Note: The deponent and witness must sign each page of the affidavit. See UCPR 35.7B.

[* The only "special justification" for not removing a face covering is a legitimate medical reason (at April 2012).]

[†"Identification documents" include current driver licence, proof of age card, Medicare card, credit card,
Centrelink pension card, Veterans Affairs entitlement card, student identity card, citizenship certificate, birth
certificate, passport or see Oaths Regulation 2011.]



7

8

# #PARTY DETAILS

## PARTIES TO THE PROCEEDINGS

**Plaintiff**                                      **Defendant**

Craig Steven Wright                           W&K INFO DEFENSE RESEARCH LLC

                                                           4371 Norhtlake Blvd #314

                                                           Palm Beach

                                                           FL 33410 - 6253 [Defendant]

## FURTHER DETAILS ABOUT PLAINTIFF[S]

**Plaintiff**

Name                          Craig Steven Wright

Address                       43 St Johns Ave

                                    Gordon NSW 2072


## Contact details for plaintiff acting in person or by authorised officer

Address for service          as above

Telephone                     0417 683 914

Email                            craigswright@acm.org

## DETAILS ABOUT DEFENDANT

**Defendant**

Name                          W&K INFO DEFENSE RESEARCH LLC

Address                       4371 Norhtlake Blvd #314

                                    Palm Beach

                                    FL 33410 - 6253

