# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC<br><br>*Plaintiffs*,<br><br>v.<br><br>CRAIG WRIGHT<br><br>*Defendant*. | CASE NO.: 9:18-cv-80176-BB/BR |

## FIRST REQUESTS FOR ADMISSION TO DEFENDANT

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure Plaintiff Ira Kleiman, requests that Defendant responds in writing, subscribed under oath, to the following FIRST REQUESTS FOR ADMISSION.

Pursuant to Fed. R. Civ. P. 36, the following rules govern your response to the specific Requests:

1. Denial of any statement as to which an admission is required must fairly meet the substance of the requested admission.

2. When good faith requires that an answer be qualified or denied in part as to a specific admission that is requested, you must specify the part that you admit and qualify or deny the remainder.

3. You may not give lack of information or knowledge as a reason for a failure to admit or deny the truth of the statement as to which an admission is requested unless you state that you have made reasonable inquiry and that the information known or reasonably obtainable by you is insufficient to enable you to admit or deny the truth of the matter as to which an admission has been requested.

4. If you consider that a matter as to which an admission has been requested presents a genuine issue for trial, you may not, on that ground alone, object to the request.

5. Statements as to which admissions are requested shall be deemed admitted if you fail to admit, deny, or object to the statements within thirty (30) days after service of this document.

6. If any request for admission is objected to on the ground of overbreadth, specifically state the matter in which it is overly broad and respond to the request for admission as narrowed to conform to such objection.

7. In conformity with Fed. R. Civ. P. 37, as to any matter denied, Defendant may apply to the Court for an order requiring Plaintiffs to pay the reasonable expenses incurred in proving the truth of any such matter, including the costs of depositions and attorneys' fees.

## GENERAL DEFINITIONS

Notwithstanding any definition below, each word, term, or phrase used in these Interrogatories is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. All terms not otherwise defined shall have their ordinary and common meanings. In each Definition, the singular shall include the plural and the plural shall include the singular.

1.     "You," "your," or "Plaintiff" means the Defendant, Craig Wright, as well as all other persons acting or purporting to act on his behalf.

2.     The term "communication" means, without limitation, oral or written communications of any kind, such as electronic communications, direct communications through social media, facsimiles, telephone communications, correspondence, exchange of written or recorded information, face-to-face meeting, or other conversations or communications.

3.     "Identify," when referring to a natural person, means to give, to the extent known: the person's full name, present or last known residential or business address, and present or last known place of employment.

4.     "Identify" used with reference to a document means to state, for each document to be identified, the date, the author and signatories, the recipients and addresses, the type of document (e.g., letter, memorandum, email, etc.), the substance of the document, the identity and addresses of all other persons who received copies, the custodian, and the location.

5.     "Identify" used with reference to an oral communication means to give, for each communication to be identified, the means of communication, the substance of the communication, and the date, time, and place of the communication, and the persons who participated in the communication.

6.     "The term "including" shall not be construed as limiting any request, and shall mean the same as "including, but not limited to."

7.     The term "person" means, without limitation, any natural person, corporation, partnership, limited liability company, proprietorship, joint venture, trust, association, government entity, firm, business unit, group, or other form of legal entity.

8.     The term "relating to" means, without limitation, the following concepts: discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating,

constituting, consisting of, comprising, studying, surveying, projecting, assessing, recording, summarizing, supporting, contradicting, criticizing, reporting, commenting, concerning, or otherwise involving, in whole or in part.

9. The term "document[s]" shall be synonymous in meaning and equal in scope to the broadest possible meaning provided by Rule 34 of the Federal Rulesof Civil Procedure, including electronically stored information, and shall encompass every writing or record of every type and description, including originals and any copy thereof, and every tangible thing that is or has been in your possession, custody, or control, or of which you have knowledge, including but not limited to hard copies, electronic documents, electronic or computerized data compilations, software, software images, or downloads. This term shall include all written, recorded, transcribed, or graphic matter of every type and description, including, but not limited to, correspondence, analyses, letters, telegrams, memoranda, reports, bills, receipts, telexes, contracts, bulletins, invoices, publications, books, accounts, statements, studies, surveys, pamphlets, reports, surveys, charts, maps, tabulations, graphs, tapes, data sheets, data processing cards, printouts, net sites, microfilm, indices, calendar or diary entries, manuals, guides, outlines, abstracts, histories, agendas, catalogs, advertisements, direct mail solicitations, applications, forms, notebooks, models, devices, sketches, pictures, photographs, notes, stenographic notes, handwritten notes, drafts (including, but without limitation, differences from the original due to handwritten notes, editing, interlineation, blind copies, omissions, or any other alternations), computer records, voice recordings, video recordings, minutes or records of meetings, conferences, electronic mail, text messages, films, tapes, slides, electronic files and records, statistical compilations, and all other data compilations, regardless of whether a particular document is privileged or confidential, and regardless of the form of storage (such as on paper, microfiche, magnetic tape, magnetic disk, CD-ROM, optical disk, or electronic storage device). Documents shall include communications, as

4

defined above.

10. "All" and "any" shall mean and include "any and all."

11. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be outside its scope.

12. The present tense of a verb includes its past tense and vice versa.

## REQUESTS FOR ADMISSION

1. Admit that on or about August 26, 2019 you spoke with Mr. Brenden Sullivan (or another person affiliated with Modern Consensus) and made the statements attributed to you below in response to the statements made by the interviewer:[1]

**MODERN CONSENSUS: How are ya doing?**

CRAIG WRIGHT: Been better.

**MODERN CONSENSUS: I'll just ask, what does today's ruling actually mean for Bitcoin and crypto?**

CRAIG WRIGHT: The judge won't rule on whether I'm Satoshi. But the partnership is. So when Dave Kleiman passed, the partnership transferred to Ira.

**MODERN CONSENSUS: Will this affect BSV?**

CRAIG WRIGHT: BSV, it won't. But the judge ordered me to send just under 500,000 BTC over to Ira. Let's see what it does to the market. I wouldn't have tanked the market. I'm nice.

**MODERN CONSENSUS: You could flood the market with $5 billion in BTC today, but I'm guessing you won't. You have too much in progress on-chain. But what if the chain collapses? Presumably the market could tank to bad that whoever inherits his BTC would get substantially less.**

---

[1] See: https://modernconsensus.com/cryptocurrencies/bitcoin/exclusive-interview-with-craig-wright-just-after-ordered-to-pay-5-billion-in-bitcoin/

CRAIG WRIGHT: I'm just not going to do that.

**MODERN CONSENSUS: I know people think you're a miserable prick. But you once told me that you and your wife had decided that this $10 billion fortune was too much. You said you worried about what it would do for your kids.**

CRAIG WRIGHT: It's fucking scary. Now the kids are going to know that we have the other $5 billion. And it really sucks. Imagine that (laughs). I had planned to live a long time and hopefully they wouldn't know until they were older and we were gone. It could affect their whole lives.

**MODERN CONSENSUS: Not to get you in hot water with the judge, but it doesn't sound like anyone thought through what this would really mean to just hand over the keys to a huge industry.**

CRAIG WRIGHT: No one seems to get that I've made 800 patents in IP and more are coming. Just on that I could have raised a lot of money. I'm sorry, BTC, but that might be a problem. They might have to convince Ira not to dump it. I can't convince him not to dump it. Ira has to do what Ira has to do. And it wouldn't have been me. And I don't need it. He does.

**MODERN CONSENSUS: I mean, I get it. You make money creating things for nChain, so you don't need to dump any BTC from the Tulip Trust. But they can't force Ira to sell. Can they?**

CRAIG WRIGHT: He doesn't actually need it but he wants it. Everyone might want to start praying, because I complied with courts and that might get scary really, really quickly. The courts ruled that Ira *inherited* the $5 billion. Now he has to pay estate tax on that if he wants it.

**MODERN CONSENSUS: Whoa! The estate tax is 40%. Unless Ira has $2 billion in cash, he will have to dump 2 million BTC to pay the taxes.**

CRAIG WRIGHT: Yeah.

**MODERN CONSENSUS: Sorry. I'm just running the number. How are you feeling after all this?**

CRAIG WRIGHT: I'm fine, we're going to keep going. But I'll make sure I keep supporting it. I can't help.

**MODERN CONSENSUS: But how will you actually get the money? We've talked over the years and I've always tried to respect your privacy. Just because it's none of my business how**

much someone else is holding. But now you'll have to break the Tulip Trust to transfer the coins.

**CRAIG WRIGHT:** If the court makes an order, I will comply with the order. And the court has made an order. It's that simple.

**MODERN CONSENSUS: So this affects the so-called "Satoshi Blocks" of unmoved bitcoins in the blockchain. The block rewards from when 50 bitcoins were issued for mining. Does that mean blocks that haven't moved will since 2009 will get transferred?**

**CRAIG WRIGHT:** Not at least, just under half. Because they'll have to come out of partnership. I spent more money on the project than Dave, so I will rule on that and effectively Ira will get maybe 480,000 BTC.

**MODERN CONSENSUS: And again, shouldn't that include the BTC, BCH, and BSV and every other fork of Bitcoin? All of those had to replicate the original blockchain starting from zero.**

**CRAIG WRIGHT:** According to the judge it's only from before Dave died, so only BTC. Sorry BTC.

**MODERN CONSENSUS: Wow. I'm sorry. This just isn't the outcome that anybody wanted. I've even heard you tell me how you wanted to destroy BTC or BCH because they forked away from your plan. They always seemed to win out before. But this could tank the markets.**

**CRAIG WRIGHT:** Everyone wants to hate on me. This is the result. If you'd left me alone, I would have sat on my fucking money and you wouldn't have to worry. And the biggest whale ever has to dump because he has to pay tax. It's not a transfer. Florida has an estate tax. Trust me. This is not an outcome I would have liked. I own a lot of BTC. Dave should have owned 320,000 and I should have had 800,000 and now it's 50/50. At the end of the day, that's not a good thing for BTC.

**MODERN CONSENSUS: I know you can be a little combative but you never wished ill on the others. Yet this is beyond good and bad.**

**CRAIG WRIGHT:** Trust me. Everyone makes me look like a mean asshole. I might have been a prick, but I was the prick who was withholding. I could have tanked the market anytime in the last 10 years and ran away laughing. I didn't.

**MODERN CONSENSUS: This goes back to the original Bitcoin whitepaper and the problem of the "selfish miner." Someone could ruin the blockchain, but it would be more profitable to

**play by the rules and make some money along the way. Dave doesn't have a choice. He has to sell to get any value. But by selling, he could destroy the whole crypto economy. Where BTC goes, so goes the whole market. And anybody still trying to raise money with an ICO.**

CRAIG WRIGHT: Yes. And I tried to tell people and they tried to make me out to be a total prick. I sat on $10 billion and didn't touch it. And this was happens. When you find a find a gorilla, don't kick it in the nuts.

**MODERN CONSENSUS: Haha. I'm sorry to be laughing. This could be the worst day of your life.**

CRAIG WRIGHT: This is not the worst day in my life. My grandfather died, that was worse. This was just money. This is just money. Dave died, that was a worse day for me, because I lost a friend and a partner.

**MODERN CONSENSUS: Bitcoin took off while the world fell into recession in 2009. Now we're facing another one and it could take down the whole market.**

CRAIG WRIGHT: I'm the asshole who keeps inventing things that other people need. I'm not the good media personality. You think I'm gonna complain because I only get to keep $6 billion? And I'm the only surviving member of Satoshi? The judge ruled it was a partnership. I'm the asshole Satoshi. And Dave was the nice one. So have a nice day.

Dated:  September 6, 2019

Respectfully submitted,

By: /s/ *Velvel Devin Freedman*
Velvel (Devin) Freedman, Esq.
ROCHE FREEDMAN LLP
200 S. Biscayne Blvd.
Suite 5500 Miami, Florida 33131
vel@rochefreedman.com

Kyle W. Roche, Esq.
Joseph Delich, Esq.
ROCHE FREEDMAN LLP
185 Wythe Avenue F2
Brooklyn, New York 11249
kyle@rochefreedman.com

*Counsel to Plaintiffs Ira Kleiman as*

9

*Personal Representative of the Estate of David Kleiman and W&K Info Defense Research, LLC*.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 6, 2019, a true and correct copy of the foregoing was served on all counsel of record identified on the Service List below via e-mail:

Andres Rivero, Esq.
Amanda McGovern, Esq.
Zaharah Markoe, Esq.
Zalman Kass, Esq.
RIVERO MESTRE LLP
2525 Ponce de Leon Boulevard
Suite 1000
Coral Gables, FL 33134
305-445-2500
(305) 445-2505 (fax)
arivero@riveromestre.com
jmestre@riveromestre.com
arolnick@riveromestre.com
dsox@riveromestre.com
receptionist@riveromestre.com

/s/ *Velvel (Devin) Freedman*
Velvel (Devin) Freedman