UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC

    Plaintiffs,

v.                                                                                                                                                                               Case No. 9:18-cv-80176 (BB/BR)

CRAIG WRIGHT,

    Defendant.

_____/

**DR. CRAIG WRIGHT'S RESPONSE TO
PLAINTIFFS' MOTION FOR LEAVE TO EXTEND
DEPOSITION TIME LIMIT AND FOR A SPECIAL MASTER**

        During the parties' November 5 meet-and-confer—in a good-faith effort to resolve the deposition issues that plaintiffs raise in their motion [D.E. 307] (the "Motion")—counsel for Dr. Craig Wright advised plaintiffs that: (1) Dr. Wright does not object to extending the allotted time for the depositions of the parties to ten hours; (2) Dr. Wright does not object to the appointment of a special master for the depositions of the parties; and (3) the parties should equally split the cost of a special master for those depositions. Counsel for Dr. Wright also requested that, if plaintiffs filed their Motion, they state Dr. Wright's position in their Motion. Sixteen days after the meet-and-confer, plaintiffs filed their Motion, certifying that Dr. Wright opposes the Motion, but failing to state Dr. Wright's position. Dr. Wright submits this response to the Motion to state his position, which is a reasonable compromise for the reasons stated below.

        Plaintiffs' argument for 14 additional hours is almost entirely premised on their argument that Dr. Wright "exhibited behavior both in and out of Court that has impeded plaintiffs' ability to develop a full and accurate evidentiary record." Mot. at 1. We disagree that Dr. Wright is "exhibiting behavior" that is "impeding" plaintiffs' efforts," especially where he is agreeing to an

additional three hours, for a total of ten hours, so long as we get a reciprocal agreement. Moreover, as plaintiffs acknowledge in their Motion, Dr. Wright's counsel ensured that the deposition was moving along, negating whatever concerns plaintiffs have about Dr. Wright's purported "behavior." Mot. at 1-2 (plaintiffs stating that "during his June 28, 2019 deposition" Dr. Wright's counsel "remind[ed] him that he is required to answer Plaintiffs' counsel's questions.").

Furthermore, Dr. Wright does not dispute that plaintiffs purport to allege "serious claims of wrong doing," including the alleged "ownership of billions of dollars' worth of bitcoin," or complex technologies. Mot. at 4. However, plaintiffs have already obtained testimony from Dr. Wright on three separate occasions: (1) in London for nearly seven hours; (2) at an in-Court deposition for which the Court allotted a minimum of two hours; and (3) the June 28 evidentiary hearing, which lasted the entire afternoon. On each of these three occasions, plaintiffs have obtained Dr. Wright's testimony regarding their purported "serious claims of wrongdoing," and plaintiffs do not provide any justification for an additional 14-hour deposition.

Nonetheless, to resolve this dispute, Dr. Wright has offered three additional hours so long as there is a reciprocal agreement for three additional hours for plaintiffs' depositions. The reason that Dr. Wright is requesting three additional hours for plaintiffs is that, contrary to plaintiffs' mantra that Dr. Wright is "often the primary source of information in this case," there are *substantial* sources of evidence in this case, including testimony from witnesses who have no connection to Dr. Wright and were very close to Dave Kleiman. Here, the evidence is diametrically opposed to plaintiffs' claims, and Dr. Wright should be afforded additional time to depose plaintiffs and question them regarding the evidence, including, *inter alia*:

2

- *Dave's finances*—plaintiffs' claims allege "the ownership of billions of dollars' worth of bitcoin," Motion at 4, which would mean that Dave had at least ***hundreds of millions of dollars' worth of bitcoin when he died***. The evidence shows that years before his death, Dave could not afford to pay for his cell phone, home, basic necessities, or pay to leave the Miami VA hospital—which he was not particularly fond of and lived far from—and go to a different facility. If Dave had access to hundreds of millions of dollars' worth of bitcoin, why didn't he use them, and why does his credit report reflect that he applied for credit from a very subprime creditor on what was likely the day he died?

- *Dave's relationship with Dr. Wright*—the evidence shows that Dave never said anything bad about Dr. Wright and only spoke highly of him as being a good friend. Dave never told anyone that he had amassed a fortune in bitcoin or that Dr. Wright stole anything from him. And, according to his close friends, Dave was far from timid; he would have immediately said something.

- *Ira's administration of the estate*—there's a whirlwind of questions about Ira's handling of the estate. Just after Ira learned that Dave may have had bitcoin, which was after Dave's death, Ira purchased a second home for $450,000 in cash. He has yet to explain where the funds for that purchase came from. Additionally, Ira alleges that Dave told him in 2009 that he was developing bitcoin with a wealthy foreigner (Dr. Wright), but after Dave died, he indiscriminately threw away Dave's work papers and re-formatted Dave's hard drives, thereby erasing their contents, which may have contained the very information and assets plaintiffs seek through this lawsuit. Also, what steps have plaintiffs taken to locate Dave's assets? Plaintiffs are just now requesting Dave's financial records from financial institutions, which is why plaintiffs

have yet to produce financial records to us, even though we've requested them many months ago.

- *Ira's relationship with Dave*—some of plaintiffs' allegations seem to be fueled by what Ira believes Dave would have done and agreements that he believes Dave would not have made. However, the evidence shows that Ira and Dave had a strained relationship, at best. Ira never visited Dave during the two years that Dave was in the hospital, nor did he visit Dave at his house for years, even though he lived just five minutes away from Dave's house.

- *Dave's medical condition*—while Dave's was in the VA hospital it is inconceivable that he was mining massive amounts of bitcoin or developing complex bitcoin technologies in his state of health.

Additional time is needed for plaintiffs' depositions so that Dr. Wright can confront plaintiffs with the substantial evidence that contradicts plaintiffs' theories and allegations. There are also topics that Dr. Wright needs W&K's Rule 30(b)(6) designee to answer. Dr. Wright's Rule 30(b)(6) notice is attached as **Exhibit A**.

Finally, Dr. Wright proposes a special master for the deposition of all the parties, the cost of which should be split in equal parts among the parties. The reason for this request is that during Ira Kleiman's deposition, his counsel instructed Ira to not answer very basic questions, including: (1) questions about Ira's professional experience, **Ex. B** at 14;[1] (2) questions about Ira's technical experience with computers, *id*. at 16: (3) questions about Ira's reaction to learning about Dave's will, *id*. at 28; (4) questions about Dave's will, *id*. at 11; (5) questions about whether Ira assigned any of plaintiffs' claims, *id*. at 131; (6) questions about how Ira obtained $450,000 in cash shortly after he learned of Dave's involvement with bitcoin, *id*. at 145; (7)

---

[1] Excerpts of Ira Kleiman's deposition transcript are attached as **Exhibit B**.

questions about W&K's business purpose when it was reinstated, *id*. at 126; and (8) W&K's membership, *id*. at 127-128. A special master, for which Dr. Wright will pay half, will alleviate the need for discovery hearings stemming from serial objections instructing Ira or W&K's Rule 30(b)(6) designee to not answer basic questions.

Wherefore, Dr. Wright requests that the Court deny, in part, plaintiffs' Motion, and enter an order consistent with Dr. Wright's proposal that (1) the depositions of parties be extended for an additional three hours, and (2) the Court appoint a special master for the depositions of all parties; and (3) the parties equally share the cost of a special master.

Respectfully submitted,

RIVERO MESTRE LLP
*Attorneys for Dr. Craig Wright*
2525 Ponce de Leon Boulevard, Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: amcgovern@riveromestre.com
Email: arolnick@riveromestre.com
Email: bpaschal@riveromestre.com

By: s/ Andres Rivero
ANDRES RIVERO
Florida Bar No. 613819
ALAN H. ROLNICK
Florida Bar No. 715085
AMANDA MCGOVERN
Florida Bar No. 964263
BRYAN L. PASCHAL
Florida Bar No. 091576

**CERTIFICATE OF SERVICE**

I certify that on November 26, 2019, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record either by transmission of Notices of Electronic Filing generated by CM/ECF or by U.S. Mail.

/s/Andres Rivero
ANDRES RIVERO