UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20489-CIV-KING/McAliley

JAMES A. BACON,

      Plaintiffs,

vs.

STIEFEL LABORATORIES, INC.,
a Delaware corporation, et al.,

           Defendants.        /

## PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND SUPPORTING MEMORANDUM OF LAW

Pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure, Local Rule 7.3(a), and 29 U.S.C. § 1132(g)(1), Plaintiff, James Bacon, respectfully requests that the Court enter an order awarding him attorneys' fees incurred in this action. In support of this Motion, Plaintiff asserts as follows:

## BACKGROUND

This action, like several others pending in this District, arises out of the merger between Stiefel Labratories, Inc. ("SLI") and GlaxoSmithkline ("GSK") in April 2009, which valued SLI's stock at approximately $71,000 share, almost four times the price that SLI paid shareholders who, without any knowledge that the company was actively pursuing a merger, sold their stock back to the company just two months earlier. Mr. Bacon, who began working for SLI on January 18, 1988, accumulated 25.386449 shares of SLI common stock in his ERISA-governed Employee Stock Bonus Plann ("ESBP") account.

On December 8, 2008, after working at SLI for more than twenty years, Mr. Bacon was fired from SLI in a "reduction in force." Upon his termination, Mr. Bacon had the option, under the terms of the ESBP, of taking a distribution of his shares of SLI stock, and then, as a separate transaction, selling (also called putting) them back to the company. In January 2009, Mr. Bacon submitted a form electing to receive a distribution of his shares from the ESBP, but never submitted the requisite paperwork authorizing the ESBP administrator to sell his shares on his behalf. Nonetheless, on Feb 13, 2009, SLI purchased Mr. Bacon's shares for $16,469 per share.

Only two months later, SLI announced its merger with GSK that would eventually pay shareholders over $71,000 per share.

Plaintiff filed his initial complaint in February 11, 2011, alleging that he did not authorize the sale of his stock in February 2009, and in the alternative, that if the Court determined that he did authorize the sale of his stock, Defendants violated ERISA and the federal securities laws. [D.E. 1.] The relief sought in every count was identical: Mr. Bacon sought to recover the difference between what he would have received for his SLI stock had he been a shareholder when the GSK/SLI merger closed, and the price that he actually received in February 2009.

Defendants moved to dismiss Plaintiff's claim that he did not authorize the sale of his stock, arguing that Plaintiff failed to exhaust his administrative remedies under ERISA and the ESBP for that claim. In response, Plaintiff entered into a stipulation with Defendants establishing a streamlined process by which Mr. Bacon would submit his claim to the GSK Benefits Committee, which served as the ESBP Administrator. The GSK Benefits Committee, through its delegate Michelle Killian, eventually decided that Mr. Bacon sold his stock back to SLI by exercising his put right in or about January 2009. Mr. Bacon then filed his Second Amended Complaint, which sought a declaration in Count 6 that Plaintiff did not sell his shares back to the company, and that, as a result, he is entitled to payment as though he owned those shares when the GSK/Stiefel merger closed, and in the other counts, asserted, in the alternative, that Defendants violated ERSIA and the federal securities laws. [D.E. 31.] In every count, Mr. Bacon again sought the same relief.

On June 19, 2013, this Court granted Mr. Bacon summary judgment as to Count 6, finding that Ms. Killian's decision was arbitrary and capricious, because "[t]he undisputed facts in this case make plain that while Plaintiff may have intended to put his shares to SLI, he did not submit the requisite paperwork and, therefore, never actually did so" [D.E. 155 at 12], and that granting Mr. Bacon relief under Count 6 would "require that he be compensated for his shares at the same rate as those who held shares when the merger with GlaxoSmithKline closed," *id.* at 6. This Court then entered final judgment on August 13, 2013, in favor of Mr. Bacon and against Defendants SLI, Steven Karasick, and Matt Patullo, declaring that the sale of Mr. Bacon's SLI shares was rescinded and ordering Defendants to pay Mr. Bacon the same price per share as has been, and will be, paid to those who also held SLI shares when SLI's merger with GSK closed, in addition to prejudgment interest, all of which amounted to $1,697,695.28. [D.E. 166.]

## ARGUMENT

### I.   THE COURT SHOULD AWARD MR. BACON REASONABLE ATTORNEYS' FEES

In an ERISA action brought by a participant of an employee benefit plan, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1). To be eligible for an award of fees under this provision, the claimant "must show some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 130 S.Ct. 2149, 2158 (2010). The Eleventh Circuit has directed courts to consider the following five factors in deciding whether to award attorneys' fees under § 502(g)(1):

(1) the degree of the opposing parties' culpability or bad faith;

(2) the ability of the opposing parties to satisfy an award of attorney's fees;

(3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances;

(4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; [and]

(5) the relative merits of the parties' positions.

*Freeman v. Continental Ins. Co.*, 996 F.2d 1116, 1119 (11th Cir. 1993). "No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying [ERISA § 502(g)(1)]." *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980).

Here, Defendants have conceded that Plaintiff's claim in Count 6 arose under ERISA [D.E. 59, 77, 104, 161-1], and Plaintiff unquestionably succeeded on the merits, as he prevailed on Count 6 and was granted the ***full and complete*** relief that he was seeking in the action. In addition, as explained below, the first, second, third, and fifth factors enumerated by the Eleventh Circuit all favor awarding Mr. Bacon attorneys' fees. This Court, therefore, should award Mr. Bacon attorneys' fees under ERISA § 502(g)(1). *See, e.g., Smith v. Reliance Standard Life Ins. Co.*, No. 03-61274, 2004 WL 2980683, *1-*2 (S.D. Fla. Nov. 10, 2004) (awarding fees under ERISA § 502(g)(1) even though the first and fourth factors did not favor the award); *Stvartak v. Eastman Kodak Co.*, 945 F. Supp. 1532, 1546-47 (M.D. Fla. 1996) (same).

### A. Defendants' Culpability and Bad Faith

The first factor the Eleventh Circuit has instructed courts to consider is clearly satisfied, because Defendants acted in bad faith, or at least culpably, in obstinately maintaining, without any evidence, that Mr. Bacon authorized the sale of his stock and urging the GSK administrator to reach the same conclusion, which this Court found was unreasonable as a matter of law. Defendants are solely responsible for that arbitrary and capricious decision. What's worse, internal SLI emails—which Defendants vigorously fought to prevent Plaintiff from seeing through discovery [D.E. 59]—demonstrate that Defendants knew, at least as early October 2009, that Mr. Bacon ***never*** submitted the requisite paperwork to authorize the sale of his shares. Exhibit A at 4 (spreadsheet emailed to Defendant Patullo stating that, for Mr. Bacon, "Principal ***verified no paperwork for authorizing put***") (emphasis added). Despite this knowledge, they never informed Mr. Bacon of this fact, and continued to insist for the next four years that Mr. Bacon authorized the sale of his shares.

This conduct against a former employee like Mr. Bacon—who had dedicated two decades of his life to SLI—is precisely the type of conduct that courts have condemned as culpable or taken in bad faith. *See, e.g., Kamlet v. Hartford Life & Accident Ins. Co.*, 187 Fed. App'x 968, 971 (11th Cir. 2006) (holding that there was "ample support in the record" to find that defendant was "more culpable" because defendant's "position on the merits was pretty clearly inconsistent with the provisions of the summary plan description"); *National Co. Health Benefit Plan v. St. Joseph's Hospital of Atlanta*, 929 F.2d 1558, 1575 (11th Cir. 1991), *abrogated on other grounds by Geissal v. Moore Medical Corp.*, 524 U.S. 74 (1998) (holding that defendant's "attempt to avoid its obligation demonstrates its bad faith"); *Kinser v. Plans Admin. Committee of Citigroup, Inc.*, No. 05-cv-86, 2008 WL 762200 (M.D. Ga. Mar. 18, 2008) (finding that defendant, in denying plaintiff's claim while "essentially disregarding the opinion of Plaintiff's treating physician . . . was at least culpable, if not acting in bad faith"); *Tyler v. Ploof Truck Lines, Inc.*, No. Civ-A-96-T-1192-E, 1999 WL 961262, *3 (M.D. Ala. Sept. 17, 1999) (finding that defendant's prolonged failure to pay plaintiff's claims "and its lack of excuse for doing so constitute bad faith"). The first factor, therefore, favors an award of attorneys' fees.

### B. The Ability of Defendants to Satisfy an Award of Attorneys' Fees

At least one of the parties whom the Court entered judgment against (SLI), and most likely the other two parties as well (Patullo and Karasick), can satisfy an award of attorneys'

fees. There can be no doubt that SLI, now a subsidiary of GlaxoSmithKline, which earned almost $3 billion in profits in just the last quarter, can easily satisfy the award of attorneys' fees that Plaintiff is seeking, which is less than $1 million. Exhibit B (GSK's Second Quarter 2013 results showing an operating profit of £1.9 billion, which converts to approximately $3 billion at the current exchange rate of $1.57 per £1). That should end the inquiry as to the second factor, since Defendants are jointly and severally liable to Plaintiff. Nonetheless, it is likely that Mr. Patullo and Mr. Karasick can also, independently, satisfy an award of attorneys' fees, because they are both likely covered under a directors and officers insurance policy, and in any event, both received, as a result of the GSK/SLI merger, over one million dollars from restricted stock and golden parachute payments and the sale of their common stock. The second factor, therefore, favors an award of attorneys' fees.

### C. Deterrence

An award of attorneys' fees here would deter other large, profitable companies from similarly interfering with their employees' rights under ERISA governed plans. It is not an easy task for a former employee like Mr. Bacon to sue and litigate against a billion-dollar company such as SLI, and its multibillion-dollar parent. And this Court is keenly aware of the vigorous, sophisticated, and expensive defense that SLI has mounted against Mr. Bacon and other former SLI employees over the past four years. With nothing to lose but the amount that should have been paid without litigation, companies such as SLI might be encouraged, in the absence of an attorneys' fee award here, to force plan participants to sue them to enforce the provisions of their plans. The third factor, therefore, favors an award of attorneys' fees. *See National Co.*, 929 F.2d at 1575 (holding that "the deterrent value of an award of attorneys' fees [was] high" because "other ERISA-plan sponsors might find it worthwhile to force underfinanced beneficiaries to sue them to gain their benefits or accept undervalued settlements"); *Tyler*, 1999 WL 961262 at *3 (holding that awarding attorneys' fees "was the only means to deter [the defendant] and other insurance carriers from engaging in actions similar to [the defendant's]").

### D. The Relative Merits of the Parties' Positions

As this Court found in granting Plaintiff summary judgment, Defendants' position was unreasonable. There was absolutely no evidence to support their position that Mr. Bacon actually authorized the sale of his stock. On the contrary, Mr. Bacon's undisputed testimony established that he did not complete the paperwork that SLI itself required to authorize the sale

of his stock. And more importantly, SLI's own emails establish that Defendants themselves knew that Mr. Bacon had not authorized the sale of his stock. Specifically, in a spreadsheet emailed to Defendant Patullo, he was told that, for Mr. Bacon, there was "no paperwork for authorizing put." Exhibit A at 4. The fifth factor, therefore, favors an award of attorneys' fees. *See, e.g., Kamlet*, 187 Fed. App'x at 971 (holding that the fifth factor favored an award because the plaintiff "had the stronger position in the litigation"); *Smith*, 2004 WL 2980683 at *2 (finding that the fifth factor favored an award because the defendant's interpretation of the plan was unreasonable); *Tyler*, 1999 WL 961262 at *3 (finding that the fifth factor favored an award because the defendant "presented no justification for its prolonged refusal to remit [payment to the plaintiff]").

Because the first, second, third, and fifth factors support an award of fees, this Court should exercise its discretion under ERISA § 502(g)(1) to award Mr. Bacon reasonable attorneys' fees.

## II.    PLAINTIFF'S ATTORNEYS' FEES REQUEST IS REASONABLE

Under ERISA § 502(g)(1), a reasonable award for attorneys' fees is calculated using the lodestar method, which requires the Court to multiply the reasonable hours expended by a reasonable hourly rate. *Smith*, 2004 WL 2980683 at *2. Here, Plaintiff is seeking an award of $648,888.00 in attorneys' fees through October 14, 2013,[1] which, as shown in exhibits C and D, is the product of the reasonable hours Plaintiff's attorneys and their paralegals have spent working on Mr. Bacon's case multiplied by the their respective reasonable hourly rates.

### A.    The Hours Plaintiffs' Attorneys Expended Are Reasonable

The Eleventh Circuit has defined "hours reasonably expended" to mean "billable hours— that is, work that would be paid for by a reasonable client of means seriously intent on vindicating the rights in issue." *Perkins v. Mobile Housing Authority*, 847 F.2d 735, 738 (11th Cir. 1988). And when a lawsuit consists of related claims and the plaintiff has obtained "excellent results," but has only prevailed on some of the claims, the Supreme Court has held that

> [the plaintiff's] attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff

---

[1] Plaintiff reserves the right to amend this figure to include fees incurred after October 14, 2013.

> failed to prevail on every contention raised in the lawsuit. Litigants in good faith
> may raise alternative legal grounds for a desired outcome, and the court's rejection
> of or failure to reach certain grounds is not a sufficient reason for reducing a fee.
> The result is what matters.

*Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (citations omitted); *see also Mallory v. Harkness*, 923 F. Supp. 1546, 1554 (S.D. Fla. 1996) ("Where a plaintiff has obtained the relief sought, courts should award full attorney's fees and are directed not to reduce fee awards to account for failed contentions raised in the lawsuit."). Further, the Eleventh Circuit has held that "[b]ecause plaintiff's counsel is required to explore every aspect of the case, develop all the evidence and present it to the court, courts have expansively treated claims as being related." *Popham v. City of Keensaw*, 820 F.2d 1570, 1579 (11th Cir. 1987) (internal quotation marks omitted).

Compensable activities include preparation for filing the lawsuit, background research, attorney discussions and strategy sessions, negotiations, motion practice, attending hearings, routine activities such as making telephone calls and reading mail related to the case, monitoring and enforcing a favorable judgment, travelling when work is being performed, and preparing and litigating a request for attorneys' fees. *See City of Riverside v. Rivera,* 477 U.S. 561, 573 n. 6 (1986) (allowing compensation for productive attorney discussions and strategy conferences); *Webb v. Board of Ed.*, 471 U.S. 234, 243, (1985) (allowing compensation for pre-litigation services in preparation of suit); *Cruz v. Hauck*, 762 F.2d 1230, 1233–34 (5th Cir. 1985) (allowing compensation for preparing and litigating fee request); *Adams v. Mathis*, 752 F.2d 553, 554 (11th Cir. 1985) (holding that measures to enforce judgment are compensable); *New York State Assoc. for Retarded Children v. Carey*, 711 F.2d 1136, 1146 & n. 5 (2d Cir. 1983) (allowing compensation for background research and reading in complex cases); *Johnson v. University College*, 706 F.2d 1205, 1207 (11th Cir. 1983) (holding that reasonable travel time for the prevailing party's attorneys is ordinarily compensated on an hourly basis); *Munoz v. Kobi Karp Arch. & Interior*, No. 09–21273–Civ, 2010 WL 2243795, *7 (S.D. Fla. May 13, 2010) (compensating for time spent reviewing emails); *Brewster v. Dukakis*, 544 F. Supp. 1069, 1079 (D. Mass. 1982) (compensating for negotiation sessions). Additionally, the hours expended by paralegals and law clerks are also compensable to the extent that these individuals are engaged in work traditionally performed by an attorney. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989).

When requesting attorneys' fees, an applicant should supply the court with records showing the time expended and general subject matter of the time expenditures with sufficient particularity so that the district court can assess the time claimed for each activity. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). "Sworn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case and therefore, it must appear that the time claimed is obviously and convincingly excessive under the circumstances [to justify adjusting a fee request downward]." *Perkins*, 847 F.2d at 738.

Here, Mr. Bacon's attorneys achieved "excellent results," as the Court awarded Plaintiff the ***full and complete*** relief he was seeking in the entire action, i.e., the difference between the amount that he would have been paid had he remained a stockholder when the GSK/SLI merger occurred and the amount that he was actually paid in February 2009, plus prejudgment interest. Additionally, Count 6 was related to, and not completely distinct from, the other claims asserted in the action, because all the claims arose from a "common core of facts," i.e., the sale of Plaintiff's stock in February 2009 and the GSK/SLI merger in April 2009. *Hensley*, 461 U.S. at 435; *see also, e.g., Goodson v. City of Atlanta*, 763 F.2d 1381, 1389-90 (11th Cir. 1985) (affirming the award of attorneys' fees for all hours reasonably expended in the litigation even though plaintiff only prevailed on his inhumane imprisonment claim and lost his false arrest claim, because "[c]ounsel was required to be fully aware of all the circumstances and to explore and develop every aspect of the case"); *Morgado v. Birmingham-Jefferson County Civil Defense Corps.*, 706 F.2d 1184, 1193 (11th Cir. 1983) (holding that district court should have awarded plaintiff full amount of fees because plaintiff's discrimination claim alleging underpayment, on which plaintiff prevailed, was "closely related" to failure to promote claim, on which plaintiff did not prevail, and attorney was "obligated to investigate and prosecute" both claims). The other claims asserted in this action simply "raise[d] alternative legal grounds for [the same] desired outcome," and thus this Court's failure to reach those claims (since they were mooted by summary judgment on Count 6) "is not a sufficient reason for reducing [the requested] fee." *Hensley*, 461 U.S. at 435.

Having taken the untenable position that Plaintiff authorized the sale of his stock, thereby forcing Plaintiff's counsel to investigate and pursue an alternative theory of liability to protect Plaintiff's rights, Defendants cannot now complain that Plaintiff's counsel wasted their time

litigating that alternative theory, particularly because the Eleventh Circuit has recognized that attorneys are obligated to "explore every aspect of the case, develop all the evidence and present it to the court," and should be compensated for that work when it produces a complete victory. *Popham*, 820 F.2d at 1579. This Court, therefore, should award Plaintiff attorneys' fees for "all hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435; *see also Mallory*, 923 F. Supp. at 1554 (awarding full amount of fees because "[plaintiff] was successful in obtaining all the relief he sought, but failed on an alternative legal theory arising out of the same set of circumstances").

As required, Plaintiff's attorneys have submitted documentation showing, with particularity, the time spent in this action, the subject matter of the time expenditures, and sworn declarations attesting that the documented time expenditures reflect the time it took to complete the described tasks. *See* Exhibits C-E. In particular, Exhibit C shows, chronologically, all the individual time entries in the action; Exhibit D summarizes the time expended and corresponding fees incurred by each attorney and paralegal; and Exhibit E includes declarations from Plaintiff's attorneys attesting to the accuracy of the billing records. To produce the submitted documents, Plaintiff's attorneys carefully reviewed their internal billing records and exercised "billing judgment," excluding any hours that they deemed to be excessive and would not have charged a paying client or were unrelated to Mr. Bacon's case. Because the hours that Plaintiff's attorneys expended were for compensable activities and are reasonable under the circumstances, this Court should use the hours shown in Exhibits C and D to calculate the lodestar amount.

### B. Plaintiff's Attorneys' Hourly Rates Are Reasonable

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Blum v. Stenson*, 465 U.S. 895-96 n.11 (1984)). Additional factors to consider in determining the reasonable hourly rate include:

> the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases.

*Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996). Further, the court may consider its own knowledge and experience regarding the range of fees charged in the marketplace in

making a fee award, *Norman*, 836 F.2d at 1304, and should consider the skill of the attorney to determine an appropriate rate for that individual attorney within the prevailing range, *id.* at 1300-01.

To prove the prevailing market hourly rate, a claimant may submit, among other things, direct evidence of charges by lawyers under similar circumstances and opinion evidence. *Id.* at 1299. In addition, "[c]itation to prior precedent showing reasonable rate adjudications may be used to demonstrate proof of prevailing market rates." *Topp, Inc. v. Uniden Am. Corp.*, No. 05-21698-Civ, 2007 WL 2155604, *2 (S.D. Fla. July 25, 2007).

Here, as shown in their attached biographies, *see* Exhibit F, and as demonstrated in this action, Plaintiff's counsel are skilled and reputable attorneys who are highly experienced in complex commercial litigation. For their services, Mr. Bacon is requesting hourly rates of $450-$695 for partners, $300-$370 for associates, $200-$295 for law clerks, and $75-$250 for paralegals. As shown below, these rates are entirely consistent with the prevailing market rates in the Southern District of Florida for similar services by lawyers of reasonably comparable skills, experience, and reputation.

First, the *Daily Business Review*, in its annual lawyer compensation survey of numerous South Florida firms, concluded in October 2013 that "more lawyers billed hourly this year in the $800s, $700s, and $600s, but most firms bill partners at rates in the $400s and $500s," and identified at least 18 highly experienced partners who charge at least $600 per hour. Exhibit G (Susan Postlewaite, *Special Report, Lawyers Compensation Survey, Baby Steps*, Daily Business Review, October 7, 2013, at A8, A10). In fact, according to the article, one of Defendants' attorneys, Hillarie Bass, charges the same hourly rate as Mr. Prieto, $695. *Id.* Second, in a motion for attorneys' fees filed just last year, Defendants' law firm submitted evidence showing that two of its partners, both of whom have less legal experience than Mr. Prieto and Mr. Segall, charge $475 and $610 per hour, its associates charge between $285-$305 per hour, and its paralegals charge between $125-$215 per hour. Exhibit H (Defendant's Motion for Attorneys' Fees and Costs at 5-8, *MKT Reps S.A. DE C.V. v. Standard Chartered Bank Int'l (Americas) Ltd.*, No. 10-cv-22963 (S.D. Fla. Nov. 15, 2012) (D.E. 153)). Third, according to the declaration of Harley S. Tropin, Esq., who has experience litigating securities fraud and ERISA matters, Plaintiff's attorneys' rates are well within the range of prevailing market rates. Exhibit I (Harley S. Tropin, Esq. Decl.). Finally, two of this Court's decisions issued five years ago finding that

10

an hourly rate for partners of $550 was reasonable, *CBS Broadcasting, Inc. v. Browning*, No. 06-22463-Civ, 2007 WL 2850527, *7 (S.D. Fla. Sept. 7, 2007) (awarding up to $550 per hour for partners and $325 for associates); *Topp, Inc.*, 2007 WL 2155604 at *3 (awarding $551 per hour for partner), suggests that, with inflation, rates in the $600s for highly experienced partners are now prevailing and reasonable. *See also Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, No. 09-60351-Civ, 2011 WL 2535258, (S.D. Fla. June 27, 2011) *Textron Financial Corp. v. RV Sales of Broward, Inc.*, No. 08-61449-Civ, 2010 WL 2889908, *4 (S.D. Fla. June 29, 2010) (awarding a partner $537 per hour).

This Court, therefore, should use Plaintiff's requested hourly rates to calculate the lodestar amount.

## CONCLUSION

For the foregoing reasons, Plaintiff James Bacon respectfully requests that this Court award him $648,888.00 in reasonable attorneys' fees.

Dated: October 14, 2013                                  Respectfully submitted,


/s/Peter Prieto_____          /s/Norman S. Segall_____
Aaron S. Podhurst                                      Norman S. Segall
Florida Bar No. 63606                               Florida Bar No. 158302
Peter Prieto                                               **SEGALL GORDICH, P.A.**
Florida Bar No. 501492                            801 Brickell Avenue – 9th Floor
Matthew Weinshall                                  Miami, FL 33131Suite 800
Florida Bar No. 084783                            Tel: 305.755.4930
**PODHURST ORSECK, P.A.**                   Fax: 305.438.7438
25 West Flagler Street                             nss@segallgordich.com
Miami, FL 33130
Tel:  305.358.2800/Fax: 305-358-2382
apodhurst@podhurst.com
pprieto@podhurst.com
mweinshall@podhurst.com
*Co-Counsel for Plaintiff*                          *Co-Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 14, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/    Peter Prieto_____
Peter Prieto

## SERVICE LIST

David A. Coulson, Esq.
Hilarie Bass, Esq.
Lindsey Camp Edelmann, Esq.
Todd Wozniak, Esq.
Greenberg Traurig, P.A.
333 Avenue of the Americas
Miami, Florida 33131