**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC | **CASE NO.:  9:18-cv-80176-BB/BR** |
|        Plaintiffs, | |
| v. | |
| CRAIG WRIGHT | |
|        Defendant. | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S OBJECTION TO**
**MAGISTRATE ORDER "DEEMING" CERTAIN FACTS**
**ESTABLISHED AND "STRIKING" CERTAIN AFFIRMATIVE DEFENSES**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................. 3

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ................................................................................................................................ 2

    A.  Legal Standards ................................................................................................................ 2

       (i)  Rule 37 Sanction ...................................................................................................... 2

       (ii)  Standard of review .................................................................................................. 4

    B.  Judge Reinhart correctly determined that Craig's violation of his discovery order was not the result of impossibility ................................................................................................... 5

       (i)  J. Reinhart's finding that Craig lacked credibility undermines the sole support for his "impossibility" defense (Craig's word) ............................................................................ 6

       (ii)  Judge Reinhart's factual determinations are supported by the record evidence which demonstrate Craig has perjured, forged, and deceived his way through these proceedings ... 8

         (a).  Craig's changing story demonstrates its falsity ...................................................... 9

         (b).  Evidence of forgeries ........................................................................................... 13

           1.  The Dave Kleiman Trust documents (ECF No. 237-1) are forgeries ................. 14

           2.  The Tulip Trust I document (ECF No. [237-9]) is a forgery. ............................ 15

         (c).  History of Craig's lies ......................................................................................... 16

         (d).  Craig's post hearing statement confirms Judge Reinhart's findings were correct .. 16

    C.  Craig's deception prejudiced plaintiffs and no lesser sanction would have sufficed ....... 17

    D.  The sanctions relate to Craig's conduct and do not violate due process ......................... 21

       (i)  The withheld evidence is relevant to the issues affected by the sanctions ................. 22

       (ii)  The sanctions meet the Hammond Packing presumption and specifically related to the claim at issue in the litigation .............................................................................. 23

       (iii)  Craig waived the right to challenge the relationship between the discovery order and the sanctions ........................................................................................... 24

    E.  Craig's conduct is consistent with conduct for which courts impose terminating sanctions ...................................................................................................... 24

    F.  Judge Reinhart did not rely on Hearsay ....................................................................... 25

    G.  Public Addresses .......................................................................................................... 27

    H.  This Court should uphold Judge Reinhart's sanctions under its inherent power ............. 28

CONCLUSION .......................................................................................................................... 29

## **TABLE OF AUTHORITIES**

**Cases**

*1st Fin. SD, LLC v. Lewis*
  No. 11-CV-00481-MMD, 2012 WL 4761931 (D. Nev. Oct. 5, 2012) .................................... 25

*Amlong & Amlong, P.A. v. Denny's, Inc.*
  500 F.3d 1230 (11th Cir. 2007) ................................................................................................ 5

*CA, Inc. v. Simple.com, Inc.*
  780 F. Supp. 2d 196 (E.D.N.Y. 2009) .................................................................................... 25

*Consumer Fin. Prot. Bureau v. Morgan Drexen*
  101 F. Supp. 3d 856 (C.D. Cal. 2015) .................................................................................... 18

*Costa v. Datapro, Inc.*
  No. 10-23172-CIV, 2011 WL 7318760 (S.D. Fla. Aug. 5, 2011) ................................ 2, 3, 6, 16

*Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*
  561 F.3d 1298 (11th Cir. 2009) .............................................................................................. 28

*Forsberg v. Pefanis*
  634 F. App'x 676 (11th Cir. 2015) .................................................................................... 18, 25

*Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*
  No. 12 CV 1851, 2016 WL 4765689 (N.D. Ill. Sept. 13, 2016) .......................................... 18, 20

*Hammond Packing Co. v. Arkansas*
  212 U.S. 322 (1909) ............................................................................................................ 22, 23

*Hosny v. Thiam*
  No. 13-cv-04103, 2016 WL 10587115 (N.D. Ga. Aug. 17, 2006) .................................... 18, 25

*In re Chase & Sanborn Corp.*
  872 F.2d 397 (11th Cir.1989) .................................................................................................. 3

*In re Gabapentin Patent Litig.*
  312 F. Supp. 2d 653 (D.N.J. 2004) ........................................................................................ 24

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*
  456 U.S. 694 (1982) .................................................................................................... 22, 24, 25

*Jordan v. Comm'r, Mississippi Dep't of Corr.*
  908 F.3d 1259 (11th Cir. 2018) ................................................................................................ 4

*Liberty Synergistics Inc. v. Microflo Ltd.*
  718 F.3d 138 (2d Cir. 2013) ...................................................................................................... 5

*Littler v. Martinez,*
  No. 2:16-CV-00472-JMSDLP, 2019 WL 1043256 (S.D. Ind. Mar. 5, 2019) ........................ 18

*McDowell v. Seaboard Farms of Athens, Inc.*
  No. 95-609-CIV-ORL-19, 1996 WL 684140 (M.D. Fla. Nov. 4, 1996) ................................ 18

*Moore v. Napolitano*
  723 F. Supp. 2d 167 (D.D.C. 2010) ............................................................................... 4

*Perez v. New Auto Image Mktg., Inc.*
  No. 15-cv-21893, 2016 WL 7540272 (S.D. Fla. May 20, 2016) ............................................ 24

*Pigott v. Sanibel Dev., LLC*
  CIVA 07-0083-WS-C, 2008 WL 2937804 (S.D. Ala. July 23, 2008) ...................................... 4

*Ramirez v. T&H Lemont, Inc.*
  845 F.3d 772 (7th Cir. 2016) ......................................................................... 3, 6, 8

*Sprint Sols., Inc. v. Fils-Amie*
  83 F. Supp. 3d 1290 (S.D. Fla. 2015) .................................................. 3, 18, 21, 25

*Steward v. Int'l Longshoreman's Ass'.*
  *Local No. 1408*, 306 Fed. Appx. 527 (11th Cir. 2009) ...................................... 3, 29

*United States v. Cofield*
  272 F.3d 1303 (11th Cir. 2001) ..................................................................... 5

*United States v. Lizarraga-Tirado*
  789 F.3d 1107 (9th Cir. 2015) ..................................................................... 25

*United States v. Raddatz*
  447 U.S. 667 (1980) ................................................................................. 5

*United States v. Ramirez-Chilel*
  289 F.3d 744 (11th Cir. 2002) ..................................................................... 5

*Vargas v. Peltz*
  901 F. Supp. 1572 (S.D. Fla. 1995) ............................................................... 19

**Rules**

Fed. R. Civ. P. Rule 72 ................................................................................ 4

Fed. R. Civ. P. Rule 37(b)(2)(A) ..................................................................... 22

## **INTRODUCTION**

Notwithstanding Craig's claims that he has somehow been treated unfairly, it was his own conduct that left Judge Reinhart essentially no choice but to enter an order deeming certain facts established and striking certain affirmative defenses (the "Order"). Craig is not the victim here. To the contrary, as Judge Reinhart found, Craig's conduct in this litigation has been "antithetical to the administration of justice" and "no lesser sanction would suffice."

As set forth below, the record entirely supports Judge Reinhart's findings, and the remedy he chose is absolutely justified given the gravity of Craig's offenses. Indeed, Craig's Objection to the Order, far from calling into question its correctness, demonstrates that he is recalcitrant, and – given the opportunity – would engage in the same conduct that led to the Order in the first place. In fact, mere hours after Judge Reinhart read the Order into the record, Craig walked out of court and into an interview where he admitted that he lied to the Court.[1] The next day he gave an interview calling Judge Reinhart a "silly judge."[2]

The following is not in dispute. Plaintiffs sought, through proper discovery, to identify the bitcoin mined as part of the partnership between Dave and Craig. As was his right, Craig objected to that discovery on grounds of relevance initially and then on burden grounds. Those objections were fully litigated and ultimately overruled by Judge Reinhart.

At that point, Craig had two choices: (1) seek review of the ruling by this Court or (2) comply with Judge Reinhart's discovery order. Instead, on June 11, 2019, Craig asserted – for the

---

[1] Brendan Sullivan, *EXCLUSIVE: First interview with Craig Wright after judge orders him to pay $5 billion in bitcoin*, MODERN CONSENSUS (August 26, 2019) (attached hereto as Exhibit 1). Available at https://modernconsensus.com/cryptocurrencies/bitcoin/exclusive-interview-with-craig-wright-just-after-ordered-to-pay-5-billion-in-bitcoin/

[2] MetaNetTV Livestream August 2019 – Dr. Craig S. Wright, available at https://youtu.be/mBNT7X5sjPM?t=1539 at 26:01.

first time – that providing Plaintiffs with a list of his bitcoin holdings was impossible because he did not possess the information necessary to access it. (ECF No. [211] at 5.)

Judge Reinhart gave Craig an opportunity to demonstrate it was impossible to comply with the discovery order. To carry that burden, Craig told (under oath) a fanciful story about a mysterious "encrypted file" held in a trust. Not only did this story conflict with his previous sworn testimony and his motion papers, as explained below, the story itself was self-conflicting. In support of his story, Craig put forward documents which he swore were "authentic" to prove that the "encrypted file" and the trust exist. Plaintiffs exposed these documents as forgeries.

But instead of being ashamed, or trying to hide behind some procedural or legal technicality, Craig brazenly opened his objection to Judge Reinhart's Order by asserting that "there is absolutely no basis for imposing any sanctions" on him because "the uncontroverted evidence shows that he is unable to access a listing of" his bitcoin. The only thing "uncontroverted" about Craig is that he's a perjurer and a forger. Craig's claim that his "testimony stands unrebutted by plaintiffs" is simply blind to reality.

Faced with this record, Judge Reinhart entered a sanctions Order that was reasonable and commensurate with the conduct it addressed. For this reason, and the reasons set forth below, this Court should affirm the Order.

## ARGUMENT

### A.   Legal Standards

#### (i)   Rule 37 Sanction

Fed. R. Civ. P. 37 provides that when "a party . . . fails to obey an order to . . . provide discovery . . . the court . . . may issue . . . orders including . . .  designated facts be taken as established for purposes of the action . . . [and] striking pleadings . . . in part." *Costa v. Datapro, Inc.*, No. 10-23172-CIV, 2011 WL 7318760, at *5 (S.D. Fla. Aug. 5, 2011), *report and*

*recommendation adopted*, No. 10-23172-CIV, 2011 WL 13100072 (S.D. Fla. Aug. 26, 2011). Procedurally, "[o]nce the moving party makes a prima facie showing of a discovery violation, the non-movant must show that it was impossible to comply with the relevant court order(s) to avoid sanctions." *Id*. *citing In re Chase & Sanborn Corp.*, 872 F.2d 397, 400 (11th Cir.1989).

Rule 37 sanctions "are intended to: (1) compensate the court and other parties for the added expense caused by discovery abuses; (2) compel discovery; (3) deter others from engaging in similar conduct; and (4) penalize the offending party or attorney." *Steward v. Int'l Longshoreman's Ass'n., Local No. 1408*, 306 Fed. Appx. 527, 529 (11th Cir. 2009). The burden of proof is a preponderance of the evidence. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 777 (7th Cir. 2016). Courts will only impose these sort of severe sanctions "upon finding (1) that the party's failure to comply with the order was willful or a result of bad faith, (2) the party seeking sanctions was prejudiced by the violation, and (3) a lesser sanction would fail to adequately punish and be inadequate to ensure compliance with court orders." *Costa*, 2011 WL 7318760, at *5.

A party's history of improper actions in litigation is relevant to determining whether their failure to obey was willful, negligent, or due to an impossibility. *Id*. ("Although only Costa's violation of a court order may serve as a predicate for sanctions . . . this lengthy history [of improper acts] is nevertheless relevant to determine whether Costa acted in bad faith . . .").

Furthermore, courts recognize it is of paramount importance to ensure parties don't manipulate the system in a way that prevents an "honest and true airing of the real facts." *Sprint Sols., Inc. v. Fils-Amie*, 83 F. Supp. 3d 1290, 1298 (S.D. Fla. 2015). Indeed, courts recognize that failing to punish dishonest behavior is a direct threat to the integrity of the judicial process. *Id.* at 1298 ("Moreover, in light of Defendants' demonstrated comfort with fabricating testimony and their disregard for their obligations to Sprint and the court, allowing this case to proceed would

only provide Defendants with further opportunities to subvert the integrity of the judicial process.").

(ii)     *Standard of review*

The appropriate standard of review depends on which parts of the Order are characterized as dispositive, and which are non-dispositive. *See* FED. R. CIV. P. 72. "If the matter is non-dispositive, the district court reviews the magistrate judge's ruling under the 'clearly erroneous or contrary to law' standard," but for dispositive matters "the district court must review any objected-to portion of the magistrate judge's ruling de novo." *Jordan v. Comm'r, Mississippi Dep't of Corr.*, 908 F.3d 1259, 1263 (11th Cir. 2018).

Here, the standard of review is mixed.  Judge Reinhart's rulings on the underlying discovery motion should be reviewed for clear error as those rulings "generally would not be considered a dispositive matter." *Id.* at 1263–64 (11th Cir. 2018). Similarly, the parts of Judge Reinhart's Order deeming certain facts admitted are likewise reviewed for clear error.  A ruling can be non-dispositive despite significantly affecting a claim or defense, and this is often the case with evidentiary sanctions.[3] "Case law is abundant for the common-sense proposition that a magistrate judge ruling on a nondispositive matter does not somehow mutate into a ruling on a dispositive matter simply because that ruling ultimately affects the outcome of a claim or defense." *Pigott v. Sanibel Dev., LLC*, CIVA 07-0083-WS-C, 2008 WL 2937804, at *4 (S.D. Ala. July 23, 2008) (collecting cases).

However, the part of Judge Reinhart's Order striking certain affirmative defenses is likely dispositive, and the Court should therefore treat that aspect of the order as a report and

---

[3] Craig makes conclusory arguments (Br. at 26-28) that the deemed facts are dispositive, but he fails to show how they either establish all the elements of a claim or eliminate a defense in its entirety. This hardly convincing when even severe sanctions, such as precluding a defendant from rebutting a prima facie case of discrimination, have been held non-dispositive. *See Moore v. Napolitano*, 723 F. Supp. 2d 167, 185 (D.D.C. 2010).

recommendation subject to *de novo* review. *See, e.g.*, *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 144 (2d Cir. 2013) (ratifying district court's decision to deem the magistrate's "memorandum opinion and order" to be a report and recommendation).[4]

When conducting a de novo review, a district court is obligated to accept the magistrate judge's credibility determinations unless (i) the transcript demonstrates those determinations were "unbelievable" or (ii) the district court chooses to hold a new hearing. *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (courts "should defer to the magistrate judge's determinations unless his understanding of the facts appears to be 'unbelievable.'"); *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1245 (11th Cir. 2007) (where "demeanor was important to the magistrate judge's determination," the Court must "hold a new evidentiary hearing and take testimony before rejecting the magistrate judge's findings."). The rationale for this rule is obvious; the magistrate judge "personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002); *Amlong*, 500 F.3d at 1245.

There is no preference to hold a new hearing and district courts are free to rely on magistrate credibility determinations without holding one. *United States v. Cofield*, 272 F.3d 1303, 1305 (11th Cir. 2001) *citing United States v. Raddatz*, 447 U.S. 667 (1980) (a "district court is not required to rehear witness testimony when accepting a magistrate judge's credibility findings.").

### B.     Judge Reinhart correctly determined that Craig's violation of his discovery order was not the result of impossibility

There's no dispute Craig was ordered to produce a complete list of all bitcoin he'd mined or acquired as of December 2013. (ECF Nos. 124 at 22-23 (hearing transcript); 166, at 2-3; 217;

---

[4] *But see Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n*, 285 F. Supp. 3d 648, 653 (S.D.N.Y. 2018) ("there is some disagreement among courts regarding whether a motion to strike an affirmative defense is a dispositive matter subject to determination by a magistrate judge").

221, at 32-33.) There is also no dispute that Craig hasn't complied with that Order. Consequently, there can be no dispute that Plaintiffs have made "a prima facie showing of a discovery violation." *Costa*, 2011 WL 7318760, at *5.

Craig's sole defense to this discovery violation is that it's impossible for him to comply because the list is locked in an encrypted file, held by a trust, that he doesn't have access to. To avoid sanctions, Craig bore the burden of demonstrating this by a preponderance of the evidence. *Ramirez*, 845 F.3d at 777. For the reasons identified by Judge Reinhart, and those explained at length below, he didn't carry that burden, and was appropriately sanctioned.

(i) *J. Reinhart's finding that Craig lacked credibility undermines the sole support for his "impossibility" defense (Craig's word)*

As mentioned above, Craig's only defense to Rule 37 sanctions is that he cannot comply with Judge Reinhart's order because the information needed to identify the bitcoin is locked in an "encrypted file," held by a "blind" trust.[5]  That defense is supported solely by the contradictory testimony of Craig, and forged documents produced by him.

There is no independent evidence such an encrypted file exists. *No one* – not even Craig – testified to having seen it. Craig testified that "I haven't looked at the file. No one asked me to look at the file. *June 28, 2019 Hrg. Trn.* 124:12-13. Further, Steve Shadders – a witness Craig put forward to vouch for Craig's attempted compliance – testified that *he too* has "never seen that file." *Aug. 5, 2019 Hrg. Trn*., at 97:12-17. And even if he had seen it, he likewise testified that he has "no mechanism of being able to independently confirm" its "apparent[]" contents. *Id. at* 51:2-5. Thus, "after days of testimony, multiple discovery hearings, and lengthy pleadings, the sole

---

[5] As described below, the exact form of the trust and file have been a moving target with Craig. And while the ever shifting changes to his inability to comply speak to his lack of credibility, the point remains that the sole "justification" for his "impossibility" defense is that the information is locked beyond his reach. *June 26, 2019 Hrg. Trn.*, at 18:12 ("If I could have, I would have. I locked everything away.").

evidence supporting Dr. Wright's claim that he cannot comply with the Court's Orders is the uncorroborated word of Dr. Wright" that the information necessary for compliance is locked in a "blind" trust protected encrypted file that he hasn't seen. Order, at 26.

But Judge Reinhart found that Craig has no credibility and cannot be trusted. Specifically stating that "[d]uring his testimony, Dr. Wright's demeanor did not impress me as someone who was telling the truth." Order, at 19. Judge Reinhart explained this in further detail:

> When it was favorable to him, Dr. Wright appeared to have an excellent memory and a scrupulous attention to detail. Otherwise, Dr. Wright was belligerent and evasive. He did not directly and clearly respond to questions. He quibbled about irrelevant technicalities. When confronted with evidence indicating that certain documents had been fabricated or altered, he became extremely defensive, tried to sidestep questioning, and ultimately made vague comments about his systems being hacked and others having access to his computers. None of these excuses were corroborated by other evidence.

*Id.*

Craig's impossibility defense hinges on the existence of the "blind" trust and its allegedly inaccessible encrypted file. But Judge Reinhart found "clear and convincing evidence" that Craig's testimony that the "Trust exists was intentionally false." Id. at 21. Importantly, Judge Reinhart specifically stated that this determination was a result of both the record facts **and** his "observations of Dr. Wright's demeanor during his testimony." *Id*. at 21. In fact, this finding isn't limited to the existence of the trusts. Judge Reinhart made the same exact finding when discussing the existence of the encrypted file that serves as the keystone to Craig's impossibility defense:

> After observing Dr. Wright's demeanor and the lack of any other credible evidence in the record that this file exists, I find that a preponderance of the evidence establishes that no such file exists and that Dr. Wright's testimony was intentionally false . . . although the necessary burden of proof is a preponderance of the evidence, there was clear and convincing evidence to support this finding.

*Id*. at 24, n14.

There is certainly no reason to find Judge Reinhart's credibility determinations

"unbelievable." *Ramirez-Chilel*, 289 F.3d at 749. Judge Reinhart (in both his written order and at the August 26 hearing) expressly went through every factor provided by the 11th Circuit for factfinders to determine witness credibility; for each one he found that Craig lacked credibility. Order at 17-26 (citing Eleventh Circuit Pattern Civil Jury Instruction 3.4).

Thus, this Court must defer to Judge Reinhart's credibility determinations unless it conducts its own hearing. But as described below, any such hearing would be a waste of the Court's and parties' resources because Judge Reinhart's credibility determinations are well supported by the record evidence he cites, other record evidence, and this Court's own independent determination that "the record is replete with instances in which the Defendant has proffered conflicting sworn testimony before this Court." ECF No. 265, at 10. For these reasons alone, Judge Reinhart's decision to sanction Craig should be upheld.

   (ii)   *Judge Reinhart's factual determinations are supported by the record evidence which demonstrate Craig has perjured, forged, and deceived his way through these proceedings*

Beyond the general credibility determinations made by Judge Reinhart, Craig's shifting justifications for not producing the list, his irreconcilable sworn statements about the trust and mined bitcoin, and his submission of forged evidence to the Court, collectively demonstrate willful deception and prove that his story is fake, and that he is purposely disobeying a court order.

At bottom, Craig refuses to comply with the Court's order because he wants to keep Plaintiffs "from finding his Bitcoin trove," and proving his theft using the public blockchain. Order at 20. Consequently, he tried to avoid producing the list by falsely claiming his bitcoin were locked in an "encrypted file" held by a blind trust. But as the Court's inquiries and discovery orders began requiring Craig to substantiate this claim, he began trying to shore up the lie by both (1) submitting forged documents, and (2) using perjurious testimony to change his story. This pattern of behavior reveals the trusts are not real. The bitcoin are not locked away in an "encrypted file." Craig can

comply with the Order – he is simply choosing not to – and his bad faith refusal should be sanctioned.

(a). <em>Craig's changing story demonstrates its falsity</em>

In July 2018, Plaintiffs propounded an interrogatory seeking a listing of Craig's bitcoin holdings. Craig fought that production on legal grounds, but never said that it would be *impossible* to respond to the Interrogatory Similarly, in January 2019, Plaintiffs requested documents providing an estimate/value of Craig's cryptocurrency holdings. Craig fought that production on legal grounds, again never mentioning "impossibility." In March 2019, after numerous discovery hearings, the Court ordered Craig to provide a listing of his bitcoin holdings as of December 2013. At no time during any hearing did Craig ever claim "impossibility."

At Craig's April 4, 2019 deposition, he testified that (1) he never put any bitcoin into a trust;[6] and that (2) the Tulip Trust never came to hold the private keys to bitcoin addresses.[7] He also testified that Dave knew nothing about the trust, its set up, or Shamir Secret Sharing keys.[8] As indicated below, Craig subsequently contradicted all three of these sworn statements.

At the end of Craig's deposition, the parties called Judge Reinhart to rule on several issues that arose during the deposition. Judge Reinhart made it clear that Craig was to produce the list of his bitcoin holdings unless a motion for protective order was granted on burdensomeness grounds. (ECF No. [312] at 368:12-21.) Now forced to articulate a factual (as opposed to legal) reason not to produce the bitcoin list, Craig changed his story.

---

[6] ECF No. 312-1, at 294:1-18 ("Q. Did you put Bitcoin into the trust in 2011? No. Q. Did you put Bitcoin into the trust in 2012? No. Q. Did you ever put Bitcoin into the trust? No. Q. Did anyone ever put Bitcoin into the trust? No.")

[7] ECF No. 312-1, at 294:20-295:6 ("Q. Did the Tulip Trust ever come to hold private keys to Bitcoin wallets? No. Q. Did it ever come to own or possess private keys to Bitcoin addresses? No. Q. What is the relationship between the Tulip Trust and Bitcoin? What the hell does that question even mean?")

[8] ECF No. 312-1, at 293:8-16 ("Dave had no rights to the trust no ownership of the trust, no knowledge of the set-up of the trust . . . Dave was asked simply to hold a part of some documents and keys that were split using Shamir's Secret Sharing scheme so that he did not even know what he was actually holding.").

9

He filed a motion for protective order which, **in complete conflict with his sworn deposition testimony that he never put bitcoin or private keys into the trust**, stated that "[i]n 2011, Dr. Wright transferred ownership of all of his Bitcoin into a blind trust. ECF No. [155] (sealed); [184] (redacted copy). He also claimed he was "not a trustee or a beneficiary of the blind trust." *Id*. This was the first time Craig's raised the false "impossibility" defense.[9]

The Court denied Craig's motion and pointed out the "obvious"; Craig hadn't even tried to request the bitcoin list from the trustees of the alleged blind trust. ECF No. 166, at 3. It therefore ordered him to provide robust sworn disclosures about the trusts to include all of the trustees' names and contact information. It also ordered him to provide all documents related to the formation, administration, and operation of the trust, all transactional records of the trust, including records showing the alleged 2011 transfer of bitcoin into the blind trust – and to swear to the authenticity of these documents. *Id*. at 4.

Now forced to provide specific details to back up his assertions, Craig submitted a sworn statement *that contradicted both his sworn deposition testimony and his prior motion*. Specifically, in addition to his newfound claim that he *did* put bitcoin into the trusts,[10] he now

---

[9] Further evidence this was a factual pivot engineered by Craig is that, at the deposition just two weeks before, his own counsel had stated that "to compile that list would be incredibly burdensome," not that it would be "impossible." ECF No. 312-1 at 365:11-12. Clearly, Craig had not yet dreamed up this excuse and therefore his counsel had no knowledge of it.

[10] ECF No. 222 (redacted); 223 (sealed/unredacted) ("a formal trust document was executed, creating a trust whose corpus included the Bitcoin that I mined, acquired and would acquire in the future. The name of that trust is Tulip Trust.")

admitted that he *was* a trustee of the "blind" trusts,[11] and that he *was* a beneficiary of the trusts.[12]

Five days later, and in support of his statement that the bitcoin were locked in a trust, he submitted another sworn statement producing and authenticating the alleged trust formation documents to prove the trusts existed. (Ex 2.)[13] This statement unequivocally authenticated, *inter alia*, the following "trust" documents: ECF Nos. [237-1] (Dave Kleiman Trust documents) and [237-9] (Tulip Trust 1). As discussed below, Plaintiffs proved these documents are forgeries.

This May 13 declaration marked another contradiction as to what exactly was in the alleged Tulip Trust. At his April 4 deposition, he swore that the Tulip Trust didn't have bitcoin or private keys. (ECF No. 312, at 294:11-22 ("Q. Did you ever put Bitcoin into the trust? No . . . Did the Tulip Trust ever come to hold private keys to Bitcoin wallets? No.").)  However, his April 18 motion stated that the trust held all of Craig's bitcoin. ECF No. 184 ("Dr. Wright transferred ownership of all of his Bitcoin into a blind trust"). His May 8 declaration also stated that the trust held the bitcoin. ECF No. [222] (referring to conversations with counsel "regarding trusts that I settled that *hold or held Bitcoin* that I mined . . ." and "a formal trust document was executed, creating a trust whose corpus included the Bitcoin that I mined . . .").[14] But when Craig realized

---

[11] Id. ("the trustees for Tulip Trust 1 are . . . Craig Steven Wright . . . Satoshi Nakamoto (i.e., Craig Wright)."). In his objection (at 14), Craig tried to explain this contradiction by noting that "the Order failed to consider that there are two Tulip Trusts . . . [Craig] is the trustee of one . . . not . . . of the other." This is pure sophistry. In his April 18 motion Craig stated he couldn't list his bitcoin because they were locked in a blind trust that he wasn't a trustee over. In his sworn declaration he identified that trust as Tulip Trust 1 by stating that access to the "public addresses . . . requires myself and a combination of trustees referenced in Tulip Trust 1 to unlock. But in that same declaration he also swore that he was a trustee of Tulip Trust 1. Thus, the trust mentioned in his motion and his declaration are the same trust. Craig's disingenuous argument that there are two trusts is simply another instance of Craig showing whatever is expedient to avoid justice.

[12] *Id.* ("I am am the contact person for both beneficiaries"); Id. ("the primary beneficiaries of Tulip Trust II are me and my wife . . .")

[13] At the June 26 hearing both of Craig's declarations (May 8 and May 13) were handed to the Court (81:5-16) whereupon Judge Reinhart took "judicial notice of the two declarations of Dr. Wright, which I believe are both filed in the record in redacted form." ECF No [236] at 82:7-9. On review, however, Plaintiffs cannot find the May 13 declaration in the docket. Plaintiffs have attached it as Ex. 2 (Craig Wright's May 13, 2019 Declaration).

[14] In classic Craig fashion, this declaration is self-contradictory and leaves just enough ambiguity to allow him to argue that the bitcoin or just the keys were transferred (whichever is more convenient). Specifically, it states that

that any transfer of bitcoin into the alleged Tulip Trust would necessarily be reflected on the Bitcoin blockchain, that he'd be required to identify those transactions, and that Plaintiffs could then use that information to trace the stolen bitcoin, he pivoted again. In his May 13 declaration he swore that "**the electronic files** that would be used to create the private keys to the Bitcoin that I mined . . . **were transferred into Tulip Trust 1. The Bitcoin itself, however, has never been transacted**." Ex. 2 (emphasis added). He perpetuated this new story through his June 26 deposition and the show cause hearing. Order at 23.[15]

At the show cause hearing and in further effort to prove he could not comply with the Court's order, Craig shifted his story yet again. In complete conflict with his sworn deposition testimony that "Dave had . . . no knowledge of the set-up of the trust" and "did not even know what he was . . . holding," Craig now claimed that it was Dave who *essentially* set up the entire "trust," and that Dave (and only Dave) was in charge of distributing the key slices and arranging for a bonded courier to return the final piece to Craig in 2020.[16]

But his misrepresentations at the hearing didn't end there. Craig was aware that many

---

""there are no transactions related to the Bitcoin that I mined." He also cryptically mentions that "[a]ccess to **the** encrypted file that contains the public addresses and their associated private keys to the Bitcoin that I mined" could only be unlocked by himself and a "combination of trustees . . . based on a Shamir scheme." *Id.*

[15] In an attempt to reconcile Craig's contradictory statements about what he transferred into the trust (bitcoin v. private keys) the objection (at 14-16) attempts to argue that transferring bitcoin to an alternate address and providing someone with a private key to your bitcoin are the same thing. But this is no truer than wiring money into someone else's bank account and providing them with the password to your bank login are the same thing. The objection misses Judge Reinhart's greater point. While both methods may provide control to the transferee, "it is not credible that, given his claim to have an unmatched understanding of Bitcoin, he would" not have used the correct terminology when discussing how he made the transfer. Order at 23. Quite simply, the "self-proclaimed creator of Bitcoin and therefore a person who claims to have intimate knowledge of how Bitcoin works" would not have made this mistake. *Id.* at 25.

[16] ECF No [236] at 16:12-15, 23:8-9, 23:23-24:7, 29:10-19, 30:9-31:14, 107:24-25, 125:15-24 ("Dave was tasked, as part of helping me destroy everything and hiding things, with making sure that there was a long time between any of this ever coming back to me . . . Part of that was I guess you'd call them a bonded courier over here . . . I made sure Dave didn't tell me who I used . . . It was Dave who talked me out of destroying it utterly. . . The way it was set up was I gave slices to Dave, and he was directed to give them to bonded couriers that would send slices based on different events. One of those events was June 20, 2020.")

documents he produced contain contradictory representations about how many key slices were required to open the allegedly encrypted file.[17] To explain these discrepancies, Craig pivoted yet again to say that there were multiple encrypted files, each holding different data and each requiring its own critical mass of key slices to unlock. (ECF No [236] at 106:24-108:23). This, of course, contradicted his May 8 declaration that the relevant information was inside a **single** file.[18]

In fact, even Craig's testimony at the hearing about the allegedly encrypted file itself was inconsistent. Craig first testified that "there is a file, and that consists of many files inside" (6/28, 107:7-8) and that the "outermost encrypted file" (*id.*, 125:8-9) requires "eight of 15" key slices to open, (id. 10-11) but that "I don't know" who has those keyslices (*id.* at 12-13). But Craig later testified that he *was* able to access one of the subfiles.[19] This, of course, should have been impossible since he "allegedly" couldn't get past the first outermost encrypted file.

Craig's ever-changing story is evidence of its falsehood. It's well accepted that lies necessitate conflicting stories because as this Court has pointed out, "Oh! What a tangled web we weave when first we practice to deceive." (ECF No. [265], at 4).

### (b).   Evidence of forgeries

As mentioned above, when the Court required Craig to substantiate his claim that he'd transferred his bitcoin into a blind trust, he was forced to produce documents to shore that lie up.

---

[17] ECF Nos. [237-16], at 8 ("there are 15 key segments. It is divided with a threshold of 12"); [237-17], at 4 ("In the 'Tulip Trust,' a scheme of 3 of 5 keys has been created."); [237-18], at 1 ("There are 15 Key slices . . . 8 slices are required to reconstruct the main key files"); [237-19], at 2 ("not less than eight (8) of the fifteen (15) slices are required").

[18] ECF No. [222] (emphasis added) ("Access to **the** encrypted file that contains the public addresses and their associated private keys to the Bitcoin that I mined")

[19] Dr. Wright identified the private keys to blocks 1-10 as one of the encrypted subfolders. *Id.* at 122:24-123:3 ("This is to do with the access to the first 10 Bitcoin addresses . . . I said there were four; this is one of them."). He then testified that he obtained the keys to access this file and signed with the private keys in blocks 1-10. *Id.* at 135:17-21("I was being told to sign with the first 10 addresses; I ended up doing that; that was it.")

As demonstrated below, the "trust documents" Craig submitted to "prove" the trusts exist, and which he swore were authentic, are abject forgeries. ECF No. [222]; Ex. 2. This demonstrates the trust itself is also a clear fabrication, and Craig's claim that the trust's alleged control over an "encrypted file" is all part of an elaborate ruse designed by Craig to hide his bitcoin. Judge Reinhart's order discussed just "one example" of the "substantial credible evidence" that "documents produced by Dr. Wright to support his position in this litigation are fraudulent." ECF No. 277, at 20. Based on this evidence, Judge Reinhart concluded, as this Court should, that "[t]he totality of the evidence in the record does not substantiate that the Tulip Trust exists." *Id*. at 21. As discussed above, this also led him to find, by "clear and convincing evidence" that "Dr. Wright's testimony that this Trust exists was intentionally false." *Id*. Whether on clear error or *de novo* review, Judge Reinhart's findings are well supported.

1.    *The Dave Kleiman Trust documents (ECF No. 237-1) are forgeries*

As discussed above, Craig produced and relied on an email Dave allegedly wrote to him in June 2011 regarding the Tulip Trust.  On its face, the email appeared to support Craig's narrative that his bitcoin had been placed in a trust that Dave controlled.[20] But forensic evidence conclusively demonstrated Dave did not write this email.  To the contrary, Craig did -- in 2014, over a year after Dave died.  Craig (presumably by accident) produced another copy of this same email that reflects the true date it was written and sent is October 17, 2014. ECF No. [237-6]. The metadata of the versions of this email show that it was originally sent from a computer located in Australia named with Craig's initials (ECF No. [264] at 129:17-19), from Craig's email address to Craig's email address (*id.* at 129:20-130:14), but that it's "from" and "to" fields had been

---

[20] At Craig's second (and Court supervised) deposition, he testified that Dave wrote, and he received, ECF No. [237-1] on or about June 24, 2011. Ex. 4 at 447:7-12. As described below, this was a lie.

modified to appear as if it came from Dave to Craig (*id.* at 147:19-24), that its email headers had been badly modified so that the date and day of the week were wrong (*id.* at 149:6-11), that it was sent from and created by software that didn't exist in 2011 (*id.* at 148:24-149:5), and that Dave's purported cryptographic signature was used after Dave died (*id.* at 171:10-16). Forensics also showed that both 2011 version is a revision of the 2014 version (*id.* at 146:19-147:11).

### 2.     The Tulip Trust I document (ECF No. [237-9]) is a forgery.

On its face, this appears to be the document Craig used to settle Tulip Trust I in 2012, *i.e.,* the blind trust allegedly preventing Craig's access to the bitcoin list.[21] Thus, this document is the central document to Craig's impossibility defense. It's dated October 23, 2012. Craig swore it was authentic. ECF No. 222; Ex. 2. But it's a forgery. The document names Tulip Trading Ltd (IBC 093344) as a beneficiary. ECF No. [237-9] at 1-2 ¶1. But at the hearing, Plaintiffs proved (via emails and other documents Craig himself produced) that Craig didn't even own Tulip Trading Ltd until 2014 when he bought it as a shelf company. ECF No. [237-11, 12, 13, 14]; ECF No. 236, 88:5-97:11 (cross examination on subject). Furthermore, the metadata for the document allegedly created in 2012 contained fonts copyrighted by Microsoft in 2015. (ECF No. [264] at 16-23.)[22]

---

[21] At his second deposition, Craig testified that he bought "Tulip Trading" (a beneficiary of Tulip Trust 1) sometime before 2012. *Id*. at Ex. 4 at 414:1-11. As described below, this was a lie.

[22] Plaintiffs' expert Dr. Matthew Edman showed that the "trust documents" could not have been prepared in 2012, as Craig claims.  (DE 264, at 121 et seq.)  Craig's objection argues, based on a number of improbable scenarios, that Dr. Edman's testimony that the documents were backdated is not "conclusive" or exclude other "plausible explanations." (DE 311, at 18 & n.15.)  Craig's individual explanations are all incredibly unlikely, but he completely fails to appreciate that the likelihood of all these excuses occurring (which is necessary for his exoneration) is so incredibly unlikely, its laughable. Add to that the fact that Craig couldn't put forward evidence that any of these unique situations occurred, and this argument becomes preposterous. But the law does not require absolute certainty, and Judge Reinhart properly evaluated Dr. Edman's credibility and credited his detailed testimony, which provides the only logical explanation for the mention of Tulip Trading Ltd. in documents dated in 2012.  Craig offered no expert testimony to rebut Dr. Edman.

### (c).    History of Craig's lies

A party's litigation conduct is relevant to determining bad faith.  *Costa*, 2011 WL 7318760, at *5. Even outside the lies told in the context of protecting the bitcoin list, Craig has lied and submitted forged evidence to this Court at every opportunity in this litigation.

In support of his original motion to dismiss this case on personal jurisdiction grounds, Craig submitted false testimony claiming no relationship with W&K (ECF No. [12-1], at 2) which was directly contrary to his sworn testimony in Australia (ECF No. [83], at ¶¶160-170). In other words, Craig was willing to cheat to win.

Undeterred, again in support of another potentially case-dispositive motion to dismiss the amended complaint for forum non conveniens, Craig swore he had "no documents" from "any ATO investigation" and if he did, they were "in Australia." (ECF No. [33-3] at ¶18). After he lost the motion, however, he flipped positions arguing he was "mistaken" and had so many ATO documents he shouldn't have to go to Australia to collect more. (ECF No. [127] at 7.)  Again, he was willing to cheat to win.

Apparently believing the adage that "the third time is the charm," Craig submitted two forged exhibits in support of his motion for judgment on the pleadings.  But counsel was forced to withdraw those documents when they were exposed as fakes.  ECF No. 265, at 6. Again, Craig was willing to cheat to win.  As this Court has already noted, "[u]nfortunately, the record is replete with instances in which the Defendant has proffered conflicting sworn testimony before this Court." *Id*. at 10. Craig's testimony and evidence regarding the encrypted file and trust fit this unfortunate pattern.

### (d).    Craig's post hearing statement confirms Judge Reinhart's findings were correct

After Judge Reinhart issued the sanction from the bench on August 26, 2019, Craig walked

16

out of the courthouse, stepped in the car, and got on a video call with Brendan Sullivan, a journalist. In that interview, which took place minutes after receipt of the Court's sanction, he clearly admitted that, contrary to the testimony he gave to this Court, he **_could_** access his bitcoin, but **_chose_** not to. Specifically, the article, which has been sworn accurate by Mr. Sullivan (Ex. 3), quoted Craig saying:

> Everyone makes me look like a mean [expletive]. I might have been a [expletive], but I was the [expletive] who was withholding. **I could have tanked the market anytime in the last 10 years and ran away laughing.** I didn't.

Ex. 1 (emphasis added). As is clear from the context of the interview, Craig's statements that he could tank the market meant that he could have done so by flooding the market with bitcoin – something he could only do if he could (contrary to his sworn testimony) access the partnership's bitcoin hoard.[23]

## C.   Craig's deception prejudiced plaintiffs and no lesser sanction would have sufficed

Craig's assertion that the sanctions "are improper because there is no evidence of any prejudice to Plaintiffs" is wrong because, as explained below, Plaintiffs were prejudiced as a matter of law due to Craig's campaign of lies and forgeries, which demonstrate Plaintiffs cannot have a fair trial as Craig won't hesitate to lie to the jury, forge evidence, or otherwise cheat to win. This prejudice is especially strong under the unique circumstances of this case where Dave is not available to tell the true story, the partnership was purposely kept confidential, and Craig is the only person left with direct knowledge of many of the critical facts. But Plaintiffs have also been

---

[23] Further support that he can access the bitcoin if he wants to came in response to Mr. Sullivan's statement that: "But how will you actually get the money? . . . **now you'll have to break the Tulip Trust** to transfer the coins." Craig responded with: "**If the court makes an order, I will comply with the order** . . ." Ex. 1 (emphasis added). Thus, implying that he has the ability to "break" the trust.

prejudiced factually because Craig's failure to comply with discovery has prevented them from tracing the partnership's bitcoin that form the core of their claims.

As a matter of law, a plaintiff is necessarily prejudiced when a defendant falsifies evidence or commits perjury. "[T]hose 'who lie, evade and fail to tell the *whole* truth obviously enjoy an advantage over honest litigants." *Forsberg v. Pefanis*, 634 F. App'x 676, 680 (11th Cir. 2015). Indeed, allowing a defendant who has "demonstrated comfort with fabricating testimony" to continue to defend against a claim "would only provide [such a defendant] with further opportunities to subvert the integrity of the judicial process." *Sprint*, 83 F. Supp. 3d at 1298; *see also Consumer Fin. Prot. Bureau v. Morgan Drexen*, 101 F. Supp. 3d 856, 875 (C.D. Cal. 2015) ("Based on the extent of [defendant's] misrepresentations and falsification of evidence, the Court anticipates that [defendant] would continue to deceive the Court, its own trial counsel, and opposing counsel if the Court allowed this case to proceed to trial."); *Littler v. Martinez,* No. 2:16-CV-00472-JMSDLP, 2019 WL 1043256 (S.D. Ind. Mar. 5, 2019) (based on defendant's "repeated perjury," "[t]he Court has no confidence that [defendant] would testify truthfully to the jury").[24]As a result, district courts have found that there is "no sanction short of striking of the answer to adequately address the issue of fabricated evidence." *See Forsberg v. Pefanis*, 634 F. App'x 676, 679-80 (11th Cir. 2015); *see also McDowell v. Seaboard Farms of Athens, Inc.*, No. 95-609-CIV-ORL-19, 1996 WL 684140, at *2 (M.D. Fla. Nov. 4, 1996) (noting that "federal case law is well established" that dismissal and default sanctions are "appropriate" where "a party fabricates evidence purporting to

---

[24] In analogous situations where a litigant has deprived his opponent of evidence, Courts have found that "a specific finding of prejudice is not required . . . once the court has found . . . an intent . . . to prevent the other party from using it in the litigation." *Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*, No. 12 CV 1851, 2016 WL 4765689, at *10 (N.D. Ill. Sept. 13, 2016); See Advisory Committee Note to 2015 Amendment to Fed. R. Civ. P. 37(e). The specific prejudice finding isn't required because "the finding of intent to deprive the other party of the use of certain information also supports the inference that the missing information was unfavorable to the party that destroyed it—and thus the further inference that the party who now cannot use the lost evidence has been prejudiced by that loss." Id.

substantiate its claims"); *see also Hosny v. Thiam*, No. 13-cv-04103, 2016 WL 10587115, at *1-2 (N.D. Ga. Aug. 17, 2006) ("[G]iven the egregiousness of [defendant's] conduct in forging evidence, the Court concludes an appropriate sanction is to strike his Answer and Counterclaim, and to enter default.").  Lesser sanctions are inadequate to deter such misconduct because, "if manufactured evidence is merely excluded while the lawsuit continues," litigants would "infer that they have everything to gain, and nothing to lose" by continuing to falsify evidence.  *Vargas v. Peltz*, 901 F. Supp. 1572, 1582 (S.D. Fla. 1995).  Craig has demonstrated a consistent and repeated disregard for truth, honesty, and integrity. And since Craig is the only individual left with first-hand knowledge of many of the facts central to Plaintiff's claims, Plaintiffs ability to prove those claims has been, and will be, substantially prejudiced due to his lies and forgeries.

But the prejudice goes further than Craig's refusal to tell the truth. Craig's specific withholding of the bitcoin list has also prejudiced Plaintiffs. Craig testified to mining over 800,000 bitcoins while Craig and Dave were operating the Satoshi Nakamoto partnership. The core allegation of Plaintiffs complaint is that Craig stole the partnership's bitcoin after Dave died. (ECF No. [83] ¶ 7.) If Craig were forced to provide the list of those bitcoin, Plaintiffs could trace the date and time they moved, what they were spent on, as well as who received them.  This could help Plaintiffs prove their case in many ways. For example, if the list shows massive transfers of bitcoin into Craig's wallets shortly after Dave's death, it would help establish Craig's theft. Alternatively, if the list shows expenditure of bitcoin prior to 2013 to benefit both Dave and Craig it would support the existence of a partnership and its ownership of the bitcoin. Furthermore, the list would lead Plaintiffs to witnesses, *i.e.,* recipients of bitcoin transferred from (or to) Craig.[25]

---

[25] In fact, as Craig testified he paid for Dave to manage people that created intellectual property (*April 4, 2019 Depo. Trn.* 230:2-235:19), these witnesses would likely also have information about the intellectual property Dave and Craig created together.

Of course, these facts would establish the existence of the Satoshi Nakamoto partnership and the ownership of the intellectual property that comes with it.

Indeed, Craig has admitted that "the one thing Bitcoin does: more than anything else, it provides an immutable evidence trail that is admissible in court."[26] To be sure, tracing bitcoin for insight gleaned from its movement is a significant industry in the cryptocurrency space. *See e.g.* Chainalysis, https://www.chainalysis.com/ (providing insight into bitcoin movement and tracing).

Craig's refusal to provide the bitcoin list has therefore prevented Plaintiffs from engaging experts to track these movements and potentially prove these facts or others.

Of course, Craig claims that the bitcoin have never moved on the blockchain – *i.e.* that he has never spent them. As an initial matter, this assertion should be disregarded. Craig is a proven perjurer and his testimony cannot be trusted. But most importantly, his refusal to supply the list must support the inference that its disclosure would show information, including movement, that would help prove Plaintiff's case. See *Glob. Material Techs., Inc.,* 2016 WL 4765689, at *10. In fact, as described above, it's easy to see how disclosure of this list could be detrimental to Craig's defense of this case.

But even if Craig's testimony were true (it's not), and he hasn't moved any of the bitcoin (he has), his refusal to provide the list is still prejudicial because the list would still contain helpful information. For example, it would show exact date and times each of the bitcoins were mined. This information could be helpful in showing Dave's active participation, or Craig's non-participation. Furthermore, there are many advanced techniques to differentiate the manner in which unmoved bitcoin were mined that could help identify whether all the bitcoin were mined by the same source and potentially where those bitcoin were mined.  Indeed, Craig can't deny this

---

[26] Craig Wright, Immutable Evidence, February 16, 2019 Medium.com post, available at: https://medium.com/predict/immutable-evidence-386b60a33123

because he suggested just such a method to try and reconstruct his holdings. (ECF No. [264] at 17-23.)

Finally, Plaintiff have been prejudiced because, as admitted by Craig, Bitcoin's unique design means that once he identifies the bitcoin, Plaintiffs could enlist the Court's help to obtain it back:

> But the thing to imagine here is a world where blackmail or cybercrime creates a scenario where the victim can quickly freeze bitcoin or require the rightful implementation. **The thief will want to give back the bitcoin because there will be a record.** If they don't return it and they spend it on an exchange knowing that it's already subject to a freezing order, **AML and KYC laws will link their identity indelibly in a manner that can be used as evidence in a court**.

Craig Wright, https://craigwright.net/blog/bitcoin-blockchain-tech/bitcoin-is-anything-but-anonymous/ (emphasis added). His refusal to identify the bitcoin, however, prevent Plaintiff from tracing it forward.

In sum, Craig lied and submitted forged evidence in an effort to prevent Plaintiffs from pursuing the core elements of their case.  As articulated by Judge Reinhart "Craig has a Dr. Wright has a substantial stake in the outcome of the case. If Plaintiffs succeed on their claims, Dr. Wright stands to lose billions of dollars. That gives him a powerful motive not to identify his bitcoin." Craig has "demonstrated comfort with fabricating testimony," so allowing him to continue defending against Plaintiffs' claims would simply serve to provide Craig "with further opportunities to subvert the integrity of the judicial process."  *See Sprint*, 83 F. Supp. 3d at 1298. Accordingly, no remedy other than striking Craig's pleadings is appropriate under these circumstances.

**D.**     **The sanctions relate to Craig's conduct and do not violate due process**

Judge Reinhart specifically found that Craig willfully withheld evidence critical to Plaintiffs' claims in violation of multiple discovery orders and "intentionally submitted fraudulent

documents to the Court, obstructed a judicial proceeding, and gave perjurious testimony." (DE 277, at 28.)  Craig nonetheless argues that the sanctions imposed violate *his* due process rights because "[t]here is no nexus between the single, narrow discovery issue before the Magistrate [Judge] and the broad sanctions the Order purported to impose through the Deemed Facts."  (DE 311, at 9.)  That assertion is demonstrably false.  Judge Reinhart specifically—and correctly— found that the sanctions not only relate to the evidence Craig has improperly withheld, but that "[n]o lesser sanction would suffice."  (DE 277, at 16, 27-29.)

       (i)     *The withheld evidence is relevant to the issues affected by the sanctions*

A district court's exercise of its broad discretion to impose sanctions under Rule 37(b)(2)(A) and manage its affairs does not violate due process unless the sanctions are not "just" or "specifically related to the particular claim which was at issue in the order to provide discovery." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982).[27] In further explaining the requirement that the sanction be "related to the particular claim," the Court said that the power to issue a default judgment under Rule 37

> was permissible as an expression of the undoubted right . . . to create a presumption of fact as to the bad faith and untruth of an answer begotten from the . . . failure to produce the proof ordered. The preservation of due process was secured by the presumption that the refusal to produce evidence material to the administration of due process was but an admission of the want of merit in the asserted defense."

*Id.* at 705 *quoting Hammond Packing Co. v. Arkansas*, 212 U.S. 322 (1909). In essence, the Supreme Court found that due process was protected if the failure to produce the discovery ordered could support the negative inference that, had the discovery been produced, it would have

---

[27] Craig does not (and could not) argue that the sanctions imposed by Judge Reinhart are not just. And of course, it was. Craig was "warned of a possible sanction."  *Ins. Corp. of Ireland*, 456 U.S. at 708. And "[c]onfronted with continued delay and an obvious disregard of its orders, the trial court's invoking of its powers under Rule 37 was clearly appropriate." *Id*. Moreover, the Court's finding that Plaintiffs own half the Bitcoin and intellectual property "was not a frivolous claim" as ample evidence supports this finding including Craig's own admission that he and Dave were "partners." *Id.*; (ECF. [83-2], at 2).  Further, Craig had "ample warning that a continued failure to comply with the discovery orders would lead to the imposition of this sanction." *Id.*

undermined that party's defense. *See id*. Thus, "[d]ue process is violated **only if** the behavior of the defendant will not support the *Hammond Packing* presumption. *Id.* (emphasis added). Finally, once the *Hammond Packing* presumption is met, a severe sanction isn't problematic. *Id.* ("[t]hat a particular legal consequence . . . follows from [the sanction], does not in any way affect the appropriateness of the sanction.")

> (ii)    The sanctions meet the Hammond Packing presumption and specifically related to the claim at issue in the litigation

As discussed above, Craig's failure to provide the bitcoin list supports the negative inference that had he produced the list, it would have undermined his defense and shown Dave owned half the bitcoin. As discussed above, it's easy to see how. For example, the list could have shown massive transfers of bitcoin occurring shortly after Dave's death, thus supporting Craig's theft and providing a mechanism to trace the bitcoin. Additionally, it could show joint access to the bitcoin if transactions were initiated to benefit both Craig and Dave. Of course, these facts would establish the existence of the Satoshi Nakamoto partnership and the ownership of the intellectual property that comes with it. This is completely in line with Judge Reinhart's finding that Craig's "conduct has prevented Plaintiffs from obtaining evidence that the Court *found relevant* to Plaintiffs' claim that Dr. Wright and David Kleiman formed a partnership to develop Bitcoin technology and to mine bitcoin." (Order at 27-28 (emphasis added).) This evidence was, in fact, highly relevant to Plaintiffs' claims and the loss of that evidence is highly prejudicial to Plaintiffs' claims.

Thus, Judge Reinhart's sanction, finding that Craig's failure to produce the list merits a sanction establishing that (i) the partnership existed, that therefore (ii) half the bitcoin and intellectual property belonged to the partnership, and that therefore (iii) any affirmative defenses

inconsistent with those facts must be stricken – easily satisfies the *Hammond Packing* presumption.

> (iii)   *Craig waived the right to challenge the relationship between the discovery order and the sanctions*

As seen from above, Craig's "due process" argument is simply a repackaging of his original argument that evidence of his bitcoin holdings is not relevant to Plaintiffs' claims.  However, the Court expressly rejected that argument in an order read into the record by Judge Reinhart *more than eight months ago*.  (*See* DE 124, at 20:2-23:7.)  Under Rule 72(a), a party has fourteen days to object to an ordered issued by a Magistrate Judge.  *See* Fed. R. Civ. P. 72(a).  Because Craig failed to do so, he has waived any argument that the evidence is not relevant to Plaintiffs' claims.  *See Perez v. New Auto Image Mktg., Inc.*, No. 15-cv-21893, 2016 WL 7540272, at *2 n.4 (S.D. Fla. May 20, 2016) (party that "failed to object to [the Magistrate Judge's] ruling" had "waived his ability to present evidence" relating to a particular issue where the Magistrate Judge had denied the party's motion to compel production of evidence concerning that issue).[28]

## E.   **Craig's conduct is consistent with conduct for which courts impose terminating sanctions**

As mentioned above, the severity of the sanction does not cause it to violate due process.  *Ins. Corp. of Ireland*, 456 U.S. at 705. ("[t]hat a particular legal consequence . . . follows from [the sanction], does not in any way affect the appropriateness of the sanction.")

---

[28] Although Rule 72(a) concerns the amount of time that a party has to object to a "written order" issued by a Magistrate Judge, "[a]n oral order read into the record by the magistrate will satisfy this requirement."  *In re Gabapentin Patent Litig.*, 312 F. Supp. 2d 653, 658 (D.N.J. 2004) (quoting Fed. R. Civ. P. 72(a) advisory committee notes).  Craig did not object to that order, or any of the other orders requiring Craig to produce evidence of bitcoin holdings.  (*See* ECF No. [166] (denying Craig's motion for protective order); ECF No. [217] (granting motion to compel). Furthermore, to the extent there wasn't a written order by virtue of the oral order read into the record, that oral order clearly became written when the Court entered ECF No. [212] (granting Plaintiffs' motion to compel production of Craig's bitcoin holdings "in accordance with the Court's prior orders").

Nonetheless, Craig's conduct during these proceedings demonstrates that he is willing to go to great lengths—"including submitting incomplete or deceptive pleadings, filing a false declaration, knowingly producing a fraudulent trust document, and giving perjurious testimony at the evidentiary hearing"—to prevent Plaintiffs from obtaining evidence relevant to their claims. (DE 277, at 27.)  This conduct, which the Court appropriately found to be "antithetical to the administration of justice," (*id.*, at 28), is more than sufficient to support an inference that Craig lacks *any* meritorious defense to Plaintiffs' claims.  *See Ins. Corp. of Ireland*, 456 U.S. at 705-06 ("Due process is violated only if the behavior of the defendant will not support" the "presumption that the refusal to produce evidence material to the administration of due process was but an admission of the want of merit in the asserted defense." (citations omitted)).  Indeed, courts in this Circuit have imposed *terminating sanctions* for less egregious conduct.[29]  Accordingly, the Court should readily reject Craig's assertion that the non-default sanctions imposed by Judge Reinhart violate due process.

## F.    Judge Reinhart did not rely on Hearsay

Craig argues that Judge Reinhart "improperly relied on inadmissible hearsay" in support of his sanctions Order.  More specifically, Craig contends that the "metadata that plaintiffs' expert claims to have extracted from documents produced by [him]" is hearsay.  Craig's argument lacks any merit.

Metadata is not hearsay.  *1st Fin. SD, LLC v. Lewis*, No. 11-CV-00481-MMD, 2012 WL 4761931, at *2–3 (D. Nev. Oct. 5, 2012) (holding that metadata "cannot be excluded as hearsay");

---

[29] *See, e.g.*, *Forsberg v. Pefanis*, 634 F. App'x 676, 679-80 (11th Cir. 2015) (striking answer where defendant forged affidavit); *Sprint Sols., Inc. v. Fils-Amie*, 83 F. Supp. 3d 1290, 1295-98 (S.D. Fla. 2015) (imposing default where defendants provided false testimony); *Costa v. Datapro, Inc.*, No. 10-cv-23172, 2011 WL 7318760, at *6-9 (S.D. Fla. Aug. 5, 2011) (striking answer where defendant misrepresented facts at deposition and claimed he could not produce his own bank records); *Hosny v. Thiam*, No. 13-cv-04103, 2016 WL 10587115, at *1-2 (N.D. Ga. Aug. 17, 2006) (same, where defendant fabricated evidence).

*CA, Inc. v. Simple.com, Inc.*, 780 F. Supp. 2d 196, 224 (E.D.N.Y. 2009) (same, and explaining that "a party opposing computer generated data must put forth more than mere assertions of tampering"); *see also United States v. Lizarraga-Tirado*, 789 F.3d 1107, 1110 (9th Cir. 2015) (holding that a "tack placed by the Google Earth program and automatically labeled with GPS coordinates isn't hearsay" and joining other circuits in the rule that "machine statements aren't hearsay"); The Sedona Conference Commentary on ESI Evidence & Admissibility, 9 Sedona Conf. J. 217, 224 (Mar. 2008) ("System metadata does not constitute 'hearsay,' at least not under the Federal Rules of Evidence, because system metadata is generated by a computer without human assistance.").

Indeed, the metadata in question is not something that Plaintiffs or their expert created. Instead, as the undisputed evidence at the hearing demonstrated, the metadata is part of, and was extracted from, documents produced by Craig.  (ECF No. [264] at 122, 127-28.) Stated differently, the metadata was produced by Craig as part of the documents itself, and it was simply made readable through generally accepted means by Plaintiffs' expert.  *Id*

Craig never disputed the metadata in question came from the documents he produced, some of which he submitted with sworn a declaration of authenticity.  Ex. 2.  Indeed, he was quite conversant with metadata generally and how the metadata was extracted from the documents he produced.  ECF No. [236] at 38.  Dr. Edman similarly explained what metadata is, and how it was extracted from the documents produced by Craig.  (ECF No. [264] at 122:2-6.)  No contrary evidence was presented.

There is also no dispute that the metadata of Craig's documents demonstrate the documents were altered prior to their production by Craig. In fact, when confronted with the metadata, Craig did not deny the documents had been altered.  Instead, he claimed that unnamed people who were

"trying to force [his] companies into liquidation" had "hacked" his computer.  (ECF No. [236] at

53:1-3, 54:24).  As Judge Reinhart observed in his Order, this claim is not believable:

> When confronted with evidence indicating that certain documents had been
> fabricated or altered, [Dr. Wright] became extremely defensive, tried to sidestep
> questioning, and ultimately made vague comments about his systems being hacked
> and others having access to his computers. None of these excuses were corroborated
> by other evidence.

Judge Reinhart further observed that Dr. Wright was not "writ[ing] on a clean slate" and,

quoting this Court, observed that the "record is replete with instances in which the Defendant has

proffered conflicting sworn testimony before this Court."  Order at 20.

Ironically, Defendant tries to turn these undisputed facts on their head and argues that

because the metadata was "altered and manipulated," it renders it inadmissible hearsay.

Specifically, Defendant states that "having 'established' that the documents [produced by Craig]

contain altered metadata, there is simply no way that plaintiffs could simultaneously establish that

the metadata was trustworthy." Not surprisingly, Defendant has not come forward with any

authority for the novel proposition that if he produces evidence that is later demonstrated to have

been falsified by him, that evidence must deemed "untrustworthy" and inadmissible "hearsay."

Simply stated, the metadata admitted by Judge Reinhart is evidence that Defendant's

document production is replete with forgeries and fraud.  It is "trustworthy" for that purpose – and

it is certainly not inadmissible hearsay.

## G.    Public Addresses

At the evidentiary hearing, Craig's testified that "there are no public addresses in the

Bitcoin system" (ECF No [236] at 9:23), that "[t]here are no public addresses at all in Bitcoin" (*id.*

at 10:8-9), that "[p]ublic addresses don't exist" (*id.* at 10:16), and that referring to public addresses

would be "like saying: how do unicorns relate to this Court." *Id.* at 10:18-19.

Incredibly, however, Craig's objection now admits that public addresses *are* relevant as one of the "only four ways to identify a list of Bitcoin holdings" is to use "a list of public addresses." Objection at 22. The objection then goes on to accuse *Judge Reinhart* of having "a lack of understanding of how Bitcoin works" and creating "a distinction without a difference" because his Order "attempt[s] to split hairs and distinguish between ordering a list of Bitcoin addresses and a list of bitcoin holdings." *Id*. But Judge Reinhart's comments on "public addresses" were all meant to address the fact that (i) Craig understood his obligation was to disclose his bitcoin holdings however that was to be accomplished, that (ii) if public addresses *were* irrelevant, Craig should have raised that issue earlier, that (iii) the Court had not, in fact, even used the term "public address" when giving the original order — and that therefore (iv) Craig was acting in bad faith by refusing to provide the information he knew he had to give.[30]

## H.    This Court should uphold Judge Reinhart's sanctions under its inherent power

Judge Reinhart found that the "sanctions otherwise available under Rule 37 are sufficient to address Dr. Wright's behavior, so the Court would not impose *additional* sanctions even if it were to invoke its inherent power." Order at 12, n9 (emphasis added). To the extent this Court has any hesitation at affirming Judge Reinhart's sanctions under Rule 37 (it shouldn't), it has the power to, and should, impose identical sanctions (or more severe ones) under its inherent power. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (holding that the power to impose sanctions under the Fed. R. Civ. P. don't "displace" a federal court's "inherent power to impose sanctions for bad-faith conduct," a power that "extends to a full range of litigation abuses."); *see also Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) (noting that

---

[30] Viewed in this light, the filing insults its own filer by stating, in no uncertain terms, that Craig demonstrates "a lack of understanding of how Bitcoin works" by claiming that "public addresses" are useless when, in fact, they are one of the "only four ways to identify a list of Bitcoin holdings." *Id.* at 22.

"[a] court may impose sanctions for litigation misconduct under its inherent power," and explaining that "[t]he key to unlocking a court's inherent power is a finding of bad faith").

## CONCLUSION

Judge Reinhart and this Court are faced with a litigant that has no respect for the authority of the Court, or for the fair administration of justice. He has lied throughout this case and, now caught, cloaks himself in the blanket of "due process." He still does not admit what he did and this Court should not have any illusion that his conduct, if not severely punished, will not be repeated again. As Judge Reinhart found, "[n]o lesser sanction would suffice." Order at 28. This is what's necessary to "deter others from engaging in similar conduct; and (4) penalize the offending party or attorney." *Steward*, 306 Fed. Appx. at 529.

Judge Reinhart gave Craig every opportunity to show that his admitted violation of the Court's Order was due to the impossibility of compliance. He failed to meet that burden.

Craig was sanctioned harshly, but fairly. Craig's Objections should be overruled in their entirety.

 Dated: December 16, 2019                    Respectfully submitted,

                                             *s/ Velvel (Devin) Freedman*
                                             Velvel (Devin) Freedman, Esq.
                                             **ROCHE FREEDMAN LLP**
                                             200 S. Biscayne Blvd.
                                             Suite 5500
                                             Miami, Florida 33131
                                             vel@rochefreedman.com

                                             Kyle W. Roche, Esq.
                                             *Admitted Pro Hac Vice*
                                             **ROCHE FREEDMAN LLP**
                                             185 Wythe Avenue F2
                                             Brooklyn, New York 11249
                                             kyle@rochefreedman.com

                                             Andrew S. Brenner, Esq.

**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd Street, Suite 2800
Miami, Florida 33131
abrenner@bsfllp.com

*Counsel to Plaintiffs Ira Kleiman as Personal*
*Representative of the Estate of David Kleiman*
*and W&K Info Defense Research, LLC.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 16, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman