UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC

    plaintiffs,

v.                                                                     Case No. 9:18-cv-80176 (BB/BR)

CRAIG WRIGHT,

    defendant.
_____/

## JOINT DISCOVERY MEMORANDUM

The parties certify they have complied with the requirements for pre-hearing consultation contained in the Court's Standing Discovery Order. Despite good faith efforts to resolve their differences, the following issues require resolution by the Court:

## DEFENDANT'S MEMO

Dr. Wright submits his memo below. However, he has not drafted a response to plaintiffs' memo because plaintiffs did not provide his counsel with sufficient time to draft a response. Specifically, knowing plaintiffs' penchant for sending the discovery memo at the last minute, yesterday, counsel for Dr. Wright asked plaintiffs counsel to provide the memo at noon today. Counsel never responded to that email, nor did counsel respond to the follow up emails sent at 3:28 and 4:05 today. It was only at 6:01 pm today, after the close of business hours (and after being informed that counsel for Dr. Wright had preexisting commitments and had to leave the office at 7:00 pm), that plaintiffs provided their discovery memo.

Making matters worse, when plaintiffs belatedly sent their discovery memo at 6:01 pm it included both plaintiffs' response to Dr. Wright's discovery memo and plaintiff's discovery memo. In other words, while refusing to send counsel for Dr. Wright plaintiffs' discovery memo,

1

plaintiff was using the time to draft their response to Dr. Wright's discovery memo, effectively sandbagging counsel for Dr. Wright.

Plaintiffs' memo raises new issues that were never meet and conferred on (such as Ms. Watts deposition) and is improper. Counsel for Dr. Wright will do their best to address the issues raised by plaintiffs at the discovery hearing. For the moment, they simply note that plaintiffs' memo contains misleading statements and misstates the record.

A.     **Plaintiffs' failure to produce data recovered from Dave's devices**

**Defendant:** Dr. Wright requests that the Court grant his counsel immediate access to the data recovered from Dave's electronic devices. At the time of Dave's death, Dave had at least fifteen electronic devices. Ira threw out one of those devices and formatted and deleted data from the remaining devices to make room for his personal photos and commercial movies. Ira continued using those devices up until March 18, 2019, which is at least one year after he filed this lawsuit.

Pursuant to this Court's order, Dr. Wright's discovery vendors imaged Dave's devices so that they could conduct an analysis of the drives and assess the extent of the damage that Ira caused. That assessment has been conducted and is the subject of an expert report that was prepared on behalf of Dr. Wright.

Knowing the importance of the data that resided on Dave's devices (it could shed light on the extent and location of Dave's bitcoin holdings), Dr. Wright also had his discovery vendors expended significant effort to recover the data that Ira deleted and that was not permanently overwritten. The venders were able to recover some of that data, and on November 27, 2019,

they sent some of the data to plaintiffs' counsel for review.[1] Dr. Wright's counsel asked plaintiffs' counsel to make that review a priority, but Plaintiffs' counsel has never substantively responded to that request, despite repeated follow-ups.

Discovery has almost concluded, and it is untenable that Dr. Wright's counsel have not received data that could have a significant effect on the case. For that reason, as contemplated by the Protective Order, Dr. Wright asks the Court to provide a further order permitting his counsel to immediately review all data recovered from Dave's devices.

**Plaintiff:** Defendant sent a list of slightly over 2400 documents. Since November 27, Plaintiff has been working diligently to draft its response to Craig's objection to this Court's sanctions order, as well as work on its reply in support of its motion for attorneys' fees, attending numerous depositions, getting through its privileged documents, and otherwise preparing for trial. Plaintiff has tried to get through these documents, but were not able to complete it. That said, Plaintiffs have now completed review of the overwhelming majority of these documents and will produce over 2000 of them in the next day. The balance will be produced before the holiday break.

**B.      Dr. Wright's third set of requests for production ("RFP")**

**Defendant RFP No. 20.**: Plaintiffs objected to Request 20, which asked for documentation related to "any real estate transactions by Ira Kleiman from April 1, 2013, to the present," arguing that it was not relevant. But it is. By all reports, Ira was never a wealthy person, but in February of 2014, just weeks after Dr. Wright told Ira to preserve Dave's electronic devices because they might contain bitcoin wallets, Ira purchased a home with

---

[1] This is the process set out in the Court's protective order [D.E. 117] (the "Protective Order").

$400,000 in cash. Dr. Wright is entitled to discover whether Ira sold Dave's bitcoin to finance his home purchase.

**Plaintiffs:** Defendant's request is based on pure speculation, hence their citation to "[b]y all reports." How Ira purchased his home is not "relevant to any party's claim or defense." There has been no evidence to suggest that Ira somehow obtained Bitcoin from his deceased brother, and sold it to buy a home. Simply stated, the RFP does not seek discoverable information, and is an unnecessary invasion of Ira's privacy.

**C.     Dr. Wright's fourth set of requests for production ("RFP")**

**Defendant RFP No. 3.** Plaintiffs objected to Request #3, which asked for communications between plaintiffs and the following individuals:

   a. Phillip Monecillo;
   b. Stephen Dekker;
   c. Erik eSplanada;
   d. Eric O'Donell;
   e. Neil Domseller;
   f. Peter Chen;
   g. Kannan Balakrishnan;
   h. Newton Cheung;
   i. CO1N Pty. Ltd.;
   j. DeMorgan Ltd.;
   k. DeMorgan Holdings Pty Ltd;
   l. Hotwire Preemptive Intelligence Pty Ltd.;
   m. Panopticrypt Pty Ltd.;
   n. Integyrz Pty Ltd.; and,
   o. Cloudcroft Pty Ltd.

According to plaintiffs, the request is a "fishing expedition" and overly burdensome because "the email addresses for these individuals are not provided."

This is not a fishing expedition. The individuals listed in Request #3 are former associates of Dr. Wright, a number of whom are believed to be connected to the hack of Dr. Wright's electronic devices, and any communications between plaintiffs and those individuals

4

would logically relate to the claims and defenses in this case. Further, there is no rule of Civil Procedure that parties must specify email addresses in a document request, making plaintiffs' objection baseless. As a courtesy, counsel for Dr. Wright provided plaintiffs with a list of email addresses, but plaintiffs stood by their objection to this request. Finally, recognizing that the requested communications may not exist, counsel for Dr. Wright asked plaintiffs' counsel to simply confirm whether there any such communications. If there are no communications, then there would be no reason to bring this matter to the Court's attention. But plaintiffs' counsel refused to provide that information.

**Plaintiffs:** This request sets forth a laundry list of individuals and entities that Dr. Wright believes are connected to an alleged hack of his computer devices. Setting aside the fact that Dr. Wright has produced no evidence that any such hack even occurred, his dealings with his former colleagues, associates and entities is irrelevant to Plaintiffs' claims or Defendant's defenses. Certainly, any alleged communications with Plaintiff that occurred well after the lawsuit are not likely related to any claim or defense. Especially since Plaintiff has not used, or relied on, any such communications in any filing or deposition.

**Defendant RFP Nos. 4, 5, 6, 7, and 8.** Plaintiffs also objected to requests 4, 5, 6, 7, which asked for communications between plaintiffs and the following individuals:

      a. Greg Maxwell;
      b. The Twitter handle "Contrarian";
      c. Members of Blockstream;
      d. Members of "Bitcoin Core"; and,
      e. Mining pools that predominantly mine BTC.

Once again, plaintiffs used the same "fishing expedition" template objection. But that objection is without any basis. The individuals listed above are known detractors of Dr. Wright, and a number of whom are believed to be connected to the hack of Dr. Wright's electronic devices.

Any communications between plaintiffs and those individuals would logically relate to the claims and defenses in this case, making this request relevant.

**Plaintiffs:** Similar to the above, Dr. Wright has apparently created a "detractors" list and wants evidence of any communications between those individuals and Plaintiffs. Again, whatever disputes Dr. Wright may have with these individuals is not relevant to any claim or defense in this matter. This is Dr. Wright fishing for information about what his perceived enemies are saying about him. That is not a proper subject of discovery in this case. Furthermore, as mentioned above, any communications with Plaintiff that occurred well after the lawsuit are not likely to be related to any claim or defense. Especially since Plaintiff has not used, or relied on, any such communications in any filing or deposition.

**Defendant RFP Nos. 10 and 11.** As for requests number 10 and 11, plaintiffs responded as follows:

"Plaintiffs have already produced any responsive, non-privileged documents related to this Request by applying the negotiated search terms to documents and communications in their possession."

It is not clear from that response whether plaintiffs are objecting to the request, or not objecting, but simply stating that the documents have already been produced. On the meet and confer call, plaintiffs' counsel was unable to clarify whether they were in fact objecting, making Court intervention necessary.[2]

**Plaintiffs:** As with all non-objected to requests, each party ran agreed upon search terms to discover responsive documents. That is what Plaintiffs did here. It remains unclear what Defendant is asking the Court to do.

---

[2] Plaintiffs counsel did subsequently agree to run limited search terms with regards to Request 11, but the question remains whether they are still standing by their objection, *i.e.,* will they produce documents that they are aware of that don't hit on search terms?

**PLAINTIFF'S MEMO**

As the Court has recognized, everyone is working extremely hard on this case. Defendant did ask for a draft of the memo by noon today, but did not produce their draft memo until 3:28 pm. It took Plaintiffs two and half hours longer to produce theirs. Part of this delay was due to the fact that Plaintiff could not draft Section A of its memo until Defendant reverted on whether they would produce Ms. Watts. And while Defendant had committed to telling Plaintiff their position on Monday, the did not do so until 1:00pm today. Thereafter, Plaintiff had to liaise with its English counsel to get the details on costs and draft the memo section. Defendant's overdramatic introduction is simply uncalled for.

It's also inaccurate that there was no meet and confer. Counsel for Plaintiff (Vel Freedman) spoke with counsel for Defendant (Amanda McGovern) today at 1:03pm and discussed their position on Ms. Watts and what Plaintiff's intended to request from the Court.

**A. Ramona Watts**

Craig has informed Plaintiffs that he intends to bring Ramona Watts, Craig's wife, as a witness at trial. Despite this, Craig refuses to make Ms. Watts available for deposition prior to the discovery cut off. To the contrary, Ms. Wright has hired counsel in London to artificially restrict the scope of that deposition and has demanded that Plaintiffs pay between 50,000 and 125,000 GPB (between $65,000-164,000) for the cost of her counsel's efforts to restrict the deposition, to prepare Ms. Wright to testify, and to attend the deposition. Craig should be required to make his wife available for deposition, the scope of which should be governed by the Federal Rules of Civil Procedure, or be prevented from bringing her to trial. He should not be permitted to hide her in a foreign country and block Plaintiffs ability to take her deposition, in order to sandbag Plaintiffs at trial. No payment should be required from Plaintiffs.

**Defendant**:

**B. Intellectual property discovery**

Plaintiffs served Craig with Requests for Production and Interrogatories seeking to identify and obtain information regarding patents that Craig may have an interest in flowing from his partnership with Dave Kleiman. The requests also specifically seek information regarding patents held by nChain, where Craig is the Chief Scientist.

Craig responded with a series of boiler plate objections including that the discovery is outside the Court's initial discovery period (which has been extended). Substantively, Craig appears to be taking the position that, with the exception of a single patent, he has no responsive documents or information because all relevant patents are held by nChain, and he has no ability to produce the requested information. Craig's claimed inability to produce materials held at nChain will need to be examined at his deposition. Accordingly, Plaintiffs reserve the right to re-address this objection at a later date.

**Defendant**:

**C. Plaintiffs' 5th RFP** (Ex. 5)

**RFP # 13, 14, and 31:** Defendant will only turn over documents from, to, or that mention either Abacus, Equator Consultants AG, or Denis Mayaka that "relate to David Kleiman, W&K, or the Tulip Trusts." But Dennis Mayaka (formally of Abacus, now of Equator) submitted a sworn declaration authenticating one of the alleged "Tulip Trust" documents that the Court found do not exist. This is also the individual that sold Tulip Trading Ltd to Craig after Craig claimed it was part of a trust allegedly formed years earlier. It's apparent he is caught up in Craig's schemes and Craig should produce any documents that come from, are addressed to, or that mentions these persons.

**Defendant**:

**RFP## 17-21:** Defendant should turn over all documents to, from, or that mention Selma Francis, Tim Maland, Liana Tall, R. Gustavsson, or Imram Chughtai that also mention bitcoins, Satoshi Nakamoto, or any trusts. Craig's attempt to limit this to only document that mention Dave, W&K, or the non-existent Tulip Trust should be rejected. These people are listed as "trustees" of the Tulip Trust 1 document and appear to be part of Craig's scheme to defraud Dave's estate.

**Defendant**:

**RFP #37:** Defendant will only produce his sworn statements that relate to David Kleiman, W&K, or the fictional Tulip Trusts. Plaintiff does not believe this is sufficient. Craig should turn over any sworn statement that relates to bitcoin, trusts, or Satoshi Nakamoto.

**RFP#46:** Defendant will not produce all documents filed in the Australian matter he's asserting res judicata because of as he claims they are publicly available. But the court documents are not publicly available and Craig should be forced to turn over a complete record of that proceeding.

**Defendant**:

**RFP #49:** Defendant will not turn over a copy of his diplomas and degrees. But this issue is relevant to his credibility and background. It's also relevant as the timing of when Craig received his doctorate could shed light on whether certain documents have been backdated.

**Defendant**:

Respectfully submitted,

*Counsel to Plaintiff Ira Kleiman as*  
*Personal Representative of the Estate*  
*of David Kleiman and W&K Info*  
*Defense Research, LLC.*

*/s/ Velvel Devin Freedman*

*Attorneys for Dr. Craig Wright*

RIVERO MESTRE LLP  
2525 Ponce de Leon Boulevard, Suite 1000  
Miami, Florida 33134  
Telephone: (305) 445-2500

| | |
|---|---|
| Velvel (Devin) Freedman, Esq.<br>BOIES SCHILLER FLEXNER LLP<br>100 SE Second Street, Suite 2800<br>Miami, Florida 33131<br>Telephone: (305) 539-8400<br>Facsimile: (305) 539-1307<br>vfreedman@bsfllp.com<br><br>Kyle W. Roche, Esq.<br>Admitted Pro Hac Vice<br>BOIES SCHILLER FLEXNER LLP<br>333 Main Street<br>Armonk, NY 10504<br>Telephone: (914) 749-8200<br>Facsimile: (914) 749-8300<br>kroche@bsfllp.com | Fax: (305) 445-2505<br>Email: arivero@riveromestre.com<br>Email: amcgovern@riveromestre.com<br>Email: zmarkoe@riveromestre.com<br>Email: receptionist@riveromestre.com<br><br>By: s/ *Andres Rivero*<br>ANDRES RIVERO<br>Florida Bar No. 613819<br>AMANDA MCGOVERN<br>Florida Bar No. 964263<br>ZAHARAH MARKOE<br>Florida Bar No. 504734 |

## CERTIFICATE OF SERVICE

I certify that on December 17, 2019, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record either by transmission of Notices of Electronic Filing generated by CM/ECF or by U.S. Mail.

/s/ *Velvel Devin Freedman*