UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IRA KLEIMAN, as the personal representative
of the Estate of David Kleiman, and W&K Info
Defense
Research, LLC

      *Plaintiffs,*

v.

CRAIG WRIGHT

      *Defendant.*

CASE NO.:  9:18-cv-80176-BB

## PLAINTIFFS' CORRECTED VERIFIED MOTION FOR ATTORNEYS' FEES[1]

At the August 26, 2019 hearing on Plaintiff's Motion to Compel (ECF No. [210]) the Court found that "an award of attorney's fees is warranted against Dr. Wright, but not against his counsel" and that "the plaintiffs are entitled to receive reasonable attorney's fees and expenses related to" ECF No. [210] and ECF No. [155]. 8/26/19 Hrg. Trn. at 72:1-2, 89:18-20.

Consequently, and pursuant to Federal Rule of Civil Procedure 37(a), Local Rule 7.3(a) and (b), as well as the Court's written Order On Plaintiffs' Motion to Compel (ECF No. [277]), Plaintiffs respectfully request the Court award Plaintiffs' the following reasonable expenses and attorneys' fees related to:

(1) filing and litigating their Motion to Compel Defendant to Comply with this Court's Orders Directing Him to Produce a List of the Bitcoins He Held as of December 31, 2013 (ECF [210]); and

---

[1] This Motion is identical to Plaintiffs' Original Motion for Attorney's Fees except as follows: (1) pursuant to Local Rule 7.3(a)(7), this corrected Motion is verified; (2) pursuant to Local Rule 7.3(a)(4), the terms of Plaintiffs' fee agreement with counsel are set forth; and (3) the redactions to the Boies Schiller invoices in Exhibit 2 have been changed to show the hourly rates of the attorneys for whom Plaintiffs are seeking payment of their fees.

(2) filing and litigating an opposition to Defendant's Motion Regarding Production of a List

of the Public Addresses of his Bitcoin as of December 31, 2013 (ECF No. [155]), which

the Court construed as a Motion for Protective Order. (*See* DE [277] at 28.)

## I. Background

In Plaintiffs first set of interrogatories, served on July 26, 2018, Plaintiffs requested Craig

"[i]dentify the . . . public addresses for any cryptocurrency that . . . you possess the private keys

to." (ECF No. 92-2 at 8.)

On March 14, 2019 this Court ordered Craig to provide this information in a different form.

(ECF No. [145-5] at 21-24). Specifically, the Court ordered Craig to produce a listing of his Bitcoin

holdings as of December 31, 2013, so that Plaintiffs could trace these coins forward. (*Id.* at 18, 21-

24.). The Court further ordered Craig to produce this list before his deposition or else move for a

protective order. (*Id.* at 28). Craig did not comply with that Order, thereby preventing Plaintiffs

from questioning him about the list at his deposition.

Nearly nine months after Plaintiffs' initial request, one international deposition, and four

discovery hearings before this Court, Craig finally moved for a protective order where he claimed

(for the first time) that he "transferred ownership of all his Bitcoin into a blind trust" in 2011 and

could not identify the public addresses associated with his pre-2014 bitcoin holdings. (ECF No.

[155] at 2). Craig's motion contained arguments that directly contradicted his sworn deposition

testimony. On receiving the motion, Plaintiffs spent time reviewing it, trying to reconcile it with

Craig's past statements, reviewing previous discovery material, and drafting a response. (ECF No.

[162].)[2] The Court denied Craig's Motion and ordered him to provide documents and sworn

statements regarding the alleged blind trust. (ECF No [166].)

---

[2] The Response was filed under seal. A redacted version is filed in the public record at Docket Entry 183.

Craig then filed the sworn statements, and produced some of the documents he was ordered to provide. (Craig Wright Declaration, (May 8, 2013), Craig Wright Declaration, (May 13, 2013).) Nevertheless, Craig still failed to provide a listing of his bitcoin holdings as of December 31, 2013.

On May 30, 2019, Plaintiffs' counsel attended a meet and confer with Craig's counsel to address this deficiency. When defense counsel stated the list was not forthcoming, Plaintiffs moved to compel it again. (ECF No. [197]).[3] As part of that motion, Plaintiffs asked the Court to compel the list under oath, compel another deposition of Craig, and impose sanctions under Rule 37. (*Id.* at 6). Craig filed a response arguing compliance was impossible. (ECF No. [204]).[4]

On June 11, the Court held a hearing on Plaintiffs' Motion where it ordered Craig to appear for a deposition on June 28, 2017 to allow Plaintiffs to question him about, *inter alia*, his Bitcoin holdings. (ECF No. [221] at 32). The Court then told Craig he'd have one final opportunity to produce the listing. (*Id.* at 32-33). If he had not produced it in time, the Court would hold a show cause hearing to determine why it should not certify facts to Judge Bloom for a contempt hearing due to his non-compliance. (*Id.*). Finally, the Court warned Craig it would also make a separate determination as to whether sanctions under Rule 37 were appropriate. (*Id.* at 32-33.)

Craig did not produce the listing and the show cause hearing went forward. The hearing took three days, however, due to the length of time needed to properly examine the relevant fact and expert witnesses.

To prepare for the evidentiary hearing, Plaintiffs engaged Dr. Matthew Edman, an expert in applied cryptography and digital forensics. Dr. Edman's hourly rate for this engagement is $560 per hour. Dr. Edman worked extensively with Plaintiffs to demonstrate that Craig's sworn testimony was perjurious, and that many of the documents Craig produced under sworn statements

---

[3] A redacted copy was filed at DE 210.
[4] A redacted copy was filed at DE 211.

of authenticity were forgeries. Dr. Edman flew down from New York to testify at the June 28 hearing, but the examination of Craig took the balance of June 28. Accordingly, Dr. Edman had to prepare again and return on August 5, 2019 to testify.

Prior to his testimony, and at the suggestion of the Court, Dr. Edman prepared an expert report to disclose his general findings prior to his testimony. In a continued effort to demonstrate that Craig's testimony was perjurious and his evidence forged, Plaintiffs (after Craig's initial testimony and before the second day of hearings) took the deposition of Jonathan Warren, the creator of Bitmessage. Mr. Warren testified that the Bitmessages submitted by Craig were forgeries as they pre-dated the Bitmessage software itself (ECF No. 261-1, 20-33, 93-95). His testimony also demonstrated that Craig's sworn testimony about the release date of Bitmessage was false. (ECF No. 261-1, 16:2-9).[5]

This Court found that Craig's "willful and bad faith pattern of obstructive behavior, including submitting incomplete or deceptive pleadings, filing a false declaration, knowingly producing a fraudulent trust document, and giving perjurious testimony at the evidentiary hearing" (ECF No, [277 at 27]) constituted a sustained and concerted effort to impede Plaintiffs' discovery into his bitcoin holdings.  The Court further concluded that Craig's "conduct has wasted substantial amounts of the Court's time and the plaintiffs' time and resources, which could have been saved. His behavior has unnecessarily protracted this litigation." (ECF No. [276] at 87:10-13.) The Court concluded that "there is clear and convincing evidence that Dr. Wright's noncompliance is willful and in bad faith, that plaintiffs have been prejudiced in the amount of time and money and diversion that has been occasioned upon them . . ." (*Id.* at 14-17.)

---

[5] Plaintiffs are not seeking fees or costs associated with Mr. Warren's deposition.

In all, Plaintiffs' efforts to compel Craig's compliance with the Court's orders included filing the initial Motion to Compel (ECF No. [210]), opposing Craig's Motion for Protective Order (ECF No. [162]), appearing for at least two (2) days of discovery hearings, two depositions, and attending three days of evidentiary hearings. Additionally, it caused Plaintiffs' to have to retain an expert in digital forensics. Plaintiffs seek their reasonable expenses and attorneys' fees incurred in these efforts.

Plaintiffs state that their agreement with counsel involves a mixed hourly fee/contingent fee agreement, where 50% of counsel's hourly rates are paid as invoiced (up to certain caps not applicable to the invoiced time), the other 50% of hourly rates being paid on collection of any recovery (after costs are reimbursed), and with any remaining recovery to be split between Plaintiffs and counsel pursuant to pre-determined percentages.

## II.    Argument

Rule 37(a)(5)(A) provides that Plaintiffs are entitled to "reasonable expenses incurred . . . including attorneys' fees" for making and resolving a successful motion to compel. Fed. R. Civ. P. 37; *see also* Fed. R. Civ. P. 37(b)(2)(C). Local Rule 7.3 similarly permits an award of attorneys' fees for final orders, and courts in this Circuit regularly award attorneys' fees and costs arising from a motion to compel. *See, e.g., Lawrence v. Bayview Loan Servicing, LLC*, No. 16-21415-CIV, 2017 WL 2313485, at * 1 (S.D. Fla. Mar. 16, 2017), *report and recommendation adopted*, No. CV 16-21415-CIV, 2017 WL 2312920 (S.D. Fla. May 26, 2017); *Nation Motor Club, Inc. v. Stonebridge Cas. Ins. Co.*, No. 10-81157-CIV, 2013 WL 6729648, at *1 (S.D. Fla. Aug. 2, 2013).

"The existing settled law in this Circuit mandates calculating a reasonable attorney's fee by using the lodestar method, which requires [the] Court to multiply counsel's reasonable hourly rate by the reasonable hours expended." *Katz v. Chevaldina*, 127 F. Supp. 3d 1285, 1301 (S.D.

Fla. 2015) (citing *Norman v. Hous. Auth. Of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)).

"A reasonable hourly rate is defined as the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Ecomed, LLC v. Asahi Kasei Med. Co., Ltd.*, No. 17-61360-CIV, 2018 WL 4193642, at \*2 (S.D. Fla. June 21, 2018) (Reinhart, J.). There is a "strong presumption" that the lodestar figure represents a "reasonable" fee. *Irish v. Reynolds*, No. 13-Civ-10063, 2018 WL 1863765, at \*2 (S.D. Fla. Jan. 9, 2018) (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)).

Plaintiffs seek their attorneys' fees incurred in filing and litigating Craig's Motion Regarding Production of a List of the Public Addresses of his Bitcoin as of December 31, 2013 and Plaintiffs' Motion to Compel, based on the rates and time spent that were charged to Plaintiffs in this case. As such, those rates are reasonable under the applicable standard.

Specifically, Plaintiffs are seeking $592,558 in attorneys' fees, which includes time for the following individuals:

(1) Vel Freedman – Mr. Freedman is a partner at Roche Freedman LLP with substantial experience litigating complex commercial matters and a specialized understanding of cryptocurrency, bitcoin, and blockchain technologies.[6] Mr. Freedman is a 2019 recipient of the Daily Business Review's professional excellence award as an attorney "On the Rise." Mr. Freedman spent 245.6 hours working on the matters covered by this motion and his hourly rate for this matter is $900.

(2) Kyle Roche – Mr. Roche is a partner at Roche Freedman LLP with experience handling complex commercial matters.[7] Mr. Roche, who holds a chemical engineering degree,

---

[6] While working on this case, but prior to August 1, 2019, Mr. Freedman was counsel at Boies Schiller Flexner LLP.

[7] While working on this case, but prior to August 1, 2019, Mr. Roche was an associate at Boies Schiller Flexner LLP.

has published numerous articles on bitcoin and blockchain technologies and has presented on these issues in various fora. Mr. Roche spent 295.6 hours working on the matters covered by this motion and his hourly rate for this matter is $690.

(3) Andrew Brenner – Mr. Brenner is a partner at Boies Schiller Flexner LLP with over 25 years of experience litigating complex cases through trial. He is the head of litigation and co-Administrative Partner of the Miami office of Boies Schiller Flexner LLP. Mr. Brenner spent 133.2 hours working on the matters covered by this motion and his hourly rate for this matter is $1050.

(4) Stephen Lagos –Mr. Lagos is a second-year associate at Boies Schiller Flexner LLP. Mr. Lagos focuses on complex commercial litigation. Mr. Lagos spent 45.4 hours working on the matters covered by this motion and his hourly rate for this matter is $610.

Plaintiffs attach as Exhibit 1 the detailed accounting of all tasks performed during the hours billed. Plaintiffs also attach as Exhibit 2 the Roche Freedman LLP and Boies Schiller Flexner LLP invoices that reflect the time billed.[8]

In addition to $592,558 in attorneys' fees, Plaintiffs also seek $66,023.78 in expenses incurred, much of which is comprised of Dr. Edman's fees. Plaintiffs attach as Exhibit 3 detailed accounting for all expenses incurred. (*See* Ex. 2 for Roche Freedman LLP and Boies Schiller Flexner LLP invoices reflecting same.)

Plaintiffs seek a total award of $658,581.78 for attorneys' fees and costs reflecting over 719.8 hours incurred and charged to Plaintiffs by their counsel at Roche Freedman LLP and Boies Schiller Flexner LLP. This amount is based on reasonable hourly rates—commensurate with those

---

[8] Privileged and irrelevant information has been redacted.

actually charged by these and comparable firms in matters in this District—and an appropriate number of hours worked in light of the scope and extent of Craig's deception and the amount at stake in this litigation.

## III.   Conclusion

For the forgoing reasons, Plaintiffs respectfully move the Court to award them $658,581.78 in attorneys' fees and costs for filing and litigating their Motion to Compel (ECF No. [210]) and in opposing Dr. Wright's Motion Regarding Production of a List of the Public Addresses of his Bitcoin as of December 31, 2013 (ECF No. [155]).

<strong><u>VERIFICATION</u></strong>

The undersigned has fully reviewed this filing, is familiar with its contents, and believes it is well grounded in fact and is justified.

_____

ANDREW S. BRENNER

Dated: December 20, 2019

Respectfully submitted,

**ROCHE FREEDMAN LLP**

By:   _/s/ Velvel (Devin) Freedman_
        Velvel (Devin) Freedman
        Florida Bar No.: 99762
        200 South Biscayne Blvd., Suite 5500
        Miami, Florida 33131
        Tel.:    (305) 357-3861
        Email:  vel@rochefreedman.com

        Kyle W. Roche
        Joes Delich
        *Admitted Pro Hac Vice*
        185 Wythe Avenue F2
        Brooklyn, New York 11249
        kyle@rochefreedman.com
        Jdelich@rochefreedman.com

        and

**BOIES SCHILLER FLEXNER LLP**

By: ___/s/ *Andrew S. Brenner*_____
      Andrew S. Brenner
      Fla. Bar No: 978663
      100 SE Second Street, Suite 2800
      Miami, Florida 33131
      Tel.:   (305) 539-8400
      Email:  abrenner@bsfllp.com

      *Attorneys for Plaintiffs*
      IRA KLEIMAN, as the personal representative
      of the Estate of David Kleiman, and W&K
      Info Defense Research, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 20, 2019, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document

is being served this day on all counsel of record via transmission of Notices of Electronic Filing

generated by CM/ECF.

      /s/ *Andrew S. Brenner*
      **Andrew Brenner**