UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC<br><br>*Plaintiffs,*<br><br>v.<br><br>CRAIG WRIGHT<br><br>*Defendant.* | CASE NO.: 9:18-cv-80176-BB/BR |

**PLAINTIFFS' REPLY IN SUPPORT OF ITS MOTION FOR
ATTORNEYS' FEES (ECF NO. [303])**

Craig's opposition rests on a deeply ironic proposition. Namely, stripped of its procedural objections and rate disputes, Craig asks this Court to conclude that Plaintiffs devoted too much effort to discovering and proving *Craig's* own fraud on the Court.

Plaintiffs will address each of Craig's argument in turn. But a brief recap of the events that precipitated this motion, and the events that have transpired since the entitlement to fees was entered, is necessary to give proper context to Craig's objections, and the replies thereto.

On August 27, Judge Reinhart issued a 29-page Order on Plaintiffs' Motion to Compel (the "Order"). ECF No. [277]. That Order flowed from Plaintiffs' year-long attempt to obtain important discovery from Craig, and his attempts to resist that discovery. Specifically, Plaintiffs sought discovery on the bitcoin mined during the time Plaintiffs allege that Dave and Craig had a partnership.[1] In other words, Plaintiffs sought through discovery to determine the fruits of the alleged partnership.[2]

---

[1] In addition to the mining of bitcoin, the partnership also developed intellectual property.
[2] Unfortunately, because Dave passed away in 2013, many of the facts at the core of this dispute need to be obtained by Plaintiffs through discovery from Craig.

1

Craig resisted this discovery at every turn, initially through cognizable legal objections but ultimately through the use of forged documents and perjured testimony. As set forth in Judge Reinhart's Order at pages 2-9, Craig objected to interrogatories seeking this discovery on the grounds that it was "irrelevant, grossly overbroad, unduly burdensome, harassing and oppressive, and not proportional to the needs of the case." *Id.* at 3. Similarly, Craig objected to requests for documents related to the value of his cryptocurrency holdings on the grounds of "relevance, over-breadth[3], harassment, and disproportionality." *Id.* at 3-4. Craig did not argue then that answering the interrogatories or producing relevant document was impossible.

These objections were fully litigated and ultimately overruled. But the Court did allow Craig to file a motion for protective order if he wanted to claim that the discovery was unduly burdensome. *Id.* at 5. Dr. Wright filed such a motion but did not actually claim undue burden – as Judge Reinhart stated:

> Although [Craig] makes the conclusory statement that it would be unduly burdensome to produce a list of his bitcoin holdings as of December 31, 2013, this conclusion is not supported by the facts. In essence, he does not argue undue burden. He argues impossibility. The argument that Dr. Wright is incapable of providing an accurate listing of his current or historical bitcoin holdings was never presented in any prior hearings before this Court, when the Court was crafting the scope of discovery.

Id. at 7, quoting from ECF No. [166].

Craig's Motion was denied and he was ordered to produce the information supporting his new claim of impossibility; namely, information about certain "blind trusts" he claimed were holding the information the Court had ordered Craig to produce. *Id*. at 7-8, quoting ECF No. [166].

---

[3] Plaintiffs later voluntarily limited the scope of this request to the time period up to Dave's death in April 2013.

In response, Craig produced sworn Declarations and a series of documents that were later proved to be forgeries.

What ensued next was a three-day evidentiary hearing to determine the merits of Craig's impossibility claim. Fact and expert witnesses were called. Indeed, Craig himself testified for nearly a full day.[4]

Following that hearing, Judge Reinhart ruled. That ruling was reduced to writing the following day. Not only did Judge Reinhart determine Craig had failed to demonstrate it wasn't possible for him to comply with the Court's Order, Judge Reinhart found Craig "intentionally submitted fraudulent documents to the Court, obstructed a judicial proceeding, and gave perjurious testimony." ECF No. [277] at 28. The Court correctly concluded that Craig's conduct was "antithetical to the administration of justice." *Id.*

As part of the relief entered, Judge Reinhart ordered Craig to pay Plaintiffs' attorney's fees and costs associated with the discovery dispute. *Id.* at 16 ("an award of attorney's fees is warranted against Dr. Wright, but not against his counsel.")[5]; ECF No. [276], at 89:18-20 ("I will order that the plaintiffs are entitled to receive reasonable attorney's fees and expenses related to each of those motions.").

Plaintiffs were given 24 days to file their request for those fees and costs. Shortly after the Order was entered, and prior to the due date for the fees and costs request, the parties reached a tentative settlement of the case in its entirety. As a result, the parties moved to postpone certain deadlines, including the deadline for the fees and costs request.

---

[4] Plaintiffs also took two depositions, one of Craig and one of Jonathan Warren, but didn't request fees for either.
[5] Plaintiffs have not sought fees from Craig's counsel.

The parties spent the next two months trying to finalize and document the settlement. Unfortunately, without notice, and for reasons previously disclosed, those efforts failed on or about October 30, 2019. On November 20, the new deadline set by the Court for the fee petition, Plaintiffs filed their request for fees and costs. Craig timely filed his objection to the request on December 9th. In that objection, Craig sets forth a laundry list of reasons Plaintiffs' motion is allegedly "improper." Each is addressed below.

### A. Plaintiffs motion should not be denied for failure to comply with Local Rule 7.3

Craig argues that Plaintiffs' motion should be denied in its entirety because Plaintiffs did not fully comply with Local Rule 7.3. But as described in detail below, Plaintiffs did not believe all of the requirements of L.R. 7.3 governed given the posture in which this motion arose, and specifically the timing of the Court's order.

The primary non-compliance with L.R. 7.3 Craig cites, namely failure to provide him with sufficient opportunity to review and object, arose out of this ambiguity, and not any willful conduct by Plaintiffs. Thus, the denial of the motion due to Plaintiffs failure to follow procedures that (i) they had a good faith basis to believe didn't apply and that (ii) haven't prejudiced Craig at all, would be a disproportionate and unfair outcome. This is true especially considering Craig's gross misconduct, lies, and forgeries that have undeniably wasted Plaintiffs' time and caused Plaintiffs great expense.

Full compliance with the Rule simply wasn't possible. Rule 7.3 requires service (but not filing) of a draft motion for fees "at least thirty (30) days prior to the deadline for filing any motion for attorneys' fees." L.R. 7.3(b). But, the Court ordered Plaintiffs to file their motion in 24 days –making compliance impossible.[6] In support of the argument that compliance with 7.3(b) wasn't required in this

---

[6] And while Plaintiffs got extensions of time during settlement discussions, when Craig broke the settlement unexpectedly on October 30, it only left 21 days to file the motion.

4

case, the paragraph itself says that if "a federal statute provides a deadline of fewer than sixty (60) days . . . the parties need not comply with this paragraph's requirement." *Id*. While the Court's order isn't a statute, the point remains the same; the rule is not intended to apply to fee motions, like Plaintiffs' motion here, that have deadlines sooner than 60 days.

Relatedly, Plaintiffs understood the Order to displace some of the pre-filing requirements of L.R. 7.3. Specifically, after Plaintiffs' requested attorneys' fees as part of a larger sanction, the Court order (1) awarded fees, (2) required the motion be filed before compliance with the local rules were possible, and (3) expressly stated that "a **Response** and **Reply** may be filed in accordance with the time frames in **the Local Rules**." ECF No. [277], at 16, 28. The confluence of these three elements led Plaintiffs to believe, perhaps incorrectly, that the Court had displaced at least some of the pre-filing requirements of L.R. 7.3.

On review of Craig's brief and the local rules, Plaintiffs recognize it would have been better to comply with the provision of the rules that were possible to comply with. To that end, Plaintiffs will cure that non-compliance now:

First, Craig points out that the motion was not verified. Consequently, Plaintiffs attach their corrected verified motion for fees and costs as Exhibit 1, and will file same contemporaneous with this filing.

Second, Craig argues the motion was not shared thirty (30) days before it was due. As described above, that wasn't possible. In any event, at the time this Reply and corrected motion is filed, Craig will have had Plaintiffs' actual fee request for 30 days.

Craig also argues that they cannot individually object to the entries because the invoices are heavily redacted. As explained below, however, the invoices redact time not being sought – so

visibility into those time entries isn't necessary. Plaintiffs are also correcting some inadvertent redactions regarding rates.

Craig also argues that Plaintiffs' fee request is improper because it fails to set forth the terms of the fee agreement. Plaintiffs state that their agreement with counsel involves a mixed hourly fee/contingent fee agreement, where 50% of counsel's hourly rates are paid as invoiced (up to certain caps not applicable to the invoiced time), the other 50% of hourly rates being paid on collection of any recovery (after costs are reimbursed), and with any remaining recovery to be split between Plaintiffs and counsel pursuant to pre-determined percentages.[7] In other words, in the event of a recovery, Plaintiffs are paying counsel the full hourly rate claimed, plus an additional contingency fee. This information is likewise in the corrected motion being filed.

In sum, Plaintiffs had at least a good faith basis to believe full compliance with L.R. 7.3 wasn't required, any non-compliance with the rule has (i) now been cured, and (ii) didn't cause Craig any prejudice. Denying the motion on this formalistic basis would be grossly unfair given that Plaintiffs have been undeniably "prejudiced in the amount of time and money and diversion that has been occasioned upon them." ECF No. [276], at 87:16-17; *Rosenbaum v. Becker & Poliakoff, P.A.,* No. 08-CV-81004, 2010 WL 11505517, at *4 (S.D. Fla. Apr. 13, 2010) ("[t]he district court enjoys wide discretion in applying and enforcing its own local rules"); *McLeod, Alexander, Powel and Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1488 (5th Cir. 1990) ("[w]e recognize that district courts have considerable latitude in applying their own rules''); *Silberstein v. IRS*, 16 F.3d 858, 860 (8th Cir.1994) ("the district court has considerable leeway in the application of its local rules").

---

[7] Plaintiffs needed to seek financing to prosecute this extraordinarily expensive litigation.

### B. Hourly Rates

Craig next challenges some, but not all, of the hourly rates requested in the fee request. Specifically, Craig does not challenge Mr. Brenner's $1050 hourly rate nor does he challenge Mr. Lagos's $610 hourly rate. Instead, Craig argues that the rates charged by Messrs. Freedman ($900) and Roche ($690) are "egregiously excessive" for associates to have charged.

As an initial matter, and by way of correction, for all time sought in the fee petition covering Mr. Freedman's tenure at Boies Schiller Flexner LLP, he held the title of Counsel, not associate. Regardless, Craig's objection, which relies primarily on two arguments, should not be accepted.

First, Craig points to examples where other lawyers in this community have been awarded lower hourly fees. Of course, Courts make fee awards based on numerous factors, including based on expertise in highly technical areas (like bitcoin, blockchain, and cases with international components) risk factors in partial contingent cases (like this one), and the quality of lawyering being practiced. *See Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150 (Fla. 1985), *holding modified by Standard Guar. Ins. Co. v. Quanstrom,* 555 So. 2d 828 (Fla. 1990) (providing factors to utilize when determining reasonable attorney fees which include consideration of whether the fee is fixed or contingent and the experience, reputation, and ability of the lawyers performing the services). Plaintiffs have full confidence that this Court can likewise determine the proper hourly rate for each of the attorneys who are part of the fee petition here. But the fact that a Court in a particular case decided to award a particular hourly rate to another attorney that was above or below the rates sought here is not relevant to whether the rates sought here are "egregiously excessive." To the contrary, the rates sought by Messrs. Freedman and Roche are the

actual rates they charged in this case (and while their rates were later raised, that increase isn't included in the fee petition).[8]

Craig's second argument is even more unavailing. He points to the fact that Messrs. Freedman and Roche's rates are higher now at their new firm. However, *out of an abundance of caution,* Plaintiffs have not sought these higher rates but have instead sought the *lower* rate they each were charging while at Boies Schiller Flexner LLP. In other words, any rate discrepancy inured to the benefit of Craig, not the Plaintiffs.

Craig next complains that the hourly rates for Messrs. Freedman, Roche, and Brenner were improperly redacted from the Boies Schiller Flexner bills, "likely" because Messrs. Freedman and Roche were not being truthful about the rates they charged at Boies Schiller Flexner LLP. ECF No. [324] at 7. Plaintiffs would have hoped Craig's counsel would have more respect and civility than to accuse Messrs. Freedman and Roche of intentionally making misrepresentations to the Court without any proof whatsoever. The redaction of their rates was a simple clerical mistake. Attached hereto as Exhibit 2 are the portions of the invoices showing the hourly rates. They are, **of course**, exactly what counsel represented them to be. These revised redactions will likewise be included in Plaintiffs' corrected motion.

Lastly, on the rate issue, Craig points to an affidavit submitted by a Boies Schiller lawyer from the Fort Lauderdale office in 2017 where he stated that his rate was $850. Similarly, Craig attaches an affidavit from a case in Texas where lawyers from the Los Angeles office of Boies Schiller sought rates lower than that sought by Mr. Freedman here. These data points do not show that Mr. Freedman or Mr. Roche are charging excessive rates. Instead, they demonstrate that different lawyers, cases, subject matters, and years call for different rates, and that rates are not

---

[8] See discussion of fee arrangement, *supra*.

automatically a function of title or years of experience. Here, the rates Plaintiffs are seeking are the rates they are being charged in this litigation.[9]

### C. Time Spent

Craig next argues that the amount of time spent by Plaintiffs' counsel is unreasonable. What Craig does not acknowledge is *why* there was so much time spent. What started out as routine written discovery requests ended up with multiple hearings, multiple briefs, retention of experts, and a three day evidentiary hearing. And all of that was necessary solely because Craig refused to comply with an Order, and then lied and submitted forged documents in support of his claim that compliance was impossible. To describe this chain of events as the mere "fil[ing] two motions…and prepar[ing] for and attend[ing] an evidentiary hearing that lasted 13 hours" is farcical. The issues presented have been complex and novel, and this matter has been vigorously litigated. *Royal Bahamian Ass'n, Inc.* v. QBE Ins. Corp., No. 10-21511-CIV, 2011 WL 13220459, at *7-*8 (S.D. Fla. May 18, 2011), report and recommendation adopted, No. 10-21511-CIV, 2011 WL 13220497 (S.D. Fla. June 20, 2011) (citing *Rowe* factors and finding that hours billed were reasonable because the matter dealt with a novel area of law and involved hundreds of pages of filings).

Craig's specific examples of "excessive" billing fare no better. For example, Craig challenges Mr. Freedman's time entries as not being "humanly possible" because he worked long hours on certain days. But for the time entries at the end of June, Craig fails to mention that those were the three days immediately leading up to the first day of the evidentiary hearing. It was at that hearing that most of the heavy lifting to expose Craig's lies and forgeries occurred. Those

---

[9] In fact, it may be less. In the event of a recovery, Plaintiffs will pay the full hourly rate plus a contingent percentage.

days were indeed high billing days, where much sleep was sacrificed on the altar of preparation, but they were certainly justified given the work done, and the amount at stake. The other days complained about for Mr. Freedman were those immediately before and on the second day of the evidentiary hearing.

Similarly, the alleged "excessive" time for Mr. Roche took place on the days immediately before the second day of the evidentiary hearing. At that hearing, Mr. Roche was responsible for preparing Plaintiffs' expert to testify, and Mr. Roche prepared for and conducted the direct examination of the expert at the hearing.[10]

### D. Alleged Defects With Exhibit 1

Craig next turns its attention to Exhibit 1 to Plaintiffs' Motion, arguing that it should be "disregarded" because it "appears to misstate plaintiffs' counsels' actual billing entries." Craig is wrong.

First, Exhibit 1 was meant as an aid to help the Court distill the fees being sought by Plaintiffs. The actual billing invoices include time spent on other issues, and Plaintiffs are not seeking those fees. Because most of the time reflected on those invoices is not compensable under the current Order and is not being sought, the invoices are heavily redacted. Only time compensable under Judge Reinhart's Order was placed on Exhibit 1. The exhibit has about 125 total entries, spread out over a four month period for four different lawyers. Craig isolates a total of *five* entries for dispute.

---

[10] Craig also challenges the costs for Dr. Edman as being not sufficiently broken out to detail the work done. Dr. Edman prepared for and was present at the courthouse for the June 28th evidentiary hearing. Since he was not reached that day, he prepared again for the August 5th hearing. There is no reason to question the reasonableness of his charges for this work.

Craig points out that two entries for Mr. Brenner do not match the actual invoiced entries. As Craig's own objections demonstrate, the reason for the discrepancy is that Exhibit 1 only includes time spent on matters related to the fee petitions, while the invoices include additional time. For example, the June 18 entry on the invoice shows that Mr. Brenner, in addition to time spent on issues compensable under Judge Reinhart's Order, also spent time revising Plaintiffs' mediation statement.[11] This latter time was not included in Exhibit 1 because it was not compensable pursuant to Judge Reinhart's Order. The total time was also adjusted downward on Exhibit 1. The same explanation applies to the June 18 entries. In other words, Exhibits 1 and 2 differ because Exhibit 1 only has time compensable under the Order.

Craig makes the same complaints about two entries for Mr. Roche. Again, the discrepancies between the invoices and Exhibit 1 exist because only time compensable under Judge Reinhart's Order is included in Exhibit 1.

Lastly, Craig challenges a single entry from Mr. Freedman on Exhibit 1 (5/19/19) because it is "vague." The entry, which describes time that took place 11 and 6 days after receiving Craig's sworn and perjurious statements and forged documents, contains a typo: "attention to expelis [experts], bitcoin addresses, and other discovery issues; attention to motion practice." The entry reflects coordination with experts, review of the arguments on bitcoin addresses, review of the documents produced, and motions filed on June 3.

### E. Request for Evidentiary Hearing

Plaintiffs do not believe an evidentiary hearing is necessary to resolve the straightforward fee issue pending before it. Consequently, Plaintiffs request that Craig's request for an evidentiary hearing be denied.

---

[11] This should have been redacted, but was overlooked in the rush to get the motion on file.

11

## CONCLUSION

Plaintiffs respectfully request the Court award reasonable attorneys' fees and costs to Plaintiffs based on the record before it.

Dated: December 20, 2019         Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

By: ___/s/ *Andrew S. Brenner*___
 Andrew S. Brenner
 Fla. Bar No: 978663
 100 SE Second Street, Suite 2800
 Miami, Florida 33131
 Tel.:   (305) 539-8400
 Email:  abrenner@bsfllp.com

 *Attorneys for Plaintiffs*
 IRA KLEIMAN, as the personal representative
 of the Estate of David Kleiman, and W&K
 Info Defense Research, LLC

**and**

**ROCHE FREEDMAN LLP**

By: ___/s/ *Velvel (Devin) Freedman*___
 Velvel (Devin) Freedman
 Florida Bar No.: 99762
 200 South Biscayne Blvd., Suite 5500
 Miami, Florida 33131
 Tel.:   (305) 357-3861
 Email:  vel@rochefreedman.com

 Kyle W. Roche
 Joes Delich
 *Admitted Pro Hac Vice*
 185 Wythe Avenue F2
 Brooklyn, New York 11249
 kyle@rochefreedman.com
 Jdelich@rochefreedman.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 20, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *Andrew S. Brenner*
**Andrew Brenner**