```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2
                       Case No. 18-80176-CIV-BB
 3
   IRA KLEIMAN, ET AL.,         )
 4                              )
        PLAINTIFFS,             )
 5                              )
        -v-                     )
 6                              )
   CRAIG WRIGHT,                )
 7                              )
        DEFENDANT.              )   West Palm Beach, Florida
 8                              )   December 18, 2019
   _____)
 9

10          TRANSCRIPT OF DISCOVERY HEARING PROCEEDINGS

11            BEFORE THE HONORABLE BRUCE E. REINHART

12                 UNITED STATES MAGISTRATE JUDGE

13

14   Appearances:

15   (On Page 2.)

16

17   Reporter                   Stephen W. Franklin, RMR, CRR, CPE
     (561)514-3768              Official Court Reporter
18                              701 Clematis Street
                                West Palm Beach, Florida  33401
19                              E-mail:  SFranklinUSDC@aol.com

20

21

22

23

24

25
```

```
 1   Appearances:

 2   FOR THE PLAINTIFFS          Velvel Freedman, ESQ.
                                 Roche Freedman, LLP
 3                               200 South Biscayne Boulevard
                                 Suite 5500
 4                               Miami, FL 33131
     -and-
 5                               Andrew Brenner, ESQ.
                                 Boies, Schiller, Flexner, LLP
 6                               100 Southeast 2nd Street
                                 Suite 2800
 7                               Miami, FL 33131
     -and-
 8   (By Telephone)             Kyle Roche, ESQ.
                                 Roche Freedman, LLP
 9                               185 Wythe Avenue F2
                                 Brooklyn, NY 11249
10
     FOR THE DEFENDANT:          Schneur Z. Kass, ESQ.
11                               Rivero Mestre, LLP
                                 2525 Ponce De Leon Boulevard
12                               Suite 1000
                                 Coral Gables, FL 33134
13   -and-
                                 Zaharah R. Markoe, ESQ.
14                               Rivero Mestre, LLP
                                 2525 Ponce de Leon Boulevard
15                               Suite 1000
                                 Coral Gables, FL 33134
16
                                 *  *  *  *  *
17

18

19

20

21

22

23

24

25
```

```
1              (Call to the order of the Court.)

2              THE COURT:  Good afternoon, everyone.  Have a seat,

3       please.

4              MS. MARKOE:  Good afternoon, Your Honor.

5              THE COURT:  All right.  We're here on case

6       number 18-80176, Ira Kleiman and W&K Info Defense Research

7       versus Craig Wright.

8              May I have counsel's appearances starting with

9       counsel for the Plaintiffs.

10             MR. FREEDMAN:  Vel Freedman for the plaintiffs, Your

11      Honor.  And thank you for the 15-minute accommodation.

12             THE COURT:  Well, no problem.  Mr. Freedman, good

13      afternoon.

14             Mr. Brenner.

15             MR. BRENNER:  Andrew Brenner for the plaintiffs, and

16      I join in thanking you.

17             THE COURT:  Of course, Mr. Brenner.  Anything I can

18      do to support the Brightline I'm happy to do.

19             For the defense.

20             MR. KASS:  Zalman Kass for Dr. Craig Wright.

21             THE COURT:  Mr. Kass, good afternoon.

22             MS. MARKOE:  Zaharah Markoe for Dr. Wright.

23             THE COURT:  Ms. Markoe, good afternoon.

24             Did I hear somebody on the phone, as well?

25             MR. ROCHE:  Yes, Kyle Roche for plaintiffs.
```

```
 1              THE COURT:  Hi, Mr. Roche.  Good afternoon.

 2              All right.  So we're here on the request for a

 3    discovery hearing.  I have received and reviewed the joint

 4    discovery memo that was filed at docket entry 339, as well as

 5    I've reviewed the attachments that went with that.  And as we

 6    always do, what I'd like to do is just use the joint memo as

 7    an agenda, and we'll just go through it and I'll rule as I

 8    need to.

 9              So let me turn, then, to page 2 of docket entry 339

10    relating to the request for data recovered from Mr. Kleiman's

11    devices.  Let me turn to Mr. Freedman.  It looks like, at

12    least if I read this correctly, this may be a moot issue, but

13    bring me up to date on where we are.

14              MR. FREEDMAN:  Yes, Your Honor.  I expect if it

15    hasn't been produced, it will be produced in the next hour.

16              THE COURT:  Okay.

17              MR. FREEDMAN:  And all of it, actually.

18              THE COURT:  All 2400 or however many pages?

19              MR. FREEDMAN:  All 2400, yeah.

20              THE COURT:  All right.  So Ms. Markoe, Mr. Kass,

21    that resolve that issue?

22              MR. KASS:  Your Honor, unfortunately not.

23              THE COURT:  Okay.  Talk to me.

24              MR. KASS:  Your Honor, this is going --

25              THE COURT:  You can stay seated, that's fine.  Just
```

 1   pull the microphone over.

 2          MR. KASS:  Your Honor, this is actually going to be

 3   a repeat issue.  We recovered more documents and more data

 4   than that was provided to plaintiffs.  We only provided a

 5   small subset at the -- initially, but there is -- there are

 6   going to be more documents.  And the issue is the importance

 7   that this data could be to our case, because it can really

 8   show the location of the Bitcoin addresses to the extent they

 9   existed.

10          And I understand that counsel stated that they were

11   busy preparing the case, and that's understandable, but the

12   issue -- and that actually makes it more important why we need

13   to have a different procedure in place, because as we produce

14   more and provide more documents to them, the case is going to

15   get even more busier as we get closer to trial.

16          THE COURT:  All right.  So, I'm sorry, Mr. Kass.

17          MR. KASS:  Yes.

18          THE COURT:  If I could back up for a second.  You'll

19   be shocked to know I don't have an encyclopedic recollection

20   of this issue since it was so long ago.  So these were devices

21   that were in the possession of Mr. Kleiman's family upon his

22   demise.  There was a -- and so the request was to search those

23   documents, and what is it that the plaintiffs -- the

24   defendants were trial to locate on those documents?  On those

25   devices, I'm sorry.

```
 1              MR. KASS:  So, Your Honor, there are two -- there
 2   are two issues that we are really trying to do with that
 3   device.  One is we were trying to discover the extent of the
 4   damage caused by Ira Kleiman when he deleted his brother's
 5   devices and stored his commercial movies --
 6              THE COURT:  Okay.
 7              MR. KASS:  -- and family photos on it.
 8              THE COURT:  All right.  So you're just trying to
 9   determine what was lost.
10              MR. KASS:  And that's already been completed.
11              Now, we're in the second phase where Dr. Wright has
12   expended significant sums of money having his vendors try and
13   recover any data that was not overwritten that may reside
14   deleted data.
15              THE COURT:  Okay.
16              MR. KASS:  And they have spent a lot of time, a lot
17   of money, and that is completed.
18              THE COURT:  Okay.
19              MR. KASS:  Now --
20              THE COURT:  So hold on.  Let me stop you for a
21   second.
22              MR. KASS:  Uh-huh.
23              THE COURT:  Because I remember there was an issue
24   about, you know, who could have physical access to devices and
25   all that.  We put a protocol in place for that; is that right?
```

```
 1                MR. KASS:  Your Honor, yes, there is a protocol.

 2                THE COURT:  Okay.

 3                MR. KASS:  And it's docket entry 117.

 4                THE COURT:  Okay.

 5                MR. KASS:  And essentially under that, that

 6     protocol, AlixPartners has possession of exact images of those

 7     devices.  They do not have the physical devices.

 8                THE COURT:  Okay.

 9                MR. KASS:  And the way the protocol was set up is

10     that AlixPartners could give us a reporting as to what was --

11     the amount of data that was deleted, when it was deleted, but

12     they couldn't actually provide us with any documents that they

13     recovered without first sending it to plaintiffs for a

14     privilege review.

15                THE COURT:  Okay.

16                MR. KASS:  So --

17                THE COURT:  And let me -- so now this is refreshing

18     my memory, right?  Because I wanted to make sure they had a

19     chance to do a privilege review, because there was at least

20     some suggestion that there may have been communications with

21     counsel.

22                UNIDENTIFIED SPEAKER:  Your Honor --

23                THE COURT:  Yeah, hold on a second.

24                So, Mr. Kass, but explain to me at base what's the

25     relevance?  What is it you're looking for, and what value is
```

1    it going to bring to the claims and defenses in this case?

2    That's where I'm just not remembering.

3              MR. KASS:  Sure.

4              Your Honor, we're looking for Bitcoin or Bitcoin

5    wallets.

6              THE COURT:  Okay.

7              MR. KASS:  And because Bitcoins are an electronic

8    currency that are stored, the private keys would be stored on

9    those devices.  So we're really trying to find out did those

10   Bitcoin exist, and if so, what happened to them.  And the only

11   way to do that is to go through Dave's electronic devices,

12   specifically the data that we could be -- could recover from

13   the data that was deleted.

14             THE COURT:  Okay.  And -- all right.  Let me turn to

15   Mr. Freedman, then, and have him respond.

16             MR. FREEDMAN:  Your Honor, just to take a step back,

17   this is the data that was on devices that had sensitive

18   material on it.  There was a dispute on this early on.

19             THE COURT:  Right.

20             MR. FREEDMAN:  And the Court struck the compromise

21   by taking the data, giving it to AlixPartners and entering a

22   protective order that we had to review anything before it came

23   over.

24             THE COURT:  Uh-huh.

25             MR. FREEDMAN:  Frankly, I'm not sure exactly what

1    Mr. Kass is asking for at the moment, but the -- you know, if

2    this data's that important, we first received the initial

3    production of it on November 27th, and unfortunately it took a

4    little longer than I would have hoped to review it, but as

5    soon as it was, you know, raised to our attention that this

6    was extremely important to them, we -- I stopped two lawyers,

7    and we did it full-time, and I expect that if this is that

8    important to them going forward, we will dedicate similar

9    resources to getting it done as they produce it.

10            So I'm not sure what the request is, so I'm not sure

11    what to oppose or not oppose, but --

12            THE COURT:  Right.

13            Well, that was going to be my next question.  Just

14    sort of -- Mr. Kass, I guess -- I appreciate that this may be

15    an issue going forward and that you're anticipating that there

16    may be -- you're concerned about the timeliness of what you're

17    going to get responses to requests in this venue, but as

18    Mr. Freedman points out, at least for now, there seems to be a

19    back and forth, the parties seem to be working together.  I

20    don't have a sense of exactly what it is you're looking --

21    what it is that you're going to be asking them for, and,

22    again, whether they'll oppose it or not.  So I don't know if

23    there's any -- if you're specifically asking me to order

24    anything today or what.

25            MR. KASS:  So, Your Honor, yes, I would like to

```
 1   address that particular point.

 2           THE COURT:  Yeah, sure.

 3           MR. KASS:  So, first of all, I appreciate that

 4   opposing counsel has stated that they will make this a

 5   priority and work with us.

 6           THE COURT:  Uh-huh.

 7           MR. KASS:  But I believe sometimes, you know, past

 8   experience sometimes let you know what's going to happen in

 9   the future.

10           THE COURT:  Uh-huh.

11           MR. KASS:  When we sent this to plaintiffs, that

12   very same day we asked them, please make it a priority.

13           THE COURT:  Right.

14           MR. KASS:  We followed up on three separate

15   occasions.  I never heard any response.  I didn't hear, we're

16   working on it, we'll give it to you on a rolling production.

17   It was this radio silence until there was going to be a

18   hearing today, all of a sudden they jumped to review those

19   documents, and they sent us an e-mail a minute before this

20   hearing saying we're going to receive those documents.

21           THE COURT:  Okay.

22           MR. KASS:  Now, as for the ask, Your Honor, our ask

23   is that if we could just simply get access to those files.

24   Now, I understand plaintiffs have raised sensitive -- concerns

25   about sensitive documents.  My understanding, those are
```

1   sensitive documents that Ira Kleiman put on those devices.  We

2   are not asking for those documents.  We are asking for Dave's

3   data, and that was deleted.

4           And, Your Honor --

5           THE COURT:  So hold on.  So let me go back a step.

6           So the documents that you're going to be requesting

7   be released from AlixPartners --

8           MR. KASS:  Uh-huh, correct.

9           THE COURT:  -- are only going to be documents that

10  are recovered by AlixPartners from a time when these -- when

11  these devices were not in Ira Kleiman's control?

12          MR. KASS:  Your Honor, that's what we would like,

13  but I do want to point out a technical limitation is that it

14  would definitely be deleted data.  Unfortunately, I was --

15  I've been told that once data is deleted and then recovered,

16  you can't always say with certainty what time period it came

17  from.  So unless plaintiffs are stating that Ira put his own

18  important stuff on there and then deleted it also, but either

19  way -- now, Your Honor, but I do want to address this

20  privilege issue is that there are other methods that we could

21  use to do our best to ensure that we don't get privilege

22  documents.

23          THE COURT:  Okay.

24          MR. KASS:  Such as we could run a privilege term.

25          So, for example, we could tell AlixPartners, and

```
 1    plaintiffs could definitely have input in this, first run a

 2    search for anywhere that says lawyer, attorney, privileged,

 3    and those documents would go directly it plaintiffs, while all

 4    the other documents that don't appear to have any high

 5    probability of privilege will go directly to us.  There is a

 6    clawback order agreement in this case.  If we stumble across

 7    anything that seems privilege, Your Honor, we're going to

 8    immediately notify plaintiffs, and we will not view it.

 9            So I really think just the posture of the case, we

10    are so close to the end of discovery, counsel for both sides

11    are busy.  This modified version would really enable us to

12    solve this in a quicker manner without continued court

13    intervention.

14            THE COURT:  Okay.  So now I understand the ask.  So

15    the ask is to modify the protective order --

16            MR. KASS:  Yes.

17            THE COURT:  -- to change the procedure in place.

18            What I'm going to do is this:  I want to give you

19    two a chance to meet and confer, and I'll be happy to schedule

20    another phonecall even later this week after you two have a

21    chance to talk it through.  Mr. Kass, you make some reasonable

22    suggestions.  Candidly, as I sit here I don't even remember

23    what the privilege issues were and how extreme they may be,

24    but I want to let you have a chance to have a dialogue about

25    that.  I find that, you know, the parties if this case have
```

 1   been pretty good about negotiating and resolving these kinds
 2   of issues.
 3           So I'm not going to rule on that today.  I'll let
 4   you two meet and confer on it, and if either one of you
 5   believes that you're not able to resolve it in a reasonable
 6   time, I'm working the rest of this week, I'm working all the
 7   next week, I'm working the week after that.  So I'll be happy
 8   to schedule some time for all of us to get together and have a
 9   quick call and resolve that issue.  Okay?  But I want you to
10   work -- to at least meet and confer on it first.
11           All right.  Let's go back, then, to document 339.
12   So, okay, so the first issue at least as to the extent of
13   what's contained in here is now resolved.
14           So the next issue is request for production
15   number 20 relating to real estate transactions by Mr. Kleiman.
16           So let me turn back to Mr. Kass.  Why is this
17   relevant to the claims and defenses in the case?
18           MR. KASS:  Sure.
19           Again, Your Honor, one of the primary complaints in
20   the complaint is that Dr. Wright allegedly stole billions of
21   Dave Kleiman's Bitcoin.
22           THE COURT:  Uh-huh.
23           MR. KASS:  Now, our position is that that theft did
24   not occur, but to the extent any Bitcoin are missing, we're
25   trying to figure out what happened to them.  Now, we've done

1   research of this, and as far as we can tell, Ira Kleiman has

2   never been extremely wealthy, and I believe plaintiffs have

3   mentioned on a few points in time throughout this litigation

4   that their client is not wealthy.

5          THE COURT:  Uh-huh.

6          MR. KASS:  Now, shortly, just a few weeks after

7   being told by Dr. Wright that Dave Kleiman may have some

8   Bitcoin wallets stored on his devices, Ira Kleiman suddenly

9   has $400,000 in cash to purchase a home.  So we're really just

10  trying to figure out were any of these Bitcoins recovered by

11  Ira Kleiman and then used.

12         Now, plaintiffs point out in their memo that there

13  is actually no evidence that Ira has found these Bitcoin --

14         THE COURT:  Uh-huh.

15         MR. KASS:  -- and that he has used them.  Well, Your

16  Honor, that's because they've objected to this request.  If

17  they do produce those documents, we might very well have that

18  evidence.

19         THE COURT:  Okay.  Let me turn to Mr. Freedman.

20         So first of all, Mr. Freedman, do you agree that

21  the -- that it's a -- whether or not Mr. -- whether or not Ira

22  Kleiman was able to, I'll use the word "liquidate", that may

23  not be the right word for it, but monetize Bitcoin that had

24  previously existed is a relevant question in this case, or is

25  that not relevant to the issues in the case?

```
 1              MR. FREEDMAN:  Your Honor, I think it depends on the
 2    outcome of Judge Bloom's upholding or striking down this
 3    Court's sanctions order.  In the exist -- in the universe
 4    where it's upheld, it's totally irrelevant.  Dr. Wright's
 5    testified that those Bitcoin have never moved.  In the
 6    universe where it gets struck down, I suppose there's some
 7    relevance to -- obviously we object to the characterization,
 8    there's no evidence to back it up, that Ira somehow took the
 9    Bitcoin, liquidated it, bought a house, stored the rest of it,
10    never used it ever again, and then sued Dr. Wright for all the
11    Bitcoin.  I suppose there is some relevance under that
12    paradigm.
13              My statement, though, would be that the request
14    should therefore be targeted at Bitcoin-related requests.  You
15    know, public addresses, Bitcoin and things like that, things
16    that they have already -- that defendant has already had an
17    opportunity to review and search.
18              The financial documents of, you know, how a home was
19    purchased is I think irrelevant to this issue.  There's a much
20    narrower way to get to this.
21              THE COURT:  All right.  Let me turn back to
22    Mr. Kass.  Is Ira Kleiman going to be deposed again, or is he
23    done?
24              MR. KASS:  I -- he's going to be deposed again for
25    sure, yes.
```

```
 1              THE COURT:  Okay.  I think this is something that is
 2    better addressed either through interrogatory or by
 3    questioning Ira Kleiman at his deposition.  Just ask him where
 4    he got the money to buy the house from, and depending on the
 5    answers to that, if you need . . . you know, I just --
 6              MR. KASS:  Your Honor, if I may?
 7              THE COURT:  Yeah, sure.
 8              MR. KASS:  In his prior deposition I believe we
 9    actually brought this issue up.
10              THE COURT:  Oh, okay.
11              MR. KASS:  And I think he was either instructed not
12    to answer, or we didn't get anywhere, which is why we asked
13    this document request.
14              THE COURT:  Okay.
15              MR. FREEDMAN:  Your Honor, because the first
16    deposition was a very limited categories.  It was a
17    preliminary deposition.
18              THE COURT:  And I'm not criticizing anybody for
19    having objected, I'm just trying to understand the state of
20    the world.  So let me just think this through myself.
21              I mean, I do think it's relevant.  I mean, my order,
22    even if affirmed by Judge Bloom, was simply that Dr. -- that
23    Mr. Kleiman gets half of whatever Dr. Wright had.  I made no
24    finding as to what he had, if he has anything.  I don't know.
25    That's still an open issue in this case.  Now, maybe that's an
```

1    issue that goes to damages, but it would seem to me in

2    mitigation of damages, presumably Dr. Wright could introduce

3    evidence that some of the Bitcoin that was mined during the

4    relevant period was actually kept by Dave Kleiman and was

5    spent by Ira Kleiman, and that would be in mitigation of the

6    damages that Mr. Kleiman is claiming.  So I think it's

7    relevant, I'm just struggling with whether this is the most

8    efficient way to get on the question, right?

9            I agree with Mr. Freedman, the baseline question

10   that Dr. Wright's trying to discern, and which -- and what it

11   is that I find to be relevant, is whether Ira Kleiman had any

12   Bitcoin and has spent any Bitcoin that preexisted Dave

13   Kleiman's death.  I think, you know, saying tell us how you

14   bought your house --

15           MR. FREEDMAN:  Your Honor, if it helps, I'm happy to

16   represent that my client has told me that he did not receive

17   Bitcoin and liquidate it, and that this was just savings

18   money, but you can get the details of that at deposition.  We

19   will not object to it.

20           THE COURT:  Well, here's what I'll allow them to do

21   if they want to in advance of the deposition.  If you want to

22   tender a specific interrogatory or very, very limited number

23   of interrogatories addressed to this specifics issue to Ira

24   Kleiman, and I'll order that it be responded to before the

25   deposition, and I won't count that against whatever number --

```
1    I forget however many we've run up against so far in terms of
2    interrogatories in the case.  So if you want to get that
3    answer that Mr. Freedman just gave in a format that would be
4    admissible at a trial if you needed it, tender an
5    interrogatory, get your answer, and then once you have your
6    answer, if you want to follow up with it at the deposition, we
7    can address that.
8             MR. KASS:  Your Honor, I understand.  I just do want
9    to mention one thing that -- and I believe that is definitely
10   a potential solution, that sometimes having the actual source
11   documents are helpful.  I know that opposing counsel said --
12            THE COURT:  Let's see what the answer is.  If the
13   answer is, no, I didn't do it --
14            MR. KASS:  Okay.
15            THE COURT:  -- then there are -- then presuming the
16   answer is there are no source documents.
17            MR. KASS:  Well, Your Honor, the --
18            THE COURT:  And I think that's what I just heard
19   from Mr. Freedman, that the response to this request for
20   production if I let it go forward is going to be we don't --
21   there are documents how he bought the house, but none of them
22   show any Bitcoin.
23            MR. KASS:  Right.
24            And so, Your Honor, here's my issue is that
25   statements have been made on behalf of Ira before, in
```

 1    particular to receiving certain mailings related to W&K.

 2                THE COURT:  Uh-huh.

 3                MR. KASS:  And it turns out that was not the case.

 4    So we really in this instance would prefer just to have the

 5    source documents to make sure there's no misunderstandings and

 6    that we have what we need to have, but I understand.

 7                THE COURT:  And I appreciate your request.  I'll

 8    overrule that request.  I'll do it the way that I said.

 9                MR. KASS:  Okay.

10                THE COURT:  All right.  As to the next one, it's

11    request for production number 3, Dr. Wright's request.  So

12    this is defendant's objections to Dr. Wright's request for

13    communications among all these people, right?  So hold on.  I

14    got to turn my head around at who's objecting.  So you're

15    objecting to their request.

16                Okay.  I guess I start with this question,

17    Mr. Freedman.  Are there any?  Are there any documents

18    reflecting communication?  Because under Rule 34(c) and under

19    my order, that's always the first question that you're

20    supposed to put in your objection, either you have responsive

21    documents or you don't.

22                So do you have any responsive documents?

23                MR. FREEDMAN:  Your Honor, not that I'm aware of,

24    but there's a lot of documents, and I don't want to make a

25    representation that there aren't any.  There's a reason that

1    the parties have used keywords to find these documents.

2              THE COURT:  Okay.

3              MR. FREEDMAN:  But I think that if the Court lets,

4    this request is just completely irrelevant.  I mean, Craig --

5    Dr. Wright's interpersonal issues --

6              THE COURT:  Hold on.  Let me come back to you in a

7    second.  I just wanted to ask you if -- and I understand, you

8    know, sometimes parties say, we don't know if there are any,

9    because the simple act of figuring it out is so burdensome and

10   so expensive that we didn't undertake it.  I assumed that was

11   what you would say, but I wanted to at least give you a chance

12   to respond.

13             Let me turn back to Mr. Kass or Ms. Markoe.  I

14   understand the relevance of this is it has to do with an

15   alleged hacking of Dr. Wright's electronic devices.  What's

16   that got to do with this lawsuit?

17             MR. KASS:  Okay.  Your Honor, many times an issue

18   has come up in this case as to whether or not Dr. Wright has

19   been hacked.  That's going to be an issue as for the

20   authentication of many documents that likely will be used at

21   trial.  And I do want to just take this moment to point out

22   that while plaintiffs have brought up many times that there's

23   absolutely no evidence of a hack, this hack is public

24   knowledge.  There are two articles online that anybody could

25   view from Wired and Gizmodo that contain private e-mails from

1   Dr. Wright with former counsel, and those e-mails specifically

2   state that -- and in the -- the articles specifically state

3   they received these documents from a hacker.  So if there is

4   this -- if there is this hacker that is providing additional

5   documents or additional information to plaintiffs, presumably

6   they relate to the claims and defenses in this case.

7          THE COURT:  Well, but your theory as it pertains to

8   this case, if I understand it, and as I recall Dr. Wright's

9   testimony, was not that -- not that his account was hacked and

10  things were taken.

11         MR. KASS:  Uh-huh.

12         THE COURT:  It was that his account was hacked, and

13  documents were modified by other people and then left on his

14  accounts.

15         MR. KASS:  Right.

16         Your Honor, once somebody gains access to your

17  computer, they could take stuff and they could also modify it.

18  So the existence of one actually makes the other one more

19  likely.

20         THE COURT:  Okay.  And what are the -- who are these

21  A through O?  Why -- what is there relevance?  These are just

22  people Dr. Wright suspects may be the hacker?

23         MR. KASS:  Well, A through H are former employees or

24  people who worked at Craig's companies and many of who had

25  access to internal documents and internal databases.  So this

 1   wouldn't be so much an external hack as more as internal hack,

 2   and for --

 3               THE COURT:  Uh-huh.  Okay.  So the gist of your --

 4   okay.  That's A through H.  And then I through O?

 5               MR. KASS:  Are where Dr. Wright may not be able to

 6   finger a particular person, but he believes it's most likely

 7   that if the hack did occur, it would be an employee of one of

 8   those companies that he was associated with, and those -- so

 9   the rest of those companies are companies that Dr. Wright was

10   associated with in Australia.

11               THE COURT:  Okay.  And so what you're asking for

12   are -- in this case is communications between all of these

13   people and Mr. Kleiman?

14               MR. KASS:  Yes, with --

15               THE COURT:  Okay.  The idea I guess being to see

16   whether the plaintiffs in this case have gotten and

17   documentation from these people that would have been hacked

18   from Dr. Wright's accounts?

19               MR. KASS:  Yes, and --

20               THE COURT:  Or whether the plaintiffs in this case

21   have been in contact with these people about them accessing

22   Dr. Wright's accounts?

23               MR. KASS:  That's part of it.  And whether they've

24   been providing plaintiffs secretly with information that

25   relates and pertains to this complaint.  I believe presumably

```
 1    if these contacts did occur, it's going to be related to this
 2    complaint and not just some extraneous matter.
 3              THE COURT:  All right.  Mr. Freedman?
 4              MR. FREEDMAN:  One thing, Your Honor, I want to
 5    correct.  As far as I'm aware, there are no communications
 6    with the individuals listed on this list.  However, on
 7    reviewing the list, it does mention former companies, and we
 8    have had communications with employees of these companies, for
 9    example, Jamie Wilson was one such employee who we deposed and
10    spoke to.
11              Your Honor, I think the issue here is that this is
12    the definition of a fishing expedition.  Imagine if every
13    single lawsuit started off with:  Here are a list of people
14    who really don't like me; I want to know every communication
15    you ever had with them.  I think that, you know, maybe, maybe
16    it would be relevant to get these documents up to the date of
17    the filing of the complaint.  The other problem is they're
18    seeking documents all the way up until the present, and
19    because this Court has previously base -- limited all
20    discovery until I think it was 30 days after the filing of the
21    complaint for both sides, none of those documents have been
22    imaged, none of the, like, communications that have been
23    ongoing between counsel and other potential witnesses, or
24    Mr. Kleiman and other potential witnesses, they haven't been
25    collected.
```

```
 1              And discovery's closing.  To now collect those

 2    documents, process those documents, run search terms and

 3    review them, all for some, I mean, irrelevant issue, because

 4    maybe plaintiffs had communications that maybe talked about a

 5    hack or other bad things about Dr. Wright seems completely

 6    disproportionate to the needs of the case and frankly

 7    irrelevant.

 8              THE COURT:  All right.  Mr. Kass, I'll give you the

 9    last word.

10              MR. KASS:  Well, Your Honor, I believe opposing

11    counsel said there (inaudible) if their communications would

12    be very minimal, and now I'm hearing that there's these

13    extensive communications that are going to be very

14    burdensome --

15              MR. FREEDMAN:  That's not what I said.

16              MR. KASS:  -- to image.

17              And, Your Honor, this is not just any random people.

18    These are people who are believed to have been involved in the

19    hack.  And to the extent there are -- and Jamie Wilson is a

20    very good example.  If they were having communications with

21    Jamie Wilson relating to the facts in this complaint, which

22    they were, I believe we're entitled to know that in discovery.

23    Plaintiffs have said they haven't used any information that

24    they received to date in affidavit or in some sort of

25    declaration or in a motion, but if they are planning on using
```

 1  it at trial, discovery is the time that we could find that out

 2  and not be ambushed at last minute.

 3         THE COURT:  Well, but let me break that apart.

 4         I mean, this is not a criminal case.  They don't

 5  have an obligation to give you exculpatory evidence that they

 6  obtain during their investigation.  They don't have an

 7  obligation to tell you where their investigation comes from.

 8  All they have an obligation to tell you is who they're going

 9  to call as witnesses at the trial in this case.  So I -- you

10  know, how they -- who they went and talked to and how they put

11  their case together, even if they went and found people who

12  hated Dr. Wright, and -- you know, every whistleblower case

13  I've ever seen starts with somebody who hates the other party

14  and steals a bunch of documents and gives them to them.  So

15  that's not unusual in these cases, and there's nothing, you

16  know, legally wrong with that.

17         So, look, the issue I have to resolve is whether

18  communications between Ira Kleiman and the people listed in

19  request for production number 3 is relevant to an issue in

20  this lawsuit.  The theory of relevance that's been suggested

21  is that it might lead to being able to prove that some of the

22  documents that the plaintiff wants to use in this case are not

23  authentic, that they were hacked and modified.  I think that's

24  such -- whether that's true or not, that's such an attenuated

25  theory of relevance, that I do find it to be disproportionate

```
 1    to require the production, and I'm not going to do that.  I'll
 2    sustain the objection to request for production number 3.
 3              Let's turn to 4, 5, 6, 7 and 8.  This is, again,
 4    communications with third parties.
 5              Mr. Kass, what's the -- is this the same thing, or
 6    is this --
 7              MR. KASS:  It's the same, Your Honor.
 8              THE COURT:  All right.  Well, if it's the same
 9    theory, same ruling as to 4, 5, 6, 7 and 8.
10              Okay.  Ten and 11 has to do with -- that looks
11    like -- let me just turn to Mr. Freedman.  As I read your
12    response or as I understood your response, you have produced
13    all documents that were generated by running the agreed search
14    terms; is that correct?  All nonprivilege documents that were
15    generated from the agreed-upon search terms.
16              MR. FREEDMAN:  I believe so, Your Honor.  And they
17    gave us an additional subset of search terms, and we agreed to
18    run those, too.  That review hasn't been completed, but it's
19    been agreed to do.
20              THE COURT:  Okay.  And Mr. Kass, I think in your
21    pleading you said you just -- it wasn't clear from the meet
22    and confer.  Is it now clear that you've gotten everything
23    that the search terms spit out that wasn't privileged?
24              MR. KASS:  Almost, Your Honor.
25              THE COURT:  Okay.
```

```
 1              MR. KASS:  I just want to clarify whether they're
 2    only agreeing to produce things that are responsive to search
 3    terms, or if they happen to know of a document that is
 4    responsive to this, are they going to produce it also.
 5    Meaning is there -- are they only limiting their response to
 6    those search terms; so essentially is it an objection or not,
 7    and it's just not clear from the response.
 8              THE COURT:  Okay.  Mr. Freedman?
 9              You know, I will say I think the agreement and the
10    understanding we've always operated on in this case is the
11    whole reason we agreed to search terms was the results of the
12    search terms searched set the outer boundary of the documents
13    that would have to be produced.  So I haven't considered the
14    situation where I happen to know of a responsive document that
15    doesn't come out of the search terms, but that hasn't been the
16    understanding we've had all along.  But let me just turn to
17    Mr. Freedman and see what your operating principles have been.
18              MR. FREEDMAN:  Your Honor, that was what our meet
19    and confer essentially said, which was we were always
20    operating under the principle that the search terms define the
21    universe.  Now, if we were specifically aware of a document
22    and their search terms didn't cover it, I do think we probably
23    would have an obligation to produce it.  I don't --
24              Do you have number 11 in front of you?  I remember
25    we didn't object to 10, but we did 11.
```

```
 1                 THE COURT:  I have 11 here, hold on.
 2                 Eleven is all documents relating to Bitcoin which
 3   Dave Kleiman had any ownership interest or control that were
 4   held on any Bitcoin exchange.  And the response is, quote:
 5   Plaintiffs have already produced any responsive nonprivileged
 6   documents related to this request by applying the negotiated
 7   search terms to documents and communications in their
 8   possession, closed quote.  Respectfully submitted, you at a
 9   firm you don't work at anymore.
10                 MR. BRENNER:  We do give him coffee when he comes,
11   Your Honor.
12                 THE COURT:  All right.  I hope you charge him for
13   it.
14                 MR. FREEDMAN:  Your Honor, I'm saying I'm not sure
15   it's really relevant, but I don't think we'll object if we
16   are -- I'm not sure how to test this, but if we -- if I
17   consciously think of a document that I know exists that hasn't
18   been hit on any of their search terms, you know, I guess we'll
19   turn it over.  No such document -- I just don't want to take
20   an obligation that -- you know, there's so many documents.
21   That's why I'm hesitating to take -- to agree to this is, you
22   know, I'm not going to tank a document, but I'm also worried
23   that there are literally millions of documents in the case.
24   That's where I'm -- that's where the tension is.
25                 THE COURT:  Okay.  I understand.
```

```
 1              My ruling would be, and I think I've held to this
 2    for both sides, the parties are only required to produce
 3    documents that are generated by the search terms.  That was
 4    the whole purpose of agreeing to the search terms.  Now, as
 5    Mr. Freedman points out, as the ethical and professional
 6    lawyers that you are, if you stumble upon another document
 7    that you believe in fairness ought to be provided to the other
 8    side that wasn't somehow spit out by the search terms, I'll
 9    leave it to you how you deal with that, but I'm not requiring
10    production of anything other than what's spit out by the
11    search terms.
12              Okay.  So I think 10 and 11, we've now clarified
13    that.
14              Okay.  Now, let me turn to the issues related to
15    Dr. Wright's wife.  Mr. Freedman, what do you want me to do?
16              MR. FREEDMAN:  Uh --
17              THE COURT:  I guess that's my question.  What are
18    you asking me to do?
19              MR. FREEDMAN:  Uh, Your Honor, we're asking for us
20    to have an opportunity to depose Ms. Watts here in the United
21    States when she comes for trial.  I mean, they are literally
22    putting forward a witness, shielding them in a foreign
23    country, racking up massive amounts of legal bills, forcing
24    us -- trying to get us to pay for them, and keeping this
25    witness out until the day before trial, when she will appear
```

```
 1   in the United States and testify.  It seems completely unfair,

 2   and it shouldn't be permitted.  If they're going to bring a

 3   witness affirmatively -- if they weren't going to bring

 4   Ms. Watts, then it was on us to depose her and see whether or

 5   not we wanted to present her testimony.  If they are

 6   affirmatively going to offer Ms. Watts as a witness at trial,

 7   which they have told us they're going to do, they cannot hide

 8   her in a foreign country, fight us with lawyers, make us pay

 9   $165,000 to depose her, and then -- and not even allow us the

10   full scope of examination and then bring her to trial.

11          So we'd ask that the Court either order them to

12   produce her so that we can depose her or bar her from

13   testifying at trial if they won't produce her.

14          THE COURT:  So by what authority can they be

15   compelled to produce a nonparty witness?  Ms. Watts is not a

16   party to this lawsuit.  She's an independent third party

17   presumably represented by her own counsel.  By what authority

18   can I compel Dr. Wright to produce her?

19          MR. FREEDMAN:  I mean, she's -- I mean, first of

20   all, the realties have to be looked at.  It's the defendant's

21   wife, and they clearly have enough control over her to bring

22   her for trial.  And I guess the accommodation would just be

23   that perhaps we have to file a motion in front of Judge Bloom

24   to extend the discovery period solely as to Ms. Watts so that

25   when she steps foot on U.S. soil she can be deposed, and we're
```

```
 1    happy to do it, you know, the week before trial.
 2             THE COURT:  I think that's -- I think that's all you
 3    can do.  I don't think this falls within my authority at this
 4    time.  I think this is a Judge Bloom issue, because I think
 5    that the Hobson's choice that I'm going to guess -- let me put
 6    it this way.  If I were the judge presiding at the trial, the
 7    Hobson's choice that I would put Dr. Wright in is if Ms. Watts
 8    shows up and wants to testify at trial and has been disclosed
 9    as a witness and hasn't been deposed, we're either going to
10    recess the trial and tell the jury we're recessing the trial
11    so she can be deposed, or she's going to be excluded as a
12    witness.  But I think that's a Judge Bloom decision, not a me
13    decision, so . . .
14             MR. KASS:  Your Honor, if I may?
15             THE COURT:  Yeah.
16             MR. KASS:  Okay.  Your Honor, there's one very
17    crucial point of informa --
18             THE COURT:  Uh-huh.
19             MR. KASS:  -- piece of information that plaintiffs
20    have not provided.  As Your Honor knows, they asked this Court
21    for letters of rogatory.  This Court issued those letters of
22    rogatory.
23             THE COURT:  Uh-huh.
24             MR. KASS:  Dr. Wright did not oppose that.
25             THE COURT:  Uh-huh.
```

```
 1              MR. KASS:  Four months later they went to the court

 2    in England, they opened a procedure over there that's

 3    happening in the British courts right now.

 4              THE COURT:  Uh-huh.

 5              MR. KASS:  Those courts have granted the request for

 6    a deposition.  Mrs. Watts' deposition is currently scheduled

 7    to take place on January 16th, which is the date after

 8    Dr. Wright's deposition in London.  Counsel for plaintiffs

 9    will be there.  Ms. Watts has already engaged her own counsel

10    to prepare her for that deposition.  Creating this other

11    procedure at the last minute simply is not fair to Dr. Wright.

12    It --

13              THE COURT:  Well, again, I'm not saying -- look,

14    that may be so.  That's why this is a best decision left to

15    Judge Bloom.  Because really, to me this gets to be a question

16    of admissibility at trial.  It's not a discovery question,

17    it's an admissibility at trial question and a remedy at trial

18    question, not a discovery question, which is why, if --

19    Mr. Kass, I accept your representation, and if, in fact, the

20    issue is presented to Judge Bloom and it's -- the issue is,

21    look, they had a fair chance to depose her and they just

22    didn't follow through on it, that may influence her decision.

23    So I'm going to stay out of this one and let you two sort that

24    out with Judge Bloom at the time of trial.

25              MR. FREEDMAN:  Your Honor, just because I know that
```

 1    this transcript will eventually be cited to Judge Bloom, so

 2    there's a complete record here, that is not a completely

 3    accurate representation of the facts.

 4         There was an ex parte order issued by the English

 5    court requiring Ms. Watts to appear for a deposition, which

 6    she has retained lawyers that are threatening to move the

 7    Court to set aside the order if we do not agree to pay these

 8    exorbitant fees and limit the scope of the deposition.  So

 9    that's the full record.

10         THE COURT:  You'll litigate that in the UK, or

11    what's left of it by that point in time, I don't know.

12         Okay.  Let's turn, then -- again, I think this is

13    one on page 8 of docket entry 339.  I don't know that anyone's

14    asking me to do anything.  It looks like plaintiffs are just

15    wanting to reserve their right to object later, but clarify

16    for that, Mr. Freedman.  Are you asking me to do anything

17    today, or are you just putting down your marker?

18         MR. FREEDMAN:  No, Your Honor, just putting down the

19    marker.

20         I think the Court had mentioned at previous hearings

21    that it was specifically making time to handle the IP things.

22    We just wanted to update the Court on essentially what our

23    outlook was on the IP discovery.

24         THE COURT:  Okay.

25         MS. MARKOE:  And, Your Honor, we actually don't want

1    to kick this can down the road.

2             THE COURT:  Okay.

3             MS. MARKOE:  Your Honor, we have answered the

4    interrogatories.  We have made objections.  To kick this can

5    down the road 'til two days before the discovery deadline is

6    unreasonable and unfair and creating an unnecessary issue.

7             THE COURT:  Okay.

8             MS. MARKOE:  What they have done is mischaracterize,

9    in my mind, what they had asked for and what we have done.

10            THE COURT:  All right.

11            MS. MARKOE:  With regard to interrogatory number 12,

12   which is the only interrogatory that addresses intellectual

13   property developed by Dr. Wright related to intellectual

14   property -- Bitcoin-related intellectual property developed by

15   Dr. Wright prior to Dave Kleiman's death, we answered that

16   interrogatory to the best of our ability in full.

17            THE COURT:  Okay.

18            MS. MARKOE:  With regard to patents there's a few

19   things to know.  First of all, the patents, just because

20   plaintiffs say and title them Craig Wright patents doesn't

21   actually make that so.  Craig Wright is listed as an inventor,

22   not -- often only one of several inventors on those patents.

23   Dr. Wright does not own those patents.  The patents listed on

24   exhibit A and B are -- there's a lot of overlap.  And nChain,

25   which is a foreign nonparty entity, owns those patents, except

1    for one family of patents, which I will get to in a moment.

2              But in addition to that, all of those patents were

3    filed three years after Dave Kleiman's death.  So the idea of

4    their pertinence is highly suspect, and a lot of that is

5    also -- and a lot of the materials are also publicly

6    available.

7              We did our best to respond to interrogatory number 1

8    by hiring independent -- an independent patent search firm to

9    search for some additional patents.  They have asked for

10   detailed information, some of which may be on the filed and

11   published patents, for over 500 patents.  That actually puts

12   their interrogatory work with in the thousands, if you really

13   think about it.

14             And so, you know, this is not a can that we can kick

15   down the road, and we want to make sure that these concerns

16   are addressed and that everyone understands what the

17   obligations are.

18             THE COURT:  All right.  So just let me go back a

19   step, because I don't have the interrogatories in front of me.

20   I'm trying to work off memory.

21             MS. MARKOE:  Oh, sure.

22             THE COURT:  That's okay.

23             So I recall that the plaintiffs submitted discovery

24   requests seeking lots of information relating to patents and

25   other things, intellectual property, that they believe

 1  belonged to Dr. Wright.  You say you -- so you said you've

 2  responded, you filed some objections, but you did provide some

 3  responses.  So what is the issue?

 4          Oh, thank you.  That's why I keep my trustee law

 5  clerk around.

 6          Okay.  So, but what is it, I guess Mr. -- let me go

 7  back to Mr. Freedman, because what is it you're reserving?

 8  Like what is the issue that hasn't arisen that you think might

 9  arise?

10      (Audio feedback sound.)

11          MR. FREEDMAN:  Let me just turn that off.

12          THE COURT:  Okay.  You're firing Mr. Roche on the

13  spot?

14          Yeah, why don't we kill the phone, Ms. Kenny.

15          Okay.  It wasn't the phone.  So we lost Mr. Roche

16  for no good reason.  Something seems to have worked.  Okay.

17  We'll go with that.

18          Okay.  But I guess what's the issue here that has to

19  be resolved?  If they responded, they filed objections, are

20  you seeking to have me rule on their objections?  What is the

21  issue?

22          MR. FREEDMAN:  No, Your Honor.  We're not asking for

23  anything at the current time.

24          THE COURT:  Okay.  But -- all right.  But what -- so

25  Ms. Markoe, what is your concern?

```
 1              MS. MARKOE:  My concern is they're reserving their
 2    right to readdress this issue after Dr. Wright's deposition,
 3    when we've answered.  We're not sure what they're still
 4    objecting to, what their issues are.  And then this gets
 5    kicked down the line, and discovery is closing two days after
 6    his deposition, when we'll all be in London, and I'm just, you
 7    know --
 8              THE COURT:  I understand.  Well, look --
 9              MS. MARKOE:  The point is --
10              THE COURT:  Just because they say they're going to
11    reserve their right to say something doesn't mean I'm going to
12    listen to them, you know.
13              MS. MARKOE:  Fair enough.
14              THE COURT:  You know, you don't have to reserve it.
15    If there's something to be brought up, you can bring it up,
16    but, you know, I don't think anyone's suggesting waiver.  I
17    don't think under the -- maybe there's waiver under the
18    interrogatory rules if you don't file your motion to compel
19    within, what is it, 30 days?  I can never remember.  Right,
20    there's something having to do with the discovery rules if you
21    haven't object -- if there's an objection, and you don't
22    object to the objection within some specified period of
23    time --
24              MS. MARKOE:  Yes.
25              THE COURT:  -- I think it's 30 days -- then you
```

 1   waive it.  But I'll address that when I address that, but if

 2   it -- I only can address what's in front of me.

 3          So at this point Mr. Freedman's telling me there's

 4   nothing in front of me, and I'm telling you that he may never

 5   get the chance to argue it.  We'll see where we go.  We'll get

 6   there.

 7          All right.  Let me turn, then, to plaintiff's

 8   request for production number 5.

 9          MR. FREEDMAN:  Your Honor, can I come up here?

10   Because I think my microphone is not --

11          THE COURT:  Oh, it's your microphone.  All right.

12   That's okay.

13          All right.  So request for productions 13, 14 and

14   31.  This is request for documentation regarding Dennis

15   Mayaka.  Okay.  So Mr. Freedman, what's the theory of

16   relevance here?

17          MR. FREEDMAN:  Sure, Your Honor.  It's actually

18   the -- there's three interrog -- it's three requests for

19   production that deal with -- is this on?  Okay, sorry.  Three

20   requests for production that deal with three separate

21   individuals.  Abacus -- well, it is all centered on Denis

22   Mayaka --

23          THE COURT:  Uh-huh.

24          MR. FREEDMAN:  -- who was formerly of Abacus, and

25   then Equator Consultants.

 1           Denis Mayaka submitted a sworn declaration attaching

 2    a version of Tulip Trust II, the part of the trust that this

 3    Court has found were -- don't exist.  He also was the

 4    individual that sold Tulip Trading, LTD, to Craig --

 5           THE COURT:  Uh-huh.

 6           MR. FREEDMAN:  -- in 2014, despite its inclusion in

 7    trust documents from 2012 that Denis Mayaka's also involved

 8    in.  And so it just appears that this is an accomplice of

 9    Craig in his attempt to obfuscate the current location of the

10    Bitcoin and what he did with them.  And so we believe that

11    communications with somebody who appears so intimately

12    involved with that scheme would be relevant.

13           THE COURT:  Okay.  But you want all communications

14    about any topic?

15           MR. FREEDMAN:  Your Honor, I mean, if the Court's

16    not -- that would be our presence.  Well --

17           THE COURT:  Let me just go through it.  Thirteen

18    says all documents to, from or that mention Equator

19    Consultants; 14 is all documents to, from or that mention

20    Abacus; and 15 is all documents to, from or that mention High

21    Secure -- 14 . . . 31 is . . .

22           MS. MARKOE:  Page 22, Your Honor.

23           THE COURT:  Thank you.

24           All documents to, from or that mention Denis Mayaka.

25           I mean, if the theory of relevance is we're trying

```
 1    to figure out, I don't know what -- the having -- so let's say

 2    they're part of a scheme.  A scheme to do what?  And why is it

 3    relevant to this lawsuit, to hide the Bitcoin?

 4            MR. FREEDMAN:  Yeah, the scheme is clearly to get

 5    rid of the Bitcoin or stash the Bitcoin in a place where it

 6    can't be found or located or obfuscate its location.

 7            This individual and his companies are intimately

 8    involved with the creation of shell entities, fake entities.

 9    Tulip, you know, trusts and corporations, and I can't tell you

10    the -- every word that might appear on those documents,

11    because I haven't seen them all.

12            If the Court's not inclined to give us all

13    documents, then at least documents that mention Bitcoin, or

14    trusts, or shell companies, and Satoshi Nakamoto or some -- a

15    more narrow subset, but something that's key to the issues in

16    the case.  He clearly was involved in creating shell

17    companies, trusts and other entities to hide Bitcoin.

18            THE COURT:  Well, was Mr. -- let me ask you, was

19    Mr. Mayaka, or Abacus or Equator, were those incorporated into

20    the search terms that were already agreed to, or was this

21    something that's arisen thereafter?

22            MR. FREEDMAN:  This all became very relevant after

23    the Court found, as plaintiff has believed, that these -- that

24    these trusts were really fake and part of a scheme.

25            THE COURT:  I guess my question is this:  The first
```

```
 1    time I ever heard about Mr. Mayaka or that he came to light
 2    was when Dr. -- was when the documentation was filed with the
 3    Court regarding the ownership and trusteeship of the Tulip
 4    trusts.  That's my recollection.  Now, obviously y'all live
 5    with this case a lot more than I do.  That event occurred
 6    after the search terms had been agreed to.  So let's focus on
 7    my first question.
 8            When the parties were negotiating the search terms,
 9    was an attempt made to try to identify this universe of
10    documents as part of the search terms?
11            MR. FREEDMAN:  Your Honor, honestly, Mr. Roche, who
12    we lost, could speak better to that than I could.  There was
13    certainly some interest in Denis Mayaka previously, because he
14    appeared on documents that we had seen that --
15            THE COURT:  Uh-huh.
16            MR. FREEDMAN:  -- mentioned the Tulip Trust, but his
17    importance has -- you know, the salience of him has --
18            THE COURT:  I'll get to that in a second.  I'm just
19    trying to -- again, my recollection is some -- and feel free.
20    We can get Mr. Roche back on the phone if you like.  Yeah,
21    we'll call him back.
22            The --
23            MR. FREEDMAN:  I can give you his direct number if
24    you -- I don't know if he's, like, still on the line.
25            THE LAW CLERK:  Yeah, that would be good.
```

```
1              THE COURT:  My recollection is at least Tulip and

2    terms relating to the Tulip Trust were part of the search

3    terms, but . . .

4              MS. MARKOE:  Your Honor, that's correct with regards

5    to Tulip and (inaudible).

6              MR. ROCHE:  Hello.

7              THE COURT:  Hi, Mr. Roche.  This is Judge Reinhart.

8    I'm sorry, we cut you off because we were having some issues

9    with feedback, but then we found out it wasn't your fault. so

10   . . .

11             MR. ROCHE:  Well, that's good to hear.

12             THE COURT:  We've dialed you back in.

13             So the issue that's come up, we've now turn to

14   request for productions number 13, 14 and 31, which would be

15   on pages 8 and 9 of the -- I'm sorry.  Yeah, page 8 and 9 of

16   the -- of docket entry 339 which relate to Mr. Mayaka and his

17   related entities.  And the question I put to Mr. Freedman and

18   he wanted to defer to you on was whether the issues relating

19   to Mr. Mayaka had come up when the parties were negotiating

20   the search terms in this case.

21             Mr. Kass and Ms. Markoe indicated, and it's my

22   recollection, at least some of the search terms had to do with

23   the Tulip Trust, and Tulip and things of that nature, but not

24   necessarily Mr. Mayaka by name, or Ecuador by -- Equator by

25   name or Abacus by name, and we just wanted to probe your
```

```
 1    recollection of that.
 2            MR. ROCHE:  Your Honor, that is my recollection, as
 3    well, is that, you know, just thinking back into, you know,
 4    the timeframe of when the search terms were negotiated was
 5    before, you know, we had the -- some of those documents
 6    related to (inaudible), you know, that identified Mr. Mayaka
 7    on those (inaudible) documents that we -- you know, the
 8    May 8th declaration and the May 13th declaration which
 9    identified some documents that he was identified in were
10    certainly after the search terms were negotiated.
11            THE COURT:  Okay.  So I'll turn to the parties in a
12    second, but it seem -- let me give you some parameters to
13    think about here.
14            I'm not going to require them to turn over all
15    documents that mention these people and things of that nature.
16    I'd be -- I would consider whether -- and I'd want to hear
17    from Ms. Markoe and Mr. Kass about whether there's an undue
18    burden as to this, but whether -- how burdensome would it be
19    to maybe rerun a limited number of search terms that might try
20    to identify Mr. Mayaka, Equator Consultants and Abacus, and
21    maybe -- and Bitcoin, or and trust, or and -- you know, you
22    guys can work out the Boolean terminology for that, but some
23    limited use of search terms.
24            Mr. Freedman, you're nodding your head up and down
25    that that -- at least something along those lines you think
```

```
 1   might be viable.

 2          Let me turn to Ms. Markoe and Mr. Kass.

 3          MS. MARKOE:  I do want to point out one thing.

 4   Mr. Kass is doing something.  But one thing I do want to point

 5   out is you just mentioned the local rule about waiver, and

 6   these were objections that we made back in July.  We had a

 7   meet and confer on some of them, and plaintiffs assured us

 8   that they would provide us with search terms, that we could

 9   try to resolve these issues.

10          Last night at 6:00 p.m. was the first time we heard

11   about these again, the very first time we heard about them

12   again.  They never gave us any proposed search terms.  They

13   never addressed, you know, that we are already providing them

14   with all documents that we have related to the Tulip trusts,

15   related to Dave Kleiman, related to W&K.

16          THE COURT:  Uh-huh.

17          MS. MARKOE:  So our first argument would be

18   waiver --

19          THE COURT:  Okay.  So I'm looking -- hold on one --

20          MS. MARKOE:  -- as to all of these requests.

21          THE COURT:  Yeah, hold on one second.  I'm looking

22   at docket entry 339-5.  This is your -- your meaning Rivero

23   Mestre's response and objections to the fifth request for

24   production, and it's served by Mr. Kass on July 2nd.  Okay.

25   So let me stop right there.
```

```
 1              So Mr. Freedman, why isn't there waiver if it's been
 2    six months or five months since this issue came up?
 3              MR. FREEDMAN:  Your Honor, partly because the
 4    parties had a settlement agreement in place, and everything
 5    was kinda stalled for a while.  Also, the parties, because of
 6    the large volume of work that have been going on in litigation
 7    have never really raised that issue.
 8              So, for example, despite the fact that Mr. Kass'
 9    opening request for the documents related to Ira's acquisition
10    of his house were served I think in February of 2019 was when
11    we objected, we didn't raise waiver because we didn't think it
12    was a fair argument, given the parties have been engaging in
13    protracted negotiations to work out, under this Court's
14    guidance, to work these issues out.
15              THE COURT:  Uh-huh.
16              MR. FREEDMAN:  So it is true that it's been more
17    than 30 days.  There's been a lot that's going on, including
18    two months-worth of settlement discussions.
19              We certainly did have meet and confers with these
20    (sic) issue, because I have a distinct recollection of
21    stepping out of my wife's room after she had given birth to my
22    daughter to get on the phone with Mr. Kass and Mr. Roche to
23    discuss these exact objections in the antechamber to her
24    hospital room.
25              THE COURT:  Right.  So this will be easy.  What was
```

 1   the approximate date, then?  You should be able to --

 2          MR. FREEDMAN:  That would have been August, Your

 3   Honor.

 4          THE COURT:  Okay.

 5          MR. FREEDMAN:  August 7th.

 6          THE COURT:  August 7th, okay.

 7          Well, no.  The reason I ask it, because I was just

 8   looking.  My order in this case was August 27th, and I think

 9   the settlement discussions and all that occurred shortly

10   thereafter.  So there was at least a window of time from

11   August 7th to August 27th to continue those negotiations.

12          Okay.  But let me -- okay.  You've responded as to

13   the waiver issue.

14          Let me go back to Ms. Markoe on the merits.

15   Assuming I don't agree to the waiver argument, what's your

16   position on the merits?

17          MS. MARKOE:  On the merits is they have everything,

18   or they're getting everything that's not privileged that

19   relates to the Tulip trusts, that relates to Dave Kleiman,

20   that relates to W&K.  Not really sure what else they could

21   possibly need related to Abacus, Equator or Denis Mayaka that

22   relates to anything other than those trusts and those entities

23   and individuals.

24          THE COURT:  Okay.  Mr. Freedman, I'll give you the

25   last word.

1          MR. FREEDMAN:  Your Honor, there are other trusts

2    potentially that don't say the word "Tulip" in them.  I don't

3    know the extent of the other shell companies that have been

4    created, but Dr. Wright in his first deposition testified

5    clearly that he purposely made his companies and trusts very

6    complex so people couldn't track it.  And I remember his exact

7    terminology, I'm obviously paraphrasing.  But I think that the

8    Court's suggestion of coming up with a limited term -- search

9    term, something like, you know, Abacus and Bitcoin doesn't

10   relate to Dave Kleiman, W&K and Tulip Trust, but given who we

11   have shown Mr. Mayaka to be and his companies, what they have

12   done, I think that's a relevant search term and something they

13   should run.

14         THE COURT:  Okay.  I'm going to overrule that

15   objection, and I'm going to -- or I guess I'm going to sustain

16   their objection.

17         As I recall the search terms, they very clearly

18   contemplated getting documentation related to the Tulip Trust.

19   I have ordered production of documentation relating to the

20   Tulip Trust.  I think to the extent that Mr. Mayaka, as

21   Ms. Markoe points out -- so the search terms and other

22   discovery that I've allowed were intended to get the

23   plaintiffs significant amount of information as it relates to

24   the creation and operation of the Tulip Trust.  I've granted

25   you substantial discovery as it relates to the Bitcoin, and I

1  think at this point to rerun these, at this late date in the

2  discovery process, to rerun just to target Mr. Mayaka more

3  specifically is not proportional to the needs of the case and

4  is cumulative in light of the other evidence that you have.

5  And so I'll sustain the objection to 13, 14 and 31.

6       All right.  Seventeen through 21.  I don't know if

7  this overlaps with that.

8       MR. FREEDMAN:  Your Honor, these are -- I mean,

9  these are trustees listed in Tulip Trust one that we -- I

10  don't think we had any search terms on.  Again, they became

11  very relevant when the search -- when the trust became fake,

12  but obviously I'd be intellectually dishonest if I didn't

13  admit the potential overlap between this and the previous.

14       THE COURT:  Yeah, I'm going to sustain these.  I'm

15  going to -- I appreciate that.  I'm going to hold to my ruling

16  as to the first -- as to the prior request for production.  So

17  as to request for productions 17 through 21, I'll sustain the

18  objection as disproportionate and cumulative.

19       All right.  Request for production 37.  Hold on.  I

20  have to look at what it is.

21       I did want to note my staff did the math, by the

22  way.  You're now up to 195 request for productions in this

23  case when you add up all five of them.

24       So 37 is all documents that you -- you, I assume

25  Dr. Wright, either signed digitally or by hand, swore to or

```
1    affirmed that relate to Bitcoin, trusts or Satoshi Nakamoto.

2            Okay.  Ms. Markoe or Mr. Kass, what's your -- I

3    didn't read your objection.  Hold on, sorry.

4            MS. MARKOE:  Okay.

5            THE COURT:  So you said you would produce some, but

6    not all, as I recall, right?

7            MS. MARKOE:  Right.

8            But again, this was back in July, when, you know,

9    this first came up and we were waiting on search terms for

10   them, which never came.  Still have not come.  Discovery

11   closes in a month, and there is that.

12           And then, also, they're already getting, as we

13   stated and we've talked about today, Dave Kleiman, W&K, Tulip

14   Trust, lots of other search terms.  And this request in

15   particular is going to be a little bit difficult, because

16   we're not even sure how you would go about searching for any

17   document that you digitally signed, or signed by hand, or

18   swore to or affirmed that relate to these incredibly broad

19   topics.

20           THE COURT:  Okay.  Mr. Freedman?

21           MR. FREEDMAN:  I just don't think the topics are

22   incredibly broad.  They're Bitcoin, trusts and Satoshi

23   Nakamoto, which are three very salient issues in the

24   litigation.  I mean, we can produce search terms for them

25   if -- and obviously if they agree, that's how we would cover
```

 1  digitally signed.  I mean, we'd look for words like sworn to,

 2  affirmed, things like that.

 3          THE COURT:  All right.  Here's what I'm going to do

 4  for 37.  I'm going to sustain the objection without prejudice.

 5          Mr. Freedman, if you want to propose those kind of

 6  search terms promptly, and Ms. Markoe and Mr. Kass, if you

 7  want to run them and reserve your -- any objection as to undue

 8  burden, maybe you'll run them and you'll get no hits, or maybe

 9  you'll run them and all the hits you'll get will be cumulative

10  to things you've already produced.

11          But I'll at least give Mr. Freedman and his client

12  the opportunity to propose search terms, and you can run the

13  search terms.  Because I do -- as to this topic, in comparison

14  to the prior topic, I do believe it is much more limited, and

15  I do believe it is more central to the case.  So I will

16  allow -- at least as a first step, I'm not going to preclude

17  them from posing search terms --

18          MS. MARKOE:  Okay.

19          THE COURT:  -- for 37.

20          Forty-six relates to the Australian documents, all

21  documents filed in the Australian court proceedings.

22          Okay.  And the objection is these are equally

23  accessible and available to the plaintiffs.  I don't know.

24  Are they?  Are they not?

25          Mr. Freedman?

```
 1              MR. FREEDMAN:  They're not, Your Honor.  It's not
 2    here.  It's not like here.  The courts are not open to the
 3    public.  We did -- prior to the filing of the litigation, we
 4    did retain counsel out in -- our client retained counsel out
 5    in Australia and did apply to the courts, and we got some
 6    documents.  I don't know if we got all of the documents, and
 7    I -- you know, and Mr. -- Dr. Wright is asserting res judicata
 8    based on these documents, and I just don't think it's fair
 9    that if he has more of them he shouldn't produce them over.
10    We should have a full copy of the file.
11              THE COURT:  Well, in discovery have I -- has
12    Dr. Wright produced whatever he has?  Forget what the
13    Australian people have.  Has he produced whatever he's got?
14              MR. FREEDMAN:  I don't know.
15              THE COURT:  Maybe I should ask Ms. Markoe and
16    Mr. Kass that question.
17              MR. KASS:  Your Honor, we've definitely produced a
18    lot of those documents, but you'll see shortly that this
19    actually goes back to search terms, which is really their
20    underlying issue now that this --
21              THE COURT:  Well -- okay.  Go ahead, sorry.
22              MR. KASS:  Now that Mr. Roche is actually on the
23    phone he can confirm this, is that when we were discussing
24    search terms this was actually a pretty big point of
25    contention between myself and Mr. Roche, and the problem was
```

1    they were proposing to search for these filings with just the

2    file name, essentially the docket number.  And when you do

3    that you get all these drafts of pleadings, which are going to

4    be work product.  And by running that search term, all we're

5    going to end up doing is having a really large privilege log,

6    which is unwarranted, and it's just going to take us a lot of

7    time to go through all those documents.

8            Our understanding is that documents can be obtained

9    from the Australian courts.  In fact, plaintiffs attached

10   documents to the complaint as an exhibit of the Australian

11   courts.  And it's not really clear what plaintiffs believe

12   they're missing, other than maybe there's something out there.

13   And to do all this work just on maybe there's something out

14   there that's we can't get, it doesn't appear to be

15   proportionate.

16           THE COURT:  Okay.  But as I understand

17   Mr. Freedman's theory, it's that one of the -- even if Judge

18   Bloom affirms my order, I left in place the affirmative

19   defense of res judicata.

20           MR. KASS:  Uh-huh.

21           THE COURT:  And so his argument is this goes to

22   that.

23           I presume, though, Mr. Freedman, the only way that

24   they're going to be able to prove up what it is that the

25   Australian court decided for purposes of res judicata is to

```
 1    use the documents that they already have, and I'm going to
 2    guess that Judge Bloom's not going to let them use any
 3    documents that they haven't shared in discovery.  So I'm not
 4    sure why you need more than what they have, if you're
 5    following my thought process.  But I'm willing to be persuaded
 6    otherwise, but that's my initial thought.
 7             MR. FREEDMAN:  I mean, you could imagine a court
 8    filing that -- I mean, this is obviously an extreme example,
 9    but you could imagine a court filing reconsidering a prior
10    order that is missing and -- from the defendant's production.
11    Not that I would -- not that I'm accusing them of intentional
12    wrongdoing, but there's been some manipulation here.  So it's
13    possible that a client doesn't share a full court record, and
14    there could be a judgment vacating, you know, an order
15    vacating prior judgment that wouldn't have been produced over,
16    and that could be problematic.
17             Plaintiff's request would be to have Dr. Wright
18    essentially, as is his right as a party, request a full copy
19    of the court file from the Australian court and just produce
20    that over.
21             THE COURT:  Okay.  But help me out.  How -- maybe I
22    should turn to the other side.  How's the res judicata defense
23    play out in this case?  What is it that Dr. Wright claim --
24    let me turn to Ms. Markoe and Mr. Kass.  How's that going to
25    play out at trial?  What is it that Dr. Wright claims is at
```

```
 1    issue in this case which has already been decided or could

 2    have been decided by the Australian court?

 3            MR. KASS:  Your Honor, obviously we're still

 4    fleshing out our defenses, but at this point in time I could

 5    state that a large part of plaintiff's claims is that

 6    Dr. Wright stole intellectual property from W&K.  There's a

 7    judgment in Australia which awarded that intellectual property

 8    to Dr. Wright.

 9            So to the extent that was already addressed in the

10    Australian court, then that would be the res judicata over

11    here.

12            THE COURT:  So the -- but the argument would be

13    they -- hold on.  I'm just trying to understand the argument.

14            So Dr. Wright's defense to the argument that

15    Mr. Kleiman, Ira Kleiman, should be awarded rights in anything

16    is that the Australian court already gave it to me.

17            MR. KASS:  Exactly; through a court proceeding.

18            THE COURT:  So if my order is affirmed that's moot

19    as a practical matter, because I've already awarded

20    Dr. Wright -- or I've already awarded Mr. Kleiman half of what

21    Dr. Wright has.

22            MR. FREEDMAN:  Except the Court didn't strike the

23    res judicata defense, so . . .

24            THE COURT:  I didn't strike the res judicata defense

25    because it didn't -- it wasn't germane to the sanctions issue
```

 1   before me.  That doesn't mean that as a derivative matter, the

 2   res judicata defense may be defeated by other mechanisms.  I

 3   don't know.  I'm just trying to understand from a discovery --

 4   at this point from a discovery perspective how the res

 5   judicata defense plays out.  So I understand how it plays out.

 6          All right.  I'm not going to order them to go back

 7   to Australia and get additional documentation.  I think

 8   they're limited to what they have.  They can only try to prove

 9   their case based upon what they have, and I think the

10   likelihood that there's some -- something in Australia that is

11   so meaningful that it would undercut their res judicata

12   defense has not been established to the point that I'm going

13   to burden them with doing that.  So I'll overrule the

14   objection -- or I'll sustain the objection to 46.

15          All right.  And then the last one is 49, which is

16   copies of his diplomas.  You want them framed or not framed?

17          MR. FREEDMAN:  Your Honor, there are documents in

18   the case that reference Dr. Wright, and the timing seems off

19   on them.  And Dr. Wright's expertise in certain areas and his

20   certificates in certain areas are at issue in the case.  His

21   competence with certain technologies are in question, and his

22   reliance on Dave Kleiman to fill those gaps are part of the

23   issues in plaintiff's -- in plaintiff's case, and we need to

24   know his certificates, his diplomas and the timing of them.

25          So one example is there is a particular document

1    that is addressed to Dr. Wright that we believe occurred

2    prior -- that is allegedly dated prior to his -- has a date

3    that we believe is prior to him becoming a doctor, which we

4    believe calls into question the true timing of that document.

5    And I mean, that's just one example obviously beyond the

6    expertise issue that I've raised.

7              So it's not burdensome, it should be pretty simple,

8    and I'm not sure why it's even objected to.

9              THE COURT:  All right.  Mr. Kass or Ms. Markoe?

10             MS. MARKOE:  The reason we object to it is because

11   we don't see any relevance to his diplomas, certificates and

12   degrees to this case, which is about the theft of Bitcoin and

13   the intellectual property that Dave Kleiman and Dr. Wright

14   purportedly developed together in partnership, and it's

15   frankly harassing.

16             THE COURT:  Okay.  Mr. Freedman?

17             MR. FREEDMAN:  Your Honor, if they are willing to

18   stipulate that Dr. Wright won't testify to any of his

19   background, his degrees or anything like that, then I guess we

20   would withdraw the request.  Otherwise, we need it to be able

21   to cross him on it.

22             THE COURT:  All right.  I think it goes to his

23   credibility, and so I -- and I don't believe it's unduly

24   burdensome.  Then again, if you'd asked me five years ago for

25   a copy of all of my degrees, I probably couldn't have found

```
 1   them.  So you may run up against that issue, but at least for

 2   discovery purposes, I don't think it's unduly burdensome to

 3   ask Dr. Wright to produce copies of whatever degrees or

 4   diplomas he can access with due diligence, and so I'll

 5   overrule that objection.

 6            All right.  Without waiving any objections that

 7   you've previously made or without waiving any objections you

 8   may have to the rulings I've made this afternoon,

 9   Mr. Freedman, have I at least now ruled on all of the issues

10   that you wanted to raise?

11            MR. FREEDMAN:  Yes, Your Honor.  Thank you.

12            THE COURT:  All right.  Mr. Kass, Ms. Markoe, have I

13   at least -- again, not waiving any objections you may have or

14   have previously made, have I ruled on everything that you

15   wanted to present this afternoon?

16            MR. KASS:  Yes, Your Honor.  Although it would be

17   helpful if we can maybe get a date certain where our meet and

18   confer with opposing counsel as to Dave's devices would occur,

19   just because it is very important in time.

20            THE COURT:  Sure.

21            MR. FREEDMAN:  Let's talk tomorrow, Zalman.

22            THE COURT:  Okay.  All right.  You guys will talk.

23   You can talk tomorrow.

24            MR. FREEDMAN:  And actually, why don't you --

25            THE COURT:  Tomorrow before --
```

1          MR. FREEDMAN:  -- in the interim continue to produce

2     us so we can get them back to you.  We can continue to discuss

3     your immediate access, but keep giving them to us so we can

4     get back to you.

5          THE COURT:  I'll order you to meet and confer

6     tomorrow before sundown.

7          MR. FREEDMAN:  Thank you, Your Honor.

8          MS. MARKOE:  Tomorrow?

9          THE COURT:  No, I'm sorry.  Tomorrow's Thursday.  I

10    thought it was Friday.  I threw Ms. Markoe off there, I'm

11    sorry.

12         All right.  We're in recess.  We can go off the

13    record.  Thank you.

14        (Proceedings concluded.)

15                              *  *  *  *  *

16

17

18

19

20

21

22

23

24

25

```
 1                         * * * * *

 2                       I N D E X

 3   Discovery Hearing                              3

 4                         * * * * *

 5                    E X H I B I T S

 6   (None.)

 7                         * * * * *

 8                       CERTIFICATE

 9       I, Stephen W. Franklin, Registered Merit Reporter, and

10   Certified Realtime Reporter, certify that the foregoing is a

11   correct transcript, to the best of my ability, from the

12   DIGITAL AUDIO RECORDING of proceedings in the above-entitled

13   matter.

14       Dated this 21st day of DECEMBER, 2019.

15

16       /s/Stephen W. Franklin
         _____
17       Stephen W. Franklin, RMR, CRR

18

19

20

21

22

23

24

25
```

**MR. BRENNER: [2]**
3/15 28/10

**MR. FREEDMAN: [52]**
3/10 4/14 4/17 4/19 8/16
8/20 8/25 15/1 16/15
17/15 19/23 20/3 23/4
24/15 26/16 27/18 28/14
29/16 29/19 30/19 32/25
33/18 36/11 36/22 38/9
38/17 38/24 39/6 39/15
40/4 40/22 41/11 41/16
41/23 45/3 45/16 46/2
46/5 47/1 48/8 49/21
51/1 51/14 53/7 54/22
55/17 56/17 57/11 57/21
57/24 58/1 58/7

**MR. KASS: [67]**

**MR. ROCHE: [4]** 3/25
42/6 42/11 43/2

**MS. MARKOE: [23]**
3/4 3/22 33/25 34/3 34/8
34/11 34/18 35/21 37/1
37/9 37/13 37/24 39/22
42/4 44/3 44/17 44/20
46/17 49/4 49/7 50/18
56/10 58/8

**THE COURT: [146]**

**THE LAW CLERK:**
**[1]** 41/25

**UNIDENTIFIED**
**SPEAKER: [1]** 7/22

**$**
**$165,000 [1]** 30/9
**$400,000 [1]** 14/9

**'**
**'til [1]** 34/5

**-**
**-and [3]** 2/4 2/7 2/13
**-v [1]** 1/5

**/**
**/s/Stephen [1]** 59/16

**1**
**10 [2]** 27/25 29/12
**100 [1]** 2/6
**1000 [2]** 2/12 2/15
**11 [5]** 26/10 27/24 27/25
28/1 29/12
**11249 [1]** 2/9
**117 [1]** 7/3
**12 [1]** 34/11
**13 [3]** 38/13 42/14 48/5
**13th [1]** 43/8
**14 [5]** 38/13 39/19 39/21
42/14 48/5
**15 [1]** 39/20
**15-minute [1]** 3/11
**16th [1]** 32/7
**17 [1]** 48/17
**18 [1]** 1/8
**18-80176-CIV-BB [1]**

1/2
**185 [1]** 2/9
**195 [1]** 48/22

**2**
**20 [1]** 13/15
**200 [1]** 2/3
**2012 [1]** 39/7
**2014 [1]** 39/6
**2019 [3]** 1/8 45/10 59/14
**21 [2]** 48/6 48/17
**21st [1]** 59/14
**22 [1]** 39/22
**2400 [2]** 4/18 4/19
**2525 [2]** 2/1 2/14
**27th [3]** 9/3 46/8 46/11
**2800 [1]** 2/6
**2nd [2]** 2/6 44/24

**3**
**30 [4]** 23/20 37/19 37/25
45/17
**31 [4]** 38/14 39/21 42/14
48/5
**33131 [2]** 2/4 2/7
**33134 [2]** 2/12 2/15
**33401 [1]** 1/18
**339 [5]** 4/4 4/9 13/11
33/13 42/16
**34 [1]** 19/18
**37 [4]** 48/19 48/24 50/4
50/19
**3768 [1]** 1/17

**4**
**46 [1]** 55/14
**49 [1]** 55/15

**5**
**5, 6 [1]** 26/3
**500 [1]** 35/11
**514-3768 [1]** 1/17
**5500 [1]** 2/3
**561 [1]** 1/17

**6**
**6:00 p.m [1]** 44/10

**7**
**701 [1]** 1/18
**7th [3]** 46/5 46/6 46/11

**8**
**80176 [1]** 3/6
**8th [1]** 43/8

**A**
**Abacus [8]** 38/21 38/24
39/20 40/19 42/25 43/20
46/21 47/9
**ability [2]** 34/16 59/11
**able [7]** 13/5 14/22 22/5
25/21 46/1 52/24 56/20
**above [1]** 59/12
**above-entitled [1]** 59/12
**absolutely [1]** 20/23
**accept [1]** 32/19

**access [6]** 6/24 10/23
21/16 21/25 57/4 58/3
**accessible [1]** 50/23
**accessing [1]** 22/21
**accommodation [2]** 3/11
30/22
**accomplice [1]** 39/8
**account [2]** 21/9 21/12
**accounts [3]** 21/14 22/18
22/22
**accurate [1]** 33/3
**accusing [1]** 53/11
**acquisition [1]** 45/9
**across [1]** 12/6
**act [1]** 20/9
**actual [1]** 18/10
**actually [16]** 4/17 5/2
5/12 7/12 14/13 16/9
17/4 21/18 33/25 34/21
35/11 38/17 51/19 51/22
51/24 57/24
**add [1]** 48/23
**addition [1]** 35/2
**additional [5]** 21/4 21/5
26/17 35/9 55/7
**address [6]** 10/1 11/19
18/7 38/1 38/1 38/2
**addressed [6]** 16/2
17/23 35/16 44/13 54/9
56/1
**addresses [3]** 5/8 15/15
34/12
**admissibility [2]** 32/16
32/17
**admissible [1]** 18/4
**admit [1]** 48/13
**advance [1]** 17/21
**affidavit [1]** 24/24
**affirmative [1]** 52/18
**affirmatively [2]** 30/3
30/6
**affirmed [5]** 16/22 49/1
49/18 50/2 54/18
**affirms [1]** 52/8
**after [12]** 12/20 13/7
14/6 23/20 32/7 35/3
37/2 37/5 40/22 41/6
43/10 45/21
**afternoon [8]** 3/2 3/4
3/13 3/21 3/23 4/1 57/8
57/15
**again [15]** 9/22 13/19
15/10 15/22 15/24 26/3
32/13 33/12 41/19 44/11
44/12 48/10 49/8 56/24
57/13
**against [3]** 17/25 18/1
57/1
**agenda [1]** 4/7
**ago [2]** 5/20 56/24
**agree [6]** 14/20 17/9
28/21 33/7 46/15 49/25
**agreed [7]** 26/13 26/15
26/17 26/19 27/11 40/20
41/6
**agreed-upon [1]** 26/15

**agreeing [2]** 27/2 29/4
**agreement [3]** 12/6 27/9
45/4
**ahead [1]** 51/21
**AL [1]** 1/3
**AlixPartners [6]** 7/6
7/10 8/21 11/7 11/10
11/25
**alleged [1]** 20/15
**allegedly [2]** 13/20 56/2
**allow [3]** 17/20 30/9
50/16
**allowed [1]** 47/22
**Almost [1]** 26/24
**along [2]** 27/16 43/25
**already [15]** 6/10 15/16
15/16 28/5 32/9 40/20
44/13 49/12 50/10 53/1
54/1 54/9 54/16 54/19
54/20
**also [10]** 11/18 21/17
27/4 28/22 35/5 35/5
39/3 39/7 45/5 49/12
**Although [1]** 57/16
**always [5]** 4/6 11/16
19/19 27/10 27/19
**ambushed [1]** 25/2
**among [1]** 19/13
**amount [2]** 7/11 47/23
**amounts [1]** 29/23
**Andrew [2]** 2/5 3/15
**another [2]** 12/20 29/6
**answer [7]** 16/12 18/3
18/5 18/6 18/12 18/13
18/16
**answered [3]** 34/3 34/15
37/3
**answers [1]** 16/5
**antechamber [1]** 45/23
**anticipating [1]** 9/15
**any [32]** 6/13 7/12 9/23
10/15 12/4 13/24 14/10
17/11 17/12 18/22 19/17
19/17 19/22 19/25 20/8
24/17 24/23 28/3 28/4
28/5 28/18 39/14 44/12
48/10 49/16 50/7 53/2
56/11 56/18 57/6 57/7
57/13
**anybody [2]** 16/18 20/24
**anymore [1]** 28/5
**anyone's [2]** 33/13 37/16
**anything [12]** 3/17 8/22
9/24 12/7 16/24 29/10
33/14 33/16 36/23 46/22
54/15 56/19
**anywhere [2]** 12/2 16/12
**aol.com [1]** 1/19
**apart [1]** 25/3
**appear [5]** 12/4 29/25
33/5 40/10 52/14
**appearances [3]** 1/14
1/21 3/8
**appeared [1]** 41/14
**appears [2]** 39/8 39/11
**apply [1]** 51/5

**applying [1]** 28/6
**appreciate [4]** 9/14 10/3
19/7 48/15
**approximate [1]** 46/1
**areas [2]** 55/19 55/20
**aren't [1]** 19/25
**argue [1]** 38/5
**argument [7]** 44/17
45/12 46/15 52/21 54/12
54/13 54/14
**arise [1]** 36/9
**arisen [2]** 36/8 40/21
**around [2]** 19/14 36/5
**articles [2]** 20/24 21/2
**aside [1]** 33/7
**ask [11]** 10/22 10/22
12/14 12/15 16/3 20/7
30/11 40/18 46/7 51/15
57/3
**asked [6]** 10/12 16/12
31/20 34/9 35/9 56/24
**asking [11]** 9/1 9/21
9/23 11/2 11/2 22/11
29/18 29/19 33/14 33/16
36/22
**asserting [1]** 51/7
**associated [2]** 22/8
22/10
**assume [1]** 48/24
**assumed [1]** 20/10
**Assuming [1]** 46/15
**assured [1]** 44/7
**attached [1]** 52/9
**attaching [1]** 39/1
**attachments [1]** 4/5
**attempt [2]** 39/9 41/9
**attention [1]** 9/5
**attenuated [1]** 25/24
**attorney [1]** 12/2
**Audio [2]** 36/10 59/12
**August [6]** 46/2 46/5
46/6 46/8 46/11 46/11
**August 27th [1]** 46/8
46/11
**August 7th [3]** 46/5 46/6
46/11
**Australia [5]** 22/10 51/5
54/7 55/7 55/10
**Australian [10]** 50/20
50/21 51/13 52/9 52/10
52/25 53/19 54/2 54/10
54/16
**authentic [1]** 25/23
**authentication [1]** 20/20
30/17 31/3
**authority [3]** 30/14
30/17 31/3
**available [2]** 35/6 50/23
**Avenue [1]** 2/9
**awarded [4]** 54/7 54/15
54/19 54/20
**aware [3]** 19/23 23/5
27/21

**B**
**back [23]** 5/18 8/16 9/19
11/5 13/11 13/16 15/8

# B

back... [16] 15/21 20/6 20/13 35/18 36/7 41/20 41/21 42/12 43/3 44/6 46/14 49/8 51/19 55/6 58/2 58/4
background [1] 56/19
bad [1] 24/5
bar [1] 30/12
base [2] 7/24 23/19
based [2] 51/8 55/9
baseline [1] 17/9
BB [1] 1/2
Beach [2] 1/7 1/18
became [3] 40/22 48/10 48/11
because [34] 5/7 5/13 6/23 7/18 7/19 8/7 14/16 16/15 19/18 20/9 23/19 24/3 31/4 32/15 32/25 34/19 35/19 36/7 37/10 38/10 40/11 41/13 42/8 45/3 45/5 45/11 45/20 46/7 49/15 50/13 54/19 54/25 56/10 57/19
becoming [1] 56/3
before [12] 1/11 8/22 10/19 17/24 18/25 29/25 31/1 34/5 43/5 55/1 57/25 58/6
behalf [1] 18/25
being [3] 14/7 22/15 25/21
believe [18] 10/7 14/2 16/8 18/9 22/25 24/10 24/22 26/16 29/7 35/25 39/10 50/14 50/15 52/11 56/1 56/3 56/4 56/23
believed [2] 24/18 40/23
believes [2] 13/5 22/6
belonged [1] 36/1
best [5] 11/21 32/14 34/16 35/7 59/11
better [2] 16/2 41/12
between [5] 22/12 23/23 25/18 48/13 51/25
beyond [1] 56/5
big [1] 51/24
billions [1] 13/20
bills [1] 29/23
birth [1] 45/21
Biscayne [1] 2/3
bit [1] 49/15
Bitcoin [34] 5/8 8/4 8/4 8/10 13/21 13/24 14/8 14/13 14/23 15/5 15/9 15/11 15/14 15/15 17/3 17/12 17/12 17/17 18/22 28/2 28/4 34/14 39/10 40/3 40/5 40/5 40/13 40/17 43/21 47/9 47/25 49/1 49/22 56/12
Bitcoin-related [2] 15/14 34/14
Bitcoins [2] 8/7 14/10
Bloom [9] 16/22 30/23

31/4 31/12 32/15 32/20 32/24 33/1 52/18
Bloom's [2] 15/2 53/2
Boies [1] 2/5
Boolean [1] 43/22
both [3] 12/10 23/21 29/2
bought [3] 15/9 17/14 18/21
Boulevard [3] 2/3 2/11 2/14
boundary [1] 27/12
break [1] 25/3
Brenner [4] 2/5 3/14 3/15 3/17
Brightline [1] 3/18
bring [7] 4/13 8/1 30/2 30/3 30/10 30/21 37/15
British [1] 23/3
broad [2] 49/18 49/22
Brooklyn [1] 2/9
brother's [1] 6/4
brought [3] 16/9 20/22 37/15
BRUCE [1] 1/11
bunch [1] 25/14
burden [3] 43/18 50/8 55/13
burdensome [6] 20/9 24/14 43/18 56/7 56/24 57/2
busier [1] 5/15
busy [2] 5/11 12/11
buy [1] 16/4

# C

calls [1] 56/4
came [6] 8/22 11/16 41/1 45/2 49/9 49/10
can't [4] 11/16 40/6 40/9 52/14
Candidly [1] 12/22
cannot [1] 30/7
case [43] 1/2 3/5 5/7 5/11 5/14 8/1 12/6 12/9 12/25 13/17 14/24 14/25 16/25 18/2 19/3 20/18 21/6 21/8 22/12 22/16 22/20 24/6 25/4 25/9 25/11 25/12 25/22 27/10 28/23 40/16 41/5 42/20 46/8 48/3 48/23 50/15 53/23 54/1 55/9 55/18 55/20 55/23 56/12
cases [1] 25/15
cash [1] 14/9
categories [1] 16/16
caused [1] 6/4
centered [1] 38/21
central [1] 50/15
certain [5] 19/1 55/19 55/20 55/21 57/17
certainly [1] 41/13 43/10 45/19
certainty [1] 11/16
CERTIFICATE [1]

59/8
certificates [3] 55/20 55/24 56/11
Certified [1] 59/10
certify [1] 59/10
chance [7] 7/19 12/19 12/21 12/24 20/11 32/21 38/5
change [1] 12/17
characterization [1] 15/7
charge [1] 28/12
choice [2] 31/5 31/7
cited [1] 33/1
CIV [1] 1/2
claim [1] 53/23
claiming [1] 17/6
claims [5] 8/1 13/17 21/6 53/25 54/5
clarified [1] 29/12
clarify [2] 27/1 33/15
clawback [1] 12/6
clear [4] 26/21 26/22 27/7 52/11
clearly [5] 30/21 40/4 40/16 47/5 47/17
Clematis [1] 1/18
clerk [1] 36/5
client [5] 14/4 17/16 50/11 51/4 53/13
close [1] 12/10
closed [1] 28/8
closer [1] 5/15
closes [1] 49/11
closing [2] 24/1 37/5
coffee [1] 28/10
collect [1] 24/1
collected [1] 23/25
comes [3] 25/7 28/10 29/21
coming [1] 47/8
commercial [1] 6/5
communication [2] 19/18 23/14
communications [15] 7/20 19/13 22/12 23/5 23/8 23/22 24/4 24/11 24/13 24/20 25/18 26/4 28/7 39/11 39/13
companies [12] 21/24 22/8 22/9 22/9 23/7 23/8 40/7 40/14 40/17 47/3 47/5 47/11
comparison [1] 50/13
compel [2] 30/18 37/18
compelled [1] 30/15
competence [1] 55/21
complaint [7] 13/19 22/25 23/2 23/17 23/21 24/21 52/10
complaints [1] 13/19
complete [1] 33/2
completed [3] 6/10 6/17 26/18
completely [4] 20/4 24/5 30/1 33/2

complex [1] 47/6
compromise [1] 8/20
computer [1] 21/17
concern [2] 36/25 37/1
concerned [1] 9/16
concerns [2] 10/24 35/15
concluded [1] 58/14
confer [8] 12/19 13/4 13/10 26/22 27/19 44/7 57/18 58/5
confers [1] 45/19
confirm [1] 51/23
consciously [1] 28/17
consider [1] 43/16
considered [1] 27/13
Consultants [3] 38/25 39/19 43/20
contact [1] 22/21
contacts [1] 23/1
contain [1] 20/25
contained [1] 13/13
contemplated [1] 47/18
contention [1] 51/25
continue [3] 46/11 58/1 58/2
continued [1] 12/12
control [3] 11/11 28/3 30/21
copies [2] 55/16 57/3
copy [3] 51/10 53/18 56/25
Coral [2] 2/12 2/15
corporations [1] 40/9
correct [5] 11/8 23/5 26/14 42/4 59/11
correctly [1] 4/12
couldn't [3] 7/12 47/6 56/25
counsel [15] 3/9 5/10 7/21 10/4 12/10 18/11 21/1 23/23 24/11 30/17 32/8 32/9 51/4 51/4 57/18
counsel's [1] 3/8
count [1] 17/25
country [2] 29/23 30/8
course [1] 3/17
court [30] 1/1 1/17 3/1 8/20 12/12 20/3 23/19 30/11 31/20 31/21 32/1 33/5 33/7 33/20 33/22 39/3 40/23 41/3 50/21 52/25 53/7 53/9 53/13 53/19 53/19 54/2 54/10 54/16 54/17 54/22
Court's [5] 15/3 39/15 40/12 45/13 47/8
courts [6] 32/3 32/5 51/2 51/5 52/9 52/11
cover [2] 27/22 49/25
CPE [1] 1/17
CRAIG [8] 1/6 3/7 3/20 20/4 34/20 34/21 39/4 39/9
Craig's [1] 21/24

created [1] 47/4
creating [3] 32/10 34/6 40/16
creation [2] 40/8 47/24
credibility [1] 56/23
criminal [1] 25/4
criticizing [1] 16/18
cross [1] 56/21
CRR [2] 1/17 59/17
crucial [1] 31/17
cumulative [1] 48/4 48/18 50/9
currency [1] 8/8
current [2] 36/23 39/9
currently [1] 32/6
cut [1] 42/8

# D

damage [1] 6/4
damages [3] 17/1 17/2 17/6
data [13] 4/10 5/3 5/7 6/13 6/14 7/11 8/12 8/13 8/17 8/21 11/3 11/14 11/15
data's [1] 9/2
databases [1] 21/25
date [8] 4/13 23/16 24/24 32/7 46/1 48/1 56/2 57/17
dated [2] 56/2 59/14
daughter [1] 45/22
Dave [13] 13/21 14/7 17/4 17/12 28/3 34/15 35/3 44/15 46/19 47/10 49/13 55/22 56/13
Dave's [3] 8/11 11/2 57/18
days [6] 23/20 34/5 37/5 37/19 37/25 45/17
de [2] 2/11 2/14
deadline [1] 34/5
deal [3] 29/9 38/19 38/20
death [3] 17/13 34/15 35/3
December [2] 1/8 59/14
decided [3] 52/25 54/1 54/2
decision [4] 31/12 31/13 32/14 32/22
declaration [4] 24/25 39/1 43/8 43/8
dedicate [1] 9/8
defeated [1] 55/2
defendant [3] 1/7 2/10 15/16
defendant's [3] 19/12 30/20 53/10
defendants [1] 5/24
defense [10] 3/6 3/19 52/19 53/22 54/14 54/23 54/24 55/2 55/5 55/11 55/12
defenses [4] 8/1 13/17 21/6 54/4
defer [1] 42/18

**D**

define [1] 27/20
definitely [4] 11/14 12/1 18/9 51/17
definition [1] 23/12
degrees [4] 56/12 56/19 56/25 57/3
deleted [9] 6/4 6/14 7/11 7/11 8/13 11/3 11/14 11/15 11/18
demise [1] 5/22
Denis [6] 38/21 39/1 39/7 39/24 41/13 46/21
Dennis [1] 38/14
depending [1] 16/4
depends [1] 15/1
depose [5] 29/20 30/4 30/9 30/12 32/21
deposed [6] 15/22 15/24 23/9 30/25 31/9 31/11
deposition [17] 16/3 16/8 16/16 16/17 17/18 17/21 17/25 18/6 32/6 32/6 32/8 32/10 33/5 33/8 37/2 37/6 47/4
derivative [1] 55/1
despite [2] 39/6 45/8
detailed [1] 35/10
details [1] 17/18
determine [1] 6/9
developed [3] 34/13 34/14 56/14
device [1] 6/3
devices [15] 4/11 5/20 5/25 6/5 6/24 7/7 7/7 8/9 8/11 8/17 11/1 11/11 14/8 20/15 57/18
dialed [1] 42/12
dialogue [1] 12/24
didn't [14] 10/15 16/12 18/13 20/10 27/22 27/25 32/22 45/11 45/11 48/12 49/3 54/22 54/24 54/25
different [1] 5/13
difficult [1] 49/15
DIGITAL [1] 59/12
digitally [3] 48/25 49/17 50/1
diligence [1] 57/4
diplomas [4] 55/16 55/24 56/11 57/4
direct [1] 41/23
directly [2] 12/3 12/5
discern [1] 17/10
disclosed [1] 31/8
discover [1] 6/3
discovery [25] 1/10 4/3 4/4 12/10 23/20 24/22 25/1 30/24 32/16 32/18 33/23 34/5 35/23 37/5 37/20 47/22 47/25 48/2 49/10 51/11 53/3 55/3 55/4 57/2 59/3
discovery's [1] 24/1
discuss [2] 45/23 58/2
discussing [1] 51/23

discussions [2] 45/18 46/9
dishonest [1] 48/12
disproportionate [3] 24/6 25/25 48/18
dispute [1] 8/18
distinct [1] 40/25
DISTRICT [2] 1/1 1/1
docket [7] 4/4 4/9 7/3 33/13 42/16 44/22 52/2
doctor [1] 56/3
document [12] 13/11 16/13 27/3 27/14 27/21 28/17 28/19 28/22 29/6 49/17 55/25 56/4
documentation [6] 22/17 38/14 41/2 47/18 47/19 55/7
documents [77]
does [2] 23/7 34/23
doesn't [7] 27/15 34/20 37/11 47/9 52/14 53/13 55/1
doing [3] 44/4 52/5 55/13
don't [47] 5/19 9/20 9/22 11/21 12/4 12/22 16/24 18/20 19/21 19/24 20/8 23/14 25/4 25/6 27/23 28/9 28/15 28/19 31/3 33/11 33/13 33/25 35/19 36/14 37/14 37/16 37/17 37/18 37/21 39/3 40/1 41/24 46/15 47/2 47/2 48/6 48/10 49/21 50/23 51/6 51/8 51/14 55/3 56/11 56/23 57/2 57/24
done [6] 9/9 13/25 15/23 34/8 34/9 47/12
down [9] 15/2 15/6 33/17 33/18 34/1 34/5 35/15 37/5 43/24
Dr [2] 16/22 41/2
Dr. [53] 3/20 3/22 6/11 13/20 14/7 15/4 15/10 16/23 17/2 17/10 19/11 19/12 20/5 20/15 20/18 21/1 21/8 21/22 22/5 22/9 22/18 22/22 24/5 25/12 29/15 30/18 31/7 31/24 32/8 32/11 34/13 34/15 34/23 36/1 37/2 47/4 48/25 51/7 51/12 53/17 53/23 53/25 54/6 54/14 54/20 54/21 55/18 55/19 56/1 56/13 56/18 57/3
Dr. Craig [1] 3/20
Dr. Wright [38] 3/22 6/11 13/20 14/7 15/10 16/23 17/2 20/18 21/1 21/22 22/5 22/9 24/5 25/12 30/18 31/7 31/24 32/11 34/13 34/15 34/23 36/1 47/4 48/25 51/7

51/12 53/17 53/23 53/25 54/6 54/8 54/20 54/21 55/18 56/1 56/13 56/18 57/3
Dr. Wright's [14] 15/4 17/10 19/11 19/12 20/5 20/15 21/8 22/18 22/22 29/15 32/8 37/2 54/14 55/19
drafts [1] 52/3
due [1] 57/4
during [2] 17/3 25/6

**E**

e-mail [2] 1/19 10/19
e-mails [2] 20/25 21/1
early [1] 8/18
easy [1] 45/25
Ecuador [1] 42/24
efficient [1] 17/8
either [8] 11/18 13/4 16/2 16/11 19/20 30/11 31/9 48/25
electronic [3] 8/7 8/11 20/15
Eleven [1] 28/2
else [1] 46/20
employee [2] 22/7 23/9
employees [2] 21/23 23/8
enable [1] 12/11
encyclopedic [1] 5/19
end [2] 12/10 52/5
engaged [1] 32/9
engaging [1] 45/12
England [1] 32/2
English [1] 33/4
enough [2] 30/21 37/13
ensure [1] 11/21
entering [1] 8/21
entities [5] 40/8 40/8 40/17 42/17 46/22
entitled [2] 24/22 59/12
entity [1] 34/25
entry [6] 4/4 4/9 7/3 33/13 42/16 44/22
entry 339 [4] 4/4 4/9 33/13 42/16
entry 339-5 [1] 44/22
equally [1] 50/22
Equator [6] 38/25 39/18 40/19 42/24 43/20 46/21
ESQ [5] 2/2 2/5 2/8 2/10 2/13
essentially [6] 7/5 27/6 27/19 33/22 52/2 53/18
established [1] 55/12
estate [1] 13/15
ET [1] 1/3
ethical [1] 29/5
even [9] 5/15 12/20 12/22 16/2 25/11 30/9 49/16 52/17 56/8
event [1] 41/5
eventually [1] 33/1
ever [4] 15/10 23/15

25/13 41/1
every [4] 23/12 23/14 25/12 40/10
everyone [2] 3/2 35/16
everything [5] 26/22 45/4 46/17 46/18 57/14
evidence [7] 14/13 14/18 15/8 17/3 20/23 25/5 48/4
ex [1] 33/4
exact [3] 7/6 45/23 47/6
exactly [3] 8/25 9/20 54/17
examination [1] 30/10
example [7] 11/25 23/9 24/20 45/8 53/8 55/25 56/5
except [2] 34/25 54/22
exchange [1] 28/4
excluded [1] 31/11
exculpatory [1] 25/5
exhibit [2] 34/24 52/10
exist [3] 8/10 15/3 39/3
existed [2] 5/9 14/24
existence [1] 21/18
exists [1] 28/17
exorbitant [1] 33/8
expect [2] 4/14 9/7
expedition [2] 23/12
expended [1] 6/12
expensive [1] 20/10
experience [1] 10/8
expertise [2] 55/19 56/6
explain [1] 7/24
extend [1] 30/24
extensive [2] 14/3
extent [8] 5/8 6/3 13/12 13/24 24/19 47/3 47/20 54/9
external [1] 22/1
extraneous [1] 23/2
extreme [2] 12/23 53/8
extremely [2] 9/6 14/2

**F**

F2 [1] 2/9
fact [3] 32/19 45/8 52/9
facts [2] 24/21 33/3
fair [5] 32/11 32/21 37/13 45/12 51/8
fairness [1] 29/7
fake [3] 40/8 40/24 48/11
falls [1] 31/3
family [3] 5/21 6/7 35/1
far [3] 14/1 18/1 23/5
fault [1] 42/9
February [1] 45/10
feedback [2] 36/10 42/9
feel [1] 41/19
fees [1] 33/8
few [3] 14/3 14/6 34/18
fifth [1] 44/23
fight [1] 30/8
figure [3] 13/25 14/10 40/1

figuring [1] 20/9
file [5] 30/23 37/18 51/10 52/2 53/19
filed [7] 4/4 35/3 35/10 36/2 36/19 41/2 50/21
files [1] 10/23
filing [5] 21/17 23/20 51/3 53/8 53/9
filings [1] 52/1
fill [1] 55/22
financial [1] 15/18
finding [1] 16/24
fine [1] 4/25
finger [1] 22/6
firing [1] 36/12
firm [2] 28/9 35/8
first [20] 7/13 9/2 10/3 12/1 13/10 13/12 14/20 16/15 19/19 30/19 34/19 40/25 41/7 44/10 44/11 44/17 47/4 48/16 49/9 50/16
fishing [1] 23/12
five [3] 45/2 48/23 56/24
FL [4] 2/4 2/7 2/12 2/15
fleshing [1] 54/4
Flexner [1] 2/5
FLORIDA [1] 1/1 1/7 1/18
focus [1] 41/6
follow [2] 18/6 32/22
followed [1] 10/14
following [1] 53/5
foot [1] 30/25
forcing [1] 29/23
foregoing [1] 59/10
foreign [3] 29/22 30/8 34/25
forget [2] 18/1 51/12
format [1] 18/3
former [3] 21/1 21/23 23/7
formerly [1] 38/24
forth [1] 9/19
Forty [1] 50/20
Forty-six [1] 50/20
forward [4] 9/8 9/15 18/20 29/22
found [7] 14/13 25/11 39/3 40/6 40/23 42/9 56/25
Four [1] 32/1
framed [2] 55/16 55/16
Franklin [4] 1/17 59/9 59/16 59/17
frankly [3] 8/25 24/6 56/15
free [1] 41/19
Freedman [34] 2/2 2/2 2/8 3/10 3/12 4/11 8/15 9/18 14/19 14/20 17/9 18/3 18/19 19/17 23/3 26/11 27/8 27/17 29/15 29/15 33/16 36/7 38/15 42/17 43/24 45/1 46/24 49/20 50/5 50/11 50/25

**F**

Freedman... [3] 52/23 56/16 57/9
Freedman's [2] 38/3 52/17
Friday [1] 58/10
front [5] 27/24 30/23 35/19 38/2 38/4
full [7] 9/7 30/10 33/9 34/16 51/10 53/13 53/18
full-time [1] 9/7
future [1] 10/9

**G**

Gables [2] 2/12 2/15
gains [1] 21/16
gaps [1] 55/22
gave [4] 18/3 26/17 44/12 54/16
generated [3] 26/13 26/15 29/3
germane [1] 54/25
gets [4] 15/6 16/23 32/15 37/4
getting [4] 9/9 46/18 47/18 49/12
gist [1] 22/3
give [12] 7/10 10/16 12/18 20/11 24/8 25/5 28/10 40/12 41/23 43/12 46/24 50/11
given [3] 45/12 45/21 47/10
gives [1] 25/14
giving [2] 8/21 58/3
Gizmodo [1] 20/25
goes [4] 17/1 51/19 52/21 56/22
going [60]
good [11] 3/2 3/4 3/12 3/21 3/23 4/1 13/1 24/20 36/16 41/25 42/11
got [6] 16/4 19/14 20/16 51/5 51/6 51/13
gotten [2] 22/16 26/22
granted [2] 32/5 47/24
guess [13] 9/14 19/16 22/15 28/18 29/17 30/22 31/5 36/6 36/18 40/25 47/15 53/2 56/19
guidance [1] 45/14
guys [2] 43/22 57/22

**H**

hack [7] 20/23 20/23 22/1 22/1 22/7 24/5 24/19
hacked [5] 20/19 21/9 21/12 22/17 25/23
hacker [3] 21/3 21/4 21/22
hacking [1] 20/15
half [2] 16/23 54/20
hand [2] 48/25 49/17
handle [1] 33/21
happen [3] 10/8 27/3

happened [2] 8/10 13/25
happening [1] 32/3
happy [5] 3/18 12/19 13/7 17/15 31/1
harassing [1] 56/15
hasn't [6] 4/15 26/18 27/15 28/17 31/9 36/8
hated [1] 25/12
hates [1] 25/13
haven't [6] 23/24 24/23 27/13 37/21 40/11 53/3
having [8] 6/12 16/19 18/10 24/20 37/20 40/1 42/8 52/5
he's [3] 15/24 41/24 51/13
head [2] 19/14 43/24
hear [4] 3/24 10/15 42/11 43/16
heard [5] 10/15 18/18 41/1 44/10 44/11
hearing [6] 1/10 4/3 10/18 10/20 24/12 59/3
hearings [1] 33/20
held [2] 28/4 29/1
Hello [1] 42/6
help [1] 53/21
helpful [2] 18/11 57/17
helps [1] 17/15
here [17] 3/5 4/2 12/22 13/13 23/11 23/13 28/1 29/20 33/2 36/18 38/9 38/16 43/13 51/2 51/2 53/12 54/11
here's [3] 17/20 18/24 50/3
hesitating [1] 28/21
Hi [2] 4/1 42/7
hide [3] 30/7 40/3 40/17
high [2] 12/4 39/20
highly [1] 35/4
hiring [1] 35/8
hit [1] 28/18
hits [2] 50/8 50/9
Hobson's [2] 31/5 31/7
hold [12] 6/20 7/23 11/5 19/13 20/6 28/1 44/19 44/21 48/15 48/19 49/3 54/13
home [2] 14/9 15/18
honestly [1] 41/11
Honor [67]
HONORABLE [1] 1/11
hope [1] 28/12
hoped [1] 9/4
hospital [1] 45/24
hour [1] 4/15
house [5] 15/9 16/4 17/14 18/21 45/10
How's [2] 53/22 53/24
however [3] 4/18 18/1 23/6
huh [21] 6/22 8/24 10/6 10/10 11/8 13/22 14/5 14/14 19/2 21/11 22/3

27/14

happened [2] 8/10 13/25
31/18 31/23 31/25 32/4 38/23 39/5 41/15 44/16 45/15 52/20

**I**

I'd [4] 4/6 43/16 43/16 48/12
I'll [23] 4/7 12/19 13/3 13/7 14/22 17/20 17/24 19/7 19/8 24/8 26/1 29/8 38/1 41/18 43/11 46/24 48/5 48/17 50/11 55/13 55/14 57/4 58/5
I'm [62]
I've [10] 4/5 11/15 25/13 29/1 47/22 47/24 54/19 54/20 56/6 57/8
idea [2] 22/15 35/3
identified [3] 43/6 43/9 43/9
identify [2] 41/9 43/20
II [1] 39/2
image [1] 24/16
imaged [1] 23/22
images [1] 7/6
imagine [3] 23/12 53/7 53/9
immediate [1] 58/3
immediately [1] 12/8
importance [2] 5/6 41/17
important [6] 5/12 9/2 9/6 9/8 11/18 57/19
inaudible [4] 24/11 42/5 43/6 43/7
inclined [1] 40/12
including [1] 45/17
inclusion [1] 39/6
incorporated [1] 40/19
incredibly [2] 49/18 49/22
independent [3] 30/16 35/8 35/8
indicated [1] 42/21
individual [2] 39/4 40/7
individuals [3] 23/6 38/21 46/23
influence [1] 32/22
Info [1] 3/6
informa [1] 31/17
information [7] 21/5 22/24 24/23 31/19 35/10 35/24 47/23
initial [2] 9/2 53/6
initially [1] 5/5
input [1] 12/1
instance [1] 19/4
instructed [1] 16/11
intellectual [7] 34/12 34/13 34/14 35/25 54/6 54/7 56/13
intellectually [1] 48/12
intended [1] 47/22
intentional [1] 53/11
interest [2] 28/3 41/13
interim [1] 58/1

internal [3] 21/25 21/25 22/1
interpersonal [1] 20/5
interrog [1] 38/18
interrogatories [4] 17/23 18/2 34/4 35/19
interrogatory [9] 16/2 17/22 18/5 34/11 34/12 34/16 35/7 35/12 37/18
intervention [1] 12/13
intimately [2] 39/11 40/7
introduce [1] 17/2
inventor [1] 34/21
inventors [1] 34/22
investigation [2] 25/6 25/7
involved [5] 24/18 39/7 39/12 40/8 40/16
IP [2] 33/21 33/23
IRA [20] 1/3 3/6 6/4 11/1 11/11 11/17 14/1 14/8 14/11 14/13 14/21 15/8 15/22 16/13 17/5 17/11 17/23 18/25 25/18 54/15
Ira's [1] 45/9
irrelevant [5] 15/4 15/19 20/4 24/3 24/7
isn't [1] 45/1
issue [44] 4/12 4/21 5/3 5/6 5/12 5/20 6/23 9/15 11/20 13/9 13/12 13/14 15/19 16/9 16/25 17/1 17/23 18/24 20/17 20/19 23/11 24/3 25/17 25/19 31/4 32/20 32/20 34/6 36/3 36/8 36/18 36/21 37/2 42/13 45/2 45/7 45/20 46/13 51/20 54/1 54/25 55/20 56/6 57/1
issued [2] 31/21 33/4
issues [15] 6/2 12/23 13/2 14/25 20/5 29/14 37/4 40/15 42/8 42/18 44/9 45/14 49/23 55/23 57/9
it's [38] 7/3 14/21 15/4 15/4 16/21 17/6 19/10 22/6 23/1 26/7 26/8 26/18 27/7 28/15 30/20 32/16 32/17 32/20 37/25 38/11 38/17 38/18 42/21 44/24 45/1 45/16 51/1 51/2 51/8 52/6 52/11 52/17 53/12 56/7 56/8 56/14 56/23 57/2

**J**

Jamie [3] 23/9 24/19 24/21
January [1] 32/7
January 16th [1] 32/7
join [1] 3/16
joint [2] 4/3 4/6
judge [14] 1/12 15/2

16/22 30/23 31/4 31/6 31/12 32/15 32/20 32/24 33/1 42/7 52/17 53/2
judgment [3] 53/14 53/15 54/7
judicata [10] 51/7 52/19 52/25 53/22 54/10 54/23 54/24 55/2 55/5 55/11 55/14 55/24 56/9 57/12
July [3] 44/6 44/24 49/8
July 2nd [1] 44/24
jumped [1] 10/18
jury [1] 31/10
just [63]

**K**

Kass [28] 2/10 3/20 3/21 4/20 5/16 7/24 9/1 9/14 12/21 13/16 15/22 20/13 24/8 26/5 26/20 32/19 42/21 43/17 44/2 44/4 44/24 45/22 49/2 50/6 51/16 53/24 56/9 57/12
Kass' [1] 45/8
keep [2] 36/4 58/3
keeping [1] 29/24
Kenny [1] 36/14
kept [1] 7/1
key [1] 40/15
keys [1] 8/8
keywords [1] 20/1
kick [3] 34/1 34/4 35/14
kicked [1] 37/5
kill [1] 36/14
kind [1] 50/5
kinda [1] 45/5
kinds [1] 13/1
KLEIMAN [31] 1/3 3/6 6/4 11/1 13/15 14/1 14/7 14/8 14/11 14/22 15/22 16/3 16/23 17/4 17/5 17/6 17/11 17/24 22/13 23/24 25/18 28/3 44/15 46/19 47/10 49/13 54/15
Kleiman's [7] 4/10 5/21 11/11 13/21 17/13 34/15 35/3
know [61]
knowledge [1] 20/24
knows [1] 31/20
Kyle [2] 2/8 3/25

**L**

large [3] 45/6 52/5 54/5
last [6] 24/9 25/2 32/11 44/10 46/25 55/15
late [2] 48/1
later [3] 12/20 32/1 33/15
law [1] 36/4
lawsuit [5] 20/16 23/13 25/20 30/16 40/3
lawyer [1] 12/2
lawyers [4] 9/6 29/6 30/8 33/6
lead [1] 25/21
least [16] 4/12 7/19 9/18

**L**

least... [13] 13/10 13/12 20/11 40/13 42/1 42/22 43/25 46/10 50/11 50/16 57/1 57/9 57/13

leave [1] 29/9

left [4] 21/13 32/14 33/11 52/18

legal [1] 29/23

legally [1] 25/16

Leon [2] 2/11 2/14

let [35] 4/9 4/11 6/20 7/17 8/14 10/8 11/5 12/24 13/3 13/16 14/19 15/21 16/20 18/20 20/6 20/13 25/3 26/11 27/16 29/14 31/5 32/23 35/18 36/6 36/11 38/7 39/17 40/18 43/12 44/2 44/25 46/12 46/14 53/2 53/24

let's [7] 13/11 18/12 26/3 33/12 40/1 41/6 57/21

lets [1] 20/3

letters [2] 31/21 31/21

light [2] 41/1 48/4

likelihood [1] 55/10

likely [3] 20/20 21/19 22/6

limit [1] 33/8

limitation [1] 11/13

limited [6] 16/16 17/22 23/19 43/19 43/23 47/8 50/14 55/8

limiting [1] 27/5

line [2] 37/5 41/24

lines [1] 43/25

liquidate [2] 14/22 17/17

liquidated [1] 15/9

list [3] 23/6 23/7 23/13

listed [5] 23/6 25/18 34/21 34/23 48/9

listen [1] 37/12

literally [2] 28/23 29/21

litigate [1] 33/10

litigation [4] 14/3 45/6 49/24 51/3

little [2] 9/4 49/15

live [1] 41/4

LLP [5] 2/2 2/5 2/8 2/11 2/14

local [1] 44/5

locate [1] 5/24

located [1] 40/6

location [3] 5/8 39/9 40/6

log [1] 52/5

London [2] 32/8 37/6

long [1] 5/20

longer [1] 9/4

looked [1] 30/20

looking [6] 7/25 8/4 9/20 44/19 44/21 46/8

looks [3] 4/11 26/10 33/14

lost [3] 6/9 36/15 41/12

lot [10] 6/16 6/16 19/24 34/24 35/4 35/5 41/5 45/17 51/18 52/6

lots [2] 35/24 49/14

LTD [1] 39/4

**M**

MAGISTRATE [1] 1/12

mail [2] 1/19 10/19

mailings [1] 19/1

mails [2] 20/25 21/1

makes [2] 5/12 21/18

making [1] 33/21

manipulation [1] 53/12

manner [1] 12/12

marker [2] 33/17 33/19

Markoe [18] 2/13 3/22 3/23 4/20 20/13 36/25 42/21 43/17 44/2 46/14 47/21 49/2 50/6 51/15 53/24 56/9 57/12 58/10

massive [1] 29/23

material [1] 8/18

materials [1] 35/5

math [1] 48/21

matter [4] 23/2 54/19 55/1 59/13

May 13th [1] 43/8

May 8th [1] 43/8

Mayaka [16] 38/15 38/22 39/1 39/24 40/19 41/1 41/13 42/16 42/19 42/24 43/6 43/20 46/21 47/11 47/20 48/2

Mayaka's [1] 39/7

maybe [15] 16/25 23/15 23/15 24/4 24/4 37/17 43/19 43/21 50/8 50/8 51/15 52/12 52/13 53/21 57/17

me [51] 4/9 4/11 4/13 4/23 6/20 7/17 7/24 8/14 9/23 11/5 13/16 14/19 15/21 16/20 17/1 17/16 20/6 20/13 23/14 25/3 26/11 27/16 29/14 29/15 29/18 31/5 31/12 32/15 33/14 33/16 35/18 35/19 36/6 36/11 36/20 38/2 38/3 38/4 38/7 39/17 40/18 43/12 44/2 44/25 46/12 46/14 53/21 53/24 54/16 55/1 56/24

mean [18] 16/21 16/21 20/4 24/3 25/4 29/21 30/19 30/19 37/11 39/15 39/25 48/8 49/24 50/1 53/7 53/8 55/1 56/5

meaning [2] 27/5 44/22

meaningful [1] 55/11

mechanisms [1] 55/2

meet [9] 12/19 13/4 13/10 26/21 27/18 44/7 45/19 57/17 58/5

memo [3] 4/4 4/6 14/12

memory [2] 7/18 35/20

mention [8] 18/9 23/7 39/18 39/19 39/20 39/24 40/13 43/15

mentioned [4] 14/3 33/20 41/16 44/5

Merit [1] 59/9

merits [3] 46/14 46/16 46/17

Mestre [2] 2/11 2/14

Mestre's [1] 44/23

methods [1] 11/20

Miami [2] 2/4 2/7

microphone [3] 5/1 38/10 38/11

might [6] 14/17 25/21 36/8 40/10 43/19 44/1

millions [1] 28/23

mind [1] 34/9

mined [1] 17/3

minimal [1] 24/12

minute [4] 3/11 10/19 25/2 32/11

mischaracterize [1] 34/8

missing [3] 13/24 52/12 53/10

misunderstandings [1] 19/5

mitigation [2] 17/2 17/5

modified [3] 12/11 21/13 25/23

modify [2] 12/15 21/17

moment [3] 9/1 20/21 35/1

monetize [1] 14/5

money [4] 6/12 6/17 16/4 17/18

month [1] 49/11

months [4] 32/1 45/2 45/2 45/18

months-worth [1] 45/18

moot [2] 4/12 54/18

most [2] 17/7 22/6

motion [3] 24/25 30/23 37/18

move [1] 33/6

moved [1] 15/5

movies [1] 6/5

Mr [6] 3/21 14/21 36/6 36/12 40/18 51/7

Mr. [87]

Mr. Brenner [2] 3/14 3/17

Mr. Freedman [25] 3/12 4/11 8/15 14/19 14/20 17/9 18/19 19/17 23/3 26/11 27/8 29/15 33/16 36/7 38/15 42/17 43/24 45/1 46/24 49/20 50/5 50/25 52/23 56/16 57/9

Mr. Freedman and [2] 27/17 50/11

Mr. Freedman just [1] 18/3

Mr. Freedman points [2] 9/18 29/5

Mr. Freedman's [2] 38/3 52/17

Mr. Kass [25] 4/20 5/16 7/24 9/1 9/14 12/21 13/16 15/22 20/13 24/8 26/5 26/20 32/19 42/21 43/17 44/2 44/4 44/24 45/22 49/2 50/6 51/16 53/24 56/9 57/12

Mr. Kass' [1] 45/8

Mr. Kleiman [7] 13/15 16/23 17/6 22/13 23/24 54/15 54/20

Mr. Kleiman's [2] 4/10 5/21

Mr. Mayaka [10] 40/19 41/1 42/16 42/19 42/24 43/6 43/20 47/11 47/20 48/2

Mr. Roche [8] 4/1 36/15 41/11 41/20 42/7 45/22 51/22 51/25

Mrs. [1] 32/6

Mrs. Watts' [1] 32/6

Ms [1] 36/14

Ms. [24] 3/23 4/20 20/13 29/20 30/4 30/6 30/15 30/24 31/7 32/9 33/5 36/25 42/21 43/17 44/2 46/14 47/21 49/2 50/6 51/15 53/24 56/9 57/12 58/10

Ms. Markoe [16] 3/23 4/20 20/13 36/25 42/21 43/17 44/2 46/14 47/21 49/2 50/6 51/15 53/24 56/9 57/12 58/10

Ms. Watts [8] 29/20 30/4 30/6 30/15 30/24 31/7 32/9 33/5

much [3] 15/19 22/1 50/14

myself [2] 16/20 51/25

**N**

Nakamoto [3] 40/14 49/1 49/23

name [4] 42/24 42/25 42/25 52/2

narrow [1] 40/15

narrower [1] 15/20

nature [2] 42/23 43/15

nChain [1] 34/24

necessarily [1] 42/24

need [8] 4/8 5/12 16/5 19/6 46/21 53/4 55/23 56/20

needed [1] 34/6

needs [2] 24/6 48/3

negotiated [3] 28/6 43/4 43/10

negotiating [3] 13/1 41/8 42/19

negotiations [2] 45/13 46/11

never [10] 10/15 14/2

15/5 15/10 37/19 38/4 44/12 44/13 45/7 49/10

next [5] 4/15 9/13 13/7 13/14 19/10

night [1] 44/10

no [17] 1/2 3/12 14/13 15/8 16/23 18/13 18/16 19/5 20/23 23/5 28/19 33/18 36/16 36/22 46/7 50/8 58/9

nodding [1] 43/24

none [4] 18/21 23/21 23/22 59/6

nonparty [1] 30/15 34/25

nonprivilege [1] 26/14

nonprivileged [1] 28/5

note [1] 48/21

nothing [2] 25/15 38/4

notify [1] 12/8

November [1] 9/3

November 27th [1] 9/3

number [15] 3/6 13/15 17/22 17/25 19/11 25/19 26/2 27/24 34/11 35/7 38/8 41/23 42/14 43/19 52/2

number 1 [1] 35/7

number 11 [1] 27/24

number 12 [1] 34/11

number 13 [1] 42/14

number 18-80176 [1] 3/6

number 20 [1] 13/15

number 3 [3] 19/11 25/19 26/2

number 5 [1] 38/8

NY [1] 2/9

**O**

obfuscate [2] 39/9 40/6

object [8] 15/7 17/19 27/25 28/15 33/15 37/21 37/22 56/10

objected [4] 14/16 16/19 45/11 56/8

objecting [3] 19/14 19/15 37/4

objection [16] 19/20 26/2 27/6 37/21 37/22 47/15 47/16 48/5 48/18 49/3 50/4 50/7 50/22 55/14 55/14 57/5

objections [11] 19/12 34/4 36/2 36/19 36/20 44/6 44/23 45/23 57/6 57/7 57/13

obligation [5] 25/5 25/7 25/8 27/23 28/20

obligations [1] 35/17

obtain [1] 25/6

obtained [1] 52/8

obviously [8] 15/7 41/4 47/7 48/12 49/25 53/8 54/3 56/5

occasions [1] 10/15

## O

**occur** [4] 13/24 22/7 23/1 57/18
**occurred** [3] 41/5 46/9 56/1
**off** [7] 23/13 35/20 36/11 42/8 55/18 58/10 58/12
**offer** [1] 30/6
**Official** [1] 1/17
**often** [1] 34/22
**Oh** [4] 16/10 35/21 36/4 38/11
**okay** [73]
**once** [3] 11/15 18/5 21/16
**one** [24] 6/3 13/4 13/19 18/9 19/10 21/18 21/18 22/7 23/4 23/9 31/16 32/23 33/13 34/22 35/1 44/3 44/4 44/19 44/21 48/9 52/17 55/15 55/25 56/5
**ongoing** [1] 23/23
**online** [1] 20/24
**only** [11] 5/4 8/10 11/9 27/2 27/5 29/2 34/12 34/22 38/2 52/23 55/8
**open** [2] 16/25 51/2
**opened** [1] 32/2
**opening** [1] 45/9
**operated** [1] 27/10
**operating** [2] 27/17 27/20
**operation** [1] 47/24
**opportunity** [3] 15/17 29/20 50/12
**oppose** [4] 9/11 9/11 9/22 31/24
**opposing** [4] 10/4 18/11 24/10 57/18
**order** [19] 3/1 8/22 9/23 12/6 12/15 15/3 16/21 17/24 19/19 30/11 33/4 33/7 46/8 52/18 53/10 53/14 54/18 55/6 58/5
**ordered** [1] 47/19
**otherwise** [2] 53/6 56/20
**ought** [1] 29/7
**our** [15] 5/7 9/5 10/22 11/21 13/23 27/18 33/22 34/16 35/7 39/16 44/17 51/4 52/8 54/4 57/17
**outcome** [1] 15/2
**outer** [1] 27/12
**outlook** [1] 33/23
**over** [11] 5/1 8/23 28/19 30/21 32/2 35/11 43/14 51/9 53/15 53/20 54/10
**overlap** [2] 34/24 48/13
**overlaps** [1] 48/7
**overrule** [4] 19/8 47/14 55/13 57/5
**overwritten** [1] 6/13
**own** [4] 11/17 30/17 32/9 34/23
**ownership** [2] 28/3 41/3

**owns** [1] 34/25

## P

**p.m** [1] 44/10
**page** [5] 1/15 4/9 33/13 39/22 42/15
**page 2** [1] 4/9
**Page 22** [1] 39/22
**page 8** [2] 33/13 42/15
**pages** [2] 4/18 42/15
**pages 8** [1] 42/15
**Palm** [2] 1/7 1/18
**paradigm** [1] 15/12
**parameters** [1] 43/12
**paraphrasing** [1] 47/7
**parte** [1] 33/4
**particular** [5] 10/1 19/1 22/6 49/15 55/25
**parties** [12] 9/19 12/25 20/1 20/8 26/4 29/2 41/8 42/19 43/11 45/4 45/5 45/12
**partly** [1] 45/3
**partnership** [1] 56/14
**party** [4] 25/13 30/16 30/16 53/18
**past** [1] 10/7
**patent** [1] 35/8
**patents** [13] 34/18 34/19 34/20 34/22 34/23 34/23 34/25 35/1 35/2 35/9 35/11 35/11 35/24
**pay** [3] 29/24 30/8 33/7
**people** [15] 19/13 21/13 21/22 21/24 22/13 22/17 22/21 23/13 24/17 24/18 25/11 25/18 43/15 47/6 51/13
**perhaps** [1] 30/23
**period** [4] 11/16 17/4 30/24 37/22
**permitted** [1] 30/2
**person** [1] 22/6
**perspective** [1] 55/4
**persuaded** [1] 53/5
**pertains** [2] 21/7 22/25
**pertinence** [1] 35/4
**phase** [1] 6/11
**phone** [6] 3/24 36/14 36/15 41/20 45/22 51/23
**phonecall** [1] 12/20
**photos** [1] 6/7
**physical** [2] 6/24 7/7
**piece** [1] 31/19
**place** [7] 5/13 6/25 12/17 32/7 40/5 45/4 52/18
**plaintiff** [2] 25/22 40/23
**plaintiff's** [5] 38/7 53/17 54/5 55/23 55/23
**plaintiffs** [35] 1/4 2/2 3/9 3/10 3/15 3/25 5/4 5/23 7/13 10/11 10/24 11/17 12/1 12/3 12/8 14/2 14/12 20/22 21/5 22/16 22/20 22/24 24/4

**24/23 28/5 31/19 32/8 33/14 34/20 35/23 44/7 47/23 50/23 52/9 52/11
**planning** [1] 24/25
**play** [2] 53/23 53/25
**plays** [2] 55/5 55/5
**pleading** [1] 26/21
**pleadings** [1] 52/3
**please** [2] 3/3 10/12
**point** [15] 10/1 11/13 14/12 20/21 31/17 33/11 37/9 38/3 44/3 44/4 48/1 51/24 54/4 55/4 55/12
**points** [4] 9/18 14/3 29/5 47/21
**Ponce** [2] 2/11 2/14
**posing** [1] 50/17
**position** [2] 13/23 46/16
**possession** [3] 5/21 7/16 28/8
**possible** [1] 53/13
**possibly** [1] 46/21
**posture** [1] 12/9
**potential** [4] 18/10 23/23 23/24 48/13
**potentially** [1] 47/2
**practical** [1] 54/19
**preclude** [1] 50/16
**preexisted** [1] 17/12
**prefer** [1] 19/4
**prejudice** [1] 50/4
**preliminary** [1] 16/17
**prepare** [1] 32/10
**preparing** [1] 5/11
**presence** [1] 39/16
**present** [3] 23/18 30/5 57/15
**presented** [1] 32/20
**presiding** [1] 31/6
**presumably** [1] 17/2 21/5 22/25 30/17
**presume** [1] 52/23
**presuming** [1] 18/15
**pretty** [3] 13/1 51/24 56/7
**previous** [2] 33/20 48/13
**previously** [5] 14/24 23/19 41/13 57/7 57/14
**primary** [1] 13/19
**principle** [1] 27/20
**principles** [1] 27/17
**prior** [10] 16/8 34/15 48/16 50/14 51/3 53/9 53/15 56/2 56/2 56/3
**priority** [2] 10/5 10/12
**private** [2] 8/8 20/25
**privilege** [9] 7/14 7/19 11/20 11/21 11/24 12/5 12/7 12/23 52/5
**privileged** [3] 12/2 26/23 46/18
**probability** [1] 12/5
**probably** [2] 27/22 56/25
**probe** [1] 42/25
**problem** [3] 3/12 23/17

**51/25
**problematic** [1] 53/16
**procedure** [4] 5/13 12/17 32/2 32/11
**proceeding** [1] 54/17
**proceedings** [4] 1/10 50/21 58/14 59/12
**process** [3] 24/2 48/2 53/5
**produce** [17] 5/13 9/9 14/17 27/2 27/4 27/23 29/2 30/12 30/13 30/15 30/18 49/5 49/24 51/9 53/19 57/3 58/1
**produced** [10] 4/15 4/15 26/12 27/13 28/5 50/10 51/12 51/13 51/17 53/15
**product** [1] 52/4
**production** [17] 9/3 10/16 13/14 18/20 19/11 25/19 26/1 26/2 29/10 38/8 38/19 38/20 44/24 47/19 48/16 48/19 53/10
**productions** [3] 38/13 42/14 48/17 48/22
**professional** [1] 29/5
**promptly** [1] 50/6
**property** [7] 34/13 34/14 34/14 35/25 54/6 54/7 56/13
**proportional** [1] 48/3
**proportionate** [1] 52/15
**propose** [2] 50/5 50/12
**proposed** [1] 44/12
**proposing** [1] 52/1
**protective** [2] 8/22 12/15
**protocol** [4] 6/25 7/1 7/6 7/9
**protracted** [1] 45/13
**prove** [3] 25/21 52/24 55/8
**provide** [4] 5/14 7/12 36/2 44/8
**provided** [4] 5/4 5/4 29/7 31/20
**providing** [3] 21/4 22/24 44/13
**public** [3] 15/15 20/23 51/3
**publicly** [1] 35/5
**published** [1] 35/11
**pull** [1] 5/1
**purchase** [1] 14/9
**purchased** [1] 15/19
**purportedly** [1] 56/14
**purpose** [1] 29/4
**purposely** [1] 47/5
**purposes** [2] 52/25 57/2
**put** [8] 6/25 11/1 11/17 19/20 25/10 31/5 31/7 42/17
**puts** [1] 35/11
**putting** [2] 29/22 33/17 33/18

## Q

**question** [18] 9/13 14/24 17/8 17/9 19/16 19/19 29/17 32/15 32/16 32/17 32/18 32/18 40/25 41/7 42/17 51/16 55/21 56/4
**questioning** [1] 16/3
**quick** [1] 13/9
**quicker** [1] 12/12
**quote** [2] 28/4 28/8

## R

**racking** [1] 29/23
**radio** [1] 10/17
**raise** [2] 45/11 57/10
**raised** [4] 9/5 10/24 45/7 56/6
**random** [1] 24/17
**read** [3] 4/12 26/11 49/3
**readdress** [1] 37/2
**real** [1] 13/15
**really** [17] 5/7 6/2 8/9 12/9 12/11 14/9 19/4 23/14 28/15 32/15 35/12 40/24 45/7 46/20 51/19 52/5 52/11
**realties** [1] 30/20
**Realtime** [1] 59/10
**reason** [5] 19/25 27/11 36/16 46/7 56/10
**reasonable** [2] 12/21 13/5
**recall** [4] 21/8 35/23 47/17 49/6
**receive** [2] 10/20 17/16
**received** [4] 4/3 9/2 21/3 24/24
**receiving** [1] 19/1
**recess** [2] 31/10 58/12
**recessing** [1] 31/10
**recollection** [8] 5/19 41/4 41/19 42/1 42/22 43/1 43/2 45/20
**reconsidering** [1] 53/9
**record** [4] 33/2 33/9 53/13 58/13
**RECORDING** [1] 59/12
**recover** [2] 6/13 8/12
**recovered** [6] 4/10 5/3 7/13 11/10 11/15 14/10
**reference** [1] 55/18
**reflecting** [1] 7/19
**refreshing** [1] 7/17
**regard** [2] 34/11 34/18
**regarding** [2] 38/14 41/3
**regards** [1] 42/4
**Registered** [1] 59/9
**REINHART** [2] 1/11 42/7
**relate** [5] 21/6 42/16 47/10 49/1 49/18
**related** [15] 15/14 19/1 23/1 28/6 29/14 34/13 34/14 42/17 43/6 44/14 44/15 45/9 46/21 47/18

**R**

**relates [8]** 22/25 46/19
46/19 46/20 46/22 47/23
47/25 50/20
**relating [8]** 4/10 13/15
24/21 28/2 35/24 42/2
42/18 47/19
**released [1]** 11/7
**relevance [10]** 7/25 15/7
15/11 20/14 21/21 25/20
25/25 38/16 39/25 56/11
**relevant [15]** 13/17
14/24 14/25 16/21 17/4
17/7 17/11 23/16 25/19
28/15 39/12 40/3 40/22
47/12 48/11
**reliance [1]** 55/22
**remedy [1]** 32/17
**remember [5]** 6/23
12/22 27/24 37/19 47/6
**remembering [1]** 8/2
**repeat [1]** 5/3
**Reporter [4]** 1/17 1/17
59/9 59/10
**reporting [1]** 7/10
**represent [1]** 17/16
**representation [3]** 19/25
32/19 33/3
**represented [1]** 30/17
**request [34]** 4/2 4/10
5/22 9/10 13/14 14/16
15/13 16/13 18/19 19/7
19/8 19/11 19/11 19/12
19/15 20/4 25/19 26/2
28/6 32/5 38/8 38/13
38/14 42/14 44/23 45/9
48/16 48/17 48/19 48/22
49/14 53/17 53/18 56/20
**requesting [1]** 11/6
**requests [6]** 9/17 15/14
35/24 38/18 38/20 44/20
**require [2]** 26/1 43/14
**required [1]** 29/2
**requiring [2]** 29/9 33/5
**rerun [3]** 43/19 48/1
48/2
**res [10]** 51/7 52/19
52/25 53/22 54/10 54/23
54/24 55/2 55/4 55/11
**research [2]** 3/6 14/1
**reserve [4]** 33/15 37/11
37/14 50/7
**reserving [2]** 36/7 37/1
**reside [1]** 6/13
**resolve [5]** 4/21 13/5
13/9 25/17 44/9
**resolved [2]** 13/13 36/19
**resolving [1]** 13/1
**resources [1]** 9/9
**Respectfully [1]** 28/8
**respond [3]** 8/15 20/12
35/7
**responded [4]** 17/24
36/2 36/19 46/12
**response [8]** 10/15 18/19
26/12 26/12 27/5 27/7

28/4 44/23
**responses [2]** 9/17 36/3
**responsive [6]** 19/20
19/22 27/2 27/4 27/14
28/5
**rest [3]** 13/6 15/9 22/9
**results [1]** 27/11
**retain [1]** 51/4
**retained [2]** 33/6 51/4
**review [8]** 7/14 7/19
8/22 9/4 10/18 15/17
24/3 26/18
**reviewed [2]** 4/3 4/5
**reviewing [1]** 23/7
**rid [1]** 40/5
**right [50]** 3/5 4/2 4/20
5/16 6/8 6/25 7/18 8/14
8/19 9/12 10/13 13/11
14/23 15/21 17/8 18/23
19/10 19/13 21/15 23/3
24/8 26/8 28/12 32/3
33/15 34/10 35/18 36/24
37/2 37/11 37/19 38/7
38/11 38/13 44/25 45/25
48/6 48/19 49/6 49/7
50/3 53/18 55/6 55/15
56/9 56/22 57/6 57/12
57/22 58/12
**rights [1]** 54/15
**Rivero [3]** 2/11 2/14
44/22
**RMR [2]** 1/17 59/17
**road [3]** 34/1 34/5 35/15
**Roche [13]** 2/2 2/8 2/8
3/25 4/1 36/12 36/15
41/11 41/20 42/7 45/22
51/22 51/25
**rogatory [2]** 31/21 31/22
**rolling [1]** 10/16
**room [2]** 45/21 45/24
**rule [5]** 4/7 13/3 19/18
36/20 44/5
**ruled [2]** 57/9 57/14
**rules [2]** 37/18 37/20
**ruling [3]** 26/9 29/1
48/15
**rulings [1]** 57/8
**run [11]** 11/24 12/1 18/11
24/2 26/18 47/13 50/7
50/8 50/9 50/12 57/1
**running [2]** 26/13 52/4

___

**S**

**salience [1]** 41/17
**salient [1]** 49/23
**same [5]** 10/12 26/5 26/7
26/8 26/9
**sanctions [2]** 15/3 54/25
**Satoshi [3]** 40/14 49/1
49/22
**savings [1]** 17/17
**say [10]** 11/16 20/8
20/11 27/9 34/20 36/1
37/10 37/11 40/1 47/2
**saying [4]** 10/20 17/13
28/14 32/13

**says [2]** 12/2 39/18
**schedule [2]** 12/19 13/8
**scheduled [1]** 32/6
**scheme [5]** 39/12 40/2
40/2 40/4 40/24
**Schiller [1]** 2/5
**Schneur [1]** 2/10
**scope [2]** 30/10 33/8
**search [53]** 5/22 12/2
15/17 24/2 26/13 26/15
26/17 26/23 27/2 27/6
27/11 27/12 27/15 27/20
27/22 28/7 28/18 29/3
29/4 29/8 29/11 35/8
35/9 40/20 41/6 41/10
41/10 42/2 42/20 42/22
43/4 43/10 43/19 43/23
44/8 44/12 47/8 47/12
47/17 47/21 48/10 48/11
48/9 49/14 49/24 50/6
50/12 50/13 50/17 51/19
51/24 52/1 52/4
**searched [1]** 27/12
**searching [1]** 49/16
**seat [1]** 3/2
**seated [1]** 4/25
**second [8]** 5/18 6/11
6/21 7/23 20/7 41/18
43/12 44/21
**secretly [1]** 22/24
**Secure [1]** 39/21
**seeking [3]** 23/18 35/24
36/20
**seem [3]** 9/19 17/1 43/12
**seems [6]** 9/18 12/7 24/5
30/1 36/16 55/18
**seen [3]** 25/13 40/11
41/14
**sending [1]** 7/13
**sense [1]** 9/20
**sensitive [4]** 8/17 10/24
10/25 11/1
**sent [2]** 10/11 10/19
**separate [2]** 10/14 38/20
**served [2]** 44/24 45/10
**set [3]** 7/9 27/12 33/7
**settlement [5]** 45/4
45/18 46/9
**Seventeen [1]** 48/6
**several [1]** 34/22
**SFranklinUSDC [1]**
1/19
**share [1]** 53/13
**shared [1]** 53/3
**she's [3]** 30/16 30/19
31/11
**shell [4]** 40/8 40/14
40/16 47/3
**shielding [1]** 29/22
**shocked [1]** 5/19
**shortly [3]** 14/6 46/9
51/18
**should [8]** 15/14 46/1
47/13 51/10 51/15 53/22
54/15 56/7
**shouldn't [2]** 30/2 51/9

**show [2]** 5/8 18/22
**shown [1]** 47/11
**shows [1]** 31/8
**sic [1]** 45/20
**side [2]** 29/8 53/22
**sides [3]** 12/10 23/21
29/2
**signed [4]** 48/25 49/17
49/17 50/1
**significant [2]** 6/12
47/23
**silence [1]** 10/17
**similar [1]** 9/8
**simple [2]** 20/9 56/7
**simply [3]** 10/23 16/22
32/11
**since [2]** 5/20 45/2
**single [1]** 23/13
**sit [1]** 12/22
**situation [1]** 27/14
**six [2]** 45/2 50/20
**small [1]** 5/5
**soil [1]** 30/25
**sold [1]** 39/4
**solely [1]** 30/24
**solution [1]** 18/10
**solve [1]** 12/12
**somebody [4]** 3/24
21/16 25/13 39/11
**somehow [2]** 15/8 29/8
**something [14]** 16/1
36/16 37/11 37/15 37/20
40/15 40/21 43/25 44/4
47/9 47/12 52/12 52/13
55/10
**sometimes [4]** 10/7 10/8
18/10 20/8
**soon [1]** 9/5
**sorry [9]** 5/16 5/25
38/19 42/8 42/15 49/3
51/21 58/9 58/11
**sort [3]** 9/14 24/24 32/23
**sound [1]** 36/10
**source [3]** 18/10 18/16
19/5
**South [1]** 2/3
**Southeast [1]** 2/6
**SOUTHERN [1]** 1/1
**speak [1]** 41/12
**specific [1]** 17/22
**specifically [7]** 8/12
9/23 21/1 21/2 27/21
33/21 48/3
**specifics [1]** 17/23
**specified [1]** 37/22
**spent [3]** 6/16 17/5
17/12
**spit [3]** 26/23 29/8 29/10
**spoke [1]** 23/10
**spot [1]** 36/13
**staff [1]** 48/21
**stalled [1]** 45/5
**start [1]** 19/16
**started [1]** 23/13
**starting [1]** 3/8
**starts [1]** 25/13

**stash [1]** 40/5
**state [4]** 16/19 21/2 21/2
54/5
**stated [3]** 5/10 10/4
49/13
**statement [1]** 15/13
**statements [1]** 18/25
**STATES [4]** 1/1 1/12
29/21 30/1
**stating [1]** 11/17
**stay [4]** 4/25 32/23
**steals [1]** 25/14
**step [4]** 8/16 11/5 35/19
50/16
**Stephen [4]** 1/17 59/9
59/16 59/17
**stepping [1]** 45/21
**steps [1]** 30/25
**still [5]** 16/25 37/3 41/24
49/10 54/3
**stipulate [1]** 56/18
**stole [2]** 13/20 54/6
**stop [2]** 6/20 44/25
**stopped [1]** 9/6
**stored [5]** 6/5 8/8 8/8
14/8 15/9
**Street [2]** 1/18 2/6
**strike [5]** 54/22 54/24
**striking [1]** 15/2
**struck [2]** 8/20 15/6
**struggling [1]** 17/7
**stuff [2]** 11/18 21/17
**stumble [2]** 12/6 29/6
**submitted [3]** 28/8 35/23
39/1
**subset [3]** 5/5 26/17
40/15
**substantial [1]** 47/25
**such [5]** 11/24 23/9
25/24 25/24 28/19
**sudden [1]** 10/18
**suddenly [1]** 14/8
**sued [1]** 15/10
**suggested [1]** 25/20
**suggesting [1]** 37/16
**suggestion [2]** 7/20 47/8
**suggestions [1]** 12/12
**Suite [4]** 2/3 2/6 2/12
2/15
**sums [1]** 6/12
**sundown [1]** 58/6
**support [1]** 3/18
**suppose [2]** 15/6 15/11
**supposed [1]** 19/20
**sure [21]** 7/18 8/3 8/25
9/10 9/10 10/2 13/18
15/25 16/7 19/5 28/14
28/16 35/15 35/21 37/3
38/17 46/20 49/16 53/4
56/8 57/20
**suspect [1]** 35/4
**suspects [1]** 21/22
**sustain [7]** 26/2 47/15
48/5 48/14 48/17 50/4
55/14
**swore [2]** 48/25 49/18

WITNESS NAME   Index: sworn..well

## S

sworn [2]  39/1 50/1

## T

take [7]  8/16 20/21 21/17 28/19 28/21 32/7 52/6
taken [1]  21/10
taking [1]  8/21
talk [5]  4/23 12/21 57/21 57/22 57/23
talked [3]  24/4 25/10 49/13
tank [1]  28/22
target [1]  48/2
targeted [1]  15/14
technical [1]  11/13
technologies [1]  55/21
Telephone [1]  2/8
tell [7]  11/25 14/1 17/13 25/7 25/8 31/10 40/9
telling [2]  38/3 38/4
Ten [1]  26/10
tender [2]  17/22 18/4
tension [1]  28/24
term [5]  11/24 47/8 47/9 47/12 52/4
terminology [2]  43/22 47/7
terms [45]  18/1 24/2 26/14 26/15 26/17 26/23 27/3 27/6 27/11 27/12 27/15 27/20 27/22 28/7 28/18 29/3 29/4 29/8 29/11 40/20 41/6 41/8 41/10 42/2 42/3 42/20 42/22 43/4 43/10 43/19 43/23 44/8 44/12 47/17 47/21 48/10 49/9 49/14 49/24 50/6 50/12 50/13 50/17 51/19 51/24
test [1]  28/16
testified [2]  15/5 47/4
testify [3]  30/1 31/8 56/18
testifying [1]  30/13
testimony [2]  21/9 30/5
thank [6]  3/11 36/4 39/23 57/11 58/7 58/13
thanking [1]  3/16
that's [46]  4/25 5/11 6/10 8/2 11/12 14/16 16/25 16/25 18/18 19/19 20/19 22/4 22/23 24/15 25/15 25/20 25/23 25/24 25/24 28/21 28/24 28/24 29/17 31/2 31/2 31/12 32/2 32/14 33/9 35/22 36/4 38/12 40/15 40/21 41/4 42/4 42/11 42/13 45/17 46/18 47/12 49/25 52/14 53/6 54/18 56/5
theft [2]  13/23 56/12
theory [7]  21/7 25/20 25/25 26/9 38/15 39/25 52/17

there's [28]  9/23 15/6 15/8 15/19 19/5 19/24 19/25 20/22 24/12 25/15 28/20 31/16 33/2 34/18 34/24 37/15 37/17 37/20 37/21 38/3 38/18 43/17 45/17 52/12 52/13 53/12 54/6 55/10
thereafter [2]  40/21 46/10
therefore [1]  15/14
they'll [1]  9/22
they're [16]  23/17 25/8 27/1 30/2 30/7 37/1 37/3 37/10 40/2 46/18 49/12 49/22 51/1 52/12 52/24 55/8
they've [2]  14/16 22/23
thing [5]  18/9 23/4 26/5 44/3 44/4
things [12]  15/15 15/15 21/10 24/5 27/2 33/21 34/19 35/25 42/23 43/15 50/2 50/10
think [52]  12/9 15/1 15/19 16/1 16/11 16/20 16/21 17/6 17/13 18/18 20/3 23/11 23/15 23/20 25/23 26/20 27/9 27/22 28/15 28/17 29/1 29/12 31/2 31/2 31/3 31/4 31/4 31/12 33/12 33/20 35/13 36/8 37/16 37/17 37/25 38/10 43/13 43/25 45/10 45/11 46/8 47/7 47/12 47/20 48/1 48/10 49/21 51/8 55/7 55/9 56/22 57/2
thinking [1]  43/3
third [2]  26/4 30/16
Thirteen [1]  39/17
those [42]  5/22 5/24 5/24 7/6 8/9 8/9 10/18 10/20 10/23 10/25 11/1 11/2 12/3 14/17 15/5 21/1 22/8 22/8 22/9 23/21 24/1 24/2 26/18 27/6 31/21 32/5 34/22 34/23 34/25 35/2 40/10 40/19 43/5 43/7 43/25 46/11 46/22 46/22 50/5 51/18 52/7 55/22
though [2]  15/13 52/23
thought [3]  53/5 53/6 58/10
thousands [1]  35/12
threatening [1]  33/6
three [7]  10/14 35/3 38/18 38/18 38/19 38/20 49/23
threw [1]  58/10
through [15]  4/7 8/11 12/21 16/2 16/20 21/21 21/23 22/4 22/4 32/22 39/17 48/6 48/17 52/7 54/17

throughout [1]  14/3
Thursday [1]  58/9
timeframe [1]  43/4
timeliness [1]  9/16
times [2]  20/17 20/22
timing [3]  55/18 55/24 56/4
title [1]  34/20
today [5]  9/24 10/18 13/3 33/17 49/11
together [4]  9/19 13/8 13/24 15/24 55/20
told [4]  11/15 14/7 17/16 30/7
tomorrow [5]  57/21 57/23 57/25 58/6 58/8
Tomorrow's [1]  58/9
too [1]  26/18
took [2]  9/3 15/8
topic [3]  39/14 50/13 50/14
topics [2]  49/19 49/21
totally [1]  15/4
track [1]  47/6
Trading [1]  39/4
transactions [1]  13/15
transcript [3]  1/10 33/1 59/11
trial [52]  5/15 5/24 18/4 20/21 25/1 25/9 29/21 29/25 30/6 30/10 30/13 30/22 31/1 31/6 31/8 31/10 31/10 32/16 32/17 32/17 32/24 53/25
true [3]  25/24 45/16 56/4
trust [14]  39/2 39/2 39/7 41/16 42/2 42/23 43/21 47/10 47/18 47/20 47/24 48/9 48/11 49/14
trustee [1]  36/4
trustees [1]  48/9
trusteeship [1]  41/3
trusts [12]  40/9 40/14 40/17 40/24 41/4 44/14 46/19 46/22 47/1 47/5 49/1 49/22
try [5]  6/12 41/9 43/19 44/9 55/8
trying [14]  6/2 6/3 6/8 8/9 13/25 14/10 16/19 17/10 29/24 35/20 39/25 41/19 54/13 55/3
Tulip [19]  39/2 39/4 40/9 41/3 41/16 42/1 42/2 42/5 42/23 42/23 44/14 46/19 47/2 47/10 47/18 47/20 47/24 48/9 49/13
turn [22]  4/9 4/11 8/14 13/16 14/19 15/21 19/14 20/13 26/3 26/11 27/16 28/19 29/14 32/16 38/7 42/13 43/11 43/14 44/2 53/22 53/24
turns [1]  19/3

two [11]  6/1 6/2 9/6 12/19 12/20 13/4 20/24 32/23 34/5 37/5 45/18

## U

U.S [1]  30/25
Uh [23]  6/22 8/24 10/6 10/10 11/8 13/22 14/5 14/14 19/2 21/11 22/3 29/16 29/19 31/18 31/23 31/25 32/4 38/23 39/5 41/15 44/16 45/15 52/20
Uh-huh [21]  6/22 8/24 10/6 10/10 11/8 13/22 14/5 14/14 19/2 21/11 22/3 31/18 31/23 31/25 32/4 38/23 39/5 41/15 44/16 45/15 52/20
UK [1]  33/10
under [8]  7/5 15/11 19/18 19/18 27/20 37/17 37/17 45/13
undercut [1]  55/11
underlying [1]  51/20
understand [15]  5/10 10/24 12/14 16/19 18/8 19/6 20/7 20/14 21/8 28/25 37/8 52/16 54/13 55/3 55/5
understandable [1]  5/11
understanding [4]  10/25 27/10 27/16 52/8
understands [1]  35/16
understood [1]  26/12
undertake [1]  20/10
undue [2]  43/17 50/7
unduly [2]  56/23 57/2
unfair [2]  30/1 34/6
unfortunately [3]  4/22 9/3 11/14
UNITED [4]  1/1 1/12 29/20 30/1
universe [4]  15/3 15/6 27/21 41/9
unless [1]  11/17
unnecessary [1]  34/6
unreasonable [1]  34/6
until [4]  10/17 23/18 23/20 29/25
unusual [1]  25/15
unwarranted [1]  52/6
update [1]  33/22
upheld [1]  15/4
upholding [1]  15/2
upon [4]  5/21 26/15 29/6 55/9
us [24]  7/10 7/12 10/5 10/19 12/5 12/11 13/8 17/13 26/17 29/19 29/24 29/24 30/4 30/7 30/8 30/8 30/9 40/12 44/7 44/8 44/12 52/6 58/2 58/3
used [6]  14/11 14/15 15/10 20/1 20/20 24/23
using [1]  24/25

## V

vacating [2]  53/14 53/15
value [1]  7/25
Vel [1]  3/10
Velvel [1]  2/2
vendors [1]  6/12
venue [1]  9/17
version [2]  12/11 39/2
versus [1]  3/7
very [16]  10/12 14/17 16/16 17/22 17/22 24/12 24/13 24/20 31/16 40/22 44/11 47/5 47/17 48/11 49/23 57/19
viable [1]  34/6
view [2]  12/8 20/25
volume [1]  45/6

## W

waiting [1]  49/9
waive [1]  38/1
waiver [8]  37/16 37/17 44/5 44/15 45/1 45/11 46/13 46/15
waiving [3]  57/6 57/7 57/13
wallets [2]  8/5 14/8
want [27]  11/13 11/19 12/18 12/24 13/9 17/21 17/21 18/2 18/6 18/8 19/24 20/21 23/4 23/14 27/1 28/19 29/15 33/25 35/15 39/13 43/16 44/3 44/4 48/21 50/5 50/7 55/16
wanted [9]  7/18 20/7 20/11 30/5 33/22 42/18 42/25 57/10 57/15
wanting [1]  33/15
wants [2]  25/22 31/8
wasn't [6]  26/21 26/23 29/8 36/15 42/9 54/25
Watts [8]  29/20 30/4 30/6 30/15 30/24 31/7 32/9 33/5
Watts' [1]  32/6
we'd [2]  50/11 50/1
we'll [9]  4/7 10/16 28/15 28/18 36/17 37/6 38/5 38/5 41/21
we're [22]  3/5 4/2 6/11 8/4 8/9 10/15 10/20 12/7 13/24 14/9 24/22 29/19 30/25 31/9 31/10 36/22 37/3 39/25 49/16 52/4 54/3 58/12
we've [10]  13/25 18/1 27/10 27/16 29/12 37/3 42/12 42/13 49/13 51/17
wealthy [2]  14/2 14/4
week [5]  12/20 13/6 13/7 13/7 31/1
weeks [1]  14/6
well [23]  3/12 3/24 4/4 9/13 14/15 14/17 17/20 18/17 21/7 21/23 24/10

**W**

**well... [12]**  25/3 26/8 32/13 37/8 38/21 39/16 40/18 42/11 43/3 46/7 51/11 51/21
**went [4]**  4/5 25/10 25/11 32/1
**weren't [1]**  30/3
**West [2]**  1/7 1/18
**what's [12]**  7/24 10/8 13/13 20/15 26/5 29/10 33/11 36/18 38/2 38/15 46/15 49/2
**whatever [5]**  16/23 17/25 51/12 51/13 57/3
**where [14]**  4/13 6/11 8/2 15/4 15/6 16/3 22/5 25/7 27/14 28/24 28/24 38/5 40/5 57/17
**whether [17]**  9/22 14/21 14/21 17/7 17/11 20/18 22/16 22/20 22/23 25/17 25/24 27/1 30/4 42/18 43/16 43/17 43/18
**while [3]**  12/3 20/22 45/5
**whistleblower [1]**  25/12
**who's [1]**  19/14
**whole [2]**  27/11 29/4
**why [14]**  5/12 13/16 16/12 21/21 28/21 32/14 32/18 36/4 36/14 40/2 45/1 53/4 56/8 57/24
**wife [2]**  29/15 30/21
**wife's [1]**  45/21
**willing [2]**  53/5 56/17
**Wilson [3]**  23/9 24/19 24/21
**window [1]**  46/10
**Wired [1]**  20/25
**withdraw [1]**  56/20
**within [3]**  31/3 37/19 37/22
**without [5]**  7/13 12/12 50/4 57/6 57/7
**witness [7]**  29/22 29/25 30/3 30/6 30/15 31/9 31/12
**witnesses [3]**  23/23 23/24 25/9
**won't [3]**  17/25 30/13 56/18
**words [1]**  50/1
**work [11]**  10/5 13/10 28/9 35/12 35/20 43/22 45/6 45/13 45/14 52/4 52/13
**worked [2]**  21/24 36/16
**working [5]**  9/19 10/16 13/6 13/6 13/7
**world [1]**  16/20
**worried [1]**  28/22
**worth [1]**  45/18
**wouldn't [2]**  22/1 53/15
**WRIGHT [43]**  1/6 3/7 3/20 3/22 6/11 13/20

14/7 15/10 16/23 17/2 20/18 21/1 21/22 22/5 22/9 24/5 25/12 30/18 31/7 31/24 32/11 34/13 34/15 34/20 34/21 34/23 36/1 47/4 48/25 51/7 51/12 53/17 53/23 53/25 54/6 54/8 54/20 54/21 55/18 56/1 56/13 56/18 57/3
**Wright's [14]**  15/4 17/10 19/11 19/12 20/5 20/15 21/8 22/18 22/22 29/15 32/8 37/2 54/14 55/19
**wrong [1]**  25/16
**wrongdoing [1]**  53/12
**Wythe [1]**  2/9

**Y**

**y'all [1]**  41/4
**yeah [12]**  4/19 7/23 10/2 16/7 31/15 36/14 40/4 41/20 41/25 42/15 44/21 48/14
**years [2]**  35/3 56/24
**yes [12]**  3/25 4/14 5/17 7/1 9/25 12/16 15/25 22/14 22/19 37/24 57/11 57/16
**you'd [1]**  56/24
**you'll [7]**  5/18 33/10 50/8 50/8 50/9 50/9 51/18
**you're [18]**  6/8 7/25 9/15 9/16 9/16 9/20 9/21 9/23 11/6 13/5 19/14 19/19 22/11 36/7 36/12 43/24 48/22 53/4
**you've [5]**  26/22 36/1 46/12 50/10 57/7

**Z**

**Zaharah [2]**  2/13 3/22
**Zalman [2]**  3/20 57/21