# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.  18-cv-80176-BLOOM/Reinhart

IRA KLEIMAN, *et al*.,

       Plaintiffs,

v.

CRAIG WRIGHT,

       Defendant.

_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant Craig Wright's Objection to Magistrate Order "Deeming" Certain Facts Established and "Striking" Certain Affirmative Defenses (the "Objection"). *See* ECF No. [311]. The Court has reviewed the Objection, the opposing and supporting submissions, the record and applicable law, and is otherwise fully advised. For the reasons that follow, Defendant's Objection is sustained in part and overruled in part. The Magistrate Judge's Order, ECF No. [277], is vacated in part.

## I.   BACKGROUND

The factual background giving rise to this action has been set forth previously in prior opinions issued by this Court and are incorporated by reference. *See e.g.* ECF No. [68].

Pursuant to 28 U.S.C. § 636 and this District's Magistrate Judge Rules, all discovery matters in this action were previously referred to the Honorable Bruce E. Reinhart. *See* ECF No. [21]. The proceedings relevant to the present appeal relate to a discovery dispute, initiated when the Plaintiffs sought to identify the bitcoin owned and controlled by the Defendant (herein referred to as Defendant's "Bitcoin Holdings"), and are as follows:

### a. *Plaintiffs' First Set of Interrogatories*

On July 31, 2018, Plaintiffs served their First Set of Interrogatories, requesting Defendant identify the "public keys and public addresses" for any cryptocurrency he currently or previously owned. ECF No. [91-2], at 8. Defendant objected to the discovery request as "irrelevant, grossly overbroad, unduly burdensome, harassing and oppressive, and not proportional to the needs of the case." ECF No. [91-2], at 14-19. The Defendant, however, did not object in his discovery responses that the information sought was impossible to produce. *See generally* ECF No. [91-2].

A discovery hearing to resolve these respective objections was scheduled before Judge Reinhart on February 20, 2019. ECF No. [90]. In the parties' Joint Discovery Memorandum, Defendant argued that the Plaintiffs' requests were disproportionate to the needs of the case because they sought all documents relating to any bitcoin transactions by him between 2009 and 2014. ECF No. [92], at 3-4. The Defendant represented, however, that he "stands ready to produce documents in his possession, custody, or control that relate to David [Kleiman], any trust in which David [Kleiman] was a trustee or beneficiary, and W&K Info Defense Research, LLC." *Id.* At the hearing, the Court directed the Plaintiffs to identify the starting date and seek production of Defendant's Bitcoin Holdings on that date, and then use the Bitcoin evidence trail to trace forward from there. ECF No. [123], at 120-123. The Defendant did not object in his discovery responses that the information sought was impossible to produce.

### b. *Plaintiffs' Second Set of Requests for Production*

On January 17, 2019, Plaintiffs served a Second Set of Requests for Production on Defendant. ECF No. [92-5], at 13-30. In Request No. 1 of the Second Set of Requests for Production (herein referred to as "Request No. 1") Plaintiffs sought "[a]ll documents or

communications that provide and/or estimate the value of your cryptocurrency holdings. This includes, but is not limited to, loan applications, financial statements, tax returns, life insurance applications, financing agreements, sale papers, assignment contracts, etc." ECF No. [92-5], at 18. Defendant objected to Request No. 1 on relevance, over-breadth, harassment, and disproportionality grounds. ECF No. [114-1], at 5-7. Defendant again did not object in his discovery responses that the information sought was impossible to produce. *See generally id.*

Another discovery hearing was thereafter scheduled. ECF No. [104]. In the parties' pre-hearing Joint Discovery Memorandum, they indicated that Request No. 1 was still in dispute. ECF No. [109], at 7. The discovery hearing was held on March 6, 2019. ECF Nos. [110], [122]. At the hearing, the parties deferred the issues surrounding Request No. 1 to the next discovery hearing after the Plaintiffs represented that they were revising the scope of time referenced in Request No. 1. ECF No. [122], at 56-62. Defendant again did not argue that the information sought was impossible to produce. The Court scheduled another discovery hearing for March 14, 2019.

### c.   *The March 14, 2019 Discovery Hearing*

In the Joint Discovery Memorandum for the March 14 discovery hearing, Plaintiffs represented that they had limited Request No. 1 to "produce any documents that existed as of 12/31/13 which estimate the value of Defendant's bitcoin holdings," arguing that such information was relevant to trace the assets of the alleged partnership between David Kleiman and Defendant. ECF No. [114], at 3. Defendant argued that the request was still "overly broad, unduly burdensome and harassing by seeking such personal financial information such as loan applications, financial statements, tax returns, life insurance applications, etc." *Id.* The Defendant did not object, however, that the discovery was impossible to produce. *See generally id.*

At the hearing the Plaintiffs argued that the information sought in Request No. 1 was

necessary to establish the universe of bitcoin that was mined during the alleged partnership between David Kleiman and Defendant. ECF No. [124], at 18-19. Plaintiffs ultimately agreed that what they were seeking was "a listing of all the bitcoin that was owned [by Dr. Wright directly or indirectly] on December 31, 2013." *Id.* at 20:21-25. Plaintiff reiterated that "it's just an attempt to find the partnership's assets." *Id.* at 19:7-8. At the hearing, the Defendant conceded that the information sought was relevant, but objected to its production on the basis of proportionality and potential undue burden. *Id.* at 21:6-10.

At that time, Defendant admitted that a list of public addresses would "identify Craig Wright as being the owner of those addresses, which sort of like opens the door to, you know, a lot of financial information, and without any evidence that all of those — or what portion of those David Kleiman had an interest in." *Id.* at 21:17-22. Based on this representation, the Court ruled that Plaintiffs were entitled to a list of Defendant's bitcoin holdings, but granted Defendant leave to file a motion for protective order based on undue burden. *Id.* at 22-23. At this hearing, the Defendant did not argue that the information sought was impossible to produce.

### d. *Defendant's April 4, 2019 Deposition*

The Defendant was deposed on April 4, 2019. During his deposition, he testified that a trust called the Tulip Trust was formalized in 2011 ("Tulip Trust I"), but that Tulip Trust I never owned or possessed private keys to bitcoin addresses. ECF No. [270-1], at 22. Defendant also refused to answer questions about how much bitcoin he mined in 2009-2010. The parties raised this issue with Judge Reinhart, who deferred ruling on the issue. ECF No. [137], at ¶ 1 ("The request to compel Dr. Wright to disclose the amount of bitcoin he mined during 2009 and 2010 is denied without prejudice. The Court will revisit this issue after the parties brief whether production of a list of Dr. Wright's bitcoin ownership would be unduly burdensome.").

### e.  April 11, 2019 Discovery Hearing

Another discovery hearing was held on April 11, 2019. ECF No. [142]. During this hearing, Judge Reinhart required the Defendant file a motion for protective order regarding Plaintiffs' request for a list of his Bitcoin Holdings no later than April 19, 2019. ECF No. [146], at 38-39.

Pursuant to the Magistrate Judge's instructions, the Defendant timely filed a sealed motion. ECF No. [155]. In that Motion, the Defendant represented that he did "not have a complete list of the public addresses that he owned as of any date."  *Id.* at 1. He also argued that the creation of such a list would be unduly burdensome. *Id.* Beyond identifying himself as the miner for the first 70 blocks of the bitcoin blockchain, and providing the public addresses for those blocks, the Defendant also claimed that he did not know any other bitcoin public addresses. *Id.* The Defendant represented that in 2011, he transferred ownership of all of his Bitcoin into a blind trust, of which he was not a trustee or a beneficiary. *Id.* at 2. Defendant also claimed that he did not "know any of the public addresses which hold any of the bitcoin in the blind trust . . . and cannot provide any other public addresses." *Id.* Thus, Defendant maintained that as of December 31, 2013, all of his bitcoin had already been transferred into the blind trust, and therefore are owned by the trusts, not the Defendant himself. *Id.*

Judge Reinhart denied the Defendant's Motion, finding Defendant's assertion that the production of a complete list of his public addresses he owned as of December 31, 2013 was unduly burdensome to be unsupported by the facts. ECF No. [166], at 2. The Court further stated that the Defendant "does not argue undue burden, he argues impossibility," and noted that "[t]he argument that Dr. Wright is incapable of providing an accurate listing of his current or historical bitcoin holdings was never presented in any of the prior hearings before this Court." *Id.* at 2-3.

Judge Reinhart then ordered the Defendant provide (1) a sworn declaration identifying the name and location of the blind trust, the name and contact information for the current trustee and any past trustees and the names and contact information of any current or past beneficiaries; (2) a copy of any and all documents relating to the formation, administration, and operation of the blind trust, accompanied by a sworn declaration of authenticity; (3) all transactional records of the blind trust, including but not limited to any records reflecting the transfer of bitcoin into the blind trust in or about 2011, accompanied by a sworn declaration of authenticity; and (4) ordered the Defendant execute any and all documents, or other legal process, necessary to effectuate the release of documents in the possession, custody, or control of the trustee. *Id.* at 4.

In his attempts to comply with Judge Reinhart's Order, the Defendant provided a sworn declaration, in which he stated that he had met with his counsel and provided them "with additional details and clarity regarding trusts that I settled that hold or held Bitcoin that I mined or acquired on or before December 31, 2013." ECF No. [222], at ¶ 3. Defendant further affirmed that he had mined bitcoin in 2009 and 2010 directly into a trust in Panama, that there were no transactions related to that bitcoin, and that he later "transferred the encrypted files that control access to these Bitcoin in 2011, as explained below." *Id.* ¶ 4. In June 2011, the Defendant represented that he consolidated "the Bitcoin [] mined with Bitcoin that [he] acquired and other assets." *Id.* ¶ 5. Defendant claims that "[i]n October 2012, a formal trust document was executed, creating a trust whose corpus included the Bitcoin that [he] mined, acquired and would acquire in the future. The name of that trust is Tulip Trust. It was formed in the Seycelles [sic]." *Id.* Defendant then identified the trustees of Tulip Trust I as (1) COIN Ltd. UK,[1] (2) Uyen Nguyen, (3) Dr. Wright, (4) David

---

[1] Dr. Wright is the contact person for CO1N Ltd. UK.

Kleiman, (5) Panopticrypt Pty. Ltd.,[2] and (7) Savannah Ltd.[3] *Id.* ¶ 6. Dr. Wright is the contact person for CO1N Ltd. UK. The contact person for Panoptycript Pty. Ltd. is Defendant's wife. The contact person for Savannah Ltd. is Denis Mayaka. *Id.* ¶¶ 9-12. Defendant further affirmed that the beneficiaries of Tulip Trust I are Wright International Investments Ltd. and Tulip Trading Ltd. Defendant is the point of contact for both of the beneficiaries. *Id.* ¶¶ 13-14. Defendant then asserted for the first time that "[a]ccess to the encrypted file that contains the public addresses and their associated private keys to the Bitcoin [] mined, requires myself and a combination of trustees referenced in Tulip Trust I to unlock based on a Shamir scheme." *Id.* at ¶ 23.

The Defendant's affidavit also outlined the structure of the second Tulip Trust ("Tulip Trust II"). Defendant admitted that he and his current wife are the beneficiaries to Tulip Trust II. *Id.* at ¶¶ 19-20.  At that time, Defendant provided a limited number of documents related to the trust. According to the Plaintiffs, Defendant "produced two sworn statements, copies of various trust instruments, and a statement from the purported trustee re-attaching a trust instrument." ECF No. [210], at 3. The documents, however, apparently did not identify the specific bitcoin that were transferred into the blind trusts, nor did they indicate what the blind trusts have done with the bitcoin since their transfer. *Id.* Defendant claimed that he "produced trust formation documents along with a sworn declaration of authenticity," as well as "documents reflecting the use of bitcoin rights from the trust to support research and development by his Australian entities." ECF No. [211], at 3. Defendant did not produce any documents related to the administration and operation of the blind trust as ordered by the Court. *See* ECF No. [166]; ECF No. [197] at 4, fn 1.

### f.  *Plaintiffs' Motion to Compel*

On June 3, 2019, Plaintiffs filed a Motion to Compel Defendant to Comply with this

---

[2] The contact person for Panoptycript Pty. Ltd. is Dr. Wright's wife.
[3] The contact person for Savannah Ltd. is Denis Mayaka.

Court's Orders Directing Him to Produce a List of the Bitcoins He Held as of December 31, 2013. ECF No. [197] (the "Motion to Compel"). In the Motion to Compel, Plaintiffs sought an order from the Court imposing sanctions under Federal Rule of Civil Procedure 37, and to order the Defendant to provide a sworn statement identifying the public addresses of the bitcoin transferred into the Tulip Trusts, to provide transactional records and communications relating to the trusts, and to sit for a renewed deposition. *Id.* at 6. Plaintiffs specifically requested that should the Defendant continue to refuse to comply with the Court's Orders, that the Court deem all of Dr. Wright's holdings in the Tulip Trust to be joint property belonging to both the Defendant and David Kleiman. ECF No. [210], at 6.

In his Response in Opposition to the Motion to Compel, Defendant conceded that he did not comply with the Court's Order. ECF No. [204]. However, for the first time, Defendant argued in these discovery proceedings that compliance with the Court's Order was "impossible." ECF No. [204]. Moreover, in this Response, Defendant claimed that information necessary to comply with the Court's Order was in Tulip Trust I in an encrypted file protected by a "Shamir's Secret Sharing Algorithm."[4] ECF No. [204], at 5. Defendant then represented that he could not decrypt the "outer level of encryption" because he did not have all of the necessary keys, and represented that the encryption keys needed were "distributed to multiple individuals through the [blind] trusts" and "he alone does not have ability to access the encrypted file and data contained in it." *Id.*

A held was hearing on June 11, 2019 on the Motion to Compel. ECF No. [221]. At the hearing, Plaintiffs' counsel presented the Court with the Defendant's earlier deposition where he denied ever putting bitcoin into a trust and denied putting any private keys into the Tulip Trust, which was contrary to the position the Defendant was now taking in his Opposition to the Motion

---

[4] An algorithm created by Adi Shamir to divide a secret, such as a private encryption key, into multiple parts. ECF No. [277], at 10.

to Compel. ECF No. [221], at 8-9. The Court once again gave the Defendant an opportunity to "produce a complete list of all bitcoin that he mined prior to December 31, 2013," and entered an Order to Show Cause why it should not certify a contempt of court to the District Judge. ECF No. [217]. An evidentiary hearing was scheduled for June 28, 2019.

### g. *Evidentiary Hearing*

On June 28, 2019, a two-day evidentiary hearing began before Magistrate Judge Reinhart. The Court heard from three witnesses (1) the Defendant, (2) Steven Coughlan a/k/a Steve Shadders, and (3) Dr. Matthew Edman. ECF Nos. [236], [264]. Plaintiffs also submitted excerpts from the depositions of Jonathan Warren and Dr. Wright. ECF Nos. [261], [270]. The Magistrate Judge also heard oral argument on August 26, 2019.

During the Defendant's testimony, the Defendant testified that it was impossible to comply with the Court's Orders regarding his Bitcoin Holdings due to the Shamir Scheme implemented related to the encrypted file. Defendant also claimed that he enlisted the now deceased David Kleiman to implement and carry out these safeguards. ECF No. [236], at 125:15-126:23.  He testified that to decrypt the outer most layer of the encryption he needed eight "key slices," of which he presently only has seven in his possession. *Id.* at 125. It was the Defendant's position that he simply could not produce a list of his Bitcoin Holdings even if he wanted to. *Id.* at 14:8-14. Judge Reinhart did not find the Defendant's testimony to be credible, and his testimony and demeanor did not impress Judge Reinhart as someone who was "telling the truth." ECF No. [277], at 19.

Steven Coughlan a/k/a Steve Shadders ("Shadders") testified as to his effort to apply the filter criteria to identify the Defendant's Bitcoin Holdings. Judge Reinhart found Shadders' testimony to be credible and worthy of belief. ECF No. [277], at 18. Judge Reinhart found that

employing Shadders to identify the Bitcoin Holdings demonstrated a "good faith attempt" by the Defendant to comply with the Court's Order. However, Judge Reinhart found that this finding warranted little weight in light of the Defendant's conduct. *Id.* Finally, Matthew Edman testified about alleged alterations in the documents produced by the Defendant during discovery.

### h.  The Order on the Motion to Compel

On August 27, 2019, Judge Reinhart issued his Order on Plaintiffs' Motion to Compel, ECF No. [277] (the "Order"). In the Order, he found that the Defendant had not met his burden of proving by a preponderance of the evidence that he was unable to comply with the Court's Order, and thus Rule 37 sanctions were warranted.[5] As one of those sanctions, the Magistrate Judge held that for the purposes of this action the following facts were deemed established:

> (1) Dr. Wright and David Kleiman entered into a 50/50 partnership to develop Bitcoin intellectual property and to mine bitcoin;
>
> (2) any Bitcoin-related intellectual property developed by Dr. Wright prior to David Kleiman's death was property of the partnership;
>
> (3) all bitcoin mined by Dr. Wright prior to David Kleiman's death ("the partnership's bitcoin") was property of the partnership when mined; and
>
> (4) Plaintiffs presently retain an ownership interest in the partnership's bitcoin, and any assets traceable to them.

ECF No. [277], at 16 (herein referred to as the "Deemed Facts"). The Magistrate Judge also struck several of the Defendant's affirmative defenses, including: Third Affirmative Defense (Good

---

[5] The Court notes that although the Defendant was ordered to produce all documents related to the blind trust by May 9, 2019, ECF No. [166], the Defendant had still failed to timely produce all documents that he had in his possession as of the evidentiary hearing date. In fact, as late as January 6, 2020, it was the Plaintiff who advised the Court that the Defendant produced another document purportedly related to the blind trusts. ECF No. [369]. Plaintiffs advise that the Defendant has not provided any explanation as to the document's late disclosure. ECF No. [367]. At the status conference on January 9, 2020, Plaintiffs also called into question the document's authenticity.

Faith); Fourth Affirmative Defense (Accord and Satisfaction); Fifth Affirmative Defense (Release); Sixth Affirmative Defense (Payment); Seventh Affirmative Defense (Set-off); Eighth Affirmative Defense (Failure to Mitigate Damages); Seventh [*sic*] Affirmative Defense (Waiver); and Tenth Affirmative Defense (Statute of Frauds). *Id.* (collectively referred to as the "Affirmative Defenses").

While Judge Reinhart found that there was clear and convincing evidence that would support a civil contempt certification, he determined that the sanctions imposed pursuant to Rule 37 and referenced above, were sufficient to sanction the Defendant for his conduct. *Id.* at 16. In exercising his discretion, Judge Reinhart, therefore, did not certify facts to this Court for civil contempt proceedings. *Id.* The Magistrate Judge also noted that while he found that the record evidence could support a civil contempt certification, he did not find the record evidence rose to the level of proof beyond a reasonable doubt needed to support a certification of facts for criminal contempt proceedings. *Id.* Judge Reinhart also awarded the Plaintiffs attorneys' fees associated with bringing the Motion to Compel. *Id.* at 28.

Defendant now appeals the Magistrate Judge's Order, arguing that there is "no basis" to impose any sanctions on the Defendant because his "uncontroverted" testimony evidences that he is unable to access the information sought by the Plaintiffs. *See generally* ECF No. [311]. Defendant characterizes the sanctions imposed by Judge Reinhart as "draconian" and argues that their imposition would violate his due process rights. *Id.* Finally, the Defendant argues that the factual findings made by the Magistrate Judge went far beyond the limited discovery issue that was before the Court.

Case No.  18-cv-80176-BLOOM/Reinhart

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 72(a) provides that upon the filing of objections to a magistrate judge's order regarding a non-dispositive matter, the district judge to whom the case is assigned shall consider such objections and modify or set aside any portion of the order found to be clearly erroneous or contrary to law. This is an extremely deferential standard of review, and this "high bar" is "rarely invoked." *Cox Enters., Inc. v. News-Journal Corp.*, 794 F.3d 1259, 1272 (11th Cir. 2015). The magistrate judge's orders should not be disturbed absent a clear abuse of discretion that leaves the reviewing court with the "definite and firm conviction that a mistake has been committed." *Linea Naviera de Cabotaje C.A. v. Mar Caribe de NevaGacion, C.A.*, 169 F. Supp. 2d 1341, 1355 (11th Cir. 2001).

## III.    DISCUSSION

In his Objection, the Defendant argues that there was no basis for the Magistrate's imposition of sanctions, and further that their imposition would violate his due process rights. *See generally id.* Defendant also contends that the Deemed Facts went far beyond the limited discovery issue before the Court. *See generally id.* Thus, the Defendant seeks an order from this Court reversing and vacating Judge Reinhart's Order. *Id.* Plaintiffs oppose the relief sought, claim  that the record supports the sanctions imposed in Judge Reinhart's Order and their imposition was well within his discretion and authority. For the reasons that follow, the Defendant's Objection is sustained in part and overruled in part. The Magistrate Judge's Order is vacated in part.

The Court has the "inherent power to regulate litigation and sanction the parties ... for abusive practices." *Tarasewicz v. Royal Caribbean Cruises, Ltd.*, Case No. 14-CIV-60885-Bloom/Valle, 2016 WL 3944176, at * 4 (S.D. Fla. Feb. 9, 2016) (citations omitted) (report and recommendation adopted by *Tarasewicz*, 2016 WL 3944178 (S.D. Fla. March 17, 2016)). The

Court's authority to impose sanctions must, however, be "exercised with restraint and discretion."

*Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 560 F.3d 1241, 1244 (11th Cir. 2009) (citing

*Chambers v. NASCO, Inc.*, 111 S.Ct. 2123, 2132 (1991)).

Federal Rule of Civil Procedure 37 authorizes the Court to award attorneys' fees against a

party and/or the party's counsel as a sanction for certain discovery-related conduct. Thus, when a

party refuses to participate in discovery, the court may issue an order compelling the party to

disclose. Fed. R. Civ. P. 37(a). If a party then disobeys the court's order, more severe sanctions

are available. *See* Fed. R. Civ. P. 37(b)(2). Federal Rule of Civil Procedure 37(b)(2) states in

relevant part:

> (2) Sanctions Sought in the District Where the Action Is Pending.
> (A) For Not Obeying a Discovery Order. If a party or a party's
> officer, director, or managing agent--or a witness designated under
> Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit
> discovery, including an order under Rule 26(f), 35, or 37(a), the
> court where the action is pending may issue further just orders. They
> may include the following:
> (i) directing that the matters embraced in the order or other
> designated facts be taken as established for purposes of the action,
> as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing
> designated claims or defenses, or from introducing designated
> matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order
> except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37 (b)(2). "These sanctions 'are intended to 1) compensate the court and parties for

the added expenses caused by discovery abuses, 2) compel discovery, 3) deter others from

engaging in similar conduct, and 4) penalize the offending party or attorney.'" *Thornton v. Hosp.*

*Mgmt. Assocs., Inc.*, 787 F. App'x 634, 638 (11th Cir. 2019) (citing *Wouters v. Martin County*, 9

F.3d 924, 933 (11th Cir. 1993)). District courts possess wide discretion over the discovery process and when discovery sanctions are appropriate. *Dude v. Cong. Plaza, LLC,* 17-80522-CIV, 2018 WL 4203888, at *5 (S.D. Fla. July 20, 2018), *report and recommendation adopted sub nom. Dude v. Cong. Plaza. LLC,* 17-CV-80522, 2018 WL 4203886 (S.D. Fla. Aug. 29, 2018). "The severe sanctions permitted by Rule 37(b) are usually only imposed by district courts upon a finding '(1) that the party's failure to comply with the order was willful or a result of bad faith, (2) the party seeking sanctions was prejudiced by the violation, and (3) a lesser sanction would fail to adequately punish and be inadequate to ensure compliance with court orders.'" *Id.* (citations omitted).

### a. *The Defendant's Conduct Warrants Sanctions*

In his Objection, the Defendant first argues that there is "absolutely no basis" to impose any sanctions on the Defendant because his "uncontroverted" testimony evidences that he is unable to comply with the Court's Order. ECF No. [311], at 3. The Court first notes the obvious novelty of this argument. Indeed, the Defendant testified that the now deceased David Kleiman was the only person he is aware of who knew who else controlled the Shamir key slices. ECF No. [236], at 126:20-23. Therefore, the only testimony that could conceivably rebut the Defendant's testimony is from one who is deceased. A fact of which the Defendant is fully aware.

Additionally, the sole evidence put forward to establish the Defendant's claim of impossibility, his own testimony, was found not to be credible by Judge Reinhart.[6] *See* ECF No. [277] ("I completely reject Dr. Wright's testimony about the alleged Tulip Trust, the alleged

---

[6] Defendant also takes issue with the Order's "attack" on his character. In his Objection, the Defendant argues that the Magistrate Judge's character determinations should have no bearing on whether he is able to produce the list of Bitcoin Holdings. ECF No. [311], at 13. As the judge presiding over the Evidentiary Hearing, it was entirely proper for the Court to consider the entire record, the Defendant's prior statements and whether there were any inconsistencies with his present testimony, and the Defendant's conduct in evaluating the Defendant's credibility. Therefore, these determinations by the Magistrate Judge are relevant to the extent that they relate to whether the Magistrate Judge believed the Defendant to be credible.

encrypted file, and his inability to identify his bitcoin holdings . . . During his testimony, Dr. Wright's demeanor did not impress me as someone who was telling the truth."). This Court is not required to rehear witness testimony in accepting a Magistrate Judge's credibility findings. *See United States v. Cofield*, 272 F.3d 1303, 1305–06 (11th Cir. 2001) (citing *United States v. Raddatz*, 447 U.S. 667 (1980)). The Court has also reviewed the transcripts from the Evidentiary Hearing held by Judge Reinhart and agrees with his credibility findings relating to Defendant. Indeed, in answering opposing counsel's questions, the Defendant was evasive, refused to give and interpret words in their very basic meanings, was combative, and became defensive when confronted with previous inconsistencies.[7]

Second, even if the Court believed the Defendant's testimony that it is impossible to comply with the Magistrate Judge's Order, he has still failed to satisfy his burden that he has made "in good faith *all* reasonable efforts to comply." *United States v. Rizzo*, 539 F.2d 458, 465 (5th Cir. 1976). It is undisputed that the Defendant has failed to produce a list of his Bitcoin Holdings and has failed to comply with the Magistrate Judge's discovery order. Therefore, it was the Defendant's burden to introduce evidence not only that it was impossible to comply, but that he had made all reasonable efforts to comply. While the Court notes that the Defendant did present evidence of a single good faith attempt to comply with the Order—his recruitment of Shadders to apply the filter criteria to the public blockchain–such does not demonstrate that the Defendant made *all* reasonable efforts to comply. Indeed, the Defendant admitted during the Evidentiary Hearing that he had not even "looked" at the encrypted file. *See* ECF No. [236], at 124:12-16 ("A. I haven't looked at the file. No one asked me to look at the file. Q. You were ordered to produce the addresses; is that correct? A. Um, yes, but this is not the addresses.").

---

[7] The Defendant also argues that the Magistrate Judge improperly relied on hearsay evidence in issuing his ruling. ECF No. [311], at 23-25. The Court rejects this argument.

Notably, the Defendant admitted in his November 25, 2019 Objection that he did not even turn over the encrypted file to the Plaintiffs until August 27, 2019—the day the Magistrate Judge issued his Order on the Motion to Compel. *See* ECF No. [311], at 17. The Defendant cannot in good faith contend that he made all reasonable efforts to comply, where throughout the entirety of these proceedings, he failed to even look at the encrypted file he maintains prohibits his compliance.

Next, the Court notes the obvious. Given the posture and the amount of effort expended by the parties on this discovery issue, even if the Court were to find the Defendant's assertion that the information sought was impossible to obtain, sanctions would still be warranted. Defendant had a continued duty to advise the Court if compliance with its orders was not possible. Pursuant to Federal Rule of Civil Procedure 37(c) the Court may award sanctions where a party fails to disclosure or supplement an earlier response given throughout the discovery process.  Rule 37 (c) states in relevant part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c). Federal Rule of Civil Procedure 37(c) "provides the consequences for a party's failure to disclose, pursuant to the requirements of Rule 26." *Nance v. Ricoh Elecs, Inc.*, 381 Fed. Appx. 919, 922 (11th Cir. 2010). Because, under Rule 26(e)(1)(A), supplementation of

incorrect responses is required, the obligation to supplement pertinent information continues throughout the case.

Here, Plaintiffs first requested that the Defendant identify the public addresses for any of his cryptocurrency in their First Set of Interrogatories served on July 26, 2018. ECF No. [92-2], at 8. ("[i]dentify the . . . public addresses for any cryptocurrency that . . .you possess the private keys to."). The request was later reasserted as Request No. 1 of Plaintiffs' Second Request for Production. ECF No. [92-5], at 18. The Defendant's argument that compliance with the Court's discovery orders was impossible, however, completely ignores the fact that the Defendant did not even raise this issue with the Court until the filing of his Response in Opposition to the Motion to Compel in June 2019. *See* ECF No. [211].[8]

Further, the Defendant explicitly testified at the Evidentiary Hearing that he had been aware that he could not generate the list of Bitcoin Holdings throughout the entirety of the discovery proceedings on this specific issue:

> Q. Until at least 2020, you have no ability to get to these files, is that what your testimony is?
> A. Yes, Your Honor.
> Q. Okay. And so you knew that fact on February 19th of this year, correct?
> A. Yes.
> Q. You knew that on March 14th of this year, correct?
> A. Yes.
> Q. And you knew that on April 8th of this year?
> A. Yes.

---

[8] The Court also notes that Federal Rule of Civil Procedure 34(b)(2)(C) requires that objections to discovery specifically state the basis that the discovery is being withheld. *See* Fed. R. Civ. P. 24(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."). Further, it is possible for an objection to be waived if it is not timely raised by the party withholding the discovery. *Bailey v. City of Daytona Beach Shores*, 286 F.R.D. 625, 628 (M.D. Fla. 2012) (finding a party has waived a relevance objection where it was not initially asserted); *Bank of Mongolia v. M & P Glob. Fin. Servs., Inc.*, 258 F.R.D. 514, 518 (S.D. Fla. 2009) (holding a defendants' untimely objections were waived).

ECF No. [236], at 127:5-14. Therefore, the Defendant readily admits that he knew it was "impossible" to comply with the Court's discovery order but chose not to notify the Court or the parties of this fact. Rather, the Defendant wasted both time and resources litigating this issue for the past seven months.

Rule 37 provides in pertinent part that, "[i]f the motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5) (emphasis added). However, "the court must not order this payment if ... (i) the movant filed the motion before attempting in good faith to obtain the disclosure of discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Id.* Nothing in the record demonstrates, however, that the Defendant's non-disclosure was substantially justified.

Accordingly, the Defendant cannot in good faith argue that there is "absolutely no basis" to issue sanctions against him. Discovery is meant to ensure that the parties have fair and timely access to the documents and facts needed to litigate their case. The Defendant has willfully obstructed this process. Accordingly, the Court agrees with Judge Reinhart's Order that attorneys' fees are warranted in this case. As to the award of attorneys' fees against the Defendant related to filing and litigating the Motion to Compel, the Order is affirmed.

### b.  The Deemed Facts and the Striking of Defendant's Affirmative Defenses

In his Objection, the Defendant also argues that the imposition of the Deemed Facts as a sanction violated the Defendant's due process rights and exceeded the Magistrate Judge's

jurisdiction and authority for resolving a limited discovery issue. ECF No. [311], at 8. After a close review of the record revolving around the discovery issue at the center of these proceedings—the list of Defendant's Bitcoin Holdings—and a review of the sanctions imposed, the Court agrees with the Defendant that this sanction was improperly imposed.

The broad discretion of the district court to manage its affairs is governed, of course, by the most fundamental safeguard of fairness: the Due Process Clause of the Fifth Amendment. *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 708 (1982). "To comply with the Due Process Clause, a court must impose sanctions that are both 'just' and 'specifically related to the particular 'claim' which was at issue in the order to provide discovery.'" *Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1151 (11th Cir. 2006).

In *Serra Chevrolet, Inc. v. Gen. Motors Corp.*, the Eleventh Circuit Court of Appeals reversed the lower court's order in part, finding that the district had erred where it struck the defendant's affirmative defenses, and there was "no nexus" between the documents the district court ordered be produced in its discovery orders and the court's sanction striking the defendant's affirmative defenses. *Serra Chevrolet, Inc.,* 446 F.3d at 1152. There the Eleventh Circuit found that the defenses struck by the district court had no apparent relationship with the discovery abuse. *Id.*

As it relates to the Deemed Facts imposed by the Magistrate Judge in his Order, the Court agrees with the Defendant that those facts are not specifically related to the particular discovery abuse at issue. The discovery issue pending before the Magistrate Judge was the production of a list of the Defendant's Bitcoin Holdings on December 31, 2013. ECF No. [124], at 19-20; ECF No. [92-5], at 8. Moreover, the Magistrate Judge determined that the failure to provide the discovery and the Defendant's false testimony were relevant to the issue of sanctions. The Deemed

Facts, however, are aimed at establishing the partnership that is alleged to have existed between

David Kleiman and the Defendant and the determination of that partnership's property:

> (1)  Dr. Wright and David Kleiman entered into a 50/50 partnership to develop Bitcoin intellectual property and to mine bitcoin;
>
> (2)  any Bitcoin-related intellectual property developed by Dr. Wright prior to David Kleiman's death was property of the partnership;
>
> (3)  all bitcoin mined by Dr. Wright prior to David Kleiman's death ("the partnership's bitcoin") was property of the partnership when mined; and
>
> (4)  Plaintiffs presently retain an ownership interest in the partnership's bitcoin, and any assets traceable to them.

ECF No. [277], at 16. The Magistrate Judge noted that "the Court was ordering Dr. Wright to

produce evidence to document the existence and extent of his bitcoin holdings, so that Plaintiffs

could attempt to trace them through the master blockchain." *See* ECF No. [277] at 25. However,

even if this Court were to permit the Deemed Facts to remain established, the discovery abuse

remains "uncured" because the amount of bitcoin owned by the Defendant remains unknown, or

at the very least, still at issue. Because the Court finds that the Deemed Facts do not specifically

relate to the discovery issue that was pending before the Magistrate Judge, the Court agrees that

the Deemed Facts imposed as a sanction was not proper.

Further, because the Court agrees with the Defendant that the Deemed Facts are improper,

the striking of the affirmative defenses as a sanction must also be set aside. In his Order, the

Magistrate Judge solely indicated that he was striking the Affirmative Defenses in order "[t]o

conform to these established facts." ECF No. [277], at 16. Because the Court finds that the Deemed

Facts were improper, it cannot permit the striking of affirmative defenses premised on the

conformity of a sanction set aside.

Case No.  18-cv-80176-BLOOM/Reinhart

Accordingly, the Order is vacated in part, to the extent that it sought to impose sanctions, which included the establishing of the Deemed Facts, and the striking of the Defendant's Affirmative Defenses.

Defendant also argues that there is no basis to impose sanctions because there is no record evidence that Plaintiffs have suffered any prejudice. ECF No. [311], at 11. Specifically, the Defendant argues that the Plaintiffs' inability to trace the Bitcoin is insufficient to establish prejudice. *Id.* Sanctions permitted by Rule 37(b) "are usually only imposed" when "the party seeking sanctions was prejudiced by the violation." *Dude v. Cong. Plaza*, LLC, 2018 WL 4203888, at *5 (S.D. Fla. 2018), *report and recommendation adopted*, *Dude v. Cong. Plaza. LLC*, 2018 WL 4203886 (S.D. Fla. 2018) (citations omitted);

Here, the Court has no doubt that the Plaintiffs were prejudiced by the Defendant's antics. It is clear to the Court that the Defendant's conduct was anything but substantially justified or harmless. Defendant's conduct delayed and obstructed the discovery process of this case, wasted valuable time and resources in litigating this issue, and prevented the Plaintiff from obtaining evidence that the Magistrate Judge found relevant to the Plaintiffs' claims. Therefore, the Court rejects the Defendants' argument that no prejudice has been suffered by the Plaintiffs as a result of the Defendant's conduct. Such argument is entirely devoid of merit.

Finally, the Defendant argues that at minimum he "should have been afforded the opportunity to wait until [the date the bonded courier is set to come] to see if he receives the key slices to generate the list of his bitcoin holdings, which he could then provide to plaintiffs." ECF No. [311], at 13.  Defendant contends that in the event this occurs, "even plaintiffs would have to concede that Dr. Wright's inability to do the impossible and comply with the discovery order caused them absolutely no prejudice." *Id.* Given the Defendant's many inconsistencies and

misstatements, the Court questions whether it is remotely plausible that the mysterious "bonded courier" is going to arrive, yet alone that he will arrive in January 2020 as the Defendant now contends. However, given that the Defendant maintains that he should at least be afforded this opportunity, the Court will indulge him this much.

In light of the Defendant's representations that the bonded courier is scheduled to arrive in January 2020, the Court will permit the Defendant **through and including February 3, 2020**, to file a notice with the Court indicating whether or not this mysterious figure has appeared from the shadows and whether the Defendant now has access to the last key slice needed to unlock the encrypted file. In the event this occurs, and further if the Defendant produces his list of Bitcoin Holdings as ordered by the Magistrate Judge, then this Court will not impose any additional sanctions other than the ones discussed above.

In the event the bonded courier does not arrive, and the Plaintiffs are not given access to this information, which the Court has already founded directly relevant to their claims, the Court finds additional sanctions would be warranted. Specifically, pursuant Rule 37(c)(1)(B), the Court will inform the jury of the Defendant's failure to disclose the information sought by the Plaintiffs. *See* Fed. R. Civ. P. 37(c)(1)(B). The Court will also extend the discovery period, upon motion by the Plaintiffs, in order to permit the Plaintiffs to conduct additional discovery beyond the presently set discovery cutoff period. Additionally, the Court will consider any renewed discovery requests that the Plaintiff may have.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Order, **ECF No. [277]**, is **AFFIRMED IN PART AND REVERSED IN PART**. The Order is **VACATED** solely as it relates to the imposition of the

Case No.  18-cv-80176-BLOOM/Reinhart

Deemed Facts and Striking of the Defendant's Affirmative Defenses. The Order is **AFFIRMED** as it relates to the award of reasonable attorneys' fees and costs against the Defendant related to litigation surrounding the Motion to Compel.

2. Defendant's Objection, **ECF No. [311]**, is **SUSTAINED IN PART AND OVERRULED IN PART** as articulated in this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida on January 10, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

The Honorable Bruce E. Reinhart

Counsel of Record