UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC,

        *Plaintiffs,*

v.

CRAIG WRIGHT,

        *Defendant.*

CASE NO.:  9:18-cv-80176-BB

**PLAINTIFFS' MOTION FOR NINETY DAY EXTENSION OF PRETRIAL DEADLINES AND FOR CONTINUANCE OF TRIAL DATE**

Plaintiffs' case revolves around the existence of a partnership between Dave Kleiman and Craig Wright to develop intellectual property and mine bitcoin. Unfortunately, Craig has engaged (and appears to be continuing to engage) in conduct that has made it difficult to obtain discovery related to these core claims. To be more direct, Craig has forged documents, submitted false Declarations and perjured himself in open court – all in an effort to prevent the truth from being revealed.

After a thorough examination of Craig's "antics" in a series of hearings about the identification of the bitcoin Plaintiffs alleged was mined as part of the parties' partnership, Judge Reinhart entered a sanctions Order in which he made comprehensive findings documenting Craig's misconduct. The sanctions entered included deeming many of the facts supporting Plaintiffs' claims established and striking many of Defendant's affirmative defenses.

Shortly after Judge Reinhart issued this Order, on September 11, 2019, the parties reached an agreement in principle to settle the case. Discovery was abated for nearly two months as the

1

parties worked together to document their agreement. Then, on October 30, and without warning, Plaintiffs were informed Craig could no longer finance the settlement, and that he was terminating the settlement efforts. This left Plaintiffs just over two months to complete fact discovery, and to start, and finish, expert discovery.

Although the task was daunting, it was achievable given that Judge Reinhart's Order had greatly limited the scope of what Plaintiffs needed to prove, both on their own claims and on Defendant's affirmative defenses. Specifically, Judge Reinhart's Order established the existence of the partnership to develop intellectual property and to mine bitcoin. It also struck many of Defendant's affirmative defenses, leaving in place only the ones dealing with time (statute of limitations and laches), personal jurisdiction, and res judicata/collateral estoppel.

The parties were on track to complete fact and expert discovery and to file dispositive motions and motions in limine by the Court's current deadline on January 21. Plaintiffs anticipated also being ready to try this case on March 30th, the trial date set by this Court.

On January 10, 2020, the Court issued its Order affirming in part and reversing in part Judge Reinhart's order (the "January 10th Order"). ECF No. [373]. While the Court did not disturb Judge Reinhart's factual findings regarding Craig's abuse of the discovery process (and expressed agreement with Judge Reinhart's credibility assessment),[1] the Court vacated the sanction deeming certain facts established and striking certain affirmative defenses.

Without the benefit of Judge Reinhart's order, Plaintiffs cannot adequately prepare this case for trial in the original timeframe. As stated above, meeting the prior deadlines was only possible due to the sanctions order. Now that the order has been overturned, Craig's diversion of

---

[1] *See, e.g.*, Order, D.E. [373] at 15 (Jan. 10, 2019) ("The Court has also reviewed the transcripts from the Evidentiary Hearing held by Judge Reinhart and agrees with his credibility findings relating to Defendant. Indeed, in answering opposing counsel's questions, the Defendant was evasive, refused to give and interpret words in their very basic meanings, was combative, and became defensive when confronted with previous inconsistencies.").

2

the parties time and resources into a mini-trial spanning over three months to prove that he submitted forged documents and lied under oath, coupled with the two-month delay caused by his settlement diversion, have made it impossible to meet the current discovery cutoff. Indeed, this Court appeared to recognize this may be an issue by stating that it would "extend the discovery period" in "order to permit the Plaintiffs to conduct additional discovery beyond the presently set discovery cutoff."

After the January 10 order, Plaintiffs immediately moved to postpone the London depositions and asked for leave to file a motion seeking additional relief on or before January 14th. The Court granted that request. ECF No. [375].

Having had a chance to reflect and consider these issues, Plaintiffs now seek a ninety-day extension of the discovery cut-off, as well as a corresponding extension of the trial date and corresponding pretrial deadlines (*e.g.,* deadline for filing dispositive motions, motions in limine, submission of jury instructions, etc.). Plaintiffs need the requested extension to adequately prepare this case for trial. Although it is impossible to predict exactly what will need to be done, and any plan is subject to change based on circumstances including Craig's demonstrated disregard for the truth, Plaintiffs anticipate doing the following:

   A. **Deposing Craig after obtaining information regarding the "bonded courier"**

On January 14, 2019 Craig filed a notice with the Court claiming he's complied with Judge Reinhart's order and provided Plaintiffs with the list of his bitcoin public addresses. ECF No. [376]. The document produced by Craig is simply a list of 16,404 addresses. Craig, however, did not provide any information on the bounded courier, the company he/she worked for, when he/she came, or the message delivered.

Plaintiffs request they be provided with seven (7) interrogatories about the courier that Craig must respond to in ten (10) days. Plaintiffs will then use those responses to seek discovery from the bonded courier and his company. In the interim, Plaintiffs are having their experts review and analyze the list.

Plaintiffs expect that they will be ready to depose Craig after this discovery occurs, in early March.

### B. Deposing other London witnesses

Plaintiffs need to reschedule and take the depositions of Ms. Watts (Craig's wife) and Mr. O'Hagan. These depositions took considerable time and effort to schedule originally, but Plaintiffs are hopeful that they can be rescheduled more easily and taken shortly after Craig's deposition.

### C. Deposing other fact witnesses and obtaining new document discovery

There are additional witnesses Plaintiffs now need to depose and potentially new custodians Plaintiffs now need to obtain documents from. This is partly based on Craig's untimely disclosures and partly based on the fact that Craig is just now (days before the close of discovery) still producing tens of thousands of highly relevant documents. Specifically, since December 31, 2019 (17 days before the previously set close of discovery) Craig has produced 24,032 documents. Some of these documents, *e.g.,* the Tulip Trust III document, have been filed with the Court.[2]

In terms of specific witnesses/custodians, Plaintiffs have already mentioned the bonded courier related discovery above.

Furthermore, on January 5, 2020, Craig untimely disclosed nChain[3] Chairman Stefan Matthews as a potential witness having knowledge about the issues of the case. Plaintiffs therefore

---

[2] To be sure, Plaintiffs are not objecting to the number of documents produced; just to the lateness of disclosure.

[3] Craig is the Chief Scientist for nChain. and Plaintiffs suspect that nChain purchased or otherwise holds an interest in the intellectual property that is the subject of Plaintiffs' claims.

need to seek Matthews' deposition, which will take time given his apparent location in the Philippines.

Second, while nChain was not disclosed in Craig's initial, amended, or second amended disclosures, recently disclosed documents have revealed the extent to which nChain's Chairman Stefan Matthews and nChain investor Calvin Ayre participated in facilitating Craig's unlawful taking of, and capitalizing on, W&K's (and Dave Kleiman's) intellectual property.[4] They have also revealed that Nchain has acquired, with full knowledge of Plaintiffs potential claims, much of the IP at issue in this case. Furthermore, new documents produced in mid-December 2019 show that Craig signed a power of attorney agreement in August 2016 that gave nChain the power to "take any steps or do any thing" that nChain "in its absolute discretion considers desirable in connection with" the IP nChain purchased from Craig, including controlling any litigation over the intellectual property at issue in this case.[5]

Third, Craig has produced documents whose authenticity Plaintiffs seriously question, and which may require Plaintiffs to seek originals of those documents from the Australian courts.

Plaintiff will schedule these depositions (along with any others that may be necessary) and seek these documents as expeditiously as possible, although this process may take longer given certain impediments such as the foreign location of certain witnesses and Craig's continuing abuse of the discovery process despite the severity of Judge Reinhart's sanctions order.

---

[4] Craig's initial disclosures identified numerous companies as having potential knowledge of the IP claims, but never disclosed nChain despite the fact that all or nearly all of Craig's companies appear to have sold the entirety of their IP assets to nChain (then called nCrypt) in December 2015.

[5] This raise issues separate and apart from discovery timelines and while Plaintiffs investigation is ongoing, Plaintiffs may need to seek leave from this Court to belatedly add additional parties due to the lateness in which these documents were disclosed.

## D. New and renewed discovery requests

Craig has resisted many of Plaintiffs' recent written discovery requests by arguing that complying with the demand constitutes an undue burden. Judge Reinhart agreed with Craig's position on many of these objections given that he had to weigh the burden of production against Plaintiffs' need for the information. Understandably, Judge Reinhart weighed that balance based on the posture of the case at the time (*i.e.* key facts deemed admitted and many affirmative defenses stricken). *See, e.g.*, ECF No. [302], Discovery Hrg. 14:15-19 (Nov. 20, 2019) ("What do you think you're going to find in here that you need that you don't already have and that I haven't already given you?"); ECF No. [342], Discovery Hrg. 55:18-21 (Dec. 18, 2019) ("So if my order is affirmed that's moot as a practical matter, because . . . I've already awarded Mr. Kleiman half of what Dr. Wright has."); ECF No. [370], Discovery Hrg. (Jan. 9, 2020) (asking Plaintiffs to explain why additional discovery was necessary in light of the sanctions order).

Obviously, as this Court recognized, the circumstances and balances have now changed. Plaintiffs will need to ask Judge Reinhart to reconsider prior rulings denying Plaintiffs' written discovery requests given these new development. Among other things, Plaintiffs will renew their requests for discovery into the circumstances of the recently produced Tulip Trust III document[6] and their request for additional search terms designed to identify sworn documents.

While this is not meant to be an exhaustive list, Plaintiffs will also need to revisit their request for Defendant to turn over multiple videotapes of his meetings with the Australian Tax Office. The Defendant claimed that it was too burdensome to produce the 124 he possesses. Judge Reinhart agreed, likely due to a combination that discovery was nearly over, key facts had been deemed admitted and many affirmative defenses had been stricken. Those same factors no longer

---

[6] This Court already acknowledged the unanswered questions surrounding the timing and manner of the production of this alleged "blind trust" document just last week.

apply. Indeed, many of Defendant's affirmative defenses revolve around the proceedings that took place in the Australian Tax Office and in the Australian Courts and many of Craig's most substantive admissions concerning his partnership with Dave and his control over bitcoins were made to the ATO. Given the recent changes in the case, Plaintiffs must be allowed to pursue this critical discovery.

Plaintiffs may also bring new challenges to Craig's written discovery responses. To that end, Plaintiffs request relief from L.R. 26.1(g) (requiring all discovery disputes be raised within 30 days) and the ability to raise any discovery response issues to Judge Reinhart within 20 days of this Court's order.

In any event, all of these things take time and the requested 90-day extension is the least amount of time necessary to accomplish these tasks.[7]

E. <u>Unilateral extension</u>

While Plaintiffs' are requesting additional time for discovery, they request that the Court enforce the original discovery cutoff against Defendant given that the current inability to meet the discovery cutoff is entirely a byproduct of his own misconduct and a unilateral extension will allow the parties to focus, and more quickly complete, the remaining discovery Plaintiffs will seek.

### CONCLUSION

Plaintiffs want this case to go to trial as expeditiously as possible. However, as set forth above, the requested extension is unavoidable. Accordingly, Plaintiffs request the Court grant a 90-day extension of the discovery period for Plaintiffs, the pretrial deadlines and the trial of this matter. Specifically, Plaintiffs request the following schedule be entered in this case:

**THIS CAUSE** is now set for trial during the Court's two-week trial calendar beginning on

---

[7] The 90-day extension assumes some base level of cooperation from Craig. Further obfuscation from him could further prolong the discovery process, something Plaintiffs seek to avoid.

**June 29, 2020, at 9:00 a.m.** Calendar call will be held at **1:45 p.m. on Tuesday, June 23, 2020**. No pre-trial conference will be held unless a party requests one at a later date and the Court determines that one is necessary. Unless instructed otherwise by subsequent order, the trial and all other proceedings in this case shall be conducted in **Courtroom 10-2 at the Wilkie D. Ferguson, Jr. United States Courthouse, 400 North Miami Avenue, Miami, FL 33128**. The parties shall adhere to the following schedule:

| | |
|---|---|
| 20 days from this order | Plaintiffs shall raise any discovery disputes based on prior responses from Craig and/or prior rulings Plaintiffs wish to revisit |
| March 2, 2020 | The parties to apprise the Court on progress of discovery (including international discovery), and whether leave to add additional parties will be sought |
| March 27, 2020 | Plaintiff to disclose any supplements to existing expert witness summaries or reports or disclose new experts with summaries/reports |
| April 6, 2020 | Defendant to submit any rebuttal expert reports in response to any supplemental/additional experts disclosed by Plaintiff |
| April 17, 2020 | Plaintiffs' discovery, including expert discovery, shall be completed (if Plaintiffs supplement their expert reports, or disclose new experts, Defendant shall be entitled to depose such experts before this date). |
| May 4, 2020 | All pre-trial motions, motions *in limine*, and *Daubert* motions (which include motions to strike experts) are filed. **This deadline includes all <u>dispositive motions</u>.** Each party is limited to filing one motion *in limine* and one Daubert motion. If all evidentiary issues cannot be addressed in a 20-page memorandum, leave to exceed the page limit will be granted. **The parties are reminded that motions *in limine* must contain the Local Rule 7.1(a)(3) certification.** |
| June 15, 2020 | Parties submit joint pre-trial stipulation in accordance with Local Rule 16.1(e), proposed jury instructions and verdict form, or proposed findings of fact and conclusions of law, as applicable. |

## S.D. FLA. L.R. 7.1 CERTIFICATION

In accordance with S.D. Fla. L.R. 7.1(a)(3), counsel for Plaintiffs conferred with Defendant's counsel who opposes the relief sought here.

Respectfully submitted,

Dated: January 14, 2020

*/s/ Velvel Freedman*
Velvel (Devin) Freedman, Esq.
Florida Bar No. 99762
**ROCHE FREEDMAN LLP**
200 S. Biscayne Blvd, Suite 5500
Miami, Florida  33131
Telephone: (305) 357-3861
vel@rochefreedman.com
nbermond@rochefreedman.com

Kyle W. Roche, Esq.
Joseph M. Delich, Esq.
*Admitted Pro Hac Vice*
**ROCHE FREEDMAN LLP**
185 Wythe Avenue F2
Brooklyn, NY11249
kyle@rochefreedman.com
jdelich@rochefreedman.com

Andrew S. Brenner, Esq.
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd Street, Suite 2800
Miami, Florida 33131
abrenner@bsfllp.com

*Counsel to Plaintiff Ira Kleiman as Personal Representative of the Estate of David Kleiman and W&K Info Defense Research, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 14, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ Velvel Freedman*
VELVEL (DEVIN) FREEDMAN