1               **THE UNITED STATES DISTRICT COURT**
               **SOUTHERN DISTRICT OF FLORIDA**
2

               **WEST PALM BEACH DIVISION**
3
            **CASE NO.:  18-cv-80176-BB**
4

5

6
IRA KLEIMAN, et al.,       )
7                      )
       Plaintiffs,     )       January 2, 2020
8                      )
v.                   )
9                      )       Pages 1 - 44
CRAIG WRIGHT,         )
10                     )
       Defendant.      )
11 _____/

12

13

14
            TELEPHONIC DISCOVERY HEARING
15
      BEFORE THE HONORABLE BRUCE E. REINHART
16         UNITED STATES MAGISTRATE JUDGE

17

18

19

20
APPEARANCES:
21
Counsel on behalf of the Plaintiffs:
22
               BOIES SCHILLER FLEXNER LLP
23                100 SE 2nd Street
               Suite 2800,
24                Miami, FL 33131
               BY:  DEVIN FREEDMAN, ESQ.
25                BY:  KYLE ROCHE, ESQ.

1
   APPEARANCES CONTINUED:

2
   Counsel on behalf of the Plaintiffs:

3
                              BOIES SCHILLER & FLEXNER
4                             100 SE 2nd Street
                              Suite 2800, Bank of America Tower,
5                             Miami, FL 33131.
                              BY:  ANDREW S. BRENNER, ESQ.
6

7

8

9  Counsel on behalf of the Defendant:

10                             RIVERO MESTRE LLP
                              2525 Ponce de Leon Boulevard
11                            Suite 1000,
                              Coral Gables, FL 33134
12                            BY:  AMANDA M. MCGOVERN, ESQ.
                              BY:  ZAHARAH R. MARKOE, ESQ.
13                            BY:  SCHNEUR Z. KASS, ESQ.

14

15

16  Transcribed By:

17                             BONNIE JOY LEWIS, R.P.R.
                              7001 SW 13 Street
18                            Pembroke Pines, FL  33023
                              954-985-8875
19                            caselawrptg@gmail.com

20

21

22

23

24

25

```
 1                    (Thereupon, the following proceeding was held:)
 2               THE COURT:  Good afternoon.
 3               This is Case Number 18-80176; Ira Kleiman versus Dr.
 4  Craig Wright.
 5               Let me start by wishing everybody a Happy New Year.
 6  And then, let me have counsel make their appearances starting
 7  with counsel for the Plaintiff.
 8               MR. FREEDMAN:  Good afternoon, Your Honor.  Devon
 9  Freedman for the Plaintiff.
10               It is a bit hard to hear the Court.  I don't know if
11  there is any way to fix that but --
12               THE COURT:  Is that better?
13               MR. FREEDMAN:  A little bit, yes.  Thank you, Your
14  Honor.
15               THE COURT:  Sure.  No problem.
16               MR. ROCHE:  Kyle Roche for the Plaintiffs.
17               THE COURT:  Mr. Roche, good afternoon.
18               MR. BRENNER:  Andrew Brenner for the Plaintiffs.
19  Happy New Year.
20               THE COURT:  Happy New Year to all three of you.
21               MS. MCGOVERN:  Happy New Year, Your Honor.
22               Amanda McGovern, Schneur Kass, and Zaharah Markoe from
23  Rivero Mestre on behalf of the Defendants.
24               THE COURT:  Good afternoon everybody.
25               Miss McGovern, good to have you back.  We missed you
```

1   the past few hearings.

2          And Mr. Kass and Miss Markoe, Happy New Year.

3          All right.  So I have before me -- and I have reviewed

4   Docket Entry 362, which is the joint discovery memorandum.  So

5   as we always do, let's just go through one at a time.

6          So the first issue is the Plaintiffs' motion for a

7   protective order preventing the deposition of Lynn Wright in

8   Australia on January 13th.

9          So, Mr. Freedman, Mr. Roche, and Mr. Brenner, it is

10  your motion.  Let me hear from you.

11         MR. FREEDMAN:  Sure, Your Honor.

12         What it boils down to that we are just absolutely not

13  available at that time.  I think there are other issues, but I

14  think as I mentioned -- as we mentioned in the memorandum, I

15  have a Barmitzvah earlier that evening.

16         And then, I think it is at 5:45 or so is a flight to

17  London to be in London in time for Dr. Wright's deposition.

18  And the notice has it for 5:00 p.m. on Sunday here in the

19  United States.

20         Now, obviously, we would like to be at that

21  deposition.  The Defendant doesn't currently have an order or

22  an agreement to do it via video.  So it is impossible to travel

23  to Australia in time.

24         Not to mention that by waiting for the last minute and

25  springing an Australian witness on us, we have been deprived

1  the opportunity to get documents from that witness or the time

2  to get letters rogatory issued or to enforce them in Australia.

3  And so we would be prejudiced by not having an opportunity to

4  get documents from Miss Wright.

5       So I guess, to sum up, we can't attend at the time

6  that the subpoena is noticed for in person or by video and we

7  would object to it going forward in its entirety.

8       THE COURT:  Okay.  Miss McGovern, or Miss Markoe, or

9  Mr. Kass.

10      MS. MARKOE:  Yes.  This is Zaharah Markoe, Your Honor.

11      The Plaintiffs haven't made a formal motion for a

12  protective order, but regardless, this was a timely notice

13  under the local rules deposition.  In fact, we formally noticed

14  the deposition of Miss Wright who is a witness who has been

15  well-known to the Plaintiffs from the very beginning of this

16  case and not before this case was initiated.

17      And I think Plaintiffs have, frankly, documents

18  regarding Miss Wright.  But before we timely noticed it, Your

19  Honor, we reached out as soon as we got a date from Miss Wright

20  suggesting that we do it by video conference because of the

21  logistics and we understand those logistics.

22      And unfortunately, that is the only date she has

23  available.  We inquired about other dates prior to close of

24  discovery.  We inquired about the other locations prior to the

25  close of discovery and it is just not available.

1        And so, you know, to block us from having her

2   testimony other counsel from Plaintiff can take this deposition

3   however they choose to take it.  And you know, like blocking us

4   from having this testimony of a witness who may not be able to

5   attend the trial at all would be highly prejudicial.

6        THE COURT:  All right.  Mr. Freedman --

7        MS. MARKOE:  -- and is (inaudible).

8        THE COURT:  Okay.  Mr. Freedman, I did notice before I

9   came up here, according to your web page, your co-counsel has

10  257 attorneys in their law firm.  Why can't somebody else take

11  this deposition?

12       MR. FREEDMAN:  Your Honor, my co-counsel does not

13  really have the entire law firm vested in this case.  There are

14  three key members to this team that really know all the facts

15  necessary to take a deposition like Miss Wright is myself, Mr.

16  Roche, and Mr. Brenner.

17       Mr. Brenner and myself will be in London.  Mr. Roche

18  is going to be defending the deposition of Matthew Edman on the

19  14th.  And I mean, there are a lot of lawyers, but that doesn't

20  mean those lawyers have the requisite subject matter knowledge

21  of the case to depose a witness as substantive as the

22  Defendant's ex-wife who was a witness and who potentially has

23  knowledge about all these facts.

24       And potentially -- I have no idea what she is going to

25  say, Your Honor, and we have no way to prepare for it.  We have

1    no way to get documents for it.  We have nobody who is

2    available to take that deposition now.

3          THE COURT:  Hold on.  You said that you and Mr.

4    Brenner are traveling on the 14th.

5          Hold on.  Maybe I am reading this as the wrong date.

6    The deposition is noticed for Sunday -- it says here January

7    12th; Sunday, January 12th.

8          MR. FREEDMAN:  Right.  Which is the evening -- well,

9    it is for the 13th in Australia, Your Honor, which is the 12th

10   here in the United States.

11         THE COURT:  Okay.

12         MR. FREEDMAN:  That night, the 12th -- meaning, the

13   deposition is scheduled to start at 5:00 p.m. on Sunday and we

14   are scheduled to fly to London at 5:45 that Sunday.

15         THE COURT:  Right.  You and Mr. Brenner are.

16         But you said Mr. Roche is taking the deposition two

17   days later on the 14th.  Why can't Mr. Roche take this

18   deposition or handle this deposition on Sunday?

19         MR. FREEDMAN:  He wouldn't be able to -- well, the

20   facts of the case is that we simply wouldn't be able to get to

21   Australia and back in time to take the Defendant's deposition

22   of Dr. Edman, which is taking place while Mr. Brenner and I are

23   in London.

24         THE COURT:  Okay.  So that would be he has to be there

25   in person.  I understand.

```
 1            Hold on.  I am looking at the rule now.  What he is
 2  the rule that --
 3            MR. FREEDMAN:  Your Honor, there is also just the
 4  sheer number of depositions that are going forward.
 5            I mean, to say that we are working at a beaver pace
 6  just to keep up with the current depositions, prepare for, and
 7  defend them is an understatement.  To add another massive
 8  deposition, whether it is to travel to Australia or not would
 9  severely complicate that.
10            Not to mention we can't get documents from this
11  witness.  Whatever she says, we are not going to be able to do
12  anything about it because we can't get any document production
13  from her to --
14            THE COURT:  Hold on.  We have been doing document
15  production in this case for well over a year.
16            It's no secret that Miss Lynn Wright is a person who
17  might have information.  And I dare say that Plaintiff in this
18  case have never been bashful about pursuing discovery in this
19  case.  So, you know, this argument that all of a sudden we
20  don't have any discovery on her, explain that.  Flush that out
21  for me.
22            MR. FREEDMAN:  Your Honor, it is just that Miss Lynn
23  Wright has not been put on the initial disclosures of the
24  Defendant.  And so we have thought that, yes, obviously we were
25  entitled to go to Australia to get documents from her or get
```

1   documents from her to take her testimony, but if she wasn't

2   going to be noticed by the Defendant as a witness in the

3   initial disclosures or in the amended initial disclosures, it

4   was not going to be needed to do.

5       And now we were not going to call her and as far as

6   their initial disclosures said they were not going to call her.

7   Now they have done an about-face on that and in the ninth hour

8   told us that they are going to call her as a witness, which

9   forces our hand without enough time to get documents directly

10  from Miss Wright.

11      THE COURT:  Okay.  Well, what does the rule say --

12  well, let me address a different issue, which is you said you

13  haven't consented to the deposition occurring telephonically.

14      And it sounds to me at least like if I have the

15  authority to do so and if I elected to do so, both of which I

16  haven't decided yet, to have this done telephonically that Mr.

17  Roche could handle it as a telephonic deposition.

18      So, Mr. Freedman, I will turn to you.  What is the

19  rule as to whether a deposition can be taken telephonically or

20  not?  Do I have the authority to order that or is that

21  something the parties have to agree to?

22      MR. FREEDMAN:  You have the authority to order it,

23  Your Honor.

24      THE COURT:  Okay.  Why shouldn't I?

25      MR. FREEDMAN:  I think, Your Honor, because of what

1    the issues I have just pointed out although you have the

2    authority to order a telephonic deposition -- let me take a

3    step back.

4         The Court has the authority to order us to take a

5    deposition via telephone or other remote means.  The parties

6    would still be entitled, if it wants, to attend that deposition

7    in person, which is something we would like to do if possible

8    because this witness is important.

9         And otherwise, they wouldn't be taking a witness

10   deposition from a witness in Australia and we would want to

11   send someone there and we cannot send them there at the time

12   they currently set it for.

13        So I think step one is I don't know the answer of

14   whether the Court is entitled to force to us take it

15   telephonically.  Although, if the Court entered a protective

16   order that would be the case.  So I guess by default that would

17   happen, but you certainly have the authority to permit it to be

18   taken telephonically.

19        I think the second issue is beyond wanting to be there

20   in person and not being able to, Miss Wright was not a witness

21   in this litigation because she was never part of the initial

22   disclosures.  And there has been no indication from the

23   Defendant that they would ever call Miss Wright as a witness.

24        And so, by now injecting her date before the discovery

25   closes, we can't get documents from her.  Again, yet we have

1  documents from Dr. Wright, but we don't have documents from

2  Miss Wright and there is certainly a difference.

3         In fact, in one of the Defendant's deposition he said

4  he left a box of documents about his divorce settlement, I

5  think, with his wife on the property.  And we are not going to

6  be able to get those documents and he says he doesn't have

7  them.

8         I mean, there are all kinds of things we won't be able

9  to get now because they've waited too long.  Had they listed

10 her on their initial disclosures, or told us within a

11 reasonable time that they intended to call her, we would have

12 been able to started a -- process and take her deposition and

13 get her documents, but now we can't.  And why should they be

14 able to sandbag us like that?

15        THE COURT:  Miss McGovern, I will give you the last

16 word or, Miss Markoe, I will give you the last word.

17        MS. MARKOE:  Your Honor, I don't think this is at all

18 about sandbagging.

19        In fact, we've made combinations for Plaintiff to have

20 at the last minute insisted that we fly to various locations

21 for depositions such as Jamie Wilson's deposition about any

22 documents in less than a week's notice and, you know, we've

23 done that.

24        In this case, she is also not on anyone's initial

25 disclosures.  Although, all parties obviously were aware if she

12

1  was.  So there is that.

2          So with regard to documents we have not received any

3  documents from Miss Wright directly.  If we had we would have

4  produced them.  We don't have them.  We have a (inaudible) but

5  we are not going to.

6          With regard to the divorce settlement documents that

7  is a document that has been recently located in our database

8  and was recently produced to Plaintiff.  And so we found it and

9  they have it.

10          This is a witness who, like I said, is the only

11  available date prior to the close of discovery.  They have had

12  ample notice under the local rules.  And we are more than

13  willing to do this deposition by video conference, by

14  telephone, however it can be done to get it done.

15          And based on my resources -- I actually don't have it

16  right in front of me that we can pull up, but Your Honor does

17  have the authority to order, if it is reasonable, the video or

18  remote means of deposition.

19          In fact, Courts often favor them for precisely these

20  reasons of cost efficiency and time issues particularly in

21  these situations.  And this is a situation further where this

22  is a witness to be deposed under the Federal Rules of Civil

23  Procedure and not under (inaudible).

24          THE COURT:  Understood.

25          Okay.  I am going to order the following.  I am going

1   to order the deposition to go forward as noticed on the 12th.

2   I will authorize it pursuant to Rule 30(b)(4).  I am ordering

3   that the deposition may be taken by telephone or other remote

4   means to be selected by the Defendant as the parties who

5   noticed the deposition.

6        I will order that that order is without prejudice to

7   the Plaintiffs objecting to the use of the deposition at trial.

8   This is discovery still.  I am not saying this is admissible at

9   trial.  I am saying you could take the deposition.

10       Under these circumstances I do not find that their

11   need to procure documents is a sufficient reason to delay the

12   deposition.  I do not find that the need to have a person

13   physically present in Australia is a good reason to delay the

14   deposition given the state of the case right now, but I will

15   make clear on the record that my order is without -- I am not

16   ruling on the admissibility of this deposition at trial.

17       Also, I am making this order without prejudice that

18   after the deposition, if the Plaintiffs want to move to reopen

19   limited discovery, based upon testimony that occurred at the

20   deposition, they could make that request of me or of Judge

21   Bloom and I am not ruling on that at this time either.

22       So that is how I am going to balance the need here to

23   get this done within the discovery deadlines, but also not to

24   unduly prejudice the Plaintiffs.  So that would be the Court's

25   order as to the deposition of Lynn Wright.

1          Okay.  What about as to the other issue, which was the

2   request for admission?  Again, Mr. Freedman, I think that one

3   is yours, the expedited responses to the Plaintiffs' second

4   request for admission.

5          MR. FREEDMAN:  Yes, Your Honor.

6          You know, under the deadline I believe the responses

7   are due on the 19th of January.  And we would just like to be

8   able to use them in summary judgment briefing and to know what

9   questions need to be asked of Dr. Wright.

10          They are requests for admission.  These aren't like

11   interrogatories.  It is either admitted or denied and we think

12   it is not that big of an ask.  And it would certainly help

13   focus the deposition of Dr. Wright and potentially narrow the

14   issues for summary judgment.  And we believe it is appropriate

15   that a simple motion to expedite the responses by a week or so

16   is not that big of an ask.

17          THE COURT:  Okay.  I am going to turn to Miss McGovern

18   and Miss Markoe or Mr. Kass in a second.

19          So these were served on December 20th.  So they

20   ordinarily would be -- the responses would be due January 20th

21   and you are asking to have it expedited to January the 8th.  Is

22   that the ask?

23          MR. FREEDMAN:  I think January 19th, Your Honor, but

24   maybe I miscalculated the 30 days.

25          THE COURT:  Okay.  But the ask is --

1      MR. FREEDMAN:  So it is a Sunday.

2          Sorry, Your Honor, the 20th.  We are asking for it to

3   be pushed to the 8th or, I believe, you know, a day or so

4   before the deposition of Dr. Wright.

5          If not, if Defense counsel couldn't do the 8th, but

6   they could do the 10th, that would be fine, too.  We just

7   really would like it a day or two before the deposition so we

8   can review the responses and --

9      THE COURT:  Sure.

10     MR. FREEDMAN:  -- modify any deposition questions.

11     THE COURT:  I understand the ask and I apologize.  I

12  don't have the exhibit in front of me.

13         How many requests for admission are there that you are

14  asking to have an expedited response to?

15     MR. FREEDMAN:  There are a lot, Your Honor.

16         I think maybe 64, but a lot of them are very

17  repetitive.  They are along the lines of:  Admit that you mined

18  at least 100,000 bit coins before ex-date; admit that you mined

19  at least 200,000 bit coins beyond this date; admit that you

20  mined at least..."  It's very repetitive.

21     THE COURT:  Okay.  All right.  Let me --

22     MR. FREEDMAN:  There are 64 of them.  But, like I said

23  many of them are very repetitive.  Admit that at least 500,000

24  bit coins haven't moved.  Stuff like that.

25     THE COURT:  Okay.  Let me turn to the other side.  I

1  don't know who is going to take that one.

2        MR. KASS:  Your Honor, this is Schneur Kass.  I'll be

3  handling this.

4        THE COURT:  All right.  Mr. Kass.

5        MR. KASS:  First the subject matter for the request

6  for admission, but some of them are very repetitive.  You also

7  have most of these other requests that are a little harder to

8  answer.

9        For example, admit that Dave Kleiman trusted you.

10 It's things like that.  It is not just all cookie-cutter, but I

11 think the bigger issue that I want to raise is that these

12 requests aren't timely under the local rules.  Rule 26.1(b)

13 requires that:

14        "Written discovery requests must be served in

15 sufficient time that the response is due on the report

16 discovery cutoff."

17        And it goes on to state:

18        "That failure by the party of the discovery to comply

19 with this paragraph obviates the need to reply or object to the

20 discovery."

21        They have served these requests on December 20th.

22 Discovery cutoff is January 17th and I believe Your Honor it is

23 not really about shortening of time or not.  They responded

24 untimely.

25        And further, to the extent they do need this

1    information there are other means available to them that they

2    would be deposing Dr. Wright this month in January on two dates

3    on the 14th and the 15th in London.  If they have any questions

4    they are able to use that time to ask him these questions.

5            THE COURT:  Okay.  Understood.  I'm not going to have

6    you -- I am going to have you bid against yourself slightly in

7    this sense.  I haven't had a chance to look at the local rule.

8    That wasn't cited to me in the joint discovery response and I

9    don't criticize anyone for that, but I will need to go back and

10   take a look at that.

11           But assume for the sake of discussion, I don't agree

12   with your procedural argument, is there any period of time that

13   you believe short of the full 30 days would be reasonable for

14   you to respond to some, if not all, of the request for

15   admission?

16           MR. KASS:  Your Honor, under the circumstances, we

17   don't believe so.  Again, it is the amount of interrogatories

18   -- I mean, request for admissions that they are asking.  They

19   are asking for 64 and also Plaintiffs have already pointed out

20   there are a list of depositions that are going on one after

21   another after another.

22           And Your Honor, based on our reading of the local

23   rules, we haven't even attempted to try and answer these.  The

24   local rules say we do not have to.  So it is really starting

25   from right now -- and when you it with Dr. Wright's deposition

1   he is going to be preparing for it.  And counsel is going to be

2   out of the country from one deposition to another deposition

3   and to respond to all of these requests for admission are very

4   serious.  And you know, it is not something that we do -- we

5   have to sit down with Dr. Wright and work out the responses and

6   considering everything else that is going on in the case, Your

7   Honor, it would be impossible.

8            THE COURT:  Okay.  I understand.

9            Mr. Freedman, I will hear from you further.  I want to

10  go look at the local rule and see if there is any case law on

11  this before I rule.

12           So I am going to take this under advisement, but I

13  promise you I will get an order out tomorrow so that you all

14  know what is happening before the weekend hits.  But, Mr.

15  Freedman, anything further you would like to add, I am happy to

16  hear you.

17           MR. FREEDMAN:  Your Honor, I would add just two

18  things.  I think it is a little strange that counsel is

19  objecting to answer our requests for admission.

20           But, yet, at the same time, believe that there is

21  sufficient time for us to take entirely new depositions while

22  we are preparing two parties for, you know, W&K and Ira Kleiman

23  and also running around the country to prepare.

24           If there is enough time for Plaintiff to prepare for

25  deposition of Miss Wright, as the Court obviously believes

1  there is certainly enough time to answer requests for

2  admission.

3          In regards to the local rule, Your Honor, as part of

4  the cost, the reason why we asked for the -- yes, the Rules of

5  Civil Procedure provide that a party can ask for an expedited

6  response and we have done so.  And so, you know, if the Court

7  grants our request, then, it would be before the completion of

8  discovery.

9          If the Court does not grant our request, then, you

10  know, I would have to research the rule.  Nobody pointed the

11  rule out to me in the discovery motion.  So I wasn't prepared

12  to address it.

13          THE COURT:  All right.

14          MR. FREEDMAN:  But, I think if the Court hastens the

15  day for response, I think that would obviate the issue with the

16  local rule.

17          THE COURT:  I understand.  I am going to take this

18  issue under advisement so I can take a thoughtful look at the

19  local rule.

20          And also, like I said, see if there are any cases

21  interpreting this situation.  So I will get a written order out

22  within the next 24 hours so that you all know what my order is

23  before the weekend hits.

24          All right.  Then, let me turn , I think the third item

25  in the joint memo had to do with the devices, which I think we

 1   talked about last time when we were all together that

 2   AlixPartners had some information that they -- I'm going to get

 3   the wrong verb here -- wanted to turn over to Dr. Wright, but

 4   that based on my prior order the Plaintiffs had the right to

 5   review and scrub anything before it went across to Dr. Wright's

 6   team.

 7           And I think at the last hearing that was the

 8   discussion was I think, Mr. Freedman, you had said we were

 9   doing the best we can, but we've got a lot to go through and we

10   are just not there yet.  So update me on where we are and if

11   this is the same request or if this is something different.

12           Hold on.  Let me start with Mr. Kass.  This is the

13   Defense's request.  So let me have Mr. Kass go first.

14           MR. KASS:  Your Honor, I just want to be up front with

15   my two asks with regard to this.

16           So, yes, our ask is that you authorize AlixPartners to

17   provide us with immediate access to documents recovered from

18   these devices after running search terms to any potential

19   privileged documents.  And our second ask is to get guidance

20   from the Court as to whether documents created by Ira Kleiman

21   could be work product as it appears Plaintiffs are claiming.

22           And Your Honor, and going back to the prior ruling at

23   the hearing, as Your Honor correctly stated, Plaintiffs said

24   going forward and we're going to work on (inaudible) and get

25   the documents as soon as possible.

1       And then, we had a meet and confer with Mr. Freedman

2  the following day where we discussed it.  And he assured me

3  that we would get it within the next days, the rolling

4  production, very quickly.  And now we are almost two weeks

5  produced those documents and we haven't received a single

6  document.

7       And these documents are very important to this case.

8  We believe that it can have very crucial evidence.  And

9  Plaintiffs are now proposing that they will get us all the

10  documents on January 7th.  This is just two days before Ira

11  Kleiman's deposition.  But, your Honor, that is simply not

12  enough time to get documents to be able to use them before the

13  deposition.

14       Now, I understand Plaintiffs have stated that they

15  have privilege concerns, but for that there are protections

16  that we are proposing.  Like we said, we will run search terms

17  for any attorney names or have our department not list any of

18  those documents.  Those documents would go directly to

19  Plaintiffs.  They could also claw back with a confidentiality

20  order.

21       And then, also on this issue, I just want to point out

22  with regard to the protective order, which is Docket Entry 117,

23  it says that Plaintiffs have a reasonable time to review it.

24  And we submit, Your Honor, two weeks to review documents and

25  proposing either documents for depositions is not reasonable.

1       And as to the second ask with our documents of Ira

2   Kleiman were not really -- no one understands that issue very

3   well with what Plaintiffs are stating and we understand that

4   (inaudible) those are somehow work product and, therefore, they

5   should be privileged.

6       And our concern is that they are withholding documents

7   that are somehow connected to that and we think are very

8   important that we may not be getting.  So we also would like

9   some guidance from Your Honor as to whether that is a

10  legitimate basis to withhold that testimony.

11          THE COURT:  Okay.  Let me hear from Mr. Freedman.

12          MR. ROCHE:  Your Honor, this is Mr. Roche.

13          THE COURT:  Sure.

14          MR. ROCHE:  I think it is important to put this

15  request in the proper timeline because the protective order

16  that governs does provide for a reasonable time for Plaintiffs

17  to review (inaudible).

18      Late November we received approximately 2,000

19  documents recovered from the deleted space off of the drive

20  provided to Ira.  We, you know, admit that at the hearing.  Mr.

21  Kass raised an objection to how long that review was taking.

22  We expedited that immediately and got it to him within a few

23  days.

24      The issue we're currently taking now is the December

25  documents produced to us on December 20th.  This November

1    production was roughly 2,000 documents.  This most recent

2    production was almost 19,000 documents.  We immediately, on

3    December 20th, sent it off to our discovery vendor.

4         It was in our reviewed system on the 23rd.  And given

5    the holidays, the 24th and the 25th our review team was off,

6    but we got a team of over ten reviewers in place on, I believe,

7    either the 26th or the 27th.

8         We had the call on the 26th and the team was back in

9    place reviewing documents on the 27th.  19,000 documents is a

10   lot.  We had to put together very quickly a team over the

11   holidays, jammed between two holidays, to get all the privilege

12   review done.

13        We are going to get that done and we are going to have

14   that produced on this coming Tuesday, three days before Ira's

15   deposition, which I believe gives the other side plenty of

16   opportunity to review those documents and run search terms

17   across those documents.

18        And you know, given what we've done to bend over

19   backwards to get this production done in time for them to have

20   these documents for the deposition, I don't see what the issue

21   is.

22        If you look at the timeline of this litigation, these

23   are drives that they had burned back in March.  So we are

24   getting documents done on the eleventh hour of discovery.  You

25   know, we're not objecting to the documents, but I do think that

```
 1  that is appropriate to view in light of Defendant's request
 2  here.
 3           THE COURT:  Okay.
 4           MR. FREEDMAN:  Your Honor --
 5           THE COURT:  Hold on.
 6           Mr. Roche, are you done?  Mr. Roche, are you finished?
 7           MR. ROCHE:  Yes, I'm done.  Yes, I'm done.
 8           THE COURT:  Does someone else want to speak on behalf
 9  Dr. Wright's team?  I'm sorry.  Mr. (inaudible) team?
10           MR. FREEDMAN:  Your Honor, this is Mr. Freedman on
11  behalf of the Plaintiff.
12           THE COURT:  Yes, Mr. Freedman.
13           MR. FREEDMAN:  I want to address the privilege issue
14  that Mr. Kass suggested that we search for or run search terms
15  across the data.  I want to explain to the Court why that
16  simply wasn't possible.
17           There are some attorney/client communications that
18  were stored on this drive.  That might work, but the issue here
19  is that Mr. Kleiman had spent a great deal of time -- Ira
20  Kleiman has spent a great deal of time reviewing the documents
21  in this case and annotating them and putting down theories in
22  the case and creating work product in anticipation of
23  litigation, which is clearly protective.  There is no way to
24  create search terms that would find those documents and so we
25  would need to review them.
```

1          And as the Court recalls back in March when the Court

2    made its initial order to turn over the documents to

3    AlixPartners, I explained to the Court that my client was very,

4    very apprehensive about these drives because of the nature of

5    the sensitive materials on them.

6          Including personal family medical health records and

7    all things like that to be turned over to the Defense, to

8    Defense counsel.  And the Court entered this order to

9    established that and gave us a reasonable time to review.

10         It is simply not reasonable to expect us to turn

11   around and -- almost 18,000 documents immediately.  And

12   especially when the Defendant has had these documents since

13   March of 2019.  I requested that the Defendant tell us when

14   they asked AlixPartners to begin recovering these documents, if

15   they ever asked AlixPartners to stop recovering these

16   documents, and when they received the documents from

17   AlixPartners that they were ready to be produced to us.

18         And I asked them that they give us the answer to that

19   before the hearing so that I would be able to measure whether

20   or not this was truly their fault for waiting.  And now trying

21   to bypass the Court's protections of Ira Kleiman's privilege or

22   simply just logistics, but they ignored that request.  I don't

23   have that date in front of the Court.

24         My client is extremely concerned about this material

25   and to that end put together at great cost, put together a team

1  of ten reviewers to put this around.  We are going to make it

2  into a production I think on the 4th or the 3rd.  I forgot

3  exactly the date.  We are going to make one interim production

4  and then the balance we will send by January 7th.

5          And under the circumstances, Your Honor, I think that

6  is reasonable and Mr. Kleiman's privilege should not be

7  circumvented.

8          THE COURT:  Just so I am clear, Mr. Freedman,

9  factually when you talk about annotations, I assume you have

10 this material in some sort of a document management system so

11 Mr. Kleiman can log on and he can annotate so that you and your

12 colleagues can review his notes and that is what you are

13 concerned about?

14         MR. FREEDMAN:  No, Your Honor.

15         Before we were retained and while we were retained,

16 but before we were retained -- well, let me take a step back.

17         The drive holds -- these drives were Dave Kleiman's

18 drives and there was a period of time before this litigation

19 was brought where Mr. Kleiman was using those drives.  And the

20 Defendant is now going after the deleted space in those drives

21 and they want to try to recover deleted space from the

22 documents from the deleted space from those drives.

23         The problem is that my client has told us that he

24 stored on those drives documents he prepared while preparing

25 for this litigation; finding counsel, speaking to counsel.  I

1  wasn't the first lawyer that Mr. Kleiman spoke to.

2          THE COURT:  Okay.

3          MR. FREEDMAN:  And for a long time he had dealings

4  with Dr. Wright where he was misleading him.  He had dealings

5  with Ramona Watts when she was misleading him.

6          And you know, at a certain point, he began realizing

7  that there was going to need to be litigation here and he began

8  annotating these documents to figure out what was going on and

9  what was really happening.  And I don't know whether any of

10  those documents were deleted, or moved, and they are in the

11  deleted space.

12          THE COURT:  Okay.

13          MR. FREEDMAN:  And that's why this entire process is

14  put in place so that we would have a reasonable opportunity to

15  review these documents produced for privilege.

16          THE COURT:  Understood.

17          MR. FREEDMAN:  And 19,000 documents turned around in

18  that short a period of time is unreasonable.

19          THE COURT:  Okay.  I understand.  Let me turn back to

20  Mr. Kass and give him the last word.

21          MR. KASS:  Your Honor, I just want to start off again,

22  even if it is one document, there has not been a rolling

23  production.

24          Plaintiffs have stated they have had attorneys working

25  on this since, I believe, the 26th which we believe should have

1   happened earlier.  We've been working through the holidays.  I

2   know counsel has been working through the holidays because they

3   even have sent e-mails on New Year's Day.  So there's that.

4        We still haven't received one document and it is not a

5   rolling production.  It is really just waiting for the last

6   minute.  So because of that, again, I want to focus on we are

7   only looking at the deleted data.  So it is really not clear

8   why Ira's notes that he had written will be in the deleted

9   data.  The non deleted data we are not asking to have access

10  to.

11       And then there's a separate issue, which we initially

12  raised, is whether any of Ira's thoughts about this case could

13  be work product.  Your Honor, he's not an attorney and we don't

14  even see the basis for that privilege.

15       And then, lastly, Your Honor, if there is simply just

16  privilege, again, why does it take so much time to review the

17  documents, privilege or not?  Either way we could have been

18  receiving documents this entire week other than Plaintiffs that

19  are dragging it out.

20       And one more thing, Your Honor, that after this whole

21  timeline -- after the document and what we would be doing,

22  again, Your Honor, other (inaudible) Plaintiff, AlixPartners

23  had to fly all the way here to Miami to read into those drives.

24  Once we got the correct images of all the drives we have to run

25  software.  The first software wasn't initially comprehensive.

1   And then, we have to run another software and then we have to

2   run it through (inaudible).

3           And all this time, again, this is to get stuff that

4   Ira deleted in this case from these devices.  So we've been

5   doing our best that we can.  We've first gave these documents.

6   We started to give the documents to Plaintiff in November,

7   again November 27th, and they didn't produce any documents

8   until three weeks later.

9           So after November they were definitely on notice that

10  they were getting documents from these devices.  They said they

11  would produce these documents on a rolling basis.  They haven't

12  done that.  Your Honor, it is not reasonable.  Your protective

13  order compensates additional order by the Court from the

14  (inaudible) order by this Court.

15          For that reason, Your Honor, we are asking that you

16  permit AlixPartners to be immediately provided with the needed

17  access to get the data that was deleted from these devices, as

18  well as providing some protections from potential privileged

19  documents such as (inaudible).

20          THE COURT:  All right.  Thank you very much.

21          I am not going to revisit my prior order relating to

22  the process that should be employed here.  I think that even if

23  I were to order them to turn over everything to the Defendants

24  we're talking about the difference between today and Tuesday.

25          What I am going to do is I am going to order -- and I

1  do find that if they got 19,000 documents on December 20th, it

2  is not unreasonable for them to take two weeks to turn them

3  around given the holidays.  So I don't find it unreasonable for

4  it to take them this long.

5          What I am going to order is, by 5:00 tomorrow, I am

6  going to order the Plaintiffs to turn over whatever it is that

7  has already been reviewed.  So anything that has been reviewed

8  and for which a privilege is not been asserted to date should

9  be turned over by 5:00 tomorrow and that the balance shall be

10  turned over by 5:00 on Tuesday the 7th.  That should give the

11  Plaintiffs -- or Defendants a robust production to get started

12  on and then they will get the balance on Tuesday.

13          And again, this is without privilege.  That if it

14  turns out there is a production and after Mr. Kleiman's

15  deposition is taken, the Defendant's feel they have been

16  prejudiced in some way that they need to reopen that deposition

17  based upon additional information that they are able to discern

18  from those documents, I will entertain that motion, but that

19  will be my order as to the AlixPartners materials .

20          So rolling production, partial production by close of

21  business tomorrow with everything that is ready to go by then,

22  and the balance by 5:00 on Tuesday.

23          All right.  Without waiving any objections that you

24  may have to the rulings that I have now made this afternoon,

25  let me turn to the Plaintiffs.  Is there any issue that you

1   want to raise that I haven't addressed?

2            MR. FREEDMAN:  There is, Your Honor, two issues.

3            One is that a privilege log, we have produced our

4   privilege log fully over to the Defendant with the exception

5   that there is maybe a thousand documents that we are finalizing

6   our review on.  But however many tens of thousands have been

7   reviewed, or whatever produced, it has been fully produced

8   over.

9            I raised, a while back in early December, that we

10  needed the Defendant's privilege log to begin reviewing those

11  logs and the Defendant agreed to a rolling production.  They

12  gave us one installment that was relatively shortly after

13  December 12th.  I don't remember exactly when.  I don't have a

14  date in front of me, but we have not received another

15  installment of the privilege log.

16           We were just running out of the time now to review the

17  privilege log and challenge it.  Especially with all the

18  depositions that are going forward.  I believe I sent an e-mail

19  or two on this and I haven't heard back and we need those

20  privilege logs.

21           THE COURT:  That's one issue.  You said you had two.

22           MR. FREEDMAN:  With that issue, Your Honor, in light

23  of the fact that the Court has ordered the deposition to go

24  forward of Miss Wright this Sunday evening at 5:00, if the

25  Court could also order the Defendants to turn over any

1    communications between him and his wife that he has in his

2    possession since the filing of the lawsuit until the

3    deposition.

4          So at least we will have some documents on it that

5    will helpful to help us prepare for the deposition and we could

6    get that tomorrow or the day after.  I mean, we don't have a

7    lot of time to prepare for this deposition.

8          THE COURT:  Okay.  I understand those two issues.

9          MR. BRENNER:  Your Honor, just to recognize one

10   additional housekeeping matter which --

11         THE COURT:  Sure.

12         MR. BRENNER:  -- is we can know from your end who we

13   should be coordinating with to secure on the video conference

14   with Dr. Wright's deposition.

15         THE COURT:  If you contact Miss Kenny, my law clerk,

16   she will put you in touch with our IT people and they will hook

17   it up.

18         MR. BRENNER:  Okay.  We will do that.

19         THE COURT:  Okay.  Thank you, Mr. Brenner.  I

20   appreciate that.

21         All right.  So let me turn to the Defense side in

22   terms of the two requests; one is relating to the status of

23   privilege log and one is the request for some documents

24   production relating to -- not to Ramona Watts.  It's the

25   current wife.  Lynn Wright.  So who wants to take that one?

1          MS. MARKOE:  So with regards to the privilege log, we

2    produced documents that we were reviewing documents and

3    producing documents on a rolling basis and we provided a log

4    for that production.  We recently made another two productions

5    and a backlog for that document.  And we should be able to

6    hopefully review that and turn that over by Monday --

7          THE COURT:  Okay.

8          MS. MARKOE:  -- for production and that's how we're

9    doing it.  (Inaudible) make a log a day or two later.  We

10   review it and try to get it out as soon as possible.

11         THE COURT:  Okay.

12         MS. MARKOE:  A little bit longer because it is looking

13   through all the formatting and logistics and making sure we

14   have all the right information in there and that should come

15   more quickly after production.

16         THE COURT:  All right.  Then I don't think --

17         MS. MARKOE:  (Inaudible).

18         THE COURT:  If those are going to get out early or the

19   middle of next week, then I am not going to get involved at

20   this point.  It sounds like that is something you all should

21   confer on and that sounds reasonable to me.

22         But, obviously, Mr. Freedman, if there is additional

23   prejudice or some issue that arises when you get the privilege

24   logs, you can revisit that with me.

25         Miss Markoe, Miss McGovern, Mr. Kass, what about the

1  request for voluntary production of documents relating to Lynn

2  Wright?

3      MS. MCGOVERN:  The first reason that we just want to

4  make one clarifying comment about the deleted space data.  To

5  the extent that Plaintiffs are going to be asserting privilege

6  for any of the documents in the deleted spaces it is our

7  position that we should get a log of that information.

8      THE COURT:  Okay.  Well, I will take that up with Mr.

9  Freedman in a second.  Let's shoot over to Lynn Wright's

10 deposition for just one second.  Who wants to handle that?

11     MS. MARKOE:  With regards to the Lynn Wright

12 deposition what I found that they are asking for is documents

13 between Dr. Wright and his ex-wife after this litigation was

14 initiated and after the Court had already ruled that the

15 timeframe and a month after the litigation commenced.

16     So I am not really sure -- it seems like that is not

17 (inaudible) and useful.  And B, if they want to ask about any

18 communications that they had or any conversations they had,

19 they can certainly ask that at deposition, but with regard to

20 this document production that's a whole, like, different ball

21 of wax.

22     It is not anything that has been collected.  It is not

23 anything that anyone envisioned, you know, would be part of the

24 case because it is (inaudible) the Court in February.  We are

25 all under the impression that the discovery, the timeframe for

1  discovery is not today.

2          THE COURT:  Miss Markoe, let me just ask you --

3          MR. FREEDMAN:  Your Honor, may I respond to that?

4          THE COURT:  Hold on.  I will give you a chance to

5  respond in a second.  I have a question for Miss Markoe first.

6          Miss Markoe, you may have said this earlier and it may

7  have whizzed by me, but do you have any specific documents that

8  you know that you are going to use to question Miss Wright or

9  are you saying that you don't have any documents?

10          MS. MARKOE:  There are documents that we have from our

11  database and that have been produced to Plaintiffs.

12          THE COURT:  Okay.  Would there be any objection --

13          MS. MARKOE:  Most of the documents that we would be,

14  you know, asking Miss Wright about.

15          THE COURT:  Obviously, I don't believe that Plaintiffs

16  have access to Miss Wright.

17          Do you have any objection to producing to them in

18  advance of the deposition whatever documents, without prejudice

19  to you supplementing it, obviously, but producing to them

20  things you know you are going to use so they can at least focus

21  on whatever small universe of documents you are going to use at

22  the deposition?

23          MS. MARKOE:  I mean, the documents are fully available

24  to them.  I ran a search for stuff that might be relevant.

25  What I think is relevant may not be what they think is

1  relevant.  And what I might plan on using is what I may not

2  actually use.

3         So, to me, what I am thinking about right now is work

4  product and I think we are all well practiced that depositions

5  go as planned and not as planned.  And sometimes you use

6  documents you plan on using and sometimes you wind up not using

7  all the documents.

8         THE COURT:  I understand.

9         MS. MARKOE:  I mean, we've never in advance shared

10  documents.  In fact, they had us do Jamie Wilson's deposition

11  on last minute notice and did not provide any documents.  In

12  fact, I think they still have yet to provide documents that

13  they (inaudible) almost over a month after his deposition took

14  place.  So, you know, I think that --

15         THE COURT:  Okay.  So the answer is you do object?

16         MS. MARKOE:  It was a reasonable ask.

17         THE COURT:  It was my ask and not theirs.  So I

18  understand your objection.

19         MS. MARKOE:  Yes.

20         THE COURT:  So that's fine.  I just wanted to ask the

21  question.

22         Okay.  Mr. Freedman, now I will let you speak.

23         MR. FREEDMAN:  Your Honor, I'm so glad Miss Markoe

24  brought up Mr. Wilson because Mr. Wilson and as well as Mr.

25  Warren, the Plaintiffs received requests from the Defendant for

1  request for production for all communications between Defendant

2  and his lawyers and those witnesses up to the time of the

3  deposition.

4       That was clear in the meet and confer we had and we

5  agreed to produce them because we agreed it would be relevant

6  because the case is with a potential witness.

7       For Dr. Wright to be conspiring with his wife and if

8  he does that, it goes to bias and that does not stop at the

9  filing of the complaint.  So we have a right to say recognize

10  for other witnesses they wanted to get those communications

11  between them.

12       And there just simply isn't enough time because now we

13  can't even send a request for production for those now because

14  the time is up to ask for request for production as Mr. Kass

15  said before.  It's just all compounded by the issue of

16  springing this witness on us at the last minute.

17       The other issue that kind of folds into this, Your

18  Honor, is just on the 31st, at a quarter nine p.m., the

19  Defendant produced an additional 15,000 documents on us.  And I

20  still don't know when the documents are going to end.

21       I mean, how do we prepare for (inaudible)?  When are

22  they going to be fully produced?  Dr. Wright's deposition is

23  coming up.  And they say that we have the documents, but they

24  are hidden in the midst of thousands and thousands of

25  documents.

1          Which normally it would be fine if they are produced

2    timely, but we produced all of our documents.  There are some

3    new request for production that we still have to produce under,

4    but they are still producing tens of thousands of documents to

5    us as late as the 31st and they are saying they are going to be

6    producing more.

7          When are we going to have time to review these and

8    depose Dr. Wright?  There needs to be a sign when they are

9    fully produced and we thought they were --

10          THE COURT:  Hold on.

11          MR. FREEDMAN:  And it was Miss Markoe's response that

12   she has produced most of these documents really isn't that

13   helpful because I don't know when she produced them.  And there

14   are thousands, tens of thousands of documents that are still

15   being produced.  There isn't a privilege log done.  There's a

16   problem here, Your Honor.  We can't prepare adequately like

17   this.

18          THE COURT:  Hold on.  Let me go back a step.  I will

19   address all that in a second.

20          Miss Markoe had also raised the issue of whether --

21   and maybe this is a Mr. Roche question -- as to the production

22   of the materials that were identified by AlixPartners, I know

23   you are looking for privileged materials.

24          Do you anticipate that you will be asserting privilege

25   and do you have a general sense as to how voluminous the

1   privilege assertion will be?  Again, I am just trying to --

2          MR. ROCHE:  I don't know yet, Your Honor.  I don't

3   know yet, Your Honor, because we've had to hire outside vendors

4   to comply with the 20,000 documents so quickly.  So I just

5   haven't had time to talk to them about what they have found

6   yet.

7          I can tell you that in the first installment of a

8   little over 2,000 documents we did not assert privilege over

9   any of them and fully produced it over to them.  So if that is

10  any indication of what's coming, I don't know.  But, you know,

11  it is what it is.

12         THE COURT:  I will require you to -- if you do assert

13  privilege over any materials that were identified by

14  AlixPartners, I would require you to produce a privilege log,

15  but I want you to prioritize the production of the documents

16  over the production of any privilege log.

17         And once you know if you are asserting privilege over

18  anything, you can talk to Mr. Kass, Miss Markoe, and Miss

19  McGovern and come up with a reasonable date to produce a

20  privilege log in the first instance.

21         So let me go back to -- you said as to Mr. Wilson and

22  somebody else who they had asked you --

23         MR. FREEDMAN:  Mr. Warren.

24         THE COURT:  Mr. Warren, they had asked you to --

25         MR. FREEDMAN:  (Inaudible).

```
1            THE COURT:  There had been a request for certain
2    materials that were outside the time period that I had
3    previously set and you said you produced those anyway.
4            Did you object on the --
5            MR. FREEDMAN:  We agreed.
6            THE COURT:  I know, but did you object?
7            MR. FREEDMAN:  We did not object because -- Your Honor
8    we did not object because the Court has never, as far as I
9    recall, said that no discovery can be taken 30 days after the
10   filing.
11           It was more towards the request I referred the Court
12   it was a fourth period of not more than 30 days after the
13   filing.  It wasn't a ruling that no discovery is relevant if it
14   takes place 30 days after the filing of the complaint.
15           There was never such an order entered and as far as I
16   recall.  And on the good faith analysis of the request for
17   production, the material was relevant and probative under the
18   rules.  So we agreed to produce it.
19           THE COURT:  Understood.
20           So I don't know who gets the last word on this one.
21   Has everybody who wanted to speak spoken on this issue?  Does
22   anybody else want to say anything on these issues?
23           MR. KASS:  Well, Your Honor, this is Mr. Kass.
24           I just want to add one other thing that my
25   understanding is that they have actually not produced those
```

1    documents.  They said they produced them and we have not

2    received those documents (inaudible) for Mr. Warren based on

3    that issue.

4              THE COURT:  Okay.

5              MR. FREEDMAN:  I can address that, Your Honor.

6              They've been given to our vendors.  We agreed to

7    produce them.  They have been given to our vendors to be

8    produced and I am sure if they haven't been produced, they will

9    be produced the next day.

10             You know, the vendors were closed on Christmas Eve and

11   Christmas Day and New Year's Eve and New Years, but it's a

12   little tough to get things out these days, but they will go out

13   momentarily.

14             I promise you I have collected them and I transmitted

15   them.  I know we have them.  I know they have been produced to

16   our vendors and I know they are coming.

17             THE COURT:  Okay.  No issues there.

18             Anything else that anybody else wants to say speak

19   now.  Okay.  Hearing nothing let me address these two issues.

20   I think the privilege log issue Miss Markoe addressed that's a

21   ruling and that should be coming soon.  So I will stay out of

22   that for now.

23             In terms of documents relating to Lynn Wright, I'm

24   going to let things sit the way they sit.  You know, from what

25   I know about this case and from after all this time, I think I

1  know a fair amount about this case.  The likelihood I believe

2  that there are going to be documents that Lynn Wright has in

3  her possession that have not already been produced that are

4  relevant to this lawsuit is minimal.

5       I have to remind myself.  This lawsuit is about the

6  relationship between Dave Kleiman and Craig Wright.  And so

7  Lynn Wright may have some personal knowledge about that

8  relationship and she may have had conversations with them.

9       She may have had conversations with her now ex-husband

10 about these matters and about his bit coin holdings and other

11 things.  Presumably all of that got swept up in the search

12 terms that were used in Craig Wright's e-mails and Craig

13 Wright's communications and other documents.

14      There are hundreds of thousands of documents that are

15 produced in this case.  And so I think at some point the

16 likelihood that -- anyway, I am not going to order the

17 production of any documents for Lynn Wright in advance of her

18 deposition.  You all can figure that out.

19      And again, that's without prejudice.  If it turns out

20 later on that the Plaintiffs can articulate that they have been

21 somehow prejudiced that that deposition went forward and they

22 didn't have documents and they want to reopen it based on

23 actual evidence that I could look at, rather than speculation,

24 I will be happy to consider it.

25      Okay.  With that, I will ask the same question again

1   back to both sides.  Not waiving any objections you may have,

2   the rulings that I have made, have I at least now ruled on any

3   issue that the parties wanted to put before the Court?

4           I will turn to the Plaintiffs first.

5           MR. FREEDMAN:  Your Honor, I think the ruling on --

6   and maybe it wasn't a clear request, but Ira said as late as

7   December 31st we received almost 15,000 documents from the

8   Defendant and I just don't know when they are going to be fully

9   produced and the deposition of Dr. Wright is coming.

10          And getting 15,000 documents two days ago was a

11  surprise and I just don't know how many more of those are

12  coming and I think we need a date as to when this is going to

13  be fully produced.

14          THE COURT:  Well, when --

15          MR. FREEDMAN:  (Inaudible.)

16          THE COURT:  When does discovery close?

17          MR. FREEDMAN:  On the 17th, Your Honor.

18          THE COURT:  That would seem to me to be the date.

19  That's what discovery means.  Discovery closes on that date.

20  Now, you have asked for a lot in this case, Mr. Freedman.  I've

21  given you a lot, but when you ask for a lot, don't complain

22  that you got a lot.

23          So I don't know.  I don't sit at the offices of Rivero

24  Mestre.  I don't have any idea of what they've got.  I am not

25  going to tell them by when they have to complete their

 1  production.  Discovery closes by a particular date and that's

 2  where we will let it sit.

 3          All right.  Anything else, then, from the Plaintiffs?

 4          MR. FREEDMAN:  No, Your Honor.  We have one --

 5          THE COURT:  I'm sorry.  Someone was speaking and I

 6  couldn't hear you.  I apologize.

 7          MR. FREEDMAN:  Under advisement the (inaudible) as far

 8  as that issue.

 9          THE COURT:  Again, I took the one matter under

10  advisement.  But aside from that, is there anything else that

11  people wanted a ruling that I haven't ruled upon?

12          MR. KASS:  Your Honor, this is Mr. Kass for the

13  Defendants and we have nothing else.

14          THE COURT:  Okay.  Great.  All right.  Well, thank you

15  all very much.  It has been helpful.  I will get an order out

16  as quickly as I can.

17          Again, Happy New Year to everybody and we will be in

18  recess.

19          MS. MCGOVERN:  Happy New Year, Your Honor.

20          MS. MARKOE:  Happy New Year.

21          (Thereupon, the telephonic proceedings concluded.)

22

23

24

25

1

2                                CERTIFICATE

3

4          I hereby certify that the foregoing transcript is an

5    accurate transcript of the audio recorded proceedings in the

6    above-entitled matter.

7

8

9

10
     01/06/20                      Bonnie Joy Lewis,
11                        Registered Professional Reporter
                             CASE LAW REPORTING, INC.
12                          7001 Southwest 13 Street,
                          Pembroke Pines, Florida 33023
13                              954-985-8875

14

15

16

17

18

19

20

21

22

23

24

25