1                UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF FLORIDA

2

              Case No. 18-80176-BB

3

IRA KLEIMAN AND W&K INFO    )
4  DEFENSE RESEARCH, LLC,     )
                          )
5      PLAINTIFFS,         )
                          )
6      -v-               )
                          )
7  CRAIG WRIGHT,          )
                          )
8      DEFENDANT.         )   West Palm Beach, Florida
                          )   January 9, 2020
9  _____)

10

11    TRANSCRIPT OF TELEPHONIC DISCOVERY HEARING PROCEEDINGS

12       BEFORE THE HONORABLE BRUCE E. REINHART

13         UNITED STATES MAGISTRATE JUDGE

14

15  Appearances:

16  (On Page 2.)

17

18  Reporter              Stephen W. Franklin, RMR, CRR, CPE
    (561)514-3768        Official Court Reporter
19                   701 Clematis Street
                     West Palm Beach, Florida 33401
20                   E-mail:  SFranklinUSDC@aol.com

21

22

23

24

25

```
 1   Appearances:

 2   FOR THE PLAINTIFFS        Devin Freedman, ESQ.
                               Roche Freedman, LLP
 3                             200 South Biscayne Boulevard
                               Suite 5500
 4                             Miami, FL 33131
     -and-
 5                             Kyle Roche, ESQ.
                               Roche Freedman, LLP
 6                             185 Wythe Avenue, F2
                               Brooklyn, NY 11249
 7   -and-
                               Joseph M. Delich, ESQ.
 8                             Roche Freedman, LLP
                               185 Wythe Avenue, F2
 9                             Brooklyn, NY 11249

10                             *  *  *  *  *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1    Appearances (Cont.'d)

2    FOR THE DEFENDANT          Andres Rivero, ESQ.
                                Rivero Mestre, LLP
3                               2525 Ponce de Leon Boulevard
                                Suite 1000
4                               Coral Gables, FL 33134
     -and-
5                               Amanda M. McGovern, ESQ.
                                Rivero Mestre, LLP
6                               2525 Ponce de Leon Boulevard
                                Suite 1000
7                               Coral Gables, FL 33134
     -and-
8                               Zaharah R. Markoe, ESQ.
                                Rivero Mestre, LLP
9                               2525 Ponce de Leon Boulevard
                                Suite 1000
10                              Coral Gables, FL 33134
     -and-
11                              Bryan R. Paschal, ESQ.
                                Rivero Mestre, LLP
12                              2525 Ponce de Leon Boulevard
                                Suite 1000
13                              Coral Gables, FL 33134
     -and-
14                              Schneur Z. Kass, ESQ.
                                Rivero Mestre, LLP
15                              2525 Ponce de Leon Boulevard
                                Suite 1000
16                              Coral Gables, FL 33134

17                                  *  *  *  *  *

18

19

20

21

22

23

24

25
```

```
 1          (Call to the order of the Court.)

 2          THE COURT:  All right.  Calling case number

 3   18-80176, Ira Kleiman and W&K versus Craig Wright.

 4          May I have counsel's appearances, please, starting

 5   with counsel for the Plaintiff.

 6          MR. FREEDMAN:  Vel Freedman from Roche Freedman for

 7   the plaintiffs, Your Honor.

 8          Good afternoon.

 9          THE COURT:  Good afternoon, Mr. Freedman.

10          MR. ROCHE:  Kyle Roche, plaintiffs.

11          THE COURT:  Mr. Roche, good afternoon.

12          MR. DELICH:  Joe Delich for plaintiffs.

13          THE COURT:  Mr. Delich, good afternoon.

14          Anyone else for the plaintiff?

15          All right.  Now we'll move to the defense.

16          MR. FREEDMAN:  That's it, Your Honor.

17          MR. RIVERO:  All right.  Good afternoon, Your Honor.

18   Andres Rivero for Dr. Wright.

19          MS. McGOVERN:  Amanda McGovern, as well.

20          MR. PASCHAL:  Bryan Paschal for Dr. Wright.

21          MS. MARKOE:  Zaharah Markoe for Dr. Wright.

22          MR. KASS:  And Zalman Kass for Dr. Wright.

23          THE COURT:  Wow, got the whole -- the whole choir

24   here.

25          Okay.  Well, good afternoon, everybody.
```

 1          All right.  I don't have a memo, so I'm not quite

 2   sure what we're here to talk about, but I'll -- I don't know

 3   who called this meeting, but whoever called this meeting, tell

 4   me what you want to talk about.

 5          MR. ROCHE:  This is Kyle Roche.

 6          We're I think -- you know, I know Vel and Joe have a

 7   number of issues, and I believe the other side does, as well,

 8   but we're -- we've got another couple of issues that have

 9   propped up in the middle of W&K's 30(b)(6) deposition, and so

10   it might make sense, since we've taken a break to join the

11   call, for Bryan and myself to tee those issues up with you

12   first so that we can get back to the deposition.

13          THE COURT:  All right.  I don't usually rule on

14   deposition questions in the middle of a deposition, but go

15   ahead.

16          MR. ROCHE:  Yes.  So I -- and, well, Bryan, if you

17   -- because you want (inaudible) --

18          MR. PASCHAL:  Yes --

19          MR. ROCHE:  -- present the issues, that's fine with

20   me.

21          MR. PASCHAL:  Good afternoon, Your Honor.

22          So this is a Rule 30(b)(6) deposition of the

23   plaintiff W&K.  And the circumstances for the issues I'm

24   raising now is that plaintiffs have -- have NDAs, an attorney

25   that they hired two months ago to be the representative to

1   W&K.  And in preparing for this deposition, he's only reviewed

2   the complaint, spoken to counsel and spoken to Ira Kleiman for

3   15 minutes.  He hasn't reviewed any of the discovery, any of

4   the deposition testimony or any of the interrogatories, which

5   makes it difficult, because if (inaudible) 30(b)(6) witness

6   (inaudible) I don't know.

7         And second and apart from that, (inaudible).

8   Separate from that, we're trying to figure out what -- what's

9   his answer based on, and he was asked questions about his

10  conversation with Ira Kleiman.  And plaintiffs have asserted

11  privilege and instructed that he can't answer those questions.

12  And we're not sure what the privilege is here, and we don't

13  think it's work product.  A 30(b)(6) witness constitutes a

14  ranking member of a company (inaudible) privilege.

15        And then the second privilege issue that we have is

16  that counsel instructed their Rule 30(b)(6) designee to not

17  answer questions about whether or not Ira Kleiman had ever

18  opened a probate to receive shares in W&K.  And the issue

19  there for us is that the witness testified that Ira is a

20  member of the company, but I think it's the estate that's the

21  member of the company.  We're trying to figure out who is the

22  member of the company, the estate or Ira.  And Ira couldn't be

23  a member of the company unless you accept that the shares in

24  probate.

25        MR. ROCHE:  Your Honor, may I respond?

```
 1              THE COURT:  Yeah, just before you do, so the two

 2   issues upon which there has been -- the witness was instructed

 3   not to answer is whether Ira Kleiman opened a probate of Dave

 4   Kleiman's estate and whether I guess there's a privilege as to

 5   certain conversations between the 30(b)(6) witness and

 6   Mr. Kleiman.

 7              Mr. Paschal, is that the issue as you see it?

 8              MR. PASCHAL:  Yes.

 9              THE COURT:  Okay.

10              MR. PASCHAL:  Yes, Your Honor.

11              THE COURT:  Okay.  Before I get to that, the fact of

12   the probate or whether or not there's been a probate estate,

13   was that noticed as one of the 30(b)(6) topics for the

14   deposition?

15              MR. PASCHAL:  Yes, Your Honor.  He noticed the

16   membership of W&K, and the whole issue is as I stated before,

17   the witness testified that Ira's a member, but Ira couldn't be

18   a member, because he never accepted the shares in the probate;

19   he wouldn't have standing (inaudible).  So we're not sure that

20   the estate is a member, or is it Ira Kleiman.

21              THE COURT:  Okay.  I understand the issue.

22              Let me turn now to Mr. Delich.

23              MR. ROCHE:  Mr. Roach.

24              THE COURT:  Mr. Roach, I'm sorry.

25              MR. ROCHE:  But I -- no problem.
```

```
 1              So I'll address the issue related to privilege
 2   first.
 3              So the -- the (inaudible) 30(b)(6) witness testified
 4   that he had a 30- -- a 15-minute conversation with Ira
 5   Kleiman.  Counsel was present for that meeting, and so it's
 6   our assertion that, you know, this is two plaintiffs, you
 7   know, prepping for a deposition testimony, and that's
 8   (inaudible) common interest privilege, and that those
 9   communications -- the -- whether or not the -- again, whether
10   or not the -- when the communication happened is not
11   privileged, who was there for that communication not
12   privileged, but as far as the substance of that communication,
13   it's -- we are asserting that that -- that those conversations
14   are privileged.
15              The second --
16              THE COURT:  Well, hold on, hold on.  Let's stop with
17   that one for a second.
18              MR. ROCHE:  Yes.
19              THE COURT:  Was the purpose of the conversation so
20   that Ira Kleiman could impart to the 30(b)(6) witness
21   information that would allow the 30(b)(6) witness to testify?
22              MR. ROCHE:  The purpose of the conversation was for
23   Ira Kleiman, as the sole -- current sole member of W&K to
24   answer -- to provide to the 30(b)(6) rep certain facts, and
25   there are -- there was also -- you know, I can't recall all
```

1   the substance of the conversation, but I do recall some, you

2   know, strategy discussed on that call, as well.

3          And, so, you know, to the extent what was discussed

4   was factual in nature, you know, those -- you know, the -- our

5   position is the defendants can ask fact-based questions:  What

6   do you know, you know, what did you learn and when.  All those

7   ques -- you know, what documents did you review -- did you

8   review to prepare, what did you learn, all those questions are

9   fine.  But to the substance of the conversation between Ira

10  and the 30(b)(6) rep for W&K, we're asserting that the

11  substance itself is privileged.

12          THE COURT:  Well, that's what I'm trying to drill

13  down on.  If you're telling me the substance of the

14  conversation, though, was multi-facetted, one aspect was to

15  talk about strategy for the lawsuit, I would agree if there

16  was conversation about the lawsuit strategy in the presence of

17  counsel, I would conclude that's privilege.  To the extent

18  Mr. Kleiman is telling the witness things so the witness can

19  repeat them to a third party, that's classically not

20  privileged.  That's classically not intended to remain

21  confidential.  In fact, the opposite.  It's intended to

22  educate the witness so the witness can then repeat the

23  information to the other side.

24          So do you agree or disagree with that proposition?

25          MR. ROCHE:  I agree with that proposition, and I'm

1    fine proceeding with that.  I guess, you know, the concern

2    here is those lines could blur in the context of the

3    conversation when you're talking about facts and strategy.

4    But, you know, it -- you know, if we wanted to go forward and

5    just stick with what facts did Ira tell him, and, you know, I

6    will instruct the witness as to the line and what you ordered,

7    but that's fine with me.

8              THE COURT:  Well, and this is precisely why I don't

9    usually rule on 30(b)(6) topics, and I don't generally rule in

10   the middle of depositions.

11             So Mr. Paschal, you can ask your questions on a

12   question-by-question basis.

13             MR. PASCHAL:  Okay.

14             THE COURT:  And Mr. Roche, you may invoke a

15   privilege on a question-by-question basis.  And after the

16   fact, you may -- whoever wants to object to the invocation of

17   privilege can submit a motion to compel, and I will review it

18   on the actual record that's before me, and if the deposition

19   has to be reconvened because privilege was improperly invoked,

20   I will make the other party pay for it.  That's all I can do.

21             I've given you my general guidance as how I

22   understand the privilege and how the privilege ought to work

23   in this situation, but I'm not there to hear all the

24   questions.

25             So y'all proceeding accordingly.

1          MR. ROCHE:  Thank you.

2          THE COURT:  All right.  Second issue --

3          MR. PASCHAL:  Thank you, Your Honor.

4          THE COURT:  -- is whether -- the issues relating to

5   Mr. Kleiman's ownership of W&K.

6          MR. ROCHE:  So, yeah, the second issue to the topic

7   that the 30(b)(6) -- that Bryan was referring to, the W&K's

8   membership, including the identification of its current and

9   former members and communications with those members relating

10  to the facts alleged in the complaint.

11         The question that was asked that I instructed the

12  30(b)(6) representative not to answer was whether -- asked a

13  question as to whether Ira opened up probate on Dave Kleiman's

14  estate, and I don't believe that goes to that topic, and I

15  don't believe that's relevant for the 30(b)(6) rep.

16         THE COURT:  All right.  Does the 30(b)(6) rep --

17         MR. PASCHAL:  Your Honor --

18         THE COURT:  Well, hold up.  Before -- I'll turn to

19  you in a second, Mr. Paschal.

20         Mr. Roche, one last question:  Does the witness know

21  the answer to that question?

22         MR. ROCHE:  I -- uh, I'm pretty sure he does not.  I

23  can't -- the witness is not in the room.  I had the witness

24  leave the room for the call, so I can't be a hundred percent

25  positive, but my instincts tell me that he does not know the

```
 1   answer to that question.
 2            THE COURT:  Well, what you've told me is that this
 3   witness knows nothing other than what he learned from Ira
 4   Kleiman in a 15-minute conversation and what he read in the
 5   complaint, and that you or someone from your firm was present
 6   when he had the conversation.  So presumably what he knows is
 7   a pretty discrete amount of information.
 8            And my point is this:  If his answer --
 9            MR. ROCHE:  Correct.
10            THE COURT:  If his answer to this question is, I
11   don't know, why am I here?
12            MR. ROCHE:  I think, you know, Your Honor, why I
13   objected and instructed the witness not to answer was, you
14   know, there -- to the extent that they were, you know,
15   attempting to take a deposition of Ira through this
16   deposition, you know, I was, you know, instructing the witness
17   not to answer.  But I take your point, and I will withdraw my
18   objection and will -- you know, if the witness knows; if he
19   doesn't, he doesn't.
20            THE COURT:  All right.  Good enough.
21            Mr. Paschal, anything else?
22            MR. PASCHAL:  That's it, Your Honor.
23            THE COURT:  Okay, great.  You guys can go back to
24   your deposition, then, I think, unless there's any issues
25   relating to that deposition.
```

1          MR. ROCHE:  Thank you.

2          MR. PASCHAL:  Thank you.

3          THE COURT:  Okay.  Very good.

4          All right.  Who's up next?

5          MR. FREEDMAN:  Your Honor, it's Mr. Freedman.

6          THE COURT:  Okay.

7          MR. FREEDMAN:  Good afternoon.

8          Thank you for accommodating the quick hearing.

9          Your Honor, I don't know if you had a chance yet,

10   because we just filed it a couple hours ago, but as you will

11   recall, you ordered back in March -- sorry, May, docket entry

12   166, you ordered Craig, Dr. Wright to produce all documents

13   that relate to the blind trust, and there were separate

14   categories broken down.  He had to give information about the

15   names, locations of the blind trust, the names of the

16   trustees, past trustees, current beneficiaries, past

17   beneficiaries; he had to produce any and all documents

18   relating to the formation, administration and operation of

19   that trust; all transactional records of that trust; and he

20   was under an obligation to execute all documents or other

21   legal process to release any of this information if it was

22   held by a trustee.  And in response, you know, there were

23   documents produced, there was a hearing, there were sanctions

24   entered based on that.

25          Your Honor, on January 6th, we received a copy of

 1   another document that we've just filed under seal that, for

 2   lack of a better term, I'm going to call Tulip Trust III.

 3             THE COURT:  Uh-huh.

 4             MR. FREEDMAN:  And it is a trust document executed

 5   by Dr. Wright purportedly on July 6th, 2017, that purports to

 6   take over the other two previous trusts.  And I'll go through

 7   that in a minute.

 8             THE COURT:  Well, hold on, Mr. Freedman.

 9   Mr. Freedman, let me short circuit you.  I reviewed the

10   document.  I reviewed your notice.  What are you asking me to

11   do about it?  What's the remedy you want?  It's very nice that

12   you've told me you just got this document.  What do you want

13   me to do?

14             MR. FREEDMAN:  So plaintiffs would like to issue

15   interrogatories to Dr. Wright asking all kinds of details

16   about this document.  We don't believe we should be forced to

17   go into his deposition blind.  It should have been produced

18   months ago.

19             We would like -- this document was produced with no

20   metadata.  It's just a text with no metadata.  We'd like all

21   drafts of this document with all associated and metadata

22   associated with it.  And the agreement references a 2019

23   meeting that's to be recorded, and we would like a copy of

24   that recording, and if privilege is asserted over that

25   recording, then we'd like it to be reviewed in camera, because

1    we think that there's a further breach of the Court's order.

2    I mean, a blatant breach of the Court's order, frankly.

3             THE COURT:  Okay.  Hold on.  Hold on.

4             Have you asked the other side for that information

5    voluntarily yet?

6             MR. FREEDMAN:  We talked this morning.  We asked

7    them to bring the docu -- the actual signed documents.  They

8    said they don't have it, it came from Ramona.  All they have

9    is the scanned copy of it.  They got it from Ms. Watts in mid

10   December of 2019.  They said they -- I mean, I'm going to let

11   them tell you what they said.  They said they investigated it

12   heavily and then produced the doc. on January 6th with no

13   notice whatsoever that they had produced it, but they -- so

14   their position was they can't really bring anything to the

15   deposition because I think Ramona has it, not Craig, meaning

16   his wife.

17            And frankly, Your Honor, after we got off the call

18   this morning, which was (inaudible) -- this morning, which was

19   slightly heated, I sat down with my team to come up with -- I

20   knew you were going to ask me that, Your Honor, what did I

21   want, and came up with these three requests which I'm not sure

22   have been -- I don't think have been expressed clearly to the

23   other side, because we just came up with them about an hour

24   ago.

25            THE COURT:  All right.  Mr. Rivero?

1          MR. RIVERO:  Judge, Ms. McGovern had the

2    conversation with Mr. Freedman and is more familiar.

3          THE COURT:  Oh, that's fine.  That's fine.

4          MR. RIVERO:  In terms of -- but, Judge, in terms of

5    the (inaudible) I mean, I want to be clear.  I do agree with

6    one statement.  We have, because of the history as to these

7    documents, we have done I think the term used was heavy

8    investigation, heavy due diligence, and attempted to get

9    exactly what's been asked for; have been unable to do so.

10         Judge, this has been a matter we've taken extremely

11   seriously.  I can't -- in terms of the specific, I'd like

12   Ms. McGovern to address it, but I just want the Court to

13   understand the seriousness with which we're taking this --

14         THE COURT:  Uh-huh.

15         MR. RIVERO:  -- subject.

16         THE COURT:  I hear you.  I understand.

17         Ms. McGovern.

18         Well, before I get to that, let me go back to --

19         MS. McGOVERN:  Yes, good afternoon.

20         THE COURT:  Yes, good afternoon.

21         Before I get to you -- I'm sorry, Ms. McGovern --

22   let me go back to Mr. Freedman for a second.

23         Mr. Freedman, I understand you're upset you didn't

24   get this earlier.  Why do you need it now, given my order in

25   this case?  As far as I can tell, all that's left of this case

1    is a res judicata defense based upon an Australian tax

2    decision, a latches defense and damages.  So what -- it's very

3    nice that you're getting this late and all --

4              MR. FREEDMAN:  Your Honor --

5              THE COURT:  -- but what's the big deal?

6              MR. FREEDMAN:  I'm not -- I'm not sure -- well,

7    first of all, Your Honor, while we fully expect your order to

8    be upheld, it hasn't yet been upheld by Judge Bloom.  So I

9    can't just rely on it until -- you know, and not take

10   discovery to the fullest extent to protect my client until

11   it's upheld.  So I think we'd be having a different

12   conversation once Judge Bloom affirms the order, but she

13   hasn't yet.  So I'm left with no choice but to pursue and try

14   to protect my client in what we believe to be an unlikely

15   event that it's not upheld, but I still have to do it.

16             The second -- the second thing is, Your Honor, that,

17   you know, the -- it is unclear to me what exactly defendant's

18   going to be arguing, because frankly he's changed his position

19   so many times.  This document itself changes his position.

20   Your order did not dictate the amount of Bitcoin mined, and

21   this document purports to say that there was Bitcoin mined by

22   Wright International Investments between 2009-2010, but there

23   are other Bitcoin that was obtained in 2011 by Craig Wright

24   R&D, and I'm not sure what now -- now that he (inaudible) --

25             Frankly, Your Honor, this witness has demonstrated

 1   that once you -- once something is said, or subpoenaed or

 2   ordered, he just creates new documents to avoid that, and I

 3   don't know what he's going to do.  And so I think -- frankly,

 4   I think this document is another forgery.  I can't prove it

 5   yet, but I intend to figure it out.  That's my gut feeling on

 6   it, and some indication that we have that it is a forgery.

 7   And I just -- I think he should be forced to disclose

 8   everything about it so that I know what I'm walking into, he

 9   doesn't try to create testimony to avoid your order on the

10   amount of Bitcoin that is owed, or who held the intellectual

11   property or when the intellectual property has been created.

12           Your Honor's order said anything prior to 2013, so

13   he can try to push things to after 2013.

14           So while I appreciate that the Court's order has

15   significantly narrowed issues, there are certain issues open,

16   like the amount of Bitcoin mined, the date the intellectual

17   property was developed and the --

18           THE COURT:  Okay.  So circling back, the three --

19   your request today is you want interrogatories in advance of

20   the deposition, you want metadata, and what was the third

21   thing you wanted?

22           MR. FREEDMAN:  The document references a video

23   recording that would be taken in December of 2019.  We'd like

24   a copy -- we'd like a copy of what that video says, and if a

25   privilege is asserted, to have it reviewed in camera.

```
 1              THE COURT:  Okay.  Let me turn to Ms. McGovern,

 2    then.  Thank you for being patient, Ms. McGovern.

 3              MS. McGOVERN:  Good afternoon, Your Honor.

 4              So we explained to -- in our meet and confer today

 5    about this subject, as well as others.  We explained how we

 6    got the document, when we got the document, what we did after

 7    we got the document, and the fact that we produced it as soon

 8    as we were able to do due diligence regarding the document.

 9              With reference to the heated part of the

10    conversation, Your Honor, there have been so many confusions

11    in terms of things, that the only reason it got a bit heated

12    was when there was an accusation directed at me regarding

13    misrepresentations to the Court, it got me a little heated.

14    Other than that, it was a very calm conversation, because the

15    truth of the matter is is we're simply explaining how we

16    received it.

17              When -- when -- the only request that was made at

18    the meet and confer was with respect to the request that we

19    bring the original.  We don't have the original.  Part of our

20    due diligence was to obtain an original.  It is our

21    understanding there is not an original.

22              As to questions regarding why there is not an

23    original, and how this document was created, and when this

24    document was created and what each of the provisions mean, we

25    have a deposition for two days, Craig Wright on Tuesday, and
```

1    we have a deposition of Ramona Watts on Thursday.

2          What we suggested in our meet and confer was that we

3    simply vet all of these issues in the deposition, because at

4    this point our due diligence is that we've received this

5    document, and as soon as we did the due diligence regarding

6    it, we thought it was -- we obviously produced it as soon as

7    possible.

8          THE COURT:  All right.

9          MS. McGOVERN:  In terms of the request for the

10   interrogatories, the problem with that request, Your Honor, is

11   that the deposition's Tuesday.  And so as a practical matter,

12   if we receive questions regarding the deposition, what we're

13   going to do is we're going to meet with our client, prepare

14   interrogatories, scramble to get them served and produce them,

15   and that information, when you're doing so on such a tight

16   timeframe, and so it was (inaudible) process to, you know,

17   incomplete information that's provided, where at the

18   deposition you can flesh it out.

19         With respect to the metadata, I think I've already

20   addressed that.  We do not have the original.

21         And with respect to the video recording, I don't

22   know if there is one.  I don't know if Vel could point us to

23   the provision in a trust agreement that refers to a video

24   recording of a meeting and can certainly inquire about that,

25   but that's also something that if, in fact, he's asked at the

1    deposition and one exists, we consent he could certainly raise

2    that with Your Honor (inaudible).  I'm not sure that there is

3    a video recording.

4           And separate and apart from that, I think the

5    circumstances regarding privilege on that are significant,

6    because it may very well be that we're -- it will be privilege

7    for -- you know, will be issues for other parties.  But I just

8    think it's premature at this point.

9           And I guess the last part that I think is important

10   here also is the distinction that's been -- that's been

11   rendered here in the case is -- and there's no comment on this

12   other than it is what it is.  It's severe.

13          They have been awarded 50 percent on the basis of

14   the partnership of everything that was mined and all the IP

15   that was created, and I'm not sure that this document changes

16   anything.  It's not an excuse as to why we don't -- we simply

17   didn't have it.  But I -- I agree with Your Honor that I think

18   that the ask, or I don't even know if it's an ask that

19   Mr. Freedman's making in connection with this document, sort

20   of ignores the fact that Your Honor has already made factual

21   findings with respect to our client that I don't think can get

22   more severe than they are.

23          THE COURT:  All right.  Mr. Freedman, I'll give you

24   the last word.

25          MR. FREEDMAN:  I mean, just to answer Ms. McGovern's

 1   question, Schedule D, which references a video recording to be

 2   made in December 2019.

 3          But, Your Honor, I think there are some (inaudible)

 4   issues, like the timing of intellectual property, the amount

 5   of Bitcoin mined, and I don't -- I don't (inaudible), yes, the

 6   Court's -- the sanction was severe, but there's certainly more

 7   severe sanctions, and the plaintiffs are reserving their

 8   rights.  I know that that wouldn't be an issue before this

 9   Court, because it'd be a case-ending sanction, which would

10   have to go to Judge Bloom, but I just take issue with that

11   characterization.

12          But otherwise, I've made my arguments.  I don't

13   think I need to repeat them.

14          THE COURT:  All right.  I appreciate that.

15          MR. FREEDMAN:  If the Court has questions.

16          THE COURT:  I do not.

17          Okay.  I'm prepared to rule.

18          I'm going to deny the request for a remedy at this

19   time.  I think you can ask the questions you need to ask at

20   the depositions next week, see what answers you get, and that

21   ruling is -- so I'm not going to require them to respond to

22   interrogatories at this time, and we'll see what comes out at

23   the deposition.  My rulings today are without prejudice to the

24   plaintiff seeking some additional remedy if they believe one

25   is warranted after the depositions of Mr. -- of Dr. Wright and

1    Ms. Watts.

2         Likewise, what I'm hearing is that the defense

3    simply doesn't have the metadata, nor does it have the video

4    recording, nor would I order them to produce them at this

5    time.  You can inquire as to whether a video recording

6    actually occurred, and if it did, then we can readdress that

7    if you want to.  But to the extent you're requesting a remedy,

8    the three remedies you requested, I'll deny that request.

9         I'll also make clear on the record my view that from

10   the sounds of the timing that I've heard, it was completely

11   appropriate for the defense to take some time to conduct what

12   they are required to do under Rule 26, which is a reasonable

13   inquiry, before providing a discovery response.  So I

14   understand we're all working under tight time frames here,

15   but, you know, taking -- particularly in the context of this

16   case, taking a reasonable amount of time as they did is

17   perfectly appropriate in my view.

18        All right.  Next issue.  Who's up?

19        MR. FREEDMAN:  Your Honor, it's still the

20   plaintiffs.  We have a couple of issues, but most of them are

21   quite short, though, I think.

22        The second is that in -- and I'll admit it was a

23   while back, in May, the end of May, the defendant sent us a

24   list of 210,000 multimedia files, and the parties had agreed

25   that they'd go through that list and tell the other side which

1    files they wanted.

2            And when we got the list, we couldn't open that

3    list.  We had an issue with the password.  And then things in

4    the case just got crazy, and we spent a lot of time tracking

5    down these forged documents and all these cases, and it kind

6    of fell through the cracks, and something has -- you know, the

7    Bitcoin (inaudible) fell through the cracks for the defendant

8    earlier on in the case.

9            And then about a couple weeks ago, or maybe a month

10   ago or so, Mr. -- I raised this issue to Mr. Kass, and he

11   reminded -- he told me that I needed to use WinZip, which is a

12   special application, to open the file.  I kinda filed that

13   away, and then things blew up again with briefing.  And I

14   think (inaudible) a week I started asking Mr. Kass if he had

15   sent me his list; I had (inaudible) sent it.  He reminded me

16   how he had sent it and how I had accessed it.

17           I went through, I spent a good amount of time

18   pouring over 210,000 entries, and I picked 122 videos.  These

19   videos are marked specifically as Australian tax office

20   meeting videos.  There were a lot of other files, which you

21   can imagine, that were interesting to us and we would have

22   wanted to see, but we understood that this is late in the

23   game.  These appear to be highly relevant.

24           And I know the Court's going to ask me why I need

25   it.  The -- the issue of timing as it relates to certain

1    intellectual property is potentially an issue in the case, and

2    a lot of the discussion surrounding the Australian tax office

3    meetings (inaudible) transcripts and papers we received around

4    the Australian tax office investigation have been some of the

5    most helpful to date.

6         And so, you know, we -- I understand 122 videos

7    isn't an insignificant amount of videos.  It's also a tiny,

8    tiny, tiny fraction of what has been turned over and what has

9    been sent over to us.  And I understand it's late in the game,

10   but the Court's ruled that defendant should keep producing

11   until the 17th, which is the discovery cutoff.

12        We, ourselves, put together a team of 10 people to

13   review 20,000 documents in time.  We produced all those over

14   to the defendant save for seven documents which counsel's

15   going to review today, and we either produce or withhold --

16   produce a privilege log over.  And I think given the

17   circumstances of the case and the remaining issues, it's a

18   reasonable ask.

19             THE COURT:  Okay.  Well, let me turn to the defense.

20        So the request is simply to -- you've asked them to

21   produce the 122 videos, and they've objected.  Is that

22   correct, Mr. Freedman?

23             MR. FREEDMAN:  Correct, Your Honor.

24             THE COURT:  Okay.  I'll hear from the defense.

25             MR. KASS:  Your Honor, this is Zalman Kass, and I

 1  just wanted to go over a little bit of the history which

 2  Mr. Freedman has stated.

 3         And I agree with Mr. Freedman that we had sent this

 4  to him I believe early this year in March, and there was no --

 5  there is no problem with the password.  The password problem

 6  was that it was a compressed file.  (Inaudible) use the

 7  correct application to open it, which is something we figured

 8  out ourselves.

 9         But, again, I just want to go back.  There was a

10  hearing about a month or two ago about the NAS devise.  And in

11  that hearing, plaintiffs had requested the video from the NAS

12  device, and then after that hearing, I then informed Mr.

13  Freedman that he already had a list of all the videos that

14  were on the NAS device and all the videos as general -- any

15  video that we ever had on any of our multimedia devices, and

16  it was only at that time that Mr. Freedman mentioned, you

17  know, actually right now I'm having a difficulty opening it,

18  how do I open it.  And I said, well, based on our (inaudible),

19  you have to use a zip file.

20         Now, at that hearing, Mr. Freedman withdrew his

21  request with regards to the NAS device as with regards to the

22  videos and stating on the record he is going to go through the

23  videos, and he will let us know which ones he wanted.

24         Now, since we had that hearing up until I believe

25  last week, we heard nothing from Mr. Freedman.  It was only

1   last week when he started asking again about the videos, and I

2   responded.  And I believe it was early this week or maybe the

3   end of last week, I don't remember the exact day, when I

4   (inaudible), hey, we want these 120-odd videos.

5          Now, the issue with that is that to produce those

6   videos, we have to go through the videos to make sure that

7   there are no privilege communication.  And in the past we had

8   produced videos with the ATO, and we went through that

9   procedure, which is very, very time consuming, because

10  (inaudible) just happened to turn (inaudible) those videos,

11  and we actually did find some privilege communications.  So we

12  know they do it (inaudible) out there.

13         And, Your Honor, we understand plaintiff -- you

14  know, these videos could have important information, but our

15  issue is that, Your Honor, they could have asked for these

16  many, many months ago, and we gladly would have accommodated

17  the request.  But right now we are going through the final

18  documents that we have, we have the deadlines, discovery is

19  almost over.  We're going through all our documents, we're

20  preparing our privilege log, we have all these ongoing

21  depositions, and to now have attorneys sift through -- to go

22  through all these videos, over a hundred, basically 130

23  videos, Your Honor, is simply not reasonable considering the

24  timing, and also considering that we've already produced so

25  many videos from the ATO.

```
 1              I'm not even sure if there was any analysis
 2   (inaudible) these videos were produced or not, or just
 3   (inaudible) ATO and we want that.  We've produced transcripts
 4   of the ATO.  We've gone to the ATO in Australia and made a
 5   request for any recordings, any videos that they've had.
 6   We've done a lot for plaintiffs to get them information with
 7   regards to the ATO, and we worked hard, and we've done that.
 8              Now, at the last minute, they say we want more, when
 9   all these other things are going on in the case, we don't
10   think it's reasonable, and we don't think it's proportionate.
11              THE COURT:  All right.  Mr. Freedman, I'll give you
12   the last word.
13              MR. FREEDMAN:  Your Honor, I -- you know, some of
14   these videos are tagged twice.  That could mean that they're
15   duplicative.  I don't know because we don't have them.  I
16   can't review them, obviously.  I'll just say that I don't
17   think anyone thinks that there's any person on any of these
18   teams that is not working extremely hard.  I acknowledge that
19   this slipped through the cracks, but a lot of other things
20   didn't.
21              It's a very narrow request for what the defendant
22   admits is potentially very relevant materials.  And I get that
23   it's the end of the -- I get it's the end of the crunch time,
24   but, you know, we got 20,000 documents dumped on us, and we
25   hired 10 people to go through them, and I don't see why this
```

 1   time he can't do the same.

 2            THE COURT:  I understand.

 3            Okay.  I'll overrule that request.  I'm not going to

 4   at this late date require them to -- even if it takes them 30

 5   minutes per video, you're talking 60 hours just to review for

 6   privilege.  And so I don't think it's proportionate to the

 7   needs of the case at this point, particularly given that this

 8   was made available -- and I appreciate Mr. Freedman's candor

 9   that this was made available much earlier last year and it

10   fell through the cracks.  But at this late date I agree with

11   Mr. Kass, it's not proportional.  So I'll deny that request.

12            Next.

13            MR. FREEDMAN:  Your Honor, if I may, there are two

14   of the documents that don't -- two video files that don't have

15   the word "splicing" in them.  Would the Court reconsider and

16   just give a few of them?

17            THE COURT:  No.

18            MR. FREEDMAN:  Okay.  The only other issue left for

19   plaintiffs, Your Honor, is at the last -- at one of the last

20   hearings, the Court authorized us to submit search terms over

21   sworn statements, and Ms. Markoe ran those search terms.  She

22   came back with a little over 6000 hits.  Her and I met and

23   conferred on that.  We had agreed that we should rerun them

24   with only pulling PDF documents, Word documents and mail --

25   and dot MSGs, which are e-mail documents, to try to get the

```
 1   most relevant potential files.

 2         And as I understand it based on that review, there

 3   are in total I think it's 2611 documents that hits on those

 4   search terms that are unique hits that have not previously

 5   been produced.  Ms. Markoe told me at one of the meet and

 6   confers that Ms. Watt -- that some of the documents she had

 7   spot checked were duplicative, which I guess meant she wasn't

 8   checking the unique hits subset, but that others related to

 9   Ms. Watts' private, you know, financial issues.  And we had

10   said that we'd be amenable to them withholding, even though

11   previously search terms were produced as they hit, if Rivero

12   Mestre were to review documents, determine it related to

13   Ms. Watts' private finances or someone else's private

14   finances, that we wouldn't want them.  We were only looking

15   for documents which were sworn statements executed by the

16   defendant.

17         You know, we'd be further willing to limit it to the

18   just the dot MSG and the -- so just the e-mails in PDFs, which

19   I think are 2232 documents, unique ones that have not

20   previously been produced, and that that's the request, Your

21   Honor.

22         THE COURT:  Okay.  Help me out, Mr. Freedman.  I

23   remember having this discussion.  What is it we're searching?

24   What body of documents are --

25         MR. FREEDMAN:  Dr. Wright's prev -- documents for --
```

 1  and we're looking specifically for prior sworn statements of

 2  the defendant.

 3           THE COURT:  Okay.

 4           MR. FREEDMAN:  And we came up with search terms like

 5  "affirm" within 250 of "trust", or "notarized", and, you know,

 6  250 of "trust", or "swear" within --

 7           THE COURT:  Got it.

 8           MR. FREEDMAN:  -- "trust", or "Bitcoin", or stuff

 9  like that.

10           THE COURT:  All right.  Let me hear from Ms. Markoe

11  or whoever from the defense team.

12           MS. MARKOE:  Good afternoon, Your Honor.  This is

13  Ms. Markoe.

14           So, you know, we ran their searches, and we went to,

15  you know, our database, as well as Australian counsel's

16  database (inaudible), from their search engine.  What we came

17  up with was almost 9000 documents that hit on their search

18  terms.

19           And if you recall, my original objection was

20  (inaudible) I just don't think search terms get them what they

21  want in terms of documents that are signed, sworn, affirmed to

22  and stuff like that.  Which, by the way, as we all know, we've

23  produced a lot, and there's a lot of documents with his

24  signature and e-Signature and all those things, and those have

25  been produced.  They want more.  And the problem is that the

1    issue I always had with this is that I don't see how search

2    terms help them narrow this down in any way.  (Inaudible)

3    document for a signature.

4         And when I spot checked the documents that we have

5    not processed from our database that hadn't hit on search

6    terms, there's two documents that were duplicative.  I didn't

7    really understand why, but the vast majority of the documents

8    were either papers about signatures and things of that nature.

9    There were also personal documents related to Dr. Wright's

10   wife's tax returns, tax information regarding their children.

11   I'm referring to documents that either say the word

12   "signature".  It's just too many, and it's too late in the

13   game to ask us to engage in this exercise.  We are feverishly

14   working to produce the documents that hit on our privilege

15   search terms.  They have the documents that did not hit on

16   privilege search terms.  Those have been produced that hit on

17   their (inaudible).

18        Other search terms -- and to ask us to add search

19   terms at this late date is just unduly burdensome and

20   unreasonable.

21        THE COURT:  All right.  Mr. Freedman, I'm going to

22   turn back to you.  Help me out, as well.  What is it we're

23   looking for here?  So we're looking just for any sworn

24   statement ever made by Dr. Wright, or is there -- is it more

25   targeted than that?

```
 1              MR. FREEDMAN:  Well, Your Honor, it's more targeted.
 2     If any sworn statements that relate -- I guess in the most
 3     general sense, it would be any sworn statements that relate to
 4     Bitcoin, trusts and Satoshi Nakamoto.  I think those were --
 5     we used forms of swearing, notarization, oath, deposed, affirm
 6     with combinations of Bitcoin, trusts, Satoshi and Nakamoto.
 7     So it's a very narrow category of documents that are prior
 8     sworn statements that relate to the issues, you know, in the
 9     case.
10              THE COURT:  Okay.
11              MS. MARKOE:  And, Your Honor, again, I'd like to
12     just reiterate, these are new terms, and we've produced almost
13     1.6 million pages of documents (inaudible).  You know, it's
14     just at this point (inaudible), Your Honor, enough is enough.
15              THE COURT:  All right.  I understand.
16              MS. MARKOE:  We can't be adding stuff in.  It's
17     unreasonable.
18              MR. FREEDMAN:  (Inaudible).
19              THE COURT:  Go ahead.
20              MR. FREEDMAN:  If the Court wants, I'm happy to
21     respond to that, but . . .
22              THE COURT:  Well, go ahead.
23              MR. FREEDMAN:  I mean, certainly there were a lot of
24     documents that were turned over, Your Honor.  I would say
25     there is a ton of duplications, many, many of the same
```

```
 1    documents over, and over, and over again.  But that's not my
 2    point.  They have turned over a lot of documents, but I don't
 3    think that really matters.  Like, these are unique hits,
 4    meaning these are documents that have not previously been
 5    produced.
 6            If the Court finds that prior sworn statements that
 7    relate to Bitcoins, trust and Satoshi Nakamoto, the
 8    partnership at the heart of the dispute are relevant, then we
 9    should get these documents.
10            And there are only, like, 2500 documents.  I mean,
11    it's not -- like I said, we reviewed 20,000 very quickly and
12    returned them all.  I just don't -- this doesn't strike me as
13    unduly burdensome to a very narrow category of documents that
14    are highly relevant.
15            THE COURT:  Well, why are they highly relevant?
16    That's where I'm -- that's where I'm stumbling, Mr. Freedman.
17            I understand theoretically Dr. Wright may have sworn
18    and said, what, I created Bitcoin, I'm Satoshi Nakamoto, I
19    signed the trust.  I mean, so what?  I mean, what makes these
20    high -- what makes this probabilistic that these are highly
21    relevant documents just because Dr. Wright signed some
22    document?
23            Assume they all actually are documents he swore to,
24    that he swore to something having to do with Bitcoin or
25    Satoshi Nakamoto.  Your position would be anything he's sworn
```

 1   to about Satoshi Nakamoto is false.

 2          MR. FREEDMAN:  No, Your Honor.  The idea would be to

 3   identify the amount of Bitcoin at issue that was mined, the

 4   amount of Bitcoin Satoshi Nakamoto mined, the amount -- the

 5   types of Bitcoin-related IP that were either placed in trust

 6   or created by the Satoshi Nakamoto partnership, you know, that

 7   we've seen affidavits submitted to court and other sworn

 8   statements.

 9          And, look, if they're not sworn statements that

10   relate to these issues, then they wouldn't be relevant.  But,

11   you know, we've seen documents that relate to that.  I mean,

12   that's why we think we need them, for these purposes.

13          THE COURT:  I understand.

14          I'm going to overrule that request, as well.  I

15   think at this point this is highly tangential to the main

16   issues in this case.  You gotta do what you gotta do,

17   Mr. Freedman, understand that.  You got to look for the needle

18   in a haystack, but I don't have to give you the haystack, and

19   I find this to be a haystack.

20          We are deep, deep, deep into this case.  I have to

21   judge what's proportional to the needs of the case as we sit

22   here today, and I just find that the likelihood that we're

23   going to find relevant information in comparison to the

24   exercise -- again, if it takes them one minute per document,

25   to review 2200 documents, that's still hours, and hours, and

```
 1   hours, and I find that to be disproportionate.  So I'll
 2   overrule that request.
 3            Next.
 4            Hello?
 5            MR. FREEDMAN:  Your Honor, the only other thing left
 6   for plaintiff is a privilege issue, and I'm going to let -- I
 7   know the Court has a subject in its standing order to allow
 8   younger attorneys to have a chance to argue.  Mr. Delich, I'm
 9   going to allow him to argue the privilege issues that relate
10   to the privilege log.
11            THE COURT:  Wonderful.  Happy to have you,
12   Mr. Delich.  Please go ahead.
13            MR. DELICH:  Thank you, Judge.
14            So I think it reduces to essentially two issues
15   after meeting and conferring.
16            The first issue is the number of documents that were
17   withheld on the basis of nondisclosure agreements, and our
18   position is that that is not a valid basis for not producing
19   the documents, and the defendant has indicated they will
20   produce them if there's a court order that they produce that.
21   So we would ask that the Court order production of those
22   documents.
23            THE COURT:  Uh-huh.  Okay.  What's the second issue?
24            MR. DELICH:  So the second issue is there's a number
25   of documents that have been withheld on the basis of either
```

1   attorney-client privilege, or work product privilege, or both,

2   and they're -- many of them are emails that Craig is not

3   included on the top of the chain.  And so essentially what

4   we're trying to understand is, you know, whose privilege is

5   being asserted, and it appears that various companies'

6   privilege is being asserted.  Namely, Craig companies that

7   some of which are in liquidation, and I believe a company that

8   is not, which is nChain, Limited.

9          And our position is that Craig, you know, is out.

10  He does not have the ability to invoke privilege on behalf of

11  those entities at this point.

12         THE COURT:  Okay.  So those are the two issues.

13         All right.  Let me turn to the other side and have

14  them respond.

15         MS. MARKOE:  With regard to NDAs, we have

16  produced -- I think there's really only two categories of

17  documents.  One is entirely, entirely irrelevant regarding, if

18  I recall, a -- work that one of Craig's companies is doing for

19  another company, and we produced the actual NDA contract so

20  the plaintiff could see it, and we only withheld documents

21  that were pursuant to that NDA.  And it's our position with

22  regard to NDAs generally, we cannot advise our clients to

23  break a contract in which he entered into --

24         THE COURT:  Uh-huh.

25         MS. MARKOE:  -- on behalf of the company.  And so we

 1  want to honor those NDAs.

 2          THE COURT:  I understand.  So let me --

 3          MS. MARKOE:  It's also our -- these documents are

 4  entirely irrelevant to any issue in the case.

 5          THE COURT:  Well, that was going to be my question,

 6  Ms. Markoe.  Assume --

 7          MS. MARKOE:  Uh --

 8          THE COURT:  Hold on.

 9          Assume for sake of discussion that the nondisclosure

10  agreement didn't exist where that I could order you -- I

11  presume pursuant to the nondisclosure agreements, if the Court

12  orders Dr. Wright to produce something, that excuses him from

13  his obligations under the nondisclosure agreement.  So assume

14  that to be the situation.

15          Would these documents otherwise be producible in

16  this case, or is there some other legal objection to producing

17  them other than they're covered by an NDA in another matter?

18          MS. MARKOE:  I mean, they're not relevant to the

19  case.  Do they hit on search terms, on plaintiffs' very, very,

20  broad search terms?  (Inaudible).  So (inaudible) --

21          THE COURT:  Other than relevance, is there any other

22  legal objection to producing them if I order you to do so?

23          MS. MARKOE:  No.

24          THE COURT:  Okay.  And in this case we do have a --

25  we have a confidentiality order.  So if I order you to produce

1    them, you can designate them in whatever manner you need to

2    designate them to minimize whatever harm would occur to the --

3    so they would not become publicly available is my point.

4              MS. MARKOE:  That is correct, Your Honor.

5              THE COURT:  Okay.  Then I'm going to order you to do

6    that, okay, at this point.

7              MS. MARKOE:  Okay.

8              THE COURT:  They may not be relevant.

9    Mr. Freedman and Mr. Delich may be spinning their wheels, but

10   I will -- and we'll -- I'll make a note to my clerk to do a

11   written order so that Dr. Wright has that in a written order,

12   that we are ordering him to produce documents that have

13   previously been objected to on the basis of third party

14   nondisclosure agreements, so long as those are produced

15   subject to a confidentiality designation.

16             All right.  That's number one.

17             So let's turn to the second issue, Ms. Markoe, if

18   you're going to handle this, as well.

19             MS. MARKOE:  Yes.

20             THE COURT:  The third -- the suggestion that

21   Dr. Wright is trying to invoke a third party privilege.

22             MS. MARKOE:  Right.

23             So if you recall, we had this argument way at the

24   beginning of the case as to plaintiffs' definition of who

25   Craig Wright was, and they wanted to define Craig Wright as

1    himself and also the company.  We lost that battle.  We also,

2    if you recall, Your Honor, explained to plaintiffs in a brief

3    and the Court on several occasions that the documents and the

4    ESI that was in Dr. Wright's possession, custody and control

5    wasn't just -- wasn't necessarily (inaudible) any of his

6    personal (inaudible).  A lot of it was company stuff.  So they

7    got company stuff.

8         And so all of the privileges that we're asserting

9    with regard to company-related things on the basis of at the

10   time that these communications were engaged in, the parties

11   engaging in those communications have a fiduciary duty to

12   those companies either as directors, or employees, or

13   independent contractors, or whatever the case may be, to

14   uphold the privilege.

15        And it literally turns -- I think with the -- these

16   things, to me, that plaintiffs are asking for would turn the

17   privilege lag and corporate law entirely on its head and

18   essentially say that once you are no longer associated with a

19   company, you don't have to invoke the privilege.  In fact, you

20   can waive it on behalf of the company.  (Inaudible), and

21   that's essentially what they're asking for.

22        THE COURT:  All right.  So again --

23        MS. MARKOE:  So --

24        THE COURT:  Go ahead.

25        MS. MARKOE:  -- it is our position that the

1   privilege applies in regards to any employee, former employee,

2   director, or former director, officer, former officer of any

3   of these companies if it would be otherwise privilege.  And so

4   we're invoking the privilege.

5            THE COURT:  All right.  I understand your argument.

6            Back to Mr. Delich.

7            MR. DELICH:  Our response is still that the control

8   group for the companies have to assert the privilege, and that

9   Craig just simply does not have the ability to do so.  And if

10  they want to assert that privilege, they need to bring it to

11  us from the controllers of the company.

12           THE COURT:  So your position is that Dr. Wright can

13  waive the privilege by turning it over; is, in fact, obligated

14  to waive -- if -- assume they're otherwise privileged.  He is

15  obligated to waive that privilege and give it to you unless he

16  goes to the company and gets the company to come in and

17  assert?

18           MR. DELICH:  I mean, I think that's one way of

19  putting it, Your Honor.  I mean, I don't know what Craig is or

20  is -- his obligation is or aren't to those various entities.

21  So, I mean, it's kinda hard to say.  I mean, from our

22  perspective, until we see a valid asserting of privilege by

23  the entities whose privilege it is, then they should be

24  subject to production.

25           THE COURT:  Okay.  Mr. Freedman under my rule --

 1    Mr. Delich did a fine job, but under my procedure, obviously
 2    I'll give you the opportunity to supplement anything he said
 3    if you'd like to.
 4         MR. FREEDMAN:  No, Your Honor.  Only that the
 5    (inaudible) before, and there's case law, (inaudible) you
 6    know, (inaudible) privilege makes it clear that the privilege
 7    must be claimed.  It doesn't just exist in the abstract.  It
 8    must be invoked by the controller for the company.  But
 9    Mr. Delich did a fine job.
10         THE COURT:  Okay.  Well, this is why I prefer to
11    have these hearings noticed ahead of time so I can actually
12    know these issues before I'm sitting here, because this is not
13    one that I can tell you I'm -- I have encyclopedic knowledge
14    of how this all works.  So just let me think out loud for a
15    second.
16         So Dr. Wright -- the way it's presented is this:
17    Dr. Wright obtained this information at a time and through a
18    relationship under which it would be privileged if he were
19    still at the company.  They -- he retains possession of it for
20    one reason or another.  He believes it remains privileged, and
21    the objection is that the -- he hasn't gotten the underlying
22    company to come forward and assert the privilege, he's just
23    trying to assert the privilege for them.
24         Okay.  How many underlying companies are we talking
25    about here?  How many different entity -- how many third party

```
 1   entities is the privilege being asserted?

 2            MS. MARKOE:  I mean, more -- more than a dozen,

 3   dozens, and many of these companies are defunct or in

 4   liquidation in Australia.  And if plaintiffs -- you know,

 5   under plaintiffs' theory, we would have had to do a privilege

 6   review, then go do -- if we could even find the liquidators or

 7   who the control person is for the now defunct companies and go

 8   reach out to them, send them all the documents, have them do a

 9   privilege review, and then they decide whether or not to

10   assert the privilege?  I mean, it just -- it's gets a

11   little -- that's just not proportionate to the needs of the

12   case.

13            And I can tell you that we are not making baseless

14   privilege assertions.  We don't -- these are assertions that,

15   when you look at documents, you look at documents, it's

16   clearly privileged based on either attorney-client or work

17   product, and (inaudible) many of which are related to draft,

18   you know, pleadings and draft communications and responded to

19   ATO proceedings, and many of which regarding taxes (inaudible)

20   and stuff like that.

21            THE COURT:  All right.  So Ms. Markoe, that's where

22   I was going to go next, which --

23            MS. MARKOE:  Both personal and for the -- and

24   (inaudible) for the company.

25            THE COURT:  I understand.  But where I was going to
```

1   go, what's the underlying -- underlying relevance of all these

2   documents?  Into what bucket did they fall that a privilege

3   was otherwise asserted?

4          MS. MARKOE:  Well, I mean, I'm not sure I

5   understand.

6          THE COURT:  So obviously a request -- a request --

7   the way these things generally have played out, right, a

8   request is made.  There's some theory of relevance underlying

9   the request.  The request is trying to target a particular

10  universe of documents.  You've asserted a privilege as to some

11  sub-universe of that universe based on a privilege.  I'm just

12  trying to understand what's the over -- overarching relevance

13  theory.  What are these documents related to, and why are they

14  relevant?

15         MS. MARKOE:  Zalman is going to I think address this

16  small aspect of it.

17         THE COURT:  That's fine.

18         MR. KASS:  Your Honor, yes this is Zalman Kass.

19         And the reason why I want to address it is because

20  this goes to the search terms that were negotiated with

21  Mr. Roche a while back.

22         So these documents simply hit on search terms.  The

23  search terms are far from perfect, and in the past we have

24  asked Your Honor or I think plaintiff had made the request

25  that we produce all documents, whether or not they're actually

1    relevant to the request.  So, Your Honor, we can definitely

2    state that there are many documents that are hitting on search

3    terms that are not relevant to this matter, because we were

4    ordered to produce all documents, they're going on the log,

5    and that's kind of where we are right now.

6              THE COURT:  Okay.

7              MS. MARKOE:  And then, Your Honor, I'd just like to

8    point out one other thing.  With regards to the -- any

9    ATO-related material, if the material actually went

10   (inaudible) to the final version that actually went to the

11   ATO, those were produced at this point.  There is no privilege

12   over them because they went to third parties.  So we're not

13   asserting privilege of that.  (Inaudible) communications

14   around some of that stuff before it gets to ATO, and

15   (inaudible) some of the stuff that we would be asserting

16   privilege over.

17             THE COURT:  All right.

18             MS. MARKOE:  And I think Mr. Zalman properly pointed

19   out, a lot of these materials are just not even relevant to

20   the case at all, but because of this Court's order and

21   plaintiffs' request, we're obliged to put them on a log and

22   review them.

23             THE COURT:  I understand that's been the procedure

24   all along.

25             How many documents are we talking about, Ms. Markoe?

```
 1              MS. MARKOE:  Um, let me see.  Because we had -- I

 2    think -- well, no.  Honestly, Your Honor, I can't answer that.

 3    What I can tell you is that of the documents that we have

 4    produced thus far, I think we're asserting a one- to

 5    two-percent privilege rate, but we've produced hundreds of

 6    thousands of documents.

 7              THE COURT:  No, no, no, I understand.  I understand

 8    that, but just --

 9              MS. MARKOE:  We were doing --

10              THE COURT:  As to this small universe of documents,

11    documents for which an attorney-client or work product

12    privilege is being asserted allegedly on behalf of a third

13    party, I'm just trying to get a sense of how many documents

14    we're talking about, if you know.

15              MS. MARKOE:  It would probably be most of them.  I

16    mean, we have to re-review for that issue, because -- and,

17    Your Honor, I mean we're in a situation also where, you know,

18    I mean, these are people that are -- I think once you leave a

19    company, you still owe a fiduciary duty to it if you're an

20    employee and whatever.  And so, you know, it would essentially

21    be requiring people to break that fiduciary duty to those

22    companies.

23              And like I said, you know, I think it would sort of

24    turn the corporate world on its head --

25              THE COURT:  No, I --
```

```
 1              MS. MARKOE:  -- to say that, you know --

 2              THE COURT:  I hear you.

 3              MS. MARKOE:   -- If you have (inaudible) of

 4    documents in your possession, then --

 5              THE COURT:  Well, just quantify --

 6              MS. MARKOE:  -- you know, you can waive the

 7    privilege for the company.

 8              THE COURT:  Quantify this for me, Ms. Markoe.  I

 9    asked you how many there were; you said most of them.  I'm

10    just trying to, again, get a sense.  Are we talking a

11    thousand, 10,000, a hundred thousand?  Just give me a rough

12    sense of how many documents we're talking about.

13              MS. MARKOE:  We're talking -- I don't know.  So

14    (inaudible) produced.  Probably at least 5000.  I'm not sure

15    off the top of my head.  I've actually asked our vendor for

16    that information, and I haven't gotten it yet.

17              THE COURT:  Okay.

18              MS. MARKOE:  Actually (inaudible).  So we have -- we

19    had, let's see, I think we have withheld -- we partially

20    produced some documents, they were redacted.  That's just

21    about 28, 2900 approximately.  We have 12,000 left to review,

22    and I think we have about -- we withheld about 29,000.  So, I

23    mean, we're not talking a small amount (inaudible).

24              THE COURT:  Okay.  I understand.

25              Let me turn back to Mr. Delich and Mr. Freedman and
```

1    give them the final word.

2            MR. DELICH:  So, I mean, I can't speak to how many

3    documents there are necessarily on which Dr. Wright is

4    asserting a privilege of a third party.  I have identified a

5    universe of 153 documents that Dr. Wright is not even included

6    on top of the chain.  And so I would assume that, you know, at

7    least from that universe, you know, those are third party

8    privileges being asserted.  And, I mean, that would be kind of

9    my starting point, but, I mean, I can't -- I can't speak to

10   how many documents there might be in the entire universe.

11           THE COURT:  Okay.  All right.  Anything further from

12   either side?

13           MR. FREEDMAN:  Your Honor, I --

14           THE COURT:  Yes, Mr. Freedman.

15           MR. FREEDMAN:  Sorry.

16           I was just going to offer at the point, you know,

17   while Ms. Markoe's been arguing, I've delved through my

18   papers, and I could give the Court some citations about the

19   requirements that privilege be invoked by the control group,

20   and that when a displaced manager leaves, he's no longer able

21   to invoke the privilege, but I'm not sure if the Court needs

22   that.

23           THE COURT:  Well, do those cases suggest that he

24   is -- he has to just do it, or he has an obligation -- I would

25   assume he has some fiduciary obligation to communicate with

```
 1   the control group and try to give them the opportunity to
 2   invoke a privilege.  I would imagine if you represented the
 3   control group, and some former employee went around giving
 4   away all your privilege material, he'd be a defendant in a
 5   lawsuit pretty fast.
 6        MR. FREEDMAN:  Your Honor, you know, as I said, it's
 7   an old brief.  I don't remember the case off the top of my
 8   head.
 9        I would say that Dr. Wright has known for a long
10   time that this would be an issue.  We've had -- I've been
11   pushing for privilege logs for a long time.  I've raised this
12   issue previous with defense counsel that I didn't think they
13   could invoke the privilege of third parties, and they were on
14   notice.  They should have gone to those third parties to get
15   their privilege invoked if they could.  They took the position
16   they didn't need to.
17        I don't know what to tell the Court other than
18   Dr. Wright probably should have gone to the control group and
19   gotten them to invoke privilege, or maybe they wouldn't invoke
20   privilege.  A lot of the companies are controlled by
21   administrators that may be adverse to Dr. Wright, and maybe
22   that's why Dr. Wright decided not to go to those liquidators
23   or administrator.
24        I don't know the answer, Your Honor, I'm
25   speculating.  But he should have (inaudible).  Now, he's under
```

1    an obligation to produce, I'd argue, unless the control group

2    invokes privilege.

3              THE COURT:  All right.  Are you -- are you -- let me

4    ask, Mr. Freedman.  Are you factually -- are you aware of who

5    these different controllers are, or is that also being

6    withheld?

7              MR. FREEDMAN:  Your Honor, I'm not familiar enough

8    with the withheld documents to know who they are.  I would

9    guess, although Ms. Markoe should correct me if I'm wrong,

10   that they involve Dr. Wright's former companies in Australia

11   like Coin Exchange and (inaudible), which are under the

12   control of liquidators.

13             THE COURT:  Okay.  All right.  All right.  I'm going

14   to take this matter under advisement.

15             Mr. Freedman, if you want to e-mail me those cases,

16   copying opposing counsel.  Ms. Markoe, if you have any cases

17   you want me to take a look at, feel free to send those to me.

18   This is one I want to think about a little bit, and I'll get a

19   written order out.

20             But I know time is short, so I will get something

21   out promptly, but I want to give each side a chance to brief

22   it.

23             So if the parties could, by noon tomorrow, send me

24   any cases that you've got that you want me to look at, copying

25   each other, I'll look at them tomorrow and try to get an order

 1   out by close of business tomorrow.

 2            All right.

 3            MR. FREEDMAN:  Your Honor, just to clarify, do you

 4   want briefing or just a list of cases?

 5            THE COURT:  Just send me the cases.  You guys got

 6   better things to do than write more briefs.  Just send me

 7   citations to cases if you have any that you want me to read.

 8   I'll do my own research if I need to.

 9            I have a sense of what I think I'm going to do, but

10   I want to go look at some cases myself to make sure that the

11   law allows me to do what I think I'm going to do.  So I want

12   to give each of you an opportunity, since I'm going to take

13   some time.  If you want to send me any cases, you may.  You're

14   not required to.  I'm not ordering that.  But if you don't get

15   it to me by noon tomorrow, I'm just going to go forward.

16            All right.  Any other issues we need to resolve on

17   the plaintiffs' side today?

18            MR. FREEDMAN:  I don't believe so, Your Honor.

19            THE COURT:  All right.  From the defense, were there

20   any issues the defense wanted to raise today?

21            MS. McGOVERN:  Yes, Your Honor.  This is Amanda

22   McGovern.

23            We have two issues with respect to the plaintiffs'

24   privilege log which I would like to address, and we did

25   discuss this at the meet and confer.

1          THE COURT:  Okay.

2          MS. McGOVERN:  So on the privilege log -- it's about

3    52 pages -- Ira Kleiman asserts privilege over documents,

4    communications, e-mails, that he has had with nonparties,

5    third parties, non-clients.  It includes the press, it

6    includes our own client, it includes Carter Conrad, Patrick

7    Paige, the witnesses in the case.  It includes Uyen Nguyen.

8    It includes the purported owner of W&K at a certain point.

9          And we addressed this with plaintiffs' counsel

10   today, because we believe that those documents -- and they're

11   dated -- the dates of the documents are not all post

12   litigation in the case, and we addressed this and said we

13   would like -- our ask, for purposes of identifying for today's

14   hearing at 2:30, to the extent that we could do all of it

15   without addressing it with Your Honor, is that we (inaudible)

16   production of our documents that -- (inaudible) which

17   privilege was asserted that represent communications

18   (inaudible) third parties.  And the response was that Ira

19   makes notes on documents, and that it may be difficult for

20   purposes of determining privilege, and so they (inaudible)

21   log.

22          And, you know, our position is -- in that regard was

23   that the notes can be redacted, and in some instances the

24   notes aren't privileged.

25          So there needs to be (inaudible) in that regard,

 1   particularly (inaudible) this case, and I understand that we

 2   were actually (inaudible) sort of a more limited defense, and

 3   the (inaudible) latches defense.  And, you know, one of the

 4   issues in the case that we have is that a lot of this stuff

 5   was thrown away, and a lot of the stuff (inaudible).  And

 6   (inaudible) to be a part of that, and now we're producing a

 7   privilege log with a lot of stuff has been withheld, and

 8   it's -- so we don't think there's privilege there, and we

 9   think the documents should be produced right away.

10           THE COURT:  And help me --

11           MS. McGOVERN:  Secondly --

12           THE COURT:  Hold on.  Before you get to that,

13   Ms. McGovern.  How many entries on the privilege log are we

14   talking about for which you assert this objection?

15           MS. McGOVERN:  So in all -- okay.  So in all candor,

16   we provided a list of examples.  We provided an e-mail to this

17   effect to plaintiffs' counsel identifying our issues on the

18   privilege log, and we provided examples.  And I think we

19   provided it was definitely less than 10 on this.  But we said,

20   look, for example, you know, saying perhaps this was something

21   you aren't unaware of.  You know, sometimes, you know,

22   privilege logs are sort of automatically generated or

23   something, because we just couldn't understand how the

24   assertion would be made.

25           So I don't know the exact number, but it's clear on

1    the privilege log that there are a lot, and it's also clear on

2    the privilege log that there's no privilege, because the

3    communications include third parties.  I mean, it includes

4    Craig write.  It's just sort of the obvious.  But includes

5    communications with the press.

6            And, you know, so -- and we had a limited deposition

7    of Ira Kleiman, as you know.  We're taking the deposition

8    tomorrow, but (inaudible) deposition tomorrow.  But, you know,

9    in that limited deposition another issue, of course, you know,

10   is that he's represented that he didn't have certain

11   communications with people (inaudible) to different times, you

12   know.  And when he knew what he knew is very important in this

13   case, and it's our position that that issue is going to

14   emanate from the documents in this case, and that he knew

15   whatever it is he's claiming that he (inaudible) that's

16   (inaudible) here, he knew well before the statute of

17   limitations, and he knew -- and then, of course, there's the

18   laches defense.

19           THE COURT:  Understood.  All right.

20           MS. McGOVERN:  So, and -- so, but there's another

21   issue related to it, and I think -- do you want me to tee it

22   up now and we can --

23           THE COURT:  Yeah, go ahead.

24           MS. McGOVERN:  -- just go over (inaudible).

25           THE COURT:  No, that's okay.

```
 1            MS. McGOVERN:  Okay.  So then the other one is that
 2    there are a lot of entries -- and, again, this is sort of, you
 3    know, our objection to sort of the Ira (inaudible) privilege
 4    assertion, and it documents with attachments that are not
 5    identified or described, so that we don't know what they are.
 6    But because Ira forwarded a nonprivileged document certainly
 7    doesn't make it privilege, which is our argument to
 8    plaintiffs' counsel.  I'm not making that argument to the
 9    Court.  I'm not trying to (inaudible) sort of way, but I'm
10    just saying that we objected to, you know, unidentified or,
11    you know, attachments as being withheld simply because they
12    were attached to an e-mail by Ira.  And we asked for a closer
13    review by plaintiffs' counsel as to those attachments, if
14    they're not privileged, that they should be immediately
15    produced, and they -- and if they are privileged, they need to
16    be described.  You know, what are they?
17            THE COURT:  Okay.
18            MS. McGOVERN:  How is an attachment to an e-mail by
19    Ira, you know, to someone else privileged?  What is it?
20            So those are our two objection on the privilege log,
21    Your Honor.
22            THE COURT:  Thank you very much.
23            All right.  Let me turn to the plaintiffs' side.
24            MR. DELICH:  Judge Reinhart, this is Joe Delich.
25            THE COURT:  Yes, sir.
```

1          MR. DELICH:  I think the first thing I'm going to

2   address is the documents that contain highlighting or comments

3   from Ira Kleiman.  There's just frankly no way that we can

4   determine -- it's not just that it's difficult to redact them,

5   it's that we don't see any way to effectively redact those

6   documents without revealing, you know, portions of the

7   documents that Ira found noteworthy or was highlighting and

8   underscoring with the intention of transmitting to counsel or

9   in preparation for litigation.  There's just -- they're too

10  annotated.  It's not just a matter of relatively simple

11  redactions.

12          And, you know, our understand from the ones that we

13  checked, which we checked a lot of them, is that, you know,

14  these are not unique documents that have not been produced to

15  the other side.  That they're duplicate copies that, you know,

16  in the course of research, Ira was doing into pursuing

17  litigation against Dr. Wright, in preparation for this

18  litigation, that he has compiled and marked up and written on.

19  And so we just -- we frankly just don't see any way to

20  effectively redact those documents without revealing the

21  underlying contents of the communication.  And as far as, you

22  know, we've been able to determine, they aren't documents that

23  the defendant does not have.

24          THE COURT:  Okay.

25          MR. DELICH:  Let's see.

1          I believe (inaudible) I'm going to address the -- in

2    terms of the attachments, you know, our privilege log contains

3    a number of entries that are e-mails with counsel, with, you

4    know, Mr. Freedman and Mr. Roche and Ira, and, you know, these

5    entries are actually inadvertently included on our privilege

6    log as under the Local Rule 26.1(e)(2)(C).  You know, those

7    documents did not even need to be included on our privilege

8    log.

9          And so, you know, one thing we're going to do is

10   we're going to go back, we're going to advise our privilege

11   log and remove any of those entries that are communications

12   with Mr. Roche and Mr. Freedman.  And so, you know, we do not

13   agree with the position that (inaudible) attachments to those

14   e-mails need to be separately reviewed for privilege.

15         And, again, you know, as far as we know, none of

16   these are unique documents that have not been produced to the

17   defendant.

18         And on the final point in terms of our privilege log

19   being overinclusive, the defendant identified a number of

20   documents, and we went back immediately and re-reviewed them.

21   I believe there were about 30 documents their e-mail

22   identifies.  We produced I would say rough -- I at least

23   instructed our team last night to produce about two-thirds of

24   those.  The other 10 were kind of these text files and markups

25   that I referred to earlier that Ira had compiled.

 1            You know, I think we're going to go back and take

 2    another look at our privilege log in the process of removing

 3    the communications, Mr. Roche and Mr. Freedman, and continue

 4    to check it, and any documents that we have found that should

 5    have been produced, we will go ahead and produce them.

 6            And, you know, to the extent that there are specific

 7    entries that the defendant wants us to take another look at

 8    and see whether it should be produced, I think we're more than

 9    happy to do that, too.  The intention here is not to be overly

10    inclusive in terms of what we're not producing, but --

11            THE COURT:  Okay.

12            MR. DELICH:  -- as far as we've been able to tell,

13    you know, none of these are documents that are not in their

14    possession, although I certainly understand that, you know,

15    the defendant probably feels there's no way he could know that

16    without us producing the documents.  So, you know, to the

17    extent that they identified specific entries, we will look at

18    them.  We will do another check of our privilege log and see

19    if we can find any that should be produced, but I don't know

20    what else we can really offer to do to resolve this besides

21    that.

22            THE COURT:  All right.  Thank you.

23            Ms. McGovern, I'll give you the last word.

24            MS. McGOVERN:  Yes, yes.

25            Your Honor, these are documents that, you know, in

 1    some instances date back seven years.  So, you know, the

 2    because it's difficult doesn't make it privileged.  Because

 3    Ira commented on something doesn't make it privileged.  And I

 4    don't think it's our responsibility to go through their

 5    52-page privilege log and point out communications between

 6    their client and third parties so that they can review it and

 7    determine that, in fact, they never should have withheld it in

 8    the first instance.

 9          Two-thirds of the 38 (inaudible) that we -- that we

10    identified for them they conceded should have been produced.

11    You know, it seems -- this is the ask, Your Honor.  We are

12    moving for immediate production of all communications that are

13    withheld between Ira and third parties.  We are also moving to

14    compel all attachments that are not privilege that were

15    withheld simply because they've been forwarded by Ira.  And to

16    the extent that there are communications that are -- and notes

17    that are notated on documents, those should be redacted, and

18    those should be with respect to documents that truly were in

19    anticipation of litigation with their existing counsel or

20    other counsel that was retained and then I guess they didn't

21    follow through on it.

22          There is a critical issue on this case as to what

23    Ira, what information Ira had, and when.  And this assertion

24    of privilege is directly interfering with our discovery of

25    that information during the relevant discovery period.  It

1    should have been produced, and it should be produced

2    immediately.

3              THE COURT:  All right.  Thank you.

4              All right.  Here's what I'm going to do.

5              So, first of all, to the extent that there are

6    attachments that they -- that are not themselves annotated, I

7    agree with Ms. McGovern, those are not privileged, even if

8    they were sent to Mr. Roche and Mr. Freedman.  If Mr. Kleiman

9    sends something to Mr. Roche and Mr. Freedman after litigation

10   ensues, so otherwise the communication with Mr. Roche and

11   Mr. Freedman doesn't have to be logged under the local rule,

12   but the attachment is, hey, here's a story about Craig, the

13   underlying attachment is not privilege, and the underlying

14   attachment should be produced if it's independently not

15   privilege.

16             So that would be my order as to the attachments.

17   Obviously the cover e-mail, if you send an e-mail to your

18   lawyer saying, hey, take a look at this document, the cover

19   e-mail is privilege, but the underlying document is not

20   independently, unless it is otherwise independently privilege.

21   So that will be my ruling as to the attachments.

22             As to the items that are annotated, and based upon

23   the representation that the annotations would be unduly -- it

24   would be unduly difficult to remove the annotations, and it

25   would -- and that these documents are otherwise largely

1   cumulative to documents that have already been produced, I

2   will -- I will not compel the production of the annotated

3   documents.  I agree with Ms. McGovern that the fact that it's

4   hard doesn't make it privilege, but the fact that it's hard

5   may make it unduly burdensome and therefore not discoverable,

6   which candidly is my feeling generally about the invocation of

7   the third party privilege by Dr. Wright, that it's -- whether

8   he has to invoke or not, to require him to go back to the

9   other companies, or to require the plaintiffs to go back to

10  the other companies to try to get waivers or non-waivers is

11  simply not an exercise we need to engage in at this time, but

12  that's what I want to research.

13          So at least as to the assertion of privilege as to

14  documents that have been annotated by Ira Kleiman, I'll

15  sustain the objection to production of those.  As to the

16  documents relating to communications with Mr. Roche and

17  Mr. Freedman, I agree those can be removed from the privilege

18  log, but any underlying attachments that are not independently

19  privilege need to be pro -- and that are otherwise producible

20  need to be produced.

21          All right.  Next issue.

22          MS. McGOVERN:  Your Honor?

23          THE COURT:  Yes.

24          MS. McGOVERN:  May I ask one question?

25          THE COURT:  Sure.

 1                MS. McGOVERN:  With respect to the communications

 2      between Ira and third parties that are not annotated.

 3                THE COURT:  Well, I -- you know, I -- I can't

 4      rule -- generally speaking, communications with third parties

 5      aren't privilege, but without seeing them, I can't adjudicate

 6      those.  That's why I was asking you how many there were.

 7                If that is a -- if that universe of documents turns

 8      out to be a relatively manageable universe of documents, I'm

 9      happy to conduct an in-camera review, but I don't know that I

10      can, in a vacuum, order that any communications between Ira

11      Kleiman and a third party, you know, who might be a

12      consultant, who might otherwise be part of the defense team or

13      the plaintiffs' team here, I don't know who all these people

14      are.  So I'm uncomfortable ordering in a vacuum that any

15      communications between Ira Kleiman and a third party are per

16      se not privileged.

17                So I'll leave it at that, Ms. McGovern.  If you want

18      to file a more specific motion, or if, after conferring with

19      the parties, you believe it's a manageable universe, I'm happy

20      to do a -- a -- an in-camera review.

21                MS. McGOVERN:  Thank you, Your Honor.

22                THE COURT:  Sure.

23                All right.  I think you said you had one other issue

24      you wanted to raise this afternoon?

25                MS. McGOVERN:  No, that actually -- it was one issue

```
 1   with subparts.
 2            THE COURT:  Ah, very good.
 3            Okay.  So just let me regroup.  I think the only
 4   thing I've taken under advisement is the issue of the -- I'm
 5   going to just summarize it this way.  I understand there may
 6   be a dispute that I'm summarizing it properly.  But I've taken
 7   under advisement the issue of the assertion of third party
 8   privilege.  I'm going to look at that.  You all have a window
 9   to provide me with law if you want me to read it, and I will
10   get a ruling out as promptly as I can.
11            So putting that aside, let me turn to the plaintiff.
12   Have I at least ruled upon all the issues you wanted to raise
13   today, not waiving any objections you may have to the rulings
14   that I've made?
15            MR. FREEDMAN:  You have, Your Honor.
16            Thank you.
17            THE COURT:  All right.  And as to the defense, have
18   I at least ruled upon all the issues you wanted to raise
19   today, not waiving any objections you may have to those
20   rulings?
21            MS. McGOVERN:  Yes, Your Honor.
22            THE COURT:  All right.  Well, I was going to say
23   I'll hopefully not hear from you again until we're all in Lon
24   -- well, you're in London, I'm here.  But I hesitate to say
25   this, but I'm here if you need me.
```

1            So if we need to have another hearing, I'll make

2   time for you.

3            Have a good afternoon, everybody.

4            MS. McGOVERN:  Thank you.

5            MR. FREEDMAN:  Thank you, Your Honor.

6        (Proceedings concluded.)

7                        *  *  *  *  *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                          *  *  *  *  *

 2                          I N D E X

 3    Telephonic Status Conference                    4

 4                          *  *  *  *  *

 5                     E X H I B I T S

 6    (None.)

 7                          *  *  *  *  *

 8                        CERTIFICATE

 9         I, Stephen W. Franklin, Registered Merit Reporter, and

10    Certified Realtime Reporter, certify that the foregoing is a

11    correct transcript, to the best of my ability, from the

12    DIGITAL AUDIO RECORDING of proceedings in the above-entitled

13    matter.

14         Dated this 16th day of JANUARY, 2020.

15

16         /s/Stephen W. Franklin
           _____
17         Stephen W. Franklin, RMR, CRR

18

19

20

21

22

23

24

25
```

**MR. DELICH: [10]** 4/12 36/13 36/24 41/7 41/18 48/2 55/24 56/1 56/25 58/12

**MR. FREEDMAN: [35]** 4/6 4/16 13/5 13/7 14/4 14/14 15/6 17/4 17/6 18/22 21/25 22/15 23/19 25/23 28/13 29/13 29/18 30/25 31/4 31/8 33/1 33/18 33/20 33/23 35/2 36/5 42/4 48/13 48/15 49/6 50/7 51/3 51/18 63/15 64/5

**MR. KASS: [3]** 4/22 25/25 44/18

**MR. PASCHAL: [11]** 4/20 5/18 5/21 7/8 7/10 7/15 10/13 11/3 11/17 12/22 13/2

**MR. RIVERO: [4]** 4/17 16/1 16/4 16/15

**MR. ROCHE: [16]** 4/10 5/5 5/16 5/19 6/25 7/23 7/25 8/18 8/22 9/25 11/1 11/6 11/22 12/9 12/12 13/1

**MS. MARKOE: [30]** 4/21 31/12 33/11 33/16 37/15 37/25 38/3 38/7 38/18 38/23 39/4 39/7 39/19 39/22 40/23 40/25 42/3 43/23 44/4 44/15 45/7 45/18 46/1 46/9 46/15 47/1 47/3 47/6 47/13 47/18

**MS. McGOVERN: [20]** 4/19 16/19 19/3 20/9 51/21 52/2 53/11 53/15 54/20 54/24 55/1 55/18 58/24 61/22 61/24 62/1 62/21 62/25 63/21 64/4

**THE COURT: [117]**

**-**

**-and [6]** 2/4 2/7 3/4 3/7 3/10 3/13

**-v [1]** 1/6

**/**

**/s/Stephen [1]** 65/16

**1**

**1.6 million [1]** 33/13
**10 [4]** 25/12 28/25 53/19 57/24
**10,000 [1]** 47/11
**1000 [5]** 3/3 3/6 3/9 3/12 3/15
**11249 [2]** 2/6 2/9
**12,000 [1]** 47/21
**120-odd [1]** 27/4
**122 [3]** 24/18 25/6 25/21
**130 [1]** 27/22
**15 [1]** 6/3

**15-minute [2]** 8/4 12/4
**153 [1]** 48/5
**166 [1]** 13/12
**16th [1]** 65/14
**17th [1]** 25/11
**18-80176 [1]** 1/3
**18-80176-BB [1]** 1/2
**185 [2]** 2/6 2/8

**2**

**20,000 [3]** 25/13 28/24 34/11
**200 [1]** 2/3
**2009-2010 [1]** 17/22
**2010 [1]** 17/22
**2011 [1]** 17/23
**2013 [2]** 18/12 18/13
**2017 [1]** 14/5
**2019 [4]** 14/22 15/10 18/23 22/2
**2020 [2]** 1/8 65/14
**210,000 [2]** 23/24 24/18
**2200 [1]** 35/25
**2232 [1]** 30/19
**250 [2]** 31/5 31/6
**2500 [1]** 34/10
**2525 [5]** 3/3 3/6 3/9 3/12 3/15
**26 [1]** 23/12
**26.1 [1]** 57/6
**2611 [1]** 30/3
**28 [1]** 47/21
**29,000 [1]** 47/22
**2900 [1]** 47/21
**2:30 [1]** 52/14

**3**

**30 [20]** 5/9 5/22 6/5 6/13 6/16 7/5 7/13 8/3 8/4 8/20 8/21 8/24 9/10 10/9 11/7 11/12 11/15 11/16 29/4 57/21
**33131 [1]** 2/4
**33134 [5]** 3/4 3/7 3/10 3/13 3/16
**33401 [1]** 1/19
**3768 [1]** 1/18
**38 [1]** 59/9

**5**

**50 percent [1]** 21/13
**5000 [1]** 47/14
**514-3768 [1]** 1/18
**52 [1]** 52/3
**52-page [1]** 59/5
**5500 [1]** 2/3
**561 [1]** 1/18

**6**

**60 [1]** 29/5
**6000 [1]** 29/22
**6th [3]** 13/25 14/5 15/12

**7**

**701 [1]** 1/19

**8**

**80176 [1]** 4/3

**9**

**9000 [1]** 31/17

**A**

**ability [3]** 37/10 41/9 65/11
**able [4]** 19/8 48/20 56/22 58/12
**above [1]** 65/12
**above-entitled [1]** 65/12
**abstract [1]** 42/7
**accept [1]** 6/23
**accepted [1]** 7/18
**accessed [1]** 24/16
**accommodated [1]** 27/16
**accommodating [1]** 13/8
**accordingly [1]** 10/25
**accusation [1]** 19/12
**acknowledge [1]** 28/18
**actual [3]** 10/18 15/7 37/19
**actually [13]** 23/6 26/17 27/11 34/23 42/11 44/25 45/9 45/10 47/15 47/18 53/2 57/5 62/25
**add [1]** 32/18
**adding [1]** 33/16
**additional [1]** 22/24
**address [7]** 8/1 16/12 44/15 44/19 51/24 56/2 57/5 57/12
**addressed [3]** 20/20 52/9 52/12
**addressing [1]** 52/15
**adjudicate [1]** 62/5
**administration [1]** 13/18
**administrator [1]** 49/23
**administrators [1]** 49/21
**admit [1]** 23/22
**admits [1]** 28/22
**advance [1]** 18/19
**adverse [1]** 49/21
**advise [2]** 37/22 57/10
**advisement [3]** 50/14 63/4 63/7
**affidavits [1]** 35/7
**affirm [2]** 31/5 33/5
**affirmed [1]** 31/21
**affirms [1]** 17/12
**after [9]** 10/15 15/17 18/13 19/6 22/25 26/12 36/15 60/9 62/18
**afternoon [14]** 4/8 4/9 4/11 4/13 4/17 4/25 5/21 13/7 16/19 16/20 19/3 31/12 62/24 64/3
**again [12]** 8/9 24/13 26/9 27/1 33/11 34/1 35/24 40/22 47/10 55/2 57/15 63/23

**against [1]** 56/17
**ago [8]** 5/25 13/10 14/18 15/24 24/9 24/10 26/10 27/16
**agree [11]** 9/15 9/24 9/25 16/5 21/17 26/3 29/10 57/13 60/7 61/3 61/17
**agreed [2]** 23/24 29/23
**agreement [4]** 14/22 20/23 38/10 38/13
**agreements [3]** 36/17 38/11 39/14
**Ah [1]** 63/2
**ahead [8]** 5/15 33/19 33/22 36/12 40/24 42/11 54/23 58/5
**alleged [1]** 11/10
**allegedly [1]** 46/12
**allow [3]** 8/21 36/7 36/9
**allows [1]** 51/11
**almost [3]** 27/19 31/17 33/12
**along [1]** 45/24
**already [5]** 20/19 21/20 26/13 27/24 61/1
**also [14]** 8/25 20/25 21/10 23/9 25/7 27/24 32/9 38/3 40/1 40/1 46/17 50/5 54/1 59/13
**although [2]** 50/9 58/14
**always [1]** 32/1
**am [1]** 12/11
**Amanda [3]** 3/5 4/19 51/21
**amenable [1]** 30/10
**amount [12]** 12/7 17/20 18/10 18/16 22/4 23/16 24/17 25/7 35/3 35/4 35/4 47/23
**analysis [1]** 28/1
**Andres [2]** 3/2 4/18
**annotated [6]** 56/10 60/6 60/22 61/2 61/14 62/2
**annotations [2]** 60/23 60/24
**another [12]** 5/8 14/1 18/4 37/19 38/17 42/20 54/9 54/20 58/2 58/7 58/18 64/1
**answer [15]** 6/9 6/11 6/17 7/3 8/24 11/12 11/21 12/1 12/8 12/10 12/13 12/17 21/25 46/2 49/24
**answers [1]** 22/20
**anticipation [1]** 59/19
**any [39]** 6/3 6/3 6/4 12/24 13/17 13/21 26/14 26/15 28/1 28/5 28/5 28/17 28/17 32/2 32/23 33/2 33/3 38/4 38/21 40/5 41/1 41/2 45/8 50/16 50/24 51/7 51/13 51/16 51/20 56/5 56/19

**57/11** 58/4 58/19 61/18 62/10 62/14 63/13 63/19
**anyone [4]** 4/14 28/17
**anything [7]** 12/21 15/14 18/12 21/16 34/25 42/2 48/11
**aol.com [1]** 1/19
**apart [2]** 6/7 21/4
**appear [1]** 24/23
**appearances [1]** 1/15 1/22 2/11 4/4
**appears [1]** 37/5
**application [2]** 24/12 26/7
**applies [1]** 41/1
**appreciate [3]** 18/14 22/14 29/8
**appropriate [2]** 23/11 23/17
**approximately [1]** 47/21
**aren't [5]** 41/20 52/24 53/21 56/22 62/5
**argue [2]** 36/8 36/9 50/1
**arguing [2]** 17/18 48/17
**argument [4]** 39/23 41/5 55/7 55/8
**arguments [1]** 22/12
**around [3]** 25/3 45/14 49/3
**aside [1]** 63/11
**ask [16]** 9/5 10/11 15/20 21/18 21/18 22/19 22/19 24/24 25/24 32/13 32/18 36/21 50/4 52/13 59/11 61/24
**asked [13]** 6/9 11/11 11/12 15/4 15/6 16/9 20/25 25/20 27/15 44/24 47/9 47/15 55/12
**asking [7]** 14/10 14/15 24/14 27/1 40/16 40/21 62/6
**aspect [2]** 9/14 44/16
**assert [7]** 41/8 41/10 41/17 42/22 42/23 43/10 53/14
**asserted [11]** 6/10 14/24 18/25 37/5 37/6 43/1 44/3 44/10 46/12 48/8 52/17
**asserting [8]** 8/13 9/10 40/8 41/22 45/13 45/15 46/4 48/4
**assertion [6]** 8/6 53/24 55/4 59/23 61/13 63/7
**assertions [2]** 43/14 43/14
**asserts [1]** 52/3
**associated [3]** 14/21 14/22 40/18
**assume [7]** 34/23 38/6 38/9 38/13 41/14 48/6 48/25
**ATO [10]** 27/8 27/25 28/3 28/4 28/4 28/7 43/19 45/9 45/11 45/14

## A

**ATO-related [1]** 45/9
**attached [1]** 55/12
**attachment [4]** 55/18 60/12 60/13 60/14
**attachments [10]** 55/4 55/11 55/13 57/2 57/13 59/14 60/6 60/16 60/21 61/18
**attempted [1]** 16/8
**attempting [1]** 12/15
**attorney [4]** 5/24 37/1 43/16 46/11
**attorney-client [3]** 37/1 43/16 46/11
**attorneys [2]** 27/21 36/8
**AUDIO [1]** 65/12
**Australia [3]** 28/4 43/4 50/10
**Australian [5]** 17/1 24/19 25/2 25/4 31/15
**authorized [1]** 29/20
**automatically [1]** 53/22
**available [3]** 29/8 29/9 39/3
**Avenue [2]** 2/6 2/8
**avoid [2]** 18/2 18/9
**awarded [1]** 21/13
**aware [1]** 50/4
**away [4]** 24/13 49/4 53/5 53/9

## B

**back [19]** 5/12 12/23 13/11 16/18 16/22 18/18 23/23 26/9 29/22 32/22 41/6 44/21 47/25 57/10 57/20 58/1 59/1 61/8 61/9
**based [9]** 6/9 9/5 13/24 17/1 26/18 30/2 43/16 44/11 60/22
**baseless [1]** 43/13
**basically [1]** 27/22
**basis [8]** 10/12 10/15 21/13 36/17 36/18 36/25 39/13 40/9
**battle [1]** 40/1
**BB [1]** 1/2
**Beach [2]** 1/8 1/19
**because [32]** 5/17 6/5 7/18 10/19 13/10 14/25 15/15 15/23 16/6 17/18 19/14 20/3 21/6 22/9 27/9 28/15 34/21 42/12 44/19 45/3 45/12 45/20 46/1 46/16 52/10 53/23 54/2 55/6 55/11 59/2 59/2 59/15
**become [1]** 39/3
**before [15]** 1/12 7/1 7/11 7/16 10/18 11/18 16/18 16/21 22/8 23/13 42/5 42/12 45/14 53/12 54/16
**beginning [1]** 39/24

**behalf [4]** 37/10 37/25 40/20 46/12
**being [9]** 19/2 37/5 37/6 43/1 46/12 48/8 50/5 55/11 57/19
**believe [15]** 5/7 11/14 11/15 14/16 17/14 22/24 26/4 26/24 27/2 37/7 51/18 52/10 57/1 57/21 62/19
**believes [1]** 42/20
**beneficiaries [2]** 13/16 13/17
**besides [1]** 58/20
**best [1]** 65/11
**better [2]** 14/2 51/6
**between [8]** 7/5 9/9 17/22 59/5 59/13 62/2 62/10 62/15
**big [1]** 17/5
**Biscayne [1]** 2/3
**bit [3]** 19/11 26/1 50/18
**Bitcoin [15]** 17/20 17/21 17/23 18/10 18/16 22/5 24/7 31/8 33/4 33/6 34/18 34/24 35/3 35/4 35/5
**Bitcoin-related [1]** 35/5
**Bitcoins [1]** 34/7
**blatant [1]** 15/2
**blew [1]** 24/13
**blind [3]** 13/13 13/15 14/17
**Bloom [3]** 17/8 17/12 22/10
**blur [1]** 10/2
**body [1]** 30/24
**both [2]** 37/1 43/23
**Boulevard [6]** 2/3 3/3 3/6 3/9 3/12 3/15
**breach [2]** 15/1 15/2
**break [3]** 5/10 37/23 46/21
**brief [3]** 40/2 49/7 50/21
**briefing [2]** 24/13 51/4
**briefs [1]** 51/6
**bring [4]** 15/7 15/14 19/19 41/10
**broad [1]** 38/20
**broken [1]** 13/14
**Brooklyn [2]** 2/6 2/9
**BRUCE [1]** 1/12
**Bryan [5]** 3/11 4/20 5/11 5/16 11/7
**bucket [1]** 44/2
**burdensome [3]** 32/19 34/13 61/5
**business [1]** 51/1

## C

**called [2]** 5/3 5/3
**Calling [1]** 4/2
**calm [1]** 19/14
**came [6]** 15/8 15/21 15/23 29/22 31/4 31/16
**camera [4]** 14/25 18/25

62/9 62/20
**can't [17]** 6/11 8/25 11/23 11/24 15/14 16/11 17/9 18/4 28/16 29/1 33/16 46/2 48/22 48/9 48/9 62/3 62/5
**candidly [1]** 61/6
**candor [2]** 29/8 53/15
**cannot [1]** 37/22
**Carter [1]** 5/1
**case [34]** 1/2 4/2 16/25 16/25 21/11 22/9 23/16 24/4 24/8 25/1 25/17 28/9 29/7 33/9 35/16 35/20 35/21 38/4 38/16 38/19 38/24 39/24 40/13 42/5 43/12 45/20 49/7 52/7 52/12 53/1 53/4 54/13 54/14 59/22
**case-ending [1]** 22/9
**cases [10]** 24/5 48/23 50/15 50/16 50/24 51/4 51/5 51/7 51/10 51/13
**categories [2]** 13/14 37/16
**category [2]** 33/7 34/13
**certain [6]** 7/5 8/24 18/15 24/25 52/8 54/10
**certainly [6]** 20/24 21/1 22/6 33/23 55/6 58/14
**CERTIFICATE [1]** 65/8
**Certified [1]** 65/10
**certify [1]** 65/10
**chain [2]** 37/3 48/6
**chance [3]** 13/9 36/8 50/21
**changed [1]** 17/18
**changes [2]** 17/19 21/15
**characterization [1]** 22/11
**check [2]** 58/4 58/18
**checked [4]** 30/7 32/4 56/13 56/13
**checking [1]** 30/8
**children [1]** 32/10
**choice [1]** 17/13
**choir [1]** 4/23
**circling [1]** 18/18
**circuit [1]** 14/9
**circumstances [3]** 5/23 21/5 25/17
**citations [2]** 48/18 51/7
**claimed [1]** 42/7
**claiming [1]** 54/15
**clarify [1]** 51/3
**classically [2]** 9/19 9/20
**clear [5]** 16/5 23/9 42/6 53/25 54/1
**clearly [2]** 15/22 43/16
**Clematis [1]** 1/19
**clerk [1]** 39/10
**client [9]** 17/10 17/14 20/13 21/21 37/1 43/16 46/11 52/6 59/6
**clients [2]** 37/22 52/5

**close [1]** 51/1
**closer [1]** 55/12
**Coin [1]** 50/11
**combinations [1]** 33/6
**comes [1]** 22/22
**comment [1]** 21/11
**commented [1]** 59/3
**comments [1]** 56/2
**common [1]** 8/8
**communicate [1]** 48/25
**communication [6]** 8/10 8/11 8/12 27/7 56/21 60/10
**communications [22]** 8/9 11/9 27/11 40/10 40/11 43/18 45/13 52/4 52/17 54/3 54/5 54/11 57/11 58/3 59/5 59/12 59/6 61/16 62/1 62/4 62/10 62/15
**companies [13]** 37/6 37/18 40/12 41/3 41/8 42/24 43/3 43/7 46/22 49/20 50/10 61/9 61/10
**companies' [1]** 37/5
**company [23]** 6/14 6/20 6/21 6/22 6/23 37/7 37/19 37/25 40/1 40/6 40/7 40/9 40/19 40/20 41/1 41/6 41/16 41/16 42/8 42/19 42/22 43/24 46/19 47/7
**company-related [1]** 40/9
**comparison [1]** 35/23
**compel [2]** 10/17 59/14 61/2
**compiled [2]** 56/18 57/25
**complaint [3]** 6/2 11/10 12/5
**completely [1]** 23/10
**compressed [1]** 26/6
**conceded [1]** 59/10
**concern [1]** 10/1
**conclude [1]** 9/17
**concluded [1]** 64/6
**conduct [2]** 23/11 62/9
**confer [4]** 19/4 19/18 20/2 51/25
**Conference [1]** 65/3
**conferred [1]** 29/23
**conferring [2]** 36/15 62/18
**confers [1]** 30/6
**confidential [1]** 9/21
**confidentiality [2]** 38/25 39/15
**confusions [1]** 19/10
**connection [1]** 21/19
**Conrad [1]** 52/6
**consent [1]** 21/1
**considering [2]** 27/23 27/24
**constitutes [1]** 6/13
**consultant [1]** 62/12

**consuming [1]** 27/9
**Cont.'d [1]** 3/1
**contain [1]** 56/2
**contains [1]** 57/2
**contents [1]** 56/21
**context [2]** 10/2 23/15
**continue [1]** 58/3
**contract [2]** 37/19 37/23
**contractors [1]** 40/13
**control [9]** 40/4 41/7 43/7 48/19 49/3 49/18 50/1 50/12
**controlled [1]** 49/20
**controller [1]** 42/8
**controllers [2]** 41/11 50/5
**conversation [15]** 6/10 8/4 8/19 8/22 9/1 9/9 9/14 9/16 10/3 12/4 12/6 16/2 17/12 19/10 19/14 19/24
**conversations [7]** 7/5 8/13
**copies [1]** 56/15
**copy [5]** 13/25 14/23 15/9 18/24 18/24
**copying [2]** 50/16 50/24
**Coral [5]** 3/4 3/7 3/10 3/13 3/16
**corporate [2]** 40/17 46/24
**correct [7]** 12/9 25/22 25/23 26/7 39/4 50/9 65/11
**couldn't [4]** 6/22 7/17 24/2 53/23
**counsel [15]** 4/5 6/2 6/16 8/5 9/17 49/12 50/16 52/9 53/17 55/8 55/13 56/8 57/3 59/19 59/20
**counsel's [3]** 4/4 25/14 31/15
**couple [4]** 5/8 13/10 23/20 24/9
**course [3]** 54/9 54/17 56/16
**court [21]** 1/1 1/18 4/1 16/12 19/13 22/9 22/15 29/15 29/20 33/20 34/6 35/7 36/7 36/20 36/21 38/11 40/3 48/18 48/21 49/17 55/9
**Court's [7]** 15/1 15/2 18/14 22/6 24/24 25/10 45/20
**cover [2]** 60/17 60/18
**covered [1]** 38/17
**CPE [1]** 1/18
**cracks [2]** 24/6 24/7 28/19 29/10
**CRAIG [15]** 1/7 4/3 13/12 15/15 17/23 19/25 37/2 37/6 37/9 39/25 39/25 41/9 41/19 54/4 60/12
**Craig's [1]** 37/18
**crazy [1]** 24/4

**C**

create [1] 18/9
created [6] 18/11 19/23 19/24 21/15 34/18 35/6
creates [1] 18/2
critical [1] 59/22
CRR [2] 1/18 65/17
crunch [1] 28/23
cumulative [1] 61/1
current [3] 8/23 11/8 13/16
custody [1] 40/4
cutoff [1] 25/11

**D**

damages [1] 17/2
database [3] 31/15 31/16 32/5
date [6] 18/16 25/9 29/4 29/10 32/19 59/1
dated [2] 52/11 65/14
dates [1] 52/11
Dave [2] 7/3 11/13
days [1] 19/25
de [5] 3/3 3/6 3/9 3/12 3/15
deadlines [1] 27/18
deal [1] 17/5
December [3] 15/10 18/23 22/2
December 2019 [1] 22/2
decide [1] 43/9
decided [1] 49/22
decision [1] 17/2
deep [3] 35/20 35/20 35/20
defendant [16] 1/8 3/2 23/23 24/7 25/10 25/14 28/21 30/16 31/2 36/19 49/4 56/23 57/17 57/19 58/7 58/15
defendant's [1] 17/17
defendants [1] 9/5
defense [17] 1/4 4/15 17/1 17/2 23/2 23/11 25/19 25/24 31/11 49/12 51/19 51/20 53/2 53/3 54/18 62/12 63/17
define [1] 39/25
definitely [2] 45/1 53/19
definition [1] 39/24
defunct [2] 43/3 43/7
Delich [12] 2/7 4/12 4/13 7/22 36/8 36/12 39/9 41/6 42/1 42/9 47/25 55/24
delved [1] 48/17
demonstrated [1] 17/25
deny [3] 22/18 23/8 29/11
deposed [1] 33/5
deposition [28] 5/9 5/12 5/14 5/14 5/22 6/1 6/4 7/14 8/7 10/18 12/15 12/16 12/24 12/25 14/17 15/15 18/20 19/25 20/1

20/3 20/12 20/18 21/1 22/23 54/6 54/7 54/8 54/9
deposition's [1] 20/11
depositions [4] 10/10 22/20 22/25 27/21
described [2] 55/5 55/16
designate [2] 39/1 39/2
designation [1] 39/15
designee [1] 6/16
details [1] 14/15
determine [4] 30/12 56/4 56/22 59/7
determining [1] 52/20
developed [1] 18/17
device [3] 26/12 26/14 26/21
devices [1] 26/15
Devin [1] 2/2
devise [1] 26/10
dictate [1] 17/20
didn't [9] 16/23 21/17 28/20 32/6 38/10 49/12 49/16 54/10 59/20
different [4] 17/11 42/25 50/5 54/11
difficult [5] 6/5 52/19 56/4 59/2 60/24
difficulty [1] 26/7
DIGITAL [1] 65/12
diligence [5] 16/8 19/8 19/20 20/4 20/5
directed [1] 19/12
directly [1] 59/24
director [2] 41/2 41/2
directors [1] 40/12
disagree [1] 9/24
disclose [1] 18/7
discoverable [1] 61/5
discovery [8] 1/11 6/3 17/10 23/13 25/11 27/18 59/24 59/25
discrete [1] 12/7
discuss [1] 51/25
discussed [2] 9/2 9/3
discussion [3] 25/2 20/23 38/9
displaced [1] 48/20
disproportionate [1] 36/1
dispute [2] 34/8 63/6
distinction [1] 21/10
DISTRICT [2] 1/1 1/1
doc [1] 15/12
docket [1] 13/11
docu [1] 15/7
document [26] 14/1 14/4 14/10 14/12 14/16 14/19 14/21 17/19 17/21 18/4 18/22 19/6 19/6 19/7 19/8 19/23 19/24 20/5 21/15 21/19 32/3 34/22 35/24 55/6 60/18 60/19
documents [112]
does [9] 5/7 11/16 11/20 11/22 11/25 23/3 37/10

41/9 56/23
doesn't [11] 12/19 12/19 18/9 23/3 34/12 42/7 55/7 59/2 59/3 60/11 61/4
doing [4] 20/15 37/18 46/9 56/16
don't [57] 5/1 5/2 5/13 6/6 6/12 10/8 10/9 11/14 11/15 12/11 13/9 14/16 15/8 15/22 18/3 19/19 20/21 20/22 21/16 21/18 21/21 22/5 22/5 22/12 27/3 28/9 28/10 28/15 28/15 28/16 28/25 29/6 29/14 29/14 31/20 32/1 34/2 34/12 35/18 40/19 41/19 43/14 47/13 49/7 49/17 49/21 51/14 51/18 53/8 53/25 55/5 56/5 56/19 58/19 59/4 62/9 62/13
done [3] 16/7 28/6 28/7
dot [2] 29/25 30/18
down [5] 9/13 13/14 15/19 24/5 32/2
dozen [1] 43/2
dozens [1] 43/3
Dr. [29] 4/18 4/20 4/21 4/22 13/12 14/5 14/15 22/25 30/25 32/9 32/24 34/17 34/21 38/12 39/11 39/21 40/4 41/12 42/16 42/17 48/3 48/5 49/9 49/18 49/21 49/22 50/10 56/17 61/7
Dr. Wright [25] 4/18 4/20 4/21 4/22 13/12 14/5 14/15 22/25 32/24 34/17 34/21 38/12 39/11 39/21 41/12 42/16 42/17 48/3 48/5 49/9 49/18 49/21 49/22 56/17 61/7
Dr. Wright's [4] 30/25 32/9 40/4 50/10
draft [2] 43/17 43/18
drafts [1] 14/21
drill [1] 9/12
due [5] 16/8 19/8 19/20 20/4 20/5
dumped [1] 28/24
duplicate [1] 56/15
duplications [1] 33/25
duplicative [2] 28/15 30/7 32/6
during [1] 59/25
duty [3] 40/11 46/19 46/21

**E**

e-mail [10] 1/20 29/25 50/15 53/16 55/12 55/18 57/21 60/17 60/17 60/19
e-mails [4] 30/18 52/4 57/3 57/14
e-Signature [1] 31/24

each [4] 19/24 50/21 50/25 51/12
earlier [4] 16/24 24/8 29/9 57/25
early [2] 26/4 27/2
educate [1] 9/22
effect [1] 53/17
effectively [2] 56/5 56/20
either [8] 25/15 32/8 32/11 35/5 36/25 40/12 43/16 48/12
else [4] 4/14 12/21 55/19 58/20
else's [1] 30/13
emails [1] 37/2
emanate [1] 54/14
employee [4] 41/1 41/1 46/20 49/3
employees [1] 40/12
encyclopedic [1] 42/13
end [4] 23/23 27/3 28/23 28/23
ending [1] 22/9
engage [2] 32/13 61/11
engaged [1] 40/10
engaging [1] 40/12
engine [1] 31/16
enough [4] 12/20 33/14 33/14 50/7
ensues [1] 60/10
entered [2] 13/24 37/23
entire [1] 48/10
entirely [4] 37/17 37/17 38/4 40/17
entities [4] 37/11 41/20 41/23 43/1
entitled [1] 65/12
entity [1] 42/25
entries [8] 24/18 53/13 55/2 57/3 57/5 57/11 58/7 58/17
entry [1] 13/11
ESI [1] 40/4
ESQ [8] 2/2 2/5 2/7 3/2 3/5 3/8 3/11 3/14
essentially [5] 36/14 37/3 40/18 40/21 46/20
estate [6] 6/20 6/22 7/4 7/12 7/20 11/14
even [9] 21/18 28/1 29/4 30/10 43/6 45/19 48/5 57/7 60/7
event [1] 17/15
ever [3] 6/17 26/15 32/24
everybody [2] 4/25 64/3
everything [2] 18/8 21/14
exact [2] 27/3 53/25
exactly [2] 16/9 17/17
example [1] 53/20
examples [2] 53/16 53/18
Exchange [1] 50/11
excuse [1] 21/16

excuses [1] 38/12
execute [1] 13/20
executed [2] 14/4 30/15
exercise [3] 32/13 35/24 61/11
exist [2] 38/10 42/7
existing [1] 59/19
exists [1] 21/1
expect [1] 17/7
explained [3] 19/4 19/5 40/2
explaining [1] 19/15
expressed [1] 15/22
extent [10] 9/3 9/17 12/14 17/10 23/7 53/14 58/6 58/17 59/16 60/5
extremely [2] 16/10 28/18

**F**

F2 [2] 2/6 2/8
facetted [1] 9/14
fact [12] 7/11 9/5 9/21 10/16 19/7 20/25 21/20 40/19 41/13 59/7 61/3 61/4
fact-based [1] 9/5
facts [4] 8/24 10/3 10/5 11/10
factual [2] 9/4 21/20
factually [1] 50/4
fall [1] 44/2
false [1] 35/1
familiar [2] 16/2 50/7
far [7] 8/12 16/25 44/23 46/4 56/21 57/15 58/12
fast [1] 45/5
feel [1] 50/17
feeling [2] 18/5 61/6
feels [1] 58/15
fell [3] 24/6 24/7 29/10
feverishly [1] 32/13
few [1] 29/16
fiduciary [4] 40/11 46/19 46/21 48/25
figure [3] 6/8 6/21 18/5
figured [1] 26/7
file [4] 24/12 26/6 26/19 62/18
filed [3] 13/10 14/1 24/12
files [6] 23/24 24/1 24/20 29/14 30/1 57/24
final [4] 27/17 45/10 48/1 57/18
finances [2] 30/13 30/14
financial [1] 30/9
findings [1] 21/21
finds [1] 34/6
fine [9] 5/19 9/9 10/1 10/7 16/3 16/3 42/1 42/9 44/17
firm [1] 12/5
first [7] 5/12 8/2 17/7 36/16 56/1 59/8 60/5
FL [6] 2/4 3/4 3/7 3/10

## F

FL... [2]  3/13 3/16
flesh [1]  20/18
FLORIDA [3]  1/1 1/8
1/19
follow [1]  59/21
forced [4]  14/16 18/7
foregoing [1]  65/10
forged [1]  24/5
forgery [2]  18/4 18/6
formation [1]  13/18
former [6]  11/9 41/1
41/2 41/2 49/3 50/10
forms [1]  33/5
forward [3]  10/4 42/22
51/15
forwarded [2]  55/6
59/15
found [2]  56/7 58/4
fraction [1]  25/8
frames [1]  23/14
Franklin [4]  1/18 65/9
65/16 65/17
frankly [7]  15/2 15/17
17/18 17/25 18/3 56/3
56/19
free [1]  50/17
Freedman [39]  2/2 2/2
2/5 2/8 4/6 4/6 4/9 13/5
14/8 14/9 16/2 16/22
16/23 21/23 25/22 26/2
26/3 26/13 26/16 26/20
26/25 28/11 30/22 32/21
34/16 35/17 39/9 41/25
47/25 48/14 50/4 50/15
57/4 57/12 58/3 60/8
60/9 60/11 61/17
Freedman's [2]  21/19
29/8
fullest [1]  17/10
fully [1]  17/7
further [3]  15/1 30/17
48/11

## G

Gables [5]  3/4 3/7 3/10
3/13 3/16
game [3]  24/23 25/9
32/13
general [3]  10/21 26/14
33/3
generally [5]  10/9 37/22
44/7 61/6 62/4
generated [1]  53/22
gets [3]  41/16 43/10
45/14
getting [1]  17/3
give [14]  13/14 21/23
28/11 29/16 35/18 41/15
42/2 47/11 48/1 48/18
49/1 50/21 51/12 58/23
given [4]  10/21 16/24
25/16 29/7
giving [1]  49/3
gladly [1]  27/16
goes [3]  11/14 41/16

44/20
going [45]  14/2 15/10
15/20 17/18 18/3 20/13
20/13 22/18 22/21 24/24
25/15 26/22 27/17 27/19
28/9 29/3 32/21 35/14
35/23 36/6 36/9 38/5
39/5 39/18 43/22 43/25
44/15 45/4 48/16 50/13
51/9 51/11 51/12 51/15
54/13 56/1 57/1 57/9
57/10 57/10 58/1 60/4
63/5 63/8 63/22
gone [3]  28/4 49/14
49/18
good [17]  4/8 4/9 4/11
4/13 4/17 4/25 5/21
12/20 13/3 13/7 16/19
16/20 19/3 24/17 31/12
63/2 64/3
got [18]  4/23 5/8 14/12
15/9 15/17 19/6 19/6
19/7 19/11 19/13 24/2
24/4 28/24 31/7 35/17
40/7 50/24 51/5
gotta [2]  35/16 35/16
gotten [3]  42/21 47/16
49/19
great [1]  12/23
group [6]  41/8 48/19
49/1 49/3 49/18 50/1
guess [5]  7/4 10/1 21/9
30/7 33/2 50/9 59/20
guidance [1]  10/21
gut [1]  18/5
guys [2]  12/23 51/5

## H

hadn't [1]  32/5
handle [1]  39/18
happened [2]  8/10 27/10
happy [5]  33/20 36/11
58/9 62/9 62/19
hard [5]  28/7 28/18
41/21 61/4 61/4
harm [1]  39/2
hasn't [4]  6/3 17/8 17/13
42/21
haven't [1]  47/16
having [4]  17/11 26/17
30/23 34/24
haystack [3]  35/18
35/18 35/19
he'd [1]  49/4
he's [10]  6/1 17/18 18/3
20/25 34/25 42/22 48/20
49/25 54/10 54/15
head [4]  40/17 46/24
47/15 49/8
hear [6]  10/23 16/16
25/24 31/10 47/2 63/23
heard [2]  23/10 26/25
hearing [1]  1/11 13/8
13/23 23/2 26/10 26/11
26/12 26/20 26/24 52/14
64/1

hearings [2]  29/20 42/11
heart [1]  34/8
heated [4]  15/19 19/9
19/11 19/13
heavily [1]  15/12
heavy [2]  16/7 16/8
held [2]  13/22 18/10
Hello [1]  36/4
help [4]  30/22 32/2
32/22 53/10
helpful [1]  25/5
here [17]  4/24 5/2 6/12
10/2 12/11 21/10 21/11
23/14 32/23 35/22 42/12
42/25 54/16 58/9 62/13
63/24 63/25
here's [2]  60/4 60/12
hesitate [1]  63/24
hey [3]  27/4 60/12 60/18
high [1]  34/20
highlighting [2]  56/2
56/7
highly [5]  24/23 34/14
34/15 34/20 35/15
himself [1]  40/1
hired [2]  5/25 28/25
history [2]  16/6 26/1
hit [8]  30/11 31/17 32/5
32/14 32/15 32/16 38/19
44/22
hits [5]  29/22 30/3 30/4
30/8 34/3
hitting [1]  45/2
hold [8]  8/16 8/16 11/18
14/8 15/3 15/3 38/8
53/12
Honestly [1]  46/2
honor [71]
Honor's [1]  18/12
HONORABLE [1]  1/12
hopefully [1]  63/23
hour [1]  15/23
hours [5]  13/10 29/5
35/25 35/25 36/1
huh [4]  14/3 16/14 36/23
37/24
hundred [3]  11/24 27/22
47/11
hundreds [1]  46/5

## I

I'd [4]  16/11 33/11 45/7
50/1
I'll [24]  5/2 8/1 11/18
14/6 21/23 23/8 23/9
23/22 25/24 28/11 28/16
29/3 29/11 36/1 39/10
42/2 50/18 50/25 51/8
58/23 61/14 62/17 63/23
64/1
I'm [66]
I've [11]  10/21 20/19
22/12 23/10 47/15 48/17
49/10 49/11 63/4 63/6
63/14
idea [1]  35/2

identification [1]  11/8
identified [5]  48/4 48/5
57/19 58/17 59/10
identifies [1]  57/22
identify [1]  35/3
identifying [2]  52/13
53/17
ignores [1]  21/20
III [1]  14/2
imagine [2]  24/21 49/2
immediate [1]  59/12
immediately [3]  55/14
57/20 60/2
impart [1]  8/20
important [2]  21/9
27/14 54/12
improperly [1]  10/19
inadvertently [1]  57/5
inaudible [74]
include [1]  54/3
included [4]  37/3 48/5
57/5 57/7
includes [7]  52/5 52/6
52/6 52/7 52/8 54/3 54/4
including [1]  11/8
inclusive [1]  58/10
incomplete [1]  20/17
independent [1]  40/13
independently [4]  60/14
60/20 60/20 61/18
indicated [1]  36/19
indication [1]  18/6
INFO [1]  1/3
information [16]  8/21
9/23 12/7 13/14 13/21
15/4 20/15 20/17 27/14
28/6 32/10 35/23 42/17
47/16 59/23 59/25
informed [1]  26/12
inquire [2]  20/24 23/5
inquiry [1]  23/13
insignificant [1]  25/7
instance [1]  59/8
instances [2]  52/23 59/1
instincts [1]  11/25
instruct [1]  10/6
instructed [6]  6/11 6/16
7/2 11/11 12/13 57/23
instructing [1]  12/16
intellectual [5]  18/10
18/11 18/16 22/4 25/1
intend [1]  18/5
intended [2]  9/20 9/21
intention [2]  56/8 58/9
interest [1]  8/8
interesting [1]  24/21
interfering [1]  59/24
International [1]  17/22
interrogatories [6]  6/4
14/15 18/19 20/10 20/14
22/22
investigated [1]  15/11
investigation [2]  16/8
25/4
Investments [1]  17/22
invocation [2]  10/16

61/6
invoke [10]  10/14 37/10
39/21 40/19 48/21 49/2
49/13 49/19 49/19 61/8
invoked [10]  10/19 42/8
48/19 49/15
invokes [1]  50/2
invoking [1]  41/4
involve [1]  50/10
IP [2]  21/14 35/5
IRA [40]  1/3 4/3 6/2
6/10 6/17 6/19 6/22 6/22
7/3 7/17 7/20 8/4 8/20
8/23 9/9 10/5 11/13 12/3
12/15 52/3 52/18 54/7
55/3 55/6 55/12 55/19
56/3 56/7 56/16 57/4
57/25 59/3 59/13 59/15
59/23 59/23 61/14 62/2
62/10 62/15
Ira's [1]  7/17
irrelevant [2]  37/17 38/4
isn't [1]  25/7
issue [39]  6/15 6/18 7/7
7/16 7/21 8/1 11/2 11/6
14/14 22/8 22/10 23/18
24/3 24/10 24/25 25/1
27/5 27/15 29/18 32/1
35/3 36/6 36/16 36/23
36/24 38/4 39/17 46/16
49/10 49/12 54/9 54/13
54/21 59/22 61/21 62/23
62/25 63/4 63/7
issues [30]  5/7 5/8 5/11
5/19 5/23 7/2 11/4 12/24
18/15 18/15 20/3 21/7
22/4 23/20 25/17 30/9
33/8 35/10 35/16 36/9
36/14 37/12 42/12 51/16
51/20 51/23 53/4 53/17
63/12 63/18
it'd [2]  22/9
it's [58]  6/13 6/20 8/5
8/13 9/21 13/5 14/11
14/20 17/2 17/11 17/15
21/8 21/12 21/16 21/18
23/19 25/7 25/9 25/17
28/10 28/10 28/21 28/23
28/23 29/6 29/11 30/3
32/12 32/12 33/1 33/7
33/13 33/16 34/11 37/21
38/3 41/21 42/16 43/10
43/15 49/6 52/2 53/8
53/25 54/1 54/4 54/13
56/4 56/4 56/5 56/10
59/2 59/4 60/4 61/3
61/4 61/7 62/19
items [1]  60/22
itself [2]  9/11 17/19

## J

January [4]  1/8 13/25
15/12 65/14
January 6th [2]  13/25
15/12
job [2]  42/1 42/9

**J**

Joe [3]  4/12 5/6 55/24
join [1]  5/10
Joseph [1]  2/7
judge [10]  1/13 16/1
16/4 16/10 17/8 17/12
22/10 35/21 36/13 55/24
judicata [1]  17/1
July [1]  14/5
July 6th [1]  14/5
just [68]

**K**

K's [2]  5/9 11/7
Kass [7]  3/14 4/22 24/10
24/14 25/25 29/11 44/18
keep [1]  25/10
kind [4]  24/5 45/5 48/8
57/24
kinda [2]  24/12 41/21
kinds [1]  14/15
KLEIMAN [20]  1/3 4/3
6/2 6/10 6/17 7/3 7/6
7/20 8/5 8/20 8/23 9/18
12/4 52/3 54/7 56/3 60/8
61/14 62/11 62/15
Kleiman's [3]  7/4 11/5
11/13
knew [6]  15/20 54/12
54/12 54/14 54/16 54/17
know [127]
knowledge [1]  42/13
known [1]  49/9
knows [3]  12/3 12/6
12/18
Kyle [3]  2/5 4/10 5/5

**L**

laches [1]  54/18
lack [1]  14/2
lag [1]  40/17
largely [1]  60/25
last [13]  11/20 21/9
21/24 26/25 27/1 27/3
28/8 28/12 29/9 29/19
29/19 57/23 58/23
latches [2]  17/2 53/3
late [7]  17/3 24/22 25/9
29/4 29/10 32/12 32/19
law [4]  40/17 42/5 51/11
63/9
lawsuit [3]  9/15 9/16
49/5
lawyer [1]  60/18
learn [2]  9/6 9/8
learned [1]  12/3
least [6]  47/14 48/7
57/22 61/13 63/12 63/18
leave [3]  11/24 46/18
62/17
leaves [1]  48/20
left [5]  16/25 17/13
29/18 36/5 47/21
legal [3]  13/21 38/16
38/22
Leon [5]  3/3 3/6 3/9 3/12

3/15
less [1]  53/19
let [19]  7/22 14/9 15/10
16/18 16/22 19/1 25/19
26/23 31/10 36/6 37/13
38/2 42/14 46/1 47/25
50/3 55/23 63/3 63/11
let's [4]  8/16 39/17
47/19 56/25
likelihood [1]  35/22
Likewise [1]  23/2
limit [1]  30/17
limitations [1]  54/17
limited [4]  37/8 53/2
54/6 54/9
line [1]  10/6
lines [1]  10/2
liquidation [2]  37/7 43/4
liquidators [1]  43/6
49/22 50/12
list [8]  23/24 23/25 24/2
24/3 24/15 26/13 51/4
53/16
literally [1]  40/15
litigation [6]  52/12 56/9
56/17 56/18 59/19 60/9
little [5]  19/13 26/1
29/22 43/11 50/18
LLC [1]  1/4
LLP [8]  2/2 2/5 2/8 3/2
3/5 3/8 3/11 3/14
local [2]  57/6 60/11
locations [1]  13/15
log [23]  25/16 27/20
36/10 45/4 45/21 51/24
52/2 52/21 53/7 53/13
53/18 54/1 54/2 55/20
57/2 57/6 57/8 57/11
57/18 58/2 58/18 59/5
61/18
logged [1]  60/11
logs [2]  49/11 53/22
Lon [1]  63/23
London [1]  63/24
long [3]  39/14 49/9
49/11
longer [2]  40/18 48/20
looking [4]  30/14 31/1
32/23 32/23
lost [1]  40/1
lot [18]  24/4 24/20 25/2
28/6 28/19 31/23 31/23
33/23 34/2 40/6 45/19
49/20 53/4 53/5 53/7
54/1 55/2 56/13
loud [1]  42/14

**M**

MAGISTRATE [1]
1/13
mail [11]  1/20 29/24
29/25 50/15 53/16 55/12
55/18 57/21 60/17 60/17
60/19
mails [4]  30/18 52/4
57/3 57/14

main [1]  35/15
majority [1]  32/7
makes [5]  6/5 34/19
34/20 42/6 52/19
making [3]  21/19 43/13
55/8
manageable [2]  62/8
62/19
manager [1]  48/20
manner [1]  39/1
March [2]  13/11 26/4
marked [2]  24/19 56/18
Markoe [13]  3/8 4/21
29/21 30/5 31/10 31/13
38/6 39/17 43/21 45/25
47/8 50/9 50/16
Markoe's [1]  48/17
markups [1]  57/24
material [3]  45/9 45/9
49/4
materials [2]  28/22
45/19
matter [8]  16/10 19/15
20/11 38/17 45/3 50/14
56/10 65/13
matters [1]  34/3
maybe [4]  24/9 27/2
49/19 49/21
McGovern [14]  3/5 4/19
16/1 16/12 16/17 16/21
19/1 19/2 51/22 53/13
58/23 60/7 61/3 62/17
McGovern's [1]  21/25
me [58]  5/4 5/20 7/22
9/13 10/7 10/18 11/25
12/2 14/9 14/10 14/12
14/13 15/20 16/18 16/22
17/17 19/1 19/12 19/13
24/11 24/15 24/15 24/24
25/19 30/5 30/22 31/10
32/22 34/12 37/13 38/2
40/16 42/14 46/1 47/8
47/11 47/25 50/3 50/9
50/15 50/17 50/17 50/24
50/24 51/5 51/6 51/7
51/11 51/13 51/15 53/10
54/21 55/23 63/3 63/9
63/9 63/11 63/25
mean [27]  15/2 15/10
16/5 19/24 21/25 28/14
33/23 34/10 34/19 34/19
35/11 38/18 41/18 41/19
41/21 41/21 43/2 43/10
44/4 46/16 46/17 46/18
47/23 48/2 48/8 48/9
54/3
meaning [2]  15/15 34/4
meant [1]  30/7
meet [6]  19/4 19/18 20/2
20/13 30/5 51/25
meeting [5]  5/3 5/8 8/5
14/23 20/24 24/20 36/15
meetings [1]  25/3
member [9]  6/14 6/20
6/21 6/22 6/23 7/17 7/18
7/20 8/23

members [2]  11/9 11/9
membership [2]  7/16
11/8
memo [1]  5/1
mentioned [1]  26/16
Merit [1]  65/9
Mestre [6]  3/2 3/5 3/8
3/11 3/14 30/12
met [1]  29/22
metadata [6]  14/20
14/20 14/21 18/20 20/19
23/3
Miami [1]  2/4
mid [1]  15/9
middle [4]  5/9 5/14
10/10
might [4]  5/10 48/10
62/11 62/12
million [1]  33/13
mined [7]  17/20 17/21
18/16 21/14 22/5 35/3
35/4
minimize [1]  39/2
minute [5]  8/4 12/4 14/7
28/8 35/24
minutes [2]  6/3 29/5
misrepresentations [1]
19/13
month [2]  24/9 26/10
months [3]  5/25 14/18
27/16
morning [3]  15/6 15/18
15/18
most [6]  23/20 25/5 30/1
33/2 46/15 47/9
motion [2]  10/17 62/18
move [1]  4/15
moving [2]  59/12 59/13
Mr [3]  22/25 24/10
26/12
Mr. [69]
Mr. Delich [9]  4/13 7/22
36/8 36/12 39/9 41/6
42/1 42/9 47/25
Mr. Freedman [23]  4/9
13/5 14/8 14/9 16/23
21/23 25/22 26/16 26/25
28/11 30/22 32/21 34/16
35/17 41/25 47/25 48/14
50/4 50/15 57/12 58/3
60/8 61/17
Mr. Freedman after [1]
60/9
Mr. Freedman and [3]
16/2 39/9 57/4
Mr. Freedman doesn't
[1]  60/11
Mr. Freedman for [1]
16/22
Mr. Freedman has [1]
26/2
Mr. Freedman that [1]
26/3
Mr. Freedman
withdrew [1]  26/20
Mr. Freedman's [2]

21/19 29/8
Mr. Kass [3]  24/10
24/14 29/11
Mr. Kleiman [3]  7/6
9/18 60/8
Mr. Kleiman's [1]  11/5
Mr. Paschal [4]  7/7
10/11 11/19 12/21
Mr. Rivero [1]  15/25
Mr. Roach [2]  7/13 7/14
Mr. Roche [11]  4/11
10/14 11/20 44/21 57/4
57/12 58/3 60/8 60/9
60/10 61/16
Mr. Zalman [1]  45/18
Ms [1]  30/6
Ms. [28]  15/9 16/1 16/12
16/17 16/21 19/1 19/2
21/25 23/1 29/21 30/5
30/9 30/13 31/10 31/13
38/6 39/17 43/21 45/25
47/8 48/17 50/9 50/16
53/13 58/23 60/7 61/3
62/17
Ms. Markoe [11]  29/21
30/5 31/10 31/13 38/6
39/17 43/21 45/25 47/8
50/9 50/16
Ms. Markoe's [1]  48/17
Ms. McGovern [11]
16/1 16/12 16/17 16/21
19/1 19/2 53/13 58/23
60/7 61/3 62/17
Ms. McGovern's [1]
21/25
Ms. Watts [2]  15/9 23/1
Ms. Watts' [2]  30/9
30/13
MSG [1]  30/18
MSGs [1]  29/25
much [2]  29/9 55/22
multi [1]  9/14
multi-facetted [1]  9/14
multimedia [2]  23/24
26/15
must [2]  42/7 42/8
myself [2]  5/11 51/10

**N**

Nakamoto [8]  33/4 33/6
34/7 34/18 34/25 35/1
35/4 35/6
Namely [1]  37/6
names [2]  13/15 13/15
narrow [4]  28/21 32/2
33/7 34/13
narrowed [1]  18/15
NAS [4]  26/10 26/11
26/14 26/21
nature [2]  9/4 32/8
nChain [1]  37/8
NDA [3]  37/19 37/21
38/17
NDAs [4]  5/24 37/15
37/22 38/1
necessarily [2]  40/5 48/3

# N

need [18] 16/24 22/13 22/19 24/24 35/12 39/1 41/10 49/16 51/8 51/16 55/15 57/7 57/14 61/11 61/19 61/20 63/25 64/1
needed [1] 24/11
needle [1] 35/17
needs [5] 29/7 35/21 43/11 48/21 52/25
negotiated [1] 44/20
never [2] 7/18 59/7
new [2] 18/2 33/12
next [7] 13/4 22/20 23/18 29/12 36/3 43/22 61/21
Nguyen [1] 52/7
nice [2] 14/11 17/3
night [1] 57/23
no [27] 1/2 7/25 14/19 14/20 15/12 17/13 21/11 26/4 26/5 27/7 29/17 35/2 38/23 40/18 42/4 45/11 46/2 46/7 46/7 46/7 46/25 48/20 54/2 54/25 56/3 58/15 62/25
non [2] 52/5 61/10
non-clients [1] 52/5
non-waivers [1] 61/10
nondisclosure [5] 36/17 38/9 38/11 38/13 39/14
none [3] 57/15 58/13 65/6
nonparties [1] 52/4
nonprivileged [1] 52/5
noon [2] 50/23 51/15
notarization [1] 33/5
notarized [1] 31/5
notated [1] 59/17
note [1] 39/10
notes [4] 52/19 52/23 52/24 59/16
noteworthy [1] 56/7
nothing [2] 12/3 26/25
notice [3] 14/10 15/13 49/14
noticed [3] 7/13 7/15 42/11
number [8] 4/2 5/7 36/16 36/24 39/16 53/25 57/3 57/19
NY [2] 2/6 2/9

# O

oath [1] 33/5
object [1] 10/16
objected [4] 12/13 25/21 39/13 55/10
objection [9] 12/18 31/19 38/16 38/22 42/21 53/14 55/3 55/20 61/15
objections [2] 63/13 63/19
obligated [2] 41/13 41/15
obligation [5] 13/20

41/20 48/24 48/25 50/1
obligations [1] 38/13
obliged [1] 45/21
obtain [1] 19/20
obtained [2] 17/23 42/17
obvious [1] 54/4
obviously [5] 20/6 28/16 42/1 44/6 60/17
occasions [1] 40/3
occur [1] 39/2
occurred [1] 23/6
odd [1] 27/4
off [3] 15/17 47/15 49/7
offer [2] 48/16 58/20
office [3] 24/19 25/2 25/4
officer [2] 41/2 41/2
Official [1] 1/18
Oh [1] 16/3
okay [41] 4/25 7/9 7/11 7/21 10/13 12/23 13/3 13/6 15/3 18/18 19/1 22/17 25/19 25/24 29/3 29/18 30/22 31/3 33/10 36/23 37/12 38/24 39/5 39/6 39/7 41/25 42/10 42/24 45/6 47/17 47/24 48/11 50/13 52/1 53/15 54/25 55/1 55/17 56/24 58/11 63/3
old [1] 49/7
once [5] 17/12 18/1 18/1 40/18 46/18
one [26] 7/13 8/17 9/14 11/20 16/6 20/22 21/1 22/24 29/19 30/5 35/24 37/17 37/18 39/16 41/18 42/13 42/20 45/8 46/4 50/18 53/3 55/1 57/9 61/24 62/23 62/25
ones [3] 26/23 30/19 56/12
ongoing [1] 27/20
only [14] 6/1 19/11 19/17 26/16 26/25 29/18 29/24 30/14 34/10 36/5 37/16 37/20 42/4 63/3
open [5] 18/15 24/2 24/12 26/7 26/18
opened [3] 6/18 7/3 11/13
opening [1] 26/17
operation [1] 13/18
opportunity [3] 42/2 49/1 51/12
opposing [1] 50/16
opposite [1] 9/21
order [26] 4/1 15/1 15/2 16/24 17/7 17/12 17/20 18/9 18/12 18/14 23/4 36/7 36/20 36/21 38/10 38/22 38/25 38/25 39/5 39/11 39/11 45/20 50/19 50/25 60/16 62/10
ordered [5] 10/6 13/11 13/12 18/2 45/4

ordering [3] 39/12 51/14 62/14
orders [1] 38/12
original [7] 19/19 19/19 19/20 19/21 19/23 20/20 31/19
others [2] 19/5 30/8
otherwise [10] 22/12 38/15 41/3 41/14 44/3 60/10 60/20 60/25 61/19 62/12
ought [1] 10/22
our [46] 6/8 9/4 19/4 19/19 19/20 20/2 20/4 20/13 21/21 26/15 26/18 27/14 27/19 27/20 31/15 32/5 32/14 36/17 37/9 37/21 37/22 38/3 40/25 41/7 41/21 47/15 52/6 52/13 52/16 52/22 53/17 54/13 55/3 55/7 55/20 56/12 57/22 57/7 57/10 57/18 57/23 58/2 58/18 59/4 59/24
ourselves [2] 25/12 26/8
over [23] 14/6 14/24 24/18 25/8 25/9 25/15 25/16 26/1 27/19 27/22 29/20 29/22 33/24 34/1 34/1 34/1 34/2 41/13 44/12 45/12 45/16 52/3 54/24
overarching [1] 44/12
overinclusive [1] 57/19
overly [1] 58/9
overrule [3] 29/3 35/14 36/2
owe [1] 46/19
owed [1] 18/10
own [2] 51/8 52/6
owner [1] 52/8
ownership [1] 11/5

# P

page [2] 1/16 59/5
pages [2] 33/13 52/3
Paige [1] 52/7
Palm [2] 1/8 1/19
papers [3] 25/3 32/8 48/18
partially [1] 47/19
particular [1] 44/9
particularly [3] 23/15 29/7 53/1
parties [15] 21/7 23/24 40/10 45/12 49/13 49/14 50/23 52/5 52/18 54/3 59/6 59/13 62/2 62/4 62/19
partnership [3] 21/14 34/8 35/6
party [12] 9/19 10/20 39/13 39/21 42/25 46/13 48/4 48/7 61/7 62/11 62/15 63/7
Paschal [6] 3/11 4/20

7/7 10/11 11/9 12/21
password [3] 24/3 26/5 26/5
past [4] 13/16 13/16 27/7 44/23
patient [1] 19/2
Patrick [1] 52/6
pay [1] 10/20
PDF [1] 29/24
PDFs [1] 30/18
people [6] 25/12 28/25 46/18 46/21 54/11 62/13
per [3] 29/5 35/24 62/15
percent [3] 11/24 21/13 33/22
perfect [1] 44/23
perfectly [1] 23/17
perhaps [1] 53/20
period [1] 59/25
person [2] 28/17 43/7
personal [3] 32/9 40/6 43/23
perspective [1] 41/22
picked [1] 24/18
placed [1] 35/5
plaintiff [9] 4/5 4/14 5/23 22/24 27/13 36/6 37/20 44/24 63/11
plaintiffs [18] 1/5 2/2 4/7 4/10 4/12 5/24 6/10 8/6 14/14 22/7 23/20 26/11 28/6 29/19 40/2 40/16 43/4 61/9
plaintiffs' [12] 38/19 39/24 43/5 45/21 51/17 51/23 52/9 53/17 55/8 55/13 55/23 62/13
played [1] 44/7
pleadings [1] 43/18
please [2] 4/4 36/12
point [12] 12/8 12/17 20/4 20/22 21/8 29/7 33/14 34/2 35/15 37/11 39/3 39/6 45/8 45/11 48/9 48/16 52/8 57/18 59/5
pointed [1] 45/18
Ponce [5] 3/3 3/6 3/9 3/12 3/15
portions [1] 56/6
position [14] 9/5 15/14 17/18 17/19 34/25 36/18 37/9 37/21 40/25 41/12 49/15 52/22 54/13 57/13
positive [1] 11/25
possession [4] 40/4 42/19 47/4 58/14
possible [1] 20/7
post [1] 52/11
potential [1] 30/1
potentially [2] 25/1 28/22
pouring [1] 24/18
practical [1] 20/11
precisely [1] 10/8
prefer [1] 42/10

prejudice [1] 22/23
premature [1] 21/8
preparation [2] 56/9 56/17
prepare [2] 9/8 20/13
prepared [2] 22/17
preparing [2] 6/1 27/20
prepping [1] 8/7
presence [1] 9/16
present [3] 5/19 8/5 12/5
presented [1] 42/16
press [2] 52/5 54/5
presumably [1] 12/6
presume [1] 38/11
pretty [3] 11/22 12/7 49/5
prev [1] 30/25
previous [2] 14/6 49/12
previously [5] 30/4 30/11 30/20 34/4 39/13
prior [4] 18/12 31/1 33/7 34/6
private [3] 30/9 30/13 30/13
privilege [112]
privileged [17] 8/11 8/12 8/14 9/11 9/20 41/14 42/18 42/20 43/16 52/24 55/14 55/15 55/19 59/2 59/3 60/7 62/16
privileges [2] 40/8 48/8
pro [1] 61/19
probabilistic [1] 34/20
probably [4] 46/15 47/14 49/18 58/15
probate [7] 6/18 6/24 7/3 7/12 7/12 7/18 11/13
problem [5] 7/25 20/10 26/5 26/5 31/25
procedure [2] 27/9 42/1 45/23
proceeding [2] 10/1 10/25
proceedings [4] 1/11 43/19 64/6 65/12
process [3] 13/21 20/16 58/2
processed [1] 32/5
produce [19] 13/12 13/17 20/14 23/4 25/15 25/16 25/21 27/5 32/14 36/20 36/20 38/12 38/25 39/12 44/25 45/4 50/1 57/23 58/5
produced [42] 13/23 14/17 14/19 15/12 15/13 19/7 20/6 25/13 27/8 27/24 28/22 28/3 30/5 30/11 30/20 31/23 31/25 32/16 33/12 34/5 37/16 37/19 39/14 45/11 46/4 46/5 47/14 47/20 53/9 55/15 56/14 57/16 57/22 58/5 58/8 58/19 59/10 60/1 60/1 60/14 61/1 61/20

**P**

**producible [2]** 38/15 61/19
**producing [7]** 25/10 36/18 38/16 38/22 53/6 58/10 58/16
**product [4]** 6/13 37/1 43/17 46/11
**production [6]** 36/21 41/24 52/16 59/12 61/2 61/15
**promptly [2]** 50/21 63/10
**properly [2]** 45/18 63/6
**property [5]** 18/11 18/11 18/17 22/4 25/1
**proportional [2]** 29/11 35/21
**proportionate [3]** 28/10 29/6 43/11
**proposition [2]** 9/24 9/25
**propped [1]** 5/9
**protect [2]** 17/10 17/14
**prove [1]** 18/4
**provide [2]** 8/24 63/9
**provided [5]** 20/17 53/16 53/16 53/18 53/19
**providing [1]** 23/13
**provision [1]** 20/23
**provisions [1]** 19/24
**publicly [1]** 39/3
**pulling [1]** 29/24
**purported [1]** 52/8
**purportedly [1]** 14/5
**purports [2]** 14/5 17/21
**purpose [2]** 8/19 8/22
**purposes [3]** 35/12 52/13 52/20
**pursuant [2]** 37/21 38/11
**pursue [1]** 17/13
**pursuing [1]** 56/16
**push [1]** 18/13
**pushing [1]** 49/11
**put [2]** 25/12 45/21
**putting [2]** 41/19 63/11

**Q**

**quantify [2]** 47/5 47/8
**ques [1]** 9/7
**question [13]** 10/12 10/12 10/15 10/15 11/11 11/13 11/20 11/21 12/1 12/10 22/1 38/5 61/24
**questions [12]** 5/14 6/9 6/11 6/17 9/5 9/8 10/11 10/24 19/22 20/12 22/15 22/19
**quick [1]** 13/8
**quickly [1]** 34/11
**quite [2]** 5/1 23/21

**R**

**raise [5]** 21/1 51/20 62/24 63/12 63/18

**raised [2]** 24/10 49/11
**raising [1]** 5/24
**Ramona [3]** 15/8 15/15 20/1
**ran [2]** 29/21 31/14
**ranking [1]** 6/14
**rate [1]** 46/5
**re [2]** 46/16 57/20
**re-review [1]** 46/16
**re-reviewed [1]** 57/20
**reach [1]** 43/8
**read [3]** 12/4 51/7 63/9
**readdress [1]** 23/6
**really [5]** 15/14 32/7 34/3 37/16 58/20
**Realtime [1]** 65/10
**reason [3]** 19/11 42/20 44/19
**reasonable [5]** 23/12 23/16 25/18 27/23 28/10
**recall [7]** 8/25 9/1 13/11 31/19 37/18 39/23 40/2
**receive [2]** 6/18 20/12
**received [4]** 13/25 19/16 20/4 25/3
**reconsider [1]** 29/15
**reconvened [1]** 10/19
**record [3]** 10/18 23/9 26/22
**recorded [1]** 14/23
**recording [10]** 14/24 14/25 18/23 20/21 20/24 21/3 22/1 23/4 23/5 65/12
**recordings [1]** 28/5
**records [1]** 13/19
**redact [3]** 56/4 56/5 56/20
**redacted [3]** 47/20 52/23 59/17
**redactions [1]** 56/11
**reduces [1]** 36/14
**reference [1]** 19/9
**references [3]** 14/22 18/22 22/1
**referred [1]** 57/25
**referring [2]** 11/7 32/11
**refers [1]** 20/23
**regard [5]** 37/15 37/22 40/9 52/22 52/25
**regarding [9]** 19/8 19/12 19/22 20/5 20/12 21/5 32/10 37/17 43/19
**regards [5]** 26/21 26/21 28/7 41/1 45/8
**Registered [1]** 65/9
**regroup [1]** 63/3
**REINHART [2]** 1/12 55/24
**reiterate [1]** 33/12
**relate [8]** 13/13 33/2 33/3 33/8 34/7 35/10 35/11 36/9
**related [10]** 8/1 30/8 30/12 32/9 35/5 40/9 43/17 44/13 45/9 54/21

**relates [1]** 24/25
**relating [5]** 11/4 11/9 12/25 13/18 61/16
**relationship [1]** 42/18
**relatively [2]** 56/10 62/8
**release [1]** 13/21
**relevance [4]** 38/21 44/1 44/8 44/12
**relevant [17]** 11/15 24/23 28/22 30/1 34/8 34/14 34/15 34/21 35/10 35/23 38/18 39/8 44/14 45/1 45/3 45/19 59/25
**rely [1]** 17/9
**remain [1]** 9/20
**remaining [1]** 25/17
**remains [1]** 42/20
**remedies [1]** 23/8
**remedy [4]** 14/11 22/18 22/24 23/7
**remember [3]** 27/3 30/23 49/7
**reminded [2]** 24/11 24/15
**remove [2]** 57/11 60/24
**removed [1]** 61/17
**removing [1]** 58/2
**rendered [1]** 21/11
**rep [4]** 8/24 9/10 11/15 11/16
**repeat [3]** 9/19 9/22 22/13
**Reporter [4]** 1/18 1/18 65/9 65/10
**represent [1]** 52/17
**representation [1]** 60/23
**representative [2]** 5/25 11/12
**represented [2]** 49/2 54/10
**request [25]** 18/19 19/17 19/18 20/9 20/10 22/18 23/8 25/20 26/21 27/17 28/5 28/21 29/3 29/11 30/20 35/14 36/2 44/6 44/6 44/8 44/9 44/9 44/24 45/1 45/21
**requested [2]** 23/8 26/11
**requesting [1]** 23/7
**requests [1]** 15/21
**require [4]** 22/21 29/4 61/8 61/9
**required [2]** 23/12 51/14
**requirements [1]** 48/19
**requiring [1]** 46/21
**rerun [1]** 29/23
**res [1]** 17/1
**research [4]** 1/4 51/8 56/16 61/12
**reserving [1]** 22/7
**resolve [2]** 51/16 58/20
**respect [7]** 19/18 20/19 20/21 21/21 51/23 59/18 62/1
**respond [4]** 6/25 22/21 33/21 37/14

**responded [2]** 27/2 43/18
**response [4]** 13/22 23/13 41/7 52/18
**responsibility [1]** 59/4
**retained [1]** 59/20
**retains [1]** 42/19
**returned [1]** 34/12
**returns [1]** 32/10
**revealing [2]** 56/6 56/20
**review [19]** 9/7 9/8 10/17 25/13 25/15 28/16 29/5 30/2 30/12 35/25 43/6 43/9 45/22 46/16 47/21 55/13 59/6 62/9 62/20
**reviewed [9]** 6/1 6/3 14/9 14/10 14/25 18/25 34/11 57/14 57/20
**right [46]** 4/2 4/15 4/17 5/1 5/13 11/2 11/16 12/20 13/4 15/25 20/8 21/23 22/14 23/18 26/17 27/17 28/11 31/10 32/21 33/15 37/13 39/16 39/22 40/22 41/5 43/21 44/7 45/5 45/17 48/11 50/3 50/13 50/13 51/2 51/16 51/19 53/9 54/19 55/23 58/22 60/3 60/4 61/21 62/23 63/17 63/22
**rights [1]** 22/8
**Rivero [9]** 3/2 3/2 3/5 3/8 3/11 3/14 4/18 15/25 30/11
**RMR [2]** 1/18 65/17
**Roach [2]** 7/23 7/24
**Roche [18]** 2/2 2/5 2/5 2/8 4/6 4/10 4/11 5/5 10/14 11/20 44/21 57/4 57/12 58/3 60/8 60/9 60/10 61/16
**room [2]** 11/23 11/24
**rough [2]** 47/11 57/22
**rule [11]** 5/13 5/22 6/16 10/9 10/9 22/17 23/12 41/25 57/6 60/11 62/4
**ruled [3]** 25/10 63/12 63/18
**ruling [3]** 22/21 60/21 63/10
**rulings [3]** 22/23 63/13 63/20

**S**

**sake [1]** 38/9
**same [2]** 29/1 33/25
**sanction [2]** 22/6 22/9
**sanctions [2]** 13/23 22/7
**sat [1]** 15/19
**Satoshi [8]** 33/4 33/6 34/7 34/18 34/25 35/1 35/4 35/6
**save [1]** 25/14
**say [12]** 17/21 28/8 28/16 32/11 33/24 40/18

**responded** 41/21 47/1 49/9 57/22 63/22 63/24
**saying [3]** 53/20 55/10 60/18
**says [1]** 18/24
**scanned [1]** 15/9
**Schedule [1]** 22/1
**Schneur [1]** 3/14
**scramble [1]** 20/14
**se [1]** 62/16
**seal [1]** 14/1
**search [20]** 29/20 29/21 30/4 30/11 31/4 31/16 31/17 31/20 32/1 32/5 32/15 32/16 32/18 32/18 38/19 38/20 44/20 44/22 44/23 45/2
**searches [1]** 31/14
**searching [1]** 30/23
**second [15]** 6/7 6/15 8/15 8/17 11/2 11/6 11/19 16/22 17/16 17/16 23/22 36/23 36/24 39/17 42/15
**Secondly [1]** 53/11
**seeing [1]** 62/5
**seeking [1]** 22/24
**seems [1]** 59/11
**seen [2]** 35/7 35/11
**send [7]** 43/8 50/17 50/23 51/5 51/6 51/13 60/17
**sends [1]** 60/9
**sense [6]** 5/10 33/3 46/13 47/10 47/12 51/9
**sent [7]** 23/23 24/15 24/15 24/16 25/9 26/3 60/8
**separate [3]** 6/8 13/13 21/4
**separately [1]** 57/14
**seriously [1]** 16/11
**seriousness [1]** 16/13
**served [1]** 20/14
**seven [2]** 25/14 59/1
**several [1]** 40/3
**severe [4]** 21/12 21/22 22/6 22/7
**SFranklinUSDC [1]** 1/20
**shares [3]** 6/18 6/23 7/18
**short [3]** 14/9 23/21 50/20
**should [23]** 14/16 14/17 18/7 25/10 29/23 34/9 41/23 49/14 49/18 49/25 50/9 53/9 55/10 58/4 58/8 58/19 59/7 59/10 59/17 59/18 60/1 60/1 60/14
**side [11]** 5/7 9/23 15/4 15/23 23/25 37/13 48/12 50/21 51/17 55/23 56/15
**sift [1]** 27/21
**signature [4]** 31/24

WITNESS NAME

Index: signature...-uh-huh

**S**

**signature...** [3] 31/24 32/3 32/12
**signatures** [1] 32/8
**signed** [4] 15/7 31/21 34/19 34/21
**significant** [1] 21/5
**significantly** [1] 18/15
**simple** [1] 56/10
**simply** [11] 19/15 20/3 21/16 23/3 25/20 27/23 41/9 44/22 55/11 59/15 61/11
**since** [3] 5/10 26/24 51/12
**sir** [1] 55/25
**sit** [1] 35/21
**sitting** [1] 42/12
**situation** [3] 10/23 38/14 46/17
**slightly** [1] 15/19
**slipped** [1] 28/19
**small** [3] 44/16 46/10 47/23
**sole** [2] 8/23 8/23
**someone** [3] 12/5 30/13 55/19
**something** [11] 18/1 20/25 24/6 26/7 34/24 38/12 50/20 53/20 53/23 59/3 60/9
**sometimes** [1] 53/21
**soon** [3] 19/7 20/5 20/6
**sorry** [4] 7/24 13/11 16/21 48/15
**sort** [8] 21/19 46/23 52/2 53/22 54/4 55/2 55/3 55/9
**sounds** [1] 23/10
**South** [1] 2/3
**SOUTHERN** [1] 1/1
**speak** [2] 48/2 48/9
**speaking** [1] 62/4
**special** [1] 24/12
**specific** [4] 16/11 58/6 58/17 62/18
**specifically** [2] 24/19 31/1
**speculating** [1] 49/25
**spent** [2] 24/4 24/17
**spinning** [1] 39/9
**splicing** [1] 29/15
**spoken** [2] 6/2 6/2
**spot** [2] 30/7 32/4
**standing** [2] 7/19 36/7
**started** [2] 24/14 27/1
**starting** [2] 4/4 48/9
**state** [1] 45/2
**stated** [2] 7/16 26/2
**statement** [2] 16/6 32/24
**statements** [9] 29/21 30/15 31/1 33/2 33/3 33/8 34/6 35/8 35/9
**STATES** [2] 1/1 1/13
**stating** [1] 26/22
**Status** [1] 65/3

**statute** [1] 54/16
**Stephen** [4] 1/18 65/9 65/16 65/17
**stick** [1] 10/5
**still** [6] 17/15 23/19 35/25 41/7 42/19 46/19
**stop** [1] 8/16
**story** [1] 60/12
**strategy** [4] 9/2 9/15 9/16 10/3
**Street** [1] 1/19
**strike** [1] 34/12
**stuff** [11] 31/8 31/22 33/16 40/6 40/7 43/20 45/14 45/15 53/4 53/5 53/7
**stumbling** [1] 34/16
**sub** [1] 44/11
**sub-universe** [1] 44/11
**subject** [5] 16/15 19/5 36/7 39/15 41/24
**submit** [2] 10/17 29/20
**submitted** [1] 35/7
**subparts** [1] 63/1
**subpoenaed** [1] 18/1
**subset** [1] 30/8
**substance** [5] 8/12 9/1 9/9 9/11 9/13
**such** [1] 20/15
**suggest** [1] 48/23
**suggested** [1] 20/2
**suggestion** [1] 39/20
**Suite** [6] 2/3 3/3 3/6 3/9 3/12 3/15
**summarize** [1] 63/5
**summarizing** [1] 63/6
**supplement** [1] 42/2
**sure** [17] 5/2 6/12 7/19 11/22 15/21 17/6 17/24 21/2 21/15 27/6 28/1 44/4 47/14 48/21 51/10 61/25 62/22
**surrounding** [1] 25/2
**sustain** [1] 61/15
**swear** [1] 31/6
**swearing** [1] 33/5
**swore** [2] 34/23 34/24
**sworn** [13] 29/21 30/15 31/1 31/21 32/23 33/2 33/3 33/8 34/6 34/17 34/25 35/7 35/9

**T**

**tagged** [1] 28/14
**take** [12] 12/15 12/17 14/6 17/9 22/10 23/11 50/14 50/17 51/12 58/1 58/7 60/18
**taken** [5] 5/10 16/10 18/23 63/4 63/6
**takes** [2] 29/4 35/24
**taking** [4] 16/13 23/15 23/16 54/7
**talk** [3] 5/2 5/4 9/15
**talked** [1] 15/6
**talking** [10] 10/3 29/5

42/24 45/25 46/14 47/10 47/12 47/13 47/23 53/14
**tangential** [1] 35/15
**target** [1] 44/9
**targeted** [2] 32/25 33/1
**tax** [6] 17/1 24/19 25/2 25/4 32/10 32/10
**taxes** [1] 43/19
**team** [6] 15/19 25/12 31/11 57/23 62/12 62/13
**teams** [1] 28/18
**tee** [2] 5/11 54/21
**TELEPHONIC** [2] 1/11 65/3
**tell** [11] 5/3 10/5 11/25 15/11 16/25 23/25 42/13 45/4 45/13 46/3 49/17 58/12
**telling** [2] 9/13 9/18
**term** [2] 14/2 16/7
**terms** [29] 16/4 16/4 16/11 19/11 20/9 29/20 29/21 30/4 30/11 31/4 31/18 31/20 31/21 32/2 32/6 32/15 32/16 32/18 32/19 33/12 38/19 38/20 44/20 44/22 44/23 45/3 57/2 57/18 58/10
**testified** [3] 6/19 7/17 8/3
**testify** [1] 8/21
**testimony** [3] 6/4 8/7 18/9
**text** [2] 14/20 57/24
**Thank** [14] 11/1 11/3 13/1 13/2 13/8 19/2 36/13 55/22 58/22 60/3 62/21 63/16 64/4 64/5
**that's** [42] 4/16 5/19 6/20 8/7 9/12 9/17 9/19 9/20 10/7 10/18 10/20 11/15 12/22 14/23 16/3 16/3 16/25 18/5 20/17 20/25 21/10 21/10 30/20 34/1 34/16 34/16 35/12 35/25 39/16 40/21 41/18 43/11 43/21 44/17 45/5 45/23 47/20 49/22 54/15 54/25 61/12 62/6
**themselves** [1] 60/6
**theoretically** [1] 34/17
**theory** [3] 43/5 44/8 44/13
**there's** [21] 7/4 7/12 12/24 15/1 21/11 22/6 28/17 31/23 32/6 36/20 36/24 37/16 42/5 44/8 53/8 54/2 54/17 54/20 56/3 56/9 58/15
**therefore** [1] 61/5
**they'd** [1] 23/25
**they're** [13] 28/14 35/9 37/2 38/17 38/18 40/21 41/14 44/25 45/4 52/10 55/14 56/9 56/15
**they've** [3] 25/21 28/5 59/15

**thing** [7] 17/16 18/21 36/5 45/8 56/1 57/9 63/4
**things** [13] 9/18 18/13 19/11 24/3 24/13 28/9 28/19 31/24 32/8 40/9 40/16 44/7 51/6
**think** [64] 5/6 6/13 6/20 12/12 12/24 15/1 15/15 15/22 16/7 17/11 18/3 18/4 18/7 20/19 21/4 21/8 21/9 21/17 21/21 22/3 22/13 22/19 23/21 24/14 25/16 28/10 28/10 28/17 29/6 30/3 30/19 31/20 33/4 34/3 35/12 35/15 36/14 37/16 40/15 41/18 42/14 44/15 44/24 45/18 46/2 46/4 46/18 46/23 47/19 47/22 49/12 50/18 51/9 51/11 53/8 53/9 53/18 54/21 56/1 58/1 58/8 59/4 62/23 63/3
**thinks** [1] 28/17
**third** [23] 9/19 18/20 39/13 39/20 39/21 42/25 45/12 46/12 48/4 48/7 49/13 49/14 52/5 52/18 54/3 59/6 59/13 61/7 62/2 62/4 62/11 62/15 63/7
**thirds** [2] 57/23 59/9
**those** [50] 5/11 6/11 8/8 8/13 9/4 9/6 9/8 10/2 11/9 25/13 27/5 27/10 29/21 30/3 31/24 31/24 32/16 33/4 36/21 37/11 37/12 38/1 39/14 40/11 40/12 41/20 45/11 46/21 48/7 48/23 49/14 49/22 50/15 50/17 52/10 55/13 55/20 56/5 56/20 57/6 57/11 57/13 57/24 59/17 59/18 60/7 61/15 61/17 62/6 63/19
**though** [3] 9/14 23/21 30/10
**thought** [1] 20/6
**thousand** [2] 47/11 47/11
**thousands** [1] 46/6
**three** [3] 15/21 18/18 23/8
**through** [20] 12/15 14/6 23/25 24/6 24/7 24/17 26/22 27/6 27/8 27/17 27/19 27/21 27/22 28/19 28/25 29/10 42/17 48/17 59/4 59/21
**thrown** [1] 53/5
**Thursday** [1] 20/1
**thus** [1] 46/4
**tight** [2] 20/15 23/14
**timeframe** [1] 20/16
**times** [2] 17/19 54/11
**timing** [4] 22/4 23/10

24/25 27/24
**tiny** [3] 25/7 25/8 25/8
**today** [10] 18/19 19/4 22/23 25/15 35/22 51/7 51/20 52/10 63/13 63/19
**today's** [1] 52/13
**together** [1] 25/12
**told** [4] 12/2 14/12 24/11 30/5
**tomorrow** [6] 50/23 50/25 51/1 51/15 54/8 54/8
**ton** [1] 33/25
**too** [4] 32/12 32/12 56/9 58/9
**took** [1] 49/15
**top** [4] 37/3 47/15 48/6 49/7
**topic** [2] 11/6 11/14
**topics** [2] 7/13 10/9
**total** [1] 30/3
**tracking** [1] 24/4
**transactional** [1] 13/19
**transcript** [2] 1/11 65/11
**transcripts** [2] 25/3 28/3
**transmitting** [1] 56/8
**truly** [1] 59/18
**trust** [12] 13/13 13/15 13/19 13/19 14/2 14/4 20/23 31/5 31/6 31/8 34/7 34/19 35/5
**trustee** [1] 13/22
**trustees** [2] 13/16 13/16
**trusts** [3] 14/6 33/4 33/6
**truth** [1] 19/15
**try** [7] 17/13 18/9 18/13 29/25 49/1 50/25 61/10
**trying** [12] 6/8 6/21 9/12 37/4 39/21 42/23 44/9 44/12 46/13 47/10 55/9
**Tuesday** [2] 19/25 20/11
**Tulip** [1] 14/2
**turn** [13] 7/22 11/18 19/1 25/19 27/10 32/22 37/13 39/17 40/16 46/24 47/25 55/23 63/11
**turned** [3] 25/8 33/24 34/2
**turning** [1] 41/13
**turns** [2] 40/15 62/7
**twice** [1] 28/14
**two** [17] 5/25 7/1 8/6 14/6 19/25 26/10 29/13 29/14 32/6 36/14 37/12 37/16 46/5 51/23 55/20 57/23 59/9
**two-percent** [1] 46/5
**two-thirds** [2] 57/23 59/9
**types** [1] 35/5

**U**

**uh** [6] 11/22 14/3 16/14 36/23 37/24 38/7
**Uh-huh** [4] 14/3 16/14

**U**

**Uh-huh...** [2] 36/23 37/24
**Um** [1] 46/1
**unable** [1] 16/9
**unaware** [1] 53/21
**unclear** [1] 17/17
**uncomfortable** [1] 62/14
**under** [16] 13/20 14/1 23/12 23/14 38/13 41/25 42/1 42/18 43/5 49/25 50/11 50/14 57/6 60/11 63/4 63/7
**underlying** [10] 42/21 42/24 44/1 44/1 44/8 56/21 60/13 60/13 60/19 61/18
**underscoring** [1] 56/8
**understand** [31] 7/21 10/22 16/13 16/16 16/23 23/14 25/6 25/9 27/13 29/2 30/2 32/7 33/15 34/17 35/13 35/17 37/4 38/2 41/5 43/25 44/5 44/12 45/23 46/7 46/7 47/24 53/1 53/23 56/12 58/14 63/5
**understanding** [1] 19/21
**understood** [2] 24/22 54/19
**unduly** [5] 32/19 34/13 60/23 60/24 61/5
**unidentified** [1] 55/10
**unique** [6] 30/4 30/8 30/19 34/3 56/14 57/16
**UNITED** [2] 1/1 1/13
**universe** [10] 44/10 44/11 44/11 46/10 48/5 48/7 48/10 62/7 62/8 62/19
**unless** [5] 6/23 12/24 41/15 50/1 60/20
**unlikely** [1] 17/14
**unreasonable** [2] 32/20 33/17
**until** [6] 17/9 17/10 25/11 26/24 41/22 63/23
**upheld** [4] 17/8 17/8 17/11 17/15
**uphold** [1] 40/14
**upon** [5] 7/2 17/1 60/22 63/12 63/18
**upset** [1] 16/23
**us** [13] 6/19 20/22 23/23 24/21 25/9 26/23 28/24 29/20 32/13 32/18 41/11 58/7 58/16
**used** [2] 16/7 33/5
**usually** [2] 5/13 10/9
**Uyen** [1] 52/7

**V**

**vacuum** [2] 62/10 62/14
**valid** [2] 36/18 41/22
**various** [2] 37/5 41/20
**vast** [1] 32/7

**Vel** [3] 4/6 5/6 20/22
**vendor** [1] 47/15
**version** [1] 45/10
**versus** [1] 4/3
**very** [17] 13/3 14/11 17/2 19/14 21/6 27/9 27/9 28/21 28/22 33/7 34/11 34/13 38/19 38/19 54/12 55/22 63/2
**vet** [1] 20/3
**video** [12] 18/22 18/24 20/21 20/23 21/3 22/1 23/3 23/5 26/11 26/15 29/5 29/14
**videos** [23] 24/18 24/19 24/20 25/6 25/7 25/21 26/13 26/14 26/22 26/23 27/1 27/4 27/6 27/6 27/8 27/10 27/14 27/22 27/23 27/25 28/2 28/5 28/14
**view** [2] 23/9 23/17
**voluntarily** [1] 15/5

**W**

**waive** [5] 40/20 41/13 41/14 41/15 47/6
**waivers** [2] 61/10 61/10
**waiving** [2] 63/13 63/19
**walking** [1] 18/8
**want** [34] 5/4 5/17 14/11 14/12 15/21 16/5 16/12 18/19 18/20 23/7 26/9 27/4 28/3 28/8 30/14 31/21 31/25 38/1 41/10 44/19 50/15 50/17 50/18 50/21 50/24 51/4 51/7 51/10 51/11 51/13 54/21 61/12 62/17 63/9
**wanted** [11] 10/4 18/21 24/1 24/22 26/1 26/23 39/25 51/20 62/24 63/12 63/18
**wants** [3] 10/16 33/20 58/7
**warranted** [1] 22/25
**wasn't** [3] 30/7 40/5 40/5
**Watt** [1] 30/6
**Watts** [3] 15/9 20/1 23/1
**Watts'** [2] 30/9 30/13
**we'd** [2] 14/20 14/25 17/11 18/23 18/24 30/10 30/17
**we'll** [3] 4/15 22/22 39/10
**we're** [41] 5/2 5/6 5/8 6/8 6/12 6/21 7/19 9/10 16/13 19/15 20/12 20/13 21/6 23/14 27/19 27/19 30/23 31/1 32/22 32/23 35/22 37/4 40/8 41/4 45/12 45/21 46/4 46/14 46/17 47/12 47/13 47/23 53/6 54/7 57/9 57/10 57/10 58/1 58/8 58/10 63/23

**we've** [18] 5/8 5/10 14/1 16/10 20/4 27/24 28/3 28/4 28/6 28/7 31/22 33/12 35/7 35/11 46/5 49/10 56/22 58/12
**week** [6] 22/20 24/14 26/25 27/1 27/2 27/3
**weeks** [1] 24/9
**well** [34] 4/19 4/25 5/7 5/16 8/16 9/2 9/12 10/8 11/18 12/2 14/8 16/18 17/6 19/5 21/6 25/19 26/18 31/15 32/22 33/1 33/22 34/15 35/14 38/5 39/18 42/10 44/4 46/2 47/5 48/23 54/16 62/3 63/22 63/24
**went** [8] 24/17 27/8 31/14 45/9 45/10 45/12 49/3 57/20
**West** [2] 1/8 1/19
**what's** [8] 6/8 14/11 16/9 17/5 35/21 36/23 44/1 44/12
**whatever** [5] 39/1 39/2 40/13 46/20 54/15
**whatsoever** [1] 15/13
**wheels** [1] 39/9
**where** [8] 20/17 34/16 34/16 38/10 43/21 43/25 45/5 46/17
**whether** [14] 6/17 7/3 7/4 7/12 8/9 8/9 11/4 11/12 11/13 23/5 43/9 44/25 58/8 61/7
**while** [5] 17/7 18/14 23/23 44/21 48/17
**Who's** [2] 13/4 23/18
**whoever** [3] 5/3 10/16 31/11
**whole** [3] 4/23 4/23 7/16
**whose** [2] 37/4 41/23
**why** [16] 10/8 12/11 12/12 16/24 19/22 21/16 24/24 28/25 32/7 34/15 35/12 42/10 44/13 44/19 49/22 62/6
**wife** [1] 15/16
**wife's** [1] 32/10
**willing** [1] 30/17
**window** [1] 63/8
**WinZip** [1] 24/11
**withdraw** [1] 12/17
**withdrew** [1] 26/20
**withheld** [12] 36/17 36/25 37/20 47/19 47/22 50/6 50/8 53/7 55/11 59/7 59/13 59/15
**withhold** [1] 25/15
**withholding** [1] 30/10
**within** [2] 31/5 31/6
**without** [6] 22/23 52/15 56/6 56/20 58/16 62/5
**witness** [22] 6/5 6/13 6/19 7/2 7/5 7/17 8/3 8/20 8/21 9/18 9/18 9/22

**9/22** 10/6 11/20 11/23 11/23 12/3 12/13 12/16 12/18 17/25
**witnesses** [1] 52/7
**Wonderful** [1] 36/11
**work** [6] 6/13 10/22 37/1 37/18 43/16 46/11
**worked** [1] 28/7
**working** [3] 23/14 28/18 32/14
**works** [1] 42/14
**world** [1] 46/24
**wouldn't** [5] 7/19 22/8 30/14 35/10 49/19
**Wow** [1] 4/23
**WRIGHT** [32] 1/7 4/3 4/18 4/20 4/21 4/22 13/12 14/5 14/15 17/22 17/23 19/25 22/25 22/24 34/17 34/21 38/12 39/11 39/21 39/25 39/25 41/12 42/16 42/17 48/3 48/5 49/9 49/18 49/21 49/22 56/17 61/7
**Wright's** [4] 30/25 32/9 40/4 50/10
**written** [4] 39/11 39/11 50/19 56/18
**wrong** [1] 50/9
**Wythe** [2] 2/6 2/8

**Y**

**y'all** [1] 10/25
**yeah** [3] 7/1 11/6 54/23
**year** [2] 26/4 29/9
**years** [1] 59/1
**yes** [18] 5/16 5/18 7/8 7/10 7/15 8/18 16/19 16/20 22/5 39/19 44/18 48/14 51/21 55/25 58/24 58/24 61/23 63/24
**you've** [5] 12/2 14/12 25/20 44/10 50/24
**younger** [1] 36/8

**Z**

**Zaharah** [2] 3/8 4/21
**Zalman** [4] 4/22 25/25 44/15 44/18 45/18
**zip** [1] 26/19