# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC<br><br>*Plaintiffs,*<br><br>v.<br><br>CRAIG WRIGHT<br><br>*Defendant.* | CASE NO.: 9:18-cv-80176-BB |

# PLAINTIFFS' MEMORANDUM CHALLENGING CRAIG'S PRIVILEGE DESIGNATIONS

## Table of Contents

I. NO PRIVILEGE EXISTS FOR CRAIG'S DISSOLVED COMPANIES ....................... 4
   A. THE LAW IS CLEAR THAT A COMPANY'S PRIVILEGE DIES WITH IT ......................................... 4
   B. CRAIG INVOKES NON-EXISTENT PRIVILEGES ON BEHALF OF NON-EXISTENT COMPANIES. 5

II. CRAIG CANNOT CLAIM OR WAIVE PRIVILEGE FOR THE ONLY THREE COMPANIES THAT STILL EXIST ........................................................................................ 8
   A. THERE IS A HIGHER BURDEN OF PROOF TO CLAIM A CORPORATE PRIVILEGE ......................... 8
      1. *The privilege has to be "claimed"* ................................................................................ 9
      2. *Only A Company's Control Group Can Claim Its Privilege* .................................... 10

III. DISSOLUTION AND LACK OF CONTROL ASIDE, MANY OTHER ISSUES PERVADE CRAIG'S PRIVILEGE LOG AND DEMONSTRATE DOCUMENTS SHOULD BE PRODUCED ........................................................................................................ 12
   A. COMMUNICATIONS THAT DO NOT INCLUDE CRAIG ............................................................. 13
   B. NO ATTORNEY INVOLVEMENT IDENTIFIED ......................................................................... 13
   C. NON-ATTORNEY EMPLOYEES INCLUDED IN THE COMMUNICATIONS ..... **ERROR! BOOKMARK NOT DEFINED.**
   D. PRESENCE OF THIRD PARTIES ............................................................................................ 14
   E. INSUFFICIENT DETAIL FOR JOINT DEFENSE PRIVILEGE ....................................................... 15
   F. COMMUNICATION NOT FOR PURPOSES OF LEGAL ADVICE ................................................... 15

IV. REQUEST FOR RELIEF ........................................................................................................ 16

To say that discovery in this case has been challenging would be a dramatic understatement. An adversary who submits false declarations, offers contradictory perjurious testimony under oath, and submits false documents that even his own counsel are forced to disavow, severely hinders the ability to seek the truth. Unfortunately, this pattern of obfuscation is now being continued through sweeping assertions of attorney-client, work-product and (recently) joint defense privileges.

Defendant has asserted privilege over 11,000 documents. That number continues to grow, with 2,100 documents added just last week. But the sheer number of privilege assertions is only part of the problem. The vague descriptions of what is being withheld makes any meaningful analysis on a document by document basis impossible. But most troubling is the web of companies Defendant has used to shield what will likely end up being tens of thousands of documents. In fact, as demonstrated below, Defendant embraces these companies as vehicles to hide documents while at the same time disavowing any control over those companies when it suits his interest.

On his privilege log, Craig does not expressly state he is claiming privilege on behalf of any companies (perhaps because he realizes he has no authority make such an assertion). Nevertheless, it is apparent that he has withheld the documents of over a dozen companies. But, when asked questions about these companies or to produce documents from them, Defendant claims to lack basic information about the companies, or the ability to access the companies' documents. Defendant cannot use these entities as both a sword (assertion of privileges) and a shield (claiming to not be able to access company documents).

More fundamentally, almost all of the companies Defendant is using as a tool to assert "privileges," no longer exist. As set forth below, any privilege these companies may have once had, does not survive their dissolution.

I. **No privilege exists for dissolved companies**

A. <u>The law is clear that a company's privilege dies with it</u>

"It is well settled that at common law and in the federal jurisdiction a corporation which has been dissolved is as if it did not exist, and the result of the dissolution cannot be distinguished from the death of [a] natural person in its effect." *Asociacion de Empleados del Area Canalera (ASEDAC) v. Panama Canal Commn.*, 453 F.3d 1309, 1313–14 (11th Cir. 2006) (quoting *Oklahoma Natural Gas Co. v. Oklahoma*, 273 U.S. 257, 259 (1927)).

Attorney client privilege survives the death of a natural person; "[t]he weight of authority, however, holds that a dissolved or defunct corporation retains no privilege." S.*E.C. v. Carrillo Huettel LLP*, 13 CIV. 1735 GBD, 2015 WL 1610282, at *2–3 (S.D.N.Y. Apr. 8, 2015) (collecting cases); *In re Fundamental Long Term Care, Inc.*, 8:11-BK-22258-MGW, 2012 WL 4815321, at *8–9 (Bankr. M.D. Fla. Oct. 9, 2012) ("In fact, several courts have held that a dissolved corporation does not have the right to assert the attorney-client privilege."); *Commodity Futures Trading Commn. v. WeCorp, Inc.*, 2:09-CV-00153-PMP, 2010 WL 11530274, at *2–5 (D. Haw. Mar. 29, 2010) ("Several federal district decisions have held, however, that the attorney-client privilege expires upon the dissolution of a corporation or upon the corporation becoming defunct or going out of business.").

Virtually every court to have considered the issue has reached this conclusion for a few reasons. First, while there may be a trustee or similar person that could assert privilege while the process of dissolution is still ongoing, "once a corporation is truly extinct, it has lost practical ability to assert the privilege." *S.E.C. v. Carrillo Huettel LLP*, 13 CIV. 1735 GBD, 2015 WL 1610282, at *2–3 (S.D.N.Y. Apr. 8, 2015). "Simply, there is no longer a viable corporate client to assert the privilege." *U.S. v. Cox*, 8:14-CR-0140-T-23MAP, 2015 WL 13741738, at *3–5 (M.D.

Fla. Oct. 7, 2015), *report and recommendation adopted sub nom. U.S. v. Biddix*, 8:14-CR-140-T-23MAP, 2015 WL 9473949 (M.D. Fla. Dec. 29, 2015).

Second, where companies have "dissolved with no legal successor to maintain operations, and no remaining management with authority to handle the company's post-dissolution wind-up," it "only reinforces the notion that it has no privilege to protect." *Id.*

> A dissolved corporation does not have the same concerns as a deceased natural person and therefore has less need for the privilege after dissolution is complete. As there are usually no assets left and no directors, the protections of the attorney-client privilege are less meaningful to the typical dissolved corporation. Moreover, because the attorney-client privilege has the effect of withholding relevant information from the factfinder, it should be applied only when necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to his or her attorney.

*City of Rialto v. U.S. Dept. of Def.*, 492 F. Supp. 2d 1193, 1197–201 (C.D. Cal. 2007).

In other words, "interests that are furthered by the extension of the privilege beyond the death of a natural person simply do not apply in the context of a corporate entity.'" *Cox*, 2015 WL 13741738, at *3–5 (quoting *S.E.C. v. Carrillo Huettel LLP*, No. 13-cv-1735 (GBD), 2015 WL 1610282, at *2 (S.D.N.Y. Apr. 8, 2015)); *In re Fundamental Long Term Care, Inc.*, 2012 WL 4815321, at *8–9 ("Second, and perhaps more important, the rationale for extending the attorney-client privilege to corporations does not apply to dissolved corporations.").

"When the corporation is gone, so too is its interest in protecting its communications; the need to promote full and frank exchanges between an attorney and agents of his corporate clients disappears when the corporation employing those clients has departed." *Trading Techs. Intern., Inc. v. GL Consultants, Inc.*, CIV.A. 05 C 5164, 2012 WL 874322, at *4 (N.D. Ill. Mar. 14, 2012).

B. <u>Craig invokes non-existent privileges on behalf of non-existent companies.</u>

Craig's privilege log does not identify which company's privilege is being claimed. Consequently, Plaintiffs compiled a list of companies linked to Craig based on their review of

documents produced in discovery and cross referenced that with a search of public corporate registries to ascertain their current status. Based on that investigation, Plaintiffs have determined that all but two companies and nChain have already ceased to exist; and those two are in the process of being liquidated by an external administrator in Australia:

| Company | Country | Status[1] |
|---|---|---|
| **Coin-Exch Pty Ltd** | Australia | Liquidated (12/20/2019) |
| **DeMorgan Ltd** | Australia | Deregistered (09/01/2016) |
| **Hotwire Preemptive Intelligence Pty. Ltd.** | Australia | Deregistered (10/01/2017) |
| **Integyrz Pty Ltd** | Australia | Liquidated (12/20/2019) |
| **Daso** | Australia | Deregistered (11/26/2017) |
| **Zuhl** | Australia | Liquidated (12/20/2019) |
| **Interconnected Research** | Australia | Liquidated (12/20/2019) |
| **Denariuz Pty Ltd** | Australia | External Administration |
| **CO1N** | Australia | External Administration |
| **Chaos and Nonlinear Forecastability in Economics and Finance** | Australia | Deregistered (11/26/2017) |
| **Cloudcroft Pty Ltd.** | Australia | Liquidated (12/20/2019) |
| **Pholus** | Australia | Liquidated (12/20/2019) |
| **Panopticrypt** | Australia | Liquidated (12/20/2019) |
| **DeMorgan Holdings Pty Ltd** | Australia | Deregistered (12/03/2017) |
| **Misfit Games** | Australia | Deregistered (02/05/2018) |
| **Critical Infrastructure Security Pty Ltd** | Australia | Deregistered (10/07/2018) |
| **Denariuz Limited** | UK | Dissolved (01/24/2017) |

---

[1] The companies identified as "liquidated" were all put into "external administration" in which a court-appointed liquidator was tasked with winding up their affairs. *See* ASIC, *External Administration*, https://asic.gov.au/for-business/small-business/closing-a-small-business/external-administration/. The final responsibility of a liquidator is to "apply for deregistration of the company on completion of the liquidation." *Id.* Deregistration is the Australian equivalent of dissolution, as a company "ceases to exist as a legal entity and can no longer do anything in its own right." *See* ASIC, *Effects of Deregistration*, https://asic.gov.au/for-business/closing-your-company/effects-of-deregistration/.

For the seven "liquidated" companies, the liquidator filed an "end of administration return" and a "cease of administration" notice just last month, on December 20, 2019. As clearly explained by ASIC, this is the last step of deregistration and ASIC's records will update to show the company as "deregistered" three months later, i.e., on March 20, 2020.  https://asic.gov.au/for-finance-professionals/registered-liquidators/your-ongoing-obligations-as-a-registered-liquidator/external-

Based on the participants and the descriptions, it appears that almost all the allegedly privileged documents on Craig's log are not his personal documents but are instead associated with these dissolved entities. As such, they are unequivocally **not privileged**. [2]

For this reason, the Court should order the immediate production of all these documents. Importantly, this means that all materials withheld as privileged legal advice related to the Australian Tax Office investigations are not privileged either. This is because Craig unequivocally testified that the ATO investigation was not of him personally, but of his (now deregistered) companies:

> Q Dr. Wright, isn't it true that you were under investigation by the Australian tax office in 2014.
> A That is not true.
> Q Rephrase that, Dr. Wright. Is it true that the Australian tax office conducted an audit of some of your companies?
> A Yes.

Hrg. Tr. 104:21–105:2 (June 28, 2019). [3]

---

administration-controller-appointments-and-schemes-of-arrangement-most-commonly-lodged-forms/flowchart-3-liquidator-in-a-court-ordered-winding-up/

[2] For example, DEFAUS_01785282 is an August 2015 email between Craig, two DeMorgan employees, and no attorneys. It was nonetheless withheld as an attorney-client communication, and described as "requesting and providing legal advice from Counsel regarding ATO proceedings and audits." Even if this was somehow possible despite the absence of an attorney, the advice would relate to Demorgan, not Craig. Since Demorgan is dissolved, there can no longer be any privilege attached to this communication. Documents like these should be produced immediately.

[3] See April 4, 2019 Dep. Tr., ECF [312-1], at 335:11-19 (Craig admitting his counsel collected ATO related "corporate documents and e-mails . . ."); 338:19-339:3 (Craig stating he could not get documents related to the ATO investigation from Australian counsel "because I resigned as a director of all those companies before the end of those companies.").

This also means the Court should order Craig to produce any documents withheld based on the involvement of attorneys from Baker & McKenzie, Balaz Lazanas & Welch, FB Rice, or Clayton Utz, since those law firms were retained by DeMorgan Ltd,[4] and therefore ceased to be privileged once DeMorgan was voluntarily deregistered by Ramona Watts, effective September 1, 2016.

Since Craig cannot assert the attorney-client privilege on behalf of" these defunct companies, "it is unnecessary for the court to conduct *in camera* review of the withheld documents." *U.S. Commodity Futures Trading Commn. v. WeCorp, Inc.*, 2:09-CV-00153-PMP, 2010 WL 11530274, at *2–5 (D. Haw. Mar. 29, 2010); *City of Rialto v. U.S. Dept. of Def.*, 492 F. Supp. 2d 1193, 1197–201 (C.D. Cal. 2007) ("Thus, the insolvent companies were not permitted to assert the privilege and the documents were ordered produced."). Craig should be ordered to produce, within 7-days, every document that traces its privilege to a non-existent company.

## II. Craig cannot claim privilege for the only three companies that still exist

As explained below, Craig cannot claim the privilege on behalf of the remaining three companies; likewise, if the Court finds the privilege survived corporate dissolution (it didn't), Craig cannot claim that privilege either.

### A. There is a higher burden of proof to claim a corporate privilege

"Attorney-client privilege is governed by state law in diversity actions." *1550 Brickell Associates v. Q.B.E. Ins. Co.*, 253 F.R.D. 697, 699 (S.D. Fla. 2008). In Florida, "claims of the privilege in the corporate context are subjected to a heightened level of scrutiny." *Nemours Found.*

---

[4] DEF_01626841 (Jan. 29, 2016 Baker & McKenzie invoice to DeMorgan Ltd.); DEF_01102927 (July 8, 2015, FB Rice/DeMorgan Engagement Letter); DEFAUS_01785917 (August 18, 2015 Clayton Utz/DeMorgan Engagement Letter); DEF_01586145 (Dec. 18, 2015 DeMorgan Meeting Minutes).

*v. Martinez Arroyo*, 5D19-817, 2019 WL 4122102, at *2 (Fla. 5th DCA 2019). Since "corporate claims of attorney-client privilege are treated with more suspicion, the Florida Supreme Court" has "held that to assert attorney-client privilege a corporation must demonstrate" five things:

> (1) the communication would not have been made but for the contemplation of legal services; (2) the employee making the communication did so at the direction of his or her corporate superior; (3) the superior made the request of the employee as part of the corporation's efforts to secure legal advice or services; (4) the content of the communication relates to the legal services being rendered, and the subject matter of the communication is within the scope of the employee's duties; (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*1550 Brickell Associates v. Q.B.E. Ins. Co.*, 253 F.R.D. 697, 699 (S.D. Fla. 2008) (citing *Southern Bell Tel. & Tel. Co. v. Deason*, 632 So.2d 1377, 1383 (Fla. 1994)). Based on a review of the privilege log, it doesn't appear that Craig can satisfy any of these elements for most of the documents withheld.

   1. The privilege has to be "claimed"

The attorney client privilege must be "claimed by the client." Fla. Stat. § 90.502; *In re Grand Jury Proceedings*, 517 F.2d 666, 670 (5th Cir. 1975) ("The basic elements which are necessary in order to establish a claim of the client's privilege are . . . the privilege has been (a) **claimed** and (b) not waived by the client.") (emphasis added); *see Truly Nolen Exterminating, Inc. v. Thomasson*, 554 So. 2d 5, 6 (Fla. 3rd DCA 1989). Stated simply, to assert privilege, corporate persons with authority over privilege must assert it. *Id.*; *Rogan v. Oliver*, 110 So. 3d 980, 984 (Fla. 2nd DCA 2013) (reversible error to allow single manager instead of board of directors to assert privilege); *Tail of the Pup, Inc. v. Webb*, 528 So. 2d 506, 507 (Fla. 2nd DCA 1988) (only controlling faction and not individual manager can assert privilege).

In fact, Courts in this District have found the argument that privilege applies unless proven waived, "lacks merit." *Sec. & Exch. Comm'n v. Levine*, No. 09-80135-MC, 2009 WL 10712514,

9

at *9 (S.D. Fla. May 5, 2009), *report and recommendation adopted*, No. 09-80135-MC, 2009 WL 10712513 (S.D. Fla. July 21, 2009).

    2. <u>Only a company's control group can claim its privilege</u>

"[T]he power [over] the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985). A "former manager cannot assert an attorney-client privilege on behalf of a corporation as a shield to protect his self-interest." *Cox*, 2015 WL 13741738, at *5.[5]

Said differently, in cases with similar facts (*i.e.,* corporations under the control of a receiver) courts (including this Court) have held that former directors, owners, and their counsel, do not have "standing" to assert privilege. *Levine, 2009 WL 10712514, at *8* (aggregating cases and holding that "[d]ecisions from other courts support this Court's conclusion that [entities' former counsel] lacks standing to raise a claim of privilege on behalf of the Entities while they are in receivership.").[6] Well respected treatises are in accord. *Standing*, 2 ATTORNEY-CLIENT

---

[5] Craig has continually protested that he cannot "waive" a former company's privilege. This is a red herring. The issue of waiver is only relevant once privilege has been properly asserted in the first place. For the reasons discussed, Craig is not authorized to assert privilege on behalf of any the corporate entities identified in his privilege log. Accordingly, his authority to "waive" privilege is not at issue..

[6] *Odmark v. Westside Bancorporation, Inc.*, 636 F. Supp. 552, 554-557 (W.D. Wash. 1986) (holding that receiver of failed savings and loan association has right to assert claim of privilege on behalf of the entity; rejecting claim of privilege lodged by entity's former officers and directors); *Commodity Futures Trading Comm'n v. Standard Forex, Inc.*, 882 F. Supp. 40, 42-44 (E.D.N.Y. 1995) (holding that the right to assert claims of privilege rested with the receiver, not former directors or shareholders of entity); *Securities and Exchange Comm'n v. Elfindepan, S.A.*, 169 F. Supp 2d 420, 430-431 (M.D.N.C. 2001) (rejecting claim of privilege lodged by attorney who was current counsel to entity in receivership holding the receiver held the privilege for the entities); *United States v. Shapiro*, No. 06 Cr 357 (KMW)(FM), 2007 WL 2914218, *4-*6 (S.D.N.Y. Oct. 1, 2007) (rejecting claim of privilege lodged by former figurehead of corporation in receivership; finding that the receiver had the authority to waive any privileges on behalf of the entity).

PRIVILEGE IN THE U.S. § 11:1 ("the privilege cannot be asserted by . . . former directors or officers of a corporation regarding corporate communications.").

Thus, to the extent this Court holds the privilege did not die with corporate dissolution, and regardless for the three companies that still exist, Craig's privilege claim fails because he is not in the control group for these companies and therefore lacks standing to claim it. In fact, when it suits his interests in this litigation, Craig has denied having any knowledge about who controls the companies. April 4, 2019 Dep. Tr., ECF [312-1], at 92:7-14 ("My answer is I have set up something so that I do not need to know who owns them. I do not know who owns nChain now."); *id.* at 288:12–15 (April 4, 2019) ("I have no idea what the directorships of each of my companies were multiple years ago. I do not know what the directorship of nChain is today.").

Moreover, when asked to identify the intellectual property at the heart of this lawsuit, intellectual property which Craig purportedly transferred to nChain, Craig claimed he had no access to or ability to produce that company's documents. *See* Def. Response to Sixth RFP (Dec. 2, 2019) ("And to the extent that any such file histories exist, they would be in the possession of nChain. Dr. Wright is not an officer, director, or shareholder of nChain. Dr. Wright is an employee of nChain. And it is well established that employees are not deemed to have possession, custody, or control of documents that belong to their employer."). Yet, repeatedly Craig has claimed attorney-client privilege over nChain's (and other companies' documents). *E.g.*, DEF_01105247; DEFAUS_01518203; DEFAUS_01518205; DEFAUS_01518207; DEFAUS_01583702; DEFAUS_01583703; DEFAUS_01583705; DEFAUS_01583706; DEF_01105250; DEF_01111481).

In other words, Craig claims to have purposely orchestrated it so that he's not a member of these companies' control groups. As to the Australian entities, he testified to having "resigned as a director of all those companies" at his first deposition. ECF No. [312-1], at 338:19-339:3.

Furthermore for nChain Limited, Craig holds the title of Chief Scientist,[7] but has specifically stated that he does "not know what the directorship of nChain is today." Id. at 288:12-15..[8]

"Not surprisingly, then, the federal courts have rejected the notion that a former director or officer, even if previously vested with the power to exercise the privilege while a corporate official . . . may subsequently claim any authority to exercise or waive the privilege at all." *Fitzpatrick v. Am. Intern. Group, Inc.*, 272 F.R.D. 100, 108 (S.D.N.Y. 2010).

He therefore cannot claim privilege for any documents based on a privilege that belongs to Co1n, Denariuz Pty Ltd, nChain or any of the Australian companies formerly associated with him. It is Craig's burden to establish the propriety of his privilege assertions. Not only has he not done so, the only evidence in the record demonstrates that these assertions are illusory. Accordingly, Craig must produce responsive documents unless and until there is a valid claim of privilege to withhold them.

## III. Dissolution and lack of control aside, many other issues pervade Craig's privilege log and demonstrate documents should be produced

Putting aside the serious concerns raised above, Plaintiff have identified numerous other issues which demonstrate Craig has improperly withheld documents as privileged.

Craig's privilege log contains over 11,000 entries. In light of the large number of withheld documents, Plaintiffs have attempted to identify some exemplar problematic entries for the Court's review and provide an illustrative list of the more global problems. Besides claiming third-party privileges that don't exist, the most problematic entries have one or more of the following red

---

[7] nChain limited was formerly nCrypt Limited and appears to owned by nChain Holdings (formerly named nCrypt Holdings).

[8] See also, April 4, 2019 Dep. Tr., ECF No. [312-1], at 92:7-14 ("My answer is I have set up something so that I do not need to know who owns them. I do not know who owns nChain now."); *Id.* at 288:12–15 ("I have no idea what the directorships of each of my companies were multiple years ago. I do not know what the directorship of nChain is today.").

flags: (1) Craig is not included on the communication; (2) No attorneys are identified; or (3) the presence of third parties appear to destroy privilege.

Plaintiffs have submitted an excel sheet with a list of challenged entries for *in camera* review. There are two tabs. The first tab is a shorter list of 176 entries that, in addition to asserting an apparent non-existent third-party privilege, display at least two red flags. The second tab is a more inclusive list of 1600 entries with at least one red flag.[9] Plaintiffs describe these issues (and others) in more detail below in order to provide context that may be helpful for evaluating the challenged claims.

A. <u>Communications that do not include Craig</u>

More than a thousand documents where Craig is not identified as one of the participants in the communication were withheld (or partially withheld) on the basis of attorney-client privilege. Plaintiffs' *in camera* submission identifies over 800 emails (not counting attachments) where Craig was not a participant, but where he fully withheld the document on the basis of an attorney client privilege.[10]

It is inconceivable that Craig has standing to claim attorney-client privilege for communications he neither sent nor received, that took place at companies he does not control, and that no longer exist.

B. <u>No attorney involvement identified</u>

Plaintiffs' *in camera* submission identifies 100 documents withheld on the basis of attorney-client privilege, and hundreds that were also withheld as work product, where either (1)

---

[9] Plaintiffs are also providing Defendant's complete privilege log, which has been produced on a rolling basis as multiple PDFs. For the Court's convenience, Plaintiffs have also exported those PDFs to an excel file included in the submission.

[10] This number only grows after taking into account partially withheld documents, non-email documents, or documents withheld for both attorney client and work product privilege.

13

no attorney was identified at all,[11] or (2) a law firm was identified in the log but no attorney participated in the communication. For example, the privilege log identifies Baker & McKenzie as "additional attorney information" for DEFAUS_01789285, but the document is just an email Stefan Matthews (a non-lawyer) sent to Dr. Wright and Ms. Watts at their DeMorgan email addresses.

C. Presence of third parties

Plaintiffs' *in camera* submission includes more than 50 examples of documents withheld where the privilege log identifies a participant that destroys any potentially applicable privilege.

For example, Craig withheld many communications despite the fact that they are between nCrypt/nChain and DeMorgan employees. *E.g.*, DEF_01105345; DEF_01111481; DEF_01221284; DEF_01221338. These communications should be presumptively non-privileged as exchanges between different companies. This is only reinforced by the fact that through at least early 2016, Craig (who is on these communications) was not employed by nChain but instead worked through a services agreement between DeMorgan Ltd. and a company called DR Technologies Ltd. (DEF_01586038). And while a March 2016 Novation and Amendment Deed substituted nCrypt Holdings for DR Technologies Ltd., (DEF_01586038), Craig appears to have continued working through DeMorgan as a service provider for nCrypt Holdings — not as an nCrypt employee. (*Id.*). Craig's participation then, would have made these conversations a three-way exchange that precludes attachment of any privilege (to the extent it even existed anymore, which it doesn't). Simply because one of those companies involved outside counsel extensively in the communications does not make them privileged, particularly because when a business

---

[11] For example, DEF_01633859 is an email between Craig and John Chesher and the explanation in the log makes no mention of legal advice or the creation of a document in anticipation of suit.

"simultaneously sends communications to both lawyers and non-lawyers, it usually cannot claim that the primary purpose of the communication was for legal advice or assistance because the communication served both business and legal purposes." *Preferred Care Partners Holding Corp. v. Humana, Inc.*, 258 F.R.D. 684, 689–90 (S.D. Fla. 2009) (quoting *In re Vioxx Products Liability Litigation*, 501 F.Supp.2d 789, 805 (E.D. La. 2007)).

D. Insufficient detail for joint defense privilege

Some of the recent privilege logs produced by Defendant have begun to cite a "joint defense privilege" as a basis for withholding documents with no further explanation or detail, such as who comprises the joint defense group and what the group is defending against. These entries lack sufficient detail to support a privilege claim. *See In re: Androgel Antitrust Litig. (No. II)*, 1:09-CV-955-TWT, 2015 WL 9581828, at *2 (N.D. Ga. Dec. 30, 2015) ("The party claiming the privilege must at least demonstrate that (1) the material is privileged, (2) 'the parties had an identical legal and not solely commercial interest, and (3) the communication was designed to further the shared legal interest.").

E. Communication not for purposes of legal advice

There are many entries where communications that do not appear to be for purposes of legal advice were withheld for attorney-client privilege. For example, some emails were partially withheld as "prepared at the direction of Counsel regarding Craig's CV." *See* DEFAUS_01571903; DEFAUS_01571921; DEFAUS_01571938; DEFAUS_01571955; DEFAUS_01571961; DEFAUS_01571967. Whether counsel directed it or not, it seems clear that such communication is not the provision of legal advice.

Another example is DEFAUS_01585963, which is a "Spreadsheet regarding R&D incentive analysis and patent progress" that was withheld for attorney client privilege. "Simply

funneling a non-privileged communication through an attorney does not "automatically encase the document in the privilege." *Cox*, 2015 WL 13741738, at *3–5 (quoting *Halifax Hosp. Med. Ctr.*, 2012 WL 2012 WL 5415108, at *3). It "must request legal assistance and the information conveyed must reasonably relate to that assistance." *Id.* (quoting *Tyne v. Time Warner Entm't Co.*, 212 F.R.D. 596, 600 (M.D. Fla. 2002)).

These, and other entries, are highly suspect since Craig explicitly manipulates privilege to shield information from disclosure. *See* DEFAUS_00651315 (communication included with *in camera* submission). More recently, and in a patent attempt to avoid discovery, Craig has claimed that the bonded courier is an attorney and his communications are privileged. Def. Jan. 28, 2020 Responses to Interrogatories (included with *in camera* submission due to responses being designated confidential by Defendant). Plaintiffs will challenge this shortly, but in the interim it continues to demonstrate a pattern of Craig's abuse of privilege claims.

## IV. Request For Relief

"When a party provides an inadequate or untimely privilege log, the Court may choose between four remedies: (1) give the party another chance to submit a more detailed log; (2) deem the inadequate log a waiver of the privilege; (3) inspect *in camera* all of the withheld documents; and (4) inspect *in camera* a sample of the withheld documents." *Nationwide Mut. Fire Ins. Co. v. Kelt, Inc.*, 6:14-CV-749-ORL-41, 2015 WL 1470971, at *9 (M.D. Fla. Mar. 31, 2015)

While Plaintiffs have already submitted a sampling of challenged entries for *in camera* review, the sheer number of disputed documents could be greatly reduced by compelling Craig to (1) produce any document where the privilege belonged to a now dissolved company, (2) produce any document where the privilege belongs to a third party; and (3) revise his remaining privilege log to identify: (i) whose privilege is asserted, (ii) the attorney creating privilege, (iii) how privilege applies to any communications that did not include Craig.

Dated:  February 2, 2020

Respectfully submitted,

By: */s/ Velvel Devin Freedman*
Velvel (Devin) Freedman, Esq.
ROCHE CYRULNIK FREEDMAN LLP
200 S. Biscayne Blvd.
Suite 5500 Miami, Florida 33131
vel@rcfllp.com

Kyle W. Roche, Esq.
Joseph M. Delich
ROCHE CYRULNIK FREEDMAN LLP
99 Park Avenue, 19th Floor
New York, New York 10016
kyle@rcfllp.com
jdelich@rcfllp.com

Andrew S. Brenner, Esq.
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd Street, Suite 2800
Miami, Florida 33131
abrenner@bsfllp.com

*Counsel to Plaintiffs Ira Kleiman as Personal Representative of the Estate of David Kleiman and W&K Info Defense Research, LLC.*