**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC

    plaintiffs,

v.                                                                    **Case No. 9:18-cv-80176 (BB/BR)**

CRAIG WRIGHT,

    defendant.
_____/

**DR. CRAIG WRIGHT'S OPPOSITION
TO PLAINTIFFS' CHALLENGE TO HIS PRIVILEGE DESIGNATIONS**

**INTRODUCTION**

In their motion challenging Dr. Wright's privilege designations [D.E. 389] (the "Motion"), plaintiffs ask this Court to strip multiple foreign corporate entities of their attorney-client privilege. Plaintiffs make this remarkable demand on the grounds that a dissolved corporation has no such privilege. This request is contrary to both Florida law and Australian law, both of which hold that a corporation's privilege is not extinguished upon a corporation's dissolution. The privilege firmly holds its ground and transfers to the successors or similar representatives. Plaintiffs' reliance on the federal privilege is misconceived. This is a diversity action and the attorney-client privilege is governed by state law.

Plaintiffs erroneously proclaim that the attorney-client communications are not privileged unless the privilege is "claimed." Not surprisingly, they offer no support for that argument. While plaintiffs cite to five cases, none stand for such a proposition. Plaintiffs' motion conflates the existence of a privilege with who has the right to assert it. The documents are undisputedly privileged, and Dr. Wright is not in the position to waive the privilege.

Plaintiffs also argue that Dr. Wright doesn't have standing to claim privilege on behalf of the corporations because he no longer is in the corporations' "control group." Motion at 10-12. Plaintiffs' contention is without merit. Clearly, Dr. Wright was within the corporations' control group when they were doing business, and in any event, under Florida law, one does not need to be within the control group to assert privilege on behalf of a dissolved corporation. *See* Fla. Stat. 90.502(3)(c) (the privilege can be asserted by a "successor, assignee, trustee in dissolution, or any similar representative of an organization, corporation…"). Significantly, under Australian law, Dr. Wright still maintains a connection with the dissolved corporations by virtue of his obligation to preserve the records of those corporations. As such, as the person charged with preserving the

corporations' records, he also retains the authority to claim privilege of those records on behalf of the corporations.

Per plaintiffs, the attorney-client privilege of the foreign entities (if it can even be asserted) would require Dr. Wright to contact all the parties that would have the right to assert privilege over the documents. This means that Dr. Wright would have to reach out to the representatives of 17 foreign corporations and at least 65 individual attorneys, many of whom are located in Australia or the U.K. Coordinating such a mass scale document review is simply not proportionate to the needs of the case. This is especially true considering that plaintiffs have made absolutely no showing why they need the privileged documents beyond the 198, 221 nonprivileged documents that Dr. Wright has already produced,[1] and considering that many of the privileged documents are not relevant to this lawsuit.

Finally, ordering Dr. Wright to produce the privileged documents would require Dr. Wright to violate Australian law. Attached as Exhibit 1 to this opposition is a declaration by Gordon Grieve (the "Grieve Declaration"), an Australian attorney with over 35 years of legal experience. As Mr. Grieve states in his declaration, Australian law deems attorney-client communications privileged from the moment of the communication, there is no need to "assert" or "claim" the privilege, and the privilege survives a corporation's dissolution. For this reason, plaintiffs' request puts Dr. Wright in the untenable position of having to violate Australian law. This Court should heed the doctrine of judicial comity and not require Dr. Wright to produce the privileged documents.

---

[1] As to plaintiffs' claims regarding the number of documents withheld on privilege grounds, 3,064 documents were partially redacted for privilege and 8,260 documents have been withheld in their entirety.

3

**DISCUSSION**

**A. The Documents that Plaintiffs Seek are Privileged under Florida and Australian Law**

Plaintiffs devote four and a half pages of their Motion to expounding on federal privilege as it pertains to dissolved corporations. Motion at 4-8. That effort is completely misguided. Federal privilege is not controlling[2] (or even relevant) in this case.

Starting with the basics, the jurisdiction of this Court is based on diversity, and in a "civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501; *S.E.C. v. Carrillo Huettel LLP*, 2015 WL 1610282, at *3 (S.D.N.Y. 2015). As such, it is Florida law that determines whether a corporation's privilege survives its dissolution. *Carrillo,* 2015 WL 1610282 at *3. Even plaintiffs agree with this conclusion, citing to *1550 Brickell Associates v. Q.B.E. Ins. Co.,* 253 F.R.D. 697, 699 (S.D. Fla. 2008) for the proposition that the "[a]ttorney client privilege is governed by state law in diversity actions." Motion at 8.

    **1. Under Florida Law, a Corporation's Privileges are Not Extinguished Upon its Dissolution**

Under Florida law, a corporation's privilege survives its dissolution. One need not look any further than Florida's statute on privilege, 90.502(3)(c), which states that the privilege may be claimed by:

> A successor, assignee, trustee in dissolution, or any similar representative of an organization, corporation, or association or other entity, either public or private, ***whether or not in existence***.

---

[2] Even if the federal privilege applies (it doesn't), it still would not require Dr. Wright to produce the documents. The rationale for holding that the privilege is extinguished upon the dissolution of a corporation is because "there is no current management personnel who can now assert the attorney-client privilege on behalf of the corporation." *S.E.C. v. Carrillo Huettel LLP*, 2015 WL 1610282, at *3 (S.D.N.Y. 2015) (citing *Gilliland v. Geramita,* 2006 WL 2642525, at *3 (W.D.Pa. 2006)). But under both Florida and Australian law there always remains a party who can assert the privilege on behalf of a dissolved corporation.

(emphasis added).

It is clear from the statute's language of "whether or not in existence" that the privilege survives the dissolution of a corporation. If the privilege did not survive, then there would be no need for the statute to address who may claim privilege on behalf of a corporation that no longer exists. Other courts have reached the same conclusion when analyzing similar state statutes. *See Wallace v. Huntington Nat. Bank,* 2010 WL 3603494, at *7 (S.D. Ohio, 2010); *Official Comm. of Admin. Claimants v. Bricker*, 2011 WL 1770113, at *2–3 (N.D. 2011); *Travelers of New Jersey v. Weisman*, 2011 WL 519920, at *7 (N.J. Super. Ct. App. Div. 2011); *S.E.C. v. Carrillo Huettel LLP*, 2015 WL 1610282, at *3 (S.D.N.Y. 2015).

In addition to the clear language of the statute, other provisions of Florida law reinforce the fact that a corporation's privilege is not extinguished upon dissolution. It is "undisputable[], [that] Florida law permits an aggrieved party to sue a dissolved corporation. *Grguric v. Little Mermaid S., Inc.*, 2008 WL 1766889, at *2 (S.D. Fla. 2008) (citing *Samples v. Conoco, Inc.,* 165 F. Supp. 2d 1303, 1319 (N.D. Fla. 2001)). If a dissolved corporation exists to be sued, it also exists to maintain its privilege. *See PCS Nitrogen, Inc. v. Ross Dev. Corp.*, 2011 WL 3665335, at *3–4 (D.S.C. 2011) ("Since [Florida] law permits a dissolved corporation to be sued, the court finds that it follows that a dissolved corporation could assert the attorney-client privilege where former directors or others properly exercise authority to do so."). There are good reasons for holding so. "Failing to recognize an attorney-client privilege [for a dissolved corporation] would be a significant exception to the rule, and could chill corporate-attorney communications." *Id.* at 4. "Encouraging full and honest communications between corporations and attorneys should remain paramount because such communications promote legal compliance." *Id.* The court should not sanction plaintiffs' contention that the attorney-client privilege dissolved with the corporation.

### 2. Under Australian Law, a Corporation's Privileges are Not Extinguished Upon its Dissolution

Like Florida law, the law of Australia also holds that a corporation's privilege is not extinguished upon dissolution. As set forth in the declaration of Australian counsel Gordon Grieve:

> A corporation's privilege is not extinguished by its dissolution, and upon dissolution, the right to waive a corporation's privilege passes on to the Australian Securities and Investment Commission ("ASIC").

Grieve Declaration ¶¶ 13-15 (attaching three Australian opinions clearly showing that a corporation's privilege is not extinguished upon its dissolution).

### B. Plaintiffs' Argument that the Privilege does not exist unless it is "Claimed" is Without Legal Support and Dr. Wright is not in the Position to Waive the Attorney-Client Privilege

Plaintiffs argue that the attorney-client privilege does not exist unless it is properly "claimed." Motion at 9. But plaintiffs have no legal support for that position.

Plaintiffs cite to five cases, but none of them stand for plaintiffs' proposition. Plaintiffs' Motion conflates the existence of a privilege with who has the right to assert it. In those cases, the issue in front of the court was which of two parties had the authority to assert or waive the privilege. None of the cases addresses whether the communications were in fact privileged absent an assertion of privilege, nor do they address whether Dr. Wright can waive the privilege by producing the attorney-client communications. The law is clear that he cannot. *In re Richard Roe, Inc.*, 168 F.3d 69, 72 (2d Cir. 1999); *U.S. ex. rel. Fry v. The Health All. of Greater Cincinnati*, 2009 WL 5033940, at *4 (S.D. Ohio 2009); *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996).

### C. Under Florida Law, Dr. Wright Does Have Authority to "Claim" Privilege on Behalf of the Corporations

Plaintiffs argue that Dr. Wright doesn't have standing to claim privilege on behalf of the corporations because he no longer is in the corporations' "control group." Motion at 10-12. Plaintiffs' contention is without merit. Clearly, Dr. Wright held a position in many of the corporations that placed him within the control group when they were doing business.[3]

In any event, under Florida law, one does not need to be within the control group to assert privilege on behalf of a dissolved corporation. Florida law provides that the privilege may be claimed by:

> A successor, assignee, trustee in dissolution, or any **similar representative** of an organization, corporation, or association or other entity, either public or private, whether or not in existence.

Fla. Stat. 90.502(3)(c) (emphasis added). Significantly, under Australian law, Dr. Wright still maintains a connection with the dissolved corporations of which he was a board member by virtue of his obligation to "keep[] the company's books for 3 years after deregistration." Corporations

---

[3] On a related note, Plaintiffs' argument is internally inconsistent. On the one hand, plaintiffs insist that the Court should maintain the corporate form to prevent Dr. Wright from asserting privilege over the corporations' documents because "he is not in the control group for these companies." Motion at 11. Yet, on the other hand, plaintiffs argue that Dr. Wright should immediately produce the documents of those same corporations, which would require the Court to ignore the corporate form. If one would like to obtain corporate documents, they must subpoena the actual corporation, not the employees, directors, or officers of the corporation, as plaintiffs have done here. *In re Grand Jury Subpoena*, 646 F.2d 963, 969 (5th Cir. 1981) (a comptroller's "mere access [to company records] is not possession, custody, or control" thus the "subpoena, if upheld, would be illegal because it would direct [the comptroller] to produce documents not in her possession, custody, or control."); *United States v. S. Capital Constr., Inc.*, 2018 WL 7017412, at *3 (M.D. Fla. 2018); *Learning Connections, Inc. v. Kaufman, Englett & Lynd, PLLC*, 280 F.R.D. 639, 640 (M.D. Fla. 2012); *Developmental Techs., LLC v. Valmont Indus., Inc.*, 2015 WL 12844286, at *3 (M.D. Fla. 2015); *Siegmund v. Xuelian*, 2016 WL 1359595, at *2–3 (S.D. Fla. 2016), *aff'd sub nom. Siegmund v. Xuelian Bian,* 746 F. App'x 889 (11th Cir. 2018), *and aff'd sub nom. Siegmund v. Xuelian Bian*, 746 F. App'x 889 (11th Cir. 2018).

Act (Section. 601AD/2001) (Austl.).[4] As such, as the person charged with preserving the corporations' records, Dr. Wright is a "similar representative" under Florida law, and he retains the authority to claim privilege of those records on behalf of the corporations.

### D. It Simply is Not Proportionate to the Needs of the Case to Have Dr. Wright Contact all the Other Parties that Would Have the Right to Claim Privilege Over the Corporate Documents

As demonstrated above, there is no need to "claim" privilege over the attorney-client communications. Yet, were the Court to entertain plaintiffs' arguments (and also find that Dr. Wright is unable to assert the privilege), then Dr. Wright would have to contact all the parties that would have standing to "claim" privilege over the attorney-client communications. Such an exercise is simply not proportionate to the needs of the case.

Under Fla. Stat. 90.502(3), the attorney-client privilege may be claimed by:

a) The client.
b) A guardian or conservator of the client.
c) The personal representative of a deceased client.
d) A successor, assignee, trustee in dissolution, or any similar representative of an organization, corporation, or association or other entity, either public or private, whether or not in existence.
e) The lawyer, but only on behalf of the client. The lawyer's authority to claim the privilege is presumed in the absence of contrary evidence.

As such, Dr. Wright would have to contact at least eighty-one parties to see if they claim privilege over the attorney-client communications. First, he would have to contact each of the clients under Fla. Stat. 90.502(3)(a) or their successors (such as the liquidators or ASIC) under Fla. Stat. 90.502(3)(d). There are at least 17 individual corporations with which Dr. Wright is associated. Second, Dr. Wright would have to contact each of the individual attorneys on the communications

---

[4] The text of that statute can be found here:
http://www5.austlii.edu.au/au/legis/cth/consol_act/ca2001172/s601ad.html (last accessed Feb. 11, 2020).

8

under Fla. Stat. 90.502(3)(e). There are at least 64 individual attorneys involved in the communications.

The work involved in coordinating such a massive document review is simply not proportionate to the needs of the case. The burden will be great. The eighty-one parties referenced above span the globe, and include parties located in the U.S., Australia, and the U.K., all of which are in different time zones and different judicial jurisdictions. Not only would Dr. Wright have to coordinate with each of those parties to provide them with the relevant documents for review, but he would have to bring them up to date on the relevant issue and the nuances of the Florida law on privilege.

As to the needs of the case, under its present posture, they are minimal. To date, Dr. Wright has produced 198,221 nonprivileged documents, and plaintiffs have made absolutely no showing as to why they need the additional documents that are privileged. At a certain point, the documents become repetitive and duplicative. We have reached that point.

This is compounded by the fact that many of the privileged documents are not even relevant to this case. This is because the documents are responsive to search terms, not actual document requests. In accordance with this Court's order, the parties agreed to search terms in an attempt to identify relevant documents. However, those search terms are broad and capture many documents that are not relevant to the underlying lawsuit.[5] Yet in accordance with this Court's

---

[5] For example, one of the search terms is (David or Dave or Davids or Daves or dave_kleiman or davekleiman) and (partner* or draft or Craig* or code or agree*). The intention was to find documents related to David Kleiman and the five listed subjects. Yet, that search captured a draft legal document prepared by an attorney that contained all of the five subject terms, but where the "David" was Ramona Watts' former husband, not David Kleiman. That document is privileged under the work product doctrine and has no relevance to this case. Further, that document was an attachment to an email sent by a lawyer to Mrs. Watts. That email is privileged based on attorney-client communication, has no relevance to this case, and doesn't even hit on any of the "David"

9

order, all documents hitting on search terms must be produced, regardless of their responsiveness to the document requests or the relevance to this lawsuit. D.E. 231. As a result, many of the documents that plaintiffs seek are not even relevant to this case.

### E. An Order by the Court to Produce the Privileged Documents Would Require Dr. Wright to Violate Australian Law

The Court should not order Dr. Wright to produce the attorney-client documents because such an order would require him to violate Australian law. The requested documents are currently privileged under Australian law and protected from disclosure. As set out in the declaration of G. Grieve:

> Under Australian law, documents covered by the attorney client privilege are privileged from the moment of the communication. There is no need to "assert" or "claim" the privilege when the document is created and such documents remain privileged until waived by the holder of the privilege.

Grieve Declaration ¶¶ 10, 14, 15.

Further, as also set out in the Grieve Declaration, multiple Australian courts have dealt with this specific issue in front of the Court, *i.e.*, whether a dissolved corporation's attorney-client communications should be turned over to a third party where nobody has "asserted" the privilege on behalf of the corporation. Grieve Declaration ¶¶ 14-17. Each of the courts found that in such a scenario the documents should not be produced because it would violate the attorney-client privilege. *Id.* This is because it is not necessary for somebody to "assert" the privilege. Grieve Declaration. *Id.* ¶¶ 13-17. The documents are automatically privileged unless waived. Grieve Declaration. *Id.* ¶¶ 13-17.

---

search terms. It was included in the privilege log because the parties agreed to produce all documents in an email communication even if only one of the documents hit on the search terms (in this case, the draft legal document).

Thus, in accordance with the judicial comity doctrine, this Court should not issue a ruling that conflicts with the laws of a foreign nation, absent a compelling need. *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 529 (S.D.N.Y. 1987) (the "most important" factor in determining whether to order the production of documents that would violate foreign law is "degree of importance of the requested discovery.") As noted above, many of the privileged documents are not relevant to this case and Dr. Wright has already produced 198,221 documents. There simply is no compelling need.

**F. Plaintiffs' Issues with the Formatting of Dr. Wright's Privilege Log are Best Addressed Between Counsel**

In their Motion, plaintiffs raise additional issues with Dr. Wright's privilege log, such as communications that don't appear to involve Craig, an attorney, or have insufficient detail. Motion at 13-16. Counsel for Dr. Wright already explained to counsel for plaintiffs that many of the supposed issues are related to the formatting of the Excel file. The software used to populate the privilege log only pulled the email addresses that are in the email header, but not the address that appear in the body of the email, which sometimes occurs when an email is forwarded. Dr. Wright is currently working to remedy the specific instances that plaintiffs have identified. Dr. Wright does not believe that this process requires Court intervention and will continue to work with plaintiffs in good faith to resolve the issues that they raise.

## **CONCLUSION**

For all of the foregoing reasons, plaintiffs' request to strip the foreign entities of their attorney-client privilege protections should be denied.

*Attorneys for Dr. Craig Wright*

RIVERO MESTRE LLP
2525 Ponce de Leon Boulevard, Suite 1000

Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: arolnick@riveromestre.com
Email: amcgovern@riveromestre.com
Email: zkass@riveromestre.com
Email: receptionist@riveromestre.com

By: s/ Andres Rivero
ANDRES RIVERO
Florida Bar No. 613819
JORGE MESTRE
Florida Bar No. 88145
AMANDA MCGOVERN
Florida Bar No. 964263
SCHNEUR KASS
Florida Bar No. 100554
ALAN ROLNICK
Florida Bar No. 715085

## CERTIFICATE OF SERVICE

I certify that on February 11, 2020, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF or by U.S. Mail.

/s/ Andres Rivero
ANDRES RIVERO
Florida Bar No. 613819