**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC

     plaintiffs,

v.                                                          Case No. 9:18-cv-80176 (BB/BR)

CRAIG WRIGHT,

     defendant.

_____/

## DECLARATION OF GORDON THOMAS GRIEVE

1.      I am a Partner of Piper Alderman. Piper Alderman is a commercial law firm with offices in Sydney, Melbourne, Brisbane and Adelaide. We have over 70 partners and over 300 staff in total.

2.      I am over the age of 21 and I make this declaration based on my personal knowledge.

3.      In making this declaration I draw on my expertise, having been a litigation Partner of Piper Alderman for 28 years. Prior to joining the Piper Alderman partnership, I was the Commissioner for Corporate Affairs in South Australia. As Commissioner for Corporate Affairs and in private practice, I have conducted and supervised complex litigation matters in Australia, in the Supreme Courts of New South Wales, South Australia, Victoria, Queensland and West Australia, various Registries of the Federal Court of Australia and the High Court of Australia and in the United Kingdom and Europe.

4.      I have a high level of experience in both the private and public sectors across all facets of major commercial litigation.

5.      I am familiar with litigation matters both from the perspective of a plaintiff and a defendant.  I recently completed two large matters that were being conducted in the Supreme Court of New South Wales and a further long running matter transferred from the Supreme Court of Victoria. The latter matter was the subject of hard fought interlocutory applications including issues concerning choice of forum and interpretation of an exclusive jurisdiction clause in a New York contract.  I have current matters in the Supreme Courts of New South Wales and Victoria and a large commercial arbitration

6.      The Federal Court of Australia is the national court of Australia having its own Federal jurisdiction and certain coterminous jurisdiction with the Supreme Courts of the various Australian States.

7.      The Supreme Court of New South Wales is the highest court of the Australian State of New South Wales and its decisions are influential on Supreme Court's in other states. Decisions of the Court of Appeal of the Supreme Court of New South Wales are binding on all courts in New South Wales and are highly influential on courts in the other Australian States. Decisions of the High Court of Australia are binding on all Australian Courts.

8.      I have been engaged by Rivero Mestre to assist this Honourable Court in respect to issues arising in the proceedings at hand.

9.      I have been provided with a copy of Plaintiffs' Memorandum Challenging Craig's Privilege Designations and have been asked to provide an overview of Australia's attorney client privilege, and in particular, how it is applied to corporations that have been dissolved or deregistered.[1]

---

[1] The terms "deregistration" and "dissolution" with respect to the winding up of a corporation are interchangeable.

2

10.     Under Australian law, documents covered by the attorney client privilege are privileged from the moment of the communication. There is no need to "assert" or "claim" the privilege when the document is created and such documents remain privileged until privilege is waived by the holder of the privilege.

11.     Whether a document is privileged depends upon the circumstances in which it is generated. Confidential communications and confidential documents containing legal advice (section 118 of the *Evidence Act 1995* (Cth)) or documents created for the purposes of litigation (section 119 of the *Evidence Act 1995* (Cth)) are generally privileged. Copies of sections 118 and 119 of the *Evidence Act* 1995 (Cth) are attached as Exhibit A to this declaration.

12.     Section 117 of the *Evidence Act 1995* (Cth) defines confidential communications and 'confidential document' as follows:

> "confidential communication" means a communication made in such circumstances that, when it was made:
>> (a) the person who made it; or
>> (b) the person to whom it was made;
> was under an express or implied obligation not to disclose its contents, whether or not the obligation arises under law.
>
> "confidential document" means a document prepared in such circumstances that, when it was prepared:
>> (a) the person who prepared it; or
>> (b) the person for whom it was prepared;
> was under an express or implied obligation not to disclose its contents, whether or not the obligation arises under law.

13.     A corporation's privilege is not extinguished by its dissolution, and upon dissolution, the right to waive a corporation's privilege passes on to the Australian Securities and Investment Commission ("ASIC"). It is ASIC's stated policy not to waive that privilege.

3

14.     In *Lane Cumbeline Pty Ltd & ORS v. Effem Foods PTY LTD T/A Uncle Ben's of Australia* [Extract], Federal Court of Australia, 14 November 1994, (1994) 126 ALR 58, the Federal Court of Australia ruled as follows:

> [O]nce it is established that the documents are privileged then the privilege is not lost unless there is a waiver express or implied by the person entitled for the time being to that privilege. In the present case it is clear that [the dissolved corporation] has not waived the privilege. It is also clear in the letter from the [ASIC] Commission that the Commission has not waived the privilege nor does it intend to. Furthermore, the applicants in the present proceedings [the dissolved corporation's investors] cannot waive the privilege because it is not their privilege. It is that of [the dissolved corporation]. Accordingly, nothing which they do or have done or which they say can have the effect of waiving the privilege that was originally vested in [the dissolved corporation] and now vests in the Commission.
>
> I do not think that the right of confidentiality and privilege which the principle embodies has been lost as a result of the circumstance that [the corporation] has been dissolved. Indeed, in my opinion the right has survived and has passed to the Commission.

A copy of this judgment is attached as Exhibit B to this declaration.

15.     In *Kellert v Foate* [2015] NSWSC 954,  Mrs. Kellert was seeking documents from Australian Beverage, a dissolved corporation. The documents were in the physical possession of Australian Beverage's former attorney and Mrs. Kellert wrote to ASIC asking it to waive the attorney client privilege. [2015] NSWSC 954 per Harrison AsJ at [72]. ASIC responded that it is its "policy to neither assert nor waive privilege on behalf of deregistered companies." [at 60]. Mrs. Kellert then applied to the Supreme Court of New South Wales  to order the attorney to produce the documents [at 62]  The court denied that request, finding that [at 73]:

> The client legal privilege of Australian Beverage has not been extinguished by its deregistration, nor has it been waived by any person or legal entity competent to do so. For these reasons, I decline to make an order that the solicitor produce the documents referred to in paragraph [3] of Mrs Kellert's notice of motion filed 3 February 2015 in the new proceedings.

A copy of this judgment is attached as Exhibit C to this declaration.

4

16.    Further in *Kellert v Foate* Harrison AsJ at [72], finds that a company's legal professional privilege after it has been deregistered is "like other traditional common law rights [legal professional privilege] is not to be abolished or cut down otherwise than by clear statutory provision. Nor should it be narrowly constructed or artificially confined."

17.    In *Fletcher v Davidson* [2007] NSWSC 68 [at 20]and *Kellert* [at 73] the NSW Supreme Court finds that where a company's documents are privileged, then the privilege claim should not be lost until there is a waiver, express or implied, by a person or entity competent and able to do so.

A copy of this judgment is attached as Exhibit D to this declaration.

18.    Based on the above caselaw, under Australian law even though a corporation has been dissolved, legal professional privilege is maintained in the corporation's documents absent a waiver by a competent entity or person.

19.    The above conclusions are based on my experience practicing law in Australia for over 35 years, and the rulings of the Federal Court of Australia and the Supreme Court of New South Wales to which I have referred.

20.    Pursuant to 28 U.S.C § 1746(1), I declare under penalty of perjury under the laws of the United States of America that my statement here is true and correct.


Dated: February 11, 2020

Gordon T. Grieve

5

# Exhibit A

## 118   Legal advice

Evidence is not to be adduced if, on objection by a client, the court finds that adducing the evidence would result in disclosure of:

(a)      a confidential communication made between the client and a lawyer; or

(b)      a confidential communication made between 2 or more lawyers acting for the client; or

(c)      the contents of a confidential document (whether delivered or not) prepared by the client, lawyer or another person;

for the dominant purpose of the lawyer, or one or more of the lawyers, providing legal advice to the client.

## 119   Litigation

Evidence is not to be adduced if, on objection by a client, the court finds that adducing the evidence would result in disclosure of:

(a)      a confidential communication between the client and another person, or between a lawyer acting for the client and another person, that was made; or

(b)      the contents of a confidential document (whether delivered or not) that was prepared;

for the dominant purpose of the client being provided with professional legal services relating to an Australian or overseas proceeding (including the proceeding before the court), or an anticipated or pending Australian or overseas proceeding, in which the client is or may be, or was or might have been, a party.

2.

# Exhibit B

58

## LAKE CUMBELINE PTY LTD and OTHERS v EFFEM FOODS PTY LTD (t/as UNCLE BEN'S OF AUSTRALIA)

FEDERAL COURT OF AUSTRALIA — GENERAL DIVISION

TAMBERLIN J

4, 14 November 1994 — Sydney

*Practice and procedure — Privilege — Legal professional privilege — Whether privilege held by company at time of its dissolution vests in Australian Securities Commission upon dissolution — Whether privilege can be maintained in respect of documents where privilege is held by a dissolved company — Claim for damages in form of reimbursement of legal costs in previous proceedings — Disclosure of memoranda of fees — Whether implied or imputed waiver of privilege — Whether unfair to maintain privilege — Corporations Law ss 9, 576.*

The applicants sought damages against the respondent comprising legal costs and disbursements and moneys lent or paid by the applicants in respect of a number of legal proceedings arising out of or relating to investments by them in Trawl Investments Australia Pty Ltd (Trawl). Trawl went into liquidation and was dissolved in April 1994.

In 1989 Trawl brought proceedings for repudiation of contract against the respondent in the Supreme Court. These proceedings were unsuccessful at first instance and on appeal and Trawl was held liable to pay the costs of those proceedings. The individual applicants at all material times were directors of Trawl and guarantors of the debts and obligations of Trawl.

The applicants alleged that they were induced to invest in and/or to continue their investments in Trawl by reason of deceptive and misleading conduct and fraudulent or negligent misrepresentations on the part of the respondent. In addition, it was alleged that, as a result of their investment, they became involved in further litigation apart from Trawl litigation.

The respondent sought to have produced for inspection a large number of documents relating to the proceedings at first instance and on appeal between Trawl and the respondent in the Supreme Court of New South Wales. Two issues arose for decision: namely, whether privilege could be maintained in respect of those documents in the light of the fact that Trawl had been dissolved and whether there had been a waiver of privilege in relation to any of the documents.

**Held**, dismissing the application by the respondent for production and inspection of the documents:

(i) Upon the assumption that the documents were subject to legal professional privilege, Trawl was the entity in which the privilege in question was vested. That privilege subsisted until it was waived by a person or entity competent and able to waive it. Here, pursuant to s 576 of the Corporations Law, the privilege passed to the Australian Securities Commission which had decided not to assert or waive the privilege.

> *Bullivant v Attorney-General (Vic)* [1901] AC 196; *Prus-Grzybowski v Everingham* (1986) 44 NTR 7; *Attorney-General (NT) v Maurice* (1986) 161 CLR 475; 69 ALR 31; *Baker v Evans* (1987) 77 ALR 565, considered.

(ii) Disclosure of the claims, in the sense of providing memoranda of fees, backsheets to counsel and counsel's fees did not, in the circumstances, amount to an implied waiver of privilege in the underlying documents which included briefs to

counsel, advice from counsel, instructions to solicitors and communications to other
parties for the purpose of legal advice or legal proceedings. If a bill of costs showed
the nature of the instructions or the advice, it would be privileged and disclosure of
it might waive privilege. If it did not disclose such information then it would not be
privileged and production of it would not amount to waiver. Here, the memoranda
of costs which had been provided by the applicants did not disclose the nature or
content of the privileged material. Accordingly, disclosure of and reliance upon
these memoranda did not amount to a use of, or partial disclosure of, legally
privileged material so as to produce an unfair advantage which would lead to an
implied or imputed waiver of privilege in relation to the documents underlying those
memoranda.

> *Packer v DCT* [1985] 1 Qd R 275, followed.
>
> *Attorney-General (NT) v Maurice* (1986) 161 CLR 475; 69 ALR 31, considered.
>
> *Goldberg v Ng* (1994 unreported), distinguished.

(iii) It was not unfair to allow the applicants to rely on the memoranda of fees and
similar documents without the respondents having the right to examine and consider
the underlying documents. When a party claiming damages in the nature of costs
elected to rely upon privilege, there was a risk that the party might not be able to
prove the amount of its claim because the court could only decide the claim on the
basis of the evidence which was placed before it. This was a matter for consideration
by the party claiming for the privilege. To hold that whenever a party made a claim
for damages in the nature of costs and provided a list of the costs and amounts in
respect of which the claim was made, but did not disclose any communications,
advice or instructions, the party had waived privilege in relation to all those
underlying documents, would be to undermine a basic right to which a client was
entitled.

**Application**

The applicants sought, as part of their claim for damages against the
respondent, the costs of earlier legal proceedings. At issue was whether
certain documents relating to those earlier legal proceedings were the
subject of legal professional privilege and, if so, whether that privilege had
been waived. The facts appear sufficiently from the judgment.

*A J Sullivan QC* and *J B Whittle* for the applicants.

*R J Bainton QC, R M Smith* and *J Deamer* for the respondent.

**Tamberlin J.**

*The nature of the proceedings*

The respondent (UBA) seeks to have produced for inspection a large
number of documents which relate to claims for damages, by the applicants
in the present proceedings, comprising legal costs and disbursements and
moneys lent or paid by the applicants concerning a number of legal
proceedings said to arise out of or relate to investments by them in Trawl
Investments Australia Pty Ltd (Trawl) in 1987 and subsequent years. Trawl
went into liquidation and was dissolved in April 1994. Trawl is not a party
to the present proceedings before me.

In 1989 Trawl brought proceedings for repudiation of contract against
UBA in the New South Wales Supreme Court. These were heard by Cole J

in the Commercial Division and were unsuccessful. An appeal was taken to the New South Wales Court of Appeal and this appeal too was unsuccessful. Trawl was held liable to pay the costs of those proceedings.

The individual applicants at all material times were directors of Trawl and guarantors of the debts and obligations of Trawl.

The applicants allege that they were induced to invest in and/or to continue their investment in Trawl by reason of deceptive and misleading conduct and fraudulent or negligent misrepresentations on the part of the respondent. The applicants say that they relied on such misrepresentations and conduct and this reliance led them to make further investments, loans and expenditures and incur further liabilities as a result of their investments in Trawl. It is further alleged that after they had invested in Trawl there was a series of additional and continuing misrepresentations and deceptive conduct which led to further losses and damages.

In addition, it is alleged that as a result of their investment they became involved in further litigation apart from the Trawl litigation arising out of guarantees and a scrip lien, and that this litigation was with, inter alia, the ANZ Bank and the National Mutual Royal Bank. The applicants seek as part of their claim in the present proceedings to recover as damages moneys borrowed, paid or lent by them in relation to the costs of such litigation, namely that of Trawl with UBA, and the other matters referred to above concerning the guarantees and the scrip lien.

The only two issues before me presently for decision are whether privilege can be maintained in respect of certain Trawl documents in the light of the fact that the company has been dissolved and whether there has been waiver of privilege in relation to any of the documents in respect of which damages in the nature of costs are claimed by the applicants.

### The documents

Privilege has been claimed to exist in respect of 278 documents comprised in a list referred to as the Third Supplementary List Amended Schedule 1 Part 2. These documents relate to the proceedings at first instance and on appeal between Trawl and UBA in the Supreme Court of New South Wales. The documents are claimed to attract legal professional privilege and they comprise a wide and varied range of documents including file notes of conferences, notes of telephone attendances, briefs to counsel, facsimiles, advices from counsel and correspondence with clients and counsel.

A second and related group of documents to the Trawl documents referred to in argument is that which is the subject of an amended notice of motion filed on behalf of the respondent on 29 August 1994, seeking discovery, inter alia, of the following documents:

6(a) All summons, amended summons, statement of claim and/or affidavits filed in proceedings brought by any one or more of Lake Cumbeline Pty Ltd, Sands, Horrobin and/or Pridmore against Atasco (Aust) Pty Ltd, Bruce Thomas Fasham, Jon Dean Wilson and/or Kerry Dean Wilson in proceedings in the Supreme Court of New South Wales number 1223 of 1988.

6(b) *All documents relating to the work in respect of which the claims entitled "BDW fees re Atasco" in RJS 107 to the Statement of R J Sands dated 2 March 1994 are made*

8 *All documents relating to*

> (a) *the work done by Blake Dawson Waldron for which the payments referred to in Annexure RJS 106 to the statement of R J Sands dated 2 March 1994 have been made; and*
>
> (b) *any other fees due or paid to Blake Dawson Waldron and claimed as damages in these proceedings.*

5

A third group of documents is that referred to, in the supplementary statement of Peter Robert Horrobin dated 20 October 1994, as being PRH Ex A to that statement. That exhibit contains copies of memoranda for legal costs in proceedings in the Supreme Courts of Victoria and New South

10  Wales against the ANZ Bank incurred by Lake Cumbeline Pty Ltd on behalf of Mr P R Horrobin, Mr Sands and Idobook Pty Ltd totalling $101,104.96. These proceedings are described as:

   - ANZ v Richard John Sands and Others No 6446 of 1992 in the Supreme Court of Victoria.
15   - Idobbok Pty Ltd and Others v ANZ No 4374 of 1994 in the Supreme Court of Victoria.
   - ANZ v Peter Robert Horrobin and Others No 11145 of 1994 in the Supreme Court of New South Wales.

The memoranda include accounts for professional costs from Heidtman

20  & Co, solicitors of Sydney, referring to the ANZ claim in which the clients are stated to be Messrs Horrobin and Sands. There are also memoranda and accounts from Messrs Strongman & Crouch, solicitors of Melbourne, relating to Victorian Supreme Court proceedings concerning the applicants and National Mutual Royal Bank (ANZ) No 4374 of 1994 in the Supreme

25  Court of Victoria. There are also accounts and memoranda of costs relating to matter No 6446 of 1992 between ANZ Banking Group Ltd and Richard John Sands and others.

*The submissions*

30    The first submission by UBA relates to the documents referred to in paras 6(b) and 8 in the amended notice of motion of 29 August 1994 referred to above which relate to legal fees payable to Blake Dawson Waldron (BDW), the solicitors for Trawl who are also the solicitors for the applicants in the matter before me.

35    UBA says that, when the notice of motion came before the court, counsel appearing for the applicants stated that there was no objection to producing documents in categories 6(b) and 8 and indicated that those documents would be made available.

   UBA submits that the statements amounted to a waiver of privilege in

40  relation to such of those documents as attracted legal professional privilege. The documents have not been made available and the respondent presses for inspection of all of those documents including such of them as may be subject to privilege on the ground that there has been an express waiver of the privilege.

45    I am informed by counsel for the applicants that the statement made on 3 September 1994 to the effect that the documents would be made available was not intended by counsel making the statement to waive any privilege in respect to such of these documents as are privileged, nor was it intended to make them available to UBA. The intention, as I understand the position,

50  was to produce and make available such of the documents as are not privileged

I accept the explanation given by counsel for the applicants to the effect that no claim for privilege was made because of a misunderstanding as to which of the documents were intended to come within the described categories and that it was never intended that privileged documents relating to the Supreme Court proceedings would be made available. It was not sought to call or cross-examine counsel in relation to this question and I accept the statements made to me from the bar table in this respect. In these circumstances, if it were necessary for me to decide the matter, I consider that since the documents have not been made available and since the claim for privilege is presently maintained the ambiguity in the statement of counsel was not deliberate and therefore the privilege in the documents has not been waived, and the documents should not be made available. In any event, for the reasons which I set out below, I consider that counsel for the applicants did not have any authority to waive privilege in relation to documents the subject of the Trawl litigation because privilege in these documents was never vested in the applicants in the present proceedings.

The second submission which is made relates specifically to the 278 documents in respect of which privilege is claimed in the Third Supplementary List Amended Sch 1 Part 2 referred to above.

These documents relate to the Trawl proceedings in 1988 and following years in the Supreme Court of New South Wales.

The submission made by counsel for the respondent is that because Trawl was dissolved in April 1994 there is no longer any person or entity in existence which can claim privilege in respect of the documents relating to the Trawl litigation. The only party entitled to claim such privilege is Trawl and it cannot do so because it does not exist any longer. Accordingly, in default of a competent claimant, the privilege no longer applies.

The third submission which is made is that, since the applicants are claiming damages in the nature of costs against the respondent and because the applicants have furnished memoranda of fees giving details of those costs, there has been a waiver of any privilege which may have existed in relation to the documents which are the subject of and gave rise to those memoranda in respect of which the legal work was done. In other words, it is said, for example, that if a memorandum of fees is relied on to quantify and justify a claim for costs by way of damages in the present proceedings then the production of such a memorandum of fees amounts to a waiver in respect of all documents which relate to the transactions giving rise to that memorandum.

The fourth submission by UBA is that to make a claim in these proceedings for reimbursement of the amounts paid and liabilities incurred in respect of legal fees on their behalf in other proceedings waives the privilege and entitles UBA to know what has been done so that as a matter of basic fairness UBA can properly examine and contest the claim. UBA says that if, for example, a conference is charged for then UBA is entitled to know what the conference was about; what was said at the conference; what advice was given; how long it took and whether it is a proper and reasonable claim as to quantum in that it related to the matter in respect of which it was made. To deprive UBA of this ability is to unfairly rely on the privilege. An example is given of a litigant seeking advice from counsel before proceedings are commenced and being told that the case is hopeless

The client proceeds to litigation and loses. It is then said that this is a charge which a respondent to the claim should not have to face without being properly armed with the necessary information and material to defend and test the charge.

5 *The dissolution of Trawl*

The documents in question relating to the Trawl litigation include file notes of conferences between the solicitors and the applicants, facsimiles between solicitors and the applicants, correspondence, notes of conferences
10 with counsel, correspondence and communications with counsel, briefs to counsel, and a number of other like documents.

For the purposes of the present decision I will assume that the documents are subject to legal professional privilege. This is not conceded by UBA and it is still open to UBA, if it wishes, to dispute the privilege in respect of
15 particular specified documents.

UBA in the present proceedings seeks inspection of all of these documents on the basis that the privilege claimed in respect of the New South Wales Supreme Court proceedings was that of Trawl and not of the applicants. Trawl has been dissolved and therefore, so the submission goes,
20 no person or entity is able to assert privilege in respect of the documents.

The applicants agree that Trawl is the entity in which the privilege in question was vested. They submit, however, that the documents in question are "outstanding property" of Trawl within the meaning of s 576 of the Corporations Law. The relevant parts of that section provide as follows:

25        (1) Where, after a company has been dissolved, there remains in this jurisdiction or elsewhere outstanding property of the company, the estate and interest in the property, at law or in equity, of the company or its liquidator at the time when the company was dissolved, together with all claims, rights and remedies that the company or its liquidator then had in respect of the property
30        vests by force of this section in the Commission.

        (3) Where a company is dissolved, then, notwithstanding that the books of the company vest in the Commission by reason of subsection (1), the person who was the last director of the company or the persons who were the last directors of the company before the company was dissolved shall retain the books of the company
35        (other than any books of the company that any liquidator of the company is required to retain under subsection 542(2)) for a period of 3 years after the date on which the company was dissolved.

"Books" are defined in s 9 of the Corporations Law to include "any . . . record of information" and/or "a document". "Outstanding property", in
40 relation to a body corporate that has been dissolved is defined to mean "property . . . that was vested in the body . . . when it was dissolved, but that neither the body nor its liquidator got in, realised on or otherwise disposed of or dealt with".

"Property" is defined to mean "any legal or equitable estate or interest
45 . . . in real or personal property of any description". It would include documents.

It is submitted on behalf of the applicants that the documents in question are "books" of Trawl within the meaning of s 9 of the Law and that they have vested in the Commission under s 576(1) of the Law.

50 As a result of s 576(1) it is said that the interest of the company in the books at the time when the company was dissolved together with all claims

rights and remedies that the company or its liquidator then had in respect
of the property vests by force of the section in the Commission. The claim
for privilege in the documents is a relevant claim within s 576(1).
Accordingly, it is said that any claim for privilege in the documents is now
vested in the Commission.

Inquiries were made of the Commission in relation to its intention as to
claiming privilege in the Trawl documents. The Commission's reply dated 4
November 1994 was to the effect that the Commission neither waived nor
asserted any claim for privilege in the documents.

The Commission's letter suggested that the applicants might wish to take
steps to in effect reinstate the company, if they wished, so that privilege
might be claimed.

I do not for reasons set out below consider this to be necessary.

On the assumption, for the purposes of the present argument, that the
278 documents contained in the Third Supplementary List are documents
which attract legal professional privilege then the privilege in those
documents is that of Trawl. It is well settled law that the privilege is that of
the client and not of the custodian.

It is reasonably clear from a number of cases that a client's privilege will
generally enure for the benefit of his or her successors in title who are
usually the client's personal representatives in the case of the death of an
individual: see *Bullivant v Attorney-General (Vic)* [1901] AC 196 at 206 per
Lord Lindley; *Prus-Grzybowski v Everingham* (1986) 44 NTR 7 at 12; see also
Neoh and Eu, "The Duration of a Claim of Legal Professional Privilege"
(1982) 12 *Hong Kong LJ* 66 at 69-72; see also McNicol, *Law of Privilege*
(1992, Law Book Co), pp 33 and 81.

In *Bullivant* at 206 Lord Lindley said:

> The mere fact that a testator is dead does not destroy the privilege. The
> privilege is founded upon the views which are taken in this country of public policy
> ... and unless the people concerned ... waive it, the privilege is not gone — it
> remains.

In the case of a corporation there is little or no direct authority as to what
happens to its right to claim privilege after dissolution. In *Baker v Evans*
(1987) 77 ALR 565 at 567 Pincus J said:

> Counsel for the first applicants argued that the dissolution of the company did
> not put an end to the privilege. Accepting that, it is not established that by any
> means the privilege was transmitted to the first applicants: cf *Minet v Morgan*
> (1873) LR 8 Ch App 361. There, in a property dispute, correspondence between
> predecessors in title and his solicitors was held privileged. Since, as I find, the now
> defunct company was the client, I can see no basis for upholding a claim of
> privilege, at the instance of persons who were once interested in the company.
> The privilege is that of the client.

The US Uniform Rules of Evidence, r 502(c) state:

> The privilege may be claimed by the client, his guardian or conservator, the
> personal representative of a deceased client, or the successor, trustee, or other
> similar representative of a corporation, association, or other organisation,
> whether or not in existence.

In *Attorney-General (NT) v Maurice* (1986)161 CLR 475 at 490; 69 ALR
31 at 40-1 Deane J pointed out that legal professional privilege

... is a substantive general principle of the common law and not a mere rule of evidence that, subject to defined qualifications and exceptions, a person is entitled to preserve the confidentiality of confidential statements and other materials which have been made or brought into existence for the sole purpose of his or her
5 seeking or being furnished with legal advice by a practising lawyer or for the sole purpose of preparing for existing or contemplated judicial or quasi-judicial proceedings ...

At CLR 490-1; ALR 41 his Honour said

Indeed, the plain basis of the decision of the majority of this court in *Baker v*
10 *Campbell* [(1983) 153 CLR 52; 49 ALR 385] was the acceptance of the principle as a fundamental principle of our judicial system ... Like other traditional common law rights, it is not to be abolished or cut down otherwise than by clear statutory provision. Nor should it be narrowly constructed or artificially confined.

On the assumption, made for the purposes of the present argument, that
15 the documents in the Trawl litigation satisfied the test of having been made or brought into existence for the sole purpose of seeking or being furnished with legal advice or for the sole purpose of preparing for existing or contemplated legal judicial or quasi-judicial proceedings, the Trawl documents attract legal professional privilege. Therefore, in my view, as at
20 the date of dissolution of Trawl, the documents were privileged and the privilege was that of Trawl and that privilege subsists until it is waived by a person or entity competent and able to waive.

Under the provisions of the Corporations Law this privilege passed to the Commission which is the successor to Trawl in respect of claims relating to
25 the documents. The Commission has decided not to assert or waive the privilege.

In my opinion, once it is established that the documents are privileged then the privilege is not lost unless there is a waiver express or implied by the person entitled for the time being to that privilege. In the present case
30 it is clear that Trawl has not waived the privilege. It is also clear in the letter from the Commission that the Commission has not waived the privilege nor does it intend to. Furthermore, the applicants in the present proceedings cannot waive the privilege because it is not their privilege. It is that of Trawl. Accordingly, nothing which they do or have done or which they say
35 can have the effect of waiving the privilege that was originally vested in Trawl and now vests in the Commission.

I do not think that the right of confidentiality and privilege which the principle embodies has been lost as a result of the circumstance that Trawl has been dissolved. Indeed, in my opinion the right has survived and has
40 passed to the Commission.

The question might be tested this way. Suppose the solicitor acting for Trawl in that previous litigation were asked in the present proceedings to give evidence as to the content of certain privileged advices which was given to Trawl and its directors, the applicants, in 1988. The solicitor would have
45 no authority or power to disclose that advice unless there had been waiver by either Trawl or its successor, the Commission. Until such waiver has occurred the privilege remains and the solicitor has no authority to waive the privilege. That is the position, in substance, which has arisen here. There are privileged documents in the custody of the applicants or their
50 agents and such privilege has not been waived Hence the privilege continues notwithstanding the dissolution of Trawl

The practical reality, in the present case, is that the advices, instructions, conferences, conversations, telephone calls, facsimiles and other communications with Trawl and its legal advisers taking place in 1987 and later were conducted with the individual applicants on behalf of Trawl. To now allow UBA to access, inspect, and use those confidential communications in the present proceedings is to act in a manner quite contrary to the expectations and confidences which formed the basis on which those communications were made. Disclosure of such material must inevitably open up the possible use of such confidential privileged material in the present proceedings.

For the reasons given above I am therefore of the opinion that in relation to the Trawl documents which UBA seeks to inspect, such inspection should be denied because in my view, on the assumption that the documents were privileged in the first place, the privilege still exists and has not been waived. This is not to say that it is not open to UBA to challenge if it wishes in relation to any particular documents as to whether they satisfy the tests of privilege. It is simply to say that on the assumption they are privileged I disagree with the submission that this privilege has been lost as a result of the dissolution of the company Trawl.

*Waiver*

This submission is made both in relation to the Trawl litigation and to the other proceedings referred to earlier. In relation to these proceedings it is argued by UBA that by producing the memoranda of fees and that by suing to recover the costs and the Trawl costs as damages privilege has been waived in relation to all documents recording work, conferences, briefs, documents, correspondence and papers in respect of which a claim has been made for damages.

The broader submission made is that for the applicants to make a claim in the present proceedings to recover costs of work done on their behalf entitles UBA to know what has been done and to inspect all documents, advices, correspondence, instructions and communications in order to know whether each claim for work done by solicitors and counsel is sustainable.

The argument is that there has been an implied waiver of privilege within the principles laid down in the *Maurice* case. That decision was recently applied and discussed in the decision of the New South Wales Court of Appeal in *Goldberg v Ng* (11 July 1994, Nos CA40096/93, CA40440/93, unreported).

In *Maurice* at CLR 487-8; ALR 39 Mason and Brennan JJ said:

> The limiting effect of legal professional privilege on the availability of evidence otherwise relevant is confined, inter alia, by the doctrine of waiver. A litigant can of course waive his privilege directly through intentionally disclosing protected material. He can also lose that protection through a waiver by implication. An implied waiver occurs when, by reason of some conduct on the privilege holder's part, it becomes unfair to maintain the privilege. The holder of the privilege should not be able to abuse it by using it to create an inaccurate perception of the protected communication. Professor Wigmore explains:
>
> "[W]hen his conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not. He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder ... "
>
> In order to ensure that the opposing litigant is not misled by an inaccurate perception of the disclosed communication, fairness will usually require that

waiver as to one part of a protected communication should result in waiver as to the rest of the communication on that subject matter ...

Hence, the implied waiver inquiry is at bottom focused on the fairness of imputing such a waiver. On this principle, an American court refused to imply a waiver when the person entitled to the privilege, who had been subjected by court order to an exceptional accelerated discovery process, accidentally disclosed some protected communications ...

For the purposes of these reasons, I assume that the underlying documents attract legal professional privilege and confine myself to a consideration of the question of waiver.

The question then simply is whether the disclosure of the claims, in the sense of providing memoranda of fees, backsheets to counsel and counsel's fees, amounts to an implied waiver of legal professional privilege in the underlying documents which include briefs to counsel, advice from counsel, instructions to solicitors and communications to other parties for the purpose of legal advice or legal proceedings.

In the *Goldberg* case the Court of Appeal, by majority, concluded that there had been a waiver of legal professional privilege because Mr Goldberg had made "a voluntary and considered disclosure" of material in its privileged form to the Law Society in the belief that such disclosure would not prevent him claiming the immunity should another person, namely his clients, seek to see the documents. Indeed, in that case the Law Society agreed to consider the documents on a privileged and confidential basis. As Mahoney JA points out at p 6 of his judgment, there was in the relevant sense a conscious disclosure of the documents and there was no intentional election to waive the privilege.

In that case the clients of Mr Goldberg had communications with the Law Society and their communications had been treated as a complaint. Mr Goldberg was asked by the Society for an explanation in relation to his relationship with the clients and he produced the documents and gave the information in question to the Society in confidence and on the basis it would not be further disclosed with a view to persuading the Society not to take any further action. In this sense he used the documents and information to procure a result adverse to his clients. In the event the Society decided not to take any action against Mr Goldberg.

In the subsequent proceedings in the Equity Division Mr Goldberg sought by setting up legal professional privilege to prevent the clients seeing the very documents that had been used against the clients in relation to the Law Society complaint.

In the light of the use of the documents by Mr Goldberg in relation to the Law Society both Mahoney and Clarke JJA took the view that it would be unfair to the clients of Mr Goldberg to prevent them having access to the documents in the Equity proceedings in circumstances where the documents had been used to their detriment by reason of the disclosure to the Law Society. Accordingly, the Court of Appeal decided that Mr Goldberg had so conducted himself that the law imputed to him an intention to waive the privilege by intentionally performing a deliberate act which rendered it unfair to the client that the privilege be maintained.

In the present circumstances I do not consider that disclosure of the memoranda of fees, backsheets and similar documents amounts to such a use of privileged material in a way which is unfair to UBA.

Disclosure of the memoranda of fees and other documents does not in any way disclose the nature or contents of the advice or communications between the applicants and their legal advisers. The memoranda of fees simply set out the dates and refer to the action taken in respect of which a charge is made. The memoranda of fees were brought into existence, on their face, not solely for the purpose of obtaining legal advice or for use in legal proceedings but for the purpose of recording and raising charges in respect of work which had been already completed. It is evident that the documents were made or brought into existence for a purpose different from, or beyond, the obtaining of legal advice or use in legal proceedings.

In *Packer v DCT* [1985] 1 Qd R 275 the Full Court of the Supreme Court of Queensland held that legal professional privilege does not attach to entries in a solicitor's trust account ledger except to the extent that such entries record communications referable to the relation of solicitor and client in a professional sense. The court pointed out that the general nature of trust account ledgers is to record movement of money and to indicate matters in respect of which the movement occurs.

The decision in that case refers to a number of earlier cases in which it has been held that bills of costs rendered by a solicitor in detailed form and which disclosed communications concerning matters that were affected by privilege were themselves privileged. The type of bills referred to in those decisions were bills which would disclose indirectly and sometimes more directly instructions given by a client to his solicitors.

In *Packer* a distinction is drawn between detailed bills of costs and the ledger cards there under consideration which were made simply for the purpose of recording movements of money and which did not necessarily relate to matters referable to the relationship of solicitor and client. It is pointed out, for example, that a bill of costs sometimes embodies a solicitor's history of the transaction and recites the nature of the professional service in respect of which it is proposed to charge fees. In such a case, if a bill of costs shows the nature of the instructions or the advice it will be privileged and disclosure of it may waive privilege. If it does not disclose such information then it will not be privileged and production of it will not amount to waiver. In *Packer*, Andrews SPJ said at 282:

In my view there is nothing in particular to set aside a bill of costs as forming some special category of record of privileged information. Even bills of costs may on careful scrutiny in particular cases be shown not to contain privileged information. Consideration of individual cases demonstrates that bills of costs frequently contain a history of matters in respect of which solicitors have been consulted by clients which discloses the nature of advice sought or given.

In the present case, I have perused the memoranda of costs which have been provided by the applicants and I do not consider that they disclose the *nature* or *content* of privileged material. I do not therefore consider that it can be said that disclosure of and reliance upon these memoranda amounts to a use of, or partial disclosure of, legally privileged material so as to produce an unfair advantage which would lead to an implied or imputed waiver of privilege in relation to the documents underlying those memoranda. The memoranda and the other documents are simply recording, in outline form, the work which has been undertaken by the solicitors and in respect of which the charges are raised and do not disclose the content of the communications, advices, briefs or conferences

As a more general proposition, UBA submits that it would be unfair to allow the applicants to rely on memoranda of fees and similar documents without the respondent having the right to examine and consider the underlying documents, with a view to seeing whether the work which was
5 being charged for was relevant to the claim by the clients; whether the clients followed the advice which had been given, or whether they ignored it; whether the amount of time spent was in fact spent or justified; or whether the advice and legal work was such as to justify the charge levied or the quantum of such charge.
10 When a party claiming damages in the nature of costs elects to rely on privilege there is a risk that the party may not be able to prove the amount of its claim because the court can only decide the claim on the basis of the evidence which is placed before it. This is a matter for consideration by the party claiming the privilege. The mere fact that a series of memoranda of
15 fees are produced which itemise work done in respect of which charges are made does not mean that privileged documents which are charged for in those memoranda are being unfairly used or that fairness requires that the underlying documents must be made available for inspection and use by the opposing party.
20 If reliance is placed on privilege in circumstances where the amount charged is challenged then, if no evidence is forthcoming as to the nature of the advice or the necessity for the advice, it may be, depending on the particular circumstances and evidence, that the consequence is that the claimant will fail.
25 If the court were to hold that when a party makes a claim for damages in the nature of costs and provides a list of the costs and amounts in respect of which the claim is made, but does not disclose any communications, advice or instructions, such party has waived legal professional privilege in
30 relation to all those underlying documents the result would be, in my view, to undermine the basic right to which a client is entitled. It would have the consequence that the other party in later proceedings is entitled to examine the briefs, communications, instructions, retainers and advices considered by the client and to use information originally brought into existence in legal
35 professional confidence for any purpose it wishes in other litigation. In these circumstances the prospect of such a result would substantially impede freedom of communication between client and legal advisers, which is at the very heart of the privilege, by discouraging free and uninhibited discussion of the issues and questions in the fear that these communications
40 could later be disclosed to the severe disadvantage of the client.
In order to warrant such a result there must be a sound case made out of unfairness to the party against whom the privilege is asserted. In the present case I do not consider that any such unfairness has been demonstrated. The applicants have not sought to use or put in evidence any of the privileged
45 documents in the present proceedings nor have they otherwise used those documents in an attempt to gain any advantage over UBA.

### Conclusions

I summarise my conclusions in this matter as follows:
50 (1) In relation to the Trawl litigation I consider that there has been no waiver of that privilege by either of the parties entitled to waive it, namely

Trawl and/or the Commission. The applicants in the present procedings had no power or authority at any stage to waive the privilege in relation to the Trawl proceedings.

(2) The production of memoranda of fees, backsheets and other records of fees charged does not constitute a waiver of the privilege in the underlying legal documents which embody the results of that work.

(3) The bringing of an action for damages based on the costs of litigation in the proceedings referred to in this decision does of itself not amount to a waiver of privilege.

Accordingly, I dismiss the application by the respondent seeking production for its inspection of the documents referred to in these reasons and I order that the costs of this application be reserved.

**Order**

(1) The respondent's application for inspection be dismissed.

(2) The costs of this application be reserved.

Solicitors for the applicants: *Blake Dawson Waldron*.

Solicitors for the respondent: *Sly & Weigall*.

PETER RENEHAN
BARRISTER

3.

# Exhibit C

Supreme Court

New South Wales

| | |
|---|---|
| Case Name: | Kellert v Foate |
| Medium Neutral Citation: | [2015] NSWSC 954 |
| Hearing Date(s): | 21 May 2015 |
| Date of Orders: | 17 July 2015 |
| Decision Date: | 17 July 2015 |
| Jurisdiction: | Common Law |
| Before: | Harrison AsJ |
| Decision: | The Court orders that: |

In proceedings 2014/75345:

(1) I decline to make an order as sought in paragraph [3] of the plaintiff's notice of motion filed 3 February 2015.

(2) The proceedings are dismissed as against the first defendant.

(3) The statement of claim, so far as it relates to the second defendant, is stood over for directions before the Registrar at 9.00 am on 31 July 2015.

(4) The plaintiff is to pay the first defendant's costs of the proceedings on an ordinary basis as agreed or assessed.

The Court further orders that:

In proceedings 2008/289756 and 2008/281722:

(1) The notices of motion filed 3 February 2015 are

listed for directions before the Registrar at 9.00 am on 31 July 2015.

(2) I decline to make the consolidation order in paragraph [2] of the notices of motion filed 3 February 2015.

(3) Costs are reserved.

| | |
|---|---|
| Catchwords: | SUMMARY JUDGMENT – whether the proceedings or the statement of claim disclose a reasonable cause of action – costs claimed against legal representation under s 348 Legal Profession Act 2004 (NSW) and s 99 Civil Procedure Act 2005 (NSW) - whether statutory claims for costs should be made by way of notice of motion in the original proceedings – whether an action for collateral abuse of process can be brought against a party's solicitor – subpoena to produce documents from a deregistered company – whether privilege can survive deregistration – whether proceedings should be consolidated |
| Legislation Cited: | Civil Procedure Act 2005 (NSW)<br>Corporations Act 2001 (Cth)<br>Federal Court Act 1976 (Cth)<br>Legal Profession Act 1987 (NSW)<br>Legal Profession Act 2004 (NSW)<br>Migration Act 1958 (Cth)<br>Uniform Civil Procedure Rules 2005 (NSW) |
| Cases Cited: | A Goninan & Co v Atlas Steels [2003] NSWSC 956<br>Attorney-General (NT) v Maurice (1986) 161 CLR 475; 69 ALR 31<br>Ballina Shire Council v Ringland [1999] NSWSC 11<br>British American Tobacco (Australia) Ltd v Peter Gordon [2006] NSWSC 1473<br>General Steel Industries Inc v Commissioner for Railways (NSW) [1964] HCA 69; (1964) 112 CLR 125<br>Grant v Downs (1976) 11 ALR 577; (1976) 135 CLR 674<br>Lake Cumbeline Pty Ltd v Effem Foods Pty Ltd (t/as Uncle Ben's Australia) (1994) 126 ALR 58<br>Leerdam v Noori & Ors (2009) ALJR 553; [2009] NSWCA 90<br>Lloyd Foyster v ANZ Banking Group Ltd (Supreme |

|                        | Court (NSW), 8 December 1997 |
|                        | Lemoto v Able Technical Pty Ltd (2005) 63 NSWLR 300; [2005] NSWCA 153 |
|                        | Maple v David Syme & Co [1974] 1 NSWLR 290 |
|                        | McHenry v Lewis (1882) AC 397 |
|                        | New Cap Reinsurance Corporation Ltd (in liq) v Daya [2008] NSWSC 763 |
|                        | O'Brien v Bank of Western Australia Ltd [2013] NSWCA 71 |
|                        | Spencer v Commonwealth [2010] HCA 28; (2010) 241 CLR 118 |
|                        | Swaab v Commissioner of the NSW Police Service [2005] NSWSC 901 |
|                        | Williams v Spautz [1992] HCA 34; (1992) 174 CLR 509 |
| Category:              | Procedural and other rulings |
| Parties:               | Susan Melinda Kellert (Plaintiff) |
|                        | Anthony Stuart Foate (First Defendant) |
|                        | David George Brooks (Second Defendant) |
| Representation:        | Counsel: |
|                        | R Jefferis (Plaintiff) |
|                        | M Darke SC (First Defendant) |
|                        | |
|                        | Solicitors: |
|                        | Kenneth Harrison (Plaintiff) |
|                        | HWL Ebsworth Lawyers (First Defendant) |
| File Number(s):        | 2008/281722, 2008/289756, 2014/75345 |
| Publication Restriction: | Nil |

## JUDGMENT

1    **HER HONOUR:** There are three proceedings before this Court in which notices of motion are to be determined. Substantive judgments have been delivered in the earlier proceedings 2008/289756, *Australian Beverage Distributors Pty Ltd v Susan Kellert* ("the appeal proceedings") and 2008/281722, *Australian Beverage Distributors Pty Ltd v Susan Melinda Kellert* ("the statutory demand proceedings"). The third proceedings are new, 2014/75345, *Susan Kellert v Anthony Stuart Foate* ("the new proceedings").

2    It would be an understatement to say that there was procedural confusion at the commencement of the hearing. The best way to set out this judgment, I think, is to first deal with the new proceedings, followed by the notices of motion in the appeal proceedings and the statutory demand proceedings. In the new proceedings, I will deal with the first defendant's notice of motion seeking summary judgment, then the plaintiff's notice of motion seeking production of documents.

3    After judgment was reserved, by agreement, the parties forwarded supplementary submissions concerning the production of the documents of Australian Beverage Distributors Pty Ltd. I have now received written supplementary submissions from the plaintiff and first defendant.

**(1)   The new proceedings (2014/75345)**

4    In the new proceedings, the plaintiff is Susan Melinda Kellert ("Mrs Kellert"). The first defendant is a solicitor, Anthony Stuart Foate. The second defendant is David George Brooks ("Mr Brooks"). Mrs Kellert relied on her affidavit affirmed 19 March 2015 and two affidavits of her solicitor Kenneth Harrison sworn 19 March 2015 and 15 May 2015. Mr Foate relied on the affidavit of his solicitor Alisha Sarah Hutchinson sworn 18 September 2014. Mrs Kellert was represented by Mr Jefferis of counsel. Mr Foate was represented by Mr Darke SC. For convenience and ease of understanding, I shall refer to Mr Foate as "the solicitor".

5    Mr Brooks was the alleged authorised officer or employee and director of Australian Beverage Distributors Pty Ltd ("Australian Beverage"). To date, Mr Brooks has not been served with the statement of claim. Not surprisingly, he did not attend this hearing. Hence, no orders have been made in relation to him. These proceedings, so far as they refer to him, have been stood over to a future date. On 15 November 2009, Australian Beverage was deregistered (Ex 1D/1).

6    So far as the solicitor is concerned, the new proceedings involve his alleged conduct when he represented Australian Beverage in relation to the original Local Court proceedings ("the Local Court proceedings"), the appeal proceedings and the statutory demand proceedings, all involving Mrs Kellert.

**The proposed amended statement of claim (Ex A)**

7    The factual background to Mrs Kellert's claims against the solicitor, as pleaded
     in the proposed amended statement of claim ("PASC"), is as follows:

     (a)  Mrs Kellert is a former employee of Australian Beverage: PASC, [1].

     (b)  The solicitor was, at all material times, a solicitor conducting legal practice
     under the name "Catalyst Legal" from premises in Newcastle, and was
     engaged to act as a solicitor for and behalf of Australian Beverage: PASC, [2].

     (c)  On 6 December 2006, Australian Beverage terminated Mrs Kellert's
     employment without notice: PASC, [6].

**The Local Court proceedings**

8    On 14 March 2007, Mrs Kellert commenced proceedings in the Local Court
     against Australian Beverage for breach of contract in relation to her dismissal:
     PASC, [7].

9    On 15 February 2008, the Local Court gave judgment in favour of Mrs Kellert in
     the sum of $11,819.94 plus interest, and also indicated that Mrs Kellert was to
     be awarded costs although the costs order was not finally made until 21 April
     2008: PASC, [9]-[11].

**The appeal proceedings**

10   On 17 March 2008, the solicitor filed, on behalf of Australian Beverage, a
     summons in the Supreme Court of New South Wales appealing the decision of
     the Local Court, the solicitor having certified, for the purposes of s 347 of the
     *Legal Profession Act 2004* (NSW), that there were reasonable grounds for
     believing that the appeal had reasonable prospects of success: PASC, [12]-
     [13].

11   On 24 September 2008, at the hearing of the appeal proceedings, Australian
     Beverage was granted leave to file an amended summons which replaced all
     previous grounds of appeal with new grounds, the solicitor having again
     certified that there were reasonable grounds for believing that Australian
     Beverage's appeal had reasonable prospects of success: PASC, [16]-[18].

12     On 29 October 2008, the Supreme Court dismissed Australian Beverage's appeal and ordered it to pay Mrs Kellert's costs of those proceedings as agreed or assessed: PASC, [19].

13     On 11 November 2008, Mrs Kellert caused a statutory demand seeking payment of $14,026.07, being the amount of the Local Court judgment in her favour plus interest to 4 November 2008, to be served on Australian Beverage pursuant to s 459E of the *Corporations Act 2001* (Cth): PASC, [25]-[26].

**The statutory demand proceedings**

14     On 27 November 2008, the solicitor filed or caused to be filed on behalf of Australian Beverage in the Supreme Court an originating process seeking to set aside the statutory demand, supported by an affidavit of Mr Brooks, that raised issues and allegations which it had propounded against Mrs Kellert in the Local Court proceedings or raised in the appeal proceedings: PASC, [27]-[29].

15     On 12 February 2009, before its application to set aside the statutory demand had been determined, and unbeknownst to Mrs Kellert, Australian Beverage's directors resolved to wind up Australian Beverage: PASC, [33].

16     On 16 February 2009, the originating process was dismissed with costs.

**The pleaded causes of action**

17     Against that background, Mrs Kellert pleads four claims against the solicitor in the new proceedings. They are:

18     First, Mrs Kellert alleges that, on 17 March 2008, when the solicitor filed and arranged for service of the summons commencing the appeal proceedings, he breached and/or disregarded the provisions of ss 345 and 347 of the *Legal Profession Act* and continued to disregard or to be in breach of those provisions: PASC, [21]. I shall refer to this as the first s 347, *Legal Profession Act* claim. It is based on the summons being reformulated shortly before the hearing of Australian Beverage's appeal.

19     Secondly, Mrs Kellert alleges that by commencing the statutory demand proceedings on behalf of Australian Beverage and thereafter, when he continued to act for Australian Beverage, the solicitor was in breach of ss 345

and 347 of the Legal Profession Act. I shall refer to this as the second s 347, *Legal Profession Act* claim: PASC, [36].

20    Thirdly, Mrs Kellert alleges that the solicitor breached s 99(1) of the *Civil Procedure Act 2005* (NSW) by certifying the summons commencing the appeal proceedings for the purposes of s 347 of the *Legal Profession Act*, and filing and arranging for service of that summons: PASC, [23]. I will refer to this as the first s 99(1), *Civil Procedure Act* claim. Mrs Kellert asserts that the solicitor was negligent, incompetent or guilty of misconduct in certifying that Australian Beverage's appeal had reasonable prospects of success.

21    Fourthly, Mrs Kellert alleges that the solicitor breached s 99(1) of the *Civil Procedure Act* when, on 27 November 2008, he commenced the statutory demand proceedings on behalf of Australian Beverage and, thereafter, when he continued to act in those proceedings. I will refer to this as the second s 99(1), *Civil Procedure Act* claim. Mrs Kellert alleges that, in so acting, the solicitor was negligent, incompetent or guilty of misconduct. In the particulars to this claim, Mrs Kellert further asserts that the solicitor caused Australian Beverage to rely on an issue or issues, which to his knowledge, it had abandoned before or during the Local Court proceedings and the appeal proceedings: PASC, [37].

22    Fifthly, Mrs Kellert alleges that the solicitor's actions in commencing the statutory demand proceedings were an abuse of process and designed to delay, defeat and/or deny her entitlement to the judgment awarded to her in the Local Court proceedings: PASC, [39]. I will refer to this as the tort of abuse of process claim.

**Relief sought**

23    Mrs Kellert seeks the following relief:

24    Firstly, pursuant to s 99 of the *Civil Procedure Act*, that she be indemnified by the solicitor with regards to the costs she incurred in the appeal proceedings and in the statutory demand proceedings.

25    Secondly, similar relief for an indemnity as to costs in relation to the proceedings mentioned above sought against the solicitor, pursuant to s 348 of the *Legal Profession Act*.

26    Finally, Mrs Kellert seeks an award for damages and wasted costs from the solicitor arising from his alleged abuse of court process.

**Notices of motion**

27    There are two notices of motion to be determined in the new proceedings, one by the solicitor filed 18 September 2014 seeking summary judgment, and the other by Mrs Kellert filed 3 February 2015 seeking orders that the solicitor produce specified documents for inspection (paragraph [3]), and leave be granted to file an amended statement of claim (paragraph [10]). Other orders sought in this notice of motion were not pressed. Paragraphs [11] and [12] relate to the second defendant and they have been stood over to a future date.

**Summary judgment**

28    The solicitor's notice of motion seeks orders summarily dismissing the proceedings against him, pursuant to rule 13.4 of the *Uniform Civil Procedure Rules 2005* (NSW) ("UCPR"), or striking out the statement of claim insofar as it pleads claims against him, pursuant to UCPR 14.28, together with orders for costs. The basis on which the solicitor seeks these orders is that the proceedings and the statement of claim do not disclose any reasonable cause of action against him.

29    For the purposes of his motion, the solicitor takes the allegations pleaded in the PASC against him at their highest. However, if the proceedings were to continue to trial, I accept that a number of those allegations would be vigorously disputed.

**The law**

30    UCPR 13.4(1) provides that the Court may dismiss proceedings generally, or in relation to any claim for relief, in three circumstances. These are, if the proceedings are frivolous or vexatious, if no reasonable cause of action is disclosed or if the proceedings are an abuse of the process of the court.

31    UCPR 14.28(1) provides that the Court may at any stage of the proceedings
      order that the whole or any part of a pleading be struck out if the pleading
      firstly, discloses no reasonable cause of action or defence or other case
      appropriate to the nature of the pleading, secondly, has a tendency to cause
      prejudice, embarrassment or delay in the proceedings, or thirdly, is otherwise
      an abuse of the process of the court.

32    UCPR 14.28(2) provides that the court may receive evidence on the hearing of
      an application for an order under subrule (1).

33    In *O'Brien v Bank of Western Australia Ltd* [2013] NSWCA 71 the Court of
      Appeal applied the High Court decision of *Spencer v Commonwealth* [2010]
      HCA 28; (2010) 241 CLR 118. In *Spencer* the High Court was concerned with s
      31A(2) of the *Federal Court Act 1976* (Cth) but the following principles are of
      general application (at [3] in *O'Brien*):

> "(a)   On a summary judgment application, the real issue is whether there is an
> underlying cause of action or defence, not simply whether one is pleaded (at
> [23]).
>
> (b)   The critical question can be expressed as whether there is more than a
> 'fanciful' prospect of success (at [25]) per French CJ and Gummow J) or
> whether the outcome is so certain that it would be an abuse of the process of
> the court to allow the action to go forward (at [54] in the judgment of the
> plurality). Demonstration of the outcome of the litigation is required, not an
> assessment of the prospect of its success.
>
> (c)   Powers to summarily terminate proceedings must be exercised with
> exceptional caution (at [55], French CJ and Gummow J at [24])."

34    See also *General Steel Industries Inc v Commissioner for Railways (NSW)*
      [1964] HCA 69; (1964) 112 CLR 125 at 129.

35    I shall discuss the statutory claims first, followed by the tort of abuse of process
      to ascertain whether or not the pleading discloses reasonable statutory claims
      and causes of action against the solicitor.

**The statutory claims in the PASC**

36    The relevant statutory provisions are ss 347 and 348 of the *Legal Profession
      Act* and s 99 of the *Civil Procedure Act*. They are as follows.

37    Sections 347 and 348 of the *Legal Profession Act* relevantly read:

> **"347   Restrictions on commencing proceedings without reasonable
> prospects of success**

(1)   The provision of legal services by a law practice without reasonable prospects of success does not constitute an offence but is capable of being unsatisfactory professional conduct or professional misconduct by a legal practitioner associate of the practice who is responsible for the provision of the service or by a principal of the practice.

(2)   A law practice cannot file court documentation on a claim or defence of a claim for damages unless a principal of the practice, or a legal practitioner associate responsible for the provision of the legal service concerned, certifies that there are reasonable grounds for believing on the basis of provable facts and a reasonably arguable view of the law that the claim or the defence (as appropriate) has reasonable prospects of success.

…

### 348   Costs order against law practice acting without reasonable prospects of success

(1)   If it appears to a court in which proceedings are taken on a claim for damages that a law practice has provided legal services to a party without reasonable prospects of success, the court may of its own motion or on the application of any party to the proceedings make either or both of the following orders in respect of the practice or of a legal practitioner associate of the practice responsible for providing the services:

(a)   an order directing the practice or associate to repay to the party to whom the services were provided the whole or any part of the costs that the party has been ordered to pay to any other party,

(b)   an order directing the practice or associate to indemnify any party other than the party to whom the services were provided against the whole or any part of the costs payable by the party indemnified.

(2)   The Supreme Court may on the application of any party to proceedings on a claim for damages make any order that the court in which proceedings on the claim are taken could make under this section.

(3)   An application for an order under this section cannot be made after a final determination has been made under this Part by a costs assessor of the costs payable as a result of an order made by the court in which the proceedings on the claim concerned were taken.

(4)   A law practice or legal practitioner associate of the practice is not entitled to demand, recover or accept from a client any part of the amount for which the practice or associate is directed to indemnify a party pursuant to an order under this section."

38      There are two claims made pursuant to s 99 of the *Civil Procedure Act*. Section 99 relevantly reads:

### "99   Liability of legal practitioner for unnecessary costs

(cf Act No 52 1970, section 76C; SCR Part 52A, rules 43 and 43A)

(1)   This section applies if it appears to the court that costs have been incurred:

(a)   by the serious neglect, serious incompetence or serious misconduct of a legal practitioner, or

(b)   improperly, or without reasonable cause, in circumstances for which a legal practitioner is responsible.

(2)   After giving the legal practitioner a reasonable opportunity to be heard, the court may do any one or more of the following:

(a)   it may, by order, disallow the whole or any part of the costs in the proceedings:

…

(ii)   in the case of a solicitor, as between the solicitor and the client,

(b)   it may, by order, direct the legal practitioner:

…

(ii)   in the case of a solicitor, to pay to the client the whole or any part of any costs that the client has been ordered to pay to any other person, whether or not the client has paid those costs,

(c)   it may, by order, direct the legal practitioner to indemnify any party (other than the client) against costs payable by that party.

…"

39   Senior counsel for the solicitor's main submission in relation to the statutory claims for costs is that the two s 347, *Legal Profession Act* claims should be made by way of notice of motion in the original proceedings. Notices of motion have been filed by Mrs Kellert in both the appeal and statutory demand proceedings.

40   As authority in support this proposition, he relied upon *Lemoto v Able Technical Pty Ltd* (2005) 63 NSWLR 300; [2005] NSWCA 153. In *Lemoto*, a solicitor sought leave to appeal from a costs order made by a District Court judge against a solicitor pursuant to s 198M of the *Legal Profession Act 1987* (NSW). The *Legal Profession Act 1987* was repealed by the *Legal Profession Act 2004* in order to adopt national model legal profession provisions. Section 198M is the predecessor of s 348 of the *Legal Profession Act 2004* and is in almost identical terms. In *Lemoto*, McColl JA under the heading "Procedural matters" at [143] and [145] stated:

"[143]   The primary judge noted, correctly, that there is no formal procedure for dealing with a s 198M application. In the absence of regulations to the *Legal Profession Act* or *District Court Rules* regulating the procedure to be adopted when an issue arises under s 198M, the procedure to be adopted was a matter for the judge: see *Brendon v Spiro* [1938] 1 KB 176 at 192, per Scott LJ; *Bahai v Rashidian* [1985] 1 WLR 1337. The procedure must be devised having regard to the principles of natural justice. It should be fair and "as simple and summary as fairness permits": *Ridehalgh* (at 238).

…

> [145]   Where the application is made by a party, it should be made by notice of motion supported by an affidavit: see *Sorridimi v Moro & Anor* [2004] NSWCA 168."

41    So far as the new proceedings are concerned, after hearing the submissions for the solicitor, counsel for Mrs Kellert submitted that he was not going to vigorously argue against the proposition that the applications under s 99 of the *Civil Procedure Act* and s 347 of the *Legal Profession Act* should not be determined by way of notice of motion in their original proceedings (T32.11-16).

42    It is an abuse of process to have sets of proceedings that seek the same relief, as I discussed in *Lloyd Foyster v ANZ Banking Group Ltd* (Supreme Court (NSW), 8 December 1997). In that judgment, I referred to *McHenry v Lewis* (1882) AC 397 and *Maple v David Syme & Co* [1974] 1 NSWLR 290. In *McHenry v Lewis*, a plaintiff attempted to sue a defendant for the same matter in two courts in England. Jessel MR at 400 said:

> "In this country, where the two actions are by the same man in Court governed by the same procedure, and where the judgments are followed by the same remedies, it is *prima facie* vexatious to bring two actions where one will do. And, indeed, this has been recognised, I believe, for ages by the practice of the old Court of Chancery, which always put a Plaintiff to his election by an order of course if he was suing for the same cause of action both at Law and in Equity."

43    In *Maple v David Syme & Co*, the plaintiff brought concurrent defamation proceedings in New South Wales and Victoria. Master Cantor held that the action in New South Wales should be stayed as being vexatious and an abuse of process of the Court. In argument, reference was made to *McHenry v Lewis*. The Master concluded that in light of the undoubted hardship to which the defendant would be subjected by having to defend himself in two courts, it seemed to be proper to stay the proceedings in New South Wales. There is force in this argument. Having concurrent proceedings on foot subjects the solicitor to additional costs and resources in meeting identical claims in a number of proceedings. Seeking the same orders in the notices of motion in the appeal proceedings and the statutory demand proceedings as in the new proceedings is an abuse of the process of the Court.

44    Applications in relation to s 348 orders should be made by way of notice of
      motion in the original proceedings. It follows that the same procedure should
      also be adopted in relation to costs applications pursuant to s 99 of the *Civil
      Procedure Act*.

45    It is my view that these applications for costs should be dealt with by the
      motions already filed in the appeal proceedings and the statutory demand
      proceedings. In the new proceedings, the costs claims pleaded in the PASC,
      so far as they relate to the solicitor, should be struck out and dismissed.

**Abuse of process**

46    The next issue in the new proceedings is whether the tort of abuse of process
      is maintainable against the solicitor who acted for a party in legal proceedings.

47    In *Williams v Spautz* [1992] HCA 34; (1992) 174 CLR 509 at 526-527, the High
      Court held that proceedings may be stayed as an abuse of process:

> "…when the purpose of bringing the proceedings is not to prosecute them to a
> conclusion but to use them as a means of obtaining some advantage for which
> they are not designed or some collateral advantage beyond what the law
> offers."

48    It is well established that a party alleging that proceedings are an abuse of
      process bears a heavy onus: see *Ballina Shire Council v Ringland* [1999]
      NSWSC 11, Hidden J at [47].

**Consideration of Leerdam v Noori**

49    Senior counsel for the solicitor drew this Court's attention to the Court of
      Appeal's decision in *Leerdam v Noori & Ors* (2009) ALJR 553; [2009] NSWCA
      90 per Spigelman CJ (with whom Allsop P and MacFarlan JA agreed) which he
      submitted is fatal to Mrs Kellert's pleaded cause of action of abuse of process.

50    In *Leerdam*, the brief facts are that Noori sought a protection visa under the
      *Migration Act 1958 (Cth)* upon his arrival from Afghanistan in 1999. The
      Minister for Immigration and Multicultural and Indigenous Affairs ("the Minister")
      refused to issue a visa. Noori sought review of that decision in the
      Administrative Appeal Tribunal ("the AAT"). Leerdam acted as the Minister's
      solicitor for the AAT hearing. The AAT affirmed the Minister's decision. Noori
      contended that Leerdam did not provide any or sufficient particulars at the
      AAT. The Full Court of the Federal Court held that Noori had been denied

procedural fairness. After a rehearing in the AAT, Noori was issued a protection visa and was also released from immigration detention. Noori commenced proceedings in the Supreme Court alleging that Leerdam, Sparke Helmore Lawyers (being vicariously liable for the actions of Leerdam) and the Minister, by their conduct in connection with the first AAT proceeding, committed the torts of misfeasance in public office and collateral abuse of process, rendering them liable in damages. Leerdam and Sparke Helmore Lawyers sought leave to appeal from the decision of the primary judge declining to summarily dismiss or strike out the claims against them. Leave to appeal was granted and the appeal was allowed.

51      In *Leerdam*, Spigelman CJ dealt with the issue of abuse of process. At [29] to [32], [35] to [40] and [44] Spigelman CJ stated:

> "[29]   The principal submission advanced on the part of appellants on the collateral abuse of process issue was the proposition that the tort can only be committed by a party to proceedings. The tort cannot, the appellants submitted, be committed by a legal representative of the party. It was common ground that there was no case which extended liability for this tort beyond a party in Australia, or in other common law nations in which the tort has developed such as New Zealand, Canada or England. There were, however, cases in the United States of America which did so.
>
> [30]   On one view it could be said that, because there was no authority of the relevant character, it would not be appropriate to decide the matter on a strike out basis. However, alternatively, it may well be that the reason there is no relevant case law is precisely because the conclusion is obvious.
>
> [31]   It is necessary to distinguish the tort from the broader based concept of 'abuse of process' which arises in the context of stay applications or assertions of miscarriage of justice. (See most recently *PNJ v The Queen* [2009] HCA 6; (2009) 83 ALJR 384 at [3].) Although cases on the tort may inform the broader concept (see *Williams v Spautz* [1992] HCA 34; (1992) 174 CLR 509 at 522-523), the reverse does not necessarily work.
>
> [32]   Significantly for present purposes, the issue has been considered and determined by the Full Federal Court in *Emanuele v Hedley* (Federal Court of Australia, 19 June 1998, unreported). In a joint judgment Wilcox, Myles and Nicholson JJ said: '… It seems clear that … an action for abuse of process is available only against the party who actually instituted the proceedings: See *Williams v Spautz* … This is logical because the essence of the tort is that the proceeding was instituted for an improper purpose. If the person who actually instituted the proceeding had a proper purpose, the claim of an abuse of process must fail irrespective of the motives and conduct of people who enforce the decision to institute the proceedings. No doubt a person may act through a servant or agent in instituting a proceeding, in which case the purpose of the principal will be the relevant purpose.'
>
> …

[35]  The passages in *Williams v Spautz*... to which their Honours referred in *Emanuele v Hedley* supra were:

> •  'Central to the tort of abuse of process is the requirement that the party who has instituted proceedings has done so for a purpose or to effect an object beyond that which the legal process offers' (at 523).
>
> •  ' ... This Court has regarded the purpose of the party instituting the proceedings as of crucial importance' (at 524).
>
> •  See also the references to 'the purpose in bringing proceedings' (at 526).

[36]  This and other relevant authorities all focus on the conduct of a party, generally the plaintiff. This Court has accepted that a defendant can commit the tort. (See *Hamer-Mathew v Gulabrai (No 2)* (1994) 35 NSWLR 92 and on appeal *Gulabrai v Hamer-Mathew* (New South Wales Court of Appeal, 26 June 1997, unreported). See, however, R P Balkin and J L Davis *Law of Torts* (3rd ed) (2004), Butterworths Australia at [25.24].)

[37]  The history of the tort of collateral abuse of process was discussed by Priestley JA in *Spautz v Gibbs* (1990) 21 NSWLR 230 at pp 270-280 and by Clarke JA in *Hanrahan v Ainsworth* (1990) 22 NSWLR 73 at 115-120. It is pertinent to note that their Honours made reference to the leading American text *Prosser and Keeton on the Law of Torts*, then in its 5th edition, and to United States case law.

[38]  It is sufficient for present purposes to state that the matter has been determined by an intermediate court of appeal in *Emanuele v Hedley*, although the United States authorities, upon which the first respondent relied in this Court, were not considered by the Full Federal Court.

[39]  The proposition for which the first respondent contends involves a significant expansion of the tort into spheres of conduct that are otherwise regulated, particularly by professional ethical standards. Issues of coherence of the law arise, which have not been fully agitated in this Court.

[40]  I am not prepared, in the absence of any authority from jurisdictions that are directly appropriate in the Australian context, to determine that the decision of the Full Federal Court is clearly wrong. (See *Farah Constructions Pty Ltd v Say-Dee Pty Ltd* [2007] HCA 22; (2007) 230 CLR 89 at [135].) In my opinion, it is not clearly wrong.

...

[44]  As I am of the opinion that *Emanuele v Hedley* is not clearly wrong, both the trial judge and this Court would follow it. The contingency of a special leave application is not sufficient to refuse to apply the strike out test."

52    On 2 November 2009, the High Court dismissed Leerdam's special leave application.

53    Mrs Kellert submitted that the conduct of the solicitor, in taking steps to proceed with the application to set aside the statutory demand may, after examination of relevant records and documents of Australian Beverage Distributors, amount to an abuse of process.

54    *Leerdam* establishes that the tort of collateral abuse of process can only be
      committed by a **party** to the proceedings. *Leerdam* is clear authority that the
      cause of action for the tort of collateral abuse of process cannot be brought
      against a party's solicitor. This claim is doomed to fail and should be
      dismissed.

55    Counsel for Mrs Kellert submitted that I should not strike out the PASC for a set
      period of time in order to give them time to see if they can obtain the files from
      Australian Beverage, which would include the solicitor's advice from ASIC, the
      appropriate authority. Counsel for Mrs Kellert submitted that if they did not
      obtain the files after a period of 30 or 42 days the PASC could be guillotined as
      against the solicitor (T34.19-21).

56    The basis for this submission was that something may come to light if ASIC
      consented to waiving legal professional privilege over the documents of
      Australian Beverage and those documents produced and examined by Mrs
      Kellert's solicitor. Accordingly, at this stage, although I am of the view that the
      PASC is doomed to fail, I will first deal with Mrs Kellert's application for
      production of documents, because it may change this position.

**Application for production of the files of Australian Beverage Distributors**

57    Mrs Kellert seeks (in her notice of motion at [3]) an order that the solicitor
      produce to her the following documents for inspection:

      "3(a)  All correspondence (of whatever type and nature emanating from
      Catalyst Legal Pty Ltd ACN 109 948 692 (Catalyst Legal) or the First
      Defendant

      (b)  All correspondence from Australian Beverage Distributors and or any of
      its officers and/or directors to Catalyst Legal and/or the First Defendant

      (c)  All briefs to counsel prepared by Catalyst Legal or by the First Defendant

      (d)  All advices from counsel

      (e)  All memoranda and notations and/or records of attendances on any party
      in relation to the First Defendant's conduct of the followers matters:

            (i)  Local Court proceedings No 2007/2357 (Susan Melinda Kellert v
            Australian Beverage Distributors

            (ii)  Supreme Court proceedings No 2008/289756 (Australian
            Beverage Distributors v Susan Melinda Kellert)

            (iii)  Supreme Court proceedings No 2008/281722 (Australian
            Beverage Distributors v Susan Melinda Kellert)."

58    These documents are currently in the physical possession of the solicitor. On
      15 November 2009, Australian Beverage was deregistered pursuant to s
      601AB of the *Corporations Act*.

59    On 18 May 2015, subsequent to the hearing and after this judgment was
      reserved, Mrs Kellert's solicitor, Mr Harrison, wrote to ASIC to ascertain its
      position on this issue of client legal privilege. ASIC was advised that Mrs Kellert
      was seeking production of the solicitor's files relating to the appeal proceedings
      and the statutory demand proceedings. Mr Harrison requested ASIC to advise
      of its position and indicate if there was any objection on its part to the
      production of these documents and if so, the nature of that objection.

60    On 27 May 2015, Ms Denise Kelly, Analyst Property Law Group of ASIC wrote
      to Mrs Kellert's solicitors in the following terms:

> "...
>
> **Effect of deregistration**
>
> I confirm the company was deregistered on 15 November 2009 under s 601AB
> of the *Corporations Act 2001* (the Act). As a result of deregistration:
>
> a)   all property the company held on trust at deregistration belongs to the
> Commonwealth
>
> b)   all non-trust property the company owned at deregistration belongs to
> ASIC
>
> c)   ASIC is generally the only party legally able to deal with the property of the
> company.
>
> **ASIC's policy regarding books and records generally**
>
> ASIC does not take possession of a deregistered company's books. Nor does
> it grant access to a deregistered company's books in another party's
> possession. This is because:
>
> a)   while ASIC may be vested with a company's books due to deregistration, it
> has no specific knowledge of their existence and the circumstances
> surrounding their creation
>
> b)   the documents may be the subject of legal professional privilege and it is
> not appropriate for ASIC to determine whether or not the nature of those
> documents is such as to attract the privilege
>
> (c)   it is ASIC's policy to neither assert nor waive privilege on behalf of
> deregistered companies
>
> d)   other remedies are available and more appropriate z(eg service of a
> subpoena on the party in actual possession of the documents and/or
> reinstatement of a deregistered company).
>
> e)   Finally, ASIC does not object to parties seeking a court order that:

        i.  the documents sought do not attract legal professional privilege

        ii.  the party in possession produce the documents to the applicant."

61     Hence, ASIC is the only party legally able to deal with the property of Australian Beverage. From the schedule reproduced earlier, most if not nearly all of the documents sought by Mrs Kellert are the subject of client legal privilege. ASIC's policy is to neither assert or waive privilege on behalf of the deregistered Australian Beverage. In other words, ASIC does not waive privilege, but rather takes a neutral position. However, ASIC does not object to Mrs Kellert seeking from this Court an order that the solicitor produce the documents to her.

62     Mrs Kellert says that in these circumstances, it is now open to the Court to determine if production should be ordered and whether the circumstances are such that it is in the interests of justice to make such an order.

63     Counsel for Mrs Kellert argued that the documents in Australian Beverage's legal files ought to be produced because they are relevant to the facts in issue. In support of this proposition he referred to *New Cap Reinsurance Corporation Ltd (in liq) v Daya* [2008] NSWSC 763, where Austin J considered the question of what a "fact is in issue" citing *British American Tobacco (Australia) Ltd v Peter Gordon* [2006] NSWSC 1473, where Brereton J stated that a fact is in issue if it is in the field of contest between the parties.

64     Mrs Kellert says that each of the court documents filed by Australian Beverage were verified by the solicitor. According to Mrs Kellert, the material to be produced from the solicitor's files forms the basis for the actions involving the conduct of the solicitor, who conducted the three matters for Australian Beverage. She says that the material and correspondence contained in the solicitor's files will demonstrate what transpired and goes to the facts in issue.

65     The solicitor submitted that if the documents had some potential relevance to an issue in the proceedings, that would not warrant an order that they be produced if they are privileged. Further, according to senior counsel for the solicitor, the relevance of the documents is said to be that they go to the special costs orders claimed in the current statement of claim.

66    I am of the view that the PASC, as it stands, is doomed to fail, and the special
      costs orders should be sought in the other two proceedings. Even if I take a
      wider view and assume these documents are relevant to the special costs
      orders, the solicitor's files are the subject of client professional privilege.

67    The solicitor is the legal practitioner to whom the privileged communications
      had been made by Australian Beverage. While the privilege is not his, neither
      is it for him to waive it. Absent instructions from his client, he is not entitled to
      disclose any privileged communications: see *Grant v Downs* (1976) 11 ALR
      577; (1976) 135 CLR 674 at 686.

68    In *Lake Cumbeline Pty Ltd v Effem Foods Pty Ltd (t/as Uncle Ben's Australia)*
      (1994) 126 ALR 58 at 64, Tamberlin J pointed out that there is little or no direct
      authority as to what happens to a claim for client legal privilege after dissolution
      of a company. His Honour referred to *Attorney-General (NT) v Maurice* (1986)
      161 CLR 475; 69 ALR 31 at 40-41 where Deane J said this of legal
      professional privilege:

            "…[It] is a substantive general principle of the common law and not a mere rule
            of evidence that, subject to defined qualifications and exceptions, a person is
            entitled to preserve the confidentiality of confidential statements and other
            materials which have been made or brought into existence for the sole
            purpose of his or her seeking or being furnished with legal advice by a
            practicing lawyer or for the sole purpose of preparing for existing or
            contemplated judicial or quasi-judicial proceedings …

            Indeed, the plain basis of the decision of the majority of this court in *Baker v
            Campbell* [(1983) 153 CLR 52 ; 49 ALR 385] was the acceptance of the
            principle as a fundamental principle of our judicial system … Like other
            traditional common law rights, it is not to be abolished or cut down otherwise
            than by clear statutory provision. Nor should it be narrowly constructed or
            artificially confined."

69    In *Lake Cumbeline*, Tamberlin J continued at 65, that on the assumption that
      the documents attracted legal professional privilege:

            "… Therefore, in my view, as at the date of dissolution of Trawl, the documents
            were privileged and the privilege was that of Trawl and that privilege subsists
            until it is waived by a person or entity competent and able to waive.

            Under the provisions of the Corporations Law this privilege passed to the
            Commission which is the successor to Trawl in respect of claims relating to the
            documents. The Commission has decided not to assert or waive the privilege.

            In my opinion, once it is established that the documents are privileged then the
            privilege is not lost unless there is a waiver express or implied by the person
            entitled for the time being to that privilege. In the present case it is clear that

> Trawl has not waived the privilege. It is also clear in the letter from the Commission that the Commission has not waived the privilege nor does it intend to. Furthermore, the applicants in the present proceedings cannot waive the privilege because it is not their privilege. It is that of Trawl. Accordingly, nothing which they do or have done or which they say can have the effect of waiving the privilege that was originally vested in Trawl and now vests in the Commission.
>
> I do not think that the right of confidentiality and privilege which the principle embodies has been lost as a result of the circumstance that Trawl has been dissolved. Indeed, in my opinion the right has survived and has passed to the Commission."

70    In *Lake Cumbeline*, Tamberlin J concluded that the privilege had not been lost as a result of the dissolution of the company and declined Uncle Ben's Australia's permission to inspect the documents.

71    Similarly, in *Swaab v Commissioner of the NSW Police Service* [2005] NSWSC 901, Hidden J answered the question as to whether privilege can survive deregistration. His Honour at [16] was not persuaded that deregistration extinguishes the privilege and, adopted the reasoning of Tamberlin J in *Lake Cumbeline*, where his Honour considered that there were circumstances in which privilege can still be asserted.

72    The reason Tamberlin J upheld the claim for the company's legal professional privilege after it had been deregistered in *Lake Cumbeline* is that, "like other traditional common law rights [legal professional privilege] is not to be abolished or cut down otherwise than by clear statutory provision. Nor should it be be narrowly constructed or artificially confined" (at [65] citing Deane J in *Maurice* at 41).

73    I adopt the reasoning of Tamberlin J in *Lake Cumbeline* and Hidden J in *Swaab*. Client legal privilege involves confidential communications between solicitor and client. The client legal privilege of Australian Beverage has not been extinguished by its deregistration, nor has it been waived by any person or legal entity competent to do so. For these reasons, I decline to make an order that the solicitor produce the documents referred to in paragraph [3] of Mrs Kellert's notice of motion filed 3 February 2015 in the new proceedings.

74    Since the claim for client legal privilege in relation to Australian Beverage's solicitor's files has been upheld, no new information has come to light which

would change my position regarding the PASC. In my view, it is doomed to fail insofar as it relates to the solicitor, the first defendant.

75    The result is that proceedings 2014/75345 as against the first defendant are dismissed.

76    So far as paragraph [10] of Mrs Kellert's notice of motion seeking an order that she be granted leave to file an amended statement of claim is concerned, I am of the view that the PASC, as it relates to the solicitor, is doomed to fail, there is no utility in making this order.

**(2)   The appeal proceedings (2008/289756) and the statutory demand proceedings (2008/281722)**

77    In the appeal proceedings and the statutory demand proceedings, the plaintiff is Australian Beverage and the defendant is Mrs Kellert.

78    As previously stated, in these proceedings Mrs Kellert has already filed almost identical but case specific notices of motion.

79    In the statutory demand proceedings, Mrs Kellert seeks by way of notice of motion filed 3 February 2015 the following orders:

> "1.   An order that pursuant to Section 14 of the *Civil Procedure Act 2005* the Court dispense with any rules of the Court.
>
> 2.   An order pursuant to Rule 28.5 of the *Uniform Civil Procedure Rules 2005* that these proceedings be consolidated with proceedings numbered 2008/281722 and 2014/75345.
>
> 3.   An order that this motion be heard together with any motions and or other proceedings to be heard in proceedings 2008/281722 and 2014/75345.
>
> 4.   An order pursuant to Section 98(1)(b) of the *Civil Procedure Act 2005* that Anthony Stuart Foate pay or indemnify the defendant, Susan Melinda Kellert for legal costs which she incurred in proceedings 2008/281722.
>
> 5.   In the alternative to 4 above, an order pursuant to Section 99(2)(c) of the *Civil Procedure Act 2005* that Anthony Stuart Foate indemnify the defendant, Susan Melinda Kellert for legal costs which she incurred in proceedings 2008/281722.
>
> 6.   In the alternative to 4 and 5 above, an order pursuant to Section 348(1)(b) of the *Legal Profession Act 2004* that Catalyst Legal Pty Ltd ACN 109 948 692 and/or Anthony Stuart Foate indemnify the defendant, Susan Melinda Kellert for legal costs which she incurred in Supreme Court proceedings 2008/289756.
>
> 7.   An order that the defendant be granted any necessary extension of time for the hearing of this motion.

8.   An order that the respondents pay the costs of this motion."

80   In the appeal proceedings, by way of notice of motion filed 3 February 2015, Mrs Kellert seeks the same orders as in the statutory demand proceedings.

81   The orders concerning the costs claims in these proceedings are to be stood over for directions before the Registrar. Accordingly, the final issue for determination is that of consolidation. In each of the three proceedings, Mrs Kellert seeks this order.

**Consolidation**

82   UCPR 28.5 deals with consolidation. It reads:

> "**28.5   Consolidation etc of proceedings**
>
> (cf SCR Part 31, rule 7; DCR Part 12, rule 7)
>
> If several proceedings are pending in the court and it appears to the court:
>
> (a)   that they involve a common question, or
>
> (b)   that the rights to relief claimed in them are in respect of, or arise out of, the same transaction or series of transactions, or
>
> (c)   that for some other reason it is desirable to make an order under this rule, the court may order those proceedings to be consolidated, or to be tried at the same time or one immediately after another, or may order any of them to be stayed until after the determination of any other of them.
>
> …"

83   Mrs Kellert submitted that UCPR 28.5 is not limited in any specific way. There is no principle requiring it or any limitation on when it may be exercised: see *A Goninan & Co v Atlas Steels* [2003] NSWSC 956.

84   As there are notices of motion on foot in each of the statutory demand and appeal proceedings, there is no utility in consolidating the proceedings. However, I will make an order that Mrs Kellert's notices of motion in the appeal proceedings and the statutory demand proceedings be heard together.

**Conclusion**

85   Proceedings 2014/75345 as against the first defendant are dismissed. Proceedings 2008/289756 and 2008/281722 are listed for directions before the Registrar.

86   Costs are discretionary. Costs follow the event. The plaintiff is to pay the first defendant's costs on an ordinary basis as agreed or assessed.

**The Court orders that:**

In proceedings 2014/75345:

(1)   I decline to make an order as sought in paragraph [3] of the plaintiff's notice of motion filed 3 February 2015.

(2)   The proceedings are dismissed as against the first defendant.

(3)   The statement of claim, so far as it relates to the second defendant, is stood over for directions before the Registrar at 9.00 am on 31 July 2015.

(4)   The plaintiff is to pay the first defendant's costs of the proceedings on an ordinary basis as agreed or assessed.

**The Court further orders that:**

In proceedings 2008/289756 and 2008/281722:

(1)   The notices of motion filed 3 February 2015 are listed for directions before the Registrar at 9.00 am on 31 July 2015.

(2)   I decline to make the consolidation order in paragraph [2] of the notices of motion filed 3 February 2015.

(3)   Costs are reserved.

\*\*\*\*\*\*\*\*\*\*

4.

# Exhibit D

NEW SOUTH WALES SUPREME COURT

CITATION:   Fletcher v Davidson [2007]  NSWSC 68


JURISDICTION:     Common Law Division
Professional Negligence List

FILE NUMBER(S):  20279/06

HEARING DATE{S):     2 February 2007

JUDGMENT DATE:     13 February 2007

 PARTIES:
Stephen Charles Fletcher (Plaintiff)
Mark Davidson (t/as Davidsons Solicitors)

JUDGMENT OF:     Studdert J

LOWER COURT JURISDICTION:     Not Applicable

 LOWER COURT FILE NUMBER(S):     Not Applicable

LOWER COURT JUDICIAL OFFICER:  Not Applicable


COUNSEL:
P. Menadue (Plaintiff)
J. Downing (Defendant)

SOLICITORS:
A.J. Law Solicitors (Plaintiff)
Middletons Lawyers (Defendant)


CATCHWORDS:


LEGISLATION CITED:
Uniform Civil Procedure Rules, Pt 21, r 21
Civil Procedure Act, s 14

CASES CITED:
Guinness Peat Limited v Fitzroy Robinson (1987) 1 WLR 1027
Kang v Kwan & Ors [201] NSWSC 698
Lake Cumberline Pty Limited v Effem Foods Pty Limited (1994) 126 ALR 58
Seven Network Limited v News Limited [2005] FCA 142
Swaab v Commissioner of New South Wales Police Service [2005] NSWSC 901

DECISION:
1.  Order that the defendant, within twenty-eight days, serve upon the plaintiff a further list of documents in which in Pt 1B(i) the defendant identifies those documents in respect of which there appears to be an entitlement to claim privilege.
2.  Order that the supporting affidavit of the defendant states in respect of any document concerning which there appears to be an entitlement to make the claim for privilege the facts relied on as supporting the apparent entitlement.  3. On the defendant's notice of motion, the requirements of r 21.3 and r 21.4 are varied to the extent I have indicated but the defendant's notice of motion is otherwise stood over generally with liberty to restore on three days notice.  4. Order that the defendant pay the plaintiff's costs of the plaintiff's notice of motion.


JUDGMENT:


**IN THE SUPREME COURT**
**OF NEW SOUTH WALES**
**COMMON LAW DIVISION**
**PROFESSIONAL NEGLIGENCE LIST**


**STUDDERT J**


**Tuesday 13 February 2007**


**20279/06      STEPHEN CHARLES FLETCHER   v   MARK DAVIDSON (t/as**
**DAVIDSONS SOLICITORS)**


**JUDGMENT**


1      **HIS HONOUR:**  There are presently two notices of motion before the Court, one filed by each party.


**The plaintiff's motion**


2      The plaintiff seeks an order that the defendant be required to serve a further and better list of documents in which privilege is claimed only in respect of documents both in the first and second list for which there is a valid claim.  In the alternative, the plaintiff seeks an order that the defendant make available to the plaintiff all documents that are listed in Pt 1B(i) of the first and second lists.


**The defendant's motion**


3      The defendant seeks an order that it be excused from strict compliance with Pt 21 r 21.3 of the **Uniform Civil Procedure Rules.**


**The nature of the cause**

4       At the outset it is desirable that the nature of the cause and the issues be summarised.

5       The defendant is a solicitor who acted for the plaintiff at a time when the plaintiff lent money to a Mr
Donald-Oates (the borrower).  It is alleged that the defendant breached his duties both in contract and in tort in
failing properly to advise the plaintiff about the risks of the transaction including the possible inadequacy of an
unregistered mortgage offered by way of security.  It is also alleged that the defendant breached his fiduciary
duty, putting himself in a position of possible conflict in a situation where he acted not only for the plaintiff but
for the borrower.  The borrower defaulted in making repayment of the loan and the amount claimed in the
statement of claim is in excess of $1 million.  The borrower was made bankrupt on 15 November 2005.

6       In short, the defendant denies liability to the plaintiff.

**The discovery process thus far**

7       Consent orders as to discovery filed on 19 June 2006 provided that the parties nominate categories of
documents for discovery by 10 July 2006 and that they serve verified lists of documents by 24 July 2006.  The
defendant, on 25 September 2006, verified a list of documents, affirming that the documents in Pt 1A and 1B of
the list were within his possession.  In paras 5 and 6 the issue of privilege was raised concerning those
documents referred to in Pt 1B.  No issue here arises as to the claim for privilege raised in para 6 of the affidavit
of discovery, which paragraph refers to the documents listed in Pt 1B(ii) and Pt 1B(iii).  However, in para 5 of
the affidavit the issue of privilege is raised in relation to the documents in Pt 1B(i), and it is affirmed that the
documents there listed "*may be privileged from production on the grounds set out in that part*".

8       Turning to "that part", the following is stated:

> "**B. Documents where privilege may be or is claimed**
>
> (i) Client Legal Privilege or some other privilege may be claimed by Cameron Donald-Oates
> or another person over the following documents and parts of documents pursuant to Division
> 1 of Part 3.10 of the *Evidence Act 1995.*"

9       A claim for privilege was similarly expressed in the defendant's second list of documents (exhibited to
the affidavit of Toby Colin Blyth and appearing at p 104 of the exhibit).

10      The plaintiff here submits that the defendant has failed to satisfy his obligations as to discovery in the
affidavit and lists described above.  The defendant resists the claim for the relief sought by the plaintiff.  It is
contended on his behalf that he has done what is required of him.  Alternatively, if there has been a failure to
comply with the rules, he seeks to be excused from further compliance, and hence his notice of motion seeking
an order pursuant to s 14 of the **Civil Procedure Act.**

**The competing submissions**

11      Mr Menadue, appearing for the plaintiff, submitted that there has been a failure to comply with the
requirements of Pt 21 r 21.3.  This provision requires that the defendant's list of documents "must identify any
document that is claimed to be a privileged document, and specify the circumstances under which the privilege
is claimed to arise."  Mr Menadue submitted also that the defendant's supporting affidavit is deficient and that r
21.4 has not been satisfied.  Hence, in para 5 the defendant does no more than to affirm that the documents
referred to may be privileged on the grounds set out in Pt 1B(i) and, going to that part of the list, what is stated
is that privilege may be claimed by (the borrower) or another person over the documents that are then listed.

There has been no specific assertion of a claim of privilege and there has been no attempt to state the circumstances under which the privilege is claimed to arise.

12      For his part, Mr Downing, on behalf of the defendant, has submitted that there has been compliance by the defendant with his obligations in that he has done the best he can do.  The documents identified in the list in relation to which privilege is expressed in the manner set out above are documents concerning which the defendant has no claim of privilege.  Any claim would be the claim of the borrower or one of the other persons in whom in the circumstances the right to claim may arise and may be asserted.

13      The obligation as to discovery arises concerning documents taken to be relevant to a fact in issue as defined in Pt 21 r 21.1(2).  These motions have proceeded upon the basis that the documents are to be taken to be relevant to a fact in issue.  The documents in the list are described in general terms, but it is to be inferred that they came into existence or into the possession of the defendant whilst he was acting for the borrower and associated companies.  There is an affidavit sworn by the defendant on 8 November 2006 which evidences that the defendant started to act for the borrower in 1998 and thereafter he acted for associated companies as well.  He acted for the borrower in relation to an advertising business in which he was involved and later he acted for him in respect of property development.  Then, in June 2003, the defendant commenced to act for the borrower in connection with the acquisition and sale of properties.  It is to be noted that the loan transaction was in December 2003.

14      The defendant through his solicitors has written to the borrower care of his trustee in bankruptcy seeking to be advised whether the borrower makes a claim for privilege concerning any of the documents in Pt 1B(i).  A similar letter has been written to other persons and companies identified in the material exhibited to Mr Blyth's affidavit.  Some seventeen companies, apparently associated with the borrower company, are identified in a letter written by the defendant's solicitors to the plaintiff's solicitors on 2 November 2006.  Thus far there has been a lack of response from the various addressees.

15      As I indicated in the course of submissions, I do not consider that the defendant has complied with the requirements of Pt 21 r 21.3(2)(d).  Hence I afforded to the defendant the opportunity to seek the relief now sought pursuant to s 14 of the **Civil Procedure Act**.  In determining what orders it is appropriate to make on the notices of motion before the Court, it is necessary that there be due regard to relevant matters of principle which I will now record.

### Relevant matters of principle

16      1.      There is a requirement that a list of documents for discovery purposes be prepared after careful and thorough search and inquiry and the deponent to the affidavit supporting the list must pay strict regard to Pt 21 r 21.4(2) of the **Uniform Civil Procedure Rules** and the responsibility which is involved in making the supporting affidavit.  Rule 21.4 requires the maker of the affidavit depose to having made "reasonable inquiries" as to the existence and location of the documents listed.

        2.      The solicitor for the maker of the affidavit must be alert to the issue of privilege when the list of documents is being prepared, and claim privilege on behalf of his clients when appropriate, unless the privilege is waived.

        3.      It follows that the solicitor must ensure that only documents not attracting privilege are disclosed by the discovery process.  Thus, in Guinness Peat Limited v Fitzroy Robinson (1987) 1 WLR 1027 Slade LJ, with whom the other members of the Court of Appeal agreed, said at 1045:

"...the party giving discovery...should ensure that only documents in respect of which no claim of privilege is made should be disclosed."

See, generally, Riley, Solicitors' Manual at 10,025 as to the lawyer's responsibility in relation to privilege.

4.   As to waiver of privilege, it is, of course, the privilege of the client, not his solicitor, and it is for the client to determine whether to maintain or waive privilege.  I refer to the statement of principle in Kang v Kwan [2001] NSWSC 698 where Santow J said:

> "It must be remembered that the privilege is that of the client. Neither solicitor nor an intermediary (who is the agent of either the client or the solicitor) can without the client's authority either consent to the material being adduced or, again without instructions, abandon that obligation that goes with a solicitor's retainer, to maintain the privilege. The powers and duties of the solicitor and the agent are not affected by the termination of the solicitor-client relationship or the agency; see *Attorney General (NT) v Maurice* (1986) 65 ALR 230 at 235 per Woodward J.
>
> 30     It is not enough that the solicitor refrain from disclosing a privileged communication. It is well-settled that if he or she does disclose, that solicitor may be liable to the client for damages for breach of duty; see "Cross on Evidence" (Butterworths) 4th ed by D Byrne and J D Heydon at 707. The lawyer's duty goes further than this. It is to do that lawyer's best to ensure that a valid claim for privilege is not lost; see *Rosenberg v Jaine* [1983] NZLR 1 at 7 per Davison CJ; *Commissioner of Taxation (Cth) v Citibank Ltd* (1989) 85 ALR 588 at 596 per Bowen CJ and Fisher J; *State Drug Crime Commission v Larsson* (1991) 53 A Crim R 131 at 134 per Newman J; *Commissioner of Australian Federal Police v Propend Finance Pty Ltd* (1997) 91 A Crim R 451 at 522 per Kirby J. Cf *Tuckiar v The King* (1934) 52 CLR 335 at 346 per Gavan Duffy CJ, Dixon, Evatt and McTiernan JJ."

5.   Where privilege is claimed, the making of the claim should follow a thoughtful and responsible assessment as to whether the claim is attracted to the document in question.  Mr Menadue referred in submissions to Seven Network Limited v News Limited [2005] FCA 142 where Tamberlin J referred with apparent approval to the submissions of counsel in that case:

> "The obligation of a person verifying a list of documents in respect of which legal professional privilege is claimed is to consider the documents and make a careful and reliable evaluation of whether it is proper to make the claim."

In my opinion, the obligation of a claimant was appropriately expressed in the above cited passage.

6.   Since it is the client's privilege and it is for the client to determine whether that privilege is to be waived, it follows that the privilege continues until waived by the person entitled to assert the privilege at the relevant time.  Counsel referred to Lake Cumberline Pty Limited v Effem

Foods Pty Limited (1994) 126 ALR 58 (see in particular the judgment of Tamberlin J at 65[30]) and Swaab v Commissioner of New South Wales Police Service [2005] NSWSC 901. These decisions support the proposition I have stated.

17      The requirements of Pt 21 r 21.3 and the requirements of Pt 21 r 21.4 concerning the affidavit supporting the list of documents are entirely consistent with the principles I have stated above and the need to assert the claim of privilege and the circumstances under which the privilege is claimed to arise are to be seen with the above principles in mind.

18      The documents presently filed by the defendant do not address in a satisfactory form the requirements of r 21.3 and the affidavit in support does not satisfactorily address the requirements of r 21.4 either. The facts relied on as establishing the possible existence of privilege are not stated.

19      Ought the Court dispense with the requirement of the rules identified in the circumstances of this case? This brings me to the defendant's application under s 14 of the **Civil Procedure Act**. The section affords the mechanism for some relaxation of the requirements of any rule of court where the need for this becomes evident. However, the purpose behind the rule under consideration should not be ignored and any relaxation of its requirements should only be to the extent necessary to meet the circumstances under consideration.

20      In the present case the defendant does not know whether those whose privilege may fall to be considered would wish to maintain or waive the privilege. Strictly speaking, where a document attracts privilege the privilege remains until waived and the defendant cannot waive privilege on his own initiative. On the other hand, the defendant is not in a position to positively assert that a claim for privilege is being maintained. It does not appear that the defendant is equipped with knowledge as to whether any person entitled to claim privilege has any interest in maintaining it.

21      It seems to me that the defendant's circumstances call for some relaxation of the requirements of the relevant rules. The defendant ought to be permitted, having evaluated the relevant material, to state in his affidavit that the documents as to which he forms such a judgment "appear to be documents to which privilege attaches". The defendant must, however, state the facts relied upon as establishing the existence of the privilege. The defendant may state, where appropriate, that he is not aware whether the person entitled to maintain the claim to privilege seeks to maintain or waive that claim.

22      I am not persuaded, however, that any further relaxation of the requirements of the discovery rules is necessary in the present circumstances. The defendant ought not to be permitted to rely upon the documents presently filed without further attention to r 21.3 and to r 21.4. It is necessary that there be due consideration of the documents in Sch 1B(i) to see whether a claim for privilege is properly maintainable and if such be the case then the circumstances in which that claim is made should be specified. The documents to be considered are, after all, in the defendant's possession, and presumably came into his possession in the course of his activities as a solicitor. The defendant ought to be able to form a judgment as to whether documents appear to be documents to which privilege attaches and to complete his affidavit accordingly. If, having considered the affidavit and what is stated in it, the plaintiff wishes to challenge a privilege claim in respect of any particular document(s), then the court can consider the issue arising and the person whose claim for privilege it is could be given the opportunity to be heard if need be.

23      It may be that the need may emerge for further relaxation of the requirements of the rules after the defendant addresses the task set, and for this reason I will stand the defendant's notice of motion over generally with liberty to restore it on three days notice.

24      The plaintiff has been substantially successful on his notice of motion and he should now have an order for costs in his favour.

25      For the above reasons, I make the following orders:

1.      Order that the defendant, within twenty-eight days, serve upon the plaintiff a further list of documents in which in Pt 1B(i) the defendant identifies those documents in respect of which there appears to be an entitlement to claim privilege.

2.      Order that the supporting affidavit of the defendant states in respect of any document concerning which there appears to be an entitlement to make the claim for privilege the facts relied on as supporting that apparent entitlement.

3.      On the defendant's notice of motion, the requirements of r 21.3 and r 21.4 are varied to the extent I have indicated but the defendant's notice of motion is otherwise stood over generally with liberty to restore on three days notice.

4.      Order that the defendant pay the plaintiff's costs of the plaintiff's notice of motion.

**********

LAST UPDATED:   13 February 2007