UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-80176-CV-Bloom/Reinhart

IRA KLEIMAN, and
W&K INFO RESEARCH, LLC,

        Plaintiffs,

v.

CRAIG WRIGHT,

        Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' CORRECTED MOTION FOR ATTORNEYS' FEES (DE 346)

Former House Speaker Tip O'Neill famously pronounced that all politics is local.[1] Locality also matters for weather, linguistic dialects, real estate prices, and topological manifolds.[2] So, too, with attorney's fees.

After protracted litigation over production of documents identifying Dr. Wright's bitcoin holdings, I granted Plaintiffs' Motion to Compel [DE 197, 210] and denied Dr. Wright's Motion for Protective Order [DE 155]. *See generally* DE 166, 277. I granted Plaintiffs leave to seek attorneys' fees associated with litigating these two motions. DE 277 at 28.[3] Plaintiffs have now

---

[1] https://www.brainyquote.com/quotes/thomas_p_oneill_212119.

[2] "A manifold is a topological space that is locally Euclidean (i.e., around every point, there is a neighborhood that is topologically the same as the open unit ball in $R^n$). To illustrate this idea, consider the ancient belief that the Earth was flat as contrasted with the modern evidence that it is round. The discrepancy arises essentially from the fact that on the small scales that we see, the Earth does indeed look flat. In general, any object that is nearly 'flat' on small scales is a manifold." Rowland, Todd. "Manifold." From *MathWorld*--A Wolfram Web Resource, created by Eric W. Weisstein. http://mathworld.wolfram.com/Manifold.html.

[3] As relevant to the issues presented here, the District Court affirmed my Order. DE 373 (reversing other sanctions).

filed a motion for attorneys' fees, which the District Court referred to me for appropriate disposition. DE 306.[4] Plaintiffs request a total of $658,581.78, comprising $592,558.00 for attorneys' fees and $66,023.78 for expenses. DE 346 at 7-8.[5]

### 1. Calculation of Attorneys' Fees: the Lodestar Method

In calculating attorney fee awards, courts use the lodestar method, whereby a reasonable fee award is "properly calculated by multiplying the number of hours reasonably expended times a reasonable hourly rate." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (*citing Blum v. Stenson*, 465 U.S. 886, 888 (1994)). This "lodestar" may then be adjusted for the results obtained. *See Barnes*, 168 F.3d at 427 (*citing Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)).[6]

---

[4] Under 28 U.S.C. § 636(b)(1)(A) and Rule 72(a) of the Rules of Civil Procedure, I have the authority to enter a final order on Plaintiffs' Motion for Attorneys' Fees and Costs sought under Rule 37(a) because it is not case-dispositive. *See Collar v. Abalux, Inc*., No. 16-20872-CIV, 2018 WL 3328682, at *13-14 (S.D. Fla. July 5, 2018) (J. Goodman) ("magistrate judges have jurisdiction to enter sanctions orders for discovery failures that do not strike claims, completely preclude defenses, or generate litigation-ending consequences"); *Textron Fin. Corp. v. RV Having Fun Yet, Inc.,* No. 3:09CV2-J-34TEM, 2010 WL 1038503, at *6 (M.D. Fla. Mar. 19, 2010) ("the Court notes that the Motion to Compel and the Motion for Sanctions are both matters within the authority of the Magistrate Judge to determine, without the need to submit a recommendation to this Court").

[5] Defendant contends that Plaintiffs' motion for fees "should be outright denied" for failure to comply with the requirements of Local Rule 7.3. DE 324 at 2-3. However, "it is not mandatory that the Court deny the Motion for this alleged non-compliance. This is especially true, where . . . the party seeking denial of the Motion has identified no prejudice suffered from the alleged local rules violation." *Kowalski v. Jackson Nat. Life Ins. Co*., No. 12-60597-CIV, 2014 WL 4101567, at *4 (S.D. Fla. Aug. 20, 2014) (J. Cohn) (court declined to deny motion for attorneys' fees based on non-compliance with Rule 7.3). Defendant has not alleged any prejudice stemming from Plaintiffs' non-compliance, and I decline to deny Plaintiffs' motion on this basis.

[6] In computing the lodestar amount, courts should consider: (1) the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature; (4) the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained; (5) the time limitations imposed by the client or by the

The reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes*, 168 F.3d at 436 (*quoting Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1999)). "Generally, the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed . . .'" *Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2013 WL 6238647, at *12 (S.D. Fla. Dec. 3, 2013) (J. Goodman) (quoting *ACLU of Georgia v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999)). The fee applicant bears the burden of establishing the claimed market rate. *See Barnes*, 168 F.3d at 427.

The Court must consider "what a reasonable, paying client would be willing to pay," bearing in mind "*all* of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees," including the *Johnson* factors. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184, 190 (2d Cir. 2008) (court must "step[] into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively") (emphasis in original). In addition, the Court may consider prior hourly rates awarded to other attorneys of similar experience in the community and also the Court's own knowledge of the rates charged by local practitioners. *See McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96-97

---

circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and (8) whether the fee is fixed or contingent. *Wachovia Bank v. Tien,* No. 04-20834, 2015 WL 10911506, at *1 (S.D. Fla. Apr. 7, 2015) (J. Valle) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974) (listing nearly identical factors to consider in determining a reasonable attorney's fee)).

(2d Cir. 2006) ("A district court may also use its knowledge of the relevant market when determining the reasonable hourly rate."). *See also Norman*, 836 F.2d at 1303 ("[t]he court . . . is itself an expert on the question [of fees] and may consider its own knowledge and experience concerning reasonable and proper fees . . .").

As to the type of evidence that the fee claimant should produce in support of a fee claim, in *Barnes*, the Eleventh Circuit stated,

> The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates. That burden includes supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, [ ] counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity.

168 F.3d at 427 (citations and quotations omitted).

In submitting a request for attorney's fees, fee applicants are required to exercise "billing judgment." *Barnes*, 168 F.3d at 428 (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). If fee applicants do not exercise billing judgment by excluding "excessive, redundant, or otherwise unnecessary" hours, which are hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*," the court must exercise billing judgment for them. *See Barnes*, 168 F.3d at 428 (*quoting Norman*, 836 F.2d at 1301 (*emphasis in original*)).

### 2. Calculating the Loadstar

#### A. Requested Hourly Rates by Plaintiffs' Counsel

Vel Freedman: Mr. Freedman was admitted to the Florida Bar in 2012. As relevant here, he was Counsel at Boies Schiller Flexner LLP until co-founding the firm of Roche Cyrulnik Freedman in August 2019. He seeks an hourly rate of $900.

4

Kyle Roche:  Mr. Roche was admitted to the New York bar in September 2017.[7]  DE 4 (*pro hac vice* motion).  He was an associate at Boies Schiller Flexner LLP until co-founding the firm of Roche Cyrulnik Freedman in August 2019.  He seeks an hourly rate of $690.

Andrew Brenner:  Mr. Brenner was admitted to the Florida bar in 1993.  He is the head of litigation and co-Administrative Partner of the Miami office of Boies Schiller Flexner LLP.  He seeks an hourly rate of $1050.

Stephen Lagos:  Mr. Lagos was admitted to the New York bar in 2019.  He was an associate at Boies Schiller Flexner LLP before joining Roche Cyrulnik Freedman LLP.  DE 400.  He seeks an hourly rate of $610.

I find all these rates to be excessive.  I am personally familiar with the hourly rates charged by the top civil litigators in Palm Beach County.  Those rates range between $600 and $700 per hour.  By way of example, in 2018, a senior partner from the West Palm Beach office of a national firm of over 1000 lawyers, who was admitted to the Florida Bar in 1987, charged $670 per hour for a highly contentious complex civil litigation in Palm Beach Circuit Court.  An associate with 9 years of experience charged $440 per hour in the same case.  *See FD Destiny, LLC, et. al. v. AVP Destiny, LLC, et. al.,* No. 502009-CA-029903 (Final Judgment of Attorneys' Fees and Costs, Jan. 5, 2018).  I am aware that two former Presidents of the Florida Bar whose offices and law practices are in Palm Beach County and who charge between $600 and $625 per hour for complex civil litigation in state and federal court in West Palm Beach.  The highest rate billed in Palm Beach County is approximately $850 per hour for high-stakes "bet the company" litigation.  *See Lauth v. International Data Management,* No. 2010 CA 27629 (Order awarding attorney fees, Oct. 13, 2015).  *See also Procaps S.A.*, 2013 WL 6238647, at *13 (court found

---

[7]http://iapps.courts.state.ny.us/attorney/AttorneyDetails?attorneyId=%2Fdtv7t9%2FOk0tZ5HNycBoAw%3D%3D

rates requested were "well above those used in South Florida by attorneys practicing sophisticated commercial litigation").

I find the following rates to be reasonable:

| | |
|---|---|
| Mr. Brenner | $675 per hour |
| Mr. Freedman: | $500 per hour |
| Mr. Roche: | $350 per hour |
| Mr. Lagos: | $300 per hour |

B. <u>Reasonable Hours</u>

I authorized Plaintiffs to seek attorneys' fees related to "filing and litigating" (1) Dr. Wright's April 18, 2019, Motion for Protective Order (DE 155), which was denied on May 3, 2019 (DE 166), and (2) Plaintiffs' June 3, 2019, Motion to Compel (DE 197, 210), which was granted on August 27, 2019 (DE 277). To the extent Plaintiffs' motion seeks reimbursement for time counsel spent on tasks beyond the scope of my order (*i.e.,* for unspecified document review and preparing for Defendant's deposition), these fees will not be included in my award.

*(i) The Motion for Protective Order*

Plaintiffs seek payment for 12.7 hours to prepare a response to Defendant's Motion for a Protective Order. The response was filed on April 29, 2019, at 6:12 p.m.; it comprised 6 pages of substantive arguments, a signature page, and two two-page email attachments. DE 162, 183.

I find that 12.7 hours to prepare this Motion response was excessive. It appears that another lawyer ("R. Keefe") prepared the first draft and submitted it to Mr. Roche on April 21. Mr. Roche spent 3.8 hours on April 21 and 24 reviewing the draft. On April 27 and 28, Mr. Freedman devoted 5.0 hours of "attention to bitcoin motion." Finally, Mr. Freedman billed 2.5 hours on April 29, 2019, for "Attention to drafts of all pending motions and review of

O[pposing] C[ounsel] filing in preparation of same." DE 308-1 at 2.[8] On the same day, Mr. Brenner billed 1.2 hours for revising the draft pleading and "communications with team re: same."

It was not reasonable to have three lawyers involved to this extent to review a draft a relatively straight-forward pleading. *See Procaps S.A.*, 2013 WL 6238647, at *16 (court imposed reduction where "an entire team of attorneys worked on the discovery dispute and . . . some of the time spent was inefficiently incurred"). The legal issue presented was whether Dr. Wright's motion met the Rule 26(c) standard for "undue burden." I find that Mr. Roche's 3.8 hours to review and revise a first draft is reasonable for a lawyer of his experience level. I find that Mr. Brenner's expenditure of 1.2 hours to finalize a pleading and to communicate his changes to other lawyers was also reasonable. I do not find that Mr. Freedman spending 7.5 hours reviewing and revising a draft previously edited by Mr. Roche is reasonable. Accordingly, using the reduced rates listed above, I will award $2,140.00 for the work on this response.

    *(ii)    The Motion to Compel*

On June 3, Plaintiffs filed their motion to compel the trust documents and testimony regarding them from Defendant. The motion consists of 5 pages detailing the history of the parties' discovery disputes and presenting substantive arguments. DE 197, 210. The motion also attaches a transcript from an earlier hearing. Despite the brevity of this motion and the 46-minute oral argument held on June 11, Plaintiffs' counsel billed approximately 62 hours to prepare this motion and attend the hearing. I find this to be excessive.

---

[8] At that time, there was a pending motion for Judgment on the Pleadings filed by the Defendant, and to which Plaintiff had responded on April 28. DE 144, 159. There was also a pending motion by Plaintiffs to re-open Dr. Wright's deposition (DE 157), to which Dr. Wright responded on April 29. DE 160.

7

For example, on May 18, Mr. Lagos spent 7.4 hours drafting this motion and between May 21 and 22, he spent 16.6 hours compiling a table of cases where courts imposed default sanctions. On May 27, Mr. Lagos spent 4.5 hours editing his draft of the motion. On June 3, Mr. Roche spent 7 hours "finaliz[ing]" the motion, and on June 8, Mr. Roche has another billing entry showing 4.2 hours for "finaliz[ing] motion for sanctions," which presumably was to prepare a redacted version of the sealed motion for filing. On June 10, Mr. Roche spent 3.5 hours drafting an outline for the next day's hearing on the motion to compel and Mr. Freedman spent 4 hours preparing for the hearing. On June 11, Mr. Roche billed 6.8 hours and Mr. Freedman 8.7 hours to prepare for and attend the hearing which lasted only 46 minutes. *See* Minute Entry at DE 213. I recognize that there is

> nothing inherently unreasonable about a client having multiple attorneys[, a]nd it is certainly not unusual in a major lawsuit like this one for law firms to assign a team of attorneys, ranging from senior partners to junior associates, to the case. But when multiple attorneys are involved in representing one client in litigation, there is always the risk of inherent inefficiencies. Thus, in order to recover time for multiple attorneys, the fee applicant bears the burden of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case . . .

*Procaps S.A.*, 2013 WL 6238647, at *16 (citing *Barnes*, 168 F.3d at 432). Accordingly, hours billed by multiple attorneys working on the same task where the invoices do not reflect distinct contributions by each lawyer, must be reduced. Given that only Mr. Freedman presented argument at the hearing, I will award the following hours at the reduced rates: Mr. Lagos – 15 hours; Mr. Freedman – 8 hours. This results in a total of $8,500.00 for preparing the motion to compel and attendance at the June 11 hearing.[9]

---

[9] Like Judge Goodman in *Procaps S.A. v. Patheon Inc.*, I am "not faulting [Plaintiffs'] attorneys for being comprehensive and exceptionally diligent. While [Plaintiffs are] certainly free to pay its own attorneys full rack rates for a full-court press litigation effort, 'courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive

There are also several entries by Plaintiffs' counsel that include block billing for a variety of tasks and provide no breakdown of the time spent on each. "'[B]lock billing' . . . is the disfavored practice of including multiple distinct tasks within the same time entry without specifying the amount of time spent on each task." *TYR Tactical, LLC v. Productive Prod. Enter., LLC*, No. 15-CIV-61741, 2018 WL 3110799, at *11 (S.D. Fla. Apr. 11, 2018) (J. Valle) (finding a fee reduction appropriate where counsel's practice of block billing made it "impossible" for the court to ascertain how much time was spent on each task).

For example, on June 12, Mr. Roche billed 11.2 hours for meeting with Plaintiffs' expert (Dr. Edman) to prepare for his direct examination and also for "coordinat[ing]" with Mr. Brenner regarding the outline for Defendant's deposition. Mr. Roche billed 9.8 for a similar entry on June 13. On June 14, Mr. Roche billed 8.4 hours preparing an outline for the direct examination of Dr. Edman and also for "coordinat[ing] with billing on transcript; coordinat[ing] with Brenner on depo outline." On June 20, Mr. Roche billed 12.4 hours preparing for the evidentiary hearing on Plaintiffs' motion to compel and also for drafting a motion to videotape Defendant's deposition. While the tasks associated with preparing for the evidentiary hearing may have generated fees for which Plaintiffs are entitled to reimbursement, the other tasks included in these billing entries are not sufficiently related to the two motions for which I am awarding fees. Therefore, a fee reduction is warranted. I will credit 20 hours to Mr. Roche for his time between June 12-20 at his reduced rate, totaling $7,000.00

*(iii)   The Evidentiary Hearing*

On June 11, 2019, I granted Plaintiffs' motion to compel (DE 197, 210) and ordered Defendant to produce, within one week, a list of the public addresses of the all the bitcoin he

---

fees and expenses are not awarded as it is to see that an adequate amount is awarded.'" *Procaps S.A.*, 2013 WL 6238647, at *16 (quoting *Barnes*, 168 F.3d at 428).

mined before December 31, 2013, in accordance with my prior orders.  DE 212.  In the event Defendant failed to produce the list by the deadline, I advised the parties that I would conduct a Show Cause evidentiary hearing for Defendant to explain his non-compliance.  *Id.*  Defendant failed to provide the list by the deadline and so on June 14, I ordered Defendant to appear in person at a contempt hearing on June 28.  DE 217.  The hearing was held over the course of three days as follows: June 28, 2019 for 4 hours and 50 minutes; August 5, 2019 for 6 hours; and August 26, 2019 for 2 hours and 30 minutes.

In preparation for the June 28th hearing, Mr. Lagos billed 14.2 hours.  Mr. Roche billed 95.5 hours, although many of these billing entries contain block billing.  Mr. Freedman billed 83 hours, although his entries also contain block billing and include time spent on tasks related to Defendant's deposition, which I decline to include in my fee award.  I will reduce their time as follows: Mr. Lagos – 12 hours; Mr. Roche – 30 hours; Mr. Freedman – 30 hours.  This amounts to $29,100.00 in fees to prepare for the evidentiary hearing.[10]

Mr. Roche, Mr. Freedman and Mr. Brenner collectively billed 33.7 hours on June 28 for travel to and attendance at the evidentiary hearing, as well as preparation time.  Because counsel's appearance at the contempt hearing was necessitated by Defendant's misconduct, I will award fees for the attorneys' travel time to and from Miami to West Palm Beach.  *See Gilbert v. Am. Standard, Inc.,* No. 506-CV-51 CAR, 2007 WL 1615138, at *1 (M.D. Ga. June 4, 2007) (including attorney's travel time to and from hearings in Rule 37 sanctions award).  However, I find that the attendance of three attorneys at the hearing was excessive.  Given that Mr. Freedman and Mr. Roche were primarily responsible for preparing for the hearing, I will limit Plaintiffs' recovery to their fees in the amount of $10,270.00 for the June 28 evidentiary hearing.

---

[10]  Mr. Brenner's time during this period was primarily spent preparing for Defendant's deposition and so his time will be stricken from the fee award.

Between July 1 and August 4, Mr. Brenner spent 34.6 hours preparing for the continuation of the evidentiary hearing. His billing entries do not provide any detail and consist primarily of "[a]ttention to preparation for continuation of evidentiary hearing." Normally, this lack of specificity for the tasks performed, would result in his time being stricken. However, given that Mr. Brenner conducted the cross-examination of Defendant's expert, I will credit 15 hours of his preparation time, amounting to $10,125.00.

In the four days between August 1 and 4, Mr. Roche billed 62.5 hours preparing for the continued hearing. During the same four days Mr. Freedman billed 52.4 hours.[11] I find the hours are excessive and redundant and that these billing entries lack the specificity necessary for me to assess the reasonableness of the time spent. Therefore, I will reduce the time they spent preparing for the second day of the evidentiary hearing as follows: Mr. Roche – 30 hours ($10,500.00); Mr. Freedman – 10 hours ($5,000.00), for a total of $25,625.00 in fees to prepare for the August 5 hearing. *See League of Women Voters of Fla. v. Browning*, No. 06-21265-CIV, 2008 WL 5733166, at *12 (S.D. Fla. Dec. 4, 2008) (J. O'Sullivan) (imposing 30% reduction because counsel's "time entries are vague . . . [and] do not provide the Court with sufficient information to determine whether such entries are duplicative or excessive").[12]

For their appearance at continuation of the hearing on August 5, Mr. Brenner, Mr. Roche and Mr. Freedman collectively billed 44.2 hours. Again, I find that the presence of three

---

[11] Mr. Lagos spent 2.7 hours helping to prepare for the continued hearing. Given his minimal involvement in this stage of the case, I will deduct his time from the fee award.

[12] "When a trial court is confronted with a fees request which demonstrates billing inefficiencies, it is appropriate to make an 'overall reduction' in the fees award by adopting an across-the-board percentage reduction." *Procaps S.A.*, 2013 WL 6238647, at *16 (quoting *MKT Reps S.A. De C.V. v. Standard Chartered Bank Int'l (Americas) Ltd.*, No. 10–22963–CIV, 2013 WL 1289261, at *12 (S.D. Fla. Mar. 28, 2013) (J. O'Sullivan) (imposing 20% reduction after reducing the hourly billing rates)).

attorneys at this hearing constitutes over-staffing and will limit Plaintiffs' recovery to the time spent by Mr. Brenner, who cross-examined Defendant's expert, and Mr. Roche, who conducted the direct examination of Plaintiffs' expert. This results in a total of $12,420.00 for the continued hearing on August 5.

In preparation for the final day of the hearing on August 26, it appears from the billing records that Mr. Brenner was primarily responsible for drafting Plaintiffs' closing arguments. He billed 16.6 hours for this task, which I will credit in the fee award. However, I decline to include in the award the 31.7 hours billed by Mr. Roche for assisting him. Mr. Freedman billed 32.5 hours to prepare for closing arguments through August 25, and an additional 18 hours on August 26 related to preparing and presenting his one-hour argument to the Court. I find his time to be excessive and reduce it to 15 hours. This results in a total of $18,705.00 for the final day of the hearing.

### 3. Reasonable Expenses

When a court imposes monetary sanctions under Rule 37, it is not limited to the taxable costs enumerated in 28 U.S.C. § 1920. Rather, "when a court sanctions a party for failure to comply with a court order, pursuant to Rule 37(b), the Federal Rules of Civil Procedure Rule require the court to order the sanctioned party . . . 'to pay the reasonable expenses, including attorney's fees, caused by the failure.'" *B-K Cypress Log Homes Inc. v. Auto-Owners Ins. Co.*, No. 1:09-CV-00211-MP-GRJ, 2011 WL 6151507, at *3 (N.D. Fla. Nov. 1, 2011), report and recommendation adopted, No. 1:09CV211-MP-GRJ, 2011 WL 6152082 (N.D. Fla. Dec. 12, 2011) (citing Fed. R. Civ. P. 37(b)(2)(C)).

As Defendant notes, "[t]he vast majority of the costs" Plaintiffs seek ($53,983.69) are "related to plaintiffs' expert, [D]r. Edman." Defendant objects to these expenses because "the

invoice contains no information as to the work [he] actually performed . . ." DE 324 at 9. Plaintiffs' respond that "Dr. Edman prepared for and was present at the courthouse for the June 28th evidentiary hearing. Since he was not reached [for testimony] that day, he prepared again for the August 5th hearing." DE 347 at 10.

I am aware that Dr. Edman's assistance was vital to Plaintiffs' presentation at the contempt hearing, however, I agree that it is difficult to assess Dr. Edman's fees because no information is provided regarding his hourly rate or how he spent his time. Without this information, I am compelled to reduce his fees. I find that $40,000.00 constitutes a reasonable expense for the expert fees associated with this contempt hearing. Given that these are the only expenses to which Defendant specifically objects, the remaining expenses will be awarded.

## CONCLUSION

Based on the foregoing, Plaintiffs' Motion for Attorneys' Fees and Costs (DE 346) is **GRANTED IN PART** and **DENIED IN PART**. By **March 30, 2020,** Defendant shall reimburse Plaintiffs as follows:

|  |  |
|---|---|
| Attorneys' Fees: | $113,760.00 |
| Expenses: | $ 52,040.09 |
| **Total:** | **$165,800.09** |

**DONE AND ORDERED** in Chambers this 16th day of March, 2020 at West Palm Beach in the Southern District of Florida.

_____
BRUCE REINHART
United States Magistrate Judge