**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC

    plaintiffs,
v.                                                  **Case No. 9:18-cv-80176 (BB/BR)**

CRAIG WRIGHT,

    defendant.
_____/

**DR. CRAIG WRIGHT'S OBJECTION TO MAGISTRATE ORDER ON DISCOVERY**

## **INTRODUCTION**

> Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened.

Fed. R. Evid. 404(a), 1972 Advisory Committee Note.

The Magistrate Order on Discovery [D.E. 420] (the "Order") erroneously disregarded the attorney-client relationship between defendant and his Kenyan attorney based on preconceived and previously formulated conclusions of defendant's character.

The Order improperly relied on prior conclusions about defendant that were unrelated to the existence of an attorney-client relationship and, in so doing, ignored the fundamental and bedrock principle of our legal system. "The attorney-client privilege . . . is the oldest confidential communications privilege known to the common law. . . . It is therefore not only an interest long recognized by society but also one traditionally deemed worthy of maximum legal protection." *Hershey Co. v. Cadiz*, 2006 WL 8431510, at *6 (S.D. Fla. 2006) (citing 8 C. Wright & A. Miller, Federal Prac. & Proc. § 2017 (2d ed. 1994)).

The attorney-client relationship—whether between American clients and counsel or foreign defendants and foreign counsel—should be afforded the same protections and upheld as sacrosanct. It was clear error to strip defendant of those protections, and it was clear error to use improper prior findings akin to bad character evidence to justify doing so.

Equally compelling, in stripping foreign corporations of their attorney-client privilege over 11,000 attorney-client communications, the Order collapsed all of the corporations identified in defendant's privilege log into defendant's alter ego without a proper evidentiary hearing or the requisite findings that the foreign corporations were formed for illicit purposes.

The Order also ignored the clear legal principle under Florida and Australian law that the attorney client-privilege in fact survives a corporation's dissolution or liquidation. It was improper to go around that principle through waiver and an unsupported finding that defendant did not have the standing to assert the privilege on behalf of the corporations.

The result of those errors, both factual and legal, is the wholesale production of the 11,000 attorney-client communications, without a review of any of the documents in-camera to determine whether the documents were privileged or even relevant to plaintiffs' claims. The Order should be reversed and vacated.

## DISCUSSION

### A. The Order Runs Afoul of the Rules of Evidence in Rejecting the Existence of the Attorney-Client Relationship Between the Defendant and His Kenyan Attorney

#### 1. *The Order's Ruling is Akin to Improper Propensity Evidence Expressly Prohibited by Rule 404 of the Federal Rules of Evidence*

"Rule 404 of the Federal Rules of Evidence embodies the well-settled principle that evidence of a person's character is usually not admissible for the purpose of proving that the person acted in conformity with his character on a particular occasion." *Reyes v. Missouri Pac. R. Co.*, 589 F.2d 791, 793–94 (5th Cir. 1979) (citing Fed.R.Evid. 404; McCormick on Evidence § 188 (2d ed. 1972)). "This general rule of exclusion, applicable to both civil and criminal proceedings, is based upon the assumption that such evidence is of slight probative value yet very prejudicial." *Id.* As explained by the advisory committee notes:

> Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened.

Fed. R. Evid. 404(a), 1972 Advisory Committee Note.

3

The Order impermissibly relied on character evidence in rejecting the existence of the attorney-client relationship between defendant and his Kenyan attorney. At the hearing, defendant was required to show "the [attorney-client] communications on their face to be privileged." *Affordable Bio Feedstock, Inc. v. Darling Int'l Inc.*, 2012 WL 5845007, at *2 (M.D. Fla. 2012). To meet that burden, defendant introduced his own sworn interrogatory response, the sworn declaration of Mr. Mayaka, and a printout of Mr. Mayaka's LinkedIn profile. *Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1287 (S.D. Fla. 2012) ("The party claiming the privilege must provide the court with underlying facts demonstrating the existence of the privilege, **which may be accomplished by affidavit**") (citing *United States v. Osborn,* 561 F.2d 1334, 1339 (9th Cir.1977)) (emphasis added); *Siegmund v. Xuelian Bian*, 2018 WL 3725775, at *4 (S.D. Fla. 2018) ("The party claiming the privilege or work-product protection must substantiate the underlying facts demonstrating the existence of the privilege with evidence, **which may be accomplished by affidavit.**") (citing *Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 639 (S.D. Fla. 2011)) (emphasis added).

The Declaration of Mr. Mayaka was not refuted or contradicted, and there is absolutely no evidence to suggest that it is a forgery. Yet, the Order summarily rejected the Mayaka Declaration because the Magistrate had previously found (on a different issue) that defendant submitted other "forged documents in this litigation." Order at 6. In other words, the Order made a new finding that the Mayaka Declaration is likely a forgery and not to be relied on because the Magistrate had previously found that defendant submitted a forged document. *That is akin to the very type of propensity evidence that is explicitly excluded by Rule 404(a)*. That finding is not an impartial adjudication of the facts and it should not be condoned by the Court.

Further, the Court never even found that defendant intentionally created forged documents for the purposes of this litigation to deceive the Court,[1] but the implication of the Order is that he did. In attempting to connect a prior finding of forged documents in a matter unrelated to the existence of an attorney-client relationship, the Court has improperly created bad character evidence, which it then uses to disregard the attorney-client relationship. That is improper.

### 2. *The Order Ignored Federal Rule of Evidence 902(8) and 28 U.S.C. § 1746*

The Order also runs afoul of Federal Rule of Evidence 902(8) and 28 U.S.C. § 1746 in rejecting the Mayaka Declaration because it wasn't adequately authenticated or notarized. Order at 5-6. The declaration is self-authenticating and notarization was not necessary.

Under Fed. R. Evid. 902(8), notarized documents are self-authenticating and under 28 U.S.C. § 1746 a declaration is the equivalent of a notarized document. *Poulin v. Jeter*, 2010 WL 3701384, at *4 (M.D. Fla. 2010); *Lewis v. Zilog, Inc.*, 908 F. Supp. 931, 958–59 (N.D. Ga. 1995) (finding "without merit" plaintiff's objection that the declaration that wasn't "sworn before a notary public" because the declaration contained the language set out in 28 U.S.C § 1746). Taken together, declarations under 28 U.S.C. § 1746 are self-authenticating. *Lumoa v. Potter*, 351 F. Supp. 2d 426, 430–31 (M.D.N.C. 2004) ("A document is considered 'self-authenticating' and does not need additional evidence to support its identity if it is a 'declaration that satisfies 28 U.S.C. § 1746.'") (citing Fed. R. Evid. 902 advisory committee's *431 note (2000)). This Court, and courts around the country, routinely admit declarations under 28 U.S.C. § 1746 without any additional authentication. *See* Hr. Tr. 20:18-22 (Nov. 20, 2019); Order at 11-12 (considering the declaration

---

[1] At most, the Magistrate's previous order found that defendant previously submitted documents that were altered in 2014 and 2015, which is three years before this litigation commenced. *See* Hr. Tr. 246:15-20 (Aug 5, 2019) (plaintiffs' own expert—which the previous order relies on—testifying that the document "alterations" were made in the years of 2014 through 2015).

of G. Grieve). As such, it was improper for the Order to reject the Mayaka Declaration because of a purported lack of adequate authentication.

### B. The Order Strips Defendant of the Fundamental Protections of Attorney-Client Privilege by Erroneously and Improperly Concluding Without an Evidentiary Hearing that Defendant is the Alter Ego of All the Australian Corporations

The Order found that the corporations were the alter egos of defendant based on an unauthenticated exhibit that plaintiffs introduced in the discovery hearing, a trust document, and the "lack of any evidence to contradict [the Order's conclusion]." Order at 13. That finding is fundamentally improper and unfair. The purpose of the discovery hearing was to adjudicate the privileged status of the corporations' documents, not whether the corporations were defendant's alter ego, which requires a finding of fraudulent intent and a failure to maintain corporate formalities. *In re Sunnyside Timber*, LLC, 413 B.R. 352, 369–70 (Bankr. W.D. La. 2009) ("Under Florida law, liability may be imposed under the alter ego doctrine where a corporation is a mere instrumentality or alter ego of the defendant, and where the corporate form was misused to accomplish fraud or some other illegal purpose."). As such, the Order's reliance on a "lack of any evidence to contradict" its conclusion is not a proper evidentiary basis to collapse foreign corporations in liquidation into the alter ego of defendant.

The alter ego determination is especially concerning because the Order uses it to demonstrate that "there would be no undue burden in notifying the lawyers involved [in the corporations' attorney-client communications], *if in fact any exist*." Order at 13 (emphasis added). There is simply no basis to question the existence of the corporate attorneys. To the contrary, defendant listed the name of every single attorney on his privilege log (which plaintiffs submitted to the Court in-camera) and he stated in his Opposition that there were at least 64 attorneys. D.E. 394 at 9 (the "Opposition"). The only evidence before the Court contradicts its conclusions on

both the presence of corporate counsel in the communications and the burden of reaching out to each of them.

The Court's alter ego findings should be overruled as erroneous conclusions of law. The "utilization of alter ego to pierce the corporate veil is an equitable doctrine that must be applied sparingly." *Shearson Hayden Stone, Inc. v. Lumber Merchants, Inc.*, 500 F. Supp. 491, 501–02 (S.D. Fla. 1980) (citing *Matter of Multiponics*, 622 F.2d 709 (5th Cir. 1980)). In finding that the corporations were defendant's alter ego, the Order cites to the following findings:

i) Exhibit 3, showing "that either Dr. Wright or Ms. Watts was a Director of every company, often the sole Director(s);
ii) That "it appears that the assets of many of these entities were transferred into trust by Dr. Wright and Ms. Watts in 2017 and that most of the companies were dissolved thereafter"; and,
iii) The "lack of any evidence to contradict [the above facts]."

Order at 13.

But "the mere fact that one or two individuals own and control the stock structure of a corporation does not inevitably lead to the conclusion that the corporate entity is a fraud or the alter ego of its stockholders." *S-Fer Int'l, Inc. v. Stonesheets, LLC*, 2016 WL 8808749, at *3 (S.D. Fla. 2016) (citing *Dania Jai-alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1120 (Fla. 1984). "If this were the rule, it would completely destroy the corporate entity as a method of doing business and it would ignore the historical justification for the corporate enterprise system." *S-Fer Int'l,* 2016 WL 8808749, at *3.

To pierce the corporate veil and find that a corporation is a person's alter ego, the following elements must be present:

iv) A failure to observe corporate formalities;
v) A commingling funds of the corporation with funds of other corporations and with personal funds;
vi) A use of the assets of the corporation for his own personal use;
vii) A failure to adequately capitalize the corporation; and,

7

    viii)    A use of the corporate form to avoid liability.

*Raber v. Osprey Alaska, Inc*., 187 F.R.D. 675, 679 (M.D. Fla. 1999).None of those factors were addressed in the Order, and there is no record evidence showing those factors are satisfied.[2] And the third factor relied upon by the Court— a "lack of any evidence to contradict [findings of the alter ego],"—wrongly assumes the conclusion on which the findings are based. Defendant should not have been required to prove a negative on an evidentiary issue that was not properly noticed and on an issue as fundamental as the application and protection of the attorney-client privilege.

    At bottom, there is ample evidence that defendant could have introduced had he known that the Magistrate was adjudicating the alter ego issue. There is evidence that defendant maintained the corporate formalities by conducting regularly held meetings, taking meeting minutes, and maintaining share registers. *See e.g.,* Exhibits A and B, filed as D.E. 433-1 and 433-2. There is also evidence that defendant kept the corporations' assets separate from his own and maintained detailed financial accounting of the corporations' assets. *See e.g.,* Exhibit C, filed as D.E. 433-3. And there is no evidence that defendant used the corporate form to avoid any liability. For that reason, the Order's sweeping conclusion that the corporations are defendant's alter egos is without any legal basis or factual support.

---

[2] Further, the Court relies on unauthenticated hearsay evidence to reach its conclusions. Exhibit 3—which the Order found showed "that either Dr. Wright or Ms. Watts was a Director of every company, often the sole Director(s),"—was never authenticated. That is the very basis that the Order relied on for excluding other documents, such as Exhibit 2. *See* Order at 6. Additionally, it is inconsistent for the Order to rely on Exhibit 3 to support its alter ego analysis, but ignore that document with respect to whether defendant had standing to assert privilege on behalf of the corporations. *See* Hr. Tr. 97:7-19 (March 5, 2020).

8

### C. The Magistrate Denied Defendant the Proper Notice to Address Factual Issues Raised for the First Time at the Discovery Hearing and Denied Defendant the Opportunity to Present his Evidence on those Issues

From the start, the March 5, 2020 discovery hearing was set to address the issues of law related to the attorney-client corporate communications that defendant was withholding on the basis of privilege. Specifically, the legal issues were whether: (i) the attorney-client privilege survives a corporation's dissolution or liquidation; and (ii) the corporate privilege had to be asserted.

The hearing was never meant to determine factual issues, and it certainly was not an evidentiary hearing on the issue of the corporations' privileged documents. This is something that the Magistrate made clear at the February 25, 2020 hearing:

> THE COURT: I saw the pleadings that the parties have filed on the other privilege issues and those seem to me to be primarily issues of the law. There is not really a factual dispute there.

Hr. Tr. 9:8-11 (Feb 25, 2020).

Yet, at the discovery hearing, the Magistrate *sua sponte* questioned defendant's "position in any of these corporations such that he can invoke the privilege on their behalf." Hr. Tr. 70:21-22 (March 5, 2020). That was not a disputed issue between the parties.

In responding to the Magistrate's factual question, defendant offered to supplement the record to introduce such evidence:

> So if your Honor determines that additional evidence is necessary to establish his relationship to all those corporations, which I don't believe plaintiffs are contesting, that is definitely that something we can supplement it with.

Hr. Tr. 71:1-5 (March 5, 2020). The Magistrate denied that request:

> THE COURT: Well, today is your day. Today is Your hearing. I made that clear last week. Today was your chance to meet your burden.

Hr. Tr. 71:6-8 (March 5, 2020).

9

Defendant reasonably relied on the Magistrate's statement that the March 5, 2020 hearing was to address legal issues, and it was fundamentally unfair for the Magistrate to change the scope of that hearing, raise factual issues that were not in dispute, and then refuse to permit defendant to supplement the record to protect the attorney-client privilege.[3]

### D. The Order Unfairly Excluded Defendant's Sworn Interrogatory Response

The Order rejected defendant's sworn interrogatory response because the Magistrate previously determined that "Dr. Wright gave perjured testimony." Order at 6. As such, the Magistrate would not accept any evidence that was not "challenged by cross-examination for which [the Magistrate] could make a credibility determination." *Id.* This finding was in error and fundamentally unfair.

First, in insisting that defendant present live testimony on the attorney-client privilege issue, the Order placed too high of a burden on defendant. As demonstrated above, the law provides that a mere declaration or affidavit is sufficient. Second, defendant had no way of knowing that the Magistrate was holding him to a higher standard that demanded live testimony. He only learned as much after the Magistrate issued the Order, but by that time, the issue was already decided. Third, even if defendant somehow knew that the Magistrate was holding him to a higher standard (he didn't), defendant didn't have an opportunity to present the live testimony that

---

[3] Were defendant permitted to introduce his evidence into the record, he would have shown that he was a director of at least four of the corporations immediately prior to their dissolution. *See* Exhibits G, H, I, and J (containing ASICs extracts for four of the corporations). Those corporations are Hotwire Preemptive Intelligence PTY LTD, Information Defense PTY LTD, Integyrs PTY LTD, and Panopticrypt PTY LTD. At least 2,500 of the privileged documents pertain to those companies. *See* Exhibits D and E, filed as D.E. 433-4 and 433-5 (which are defendant's updated privilege logs showing what documents relate to each corporation). As such, defendant is considered a similar representative under Fla. Stat. 90.502(3)(c), by virtue of his obligation to maintain those corporations' records, and he may assert the privilege on behalf of those corporations. *See* D.E. 394 at 7-8.

the Order demands. The March 5, 2020, hearing was a discovery hearing, *not an evidentiary hearing where parties could have introduced live testimony*.

For those reasons, at a bare minimum, the Order should have either set an evidentiary hearing for defendant to present live testimony or deferred ruling on the privilege issue until after defendant's March 16, 2020 deposition, where defendant could have been cross-examined on this matter. In failing to do so, the Order unfairly denied defendant the opportunity to present his evidence on this issue.

### E. The Order Incorrectly Concludes that the Corporations Waived Their Attorney-Client Privilege

The Order found that the corporations had "waived" their attorney-client privilege, because they didn't "seek[] to intervene to assert it," (Order at 12), but there is no evidence that the foreign corporations even had knowledge that plaintiffs were seeking their attorney-client documents. The corporations were never a party to this lawsuit, they never were served with a subpoena for documents, and they never had reason to suspect that a Court in the United States of America was adjudicating their attorney-client privilege over thousands of their documents. This is due to plaintiffs' failure to follow the rules of civil procedure.

Under Rule 34(a)(1), a party may only seek documents from a person that are within the person's *possession, custody, or control*. That requires the person have legal title over the documents. Otherwise, the party is deemed to have mere "access." *In re Grand Jury Subpoena*, 646 F.2d 963, 969 (5th Cir. 1981) (a comptroller's "mere access [to company records] is not possession, custody, or control" thus the "subpoena, if upheld, would be illegal because it would direct [the comptroller] to produce documents not in her possession, custody, or control."); *U.S v. S. Capital Constr., Inc.*, 2018 WL 7017412, at *3 (M.D. Fla. 2018); *Learning Connections, Inc. v. Kaufman*, *Englett & Lynd, PLLC*, 280 F.R.D. 639, 640 (M.D. Fla. 2012); *Developmental Techs.,*

11

*LLC v. Valmont Indus., Inc.*, 2015 WL 12844286, at *3 (M.D. Fla. 2015); *Siegmund v. Xuelian*, 2016 WL 1359595, at *2–3 (S.D. Fla. 2016), aff'd sub nom. *Siegmund v. Xuelian Bian*, 746 F. App'x 889 (11th Cir. 2018), and aff'd sub nom. *Siegmund v. Xuelian Bian*, 746 F. App'x 889 (11th Cir. 2018). In a typical situation, the person that has legal title to the documents also possesses the privilege. [4] Thus, a party following the rules of civil procedure would necessarily put on notice the party best positioned to object to the production of privileged documents.

But plaintiffs didn't follow the rules of civil procedure. They bifurcated the process, and in doing so, they never put the corporations on notice that they were seeking their privileged documents. Despite over 20-months of discovery, plaintiffs never served a subpoena on the actual foreign corporations to obtain their privileged documents. Instead, plaintiffs served a document request on a *former director of those corporations*, Dr. Wright. As such, the person who undisputedly possessed the privilege—the actual corporations—never received notice, nor did they have an opportunity to object to the production of their documents. This Court should not permit plaintiffs to skirt the rules of civil procedure to avoid putting on notice the undisputed party of interest yet find that the same undisputed party of interest waived its privilege by failing to intervene.

### F. The Order Ignores the Extensive Case Record in Finding that Defendant Waived his Objection that the Documents Were Not in His Possession, Custody, or Control

The Order found that defendant waived his objection that the documents were not in his possession, custody, and control because he purportedly only raised it "**for the first time**" at the

---

[4] Under Florida law, the privilege can be asserted by the client, the attorney, and other related parties. Fla. Stat. § 90.502(3). Typically, the "client" would also be the person who has legal title to the documents.

"**March 5 hearing,**" and because he listed the documents on his privilege log. Order at 10-11 (emphasis added). But that finding ignores the extensive case record.

Defendant first raised that objection on February 19, 2019, in responding to plaintiffs' second request for production that defined "Dr. Wright" as any corporation in which Dr. Wright was a "manager, director, officer" (D.E. 109-1, definition #2).

> Dr. Wright objects to this definition to the extent that it seeks to enforce a duty upon him to produce documents outside of his personal custody and control, or which he has no authority to provide. Moreover, Dr. Wright objects to this definition to the extent that Plaintiffs seek to improperly obtain discovery from non-parties and appear to treat any entity that has any connection to Dr. Wright as a party to this litigation, when Plaintiffs have not sued anyone other than Dr. Craig Wright individually (even after amending their complaint twice).

*See* D.E. at 114-1 at 3. Defendant made that exact same objection in responding to plaintiffs' 3rd, 4th, and 5th requests for production. *See* D.E. 114-2 at 3, 114-4 at 3; Dr. Wright's Response to Plaintiffs' Fifth Request for Production at 2, attached as Exhibit F. Defendant also raised that argument in his briefing on plaintiffs' motion to compel. D.E. 394 at 7 n.3; Hr. Tr. 73:14-74:13 (March 5, 2020).

As for defendant placing the documents on his privilege log, it was the Court's order that obligated him to do so. Per the Court's order, defendant was not able to conduct any sort of relevancy or responsiveness review. He had to immediately produce all the documents that hit on the negotiated search terms. D.E. 231 ("After *sua sponte* reconsidering its ruling from the bench on 6/28/19, the Court finds that Plaintiffs are entitled to the immediate production of all the documents containing positive hits from the search terms agreed upon by the parties, without waiting for defense counsel to conduct a relevance review."). As such, defendant's only choice was to produce the documents or to place them on the privilege log. He did the latter, as the rules of civil procedure required him to do. That cannot be a basis for waiver.

13

## G. The Order Ignores Both Florida and Australian Law In Ordering the Production of 11,000 Attorney-Client Documents

Both Florida and Australian law are clear. The attorney-client privilege survives the dissolution or liquidation of a corporation. As such, at a minimum, the Magistrate should have conducted an in-camera review of the documents before ordering their wholesale production. *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 585 (S.D. Fla. 2013) ("Florida appellate courts have imposed a burden on the state trial courts to conduct in camera review upon a very minimal showing by the proponent of the privilege, and have reversed decisions in which such review was not conducted.") (citing *Nationwide Mut. Fire Ins. Co. v. Hess*, 814 So. 2d 1240, 1243 (Fla. 5th DCA 2002) (internal quotations omitted).

Defendant submitted the declaration of Gordon Grieve, an Australian attorney with over 35 years of legal experience, to establish that it would be a violation of Australia law for defendant to produce the privileged documents. While the Order didn't outright reject the Grieve Declaration, it did misquote it. According to the Order:

> Mr. Grieve states, "Under Australian law, documents covered by the attorney client privilege are privileged from the moment of the communication. There is no need to 'assert' or 'claim' the privilege when the document is created and such documents remain privileged until privilege is waived by the holder of the privilege." DE 394-1 at ¶10. He further states, "A corporation's privilege is not extinguished by its dissolution, and upon dissolution, the right to waive a corporation's privilege passes on to the Australian Securities and Investment Commission ('ASIC')." *Id.* at ¶13. ASIC's policy is to neither assert nor waive privilege on behalf of a dissolved corporation, **but ASIC does not object to a party obtaining a court order adjudicating whether the attorney-client privilege applies and whether** "the party in possession produce the documents." *Id.* at ¶15 citing *Kellert v. Foate* [2015] NSWSC 954 (Austl.).

(emphasis added). Crucially, the bolded language that the Order appears to attribute to Mr. Grieve, appears nowhere in his declaration. But more to the point, the Greive Declaration makes clear by citing to Australian caselaw that an Australian court would not order a party to produce privileged documents, *unless the party affirmatively waives the privilege*. Australian courts have also found

14

that ASIC's policy of neither waiving nor asserting the privilege is not considered an affirmative waiver of the privilege. That is set out in the same paragraph 15 to which the Order purports to cite:

> In *Kellert v Foate* [2015] NSWSC 954, Mrs. Kellert was seeking documents from Australian Beverage, a dissolved corporation. The documents were in the physical possession of Australian Beverage's former attorney and Mrs. Kellert wrote to ASIC asking it to waive the attorney client privilege. [2015] NSWSC 954 per Harrison AsJ at [72]. **ASIC responded that it is its "policy to neither assert nor waive privilege on behalf of deregistered companies."** [at 60]. Mrs. Kellert then applied to the Supreme Court of New South Wales to order the attorney to produce the documents [at 62] **The court denied that request**, finding that [at 73]:
> **The client legal privilege** of Australian Beverage has not been extinguished by its deregistration, **nor has it been waived by any person or legal entity competent to do so**. For these reasons, **I decline to make an order that the solicitor produce the documents** referred to in paragraph [3] of Mrs. Kellert's notice of motion filed 3 February 2015 in the new proceedings.

D.E. 394-1 ¶ 15 (emphasis added). As such, the Order's conclusion as to Australia law is incorrect.[5] For that reason, the Order should have considered whether there was a compelling need for the documents. *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 529 (S.D.N.Y. 1987) (The "most important" factor in determining whether to order the production of documents that would violate foreign law is "degree of importance of the requested discovery.").

Such an analysis would have shown that there was no compelling need for the privileged attorney-client documents. Plaintiffs have not shown why they needed the attorney client-communication. Defendant has already produced over 200,000 documents, and as previously

---

[5] The Order conflates the preservation of the attorney-client privilege with the creation of that privilege. In Footnote 5, the Order refers to Local Rule 26.1(e)(2)(A) for the proposition that the attorney-client privilege doesn't "**continue[] to exist until it is waived**. If the privilege is not timely asserted, it is waived as a matter of law." (emphasis added). There is no question that defendant preserved the privilege by placing the documents on the log and the corporations couldn't waive that which they were not aware of. As the Order later recognizes, "Under both countries' laws, the attorney-client privilege is created at the time of the confidential attorney-client communications: **it continues to exist until waived**." Order at 12. (emphasis added).

15

stated, many of the privileged attorney-client documents are not even relevant to this lawsuit. They simply hit on broad search terms. As such, under the judicial comity doctrine, the Order should not have ordered defendant to produce the privileged attorney-client communications.

> **H. The Order Failed to Make a Determination Whether the 11,000 Privileged Communications Were Relevant and Necessary to Plaintiffs' Case Before Ordering their Wholesale Production**

Even if the Order determined that the judicial comity doctrine was not applicable, the Magistrate still should have conducted an analysis as to whether the documents were relevant to plaintiffs' claims prior to ordering their wholesale production. "The attorney-client privilege . . . is the oldest confidential communications privilege known to the common law. . . . It is therefore not only an interest long recognized by society but also one traditionally deemed worthy of maximum legal protection." *Hershey Co. v. Cadiz*, 2006 WL 8431510, at *6 (S.D. Fla. 2006) (citing 8 C. Wright & A. Miller, Federal Prac. & Proc. § 2017 (2d ed. 1994)). For that reason, it generally is only when the privilege is withholding "relevant information from the judicial process" that courts construe the privilege narrowly to order the production of otherwise privileged documents. *S.E.C. v. Carrillo Huettel LLP*, 2015 WL 1610282, at *3 (S.D.N.Y. 2015) (citing *PCS Nitrogen, Inc. v. Ross Development Corp.,* 2011 WL 3665335, at *4 (D.S.C. 2011); *Wallace v. Huntington National Bank,* 2010 WL 3603494, at *7 (S.D. Ohio 2010). But the Order never made a determination as to whether the privileged documents were relevant, nor did the Magistrate review any of the privileged documents in camera.

Had the Magistrate conducted that analysis or an in-camera review, it would have been clear that a large percentage of the 11,000 privileged documents are not relevant to plaintiffs' claims, nor are they necessary to plaintiffs' prosecution of the case. While the Order states in a conclusory manner that "**Dr. Wright admits** that he currently has actual possession of documents

16

that **would be responsive** to Plaintiffs' discovery requests . . . . ," Dr. Wright said nothing of the sort. Order at 8 (emphasis added). To the contrary, defendant stated in his Opposition *that many of the privileged documents that plaintiffs sought are not relevant to this case.*[6] Opposition at 10. This is because per the Magistrate's prior order, defendant was required to produce all documents that hit on the broad search terms regardless of their responsiveness to the document requests or the relevance to this lawsuit. Opposition at 9-10. As for the plaintiffs' need for the documents (even if they were relevant), plaintiffs have not made any showing why they needed the privileged documents beyond the over 200,000 documents that defendant has produced to date.

## CONCLUSION

For all of the foregoing reasons, the Order is clearly erroneous and contrary to law. The Court should reverse and vacate the Order.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3), I certify that counsel for the movant has conferred with all parties who may be affected by the relief sought in this motion. Plaintiffs' counsel does not agree with the relief sought.

*Attorneys for Dr. Craig Wright*

RIVERO MESTRE LLP
2525 Ponce de Leon Boulevard, Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: amcgovern@riveromestre.com
Email: zkass@riveromestre.com
Email: receptionist@riveromestre.com

---

[6] Defendant also never "admitted that he has **actual possession** of the documents. . . ." As shown above, defendant has mere "access" to the documents. For that same reason, the statement on page 13 of the order that "Dr. Wright currently has actual possession of the documents" is also inaccurate.

that **would be responsive** to Plaintiffs' discovery requests . . . . ," Dr. Wright said nothing of the sort. Order at 8 (emphasis added). To the contrary, defendant stated in his Opposition *that many of the privileged documents that plaintiffs sought are not relevant to this case.*[6] Opposition at 10. This is because per the Magistrate's prior order, defendant was required to produce all documents that hit on the broad search terms regardless of their responsiveness to the document requests or the relevance to this lawsuit. Opposition at 9-10. As for the plaintiffs' need for the documents (even if they were relevant), plaintiffs have not made any showing why they needed the privileged documents beyond the over 200,000 documents that defendant has produced to date.

## CONCLUSION

For all of the foregoing reasons, the Order is clearly erroneous and contrary to law. The Court should reverse and vacate the Order.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3), I certify that counsel for the movant has conferred with all parties who may be affected by the relief sought in this motion. Plaintiffs' counsel does not agree with the relief sought.

*Attorneys for Dr. Craig Wright*

RIVERO MESTRE LLP
2525 Ponce de Leon Boulevard, Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: amcgovern@riveromestre.com
Email: zkass@riveromestre.com
Email: receptionist@riveromestre.com

---

[6] Defendant also never "admitted that he has **actual possession** of the documents. . . ." As shown above, defendant has mere "access" to the documents. For that same reason, the statement on page 13 of the order that "Dr. Wright currently has actual possession of the documents" is also inaccurate.

>By: s/ Amanda McGovern
>AMANDA MCGOVERN
>Florida Bar No. 964263
>ANDRES RIVERO
>Florida Bar No. 613819
>SCHNEUR KASS
>Florida Bar No. 100554
>ZAHARAH MARKOE
>Florida Bar No. 504734

**CERTIFICATE OF SERVICE**

I certify that on March 23, 2020, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF or by U.S. Mail.

>/s/ Schneur Kass
>SCHNEUR KASS
>Florida Bar No. 100554