## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC,<br><br>                Plaintiffs,<br><br>v.<br><br>CRAIG WRIGHT,<br><br>                Defendant. | CASE NO.: 9:18-cv-80176-BB/BR |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S
## OBJECTIONS TO DISCOVERY ORDER

To say that discovery in this case has been challenging would be a dramatic understatement. An adversary who submits false declarations, offers contradictory perjurious testimony under oath, and submits false documents that even his own counsel are forced to disavow, severely hinders the ability to seek the truth. Defendant's sweeping and vague assertions of attorney-client, work-product and joint defense privileges were the latest gambit by Dr. Wright that required judicial intervention to force him to comply with his most basic discovery obligations.

The sheer number of privilege assertions was part of the problem. The vague descriptions of what was being withheld made any meaningful analysis on a document by document basis impossible. More troubling was the web of companies Defendant embraced as vehicles to hide documents while at the same time disavowing any control over those companies when it suited his interest.  More fundamentally, almost all of the companies Defendant attempted to use as a tool to assert "privileges," no longer exist. As set forth below, any privilege these companies may have once had, did not survive their dissolution.

Equally troubling was the reappearance of Denis Mayaka, who previously submitted a declaration swearing to the authenticity of Tulip Trust II. In December and January, he showed up in the role of the anticipated "bonded courier," but without any of the promised key slices, instead bringing a new Tulip Trust III document, a list of bitcoin addresses associated with that trust, a new declaration, and a new claim (made for the first time after 23 months of litigation) that he is an attorney that causes privilege to attach to materials that are not only highly relevant but highly suspect.

The Order forcing Dr. Wright to respond to simple interrogatories and produce highly relevant unprivileged documents was not clear error, it was correct. The Court should overrule Dr. Wright's objections.

## STANDARD OF REVIEW

"Pursuant to the Federal Magistrate's Act, a district court reviews a magistrate judge's ruling on non-dispositive matters under the clearly-erroneous or contrary-to-law standard." *Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1327 (11th Cir. 2020) (citing 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72). "Unsurprisingly, a routine pretrial discovery motion" like the one at issue here "is not included in this [Act's] list of dispositive motions." *Id.*

"It is 'extremely difficult to justify alteration of the magistrate judge's nondispositive actions.'" *Doe v. Lynn Univ., Inc.*, No. 9:16-CV-80850, 2017 WL 275448, at *1 (S.D. Fla. Jan. 19, 2017) (quoting 12 Wright, Miller & Marcus, *Federal Practice and Procedure Civ. 2d* § 3069). As this Court observed in its ruling on a previous objection, the clearly erroneous or contrary to law standard "is an extremely deferential standard of review, and this 'high bar' is "rarely invoked." ECF No. [373] at 12 (quoting *Cox Enters., Inc. v. News-Journal Corp.*, 794 F.3d 1259, 1272 (11th Cir. 2015)).

"The magistrate judge's orders should not be disturbed absent a clear abuse of discretion that leaves the reviewing court with the 'definite and firm conviction that a mistake has been

committed.'" *Id.* (quoting *Linea Naviera de Cabotaje C.A. v. Mar Caribe de NevaGacion, C.A.*, 169 F. Supp. 2d 1341, 1355 (11th Cir. 2001)). "An order is contrary to law where "it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Doe v. Lynn Univ., Inc.*, No. 9:16-CV-80850, 2017 WL 275448, at *1 (S.D. Fla. Jan. 19, 2017).

## ARGUMENT

### I.    The Order Overruling Dr. Wright's Interrogatory Objections Was Correct

Dr. Wright first challenges an order overruling his objections to interrogatories regarding how he suddenly obtained information about his bitcoin holdings.[1] This Court specifically authorized the interrogatories in its Order dated January 16, 2020. ECF No. [382]. Dr. Wright objected to three interrogatories as calling for privileged communications between Ms. Watts and counsel for the so-called "Tulip Trust" that Ms. Watts subsequently forwarded to Dr. Wright.[2] Dr. Wright identified that attorney as Denis Mayaka. *See* Joint Status Report, ECF No. [404] at 11; Def. ROG Responses, ECF No. 404-1 at 4.

Mr. Mayaka's name previously came up during Dr. Wright's perjurious campaign to thwart discovery into his bitcoin holdings. As Plaintiffs explained to Judge Reinhart at a discovery hearing last December:

> MR. FREEDMAN: Denis Mayaka submitted a sworn declaration attaching a version of Tulip Trust II, the part of the trust that this Court has found were -- don't exist. He also was the individual that sold Tulip Trading, LTD, to Craig in 2014, despite its inclusion in trust documents from 2012 that Denis Mayaka's also involved in. And so it just appears that this is an accomplice of Craig in his attempt to obfuscate the current location of the Bitcoin and what he did with them. And so we believe that communications with somebody who appears so intimately involved with that scheme would be relevant.

Hrg. Tr. 39:1–12 (Dec. 18, 2019).

---

[1] A detailed summary of the dispute over this information is included in Plaintiffs' in the joint status report filed under seal on February 24, 2020. ECF No. [404] at 1–12.

[2] Judge Reinhart also overruled Dr. Wright's objections based on spousal privilege, but Dr. Wright has not objected to that ruling.

In other words, Mr. Mayaka tends to appear on the scene with evidence Dr. Wright needs, when he needs it. Last year Mr. Mayaka swore to the existence and authenticity of Tulip Trust II, but there was no indication that Trust II was superseded by Tulip Trust III in 2017, as Defendant now claims.  Stated differently, in response to an order requiring Dr. Wright to produce all copies of the blind trust, in May 2019, Mr. Mayaka swore to this Court that a copy of Tulip Trust II was "authentic," while completely failing to mention that he allegedly had in his possession Tulip Trust II, a 2017 trust document that purports to supersede Tulip Trust II.

This is probably best explained by the fact in May 2019, Dr. Wright *also* failed to mention the existence of Tulip Trust 3, notwithstanding that he was subject to an express Court Order directing that he reveal all of his trusts related to his bitcoin holdings. ECF No. [217]. Indeed, Defendant didn't produce Tulip Trust 3 until January 2020. – Mr. Mayaka then dutifully swore that "I am lawyer" and Dr. Wright produced a LinkedIn page to establish Mr. Mayaka's bona fides as a lawyer. ECF No. [426-1], [426-2]. The signature line of the declaration had a placeholder for a 'legal identification number" that was left blank. In a case where the Defendant has repeatedly forged evidence, Plaintiffs continue to have serious doubts about the declaration's authenticity and Judge Reinhart was fully justified to question it too.

A. <u>The Rules Of Evidence Cited By Dr. Wright Are Irrelevant Because Courts Are Not Bound By Them When Deciding Preliminary Questions</u>

To establish clear error, Dr. Wright relies in part on Federal Rules of Evidence 404 and 902(8), as well as the federal evidence statute for unsworn declarations, 28 U.S.C. § 1746. *See* ECF No. [432] at 3–5.

But these rules are not governing law as they do not bind the court when deciding preliminary questions of privilege; flouting them, therefore, could never make such an order "contrary to law." Instead, the relevant provision is Federal Rule of Evidence 104(a):

> **In General.** The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege.

FED. R. EVID. 104.

"The Supreme Court has further explained that in proceedings where the district court is considering the admissibility of evidence, it 'should receive the evidence and give it such weight as the court's experience and judgment counsel.'" *United States v. Dipirro*, 649 F. App'x 930, 933 (11th Cir. 2016) (quoting *United States v. Matlock*, 415 U.S. 164, 175 (1974) (discussing adoption of FED. R. EVID. 104)). A district court "can be trusted in general . . . to give evidence its proper weight without regard to the technical rules of evidence." *U.S. Commodity Futures Trading Comm'n v. S. Tr. Metals, Inc.*, No. 14-22739-CIV, 2016 WL 4055685, at *2 (S.D. Fla. July 19, 2016) (alteration in original) (quoting *Greycas, Inc. v. Proud, 826 F.2d 1560*, 1568 (7th Cir. 1987)).

Judge Reinhart was therefore free to determine that the Mayaka declaration "could easily have been generated by anyone with word processing software and a pen," and therefore insufficiently authenticated, "particularly given [the] prior finding that Dr. Wright has produced forged documents in this litigation." ECF No. [420] at 6.

Any analysis of how the order applied or did not apply the rules of evidence is beside the point because those rules could never be a basis for clear error in this context.

B. Judge Reinhart Properly Considered Dr. Wright's History of Lying And Forging Documents When Evaluating the Evidence Supporting His Privilege Assertions

Dr. Wright's position is that it would be clear error for a court to consider his history of forging documents when evaluating the legitimacy of new documents Dr. Wright provided to substantiate not just his privilege claims, but the fact that Mr. Mayaka even exists, or is an attorney.

"The credibility of a witness is always relevant." *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, No. 07-22988-CIV, 2008 WL 2645680, at *7 (S.D. Fla. June 26, 2008). While Dr. Wright understandably wishes it were otherwise, he "does not write on a clean slate." Order, ECF No. [277] at 20. The Court is not required to pretend that he does, nor should it. "Those 'who lie, evade and fail to tell the whole truth obviously enjoy an advantage over honest litigants." *Forsberg v. Pefanis*, 634 F. App'x 676, 680 (11th Cir. 2015).

C.   Dr. Wright Has Not Objected To Any Of The Alternative Independent Grounds For Judge Reinhart's Ruling On His Interrogatory Objections

Dr. Wright's objects only to Judge Reinhart's ruling that the record did not establish the existence of an attorney client relationship between Mr. Mayaka and Ms. Watts as trustee. But it did not address Judge Reinhart's three alternative grounds for ruling that Dr. Wright's objection would be overruled even if such a relationship existed, any of which would be independently sufficient to support overruling the objections to the interrogatories. There three alternative grounds were as follows:

1)   That even if an attorney client relationship existed with Watts as trustee, the "facts create a strong inference that any communications surrounding the transfer of these materials to Ms. Watts were not intended to remain confidential." ECF. No. [420] at 7.

2)   That even if the communications were intended to remain confidential, "by disclosing to Dr. Wright any otherwise-confidential communications with counsel, Ms. Watts has waived the privilege for those communications." ECF No. [420] at 7.

3)   That even if privilege existed and was not waived, "Dr. Wright lacks legal authority to assert an attorney-client privilege over communications between the trustee and counsel for the trust." ECF No. [420] at 7.

By failing to object to these rulings, Dr. Wright has waived any challenge to them. *Perez v. New Auto Image Mktg., Inc.*, No. 15-cv-21893, 2016 WL 7540272, at *2 n.4 (S.D. Fla. May 20, 2016) (party that "failed to object to [the Magistrate Judge's] ruling" had "waived his ability to present evidence" relating to a particular issue). Thus the rulings must be upheld on these ground alone.

## II.     The Order Overruling Third Party Privilege Objections Was Correct

Dr. Wright still has not specified which companies' privileges he has claimed. Nor has he identified which companies' privileges apply to which documents. The order overruling his privilege objections cannot constitute clear error when it is not even clear whose privileges Dr. Wright is talking about, other than that it includes a "few dozen" defunct Australian entities.

It is Defendant's burden to prove a valid privilege. *See In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1225 (11th Cir. 1987). "The party resisting discovery has a heavy burden of showing why the requested discovery should not be permitted." *Henderson v. Holiday CVS, L.L.C.*, 269 F.R.D. 682, 686 (S.D. Fla. 2010).

Purposefully broad and vague claims of privilege are not sufficient to meet this burden. The Court should overrule Dr. Wright's objections on this ground alone. As explained below, there are independent grounds supporting Judge Reinhart's order.

### A.  Dr. Wright's Complaints About Notice Are Frivolous

Dr. Wright complains he was not on notice about the potential need for him present factual evidence to substantiate his privilege claims at the discovery hearing. As an initial matter, this is counterfactual. Plaintiffs' brief (ECF No. [389]) and argument (Hrg. Tr. 36:23–50:14 (Jan. 9, 2020)) were clear that Dr. Wright had not met his burden of demonstrating privilege due to the unidentified companies, his dissociation from the control group, and their dissolved status. The Court offered dates to "resolve all the privilege issues." Hrg. Tr. 22:15-18 (Jan. 29, 2020). Dr.

Wright has distorted a brief conversation about scheduling at the February 25, 2020 hearing to suggest Judge Reinhart narrowed the privilege issues. The minute entry for February 25, 2020 suggests otherwise and put Dr. Wright on notice that the "Court will resume the hearing to consider whether Defendant has satisfied his burden to establish privilege at the hearing already scheduled for 3/5/20 at 2:30 p.m." Plaintiffs are at a loss as to what other lengths the Court might have gone to put Dr. Wright on notice that he might need to present evidence to meet his burden.

Regardless, Dr. Wright fails to explain how this alleged lack of notice, even if it happened, was error, and fails to cite any law at all in support of this argument. That is insufficient to establish clear error.

Finally, Plaintiffs want to be clear that any suggestion Defendant's due process rights were violated is utter nonsense. To the contrary, it is Dr. Wright that has repeatedly played games by withholding material information in this case. Even now, Dr. Wright has not definitively identified the companies that supposedly hold the privilege he wants to benefit from, much less done so on a document-by-document basis.

Plaintiffs' raised this criticism in their initial brief on the third-party privilege issue, pointing out that Dr. Wright's privilege log "does not identify which company's privilege is being claimed." ECF No. [389] at 5. Plaintiffs identified 18 companies that potentially held a privilege asserted by Dr. Wright and noted virtually all were defunct. Dr. Wright declined to identify specific companies in his response.[3]

---

[3] Dr. Wright claims to have listed all attorneys in his privilege log, ECF No. [434] at 6. But the issue is the identity of the companies, *i.e.,* the identity of the <u>client</u> in the attorney-<u>client</u> relationship being alleged. Moreover, while Defendant claims to have attached "updated privilege logs showing what documents relate to each corporations," ECF No. [434] at 10 n.3, these appear to be the same materials from the hearing, which claims privileges in the name of the Plaintiff, W&K!?

Dr. Wright obviously understood the issue, though, because the night before the hearing he provided a spreadsheet identifying "which corporation is implicated" for 1,600 of his 11,000 privilege log entries. Hrg. Tr. 60:9–12 (Mar. 5, 2020). The updated list included companies Plaintiffs had not identified but left out others. Most inexplicable, though, it showed Dr. Wright was claiming privilege on behalf of W&K, the Plaintiff, against itself. Hrg. Tr. 80:2–13 (Mar. 5, 2020) ("So what appears to be going on for those documents is that Dr. Wright is asserting our privilege in order to avoid producing documents to us. Frankly, that seems like it can't be right.").

This is apparently something Dr. Wright has decided to stand by, since the "updated" privilege logs attached to his objections show hundreds of documents where W&K is identified as the company holding the privilege. *See* ECF No. [434 Ex. D] at 3, 27, 32, 40, 49, 81; ECF No. [434 Ex. E] at 1; 3, 5–10, 85–86, 88–94, 98, 101–102, 104.

B.  Dr. Wright Lacked Authority To Claim Privilege For Former Defunct Companies

The Order determined Dr. Wright lacked authority under Florida law to claim privilege on behalf of unspecified companies because he was not a representative specified in the relevant statute.  Judge Reinhart held that "[u]nder Florida Statute Section 90.502, the attorney-client privilege can be claimed only by a limited group of people," but the statute did not extend to "a person who was formerly associated with these entities in some capacity, and who retains actual possession of documents that belonged to the entities." ECF No. [420] at 2.

The core holding in the Order is that Dr. Wright failed to meet his burden to establish privilege for the third party companies, but Dr. Wright's objection addresses that issue only once, in a footnote, ECF No. [434] at 10 n.3, where he asserts that new documents showing former directorships would show that he is a similar representative to a "successor, assignee, or trustee in dissolution." But that's precisely the argument Judge Reinhart rejected, because a "former director" is not similar to those

things and because the parties do not dispute that if anyone has those roles it would be the Australian Securities and Investment Commission (ASIC), not Dr. Wright.[4]

After that main conclusion, the Order proceeds to refute a number of other issues injected by Dr. Wright, none of which were relevant to whether Dr. Wright's privilege assertions were valid, including whether he had possession, custody, or control of the documents (held: argument was waived); whether Dr. Wright's producing documents would violate Australian law (held: it would not but wouldn't matter if it did); and whether producing the documents would be an undue burden (held: it would not be).

*1.   The Order's Privilege Ruling Was Not Based On The Alter Ego Doctrine*

Dr. Wright takes issue with the Order's reference to the companies as "effectively the alter egos" of him and his wife, but his arguments grossly distort the context of this statement, which had nothing to do with privilege at all. Rather, it was articulated in a discussion of the many reasons that "Dr. Wright's protestations of undue burden ring hollow." ECF No. [420] at 13.

Specifically, the Court inferred the companies were "effectively the alter egos of Dr. Wright and Ms. Watts, and that there would not be any undue burden in notifying the lawyers involved, if in fact any exist" because "'it appears that the assets of many of these entities were transferred into trust by Dr. Wright and Ms. Watts in 2017 and that most of the companies were dissolved thereafter…" ECF No. [420] at 13.

That's not improper and unfair, and it's certainly not clear error—just common sense.

---

[4] In a footnote, Dr. Wright hypothesizes for the first time about the evidence he could present to show his relationship to certain companies and the privileges they held or hold. None of it would change the fact that these companies are defunct and the privileges at issue no longer exist. And nothing prevented him from conveying this information to Plaintiffs and the Court months ago. Dr. Wright chose not to, and now it is too little too late. *Endurance Am. Specialty Ins. Co. v. United Constr. Eng'g, Inc.*, 343 F. Supp. 3d 1274, 1278 n.3 (S.D. Fla. 2018) (concluding argument waived for insufficient development), *aff'd*, 786 F. App'x 195 (11th Cir. 2019).

2.  *The Order's Privilege Ruling Was Not Based On Waiver By ASIC And Correctly Concluded ASIC Does Not Assert Privilege For Defunct Companies*

Dr. Wright similarly objects to the Order's conclusion that the Australian entities effectively waived any privilege by failing to assert it. But here the Court was merely considering whether ordering production of the documents might violate Australian law. Judge Reinhart concluded, based on materials submitted by Dr. Wright, that under Australian law, ASIC was effectively waiving privilege by failing to assert it. This discussion was explicitly academic, however, as the Order itself explains that even if production violated Australian law, Dr. Wright had not shown why that should affect the decisions of this Court.[5]

While ultimately irrelevant, Dr. Wright's objection also falsely accuses Judge Reinhart of misstating the contents of the declaration from Australian lawyer Gordon Grieve. The Order stated:

> ASIC's policy is to neither assert nor waive privilege on behalf of a dissolved corporation, but ASIC does not object to a party obtaining a court order adjudicating whether the attorney-client privilege applies and whether "the party in possession produce the documents." *Id.* at ¶15 citing *Kellert v. Foate* [2015] NSWSC 954 (Austl.).

Dr. Wright claims that the words "but ASIC does not object to a party obtaining a court order adjudicating whether the attorney-client privilege applies" are not in the declaration. ECF No. [434] at 12. But the Order does not place that language in quotation marks. Instead, it appears to be relying on (i) the statement in the Declaration that it's ASIC's "policy to neither assert nor

---

[5] Conclusory assertions that Australian law is relevant, with no choice of law analysis or proffer of facts about the privilege held over the documents at issue are insufficient to invoke Australian law. *See Monaker Grp., Inc. v. RealBiz Media Grp., Inc.*, No. 16-24978-CIV, 2017 WL 2911797, at *5 (S.D. Fla. Jan. 15, 2017) (rejecting choice of law argument because the plaintiff failed to offer more than conclusory assertions without analysis); *see also Endurance Am. Specialty Ins. Co. v. United Constr. Eng'g, Inc.*, 343 F. Supp. 3d 1274, 1278 n.3 (S.D. Fla. 2018) (concluding argument waived for insufficient development), *aff'd*, 786 F. App'x 195 (11th Cir. 2019). Defendant also did not provide the required reasonable notice that he would be raising an issue of Australian law. He did not mention Australian law in his privilege log and never served a Rule 44.1 notice before his response. Courts decline to apply foreign law when the timing of notice is unreasonable. *See In re Application of Sergeeva*, No. 1:13-CV-3437-LMM-RGV, 2015 WL 12862925, at *8 (N.D. Ga. Oct. 13, 2015) (rejecting foreign law defense to production of documents as raised too late), *aff'd sub nom. Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194 (11th Cir. 2016)

waive privilege on behalf of deregistered companies" (D.E. [394-1] at ¶ 15) and (ii) the caselaw Grieve cited in support of that statement, namely that the Court held it was:

> ASIC's policy is to neither assert or waive privilege on behalf of the deregistered Australian Beverage. ln other words, ASIC does not waive privilege, but rather takes a neutral position. *However, ASIC does not object to Mrs Kellert seeking from this Court an order that the solicitor produce the documents to her.*

D.E. [394-1] at 41 (emphasis added).

In other words, ASIC does not waive or claim privilege but does not object to court orders to produce documents. This was exactly the point Judge Reinhart made and Dr. Wright's objection appears to be predicated on the fact that Judge Reinhart reviewed the actual authorities cited in the declaration itself, rather than relying on the conclusions drawn by Dr. Wright's hired expert.

C.  <u>Dr. Wright Has The Documents And Waived Any Challenge To Possession, Custody, And Control By Producing Them And Failing To Brief The Issue</u>

Dr. Wright has always had possession of these documents, but now claims they belong to companies that no longer exist. Even if they did, the documents are commingled and Dr. Wright appears incapable of attributing specific documents to specific defunct companies.

Dr. Wright claims he objected to producing "company" documents but never sought a protective order to prevent it. Instead he has produced the thousands of "company" documents for which he has not asserted privilege. In doing so, he waived any objection to whether he had "possession, custody, or control" of any so-called "company" documents. *Allied Veterans of the World, Inc. v. Seminole Cty., Fla.*, No. 611CV155ORL28GJK, 2012 WL 13102411, at *6 (M.D. Fla. May 2, 2012) ("Furthermore, if a party objects to a discovery request, but then responds to the request without complying with the aforementioned rules allowing a clearly defined partial response, the party is deemed to have waived its objection.").

Even if it hadn't been waived through production of the non-privileged documents, the objection was waived when he never raised the issue in his briefing on the privilege issue. *See* ECF No. [394]. Belatedly raising it at the hearing, was too late. The argument was waived. *See Benfatto v. Wachovia Bank, N.A.*, No. 08-60646-CIV, 2008 WL 4938418, n.2 at *2 (S.D. Fla. Nov. 19, 2008) (The undersigned notes that Wachovia did not support this contention in its response and, therefore, considers the argument to be waived.).

Again, he has the documents. "Custody" and "control" over documents is irrelevant when you have actual "possession."  *See Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984) (distinguishing between possession and "the legal right to obtain the documents requested upon demand.")

D. <u>Dr. Wright Cannot Claim A Corporate Privilege For His Personal Gain.</u>

While not relied upon by the Order, Dr. Wright's objections should also be overruled because he cannot invoke a former company's privilege for his own benefit. In his earlier opposition, Craig cited a South Carolina case for the proposition that a dissolved corporation's privilege continues to exist. D.E. [394] at 5 (citing *PCS Nitrogen, Inc. v. Ross Dev. Corp.*, No. 2:09-3171-MBS, 2011 WL 3665335, at *3–4 (D.S.C. 2011)). But that case only underscored that even if Florida law recognized a privilege held by defunct companies (it doesn't), Craig would lack the power to invoke it:

> Despite the court's finding that the attorney-client privilege of a dissolved corporation can be asserted under certain circumstances, the court finds that . . . assertion of the privilege . . . is inappropriate. As the parties asserting the attorney-client privilege, Defendants have the burden of proving that the privilege applies. Defendants have not met this burden. **The Supreme Court has stated that it is impermissible for corporate decision makers to assert the attorney-client privilege to protect their own interests instead of those of the corporation.** The allegations of PCS in this case are that the only interests that would be protected by the assertion of the privilege for communications related to Ross's dissolution are those of the Ross Directors. Ross has not set forth any other reason for raising the privilege. Specifically, Ross, as a dissolved corporation, has not asserted any

interest in maintaining goodwill, protecting its reputation or protecting any available assets. On the facts of this case, the court finds that the assertion of Ross's attorney-client privilege . . . appears to be an attempt to protect the personal interests of the Ross Directors. This would be an impermissible purpose. Therefore, Ross's motions for protective orders are denied . . . **Any documents proposed to be withheld by asserting the attorney-client privilege solely to protect the interests of the Ross Directors would be improper.**

*PCS Nitrogen, Inc.*, 2011 WL 3665335, at *4–5 (emphasis added) (citations omitted).

Because they largely no longer exist, Dr. Wright's former companies cannot benefit from his privilege claims. Dr. Wright's privilege assertions are naked attempts to benefit himself by gaining an unfair advantage through using these former companies to avoid producing relevant evidence to Plaintiffs. Even his own authorities make clear that this would be "inappropriate," "impermissible," and "improper."

E.   The Law Is Clear That A Company's Privilege Dies With It

Virtually every court to have considered the issue has reached this conclusion for a few reasons. First, while there may be a trustee or similar person that could assert privilege if the process of dissolution is still ongoing, "once a corporation is truly extinct, it has lost practical ability to assert the privilege." *S.E.C. v. Carrillo Huettel LLP*, 13 CIV. 1735 GBD, 2015 WL 1610282, at *2–3 (S.D.N.Y. Apr. 8, 2015). "Simply, there is no longer a viable corporate client to assert the privilege." *U.S. v. Cox*, 8:14-CR-0140-T-23MAP, 2015 WL 13741738, at *3–5 (M.D. Fla. Oct. 7, 2015), *report and recommendation adopted sub nom. U.S. v. Biddix*, 8:14-CR-140-T-23MAP, 2015 WL 9473949 (M.D. Fla. Dec. 29, 2015).

Second, where companies have "dissolved with no legal successor to maintain operations, and no remaining management with authority to handle the company's post-dissolution wind-up," it "only reinforces the notion that it has no privilege to protect." *Id*

A dissolved corporation does not have the same concerns as a deceased natural person and therefore has less need for the privilege after dissolution is complete. As there are usually no assets left and no directors, the protections of the attorney-

13

client privilege are less meaningful to the typical dissolved corporation. Moreover, because the attorney-client privilege has the effect of withholding relevant information from the factfinder, it should be applied only when necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to his or her attorney.

*City of Rialto v. U.S. Dept. of Def.*, 492 F. Supp. 2d 1193, 1197–201 (C.D. Cal. 2007).

In other words, "interests that are furthered by the extension of the privilege beyond the death of a natural person simply do not apply in the context of a corporate entity.'" *Cox*, 2015 WL 13741738, at *3–5 (quoting *S.E.C. v. Carrillo Huettel LLP*, No. 13-cv-1735 (GBD), 2015 WL 1610282, at *2 (S.D.N.Y. Apr. 8, 2015)); *In re Fundamental Long Term Care, Inc.*, 2012 WL 4815321, at *8–9 ("Second, and perhaps more important, the rationale for extending the attorney-client privilege to corporations does not apply to dissolved corporations.").

"When the corporation is gone, so too is its interest in protecting its communications; the need to promote full and frank exchanges between an attorney and agents of his corporate clients disappears when the corporation employing those clients has departed." *Trading Techs. Intern., Inc. v. GL Consultants, Inc.*, CIV.A. 05 C 5164, 2012 WL 874322, at *4 (N.D. Ill. Mar. 14, 2012).

F.   <u>The Order Was Correct Not To Review All The Documents In The Privilege Log Because Dr. Wright' Abuse of The Privilege Was Tantamount To Not Producing Any Privilege Log At all.</u>

Dr. Wright contends the Court should not have ordered the documents produced without a showing of relevance because it generally is only when "when the privilege is withholding 'relevant information from the judicial process' that courts construe the privilege narrowly to order the production of otherwise privileged documents." D.E. [434] at 16 (quoting *S.E.C. v. Carrillo Huettel LLP*, 2015 WL 1610282, at *3 (S.D.N.Y. 2015)). Dr. Wright's interpretation of *Carrillo* is beyond tortured. The *Carrillo* court held that "limiting the duration of the attorney-client privilege to the life of a corporation is consistent with the principle that the privilege is to be construed narrowly because it withholds relevant information from the judicial process." *Carrillo Huettel LLP*, 2015 WL 1610282,

at *3. In other words, privilege is always construed narrowly, not rarely, and one of the implications is that defunct companies—like Dr. Wright's—do not enjoy a privilege that survives their corporate deaths.  There is no basis for Dr. Wright to assert that the reasoning in *Carrillo* flips the burden of proof in his favor when it explicitly did quite the opposite.

Moreover, Florida law is clear:

> Because corporate claims of attorney-client privilege are treated with more suspicion, the Florida Supreme Court held to assert attorney-client privilege a corporation must demonstrate: (1) the communication would not have been made but for the contemplation of legal services; (2) the employee making the communication did so at the direction of his or her corporate superior; (3) the superior made the request of the employee as part of the corporation's efforts to secure legal advice or services; (4) the content of the communication relates to the legal services being rendered, and the subject matter of the communication is within the scope of the employee's duties; (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*1550 Brickell Associates v. Q.B.E. Ins. Co.*, 253 F.R.D. 697, 699 (S.D. Fla. 2008).

Dr. Wright makes no pretense of having shown even one of these factors, much less all five. His attempt to put the burden on Plaintiffs to establish relevance is misdirection. It is his burden and he fell far short of meeting it. Dr. Wright's privilege log was so deficient it was as though he had not produced any privilege log at all. He had plenty of opportunities to address it but chose not to. Dr. Wright's "claim of privilege is too little, too late" because he is "effectively asking for leave to start over," and in these situations courts regularly order documents produced in their entirety. *Pensacola Firefighters' Relief Pension Fund Bd. of Trustees v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 265 F.R.D. 589, 592–94 (N.D. Fla. 2010).

## CONCLUSION

For those reasons, the Court should overrule Dr. Wright's objections.

Dated:  April 1, 2020                          Respectfully submitted,

                                               By: */s/ Velvel Devin Freedman*
                                               Velvel (Devin) Freedman, Esq.
                                               ROCHE CYRULNIK FREEDMAN LLP
                                               200 S. Biscayne Blvd.
                                               Suite 5500 Miami, Florida 33131
                                               vel@rcfllp.com

                                               Kyle W. Roche, Esq.
                                               Joseph M. Delich
                                               ROCHE CYRULNIK FREEDMAN LLP
                                               99 Park Avenue, 19th Floor
                                               New York, New York 10016
                                               kyle@rcfllp.com
                                               jdelich@rcfllp.com

                                               Andrew S. Brenner, Esq.
                                               **BOIES SCHILLER FLEXNER LLP**
                                               100 SE 2nd Street, Suite 2800
                                               Miami, Florida 33131
                                               abrenner@bsfllp.com


                                               *Counsel to Plaintiffs Ira Kleiman as*
                                               *Personal Representative of the Estate of*
                                               *David Kleiman and W&K Info Defense*
                                               *Research, LLC.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 1, 2020, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document

is being served this day on all counsel of record via transmission of Notices of Electronic Filing

generated by CM/ECF.

                                               */s/ Velvel Freedman___*
                                               VELVEL (DEVIN) FREEDMAN