**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC

  plaintiffs,
v.              **Case No. 9:18-cv-80176 (BB/BR)**

CRAIG WRIGHT,

  defendant.
_____/

**DR. CRAIG WRIGHT'S REPLY IN SUPPORT OF
HIS OBJECTION TO MAGISTRATE ORDER ON DISCOVERY**

## **INTRODUCTION**

The issue in front of this Court started out as a relatively routine dispute related to the privileged status of multiple corporations' privileged attorney-client communications, albeit with a slightly novel twist. Some of the corporations are in liquidation or dissolved and plaintiffs requested the documents from a former director of the corporations, not the actual corporations (or the liquidators or ASIC).

But the hearing on the straightforward legal issues transcended into an Order based in significant part on personal attacks against defendant and his Kenyan attorney that are totally unrelated to the legal issues. In their opposition [D.E. 445] ("Opposition"), plaintiffs accuse defendant of intentionally "hid[ing] documents" and not complying with the "most basic discovery obligations." Opp. at 1. Notably, plaintiffs offer no evidence to support those serious accusations. Instead, they drone on for pages about other subjects, such as Tulip trusts and bonded couriers.

At bottom, the order on discovery [D.E. 420] ("Order") ordered defendant to produce over 11,000 undisputedly privileged documents that contained thousands and thousands of direct communications between an attorney and a client for the purposes of obtaining legal advice. The vast majority of those documents are not relevant to this litigation (something that plaintiffs don't contest), and plaintiffs never served the corporations (as the law required) to put them on notice that their documents were being sought.

The Order is clearly erroneous and contrary to law. It runs afoul U.S. law and the rules of evidence in rejecting the Mayaka Declaration. It concludes without any evidentiary support that the corporations were defendant's alter ego, thereby finding that he used the corporations for fraudulent or illegal purposes. It claims that there is no evidence of defendant's connection to the

corporations but ignores the fact that the Magistrate didn't let defendant introduce that evidence. It fails to acknowledge that the documents are privileged under Florida law. It misconstrues Australia law to avoid the Judicial Comity Doctrine. It concludes without any basis that the foreign corporations waived their attorney-client privilege. It ignores the extensive case record in finding that defendant waived his objection that the documents were not in his possession, custody, or control. And it made no effort to determine whether the privileged communications were even relevant to this lawsuit before ordering their wholesale production.

Notably, plaintiffs don't challenge the error of those conclusions. For many, they simply argue that the erroneous findings were "harmless" because they were "mere common sense" and "academic" musings. Opp. at 9, 11. But plaintiffs are wrong. The findings were central to the order that defendant produce over 11,000 privileged documents.

With equal disregard for defendant's rights, plaintiffs now invite this Court to strip defendant of his privilege log. Opp. at 15. According to plaintiffs "Dr. Wrights' privilege log was so deficient it was as though he had not produced any privilege log at all." *Id.* This accusation is entirely without merit. Plaintiffs conflate the elements of the corporate attorney-client communication privilege with what needs to be shown on a privilege log.

The Order was clearly erroneous and contrary to law. It should be reversed and vacated.

## DISCUSSION

### A. The Order Runs Afoul of the Rules of Evidence in Rejecting the Existence of the Attorney-Client Relationship Between the Defendant and His Kenyan Attorney

Defendant demonstrated in his Objection [D.E. 434] ("Objection") that the Order ran afoul of the rules of evidence. Obj. at 3-6. In their response, plaintiffs cite to Rule 104 and argue that the rules of evidence don't apply when dealing with preliminary questions of "whether a witness is qualified, a privilege exists, or evidence is admissible." Opp. at 3-4. Thus, according to plaintiffs,

3

the Order was free to disregard Rule 902(8) that admits self-authenticating documents, 28 U.S.C. § 1746 that governs sworn declarations, and Rule 404 that prohibits propensity evidence. *Id.*

Plaintiffs' argument is misconceived for several reasons. First, the Mayaka Declaration was signed "under the penalty of perjury under the laws of the United States of America." D.E. 426-1. Thus, as provided by 28 U.S.C. § 1746, the declaration is the equivalent of a notarized document. Yet, the Order rejected the Mayaka Declaration because it wasn't adequately authenticated through notarization. Order at 5-6. Notably, 28 U.S.C. § 1746 is not a rule of evidence, such that it can be "disregarded."

Second, plaintiffs' argument bolsters the unavoidable conclusion that the Order erred in rejecting the Mayaka Declaration. If the rules of evidence don't apply, as plaintiffs argue, then there was no need to authenticate the Mayaka Declaration. But the Order rejected the declaration because it wasn't adequately authenticated. Order at 6.

Third, Rule 104 only serves to allow judges to consider a wider range of evidence, such as hearsay testimony. *Bourjaily v. United States*, 483 U.S. 171, 172 (1987) (noting that Rule 104 allows a judge to consider hearsay evidence). Rule 104 "does not itself provide a substantive basis for excluding []evidence," as plaintiffs suggest. *United States v. Evans*, 728 F.3d 953, 960 (9th Cir. 2013) (citing *United States v. Brewer*, 947 F.2d 404, 409 (9th Cir.1991)) (emphasis added).

Plaintiffs also argue that it was proper for the Order to rely on propensity evidence because "a district court 'can be trusted in general . . . to give evidence its proper weight without regards to the technical rules of evidence.'" Opp. at 4. But "in this case the Court does not address a hypothetical." *Lee v. Illinois*, 476 U.S. 530, 542–43 (1986). "The danger against which the [rules of evidence were designed to protect from] **actually occurred**." *Id.* (emphasis added). The Order

4

expressly relied on improper propensity evidence that Rule 404 was designed to keep out.[1] Order at 6; *United States v. Cardenas*, 9 F.3d 1139, 1155 (5th Cir. 1993); *State v. Powell*, 2015 WL 3563106, at *9 (Tenn. Crim. App. 2015).

Finally, plaintiffs interject that "the credibility of a witness is always relevant." Opp. at 5. But that is a non-sequitur. The "witness" in the declaration—and whose credibility is at "issue"—is Mr. Mayaka, not defendant. And in any event, prior determinations of forgery on unrelated issues is not an issue of credibility unless, of course, one were making a propensity argument.

---

[1] Emboldened by the Order, plaintiffs accuse defendant of "purposefully" asserting "sweeping and vague" claims of privilege to wrongfully "hid[e] documents" under the guise of attorney-client communications. Opp. at 1,6. But it is nonsensical to claim that defendant attempted to hide documents by identifying them on a privilege log and describing the nature of the communication, the basis for the privilege, the identities of the parties that participated in the communication, the date of the communication, and the corporation implicated in the communication. *See* D.E. 433-4 and 433-5.

Plaintiffs also accuse defendant of using the "privilege assertion [] to benefit himself by gaining an unfair advantage through using these former companies to avoid producing relevant evidence to Plaintiffs." Opp. at 13. But the vast majority of the privileged documents are not even relevant to this lawsuit—and this is something that plaintiffs don't contest.

Further, the issue in front of this Court is distinct from plaintiffs' oft-cited case, *PCS Nitrogen, Inc. v. Ross Dev. Corp.*, 2011 WL 3665335, at *1 (D.S.C. 2011). Opp. at 12-13; D.E. 396 at 3. That case stands for the limited proposition that one can't use the corporations' privilege *against the corporation*, not that a former director can never raise the corporation's privilege—as plaintiffs assert here. In *PCS Nitrogen,* the directors were being sued for a breach of fiduciary duty to the corporation of which they were board members. *Id.* at *1. The directors claimed the corporation's privilege in defending against the lawsuit. *Id.* at *2. In other words, it was the corporation versus the directors, and the "corporate decision makers [were] assert[ing] the attorney-client privilege to protect their own interest instead of those of the corporation." *Id.* *4 (citing *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 353 (1985). That is not the case here. Further, in *PCS Nitrogen*, there was no state law establishing that a corporation's privilege survives its dissolution. Here, Florida law does. There is no basis to limit it artificially.

B. **Plaintiffs Conflate the Issue of the Corporations' Attorney-Client Privilege with the Issue of Defendant's Attorney-Client Privilege with Mr. Mayaka**

Defendant demonstrated in his Objection that the March 5, 2020, hearing was never meant to determine factual issues related to the documents that were withheld on the basis of the attorney-client privilege. Obj. at 8-9. The Magistrate explicitly stated so in the February 25, 2020, hearing:

> THE COURT: I saw the pleadings that the parties have filed on the other privilege issues and those seem to me to be primarily issues of the law. There is not really a factual dispute there.

Hr. Tr. 9:8-11 (Feb. 25, 2020).

Plaintiffs argue that defendant's position is "frivolous" and that the docket entry from February 25, 2020, refutes defendant's position. Opp. at 6-7. But plaintiffs are conflating the two privilege issues. The first privilege issue relates to the corporations' attorney-client communications, which was initially raised in the January 9, 2020, and the January 29, 2020, hearings, and which the Court then set for a March 5, 2020, hearing to resolve "the privilege issues." D.E. 387; D.E. 398; Hr. Tr. 21:20-25:4 (Jan. 29, 2020).

The second privilege issue was the spousal privilege (with Ms. Watts) and the attorney-client privilege (with Mr. Mayaka) that defendant raised in his response to plaintiffs' interrogatories. The Court first addressed that issue in the February 25, 2020 hearing (D.E. 397), where the Court informed defendant that it involved "factual issues" that the Court needed to resolve. Hr. Tr. 9:12-18 (Feb. 25, 2020). As the parties already had a hearing scheduled for March 5, 2020, (to address the corporation's attorney-client communications) the Court stated that it would also address the second privilege issue at that hearing. *Id.* at 9:12-24 ("I am happy to add this on the agenda since you are all planning to be here anyway."). As such, when D.E. 406 states "the Court will **resume the hearing** to consider whether defendant has satisfied his burden to

establish privilege at the hearing already scheduled for 3/5/20," the Court was referring to the **second privilege issue**, not the first privilege issue relating to the corporations' attorney-client documents (which the Court stated at the hearing was not a "factual dispute").

### C. Plaintiffs Incorrectly Assert that the Order's Erroneous Findings are Harmless Error

Defendant demonstrated in his Objection that the Order erred in finding that (1) the corporations were defendant's alter egos and that (2) the corporations waived their attorney-client privilege. Obj. at 6-8, 11-12. Plaintiffs don't challenge the error underlying those two findings. Instead, they argue that the errors were harmless, and portray them as mere "common sense" and "academic" musings. Opp. at 9, 11. Plaintiffs are mistaken.

Those two findings were central to the Order's order that defendant produce 11,000 privileged documents. First, the Order *expressly relied* on its finding that the corporations were defendant's alter ego in overruling defendant's objection that it would be unduly burdensome to notify the parties who undoubtedly had the right to assert privilege over the documents. Order at 13. That was not a mere "common sense" finding. Further, that finding was not supported by the record or the law and it was akin to finding that defendant used the corporations for a fraudulent or illegal purpose. *See In re Sunnyside Timber, LLC*, 413 B.R. 352, 369–70 (Bankr. W.D. La. 2009); Obj. at 6-8.

Second, the order expressly stated that "**the issue before [the Magistrate] is whether a party waives the attorney-client privilege by failing to timely and affirmatively assert it . . . .**" Order at 12 (emphasis added). That was the issue, because under both U.S. and Australia law:

> [T]he attorney-client privilege is created at the time of the confidential attorney-client communication; **it continues to exist until waived**.

Order at 12 (emphasis added). The Order then found that "the corporate entities are waiving the privilege by not seeking to intervene to assert it," (Order at 12) and then relied on that finding in

7

ordering defendant to produce the corporations' privileged attorney-client communications. That finding was not a mere "academic" musing.

Further, the Order's finding is clearly erroneous. Plaintiffs never served the foreign corporations to obtain their documents, as the law required, and which could have served as notice. Instead, plaintiffs sought the documents from a former director, the defendant. There simply is no basis to conclude that the corporations waived their attorney-client privilege.

### D. Plaintiffs' Continued Insistence that the Court Rely on Federal Caselaw Interpreting the Federal Privilege is Misguided

Plaintiffs are misguided in doggedly insisting that the Court consider federal caselaw interpreting the federal attorney-client privilege. Opp. at 13-14. This case is a diversity case, and *the controlling privilege is that of the states*. Fed. R. Evid. 501; Order at 1. Yet, plaintiffs completely ignore both Florida and Australia law. That is telling.

The law of Florida and Australia is clear. A corporation's privilege is not extinguished upon its dissolution. The plain text of Florida's statute on privilege, 90.502(3)(c), states that a privilege may be claimed on behalf of a corporation, "whether or not in existence." Fla. Stat. 90.502(3)(c). Clearly, if the privilege did not survive dissolution, then there would be no need for the statute to address who may claim privilege on behalf of a corporation that no longer exists.

Similarly, the unrebutted Grieve Declaration establishes that "a corporation's privilege is not extinguished by its dissolution" under Australia law.[2] D.E. 394-1 ¶¶ 14-15. And the caselaw attached to that declaration supports that conclusion:

---

[2] Plaintiffs argue that the Court should ignore Australia law because there is "no choice of law analysis," and because "defendant never served a Rule 44.1 notice." Opp. at 10 n.5. But plaintiffs misconstrue defendant's reliance on Australia law. Defendant does not argue that this Court is bound by Australia law, nor does he argue that Australia law governs the issue in front of this Court. He simply asks this Court to follow the U.S. law of judicial comity, which establishes that a U.S. court should avoid ordering the production of documents, when such an order would be in

> I do not think that the right of confidentiality and privilege which the principle embodies has been lost as a result of the circumstance that [the corporation] has been dissolved. Indeed, in my opinion the right has survived and has passed to the Commission.

D.E. 394-1 at 43.

Many states have reached the exact same conclusion. *See Wallace v. Huntington Nat. Bank*, 2010 WL 3603494, at *7 (S.D. Ohio, 2010); *Official Comm. of Admin. Claimants v. Bricker*, 2011 WL 1770113, at *2–3 (N.D. 2011); *Travelers of New Jersey v. Weisman*, 2011 WL 519920, at *7 (N.J. Super. Ct. App. Div. 2011).

### E. Defendant Did Not Waive the Objection that the Documents Were Not in His Possession Custody or Control

Plaintiffs don't contest that they sought the privileged documents from the wrong party. The law required them to seek the documents from the actual corporations, but they requested them from the corporations' former director, defendant. Plaintiffs simply argue that defendant waived that objection because he "never raised the issue in his briefing on the privilege issue." Opp. at 11-12. That is false. Defendant raised it in his opposition. *See* D.E. 394 at 7 n.3.

Plaintiffs also argue that defendant waived that objection because he produced many of the corporation's non-privileged documents. Opp. at 11-12. Plaintiffs neglect to mention, however, that defendant raised the objection many times, (D.E. 434 at 12-13) and that he only produced the documents after the Court ordered him to do so. Hr. Tr. 40:16-18 (March 7, 2019) ("If [defendant] is the director of a closely held company, I would order him to turn over the corporate records."). As such, there is no basis to find a "waiver."

---

violation of a foreign country's law—absent a compelling need for the documents. *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 529 (S.D.N.Y. 1987) (The "most important" factor in determining whether to order the production of documents that would violate foreign law is "degree of importance of the requested discovery."). In any event, the Order already rejected plaintiffs' arguments. Order at 12 n.7.

9

## F. The Court Should Decline Plaintiffs' Invitation to Strip Defendant of his Privilege Log

Plaintiffs argue (for the first time in their opposition) that "Dr. Wrights' privilege log was so deficient it was as though he had not produced any privilege log at all." Opp. at 15. Thus, according to plaintiffs, there was no need for the Order to determine whether the 11,000 privileged documents were relevant before ordering their wholesale production. The Court should simply disregard defendant's privilege log and proceed as though defendant never prepared one. *Id.* Plaintiffs' brazen contention that defendant has somehow lost the protections afforded him under the Federal Rules of Civil Procedure and the Federal Rules of Evidence should not be condoned.

Plaintiffs' argument is entirely without merit. According to plaintiffs, defendant's privilege log is "so deficient" because it doesn't address the five factors outlaid in *1550 Brickell Assocs. v. Q.B.E. Ins. Co.*, which recounts the elements of the corporate attorney-client privilege. 253 F.R.D. 697, 699 (S.D. Fla. 2008); Opp. at 15. But plaintiffs conflate the elements of the corporate attorney-client communication privilege with what needs to be shown on a privilege log.

Under Rule 26, a privilege log simply needs to:

> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26 (b)(5)(A)(ii); *Dykstra v. Fla. Foreclosure Attorneys, PLLC*, 191 F. Supp. 3d 1378, 1380 (S.D. Fla. 2016). Defendant's privilege log undoubtedly met that requirement. For every single privileged document, the log contained a detailed description of the nature of the communication, the basis for the privilege, the identities of the parties that participated in the communication, the date of the communication, and the corporation implicated in the communication. D.E. 433-4 and 433-5 (exhibits D and E). That was more than sufficient.

## **CONCLUSION**

For all of the foregoing reasons, the Order is clearly erroneous and contrary to law. The Court should reverse and vacate the Order.

*Attorneys for Dr. Craig Wright*

RIVERO MESTRE LLP
2525 Ponce de Leon Boulevard, Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: amcgovern@riveromestre.com
Email: zkass@riveromestre.com
Email: receptionist@riveromestre.com

By: s/ Amanda McGovern
AMANDA MCGOVERN
Florida Bar No. 964263
ANDRES RIVERO
Florida Bar No. 613819
SCHNEUR KASS
Florida Bar No. 100554

## **CERTIFICATE OF SERVICE**

I certify that on April 8, 2020, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF or by U.S. Mail.

 /s/ Schneur Kass
SCHNEUR KASS
Florida Bar No. 100554