```
 1              THE UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF FLORIDA
 2
                    WEST PALM BEACH DIVISION
 3
                  CASE NO.:  18-cv-80176-BB
 4

 5

 6
   IRA KLEIMAN, et al.,          )
 7                               )
           Plaintiffs,           )          April 1, 2020
 8                               )
   v.                            )
 9                               )          Pages 1 - 37
   CRAIG WRIGHT,                 )
10                               )
           Defendant.           )
11   _____/

12

13

14
                 TELEPHONIC DISCOVERY HEARING
15
            BEFORE THE HONORABLE BRUCE E. REINHART
16              UNITED STATES MAGISTRATE JUDGE

17

18

19

20
   APPEARANCES:
21
   Counsel on behalf of the Plaintiffs:
22
                         BOIES SCHILLER FLEXNER LLP
23                       100 SE 2nd Street
                         Suite 2800,
24                       Miami, FL 33131
                         BY:  MAXWELL V. PRITT, ESQ.
25                       BY:  ANDREW S. BRENNER, ESQ.
```

```
 1
     APPEARANCES CONTINUED:
 2
     Counsel on behalf of the Plaintiffs:
 3
                              ROCHE FREEDMAN LLP
 4                            185 Wythe Avenue F2,
                              Brooklyn, NY 11249
 5                            BY:  KYLE ROCHE, ESQ.

 6

 7   Counsel on behalf of the Defendant:

 8                            RIVERO MESTRE LLP
                              2525 Ponce de Leon Boulevard
 9                            Suite 1000,
                              Coral Gables, FL 33134
10                            BY:  ZAHARAH R. MARCOE, ESQ.
                              BY:  SCHNEUR ZELMAN KASS, ESQ.
11

12

13

14   Transcribed By:

15                            BONNIE JOY LEWIS, R.P.R.
                              7001 SW 13 Street
16                            Pembroke Pines, FL  33023
                              954-985-8875
17                            caselawrptg@gmail.com

18

19

20

21

22

23

24

25
```

1            (Thereupon, the following proceeding was held:)

2            THE COURT:  All right.  So this is Case Number

3   18-cv-80176; Ira Kleiman and W&K Info Defense Research against

4   Dr. Craig Wright.

5            Let me start with appearances.  I will start with

6   counsel for the Plaintiffs.

7            MR: ROCHE:  Good afternoon.  Kyle Roche for the

8   Plaintiffs.

9            MR. BRENNER:  Good afternoon, Judge.

10           This is Andrew Brenner on behalf of the Plaintiffs.

11   And let me introduce you to one of my partners who I don't

12   think has appeared before you.  Maxwell Pritt is also on the

13   phone.

14           THE COURT:  Mr. Pritt, Mr. Brenner, and Mr. Roche,

15   welcome.

16           All right.  Anybody else for the Plaintiffs?  Hearing

17   no noise, I will move to the Defense.

18           Miss Marcoe, I know I heard your voice.

19           MS. MARCOE:  Yes, Your Honor.

20           THE COURT:  If you want to formally make your

21   appearance.

22           MS. MARCOE:  Zaharah Marcoe on behalf of Dr. Wright.

23           THE COURT:  Okay.

24           MR. KASS:  And Your Honor, here also is Zalman Kass on

25   behalf of Dr. Craig Wright.

```
 1              THE COURT:  Thank you, Mr. Kass.

 2              And Miss Marcoe, anybody else coming from your team?

 3              MS. MARCOE:  No.  I think we are outnumbered this

 4    time.

 5              THE COURT:  Okay.  I hope everybody washed their hands

 6    before they came to this meeting.

 7              All right.  So we are here on the joint discovery

 8    memorandum which is, in essence, the Defense's objections to

 9    either W&K's first interrogatories or Ira Kleiman's ninth

10    interrogatories.

11              So let me turn to Miss Marcoe or Mr. Kass and I will

12    hear you.  I mean, I have reviewed the memo that you submitted.

13              MS. MARCOE:  Yes, Your Honor, I think it is a little

14    bit different than that.

15              Essentially, this latest interrogatory request, which

16    I believe they have been marked as Plaintiff's ninth set of

17    interrogatories.  Both Ira Kleiman and W&K have previously

18    submitted numerous interrogatory requests.

19              But the point here is that, first of all, we have not

20    -- our clients actually object to these as has not yet

21    happened.  In about ten days is our response date.  But under

22    Your Honor's rules, if we want to seek a protective order, we

23    have to go before Your Honor in advance.  And obviously,

24    Plaintiffs, I believe, wanted to sort of know what the lay of

25    the land was in advance of our time to respond to their
```

1  request.

2        As an initial matter, Plaintiffs did not follow Rule

3  33.  Rule 33 requires if you are going to ask for more than 25

4  interrogatories, you either need to seek permission from the

5  Court or consent from the Defendants.  They haven't done that.

6        And I know Plaintiffs have argued, oh, but we are two

7  separate parties and it is based on parties.  Yes, it says

8  parties, but here while they are nominally different parties

9  they are, in fact, the same party.

10        And the law is very clear that separate parties can be

11  -- nominally separate parties can be considered a single party

12  for the purposes of Rule 33 and here that is the exact

13  situation that we are in.

14        We have two, quote unquote, parties with the same

15  attorney that has litigated this case from the outset as united

16  in a single common and unitary purpose.  You have a complaint

17  where in the time count of the complaint there is a single

18  count that is not brought by both, quote unquote, parties.

19        We are also in a situation where you had W&K's

20  corporate representative, a 30(b)(6) witness for W&K, who

21  purportedly a separate entity was a hired attorney to act as

22  the corporate rep.

23        We are not saying there is anything wrong with that.

24  That is perfectly fine, but the only basis for that corporate

25  rep information for the 30(b)(6) deposition was the complaint

1 provided by IRA Kleiman who is the representative for the

2 estate, quote unquote, the other party. You don't get to use

3 the purported separateness of having two named parties, when

4 they are really the same, to your advantage to expand the

5 discovery requirements. Those are sort of the first two

6 issues.

7 And I don't know if you want to question me on those

8 or I could go on with some of the other issues.

9 THE COURT: Well, I just have one factual question.

10 Then I will let you go on and I will ask you my questions when

11 you are done.

12 MS. MARCOE: Okay.

13 THE COURT: My factual question is have there been

14 prior interrogatories served that were been captioned as

15 interrogatories from W&K?

16 MS. MARCOE: Yes, there were two prior ones.

17 THE COURT: Okay. Totally how many interrogatories?

18 MS. MARCOE: It is Exhibits F and G.

19 And I think that that is a little bit of a tricky

20 question, Your Honor, because what they -- what W&K numbered as

21 their interrogatories is not, in fact, the number of

22 interrogatories that they have issued.

23 So, for instance, if you recall one of the

24 interrogatories that they issued, I believe, it is numbered

25 eight, which I am trying to -- sorry. This might take me a

1  little bit of a time just because I have this on my computer

2  and I don't have everything printed out.

3          THE COURT:  I have it here.

4          MS. MARCOE:  Exhibit G is the eighth request.

5          And I believe that is the one that is about the IP and

6  about patents.  And you will also see from our portion of the

7  joint discovery memorandum that requests about separate patents

8  counts as separate interrogatories.  So you are in a situation

9  now where W&K alone has propounded hundreds upon hundreds, if

10 not thousands, of interrogatory requests in their eighth alone.

11         So, you know, which is actually my next point, which

12 is that even if you were to separate the parties, which we

13 don't believe is appropriate in this case, but even if you

14 were, they are still over their 25 limit separate, let alone

15 together.

16         And finally, Your Honor, our last point with regard to

17 this aspect of the interrogatories, which is essentially the

18 number and proportionality, is the proportionality argument.

19         And it is our position that these interrogatories and

20 having this number, this accepted number of interrogatories

21 well in excess of Rule 33, is not proportional to the needs in

22 this case in this situation.

23         This is a case where Plaintiffs have issued over 200

24 requests for production.  They had recently issued 200 requests

25 for admissions, which we are working on.  We have had our

1   Defendant in this case, Dr. Wright has sat for four days of

2   deposition testimony for over 20 hours of deposition testimony.

3   They have done their 25.

4           In fact, they have done well over 25.  That even if it

5   was just 25, anything over that is just not proportionate to

6   the needs of this case given the discovery that we have already

7   had.  And that is my position on that part.

8           THE COURT:  Okay.

9           MS. MARCOE:  I think, if you want, I can get into

10  arguments about other things.

11          But I think that it makes sense to sort of address

12  this issue because I think this is really the threshold issue

13  as to the number because if they are over, they are over.  They

14  didn't follow the rule.

15          Your Honor will rule how you rule but, you know,

16  getting into the merits of the specific request, I don't think

17  it is appropriate until we more fully flesh out this issue if

18  Your Honor agrees.

19          THE COURT:  That's fine.  I'm happy to do it that way.

20          Let me turn -- give me one second, please.  I just

21  wanted to refresh my memory again.

22          All right.  Let me turn to the Plaintiff.  Who is

23  going to handle this for the Plaintiffs?

24          MR. PRITT:  This is Maxwell Pritt for the Plaintiffs

25  from Boies Schiller Flexner.  Good afternoon, Your Honor.

1          THE COURT:  Welcome, Mr. Pritt.

2          MR. PRITT:  Thank you.

3          So I see essentially three issues that I would like to

4   respond to.  The first is that the Plaintiffs aren't separate

5   as your earlier question pointed out.

6          W&K has issued interrogatories separately before

7   twice.  This is the third time Plaintiffs did not object and

8   answered those interrogatories.

9          So I don't think the argument now that these

10  interrogatories are invalid because they should never be able

11  to issue interrogatories really goes anywhere.  The issue

12  about --

13          THE COURT:  Hold on.

14          Are you arguing that they have formerly waived that

15  argument, or are you simply saying that because they didn't

16  object before, I have to take that into account in making my

17  ruling?

18          MR. PRITT:  I think you should take that into account

19  into the presumptive limits under Rule 33(a).

20          THE COURT:  Okay.

21          MR. PRITT:  To the extent they argue that some of the

22  previous interrogatories have subparts, they, of course, are

23  entitled to make those objections to those interrogatories that

24  I do not believe that should prevent these interrogatories from

25  going forward.  To the extent they argue it is not proportional

1   because we have had other discovery, again, that had nothing to

2   do with the affirmative defenses.

3          These interrogatories are solely based on trying to

4   understand what exactly the affirmative defenses are that the

5   Defendant is apparently going to continue to assert at trial.

6   And we are trying to understand that so that we can move for

7   summary judgment.

8          If Your Honor recalls, we previously moved to strike a

9   number of the affirmative defenses because we did not

10  understand them because of how vague they are in the answer.

11         And so, in order to move for summary judgment, we are

12  trying to get more clarity on what exactly the affirmative

13  defenses mean.  How they apply to this case and what evidence

14  the Defendant thinks she needs.

15         And I will say, you know, in terms of the presumptive

16  limit regardless of whether or not, ultimately, there's a split

17  of authority on whether or not Rule 33(a)(1) applies to parties

18  or sides the Court sometimes, as Defense counsel pointed out,

19  we are both trying to do analysis on whether or not Plaintiffs

20  are nominally separate.

21         Most of the Courts kind of look at that issue and the

22  parties start arguing it and kind of say, well, that is

23  ultimately besides the point because what matters is whether or

24  not I am going to permit these interrogatories because they are

25  relevant and the answering party hasn't made a burden showing.

1          And so we would argue that even if the Court

2    determines that these interrogatories are not within the limit

3    that the Court permit us to exceed that limit because we would

4    like to be able to move for summary judgment on affirmative

5    defenses and prepare for trial.

6          THE COURT:  All right.  I will turn back to Miss

7    Marcoe in a second but, Mr. Pritt, you have known about these

8    affirmative defenses since January 28th of 2019.

9          And in between, as Miss Marcoe points out, I have

10   given you hundreds of requests for production and hours of

11   deposition, as well as at least 25 or 26, almost 30 other

12   interrogatories.

13         MR. PRITT:  Correct, Your Honor.

14         THE COURT:  So why should I allow this at the eleventh

15   hour?

16         MR. PRITT:  Because the eleventh hour is precisely

17   when contention interrogatories and contention interrogatories

18   on affirmative defenses are permitted.

19         Most Courts whenever they receive a contention

20   interrogatory that is not at the close of discovery actually

21   will deny it as premature.  And say, no, no, these types of

22   interrogatories need to be served at the end of discovery.  And

23   so that is why we did it to comply with the case law on that.

24         THE COURT:  Okay.  Let me turn back to Miss Marcoe.

25         MS. MARCOE:  Well, I would like to address that last

1   point first just because, you know, primacy and recency.  But,

2   Your Honor, yes, contention interrogatories should come towards

3   the close of discovery.

4          I don't dispute that at all, but they could have

5   planned their discovery.  And they could have made a

6   reservation in their interrogatory requests to address these

7   issues if they thought there were going to be an issue.

8          And as Your Honor correctly pointed out, they have

9   known about the affirmative defenses for well over a year now.

10  They could have issued specific discovery requests and

11  interrogatories.  Whatever they needed to request regarding

12  these interrogatories regarding these affirmative defenses way

13  earlier.  To now say, oh, no, no, we still need more because it

14  is never enough for them.

15         They still need more because it is late in discovery

16  and now we have contention interrogatories and they are ripe

17  and they are appropriate now in terms of timing.  Well, they

18  could have considered that instead of asking, as Your Honor

19  pointed out, at a minimum of over 30 interrogatories it is our

20  position that it is thousands of interrogatories.

21         They could have planned for that and gotten not out

22  for interrogatories, but other things that could have been

23  asked through other means, such as document requests or the

24  many, many, many, many hours of deposition testimony from our

25  client as well as other nonparty witnesses.

1        With regards to approving counsel's statement that we

2   didn't object previously to them issuing separate

3   interrogatories, we did object.  We objected.  The second they

4   went over 25, based on our count, regardless of who issued that

5   particular interrogatory, we made the objection.

6        Now sometimes, you know, we negotiated and we answered

7   in good faith, but we didn't waive that objection.  We have

8   always preserved that objection.

9        THE COURT:  My standing order is very clear that you

10  don't waive objections like that.  So I was just clarifying

11  people on making the waiver argument.  Mr. Pritt said they are

12  not.  So don't worry about the waiver argument.

13        The point he made is simply -- well, he did make the

14  point there is, but I would simply take that into account.  So

15  if you want to address that you may, but I just don't want you

16  to spend your time addressing the formal waiver argument that

17  they are not making.

18        MS. MARCOE:  Well, I guess my point, then, is he is

19  factually incorrect.  We did object the second we thought that

20  they went over 25 regardless of whether it was Ira or W&K --

21        THE COURT:  Help me out, Miss Marcoe.

22        MS. MARCOE:  -- that separation.

23        THE COURT:  Help me out, Miss Marcoe, because you may

24  be surprised to know, I don't recall every discovery ruling I

25  have made in this case.

1      MS. MARCOE:  You don't?

2      THE COURT:  I don't.

3      Has that issue ever been presented to me or Judge

4  Bloom before?  I understand you may have objected and then

5  worked it out, which is fine, but I just want to make sure,

6  have I ever ruled on that issue before that you recall?

7      MS. MARCOE:  That issue has not actually been ruled

8  on.  That issue, I believe, really only came before Your Honor,

9  if I remember correctly -- and this is honestly not from

10  reviewing the transcript.  It is just from memory.

11      I believe that that issue came before Your Honor when

12  we were talking about the intellectual property

13  interrogatories, which is Exhibit G to here.

14      THE COURT:  Right.

15      MS. MARCOE:  And then, if I remember correctly,

16  Plaintiff decided to sort of put a pin in that objection and

17  didn't have Your Honor rule on it.  So it has been before Your

18  Honor, but not ruled on by Your Honor.  If that makes sense.

19      THE COURT:  I didn't recall ruling on it, but like I

20  said, I don't have an encyclopedic memory of this.

21      MS. MARCOE:  Yes.  And my recollection is further that

22  in that hearing my recollection is that you warned Plaintiff

23  that if they weren't going to raise it for you to rule on that

24  they would be in danger of you considering them waiving it.  If

25  I remember correctly, that's what Your Honor said --

1          THE COURT:  And I don't recall that.

2          MS. MARCOE:  -- the number.

3          THE COURT:  I don't recall that, but that's fine.  All

4   right.  Anything else, Miss Marcoe?

5          MS. MARCOE:  On the sort of initial issue, no.  If we

6   get to other issues, then, yes.

7          THE COURT:  Okay.  Just so I am clear again where

8   you're drawing the line because I want to make sure I stay

9   within the boundaries of what the parties have drawn so far and

10  give the other side a fair chance to address it.

11         The boundary you are drawing right now is simply are

12  they allowed to issue any new interrogatories.  And if I say

13  yes, then, you might want to object to the merits, or the

14  scope, or other aspects of the interrogatories, but is that

15  where you are stopping, Miss Marcoe?

16         MS. MARCOE:  Yes, Your Honor.

17         Because I don't want to take up any more of anyone's

18  time if it is hopefully unnecessary, but if it is necessary we

19  will would certainly get into the merits of those issues as

20  well.

21         THE COURT:  Right.  That's fine.  So you are not

22  addressing the merits.

23         So let me make sure, Mr. Pritt, is there anything

24  further that you wanted to be heard on, on the issues that Miss

25  Marcoe has framed?

1       MR. PRITT:  The only thing I would respond to

2  obviously if we get to overbreadth and burden, I am happy to

3  address that.  The other thing I would say, of course as Miss

4  Marcoe knows, have issued request for production.  And our

5  phase on the affirmative defenses we have not received any

6  documents that we believe support any of those affirmative

7  defenses.

8       So, again, we're in the dark on how they continue to

9  prove those affirmative defenses.  And that is why we issued

10  these interrogatories so we can try and narrow the issues in

11  dispute for trial and prepare for trial.

12       THE COURT:  Okay.  Thank you.

13       All right.  Well, for better or for worse, I read the

14  transcript of Dr. Wright's deposition and I presided in person

15  over his second, third, and fourth deposition and I have ruled

16  on, I think, every discovery dispute in this case.

17       So I am very familiar with how this case has been

18  litigated and how everything lines up.  And I am well satisfied

19  that W&K and Ira Kleiman are the same and that they should not

20  be given 50 interrogatories between the two of them.

21       I'm not saying they are legally *alter ego*s for

22  purposes of any other purpose in this lawsuit.  I'm just saying

23  for purposes of my discovery ruling, I am exercising my

24  discretion under Rule 33, I am not going to let W&K issue any

25  more interrogatories.

1       W&K and the Plaintiffs have had more than sufficient

2   opportunity to develop the appropriate defenses and to ask Dr.

3   Wright how he was going to support those affirmative defenses,

4   et cetera.  First of all, I just find that they are the same

5   party and, therefore, not entitled to the extra 25.

6           And even if they are not, I would find that allowing

7   additional interrogatories for the Plaintiffs at this point

8   would be disproportionate to the needs of the case and that the

9   burden involved would outweigh the likely benefit.

10          And that to the extent that the Plaintiffs are caught

11  short by the fact that they can't ask these interrogatories is

12  because of other choices they made in their discovery strategy

13  about how to spend their 20 hours with Dr. Wright.  So I will

14  enter a written order, but that will be my ruling as to this.

15          So with that ruling, then, Miss Marcoe, do we need to

16  address anything further?

17          MS. MARCOE:  There is one further issue that we need

18  to address and that is regarding the multimedia of the

19  Plaintiff.

20          THE COURT:  The what?

21          MS. MARCOE:  The multimedia files of the Plaintiffs.

22          THE COURT:  Okay.

23          MS. MARCOE:  So not documents, but like video

24  recordings, voice recordings and the like.  Things that are not

25  amenable unfortunately to search terms.  This is an issue that

1   has sort of been outstanding since May and we spoke with

2   Plaintiffs about this way back in May.  And on May 20th we had

3   agreed on exchanging our lists of multimedia and agreed on what

4   information would be provided in those lists.

5          We provided our list to them back in May; on May 20th.

6   And not only did we provide them with our list, we highlighted

7   in our case, including all the information that we had agreed

8   upon and we also highlighted certain multimedia files.

9          That when we looked at the names of the files we said,

10  hey, these are probably things that you're going to want.  So

11  we're going to look at them and we will produce them if they

12  are responsive and relevant and we did that.

13         And they had all this information, except for two

14  files that we asserted privilege over.  They had all of those

15  back in July.  The two files that we had asserted privilege

16  over, based on Your Honor's more recent ruling, have since been

17  produced.  So they have all of our multimedia.

18         What has happened here was that Plaintiffs provided us

19  with various lists, none of which ever had all of the

20  information and were confirmed to be accurate until finally on

21  March 19th they sent us the list.

22         And finally, on March 19th confirmed that that was the

23  complete and accurate list because the list that they had

24  provided in relation to that March 19th communication did not

25  match up with prior lists that they had provided to us.

1          We finally get that list on March 19th and by March
2    27th, less than ten days later -- and notably they sent us a
3    list of nearly 200 requests.  Within ten days we send them back
4    a list of 637 files that we would like and they said no.

5          We have since continued to try to negotiate this.  So
6    I think right now the issue before Your Honor is not so much
7    they are not going to give us anything.  They are going to give
8    us something.  They agreed to give us 25.

9          It is our position 25 is not enough.  So today they
10   agreed to the 25.  We said, look, we can try to limit this to
11   under 350 files.  We haven't had a response from them.

12         So I think the issue before Your Honor is really not
13   so much about they are not going to give us anything and we are
14   having a big fight that they are not going to give us anything,
15   but that we need these files and we need more than 25.

16         For instance, many of these files are third party
17   including witnesses.  These are trial witnesses.  witnesses who
18   have been deposed.  They didn't give us any of these files in
19   advance of any of these depositions and they didn't give us --
20   and having voice recordings of trial witnesses is highly
21   relevant to this case.

22         THE COURT:  Just help me out.  I'm sorry.  Help me out
23   with this.  You said these are multimedia files.  What do you
24   think or understand these to be?  Are they videos of Dave
25   Kleiman?  Are they interviews between your client and the

 1  media?  I mean, what do we understand these to be?

 2         MS. MARCOE:  Well, it is media files.  It depends.  I

 3  could tell you some categories.

 4         THE COURT:  Yes.  Broad categories would be helpful.

 5         MS. MARCOE:  So some of the broad categories, like I

 6  said, are apparently recorded conversations that someone had --

 7  I don't know -- with trial witnesses.  That's one category.

 8         And these are, from what I could gather, these are all

 9  audio conversations.  They are not video conversations.  And

10  then, there are also some captures of video and audio files of

11  our client from the Internet, which may or may not still be

12  accessible.

13         And so if they have a YouTube video, or a recording of

14  our client and they had it captured and saved, we want that.

15  And so those are some of the broad categories.  Let me just

16  check my notes and see what other broad categories might be

17  able to do with videos.

18         There are also podcast recordings that are related to

19  our client.  So all of these they serve the main categories of

20  documents.  There are one or two files that is unclear what it

21  is, but we know it was last modified while Dave Kleiman was

22  alive.

23         So for us that is something we want to know about

24  that's not modified may be one or two.  But most of them, you

25  know, if we look at the file name that's sort of what we're

1  going off of for what we believe these are.

2        THE COURT:  Right.  And again, just so I could

3  understand the context.  Are these files -- going way, way

4  back.  Are these files that were recovered from devices that

5  were understood to belong to Dave Kleiman and that I ordered to

6  be included in discovery?

7        MS. MARCOE:  Well, these are just all of -- I mean, it

8  depends.  These are all of the multimedia that was on either

9  Ira Kleiman's personal devices and/or on devices that were once

10 Dave's, but Ira overwrote and put his own things on.

11        I don't believe that any of these are recovered files

12 that had been deleted or overwritten and we only have bits and

13 pieces of those.  I don't believe that that's what these are.

14 These are just straight video and audio recordings that were on

15 the various devices.

16        THE COURT:  Okay.  And how were they identified as

17 being potentially within the scope of discovery here?  Did they

18 get on search terms based upon the files names or how did --

19        MS. MARCOE:  No.  So what we did and what Kyle and I

20 agreed to back in May was we would exchange a -- we would have

21 each of our vendors essentially pull out all multimedia files

22 and put them on a spreadsheet with information including date

23 created, file type, date last changed, last accessed, name if

24 available, file text if available, and size of the file and

25 file type so that we could sort of -- and it would be fulsome

1  and we did that and we gave them ours.  And what we did, we

2  manually sort of reviewed those.

3        And we did our own search terms on our files for stuff

4  that we thought was going to be important for them and

5  responsive and relevant.  And without them even asking for it,

6  we processed it and reviewed it months ago and produced it for

7  them months ago.  They didn't do that.

8        They sat around and ultimately gave us the file.  The

9  file was missing information.  They gave us another file.  That

10  file was missing information.  They gave us another file and

11  that file had issues.  And then, finally, we got a file that

12  resolved all of the issues on March 19th.

13        And so we, then, endeavored to do a manual review of

14  the listing of all of the files to cull down only what is

15  potentially relevant and responsive.

16        THE COURT:  One last question and I will turn to the

17  other side.  I know Judge Bloom just did an order modifying the

18  scheduling.  When is the close of discovery now set for?

19        MS. MARCOE:  May 1st.  One month from today.

20        THE COURT:  Okay.  All right.  Thank you.  Let me hear

21  from the other side.  Mr.  Pritt, Mr. Brenner, Mr. Roche, who

22  is speaking?

23        MR:  ROCHE:  Good morning, Your Honor.  This is Kyle

24  Roche.

25        THE COURT:  Mr. Roche.

1        MR:   ROCHE:   Let me do two things.   Let me just

2   respond to opposing counsel's characterization of how we got

3   where we're at.

4        So Miss Marcoe is accurate that back in May of 2019 we

5   both said there is a lot of audio and media files here.   Let's

6   not, you know, let's each provide each other a list that

7   contains metadata and we can, then, request which media files

8   each side wants to have reviewed.

9        We provided a list in May.   They wrote back to us and

10  said, hey, we would like additional metadata with that

11  produced.   And so, on November 26 of 2019, we produced to them

12  a list that had that metadata in it.

13       What Miss Marcoe is pointing to is that the May list

14  -- the November list was longer, about 20 percent longer than

15  the May list and that is because we had a lot of media we were

16  processing.   Unfortunately, we do have a client who produced a

17  lot of media during this litigation.

18       So there were additional rolls on that one.   November

19  26, that exchange occurred on November 26.   We don't hear from

20  them about this media until, I believe, it was earlier this

21  month.   So almost four months ago by and we don't hear from

22  them.

23       I get an e-mail from Zalman at the beginning of this

24  month asking why, one, why doesn't this one spreadsheet have

25  the information we asked you for and, two, why is there a

1  discrepancy between the two?

2        Now, the first issue we were able to resolve very

3  quickly.  We just had to scroll to the other side of the

4  spreadsheet.  It was there from the list that we provided to

5  them on November 26.

6        The second issue I believe it was because of what I

7  just articulated that there was additional media processed in

8  the intervening months and we gave them a complete list back in

9  November.

10       So I went to the vendor.  Unfortunately, this was

11 during the whole Corona situation.  So it did take me about a

12 week or so to get back to them and confirm that the November

13 list was the complete list.  So the complete list was provided

14 to them November 26th.

15       Subsequently -- I'm getting another call.  Okay.  I

16 was able to get rid of that.

17       So that is where we are at.  It did take me a week to

18 confirm that the November list was accurate and that everything

19 was identified on the list, but we didn't hear from them for

20 three or four months about the list itself.

21       So I went through.  I reviewed the list.  And yes,

22 Miss Marcoe is right.  There are some media files on that list

23 that do reference, for example, the Defendant.  There is also a

24 lot of media files on that list that reference, for example,

25 Velvel background check and Baby Jiji Movie.

1          And so I went through that list and there is clearly

2    not a disconnect between relevant information, only relevant

3    information being sought on this media.  There are 638 media

4    files that were requested that culled 34 gigabytes.  This list

5    request was made to us on March 27 with a little bit more than

6    a month left in discovery at the eleventh hour when we're

7    trying to get a bunch of other stuff done.

8          So consistent with Your Honor's previous ruling on the

9    Australian videos, I believe that this is, you know, too late

10   in the game and it is not proportional at this point to the

11   needs in the case for us to -- and it presents an undue burden

12   for us to have to review what would likely be a couple weeks of

13   work of attorney time to go through all these videos.

14         So I make it clear to all the parties on this phone

15   call, why do we have to go through every video?  The reason

16   being Ira, when he made these recordings, very often it was a

17   screen capture.  So he is making a recording while typing notes

18   up about the case.

19         We could have reviewed these months ago.  We could

20   have had this discussion and developed a process back in

21   November, December, or January.  Your Honor, frankly, I think

22   consistent with your past rulings.  It is too late in the game.

23         I did, this morning, when I realized and talked this

24   issue through with Miss Marcoe, I said, look, I am willing to

25   compromise.  This is going to take a lot of time, but if you

1   choose 25, which I don't think you're entitled to based on how

2   late in the game we are.  If you choose 25 I will have my team

3   review it and we will spend attorney time to review it, but I

4   think that was a reasonable compromise and a reasonable offer

5   given where we're at.

6          And quite frankly, I don't think that given the past

7   discovery rulings in this case and the burden that it is going

8   to put on my team, they are even entitled to that based on the

9   timing of the request.

10          THE COURT:  And again, Mr. Roche, since I don't --

11   I'll say it again, I don't remember every ruling I have made in

12   this case.  I remember I dealt with the Australian Tax Office

13   videos a couple of times.  So which specific ruling are you

14   referring to?

15          MR:  ROCHE:  The ruling that I am referring to is, my

16   colleague Velvel, he requested that -- and I believe that this

17   was within the past month or two.

18          Again, I should be more familiar with all your rulings

19   in this case because there has been a lot.  There was about 20

20   videos that were recordings from ATO meetings that he wanted

21   produced and Your Honor rejected that as untimely given and not

22   proportional to the needs of the case.

23          THE COURT:  Okay.  I will go back and review my

24   rulings.  If after the call if anybody can remember which day

25   that was so I could go back and review my notes from that day,

1    I would appreciate that.

2              Okay.  Let me give Miss Marcoe the last word.  This

3    issue I am going to take under advisement just for a day or so

4    because I want to go back and review the ruling that Mr. Roche

5    is referring to.

6              MS. MARCOE:  Judge --

7              THE COURT:  I'm sorry.  Miss Marcoe, hold on.  Before

8    I go to you, let me stay with Mr. Roche for just a moment more.

9              So kind of embedded in your remarks, I want to make

10   sure I get this right, Mr. Roche, there is a concern that there

11   might be privileged material and that's why you feel you need

12   to do a full scrub of this because you say Mr. Kleiman was

13   creating -- Mr. Ira Kleiman that when he was creating some of

14   these things may have been typing notes about the case and

15   there may be work product in there?  Is that your concern?

16             MR:  ROCHE:  Yes.  And Your Honor, you know, and to

17   caution and not waive any privilege about any, you know

18   attorney/client communications with my client, I did, you know,

19   ensure with the client and with independent review that that

20   was, in fact, accurate.

21             That there are many documents within these that are

22   sort of screen grabs and screen recordings were capturing both

23   the audio of what is being said on the computer and what is

24   physically being done on the computer.

25             And so I asked the client, hey, is there any way we

1   can review happen produce a large amount of these relatively

2   quickly.  And you know, there is only a (inaudible) of those

3   that he was able to identify definitely did not -- half a dozen

4   out of the 637 media files they definitely did not contain

5   attorney/client privilege.  Certainly there is definitely

6   something -- yes?

7           THE COURT:  I'm sorry.  You said attorney/client

8   privilege.  You mean work product?

9           MR:  ROCHE:  Work product.

10          Well, yes, and there are certain references to Velvel.

11  So I do believe there are communications between Mr. Freedman

12  and Mr. Kleiman that, you know, are either transcribed or notes

13  about his discussions with Mr. Freedman are part of it.

14          I mean, for example, one of the files they requested

15  clearly reads Velvel update David Boies.  So clearly that's an

16  attorney/client communication or a memorandum, you know,

17  recording made in connection with an attorney/client

18  communication.

19          And so, there is a lot of that stuff on this list.

20  That's why I thought a request for them to narrow the list down

21  to 25 was reasonable given the timing and given the

22  (inaudible).

23          THE COURT:  I appreciate that, Mr. Roche.  Let me turn

24  back to Miss Marcoe.

25          Miss Marcoe, I have some sympathy for Mr. Roche's

1  concern about the work product, but I have not seen this list

2  and you have.  Do you believe that there are multimedia files

3  on this list that are more likely than others not to contain

4  work product?

5        In other words, if I made you kind of go through and

6  prioritize the ones that you want and that you are pretty

7  confident from looking at work product because, you know, it is

8  an interview of your client, or it is a YouTube of your client,

9  or it is an interview of a witness.  I don't have the metadata

10  and I don't have the spreadsheet in front of me.

11       Is that a process that is even doable?

12       MS. MARCOE:  Yes, it is.  And in fact, you know,

13  that's why when earlier today when they had offered us a mere

14  25, we said, look, we are happy to go through this exercise and

15  we could probably get this down to less than 350.

16       You know, we might be able to get it down even lower

17  that than that, but 25 is not going to be -- in looking at this

18  list because honestly it's not going to be sufficient in terms

19  of what is highly relevant and unlikely to be privileged.

20       And you know, sometimes it is also a little difficult

21  to tell if it is.  And we can certainly go through and

22  prioritize the ones that we think are most relevant and the

23  look on their face appears to be privileged.

24       But, also, you know, sometimes there's a couple of

25  instances where, for instance, it would say Vel or Velvel and a

1   party witness.  So, for us, I wouldn't take those off of our

2   list because I don't know if that is Vel speaking with Ira

3   about him talking to a potential witness, which I would

4   probably agree it is privileged, but it could be a three-way

5   conversation where Vel is talking directly to a trial witness

6   and that is not privileged.

7          So we can certainly engage in that exercise and we can

8   do that today and get them an updated list today.  And I, also,

9   have sympathy for them, but I also have to say this is a

10  product of their own making.

11         Unlike, you know, the situation that we had with the

12  122 ATO videos.  In the 122 ATO videos that I believe Your

13  Honor addressed in either November, December, or January.  It

14  was one of those three months.  It was very late and very close

15  to the end of discovery.  If I remember correctly, it was

16  probably within a week or two of discovery ending.

17         First of all, our initial position was that it was

18  lengthy videos that we knew, in fact, were lengthy.  And they

19  also said from the very get-go that we had already produced

20  that list to them, if not all of them.  And the third issue is

21  that we had given them that list back in May.

22         What Mr. Roche, with all due respect to him, seems to

23  not understand is that he provided us with an inadequate list

24  in June and we told him it was inadequate and we followed up in

25  August.  And in August we asked additional questions and he

1    doesn't get back to us until November when we follow up with

2    him again in November and he sends us another report in

3    November.

4           THE COURT:  I also --

5           MS. MARCOE:  We finally don't have it until March.

6    Like we just don't have it.

7           THE COURT:  I understand.

8           I understand, but I do have to note that I always in

9    this case have to remind myself that there was a gap of time

10   last fall, in September and October, when the parties were very

11   close to resolving the case and so everything came to a

12   screeching halt.

13          So I don't criticize the Defendant for not being more

14   aggressive in following up on this.  And I, also, don't fault

15   the Plaintiffs that they kind of put down their guns during

16   September and October.  So, I mean, I recognize that there was

17   a gap in there.

18          MS. MARCOE:  Yes.  But if Your Honor wants us to

19   engage in the exercise to cull the list further, we have

20   offered that and we are happy to do that.

21          We can get them an updated list today, but it can't be

22   25.  That's not reasonable and that is not going to be fair.

23   Especially during the issues that --

24          THE COURT:  Okay.  At this point, here's what I am

25   going to do because I don't have the list in from of me and I

1  don't have a way to adjudicate other than to say the following.

2       I think you should get some of it.  I would agree with

3  Mr. Roche.  I am not going to make them give you all 600 and

4  some.  I will give you some other guidance and, then, I am

5  going to send you back to talk to each other.

6       Again, if you want to get back on the phone with me

7  tomorrow and send me the list and have me take a look at some

8  of the filings and try to make some rulings, I am happy to do

9  that.  I am not inviting that, but I am happy to do it if I

10 have to, but a couple of thoughts.

11      One being, Miss Marcoe, you said that your position

12 would be that if a lawyer and the lawyer's client were on the

13 phone together interviewing a witness that would not be

14 privileged.  I would disagree with that.  I think that would be

15 fact work product.

16      If a lawyer is interviewing a fact witness and wants

17 to have the client present, I believe that is wholly consistent

18 with the work product privilege.  So I don't know if that helps

19 cull some of list, but that would be my position on that issue.

20      Likewise, at the other end of the spectrum, if it is

21 just, you know, audio or video that relates to Dr. Wright

22 specifically and statements of Dr. Wright, or conversations

23 between from Dr. Wright and Mr. Kleiman, to that nature I would

24 think that I would be hard pressed to find that to be

25 privileged, but the devil is always in the details.

1          So the other thing I wanted the parties to consider is

2     I understand that whatever ruling I make on this, there is

3     going to be some wiggle in the joints because without checking

4     everything first, there is no way to know for certain that

5     there is no work product in there.

6          On the other hand, to wait to allow for that review to

7     occur it would not be meaningfully made available, or Mr. Roche

8     and his law firm are going to go bankrupt because they are

9     going to have to hire fifty people to do this in a week.

10          I would just remind the parties to consider Rule 502

11     of the Rules of Evidence.  And in order for me under Rule 502

12     that if there is contained in this material some work product,

13     everyone agrees it goes back immediately.  It is not used and

14     we all act ethically and professionally as we are required to

15     do so.

16          I would think such an order would be helpful, if we

17     don't already have one in this case, but I would be happy to

18     enter one if that would allow the parties to reach an

19     accommodation to try to turn over something here without having

20     to review everything.

21          So with that, I am going to take this matter under

22     advisement.  I want to go back and review my ruling on the ATO

23     issue so I am refreshed as to that.

24          You two continue to confer.  And as I said, if the

25     parties want to get on the phone tomorrow, I am doing a whole

1    lot of sitting around the house and working.  So I would be

2    happy to get on the phone with you.

3              MR:  ROCHE:  Your Honor --

4              MS. MARCOE:  And your Honor --

5              THE COURT:  Hold on.

6              Mr. Brenner, was that you or Mr. Roche?  I'm sorry.

7              MR. ROCHE:  Mr. Roche.

8              THE COURT:  Yes, Mr. Roche.  Go ahead.

9              MR:  ROCHE:  Yes.  Just for your reference, I was able

10   to pull up the hearing transcript.  It's the January 9th

11   transcript, Lines 2 through 17 on Page 29.

12             THE COURT:  Do you have a docket entry number for

13   that?

14             MR:  ROCHE:  I don't.  I just have the transcript in

15   front of me.

16             THE COURT:  We will find it.  It says January 9th

17   discovery hearing, Page 29, Lines 2 through 17.  Okay.  I'll

18   pull that up.

19             MR:  ROCHE:  Thank you.

20             The only other point I would make is, Your Honor, the

21   list is, you know, 630 now and Miss Marcoe has represented that

22   she can trim it to 350.

23             I do think if that is where this is going, we are

24   going to need some guidance from Your Honor just because we are

25   going to have to review all of these.  And the reason for that

1   is there is a high degree of likelihood that many of these, if

2   not more than fifty percent, contain work product.

3          So to the extent that it is, you know, the compromise

4   that we are going to have in the next hour or so or today is

5   300 or 350 documents, unfortunately, I think we are going to be

6   back here tomorrow seeking your advice.

7          So to the extent you have anything, or to the extent

8   you can enter an order on that, or provide guidance to the

9   parties now that would be helpful.

10          THE COURT:  First of all, let's schedule a call for

11   2:00 tomorrow so you are on the calendar and I am on your

12   calendar and you could work through this afternoon and

13   tomorrow.

14          And if you haven't resolved all of this, send me a

15   copy of a list of however many are still in dispute.  And I

16   would think the first thing as always, if there is one that

17   everybody can agree on, or that is the most high priority item

18   for Miss Marcoe and her team that goes at the top of the list,

19   if I have to rule on other ones, if everybody can agree that

20   there is 30 or 35 -- I don't know how many.

21          I am just picking a random number.  And that everybody

22   agrees can be turned over and would be reasonable to turn over,

23   and then the fight is over another 200 and I have to resolve

24   the other 200, I will be prepared to do that.  So it is always

25   better to deal with from a base of having evidence rather than

1  speculation.

2          So other than that, Mr. Roche, I don't know what other

3  ruling I could give you.  Other than I hear your burden

4  argument and to a point, I think that needs to be accommodated.

5          On the other hand, I think this is irrelevant

6  information and I think at some level some of it can be

7  produced without undue burden and I am just not in a position

8  right now to draw that line.

9          MS. MARCOE:  I will represent that we will make our

10  best effort to get this as short and as narrow and as based on

11  the guidance that Your Honor has provided thus far today.  We

12  will endeavor to make this as streamlined as possible today.

13          THE COURT:  And let me say this and I know I have said

14  it before in this case, but let me say it again on the record.

15          I sort of joke that I have had to resolve a lot of

16  discovery issues in this case.  That being said, there is a lot

17  going on in this case and there is a lot of information and

18  paper and documents and devices and a lot of material going

19  back and forth.

20          And it is apparent to me that all counsel have been

21  working very well together and compromising where were you need

22  to and fighting where you need to.  I understand that, but I

23  don't want anyone to take the idea that I think any of you have

24  been derelict or that you have not been as professional and

25  cooperative as you could be.

```
 1            So with that, why don't we recess until 2:00 tomorrow.
 2   In the meantime, I will look at these matters and we will just
 3   reconvene then.
 4            Now, before I do that, Miss Marcoe, as to the issues
 5   that I have not taken under advisement, have I now ruled on any
 6   issues that you wanted raised today, not waiving any objections
 7   you might have to those rulings?
 8            MS. MARCOE:  I believe you have, Your Honor.
 9            THE COURT:  And Mr. Roche, not waiving any objections
10   or Mr. Pritt, not waiving any objections to the rulings that I
11   have made, have I at least now ruled or taken under advisement
12   all the issues that you wanted to raise today?
13            MR: ROCHE:  Yes, Your Honor.
14            THE COURT:  All right.  Thank you both very much.
15   Thank you everybody.  Go wash yours hand and I will talk to you
16   tomorrow.
17            MR. ROCHE:  Thanks, Judge.
18            MS. MARCOE:  Thank you very much, Your Honor.
19            (Thereupon, the telephonic proceedings concluded.)
20
21
22
23
24
25
```

```
 1
 2                              CERTIFICATE
 3
 4          I hereby certify that the foregoing transcript is an
 5   accurate transcript of the audio recorded proceedings in the
 6   above-entitled matter.
 7
 8
 9
10
11   04/02/20                        Bonnie Joy Lewis,
                             Registered Professional Reporter
12                             CASE LAW REPORTING, INC.
                               7001 Southwest 13 Street,
13                           Pembroke Pines, Florida 33023
                                    954-985-8875
14
15
16
17
18
19
20
21
22
23
24
25
```