1                  UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF FLORIDA

2

                Case No. 18-80176-CIV-BB

3
IRA KLEIMAN, ET AL.,       )

4                       )
     PLAINTIFFS,        )

5                       )
     -v-             )

6                       )
CRAIG WRIGHT,           )

7                       )
     DEFENDANT.        )   West Palm Beach, Florida

8                       )   April 17, 2020
_____)

9

10    TRANSCRIPT OF TELEPHONIC DISCOVERY HEARING PROCEEDINGS

11        BEFORE THE HONORABLE BRUCE E. REINHART

12          UNITED STATES MAGISTRATE JUDGE

13

14  Appearances:

15  (On Page 2.)

16

17  Reporter              Stephen W. Franklin, RMR, CRR, CPE
    (561)514-3768        Official Court Reporter

18                  701 Clematis Street
                    West Palm Beach, Florida  33401

19                  E-mail:  SFranklinUSDC@aol.com

20

21

22

23

24

25

```
 1    Appearances:

 2    FOR THE PLAINTIFFS        Velvel Freedman, ESQ.
                                Roche, Cyrulnik, Freedman, LLP
 3                              200 South Biscayne Boulevard
                                Suite 5500
 4                              Miami, FL 33131
      -and-
 5                              Andrew Brenner, ESQ.
                                Boies, Schiller, Flexner, LLP
 6                              100 Southeast 2nd Street
                                Suite 2800
 7                              Miami, FL 33131

 8    FOR THE DEFENDANT:        Amanda M. McGovern, ESQ.
                                Rivero Mestre, LLP
 9                              2525 Ponce de Leon Boulevard
                                Suite 1000
10                              Coral Gables, FL 33134

11                                   *  *  *  *  *

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Call to the order of the Court.)

2          THE COURT:  Okay.  Good afternoon, everyone.  This

3  is case number 18-80176, Ira Kleiman and WNK Info Resources

4  versus Dr. Craig Wright.  Let me start with appearances,

5  please, and I'll start with counsel for the plaintiff.

6          MR. FREEDMAN:  Good afternoon, Your Honor.  This is

7  Vel Freedman, counsel for the plaintiff.

8          MR. BRENNER:  Good afternoon, Your Honor.  Andrew

9  Brenner, counsel for the plaintiff.

10          THE COURT:  Good afternoon, Mr. Brenner.

11          All right.  And counsel for the defense, please.

12          MS. McGOVERN:  Good afternoon, Your Honor.  This is

13  Amanda McGovern, counsel for Dr. Wright, defense (inaudible).

14          THE COURT:  Good afternoon, Ms. McGovern.

15          Okay.  As I said before, I understand we have a

16  number of members of the public who are listening in on the

17  call.  So, again, I will ask you to mute your phones and

18  listen patiently and let the lawyers do their thing.

19          So the issue before the Court today is the parties

20  wanted to raise two discovery matters, or I guess the parties

21  wanted to raise one new discovery matter, and then there was a

22  pending discovery matter from our last hearing.  So what I'd

23  like to do is address the pending matter first.

24          And I'll note that since the last hearing, the

25  parties submitted to me in camera materials relating to

 1  Mr. Lyman (sic) -- is it Lyman?  Mr. Lyman's statement and the

 2  origins of that statement, and I have had a chance to review

 3  those materials.

 4          Ms. McGovern, did you submit everything that you

 5  wanted to submit on that issue?

 6          MS. McGOVERN:  Your Honor, I apologize if this is

 7  just my problem, but I caught every other word --

 8          THE COURT:  Oh, that's not good.

 9          MS. McGOVERN:  -- due to a connection problem.  I

10  can certainly try to call back in if it happens again, but I

11  apologize, I did not hear what you said.

12          THE COURT:  Okay.  Let me just double-check.

13          Mr. Brenner, were you able to hear me, or is the

14  issue at my end.

15          MR. BRENNER:  I was able to hear you, Judge.

16          THE COURT:  You were?

17          Okay.  And Mr. Freedman, were you able to hear?

18          MR. FREEDMAN:  I was as well.

19          MS. McGOVERN:  No, I think this must be my issue,

20  because I can't hear anybody.

21          THE COURT:  All right.  Ms. McGovern, why don't you

22  log off and call back in so when -- obviously want to make

23  sure you can hear everything.  So I'll wait for you to go

24  ahead and do that.

25          MS. McGOVERN:  I'm going to call back in.

```
 1                THE COURT:  That's fine.

 2                MS. McGOVERN:  Okay.  I apologize.  I'm sorry, I'm

 3      just getting every word.  I'm going to call back in right now.

 4      Bye-bye.

 5                THE COURT:  Okay.  Ms. McGovern, are you back?

 6                MS. McGOVERN:  Hello.  Amanda McGovern.

 7                THE COURT:  Ah, very good, Ms. McGovern.  I have you

 8      back.  Let me just . . .

 9                All right.  So Ms. McGovern, what I was saying

10      before you were not able to hear me was that I did have a

11      chance to review the materials that were submitted on the

12      issue of Mr. Lyman's statement --

13                MS. McGOVERN:  Ah, okay.

14                THE COURT:  -- and I wanted to make sure that you

15      had submitted everything that you wanted to submit on that

16      topic.  I received the submission, but I wanted to be sure it

17      was everything that you wanted to submit.

18                MS. McGOVERN:  Yes we have, Your Honor.

19                THE COURT:  Mr. Freedman or Mr. Brenner, have you

20      submitted everything you wanted to submit on the issue of the

21      statements?

22                MR. BRENNER:  Yes, Your Honor.  I just want to make

23      sure you're clear on something, because there was a little

24      confusion yesterday.

25                The original submission to you in camera
```

1    inadvertently included us.  So I -- when I saw that, I

2    immediately notified Ms. McGovern.  She clarified it was an

3    inadvertent disclosure, and I deleted and instructed my team

4    to delete that.  So the two -- I think there were two, or

5    maybe -- I don't know if there's one or two affidavits or

6    statements from Mr. Lynam.  We have not seen those.  You got

7    those, which was appropriate, and we agree you should have got

8    them, and I want to make sure that -- because it could have

9    been (inaudible) -- your email.

10          THE COURT:  I appreciate that.

11          No, I appreciate that, and I appreciate your

12   professionalism in that regard, Mr. Brenner.  It doesn't

13   surprise me at all.

14          All right.  So Ms. McGovern, would you like to be

15   heard further?

16          And just to make clear on the record, as I

17   understand the issue is as follows:

18          Mr. -- it's Lyman, correct?  He's Dr. Wright's

19   uncle.  He was deposed, and during the course of his

20   depositions, he testified that he had provided a draft of a

21   witness statement to counsel for Dr. Wright in litigation in

22   the United Kingdom.  The plaintiffs asked for production of

23   that statement, and the defense's position was that it was

24   work product in the UK litigation and therefore not subject to

25   disclosure, and I allowed the parties to make whatever

 1    evidentiary record they wanted to make.

 2            So assuming I've framed the issue correctly,

 3    Ms. McGovern, if I have not, feel free to correct me, but I'll

 4    allow you to be heard any further, anything further on that

 5    issue.

 6            MS. McGOVERN:  That's -- you are correct, Your

 7    Honor.

 8            THE COURT:  Okay.  Anything further other than what

 9    you've already submitted and already argued at the last

10    hearing?

11            MS. McGOVERN:  No, Your Honor.

12            THE COURT:  All right.  Mr. Freedman or Mr. Brenner,

13    any further argument from the defense?

14            MR. BRENNER:  Very briefly.  Very briefly.  And this

15    is Mr. Brenner.

16            By the way, the name is actually -- I keep doing

17    what you did, but it's L-y-n-a-m, Lynam, not Lyman.

18            But just a slight correction of your understanding

19    of the factual record.  At the deposition, there was no

20    testimony whatsoever about it being part of any litigation in

21    the UK.  Since the deposition that is what Ms. McGovern

22    informed me, and I think that's what the -- the affidavit from

23    the British counsel, whose name is escaping me right now,

24    said.

25            So the timeline was that he was dealing with them

1   back in September, British counsel.  In January or early this

2   year, they reached out to him again and -- about a witness

3   statement, and then he testified that he sent Ms. McGovern the

4   witness statement in the early part of the year, I'm not sure,

5   I don't think he said the exact month, in order to try to move

6   these proceedings along, referring to the deposition that we

7   were having.

8         So I think that's the factual record, and I have

9   nothing further to argue other than what I had.

10         THE COURT:  All right.  Thank you.  All right.  So

11   let me rule on that.  First of all, let me start by making

12   very clear what I am ruling and what I am not ruling.

13         Okay.  I am not making any sort of a ruling as to

14   whether any kind of work product protection applies in the

15   United Kingdom.  I do not pretend to know what the law is in

16   the UK as to privilege.  But under U.S. law, materials can be

17   works product so long as they are created in anticipation of

18   any litigation.  It does not have to be the litigation in

19   Florida that we are currently engaged in.  So that is my

20   understanding of the theory of both Dr. Wright and his counsel

21   in this case is that this material was created in anticipation

22   of litigation in the UK, and therefore U.S. work product

23   protection would attach to that.  So I'm not ruling on UK law

24   issues.

25         I am going to (inaudible) -- and I'll explain why.

1    I am going to order -- okay.  Whoever's got -- make something

2    noise there, if you can mute your phone, please.

3              I am going to order disclosure of the statement by

4    Mr. Lynam to counsel for the plaintiffs in this case.  It will

5    be subject to the same orders that I have previously imposed,

6    which is that it may only be used in this case, it may not be

7    disclosed to anyone who is neither a party nor counsel in this

8    case, and that the -- Dr. Wright and his team may mark it

9    accordingly pursuant to the confidentiality order that is in

10   place in this case.

11             But the basis for my ruling is that, having reviewed

12   the materials that were submitted to me, it is clear to me

13   that the statement was not intended to be -- was not something

14   that was ultimately intended to be kept confidential from the

15   opposing counsel in the UK litigation, and therefore had it

16   been created as part of the U.S. litigation under U.S. law, it

17   would not be work product.  And so for that reason, I'm going

18   to order it disclosed.

19             Again, to be very clear, I am not ordering that

20   counsel for Dr. -- I am not finding that counsel for

21   Dr. Wright in this case has done anything to waive a privilege

22   that would otherwise have existed, but based on my

23   understanding of the record that has been presented to me,

24   what I am finding is that for U.S. law purposes no privilege

25   ever attached in the first instance, because it was not

1    intended to remain confidential from opposing counsel.

2           So that will be my ruling on that.  All of Ms.

3    McGovern's objections to that ruling are preserved, and the --

4    Dr. Wright may take whatever appeals he wants to take from

5    that ruling.

6           Let me now turn to the second issue which has not

7    yet been fully argued, and that is the issue relating to the

8    materials underlying the expert witness' report.  I've had a

9    chance to review the expert witness' report, as well as the

10   submissions by the two parties.  And as I understand it,

11   again, to try to frame the issue, it is whether the

12   material -- that the doctor who prepared the expert report

13   relied upon work, testing, analysis, evaluation that was done

14   by a colleague; that the colleague's test results, evaluation,

15   analysis, et cetera, was provided to Dr. Lin -- I forget his

16   name -- was provided to the expert who ultimately provided the

17   report in this case and was relied upon by that author in

18   authoring his expert report.  And the plaintiffs' position is

19   that therefore it is materials that was relied upon by the

20   expert and should become discoverable under Rule 26, and the

21   defense's position is that it is -- it is in the essence --

22   the underlying colleague's materials are in the essence of a

23   draft report or other material that should not be

24   discoverable.

25           So, again, I'll turn to Ms. McGovern first.

```
 1              MR. BRENNER:  Your Honor, before you do, I don't
 2    want to argue it, but I --
 3              THE COURT:  Yeah.
 4              MR. BRENNER:  You have not -- I think in fairness,
 5    you've not actually captured what the plaintiff's position is.
 6              THE COURT:  Okay.
 7              MR. BRENNER:  So without arguing what the
 8    plaintiff's position is, you got part of it, which is the
 9    doc -- the other doctor.  We also are entitled to
10    Dr. Klin's -- and I don't know if I'm pronouncing it right --
11    Dr. Klin's notes -- and I'll go into this in a little more
12    detail as my argument.  So it's Dr. Klin's notes,
13    Dr. Saulnier's notes, and the -- and I could be a little loose
14    with my language, but I'll call them the psychological
15    assessments that were actually run (inaudible) in the
16    report -- all that's in the report is the final score.  We
17    don't have any of the underlying -- we don't have the tests
18    that were actually done, which can be hundreds of questions
19    that had to be answered by various folks.  So it's not just
20    related to the Dr. Saulnier issue, which is part of it, and
21    plaintiffs' -- and defense position is all of that, everything
22    I've just said, is a direct report.
23              THE COURT:  I understand.
24              MR. FREEDMAN:  I think that would more accurately
25    phrase the issue.
```

1        THE COURT:  Mr. Brenner, I appreciate that.

2        MR. BRENNER:  Yeah.

3        THE COURT:  Let me turn to Ms. McGovern.  Well, I

4   guess it's -- yeah.  Ms. McGovern, I'll treat this in the

5   nature of a motion for protective order.  So I'll allow you to

6   go first and last.

7        So I'm happy to hear from you.

8        MS. McGOVERN:  I believe actually Your Honor raised

9   it correctly.

10       From the defense perspective, the methodology that

11  is used by Dr. Ami Klin is the same methodology that he uses

12  in every case in which he testifies, and that is that he

13  compiles his -- his assessment, and it is in the form of a

14  draft report, with the notes that he takes and the information

15  that he receives.  I believe there was a factual statement in

16  the joint discovery memorandum that the underlying -- you

17  know, that the bulk of the -- of the work, it is, in fact,

18  informed by his colleague.  However, it actually isn't the

19  case.

20       In this particular -- with respect to this

21  particular argument, the fact of the matter is is that -- and

22  I think he details this quite well in his report.  You know,

23  he has provided under Rule 26(a) a report, which is a complete

24  statement of all the opinions that he is going to express and

25  the basis and the reasons for them, and the draft report is a

1    compilation of all of the observations and the analyses that

2    went into the final report.  He does not keep the draft

3    report.  He does not do that, not simply in this case, but in

4    any of -- in any of his work.

5           He is going to be deposed on Tuesday, and the

6    reasons for that and the circumstances surrounding that I'm

7    sure will be the product of extensive cross-examination.  But

8    in terms of the documents that are being sought here, because

9    they are treated -- and I'm speaking with -- after obviously

10   conferring about this issue -- because they are treated by the

11   clinician, and it is a totality of circumstances in that, you

12   know, opinion, by really the -- you know, a leading expert in

13   this field, that's the manner in which he ultimately prepares

14   his final draft, his position -- his final report.

15          This isn't, I think -- you know, another thing I

16   think sort of to be noted here is that, you know, this is not

17   a cursory report.  I mean, it's really extensive, and one of

18   the reasons we wanted to provide it in camera was to

19   demonstrate that.  But the documents that are being requested

20   by the plaintiffs this expert does not keep, and he considers

21   them to be drafts.

22          THE COURT:  Well, let me ask you, Ms. McGovern.  It

23   seemed to me that Mr. Brenner was really breaking the world

24   down into what I would call three categories.  One was the

25   underlying broad data -- my terminology -- right, the actual

1   answers to assessment questions, things of that nature.  That

2   was number one.

3            Number two would have been -- and, again, I can't

4   pronounce her name, but the non-reporting expert's notes,

5   evaluation and maybe interim conclusions based upon the raw

6   data.

7            And then ultimately the reporting expert's

8   additional -- and, again, I use this word not in the technical

9   legal sense, work product during the preparation of the final

10  report.

11           Do you make any distinction among those three

12  categories?

13           MS. McGOVERN:  I do believe that those are the

14  documents that are being requested, but the manner in which

15  that data is received and evaluated and report -- and reported

16  on or worked on I don't believe necessarily can be divided

17  into those categories.  But, again, I think this is the

18  subject of examination of the expert and the manner in which

19  he performs his both methodology and ultimate analysis.

20           It's my understanding -- and I'm not an expert in

21  this field, obviously.  And so, but, you know, it's my

22  understanding that this is not -- this is not an assessment

23  that really can be broken down into those parts.  It is a

24  totality such that, you know, what is not included ultimately

25  in the final report, because it was considered a draft report,

```
 1    is -- you know, it doesn't become part of it.

 2            But -- so, in other words, assuming, for example, if

 3    the assumption is that -- that, you know, Doc Saulnier's, you

 4    know, analysis, is going to be separate and apart from

 5    Dr. Klin's analysis, you know, I'm not sure that that's true,

 6    because they work collaboratively.

 7            Similarly, with respect to the questionnaires that

 8    are referred to -- and I'm sure there will be extensive

 9    questions with respect to that -- you know, the manner in

10    which a clinician receives that information and incorporates

11    that into the draft, I'm not sure that they're completely

12    separate, but what I do believe is the case here is that the

13    information that was received -- that was received in the

14    evaluations and in the assessments all went into what became

15    ultimately a draft report.

16            THE COURT:  I understand.

17            All right.  Let me hear from Mr. Brenner, and then

18    I'll come back to you for final comments, Ms. McGovern.

19            Mr. Brenner.

20            MR. BRENNER:  Thank you, Judge.

21            So --

22            THE COURT:  And, actually, hold on just one second,

23    Mr. Brenner.  Let me interrupt you.

24            MR. BRENNER:  Sure.

25            THE COURT:  I have found the capability, what I'm
```

```
 1  going to do is I'm going to mute everybody on the call, and
 2  then I will unmute just Mr. Brenner, Mr. Freedman and
 3  Ms. McGovern, because I've been getting a lot of background
 4  noise, and we have a lot of people to manage on this call.  So
 5  pardon me one second.  Let me do that logistical feat.  Hold
 6  on.
 7          COMPUTER VOICE:  All participants are now in listen
 8  only mode.
 9          THE COURT:  Okay.  If I've now done this correctly,
10  Mr. Brenner, you should be able to speak.  Why don't you just
11  say something.
12          MR. BRENNER:  Yes, Your Honor.
13          THE COURT:  Okay.  I can hear you.
14          Mr. Freedman?
15          MR. FREEDMAN:  Yes, Your Honor.
16          THE COURT:  And Ms. McGovern?
17          MS. McGOVERN:  Yes, Your Honor.
18          THE COURT:  Perfect.
19          Okay.  Now, and the members of the public are muted.
20          Very well.  Let me, then, Mr. Brenner, I will allow
21  you to continue.  Sorry to interrupt you.
22          MR. BRENNER:  No worries, Judge.
23          So I think it's worth stepping back a little bit and
24  looking at what is really going on here and to understand sort
25  of how frankly -- frankly shocking the position that's being
```

 1   taken by the defendant here.

 2          We'll -- at the end of my remarks, I will walk

 3   through with you the law we cited.  Every one of these

 4   arguments has been specifically rejected in the courts.  Okay?

 5   But let's talk about what's going on here.

 6          On April 10th, the expert disclosure deadline, the

 7   defendant undoubtedly injected a new and rather novel argument

 8   into the case, and without getting into the details of the

 9   confidentiality of the report, essentially they've hired a

10   clinician, clinical psychologist I believe is the -- is his

11   actual title, to opine on how courts and fact finders should

12   understand and accept the testimony of Dr. Wright.  And so

13   what did he -- what did he do to get there?

14          Well, it's in his report.  He reviewed two sets of

15   material and one -- and then did one -- created one other set

16   of material.  So he -- first set of material, what I call the

17   court materials, he reviewed a videotape of Dr. Wright's

18   deposition from last year, I believe the April deposition,

19   2019, and he read the testimony from a hearing before Your

20   Honor, although it was unclearly to me whether it was the

21   deposition that was in the morning of that day or the

22   evidentiary hearing testimony that afternoon.  And it could

23   have been both.

24          So put that aside.  I obviously have that stuff.

25   It's not part of what we're doing here today.

1          The entire diagnosis and opinions he's reached were

2     based on what I'm about to tell you he did.  There are no

3     other factual bases for his opinion other than Dr. Klin

4     himself interviewed, apparently it appears by video

5     conference, Dr. Wright, and his colleague then did interview,

6     or interviews, with Dr. Wright's right, Ramona, his uncle,

7     Donald Lynam, who we've just talked about earlier in the

8     hearing, a sister, and am I blanking out on one?  Wife,

9     sister, uncle --

10          THE COURT:  Mother, I think.

11          MR. BRENNER:  Oh, and mother.  And mother, thank

12     you.

13          So that is -- you know, so if we can start with the

14     principle that Rule 26 -- and Ms. McGovern said very -- you

15     know, she said that the doctor has disclosed his opinions.

16     Which, I agree he has, and it's not before you today whether

17     those opinions are relevant or admissible in court, that's not

18     before you, and the bases for his opinions.  Well, the only

19     basis he revealed for his opinions is I and my colleague

20     talked to these people, but you're not allowed to tell -- you

21     just have to take my word for what they told you -- what they

22     told me.

23          So I consider myself a pretty decent cross-examiner,

24     but I don't know how you cross-examine that.  I don't know how

25     you say, Dr. Klin, you said that Dr. Wright -- and I don't

1  want to get into the report.  I don't want to get into
2  individual facts, but you said Dr. Wright said this, and you
3  took notes of that, didn't you, sir?  Yes, I did.  Can I see
4  them?  No, you can't.  Well, how do I know he said that to
5  you?  You have to take my word for it, sir.  So that's how the
6  deposition's going to go.
7          And so I think we could start with the basis that
8  there's no doubt you have the right to test the bases of an
9  expert's opinion.  He can't just say, I had tens of hours of
10 interviews, and I'm just going to tell you what they said.
11 That's just not what Rule 26 requires.
12         The other thing they did is they ran these
13 assessments.  These are written assessments, Judge.  They
14 exist.  In fact, the whole consultation period took place last
15 week, April 3rd to April 10th.  I know that because that's
16 what the report says.  By April 12th I had requested all this.
17         So the doctor took the assessment, so Ramona Ang
18 (phonetic), for example, Ramona Watts, filled out -- and I
19 represent to the Court it is a lengthy questionnaire with a
20 bunch of questions.  She's gotta answer all of them.  Is it
21 the point~-- the defense position that she fills it in, the
22 doctor gets it, the doctor scores it and then destroys it, and
23 you can't see it?  You can't check if the -- how the doctor
24 interpreted the data that he was given?  How in the world can
25 that be, Judge?  So that's sort of a backdrop we're on here.

1          So I have no -- I don't have the tests.  I don't

2   have the notes.  So all I can do is say to the doctor is:  Did

3   he tell you that, and he says, yes, and I move on.  Okay.

4   That is not testing the basis of an expert opinion.

5          Now, I think on its face, the argument should be

6   over on that, but this idea that it's a draft report has been

7   specifically rejected by the courts.

8          First of all, you should start with the advisory

9   committee note.  The advisory committee note says what the

10  draft report exception is for.  The draft report ex -- and I'm

11  talking about the advisory committee note to Rule 26.  It is

12  specifically for -- and, Judge, you and I are of a similar age

13  and practice in similar environments.

14          As you recall, there used to be this dance we had to

15  go through because we weren't allowed to communicate with our

16  experts, because it was all discoverable.  And finally the

17  courts said, wait a second, that's -- you know, lawyers are

18  making side agreements to not do that because it's just not

19  practical.  You need to be able to communicate with your

20  expert, and you communicate often by going back and forth and

21  reviewing reports and revising reports and making suggestions.

22          So the draft report exception, as the advisory

23  committee note makes clear, was specifically to protect

24  against that.  It's specifically to protect so you don't have

25  to reveal the work product and mental impressions of the

1    attorneys, which often go into draft reports, which ultimately

2    of course the expert is responsible to and signs his or her

3    name to.  It has nothing to do with the expert's factual data

4    that he or she relied upon.

5             Okay.  So this whole idea that it's a draft report,

6    how the assessments can be a draft report, that's not been

7    articulated either in the written or comments by Ms. McGovern.

8    But you have to understand, Judge, the notes are the factual

9    material that he relied on.

10            Now, what did he do?  Just to -- you know, you

11   picked up on a Dr. Saulnier issue, and I'm reluctant to harp

12   too much on it, Judge, because I think it's just only the most

13   extreme example of what's happening, okay, because I think

14   it's -- they are -- they are no doubt subject to production,

15   but I don't want you to think that I think they're any less

16   subject to than Dr. Klin.  He only -- Dr. Klin only

17   interviewed Dr. Wright.  The rest were done by Dr. Saulnier.

18            So here's what they did, Judge.  They each had

19   interviews.  Apparently, at least some were by video.  I don't

20   know how many, but let's assume all.  It doesn't matter.  I

21   accept Ms. McGovern's representation that they were not

22   recorded.

23            So Dr. Klin is watching his video with Dr. Wright

24   and Dr. Saulnier's watching her video chats or Zooms with the

25   other four witnesses, and they're each taking notes.  They

1   both tell you that.

2          Dr. Saulnier's notes are referred to in page 2 of

3   the expert report, and in the joint discovery memorandum,

4   counsel for Dr. Wright acknowledges that Dr. Klin himself was

5   taking notes.  Of course they were, Judge.  This is the only

6   basis of what they're basing their opinion on.  And then they

7   got in a room, and they exchange notes, and they discuss them.

8          So Dr. -- the idea that Dr. Saulnier's notes were

9   somehow a draft of Dr. Klin's report doesn't make any sense on

10  its face.  But that is the body of material that Dr. Klin had

11  when he issued his report, he had his notes, he had Dr.

12  Saulnier ran two of the assessments.  He had -- he had the

13  assessments, he had her rating.  They call them rating scales.

14  He had her rating scales in the assessments, he his own

15  assessments, and then he put everything together, and he

16  penned his final report.

17         But I literally had nothing other than -- you have

18  all the materials I have, Judge, as to what he used to reach

19  his conclusions, because you, too, at least have access to the

20  Court record, and perhaps you don't have Dr. Wright's

21  deposition, but that's a court -- a court issue.

22         So I told you that the advisory committee notes

23  specifically tells us this -- the carve-out of the draft

24  reports has nothing to do with protecting the expert's mental

25  impressions or the expert's thoughts or the expert's testing.

1   And, you know, I don't know if you have it in front of you,

2   but the advisory committee says, for example, the expert's

3   testing material involved in litigation and notes of any such

4   testing would not be exempted from discovery by this rule.

5          Similarly, inquiry about communications the expert

6   had with anyone else, other than the party's counsel about the

7   opinions expressed, is unaffected by the rule.  The rule is

8   meant to protect conversations and communications between

9   counsel and Dr. Klin, and I'm assuming, because it's not

10   raised anywhere and they have not said it, counsel was not on

11   these calls but -- with the various witnesses, but even if

12   they were, it wouldn't sanitize them, only to the extent

13   perhaps what the lawyers said.

14          And I told you, Judge, this has all been dealt with.

15   This is all~-- the law's already dealt with this.  As you can

16   imagine, lawyers have sought in the past to expand the draft

17   report exception to swallow the rule that you have to reveal

18   reliance materials.

19          We cited Your Honor the Wank case.  I think it's

20   just worth taking a look at it briefly.  Wank is -- the cite

21   is 2014 Westlaw 1121920, Wank v. O'Reilly.  And that is a case

22   where the expert had materials, and the other side wanted

23   them, and the defense was, you can't have them because they

24   are work product.

25          And, again, they -- the Court cites to the advisory

1    committee rule and basically says, one example, the breadth of

2    discovery's still permitted in this discovery from experts;

3    the advisory committee cited the expert's testing material

4    involved in litigation and the notes of any such testing.

5              The Wank court goes on and discusses on page 3:

6    Apart from shielding attorney work product from disclosure --

7    which, there is no work product claim here -- there's no

8    reason to prevent an opposing party from finding out how an

9    expert arrived at his or her conclusions, including

10   discovering the thought process which led the expert there.

11             Drafts -- referring to draft reports -- are

12   protected because, as noted above, the drafting process

13   ordinarily entails communications between the expert and

14   counsel.  It usually involves feedback from counsel, a process

15   which is likely to include revelation of attorney work

16   product.

17             Notes made independently by an expert -- which is

18   where we are here -- do not fall into that category, and notes

19   which contain observations about facts or analysis of facts

20   have, quote, factual (inaudible), end quote, making them

21   subject to disclosure or discovery.

22             And the Court says, you can send it to me in camera,

23   but from what's been described, you're going to lose

24   essentially.  And that's on page 3 of the Wank opinion.

25             As I said, Judge, the only case cited to you by the

1    defendant was a case that says draft reports are not

2    discoverable.   I agree with draft reports are not

3    discoverable.   I've never asked for a draft report from

4    Dr. Klin.

5            The idea that tests are not discoverable,

6    psychological tests, has been dealt with specifically in the

7    Percell (phonetic) and the Fraser case.   Both cases, not

8    surprisingly, deal with psychological testing, and both cases

9    emphatically hold that that is not a draft report.   That is

10   the data the expert's relying upon, and those need to be

11   produced.

12           Percell, the citation is 2016 Westlaw 6427883.

13   Again, that has to do specifically with a psychological test,

14   saying that they are subject to disclosure.   And the same for

15   the Fraser case.   The cite on the Fraser case is 2010 Westlaw

16   447785.

17           The last thing I wanted to touch on was the Saulnier

18   aspect of it.   Remember, five of the six or four of the five

19   interviews are not even done by Dr. Klin, they're done by

20   Dr. Saulnier.   And they get together, and they do what's

21   called a clinician's best diagnosis.   I assume that's a term

22   of art for sort of a consensus diagnosis.   But yet we don't

23   even know what Dr. Saulnier put in her notes that Dr. Klin

24   reviewed, because they've claimed Dr. Saulnier's notes are Dr.

25   Klin's draft report, and that's been dealt with not in the --

```
 1    in the -- exactly.  It's been in the Penn case -- let me get

 2    you the cite, Your Honor, it's also cited in our brief.  These

 3    have all been cited in our brief.  The PennEnvironment case,

 4    which is 2014 Westlaw 12589147, and it says, there is a wide

 5    consensus that notes of experts or communications between

 6    experts, expert staff or other non-attorneys, will not be

 7    protect from discovery, quote, as draft reports, end quote.

 8              And it cites the Ecuador case, which is a case

 9    you'll see in this if you do the research that says -- holding

10    a list, outline, notes, letters and memos prepared by expert

11    concerning draft reports, is to be produced but actual drafts

12    need not.

13              So, Your Honor, it's not a draft report.  It's

14    literally the entire body of information the expert relied on,

15    all this stuff, other than the deposition and the court

16    proceeding.  And I have none of it.  I have literally zero of

17    it.  And I -- just, you know, I'll close by saying this issue

18    has been specifically addressed and rejected by the courts.

19    If this were the case -- think about this for a second.  If

20    this were the case that experts can just gather data, the

21    factual data they rely on, and then say, I put it into my

22    report, so it therefore became a draft report, think of what

23    that does to the ability to test the opinions.

24              And, Your Honor, one thing I do want to guard

25    against is I suspect, and you may be -- part of this going to
```

 1   your reasoning, you know, you've said to us before in certain

 2   situations, you know, Mr. Brenner or Ms. McGovern -- I think

 3   we've both been on the side of this question from you, which

 4   is essentially, what do you want me to do; they've already

 5   told you they don't exist.  Right?  And I think we both had

 6   that question from you.

 7            And here is the problem, Judge.  If they don't

 8   exist, but you rule it doesn't matter, because they didn't

 9   have to produce them, then he is given -- he's given carte

10   blanche to just destroy it.  There's no -- there's nothing I

11   can do about it.  I can't do anything about it.  What I need

12   Your Honor to rule is that these are not draft reports, and

13   they're subject to production.

14            When I depose Dr. Klin next week, if he tells me

15   they're all destroyed, I did the report by Friday, by Sunday

16   everything was in the garbage, you know, that will be an issue

17   that we'll raise either with you or with Judge Bloom leading

18   to trial.  But all that's before you today is are these

19   things, Dr. Klin's notes, Dr. Saulnier's notes and the actual

20   psychological assessments run, are these things draft expert

21   reports as contemplated by Rule 26?  And the answer to that is

22   unequivocally they are not.

23            THE COURT:  Thank you, Mr. Brenner.

24            Mr. Brenner, I'm going to ask you a question, not

25   that.

1          MR. BRENNER:  Sure.

2          THE COURT:  It's a related question, but not that

3    one.

4          Is it your -- I'm looking at Rule 26 right now.

5          MR. BRENNER:  Sure.

6          THE COURT:  And I guess what I'm trying to discern

7    is are you objecting that the report that was provided to you

8    does not conform to the rule because it doesn't adequately

9    identify, quote, facts or data that the parties (inaudible)

10   provided and the expert -- wrong one here, sorry.  Right

11   quote, wrong part of the rule.

12         So the rule requires with regard to experts -- well,

13   I guess that's my question.  Is your objection -- here we

14   go -- that the expert's report does not adequately describe

15   facts or data considered by the witness informing his

16   opinions.

17         MR. BRENNER:  Yes, the rule --

18         THE COURT:  Hold on.

19         That's a different question from:  They haven't

20   given me some discovery that I want.  Right?  Because the

21   report would simply -- if the doctor just says, I reached a

22   conclusion, I'm not going to tell you how, and I'm not going

23   to tell you what I relied upon, that's an inadequate report.

24   I can order them to give you a new report.  And whether the

25   underlying documents exist or don't exist, they have to

1    provide you with a new report, and the doctor just has to do

2    his best to remember what he relied upon, and then you can

3    challenge him on that.

4         That's a different question from, I think your

5    report's fine, they've told me the facts or data that he

6    relied upon, I just want to see those facts and data so I can

7    challenge them.

8         So I'm just trying to clarify where you are on that.

9         MR. BRENNER:  Well, I think it's a little bit of a

10   distinction without a difference, but let me, being the

11   careful lawyer I am, let me try to answer the question you're

12   asking.

13        So I believe -- and Ms. McGovern I think will agree

14   with me on this -- that the way Rule 26 is enforced -- so, for

15   example, my -- and we've had this in this case as recently --

16   you know, we have it in this case with our expert reports,

17   (inaudible) expert reports.

18        I produced an expert report, and it says -- my

19   expert says, I relied on this, this, this, this and this, and

20   three of those things are things that everyone has, and three

21   of those things the other party doesn't have.  There's no

22   question the practice and the rule requires you give them the

23   other three things.  Because just for him just to be able to

24   say, I relied on this, but you can't have it, is not what the

25   rule contemplates.

1      So you -- so, for example, every part of that rule

2  tells you what you need to disclose to the other side, and

3  just disclosing the category, like I relied on interviews with

4  the plaintiff -- or defendant, excuse me -- is not sufficient

5  under the rule if you -- there's no way to test that.

6      So, for example, and Your Honor may recall this,

7  happens all the time.  Someone says, I relied on deposition

8  testimony, but they've taken notes in the margin of the

9  deposition.  Totally producible.  No one would dispute that.

10 Because I don't have the notes.  You're the opposing -- so I

11 don't have your notes.  You have to give me those.  And I

12 don't think that's what's in dispute here.

13     I don't think that the defendant's position is we

14 just have to tell you what it is, and the fact that you can't

15 get it is your problem.  That's not what the rule requires.

16 The rule requires that you disclose them, not just what they

17 are, but actually give them if the other side doesn't already

18 have them.  I just think that's the practice.

19     If Your Honor wants -- I don't think that's in

20 dispute, but if Your Honor wants me to brief that issue in

21 particular, I'm happy to.  But all of the cases you'll see are

22 about not just saying -- for example, the cases I read you

23 about the psychological tests.  It's not just saying, I relied

24 on the psychological test I ran.  The Court said, no, you have

25 to turn over the test.

```
1              So I think you're --
2              THE COURT:  I --
3              MR. BRENNER:  I think your reading of the rule,
4     perhaps if I'm reading correctly, may be a little literal.
5     It's -- I don't think it's in dispute that -- I think the only
6     thing they're claiming is it's a draft report, that's why we
7     don't have to give it up.
8              So I hope I answered my question.  Maybe I didn't.
9              THE COURT:  You did, but I think we may be talking
10    past each other.
11             MR. BRENNER:  Sure.
12             THE COURT:  My point -- and I will allow
13    Ms. McGovern to be fully heard on all of these issues, but my
14    point was more you had brought up the issue of, you know, my
15    question about what do you want me to do about it.
16             MR. BRENNER:  Right.
17             THE COURT:  And then reading, well, it occurred to
18    me there are two things I can do about it depending on what
19    you're complaining about.  If you're claiming that the report
20    itself on its face, on its four corners, does not contain
21    sufficient information and does not conform to what's required
22    under the rules of evidence and Rule 26, then I would order a
23    revised and amended report that is more details.
24             That's -- that's not exclusive of the other.  There
25    is an alternative or -- alternative and possibly cumulative --
```

1    you know, supplemental.  They could run together.  Concurrent,

2    there we go, concurrent.  Concurrent remedy, as well, which

3    would be give them the underlying data to justify what's in

4    the report.

5            MR. BRENNER:  Right.

6            THE COURT:  And I was just inquiring whether you

7    think the report's good enough and I'm only dealing with

8    number two, or am I dealing with both of those questions?

9            MR. BRENNER:  No, I think you're dealing with both.

10   And the only thing I want to clarify is when you say the four

11   corners of the report, the problem is is there's no backup to

12   the report, right.  It's not -- the four corn -- it would be

13   fine.  The report would be fine, putting aside the relevance

14   and the materiality and Daubert issues with the whole opinion

15   itself, put that aside.  It would be -- on the (inaudible)

16   they can attach -- for example, they could have attached, had

17   to attach the notes of Saulnier, the notes of Dr. Klin and the

18   assessment.  So when you say four corners, if you're including

19   in that in the exhibits the four corners are in and of

20   themselves insufficient, and what I'm asking you to do is

21   overrule the only objection they made, which is this stuff is

22   draft, draft reports.

23           THE COURT:  Okay.

24           MR. BRENNER:  And they would -- and by doing that,

25   you'd be compelling them to turn it over.  And their answer

1   may be, I don't have them, and then we'll deal with it the way

2   we got to deal with it.

3          THE COURT:  Thank you.

4          MR. BRENNER:  What I don't want is --

5          Yeah.

6          THE COURT:  No, I understand.  Finish your sentence.

7   I didn't mean to interrupt you.  Go ahead.

8          MR. BRENNER:  No, I'm done, Judge.

9          THE COURT:  That's okay.

10          All right.  I understand your position.  Appreciate

11   you clarifying.

12          Let me turn back to Ms. McGovern.

13          MS. McGOVERN:  Good afternoon, Your Honor.

14          I do want to step back for a second to just address

15   a couple points that Mr. Brenner made in the beginning of his

16   argument.  I think sometimes what happens is you get so far

17   down in the arguments, that you don't think the first things

18   said are relevant.  That's happened to me in the past.  I

19   don't want that to happen again here.

20          This is not a new and novel position.  This was not

21   an untimely disclosed expert.  This is a critical issue in our

22   case.

23          Dr. Klin, you know, the former director of the Yale

24   Center of Excellence for Autism, and his colleague,

25   Dr. Saulnier, also was someone with Yale, and now, you know,

 1   both considered preeminent clinicians in this regard, will

 2   make perfectly clear, I am confident, in their deposition, or

 3   in his deposition, they would never risk their reputation,

 4   particularly in this area, for an expert report in litigation.

 5   This was a report that was done because it is an issue in our

 6   case, and I think we all know that.

 7            I'll add there were three experts added by

 8   plaintiffs in this litigation, disclosed for the first time on

 9   very novel theories, including if I say blue once, I mean blue

10   the next time I say it.  There are, you know, linguists, there

11   are supposed statisticians that we are rebutting today.

12            So I wanted to make that point clear.

13            In addition, with respect to the report, this is a

14   lengthy report.

15            THE COURT:  Uh-huh.

16            MS. McGOVERN:  Very detailed.  It's 17 pages long.

17   The notes on methodology alone are a couple pages long.  There

18   are references, as you would expect from a doctor of this, you

19   know, reputation and experience and education, to every single

20   thing that was considered in rendering his conclusion.

21            I don't think it is fair to blend the rule that was

22   discussed just at the very end of the argument under Rule 26,

23   I don't think it's a fair statement that this is not a report

24   that -- that meets the standard of Rule 26(a) if it doesn't

25   have attached to it the analysis, the notes that were taken

1    during the analy -- the assessment itself.

2          The report in and of itself is a report that

3    certainly meets the standards of Rule 26(a).  So -- and I

4    think that's an important distinction here before we get to

5    the underlying question of this expert's -- sort of the

6    validity and -- of the report itself, if, in fact, he doesn't

7    keep drafts of the assessment as it's being made.  He, I

8    think, specifically states with respect to the methodology

9    that's in the final report, it's a final report based upon a

10   totality of the circumstances, and therefore that's what he

11   considers -- that's what he considers to be a draft.  But I'm

12   certainly not going to speak for him.

13         Vigorous cross-examination, presentation of contrary

14   evidence and instructions as to the burden of proof are

15   traditional and appropriate when attacking any kind of

16   admissible evidence, and I'm sure Mr. Brenner will do that.

17   But that doesn't mean that the report was not a, quote,

18   complete statement of all opinions the witness will express

19   and the basis and reasons for them and the facts or data

20   considered by the witness in performing them.  And that's

21   right in Federal Rule of Civil Procedure 26(a)(2).

22         This is the situation in which we find ourselves on

23   this report, and I think that, you know, we all have very

24   tight timelines on this case, and I think that it is helpful

25   and has been instructive that we simply state where we are on

1    certain things.

2              And in this particular situation, Dr. Klin did not

3    keep the -- the notes and the assessments that were taken in

4    forming his final report.  He put them into his final report,

5    and he did not keep the draft which he refers to his draft.

6    The living document, which is a draft.  That's the way he

7    operates.  It's not just for this case.

8              I'm sure Dr. Brenner will make that -- I mean,

9    Mr. Brenner will make that clear, and on Tuesday.  This is not

10   a methodology and a situation that was implemented simply

11   because this is this case.  It's simply the way this clinician

12   formulates his opinions and ultimately renders a final report

13   on it.

14             And I will also state that with respect to this

15   report, you know, the ultimate conclusions that are made and

16   the bases for those conclusions are very specifically outlined

17   in the report, and all of those bases can be thoroughly

18   examined.

19             I don't understand the connection between taking

20   this expert, who -- and I'm not trying to get into

21   Daubert-related things, but there was sort of Daubert-like

22   tone in the argument that was being made here, and that's for

23   another day.  But I do not believe that this expert, when

24   asked about all of the methodologies, is not going to fully

25   answer them, but the -- but to suggest that the report, if he

1  states under oath and the position that he holds, and the

2  lifelong sort of passion with respect to atypicality, which is

3  extremely sensitive, it's asked, how do I know the mother

4  actually said that, well, it's evidence if the expert says, or

5  . . . because she told me that.  And it's evidence if the

6  expert states this is what Dr. Wright responded in connection

7  with these questions, and that's important under this

8  particular assessment and evaluation in my field for this

9  reason.

10        What is the difference between that and, well, I'd

11 want to say the note that demonstrates he actually said it?

12 It certainly wouldn't have been something that would have gone

13 into a report, it seems to me, if, in fact, it's not true.

14 But again, but again, that would go to the weight of it.

15        If you -- Mr. Brenner is going to be able to attack,

16 it seems to me, his methodology if he doesn't believe it's

17 appropriate or that it was done properly if, in fact, his

18 draft report wasn't kept, and I'm sure he'll explore why that

19 is.  But we're not in a situation here where this expert's

20 word should be thoroughly discounted, including the

21 methodology employed on a report that he's provided of this --

22 you know, with this detail.

23        And there's no -- we -- I don't believe there can be

24 any claim that Mr. Brenner is not on notice of exactly what

25 the opinions are and exactly what the basis for the

```
 1   conclusions are.

 2           So we do have a situation, Your Honor -- and I don't

 3   want to come back later and discuss this as though it should

 4   have been raised before, and therefore there's a delay or

 5   there's a confusion or there's anything, but I believe we will

 6   see at the deposition of Dr. Klin on Tuesday exactly how he

 7   goes about performing his final report and how he determines

 8   what he includes and what he doesn't and what he does with

 9   those, with what he refers to as sort of a living draft as he

10   is forming his analysis.  I believe we'll see that from the

11   expert, but I do not believe that Dr. Klin has those notes to

12   produce at a later time.

13           THE COURT:  Okay.  But what about -- I hear you on

14   that, but what about the notes or the work product?  Again,

15   not using the legal term, just using a generic term.

16           MS. McGOVERN:  Sure.

17           THE COURT:  The product of the other doctor and the

18   underlying test results?  Again, I don't know everything that

19   was done, but there clearly was some testing administered, and

20   there would be results of those tests.  And then there was the

21   first doctor's analysis and notes and feelings about that,

22   which were then shared with Dr. Klin.  And I understand

23   Dr. Klin may not have kept anything of his own, but do those

24   other things still exist?

25           MS. McGOVERN:  No.
```

```
 1              THE COURT:  And what's your position (inaudible)?

 2              MS. McGOVERN:  No, I do not believe they do, Your

 3    Honor.  And the position is exactly the same with respect to

 4    Dr. Celine Saulnier.  And I hope I'm pronouncing her name

 5    correctly, actually.

 6              The response with respect to those is exactly the

 7    same with respect to Dr. Klin.  You know, they work in tandem

 8    extremely closely and have worked together for a long time.

 9              With respect to the actual assessments that involve

10    questionnaires, the -- my understanding of the procedure is

11    that -- and the exploration of this -- and if I were

12    cross-examining the expert, it would simply be, I have the

13    questionnaire.  It's not as though Mr. Brenner cannot get the

14    actual forms that were used with respect to it, and he can ask

15    questions about the very specifics.  But Dr. -- Drs. Klin and

16    Saulnier do not keep the results of those.

17              And, again, there is strong temptation on my part to

18    go into the why's, but I don't think that's for me to attest

19    to.  I think on Tuesday, Mr. Brenner will know exactly what

20    was done, exactly what was -- how it was done, and that will

21    be very insightful and very helpful for Mr. Brenner.  But the

22    argument that is essentially being made, that any expert can

23    prepare information and not -- and because draft reports are

24    not kept, or the methodology that's used the notes are not

25    kept, somehow the expert is, like, getting away with an
```

1   opinion doesn't make any sense.

2          An opinion has to be substantiated.  It has to be --

3   it has to be something that, in fact, an expert can support.

4   And without even cross-examining Dr. Klin, to suggest that --

5   to just summarily reach the conclusion that because the draft

6   reports are not available, that somehow everything that he's

7   put in his 17-page report, with the experience that a doctor

8   like this has in autism, somehow renders that report

9   indefensible I don't think is a fair conclusion to make.

10          THE COURT:  Well, thank you.

11          All right.

12          MR. BRENNER:  Your Honor, so may I be heard only

13   briefly?

14          THE COURT:  Sure.

15          MR. BRENNER:  Just because I want to make sure

16   you're -- I'd like to be heard just very briefly, maybe three

17   minutes.

18          THE COURT:  Yes.

19          MR. BRENNER:  Your Honor?

20          Oh, I'm sorry.  Can I -- yeah.

21          So, Judge, just again, I've made my arguments;

22   Ms. McGovern's made her arguments.

23          There's no dispute here about what the law is, okay,

24   which is really the only thing -- yes, you're supposed to

25   listen to lawyer arguments, and we may be able to persuade

1    you, but the law is what the law is, and this -- this argument

2    has been trotted out before, this is not novel, which is

3    everything the expert relied on~-- and by the way, this living

4    document thing is not from Dr. Klin.  I don't see that in the

5    report, but it doesn't matter.  And I don't care what Dr. Klin

6    does in his practice.  I care what Dr. Klin, what he does when

7    he's -- when he's participating in a case where he's subject

8    to Rule 26 disclosures.  And the law is as I cited you, and

9    they have not given you any law before today or today that's

10   anything different.

11          The data he relies upon, which is the interviews,

12   which he took, I assume, copious notes on, and Dr. Saulnier

13   took copious notes on, because they had to share them with

14   each other, and the assessments they run, which we have cases

15   directly on point, they're just not draft reports.

16          And my suspicion is that my colleagues, when they

17   got my e-mail asking for the stuff, they reached out to the

18   doctor and learned that the doctor didn't have any, and that's

19   a problem, that they perceived a problem, and that's where we

20   got this draft report legal argument.  And I don't blame them

21   for making a legal argument.  I don't know what else they're

22   supposed to do at this point.

23          But the fact that he doesn't have them, Judge, is

24   not like, well, then we need to excuse it because he threw

25   them away.  That's not what the law is.  The law is are these

 1   draft reports, and the answer is they're not.  They're not
 2   under any -- there's no case law that will tell you they are,
 3   none cited by the defendant, and I've looked for a lot the
 4   last couple days.  And they just have to be subject -- they're
 5   subject to production.  And if they can't produce them, then
 6   we'll examine why that happened, and the chips will fall where
 7   they may.  I don't know where the chips will fall.  Maybe
 8   there will be no chips.  But all that's before you today is
 9   whether they are draft reports, and they are not draft
10   reports.
11            THE COURT:  Thank you very much, Mr. Brenner.
12            All right.  So let me rule.
13            Let me first start out by talking about what I'm not
14   ruling on.  Okay?  Because these issues, these topics have
15   kind of floated up and down in this hearing, and I want to
16   make very clear on the record what I'm not ruling on.
17            Okay.  I'm not ruling on any issue relating to the
18   timeliness of the expert reports or expert disclosures.  No
19   one has raised that.  I'm not ruling on whether anything was
20   done on time, not on time.  No position on that.
21            I am not ruling on any of the Daubert issues that
22   may apply to this expert, including methodology, relevance or
23   other issues relating to admissibility.  That will be for
24   Judge Bloom to resolve as the trial judge, unless she refers
25   it to me.  But that's not before me today, and I'm not ruling

```
1    that.  That has not been briefed.  That has not been raised.

2           Also, I am making no finding regarding any concept

3    of spoliation, failure to preserve, anything like that.  If

4    that issue comes before me I'll rule on it.  It's not before

5    me today, and I'm -- you know, if things used to exist and

6    don't exist anymore, there may be all kinds of reasons

7    that's -- there's no remedy for that, and that's fine.  We'll

8    deal with that if and when that ever comes up.  So I'm not --

9    any findings I make today are not to be interpreted as making

10   any -- having any view on timeliness, Daubert, relevance,

11   admissibility, methodology or spoliation.

12          So that's my first comment.

13          Second thing is I tell you I found the doctor's

14   report to be very interesting.  I think it's a very -- raises

15   a very interesting topic.  Very interesting.  It's a very

16   thorough report in that regard.  But I do find that the cases

17   cited by the plaintiff are persuasive here and that this is

18   not -- there are no draft -- there are not draft reports, at

19   least that I'm satisfied have been shown to exist here.

20          As I understand what happens, you know, the first

21   doctor meets with Dr. Wright, administers some testing.

22   There's some analysis.  There's some analytics done by that

23   doctor.  That doctor may take some notes, may write up some

24   notes.  Meets with the second doctor, they confer, they may

25   share their notes, they may share their findings, they may
```

1   make joint notes.  Ultimately, the second doctor writes a

2   report, and that report is the final report that is then sent

3   out to the other side.

4          This is a methodology with which I am actually very

5   familiar, because it is exactly the methodology that I use

6   when I write orders.  I get pleadings from lawyers; they raise

7   a legal issue.  I say to my law clerks, read the briefs, do

8   some research, then let's talk about it.  And they do, and I

9   do.  We read the briefs, we make notes on the briefs, we do

10  research, we print cases out, we take notes.  Then we talk,

11  and we may talk about how the legal issues might be resolved.

12         And then ultimately after all of that conversation

13  and all of that analysis and that full methodology plays its

14  way out, then we put pen to paper and we draft an order.  And

15  there may be some renovat -- revisions to that.  That would

16  certainly be a draft.  But that's not what I'm hearing is the

17  issue with this, with Dr. Klin.  It's not that he did a draft

18  of what -- it was pretty close to what ultimately went out

19  and, you know, had to fix some typos, rearrange some

20  paragraphs, maybe change an opinion here or there.  That's not

21  what I'm hearing.

22         So I'm very comfortable with this, understanding how

23  this process would have worked, and in my view, that process

24  simply does not result in -- the taking of notes by these

25  doctors, the conversation between them, the analysis of the

 1   underlying raw data is simply not a report in my view.  And I

 2   agree with Mr. Brenner, it doesn't fall within the draft

 3   report exception to Rule 26.

 4            So I would order it to be produced.

 5            Now, if it doesn't exist, it doesn't exist, and then

 6   I'll be back.  But if it exists, I order it to be produced.

 7            When is the doctor's deposition, Mr. Brenner?

 8            MR. BRENNER:  Tuesday.

 9            MS. McGOVERN:  Tuesday.

10            MR. BRENNER:  So my only request, is if Ms.

11   McGovern, you know, even on this record or wants to

12   double-check and sends me something tonight saying they don't

13   exist, I could go forward on Tuesday.  If they exist, I would

14   need them obviously by the latest tomorrow to go forward on

15   Tuesday.  But if they don't exist, I don't need to delay the

16   deposition because I'm not (inaudible).

17            THE COURT:  Well, I don't want to make Ms. McGovern

18   make any representations on the record at this time --

19            MR. BRENNER:  Neither do I.

20            THE COURT:  -- without having to double-check with

21   the people she needs to check with.

22            You know, if there are things to be produced, I

23   would order them to be produced -- let's see.  I know

24   Mr. Freedman, you have issues on Saturdays.  Mr. Brenner,

25   Ms. McGovern, are there going to be any issues with it being a

```
 1   Saturday if I require work to be done this evening or
 2   tomorrow?
 3           MS. McGOVERN:  Not for me, Your Honor.
 4           MR. BRENNER:  Not for me either, Judge.
 5           THE COURT:  Okay.  Then if -- if there -- if there
 6   is something to be produced, I would order it to be produced
 7   by 2:00 o'clock tomorrow to Mr. Brenner, and if there's
 8   nothing to be produced, Ms. McGovern, as you have throughout
 9   these proceedings, you will do the professional thing, and
10   you'll just let Mr. Brenner know that.  So I have no problem
11   with that.
12           MS. McGOVERN:  Of course.  Of course, Your Honor.
13           THE COURT:  Yeah, I understand.  Yeah, no problem.
14           First of all, let me also say, extremely well argued
15   today, counsel.  Your arguments were very helpful.  The
16   briefing was helpful.  It's a fascinating issue.  But that
17   will be my ruling for today.  And, again, the defense -- I
18   will note that Dr. Wright objects that that rule.  That
19   objection will be preserved in the record, and if he wants to
20   seek any review of my ruling, he may do so.
21           With that, let me turn, then, to Mr. Brenner.  Have
22   I now at least addressed every issue you wanted to raise
23   today, not waiving any objections you may have to the rulings
24   that I've made?
25           MR. BRENNER:  Yes, Your Honor.
```

```
 1              THE COURT:  And Ms. McGovern, without waiving any
 2    objections you may have, have I at least addressed all the
 3    issues that you wanted to raise this afternoon?
 4              MS. McGOVERN:  Yes, Your Honor.
 5              THE COURT:  All right.  Are there any other issues?
 6    As long as we're together, anything else that we should take
 7    up that we can help to facilitate moving the case forward at
 8    this time?
 9              Mr. Brenner?
10              MR. BRENNER:  I don't think so.  I think we both
11    have a busy two weeks ahead of us, and we're all working
12    pretty hard to get it done.
13              THE COURT:  I know you all are.
14              All right.  Then I'll let you go.  Have a good
15    weekend, everybody.  Wash your hands, stay safe, and we'll be
16    in recess on this matter.
17              MS. McGOVERN:  Thank you, Judge.
18              MR. BRENNER:  Thank you, Judge.  Bye-bye.
19              MR. FREEDMAN:  Thank you, Judge.
20          (Proceedings concluded.)
21                       *  *  *  *  *
22
23
24
25
```

```
1                      * * * * *

2                    I N D E X

3   Telephonic Discovery Hearing                    3

4                      * * * * *

5                E X H I B I T S

6   (None.)

7                      * * * * *

8                    CERTIFICATE

9       I, Stephen W. Franklin, Registered Merit Reporter, and

10  Certified Realtime Reporter, certify that the foregoing is a

11  correct transcript, to the best of my ability, from the

12  DIGITAL AUDIO RECORDING of proceedings in the above-entitled

13  matter.

14      Dated this 21st day of APRIL, 2020.

15

16      /s/Stephen W. Franklin
        _____
17      Stephen W. Franklin, RMR, CRR

18

19

20

21

22

23

24

25
```

**MR. BRENNER: [35]**
3/8 4/15 5/22 7/14 11/1
11/4 11/7 12/2 15/20
15/24 16/12 16/22 18/11
28/1 28/5 28/17 29/9
31/3 31/11 31/16 32/5
32/9 32/24 33/4 33/8
40/12 40/15 40/19 45/8
45/10 45/19 46/4 46/25
47/10 47/19

**MR. FREEDMAN: [5]**
3/6 4/18 11/24 16/15
47/19

**MS. McGOVERN: [24]**
3/12 4/6 4/9 4/19 4/25
5/2 5/6 5/13 5/18 7/6
7/11 12/8 14/13 16/17
33/13 34/16 38/16 38/25
39/2 45/9 46/3 46/12
47/4 47/17

**THE COURT: [58]**

**-**

**-and [1]** 2/4
**-v [1]** 1/5

**/**

**/s/Stephen [1]** 48/16

**1**

**100 [1]** 2/6
**1000 [1]** 2/9
**10th [2]** 17/6 19/15
**1121920 [1]** 23/21
**12589147 [1]** 26/4
**12th [1]** 19/16
**17 [2]** 1/8 34/16
**17-page [1]** 40/7
**18-80176 [1]** 3/3
**18-80176-CIV-BB [1]**
1/2

**2**

**200 [1]** 2/3
**2010 [1]** 25/15
**2014 [2]** 23/21 26/4
**2016 [1]** 25/12
**2019 [1]** 17/19
**2020 [2]** 1/8 48/14
**21st [1]** 48/14
**2525 [1]** 2/9
**26 [15]** 10/20 12/23
18/14 19/11 20/11 27/21
28/4 29/14 31/22 34/22
34/24 35/3 35/21 41/8
45/3
**2800 [1]** 2/6
**2:00 o'clock [1]** 46/7
**2nd [1]** 2/6

**3**

**33131 [2]** 2/4 2/7
**33134 [1]** 2/10
**33401 [1]** 1/18
**3768 [1]** 1/17

**3rd [1]** 19/15

**4**

**447785 [1]** 25/16

**5**

**514-3768 [1]** 1/17
**5500 [1]** 2/3
**561 [1]** 1/17

**6**

**6427883 [1]** 25/12

**7**

**701 [1]** 1/18

**8**

**80176 [1]** 3/3

**A**

**ability [2]** 26/23 48/11
**able [9]** 4/13 4/15 4/17
5/10 16/10 20/19 29/23
37/15 40/25
**above [2]** 24/12 48/12
**above-entitled [1]** 48/12
**accept [2]** 17/12 21/21
**access [1]** 22/19
**accordingly [1]** 9/9
**accurately [1]** 11/24
**acknowledges [1]** 9/9
**actual [6]** 13/25 17/11
26/11 27/19 39/9 39/14
**actually [12]** 7/16 11/5
11/15 11/18 12/8 12/18
15/22 30/17 37/4 37/11
39/5 44/4
**add [1]** 34/7
**added [1]** 34/7
**addition [1]** 34/13
**additional [1]** 14/8
**address [2]** 3/23 33/14
**addressed [3]** 26/18
46/22 47/2
**adequately [2]** 28/8
28/14
**administered [1]** 38/19
**administers [1]** 43/21
**admissibility [2]** 42/23
43/11
**admissible [2]** 18/17
35/16
**advisory [8]** 20/8 20/9
20/11 20/22 22/22 23/2
23/25 24/3
**affidavit [1]** 7/22
**affidavits [1]** 6/5
**after [2]** 13/9 44/12
**afternoon [9]** 3/2 3/6 3/8
3/10 3/12 3/14 17/22
33/13 47/3
**again [19]** 3/17 4/10 8/2
9/19 10/11 10/25 14/3
14/8 14/17 23/25 25/13
33/19 37/14 37/14 38/4
38/18 39/17 40/21 46/17
**against [2]** 20/24 26/25

**age [1]** 20/12
**agree [5]** 6/7 18/16 25/2
29/13 45/2
**agreements [1]** 20/18
**Ah [2]** 5/7 5/13
**ahead [3]** 4/24 33/7
47/11
**AL [1]** 1/3
**allow [4]** 7/4 12/5 16/20
31/12
**allowed [3]** 6/25 18/20
20/15
**alone [1]** 34/17
**along [1]** 8/6
**already [5]** 7/9 7/9
23/15 27/4 30/17
**also [6]** 11/9 26/2 33/25
36/14 43/2 46/14
**alternative [2]** 31/25
31/25
**although [1]** 17/20
**am [16]** 8/12 8/12 8/13
8/25 9/1 9/3 9/19 9/20
9/24 18/8 29/11 32/8
34/2 42/21 43/2 44/4
**Amanda [3]** 2/8 3/13 5/6
**amended [1]** 31/23
**Ami [1]** 12/11
**among [1]** 14/11
**analy [1]** 35/1
**analyses [1]** 13/1
**analysis [12]** 10/13
10/15 14/19 15/4 15/5
24/9 34/25 38/10 38/21
43/22 44/13 44/25
**analytics [1]** 43/22
**Andrew [2]** 2/5 3/8
**Ang [1]** 19/17
**another [2]** 13/15 36/23
**answer [6]** 19/20 27/21
29/11 32/25 36/25 42/1
**answered [2]** 11/19 31/8
**answers [1]** 14/1
**anticipation [2]** 8/17
8/21
**any [33]** 7/4 7/13 7/20
8/13 8/14 8/18 11/17
13/4 13/4 14/11 21/15
22/9 23/3 24/4 35/15
37/24 39/22 40/1 41/9
41/12 42/12 42/17 42/21
43/2 43/9 43/10 43/10
45/18 45/25 46/20 46/23
47/1 47/5
**anybody [1]** 4/20
**anymore [1]** 43/6
**anyone [2]** 9/7 23/6
**anything [10]** 7/4 7/8
9/21 27/11 38/5 38/23
41/10 42/19 43/3 47/6
**anywhere [1]** 23/10
**aol.com [1]** 1/19
**apart [2]** 15/4 24/6
**apologize [3]** 4/6 4/11
5/2
**apparently [2]** 18/4

21/19
**appeals [1]** 10/4
**appearances [3]** 1/14
1/21 3/4
**appears [1]** 18/4
**applies [1]** 8/14
**apply [1]** 42/22
**appreciate [5]** 6/10 6/11
6/11 12/1 33/10
**appropriate [3]** 6/7
35/15 37/17
**April [7]** 1/8 17/6 17/18
19/15 19/15 19/16 48/14
**April 10th [2]** 17/6
19/15
**April 12th [1]** 19/16
**April 3rd [1]** 19/15
**area [1]** 34/4
**argue [2]** 8/9 11/2
**argued [3]** 7/9 10/7
46/14
**arguing [1]** 11/7
**argument [12]** 7/13
11/12 12/21 17/7 20/5
33/16 34/22 36/22 39/22
41/1 41/20 41/21
**arguments [6]** 17/4
33/17 40/21 40/22 40/25
46/15
**arrived [1]** 24/9
**art [1]** 25/22
**articulated [1]** 21/7
**aside [3]** 17/24 32/13
32/15
**ask [4]** 3/17 13/22 27/24
39/14
**asked [4]** 6/22 25/3
36/24 37/3
**asking [3]** 39/12 32/20
41/17
**aspect [1]** 25/18
**assessment [8]** 12/13
14/1 14/22 19/17 32/18
35/1 35/7 37/8
**assessments [13]** 11/15
15/14 19/13 19/13 21/6
22/12 22/13 22/14 22/15
27/20 36/3 39/9 41/14
**assume [2]** 21/20 25/21
41/12
**assuming [3]** 7/2 15/2
23/9
**assumption [1]** 15/3
**attach [3]** 8/23 32/16
32/17
**attached [3]** 9/25 32/16
34/25
**attack [1]** 37/15
**attacking [1]** 35/15
**attest [1]** 39/18
**attorney [2]** 24/6 24/15
**attorneys [2]** 21/1 26/6
**atypicality [1]** 37/2
**AUDIO [1]** 48/12
**author [1]** 10/17
**authoring [1]** 10/18

**autism [2]** 33/24 40/8
**available [1]** 40/6
**away [2]** 39/25 41/25

**B**

**back [14]** 4/10 4/22 4/25
5/3 5/5 5/8 8/1 15/18
16/23 20/20 33/12 33/14
38/3 45/6
**backdrop [1]** 19/25
**background [1]** 16/3
**backup [1]** 17/1
**based [4]** 9/22 14/5 18/2
35/9
**bases [5]** 18/3 18/18
19/8 36/16 36/17
**basically [1]** 24/1
**basing [1]** 22/6
**basis [8]** 9/11 12/25
18/19 19/7 20/4 22/6
35/19 37/25
**BB [1]** 1/2
**Beach [2]** 1/7 1/18
**became [2]** 15/14 26/22
**because [36]** 4/20 5/23
6/8 9/25 13/8 13/10
14/25 15/6 16/3 19/15
20/15 20/16 20/18 21/12
21/13 22/19 23/9 23/23
24/12 25/24 27/8 28/8
28/20 29/23 30/10 34/5
36/11 37/5 39/23 40/5
40/15 41/13 41/24 42/14
44/5 45/16
**become [2]** 10/20 15/1
**before [18]** 1/11 3/15
3/19 5/10 11/1 17/19
18/16 18/18 27/1 27/18
35/4 38/4 41/2 41/9 42/8
42/25 43/4 43/4
**beginning [1]** 33/15
**being [10]** 7/20 13/18
13/19 14/14 16/25 29/10
35/7 36/22 39/22 45/25
**believe [15]** 12/8 12/15
14/13 14/16 15/12 17/10
17/18 29/13 36/23 37/16
37/23 38/5 38/10 38/11
39/2
**best [3]** 25/21 29/2
48/11
**between [6]** 23/8 24/13
26/5 36/19 37/10 44/25
**Biscayne [1]** 2/3
**bit [2]** 16/23 29/9
**blame [1]** 41/20
**blanche [1]** 27/10
**blanking [1]** 18/8
**blend [1]** 34/21
**Bloom [2]** 27/17 42/24
**blue [2]** 34/9 34/9
**body [2]** 22/10 26/14
**Boies [1]** 2/5
**both [12]** 8/20 14/19
17/23 22/1 25/7 25/8
27/3 27/5 32/8 32/9 34/1

**B**

**both... [1]** 47/10
**Boulevard [2]** 2/3 2/9
**breadth [1]** 24/1
**breaking [1]** 13/23
**Brenner [36]** 2/5 3/9
3/10 4/13 5/19 6/12 7/12
7/15 12/1 13/23 15/17
15/19 15/23 16/2 16/10
16/20 27/2 27/23 27/24
33/15 35/16 36/8 36/9
37/15 37/24 39/13 39/19
39/21 42/11 45/2 45/7
45/24 46/7 46/10 46/21
47/9
**brief [3]** 26/2 26/3 30/20
**briefed [1]** 43/1
**briefing [1]** 46/16
**briefly [5]** 7/14 7/14
23/20 40/13 40/16
**briefs [3]** 44/7 44/9 44/9
**British [1]** 7/23 8/1
**broad [1]** 13/25
**broken [1]** 14/23
**brought [1]** 31/14
**BRUCE [1]** 1/11
**bulk [1]** 12/17
**bunch [1]** 19/20
**burden [1]** 35/14
**busy [1]** 47/11
**bye [4]** 5/4 5/4 47/18
47/18
**Bye-bye [2]** 5/4 47/18

**C**

**called [1]** 25/21
**calls [1]** 23/11
**camera [4]** 3/25 5/25
13/18 24/22
**can't [11]** 4/20 14/3 19/4
19/9 19/23 19/23 23/23
27/11 29/24 30/14 42/5
**cannot [1]** 39/13
**capability [1]** 15/25
**captured [1]** 11/5
**care [2]** 41/5 41/6
**careful [1]** 29/11
**carte [1]** 27/9
**carve [1]** 22/23
**carve-out [1]** 22/23
**case [37]** 1/2 3/3 8/21
9/4 9/6 9/8 9/10 9/21
10/17 12/12 12/19 13/3
15/12 17/8 23/19 23/21
24/25 25/1 25/7 25/15
25/15 26/1 26/3 26/8
26/8 26/19 26/20 29/15
29/16 33/22 34/6 35/24
36/7 36/11 41/7 42/2
47/7
**cases [7]** 25/7 25/8 30/21
30/22 41/14 43/16 44/10
**categories [3]** 13/24
14/12 14/17
**category [2]** 24/18 30/3
**caught [1]** 4/7

**Celine [1]** 39/4
**Center [1]** 33/24
**certain [1]** 27/1 36/1
**certainly [5]** 4/10 35/3
35/12 37/12 44/16
**CERTIFICATE [1]**
48/8
**Certified [1]** 48/10
**certify [1]** 48/10
**cetera [1]** 10/15
**challenge [2]** 29/3 29/7
**chance [3]** 4/2 5/11 10/9
**change [1]** 44/20
**chats [1]** 21/24
**check [5]** 4/12 19/23
45/12 45/20 45/21
**chips [3]** 42/6 42/7 42/8
**circumstances [3]** 13/6
13/11 35/10
**citation [1]** 25/12
**cite [3]** 23/20 25/15 26/2
**cited [9]** 17/3 23/19 24/3
24/25 26/2 26/3 41/8
42/3 43/17
**cites [2]** 23/25 26/8
**CIV [1]** 1/2
**Civil [1]** 35/21
**claim [2]** 24/7 37/24
**claimed [1]** 25/24
**claiming [2]** 31/6 31/19
**clarified [1]** 6/2
**clarify [2]** 29/8 32/10
**clarifying [1]** 33/11
**clear [10]** 5/23 6/16 8/12
9/12 9/19 20/23 34/2
34/12 36/9 42/16
**clearly [1]** 38/19
**Clematis [1]** 1/18
**clerks [1]** 44/7
**clinical [1]** 17/10
**clinician [4]** 13/11 15/10
17/10 36/11
**clinician's [1]** 25/21
**clinicians [1]** 34/1
**close [2]** 26/17 44/18
**closely [1]** 39/8
**collaboratively [1]** 15/6
**colleague [5]** 10/14
12/18 18/5 18/19 33/24
**colleague's [2]** 10/14
10/22
**colleagues [1]** 41/16
**comes [2]** 43/4 43/8
**comfortable [1]** 44/22
**comment [1]** 43/12
**comments [2]** 15/18
21/7
**committee [8]** 20/9 20/9
20/11 20/23 22/22 23/2
24/1 24/3
**communicate [3]** 20/15
20/19 20/20
**communications [4]**
23/5 23/8 24/13 26/5
**compelling [1]** 32/25
**compilation [1]** 13/1

**compiles [1]** 12/13
**complaining [1]** 31/19
**complete [2]** 12/23
35/18
**completely [1]** 15/11
**COMPUTER [1]** 16/7
**concept [1]** 43/2
**concerning [1]** 26/11
**concluded [1]** 47/20
**conclusion [4]** 28/22
34/20 40/5 40/9
**conclusions [6]** 14/5
22/19 24/9 36/15 36/16
38/1
**concurrent [3]** 32/1 32/2
32/2
**confer [1]** 43/24
**conference [1]** 18/5
**conferring [1]** 13/10
**confident [1]** 34/2
**confidential [2]** 9/14
10/1
**confidentiality [2]** 9/9
17/9
**conform [2]** 28/8 31/21
**confusion [2]** 5/24 38/5
**connection [3]** 4/9 36/19
37/6
**consensus [2]** 25/22 26/5
**consider [1]** 18/23
**considered [5]** 14/25
28/15 34/1 34/20 35/20
**considers [3]** 13/20
35/11 35/11
**consultation [1]** 19/14
**contain [2]** 24/19 31/20
**contemplated [1]** 27/21
**contemplates [1]** 29/25
**continue [1]** 16/21
**contrary [1]** 35/13
**conversation [2]** 44/12
44/25
**conversations [1]** 23/8
**copious [2]** 41/12 41/13
**Coral [1]** 2/10
**corn [1]** 32/12
**corners [4]** 31/20 32/11
32/18 32/19
**correct [4]** 6/18 7/3 7/6
48/11
**correction [1]** 7/18
**correctly [5]** 7/2 12/9
16/9 31/4 39/5
**counsel [22]** 3/5 3/7 3/9
3/11 3/13 6/21 7/23 8/1
8/20 9/4 9/7 9/15 9/20
9/20 10/1 22/4 23/6 23/9
23/10 24/14 24/14 46/15
**couple [3]** 33/15 34/17
42/4
**course [5]** 6/19 21/2
22/5 46/12 46/12
**court [15]** 1/1 1/17 3/1
3/19 17/17 18/17 19/19
22/20 22/21 22/21 23/25
24/5 24/22 26/15 30/24

**courts [5]** 17/4 17/11
20/7 20/17 26/18
**CPE [1]** 1/17
**CRAIG [2]** 1/6 3/4
**created [4]** 8/17 8/21
9/16 17/15
**critical [1]** 33/21
**cross [6]** 13/7 18/23
18/24 35/13 39/12 40/4
**cross-examination [2]**
13/7 35/13
**cross-examine [1]** 18/24
**cross-examiner [1]**
18/23
**cross-examining [2]**
39/12 40/4
**CRR [2]** 1/17 48/17
**cumulative [1]** 31/25
**currently [1]** 8/19
**cursory [1]** 13/17
**Cyrulnik [1]** 2/2

**D**

**dance [1]** 20/14
**data [16]** 13/25 14/6
14/15 19/24 21/3 25/10
26/20 26/21 28/9 28/15
29/5 29/6 32/3 35/19
41/11 45/1
**Dated [1]** 48/14
**Daubert [5]** 32/14 36/21
36/21 42/21 43/10
**Daubert-like [1]** 36/21
**Daubert-related [1]**
36/21
**days [1]** 42/4
**de [1]** 2/9
**deadline [1]** 17/6
**deal [4]** 25/8 33/1 33/2
43/8
**dealing [4]** 7/25 32/7
32/8 32/9
**dealt [4]** 23/14 23/15
25/6 25/25
**decent [1]** 18/23
**defendant [7]** 1/7 2/8
17/1 17/7 25/1 30/4 42/3
**defendant's [1]** 30/13
**defense [8]** 3/11 3/13
7/13 11/21 12/10 19/21
23/23 46/17
**defense's [2]** 6/23 10/21
**delay [2]** 38/4 45/15
**delete [1]** 6/4
**deleted [1]** 6/3
**demonstrate [1]** 13/19
**demonstrates [1]** 37/11
**depending [1]** 31/18
**depose [2]** 27/14
**deposed [2]** 6/19 13/5
**deposition [15]** 7/19
7/21 8/6 17/18 17/18
17/21 22/21 26/15 30/7
30/9 34/2 34/3 38/6 45/7
45/16
**deposition's [1]** 19/6

**depositions [1]** 6/20
**describe [1]** 28/14
**described [1]** 24/23
**destroy [1]** 27/10
**destroyed [1]** 27/15
**destroys [1]** 19/22
**detail [2]** 11/12 37/22
**detailed [1]** 34/16
**details [3]** 12/22 17/8
31/23
**determines [1]** 38/7
**diagnosis [3]** 18/1 25/21
25/22
**didn't [5]** 19/3 27/8 31/8
33/7 41/18
**difference [2]** 29/10
37/10
**different [3]** 28/19 29/4
41/10
**DIGITAL [1]** 48/12
**direct [1]** 11/22
**directly [1]** 41/15
**director [1]** 33/23
**discern [1]** 28/6
**disclose [2]** 30/2 30/16
**disclosed [5]** 9/7 9/18
18/15 33/21 34/8
**disclosing [1]** 30/3
**disclosure [7]** 6/3 6/25
9/3 17/6 24/6 24/21
25/14
**disclosures [2]** 41/8
42/18
**discounted [1]** 37/20
**discoverable [6]** 10/20
10/24 20/16 25/2 25/3
25/5
**discovering [1]** 24/10
**discovery [12]** 1/10 3/20
3/21 3/22 12/16 22/3
23/4 24/2 24/21 26/7
28/20 48/3
**discovery's [1]** 24/2
**discuss [2]** 22/7 38/3
**discussed [1]** 34/22
**discusses [1]** 24/5
**dispute [5]** 30/9 30/12
30/20 31/5 40/23
**distinction [3]** 14/11
29/10 35/4
**DISTRICT [2]** 1/1 1/1
**divided [1]** 14/16
**doc [2]** 11/9 15/3
**doctor [20]** 10/12 11/9
18/15 19/17 19/22 19/22
19/23 20/2 28/21 29/1
34/18 38/17 40/7 41/18
41/18 43/21 43/23 43/23
43/24 44/1
**doctor's [3]** 38/21 43/13
45/7
**doctors [1]** 44/25
**document [2]** 36/6 41/4
**documents [4]** 13/8
13/19 14/14 28/25
**does [13]** 8/18 13/2 13/3

**D**

does... [10] 13/20 26/23 28/8 28/14 31/20 31/21 38/8 41/6 41/6 44/24
doesn't [19] 6/12 15/1 21/20 22/9 27/8 28/8 29/21 30/17 34/24 35/6 35/17 37/16 38/8 40/1 41/5 41/23 45/2 45/5 45/5
doing [3] 7/16 17/25 32/24
don't [54]
Donald [1] 18/7
done [17] 9/21 10/13 11/18 16/9 21/17 25/19 25/19 33/8 34/5 37/17 38/19 39/20 39/20 42/20 43/22 46/1 47/12
double [3] 4/12 45/12 45/20
double-check [3] 4/12 45/12 45/20
doubt [2] 19/8 21/14
down [4] 13/24 14/23 33/17 42/15
Dr [33] 9/20 11/10 21/24 22/2 22/8 22/8 22/10 22/11 25/4 25/19 25/20 25/23 25/23 25/24 25/24 27/14 27/19 27/19 33/23 33/25 36/2 38/6 38/11 38/22 38/23 39/7 39/15 40/4 41/4 41/5 41/6 41/12 44/17
Dr. [41] 3/4 3/13 6/18 6/21 8/20 9/8 9/21 10/4 10/15 11/11 11/12 11/13 11/20 12/11 15/5 17/12 17/17 18/3 18/5 18/6 18/25 18/25 19/2 21/11 21/16 21/16 21/17 21/17 21/23 21/23 22/4 22/4 22/9 22/20 23/9 32/17 36/8 37/6 39/4 43/21 46/18
Dr. Ami [1] 12/11
Dr. Brenner [1] 36/8
Dr. Celine [1] 39/4
Dr. Craig [1] 3/4
Dr. Klin [8] 18/3 18/25 21/16 21/16 21/23 22/4 23/9 32/17
Dr. Klin's [4] 11/11 11/12 15/5 22/9
Dr. Lin [1] 10/15
Dr. Saulnier [3] 11/20 21/11 21/17
Dr. Saulnier's [1] 11/13
Dr. Wright [16] 3/13 6/21 8/20 9/8 9/21 10/4 17/12 18/5 18/25 19/2 21/17 21/23 22/4 37/6 43/21 46/18
Dr. Wright's [4] 6/18 17/17 18/6 22/20
draft [53]
drafting [1] 24/12
drafts [4] 13/21 24/11 26/11 35/7
Drs. [1] 39/15
Drs. Klin [1] 39/15
due [1] 4/9
during [1] 6/19 14/9 35/1

**E**

e-mail [2] 1/19 41/17
each [4] 21/18 21/25 31/10 41/14
earlier [1] 18/7
early [2] 8/1 8/4
Ecuador [1] 26/8
education [1] 34/19
either [3] 21/7 27/17 46/4
else [3] 23/6 41/21 47/6
email [1] 6/9
emphatically [1] 25/9
employed [1] 37/21
end [5] 4/14 17/2 24/20 26/7 34/22
enforced [1] 29/14
engaged [1] 8/19
enough [1] 32/7
entails [1] 24/13
entire [2] 18/1 26/14
entitled [2] 11/9 48/12
environments [1] 20/13
escaping [1] 7/23
ESQ [3] 2/2 2/5 2/8
essence [2] 10/21 10/22
essentially [4] 17/9 24/24 27/4 39/22
et [2] 1/3 10/15
et cetera [1] 10/15
evaluated [1] 14/5
evaluation [4] 10/13 10/14 14/5 37/8
evaluations [1] 15/14
even [5] 23/11 25/19 25/23 40/4 45/11
evening [1] 46/1
ever [2] 9/25 43/8
every [7] 4/7 5/3 12/12 17/3 30/1 34/19 46/22
everybody [2] 16/1 47/15
everyone [2] 3/2 29/20
everything [11] 4/4 4/23 5/15 5/17 5/20 11/21 22/15 27/16 38/18 40/6 41/3
evidence [5] 31/22 35/14 35/16 37/4 37/5
evidentiary [2] 7/1 17/22
ex [1] 20/10
exact [1] 8/5
exactly [9] 26/1 37/24 37/25 38/6 39/3 39/6 39/19 39/20 44/5

**F**

face [3] 20/5 22/10 31/20
facilitate [1] 47/7
fact [10] 12/17 12/21 17/11 19/14 30/14 35/6 37/13 37/17 40/3 41/23

examination [3] 13/7 14/18 35/13
examine [2] 18/24 42/6
examined [1] 36/18
examiner [1] 18/23
examining [2] 39/12 40/4
example [10] 15/2 19/18 21/13 23/2 24/1 29/15 30/1 30/6 30/22 32/16
Excellence [1] 33/24
exception [4] 20/10 20/22 23/17 45/3
exchange [1] 22/7
exclusive [1] 32/14
excuse [2] 30/4 41/24
exempted [1] 23/4
exhibits [1] 32/19
exist [14] 19/14 27/5 27/8 28/25 28/25 38/24 43/5 43/6 43/19 45/5 45/5 45/13 45/13 45/15
existed [1] 9/22
exists [1] 45/6
expand [1] 23/16
expect [1] 34/18
experience [2] 34/19 40/7
expert [45] 10/8 10/9 10/12 10/16 10/18 10/20 13/12 13/20 14/18 14/20 17/6 20/4 20/20 21/2 22/3 23/5 23/22 24/9 24/10 24/13 24/17 26/6 26/10 26/14 27/20 28/10 29/16 29/17 29/19 33/21 34/4 36/20 36/23 37/4 37/6 38/11 39/12 39/22 39/25 40/5 41/3 42/18 42/18 42/22
expert's [13] 14/4 14/7 19/9 21/3 22/24 22/25 22/25 23/2 24/3 25/10 28/14 35/5 37/19
experts [7] 20/16 24/2 26/5 26/6 26/20 28/12 34/7
explain [1] 8/25
exploration [1] 39/11
explore [1] 37/18
express [2] 12/24 35/18
expressed [1] 23/7
extensive [3] 13/7 13/17 15/8
extent [1] 23/12
extreme [1] 21/13
extremely [3] 37/3 39/8 46/14

facts [8] 19/2 24/19 24/19 28/9 28/15 29/5 29/6 35/19
factual [8] 7/19 8/8 12/15 18/3 21/3 21/8 24/20 26/21
failure [1] 43/3
fair [3] 34/21 34/23 40/9
fairness [1] 11/4
fall [4] 24/18 42/6 42/7 45/2
familiar [1] 44/5
far [1] 33/16
fascinating [1] 46/16
feat [1] 16/5
Federal [1] 35/21
feedback [1] 24/14
feel [1] 7/3
feelings [1] 38/21
field [3] 13/13 14/21 37/8
filled [1] 19/18
fills [1] 19/21
final [15] 11/16 13/2 13/14 13/14 14/9 14/25 15/18 22/16 35/9 35/9 36/4 36/4 36/12 38/7 44/2
finally [1] 20/16
finders [1] 17/11
finding [1] 9/20 9/24 24/8 43/2
findings [2] 43/9 43/25
fine [5] 5/1 29/5 32/13 32/13 43/7
Finish [1] 33/6
first [14] 3/23 8/11 9/25 10/25 12/6 17/16 20/8 33/17 34/8 38/21 42/13 43/12 43/20 46/14
five [2] 24/5 38/7
fix [1] 44/19
FL [3] 2/4 2/7 2/10
Flexner [1] 2/5
floated [1] 42/15
FLORIDA [4] 1/1 1/7 1/18 8/19
folks [1] 11/19
follows [1] 6/17
foregoing [1] 48/10
forget [1] 10/15
form [1] 12/13
former [1] 33/23
forming [2] 36/4 38/10
forms [1] 39/14
formulates [1] 36/12
forth [1] 20/20
forward [4] 45/13 45/14 47/7
found [2] 15/25 43/13
four [7] 21/25 25/18 31/20 32/10 32/12 32/18 32/19
frame [1] 10/11
framed [1] 7/2
Franklin [4] 1/17 48/9

48/16 48/17
frankly [2] 16/25 16/25
Fraser [3] 25/7 25/15 25/15
free [1] 7/3
Freedman [9] 2/2 2/2 3/7 4/17 5/19 7/12 16/2 16/14 45/24
Friday [1] 27/15
front [1] 23/1
full [1] 44/13
fully [3] 10/7 31/13 36/24
further [6] 6/15 7/4 7/4 7/8 7/13 8/9

**G**

Gables [1] 2/10
garbage [1] 27/16
gather [1] 26/20
generic [1] 38/15
gets [1] 9/13
getting [4] 5/3 16/3 17/8 39/25
give [6] 28/24 29/22 30/11 30/17 31/7 32/3
given [5] 19/24 27/9 27/9 28/20 41/9
goes [2] 24/5 38/7
going [25] 4/25 5/3 8/25 9/1 9/3 9/17 12/24 13/5 15/4 16/1 16/1 16/24 17/5 19/6 19/10 20/20 24/23 26/25 27/24 28/22 28/22 35/12 36/24 37/15 45/25
gone [1] 37/12
good [11] 3/2 3/6 3/8 3/10 3/12 3/14 4/8 5/7 32/7 33/13 47/14
got [8] 6/6 6/7 9/1 11/8 22/7 33/2 41/17 41/20
gotta [1] 19/20
guard [1] 2/6
guess [4] 3/20 12/4 28/6 28/13

**H**

hands [1] 47/15
happen [1] 33/19
happened [2] 33/18 42/6
happening [1] 21/13
happens [4] 4/10 30/7 33/16 43/20
happy [2] 12/7 30/21
hard [1] 47/12
harp [1] 21/11
haven't [1] 28/19
having [4] 8/7 9/11 43/10 45/20
he'll [1] 37/18
he's [8] 6/18 18/1 27/9 37/21 40/6 41/7 41/7 41/7
hear [11] 4/11 4/13 4/15 4/17 4/20 4/23 5/10 12/7 15/17 16/13 38/13

## H

**heard [5]** 6/15 7/4 31/13 40/12 40/16
**hearing [11]** 1/10 3/22 3/24 7/10 17/19 17/22 18/8 42/15 44/16 44/21 48/3
**Hello [1]** 5/6
**help [1]** 47/7
**helpful [4]** 35/24 39/21 46/15 46/16
**here [22]** 13/8 13/16 15/12 16/24 17/1 17/5 17/25 19/25 24/7 24/18 27/7 28/10 28/13 30/12 33/19 35/4 36/22 37/19 40/23 43/17 43/19 44/20
**here's [1]** 21/18
**himself [2]** 18/4 22/4
**hired [1]** 17/9
**hold [4]** 15/22 16/5 25/9 28/18
**holding [1]** 26/9
**holds [1]** 37/1
**Honor [31]** 3/6 3/8 3/12 4/6 5/18 5/22 7/7 7/11 11/1 12/8 16/12 16/15 16/17 17/20 23/19 26/2 26/13 26/24 27/12 30/6 30/19 30/20 33/13 38/2 39/3 40/12 40/19 46/3 46/12 46/25 47/4
**HONORABLE [1]** 1/11
**hope [2]** 31/8 39/4
**hours [1]** 19/9
**However [1]** 12/18
**huh [1]** 34/15
**hundreds [1]** 11/18

## I

**I'd [3]** 3/22 37/10 40/16
**I'll [16]** 3/5 3/24 4/23 7/3 8/25 10/25 11/11 11/14 12/4 12/5 15/18 26/17 34/7 43/4 45/6 47/14
**I'm [52]**
**I've [9]** 7/2 10/8 11/22 16/3 16/9 25/3 40/21 42/3 46/24
**idea [4]** 20/6 21/5 22/8 25/5
**identify [1]** 28/9
**imagine [1]** 23/16
**immediately [1]** 6/2
**implemented [1]** 36/10
**important [2]** 35/4 37/7
**imposed [1]** 9/5
**impressions [2]** 20/25 22/25
**inadequate [1]** 28/25
**inadvertent [1]** 6/3
**inadvertently [1]** 6/1
**inaudible [10]** 13/6 8/9 8/25 11/15 24/20 28/9 29/17 32/15 39/1 45/16

## Include

**include [1]** 24/15
**included [2]** 6/1 14/24
**includes [1]** 38/8
**including [5]** 24/9 32/18 34/9 37/20 42/22
**incorporates [1]** 15/10
**indefensible [1]** 40/9
**independently [1]** 24/17
**individual [1]** 19/2
**Info [1]** 3/3
**information [6]** 12/14 15/10 15/13 26/14 31/21 39/23
**informed [2]** 7/22 12/18
**informing [1]** 28/15
**injected [1]** 17/7
**inquiring [1]** 32/6
**inquiry [1]** 23/5
**insightful [1]** 39/21
**instance [1]** 9/25
**instructed [1]** 6/3
**instructions [1]** 35/14
**instructive [1]** 35/25
**insufficient [1]** 32/20
**intended [3]** 9/13 9/14 10/1
**interesting [3]** 43/14 43/15 43/15
**interim [1]** 14/5
**interpreted [2]** 19/24 43/9
**interrupt [3]** 15/23 16/21 33/7
**interview [1]** 18/5
**interviewed [2]** 18/4 21/17
**interviews [6]** 18/6 19/10 21/19 25/19 30/3 41/11
**involve [1]** 39/9
**involved [2]** 23/3 24/4
**involves [1]** 24/14
**IRA [2]** 1/3 3/3
**isn't [2]** 12/18 13/15
**issue [29]** 3/19 4/5 4/14 4/19 5/12 5/20 6/17 7/2 7/5 10/6 10/7 10/11 11/20 11/25 13/10 21/11 22/21 26/17 27/16 30/20 31/14 33/21 34/5 42/17 43/4 44/7 44/17 46/16 46/22
**issued [1]** 22/11
**issues [11]** 8/24 31/13 32/14 42/14 42/21 42/23 44/11 45/24 45/25 47/3 47/5
**it's [48]** 6/18 7/17 11/12 11/19 12/4 13/17 14/20 14/21 16/23 17/14 17/25 18/16 20/6 20/18 20/24 21/5 21/12 21/14 23/9 23/19 26/1 26/2 26/13 26/13 28/2 29/9 30/23 31/5 31/5 31/6 32/12 34/16 34/23 35/7 35/9

## J

**January [1]** 8/1
**joint [3]** 12/16 22/3 44/1
**judge [25]** 1/12 4/15 15/20 16/22 19/13 19/25 20/12 21/8 21/12 21/18 22/5 22/18 23/14 24/25 27/7 27/17 33/8 40/21 41/23 42/24 42/24 46/4 47/17 47/18 47/19
**just [48]** 4/7 4/12 5/3 5/8 5/22 6/16 7/18 11/19 11/22 15/22 16/2 16/10 18/7 18/21 19/9 19/10 19/11 20/18 21/10 21/12 23/20 26/17 26/20 27/10 28/21 29/1 29/9 29/24 29/23 29/23 30/3 30/14 30/16 30/18 30/22 30/23 32/6 33/14 34/22 36/7 38/15 40/5 40/15 40/16 40/21 41/15 42/4 46/10
**justify [1]** 32/3

## K

**keep [7]** 7/16 13/2 13/20 35/7 36/3 36/5 39/16
**kept [5]** 9/14 37/18 38/23 39/24 39/25
**kind [3]** 8/14 35/15 42/15
**kinds [1]** 43/6
**Kingdom [2]** 6/22 8/15
**KLEIMAN [2]** 1/3 3/3
**Klin [27]** 12/11 18/3 18/25 21/16 21/16 21/23 22/4 22/10 23/19 25/5 25/19 25/23 27/14 32/17 33/23 36/2 38/6 38/11 38/22 38/23 39/7 39/15 40/4 41/4 41/5 41/6 44/17
**Klin's [7]** 11/10 11/11 11/12 15/5 22/9 25/25 27/19
**know [57]**

## L

**language [1]** 11/14
**last [8]** 3/22 3/24 7/9 12/6 17/18 19/14 25/17 42/4
**later [2]** 38/3 38/12
**latest [1]** 45/14
**law [15]** 8/15 8/16 8/23 9/16 9/24 17/3 40/23 41/1 41/1 41/8 41/9 41/25 41/25 42/2 44/7
**law's [2]** 13/15
**lawyer [1]** 29/11 40/25

## Lawyers

**lawyers [5]** 3/18 20/17 23/13 23/16 44/6
**leading [2]** 13/12 27/17
**learned [2]** 41/18
**least [5]** 21/19 22/19 43/19 46/22 47/2
**led [1]** 24/10
**legal [6]** 14/9 38/15 41/20 41/21 44/7 44/11
**lengthy [2]** 19/19 34/14
**Leon [1]** 2/9
**less [1]** 21/15
**let [23]** 3/4 3/18 4/12 5/8 8/11 8/11 10/6 12/3 13/22 15/17 15/23 16/5 16/20 26/1 29/10 29/11 33/12 42/12 42/13 46/10 46/14 46/21 47/14
**let's [4]** 17/5 21/20 44/8 45/23
**letters [1]** 26/10
**lifelong [1]** 37/2
**likely [1]** 24/15
**Lin [1]** 10/15
**linguists [1]** 34/10
**list [1]** 26/10
**listen [3]** 3/18 16/7 40/25
**listening [1]** 3/16
**literal [1]** 31/4
**literally [3]** 22/17 26/14 26/16
**litigation [12]** 6/21 6/24 7/20 8/18 8/18 8/22 9/15 9/16 23/3 24/4 34/4 34/8
**little [6]** 5/23 11/11 11/13 16/23 29/9 31/4
**living [3]** 36/6 38/9 41/3
**LLP [3]** 2/2 2/5 2/8
**log [1]** 4/22
**logistical [1]** 16/5
**long [5]** 8/17 34/16 34/17 39/8 47/6
**looked [1]** 42/3
**looking [1]** 16/24 28/4
**loose [1]** 11/13
**lose [1]** 24/23
**lot [3]** 16/3 16/4 42/3
**Lyman [4]** 4/1 4/1 6/18 7/17
**Lyman's [2]** 4/1 5/12
**Lynam [6]** 6/6 7/17 9/4 18/7

## M

**MAGISTRATE [1]** 1/12
**mail [2]** 1/19 41/17
**makes [1]** 20/23
**making [8]** 8/11 8/13 20/18 20/21 24/20 41/21 43/2 43/9
**manage [1]** 16/4
**manner [4]** 13/13 14/14 14/18 15/9
**margin [1]** 30/8

## Mark

**mark [1]** 9/8
**material [10]** 8/21 10/12 10/23 17/15 17/16 17/16 21/9 22/10 23/3 24/3
**materiality [1]** 32/14
**materials [12]** 3/25 4/3 5/11 8/16 9/12 10/8 10/19 10/22 17/17 22/18 23/18 23/22
**matter [9]** 3/21 3/22 3/23 12/21 21/20 27/8 41/5 47/16 48/13
**matters [1]** 3/20
**maybe [6]** 6/5 14/5 31/8 40/16 42/7 44/20
**McGovern [32]** 2/8 3/13 3/14 4/4 4/21 5/5 5/6 5/7 5/9 6/2 6/14 7/3 7/21 8/3 10/25 12/3 12/4 13/22 15/18 16/3 16/14 16/18 21/7 27/2 29/13 31/13 33/12 45/11 45/17 45/25 46/8 47/1
**McGovern's [3]** 10/3 21/21 40/22
**me [57]**
**mean [5]** 13/17 33/7 34/9 35/17 36/8
**meant [1]** 23/8
**meets [4]** 34/24 35/3 43/21 43/24
**members [2]** 3/16 16/19
**memorandum [2]** 12/16 22/3
**memos [1]** 26/10
**mental [2]** 20/25 22/24
**Merit [1]** 48/9
**Mestre [1]** 2/8
**methodologies [1]** 36/24
**methodology [14]** 12/10 12/11 14/19 34/17 35/8 36/10 37/16 37/21 39/24 42/22 43/11 44/4 44/5 44/13
**Miami [2]** 2/4 2/7
**might [1]** 44/11
**minutes [1]** 40/17
**mode [1]** 16/8
**month [1]** 8/5
**morning [1]** 17/21
**most [1]** 21/12
**mother [4]** 18/10 18/11 18/11 37/3
**motion [1]** 12/5
**move [2]** 8/5 20/3
**moving [1]** 47/7
**Mr [6]** 4/17 6/6 6/18 9/4 16/2 45/24
**Mr. [39]** 3/10 4/1 4/1 4/13 5/12 5/19 5/19 6/12 7/12 7/12 7/15 12/1 12/23 15/17 15/19 15/23 16/2 16/10 16/14 16/20 27/2 27/23 27/24 33/15 35/16 36/9 37/15 37/24 39/13 39/19 39/21 42/11

**M**

**Mr....** [7] 45/2 45/7 45/24 46/4 46/7 46/10 46/21 47/9
**Mr. Brenner** [32] 3/10 4/13 5/19 6/12 7/12 7/15 12/1 13/23 15/17 15/19 15/23 16/2 16/10 16/20 27/2 27/23 27/24 33/15 35/16 36/9 37/15 37/24 39/13 39/19 39/21 42/11 45/2 45/7 46/7 46/10 46/21 47/9
**Mr. Freedman** [2] 16/14 45/24
**Mr. Freedman or** [2] 5/19 7/12
**Mr. Lyman** [1] 4/1
**Mr. Lyman's** [2] 4/1 5/12
**Ms** [16] 7/3 10/2 12/4 13/22 15/18 18/14 21/7 21/21 27/2 29/13 31/13 33/12 40/22 45/10 45/25 46/8
**Ms.** [16] 3/14 4/4 4/21 5/5 5/7 5/9 6/2 6/14 7/21 8/3 10/25 12/3 16/3 16/16 45/17 47/1
**much** [2] 21/12 42/11
**must** [1] 4/19
**mute** [3] 3/17 9/2 16/1
**muted** [1] 16/19
**myself** [1] 18/23

**N**

**name** [6] 7/16 7/23 10/16 14/4 21/3 39/4
**nature** [2] 12/5 14/1
**necessarily** [1] 14/16
**need** [8] 20/19 25/10 26/12 27/11 30/2 41/24 45/14 45/15
**needs** [1] 45/21
**neither** [2] 9/7 45/19
**never** [2] 25/3 34/3
**new** [5] 3/21 17/7 28/24 29/1 33/20
**next** [2] 27/14 34/10
**no** [36] 1/2 4/19 6/11 7/11 7/19 9/24 16/22 18/2 19/4 19/8 20/1 21/14 24/7 24/7 27/10 29/21 30/5 30/9 30/24 32/9 32/11 33/6 33/8 37/23 38/25 39/2 40/23 42/2 42/8 42/18 42/20 43/2 43/7 43/18 46/10 46/13
**noise** [2] 9/2 16/4
**non** [2] 14/4 26/6

**non-attorneys** [1] 26/6
**non-reporting** [1] 14/4
**none** [3] 26/16 42/3 48/6
**note** [7] 3/24 20/9 20/9 20/11 20/23 37/11 46/18
**noted** [2] 13/16 24/12
**notes** [46] 11/11 11/12 11/13 12/14 14/4 19/3 20/2 21/8 21/25 22/2 22/5 22/7 22/8 22/11 22/22 23/3 24/4 24/17 24/18 25/23 25/24 26/5 26/10 27/19 27/19 30/8 30/10 30/11 32/17 32/17 34/17 34/25 36/3 38/11 38/14 38/21 39/24 41/12 41/13 43/23 43/24 43/25 44/1 44/9 44/10 44/24
**nothing** [6] 8/9 21/3 22/17 22/24 27/10 46/8
**notice** [1] 37/24
**notified** [1] 6/2
**novel** [4] 17/7 33/20 34/9 41/2
**number** [5] 3/3 3/16 14/2 14/3 32/8
**number one** [1] 14/2
**number two** [1] 14/3 32/8

**O**

**o'clock** [1] 46/7
**O'Reilly** [1] 23/21
**oath** [1] 37/1
**objecting** [1] 28/7
**objection** [3] 28/13 32/21 46/19
**objections** [3] 10/3 46/23 47/2
**objects** [1] 46/18
**observations** [2] 13/1 24/19
**obviously** [5] 4/22 13/9 14/21 17/24 45/14
**occurred** [1] 31/17
**off** [1] 4/22
**Official** [1] 1/17
**often** [2] 20/20 21/1
**Oh** [3] 4/8 18/11 40/20
**okay** [25] 3/2 3/15 4/12 4/17 5/2 5/5 5/13 7/8 8/13 9/1 11/6 16/9 16/13 16/19 17/4 20/3 21/5 21/13 32/23 33/9 38/13 40/23 42/14 42/17 46/5
**once** [1] 34/9
**one** [18] 3/21 6/5 13/17 13/24 14/2 15/22 16/5 17/3 17/15 17/15 17/15 18/8 24/1 26/24 28/3 28/10 30/9 42/19
**only** [16] 9/6 16/8 18/18 21/12 21/16 21/16 22/5 23/12 24/25 31/5 32/7 32/10 32/21 40/12 40/24 45/10

**operates** [1] 36/7
**opine** [1] 17/11
**opinion** [10] 13/12 18/3 19/9 20/4 22/6 24/24 32/14 40/1 40/2 44/20
**opinions** [12] 12/24 18/1 18/15 18/17 18/18 18/19 23/7 26/23 28/16 35/18 36/12 37/25
**opposing** [4] 9/15 10/1 24/8 30/10
**order** [14] 3/1 8/5 9/1 9/3 9/9 9/18 12/5 28/24 31/22 44/14 45/4 45/6 45/23 46/6
**ordering** [1] 9/19
**orders** [2] 9/5 44/6
**ordinarily** [1] 24/13
**original** [1] 5/25
**origins** [1] 4/2
**otherwise** [1] 9/22
**our** [7] 3/22 20/15 26/2 26/3 29/16 33/21 34/5
**ourselves** [1] 35/22
**outline** [1] 26/10
**outlined** [1] 36/16
**over** [3] 20/6 30/25 32/25
**overrule** [1] 32/21
**own** [2] 22/14 38/23

**P**

**page** [5] 1/15 22/2 24/5 24/24 40/7
**page 2** [1] 22/2
**page 3** [2] 24/5 24/24
**pages** [2] 34/16 34/17
**Palm** [2] 1/7 1/18
**paper** [1] 44/14
**paragraphs** [1] 44/20
**pardon** [1] 16/5
**participants** [1] 16/7
**participating** [1] 41/7
**particular** [5] 12/20 12/21 30/21 36/2 37/8
**particularly** [1] 34/4
**parties** [6] 3/19 3/20 3/25 6/25 10/10 28/9
**parts** [1] 14/23
**party** [3] 9/7 24/8 29/21
**party's** [1] 23/6
**passion** [1] 37/2
**past** [3] 23/16 31/10 33/18
**patiently** [1] 3/18
**pen** [1] 44/14
**pending** [3] 3/22 3/23
**Penn** [1] 26/1
**penned** [1] 22/16
**PennEnvironment** [1] 26/3
**people** [3] 16/4 18/20 45/21
**perceived** [1] 41/19
**Percell** [2] 25/7 25/12
**Perfect** [1] 16/18

**perfectly** [1] 34/2
**performing** [2] 35/20 38/7
**performs** [1] 14/19
**perhaps** [3] 22/20 23/13 31/4
**period** [1] 19/14
**permitted** [1] 24/2
**perspective** [1] 12/10
**persuade** [1] 40/25
**persuasive** [1] 43/17
**phone** [1] 9/2
**phones** [1] 3/17
**phonetic** [2] 19/18 25/7
**phrase** [1] 11/25
**picked** [1] 21/11
**place** [2] 9/10 19/14
**plaintiff** [5] 3/5 3/7 3/9 30/4 43/17
**plaintiff's** [2] 11/5 11/8
**plaintiffs** [6] 1/4 2/2 6/22 9/4 13/20 34/8
**plaintiffs'** [2] 10/18 11/21
**plays** [1] 44/13
**pleadings** [1] 44/6
**please** [3] 3/5 3/11 9/2
**point** [6] 19/21 31/12 31/14 34/12 41/15 41/22
**points** [1] 33/15
**Ponce** [1] 2/9
**position** [16] 6/23 10/18 10/21 11/5 11/8 11/21 13/14 16/25 19/21 30/13 33/10 33/20 37/1 39/1 39/3 42/20
**possibly** [1] 31/25
**practical** [1] 20/19
**practice** [4] 20/13 29/22 30/18 41/6
**preeminent** [1] 34/1
**preparation** [1] 14/9
**prepare** [1] 39/23
**prepared** [2] 10/12 26/10
**prepares** [1] 13/13
**presentation** [1] 35/13
**presented** [1] 9/23
**preserve** [1] 43/3
**preserved** [2] 10/3 46/19
**pretend** [1] 8/15
**pretty** [3] 18/23 44/18 47/12
**prevent** [1] 24/8
**previously** [1] 9/5
**principle** [1] 18/14
**print** [1] 44/10
**privilege** [3] 8/16 9/21 9/24
**problem** [9] 4/7 4/9 27/7 30/15 32/11 41/19 41/19 46/10 46/13
**procedure** [2] 35/21 39/10
**proceeding** [1] 26/16
**proceedings** [5] 1/10 8/6

46/9 47/20 48/12
**process** [5] 24/10 24/12 24/14 44/23 44/23
**produce** [3] 27/9 38/12 42/5
**produced** [10] 25/11 26/11 29/18 45/4 45/6 45/22 45/23 46/6 46/6 46/8
**producible** [1] 30/9
**product** [14] 6/24 8/14 8/17 8/22 9/17 13/7 14/9 20/25 23/24 24/6 24/7 24/16 38/14 38/17
**production** [4] 6/22 21/14 27/13 42/5
**professional** [1] 46/9
**professionalism** [1] 6/12
**pronounce** [1] 14/4
**pronouncing** [2] 11/10 39/4
**proof** [1] 35/14
**properly** [1] 37/17
**protect** [4] 20/23 20/24 23/8 26/7
**protected** [1] 24/12
**protecting** [1] 22/24
**protection** [2] 8/14 8/23
**protective** [1] 12/5
**provide** [2] 13/18 29/1
**provided** [8] 6/20 10/15 10/16 10/16 12/23 28/7 28/10 37/21
**psychological** [7] 11/14 25/6 25/8 25/13 27/20 30/23 30/24
**psychologist** [1] 17/10
**public** [2] 3/16 16/19
**purposes** [1] 9/24
**pursuant** [1] 9/9
**put** [8] 17/24 22/15 25/23 26/21 32/15 36/4 40/7 44/14
**putting** [1] 32/13

**Q**

**question** [12] 27/3 27/6 27/24 28/2 28/13 28/19 29/4 29/11 29/22 31/8 31/15 35/5
**questionnaire** [2] 19/19 39/13
**questionnaires** [2] 15/7 39/10
**questions** [7] 11/18 14/1 15/9 19/20 32/8 37/7 39/15
**quite** [1] 12/22
**quote** [7] 24/20 24/20 26/7 26/7 28/9 28/11 35/17

**R**

**raise** [6] 3/20 3/21 27/17 44/6 46/22 47/3
**raised** [5] 12/8 23/10 38/4 42/19 43/1

## R

raises [1] 43/14
Ramona [3] 18/6 19/17
19/18
ran [3] 19/12 22/12
30/24
rather [1] 17/7
rating [3] 22/13 22/13
22/14
raw [2] 14/5 45/1
reach [2] 22/18 40/5
reached [4] 8/2 18/1
28/21 41/17
read [4] 17/19 30/22
44/7 44/9
reading [3] 31/3 31/4
31/17
really [6] 13/12 13/17
13/23 14/23 16/24 40/24
Realtime [1] 48/10
rearrange [1] 44/19
reason [3] 9/17 24/8
37/9
reasoning [1] 27/1
reasons [5] 12/25 13/6
13/18 35/19 43/6
rebutting [1] 34/11
recall [2] 20/14 30/6
received [4] 5/16 14/15
15/13 15/13
receives [2] 12/15 15/10
recently [1] 29/15
recess [1] 47/16
record [10] 6/16 7/1
7/19 8/8 9/23 22/20
42/16 45/11 45/18 46/19
recorded [1] 21/22
RECORDING [1] 48/12
references [1] 34/18
referred [2] 15/8 22/2
referring [2] 8/6 24/11
refers [3] 36/5 38/9
42/24
regard [4] 6/12 28/12
34/1 43/16
regarding [1] 43/2
Registered [1] 48/9
REINHART [1] 1/11
rejected [3] 17/4 20/7
26/18
related [3] 11/20 28/2
36/21
relating [4] 3/25 10/7
42/17 42/23
relevance [3] 32/13
42/22 43/10
relevant [2] 18/17 33/18
reliance [1] 23/18
relied [15] 10/13 10/17
10/19 21/4 21/9 26/14
28/23 29/2 29/6 29/19
29/24 30/3 30/7 30/23
41/3
relies [1] 41/11
reluctant [1] 21/11
rely [1] 26/21

relying [1] 25/10
remain [1] 10/1
remarks [1] 17/2
remedy [2] 32/2 43/7
remember [2] 25/18
29/2
rendering [1] 34/20
renders [2] 36/12 40/8
renovat [1] 44/15
report [91]
report's [2] 29/5 32/7
reported [1] 14/15
Reporter [4] 1/17 1/17
48/9 48/10
reporting [2] 14/4 14/7
reports [22] 20/21 20/21
21/1 22/24 24/11 25/1
25/2 26/7 26/11 27/12
27/21 29/16 29/17 32/22
39/23 40/6 41/15 42/1
42/9 42/10 42/18 43/18
represent [1] 19/19
representation [1] 21/21
representations [1]
45/18
reputation [2] 34/3
34/19
request [1] 45/10
requested [3] 13/19
14/14 19/16
require [1] 46/1
required [1] 31/21
requires [5] 19/11 28/12
29/22 30/15 30/16
research [3] 26/9 44/8
44/10
resolve [1] 42/24
resolved [1] 44/11
Resources [1] 3/3
respect [12] 12/20 15/7
15/9 34/13 35/8 36/14
37/2 39/3 39/6 39/7 39/9
39/14
responded [1] 37/6
response [1] 39/6
responsible [1] 21/2
rest [1] 21/17
result [1] 44/24
results [4] 10/14 38/18
38/20 39/16
reveal [2] 20/25 23/17
revealed [1] 18/19
revelation [1] 24/15
review [4] 4/2 5/11 10/9
46/20
reviewed [4] 9/11 17/14
17/17 25/24
reviewing [1] 20/21
revised [1] 31/23
revising [1] 20/21
revisions [1] 44/15
right [27] 3/11 4/21 5/3
5/9 6/14 7/12 7/23 8/10
8/10 11/10 13/25 15/17
18/6 19/8 27/5 28/4
28/10 28/20 31/16 32/5

32/12 33/10 35/21 40/11
42/12 47/5 47/14
risk [1] 34/3
Rivero [1] 2/8
RMR [2] 1/17 48/17
Roche [1] 2/2
room [1] 22/7
rule [38] 8/11 10/20
12/23 18/14 19/11 20/1
23/4 23/7 23/7 23/17
24/1 27/8 27/12 27/21
28/4 28/8 28/11 28/12
28/17 29/14 29/22 29/25
30/1 30/5 30/15 30/16
31/3 31/22 34/21 34/22
34/24 35/3 35/21 41/8
42/12 43/4 45/3 46/18
rules [1] 31/22
ruling [16] 8/12 8/12
8/13 8/23 9/11 10/2 10/3
10/5 42/14 42/16 42/17
42/19 42/21 42/25 46/17
46/20
rulings [1] 46/23
run [4] 11/15 27/20 32/1
41/14

## S

safe [1] 47/15
same [5] 9/5 12/11 25/14
39/3 39/7
sanitize [1] 23/12
satisfied [1] 43/19
Saturday [1] 46/1
Saturdays [1] 45/24
Saulnier [12] 11/20
21/11 21/17 22/12 25/17
25/20 25/23 32/17 33/25
39/4 39/16 41/12
Saulnier's [7] 11/13
15/3 21/24 22/2 22/8
25/24 27/19
saw [1] 6/1
say [13] 16/11 18/25
19/9 20/2 26/21 29/24
32/10 32/18 34/9 34/10
37/11 44/7 46/14
saying [6] 5/9 25/14
26/17 30/22 30/23 45/21
says [14] 19/16 20/3
20/9 23/2 24/1 24/22
25/1 26/4 26/9 28/21
29/18 29/19 30/7 37/4
scales [2] 22/13 22/14
Schiller [1] 2/5
score [1] 11/16
scores [1] 19/22
second [9] 10/6 15/22
16/5 20/17 26/19 33/14
43/13 43/24 44/1
seek [1] 46/20
seemed [1] 13/23
seems [2] 37/13 37/16
seen [1] 6/6
send [1] 24/22
sends [1] 45/12

sense [3] 14/9 22/9 40/1
sensitive [1] 37/3
sent [2] 8/3 44/2
sentence [1] 33/6
separate [2] 15/4 15/12
September [1] 8/1
set [2] 17/15 17/16
sets [1] 17/14
SFranklinUSDC [1]
1/19
share [3] 41/13 43/25
43/25
shared [1] 38/22
She's [1] 19/20
shielding [1] 24/6
shocking [1] 16/25
should [10] 6/7 10/20
10/23 16/10 17/11 20/5
20/8 37/20 38/3 47/6
shown [1] 43/19
sic [1] 4/1
side [6] 20/18 23/22 27/3
30/2 30/17 44/3
signs [1] 21/2
similar [2] 20/12 20/13
Similarly [2] 15/7 23/5
simply [8] 13/3 28/21
35/25 36/10 36/11 39/12
44/24 45/1
since [2] 3/24 7/21
single [1] 34/19
sir [2] 19/3 19/5
sister [2] 18/8 18/9
situation [5] 35/22 36/2
36/10 37/19 38/2
situations [1] 27/2
six [1] 25/18
slight [1] 7/18
somehow [4] 22/9 39/25
40/6 40/8
someone [2] 30/7 33/25
something [8] 5/23 9/1
9/13 16/11 37/12 40/3
45/12 46/6
sometimes [1] 33/16
sorry [4] 5/2 16/21
28/10 40/20
sort [9] 8/13 13/16 16/24
19/25 25/22 35/5 36/21
37/2 38/9
sought [2] 13/8 23/16
South [1] 2/3
Southeast [1] 2/6
SOUTHERN [1] 1/1
speak [2] 16/10 35/12
speaking [1] 13/9
specifically [11] 17/4
20/7 20/12 20/23 20/24
22/23 25/6 25/13 26/18
35/8 36/16
specifics [1] 39/15
spoliation [2] 43/3 43/11
staff [1] 26/6
standard [1] 34/24
standards [1] 35/3
start [7] 3/4 3/5 8/11

18/13 19/7 20/8 42/13
state [2] 35/25 36/14
statement [3] 4/1 4/2
5/12 6/21 6/23 8/3 8/4
9/3 9/13 12/15 12/24
34/23 35/18
statements [2] 5/21 6/6
states [5] 1/1 1/12 35/8
37/1 37/6
statisticians [1] 34/11
stay [1] 47/15
step [1] 33/14
Stephen [4] 1/17 48/9
48/16 48/17
stepping [1] 16/23
still [2] 24/2 38/24
Street [2] 1/18 2/6
strong [1] 39/17
stuff [4] 17/24 26/15
32/21 41/17
subject [11] 6/24 9/5
14/18 21/14 21/16 24/21
25/14 27/13 41/7 42/4
42/5
submission [2] 5/16 5/25
submissions [1] 10/10
submit [5] 4/4 4/5 5/15
5/17 5/20
submitted [3] 3/25 5/11
5/15 5/20 7/9 9/12
substantiated [1] 40/2
such [3] 14/24 23/3 24/4
sufficient [2] 30/4 31/21
suggest [2] 36/25 40/4
suggestions [1] 20/21
Suite [3] 2/3 2/6 2/9
summarily [1] 40/5
Sunday [1] 27/15
supplemental [1] 32/1
support [1] 40/3
supposed [3] 34/11
40/24 41/22
sure [20] 4/23 5/14 5/16
5/23 6/8 8/4 13/7 15/5
15/8 15/11 15/24 28/1
28/5 31/11 35/16 36/8
37/18 38/16 40/14 40/15
surprise [1] 6/13
surprisingly [1] 25/8
surrounding [1] 13/6
suspect [1] 26/25
suspicion [1] 41/16
swallow [1] 23/17

## T

take [7] 10/4 10/4 18/21
19/5 43/23 44/10 47/6
taken [4] 17/1 30/8
34/25 36/3
takes [1] 12/14
taking [5] 21/25 22/5
23/20 36/19 44/24
talk [4] 17/5 44/8 44/10
44/11
talked [2] 18/7 18/20
talking [3] 20/11 31/9

## T

**talking... [1]** 42/13
**tandem [1]** 39/7
**team [2]** 6/3 9/8
**technical [1]** 14/8
**TELEPHONIC [2]** 1/10 48/3
**tell [10]** 18/2 18/20 19/10 20/3 22/1 28/22 28/23 30/14 42/2 43/13
**tells [3]** 22/23 27/14 30/2
**temptation [1]** 39/17
**tens [1]** 19/9
**term [3]** 25/21 38/15 38/15
**terminology [1]** 13/25
**terms [1]** 13/8
**test [8]** 10/14 19/8 25/13 26/23 30/5 30/24 30/25 38/18
**testified [2]** 6/20 8/3
**testifies [1]** 12/12
**testimony [5]** 7/20 17/12 17/19 17/22 30/8
**testing [10]** 10/13 20/4 22/25 23/3 23/4 24/3 24/4 25/8 38/19 43/21
**tests [6]** 11/17 20/1 25/5 25/6 30/23 38/20
**thank [10]** 8/10 15/20 18/11 27/23 33/3 40/10 42/11 47/17 47/18 47/19
**that's [55]**
**themselves [1]** 32/20
**theories [1]** 34/9
**theory [1]** 8/20
**there's [18]** 6/5 19/8 24/7 27/10 27/10 29/21 30/5 32/11 37/23 38/4 38/5 38/5 40/23 42/2 43/7 43/22 43/22 46/7
**therefore [7]** 6/24 8/22 9/15 10/19 26/22 35/10 38/4
**they're [13]** 15/11 21/15 21/25 22/6 25/19 27/13 27/15 31/6 41/15 41/21 42/1 42/1 42/4
**they've [5]** 17/9 25/24 27/4 29/5 30/8
**thing [12]** 3/18 13/15 19/12 25/17 26/24 31/6 32/10 34/20 40/24 41/4 43/13 46/9
**things [14]** 14/1 27/19 27/20 29/20 29/20 29/21 29/23 31/18 33/17 36/1 36/21 38/24 43/5 45/22
**think [53]**
**thorough [1]** 43/16
**thoroughly [2]** 36/17 37/20
**those [22]** 4/3 6/6 6/7 14/11 14/13 14/17 14/23 18/17 25/10 29/6 29/20
29/21 30/11 32/8 36/16 36/17 38/9 38/11 38/20 38/23 39/6 39/16
**though [2]** 38/3 39/13
**thought [1]** 24/10
**thoughts [1]** 22/25
**three [7]** 13/24 14/11 29/20 29/20 29/23 34/7 40/16
**threw [1]** 41/24
**through [2]** 17/3 20/15
**throughout [1]** 46/8
**tight [1]** 35/24
**timeline [1]** 7/25
**timelines [1]** 35/24
**timeliness [2]** 42/18 43/10
**title [1]** 17/11
**today [14]** 3/19 17/25 18/16 27/18 34/11 41/9 41/9 42/8 42/25 43/5 43/9 46/15 46/17 46/23
**together [5]** 22/15 25/20 32/1 39/8 47/6
**told [7]** 18/21 18/22 22/22 23/14 27/5 29/5 37/5
**tomorrow [3]** 45/14 46/2 46/7
**tone [1]** 36/22
**tonight [1]** 45/12
**too [2]** 21/12 22/19
**took [5]** 19/3 19/14 19/17 41/12 41/13
**topic [2]** 5/16 43/15
**topics [1]** 42/14
**totality [2]** 13/11 14/24 35/10
**Totally [1]** 30/9
**touch [1]** 25/17
**traditional [1]** 35/15
**transcript [2]** 1/10 48/11
**treat [1]** 12/4
**treated [2]** 13/9 13/10
**trial [2]** 27/18 42/24
**trotted [1]** 41/2
**true [2]** 15/5 37/13
**try [4]** 4/10 8/5 10/11 29/11
**trying [3]** 28/6 29/8 36/20
**Tuesday [8]** 13/5 36/9 38/6 39/19 45/8 45/9 45/13 45/15
**turn [7]** 10/6 10/25 12/3 30/25 32/25 33/12 46/21
**two [11]** 3/20 6/4 6/4 6/5 10/10 14/3 17/14 22/12 31/18 32/8 47/11
**typos [1]** 44/19

## U

**U.S [5]** 8/16 8/22 9/16 9/16 9/24
**Uh [1]** 34/15

**Uh-huh [1]** 34/15
**UK [6]** 6/24 7/21 8/16 8/22 8/23 9/15
**ultimate [2]** 14/19 36/15
**ultimately [11]** 9/14 10/16 13/13 14/7 14/24 15/15 21/1 36/12 44/1 44/12 44/18
**unaffected [1]** 23/7
**uncle [3]** 6/19 18/6 18/9
**unclearly [1]** 17/20
**under [10]** 8/16 9/16 10/20 12/23 30/5 31/22 34/22 37/1 37/7 42/2
**underlying [10]** 10/8 10/22 11/17 12/16 13/25 28/25 32/3 35/5 38/18 45/1
**understand [3]** 3/15 6/17 10/10 11/23 15/16 16/24 17/12 21/8 33/6 33/10 36/19 38/22 43/20 46/13
**understanding [7]** 17/18 8/20 9/23 14/20 14/22 39/10 44/22
**undoubtedly [1]** 17/7
**unequivocally [1]** 27/22
**UNITED [4]** 1/1 1/12 6/22 8/15
**unless [1]** 42/24
**unmute [1]** 16/2
**untimely [1]** 33/21
**upon [11]** 10/13 10/17 10/19 14/5 21/4 25/10 28/23 29/2 29/6 35/9 41/11
**us [4]** 6/1 22/23 27/1 47/11
**used [7]** 9/6 12/11 20/14 22/18 39/14 39/24 43/5
**uses [1]** 12/11
**using [2]** 38/15 38/15
**usually [1]** 24/14

## V

**validity [1]** 35/6
**various [1]** 11/19 23/11
**Vel [1]** 3/7
**Velvel [1]** 2/2
**versus [1]** 3/4
**very [26]** 5/7 7/14 7/14 8/12 9/19 16/20 18/14 34/9 34/16 34/22 35/23 36/16 39/15 39/21 39/21 40/16 42/11 42/16 43/14 43/14 43/15 43/15 43/15 44/4 44/22 46/15
**video [4]** 18/4 21/19 21/23 21/24
**videotape [1]** 17/17
**view [3]** 43/10 44/23 45/1
**Vigorous [1]** 35/13
**VOICE [1]** 16/7

## W

**wait [2]** 4/23 20/17
**waive [1]** 9/21
**waiving [2]** 46/23 47/1
**walk [1]** 17/2
**Wank [5]** 23/19 23/20 23/21 24/5 24/24
**want [21]** 4/22 5/22 6/8 11/2 19/1 19/1 21/15 26/24 27/4 28/20 29/6 31/15 32/10 33/4 33/14 33/19 37/11 38/3 40/15 42/15 45/17
**wanted [15]** 3/20 3/21 4/5 5/14 5/15 5/16 5/17 5/20 7/1 13/18 23/22 25/17 34/12 46/22 47/3
**wants [5]** 10/4 30/19 30/20 45/11 46/19
**Wash [1]** 47/15
**wasn't [1]** 37/18
**watching [2]** 21/23 21/24
**Watts [1]** 19/18
**we'll [7]** 17/2 27/17 33/1 38/10 42/6 43/7 47/15
**we're [5]** 17/25 19/25 37/19 47/6 47/11
**we've [3]** 18/7 27/3 29/15
**week [2]** 19/15 27/14
**weekend [1]** 47/15
**weeks [1]** 47/11
**weight [1]** 37/14
**well [19]** 4/18 10/9 12/3 12/22 13/22 16/20 17/14 18/18 19/4 28/12 29/9 31/17 32/2 37/4 37/10 40/10 41/24 45/17 46/14
**went [3]** 13/2 15/14 44/18
**weren't [1]** 20/15
**West [2]** 1/7 1/18
**Westlaw [4]** 23/21 25/12 25/15 26/4
**what's [8]** 17/5 21/13 24/23 25/20 30/12 31/21 32/3 39/1
**whatever [2]** 6/25 10/4
**whatsoever [1]** 7/20
**where [9]** 23/22 24/18 29/8 35/25 37/19 41/7 41/19 42/6 42/7
**whether [8]** 8/14 10/11 17/20 18/16 28/24 32/6 42/9 42/19
**Whoever's [1]** 9/1
**whole [3]** 19/14 21/5 32/14
**whose [1]** 7/23
**why [6]** 4/21 8/25 16/10 31/6 37/18 42/6
**why's [1]** 39/18
**wide [1]** 26/4
**Wife [1]** 18/8
**within [1]** 45/2

**without [6]** 11/7 17/8 29/10 40/4 45/20 47/1
**witness [6]** 6/21 8/2 8/4 28/15 35/18 35/20
**witness' [2]** 10/8 10/9
**witnesses [2]** 21/25 23/11
**WNK [1]** 3/3
**words [1]** 15/2
**work [17]** 6/24 8/14 8/22 9/17 10/13 12/17 13/4 14/9 15/6 20/25 23/24 24/6 24/7 24/15 38/14 39/7 46/1
**worked [3]** 14/16 39/8 44/23
**working [1]** 47/11
**works [1]** 8/17
**world [2]** 13/23 19/24
**worries [1]** 47/1
**worth [2]** 16/23 23/20
**wouldn't [2]** 23/12 37/12
**WRIGHT [18]** 1/6 3/4 3/13 6/21 8/20 9/8 9/21 10/4 17/12 18/5 18/25 19/2 21/17 21/23 22/4 37/6 43/21 46/18
**Wright's [4]** 6/18 17/17 18/6 22/20
**writes [1]** 44/1
**written [2]** 19/13 21/7
**wrong [2]** 28/10 28/11

## Y

**Yale [2]** 33/23 33/25
**yeah [7]** 11/3 12/2 12/4 33/5 40/20 46/13 46/13
**year [3]** 8/2 8/4 17/18
**yes [12]** 5/18 5/22 16/12 16/15 16/17 19/3 20/3 28/17 40/18 40/24 46/25 47/4
**yesterday [1]** 5/24
**yet [2]** 10/7 25/22
**you'd [1]** 32/25
**you'll [3]** 26/9 30/21 46/10
**you're [12]** 5/23 18/20 24/23 29/11 30/10 31/1 31/19 31/19 32/9 32/18 40/16 40/24
**you've [3]** 7/9 11/5 27/1

## Z

**zero [1]** 26/16
**Zooms [1]** 21/24