**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC

       plaintiffs,

v.                                                                    **Case No. 9:18-cv-80176 (BB/BR)**

CRAIG WRIGHT,

       defendant.

_____/

**DR. CRAIG WRIGHT'S MOTION FOR SUMMARY JUDGMENT[1]**

---

[1] Filed contemporaneously with this motion is defendant's Statement of Material Facts, which
will be referred to here as "SMF."

## TABLE OF CONTENTS

**Page**

BACKGROUND ................................................................................................ 1

ARGUMENT .................................................................................................... 7

1.   **Plaintiffs' Claims Are Time-Barred** .................................................... 7

    *A.*   *Plaintiffs' Claims Accrued No Later Than November 2013* ................................... 9

    *B.*   *The Undisputed Facts Negate Tolling of the Statute of Limitations* ..................... 11

        (1)   There Is No Evidence That Defendant Engaged in "Active and Willful Concealment" ................................................................................ 11

        (2)   Plaintiffs Failed To "Exercise Reasonable Care and Diligence" ..................... 14

2.   **Plaintiffs Cannot Establish That an Oral Partnership Existed, But Even If They Could, it Would be Void for Vagueness and any Claim on it Would be Barred by the Statute Of Frauds** ........................................................... 15

    *A.*   *Plaintiffs Cannot Establish an Oral Partnership Agreement* ................................. 15

        (1)   No Common Purpose ........................................................................ 16

        (2)   No Joint Proprietary Interest in the Subject Matter ................................... 17

        (3)   No Right to Share Profits and No Duty to Share Losses ............................. 17

        (4)   No Joint Control or Right Of Control .................................................... 18

    *B.*   *Even If There Were Any Evidence of an Oral Partnership Agreement, Claims on it Would Be Time-Barred And Unenforceable Under The Statute Of Frauds* ........................................................................................... 19

3.   **Fla. Stat. § 688.08 Displaces Plaintiffs' Common-Law Claims That Are Based On Their Dismissed Trade Secret Claims** ............................. 20

4.   **The Only Record Evidence About W&K's Membership Establishes That This Court Lacks Subject-Matter Jurisdiction** ...................................... 22

5.   **I.K. Lacked Authority to File This Action on Behalf of W&K** ............. 24

6.   **The Undisputed Facts Warrants Summary Judgment on Plaintiffs' Fraud Claims** .................................................................................................... 24

    *A.*   *Plaintiffs' Common-Law Fraud Claim* ............................................................ 25

        (1)   Dr. Wright's Alleged Statements Regarding Possible Future Acts Do Not Constitute Actionable Fraud ........................................................ 25

        (2)   Plaintiffs Did Not Rely, and Had No Right to Rely, on Any of Dr. Wright's Alleged Statements ............................................................. 26

    (3)   Even If Plaintiffs Had Evidence of Actionable Fraud, And Even If
They Had A Right to Rely on Dr. Wright's Alleged Statements, Their
Purported Reliance Did Not Cause Damages ................................................. **28**

**B.**    ***Plaintiffs' Constructive Fraud Claim*** ........................................................ **29**

**CONCLUSION** .............................................................................................................. **30**

**CERTIFICATE OF SERVICE** ................................................................................... **31**

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

<u>Page(s)</u>

*Ackermann v. Levine*,
788 F.2d 830 (2d Cir. 1986).............................................................................12

*Allegiance Healthcare Corp. v. Coleman*,
232 F. Supp. 2d 1329 (S.D. Fla. 2002) ............................................................20

*Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*,
432 F. Supp. 2d 1319 (S.D. Fla. 2006) ............................................................29

*Am. Honda Motor Co. v. Motorcycle Info. Network Inc.*,
390 F. Supp. 2d 1170 (M.D. Fla. 2005)......................................................20, 29

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).............................................................................................7

*Audiology Distribution, LLC v. Simmons*,
2014 WL 7672536 (M.D. Fla. 2014) ................................................................20

*Awodiya v. Ross Univ. Sch. of Med.*,
391 F. Supp. 3d 1098 (S.D. Fla. 2019) ............................................................24

*Beal v. Paramount Pictures Corp.*,
20 F.3d 454 (11th Cir. 1994) ..............................................................................7

*Bell v. Morrison*,
26 U.S. 351 (1828)...............................................................................................8

*Biscayne Cove Condo. Ass'n v. QBE Ins. Corp.*,
971 F. Supp. 2d 1121 (S.D. Fla. 2013) ............................................................25

*Burger v. Hartley*,
896 F. Supp. 2d 1157 (S.D. Fla. 2012) ............................................................17

*Caledonian Bank & Tr. Ltd. v. Fifth Third Bank*,
2015 WL 5542544 (M.D. Fla. 2015) ................................................................28

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).......................................................................................7, 11

*Chernys v. Standard Pac. of S. Fla., G.P. Inc.*,
2010 WL 11504280 (S.D. Fla. 2010) .......................................................4, 5, 19

*Columbus Hotel Corp. v. Hotel Mgmt. Co.*,

    156 So. 893 (1934)...................................................................................7, 25, 27

*Commerce & Indus. Ins. Co. v. S. Constr. Labor Servs., LLC*,

    2017 WL 10058585 (M.D. Fla. 2017) ............................................................23

*Conklin Shows, Inc. v. Dep't of Revenue*,

    684 So. 2d 328 (Fla. 4th DCA 1996) .............................................................15

*Davis v. Monahan*,

    832 So. 2d 708 (Fla. 2002).................................................................................9

*Deerpoint Grp., Inc. v. Agrigenix, LLC*,

    345 F. Supp. 3d 1207 (E.D. Cal. 2018)....................................................20, 21

*Del Monte Fresh Produce Co. v. Dole Food Co.*,

    136 F. Supp. 2d 1271 (S.D. Fla. 2001) .............................................................8

*DeVaughn v. DeVaughn*,

    840 So. 2d 1128 (Fla. 5th DCA 2003) ...........................................................14

*Dreyfuss v. Dreyfuss*,

    701 So. 2d 437 (Fla. 3d DCA 1997) ...................................................... passim

*Ducat Fla., LP v. Wells Fargo Bank, N.A.*,

    2013 WL 6667038 (S.D. Fla. 2013) ...............................................................10

*First Union Brokerage v. Milos*,

    717 F. Supp. 1519 (S.D. Fla. 1989) ...............................................................25

*Fitzpatrick v. City of Atlanta*,

    2 F.3d 1112 (11th Cir. 1993) ............................................................................7

*Flagstone Island Gardens, LLC v. Ser*,

    2011 WL 13223685 (S.D. Fla. 2011) .............................................................5, 20, 21

*Flintlock Const. Servs., LLC v. Well-Come Holdings, LLC*,

    710 F.3d 1221 (11th Cir. 2013) ......................................................................22

*Fuller v. Fuller*,

    68 So. 2d 177 (Fla. 1953)..........................................................................6, 27

*Hurok Marble LLC v. Akar*,

    2017 WL 7794327 (S.D. Fla. 2017) ...............................................................22

*IBEW Local 595 Pension & Money Purchase Pension Plans v. ADT Corp.*,

    660 F. App'x 850 (11th Cir. 2016) ...................................................................26

*In re Snyder's Estate*,

    333 So. 2d 519 (Fla. 2d DCA 1976) ...............................................................15

*Laterza v. JPMorgan Chase Bank, N.A.*,

    221 F. Supp. 3d 1347 (S.D. Fla. 2016) ............................................................11

*Levy v. Baptist Hosp. of Miami, Inc.*,

    210 So. 2d 730 (Fla. 3d DCA 1968) ..................................................................8

*Magdalena v. Toyota Motor Corp.*,

    2013 WL 12092086 (S.D. Fla. 2013) ...............................................................23

*Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*,

    857 F. Supp. 2d 1294 (S.D. Fla. 2012) .........................................................9, 10

*Morgan Stanley & Co. v. Coleman (Parent) Holdings Inc.*,

    955 So. 2d 1124 (Fla. 4th DCA 2007) .............................................................28

*Moriber v. Dreiling*,

    194 So. 3d 369 (Fla. 3d DCA 2016) ................................................................27

*Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*,

    198 F.3d 823 (11th Cir. 1999) .........................................................................11

*New Hampshire v. Maine*,

    532 U.S. 742 (2001) .........................................................................................21

*New Lenox Indus., Inc. v. Fenton*,

    510 F. Supp. 2d 893 (M.D. Fla. 2007) ..........................................................5, 20

*Next Century Commc'ns Corp. v. Ellis*,

    318 F.3d 1023 (11th Cir. 2003) ..................................................................25, 26

*Norden-Powers v. Beveridge*,

    125 F. Supp. 2d 634 (E.D.N.Y. 2000) .............................................................12

*Pac. Harbor Capital, Inc. v. Barnett Bank, N.A.*,

    252 F.3d 1246 (11th Cir. 2001) .......................................................................13

*Pegram v. Herdrich*,

    530 U.S. 211 (2000) .........................................................................................21

*Pettinelli v. Danzig,*

    722 F.2d 706 (11th Cir. 1984) ........................................................................6, 25, 26

*Pinnacle Port Cmty. Ass'n, Inc. v. Orenstein,*

    872 F.2d 1536 (11th Cir. 1989) ...............................................................................16

*Plantation Key Developers, Inc. v. Colonial Mortg. Co. of Indiana,*

    589 F.2d 164 (5th Cir. 1979) ...................................................................................25

*Razor Capital, LLC v. CMAX Fin. LLC,*

    2017 WL 3481761 (S.D. Fla. 2017) ................................................................ passim

*RG Martin Inv., LLC v. Virtual Tech. Licensing, LLC,*

    2017 WL 7792564 (S.D. Fla. 2017) .........................................................................24

*Roberts v. Stutman,*

    2011 WL 13225074 (S.D. Fla. 2011) .......................................................................19

*Rolling Greens MHP, LP v. Comcast SCH Holdings LLC,*

    374 F.3d 1020 (11th Cir. 2004) ...............................................................................22

*Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.,*

    750 F. Supp. 2d 1346 (S.D. Fla. 2010) ...................................................................25

*Ruhrgas AG v. Marathon Oil Co.,*

    526 U.S. 574 (1999) .................................................................................................23

*S&W Air Vac Sys., Inc. v. Dep't of Revenue, State of Fla.,*

    697 So. 2d 1313 (Fla. 5th DCA 1997) .....................................................................17

*Saeme v. Levine,*

    502 F. App'x 849 (11th Cir. 2012) ...........................................................................19

*Small Bus. Admin. v. Echevarria,*

    864 F. Supp. 1254 (S.D. Fla. 1994) .........................................................................10

*Tate v. Clements,*

    16 Fla. 339 (1878) ....................................................................................................10

*Tilkin & Cagen, Inc. v. United Metal Receptacle Corp.,*

    2008 WL 2339825 (N.D. Ill. 2008) ..........................................................................22

*Trutie v. Republic Nat. Distrib. Co.,*

    718 F. Supp. 2d 1350 (S.D. Fla. 2010) ...................................................................22

*Tvestments, Ltd v. L.K. Station Grp., LLC*,

    2008 WL 4613070 (S.D. Fla. 2008) ...........................................................................22

*U.S. v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*,

    941 F.2d 1428 (11th Cir. 1991) ...................................................................................7

*Univ. of S. Ala. v. Am. Tobacco Co.*,

    168 F.3d 405 (11th Cir. 1999) ...................................................................................30

*Vannamei Corp. v. Elite Int'l Telecomm, Inc.*,

    881 So. 2d 561 (Fla. 3d DCA 2004) .........................................................................19

*Vazquez v. Caesar's Paradise Stream Resort*,

    2010 WL 11483946 (M.D. Pa. 2010) ...................................................................5, 18

*Veitch v. Virgin Mgmt. USA, Inc.*,

    2015 WL 13808110 (S.D. Fla. 2015) .......................................................................23

*White Const. Co. v. Martin Marietta Materials, Inc.*,

    633 F. Supp. 2d 1302 (M.D. Fla. 2009)....................................................................30

*Williams v. Obstfeld*,

    314 F.3d 1270 (11th Cir. 2002) .......................................................................... passim

*Zarrella v. Pac. Life Ins. Co.*,

    755 F. Supp. 2d 1231 (S.D. Fla. 2011) .....................................................................25

## BACKGROUND

In February 2016, plaintiffs Ira Kleiman ("I.K."), as the personal representative of the estate of Dave Kleiman (the "Estate"), and W&K Info Defense Research LLC ("W&K"), filed this action alleging that Dave Kleiman (deceased) had an oral partnership with defendant Dr. Craig Wright to develop bitcoin, one of the world's most sophisticated forms of blockchain technology. *See* Second Amended Complaint [D.E. 83] (the "SAC"). Plaintiffs further alleged that through this oral partnership, Dr. Wright and Dave Kleiman ("D.K.")—who, for years before his death, lived in a VA Hospital and often was too ill to do his work as a computer forensic expert—(1) developed unspecified intellectual property based on blockchain technology, and (2) mined the world's largest bitcoin fortune, worth hundreds of millions of dollars when D.K. died, and billions of dollars today. After spinning this yarn, plaintiffs alleged that Dr. Wright stole the bitcoins and intellectual property.

More than a year of extensive discovery, including numerous depositions and Dr. Wright's production of millions of pages of documents, has revealed that plaintiffs' story is an elaborate fiction. Plaintiff Ira Kleiman was not close to his brother, SMF ¶ 6, but people who *were* close to D.K.—his best friends, his accountant, his *actual* business partners, his fiancé (who lived with him), and his fiancé's son (who also lived with him and considered him a father figure)—all testified that D.K. never said, or even hinted, that he was mining bitcoin, developing bitcoin or blockchain technology, or that Dr. Wright was his business partner. *See* SMF ¶¶ 1-12.

In fact, years before his death, when D.K. purportedly was sitting on a bitcoin fortune worth at least millions of dollars, if not hundreds of millions, he was in desperate financial straits. Plaintiff I.K.—his brother—provided no help and stayed completely out of the picture. D.K.'s house went into foreclosure (which he tried, but failed, to prevent through a refinancing), he couldn't pay his cell phone bill (his close friends paid it to keep him connected to the world), his home internet was disconnected for non-payment, and, on what was likely the day he passed, his credit report reflects that he applied for a loan from a lender that provides credit to people who cannot get credit elsewhere. *See* SMF ¶¶ 13-16. He was denied that loan. *Id*. ¶ 16. Why wasn't D.K.'s supposed fortune tapped for any of these expenses?

Further, although D.K. was an expert in computer forensics and security, SMF ¶ 20, he had *zero* experience or training in the workings and origins of the sophisticated blockchain technology, and he was not a computer programmer, economist, game theoretician, or

mathematician. *Id.* ¶¶ 17-21. He never had taken any higher-education courses related to information technology, and had earned certifications in computer forensics and security from reading books on those topics that came with a certification test. *Id.* ¶¶ 17-18. Although he obtained various certifications, none had anything to do with bitcoin or blockchain technology. *Id.* ¶ 19. In fact, in D.K.'s many expert reports and affidavits—one of which he prepared less than two weeks before his death—he never once described bitcoin or blockchain technology as something he was even familiar with, let alone had studied. *Id.* ¶ 21. Nonetheless, plaintiffs stand by their claim that in 2009, Dave suddenly developed bitcoin and its extremely sophisticated blockchain technology.

Plaintiffs' claims cannot be squared with reality, and throughout this case, plaintiffs have (1) blamed this on the fact that D.K. died, and (2) argued that Dr. Wright purportedly has *all* the information needed to plug the holes in plaintiffs' case. The latter never was true. Plaintiff I.K. swears that in 2009, his brother purportedly told him—*and no one else*—that he was working with a wealthy foreign man to develop digital currency and that it would be "bigger than Facebook," then drew for him what would become the symbol for bitcoin.[2] SMF ¶ 22. Apart from plaintiff I.K.'s uncorroborated hearsay testimony about what a dead man told him, there is no evidence that D.K. ever discussed these matters with his brother or anyone else, and plaintiff I.K., who makes a living working on internet advertising and websites, never asked again about them, even after bitcoin and its symbol had gone mainstream and become ubiquitous. *Id.*

---

[2] Plaintiffs claim that at a November 2009 Thanksgiving dinner, D.K. "opened his wallet, took out a business card, flipped it over, drew a 'B' with a line or two through it, and commented on how 'we' were working on a logo." SAC ¶ 60. Even if any of this were admissible evidence (it isn't), the logo D.K. purportedly drew in 2009 was not created until a year later, and wasn't even the first bitcoin logo, which is on the left:



Satoshi 2010          Pander 2010          Bitboy 2011

*See* https://news.bitcoin.com/bitcoin-history-part-2-the-bitcoin-symbol/. It would appear that in putting together his story about the 2009 Thanksgiving dinner, I.K. didn't realize that the first bitcoin logo was simply a "BC."

When D.K. died in 2013, plaintiff I.K. took possession of his belongings, threw away his papers and re-formatted some of his hard drives, without looking for any evidence of what D.K. allegedly had told him in 2009. SMF ¶¶ 23-25. Plaintiff I.K. continued writing his own data to those hard drives for six years, until 2019—more than a year after he filed this case—causing whatever data D.K. had stored on them to be permanently deleted. *Id*. ¶ 26. Moreover, D.K. owned other encrypted hard drives and electronic devices that may hold the answers to all questions raised by this case, but I.K. never even attempted to access them, apparently preferring instead to go after Dr. Wright, and attempt to decrypt the hard drives later. *Id*. ¶ 27. At his January 10, 2020 deposition, I.K. testified that he never made any attempt to access those drives or electronic devices. *Id*. He also made no attempt to access D.K.'s email accounts. *Id*. ¶ 28. In short, after massive expenses on discovery, plaintiff I.K. may be sitting on the most critical information in this case, if not the alleged bitcoin and intellectual property at the heart of this case, but has not lifted a finger to access it. *Id*. ¶¶ 27-28.

Discovery is over, and summary judgment for Dr. Wright should be entered for the following reasons:

*First*, from the start of this case, plaintiffs have misrepresented a key fact of which they were well aware—W&K was timely served with process in the Australian lawsuits,[3] which forecloses any possibility that those lawsuits were "fraudulently concealed" to toll the statute of limitations, rendering all but one of plaintiffs' claims time-barred. Plaintiffs specifically alleged that the Australian lawsuits were the means by which Dr. Wright purportedly stole intellectual property from them. *See* SAC ¶¶ 117-131. Plaintiffs failed to disclose that on September 3, 2013, the Australian court sent a Notice of Listing (the "Notice") to W&K's publicly listed mailing address, which was a mailbox D.K. used for *all* his business affairs and some of his personal affairs. SMF ¶¶ 29-34. The Notice provided a hearing date for the Australian lawsuits and, *inter alia*, an internet website link to access information about the case. *Id*. ¶ 34. D.K's business partner and close friend confirmed that the Notice was received in D.K's mailbox on October 10, 2013, and that plaintiff I.K. knew *long before filing this action* that the Notice had been timely

---

[3] As discussed, *infra*, service of process can be perfected by mail under The Hague Convention.

received in that mailbox.[4] *Id.* ¶ 35. Under The Hague Convention, this constituted perfected service on W&K, which provided plaintiffs with notice of the Australian lawsuits as a matter of law. It makes no difference if I.K., as a fiduciary to the Estate, neglected to check D.K.'s mail, because "[a] litigant does not toll the statute of limitations simply by not opening her mail, whether that is because she is out of the country, has moved, or simply elects not to receive her mail." *Vazquez v. Caesar's Paradise Stream Resort*, 2010 WL 11483946, at *3 (M.D. Pa. 2010).

   *Second*, plaintiffs alleged that before the creation of W&K, D.K and Dr. Wright had an oral partnership to mine bitcoin together from 2008 through 2011. SAC ¶ 67. Summary judgment on this claim is required, because (1) it has been time-barred since 2015 (D.K. was alive in 2011, and never claimed he was owed anything from any purported oral partnership with Dr. Wright, SMF ¶¶ 1-12), (2) it violates the Statute of Frauds because there was not, is not, and never will be any writing memorializing this purported three-year oral partnership, and (3) it fails for indefiniteness because plaintiffs provided *no evidence of any terms*, let alone *all essential terms*, of this purported oral partnership, including "the distribution of partnership gains, losses, payment of business loans, payment of overhead costs, how to dissolve the partnership or the distribution of assets." *Dreyfuss v. Dreyfuss*, 701 So. 2d 437, 438-39 (Fla. 3d DCA 1997) (affirming finding of no oral partnership agreement where "there was no meeting of the minds on the essential elements necessary to form a contractual partnership."). The requirements for an oral partnership are *strictly construed* and "preclude a finding that a partnership or joint venture exists where any factor is missing." *Williams v. Obstfeld*, 314 F.3d 1270, 1276 (11th Cir. 2002) (citing *Dreyfuss*, 701 So. 2d at 438-39 ("These requirements are strictly construed and the absence of even one is fatal to the finding of a partnership."). All are absent here.

   Thus, even if plaintiffs had a timely claim, it would have been unenforceable because they expressly alleged that this purported oral partnership was intended to last three years, which violates Florida's Statute of Frauds (prohibiting actions on purported oral contracts intended to last more than one year). *See* SAC ¶ 67; Fla. Stat. § 725.01; *Chernys v. Standard Pac. of S. Fla., G.P. Inc.*, 2010 WL 11504280, at *4 (S.D. Fla. 2010) ("[T]he statute of frauds renders unenforceable those contracts where it is apparent, from the purpose of the contract and the

---

[4] Because I.K. had actual notice of timely service on W&K of the Australian lawsuits, plaintiffs' decision to file this action despite the Australian lawsuits' claims and issue preclusion, and to do so after the limitations period expired, amounts to an intrinsic fraud on *this* Court.

surrounding circumstances, that the understanding of the parties was that the agreement was not to be performed within a year from the time it was made."). Plaintiffs' new theory—that D.K. and Dr. Wright agreed to work on bitcoin as a "secretive" project and access whatever bitcoin they supposedly mined at some future date, *see* SMF ¶ 22—fares no better, because barring claims on purported "secret oral contracts" is the very reason why the Statute of Frauds was first enacted in 1676. *See DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So. 3d 85, 92 (Fla. 2013) ("Florida's Statute of Frauds is a substantial copy of the English statute entitled, 'A Statute for the Prevention of Frauds and Perjuries,' enacted by the English Parliament in 1676."). In short, plaintiffs may not bring an action claiming that a dead man told them he had a "secret" three-year, oral contract with Dr. Wright. Fla. Stat. § 725.01; *Chernys*, 2010 WL 11504280, at \*4.

*Third*, the Court dismissed with prejudice plaintiffs' claims for misappropriation of trade secrets under Florida's Uniform Trade Secrets Act, Fla. Stat. § 688.01, *et seq*. ("FUTSA"), and the Defend Trade Secrets Act, 18. U.S.C. § 1832 ("DTSA"), because both claims were time-barred. *See* December 27, 2018 Order [D.E. 68] at 33. Further, after extensive discovery, the only purportedly stolen intellectual property plaintiffs have identified is "blockchain based technologies and smart contracts," SMF ¶ 37, which is also what they alleged to be their trade secrets. SAC ¶¶ 178-191. Because the intellectual property at issue in all of plaintiffs' claims is their purported trade secrets, and all underlying facts of their trade secret claims are the same as those of their remaining claims, FUTSA preempts plaintiffs' remaining claims, which requires summary judgment to be granted. *E.g.*, *Flagstone Island Gardens, LLC v. Ser*, 2011 WL 13223685, at \*6 (S.D. Fla. 2011) ("[A]s a general proposition[,] other torts involving the same underlying factual allegations as a claim for trade secret misappropriation will be preempted by FUTSA.") (citing *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 908 (M.D. Fla. 2007)).

*Fourth*, while the Court previously ruled that complete diversity exists, allowing it to exercise subject-matter jurisdiction, we urge the Court to consider the uncontroverted testimony of Dr. Wright's former wife, Lynn Wright, who was directly involved in creating W&K. She has no reason to lie for Dr. Wright, given their divorce, and her testimony is corroborated by their divorce decree in Australia, her correspondence with D.K. and Dr. Wright, and correspondence with the U.S. Department of Homeland Security. She testified that she has an ownership interest in W&K, and her testimony is uncontroverted. SMF ¶ 40. Because Lynn Wright (an Australian) is a member of W&K, and Dr. Wright (also Australian) is a defendant, complete diversity does

not exist, and plaintiffs cannot repair this fatal jurisdictional defect because they alleged that they do not know W&K's membership and have no evidence to change that allegation.

*Fifth*, in light of Ms. Wright's uncontroverted testimony that she has an ownership interest in W&K, I.K. lacked the authority to file this action on behalf of W&K without her consent. *See* Fla. Stat. § 605.04073(2)(d) (in a member-managed company "the affirmative vote or consent of a majority-in-interest of the members is required to undertake an act, whether within or outside the ordinary course of the company's activities and affairs . . . .").[5] I.K.'s acts in reinstating W&K to file this action without Ms. Wright's consent, is an *ultra vires* act and is therefore void. *See Beau Monde, Inc. v. Bramson*, 446 So. 2d 164, 167 (Fla. 2d DCA 1984).

*Finally*, summary judgment on plaintiffs' claims for common-law fraud and constructive fraud is and would be warranted, even if they weren't displaced by FUTSA and also time-barred. Plaintiffs do not allege any actionable fraud, only that Dr. Wright made future promises or statements that plaintiff I.K. questioned **the moment they were made**, which vitiates his claim that he could reasonably rely on them. SMF ¶ 45. *E.g.*, *Pettinelli v. Danzig*, 722 F.2d 706, 709 (11th Cir. 1984) ("[F]raud requires a showing that the plaintiffs had a right to rely on the representations."). Further evidence that plaintiff I.K. could not reasonably rely on Dr. Wright's statements is the fact that plaintiffs already were preparing for litigation when those statements were made. Plaintiffs withheld documents they created when Dr. Wright contacted I.K. as **work product created in anticipation of litigation**. Finally, plaintiffs were represented by experienced counsel at the time, which undermines their fatuous claim of reasonable reliance, and their even more fatuous claim that plaintiff I.K. was the "weaker party" in a "confidential relationship" with defendant. *See Fuller v. Fuller*, 68 So. 2d 177, 178 (Fla. 1953) (granting writ of certiorari and setting aside lower court's denial of a motion to dismiss allegations of fraud, where, *inter alia*,

---

[5] W&K is a member-managed company, even though D.K. identified himself as "MGRM" in the articles of incorporation. By default, a company is member managed unless explicitly stated otherwise in an operating agreement or articles of incorporation. Fla. Stat. § 605.0407(1)(a). Further, under Fla. Stat. § 605.0407(1)(b) "the terms 'managing member' and 'managing members' do not, in and of themselves," turn W&K into manager-managed company. In any event, even if W&K were manager-managed, I.K. still needed Ms. Wright's consent to file this action. Fla. Stat. § 605.04073(2) ("Except as otherwise provided in this chapter, the affirmative vote or consent of a majority-in-interest of the members is required to undertake an act outside the ordinary course of the company's activities and affairs . . . .").

alleged fraudulent statements were made when plaintiff "was represented by an attorney of her own choosing.") (citing *Columbus Hotel Corp. v. Hotel Mgmt. Co.*, 68 So. 2d 177 (Fla. 1953)).

As more fully demonstrated below, the Court should grant summary judgment.

## ARGUMENT

Federal Rule of Civil Procedure 56(a) requires summary judgment where the pleadings and evidence demonstrate that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(a). Where, as here, the opposing party (plaintiff) will bear the burden of proof at trial, "the moving party (the defendant) need not produce evidence negating the claim that there is a material issue in genuine dispute." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Instead, the moving party simply may show [ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the non-moving party's case." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting *U.S. v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

Furthermore, it is well-settled that the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue of material fact*." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted"). "An issue of fact is 'material' if it might affect the outcome of the case under the governing law." *Awodiya v. Ross Univ. Sch. of Med.*, 391 F. Supp. 3d 1098, 1102 (S.D. Fla. 2019) (citing *Anderson*, 477 U.S. at 247-48). "A dispute about a material fact is 'genuine' if the evidence could lead a reasonable jury to find for the non-moving party." *Id.*

Finally, while the Court should view the evidence in a light most favorable to the non-movant, "this, however, does not mean that [the Court] [is] constrained to accept all the [plaintiffs'] factual characterizations and legal arguments." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458–59 (11th Cir. 1994). "If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." *Id.* (citing *Anderson*, 477 U.S. at 248).

## 1.     Plaintiffs' Claims Are Time-Barred

Plaintiffs commenced this case on February 14, 2018. To the extent that plaintiffs' (specifically, the Estate) claims rely on a purported oral partnership that supposedly lasted from 2008 to 2011, *see* SAC ¶ 67, any cause of action arising from it had to have accrued in 2011,

before the partnership was dissolved. *See Tate v. Clements*, 16 Fla. 339, 356 (1878) ("The light in which we are disposed to consider this question is that after a dissolution of a partnership, no partner can create a cause of action against the other partners, except by a new authority communicated to him for that purpose.") (citing *Bell v. Morrison*, 26 U.S. 351, 373 (1828)). Therefore, any claims based on the purported oral partnership had to have accrued before it was dissolved in 2011 (more than a year *before* D.K.'s death), which means any such claims expired in 2015. *See Levy v. Baptist Hosp. of Miami, Inc*., 210 So. 2d 730, 731 (Fla. 3d DCA 1968) (stating that "[t]he personal representative receives no more and no less than the decedent would have had he lived, i.e. subject to the strength and weakness of the decedent's cause of action had he survived[,]" and that "the proper period of limitation here is the one applicable to such an action if it had been brought by the decedent, himself, had he survived.").

Moreover, the very latest date on which any of plaintiffs' causes of action could possibly have accrued was November 6, 2013.[6] On October 10, 2013, plaintiffs received timely notice of the Australian lawsuits (on which this case is based), in which judgment was entered on November 6, 2013. Plaintiffs commenced this case more than four years after that judgment was entered, and all but one of plaintiffs' claims are time-barred as a result.[7]

In its Order on Motion to Dismiss [D.E. 68] (the "Dismissal Order"), the Court stated that "[i]f, during discovery, it becomes apparent that Plaintiffs became aware of the Defendant's conduct more than four years before the filing of the instant action, Defendant may raise the statute of limitations issue again in a motion for summary judgment." Dismissal Order at 31 (citing *Del Monte Fresh Produce Co. v. Dole Food Co.*, 136 F. Supp. 2d 1271, 1293–94 (S.D. Fla. 2001)). In making that ruling on Dr. Wright's motion to dismiss, the Court was bound to accept as true plaintiffs' false allegations that (1) Dr. Wright took control of D.K.'s and W&K's assets by initiating the Australian lawsuits without providing notice to plaintiffs, (2) plaintiffs first became aware of the Australian lawsuits in April 2014 when contacted by the ATO, and (3) Dr. Wright represented that he initiated the lawsuits so that the Australian court would sign off on what he and D.K. had planned. Dismissal Order at 31 (citing SAC ¶¶ 97, 123).

---

[6] Even on the eve of trial, plaintiffs still cannot tell how or when the purported "theft" occurred. SMF ¶ 46.

[7] Plaintiffs' claim for civil theft (Count X) is governed by the five-year limitations period of Fla. Stat. § 772.17. Plaintiffs' other claims are governed by the four-year limitations period of Fla. Stat. § 95.11(3), and all are time-barred.

Because plaintiffs indisputably were timely served with process and received express notice of the Australian lawsuits on October 10, 2013, and were expressly advised to protect their rights by appearing, plaintiffs' claims accrued no later than November 3, 2013 (when judgment was rendered in the Australian lawsuits). All but one of plaintiffs' claims are time-barred on their face because (a) they accrued more than four years before plaintiffs commenced this action on February 14, 2018, and (b) discovery confirms that defendant never engaged in any "fraudulent concealment" that could operate to toll the statute of limitations, because, contrary to their allegations, plaintiffs had actual, timely notice of the Australian lawsuits on October 10, 2013, when they received service of process sent by the Australian court.

### A.      Plaintiffs' Claims Accrued No Later Than November 2013

Under Fla. Stat. § 95.031(1), "[a] cause of action accrues when the last element constituting the cause of action occurs." *See also Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294, 1309 (S.D. Fla. 2012), *aff'd*, 714 F.3d 1234 (11th Cir. 2013) ("[T]his Court must apply the general rule that 'the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues.' As the Florida Supreme Court stated, '[t]o hold otherwise would result in this Court rewriting the statute, and, in fact, obliterating the statute.'") (citing *Davis v. Monahan*, 832 So. 2d 708, 709 (Fla. 2002)).[8]

Drained of grand hyperbole and raw speculation, plaintiffs' claims boil down to the assertion that Dr. Wright stole bitcoin and intellectual property (plaintiffs' purported trade secrets, *see infra*) through three purportedly forged contracts that were submitted in the Australian lawsuits, which were reduced to judgment on November 6, 2013. SAC ¶¶ 117-131. Therefore, each of the following causes of action accrued on or before November 6, 2013, when the Australian judgments were entered:[9]

---

[8] The only conceivable exception to this accrual rule here could be a "delayed discovery" of plaintiffs' fraud claims. This is a non-starter because plaintiffs were timely served with process and had actual knowledge of the Australian lawsuits, while the law requires only that they should have known. *Monahan*, 832 So. 2d at 709 ("An exception is made for claims of fraud and products liability in which the accrual of the causes of action is delayed until the plaintiff *either knows or should know* that the last element of the cause of action occurred.") (emphasis added).

[9] Plaintiffs' claim for civil theft (Count X) also accrued on November 6, 2013, but is subject to a five-year limitations period. Fla. Stat. § 772.17.

**Count I (*Conversion*)**: "The statute of limitations applicable to conversion is four years and begins to run at the time of the conversion, except when the conversion is fraudulently concealed. *E.g., Small Bus. Admin. v. Echevarria*, 864 F. Supp. 1254, 1260 (S.D. Fla. 1994).[10]

**Count II (*Unjust Enrichment*)**: The cause of action accrues when unjust enrichment occurs. *E.g., Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294, 1310 (S.D. Fla. 2012), *aff'd*, 714 F.3d 1234 (11th Cir. 2013) (rejecting application of delayed discovery to unjust enrichment claims; holding that they accrue when the enrichment occurs);[11]

**Count V (*Breach of Fiduciary Duty*)**: "The cause of action accrues as soon as plaintiffs suffer damages resulting from the breach," which, at the latest here, would be the date when the Australian judgments were rendered, i.e., November 6, 2013. *Ducat Fla., LP v. Wells Fargo Bank, N.A.*, 2013 WL 6667038, at *6 (S.D. Fla. 2013);

**Count VI (*Breach of Partnership Duties of Loyalty and Care*)**: This claim also alleges a breach of fiduciary duty and is duplicative of Count V. Therefore, the cause of action accrues as soon as plaintiffs suffer damages resulting from the breach, or November 6, 2013. *Ducat*, 2013 WL 6667038, at *6; and

**Count VII (*Fraud*) and Count VIII (*Constructive Fraud*)**: For fraud claims, "the accrual of the causes of action is delayed until the plaintiff either knows or should know that the last element of the cause of action occurred." *Monahan*, 832 So. 2d at 709. As demonstrated *infra*, the indisputable evidence shows that the Australian court perfected service on W&K on October 10, 2013, when one of D.K.'s *actual* business partners checked the mail and marked the Notice of the Australian lawsuits that the Australian court had sent to W&K and the Estate as received. Plaintiffs sat on their hands for the next four and a half years.

In sum, all of plaintiffs' claims accrued no later than November 6, 2013, and the limitations periods began running immediately. Plaintiffs filed this action on February 14, 2018. Applying Florida's four-year limitations period, Counts I through VIII are time-barred.

---

[10] The next section further demonstrates that plaintiffs have no evidence to carry their burden of establishing fraudulent concealment.

[11] Although unjust enrichment is an equitable remedy to which the defense of laches applies, Fla. Stat. § 95.11(6) provides that "[l]aches shall bar any action unless it is commenced within the time provided for legal actions concerning the same subject matter . . . ." Therefore, the legal statute of limitations applies to plaintiffs' unjust enrichment claims.

### B.     The Undisputed Facts Negate Tolling the Statute of Limitations

The Supreme Court of Florida has unequivocally held that the "delayed discovery doctrine does not apply" to actions for conversion, breach of fiduciary duty, and unjust enrichment, or for a permanent injunction based on those claims. *Monahan*, 832 So. 2d at 712; *accord Laterza v. JPMorgan Chase Bank*, *N.A.*, 221 F. Supp. 3d 1347, 1351-52 (S.D. Fla. 2016). Moreover, the record in this case does not support application of the doctrine of "fraudulent concealment." *See Razor Capital*, 2017 WL 3481761 at *4.

Plaintiffs bear the burden of proving that Dr. Wright engaged in fraudulent concealment. *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 832 (11th Cir. 1999) (plaintiffs bear the burden of proving fraudulent concealment). Therefore, applying *Celotex*, 477 U.S. at 323, to survive summary judgment, plaintiffs must put forth evidence establishing that there was: "(1) successful concealment of the cause of action; (2) fraudulent means to achieve that concealment; and (3) that the plaintiff exercised reasonable care and diligence in seeking to discover the facts that form the basis of the claim." *Razor Capital, LLC v. CMAX Fin. LLC*, 2017 WL 3481761, at *4 (S.D. Fla. 2017). Further, fraudulent concealment is not proven simply by showing that a defendant did not inform a plaintiff of his conduct. The defendant must have affirmatively acted to conceal the plaintiff's claim. *Id.* ("[F]raudulent concealment goes beyond mere non-disclosure, [it] must constitute active and willful concealment."). This is a burden plaintiffs cannot carry as a matter of law, because there is no evidence that Dr. Wright "actively and willfully" concealed plaintiffs' potential claims.

### (1)     There Is No Evidence That Dr. Wright Engaged in "Active and Willful Concealment"

The undisputed facts show that plaintiffs cannot demonstrate fraudulent concealment because there is no evidence that Dr. Wright engaged in "active and willful concealment" of their purported claims. *Razor Capital*, 2017 WL 3481761, at *4. Plaintiffs cannot rely on the allegation that Dr. Wright concealed the existence of the Australian lawsuits, because they ***were timely served with process*** in them, and the law does not require more than the actual notice that plaintiffs challenged in this Court five years later, because fraudulent concealment is not "mere non-disclosure, and must constitute active and willful concealment." *Id.*

The evidence in this case demonstrates no concealment as matter of law. When Dr. Wright commenced the Australian lawsuits, the Supreme Court of New South Wales sent Notice of those lawsuits to D.K's and W&K's address of record, where service of process that process

was perfected when it was received on October 10, 2013, almost 5 1/2 years before plaintiffs filed their complaint demanding that this Court let them re-litigate the issues in the Australian lawsuits. SMF ¶ 35. Plaintiffs had actual, timely notice of the Australian lawsuits through service of process on W&K that was perfected under the Hague Convention. Thus, the indisputably Estate knew or had reason to know of those lawsuits *when they were commenced and while they were pending*. [12] The law does not (and cannot) require more.

Specifically, on September 3, 2013, the Supreme Court of New South Wales issued the Notice for the case styled *Craig Steven Wright v. W&K Info Defense Research LLC*, Case No. 2013/00245661. SMF ¶ 34. The Notice was addressed to W&K's official mailing address, which was regularly checked by his *actual* business partners, one of whom *marked the Notice as received on October 10, 2013*. *Id*. ¶ 35. The Notice stated that on October 30, 2013, at 9 a.m., the case would be "listed for Directions" in the "Supreme Court-Civil, Supreme Court Sydney Court 9C Queens Square Sydney," and warned that "[i]f you do not appear at Court, this matter may be dealt with in your absence." *Id*. ¶ 34. Finally, the Notice stated that "[l]isting details for the cases are" available at, *inter alia*, an internet website link. *Id*.

The Notice was sent via air mail in an official Supreme Court of New South Wales envelope addressed to W&K's and D.K.'s mailing address. SMF ¶ 33. D.K.'s close friend and business partner, Carter Conrad, testified that the Notice was received at W&K and D.K.'s mailing address and that when saw it, he marked as received on October 10, 2013. *Id*. ¶ 35. Thus, service was timely made, received and acknowledged. Mr. Conrad also testified that D.K. used W&K's mailbox for *all of his business affairs* and some personal matters. *Id*. ¶ 29. Additionally, on all of D.K.'s emails, including emails he exchanged with I.K., the signature blocks lists as his address the same Mailbox where the Notice was sent, received and acknowledged. *Id*. ¶ 31. Of note, D.K.'s other partner, Patrick Paige discussed this Notice with I.K. in 2016, and even though

---

[12] The United States and Australia are both signatories to the Hague Convention. *Norden-Powers v. Beveridge*, 125 F.Supp.2d 634, 637 (E.D.N.Y. 2000) ("Both Australia and the United States are signatories [] to the Hague Convention."). The United States permits service by mail so long as the foreign country does not object to service by mail. *Ackermann v. Levine*, 788 F.2d 830, 839-40 (2d Cir. 1986) (Federal courts "construing the Hague Convention have apparently consistently upheld mail service" where a country, "like the United States, is a signatory to the Convention and has not objected to mail service under Article 10(a)"). Australia does not object to service by mail, which means that the Supreme Court of New South Wales properly served W&K with timely notice of the Australian Lawsuits.

I.K. failed to check D.K.'s mail, breaching an obvious, fundamental fiduciary duty as personal representative of his brother's estate, he knew, years before filing this lawsuit, that timely Notice had been received. *Id*. ¶ 24. Mr. Paige also asked I.K. to take over control of W&K and D.K.'s mailbox, which *he refused to do*. *Id*. ¶¶ 31-32. This was willful blindness, which did not and could not undermine the legal sufficiency of service of the Australian lawsuits on W&K.

Therefore, there is not and never will be any evidence that Dr. Wright engaged in any "active and willful concealment" of plaintiffs' purported claims, particularly where the Australian court perfected timely service on W&K at its business address of record. With blinders firmly on, plaintiffs willfully ignored these facts, instead beginning to plan how they might sit on their hands for almost five years and then attack the Australian Court's judgments from ten thousand miles away, making the frivolous claim that Dr. Wright had prevented them from appearing in the Australian lawsuits, which was not only false, but damnably false.[13]

Plaintiffs had timely, official notice of the Australian lawsuits. The law required nothing more, and plaintiffs' claim that Dr. Wright didn't "tell them" about the Australian lawsuits is irrelevant. *The Supreme Court of New South Wales told them*, through valid service of process that was made and acknowledged. Moreover, allegations of fraudulent concealment, which are the only way these plaintiffs ever got into this Court, require much more than a defendant's mere non-disclosure, even where that exists (unlike here). *E.g., Razor Capital*, at *4 ("[F]raudulent concealment goes beyond mere non-disclosure, [it] must constitute active and willful concealment."). Because plaintiffs cannot provide any evidence that Dr. Wright engaged in active and willful concealment of their claims, their claims cannot be tolled on a fraudulent concealment theory and summary judgment is appropriate. *See Pac. Harbor Capital, Inc. v. Barnett Bank, N.A.*, 252 F.3d 1246, 1252 (11th Cir. 2001) (tolling the statute of limitations "is

---

[13] Dr. Wright reserves his right to seek relief for plaintiffs' frivolous accusation that he somehow kept them from appearing in Australia, without which this case could not have proceeded. That accusation is put to the lie by the acknowledged, timely service of Notice of the Australian Lawsuits on W&K at D.K.'s business address. All the sturm and drang of this lawsuit never should have occurred, because all but one of plaintiffs' claims are time-barred. *Nobody* prevented plaintiffs from protecting their purported "rights" in the Australian lawsuits. Moreover, the Notice expressly invited them to do so and cautioned them about the risks of not appearing. Instead, treating their purported claims as a lottery ticket, plaintiffs ignored this and sat on their hands for more than four years. Because plaintiffs were not prevented from appearing in the Australian lawsuits, they had no right to attack those judgments in this Court.

defeated, even on summary judgment, when it is shown that indisputably the plaintiffs 'had *notice sufficient to prompt them to investigate and that, had they done so diligently, they would have discovered the basis for their claims*.'") (emphasis added) (citations omitted).

(2)     *Plaintiffs Failed To "Exercise Reasonable Care and Diligence"*

Fraudulent concealment requires plaintiffs to establish that they "exercised reasonable care and diligence in seeking to discover the facts that form the basis of the claim." *Razor Capital*, 2017 WL 3481761, at *5. They failed to do this and the statute of limitations cannot be tolled, because plaintiff I.K., as personal representative of D.K.'s Estate, failed to exercise reasonable care and diligence as a matter of law.

First, as we demonstrated above, I.K. avoided checking W&K's and D.K.'s mail at the very time plaintiffs falsely and frivolously claim to have been prevented from appearing the Australian lawsuits, despite the fact that D.K.'s actual business partner *acknowledged timely service of process* by the Supreme Court of New South Wales. Further, hoping to stay willfully blind, I.K. refused to accept his fiduciary duty to check D.K.'s mail, even when asked to do so. Second, despite being the personal representative of his brother's estate, I.K. indiscriminately destroyed D.K.'s work papers and permanently erased some of his hard drives. He committed these affirmative acts of destruction despite claiming that D.K. had said in 2009 that he was working on the creation of a digital currency that would be "bigger than Facebook." SMF ¶¶ 22, 25. In light of what I.K. knew (and claims to have known) about D.K.'s affairs and projects, his failure to check the mail, standing alone, negates plaintiffs' effort to toll the statute of limitations as a matter of law. Reasonable jurors cannot differ in concluding that a plaintiff who failed to check the mail was not reasonably diligent. *See, e.g., Vazquez v. Caesar's Paradise Stream Resort*, 2010 WL 11483946, at *3 (M.D. Pa. 2010) ("A litigant does not toll the statute of limitations simply by not opening her mail, whether that is because she is out of the country, has moved, or simply elects not to receive her mail.") (collecting cases).

Thus, the undisputed facts foreclose any attempt by plaintiffs to fairly argue, let alone demonstrate, that they exercised "reasonable care and diligence in seeking to discover the facts that form the basis of [their] claim[s]." *Razor Capital*, 2017 WL 3481761, at *5. Nothing prevented them from checking D.K.'s mail, and I.K. had a fiduciary duty to check that mail in performing his duties to the Estate. *See* Fla. Stat. § 733.602(1) ("A personal representative is a fiduciary who shall observe the standards of care applicable to trustees."); *DeVaughn v.*

14

*DeVaughn*, 840 So.2d 1128, 1132 (Fla. 5th DCA 2003) ("The personal representative acts in a fiduciary capacity and has obligations to the creditors, the interested taxing authorities, and, most important in this case, the heirs.") (citing *In re Snyder's Estate*, 333 So. 2d 519, 521 (Fla. 2d DCA 1976) ("The administrator of an estate occupies a fiduciary capacity.")).

Moreover, if there is (or was) any evidence that would have put plaintiffs on notice of any meritorious claims, it would have been on D.K.'s electronic devices or in his work papers. Plaintiff I.K. erased some of the former and destroyed all of the latter, despite claiming that D.K. supposedly said in 2009 that he was working on digital currency that would be "bigger than Facebook." SMF ¶¶ 22, 25. In sum, the undisputed facts foreclose plaintiffs, as a matter of law, from raising a justiciable issue on the frivolous assertion that they "exercised reasonable care and diligence in seeking to discover the facts that form the basis of the claim," which negates any purported "fraudulent concealment" tolling of limitations periods in this case.

**2.    Plaintiffs Cannot Establish That an Oral Partnership Existed, but Even If They Could, it Would be Void for Vagueness and any Claim on it Would be Barred by the Statute of Frauds**

**A.    *Plaintiffs Cannot Establish an Oral Partnership Agreement***

Plaintiffs alleged that D.K and Dr. Wright had a "partnership" to mine bitcoin together from 2008 through 2011, and that through discovery they would learn this partnership's structure. *See* SAC ¶ 67. In two years of litigation, Dr. Wright produced millions of pages of documents and the parties took hundreds of hours of depositions, but plaintiffs still have no writing and zero evidence of this purported "partnership," let alone any of its essential terms. *See Dreyfuss*, 701 So. 2d at 438-39 (trial court's finding of no oral partnership agreement was affirmed where "there was no meeting of the minds on the essential elements necessary to form a contractual partnership."). The Eleventh Circuit has followed *Dreyfuss* in this situation. *Williams v. Obstfeld*, 314 F.3d 1270, 1275 (11th Cir. 2002) (citing *Dreyfuss*, 701 So.2d at 439).

After two years of extensive discovery, plaintiffs have produced no written agreement for the purported partnership and no evidence of any of its purported terms. With no written agreement, plaintiffs travel on a purported oral contract that violates the Statute of Frauds (discussed below), and bear "the burden of establishing the existence of such contract, including *all of its essential elements*," which "*is indeed, as it should be, a heavy and difficult one*." *Vannamei Corp. v. Elite Int'l Telecomm, Inc.*, 881 So. 2d 561, 562 (Fla. 3d DCA 2004)

(emphasis added); *Burger v. Hartley*, 896 F. Supp. 2d 1157, 1168 (S.D. Fla. 2012); *Conklin Shows, Inc. v. Dep't of Revenue*, 684 So. 2d 328, 332 (Fla. 4th DCA 1996)).

"A joint venture, like a partnership, may be created by express or implied contract, and the contractual relationship must consist of the following elements: (1) a common purpose; (2) a joint proprietary interest in the subject matter; (3) the right to share profits and duty to share losses, and (4) joint control or right of control." *Williams*, 314 F.3d at 1275-76 (citing *Pinnacle Port Cmty. Ass'n, Inc. v. Orenstein*, 872 F.2d 1536, 1538 (11th Cir. 1989)). Plaintiffs' obligation to establish every element of a purported oral partnership is "strictly construed and the absence of even one [element] is fatal to the finding of a partnership." *Dreyfuss*, 701 So. 2d at 439; *Pinnacle*, 872 F.2d at 1539) (affirming trial court's grant of summary judgment where a party failed to demonstrate every element of a partnership). Here, plaintiffs have adduced no evidence of *any* of the essential elements of their purported oral partnership agreement.

### (1)    No Common Purpose

Plaintiffs have no evidence that the purported oral partnership had a "common purpose." Indeed, plaintiffs have no evidence to establish *the purpose of the purported oral partnership*, let alone that D.K. and Dr. Wright shared that common purpose. Plaintiffs alleged that the purpose of this purported oral partnership was to mine bitcoin and create bitcoin-related intellectual property, but now must present admissible evidence demonstrating this purpose. This, they cannot do. If the case were tried today, not a single witness or document would show that the purported oral partnership's purpose had anything to do with bitcoin or that D.K. and Dr. Wright shared a common, unknown purpose in this purported oral partnership.[14]

Specifically, the people closest to D.K., in whom he confided—his best friends, business partners, and fiancée—will all testify that D.K. never mentioned bitcoin, never said he was working on bitcoin or bitcoin-related intellectual property, and never said he was in a partnership with Dr. Wright. SMF ¶¶ 1-12. Therefore, there is no evidence that D.K. and Dr. Wright shared a common purpose, without which there could not have been any oral partnership.

---

[14] I.K. is the only person who claims that D.K. ever said anything about working on digital money. His testimony is uncorroborated and highly questionable for reasons discussed *supra*. It also is self-serving, inadmissible hearsay, which may not be considered on a motion for summary judgment. *Burgess v. Allstate Ins. Co.*, 334 F. Supp. 2d 1351, 1354 (N.D. Ga. 2003) ("Inadmissible hearsay cannot be considered on a motion for summary judgment.") (citing *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)).

(2)     *No Joint Proprietary Interest in the Subject Matter*

Plaintiffs have no evidence that D.K. and Dr. Wright had a joint proprietary interest in anything. "A joint proprietary interest generally requires joint ownership of the subject matter of the contract." *Progress*, 2005 WL 1051932, at *3. Here, plaintiffs cannot establish the subject matter of this purported oral partnership. Moreover, there is no evidence to suggest that D.K. and Dr. Wright jointly owned anything, which makes it impossible to satisfy this element.

In fact, I.K. previously took the opposite position in state court. In his state-court action against D.K.'s best friends and business partners, I.K. alleged that "David Kleiman created and maintained bitcoin wallets which were *his personal property* during the time he was a member of Computer Forensics LLC." *See* D.E. 144-5 at ¶ 32 (emphasis added). I.K. there alleged that the bitcoin was D.K.'s personal property, and therefore, D.K. and Dr. Wright could not have shared a joint proprietary interest in bitcoin. *See S&W Air Vac Sys., Inc. v. Dep't of Revenue, State of Fla.*, 697 So. 2d 1313, 1316 (Fla. 5th DCA 1997) (joint proprietary interest element unsatisfied where one party owned the machines and the other party owned the land in a purported oral contract involving the placement of air machines in gas station parking lots).

(3)     *No Right to Share Profits and No Duty to Share Losses*

A partnership requires a "mutuality of interest in both profits and losses." *Williams*, 314 F.3d at 1275 (citing *Dreyfuss*, 701 So.2d at 439) (affirming judgment of no oral partnership where plaintiff put on no evidence regarding the "distribution of partnership gains, losses, payment of business loans, payment of overhead costs, how to dissolve the partnership or the distribution of assets."). "The absence of a right to share profits and a duty to share losses is fatal to a joint venture claim."[15] *Progress*, 2005 WL 1051932, at *6. Further, this element requires more than "an intention to share in the costs of production." *Id*. Instead, "[t]o share in losses means that each party is responsible or liable for the losses created by the venture and is exposed to liability, if any, to creditors or third parties." *Id*.

Plaintiffs have no evidence showing that D.K. and Dr. Wright agreed to share profits, nor do they have evidence demonstrating how the purported oral partnership was supposed to distribute profits. *See Dreyfuss*, 701 So.2d at 439. Further, there is no evidence that any profits ever were distributed from this purported oral partnership. In fact, plaintiffs' allege that this oral

---

[15] Florida law treats joint ventures and partnership as the same. *Burger v. Hartley*, 896 F. Supp. 2d 1157, 1167 (S.D. Fla. 2012) ("A joint venture is a form of partnership under Florida law.").

partnership was supposed to be wound up in 2011, SAC ¶ 67, when D.K. was in severe financial distress and living at a VA Hospital. SMF ¶¶ 13-16. If there had been a purported oral partnership with a fortune in bitcoin, it would defy logic and common sense for D.K. not to have used any of it to save his home and keep his cell phone connected.

Additionally, plaintiffs are eager to lay claim to the fruits of Dr. Wright's labor, but never talk about sharing the losses and liabilities that may have resulted from his work, which is required to satisfy this element. *Progress*, 2005 WL 1051932, at *6. Further, though this element requires more than "an intention to share in the costs of production[,]" *Progress*, 2005 WL 1051932, at *6, plaintiffs cannot show even that much.

Specifically, the only record evidence establishes that Dr. Wright spent considerable resources in setting up the computers and infrastructure necessary to begin mining bitcoin in Bagnoo, Australia. *See* D.E. 312-1 at 184:12-187:10. More than ten thousand miles away, D.K. had no access to Dr. Wright's computers and infrastructure, and plaintiffs have ***no evidence*** (because none exists) to suggest that D.K. incurred any loss or liabilities for Dr. Wright's expensive, time-consuming Bagnoo setup. Further, bitcoin was nearly worthless when it was created, and to set up the necessary computers and infrastructure to create and mine bitcoin, D.K. would have incurred a loss in the order of millions of dollars. There is ***no evidence*** to show that D.K. had the resources and paid or lost anything because of this purported oral partnership. He had no experience with blockchain technology and was neither a mathematician nor computer programmer, so he had no relevant expertise to contribute as labor, even if such could constitute a "loss." SMF ¶¶ 19, 21.

Finally, plaintiffs cannot show that D.K. agreed to be responsible for this purported oral partnership's legal liabilities resulting from the creation of bitcoin. Specifically, plaintiffs have ***zero*** tax records stemming from this purported oral partnership. On the other hand, Dr. Wright's companies, ***and not D.K.***, were involved with the Australian Tax Office ("ATO") because of bitcoin. D.K. and his Estate have never joined in any potential liability from the ATO.

### (4)    *No Joint Control or Right of Control*

Plaintiffs also have no evidence of "joint control," which, "under Florida law requires that each member 'have mutual control over the subject matter of the venture and the authority to bind one another with respect to the subject matter of the venture.'" *Veitch v. Virgin Mgmt. USA, Inc.*, 2015 WL 13808110, at *9 (S.D. Fla. 2015) (quoting *Progress*, 2005 WL 1051932, at *3).

18

Plaintiffs have no evidence that D.K. and Dr. Wright had joint control over anything in this case, let alone each other's bitcoin. Nor do they have any evidence that D.K. and Dr. Wright had the authority to "bind one another" to anything. This element cannot be satisfied.

Consequently, because Florida law "preclude[s] a finding that a partnership or joint venture exists where any factor is missing[,]" summary judgment for Dr. Wright should be granted on every one of plaintiffs' claims that are based on this purported oral partnership agreement. *Williams*, 314 F.3d at 1276.

> **B.** **Even If There Were Any Evidence of an Oral Partnership Agreement, Claims on it Would Be Time-Barred And Unenforceable Under The Statute Of Frauds**

Plaintiffs also alleged that the purported oral partnership lasted for three years, from 2008 through 2011. SAC ¶ 67. Any claims on this purported partnership have been time barred since 2015, three years before plaintiffs filed this action, and there is not and never will be any basis for arguing that this limitations period could be tolled or disregarded.

But even if this purported claim were timely, and even if plaintiffs had legally sufficient evidence of an oral partnership agreement (instead of none), such claim would be unenforceable under Florida's Statute of Frauds, because plaintiffs alleged that the oral agreement was not intended to be performed within one year. *See* SAC ¶ 67 (alleging oral partnership to mine bitcoin for three years, from 2008-2011); Fla. Stat. § 725.01 ("No action shall be brought . . . upon any agreement that is not to be performed within the space of 1 year from the making thereof . . . ."); *Saeme v. Levine*, 502 F. App'x 849, 853 (11th Cir. 2012) (oral partnership agreement contemplating "a profitable business venture" violated the statute of frauds).

The Statute of Frauds was first enacted in England in 1677 to stem a tide of lawsuits over purported oral contracts after the English Civil War. *See, e.g.,* https://legaldictionary.net/statute-of-frauds/, last accessed on May 7, 2020. "Florida's Statute of Frauds is a substantial copy of the English statute entitled, 'A Statute for the Prevention of Frauds and Perjuries,' enacted by the English Parliament in 1676." *DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So. 3d 85, 92 (Fla. 2013). Plaintiffs' purported oral partnership well illustrates why the Statute of Frauds was long ago adopted by Florida and other States. "[T]he statute of frauds renders unenforceable those contracts where it is apparent, from the purpose of the contract and the surrounding circumstances, that the understanding of the parties was that the agreement was not to be performed within a year from the time it was made." *Chernys v. Standard Pac. of S. Fla., G.P.*

*Inc.*, 2010 WL 11504280, at *4 (S.D. Fla. 2010); *Roberts v. Stutman*, 2011 WL 13225074, at *3 (S.D. Fla. 2011); *Hertz v. Salman*, 718 So. 2d 942 (Fla. 3d DCA 1998); *Khawly v. Reboul,* 488 So. 2d 856 (Fla. 3d DCA 1986). Plaintiffs' purported three-year oral partnership agreement is unenforceable as a matter of law, and summary judgment on claims arising is called for.

**3.      Fla. Stat. § 688.08 Displaces Plaintiffs' Common-Law Claim Same Basis as Their Dismissed Trade Secret Claims**

Under Fla. Stat. § 688.08, all state-law claims based on misappropriation of trade secrets are displaced or preempted by Florida's Uniform Trade Secret Act, Fla. Stat. § 688.01, *et seq*. ("FUTSA"). Fla. Stat. § 688.08 (FUTSA "displace[s] conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret."); *Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329, 1335 (S.D. Fla. 2002) (Fla. Stat. § 688.08 "displace[s] conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.").

"[A]s a general proposition[,] other torts involving the same underlying factual allegations as a claim for trade secret misappropriation will be preempted by FUTSA." *Flagstone Island Gardens, LLC v. Ser*, 2011 WL 13223685, at *6 (S.D. Fla. 2011) (citing *New Lenox Indus., Inc. v. Fenton*, 510 F.Supp.2d 893, 908 (M.D. Fla. 2007)); *Audiology Distribution, LLC v. Simmons*, 2014 WL 7672536, at *9 (M.D. Fla. 2014) ("In other words, 'other torts involving the same underlying factual allegations as a claim for trade secret misappropriation will be preempted by FUTSA.'") (citing *Am. Honda Motor Co. v. Motorcycle Info. Network Inc.*, 390 F. Supp. 2d 1170, 1180-81 (M.D. Fla. 2005)); *Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329, 1335 (S.D. Fla. 2002) (applying Fla. Stat. § 688.08 and dismissing state-law unfair competition claim because plaintiff "has not identified any material distinction between the wrongdoing alleged in the trade secret claim and that alleged in the unfair competition claim."); *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 345 F. Supp. 3d 1207, 1238 (E.D. Cal. 2018) (California's uniform trade secret act, which is identical to Florida's, "will not preempt non-trade secret related civil claims if the civil claims do not *share a common nucleus of operative facts* with the CUTSA misappropriation claim (emphasis added).

Plaintiffs' claims for misappropriation of trade secrets were dismissed with prejudice as time-barred. Dismissal Order at 31-33. The dismissed trade secret claims have the "same underlying factual allegations" as the remaining common-law claims, and all are based on the

theory that Dr. Wright forged three contracts that were a basis for the Australian judgments. SAC
¶¶ 117-131. After many months of discovery, plaintiffs have not asserted misappropriation of
any purported intellectual property other than "blockchain based technologies and smart
contracts." SMF ¶ 37. This is the same property as plaintiffs' purported trade secrets, which they
alleged were "blockchain based technologies and smart contracts." SAC ¶ 179 ("These trade
secrets are generally described as programs, methods, techniques, and processes relating to
blockchain based technologies and smart contracts."); *Id.* ¶ 187 ("As evidence of the substantial
economic value relating to these trade secrets, Craig has used these trade secrets to develop new
intellectual property and assets, some of which have resulted in the filing of new patents, through
his work at nChain."). The purported trade secrets are the purported intellectual property. *Id.* at
40 (Plaintiffs' trade-secret claim "demand[s] judgment against Defendant for the value of the
*wrongfully taken intellectual property*, together with court costs, interest, attorney's fees, and any
other relief this Court deems just and proper.") (emphasis added).

Because plaintiffs' purported trade secrets are their purported intellectual property,
FUTSA pre-empts their remaining claims—except their claim for civil theft[16]—because they are
based on the "same underlying factual allegations," and there are no "material distinctions
between the allegations comprising the additional torts and the allegations supporting the
FUTSA claim." *Flagstone*, 2011 WL 13223685, at *6. In arguing that their claims belonged in
federal court, plaintiffs expressly asserted that their trade secret allegations share a common
nucleus of operative fact with their remaining claims. *See* D.E. 159 at 11 ("The state claims are
all closely related to the [Defend Trade Secrets Act] claim and are part of the same 'case or
controversy,' arising from the same '*common nucleus of operative fact*.'") (emphasis added).

This admission requires granting summary judgment on the other claims because "a
common nucleus of operative facts" is the very standard applied to find preemption in *Deerpoint,*
345 F. Supp. 3d at 1238. In short, plaintiffs' non-trade-secret claims are displaced by FUTSA
because they share a common nucleus of operative fact with their FUTSA claim. Moreover,
plaintiffs are judicially estopped from changing their position. *E.g., New Hampshire v. Maine*,
532 U.S. 742, 749 (2001) ("[J]udicial estoppel[] 'generally prevents a party from prevailing in

---

[16] FUTSA does not displace statutory claims.

21

one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'") (citing *Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8 (2000)).

**4.      The Only Record Evidence About W&K's Membership Establishes That This Court Lacks Subject-Matter Jurisdiction**

In the August 15, 2019 Order on Dr. Wright's motion for judgment on the pleadings [D.E. 265] ("August 15th Order"), the Court held that it had subject-matter jurisdiction over plaintiffs' state-law claims because complete diversity exists, even though (1) plaintiffs have ***no evidence*** of W&K's membership, (2) plaintiffs alleged in the SAC that they don't know who the members of W&K are, (3) Dr. Wright testified that his ex-wife is a member of W&K, and (4) D.K.'s emails to Dr. Wright and his ex-wife suggest that W&K has members that plaintiffs did not allege. The August 15th Order incorrectly held that Dr. Wright had "failed to present any credible evidence showing that any of the parties he suggests are members of W&K." *Id*. at 5.

As a threshold matter, the August 15th Order did not apply Eleventh Circuit precedent, which holds that the citizenship of a limited liability company ("LLC") is the citizenship of each of its members, and that each must be diverse from parties on the other side of the action, or diversity is lacking. *E.g., Flintlock Const. Servs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1224 (11th Cir. 2013) (citing *Rolling Greens MHP, LP v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004)); *Trutie v. Republic Nat. Distrib. Co.,* 718 F. Supp. 2d 1350, 1352 (S.D. Fla. 2010) (remanding case*, sua sponte*, because removing LLC defendant failed to list its members citizenship and demonstrate that they were diverse from plaintiff); *Tvestments, Ltd v. L.K. Station Grp., LLC*, 2008 WL 4613070, at *1 (S.D. Fla. 2008) (dismissing complaint, *sua sponte*, because plaintiff failed to allege the citizenship of members of LLC defendants); *Hurok Marble LLC v. Akar*, 2017 WL 7794327, at *1 (S.D. Fla. 2017) (dismissing complaint, *sua sponte*, because of the "unknown permanent residence status, or citizenship, of one of the Plaintiff LLC's members"); *Tilkin & Cagen, Inc. v. United Metal Receptacle Corp.*, 2008 WL 2339825, at *1 (N.D. Ill. 2008) ("It is certainly time that complaints such as the present one should trigger an automatic dismissal when counsel for a plaintiff in a diversity action clearly fails to carry the plaintiff's burden of establishing subject matter jurisdiction where any party . . . is a limited liability company.").

Since the August 15th Order was entered, the parties have deposed Dr. Wright's ex-wife, Ms. Lynn Wright. Her testimony has indicia of reliability because she has no reason to lie for Dr.

Wright. In fact, as her testimony reflects, she and Dr. Wright have (and had) a non-existent relationship, with little to no communication. SMF ¶ 39. Further, her testimony is corroborated by other documents, including records from the Department of Homeland Security ("DHS") and her divorce decree with Dr. Wright. *Id*. ¶¶ 40-41. In her deposition, she explained how and why W&K was formed, and testified that she has an ownership interest in the company. *Id*.

Ms. Wright knew that D.K and Dr. Wright were friends. She had met D.K. when she and Dr. Wright visited Orlando, Florida for a cybersecurity conference. SMF ¶ 42. In 2011, Ms. Wright suggested to Dr. Wright that D.K. help in submitting W&K's proposal to DHS, believing that because D.K. was a U.S. Citizen and a veteran, it would increase W&K's chances of winning the DHS contract. *Id*. ¶ 42. D.K. agreed to submit the proposal, and in accord with his emails to Ms. Wright and Dr. Wright, D.E. 157-2 at 2-3, formed W&K together with Ms. Wright, so that a U.S. citizen would submit the proposal. *Id*. ¶ 42. DHS ultimately did not accept the proposal. *Id*. Thereafter, there was no need to file an annual report with Florida's Division of Corporations ***because W&K had no other business purpose***, which is why W&K (1) never filed an annual report in D.K.'s lifetime, and (2) was, therefore, administratively dissolved. *Id*. ¶ 43.

Further evidencing Ms. Wright's membership interest in W&K is her divorce decree. SMF ¶ 40. That agreement expressly states that an ownership interest in W&K was awarded to Ms. Wright, and not to Dr. Wright. *Id*.

The Court should find that complete diversity does not exist because the only record evidence, which is uncontroverted, establishes that W&K has foreign members. *See Magdalena v. Toyota Motor Corp*., 2013 WL 12092086, at *3 (S.D. Fla. 2013) ("It is well-settled, however, that Section 1332 does not confer subject-matter jurisdiction in actions between one alien party and another alien party.") (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 580 n.2 (1999)). After many months of discovery, Plaintiffs' only purported "evidence" of W&K's members is its articles of incorporation, which evidences nothing, because "Florida law does not require LLCs to publicly disclose their members." *Commerce & Indus. Ins. Co. v. S. Constr. Labor Servs., LLC*, 2017 WL 10058585, at *1 (M.D. Fla. 2017) (citing Fla. Stat. § 605.0201).

Moreover, Florida' Division of Corporations affirmatively instructs LLCs ***to not list their members in their articles of incorporation***.[17]

This Court should revisit the question whether plaintiffs have met their burden of establishing complete diversity, because "[w]hen a federal court acts outside its statutory subject-matter jurisdiction, it violates the fundamental constitutional precept of limited federal power." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). We submit that plaintiffs had it right in the SAC—they do not know W&K's membership, SAC ¶ 70. Therefore, this case should be dismissed because jurisdiction may not be presumed. It must be proven, plaintiffs have not come close to proving diversity of citizenship, and all the record evidence points one way, namely that diversity is lacking. *See RG Martin Inv., LLC v. Virtual Tech. Licensing, LLC*, 2017 WL 7792564, at *1 (S.D. Fla. 2017) (Bloom, J.) ("It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.").

**5.      I.K. Lacked Authority to File This Action on Behalf of W&K**

As demonstrated above, Ms. Wright has an ownership interest in W&K. However, I.K. never reached out to her before he reinstated W&K and filed this action, and therefore, never obtained her consent to take any action on behalf of W&K. Absent Ms. Wright's consent, I.K. lacked authority to file any lawsuit in W&K's name or on its behalf. Fla. Stat. § 605.04073(2)(d) (in a member-managed company "the affirmative vote or consent of a majority-in-interest of the members is required to undertake an act, whether within or outside the ordinary course of the company's activities and affairs . . . ."). Because I.K. lacked authority to file this action on behalf of W&K, his acts are *ultra vires* and require dismissal of W&K. *E.g., Beau Monde, Inc. v. Bramson*, 446 So. 2d 164, 167 (Fla. 2d DCA 1984); *In re Arista Imaging of N. Miami, LLC,* 2020 WL 609613, at *9 (Bankr. S.D. Fla. 2020) (applying bankruptcy law and dismissing action where member lacked authority to petition for bankruptcy on behalf of LLC).

**6.      The Undisputed Facts Warrant Summary Judgment on Plaintiffs' Fraud Claims**

The SAC alleges counts for purported fraud (Count VII) and for purported constructive fraud (Count VIII). Summary judgment on each count is appropriate, as we demonstrate next.

---

[17] The Department of Corporations' Instructions for Articles of Organization (FL LLC) expressly states: "[d]o not list members." https://dos.myflorida.com/sunbiz/start-business/efile/fl-llc/instructions/ (last accessed March 13, 2020)).

### A.        Plaintiffs' Common-Law Fraud Claim

To survive summary judgment on their common-law fraud claim, plaintiffs must provide

record evidence of the following elements:

> (1) a false statement of fact; (2) known by the defendant to be false at the time it
> was made; (3) made for the purpose of inducing . . . [that party] to act in reliance
> thereon; (4) action by the plaintiff in reliance on the correctness of the
> representations; and (5) resulting damage.

*Biscayne Cove Condo. Ass'n v. QBE Ins. Corp.*, 971 F. Supp. 2d 1121, 1145 (S.D. Fla. 2013)

(citing *Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, 750 F.Supp.2d 1346, 1349  (S.D. Fla.

2010)). Fraud also requires proof "that the plaintiffs had a right to rely on the representations."

*Pettinelli v. Danzig*, 722 F.2d 706, 709 (11th Cir. 1984) (citing *Columbus Hotel Corp. v. Hotel

Mgmt. Co.*, 156 So. 893 (1934)). Finally, fraud also "must be based on material fact, not on a

promise or a prediction of future events." *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1231,

1237 (S.D. Fla. 2011) (citing *First Union v. Milos*, 717 F. Supp. 1519, 1525 (S.D. Fla. 1989)).

Summary judgment on plaintiffs' fraud claims is appropriate because (1) Dr. Wright's

alleged misstatements are not promises but a "prediction of future events," *Zarrella*, 755 F.

Supp. 2d at 1237, (2) plaintiffs never had a "right to rely on the [alleged] representations,"

*Pettinelli*, 722 F.2d at 709, and (3) the alleged statements did not induce plaintiffs to do anything

that caused them damages, *Biscayne Cove*, 971 F. Supp. 2d at 1145.

#### (1)        Dr. Wright's Alleged Statements Regarding Possible Future Acts Could Not Constitute Actionable Fraud as a Matter of Law

Plaintiffs specifically allege (and thereby concede) that some of Dr. Wright's alleged

statements were "promised future action," SAC ¶ 202, including a purported promise that D.K.'s

Estate "would be able to sell its shares in Coin-Exch," Dr. Wright allegedly promised that he

would "help the [E]state recover what Dave owned," and that "the [E]state could participate in

Coin-Exch," *id*. These statements cannot support a fraud claim because "[f]raud cannot consist

of mere broken promises, unfilled predictions or erroneous conjecture as to future events." *Next

Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1027 (11th Cir. 2003); *Plantation Key

Developers, Inc. v. Colonial Mortg. Co. of Indiana*, 589 F.2d 164, 172 (5th Cir. 1979)

("Although such action is not condoned, a mere broken promise does not constitute fraud.").

As a matter of law, plaintiffs cannot rely on Dr. Wright's alleged statements regarding the

future value of shares of a start-up company, whether those shares could be sold in the future, or

whether the Estate could in the future participate in a start-up company, because they were mere hopeful predictions of possible future events. *E.g., Zarrella*, 755 F. Supp. 2d at 1237. Dr. Wright has no crystal ball to see into the future, and W&K's failure to obtain the DHS contract meant that these alleged predictions of future events would not come to pass, because W&K had no other business. Likewise, he cannot predict the future success of Coin-Exch.

Even if these alleged statements were not merely hopeful predictions, they would amount to "mere puffery" that also is not actionable as a matter of law. *See, e.g., IBEW Local 595 Pension & Money Purchase Pension Plans v. ADT Corp.*, 660 F. App'x 850, 857 (11th Cir. 2016) (defendants' statements that a stock repurchase plan was "thoughtful," "effective," and "optimal," are "mere puffery" and not actionable fraud) (citing *Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1029 (11th Cir. 2003) (characterizing a comment regarding "strong performance" as nonactionable mere puffery)).

### (2)   *Plaintiffs Did Not Rely, and Had No Right to Rely, on Any of Dr. Wright's Alleged Statements*

Plaintiffs allege that they relied on Dr. Wright's alleged statements in the following ways: (1) they did not challenge his legal claims in Australia; (2) they spent time and resources reviewing fraudulent documents; (3) they were delayed in uncovering Dr. Wright's alleged fraud and bringing a lawsuit; and (4) they did not secure the bitcoin and intellectual property that they purportedly owned. SAC ¶ 204. Notably, when confronted with his allegations of fraud, I.K. testified that he didn't know how anything Dr. Wright said or did induced him to take any actions. SMF ¶ 46. We shall now demonstrate why, as a matter of law, plaintiffs had no right to rely on any of these alleged statements. *See Pettinelli*, 722 F.2d at 709.

*First*, plaintiffs' claim that Dr. Wright's statements caused them to not challenge his legal claims in the Australian Lawsuits has a fundamental, showstopping, temporal deficiency. The Australian court indisputably perfected service of process on W&K on October 10, 2013. SMF ¶ 35. The judgment was entered in November 2013. D.E. 83 at ¶ 130. Dr. Wright first contacted plaintiffs three months later, in February 2014. *Id*. ¶ 44. ***Nothing Dr. Wright might have said in February could have induced plaintiffs to not appear in the Australian lawsuits four months earlier.*** More than six years later, plaintiffs have never challenged the Australian lawsuits where the law requires them to be challenged, in the Australian court that rendered them.

Further, I.K. already had counsel when Dr. Wright first contacted him in February 2014. He was represented by Joseph Karp, Esq., a seasoned lawyer with more than 40 years of

experience. *Id.* ¶ 47. Mr. Karp even sat in on calls between his client, I.K., and Dr. Wright, and I.K. confided in Mr. Karp regarding those calls and Dr. Wright. *Id.* ¶¶ 48-49. In these circumstances, and even if their supposed reliance on alleged statements made three months after the Australian lawsuits ended weren't impossible as a matter of law, plaintiffs cannot blame anything Dr. Wright supposedly said for their failure to challenge the Australian judgments when they were rendered, (1) because plaintiffs had counsel, and (2) no confidential relationship existed or could have existed in February 2014, when Dr. Wright and I.K. corresponded and spoke for the ***first time***. *See Fuller*, 68 So. 2d at 178 (Fla. 1953) (There was no fraud where plaintiff "was represented by an attorney of her own choosing[,]" and "[n]o confidential relationship existed between [the parties]," leaving plaintiff with "no right to rely upon her husband to disclose anything to her with reference to his property or business transactions.") (citing *Columbus Hotel*, 116 Fla. at 156).

Second, as for the three contracts that plaintiffs alleged were forged, they cannot "rely" on Dr. Wright's purported statements, because I.K. questioned those contracts the very first time he saw them. SMF ¶ 45; *see Moriber v. Dreiling*, 194 So. 3d 369, 374 (Fla. 3d DCA 2016) ("There can be no ground for complaint against representations where the hearer lacked the right to rely thereon, ***because he had reason to doubt the truth of the representation***, as where . . . a [representor] . . . was obviously hostile to the hearer and interested in misleading him.") (citing *Columbus Hotel*, 116 Fla. at 156) (emphasis added). Plaintiffs already were in an adversarial relationship with Dr. Wright when he supposedly made the alleged statements in February 2014. This is conclusively demonstrated by plaintiffs' withholding production of documents created in February 2014, asserting that they were "work product" ***made in anticipation of litigation***. *Id.* ¶ 50. For more than a hundred years, Florida law has been clear that a party may not "rely" on an adversary's statements as a matter of law.

Third, plaintiffs allege that because of Dr. Wright's statements, they failed to secure the bitcoin and intellectual property they purportedly owned. SAC ¶ 204. This is impossible. As noted above, the first such statements (1) were made ***ten months after*** D.K. died in February 2013, and consisted of Dr. Wright's advising I.K. and his father that D.K might have had a significant amount of bitcoin, and that they ***should preserve*** his electronic devices so as to not lose access to it. SMF ¶ 44. Moreover, plaintiff I.K. admits that months before Dr. Wright first contacted him in February 2014, ***he already had destroyed*** D.K.'s work papers and re-formatted

his hard drives, SMF ¶ 25, despite D.K.'s purportedly having told him in 2009 that he was working on digital currency that would be bigger than Facebook. Further, even after Dr. Wright contacted him, plaintiff I.K. continued to overwrite data on D.K.'s devices until 2019. *Id.* ¶ 26.

Finally, as for D.K.'s devices that plaintiff I.K. did not destroy or overwrite, Dr. Wright recommended that he give them to D.K.'s close friends and business partners, Messrs. Paige and Conrad, because they are computer forensic experts who could help preserve and recover data from the devices. SMF ¶ 44. The record in this case conclusively shows that plaintiff I.K. did not rely on any of these statements, because he never did ***anything*** Dr. Wright suggested he do, and never gave D.K.'s devices to a computer professional to recover any data from them. *Id.* ¶ 27.

(3) *Even If Plaintiffs Had Evidence of Actionable Fraud, And Even If They Had A Right to Rely on Dr. Wright's Alleged Statements, Their Purported Reliance Did Not Cause Damages*

As for damages, plaintiffs allege: (1) a continuing conversion and misappropriation of their bitcoin, forked assets, trade secrets, and intellectual property (***none of which they can identify*** after extensive discovery); (2) the loss of time and resources spent on voluntarily talking to the ATO; (3) the Australian court's judgments against W&K (which plaintiffs have never challenged and were entered after W&K indisputably was served in the Australian Lawsuits)[18]; and (4) an inability to pursue unidentified, speculative business opportunities because they didn't have access to the unidentified assets. SAC ¶ 205.

Plaintiffs have no evidence of actual damages resulting from anything Dr. Wright said, which warrants summary judgment. "It is fundamental that actual damages and the measure of those damages are essential to establishing a claim of fraud[,]" and "[w]ithout proof of actual damage the fraud is not actionable." *Caledonian Bank & Tr. Ltd. v. Fifth Third Bank*, 2015 WL 5542544, at *3 (M.D. Fla. 2015) (citing *Morgan Stanley & Co. v. Coleman (Parent) Holdings Inc.*, 955 So.2d 1124, 1132 (Fla. 4th DCA 2007)). None of plaintiffs' alleged damages were even connected to, much less proximately caused by, any of Dr. Wright's purported statements, which compels entry of summary judgment.

---

[18] This assertion makes no sense. The mere entry of a judgment in a prior action never can itself amount to "damages." This is mere word-mongering gibberish, aimed at covering up plaintiffs' total lack of diligence in protecting their purported rights ***after being timely served with process*** in the Australian Lawsuits, in which no one prevented them from appearing, and then sitting on their hands for years before commencing this shakedown.

*First*, plaintiffs' allegations of "continuing conversion and misappropriation of their bitcoin, forked assets, trade secrets, and intellectual property," and their willful blindness and inaction in the Australian Lawsuits are not, and cannot be, connected to anything Dr. Wright allegedly said. This purported basis for plaintiffs' trade secret and conversion claims has nothing to do with defendant's statements. Indeed, the alleged theft or conversion of trade secrets and bitcoin occurred, according to plaintiffs, in November 2013 with the entry of the Australian Judgments. SAC ¶¶ 117-131. Dr. Wright first spoke to plaintiffs in February 2014, ***three months after*** the alleged conversion. SMF ¶ 44. As a matter of law and logic, plaintiffs' indolence and complete failure to protect their purported rights in November 2013 could not have been caused by Dr. Wright's statements in February 2014.

*Second*, the evidence cannot support plaintiffs' claim that their "damages" could include the purported time and resources they spent ***voluntarily*** talking to the ATO. SAC ¶ 205. The key word here is "voluntary," because their volunteering to talk to the ATO was not caused by anything Dr. Wright purportedly said. Nothing Dr. Wright said to plaintiffs "induced" them to voluntarily reach out to, and become pen pals with, the ATO.

*Third*, plaintiffs' claim of damages for loss of unspecified business opportunities is (1) wholly unconnected to anything Dr. Wright purportedly said, and (2) too speculative as a matter of law. These plaintiffs had no established business doing any of the things they claim they wanted to do. But even where a plaintiff actually has an established business, "[u]nder Florida law, '[t]he general rule is that anticipated profits of a commercial business are too speculative and dependent upon changing circumstances to warrant a judgment for their loss.'" *Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 432 F. Supp. 2d 1319, 1339 (S.D. Fla. 2006) (11th Cir. 2008) (collecting cases). Here, of course, we're not dealing with an established business, merely unidentified, hypothetical "business opportunities" that plaintiffs have wholly failed to identify after more than two years of litigation.

### B.   *Plaintiffs' Constructive Fraud Claim*

To survive summary judgment on their constructive fraud claim, plaintiffs must provide evidence of "some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005). "Constructive fraud will not lie where the parties are dealing at arms-length because there is no duty imposed on either party

to protect or benefit the other." *Id.* Finally, "[t]he fact that one party places trust or confidence in the other does not create a confidential relationship in the absence of some recognition, acceptance or undertaking of the duties of a fiduciary on the part of the other party." *Id.*

There is not even a scintilla of evidence suggesting that Dr. Wright was a fiduciary to plaintiffs. All the evidence points in the opposite direction and demonstrates that an adversarial relationship existed when the parties first communicated in February 2014. SMF ¶ 45 (plaintiff I.K.'s April 23, 2014 email questioning defendant's actions). Moreover, as demonstrated above, plaintiff I.K. already had litigation counsel at the time of his earliest communications with Dr. Wright, and plaintiffs' privilege log asserts work product in February 2014, when those first communications occurred. As demonstrated above, these were arms-length communications, where plaintiffs already had counsel and already were contemplating litigation.

Similarly, there is not and never will be any evidence that plaintiff I.K. was the "weaker party." He was represented by a seasoned litigator during the entire time that he communicated with Dr. Wright. *E.g., White Const. Co. v. Martin Marietta Materials, Inc.*, 633 F. Supp. 2d 1302, 1324-25 (M.D. Fla. 2009) (There was no evidence that plaintiffs were the "weaker parties" where discussions "were conducted at arms-length, with each company utilizing the advice of its own legal counsel.") (granting defendant's motion for summary judgment).

## CONCLUSION

For all the foregoing good and sufficient reasons, Dr. Wright respectfully requests that the Court grant this motion for summary judgment.

Respectfully submitted,

RIVERO MESTRE LLP
*Attorneys for Dr. Craig Wright*
2525 Ponce de Leon Boulevard, Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: arolnick@riveromestre.com
Email amcgovern@riveomestre.com
Email bpaschal@riveromestre.com
Email: receptionist@riveromestre.com

By: s/ Andres Rivero
ANDRES RIVERO
Florida Bar No. 613819
AMANDA MCGOVERN
Florida Bar No. 964263
ALAN H. ROLNICK
Florida Bar No. 715085
BRYAN L. PASCHAL
Florida Bar No. 091576

## CERTIFICATE OF SERVICE

I certify that on May 8, 2020, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record either by transmission of Notices of Electronic Filing generated by CM/ECF or by U.S. Mail.

_ /s/ Bryan L. Paschal _____
BRYAN L. PASCHAL

31