**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9:18-cv-80176**

IRA KLEIMAN,
as personal representative of
the estate of David Kleiman,
and W&K INFO DEFENSE RESEARCH,
LLC,

      Plaintiffs,

v.

CRAIG WRIGHT,

      Defendant.
_____/

**DR. WRIGHT'S STATEMENT OF MATERIAL
FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## LIST OF EXHBITS[1]

| Exhibit Letter or Docket Entry | Exhibit |
|---|---|
| **D.E. 83-24** | I. Kleiman's email to C. Wright, dated April 23, 2014 |
| **Exhibit A** | Patrick Paige Deposition Transcript |
| **Exhibit B** | Carter Conrad Deposition Transcript |
| **Exhibit C** | Kimon Andreou Deposition Transcript |
| **Exhibit D** | Kursten Karr Declaration |
| **Exhibit E** | Kaleb Jones Declaration |
| **Exhibit F** | David Kahurcik Deposition Transcript |
| **Exhibit G** | Wells Fargo Foreclosure Complaint |
| **Exhibit H** | Dave Kleiman Credit Report |
| **Exhibit I** | William Nicholson Expert Report |
| **Exhibit J** | City of Lake Worth's Office of Human Resources/Risk Management Memorandum |
| **Exhibit K** | Kevin Madura Expert Report |
| **Exhibit L** | Dave Kleiman Expert Declaration |
| **Exhibit M** | Ira Kleiman January 10, 2020 Deposition Transcript |
| **Exhibit N** | Ira Kleiman April 8, 2019 Deposition Transcript |
| **Exhibit O** | Nicholas Chambers Expert Report |
| **Exhibit P** | D. Kleiman's email to I. Kleiman and others, dated October 9, 2010 |

---

[1] As required by the Scheduling Order, Dr. Wright will submit an index of the exhibits with their respective docket entries.

| **Exhibit Q** | Lynn Wright Deposition Transcript |
| --- | --- |
| **Exhibit R** | Joseph Karp Deposition Transcript |
| **Exhibit S** | Plaintiffs' Privilege Log |

## STATEMENT OF FACTS

### A.   *The Testimony of Those Closest To Dave Kleiman*

1.   Mr. Patrick Paige was Mr. Dave Kleiman's ("D.K.") closest friend. P. Paige Depo. Tr. 37:6-11, attached as **Exhibit A**. Mr. Paige trained D.K. as a police officer. *Id*. at 8:2-12. They were business partners in a company called Computer Forensics LLC, up until D.K.'s death. *Id*. at 35:13-23. They also spoke nearly every day. *Id.* at 11:20-25.

2.   Mr. Paige testified that D.K. never said (1) anything about bitcoin, (2) that he owned bitcoin, (3) that he was involved in creating bitcoin, or (4) that Dr. Wright was his business partner. **Ex. A** at 12:1-7.

3.   Mr. Carter Conrad was a close friend of D.K. and his business partner in Computer Forensics LLC. C. Conrad Depo. Tr. 8:22-25; 9:14-11:6, attached as **Exhibit B**. They spoke daily or at least every other day. *Id*. at 8:22-9:1.

4.   Mr. Conrad testified that D.K. never said (1) anything about bitcoin, (2) that he owned bitcoin, (3) that he was involved in creating bitcoin or bitcoin-related intellectual property, or (4) that Dr. Wright was his business partner. *Id*. at 14:10-12; 16: 17-21; 17:21-25.

5.   Mr. Kimon Andreou was a close friend of D.K. K. Andreou Depo. Tr. 7:14-19, attached as **Exhibit C**. He visited D.K. almost every day while he resided in the VA hospital from 2011 through 2013. *Id*. at 11:20-12:-25.

6.   Mr. Andreou recalls D.K. telling him that he was not close with Ira Kleiman ("I.K."). *Id*. at 21:14-21.

7.   Mr. Andreou testified that D.K. never said (1) that he owned bitcoin, (2) that he was involved in creating bitcoin or bitcoin related intellectual property, or (3) that Dr. Wright

1

was his business partner. *Id*. at 19:20-21:3. Mr. Andreou also testified that D.K. only spoke highly of Dr. Wright. *Id*.

8. Ms. Kursten Karr was D.K. fiancée. K. Karr Decl. ¶ 2, attached as **Exhibit D**. She lived with him from around 2001 through 2007 or 2008. *Id*. ¶ 2. They kept in touch up until D.K.'s death. *Id*.

9. Ms. Karr testified that D.K. never said anything bitcoin or cryptocurrency. **Ex. D** ¶ 3. She also testified that D.K. only described Dr. Wright as being a friend, and that he never described Dr. Wright as a business partner or mentioned that they had any business interests together. *Id*. ¶ 4.

10. Mr. Kaleb Jones is Ms. Karr's now-adult son. K. Jones Decl. ¶ 2, attached as **Exhibit E**. Mr. Jones lived with D.K. from 2001 through around 2010. *Id*. He considered D.K. as a father figure. *Id*. ¶ 3

11. Jones testified that D.K. never said anything bitcoin or that he had a business partnership with Dr. Wright. **Ex. E** ¶ 4

12. Mr. David Kahurcik was D.K.'s accountant. D. Kahurcik Depo Tr. 25:2-24, attached as **Exhibit F**. D.K. never told him anything about bitcoin. *Id*. at 29:10-11.

B. *Dave Was in Significant Financial Distress Years Before His Death*

13. In the years before his death, while he lived in the VA, D.K. could not afford to pay his mortgage; he stopped paying his mortgage on October 1, 2012. *See* Foreclosure Complaint ¶ 5, attached as **Exhibit G**.

14. He told Mr. Andreou that he was trying to save his home through a refinance. **Ex. C** at 103:20-23. He was never able to get the refinance to save his house from foreclosure. **Ex. B** at 18:7-14.

15. D.K. also could not pay his cell phone bill. **Ex. B** at 19:8-24. Although D.K. would not ask, his close friends Messrs. Paige and Conrad would pay his cell phone bill. *Id*. They paid D.K. cell phone bill did this because it was the only way D.K. was connected to the world while living in the VA. *Id*.

16. D.K.'s credit report shows that on April 22, 2013, just four days he was found dead, he applied for credit from Springleaf Financial. D. Kleiman Credit Report at 5, attached as **Exhibit H**. Springleaf Financial is a subprime lender that focuses a subprime, high-rate loans. Expert Report of W. Nicholson ¶¶ 10-13, attached as **Exhibit I**. He was likely denied that loan. *Id*. ¶ 13.

C. *Dave Had No Experience Working With Blockchain Technology, and He Never Held Himself Out To Know About the Technology*

17. D.K. never took any higher education courses related to information technology. K. Andreou Depo. Tr., Exhibit 1 at 3, attached as **Exhibit C**.

18. D.K. obtained certifications about computer forensics and security from reading books on those topics that came with a certification test. *See* City of Lake Worth's Office of Human Resources/Risk Management Memorandum, dated August 19, 2009, at 2, attached as **Exhibit J**.

19. However, none of D.K.'s certifications had anything to do with blockchain technology. *See* Expert Report of K. Madura ¶¶ 29-41, attached as **Exhibit K**.

20. Furthermore, D.K. was hired to serve as an expert witness in the field of computer forensics. D. Kleiman Decl. ¶ 1, attached as **Exhibit L**.

21. In an expert report that D.K. prepared just two weeks before his death, D.K. discusses his experience with computers, and he does not say that he has experience with blockchain technology or bitcoin. *Id*. ¶¶ 1, 2. D.K. prepared this declaration well after blockchain

3

and bitcoin had become mainstream in the information technology community. **Ex. C** at 64:23-65:4 (discussing that bitcoin became computer news in 2010 or 2011 when a person famously purchased Dominos' pizza with bitcoin).

D.  *Ira Kleiman Destroys Dave's Work Papers and Re-Formats His Hard Drives*

22.  Ira Kleiman ("I.K.") testified that D.K. was purportedly working on bitcoin as a secretive project. I. Kleiman January 10, 2020 Depo. Tr. at 22:19-20. However, I.K. also testified that during Thanksgiving dinner in 2009, D.K. purportedly told him that he was working with a wealthy foreign man to develop digital currency and that it would be "bigger than Facebook," then drew for him what would become the symbol for bitcoin. *Id.* at 14:8-22:5. attached as **Exhibit M**. No one else heard this statement. *Id.* at 96:21-97:21. I.K. testified that he believed D. Kleiman was working on bitcoin as a secretive project. *Id.* at 16:22-17:12.

23.  I.K. never asked D.K. about this statement again, even after bitcoin had gone mainstream. *Id.* at 22:6-23.

24.  After D.K.'s death, I.K. was appointed the personal representative of the Estate of D.K. Second Amended Complaint ("SAC") ¶ 1.

25.  Upon becoming the personal representative, Ira took possession of D.K.'s belongings, and threw away his work papers and re-formatted some of his hard drives. I. Kleiman April 8, 2019 Depo. Tr., Exhibit 6 at 1-2, attached as **Exhibit N**. I.K. discarded D.K.'s work papers and reformatted his hard drives without looking for any evidence of what D.K. allegedly had told him in 2009. *Id.* at 45:5-8.

26.  I.K. continued writing his own data to those hard drives for six years, until 2019. **Ex. N** at 53:6-54:17. I.K.'s re-formatting and continued use of D.K's devices caused whatever

4

data D.K had stored on them to be permanently deleted. See N. Chambers Expert Report ¶ 45, attached as **Exhibit O**.

27.    I.K. also came into possession of a few of D.K.'s hard drives, which he did not reformat. **Ex. M** at 55:16-25. He has made no attempt to access those drives.

28.    He also has made no attempt to access several of D.K.'s email accounts, which we just learned during his January 10, 2020 deposition. **Ex M.** at 76:5-77:15.

E.   *The Australian Court Notified Plaintiffs of The Australian Lawsuits*

29.    D.K. used a single mailbox for all of his business affairs and some of his personal affairs (the "Mailbox"). **Ex. B** at 26:3-9.

30.    The address for that Mailbox was 4371 North Lake Boulevard, Palm Beach, FL 33410. *Id.*

31.    I.K. was aware of this address even before D.K. died because D.K. placed the address on his emails' signature block. *See*, *e.g.*, D. Kleiman's email to I. Kleiman and others, dated October 9, 2010, attached as **Exhibit P**.

32.    W&K Info Defense Research LLC's members decided to list the Mailbox as its official mailing address. *See* W&K's Articles of Incorp. at D.E. 83-3 at 2-3.

33.    In the Australian lawsuits, which are referenced in the SAC ¶ 117, the Supreme Court of New South Wales sent a Notice of Listing of at least one those lawsuits to D.K. and W&K's mailing address. Exhibit 2 to C. Conrad's Depo. [Ex. B] at 2.

34.    Specifically, on September 3, 2013, the Supreme Court of New South Wales issued the Notice of Listing for the case styled *Craig Steven Wright v. W&K Info Defense Research LLC*, Case No. 2013/00245661. Exhibit 2 to C. Conrad's Depo. [Ex. B] at 1. The Notice of Listing stated that on October 30, 2013, at 9 a.m., the case would be "listed for

5

Directions" in the "Supreme Court-Civil, Supreme Court Sydney Court 9C Queens Square Sydney," and warned that "[i]f you do not appear at Court, this matter may be dealt with in your absence." *Id*. Finally, the Notice of Listing stated that "[l]isitng details for the cases are" available by, *inter alia*, an internet website link. *Id*.

35. D.K.'s business partner and close friend, Mr. Conrad, testified that he remembers receiving the Notice of Listing and marked the envelope as being received on October 10, 2013. **Ex. B**. at 25:20-26:17. I.K. knew that the Notice of Listing was received at W&K's mailing address before he filed this action. Exhibit 9 to P. Paige Depo. [Ex. A] at 1.

36. Notably, Mr. Paige communicated with I.K. and asked him to take over control over the Mailbox and pay for its renewal, but he declined to do so. Exhibit 11 to P. Paige Depo. [Ex. A] at 1-2.

F. *Plaintiffs' Intellectual Property*

37. Plaintiffs describe their intellectual property to include, *inter alia*, "[b]lockchain based technologies and the commercialization of [b]lockchain and smart contract system research." Exhibit 10 to I. Kleiman April 8, 2019 Depo. [Ex. N] at 7 (Interrogatory Response 7).

G. *Ms. Lynn Wright Testifies That She Has an Ownership Interest in W&K*

38. Ms. Lynn Wright is the ex-wife of Dr. Wright. L. Wright Depo. Tr. 9:4-5., attached as **Exhibit Q**.

39. She speaks with Dr. Wright very infrequently. **Ex. Q** at 44:-6-8.

40. Ms. Lynn Wright testified that she has an ownership interest in W&K, which is evidenced by her divorce decree. **Ex. Q** at 28:17-30:5; 98:1-12.

41. She explained that the purpose of W&K was to submit tenders to the Department of Homeland Security ("DHS"). **Ex. Q** at 16:1-18:21.

6

42. She met D.K. when she and Dr. Wright visited Orlando, Florida for a cyber security conference. **Ex. Q** at 16:17-19. D.K. was included in W&K so that the tenders would come from an American company, and because D.K. was a veteran. **Ex. Q** at 16:1-18:21. DHS denied the tenders *See* D.E. 83-21 at 4.

43. She didn't have any concerns about her ownership interest in W&K after the tenders to DHS were denied because she thought W&K was worthless at that point. **Ex. Q** at 29:13-25.

### H. There Was no "Fraud" When Dr. Wright Contacted Ira

44. On February 11, 2014, Dr. Wright contacted I.K.'s father and told him to secure D.K.'s devices, including bitcoin wallet files. SAC ¶ 133. I.K. began corresponding with Dr. Wright, shortly thereafter. *Id.* ¶ 134. Dr. Wright recommended that I.K. give D.K.'s devices to D.K.'s friends, Messrs. Paige and Conrad, because they are computer forensic experts who could help preserve and recover data from the devices. *See* I. Kleiman April 8, 2019 Depo. Tr., Exhibit 1 at 1-2, attached as **Exhibit N**.

45. Just a month after Dr. Wright told I.K. to preserve D.K.'s devices, as of April 23, 2014, I.K. began questioning Dr. Wright's actions. I. Kleiman's email to C. Wright at D.E. 83-24 at 20.

46. I.K. testified that he cannot tell how or when the purported "theft" occurred. **Exhibit M** at 156:12-159:6. I.K. also testified that he didn't know how anything Dr. Wright said or did induced him to take any actions. *Id.* at 164:18-19.

47. Mr. Joseph Karp, Esq. is a lawyer with more than 40 years of experience. J. Karp Depo. Tr. 5:14-19, attached as **Exhibit R**.

48. Mr. Karp represented I.K. during the time that he was representative of the estate and while I.K. spoke to Dr. Wright. **Ex. N**. at 78:13-24.

49. Mr. Karp sat in on calls that I.K. had with Dr. Wright. **Ex. R** at 70:22-71:2.

50. Plaintiffs have marked documents as work product made in the anticipation of litigation as early as February 2014. Plaintiffs' Privilege Log, attached as **Exhibit S**.[2]

---

[2] This is an excerpt of the relevant portion of plaintiffs' privilege log.