Patrick Paige
December 10, 2019

1                UNITED STATES DISTRICT COURT

2                SOUTHERN DISTRICT OF FLORIDA

3                 CASE NO. 9:18-cv-80176-BB/BR

4
    IRA KLEIMAN, as the personal representative
5   of the Estate of David Kleiman, and
    W&K Info Defense Research, LLC,
6
             Plaintiffs,
7
    -vs-
8
    CRAIG WRIGHT,
9
             Defendant.
10

11  * * * * * * * * * * * * * * * * * *

12  VIDEOTAPED DEPOSITION OF PATRICK PAIGE

13  DATE TAKEN: December 10, 2019

14  TIME: 11:07 a.m. - 12:45 p.m.

15  PLACE: 250 Australian Avenue

16  West Palm Beach, Florida 33401

17
    TAKEN BEFORE: RICK E. LEVY, RPR, FPR
18                  AND NOTARY PUBLIC

19

20  * * * * * * * * * * * * * * * * * *

21

22

23

24

25

Patrick Paige
December 10, 2019                                          2

```
 1    APPEARANCES:

 2    On behalf of the Plaintiff:

 3         KYLE ROCHE, ESQUIRE
           VEL FREEDMAN, ESQUIRE (via phone)
 4         ROCHE FREEDMAN, P.A.
           200 S. Biscayne Boulevard
 5         Suite 5500
           Miami, Florida 33131

 6

 7    On behalf of the Defendant:

 8         BRYAN PASCHAL, ESQUIRE
           ZALMAN KASS, ESQUIRE
 9         RIVERO MESTRE, P.A.
           2525 Ponce de Leon Boulevard
10         Suite 1000
           Coral Gables, Florida 33134

11

12    On behalf of the Witness:

13         BRUCE ZIMET, ESQUIRE
           LAW OFFICE OF BRUCE ZIMET, P.A.
14         250 North Australian Avenue
           Suite 1400
15         West Palm Beach, Florida 33401

16

17
      Also Present: Robert Doyle, The Videographer
18                   Ira Kleiman, via phone

19

20

21

22

23

24

25
```

Patrick Paige
December 10, 2019                         3

```
 1                       -  -  -
                       I N D E X
 2                       -  -  -

 3   WITNESS:        DIRECT     CROSS     REDIRECT    RECROSS
     PATRICK PAIGE
 4   BY MR. PASCHAL:    4                  49
     BY MR. ROCHE:               32                    54
 5


 6                       -  -  -
                   E X H I B I T S
 7                       -  -  -

 8
     NUMBER                              PAGE
 9   DEPOSITION EX. 1                    15
     DEPOSITION EX. 2                    19
10   DEPOSITION EX. 3                    22
     DEPOSITION EX. 4                    23
11   DEPOSITION EX. 5                    24
     DEPOSITION EX. 6                    26
12   DEPOSITION EX. 7                    28
     DEPOSITION EX. 8                    41
13   DEPOSITION EX. 9                    43
     DEPOSITION EX. 10                   45
14   DEPOSITION EX. 11                   49
     DEPOSITION EX. 12                   52
15

16

17

18

19

20

21

22

23

24

25
```

Patrick Paige
December 10, 2019                                    4

```
 1                        - - -
 2            THE VIDEOGRAPHER:  Good morning everyone.
 3       We're now on video record.  Today's date is
 4       December 10th 2019.  The time now is 11:07 a.m.
 5       Counsel, will you announce your appearances and the
 6       witness will be sworn in.
 7            MR. PASCHAL:  Bryan Paschal for Dr. Craig
 8       right.
 9            MR. KASS:  Zalman Kass for Dr. Craig Wright.
10            MR. ROCHE:  Kyle Roche for plaintiffs.
11            MR. ZIMET:  Bruce Zimet for the witness.
12            MR. PASCHAL:  Do we have people on the phone?
13            MR. ROCHE:  Can we have the people on the
14       phone announce themselves?
15            MR. FREEDMAN:  Vel Freedman for plaintiffs.
16            MR. KLEIMAN:  Ira Kleiman, plaintiff.
17            THE WITNESS:  Yes.
18                        - - -
19  Thereupon,
20                   (PATRICK PAIGE)
21                   having been first duly sworn or
22  affirmed, was examined and testified as follows:
23                   DIRECT EXAMINATION
24  BY MR. PASCHAL:
25       Q.   Could you please state your name for the
```

Patrick Paige
December 10, 2019                                    5

 1  record?
 2       A.   Patrick last name Paige, P-A-I-G-E.
 3       Q.   Mr. Paige, have you ever been deposed before?
 4       A.   Yes.
 5       Q.   How many times?
 6       A.   Many.
 7       Q.   So you understand how the deposition works?
 8       A.   Yes.
 9       Q.   So I'm not going to go over the basics.  Is
10  there any reason preventing you from giving full
11  complete testimony today?
12       A.   No.
13       Q.   Have you taken any medication that might alter
14  your testimony?
15       A.   No.
16       Q.   Mr. Paige, what is your profession?
17       A.   Computer forensic examiner.
18       Q.   Do you work for a company?
19       A.   Yes.  Computer Forensics, LLC.
20       Q.   Is that a company that you have with Conrad?
21       A.   Yes.
22       Q.   When was Computer Forensics, LLC formed?
23       A.   2012.
24       Q.   Was David Kleiman a part of that company?
25       A.   Yes.

Patrick Paige
December 10, 2019                                    6

1        Q.    What was your profession before?

2        A.    I was a detective with the Palm Beach County

3   Sheriff's Office.

4        Q.    How long were a detective for?

5        A.    About 11 years.  Maybe 12.  Total 26 years in

6   law enforcement.

7        Q.    Did you do something before law enforcement?

8        A.    That was a long time ago.  Probably getting

9   out of high school.  I worked at Winn Dixie.

10       Q.    What school did you attend?

11       A.    Boca Raton High.

12       Q.    Did you attend college?

13       A.    No.  Just some college classes.

14       Q.    Where did you take those classes at?

15       A.    Barry University.

16       Q.    Earlier when you said you've been deposed many

17  times was that as a law enforcement officer and as a --

18       A.    Both.

19       Q.    I was going to say also as an expert witness?

20       A.    Yes.

21       Q.    Do you hold any certifications?

22       A.    Yes.

23       Q.    What are they?

24       A.    ENCE, NK Certified Examiner.  Couple other

25  ones I just don't know off the top of my head.  SCERS is

1    another one, SCERS, Seize Computer Evidence Recovery

2    Specialist.

3        Q.   Do you recall about how many times you've been

4    certified as an expert witness?

5        A.   Dozens.

6        Q.   Are those cases in Florida?

7        A.   Florida, California, New York, Texas.  I don't

8    recall all of them offhand.

9        Q.   What does it mean to be a computer forensic

10   analyst?

11       A.   Basically it's the analyzing of data, computer

12   data on cell phones and computers and interpreting the

13   data.

14       Q.   In your cases have you ever been retained to

15   work on a case involving Bitcoin?

16       A.   Yes.

17       Q.   Could you tell me about that case.

18       A.   Crypsi went into receivership in Miami and the

19   law firm that handled the case the receiver hired our

20   company to assist them in recovering data in that case

21   and preserving data.

22       Q.   So you have experience recovering data related

23   to Bitcoin?

24       A.   Yes.

25       Q.   Mr. Paige, did you know David Kleiman?

Patrick Paige
December 10, 2019                              8

```
 1        A.   Yes.

 2        Q.   How did you know Mr. Kleiman?

 3        A.   First met him when I was a training officer --

 4   I was his training officer at the Palm Beach Sheriff's

 5   Office.

 6        Q.   Do you know what year that was?

 7        A.   That was in the '90s.

 8        Q.   What does it mean to be his training officer?

 9        A.   When you're a new recruit out of the academy

10   you're assigned a training officer to assist in your

11   training prior to being released on your own to patrol

12   the streets.

13        Q.   So you had to patrol with Mr. Kleiman during

14   that time?

15        A.   Yes, I taught him.  After he left the police

16   academy he is assigned a training officer.  I think at

17   that time it was 12 weeks where he spent two weeks with

18   different training officers prior to being released on

19   your own.

20        Q.   Was David a close friend of yours?

21        A.   Yes.

22        Q.   Was David a person that you would characterize

23   as being shy?

24        A.   No.

25        Q.   Would you characterize David as being timid?
```

Patrick Paige
December 10, 2019                                    9

```
 1        A.    No.
 2        Q.    If somebody stole something from David would
 3   he say something about it?
 4             MR. ROCHE:  Objection.
 5             THE WITNESS:  Most likely.
 6   BY MR. PASCHAL:
 7        Q.    Did David have health issues?
 8        A.    Yes.
 9        Q.    What were those issues?
10        A.    Ever since he was hit by a car and was
11   paralyzed in the '90s he was wheelchair bound and he had
12   continued health issues throughout his -- throughout his
13   hive after that.
14        Q.    Did those issues cause him to have to visit
15   the hospital?
16        A.    Yes.
17        Q.    On how many occasions?
18        A.    I don't recall offhand.  I have know several.
19        Q.    Were there any hospital admissions that were
20   long?
21        A.    Yes.
22        Q.    Do you know what years that would have been?
23        A.    That would have been up until the time he
24   passed away.  He was in the hospital, VA Hospital for
25   like over two years.
```

1       Q.   Where was the VA Hospital located?

2       A.   In Miami.

3       Q.   Was he ever in the West Palm hospital?

4       A.   Yes.

5       Q.   Do you remember what those hospitals looked

6   like?

7       A.   What they look like?

8       Q.   Yes.

9       A.   They were the VA Hospital.  It's here in West

10  Palm Beach.

11      Q.   Did you ever visit Dave in the hospital?

12      A.   Yes.

13      Q.   How frequently?

14      A.   Several times.

15      Q.   Do you know if Ira Kleiman ever visited Dave

16  in the hospital?

17      A.   No, I do not know.

18      Q.   Did Dave ever tell you that Ira Kleiman ever

19  visited him in the hospital?

20      A.   I don't recall.

21      Q.   Do you know Ira Kleiman?

22      A.   Yes.

23      Q.   Did Dave ever talk about Ira Kleiman?

24      A.   Not really.

25      Q.   What type of relationship did Dave and Ira

```
 1   Kleiman have?
 2        A.   I don't really know.
 3        Q.   Do you think Dave was close to Ira Kleiman?
 4        A.   He never mentioned him that much.  I know he
 5   mentioned that he was involved in computers but that was
 6   really that.  David generally kept to himself in his
 7   personal life.
 8        Q.   When David was a police officer -- back that
 9   up.  Did David ever tell you what was his profession
10   before he became a police officer?
11        A.   Yes.
12        Q.   What was that?
13        A.   He had mentioned he was a bouncer at a place
14   called Symbols in Delray Beach.  He also did computers,
15   freelance type work for computers, computer forensics
16   and network.  He worked for some networking jobs prior
17   to law enforcement.
18        Q.   So how often would you speak with David?
19        A.   I spoke to him a lot.
20        Q.   Did David talk to you -- what type of topics
21   would you talk about?
22        A.   There was times when I would talk to him every
23   morning basically.  He was close.  We were very close.
24   We would talk sometimes on a daily basis for weeks on
25   end.
```

Patrick Paige
December 10, 2019                                          12

```
 1          Q.   Did David ever tell you that he had a large
 2    amount of Bitcoin?
 3          A.   No.
 4          Q.   Did David ever mention Bitcoin to you?
 5          A.   No.
 6          Q.   Did David ever tell you that he had a
 7    partnership or a business partnership with Craig Wright?
 8          A.   No.
 9               MR. ROCHE:   Objection.
10    BY MR. PASCHAL:
11          Q.   Did he ever talk about Craig Wright?
12          A.   Not that I can recall.
13          Q.   Do you have knowledge of Dave's financial
14    situation?
15          A.   Yes.
16          Q.   How do you have knowledge of his financial
17    situation?
18          A.   Based on what he had told me while he was
19    alive.  He had been in the hospital for over two years.
20    So he was having problems paying his bills.
21          Q.   Do you recall what bills he was having
22    problems paying?
23          A.   I know for one at one time it was his cell
24    phone bill.  He needed assistance paying his cell phone
25    bill so I gave him money for that.
```

Patrick Paige
December 10, 2019                                    13

```
 1        Q.   Did you ever help him pay anything else?
 2        A.   I gave him money.  I don't know what he did
 3   with it.  I would assume it would be to pay bills.
 4        Q.   Do you have any knowledge of Ira Kleiman
 5   giving him money?
 6        A.   No.
 7        Q.   Were you aware that Dave's house was being
 8   foreclosed?
 9        A.   I had heard mention of it, yes.
10        Q.   Do you know the names of Dave's ex-wives?
11        A.   I know one was Maria.  That's the only one I'm
12   aware of.
13        Q.   Did any of his marriages end -- do you know
14   how any of his marriages ended?
15        A.   Yes.
16        Q.   How did that marriage end?
17        A.   The one with Maria ended with her having an
18   affair with a co-worker.
19        Q.   The co-worker of -- that Dave was --
20        A.   Co-worker of hers.
21        Q.   Of hers?
22        A.   Yes, hers.
23        Q.   Did David go to the media to talk about that?
24        A.   Did he what now?
25        Q.   Did he ever go to the media to talk about
```

Patrick Paige
December 10, 2019                          14

 1    that?

 2          A.    Not that I recall.

 3          Q.    Did you know the names of any of his

 4    girlfriends?

 5          A.    I had met one -- I met a few but the only one

 6    I can recall was Lineda.

 7          Q.    Did Dave have girlfriends live with him?

 8          A.    Yes.

 9          Q.    Do you recall her name?

10          A.    No, I do not.

11          Q.    Do you know how long that girlfriend lived

12    with Dave?

13          A.    No, I don't.

14          Q.    Did you know -- do you know that she had a

15    child live there as well?

16          A.    No.

17          MR. ROCHE:  Real quick Vel's having difficulty

18          hearing on this phone.  Do you mind if I use my

19          phone and just put it on speaker?

20          MR. PASCHAL:  No problem.  I don't know if it

21          is going to cause feedback.  I don't know.

22          MR. KASS:  Just try it.  See what happens.

23          MR. ROCHE:  Vel, why don't you put your phone

24          on mute and we'll see if my cell phone works

25          better.

```
 1              MR. ZIMET:  Do you want to hang up the other
 2       one?
 3              MR. ROCHE:  Ira is also on the line.
 4              MR. ZIMET:  No problem.  I didn't realize
 5       that.
 6              MR. PASCHAL:  Exhibit 1.
 7              MR. ROCHE:  Do you want start back at 1?
 8              MR. PASCHAL:  1.
 9              (Deposition Exhibit No. 1 was
10              marked for identification.)
11   BY MR. PASCHAL:
12       Q.   Do you recognize the document I just handed
13   you?
14       A.   Yes, they look like e-mails involving me and
15   Ira Kleiman.
16       Q.   From Dex561@█████.com is that Ira's e-mail?
17       A.   Yes.
18       Q.   Can you turn to -- there's two Bates I guess
19   it was produced twice.  At the bottom it will be 2979.
20       A.   Okay.
21       Q.   Is this Ira e-mailing on February 15th 2014?
22       A.   On February 16?
23       Q.   I see 15 on mine.  279.
24       A.   Yes.
25       Q.   I think it's the beginning.
```

1       A.    I see an e-mail on February 18th and

2    February 16th.  February 16th.

3       Q.    Is there a page behind that?

4       A.    Yes, February 15th.  You want me to go to the

5    very first one on the last page?

6       Q.    Yes.

7       A.    Last page is blank.  This one?

8       Q.    Yes, that's fine.

9       A.    Okay.

10      Q.    Second paragraph Ira is saying "I told him how

11   Dave was in need of money and now I find it unlikely for

12   him to not cash in some coins if they were of any

13   value."

14           MR. ROCHE:  Just we're having issues with the

15       phone.  If you guys can speak a little louder so

16       that Vel on the phone could hear that would be

17       appreciated.

18   BY MR. PASCHAL:

19      Q.    Ira says he said it's possible he could have

20   cashed them in while they were still of lesser value but

21   he believes -- he being Dave had a lot of them.

22      A.    Okay.

23      Q.    Based on what you know from Dave's financial

24   situation and knowing him for a long time did you

25   believe that Dave had a substantial amount of Bitcoin?

Patrick Paige
December 10, 2019                        17

```
 1              MR. ROCHE:  Objection.
 2              THE WITNESS:  No.
 3   BY MR. PASCHAL:
 4        Q.   Could you go to the first page of this e-mail
 5   chain?
 6        A.   Yes.
 7        Q.   February 14, 2018 Ira e-mails you and he says
 8   "did you already finish searching the drives and cell
 9   phones that you have?"
10        A.   Yes, I see it.
11        Q.   Did you ever search any drives belonging to
12   Dave or his cell phone?
13        A.   They were encrypted so no.
14        Q.   Is there a way to break that encryption?
15        A.   No.  The devices were destroyed.  This
16   particular device was damaged.  It was prior to us
17   knowing anything about Bitcoins whether they were --
18   whether he was even involved in it at the time.  So the
19   cell phone was no longer available but when I first got
20   the cell phone it was encrypted anyways.  So I wouldn't
21   be able to crack the encryption that was on it.
22        Q.   What about the hard drives?  When you say
23   drives are you referring to hard drives?
24        A.   Yes.
25        Q.   Were you able to break the encryption on the
```

Patrick Paige
December 10, 2019                                       18

 1    hard drives?

 2         A.   I don't even recall what that's about.  It's

 3    been so long.

 4         Q.   Would David Kleiman know how to encrypt a hard

 5    drive or a cell phone?

 6         A.   Yes.

 7         Q.   Was he very experienced in doing that?

 8         A.   He was an expert.

 9         Q.   Expert.  Did David ever tell you any of his

10    passwords?

11         A.   No.

12         Q.   Did Ira ever ask you for David's passwords?

13         A.   He may have.  I don't recall.

14         Q.   Then you respond on February 20 at 11:00 a.m.

15    and you ask Ira if he is planning on stopping by this

16    week?

17         A.   Is that at the top of the page?

18         Q.   Yes, closer to the top.

19         A.   Okay, yes, I see that.

20         Q.   Do you know what that meeting was for?

21         A.   No.

22         Q.   Then the e-mail on top I'll just read that

23    paragraph that says "Ira, for now I stored the drives on

24    safety deposit box so they remain safe."  Do you know

25    what he was referring to when he said that?

Patrick Paige
December 10, 2019                                   19

```
 1        A.   I believe he was referring to drives that he

 2   recovered from Dave's house, his thumb drive and various

 3   hard drives that may have been recovered from Dave's

 4   house.

 5        Q.   Was he asking you to take a look at those

 6   drives?

 7        A.   I believe at one time he did but I never -- he

 8   never brought them over to us to look at.  We never did.

 9            MR. PASCHAL:  This will be number two.

10            (Deposition Exhibit No. 2 was

11            marked for identification.)

12   BY MR. PASCHAL:

13        Q.   Do you remember this e-mail chain?

14        A.   It's been a long time.  No, I don't really

15   remember off the top of my head.  It looks like it

16   involves me.

17        Q.   On the top of the first page you say -- you

18   mention that Carter may have known two of Dave's

19   passwords, the serial numbers of his guns.

20        A.   Is this January 29th?

21        Q.   Yes.

22        A.   Yes, I see that.  I recall that.

23        Q.   Is that based on Carter or did you have that

24   same knowledge that --

25        A.   That was based on Carter's knowledge.
```

Patrick Paige
December 10, 2019                                              20

1       Q.   Did Ira ever -- do you know if Ira ever found
2   the serial number for Dave's guns?
3       A.   No, I do not know.
4       Q.   Also going down on the page Ira mentions true
5   crypt -- a true crypt file?
6       A.   Okay.
7       Q.   Are you familiar with what a True Crypt file
8   is?
9       A.   Yes.
10      Q.   What is a True Crypt file?
11      A.   It's encryption software that allows you to
12  encrypt data.
13      Q.   Were you aware that Dave had a True Crypt --
14      A.   He used all kind of encryption software.  It
15  wouldn't surprise me that he would use that.
16      Q.   Do you know how many computers Dave had?
17      A.   Not offhand, no.
18      Q.   Did he -- he had a thumb drive?
19      A.   Yes.
20      Q.   Can you describe that thumb drive?
21      A.   He had -- it was a Corsair silver in color
22  sort of indestructible thumb drive.  It was round.
23  Screwed in top.
24      Q.   Did he have that on him frequently?
25      A.   He never went anywhere without it.

1      Q.   Do you know what he kept on that thumb drive?

2      A.   I never saw the contents of it.

3      Q.   Based on knowing Dave would you believe that

4  whatever was on that thumb drive was important to Dave?

5      A.   Yes, absolutely.

6      Q.   Just to be clear did Dave ever tell you what

7  was on that thumb drive?

8      A.   No.

9      Q.   Do you know the name of any of other Dave's

10 close friends?

11     A.   Yes, I know some of them.

12     Q.   Could you tell me their names?

13     A.   When you say close friends I mean are you

14 talking about people that, you know, he was -- lived

15 with or around here or -- a lot of his friends were, you

16 know, around the world basically.

17     Q.   Oh, like internet?

18     A.   Internet.  A lot of them were that.  But, you

19 know, he had a friend that would come over his name

20 was -- I can't remember the name off the top of my head

21 that used to live nearby.  He is now deceased.  I don't

22 recall the name offhand.

23     Q.   Was his name Jody?

24     A.   Yes, Jody, that was his name.

25     Q.   I won't ask about Jody.  When Dave Kleiman

Patrick Paige
December 10, 2019                                    22

```
1    went to the hospital I guess for the long stay do you

2    know how he -- did someone call 911?

3         A.   Yes, he had fallen in the shower and he had

4    been there for a few days and his friend Jody found him

5    in the shower and called Fire Rescue to come.

6         Q.   Do you know how Jody died?

7         A.   I know he had been really sick, flu related,

8    pneumonia type stuff.

9         Q.   Do you know when he died?

10        A.   Probably like a year after Dave.  Just a

11   guess.

12             MR. PASCHAL:  Can we mark this I don't know

13        what number we're on.  Is it 3?

14             MR. ROCHE:  Yes, 3.

15             (Deposition Exhibit No. 3 was

16             marked for identification.)

17   BY MR. PASCHAL:

18        Q.   Do you recognize this e-mail?

19        A.   Like I said it's been years.  Yea, looks like

20   something I would write or was involved in.

21        Q.   I just want to focus on -- so the second

22   paragraph and the third paragraph.  You're aware of the

23   value of Bitcoin at the time of Dave's death?

24        A.   Yes.

25        Q.   Did you look up the price of Bitcoin after you
```

Patrick Paige
December 10, 2019                                    23

```
 1   learned Dave was potentially involved with Bitcoin?
 2        A.   I looked up the price at the time would have
 3   been of his death at the time.
 4        Q.   So if he had 300,000 Bitcoin at $100 for
 5   Bitcoin it means he would have hundreds of millions of
 6   Bitcoin if he had the Bitcoin, right?
 7        A.   Yes.
 8             MR. ROCHE:  Objection.
 9   BY MR. PASCHAL:
10        Q.   Based on how well you know Dave police
11   training officer, close friends did you ever believe
12   that Dave Kleiman had hundreds of millions of dollars
13   worth of Bitcoin?
14             MR. ROCHE:  Objection.
15             THE WITNESS:  No.
16             MR. PASCHAL:  Mark this as 4.
17             (Deposition Exhibit No. 4 was
18             marked for identification.)
19   BY MR. PASCHAL:
20        Q.   This is an e-mail exchange you had with
21   Patrick -- I mean Kimon Andreou.  I just want to ask you
22   about the last sentence.  "We have had some luck
23   recovering some wallets but now close to a million
24   stolen?"
25        A.   Yes, that in reference to the Crypsi case I
```

Patrick Paige
December 10, 2019                                    24

1    was helping them on.  Kimon was assisting in the

2    information that was destroyed on a Lenox server.  He

3    was trying to help me recover it.

4              MR. PASCHAL:  This is going to be 5.

5              (Deposition Exhibit No. 5 was

6              marked for identification.)

7    BY MR. PASCHAL:

8        Q.   Towards the end of Dave's stay at the VA

9    Hospital do you know how he left?

10       A.   In my understanding he checked himself out.

11       Q.   Do you think doctors authorized for him to

12   leave?

13       A.   Not based on the conversation I had with him.

14       Q.   In the conversation you had with him what did

15   he say?

16       A.   He had enough.  He had been there long enough

17   and he decided it was time for him to leave.

18       Q.   Were you concerned?

19       A.   Yes.

20       Q.   Approximately how many times did you

21   communicate, if you can recall, with Dave from the time

22   that he checked himself out of the hospital until his

23   death?

24       A.   I would venture to say probably every day I

25   tried to communicate with him.  I even made mention that

```
 1   there was a time after a couple weeks had gone by that I
 2   was having problems getting a hold of him that I would
 3   text him and if he didn't answer my text I was going to
 4   come over there to his house to do a welfare check on
 5   him.
 6        Q.   Did you do a welfare check?
 7        A.   When he didn't answer text messages I
 8   contacted his girlfriend that lived in the same
 9   development as him who went over to the house and found
10   him deceased.
11        Q.   During the conversations that you had with him
12   before he died did he ever indicate that he felt he was
13   going to die?
14        A.   No.  He just said that he was fighting off an
15   infection.
16        Q.   Just trying to understand the type of person
17   that Dave was.  Was he someone that was planning for the
18   future a lot?
19             MR. ROCHE:  Objection.
20             THE WITNESS:  I don't know.
21   BY MR. PASCHAL:
22        Q.   Was he very conservative with spending his
23   money?
24             MR. ROCHE:  Objection.
25             THE WITNESS:  I don't know how to answer that
```

```
 1        really.  Other than he would give you the shirt off

 2        his back.  If you needed money he would give it to

 3        you.  I don't know if you would call that

 4        conservative or foolish but that's just the way he

 5        was.

 6   BY MR. PASCHAL:

 7        Q.   Have you ever heard of W&K Info Research?

 8        A.   Yes.

 9        Q.   How did you hear about W&K?

10        A.   When it showed up in a mailbox that was used

11   by the company, Computer Forensics, LLC.

12        Q.   Did Dave ever tell you about W&K?

13        A.   No.

14        MR. PASCHAL:  This is already an exhibit but I

15        guess let me mark this again.

16        MR. ROCHE:  Just for reference it's going to

17        be two exhibit numbers.  Do you want to put

18        separate stickers?  I'm fine with it.  I don't want

19        to cover up the first sticker.

20        MR. PASCHAL:  Just put it somewhere else.

21        (Deposition Exhibit No. 6 was

22        marked for identification.)

23   BY MR. PASCHAL:

24        Q.   Could you turn to the other side of that

25   exhibit?  Do you recognize the address that's on that?
```

Patrick Paige
December 10, 2019                              27

```
 1        A.   Yes.

 2        Q.   What is that address?

 3        A.   That's our former mailing address.

 4        Q.   In 2013 were you using that mailing address?

 5        A.   Yes.

 6        Q.   Would Dave have mail sent to that address?

 7        A.   Yes.

 8             MR. PASCHAL:  I'm going to confer with him for

 9        a few minutes and wrap this up.

10             MR. ZIMET:  Sure.

11             THE VIDEOGRAPHER:  Going off the record.

12             (Thereupon, a brief recess was taken.)

13             THE VIDEOGRAPHER:  Back on the record.

14             MR. PASCHAL:  I'm going to ask you a few more

15        questions because we just took the other deposition

16        not sure if I asked the questions already just to

17        make sure I have it.

18             MR. ZIMET:  Sure.

19   BY MR. PASCHAL:

20        Q.   Dave never told you that Craig Wright stole

21   anything from him; right?

22        A.   No.

23        Q.   Dave never mentioned Bitcoin, I asked you

24   that?

25        A.   No.
```

Patrick Paige
December 10, 2019                                    28

```
 1        Q.   Dave never said he had a business partnership
 2   with Craig Wright, right?
 3        A.   No.
 4        Q.   And Dave never said anything bad about Craig
 5   right?
 6             MR. ROCHE:  Objection.
 7             THE WITNESS:  No.
 8             MR. ROCHE:  You want to mark another copy of
 9        the complaint?
10             MR. PASCHAL:  Mark it as Exhibit 7.
11             (Deposition Exhibit No. 7 was
12             marked for identification.)
13   BY MR. PASCHAL:
14        Q.   Do you recognize this document?
15        A.   Yes.
16        Q.   What is this document?
17        A.   It is a lawsuit.  It was filed by Ira Kleiman
18   against us.
19        Q.   Could you turn to page 32 of that complaint?
20             MR. ZIMET:  Paragraph 32.
21             MR. PASCHAL:  Paragraph 32, sorry.
22   BY MR. PASCHAL:
23        Q.   You see in that paragraph Ira is alleging that
24   Dave has Bitcoin wallets?
25        A.   Okay, I see it.
```

Patrick Paige
December 10, 2019                        29

```
 1        Q.   You see that's a count for permanent
 2   injunction against you, Carter Conrad and Computer
 3   Forensics, LLC?
 4             MR. ROCHE:  Object.
 5             THE WITNESS:  I see that.  I don't know what
 6        that means.
 7   BY MR. PASCHAL:
 8        Q.   Mr. Paige, did you ever have any of Dave's
 9   Bitcoin?
10        A.   No.
11             MR. ROCHE:  Objection.
12   BY MR. PASCHAL:
13        Q.   Base on defending that lawsuit did Ira have
14   any basis to file that lawsuit against you?
15             MR. ROCHE:  Objection, calls for a legal
16        conclusion.
17             THE WITNESS:  I don't know.
18   BY MR. PASCHAL:
19        Q.   Did he have any evidence to suggest that you
20   had Dave's Bitcoin?
21             MR. ROCHE:  Objection.
22             THE WITNESS:  No.
23   BY MR. PASCHAL:
24        Q.   I met with you before, right?
25        A.   Yes.
```

```
 1       Q.    That meeting was because I wanted to know
 2    about Dave Kleiman?
 3              MR. ROCHE:  Objection, leading.
 4              THE WITNESS:  That was the gist of it, yes.
 5    BY MR. PASCHAL:
 6       Q.    Have plaintiff's counsel ever reached out to
 7    you?
 8       A.    Yes.
 9       Q.    How many -- on how many occasions?
10       A.    I met with them once, I believe.
11       Q.    What was discussed?
12       A.    What we're discussing today essentially.
13       Q.    This lawsuit?
14       A.    Yes.
15              MR. ROCHE:  Objection.
16    BY MR. PASCHAL:
17       Q.    Do you remember what they were asking you?
18       A.    I don't recall.
19       Q.    And the information you may not know the
20    information we discussed at our meeting was consistent
21    with the information you told them?
22              MR. ROCHE:  Objection.
23              THE WITNESS:  Basically.  I don't really
24        recall exactly what we discussed but it was
25        basically the same premise.
```

Patrick Paige
December 10, 2019                                       31

```
 1   BY MR. PASCHAL:
 2        Q.   Consistent with what you testified today?
 3             MR. ROCHE:  Objection.
 4             THE WITNESS:  Yes.
 5   BY MR. PASCHAL:
 6        Q.   When was that meeting?
 7        A.   I don't remember.
 8        Q.   Was it this year?
 9        A.   No.
10        Q.   It was last year?
11        A.   It could have been last year or the year
12   before.  Maybe last year.  I don't really recall exactly
13   when it was.
14        Q.   Who else was in the meeting?
15        A.   Ira was there.  Bruce Zimet was there and
16   Carter Conrad I believe.
17        Q.   Were lawyers present for Ira?
18        A.   Velvel.
19        Q.   You don't recall anything in particular from
20   that meeting?
21        A.   No.  Just essentially what we're discussing
22   today.
23             MR. PASCHAL:  I think we're done.
24             MR. ROCHE:  Take a five minute break and then
25        we'll finish up?
```

Patrick Paige
December 10, 2019                                      32

```
 1              MR. ZIMET:  Of course.

 2              THE VIDEOGRAPHER:  We're off record.

 3              (Thereupon, a brief recess was taken.)

 4              THE VIDEOGRAPHER:  We are back on the record.

 5                  CROSS (PATRICK PAIGE)

 6   BY MR. ROCHE:

 7       Q.   Still technically good morning by two minutes.

 8   My name is Kyle Roche, I just have a few questions for

 9   you.

10       A.   Sure.

11       Q.   So we were talking about meetings between you

12   and plaintiff's counsel and you and defense counsel.

13       A.   Yes.

14       Q.   When did the meeting between you and defense

15   counsel occur?

16       A.   That's a good question.  I don't really recall

17   offhand.  I believe it was this year.

18       Q.   You mentioned Bryan was at the meeting.  Do

19   you recall who else was at the meeting?

20              MR. PASCHAL:  Objection to form.

21              THE WITNESS:  No, I don't.  It was a female.

22   I don't know what her name was.

23   BY MR. ROCHE:

24       Q.   Then it was -- was your counsel Bruce at the

25   meeting as well?
```

Patrick Paige
December 10, 2019                               33

```
 1        A.   Yes.
 2        Q.   And you said there was -- strike that.  What
 3   was discussed at that meeting?
 4        A.   Essentially what we're discussing today.
 5        Q.   Was there anything that you can recall that
 6   was not discussed today that was discussed at that
 7   meeting?
 8        A.   No.
 9        Q.   Did you have any written communications,
10   e-mails with defense counsel?
11        A.   No.
12        Q.   I want to just go through some general
13   background and your relationship with Dave.  When did
14   you first meet Dave?
15        A.   It was in the '90s.
16        Q.   Okay.
17        A.   When I was his field training officer.
18        Q.   You were his field training officer in -- was
19   that based in Florida or --
20        A.   Palm Beach County Sheriff's Office, yes,
21   Florida.
22        Q.   How long were you in that office for?
23        A.   I was with the sheriff's office for about 22
24   or 23 years.
25        Q.   When did you leave the sheriff's office?
```

Patrick Paige
December 10, 2019                              34

```
 1          A.    In 2011.

 2          Q.    Did you do computer forensics work while you

 3    were at the sheriff's office?

 4          A.    Yes.

 5          Q.    I believe and again this may be confusion

 6    between having two depositions right back to back but

 7    you testified that you went into business with Dave in

 8    2012?

 9          A.    Yes.

10          Q.    Why did you decide to go into business with

11    Dave?

12          A.    We had always talked about going into

13    business.  He did computer forensics in the private

14    sector.  I did computer forensics in law enforcement so

15    we quite regularly spoke in regards to computer

16    forensics over the years.

17          Q.    Can you describe your familiarity with Dave's

18    technical expertise.

19          A.    In reference to forensics?  I mean he was a

20    nationally known expert in computer forensics, network

21    administrator.  Extensive knowledge in all kinds of

22    aspects of security involving computers.

23          Q.    Can you identify what some of those aspects

24    are just provide a little bit more detail on the

25    security element?
```

Patrick Paige
December 10, 2019                          35

```
 1        A.    I don't recall exactly what certifications he
 2   held but I know he was just very knowledgeable in those
 3   areas.
 4        Q.    Do you recall how or did he ever tell you how
 5   he -- how he became so adept with computer forensics,
 6   computer security et cetera?
 7        A.    He had had computers all his life.  Most of
 8   his knowledge was self taught.  So -- as he became more
 9   proficient in it over the years he actually began
10   teaching other people so he was also a computer
11   instructor in many areas as well as a lot of the stuff
12   he did was self taught.
13        Q.    He was an owner of Computer Forensics;
14   correct?
15        A.    He was a partner.
16        Q.    Partner?
17        A.    Yes.
18        Q.    There was three partners in Computer
19   Forensics?
20        A.    At the time when it was formed, yes.
21        Q.    Were you a partner when it was formed or
22   shortly after?
23        A.    Shortly after I became a partner.
24        Q.    How did you -- how did that come about?  Was
25   it just a natural outgrowth of your previous
```

Patrick Paige
December 10, 2019                              36

1     conversations or something else?

2               MR. PASCHAL:  Objection to form.

3               THE WITNESS:  Basically it was, you know, I

4         did computer forensics.  We were all doing computer

5         forensics in the private sector and he said you

6         should be -- why don't you come -- it was the early

7         stages of forming the company.  They had already

8         filed the paperwork.  I was already working with

9         them on cases.  So they just added me to the

10        company directory so to speak.

11    BY MR. ROCHE:

12        Q.   Can you describe Computer Forensics' financial

13    performance in 2012?

14        A.   Specifically?

15        Q.   How much revenue?

16        A.   I don't recall offhand.

17        Q.   More or less than $100,000?

18        A.   In 2012?

19        Q.   Yes.

20        A.   I don't know.

21        Q.   Could it have been more than $100,000?

22        A.   Between all three of us?

23        Q.   Between all three of you.

24        A.   It may.  Could have.

25        Q.   Do you recall Computer Forensics' performance

Patrick Paige
December 10, 2019                                    37

1   in 2013?

2        A.    I don't recall numbers if that's what you're

3   asking me.

4        Q.    Was it about the same?

5        A.    It was probably more.

6        Q.    In his capacity as would you call Dave your

7   business partner?

8        A.    No, actually call him my best friend.  He was

9   my business partner but he was my best friend.

10       Q.    Was Dave your business partner?

11       A.    Yes.

12       Q.    In his capacity as your business partner did

13   you find Dave to be a trustworthy person?

14       A.    Yes.

15       Q.    Did Dave honor agreements between -- that you

16   had with him?

17       A.    Yes, he was very fair.

18       Q.    If you had an agreement with Dave not to

19   access certain resources would you expect Dave to honor

20   that agreement?

21            MR. PASCHAL:  Objection, form.

22            THE WITNESS:  Yes.

23   BY MR. ROCHE:

24       Q.    If Dave had an agreement with another

25   individual to not access certain resources would you

Patrick Paige
December 10, 2019                                          38

1   expect Dave to honor that agreement?

2        A.   Yes.

3        Q.   Would you expect Dave to honor that agreement

4   even if it was a substantial amount of money?

5        A.   Yes.

6        Q.   How often did you see Dave in 2013?

7        A.   Quite often.  As far as seeing him or talking

8   to him?  I mean I guess -- he was in the hospital.

9        Q.   Seeing him.

10       A.   I would visit him at the hospital so I didn't

11  see him regularly if that's what you're asking.

12       Q.   About how many times did you see him at the

13  hospital in 2013?

14       A.   I don't recall off the top of my head.

15       Q.   But you spoke with him more frequently?

16       A.   Yes.

17       Q.   I believe you testified earlier you were aware

18  of Dave's financial position in 2012 and 2013?

19       A.   Yes.

20       Q.   How did you become aware of Dave's financial

21  position?

22       A.   Just some casual conversations, hey, prior to

23  months leading up to his death he didn't have enough

24  money to pay his phone bill, his cell phone bill.

25       Q.   He told you he didn't have enough money to pay

Patrick Paige
December 10, 2019                                    39

 1   his phone bill?

 2        A.   Yes.

 3        Q.   Did he ask you for money to pay his phone

 4   bill?

 5        A.   Dave would never ask for money.  I just gave

 6   it to him.

 7        Q.   When -- again just an approximation,

 8   approximately how much time in 2013 did you -- did Dave

 9   spend in the hospital?

10        A.   Probably all of it.  There was maybe an

11   occasion where he would be out for a day or two.

12        Q.   It was 2012 similar?

13        A.   To my knowledge, yes.

14        Q.   Did Dave have a computer with him in the

15   hospital?

16        A.   Yes.

17        Q.   Did Dave have a cell phone with him in the

18   hospital?

19        A.   Yes.

20        Q.   Did Dave work when he was in the hospital?

21        A.   Yes.

22        Q.   Did he work frequently when he was in the

23   hospital?

24        A.   Whenever he could.

25        Q.   Whenever he could.  So Dave -- Dave passed

Patrick Paige
December 10, 2019                                    40

1    away April 2013; correct?

2         A.   Yes.

3         Q.   I believe you said this before but I just want

4    to get the record clear who found Dave and can you

5    describe the circumstances surrounding who found Dave?

6         A.   Lineda found him after I had called her to let

7    her know that he wasn't answering my texts.  She lived

8    in the same development as him and so she drove over to

9    the house.

10        Q.   Was there an investigation into the

11   circumstances surrounding Dave's death?

12        A.   Yes, the police were called.

13        Q.   Do you know what, if any, work -- forensic or

14   investigation otherwise they did to investigate the

15   cause of Dave's death?

16        A.   Just what the autopsy had said that it was

17   natural causes.

18        Q.   Did they do a crime scene investigation of

19   Dave's home?

20        A.   I don't know.

21        Q.   Do you know if they investigated any evidence

22   of a bullet hole in Dave's bedroom?

23        A.   I had only heard that that through I believe

24   Ira.  I had not heard that from law enforcement.

25        Q.   When did you hear that from Ira?

Patrick Paige
December 10, 2019                                        41

```
 1        A.   After his death.  Soon after.

 2        Q.   Soon after?

 3        A.   Yes.

 4        Q.   In 2013?

 5        A.   Yes.

 6        Q.   Prior to Dave's death were you aware of an

 7   entity called W&K Info Defense Research, LLC?

 8        A.   No.

 9        Q.   When did you first become aware of this

10   entity?

11        A.   When a letter showed up in the mailbox that

12   you had showed me earlier that's part of one of the

13   exhibits.

14        Q.   Did there come a time when Ira asked you to

15   look for records relating to W&K?

16        A.   There may have been.

17             MR. ROCHE:  Going to hand you Exhibit 8.

18             (Deposition Exhibit No. 8 was

19             marked for identification.)

20   BY MR. ROCHE:

21        Q.   This is an e-mail chain between you and Ira.

22   The e-mail chain starts and ends March 24th 2016.  Do

23   you recognize it?

24        A.   Looks like I'm involved in the -- it's my

25   e-mail address and everything.
```

1       Q.   Do you recognize Ira's e-mail address

2  Dex561@█████████?

3       A.   Yes.

4       Q.   If you go to the first e-mail chain on the

5  second page of the document.  Ira asked "anyway there's

6  another issue I was wondering if you could help me with

7  trying to locate any documents related to the W&K biz

8  Dave operated."  Does this refresh your recollection

9  about when Ira reached out concerning documents related

10  to W&K?

11      A.   Yes.

12      Q.   If we go to the end of this e-mail chain which

13  is the top of the document it's from you same day

14  March 24th it states "I've never seen any paperwork on

15  the company.  The only thing we ever got was a postcard

16  thing from the Australian government but it didn't

17  contain any information."  What is the postcard thing

18  you were referring to in this e-mail?

19      A.   The thing that you showed me earlier.

20      Q.   That I showed you or Bryan showed you?

21      A.   Bryan showed me, excuse me.

22      MR. PASCHAL:  Do you want a copy?

23      MR. ROCHE:  I have a copy of it.  Do you have

24     a copy out of the exhibit I believe it was -- why

25     don't you put that exhibit in front of you.  Mark

```
 1        this as exhibit 9.
 2            MR. ZIMET:  The one we're looking at was
 3        marked as Exhibit 2 in Mr. Conrad's depo and now
 4        it's marked Exhibit 6 for this depo.
 5            MR. ROCHE:  I'll refer to it as Exhibit 6.
 6            MR. ZIMET:  Want the second page of it?
 7            MR. ROCHE:  I'm going to mark a different
 8        exhibit first.
 9            MR. ZIMET:  Okay.  Keep this one in front of
10        him?
11            MR. ROCHE:  Keep it in front of him.
12            MR. ZIMET:  You done with eight?
13            MR. ROCHE:  Yes.
14            MR. ZIMET:  He has two exhibits in front of
15        him.  One has two numbers, two and six and also
16        this is number nine.  Okay.  Just so we're clear
17        for the record.
18            MR. ROCHE:  Thank you.
19            (Deposition Exhibit No. 9 was
20            marked for identification.)
21    BY MR. ROCHE:
22        Q.   If we can take a look at Exhibit 9.  This is
23    an e-mail -- another e-mail chain between you and Ira.
24    The e-mail starts if you go to the third page on
25    March 25th and it ends on the first page March 28th
```

Patrick Paige
December 10, 2019                                    44

```
1    2016.  So it's taking place roughly a day after the
2    exhibit -- the e-mail chain in Exhibit 8.  Do you
3    recognize this e-mail chain?
4         A.   Yes.  I mean I know who these people are.
5         Q.   If you look at the second page there is an
6    e-mail you sent it's toward the top the e-mail at 1:40
7    p.m. you write "what would App River support do for us.
8    Also I found the original court mailing about W&K.  It
9    has a case number.  See attached."
10             If you look the very next e-mail Ira responds
11   at the header of the e-mail is on the first page 1:52 so
12   ten minutes later "when did you find that W&K filing?"
13   And you write back six minutes later 1:58 p.m.
14             MR. PASCHAL:  Do you have an extra copy?
15   BY MR. ROCHE:
16        Q.   Yes.  "I just found the filing today when I
17   was looking for something else.  I was never contacted
18   by anyone about W&K and I never heard of it."
19             So this series of e-mail exchanges was this
20   the first time you informed Ira about receiving
21   something from the Australian government?
22        A.   Is this prior to the e-mails that we just
23   discussed in prior exhibit?
24        Q.   It's the day after.  Strike that.  Strike
25   that.  Was this the first time you sent Ira what you
```

1  received from the Australian government?

2        A.   Probably.

3        Q.   If you could look at Exhibit 6 what's been

4  previously marked as Exhibit 6 is that a copy of what

5  you had received from the Australian tax authorities?

6        A.   It appears to be.

7             MR. PASCHAL:  Objection, form.

8  BY MR. ROCHE:

9        Q.   Prior to -- strike that.  Outside of this

10 e-mail exchange had you discussed with W&K with Ira

11 prior to March 2016?

12            MR. PASCHAL:  Objection, form.

13            THE WITNESS:  Not that I remember.

14            MR. ROCHE:  Handing you what's been marked

15       Exhibit 10.

16            (Deposition Exhibit No. 10 was

17            marked for identification.)

18 BY MR. ROCHE:

19       Q.   Do you recognize this e-mail exchange?

20       A.   Yes.

21       Q.   It's between -- well, strike that.  The e-mail

22 exchange starts on February 12th 2014 and it's largely

23 an e-mail exchange between you and Craig Wright and

24 there's a few other individuals copied on various

25 messages but is that an accurate characterization of the

1    e-mail?

2         A.   Yes.

3         Q.   I would like to if we can look at the first

4    page ending in Bates stamp 3040 e-mail from Craig Wright

5    to you and Craig states "I do not have a lot to give

6    you.  These may help.  W&K Info Defense Research LLC,

7    Geiser Trust▬▬▬▬ and ▬▬▬▬ locations Belize.

8    It is not much but then Dave always did things his way."

9    Do you recognize any of these projects?

10        A.   No.

11        Q.   Do you recognize -- at the time Craig sent you

12   this did you recognize any of these projects?

13        A.   No.

14        Q.   Did you know what Craig was referring to in

15   this e-mail?

16        A.   No.

17        Q.   Did -- do you understand what Craig meant when

18   he said "Dave always did things his way?"

19        A.   Just that he had a way of doing things I

20   guess.

21        Q.   If you could go to the second page ending in

22   41 Craig writes to you and he copies an Ira Kleiman

23   8:04 p.m. "well, preservation is first.  The thing with

24   a BTC address is that it will never disappear and if I'm

25   right will appreciate over time."  You respond and say

Patrick Paige
December 10, 2019                                  47

```
 1  "what about accounts in location DK had?  I thought you
 2  were going put a list together."  When you respond to
 3  Craig you don't copy in Ira.  Was there a reason you
 4  left Ira off the e-mail chain?
 5       A.   I think this was -- if I'm not mistaken it was
 6  a forward.  This is an e-mail chain between my and Craig
 7  Wright that was forwarded to Ira.  So therefore he
 8  wouldn't have ever been on it.
 9            MR. ROCHE:  Got it.  Can we take a couple
10       minute break and then come back and wrap up?
11            MR. ZIMET:  Sure.
12            THE VIDEOGRAPHER:  We're off the record.
13            (Discussion held off the record.)
14            THE VIDEOGRAPHER:  Back on the record.
15  BY MR. ROCHE:
16       Q.   When was the first time you were contacted by
17  Craig?
18       A.   I don't remember.
19       Q.   Did you ever speak with Craig by phone?
20       A.   Yes.
21       Q.   Do you recall about when that was?
22       A.   It was after Dave's death.
23       Q.   Can you -- what did Craig tell you on that
24  phone conversation?
25       A.   I think there was maybe two calls, maybe it
```

Patrick Paige
December 10, 2019                                        48

```
 1    was one.  It's been a while but he had just mentioned
 2    that -- first he had mentioned that Dave was involved
 3    in -- he wanted us to secure any hardware, computer
 4    equipment that he had.  He had made mention that Dave
 5    was the creator of Bitcoin.  He told me that on the
 6    phone.
 7         Q.   He said Dave was the creator of Bitcoin?
 8         A.   Well, he said it was a group of people but
 9    that Dave was involved in it.
10         Q.   He called Dave a creator of Bitcoin?
11         A.   I don't recall exactly.
12         Q.   But he did -- on this call he mentioned that
13    Dave was involved in the creation of Bitcoin?
14         A.   Yes.
15         Q.   Just switching gears here we talked a little
16    bit prior about your experience with Dave and honoring
17    agreements between you and him.  Would you based on your
18    relationship with Dave expect him to honor an agreement
19    even if he was in -- had fallen on tough financial
20    times?
21              MR. PASCHAL:  Objection, form.
22              THE WITNESS:  Yes, he was very honorable.
23              MR. ROCHE:  Okay.  No further questions.
24              MR. PASCHAL:  I just have a few questions.
25              MR. ZIMET:  Sure.
```

```
 1              REDIRECT (PATRICK PAIGE)

 2   BY MR. PASCHAL:

 3       Q.   I just want to clarify something.  Counsel

 4   spoke with you a second ago about Exhibit 6.

 5            MR. ZIMET:  Two and six?

 6            MR. PASCHAL:  Yes, that one.

 7            THE WITNESS:  Yes.

 8   BY MR. PASCHAL:

 9       Q.   He said the letter was from the Australian tax

10   or ATO that stands for Australian tax authorities.  I

11   want to clarify did that come from the Supreme Court of

12   Wales or Australian Tax Office?

13       A.   The Supreme Court of Wales, of New South

14   Wales.

15       Q.   Counsel had talked -- spoken to you about that

16   exhibit.  This is already marked.

17            MR. ZIMET:  Looking at what's marked as

18       Exhibit 11.

19            (Deposition Exhibit No. 11 was

20            marked for identification.)

21   BY MR. PASCHAL:

22       Q.   Exhibit 11 is an e-mail exchange -- well, if

23   you go to the second page 2956 the first e-mail is a do

24   not reply from the UPS store to Dave Kleiman it says

25   that his mailbox was due or to be renewed on March 11,
```

```
 1   2014 and then it has the address ███████████
 2   ██████████, Palm Beach Gardens, Florida ██████.  Is that
 3   the same address that's on that envelope?
 4        A.   Yes.
 5        Q.   Then you forward that e-mail to Ira and you
 6   tell him that you don't think you're going to renew the
 7   mailbox.  You ask him if he wants to take it over.
 8        A.   Yes.
 9        Q.   Then Ira responds "I don't think there's any
10   need to renew the mailbox."
11        A.   Correct.
12        Q.   "So far nothing has come from Bitcoin stuff."
13   So Ira just didn't renew the mailbox?
14        A.   I don't know whether he did or not but his
15   response was in his e-mail here he says "I don't think
16   there's any need to renew the mailbox."  Whether he did
17   that or not I don't know.
18        Q.   Were you still getting mail for Dave at that
19   mailbox after Dave passed away?
20        A.   I don't recall because I hadn't been checking
21   it.
22        Q.   But you weren't preventing Ira from accessing
23   that mailbox; right?
24             MR. ROCHE:  Objection.
25             THE WITNESS:  No.
```

Patrick Paige
December 10, 2019                                    51

BY MR. PASCHAL:

    Q.   You wanted to turn it over to him?

    A.   Yes.

    Q.   Let me just ask you.  If Dave had suddenly
come across a lot of money had he ever made comments how
he was going to share it with you or some of his other
close friends like for example --

    A.   I don't recall that ever happening.

    Q.   Like if he won the Lotto would he say if I won
the Lotto I would share with you?

    A.   Yes, he probably would but that's just a
guess.

    Q.   That's a guess based on how you know Dave?

    MR. ROCHE:  Objection.

    THE WITNESS:  Yes.

BY MR. PASCHAL:

    Q.   So if Dave had $250 million just sitting there
do you think he would have said you know here you go
Patrick, here is some?

    MR. ROCHE:  Objection.

    THE WITNESS:  I don't really know what he
    would say to be honest with you.

BY MR. PASCHAL:

    Q.   Do you think he would keep it to himself?

    MR. ROCHE:  Objection.

Patrick Paige
December 10, 2019                                    52

```
 1            THE WITNESS:  No.
 2   BY MR. PASCHAL:
 3        Q.   If there was some agreement that Dave would
 4   have billions of dollars in 2020 do you think he would
 5   have told you?
 6            MR. ROCHE:  Objection.
 7            THE WITNESS:  I don't believe Dave would have
 8        asked for money or complained about not being able
 9        to pay his bills or accept money from me or my
10        business partner if he wasn't in dire need of
11        money.  That's just my opinion.
12            MR. PASCHAL:  Just one last e-mail.  One more
13        exhibit mark this as 12.
14            (Deposition Exhibit No. 12 was
15            marked for identification.)
16            MR. ROCHE:  Bryan, how does this relate to
17        issues that came up on cross?
18            MR. PASCHAL:  We'll see in a second.
19   BY MR. PASCHAL:
20        Q.   So if you go to the last page of this e-mail
21   exchange again that from Dex is that Ira Kleiman?
22        A.   Yes.
23        Q.   And he is sending it to you Patrick Paige?
24            MR. ROCHE:  I'm going to object to this line
25        of questioning as outside the scope of cross.
```

Patrick Paige
December 10, 2019                                          53

```
 1              THE WITNESS:  Yes.
 2   BY MR. PASCHAL:
 3        Q.   You see the date February 15, 2014?
 4        A.   Yes.
 5        Q.   Could you look at the second paragraph?
 6        A.   Yes.
 7        Q.   Ira says "I told him how Dave was in need of
 8   money and how I find it unlikely for him to not cash in
 9   some coins if they were of any value."  He and I'm
10   assuming he is talking about Craig --
11              MR. ROCHE:  Objection.
12   BY MR. PASCHAL:
13        Q.   -- said "it's possible that he could have
14   cashed them in" and when he says he there is referring
15   to Dave "could have cashed them in while they were still
16   of lesser value but he believes he had a lot of them."
17   Did Ira ever tell you that Craig was preventing Dave
18   from using any of his Bitcoins?
19              MR. ROCHE:  Objection.
20              THE WITNESS:  No.
21   BY MR. PASCHAL:
22        Q.   And do you have any other basis to believe
23   that Craig was somehow preventing Dave from using any of
24   his Bitcoin?
25              MR. ROCHE:  Objection.
```

```
 1              THE WITNESS:  No.
 2    BY MR. PASCHAL:
 3       Q.   Just because you know Dave or you knew him do
 4    you think that someone could prevent Dave from using a
 5    substantial amount of his own money?
 6              MR. ROCHE:  Objection.
 7              THE WITNESS:  I don't know.
 8              MR. PASCHAL:  That's it then.
 9              MR. ZIMET:  Okay.
10              MR. ROCHE:  One minute.  Can we take one
11        minute and then we'll finish up?
12              MR. ZIMET:  Promise?
13              MR. ROCHE:  One to two questions max.
14              THE VIDEOGRAPHER:  Off the record.
15              (Discussion held off the record.)
16              THE VIDEOGRAPHER:  Back on the record.
17                   RECROSS (PATRICK PAIGE)
18    BY MR. ROCHE:
19       Q.   Just a few quick questions.  At the time of
20    Dave's death and after Dave's death who controlled the
21    Dave@              e-mail?
22              MR. PASCHAL:  Objection, form.  Just for the
23        record this doesn't have anything to do with what I
24        just asked.
25              THE WITNESS:  I believe that mail was
```

```
 1        forwarded or was being forwarded to

 2        Dave@███████████████ at the time.  At the time

 3        of his death I believe it was going to Computer

 4        Forensics, LLC.

 5   BY MR. ROCHE:

 6        Q.   Okay.  Who controlled at the time of his death

 7   the Computer Forensics?

 8        A.   We did.  Myself and Carter Conrad.  Computer

 9   Forensics, LLC did.

10        Q.   Who controls that e-mail address today?

11        A.   We do.  Not -- Dave@██████████.com is

12   controlled by Ira.  That was turned over to him and we

13   have I believe it's still there but not really active is

14   Dave@████████████████

15        Q.   And when did you turn over the

16   Dave@███████████ account?

17        A.   I don't have the date.  It was in reference to

18   the lawsuit that was filed against us by Ira.

19        Q.   So it was after the lawsuit?

20        A.   I wouldn't say after.  It was during.

21        Q.   During?

22        A.   Yes.

23        Q.   After the initiation of the lawsuit?

24        A.   After the initiation, yes.

25        Q.   When did Ira first get access to that e-mail
```

```
 1   address?
 2       A.   I don't have the date.  I don't know offhand.
 3            MR. ROCHE:  No further questions.
 4            THE WITNESS:  Sure.
 5            MR. ZIMET:  He'll read.
 6            THE VIDEOGRAPHER:  We're off record.  It's
 7       12:45 p.m.
 8            MR. PASCHAL:  I'll order it as soon as
 9       possible.  Next 48 hours.
10            THE COURT REPORTER:  Do you want a copy?
11            MR. ROCHE:  Yes.
12                       (Witness excused.)
13                  (Deposition was concluded.)
14
15
16
17
18
19
20
21
22
23
24
25
```

Patrick Paige
December 10, 2019                                    57

```
 1
 2                      CERTIFICATE OF REPORTER
 3             THE STATE OF FLORIDA
 4             COUNTY OF BROWARD
 5
 6         I, Rick Levy, Registered Professional Reporter
      and Notary Public in and for the State of Florida at
 7    large, do hereby certify that I was authorized to
      and did report said deposition in stenotype of
 8    PATRICK PAIGE; and that the foregoing pages,
      numbered from 1 to 56, inclusive, are a true and
 9    correct transcription of my shorthand notes of said
      deposition.
10
          I further certify that said deposition was
11    taken at the time and place hereinabove set forth
      and that the taking of said deposition was commenced
12    and completed as hereinabove set out.
13         I further certify that I am not attorney or
      counsel of any of the parties, nor am I a relative
14    or employee of any attorney or counsel of party
      connected with the action, nor am I financially
15    interested in the action.
16         The foregoing certification of this transcript
      does not apply to any reproduction of the same by
17    any means unless under the direct control and/or
      direction of the certifying reporter.
18
          IN WITNESS WHEREOF, I have hereunto set my hand
19    this 10TH day of December, 2019.
20
21    _____
22         Rick Levy, RPR, FPR, Notary Public
           in and for the State of Florida
           My Commission Expires:  12/8/2023
23         My Commission No.:  GG937684
24
25
```

Patrick Paige
December 10, 2019                                                    58

```
 1                    CERTIFICATE OF OATH

 2    THE STATE OF FLORIDA

 3    COUNTY OF PALM BEACH

 4

 5        I, Rick Levy, REGISTERED PROFESSIONAL REPORTER,

 6    Notary Public, State of Florida, certify that

 7    PATRICK PAIGE personally appeared before me on the

 8    10th day of December, 2019 and was duly sworn.

 9

10            Signed this 10th day of December, 2019.

11

12

13

14

15    _____

16            Rick Levy, RPR, FPR
              Notary Public - State of Florida
17            My Commission Expires:  12/8/2023
              My Commission No.:  GG937684

18

19

20

21

22

23

24

25
```

RICK LEVY
Notary Public - State of Florida
Commission # FF 939483
My Comm. Expires Dec 7, 2019
Bonded through National Notary Assn

```
 1                 E R R A T A    S H E E T

 2    IN RE:  IRA KLEIMAN VS CRAIG WRIGHT

 3    DEPOSITION OF:  PATRICK PAIGE

 4    TAKEN: 12/10/2019

 5        DO NOT WRITE ON TRANSCRIPT - ENTER CHANGES HERE

 6    PAGE #  LINE #   CHANGE                  REASON

 7    _____

 8    _____

 9    _____

10    _____

11    _____

12    _____

13    _____

14    _____

15    _____

16    _____

17    Please forward the original signed errata sheet to
      this office so that copies may be distributed to all
18    parties.

19    Under penalty of perjury, I declare that I have read
      my deposition and that it is true and correct
20    subject to   any changes in form or substance
      entered here.
21

22    DATE: _____

23

24    SIGNATURE OF
      DEPONENT:_____
25
```

Patrick Paige
December 10, 2019                          60

```
1    DATE:       December 10, 2019

2    TO:  BRUCE ZIMET, ESQUIRE
          LAW OFFICE OF BRUCE ZIMET, P.A.
3         250 North Australian Avenue
          Suite 1400
4         West Palm Beach, Florida 33401

5    IN RE:     Ira Kleiman vs Craig Wright

6    Dear Mr. Zimet:

7    Enclosed please find the original errata page with
     your copy of the transcript so CARTER CONRAD may
8    read and sign their transcript.  Please have him/her
     make whatever changes are necessary on the errata
9    page and sign it.  Then place the original errata
     page back into the original transcript.  Please then
10   forward the original errata page back to our office
     @1080 Woodcock Road, Suite 100, Orlando, Florida
11   32803.

12   If the errata page is not signed by the witness
     within 30 days after this letter has been furnished,
13   we will then process the transcript without a signed
     errata page.  If your client wishes to waive their
14   right to read and sign, please have him/her sign
     their name at the bottom of this letter and send it
15   back to the office.

16       Your prompt attention to this matter is

17   appreciated.

18   Sincerely,

19   _____
     RICK E. LEVY, RPR
20
     I do hereby waive my signature:
21
     _____
22   PATRICK PAIGE

23   cc via transcript:  Bryan Paschal, Esq.
                         Kyle Roche, Esq.
24   file copy

25
```

| Exhibits | $ | | 7 |
|---|---|---|---|

**Exhibits**

EX 0001 Patric
k Paige DEFT 1
21019  15:6,9
EX 0002 Patric
k Paige DEFT 1
21019  19:10
 43:3
EX 0003 Patric
k Paige DEFT 1
21019  22:15
EX 0004 Patric
k Paige DEFT 1
21019  23:17
EX 0005 Patric
k Paige DEFT 1
21019  24:5
EX 0006 Patric
k Paige DEFT 1
21019  26:21
 43:4,5 45:3,4
 49:4
EX 0007 Patric
k Paige DEFT 1
21019  28:10,
 11
EX 0008 Patric
k Paige DEFT 1
21019  41:17,
 18 44:2
EX 0009 Patric
k Paige DEFT 1
21019  43:1,
 19,22
EX 0010 Patric
k Paige DEFT 1
21019  45:15,
 16
EX 0011 Patric
k Paige DEFT 1
21019  49:18,
 19,22
EX 0012 Patric
k Paige DEFT 1
21019  52:14

**$**

$100  23:4
$100,000
 36:17,21
$250  51:17

**1**

1  15:6,7,8,9
10  45:15,16
10th  4:4
11  6:5 49:18,
 19,22,25
11:00  18:14
11:07  4:4
12  6:5 8:17
 52:13,14
12:45  56:7
12th  45:22
14  17:7
15  15:23 53:3
15th  15:21
 16:4
16  15:22
16th  16:2
18th  16:1
1:40  44:6
1:52  44:11
1:58  44:13

**2**

2  19:10 43:3
20  18:14
2011  34:1
2012  5:23
 34:8 36:13,18
 38:18 39:12
2013  27:4
 37:1 38:6,13,
 18 39:8 40:1
 41:4
2014  15:21
 45:22 50:1

53:3
2016  41:22
 44:1 45:11
2018  17:7
2019  4:4
2020  52:4
22  33:23
23  33:24
24th  41:22
 42:14
25th  43:25
26  6:5
274997114
 46:7
279  15:23
28th  43:25
2956  49:23
2979  15:19
29th  19:20

**3**

3  22:13,14,15
300,000  23:4
3040  46:4
32  28:19,20,
 21
33410  50:2

**4**

4  23:16,17
41  46:22
4371  50:1
48  56:9

**5**

5  24:4,5

**6**

6  26:21 43:4,
 5 45:3,4 49:4

**7**

7  28:10,11

**8**

8  41:17,18
 44:2
8:04  46:23

**9**

9  43:1,19,22
90s  8:7 9:11
 33:15
911  22:2

**A**

a.m.  4:4
 18:14
able  17:21,25
 52:8
about  6:5
 7:3,17 9:3
 10:23 11:21
 12:11 13:23,
 25 17:17,22
 18:2 21:14,25
 23:22 26:9,12
 28:4 30:2
 32:11 33:23
 34:12 35:24
 37:4 38:12
 42:9 44:8,18,
 20 47:1,21
 48:16 49:4,15
 52:8 53:10
absolutely
 21:5
academy  8:9,
 16
accept  52:9
access  37:19,
 25 55:25

2

accessing
  50:22
account  55:16
accounts  47:1
accurate
  45:25
across  51:5
active  55:13
actually  35:9
  37:8
added  36:9
address  26:25
  27:2,3,4,6
  41:25 42:1
  46:24 50:1,3
  55:10 56:1
adept  35:5
administrator
  34:21
admissions
  9:19
affair  13:18
affirmed  4:22
after  8:15
  9:13 22:10,25
  25:1 35:22,23
  40:6 41:1,2
  44:1,24 47:22
  50:19 54:20
  55:19,20,23,
  24
again  26:15
  34:5 39:7
  52:21
against  28:18
  29:2,14 55:18
ago  6:8 49:4
agreement
  37:18,20,24
  38:1,3 48:18
  52:3
agreements
  37:15 48:17
alive  12:19
all  7:8 20:14
  34:21 35:7
  36:4,22,23

39:10
alleging
  28:23
allows  20:11
already  17:8
  26:14 27:16
  36:7,8 49:16
also  6:19
  11:14 15:3
  20:4 35:10
  43:15 44:8
alter  5:13
always  34:12
  46:8,18
amount  12:2
  16:25 38:4
  54:5
analyst  7:10
analyzing
  7:11
and  4:5,22
  6:17 7:12,18,
  21 9:10,11
  10:25 11:16
  14:19,24
  15:14 16:1,
  11,24 17:7,8
  18:15 19:2
  22:3,4,5,22
  24:17 25:3,9
  27:9 28:4
  29:2 30:19
  31:15,24
  32:12,14
  33:2,13 34:5
  36:5 38:18
  40:4,8 41:21,
  22,25 43:3,
  15,23,25
  44:13,18
  45:22,23
  46:5,7,22,24,
  25 47:6,10
  48:16,17 49:5
  50:1,5 52:23
  53:8,9,14,22
  54:11,20
  55:8,12,15

Andreou  23:21
announce  4:5,
  14
another  7:1
  28:8 37:24
  42:6 43:23
answer  25:3,
  7,25
answering
  40:7
any  5:10,13
  6:21 9:19
  13:4,13,14
  14:3 16:12
  17:11 18:9
  21:9 29:8,14,
  19 33:9
  40:13,21
  42:7,14,17
  46:9,12 48:3
  50:9,16 53:9,
  18,22,23
anyone  44:18
anything  13:1
  17:17 27:21
  28:4 31:19
  33:5 54:23
anyway  42:5
anyways  17:20
anywhere
  20:25
App  44:7
appearances
  4:5
appears  45:6
appreciate
  46:25
appreciated
  16:17
approximately
  24:20 39:8
approximation
  39:7
April  40:1
are  6:23 7:6
  17:23 20:7
  21:13 32:4

34:24 44:4
areas  35:3,11
around  21:15,
  16
as  4:22 6:17,
  19 7:4 8:23,
  25 14:15
  23:16 25:9
  28:10 32:25
  35:8,11 37:6,
  12 38:7 40:8
  43:1,3,5 45:4
  49:17 52:13,
  25 56:8
ask  18:12,15
  21:25 23:21
  27:14 39:3,5
  50:7 51:4
asked  27:16,
  23 41:14 42:5
  52:8 54:24
asking  19:5
  30:17 37:3
  38:11
aspects
  34:22,23
assigned
  8:10,16
assist  7:20
  8:10
assistance
  12:24
assisting
  24:1
assume  13:3
assuming
  53:10
at  6:9,14
  8:4,16 11:13
  12:23 15:7,19
  17:18 18:14,
  17 19:5,7,8
  22:23 23:2,3,
  4 24:8 30:20
  32:18,19,24
  33:3,6 34:3
  35:20 38:10,
  12 43:2,22

44:5,6,11
45:3 46:3,11
49:17 50:18
53:5 54:19
55:2,6
**ATO** 49:10
**attached** 44:9
**attend** 6:10,
12
**Australian**
42:16 44:21
45:1,5 49:9,
10,12
**authorities**
45:5 49:10
**authorized**
24:11
**autopsy** 40:16
**available**
17:19
**aware** 13:7,12
20:13 22:22
38:17,20
41:6,9
**away** 9:24
40:1 50:19

---

**B**

**back** 11:8
15:7 26:2
27:13 32:4
34:6 44:13
47:10,14
54:16
**background**
33:13
**bad** 28:4
**Barry** 6:15
**Base** 29:13
**based** 12:18
16:23 19:23,
25 21:3 23:10
24:13 33:19
48:17 51:13
**basically**
7:11 11:23

21:16 30:23,
25 36:3
**basics** 5:9
**basis** 11:24
29:14 53:22
**Bates** 15:18
46:4
**Beach** 6:2 8:4
10:10 11:14
33:20 50:2
**became** 11:10
35:5,8,23
**because** 27:15
30:1 50:20
54:3
**become** 38:20
41:9
**bedroom** 40:22
**been** 4:21 5:3
6:16 7:3,14
9:22,23 12:19
18:3 19:3,14
22:4,7,19
23:3 24:16
31:11 36:21
41:16 45:3,14
47:8 48:1
50:20
**before** 5:3
6:1,7 11:10
25:12 29:24
31:12 40:3
**began** 35:9
**beginning**
15:25
**behind** 16:3
**being** 8:11,
18,23,25 13:7
16:21 52:8
55:1
**believe** 16:25
19:1,7 21:3
23:11 30:10
31:16 32:17
34:5 38:17
40:3,23 42:24
52:7 53:22
54:25 55:3,13

**believes**
16:21 53:16
**Belize** 46:7
**belonging**
17:11
**best** 37:8,9
**better** 14:25
**between**
32:11,14 34:6
36:22,23
37:15 41:21
43:23 45:21,
23 47:6 48:17
**bill** 12:24,25
38:24 39:1,4
**billions** 52:4
**bills** 12:20,
21 13:3 52:9
**bit** 34:24
48:16
**Bitcoin** 7:15,
23 12:2,4
16:25 22:23,
25 23:1,4,5,
6,13 27:23
28:24 29:9,20
48:5,7,10,13
50:12 53:24
**Bitcoins**
17:17 53:18
**biz** 42:7
**blank** 16:7
**Boca** 6:11
**Both** 6:18
**bottom** 15:19
**Boulevard**
50:2
**bouncer** 11:13
**bound** 9:11
**box** 18:24
**break** 17:14,
25 31:24
47:10
**brief** 27:12
32:3
**brought** 19:8

**Bruce** 4:11
31:15 32:24
**Bryan** 4:7
32:18 42:20,
21 52:16
**BTC** 46:24
**bullet** 40:22
**business** 12:7
28:1 34:7,10,
13 37:7,9,10,
12 52:10
**but** 11:5 14:5
16:20 17:19
19:7 21:18
23:23 26:4,14
30:24 34:6
35:2 37:9
38:15 40:3
42:16 45:25
46:8 48:1,8,
12 50:14,22
51:11 53:16
55:13
**by** 4:24 9:6,
10 12:10
15:11 16:18
17:3 18:15
19:12 22:17
23:9,19 24:7
25:1,21 26:6,
11,23 27:19
28:13,17,22
29:7,12,18,23
30:5,16 31:1,
5 32:6,7,23
36:11 37:23
41:20 43:21
44:15,18
45:8,18
47:15,16,19
49:2,8,21
51:1,16,23
52:2,19 53:2,
12,21 54:2,18
55:5,12,18

**C**

California
  7:7
call   22:2
  26:3 37:6,8
  48:12
called   11:14
  22:5 40:6,12
  41:7 48:10
calls   29:15
  47:25
came   52:17
can   4:13
  12:12 14:6
  15:18 16:15
  20:20 22:12
  24:21 33:5
  34:17,23
  36:12 40:4
  43:22 46:3
  47:9,23 54:10
can't   21:20
capacity
  37:6,12
car   9:10
Carter   19:18,
  23 29:2 31:16
  55:8
Carter's
  19:25
case   7:15,17,
  19,20 23:25
  44:9
cases   7:6,14
  36:9
cash   16:12
  53:8
cashed   16:20
  53:14,15
casual   38:22
cause   9:14
  14:21 40:15
causes   40:17
cell   7:12
  12:23,24

14:24 17:8,
  12,19,20 18:5
  38:24 39:17
certain
  37:19,25
certifications
  6:21 35:1
certified
  6:24 7:4
cetera   35:6
chain   17:5
  19:13 41:21,
  22 42:4,12
  43:23 44:2,3
  47:4,6
characterizati
on   45:25
characterize
  8:22,25
check   25:4,6
checked
  24:10,22
checking
  50:20
child   14:15
circumstances
  40:5,11
clarify   49:3,
  11
classes   6:13,
  14
clear   21:6
  40:4 43:16
close   8:20
  11:3,23
  21:10,13
  23:11,23 51:7
closer   18:18
co-worker
  13:18,19,20
coins   16:12
  53:9
college   6:12,
  13
color   20:21
come   21:19
  22:5 25:4

35:24 36:6
  41:14 47:10
  49:11 50:12
  51:5
comments   51:5
communicate
  24:21,25
communications
  33:9
company   5:18,
  20,24 7:20
  26:11 36:7,10
  42:15
complained
  52:8
complaint
  28:9,19
complete   5:11
computer
  5:17,19,22
  7:1,9,11
  11:15 26:11
  29:2 34:2,13,
  14,15,20
  35:5,6,10,13,
  18 36:4,12,25
  39:14 48:3
  55:3,7,8
computers
  7:12 11:5,14,
  15 20:16
  34:22 35:7
concerned
  24:18
concerning
  42:9
concluded
  56:13
conclusion
  29:16
confer   27:8
confusion
  34:5
Conrad   5:20
  29:2 31:16
  55:8
Conrad's   43:3

conservative
  25:22 26:4
consistent
  30:20 31:2
contacted
  25:8 44:17
  47:16
contain   42:17
contents   21:2
continued
  9:12
controlled
  54:20 55:6,12
controls
  55:10
conversation
  24:13,14
  47:24
conversations
  25:11 36:1
  38:22
copied   45:24
copies   46:22
copy   28:8
  42:22,23,24
  44:14 45:4
  47:3 56:10
correct   35:14
  40:1 50:11
Corsair   20:21
could   4:25
  7:17 16:16,19
  17:4 21:12
  26:24 28:19
  31:11 36:21,
  24 39:24,25
  42:6 45:3
  46:21 53:5,
  13,15 54:4
counsel   4:5
  30:6 32:12,
  15,24 33:10
  49:3,15
count   29:1
County   6:2
  33:20

couple  6:24
  25:1 47:9
course  32:1
court  44:8
  49:11,13
  56:10
cover  26:19
crack  17:21
Craig  4:7,9
  12:7,11 27:20
  28:2,4 45:23
  46:4,5,11,14,
  17,22 47:3,6,
  17,19,23
  53:10,17,23
creation
  48:13
creator  48:5,
  7,10
crime  40:18
cross  32:5
  52:17,25
Crypsi  7:18
  23:25
crypt  20:5,7,
  10,13

D

daily  11:24
damaged  17:16
data  7:11,12,
  13,20,21,22
  20:12
date  4:3 53:3
  55:17 56:2
Dave  10:11,
  15,18,23,25
  11:3 13:19
  14:7,12
  16:11,21,25
  17:12 20:13,
  16 21:3,4,6,
  25 22:10
  23:1,10,12
  24:21 25:17
  26:12 27:6,

20,23 28:1,4,
  24 30:2
  33:13,14
  34:7,11 37:6,
  10,13,15,18,
  19,24 38:1,3,
  6 39:5,8,14,
  17,20,25
  40:4,5 42:8
  46:8,18 48:2,
  4,7,9,10,13,
  16,18 49:24
  50:18,19
  51:4,13,17
  52:3,7 53:7,
  15,17,23
  54:3,4
Dave's  12:13
  13:7,10 16:23
  19:2,3,18
  20:2 21:9
  22:23 24:8
  29:8,20 34:17
  38:18,20
  40:11,15,19,
  22 41:6 47:22
  54:20
Dave@
computerforens
icsllc  55:2
Dave@
computerforens
icsllc.com.
  55:14
Dave@
davekleiman
  55:16
Dave@
davekleiman.
com  54:21
  55:11
David  5:24
  7:25 8:20,22,
  25 9:2,7
  11:6,8,9,18,
  20 12:1,4,6
  13:23 18:4,9
David's  18:12

day  24:24
  39:11 42:13
  44:1,24
days  22:4
death  22:23
  23:3 24:23
  38:23 40:11,
  15 41:1,6
  47:22 54:20
  55:3,6
deceased
  21:21 25:10
December  4:4
decide  34:10
decided  24:17
defending
  29:13
defense
  32:12,14
  33:10 41:7
  46:6
Delray  11:14
depo  43:3,4
deposed  5:3
  6:16
deposit  18:24
deposition
  5:7 15:9
  19:10 22:15
  23:17 24:5
  26:21 27:15
  28:11 41:18
  43:19 45:16
  49:19 52:14
  56:13
depositions
  34:6
describe
  20:20 34:17
  36:12 40:5
destroyed
  17:15 24:2
detail  34:24
detective
  6:2,4
development
  25:9 40:8

device  17:16
devices  17:15
Dex  52:21
Dex561@yahoo.
com  15:16
  42:2
did  6:7,10,
  12,14 7:25
  8:2 9:7,14
  10:11,18,23,
  25 11:9,14,20
  12:1,4,6,11
  13:1,2,13,16,
  23,24,25
  14:3,7,14
  16:24 17:8,11
  18:9,12 19:7,
  8,23 20:1,18,
  24 21:6 22:2,
  25 23:11
  24:14,20
  25:6,12 26:9,
  12 29:8,13,19
  32:14 33:9,
  13,25 34:2,
  10,13,14
  35:4,12,24
  36:4 37:12,15
  38:6,12,20
  39:3,8,14,17,
  20,22 40:14,
  18,25 41:9,14
  44:12 46:8,
  12,14,17,18
  47:19,23
  48:12 49:11
  50:14,16
  53:17 55:8,9,
  15,25
didn't  15:4
  25:3,7 38:10,
  23,25 42:16
  50:13
die  25:13
died  22:6,9
  25:12
different
  8:18 43:7

| | | | |
|---|---|---|---|
| difficulty 14:17 | document 15:12 28:14, 16 42:5,13 | duly 4:21 | 42:12 |
| dire 52:10 | documents 42:7,9 | during 8:13 25:11 55:20, 21 | ended 13:14, 17 |
| DIRECT 4:23 | does 7:9 8:8 42:8 52:16 | | ending 46:4, 21 |
| directory 36:10 | doesn't 54:23 | **E** | ends 41:22 43:25 |
| disappear 46:24 | doing 18:7 36:4 46:19 | e-mail 15:16 16:1 17:4 18:22 19:13 22:18 23:20 41:21,22,25 42:1,4,12,18 43:23,24 44:2,3,6,10, 11,19 45:10, 19,21,23 46:1,4,15 47:4,6 49:22, 23 50:5,15 52:12,20 54:21 55:10, 25 | enforcement 6:6,7,17 11:17 34:14 40:24 |
| discussed 30:11,20,24 33:3,6 44:23 45:10 | dollars 23:12 52:4 | | enough 24:16 38:23,25 |
| discussing 30:12 31:21 33:4 | don't 6:25 7:7 9:18 10:20 11:2 13:2 14:13, 20,21,23 18:2,13 19:14 21:21 22:12 25:20,25 26:3,18 29:5, 17 30:18,23 31:7,12,19 32:16,21,22 35:1 36:6,16, 20 37:2 38:14 40:20 42:25 47:3,18 48:11 50:6,9,14,15, 17,20 51:8,21 52:7 54:7 55:17 56:2 | | entity 41:7, 10 |
| discussion 47:13 54:15 | | | envelope 50:3 |
| Dixie 6:9 | | | equipment 48:4 |
| DK 47:1 | | | essentially 30:12 31:21 33:4 |
| do 4:12 5:18 6:7,21 7:3 8:6 9:22 10:5,15,17,21 11:3 12:13, 16,21 13:4, 10,13 14:9, 10,11,14,18 15:1,7,12 18:20,24 19:13 20:1,3, 16 21:1,9 22:1,6,9,18 24:9,11 25:4, 6 26:17,25 28:14 30:17 32:18 34:2 35:4 36:25 40:13,18,21 41:22 42:1, 22,23 44:2,7, 14 45:19 46:5,9,11,17 47:21 49:23 51:18,24 52:4 53:22 54:3,23 55:11 56:10 | | | even 17:18 18:2 24:25 38:4 48:19 |
| | | e-mailing 15:21 | ever 5:3 7:14 9:10 10:3,11, 15,18,23 11:9 12:1,4,6,11 13:1,25 17:11 18:9,12 20:1 21:6 23:11 25:12 26:7,12 29:8 30:6 35:4 42:15 47:8,19 51:5, 8 53:17 |
| | | e-mails 15:14 17:7 33:10 44:22 | |
| | | earlier 6:16 38:17 41:12 42:19 | |
| | | early 36:6 | every 11:22 24:24 |
| | | eight 43:12 | everyone 4:2 |
| | | element 34:25 | everything 41:25 |
| | done 31:23 43:12 | else 13:1 26:20 31:14 32:19 36:1 44:17 | evidence 7:1 29:19 40:21 |
| | down 20:4 | ENCE 6:24 | ex-wives 13:10 |
| | Dozens 7:5 | encrypt 18:4 20:12 | exactly 30:24 31:12 35:1 48:11 |
| | Dr 4:7,9 | encrypted 17:13,20 | |
| | drive 18:5 19:2 20:18, 20,22 21:1,4, 7 | encryption 17:14,21,25 20:11,14 | |
| doctors 24:11 | drives 17:8, 11,22,23 18:1,23 19:1, 3,6 | end 11:25 13:13,16 24:8 | |
| | drove 40:8 | | |
| | due 49:25 | | |

| | | | |
|---|---|---|---|
| **EXAMINATION** 4:23 | **fallen** 22:3 48:19 | 26:19 33:14 41:9 42:4 | 7,9 |
| **examined** 4:22 | **familiar** 20:7 | 43:8,25 | **Forensics'** 36:12,25 |
| **examiner** 5:17 6:24 | **familiarity** 34:17 | 44:11,20,25 46:3,23 47:16 | **form** 32:20 36:2 37:21 |
| **example** 51:7 | **far** 38:7 50:12 | 48:2 49:23 55:25 | 45:7,12 48:21 54:22 |
| **exchange** 23:20 45:10, 19,22,23 | **February** 15:21,22 16:1,2,4 17:7 | **five** 31:24 **Florida** 7:6,7 33:19,21 50:2 | **formed** 5:22 35:20,21 |
| 49:22 52:21 | 18:14 45:22 | **flu** 22:7 | **former** 27:3 |
| **exchanges** 44:19 | 53:3 | **focus** 22:21 | **forming** 36:7 |
| **excuse** 42:21 | **feedback** 14:21 | **follows** 4:22 | **forward** 47:6 50:5 |
| **excused** 56:12 | **felt** 25:12 | **foolish** 26:4 | **forwarded** 47:7 55:1 |
| **exhibit** 15:6, 9 19:10 22:15 | **female** 32:21 | **for** 4:7,9,10, 11,15,25 5:18 | **found** 20:1 22:4 25:9 |
| 23:17 24:5 26:14,17,21, | **few** 14:5 22:4 27:9,14 32:8 | 6:4 9:24 11:15,16,24 | 40:4,5,6 44:8,16 |
| 25 28:10,11 41:17,18 | 45:24 48:24 54:19 | 12:19,23,25 15:10 16:11, | **Freedman** 4:15 |
| 42:24,25 43:1,3,4,5,8, | **field** 33:17, 18 | 24 18:12,20, 23 19:11 20:2 | **freelance** 11:15 |
| 19,22 44:2,23 45:3,4,15,16 | **fighting** 25:14 | 22:1,4,16 23:4,18 24:6, | **frequently** 10:13 20:24 |
| 49:4,16,18, 19,22 52:13, | **file** 20:5,7, 10 29:14 | 11,17 25:17 26:16,22 27:8 | 38:15 39:22 |
| 14 | **filed** 28:17 | 28:12 29:1,15 | **friend** 8:20 21:19 22:4 |
| **exhibits** 41:13 43:14 | 36:8 55:18 | 31:17 32:8 33:22,23 | 37:8,9 |
| **expect** 37:19 38:1,3 48:18 | **filing** 44:12, 16 | 39:3,5,11 41:15,19 | **friends** 21:10,13,15 23:11 51:7 |
| **experience** 7:22 48:16 | **financial** 12:13,16 | 43:4,17,20 44:7,17 45:17 | **from** 5:10 9:2 15:16 16:23 |
| **experienced** 18:7 | 16:23 36:12 38:18,20 | 49:10,20 50:18 51:7 | 19:2,3 24:21 27:21 31:19 |
| **expert** 6:19 7:4 18:8,9 | 48:19 | 52:8,15 53:8 54:22 | 40:24,25 42:13,16 |
| 34:20 | **find** 16:11 37:13 44:12 | **foreclosed** 13:8 | 44:21 45:1,5 46:4 49:9,11, |
| **expertise** 34:18 | 53:8 | **forensic** 5:17 7:9 40:13 | 24 50:12,22 52:9,21 |
| **Extensive** 34:21 | **fine** 16:8 26:18 | **forensics** 5:19,22 11:15 | 53:18,23 54:4 |
| **extra** 44:14 | **finish** 17:8 31:25 54:11 | 26:11 29:3 34:2,13,14, | **front** 42:25 43:9,11,14 |
| | **Fire** 22:5 | 16,19,20 | **full** 5:10 |
| **F** | **firm** 7:19 | 35:5,13,19 36:4,5 55:4, | **further** 48:23 56:3 |
| **fair** 37:17 | **first** 4:21 8:3 16:5 17:4,19 19:17 | | |

future   25:18

G

Gardens   50:2
gave   12:25
  13:2 39:5
gears   48:15
Geiser   46:7
general   33:12
generally
  11:6
get   40:4
  55:25
getting   6:8
  25:2 50:18
girlfriend
  14:11 25:8
girlfriends
  14:4,7
gist   30:4
give   26:1,2
  46:5
giving   5:10
  13:5
go   5:9 13:23,
  25 16:4 17:4
  33:12 34:10
  42:4,12 43:24
  46:21 49:23
  51:18 52:20
going   5:9
  6:19 14:21
  20:4 24:4
  25:3,13 26:16
  27:8,11,14
  34:12 41:17
  43:7 47:2
  50:6 51:6
  52:24 55:3
gone   25:1
good   4:2
  32:7,16
got   17:19
  42:15 47:9
government
  42:16 44:21

45:1
group   48:8
guess   15:18
  22:1,11 26:15
  38:8 46:20
  51:12,13
guns   19:19
  20:2
guys   16:15

H

had   8:13 9:11
  11:13 12:1,6,
  18,19 13:9
  14:5,14
  16:21,25
  20:13,16,18,
  21 21:19
  22:3,7 23:4,
  6,12,20,22
  24:13,14,16
  25:1,11 28:1
  29:20 34:12
  35:7 36:7
  37:16,18,24
  40:6,16,23,24
  41:12 45:5,10
  46:19 47:1
  48:1,2,4,19
  49:15 51:4,5,
  17 53:16
hadn't   50:20
hand   41:17
handed   15:12
Handing   45:14
handled   7:19
hang   15:1
happening
  51:8
happens   14:22
hard   17:22,23
  18:1,4 19:3
hardware   48:3
has   28:24
  43:14,15 44:9
  50:1,12

have   4:12,13
  5:3,13,20
  7:14,22 9:7,
  14,18,22,23
  11:1 12:13,16
  13:4 14:7
  16:19 17:9
  18:13 19:3,
  18,23 20:24
  23:2,5,22
  26:7 27:6,17
  29:8,13,19
  30:6 31:11
  32:8 33:9
  36:21,24
  38:23,25
  39:14,17
  41:16 42:23
  44:14 46:5
  47:8 48:24
  51:18 52:4,5,
  7 53:13,15,22
  54:23 55:13,
  17 56:2
having   4:21
  12:20,21
  13:17 14:17
  16:14 25:2
  34:6
he   8:15,16,17
  9:3,10,11,23,
  24 10:3 11:4,
  5,10,13,14,
  16,23 12:1,6,
  11,18,19,20,
  21,24 13:2,
  24,25 16:19,
  21 17:7,18
  18:7,8,13,15,
  25 19:1,5,7
  20:14,15,18,
  21,24,25
  21:1,14,19,21
  22:2,3,7,9
  23:4,5,6
  24:2,9,10,15,
  16,17,22
  25:3,7,12,14,
  17,22 26:1,2,

4 28:1 29:19
  34:13,19
  35:1,2,4,5,7,
  8,9,10,12,13,
  15 36:5 37:8,
  9,17 38:8,23,
  25 39:3,11,
  20,22,24,25
  40:7 43:14
  46:18,19,22
  47:7 48:1,2,
  3,4,5,7,8,10,
  12,19,22 49:9
  50:7,14,15,16
  51:5,6,9,11,
  18,21,24
  52:4,10,23
  53:9,10,13,
  14,16
He'll   56:5
head   6:25
  19:15 21:20
  38:14
header   44:11
health   9:7,12
hear   16:16
  26:9 40:25
heard   13:9
  26:7 40:23,24
  44:18
hearing   14:18
held   35:2
  47:13 54:15
help   13:1
  24:3 42:6
  46:6
helping   24:1
her   13:17
  14:9 32:22
  40:6,7
here   10:9
  21:15 48:15
  50:15 51:18,
  19
hers   13:20,
  21,22
hey   38:22

high  6:9,11
him  8:3,15
  9:14 10:19
  11:4,19,22
  12:25 13:1,2,
  5 14:7 16:10,
  12,24 20:24
  22:4 24:11,
  13,14,17,25
  25:2,3,5,9,
  10,11 27:8,21
  37:8,16 38:7,
  8,9,10,11,12,
  15 39:6,14,17
  40:6,8 43:10,
  11,15 48:17,
  18 50:6,7
  51:2 53:7,8
  54:3 55:12
himself  11:6
  24:10,22
  51:24
hired  7:19
his  8:4,8
  9:12 11:6,9
  12:16,20,23,
  24 13:13,14
  14:3 17:12
  18:9 19:2,19
  21:15,19,23,
  24 22:4 23:3
  24:22 25:4,8,
  22 26:2
  33:17,18
  35:7,8 37:6,
  12 38:23,24
  39:1,3 41:1
  46:8,18 49:25
  50:14,15 51:6
  52:9 53:18,24
  54:5 55:3,6
hit  9:10
hive  9:13
hold  6:21
  25:2
hole  40:22
home  40:19

honest  51:22
honor  37:15,
  19 38:1,3
  48:18
honorable
  48:22
honoring
  48:16
hospital
  9:15,19,24
  10:1,3,9,11,
  16,19 12:19
  22:1 24:9,22
  38:8,10,13
  39:9,15,18,
  20,23
hospitals
  10:5
hours  56:9
house  13:7
  19:2,4 25:4,9
  40:9
how  5:5,7 6:4
  7:3 8:2 9:17
  10:13 11:18
  12:16 13:14,
  16 14:11
  16:10 18:4
  20:16 22:2,6
  23:10 24:9,20
  25:25 26:9
  30:9 33:22
  35:4,5,24
  36:15 38:6,
  12,20 39:8
  51:5,13 52:16
  53:7,8
hundreds
  23:5,12

_____

I

I'LL  18:22
  43:5 56:8
I'M  5:9 13:11
  26:18 27:8,14
  41:24 43:7
  46:24 47:5

52:24 53:9
I'VE  42:14
identification
  15:10 19:11
  22:16 23:18
  24:6 26:22
  28:12 41:19
  43:20 45:17
  49:20 52:15
identify
  34:23
if  9:2 10:15
  14:18,20,24
  16:12,15
  18:15 20:1
  23:4,6 24:21
  25:3 26:2,3
  27:16 37:2,
  18,24 38:4,11
  40:13,21
  42:4,6,12
  43:22,24
  44:5,10 45:3
  46:3,21,24
  47:5 48:19
  49:22 50:7
  51:4,9,17
  52:3,10,20
  53:9
important
  21:4
in  4:6 6:5
  7:6,14,18,20
  8:7,10 9:11,
  24 10:2,3,9,
  11,16,19
  11:5,6,14
  12:19 16:11,
  12,20 17:18
  18:7 20:21,23
  22:3,5,20
  23:25 24:1,
  10,14 25:8
  26:10 27:4
  28:23 31:14,
  19 33:15,18,
  19,22 34:1,7,
  13,14,15,19,
  20,21 35:2,9,

11,18 36:5,
  13,18 37:1,6,
  12 38:6,8,13,
  18 39:8,9,14,
  17,20,22
  40:8,22 41:4,
  11,24 42:18,
  25 43:3,9,11,
  14 44:2,23
  46:4,14,21
  47:1,3 48:3,
  9,13,19 50:15
  52:4,10,18
  53:7,8,14,15
  55:17
indestructible
  20:22
indicate
  25:12
individual
  37:25
individuals
  45:24
infection
  25:15
Info  26:7
  41:7 46:6
information
  24:2 30:19,
  20,21 42:17
informed
  44:20
initiation
  55:23,24
injunction
  29:2
instructor
  35:11
internet
  21:17,18
interpreting
  7:12
into  7:18
  34:7,10,12
  40:10
investigate
  40:14

**investigated**
  40:21
**investigation**
  40:10,14,18
**involved**  11:5
  17:18 22:20
  23:1 41:24
  48:2,9,13
**involves**
  19:16
**involving**
  7:15 15:14
  34:22
**Ira**  4:16
  10:15,18,21,
  23,25 11:3
  13:4 15:3,15,
  21 16:10,19
  17:7 18:12,
  15,23 20:1,4
  28:17,23
  29:13 31:15,
  17 40:24,25
  41:14,21
  42:5,9 43:23
  44:10,20,25
  45:10 46:22
  47:3,4,7
  50:5,9,13,22
  52:21 53:7,17
  55:12,18,25
**Ira's**  15:16
  42:1
**is**  4:3,4 5:9,
  16,20 6:25
  8:16 14:21
  15:3,16,21
  16:3,7,10
  17:14 18:15,
  17 19:20,23
  20:8,10 21:21
  22:13 23:20
  24:4 26:14
  27:2 28:16,
  17,23 32:8
  41:21 42:13,
  17 43:16,22
  44:5,11,22
  45:4,25 46:8,

23,24 47:6
49:16,22,23
50:2 51:19
52:21,23
53:10,14
55:11,13
**issue**  42:6
**issues**  9:7,9,
  12,14 16:14
  52:17
**it**  7:9 8:8,17
  9:3 12:23
  13:3,9 14:19,
  20,22 15:19
  16:11 17:10,
  16,18,20,21
  19:15 20:14,
  21,22,25 21:2
  22:13 23:5
  24:3,17 26:2,
  10,18,20
  27:17 28:10,
  17,25 30:4,24
  31:8,10,11,13
  32:17,21,24
  33:15 35:9,
  20,21,25
  36:3,6,21,24
  37:4,5 38:4
  39:6,10,12
  40:16 41:23
  42:14,16,23,
  24 43:5,6,11,
  25 44:8,18
  45:6 46:8,24
  47:5,8,9,22,
  25 48:8,9
  49:24 50:1,7,
  21 51:2,6,24
  52:23 53:8
  54:8 55:3,17,
  19,20 56:8
**it's**  7:11
  10:9 15:25
  16:19 18:2
  19:14 20:11
  22:19 26:16
  41:24 42:13
  43:4 44:1,6,

24 45:21,22
48:1 53:13
55:13 56:6

---

**J**

**January**  19:20
**jobs**  11:16
**Jody**  21:23,
  24,25 22:4,6
**just**  6:13,25
  14:19,22
  15:12 16:14
  18:22 21:6
  22:10,21
  23:21 25:14,
  16 26:4,16,20
  27:15,16
  31:21 32:8
  33:12 34:24
  35:2,25 36:9
  38:22 39:5,7
  40:3,16 43:16
  44:16,22
  46:19 48:1,
  15,24 49:3
  50:13 51:4,
  11,17 52:11,
  12 54:3,19,
  22,24

---

**K**

**Kass**  4:9
  14:22
**keep**  43:9,11
  51:24
**kept**  11:6
  21:1
**Kimon**  23:21
  24:1
**kind**  20:14
**kinds**  34:21
**Kleiman**  4:16
  5:24 7:25
  8:2,13 10:15,
  18,21,23
  11:1,3 13:4

15:15 18:4
21:25 23:12
28:17 30:2
46:22 49:24
52:21
**knew**  54:3
**know**  6:25
  7:25 8:2,6
  9:18,22
  10:15,17,21
  11:2,4 12:23
  13:2,10,11,13
  14:3,11,14,
  20,21 16:23
  18:4,20,24
  20:1,3,16
  21:1,9,11,14,
  16,19 22:2,6,
  7,9,12 23:10
  24:9 25:20,25
  26:3 29:5,17
  30:1,19 32:22
  35:2 36:3,20
  40:7,13,20,21
  44:4 46:14
  50:14,17
  51:13,18,21
  54:3,7 56:2
**knowing**  16:24
  17:17 21:3
**knowledge**
  12:13,16 13:4
  19:24,25
  34:21 35:8
  39:13
**knowledgeable**
  35:2
**known**  19:18
  34:20
**Kyle**  4:10
  32:8

---

**L**

**Lake**  50:1
**large**  12:1
**largely**  45:22

last   5:2
   16:5,7 23:22
   31:10,11,12
   52:12,20
later   44:12,
   13
law   6:6,7,17
   7:19 11:17
   34:14 40:24
lawsuit   28:17
   29:13,14
   30:13 55:18,
   19,23
lawyers   31:17
leading   30:3
   38:23
learned   23:1
leave   24:12,
   17 33:25
left   8:15
   24:9 47:4
legal   29:15
Lenox   24:2
less   36:17
lesser   16:20
   53:16
let   26:15
   40:6 51:4
letter   41:11
   49:9
life   11:7
   35:7
like   9:25
   10:6,7 15:14
   19:15 21:17
   22:10,19
   41:24 46:3
   51:7,9
likely   9:5
line   15:3
   52:24
Lineda   14:6
   40:6
list   47:2
little   16:15
   34:24 48:15

live   14:7,15
   21:21
lived   14:11
   21:14 25:8
   40:7
LLC   5:19,22
   26:11 29:3
   41:7 46:6
   55:4,9
locate   42:7
located   10:1
location   47:1
locations
   46:7
long   6:4,8
   9:20 14:11
   16:24 18:3
   19:14 22:1
   24:16 33:22
longer   17:19
look   10:7
   15:14 19:5,8
   22:25 41:15
   43:22 44:5,10
   45:3 46:3
   53:5
looked   10:5
   23:2
looking   43:2
   44:17 49:17
looks   19:15
   22:19 41:24
lot   11:19
   16:21 21:15,
   18 25:18
   35:11 46:5
   51:5 53:16
Lotto   51:9,10
louder   16:15
luck   23:22

_____

M

_____

made   24:25
   48:4 51:5
mail   27:6
   50:18 54:25

mailbox   26:10
   41:11 49:25
   50:7,10,13,
   16,19,23
mailing   27:3,
   4 44:8
make   27:17
many   5:5,6
   6:16 7:3 9:17
   20:16 24:20
   30:9 35:11
   38:12
March   41:22
   42:14 43:25
   45:11 49:25
Maria   13:11,
   17
mark   22:12
   23:16 26:15
   28:8,10 42:25
   43:7 52:13
marked   15:10
   19:11 22:16
   23:18 24:6
   26:22 28:12
   41:19 43:3,4,
   20 45:4,14,17
   49:16,17,20
   52:15
marriage
   13:16
marriages
   13:13,14
max   54:13
may   18:13
   19:3,18 30:19
   34:5 36:24
   41:16 46:6
maybe   6:5
   31:12 39:10
   47:25
me   7:17 12:18
   15:14 16:4
   19:16 20:15
   21:12 24:3
   26:15 36:9
   37:3 41:12
   42:6,19,21

48:5 51:4
   52:9
mean   7:9 8:8
   21:13 23:21
   34:19 38:8
   44:4
means   23:5
   29:6
meant   46:17
media   13:23,
   25
medication
   5:13
meet   33:14
meeting   18:20
   30:1,20 31:6,
   14,20 32:14,
   18,19,25
   33:3,7
meetings
   32:11
mention   12:4
   13:9 19:18
   24:25 48:4
mentioned
   11:4,5,13
   27:23 32:18
   48:1,2,12
mentions   20:4
messages   25:7
   45:25
met   8:3 14:5
   29:24 30:10
Miami   7:18
   10:2
might   5:13
million   23:23
   51:17
millions
   23:5,12
mind   14:18
mine   15:23
minute   31:24
   47:10 54:10,
   11
minutes   27:9
   32:7 44:12,13

mistaken   47:5
money   12:25
   13:2,5 16:11
   25:23 26:2
   38:4,24,25
   39:3,5 51:5
   52:8,9,11
   53:8 54:5
months   38:23
more   27:14
   34:24 35:8
   36:17,21 37:5
   38:15 52:12
morning   4:2
   11:23 32:7
Most   9:5 35:7
Mr   4:7,9,10,
   11,12,13,15,
   16,24 5:3,16
   7:25 8:2,13
   9:4,6 12:9,10
   14:17,20,22,
   23 15:1,3,4,
   6,7,8,11
   16:14,18
   17:1,3 19:9,
   12 22:12,14,
   17 23:8,9,14,
   16,19 24:4,7
   25:19,21,24
   26:6,14,16,
   20,23 27:8,
   10,14,18,19
   28:6,8,10,13,
   20,21,22
   29:4,7,8,11,
   12,15,18,21,
   23 30:3,5,15,
   16,22 31:1,3,
   5,23,24 32:1,
   6,20,23 36:2,
   11 37:21,23
   41:17,20
   42:22,23
   43:2,3,5,6,7,
   9,11,12,13,
   14,18,21
   44:14,15
   45:7,8,12,14,

18 47:9,11,15
   48:21,23,24,
   25 49:2,5,6,
   8,17,21 50:24
   51:1,14,16,
   20,23,25
   52:2,6,12,16,
   18,19,24
   53:2,11,12,
   19,21,25
   54:2,6,8,9,
   10,12,13,18,
   22 55:5 56:3,
   5,8,11
much   11:4
   36:15 39:8
   46:8
mute   14:24
my   6:25
   14:18,24
   19:15 21:20
   24:10 25:3
   32:8 37:8,9
   38:14 39:13
   40:7 41:24
   47:6 52:9,11
Myself   55:8

_____

N

name   4:25 5:2
   14:9 21:9,19,
   20,22,23,24
   32:8,22
names   13:10
   14:3 21:12
nationally
   34:20
natural   35:25
   40:17
nearby   21:21
need   16:11
   50:10,16
   52:10 53:7
needed   12:24
   26:2
network   11:16
   34:20

networking
   11:16
never   11:4
   19:7,8 20:25
   21:2 27:20,23
   28:1,4 39:5
   42:14 44:17,
   18 46:24
new   7:7 8:9
   49:13
next   44:10
   56:9
nine   43:16
NK   6:24
no   5:12,15
   6:13 8:24 9:1
   10:17 12:3,5,
   8 13:6 14:10,
   13,16,20
   15:4,9 17:2,
   13,15,19
   18:11,21
   19:10,14
   20:3,17 21:8
   22:15 23:15,
   17 24:5 25:14
   26:13,21
   27:22,25
   28:3,7,11
   29:10,22
   31:9,21 32:21
   33:8,11 37:8
   41:8,18 43:19
   45:16 46:10,
   13,16 48:23
   49:19 50:25
   52:1,14 53:20
   54:1 56:3
North   50:1
not   5:9
   10:17,24
   12:12 14:2,10
   16:12 20:3,17
   24:13 27:16
   30:19 33:6
   37:18,25
   40:24 45:13
   46:5,8 47:5
   49:24 50:14,

17 52:8 53:8
   55:11,13
nothing   50:12
now   4:3,4
   13:24 16:11
   18:23 21:21
   23:23 43:3
number   19:9
   20:2 22:13
   43:16 44:9
numbers   19:19
   26:17 37:2
   43:15

_____

O

object   29:4
   52:24
Objection   9:4
   12:9 17:1
   23:8,14
   25:19,24 28:6
   29:11,15,21
   30:3,15,22
   31:3 32:20
   36:2 37:21
   45:7,12 48:21
   50:24 51:14,
   20,25 52:6
   53:11,19,25
   54:6,22
occasion
   39:11
occasions
   9:17 30:9
occur   32:15
of   5:24 6:9,
   25 7:8,11
   8:9,20 10:25
   11:20 12:2,
   13,16 13:4,9,
   10,12,13,14,
   19,20,21 14:3
   16:11,12,20,
   21,25 17:4
   18:9,17
   19:15,17,18,
   19 20:14,22

21:2,9,11,15,
18,20 22:22,
23,25 23:3,5,
12,13 24:8,22
25:2,16 26:7,
24 28:8,19
29:8 30:4
32:1 34:21,
22,23 35:7,
11,13,25
36:7,22,23
38:4,14,18,20
39:10 40:15,
18,22 41:6,9,
12 42:5,12,
13,23,24,25
43:6,9,11,14
44:11,18,19
45:4,9,25
46:9,12,19
48:5,7,8,10,
13 49:11,13
51:5,6 52:4,
10,20,25
53:7,9,16,18,
23 54:5,19
55:3,6,23

off   6:25
19:15 21:20
25:14 26:1
27:11 32:2
38:14 47:4,
12,13 54:14,
15 56:6

offhand   7:8
9:18 20:17
21:22 32:17
36:16 56:2

office   6:3
8:5 33:20,22,
23,25 34:3
49:12

officer   6:17
8:3,4,8,10,16
11:8,10 23:11
33:17,18

officers   8:18

often   11:18
38:6,7

Oh   21:17

Okay   15:20
16:9,22 18:19
20:6 28:25
33:16 43:9,16
48:23 54:9
55:6

on   4:3,12,13
7:12,15 8:11,
18 9:17 11:24
12:18 14:18,
19,24 15:3,
21,22,23
16:1,5,16,23
17:21,25
18:14,15,22,
23 19:17,23,
25 20:4,24
21:1,3,4,7
22:13,21
23:10 24:1,2,
13 25:4 26:25
27:13 29:13
30:9 32:4
34:24 36:9
42:4,14
43:24,25
44:11 45:22,
24 47:8,14,23
48:5,12,17,19
49:25 50:3
51:13 52:17
54:16

once   30:10

one   7:1 12:23
13:11,17 14:5
15:2 16:5,7
19:7 41:12
43:2,9,15
48:1 49:6
52:12 54:10,
13

ones   6:25

only   13:11
14:5 40:23
42:15

operated   42:8

opinion   52:11

or   4:21 12:7
17:12 18:5
19:23 21:15
22:20 26:4
31:11 33:19,
24 35:4,21
36:1,17 38:7
39:11 40:13
42:20 49:10,
12,25 50:14,
17 51:6 52:8,
9 54:3 55:1

order   56:8

original   44:8

other   6:24
15:1 21:9
26:1,24 27:15
35:10 45:24
51:6 53:22

otherwise
40:14

our   7:19 27:3
30:20

out   6:9 8:9
24:10,22 30:6
39:11 42:9,24

outgrowth
35:25

outside   45:9
52:25

over   5:9 9:25
12:19 19:8
21:19 25:4,9
34:16 35:9
40:8 46:25
50:7 51:2
55:12,15

own   8:11,19
54:5

owner   35:13

**P**

P-A-I-G-E   5:2

p.m.   44:7,13
46:23 56:7

page   16:3,5,7
17:4 18:17

19:17 20:4
28:19 42:5
43:6,24,25
44:5,11 46:4,
21 49:23
52:20

Paige   4:20
5:2,3,16 7:25
29:8 32:5
49:1 52:23
54:17

Palm   6:2 8:4
10:3,10 33:20
50:2

paperwork
36:8 42:14

paragraph
16:10 18:23
22:22 28:20,
21,23 53:5

paralyzed
9:11

part   5:24
41:12

particular
17:16 31:19

partner
35:15,16,21,
23 37:7,9,10,
12 52:10

partners
35:18

partnership
12:7 28:1

Paschal   4:7,
12,24 9:6
12:10 14:20
15:6,8,11
16:18 17:3
19:9,12
22:12,17
23:9,16,19
24:4,7 25:21
26:6,14,20,23
27:8,14,19
28:10,13,21,
22 29:7,12,
18,23 30:5,16

31:1,5,23
32:20 36:2
37:21 42:22
44:14 45:7,12
48:21,24
49:2,6,8,21
51:1,16,23
52:2,12,18,19
53:2,12,21
54:2,8,22
56:8
**passed**  9:24
39:25 50:19
**passwords**
18:10,12
19:19
**patrick**  4:20
5:2 23:21
32:5 49:1
51:19 52:23
54:17
**patrol**  8:11,
13
**pay**  13:1,3
38:24,25 39:3
52:9
**paying**  12:20,
22,24
**people**  4:12,
13 21:14
35:10 44:4
48:8
**performance**
36:13,25
**permanent**
29:1
**person**  8:22
25:16 37:13
**personal**  11:7
**phone**  4:12,14
12:24 14:18,
19,23,24
16:15,16
17:12,19,20
18:5 38:24
39:1,3,17
47:19,24 48:6

**phones**  7:12
17:9
**place**  11:13
44:1
**plaintiff**
4:16
**plaintiff's**
30:6 32:12
**plaintiffs**
4:10,15
**planning**
18:15 25:17
**please**  4:25
**pneumonia**
22:8
**police**  8:15
11:8,10 23:10
40:12
**position**
38:18,21
**possible**
16:19 53:13
56:9
**postcard**
42:15,17
**potentially**
23:1
**premise**  30:25
**present**  31:17
**preservation**
46:23
**preserving**
7:21
**prevent**  54:4
**preventing**
5:10 50:22
53:17,23
**previous**
35:25
**previously**
45:4
**price**  22:25
23:2
**prior**  8:11,18
11:16 17:16
38:22 41:6
44:22,23

45:9,11 48:16
**private**  34:13
36:5
**probably**  6:8
22:10 24:24
37:5 39:10
45:2 51:11
**problem**  14:20
15:4
**problems**
12:20,22 25:2
**produced**
15:19
**profession**
5:16 6:1 11:9
**proficient**
35:9
**projects**
46:9,12
**Promise**  54:12
**provide**  34:24
**put**  14:19,23
26:17,20
42:25 47:2

---

**Q**

**question**
32:16
**questioning**
52:25
**questions**
27:15,16 32:8
48:23,24
54:13,19 56:3
**quick**  14:17
54:19
**quite**  34:15
38:7

---

**R**

**Raton**  6:11
**reached**  30:6
42:9
**read**  18:22
56:5

**Real**  14:17
**realize**  15:4
**really**  10:24
11:2,6 19:14
22:7 26:1
30:23 31:12
32:16 51:21
55:13
**reason**  5:10
47:3
**recall**  7:3,8
9:18 10:20
12:12,21
14:2,6,9
18:2,13 19:22
21:22 24:21
30:18,24
31:12,19
32:16,19 33:5
35:1,4 36:16,
25 37:2 38:14
47:21 48:11
50:20 51:8
**received**
45:1,5
**receiver**  7:19
**receivership**
7:18
**receiving**
44:20
**recess**  27:12
32:3
**recognize**
15:12 22:18
26:25 28:14
41:23 42:1
44:3 45:19
46:9,11,12
**recollection**
42:8
**record**  4:3
5:1 27:11,13
32:2,4 40:4
43:17 47:12,
13,14 54:14,
15,16,23 56:6
**records**  41:15

recover   24:3
recovered
  19:2,3
recovering
  7:20,22 23:23
Recovery   7:1
RECROSS   54:17
recruit   8:9
REDIRECT   49:1
refer   43:5
reference
  23:25 26:16
  34:19 55:17
referring
  17:23 18:25
  19:1 42:18
  46:14 53:14
refresh   42:8
regards   34:15
regularly
  34:15 38:11
relate   52:16
related   7:22
  22:7 42:7,9
relating
  41:15
relationship
  10:25 33:13
  48:18
released
  8:11,18
remain   18:24
remember   10:5
  19:13,15
  21:20 30:17
  31:7 45:13
  47:18
renew   50:6,
  10,13,16
renewed   49:25
reply   49:24
REPORTER
  56:10
Rescue   22:5
Research   26:7
  41:7 46:6

resources
  37:19,25
respond   18:14
  46:25 47:2
responds
  44:10 50:9
response
  50:15
retained   7:14
revenue   36:15
right   4:8
  23:6 27:21
  28:2,5 29:24
  34:6 46:25
  50:23
River   44:7
Roche   4:10,13
  9:4 12:9
  14:17,23
  15:3,7 16:14
  17:1 22:14
  23:8,14
  25:19,24
  26:16 28:6,8
  29:4,11,15,21
  30:3,15,22
  31:3,24 32:6,
  8,23 36:11
  37:23 41:17,
  20 42:23
  43:5,7,11,13,
  18,21 44:15
  45:8,14,18
  47:9,15 48:23
  50:24 51:14,
  20,25 52:6,
  16,24 53:11,
  19,25 54:6,
  10,13,18 55:5
  56:3,11
roughly   44:1
round   20:22

─────────

S
─────────

safe   18:24
safety   18:24

said   6:16
  16:19 18:25
  22:19 25:14
  28:1,4 33:2
  36:5 40:3,16
  46:18 48:7,8
  49:9 51:18
  53:13
same   19:24
  25:8 30:25
  37:4 40:8
  42:13 50:3
saw   21:2
say   6:19 9:3
  17:22 19:17
  21:13 24:15,
  24 46:25
  51:9,22 55:20
saying   16:10
says   16:19
  17:7 18:23
  49:24 50:15
  53:7,14
scene   40:18
SCERS   6:25
  7:1
school   6:9,10
scope   52:25
Screwed   20:23
search   17:11
searching
  17:8
second   16:10
  22:21 42:5
  43:6 44:5
  46:21 49:4,23
  52:18 53:5
sector   34:14
  36:5
secure   48:3
security
  34:22,25 35:6
see   14:22,24
  15:23 16:1
  17:10 18:19
  19:22 28:23,
  25 29:1,5
  38:6,11,12

  44:9 52:18
  53:3
seeing   38:7,9
seen   42:14
Seize   7:1
self   35:8,12
sending   52:23
sent   27:6
  44:6,25 46:11
sentence
  23:22
separate
  26:18
serial   19:19
  20:2
series   44:19
server   24:2
several   9:18
  10:14
share   51:6,10
she   14:14
  40:7,8
sheriff's   6:3
  8:4 33:20,23,
  25 34:3
shirt   26:1
shortly
  35:22,23
should   36:6
showed   26:10
  41:11,12
  42:19,20,21
shower   22:3,5
shy   8:23
sick   22:7
side   26:24
silver   20:21
similar   39:12
since   9:10
sitting   51:17
situation
  12:14,17
  16:24
six   43:15
  44:13 49:5

**so** 5:7,9 7:22
8:13 11:18
12:20,25
16:15 17:13,
18,20 18:3,24
22:21 23:4
32:11 34:14
35:5,8,10
36:9,10 38:10
39:25 40:8
43:16 44:1,
11,19 47:7
50:12,13
51:17 52:20
55:19
**software**
20:11,14
**some** 6:13
11:16 16:12
21:11 23:22,
23 33:12
34:23 38:22
51:6,19 52:3
53:9
**somebody** 9:2
**somehow** 53:23
**someone** 22:2
25:17 54:4
**something** 6:7
9:2,3 22:20
36:1 44:17,21
49:3
**sometimes**
11:24
**somewhere**
26:20
**soon** 41:1,2
56:8
**sorry** 28:21
**sort** 20:22
**South** 49:13
**speak** 11:18
16:15 36:10
47:19
**speaker** 14:19
**Specialist**
7:2

**Specifically**
36:14
**spend** 39:9
**spending**
25:22
**spent** 8:17
**spoke** 11:19
34:15 38:15
49:4
**spoken** 49:15
**stages** 36:7
**stamp** 46:4
**stands** 49:10
**start** 15:7
**starts** 41:22
43:24 45:22
**state** 4:25
**states** 42:14
46:5
**stay** 22:1
24:8
**sticker** 26:19
**stickers**
26:18
**still** 16:20
32:7 50:18
53:15 55:13
**stole** 9:2
27:20
**stolen** 23:24
**stopping**
18:15
**store** 49:24
**stored** 18:23
**streets** 8:12
**strike** 33:2
44:24 45:9,21
**stuff** 22:8
35:11 50:12
**substantial**
16:25 38:4
54:5
**suddenly** 51:4
**suggest** 29:19
**support** 44:7

**Supreme**
49:11,13
**sure** 27:10,
16,17,18
32:10 47:11
48:25 56:4
**surprise**
20:15
**surrounding**
40:5,11
**switching**
48:15
**sworn** 4:6,21
**Symbols** 11:14

---

**T**

---

**take** 6:14
19:5 31:24
43:22 47:9
50:7 54:10
**taken** 5:13
27:12 32:3
**taking** 44:1
**talk** 10:23
11:20,21,22,
24 12:11
13:23,25
**talked** 34:12
48:15 49:15
**talking** 21:14
32:11 38:7
53:10
**taught** 8:15
35:8,12
**tax** 45:5
49:9,10,12
**teaching**
35:10
**technical**
34:18
**technically**
32:7
**tell** 7:17
10:18 11:9
12:1,6 18:9
21:6,12 26:12

**35:4 47:23
50:6 53:17
**ten** 44:12
**testified**
4:22 31:2
34:7 38:17
**testimony**
5:11,14
**Texas** 7:7
**text** 25:3,7
**texts** 40:7
**than** 26:1
36:17,21
**Thank** 43:18
**that** 5:13,20,
24 6:8,17
7:17,19,20
8:6,7,14,17,
22 9:13,19,
22,23 10:18
11:4,5,6,8,12
12:1,6,12,25
13:7,16,19,23
14:1,2,11,14
15:5,16 16:3,
16,25 17:9,
14,21 18:7,
17,19,20,22,
23,25 19:1,3,
18,22,23,24,
25 20:11,13,
15,20,24
21:1,3,4,7,
14,18,19,21,
24 23:12,25
24:2,22,25
25:1,2,8,11,
12,14,17,25
26:3,10,24,25
27:2,4,6,20,
24 28:19,23
29:5,6,13,14,
19 30:1,4
31:6,20 33:2,
3,5,6,19,22
34:7 35:24
37:15,20
38:1,3 40:7,

16,23,24,25
41:11 42:19,
20,25 44:12,
22,24,25
45:4,9,13,21,
25 46:19,24
47:7,21,23
48:2,4,5,9,12
49:6,10,11,
15,25 50:2,3,
5,6,17,18,23
51:8 52:3,17,
21 53:13,17,
23 54:4,25
55:10,12,18,
25
**that's** 13:11
16:8 18:2
26:4,25 27:3
29:1 32:16
37:2 38:11
41:12 50:3
51:11,13
52:11 54:8
**their** 21:12
**them** 7:8,20
16:20,21 19:8
21:11,18 24:1
30:10,21 36:9
53:14,15,16
**themselves**
4:14
**then** 18:14,22
31:24 32:24
46:8 47:10
50:1,5,9
54:8,11
**there** 5:10
9:19 11:22
14:15 16:3
17:14 22:4
24:16 25:1,4
31:15 33:2,5
35:18 39:10
40:10 41:14,
16 44:5 47:3,
25 51:17 52:3
53:14 55:13

**there's** 15:18
42:5 45:24
50:9,16
**therefore**
47:7
**thereupon**
4:19 27:12
32:3
**these** 44:4
46:6,9,12
**they** 6:23
10:7,9 15:14
16:12,20
17:13,17
18:24 30:17
36:7,9 40:14,
18,21 53:9,15
**thing** 42:15,
16,17,19
46:23
**things** 46:8,
18,19
**think** 8:16
11:3 15:25
24:11 31:23
47:5,25 50:6,
9,15 51:18,24
52:4 54:4
**third** 22:22
43:24
**this** 14:18
15:21 16:7
17:4,15 18:15
19:9,13,20
22:12,18
23:16,20 24:4
26:14,15 27:9
28:14,16
30:13 31:8
32:17 34:5
40:3 41:9,21
42:8,12,18
43:1,4,9,16,
22 44:3,19,
22,25 45:9,19
46:12,15
47:5,6 48:12
49:16 52:13,

16,20,24
54:23
**those** 6:14
7:6 9:9,14
10:5 19:5
34:23 35:2
**thought** 47:1
**three** 35:18
36:22,23
**through** 33:12
40:23
**throughout**
9:12
**thumb** 19:2
20:18,20,22
21:1,4,7
**time** 4:4 6:8
8:14,17 9:23
12:23 16:24
17:18 19:7,14
22:23 23:2,3
24:17,21 25:1
35:20 39:8
41:14 44:20,
25 46:11,25
47:16 54:19
55:2,6
**times** 5:5
6:17 7:3
10:14 11:22
24:20 38:12
48:20
**timid** 8:25
**to** 5:9 6:19
7:9,14,20,23
8:8,10,11,13,
18 9:14 11:3,
6,17,19,20,22
12:4 13:3,23,
25 14:21
15:1,18 16:4,
12 17:4,11,
14,16,21,23,
25 18:4,18,25
19:1,5,8
20:11 21:4,6,
21 22:1,5,21
23:21,23,25

24:3,4,11,17,
24,25 25:3,4,
9,13,16,25
26:2,16,17,
19,24 27:6,8,
14,16 28:8,19
29:14,19
30:1,6 32:20
33:12 34:6,
10,15,19
36:2,9,10
37:13,18,19,
25 38:1,3,8,
22,23,24,25
39:3,6,13
40:4,6,8,14
41:6,14,15,17
42:4,7,10,12,
18 43:5,7,24
44:22 45:6,9,
11 46:3,5,14,
21,22 47:2,7
48:3,18 49:3,
11,15,23,24,
25 50:5,6,7,
10,16 51:2,6,
22,24 52:9,
16,20,23,24
53:8,15,22
54:13,23
55:1,3,12,17,
25
**today** 5:11
30:12 31:2,22
33:4,6 44:16
55:10
**Today's** 4:3
**together** 47:2
**told** 12:18
16:10 27:20
30:21 38:25
48:5 52:5
53:7
**took** 27:15
**top** 6:25
18:17,18,22
19:15,17
20:23 21:20
38:14 42:13

44:6
**topics** 11:20
**Total** 6:5
**tough** 48:19
**toward** 44:6
**Towards** 24:8
**training** 8:3,
4,8,10,11,16,
18 23:11
33:17,18
**tried** 24:25
**true** 20:4,5,
7,10,13
**Trust** 46:7
**trustworthy**
37:13
**try** 14:22
**trying** 24:3
25:16 42:7
**TTA-1-14** 46:7
**turn** 15:18
26:24 28:19
51:2 55:15
**turned** 55:12
**twice** 15:19
**two** 8:17 9:25
12:19 15:18
19:9,18 26:17
32:7 34:6
39:11 43:14,
15 47:25 49:5
54:13
**type** 10:25
11:15,20 22:8
25:16

**U**

**understand**
5:7 25:16
46:17
**understanding**
24:10
**University**
6:15
**unlikely**
16:11 53:8

**until** 9:23
24:22
**up** 9:23 11:9
15:1 22:25
23:2 26:10,19
27:9 31:25
38:23 41:11
47:10 52:17
54:11
**UPS** 49:24
**us** 17:16 19:8
28:18 36:22
44:7 48:3
55:18
**use** 14:18
20:15
**used** 20:14
21:21 26:10
**using** 27:4
53:18,23 54:4

**V**

**VA** 9:24 10:1,
9 24:8
**value** 16:13,
20 22:23
53:9,16
**various** 19:2
45:24
**Vel** 4:15
14:23 16:16
**Vel's** 14:17
**Velvel** 31:18
**venture** 24:24
**very** 11:23
16:5 18:7
25:22 35:2
37:17 44:10
48:22
**video** 4:3
**VIDEOGRAPHER**
4:2 27:11,13
32:2,4 47:12,
14 54:14,16
56:6

**visit** 9:14
10:11 38:10
**visited**
10:15,19

**W**

**W&k** 26:7,9,12
41:7,15 42:7,
10 44:8,12,18
45:10 46:6
**Wales** 49:12,
13,14
**wallets** 23:23
28:24
**want** 15:1,7
16:4 22:21
23:21 26:17,
18 28:8 33:12
40:3 42:22
43:6 49:3,11
56:10
**wanted** 30:1
48:3 51:2
**wants** 50:7
**was** 4:22
5:22,24 6:1,
2,8,17,19
8:3,4,6,7,17,
20,22 9:10,
11,24 10:1,3
11:3,5,8,9,
12,13,22,23
12:18,20,21,
23 13:7,11,19
14:6 15:9,19
16:11 17:16,
18,19,20,21
18:7,8,20,25
19:1,5,10,25
20:21,22
21:4,7,14,20,
23,24 22:15,
20 23:1,17
24:1,2,3,5,17
25:1,2,3,12,
14,17,22
26:5,10,21

27:12 28:11,
17 30:1,4,11,
20,24 31:6,8,
10,13,14,15
32:3,17,18,
19,21,22,24
33:2,3,5,6,
15,17,18,23
34:19 35:2,8,
10,12,13,15,
18,20,21,24
36:3,6,8
37:4,5,8,9,
10,17 38:4,8
39:10,12,20,
22 40:10,16
41:18 42:6,
15,24 43:2,19
44:17,19,25
45:16 46:14
47:3,5,7,16,
21,22,25
48:1,2,5,7,8,
9,13,19,22
49:9,19,25
50:15 51:6
52:3,14 53:7,
17,23 54:25
55:1,3,12,17,
18,19,20
56:13
**wasn't** 40:7
52:10
**way** 17:14
26:4 46:8,18,
19
**we** 4:12,13
11:23,24 19:8
22:12 23:22
27:15 30:20,
24 32:4,11
34:12,15 36:4
42:12,15
43:22 44:22
46:3 47:9
48:15 54:10
55:8,11,12
**we'll** 14:24
31:25 52:18

54:11
**we're** 4:3
16:14 22:13
30:12 31:21,
23 32:2 33:4
43:2,16 47:12
56:6
**week** 18:16
**weeks** 8:17
11:24 25:1
**welfare** 25:4,
6
**well** 14:15
23:10 32:25
35:11 45:21
46:23 48:8
49:22
**went** 7:18
20:25 22:1
25:9 34:7
**were** 6:4 9:9,
19 10:9 11:23
13:7 16:12,20
17:13,15,17,
25 20:13
21:15,18
24:18 27:4
30:17 31:17
32:11 33:18,
22 34:3 35:21
36:4 38:17
40:12 41:6
42:18 47:2,16
50:18 53:9,15
**weren't** 50:22
**West** 10:3,9
**what** 5:16
6:1,10,23 7:9
8:6,8 9:9,22
10:5,7,25
11:9,12,20
12:18,21
13:2,24 14:22
16:23 17:22
18:2,20,25
20:7,10 21:1,
6 22:13 24:14
27:2 28:16

29:5 30:11,
12,17,24
31:2,21 32:22
33:2,4 34:23
35:1 37:2
38:11 40:13,
16 42:17
44:7,25 45:4
46:14,17
47:1,23 51:21
54:23
**what's** 45:3,
14 49:17
**whatever** 21:4
**wheelchair**
9:11
**when** 5:22
6:16 8:3,9
11:8,22
17:19,22
18:25 21:13,
25 22:9 25:7
26:10 31:6,13
32:14 33:13,
17,25 35:20,
21 39:7,20,22
40:25 41:9,
11,14 42:9
44:12,16
46:17 47:2,
16,21 53:14
55:15,25
**Whenever**
39:24,25
**where** 6:14
8:17 10:1
39:11
**whether**
17:17,18
50:14,16
**which** 42:12
**while** 12:18
16:20 34:2
48:1 53:15
**who** 25:9
31:14 32:19
40:4,5 44:4
54:20 55:6,10

**why** 14:23
34:10 36:6
42:24
**will** 4:5,6
15:19 19:9
46:24,25
**Winn** 6:9
**with** 5:20 6:2
8:13,17 11:18
12:7 13:3,17,
18 14:7,12
16:14 20:7
21:15 23:1,20
24:13,14,21,
25 25:11,22
26:18 27:8
28:2 29:24
30:10,21 31:2
33:10,13,23
34:7,10,17
35:5 36:8
37:16,18,24
38:15 39:14,
17 42:6 43:12
45:10 46:23
47:19 48:16,
18 49:4 51:6,
10,22 54:23
**without** 20:25
**witness** 4:6,
11,17 6:19
7:4 9:5 17:2
23:15 25:20,
25 28:7 29:5,
17,22 30:4,23
31:4 32:21
36:3 37:22
45:13 48:22
49:7 50:25
51:15,21
52:1,7 53:1,
20 54:1,7,25
56:4,12
**won** 51:9
**won't** 21:25
**wondering**
42:6
**work** 5:18

7:15 11:15
34:2 39:20,22
40:13
**worked** 6:9
11:16
**working** 36:8
**works** 5:7
14:24
**world** 21:16
**worth** 23:13
**would** 8:22,25
9:2,22,23
11:18,21,22,
24 13:3 16:16
18:4 20:15
21:3,19 22:20
23:2,5 24:24
25:2 26:1,2,3
27:6 37:6,19,
25 38:3,10
39:5,11 44:7
46:3 48:17
51:9,10,11,
18,22,24
52:3,4,7
**wouldn't**
17:20 20:15
47:8 55:20
**wrap** 27:9
47:10
**Wright** 4:9
12:7,11 27:20
28:2 45:23
46:4 47:7
**write** 22:20
44:7,13
**writes** 46:22
**written** 33:9

---

### Y

**Yea** 22:19
**year** 8:6
22:10 31:8,
10,11,12
32:17
**years** 6:5
9:22,25 12:19

22:19 33:24
34:16 35:9
**yes** 4:17 5:4,
8,19,21,25
6:20,22 7:16,
24 8:1,15,21
9:8,16,21
10:4,8,12,22
11:11 12:15
13:9,15,22
14:8 15:14,
17,24 16:4,6,
8 17:6,10,24
18:6,18,19
19:21,22
20:9,19 21:5,
11,24 22:3,
14,24 23:7,25
24:19 26:8
27:1,5,7
28:15 29:25
30:4,8,14
31:4 32:13
33:1,20 34:4,
9 35:17,20
36:19 37:11,
14,17,22
38:2,5,16,19
39:2,13,16,
19,21 40:2,12
41:3,5 42:3,
11 43:13
44:4,16 45:20
46:2 47:20
48:14,22
49:6,7 50:4,8
51:3,11,15
52:22 53:1,4,
6 55:22,24
56:11
**York** 7:7
**you** 4:5,25
5:3,7,10,13,
18,20 6:7,10,
12,14,16,21
7:3,14,17,22,
25 8:2,6,13,
22,25 9:22
10:5,11,15,

18,21 11:3,9,
18,20,21
12:1,4,6,13,
16,21 13:1,4,
7,10,13 14:3,
9,11,14,18,23
15:1,7,12,13,
18 16:4,15,
23,24 17:4,7,
8,9,11,22,23,
25 18:9,12,
14,15,20,24
19:5,13,17,23
20:1,7,11,13,
16,20 21:1,3,
6,9,12,13,14,
15,18 22:1,6,
9,18,25
23:10,11,20,
21 24:9,11,
14,18,20,21
25:6,11 26:1,
2,3,7,9,12,
17,24,25
27:4,14,20,23
28:8,14,19,23
29:1,2,8,14,
19,24 30:7,
17,19,21
31:2,19 32:9,
11,12,14,18,
19 33:2,5,9,
14,18,22,25
34:2,7,10,17,
23 35:4,21,24
36:3,5,6,12,
23,25 37:6,
13,15,18,19,
25 38:3,6,12,
15,17,20,25
39:3,8 40:3,
4,13,21,25
41:6,9,12,14,
17,21,23
42:1,4,6,13,
18,19,20,22,
23,25 43:12,
18,23,24
44:2,5,6,7,

10,12,13,14,
20,25 45:3,5,
10,14,19,23
46:5,6,9,11,
12,14,17,21,
22,25 47:1,2,
3,16,19,21,23
48:17 49:4,
15,23 50:5,6,
7,18,22 51:2,
4,6,10,13,18,
22,24 52:4,5,
20,23 53:3,5,
17,22 54:3,4
55:15 56:10
**you're** 8:9,10
22:22 37:2
38:11 50:6
**you've** 6:16
7:3
**your** 4:5,25
5:14,16 6:1
7:14 8:10,11,
19 14:23
32:24 33:13
34:17 35:25
37:6,10,12
42:8 48:16,17
**yours** 8:20

---

## Z

**Zalman** 4:9
**Zimet** 4:11
15:1,4 27:10,
18 28:20
31:15 32:1
43:2,6,9,12,
14 47:11
48:25 49:5,17
54:9,12 56:5

Message

**From:** Dex █████████████████
**Sent:** 2/20/2014 6:58:45 PM
**To:** Patrick Paige
**Subject:** Re: what's up

Hi Patrick,

I don't think I'm going to be able to meet up this week.  Need to finish a clients website. But for now I stored the drives in a safe deposit box so they'll remain safe.  And as Craig mentioned, there's no time limit with this stuff so we have time to figure it all out.

Ira

On Thursday, February 20, 2014 11:01 AM, Patrick Paige █████████████████████ wrote:
Ira, were you planning on stopping by this week?

*Patrick Paige EnCE SCERS*
**1880 North Congress Ave. Ste 333**
**Boynton Beach FL 33426**
*Office: 561.404.3074*
*Cell:* █████
**www.computerforensicsllc.com**

*Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.*

**From:** Dex █████████████████ ]
**Sent:** Tuesday, February 18, 2014 10:01 AM
**To:** Patrick Paige
**Subject:** Re: what's up

Did you already finish searching the drives and cellphone you have?

On Tuesday, February 18, 2014 9:45 AM, Patrick Paige █████████████████ wrote:
I have no idea what if anything is in the account, that's all Craig sent me... who knows what it means at this point. I doubt Dave had any money elsewhere, but Craig seems to think so.  I think the only thing we can do at this point is try and gain access to the thumb drives.  Carter is checking with some people he knows in the banking area to see if the numbers Craig gave us mean anything.

*Patrick Paige EnCE SCERS*
**1880 North Congress Ave. Ste 333**
**Boynton Beach FL 33426**
*Office: 561.404.3074*
**www.computerforensicsllc.com**

*Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.*


EXHIBIT
1
FL   12/10/19

PAIGE_00002979
PAIGE_00002979

**From:** Dex ▮▮▮▮▮▮▮▮▮▮]
**Sent:** Tuesday, February 18, 2014 8:57 AM
**To:** Patrick Paige
**Subject:** Re: what's up

What exactly is supposed to be in the Belize account?  Money already mined from his Bitcoins?

I'm a little confused.

Are you searching for both a password to access the bank as well as a bitcoin key?

On Monday, February 17, 2014 10:12 AM, Patrick Paige ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮> wrote:
Not sure... We need to find someone in banking, one is probably the account number, not sure what the other is... Anytime you want to stop by the office this week is fine, just give me a call to make sure I'm there... We are at the S.E. corner of Gateway and Congress above Bonefish Grill.

*Patrick Paige EnCE SCERS*
**1880 North Congress Ave. Ste 333**
**Boynton Beach FL 33426**
*Office: 561.404.3074*
▮▮▮▮▮▮▮▮▮▮▮
**www.computerforensicsllc.com**

*Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.*

**From:** Dex ▮▮▮▮▮▮▮▮]
**Sent:** Sunday, February 16, 2014 10:30 PM
**To:** Patrick Paige
**Subject:** Re: what's up

Yeah, I can stop by sometime this week.  I'm not sure about tomorrow though.

What's up with the Belize account?

On Sunday, February 16, 2014 7:40 PM, Patrick Paige ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ wrote:
I know he's genuine, we are aware of his and Dave's friendship for years... I just don't know if we are getting the whole story...

Ira, when can you stop by the office so we can image the drives and put a plan together to crack the encryption?

*Patrick Paige SCERS EnCE*
*Computer Forensics LLC*
*1880 North Congress Ave Suite 333*
*Boynton Beach FL 33426*
▮▮▮▮▮▮▮▮*Cell*
*www.ComputerForensicsLLC.com*

**From:** Dex ▮▮▮▮▮▮▮▮▮▮
**Sent:** Sunday, February 16, 2014 10:55 AM

**To:** Patrick Paige
**Subject:** Re: what's up

He sent me the attached proposal white paper for a project they were working on.
And I have read several articles online that he wrote years ago and thanking Dave for his assistance.
I figure if we combine the PDF, the articles, the Youtube video about Dave, and his current business of creating the first Bitcoin Bank.. I conclude he's genuine.

Maybe he's waiting for you to see if you find a key before divulging the account info?
I'm not sure what his plan is, but I'm impressed with what I have read about them so far.

Ira

On Sunday, February 16, 2014 9:06 AM, Patrick Paige ███████████████████████ > wrote:
I didn't get any more emails from him other than preserve the data... I just sent him one... I asked him where is the information he was going to send... account information and locations... so far he isn't being very helpful so I don't what to believe yet.

*Patrick Paige SCERS EnCE*
*Computer Forensics LLC*
*1880 North Congress Ave Suite 333*
*Boynton Beach FL 33426*
████████*Cell*
*www.ComputerForensicsLLC.com*

**From:** Dex ███████████████████ ]
**Sent:** Saturday, February 15, 2014 10:30 PM
**To:** Patrick Paige
**Subject:** Re: what's up

Did you get the emails from Craig?  What do you think?

I for one have to say I'm a believer.  The evidence is overwhelming that he is legit.
That or he's the most elaborate social engineering hacker ever.

Seriously, I think he and Dave are a couple of geniuses.

This stuff is just mind blowing.


On Saturday, February 15, 2014 10:59 AM, Dex███████████████████ wrote:
He didn't seem to be mad and even suggested sending someone here to help us decrypt the drives. But he also hinted that if Dave encrypted the drives it would be very difficult to gain access.

I wanted to see if he would divulge additional information to what was already given to you.  And I mentioned
to him that you needed to consult with me because as the person in charge of his estate I have some of his
belongings and drives.  I let him know any information provided would not go beyond our circle.

Perhaps you should try to reach out to him again.  The other question I have is if they are the true creators

of this system, shouldn't there be such a thing as a master key?  I never heard of a program without one.

Ira

On Saturday, February 15, 2014 10:14 AM, Patrick Paige ███████████████████> wrote:
Be careful about what words you use in unencrypted emails.  He never sent me the information he said he was going to send, is he mad now... Plus He told me not to tell anyone else right now... and now he know I told you, not good... we need to be patient and get the information flowing from him and build a trust.

*Patrick Paige* SCERS EnCE
*Computer Forensics LLC*
*1880 North Congress Ave Suite 333*
*Boynton Beach FL 33426*
███████Cell
*www.ComputerForensicsLLC.com*

**From:** Dex ███████████████
**Sent:** Saturday, February 15, 2014 9:09 AM
**To:** Patrick Paige
**Subject:** Re: what's up

I exchanged a few emails with that guy last night.  Couldn't resist asking him for proof that Dave was involved in the original Bitcoin document.  He said it's too risky to release that information right now, but eventually he wants to.  I'm still not sure what to make of him.

I told him how Dave was in need of money and how I find it unlikely for him not to cash in some coins if they were of any value.  He said it's possible he could have cashed them in while they were still of lesser
value, but believes he had a lot of them.

Still puzzled by all this.  He's not willing to give concrete evidence about anything, yet what he say's might
be true.

Ira

PAIGE_00002983
PAIGE_00002979

| | |
|---|---|
| **Message** | |
| **From:** | Dex ███████████████████████ |
| **Sent:** | 1/30/2016 5:44:06 AM |
| **To:** | Patrick Paige |
| **Subject:** | Re: Dave's emails |

I don't have the guns, but I think Dave had a small notepad where he wrote down all his gun info. The numbers might be in there. I'll look around for it.

On Friday, January 29, 2016 9:45 AM, Patrick Paige ████████████████████████ > wrote:

Do you know or still have the glock handguns so we can get the serial numbers off them? Carter is sure he had 2 passwords that included the serial numbers for each one. Having known characters to the password should be very helpful for a brute force attack.

*Patrick Paige* EnCE SCERS
**1880 North Congress Ave. Ste 333**
**Boynton Beach FL 33426**
*Office: 561.404.3074*
**www.computerforensicsllc.com**

*Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.*

**From:** Dex ████████████████████
**Sent:** Thursday, January 28, 2016 3:16 PM
**To:** Patrick Paige ██████████████████████ >
**Subject:** Re: Dave's emails

It's a Truecrypt .vol file.

On Thursday, January 28, 2016 3:00 PM, Patrick Paige ██████████████████ m> wrote:

That is true... one day we may find out if the code can be cracked... Is it full disk encryption or a container? The only way I know is brute force attack... His passwords were long... Carter remembers entering one when Dave was in the hospital, but can't recall the whole thing but said it included things like the serial number to his glock gun.

*Patrick Paige* EnCE SCERS
**1880 North Congress Ave. Ste 333**
**Boynton Beach FL 33426**
*Office: 561.404.3074*
**www.computerforensicsllc.com**

*Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.*

**From:** Dex ████████████████
**Sent:** Thursday, January 28, 2016 2:55 PM



EXHIBIT
2
12/10/19

PAIGE_00002707
PAIGE_00002707

**To:** Patrick Paige ████████████████████████
**Subject:** Re: Dave's emails

For all we know it could be Dave's email archive or his old case work on that Truecrypt drive.  Have you ever heard of anyone successfully cracking Truecrypt?  From what I have been told, it would take a quantum computer to decrypt it.

On Thursday, January 28, 2016 12:38 PM, Patrick Paige ████████████████████ wrote:

Because he kept everything… especially emails because of all the cases he worked… some case sit in court for years so it would be unlikely that he would get rid of old emails.  And judging by the amount of email that we can see in his computerforencisllc.com account it would point to lots of missing emails.  He would tell me how much email he would get and it was a lot.  He was always communicating with many people on several blogs.  So the question is, where would he store the emails…

*Patrick Paige* EnCE SCERS
**1880 North Congress Ave. Ste 333**
**Boynton Beach FL 33426**
*Office: 561.404.3074*
*www.computerforensicsllc.com*

*Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.*

**From:** Dex ███████████████████████████
**Sent:** Thursday, January 28, 2016 11:32 AM
**To:** Patrick Paige ██████████████████
**Subject:** Re: Dave's emails

Any particular reason you think he would take the time to archive old email?

I can tell you the encryption type, but please don't share anything we discuss, especially with reporters.  I'd rather not have to deal with that stuff again.

I believe he used Truecrypt.

On Thursday, January 28, 2016 10:43 AM, Patrick Paige ████████████████████████ wrote:

I search and found nothing in the saved old emails, but I don't think this represents all of them.  I think he archived all the emails prior to 2013 and put them somewhere.  I can give you access to his email account via the web if you want… Have you tried to examine the thumb drives?  Have you identified what type of encryption was being used?

*Patrick Paige* EnCE SCERS
**1880 North Congress Ave. Ste 333**
**Boynton Beach FL 33426**
*Office: 561.404.3074*
*www.computerforensicsllc.com*

*Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.*

**From:** Dex ████████████████████
**Sent:** Thursday, January 28, 2016 12:29 AM
**To:** Patrick Paige ████████████████████a>
**Subject:** Re: Dave's emails

I think the subject of the email I'm looking for is "Appointment letter"
and should be dated around Dec. 20, 2012.  Please let me know if you find anything like that.

Thanks,
Ira


On Tuesday, January 26, 2016 11:03 AM, Dex ████████████████ wrote:

Can you check the old emails you found to see if Dave exchanged any messages around Dec. 20, 2012?

Thanks,
Ira


On Tuesday, January 26, 2016 9:42 AM, Patrick Paige ████████████████████ wrote:

Hey Ira... We still have access to all his mail he gets from ████████████████ and we searched is and found nothing from Craig. The problem is that he had a different mail service prior to 2013 and when we switched to appriver I think he archived his old mail and put it somewhere that we have never found.  I found some old saved mail that predated 2013 but none involved Craig.

I can't believe Craig have not surfaced anywhere... Have you found out anything more or heard from anyone?  Been pretty quiet.

*Patrick Paige* *EnCE SCERS*
**1880 North Congress Ave. Ste 333**
**Boynton Beach FL 33426**
*Office: 561.404.3074*
***www.computerforensicsllc.com***

*Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.*

**From:** Dex ████████████████
**Sent:** Monday, January 25, 2016 11:36 PM
**To:** Patrick Paige ████████████████████
**Subject:** Dave's emails

Hi Patrick,

Was just sitting here thinking about Dave.

Were you ever able to access his email addresses to verify any communications between him and Craig?  Would this stuff still be stored on a server somewhere?

PAIGE_00002709
PAIGE_00002707

Thanks,
Ira

PAIGE_00002710
PAIGE_00002707

| Message | |
|---|---|
| **From:** | Patrick Paige ███████████████████████████████ |
| **Sent:** | 6/22/2016 4:38:00 PM |
| **To:** | Dex |
| **Subject:** | RE: Story |

The drug thing is a surprise to me... I didn't even know about the cocaine, never really read the autopsy report. Online gambling??? News to me too... I can't remember him ever talking about sports. Connections to silk road??? News to me too...

'Because bitcoins weren't worth that much when Dave died. They skyrocketed around that time and in the weeks thereafter. But he was a man of principle apparently and wouldn't spend those coins unless Craig told him to.'

That's bullshit... at the time of Dave's death bitcoin was around $100! That's nothing??? bullshit

*Patrick Paige* EnCE SCERS
**1880 North Congress Ave. Ste 333**
**Boynton Beach FL 33426**
Office: 561.404.3074
**www.computerforensicsllc.com**

*Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.*

**From:** Dex ████████
**Sent:** Wednesday, June 22, 2016 12:18 PM
**To:** Patrick Paige ██████████████████
**Subject:** Re: Story

Yeah I did. I noticed Craig's ex-wife says he has a sociopathic personality.
That part doesn't shock me, but this stuff below does...

"Kleiman was a drug user and one source told me he was heavily into online gambling and various illicit activities; there is evidence he was associated with Silk Road, the online marketplace for all things illegal."

I never saw him or heard of him doing drugs. Do you know if Dave ever took drugs or was involved in any of that stuff? His autopsy did show a little cocaine in it. Maybe his crazy girlfriends could have got him to try that stuff?

On Wednesday, June 22, 2016 11:02 AM, Patrick Paige ██████████████████████ wrote:

Did you see this?

http://www.lrb.co.uk/v38/n13/andrew-ohagan/the-satoshi-affair

*Patrick Paige* EnCE SCERS
**1880 North Congress Ave. Ste 333**
**Boynton Beach FL 33426**



EXHIBIT

3

PL  12/10/19

PAIGE_00001696
PAIGE_00001696

Office: 561.404.3074
**www.computerforensicsllc.com**

*Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.*

PAIGE_00001697
PAIGE_00001696

| Message | |
|---|---|
| **From:** | Patrick Paige ███████████████████████████████████ |
| **Sent:** | 6/28/2016 1:08:00 AM |
| **To:** | Kimon Andreou |
| **Subject:** | RE: Dave Story |

Hey bud... Yeah was a long story... Gambling??? Never heard him discuss sports or care about any teams. The drug comment surprised me, but Ira told me they found trace amounts of cocaine, but never saw that. Now all Ira needs to do is find the 350k of bitcoins... on another note, any luck on the SQL database. We have had some luck recovering some wallets, but now close to the millions stolen.

*Patrick Paige* EnCE SCERS
**1880 North Congress Ave. Ste 333**
**Boynton Beach FL 33426**
*Office: 561.404.3074*
**www.computerforensicsllc.com**

*Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.*

**From:** Kimon Andreou ███████████████████████
**Sent:** Monday, June 27, 2016 4:39 PM
**To:** Patrick Paige ███████████████████████
**Subject:** Re: Dave Story

Thanks for sharing. I just finished reading it (I was unable to do so earlier) and all I can say is "wow!".

Some things about Dave I believe and some I cannot believe.

I'm glad you weren't dragged into this yourself. I would've done the same in your shoes.

On Wed, Jun 22, 2016 at 11:01 AM, Patrick Paige ███████████████████████████████ wrote:

This is from the book author that wanted to me with me but never did.


http://www.lrb.co.uk/v38/n13/andrew-ohagan/the-satoshi-affair


*Patrick Paige* EnCE SCERS

**1880 North Congress Ave. Ste 333**

**Boynton Beach FL 33426**

*Office: 561.404.3074*

**www.computerforensicsllc.com**



EXHIBIT
4
12|16|19

Message

**From:**         Patrick Paige
**Sent:**         5/5/2013 2:43:27 PM
**To:**           wlong@
**Subject:**      RE: Memorials
**Attachments:**  image001.jpg

Yes that is surprising. .. but I guess if you don't know what is going on you would think that... Dave was not very happy with the VA. As a matter of fact he got so mad at them a left the hospital a month ago which led to all this. His text to me when I asked him why he left the hospital was "I told them to fuck off".

Patrick Paige
www.computerforensicsllc.com
561.404.3074 ext. 103 Office
[redacted] Cell

-----Original Message-----
**From:** Bill Long [redacted]
**Received:** Sunday, 05 May 2013, 10:31am
**To:** Patrick Paige [redacted]
**Subject:** RE: Memorials

That' s what I would have thought.  Do you have an address?

Warren Kruse just posted on the DFCB list that memorials should be sent to the VA Hospital. I found that surprising.

**From:** Patrick Paige [redacted]
**Sent:** Sunday, May 05, 2013 9:24 AM
**To:** Bill Long
**Subject:** RE: Memorials

Hi Bill... I would say the paralyzed veterans association is what dave would want... he was involved with them and he told me they did a lot of good in his life.

Patrick Paige
www.computerforensicsllc.com
561.404.3074 ext. 103 Office
[redacted] Cell

-----Original Message-----
**From:** Bill Long [redacted]
**Received:** Sunday, 05 May 2013, 10:20am
**To:** Patrick Paige [redacted]
**Subject:** Memorials

Patrick, has there been any designation of charities for memorials?

Thanks,
Bill



EXHIBIT

5

12/10/19

PAIGE_00003337
PAIGE_00003337

**William J. Long**
Direct Dial: ███████████   Fax: (205) 320.5257
wlong@█████
P.O. Box 130073
Birmingham, AL 35213

PAIGE_00003338
PAIGE_00003337



Law Courts Building, Queens Square   Level 5 184 Phillip Street SYDNEY
NSW 2000
General Post Office Box 3 SYDNEY NSW 2001
DX 829, Sydney

Telephone: 1300 679 272
Facsimile:
TTY Phone: (02) 9230 8011

Email: supremecourt.enquiries@courts.nsw.gov.au
Website: www.lawlink.nsw.gov.au/sc

ABN: 77 057 165 500

**Supreme Court**
of New South Wales

W & K Info Defense Research LLC
4371 Norhtlake Blvd 314
Palm Beach
FL 33410 - 6253
United States of America



D0000FGTI2

Your Ref:                                          3 September 2013

## NOTICE OF LISTING

Case number    2013/00245661
Case title        Craig Steven Wright v W & K Info Defense Research LLC

The matter is listed for Directions (Common Law Registrar) on 30/10/2013 at 09:00
AM, Supreme Court - Civil, Supreme Court Sydney Court 9C Queens Square Sydney

If you do not appear at Court, this matter may be dealt with in your absence.

### Listing Inquiries

Judicial Officers and Court Rooms are generally not allocated to cases until the day
before the case is listed.

Listing details for cases are:
- published on the internet at http:\\www.lawlink.nsw.gov.au on the
  afternoon before the case is listed;
- published in the Sydney Morning Herald in the Law Notices section on the
  morning of the case (for Supreme Court and Sydney District Court only);
- available on notice boards in the foyer of the Court each morning.

Principal Registrar

vortak2



1 of 1



PAIGE_00001908
PAIGE_00001908

POSTAGE
PAID
AUSTRALIA

N & K Info Defense Research LLC
4371 Northlake Blvd 314
Palm Beach
FL 33410 - 6253
UNITED STATES OF AMERICA

Recid 10/10/13

AIR MAIL



**Supreme Court**
of New South Wales

GPO Box 3, Sydney 2001

* 00 61 SEP 19 SMLC *   44 *
* SMLC NSW LMODCR 708 *

* 50 . 23 19 SEP 04 *
* SMLC NSW LMODCR705 *

Filing # 61672693 E-Filed 09/18/2017 05:58:20 PM

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

CIRCUIT CIVL DIVISON AN
CASE NO. 50-2016-CA-013045-XXXX-MB

IRA KLEIMAN, individually, and as
Personal Representative of the
Estate of David Kleiman,

     Plaintiff,

v.

COMPUTER FORENSICS LLC,
CARTER CONRAD, individually, &
PATRICK PAIGE, individually.

     Defendants.

_____/

### FIRST AMENDED COMPLAINT

     Plaintiff Ira Kleiman, individually and as personal representative of the Estate of David

Kleiman, hereby sues Computer Forensics LLC, a Florida limited liability company, and Carter

Conrad, and Patrick Paige, and alleges as follows:

### PARTIES, JURISDICTION & VENUE

     1.    Plaintiff Ira Kleiman is a resident of Palm Beach County, Florida.  He is the sole heir

to the Estate of David Kleiman (Ira's late brother, and referred to herein as "DAVID") and is the

Personal Representative of the Estate of David Kleiman ("Plaintiff").  See Letters of Administration

Appointing Ira Kleiman as Personal Representative of the Estate of David Kleiman, attached hereto

as Exhibit 1.   As sole heir, Ira Kleiman is also a beneficiary of any property of David Kleiman.

David Kleiman was, at the time of his passing on April 26, 2013, a one-third owner of Defendant

Computer Forensics, LLC.   See Computer Forensics, LLC Operating Agreement, attached hereto

as Exhibit 2.   Upon the death of David Kleiman, his one-third ownership interest was assumed by

NOT A CERTIFIED COPY

**EXHIBIT**
**7**

his Estate and its Personal Representative, and the Personal Representative has standing to pursue this action. Alternatively, Ira Kleiman also became the sole beneficiary of the decedent, and any benefits or monies owed to David Kleiman by some or all of the Defendants in this action are due and owing to Ira Kleiman, subject to expenses/costs of the Estate.

2. Defendant Computer Forensics LLC ("Computer Forensics") is a Florida limited liability company with its principal place of business in Boynton Beach, Florida. At the time of its formation in 2012, the LLC's two Managing Members were David Kleiman and Defendant Carter Conrad ("Conrad"). Defendant Patrick Paige ("Paige") thereafter was added as a Managing Member and three Managing Members executed the Operating Agreement on or about February 13, 2013. See Exhibit 2, attached hereto.

3. Defendant Conrad is, upon information and belief, a resident of Palm Beach County, Florida. He owns one-third of Defendant Computer Forensics LLC and is a Managing Member, pursuant to the Operating Agreement, attached as Exhibit 2, hereto.

4. Defendant Paige is, upon information and belief, a resident of Palm Beach County, Florida. He owns one-third of Defendant Computer Forensics LLC and is a Managing Member.

5. Jurisdiction is proper because this is an action in excess of $ 15,000.00, exclusive of interests, costs and fees.

6. Venue is proper because the underlying facts occurred in Palm Beach County, Florida and because all parties are residents of Palm Beach County, Florida.

### FACTS COMMON TO ALL COUNTS

7. On February 13, 2012, Computer Forensics LLC was created. Its two founding managing members were David Kleiman and Carter Conrad. Both had a one-half ownership

interest in the LLC. Sometime thereafter, Paige became a Managing Member of Computer Forensics.

8. On or about February 13, 2013, David Kleiman, Conrad, and Paige executed an Operating Agreement, attached hereto as Exhibit 2, which provided, among other things, that:

a. Each Managing Member would possess and own a 33.33% interest of Computer Forensics;

b. Gross revenue produced and received by Computer Forensics, LLC would be distributed pursuant to a specific formula: 20% of all gross proceeds would be paid to Computer Forensics for expenses and overhead, and the remaining 80% of proceeds would be distributed to each participating member based on a percentage of activity or work product, proportional to the production of the revenue or income;

c. At the end of each fiscal year, and if proceeds in excess of operating expenses remained in Computer Forensic's accounts, each Managing Member would be awarded an additional 33.33% share of income not bookmarked for expenses.

9. The Operating Agreement further provided that "[a]ll equipment, software, hardware, or other intellectual property, owned individually by each Member" would remain in the ownership of that Member. See Exhibit 2, attached hereto.

10. On April 26, 2013, David Kleiman passed away.

11. Plaintiff was David Kleiman's sole heir and is the personal representative of David Kleiman's estate.

12.     David Kleiman's interest has never been transferred, sold or other disposed of and, upon information and belief, the Estate of David Kleiman still owns one-third of Computer Forensics.

13.     On May 10, 2013, two weeks after David Kleiman died, Defendant Conrad filed an amended annual report indicating that Computer Forensics had two managing members – Defendants Conrad and Paige.  Any record of David Kleiman's (or his Estate's) ownership of the Computer Forensics was removed from the LLC's publicly-filed corporate records.

14.     Prior to the execution of the Operating Agreement, David Kleiman had created, registered, and owned at least two personal websites, www.davidakleiman.com and www.davekleiman.com, among others (hereinafter referred to as the "Kleiman Websites").  These websites were created before the formation of Computer Forensics or the execution of the Operating Agreement, and, as per the terms of the Agreement, remained in the ownership of David Kleiman and are now the rightful property of David Kleiman's Estate.  Upon information and belief David Kleiman never transferred the Kleiman Websites to the ownership of Computer Forensics or any other party, individual, or entity.  Upon information and belief, the Kleiman Websites are now in the control of the Defendants and the websites redirect to and mirror www.computerforensicsllc.com.

15.     Upon information and belief, prior to his death, David Kleiman had carried out computer forensic expert services on behalf of multiple clients of Computer Forensics, including conducting such services as an expert in litigation matters.  Up to the date of his death (April 26, 2013), David Kleiman had been entitled to distributions based on his percentage of activity or work product, as per the terms of Operating Agreement, attached as Exhibit 2, hereto.  After his death,

David Kleiman's estate was entitled to any such distributions for activity conducted or for work product created by David Kleiman while he was alive. Upon information and belief, subsequent to David Kleiman's death, Patrick Page assumed all client files that had been worked on by David Kleiman, including several litigation matters.

16.     Upon information and belief, in the course of his assumption of said files/matters, Patrick Paige presented some or all of the work that had been conducted by Decedent David Kleiman as his own. Neither the Estate or the Personal Representative of the Estate of David Kleiman were advised of Paige's activities on David Kleiman's files, and similarly provided no accounting or distributions to Personal Representative Ira Kleiman for activity conducted by or work product created by David Kleiman, and, as such has been deprived of such payments, and have suffered damages as a result.

17.     Similarly, following the death of David Kleiman, Computer Forensics seized control of the Kleiman Websites, and/or converted them to its own use, depriving David Kleiman's estate and Ira Kleiman, as beneficiary, of the use of these websites, or any income derived by Computer Forensics and/or by Conrad and Paige.

18.     Shortly after David Kleiman's passing, Plaintiff also entrusted Computer Forensics and Patrick Paige with a smartphone owned by Decedent, which was provided to these Defendants for the purpose of unlocking the phone (as it was password protected), in aid of Plaintiff's efforts to develop information as to assets of the Estate. The phone has never been returned to Plaintiff and Defendant Paige has since claimed that he, a computer forensic consultant, had thrown away the phone after he had dropped the phone and cracked the screen.

19.    As a consequence of the above activities, Plaintiff has sustained damages and seeks relief under law and equity.

**COUNT I**
**CONVERSION OF PROPERTY**
**BELONGING TO PLAINTIFF**
**(AGAINST COMPUTER FORENSICS)**

20.    The allegations of paragraphs 1 through 19 are realleged and incorporated as if fully set forth herein.

21.    As a course of its dealings with David Kleiman, Defendant Computer Forensics has taken illegal possession of the property of David Kleiman, namely certain websites that were created and initially registered by David Kleiman, and which are identified as www.davidakleiman.com and www.davekleiman.com.   In addition, said sites direct traffic to Computer Forensics' own website, which allows Computer Forensics and its principals to benefit from the name and property and David Kleiman.   In addition, the smartphone belonging to David Kleiman has never been returned to Plaintiff and, per Defendant Paige, has been discarded due to a "cracked screen," with no further explanation.

22.    Such acts deprive and continue to deprive David Kleiman's Estate and survivor, the Plaintiff, of the benefit of such property.

23.    The deprivation by Computer Forensics is inconsistent with Plaintiff's ownership rights, in that Defendant has no right to this property, and has benefitted by such illegal conversion.

24.    As a result of such conversion by Computer Forensics, Plaintiff has suffered and continues to suffer damages in relation to being deprived of the use of his property.

WHEREFORE, Plaintiff demands judgment for damages against Defendant plus interest thereon at the legal rate from date such became due, and any such other relief as the Court deems just and proper.

### COUNT II
### CONSTRUCTIVE TRUST
### (As to all Defendants)

25.     The allegations of paragraphs 1 through 19 are realleged and incorporated as if fully set forth herein.

26.     Conrad, Paige, and David Kleiman executed the Computer Forensics Operating Agreement (attached hereto as Exhibit 2) on or before February 13, 2013, whereby the parties agreed, among other things, that gross revenue produced and received by Computer Forensics, LLC would be distributed pursuant to a specific formula: 20% of all gross proceeds would be paid to Computer Forensics for expenses and overhead, and the remaining 80% of proceeds would be distributed to each participating member based on a percentage of activity or work product, proportional to the production of the revenue or income.

27.     David Kleiman was and his estate (and therefore Plaintiff, by operation of the law) remains a one-third owner of Computer Forensics.

28.     Plaintiff has been denied his equal share of Computer Forensics' profits and revenue that has been generated by virtue of Defendants' use of and trading off the David Kleiman name and website without compensation, and which have been distributed to Paige and Conrad.

29.     Equity demands that the Court place a constructive trust over one-third of all past and future profits and assets of Computer Forensics, or portions of any such profits and assets that have been distributed by Computer Forensics to Paige and/or Conrad.

30.     Equity similarly demands that the websites www.davekleiman.com and www.davidakleiman.com be placed in trust for the Plaintiff.

WHEREFORE, Plaintiff demands that a constructive trust be imposed as to the Defendants, to ensure that any and all properties or monies due to Plaintiff are safeguarded, and any other remedy this Court may deem appropriate and just.

### COUNT III
### PERMANENT INJUNCTION DUE TO BREACH OF OPERATING AGREEMENT AS TO ALL DEFENDANTS

31.     The allegations of paragraphs 1 through 19 are realleged and incorporated as if fully set forth herein.

32.     As a course of its dealings with David Kleiman, Defendant Computer Forensics has taken illegal possession of the property of David Kleiman, namely certain websites that were created and initially registered by David Kleiman, and which are identified as www.davidakleiman.com and www.davekleiman.com.   In addition, said sites direct traffic to Computer Forensics' own website, which allows Computer Forensics. Paige, and Conrad to benefit from the name and property of David Kleiman.  Further, upon information and belief, David Kleiman created and maintained bitcoin wallets which were his personal property during the time he was a member of Computer Forensics.

33.     Pursuant to the terms of the Operating Agreement at issue, all such property was personal property of David Kleiman and is not property of Computer Forensics or any of its principals.  See Exhibit 2, attached hereto.

34.     By operation of the law, Plaintiff is entitled to receive and control any property of the Decedent, as Decedent's Personal Representative, heir, and beneficiary.

CASE NO. 50-2016-CA-013045-XXXX-MB
Page 9 of 12

35.     Defendants should be enjoined from further use of any websites that were created by David Kleiman and which are therefore the property of the Estate, heir and beneficiary (the Plaintiff).     To the extent that Computer Forensics, Paige, or Conrad have retained any bitcoin wallets that were the personal property of David Kleiman, Computer Forensics should be enjoined from monetizing, transferring or otherwise converting such bitcoin to its use of the use of its principals or third parties.

WHEREFORE Plaintiff demands judgment for temporary and permanent injunction against Defendant Computer Forensics, enjoining it from further use or operation of any websites of David Kleiman, and from monetizing, transferring or otherwise converting any bitcoin that belonged to David Kleiman to its use of the use of its principals or third parties, and any other remedy this Court may deem appropriate and just.

**COUNT IV**
**ACCOUNTING & INSPECTION OF RECORDS**
**PURSUANT TO SECTION 608.4101 OF THE FLORIDA STATUTES**
**(AS TO COMPUTER FORENSICS)**

36.     The allegations of paragraphs 1 through 19 are realleged and incorporated as if fully set forth herein.

37.     Computer Forensics is a limited liability company that was created on February 13, 2012, and is therefore subject to the Florida Limited Liability Act, which was in effect at the time. See Florida Stat. Section 608 et seq. (2012).

38.     Plaintiff, by operation of law and as personal representative of the Estate of David Kleiman, has now and has had a one-third interest in Computer Forensics, LLC since the passing of David Kleiman.

39.     Fla. Stat. § 608.4101(3) provides that a "limited liability shall furnish to a member, and to the legal representative of a deceased member or member under legal liability: (a) without demand, information concerning the limited liability company's business or affairs reasonably required for the proper exercise of the member's rights and performance of the member's duties under the operating agreement or this chapter."

40.     Plaintiff has learned of a sworn statement filed in federal court earlier this year (February 2017), stating that Patrick Paige presented some or all of the work that had been conducted by Decedent David Kleiman as his own.   Plaintiff had received no prior notification or information regarding this issue from Computer Forensics, and requires a full review of information concerning how David Kleiman's work was used and/or billed for following his death in April 2013, and said information is reasonably required for Plaintiff to exercise his rights as a one third member, as well as to enforce performance of the Operating Agreement executed in February 2013, based on this newly-discovered information.

41.     Fla. Stat. § 608.4101(6) provides that "any action to enforce any right arising under this section shall be brought in the appropriate court," and this action is properly brought in the Circuit Court of Palm Beach County.

42.     Plaintiff requests an accounting of Computer Forensics, to include the production of the following documents, which are reasonably required for Plaintiff to exercise his rights pursuant to Fla. Stat. § 608.4101(3) :

a.     File materials and work records for all client matters handled by David Kleiman before his death in 2013, including time sheets, or other means of recording his activity and work product;

CASE NO. 50-2016-CA-013045-XXXX-MB
Page 11 of 12

b.    Emails issued by David Kleiman on all client matters to allow Plaintiff to assess the Decedent's activity and work product, and calculate distributions that should have been made to decedent and/or his estate.

c.    Records of any payments received by Computer Forensics for all matters that were assigned to or worked on at any time by David Kleiman;

d.    Records of distributions made to Paige or Conrad arising out of any matters that were assigned to or worked on at any time by David Kleiman;

e.    All registrations and/or ownership documents for the website domain www.davidakleiman.com.

f.    All registrations and/or ownership documents for the website domain www.davekleiman.com.

43.    Plaintiff requests any attorney fees and costs awardable to Plaintiff pursuant to Fla. Stat. § 608, in bringing this action.

WHEREFORE, Plaintiff demands that Computer Forensics provide a complete and transparent accounting and inspection of records of any income generated from any client files assigned to or worked on by David Kleiman, and all other information reasonably required for Plaintiff to exercise his rights as a one third member, as well as to enforce performance of the Operating Agreement, and entry of any other remedy this Court may deem appropriate and just.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

## RESERVATION OF RIGHT TO FURTHER AMEND

Plaintiff reserves the right to further amend the Complaint if new information arises via discovery that gives rise to new or enhanced claims against the Defendants.

## PRAYER FOR RELIEF

Plaintiff prays for the following relief: (a) Enter a final judgment in favor of the Plaintiff and against the Defendants on all claims; and (b) Grant any further relief the Court deems proper.

Dated this 18th day of September 2017.

> **LUBELL & ROSEN, LLC**
> *Attorney for Plaintiff*
> *Ira Kleiman, individually and as*
> *Personal Representative of the*
> *Estate of David Kleiman*
> 1 Alhambra Plaza, Suite 1410
> Coral Gables, Florida 33134
> Phone: (305) 655-3425
> Fax: (305) 442.9047
> Primary:    aml@lubellrosen.com
> Secondary:maria@lubellrosen.com
>
> By: *Aldo M. Leiva*
>    ALDO M. LEIVA, ESQUIRE
>    Florida Bar #116424

NOT A CERTIFIED COPY

EXHIBIT 1

CFN 20160043050
OR BK 28090 PG 1377
RECORDED 02/08/2016 11:13:05
Palm Beach County, Florida
AMT
Sharon R. Bock
CLERK & COMPTROLLER
Pg 1377; (1Pgs)

**IN THE CIRCUIT COURT FOR PALM BEACH COUNTY, FLORIDA**     **PROBATE DIVISION**

**IN RE: ESTATE OF**

**DAVID ALAN KLEIMAN**

Deceased.

File No.
**502013CP005060XXXXNB**

Division IH

**LETTERS OF ADMINISTRATION**
(single personal representative)

TO ALL WHOM IT MAY CONCERN

    WHEREAS, David Alan Kleiman, a resident of Palm Beach County, Florida, died on April 26, 2013, owning assets in the State of Florida, and

    WHEREAS, Ira Steven Kleiman has been appointed personal representative of the estate of the decedent and has performed all acts prerequisite to issuance of Letters of Administration in the estate,

    NOW, THEREFORE, I, the undersigned circuit judge, declare Ira Steven Kleiman duly qualified under the laws of the State of Florida to act as personal representative of the estate of David Alan Kleiman, deceased, with full power to administer the estate according to law; to ask, demand, sue for, recover and receive the property of the decedent; to pay the debts of the decedent as far as the assets of the estate will permit and the law directs; and to make distribution of the estate according to law.

    ORDERED on _____2-4-_____, 2016.

Circuit Judge

STATE OF FLORIDA · PALM BEACH COUNTY
I hereby certify that the foregoing is a true
copy as recorded in my office and the
...
SHARON R. BOCK
CLERK & COMPTROLLER

NOT A CERTIFIED COPY

EXHIBIT 2

## Computer Forensics, LLC Operating Agreement

This Agreement executed on February 1, 2013 shall strictly state the activity governing Computer Forensics, LLC business operations.

Computer Forensics, LLC shall be owned equally by Carter Conrad, Dave Kleiman, and Patrick Paige. Each individual shall be a Managing Member of Computer Forensics, LLC, with a fiscal year of each calendar year (January to December). Each Managing Member shall possess, and own, a 33.33% interest of Computer Forensics, LLC. Gross revenue produced, and received, by Computer Forensics, LLC shall be distributed as follows: 20% of all gross proceeds shall go to Computer Forensics, LLC for expenses and overhead, the remaining 80% shall be distributed to each participating member based on a percentage of activity or work product, proportional to the production of the revenue or income. Upon the end of the fiscal year, should there be proceeds in excess of operation expenses remaining within the accounts of Computer Forensics, LLC, each member shall be awarded an equal 33.33% share of income determined not to be bookmarked for expenses, by a majority of the Managing Members. All equipment, software, hardware, or other intellectual property, owned individually by each member shall remain in the ownership of that member. Any equipment, software, hardware, or other intellectual property purchased with Computer Forensics, LLC assets shall be owned by Computer Forensics, LLC, with all provisions as stated above.

This operating agreement shall be enforced from the date noted above and supersedes any and all previous agreements.

So witnessed by our hand and signature below,


Carter Conrad

Digitally signed by Dave Kleiman
DN: cn=Dave Kleiman, o=DaveKleiman.com, ou=forensics,
email=dave@davekleiman.com, c=US
Reason: I agree to the terms defined by the placement of
my signature on this document
Location: Miami, Florida
Date: 2013.02.13 11:09:04 -05'00'

Dave Kleiman


Patrick Paige

NOT A CERTIFIED COPY

**Message**

| | |
|---|---|
| **From:** | Patrick Paige < ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ |
| **Sent:** | 3/24/2016 2:46:00 PM |
| **To:** | Dex |
| **Subject:** | RE: Dave |

I've never seen any paperwork on the company... The only thing we ever got was a post card thing from the Australian government but it didn't contain any information.

*Patrick Paige EnCE SCERS*
**1880 North Congress Ave. Ste 333**
**Boynton Beach FL 33426**
*Office: 561.404.3074*
**www.computerforensicsllc.com**

*Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.*

**From:** Dex ▓▓▓▓▓▓▓▓▓▓▓
**Sent:** Thursday, March 24, 2016 10:36 AM
**To:** Patrick Paige ▓▓▓▓▓▓▓▓▓▓▓▓▓▓
**Subject:** Re: Dave

No prob.  you can text me at ▓▓▓▓▓▓▓

And as for the W&K stuff in the file cabinet?
Find anything?  The company records could end up being more important than Dave's passwords.

Ira

On Thursday, March 24, 2016 10:06 AM, Patrick Paige ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ wrote:

Sorry I forgot to get back with you... I will text you the webmail logon information so you can access his mail files... I got 2 numbers for you and I don't know which one is your cell or home... what's a good number I can text you at?

*Patrick Paige EnCE SCERS*
**1880 North Congress Ave. Ste 333**
**Boynton Beach FL 33426**
*Office: 561.404.3074*
**www.computerforensicsllc.com**

*Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.*

**From:** Dex ▓▓▓▓▓▓▓▓▓▓▓
**Sent:** Thursday, March 24, 2016 9:48 AM
**To:** Patrick Paige < ▓▓▓▓▓▓▓▓▓▓▓
**Subject:** Dave



EXHIBIT
8
12/10/19

Hey Patrick,

I haven't heard back from you about the hosting files stuff.

Anyway, there's another issue I was wondering if you could help me with.
I'm trying to locate any documents related to the W&K biz Dave operated.

I remember we had a conversation at Dave's house shortly after he passed
away. You were mentioning to me how my dad was asking for the return
of a file cabinet he bought for Dave and you said something like "what
does your dad need with another file cabinet?"  And I was like "I don't know,
I guess he just wants it because he bought it." Of course I didn't think
anything of it at the time. But it just dawned on me that maybe inside that
cabinet is where Dave stored his W&K related stuff? You didn't possibly
come across any papers mentioning W&K?

Thanks,
Ira

PAIGE_00002698

Message

| | |
|---|---|
| **From:** | Patrick Paige ████████████████████████████████████ |
| **Sent:** | 3/28/2016 6:10:00 PM |
| **To:** | Dex |
| **Subject:** | RE: viewing emails |

Yes I will keep it... It seems weird that the address on the envelope is handwritten considering it came from the "Supreme Court". Appriver support is mainly online, did you go to their site and login with Dave's info?

https://cp.appriver.com/Login.aspx

*Patrick Paige* EnCE SCERS
**1880 North Congress Ave. Ste 333**
**Boynton Beach FL 33426**
*Office: 561.404.3074*
**www.computerforensicsllc.com**

*Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.*

**From:** Dex ████████████████████
**Sent:** Monday, March 28, 2016 2:03 PM
**To:** Patrick Paige ████████████████████
**Subject:** Re: viewing emails

Can you keep that letter and envelope in a safe place for me?
I'd like to check it out sometime.

So what do you think about the Appriver avenue?
Can I talk to their support guy?

Thanks.

On Monday, March 28, 2016 1:58 PM, Patrick Paige ████████████████████████ wrote:

I just found the filing today when I was looking for something else... I was never contacted by anyone about W&K and I've never heard of the girl.

*Patrick Paige* EnCE SCERS
**1880 North Congress Ave. Ste 333**
**Boynton Beach FL 33426**
*Office: 561.404.3074*
**www.computerforensicsllc.com**

*Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.*

**From:** Dex ████████████████████
**Sent:** Monday, March 28, 2016 1:52 PM
**To:** Patrick Paige ████████████████████
**Subject:** Re: viewing emails



**EXHIBIT**

**9**

12/10/19

I don't know, they might be able to access stuff we don't know about. You mentioned this web hosting biz is not your forte. And the backend of it is not really mine either.

When did you find that W&K filing?

Were you ever contacted by the girl (Uyen) that took over David's position as director for W&K?

Thanks.

On Monday, March 28, 2016 1:40 PM, Patrick Paige █████████████████ > wrote:

What would appriver support do for us? Also I found the original court mailing about WK. it has a case number... see attached.

*Patrick Paige* *EnCE SCERS*
**1880 North Congress Ave. Ste 333**
**Boynton Beach FL 33426**
*Office: 561.404.3074*
**www.computerforensicsllc.com**

*Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.*

**From:** Dex █████████
**Sent:** Monday, March 28, 2016 1:31 PM
**To:** Patrick Paige █████████████████
**Subject:** Re: viewing emails

Yep, I realized that shortly after emaiing you.

Could I possibly have the account login info that would let me talk to the appriver support people?

Thanks,
Ira

On Monday, March 28, 2016 10:18 AM, Patrick Paige █████████████████ > wrote:

Looks like a log file created when the site is backed up. You can open is as a text document to view it.

*Patrick Paige* *EnCE SCERS*
**1880 North Congress Ave. Ste 333**
**Boynton Beach FL 33426**
*Office: 561.404.3074*
**www.computerforensicsllc.com**

*Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.*

**From:** Dex
**Sent:** Saturday, March 26, 2016 1:07 PM
**To:** Patrick Paige                                        h>
**Subject:** Re: viewing emails

okay i think i figured out how to extract the file, but don't know how to read it.

i will attach one of them. maybe you know how to view it?

On Saturday, March 26, 2016 12:47 PM, Patrick Paige                                        wrote:

No I don't... I've seen some text files with weird passwords but I don't know if they are related.

*Patrick Paige* EnCE SCERS
**1880 North Congress Ave. Ste 333**
**Boynton Beach FL 33426**
*Office: 561.404.3074*
**www.computerforensicsllc.com**

*Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.*

**From:** Dex
**Sent:** Friday, March 25, 2016 10:32 PM
**To:** Patrick Paige
**Subject:** viewing emails

Hey Patrick,

I been searching through the emails, but no mention of bitcoin related stuff yet.
There seems to be a bunch of archived email files in .gz format and they are
password protected.  Do you know what it might be?

If so, can you text it to me.

Thanks,
Ira

Message

| | |
|---|---|
| **From:** | Patrick Paige |
| **Sent:** | 2/17/2014 6:38:10 AM |
| **To:** | dex561█████████████████████████ arter Conrad </O=EXG6/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=Carter73e> |
| **Subject:** | FW: Difficult |
| **Attachments:** | tmpimage001.jpg; tmpimage002.jpg; tmpimage003.jpg |

If he was posting anon. then vistomail would do the trick.

*Patrick Paige SCERS EnCE*
*Computer Forensics LLC*
*1880 North Congress Ave Suite 333*
*Boynton Beach FL 33426*
████████ *Cell*
*www.ComputerForensicsLLC.com*

**From:** Craig S Wright ███████████████
**Sent:** Sunday, February 16, 2014 8:33 PM
**To:** Patrick Paige
**Subject:** RE: Difficult

He had vistomail accounts.
I have no idea of what the details in Belize were.

The number would be related to the account.

**From:** Patrick Paige ██████████████████████
**Sent:** Monday, 17 February 2014 11:53 AM
**To:** Craig Wright
**Subject:** RE: Difficult

Any users names, email addresses etc. that we may be unaware of in association with the activities DK used?  In regards to the account you listed, have you made any inquiries or try to contact them?  Any information on the name of the bank? Is the number listed an account number?

*Patrick Paige SCERS EnCE*
*Computer Forensics LLC*
*1880 North Congress Ave Suite 333*
*Boynton Beach FL 33426*
████████ *Cell*
*www.ComputerForensicsLLC.com*

**From:** Craig Wright ████████████
**Sent:** Sunday, February 16, 2014 3:41 PM
**To:** Patrick Paige
**Subject:** RE: Difficult

I do not have a lot to give you. These may help:

- W&K Info Defense Research LLC
- GICSR Trust
- ████████



EXHIBIT
10
12/10/19

• ████

Locations
• Belize

It is not much, but then Dave always did things his way.

Regards,

...
**Dr. Craig Wright LLM GSE GSM GSC MMiT MNSA MInfoSec CISSP/ISSMP CISM CISA**

# RCJBR.org

Tel: + 612 8003 7553  |  Mobile: ████

http://www.rcjbr.org

▨ ▨ ▨

---

**From:** Patrick Paige ████
**Sent:** Monday, 17 February 2014 1:01 AM
**To:** Craig Wright
**Subject:** RE: Difficult

What about accounts and location DK had etc.?  I thought you were going to put a list together.

*Patrick Paige* SCERS EnCE
*Computer Forensics LLC*
*1880 North Congress Ave Suite 333*
*Boynton Beach FL 33426*
████ *Cell*
www.ComputerForensicsLLC.com

**From:** Craig Wright ████
**Sent:** Saturday, February 15, 2014 8:04 PM
**To:** Patrick Paige; Ira K
**Subject:** RE: Difficult

Well, preservation is first. The thing with a BTC address is that it will never disappear and if I am right will appreciate over time

...
**Dr. Craig Wright LLM GSE GSM GSC MMiT MNSA MInfoSec CISSP/ISSMP CISM CISA**

# RCJBR.org

Tel: + 612 8003 7553  |  Mobile: +████

http://www.rcjbr.org

▨ ▨ ▨

---

**From:** Patrick Paige ████
**Sent:** Sunday, 16 February 2014 10:59 AM
**To:** Craig Wright
**Subject:** RE: Difficult

Hey Craig, what's the plan... any progress?

*Patrick Paige* *EnCE SCERS*
**1880 North Congress Ave. Ste 333**
**Boynton Beach FL 33426**
*Office: 561.404.3074*
*Cell:* ▮
**www.computerforensicsllc.com**

*Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.*

**From:** Craig Wright ▮
**Sent:** Friday, February 14, 2014 12:20 AM
**To:** Patrick Paige
**Subject:** RE: Difficult

You will have it tomorrow

On 14/02/2014 4:06 pm, "Patrick Paige" ▮ wrote:

Hi Craig... I spoke to Dave's brother who is going to let me examine DK's laptop and thumb drives. Were you able to put together a list of what we should look for? Also I and Carter would like to see what information you have that confirms the news you shared with me. As close friends of DK we would love to hear the story of how this all played out. Talk soon

*Patrick Paige* *SCERS EnCE*
*Computer Forensics LLC*
*1880 North Congress Ave Suite 333*
*Boynton Beach FL 33426*
▮ *Cell*
*www.ComputerForensicsLLC.com*

**From:** Craig Wright ▮
**Sent:** Wednesday, February 12, 2014 2:28 PM
**To:** Patrick Paige; Carter Conrad
**Subject:** RE: Difficult

I will try calling again later. My number is ▮

Dave could have some paper wallets, but he was careful. He would have had some way to recover. It would also have been cryptic.

...
**Dr. Craig Wright LLM GSE GSM GSC MMiT MNSA MInfoSec CISSP/ISSMP CISM CISA**

# RCJBR.org

Tel: + 612 8003 7553 | Mobile: + ▮
http://www.rcjbr.org

**From:** Patrick Paige ▮
**Sent:** Thursday, 13 February 2014 1:06 AM
**To:** Craig Wright; Carter Conrad
**Subject:** RE: Difficult

Hi Craig,

Dave was also my best friend and like a brother to me. He wasn't in the right mindset when he decided to give up on life weeks before his death. He mentioned Bitcoins to me a while ago, but we never discussed it in depth. The issue would be that all his hard drives were encrypted including his cell phone. Do the wallets only exist on Dave's computers or are there backups somewhere else? Also "The amount DK mined is far too large to email." Please clarify.

*Patrick Paige* EnCE SCERS
**1880 North Congress Ave. Ste 333**
**Boynton Beach FL 33426**
Office: 561.404.3074
Cell ▓▓▓▓▓▓
**www.computerforensicsllc.com**

*Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.*

**From:** Craig Wright ▓▓▓▓▓▓▓▓▓▓
**Sent:** Wednesday, February 12, 2014 5:21 AM
**To:** Carter Conrad; Patrick Paige
**Subject:** Difficult

Hello,

I know both of you knew Dave and trusted him.

Dave and I had a project in the US. He ran it there. We kept what we did secret.

The company he ran there mined Bitcoin. I do not believe there has been anything of this in the estate, but I also know his father is not IT literate. I would ask that if you know of any of his computers, that you help ensure that any wallet.dat files he has are saved. I know that is a long time, but I had thought Dave would have planned more for the end, but he did not always do that.

The amount DK mined is far too large to email. I know this is cryptic and I know I gave Dave the shits with this and some of the things we did in WK, but he was my best friend and I am not sure where else to contact.

I am not looking for anything, just that Dave's estate gets what was in it. I do not want any of it at all. Please note, I am not seeking anything in this, but I want his family taken care of.

Talk soon,

...

**Dr. Craig Wright LLM GSE GSM GSC MMiT MNSA MInfoSec CISSP/ISSMP CISM CISA**

# RCJBR.org

Tel: + 612 8003 7553  |  Mobile ▓▓▓▓▓▓▓▓

PAIGE_00003043

http://www.rcjbr.org

<<...>>   <<...>>   <<...>>

PAIGE_00003044

Message

| | |
|---|---|
| **From:** | Patrick Paige < ███████ |
| **Sent:** | 5/8/2014 1:16:00 PM |
| **To:** | Dex |
| **Subject:** | RE: Mailbox Renewal Reminder |

Hey Ira... No problem then I will let them know... When you say complicated, do you mean you found out more information?  We and most interested in if the news is true... I've asked Craig for more information, but he isn't very talkative.  He refuses to produce any data that would lead me to believe what he is saying is true.

*Patrick Paige* EnCE SCERS
*1880 North Congress Ave. Ste 333*
*Boynton Beach FL 33426*
*Office: 561.404.3074*
*Cell:* ███████
**www.computerforensicsllc.com**

*Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.*

**From:** Dex ███████
**Sent:** Thursday, May 08, 2014 12:30 AM
**To:** Patrick Paige
**Subject:** Re: Mailbox Renewal Reminder

Hey Patrick,

I don't think there's any need to renew the mailbox.

So far nothing has come from the Bitcoin stuff.  There's a lot more to the story and it's complicated.  Hopefully one day if anything ever comes of it, I'll make sure you guys get a piece of it.

Ira

On Thursday, May 1, 2014 4:02 PM, Patrick Paige ███████████████ wrote:
I don't think we are going to renew this mailbox so I wanted to check to see if you want to take it over... Let me know if you do and I can meet you over there and transfer it to you otherwise I think we will not renew it.

Patrick Paige EnCE SCERS
1880 North Congress Ave. Ste 333
Boynton Beach FL 33426
Office: 561.404.3074
Cell: ███████
www.computerforensicsllc.com

Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and



**EXHIBIT**
11
PL 12/10/19

PAIGE_00002956
PAIGE_00002956

deleting it from your computer. Thank you.

-----Original Message-----
From: donotreply@theupsstore.com [mailto:donotreply@theupsstore.com]
Sent: Thursday, May 01, 2014 1:07 PM
To: Dave Kleiman
Subject: Mailbox Renewal Reminder

Dear David,

This email notification is to inform you that your mailbox is or was due to be renewed on 3/11/2014.
Please come into our center by this date so that we may renew your mailbox and avoid any service
interruptions.

Please call (561) 622-7117 if you have any questions.

Thank you,

The UPS Store (#4067)
4371 Northlake Boulevard
Palm Beach Gardens, FL 33410 USA
(561) 622-7117 Tel


Please Do Not Respond to this email.

PAIGE_00002957
PAIGE_00002956

| Message |  |
|---|---|
| **From:** | Patrick Paige █ |
| **Sent:** | 2/18/2014 3:05:00 PM |
| **To:** | Dex |
| **Subject:** | RE: what's up |

We don't have any drives of Dave, they were in the laptops you have, and you have the thumb drives... The phone is a dead end and was factory reset and encrypted and most likely not used to store coins...

*Patrick Paige* EnCE SCERS
*1880 North Congress Ave. Ste 333*
*Boynton Beach FL 33426*
*Office: 561 404 2074*

**www.computerforensicsllc.com**

*Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.*

**From:** Dex █
**Sent:** Tuesday, February 18, 2014 10:01 AM
**To:** Patrick Paige
**Subject:** Re: what's up

Did you already finish searching the drives and cellphone you have?

On Tuesday, February 18, 2014 9:45 AM, Patrick Paige █ wrote:
I have no idea what if anything is in the account, that's all Craig sent me... who knows what it means at this point. I doubt Dave had any money elsewhere, but Craig seems to think so. I think the only thing we can do at this point is try and gain access to the thumb drives. Carter is checking with some people he knows in the banking area to see if the numbers Craig gave us mean anything.

*Patrick Paige* EnCE SCERS
*1880 North Congress Ave. Ste 333*
*Boynton Beach FL 33426*
*Office: 561 404 2074*

**www.computerforensicsllc.com**

*Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.*

**From:** Dex █
**Sent:** Tuesday, February 18, 2014 8:57 AM
**To:** Patrick Paige
**Subject:** Re: what's up

What exactly is supposed to be in the Belize account?  Money already mined from his Bitcoins?

I'm a little confused.

Are you searching for both a password to access the bank as well as a bitcoin key?



EXHIBIT
12
12/10/19

PAIGE_00002988
PAIGE_00002988

On Monday, February 17, 2014 10:12 AM, Patrick Paige ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ wrote:

Not sure… We need to find someone in banking, one is probably the account number, not sure what the other is…

Anytime you want to stop by the office this week is fine, just give me a call to make sure I'm there… We are at the S.E. corner of Gateway and Congress above Bonefish Grill.

*Patrick Paige* *EnCE SCERS*
*1880 North Congress Ave. Ste 333*
*Boynton Beach FL 33426*
*Office: 561.404.3074*
*Cell:* ▮▮▮▮▮▮▮
*www.computerforensicsllc.com*

*Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.*

**From:** De▮▮▮▮▮▮▮▮▮▮▮ ]
**Sent:** Sunday, February 16, 2014 10:30 PM
**To:** Patrick Paige
**Subject:** Re: what's up

Yeah, I can stop by sometime this week. I'm not sure about tomorrow though.

What's up with the Belize account?

On Sunday, February 16, 2014 7:40 PM, Patrick Paige ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ > wrote:
I know he's genuine, we are aware of his and Dave's friendship for years… I just don't know if we are getting the whole story…

Ira, when can you stop by the office so we can image the drives and put a plan together to crack the encryption?

*Patrick Paige* *SCERS EnCE*
*Computer Forensics LLC*
*1880 North Congress Ave Suite 333*
*Boynton Beach FL 33426*
▮▮▮▮▮▮▮ *Cell*
*www.ComputerForensicsLLC.com*

**From:** De▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
**Sent:** Sunday, February 16, 2014 10:55 AM
**To:** Patrick Paige
**Subject:** Re: what's up

He sent me the attached proposal white paper for a project they were working on.
And I have read several articles online that he wrote years ago and thanking Dave for his assistance.
I figure if we combine the PDF, the articles, the Youtube video about Dave, and his current business of creating the first Bitcoin Bank.. I conclude he's genuine.

Maybe he's waiting for you to see if you find a key before divulging the account info?
I'm not sure what his plan is, but I'm impressed with what I have read about them so far.

Ira

On Sunday, February 16, 2014 9:06 AM, Patrick Paige ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ m> wrote:
I didn't get any more emails from him other than preserve the data… I just sent him one… I asked him where is the information he was going to send… account information and locations… so far he isn't being very helpful so I don't want to believe yet.

*Patrick Paige* SCERS EnCE
*Computer Forensics LLC*
*1880 North Congress Ave Suite 333*
*Boynton Beach FL 33426*
▮▮▮▮▮*Cell*
*www.ComputerForensicsLLC.com*

**From:** Dex ▮▮▮▮▮▮▮▮
**Sent:** Saturday, February 15, 2014 10:30 PM
**To:** Patrick Paige
**Subject:** Re: what's up

Did you get the emails from Craig?  What do you think?

I for one have to say I'm a believer.  The evidence is overwhelming that he is legit.
That or he's the most elaborate social engineering hacker ever.

Seriously, I think he and Dave are a couple of geniuses.

This stuff is just mind blowing.


On Saturday, February 15, 2014 10:59 AM, Dex <dex561@▮▮▮▮▮▮▮> wrote:
He didn't seem to be mad and even suggested sending someone here to help us decrypt the drives.
But he also hinted that if Dave encrypted the drives it would be very difficult to gain access.

I wanted to see if he would divulge additional information to what was already given to you.  And I mentioned to him that you needed to consult with me because as the person in charge of his estate I have some of his belongings and drives.  I let him know any information provided would not go beyond our circle.

Perhaps you should try to reach out to him again.  The other question I have is if they are the true creators of this system, shouldn't there be such a thing as a master key?  I never heard of a program without one.

Ira



On Saturday, February 15, 2014 10:14 AM, Patrick Paige ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ wrote:
Be careful about what words you use in unencrypted emails.  He never sent me the information he said he was going to send, is he mad now… Plus He told me not to tell anyone else right now… and now he know I told you, not good… we need to be patient and get the information flowing from him and build a trust.

*Patrick Paige* SCERS EnCE
*Computer Forensics LLC*

PAIGE_00002990
**PAIGE_00002988**

*1880 North Congress Ave Suite 333*
*Boynton Beach FL 33426*
██████████ *Cell*
*www.ComputerForensicsLLC.com*

**From:** Dex ████████████████
**Sent:** Saturday, February 15, 2014 9:09 AM
**To:** Patrick Paige
**Subject:** Re: what's up

I exchanged a few emails with that guy last night. Couldn't resist asking him for proof that Dave was involved in the original Bitcoin document. He said it's too risky to release that information right now, but eventually he wants to. I'm still not sure what to make of him.

I told him how Dave was in need of money and how I find it unlikely for him not to cash in some coins if they were of any value. He said it's possible he could have cashed them in while they were still of lesser value, but believes he had a lot of them.

Still puzzled by all this. He's not willing to give concrete evidence about anything, yet what he say's might be true.

Ira