CONFIDENTIAL

**AlixPartners**

Expert Report of

Nicholas J. Chambers

AlixPartners, LLP

April 10, 2020

AlixPartners, LLP / 2099 Pennslyvania Ave NW / Suite 300 / Washington, D.C. 20006 / T +1 202 756 9000 / alixpartners.com

CONFIDENTIAL

## I. BACKGROUND AND QUALIFICATIONS

1. I am a Senior Vice President in the Investigations, Disputes and Risk practice at AlixPartners. I have been retained as an expert in the matter of Kleiman v. Wright, Case No. 9:18-cv-80176 by Dr. Craig Wright, the defendant in this action ("Dr. Wright" or "Defendant") and have been asked to provide my opinion regarding certain questions. I am familiar with the facts in this report, from either personal knowledge or from documents that have been provided to me. Insofar as they are within my own knowledge, the facts and matters in this report are true to the best of my own knowledge and belief. The analysis of the evidence in this matter is ongoing and I reserve the right to change the content of this report as new information becomes available.

2. AlixPartners is a global management advisory firm with over 2000 professionals around the world. AlixPartners provides consulting services and has deep expertise in the litigation technology, computer forensics, and restructuring and bankruptcy sectors.

3. I hold a Bachelor of Science in Computer Science and Computer Engineering from the University of Southern California. Prior to joining AlixPartners, I was employed at Navigant, a leading consulting firm, in the Disputes and Investigations practice. In my professional career I have provided consulting expertise in hundreds of civil and criminal matters. My experience includes forensic collection of digital evidence, forensic analysis of digital media especially that involving user-specific activity and history, examination of encrypted data, and the application of forensic scripting tools.

4. I have earned Guidance Software's EnCase Certified Examiner (EnCE) certification and I have participated in numerous training seminars related to computer forensics and incident response. I am a long-time member of the High Technology Crime Investigation

2

04/10/2020

CONFIDENTIAL

Association (HTCIA). I routinely make CLE presentations at law firms on topics relating to eDiscovery and digital forensics.

5. As a result of my skill, experience, training, and education, I have expert knowledge in the area of computer forensics, specifically including the examination of electronic media, best practices related to forensic collection and analysis, and the recovery of deleted data.

6. AlixPartners is being compensated for my work at an hourly rate of $665, regardless of outcome.

7. My full *Curriculum Vitae* can be found in the attached Appendix A.

8. Throughout this report, for the sake of clarity I will refer to Plaintiff, Ira Kleiman, as "IK" and Decedent, David Kleiman, as "DK".

## II. EVIDENCE REVIEWED

For this report I examined forensic images of fourteen hard drives and USB external devices that I understand had belonged to the decedent Dave Kleiman. For clarity and discussion purposes, I assigned a friendly identifier to each device, as shown below.

9. The below table and attached Appendix B also provide additional identifying details on all fourteen devices reviewed for this report.

CONFIDENTIAL

| Friendly Identifier | Device ID | Device Serial Number | Collection Method |
|---|---|---|---|
| Device 1 | Corsair Survivor Stealth TD Black USB thumbdrive | DCA46D83A46D614E | Sent to AlixPartners by Plaintiff counsel Boies Schiller Flexner on March 15, 2019 |
| Device 2 | Corsair Survivor Stealth TD Gray Blue USB thumbdrive | 68A87A90A87A5C8E | Sent to AlixPartners by Plaintiff counsel Boies Schiller Flexner on March 15, 2019 |
| Device 3 | Corsair Survivor Stealth TD Gray Orange USB thumbdrive | D8B0BD66B0BD4BAE | Sent to AlixPartners by Plaintiff counsel Boies Schiller Flexner on March 15, 2019 |
| Device 4 | "CEIC 2009" 2GB USB thumbdrive | 78049557049518E8 | Sent to AlixPartners by Plaintiff counsel Boies Schiller Flexner on March 15, 2019 |
| Device 5 | Corsair Survivor Stealth TD Gray Blue USB thumbdrive | 8AFB-1741 | Sent to AlixPartners by Plaintiff counsel Boies Schiller Flexner on March 15, 2019 |
| Device 6 | "IACIS" 2GB USB thumbdrive | 0B10-7EDF | Sent to AlixPartners by Plaintiff counsel Boies Schiller Flexner on March 15, 2019 |
| Device 7 | Key USB thumbdrive | 7004-0ABA | Sent to AlixPartners by Plaintiff counsel Boies Schiller Flexner on March 15, 2019 |
| Device 8 | Microvault Tiny USB thumbdrive | 5034345034343B74 | Sent to AlixPartners by Plaintiff counsel Boies Schiller Flexner on March 15, 2019 |
| Device 9 | SanDisk Cruzer Micro USB thumbdrive | F892E54992E50CC6 | Sent to AlixPartners by Plaintiff counsel Boies Schiller Flexner on March 15, 2019 |
| Device 10 | Western Digital WDC WD7500BPVT-0 hard drive | WD-WX71A20K2955 | Forensically collected by AlixPartners on April 23, 2019 |
| Device 11 | Seagate ST9500325AS hard drive | 5VE1B6VT | Forensically collected by AlixPartners on April 23, 2019 |
| Device 12 | Hitachi HTS72101 hard drive | MPCZN2Y0GS007H | Forensically collected by AlixPartners on April 23, 2019 |
| Device 13 | Western Digital WDC WD3200BEKT-2 hard drive | WD-WXMY08HR0801 | Forensically collected by AlixPartners on April 23, 2019 |
| Device 14 | Seagate ST9500420AS hard drive | 5VJ07GCY | Forensically collected by AlixPartners on April 23, 2019 |

CONFIDENTIAL

10. The first three devices listed in the above table ("Device 1", "Device 2", and "Device 3") will be referred to in this report as the "TrueCrypt Devices".

## III. QUESTIONS ASKED

For this report I was asked to inspect the above devices and provide my expert opinion on the following:

11. I was asked to inspect all the devices and to identify any evidence that they may have been formatted or had a new operating system installed on then after April 26, 2013, the date of the decedent's death.

12. I was asked to identify any evidence of new file creation or file modification on any of the devices after April 26, 2013.

13. Further, I was asked to render an opinion as to the impact of any identified activity and specifically whether the subsequent formatting, operating system installation, and file creation and modification permanently overwrote data previously existing on the devices and rendered it unrecoverable.

14. Lastly, I was asked to explain how TrueCrypt encryption works, and whether there is any known way of gaining access to, or determining the contents of, any TrueCrypt-encrypted container files found on the TrueCrypt Devices without having the password or key to the containers.

## IV. PROCESS AND PROCEDURES

15. Prior to beginning my review, I confirmed that the fourteen forensic images in question had not changed since the time of the original forensic imaging. I performed a verification test using MD5 hash protocols and compared the acquisition hash to the verification hash value. The test indicated that no changes had been made to the forensic images.

16. Following forensic best practices, I utilized a Tableau hardware write blocker to avoid any inadvertent changes during my review of each of the forensic images.

17. A "file system" is used on electronic storage media, such as a computer hard drive, to provide the rules for organizing and retrieving data on the media. File systems consist of files separated into groups called directories. Directories can contain both files and children directories (subdirectories). The file system establishes rules related to how file timestamps, such as created time and last modified time, are updated in response to various activities. Formatting a drive configures the device for use by placing a specific file system on the media. The New Technology File System (NTFS) and File Allocation Table (FAT) are two common file systems.

18. The NTFS file system is a file system developed by Microsoft and is the default file system on Windows devices. A NTFS file system contains a database called the Master File Table (MFT) that contains at least one record for every file and folder on the NTFS volume. Each record contains details such as file attributes and references to the location of data blocks for the file. Sufficiently small files, called resident files, can be stored entirely within the MFT record. The created timestamp of various file system entries, such as the MFT, can indicate when a device was last formatted.

CONFIDENTIAL

19. The FAT file system is a simple, legacy file system originally for use on floppy disks and later adapted for use on hard disk drives and other external media. The FAT file system family includes several variants, including FAT32 and FAT16. The FAT file systems have two main data structures: (i) a file allocation table (FAT) and (ii) directory entries. The FAT data structure has a list of entries that map to every data cluster on the file system and tracks which clusters are in use and which are "free" (available to be written to). Each file and directory on the file system are allocated a directory entry. These directory entries store details such as the file or folder name, size in bytes, and starting cluster address. This allows the FAT file system to find individual files among the clusters of data on a device.

20. When a NTFS file system file is deleted, either by a user, a program, or the operating system, the file's associated MFT record is marked as free and available to be overwritten. This allows the file system to allocate another file to this record. However, the actual information stored within the MFT record, and the corresponding data contained elsewhere on the media (if applicable), are not immediately destroyed. The data is recoverable until it is overwritten by new data.

21. When a FAT file is deleted, the first character of the directory entry is replaced by a special character entry, 0xE5, which tells the operating system that the directory entry is available for use by a new entry. The entries in the File Allocation Table corresponding to the deleted file are set to zero to indicate that the associated data clusters are available for use. However, the actual data stored in the data clusters are untouched. Prior to rewriting data over the deleted information, forensic means can be attempted to recover old data.

*CONFIDENTIAL*

22. When a user deletes data, any activity performed on NTFS or FAT formatted media, including creating new files, modifying existing files, and even background data writes executed by the operating system, has the potential to overwrite previously deleted MFT records and/or data blocks marked as available to be overwritten, rendering them unrecoverable. Continual use of a drive increases the likelihood that previously deleted "available" data is overwritten by new data and becomes permanently unrecoverable.

23. There are several factors that can increase the likelihood that activity on a device overwrites previously deleted data that has not yet been overwritten: (i) the capacity of the media device, (ii) what percent of the drive's allocated capacity is in use, or how "full" the drive is, (iii) the size of the new files written to the device, (iv) the size of the previously deleted files that are marked as available to be overwritten, and (v) the frequency with which new data is written to the device.

24. As a drive is filled with active data and its allocated capacity approaches 100%, the more probable it is that previously deleted data will be overwritten. It is likely impossible that data that has been completely overwritten will be able to be recovered via standard forensic means.

25. Some encryption software validates encrypted data by requiring specific headers be present prior to decryption. The deletion of an encrypted file or partition, and the subsequent overwriting of even a small portion of that encrypted data, can result in the entire file or partition becoming unreadable.

26. Re-formatting a device partition that already contains an existing file system results in the destruction and elimination of data stored in the MFT or File Allocation Table, along with the references to file data stored elsewhere on the drive. When a drive is re-formatted,

CONFIDENTIAL

record values in the MFT and File Allocation Table are changed to zero. If a "quick format" method is used to format the disk, the file data stored elsewhere on the disk is typically untouched and could potentially be recovered, if it is not overwritten with other data by subsequent activity and use.

27. Installing an operating system is a massive operation and involves the creation of thousands of new files on a drive. These new writes fully or partially overwrite areas of the drive marked as available, greatly reducing the ability to recover previously deleted data.

28. Details related to a Microsoft Windows operating system installation, including registered owner and install date, are stored in the device's Windows registry at the time of the installation.

29. I utilized Guidance Software's EnCase Forensic Suite and Magnet Forensics' AXIOM to inspect the forensic images and (i) record the date of last format for each device, as referenced from the created timestamp of various file system structures, (ii) record details related to operating system installation using values in the device's Windows registry, (iii) record device attributes such as writable capacity and allocated percentage, and (iv) identify file system timestamps for active files and folders.

30. The file created timestamp is typically the date and time that a specific file or folder came to exist on the file system, either from new creation or from being copied from another source. The file last modified timestamp is generally the date and time that a specific file or folder was last altered, either by a user, program, or operating system. Modifying a file or folder's name or moving a file or folder within a file system ("cut and paste operation"), will usually not update the last modified timestamp.

31. File carving is a process used to identify whole or fragmentary data on electronic media without the assistance of the file system that originality created the data. I performed file carving on the devices by searching for known file headers and footers (e.g. series of characters identifying certain file types) within the "free" space on the devices. I extracted sections of data matching those known headers and footers, essentially recreating whole or partial deleted files. Data that was previously completely overwritten is unrecoverable and is not able to be recreated from the original physical media through file carving or any other means.

32. I searched the resulting file carved data to identify any occurrences of Bitcoin public addresses or private keys. Bitcoin public addresses typically begin with a "1" or a "3" and are between 26-35 characters in length. Bitcoin private keys are typically represented in a "Wallet Import Format" which is represented using base58 encoding. I utilized a regular expression (a sequence of characters that define a search pattern) to search for data matching the pattern of a Bitcoin public address or private key.

33. TrueCrypt is a discontinued free software encryption utility. TrueCrypt allows a user to securely encrypt data via a user specified password and/or keyfile(s). A keyfile is a normal electronic file whose content is combined with a password to unlock a TrueCrypt partition or container.

34. A user can encrypt entire partitions or create a fixed-size container that can store data in an encrypted state. Within the encrypted dataset, the entire filesystem, including file names, free space, and metadata, is encrypted. The password and/or keyfiles used during creation would be required to subsequently unlock the encrypted data. The

software supports several encryption ciphers such as AES, Serpent, and Twofish. TrueCrypt was abandoned by its development team in May 2014.

35. TrueCrypt encrypted containers and partitions do not have a standard header (e.g. series of characters identifying certain file types), and the underlying encrypted data appears as completely random characters, which renders reliable identification impossible without knowledge of the password. However, by default, TrueCrypt containers are created with a logical size (bytes) divisible by 512.

36. The results of my inspection are listed below in Section V and in the attached Appendix B.

## V. CONCLUSIONS

37. On each of the three TrueCrypt Devices, I identified a folder with the name "TrueCrypt". Within these folders is what appears to me to be an encrypted container file. TrueCrypt files are known to have a logical file size that is divisible by 512. They also frequently are devoid of a file header indicating the file type, and when viewed will show what is seemingly random data. Over the course of my career I have inspected thousands of these types of files. Here the file containers are consistent with other TrueCrypt container files I have observed. Each have a logical size divisible by 512, do not have a known header, have seemingly random underlying data, and reside in a folder named "TrueCrypt". I am unable to access, unlock, or determine the contents of these encrypted containers and, barring access to the password, which is currently unknown to me, the only remaining option for attempting to access their content is to perform a brute-force password attack. Executing a brute-force attack against a TrueCrypt volume or container,

CONFIDENTIAL

particularly one where complex authentication methodology was used, would take an extraordinary amount of computing power and potentially decades to complete. For this reason, it is considered to be a practical impossibility.

38. I identified one file recovered through file carving with a public bitcoin address. The file is not a bitcoin artifact, but instead appears to be a "To Do List" text file with assorted notes. The bitcoin public address is preceded by the phrase "is this a satoshi address?" in the text file. I did not identify any valid Bitcoin private keys. Any additional data that was previously completely overwritten is unrecoverable and is not found in the file carved data population.

39. I also identified partitions on the following devices that I believe to be fully or partially encrypted. This conclusion is based on the fact that these partitions either do not possess a known header and/or have seemingly random underlying data. Without knowledge of the encryption scheme in use and the password, I am unable to access, unlock, or determine the contents of these potentially encrypted partitions and cannot discern what information they contain.
    a. Device 12
    b. Device 13
    c. Device 14

40. I identified that the following devices were formatted after April 26, 2013, based on the created timestamps of various file system structures:
    a. Device 6
    b. Device 9

04/10/2020

CONFIDENTIAL

    c. Device 11

    d. Device 14

41. I identified that the following devices had an operating system installed on them after April 26, 2013, based on values stored within each device's Windows registry:

    a. Device 10

    b. Device 11

42. I identified that the following devices had active data added or modified after April 26, 2013, based on file created and last modified timestamps:

    a. Device 1

    b. Device 2

    c. Device 3

    d. Device 4

    e. Device 5

    f. Device 6

    g. Device 7

    h. Device 8

    i. Device 9

    j. Device 10

    k. Device 11

    l. Device 13

    m. Device 14

04/10/2020

*CONFIDENTIAL*

43. I identified that the following devices also had active data added to them after October 1, 2018, based on file created timestamps:

    a. Device 1
    b. Device 2
    c. Device 3
    d. Device 4
    e. Device 5
    f. Device 6
    g. Device 7
    h. Device 8
    i. Device 9
    j. Device 10
    k. Device 11

44. In total across all fourteen devices, I identified that at least 106 GB of active files and folders were added or modified after April 26, 2013.

45. The actions I identified in this report, specifically the formatting and installation of operating systems, are acts that permanently overwrote data previously existing on the devices rendering it permanently unrecoverable. As such we will never be able to know the content of this overwritten information. These actions also potentially rendered any encrypted partitions or containers that were on these devices prior to formatting and installation of operating systems permanently unrecoverable, even if we had or could

uncover the passwords or keys to decrypt them. Without these, and possibly even with them, we will never be able to discern what information the devices with encrypted containers or partitions held.

46. The attached Appendix B provides additional details on the devices reviewed for this report.

## VI. RESERVATION OF RIGHTS

47. I reserve the right to modify or supplement this report if I become aware of any misstatements or if I become aware of other data or evidence relevant to my opinions.
48. I reserve the right to respond to any statements made by the Plaintiff or his witnesses or his expert witnesses.

Dated: April 10, 2020 Washington, D.C.

_____
Nicholas J. Chambers

CONFIDENTIAL

**AlixPartners**

**APPENDIX A**
**CURRICULUM VITAE**
**OF**
**Nicholas J. Chambers**

| | |
|---|---|
| **POSITION** | Senior Vice President, AlixPartners, LLP, Washington, D.C. |
| **EDUCATION** | B.S., Computer Engineering and Computer Science<br>University of Southern California |
| **PROFESSIONAL HISTORY** | Mr. Chambers has almost a decade of experience in information technology and as a forensic investigator. He has experience with forensic collections of digital evidence, forensic analysis, and several programming languages, including C++, Java, and scripting tools. |
| **PROFESSIONAL EXPERIENCE** | Mr. Chambers has provided digital forensic consulting and electronic discovery services in hundreds of civil and criminal matters. Prior to joining AlixPartners, he consulted at a leading electronic discovery firm on digital forensics engagements. |
| **RANGE OF EXPERIENCE** | Mr. Chambers has performed a variety of services related to computer forensics and investigations. A sample of these include:<br>• Defensible forensic collection of ESI<br>• Examination of electronic media<br>• Best practices related forensic collection, evidence handling, and forensic analysis<br>• Recovery of deleted data<br>• Examination of encrypted data<br>• Filtering and searching for responsive documents<br>• Client site assessment of ESI, assistance with identification of items potentially responsive to eDiscovery obligations<br>• Creation of custom script and programming solutions |
| **PROFESSIONAL AFFILIATIONS** | High Technology Crime Investigation Association (HTCIA) |
| **ACCREDITATIONS AND LICENSES** | EnCase® Certified Examiner (EnCE), Guidance Software<br>CCE Certification in Progress |

CONFIDENTIAL

**Nicholas J. Chambers**
**PAGE 2**

| | |
|---|---|
| **ADDITIONAL TRAINING AND EDUCATION** | FOR585: Advanced Smartphone Forensics, The SANS Institute |
| | FOR518: Mac and iOS Forensics Analysis and Incident Response, The SANS Institute |
| | EnCase Advanced Computer Forensics, Guidance Software |
| | EnCase Forensic 8: Program Review, The SANS Institute |
| | Memory Acquisition Tools and Techniques, The SANS Institute |
| | HTCIA 2018 International Conference Seminars, HTCIA |
| | HTCIA 2015 International Conference Seminars, HTCIA |
| | HTCIA 2013 International Conference Seminars, HTCIA |
| **EXPERT WITNESS TESTIMONY** | **Orta v. Orta** |
| | Case Number: 155377 FL |
| | Court: Circuit Court for Montgomery County, Maryland |
| | Type: Deposition |
| | Date: 01/04/2019 |