Joseph Karp
November 25, 2019

1            UNITED STATES DISTRICT COURT

2            SOUTHERN DISTRICT OF FLORIDA

3             CASE NO. 9:18-cv-80176-VV/BR

4
    IRA KLEIMAN, as the personal representative
5   of the Estate of David Kleiman, and
    W&K Info Defense Research, LLC,
6
              Plaintiffs,
7
    -vs-
8
    CRAIG WRIGHT,
9
              Defendant.
10

11  * * * * * * * * * * * * * * * * * *

12  VIDEOTAPED DEPOSITION OF JOSEPH KARP, ESQUIRE

13  DATE TAKEN: November 25, 2019

14  TIME: 10:10 a.m. - 12:25 p.m.

15  PLACE:2875 PGA BOULEVARD

16  Palm Beach Gardens, Florida 33410

17
    TAKEN BEFORE: RICK E. LEVY, RPR, FPR
18                AND NOTARY PUBLIC

19

20  * * * * * * * * * * * * * * * * * *

21

22

23

24

25

Joseph Karp
November 25, 2019                                        2

```
 1   APPEARANCES:

 2   On behalf of the Plaintiff:

 3        VAL FREEDMAN, ESQUIRE
          ROCHE FREEDMAN, P.A.
 4        200 S. Biscayne Boulevard
          Suite 5500
 5        Miami, Florida 33131

 6

 7   On behalf of the Defendant:

 8        BRYAN PASCHAL, ESQUIRE
          ZALMAN KASS, ESQUIRE
 9        RIVERO MESTRE, P.A.
          2525 Ponce de Leon Boulevard
10        Suite 1000
          Coral Gables, Florida 33134
11
     Also Present: Amy Mersky, The Videographer
12                 Ira Kleiman (via telephone)

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Joseph Karp
November 25, 2019                                    3

```
 1                        -  -  -
                         I N D E X
 2                        -  -  -

 3  WITNESS:          DIRECT    CROSS    REDIRECT    RECROSS
    JOSEPH KARP, ESQUIRE
 4  BY MR. PASCHAL:  5
    BY MR. FREEDMAN:
 5                        -  -  -
                       E X H I B I T S
 6                        -  -  -

 7
    NUMBER                              PAGE
 8  DEFENDANT'S EX. 1                    27
    DEFENDANT'S EX. 2                    40
 9  DEFENDANT'S EX. 3                    46
    DEFENDANT'S EX. 4                    54
10  DEFENDANT'S EX. 5                    63

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                  P R O C E E D I N G S

 2                          - - -

 3        Deposition taken before Rick E. Levy,

 4   Registered Professional Reporter and Notary Public

 5   in and for the State of Florida at Large, in the

 6   above cause.

 7              THE VIDEOGRAPHER:  Good morning.  We are now

 8         going on the record.  This date is November 25th

 9         2019.  We are at the Karp Law Firm in Palm Beach

10         Gardens, Florida, Suite 100 to take the videotaped

11         deposition of Joseph Karp, Esquire in the case of

12         Ira Kleiman as the Personal Representative of the

13         Estate of David Kleiman and W&K Info Defense

14         Research, LLC vs. Craig Wright.  Case number

15         9:18-cv-80176 BB/BR filed in the United States

16         District Court Southern District of Florida.

17              Reporting and video services are being

18         provided by US Legal Support.  Counsel present

19         please announce your appearance and then the

20         reporter will swear in the witness.

21         MR. PASCHAL:  Bryan Paschal on behalf of Dr.

22    Craig Wright.

23         MR. KASS:  Zalman Kass on behalf of Dr. Craig

24    Wright.

25         MR. FREEDMAN:  Val Freedman on behalf of
```

 1        plaintiffs.

 2                THE WITNESS:  I do.

 3                        - - -

 4     Thereupon,

 5                    (JOSEPH KARP, ESQUIRE)

 6                    having been first duly sworn or

 7     affirmed, was examined and testified as follows:

 8                    DIRECT EXAMINATION

 9     BY MR. PASCHAL:

10        Q.   Good afternoon.  Could you please state your

11     name for the record?

12        A.   Good morning.  My name is Joseph Stuart Karp,

13     S-T-U-A-R-T K-A-R-P, as in Peter.

14        Q.   Mr. Karp, when did you become -- are you a

15     lawyer?

16        A.   Yes, I am.

17        Q.   When did you become a lawyer?

18        A.   November or December 1974 or January or

19     February 1975.  I don't remember when I was sworn in.

20        Q.   Where did you attend law school?

21        A.   Brooklyn Law School, Brooklyn, New York.

22        Q.   Where are you licensed to practice law?

23        A.    In State Court in all of the State Courts of

24     New York and Florida in the State Courts of Florida.

25     U.S. Supreme Court Second Circuit, Fifth Circuit,

1  Eleventh Circuit, U.S. Tax Court and tons of district

2  courts both in New York and Florida.

3       Q.    Could we just go over your job history as a

4  lawyer.  Where did you take your first job?

5       A.    My first job was an assistant district

6  attorney in Bronx County Bronx, New York.  I did that

7  until 1977.  I came down here.  I served as an assistant

8  public defender until about the fall of 1978.  Then I

9  formed a law firm with a guy named Mark Kirk and it was

10 Karp & Kirk for about six months.  Thereafter I

11 formed -- I was in my own practice as a sole

12 practitioner.  Then I merged my practice with a law firm

13 that became known as Bernstein, Scharf, Narkier,

14 Monchick & Karp and a few other names on the way.  That

15 was until about 1988.

16            1988 I formed Joseph S. Karp, P.A.  I did a

17 name change of that firm to the Karp Law Firm, P.A.

18 somewhere probably around 1993 or four but it was a --

19 the same law firm as it is today.  To my knowledge I was

20 the first law firm to go by one person's name and law

21 firm after that in the State of Florida.

22      Q.    Interesting.  So what are your areas of

23 practice, primary practice?

24      A.    Now?

25      Q.    Yes.

Joseph Karp
November 25, 2019                                    7

```
 1        A.   Elder law, estate planning.

 2        Q.   Are you certified in any particular practice

 3   area?

 4        A.   Yes.

 5        Q.   Can you please let us know?

 6        A.   I am certified in elder law in the State of

 7   Florida and have been so certified since June 1998 when

 8   they commenced certification.  I was also certified by

 9   the National Elder Law Foundation which is the only

10   organization recognized by the ABA to certify elder law

11   attorneys in 1997.

12        Q.   Do you have any other professional licenses?

13        A.   Yes.  I have a -- I always forget what number,

14   Series 65 or 66.  I always forget the difference between

15   those numbers at this point because I took both tests.

16   And I have an insurance license.

17        Q.   You know how a deposition works I can assume;

18   right?

19        A.   Yes.

20        Q.   So I'm not going to go over some of the basic

21   stuff but I do want to ask you is there any reason why

22   you could not give your best testimony today?

23        A.   There is no reason today that my testimony for

24   today would not be the best that I could give today.

25        Q.   Are you taking any medication that might
```

Joseph Karp
November 25, 2019                              8

1    impact your testimony?

2         A.    No.

3         Q.    Mr. Karp, can you tell me how you know or knew

4    Mr. David Kleiman?

5         A.    When I was an infant his mother Regina was my

6    babysitter assisting my mother when she would go down to

7    help my father in his candy store.  So I knew Ira before

8    Ira.  His mother had been a family friend and maintained

9    family friendship.  I was aware when Ira was born.

10             We always had continuity of contact although

11   it was more my mother and his mother and then when I

12   moved to Florida in 1977 Ira and his parents were then

13   living in I believe Hollywood.  They then moved up to

14   Palm Beach Gardens and I became closer and more

15   intimately involved with the family from that point on.

16        Q.    I just want to follow up.  So when you moved

17   to Florida you were moving from New York?

18        A.    Yes.

19        Q.    Did Ira's family live in New York at that

20   time?

21        A.    No, they lived in -- they lived in various

22   places and my mother stayed in greater communication.

23   She would just say I spoke to Regina da, da, da and I

24   did not keep in constant communication.  I know there

25   was a time they lived in California for a short period

1    of time and that they had lived in Hillside, New Jersey

2    and then they had moved to Florida before I had moved to

3    Florida.

4        Q.   So how did you meet David Kleiman?

5        A.   How did I meet?

6        Q.   David Kleiman.

7        A.   Probably he was a little kid who came to visit

8    his grandmother who lived in the same building as my

9    mother in the same floor in the apartment building but

10   I'm not sure but I met David when he was a little kid.

11   I met Ira when he was a little kid.

12       Q.   Did you stay in contact with Dave Kleiman

13   throughout the years?

14       A.   Again there was sporadic where I did my own

15   thing and I didn't stay in touch with many people who

16   were like family friends and -- but after they moved to

17   Palm Beach County and I don't remember when but I do

18   remember that I was at David's Bar Mitzvah and he was

19   living in Palm Beach Gardens at that time so he was

20   younger than 13 when I started to have contact with him

21   but of course I was older and hopefully a little more

22   mature than he was so our contact was more like the

23   older family friend.

24       Q.   Just how frequently if you can guess would you

25   contact or speak with him?

1       A.   At what point?

2       Q.   Let's say in his adult life.

3       A.   During the course of his adult life there were

4   different times when I had little or no contact with him

5   when he was in military.  As he got older I had more

6   contact with him.  He used to come to our house for

7   Thanksgiving with his parents.

8            He would be in touch with me.  There came a

9   point where he worked on -- did some work on my computer

10  systems for me and it would be infrequent but as if the

11  ball had never been dropped.

12      Q.   You mentioned some of David Kleiman's

13  occupations.  I just want to ask you.  So you know he

14  was a police officer; correct?

15      A.   He was a deputy sheriff in Palm Beach County.

16      Q.   Do you know that he worked on computers,

17  right, computer forensic expert?

18           MR. FREEDMAN:  Object to form.

19           THE WITNESS:  When he first worked for the

20       police force at the sheriff's office I don't

21       believe he did computer work for them initially if

22       I recall because I'm not sure because he was I

23       think on some sort of road patrol.  But I know he

24       was exceptionally knowledgeable in computers and

25       that had always been one of his interests.

Joseph Karp
November 25, 2019                            11

```
 1   BY MR. PASCHAL:
 2       Q.   Did you know that he worked for a bouncer at a
 3   club?
 4           MR. FREEDMAN:  Object to form.
 5           THE WITNESS:  Not by -- as a bouncer did you
 6       say?
 7   BY MR. PASCHAL:
 8       Q.   That he was a bouncer -- actually it was a
 9   strip club?
10           MR. FREEDMAN:  Object to form.
11           THE WITNESS:  No, I didn't.  Or if I did I
12       didn't think much of it.  Deputy sheriff working as
13       a bouncer at a strip club wouldn't exactly shock me
14       if somebody was an assistant DA in the Bronx.
15   BY MR. PASCHAL:
16       Q.   Do you know who his training police officer
17   was?
18       A.   Off the top of my head, I do not.
19       Q.   Would you say that -- would you consider your
20   relationship with Dave Kleiman to be a close familial
21   relationship?
22       A.   Close is a strange word.  Did I take a
23   personal interest in David and did I consider him a
24   friend and almost a nephew that was distant, absolutely.
25   This Thursday I will not get a text that says gobble
```

Joseph Karp
November 25, 2019                                        12

1    gobble gobble which is what David texted to all of his

2    friends every Thanksgiving.

3        Q.   Was Dave Kleiman personality one that you

4    would consider -- would you consider Dave to be a shy

5    person?

6        A.   Not on your life.

7        Q.   Would you consider him to be a timid person?

8        A.   He was not timid but there were parts of David

9    that were very closed and private.

10       Q.   What parts were those of David that were

11   closed and private?

12       A.   The parts that remained closed and private.

13   There were --

14            MR. FREEDMAN:  Hold on.  If you can answer

15        that -- have you ever worked as Dave Kleiman's

16        attorney?

17            THE WITNESS:  Yes.

18            MR. FREEDMAN:  If you can answer that question

19        without reference to anything that would reveal

20        privileged communications then do so.

21            THE WITNESS:  He had relationships with women

22        that he didn't discuss.  He had -- had his own life

23        that he didn't share with everyone and if he's

24        like -- and he was like everybody else.  He had his

25        own thoughts that he didn't share with everyone.

Joseph Karp
November 25, 2019                                    13

 1    BY MR. PASCHAL:

 2         Q.   Did he share those thoughts with you?

 3              MR. FREEDMAN:  Again same instruction.

 4              THE WITNESS:  I'm not sure because that which

 5         he shared with me I don't know that he shared it

 6         with others.

 7    BY MR. PASCHAL:

 8         Q.   That's my question.  Did he share the thoughts

 9    that you're speaking of with you not with others?

10              MR. FREEDMAN:  Again same instruction.  Don't

11         answer if it calls for privilege.

12              THE WITNESS:  I have no idea who he shared his

13         other information with.  I don't know what he --

14         for example, I don't know what he shared with his

15         friends in the computer world that he didn't share

16         with me but I know that he had an affinity for

17         wolves.  I don't know if he shared that with his

18         computer friends.

19              I know that when my wife and I went to visit

20         him down in Miami at the V.A. Hospital he shared

21         with us that he would like from Too Jays two

22         Rachels with Russian dressing and Doctor Brown's

23         cherry soda.  I don't know if he shared that with

24         other people that that was something he liked.  I

25         don't know what he communicated to whom and where

Joseph Karp
November 25, 2019                                    14

```
 1        he compartmentalized his life as most of us do.
 2    BY MR. PASCHAL:
 3        Q.   I want to get back to your answer though.  You
 4    said he was not timid but there were parts of David that
 5    very closed and private.  Mr. Karp, my question is if
 6    you do not know what he shared other people how did you
 7    know that there were parts of his life that were closed
 8    and private?
 9             MR. FREEDMAN:  Same instruction, don't answer
10         if it calls for privileged communications.
11             THE WITNESS:  For example when he didn't want
12         us to visit him at the hospital because we had
13         offered -- we had visited when he was in the VA
14         Hospital here as well as the VA Hospital there he
15         didn't want to reveal why he did not want company.
16         I don't know why.
17    BY MR. PASCHAL:
18        Q.   Did he tell you that he didn't want you to
19    visit him?
20        A.   He probably told my wife that he did not want
21    us to visit and I didn't -- we didn't take it
22    personally.
23        Q.   Do you think he didn't want visitors to see
24    him at the hospital?
25        A.   I don't think --
```

```
 1              MR. FREEDMAN:  Object to form.
 2              THE WITNESS:  I don't know who he wanted to
 3         see or not see.  I knew there was a time that he
 4         welcomed our visits.  I knew there was a time where
 5         there was never anything negative about our
 6         relationship with him so I don't know what was
 7         going on with him that he no longer wanted us to
 8         visit.
 9    BY MR. PASCHAL:
10         Q.   How often did you visit him at the V.A. and
11    I'm sorry let me clarify.  First let me say how often
12    did you visit him at the Miami V.A.?
13         A.   Couple of times, two, three.  We had our own
14    issues in life itself that didn't lend itself to driving
15    down.
16         Q.   Did David Kleiman's father who I think was in
17    his 90s did he go and visit Dave Kleiman at the V.A.
18    Hospital in Miami?
19         A.   I don't have any personal knowledge of it and
20    since he's not available to testify I can't tell you how
21    to find that out.
22         Q.   Well, if David Kleiman's closest friends who
23    did visit David on a regular basis in the hospital said
24    that David's father was about 90 years old but he did
25    make the trip to see David in the hospital would their
```

1   testimony be false?

2             MR. FREEDMAN:  Object to form.

3             THE WITNESS:  I don't know the basis of their

4        information so it could be mistaken.

5   BY MR. PASCHAL:

6        Q.   So would it surprise you if they said that?

7        A.   No.  But I know that there were times that

8   David came up from Miami and may have visited his father

9   so he may have said "I saw my father last week" and they

10  assumed that he came down to the hospital to visit him

11  versus David came up to West Palm Beach and saw his

12  father.  So I don't know the basis of their belief.

13       Q.   What if their belief was they actually seen

14  the father visit and they were concerned because he was

15  90 years old but David really appreciated that his

16  father came to visit him?

17            MR. FREEDMAN:  Object to form.

18  BY MR. PASCHAL:

19       Q.   If that was the basis would that surprise you?

20            MR. FREEDMAN:  Object to form.

21            THE WITNESS:  Wouldn't surprise me but I would

22       wonder how he drove down there although Lou was a

23       relatively stubborn person and if you said to him

24       you're too old to drive to Miami that in and of

25       itself might have prompted him to do that.

```
 1   BY MR. PASCHAL:

 2        Q.   Okay.  Then do you recall Ira Kleiman ever

 3   visiting Dave Kleiman in the hospital?

 4        A.   Not when I was there.

 5        Q.   Do you know how far apart Ira and David lived

 6   from each other?

 7        A.   Not particularly far.

 8        Q.   Do you know how often Ira would visit Dave

 9   Kleiman at his house?

10        A.   I have no clue.

11        Q.   I think in 2011 you're aware that Dave had to

12   get admitted into the hospital and he was in there for

13   two years, do you recall that?

14        A.   I recall when he was first admitted to the

15   V.A. Hospital here in Riviera Beach.  My wife and I had

16   been there to visit him.  My wife went there

17   subsequently to visit him and actually was so upset

18   leaving his -- the visit because of his condition that

19   she drove right into Military Trail and got her car

20   totaled because she forgot to look to her left as the

21   southbound traffic was coming.

22        Q.   I want to take that in parts.  So --

23        A.   That case has already been settled so unless

24   you're here on behalf of the plaintiff --

25        Q.   I want to take that in part.  Originally David
```

1    Kleiman was in the V.A. Hospital here in West Palm

2    Beach; right?

3         A.   Yes, sir.

4         Q.   Did you know what prompted him to have to be

5    taken to the West Palm Beach V.A.?

6         A.   My understanding is that his condition was

7    totally failing.  He had MRSA.  He was unaware of the

8    MRSA because he had been paralyzed from the chest down.

9    He did not realize that the bleeding that he had on his

10   back was that extensive and it was not painful.  Pain is

11   a wonderful thing.  It is an informative device and he

12   was taken in in a declined condition and that they

13   restored his health and condition and then transferred

14   him down to Miami.  When we visited him at the V.A.

15   Hospital here we had -- certainly in Miami but I think

16   here as well we had to wear gloves, mask, hood, robes,

17   boots, you know the whole thing.

18        Q.   You testified a second ago that Ira and Dave

19   lived close to each other.  I want to ask you.  So

20   before David went to the West Palm Beach V.A. did you

21   know that his friend Jody had found him in the shower

22   that he had been there for a few days?

23             MR. FREEDMAN:  Object to form.

24             THE WITNESS:  I know that his friend Jody is

25        if one who found him I believe and got him to the

```
 1          V.A. Hospital and I knew Jody because he and David
 2          were computer geek friends and Jody helped us with
 3          our home computers at one point and then Jody one
 4          day did not wake up himself.
 5   BY MR. PASCHAL:
 6          Q.   Did he pass away from a heart attack?
 7               MR. FREEDMAN:  Object to the form.
 8               THE WITNESS:  As far as I know he died of
 9          natural causes at his home but I did not get
10          involved in how he died.
11   BY MR. PASCHAL:
12          Q.   Then when David Kleiman was transferred from
13   the West Palm Beach V.A. to the Miami V.A. was it
14   because the Miami V.A. had a special unit that West Palm
15   Beach didn't have?
16               MR. FREEDMAN:  Object to form.
17               THE WITNESS:  My understanding is that the
18          Miami V.A. had the capacity to help paralyzed
19          veterans and had the equipment there and facility
20          that was more able to assist with somebody who was
21          paralyzed.
22   BY MR. PASCHAL:
23          Q.   Now, David he was in the military; right?
24          A.   Right.
25               MR. FREEDMAN:  Object to the form.
```

1   BY MR. PASCHAL:

2        Q.   And he had received an award I think it was

3   soldier of the year?

4             MR. FREEDMAN:  Object to form.

5             THE WITNESS:  That I don't know.

6   BY MR. PASCHAL:

7        Q.   But he was a highly decorated soldier?

8             MR. FREEDMAN:  Object to form.

9             THE WITNESS:  I have no idea.

10  BY MR. PASCHAL:

11       Q.   Then he became a deputy sheriff; right?

12            MR. FREEDMAN:  Object to the form.

13            THE WITNESS:  At some point and I don't know

14       the correlation of dates.

15  BY MR. PASCHAL:

16       Q.   Was David Kleiman the type of person that

17  would stand up for himself?

18            MR. FREEDMAN:  Object to form.

19            THE WITNESS:  I'm not so sure.

20  BY MR. PASCHAL:

21       Q.   So if somebody stole something from David

22  Kleiman would he say something?

23            MR. FREEDMAN:  Objection to form and please

24       again same instruction if it calls for privileged

25       information don't answer.

 1              THE WITNESS:  I have no idea.
 2    BY MR. PASCHAL:
 3        Q.   If somebody stole hundreds of millions of
 4    dollars from David Kleiman do you think he would say
 5    something?
 6              MR. FREEDMAN:  Object to form, same
 7         instruction.
 8              THE WITNESS:  If David knew he had hundreds of
 9         millions of dollars he would have said something
10         about having hundreds of millions of dollars.
11    BY MR. PASCHAL:
12        Q.   Did David ever tell you or anyone in your
13    family that he had hundreds of millions of dollars?
14        A.   No, sir.
15        Q.   I just want to --
16              MR. FREEDMAN:  One second.  I'm sure you're
17         excluding from your answer any privileged
18         communications?
19              MR. PASCHAL:  Val, you objected to form.
20              MR. FREEDMAN:  Then we have a problem.  It's
21         not a form objection, it's a privilege objection.
22         You're asking a lawyer --
23              THE WITNESS:  I was -- everything I was
24         answering had to do with personal communication,
25         non-legal communication.

Joseph Karp
November 25, 2019                                    22

```
 1              MR. PASCHAL:  Just so we don't have any more
 2       because I think -- if something is based on
 3       attorney-client privilege you're a lawyer for a
 4       very long time probably better than any of us can
 5       please let us know that was a problem.
 6              THE WITNESS:  I gave you a comment that any
 7       comment I make will only be in his relationship as
 8       a friend and not his attorney.
 9              MR. PASCHAL:  Thank you, Mr. Karp.
10              MR. FREEDMAN:  Just so the record is clear I
11       am still going to instruct him not to answer the
12       privilege.
13              MR. PASCHAL:  Other than privilege.
14  BY MR. PASCHAL:
15       Q.   Were you aware that Dave Kleiman was married?
16       A.   How many times?
17       Q.   Was it twice?
18       A.   You asking me?
19       Q.   If you can tell me how many times I want you
20  to do that.
21       A.   I believe he was married twice.
22       Q.   Were you aware that one of his marriages
23  ended -- one of his marriages ended particularly bad?
24              MR. FREEDMAN:  Objection.
25              THE WITNESS:  Depends on whose vantage point
```

Joseph Karp
November 25, 2019                              23

```
 1        bad is.

 2             MR. PASCHAL:  Did David ever accuse one of his

 3        wives of having an affair?

 4             MR. FREEDMAN:  Objection, form.  Same

 5        instruction, privilege.

 6             THE WITNESS:  Anything he mentioned about his

 7        marriages would have been privileged communication.

 8   BY MR. PASCHAL:

 9        Q.   Did you know that David accused another police

10   officer of having an affair with his wife?

11             MR. FREEDMAN:  Objection to form, same

12        instruction on privilege.  Don't answer the

13        question.

14             THE WITNESS:  Same response.

15   BY MR. PASCHAL:

16        Q.   Did you know that David Kleiman went to the

17   news to report this affair with another police officer?

18             MR. FREEDMAN:  Objection to form.

19             THE WITNESS:  I don't know now that and what I

20        knew in the past if I did know something like that

21        would have been privileged.

22   BY MR. PASCHAL:

23        Q.   Well, if you saw the news report and the story

24   on the news would that be privileged?

25        A.   Who gave the news the story could very well be
```

Joseph Karp
November 25, 2019                                      24

1   privileged.  But I don't recall seeing that on the news.
2   I don't have the luxury of getting home to watch local
3   news nor the luxury of being awake to see it at 11.
4        Q.   Do you have any knowledge of Mr. David Kleiman
5   reporting that to the news?
6             MR. FREEDMAN:  Objection to form.  Don't
7        answer the question.
8   BY MR. PASCHAL:
9        Q.   What was the scope of your representation of
10  Mr. David Kleiman?
11       A.   That would be privileged.
12            MR. FREEDMAN:  Yes, don't answer that
13       question.
14  BY MR. PASCHAL:
15       Q.   When did Mr. Kleiman engage you as his lawyer?
16       A.   That would be privileged.  That would be
17  privileged.  Attorney-client representation is
18  privileged communication in and of itself.
19            MR. PASCHAL:  Are you instructing him not to
20       answer?
21            MR. FREEDMAN:  I am not instructing him not to
22       answer.  He is an attorney.  He can invoke the
23       privilege himself.
24            THE WITNESS:  I'm invoking the privilege.
25

1    BY MR. PASCHAL:

2        Q.   You're invoking the privilege that the date of

3    beginning of your representation is privileged?

4        A.   Yes, sir.

5        Q.   Are you familiar with the privilege log?

6        A.   Yes, sir.

7        Q.   Do you realize that information has to be put

8    publicly on a privilege log?

9        A.   Excuse me?

10       Q.   The date of your representation has to be

11   identified on a privilege log?

12       A.   I'll let a judge tell me that I have to reveal

13   it and if a judge does I will tell you and if a judge

14   wants to know from me in camera I will tell a judge in

15   camera and let a judge decide whether it's privileged.

16       Q.   So you'll only answer that question if a Court

17   gives you an order instructing you to answer that

18   question?

19       A.   Yes, sir.

20            MR. PASCHAL:  What's the time on the

21       recording?

22            THE VIDEOGRAPHER:  10:32.

23            MR. PASCHAL:  Can we go off the record for a

24       second?

25            THE VIDEOGRAPHER:  Off the record.  You're

1       off.

2              (Thereupon, a brief recess was taken.)

3              THE VIDEOGRAPHER:  Back on the record.

4              MR. PASCHAL:  This is going to be A or 1.

5    BY MR. PASCHAL:

6       Q.   Mr. Karp, do you recognize the document that I

7    just showed you?

8       A.   Yes, I do.

9       Q.   Can you turn to page and it's going by Bates

10   numbers at the bottom it says Karp a bunch of zeros and

11   then 25?

12      A.   This starts with 26.  You want me to flip over

13   to the cover?

14      Q.   Yes, please.  What is this document?

15      A.   This document is a cover to David's will.

16      Q.   For next five pages is this the complete will?

17      A.   There are four pages of -- four pages of will

18   and one page of cover.

19      Q.   Is this the complete will?

20      A.   Yes, sir.

21      Q.   Was this will executed on September 10th 2013?

22      A.   I doubt it.  He was dead already.

23             MR. FREEDMAN:  You might want to -- you said

24      the wrong date.

25             THE WITNESS:  This is not Chicago.  We don't

1        execute wills post mortem.

2    BY MR. PASCHAL:

3        Q.    July 30th 2003?

4        A.    Yes.

5            MR. PASCHAL:   Can we have this marked as

6        Exhibit 1.

7            MR. FREEDMAN:   Putting in the whole thing or

8        just the will?

9            MR. PASCHAL:   The whole thing.

10           THE WITNESS:   The whole thing is Exhibit 1.

11           (Defendant's Exhibit No. 1 was

12           marked for identification.)

13   BY MR. PASCHAL:

14       Q.    Can you go back to the will which is 0025.   If

15   you can just turn to the signature page which is 0028.

16       A.    Okay.

17       Q.    Is that David Kleiman's signature?

18       A.    Yes, sir.

19       Q.    Are there three witnesses identified in this?

20       A.    There are three witnesses identified on page

21   three or 028.

22       Q.    Is this address that's listed for witnesses

23   2875 PGA Boulevard, Suite 100, Palm Beach Gardens,

24   Florida 33140, is that your business address?

25       A.    Yes, and their business address.

 1        Q.    These three witness addresses, do you
 2   recognize their signatures?
 3        A.    I recognize Laura Ahler's signature because
 4   she worked for me a long time.
 5        Q.    Is that the third signature on this signature
 6   block?
 7        A.    Yes, and she's also the notary on the second
 8   page notarizing David's signature and the two other
 9   witnesses.
10        Q.    Does she still work at this law office today?
11        A.    No.
12        Q.    Do these other two witnesses, did they ever
13   work at this law office?
14        A.    Yes.
15        Q.    Do they work here today?
16        A.    No.
17        Q.    Do you know where they work?
18        A.    No.
19        Q.    Do you know where Laura works?
20        A.    Yes.
21        Q.    Where does she work?
22        A.    I'll take that back.  I know where she last
23   worked and I have not heard that she has left there.
24   She works for Stuart Morris in his Boca office.
25        Q.    This will that appoints Ira Kleiman as the

```
 1   beneficiary; right?

 2           MR. FREEDMAN:  Object to the form.

 3           THE WITNESS:  It doesn't appoint him as

 4      beneficiary.  It names him as beneficiary.

 5   BY MR. PASCHAL:

 6      Q.   Under a certain set of circumstances you're

 7   also named a beneficiary; correct?

 8      A.   Yes.

 9      Q.   Are you aware of any other wills that Mr.

10   Kleiman had?

11      A.   No.

12      Q.   Can you turn to page 0022 I think it's the

13   third page in the packet.  Did you prepare this

14   document?

15      A.   I don't know.

16      Q.   Do you recognize it?

17      A.   Yes, I do.

18      Q.   Is the petition for disposition of personal

19   property without administration?

20      A.   Yes, it is.

21      Q.   This is a verified statement?

22      A.   It's a sworn statement.

23      Q.   Which is a verified statement; correct?

24      A.   I'm not going to define verified.  It is

25   sworn.
```

1      Q.   In the title it says verified statement.  Is

2   it something else other than a verified statement?

3      A.   Where in the title does it say verified

4   statement if you could show me?  I apologize.

5      Q.   So petition for disposition of personal

6   property without administration.

7      A.   Okay.  Below that it says verified.  Yes, it

8   was sworn to.

9      Q.   Sworn to means it is being given under the

10   penalty of perjury?

11      A.   Yes, sir.

12      Q.   And on the second page Mr. Ira Kleiman signed

13   under the penalty of perjury; correct?

14      A.   Yes, sir.

15      Q.   That's on September 10th 2013?

16      A.   Yes, sir.

17      Q.   Now, in paragraph three can you take a look at

18   that paragraph.  It says "the estate of the decedent

19   consists only of personal property exempt from claims of

20   creditors under section 732.402 of the Florida Probate

21   Code and the Constitution of Florida and non-exempt

22   personal property value of which does not exceed the sum

23   of the amount the preferred funeral expenses and

24   reasonable and necessary medical expenses last 60 days

25   of decedent last illness all being described as

1    follows."  The next page it lists an insurance policy

2    for $9,000 -- $9,098.48; correct?

3         A.   Yes, sir.

4         Q.   So at this time on September 10th 2013 the

5    assets of the estate did not exceed the funeral expenses

6    reasonable and necessary hospital expenses for the last

7    60 days?

8              MR. FREEDMAN:  Object to the form.

9              THE WITNESS:  I don't understand the question.

10   BY MR. PASCHAL:

11        Q.   The assets, the personal assets of the estate

12   did not exceed the funeral expenses?

13        A.   The personal property exempt from the claims

14   of creditors was an insurance policy.

15        Q.   Okay.

16        A.   He may have had other assets that were not

17   exempt from the claims of creditors such as his

18   homestead.  That had creditors had rights.  This is a

19   special statute that allows for people to pay the

20   funeral to get money back.  Life insurance is exempt

21   from the claims of creditors.

22        Q.   And the life insurance policy it named -- who

23   was the beneficiary of the life insurance policy?

24        A.   I don't recall if there was a named

25   individual.  I assume there was not or it was his estate

Joseph Karp
November 25, 2019                                   32

1   because otherwise it would have gone directly to the

2   designated beneficiary.  So it could have been his

3   mother who was deceased.  It could have been estate or

4   it could have been blank.

5        Q.   On the second page it says Louis Kleiman?

6        A.   Louis Kleiman was the person who paid for his

7   funeral expenses and that is something allowed by law to

8   pay the person who paid his last funeral expenses out of

9   exempt assets free from creditor claims.

10       Q.   Do you know if Louis Kleiman was the only

11  person who paid for the funeral costs?

12       A.   That was my understanding and I have no reason

13  to disbelieve that.

14       Q.   So at this time when you're filing this

15  petition for disposition of personal property without

16  administration did you anticipate that there would be

17  any litigation regarding the estate of David Kleiman?

18            MR. FREEDMAN:  Hold on.  Object to form.

19       Don't answer the question.  You're calling for

20       thoughts of counsel of what he was thinking about

21       talking to his client it's privileged.  Instruct

22       him not to answer.

23            MR. PASCHAL:  What's the basis for privilege?

24            MR. FREEDMAN:  Just told you.  You're calling

25       for the thoughts of counsel on how he was

1          conducting his administration of his client's file.

2                MR. PASCHAL:  Are you claiming work product?

3                MR. FREEDMAN:  Yes and his discussions with

4          his client.

5                MR. PASCHAL:  I'm asking him as an element of

6          work product whether or not there was any

7          anticipation of litigation which has to be

8          disclosed.  Are you instructing him not to answer

9          something you would have to tell the court?

10                MR. FREEDMAN:  Re-ask the question.

11    BY MR. PASCHAL:

12          Q.   At the time that you filed this petition --

13    actually at the time you filed this petition the same

14    one we've been taking about were you anticipation

15    litigation over the estate of David Kleiman?

16                MR. FREEDMAN:  Okay.

17                THE WITNESS:  It's a catchy issue.  The answer

18          is I assumed that there would be an in rem action

19          with regard to his homestead and the mortgage that

20          he was no longer going to be paying.  I assumed

21          that he may have had a creditor or two that would

22          not pursue any case.  So I didn't anticipate there

23          would be an action at this status.

24    BY MR. PASCHAL:

25          Q.   So as an estate lawyer what would you

1   typically do when somebody dies to locate the assets of

2   the estate?

3        A.   First I would wait for a retainer to hire me

4   to do that.  I would then ask the people involved

5   whether they knew what assets existed.  I would then

6   once I was hired depending upon what they brought forth

7   I would then proceed to follow through getting tax

8   returns, things like that.  Checking for unclaimed

9   funds, going on public record to see if there were any

10  assets that were there but I would do nothing until I

11  was hired and the people were ready to come to me and

12  said I have an asset or a viable asset to go after.

13       Q.   Let me just ask you in an ordinary scenario

14  would you get bank statements?

15       A.   If we're hired?

16       Q.   In you're other hired as an estate lawyer.

17       A.   We would go get -- we would get the most

18  recent bank statement to see what was in the bank and

19  normally that's provided to us or we have letters of

20  authority signed by the client on behalf of the estate

21  once it's opened so that person has the authority to do

22  that.

23       Q.   You already said the tax returns.  You would

24  go and get the tax returns for the decedent?

25            MR. FREEDMAN:  Object to the form.

Joseph Karp
November 25, 2019                                    35

```
 1            THE WITNESS:  If we didn't have it.  In order
 2       to determine if there were assets of which we were
 3       unaware.
 4  BY MR. PASCHAL:
 5       Q.   You said you would do public searches on what
 6  type of public searches would you do?
 7       A.   There's unclaimed fund sites and there's -- we
 8  do a -- the reverse we check if there's -- if we're
 9  hired we check for creditors.  Do a credit check.
10       Q.   Would you look to see if a decedent owned any
11  companies?
12       A.   If we had knowledge that the decedent owned
13  companies otherwise we wouldn't even know where to
14  begin.
15       Q.   Are you aware that a simple search on
16  SunBiz.org would reveal all the companies for a
17  particular person?
18       A.   Really?
19            MR. FREEDMAN:  Object to form.
20            THE WITNESS:  I wouldn't believe that if you
21       told me that because we know of people who do not
22       list themselves as directors of their own companies
23       or officers or shareholders.  I've had clients get
24       screwed big time by the president of a corporation
25       when he was not the shareholder.  He had no money.
```

```
 1   BY MR. PASCHAL:
 2        Q.   So if somebody -- somebody could be a member
 3   for example of an LLC they just didn't disclose
 4   themselves as a member of the LLC, is that what you're
 5   saying?
 6        A.   I don't know.  That's a possibility.
 7        Q.   Let's say somebody did disclose themselves --
 8        A.   We do not do that unless it's called to our
 9   attention that this person had an interest in an LLC.
10   So for example we have lots of clients who come in and
11   if we started charging those clients because we want to
12   check if your deceased father had an interest in an LLC
13   in Florida or elsewhere we would find ourselves in a
14   precarious position of having no clients because we are
15   just lawyers milking it.  Doesn't happen.
16        Q.   Mr. Karp, if somebody is a member of an LLC
17   and they disclose they're a member of an LLC on
18   SunBiz.org is it your testimony that as the lawyer for
19   an estate you would not do a search that --
20        A.   Wait a minute, you're telling me that the dead
21   person disclosed that to me?
22        Q.   The dead person disclosed it to the world in a
23   public filing on SunBiz.org.
24        A.   No, we do not do that.  We do not check
25   SunBiz.org nor do we check if there's a Nevada
```

Joseph Karp
November 25, 2019                                    37

1   corporation or LLC because they have much better stuff.

2   If we see on the tax return they got income from an LLC

3   where money was spent on an LLC investment then we ask

4   about it.  We do not do that nor does my doctor test me

5   for every possible disease that I could have if I come

6   in with no complaint.

7        Q.   Did you learn that David Kleiman was -- had a

8   business interest in Computer Forensics, LLC?

9             MR. FREEDMAN:  Hold on.  If you can answer the

10        question without resorting to privileged

11        information then answer it.

12             THE WITNESS:  I can't answer that question.

13   BY MR. PASCHAL:

14        Q.   Why can't you answer that question?

15        A.   Because any communication about any business

16   interest that he would have had would have had to come

17   through a privileged source.

18        Q.   Who are you claiming the privilege on behalf

19   of?

20        A.   It would either be David or Ira.

21        Q.   Were they seeking legal advice from you?

22        A.   Any communication about a business interest

23   that David would have had would have been seeking

24   business advice from me either from David or Ira.

25        Q.   Without giving me the substance of those

Joseph Karp
November 25, 2019                                    38

1   communications did any of those communications occur

2   before you filed that petition that we just spoke about?

3           MR. FREEDMAN:  Hold on.  Really unclear what

4       you're asking.  Can you rephrase it?

5   BY MR. PASCHAL:

6       Q.   So were any of these privileged business

7   discussions regarding Computer Forensics that you had

8   with David or Ira that you just spoke about would any of

9   it have occurred before the petition that you just saw,

10  before you filed the petition that you just saw?

11      A.   I don't recall but this petition reflects that

12  as is the case with many people if I was aware of it I

13  was aware that it had no value as an asset of personal

14  property of David's.

15      Q.   Well, let me ask.  So you said that if client

16  or I guess a beneficiary here didn't come here and tell

17  you something that there were assets from a company you

18  would not have searched SunBiz.org?

19      A.   Correct.

20      Q.   So in this case if David didn't receive

21  compensation from Computer Forensics you would not have

22  known that he was an owner of Computer Forensics, LLC;

23  correct?

24          MR. FREEDMAN:  Hold on a second.  Bryan,

25      that's not correct because he could have

Joseph Karp
November 25, 2019                                  39

```
 1          potentially obtained that information --
 2               MR. PASCHAL:  Val, that's speaking.  Are you
 3          making an objection that's not just speaking?
 4               MR. FREEDMAN:  Don't answer the question.
 5               MR. PASCHAL:  On what basis are you telling
 6          him?
 7               MR. FREEDMAN:  Because the witness previously
 8          testified that the fact any knowledge he has
 9          ownership in Computer Forensics, LLC came through
10          privileged channels therefore the answer to your
11          question required -- could be refuted through
12          privileged communication so I was trying to explain
13          to you so you can potentially rephrase your
14          question since you don't want me to ask -- since
15          you don't want me to give speaking objections I
16          can't help you get the answer you want to get.
17               MR. PASCHAL:  You're instructing the witness
18          not to answer on attorney-client privilege?
19               MR. FREEDMAN:  Correct.
20               MR. PASCHAL:  Is that on behalf of the estate
21          or behalf of Ira Kleiman?
22               MR. FREEDMAN:  On behalf of the estate.
23     BY MR. PASCHAL:
24          Q.   Mr. Karp, did you run a credit report as a
25     part of administrating or acting --
```

```
 1              MR. FREEDMAN:  Actually it would be on both --

 2       let me amend that.  Could be on behalf of both

 3       because documents signed in September so I don't

 4       know because I'm not subject to the communications

 5       but it could be -- the privilege is claimed on

 6       both.

 7  BY MR. PASCHAL:

 8       Q.   Did you obtain a credit report for David

 9  Kleiman?

10       A.   I don't recall.

11              MR. PASCHAL:  This is going to be Defendant's

12       2.

13              (Defendant's Exhibit No. 2 was

14              marked for identification.)

15  BY MR. PASCHAL:

16       Q.   Mr. Karp, what am I showing you?

17       A.   You are showing me a copy of a Transunion

18  consumer credit report that my law firm ran on May 21,

19  2013 on David Kleiman.

20       Q.   Is this one of the type of credit records you

21  mentioned you ordinarily run?

22       A.   This is the type.

23       Q.   Is the date correct when it says results

24  issued May 21, 2013?

25       A.   I have no reason to doubt the integrity of the
```

```
 1  date.
 2      Q.   And subscriber name you said it's Karp Law,
 3  this was run by your firm?
 4      A.   Yes, sir.
 5      Q.   Did you obtain any other credit reports from
 6  any other credit bureau?
 7      A.   No.
 8      Q.   Only Transunion?
 9      A.   It's the only one we have a relationship with
10  to get them.
11      Q.   Could you please look at the last page of this
12  credit report?
13      A.   Okay.
14      Q.   Under inquiries you see that it says Karp Law?
15      A.   Yes.
16      Q.   That's May 21, 2013?
17      A.   Yes.
18      Q.   That's the day that you ran for the results of
19  this credit report issue?
20      A.   That is the date they represent we ran it.  I
21  don't know if we submitted it on the 19th and they ran
22  it on the 21st.  I don't know but that's certainly
23  appears to be accurate and I have no reason to doubt its
24  integrity.
25      Q.   The next inquiry is from Spring Leaf
```

1    Financial.  Do you see that?

2         A.   Yes.

3         Q.   Acronym but you understand that to be Spring

4    Leaf Financial; correct?

5         A.   No.

6         Q.   Well, it says S-P-R-I-N-G-L-F space F-I-N.  Do

7    you see that?

8         A.   Yes, but I don't know Spring Leaf Financial

9    from --

10        Q.   I understand.

11        A.   Spring Leaf Finest.

12        Q.   On inquiry it says April 22nd 2013?

13        A.   Which would have been prior to my inquiry.

14   Not subsequent.

15        Q.   Was it -- do you know when Dave Kleiman was

16   found deceased?

17        A.   I have no independent recollection.  It would

18   be on the death certificate that's in this Exhibit 1 if

19   you want me to look at it.

20        Q.   Well, if it were April 26th 2013 that he was

21   found deceased would that -- would you have any reason

22   to question that date?

23        A.   I want to look at the death certificate.  My

24   memory is no better than yours.

25        Q.   Okay.

1      A.   So if you want me to look at the death

2  certificate.  It says April 26th 2013 as the date he was

3  found.

4      Q.   Does it say he was found in an advanced state

5  of decomposition?

6      A.   I have to go back and look at it.

7      Q.   It's on the autopsy report.  You can strike

8  that.  It's not going to answer.

9      A.   It's not there.

10      Q.   This inquiry was four days before David

11  Kleiman's death when he was found dead; correct?

12      A.   Yes, sir.

13      Q.   Did you find any records related to that

14  subscriber?

15      A.   I don't know what the question means.

16      Q.   Did you get any records, financial records

17  from that creditor subscriber?

18      A.   I didn't know that person to be a creditor.

19      Q.   Or a subscriber, sir?

20      A.   No.

21      Q.   Did you take any steps to figure out who that

22  subscriber was?

23      A.   No.

24           MR. FREEDMAN:  You can answer.

25           THE WITNESS:  Sorry.  But I don't know if any

Joseph Karp
November 25, 2019                              44

```
 1          other lawyers in my firm did because that would be
 2          privileged because I don't do this stuff usually.
 3   BY MR. PASCHAL:
 4          Q.   Mr. Karp, when Dave died was he heavily
 5   indebted?
 6               MR. FREEDMAN:  Only answer the question if you
 7          can do so without reference to privileged
 8          communication.
 9               THE WITNESS:  In Palm Beach County the word
10          heavily indebted has so many meanings I couldn't
11          answer that question.
12   BY MR. PASCHAL:
13          Q.   Was he financially strapped?
14               MR. FREEDMAN:  Objection to form and same
15          instruction on privilege.
16               MR. PASCHAL:  Instructing him not to answer?
17               MR. FREEDMAN:  I said if he can answer
18          without -- if he can answer the question as phrased
19          without reference to privileged material he can
20          answer it.  With my objection preserved as to your
21          form.
22               THE WITNESS:  Anything I would know would have
23          been privileged as to what assets he may have had
24          or had access to.
25
```

1    BY MR. PASCHAL:

2         Q.   Well, did he have limited resources?

3         A.   Same answer.

4              MR. FREEDMAN:  Also objection to form.

5         Everyone has limited resources.

6              MR. PASCHAL:  I don't know if I said this but

7         was he deep in debt?

8              MR. FREEDMAN:  Objection to form, same

9         instruction on privilege.

10             THE WITNESS:  Again one can look at the

11        Transunion credit report in order to determine his

12        recorded debt status.

13   BY MR. PASCHAL:

14        Q.   I'm just asking from your personal knowledge

15   do you know if he was deep in debt?

16             MR. FREEDMAN:  Objection.  Don't answer the

17        question.  Witness already testified that his

18        knowledge of Dave's assets are privileged.

19             MR. PASCHAL:  He did not say that.

20             MR. FREEDMAN:  I thought he did but we can go

21        back.

22             MR. PASCHAL:  He did not.

23             MR. FREEDMAN:  Let the witness clarify.

24             THE WITNESS:  I have no personal knowledge of

25        the extent of the debt that David might have had

1          and I certainly have again in Palm Beach County no

2          understanding of what deep in debt means.  I have

3          clients deep in debt with $9,000 and I have clients

4          who are not deep in debt with $9 million in debt.

5                   MR. PASCHAL:  Mark this as Defendant's 3.

6                   (Defendant's Exhibit No. 3 was

7                   marked for identification.)

8                   THE WITNESS:  It's a good thing you said it

9          was a short depo.  Hate to see what a long depo is.

10    BY MR. PASCHAL:

11         Q.   Mr. Karp, do you recognize the letter I've

12    just handed you?

13         A.   I would have to look at it.  It appears to be

14    a letter that I sent.  It -- I take that back.  It

15    appears to be copy of a letter which I may or may not

16    have sent since there is no signed copy but it appears

17    to be a letter consistent with what I may have sent.

18         Q.   The date on this letter is June 28th 2015;

19    right?

20         A.   No.

21                   MR. FREEDMAN:  No.

22    BY MR. PASCHAL:

23         Q.   June 18th 2015, sorry.

24         A.   Yes.

25         Q.   This is your letterhead, correct?

Joseph Karp
November 25, 2019                                    47

```
 1        A.   Yes, it is.

 2        Q.   It's addressed to the Department of Treasury

 3   Mr. Michael Tosi?

 4        A.   Yes, sir.

 5        Q.   In the regarding line it says case number

 6   262215?

 7        A.   Yes, sir.

 8        Q.   In the second paragraph you say "I would like

 9   to respond to your letter dated May 20th as best as we

10   can provide you with compete information as we know it."

11   Do you recall the May 20th letter that you mentioned in

12   this letter?

13        A.   I recall that there was a letter of inquiry.

14   I don't recall the letter specifically.

15        Q.   In the second paragraph the very last sentence

16   you say his, and his being Ira, only knowledge was that

17   David but financially strapped and had limited

18   resources.  Do you recall saying that?

19        A.   Let me look at the rest of the paragraph.  No,

20   I don't recall.  I mean I trust that this -- if this

21   letter was in fact mailed that that letter said it but I

22   have no independent recollection whatsoever and this

23   does not refresh my recollection one IOTA.

24        Q.   Does this refresh your recollection as to what

25   financially strapped means?
```

1          A.    No.    That was for them to decide.    That was

2    artful lawyering.

3          Q.    Well, Mr. Karp, you do know that it is

4    important to be honest and open when you're talking to

5    the Department of Treasury on a case; correct?

6          A.    So --

7               MR. FREEDMAN:   Objection to form.   Go ahead.

8          You can answer.

9               THE WITNESS:   This is an iteration of what I

10         understood in order to write a letter to the IRS.

11   BY MR. PASCHAL:

12         Q.    Let me just back this up.    So you understand

13   you're under the penalty of perjury today; correct?

14         A.    I resent that question but yes, I do.

15         Q.    You know how important it is to give compete

16   and accurate testimony to a court; correct?

17               MR. FREEDMAN:   Object to form.

18               THE WITNESS:   I resent that question and yes,

19         I do.

20   BY MR. PASCHAL:

21         Q.    In an investigation with the government entity

22   you do realize how important it is to be truthful and

23   give complete accurate statements; correct?

24               MR. FREEDMAN:   Object to the form.

25               THE WITNESS:   I resent this question and yes I

1        do.  But they can determine what the word

2        financially strapped means.  That's broad based

3        just like was he deep in debt.  What does that

4        mean?  I don't know.

5    BY MR. PASCHAL:

6        Q.   Could you turn to the last paragraph of this

7    letter, on the first page.  If you go to the beginning

8    of the third sentence you say "there was no formal

9    probate proceeding whatsoever."  Do you see that?

10       A.   Yes.

11       Q.   Then you say "the reason for this was quite

12   simple.  After checking records David was deep in debt

13   and had outstanding mortgages and liens on his home

14   which exceeded his potential assets and made no sense."

15   What did you intend to convey to the IRS and the

16   Department of Treasury with that statement?

17       A.   That David had debts.  That any assets that he

18   had did not justify probate because there were certain

19   exempt assets such as the insurance policy, such as a

20   motor vehicle and such as his personal belongings and I

21   was aware of no other assets that would justify probate

22   in order to satisfy any creditor claims or anything

23   else.

24       Q.   Can you go to the third paragraph the second

25   sentence start with the first one.  You say "Ira is

Joseph Karp
November 25, 2019                                    50

```
 1   David's brother."  You see that?

 2        A.   Yes.

 3        Q.   "He had limited contact and personal knowledge

 4   as to David's financial affairs throughout David's

 5   life."  Do you see that?

 6        A.   Yes.

 7        Q.   Then if you go to the sentence right after

 8   that one it says "David spent most of his time in the

 9   V.A. hospital in Miami during which time Ira never saw

10   him at the hospital."

11        A.   Yes.

12        Q.   When you sent this letter was this an accurate

13   statement?

14        A.   It was accurate statement of my understanding.

15   I didn't say that David had never seen Ira.  As I

16   indicated to you earlier David had come up to Palm Beach

17   County and taken I don't know if it was furlough or just

18   leave of the hospital in Miami and had come up to Palm

19   Beach County on a number of occasions to my knowledge.

20            Whether he saw Ira there or not I don't

21   recall.  So my knowledge was that Ira did not go to the

22   hospital to see David.

23        Q.   So potentially David came up to Palm Beach to

24   see Ira?

25        A.   I don't know if it was to see Ira or did see
```

```
1    Ira but he did come up to Palm Beach County.
2         Q.   But you don't know if he saw Ira?
3         A.   Not to my personal knowledge at all.
4         Q.   When you mention furloughs how often would --
5         A.   I have no clue.
6         Q.   Can you turn to the next page and go to the
7    third paragraph?
8         A.   Yes, I can.
9         Q.   You say he, and I'm assuming you mean Ira
10   there, never heard of Dr. Wright from David nor --
11        A.   One second, third paragraph.  Second
12   paragraph.  Third paragraph second sentence.
13        Q.   Yes.  "He never heard of Dr. Wright from
14   David.  Nor cleaning up David's papers or affairs or
15   anything located which indicated Dr. Wright's Bitcoin or
16   any of those -- any of business dealings that he may
17   have had with Dr. Wright."  You see that sentence?
18        A.   Yes, I do.
19        Q.   Was that an accurate sentence or statement
20   when you sent this letter?
21        A.   It certainly was what I understood to be
22   accurate.
23        Q.   Do you understand that Ira Kleiman has filed a
24   complaint in this case; correct?
25        A.   Yes, I do as personal representative of the
```

1   estate.

2        Q.   Have you read that complaint?

3        A.   I may have seen the initial complaint one

4   time.  I believe there was an amended complaint but I'm

5   not sure and if I read it I wouldn't even know how many

6   counts or how many pages there were.  I have no

7   independent recollection of it at all.  It's not what I

8   do.

9        Q.   In the complaint do you know that there is

10  paragraphs where Ira alleges that he had a Thanksgiving

11  dinner with David Kleiman in 2009?

12       A.   I don't know.

13       Q.   During that dinner he alleges that David

14  Kleiman told Ira that he was working on making his own

15  currency, have you heard that?

16       A.   I believe I saw that somewhere in those

17  pleadings.

18       Q.   And that he drew on a napkin what

19  ultimately -- he ultimately drew on a napkin what would

20  ultimately would be the Bitcoin logo?

21            MR. FREEDMAN:  Object to the form.

22            THE WITNESS:  Ira drew it?

23  BY MR. PASCHAL:

24       Q.   David.

25       A.   I don't recall.

1      Q.   Is there any reason why none of that was

2    listed in this letter to the Department of Treasury?

3           MR. FREEDMAN:  Hold on.  I think you're

4           calling for counsel's strategy questions of what he

5           was responding to the Department of Treasury.  Can

6           you explain to me why you think this isn't covered

7           by --

8           MR. PASCHAL:  I just asked the question.  Are

9           you instructing the witness not to answer?

10          MR. FREEDMAN:  Instructing the witness not to

11          answer.

12   BY MR. PASCHAL:

13     Q.   Mr. Karp, in this letter is there any mention

14   of that dinner or what David Kleiman told Ira Kleiman?

15          MR. FREEDMAN:  Objection to form.

16          THE WITNESS:  No.

17          MR. FREEDMAN:  As to your question let me

18          modify my instruction.  If you can answer the

19          question without resorting to what was told to you

20          by Ira in the course of you providing legal

21          services to him or without resorting to your

22          strategy when dealing with the letter received from

23          government agency while representing Ira then you

24          can answer it.  If it calls for either of those two

25          things then my instruction stands.

Joseph Karp
November 25, 2019                                        54

```
1              THE WITNESS:  Which question is that?
2              MR. PASCHAL:  There is no question pending.
3              MR. FREEDMAN:  The question was why didn't you
4         say anything about the Thanksgiving dinner or
5         something like that.
6              MR. PASCHAL:  I don't think that's what I
7         said.
8              MR. FREEDMAN:  Are you withdrawing the
9         question?
10             MR. PASCHAL:  No.  This is going to be Defense
11        4.
12             (Defendant's Exhibit No. 4 was
13             marked for identification.)
14   BY MR. PASCHAL:
15        Q.  Just as a follow up on the last question.  The
16   Department of Treasury do you recall sending any follow
17   up letters, e-mails to the Department of Treasury?
18        A.  I have no independent recollection of that.
19        Q.  I'm showing you a letter dated October 26,
20   2010.  I got that right.
21        A.  I was duly impressed.  I was ready to correct
22   you on that one.
23        Q.  It's on the Karp Law Firm letterhead; right?
24        A.  Yes.
25        Q.  Is this to the Casa Rio Homeowners Sub
```

Joseph Karp
November 25, 2019                    55

1  Association, Inc.?

2      A.   Yes.

3      Q.   Was that Mr. David Kleiman was he a member of

4  this homeowner's association?

5      A.   His home was located in the development that

6  that homeowner's association was -- I don't know if he

7  was a member or whatever but yes, that's where his house

8  was.  They were the association.

9      Q.   At the time that you sent this letter was

10 David Kleiman in the V.A. Hospital in Miami?

11     A.   I have no -- the letter represents that and I

12 have no reason to doubt the integrity of my letter.

13     Q.   In the last paragraph you say "it appears

14 during this time unless there's a change in

15 circumstances he will be falling behind on his quarterly

16 dues."  Do you see that?

17     A.   Yes.

18     Q.   Then you say "we would appreciate your

19 understanding this and recognize that once David gets

20 out he is self employed he will get back to work and he

21 will be able to take care of things."  You see that?

22     A.   Yes.

23     Q.   Is it your understanding that during the time

24 that David was in the V.A. Hospital he was not able to

25 work?

Joseph Karp
November 25, 2019                              56

```
1          MR. FREEDMAN:  If you can answer the question
2      without resorting to privileged communications
3      answer.
4          THE WITNESS:  He was not able to go out in the
5      field and work was my understanding at that time.
6  BY MR. PASCHAL:
7      Q.  So you're saying that he was able to do work
8  while he was in the V.A. Hospital?
9          MR. FREEDMAN:  Same instruction.
10          THE WITNESS:  He was a computer geek.  You got
11      Wi-Fi and a computer whether he could work or not
12      is a separate issue.  I don't know what they do.
13  BY MR. PASCHAL:
14      Q.  You say here in your letter that "he will get
15  back to work and he will be able to take care of things"
16  and that's when he gets out of the hospital.
17      A.  I don't think I said once he gets out he will
18  get back to work.  Yes, but I don't know if there came a
19  time where he was able to do work from his bed or
20  otherwise.
21      Q.  As -- sorry.
22      A.  That's the way I understood it.  That's the
23  way I phrased it because I am not a computer person.  If
24  I don't get back to work nobody will show me what to do
25  with my computer.
```

1        Q.   As of the date of this letter where you say
2    "we would appreciate your understanding of this and
3    recognize that once David gets out he will get back to
4    work?"
5        A.   Yes.
6        Q.   Was that an accurate statement?
7        A.   That was my understanding.  That certainly was
8    an accurate statement of my understanding.
9        Q.   At the time you sent this letter did you
10   understand that David Kleiman was unable to pay his
11   homeowner association dues, his quarterly dues?
12       A.   That was my understanding.
13       Q.   Were you ever aware that David Kleiman's house
14   was in foreclosure?
15       A.   I was ever aware that the house was in
16   foreclosure yes, there was time I was aware of that.
17       Q.   Were you aware that the foreclosure began
18   before David passed away?
19       A.   I don't recall.
20       Q.   Were you aware that David had problems paying
21   his cell phone during the years he was in the V.A.
22   Hospital, David's cell phone?
23            MR. FREEDMAN:  Object to the form.
24            THE WITNESS:  I had no personal knowledge of
25       that.

```
 1    BY MR. PASCHAL:
 2        Q.   Do you have any personal knowledge of
 3    Mr. Kleiman expressing a deep desire to leave the V.A.
 4    Hospital and go to a better health institution?
 5             MR. FREEDMAN:  You can answer the question
 6         without resorting to privileged material --
 7         information.  You can answer the question.
 8             THE WITNESS:  I don't recall that.
 9    BY MR. PASCHAL:
10        Q.   Do you have any personal knowledge that
11    Mr. Kleiman could no longer afford to pay his internet
12    and cable which was eventually shut off at his home
13    while he was in hospital?
14             MR. FREEDMAN:  Objection to form.
15             THE WITNESS:  I have no personal knowledge of
16         that.
17    BY MR. PASCHAL:
18        Q.   Did you know that David Kleiman's close
19    friends who frequently visited him had to help him by
20    paying his cell phone?
21        A.   I have no personal knowledge of that.
22        Q.   I guess their testimony --
23             MR. FREEDMAN:  Objection.
24    BY MR. PASCHAL:
25        Q.   -- David Kleiman would never ask for help but
```

1   that he would -- they would have to give them -- give

2   David money to help him out?

3         MR. FREEDMAN:  Objection to form.

4   BY MR. PASCHAL:

5         Q.   Would that seem like in line with his

6   character?

7         MR. FREEDMAN:  Objection to form.

8         THE WITNESS:  A, I have no personal knowledge

9         of that and B, I'm not sure what would be in line

10        with his character or not with regard to an issue

11        like that.

12  BY MR. PASCHAL:

13        Q.   During Ira Kleiman's deposition he stated that

14  he collected financial documents for David and W&K and

15  turned those documents over to you?

16        MR. FREEDMAN:  What's the question?

17        MR. PASCHAL:  I haven't finished.

18  BY MR. PASCHAL:

19        Q.   And he said that he turned those documents

20  over to you.  Did you receive documents from Ira

21  Kleiman?

22        A.   In my personal capacity?  Not in my personal

23  capacity.

24        Q.   As a lawyer -- you don't have to tell me what

25  he gave you but did you receive documents from him?

Joseph Karp
November 25, 2019                           60

1           A.   Is that privileged?

2                MR. FREEDMAN:  The question whether you

3       received any document you can answer whether you

4       received any document.

5                THE WITNESS:  Don't want to open any doors.

6                MR. FREEDMAN:  If you feel it's privileged

7       don't answer the question.

8                MR. PASCHAL:  Ira already testified to this.

9       I think he agrees it was privileged.

10               THE WITNESS:  The answer is --

11               MR. FREEDMAN:  Wait, so let's get agreement

12      there's no waiver of privilege if he answers that

13      question.

14               MR. PASCHAL:  It's a simple question.

15               MR. FREEDMAN:  So you can answer the question.

16               THE WITNESS:  I have no independent

17      recollection of what Ira turned over to me.  I have

18       no reason to dispute the integrity of his response

19       but I also don't know what those documents were and

20       how full or complete they were in terms of

21       financial records.

22  BY MR. PASCHAL:

23          Q.   In preparing for this deposition today could

24  you please let know -- did you do anything to prepare

25  for this deposition today?

```
 1        A.   Yes.

 2        Q.   Can you tell me what you did to prepare for

 3   this deposition?

 4        A.   Yes, I called Mr. Friedman and said if you

 5   would like to speak to me before the deposition let me

 6   know and when he came today I spoke to him for maybe ten

 7   or 15 minutes.  I did nothing -- the only other thing I

 8   did was I Googled David Kleiman to look up his date of

 9   death.  I did nothing else to prepare for today's

10   deposition.

11        Q.   Do you have a case filed for Mr. Kleiman here?

12        A.   I would assume so.  I have not gone to the

13   file drawer to look at it but I have no reason to think

14   that we don't.

15             MR. PASCHAL:  Can we take a five minute break

16        off the record?

17             THE VIDEOGRAPHER:  Off the record.

18             (Thereupon, a brief recess was taken.)

19             THE VIDEOGRAPHER:  Thank you.  We're getting

20        back on record.

21             MR. PASCHAL:  Are we on?

22             THE VIDEOGRAPHER:  Back on.

23   BY MR. PASCHAL:

24        Q.   Mr. Karp, do you recall communicating with

25   Mr. Craig Wright?
```

1        A.   Yes.

2        Q.   How many times did you communicate to

3   Mr. Craig Wright?

4        A.   I'm uncertain but I would think it was either

5   two or three.  Maybe more but I think it was more -- I

6   believe it was more than one.

7        Q.   Then how did you communicate with him, was it

8   by phone or by e-mail?

9        A.   I believe I only communicated with him by

10  phone because his counsel was available and was there.

11  Then his counsel was terminated or terminated Dr. Wright

12  but I don't recall after there was no representation if

13  I attempted to contact Craig Wright at that point

14  because I could since he had no counsel.  I don't recall

15  that at all.  He could have or not.

16       Q.   What was the substance of the conversation

17  that you had?

18       A.   Well, it was a lot about Craig Wright talking

19  about himself and talking in spheres well beyond my pay

20  grade as it related to Bitcoin's currency and it was

21  also about obtaining David's interest in Bitcoins in

22  which he had an interest in obtaining.

23       Q.   Do you know anything about David's or David's

24  Bitcoin address or wallets are?

25            MR. FREEDMAN:  If you can answer the question

1      without resorting to privileged information then do

2      so.

3           THE WITNESS:  No.

BY MR. PASCHAL:

5      Q.   Without telling me what you did when you were

6  the attorney for the estate did you ever have access to

7  any of David Kleiman's computers?

8      A.   Me, no.

9           MR. PASCHAL:  You said Mr. -- let me mark

10     this.

11          (Defendant's Exhibit No. 5 was

12          marked for identification.)

13  BY MR. PASCHAL:

14     Q.   Do you recognize this letter?

15     A.   Let me look at it.  I don't recognize it but I

16  don't doubt the authenticity of it.

17     Q.   Would you say you were trying to get in

18  contact with Craig Wright in this letter; correct?

19     A.    No, Ira was trying to get in touch with Craig

20  Wright and I would not attempt to since he was

21  represented by counsel.

22     Q.   That's why you're asking Mr. Sommers if he

23  represents Craig Wright?

24     A.   Correct.

25     Q.   Did you ever speak with Mr. Sommers after this

Joseph Karp
November 25, 2019                                    64

1   letter?

2        A.   I don't recall.

3        Q.   Do you recall speaking with Mr. Sommers other

4   than that one conversation that you mentioned earlier?

5        A.   There may have been two conversations with

6   Mr. Wright and Mr. Sommers.  I don't recall.

7        Q.   Were there any conversations with Mr. Sommers

8   without Craig Wright, any phone conversations?

9        A.   It is possible but I don't recall.

10       Q.   Do you ever recall speaking to Craig Wright's

11  wife Ramona Watts?

12       A.   I have no recollection of that at all.

13       Q.   Have you spoken to anybody else about this

14  case other than counsel?

15       A.   Sure.

16       Q.   Who did you speak with?

17       A.   I don't recall.  I showed people the article

18  that had appeared in Gizmo or whatever it was and said I

19  know this guy David since he is a kid.  This is really a

20  cool case.  This is an interesting case.  I never

21  discussed any of the -- I take that back.  I never

22  discussed anything about the litigation because I was

23  not involved in the litigation.

24            I was aware of the fact pattern and had

25  provided the Gizmo article to my sons and a friend of

Joseph Karp
November 25, 2019                                           65

1   mine.  I had mentioned it in passing saying go Google

2   this and figure this one out and I discussed it with

3   other lawyers when I was attempting to facilitate Ira

4   obtaining lawyers to figure out what he was entitled to

5   on behalf of the estate and how to proceed with that.

6        Q.   Have you spoken to Patrick Page about this

7   case?

8        A.   About the case itself the litigation I would

9   doubt that.  I might have discussed with Patrick Page a

10  desire to see if we can get all of David's hard drives

11  and whether he was holding any of them so that Ira could

12  find out what was going on.

13            I don't believe I have would have revealed to

14  him what we were seeking to find because I didn't want

15  to give him the keys to the car and say go digging in

16  there for Bitcoins.  So I would doubt that I discussed

17  that at all.

18       Q.   What made you believe that he may have had

19  Bitcoin?

20       A.   No, David?

21       Q.   That Patrick Page.

22       A.   No, if he had -- if he had retained any of

23  David's hard drives.  If I had said you know we're

24  looking for David's Bitcoin and they may be hidden in

25  those hard drives can we have them.  I didn't think he

Joseph Karp
November 25, 2019                                  66

1    would say necessarily oh, sure.  I thought there was a

2    chance he might say don't have them and then go digging

3    through to try to decipher David's way of hiding the

4    information and securing it so I never would have

5    mentioned it.

6         Q.   But at some point you did believe or there was

7    some concern that the Bitcoin may have been on those

8    hard drives?

9         A.   Hey, you're the guy who asked me did I go look

10   at SunBiz to see if somebody had an interest in a

11   corporation.  Well, I assume that there was a chance

12   that a computer geek had something hidden in their

13   computers of value.  So that was something I suggested

14   if Ira could obtain them that would be of value to check

15   it out.

16             So yes, I thought it had the possibility of

17   being there and I knew that David had been to his house

18   prior to his death.  So I assumed it was either there --

19   if it was in a computer it might have been in a computer

20   that was there or that was with Patrick.  I just made

21   that assumption that if he hid it he wouldn't have left

22   it in the V.A. Hospital in Miami.

23        Q.   Are you aware that Ira Kleiman sued Computer

24   Forensics, LLC and Patrick Page and Carter Conrad?

25             MR. FREEDMAN:  Object to the form and if you

```
 1        can answer without resorting to privileged
 2        information.
 3             THE WITNESS:  Yes, I am aware that there was
 4        such a suit.
 5   BY MR. PASCHAL:
 6        Q.   Are you aware that in that lawsuit there was a
 7   count where Ira Kleiman alleged or Ira Kleiman on behalf
 8   of the estate of David Kleiman alleged that an
 9   injunction for the return of David Kleiman's Bitcoin?
10             MR. FREEDMAN:  Objection to form, same
11        instruction on privilege.
12             THE WITNESS:  I have no idea of the grounds or
13        what was alleged in that lawsuit whatsoever.
14   BY MR. PASCHAL:
15        Q.   Have you spoken to Carter Conrad?
16        A.   If I have I have no independent recollection
17   of how long ago and what that would have been about.
18        Q.   So Mr. Karp, let's say there was an e-mail
19   where Patrick Page had stated he had found David
20   Kleiman's Bitcoin, the Bitcoin wallets, on an electronic
21   device is that why you were concerned when you spoke to
22   Mr. Patrick Page?
23             MR. FREEDMAN:  Objection to form.
24             THE WITNESS:  That's a hypothetical that I
25        don't even understand.
```

Joseph Karp
November 25, 2019                               68

```
 1    BY MR. PASCHAL:
 2        Q.   Well, were you concerned that Patrick Page
 3    would use them?
 4             MR. FREEDMAN:  Objection to form.
 5             THE WITNESS:  I was unaware that there were
 6        accessible wallets.  I merely thought that if
 7        those -- I didn't even know the term wallets thank
 8        you to adding to my vocabulary today because I
 9        didn't know coins go in wallets.  The answer is I
10        was totally unaware where David may have kept the
11        information that would have been the way to get to
12        the Bitcoins.
13             I merely presumed that since Mr. Page had
14        access to David's computers to some degree and was
15        far more knowledge in computer technology than I
16        ever intend to be that if there were such it
17        belonged to Ira and not to Mr. Page but I have no
18        knowledge that anything existed at all.  I just
19        assumed David didn't trust it to his memory
20        although he could have.
21             I'm the guy who made my law firm use the guest
22        password happy123 all lower case so we didn't have
23        to train me every time to put in a capital.
24             MR. PASCHAL:  Very helpful testimony.
25
```

Joseph Karp
November 25, 2019                    69

```
 1    BY MR. PASCHAL:
 2        Q.   Let me ask this one question did David Kleiman
 3    ever ask you any legal advice with regard to Bitcoin
 4    without telling me the substance?
 5             MR. FREEDMAN:  Wait, hold on.  Don't answer
 6        the question.
 7             MR. PASCHAL:  On what basis?
 8             MR. FREEDMAN:  You're asking for the substance
 9        of communications, not the fact of legal advice but
10        rather the specific subject matter that the legal
11        advice was encompassing.  I don't think that's
12        appropriate.
13             MR. PASCHAL:  I disagree because first of all
14        you have to say what was the topic and I am
15        asking --
16             MR. FREEDMAN:  I don't think you have to say
17        what was the topic.  You have to say seeking legal
18        advice.  I don't think you have -- if you want to
19        take a break and show me case law I'm happy to look
20        at it but that's not my understanding.  Show me I'm
21        wrong I'm happy to reverse on it.
22             MR. PASCHAL:  Are you instructing him not to
23        answer?
24             MR. FREEDMAN:  For now, yes.  We can take a
25        break and look at it at the break together but for
```

Joseph Karp
November 25, 2019                          70

```
 1        now, yes.
 2   BY MR. PASCHAL:
 3        Q.   Did David Kleiman ever tell you that he had a
 4   fortune of Bitcoin anywhere?
 5             MR. FREEDMAN:  Wait.  If you answer as an
 6        individual not as a lawyer.
 7             THE WITNESS:  I never had a personal
 8        conversation with David where he expressed that he
 9        had had a fortune of anything of value.
10             MR. PASCHAL:  Let's take a break.
11             THE VIDEOGRAPHER:  Off record.
12             (Thereupon, a brief recess was taken.)
13             THE VIDEOGRAPHER:  Thank you, counsel.  Back
14        on the record.
15             MR. PASCHAL:  That is the end of our
16        questions.
17             MR. FREEDMAN:  Good afternoon.
18             MR. PASCHAL:  I may have follow-up questions
19        after Mr. Freedman.
20                  CROSS (JOSEPH KARP, ESQUIRE)
21   BY MR. FREEDMAN:
22        Q.   Good afternoon Mr. Karp, my name is Val
23   Freedman, I represent the plaintiffs in this action.  I
24   have a couple questions for you.  You mentioned earlier
25   that you had telephone calls with Craig Wright; is that
```

Joseph Karp
November 25, 2019                                71

1    correct?

2         A.   Yes.

3         Q.   On those telephone calls did Craig Wright ever

4    mention that he had initiated a lawsuit out in

5    Australia?

6         A.   He never volunteered any such information.

7         Q.   Would you have recalled if he made such a

8    statement?

9         A.   You bet.

10        Q.   Did Craig Wright ever address the ability to

11   access Bitcoin he claimed were owned by David Kleiman?

12        A.   He talked about the ability to access David's

13   Bitcoins by saying and I might be off on the number of

14   years but not dramatically.  I believe he said because I

15   said could we hunt and do this stuff and he said "if you

16   start it now with the speed of our current technology it

17   will take you nine years and if you start it in eight

18   and a half years the way the speed of our current

19   technology is progressing you'll get it in six months.

20   So it could be accessed in nine years regardless."

21             Now, he was talking about Ira, us.  He never

22   indicated how long it would take him because we didn't

23   know what information he had that might have speeded up

24   the ability to access that but I think the implication

25   was you have a nine year wait.

Joseph Karp
November 25, 2019                                     72

1      Q.    During those communications did Craig Wright

2    ever led on that he had taken unlawful control over

3    David Kleiman's Bitcoins?

4      A.    He had never indicated that.

5      Q.    Are you aware that at some point in time Craig

6    Wright gave Ira Kleiman and his father shares of a

7    company?

8      A.    Yes.

9      Q.    Was that company Coin Exchange?

10     A.    I remember Coin Ex.  I don't know if it had an

11   Exchange at the end of it or X, E-X, I don't remember.

12     Q.    How would you characterize that transfer and

13   the negotiations that led up to it?

14     A.    I don't know that there were any negotiations

15   that led up to it.  My understanding was that was almost

16   a good faith gift.  Lou Kleiman was entitled to nothing

17   from David's estate since Ira survived him.  There had

18   never been any understanding that that was anything

19   other than a good faith gesture on his part as a gift

20   and I never had any knowledge of whether that piece --

21   those pieces of paper had any value whatsoever.

22     Q.    Was there any -- just to clarify for the

23   record was there any quid pro quo or exchange of value

24   or anything like that in connection with these shares?

25     A.    No quid pro quo.  Could not resist it.

Joseph Karp
November 25, 2019                                73

```
 1   Opportunity of a lifetime.
 2        Q.   Did Craig Wright ever ask for a release of any
 3   kind in exchange for those shares?
 4        A.   Not from me because I would have told him
 5   absolutely not.
 6        Q.   During your conversations with Craig Wright
 7   did he ever address his business history with David
 8   Kleiman?
 9        A.   He may have.  It was clear that they had a
10   history and a relationship that was a business
11   relationship.  To what extent they were intertwined I
12   don't believe I ever was able to glean because I was
13   always looking for the magic connection.
14        Q.   At a minimum was it clear to you that they
15   were cooperating together to create value?
16        A.   Absolutely and it was my understanding that
17   Craig Wright felt a sense of indebtedness to David for
18   what David had contributed to that.
19        Q.   Not as a lawyer but you knew David Kleiman for
20   a long time; correct?
21        A.   Since he came home.
22        Q.   If Dave Kleiman had a lot of money in Bitcoin
23   but he believed that it would be worth much more than it
24   currently was in a few years would it surprise you to
25   learn that he toughed out -- toughed it out financially
```

Joseph Karp
November 25, 2019                                    74

1   in order to assume the risk of those Bitcoin being worth

2   much more in the future?

3            MR. PASCHAL:  Object to form.

4            THE WITNESS:  It would have surprised me if he

5        had cashed in early.  That was not consistent with

6        David.  He was a risk taker and a go for the big

7        one.

8   BY MR. FREEDMAN:

9        Q.   So it would not surprise you to learn that

10  Dave Kleiman may have had hundreds of millions of

11  dollars worth of Bitcoin and yet was in debt because he

12  wanted to wait for Bitcoin to rise in value?

13       A.   It would not have surprised me at all.  I

14  would have tried to shake him but it wouldn't have

15  surprised me.

16       Q.   Do you recall testifying earlier that based on

17  your personal knowledge Dave Kleiman would have told

18  people he had hundreds of millions of dollars in cash?

19       A.   I don't know --

20           MR. PASCHAL:  Object to the form.

21           THE WITNESS:  Cash?  Cash, if he had cash he

22       might have -- he would not have boasted how much he

23       had.  His generosity would have effused from him

24       and everybody would have figured out something.

25

Joseph Karp
November 25, 2019                                          75

 1    BY MR. FREEDMAN:
 2        Q.   Would that stand true if Dave Kleiman promised
 3    not to say anything about that asset?
 4        A.   For sure.
 5        Q.   So just to clarify.  If he had promised not to
 6    say anything about the asset would he have said anything
 7    about those -- that asset?
 8             MR. PASCHAL:  Objection to form.
 9             THE WITNESS:  No way.  He would have -- he
10        would have and apparently may have taken it to his
11        grave.
12    BY MR. FREEDMAN:
13        Q.   Do you recall testifying that Dave Kleiman
14    kept certain parts of his life very private?
15        A.   Absolutely.
16        Q.   Are you aware that the pseudonym for the
17    creator of Bitcoin is Satoshi Nakamoto?
18        A.   Yes.
19        Q.   Are you aware that Craig Wright has expressed
20    concern of criminal or other adverse consequences of
21    being outed as Satoshi Nakamoto?
22             MR. PASCHAL:  Object to form.
23             THE WITNESS:  No.  I thought he outed himself.
24    BY MR. FREEDMAN:
25        Q.   Would it surprise you to know that Dave

1    Kleiman kept secret the fact that he had a partnership

2    which created Bitcoin and as a consequence owned not

3    cash but a large amount of Bitcoin that he hoped would

4    be worth more?

5          MR. PASCHAL:  Objection to form and I think

6          you just opened the door to waiver of some

7          attorney-client privilege.

8    BY MR. FREEDMAN:

9          Q.   I think it's quite clear from my questions

10   that everything is in his personal capacity but if it's

11   not let me rephrase it.  Have you given me any answers

12   based on privilege?

13         A.   No.

14         Q.   This question is not calling for privilege.

15   Let me rephrase it.  Based on your personal knowledge

16   would you be surprised to know that Dave Kleiman kept

17   secret the fact that he had a partnership which created

18   Bitcoin and as a consequence owned not cash but a large

19   amount -- you know what, I strike the question.

20         MR. PASCHAL:  Objection to form to the

21         question and the last question pending and I do

22         believe counsel did waive attorney-client privilege

23         because even if Mr. Karp was not relying on

24         attorney-client privilege I am allowed to test the

25         voracity of his statements today and the basis of

1        his knowledge based on and what he has on

2        privilege.  It can't be a sword and shield.

3             MR. FREEDMAN:  Not using it as a sword and

4        shield.  Only based on his personal knowledge.

5        Anyway I struck the question.

6    BY MR. FREEDMAN:

7        Q.   Did your belief that Dave Kleiman's hard

8    drives may have had Bitcoin on them come from statements

9    made to you by Craig Wright?

10       A.   Yes.

11       Q.   Did Craig Wright ever intimate to you that he

12   could access Dave Kleiman's Bitcoin?

13             MR. PASCHAL:  Objection to form.

14             THE WITNESS:  I don't know if he intimated it,

15        intended to intimate it but that is one of the

16        things I gleaned from the things he said that I

17        tended to believe that he thought he could do it.

18        I believe that he thought he might have the ability

19        to access it but it was never articulated.  It was

20        just a sense of belief.

21             MR. FREEDMAN:  I have no further questions.

22             MR. PASCHAL:  I have some follow up.

23              REDIRECT (JOSEPH KARP, ESQUIRE)

24   BY MR. PASCHAL:

25       Q.   So first you testified that David Kleiman he

Joseph Karp
November 25, 2019                                    78

1   was a big risk taker that he would wait for Bitcoin to

2   rise to a certain value; right?

3        A.   I testified that he was a big risk taker and

4   it would not surprise me that he would do that.

5        Q.   Do you realize that months even years before

6   his death Bitcoin was an extremely volatile pricing?

7        A.   I have no knowledge of Bitcoins until this all

8   hit the fan.

9        Q.   But just a yes or no for my question do you

10  realize years before his death it was extremely

11  volatile, Bitcoin pricing?

12       A.   I do not realize that.

13       Q.   You do not know is your answer?

14       A.   Yes, I have no idea.  I don't know the history

15  of Bitcoins.

16       Q.   Did you know that months before David Kleiman

17  died his Bitcoin would have been worth close to over

18  $100 million?

19       A.   No, but I'm glad to hear Dr. Wright's counsel

20  is conceding he has Bitcoin.

21       Q.   And the alleged Bitcoin would have been worth

22  tens of millions of dollars just before his death?

23       A.   I am not aware of it nor the alleged liquidity

24  of Bitcoins because values of things you can't sell is

25  always a questionable value.

1        Q.   Well, this time that he allegedly had this

2     hundreds of millions of dollars of Bitcoin do you have

3     any reason to understand why he wouldn't use it to pay

4     his mortgage?

5        A.   I have no idea when he acquired it, what its

6     liquidity was, nor its value and so I have no idea of

7     that.  Why David would hold on to something of that

8     significant value and not pay his mortgage he may have

9     wanted to be private about what he had until he was

10    ready to cash it in.

11       Q.   Do you know why he would have that amount of

12    Bitcoin and not pay his cell phone?

13       A.   I don't know how Bitcoin works so I don't know

14    if you can call up your local banker and grab out one

15    Bitcoin and cash it in.  I certainly -- I don't today

16    and I didn't back -- have no understanding back then.

17       Q.   And on the day or what may have been likely

18    the day he died April 22nd 2013 do you have any

19    explanation for why his credit report has a hard inquiry

20    from the lender we spoke of earlier Spring Leaf?

21       A.   I told you earlier I didn't know they were a

22    lender.

23       Q.   And on that day when he applied for that loan

24    do you know from April 22nd or going back do you know --

25    strike that.  Do you know whether or not David Kleiman

Joseph Karp
November 25, 2019                                    80

1   checked himself out of the hospital against doctor's

2   orders?

3        A.   I have no independent knowledge of that.

4        Q.   Did you think doctors discharged him from the

5   hospital?

6        A.   I had formulated no opinion with regard to

7   that.  I didn't know if he was taking one of his

8   furloughs and came home or what.  I was unaware of any

9   of that.

10        Q.   Do you have any knowledge of David telling Ira

11   hey, I have this fortune in Bitcoin?

12        A.   Anything I know that David would have

13   communicated to Ira I would know only through privileged

14   communication.

15        Q.   Are you asserting that it is a privilege what

16   David the decedent told Ira Kleiman about anything of

17   Bitcoin?

18        A.   Anything that I would know about that would

19   have been through a privileged communication.

20        Q.   And what privilege is that?

21        A.   A privilege either of Ira's or David's.

22        Q.   Are you asserting attorney-client privilege?

23        A.   Yes, not inter-spousal.  I am happily married

24   to somebody else.

25        Q.   And you believe that David who was not a

1   lawyer, communications with Ira who is not a lawyer

2   would be attorney-client privileged communications?

3           MR. FREEDMAN:  Bryan, maybe I can help you.

4       He is saying his knowledge of the communications.

5           THE WITNESS:  My knowledge.  Anything

6       communicated to me came through privilege.

7           MR. FREEDMAN:  Not saying the actual

8       communication is privileged.

9   BY MR. PASCHAL:

10      Q.   Also, counsel asked you about a court

11  proceeding in Australia or another court proceeding

12  against W&K?

13      A.   I believe the question is did he -- I don't

14  recall the question.

15      Q.   Counsel said "on the telephone calls did Craig

16  Wright ever mention he had initiated a lawsuit in

17  Australia" and you answered "he never volunteered any

18  such information."

19      A.   He had not asked me about W&K and things like

20  that so that's why that question is not familiar.

21      Q.   In June 18 of 2015 you did know about W&K;

22  right?

23      A.   What date was that?

24      Q.   In 2015 you did know of W&K; right?

25      A.   June what?

1        Q.    18, 2015 you did know of W&K?

2              MR. FREEDMAN:  Object to form.

3              THE WITNESS:  I don't recall when I knew of

4        W&K.  I'm not disputing it.  When I wrote is that

5        in the letter to the --

6    BY MR. PASCHAL:

7        Q.    It's the letter you sent to the IRS.

8        A.    To the IRS.  Well, I knew that that was an

9    entity that existed that the IRS was interested in as a

10   result of their communication to Ira.  How much more I

11   knew about W&K I am uncertain, if anything.

12       Q.    In the fifth paragraph the first sentence you

13   say with regard to anything with W&K LLC's business

14   activities again --

15       A.    Is this on page two?

16       Q.    Page two.

17       A.    One, two, three, four, five.

18       Q.    "With regard to anything in W&K LLC's business

19   activities again any information that Ira has would not

20   be as a result of any source other than Dr. Craig

21   Wright?"

22       A.    Except for the word "Craig" that's what I

23   wrote.

24       Q.    Did you ever check the address that was listed

25   for W&K and for Defense Research, LLC?

Joseph Karp
November 25, 2019                                83

```
 1              MR. FREEDMAN:  Objection to form.
 2              THE WITNESS:  Anything that I might have done
 3         with regard to researching W&K would have been in
 4         my capacity as an attorney and I would consider
 5         that work product.
 6              MR. PASCHAL:  Are you instructing him not to
 7         answer?
 8              MR. FREEDMAN:  He is a lawyer for the estate.
 9              MR. PASCHAL:  I'm asking you are you
10         instructing him?
11              MR. FREEDMAN:  I don't think he needs two
12         instructions.  He is a lawyer.  He asserted the
13         privilege.
14              THE WITNESS:  I'm asserting my work product
15         privilege for myself.  This is not --
16    BY MR. PASCHAL:
17         Q.   When you were looking up those records for W&K
18    were you doing that in anticipation of litigation?
19         A.   Whatever I was doing -- well, it's still work
20    product and what was going through my mind is any number
21    of things so -- I was doing it for informational
22    purposes.  Didn't know whether there would be
23    litigation.  I didn't know enough about W&K to even
24    think about litigation.  It was what the hell is this
25    entity and what does that mean.  That was the extent.  I
```

1    could not put together the pieces to make any

2    determination as to whether there was any viable or even

3    frivolous litigation related to that entity.

4            MR. FREEDMAN:  I think he's also handling on

5        behalf of the estate.  Not sure how --

6    BY MR. PASCHAL:

7        Q.  At any time did you or Ira or David or Ira and

8    you check the mailbox for W&K?

9            MR. FREEDMAN:  Can you --

10           THE WITNESS:  I have no independent

11       recollection.

12   BY MR. PASCHAL:

13       Q.  Are you aware that after David died or shortly

14   after he died Ira Kleiman threw away David's work papers

15   and re-formated his hard drives?

16           MR. FREEDMAN:  Objection to form.

17           THE WITNESS:  I have no independent

18       recollection of anything related to that.

19           MR. PASCHAL:  That's it.  We're done.

20           MR. FREEDMAN:  Mr. Karp, you have the option

21       to read your deposition or you can waive that right

22       and trust our court reporter has got your testimony

23       correctly.  Would you like to read it or waive your

24       right?

25           THE WITNESS:  If they're going to pay me a

1    witness fee and witness fee for reading then I

2    would read but if they're not going to pay a

3    witness fee for reading then I ain't reading.

4         THE VIDEOGRAPHER:  This concludes the

5    deposition.  Off the record.

6         MR. PASCHAL:  Thank you for you time,

7    Mr. Karp.

8         THE WITNESS:  You're welcome.

9         THE COURT REPORTER:  Are you ordering?

10        MR. PASCHAL:  Yes.  Expedited as soon as

11   possible.

12        MR. FREEDMAN:  I'll take a copy.

13            (Witness excused.)

14        (Deposition was concluded.)

15

16

17

18

19

20

21

22

23

24

25

1               CERTIFICATE OF OATH

2    THE STATE OF FLORIDA

3           COUNTY OF PALM BEACH

4

5       I, Rick Levy, REGISTERED PROFESSIONAL REPORTER,

6    Notary Public, State of Florida, certify that

7    JOSEPH KARP, ESQUIRE personally appeared before me

8    on the 25th day of November, 2019 and was duly

9    sworn.

10

11          Signed this 26th day of November, 2019.

12

13

14

15

16    _____

17          Rick Levy, RPR, FPR
          Notary Public - State of Florida
          My Commission Expires:  12/7/19
18          My Commission No.:  FF 939483

19

20

21

22

23

24

25

```
1                   CERTIFICATE OF REPORTER

2                    THE STATE OF FLORIDA

3                    COUNTY OF PALM BEACH

4

5        I, Rick Levy, Registered Professional Reporter
    and Notary Public in and for the State of Florida at
6    large, do hereby certify that I was authorized to
    and did report said deposition in stenotype of
7    JOSEPH KARP, ESQUIRE ; and that the foregoing pages,
    numbered from 1 to 85, inclusive, are a true and
8    correct transcription of my shorthand notes of said
    deposition.
9
         I further certify that said deposition was
10   taken at the time and place hereinabove set forth
    and that the taking of said deposition was commenced
11   and completed as hereinabove set out.

12       I further certify that I am not attorney or
    counsel of any of the parties, nor am I a relative
13   or employee of any attorney or counsel of party
    connected with the action, nor am I financially
14   interested in the action.

15       The foregoing certification of this transcript
    does not apply to any reproduction of the same by
16   any means unless under the direct control and/or
    direction of the certifying reporter.
17
         IN WITNESS WHEREOF, I have hereunto set my hand
18   this 26th day of November, 2019.

19

20

21   _____

22                    Rick Levy, RPR, FPR
                     Notary Public - State of Florida
23                    My Commission Expires:  12/7/19
                     My Commission No.:  FF 939483
24

25
```

## $

$100   78:18
$9   46:4
$9,000   31:2
  46:3
$9,098.48
  31:2

## 0

0022   29:12
0025   27:14
0028   27:15
028   27:21

## 1

1   26:4 27:6,
  10,11 42:18
100   4:10
  27:23
10:32   25:22
10th   26:21
  30:15 31:4
11   24:3
13   9:20
15   61:7
18   81:21 82:1
18th   46:23
1974   5:18
1975   5:19
1977   6:7 8:12
1978   6:8
1988   6:15,16
1993   6:18
1997   7:11
1998   7:7
19th   41:21

## 2

2   40:12,13

## 

2003   27:3
2009   52:11
2010   54:20
2011   17:11
2013   26:21
  30:15 31:4
  40:19,24
  41:16 42:12,
  20 43:2 79:18
2015   46:18,23
  81:21,24 82:1
2019   4:9
20th   47:9,11
21   40:18,24
  41:16
21st   41:22
22nd   42:12
  79:18,24
25   26:11
25th   4:8
26   26:12
  54:19
262215   47:6
26th   42:20
  43:2
2875   27:23
28th   46:18

## 3

3   46:5,6
30th   27:3
33140   27:24

## 4

4   54:11,12

## 5

5   63:11

## 6

60   30:24 31:7

## 7

65   7:14
66   7:14

## 7

732.402   30:20

## 9

90   15:24
  16:15
90s   15:17
9:18-cv-80176
  4:15

## A

ABA   7:10
ability
  71:10,12,24
  77:18
able   19:20
  55:21,24
  56:4,7,15,19
  73:12
about   6:8,10,
  15 15:5,24
  21:10 23:6
  32:20 33:14
  37:4,15,22
  38:2,8 54:4
  62:18,19,21,
  23 64:13,22
  65:6,8 67:17
  71:12,21
  75:3,6,7 79:9
  80:16,18
  81:10,19,21
  82:11 83:23,
  24
above   4:6
absolutely
  11:24 73:5,16
  75:15
access   44:24
  63:6 68:14
  71:11,12,24

## 

77:12,19
accessed
  71:20
accessible
  68:6
accurate
  41:23 48:16,
  23 50:12,14
  51:19,22
  57:6,8
accuse   23:2
accused   23:9
acquired   79:5
Acronym   42:3
acting   39:25
action   33:18,
  23 70:23
activities
  82:14,19
actual   81:7
actually   11:8
  16:13 17:17
  33:13 40:1
adding   68:8
address
  27:22,24,25
  62:24 71:10
  73:7 82:24
addressed
  47:2
addresses
  28:1
administrating
  39:25
administration
  29:19 30:6
  32:16 33:1
admitted
  17:12,14
adult   10:2,3
advanced   43:4
adverse   75:20
advice   37:21,
  24 69:3,9,11,
  18
affair   23:3,
  10,17

affairs   50:4
  51:14
affinity
  13:16
affirmed   5:7
afford   58:11
after   6:21
  9:16 34:12
  49:12 50:7
  62:12 63:25
  70:19 84:13,
  14
afternoon
  5:10 70:17,22
again   9:14
  13:3,10 20:24
  45:10 46:1
  82:14,19
against   80:1
  81:12
agency   53:23
ago   18:18
  67:17
agreement
  60:11
agrees   60:9
ahead   48:7
Ahler's   28:3
ain't   85:3
all   5:23 12:1
  30:25 35:16
  51:3 52:7
  62:15 64:12
  65:17 68:18,
  22 69:13
  74:13 78:7
alleged   67:7,
  8,13 78:21,23
allegedly
  79:1
alleges
  52:10,13
allowed   32:7
  76:24
allows   31:19
almost   11:24
  72:15

already   17:23
  26:22 34:23
  45:17 60:8
also   7:8 28:7
  29:7 45:4
  60:19 62:21
  81:10 84:4
although   8:10
  16:22 68:20
always   7:13,
  14 8:10 10:25
  73:13 78:25
am   5:16 7:6
  22:11 24:21
  40:16 56:23
  67:3 69:14
  76:24 78:23
  80:23 82:11
amend   40:2
amended   52:4
amount   30:23
  76:3,19 79:11
and   4:4,5,13,
  17,19 5:7,24
  6:1,2,9,14,20
  7:7,16 8:8,
  11,12,14,22,
  23 9:1,2,15,
  16,17,18,21
  10:10,24
  11:23,24
  12:9,11,12,
  23,24 13:19,
  22,25 14:5,8,
  21 15:10,17,
  19 16:8,9,11,
  14,23,24
  17:5,12,15,
  17,19 18:10,
  11,12,13,18,
  25 19:1,2,3,
  19 20:2,13,23
  22:8 23:19,23
  24:18 25:13,
  15 26:9,10,18
  27:25 28:7,8,
  23 30:12,21,
  23,24 31:6,22
  32:7,12 33:3,

  19 34:11,18,
  24 35:7
  36:10,17
  38:16 41:2,
  21,23 43:6
  44:14 46:1,3
  47:16,17,22
  48:4,16,18,
  22,25 49:13,
  14,15,20
  50:3,17,18
  51:6,9 52:5,
  18 55:11,19,
  20 56:5,11,
  15,16 57:2
  58:4,12 59:9,
  14,19 60:19
  61:4,6 62:10,
  19,20 63:20
  64:6,18,24,25
  65:2,5,11,15,
  24 66:2,4,17,
  24,25 67:17
  68:14,17
  69:14,19,25
  71:13,15,17,
  18 72:6,12,20
  73:10,16
  74:6,11,24
  75:10 76:2,5,
  18,21,25
  77:1,2,3
  78:3,21 79:6,
  8,12,14,15,
  16,17,23
  80:8,20,25
  81:17,19
  82:25 83:4,
  20,25 84:7,
  15,22 85:1
announce   4:19
another   23:9,
  17 81:11
answer   12:14,
  18 13:11
  14:3,9 20:25
  21:17 22:11
  23:12 24:7,
  12,20,22

  25:16,17
  32:19,22
  33:8,17 37:9,
  11,12,14
  39:4,10,16,18
  43:8,24 44:6,
  11,16,17,18,
  20 45:3,16
  48:8 53:9,11,
  18,24 56:1,3
  58:5,7 60:3,
  7,10,15 62:25
  67:1 68:9
  69:5,23 70:5
  78:13 83:7
answered
  81:17
answering
  21:24
answers   60:12
  76:11
anticipate
  32:16 33:22
anticipation
  33:7,14 83:18
any   7:2,12,
  21,25 15:19
  21:17 22:1,4,
  6 24:4 29:9
  32:17 33:6,22
  34:9 35:10
  37:15,22
  38:1,6,8 39:8
  41:5,6 42:21
  43:13,16,21,
  25 49:17,22
  51:16 53:1,13
  54:16 58:2,10
  60:3,4,5 63:7
  64:7,8,21
  65:11,22 69:3
  71:6 72:14,
  18,20,21,22,
  23 73:2 76:11
  79:3,18 80:8,
  10 81:17
  82:19,20
  83:20 84:1,2,
  7

anybody  64:13
anyone  21:12
anything
  12:19 15:5
  23:6 44:22
  49:22 51:15
  54:4 60:24
  62:23 64:22
  68:18 70:9
  72:18,24
  75:3,6 80:12,
  16,18 81:5
  82:11,13,18
  83:2 84:18
Anyway  77:5
anywhere  70:4
apart  17:5
apartment  9:9
apologize
  30:4
apparently
  75:10
appearance
  4:19
appeared
  64:18
appears  41:23
  46:13,15,16
  55:13
applied  79:23
appoint  29:3
appoints
  28:25
appreciate
  55:18 57:2
appreciated
  16:15
appropriate
  69:12
April  42:12,
  20 43:2
  79:18,24
are  4:7,9,17
  5:14,22 6:22
  7:2,25 24:19
  25:5 26:17
  27:19,20 29:9

33:2,8 35:15
36:14 37:18
39:2,5 40:17
45:18 46:4
53:8 54:8
61:21 62:24
66:23 67:6
69:22 72:5
75:16,19
80:15,22
83:6,9 84:13
85:9
area  7:3
areas  6:22
around  6:18
artful  48:2
article
  64:17,25
articulated
  77:19
as  4:12 5:7,
  13 6:3,7,11,
  13,19 9:8
  10:5,10 11:5,
  12 12:15
  14:1,14 17:20
  18:16 19:8
  22:7 24:15
  27:5 28:25
  29:3,4 30:25
  31:17 33:5,25
  34:16 35:22
  36:4,18
  38:12,13
  39:24 43:2
  44:18,20,23
  46:5 47:9,10,
  24 49:19,20
  50:4,15 51:25
  53:17 54:15
  56:21 57:1
  59:24 62:20
  70:5,6 72:19
  73:19 75:21
  76:2,18 77:3
  82:9,20 83:4
  84:2 85:10
ask  7:21
  10:13 18:19

34:4,13 37:3
38:15 39:14
58:25 69:2,3
73:2
asked  53:8
  66:9 81:10,19
asking  21:22
  22:18 33:5
  38:4 45:14
  63:22 69:8,15
  83:9
asserted
  83:12
asserting
  80:15,22
  83:14
asset  34:12
  38:13 75:3,6,
  7
assets  31:5,
  11,16 32:9
  34:1,5,10
  35:2 38:17
  44:23 45:18
  49:14,17,19,
  21
assist  19:20
assistant
  6:5,7 11:14
assisting  8:6
association
  55:1,4,6,8
  57:11
assume  7:17
  31:25 61:12
  66:11 74:1
assumed  16:10
  33:18,20
  66:18 68:19
assuming  51:9
assumption
  66:21
at  4:5,9 7:15
  8:19 9:18,19
  10:1,20 11:2,
  13 13:20
  14:12,24
  15:10,12,17

17:9 18:14
19:3,9 20:13
24:3 26:10
28:10,13
30:17 31:4
32:14 33:12,
13,23 41:11
42:19,23
43:1,6 45:10
46:13 47:19
50:10 51:3
52:7 55:9
56:5 57:9
58:12 61:13
62:13,15
63:15 64:12
65:17 66:6,10
68:18 69:20,
25 72:5,11
73:14 74:13
84:7
attack  19:6
attempt  63:20
attempted
  62:13
attempting
  65:3
attend  5:20
attention
  36:9
attorney  6:6
  12:16 22:8
  24:22 63:6
  83:4
attorney-
client  22:3
  24:17 39:18
  76:7,22,24
  80:22 81:2
attorneys
  7:11
Australia
  71:5 81:11,17
authenticity
  63:16
authority
  34:20,21

autopsy 43:7
available
  15:20 62:10
awake 24:3
award 20:2
aware 8:9
  17:11 22:15,
  22 29:9 35:15
  38:12,13
  49:21 57:13,
  15,16,17,20
  64:24 66:23
  67:3,6 72:5
  75:16,19
  78:23 84:13
away 19:6
  57:18 84:14

_____

B

babysitter
  8:6
back 14:3
  18:10 26:3
  27:14 28:22
  31:20 43:6
  45:21 46:14
  48:12 55:20
  56:15,18,24
  57:3 61:20,22
  64:21 70:13
  79:16,24
bad 22:23
  23:1
ball 10:11
bank 34:14,18
banker 79:14
Bar 9:18
based 22:2
  49:2 74:16
  76:12,15
  77:1,4
basic 7:20
basis 15:23
  16:3,12,19
  32:23 39:5
  69:7 76:25

Bates 26:9
BB/BR 4:15
Beach 4:9
  8:14 9:17,19
  10:15 16:11
  17:15 18:2,5,
  20 19:13,15
  27:23 44:9
  46:1 50:16,
  19,23 51:1
became 6:13
  8:14 20:11
because 7:15
  10:22 13:4
  14:12 16:14
  17:18,20 18:8
  19:1,14 22:2
  28:3 32:1
  35:21 36:11,
  14 37:1,15
  38:25 39:7
  40:3,4 44:1,2
  49:18 56:23
  62:10,14
  64:22 65:14
  68:8 69:13
  71:14,22
  73:4,12 74:11
  76:23 78:24
become 5:14,
  17
bed 56:19
been 5:6 7:7
  8:8 10:11,25
  17:16,23
  18:8,22 23:7,
  21 32:2,3,4
  33:14 37:23
  42:13 44:23
  64:5 66:7,17,
  19 67:17
  68:11 72:18
  78:17,21
  79:17 80:19
  83:3
before 4:3
  8:7 9:2 18:20
  38:2,9,10
  43:10 57:18

  61:5 78:5,10,
  16,22
began 57:17
begin 35:14
beginning
  25:3 49:7
behalf 4:21,
  23,25 17:24
  34:20 37:18
  39:20,21,22
  40:2 65:5
  67:7 84:5
behind 55:15
being 4:17
  24:3 30:9,25
  47:16 66:17
  74:1 75:21
belief 16:12,
  13 77:7,20
believe 8:13
  10:21 18:25
  22:21 35:20
  52:4,16 62:6,
  9 65:13,18
  66:6 71:14
  73:12 76:22
  77:17,18
  80:25 81:13
believed
  73:23
belonged
  68:17
belongings
  49:20
Below 30:7
beneficiary
  29:1,4,7
  31:23 32:2
  38:16
Bernstein
  6:13
best 7:22,24
  47:9
bet 71:9
better 22:4
  37:1 42:24
  58:4

between 7:14
beyond 62:19
big 35:24
  74:6 78:1,3
Bitcoin 51:15
  52:20 62:24
  65:19,24 66:7
  67:9,20 69:3
  70:4 71:11
  73:22 74:1,
  11,12 75:17
  76:2,3,18
  77:8,12 78:1,
  6,11,17,20,21
  79:2,12,13,15
  80:11,17
Bitcoin's
  62:20
Bitcoins
  62:21 65:16
  68:12 71:13
  72:3 78:7,15,
  24
blank 32:4
bleeding 18:9
block 28:6
boasted 74:22
Boca 28:24
boots 18:17
born 8:9
both 6:2 7:15
  40:1,2,6
bottom 26:10
Boulevard
  27:23
bouncer 11:2,
  5,8,13
break 61:15
  69:19,25
  70:10
brief 26:2
  61:18 70:12
broad 49:2
Bronx 6:6
  11:14
Brooklyn 5:21

brother 50:1
brought 34:6
Brown's 13:22
Bryan 4:21
 38:24 81:3
building 9:8,
 9
bunch 26:10
bureau 41:6
business
 27:24,25
 37:8,15,22,24
 38:6 51:16
 73:7,10
 82:13,18
but 6:18 7:21
 9:9,10,16,17,
 21 10:10,23
 12:8 13:16
 14:4 15:24
 16:7,15,21
 18:15 19:9
 20:7 24:1
 34:10 38:11
 40:5 41:22
 42:3,8 43:25
 45:6,20 46:16
 47:17,21
 48:14 49:1
 51:1,2 52:4
 55:7 56:18
 58:25 59:25
 60:19 61:13
 62:4,5,12
 63:15 64:9
 66:6 68:17
 69:9,20,25
 71:14,24
 73:19,23
 74:14 76:3,
 10,18 77:15,
 19 78:9,19
 85:2
by 4:18 5:9
 6:20 7:8,10
 11:1,5,7,15
 13:1,7 14:2,
 17 15:9 16:5,

18 17:1 19:5,
 11,22 20:1,6,
 10,15,20
 21:2,11 22:14
 23:8,15,22
 24:8,14 25:1
 26:5,9 27:2,
 13 29:5 31:10
 32:7 33:11,24
 34:20 35:4,24
 36:1 37:13
 38:5 39:23
 40:7,15 41:3
 44:3,12 45:1,
 13 46:10,22
 48:11,20 49:5
 52:23 53:7,
 12,20 54:14
 56:6,13 58:1,
 9,17,19,24
 59:4,12,18
 60:22 61:23
 62:8,9 63:4,
 13,21 67:5,14
 68:1 69:1
 70:2,21
 71:11,13 74:8
 75:1,12,24
 76:8 77:6,9,
 24 81:9 82:6
 83:16 84:6,12

─────────

C

cable 58:12
California
 8:25
call 79:14
called 36:8
 61:4
calling
 32:19,24 53:4
 76:14
calls 13:11
 14:10 20:24
 53:24 70:25
 71:3 81:15

came 6:7 9:7
 10:8 16:8,10,
 11,16 39:9
 50:23 56:18
 61:6 73:21
 80:8 81:6
camera 25:14,
 15
can 7:5,17
 8:3 9:24
 12:14,18
 22:4,19 24:22
 25:23 26:9
 27:5,14,15
 29:12 30:17
 37:9 38:4
 39:13 43:7,24
 44:7,17,18,19
 45:10,20
 47:10 48:8
 49:1,24 51:6,
 8 53:5,18,24
 56:1 58:5,7
 60:3,15 61:2,
 15 62:25
 65:10,25 67:1
 69:24 79:14
 81:3 84:9,21
can't 15:20
 37:12,14
 39:16 77:2
 78:24
candy 8:7
capacity
 19:18 59:22,
 23 76:10 83:4
capital 68:23
car 17:19
 65:15
care 55:21
 56:15
Carter 66:24
 67:15
Casa 54:25
case 4:11,14
 17:23 33:22
 38:12,20 47:5
 48:5 51:24

61:11 64:14,
 20 65:7,8
 68:22 69:19
cash 74:18,21
 76:3,18
 79:10,15
cashed 74:5
catchy 33:17
cause 4:6
causes 19:9
cell 57:21,22
 58:20 79:12
certain 29:6
 49:18 75:14
 78:2
certainly
 18:15 41:22
 46:1 51:21
 57:7 79:15
certificate
 42:18,23 43:2
certification
 7:8
certified
 7:2,6,7,8
certify 7:10
chance 66:2,
 11
change 6:17
 55:14
channels
 39:10
character
 59:6,10
characterize
 72:12
charging
 36:11
check 35:8,9
 36:12,24,25
 66:14 82:24
 84:8
checked 80:1
checking 34:8
 49:12
cherry 13:23

chest 18:8
Chicago 26:25
Circuit 5:25
 6:1
circumstances
 29:6 55:15
claimed 40:5
 71:11
claiming 33:2
 37:18
claims 30:19
 31:13,17,21
 32:9 49:22
clarify 15:11
 45:23 72:22
 75:5
cleaning
 51:14
clear 22:10
 73:9,14 76:9
client 32:21
 33:4 34:20
 38:15
client's 33:1
clients 35:23
 36:10,11,14
 46:3
close 11:20,
 22 18:19
 58:18 78:17
closed 12:9,
 11,12 14:5,7
closer 8:14
closest 15:22
club 11:3,9,
 13
clue 17:10
 51:5
Code 30:21
Coin 72:9,10
coins 68:9
collected
 59:14
come 10:6
 34:11 36:10
 37:5,16 38:16
 50:16,18 51:1

77:8
coming 17:21
commenced 7:8
comment 22:6,
 7
communicate
 62:2,7
communicated
 13:25 62:9
 80:13 81:6
communicating
 61:24
communication
 8:22,24
 21:24,25 23:7
 24:18 37:15,
 22 39:12 44:8
 80:14,19 81:8
 82:10
communications
 12:20 14:10
 21:18 38:1
 40:4 56:2
 69:9 72:1
 81:1,2,4
companies
 35:11,13,16,
 22
company 14:15
 38:17 72:7,9
compartmentali
zed 14:1
compensation
 38:21
compete 47:10
 48:15
complaint
 37:6 51:24
 52:2,3,4,9
complete
 26:16,19
 48:23 60:20
computer
 10:9,17,21
 13:15,18 19:2
 37:8 38:7,21,
 22 39:9
 56:10,11,23,

25 66:12,19,
 23 68:15
computers
 10:16,24 19:3
 63:7 66:13
 68:14
conceding
 78:20
concern 66:7
 75:20
concerned
 16:14 67:21
 68:2
concluded
 85:14
concludes
 85:4
condition
 17:18 18:6,
 12,13
conducting
 33:1
connection
 72:24 73:13
Conrad 66:24
 67:15
consequence
 76:2,18
consequences
 75:20
consider
 11:19,23
 12:4,7 83:4
consistent
 46:17 74:5
consists
 30:19
constant 8:24
Constitution
 30:21
consumer
 40:18
contact 8:10
 9:12,20,22,25
 10:4,6 50:3
 62:13 63:18

continuity
 8:10
contributed
 73:18
control 72:2
conversation
 62:16 64:4
 70:8
conversations
 64:5,7,8 73:6
convey 49:15
cool 64:20
cooperating
 73:15
copy 40:17
 46:15,16
 85:12
corporation
 35:24 37:1
 66:11
correct 10:14
 29:7,23 30:13
 31:2 38:19,
 23,25 39:19
 40:23 42:4
 43:11 46:25
 48:5,13,16,23
 51:24 54:21
 63:18,24 71:1
 73:20
correctly
 84:23
correlation
 20:14
costs 32:11
could 5:10
 6:3 7:22,24
 16:4 23:25
 30:4 32:2,3,4
 36:2 37:5
 38:25 39:11
 40:2,5 41:11
 49:6 56:11
 58:11 60:23
 62:14,15
 65:11 66:14
 68:20 71:15,
 20 72:25

77:12,17 84:1
couldn't
44:10
counsel  4:18
32:20,25
62:10,11,14
63:21 64:14
70:13 76:22
78:19 81:10,
15
counsel's
53:4
count  67:7
counts  52:6
County  6:6
9:17 10:15
44:9 46:1
50:17,19 51:1
couple  15:13
70:24
course  9:21
10:3 53:20
court  4:16
5:23,25 6:1
25:16 33:9
48:16 81:10,
11 84:22 85:9
courts  5:23,
24 6:2
cover  26:13,
15,18
covered  53:6
Craig  4:14,
22,23 61:25
62:3,13,18
63:18,19,23
64:8,10 70:25
71:3,10 72:1,
5 73:2,6,17
75:19 77:9,11
81:15 82:20,
22
create  73:15
created  76:2,
17
creator  75:17
credit  35:9
39:24 40:8,

18,20 41:5,6,
12,19 45:11
79:19
creditor  32:9
33:21 43:17,
18 49:22
creditors
30:20 31:14,
17,18,21 35:9
criminal
75:20
CROSS  70:20
currency
52:15 62:20
current
71:16,18
currently
73:24


                D

da  8:23 11:14
date  4:8
25:2,10 26:24
40:23 41:1,20
42:22 43:2
46:18 57:1
61:8 81:23
dated  47:9
54:19
dates  20:14
Dave  9:12
11:20 12:3,4,
15 15:17
17:3,8,11
18:18 22:15
42:15 44:4
73:22 74:10,
17 75:2,13,25
76:16 77:7,12
Dave's  45:18
David  4:13
8:4 9:4,6,10
10:12 11:23
12:1,8,10
14:4 15:16,
22,23,25
16:8,11,15

17:5,25 18:20
19:1,12,23
20:16,21
21:4,8,12
23:2,9,16
24:4,10 27:17
32:17 33:15
37:7,20,23,24
38:8,20 40:8,
19 43:10
45:25 47:17
49:12,17
50:8,15,16,
22,23 51:10,
14 52:11,13,
24 53:14
55:3,10,19,24
57:3,10,13,
18,20 58:18,
25 59:2,14
61:8 63:7
64:19 65:20
66:17 67:8,9,
19 68:10,19
69:2 70:3,8
71:11 72:3
73:7,17,18,19
74:6 77:25
78:16 79:7,25
80:10,12,16,
25 84:7,13
David's  9:18
15:24 26:15
28:8 38:14
50:1,4 51:14
57:22 62:21,
23 65:10,23,
24 66:3 68:14
71:12 72:17
80:21 84:14
day  19:4
41:18 79:17,
18,23
days  18:22
30:24 31:7
43:10
dead  26:22
36:20,22
43:11

dealing  53:22
dealings
51:16
death  42:18,
23 43:1,11
61:9 66:18
78:6,10,22
debt  45:7,12,
15,25 46:2,3,
4 49:3,12
74:11
debts  49:17
deceased  32:3
36:12 42:16,
21
decedent
30:18,25
34:24 35:10,
12 80:16
December  5:18
decide  25:15
48:1
decipher  66:3
declined
18:12
decomposition
43:5
decorated
20:7
deep  45:7,15
46:2,3,4
49:3,12 58:3
defendant's
27:11 40:11,
13 46:5,6
54:12 63:11
defender  6:8
Defense  4:13
54:10 82:25
define  29:24
degree  68:14
Department
47:2 48:5
49:16 53:2,5
54:16,17
depending
34:6

Depends  22:25
depo  46:9
deposition
  4:3,11 7:17
  59:13 60:23,
  25 61:3,5,10
  84:21 85:5,14
deputy  10:15
  11:12 20:11
described
  30:25
designated
  32:2
desire  58:3
  65:10
determination
  84:2
determine
  35:2 45:11
  49:1
development
  55:5
device  18:11
  67:21
did  5:14,17,
  20 6:4,6,16
  8:19,24 9:4,
  5,12,14 10:9,
  21 11:2,5,11,
  22,23 13:2,8
  14:6,15,18,20
  15:10,12,16,
  17,23,24
  18:4,9,20
  19:4,6,9
  21:12 23:2,9,
  16,20 24:15
  28:12 29:13
  31:5,12 32:16
  36:7 37:7
  38:1 39:24
  40:8 41:5
  43:13,16,21
  44:1 45:2,19,
  20,22 49:15,
  18 50:21,25
  51:1 57:9
  58:18 59:20,

25 60:24
61:2,7,8,9
62:2,7 63:5,
6,25 64:16
66:6,9 69:2
70:3 71:3,10
72:1 73:2,7
76:22 77:7,11
78:16 80:4
81:13,15,21,
24 82:1,24
84:7
didn't  9:15
  11:11,12
  12:22,23,25
  13:15 14:11,
  15,18,21,23
  15:14 19:15
  33:22 35:1
  36:3 38:16,20
  43:18 50:15
  54:3 65:14,25
  68:7,9,19,22
  71:22 79:16,
  21 80:7
  83:22,23
died  19:8,10
  44:4 78:17
  79:18 84:13,
  14
dies  34:1
difference
  7:14
different
  10:4
digging  65:15
  66:2
dinner  52:11,
  13 53:14 54:4
DIRECT  5:8
directly  32:1
directors
  35:22
disagree
  69:13
disbelieve
  32:13

discharged
  80:4
disclose
  36:3,7,17
disclosed
  33:8 36:21,22
discuss  12:22
discussed
  64:21,22
  65:2,9,16
discussions
  33:3 38:7
disease  37:5
disposition
  29:18 30:5
  32:15
dispute  60:18
disputing
  82:4
distant  11:24
district  4:16
  6:1,5
do  5:2 7:12,
  21 9:17 10:16
  11:16,18
  12:20 14:1,6,
  23 16:25
  17:2,5,8,13
  21:4,24 22:20
  24:4 25:7
  26:6,8 28:1,
  12,15,17,19
  29:16,17
  32:10 34:1,4,
  10,21 35:5,6,
  8,9,21 36:8,
  19,24,25 37:4
  42:1,6,15
  44:2,7 45:15
  46:11 47:11,
  18 48:3,14,
  19,22 49:1,9
  50:5 51:18,
  23,25 52:8,9
  54:16 55:16
  56:7,12,19,24
  58:2,10 60:24
  61:11,24

62:23 63:1,14
64:3,10 71:15
74:16 75:13
76:21 77:17
78:4,5,9,12,
13 79:2,11,
18,24,25
80:10
doctor  13:22
  37:4
doctor's  80:1
doctors  80:4
document
  26:6,14,15
  29:14 60:3,4
documents
  40:3 59:14,
  15,19,20,25
  60:19
does  25:13
  28:10,21
  30:3,22 37:4
  43:4 47:23,24
  49:3 83:25
doesn't  29:3
  36:15
doing  83:18,
  19,21
dollars  21:4,
  9,10,13
  74:11,18
  78:22 79:2
don't  5:19
  9:17 10:20
  13:5,10,13,
  14,17,23,25
  14:9,16,25
  15:2,6,19
  16:3,12 20:5,
  13,25 22:1
  23:12,19
  24:1,2,6,12
  26:25 29:15
  31:9,24 32:19
  36:6 38:11
  39:4,14,15
  40:3,10
  41:21,22 42:8

43:15,25 44:2
45:6,16
47:14,20 49:4
50:17,20,25
51:2 52:12,25
54:6 55:6
56:12,17,18,
24 57:19 58:8
59:24 60:5,7,
19 61:14
62:12,14
63:15,16
64:2,6,9,17
65:13 66:2
67:25 69:5,
11,16,18
72:10,11,14
73:12 74:19
77:14 78:14
79:13,15
81:13 82:3
83:11
**done** 83:2
84:19
**door** 76:6
**doors** 60:5
**doubt** 26:22
40:25 41:23
55:12 63:16
65:9,16
**down** 6:7 8:6
13:20 15:15
16:10,22
18:8,14
**Dr** 4:21,23
51:10,13,15,
17 62:11
78:19 82:20
**dramatically**
71:14
**drawer** 61:13
**dressing**
13:22
**drew** 52:18,
19,22
**drive** 16:24
**drives** 65:10,
23,25 66:8

77:8 84:15
**driving** 15:14
**dropped** 10:11
**drove** 16:22
17:19
**dues** 55:16
57:11
**duly** 5:6
54:21
**during** 10:3
50:9 52:13
55:14,23
57:21 59:13
72:1 73:6

---

**E**

**e-mail** 62:8
67:18
**e-mails** 54:17
**E-X** 72:11
**each** 17:6
18:19
**earlier** 50:16
64:4 70:24
74:16 79:20,
21
**early** 74:5
**effused** 74:23
**eight** 71:17
**either** 37:20,
24 53:24 62:4
66:18 80:21
**elder** 7:1,6,
9,10
**electronic**
67:20
**element** 33:5
**Eleventh** 6:1
**else** 12:24
30:2 49:23
61:9 64:13
80:24
**elsewhere**
36:13
**employed**
55:20

**encompassing**
69:11
**end** 70:15
72:11
**ended** 22:23
**engage** 24:15
**enough** 83:23
**entitled** 65:4
72:16
**entity** 48:21
82:9 83:25
84:3
**equipment**
19:19
**Esquire** 4:11
5:5 70:20
77:23
**estate** 4:13
7:1 30:18
31:5,11,25
32:3,17
33:15,25
34:2,16,20
36:19 39:20,
22 52:1 63:6
65:5 67:8
72:17 83:8
84:5
**even** 35:13
52:5 67:25
68:7 76:23
78:5 83:23
84:2
**eventually**
58:12
**ever** 12:15
17:2 21:12
23:2 28:12
57:13,15
63:6,25 64:10
68:16 69:3
70:3 71:3,10
72:2 73:2,7,
12 77:11
81:16 82:24
**every** 12:2
37:5 68:23

**everybody**
12:24 74:24
**everyone**
12:23,25 45:5
**everything**
21:23 76:10
**Ex** 72:10
**exactly** 11:13
**EXAMINATION**
5:8
**examined** 5:7
**example** 13:14
14:11 36:3,10
**exceed** 30:22
31:5,12
**exceeded**
49:14
**Except** 82:22
**exceptionally**
10:24
**exchange**
72:9,11,23
73:3
**excluding**
21:17
**Excuse** 25:9
**excused** 85:13
**execute** 27:1
**executed**
26:21
**exempt** 30:19
31:13,17,20
32:9 49:19
**Exhibit** 27:6,
10,11 40:13
42:18 46:6
54:12 63:11
**existed** 34:5
68:18 82:9
**Expedited**
85:10
**expenses**
30:23,24
31:5,6,12
32:7,8
**expert** 10:17

explain  39:12
  53:6
explanation
  79:19
expressed
  70:8 75:19
expressing
  58:3
extensive
  18:10
extent  45:25
  73:11 83:25
extremely
  78:6,10

---

**F**

F-I-N  42:6
facilitate
  65:3
facility
  19:19
fact  39:8
  47:21 64:24
  69:9 76:1,17
failing  18:7
faith  72:16,
  19
fall  6:8
falling  55:15
false  16:1
familial
  11:20
familiar  25:5
  81:20
family  8:8,9,
  15,19 9:16,23
  21:13
fan  78:8
far  17:5,7
  19:8 68:15
father  8:7
  15:16,24
  16:8,9,12,14,
  16 36:12 72:6
February  5:19

fee  85:1,3
feel  60:6
felt  73:17
few  6:14
  18:22 73:24
field  56:5
fifth  5:25
  82:12
figure  43:21
  65:2,4
figured  74:24
file  33:1
  61:13
filed  4:15
  33:12,13
  38:2,10 51:23
  61:11
filing  32:14
  36:23
financial
  42:1,4,8
  43:16 50:4
  59:14 60:21
financially
  44:13 47:17,
  25 49:2 73:25
find  15:21
  36:13 43:13
  65:12,14
Finest  42:11
finished
  59:17
firm  4:9 6:9,
  12,17,19,20,
  21 40:18 41:3
  44:1 54:23
  68:21
first  5:6
  6:4,5,20
  10:19 15:11
  17:14 34:3
  49:7,25 69:13
  77:25 82:12
five  26:16
  61:15 82:17
flip  26:12

floor  9:9
Florida  4:5,
  10,16 5:24
  6:2,21 7:7
  8:12,17 9:2,3
  27:24 30:20,
  21 36:13
follow  8:16
  34:7 54:15,16
  77:22
follow-up
  70:18
follows  5:7
  31:1
for  4:5 5:11
  6:10 7:23
  8:25 10:6,10,
  19,21 11:2
  13:11,14,16
  14:10,11
  17:12 18:22
  20:17,24 22:3
  25:23 26:16
  27:12,22
  28:4,24 29:18
  30:5 31:2,6,
  19 32:6,11,
  15,19,23,25
  34:3,8,24
  35:9,16 36:3,
  10,18 37:5
  40:8,14 41:18
  46:7 48:1
  49:11 53:4,24
  54:13 58:25
  59:14 60:23,
  25 61:2,6,9,
  11 63:6,12
  65:16,24 67:9
  69:8,24,25
  70:24 72:22
  73:2,3,13,17,
  19 74:6,12
  75:4,16 76:14
  78:1,9 79:19,
  23 82:22,25
  83:8,15,17,21
  84:8 85:1,3,6

force  10:20
foreclosure
  57:14,16,17
forensic
  10:17
Forensics
  37:8 38:7,21,
  22 39:9 66:24
forget  7:13,
  14
forgot  17:20
form  10:18
  11:4,10 15:1
  16:2,17,20
  18:23 19:7,
  16,25 20:4,8,
  12,18,23
  21:6,19,21
  23:4,11,18
  24:6 29:2
  31:8 32:18
  34:25 35:19
  44:14,21
  45:4,8 48:7,
  17,24 52:21
  53:15 57:23
  58:14 59:3,7
  66:25 67:10,
  23 68:4 74:3,
  20 75:8,22
  76:5,20 77:13
  82:2 83:1
  84:16
formal  49:8
formed  6:9,
  11,16
formulated
  80:6
forth  34:6
fortune  70:4,
  9 80:11
found  18:21,
  25 42:16,21
  43:3,4,11
  67:19
Foundation
  7:9

four  6:18
  26:17 43:10
  82:17
free  32:9
Freedman  4:25
  10:18 11:4,10
  12:14,18
  13:3,10 14:9
  15:1 16:2,17,
  20 18:23
  19:7,16,25
  20:4,8,12,18,
  23 21:6,16,20
  22:10,24
  23:4,11,18
  24:6,12,21
  26:23 27:7
  29:2 31:8
  32:18,24
  33:3,10,16
  34:25 35:19
  37:9 38:3,24
  39:4,7,19,22
  40:1 43:24
  44:6,14,17
  45:4,8,16,20,
  23 46:21
  48:7,17,24
  52:21 53:3,
  10,15,17
  54:3,8 56:1,9
  57:23 58:5,
  14,23 59:3,7,
  16 60:2,6,11,
  15 62:25
  66:25 67:10,
  23 68:4 69:5,
  8,16,24 70:5,
  17,19,21,23
  74:8 75:1,12,
  24 76:8 77:3,
  6,21 81:3,7
  82:2 83:1,8,
  11 84:4,9,16,
  20 85:12
frequently
  9:24 58:19
Friedman  61:4

friend  8:8
  9:23 11:24
  18:21,24 22:8
  64:25
friends  9:16
  12:2 13:15,18
  15:22 19:2
  58:19
friendship
  8:9
frivolous
  84:3
from  8:15,17
  13:21 16:8
  17:6 18:8
  19:6,12 20:21
  21:4,17 25:14
  30:19 31:13,
  17,21 32:9
  37:2,21,24
  38:17,21
  41:5,25 42:9
  43:17 45:14
  51:10,13
  53:22 56:19
  59:20,25
  72:17 73:4
  74:23 76:9
  77:8,16
  79:20,24 80:4
full  60:20
fund  35:7
funds  34:9
funeral  30:23
  31:5,12,20
  32:7,8,11
furlough
  50:17
furloughs
  51:4 80:8
further  77:21
future  74:2


G

Gardens  4:10
  8:14 9:19
  27:23

gave  22:6
  23:25 59:25
  72:6
geek  19:2
  56:10 66:12
generosity
  74:23
gesture  72:19
get  11:25
  14:3 17:12
  19:9 31:20
  34:14,17,24
  35:23 39:16
  41:10 43:16
  55:20 56:14,
  18,24 57:3
  60:11 63:17,
  19 68:11
  71:19
get all  65:10
gets  55:19
  56:16,17 57:3
getting  24:2
  34:7 61:19
gift  72:16,19
give  7:22,24
  39:15 48:15,
  23 59:1 65:15
given  30:9
  76:11
gives  25:17
giving  37:25
Gizmo  64:18,
  25
glad  78:19
glean  73:12
gleaned  77:16
gloves  18:16
go  6:3,20
  7:20 8:6
  15:17 25:23
  27:14 34:12,
  17,24 43:6
  45:20 48:7
  49:7,24 50:7,
  21 51:6 56:4
  58:4 65:1,15

66:2,9 68:9
  74:6
gobble  11:25
  12:1
going  4:8
  7:20 15:7
  22:11 26:4,9
  29:24 33:20
  34:9 40:11
  43:8 54:10
  65:12 79:24
  83:20 84:25
  85:2
gone  32:1
  61:12
good  4:7
  5:10,12 46:8
  70:17,22
  72:16,19
Google  65:1
Googled  61:8
got  10:5
  17:19 18:25
  37:2 54:20
  56:10 84:22
government
  48:21 53:23
grab  79:14
grade  62:20
grandmother
  9:8
grave  75:11
greater  8:22
grounds  67:12
guess  9:24
  38:16 58:22
guest  68:21
guy  6:9 64:19
  66:9 68:21


H

had  8:8,10
  9:1,2 10:4,5,
  11,25 12:21,
  22,24 13:16
  14:12,13

| | | | |
|---|---|---|---|
| 15:13 17:11, 15 18:7,8,9, 15,16,21,22 19:14,18,19 20:2 21:8,13, 24 29:10 31:16,18 33:21 35:12, 23,25 36:9,12 37:7,16,23 38:7,13 44:23,24 45:25 47:17 49:13,17,18 50:3,15,16,18 51:17 52:10 57:20,24 58:19 62:14, 17,22 64:18, 24 65:1,18, 22,23 66:10, 12,16,17 67:19 68:13 70:3,7,9,25 71:4,23 72:2, 4,10,17,20,21 73:9,18,22 74:5,10,18, 21,23 75:5 76:1,17 77:8 79:1,9 80:6 81:16,19 **half** 71:18 **handed** 46:12 **handling** 84:4 **happen** 36:15 **happily** 80:23 **happy** 69:19, 21 **happy123** 68:22 **hard** 65:10, 23,25 66:8 77:7 79:19 84:15 **has** 17:23 25:7,10 28:23 33:7 34:21 | 39:8 44:10 45:5 51:23 75:19 77:1 78:20 79:19 82:19 84:22 **Hate** 46:9 **have** 7:7,12, 13,16 9:20 12:15 13:12 15:19 16:8,9, 25 17:10 18:4 19:15 20:9 21:1,9,20 22:1 23:7,21 24:2,4 25:12 27:5 28:23 31:16 32:1,2, 3,4,12 33:9, 21 34:12,19 35:1 36:10 37:1,5,16,23 38:9,18,21,25 40:25 41:9,23 42:13,17,21 43:6 44:22,23 45:2,24,25 46:1,2,3,13, 16,17 47:22 51:5,17 52:2, 3,6,15 54:18 55:11,12 58:2,10,15,21 59:1,8,24 60:16,17 61:11,12,13 62:15 63:6 64:5,12,13 65:6,9,13,18, 25 66:2,4,7, 19,21 67:12, 15,16,17 68:10,11,17, 20,22 69:14, 16,17,18 70:18,24 71:7,23,25 73:4,9 74:4, 10,13,14,17, 22,23,24 | 75:6,9,10 76:11 77:8, 18,21,22 78:7,14,17,21 79:2,5,6,8, 11,16,17,18 80:3,10,11, 12,19 83:2,3 84:10,17,20 **haven't** 59:17 **having** 5:6 21:10 23:3,10 36:14 **he** 9:7,10,11, 18,19,22 10:5,6,8,9, 13,15,16,19, 21,22,23 11:2,8 12:8, 21,22,23,24, 25 13:2,5,8, 12,13,14,15, 16,17,20,21, 23,24,25 14:1,4,6,11, 13,14,15,18, 20,23 15:2,3, 7,17,24 16:9, 10,14,22 17:12,14 18:7,8,9,11, 22 19:1,6,8, 10,23 20:2,7, 11,22 21:4,8, 9,13 22:21 23:6 24:22 26:22 31:16 32:20,25 33:20,21 35:25 37:16 38:22,25 39:8 42:20 43:2,4, 11 44:4,13, 17,18,19,23 45:2,7,15,19, 20,22 49:3,17 50:3,20 51:1, 2,9,13,16 52:10,13,14, | 18,19 53:4 55:3,6,15,20, 24 56:4,7,8, 10,11,14,15, 16,17,19 57:3,21 58:13 59:1,13,14, 19,25 60:9,12 61:6 62:14, 15,22 63:20, 22 64:19 65:4,11,18, 22,25 66:2,21 67:19 68:20 70:3,8 71:4, 6,7,11,12,14, 15,21,23 72:2,4 73:7, 9,21,23,25 74:4,6,11,18, 21,22 75:5,6, 9,23 76:1,3, 17 77:1,11, 14,16,17,18, 25 78:1,3,4, 20 79:1,3,5, 8,9,11,18,23 80:7 81:4,13, 16,17,19 83:8,11,12 84:14 **he's** 12:23 15:20 84:4 **head** 11:18 **health** 18:13 58:4 **hear** 78:19 **heard** 28:23 51:10,13 52:15 **heart** 19:6 **heavily** 44:4, 10 **hell** 83:24 **help** 8:7 19:18 39:16 58:19,25 59:2 81:3 |

| | | | |
|---|---|---|---|
| **helped** 19:2 | 14,17 14:1,7 | 54:25 | **I'M** 7:20 9:10 |
| **helpful** 68:24 | 15:17 16:8, | **homestead** | 10:22 13:4 |
| **her** 17:19,20 | 11,15 17:9,18 | 31:18 33:19 | 15:11 20:19 |
| **here** 6:7 | 18:6,9,13,21, | **honest** 48:4 | 21:16 24:24 |
| 14:14 17:15, | 24 19:9 22:7, | **hood** 18:16 | 29:24 33:5 |
| 24 18:1,15,16 | 8,22,23 23:2, | **hoped** 76:3 | 40:4 45:14 |
| 28:15 38:16 | 6,10 24:15 | **hopefully** | 51:9 52:4 |
| 56:14 61:11 | 28:24 31:17, | 9:21 | 54:19 59:9 |
| **hey** 66:9 | 25 32:2,6,8, | **hospital** | 62:4 68:21 |
| 80:11 | 21 33:1,3,4, | 13:20 14:12, | 69:19,20,21 |
| **hid** 66:21 | 19 45:11,17 | 14,24 15:18, | 78:19 82:4 |
| **hidden** 65:24 | 47:16 49:13, | 23,25 16:10 | 83:9,14 |
| 66:12 | 14,20 50:8 | 17:3,12,15 | **I'VE** 35:23 |
| **hiding** 66:3 | 52:14 55:5,7, | 18:1,15 19:1 | 46:11 |
| **highly** 20:7 | 15 56:19 | 31:6 50:9,10, | **idea** 13:12 |
| **Hillside** 9:1 | 57:10,11,21 | 18,22 55:10, | 20:9 21:1 |
| **him** 9:20,25 | 58:11,12,20 | 24 56:8,16 | 67:12 78:14 |
| 10:4,6 11:23 | 59:5,10 60:18 | 57:22 58:4,13 | 79:5,6 |
| 12:7 13:20 | 61:8 62:10,11 | 66:22 80:1,5 | **identification** |
| 14:12,19,24 | 66:17,18 | **house** 10:6 | 27:12 40:14 |
| 15:6,7,10,12 | 68:19 72:6,19 | 17:9 55:7 | 46:7 54:13 |
| 16:10,16,23, | 73:7 74:23 | 57:13,15 | 63:12 |
| 25 17:16,17 | 75:10,14 | 66:17 | **identified** |
| 18:4,14,21,25 | 76:10,25 | **how** 7:17 8:3 | 25:11 27:19, |
| 22:11 24:19, | 77:1,4 78:6, | 9:4,5,24 14:6 | 20 |
| 21 29:3,4 | 10,17,22 | 15:10,11,20 | **if** 9:24 |
| 32:22 33:5,8 | 79:4,8,12,19 | 16:22 17:5,8 | 10:10,21 |
| 39:6 44:16 | 80:7 81:4 | 19:10 22:16, | 11:11,14 |
| 50:10 53:21 | 84:15 | 19 32:25 | 12:14,18,23 |
| 58:19 59:2,25 | **history** 6:3 | 48:15,22 51:4 | 13:11,17,23 |
| 61:6 62:7,9 | 73:7,10 78:14 | 52:5,6 60:20 | 14:5,10 15:22 |
| 65:14,15 | **hit** 78:8 | 62:2,7 65:5 | 16:6,13,19,23 |
| 69:22 71:22 | **hold** 12:14 | 67:17 71:22 | 18:25 20:21, |
| 72:17 73:4 | 32:18 37:9 | 72:12 74:22 | 24 21:3,8 |
| 74:14,23 80:4 | 38:3,24 53:3 | 79:13 82:10 | 22:2,19 |
| 83:6,10 | 69:5 79:7 | 84:5 | 23:20,23 |
| **himself** 19:4 | **holding** 65:11 | **hundreds** | 25:13,16 |
| 20:17 24:23 | **Hollywood** | 21:3,8,10,13 | 27:14 30:4 |
| 62:19 75:23 | 8:13 | 74:10,18 79:2 | 31:24 32:10 |
| 80:1 | **home** 19:3,9 | **hunt** 71:15 | 34:9,15 35:1, |
| **hire** 34:3 | 24:2 49:13 | **hypothetical** | 2,8,10,12,20 |
| **hired** 34:6, | 55:5 58:12 | 67:24 | 36:2,11,12, |
| 11,15,16 35:9 | 73:21 80:8 | | 16,25 37:2,5, |
| **his** 8:5,7,8, | **homeowner** | | 9 38:12,15,20 |
| 11,12 9:8 | 57:11 | **I** | 41:21 42:18, |
| 10:2,3,7,25 | **homeowner's** | | 20 43:1,25 |
| 11:16 12:1, | 55:4,6 | **I'LL** 25:12 | 44:6,17,18 |
| 22,24 13:12, | **Homeowners** | 28:22 85:12 | 45:6,15 47:20 |
| | | | 49:7 50:7,17, |

25 51:2 52:5
53:18,24 55:6
56:1,18,23
60:6,12 61:4
62:12,25
63:22 65:10,
22,23 66:10,
14,19,21,25
67:16 68:6,16
69:18 70:5
71:7,15,17
72:10 73:22
74:4,21 75:2,
5 76:10,23
77:14 79:14
80:7 82:11
84:25 85:2
**illness**  30:25
**impact**  8:1
**implication**
71:24
**important**
48:4,15,22
**impressed**
54:21
**in**  4:5,9,11,
15,20 5:13,
19,23,24 6:2,
6,11,21 7:2,
6,11 8:7,12,
13,19,21,22,
24,25 9:1,8,
9,12,15,19
10:2,5,8,15,
24 11:14,23
13:15,20
14:13 15:14,
16,18,23,25
16:24 17:3,
11,12,15,22,
25 18:1,12,
15,21 19:10,
23 21:12 22:7
23:20 24:18
25:14 27:7,19
28:24 29:13
30:1,3,17
33:18 34:13,
16,18 35:1

36:9,10,12,
13,22 37:6,8
38:20 39:9
40:3 42:18
43:4 44:1,9
45:7,11,15
46:1,2,3,4
47:5,8,11,15,
21 48:10,21
49:3,12,22
50:8,9,18
51:24 52:9,
11,16 53:2,
13,20 55:5,
10,13,14,24
56:4,8,14
57:14,15,21
58:13 59:5,9,
22 60:20,23
62:19,21,22
63:17,18,19
64:18,23
65:1,15,24
66:10,12,19,
22 67:6,13
68:9,15,23
70:23 71:4,
17,19,20
72:5,24 73:3,
22,24 74:1,2,
5,11,12,18
76:10 79:10,
15 80:11
81:11,16,21,
24 82:5,9,12,
18 83:3,18
**Inc**  55:1
**income**  37:2
**indebted**
44:5,10
**indebtedness**
73:17
**independent**
42:17 47:22
52:7 54:18
60:16 67:16
80:3 84:10,17
**indicated**
50:16 51:15

71:22 72:4
**individual**
31:25 70:6
**infant**  8:5
**Info**  4:13
**information**
13:13 16:4
20:25 25:7
37:11 39:1
47:10 58:7
63:1 66:4
67:2 68:11
71:6,23 81:18
82:19
**informational**
83:21
**informative**
18:11
**infrequent**
10:10
**initial**  52:3
**initially**
10:21
**initiated**
71:4 81:16
**injunction**
67:9
**inquiries**
41:14
**inquiry**  41:25
42:12,13
43:10 47:13
79:19
**institution**
58:4
**instruct**
22:11 32:21
**instructing**
24:19,21
25:17 33:8
39:17 44:16
53:9,10 69:22
83:6,10
**instruction**
13:3,10 14:9
20:24 21:7
23:5,12 44:15
45:9 53:18,25

56:9 67:11
**instructions**
83:12
**insurance**
7:16 31:1,14,
20,22,23
49:19
**integrity**
40:25 41:24
55:12 60:18
**intend**  49:15
68:16
**intended**
77:15
**inter-spousal**
80:23
**interest**
11:23 36:9,12
37:8,16,22
62:21,22
66:10
**interested**
82:9
**interesting**
6:22 64:20
**interests**
10:25
**internet**
58:11
**intertwined**
73:11
**intimate**
77:11,15
**intimated**
77:14
**intimately**
8:15
**into**  17:12,19
**investigation**
48:21
**investment**
37:3
**invoke**  24:22
**invoking**
24:24 25:2
**involved**  8:15
19:10 34:4

64:23
**IOTA** 47:23
**Ira** 4:12 8:7,
8,9,12 9:11
17:2,5,8
18:18 28:25
30:12 37:20,
24 38:8 39:21
47:16 49:25
50:9,15,20,
21,24,25
51:1,2,9,23
52:10,14,22
53:14,20,23
59:13,20
60:8,17 63:19
65:3,11
66:14,23 67:7
68:17 71:21
72:6,17
80:10,13,16
81:1 82:10,19
84:7,14
**Ira's** 8:19
80:21
**IRS** 48:10
49:15 82:7,8,
9
**is** 4:8 5:12
6:19 7:9,21,
23 11:22 12:1
14:5 18:6,10,
11,24 19:17
22:2,10 23:1
24:17,22 25:3
26:4,14,15,
16,19,25
27:10,14,15,
17,22,24 28:5
29:18,20,21,
23,24 30:1,9
31:18,20 32:7
33:18 36:4,
16,18 38:12
39:20 40:5,
11,20,22,23
41:20,25
42:24 46:9,
16,18,25 47:1

48:3,9,15,22
49:25 52:9
53:1,13 54:1,
2,10,25
55:20,23
56:12 60:1,10
64:9,19,20
67:21 68:9
70:15,22,25
71:19 75:17
76:10,14
77:15 78:13,
20,24 80:15,
20 81:1,4,8,
13,20 82:4,15
83:8,12,15,
20,24
**isn't** 53:6
**issue** 33:17
41:19 56:12
59:10
**issued** 40:24
**issues** 15:14
**it** 6:9,18,19
8:11 10:10
11:8,12 13:5,
11 14:10,21
15:19 16:4,6
18:10,11
19:13 20:2,24
22:17 24:3
25:13 26:10,
22 29:3,4,16,
20,24 30:1,2,
3,7,9,18
31:1,22,25
32:1,2,3,4,5
35:1 36:15,
18,22 37:4,
11,20 38:4,9,
12,13 40:1,5,
23 41:14,20,
21,22 42:6,
12,15,17,19,
20 43:2,4,6
44:20 46:8,
13,14,16
47:1,5,10,21
48:3,15,22

50:8,14,17,25
51:21 52:5,7,
22 53:24
55:13,23
56:22,23 60:9
61:13 62:4,5,
6,7,18,20
63:15,16
64:9,18 65:1,
2 66:4,5,15,
16,18,19,21,
22 68:16,19
69:20,21,25
71:16,17,19,
20,22 72:10,
11,13,15,25
73:9,14,16,
23,24,25
74:4,9,13,14
75:10,25
76:11,15
77:2,3,14,15,
17,19 78:4,
10,23 79:3,5,
10,15 80:15
82:4 83:21,24
84:19,23
**it's** 21:20,21
25:15 26:9
29:12,22
32:21 33:17
34:21 36:8
41:2,9 43:7,
8,9 46:8 47:2
52:7 54:23
60:6,14 76:9,
10 82:7 83:19
**iteration**
48:9
**its** 41:23
79:5,6
**itself** 15:14
16:25 24:18
65:8

---

**J**

---

**January** 5:18

**Jays** 13:21
**Jersey** 9:1
**job** 6:3,4,5
**Jody** 18:21,24
19:1,2,3
**joseph** 4:11
5:5,12 6:16
70:20 77:23
**judge** 25:12,
13,14,15
**July** 27:3
**June** 7:7
46:18,23
81:21,25
**just** 6:3
8:16,23 9:24
10:13 21:15
22:1,10 26:7
27:8,15 32:24
34:13 36:3,15
38:2,8,9,10
39:3 45:14
46:12 48:12
49:3 50:17
53:8 54:15
66:20 68:18
72:22 75:5
76:6 77:20
78:9,22
**justify**
49:18,21

---

**K**

---

**K-A-R-P** 5:13
**Karp** 4:9,11
5:5,12,14
6:10,14,16,17
8:3 14:5 22:9
26:6,10 36:16
39:24 40:16
41:2,14 44:4
46:11 48:3
53:13 54:23
61:24 67:18
70:20,22
76:23 77:23
84:20 85:7

Kass   4:23
keep   8:24
kept   68:10
  75:14 76:1,16
keys   65:15
kid   9:7,10,11
  64:19
kind   73:3
Kirk   6:9,10
Kleiman   4:12,
  13 8:4 9:4,6,
  12 11:20 12:3
  15:17 17:2,3,
  9 18:1 19:12
  20:16,22 21:4
  22:15 23:16
  24:4,10,15
  28:25 29:10
  30:12 32:5,6,
  10,17 33:15
  37:7 39:21
  40:9,19 42:15
  51:23 52:11,
  14 53:14
  55:3,10 57:10
  58:3,11,25
  59:21 61:8,11
  66:23 67:7,8
  69:2 70:3
  71:11 72:6,16
  73:8,19,22
  74:10,17
  75:2,13 76:1,
  16 77:25
  78:16 79:25
  80:16 84:14
Kleiman's
  10:12 12:15
  15:16,22
  27:17 43:11
  57:13 58:18
  59:13 63:7
  67:9,20 72:3
  77:7,12
knew   8:3,7
  15:3,4 19:1
  21:8 23:20
  34:5 66:17

73:19 82:3,8,
  11
know   7:5,17
  8:3,24 10:13,
  16,23 11:2,16
  13:5,13,14,
  16,17,19,23,
  25 14:6,7,16
  15:2,6 16:3,
  7,12 17:5,8
  18:4,17,21,24
  19:8 20:5,13
  22:5 23:9,16,
  19,20 25:14
  28:17,19,22
  29:15 32:10
  35:13,21 36:6
  40:4 41:21,22
  42:8,15
  43:15,18,25
  44:22 45:6,15
  47:10 48:3,15
  49:4 50:17,25
  51:2 52:5,9,
  12 55:6
  56:12,18
  58:18 60:19,
  24 61:6 62:23
  64:19 65:23
  68:7,9 71:23
  72:10,14
  74:19 75:25
  76:16,19
  77:14 78:13,
  14,16 79:11,
  13,21,24,25
  80:7,12,13,18
  81:21,24 82:1
  83:22,23
knowledge
  6:19 15:19
  24:4 35:12
  39:8 45:14,
  18,24 47:16
  50:3,19,21
  51:3 57:24
  58:2,10,15,21
  59:8 68:15,18
  72:20 74:17

76:15 77:1,4
  78:7 80:3,10
  81:4,5
knowledgeable
  10:24
known   6:13
  38:22

_____

        L

large   4:5
  76:3,18
last   16:9
  28:22 30:24,
  25 31:6 32:8
  41:11 47:15
  49:6 54:15
  55:13 76:21
Laura   28:3,19
law   4:9 5:20,
  21,22 6:9,12,
  17,19,20 7:1,
  6,9,10 28:10,
  13 32:7 40:18
  41:2,14 54:23
  68:21 69:19
lawsuit   67:6,
  13 71:4 81:16
lawyer   5:15,
  17 6:4 21:22
  22:3 24:15
  33:25 34:16
  36:18 59:24
  70:6 73:19
  81:1 83:8,12
lawyering
  48:2
lawyers   36:15
  44:1 65:3,4
Leaf   41:25
  42:4,8,11
  79:20
learn   37:7
  73:25 74:9
leave   50:18
  58:3
leaving   17:18

led   72:2,13,
  15
left   17:20
  28:23 66:21
legal   4:18
  37:21 53:20
  69:3,9,10,17
lend   15:14
lender   79:20,
  22
let   7:5 15:11
  22:5 25:12,15
  34:13 38:15
  40:2 45:23
  47:19 48:12
  53:17 60:24
  61:5 63:9,15
  69:2 76:11,15
let's   10:2
  36:7 60:11
  67:18 70:10
letter   46:11,
  14,15,17,18
  47:9,11,12,
  13,14,21
  48:10 49:7
  50:12 51:20
  53:2,13,22
  54:19 55:9,
  11,12 56:14
  57:1,9 63:14,
  18 64:1 82:5,
  7
letterhead
  46:25 54:23
letters   34:19
  54:17
Levy   4:3
license   7:16
licensed   5:22
licenses   7:12
liens   49:13
life   10:2,3
  12:6,22 14:1,
  7 15:14
  31:20,22,23
  50:5 75:14

| | | | |
|---|---|---|---|
| lifetime 73:1 | log 25:5,8,11 | mark 6:9 46:5 | 19,20 73:4 |
| like 9:16,22 | logo 52:20 | 63:9 | 74:4,13,15 |
| 12:24 13:21 | long 22:4 | marked 27:5, | 76:11,15 78:4 |
| 23:20 34:8 | 28:4 46:9 | 12 40:14 46:7 | 81:6,19 84:25 |
| 47:8 49:3 | 67:17 71:22 | 54:13 63:12 | mean 47:20 |
| 54:5 59:5,11 | 73:20 | marriages | 49:4 51:9 |
| 61:5 72:24 | longer 15:7 | 22:22,23 23:7 | 83:25 |
| 81:19 84:23 | 33:20 58:11 | married | meanings |
| liked 13:24 | look 17:20 | 22:15,21 | 44:10 |
| likely 79:17 | 30:17 35:10 | 80:23 | means 30:9 |
| limited 45:2, | 41:11 42:19, | mask 18:16 | 43:15 46:2 |
| 5 47:17 50:3 | 23 43:1,6 | material | 47:25 49:2 |
| line 47:5 | 45:10 46:13 | 44:19 58:6 | medical 30:24 |
| 59:5,9 | 47:19 61:8,13 | matter 69:10 | medication |
| liquidity | 63:15 66:9 | mature 9:22 | 7:25 |
| 78:23 79:6 | 69:19,25 | may 16:8,9 | meet 9:4,5 |
| list 35:22 | looking 65:24 | 31:16 33:21 | member 36:2, |
| listed 27:22 | 73:13 83:17 | 40:18,24 | 4,16,17 55:3, |
| 53:2 82:24 | lot 62:18 | 41:16 44:23 | 7 |
| lists 31:1 | 73:22 | 46:15,17 | memory 42:24 |
| litigation | lots 36:10 | 47:9,11 51:16 | 68:19 |
| 32:17 33:7,15 | Lou 16:22 | 52:3 64:5 | mention 51:4 |
| 64:22,23 65:8 | 72:16 | 65:18,24 66:7 | 53:13 71:4 |
| 83:18,23,24 | Louis 32:5,6, | 68:10 70:18 | 81:16 |
| 84:3 | 10 | 73:9 74:10 | mentioned |
| little 9:7, | lower 68:22 | 75:10 77:8 | 10:12 23:6 |
| 10,11,21 10:4 | luxury 24:2,3 | 79:8,17 | 40:21 47:11 |
| live 8:19 | | maybe 61:6 | 64:4 65:1 |
| lived 8:21,25 | | 62:5 81:3 | 66:5 70:24 |
| 9:1,8 17:5 | **M** | me 8:3 10:8, | merely 68:6, |
| 18:19 | | 10 11:13 | 13 |
| living 8:13 | made 49:14 | 13:5,16 15:11 | merged 6:12 |
| 9:19 | 65:18 66:20 | 16:21 22:18, | met 9:10,11 |
| LLC 4:14 | 68:21 71:7 | 19 25:9,12,14 | Miami 13:20 |
| 36:3,4,9,12, | 77:9 | 26:12 28:4 | 15:12,18 |
| 16,17 37:1,2, | magic 73:13 | 30:4 34:3,11, | 16:8,24 |
| 3,8 38:22 | mailbox 84:8 | 13 35:21 | 18:14,15 |
| 39:9 66:24 | mailed 47:21 | 36:20,21 | 19:13,14,18 |
| 82:25 | maintained | 37:4,24,25 | 50:9,18 55:10 |
| LLC's 82:13, | 8:8 | 38:15 39:14, | 66:22 |
| 18 | make 15:25 | 15 40:2,17 | Michael 47:3 |
| loan 79:23 | 22:7 84:1 | 42:19 43:1 | might 7:25 |
| local 24:2 | making 39:3 | 47:19 48:12 | 16:25 26:23 |
| 79:14 | 52:14 | 53:6,17 56:24 | 45:25 65:9 |
| locate 34:1 | many 9:15 | 59:24 60:17 | 66:2,19 |
| located 51:15 | 22:16,19 | 61:2,5 63:5, | 71:13,23 |
| 55:5 | 38:12 44:10 | 8,9,15 66:9 | 74:22 77:18 |
| | 52:5,6 62:2 | 68:23 69:2,4, | 83:2 |

military 10:5
17:19 19:23
milking 36:15
million 46:4
78:18
millions
21:3,9,10,13
74:10,18
78:22 79:2
mind 83:20
mine 65:1
minimum 73:14
minute 36:20
61:15
minutes 61:7
mistaken 16:4
Mitzvah 9:18
modify 53:18
Monchick 6:14
money 31:20
35:25 37:3
59:2 73:22
months 6:10
71:19 78:5,16
more 8:11,14
9:21,22 10:5
19:20 22:1
62:5,6 68:15
73:23 74:2
76:4 82:10
morning 4:7
5:12
Morris 28:24
mortem 27:1
mortgage
33:19 79:4,8
mortgages
49:13
most 14:1
34:17 50:8
mother 8:5,6,
8,11,22 9:9
32:3
motor 49:20
moved 8:12,
13,16 9:2,16

moving 8:17
Mr 4:21,23,25
5:9,14 8:3,4
10:18 11:1,4,
7,10,15
12:14,18
13:1,3,7,10
14:2,5,9,17
15:1,9 16:2,
5,17,18,20
17:1 18:23
19:5,7,11,16,
22,25 20:1,4,
6,8,10,12,15,
18,20,23
21:2,6,11,16,
19,20 22:1,9,
10,13,14,24
23:2,4,8,11,
15,18,22
24:4,6,8,10,
12,14,15,19,
21 25:1,20,23
26:4,5,6,23
27:2,5,7,9,13
29:2,5,9
30:12 31:8,10
32:18,23,24
33:2,3,5,10,
11,16,24
34:25 35:4,19
36:1,16 37:9,
13 38:3,5,24
39:2,4,5,7,
17,19,20,22,
23,24 40:1,7,
11,15,16
43:24 44:3,4,
6,12,14,16,17
45:1,4,6,8,
13,16,19,20,
22,23 46:5,
10,11,21,22
47:3 48:3,7,
11,17,20,24
49:5 52:21,23
53:3,8,10,12,
13,15,17
54:2,3,6,8,

10,14 55:3
56:1,6,9,13
57:23 58:1,3,
5,9,11,14,17,
23,24 59:3,4,
7,12,16,17,18
60:2,6,8,11,
14,15,22
61:4,11,15,
21,23,24,25
62:3,25 63:4,
9,13,22,25
64:3,6,7
66:25 67:5,
10,14,18,22,
23 68:1,4,13,
17,24 69:1,5,
7,8,13,16,22,
24 70:2,5,10,
15,17,18,19,
21,22 74:3,8,
20 75:1,8,12,
22,24 76:5,8,
20,23 77:3,6,
13,21,22,24
81:3,7,9
82:2,6 83:1,
6,8,9,11,16
84:4,6,9,12,
16,19,20
85:6,7,10,12
MRSA 18:7,8
much 11:12
37:1 73:23
74:2,22 82:10
my 5:12 6:5,
11,12,19 7:23
8:5,6,7,11,22
9:8,14 10:9
11:18 13:8,19
14:5,20 16:9
17:15,16 18:6
19:17 32:12
37:4 40:18
42:13,23
44:1,20 47:23
50:14,19,21
51:3 53:18,25
55:12 56:5,25

57:7,8,12
59:22 62:19
64:25 68:8,21
69:20 70:22
72:15 73:16
76:9 78:9
81:5 83:4,14,
20
myself 83:15

---

## N

Nakamoto
75:17,21
name 5:11,12
6:17,20 41:2
70:22
named 6:9
29:7 31:22,24
names 6:14
29:4
napkin 52:18,
19
Narkier 6:13
National 7:9
natural 19:9
necessarily
66:1
necessary
30:24 31:6
needs 83:11
negative 15:5
negotiations
72:13,14
nephew 11:24
Nevada 36:25
never 10:11
15:5 50:9,15
51:10,13
58:25 64:20,
21 66:4 70:7
71:6,21 72:4,
18,20 77:19
81:17
New 5:21,24
6:2,6 8:17,19
9:1

**news** 23:17,
  23,24,25
  24:1,3,5
**next** 26:16
  31:1 41:25
  51:6
**nine** 71:17,
  20,25
**no** 7:23 8:2,
  21 10:4 11:11
  13:12 15:7
  16:7 17:10
  20:9 21:1,14
  27:11 28:11,
  16,18 29:11
  32:12 33:20
  35:25 36:14,
  24 37:6 38:13
  40:13,25
  41:7,23 42:5,
  17,24 43:20,
  23 45:24
  46:1,6,16,20,
  21 47:19,22
  48:1 49:8,14,
  21 51:5 52:6
  53:16 54:2,
  10,12,18
  55:11,12
  57:24 58:11,
  15,21 59:8
  60:12,16,18
  61:13 62:12,
  14 63:3,8,11,
  19 64:12
  65:20,22
  67:12,16
  68:17 72:25
  75:9,23 76:13
  77:21 78:7,9,
  14,19 79:5,6,
  16 80:3,6
  84:10,17
**nobody** 56:24
**non-exempt**
  30:21
**non-legal**
  21:25

**none** 53:1
**nor** 24:3
  36:25 37:4
  51:10,14
  78:23 79:6
**normally**
  34:19
**not** 7:20,22,
  24 8:24 9:10
  10:22 11:5,
  18,25 12:6,8
  13:4,9 14:4,
  6,15,20 15:3,
  20 17:4,7
  18:9,10 19:4,
  9 20:19 21:21
  22:8,11
  24:19,21
  26:25 28:23
  29:24 30:22
  31:5,12,16,25
  32:22 33:6,8,
  22 35:21,25
  36:8,19,24
  37:4 38:18,
  21,25 39:3,18
  40:4 42:14
  43:8,9 44:16
  45:19,22
  46:4,15 47:23
  49:18 50:20,
  21 51:3 52:5,
  7 53:9,10
  55:24 56:4,
  11,23 59:9,
  10,22 61:12
  62:15 63:20
  64:23 68:17
  69:9,20,22
  70:6 71:14
  72:25 73:4,5,
  19 74:5,9,13,
  22 75:3,5
  76:2,11,14,
  18,23 77:3
  78:4,12,13,23
  79:8,12,25
  80:23,25
  81:1,7,19,20

  82:4,19 83:6,
  15 84:1,5
  85:2
**notarizing**
  28:8
**notary** 4:4
  28:7
**nothing** 34:10
  61:7,9 72:16
**November** 4:8
  5:18
**now** 4:7 6:24
  19:23 23:19
  30:17 69:24
  70:1 71:16,21
**number** 4:14
  7:13 47:5
  50:19 71:13
  83:20
**numbers** 7:15
  26:10

___

**O**

**Object** 10:18
  11:4,10 15:1
  16:2,17,20
  18:23 19:7,
  16,25 20:4,8,
  12,18 21:6
  29:2 31:8
  32:18 34:25
  35:19 48:17,
  24 52:21
  57:23 66:25
  74:3,20 75:22
  82:2
**objected**
  21:19
**objection**
  20:23 21:21
  22:24 23:4,
  11,18 24:6
  39:3 44:14,20
  45:4,8,16
  48:7 53:15
  58:14,23
  59:3,7 67:10,

  23 68:4 75:8
  76:5,20 77:13
  83:1 84:16
**objections**
  39:15
**obtain** 40:8
  41:5 66:14
**obtained** 39:1
**obtaining**
  62:21,22 65:4
**occasions**
  50:19
**occupations**
  10:13
**occur** 38:1
**occurred** 38:9
**October** 54:19
**of** 4:5,11,12,
  13,16,21,23
  25 5:23,24
  6:1,8,17,21,
  22 7:6,20
  8:10 9:1,21
  10:3,12,23,25
  11:12,18
  12:1,8,10
  13:9 14:1,4,7
  15:13,19
  16:3,12,24
  17:18,24 18:7
  19:8 20:3,14,
  16 21:3,8,9,
  10,13 22:4,
  22,23 23:2,3,
  10 24:2,3,4,
  9,18 25:2,3,
  10 26:10,17,
  18 29:6,9,18
  30:5,10,13,
  18,19,20,21,
  22,23,25
  31:5,11,14,
  17,21,23
  32:8,15,17,
  20,25 33:1,5,
  7,15 34:1,19,
  20 35:2,6,21,
  22,24 36:3,4,

10,14,16,17
37:19,25
38:1,6,8,12,
13,14,22
39:20,21,22,
25 40:2,17,
20,25 41:11,
18 43:5
45:18,24,25
46:2,15 47:2,
13,19 48:5,9,
13 49:6,8,16,
21 50:8,14,
18,19 51:10,
13,16,25 52:7
53:1,2,4,5,
14,20,24
54:16,17,18
55:3,12,21
56:15,16
57:1,2,8,16,
24 58:2,15,21
59:9 60:12,
17,18,20 61:8
62:16 63:7,16
64:12,21,24,
25 65:5,10,
11,22 66:3,
13,14,16
67:8,9,12,17
69:9,13 70:4,
9,15 71:13,
16,18 72:6,
11,20,21,23
73:1,2,17,22
74:1,10,11,18
75:14,17,20
76:3,6,25
77:15,20
78:7,15,22,
23,24 79:2,6,
7,11,20 80:1,
3,7,8,9,10,
16,21 81:4,
21,24 82:1,3,
10,20 83:18,
21 84:5,18

**off**  11:18
25:23,25 26:1

58:12 61:16,
17 70:11
71:13 85:5
**offered**  14:13
**office**  10:20
28:10,13,24
**officer**  10:14
11:16 23:10,
17
**officers**
35:23
**often**  15:10,
11 17:8 51:4
**oh**  66:1
**Okay**  17:2
27:16 30:7
31:15 33:16
41:13 42:25
**old**  15:24
16:15,24
**older**  9:21,23
10:5
**on**  4:8,21,23,
25 6:14 8:15
10:9,16,23
12:6,14 15:7,
23 17:24 18:9
22:2,25
23:12,24 24:1
25:8,11,20
26:3,21 27:20
28:5,7 30:12,
15 31:4 32:5,
18,25 34:9,20
35:5,15
36:17,23
37:2,3,9,18
38:3,24 39:5,
18,20,22
40:1,2,5,18,
19 41:21,22
42:12,18 43:7
44:15 45:9
46:18 48:5
49:7,13 50:19
52:14,18,19
53:3 54:15,
22,23 55:15

61:20,21,22
65:5,12 66:7
67:7,11,20
69:5,7,21
70:14 71:3,13
72:2,19 74:16
76:12,15,23
77:1,4,8
79:7,17,23
81:15 82:15
84:4
**once**  34:6,21
55:19 56:17
57:3
**one**  6:20
10:25 12:3
18:25 19:3
21:16 22:22,
23 23:2 26:18
33:14 40:20
41:9 45:10
47:23 49:25
50:8 51:11
52:3 54:22
62:6 64:4
65:2 69:2
74:7 77:15
79:14 80:7
82:17
**only**  7:9 22:7
25:16 30:19
32:10 41:8,9
44:6 47:16
61:7 62:9
77:4 80:13
**open**  48:4
60:5
**opened**  34:21
76:6
**opinion**  80:6
**Opportunity**
73:1
**option**  84:20
**or**  5:6,18
6:18 7:14 8:3
9:25 10:4
11:11 15:3
21:12 26:4

27:7,21 31:25
32:3 33:6,21
34:12,19
35:23 36:13
37:1,20,24
38:8,16
39:21,25
43:19 44:24
46:15 49:22
50:17,20,25
51:14,15,19
52:6 53:14,21
54:4 55:7
56:11,19
59:10 60:20
61:7 62:5,8,
11,15,23,24
64:18 66:6,20
67:7,12
72:11,23,24
75:20 78:9
79:17,24,25
80:8,21 81:11
84:2,7,13,21,
23
**order**  25:17
35:1 45:11
48:10 49:22
74:1
**ordering**  85:9
**orders**  80:2
**ordinarily**
40:21
**ordinary**
34:13
**organization**
7:10
**Originally**
17:25
**other**  6:14
7:12 13:13,24
14:6 17:6
18:19 22:13
28:8,12 29:9
30:2 31:16
34:16 41:5,6
44:1 49:21
61:7 64:3,14
65:3 72:19

75:20 82:20
**others** 13:6,9
**otherwise**
32:1 35:13
56:20
**our** 9:22 10:6
15:4,5,13
19:3 36:8
70:15 71:16,
18 84:22
**ourselves**
36:13
**out** 15:21
32:8 43:21
55:20 56:4,
16,17 57:3
59:2 65:2,4,
12 66:15 71:4
73:25 74:24
79:14 80:1
**outed** 75:21,
23
**outstanding**
49:13
**over** 6:3 7:20
26:12 33:15
59:15,20
60:17 72:2
78:17
**own** 6:11 9:14
12:22,25
15:13 35:22
52:14
**owned** 35:10,
12 71:11
76:2,18
**owner** 38:22
**ownership**
39:9

---

**P**

**P.A.** 6:16,17
**packet** 29:13
**page** 26:9,18
27:15,20 28:8
29:12,13
30:12 31:1

**32:5 41:11**
49:7 51:6
65:6,9,21
66:24 67:19,
22 68:2,13,17
82:15,16
**pages** 26:16,
17 52:6
**paid** 32:6,8,
11
**Pain** 18:10
**painful** 18:10
**Palm** 4:9 8:14
9:17,19 10:15
16:11 18:1,5,
20 19:13,14
27:23 44:9
46:1 50:16,
18,23 51:1
**paper** 72:21
**papers** 51:14
84:14
**paragraph**
30:17,18
47:8,15,19
49:6,24 51:7,
11,12 55:13
82:12
**paragraphs**
52:10
**paralyzed**
18:8 19:18,21
**parents** 8:12
10:7
**part** 17:25
39:25 72:19
**particular**
7:2 35:17
**particularly**
17:7 22:23
**partnership**
76:1,17
**parts** 12:8,
10,12 14:4,7
17:22 75:14
**Paschal** 4:21
5:9 11:1,7,15
13:1,7 14:2,

17 15:9 16:5,
18 17:1 19:5,
11,22 20:1,6,
10,15,20
21:2,11,19
22:1,9,13,14
23:2,8,15,22
24:8,14,19
25:1,20,23
26:4,5 27:2,
5,9,13 29:5
31:10 32:23
33:2,5,11,24
35:4 36:1
37:13 38:5
39:2,5,17,20,
23 40:7,11,15
44:3,12,16
45:1,6,13,19,
22 46:5,10,22
48:11,20 49:5
52:23 53:8,12
54:2,6,10,14
56:6,13 58:1,
9,17,24 59:4,
12,17,18
60:8,14,22
61:15,21,23
63:4,9,13
67:5,14 68:1,
24 69:1,7,13,
22 70:2,10,
15,18 74:3,20
75:8,22 76:5,
20 77:13,22,
24 81:9 82:6
83:6,9,16
84:6,12,19
85:6,10
**pass** 19:6
**passed** 57:18
**passing** 65:1
**password**
68:22
**past** 23:20
**Patrick** 65:6,
9,21 66:20,24
67:19,22 68:2

**patrol** 10:23
**pattern** 64:24
**pay** 31:19
32:8 57:10
58:11 62:19
79:3,8,12
84:25 85:2
**paying** 33:20
57:20 58:20
**penalty**
30:10,13
48:13
**pending** 54:2
76:21
**people** 9:15
13:24 14:6
31:19 34:4,11
35:21 38:12
64:17 74:18
**period** 8:25
**perjury**
30:10,13
48:13
**person** 12:5,7
16:23 20:16
32:6,8,11
34:21 35:17
36:9,21,22
43:18 56:23
**person's** 6:20
**personal** 4:12
11:23 15:19
21:24 29:18
30:5,19,22
31:11,13
32:15 38:13
45:14,24
49:20 50:3
51:3,25 57:24
58:2,10,15,21
59:8,22 70:7
74:17 76:10,
15 77:4
**personality**
12:3
**personally**
14:22

Peter 5:13
petition
29:18 30:5
32:15 33:12,
13 38:2,9,10,
11
PGA 27:23
phone 57:21,
22 58:20
62:8,10 64:8
79:12
phrased 44:18
56:23
piece 72:20
pieces 72:21
84:1
places 8:22
plaintiff
17:24
plaintiffs
5:1 70:23
planning 7:1
pleadings
52:17
please 4:19
5:10 7:5
20:23 22:5
26:14 41:11
60:24
point 7:15
8:15 10:1,9
19:3 20:13
22:25 62:13
66:6 72:5
police 10:14,
20 11:16
23:9,17
policy 31:1,
14,22,23
49:19
position
36:14
possibility
36:6 66:16
possible 37:5
64:9 85:11

post 27:1
potential
49:14
potentially
39:1,13 50:23
practice 5:22
6:11,12,23
7:2
practitioner
6:12
precarious
36:14
preferred
30:23
prepare 29:13
60:2 61:2,9
preparing
60:23
present 4:18
preserved
44:20
president
35:24
presumed
68:13
previously
39:7
pricing 78:6,
11
primary 6:23
prior 42:13
66:18
private 12:9,
11,12 14:5,8
75:14 79:9
privilege
13:11 21:21
22:3,12,13
23:5,12
24:23,24
25:2,5,8,11
32:23 37:18
39:18 40:5
44:15 45:9
60:12 67:11
76:7,12,14,
22,24 77:2

80:15,20,21,
22 81:6
83:13,15
privileged
12:20 14:10
20:24 21:17
23:7,21,24
24:1,11,16,
17,18 25:3,15
32:21 37:10,
17 38:6
39:10,12
44:2,7,19,23
45:18 56:2
58:6 60:1,6,9
63:1 67:1
80:13,19
81:2,8
pro 72:23,25
probably 6:18
9:7 14:20
22:4
probate 30:20
49:9,18,21
problem 21:20
22:5
problems
57:20
proceed 34:7
65:5
proceeding
49:9 81:11
product 33:2,
6 83:5,14,20
professional
4:4 7:12
progressing
71:19
promised
75:2,5
prompted
16:25 18:4
property
29:19 30:6,
19,22 31:13
32:15 38:14
provide 47:10

provided 4:18
34:19 64:25
providing
53:20
pseudonym
75:16
public 4:4
6:8 34:9
35:5,6 36:23
publicly 25:8
purposes
83:22
pursue 33:22
put 25:7
68:23 84:1
Putting 27:7

---

Q

quarterly
55:15 57:11
question
12:18 13:8
14:5 23:13
24:7,13
25:16,18 31:9
32:19 33:10
37:10,12,14
39:4,11,14
42:22 43:15
44:6,11,18
45:17 48:14,
18,25 53:8,
17,19 54:1,2,
3,9,15 56:1
58:5,7 59:16
60:2,7,13,14,
15 62:25
69:2,6 76:14,
19,21 77:5
78:9 81:13,
14,20
questionable
78:25
questions
53:4 70:16,
18,24 76:9
77:21

quid  72:23,25
quite  49:11
 76:9
quo  72:23,25

                R

Rachels  13:22
Ramona  64:11
ran  40:18
 41:18,20,21
rather  69:10
Re-ask  33:10
re-formated
 84:15
read  52:2,5
 84:21,23 85:2
reading  85:1,
 3
ready  34:11
 54:21 79:10
realize  18:9
 25:7 48:22
 78:5,10,12
really  16:15
 35:18 38:3
 64:19
reason  7:21,
 23 32:12
 40:25 41:23
 42:21 49:11
 53:1 55:12
 60:18 61:13
 79:3
reasonable
 30:24 31:6
recall  10:22
 17:2,13,14
 24:1 31:24
 38:11 40:10
 47:11,13,14,
 18,20 50:21
 52:25 54:16
 57:19 58:8
 61:24 62:12,
 14 64:2,3,6,
 9,10,17 74:16

75:13 81:14
 82:3
recalled  71:7
receive  38:20
 59:20,25
received  20:2
 53:22 60:3,4
recent  34:18
recess  26:2
 61:18 70:12
recognize
 26:6 28:2,3
 29:16 46:11
 55:19 57:3
 63:14,15
recognized
 7:10
recollection
 42:17 47:22,
 23,24 52:7
 54:18 60:17
 64:12 67:16
 84:11,18
record  4:8
 5:11 22:10
 25:23,25 26:3
 34:9 61:16,
 17,20 70:11,
 14 72:23 85:5
recorded
 45:12
recording
 25:21
records  40:20
 43:13,16
 49:12 60:21
 83:17
REDIRECT
 77:23
reference
 12:19 44:7,19
reflects
 38:11
refresh
 47:23,24
refuted  39:11
regard  33:19

59:10 69:3
 80:6 82:13,18
 83:3
regarding
 32:17 38:7
 47:5
regardless
 71:20
Regina  8:5,23
Registered
 4:4
regular  15:23
related  43:13
 62:20 84:3,18
relationship
 11:20,21 15:6
 22:7 41:9
 73:10,11
relationships
 12:21
relatively
 16:23
release  73:2
relying  76:23
rem  33:18
remained
 12:12
remember  5:19
 9:17,18
 72:10,11
rephrase  38:4
 39:13 76:11,
 15
report  23:17,
 23 39:24
 40:8,18
 41:12,19 43:7
 45:11 79:19
reporter  4:4,
 20 84:22 85:9
reporting
 4:17 24:5
reports  41:5
represent
 41:20 70:23
representation
 24:9,17 25:3,

10 62:12
representative
 4:12 51:25
represented
 63:21
representing
 53:23
represents
 55:11 63:23
required
 39:11
Research  4:14
 82:25
researching
 83:3
resent  48:14,
 18,25
resist  72:25
resorting
 37:10 53:19,
 21 56:2 58:6
 63:1 67:1
resources
 45:2,5 47:18
respond  47:9
responding
 53:5
response
 23:14 60:18
rest  47:19
restored
 18:13
result  82:10,
 20
results  40:23
 41:18
retained
 65:22
retainer  34:3
return  37:2
 67:9
returns  34:8,
 23,24
reveal  12:19
 14:15 25:12
 35:16

revealed
  65:13
reverse  35:8
  69:21
Rick  4:3
right  7:18
  10:17 17:19
  18:2 19:23,24
  20:11 29:1
  46:19 50:7
  54:20,23 78:2
  81:22,24
  84:21,24
rights  31:18
Rio  54:25
rise  74:12
  78:2
risk  74:1,6
  78:1,3
Riviera  17:15
road  10:23
robes  18:16
run  39:24
  40:21 41:3
Russian  13:22


          S


S-P-R-I-N-G-L-
  F  42:6
S-T-U-A-R-T
  5:13
said  14:4
  15:23 16:6,9,
  23 21:9 26:23
  34:12,23 35:5
  38:15 41:2
  44:17 45:6
  46:8 47:21
  54:7 56:17
  59:19 61:4
  63:9 64:18
  65:23 71:14,
  15 75:6 77:16
  81:15
same  6:19
  9:8,9 13:3,10

14:9 20:24
  21:6 23:4,11,
  14 33:13
  44:14 45:3,8
  56:9 67:10
satisfy  49:22
Satoshi
  75:17,21
saw  16:9,11
  23:23 38:9,10
  50:9,20 51:2
  52:16
say  8:23 10:2
  11:6,19 15:11
  20:22 21:4
  30:3 36:7
  43:4 45:19
  47:8,16 49:8,
  11,25 50:15
  51:9 54:4
  55:13,18
  56:14 57:1
  63:17 65:15
  66:1,2 67:18
  69:14,16,17
  75:3,6 82:13
saying  36:5
  47:18 56:7
  65:1 71:13
  81:4,7
says  11:25
  26:10 30:1,7,
  18 32:5 40:23
  41:14 42:6,12
  43:2 47:5
  50:8
scenario
  34:13
Scharf  6:13
school  5:20,
  21
scope  24:9
screwed  35:24
search  35:15
  36:19
searched
  38:18

searches
  35:5,6
second  5:25
  18:18 21:16
  25:24 28:7
  30:12 32:5
  38:24 47:8,15
  49:24 51:11,
  12
secret  76:1,
  17
section  30:20
securing  66:4
see  14:23
  15:3,25 24:3
  34:9,18 35:10
  37:2 41:14
  42:1,7 46:9
  49:9 50:1,5,
  22,24,25
  51:17 55:16,
  21 65:10
  66:10
seeing  24:1
seeking
  37:21,23
  65:14 69:17
seem  59:5
seen  16:13
  50:15 52:3
self  55:20
sell  78:24
sending  54:16
sense  49:14
  73:17 77:20
sent  46:14,
  16,17 50:12
  51:20 55:9
  57:9 82:7
sentence
  47:15 49:8,25
  50:7 51:12,
  17,19 82:12
separate
  56:12
September
  26:21 30:15
  31:4 40:3

Series  7:14
served  6:7
services  4:17
  53:21
set  29:6
settled  17:23
shake  74:14
share  12:23,
  25 13:2,8,15
shared  13:5,
  12,14,17,20,
  23 14:6
shareholder
  35:25
shareholders
  35:23
shares  72:6,
  24 73:3
she  8:6,23
  17:19,20
  28:4,10,21,
  22,23,24
she's  28:7
sheriff  10:15
  11:12 20:11
sheriff's
  10:20
shield  77:2,4
shock  11:13
short  8:25
  46:9
shortly  84:13
show  30:4
  56:24 69:19,
  20
showed  26:7
  64:17
shower  18:21
showing
  40:16,17
  54:19
shut  58:12
shy  12:4
signature
  27:15,17
  28:3,5,8

signatures
28:2
signed 30:12
34:20 40:3
46:16
significant
79:8
simple 35:15
49:12 60:14
since 7:7
15:20 39:14
46:16 62:14
63:20 64:19
68:13 72:17
73:21
sir 18:3
21:14 25:4,6,
19 26:20
27:18 30:11,
14,16 31:3
41:4 43:12,19
47:4,7
sites 35:7
six 6:10
71:19
so 6:22 7:7,
20 8:7,16
9:4,19,22
10:13 12:20
15:6 16:4,6,
9,12 17:17,
22,23 18:19
20:19,21
22:1,10 25:16
30:5 31:4
32:2,14
33:22,25
34:21 36:2,10
38:6,15,20
39:12,13 40:3
43:1 44:7,10
48:6,12
50:21,23 56:7
60:11,15
61:12 63:2
65:11,16
66:4,13,16,18
67:18 68:22
71:20 74:9

75:5 77:25
79:6,13 81:20
83:21
soda 13:23
soldier 20:3,
7
sole 6:11
some 7:20
10:9,12,23
20:13 66:6,7
68:14 72:5
76:6 77:22
somebody
11:14 19:20
20:21 21:3
34:1 36:2,7,
16 66:10
80:24
something
13:24 20:21,
22 21:5,9
22:2 23:20
30:2 32:7
33:9 38:17
54:5 66:12,13
74:24 79:7
somewhere
6:18 52:16
Sommers
63:22,25
64:3,6,7
sons 64:25
soon 85:10
sorry 15:11
43:25 46:23
56:21
sort 10:23
source 37:17
82:20
southbound
17:21
Southern 4:16
space 42:6
speak 9:25
61:5 63:25
64:16
speaking 13:9

39:2,3,15
64:3,10
special 19:14
31:19
specific
69:10
specifically
47:14
speed 71:16,
18
speeded 71:23
spent 37:3
50:8
spheres 62:19
spoke 8:23
38:2,8 61:6
67:21 79:20
spoken 64:13
65:6 67:15
sporadic 9:14
Spring 41:25
42:3,8,11
79:20
stand 20:17
75:2
stands 53:25
start 49:25
71:16,17
started 9:20
36:11
starts 26:12
state 4:5
5:10,23,24
6:21 7:6 43:4
stated 59:13
67:19
statement
29:21,22,23
30:1,2,4
34:18 49:16
50:13,14
51:19 57:6,8
71:8
statements
34:14 48:23
76:25 77:8

States 4:15
status 33:23
45:12
statute 31:19
stay 9:12,15
stayed 8:22
steps 43:21
still 22:11
28:10 83:19
stole 20:21
21:3
store 8:7
story 23:23,
25
strange 11:22
strapped
44:13 47:17,
25 49:2
strategy
53:4,22
strike 43:7
76:19 79:25
strip 11:9,13
struck 77:5
Stuart 5:12
28:24
stubborn
16:23
stuff 7:21
37:1 44:2
71:15
Sub 54:25
subject 40:4
69:10
submitted
41:21
subscriber
41:2 43:14,
17,19,22
subsequent
42:14
subsequently
17:17
substance
37:25 62:16
69:4,8

such 31:17
49:19,20 67:4
68:16 71:6,7
81:18
sued 66:23
suggested
66:13
suit 67:4
Suite 4:10
27:23
sum 30:22
Sunbiz 66:10
Sunbiz.org
35:16 36:18,
25 38:18
Sunbiz.org.
36:23
Support 4:18
Supreme 5:25
sure 9:10
10:22 13:4
20:19 21:16
52:5 59:9
64:15 66:1
75:4 84:5
surprise
16:6,19,21
73:24 74:9
75:25 78:4
surprised
74:4,13,15
76:16
survived
72:17
swear 4:20
sword 77:2,3
sworn 5:6,19
29:22,25
30:8,9
systems 10:10

T

take 4:10 6:4
11:22 14:21
17:22,25
28:22 30:17

43:21 46:14
55:21 56:15
61:15 64:21
69:19,24
70:10 71:17,
22 85:12
taken 4:3
18:5,12 26:2
50:17 61:18
70:12 72:2
75:10
taker 74:6
78:1,3
taking 7:25
33:14 80:7
talked 71:12
talking 32:21
48:4 62:18,19
71:21
tax 6:1 34:7,
23,24 37:2
technology
68:15 71:16,
19
telephone
70:25 71:3
81:15
tell 8:3
14:18 15:20
21:12 22:19
25:12,13,14
33:9 38:16
59:24 61:2
70:3
telling 36:20
39:5 63:5
69:4 80:10
ten 61:6
tended 77:17
tens 78:22
term 68:7
terminated
62:11
terms 60:20
test 37:4
76:24
testified 5:7

18:18 39:8
45:17 60:8
77:25 78:3
testify 15:20
testifying
74:16 75:13
testimony
7:22,23 8:1
16:1 36:18
48:16 58:22
68:24 84:22
tests 7:15
text 11:25
texted 12:1
than 9:20,22
22:4,13 30:2
42:24 62:6
64:4,14 68:15
72:19 73:23
82:20
thank 22:9
61:19 68:7
70:13 85:6
Thanksgiving
10:7 12:2
52:10 54:4
that 6:6,13,
14,17,21
7:23,24,25
8:15,19 9:1,
18,19 10:16,
25 11:2,8,19,
24,25 12:3,9,
10,12,15,18,
19,22,23,25
13:4,5,9,15,
16,17,19,21,
23,24 14:4,7,
18,20 15:3,7,
14,21,24
16:6,7,10,15,
19,24,25
17:11,13,18,
22,23,25
18:6,9,10,12,
18,21,22,24
19:14,17,20
20:5,16 21:13

22:5,6,15,20,
22 23:9,16,
19,20,24
24:1,5,11,12,
16 25:2,7,12,
16,17 26:6
27:17,24
28:5,22,23,25
29:9 30:7,18
31:16,18,19
32:7,12,13,16
33:12,18,19,
21 34:4,8,10,
21,22 35:12,
15,20,21
36:4,8,9,18,
19,20,21,24
37:4,5,7,12,
14,16,23
38:2,7,8,9,
10,11,13,15,
17,22 39:1,8,
20 40:2,18
41:14,18,20
42:1,3,7,20,
21,22 43:8,
13,17,18,21
44:1,11
45:17,19,25
46:14 47:11,
13,16,18,20,
21 48:1,3,14,
18 49:3,9,16,
17,21 50:1,5,
8,15,21
51:16,17,19,
23 52:2,9,10,
13,14,15,16,
18 53:1,14
54:1,5,18,20,
22 55:3,5,6,
9,11,16,19,
21,23,24
56:5,7,14
57:3,6,7,10,
12,13,15,16,
17,20,25
58:8,10,16,
18,21 59:1,5,

9,11,13,19
60:1,12 61:14
62:13,15,17
64:4,12,18,21
65:5,9,11,16,
17,18,21
66:7,11,12,
13,14,17,20,
21,23 67:3,6,
8,13,17,21,24
68:2,5,6,11,
13,16,18
69:10 70:3,8,
15,25 71:4,
23,24 72:2,4,
5,9,12,13,14,
15,18,20,24
73:9,10,14,
16,18,23,25
74:5,9,16
75:2,3,7,13,
16,19,25
76:1,3,10,16,
17 77:7,11,
15,16,17,18,
25 78:1,3,4,
5,12,16 79:1,
7,11,23,25
80:3,7,9,12,
15,18,20,25
81:20,23
82:4,8,9,19,
24 83:2,5,18,
25 84:3,13,
18,21

**that's**  13:8
27:22 30:15
34:19 36:6
38:25 39:2,3
41:16,18,22
42:18 49:2
54:6 55:7
56:16,22
63:22 67:24
69:11,20
81:20 82:22
84:19

**their**  15:25
16:3,12,13

27:25 28:2
35:22 58:22
66:12 82:10

**them**  10:21
41:10 48:1
59:1 65:11,25
66:2,14 68:3
77:8

**themselves**
35:22 36:4,7

**then**  4:19
6:8,12 8:11,
12,13 9:2
12:20 17:2
18:13 19:3,12
20:11 21:20
26:11 34:4,5,
7 37:3,11
49:11 50:7
53:23,25
55:18 62:7,11
63:1 66:2
79:16 85:1,3

**there**  7:21,23
8:24 9:14
10:3,8 12:8,
13 14:4,7,14
15:3,4,5
16:7,22 17:4,
12,16 18:22
19:19 26:17
27:19,20
28:23 31:24,
25 32:16
33:6,18,22
34:9,10 35:2
38:17 43:9
46:16 47:13
49:8,18 50:20
51:10 52:4,6,
9 53:1,13
54:2 56:18
57:16 62:10,
12 64:5,7
65:16 66:1,6,
11,17,18,20
67:3,6,18
68:5,16
72:14,17,22,

23 83:22 84:2

**there's**  35:7,
8 36:25 55:14
60:12

**Thereafter**
6:10

**therefore**
39:10

**thereupon**  5:4
26:2 61:18
70:12

**these**  28:1,12
38:6 72:24

**they**  7:8
8:13,21,25
9:1,2,16
16:6,9,13,14
18:12 28:12,
15,17 34:5,6
36:3,17 37:1,
2,21 41:20,21
49:1 55:8
56:12 59:1
60:20 65:24
73:9,11,14
79:21

**they're**  36:17
84:25 85:2

**thing**  9:15
18:11,17
27:7,9,10
46:8 61:7

**things**  34:8
53:25 55:21
56:15 77:16
78:24 81:19
83:21

**think**  10:23
11:12 14:23,
25 15:16
17:11 18:15
20:2 21:4
22:2 29:12
53:3,6 54:6
56:17 60:9
61:13 62:4,5
65:25 69:11,
16,18 71:24

76:5,9 80:4
83:11,24 84:4

**thinking**
32:20

**third**  28:5
29:13 49:8,24
51:7,11,12

**this**  4:8 7:15
11:25 23:17
26:4,12,14,
15,16,19,21,
25 27:5,19,22
28:5,10,13,25
29:13,21
31:4,18 32:14
33:12,13,23
36:9 38:11,20
40:11,20,22
41:3,11,19
42:18 43:10
44:2 45:6
46:5,18,25
47:12,20,22,
24 48:9,12,25
49:6,11 50:12
51:20,24
53:2,6,13
54:10,25
55:4,9,14,19
57:1,2,9
60:8,23,25
61:3 63:10,
14,18,25
64:13,19,20
65:2,6 69:2
70:23 71:15
76:14 78:7
79:1 80:11
82:15 83:15,
24 85:4

**those**  7:15
12:10 13:2
36:11 37:25
38:1 51:16
52:16 53:24
59:15,19
60:19 65:25
66:7 68:7
71:3 72:1,21

73:3 74:1
75:7 83:17
**though**  14:3
**thought**  45:20
66:1,16 68:6
75:23 77:17,
18
**thoughts**
12:25 13:2,8
32:20,25
**three**  15:13
27:19,20,21
28:1 30:17
62:5 82:17
**threw**  84:14
**through**  34:7
37:17 39:9,11
66:3 80:13,19
81:6 83:20
**throughout**
9:13 50:4
**Thursday**
11:25
**time**  8:20,25
9:1,19 15:3,4
22:4 25:20
28:4 31:4
32:14 33:12,
13 35:24
50:8,9 52:4
55:9,14,23
56:5,19 57:9,
16 68:23 72:5
73:20 79:1
84:7 85:6
**times**  10:4
15:13 16:7
22:16,19 62:2
**timid**  12:7,8
14:4
**title**  30:1,3
**to**  4:10 5:22
6:17,19,20
7:10,20,21
8:6,12,13,16,
17,23 9:2,7,
16,20 10:6,
13,18 11:4,

10,20 12:1,4,
7,19 13:19,25
14:3,12,15,
18,21,23
15:1,2,7,14,
20,21,25
16:2,10,11,
16,17,20,23,
24,25 17:11,
14,16,17,20,
22,25 18:4,5,
14,16,19,20,
23,25 19:7,
13,16,18,20,
25 20:4,8,12,
18,23 21:6,
15,19,24
22:11,20
23:11,16,17,
18 24:2,3,5,
6,19,21 25:7,
10,12,14,17
26:4,9,12,13,
15,23 27:14,
15 29:2,12,24
30:8,9 31:8,
19,20 32:1,7,
13,18,21,22
33:7,8,9,19,
20 34:1,3,4,
7,9,11,12,18,
19,21,25
35:2,10,13,19
36:8,11,21,22
37:10,16
39:10,12,13,
14,15,16,18
40:4,11,25
41:10,23
42:3,13,19,
22,23 43:1,6,
8,13,18,21
44:7,14,16,
19,20,23,24
45:4,8,11
46:9,13,15,17
47:2,9,24
48:1,4,7,10,
15,16,17,22,

24 49:6,7,15,
22,24 50:4,7,
16,18,19,21,
22,23,25
51:1,3,6,21
52:21 53:2,5,
6,9,10,15,17,
19,21 54:10,
17,21,25
55:12,20,21,
24 56:2,4,7,
15,18,19,24
57:3,10,23
58:3,4,6,11,
14,19 59:1,2,
3,7,10,15,20,
24 60:5,8,17,
18,24 61:2,5,
6,8,9,12,13
62:2,13,20
63:1,6,17,19,
20 64:10,13,
25 65:3,4,5,
6,10,13,14,15
66:3,10,14,
17,18,25
67:1,10,15,
21,23 68:4,8,
11,14,16,17,
19,23 69:3,
14,16,17,18,
19,21,22
71:10,12,24
72:13,15,16,
22 73:11,12,
14,15,17,18,
24 74:1,3,9,
12,14,20
75:3,5,8,10,
22,25 76:5,6,
16,20,24
77:9,11,13,
15,17,19
78:1,2,17,19
79:3,7,9,10
80:6,13,24
81:6 82:2,5,
7,8,10,13,18
83:1,3,6,23

84:1,2,3,16,
18,21,23,25
85:2
**today**  6:19
7:22,23,24
28:10,15
48:13 60:23,
25 61:6 68:8
76:25 79:15
**today's**  61:9
**together**
69:25 73:15
84:1
**told**  14:20
32:24 35:21
52:14 53:14,
19 73:4 74:17
79:21 80:16
**tons**  6:1
**too**  13:21
16:24
**took**  7:15
**top**  11:18
**topic**  69:14,
17
**Tosi**  47:3
**totaled**  17:20
**totally**  18:7
68:10
**touch**  9:15
10:8 63:19
**toughed**  73:25
**traffic**  17:21
**Trail**  17:19
**train**  68:23
**training**
11:16
**transfer**
72:12
**transferred**
18:13 19:12
**Transunion**
40:17 41:8
45:11
**Treasury**  47:2
48:5 49:16
53:2,5 54:16,

17
tried 74:14
trip 15:25
true 75:2
trust 47:20
68:19 84:22
truthful
48:22
try 66:3
trying 39:12
63:17,19
turn 26:9
27:15 29:12
49:6 51:6
turned 59:15,
19 60:17
twice 22:17,
21
two 13:21
15:13 17:13
28:8,12 33:21
53:24 62:5
64:5 82:15,
16,17 83:11
type 20:16
35:6 40:20,22
typically
34:1

**U**

U.S. 5:25 6:1
ultimately
52:19,20
unable 57:10
unaware 18:7
35:3 68:5,10
80:8
uncertain
62:4 82:11
unclaimed
34:8 35:7
unclear 38:3
under 29:6
30:9,13,20
41:14 48:13

understand
31:9 42:3,10
48:12 51:23
57:10 67:25
79:3
understanding
18:6 19:17
32:12 46:2
50:14 55:19,
23 56:5 57:2,
7,8,12 69:20
72:15,18
73:16 79:16
understood
48:10 51:21
56:22
unit 19:14
United 4:15
unlawful 72:2
unless 17:23
36:8 55:14
until 6:7,8,
15 34:10 78:7
79:9
up 8:13,16
16:8,11 19:4
20:17 48:12
50:16,18,23
51:1,14
54:15,17 61:8
71:23 72:13,
15 77:22
79:14 83:17
upon 34:6
upset 17:17
us 4:18 7:5
13:21 14:1,
12,21 15:7
19:2 22:4,5
34:19 71:21
use 68:3,21
79:3
used 10:6
using 77:3
usually 44:2

**V**

V.A. 13:20
15:10,12,17
17:15 18:1,5,
14,20 19:1,
13,14,18 50:9
55:10,24 56:8
57:21 58:3
66:22
VA 14:13,14
Val 4:25
21:19 39:2
70:22
value 30:22
38:13 66:13,
14 70:9
72:21,23
73:15 74:12
78:2,25 79:6,
8
values 78:24
vantage 22:25
various 8:21
vehicle 49:20
verified
29:21,23,24
30:1,2,3,7
versus 16:11
very 12:9
14:5 22:4
23:25 47:15
68:24 75:14
veterans
19:19
viable 34:12
84:2
video 4:17
VIDEOGRAPHER
4:7 25:22,25
26:3 61:17,
19,22 70:11,
13 85:4
videotaped
4:10
visit 9:7

13:19 14:12,
19,21 15:8,
10,12,17,23
16:10,14,16
17:8,16,17,18
visited 14:13
16:8 18:14
58:19
visiting 17:3
visitors
14:23
visits 15:4
vocabulary
68:8
volatile
78:6,11
volunteered
71:6 81:17
voracity
76:25

**W**

W&k 4:13
59:14 81:12,
19,21,24
82:1,4,11,13,
18,25 83:3,
17,23 84:8
wait 34:3
36:20 60:11
69:5 70:5
71:25 74:12
78:1
waive 76:22
84:21,23
waiver 60:12
76:6
wake 19:4
wallets 62:24
67:20 68:6,7,
9
want 7:21
8:16 10:13
14:3,11,15,
18,20,23
17:22,25
18:19 21:15

22:19 26:12,
23 36:11
39:14,15,16
42:19,23 43:1
60:5 65:14
69:18
**wanted**  15:2,7
74:12 79:9
**wants**  25:14
**was**  5:7,19
6:5,9,11,15,
18,19 7:8
8:5,9,11,25
9:7,10,11,14,
18,19,21,22
10:5,14,15,
22,24 11:8,
14,17,24
12:3,8,24
13:24 14:4,13
15:3,4,5,6,
16,24 16:13,
14,19,22
17:4,12,14,
17,21 18:1,6,
7,10,12
19:12,13,20,
23 20:2,7,16
21:23 22:5,
15,17,21 24:9
26:2,21,22
27:11 30:8
31:14,23,24,
25 32:3,6,10,
12,20,25
33:6,20 34:6,
11,18 35:25
37:3,7 38:12,
13,22 39:12
40:13 41:3
42:15,20
43:2,4,10,11,
22 44:4,13
45:7,15 46:6,
9 47:13,16,21
48:1 49:3,8,
11,12,21
50:12,14,17,
21,25 51:19,

21 52:4,14
53:1,5,19
54:3,12,21
55:3,5,6,7,8,
9,24 56:4,5,
7,8,10,19
57:6,7,10,12,
14,15,16,21
58:12,13 60:9
61:8,18 62:4,
5,6,7,10,11,
12,16,18,20
63:11,19,20
64:18,22,24
65:3,4,11,12
66:1,6,11,13,
18,19,20
67:3,6,13,18
68:5,10,14
69:11,14,17
70:12 71:21,
25 72:9,15,
16,18,22,23
73:9,10,12,
14,16,24
74:5,6,11
76:23 77:19
78:1,3,6,10
79:6,9 80:7,
8,25 81:23
82:8,9,24
83:19,20,21,
24,25 84:2
85:14
**watch**  24:2
**Watts**  64:11
**way**  6:14
56:22,23 66:3
68:11 71:18
75:9
**we**  4:7,9 6:3
8:10 14:12,
13,21 15:13
18:14,15,16
21:20 22:1
25:23 26:25
27:5 34:17,19
35:1,2,7,8,9,
12,13,21

36:8,10,11,
13,14,24,25
37:2,3,4 38:2
41:9,20,21
45:20 47:9,10
55:18 57:2
61:14,15,21
65:10,14,25
68:22 69:24
71:15,22
79:20
**we're**  34:15
35:8 61:19
65:23 84:19
**we've**  33:14
**wear**  18:16
**week**  16:9
**welcome**  85:8
**welcomed**  15:4
**well**  14:14
15:22 18:16
23:23,25
38:15 42:6,20
45:2 48:3
62:18,19
66:11 68:2
79:1 82:8
83:19
**went**  13:19
17:16 18:20
23:16
**were**  8:12,17
9:16 10:3
12:8,9,10,13
14:4,7 16:7,
14 19:2
22:15,22
31:16 33:14
34:9,10,11
35:2 37:21
38:6,17 42:20
49:18 52:6
55:8 57:13,
17,20 60:19,
20 63:5,17
64:7 65:14
67:21 68:2,5,
16 71:11

72:14 73:11,
15 79:21
83:17,18
**West**  16:11
18:1,5,20
19:13,14
**what**  6:22
7:13 10:1
12:1,10
13:13,14,25
14:6 15:6
16:13 18:4
23:19 24:9
26:14 32:20
33:25 34:5,6,
18 35:5 36:4
38:3 39:5
40:16 43:15
44:23 46:2,9,
17 47:24 48:9
49:1,3,15
51:21 52:7,
18,19 53:4,
14,19 54:6
56:12,24
59:9,24
60:17,19 61:2
62:16 63:5
65:4,12,14,18
67:13,17
69:7,14,17
71:23 73:11,
18 76:19 77:1
79:5,9,17
80:8,15,20
81:23,25
82:22 83:20,
24,25
**What's**  25:20
32:23 59:16
**whatever**  55:7
64:18 83:19
**whatsoever**
47:22 49:9
67:13 72:21
**when**  5:14,17,
19 7:7 8:5,6,
9,11,16 9:10,
11,17,20

10:4,5,19
13:19 14:11,
13 17:4,14
18:14 19:12
24:15 32:14
34:1 35:25
40:23 42:15
43:11 44:4
48:4 50:12
51:4,20 53:22
56:16 61:6
63:5 65:3
67:21 79:5,23
82:3,4 83:17
**where** 5:20,22
6:4 9:14 10:9
13:25 15:4
28:17,19,21,
22 30:3 35:13
37:3 52:10
55:7 56:19
57:1 67:7,19
68:10 70:8
**whether** 25:15
33:6 34:5
50:20 56:11
60:2,3 65:11
72:20 79:25
83:22 84:2
**which** 7:9
12:1 13:4
27:14,15
29:23 30:22
33:7 35:2
42:13 46:15
49:14 50:9
51:15 54:1
58:12 62:22
76:2,17
**while** 53:23
56:8 58:13
**who** 9:7,8,15
11:16 13:12
15:2,16,22
18:25 19:20
23:25 31:22
32:3,6,8,11
35:21 36:10
37:18 43:21

46:4 58:19
64:16 66:9
68:21 80:25
81:1
**whole** 18:17
27:7,9,10
**whom** 13:25
**whose** 22:25
**why** 7:21
14:15,16
37:14 53:1,6
54:3 63:22
67:21 79:3,7,
11,19 81:20
**Wi-fi** 56:11
**wife** 13:19
14:20 17:15,
16 23:10
64:11
**will** 4:20
11:25 22:7
25:13,14
26:15,16,17,
19,21 27:8,14
28:25 55:15,
20,21 56:14,
15,17,24 57:3
71:17
**wills** 27:1
29:9
**with** 6:9,12
8:15 9:12,15,
20,25 10:4,6,
7,8 11:20
12:21,23,25
13:2,5,6,9,
13,14,16,17,
21,22,23
15:6,7 19:2,
20 21:24
23:10,17 25:5
26:12 33:3,19
37:6 38:8,12
41:9 44:20
46:3,4,17
47:10 48:21
49:16,25
51:17 52:11

53:22 56:25
59:5,10 61:24
62:7,9 63:18,
19,25 64:3,5,
7,16 65:2,5,9
66:20 69:3
70:8,25 71:16
72:24 73:6,7
74:5 80:6
81:1 82:13,18
83:3
**withdrawing**
54:8
**without** 12:19
29:19 30:6
32:15 37:10,
25 44:7,18,19
53:19,21 56:2
58:6 63:1,5
64:8 67:1
69:4
**witness** 4:20
5:2 10:19
11:5,11
12:17,21
13:4,12 14:11
15:2 16:3,21
18:24 19:8,17
20:5,9,13,19
21:1,8,23
22:6,25 23:6,
14,19 24:24
26:25 27:10
28:1 29:3
31:9 33:17
35:1,20 37:12
39:7,17 43:25
44:9,22
45:10,17,23,
24 46:8 48:9,
18,25 52:22
53:9,10,16
54:1 56:4,10
57:24 58:8,15
59:8 60:5,10,
16 63:3 67:3,
12,24 68:5
70:7 74:4,21
75:9,23 77:14

81:5 82:3
83:2,14
84:10,17,25
85:1,3,8,13
**witnesses**
27:19,20,22
28:9,12
**wives** 23:3
**wolves** 13:17
**women** 12:21
**wonder** 16:22
**wonderful**
18:11
**word** 11:22
44:9 49:1
82:22
**work** 10:9,21
28:10,13,15,
17,21 33:2,6
55:20,25
56:5,7,11,15,
18,19,24 57:4
83:5,14,19
84:14
**worked** 10:9,
16,19 11:2
12:15 28:4,23
**working** 11:12
52:14
**works** 7:17
28:19,24
79:13
**world** 13:15
36:22
**worth** 73:23
74:1,11 76:4
78:17,21
**would** 7:24
8:6,23 9:24
10:8,10 11:19
12:4,7,19
13:21 15:25
16:6,19,21
17:8 20:17,22
21:4,9 23:7,
21,24 24:11,
16 32:1,16
33:9,18,21,

23,25 34:3,4,
5,7,10,14,17,
23 35:5,6,10,
16 36:13,19
37:16,20,23
38:8,18,21
40:1 42:13,
17,21 44:1,22
46:13 47:8
49:21 51:4
52:19,20
55:18 57:2
58:25 59:1,5,
9 61:5,12
62:4 63:17,20
65:8,13,16
66:1,4,14
67:17 68:3,11
71:7,22 72:12
73:4,23,24
74:4,9,13,14,
17,22,23,24
75:2,6,9,10,
25 76:3,16
78:1,4,17,21
79:7,11
80:12,13,18
81:2 82:19
83:3,4,22
84:23 85:2
**wouldn't**
11:13 16:21
35:13,20 52:5
66:21 74:14
79:3
**Wright**  4:14,
22,24 51:10,
13,17 61:25
62:3,11,13,18
63:18,20,23
64:6,8 70:25
71:3,10 72:1,
6 73:2,6,17
75:19 77:9,11
81:16 82:21
**Wright's**
51:15 64:10
78:19

**write**  48:10
**wrong**  26:24
  69:21
**wrote**  82:4,23

_____

          Y

**year**  20:3
  71:25
**years**  9:13
  15:24 16:15
  17:13 57:21
  71:14,17,18,
  20 73:24
  78:5,10
**yes**  5:16 6:25
  7:4,13,19
  8:18 12:17
  18:3 24:12
  25:4,6,19
  26:8,14,20
  27:4,18,25
  28:7,14,20
  29:8,17,20
  30:7,11,14,16
  31:3 33:3
  41:4,15,17
  42:2,8 43:12
  46:24 47:1,4,
  7 48:14,18,25
  49:10 50:2,6,
  11 51:8,13,
  18,25 54:24
  55:2,7,17,22
  56:18 57:5,16
  61:1,4 62:1
  66:16 67:3
  69:24 70:1
  71:2 72:8
  75:18 77:10
  78:9,14 80:23
  85:10
**yet**  74:11
**York**  5:21,24
  6:2,6 8:17,19
**you**  5:10,14,
  17,20,22 6:4
  7:2,5,12,17,

21,22,25 8:3,
16,17 9:4,12,
24 10:12,13,
16 11:2,5,16,
19 12:3,4,7,
14,15,18
13:2,9 14:3,
6,18,23
15:10,12,20
16:6,19,23
17:2,5,8,13
18:4,17,18,
19,20 21:4,
12,19 22:6,9,
15,18,19,22
23:9,16,23
24:4,15,19
25:5,7,13,17
26:6,7,9,12,
23 27:14,15
28:1,17,19
29:9,12,13,16
30:4,17
32:10,16,24
33:2,8,9,12,
13,14,25
34:13,14,23
35:5,6,10,15,
20 36:19
37:7,9,14,18,
21 38:2,4,7,
8,9,10,15,17,
21 39:2,5,13,
14,15,16,24
40:8,16,17,
20,21 41:2,5,
11,14,18
42:1,3,7,15,
19,21 43:1,7,
13,16,21,24
44:6 45:15
46:8,11,12
47:8,10,11,
16,18 48:3,8,
12,15,22
49:6,7,8,9,
11,15,24,25
50:1,5,7,12,
16 51:2,4,6,

9,17,20,23
52:2,9,15
53:6,9,18,19,
20,23 54:3,8,
16,19,22
55:9,13,16,
18,21 56:1,
10,14 57:1,9,
13,17,20
58:2,5,7,10,
18 59:15,20,
24,25 60:2,3,
6,15,24 61:2,
4,11,19,24
62:2,7,17,23,
25 63:5,6,9,
14,17,25
64:3,4,10,13,
16 65:6,18,23
66:6,23,25
67:6,15,21
68:2,8 69:3,
14,16,17,18,
22 70:3,5,13,
24,25 71:7,9,
15,17,25
72:5,12
73:14,19,24
74:9,16
75:13,16,19,
25 76:6,11,
16,19 77:9,
11,25 78:5,9,
13,16,24
79:2,11,14,
18,21,24,25
80:4,10,15,
22,25 81:3,
10,17,21,24
82:1,7,12,24
83:6,9,17,18
84:7,8,9,13,
20,21,23
85:6,9
**you'll**  25:16
  71:19
**you're**  13:9
  16:24 17:11,
  24 21:16,22

```
    22:3 25:2,25
    29:6 32:14,
    19,24 34:16
    36:4,20 38:4
    39:17 48:4,13
    53:3 56:7
    63:22 66:9
    69:8 85:8
younger  9:20
your  4:19
    5:10 6:3,4,22
    7:22 8:1
    11:19 12:6
    14:3 21:12,17
    24:9 25:3,10
    27:24 36:12,
    18 39:10,13
    41:3 44:20
    45:14 46:25
    47:9,24
    53:17,21
    55:18,23
    56:14 57:2
    73:6 74:17
    76:15 77:7
    78:13 79:14
    84:21,22,23
yours   42:24
```

---

**Z**

**Zalman**  4:23
**zeros**  26:10



# THE KARP LAW FIRM

*A Professional Association*

Elder Law • Estate Planning & Administration • Probate • Disability, Special Needs, Medicaid & Veterans Benefits Planning

*Please Reply to:*
*Palm Beach Gardens*

**JOSEPH S. KARP**
Florida Certified Elder Law Specialist
Certified Elder Law Attorney, Natl. Elder Law Foundation
Member, FL & NY Bar

**GENNY BERNSTEIN**
Florida Certified Elder Law Specialist
**ADELE SMALL HARRIS**
**T. J. HEINEMANN, LL.M.**

Of Counsel
**RACHEL GOLDSTEIN ZETOUNI**

**ADMINISTRATOR**
Audrey L. Yeager, CP

October 25, 2013

Palm Beach County Courthouse – North Branch
3188 PGA Blvd.
Palm Beach Gardens, Florida 33410
Attn: Probate

Re: David Alan Kleiman, Deceased

Dear Clerk:

Enclosed are the following:

1. Petition for Disposition of Personal Property Without Administration;
2. Death Certificate of David Alan Kleiman without cause of death;
3. Last Will of David Alan Kleiman;
4. Affidavit, Waiver and Consent to Disbursement of Funds of Ira Steven Kleiman;
5. Affidavit, Waiver and Consent to Disbursement of Funds of Louis L. Kleiman;
6. Paid funeral bills;
7. Proposed Order for Payment of Funds; and
8. Check for $235.00, for the filing fee of $232.00 and $3.00 for a certified copy of the Order for Payment of Funds.

When available, please provide us with a conformed copy of the Order for Payment of Funds and a certified copy in the envelope provided for that purpose.

Thank you for your assistance in this matter.

Very truly yours,

Gail Brown
Estate Administration Paralegal

/geb
Enclosures

---

Quantum Park, Suite 203
2500 Quantum Lakes Drive
Boynton Beach, FL 33426
(561) 752-4550  Fax: (561) 625-0060

2875 PGA Boulevard, Suite 100
Palm Beach Gardens, FL 33410-2910
(561) 625-1100  Fax: (561) 625-0060
(Main Office)

Seacoast Banking Centre
Suite 102
1100 S. W. St. Lucie West Boulevard
Port St. Lucie, FL 34986
(772) 343-8411  Fax: (561) 625-0060

E-mail: klf@karplaw.com  ▪  On the web: www.karplaw.com  ▪  Out of area toll-free: (800) 893-9911



**EXHIBIT**
1

KARP_00000020



THE KARP LAW FIRM PA
OPERATING ACCOUNT
2875 PGA BLVD, STE 100
PALM BEACH GARDENS, FL 33410
(561) 625-1100

PNC Bank, N.A.    001

69641

63-84/1626.00
838

10/14/2013

PAY TO THE
ORDER OF   Clerk of the Circuit Court

Two Hundred Thirty-Five and 00/100*************************   $   **235.00

DOLLARS

Clerk of the Circuit Court

VOID AFTER 90 DAYS

MEMO   E/O Kleiman, D.

AUTHORIZED SIGNATURE

⑈0 69641⑈ ⑈2670841696⑈ 12141669 1411⑈

Security Features Included   Details on Back.

THE KARP LAW FIRM PA

Clerk of the Circuit Court              E/O Kleiman, D.              10/14/2013              69641

                                                                                              235.00

PNC Bk/Operating       E/O Kleiman, D.                                                         235.00

KARP_00000021

**IN THE CIRCUIT COURT FOR PALM BEACH COUNTY, FLORIDA**　　　　**PROBATE DIVISION**

**IN RE: ESTATE OF**

**DAVID ALAN KLEIMAN**　　　　**File No.**

　　　　　　　　　　　　　**Division**

　　　　**Deceased.**

### PETITION FOR DISPOSITION OF
### PERSONAL PROPERTY WITHOUT ADMINISTRATION
### (verified statement)

Petitioner, IRA STEVEN KLEIMAN, alleges:

1.　　　Petitioner, whose address is ▇▇▇▇▇▇▇ Palm Beach Gardens, FL ▇ is the brother and nominated Personal Representative of DAVID ALAN KLEIMAN, who died at ▇▇▇ ▇, Riviera Beach, Florida ▇ on April 26, 2013, a resident of Palm Beach County, State of Florida. Decedent's last known address was ▇▇▇▇▇ Riviera Beach, Florida ▇ and, if known, whose age at the time of death was 46 years.

　　　　　The decedent did leave a will which is being filed with this Petition.

2.　　　So far as is known, the names of the beneficiaries of decedent's estate and of the decedent's surviving spouse, if any, their addresses and relationships to decedent, and the dates of birth of any who are minors are:

| NAME | ADDRESS | RELATIONSHIP | BIRTH DATE (if Minor) |
|---|---|---|---|
| IRA STEVEN KLEIMAN | ▇▇▇▇▇▇ | Brother | N/A |

3.　　　The estate of decedent consists only of personal property exempt from the claims of creditors under Section 732.402 of the Florida Probate Code and the Constitution of Florida, and non-exempt personal property the value of which does not exceed the sum of the amount of preferred funeral expenses and reasonable and necessary medical and hospital expenses of the last 60 days of the decedent's last illness, all being described as follows:

**Description**　　　　　　　　　　　　　　　　　　　**Value**

**EXEMPT:**

None

KARP_00000022

**NON-EXEMPT:**

Check from Merit Life Insurance Co.                                                  $9,098.49

    4.     Preferred funeral expenses (statement/receipt attached hereto):

| SERVICES PAID BY: | AMOUNT | PAID |
|---|---|---|
| LOUIS L. KLEIMAN | $9,527.00 | $9,527.00 |

    5.     Medical and hospital expenses for the last 60 days of the last illness (statement/receipt attached hereto):

    None

    6.     Applicant requests that the Court issue a letter or other writing under the seal of the Court authorizing payment, transfer, or disposition of the property to:

| NAME | PROPERTY | AMOUNT/VALUE |
|---|---|---|
| LOUIS L. KLEIMAN | Check from Merit Life Insurance Co. | $9,098.49 |

    Under penalties of perjury, I declare that I have read the foregoing, and the facts alleged are true, to the best of my knowledge and belief.

    Signed on _Septenber_ _10_ , 2013.

Adele Small Harris
Attorney for Petitioner
Florida Bar Number: 669946
The Karp Law Firm, P.A.
2875 PGA Boulevard, Suite 100
Palm Beach Gardens, FL 33410
Telephone: (561) 625-1100
Fax: (561) 625-0060
E-Mail: eservice@karplaw.com
Secondary E-Mail: aharris@karplaw.com

Ira Steven Kleiman

Telephone: ▮▮▮▮▮

State of Florida
County of Palm Beach
The foregoing instrument was acknowledge before
me by Ira Steven Kleiman, who is personally
known or who has produced _Fl Driver License_
As identification and who (did) (did not) take an
oath, this _16th_ day of _September_ , 2013.

Notary Public
Commission No. _____
Commission Expires: _____
Name of Notary _____



GAIL BROWN
MY COMMISSION # EE 147421
EXPIRES: December 3, 2015
Bonded Thru Notary Public Underwriters

# STATE OF FLORIDA

THIS DOCUMENT HAS A LIGHT BACKGROUND ON TRUE WATERMARKED PAPER.   HOLD TO LIGHT TO VERIFY FLORIDA WATERMARK.

## OFFICE of VITAL STATISTICS

# CERTIFICATION OF DEATH

**STATE FILE NUMBER:** 2013061664      **DATE ISSUED:** June 10, 2013

**STATE FILE DATE:** May 1, 2013

## DECEDENT INFORMATION

NAME: DAVID  ALAN  KLEIMAN

DATE OF DEATH: FOUND ON ███████        SEX: MALE        AGE: 046 YEARS

DATE OF BIRTH: ███████        SSN: ███████

BIRTHPLACE: IRVINGTON, NEW JERSEY, UNITED STATES

PLACE WHERE DEATH OCCURRED:      A PRIVATE RESIDENCE

FACILITY NAME OR STREET ADDRESS:

LOCATION OF DEATH:          PALM BEACH COUNTY ███

## SURVIVING SPOUSE, DECEDENT'S RESIDENCE AND HISTORY INFORMATION

MARITAL STATUS: DIVORCED

SPOUSE: NONE

RESIDENCE: ███████████████████  UNITED STATES

COUNTY: PALM BEACH

OCCUPATION, INDUSTRY: COMPUTER FORENSIC EXPERT, COMPUTER & NETWORK SECURITY

RACE:   X White      ___Black or African American      ___Asian Indian      ___Chinese      ___Filipino      ___Native Hawaiian

___American Indian or Alaskan Native--Tribe:                          ___Japanese      ___Korean      ___Vietnamese

___Guamian or Chamorro          ___Samoan          ___Other Pacific Isl:

___Other Asian:                          ___Other:                                      ___Unknown

HISPANIC OR HAITIAN ORIGIN? NO, NOT OF HISPANIC/HAITIAN ORIGIN

EDUCATION: HIGH SCHOOL GRADUATE OR GED          EVER IN U.S. ARMED FORCES? YES

## PARENTS AND INFORMANT INFORMATION

FATHER: LOUIS KLEIMAN

MOTHER: REGINA ARENSBERG

INFORMANT: LOUIS KLEIMAN

RELATIONSHIP TO DECEDENT: FATHER

INFORMANT'S ADDRESS: ██████████████  FLORIDA ███ UNITED STATES

## PLACE OF DISPOSITION AND FUNERAL FACILITY INFORMATION

PLACE OF DISPOSITION:  STAR OF DAVID CEMETERY OF THE PALM BEACHES
          WEST PALM BEACH, FLORIDA

METHOD OF DISPOSITION: BURIAL

FUNERAL DIRECTOR/LICENSE NUMBER:  JONATHAN D. WEIS, F042505

FUNERAL FACILITY:  STAR OF DAVID FUNERAL CHAPEL F041701
          9321 MEMORIAL PARK RD, WEST PALM BEACH, FLORIDA  33412

## CERTIFIER INFORMATION

TYPE OF CERTIFIER: ASSOCIATE MEDICAL EXAMINER   MEDICAL EXAMINER CASE NUMBER: ███████

TIME OF DEATH (24 hr):  1810

CERTIFIER'S NAME: ███████

CERTIFIER'S LICENSE NUMBER: ███████

NAME OF ATTENDING PHYSICIAN (If other than Certifier): NOT ENTERED

THE ABOVE SIGNATURE CERTIFIES THAT THIS IS A TRUE COPY **State Registrar** OF THE OFFICIAL RECORD ON FILE IN THIS OFFICE.

**WARNING:** THIS DOCUMENT IS PRINTED OR PHOTOCOPIED ON SECURITY PAPER WITH WATERMARKS OF THE GREAT SEAL OF THE STATE OF FLORIDA. DO NOT ACCEPT WITHOUT VERIFYING THE PRESENCE OF THE WATERMARKS. THE DOCUMENT FACE CONTAINS A MULTICOLORED BACKGROUND, GOLD EMBOSSED SEAL, AND THERMOCHROMIC FL. THE BACK CONTAINS SPECIAL LINES WITH TEXT. THE DOCUMENT WILL NOT PRODUCE A COLOR COPY.

REQ: 2013892336

DH FORM 1948 (04-10)

**CERTIFICATION OF VITAL RECORD**

FLORIDA DEPARTMENT OF
**HEALTH**

This

## LAST WILL

prepared for

## DAVID ALAN KLEIMAN

**THE KARP LAW FIRM**
A Professional Association

Palm Beach Gardens
(561)625-1100
(800)893-9911

Boynton Beach
(561)752-4550
(800)893-9911

Port St. Lucie
(772)343-8411
(800)893-9911

© The Karp Law Firm, P. A.
All Rights Reserved

Will 07-30-03.max

KARP_00000025

# Last Will

## of

# DAVID ALAN KLEIMAN

I, DAVID ALAN KLEIMAN, residing in Palm Beach County, Florida, do hereby make, publish and declare this to be my Last Will and Testament, and do hereby revoke any and all former Wills and Codicils heretofore made by me.

**FIRST**: I direct that my Personal Representative, hereinafter named, pay all my just debts and funeral expenses as soon after my death as may be practicable.

**SECOND**: In the event that, at the time of my death, I am the owner, or co-owner of any real estate, insurance settlement, bank account, government bond, or security or instrument of indebtedness (whether issued by a private corporation, a government, a governmental agency, or an individual) which is registered or issued in the names of myself and another person or persons as tenants by the entirety or as joint tenants with right of survivorship, or which is registered or issued in my name but is payable to or apparently payable to a named beneficiary on my death, I declare it to be my intention that all my right, title, and interest in any such property shall immediately pass to the joint owner, co-owner, or beneficiary named in any instrument pertaining to such property, whether or not my right, title or interest in any such property would, by operation of law upon my death, vest in or pass to such surviving person. I make this provision in order to eliminate any doubt or question as to the right of any such person apparently entitled thereto to succeed to the full possession and ownership of such property upon my death, and to provide for the possible contingency of an ineffective attempt to create a joint tenancy, with right of survivorship, or an estate by the entirety.

**THIRD**: In the event that any devisee shall die with me in a common accident or disaster or under such circumstances as may make it impossible or difficult to determine which of us died first, or within thirty days after my death, then I direct that said devisee shall be conclusively deemed not to have survived me.

**FOURTH**: I give certain items of the tangible personal property owned by me at the time of my death in the manner described in the last dated writing made for this purpose and signed by me that is in existence at the time of my death.

1

KARP_00000026

**FIFTH:** I give and devise to my brother, IRA STEVEN KLEIMAN, all of the rest, residue and remainder of my estate, of whatsoever kind and wheresoever situate, which I may own or have the right to dispose of at the time of my death, to be his absolutely and forever.

**SIXTH:** In the event that my brother, IRA STEVEN KLEIMAN, shall predecease me, or shall be deemed not to have survived me in accordance with the provisions of Paragraph THIRD, then all of the rest, residue and remainder of my estate, of whatsoever kind and wheresoever situate, which I may own or have the right to dispose of at the time of my death, I give and devise to my parents, LOUIS L. KLEIMAN and REGINA KLEIMAN, OR THE SURVIVOR. In the event that both of my parents, LOUIS L. KLEIMAN and REGINA KLEIMAN, should predecease me, then I give and devise the rest, residue and remainder of my estate to JOSEPH S. KARP and DEBORAH C. KARP, OR THE SURVIVOR, per stirpes.

I recognize that JOSEPH S. KARP is my attorney and I asked him to draft this Last Will. However, he has been a lifelong friend of my family, and has known my mother since his birth.

**SEVENTH:** For reasons known unto myself, I make no provision herein this Last Will for my brother, LEONARD KLEIMAN.

**EIGHTH:** If any principal of my estate shall become distributable to a minor, my Personal Representative may, in his or her absolute discretion, pay over such principal at any time to the Guardian of the Property of such minor, or retain the same for such minor during minority. In the case of such retention, my Personal Representative may apply such principal and the income therefrom to the support, maintenance and education of such minor, either directly or by payments to the Guardian of the Property or Person of such minor, or to be the person with whom such minor may reside, and the receipt of any such Guardian or person shall become a complete discharge to my Personal Representative who shall not be bound to see to the application of any such payment. Any unapplied principal and income shall be paid over to such beneficiary upon attaining the age of majority, or if he or she shall die before attaining the age of majority, to his or her estate. In holding any funds for any minor, my Personal Representative shall have all the powers and discretion hereinafter conferred upon him or her.

**NINTH:** I hereby nominate and appoint my brother and my mother, IRA STEVEN KLEIMAN and REGINA KLEIMAN, OR THE SURVIVOR, Co-Personal Representatives of my Estate. In the event both IRA STEVEN KLEIMAN and REGINA KLEIMAN fail, refuse or are unable to act as Personal Representatives, then the following person shall serve as Successor Personal Representative:

### JOSEPH S. KARP

I direct that none of them shall be required to furnish bond or other surety for the faithful performance of his or her duties hereunder.

2

KARP_00000027

**TENTH:** The personal representatives named in this Will, and their successors and parties serving in their stead, shall be governed by the provisions of Sections 733.612 and 737.402 and Chapter 738, Florida Statutes, that are not in conflict with this instrument, and shall have all additional powers and protection granted by statute to them and to trustees at the time of application that are not in conflict with this instrument. In addition and not in limitation of any common-law or statutory authority, and without application to any court, they also shall have the powers and responsibilities described below to be exercised in their absolute discretion.

**ELEVENTH:** I hereby authorize my Personal Representative, with respect to my estate, in his or her sole and absolute discretion, to retain any property in my estate; to sell any real or personal property of my estate for cash or on credit, at public or private sale, or to exchange any such property for other property; to collect, pay, contest, compromise, or abandon claims of or against my estate; to execute contracts, conveyances, and other instruments; to make any distribution or division of my estate in cash or in kind or both; and to execute and to deliver any and all instruments which he or she may deem advisable to carry out any of the foregoing powers. All of the foregoing powers may be exercised without leave of court.

**TWELFTH:** Throughout this Will, the masculine gender shall be deemed to include the feminine, and the singular the plural, and vice versa.

I signed this, my last will, on ___July 30, 2003___.

DAVID ALAN KLEIMAN

Signed, sealed, published and declared to be as and for his Last Will and Testament, by the above-named Testator, in our presence, who at his request, in his presence, and in the presence of each other, have hereunto subscribed our names as attesting witnesses at Palm Beach Gardens, Florida, on July 30, 2003.

Business Address: 2875 PGA Boulevard, Ste. 100
Palm Beach Gardens, FL 33410

Business Address: 2875 PGA Boulevard, Ste. 100
Palm Beach Gardens, FL 33410

Business Address: 2875 PGA Boulevard, Ste. 100
Palm Beach Gardens, FL 33410

3

Will 07-30-03.max

KARP_00000028

STATE OF FLORIDA                              )
                                                  SS
COUNTY OF PALM BEACH                           )

I, DAVID ALAN KLEIMAN declare to the officer taking my acknowledgment of this instrument, and to the subscribing witnesses, that I signed this instrument as my will.

_____ , Testator
DAVID ALAN KLEIMAN

We, _____ Marcia J. Varney _____ (Witness) and _Beverley Brownlee_
(Witness) have been sworn by the officer signing below, and declare to that officer on our oaths that the Testator declared the instrument to be the Testator's will and signed it in our presence and that we each signed the instrument as a witness in the presence of the Testator and of each other.

_____
Witness

_____
Witness

Acknowledged and subscribed before me by DAVID ALAN KLEIMAN, the Testator, who is personally known to me or who has produced _____ as identification, and sworn to and subscribed before me by __ Marcia J. Varney _____ (Witness) who is personally known to me or who has produced _____, as identification and _Beverly Brownlee_ (Witness) who is personally known to me or who has produced _____, as identification, and subscribed by me in the presence of the Testator and the subscribing witnesses, all on July 30, 2003.

_____
Notary Public

Notary Seal

LAURA E. AHLERS
My Comm. Exp. 6/18/05
No. DD 005618
Personally Known or Other I.D.

My commission expires: _____

4

Will 07-30-03.max

KARP_00000029

IN THE CIRCUIT COURT FOR PALM BEACH COUNTY,
FLORIDA                    PROBATE DIVISION

IN RE: ESTATE OF

DAVID ALAN KLEIMAN              File No.

                               Division
        Deceased.

## AFFIDAVIT, WAIVER AND CONSENT
## TO DISBURSEMENT OF FUNDS

I, IRA STEVEN KLEIMAN, as brother of the probate decedent, hereby agrees to the Petition

for Disposition of Personal Property Without Administration and to the disbursement of all estate

assets to LOUIS L. KLEIMAN, as reimbursement for the funeral expenses paid.

Under penalties of perjury, I declare that I have read the foregoing, and the facts alleged

are true, to the best of my knowledge and belief.

Signed on _____September 10_____, 2013.

_____
IRA STEVEN KLEIMAN

Telephone:

State of Florida
County of Palm Beach
The foregoing instrument was acknowledged before me by Ira Steven Kleiman, who is personally
known or who has produced _FL Drivers Lic._ as identification and who (did) (did not) take an
oath, this _10th_ day of _September_, 2013.

_____
Notary Public
Commission No.
Commission Expires:
Printed Name of Notary:



GAIL BROWN
MY COMMISSION # EE 147421
EXPIRES: December 3, 2015
Bonded Thru Notary Public Underwriters

IN THE CIRCUIT COURT FOR PALM BEACH COUNTY,
FLORIDA                    **PROBATE DIVISION**

IN RE: ESTATE OF

DAVID ALAN KLEIMAN          File No.

                           **Division**

          Deceased.

## AFFIDAVIT, WAIVER AND CONSENT
## TO DISBURSEMENT OF FUNDS

I, LOUIS L. KLEIMAN, as father of the probate decedent, hereby agrees to the Petition for

Disposition of Personal Property Without Administration and to the disbursement of all estate assets

to LOUIS L. KLEIMAN, as reimbursement for the funeral expenses paid.

Under penalties of perjury, I declare that I have read the foregoing, and the facts alleged

are true, to the best of my knowledge and belief.

Signed on ___9/30/13___, 2013.

                    X _Louis L Kleiman_
                    LOUIS L. KLEIMAN

                    ████████████████
                    Telephone:

State of Florida
County of Palm Beach
The foregoing instrument was acknowledged before me by Louis L. Kleiman, who is personally
known or who has produced _Personally Know_ as identification and who (did) (did not) take

                    _Kenn G Andrews_
                    Notary Public
                    Commission No.
                    Commission Expires:
                    Printed Name of Notary:

                    KENNETH G. ANDREWS
                    MY COMMISSION # FF 012023
                    EXPIRES: June 9, 2017
                    Bonded Thru Notary Public Underwriters

**Seller:** Star of David Funeral Chapel of the Palm Beaches
9321 Memorial Park Road
West Palm Beach, FL 33412
(561) 627-2277
Jonathan Weis F042205
Business License Number F341701

Contract # -
Case. # -

Part One of Three Parts

## Statement of Funeral Goods and Services Selected/Purchase Agreement

Date of Death _____    Date of Service 05/05/2013

Name of Deceased David A Kleiman _____    Date of Birth _____

Deceased's Last Address [redacted]    City Riviera Beach    State FL    Zip Code [redacted]

Purchaser's Name Louis L. Kleiman _____    Phone Number [redacted]

Purchaser's Home Address [redacted]    City [redacted]    State [redacted]    Zip Code [redacted]

Co-Purchaser's Name _____    Phone Number _____

Co-Purchaser's Home Address _____    City _____    State ____    Zip Code _____

In this Agreement the words you and your refer to the Purchaser and the Co-Purchaser, if any, signing this Agreement. The words we, us and our refer to the Funeral Provider or Seller whose name and address appear above. For good and valuable consideration, which each party acknowledges receiving, you agree to buy the goods and services described below. You authorize us to prepare and care for the body of the decedent named in this Agreement and to conduct the funeral and services and incur the charges listed in said Agreement. We have the right to collect the total amounts due under this Agreement from any person who signs this Agreement as Purchaser or Co-Purchaser. (N/A indicates items of service and/or merchandise that are not provided.)

Charges are only for those items that you selected or that are required. If we are required by law or by a cemetery or crematory to use any items, we will explain the reasons in writing below. If you selected a funeral that may require embalming, such as a funeral with viewing, you may have to pay for embalming. You do not have to pay for embalming you did not approve if you selected arrangements such as a direct cremation or immediate burial. If we charged for embalming, we will explain why below.

| SECTION I – SERVICES AND MERCHANDISE FUNERAL DIRECTOR AND STAFF SERVICES | | |
|---|---|---|
| Basic Professional Service Fee | $ | 2,295.00 |
| **PACKAGE OFFERINGS** | | |
| Direct Cremation | $ | n/a |
| Immediate Burial | $ | n/a |
| Forwarding Remains | $ | n/a |
| Receiving Remains | $ | n/a |
| | $ | n/a |
| | $ | n/a |
| **CARE AND PREPARATION OF REMAINS** | | |
| Embalming | $ | n/a |
| Other Preparation (specify) | | |
| Bathing and Handling of Deceased | $ | 495.00 |
| Dressing and Casketing of Deceased | $ | 295.00 |
| Refrigeration up to 5 day period | $ | 500.00 |
| | $ | n/a |
| | $ | n/a |
| **USE OF FACILITIES AND RELATED SERVICES** | | |
| Visitation | $ | n/a |
| Funeral Ceremony | $ | 595.00 |
| Memorial Service | $ | n/a |
| Graveside Service | $ | n/a |
| Other (specify): | | |
| | $ | n/a |
| | $ | n/a |
| | $ | n/a |
| **TRANSPORTATION** | | |
| Transferring Remains to Funeral Home | $ | 595.00 |
| Funeral Vehicle/Hearse | $ | 295.00 |
| Other (specify): | | |
| | $ | n/a |
| | $ | n/a |
| | $ | n/a |
| | $ | n/a |
| | $ | n/a |
| | $ | n/a |
| **OTHER GOODS AND SERVICES** | | |
| Memorial Booklet | $ | n/a |
| Service Folders | $ | n/a |
| Prayer Cards | $ | n/a |
| Acknowledgement Cards | $ | n/a |
| Memorial Package | $ | n/a |
| Everlasting Memorial® (Internet Memorial/Archive) | $ | 445.00 |
| A Life Remembered Book™ (HC) | $ | 50.00 |
| US Aftercare Planner | $ | 245.00 |
| iKnoby Tribute Burial Memorial Package | $ | 795.00 |
| | $ | n/a |
| | $ | n/a |
| | $ | n/a |
| | $ | n/a |
| | $ | n/a |
| | $ | n/a |
| | $ | n/a |
| | $ | n/a |
| | $ | n/a |

| MERCHANDISE | | |
|---|---|---|
| Casket or Alternative Container: | | |
| Manufacturer/Supplier | | |
| Model Name/Number POPLAR, 043M POPLAR | | |
| Material | | |
| Species of Wood | | |
| Type of Metal | | |
| Weight/Gauge | | |
| Interior Rosetan Crepe Interior, Rosetan Crepe Interior | | |
| Exterior Color Medium Bookcse Exterior, Medium | $ | 1,595.00 |
| Outer Burial Container: | | |
| Manufacturer/Supplier | | |
| Model Name/Number | | |
| Material | $ | n/a |
| Urn: | | |
| Manufacturer/Supplier | | |
| Model Name/Number | | |
| Material | $ | n/a |
| | $ | n/a |
| | $ | n/a |
| **TOTAL SECTION I** | $ | 7,800.00 |

**SECTION II - CHARGES TO BE INCURRED BY US ON YOUR BEHALF** *(Certain charges may be estimated - "e" means estimated.)*

We charge you for our services in obtaining those items marked with an "X"

| | | | |
|---|---|---|---|
| Cemetery | $ | n/a | |
| Crematory | $ | n/a | |
| Clergy / Religious Facility | $ | 500.00 | |
| Musicians or Singers | $ | n/a | |
| Certified Copies | $ | 98.00 | |
| Newspaper Notices | $ | n/a | |
| | $ | n/a | |
| | $ | n/a | |
| | $ | n/a | |
| | $ | n/a | |
| | $ | n/a | |
| DC Courier | $ | 10.00 | |
| | $ | n/a | |
| | $ | n/a | |
| | $ | n/a | |
| | $ | n/a | |
| | $ | n/a | |
| | $ | n/a | |
| | $ | n/a | |
| | $ | n/a | |
| | $ | n/a | |
| **TOTAL SECTION II** | $ | 608.00 | |

**TOTAL SECTION I CHARGES** ........ $ 7,800.00

**TOTAL SECTION II CHARGES** ........ $ 608.00

**TOTAL SECTION I AND SECTION II CHARGES** ........ $ 8,408.00

[signature] 04/30/2013    [signature] 04/30/2013
PURCHASER'S INITIALS AND DATE    PURCHASER INITIALS AND DATE

Charges are only for those items that are used. If the type of funeral selected requires extra items, an explanation will be given.

04/30/2013 11:29

KARP_00000032

Name of Deceased David A. Kleiman

Part Two of Three Parts

Contract # - 412901001969

## Statement of Funeral Goods and Services Selected/Purchase Agreement

| | | |
|---|---|---|
| **TOTAL SECTION I AND SECTION II CHARGES** | $ | 8,400.00 |
| **SECTION III - ALLOWANCES** | | |
| Dignity Discount | $ | (1,300.00) |
| Manager Approved | $ | (500.00) |
| | $ | n/a |
| | $ | n/a |
| | $ | n/a |
| | $ | n/a |
| | $ | n/a |
| | $ | n/a |
| | $ | n/a |
| **TOTAL ALLOWANCES** | $ | (1,800.00) |
| **SECTION IV - TAXES** | | |
| Taxable Item Section I + or - Section III | $ | n/a |
| Less Deductibles | $ | n/a |
| **TOTAL TAXES** 0 % | $ | 0.00 |
| **TOTAL CHARGES: Section (I) + (II) + or - (III) + (IV)=** | $ | 6,600.00 |
| Less Cash Received | $ | n/a |
| Less Assignments of | $ | n/a |
| **Unpaid balance due by:** 05/05/2013 | $ | 6,600.00 |

*(handwritten across charges area: Paid in full)*

**PAYMENT TERMS** You understand that no extension of credit by us, subject to federal or state credit disclosure, installment sales, or other consumer credit statutes, is contemplated by this Agreement. You have no right to defer payment of any amount due under this Agreement. You agree that you are personally liable for payment of the applicable balance due shown on the Statement of Funeral Goods and Services Selected by the due date indicated on the Statement. Such payment will be made to us at the address set forth in this Agreement. Where the full amount due will not be paid prior to the performing of the services called for by this Agreement, you authorize us to inquire into your credit history.

**IDENTIFICATION AND DESCRIPTION OF MANDATORY ITEMS AND EXPLANATION OF EMBALMING CHARGE** We have identified and described below any legal, cemetery or crematory requirements that compel the purchase of any items listed in Part One and we have explained why we charged for embalming. You acknowledge and agree that embalming and/or preparation of the remains may be performed at the facility of the above-referenced funeral home or at another facility that is duly licensed and equipped to provide such services.

Funeral Home Requires Refrigeration After 24 Hours When Embalming Is Not Authorized

You confirm that you have examined the service and merchandise items listed in Part One and found them to be correct and according to the arrangements selected and that prior to signing this Statement, you reviewed and approved a completed copy of this Statement. You also confirm that you have been informed of your right to select only such services and merchandise as you desire, and that you have the legal right to arrange the funeral services for the deceased named above.

### Acknowledgement of Disclosures/Disclaimer

The Federal Trade Commission Trade Regulation Rule on "Funeral Industry Practices" requires certain disclosures and prohibits misrepresentations. The following is a checklist we ask those we serve to read and sign to verify that the funeral arrangement conference was conducted in compliance with the Rule. You, who made the arrangements for the funeral and final disposition of the above-named decedent, do hereby attest to the following:

1. You were given a General Price List effective on 07/21/2011 _____ prior to discussing funeral arrangements or the selection of any funeral goods or services.
2. You were shown a Casket Price List effective on 07/21/2011 _____ prior to discussing caskets.
3. You were shown an Outer Burial Container Price List effective on 07/21/2011 _____ prior to discussing outer burial containers.
4. You were advised that the law does not require embalming except in certain special cases.
5. You were not advised that embalming is required for direct cremation, immediate burial or a closed casket funeral without viewing or visitation if refrigeration is available, where state or local law does not require embalming in such cases.
6. You were not advised that any law requires a casket for direct cremation or that a casket, other than an alternative container, is required for direct cremation.
7. You were advised that state law does not require the purchase of an outer burial container or any of the funeral goods or services you selected, except as set forth on your Statement of Funeral Goods and Services Selected/Purchase Agreement.
8. No claims were made to you as to the merchandise or services (embalming, casket, outer burial container) to the effect that embalming or the use of any merchandise available from us would delay the decomposition of the remains for a long term or indefinite time, or that any such merchandise would protect the body from gravesite substances. No representations or warranties were made to you about the protective features of caskets or outer burial containers other than those made by the manufacturer.

### NOTICES TO PURCHASER/CO-PURCHASER

SEE PART THREE FOR TERMS AND CONDITIONS THAT ARE PART OF THIS AGREEMENT. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. YOU ACKNOWLEDGE RECEIPT OF AN EXACT COPY OF THIS AGREEMENT.

BY SIGNING THIS AGREEMENT, YOU ARE AGREEING THAT ANY CLAIM YOU MAY HAVE AGAINST THE SELLER SHALL BE RESOLVED BY ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A COURT OR JURY TRIAL AS WELL AS YOUR RIGHT OF APPEAL.

Executed this 30 day of April , 2013

Purchaser's Name Louis E. Kleiman

Purchaser's Signature _Louis E. Kleiman_

Social Security # 143 - 18 - 6289

Co-Purchaser's Name _____

Co-Purchaser's Signature _____

Co-Purchaser's Social Security # _____

By: _____ David Weis
Type or Name
F042505
License Number

*I attest that I have completed/reviewed this document as required by the Company's SOX Key Control Checklist:*

Print Name: _Connie Hartman_

Signature: _Connie Hartman_

Title: _Office Manager_

Date: _4/30/13_

04/30/2013 11:29

KARP_00000033

The undersigned, referred to as 'Purchaser', hereby agrees to purchase the Interment Rights, Merchandise and Services described herein, subject to acceptance and approval of the above named cemetery, hereafter referred to as 'Seller'.

**Purchaser:** Last Name: Kleiman   First: LOUIS   Middle: J

Telephone: ___   SSN: ___   DOB: __/__/__   Email: ___
Address: ___   City: ___   State: ___   Zip: ___

**Co-Purchaser:** Last Name: ___   First: ___   Middle: ___

Telephone: (   ) ___   SSN: ___   DOB: __/__/__   Email: ___
Address: ___   City: ___   State: ___   Zip: ___

**Deceased:** Last Name: Kleiman   First: David   Middle: Alan

DOB: __/__/__   DOD: __/__/__   Burial Date: __/__/__   Veteran: ☐

Description of Interment Rights to be used: ___   Memorialization Rights: ___

Issue Certificate of Interment Rights to: ___

Address: ___   City: ___   State: ___   Zip: ___

---

**INTERMENT**
- Interment Rights ___ $ ___
  (Includes Care and Maintenance of $ ___ )
- Interment and Recording Fees ___
- Outer Burial Container ___
  Supplier ___
  Model/Design ___
  Material/Color ___
- Outer Burial Container Installation ___

**MEMORIALIZATION**
- Memorial ___
  Supplier ___
  Type/Color ___
  Design/Size ___
- Memorial Base ___
  Supplier ___
  Type/Color ___
  Design/Size ___
- Memorial Installation Fee ___
- Nameplate/Scroll ___
- Lettering ___
- Flower Vase ___
  Supplier ___
  Type/Color ___
  Design/Size ___
- Vase Base ___
  Size/Material ___

**MERCHANDISE & SERVICES**
- Urn ___
  Supplier ___
  Type/Color ___
  Design/Size ___
- Processing/Archiving Fee ___
  Other ___
- Other ___
  Other ___
- Other ___

**TOTAL, ALLOWANCES & TAXES**
- Reason ___ ( ___ )
  Apply to ___
- Merchandise/Service ___ ( ___ )
  Reason ___
  Apply to ___
- Merchandise/Service ___ ( ___ )
  Reason ___
  Apply to ___

**TOTAL PURCHASE PRICE** $ 2,740.00
Less: Down Payment ___ 2,740.00
Other ___ 0.00
Total Down Payment ( 2,740.00 )
**Unpaid Balance of Total Purchase Price** $ 0.00

*See Schedule A for a list of Property, Merchandise and Services selected*

Notes & Payment Terms (where applicable): ___

---

**TERMS**

**Agreement to Pay:** The Total Purchase Price is due and payable as of the date of this Agreement. A delinquency charge of five percent will be assessed monthly on any balance not paid within 30 days of the date of this Agreement. If less than full payment is received, Seller shall deduct the accrued delinquency charge from the amount received, and credit the remainder of the payment to the Unpaid Balance.

**Title:** Seller (or its assigns) will retain title to said Interment Rights and Merchandise until the Total Purchase Price, together with any delinquency charges thereon have been paid by Purchaser to Seller.

**Cemetery Rules and Regulations:** Purchaser shall comply at all times with all Rules and Regulations now existing, or hereafter adopted by the Seller and approved by the Florida Board of Funeral, Cemetery, and Consumer Services, for the care, control, management and protection of the cemetery, and for all purposes deemed necessary by Seller for the proper conduct of the business of the cemetery and the protection and safeguarding of the premises, principles, plans and ideals upon which the cemetery was established. Purchaser understands that such Rules and Regulations are subject to inspection by Purchaser at the office of Seller.

**The Purchaser shall have thirty days from the date of execution of this Agreement to cancel the Agreement and receive a total refund of all monies paid for items not used.**

**Any questions or complaints concerning this transaction may be directed to the Florida Board of Funeral, Cemetery, and Consumer Services at (800) 323-2627.**

**NOTICE:** By signing this Agreement, Purchaser is agreeing that any claim Purchaser may have against the Seller shall be resolved by arbitration and Purchaser is giving up his/her right to a court or jury trial as well as his/her right of appeal.

Signed this 30th day of April , 20 13

Purchaser: _Louis L Kleiman_   Relationship: father

Co-Purchaser: ___   Relationship: ___

**Star of David Cemetery of the Palm Beaches**
9321 Memorial Park Road, West Palm Beach, FL 33412

Accepted by: ___
I attest that I have reviewed this document for accuracy and completeness.

KARP_00000034

monuments or to limit upright monuments to certain designated sections of the cemetery. A memorial tablet conforming to Seller's rules and regulations may be placed on any interment space covered by this Agreement.

3.  Except on written permission of Seller, no interment shall be made nor any memorial installed until the Total Purchase Price and any delinquency charges are fully paid. Any interment made or memorial installed before full payment of the Total Purchase Price and delinquency charges shall be only temporary, and no rights shall be acquired by Purchaser by reason of said interment or installation.

4.  It is expressly understood that acceptance of this Agreement shall not preclude the Seller from filing a claim for payment against the estate of the deceased. Such claim shall be an additional and cumulative remedy, the filing of which shall not release the Purchaser nor prevent the taking of any legal procedure necessary to effect the collection of amounts owed under this Agreement.

5.  The Seller expressly reserves the right at any time it finds itself unable to fulfill this Agreement or perform any services or make any interment because of strike, lockout, invasion, insurrection, riot, war, order of any military or civil authority, court order, or any other unforeseen contingency, because of misrepresentation or fraud in the procuring of same, because of any mistake or error in description, location, or availability of property or because the person for whom the Interment Rights, Merchandise and/or Services are purchased is not eligible for interment in the property herein described, to return to the Purchaser all monies paid hereunder for the items affected by such, and this Agreement shall, as to such affected items, thereupon become null and void without further obligation or liability on the part of the Seller.

6.  It is agreed by and between the parties that it would be extremely difficult, if not impossible, to fix the actual damage, if any, which may proximately result from a breach of this Agreement or any error or mistake in connection therewith, and that in case of failure of Seller to perform or furnish, or in case of any error or mistake in connection with the Interment Rights, Merchandise and Services provided hereunder, or any other breach of this Agreement and a resulting loss, Seller's liability hereunder shall be limited to and fixed at the amount paid by Purchaser to Seller pursuant to this Agreement as liquidated damages, not as a penalty, and this liability shall be exclusive.

7.  Transfer of Purchaser's rights under this Agreement must be performed in accordance with Seller's Rules and Regulations. This Agreement shall be binding on the heirs, executors, administrators, successors and assigns of the Purchaser. Purchaser further agrees that Seller may assign its rights under this Agreement and that this Agreement shall be binding upon and inure to the benefit of the successors and assigns of the Seller. It is further agreed that when this Agreement is signed by more than one Purchaser, each of such Purchasers becomes jointly and severally liable hereunder. Purchaser agrees to pay all reasonable costs of collection to the extent permitted by law, including court costs, disbursements, and other lawful charges incurred in the collection of the Purchaser's indebtedness to Seller; provided, however, that each party shall pay its own attorneys' fees incurred in connection with any collection effort or any other dispute of any nature relating to this Agreement and the transaction contemplated hereby.

8.  ENDOWMENT/PERPETUAL CARE FUND (hereinafter referred to as "Care and Maintenance Trust Fund"). Seller hereby binds itself to maintain the interment spaces or other interment facilities described in "Schedule A", and to deposit from payments received hereunder the amounts required by law to a Care and Maintenance Trust Fund created for the continual maintenance of all developed cemetery property without further assessment to Purchaser. Such deposit to the Care and Maintenance Trust Fund shall be in trust with a bank, savings and loan association or other entity authorized to hold such funds in accordance with the applicable law governing such Care and Maintenance Trust Fund, and the net income from the Care and Maintenance Trust Fund shall be used solely for the continuing care and maintenance of the developed cemetery and to pay such costs as may be reasonably necessary for the administration of the Care and Maintenance Trust Fund.

9.  Owners of Interment Rights are required to keep the Seller advised of their current residence address. Florida law provides that failure to do so may, under certain circumstances, result in forfeiture of such rights.

**WATER TABLE: In Florida, the water table is at a depth that may result in the presence of water in a burial space. By signing this Agreement, Purchaser acknowledges this possibility and agrees to release Seller from any liability relating thereto.**

**ARBITRATION: Purchaser agrees that any claim he/she may have relating to the transaction contemplated by this Agreement (including any claim or controversy regarding the interpretation of this arbitration clause) shall be submitted to and finally resolved by mandatory and binding arbitration in accordance with the applicable rules of the American Arbitration Association ("AAA"); provided, however, that the foregoing reference to the AAA rules shall not be deemed to require any filing with that organization, nor any direct involvement of that organization. The arbitrator shall be selected by mutual agreement of the parties. If the parties fail to or are unable to agree on the selection of an appropriate arbitrator, the AAA shall select the arbitrator pursuant to its rules and procedures upon the application of one or both parties. This agreement to arbitrate also applies to any claim or dispute between or among the Seller, you as the Purchaser, any person who claims to be a third party beneficiary of this Agreement, any of the employees or agents of the Seller, or any of the Seller's parent, subsidiary or affiliate corporations. Except as may be required by law, neither party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of both parties.**

**DISCLAIMER OF SELLER'S WARRANTIES: THE ONLY WARRANTY ON ANY GOODS SOLD IN CONNECTION WITH THIS AGREEMENT IS THE EXPRESS WRITTEN WARRANTY, IF ANY, GRANTED BY THE MANUFACTURER. SELLER MAKES NO WARRANTY, EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY, WITH RESPECT TO THE GOODS SO DESCRIBED. WITH RESPECT TO MAUSOLEUM CRYPTS, LAWN CRYPTS, OR NICHES SOLD HEREUNDER, THE ONLY WARRANTIES RELATING TO SUCH ITEMS SHALL BE THOSE IMPLIED WARRANTIES PROVIDED BY LAW AND SELLER MAKES NO EXPRESS WARRANTIES WITH RESPECT TO SAID ITEMS.**

**ENTIRE AGREEMENT: This Agreement contains all terms which have been agreed upon by the Purchaser and the Seller relating to the goods and services listed in "Schedule A". This Agreement replaces all other discussions and agreements, whether oral or written, relating to those goods and services. No subsequent discussion or agreement can change the terms of this Agreement unless it is written and is signed by both the Purchaser and the Seller (or the Seller's assignee).**

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**SEE OTHER SIDE AND "SCHEDULE A" FOR ADDITIONAL TERMS AND CONDITIONS**

KARP_00000035

STATEMENT OF INTERMENT RIGHTS, MERCHANDISE AND SERVICES SCHEDULE - A

### MERCHANDISE AND SERVICES

| Qty | Description | Unit | Gross |
|---|---|---|---|
| | | **Price** | |
| **MERCHANDISE AND SERVICES** | | | |
| 1 | Std Lincoln Not Painted Concrete | $1,095.00 | $1,095.00 |
| | Supplier: | | |
| | Model #:   Lincoln | | |
| | Material: | | |
| | Lining: | | |
| | Lid Type: | | |
| 1 | Interment-Adult | $1,550.00 | $1,550.00 |
| 1 | Processing Fee | $95.00 | $95.00 |
| | **TOTAL MERCHANDISE AND SERVICES** | | **$2,740.00** |

| **TOTAL INTERMENT RIGHTS, MERCHANDISE AND SERVICES** | **$2,740.00** |
|---|---|

### SCHEDULE A - SUMMARY

| | |
|---|---|
| Total Interment Rights, Merchandise and Services : ................................................ | $2,740.00 |
| Total Discounts : ...................................................................................................... | $0.00 |
| CASH PRICE (TOTAL CHARGES) (Excluding Sales Tax) : .......................................... | $2,740.00 |
| Sales Tax on CASH PRICE : ..................................................................................... | $0.00 |
| TOTAL CASH PRICE (TOTAL CHARGES) : | $2,740.00 |

KARP_00000036

File Folder Name/Number _____

## CEMETERY INTERMENT RIGHTS, MERCHANDISE, AND SERVICES PURCHASE/SECURITY AGREEMENT
### THIS AGREEMENT PROVIDES FOR CARE AND MAINTENANCE.

The undersigned, referred to as 'Purchaser', hereby agrees to purchase the Interment Rights, Merchandise and Services described herein, subject to acceptance and approval of the above named cemetery, hereafter referred to as 'Seller'.

**Purchaser: Last Name:** Kleiman    **First:** LOUIS    **Middle:** 1

Telephone:   SSN:   DOB:   /   /   Email:

Address:   City:   State:   Zip:

**Co-Purchaser: Last Name:**    **First:**    **Middle:**

Telephone: ( )   SSN:   DOB:   /   /   Email:

Address:   City:   State:   Zip:

**Deceased: Last Name:** Kleiman    **First:** David    **Middle:** Alan

DOB:   DOD:   Burial Date: / / 20(3   Veteran: ☐

Description of Interment Rights to be used:     Memorialization Rights:

Issue Certificate of Interment Rights to:

Address:   City:   State:   Zip:

### INTERMENT

- Interment Rights _____ $ _____
  (Includes Care and Maintenance of $ _____ )
- Interment and Recording Fees _____
- Outer Burial Container _____
  Supplier _____
  Model/Design _____
  Material/Color _____
- Outer Burial Container Installation _____

### MEMORIALIZATION
- Memorial _____
  Supplier _____
  Type/Color _____
  Design/Size _____
- Memorial Base _____
  Supplier _____
  Type/Color _____
  Design/Size _____
- Memorial Installation Fee _____
- Nameplate/Scroll _____
- Lettering _____
- Flower Vase _____
  Supplier _____
  Type/Color _____
  Design/Size _____
- Vase Base _____
  Size/Material _____

### MERCHANDISE & SERVICES
- Urn _____
  Supplier _____
  Type/Color _____
  Design/Size _____
- Processing/Archiving Fee _____
  Other _____
- Other _____
- Other _____

**See Schedule A for a list of Property, Merchandise and Services selected**

TOTAL ALLOWANCES & TAXES
Merchandise/Service _____ ( _____ )
Reason _____
Merchandise/Service _____ ( _____ )
Apply to _____
Merchandise/Service _____ ( _____ )
Reason _____
Apply to _____

**TOTAL PURCHASE PRICE** $ _____ 187.00
Less: Down Payment _____ 187.00
Other _____ 0.00

**Total Down Payment** ( _____ 187.00 )
**Unpaid Balance of Total Purchase Price** $ _____ 0.00

Notes & Payment Terms (where applicable): _____

### TERMS

**Agreement to Pay:** The Total Purchase Price is due and payable as of the date of this Agreement. A delinquency charge of five percent will be assessed monthly on any balance not paid within 30 days of the date of this Agreement. If less than full payment is received, Seller shall deduct the accrued delinquency charge from the amount received, and credit the remainder of the payment to the Unpaid Balance.

**Title:** Seller (or its assigns) will retain title to said Interment Rights and Merchandise until the Total Purchase Price, together with any delinquency charges thereon have been paid by Purchaser to Seller.

**Cemetery Rules and Regulations:** Purchaser shall comply at all times with all Rules and Regulations now existing, or hereafter adopted by the Seller and approved by the Florida Board of Funeral, Cemetery, and Consumer Services, for the care, control, management and protection of the cemetery, and for all purposes deemed necessary by Seller for the proper conduct of the business of the cemetery and the protection and safeguarding of the premises, principles, plans and ideals upon which the cemetery was established. Purchaser understands that such Rules and Regulations are subject to inspection by Purchaser at the office of Seller.

**The Purchaser shall have thirty days from the date of execution of this Agreement to cancel the Agreement and receive a total refund of all monies paid for items not used.**

**Any questions or complaints concerning this transaction may be directed to the Florida Board of Funeral, Cemetery, and Consumer Services at (800) 323-2627.**

**NOTICE:** By signing this Agreement, Purchaser is agreeing that any claim Purchaser may have against the Seller shall be resolved by arbitration and Purchaser is giving up his/her right to a court or jury trial as well as his/her right of appeal.

Signed this 26th. day of July , 2013

Purchaser: Louis L Kleiman Relationship: Father

Co-Purchaser: /l. Relationship: _____

Star of David Cemetery of the Palm Beaches
9321 Memorial Park Road, West Palm Beach, FL 33412

Accepted by: _____
I attest that I have reviewed this document for accuracy and completeness.

KARP_00000037

Star of David Cemetery of the Palm Beaches

9321 Memorial Park Road, West Palm Beach, FL 33412  (561) 627-2277

Contract Number:  015940000152

## STATEMENT OF INTERMENT RIGHTS, MERCHANDISE AND SERVICES SCHEDULE - A

### MERCHANDISE AND SERVICES

| | | Price | |
|---|---|---|---|
| Qty  Description | | Unit | Gross |
| **MERCHANDISE AND SERVICES** | | | |
| 1    Single Marker Installation | | $187.00 | $187.00 |
| **TOTAL MERCHANDISE AND SERVICES** | | | **$187.00** |

| | |
|---|---|
| **TOTAL INTERMENT RIGHTS, MERCHANDISE AND SERVICES** | **$187.00** |

### SCHEDULE A - SUMMARY

| | |
|---|---|
| Total Interment Rights, Merchandise and Services : .................................................. | $187.00 |
| Total Discounts : ...................................................................................................... | $0.00 |
| CASH PRICE (TOTAL CHARGES) (Excluding Sales Tax) : ........................................ | $187.00 |
| Sales Tax on CASH PRICE  : ...................................................................................... | $0.00 |
| TOTAL CASH PRICE (TOTAL CHARGES) : | $187.00 |

KARP_00000038

**IN THE CIRCUIT COURT FOR PALM BEACH COUNTY,**
**FLORIDA**                                   **PROBATE DIVISION**

**IN RE: ESTATE OF**

**DAVID ALAN KLEIMAN**                **File No.**

**Division**
          **Deceased.**

### ORDER FOR PAYMENT OF FUNDS
### (testate)

On the petition of Applicant, IRA STEVEN KLEIMAN, for Disposition of Personal Property Without Administration, re the estate of DAVID ALAN KLEIMAN, deceased, the court finding that the decedent died on April 26, 2013, that the material allegations of the petition are true; that the Will dated July 30, 2003, is in possession of this Court, and that the decedent's estate qualifies for disposition of personal property without administration, and an Order for Payment of Funds should be entered, it is

ADJUDGED that:

1.    There be immediate distribution of the assets of the decedent as follows:

| **Name** | **Address** | **Description of Asset, and Share or Amount** |
|---|---|---|
| LOUIS L. KLEIMAN | ███████████ | Check from Merit Life Insurance Co. $9,098.49 |

2.    Those to whom specified parts of the decedent's estate are assigned by this order shall be entitled to receive and collect the same, and to maintain actions to enforce the right.

3.    Debtors of the decedent, those holding property of the decedent, and those with whom securities or other property of decedent are registered, are authorized and empowered to comply with this order by paying, delivering, or transferring to those specified above the parts of the decedent's estate assigned to them by this order, and the persons so paying, delivering, or transferring shall not be accountable to anyone else for the property.

ORDERED on _____, 2013.


_____
Circuit Judge

KARP_00000039

IN THE CIRCUIT COURT FOR PALM BEACH COUNTY,
FLORIDA                          PROBATE DIVISION

IN RE: ESTATE OF

DAVID ALAN KLEIMAN            File No.

                             Division
    Deceased.

### ORDER FOR PAYMENT OF FUNDS
(testate)

On the petition of Applicant, IRA STEVEN KLEIMAN, for Disposition of Personal Property Without Administration, re the estate of DAVID ALAN KLEIMAN, deceased, the court finding that the decedent died on April 26, 2013, that the material allegations of the petition are true; that the Will dated July 30, 2003, is in possession of this Court, and that the decedent's estate qualifies for disposition of personal property without administration, and an Order for Payment of Funds should be entered, it is

    ADJUDGED that:

    1.    There be immediate distribution of the assets of the decedent as follows:

| Name | Address | Description of Asset, and Share or Amount |
|------|---------|-------------------------------------------|
| LOUIS L. KLEIMAN | █████████ | Check from Merit Life Insurance Co. $9,098.49 |

    2.    Those to whom specified parts of the decedent's estate are assigned by this order shall be entitled to receive and collect the same, and to maintain actions to enforce the right.

    3.    Debtors of the decedent, those holding property of the decedent, and those with whom securities or other property of decedent are registered, are authorized and empowered to comply with this order by paying, delivering, or transferring to those specified above the parts of the decedent's estate assigned to them by this order, and the persons so paying, delivering, or transferring shall not be accountable to anyone else for the property.

    ORDERED on _____, 2013.

_____
    Circuit Judge

KARP_00000040



**TransUnion**,  TRANSUNION CONSUMER CREDIT REPORT

Subscriber Name: KARP LAW
Subscriber Code/Market:
Results Issued: 5/21/13 10:55 CT

INPUT PARAMETERS FOR PRIMARY SUBJECT
Reference ID:
SSN:
Name: Kleiman, David
Current Address:

KLEIMAN , DAVID  A.
Also Known As:
KLEIMAN,DAVID,ALAN

SSN:            Phone:                    In File Since:  5/90
Date of Birth:

Current Address:            Previous Address:            Previous Address:

Reported 11/06            Reported 7/97

**EMPLOYMENT**

**ALERTS AND SPECIAL MESSAGES**

**CREDIT INFORMATION   Summary   (Total History)**

| Public Records: | 0 | Collections: | 1 | Trades: | 17 | Inquiries: | 4 |
| Negative Trade Accounts: | 5 | Trade Accounts with Any Historical Negatives: | 3 | Occurrence of Historical Negatives: | 28 | | |

**COLLECTIONS**

CONFIDENTIAL



EXHIBIT
2

KARP_00000096

TRANSUNION CONSUMER CREDIT REPORT

Results Issued: 5/21/13 19:55 C.
Page: 2 of  5

TRADES

CONFIDENTIAL

KARP_00000097

TRANSUNION CONSUMER CREDIT REPORT

Results Issued: 5/21/13 10:53 AM
Page: 3 of 5

TRADES



CONFIDENTIAL

TRANSUNION CONSUMER CREDIT REPORT

Results Issued: 5/21/13 10:55 CT
Page: 4 of  5

TRADES



**TRANSUNION CONSUMER CREDIT REPORT**

Results Issued: 5/21/13 17:65:13
Page: 5 of  5

**TRADES**



**INQUIRIES**

| Date | Subscriber Name (Code) | Type | Amount |
|------|------------------------|------|--------|
| 5/21/13 | KARP LAW (PDC5182364 FLA) | | |
| 4/22/13 | SPRINGLF FIN (FTA8780882 FLA) | | |
| 9/12/11 | GECRB/AMAZON (BNY5371284 EAS) | | |
| 6/16/11 | CAP ONE (BPC2699824 NTL) | | |

**ADDRESS ANALYSIS**

**REPORT SERVICED BY**
TRANSUNION
(800) 888-4213
P.O. BOX 1000, CHESTER, PA 19022
CONSUMER DISCLOSURES CAN BE OBTAINED ONLINE THROUGH TRANSUNION AT:
HTTP://WWW.TRANSUNION.COM

END OF TRANSUNION REPORT

Achieve more™ with **TransUnion**

CONFIDENTIAL

KARP_00000100



# THE KARP LAW FIRM

*A Professional Association*

Elder Law • Estate Planning & Administration • Probate • Disability, Special Needs, Medicaid & Veterans Benefits Planning

*Please Reply to:*
*Palm Beach Gardens*

**JOSEPH S. KARP**
Florida Certified Elder Law Specialist
Certified Elder Law Attorney, Natl. Elder Law Foundation
Member, FL & NY Bar

**ADMINISTRATOR**
Audrey L. Yeager, CP

**GENNY BERNSTEIN**
Florida Certified Elder Law Specialist
**GINA GRANDINETTE**
**ADELE SMALL HARRIS**
**CHAD L. STESKAL, LL.M.**

Of Counsel
**RACHEL GOLDSTEIN ZETOUNI**

June 18, 2015

Department of the Treasury
Attn: Mr. Michael Tosi
1111 Constitution Ave, NW M4-331
Washington, DC 20224

RE:     Case #362215

Dear Mr. Tosi:

I am writing on behalf of Ira Kleiman. I represent him with regard to any affairs of the Estate of David Kleiman.

I would like to respond to your letter dated May 20th as best as we can to provide you with complete information as we know it.

Ira is David's brother. He had limited contact and personal knowledge as to David's financial affairs throughout David's life. Most particularly, prior to January 1, 2012 through David's date of death of April 26, 2013. David spent most of his time in the VA Hospital in Miami during which time Ira never saw him at the hospital. He may have seen David one time when David took a leave from the hospital. At no time did Ira ever discuss David's financial affairs with him and was never aware of them. His only knowledge was that David was financially strapped and had limited resources.

I am enclosing a copy of David's will which was filed with the court as required. The only probate documents which were done were done under Florida Law to reimburse David's father for the compensation for the funeral. There was no formal probate proceeding whatsoever. The reason for this was quite simple. After checking records, David was deep in debt and had outstanding mortgages and liens on his home which exceeded his potential assets and it made no sense.

---

Quantum Park, Suite 203
2500 Quantum Lakes Drive
Boynton Beach, FL 33426
(561) 752-4550  Fax: (561) 625-0060

2875 PGA Boulevard, Suite 100
Palm Beach Gardens, FL 33410-2910
(561) 625-1100  Fax: (561) 625-0060
(Main Office)

Seacoast Banking Centre
Suite 102
1100 S. W. St. Lucie West Boulevard
Port St. Lucie, FL 34986
(772) 343-8411  Fax: (561) 625-0060

E-mail: klf@karplaw.com  #  On the web: www.karplaw.com  #  Out of state toll free 0911



**EXHIBIT**

3

11/25/19

KARP_00000052

Letter dated June 18, 2015
Page 2

With regard to W&K LLC or bitcoins, Ira had no personal knowledge of any of this, and has no proof or evidence of what bitcoins David may own or any information. Although, he did hear from Dr. Craig Steven Wright that David did have an interest in Bitcoins, Dr. Wright was totally unaware of how to locate them, identify them or track them. Ira has taken no formal steps to do that himself, either.

Ira has no personal knowledge of any trusts that David may have had and never heard any of it from David. Dr. Wright has communicated with Ira at Dr. Wright's initiation.

With regard to any dealings with Dr. Craig Steven Wright, the only information Ira has is that information which was transmitted by Dr. Wright. He never heard of Dr. Wright from David, nor in cleaning up David's papers or affairs were anything located which indicated Dr. Wright, bitcoins, or any of the business dealings that he may have had with Dr. Wright. The only indications that he would have of any agreements between David and Dr. Wright, or W&K LLC would have been transmitted to him by Dr. Wright. He has no independent recollection of any of the documents or transmissions that were provided. Those records have not been destroyed by him and would be available if required to provide same.

With regard to the financial statements of W&K LLC, again, if they exist, he believes he may have received some and they would, too, have been attached to emails which he received. If you can advise of the legal requirement to provide same, he shall. He does not mean to be obstructive, but he wishes to ensure he is doing everything he is required to do. If you contact me we may discuss this so that we can facilitate the turning over of the information.

With regard to anything with W&K LLC's business activities, again, any information that Ira has would not be as a result of any source other than Dr. Wright. There were no records left by David that which Ira was aware, nor did Ira receive any other third party confirmation other than questions raised by the Australian authorities several years ago.

Once again, with regard to consent orders and transfers, Ira has not gone through all of the paperwork for a long period of time and has no independent recollection of what they say and again, would be willing to provide them appropriately. Please understand Ira's position. He is not the executor of David's estate. He was designated as the personal representative, but no probate occurred, and he did not open up an estate. The reason no estate was opened up is the information that was had, at the time, was that David had only debts and a homestead property which was mortgaged in excess of its fair market value and had also outstanding obligations to its homeowners association. There may have been other minor assets which were not worth pursuing under the circumstances.

Any information that Ira received was initiated by contact by Dr. Wright to Ira, whom he had never heard of before David's death and had been contacted by Dr. Wright.

THE KARP LAW FIRM   *A Professional Association*

Elder Law • Estate Planning & Administration • Probate • Disability, Special Needs, Medicaid & Veterans Benefits Planning
E-mail: klf@karplaw.com • On the web: www.karplaw.com • Out of area toll-free: (800) 893-9911

KARP_00000053

Letter dated June 18, 2015
Page 3

Again, there is no desire to impede any appropriate investigation. In fact, if it could be found that David was entitled to significant assets, bitcoins or otherwise, Ira would be the ultimate beneficiary even after any taxes and other obligations so he looks forward to assisting you, especially if it can assist him.

                                        Very truly yours,

                                        JOSEPH S. KARP

JSK/jjm

cc:    Ira Kleiman

**THE KARP LAW FIRM**  *A Professional Association*

Elder Law • Estate Planning & Administration • Probate • Disability, Special Needs, Medicaid & Veterans Benefits Planning
E-mail: klf@karplaw.com   •   On the web: www.karplaw.com   •   Out of area toll-free: (800) 893-9911

 **THE KARP LAW FIRM**          *A Professional Association*

Elder Law • Estate Planning & Administration • Probate • Disability, Special Needs, Medicaid & Veterans Benefits Planning

*Please Reply to:*
*Palm Beach Gardens*

**JOSEPH S. KARP**
Florida Certified Elder Law Specialist
Certified Elder Law Attorney, Natl. Elder Law Foundation
Member, FL & NY Bar

**ADMINISTRATOR**
Audrey L. Yeager, CLA

**GENNY BERNSTEIN**
Florida Certified Elder Law Specialist
**ADELE SMALL HARRIS**

October 26, 2010

M. Brock McSwain, Treasurer
Casa Rio Homeowners' Sub-Association, Inc.
5646 Corporate Way
West Palm Beach, Fl.  33407

Re:   Mr. David Kleiman

Dear Mr. McSwain:

I am writing on behalf of David Kleiman, not only as an attorney but as a friend.  I have known him all of his life.

Unfortunately, David is currently in the VA Hospital in Miami and will be until January or February 2011 as a result of an ailment from which he is currently suffering.

It appears during this time unless there is a change in circumstances, he will falling behind on his quarterly dues.  We would appreciate your understanding this and recognize that once David gets out (he is self-employed) he will get back to work and he will be able to take care of things.  We would appreciate your consideration in this matter.  Please please feel to contact me directly.  Any mail to David's home will not accomplish very much as a friend of his is picking up his mail and delivering it to me.

Very truly yours,

Joseph S. Karp

JSK/jke

EXHIBIT
4
11/25/19
SUPPIXJUSTICE.COM

Quantum Park, Suite 203
2500 Quantum Lakes Drive
Boynton Beach, FL 33426
(561) 752-4550  Fax: (561) 625-0060

2875 PGA Boulevard, Suite 100
Palm Beach Gardens, FL 33410-2910
(561) 625-1100  Fax: (561) 625-0060
(Main Office)

Seacoast Banking Centre, Suite 102
1100 S. W. St. Lucie West Boulevard
Port St. Lucie, FL 34986
(772) 343-8411  Fax: (561) 625-0060

E-mail: klf@karplaw.com   .   On the web: www.karplaw.com   .   Out of area toll-free: (800) 893-9911

# 🏠CASA RIO HOMEOWNERS' SUB-ASSOCIATION, INC.🏠

5646 Corporate Way
West Palm Beach, Florida  33407

October 9, 2010

Mr. David Kleiman

**RE: Past Due Maintenance Fees**

Dear Mr. Kleiman:

We have not received your full payment for the fourth quarter of 2010. The operating budget requires each homeowner to pay quarterly dues to cover the upkeep of our section within the community. Please remit **$333** to our bookkeeper at the above address by **October 15, 2010**. If payment is not received by this date your account will be assessed a **$40 late fee** and you could incur additional collection costs such as attorney fees. Unpaid assessments will result in a lien being filed against your property. Thank you for your attention to this matter.

Disregard this notice if you have sent payment since the mailing of this letter. If you have questions concerning your account, please feel free to give me a call at 845-6355.

Sincerely,

M. Brock McSwain
Treasurer

# K THE KARP LAW FIRM

*A Professional Association*

Elder Law • Estate Planning & Administration • Probate • Disability, Special Needs, Medicaid & Veterans Benefits Planning

**Please Reply to:**
*Palm Beach Gardens*

**JOSEPH S. KARP**
Florida Certified Elder Law Specialist
Certified Elder Law Attorney, Natl. Elder Law Foundation
Member, FL & NY Bar

**ADMINISTRATOR**
Audrey L. Yeager, CP

**GENNY BERNSTEIN**
 Florida Certified Elder Law Specialist
**GINA GRANDINETTE**
**ADELE SMALL HARRIS**
**CHAD L. STESKAL, LL.M.**

Of Counsel
**RACHEL GOLDSTEIN ZETOUNI**

July 16, 2015

**Via E-Mail Only to asommer@claytonutz.com**

RE:    Craig Wright and Ira Kleiman

Dear Mr. Sommer:

It's been quite a while since we have communicated.

Ira Kleiman has gotten in touch with me as he was trying to reach out to Craig to no avail and then contacted you and was under the impression that you were not in a position to talk to talk to him.

If you could be so kind as to advise me if you are no longer representing Craig. I would not contact him directly on Ira's behalf as long as he is represented by you unless you authorized it in writing.

If you are representing him, is it currently the status that he is not interested in hearing from Ira and that any pursuit of any further communication between Ira and himself through you or any other means would be unwelcome?

If you are no longer representing him, I apologize for taking up your time, but as you well can appreciate, ethically, I cannot communicate with anyone directly (in this case Craig) unless I am assured that the person whom I believe to be the attorney is no longer representing him.

Sorry I didn't get to go to Australia. Best wishes.

Very truly yours,

JOSEPH S. KARP

JSK/jjm
cc:   Ira Kleiman

**EXHIBIT**
**5**
AL  11/25/19

Quantum Park, Suite 203
2500 Quantum Lakes Drive
Boynton Beach, FL 33426
(561) 752-4550  Fax: (561) 625-0060

2875 PGA Boulevard, Suite 100
Palm Beach Gardens, FL 33410-2910
(561) 625-1100  Fax: (561) 625-0060
(Main Office)

Seacoast Banking Centre
Suite 102
1100 S. W. St. Lucie West Boulevard
Port St. Lucie, FL 34986
(772) 343-8411  Fax: (561) 625-0060

E-mail: klf@karplaw.com  ‡  On the web: www.karplaw.com  ‡  Out of area toll-free:  (800) 893-9911