**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 9:18-cv-80176

IRA KLEIMAN,
as personal representative of
the estate of David Kleiman,
and W&K INFO DEFENSE RESEARCH,
LLC,

      Plaintiffs,

v.

CRAIG WRIGHT,

      Defendant.
_____/

## DR. WRIGHT'S MOTION *IN LIMINE*

Dr. Craig Wright respectfully submits this motion *in limine* to exclude the following items from being admitted as evidence:

**1. Judicial Statements Regarding Dr. Wright's Credibility Should Be Excluded from Evidence**

Dr. Wright requests that the Court exclude at trial any mention of any prior judicial statements about his credibility. Dr. Wright seeks to exclude these comments because "[u]nquestionably, any comment by a trial judge concerning the evidence or witnesses may influence a jury considerably, and emphatic or overbearing remarks particularly may be accepted as controlling, thus depriving a defendant of his right to have questions of fact and credibility determined by the jury." *Gov't of Virgin Islands v. Williams*, 370 F. App'x 294, 296 (3d Cir. 2010). The same rationale holds true with regard to statements by government officials from the Australian Tax Office ("ATO"). Those statement are inadmissible hearsay as discussed *infra* at sec. 2.C.

Dr. Wright will not have a fair trial—and due process will be denied—if the jury heard judicial comments (including this Court's prior comments) about his credibility. It is wholly within the jury's province as fact finder to assess the credibility of witness testimony and weigh the evidence. *E.g.*, *U.S. v. Cisneros*, 491 F.2d 1068, 1074 (5th Cir. 1974) ("Most important, [The Court] must in no way trespass on the jury's functions and responsibilities, among the most important of which in terms of this appeal is the right to assess credibility in finding the facts.") (citing *U.S. v. Williams*, 447 F.2d 894, 902 (5th Cir. 1971); *Snowden v. Singletary*, 135 F.3d 732, 739 (11th Cir. 1998) ("Credibility determinations, of course, are within the sole province of the jury"); *Provide Commerce, Inc. v. Preferred Commerce, Inc.*, No. 07-80185, 2008 WL 926777, at *3 (S.D. Fla. Apr. 4, 2008) ("Credibility determinations, of course, are within the sole province of the jury.").

By way of example, the Magistrate has made the following comments about Dr. Wright's credibility:

> During his testimony, Dr. Wright's demeanor did not impress me as someone who was telling the truth. When it was favorable to him, Dr. Wright appeared to have an excellent memory and a scrupulous attention to detail. Otherwise, Dr. Wright was belligerent and evasive. He did not directly and clearly respond to questions. He quibbled about irrelevant technicalities. When confronted with evidence indicating that certain documents had been fabricated or altered, he became extremely defensive, tried to sidestep questioning, and ultimately made vague comments about his systems being hacked and others having access to his computers. None of these excuses were corroborated by other evidence.
>
> Sadly, Dr. Wright does not write on a clean slate. As Judge Bloom recently noted in denying Dr. Wright's Motion for Judgment on the Pleadings, Dr. Wright has taken directly conflicting factual positions at different times during this litigation. DE 265 at 10 ("[T]he record is replete with instances in which the Defendant has proffered conflicting sworn testimony before this Court.). As discussed below, that behavior continued before me.

D.E. 277 19-20. Dr. Wright respectfully submits that such "strongly worded comment[s] by the [C]ourt questioning the defendant's credibility may well overbear the jury's ability to make

independent fact findings," *U.S. v. Anton*, 597 F.2d 371, 374 (3d Cir. 1979). Permitting such comments would be tantamount to allowing the Court to weigh the credibility of defendant at trial, which it is not permitted to do. *See Carr v. State of Ala.*, 586 F.2d 462, 464 (5th Cir. 1978) ("It is not for this Court to weigh the credibility of witnesses.") *quoting United States v. Vomero*, 567 F.2d 1315, 1316 (5th Cir. 1978).

Moreover, these judicial statements are of such weight that, if admitted as evidence, such evidence would run afoul of Rule 605, which bars a presiding judge from testifying at trial. Further, with regard to the Magistrate Judge's statements, permitting their reference would be akin to allowing him to testify at trial, but "[t]here is substantial risk that a jury will give too much credence to the testimony of a judge. A judge's testimony is likely to bear additional weight in the mind of jurors because of his position and authority, and because it automatically bears the imprimatur of character, credibility and reliability emanating from the judge's position rather than the quality or veracity of his testimony." *Georgou v. Fritzshall*, 1995 WL 248002, at *4 (N.D. Ill. Apr. 26, 1995) (internal citations omitted). Thus, in weighing the factors of Rule 403, such evidence should be precluded. *See U.S. v. Gonzalez*, 718 F.Supp.2d 1341, 1347-1349 (2010) (precluding testimony in perjury case because "there is considerable danger of unfair prejudice because of the risk that the jury would give too much credence to Judge Altonaga's testimony due to her position and stature as a Federal District Court Judge.")

Dr. Wright respectfully requests that the Court's and the ATO's comments as to his credibility be excluded from any mention at trial.

2. **The Court Should Exclude Evidence Relating to The Australian Tax Office's Audits of Non-Party Australian Companies**

All issues in this case relate to whether the late Dave Kleiman ("D.K.") and Dr. Craig Wright were in a partnership to mine bitcoin and develop bitcoin-related intellectual property.

3

None of the issues in this case concern the ATO's audits of non-party Australian companies.[1] The only issues proper for the jury to decide here are those germane to this case, not issues about Australian tax audits of non-parties that should be dealt with in Australia. The Court should exclude from evidence the Australian tax documents for the following reasons:

*First*, the lion's share of the thousands of tax documents produced in this case is wholly irrelevant to this action. *See* Fed. R. Evid. 401. The tax documents primarily concerned the question whether non-party Australian companies were entitled to receive non-refundable tax offsets for research and development. The ATO's audit resulting from those Australian tax offsets would not make any fact of consequence in this case more or less probable. *Id.* The Australian tax offsets have nothing to do with whether D.K. and Dr. Wright had a partnership to mine bitcoin or develop bitcoin-related intellectual property.[2]

*Second*, even if any of these tax documents could meet the threshold requirements of Rule 401, exclusion still would be required because the probative value of those documents is substantially outweighed by the danger of "unfair prejudice," "confusing the issues," and "misleading the jury." Fed. R. Evid. 403. For example, during a March 26, 2019 hearing, plaintiffs' counsel stated that he was purportedly contacted by the ATO's "criminal investigations unit," because, "[e]vidently they are investigating a criminal action[,]" to which the Court responded "I understand. OK. I don't need to know too much about that." *See* D.E. 131-1 at 11:13-12:2. Plaintiffs' motive then and now was character assassination based on purported information that never had anything to do with their case. Notably, **there is no such**

---

[1] Dr. Wright served as a director of some of these Australian companies until June 2015 and was no longer a director or officer of any of those companies after that date.
[2] The only reason D.K.'s name came up was in connection with a non-party company named Coin-Exch., which is not the subject of plaintiffs' claims.

4

*thing* as an ATO "criminal investigations unit."[3] It simply doesn't exist. But even if plaintiffs' imaginary "criminal investigations unit" had existed, plaintiffs' comments had nothing to do with the hearing at which they were made, and everything to do with creating unfair, undue prejudice. Plaintiffs should not be allowed to trek down that path at trial, inflaming and misleading the jury with irrelevant, untrue innuendo that would serve only to confuse the issues and create unfair prejudice. *See*, *e.g.*, *Deman Data Sys., LLC v. Schessel*, 2015 WL 82791, at *2 (M.D. Fla. Jan. 6, 2015) (excluding evidence of tax evasion charge and fraud investigation because it "would result in a mini-trial regarding [defendant's] irrelevant past. Any possible probative value is substantially outweighed by the danger of unfair prejudice, confusing the jury, and undue delay."); *U.S. v. Shayota*, 2016 WL 6093237, at *5 (N.D. Cal. 2016) ("[T]he Court finds that the prejudicial impact of this evidence would significantly outweigh its probative value, and therefore evidence of the tax investigation fails the Rule 403 balancing.").

*Third*, the vast majority of the ATO tax documents contain multiple layers of hearsay, for which there is no exception. They largely consist of documents that contain unsworn statements from non-parties. What's more, some of the documents, such as the so-called "transcripts," are mere memoranda that an unknown declarant who may not have heard the statements put together based either on notes or the ATO's recordings.

Exhibit 9 to the Second Amended Complaint illustrates the inherent unreliability of the statements contained in these documents. D.E. 83-9. This exhibit refers to an "interview" at which Dr. Wright was not present about subjects that include Dr. Wright. Moreover, it is simply an ATO employee's after-the-fact notes about a conversation with those individuals.

---

[3] The ATO's organizational chart can be found at the following link, and that chart does not list any "criminal investigations unit," because there is none. *See* https://www.ato.gov.au/about-ato/who-we-are/executive-and-governance/organisational-chart/, last accessed on May 8, 2020.

*Finally*, some of the tax documents, including those that plaintiffs attached to their complaint, did not come from the ATO at all, but were somehow illegally obtained and then published on an internet tabloid website. As demonstrated by the watermark on the face of the documents, *see*, *e.g.*, D.E. 83-9, Gizmodo, an internet tabloid website, obtained these confidential documents and leaked them online, in violation of Australian law. We do not know how Gizmodo got the documents or whether Gizmodo altered them. We do know that neither Gizmodo nor the ATO have testified in this case and neither will testify at trial.

### A.     *The Tax Documents Are Inadmissible Under Rule 401 And 402*

"Irrelevant evidence is not admissible," Fed. R. Evid. 402, and "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action," Fed. R. Evid. 401. The tax documents have nothing to do with any fact *of consequence* in this case. We do not dispute that the tax documents had something to do with non-party Australian companies receiving tax offsets. But those offsets and the ATO's audits have nothing to do with this case.

The only explanation plaintiffs have proffered for connecting the tax offsets to their claims is their belief that Dr. Wright "tried to substantiate the R&D by reference to work he had done with Dave Kleiman and W&K in Florida." D.E. 131-1 at 11:5-7. But even if Dr. Wright had tried to substantiate tax offsets with work he allegedly did with D.K. or W&K, that does not make any fact of consequence in plaintiffs' case more or less probable. Plaintiffs are not suing Dr. Wright for tax offsets, and plaintiffs could never assert a claim for the tax offsets because they are non-transferable and may only be obtained on a going forward basis. In the absence of the full scope and purpose of the ATO proceedings, the ATO documents will be confusing and misleading.  Providing such context, however, will result in a mini trial on an irrelevant issue.

6

Plaintiffs also state that the tax documents discussed how bitcoin should be classified, as money or a commodity, and they believe that D.K. was involved in these discussions. D.E. 131-1 at 11:9-12. Discussing how bitcoin should be classified by the ATO is not relevant.[4]

In sum, the tax documents deal with tax offsets and not with any issues in this case. Therefore, the evidence is not relevant under Rule 401 and should be excluded under Rule 402.

### B. Even If the Tax Documents Were Relevant, They Still Would Properly Be Excluded under Rule 403

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Under Rule 403, "evidence may be excluded when its admission would lead to litigation of collateral issues, thereby creating a side issue which might distract the jury from the main issues." *Blancha v. Raymark Indus.*, 972 F.2d 507, 516 (3d Cir. 1992) (citing *U.S. v. Dennis*, 625 F.2d 782, 797 (8th Cir. 1980)).

As we have demonstrated, evidence that there were multiple ATO audits regarding Australian tax offsets would have little or no probative value, and that insubstantial relevance will be substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury under Rule 403. The questions whether Australian companies were entitled to tax offsets, and whether the tax documents themselves are even authentic, discussed below, would lead to "litigation of collateral issues, thereby creating a side issue which might distract the jury from the main issues." *Blancha*, 972 F.2d at 516. Indeed, the Australian liquidator closed the companies, determining that there were no claims for fraud or impropriety.

---

[4] The discussions with the ATO involved Australia's goods and services tax ("GST"). Because D.K. was a U.S. citizen, he would have had no information, and could not have had any input, on discussions regarding GST in Australia.

7

Thus, even if the tax documents were relevant (they're not) they would properly be excluded under Rule 403.

### C. The Tax Documents Are Inadmissible Hearsay

Rule 802 bars the admission of hearsay, which is any statement "the declarant does not make while testifying at the current trial or hearing" that is offered in evidence "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801. While there are exceptions to the hearsay rule, it is the proponent's burden to establish that proffered hearsay falls within one of the enumerated exceptions. *E.g., U.S. v. Kennard*, 472 F.3d 851, 856 (11th Cir. 2006). However, "[h]earsay within hearsay subject to an exception is not admissible." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1278 (11th Cir. 2009); *see* Fed. R. Evid. 805.

The tax documents are inadmissible hearsay because they consist of the following:

(1) An unknown author's purported "transcriptions" of recordings of meetings—none of which the author attended—that purport to reflect unsworn statements made by several non-parties and Dr. Wright;

(2) ATO employees' memoranda that purport to be summations of meetings, drafted at later times after the meetings;

(3) Recordings of unsworn statements made at a meeting with several non-parties and Dr. Wright; and

(4) Correspondence between Dr. Wright and the ATO.

Each category of these documents contains hearsay, or double hearsay, because the documents contain statements that "the declarant does not make while testifying at the current trial or hearing," and if offered into evidence, will be done so "to prove the truth of the matter

8

asserted in the statement." Fed. R. Evid. 801. Because they are not subject to any enumerated exceptions to the hearsay rule, these documents should be excluded.

### D. *The Tax Documents Cannot Be Authenticated Under Rule 901*

The primary issue regarding authenticating the tax documents, like any other documents, is "whether they are accurate." *U.S. v. Rochan*, 563 F.2d 1246, 1251 (5th Cir. 1977).[5] It is plaintiffs' burden to demonstrate that the tax documents are accurate. *U.S. v. Sutherland*, 656 F.2d 1181, 1201 (5th Cir. 1981).

As discussed above, some of these tax documents were illegally obtained and then published on Gizmodo, an internet tabloid website. There is no way to determine whether documents obtained from an internet hack job are authentic—we don't even know where they came from. Moreover, the ATO and Gizmodo will not be at trial to authenticate the tax documents and neither has testified in this case.

As for the purported "transcripts," Dr. Wright denies that they accurately reflect the discussions in the meetings. Further, these "transcripts" lack any accompanying certificate of accuracy by the transcriber. There is no evidence that the company that prepared them (Auscript) requested and received input from either the ATO or others present at the meeting to confirm the accuracy of the transcripts. In fact, the transcripts are facially incomplete and inaccurate as reflected in numerous ellipses and failure to always identify the speaker indicating that the transcriber could not hear or understand the words being spoken. *See, e.g.*, D.E. 83-12 at 6.

Because the tax documents cannot be authenticated under Rule 901, they should be excluded from evidence.

---

[5] Decisions rendered by the Fifth Circuit prior to October 1, 1981 are binding in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

## CONCLUSION

For the reasons discussed above, Dr. Wright respectfully requests that the Court grant this motion in *limine*.

## S.D. FLA. L.R. 7.1 CERTIFICATION

In accordance with S.D. Fla. L.R. 7.1(a)(3), counsel for Dr. Wright has conferred with plaintiffs' counsel. Plaintiffs have objected to the relief requested here.

Respectfully submitted,

RIVERO MESTRE LLP
*Attorneys for Dr. Craig Wright*
2525 Ponce de Leon Boulevard, Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: amcgovern@riveromestre.com
Email: arolnick@riveromestre.com
Email: bpaschal@riveromestre.com
Email: zmarkoe@riveromestre.com
Secondary: receptionist@riveromestre.com

By: s/ Andres Rivero
ANDRES RIVERO
Florida Bar No. 715085
AMANDA MCGOVERN
Florida Bar No. 964263
ALAN H. ROLNICK
Florida Bar No. 715085
BRYAN L. PASCHAL
Florida Bar No. 091576
ZAHARAH MARKOE
Florida Bar No. 504734

## CERTIFICATE OF SERVICE

I certify that on May 8, 2020, I served this document by e-mail to all counsel of record.

s/ Andres Rivero
ANDRES RIVERO