# EXHIBIT 15

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:18-cv-80176-BB/BR

IRA KLEIMAN, as the Personal
Representative of the Estate
of DAVID KLEIMAN, and W&K
Info Defense Research, LLC,

        Plaintiffs,

v.

CRAIG WRIGHT,

        Defendant.
_____/

                100 SE Second Street
                Suite 2800
                Miami, Florida 33131
                Friday, January 10, 2020
                11:02 a.m. - 12:33 p.m.

VIDEOTAPED DEPOSITION OF

DUGALD STEWART MACINTYRE, JR., M.D.

Taken before Darline M. West, Registered Professional Reporter, Notary Public in and for the State of Florida At Large, pursuant to Notice of Taking Deposition filed by the Plaintiffs in the above cause.

Magna Legal Services
www.MagnaLS.com
866.624.6221



Page 32

1  report -- again, I don't want to know anything that's
2  not in your report.  I'm just gonna ask you if it's
3  in your report.  Since it's pretty short, I'd ask you
4  to -- to look at it to make sure you're comfortable
5  with -- with my question and your answer --
6       A.   All right.
7       Q.   Okay.  Anywhere in your report, do you
8  offer any opinions regarding Mr. Kleiman's mental
9  state?
10      A.   No, I did not.  I did, however, point out
11 some medications he's on that one might have assumed
12 or concluded might have affected mental state.  But I
13 did not state that as an opinion.
14      Q.   So you don't have an opinion as to his
15 mental state?
16      A.   No, I don't.
17      Q.   Okay.  Now, as you point out in your
18 report, Mr. -- Mr. Kleiman was involved in a
19 motorcycle accident, correct?
20      A.   That is correct.
21      Q.   And that was in 1995, correct?
22      A.   That is also correct.
23      Q.   And as a result of that accident -- I'm
24 looking at the bottom of the first page of your
25 report -- you say that he sustained multiple bone



Page 59

```
 1              As a medical doctor, there was nothing
 2   preventing him from using a telephone, correct?
 3        A.   That is correct.  Except during -- when he
 4   was -- had recent surgery --
 5        Q.   Sure.
 6        A.   -- or couldn't use a telephone.
 7        Q.   And -- and as a medical doctor, there was
 8   nothing preventing him from using a computer,
 9   correct?
10        A.   That is correct.
11        Q.   And as a medical doctor, there was nothing
12   preventing him from using his -- his mental acuity to
13   do whatever he was doing on the computer and the
14   telephone?
15        A.   Well, I'd --
16             MS. MARKOE:  Objection.
17             THE WITNESS:  -- have to leave that to
18        a psychologist or psychiatrist.
19   BY MR. BRENNER:
20        Q.   You -- you have no --
21        A.   That's not an infectious disease opinion.
22        Q.   Right.  So let me rephrase it, then.
23   Because I appreciate the clarification.
24             You do not have any opinion whether there
25   was anything in -- anything medically that was
```



Page 62

```
 1   are possible.  I'm only asking what you know based on
 2   your review and your opinion.  Okay?
 3            And you -- do you have an opinion that
 4   there was anything about Mr. Kleiman's medical
 5   condition that other than the times that he was in
 6   surgery that prevented him from using the phone and
 7   using the computer and otherwise working?
 8            MS. MARKOE:  Objection to the term
 9       "otherwise working."
10            THE WITNESS:  Again, as I mentioned
11       before, there could very well have been
12       periods of time when he might have
13       medications that might get in the way.  I'd
14       have to leave that opinion to somebody else.
15   BY MR. BRENNER:
16       Q.   Okay.  You've testified in lots of medical
17   malpractice and -- and other litigation, right?
18       A.   Yes.  Uh-huh.
19       Q.   You understand the term "to a reasonable
20   degree of medical certainty," right?
21       A.   Yes.  Uh-huh.
22       Q.   You are not offering an opinion, to a
23   reasonable degree of medical certainty, that there
24   was anything in Mr. Kleiman's medical condition, that
25   other than when he was in surgery, that prevented him
```



Page 63

1  from using a computer, using a phone, and otherwise
2  working, correct?
3       A.   Well, again, I cannot give that full
4  opinion, because part of that is a psychological or
5  pharmacological opinion that's outside of my field.
6  From an infectious disease point of view, I don't see
7  anything getting from -- that would get in the way of
8  use -- him using a computer.
9       Q.   Or otherwise working?
10           MS. MARKOE:  Objection.
11           THE WITNESS:  Or otherwise -- well,
12      obviously, he's not gonna get up and walk
13      over to an office and work and go back
14      again.
15  BY MR. BRENNER:
16      Q.   Right.  I'll rephrase it.
17           Nothing from an infectious disease
18  standpoint, which is what you are --
19      A.   Uh-huh.
20      Q.   -- prevented him from using the phone,
21  using the computer, and working, as long as it was
22  done in a wheelchair or in his bed?
23      A.   Yeah.  With the exceptions given before
24  regarding surgery and so forth.
25      Q.   Other than that?

