**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC, | **CASE NO.: 9:18-cv-80176-BB/BR** |
| *Plaintiffs,* | |
| v. | |
| CRAIG WRIGHT, | |
| *Defendant.* | |

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON**
**DEFENDANT'S AFFIRMATIVE DEFENSES**

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.    LEGAL STANDARD ..................................................................................................... 3

III.    ARGUMENT ................................................................................................................. 3

   a.   Defendant's Coin-Exch defenses were abandoned and are contrary to the evidence......... 3

      i.   Accord and Satisfaction (Affirmative Defense Four) ..................................................... 4

      ii.   Release (Affirmative Defense Five).............................................................................. 6

      iii.   Waiver (Affirmative Defense Seven (2nd)) .................................................................. 7

      iv.   Payment (Affirmative Defense Six).............................................................................. 8

      v.   Set-off (Affirmative Defense Seven (1st)) .................................................................... 8

      vi.   Failure to mitigate damages (Affirmative Defense Eight (1st))....................................... 9

   b.   Defendant's affirmative defenses arising out of the Australian "Consent Judgment" and
the Australian Taxation Office investigation fail. ................................................................ 9

      i.   Estoppel (Affirmative Defense Eight (2nd)) ................................................................ 10

         1.   No evidence supports a judicial estoppel defense..................................................... 10

         2.   No evidence supports an equitable estoppel defense. ............................................... 13

      ii.   Res Judicata and Collateral Estoppel (Affirmative Defense Twelve)............................ 14

         1.   The Australian judgments are void for lack of proper service............................... 14

         2.   The Australian judgments are void because Defendant procured them through
extrinsic fraud. ....................................................................................................... 17

         3.   There is no evidence in the record to show that the issues or claims in this case
were decided on the merits by the Supreme Court of New South Wales. ........................ 18

         4.   Res judicata would defeat the ends of justice. ....................................................... 19

   c.   Defendant's statute of limitations and laches defenses fail. .............................................. 20

   d.   Defendant's good faith defense fails because no case supports excusing Defendant's
forgery based on his self-serving, subjective understanding of a dead man's intent. .............. 24

   e.   Defendant's unclean hands defense fails because Plaintiffs' alleged bad acts are unrelated
to Plaintiffs' claims, and there is no evidence they injured Defendant.................................... 24

   f.   Defendant's statute of frauds defense is legally and factually inapplicable. .................... 26

   g.   Defendant's personal jurisdiction defense fails under Florida's long–arm statute.......... 27

IV.    CONCLUSION.............................................................................................................. 29

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure and Local Rule 7.1, Plaintiffs Ira Kleiman and W&K Info Defense Research, LLC (together, "Plaintiffs") request entry of an Order granting summary judgment to Plaintiffs on each of Defendant Craig Wright's Affirmative Defenses.

## I.    INTRODUCTION

In his operative answer, ECF No. [87], Defendant pled fourteen affirmative defenses. Because each defense fails as a matter of law, Plaintiffs move for summary judgment on them all.

The Affirmative Defenses fall into eight general categories: *First*, Defendant pleads six affirmative defenses based on providing shares in Coin-Exch Pty Ltd ("Coin-Exch") to Plaintiffs in payment or settlement of the claims in this case. But Defendant conceded at deposition that he had not done so. In fact, even if he had not made that concession, there is no evidence of any such agreement between Defendant and Plaintiffs. Coin-Exch is just another example of Defendant's deceit.

*Second*, Defendant's estoppel defense is unclear as to its basis, whether judicial or equitable estoppel, but fails either way because Plaintiffs had no standing to participate in the Australian Taxation Office ("ATO") investigation of Defendant's tax evasion, and the two lawsuits filed by Defendant against W&K Info Defense Research, LLC ("W&K") in Australia that ended in consent orders against W&K due to Defendant's purported agreement on behalf of W&K ("Australian Court Proceedings") were closed by the time Ira Kleiman found out about them. Additionally, Plaintiffs have not taken any inconsistent positions calculated to make a mockery of the judicial system (for judicial estoppel) or on which Defendant relied (for equitable estoppel).

*Third*, Defendant's res judicata and collateral estoppel defense fails because the purported judgment Defendant seeks to assert is void, the issues in this case were not decided on the merits

by the Supreme Court of New South Wales, and it would be unjust to apply preclusion given Defendant's deceptions in those proceedings specifically engineered to prevent W&K's participation.

*Fourth*, Defendant's statute of limitations defense fails for the same reason this Court declined to dismiss the case on that ground in December 2018. Specifically, now that discovery has closed, there is still no record evidence that Plaintiffs knew or should have known of their claims more than four years prior to the filing of this lawsuit. The laches affirmative defense fails because the statutes of limitations on Plaintiffs' claims had not expired. Further, both defenses fail because Plaintiffs' claims were tolled due Defendant's numerous frauds intended to prevent Plaintiffs from bringing their claims.

*Fifth*, Defendant's good faith affirmative defense is legally and factually unsupportable as it attempts to excuse Defendant's forging of three contracts on the basis of his purported good faith in doing so. No authority exists to excuse liability in such a circumstance.

*Sixth*, Defendant was not harmed by the purported injuries that he asserts in support of his defense of unclean hands and illegality, which are unrelated to the claims against him in this case, and the defense lacks evidentiary support.

*Seventh*, the statute of frauds defense fails as there is no evidence to support the argument that the parties' agreement could not possibly be performed in a year.

*Finally*, the Court has already rejected Defendant's personal jurisdiction arguments, and his submitted evidence in support, when they were raised in his motion to dismiss. It should do so again for the same reasons and for additional reasons discussed below.[1]

---

[1] For ease of reference, the factual background for each category of affirmative defenses is contained in the section discussing those defenses.

## II.     LEGAL STANDARD

Plaintiffs are entitled to summary judgment on Defendant's affirmative defenses "if the evidence establishes no genuine issue as to any material fact and that [they are] entitled to a judgment as a matter of law" or that the "affirmative defenses are invalid or legally insufficient." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (internal quotation marks and citation omitted); *In re Russo*, 494 B.R. 562, 566 (Bankr. M.D. Fla. 2013); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56.

Defendant bears the burden of proving his affirmative defenses. *See Dixon v. U.S.*, 548 U.S. 1, 8 (2006). He "has the initial burden of making a showing that [each affirmative] defense is applicable." *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990). The "burden is on [D]efendant to adduce evidence supporting [his] affirmative defense[s], not upon [Plaintiffs] to negate [their] existence." *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1264 (11th Cir. 2001) (citing *Harper v. Del. Valley Broads., Inc.*, 743 F. Supp. 1076, 1090–91 (D. Del.1990), *aff'd*, 932 F.2d 959 (3d Cir. 1991)).

## III.    ARGUMENT

Notwithstanding Defendant's web of contradictory testimony, there are no disputes of material fact as to his defenses and they fail as a matter of law across the board.

### a.    <u>Defendant's Coin-Exch defenses were abandoned and are contrary to the evidence.</u>

Defendant's Affirmative Defense Nos. 4, 5, 6, 7-1,[2] 8-1, and 7-2 all relate to Plaintiffs' alleged receipt of shares in Coin-Exch. *See* ECF No. [87] (Amended Answer to Second Amended Complaint), at 33–34 ("Accord and Satisfaction," "Release," "Payment," "Set-Off," "Failure to

---

[2] Defendant has two "Seventh" and two "Eighth" Affirmative Defenses. Those defenses are labeled based on where they appear in the order of affirmative defenses.

Mitigate Damages," and "Waiver").[3] However, Defendant abandoned each of these affirmative defenses at his deposition. Even if he had not, they would be contrary to the record evidence.

At his March 18, 2020 deposition, Defendant repeatedly disclaimed having provided Plaintiffs with shares of Coin-Exch in exchange for a release of any claims. When asked, "[D]id you ever tell Ira that he would be releasing you from claims if he accepted shares in Coin-Exch," Defendant responded, "No, I never made any such thing." Statement of Undisputed Material Facts ("SUMF") ¶ 1; Ex. 1 (Mar. 18, 2020 Dep. of Craig S. Wright), at 227:23–228:1. And when asked, "Did you ever tell Ira that he would be waiving any claims against you if he accepted shares in Coin-Exch," Defendant again answered, "No, I did not say anything like that." SUMF ¶ 2; Ex. 1 at 228:2–6.

Defendant's accord and satisfaction, release, payment, set-off, failure to mitigate damages, and waiver defenses all depend on a contract, agreement, or at least mutual intent to settle the dispute between the parties in exchange for shares of Coin-Exch, and there is no evidence to support such an intent; in fact, the Defendant has testified there was no such intention.

### i. Accord and Satisfaction (Affirmative Defense Four)

The defense of accord and satisfaction requires Defendant to submit proof that "the parties mutually intended to effect a settlement of an existing dispute by entering into a superseding agreement [and that] there was actual performance with satisfaction of the new agreement which acted to discharge the debtor's prior obligation." *Rudick v. Rudick*, 403 So. 2d 1091, 1093–94 (Fla. 3d DCA 1981). "[A]n accord and satisfaction must contain the elements of a normal contract, which include offer, acceptance, and consideration." *Air Prods. & Chems., Inc. v. La. Land & Expl. Co.*, 806 F.2d 1524, 1529 (11th Cir. 1986). Florida courts strictly enforce the agreement

---

[3] Page numbers for documents previously filed on ECF refer to the page number on the automatic ECF header.

requirement for an accord and satisfaction. *See Jobear, Inc. v. Dewind Mach. Co.*, 402 So. 2d 1357, 1358 (Fla. 4th DCA 1981) (affirming rejection of an accord and satisfaction defense where Plaintiff had accepted a "check which expressly said that its endorsement would constitute a full and complete release of appellant" because mere acceptance of the check did not constitute sufficient evidence of an agreement).

Here, Defendant has not produced any evidence that there was an offer and acceptance of shares in Coin-Exch in exchange for a relinquishment of Plaintiffs' rights to their share of the assets of W&K or the Wright-Kleiman joint business relationship ("Satoshi Nakamoto Partnership" or "SN Partnership"). Defendant provided Ira Kleiman with share transfers that Ira signed, Ex. 2 (Transfer of Shares), but there is no evidence to support the proposition that the shares were provided as part of an agreement that they would constitute accord and satisfaction (or otherwise release) the claims Plaintiffs assert in this case. SUMF ¶ 3. Again, Defendant specifically testified that the shares were not offered in exchange for a release of claims and so provision of the shares certainly cannot have led to the separate, superseding agreement required for accord and satisfaction. *See* Ex. 1 (Mar. 18, 2020 Dep. of Craig S. Wright), at 227:23–228:1; SUMF ¶¶ 1–2. Summary judgment is therefore appropriate on Defendant's accord and satisfaction defense. *See, e.g.*, *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 5774287, at *4 (S.D. Fla. Oct. 24, 2013) (granting summary judgment to plaintiffs on defendant's affirmative defense of accord and satisfaction because the defendant had "not proffered any evidence that demonstrates, or even tends to show, an agreement between Plaintiffs, on the one hand, and [defendant], on the other hand, whereby the parties agreed to discharge the claims asserted in the instant action."); *Seaview Awning Shutters of Miami, Inc. v. E. M. Eisfield, Inc.*,

106 So. 2d 597, 598 (Fla. 3d DCA 1958) (affirming summary judgment rejecting accord and satisfaction defense because of the absence of evidence of a new contract on different terms).

  ii. <u>Release (Affirmative Defense Five)</u>

"'A release is a contract itself,'" *Allgood Elec. Co. v. Martin K. Eby Constr. Co.*, 85 F.3d 1547, 1552 (11th Cir. 1996) (citation omitted), and the claims released by this contract must have been "contemplated by the agreement." *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 315 (Fla. 2000) (concluding as a matter of law that claims were not released). Courts in this state will "narrowly interpret[] [even] seemingly broad language in a release." *Id.* at 314 (citing *Quarterman v. City of Jacksonville*, 347 So. 2d 1036 (Fla. 1st DCA 1977). And there can be no release at all if the purported parties "did not agree to the same terms," thereby lacking the required "meeting of the minds." *Basner v. Bergdoll*, 284 So. 3d 1122, 1124 (Fla. 1st DCA 2019) (rejecting release defense based on absence of evidence of meeting of the minds on the terms of the release), *reh'g denied* (Dec. 16, 2019).

  Defendant's conclusory assertion that Plaintiffs "released Dr. Wright" by "accepting shares in a corporation from Dr. Wright as compensation for rights of David Kleiman" fails to allege the existence of any contract between the parties (because there was none), let alone one that contemplated the release of any particular claim. To the contrary, Defendant wrote to Ira Kleiman after Dave Kleiman's death to say that Ira was receiving the shares because he was Dave Kleiman's brother and the shares therefore belonged to him. *See* SUMF ¶ 4; Ex. 3 (Apr. 24, 2014 Email from Craig S Wright to Ira Kleiman, *re: Questions*), DEFAUS_00627954, at 7954 ("The software Dave updated and which I have transferred back in OUR company, and it is OURs as you are Dave's heir . . . .").

  Defendant previously argued that the Estate's mere acceptance of shares in Coin-Exch, without any agreement as to the effect of that transfer, automatically released him from "claims

based on Dave's work with W&K." ECF No. [108] (Opposition to Motion to Strike), at 4. Defendant tried to justify this position by claiming that his defense alleges a "unilateral contract" based on "an exchange of performances," and that "a release of claims relating to Dave's work with W&K was consideration for acceptance of the shares." *Id.* at 3, 5. But that argument fails as a matter of law because, as Defendant conceded at his deposition, he did not condition the provision of shares in Coin-Exch on the release or waiver of any claims. SUMF ¶ 1; Ex. 1 (Mar. 18, 2020 Dep. of Craig S. Wright), at 227:23–228:1 (Q. Dr. Wright, did you ever tell Ira that he would be releasing you from claims if he accepted shares in Coin-Exch? A. No, I never made any such thing."). Summary judgment on the affirmative defense of release is therefore appropriate. *See Villareal v. Eres*, 128 So. 3d 93, 99 (Fla. 2d DCA 2013) (affirming summary judgment rejecting enforcement of release based on unilateral contract theory because the parties did not have a meeting of the minds on the essential terms of an agreement).

### iii.    Waiver (Affirmative Defense Seven (2nd))

Waiver is "the intentional or voluntary relinquishment of a known right or conduct which warrants an inference of the relinquishment of a known right." *Citizens Prop. Ins. Corp. v. Mich. Condo. Ass'n*, 46 So. 3d 177, 178 (Fla. 4th DCA 2010) (internal citation and quotation marks omitted), *abrogated in unrelated part by People's Trust Ins. Co. v. Tracey*, 251 So. 3d 931 (Fla. 4th DCA 2018). Where, as here, the defendant has not produced evidence showing that the plaintiffs intended to relinquish their right to bring claims, summary judgment is appropriate. *See Point Blank Sols., Inc. v. Toyobo Am., Inc.*, No. 09-61166-CIV, 2011 WL 13174652, at *5 (S.D. Fla. May 20, 2011) (granting summary judgment to plaintiffs on a waiver affirmative defense because "Defendants have produced no evidence that indicates that Plaintiffs intended to relinquish their right to bring their claims against Defendants"); *Burger King Corp. v. E-Z Eating 8th Corp.*, No. 07-20181-CIV, 2008 WL 11330723, at *4 (S.D. Fla. May 22, 2008) (granting

summary judgment on waiver defense based on deposition testimony that the party was unaware of facts to support the defense and an agreement with a no-waiver provision), *aff'd sub nom. Burger King Corp. v. E-Z Eating, 41 Corp.*, 572 F.3d 1306 (11th Cir. 2009). Here the Defendant has testified he never told Ira "anything like" the fact that Ira "would be waiving any claims against [him] if [Ira] accepted shares in Coin-Exch." SUMF ¶ 5; Ex. 1 (Mar. 18, 2020 Dep. of Craig S. Wright), at 227:23–228:6.

iv.    Payment (Affirmative Defense Six)

There is no evidence that any shares in Coin-Exch correspond to payment for Plaintiffs' claims in this case. Again, as Defendant conceded at his deposition, there is no connection between the claims and the shares. SUMF ¶¶ 1–2, 5; Ex. 1 (Mar. 18, 2020 Dep. of Craig S. Wright), at 227:23–228:1. "It is axiomatic that the defense of payment means payment in full, which [Defendant] has never alleged" let alone brought forth record evidence to support. *Talisman Capital Alternative Invs. Fund, Ltd. v. Mouttet*, No. 10-24577-CIV, 2012 WL 13012424, at *7 (S.D. Fla. Feb. 16, 2012).

v.    Set-off (Affirmative Defense Seven (1st))

"The principal feature of a set-off claim is that the underlying debts of the parties be mutual, thus, each individual owes something to the other in the 'same right and capacity.' Thus, before this defense is available there must be two debts, one owed by the Defendants to the Plaintiff and another owed by the Plaintiff to the Defendants." *In re Old Naples Sec., Inc.*, No. 96-896, 2005 WL 419718, at *10 (Bankr. M.D. Fla. Jan. 5, 2005) (citation omitted). Here, Defendant does not allege any such mutuality or debt the Plaintiffs owe him nor would the record evidence support that assertion. In particular, there is no allegation or evidence that the Estate or W&K owe Defendant anything. SUMF ¶ 6.

Instead, Defendant's "set-off" defense actually appears to be a defense of partial payment or something similar. But to the extent Defendant is actually pursuing a defense of set-off, it fails for the same reasons above that the shares of Coin-Exch indisputably did not offset his liability.

vi.    Failure to mitigate damages (Affirmative Defense Eight (1st))

Here, Defendant seems to be claiming that Plaintiffs had an obligation to "mitigate" their damages by selling their shares in Coin-Exch. But Defendant has already conceded that those shares were not linked to Plaintiffs' legal rights in this case and that Ira was receiving the shares because he was Dave Kleiman's brother and the shares therefore belonged to him. *See* SUMF ¶ 4; Ex. 3 (Apr. 24, 2014 Email from Craig S Wright to Ira Kleiman, *re: Questions*), DEFAUS_00627954, at 7954 ("The software Dave updated and which I have transferred back in OUR company, and it is OURs as you are Dave's heir . . . ."); SUMF ¶ 1; Ex. 1 (Mar. 18, 2020 Dep. of Craig S. Wright), 227:23–228:1 (Q. Dr. Wright, did you ever tell Ira that he would be releasing you from claims if he accepted shares in Coin-Exch? A. No, I never made any such thing."). Summary judgment should therefore be granted on Defendant's mitigation of damages defense as well. *See Branch Banking & Tr. Co. v. Hamilton Greens, LLC*, 942 F. Supp. 2d 1290, 1302 (S.D. Fla. 2013) (granting summary judgment to the plaintiff and rejecting a mitigation of damages defense because the plaintiff "was under no contractual duty to mitigate").

**b.    Defendant's affirmative defenses arising out of the Australian "Consent Judgment" and the Australian Taxation Office investigation fail.**

Defendant has brought two affirmative defenses, for estoppel and res judicata or collateral estoppel, based on a "Consent Judgment" he obtained in Australia against W&K. (Eighth (2nd) and Twelfth Affirmative Defenses). Defendant also claims that Plaintiffs had a duty to take action in Dr. Wright's proceedings before the Australian Taxation Office.

The Court may recall, after Dave Kleiman's death, Defendant created a scheme whereby he was able to sue W&K in Australia and then effectively agree on W&K's behalf to allow a multi-million dollar judgment to be entered in his favor, which he then agreed to exchange for an assignment of all of W&K's intellectual property. Now, having been sued for the return of Dave Kleiman's share of that intellectual property, Defendant is claiming "estoppel" and "res judicata."

### i.   Estoppel (Affirmative Defense Eight (2nd))

As to the estoppel defense, it is unclear if Defendant asserts judicial or equitable estoppel. Regardless, there is no evidence to support either.

### 1.   No evidence supports a judicial estoppel defense.

The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding inconsistent with a claim in another proceeding. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). "The Eleventh Circuit employs a two-prong test in applying the doctrine: (1) whether the party took an inconsistent position under oath in a separate proceeding; and (2) whether the inconsistent positions were calculated to make a mockery of the judicial system." *Apex Toxicology, LLC v. United Healthcare Ins. Co.*, No. 17-61840, 2018 WL 3199250, at *1 (S.D. Fla. June 29, 2018) (internal quotation marks and citations omitted); *see In re Erkelens*, 742 F. App'x 477, 482 n.6 (11th Cir. 2018) ("Judicial estoppel applies only to parties . . . ."). Defendant's judicial estoppel defense fails as a matter of law for at least three reasons.

*First*, judicial estoppel cannot apply to the Estate because it was not a party to either the Australian Court Proceedings or the ATO investigation. SUMF ¶¶ 7–8. As to Plaintiff W&K, it was not a party to the ATO investigation[4] (and there is no evidence it took a position therein),

---

[4] The ATO undertook an investigation and issued findings. Plaintiffs have found no authority to support the proposition that estoppel can apply to non-involvement by a non-party to a foreign government's investigation. In any event, estoppel cannot apply based on the evidence in the record here.

SUMF ¶ 9, and its "appearance" as a Defendant in the Australian Court proceeding was illusory and a result of Defendant's fraud. *See* SUMF ¶¶ 10–21; ECF No. [83-30] (Acknowledgement of Liquidated claim signed by Wright for W&K as the "legal agent and representative of defendant" and its "Director/Australian Agent"); ECF No. [83-19], at 3 (consent order signed by Jamie Wilson, who has rejected his power or appointment to do so). The record also shows that W&K was not properly served with process in the Australian Court Proceedings. *See infra* Section III.b.iii.1.

*Second*, Plaintiffs did not take an "inconsistent position" in any proceedings. Plaintiffs had no standing to do anything in the ATO investigation, and the Australian Court Proceedings were closed by the time Plaintiffs found out about them. SUMF ¶ 10; ECF No. [83-22] (Nov. 6, 2013 Judgements) (judgment entered November 6, 2013), *with* ECF No. [50-1] (Decl. of Ira Kleiman), at ¶ 10 ("I first became aware of the two claims Craig Wright filed in New South Wales Supreme Court on April 15, 2014 when the Australian Tax Office contracted me.").

None of the "positions" that were supposedly taken by W&K in the Australian proceedings were actually taken by W&K. As an initial matter, it was Defendant who signed the Acknowledgement of Liquidated claims in the Australian proceedings on behalf of for W&K purporting to act as the "legal agent and representative of defendant" and its "Director/Australian Agent." Defendant also purported to make various representations on behalf of W&K to the New South Wales Supreme Court Registrar in the Australian Court Proceedings. In one hearing, he stated that he owned more than 50% of W&K. SUMF ¶ 18; Ex. 5 (Oct. 30, 2013 Registrar Hearing Transcript), at 1:40 ("I have 51% of the shares"). In the following hearing, he stated that he owned 100% of W&K. SUMF ¶ 19; Ex. 6 (Nov. 6, 2013 Registrar Hearing Transcript), at 1:36 ("Yes, I'm now the sole shareholder in an American company."); *id.* 1:37–38 ("I own all the shares over here

and want to bring everything back in."). Defendant also represented in the Australian Court Proceedings that he had control of W&K's accounts. SUMF ¶ 21; Ex. 5 at 2:26–29 ("We have actually taken control of the accounts and whatever else, which we've got stat decs for that, so effectively this is a formality because we have actually – the company has controlled all of the accounts now."). Furthermore, Jamie Wilson, an individual who allegedly "consented" on behalf of W&K to the entry of orders in the Australian Court Proceedings, SUMF ¶ 11, has testified that he was never an officer, shareholder, or director of W&K. SUMF ¶¶ 12–17; Ex. 4 (Nov. 8, 2019 Dep. of Jamie Wilson), at 33:9–16, 70:9–10, 71:8–12 (testifying that he was never a director, shareholder, or officer of W&K Info Defense Research LLC).

But all of Defendant's statements were untrue or unauthorized. "The Eleventh Circuit generally applies judicial admission doctrine to the parties' representations of fact in court filings." *Starbuck v. R.J. Reynolds Tobacco Co.*, 349 F. Supp. 3d 1223, 1233 n.7 (M.D. Fla. 2018) (citing, e.g., *Metlife Life & Annuity Co. of Conn. v. Akpele*, 886 F.3d 998, 1004-05 (11th Cir. 2018) (deeming a statement in an affidavit made in response to a motion for summary judgment a judicial admission)). Defendant's own affidavit filed in this case disavowed ever holding any ownership of or director role in W&K. SUMF ¶ 20; ECF No. [12-2] (Decl. of Craig Wright), at ¶ 12 ("I have never been a director, member, shareholder, officer, employee, or representative of W&K or of any Florida business."). This constitutes a judicial admission, and "'facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them.'" *Best Canvas Prod. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983) (quoting *Hill v. Fed. Trade Comm'n*, 124 F.2d 104, 106 (5th Cir. 1941)). Accordingly, any position that Defendant took on behalf of W&K in the Australian Court Proceedings was therefore not, in fact, the position of W&K.

*Finally*, even if there were any evidence of some supposedly inconsistent position that Plaintiffs took under oath, there is no evidence it was "'calculated to make a mockery of the judicial system.'" *Apex Toxicology,* 2018 WL 3199250, at *1 (internal citation omitted).

### 2.   No evidence supports an equitable estoppel defense.

There is also no evidence to support an equitable estoppel defense.

> Equitable estoppel requires that Defendants prove: (1) [the plaintiff] misrepresented material facts; (2) [he] was aware of the true facts; (3) [he] intended that the misrepresentation be acted on or had reason to believe that Defendants would rely on the misrepresentation; (4) Defendant[] did not know, nor should they have known the true facts; and (5) Defendant[] reasonably and detrimentally relied on the misrepresentation.

*Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 5 F. Supp. 3d 1368, 1376 (S.D. Fla. 2014).

A failure to act can only constitute a misrepresentation where a party has a duty to act. *See Pasco Cty. v. Tampa Dev. Corp.,* 364 So. 2d 850, 853 (Fla. 2nd DCA 1978) ("We consider it rudimentary law that an omission means a negligent or culpable omission where the party failing to act was under a duty to do so."). Here, Plaintiffs' alleged failure to "take action" in a foreign government investigation or proceeding plainly does not constitute an actionable material misrepresentation. Indeed, Defendant does not, and could not, allege that either Plaintiff had any duty to "take action" in the Australian Court Proceedings,[5] let alone a duty to "take action" in an Australian investigation of **Defendant's** tax evasion.

Moreover, "the party claiming estoppel by silence or inaction must still prove it was misled to [its] injury by detrimentally changing its position in reliance on that silence or inaction," and "that its reliance was intended or reasonably anticipated" by the party to be estopped. *United States Life Ins. Co. v. Lotus Mfg. Corp.*, 845 F. Supp. 2d 1303, 1318 (S.D. Fla. 2010) (internal citations

---

[5] This is particularly the case because service on W&K in the Australian Court Proceedings was never effected and there is unrebutted evidence that its "representative" in those proceedings was not validly appointed. *See, infra* Section III.b.ii.1 (service) and *supra* Section III.b.i.1 (invalid representative).

and quotation marks omitted). There is no evidence here that Defendant relied on Plaintiffs' inaction, that his reliance caused a detrimental change in his position, or that Plaintiffs reasonably anticipated Defendant would rely on their inaction.

ii.   Res Judicata and Collateral Estoppel (Affirmative Defense Twelve)

Defendant's Twelfth Affirmative Defense asserts that the "res judicata and collateral estoppel effect of judgments rendered more than five years ago by the Supreme Court of New South Wales bar Plaintiffs' claims arising from Dr. Wright's alleged ownership and possession of W&K Info Defense Research, LLC's intellectual property." ECF No. [87], at 35.

The Court should grant summary judgment to Plaintiffs on this defense for the same reasons it previously rejected the defense: the consent orders in the Australian Court Proceedings are void for lack of valid service, the claims or issues in this case were not decided on the merits in those proceedings, and application of res judicata or collateral estoppel would defeat the ends of justice. *See* ECF No. [68] (Order), at 13–15. Additionally, preclusion cannot apply because of extrinsic fraud by Defendant in the Australian Court Proceedings.

1.   The Australian judgments are void for lack of proper service.

A judgment has no res judicata effect if it is void. *Ellis v. Dyson*, 421 U.S. 426, 442 (1975). A judgment is void if the issuing court lacked jurisdiction, *Fla. Nat'l Bank of Jacksonville v. Kassewitz*, 25 So. 2d 271, 275 (Fla. 1946), or when the complaint was not properly served. *Hansberry v. Lee*, 311 U.S. 32, 40 (1940) ("It is a principle of general application . . . that one is not bound by a judgment in personam in a litigation in which he . . . has not been made a party by service of process."), *superseded by statute on other grounds as recognized by Landgraf v. USI Film Prods.*, 511 U.S. 244, 251 (1994).

There is no evidence that the two Australian lawsuits were properly served on W&K, the only defendant in the cases. *See* SUMF ¶ 22; ECF No. [50-1] (Decl. of Ira Kleiman), at ¶ 10.

14

Defendant instead purported to appear for W&K as its "Director/Australian Agent" and listed his Australian address as W&K's "[a]ddress for service." SUMF ¶ 23; ECF No. [83-30] (Aug. 19, 2013 Acknowledgments of Liquidated Claim), KLEIMAN_00559309, at 3.

In an affidavit filed in the Australian Court Proceedings, Defendant stated that W&K had been served by "mailing" a copy of the statement of claim to W&K's registered mailing address, and by "leaving" a copy at W&K's registered address for service. SUMF ¶ 24; Ex. 7 (Statement of Claim), DEFAUS_01073503 at 3506. Beyond those statements, there is no proof the mailing was actually made. To the extent Defendant has any evidence of attempted mailings to W&K, it is only of mailing of a "notice of listing" document, not the statement of claim. SUMF ¶ 25; Ex. 8 (Jan. 9, 2020 Dep. of Zachary Eisner), at 102:21–104:6; Ex. 8 (Eisner Dep.), Ex. 13 (PAIGE 00001908).

Moreover, this "notice of listing" document was purportedly mailed to W&K's mailing address not its registered address for service of process. SUMF ¶¶ 26–27; ECF No. [83-4] (Affidavit of Craig S Wright), at 4, 8. Even Defendant appears to concede that delivery to a mailing address, rather than the address for service of process, would be ineffective. ECF No. [61] (Reply Br. on Mot. to Dismiss), at 20 ("Dr. Wright was required to serve W&K at its registered address for service"). Furthermore, the "notice of listing" document did not include the statement of claim, a summons, or any information about the lawsuit except for the case number, case title, and a listing date for one of the proceedings. SUMF ¶ 30; Ex. 8 (Eisner Dep.), Ex. 13 (PAIGE 00001908). It's plainly insufficient.

But even if Defendant had mailed the statement of claim to W&K, this service would have been invalid under Australian law. Australian law allows foreign defendants to be served pursuant

to the Hague Convention or as allowed by the law of the jurisdiction where the defendant resides.[6] The Hague Convention requires service via the "Central Authority" of the defendant's state. *See* SUMF ¶ 31; ECF No. [33-1] (Aff. of Gordon Thomas Grieve), at ¶¶ 49–56 (Defendant's own expert opining that Australian law requires that Hague Convention service be performed via the designated Central Authority, upon application to the Australian court's Registrar). And Florida law requires service by the county sheriff or designated process server. *See* Fla. Stat. § 48.011 *et seq.*

There is no evidence that either occurred here. SUMF ¶ 32; ECF [50-1] ¶ 10 (Decl. of Ira Kleiman) ("I first became aware of the two claims Craig Wright filed in New South Wales Supreme Court on April 15, 2014 when the Australian Tax Office contacted me. I have never received service of process for any of these claims."); Ex. 8 (Jan. 9, 2020 Dep. of Zachary Eisner) 102:21–104:6; Ex. 8 (Eisner Dep.), Ex. 13 (PAIGE 00001908). There is also no evidence that even Defendant's purported service by mail included the notice on the alleged scope and grounds of jurisdiction as required by Australian law.[7] *See* SUMF ¶ 30.

That leaves only the allegation that service was purportedly effected at W&K's registered address for service "by leaving it with" W&K. SUMF ¶ 28. But W&K is an LLC, SUMF ¶ 29, and there is no evidence that Defendant personally served any individual authorized to accept service of process. Indeed, Defendant appears to have conceded that point by arguing in his reply in support of his motion to dismiss that service was "sent to W&K's mailbox," not left with any

---

[6] New South Wales Uniform Civil Practice Rules ("UCPR"), Part 11, available at http://www9.austlii.edu.au/cgi-bin/viewdb/au/legis/nsw/consol_reg/ucpr2005305/. The UCPR allows service outside Australia under the Hague Convention or "in accordance with the law of the country in which service is effected." UCPR 11.8AC.

[7] UCPR § 11.7 ("If a person is to be served outside of Australia with an originating process, the person must also be served with a notice in the approved form informing the person of: (a) the scope of the jurisdiction of the court in respect of claims against persons who are served outside Australia, and (b) the grounds alleged by the plaintiff to found jurisdiction, and (c) the person's right to challenge service of the originating process or the jurisdiction of the court or to file a conditional appearance.").

individual, to say nothing of any individual authorized to accept service of process. ECF No. [61], at 20. Even crediting Defendant's fraudulent affidavit, then, there is no credible evidence of proper service of the Australian Court Proceedings on W&K. Thus, any defense premised on res judicata must fail.

2. <u>The Australian judgments are void because Defendant procured them through extrinsic fraud.</u>

A judgment has no preclusive effect if it was procured by extrinsic fraud.[8] *See Burtoff v. Tauber*, No. 10-62034-CIV, 2011 WL 248547, at *2 (S.D. Fla. Jan. 24, 2011). Extrinsic fraud exists when, for example, "the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat." *United States v. Throckmorton*, 98 U.S. 61, 65–66 (1878); *see, e.g., Parker v. Parker*, 950 So. 2d 388, 391 (Fla. 2007) (same). In such cases, "there has never been a real contest in the trial or hearing of the case." *Throckmorton*, 98 U.S. at 66; *see also Lara v. Suntrust Mortg. Inc.*, No. DKC 16-0145, 2016 WL 3753155, at *6 (D. Md. 2016) (no res judicata defense if a party "was prevented from fully exhibiting her case by her opponent's extrinsic fraud or deception, such as by keeping her away from the court or keeping her in ignorance of the proceedings" (internal quotation marks and citation omitted)).

Defendant procured the Australian consent orders through extrinsic fraud. To prevent W&K from appearing, Defendant never properly served it. *See* Section III.b.ii.1., *supra*. To further

---

[8] In addressing Defendant's argument that this case should be dismissed on forum non conveniens grounds, the Court observed that "the appropriate forum to address fraud on the court would be the court in which Plaintiffs claim the fraud was to have occurred." ECF No. [68] at 19. But the question here is the preclusive effect of the Australian Court Proceedings, not the appropriate venue for this case. *See Arrieta-Gimenez v. Arrieta-Negron*, 551 So. 2d 1184, 1185 (Fla. 1989) (recognizing that extrinsic fraud in Florida proceeding would bar preclusive effect in Puerto Rico proceeding); *In re Fundamental Long Term Care, Inc.*, 500 B.R. 140, 146 (Bankr. M.D. Fla. 2013) (recognizing determination of extrinsic fraud in state court judgment would preclude application of preclusion in federal bankruptcy proceeding). *Cf. Tr. Int'l Corp. v. Nagy*, No. 15-80253-CIV-ZLOCH, 2017 WL 5248425, at *6 (S.D. Fla. Mar. 28, 2017) (analyzing the issue of forum non conveniens).

ensure W&K would not defend itself, Defendant listed *his* Australian address as W&K's "[a]ddress for service," and purported to appear for W&K as its "legal agent and representative" and its "Director/Australian Agent." SUMF ¶¶ 33–34; ECF No. [83-30] (Aug. 19, 2013 Acknowledgments of Liquidated Claim), at 3, 5.

Defendant then filed documents in the proceedings purporting to acknowledge a "debt" on behalf of W&K to him, and to give "consent" to the entry of judgment against W&K. SUMF ¶ 35; ECF No. [83-19] (Consent Order), at 2, 5; ECF No. [83-30] (Aug. 19, 2013 Acknowledgments of Liquidated Claim), at 2. As noted above, Defendant represented himself to be 51% owner and then 100% owner of W&K. SUMF ¶¶ 18–19; Ex. 5 (Oct. 30, 2013 Registrar Hearing Transcript) at 1:40; Ex. 6 (Nov. 6, 2013 Registrar Hearing Transcript) at 1:36–38. But, again, Defendant has disclaimed any role or ownership in W&K in affidavits filed in this case and in deposition testimony. SUMF ¶ 36; Ex. 13 (Decl. of Craig Wright), ECF No. [12-2], at ¶ 12; Ex. 14 (Apr. 4, 2019 Dep. of Craig S. Wright), at 219:22–23 ("Q. You have no idea who owns W&K? A. I do not know that."); *id.* 287:17–18 (Q. Did Ms. Nguyen have a role in W&K? A. W&K is not my company. I cannot talk about W&K."). Defendant's extrinsic fraud means the Australian consent orders do not have a preclusive effect here.

3. There is no evidence in the record to show that the issues or claims in this case were decided on the merits by the Supreme Court of New South Wales.

"The doctrine of collateral estoppel, or issue preclusion, like *res judicata*, requires the existence of a 'final judgment on the merits' as a necessary element." *Lozman v. City of Riviera Beach*, No. 08-80134-CIV, 2011 WL 13107422, at *4 n.2 (S.D. Fla. May 4, 2011) (citing *Papa*

*John's Int'l, Inc. v. Consentino*, 916 So. 2d 977 (Fla. 4th DCA 2005)).[9] As this Court found when it previously rejected Defendant's res judicata defense, "the 'record of proceedings' [in the Australian Court Proceedings] state only that money judgments have been entered in "favour of [Craig Wright]," and that it is "the agreement of the parties that [Craig Wright] will accept transfer of the intellectual property held by the plaintiff in full satisfaction of the judgment." ECF No. [68], at 14 (citing ECF No. [24-22], at 4–5, 8); *see* SUMF ¶ 37; ECF No. [83-22], at 4–5, 8. Nothing has changed. There is still no evidence in the record that the claims or issues in this case were decided on the merits. For example, the transcript from the final hearing in the Australian Court Proceedings demonstrates that the consent orders were made on the basis of a representation that Defendant (allegedly represented by Wright who falsely claimed to own 100% of W&K) consented to the orders, not on the merits; they also state that entry of those consent orders brought the Australian Court Proceedings "to a conclusion," not that final judgments were entered on the merits of Defendant's claims. SUMF ¶¶ 38–39; Ex. 6 (Nov. 6, 2013 Registrar Hearing Transcript), at 2:3–7 ("REGISTRAR: In respect of matter 56 I make orders 1 through 4 of the consent order in this matter. I know that brings this matter to a conclusion. In respect of matter 59 I make orders 1, 2, and 3 of the consent orders and I note that that also brings this matter to a conclusion.").

### 4. Res judicata would defeat the ends of justice.

As this Court held, "[t]he Florida Supreme Court has held that res judicata does not apply when its application would defeat the ends of justice. ECF No. [68], at 15 (citing *deCancino v. E. Airlines, Inc.*, 283 So. 2d 97, 98 (Fla. 1973)). Given the undisputed record above, and Defendant's admission that the Australian Court Proceedings were an attempt to "make sure the court signed off on what Dave

---

[9] "In determining whether an action is barred by res judicata, a federal court applies the law of the state in which it sits." *Laskar v. Peterson*, 771 F.3d 1291, 1299 (11th Cir. 2014).

and [Craig] planned," giving preclusive effect to these fraudulent proceedings would, as the Court previously held, defeat the ends of justice. ECF No. [68], at 15; ECF No. [83-20].

### c.   <u>Defendant's statute of limitations and laches defenses fail.</u>

Defendants' previously moved to dismiss the case on statute of limitations grounds. The Court denied that motion finding that, based on the record before it and the presumption that the factual allegations in the Complaint were true, Plaintiffs' remaining claims were all filed within the applicable statute of limitations period. ECF No. [68] (Order on Motion to Dismiss), at 31. More specifically, the Court found that the facts alleged by Plaintiffs supported a claim accrual date of April 2014. *Id.* There is no dispute that this lawsuit was filed within 4 years of that date, the shortest limitations period applicable to Plaintiffs' remaining claims. *Id.* at 28.

The Court did, however, allow for the possibility that through discovery, Defendant could try to prove an earlier accrual date by showing that "Plaintiffs became aware of the Defendant's conduct more than four years prior to the filing of instant lawsuit." *Id.* at 31. Defendant has come forth with no such record evidence.

Defendant has moved for summary judgment on this same issue, contending that the statute of limitations began to run no later than November 13, 2013, when Dr. Wright obtained his judgments in Australia against W&K. ECF No. [487] (Defendant's Motion for Summary Judgment), at 17. This is the same argument Defendant made at the motion to dismiss stage. ECF No. [68] (Order on Motion to Dismiss), at 29. The Court rejected it then and should reject it now. *Id.* at 29–30 ("The Court agrees that the wrong accrual date related to these claims has been identified by the Defendant . . . ."). Nothing has changed in the factual record as to the date of the Australian Court Judgments. Moreover, Defendant has adduced no other record evidence that Plaintiffs were aware of Defendant's conduct underlying their claims more than four years prior to the filing of this lawsuit.

Although the Court need not reach the issue, the record evidence also demonstrates that the statute of limitations were tolled until October 2015 because of Defendant's own misconduct. SUMF ¶¶ 51–52. Under Florida law, the running of the time under any statute of limitations is tolled "where there has been fraud or fraudulent concealment," *Razor Capital, LLC v. CMAX Fin. LLC*, No. 17-80388-CIV, 2017 WL 3481761, at *4 (S.D. Fla. Aug. 14, 2017). To show fraudulent concealment, a plaintiff must show: "(1) successful concealment of the cause of action; (2) fraudulent means to achieve that concealment and (3) that the plaintiff exercised reasonable care and diligence in seeking to discover the facts that form the basis of the claim." *Id.*

There is irrefutable evidence regarding Defendant's deception, including obstructive behavior that has continued during this case, which was specifically aimed at defrauding the Estate and W&K and preventing discovery of Plaintiffs' claims.

Defendant concedes that he did not contact Dave Kleiman's family following Dave's death until early 2014. SUMF ¶ 43; Ex. 1 (Mar. 18, 2020 Dep. of Craig S. Wright), at 124:2–22. At that point, Defendant contacted Dave's father and promised that he was trying "to help [] recover what Dave owned." SUMF ¶ 44; Ex. 9 (Feb. 11, 2014 Email from Craig S Wright to Louis Kleiman, *re: Dave*), KLEIMAN_00008280, at 8280. Defendant then followed up with Ira Kleiman, making a series of promises including shares allegedly worth millions in a new company that Defendant had formed, and cash payments. SUMF ¶¶ 45, 47; Ex. 3 (Apr. 23, 2014 Email from Craig S Wright to Ira Kleiman, *re: Questions*), DEFAUS_00627954, at 7960 (describing to Ira Kleiman the holdings of the company and future distributions). However, unbeknownst to the Kleiman family, Defendant was taking actions to remove Dave Kleiman as the registered agent of W&K. SUMF ¶ 48; Ex. 10 (2014 Limited Liability Company Reinstatement filed Mar. 28, 2014),

KLEIMAN_00299177, and had just obtained a judgment in the sham Australian proceedings to rob W&K of all of its intellectual property.

This was all occurring while Defendant was promising Ira Kleiman that he was "not trying to take anything from Dave's estate" and that he was not "seeking anything other than to give you information about [Dave]." SUMF ¶ 49; Ex. 3 (Apr. 23, 2014 Email from Craig S Wright to Ira Kleiman, *re: Questions*); ECF No. 83-23 (Feb. 11 2014 Email from Craig S. Wright to Louis Kleiman) Despite that promise, Defendant continued this scheme to lull Ira Kleiman into inaction by promising Ira he would receive the first of many multimillion-dollar payments in October 2014. SUMF ¶ 49; Ex. 3 at 7960 (describing the holdings of the company and future distributions). When that payment didn't arrive, Craig blamed the delay on the ATO investigation and continued to promise Ira he would see value when the investigation closed. SUMF ¶ 50; Ex. 11 (Aug. 28, 2015 emails from Craig Wright to Ira Kleiman, *re: Communication*), KLEIMAN_00004269, at 4269.

The uncontroverted evidence is that it was not until October 9, 2015—when Defendant stopped responding to Ira's emails—that Ira realized he would likely have to sue. *See* SUMF ¶ 52; Ex. 12 (October 9, 2015 email from Ira Kleiman to Craig Wright), KLEIMAN_00398939, at 8939. Plaintiffs filed suit within three years of that date. SUMF ¶ 41; ECF No. [1] (Complaint) (filed on February 14, 2018). Because Defendant's "behavior caused [Ira Kleiman] to delay filing suit," Defendant "is equitably estopped from raising the statute of limitations to bar [Ira Kleiman]'s claim[s]." *Acoustic Innovations, Inc. v. Schafer*, 976 So. 2d 1139, 1144 (Fla. 4th DCA 2008).

Defendant should be equitably estopped from asserting a statute of limitations defense because any delay was the result of his actions. *See Major League Baseball v. Morsani*, 790 So. 2d 1071, 1077 (Fla. 2001). "Equitable estoppel is based on principles of fair play and essential justice and arises **when one party lulls another party into a disadvantageous legal position**." *Id.* at

1076 (emphasis added). "Logic dictates that a defendant cannot be taken by surprise by the late filing of a suit when the defendant's own actions are responsible for the tardiness of the filing." *Id.* at 1078; *see Fla. Dep't of Health & Rehab. Servs. v. S.A.P*, 835 So. 2d 1091, 1099 (Fla. 2002) (same). As a matter of law, the statute of limitations was sufficiently tolled as to preclude the affirmative defenses.[10]

The laches defense fails for similar reasons. Laches does not apply if the limitations period has not run or has been tolled. *See Wood v. B L Bldg. Co.*, No. CIV.A.H-03-713, 2004 WL 5866352, at *16 (S.D. Tex. June 22, 2004) (granting summary judgment to the plaintiff on the affirmative defense of laches because the claim was brought within the limitations period); *Home Design Servs., Inc. v. Hibiscus Homes of Fla., Inc.*, No. 603CV1860ORL19KRS, 2005 WL 3445522, at *8 (M.D. Fla. Dec. 14, 2005).

Moreover, Defendant "has not offered any facts demonstrating that [he] detrimentally relied on any action or inaction of Plaintiff[s]." *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 5774287, at *4 (S.D. Fla. Oct. 24, 2013) (granting summary judgment to plaintiffs on the affirmative defense of laches). Without evidence of detrimental reliance and prejudice to Defendant, summary judgment must be granted to Plaintiffs on Defendant's laches defense. *See Univ. Cmty. Hosp., Inc. v. Prof'l Serv. Indus., Inc.*, No. 8:15-CV-628-T-27EAJ, 2017 WL 2226578, at *8 (M.D. Fla. May 19, 2017) (granting summary judgment to the plaintiff on laches defense for lack of evidence that the period of delay "constitute[d] an unreasonable delay that prejudiced" the defendant).

---

[10] As briefed above, even in the absence of any tolling, none of Plaintiffs' claims are time-barred.

**d.** **Defendant's good faith defense fails because no case supports excusing Defendant's forgery based on his self-serving, subjective understanding of a dead man's intent.**

Defendant's Good Faith Affirmative Defense (Third Affirmative Defense) asserts that to the extent Plaintiffs prove that he forged certain contracts (*see* Second Am. Compl. ¶¶ 97–109), Defendant somehow acted in "good faith" in doing so because he was effectuating Dave Kleiman's intent after Dave died. Plaintiffs have located no case supporting the proposition that a Defendant's own self-serving, after-the-fact statements that the opposing party would have been supportive can create a disputed issue of material fact for a good faith defense. Indeed, no authority that Plaintiffs are aware of remotely suggests that a fraudulent contract is valid so long as the defendant claims that he believes in "good faith" he is effectuating the intent of the person whose signature he forged. *See MS–FL Real Estate Invs., Inc. v. Selah Seniorcare II, LLC*, No. 6:14-cv-2017-Orl-l8TBS, 2016 WL 6139942, at *6 (M.D. Fla. Jan. 21, 2016) (granting summary judgment to a plaintiff on good faith and fair dealing defense because the defendant's interpretation was contrary to the plain words of the parties' agreement); *In re Mongelluzzi*, 587 B.R. 392, 413 (Bankr. M.D. Fla. 2018) (granting summary judgment to the plaintiff on an analogous bankruptcy law good faith defense because the defendant "knew exactly what it was doing" when it took fraudulent transfers).

**e.** **Defendant's unclean hands defense fails because Plaintiffs' alleged bad acts are unrelated to Plaintiffs' claims, and there is no evidence they injured Defendant.**

Defendant's Ninth Affirmative Defense asserts that, "*inter alia*, Ira Kleiman, as the representative of David Kleiman's estate, manipulated his dead brother's estate to avoid payment of taxes and violated various laws, including, but not limited to, Florida and foreign laws that protect against the invasion of privacy and the misuse of private, personal, or confidential

information." ECF No. [87], at 34–35.[11] Given Dr. Wright's own conduct, an "unclean hands" defense is ironic, to say the least.

In any event, this defense requires "that (1) the plaintiff's alleged wrongdoing is directly related to the claim against which it is asserted; and (2) the defendants were personally injured by the plaintiff's conduct." *Dawes-Ordonez v. Forman*, No. 09-60335, 2009 WL 3273898, at \*2 (S.D. Fla. Oct. 9, 2009) (citing *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 450–51 (11th Cir. 1993)). Summary judgment is appropriate on an unclean hands defense when there is not a close enough connection between the asserted basis for the unclean hands defense and liability on the claims in the case. *See Bowe v. Pub. Storage*, No. 1:14-CV-21559-UU, 2015 WL 11233137, at \*3 (S.D. Fla. June 26, 2015) (granting summary judgment to plaintiff on an unclean hands defense because of the lack of a sufficiently close connection between the asserted misrepresentation and the lawsuit).

Plaintiffs' supposed bad acts—avoiding estate taxes and violating unspecified laws "including" privacy laws, *see* ECF No. [108], at 8—are entirely unrelated to Plaintiffs' claims (not to mention that there is no evidence to support Defendant's allegations). *See Freestream Aircraft USA Ltd. v. Chowdry*, No. 16-cv-81232, 2018 WL 1309921, at \*3 (S.D. Fla. Mar. 12, 2018) ("We're talking ***really*** directly related. It is, in essence the reason for the lawsuit." (emphasis in original) (internal quotation marks, citation, and alterations omitted)).

Not only is there no evidence to support Defendant's allegations, there is no evidence that he was personally injured by anything Plaintiffs did or failed to do. "When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-

---

[11] Despite the title "Unclean Hands and Illegality, the substance of the affirmative defense only identifies unclean hands. ECF No. [87] at 34. In any event, the affirmative defense of illegality applies to illegal terms or purposes of contracts, which are not an issue here. *See, e.g.*, *Gen. S. Indus., Inc. v. Shub*, 300 F. App'x 723, 728 (11th Cir. 2008).

moving party bears the burden of proof at trial, the nonmoving party must "'go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Westgate Resorts, Ltd. v. Reed Hein & Assocs., LLC*, No. 6:18-cv-1088-Orl-31DCI, 2020 WL 674108, at *2 (M.D. Fla. Feb. 11, 2020) (quoting *Celotex Corp.*, 477 U.S. at 324).

### f.   Defendant's statute of frauds defense is legally and factually inapplicable.

Defendant's Tenth Affirmative Defense asserts that "Plaintiffs' alleged oral partnership agreement is barred by the statute of frauds because there was no written partnership agreement between Dr. Wright and David Kleiman and/or W&K Info Defense Research, LLC." ECF No. [87], at 35. First, a written agreement is generally unnecessary for the formation of a partnership. *See Williams v. Obstfeld*, 314 F.3d 1270, 1275 (11th Cir. 2002) ("A joint venture, like a partnership, may be created by express or implied contract . . . ."). Defendant appears to concede this is the case but contends that a written agreement is mandated by the Florida statute of frauds.

Although not clearly stated in his affirmative defense, Defendant seems to be relying on the portion of the statute of frauds that "bars enforcement of an oral contract when the parties intended and contemplated that performance of the agreement would take longer than one year." *McDonough v. Greer*, No. CV 14-61526-CIV, 2015 WL 12532634, at *3 (S.D. Fla. Sept. 18, 2015) (citing *Dwight v. Tobin*, 947 F.2d 455, 459 (11th Cir. 1991)) (granting summary judgment for the plaintiff notwithstanding a statute of frauds defense). However, the fact the partnership lasted more than a year is not the relevant consideration. Instead, Courts must determine whether, at the time formation, "performance is **possible** within one year from the inception of the contract . . . ." *Browning v. Poirier*, 165 So. 3d 663, 666 (Fla. 2015) (emphasis added). If so, the contract "falls outside the statute of frauds." *Id.*

There is no evidence that the SN Partnership between Defendant and Dave Kleiman to create and mine Bitcoin necessarily required performance lasting more than one year. "At best, this was an oral contract for an indefinite time which is not barred by the Statute of Frauds." *Martinez v. Lieberman*, 920 So. 2d 128, 129 (Fla. 3d DCA 2006)).

### g. **Defendant's personal jurisdiction defense fails under Florida's long–arm statute.**

Defendant's Eleventh Affirmative Defense asserts that "[t]his Court lacks personal jurisdiction over Dr. Wright under Fla. Stat. §48.193(1)(a)." ECF No. [87], at 35. Summary judgment should be granted to a plaintiff on a personal jurisdiction affirmative defense where the plaintiff "demonstrate[s] that Defendants have sufficient minimum contacts with the forum state to satisfy both the Florida Long-Arm Statute and the Due Process Clause of the Fourteenth Amendment." *Ross v. Chisholm*, No. 05-61238-CIV, 2006 WL 8432311, at *5 (S.D. Fla. Apr. 28, 2006) (granting summary judgment to the plaintiff on personal jurisdiction). This Court already found that it has personal jurisdiction over Defendant at the pleading stage and should do so again. *See* ECF No. [68], at 27–28.

A defendant is subject to the personal jurisdiction of the Florida courts for any cause of action "arising from" committing "a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2). Physical presence is not required. *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002); *see Canadian Steel, Inc. v. HFP Capital Markets, LLC*, No. 11-23650-CIV, 2012 WL 2326119, at *4 (S.D. Fla. June 19. 2012). Courts may assert jurisdiction over a "'nonresident defendant who commits a tort outside of the state that causes injury inside the state.'" *Ocean Commc'ns, Inc. v. Jewelry Channel, Inc.*, No. 9:19-CV-81608, 2020 WL 2042393, at *3 (S.D. Fla. Apr. 28, 2020) (quoting *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008)); *Brennan v. Roman*

*Catholic Diocese of Syracuse New York*, 322 F. App'x 852, 855 (11th Cir. 2009) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1217 (11th Cir. 1999)).

Plaintiffs have demonstrated they were located in Florida. SUMF ¶ 53; Ex. 19 (Electronic Articles of Organization); Ex. 13 (Apr. 8, 2019 Dep. of Ira Kleiman), at 8:14–15, 9:3–14; Ex. 8 (Jan. 9, 2020 Dep. of Zachary Eisner), at 44:5–9, 45:18–23. The injury for Defendant's intentional torts against Plaintiffs occurred in Florida. As the Court concluded in rejecting Defendant's Motion to Dismiss on this ground, ECF No. [68], at 28, this is sufficient.

Moreover, a defendant is subject to personal jurisdiction in Florida for any cause of action "arising from" the "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." Fla. Stat. § 48.193(1)(a)(1). In the Australian Court Proceedings, Defendant affirmed he had conducted business with Dave Kleiman in Florida. SUMF ¶ 54; ECF No. [83-4], at 4–5. "If the forum's long-arm statute provides jurisdiction over one claim, the district court has personal jurisdiction over the entire case so long as the claims arose from the same jurisdiction generating event." *Brennan*, 322 F. App'x at 854.[12] All of the claims here arose out of Defendant's misappropriation of assets of Dave Kleiman and W&K including bitcoin and intellectual property.[13] Thus, personal jurisdiction is appropriate on this ground as well.

---

[12] Personal jurisdiction also exists because Defendant committed tortious acts in Florida by sending communications into Florida to further his fraud. See, e.g., *Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co. Ltd.*, 752 So. 2d 582, 586 (Fla. 2000) (the same communications used to "exploit Floridians . . . may now be used by Floridians to establish a jurisdictional basis for recouping their losses . . . ."); *Wendt*, 822 So. 2d at 1260.

[13] Based on comparing Defendant's withdrawn and resubmitted declaration regarding jurisdiction, it appears Defendant may not intend to assert that a finding of jurisdiction here would violate the constitutional requirements of minimum contacts between this state and Defendant and reasonableness of personal jurisdiction. *Compare* ECF No. [12]; ECF No. [12-2], *with* ECF No. [33]; ECF No. [33-3]. In any event, for many of the same reasons above, and as explained in many of the same cases, the evidence also conclusively satisfies these requirements. *See, e.g.*, *Sport Mgmt. Sys., LLC v. Woolley Grp., LLC*, No. 15-CIV-62224, 2016 WL 8793333, at *4 (S.D. Fla. Mar. 23, 2016) (Bloom, J.) (holding the conversion alleged created a sufficiently substantial connection with this state).

**IV.     CONCLUSION**

For the foregoing reasons, the Court should streamline this case for trial and grant summary judgment to Plaintiffs on all of Defendant's affirmative defenses.

Dated: May 8, 2020

Respectfully submitted,

_s/ Andrew S. Brenner_
Andrew S. Brenner, Esq.
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd Street, Suite 2800
Miami, Florida 33131
abrenner@bsfllp.com

Velvel (Devin) Freedman, Esq.
**ROCHE CYRULNIK FREEDMAN LLP**
200 S. Biscayne Blvd.
Suite 5500
Miami, Florida 33131
vel@rochefreedman.com

Kyle W. Roche, Esq.
Joe Delich, Esq.
_Admitted Pro Hac Vice_
**ROCHE CYRULNIK FREEDMAN LLP**
185 Wythe Avenue F2
Brooklyn, New York 11249
kyle@rochefreedman.com

_Counsel to Plaintiffs Ira Kleiman as_
_Personal Representative of the Estate of_
_David Kleiman and W&K Info Defense_
_Research, LLC._

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 8, 2020 a true and correct copy of the foregoing was

filed under Seal with CM/ECF, and served by E-mail to all counsel of record.

_/s/ Andrew S. Brenner_____
ANDREW S. BRENNER