**EXHIBIT**

**Defense 46800**

exhibitsticker.com

**From:** Craig Wright
**Sent:** Monday, November 23, 2015 8:47 PM
**To:** Ramona Watts <ramona@███████>; Stefan Matthews <stefan.matthews@demorgan.com.au>
**Subject:** Fwd: RE: Hey

SysUserProp: 88334F2CCA0D8E51C8530404366F9B82

Fyi

---------- Forwarded message ----------
From: "Patrick Paige" <patrick@computerforensicsllc.com>
Date: 24 Nov 2015 5:26 am
Subject: RE: Hey
To: "Craig Wright" <craig@███████>
Cc:

No problem... I don't think it's about computers, he mentioned bitcoins in his message.  Maybe they something about yours and Davis bitcoin involvement.  You want me to return his call and feel him out?  Are you guys close to releasing any information on Davis involvement in Bitcoins?

*Patrick Paige* EnCE SCERS

*1880 North Congress Ave. Ste 333*

*Boynton Beach FL 33426*

*Office: 561.404.3074*

**www.computerforensicsllc.com**

*Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.*

**From:** Craig Wright [mailto:craig@███████]
**Sent:** Thursday, November 19, 2015 1:06 PM
**To:** Patrick Paige <patrick@computerforensicsllc.com>
**Subject:** Re: Hey

Thanks for the heads up. Reporters are always troubling. They ignored the stuff Dave and I did when he was alive. I don't know what has started to interest them now.

The computer we are running made the top 20 within the top 500 supercomputer list so this may be new?

http://top500.org/

The first one was COIN in 2013 just before he died and the new one is Tulip.

Dave helped design the first one and as you know did a fair amount of research with me. Most yet to be completed and published.

A worry that they are starting to be nosey now.

Thanks again for the heads up.

On 20 Nov 2015 03:50, "Patrick Paige" <patrick@computerforensicsllc.com> wrote:

> Hi Craig... how goes it, just wanted to touch base with you.  I got a call from a reporter who left a message asking about Dave and you.  I don't plan to call him back, but Carter and I were curious if something is going on.
>
>
> *Patrick Paige* EnCE SCERS
>
> *1880 North Congress Ave. Ste 333*

*Boynton Beach FL 33426*

*Office: 561.404.3074*

*www.computerforensicsllc.com*

*Note: The information contained in this message may be privileged and confidential and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.*

DEF_00046801

EXHIBIT

Defense 1674223

exhibitsticker.com

**From:**     Craig S Wright [craig@█████████
**Sent:**     6/20/2015 2:10:14 AM
**To:**       'c' [c@█████████
**CC:**       'JLP' [jlp@█████████   'Stefan Matthews' [smatthews@█████████   'Sommer, Andrew' [asommer@claytonutz.com]
**Subject:**  RE: OK...finished first cut of the LoI just now

Privilege and all that as Andrew Sommer is on this as well.

Stefan knows my history with Bitcoin from March 2009 on.

Calvin and Jim know late.

Under US law, the maximum timeframe for prosecution is 7 years. eGold and others such as Liberty Reserve have been indicted for illegal money operations.
Basically, the times are:

Jan 2009        Started mining, code used.
March 2011      Moved funds into Trust and BTC overseas.

The US would love to take me down and use this as a means to control BTC. After April 2018 this becomes difficult. After 2020, the trust ends and I have unfettered control of the BTC I own ongoing.

They could accept BTC as a form of currency now, esp if US VCs are the large players, but they would piece what I am doing together with my background and understand the bigger picture of authentication and peer encryption.

I will have this completed in under 2 years if I can focus on the tech and not have to fight all the time. After that, there is no way to stop what I am doing. Money and choice will be personal decisions. The Internet will be un filterable by governments and gaming and other moral choices will be left to the individual. It will stop any form of centralised prohibition.

The wallets I am using for escrow are all tagged.

I do not believe that I can spend them now without people knowing who I am and this would make my life difficult. Hal Finley's wife Fran and family have been getting death threats. If I come out now, I would not be able to focus on finishing the solutions.

So, in time I will have a lot of money either way, but if the US indicted me this would not mean a lot. Australia is very good at sending Australians to the US.

Craig

---

**From:** c [mailto:c@█████████
**Sent:** Saturday, 20 June 2015 11:40 AM
**To:** Craig S Wright
**Cc:** JLP; Stefan Matthews; 'Sommer, Andrew'
**Subject:** Re: OK...finished first cut of the LoI just now

Can we have a list of all things like this for us to review.

Thanks,

C...

**From:** Craig S Wright <craig@ ████████
**Date:** Friday, June 19, 2015 at 6:37 PM
**To:** c <c@ ████████
**Cc:** Jim Philip <jlp@ ████████, Stefan Matthews <smatthews@ ████████ "'Sommer, Andrew'"
<asommer@claytonutz.com>
**Subject:** RE: OK...finished first cut of the LoI just now

The last on HWPE.
Hotwire Preemptive Intelligence.

The company under a deed of company arrangement is owed $5.4 million from the ATO.

The amount to close this off and retake control should be around 300k max. This means we have all the IP in that entity
without any future arguments.

The 5.4 million will return the company to us in time, but it is under the external control of an accounting firm until we
close off their fees.

If the 5.4 million goes into their control now, we will have to wait as they check all the claims and do all they can to
maximise their billing.

Basically, they will milk the company for all they can and are likely to run up a bill over  million dollars.

So, they have us over  barrel. We either give them money now and remove them or when they learn what the control in
detail, the milk us for as much as they can

**From:** c [mailto:c@ ████████
**Sent:** Saturday, 20 June 2015 10:11 AM
**To:** Craig S Wright
**Cc:** JLP; Stefan Matthews
**Subject:** Re: OK...finished first cut of the LoI just now

Good.  Its a sunny Friday afternoon here so we will be heading out for dinner in  a bit...but we are going to be here another
hour or so and would like to see this spread sheet.

C....

**From:** Craig S Wright <craig@ ████████
**Date:** Friday, June 19, 2015 at 5:08 PM
**To:** c <c@ ████████
**Cc:** Jim Philip <jlp@ ████████, Stefan Matthews <smatthews@ ████████
**Subject:** RE: OK...finished first cut of the LoI just now

Thanks,
I am doing up a spreadsheet now.

I will do min as well as what makes it move faster as separate lines.

**From:** c [mailto:c@████████]
**Sent:** Saturday, 20 June 2015 10:07 AM
**To:** Craig S Wright
**Cc:** JLP; Stefan Matthews
**Subject:** Re: OK...finished first cut of the LoI just now

LoI should be here in one hour.

C...

**From:** Craig S Wright <craig@████████>
**Date:** Friday, June 19, 2015 at 5:04 PM
**To:** c <c@████████>
**Cc:** Jim Philip <jlp@████████>, Stefan Matthews <smatthews@████████>
**Subject:** RE: OK...finished first cut of the LoI just now

I will send it to you in 15 mins

I can make the tech work :)

That is the easy part.

DEF_01674225

EXHIBIT

Defense 112094

exhibitsticker.com

# DISCRETIONARY TRUST DEED

**PARTIES**

**Craig Steven Wright**
(Settlor)

**AND**

**W&K Info Defense Research LLC (Florida)**
(Trustee)

**AND**

**Panopticrypt Pty Ltd**
(Appointor)

Movement of Bitcoin following ATO asset reversal
See CSW issues (2010)



**THIS DEED** dated the      day of      2019
**BETWEEN**
                    of
                                                              (Settlor)
And
                    of
                                                              (Trustee)
And
                    of
                                                              (Appointor)

**RECITALS**

**A.**   The settlor wishes to establish a fund for the beneficiaries named in the schedule, on the conditions set out below

**B.**   The settlor has had paid the trustee the sum of BTC      (the settled sum) to be held by the trustee upon the trusts and subject to the conditions in this deed.

**THE SETTLOR DECLARES**

**OPERATIVE PART**

**1.**   In the settlement the following terms have the following meanings unless inconsistent with the context:

   (a)   References to legislation or provisions of legislation include changes or re-enactments of the legislation and statutory instruments and regulations issued under, the legislation;

   (b)   Words denoting the singular include the plural and vice versa, words denoting individuals or persons include bodies corporate and vice versa, references to documents or agreements also mean those documents or agreements as changed, novated or replaced, and words denoting one gender include all genders;

   (c)   Grammatical forms of defined words or phrases have corresponding meanings;

   (d)   Parties must perform their obligations on the dates and times fixed by reference to      ;

   (e)   Reference to an amount of money is a reference to the amount in the lawful currency of the Commonwealth of Australia;

Page 1 of 2

CONFIDENTIAL

DEFAUS_00112095

(f)   If the day on or by which anything is to be done is a Saturday, a Sunday or a public holiday in the place in which it is to be done, then it must be done on the next business day;

(g)   References to a party are intended to bind their executors, administrators and permitted transferees;

(h)   Obligations under this deed affecting more than one party bind them jointly and each of them severally;

(i)   The trust will be known as the     ;

(j)   The trust fund means the settled sum and all additions and accretions to it and all other property added to the trust fund by the trustee, and trust property means any kind of property, real or personal, which forms part of the trust fund;

(k)   The trustee means the company or persons so named herein or if more than one the survivor of them and if more than one they must act jointly not severally. Trustees may be appointors;

(l)   The appointor means the company or persons so named herein or if more than one the survivor of them and if more than one they must act jointly not severally. Appointors may be trustees;

(m)   The specified class means those persons referred to in the schedule and anyone, apart from the settlor, nominated in writing by the trustee;

(n)   The vesting day means 79 years after the date of this deed or any other day prescribed by law for the vesting of trust funds or any earlier day which the trustee, in writing or by oral declaration, appoints to be the vesting day, but which must not be earlier than 1 year after the execution of this deed of settlement;

(o)   Authorised investments means those investments which are authorised by law or any other investments which the trustee in its absolute discretion considers prudent, as if it were acting in a private capacity as the beneficial owner of the trust fund;

(p)   Statutory powers means the powers conferred on a trustee by legislation of the Commonwealth of Australia or any state or territory;

Page 1 of 2

DEFAUS_00112096

(q)   Whenever the trustee may perform a valuation or decide on the value of trust property, the decision as to valuation binds all beneficiaries and anyone else connected with the trusts created by this deed;

(r)   Powers, discretions and authorities conferred by this deed on any person, without limitation, on the trustee or appointor, may be exercised at any time and from time to time, and all decisions of the trustee, unless there is express provision to the contrary, are to be taken in its unfettered discretion;

(s)   Year means a financial year commencing on 1 July in any year and ending on 30 June of the following year and in respect of any 'broken period' occurring at the commencement or termination of this settlement or the trusts created by it means the portion of the financial year running from those dates to 30 June and from the 1 July closest to each of them; and

(t)   The first appointor is the person referred to in the schedule.

2.   The trustee may at any time determine to change the vesting day in relation to the whole or part of the trust fund.

3.   Until the vesting day, the trustee may, before the end of a financial year, determine to accumulate the whole or part of the income of the trust fund as may be permitted by law. The amount of income accumulated will form part of the capital of the trust fund.

4.   The trustee may in his absolute discretion determine whether any receipt, profit or gain or payment, loss, or outgoing or any sum of money or investment however characterised is or is not to be treated as being on income or capital account, and further whether the income of the trust fund is to be calculated as including any actual or deemed capital gain arising during that period under the provisions of the Income Tax Assessment Act.

5.   The trustee may in his absolute discretion determine that any income, however characterised, whether it be franked or unfranked dividends, capital gains, trading revenue, interest, royalties, foreign income or any other kind of income,

CONFIDENTIAL

DEFAUS_00112097

is a separate class of income for the purposes of this trust and divide that income into different parts including differences in the nature or character or source of that income. When dealing with the income of the trust fund in parts only or differently between or amongst parts of it the trustee may in his absolute discretion:

(a)  Pay, apply, place to the credit in the books of account of the trust fund or otherwise deal with the whole or any part of income of any nature, character or source in such a manner as to preserve and pass on the nature, character or source of the income for the purposes of the Income Tax Assessment Act to, for or towards the maintenance advancement or benefit of all or such one or more of the specified class then living or in existence as to the trustee in its absolute discretion may determine and in such shares and proportions that the trustee in his absolute discretion may determine, whether to the exclusion of any one or more of them or otherwise;

(b)  Determine how the outgoings and allowable deductions of the trust fund shall be applied or apportioned in calculating the income of any such nature, character or source; and

(c)  Determine how tax credits, inclusive of foreign tax credits and franked dividend credits as applies under the Income Tax Assessment Act, shall be applied or apportioned.

6.  Until the vesting day the trustee shall hold the income of the trust fund upon trust, as far as it has not decided to accumulate it, to distribute it within a reasonable time at the end of each financial year, as the trustee thinks fit among one or more of the specified class, in any shares and proportions which the trustee may in his absolute discretion think appropriate, and may decide to pay a class of income to one or more of them. The trustee may make distributions from gross income before deducting expenses and may apply expenses to such classes of income as the trustee deems appropriate.

Page 1 of 2

CONFIDENTIAL

DEFAUS_00112098

7.  Income which has not been either accumulated or distributed in a year must be divided between the members at that time of the specified class in equal shares.

8.  The trustee may transfer property to a beneficiary instead of distributing cash to her or him, after deciding the value of the property.

9.  The trustee will hold the trust fund on the vesting day in trust for any number of the specified class in the shares and proportions which the trustee in its absolute discretion has decided within the period of one month before the vesting day. If the trustee does not make this decision in that time, it will hold the trust fund on trust for all members of the specified class in equal shares.

10. The trustee may at any time prior to the vesting day transfer any part of the trust fund to any member of the specified class.

11. The trustee may, in the management of the trust, invest in any investments authorised by law and also in any investments the trustee thinks fit as if it were acting in a private capacity as the absolute owner of the trust fund. Without limiting the generality of the power of investment contained herein, the trustee may invest in any of the following forms of investments:

    (a) Investments authorised by the laws of the Commonwealth of Australia or any of its states or territories for the investment of trust funds, in the name of the trustee or that of a nominee of the trustee;

    (b) Acquisition of shares or stock units of any kind, whether fully or partly paid, whether the company is public or proprietary, listed on any stock exchange or not and whether registered in Australia or in any other part of the world;

    (c) In the purchase of any kind of interest in real estate;

    (d) On deposit with anyone at all either for interest or on any other terms;

    (e) In loans with or without security to any person, and on any terms which the trustee shall in his absolute discretion think fit;

Page 1 of 2

DEFAUS_00112099

(f)   In carrying on or facilitating any kind of business, trustee using the trust fund, with or without borrowed money by the trustee, and without limiting the preceding power, with the following powers:

    (i)   To purchase capital equipment, plant, fixtures, fittings, goodwill and stock in trade;

    (ii)   To pay all outgoings and expenses in connection with the running or carrying on of such business or trade;

    (iii)   To carry out improvements, repairs and renovations to real property on which the business is carried on, whether or not it forms part of the trust property; and

    (iv)   To employ managers, overseers, workmen and employees; and

(g)   To take out life assurance policies with any life assurance company on the lives of members of the specified class.

**12.**   The trustee must pay the outgoings of the trust fund's operations and any losses it may incur out of capital or income as the trustee determines, and must keep proper accounting records of all payments from the fund.

**13.**   In the execution of the trusts set out in this deed, the trustee, in addition to the statutory powers the trustee has the discretionary powers and authorities of a private individual as if it were the beneficial owner of the trust fund, and without limiting the generality of the preceding statement, has the following powers:

(a)   To employ agents, solicitors, accountants, insurance and securities brokers and anyone else, at the expense of the trust fund, and to pay them proper fees, charges, commissions and disbursements;

(b)   If funds held on distinct trusts under this deed have become blended with other funds, to determine the apportionment of them between the persons entitled to them, and to decide what money is capital and income, and if necessary, to ascertain the value of the trust fund, and an apportionment or valuation will bind all interested persons;

(c)   To decide finally any question of construction of this deed or to settle any dispute arising from it either alone or upon the advice of counsel or a

CONFIDENTIAL

solicitor, and every decision will bind all parties concerned, but this clause does not prevent the trustee from applying to the court;

(d)   To give receipts, in full and final discharge for payments, or property transferred, which will exonerate the person paying from any responsibility to see to the application of the money or property;

(e)   To release or compound debts owed to the trust, or to give further time for payment, with or without taking security;

(f)   To compromise claims against the trust fund or the trustee, or to submit them to mediation or arbitration with unlimited power to give releases and enter agreements, without being responsible for any resulting loss;

(g)   To apply the trust fund in satisfaction of the interest of any beneficiary after making any necessary valuation;

(h)   To borrow money, with or without security, on any terms it thinks fit, with or without interest;

(i)   To give guarantees, indemnities and undertakings;

(j)   To apply income of the trust fund to which a minor beneficiary is entitled to the minor's parent or guardian, or to any other person for the support, benefit, welfare or general advancement in life of the minor, without trustee being responsible to see to the application of the funds;

(k)   To allow any member of the specified class to live in a dwelling house that is part of the trust fund on any terms and rent- free or at a rental fixed by the trustee in its absolute discretion;

(l)   In connection with companies in which the trust fund has an interest, to do any of the following:

    (i)   To agree to reformation or amalgamation of the company, and to accept as trust funds:

       (1)   Cash or shares in any new company formed upon the reformation or amalgamation; or

       (2)   Partly cash and partly shares in the new company;

    (ii)   To accept new issues of shares, and to apply dividends or bonuses declared at or about the time of notification of the new issue, but that dividend or bonus is to be treated as capital and not income of the trust fund; and

CONFIDENTIAL

DEFAUS_00112101

      (iii)    Any individual trustee may act as a director of a company in which a part of the trust fund is invested and may receive and retain for his own use any director's fees or other remuneration payable to him in that capacity;

(m)  With regard to land which forms part of the trust fund:

      (i)     To carry on the business of operating stations or farms or other pastoral or farming businesses;

      (ii)    To carry out repairs, make improvements to and to build new buildings of all kinds, dams, fences and other installations on the land;

      (iii)   To keep the land stocked with sheep, cattle, horses and any other livestock;

      (iv)   To maintain and replace machinery and implements;

      (v)    To employ managers, agents and all kinds of employees;

      (vi)   To acquire or dispose of additional land of any kind of tenure, by purchase, lease or exchange;

      (vii)  To acquire existent rights over other land;

      (viii) To convert leased land or land of any other tenure into freehold land;

      (ix)   To sell land alone, or with the stock, plant and equipment necessary for the continued operation of the enterprise, as a going concern;

      (x)    To allow land to be cultivated on the share-farming system on any terms it thinks fit;

      (xi)   To raise money required for any purpose contemplated by this deed by dealing with land which forms part of the trust fund as follows:

           (1)   By mortgaging it;

           (2)   By selling it; and

           (3)   By providing the money partly in one and partly in any other of these modes;

      and the trustee may establish a sinking fund out of the money raised. No third party will be entitled to enquire as to the necessity or expediency of raising money in any of these ways;

      (xii)  To decide whether money received in respect of livestock, produce, sale of plant, land or improvements and any other receipts are to be

CONFIDENTIAL

    treated as capital or income and generally to determine all matters which may arise in connection with the management of the trust fund;

(xiii) The trustee in that capacity may deal with itself in its personal capacity for all intents and purposes as if in its personal capacity it were a stranger; and

(xiv) No trustee purporting to act in the execution of the trusts and powers hereof shall be liable for any loss unless it is attributable to his dishonesty, or to the wilful commission or omission by him of any act which he knows to be a breach of trust.

14. The settlor and the trustee are entitled to be indemnified out of the trust fund against all liabilities arising out of the trust fund, but the trustees right of indemnity is limited to the income and assets of the trust fund and does not extend to assets set aside for beneficiaries of the trust or their dependants, and is not enforceable against any member of the specified class or other beneficiary.

15. A trustee who is a solicitor, accountant or other professional person may be employed to transact business or to do anything required to be done in connection with the trusts created by this deed, and will be entitled to be paid all proper costs, charges and expenses for anything done by him or his firm as if he had not been a trustee.

16. The trustee has no obligation to investigate the accounts or management of any company or statutory body in which any part of the trust fund is invested; nor trustee must it take steps or bring any action to vary the articles of association or intervene in the management of any such company or body and this clause is to be an absolute bar against complaints of inaction by any beneficiary arising from the involvement of the trust fund in a company or statutory body.

CONFIDENTIAL

DEFAUS_00112103

17. The trustee has no obligation to attend any general meetings of companies in which any of the trust fund is invested or to appoint proxies to attend them.

18. At any time prior to the vesting day the trustee, with the consent of the appointor, may by deed vary any provision of this deed other than the following provision relating to the appointor, in any way it thinks fit, subject to the following provisos:

(a) Provided first that the variation must not confer any share or benefit on the settlor;

(b) Provided secondly that a variation which affects the beneficial interest in the trust fund must only be for the benefit of one or more of the specified class who are living at the date of the variation; and

(c) Provided thirdly that the trustee may exercise this power of variation as it in its absolute discretion sees fit, but subject to the overriding limitation that the whole of the trust fund must still vest in time so that no breach of the rules of law or equity as to perpetuities and the accumulation of income will be caused by the variation.

19. With due regard to stamp duty and taxation implications, the appointor or the survivor of them if more than one or an appointor nominated by deed or by will after the last appointor's death may by notice in writing delivered to the trustee:

(a) Remove a trustee; or

(b) Appoint a new or additional trustee, who may be an individual or a corporation, provided that if they are a member of the specified class they disclaim any potential benefit under the trust or pay any stamp duty and tax resulting from such appointment and provided that there are not more than four trustees at any time.

If the last surviving appointor does not nominate a successor appointor in his will, then his legal personal representative will be the appointor. Each successive appointor has the same power to nominate subsequent appointors by writing or will, and if they do not exercise this power during their lives or by will, the succeeding appointor will be their legal personal representative on their

Page 1 of 2

CONFIDENTIAL

death; but subject to the proviso that the settlor must not be appointed as a trustee.

20. A communication required by this deed, by a party to another, must be in writing and may be given to them by being:

    (a)   Delivered personally; or

    (b)   Posted to their address specified in this deed, or as later notified by them, in which case it will be treated as having been received on the second business day after posting; or

    (c)   Faxed to the facsimile number of the party with acknowledgment of receipt received electronically by the sender, when it will be treated as received on the day of sending; or

    (d)   Sent by email to their email address, when it will be treated as received on that day.

## SCHEDULE

**The specified class is:**

1. The spouse, de facto partner, children and remoter issue of Craig Steven Wright.

2. The spouses, de facto partners and children of each of those children and their descendants.

3. Any company, wherever incorporated or having its corporate office, in which any of the persons mentioned in clauses 1 and 2 holds shares or is a director; and

4. Any trust of which any of the persons mentioned in clauses 1 and 2 is a beneficiary, whether discretionary, contingent or vested.

**The first appointor is:**

1. Craig S Wright of W&K Info Defense Research Llc

2. Dave Kleiman of W&K Info Defense Research Llc.

Page 1 of 2

CONFIDENTIAL

**EXECUTED AS A DEED**

CONFIDENTIAL

DEFAUS_00112106

**From:** Craig S Wright
**Sent:** Saturday, March 1, 2014 5:42 AM
**To:** 'Craig Wright' <craig@████████
**Subject:** RE: IFIP-WG11.9 CFP
**Attachments:** image001.jpg; image002.jpg; image003.jpg

**SysUserProp:** 88334F2CCA0D8E51C8530404366F9B82

Your eyes only - to discuss.

---

**From:** Craig Wright [mailto:craig@████████
**Sent:** Wednesday, 10 October 2012 4:55 PM
**To:** Dave Kleiman [mailto:dave@davekleiman.com]
**Subject:** FW: IFIP-WG11.9 CFP
We need to discuss the trsut and work out what the fuck we are doing with it all.
So, a good tax deductible way to have a visit and also write a paper.
...
Dr. Craig Wright LLM GSE GSM GSC MMiT MNSA MInfoSec CISSP/ISSMP CISM CISA

# RCJBR.org

Tel: + 612 8003 7553 | Mobile: + 61 417 683 914
http://www.rcjbr.org

---

**From:** Dave Kleiman [mailto:dave@davekleiman.com]
**Sent:** Wednesday, 10 October 2012 4:48 PM
**To:** Craig Wright <craigswright@acm.org>
**Subject:** FW: IFIP-WG11.9 CFP
What do you think?
------ Forwarded Message
> CALL FOR PAPERS
>
> Ninth Annual IFIP WG 11.9 International Conference on Digital
> Forensics
>
> National Center for Forensic Science
> University of Central Florida
> Orlando, Florida , USA
> January 28-30, 2013
>
> ============================================
>
> The IFIP Working Group 11.9 on Digital Forensics (www.ifip119.org) is
> an active international community of scientists, engineers and
> practitioners dedicated to advancing the state of the art of research
> and practice in digital forensics. The Ninth Annual IFIP WG 11.9
> International Conference on Digital Forensics will provide a forum for
> presenting original, unpublished research results and innovative ideas related to the extraction, analysis and
> preservation of all forms of electronic evidence. Papers and panel proposals
> are solicited.  All submissions will be refereed by a program
> committee comprising members of the Working Group. Papers and panel
> submissions will be selected based on their technical merit and
> relevance to IFIP WG 11.9. The conference will be limited to
> approximately sixty participants to facilitate interactions between
> researchers and intense discussions of critical research issues.
> **Keynote presentations, revised papers and details of panel discussions**
> **will be published as an edited volume  the ninth in the series entitled Research Advances in Digital Forensics (Springer)**
> **in the summer of 2013.** Revised and/or extended versions of selected papers
> from the conference will be published in special issues of one or more
> international journals.
>
> Technical papers are solicited in all areas related to the theory and
> practice of digital forensics. Areas of special interest include, but
> are not limited
> to:
>
> Theories, techniques and tools for extracting, analyzing and
> preserving digital evidence
> Network and cloud forensics
>  Embedded device forensics
> Digital forensic processes and workflow models
> Digital forensic case studies
>  Legal, ethical and policy issues related to digital forensics
>
>
> ============================================
>

> Conference Deadlines
>
> Paper/Panel Submission: October 15, 2012
>
> Notification of Acceptance: November 15, 2012
>
> ============================================
>
> Instructions for Authors
>
> Technical Papers: All technical paper submissions (in .pdf format)
> should be submitted using the EasyChair System
> (www.easychair.org/account/signin.cgi?conf=ifipwg1192013).
> Manuscripts should be in English and not longer than 20 pages (typed
> double-spaced format in a 12-point font) or equivalent. Each
> submission should have a cover page with the titles, names and
> addresses (including e-mail addresses) of authors, an abstract of
> approximately 200 words, and a list of keywords. Please contact the
> program co-chair (Gilbert.Peterson[at]afit.edu) in case of questions and clarifications.
>
> Panels: Proposals for panels (in .pdf format) should be emailed to
> the program co-chair (sujeet[at]utulsa.edu). Panel proposals should
> include a one-page description of the topic, along with the name and
> address (including e-mail address) of the organizer, and a list of proposed panelists.
>
> ============================================
>
> General Chair: Mark Pollitt (Daytona State College , USA )
>
> Program Chairs: Gilbert Peterson (Air Force Institute of Technology ,
> USA ); Sujeet Shenoi ( University of Tulsa , USA )
>
> Technical Committee:
> Nicole Beebe, University of Texas San Antonio; Jonathan Butts, Air
> Force Institute of Technology; KP Chow, The University of Hong Kong;
> Philip Craiger, Daytona State University; Fred Cohen, California
> Sciences Institute; Mark Davis; Stephen Flowerday, University of Fort
> Hare; Yong Guan, Iowa State; Patrick Juola, Duquesne University; Gary
> Kessler, Embry-Riddle Aeronautical University; Jigang Liu,
> Metropolitan State University; Michael Losavio, University of
> Louisville; Martin Olivier, University of Pretoria; Vassil Roussev,
> University of New Orleans; Bradley Schatz, Schatz Forensics; Hein
> Venter, University of Pretoria;
>
> ============================================
>
> [Apologies for multiple postings]
>
------ End of Forwarded Message

EXHIBIT

Defense 13808

**From:** Craig S Wright
**Sent:** Tuesday, October 27, 2015 12:40 PM
**To:** Stefan Matthews; Ramona Watts
**Subject:** FW: This week

Re Dave-

---

**From:** dave@davekleiman.com
**Sent:** Tuesday, 22 May 2012 11:07 PM
**To:** Craig S Wright
**Subject:** RE: This week

Craig
It will be OK. Rant. The trusts are all good and even if they bankrupt you, the plan is in place and the alter ego you hate can save you.
The Seychelles have no ties to Oz. They have nothing they can retrieve if they win. If they lose, we start it all going.
Dave

---

From: Craig S Wright
To: dave@davekleiman.com
Subject: This week
Date: Tue, 22 May 2012 09:45:31 +1000

Dave,
A recycled rant. I have done the same to Ramona.

It is not a good several weeks from now. Tomorrow I have the AAT and then teaching. Tonight changes and writing. Thursday, webinars and more. I return a week from now even busier. The following few months are basically hell with less heat.
CSU wants to expand what I can do and also have a backup, so they have moved me to a subject I do not like much from one I started and love next semester. I am not teaching the ethical hacking class next semester, but rather I am teaching Windows domain management (A subject I know but find boring). Knowing I have to spend the next 4 months from when I return doing something I do not enjoy far less than I thought adds little to removing my stress.
I have missed my deadline with Hakin9 and will miss the journal for the first time in 9 months. I know I will not have time at all over the weekend to write, so I have until Thursday night to finish editing 172 pages for Bob and the book chapters. This is a hard deadline and I cannot miss it. Right now, I have 168 pages to go.
I am stressed right now. FUCKING ARGHHHH!
I still have not started reviewing my slides and I am no closer with the work for FASV. They have no real idea what, but it could be a way to help with funds as I find a means to make a Bitcoin exten sion that cannot be lost. One that is money you do not lose when you die, but is still all Bitcoin is. They still crap all over my paper and dismiss it. Bloody academic cryptographers. The Blockchain is better than they will ever do and they all fucking dismiss it. Fucking Scheiner stole my early ideas now the prick shits all over the new ones. One day.
The meeting with the AAT should have occurred weeks ago, but the ATO have stalled and put it off. John has all the materials and the ATO are simply BS'ing again. It costs me money and in a way I guess they want to get a result through attrition rather than honesty. They will drain all I have if they can. We do not touch the trusts. Not yet. Not even for this. ONE DAY, they will change the world. Not millions, not billions. If I am right, they will be trillions and let them try shit on us then. FUCKING DICKS. Bloody lying ATO cock sucking bastards! They lost evidence and use my temper against me. I hate their lies. I did everything right and I am STILL punished.
I am not spending time with family. I fail to talk with you Dave other thasn rants and work. I am sorry, but I have nothing much more than rants and work. This drives me.
I need more time. I need to have time to do what it takes.
I would sell my grandmother for banking code. I am not getting what I need. I have been doing core banking reviews and these help with the middle wear and the process, but I NEED code. NO TIME. NO access and a fucking recalcitrant bloody tax office who thinks I am the anti-christ.
I need a way to get something soon. I need an ERD at least. I will work for a bloody bank if I need to. I have friends in the Commonwealth Bank here, but I just want source code. Why is it so hard to get? And again, it is the bloody ATO. They have made it so fucking hard with the closing of my companies.
Craig

EXHIBIT

Defense 22208

exhibitsticker.com

| From: | Craig S Wright |
|---|---|
| To: | "Dave Kleiman" |
| Subject: | FW: 1st CFP - ICT and Informing Science and Engineering |
| Date: | Friday, 26 October 2012 3:17 PM |

I want to do something on Bitcoin. I think it is about time. You can tell me about the trusts when I am there.

We had this Wickenby shit here. So offshore is a worry. I am thinking of coming clean to the tax office dicks this year. I have a capital loss that covers the gains right now. I just need to find the right people. I know it is not wrong, but I want it clean. I want to just be a family man for a little bit and not have the shit I always get into.

We setup a company, we distribute something and both of us can live a little more comfiortably.

I promised Ramona that I would clear up the shit with the tax office and McArdle (wanker). She will not marry me if I do not. I figth with her too much and the shit with having assets and no cash makes life crap. I even have a fucking swear jar as I need to curtail how I talk arounf thekids. I will get moving on the corporate structure and have something other than a dormant trust co in the UK and pay the guy there to move the name back and keep the history silent.

David is becoming a little vague, but the guy is in his 90's. I do not think we can do much more in the UK right wow other than start to move it.

I will talk when you are up - call on skype

...
Dr. Craig Wright LLM GSE GSM GSC MMiT MNSA MInfoSec CISSP/ISSMP CISM CISA
RCJBR.org
Tel: + 612 8003 7553  |  Mobile: + 61 417 683 914 http://www.rcjbr.org


-----Original Message-----
From: Dave Kleiman [mailto:dave@davekleiman.com]
Sent: Friday, 26 October 2012 2:45 PM
To: Craig Wright
Subject: RE: 1st CFP - ICT and Informing Science and Engineering

It is 23:30 EDT now, so anytime tomorrow for me...whatever that equates to for your good sir.

Respectfully,

Dave Kleiman - http://www.ComputerForensicsLLC.com

4371 Northlake Blvd #314

Palm Beach Gardens, FL 33410
561.310.8801

-----Original Message-----
From: Craig Wright [mailto:craig@ ▮▮▮▮]
Sent: Sunday, October 21, 2012 19:26
To: Dave Kleiman
Subject: RE: 1st CFP - ICT and Informing Science and Engineering

This is a might. When are you up to having a call to discuss a possible submission?

...
Dr. Craig Wright LLM GSE GSM GSC MMiT MNSA MInfoSec CISSP/ISSMP CISM CISA
RCJBR.org
Tel: + 612 8003 7553  |  Mobile: + 61 417 683 914 http://www.rcjbr.org

-----Original Message-----
From: Dave Kleiman [mailto:dave@davekleiman.com]
Sent: Sunday, 21 October 2012 10:09 AM
To: Craig Wright <craigswright@acm.org>
Subject: FW: 1st CFP - ICT and Informing Science and Engineering

Might we see you speaking at this event?

Respectfully,

Dave Kleiman - http://www.ComputerForensicsLLC.com

4371 Northlake Blvd #314
Palm Beach Gardens, FL 33410
561.310.8801

-----Original Message-----
From: WMSCI & CCISE 2013 [mailto:wmsci@mail.2013iiisconferences.org]
Sent: Saturday, October 20, 2012 08:17
To: Dave Kleiman
Subject: 1st CFP - ICT and Informing Science and Engineering

=========================================================================
                    1st CALL FOR PAPERS
*********************************************************************
            July 9 - 12, 2013 - Orlando, Florida, USA
     The 17th World Multi-Conference, Systemics, Cybernetics and
Informatics:
              WMSCI 2013, www.2013iiisconferences.org/wmsci
*********************************************************************
            June 30 - July 6, 2013 - Porto, Portugal
International Conference on Complexity, Cybernetics, and Informing Science
and Engineering:
              CCISE 2013, www.2013iiisconferences.org/ccise
=========================================================================
Deadlines for this 1st CFP
*   Abstracts/Draft Papers Submissions: November 16th, 2012
*   Notification to Authors: December 16th, 2012

\*   Camera Ready: February 20th, 2013
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
The following issues apply to both conferences. Differences are included in
the respective web sites:
\*   Submission for face-to-face and virtual presentation (via asynchronous
communication) are accepted.
\*   Technical keynote speakers will be selected from early submissions
because this selection requires an additional evaluation according to the
quality of the paper, assessed by its reviewers, the authors' CV and the
paper's topic.
\*   Submitted papers/abstracts will go through at least two reviewing
processes: (1) double-blind (at least three reviewers), (2) non-blind,
and/or (3) participative peer reviews.
\*   Authors of accepted papers who registered in the conference can have
access to the evaluations and possible feedback provided by the reviewers
who recommended the acceptance of their papers/abstracts, so they can
accordingly improve the final version of their papers. Non-registered
authors will not have access to the reviews of their respective submissions.
\*   Authors of the best 10%-20% of the papers presented at the conference
(included those virtually presented) will be invited to adapt their papers
for their publication in the Journal of Systemics, Cybernetics and
Informatics.

Best regards,

WMSCI 2013 and CCISE 2013 Organizing Committees

If you wish to be removed from this mailing list, please send an email to
remove@mail.2013iiisconferences.org with REMOVE MLCONFERENCES in the subject
line. Address: C.C. El Placer II, Suites 5 & 7, Caracas, Venezuela.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9:18-cv-80176**

```
EXHIBIT

Document Entry 376
```
exhibitsticker.com

IRA KLEIMAN,
as personal representative of
the estate of David Kleiman,
and W&K INFO DEFENSE RESEARCH,
LLC

       Plaintiffs,

v.

CRAIG WRIGHT,

       Defendant.

_____/

**CRAIG WRIGHT'S NOTICE OF COMPLIANCE**
**WITH COURT'S JANUARY 10, 2020 ORDER**

       Dr. Craig Wright files this Notice of Compliance with this Court's Order dated January

10, 2020 [D.E. 373]. Specifically, Dr. Wright notifies the Court that a third party has provided

the necessary information and key slice to unlock the encrypted file, and Dr. Wright has

produced a list of his bitcoin holdings, as ordered by the Magistrate Judge, to plaintiffs today.


Dated: January 14, 2020

                    **RIVERO MESTRE LLP**

                    *Attorneys for Craig Wright*
                    2525 Ponce de León Blvd., Suite 1000
                    Miami, Florida 33134
                    Telephone:  (305) 445-2500
                    Facsimile:  (305) 445-2505
                    E-mail: arivero@riveromestre.com
                    E-mail: amcgovern@riveromestre.com
                    E-mail: zmarkoe@riveromestre.com
                    E-mail: zkass@riveromestre.com
                    Secondary: receptionist@riveromestre.com

By: s/ Andres Rivero
ANDRES RIVERO
Florida Bar NO. 613819
AMANDA MCGOVERN
Florida Bar No. 964263

## CERTIFICATE OF SERVICE

I certify that on January 14, 2020, I served this document on all counsel of record by email.

_ /s/Amanda McGovern_____
AMANDA MCGOVERN

**EXHIBIT**

Defense HC1518378

**JULY 7, 2017**



# TRUST DOCUMENT
## LIVING ASSIGNMENT

**CRAIG S WRIGHT**
**TULIP TRUST [T000712]**
**Seychelles**



# TRUST AGREEMENT FOR THE TULIP TRUST

THIS TRUST AGREEMENT is made on this day 06th July 2017, by and between the following parties:

- **Ramona Ang** and **Craig Steven Wright (Dr. Wright)**, Grantors, Settlers and Beneficiaries with respect to their Community Property (as designated in **Schedule "A"**) and ███████████████ ; and

  - **Ramona Ang (Ang Mei Fong Ramona, Singaporean)**, Primary Trustee and Protector of the TULIP TRUST (hereinafter referred to as "Trustee," which designation shall include all Successor Trustees).

  - **Dennis Bosire Mayaka, Equator Consultants AG** trustee of the TULIP TRUST (hereinafter referred to as "Trustee," which designation shall include all Successor Trustees) as per the registered agreement and terms (and power of attorney).

  - **Craig Steven Wright**, may, with a super majority vote of the members of the trust become a trustee of the TULIP TRUST (hereinafter referred to as "Trustee," which designation shall include all Successor Trustees) only after June 2020 Property (as designated in **Schedule "E"**).

  - **It is a condition of this deed that no party will provide a copy of this deed to Dr. Wright and that unless all parties are jointly compelled (under their home country law) that this document will remain outside of Dr. Wright's possession from the period of at most 10th July 2017 until the 15th December 2019.**

  - **Trust Officers** may be appointed after the initial meeting and are defined in Schedule "H".

WHEREAS, Craig Steven Wright and Ramona Ang are about to convey certain real and personal property to Trustee (revoking all former trust deeds and rights), and

WHEREAS, Trustee has agreed to accept such conveyance and hold said property in trust under the terms and conditions set forth below,

WHEREAS, many rights to assets are held as bearer instruments or under informal trusts maintained by Power of Attorney instruments,

NOW, THEREFORE, the parties, intending to be legally bound hereby, agree as follows:

1.   NAME.
The revocable living trust created by this instrument shall be known as the **TULIP TRUST** (hereinafter referred to as "Trust").

Miscellaneous provisions to this trust document are noted in Schedule "I".

CONFIDENTIAL                                                    DEFHC_01518379

Contents

TRUST AGREEMENT FOR THE TULIP TRUST ............................................................... 1

1.   NAME. ................................................................................................................. 1

2.   DEFINITIONS. ................................................................................................... 3

3.   TRUST PURPOSE. ............................................................................................. 3

4.   TRUSTEE AND SUCCESSOR TRUSTEE. ....................................................... 5

6.   INCAPACITY OF TRUSTEE OR GRANTOR. .................................................. 6

7.   REMOVAL OF TRUSTEE. ................................................................................. 6

8.   RIGHTS RESERVED BY GRANTOR. ............................................................... 6

9.   TRUST PROPERTY. ........................................................................................... 7

A.   SUGGESTED TRUST REGISTRATION. .......................................................... 8

B.   TAX IDENTIFICATION. ..................................................................................... 8

C.   POWERS AND DUTIES OF TRUSTEE. ............................................................ 8

D.   LIMITATIONS ON POWERS OF TRUSTEE. ................................................. 10

E.   COMPENSATION OF TRUSTEE. ................................................................... 10

F.   LIABILITY OF TRUSTEE. ............................................................................... 10

G.   INDEMNIFICATION OF TRUSTEE. ............................................................. 10

H.   BENEFICIARIES. ............................................................................................. 11

I.   RIGHTS AND INTEREST OF BENEFICIARIES. ........................................... 11

J.   PROVISION FOR SPENDTHRIFT TRUST, SUPPORT TRUST, AND
DISCRETIONARY TRUST FOR CERTAIN NON-GRANTOR BENEFICIARIES. ....
.................................................................................................................................. 12

K.   ADMINISTRATION AFTER THE DEATH OF GRANTOR. .......................... 12

L.   ASSIGNMENT OF BENEFICIAL INTERESTS. ............................................. 12

M.   DISCLOSURE OF BENEFICIARIES. .............................................................. 13

N.   SMALL TRUST TERMINATION. ................................................................... 13

O.   RECORDING OF AGREEMENT. ..................................................................... 13

P.   BINDING EFFECT. ........................................................................................... 13

Q.   ENTIRE AGREEMENT AND AMENDMENT. ............................................... 13

R.   GOVERNING LAW. .......................................................................................... 13

S.   SEVERABILITY. ............................................................................................... 13

T.   ANNUAL STATEMENTS. ................................................................................. 14

U.   PERPETUITIES. ............................................................................................... 14

V.   NOTICE. ............................................................................................................ 14

CONFIDENTIAL                                                                         DEFHC_01518380

2.   **DEFINITIONS.**

    a.   The term **"Trust"** refers to any trust created by this agreement.

    b.   The term **"Trustee"** includes all Successor Trustees and includes both the singular and plural.

    c.   The term **"Settlor"** and **"Grantor"** includes both the singular and plural where applicable.

    d.   The term **"Beneficiary"** includes both the singular and plural where applicable.

    e.   The term **"Protector"** includes both the singular and plural where applicable.

    f.   For the purposes of this Trust Agreement, references to **"incapacity"** shall mean that the individual in question is under a legal disability, or by reason of illness or mental or physical disability is, in the concurring written opinion of three independent board-certified doctors currently practicing medicine who have examined Trustee, unable to properly manage his or her own affairs.

    g.   For the purposes of this Trust Agreement, references to **"rehabilitation"** shall mean that the individual in question is no longer under a legal disability or is, in the concurring written opinion of three independent board-certified doctors currently practicing medicine who have examined Trustee, able to properly manage his or her own affairs.

    h.   Words including but not limited to "him," "her," "he," and "she" that are used in the singular or neuter form are to be construed in the plural, masculine, or feminine where applicable.

    i.   The **Activation date** follows the first full meeting of members after 15th December 2019 and before 30 June 2020. At this point, the management of the trust shall be turned over to the primary trustee and be managed by the members in the manner decided through the decisions of this meeting.

3.   **TRUST PURPOSE.**

The purpose of this Trust is for Trustee to take and hold title to the property conveyed to Trustee and to preserve and increase the same until its sale or other disposition. This Trust receives the 2014 Trust (the former Trust) and finalises this into the Registered Seychelles Trust **T000712**. The nature of this trust may not be varied nor the purpose of this trust. ███████████████████████

The Trust is formed to promote the work of Dr. Craig Wright (publicly known as the pseudonym Satoshi Nakamoto).

The Trust is to promote the legal nature of BitCoin with and in using any and all means it can. Bitcoin is designed as the first distributed Peer to Peer ledger, credit and/or money system that makes the use of the system for large scale crime difficult at best.

Trustee shall not undertake any activity which is not strictly necessary to attainment of the foregoing purpose, nor shall this Trust Agreement be deemed to be, or create, or evidence the existence of a corporation, de facto or de jure, or a Massachusetts Trust, or any other type of business trust, or an association in the nature of a corporation, or a co-partnership or joint venture by or between Trustee and Beneficiaries before January 2020. The Trustee and Beneficiaries may vote, as of January 2020 to form a registered corporate entity including in

CONFIDENTIAL

DEFHC_01518381

the form of a Massachusetts business trust for the purposes of promoting the express purpose of the trust.

Bitcoin is defined by the 2009 "*Bitcoin Whitepaper*". Any disagreements as to the nature of Bitcoin shall be decided by Craig Wright (or by vote in his permanent incapacity).

Forked assets include any variants of Bitcoin derived from the original **Bitcoin** Genesis block. If an altered version of Bitcoin (XBT) is created (such as the planned addition of Segregated Witness would create), this is not to be considered Bitcoin, but shall remain as an asset in the trust.

The Purpose of the trust is not to hold Bitcoin, but to use this and other assets in the creation of a commercial Peer internet. This shall be a Peer to Peer system that is not funded using advertising. ███████████████████████████████████████████████████████████████

The **Activation date** in January 2020 will incorporate a series of meetings to explain the rights and obligations of this trust to the beneficiaries and members. These shall be held by 31st January 2020 but not before 15th December 2019. ████████████████████



Other members, Trustees and Beneficiaries maybe added as beneficiaries and members following a vote by a supermajority of members.

The purpose of the trust is:

- To further Dr Wright's research and development of commercial Peer to Peer networks and systems and to exploit and commercialise the creation of globally focused systems. The full extent of this will be detailed in the first meeting of members to be held between December 2019 and December 2020. Dr Wright will provide details as to the nature of his research and the explicit goal is to be derived from that research.
- To promote education in STEM and within the members of the trust.
- To promote classical western education and philosophy in academic systems.
- To build the P2P systems envisioned by Dr Wright and which are being researched by the group founded by Dr Wright, nChain Ltd (and associated entities).
- To build a scaled financial system capable of handling commercial and machine-based transactions for all humans and to handle at least 1 trillion TPS (transactions per second).
- To create distributed overlay networks that use Bitcoin as a ledger.

### Spyder

It is noted that Bitcoin is merely the ledger for the peer internet project started by Dr Wright in 1998 and registered as Spyder / Redback / Blacknet.

CONFIDENTIAL

DEFHC_01518382



<u>Charitable events.</u>

- I.e. member A donates $100 USD to Greepeace in a year, that member will have $200 USD removed from any distribution in the following year and have a permanent reduction of $10,000 USD in any interest in the trust and this would be taken as a payment of $10,000 that was already received on the final dissolution of the trust (carried forth to the inheritors of that member).
- Any university or facility of higher learning that is being invested in must adhere to principles of Western culture. Any organisation that teaches post-modern anti-Western culture is excluded from receiving any investment from this trust under any conditions.

**AMENDMENTS TO THE TRUST**

**Unless otherwise noted, the Trust terms may be amended, supplemented, amended and restated, or repealed, in whole (with the noted exclusions) or in part, by a majority of the Trustees then in office at any meeting of the Trustees and members (Schedule "E"), or by one or more writings signed by such a majority.**

4.  TRUSTEE AND SUCCESSOR TRUSTEE.

CONFIDENTIAL

DEFHC_01518383



The response to force is detailed in Schedule "F".

6.   INCAPACITY OF TRUSTEE OR GRANTOR.



7.   REMOVAL OF TRUSTEE.



8.   RIGHTS RESERVED BY GRANTOR.

Each Grantor, without requiring the consent of any other Grantor, reserves the following rights during his or her lifetime:

a.   <u>Right to Amend or Terminate Trust</u>

6 | P a g e

b.     <u>Right to Withdraw Assets</u>



c.     <u>Right to Add Assets.</u>

d.     <u>Right to Occupy Real Property.</u>

e.     <u>Right to veto and chairmanship.</u>

## 9.     TRUST PROPERTY.

a.     Grantor hereby conveys and delivers to Trustee in trust all of Grantor's right, title, and interest in all real and personal property, tangible or intangible, of any nature, in any location, which may be owned or later acquired by Grantor, unless an exception to said conveyance of a particular property interest is specified in **Schedule "A"** attached hereto and made a part hereof. **Schedule "A"** additionally enumerates all property, to the best of Grantor's knowledge as of the execution date of this Trust Agreement, that is owned by Grantor and hereby conveyed and delivered to Trustee in trust. This property, together with any property later added to the Trust (whether *inter vivos* or by "pour-over" will provision or by income from and therefore growth in principal), shall be designated as "Trust Property." This general assignment shall override the beneficiary designations specifically noted on **Schedule "A."**

b.

c.

d.

e.

f.

g.



CONFIDENTIAL                                                                                    DEFHC_01518385

## A.  SUGGESTED TRUST REGISTRATION.

During the life of Grantor, assets may be registered to the Trust as follows:

"_____, Trustee, or his Successor Trustees, under the [T000712] TULIP TRUST dated [Month] [Day], [Year], and any amendments thereto."

Other forms of registration are permissible.

## B.  TAX IDENTIFICATION.

During the life of Grantor, the Trust shall be identified by the formal registration number (initially, **T000712**). If the Trust shall not be terminated after the death of Grantor.

## C.  POWERS AND DUTIES OF TRUSTEE.

It is the intention of Grantors to grant to Trustee the power to deal with all Trust Property as freely as Grantors could do individually, and the only requirement that Grantors place upon Trustee is that Trustee act as a fiduciary in the best interests of Grantor and Beneficiaries. Accordingly, subject to this fiduciary duty, Trustee shall have all authority and powers permitted under the law of the UK, which is to be seen to be governing this Trust. Trustee shall serve as Trustee of all trusts and sub-trusts under this Trust Agreement. Trustee (or Successor Trustee) shall have, but not be limited to, the power to do the following:

███████████████████████████████████████████████

b.      Invest Trust Property in any kind of investment, including without limitation real estate, personal property, insurance, securities of any kind, notes, mortgages, stock options, and futures – without regard to the proportion any such investment may bear to all Trust Property.

c.      Sell, convey, exchange, or otherwise dispose of any Trust Property, including without limitation real estate, personal property, insurance, securities of any kind, notes, mortgages, stock options, and futures. Bitcoin and potentially related assets held by the trust companies may be used as follows:

1.   Wright International Investments: Bitcoin mined between Jan 2009 and 2010 by Information Defense Pty Ltd may not be used, encumbered nor otherwise made subject to any dispossession prior to a full meeting of the "members" in the period between December 2019 and late 2020.

2.   Tulip Trading Ltd: any Bitcoin and associated assets obtained in 2011 by "CSW R&D", "Craig Wright R&D", Panopticrypt Pty Ltd, Wright Family Trust (Australia), Wright Family Fiduciary Trust  to the extent that they are later recoverable

d.      Diversify the Trust's investments, including authority to decide that some or all the Trust Property need not produce income.

e.      Hold uninvested cash, even if the total amount so held would not be permitted without this provision, and the power to acquire or hold underproductive real or personal property.

f.      Manage trust real estate, including without limitation the power to lease said real estate; to make repairs, improvements, or alterations; to insure against loss; to adjust boundaries; to partition; to erect or demolish buildings thereon; to convert to a different use; and to insure or perfect title.

g.      Vote stock or delegate the voting of stock for any purpose, and to participate in Trust-related corporate activities in any legally permissible capacity, including serving as an officer or director.

CONFIDENTIAL

DEFHC_01518386

h.      Coordinate with other owners in carrying out foreclosure, lease, sale, incorporation, dissolution, liquidation, or reorganization of the capital or financial structure of any association or corporation in which the Trust has a financial interest.

i.      Incorporate, make elections regarding the corporate form of, operate, dissolve, liquidate, or sell any business in which the Trust has a financial interest, regardless of the business's corporate form, and with no liability on Trustee's part for any losses provided that Trustee handles such matters as a reasonably prudent person would in dealing with his or her own affairs.

j.      Borrow money for business purposes, mortgage or encumber any business assets, and engage in the redemption of stock of any business in which the Trust has a financial interest, with no liability on Trustee's part for any losses provided that Trustee handles such matters as a reasonably prudent person would in dealing with his or her own affairs.

k.      Continue, restructure, sell, or terminate any business enterprise in which Grantor owned any interest during his lifetime.

l.      Hold any or all Trust assets in Trustee's own name, or in the name of any corporation, partnership, or other legal person; the fiduciary relationship of Trustee and / or any other holder of legal title to Trust assets should generally be disclosed, unless non-disclosure is both legally permissible and reasonably appropriate to preserve the value of any Trust Property and to protect the interests of the Trust.

m.      Borrow money and encumber Trust Property on any terms and from any person or entity, if it is reasonably calculated to protect, preserve, or improve the interests of the Trust.

n.      Pay any debt obligation or encumbrance on any Trust asset.

o.      Pay any debt obligation or encumbrance on any legal event associated with the Grantors.

p.      Lend Trust funds to Grantor or Beneficiaries and to change the terms of such loans, including without limitation extending the loans beyond maturity, changing the interest rate, and consenting to any loan modification.

q.      Pay or refrain from paying any taxes, assessments, rents, or debt obligations, as well as the power to pay any costs to repair or maintain any Trust asset, so long as the foregoing is reasonably calculated to protect the interests of the Trust.

r.      Carry any insurance against any hazards, including life insurance on the life of any Grantor or Beneficiary, and to exercise or release any rights in such insurance policy or to use insurance proceeds to repair or replace assets insured.

s.      Establish bank, brokerage, or other financial accounts and deposit Trust funds in said accounts whether they are insured or uninsured by FDIC coverage, as well as enter into electronic fund transfer or safe deposit arrangements with financial institutions.

t.      Receive additional property from any source and add it to the Trust Property.

u.      Distribute any Trust Property, in whole or in part, to any Beneficiary under the terms of the trust purpose and for a limited distribution of no more than 10% of the trust in any single year between any and all members of the trust (such as for living expenses).

v.      Expend the Trust income or principal, or both, for the health and maintenance of Grantor or Beneficiaries during any period of incapacity of Grantor or Beneficiaries as defined by this Trust Agreement, or for the payment of Grantor's debts, estate taxes, and expenses of Grantor's last illness and funeral.

CONFIDENTIAL

DEFHC_01518387

w.     Expend all or part of the Trust income or principal, or both, during any period of incapacity of Grantor, for the health and support of any issue of Grantor who has no other financial resources and requires such distributions for his or her health and support in his or her accustomed manner of living. Trustee shall consider all financial resources available to said Beneficiary prior to making a distribution, including without limitation the ability of said Beneficiary to earn a living and the ability of said Beneficiary's spouse, if any, to earn a living. In no event may Trustee, unless he is a member of Grantor's immediate family, exercise this power in favour of himself.

x.     Employ and pay reasonable fees to accountants, lawyers, financial planners, investment experts, brokers, realtors, business managers, or technical consultants for information or advice or administration assistance relating to the Trust.

y.     Create a "Family Office" to act to maintain the assets of the trust and to enrich these.

z.


aa.    Pay all reasonable expenses from the Trust Property in connection with the administration of this Trust.

bb.    Execute any documents necessary to administer any Trust under this Trust Agreement.

## D.    LIMITATIONS ON POWERS OF TRUSTEE.

Notwithstanding the preceding section, Trustee in his or her capacity as Trustee shall NOT have the power to:

a.     Bind Beneficiaries personally to any debt or obligation without express written consent of Beneficiaries.

b.     Exercise any power which creates adverse tax consequences to Grantor's estate or to any Beneficiaries.

## E.    COMPENSATION OF TRUSTEE.

## F.    LIABILITY OF TRUSTEE.

Trustee shall not be personally liable for any obligation of the Trust but shall be liable only for his or her own actions and then only as a result of gross negligence, extreme recklessness, or bad faith. No Beneficiaries shall be able to bind Trustee nor contract on his or her behalf without Trustee's express written consent. Trustee and any Successor Trustee shall not be required to give a bond.

## G.    INDEMNIFICATION OF TRUSTEE.

Beneficiaries agree to indemnify, hold harmless, and defend Trustee from any and all liability incurred in his or her capacity as Trustee so long as such liability is not the result of Trustee's gross negligence, extreme recklessness, or bad faith.

10 | P a g e

## H.   BENEFICIARIES.

Beneficiaries are the persons or legal entities identified, along with their respective interests, on **Schedule "B"** which is attached hereto and made a part hereof. Beneficiaries are entitled to all profits, earnings, and proceeds of their respective interests in the Trust Property.

## I.   RIGHTS AND INTEREST OF BENEFICIARIES.



a.

b.

c.

d.   Distributions to all other Beneficiaries shall be subject to the spendthrift trust, support trust, AND discretionary trust provisions contained in this Trust Agreement. All other Beneficiaries also have the right but not obligation to refuse, pause, or postpone any distributions, in whole or in part, from Trustee. Upon written notice of refusal to accept, or request to pause or postpone, any such distributions, Trustee shall stop paying such distributions to said Beneficiaries, and shall, until written notice by said Beneficiaries cancelling or withdrawing the original refusal or request is received by Trustee, be temporarily relieved of the obligation to make distributions to said Beneficiaries.

e.   The foregoing rights of Beneficiaries are hereby declared to be personal property and may be assigned or otherwise transferred as such.

f.

g.

h.

CONFIDENTIAL

DEFHC_01518389

**J.** PROVISION FOR SPENDTHRIFT TRUST, SUPPORT TRUST, AND DISCRETIONARY TRUST FOR CERTAIN NON-GRANTOR BENEFICIARIES.



**K.** ADMINISTRATION AFTER THE DEATH OF GRANTOR.

a.

b. **Collection of Proceeds.** Trustee may take any action necessary to collect the proceeds of any life insurance policy, or provide for the payment of retirement plan, IRA, brokerage account, or other benefits payable to the Trust. If probate administration has not or will not be commenced, Trustee shall have the power to collect tax refunds, health insurance proceeds, refunds under any contract, death benefits, or any other item otherwise payable to the deceased Grantor's estate.

**L.** ASSIGNMENT OF BENEFICIAL INTERESTS.

CONFIDENTIAL

DEFHC_01518390

**M.     DISCLOSURE OF BENEFICIARIES.**

Trustee and Beneficiaries shall not disclose the identity of any Beneficiary without the written consent of said Beneficiary except as may be required by law or at the direction of an order of court issued by a court of competent jurisdiction. Any party who discloses the identity of a Beneficiary shall be personally liable for any and all losses and damages incurred by that Beneficiary as a result of the disclosure.

It is noted that the trust is managed within the European Union and as such the privacy of personally identifiable information and other financial affairs are protected by law. The trust is both authorised and instructed to act against any and all parties disclosing the nature of any members of this trust. The trust is authorised and instructed to take any breach seriously and to assign up to US$20 million without vote of members to start litigation against any person or group or entity that disclose information concerning the beneficiaries of this trust. This is not to be limited to individuals and will include governmental failure to redact information and documents and overseas entities.

**N.     SMALL TRUST TERMINATION.**

**O.     RECORDING OF AGREEMENT.**

This Trust Agreement shall not be placed of record in any jurisdiction.

**P,     BINDING EFFECT.**

This Trust Agreement shall be binding upon and inure to the benefit of Grantor, Beneficiaries, and Beneficiaries' successors, heirs, and assigns.

**Q.     ENTIRE AGREEMENT AND AMENDMENT.**

**R.     GOVERNING LAW.**

This Trust Agreement shall be governed by, construed, and enforced in accordance with the laws of the state where Grantors are domiciled (at the time of construction, the UK and Seychelles). If Grantors are domiciled in different states, or if neither Grantor is alive, then this Trust Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of NSW, Australia and/or Antigua.

**S.     SEVERABILITY.**

If any provision of this Trust Agreement is deemed unenforceable by a court of competent jurisdiction, all remaining provisions shall remain in effect.

CONFIDENTIAL                                                                      DEFHC_01518391

T.     ANNUAL STATEMENTS.

███████████████████████████████████████████████████

U.     PERPETUITIES.

If any of the terms of this Trust continue beyond the period permitted by any applicable laws of the state law governing this Trust Agreement which regulate restraints on alienation or prohibitions against perpetuities, or if the vesting of any interest under this Trust could possibly occur after the end of such permitted time period, then such offending terms, to the extent of their continuance beyond the lawful period, shall be null and void, but the remainder of the terms of the Trust shall remain valid and binding. The undistributed portion of the Trust Property held in violation of such applicable laws shall immediately be distributed to the Beneficiary of such portion.

V.     NOTICE.

███████████████████████████████████████████████████

        IN WITNESS WHEREOF, the parties below hereby execute this Trust Agreement on the day and year first above written.

GRANTORS:

...........................................
Craig Steven Wright

TRUSTEE

...........................................
Denis Bosire Mayaka

CONFIDENTIAL                                    DEFHC_01518392

## SCHEDULE "A"

The following is the legal description of the Trust Property contained in the foregoing Trust Agreement.

a.    Wright International Investments Ltd    (Seychelles)    (064409)



        1.
        2.

        3.

b.    Tulip Trading Ltd            (Seychelles)    (093344)
        1.
        2.  Assets held by ▮▮▮▮▮▮▮▮▮▮
        3.  Assets held under ▮▮▮▮▮▮▮▮
        4.  All assets as far as they are recoverable from ▮▮▮▮▮▮
        5.  Assets created by:
                1.  Integyrs Pty Ltd (Australia)
                2.  Greyfog Pty Ltd
                3.  Cloudcroft Ltd
                4.  Panopticrypt Pty Ltd
                5.  All DeMorgan Ltd assets and IP
        and transferred under warrant.

c.    The 2014 "formalised Trust" formerly known as the "Tulip Trust".

d.    All assets in CSW R&D, Craig Wright R&D and all associated:
        1.  Sports Book systems
        2.  OnLine Casino Systems
        3.  Affiliate systems

e.

f.

g.    All Trusts and assets ever owned by Craig Wright until the formation of this trust.

CONFIDENTIAL                                               DEFHC_01518393

**SCHEDULE "B"**

1. **BENEFICIARIES.** The following are all the Beneficiaries (along with their birth dates and relationships to Grantor) who own all of the beneficial interest described in the foregoing Trust Agreement.

| Name | Relationship | Date of Birth |
|------|--------------|---------------|
|  |  |  |

2. **ADDRESS FOR NOTICE AND SERVICE OF PROCESS.** Notice and service of process may be delivered to all Beneficiaries at:

3. **DISTRIBUTION TERMS UPON DEATH OF A GRANTOR.** Upon either Grantor's death, any distribution of Trust Property shall be made as follows:

4. **ENCUMBRANCES.** All distributions of Trust Property shall pass subject to any encumbrances or liens placed upon such property as security for the repayment of a loan or debt.

5. **PER CAPITA WITH RIGHT OF REPRESENTATION.**

6. **CUSTODIANSHIPS UNDER THE UNIFORM TRANSFERS TO MINORS**

7. **SPECIFIC GIFTS OF TANGIBLE PERSONAL PROPERTY.**

CONFIDENTIAL

DEFHC_01518394

### SCHEDULE "C"

Trustee shall be compensated ███████████████████████████████████
███████████████████████

**Compensation of Members.** ████████████████████████████████
██████████████████████████████████████████

CONFIDENTIAL

DEFHC_01518395

### SCHEDULE "D"

In the event of any ambiguity in the terms contained in the foregoing Trust Agreement, the following extrinsic evidence shall be admissible to facilitate the interpretation of the foregoing Trust Agreement:

- 

- 

CONFIDENTIAL

DEFHC_01518396

**SCHEDULE "E"**

**Members.** Trustees, Beneficiaries

There shall be at least one (1) trustee at any time and never more than five (5).

1. **Chair.**

The Chair need not be a Trustee.

2. **Regular Meetings.**

3. **Special Meetings.**

4. **Notice of Special Meetings.**

5. **Quorum and Manner of Acting.**

CONFIDENTIAL

**6. Actions by Consent.** 

**7. Counsel and Experts.** The Trustees who are not Interested Persons may, by vote of a majority of such Trustees, at the Trust's expense, hire such employees and retain such counsel, accountants, appraisers or other experts or consultants whose services such Trustees may, in their discretion, determine to be necessary or desirable from time to time, including services to one or more committees established by the Trustees, and may execute any agreements, contracts, instruments or other documents in connection therewith.

**8. Voting rights.** The members gain the following voting rights as defined below:



A "Trust Company" is defined as a company founded by Dr Craig Wright or significantly owned by the trust (greater than 30% total shareholding).

---

[1] Note:

CONFIDENTIAL

DEFHC_01518398

SCHEDULE "F"



CONFIDENTIAL

DEFHC_01518399

SCHEDULE "G"

COMMITTEES

1. **Establishment and Authority**

2. **Quorum; Voting.**

CONFIDENTIAL

DEFHC_01518400

SCHEDULE "H"

OFFICERS

1. **Enumeration; Qualification**. The officers of the Trust shall be a Chairman, a President, a Treasurer, a Secretary, and such other officers as the Trustees from time to time may in their discretion elect, appoint or authorize in accordance with Schedule H-2 below. Any officer of the Trust may but need not be a Trustee or a Member. Any two or more offices, except those of President and Vice-President, may be held by the same person.

2. **Election.** The President, the Treasurer and the Secretary shall be elected by the Trustees upon the occurrence of a vacancy in any such office. Other officers, if any, may be elected or appointed by the Trustees at any time, or the Trustees may delegate to the President the power to appoint such other officers as the Trustees shall at any time or from time to time deem advisable. Vacancies in any such other office may be filled at any time. Each officer shall hold office at the pleasure of the Trustees.

3. **Powers**. Subject to the other provisions of these By-Laws, each officer shall have, in addition to the duties and powers herein and in the Declaration set forth, such duties and powers as are commonly incident to the office occupied by him or her as if the Trust were organized as a Delaware statutory trust and such other duties and powers as the Trustees may from time to time designate.

4. **Chairman.** 

4. **President.** Unless the Trustees otherwise provide, the President shall be the chief executive officer of the Trust.

5. **Treasurer.** Unless the Trustees provide otherwise, the Treasurer shall be the chief financial and accounting officer of the Trust, and shall, subject to the provisions of the Declaration and to any arrangement made by the Trustees with a custodian, investment adviser or manager, or transfer, shareholder servicing or similar agent, be in charge of the valuable papers, books of account and accounting records of the Trust, and shall have such other duties and powers as may be designated from time to time by the Trustees or by the President.

6. **Secretary.** The Secretary shall record all proceedings of the Beneficiaries and the Trustees in books to be kept therefor. In the absence of the Secretary from any meeting of the shareholders or Trustees, an Assistant Secretary, or if there be none or if he or she is absent, a temporary Secretary chosen at such meeting shall record the proceedings thereof in the aforesaid books.

7. **Resignations and Removals**. Any officer may resign at any time by written instrument signed by him or her and delivered to the Chair, the President or the Secretary or to a meeting

23 | P a g e

of the Trustees. Such resignation shall be effective upon receipt unless specified to be effective at some other time. The Trustees may by action of a majority of the Trustees then in office, remove any officer with or without cause. Except to the extent expressly provided in a written agreement with the Trust, no officer resigning and no officer removed shall have any right to any compensation for any period following his or her resignation or removal, or any right to damages on account of such removal.

CONFIDENTIAL

DEFHC_01518402

## SCHEDULE "I"

MISCELLANEOUS

1. **Books and Records.**

2. **Access to Book and Records.**

3. **Seal.**

4. **Execution of Papers.**

5. **Severability.** The provisions of these rules are severable. If the Trustees determine, with the advice of counsel, that any provision hereof conflicts local laws, the conflicting provision shall be deemed never to have constituted a part of these rules; provided, however, that such determination shall not affect any of the remaining provisions of these rules or render invalid or improper any action taken or omitted prior to such determination. If any provision hereof shall be held invalid or unenforceable in any jurisdiction, such invalidity or unenforceability shall attach only to such provision only in such jurisdiction and shall not affect any other provision of these rules.

6. **Proxies.**

CONFIDENTIAL

DEFHC_01518403



**7. Conduct of Meetings.** For any matter to be properly before any meeting of members, the matter must be either specified in the notice of meeting given by or at the direction of a majority of the Trustees then in office or otherwise brought before the meeting by or at the direction of the Chair or other presiding officer.

CONFIDENTIAL

DEFHC_01518404



Date:  06th July 2017
Our Ref:  FSA-ITS031

**LEGACY TRUST COMPANY LIMITED**
**Suite 103**
**Premier Building,**
**Victoria, Mahe**

Dear Sirs,

**REGISTRATION OF DECLARATION OF TRUST**

This is to certify that the declaration of trust pursuant to section 75 of the International Trust Act, 1994 submitted to this office, pertaining to *THE TULIP TRUST* is hereby registered on this *06th July 2017* and is assigned the reference number *T000712*.

Yours faithfully,



Randolf Samson
Director of Registry & Capital Markets & Collective Investments Schemes

FINANCIAL SERVICES AUTHORITY
Bois De Rose Avenue P.O. Box 991, Victoria, Mahe, Seychelles. t: +248 4380800  f: +248 4380888  e: enquiries@fsaseychelles.sc  w: www.fsaseychelles.sc

CONFIDENTIAL

DEFHC_01518405

**DECLARATION OF TRUST**

To: Craig Steven Wright holder of passport number ███████████████████████████████████████████████

We, Equator Consultants AG of █████████████████████████████████████████
HEREBY UNDERTAKE AND AGREE AS FOLLOWS:

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

6. ██████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

Dated this ........16th........ day of ........December........2015

Denis Bosire Mayaka
For: Equator Consultants AG



THE TULIP TRUST  - ORGANOGRAM

Mr. Craig Steven Wright

SETTLOR

THE TULIP TRUST

TRUSTEE → Equator Consultants AG

BENEFICIARIES

PROTECTOR

PRIMARY BENEFICIARIES

SECONDARY BENEFICIARIES

Ang Mei Foong Ramona

CONFIDENTIAL

DEFHC_01518407