### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

IRA KLEIMAN, as the personal
representative of the Estate of David
Kleiman, and W&K Info Defense
Research, LLC,

CASE NO.:  9:18-cv-80176-BB

*Plaintiffs,*

v.

CRAIG WRIGHT,

*Defendant*.

### PLAINTIFFS' OMNIBUS SANCTIONS MOTION

## Table of Contents

FACTUAL BACKGROUND ........................................................................................... 1

   I.   WRIGHT HAS REPEATEDLY LIED UNDER OATH AND SUBMITTED FORGED EVIDENCE IN A FAILED EFFORT TO AVOID TRIAL AND WIN THIS CASE THROUGH DISPOSITIVE MOTIONS ............................ 1

   II.   WRIGHT PROVIDES PERJURIOUS TESTIMONY AND FORGED EVIDENCE IN AN EFFORT TO AVOID COMPLIANCE WITH COURT ORDERS .................................................................... 3

   III.   WRIGHT SUBMITTED NEW LIES AND FORGERIES DIRECTLY TO THIS COURT TO AVOID SANCTIONS AND TO PREVENT PLAINTIFFS FROM PROVING THEIR CASE ............................................. 8

   IV.   WRIGHT HAS THE ABILITY TO OPEN THE ENCRYPTED FILE, BUT WON'T BECAUSE IT WILL CONTAIN EVIDENCE OF THE PARTNERSHIP AND ITS BITCOIN HOLDINGS ................................. 11

   V.   WRIGHT'S HAS FLAGRANTLY OBSTRUCTED THE DISCOVERY PROCESS AND PLAINTIFF'S ATTEMPTS TO PROVE THE SCOPE AND EXTENT OF THE SATOSHI NAKAMOTO PARTNERSHIP ........ 11

   VI.   WHILE TOO NUMEROUS TO DETAIL, WRIGHT'S CONDUCT HAS MADE AND WILL CONTINUE TO MAKE A MOCKERY OF THE JUDICIAL SYSTEM ................................................... 13

LEGAL STANDARD .............................................................................................. 14

ARGUMENT ...................................................................................................... 17

   I.   WRIGHT'S MISCONDUCT DEMONSTRATES SANCTIONABLE BAD FAITH ....................... 17

   II.   DEFAULT SANCTIONS ARE APPROPRIATE ......................................................... 20

      a.   *Wright's sustained and unrepentant pattern of lies and forgeries demonstrates he is acting in clear and willful bad faith and has committed numerous frauds upon the Court* ...................... 20

      b.   *Dr. Wright's misconduct has prejudiced Plaintiffs in numerous ways* .................... 21

      c.   *No lesser sanctions suffice* ........................................................... 22

   III.   IF THE COURT DISAGREES THAT DEFAULT SANCTIONS ARE APPROPRIATE, THEN OTHER SANCTIONS SHOULD BE IMPOSED .................................................................. 23

CONCLUSION .................................................................................................... 25

Since the inception of this case, Wright has engaged in a sustained pattern of perjury, forged evidence, misleading filings, and obstruction – this included submission of false evidence which, if not unmasked, could have resulted in Plaintiffs being deprived of their day in court (*e.g.*, multiple submissions re: subject matter jurisdiction).

This Court sanctioned Wright once for that conduct. But as detailed in the Motion below, Wright's well documented history of lies, forgeries and overall disdain for the legal system continues unabated.  Unfortunately, Wright seems to have learned precisely the wrong lesson from this Court's partial vacating of the previous sanctions entered by Judge Reinhart.  In fact, this Court offered Wright an off ramp to avoid additional sanctions – and he submitted a false notice of compliance, a forged list of his bitcoin, and relied on forged documents in his summary judgment motion in response.

Plaintiffs have spent millions of dollars in attorney's fees and costs trying to chase down and unpack all of Wright's misconduct.  The only sanction that Wright has endured has been an Order to pay Plaintiffs a fraction of those costs.  It is a sad, but inescapable, conclusion that Wright has determined his cheating is worth it as he continues to this day to make a mockery of the process. Plaintiffs request this end today. Wright must be made to understand that perjury, forgery, and purposeful obfuscation are not "efficient" breaches.

## FACTUAL BACKGROUND

### I.  Wright has repeatedly lied under oath and submitted forged evidence in a failed effort to avoid trial and win this case through dispositive motions

On April 16, 2018, in support of his original motion to dismiss on personal jurisdiction, Wright submitted a sworn declaration claiming no relationship with W&K (ECF No. [12-1], at 2). This declaration was directly contrary to a sworn declaration he submitted in Australia. ECF No. [83], at ¶¶160-170 (providing detailed description of perjury). In other words, Wright lied, under oath, to this Court, to try and defeat its jurisdiction. Plaintiffs exposed this perjury.

Wright did it again two months later. On June 15, 2018, he submitted another perjurious declaration supporting his motion to dismiss for *forum non conveniens* where he falsely swore he had "no documents" from "any ATO investigation" and if he did, they were "in Australia." ECF No. [33-3] at ¶18. Plaintiffs prevailed on the law despite this lie. ECF No. [68]. Later discovery revealed the magnitude of the deception; Wright has thousands of documents from the ATO; so much that he later argued that, instead of having no documents, he had so many that it was not

necessary for Plaintiffs to get any more from Australia. ECF No. [127], at 7. Again, he lied, under oath, to this Court, to try and defeat its jurisdiction.

Ten months later, in an attempt to again defeat this Court's jurisdiction, he pivoted from perjury to forgery. On April 15, 2019, Wright submitted two forged exhibits in support of his motion for judgement on the pleadings. *See* ECF No. [144-1]; [144-6]. These exhibits purported to demonstrate W&K had foreign members. But Wright withdrew these documents when they were exposed as forgeries (first by the public and then by Dr. Edman).[1] In denying Wright's motion, this Court noted that "[u]nfortunately, the record is replete with instances in which the Defendant has proffered conflicting sworn testimony before this Court." ECF No. [265], at 10.[2]

As recently as last week, Wright was at it again. In moving for summary judgment on subject matter jurisdiction, he made uncontrovertibly false statements in his filing and relied on what he knows to be a forged agreement. Specifically, he asserted that his ex-wife, Lynn Wright, "has no reason to lie for Dr. Wright . . . and [that] her testimony is corroborated by their divorce decree in Australia . . ." ECF No. [487], at 13. The "divorce decree," refers to an "appendix" that purports to be a "family law settlement" between Wright and his ex-wife from June 2011 that mentions an interest in Plaintiff W&K. ECF No. [488-17] at 147. But the document is another forgery. Plaintiffs obtained the Wrights' divorce records directly from the federal Magistrates Court in Australia, which include no such copy of the agreement. Worse, the court file revealed that their <u>2013</u> divorce application states, unequivocally, that there were not <u>any "binding agreements...about family law...involving any of the parties</u>...." Ex. 1, at Part E.21.[3] The fabrication of this document also explains why Ms. Wright testified she did not have a copy of the relevant agreement, and that the only copy she had was provided to her by Wright's counsel, a week before her deposition. ECF No. [488-17], at 127:3–128:11.[4] Further, in obvious contradiction to Wright's statement that Ms. Wright has "no reason to lie for Dr. Wright," her deposition revealed she has a

---

[1] *See* ECF No [159], at 10-15 (detailed exposure of first forgery); [154] (Wright's notice of withdrawing first forgery); [242-2] (Dr. Edman affidavit demonstrating second forgery); [265], at 6 (discussing forgeries, mentioning issues with them (see n2), and noting Wright's withdrawal of second forgery).

[2] Rather egregiously, and as will be exposed in Plaintiffs response to Wright's summary judgment motion, Wright has again insisted his ex-wife is a member of W&K relying, again, on forged evidence and clearly biased testimony.

[3] Notably, on request, Defendant refused to provide Plaintiffs with authorization to pull the records from the Court. And Wright didn't produce this document until, presumably, he was alerted Plaintiffs received a copy of it from the Court anyway. Plaintiffs obtained copies on March 9, 2020. Wright produced a copy on March 25, 2020.

[4] "Q. And when did you get the copy of it? A. It was sent to me by Craig's solicitor a week or so ago. Because I - I guess I said I didn't have any - I didn't have a copy of it. I just had my divorce decree."

strong incentive to lie: she is financially dependent on him, lives in fear of him cutting off her support, and has lied for him in the past due to that. *See id*. at 70:3–5.[5]

Equally damning is other evidence he's produced to Plaintiffs and may intend to use at trial. Specifically, on March 3, 2020, Wright produced a document purporting to be an operating agreement for W&K that identified Lynn Wright as a member and was purportedly signed by Dave Kleiman and Lynn Wright. Ex. 2. As explained below, it's another boldfaced forgery. Wright testified the document came from "external devices and equipment from Lynn and other such things." Ex. 3, at 177:23–25. But just one week before these documents were collected, Ms. Wright testified that she had <u>no</u> documents relating to W&K. ECF No. [488-17], at 56:12–17. Given the dubious provenance and too convenient timing, Plaintiffs were not surprised when they identified incontrovertible evidence it was yet another fraud. While the operating agreement shows Wright's forgery skills have improved as Plaintiffs continue to expose them, he still overlooked anachronisms that could not possibly exist if the document was genuine. Namely, while the document was ostensibly executed on February 15, 2011, it mentions the "Florida Revised Limited Liability Company Act" (Ex. 2, § III.H), which was not enacted until June 2013 after David Kleiman had died.[6]

## II. Wright provides perjurious testimony and forged evidence in an effort to avoid compliance with Court orders

The factual background of Wright's perjurious testimony, fraudulent evidence, and refusal to comply with this Court's order to produce a list of his bitcoin holdings has been set forth in detail in this Court's January 10, 2020 Order Affirming in Part and Denying in Part Judge Reinhart's Sanctions Order. ECF No. [373]. But as these forgeries and lies have continued after the Court's order, Plaintiffs provide a summary of the relevant events for context for his continuing misconduct.

At Wright's April 2019 deposition, he testified that (1) he never put any bitcoin into a

---

[5] ("Q. And are you currently financially dependent on Craig? A. Yes."). Asked why she wrote Wright a paper, she said, "Look, it - probably because Craig was supporting me and I didn't want to run the risk of him saying, 'I will just stop giving you the money.'" *Id*. 111:22–112:2. She also falsely confessed to a speeding ticket for him. *Id*.115:1–16.

[6] *See* Fla. S.B. 1300, https://www.flsenate.gov/Session/Bill/2013/1300.

trust;[7] and that (2) the Tulip Trust never came to hold the private keys to bitcoin addresses.[8] He also testified that Dave Kleiman knew nothing about the trust, its set up, or Shamir Secret Sharing keys.[9] *See* ECF No. [373], at 4. But demonstrated below, when offering testimony to the Court to avoid contempt and/or sanctions, Wright contradicted all three of these sworn statements.

Specifically, after numerous discovery hearings, the Court ordered Wright to provide a listing of his bitcoin holdings as of December 2013. ECF No. [124] at 22-23. Wright filed a motion for protective order to avoid this obligation. ECF No. [155]. Wright's motion represented to the Court (directly contradicting his deposition testimony) that "[i]n 2011, Dr. Wright transferred ownership of all of his Bitcoin into a blind trust. *Id*. at 1. He also claimed he was "not a trustee or a beneficiary of the blind trust." *Id*. ECF No. [373], at 6. Judge Reinhart denied Wright's motion, ECF No. [166], at 2, and ordered Wright to (i) provide a sworn declaration identifying the name, location, past and current trustees and beneficiaries of the blind trust, along with relevant contact information, (ii) provide all documents related to the formation, administration, and operation of the trust, (iii) all transactional records of the trust, including records showing the alleged 2011 transfer of bitcoin—and to swear to the authenticity of these documents. *Id*. at 4.[10]

Forced to provide specific details to back up representations to the Court, Wright submitted a sworn statement, that contradicted his deposition and prior motion. Specifically, he now affirmed he (i) did put bitcoin into the trusts and that he *was* both (ii) a trustee and (iii) a beneficiary of the "blind" trusts.[11] He further testified that he had mined bitcoin "during the years 2009 and 2010 . . . directly into a trust . . . located in Panama," that there "are no transactions related to [that] Bitcoin, and that he "transferred the encrypted files that control access to these Bitcoin in 2011, as explained

---

[7] ECF No. [312-1], at 294:1-18 ("Q. Did you put Bitcoin into the trust in 2011? No. Q. Did you put Bitcoin into the trust in 2012? No. Q. Did you ever put Bitcoin into the trust? No. Q. Did anyone ever put Bitcoin into the trust? No.")

[8] ECF No. [312-1], at 294:20-295:6 ("Q. Did the Tulip Trust ever come to hold private keys to Bitcoin wallets? No. Q. Did it ever come to own or possess private keys to Bitcoin addresses? No. Q. What is the relationship between the Tulip Trust and Bitcoin? What the hell does that question even mean?")

[9] ECF No. [312-1], at 293:8-16 ("Dave had no rights to the trust no ownership of the trust, no knowledge of the set-up of the trust . . . Dave was asked simply to hold a part of some documents and keys that were split using Shamir's Secret Sharing scheme so that he did not even know what he was actually holding.").

[10] He also ordered Wright to execute any and all documents or other legal process necessary to effectuate the release of documents in the trustee's control.

[11] ECF No. [222] (redacted); ("a formal trust document was executed, creating a trust whose corpus included the Bitcoin that I mined, acquired and would acquire in the future. The name of that trust is Tulip Trust."); *id.* ("the trustees for Tulip Trust 1 are . . . Craig Steven Wright . . . Satoshi Nakamoto (i.e., Craig Wright)."); *id.* ("I am the contact person for both beneficiaries"); *id.* ("the primary beneficiaries of Tulip Trust II are me and my wife . . .").

below." ECF No. [222], ¶4; [373], at 6. Wright then testified that to "[a]ccess to the encrypted file that contains the public addresses and their associated private keys to the Bitcoin that I mined, requires myself and a combination of trustees referenced in Tulip Trust I to unlock based on a Shamir scheme." ECF No. [222] at ¶ 23. In his May 13, 2019 declaration Wright similarly swore that "the electronic files that would be used to create the private keys to the Bitcoin that I mined . . . were transferred into Tulip Trust 1. The Bitcoin itself, however, has never been transacted." ECF No. [332-2]. Through these declarations Wright clearly swore that the bitcoin (i) have never moved across the blockchain, and (ii) remain locked in an encrypted file that can only be accessed with cooperation from Trustees.

 In purported compliance with the Court's order to produce copies of the trust documents, Wright then produced copies of three trust agreements and swore to their authenticity. ECF Nos. [237-1] (Dave Kleiman Trust documents), [237-9] (Tulip Trust 1), [237-22] (Tulip Trust 2); [332-2] (May 13 Wright Declaration).[12] But we now know that Wright had not complied with the Order. Two of these documents were forgeries. And all three were purportedly rendered void by Tulip Trust 3, which he did not disclose until 7 months later. Ex. 4 (production email).

As Plaintiffs had still not received a list of Wright's bitcoin holdings, they moved to compel again. ECF No. [197]. In response, Wright conceded he had not complied with the Court's Order, but argued, for the first time, that compliance was "impossible." ECF No. [204]; [373], at 8. Wright claimed (again) that the information necessary to comply with the Court's Order was in Tulip Trust I in an encrypted file protected by a "Shamir's Secret Sharing Algorithm." ECF No. [373], at 8; [204], at 5. Defendant then represented that he could not decrypt the "outer level of encryption" because he did not have all of the necessary keys, and represented that the encryption keys needed were "distributed to multiple individuals through the [blind] trusts" and "he alone does not have ability to access the encrypted file and data contained in it." *Id*. Plaintiffs demonstrated the contradictions between Wright's deposition (no bitcoin/keys in trust) and his declarations (bitcoin/keys locked in trust). ECF No. [373], at 8-9; [221], at 8-9. Judge Reinhart again ordered Wright to produce the list or show cause why he should not certify a contempt of court to this Court. ECF No. [217].

At the show cause hearing Wright "testified that it was impossible to comply with the

---

[12] Defendant did not produce any documents related to the administration and operation of the blind trust as ordered by the Court. ECF No. [373], at 7.

Court's Orders regarding his Bitcoin Holdings due to the Shamir Scheme implemented related to the encrypted file." ECF No. [373], at 9. He testified that to decrypt the outer most layer of the encryption he needed eight "key slices," of which he presently claimed to only have seven in his possession. *Id*.; ECF No. [236] at 125. Wright testified that he simply could not produce a list of his Bitcoin Holdings even if he wanted to. ECF No. [236], at 14:8-14. Importantly, in an effort to avoid sanctions, Wright offered testimony to the Court that, again, contradicted his prior sworn deposition testimony. Specifically, while he previously testified that "Dave had . . . no knowledge of the set-up of the trust" and "did not even know what he was . . . holding," Wright now claimed that it was Dave who *essentially* set up the entire "trust," and that Dave was solely in charge of distributing the key slices and arranging for various bonded couriers to return the final pieces to Wright in 2020.[13]

   At the show cause hearing, Steven Coughlan a/k/a Steve Shadders ("Shadders") testified on Wright's behalf as to his effort to apply certain filter criteria provided by Wright to identify an overinclusive list of the Defendant's Bitcoin Holdings. ECF No. [373], at 9; ECF No. [264], at 14:9-12. He provided that list ("Shadders List"). ECF No. [266-1]. As will be important below, Shadders testified he made a "mistake" or "error" when applying the filter criteria. ECF No. [264], at 23:9-19. The error "was in a quirk of the particular programming language that I used . . ." which resulted in "2700" addresses being included from a "range that would have otherwise been excluded." *Id*. at 19-25.

   Dr. Edman testified at the hearing as well. His testimony revealed that the trust documents (ECF No. [237-1] and ECF No. [237-9]), as well as other documents Wright produced in response to the Court's order and that Wright had relied on to try and avoid sanctions, were forgeries. ECF No [332], at 13-15 (detailing the evidence demonstrating the forgeries).

   Judge Reinhart found Wright had "intentionally submitted fraudulent documents to the Court, obstructed a judicial proceeding, and gave perjurious testimony." ECF No. [277], at 28. He found "clear and convincing evidence" to support these findings. *Id*. at n.11, n14. He also found "Wright's testimony that this Trust exists was intentionally false," and "part of a sustained and

---

[13] ECF No. [236] at 16:12-15, 23:8-9, 23:23-24:7, 29:10-19, 30:9-31:14, 107:24-25, 125:15-24 ("Dave was tasked, as part of helping me destroy everything and hiding things, with making sure that there was a long time between any of this ever coming back to me . . . Part of that was I guess you'd call them a bonded courier over here . . . I made sure Dave didn't tell me who he used . . . It was Dave who talked me out of destroying it utterly. . . The way it was set up was I gave slices to Dave, and he was directed to give them to bonded couriers that would send slices based on different events. One of those events was June 20, 2020.").

concerted effort to impede discovery into his bitcoin holdings." *Id*. at 21. He found "clear and convincing evidence" demonstrated that "no such [Shamir encrypted] file exists" and that Wright's testimony it did was "intentionally false." *Id*. at 24. Finally, he found a "strong, and unrebutted, circumstantial inference that Dr. Wright willfully created the fraudulent documents." *Id*. at 21. Judge Reinhart then imposed sanctions under Fed. R. Civ. P 37 deeming the following facts established: that Wright and David Kleiman entered into a 50/50 partnership to develop Bitcoin intellectual property and mine bitcoin; that any bitcoin mined or IP developed prior to David Kleiman's death was property of the partnership, and that Plaintiffs retained an ownership interest in the Partnership's bitcoin and any assets traceable to them. *Id*. Judge Reinhart found "clear and convincing evidence that Dr. Wright's non-compliance with the Court's Orders is willful and in bad faith, that Plaintiffs have been prejudiced, and (particularly given the extended pattern of non-compliance and its egregiousness) a lesser sanction is not adequate to punish or to ensure future compliance with the Court's Orders." *Id*. at 27.[14]

On August 27, 2019, Defense counsel produced DEF_00560316 which she described as "the encrypted file that Dr. Wright has testified about." Ex. 5 (production email). Shortly, after this order, Wright's counsel represented that an anonymous source had produced two lists of bitcoin to Wright's contacts, one bearing the name DK ("DK List") and the other CW ("CW List"). Defense counsel said they believed this reflected bitcoin owned by Kleiman and Wright respectively.

Settlement discussions ensued between the parties which resulted in some delay. The settlement ultimately failed as Defendant could no longer finance the non-binding agreement reached between the parties. ECF No. [290], at 2. After settlement failed, Wright objected to the sanctions order and reiterated that the list of bitcoin "is in an encrypted file that is protected by a Shamir encryption scheme . . . To unlock the encrypted file, Dr. Wright would need at least 8 of the 15 key slices, but he has only 7. Dave Kleiman, set up a system whereby Dr. Wright would . . . start to receive the remaining key slices in January of 2020 by bonded courier . . ." ECF No. [311], at 3-4.

This Court "agree[d] with [Judge Reinhart's] credibility findings relating to Defendant." ECF No. [373], at 15. While the Court found that sanctions were warranted, it vacated the Deemed Facts

---

[14] Minutes after the order was entered, Wright confirmed Judge Reinhart's findings in an interview with journalist Brendan Sullivan. There, Wright indicated he could in fact access his bitcoin but had elected not to, so that he would not "tank[] the market." ECF No. [332], at 17.

because even if they "remain[ed] established, the discovery abuse remains 'uncured' because the amount of bitcoin owned by the Defendant remains unknown, or at the very least, still at issue." *Id*. at 20. Finally, while the Court "question[ed] whether it is remotely plausible that the mysterious "bonded courier" [was] going to arrive," it agreed to "indulge" Wright and provided him until February 3, 2020 to "file a notice with the Court indicating whether or not this mysterious figure has appeared from the shadows and whether the Defendant now has access to the last key slice needed to unlock the encrypted file." *Id*. at 22. The Court told Wright it would leave sanctions at just attorney's fees if the courier arrived, but if not, the Court would "inform the jury of the Defendant's failure to disclose the information sought by the Plaintiffs." *Id* at 22. Pursuant to Judge Reinhart's order on attorney's fees and costs, Wright eventually paid Plaintiffs $165,800.09. ECF No. [429], at 13.

### III. Wright submitted new lies and forgeries directly to this Court to avoid sanctions and to prevent Plaintiffs from proving their case

To everyone's surprise, just four days later, Wright filed a Notice of Compliance "that a third party ha[d] provided the necessary information and key slice to unlock the encrypted file, and Dr. Wright has produced a list of his bitcoin holdings, as ordered by the Magistrate Judge, to plaintiffs today." ECF No. [376]. The notice was signed, pursuant to Rule 11, by counsel to Wright. On that date, Wright also provided Plaintiffs with DEF_01586024, a list of 16404 public addresses he claimed were his list of bitcoin holdings ("CSW Filed List"). Ex. 6 (production email); Ex. 7 (list).

**But the Notice of Compliance was an egregious misrepresentation directly to the Court**. Discovery granted by this Court ferreted out that no "key slice" had been turned over as claimed, the encrypted file was never unlocked as claimed, and no bonded courier had ever arrived. Instead, Wright's wife requested a copy of Wright's bitcoin holdings from an alleged Kenyan lawyer who provided her with a *new* encrypted file that contained a list of Wright's bitcoin holdings. *See* ECF No. [404-1], at 4-7; Ex. 8.[15] The notice was a clear attempt to deceive the Court.

But that's not all. As explained below, the CSW Filed List is yet another forgery created after this Court's sanction order that doesn't constitute an accurate list of Wright's bitcoin.[16] First,

---

[15] How this squares with Wright's sworn testimony and motions that he could not comply with the Court's order because of fabricated bonder couriers holding non-existent key slices, protecting allegedly encrypted files pursuant to completely forged trust documents, is unknown.

[16] Recall Wright testified that his mined bitcoin were never spent (*e.g.,* ECF No. [222], ¶4; [373], at 6; [332-2]) and he placed them into an encrypted file that cannot be opened until the keyslice is returned (*e.g.,* ECF No. [204], at 5;

despite Wright's testimony in June of 2019 that his bitcoin are locked away in a multi-level encrypted file, which he swore, repeatedly, he cannot access, four addresses on the list have spent bitcoin since July 2019 and as recently as May 13, 2020.[17]  ECF No. [500-5], ¶126 (Antonopoulos report); Ex. 9 (Antonopoulos declaration). To be clear, it would be *impossible* to spend these bitcoin without access to the private keys Wright has testified unequivocally he still does not have access to. ECF No. [500-5], ¶125. This alone, is incontrovertible evidence that Wright has either (i) submitted a fraudulent/incomplete list of his bitcoin as the CSW Filed List and/or (ii) he *does* have access to a list of his bitcoin and the private keys associated with them and is lying about and *hiding* that information to prevent Plaintiffs from using the list to prove a partnership, the amount of bitcoin at issue, and to eventually trace those assets. Further evidence Wright is concealing his bitcoin holdings is that two of the bitcoin "transactions" that spent the supposedly inaccessible bitcoin from the CSW Filed List also simultaneously spent bitcoin that are not included on the CSW Filed List and sent them all to one recipient address; this strongly suggests that that whomever has the private key to the bitcoin on the CSW Filed List (Wright) also controls bitcoin that are not on the CSW Filed List (Wright). *See* Ex. 9.[18]

Second, the CSW Filed List is not an independent accounting record that predates the sanctions order but a recent fabrication derived from the Shadders list. We know this because Shadders testified that one of the filters Wright told him to apply to identify Wright's bitcoin was to ensure the "Nonce marker byte" in the bitcoin "block header" was between 0 and 58. ECF No. [264], at 19:23-23:3.  In other words, Shadders testified Wright told him that *all* of his bitcoin had a nonce marker byte between 0 and 58.  Shadders testified, however, that due to a highly technical "quirk of the particular programming language that I used" he had made a "mistake" or "error" that resulted in the Shadders list erroneously also including bitcoin where the Nonce marker byte was also between 128 and 255; this error erroneously added ~2700 addresses to the Shadders List (the "Shadders Bug"). *Id*. at 19-25.

---

[222], ¶¶ 4, 23; [236] at 125; [311], at 3-4; [332-2]; [373], at 6, 8, 9). Recall also that Shadders testified Wright's bitcoin should only have a nonce value of 0-58 and any with a value of 128-255 were a mistake due to a "quirk" in the programming he used to create the Shadders list. ECF No. [264], at 22:11-24:21.

[17] With the price of BTC fluctuating between ~$8-10K during that time, this movement constitutes approximately $1,600,000 worth of BTC moved.

[18] Notably, the transactions that spent the bitcoins on the CSW Filed List also spent bitcoins on the DK List, implying that Wright controls bitcoin someone mysteriously identified as Kleiman's. Ex. 9.

Fast forward to January of this year to the miraculous delivery of the CSW Filed List.  The CSW Filed List contains 14655 blocks where the Nonce marker byte falls between the expected 0-58. ECF No. [500-5], ¶132, which would be consistent with Shadders testimony about what Wright had told him. Inexplicably, however, it also contains 1749 entries where the Nonce marker byte falls between 128-255 – an exact replica of the Shadders Bug. *Id*. In other words, it now includes bitcoin Shadders testified was *not* held by Wright. To be sure, the CSW Filed List contains no blocks in the 59-127 range, *i.e*., it contains no blocks that don't mimic either Wright's criteria or the Shadders bug. *Id*. The unique method for how the Shadders Bug was introduced (a "quirk" of the software Shadders used in 2019 that tells the computer how to interpret certain numbers) leads to the inescapable conclusion that the CSW Filed List is not a genuine record independently created in circa 2010 that coincidentally replicates the exact "quirky" bug Shadders introduced nine years later in 2019, but is a list Wright created from the Shadders List in 2020 and submitted to Plaintiffs. Plaintiffs' expert concluded the same. ECF No. [500-5], ¶135.



*Third*, the list's transaction IDs provide irrefutable statistical evidence that it is not the result of someone having mined 16404 blocks on the bitcoin blockchain. Bitcoin Transactions IDs are created by putting the transaction information through a SHA-256 hashing algorithm twice. SHA-256 hashing results in a 64-character alphanumeric output that is uniformly distributed across the range of possible values (0 to $2^{256} - 1$). ECF No. [500-9], ¶19; [500-5], ¶¶ 117-18. But the Transaction IDs on the CSW Filed List are *not* uniformly distributed. ECF No. [500-9], ¶ 20. Instead, when they are ordered from smallest to greatest (this takes some mathematical conversions) and plotted across a graph, two large unnatural "gaps" appear. (*Id*.  ¶¶ 16-18 and figure 1 above pictorially representing the gaps). There are only three Transaction IDs in each of those gaps. Given SHA-256's uniform distribution, there should have been 566 transactions in the first "gap" and 668 transactions in the second. ECF No. [500-9], ¶21. The likelihood that this gap would occur as a natural result of bitcoin mining (as Wright claims) is <u>less likely than the odds of winning the jackpot in the Powerball lottery 31 times in a row</u>. *Id*. at n.5. Finally, the CSW Filed List does not include addresses "that are publicly known to have been mined and then spent by Satoshi."  ECF No. [500-5], at ¶¶ 108-12, 136.

Wright's list is clearly a fabrication, ECF No. [500-9], most likely created by, *inter alia*, taking the Shadders list, sorting it by Transaction ID, deleting two large swaths of addresses, and then resorting the list by block height to obfuscate the fraud. In sum, contrary to the representations in Wright's false Notice of Compliance, he has not heard from the "bonded courier" (as this Court predicted), not opened the encrypted file, and has still *not produced a complete and accurate list of his bitcoin holdings*. Instead, he produced another forgery, in an effort to deceive the Court into believing he had complied with its order.

## IV. Wright has the ability to open the encrypted file, but won't because it will contain evidence of the partnership and its bitcoin holdings

Wright withheld the "encrypted file" until after Judge Reinhart entered sanctions that forced him to turn over David Kleiman's rightful half of the bitcoin they mined together as Satoshi Nakamoto, *i.e.*, he waited until he had little left to lose. Wright knew, however, that Plaintiffs can't access the encrypted file without his keyslices. Keyslices he clearly already has as demonstrated by the (i) spending of over $1,600,000 worth of the allegedly locked up bitcoin and (ii) his comments to Brendan Sullivan that he could "have tanked the market anytime in the last 10 years and ran away laughing." ECF No. [332-3].

Wright's refusal to open the encrypted file strongly suggests he knows that its contents will include partnership records, support the existence of a partnership between Wright and Dave Kleiman, and that the 820,200 bitcoin on the CSW Filed List (or other comparable amounts) belong to the partnership, as well as the blockchain related intellectual property created before Dave died.[19]

## V. Wright has flagrantly obstructed the discovery process and Plaintiffs' attempts to prove the scope and extent of the Satoshi Nakamoto partnership

Wright's lies and forgeries have threatened to frustrate the entire discovery process. One of the areas he's best obstructed discovery is targeted at the core of the Satoshi Nakamoto partnership. He has not even attempted to access and collect the three email accounts that belonged to Satoshi Nakamoto. *See* Ex. 3, at 191:6-193:2. He similarly testified that he has even not tried to access or collect the well-known Satoshi Nakamoto Bitcointalk forum account, thereby preventing Plaintiffs from obtaining known partnership records.[20] *Id*.

---

[19] Ex. 10, at 461:17-462:15 ("Q. Dr. Wright, in 2011 did you transfer all of your Bitcoin into a blind trust? A. I transferred my intellectual property, which includes Bitcoin . . . some of which are now patented").

[20] Despite the fact that the account had been migrated from bitcoin.org, he did not even try to collect it.

Similarly, Wright also claimed that almost all communications between him and David Kleiman were, conveniently, through mediums that did not preserve a record. Ex. 11, at 55:7-56:11.[21] At the same time, Wright has turned over numerous self-serving records of communications between himself and David Kleiman that are provable forgeries.

For example, Wright has turned over messages from an application called "Bitmessage" that purport to be exchanges between him and David Kleiman. Nonetheless, the creator of Bitmessage testified that some of these messages are dated from before he even released the application and that he is "as certain as you could possibly be that they are forgeries." Ex. 12, at 23:8-24:2, 28:9-37:3, 146:6-17. Wright also produced (perhaps unintentionally), a "keys.dat" file containing the private key that was necessary to send the messages from the bitmessage account he claims was associated with David Kleiman. In other words, Wright undeniably had the ability to send these messages.  ECF No. [500-2], at 31-32. Dr. Edman's report is chock full of additional forensic evidence demonstrating that other email communications Wright produced as from Dave Kleiman are manipulated forgeries. *Id*.

After Wright's May 8, 2019 declaration affirmed that he'd mined bitcoin "during the years 2009 and 2010 . . . directly into a trust . . . located in Panama" (ECF No. [222], ¶4; [373], at 6), Plaintiffs began building their case around these sworn representations. To that end, they identified an August 11, 2014 ATO transcript (Ex. 13, at DEF_00068671) where Wright told the ATO he had mined bitcoin with Dave into a Panama trust.[22] But ten months later, when asked at deposition "Did you ever mine Bitcoin into a Panama trust?" Wright responded with "No, I did not mine Bitcoin into a Panama trust." Ex. 3, at 104:8-11.

The examples above are just some of the ways Wright's lies, forgeries, and deceptions have obstructed Plaintiffs ability to discover the scope and extent of the Satoshi Nakamoto Partnership. This obfuscation is particularly egregious as Defendant has moved for summary judgment on the ground that the terms of the partnership are too "vague." Def. Mot. S.J., ECF [487], at 15.

---

[21] "No, we made sure we talked on things that were chats. Q. Meaning there was no record? A Meaning there was no record."

[22] **Wright:** There was a trust set up to put a number of bitcoin that Dave was mining and everything like that into and maintain, the idea being that we would use that to further the goals we were doing which were all to do with promotion of bitcoin and cryptocurrency's we have there. **O'Mahoney:** So was it the case that the trust in Panama with set up as a funding mechanism? **Wright:** For research, yes. **O'Mahoney:** And for the research that you were doing with Mr. Kleiman? **Wright:**That Mr. Kleiman was doing and myself as well, yes.

Wright's refusal to open the encrypted file clearly supports an inference that it contains evidence of a partnership between Wright and Kleiman, that the 820,200 bitcoin identified belong to the partnership, as well as all blockchain based intellectual property created before Dave died. Wright's receipt of an anonymous "DK" list, given his prolific forgeries and lies, similarly supports the inference that true partnership records exist but have not been turned over. Wright is withholding authentic evidence of the partnership and attempting to supplant it with his forgeries.

## VI. While too numerous to detail, Wright's conduct has made and will continue to make a mockery of the judicial system

Wright's told so many lies, submitted so many forgeries, and made so many misrepresentations that they simply can't all be included in this motion. Suffice to say, he has demonstrated total disdain for Plaintiffs, Plaintiffs' counsel, this Court, and the judicial system itself. Plaintiffs describe two representative examples below.

*First*, despite the clear order to facilitate production of all trust documents, throughout 2019 Wright repeatedly failed to mention a purported 2017 trust document that revoked all prior trusts and controlled all of Wright's assets ("Tulip Trust III").

Instead, he waited until January 2020 to produce Tulip Trust III. When he did,  he  buried it in a production of 400 other documents and his counsel made no mention of its existence, even though they clearly recognized the signfiicant implications of it, having launched their own investigation into its origins prior to producing it. *See* ECF No. [383], at 16:4-16.

To be clear, this new trust document ostensibly replaced all  prior trust documents Wright had identified in response to a direct Order from Judge Reinhart.  In other words, he had identified obsolete documents and withheld the only operative trust document.

The sheer implausibility of the Tulip Trust III document, its supposed express condition to keep the document from Wright until December 2019, and the fact that it was produced with no metadata, all pointed to it being a recent forgery. What conclusively proves the fraud, however, is that the Trust claims to have been executed on July 7, 2017 and lists "JBruk Ltd (UK) (10859457)" as one of its assets. Ex. 14, at DEFHC_01518393. But JBruk Ltd wasn't incorporated until July 11, 2017. Ex. 15. Thus, Tulip Trust III could not have been executed on July 7 since neither JBruk nor the corporate number assigned to it would have existed yet.

*Second*, days before Wright's wife's (Ramona Watts) deposition was to take place in London, and after the sanctions entered by this Court, she produced an email purporting to be from her to Wright

13

on May 28, 2012. Ex. 16 (WAT00000001). The email, if genuine, appears to support Wright's story about keyslices, Dave, and trusts. But it's not. The metadata demonstrates that it (i) contained a hidden timestamp from December 19, 2019 and was (ii) created/edited with a program that wasn't released until early 2013. ECF No. [500-2], at ¶ 36-39. Thus, demonstrating Wright has roped his wife into forging new evidence to support his claims. *Id*.

*Third*, in an attempt to prevent Plaintiffs from relying on *any* of the documents he has produced, Wright has (somewhat ironically) asserted that an unspecified number of documents *he produced* are forgeries or were otherwise manipulated by hackers. Ex. 17, at 124:20-125:15, 138:9-20, 167:16-168:2; Ex. 3, at 227:8-22, 242:11-243:11, 248:14-249:15.

He has even given conflicting testimony about his authorship of various emails, stating first that he "typed that" in April 2019 and then that "no I did not" type that in March 2020. ECF No. [497], at 11 (Plaintiffs' motion in limine describing multiple contradictions on authorship in detail).

He cannot provide a list of documents he maintains are forgeries. He cannot provide information about who, why, or when this was done besides vague allusions to people intent on forcing his companies into liquidation. And of course, this narrative is at odds with the evidence that counsel for Dr. Wright's Australian companies terminated their representation because of forgeries Wright had submitted to the ATO that were "intended to support the position Craig wanted to advance," ECF No. [497-12].

## LEGAL STANDARD

The Federal Rules of Civil Procedure empower courts to sanction parties that engage in litigation misconduct. *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542-46 (11th Cir. 1993) (sanctions for misconduct under Fed. R. Civ. P. 26 and Fed. R. Civ. P. 37). These rules, however, do not "displace" courts' "inherent power to impose sanctions for bad-faith conduct," a power that "extends to a full range of litigation abuses." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991); *see also Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) ("court may impose sanctions for litigation misconduct under its inherent power").

Pursuant to these inherent powers, "district courts have broad discretion to determine whether to impose sanctions and the nature or amount of those sanctions." *Peer v. Lewis*, 606 F.3d 1306, 1315 (11th Cir. 2010). Nevertheless, "[t]he inherent powers doctrine is most often invoked where a party commits perjury or destroys or doctors evidence." *Tarasewicz v. Royal Caribbean Cruises Ltd.*, No. 14-cv-60885, 2016 WL 3944178, at *1 (S.D. Fla. Mar. 17, 2016) (Bloom, J.)

(citation omitted). Indeed, such conduct constitutes "a most egregious offense," "undermines the basic foundations of our judicial system," and is "antithetical to the administration of justice." *Global Materials Techs., Inc. v. Dazheng Metal Fibre Co. Ltd.*, No. 12-cv-1851, 2016 WL 4765689, at *10 (N.D. Ill. Sept. 13, 2016); *see also Stonecreek - AAA, LLC v. Wells Fargo Bank N.A.*, No. 1:12-cv-23850, 2014 WL 12514900, at *2 (S.D. Fla. May 13, 2014) (describing "fabrication of evidence" as "the near-classic example" of "[f]raud upon the court"). The "need" to sanction such misconduct is further "heightened when [it] relates to the pivotal or 'linchpin' issue in the case." *Qantum Commc'ns Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249, 1269 (S.D. Fla. 2007). "The key to unlocking a court's inherent power is a finding of bad faith." *Eagle Hosp. Physicians*, 561 F.3d at 1306.

"Sanctions under the Court's inherent authority may include monetary penalties, adverse inferences, and the striking of claims or defenses." *Sprint Sols., Inc. v. Fils-Amie*, 83 F. Supp. 3d 1290, 1295 (S.D. Fla. 2015); *see also Vargas v. Peltz*, 901 F. Supp. 1572, 1579 (S.D. Fla. 1995) (inherent powers "necessarily includes the authority to impose reasonable and appropriate sanctions"). "In determining the amount of sanctions to impose, a court must fashion a sanction that not only punishes the wrongdoer, but also serves as a deterrent." *Quantum Capital, LLC v. Banco de los Trabajadores*, No. 1:14-cv-23193, 2015 WL 12259226, at *20 (S.D. Fla. Dec. 22, 2015). In cases of "egregious conduct," default sanctions are appropriate. *See Eagle Hosp.*, 561 F.3d at 1307 (collecting cases).

In particular, a court may enter default sanctions if it finds "(1) that [the defendant] acted willfully or in bad faith; (2) that [the plaintiff] was prejudiced by [the defendant's] conduct; and (3) that lesser sanctions would not serve the goals of punishment and deterrence." *Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291, 1338 (S.D. Fla. 2007). In the context of Rule 41(b) sanctions, this Court has observed that "flagrant obstruction of the discovery process, unjustified and extreme delay, and egregious misrepresentations to the court have each substantiated dismissal." *Aguilar v. United Floor Crew, Inc.*, No. 14-cv-61605, 2015 WL 2415421, at *8 (S.D. Fla. May 21, 2015) (Bloom, J.) (collecting cases). Consistent with that observation, terminating sanctions are appropriate where a party's misconduct involves "deliberate and repeated obstruction of the discovery process, including concealment of evidence, providing misinformation and perjury, ultimately resulting in substantial and unjustified delay." *Id.* at *12.

15

Indeed, "many default cases feature" misconduct that is "encapsulated by perjury," including "evidence destruction, alteration, or fabrication." *Chemtall, Inc. v. Citi-Chem, Inc.*, 992 F. Supp. 1390, 1408 (S.D. Ga. 1998).[23] As the Eleventh Circuit has explained, such misconduct necessarily prejudices the opposing party because "those 'who lie, evade and fail to tell the *whole* truth obviously enjoy an advantage over honest litigants. The victimized opponent winds up . . . consuming substantial resources to respond to undo the victimizer's lies and distortions.'" *Forsberg*, 634 F. App'x at 680. Likewise, no lesser sanction can adequately punish and deter perjury and the fabrication of evidence. *See id*. "If manufactured evidence is merely excluded while the lawsuit continues," litigants would "infer that they have everything to gain, and nothing to lose" by continuing to falsify evidence. *Vargas,* 901 F. Supp. at 1582. Similarly, allowing a defendant who has "demonstrated comfort with fabricating testimony" to continue to defend against a claim "would only provide [such a defendant] with further opportunities to subvert the integrity of the judicial process." *Sprint*, 83 F. Supp. 3d at 1298.

Accordingly, in *Forsberg*, the court imposed default sanctions on a party that used a forged affidavit to support its defense. *See* 634 F. App'x at 679-80. Likewise, in *Littler*, the court imposed default sanctions on a party that made false statements in her summary-judgment affidavit. *See* 2019 WL 1043256, at *5-11 (explaining that "[f]alsifying evidence to secure a court victory undermines the most basic foundations of our judicial system"). So too in *Vargas*, the court found

---

[23] *See, e.g.*, *Forsberg v. Pefanis*, 634 F. App'x 676, 679-80 (11th Cir. 2015) (striking pleadings, where defendant submitted forged affidavit); *Sprint Sols.*, 83 F. Supp. 3d at 1295-98 (entering default judgment, where defendants colluded to provide false testimony and committed perjury during deposition); *Bernal*, 479 F. Supp. at 1338-39 (entering default judgment, where the defendant suborned perjury, "falsely testified to [the court]," and "cavalierly refused to truthfully respond to discovery"); *Qantum*, 473 F. Supp. 2d at 1277 (entering default judgment, where defendant lied "under oath during his deposition" and sought "to mislead Plaintiff by failing to disclose key documents"); *Costa v. Datapro, Inc.*, No. 10-cv-23172, 2011 WL 7318760, at *6-10 (S.D. Fla. Aug. 5, 2011) (striking pleadings, where defendant "misrepresented several key facts" at deposition and violated court order); *Littler v. Martinez*, No. 2:16-cv-00472, 2019 WL 1043256, at *6-10 (S.D. Ind. Mar. 5, 2019) (entering default judgment, where defendant submitted declaration in support of summary judgment containing false statements); *KCI USA, Inc. v. Healthcare Essentials, Inc.*, No. 1:14-cv-549, 2018 WL 3196950, at *10-12 (N.D. Ohio June 29, 2018) (entering default judgment, where defendant "submitted false affidavits to the Court" and fabricated invoices and inventory spreadsheets); *DiLuzio v. Vill. of Yorkville*, No. 2:11-cv-1102, 2016 WL 7406535, at *26-33 (S.D. Ohio Dec. 22, 2016) (entering default judgment, where defendant produced fabricated notes and provided "evasive" testimony); *Monsanto Prod. Supply LLC v. Rosentreter*, No. 3:16-cv-3038, 2016 WL 4197573, at *3-5 (C.D. Ill. Aug. 9, 2016) (entering default judgment, where defendant lied under oath about ownership of property); *CFPB v. Morgan Drexen, Inc.*, 101 F. Supp. 3d 856, 869-75 (C.D. Cal. 2015) (entering default judgment, where defendants fabricated bankruptcy petitions); *Am. Rema Int'l Corp. v. Sis-Joyce In'tl Co., Ltd.*, No. 12-cv-6972, 2015 WL 12732433, at *24-31 (C.D. Cal. Dec. 14, 2015) (entering default judgment, where defendant fabricated three declarations "for the purpose of establishing and supporting defendants' prior use defense"); *Rosenthal Collins Grp., LLC v. Trading Techs. Int'l, Inc.*, No. 05-cv-4088, 2011 WL 722467, at *9-13 (N.D. Ill. Feb. 23, 2011) (entering default judgment, where defendant, among other things, back-dated computer code).

that "intentional misconduct in presenting false evidence in support of [plaintiff's] claims compels dismissal of this case." 901 F. Supp. at 1582.

Courts have reached the same result in cases involving discovery misconduct. For example, in *Costa*, the court found that the defendant (1) failed to comply with an order compelling him to produce documents, (2) "misrepresented several key facts" at his deposition, (3) claimed that "he could not produce his *own* bank records," and (4) provided "ever-shifting explanations for failing to produce" relevant material. 2011 WL 7318760, at *6-9. Based on those findings, the court concluded that the defendant's "discovery abuses ha[d] handicapped [plaintiff] in its ability to prove its case" and that default sanctions pursuant to Rule 37 were necessary. *Id*. at *9-10 ("Enough is enough."). Similarly, in *Qantum*, the court imposed default sanctions pursuant to its inherent powers based on its findings that the defendant had "lied under oath during his deposition" and "sought to mislead" the plaintiff "by failing to disclose key documents." 743 F. Supp. 2d at 1277-78 (explaining that sanctions were "necessary to sufficiently punish [the defendant] and discourage future misconduct"). And in *Morgan Drexen*, the court imposed default sanctions on a party that—after violating court orders requiring it to produce documents—produced fabricated documents in an attempt to avoid liability. *See* 101 F. Supp. 3d at 869-76.

## ARGUMENT

### I.   Wright's Misconduct Demonstrates Sanctionable Bad Faith

Wright's misconduct in this litigation warrants the most serious sanctions. By repeatedly disregarding court orders, submitting fabricated evidence to Plaintiffs and the Court, lying under oath at deposition, at Court hearings, and through declarations, withholding relevant documents, and by repeatedly submitting misleading[24] and false court filings—he has engaged in flagrant obstruction of the discovery process, caused unjustified and extreme delay, made egregious misrepresentations to Plaintiffs and the Court, and hindered Plaintiffs ability to prove its case.

Indeed, Wright has supported all four of the dispositive motions he has filed in this action with perjured statements, forged evidence, or both. Any of these four incidents alone rises to the level of conduct that provides sufficient basis for imposing not only any sanctions, but default

---

[24] ECF No. [361] at 2 (Bloom, J.) ("The Defendant also argues . . .  This Court notes, however, that this position misrepresents the record in this case."); ECF No. [454] at 7 (Bloom J.) ("As an initial matter, Defendant mischaracterizes the record."). ECF No. [454] at 15 (Bloom J.) ("Upon review, the Court finds that Defendant has mischaracterized the Discovery Order.")

sanctions. *See Littler*, 2019 WL 1043256, at *5-11 (imposing default sanctions on defendant that "willfully abused the judicial process in an attempt to secure summary judgment in her favor" by submitting declaration containing false statements). But Wright's misconduct does not stop there.

Wright has <u>repeatedly</u> disregarded discovery orders. It took case ending sanctions, a reversal, and then a $165,000 fine before he even pretended to comply with the Court's order to turn over a list of his bitcoin holdings. Further, Wright withheld the Tulip Trust III document for over six months before producing it in January 2020, without ever mentioning its existence (even though he was ordered to produce trust-related documents in May 2019). *See DiLuzio*, 2016 WL 7406535, at *33 (imposing default sanctions for "repeated discovery violations"); *Sell v. Country Life Ins. Co.*, 189 F. Supp. 3d 925, 944-45 (D. Ariz. 2016) (imposing default sanctions, where defendant "withheld relevant and discoverable evidence by essentially ignoring requests for production of documents and then by frivolously asserting the documents were privileged"); *Reyes-Santiago v. JetBlue Airways Corp.*, 932 F. Supp. 2d 291, 297-301 (D.P.R. 2013) (imposing default sanctions, where defendant failed to produce evidence for eight months, and lied about existence of that evidence at deposition).

Wright has <u>repeatedly</u> submitted fabricated evidence to Plaintiffs and the Court over the course of discovery in an attempt to (i) win the case on legal issues, (ii) avoid compliance with discovery orders, and (iii) setup false evidence to prevail on the merits. *See DiLuzio*, 2016 WL 7406535, at *26-33 (defendant produced fabricated notes to avoid discovery obligations); *Morgan Drexen*, 101 F. Supp. at 861-75 (imposing default sanctions, where defendant produced fabricated documents to avoid liability). For example, he has produced mountains of forged documents (like emails to/from Dave) to support his narrative in this case and avoid consequences for his misconduct, and, as found by Judge Reinhart and affirmed by this Court, he has submitted forged documents to the Court in a failed effort to avoid sanctions for his refusal to provide his bitcoin list. *Cf. Costa*, 2011 WL 7318760, at *6-9 ("It does not appear that Costa ever asserted a legitimate, good-faith objection to the discovery sought by the defendants . . . But upon close inspection these ever-changing justifications appear to be no more than evolving tactics for delay and avoidance.").

And after being sanctioned for his lies and forgeries, he continued to fabricate key evidence including an email from his wife, a fake W&K LLC agreement, a fake family law settlement agreement, and the false CSW Filed List. But perhaps most egregiously, he has continued to lie directly to the Court. Indeed, he filed a false Notice of Compliance indicating he had received the

long awaited keyslice (he hadn't), he'd opened the encrypted file (he hadn't), and that he'd finally provided Plaintiffs with a true and correct list of his bitcoin (he hadn't). *See Johnson v. New Destiny Christian Ctr. Church, Inc.*, 324 F.R.D. 404, 414-16 (M.D. Fla. 2018) (defendant "richly deserve[d]" default sanctions, where defendants certified that they had "fully complied with all Court directives" but had not actually produced information that they had been ordered to produce); *KCI USA*, 2018 WL 3196950, at *10-12 (imposing default sanctions on defendant who "submitted false affidavits to the Court" stating that it had fully complied with court orders). In other words, he <u>lied to the Court</u> about complying with the Court's order.

Thereafter, he produced to Plaintiffs a <u>third</u> forged trust document, TT3 (after hiding its existence from the Court and Plaintiffs for over six months). In any event, the TT3 document is just one of numerous documents Wright has produced in this action that, based on forensic evidence, *cannot* be authentic because it either references entities that were not created (or owned by Wright) at the time of the document's purported creation, relied on software that did not yet exist at the time of its purported creation, included font files that didn't exist at the time of creation, or digital forensics otherwise showed clear manipulation by Wright. *Cf. Vargas*, 901 F. Supp. at 1574-82 (issuing dismissal sanctions on grounds that plaintiff introduced evidence that was demonstrably fabricated because it did not exist during the relevant period).

Some other examples include: (i) the forged Tulip Trust 1 document authenticated to the Court; (ii) multiple forged emails from David Kleiman submitted to the Court and Plaintiffs, (iii) forged bitmessages from David Kleiman that Wright directly confirmed to the Court, (iv) the forged divorce settlement submitted to the court, (v) the forged W&K operating agreement produced to Plaintiffs, and (vi) Wright's communications with Highsecured (whom he claimed held about 700,000 bitcoin for him, spent it at his direction, and then ran away with about 100,000 – and which Dr. Edman's reports have shown are manipulated, inauthentic, and that Wright had the bitmessage private key to the purported Highsecued account enabling him to send messages as them (password to email account). Ex. 3, at 131:8-133:5; ECF No. [222], ¶15-16; ECF No. 500-2, 46-57.

Indeed, the bitcoin spends mentioned above mean it is now apparent that—contrary to his *sworn* testimony—Wright can in fact access his Bitcoin holdings, even though the "bonded courier" never arrived. Wright's conduct at depositions has been similarly troubling. He has provided irreconcilably inconsistent testimony on essentially any matter that he was asked about

twice, including key issues such as whether he and Dave mined bitcoin into a Panama trust or whether he typed certain emails.

Wright's repeated and pervasive misrepresentations and flagrant discovery obstructions have created delay after delay in this action. For instance, even though Judge Reinhart found that Wright's Bitcoin holdings were relevant in March 2019, Wright has <u>still not produced them</u>, more than a year later. His fraudulent Notice of Compliance—where he falsely stated that he had produced his Bitcoin holdings after receiving the necessary "key slice"—resulted in additional wasted time, including a round of interrogatories from Plaintiffs and two sets of responses from Wright. His baseless attorney-client privilege claims over 11K documents—including his absurd attempts to invoke Plaintiff W&K's privilege <u>against</u> Plaintiff W&K, and his attempt to invoke a "litigation liaison" privilege to prevent Jimmy Nguyen from testifying (something the district court for the Western District of Washington has rightly denied)—only served to create further distraction and delay. And his pervasive use of fabricated evidence has forced Plaintiffs to obtain numerous expert opinions that would, in any ordinary case, be wholly unnecessary.

## II. Default sanctions are appropriate

### a. Wright's unrepentant pattern of lies and forgeries demonstrates his willful bad faith and has numerous frauds upon the Court

The extent, duration, and egregious nature of Wright's perjuries, forgeries, and misrepresentations, the fact that so many of them were directed at the Court (not just Plaintiffs), and the fact that he is unrepentant, recalcitrant, and reverted to the exact same conduct after this Court gave him the benefit of the doubt with a relatively minor sanctions order, demonstrate that his acts are willful and in bad faith. *Costa*, 2011 WL 7318760, at \*5 (finding in Rule 37 context, that the "lengthy history [of improper acts] is nevertheless relevant to determine whether Costa acted in bad faith").

"Bad faith exists when the court finds that a fraud has been practiced upon it, or that the very temple of justice has been defiled, ... or where a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court order." *Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1373 (S.D. Fla. 2005) (citing *Chambers*, 501 U.S. at 45–46). Wright's actions tick every box of the *Allapattah* test. His submission of perjury/forgery in support of four dispositive motions "knowingly . . . raises a frivolous argument," his refusal to produce the bitcoin list, delay in producing TT3, and his other "antics" clearly "delay[ed] or disrupt[ed] the litigation," and his submission of perjurious declarations to support two dispositive motions, submission of forged evidence to support two

other dispositive motions, submission of forged evidence and perjury to Judge Reinhart to avoid sanctions, and his filing an outright false notice of compliance to this Court while handing a forged bitcoin list to Plaintiffs – wasn't a fraud practiced on Plaintiffs alone, but "defiled" the "very temple of justice" and "practiced" a fraud upon the Court itself. *Id. Stonecreek*, 2014 WL 12514900, at *2 (describing "fabrication of evidence" as "the near-classic example" of "[f]raud upon the court").

### b. Dr. Wright's misconduct has prejudiced Plaintiffs in numerous ways

As in any other case where a party submits forged evidence and commits perjury, Plaintiffs—as the victims of that misconduct—have been forced to "consum[e] substantial resources to respond to and 'undo' [Dr. Wright's] lies and distortions." *See Forsberg*, 634 F. App'x at 680. But unlike a case in which a party's perjury has been isolated or infrequent, Wright's perjury and forgery here has been pervasive. As a result, Plaintiffs have been forced to spend an inordinate amount of time, money, and energy—including by retaining experts—to determine which of Wright's documents are fabricated and which of his sworn statements are truthful. *See Morgan Drexen*, 101 F. Supp. 3d at 874 (retention of expert to respond to falsified evidence constitutes prejudice). To be sure Wright's antics have caused Plaintiffs to spend *millions of dollars* in attorney's fees, expert costs, and other expenses.

But it's not just the expense or time. It has taken the combined effort of Plaintiffs, their counsel, experts, and a devoted crypto-community to expose the forgeries, lies, and misrepresentations to date. Despite this herculean effort, Plaintiffs are confident many more forgeries and lies will remain unrebutted and be used against Plaintiffs at trial. But beyond bolstering Wright's defense with lies and forgeries, his misconduct has also prejudiced Plaintiffs' ability to prepare *their* case for trial by gathering the real evidence. Wright has sought to obscure and conceal the nature and activities of his partnership with David by producing numerous fabricated communications with him, failing to even search the partnership's email and forum accounts for evidence, and refusing to provide a true bitcoin list for Plaintiffs to trace. Furthermore, as the movement of bitcoin on the CSW Filed List proves, Wright has the private keys to move the 820,000 bitcoin in his possession, which means he has access to the "encrypted file" that contains his bitcoin and intellectual property. Plaintiffs are confident that if was compelled to open that file, the Court would find evidence of the Satoshi Nakamoto partnership that would unequivocally demonstrate the partnership existed, that David Kleiman was entitled to 50% of it,

and would reveal that Wright has wrongfully taken control of, *at least*, 820,000 bitcoin that belonged to the partnership. While Wright's refusal to open the file (when he clearly can) itself supports the negative inference that the proof Plaintiffs seek would be inside, there's more. Specifically, Wright's claimed receipt of an "anonymous" email with a list of David Kleiman's purported bitcoin holdings suggests that while the DK list is likely false, he could get the real partnership records that would show David's shared interest in 820,200 bitcoin. To be sure, the evidence Wright has withheld, concealed, altered, and forged concerns *the key issues in this case*: whether Wright and David partnered to mine bitcoin and develop intellectual property, the amount of bitcoin that they collectively mined, and which intellectual property they created. As a result, Plaintiffs have been deprived of *crucial information* in support of their case. Although Plaintiffs still have a strong case, Dr. Wright's "discovery abuses have handicapped [Plaintiffs'] in [their] ability to prove [their case]." *Costa*, 2011 WL 7318760, at \*9-10 (imposing default sanctions). To be sure, this misconduct is especially prejudicial in this case because Wright is *the sole living member* of the partnership that purposely operated in secret, and, as a result, is the *only* source for this type of information.

Moreover, Wright's newfound and unsupported position that documents *he produced in discovery*—including *his own emails* and contracts with his signature that he testified he signed— have been fabricated, forged, or otherwise altered by unknown hackers on unknown dates for unknown reasons has similarly prevented Plaintiffs from developing a case based on evidence Wright has provided.

In short, Wright has prejudiced Plaintiffs by "making a game of discovery," thereby "depriv[ing] [Plaintiffs] of the truth-finding judicial process to which [they are] entitled." *Sprint Sols.*, 83 F. Supp. 3d at 1298.

### c. No lesser sanctions suffice

Wright has already been sanctioned once. Since then, he has continued to engage in the exact same egregious misconduct that got him sanctioned in the first place, such as fabricating evidence, committing perjury, and making false statements. *See Sunrider Corp. v. Bountiful Biotech Corp.*, No. 08-cv-1339, 2010 WL 4590766, at \*28-30 (C.D. Cal. Oct. 8, 2010) (explaining that, because defendant's noncompliance continued after monetary sanctions were imposed, "[t]here [was] no reason to believe" that "additional lesser sanctions [would] be effective in ascertaining the truth"). Indeed, Wright has consistently engaged in this kind of egregious

misconduct throughout the entire period of this litigation—from his initial motion to dismiss filed more than two years ago to his motion for summary judgment filed last week. The egregiousness of this conduct alone warrants default sanctions. *See Axiom Worldwide, Inc*. *v*. *HTRD Grp*. *Hong Kong Ltd*., No. 8:11-cv-1468, 2013 WL 2406247, at *2 (M.D. Fla. June 1, 2013) (imposing default sanctions based on "egregious and non-excusable discovery violations").

Wright has mistaken this Court's adherence to the strict requirements of this country's due process laws as a license to double down on his misconduct. Wright is a billionaire, who stands to lose billions of dollars in this suit. He is likely paying his attorneys hundreds of thousands of dollars a month. Wright, a mathematician, appears to have divorced any sense of morality from his conduct and run a risk/benefit analysis to determine that forgery and perjury is an "affordable" in fact, "efficient," mechanism to fight this case. The Court should disabuse him of this dangerous notion.

Unless this Court steps in and makes this conduct, inefficient, there is no reason to expect Wright will stop. Instead, there is every reason to expect that, at every chance, Wright will provide perjured testimony, create new forgeries, and support his positions with fabricated evidence. *See Morgan Drexen*, 101 F. Supp. 3d at 875 ("Based on the extent of [defendant's] misrepresentations and falsification of evidence, the Court anticipates that [defendant] would continue to deceive the Court, its own trial counsel, and opposing counsel if the Court allowed this case to proceed to trial."); *Littler*, 2019 WL 1043256, at *10 (based on defendant's "repeated perjury," "[t]he Court has no confidence that [defendant] would testify truthfully to the jury"). Wright is already using experts to further this exact gambit. He intends to rely on the expert report of Dr. Ami Klin to excuse his utter lack of credibility and the expert report of Harley Norwitch to tell the jury that a document he swore at deposition bore his signature and that he submitted to the ATO to support his positions, was not signed by him. ECF No. [492], at 3–10, 20–21.[25]

**III. If the Court declines to order default sanctions, other sanctions should be imposed**

In the event the Court disagrees that default sanctions are appropriate, Plaintiffs

---

[25] Moreover, default sanctions are necessary to adequately deter similar misconduct from other litigants the future. As explained by one court, "[i]f manufactured evidence is merely excluded while the lawsuit continues," litigants would "infer that they have everything to gain, and nothing to lose" by continuing to falsify evidence. *Vargas*, 901 F. Supp. at 1582.

respectfully request that the Court deem the following facts established:[26]  (1) Dr. Wright and Dave entered into a 50/50 partnership to develop blockchain-related intellectual property and mine bitcoin; (2) all bitcoin (and forked assets) included in the CSW Filed List is, and remains, property of the partnership; and (3) any such intellectual property developed by Wright prior to Dave's death is, and remains, property of the partnership.[27]

As explained above, Wright's misconduct in this action concerns the key issues in dispute in the case – whether David and Wright were partners, the nature of their partnership activities, and the extent of the partnership assets. Wright, the sole surviving member of the Satoshi Nakamoto partnership, has sought to obscure and conceal the nature and activities of his partnership with David by producing numerous forged communications, constantly changing his sworn narrative to try and make it impossible to understand the real history, failing to even search the partnership's records, refusing to provide an accurate/complete bitcoin list for Plaintiffs to trace, and by refusing to open the encrypted file Plaintiffs believe holds the partnership's genuine records – records which would conclusively prove the partnership and assets in this case. He has clearly deprived Plaintiffs of crucial information to try their case.

Indeed, due to Wright's (i) repeated commission of perjury and forgery, (ii) withholding of relevant evidence, and (iii) his false claims that documents he produced were somehow "hacked," Wright's conduct has put Plaintiffs in a position where it is extremely difficult to rely on any evidence produced by Wright in this action—including his own statements—to support any fact at issue in this litigation. Accordingly, deeming these facts established properly punishes Wright for his extensive efforts to prevent Plaintiffs from proving these facts themselves. It directly cures the wrongdoing.

In the event the Court does not believe establishing any of these facts would be a proper sanction, Plaintiffs respectfully request an adverse instruction indicating that: (1) Wright has

---

[26] Non-dispositive "issue-related sanctions" only "require proof by a preponderance of the evidence." *In re Brican Am. LLC Equip. Lease Litig.*, 977 F. Supp. 2d 1287, 1293 n.6 (S.D. Fla. 2013).

[27] Plaintiffs recognize the Court previously denied similar sanctions under R37 in response to Wright's improper refusal to produce his Bitcoin Holdings. (*See* DE [373], at 19-20.) Here, in contrast, Plaintiffs challenge a much broader array of Wright's misconduct, including not just Dr. Wright's refusal to provide this information, but also Wright's fabrication of partnership communications, perjury regarding partnership activities, and apparent refusal to produce partnership documents. Plaintiffs further challenge Wright's pervasive fabrication and perjury. Indeed, here, if the requested deemed facts are established, Dr. Wright's "discovery abuse" would not "remain[] 'uncured.'" (*Id.* at 20.) To the contrary, it's the only way to cure his wrongdoing.

committed perjury, produced fabricated evidence, and withheld relevant evidence with respect to whether (a) he and David were partners, (b) the activities of their partnership, and (c) the extent of the partnership's assets; and (2) the jury may, if it so chooses, properly infer from this misconduct that (a) Wright and David entered into a 50/50 partnership to develop blockchain-related intellectual property and mine bitcoin, (b) any such intellectual property developed by Wright prior to Dave's death was property of the partnership, and (c) all bitcoin included in the CSW Filed List is property of the partnership.

The record outlined above demonstrates a clear "nexus" between the sanctions Plaintiffs are requesting and the willful, bad faith, perjury, forgery, fraud on the Court, and abuse of the discovery process. *First*, there is a nexus with the requested default sanctions because the abuses outlined above are undeniably directed at the singular goal of making it impossible for Plaintiffs to prevail at trial.

*Second*, if the Court determines a lesser sanction is appropriate, there is a nexus with the alternative requests to deem certain facts established as it, to a lesser degree, can remedy Wright's misconduct identified above aimed at avoiding, obstructing, and preventing Plaintiffs ability to prove the partnership, its scope, and its assets. Indeed, Wright has now moved for summary judgement claiming Plaintiffs haven't met their evidentiary burden trying–incredibly–to capitalize on his forging of favorable evidence, giving of perjured testimony, and refusal to turn over relevant information to Plaintiffs. The deeming of the requested facts will help cure the deficiencies and hurdles he has caused Plaintiffs.

*Finally*, there is similarly a nexus with the other alternative requests for adverse inference instructions, which the Court recognized when it warned Dr. Wright that such sanctions would be warranted if the "bonded courier" never arrived. Order, ECF [373] at 22 ("In the event the bonded courier does not arrive, and the Plaintiffs are not given access to this information, which the Court has already founded directly relevant to their claims, the Court finds additional sanctions would be warranted. Specifically, pursuant Rule 37(c)(1)(B), the Court will inform the jury of the Defendant's failure to disclose the information sought by the Plaintiffs.").

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order pursuant to its inherent powers striking Dr. Wright's Amended Answer and entering a default judgment against Dr. Wright.

Respectfully submitted,

Dated: May 15, 2020

/s/ *Velvel (Devin) Freedman*
Velvel (Devin) Freedman, Esq.
Florida Bar No. 99762
**ROCHE CYRULNIK FREEDMAN LLP**
200 S. Biscayne Blvd, Suite 5500
Miami, Florida 33131
Telephone: (305) 357-3861
vel@rcfllp.com
nbermond@rcfllp.com

Kyle W. Roche, Esq.
Joseph M. Delich, Esq.
*Admitted Pro Hac Vice*
**ROCHE CYRULNIK FREEDMAN LLP**
99 Park Avenue, Suite 1910
New York, NY 10016
kyle@rcfllp.com
jdelich@rcfllp.com

Andrew S. Brenner, Esq.
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd Street, Suite 2800
Miami, Florida 33131
abrenner@bsfllp.com

*Counsel to Plaintiff Ira Kleiman as Personal*
*Representative of the Estate of David Kleiman*
*and W&K Info Defense Research, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 15, 2020, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.

/s/ *Velvel Freedman*
VELVEL (DEVIN) FREEDMAN