**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC

      plaintiffs,

v.                                            **Case No. 9:18-cv-80176 (BB/BR)**

CRAIG WRIGHT,

      defendant.

_____/

**DR. CRAIG WRIGHT'S OPPOSITION**
**TO PLAINTIFFS' OMNIBUS MOTION IN LIMINE**

     In the Omnibus Motion in Limine (the "Motion"), plaintiffs ask this Court to exclude seven categories of evidence on the bases that: (1) the evidence is not relevant; (2) even if it were relevant, it is unfairly prejudicial; (3) it allegedly contradicts "judicially-admitted" facts; and (4) they were produced later in the discovery period than plaintiffs would have liked. Plaintiffs' attempt to exclude those seven categories of documents is little more than an attempt to whitewash Dave Kleiman's character and sanitize his actions. That evidence, however, is directly relevant to whether Dave, during a very turbulent period of time in his life in which he was: (1) in and out of the hospital; (2) abusing drugs; (3) exhibiting violent tendencies towards women; and (4) living a reckless lifestyle on the apparent verge of poverty while at the same time frequenting strip clubs, was simultaneously creating (and amassing a fortune for creating) one of the most technologically advanced, game-changing electronic or digital cash systems in the world. And evidence that during this time, through his death, Dave and Ira had a very acrimonious relationship, is directly relevant to the reason why Ira, Dave's estate's personal representative, haphazardly destroyed Dave's data and documents which, if plaintiffs' theory of this case is to be believed, could have contained the proof necessary for plaintiffs' claims, or more likely, contained just the opposite. To be sure, the Motion seeks to strip the context from some of the most probative evidence in this case. But facts do not, and cannot, exist in a vacuum and without context. And to allow plaintiffs to place them in that light by excluding these seven categories of evidence would allow them to

distort the truth. The Court should deny the Motion and address the admissibility of each category of evidence in the natural course at trial.

## LEGAL STANDARD

A motion in limine alters the normal conduct of a trial, in which a party offers evidence, to which the opposing party can acquiesce or object, at which point the court will decide, considering the context of the trial, whether the evidence should be admitted or excluded. Instead, a motion in limine asks a court to consider, out of context and in a vacuum, whether the evidence (which may or may not eventually be offered by a party) should be admitted. *See Roberts v. Charter Nat. Life Ins. Co.*, 105 F.R.D. 492 (S.D. Fla. 1985) ("Consideration of evidentiary rulings on an item by item, piecemeal basis is counter-productive to the effective administration of justice in a busy trial court. When these rulings are made at the time the exhibit is offered in evidence, the trial judge has the benefit of full development of all relevant facts constituting the introductory predicate for admission of the item or statement. Motions in limine rarely provide this factual background."). Accordingly, motions in limine are disfavored and should be granted sparingly. *Biscayne Cove Condo. Ass'n Inc. v. QBE Ins. Corp.*, 2013 WL 2646828, at *3 (S.D. Fla. 2013) (citation omitted) ("A motion in limine is traditionally disfavored because questions of admissibility should be dealt with at trial."). In fact, a court considering a motion in limine should, by default, deny it unless and until the movant can demonstrate that there is no possible ground on which the evidence could be admitted. *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010) ("In fairness to the parties and their ability to put on their case, a court should exclude evidence in limine only when it is clearly inadmissible on all potential grounds . . . [and the] movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground."). In other words, unless the movant can establish that there is no possible way the evidence could be admissible, the motion should be denied and the admissibility of the evidence determined at trial, in the ordinary course. *Salomon Constr. & Roofing Corp. v. James McHugh Constr. Co.*, 2019 WL 5256980, at *1 (S.D. Fla. 2019) ("Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context.") (citing *In re Seroquel Prods. Liab. Litig.*, 2009 WL 260989, at *1 (M.D. Fla. 2009)).

Regardless of when the admissibility of the evidence is considered, under the Federal Rules of Evidence, relevant evidence is admissible, unless the opponent of that evidence can

establish that it meets very limited—and sparingly used—criteria for exclusion. *See AIM Recycling of Fla., LLC v. Metals USA, Inc.*, 2020 WL 236719, at *2 (S.D. Fla. 2020) (Bloom, J.) ("Evidence is admissible if relevant, and evidence is relevant if it has any tendency to prove or disprove a fact of consequence.") (internal citations omitted). One of those narrowly-construed exceptions is Federal Rule of Evidence 403, under which a court may exclude otherwise admissible evidence "if its probative value is ***substantially*** outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence*." Id.* (citing Fed. R. Evid. 403) (emphasis added). But exclusion under Rule 403, being an exception to the default rule that relevant evidence is admissible, "is an extraordinary remedy which the district court should involve sparingly, and the balance should be struck in favor of admissibility." *Id.* (citing *United States v. Patrick*, 513 Fed. App'x 82, 886 (11th Cir. 2013)). "Rule 403's 'major function . . . is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *AIM Recycling*, 2020 WL 236719, at *2 (quoting *United States v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001)). Because plaintiffs have scarcely attempted to—and never could—meet their burden of "demonstrating that the evidence is inadmissible on any relevant ground," *Gonzalez*, 718 F. Supp. 2d at 1345, the Court should refuse to exclude the relevant evidence defendant intends on presenting at trial.

## DISCUSSION

The Motion raises seven categories of evidence that plaintiffs seek to have the Court preemptively exclude. Defendant addresses each category in turn.

### A.     The Court Should Not Find That Defendant's Answers Constituted a Judicial Admission

Plaintiffs first ask this Court to issue an order "precluding [Dr.] Wright from contradicting the plain meaning of the documents that come from him, were drafted by him, or were signed by him and which he judicially admitted, 'speak for themselves' in his Answer." Motion at 12. As a legal basis for this extremely broad and all-encompassing request, plaintiffs cite to the doctrine of judicial admissions. But such a statement cannot constitute a judicial admission, and even if it could, the admission does not go as far as plaintiffs suggest.

1.     *The statement that a document "speaks for itself" cannot constitute a judicial admission*

 "A statement must be 'deliberate, clear, and unambiguous' to be considered a judicial admission." *In re Kattouah*, 452 B.R. 604, 608 (E.D. Mich. 2011) (citing *MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997)). "In order to satisfy these elements, the statement in context must amount to an express concession of a fact." *In re Kattouah*, 452 B.R. at 608 (citing *Robinson v. McNeil Consumer Healthcare*, 671 F.Supp.2d 975, 981–82 (N.D. Ill. 2009)). Stated differently, "[j]udicial admissions generally arise only from deliberate voluntary waivers that expressly concede for the purposes of trial the truth of an alleged fact." *United States v. Belculfine*, 527 F.2d 941, 944 (1st Cir. 1975).

The statement that a "document speaks for itself" is not an "express concession of fact," nor is it a "deliberate voluntary waiver." *Serv. Source, Inc. v. Office Depot, Inc.*, 259 F. App'x 768, 772–73 (6th Cir. 2008) (finding that the defendant's statement that the document speaks for itself is "not the type that should be considered to be judicial admissions by a court."). This is because the statement that a "document speaks for itself" is ambiguous. *E.g. N. Ind. Metals v. Iowa Exp., Inc.*, 2008 WL 2756330, at *3 (N.D. Ind. 2008) ("Iowa Express' response that the document speaks for itself ***could either be interpreted as an admission or denial*** and does not directly respond to the allegations in the Complaint.") (emphasis added). And an ambiguous statement cannot serve as a basis for a judicial admission. *Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1972) ("To be binding, judicial admissions ***must be unequivocal***.") (emphasis added) (citing *Oscanyan v. Arms Co.*, 103 U.S. 261 (1880)). As such, Dr. Wright's statement that the "document speaks for itself" cannot serve as a judicial admission.

Further, were there any doubt as to whether the statement that the "documents speak for themselves" constitutes a judicial admission (there isn't, because it doesn't), it should be resolved in defendant's favor. "Considerations of fairness and the policy of encouraging judicial admissions require that trial judges be given broad discretion to relieve parties from the consequences of judicial admission in appropriate cases." *Belculfine*, 527 F.2d at 944 (1st Cir. 1975) (citing *United States v. Cline*, 388 F.2d 294, 296 (4th Cir. 1968)); *accord Serv. Source, Inc.*, 259 F. App'x at 772–73. This is especially true in this case, where plaintiffs waited nearly a year and a half to raise this issue and assert that defendant is "attempt[ing] to evade the pleading requirements of Rule 8,"

4

(Motion at 10) and where plaintiffs' own conduct demonstrates that they did not consider defendant's statements to be judicial admissions.[1]

Plaintiffs should have raised any challenges that they had with defendant's answer many months ago, as required by the law. *See* Fed. R. Civ. P. 12(f) (providing a deadline to file a motion to strike either before responding to the allegedly deficient pleading or, if no response is allowed, within 21 days after being served with that pleading).[2] It simply is unfair for plaintiffs to sit on their hands for nearly a year and a half, wait until the time to amend the answer without leave of Court has long passed, wait until discovery has concluded, and then spring a gotcha on the eve of trial. Plaintiffs should have filed a timely motion to strike defendants' answer, at which point, the Court could have provided leave to amend under Rule 15's liberal amendment policy, were the Court persuaded by plaintiffs' arguments. *See Gulf Restoration Network v. U.S. Envtl. Prot. Agency*, 2018 WL 5297743, at *4 (E.D. La. 2018) (noting that the "liberal amendment policy of Rule 15 provides a safety valve that permits the district court to allow deviations from poorly framed denials when it seems appropriate to do so," and granting leave to amend an answer stating that a "document spoke for itself"); *Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc.*, 2015 WL 5730662, at *3 (N.D. Ind. 2015) (granting leave to amend responses that stated the "documents spoke for themselves"); *Do It Best Corp. v. Heinen Hardware, LLC*, 2013 WL 3421924, at *6 (N.D. Ind. 2013) (same). Plaintiffs' challenge is untimely and prejudicial to defendant.

Further, plaintiffs' conduct throughout discovery demonstrates that they never considered the statements that the "documents speak for themselves" to be judicial admissions. As noted in their own Motion, plaintiffs have questioned Dr. Wright on multiple occasions as to the authorship and contents of certain documents that "speak for themselves." Motion at 11 (relating how plaintiffs' counsel asked Dr. Wright who "wrote" or "typed" certain documents). Obviously, if Dr.

---

[1] Plaintiffs cite to *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1030 (C.C.P.A. 1982)), but that case dealt with a defendant who qualified his answer by stating it was "upon information and belief," not one that answered the "documents speak for themselves."

[2] Plaintiffs filed a motion to strike affirmative defenses to the second amendment complaint [D.E. 95]. While plaintiffs sought to have the Court strike defendant's fifth, sixth, eight, ninth, eleventh, and twelfth affirmative defenses, at no point did plaintiffs move to strike defendant's statements that "documents speak for themselves."

Wright judicially admitted the authenticity of those documents and the veracity of the statements contained within them, then there would have been no need for plaintiffs to ask those questions.

Finally, the cases that plaintiffs rely on in their Motion are easily distinguishable, and in many cases simply irrelevant, as they do not involve assertions that the "documents speak for themselves." Instead, the cases address clear and unambiguous statements, like: (1) the "principle place of business is in Florida," *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1177 (11th Cir. 2009); (2) that an action is "brought in the judicial district in which the cause of action arises," *Best Canvas Prod. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983); or (3) that the plaintiffs applied for a job position. *Johnson v. Publix Super Markets, Inc.*, 2012 WL 13001421, at *6 (S.D. Fla. 2012). Accordingly, these cases are not helpful in determining whether an ambiguous statement that a "document speaks for itself" could be considered a judicial admission.[3]

While the remaining cases at least address the statement that the "document speaks for itself," they do not advance plaintiffs' position. In *FDIC v. Stovall*, 2014 WL 8251465, at *12 (N.D. Ga. 2014), the court actually found that "***the opposing party did not really admit anything***" by stating that a "document speaks for itself." (Emphasis added). This directly contradicts plaintiffs' position that such a statement is a judicial admission. In *Charleston v. Salon Secrets Day Spa, Inc.*, 2009 WL 1795529, at *1 (E.D. Pa., 2009), while the court found the statement that the "documents speak for themselves" to be the "equivalent of an admission," it only did so because the ***defendant conceded*** that it was an admission. Tellingly however, the *Charleston* court concluded that other rather ambiguous answers which defendant did not concede were admissions, such as that: (1) the averment was directed to another defendant; (2) it was without knowledge sufficient to form a belief as to the averment; or (3) no answer was required because it was merely a conclusion of law, were not deemed admissions. *Id.* Lastly, in *In re Cotter*, 2011 WL 5900811 (Bankr. D.N.J. 2011), the plaintiffs moved to strike an answer for failure to comply with Rule 8(b). In other words, the court was adjudicating the sufficiency of the defendant's response (*i.e.* whether there was a legally sufficient admission or denial). The court was not asked to, and did not, determine whether the statement was sufficiently clear and unambiguous to serve as a judicial

---

[3] Plaintiffs also cite to *Mitchell v. Wright*, 154 F.2d 924, 926–27 (5th Cir. 1946), but it is entirely unclear how that has any bearing on this case. In any event, it certainly does not deal with an answer that stated that the documents speak for themselves.

admission, which is what the plaintiffs ask the Court to do here. As noted above, courts that have addressed *this exact issue* have found that the statement that a "document speaks for itself" is "not the type that should be considered to be judicial admissions by a court." *Serv. Source, Inc.* 259 F. App'x at 772–73.

2. *Even if the statement that a "document speaks for itself" could constitute a judicial admission (it can't), the admission does not go as far as plaintiffs suggest*

As demonstrated above, the statement that a "document speaks for itself" cannot constitute a judicial admission. Yet, even if it could, the admission would not go as far as plaintiffs suggest. According to plaintiffs, by stating that the "document speaks for itself," defendant admitted that: (1) the document is authentic; (2) the content of the entire document is true; and (3) plaintiffs' interpretation of the "plain meaning" of the document controlled. Motion at 12. Plaintiffs go too far.

As an initial matter, defendant did not solely answer that the "documents speak for themselves." He further specified that he "denies any erroneous, incomplete, or out-of-context characterization of [the document], and any inaccurate inferences or conclusions derived from [the document]." Amended Answer to Second Amended Complaint [D.E. 87] ¶¶ 36, 55, 62, 63, 69, 70, 74, 76, 77, 78, 80, 81, 85, 86, 87, 88, 90, 91, 101, 103, 104, 105, 106, 107, 108, 109, 117, 118, 120, 121, 123, 125, 126, 127, 128, 129, 130, 133, 135, 136, 137, 139, 143, 144, 145, 146, 147, 148, 151, 152, 153, 154, 155, 156, 161, 163, 165, 167, 168, 169, and 220. In other words, defendant admitted that the words appear in the document that plaintiffs rely on, but did not (and does not) admit that plaintiffs' interpretation of those words is accurate, that the words in the document are true, or even that the document is authentic.

3. *Were the Court inclined to consider any remedy, it should be to permit the defendant to amend his answer to the complaint*

The remedy plaintiffs request is severe and would result in great prejudice to defendant. It would effectively prohibit him from testifying about emails and documents that plaintiffs maintain were drafted and sent by defendant. As a basis for this harsh remedy, plaintiffs exploit an admittedly ambiguous statement made by defendant in his answer, about which plaintiffs were silent for almost a year and a half.

Were the Court inclined to find that the statement that a "document speaks for itself" could be considered a judicial admission, then the just remedy would be to permit defendant to amend

his answer to further specify in detail what exactly he was admitting or denying. Plaintiffs will not be prejudiced by this amendment, because as demonstrated above, plaintiffs' conduct throughout discovery shows that they did not consider that statement to be an admission.

**B.     The Court Should Not Exclude Testimony Relating to the Hack of Defendant's Electronic Devices**

Plaintiffs next ask this Court to preclude defendant from stating that "his computers were 'hacked' or that his signatures were forged." Motion at 17. In the alternative, they ask the Court to compel defendant to "disclose, at least 30 days before trial, all documents that he has produced that he claims are the result of hacking, are forged, or otherwise inauthentic, with a detailed and sworn explanation for who, how, when, and why this hacking occurred." *Id.* Unsurprisingly, plaintiffs don't cite to *even one case* that supports their extraordinary request.[4]

The purpose of a motion in limine is to permit the Court to rule on evidentiary objections in advance of trial. *See Salomon*, 2019 WL 5256980, at *1. Obviously, ***there needs to be an evidentiary basis to exclude the testimony***. Here, plaintiffs proffer none. Instead, plaintiffs unilaterally conclude that defendant's computers were not hacked and thus ask the Court to exclude testimony related to that "non-existent hack." But plaintiffs are not the determiner of fact. The jury is. Moreover, there is ample evidence to support defendant's testimony that he was hacked. ***First***, private and privileged communications that appear to be between defendant and his Australian counsel were obtained by a "hacker" and posted online. *See* https://gizmodo.com/this-australian-says-he-and-his-dead-friend-invented-bi-1746958692 (last accessed May 14, 2020).

***Second,*** plaintiffs' characterization that defendant is trying to "make a mockery of the justice system" by "testify[ing], on a self-serving and *ad hoc* basis, and without any meaningful evidentiary foundation beyond his word, that various documents . . . are the result of an alleged hacking scheme," Motion at 13, is both disingenuous and factually incorrect. As plaintiffs well know because they were produced by or to them long ago, there are many documents dating years

---

[4] While plaintiffs cite to two cases, neither of them remotely supports plaintiffs' position that this court should preclude defendant from introducing evidence that he was hacked. In *United States v. Finley*, 2017 WL 3495345, at *2 (W.D. Pa. 2017) the court ruled on a motion to vacate the defendant's conviction based on alleged ineffective assistance of counsel, and in *Cohen v. Porsche Cars N. Am., Inc.*, 2019 WL 6700941, at *2 (C.D. Cal. 2019) the court ruled on the sufficiency of a pleading. Neither of those cases dealt with whether a court should exclude relevant testimony in a motion in limine simply because it undermines plaintiffs' claims.

8

before this lawsuit began, discussing the hack of defendants' computers. *See, e.g.* email chain last dated Dec. 8, 2015 from C. Wright to S. Matthews and R. Watts, attached as **Exhibit A** (discussing hack of defendant's computers); email chain last dated Dec. 9, 2015 from P. Paige to K. Andreou, forwarding email from I. Kleiman to C. Wright, attached as **Exhibit B** (same). Defendant's hack is not an *ad hoc*, recent fabrication, but instead is a well-documented, years long issue that plaintiffs are intimately aware of.

      *Third*, F. Harley Norwith, a forensic document examiner with over 40 years of experience, has provided an opinion that certain documents contain a forged version of defendant's signature. *See* Plaintiffs' Omnibus Daubert Motion to Strike Defense Experts, Ex. 11 [D.E. 509-11]. Presumably, one would not intentionally forge their own signature on a document and then retain that document in their possession. But a hacker who gained access to a computer system certainly could have placed that document there. Third, defendant is a high-profile figure in the bitcoin community and a prime target for hackers. Hacks and online attacks are part of the "bitcoin story," as Gavin Andresen testified in his deposition, which explained that Satoshi's email had been hacked that that defendant likely was as well. And J. Nguyen testified that ***even before plaintiffs brought this lawsuit***, defendant informed him that "someone hacked his company computers and tried to change documents." J. Nguyen Depo Tr. 137:3-15, attached as **Exhibit C**.[5]

      In sum, plaintiffs have known for at least a year—and for much longer—that defendant was the victim of hacks[6] and thefts of documents and, they have had more than sufficient time to fully explore the contours of that hack during discovery.[7] It is for the jury to determine what weight to give to the ample evidence that defendant was hacked—not plaintiffs. *Teller v. Patten*, 61 U.S. 125, 127 (1857) ("It was the province of the jury to determine the weight of the evidence before them."); *Gunning v. Cooley*, 281 U.S. 90, 94 ("Issues that depend on the credibility of

---

[5] With respect to the citations to deposition transcripts in this opposition, the corresponding exhibits include the relevant excerpt from the transcript. Should the Court desire any additional portion of the transcript, defendant will file the requested portion. Citation to the deposition transcripts shall be [deponent] [page]:[line].

[6] As plaintiffs' note in their motion, defendant testified at the August 2019 hearing that he was hacked.

[7] In fact, ***it was plaintiffs that elicited the testimony from J. Nguyen that defendant was hacked***. Plaintiffs simply are not happy with the substance of his testimony. But that is not a valid basis to exclude it.

witnesses, and the effect or weight of evidence, are to be decided by the jury."). Plaintiffs' attempt
to usurp the role of the jury is unwarranted, contrary to law, and should be denied.

**C.     The Court Should Not Exclude Testimony about Ira Kleiman's Relationship with his
        Brother Dave**

        Plaintiffs next ask the Court to exclude any testimony regarding Ira's relationship with
Dave. Motion at 4. According to plaintiffs, their relationship is "essentially irrelevant" (Motion at
4) and "the only reason for [sic] Defendants to introduce such evidence would be to suggest to the
jury that Ira was an absent sibling who abandoned his brother during Dave's time of need, and has
only reappeared to claim Dave's fortune." Motion at 7. In making that argument, plaintiffs ignore
a key piece of evidence on which they rely.

        Plaintiffs' entire case is premised on Dave allegedly co-inventing the bitcoin protocol,
mining a fortune of bitcoin with defendant, and developing valuable bitcoin intellectual property
with defendant. Yet discovery has revealed that Dave never said anything to his closest friends—
including friends who visited him every day and family members that he lived with—to suggest
that he invented the bitcoin protocol, mined any bitcoin, or developed bitcoin intellectual property.
*See* P. Paige Depo. Tr. 12:1-8, attached as **Exhibit D**; C. Conrad Depo. Tr. 14:10-12; 17:21-24,
attached as **Exhibit E**; and K. Andreou Depo Tr. 19:20-20:12. attached as **Exhibit F**. To address
this inconvenient reality, plaintiffs appear intent on arguing that Dave's involvement in bitcoin
was a "secret," and thus he was unable to share the details with his closest of friends and family. I.
Kleiman January 13, 2020 Depo Tr. 13:20-17:12, attached as **Exhibit G**.

        Yet at the same time, plaintiffs allege that at a 2009 Thanksgiving dinner, Dave and Ira had
a conversation that just so happened to fill the evidentiary void. Ira claims that in that
conversation:

        A.  Dave told Ira that "he was working on "something bigger" than Facebook, that he was
            "creating his own money." D.E. 83 ¶ 58.

        B.  Dave told Ira that "he was making 'digital money.'" *Id.* ¶ 60.

        C.  Dave "opened his wallet, took out a business card, flipped it over, drew a 'B' with a
            line or two through it, and commented on how "we" were working on a logo." *Id.*

        D.  Dave told Ira he was working with a relatively wealthy foreign man who owned some
            properties. *Id.* At 61.

   E.  Ira asked Dave why he didn't partner with this wealthy individual. Dave was silent,
       which Ira understood to be Dave's concession they were already partners. *Id.*

Importantly, that alleged conversation is ***the only evidence*** (apart from what comes from defendant—which plaintiffs argue is incredible and should be afforded no weight) that plaintiffs have to substantiate their claims. And that is why Ira's relationship with Dave is relevant, highly probative, and essential to defendant's defense of this case.

If Ira and Dave had a close relationship, then Ira's story about the 2009 Thanksgiving dinner could make sense. Sometimes people tell "secrets" to their best friends or close family members—even when they aren't supposed to. But if Ira and Dave were estranged, if Ira lived a ten-minute drive from Dave but never once visited Dave, and if Ira never visited Dave when he was sick in the VA, then it is less likely that Dave would have broken the "secret" and told Ira about his involvement in bitcoin, especially when Dave didn't say anything to the people who did visit him every day, and who were close friends and family members that lived with him.

 Evidence of the brothers' acrimonious relationship also is directly relevant and highly probative with respect to Ira's motivation for deleting or destroying Dave's electronic devices and physical files after Dave's passing. Ira admitted to his "mistake" when defendant advised Dave's family that none of Dave's data or documents should be lost or destroyed. If, as defendant maintains and intends to demonstrate at trial, the brothers were estranged, that destroyed data could very well have revealed that Dave did not intend for Ira, as Dave's estate's representative, to have any claim against defendant, or that Dave in fact did not have any claim against defendant. Thus, in light of the supposed Thanksgiving conversation between the brothers, where Dave allegedly told Ira about bitcoin and Dave's role in developing it, the motivation behind Ira's admitted destruction of Dave's files, and Ira's actions with respect to Dave's property after his death are directly relevant to plaintiffs' claims in this action.

The evidence as to Ira's relationship with Dave (or lack thereof) is not a "matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. King*, 713 F.2d 627, 631 (11th Cir. 1983). And to the extent that there is any prejudicial effect, it is easily outweighed by the highly probative nature of this evidence. *United States v. Mills*, 704 F.2d 1553, 1560 (11th Cir. 1983) ("Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted as scenarios, or unreal facts

11

tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing.").

**D.     The Court Should Not Preclude Defendant's Use of Timely-Disclosed Documents**

Plaintiffs ask this Court to either (1) exclude documents that defendant produced after his deposition and expert disclosures or (2) compel him to sit for another deposition regarding those documents. Motion at 20. As with many of plaintiffs' requests in the Motion, they fail to cite to any law or caselaw that would support this remedy. While plaintiffs cite two cases (Motion at 19-20), none are remotely similar to the issue in front of this Court. In *Debose v. Broward Health*, the defendant produced the documents almost two months after discovery concluded, three days before the pre-trial conference, and 17 days before the start of trial. 2009 WL 1410348, at *2 (S.D. Fla. 2009). And in *In re Delta/AirTran Baggage Fee Antitrust Litig.* the defendant produced the documents nearly a year after the discovery deadline concluded. 846 F. Supp. 2d 1335, 1354 (N.D. Ga. 2012), *modified sub nom. In re Delta/Airtran Baggage Fee Antitrust Litig.*, 2012 WL 12952328 (N.D. Ga. 2012). Here, defendant timely produced the documents before the close of discovery and well before the scheduled trial date.

Discovery closed on May 1, 2020, which, as plaintiffs acknowledge in their Motion, was the date by which all documents had to be produced. Motion at 19, n.11. Yet Plaintiffs complain that defendant produced 1,854 pages of documents in March and April of 2020. In doing so, they ignore the almost two million pages of documents that defendant produced prior to that date, and they ignore the fact that ***plaintiffs were producing critical documents up until 2 hours and 21 minutes before the close of discovery***. *See* email from K. Roche to counsel for defendant dated May 1, 2020 at 9:38:41 p.m., attached as **Exhibit H** (sending documents that included a recorded conversation between Ira Kleiman and defendant in 2015). They also ignore the fact that plaintiffs produced more than sixty thousand pages of documents after their depositions. At bottom, this is a complex case and plaintiffs have served many expansive discovery requests. In fact, in response to plaintiffs' request that defendant produce all documents by a certain date, Judge Reinhart found: "Now, you have asked for a lot in this case, Mr. Freedman. I've given you a lot, but when you ask for a lot, don't complain that you got a lot." Hr. Tr. 43:20-22 (Jan. 2, 2020). Judge Reinhart then stated that the document production may continue until the close of discovery. *Id.* 43:10-19 ("That's what discovery means. Discovery closes on that date"). Defendant complied with that

order. It simply is not reasonable to expect defendant to have produced ever single document before his deposition.

Further, plaintiffs' allegation that the timing of defendant's production is part of an elaborate scheme to sandbag plaintiffs is baseless. Motion at 19, n.11. The existence of those files was no secret. Defendant told plaintiffs during his deposition that he had recently gained access to the files about which plaintiffs now complain: "We have access now to the Wright International Investment accounts from the period of 2009 on. As soon as I was told that those could be accessed, the access was granted and given to the forensic people that the lawyers mentioned, that my counsel have sort of hired." Dr. C. Wright March 18, 2020 Depo tr. 260:15-20, attached as **Exhibit I**. Counsel then asked defendant to elaborate: "Dr. Wright, you said 'accounts' here multiple times. What do you mean by you have access to the accounts?" *Id*. at 260:23-25. Defendant responded: "I mean the accounts, as in accounting software, general ledgers, balances, that sort of stuff." *Id*. at 261:1-3. Plaintiffs' counsel chose not to probe any further. Instead, counsel moved to other topics, such what company currently had the bitcoin: "You have no access to the actual Bitcoin—strike that.  Dr. Wright, where does the 800,000 and change Bitcoin you mined between 2009 and 2010 -- where is that currently? With what company?" *Id*. at 261:4-8.

Subsequent to that deposition, plaintiffs never followed up about the accounting records. Nor did they demand an immediate production. Nonetheless, defendant produced the documents on his own accord prior to the close of discovery. Plaintiffs now claim that those records are so important that they should have been produced earlier, and as a remedy, plaintiffs should able to re-depose defendant on those records or exclude them in their entirety.  Motion at 18 (arguing that "the document produced appear relevant to major issues in this case"). But plaintiffs prior silence belies that claim. In fact, one could argue that it is plaintiffs who are sandbagging defendant.

**E.**     **The Court Should Not Exclude Evidence Tending to Show that Dave Brought About His Own Death**

Next, plaintiffs ask that this Court to exclude "[a]ny evidence or testimony that Dave committed suicide." Motion at 21. In support, plaintiffs claim that such evidence is nothing more than a "purposeful attempt to malign Dave's memory" and that it is "irrelevant to the issues before the jury, is completely unsupported by the record, and is in fact directly contrary to the medical evidence." *Id*. at 20. According to plaintiffs, because Dave's autopsy report stated that the "cause of death" was "coronary artery disease" and that the "manner of death" was "natural," any

evidence that Dave's death was the result of his "self-directed injurious behavior with an intent to die as a result of the behavior,"[8] should be excluded.

Defendants intend to present evidence that on March 25, 2013, Dave was given a three-day pass by the VA hospital where he was being treated for a number of very serious medical conditions, including MRSA, which, as he knew, if left untreated (as it was subsequent to Dave's flight from the hospital) could (and unfortunately did) prove fatal. Dave's passing, while tragic, was not a sudden, unexpected event. Dave never returned to the VA hospital, did not return calls from the VA hospital and was deemed to have gone AWOL. *See* Dr. MacIntyre Report dated April 8, 2020. Plaintiffs' Omnibus Daubert Motion to Strike Defense Experts, Ex. 14 [D.E. 509-14]. The evidence defendant intends to present will show that it was not just the likely, but the unavoidable, result of Dave's discontinued treatment. "The law provides a rebuttable presumption that every man intends the natural and probable consequences of his own acts. *United States v. Wilkinson*, 460 F.2d 725, 730 (5th Cir. 1972). The evidence will show that Dave intended to end his own life by discontinuing his treatment. Nevertheless, in the month between Dave's life-ending decision to discontinue treatment and its inevitable result, Dave did nothing to distribute the fortune plaintiffs claims they were entitled to, nor to inform anyone, including his brother Ira, his estate's personal representative, of the keys necessary to access his bitcoin wallet. Given plaintiffs' claim that Dave was one of the architects of bitcoin, surely he would have known that without passing on those keys, which only he could have known about, his supposed fortune would have been lost forever at his death. Yet he chose to do nothing to transfer those keys or in any way preserve his assets. Dave's conscious decision to discontinue his medical treatment—the proximate cause of his death—without his arranging for the transfer of his bitcoin keys, is inconsistent with the state of mind of someone who allegedly obtained and owned hundreds of millions of dollars' worth of bitcoin. Thus, evidence of his decision to bring about his own death is relevant because it "has any tendency to make a fact"—in this case—that Dave was not a co-inventor of bitcoin and did not have a treasure trove of bitcoin that he intended to leave to his estate—"less probable than it would be without the evidence." Fed. R. Evid. 401(a). And plaintiffs have not even attempted to meet, let alone met, their heavy burden of proving that probative value of evidence of Dave's decision to discontinue his medical treatment is not "substantially outweighed by danger of . . .

---

[8] This is the National Center for Biotechnology Information's (a branch of the National Institutes of Health) definition of "suicide." https://www.ncbi.nlm.nih.gov/books/NBK137739/table/ch1.t1/.

unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Accordingly, the court should not grant the "extraordinary remedy" of excluding this evidence. *See AIM Recycling*, 2020 WL 236719, at *2.

### F.  The Court Should Not Exclude Evidence of Dave's Drug Use and Social Habits

Plaintiffs' next request is that the Court exclude "evidence relating to Dave's alleged drug use, as well as evidence regarding Dave's social habits, including Dave's dating life and any alleged tendency to visit strip clubs, as such evidence is irrelevant, and therefore, inadmissible." Motion at 21. Further, plaintiffs claim, even if that evidence were relevant, "it should be excluded on the basis that that [sic] it presents a danger of unfair prejudice that substantially outweighs its probative value." *Id*.

Throughout this litigation, plaintiffs have portrayed Dave as a focused, driven computer engineer, veteran, and law-and-order type of guy, who refused to cash in on the massive fortune he amassed through his bitcoin holdings in the hopes of further appreciation of those assets. In other words, plaintiffs have put Dave's habits at issue in this case. To the extent plaintiffs present evidence in their case about Dave's habits, defendant should have the right to present evidence tending to establish the Dave suffered from significant financial distress towards the end of his life, his history of being a spendthrift, along with substance abuse issues, and even domestic violence episodes, including incidents where he threw hot cooking oil on his girlfriend and threw a sharp knife at her with intent of causing severe harm.

With respect to plaintiffs' argument that such evidence "presents a danger of unfair prejudice that substantially outweighs its probative value," Motion at 21, plaintiffs have failed to meet their "burden of demonstrating that the evidence is inadmissible on any relevant ground."  *Gonzalez*, 718 F. Supp. 2d at 1345. Thus, because plaintiffs have failed to establish that this "evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *In re Seroquel Prods. Liab. Litig.*, 2009 WL 260989, at *1 (internal citation omitted).

In support of their argument, plaintiffs cite to inapposite cases. The first, *United States v. Sellers*, 906 F.2d 597, 602 (11th Cir. 1990) was a criminal case in which the court found that "[t]here was certainly no evidence that [a witness against whom evidence of prior drug use was excluded] was under the influence of drugs or alcohol [at the relevant time]." The Court went on

to note that "this Court has held that such evidence may properly be limited to 'specific instances of drug use during relevant periods of trial and the transaction charged in the indictment." *Id*. Here, the evidence defendant seeks to introduce regarding Dave's drug use and social habits is "during the relevant time,"—the period of time plaintiffs claim Dave was immersed in creating bitcoin and allegedly bitcoin and blockchain related intellectual property. Similarly, in *Nobles v. Sushi Sake MMB, Inc.*, an employment discrimination case, the court was asked to exclude "references to [plaintiff's] alleged drug use, any alleged drug sale, any alleged drug purchase and 'references to alleged prior arrests, detention, or prior interaction with law enforcement officers' on the grounds that such evidence would result in undue prejudice under Fed. R. Evid. 403." 2018 WL 3235534, at *1 (S.D. Fla. 2018). The court excluded the evidence only after noting that the plaintiff stated that "there is no evidence, beyond speculation by defense witnesses, that Plaintiff smoked marijuana at the restaurant, came to her shift after smoking marijuana, or otherwise violated Sushi Sake's substance policy." *Id*. In that light, the Court found that "any reference to the plaintiff's marijuana use is unduly prejudicial and its probative value is de minimis." *Id*. at *2. To the contrary, in this case, the probative value of the evidence directly contradicts plaintiffs' portrayal of Dave is highly probative as to whether he was in fact a co-developer of bitcoin, and is not based on pure speculation. And possible prejudice resulting from the evidence does not so substantially outweigh its probative value as to warrant exclusion.

Finally, in *Hall v. Mayor Aldermen of City of Savannah, GA*, a sexual harassment case, the extent of the court's discussion with respect to evidence regarding a strip club was that "[t]he Court agrees with the City . . . that evidence of [the plaintiff's supervisor]'s off-duty work at a lounge some thought to be a 'strip club' is too irrelevant and prejudicial under Rule 403. Thus, evidence is therefore excluded." 2005 WL 8156263, at *3 (S.D. Fla. 2005). Again, here, Dave's drug use and social and dating habits directly bear on not only the core issues in this case, but on plaintiffs' own portrayal of Dave. Thus, unlike in *Sellers, Nobles,* and *Hall*, the evidence is not only highly probative, but its prejudicial effect does not substantially outweigh that probative value. The Court should refuse to exclude this evidence.

**G.  The Court Should Not Exclude Evidence of Defendant's Childhood Abuse and Trauma**

Lastly, plaintiffs ask the Court to exclude evidence "about matters related to traumatic events that allegedly occurred during [defendant's] childhood" because "[s]uch matters are irrelevant to the issues of this case (which involve Dr. Wright's actions during adulthood) and are highly prejudicial to Plaintiffs." Motion at 21. Throughout this litigation, plaintiffs have constantly put defendant's character at issue, have focused on a number of alleged inconsistencies in statements he has made throughout the span of several years, and have pointed to defendant's distancing from bitcoin in 2010, all in professed support of their case. Defendant intends to offer evidence of the childhood trauma he suffered to place his character in context and explain his conduct, both before and during this litigation, including his disappearance as Satoshi Nakamoto in 2010, which was brought on by defendant's discovery that his creation—bitcoin—had been used to facilitate abuse similar to what he had suffered as a child. This evidence is highly probative and is not substantially outweighed by the potential prejudice to plaintiffs if it is allowed.

Plaintiffs cite a single case, *Johnson v. Jennings*, 772 Fed. Appx. 822 (11th Cir. 2019), for the proposition that "Rule 403 guards against making decisions on an emotion [sic] basis and finding that details of plaintiff's son's medical issues were unfairly prejudicial." Motion at 22. But the *Johnson* court did allow evidence of the plaintiff's son's medical condition; what the court held was properly excluded was further, cumulative and more detailed references to it:

> We cannot say the District Court committed a clear error of judgment in excluding the evidence on this basis. *Cf., e.g.*, Fed. R. Evid. 403 advisory committee's note to proposed rules (stating that Rule 403 guards against, among other things, 'decision on an improper basis, commonly, though not necessarily, an emotional one'). Defendants conceded that K.J. had a disability. And the district judge permitted reference to K.J.'s 'extraordinary gastrointestinal issues and frequent bathroom usage.' The evidentiary value of *further* references to K.J.'s stoma and to the details of her bathroom needs is slight, and the danger of unfair prejudice is great.

*Johnson*, 772 Fed. Appx. At 826 (emphasis in original). Here, defendant does not seek to introduce the kind of detailed and cumulative evidence regarding his childhood abuse and trauma—he merely intends to present evidence to meet plaintiffs' allegations and evidence regarding his character and behavior both before and during this litigation, including supposed inconsistent statements and his disappearance as Satoshi Nakamoto in 2010, all of which have

17

been put at issue by the plaintiffs, not by defendant. Thus, because the evidence is relevant and there is no risk of prejudice to plaintiffs, the Court should refuse to exclude it at this time.

## CONCLUSION

As discussed above, plaintiffs have not met their burden for obtaining the extraordinary relief of exclusion of the seven categories of evidence included in the Motion. The Court should deny the Motion and take up the admissibility of that evidence at trial.

*Attorneys for Dr. Craig Wright*

RIVERO MESTRE LLP
2525 Ponce de Leon Boulevard, Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: amcgovern@riveromestre.com
Email: zkass@riveromestre.com
Email: receptionist@riveromestre.com

By: s/ Amanda McGovern
AMANDA MCGOVERN
Florida Bar No. 964263
ANDRES RIVERO
Florida Bar No. 613819
SCHNEUR KASS
Florida Bar No. 100554

## CERTIFICATE OF SERVICE

I certify that on May 22, 2020, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF or by U.S. Mail.

/s/ Amanda McGovern
Amanda McGovern
Florida Bar No. 964263