**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC

      plaintiffs,

v.                                                                                    **Case No. 9:18-cv-80176 (BB/BR)**

CRAIG WRIGHT,

      defendant.

_____/

**DR. CRAIG WRIGHT'S OPPOSITION TO**
**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs Ira Kleiman ("I.K.") and W&K Info Defense Research LLC ("W&K") have moved for summary judgment on Dr. Wright's affirmative defenses (the "Motion"). The Court should deny that motion for the following reasons:

*First*, plaintiffs argue that their claims are not time-barred because there supposedly is no new evidence to demonstrate that they had notice of the Australian lawsuits until after the judgments in those lawsuits were entered. This argument ignores Dave Kleiman's ("D.K.") business partner's testimony that he acknowledged receipt of the envelope containing service of the Australian lawsuits on October 10, 2013, almost a month before judgment was entered. That Notice expressly notified W&K that its rights could be affected by the Australian lawsuits and that W&K ought to appear if it cared about the outcome of the Australian lawsuits. Under the Hague Convention, this constituted perfected service. Even if hadn't, W&K's admitted receipt of the Notice of action from the Supreme Court of New South Wales provided plaintiffs with legally sufficient notice of the Australian lawsuits. In the face of this indisputable evidence, Plaintiffs' persistent claim of no notice, and now, no evidence of notice, is frivolous.

*Second*, plaintiffs argue that the statute of frauds does not bar their claims based on a purported oral partnership between D.K. and Dr. Wright from 2008 to 2011. Despite expressly alleging that this supposed oral partnership was intended to (and did) last for three years, plaintiffs now argue that it was "possible" for the purported oral partnership to last one year or less. This argument ignores the "intent of the parties" standard under Florida law, as well as plaintiffs' express allegation that the purported oral partnership lasted for three years, from 2008 through 2011. *See* Second Amended Complaint (the "SAC") ¶ 67. Moreover, plaintiffs are now arguing that  D.K. (1) agreed to develop bitcoin as a purported "secretive" project, and (2) promised he would not access his purported bitcoin fortune for a period of time that far exceeds a year, which is supposedly why he couldn't afford to pay his cell phone or save his house from foreclosure. This claim is a complete fabrication that is not supported by any evidence. Even if plaintiffs could prove the existence of an oral partnership (they can't), and prove that it was a "secretive" project (they can't do this, either), D.K.'s purported agreement to not access his purported bitcoin for several years also would put the purported oral partnership squarely within the statute of frauds.

*Third*, Plaintiffs argue that res judicata cannot bar their claims. This argument is based solely on their indisputably false claim that W&K was not served in the Australian lawsuits. As

we further demonstrate below, that claim is patently false. Plaintiff I.K. had timely notice of the Australian lawsuits and knew that W&K had been timely served more than four years before plaintiffs filed this action. Consequently, there was no "extrinsic fraud" in the Australian lawsuits as a matter of law, and it insults the reader's intelligence for plaintiffs to claim they somehow were "prevented" from appearing in those lawsuits, when the evidence demonstrates that they had timely notice. At bottom, plaintiffs' false and frivolous claim that W&K had no notice of Australian lawsuits constitutes an "intrinsic fraud" on **this** Court.[1]

*Fourth*, plaintiffs argue that they're entitled to summary judgment on Dr. Wright's estoppel defenses. Plaintiffs claim they are not subject to judicial or equitable estoppel because they never took inconsistent positions. This claim is false. Plaintiff I.K.'s state-court action sought a mandatory, permanent injunction against D.K.'s best friends and **actual** business partners for the return of D.K.'s purported bitcoin.. In it, I.K. alleged that D.K.'s purported bitcoin was D.K.'s personal property, not the property of any purported oral partnership. Plaintiffs are judicially estopped from taking a contradictory position in this case. Moreover, in an effort to keep this case in federal court, plaintiffs argued that their dismissed trade-secret claims arose from the same nucleus of operative fact as their remaining claims. That argument required dismissal of their remaining claims as pre-empted by Florida' Uniform Trade Secret Act, and estops plaintiffs from taking a contradictory position now.

*Fifth*, plaintiffs argue that Dr. Wright has abandoned several of his defenses that are based on plaintiff I.K.'s acceptance of shares in Coin-Exch. Plaintiffs make this argument because they claim Dr. Wright testified that I.K.'s acceptance of those shares was not meant to be a "payment" for D.K.'s purportedly mined bitcoin. Plaintiffs' argument misses the point— shares in Coin-Exch never had anything to do with "paying" D.K. for "mining" bitcoin. Further, plaintiffs alleged that the Coin-Exch shares were worthless, and re-incorporated that allegation in each claim. Because plaintiffs relied (and still rely) on that allegation, Dr. Wright has the right to assert affirmative defenses proving that he provided I.K. with shares in Coin-Exch.

We further demonstrate below why plaintiffs' partial summary judgment motion should be denied.

---

[1] Dr. Wright reserves all rights to pursue appropriate relief for plaintiffs' fraud on **this** Court.

1.    **Plaintiffs' Claims Are Time-Barred**

Plaintiffs demand summary judgment on Dr. Wright's statute of limitations defense, making the demonstrably false claims that (a) they weren't aware of Dr. Wright's purported conduct "underlying their claims more than four years prior to the filing of this lawsuit[,]" Motion at 20, (b) the statute of limitations should be tolled through application of the "fraudulent concealment" doctrine, *id*. at 21, and (c) Dr. Wright should be equitably estopped from asserting a statute of limitations defense because his purported actions were the reason for plaintiffs' almost five years of delay in filing this action, *id*. at 22. These arguments are based on misstatements of the law, facts, and evidence in the record.

A.    *The Delayed Discovery Doctrine Cannot Apply to Plaintiffs' Claims*

Plaintiffs assert that Dr. Wright "has adduced no other record evidence that Plaintiffs were aware of Defendant's conduct underlying their claims more than four years prior to the filing of this lawsuit." Mot. at 20. Apart from being sanctionably false in view of the indisputable evidence that W&K received timely notice of the Australian lawsuits, this argument boils down to a frivolous demand for the Court to apply the "delayed discovery doctrine" to plaintiffs' claims, even those to which the rule never could apply as a matter of Florida law. *See Patten v. Winderman*, 965 So. 2d 1222, 1224 (Fla. 4th DCA 2007) ("The 'delayed discovery' doctrine generally provides that a cause of action does not accrue until the plaintiff either knows or ***reasonably should know*** of the tortious act giving rise to the cause of action.") (citing *Hearndon v. Graham*, 767 So.2d 1179, 1184 (Fla. 2000)). Plaintiffs (like these two) that received timely notice to appear in a lawsuit about which they complain years later may not invoke this rule, because they knew or should have known about the acts complained of when those acts allegedly occurred. In short, this rule never could apply to any of plaintiffs' claims, because "discovery" was not "delayed" as a matter of law.

Moreover, and also as a matter of law, Fla. Stat. § 95.11, there never can be "delayed discovery" of claims for conversion (Count I), unjust enrichment (Count II), breach of fiduciary duty (Count V), breach of partnership duties of loyalty and care (Count VI), civil theft (Count VIII), or permanent injunction (Count IX). *E.g., Davis v. Monahan*, 832 So. 2d 708, 709 (Fla. 2002) (citing Fla. Stat. § 95.110); *Gomez v. BankUnited*, 2011 WL 114066, at *5 (S.D. Fla. 2011) ("Moreover, the Florida Supreme Court has held that the delayed discovery rule does not

4

apply to claims for breach of fiduciary duty, civil theft, conversion or unjust enrichment.")
(citing *Monahan*, 832 So. 2d at 709).

Instead, "[t]he Florida Legislature has stated that a cause of action accrues or begins to run when the last element of the cause of action occurs." *Monahan*, 832 So. 2d at 709 (citing Fla. Stat. § 95.031(1)) ("A cause of action accrues when the last element constituting the cause of action occurs."); *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294, 1309 (S.D. Fla. 2012), *aff'd*, 714 F.3d 1234 (11th Cir. 2013) ("[T]his Court must apply the general rule that 'the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues."). Therefore, "[a]s the Florida Supreme Court stated, '[t]o hold otherwise would result in this Court rewriting the statute, and, in fact, obliterating the statute.'"). *Id.* (citing *Monahan*, 832 So. 2d at 709) (Fla. 2002)).

As to plaintiffs' claims for conversion, unjust enrichment, breach of fiduciary duty, breach of partnership duties of loyalty and care, civil theft, and permanent injunction, the last element (damages) occurred when the purported taking, unjust enrichment, or breach occurred. *E.g., Gomez*, 2011 WL 114066, at *5 ("[T]he last element of the cause of action of conversion accrued when Molina 'stole the money' from Gomez.");[2] *Small Bus. Admin. v. Echevarria*, 864 F. Supp. 1254, 1260 (S.D. Fla. 1994) (Conversion claim accrues when alleged taking occurs.); *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294, 1310 (S.D. Fla. 2012), *aff'd*, 714 F.3d 1234 (11th Cir. 2013) (Unjust enrichment claim accrues when alleged enrichment occurs.); *Ducat Fla., LP v. Wells Fargo Bank, N.A.*, 2013 WL 6667038, at *6 (S.D. Fla. 2013) (Breach of fiduciary duty claim accrues when alleged breach occurs.).

Here, after two years of discovery, plaintiffs still cannot identify *when* the purported "theft" of bitcoin occurred, and they still have no evidence of *how* that purported "theft" occurred. In their Statement of Undisputed Material Facts ("Pls. SMF"), plaintiffs state—with no evidence—that the purported "theft" had to have occurred at some unspecified time after D.K.'s

---

[2] Damages also are calculated as of the moment an alleged taking or "theft" occurred. *E.g., Skinner v. Pinney*, 19 Fla. 42, 51 (1882) ("[T]he rule of damages was the value of the property at the time of conversion with interest, and not the highest price between the time of conversion and the trial with interest . . . ."); *Exxon Corp. v. Ward*, 438 So. 2d 1059, 1060 (Fla. 4th DCA 1983) ("It is well settled in Florida and other jurisdictions that the measure of damages in an action for conversion is the fair market value of the property at the time of the conversion plus legal interest to the date of the verdict.").

death in April 2013 merely because that is what they *alleged.* Pls. SMF ¶ 40 ("There is no evidence that Plaintiffs' Civil Theft claim accrued any earlier than Dave Kleiman's death in April 2013 because it specifically alleges theft from Dave Kleiman's estate and/or W&K after Dave Kleiman's death.") (citing SAC at 46).[3] Perfect circularity is praised in geometry. In legal argument, not so much.

Moreover, plaintiffs also alleged that the purported three-year oral partnership between D.K. and Dr. Wright ended in 2011. SAC ¶ 67 ("The exact structure of their joint mining activities, intellectual property development, and 'partnership' from c. 2008 *until February 2011* requires discovery to fully reveal.") (emphasis added); *id*. ¶ 197 ("*From c. 2008 until at least the creation of W&K in 2011*, Craig and Dave associated to carry on as co-owners of a business for profit to create Bitcoin, mine bitcoins, and create other block chain intellectual property.") (emphasis added). Any claims that might have arisen from the purported oral partnership had to have accrued by February 2011, which is when plaintiffs alleged that the purported oral partnership ended. *See Tate v. Clements*, 16 Fla. 339, 356 (1878) ("The light in which we are disposed to consider this question is that after a dissolution of a partnership, no partner can create a cause of action against the other partners, except by a new authority communicated to him for that purpose.") (citing *Bell v. Morrison*, 26 U.S. 351, 373 (1828)).

Therefore, any claims based on the purported oral partnership had to have accrued by the time it allegedly was dissolved in February 2011 (more than two year before D.K.'s death), which means any such claims expired in 2015, long before plaintiffs filed this case. *E.g., Levy v. Baptist Hosp. of Miami, Inc.*, 210 So. 2d 730, 731 (Fla. 3d DCA 1968) ("The personal representative receives no more and no less than the decedent would have had he lived, i.e. subject to the strength and weakness of the decedent's cause of action had he survived[,]" and that "the proper period of limitation here is the one applicable to such an action if it had been brought by the decedent, himself, had he survived."). Further, it is important to note that D.K. was alive for more than two years after the purported three-year oral partnership allegedly was dissolved sometime before February 2011, and there is *zero* evidence that D.K. ever complained *to anyone* that (a) he was owed anything from a purported oral partnership, (b) Dr. Wright

---

[3] Plaintiffs fail to cite any paragraph of the SAC, let alone any evidence, to support this assertion.

breached any duties to this purported oral partnership, or (c) Dr. Wright stole anything from him or the purported oral partnership. Def. SMF [D.E. 488] ¶¶ 1-12.

In any event, the latest possible date that plaintiffs' causes of action accrued was on November 6, 2013, when the Australian judgments were entered. SAC ¶ 130 ("On November 6, 2013, judgments appear to have been entered for both Australian claims."). Plaintiffs alleged that these judgments were the means by which Dr. Wright wrongfully obtained W&K's purported intellectual property. *Id*. ¶¶ 117-131. Therefore, for all of plaintiffs' claims other than their statutory civil theft claim, the latest date on which plaintiffs could assert a cause of action based on the Australian judgments was four years from the date of the purported "taking," i.e., November 6, 2017, or more than three months before plaintiffs filed this action.

**B.      There Is No Evidence of "Fraudulent Concealment" to Toll the Statute of Limitations**

Plaintiffs bear the burden of proving that Dr. Wright engaged in fraudulent concealment. *E.g., Dee Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 832 (11th Cir. 1999). This is an impossible burden in view of plaintiffs' indisputable, timely receipt of notice of, and advice to appear in, the Australian lawsuits, and the fact that plaintiff I.K. already had litigation counsel in February 2014 (only 90 days after entry of the Australian Judgments), and claims "work product" protection for notes from that time period.

To prove fraudulent concealment, a plaintiff must put on evidence of: "(1) successful concealment of the cause of action; (2) fraudulent means to achieve that concealment; and (3) that the plaintiff exercised reasonable care and diligence in seeking to discover the facts that form the basis of the claim." *Razor Capital, LLC v. CMAX Fin. LLC*, 2017 WL 3481761, at *4 (S.D. Fla. 2017). Moreover, "fraudulent concealment goes beyond mere non-disclosure, and must constitute active and willful concealment." *Id*. at *5 (citing *Licul v. Volkswagen Group of Am., Inc.*, 2013 WL 6328734, at * 6 (S.D. Fla. 2013). Plaintiffs have no evidence of any of this.

**(1)      There Is No Evidence That Dr. Wright Engaged in "Active and Willful Concealment"**

The undisputed facts foreclose plaintiffs' fraudulent concealment theory, because there is no evidence that Dr. Wright engaged in "active and willful concealment." *See Razor Capital,* 2017 WL 3481761, at *4. As for the Estate's claims, as demonstrated above, plaintiffs allege that the purported oral partnership was wound up in 2011. For the next two years, D.K. never said anything to anyone even hinting that he'd ever mined any bitcoin, owned a large amount of

bitcoin, had any experience with bitcoin or blockchain related technology, or had a business partnership with Dr. Wright related to bitcoin. Def. SMF ¶ 1-12. Any claims arising from the purported oral partnership had to have accrued by the time it allegedly was dissolved in 2011, and plaintiffs never could prove that that Dr. Wright "actively and willfully" concealed those claims for the next two years in which D.K. never said anything to anyone about any such claims. *See Levy v. Baptist Hosp. of Miami, Inc*., 210 So. 2d 730, 731 (Fla. 3d DCA 1968) ("The personal representative receives no more and no less than the decedent would have had he lived, i.e., subject to the strength and weakness of the decedent's cause of action had he survived. . . . "[T]he proper period of limitation here is the one applicable to such an action if it had been brought by the decedent, himself, had he survived.").

As for W&K, it was served with process in the Australian lawsuits (and plaintiff I.K. knew it), which wholly undermines their fatuous assertion that Dr. Wright "actively and willfully" concealed any claims arising from anything that happened in those lawsuits. Def. SMF ¶¶ 34-36. Under the Hague of Convention, as courts of this District repeatedly have held, service of process is effectuated by international mail, so long as the "destination country" does not object to Article 10(a) of the Hague Convention, which permits service of judicial documents through postal channels. *E.g., Ghostbed, Inc. v. Casper Sleep, Inc.*, 315 F.R.D. 689, 692 (S.D. Fla. 2016) ("[S]everal other judges in this district have also recognized, where the destination country does not object, service to individuals abroad can be made via postal channels (such as international mail) under Federal Rule of Civil Procedure 4(f)(1).").[4]

"Both Australia and the United States are signatories [] to the Hague Convention." *Norden-Powers v. Beveridge*, 125 F. Supp. 2d 634, 637 (E.D.N.Y. 2000). Neither country objects to service under Article 10(a) of the Hague Convention, which means that the Supreme Court of New South Wales' service of the Notice to W&K's official mailing address constituted perfected service of process.

---

[4] Citing *Leon v. Continental AG,* 2016 WL 1388950, at *2 (S.D. Fla. 2016) (King, J.)). (allowing service of process by mail to Japan); *Tracfone Wireless v. Hernandez,* 126 F.Supp.3d 1357, 1362 (S.D. Fla.2015) (Martinez, J.) *Barriere v. Juluca,* 2014 WL 652831, at *2-3 (S.D. Fla. 2014) (Moreno, J.); *Forth v. Carnival Corp.,* 2013 WL 1840373 (S.D. Fla. 2013) (Seitz, J.); *TracFone Wireless, Inc. v. Unlimited PCS, Inc.,* 279 F.R.D. 626, 630–31 (S.D. Fla. 2012) (Ungaro, J.); *TracFone Wireless, Inc. v. Bequator Corp., Ltd.,* 717 F. Supp. 2d 1307, 1309 (S.D. Fla. 2010) (Hoeveler, J.); *Lestrade v. U.S.,* 945 F. Supp. 1557, 1558-59 (S.D. Fla. 1996) (Hoeveler, J.); *TracFone v. Does,* 2011 WL 4711458, at *2 (S.D. Fla. 2011).

The Notice itself puts the lie to plaintiffs' false claim that the Notice provided insufficient information. Plaintiffs cannot blink away  the Notice's express statement that on October 30, 2013, at 9 a.m., the case would be "listed for Directions" in the "Supreme Court-Civil, Supreme Court Sydney Court 9C Queens Square Sydney," its warning that "[i]f you do not appear at Court, this matter may be dealt with in your absence," or its direction to other sources (including an internet website link) for further information and "[l]isting details for the cases." Def. MSJ ¶¶ 34, 35.

The Notice was addressed and sent via air mail, in an official Supreme Court of New South Wales envelope, to W&K's and D.K.'s official mailing address. Def. SMF ¶ 33. D.K.'s close friend and ***actual*** business partner, Carter Conrad, testified that the Notice was received at W&K and D.K.'s mailing address and that when saw it, he marked it as received on October 10, 2013. *Id.* ¶ 35. Thus, service was timely made, received and acknowledged. Mr. Conrad also testified that D.K. used W&K's mailbox for ***all of his business affairs*** and some personal matters. *Id.* ¶ 29. Additionally, on all of D.K.'s emails, including emails he exchanged with I.K., the signature blocks list as his address the same mailbox where the Notice was sent, received and acknowledged. *Id.* ¶ 31.[5]

Thus, the Notice was timely received in D.K.'s mailbox, expressly warned W&K that if it chose not to appear it did so at its own peril, and provided an internet link for further information about the Australian lawsuits. This is the exact opposite of active concealment. *E.g., Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1115 (S.D. Fla. 2019) ("[P]ublic disclosures are the opposite of fraudulent concealment . . . . [t]hus, even when viewing Plaintiffs' allegations in the light most favorable to them, ***the allegations do not even amount to 'nondisclosure'— which itself is legally insufficient to toll the statute of limitations*** under Florida law.") (citations omitted) (emphasis added). There is absolutely no evidence that Dr. Wright engaged in any "active and willful concealment" of plaintiffs' purported claims.

> (2)  *There Is No Evidence That Dr. Wright Used "Fraudulent Means to Achieve" Purported Concealment of Any Alleged Claim*

---

[5] D.K.'s other ***actual*** partner, Patrick Paige discussed this Notice with I.K. in 2016, and even though I.K. failed to check D.K.'s mail, breaching an obvious, fundamental fiduciary duty as personal representative of his brother's estate, he knew at least two years before filing this lawsuit that timely Notice had been received. *Id.* ¶ 24. Mr. Paige also asked I.K. to take over control of W&K and D.K.'s mailbox, which ***he refused to do.*** *Id.* ¶¶ 31-32.

Because there is not and cannot be any evidence that Dr. Wright "actively and willfully" concealed anything, the Court should waste no time on plaintiffs' name calling and character assassination in arguing that Dr. Wright used "fraudulent means" to accomplish this non-concealment. In a bravura show of misdirection and ipse dixit, plaintiffs accuse Dr. Wright of using "fraudulent means" in furtherance of (non) concealment based on supposedly "irrefutable evidence regarding Defendant's deception." *See* Mot. at 21. Plaintiffs fail to mention that none of this supposed "evidence" has anything to do with what they must (but can't) prove to toll any limitations period. Conclusory labels don't get it done. *Licul v. Volkswagen Grp. of Am., Inc.*, 2013 WL 6328734, at *7 (S.D. Fla. 2013) ("Because Plaintiffs have pled only labels and conclusions to support their theory of fraudulent concealment, tolling of the applicable limitations period is inappropriate . . . .") (citing Fla. Stat. § 95.11).

Further, during his second deposition, when questioned about his allegations of fraud, plaintiff I.K. could not articulate any way in which he relied on Dr. Wright's purported statements or how those statements induced him to do anything:

> Q:     The next paragraph—let me ask you. What were you induced in doing and relying on Craig's false statements?
>
> MR. FREEDMAN: Objection.
>
> A:     Again my attorneys assisted me in drafting this.
>
> Q:     That doesn't answer my question. My question is you're saying that Craig made false statements and induced you into doing certain things. What did he induce you into doing?
>
> A:     *I guess—well, I don't want to speculate. I don't know*.

I. Kleiman January 10, 2020 Depo. Tr. [D.E. 488-13] at 164:7-19 (emphasis added).

Plaintiffs' argument is puffed-up, hyperbolic rhetoric, untethered to reality, and contradicted by I.K.'s own testimony. Their theory that Dr. Wright used fraudulent means to achieve (non) concealment is legally insufficient for the following reasons:

(1)     Plaintiffs argue that Dr. Wright did not contact the Kleiman family until "early 2014." Mot. at 21. So what? Dr. Wright's contacting I.K. or the Kleiman family when he did never could amount to fraudulent concealment because "fraudulent concealment goes beyond mere non-disclosure, [it] must constitute active and willful concealment." *Razor Capital*, 2017 WL 3481761, at *4; *Heuer v. Nissan N. Am., Inc.*, 2017 WL 3475063, at *3 (S.D. Fla. 2017)

("Allegations of 'inaction and nondisclosure are wholly insufficient to supply the affirmative steps taken to prevent [the] Plaintiffs from discovering the basis of their claims that would be necessary before tolling based on fraudulent concealment becomes appropriate.'") (quoting *Licul v. Volkswagen Grp. of Am., Inc.*, 2013 WL 6328734, at *6 (S.D. Fla. 2013)). Of course, plaintiffs already were on notice of the Australian lawsuits from timely, valid, perfected and acknowledged service of process. Their decision to sit on their hands was theirs alone.

      (2)     Plaintiffs argue that Dr. Wright purportedly "lulled" I.K. into not filing his claims by promising I.K. shares in a speculative, start-up company (Coin-Exch), which Dr. Wright believed would someday be worth millions, but ultimately was liquidated. Mot. at 21-22. This argument cannot support a finding of fraudulent concealment because plaintiffs concede, ***as an undisputed fact***, that Dr. Wright's giving I.K. shares in Coin-Exch was not connected to plaintiffs' claims regarding bitcoin or intellectual property. Thus, the giving and receipt of Coin-Exch. shares could not have fraudulently concealed plaintiffs' claims. Further, I.K. questioned whether shares in a start-up company were worthless shortly he received them,  demonstrating disbelief instead of being "lulled." *See* D.E. 488 at ¶ 45. Finally, Dr. Wright's hopeful belief about the future value of a start-up company was "mere puffery," which is not actionable as a matter of law. *E.g., IBEW Local 595 Pension & Money Purchase Pension Plans v. ADT Corp.*, 660 F. App'x 850, 857 (11th Cir. 2016) (Defendants' statements that a stock repurchase plan was "thoughtful," "effective," and "optimal," were "mere puffery," not actionable fraud.) (citing *Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1029 (11th Cir. 2003) (comment regarding "strong performance" was nonactionable, mere puffery).

      (3)     Plaintiffs argue that Dr. Wright, "unbeknownst to the Kleiman family," purportedly removed D.K. as W&K's registered agent after he allegedly "robbed" W&K of its intellectual property. Mot. at 21-22. Plaintiffs cannot point to a single document (because there is none) that would support this statement. Further, more than a year before he died, D.K. allowed W&K to be administratively dissolved after the sole reason for its existence ended, when the Department of Homeland Security ("DHS") rejected its proposal based on intellectual property that Dr. Wright had created. Finally, Dr. Wright did not "rob" W&K of anything—the intellectual property that was the subject of the Australian lawsuits is the same intellectual property Dr. Wright emailed to D.K. when W&K was created, and also is the same intellectual

property that D.K. submitted to the DHS in February 2011.[6] The intellectual property is described in white papers attached to that email, all of which list Dr. Wright as sole author. Dr. Wright indisputably created that intellectual property, allowed W&K to use it solely for the proposal to DHS, and the Australian lawsuits properly sought a declaration that Dr. Wright was the owner and creator of that intellectual property.

After making these arguments, plaintiffs contend that the statute of limitations should be tolled until October 9, 2015—more than four years after plaintiffs claim D.K.'s unprovable, purported oral partnership with Dr. Wright was dissolved, nearly three years after W&K was served in the Australian lawsuits, and a year and a half after I.K. engaged litigation counsel—because I.K. supposedly then realized that "he would likely have to sue." Mot. at 22. Even if this claim were true, voluntarily not filing an action while having knowledge of the underlying facts does not and cannot toll a limitations period under any theory, let alone a theory of fraudulent concealment. *E.g.*, *Hall v. Burger King Corp.*, 912 F. Supp. 1509, 1536 (S.D. Fla. 1995) ("Where, as here, the evidence establishes that a plaintiff was in fact aware of the facts underlying the complaint at a time beyond the limitations period, fraudulent concealment will not serve to toll a statute."). In sum, even if the Court were to reach the issue of "fraudulent means" where there was no failure to disclose, let alone active concealment, nothing in plaintiffs' Motion, and no evidence in the record, ever could demonstrate that Dr. Wright used fraudulent means to achieve "fraudulent concealment." Plaintiffs' claims are time-barred and summary judgment is warranted.

> (3)     *Plaintiffs Failed To "Exercise Reasonable Care and Diligence"*

Fraudulent concealment requires plaintiffs to prove they "exercised reasonable care and diligence in seeking to discover the facts that form the basis of the claim." *Razor Capital*, 2017 WL 3481761, at *5. This they failed to do, which is another reason why no limitations period may be tolled in this case, because plaintiff I.K., as personal representative of D.K.'s Estate, failed to exercise reasonable care and diligence as a matter of law.

First, as demonstrated in Dr. Wright's summary judgment motion, and again above, W&K was timely served with process, and provided with express Notice in the Australian

---

[6] Notably, the proposal that D.K. submitted to DHS describes W&K as a "joint venture between a U.S. vet enterprise and Australian research company." This further demonstrates that diversity jurisdiction does not exist and that I.K. is not W&K's sole member.

lawsuits. Breaching his fiduciary duties to his brother's estate, I.K. deliberately avoided checking W&K's and D.K.'s mail at the very time plaintiffs falsely and frivolously claim to have been prevented from appearing the Australian lawsuits. Plaintiffs' willful ignorance will not be rewarded by Florida law. They are charged with actual knowledge and timely notice of the Australian lawsuits because D.K.'s **actual** business partner **acknowledged timely service of process** by the Supreme Court of New South Wales. As a fiduciary to the Estate, plaintiff I.K. indisputably had a duty to check D.K.'s mail. *See* Fla. Stat. § 733.602(1); *Vazquez v. Caesar's Paradise Stream Resort*, 2010 WL 11483946, at *3 (M.D. Pa. 2010) ("A litigant does not toll the statute of limitations simply by not opening her mail, whether that is because she is out of the country, has moved, or simply elects not to receive her mail.").

Second, in further breach of his fiduciary duties to his brother's estate, I.K. indiscriminately destroyed D.K.'s work papers and permanently erased some of his hard drives. Def. SMF ¶ 25. He committed these affirmative acts of destruction despite claiming that D.K. told him in 2009 that he was working on the creation of a digital currency that would be "bigger than Facebook." *Id*. ¶¶ 22, 25. Apart from the fact that plaintiffs' entire cases rests on an inadmissible, double-hearsay, purported statement by a dead man, I.K. also never sought any professional help to access those of D.K.'s electronic devices that he didn't erase, and never made any attempt to access several of D.K.'s email accounts. *Id*.

In view of what I.K. knew (and claims to have known) about D.K.'s affairs and projects, his failure to check the mail, destruction of D.K.'s papers and electronic devices, and his failure even to attempt to access D.K.'s other emails and electronic devices conclusively foreclose the contention that plaintiffs exercised "reasonable care and diligence in seeking to discover the facts that form the basis of [their] claim[s]." *Razor Capital*, 2017 WL 3481761, at *5.

C.      *"Equitable Estoppel" Cannot Save Plaintiffs' Time-Barred Claims*

Plaintiffs also argue that Dr. Wright is "equitably estopped" from asserting a statute of limitations defense, because Dr. Wright's behavior somehow caused I.K.'s more than five-year delay in filing this action. Mot. at 22-23. This "catch-all" theory is the thinnest of thin soup, because it doesn't even exist under Florida law, and plaintiffs have zero evidence to raise a jury question on this or any other tolling theory. Florida has enumerated bases for tolling limitations periods, none of which include "equitable estoppel."

*"[I]n order for* any doctrine, such *as equitable tolling, to toll a Florida statute of limitations, it must be included in the exclusive list of* conditions set forth in Florida's tolling statute, *section 95.051(1)*." *Mattera v. Nusbaum*, 2019 WL 1116192, at *5 (S.D. Fla. 2019) (citing *HCA Health Serv. of Fla., Inc., v. Hillman*, 906 So. 2d 1094, 1100 (Fla. 2d DCA 2004) (emphasis added)). The list of Fla. Stat. § 95.051(1) does not include equitable tolling, and therefore, "[u]nder Florida law, [] Plaintiff[s] [are] barred from relying on equitable tolling in this case." *Mattera,* 2019 WL 1116192, at *5 (citing *Lopez v. Geico Cas. Co.,* 968 F. Supp. 2d 1202, 1207 (S.D. Fla. 2013) (dismissing claim as time-barred because "95.051(2) expressly precludes use of any tolling provision not listed")); *Watson v. Paul Revere Life Ins. Co.,* 2011 WL 5025120, at *4 (S.D. Fla. 2011); *Socas v. Northwestern Mut. Life Ins. Co.,* 829 F. Supp. 2d 1262, 1265 (S.D. Fla. 2011) ("[I]n Florida, the application of equitable tolling is limited to administrative proceedings."); *Pierson v. Orlando Reg'l Healthcare Sys., Inc.,* 2010 WL 1408391, at *15 (M.D. Fla. 2010) ("Equitable tolling . . . is not available in civil actions in Florida.")). In sum, plaintiffs' "equitable estoppel" theory is frivolous.[7] It should be rejected as a matter of law.

D.     **The Doctrine of Laches Bars Plaintiffs' Claims for Equitable Relief**

Plaintiffs' claims for equitable relief, including their claimc for unjust enrichment and permanent injunction, are barred by laches:

> Laches is principally a question of the inequity of permitting a claim to be enforced by equitable remedies in the face of a change in the conditions or relations of the parties occasioned by a delay that works a disadvantage to him against whom equitable relief is sought. When a court of equity sees negligence on one side and injury therefrom on the other, it is ground for denial of equitable relief.

*See Sharrow v. City of Dania*, 180 So. 18, 21 (1938). Under Florida Statute § 95.11(6), the time period for bringing an equitable claim or seeking equitable relief is the limitations period for a legal action concerning the same subject matter:

> Laches shall bar any action unless it is commenced within the time provided for legal actions concerning the same subject matter regardless of lack of knowledge by the person sought to be held liable that the person alleging liability would

---

[7] Plaintiffs' assertion of this non-existent "equitable estoppel" tolling theory violates Rule 11, as well as Fla. Stat. § 57.105. Dr. Wright reserves all rights

assert his or her rights and whether the person sought to be held liable is injured or prejudiced by the delay.

Fla. Stat. § 95.11(6).

In arguing for summary judgment on Dr. Wright's laches defense, plaintiffs again misrepresent what Florida law requires, arguing that there is a non-existent requirement for Dr. Wright to show "detrimental reliance" to assert laches as a defense. Mot. at 23. This argument contradicts Fla. Stat. § 95.11(6), which expressly states that laches can apply "regardless of . . . whether the person sought to be held liable is injured or prejudiced by the delay."

In support of their frivolous "reliance" theory, plaintiffs cite *In re Checking Account Overdraft Litig.*, 2013 WL 5774287, at \*3 (S.D. Fla. 2013), arguing that the court there granted summary judgment on a laches defense because there were no "facts demonstrating that [defendant] detrimentally relied on any action or inaction of plaintiffs." Mot. at 23. Plaintiffs fail to mention that the *BancorpSouth* court was applying the law of Arkansas, not Florida.[8]

The Court should decline plaintiffs' invitation to error and deny their request for summary judgment on Dr. Wright's laches defense.

## 2.      Plaintiffs' Claims Are Barred by the Statute of Frauds

Plaintiffs' motion for summary judgment on Dr. Wright's affirmative defense of the statute of frauds is foreclosed by their own allegations. In their SAC, plaintiffs alleged that the purported oral partnership was intended to, and did, last for three years, from 2008 through 2011. SAC ¶ 67. Under Florida law, that is the end of the matter. Plaintiffs now argue that, even though the partnership lasted for three years, it "might have" ended within a year. Mot. at 26. They argue that "[t]here is no evidence that the [Satoshi Nakamoto] partnership between Defendant and Dave Kleiman to create and mine bitcoin required performance lasting more than a year." *Id.* at 27. This is nonsense. A purported oral contract allegedly intended to last three years, which also is alleged to have lasted three years, violates Florida's statute of frauds, period, full stop. *See* SAC ¶ 67 (alleging oral partnership to mine bitcoin for three years, from 2008-2011); Fla. Stat. § 725.01 ("No action shall be brought . . . upon any agreement that is not to be performed within the space of 1 year from the making thereof . . . ."); *Saeme v. Levine*, 502 F. App'x 849, 853

---

[8] Plaintiffs' argument for a non-existent "reliance" element to a Florida laches defense (which is foreclosed by statute), and their reliance on a decision applying Arkansas law (which they imply was based on Florida law) violate Rule 11 and Fla. Stat. § 57.105. Dr. Wright reserves all rights.

(11th Cir. 2012) (oral partnership agreement contemplating "a profitable business venture" violated the statute of frauds).

The "possibility of performance in one year" defense to the statute of frauds only can apply when a purported oral contract has no intended, definite term and its alleged subject matter also was capable of performance in one year, such as a purported oral contract for natural childbirth lessons, or tutoring for an upcoming exam. Under Florida law, a purported oral contract claim is barred by the statute of frauds where the parties "intended" more than one year of performance, even if the purported contract did not "require" more than one year of performance. Plaintiffs' position is rather ironic, since they have zero evidence of any such oral contract having ever existed, let alone any essential terms other than an alleged three-year duration, an allegation from which they are now fleeing. They may not allege a three-year oral contract, as to which there is not one shred of evidence, then argue that the lack of evidence doesn't matter because the unprovable three-year oral contract "might have been" performed within one year.[9]

We already demonstrated that plaintiffs have no evidence of an alleged three-year oral partnership between D.K. and Dr. Wright. But even if they had evidence sufficient to lift the bar of the statute of frauds and prove the existence and essential terms of a three-year oral partnership, there is no evidence that any alleged bitcoin allegedly mined by "Satoshi Nakamoto" ever moved on the blockchain *at any time in the last nine years.* This would mean that the purported "Satoshi Nakamoto partners" also had to have had an oral agreement to not access the bitcoin for more than a year, which also would require dismissal of this claim for violating the statute of frauds.

Plaintiffs floated this theory in the deposition of non-parties, including Joseph Karp (I.K.'s original litigation counsel, who represented him in communications with Dr. Wright in February 2014). In an apparent effort to explain why D.K. was destitute at a time when plaintiffs contend he owned a fortune in bitcoin, they asked Mr. Karp (and others) whether D.K had agreed not to access any "Satoshi Nakamoto" bitcoin for a period of time. The purported oral "mining"

---

[9] Plaintiffs' frivolous argument that their claim on a purported three-year oral contract avoids Florida's statute of frauds because it "might have" been performed within a year, despite their contrary, affirmative allegations that it was intended to be, and was in fact, performed for three years, violates Rule 11 and Fla. Stat § 57.105. Dr. Wright reserves all rights.

partnership ended in 2011, and D.K. died in 2013, more than one year later. If D.K. had another unprovable oral agreement with Dr. Wright, this one to not move the "Satoshi Nakamoto" bitcoin on the blockchain, it had to have had a duration of more than a year, because D.K. died two years after the purported oral "mining" partnership ended.

The English statute of frauds is 350 years old. *See* https://legaldictionary.net/statute-of-frauds/, last accessed on May 7, 2020. "Florida's Statute of Frauds is a substantial copy of the English statute entitled, 'A Statute for the Prevention of Frauds and Perjuries,' enacted by the English Parliament in 1676." *DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So. 3d 85, 92 (Fla. 2013). Plaintiffs' purported oral partnership perfectly illustrates why the Statute of Frauds was long ago adopted by Florida and other common-law jurisdictions. "[T]he statute of frauds renders unenforceable those contracts where it is apparent, from the purpose of the contract and the surrounding circumstances, that the understanding of the parties was that the agreement was not to be performed within a year from the time it was made." *Chernys v. Standard Pac. of S. Fla., G.P. Inc.*, 2010 WL 11504280, at *4 (S.D. Fla. 2010); *Roberts v. Stutman*, 2011 WL 13225074, at *3 (S.D. Fla. 2011); *Hertz v. Salman,* 718 So. 2d 942 (Fla. 3d DCA 1998); *Khawly v. Reboul,* 488 So. 2d 856 (Fla. 3d DCA 1986). So it is here. Plaintiffs' purported three-year oral partnership agreement is unenforceable as a matter of law, and summary judgment on any claims arising from it should be granted to Dr. Wright.

### 3.      W&K's Claims Are Barred by Res Judicata

Plaintiffs argues that this action is not precluded by the Australian judgments on the notion that: (1) W&K purportedly was not served with process or notified of the Australian Lawsuits (even though it was both served and notified); (2) the Australian Judgments were thus procured through extrinsic fraud and are void, even though as a matter of law (and logic) there was no extrinsic fraud because W&K was timely and properly served and encouraged to appear, and; (3) there is no final judgment in the Australian lawsuits, even though plaintiffs alleged (correctly) that judgment was entered on November 6, 2013. We demonstrate next that Plaintiffs' claims were resolved in the Australian actions and *res judicata* bars re-litigating them here.

First, as demonstrated above, W&K was properly served with process under the Hague Convention. It is well settled that ***service through the Central Authority "is not the only acceptable method of service under the [Hague] Convention . . . the Hague Convention permits alternate channels of service so long as they are not objected to by the receiving***

*State*." *Dimensional Commc'n, Inc. v. OZ Optics Ltd.*, 218 F.Supp.2d 653, 655-56 (D.N.J. 2002); *DeJames v. Magnificence Carriers*, 654 F.2d 280, 288 (3d Cir.1981). Florida does not object to service by mail under the Hague Convention.

Plaintiffs also argue that this Court has jurisdiction to hold the Australian Judgments "void" because they purportedly were obtained by "extrinsic fraud." To demonstrate extrinsic fraud, however, plaintiff had to show that W&K was prevented from participating in the Australian Lawsuits. *E.g., Nero, Sr. v. Mayan Mainstreet Inv. 1 LLC*, 2014 WL 12610668, at *14 (M.D. Fla. 2014) (Extrinsic fraud exists only where a party "has somehow been prevented from participating in a cause."); *Parker v. Parker*, 950 So.2d 388, 391 (Fla. 2007) ("[E]xtrinsic fraud occurs where a defendant has somehow been prevented from participating in a cause.").

As a matter of law, there can be no extrinsic fraud where the party asserting it was served with process and had notice of the prior action, particularly where (as here) the notice of prior action encouraged that party to appear and warned that not appearing could affect its rights:

> A party who has been given proper notice of an action, however, and who has not been prevented from full participation, has had an opportunity to present his case to the court and to protect himself from any fraud attempted by his adversary. Fraud perpetrated under such circumstances is intrinsic . . . .

*George v. McClure*, 245 F.Supp.2d 735, 739 (M.D.N.C. 2003).

**4.     Plaintiffs are estopped from asserting their claims**

Plaintiff argue that judicial estoppel and equitable estoppel should not bar their claims because there purportedly is no evidence to support a finding of estoppel. Plaintiffs are wrong, and are judicially estopped for at least three reasons. First, in his state court action, after prevailing on a motion to dismiss, plaintiff I.K. filed an amended complaint alleging that whatever bitcoin D.K. supposedly mined were his personal property, not the property of any purported oral partnership, as he alleged here. *E.g., New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[J]udicial estoppel[] 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'") (citing *Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8 (2000)).

Second, in prevailing on their argument that their claims in this case belonged in federal court, plaintiffs expressly argued that their trade-secret allegations share a common nucleus of operative fact with their remaining claims. *See* D.E. 159 at 11 ("The state claims are all closely related to the [Defend Trade Secrets Act] claim and are part of the same 'case or controversy,'

18

arising from the same '*common nucleus of operative fact*.'") (emphasis added). This admission requires granting summary judgment on the other claims because "a common nucleus of operative fact" is precisely the standard by which preemption is determined, and those claims are preempted. In short, plaintiffs' non-trade-secret claims are displaced by FUTSA because they share a common nucleus of operative fact with their FUTSA claim. Moreover, plaintiffs are judicially estopped from changing their position. *E.g., New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

Likewise, plaintiffs are equitably estopped because for six and a half (6 1/2) years since the Australian judgments, plaintiffs haven't lifted a finger to undo them. They cannot credibly argue that they had "no duty" to respond to the Australian lawsuits, because they were timely served with process under the Hague Convention and the Notice of action warned them that the matter would be dealt with in their absence if they did not respond. Having been served, plaintiffs were obviously under a duty to respond. They failed to respond at their peril, then did nothing for 6 1/2 years. This Court should not reward their affirmative choice to sit on their hands instead of ever appearing in the Australian court to contest its judgments.

**5.      The Doctrine of Unclean Hands Bars Plaintiffs' Equitable Claims**

Plaintiffs demand summary judgment on Dr. Wright's unclean hands defense, arguing that there is no evidence of harm to Dr. Wright from anything plaintiffs did or failed to do. Mot. at 25. As Dr. Wright pointed out in his motion to dismiss, plaintiff I.K. alleges that in November 2009 his brother D.K. told him he was working on something "bigger that Facebook" and that he was involved in making a "digital currency." Four years later, plaintiff I.K. took possession of D.K.'s belongings, threw away his papers, erased two of his hard drives, and now admits that he never sought professional help to access D.K.'s other devices or several of his email accounts. Def. SMF ¶_. His conduct is a casebook paradigm of unclean hands. He destroyed key evidence and may well be sitting on key evidence that he refuses even to attempt to access. *E.g., Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945) (the doctrine of unclean hands "is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.").

6.      **Dr. Wright Did Not Abandon His Defenses Regarding Coin-Exch**

Plaintiffs argue that Dr. Wright abandoned his affirmative defenses for accord and satisfaction, release, payment, setoff, failure to mitigate damages, and waiver. Mot. at 3-4. The common thread is that plaintiffs believe these defenses should not be an affirmative defense because they do not release Dr. Wright from liability for purported bitcoin that D.K. and Dr. Wright purportedly mined. This argument misses the point—plaintiffs alleged several times in the SAC that they suffered damages from Dr. Wright's promises of shares in a start-up company, Coin-Exch. As to those claims, it is undisputed that plaintiff *I.K. actually received shares* in Coin-Exch, He therefore may not claim he was damaged *for not receiving* those shares. Because I.K. received the shares, he cannot sue for damages for not receiving shares in Coin-Exch.

7.      **Dr. Wright Can Preserve His Defense of Lack of Personal Jurisdiction**

Finally, Plaintiffs demand summary judgment on Dr. Wright's defense that the Court lacks personal jurisdiction over him. Dr. Wright has the right to, and does, preserve this argument for appeal. *E.g., Diamond Crystal Brands, Inc. v. Food Movers Int'l*, 593 F.3d 1249, 1256 (11th Cir. 2010) (rejecting plaintiff's argument that defendant waived the defense of lack of personal jurisdiction, where defendant had preserved the defense as an affirmative defense in its answer, *after* its motion to dismiss for lack of personal jurisdiction was denied).

<u>CONCLUSION</u>

For all the foregoing good and sufficient reasons, Dr. Wright respectfully requests that the Court deny plaintiffs' motion for partial summary judgment.

Respectfully submitted,

RIVERO MESTRE LLP
*Attorneys for Dr. Craig Wright*
2525 Ponce de Leon Boulevard, Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: arolnick@riveromestre.com
Email amcgovern@riveomestre.com
Email bpaschal@riveromestre.com
Email: receptionist@riveromestre.com

By: s/ Andres Rivero
ANDRES RIVERO
Florida Bar No. 613819
AMANDA MCGOVERN

Florida Bar No. 964263
ALAN H. ROLNICK
Florida Bar No. 715085
BRYAN L. PASCHAL
Florida Bar No. 091576

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 22, 2020, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record either by transmission of Notices of Electronic Filing generated by CM/ECF or by U.S. Mail.

_ /s/Andres Rivero_____

21