## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC, <br><br> *Plaintiffs,* <br><br> v. <br><br> CRAIG WRIGHT, <br><br> *Defendant.* | CASE NO.:  9:18-cv-80176-BB/BR |

### PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S OMNIBUS MOTION IN LIMINE

Ira Kleiman, as personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC ("Plaintiffs") hereby respond to Wright's Motion *in limine*.

### INTRODUCTION

Defendant has sought to preclude two broad categories of evidence, without any serious attempt to identify precisely what he is asking this Court to preclude.

First, Defendant asks this Court to guarantee him, pre-trial, that he will have free reign to continue his well-established pattern of deception by promising to make no comments or observations about his credibility during trial.  This request is both overbroad and premature, and should be denied.

Second, Defendants asks this Court to preclude all evidence of the Australian Tax Office's ("ATO") audits of "non-party Australian companies."  Again, Defendant does not identify the particular evidence he wants to exclude, instead asking the Court to exclude "Australian tax

1

documents." Defendant's Motion regarding the ATO relies on a few false premises. One, the Motion argues that these audits are not relevant. However, these ATO audits are a central part of Plaintiffs' theory of the case. For example, the ATO audits concerned, among other things, the intellectual property Wright stole from W&K through his "Consent Judgments" scheme.

A second false premise is that the ATO documents contain "multiple levels of hearsay." Although the Court can handle hearsay objections when they are made at trial, Wright fails to acknowledge that many of these documents contain express admissions from Wright himself – those are clearly not hearsay.

Lastly, Defendant's suggestion that these audits are somehow unrelated to Wright because they are of "non-party" companies also is incorrect. The record shows that Wright was the representative of these companies during the respective ATO tax audits.

For the reasons that follow, Defendant's Motion in Limine should be denied in its entirety.

I. **Exclusion of judicial statements regarding Wright's credibility**

Plaintiffs respectfully request this Court deny Defendant's Motion *in limine* to exclude judicial statements regarding Wright's credibility. Wright asks this Court, via a Motion *in limine*, to guarantee him in advance that it will not comment on his credibility at trial. The assurance he seeks now is both premature and overbroad. For the reasons set forth below, the Motion should be denied.

The Supreme Court has held that a federal trial judge may assist the jury in arriving at a just conclusion by "commenting upon the evidence, by drawing their attention to the parts of it which he thinks important, and [by] express[ing] his opinion upon the facts, provided he make it clear to the jury that all matters of fact are submitted to their determination." *Quercia v. United States,* 289 U.S. 466, 469 (1933). This includes commenting on the credibility of witnesses. *United States*

*v. Stayback*, 212 F.2d 313, 319 (3 Cir. 1954) cert. denied 348 U.S. 911, 75 S.Ct. 289, 99 L.Ed. 714 (1955) ("a judge of a court of the United States may . . . express his opinion on . . . the credibility of the witnesses.")

This standard for federal judges is well established within the Eleventh Circuit.  *Wilson v. Bicycle S., Inc.*, 915 F.2d 1503, 1508 (11th Cir. 1990) (where district judge "employed the time-honored, though little used, right and duty of a federal trial judge to comment on the evidence); *U.S. v. Beard*, 960 F.2d 965 (11th Cir. 1992) (it is well established law that a trial judge may comment upon the evidence and express his opinion of the facts); *United States v. Bertram*, 805 F.2d 1524, 1529 (11th Cir. 1986) (a trial is a "quest for truth and a federal judge is more than a neutral arbiter" and the judge may "comment on the evidence, may question witnesses, …clarify [facts] previously presented and may maintain the pace of the trial by interrupting or cutting off counsel") (internal citations omitted); *U.S. v. Butera*, 677 F.2d 1376 (11th Cir. 1982) (trial judge is not a mere moderator or observer, but is responsible for the tone and tempo of proceedings, and may comment on the evidence).  This specifically includes commentary on the "credibility" of witnesses.  *United States v. Stayback*, 212 F.2d 313, 319 (3 Cir. 1954) cert. denied 348 U.S. 911, 75 S.Ct. 289, 99 L.Ed. 714 (1955).  Given the clarity of the law in this Circuit on judicial commentary, Defendant's sole reliance on cases outside of the Circuit regarding the permissible role for the Court is telling.[1]

This motion is an attempt by Defendant to ensure that his numerous misdoings, which have occurred repeatedly since the commencement of this action (and continue unabated), will have no impact nor make any appearance at this trial. See Plf's Motion for Sanctions, ECF No. [507].

---

[1] Defendant in-circuit citations generally stand for the uncontroverted principle that factual determinations are ultimately left to the jury.

Defendant hopes to whitewash his past transgressions so that he may proceed at trial with a blank slate, and to do so, he boldly enlists the assistance of this Court.

Not only does Defendant want this Court to absolve him of all of his past conduct, the instant Motion asks this Court to refrain from remarking at all during trial on any issue relating to Wright's credibility.  Def's Motion *in limine*, at 2, ECF No. [490] ("Wright will not have a fair trial – and due process will be denied – if the jury heard judicial comments (including this Court's prior comments about his credibility").  Put another way, Defendant is asking the Court to in advance put aside its governing function during trial and bite its tongue, no matter what Defendant does or says during the trial.  This request is exceedingly vague – and the assumption that any remarks the Court makes will overstep the permissible limit of its inherent power to comment is not warranted.

This action has been ongoing for over two years, and there have been countless acts by Defendant which have positioned the case, and Defendant's credibility, to where they now stand. For example, Judge Reinhart found that Wright gave perjurious testimony in front of him.  ECF No. [277] and [420].  This Court has also remarked on Wright's lack of candor.  ECF No. [265] and [373].  He has submitted false, conflicting and misleading Declarations.  ECF No. [265], [277], and [420]. [2]

---

[2] His deceit is not limited to these shores.  In his home country of Australia, the Courts there also found that Wright had submitted false evidence.  *Wright v. Ryan & Anor*, [2005] NSWCA 368 (Oct. 27, 2005), attached hereto as Ex. 1 ("The probative force of the new evidence depends in large measure on [Craig Wright's] credibility and reliability. His explanations and interpretations of [documents] are contradicted at critical points, on which there is no evidence to support him. [His] contradictory evidence…raises doubts about his credibility").  Indeed, his own companies' lawyers in proceedings with the Australian Tax Office had to terminate their representation of Wright because "information ha[d] been provided to [their] firm which raise[d] serious questions about the integrity of documents provided by Dr. Craig Wright, both to [their] office and to the Australian Taxation Office [which they] believe to be credible."  DEF_01894937, attached hereto as Ex. 2.

To grant Wright what is essentially blanket immunity for not only his past transgressions, but also in advance for what he might do going forward, would be robbing this Court of its inherent power:

> It is no longer an open question that a judge of a court of the United States may, in his discretion, express his opinion on the evidence *and the credibility of the witnesses*. The only proviso is that the jury should be made to understand that it is in no way bound by any observations of the court, and that it is the sole judge with respect to the issues of fact.

*United States v. Stayback*, 212 F.2d 313, 319 (3 Cir. 1954) cert. denied 348 U.S. 911, 75 S.Ct. 289, 99 L.Ed. 714 (1955) (emphasis added); *Quercia v. United States,* 289 U.S. 466, 469 (1933) ("[i]n a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial…. It is within his province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important, and he may express his opinion upon the facts"); *U.S. v. Butera*, 677 F.2d 1376 (11th Cir. 1982) (trial judge is not a mere moderator or observer, but is responsible for the tone and tempo of proceedings, and may comment on the evidence); *See also* LEGAL STANDARD *supra*.

Defendant moves in advance to silence remarks from the Court, even if the Court is aware that Wright is giving testimony or submitting evidence that the Court knows is not truthful. For example, should Wright be allowed to offer testimony previously found to be perjurious? The Court, consistent with its role as set forth in the cases above, must preserve its power to be the "governor" of the courtroom and must inform the jury when testimony is offered that should be carefully scrutinized. *Quercia v. United States,* 289 U.S. 466, 469 (1933); *United States v. Partin*,

493 F.2d 750, 760 (5th Cir. 1974)[3] (holding that "where an admitted perjurer testifie[s]…the trial court must charge that the testimony of that witness is to be scrutinized with care" and that "the jury should, within reason, be informed of all matters affecting a witness's credibility to aid in their determination of the truth"); *United States v. Barasso*, 267 F.2d 908, 910 (3d Cir. 1959) (finding the lower court erred in failing to instruct the jury to "take seriously into account the admitted perjury of a witness in determining whether his testimony on the same subject merited belief"); *United States v. Margolis*, 128 F.2d 1002, 1004 (3d Cir. 1943) ("the court must charge that the testimony of [a perjurer] must be scrutinized with care").

Defendant is an adjudicated perjurer who has proffered evidence and testimony that this Court has found to be incredible. *See supra* at 3. Unfortunately, there is no reason to believe that Defendant's tactics will not persist at trial. Cautioning the jury when Defendant offers testimony previously found to be perjurious, or when he relied on documents that have been forged or fraudulently manipulated, is firmly within this Court's power and any such commentary will not usurp the jury's role in determining credibility. Rather, it will safeguard the assumption that the jury's findings are a result of accurate and well-considered evidence. *Barasso*, 267 F.2d at 909 (holding that the court's instructions should "inform[] the jury that the admitted perjury of the witness was to be given serious consideration in their determination of his credibility, without stating as a conclusion of the court that his credibility had been impaired by this perjury").

In sum, Defendant frames his request as a means to protect the fact finding function of the jury. In reality, if granted, his motion would do just the opposite by chilling the Court's power to monitor the jury's consumption of accurate evidence.

---

[3] This Fifth Circuit opinion issued prior to 1981 is binding on this Court.

Simply put, trial has yet to commence.  We do not know what Wright may say or do, and what remedies the Court may need to fashion to address his conduct.  Given his past conduct, this Court should be extremely wary of the relief requested in this Motion.  Defendant's motion is premature, painted too broadly and lacks specificity.  It should be denied.

## II.  Evidence Relating to the Australian Tax Office's Audits of Wright's Companies is Admissible

Wright argues that the Court "should exclude evidence relating to the Australian Tax Office's Audits" of his companies, including "the Australian tax documents." (Br. 3.) Wright claims that such evidence (the "ATO Evidence") should be excluded because (1) it is irrelevant, (2) its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury, (3) it constitutes inadmissible hearsay, and (4) it cannot be authenticated.

The ATO Evidence—which consists largely of documents *provided by the Australian government to Wright* and subsequently *produced by Wright in this action*—not only provides the necessary context for Plaintiffs' claims, but also includes a trove of relevant admissions from Wright concerning his partnership with Dave Kleiman. These highly probative admissions—made to the Australian government in the course of its investigation—are not hearsay and are plainly admissible. The rest of the ATO Evidence is likewise admissible, as it directly supports Plaintiffs' fraud and IP-related claims and provides the jury with the information that it needs to understand Wright's conduct and key evidence in this action. Wright's attempt to exclude this important part of Plaintiffs' case should be rejected.

### a.  Summary of Allegations Relating to the ATO Investigations

In their Second Amended Complaint, Plaintiffs allege that (1) Wright and Dave Kleiman partnered to mine bitcoin and develop blockchain-related intellectual property, and (2) Wright

misappropriated that bitcoin and intellectual property following Dave's death. (DE 83 ¶¶ 55-78, 95, 117-31.) More specifically, Plaintiffs allege that Wright misappropriated their intellectual property assets by, among other things, fraudulently obtaining from an Australian court consent judgments that purported to transfer intellectual property from W&K to Wright. (*See id.* ¶¶ 117-31.) Plaintiffs further allege that, in order to prevent them from exercising their rights, and in anticipation of the ATO reaching out to Ira Kleiman, Wright fraudulently sought to conceal this scheme from Plaintiffs with a series of misrepresentations and omissions. (*See id.* ¶¶ 132-40.)

In particular, Plaintiffs allege that, in 2014, the Australian Tax Office ("ATO") was investigating Wright's companies to determine whether those entities had properly claimed certain tax benefits. (*Id.* ¶¶ 131-32.) That investigation concerned, among other things, whether Wright's companies were entitled to millions of dollars in tax benefits in connection with their "acquisition" of intellectual property from W&K. (*See, e.g.*, DEF_00051443, attached hereto as Ex. 3, ¶¶ 55-62.) Wright claimed that (1) he had paid millions of dollars in taxes as a result of his acquisition of W&K's intellectual property, and (2) he and his companies were entitled to a tax refund for that amount. Importantly, the relevant acquisition purportedly occurred when Wright secured consent judgments against W&K in Australian court—the same consent judgments that Plaintiffs allege Wright used to misappropriate their intellectual property assets. (*See id.* ¶¶ 117-31.) Accordingly, the ATO's investigation concerned the validity of one of the *same transactions* that Plaintiffs challenge here.

As a result, many of the documents Plaintiffs use to support their claims were initially submitted by Wright in connection with the ATO's investigation. For example, Wright sought to substantiate his tax claims—premised on his claim that he legitimately acquired over $50 million in intellectual property from W&K—with the purported contracts referenced in the Second

8

Amended Complaint. (*See* Ex. 3, ¶ 13; *see also* DE 83, ¶¶ 95-109.) He further sought to support those claims by submitting to the ATO a "Deed of Loan," which, as Plaintiffs explain in their Second Amended Complaint, included a handwritten annotating stating, "as agreed, all wallets to be held in UK in trust until all regulatory issues solved and Group Company formed with Dave K and CSW." (*See* Ex. 3, ¶ 14; DE 83, ¶ 91; DE 83-15, at 9.)

Likewise, over the course of the ATO investigation, Wright made a number of statements regarding his business relationship with Dave and W&K, including statements relating to the development of bitcoin, W&K's intellectual property, and bitcoin mining. For example, Plaintiffs allege in the SAC that information provided by Wright during the ATO investigation—including oral testimony by Wright and his representatives—demonstrates that (1) Wright, Dave, and W&K collectively owned hundreds of thousands of bitcoin and (2) Wright obtained a substantial amount of bitcoin from Dave. (*See* DE 83, ¶¶ 82-83, 89-91.).[4]  Discovery has born this out.

For example, in meetings with the ATO, Wright has admitted that he settled the tulip trusts with bitcoin Dave mined Ex. 4 (Record of Interview of Craig Wright, Australian Tax Office, August 18, 2014, DEFAUS_00560317, 0323) ("O'Mahoney: . . . are all the assets of the trust, they were originally sourced from you? Wright: And Dave. O'Mahoney: And David. Wright: Yes."). Wright also told the ATO that he and Dave had 1.1 million bitcoin which was worth "when we were starting probably $20 million," but by "Dave's death, that had gone up to . . . $100 million." Ex. 5 at 8675 (Aug. 11, 2014 ATO Record of Interview, DEF_00068675). Wright also told the ATO that David Kleiman put bitcoin into a trust to fund their joint research activities. Ex. 5 (Aug. 11, 2014 Record of Interview, DEF_00068665, at 8671). There is much more.

---

[4] Additionally, Plaintiffs allege that Wright made statements to the ATO indicating that he and Dave mined bitcoin into certain trusts. (*See, e.g.*, *id.* ¶ 84.) Wright's correspondence with Dave indicates that these trusts were partly designed to shield assets from the ATO. (*See id.* ¶ 87.)

Because of the connection between the ATO's investigation and Plaintiffs' rights, Plaintiffs allege that Wright anticipated that the ATO would contact them, and that Wright knew that if Plaintiffs got the full story, they would likely pursue legal action against him. Based on this concern, Plaintiffs allege that Wright (1) preemptively contacted them in February 2014 (almost a year after Dave's death), (2) told them that Dave helped create bitcoin but had agreed to exchange his fortune for shares in one of Wright's companies, and (3) promised them shares in that company. (*See id.* ¶¶ 14, 132-40.) Plaintiffs further allege that, once the ATO contacted them and they confronted Wright about his misappropriation of assets, Wright promised that he would provide the millions of dollars in shares imminently. (*See id.* ¶¶ 144-53.) Nevertheless, as Plaintiffs allege, Wright never provided *any* benefit to Plaintiffs. Instead, he engaged in a range of delay tactics— including blaming his inability to pay Plaintiffs on his ongoing dispute with the ATO—to string Plaintiffs along and prevent them from exercising their rights. (*See id.* ¶ 149.)

Wright did not prevail in his dispute with the ATO. Indeed, not only did the ATO find that Wright was not entitled to the tax benefits that he had claimed in connection with his "acquisition" of W&K's intellectual property (*see* Ex. 3, ¶ 4), but the ATO also imposed a $1.9 million penalty on Wright for making "false and misleading statements" to the Australian government (DEF_00002135, attached hereto as Ex. 6, at DEF_00002141). In fact, the ATO made specific findings regarding the legitimacy of the "Consent Judgments" that Wright purportedly obtained against W&K, including that (1) there was no evidence that either Jamie Wilson or Wright could have properly represented W&K in those proceedings and that (2) Wright did not provide W&K with the $20M "bond" that Wright claimed formed the basis of W&K's debt. (*See* Ex. 3, ¶¶ 29-41; *see also* DE 83-10.) Likewise, the ATO subsequently concluded that Wright had submitted evidence that had "been proven to have been fabricated" to support his claim for tax benefits and

that he had "manufactured" evidence "in an attempt to deceive" the Australian government. (DEF_01617814, attached hereto as Ex. 7, ¶¶ 221-25.)

Following a series of adverse rulings from the ATO, Wright's companies became insolvent. (*See* NGUYEN_001213, attached hereto as Ex. 8, at NGUYEN_001219.) That situation enabled nChain, Wright's current employer, to acquire all of the intellectual property from those entities—including the intellectual property that Wright purportedly acquired from W&K in the Australian actions—on "advantageous terms." (*Id.*)

### b. The ATO Evidence is Relevant

Wright asserts that the ATO Evidence is irrelevant because it "ha[s] nothing to do with whether D.K. and Wright had a partnership to mine bitcoin or develop bitcoin-related intellectual property." (DE 490 ("Br."), at 4.) Indeed, according to Wright such evidence is irrelevant "[e]ven if Wright had tried to substantiate tax offsets with work he allegedly did with D.K. or W&K" because the ATO's investigation concerned "non-party Australian companies receiving tax offsets" and Plaintiffs "are not suing Wright for tax offsets." (*Id.* at 6.)[5]

Wright's argument should be rejected.  As a factual matter, and as shown above, Wright is simply wrong that the ATO Evidence is unrelated to "whether D.K. and Wright had a partnership to mine bitcoin or develop bitcoin-related intellectual property." Moreover, his argument that the ATO Evidence is irrelevant because Plaintiffs "are not suing Wright for tax offsets" is sophistry

---

[5] Wright also claims (without citation) that "[t]he only reason D.K.'s name came up was in connection with a non-party company named Coin-Exch., which is not the subject of plaintiffs' claims." (Br. 4 n.2.) Wright must be misremembering. One of the key issues in the ATO investigation was whether Craig Wright R&D properly acquired over $50 million in intellectual property from Dave's company, W&K. (*See* Ex. 3, ¶¶ 1-5, 89-90.) Another key issue was whether Wright's entities had actually incurred any cost in connection with their supposed acquisitions of intellectual property from Craig Wright R&D. (*Id.*) Wright claimed that those entities purchased the intellectual property with bitcoin held in a trust, which was settled with assets from Wright and Dave. (*See id.* ¶¶ 82-88; DEFAUS_00560317, attached hereto as Ex. 9, at DEFAUS_00560323.)

and irreconcilable with applicable law. "The standard of what constitutes relevant evidence is a low one: evidence is relevant if it has '*any* tendency to make the existence of *any* fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *United States v. La Rosa*, 236 F. App'x 584, 588 (11th Cir. 2007) (citations omitted) (emphasis added). As explained below, this standard is easily met here.

*First*, the ATO Evidence is relevant because it includes a number of admissions from Wright regarding key issues in this case, such as whether Wright and Dave were partners, whether Wright and Dave mined bitcoin together, how much bitcoin Wright and Dave mined together, whether Wright and Dave developed intellectual property together, and whether Wright properly acquired that bitcoin or intellectual property from Dave and W&K. These admissions are clearly probative with respect to those issues. Moreover, Wright's admissions are relevant for purposes of impeachment to the extent that Wright provides contradictory testimony at trial. *See, e.g.*, *Arnold v. Groose*, 109 F.3d 1292, 1297 (8th Cir. 1997) (prior inconsistent statements relevant, even if there is only "minimal inconsistency").[6]

*Second*, the ATO Evidence is relevant to Plaintiffs' fraud claims. Those claims are premised on, among other things, Wright's false representations that he intended to make Plaintiffs' whole. (*See* DE 83, ¶¶ 202-11.) The ATO Evidence helps demonstrate that, contrary to those representations, Wright never intended to pay Plaintiffs. More specifically, the ATO Evidence shows that Wright did not reach out to Plaintiffs because he wanted to help them. Instead,

---

[6] For instance, during the ATO investigations, Wright provided a number of documents to the ATO. To the extent that Wright attempts to claim that those documents were forged, or are otherwise inauthentic, Plaintiffs should be able to confront Wright with his prior reliance on those documents. *See Arnold*, 109 F.3d at 1297 (explaining that "if the former statement fails to mention a material circumstance presently testified to, which it would have been natural to mention in the prior statement, the prior statement is sufficiently inconsistent" to be relevant).

he reached out to them because he wanted to contact them before the ATO exposed his fraud to them and they took legal action.

Third, the ATO Evidence is relevant because it contains findings from the ATO regarding whether Wright properly acquired intellectual property from W&K and whether certain documents at issue in this action are authentic. *See Brown v. Sierra Nev. Mem. Miners Hosp.*, 849 F.2d 1186, 1190 (9th Cir. 1988) (conclusions of investigation of same issue "are clearly relevant"). Indeed, just like this action, the ATO's investigation concerned whether Wright properly acquired millions of dollars in intellectual property from W&K through the Australian judgments.

Notably, the ATO Evidence contains findings that demonstrate that Wright lied to the ATO about his "acquisition" of intellectual property from W&K. These findings are relevant because they indicate that Wright improperly obtained W&K's intellectual property. *Cf. United States v. Browning*, No. 1:07-cr-387, 2008 WL 11287187, at *6 (N.D. Ga. May 19, 2008) ("Some of the strongest inferences in law are drawn from lies, and courts routinely instruct juries that they may draw the inference of consciousness of guilt from proof of suppression of evidence or the making of false exculpatory statements." (citations omitted)).

Fourth, the ATO Evidence is relevant because is it necessary to the jury's understanding of the evidence in this case. *See United States v. Hooks*, 147 F. App'x 956, 957 (11th Cir. 2005) (evidence "necessary to complete the story" is relevant); *United States v. Smith*, 322 F. App'x 876, 879 (11th Cir. 2009) (evidence "helpful[] for telling a "coherent story" is relevant); *United States v. Smith*, 361 F. App'x 993, 998 (11th Cir. 2010) (evidence "necessary to complete the story" and "give the jury a context for understanding" claim is relevant); *United States v. Battle*, 473 F. Supp. 2d 1185, 1198-99 (S.D. Fla. 2006) (evidence that gave "the jury the necessary context for understanding the full evolution and extent" of defendant's scheme is relevant).

13

Indeed, many facts in this case would make little sense without the context that the ATO Evidence provides. *See United States v. Wright*, 392 F.3d 1269, 1276-77 (11th Cir. 2004) (probative value of evidence demonstrated by fact that, without it, "the jury would be relegated to its own, and possibly, incorrect, assumptions about" certain events). For example, why would Wright and Dave mine bitcoin into offshore trusts? Why would Wright even bother obtaining judgments against W&K if he wanted to secretly steal assets? Why would Wright tell Plaintiffs about Dave's involvement in bitcoin if he wanted to defraud them? Why would Wright sell valuable intellectual property at a discounted price? These seemingly contradictory facts (and other issues) are readily explainable by the ATO Evidence, which suggests that Wright (1) used offshore trusts to avoid paying taxes, (2) used the Australian judgments to obtain millions in tax benefits, (3) told Plaintiffs about Dave's involvement in bitcoin because he knew that the ATO would be contacting them shortly and wanted allies, and (4) was forced to sell assets held by his companies at a discounted price due to an insolvency caused by the ATO's investigation. Accordingly, the ATO Evidence enables Plaintiffs to tell a "coherent story" that allows the jury to better understand Wright's conduct.

Likewise, relevant evidence in this case—such as Wright's statements to Plaintiffs indicating that Dave's estate would be paid millions as soon as the ATO investigation was resolved, and Wright's email correspondence with Dave regarding bitcoin trusts—includes express references to the ATO and/or its investigation. Such evidence would be difficult to understand without information about the ATO's investigation itself. *See United States v. Vallee*, 304 F. App'x 916, 921 (2d Cir. 2008) (evidence that "provided the context necessary" to understand statement was relevant). Similarly, to the extent that the Court concludes that Wright's admissions to the ATO are admissible, the jury would have no basis to determine how much weight

to give those statements without an understanding of the context in which they were made. *See United States v. Johnson*, No. 14-cr-00412, 2015 WL 4747309, at \*5 (N.D. Cal. Aug. 11, 2015) (evidence of restraining order relevant because it "provide[d] necessary context for Defendant's contradictory statements").

### c.   The Probative Value of the ATO Evidence Outweighs Any Unfair Prejudice

Wright claims that the ATO Evidence should be excluded under Rule 403 because its admission would (1) "lead to 'litigation of collateral issues, thereby creating a side issue which might distract the jury from the main issues,'" and (2) "inflam[e] and mislead[] the jury with irrelevant, untrue innuendo that would serve only to confuse the issues and create unfair prejudice." (Br. 4, 7 (citations omitted).)[7]

These arguments should be rejected. "The purpose of Rule 403 is 'limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.'" *Stepanovich v. City of Naples*, 728 F. App'x 891, 900 (11th Cir. 2018). Indeed, "Rule 403 is an extraordinary remedy, which should be used only sparingly." *United States v. Rushen*, 462 F. App'x 869, 872 (11th Cir. 2012) (citations omitted). "Thus, in 'reviewing issues under Rule 403, [the Eleventh Circuit] look[s] at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact.'" *United States v. Edouard*, 485 F.3d 1324, 1344 n.8 (11th Cir. 2007).

---

[7] Wright takes particular issue with evidence relating to the ATO's criminal investigation of him. Plaintiffs' attorney referenced such an investigation at the March 5, 2020 hearing discussed in Wright's brief, noting that Plaintiffs "were contacted by the Australian Tax Office's criminal investigations unit" after filing their complaint. (*See* DE 131-1, at 11:13-25.) Wright claims that "***there is no such thing*** as an ATO 'criminal investigation unit'" and characterizes it as Plaintiffs' "imaginary 'criminal investigation unit.'" (Br. 4-5 (emphasis in original).) As usual, it is Wright who is misrepresenting facts. (Email from ATO, attached hereto as Ex. 10.)

Importantly, Rule 403 only permits the exclusion of "relevant evidence if its probative value is "*substantially outweighed* by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added). "The words 'unfair prejudice' in Rule 403 have been defined as 'an undue tendency to suggest decision on an improper basis.'" *Hooks*, 147 F. App'x at 957-58 (citations omitted). Much of the ATO Evidence—including evidence of Wright's admissions regarding his partnership with Dave—do not implicate that concern. Indeed, there is nothing "improper" about the jury finding Wright liable based on his own prior statements regarding issues in this action. *See United States v. Covington*, 565 F.3d 1336, 1342-43 (11th Cir. 2009) (prejudice from evidence of domestic violence was not "unfair," where evidence directly related to charged crime).

Moreover, courts routinely find that evidence that "completes the story" of a defendant's conduct is admissible, even if that evidence is prejudicial. *See United States v. Taylor*, 17 F.3d 333, 339 (11th Cir. 1994) (evidence of prior incarceration admissible because, absent such evidence, "the jury would not understand" defendant's relationship with witness); *Smith*, 322 F. App'x at 879-80 (evidence of DUI that was "helpful[]" for purposes of "telling the jury a coherent story" was admissible); *United States v. Goodwin*, 296 F. App'x 727, 730-31 (11th Cir. 2008) (evidence describing informant's prior interactions with drug dealer admissible, where evidence "explain[ed] how [informant] had [dealer's] cell phone number and knew that [dealer] was selling crack cocaine"); *see also United States v. Howard*, No. 12-cr-0043, 2012 WL 1970268, at *2-3 (S.D. Ala. June 1, 2012) (collecting Eleventh Circuit cases "touting the importance of allowing the Government to complete the story of the crime even when that story works prejudice on the defendant"). The same is true with respect to evidence of an administrative agency's findings

concerning matters at issue in the litigation. *See Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1287-88 (11th Cir. 2008) ("Our precedents explain that an EEOC determination is ordinarily admissible.").[8] Accordingly, here, any danger of "unfair" prejudice to Wright does not outweigh, let alone substantially outweigh, the probative value of the ATO Evidence. Plaintiffs story simply cannot be told without the ATO Evidence.

Wright's other argument—that the ATO Evidence should be excluded because "its admission would lead to litigation of collateral issues" (Br. 7-8)—should also be rejected.[9] The ATO Evidence—used for the purposes that Plaintiffs intend—does not concern "collateral issues" because, as explained above, it is relevant if used for those purposes. *See United States v. Beauchamp*, 986 F.2d 1, 4 (1st Cir. 1993) ("A matter is considered collateral if 'the matter itself is not relevant in the litigation to establish a fact of consequence . . . ." (citations omitted)). Indeed, the ATO Evidence is a critical part of Plaintiffs' case, is necessary to the jury's understanding of the facts, and, therefore, should not be excluded. *See Boardwalk Apartments, L.C. v. State Auto Prop. & Cas. Ins. Co.*, 816 F.3d 1284, 1289-92 (10th Cir. 2016) (error to exclude evidence necessary for jury's understanding of evidence under Rule 403). With Dave passed and Wright an adjudicated perjurer who doesn't hesitate to lie to defeat Plaintiffs' case (See Plf.'s Motion for

---

[8] The cases that Wright cites to support his argument that the ATO Evidence should be excluded on the basis of unfair prejudice (Br. 5) are easily distinguishable: in both cases, the evidence at issue was, at most, relevant as character evidence. *See Deman Data Sys., LLC v. Schessel*, No. 8:12-cv-2580, 2015 WL 82791, at *1 (M.D. Fla. Jan. 6, 2015) (proponent failed to explain relevance of evidence); *United States v. Shayota*, No. 15-cr-00264, 2016 WL 6093237, at *5 (N.D. Cal. Oct. 19, 2016) (proponent failed to show evidence was "relevant to any purpose other than impermissible character evidence"). Prior adverse tax judgments may, in contrast, be admissible when *relevant* to the claims at issue. *See, e.g.*, *United States v. Tager*, 788 F.2d 349 353 (6th Cir. 1986).

[9] It is telling that the sole case that Wright relies on to support this argument (Br. 7) holds that the trial court abused its discretion by concluding that evidence should have been excluded under Rule 403. *See Blancha v. Raymark Indus.*, 972 F.2d 507, 515-17 (3d Cir. 1992) (noting that proposition evidence "tended to prove" was "directly at issue" in the case).

Sanctions, ECF No. [507]) a large part of the sole remaining evidence in this case comes from Wright's pre-litigation admissions to the ATO. If those admissions are excluded, Plaintiffs would be severely prejudiced.

Nevertheless, Wright asserts that admission of the ATO Evidence would somehow require resolution of "the questions [of] whether Australian companies were entitled to tax offsets, and whether the tax documents themselves are even authentic." (Br. 7.) But Plaintiffs do not intend to relitigate the issue of whether Wright's companies "were entitled to tax offsets." *Cf. United States v. 0.161 Acres of Land*, 837 F.2d 1036, 1041-42 (11th Cir. 1988) (error to exclude evidence for confusing the issues, even though opposing party's "rebuttal" of evidence "would be quite detailed"). Moreover, the fact that Wright apparently intends to challenge the authenticity of the ATO Evidence (notwithstanding the fact that he produced it) is not a basis for excluding that evidence. If that were the case, relevant evidence would be inadmissible whenever a party announced its intent to challenge the evidence's authenticity.

### d.  The ATO Evidence is Not Inadmissible Hearsay

Wright next contends that *all* of the ATO Evidence is inadmissible hearsay. (Br. 8.) That position is unsupportable for several reasons.

*First*, any admission from Wright, or his representatives, that is contained in the ATO Evidence is not itself hearsay. *See United States v. Gray*, 443 F. App'x 515, 521 (11th Cir. 2011) ("However, under Rule 801(d)(2)(A) of the Federal Rules of Evidence, '[a] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . the party's own statement, in either an individual or a representative capacity." (alterations in original)).

*Second*, any statements from ATO personnel to Wright and his representatives are not hearsay either, because such statements provide context for Wright's statements. *See United States*

*v. Cruz*, 508 F. App'x 890, 899 (11th Cir. 2013) ("[T]he statements made by the confidential informant during the taped conversations with Roberto Cruz were not offered for the truth of the matter asserted, but were instead offered to provide a context for [the defendant's] statements. Therefore, these statements were not hearsay . . . .").[10]

*Third*, although Wright claims that "'transcriptions' of recordings of meetings" and "[r]ecordings of unsworn statements made at a meeting with several non-parties and Wright" are "not subject to any enumerated exceptions to the hearsay rule" (Br. 8-9), Wright is incorrect. Such transcripts and recordings constitute present-sense impressions under Rule 803(1). *See United States v. Kehoe*, 562 F.2d 65, 70 (1st Cir. 1977) ("The rough notes represented a 'present sense impression' recorded close to the time of the event and as such are not excluded under the hearsay rule."); *Okoroafor v. City of N.Y.*, No. 07-cv-9387, 2013 WL 5462284, at *2 n.3 (S.D.N.Y. Sept. 25, 2013) (finding that "contemporaneous description" of stenographer's "present-sense impression" fit "squarely within the present-sense impression exception to the exclusionary rule").

Further, the transcripts and recordings constitute business records from both the ATO and Wright's companies under Rule 803(6). *See Braggs*, 2017 WL 426875, at *2 (meeting minutes fall within Rule 803(6)); *Parker v. Chilton Cty. Bd. of Educ.*, No. 2:12-cv-0650, 2014 WL 116341, at *5 n.5 (M.D. Ala. Jan. 13, 2014) (interview notes regarding job candidates constitute business records). Indeed, evidence produced by Wright indicates that the ATO routinely records its

---

[10] As a result, any correspondence between Wright and ATO personnel does not constitute hearsay because Wright's admissions are, by definition, not hearsay, and the ATO's statements may be offered as context for Wright's admissions. Moreover, ATO emails fall within the business-records exception to hearsay set forth in Rule 803(6). *See Braggs v. Dunn*, No. 2:14-cv-601, 2017 WL 426875, at *2 (M.D. Ala. Jan. 31, 2017) (concluding that employee emails are business records); *United States v. Parnell*, No. 1:13-cr-12, 2015 WL 3447250, at *7-9 (M.D. Ga. May 28, 2015) (same). This is the case because documents produced by Wright establish that the ATO regularly uses email correspondence to conduct its regular business, which involves, among other things, investigating tax claims.

meetings, creates transcripts of those meetings, provides those transcripts to witnesses, and relies on those transcripts to support its findings regarding whether taxpayers are entitled to refunds. (*See* DEF_00052514, attached hereto as Ex. 11; Ex. 3, at nn.6-10.)

*Fourth*, documents memorializing the ATO's findings constitute statements of a "public office" setting forth "factual findings from a legally authorized investigation." Fed. R. Evid. 803(8)(A)(iii). As a result, those documents fall within the public-records exception. *See Noel v. Ford Motor Co.*, No. 6:11-cv-370, 2013 WL 12160973, at *1 (M.D. Fla. May 7, 2013) ("It is well settled that administrative reports and investigations are admissible pursuant to Rule 803(8)." (citations omitted)); *Zamora v. Williams-Sonoma Stores Inc.*, No. 09-cv-21790, 2010 WL 11506066, at *1 (S.D. Fla. July 26, 2010) (noting that Rule 803(8)(C) "essentially provides that trustworthy investigatory reports of government agencies should not be excluded from evidence in civil cases"); *see also Allen v. Hylands Inc.*, No. 12-cv-1150, 2015 WL 12720304, at *13 (C.D. Cal. Aug. 20, 2015) ("[W]ith respect to the statements made in the House of Commons report and the findings of the Australian NHMRC, such statements and findings are also admissible under the public records hearsay exception, Fed. R. Evid. 803(8). Rule 803(8) 'applies both to domestic government bodies and foreign government bodies.'" (citations omitted)).

### e.  The ATO Evidence Can Be Authenticated

Wright asserts that *none* of the ATO Evidence can be authenticated because (1) some of this evidence was "illegally obtained and then published on Gizmodo" and (2) Wright contends that transcripts reflecting his meetings with the ATO are inaccurate. (*See* Br. 9.) This overly broad argument fails.

*First*, Wright produced all of the ATO Evidence and therefore "implicitly authenticated the documents."[11] *John Paul Mitchell Sys. v. Quality King Distributors, Inc.*, 106 F. Supp. 2d 462, 472 (S.D.N.Y. 2000); *Nola Fine Art, Inc. v. Ducks Unlimited, Inc.*, 88 F. Supp. 3d 602, 607 (E.D. La. 2015) ("Ducks Unlimited produced the email to plaintiffs in discovery and therefore cannot seriously dispute the email's authenticity."); *Schaghticoke Tribal Nation v. Kempthorne*, 587 F. Supp. 2d 389, 397 (D. Conn. 2008) ("[T]hese emails have been properly authenticated to the extent they were produced to Petitioner by BGR itself during discovery.").

*Second*, much of the ATO Evidence, including the ATO's transcripts and findings, may be authenticated pursuant to Rule 901(7)(B), which provides that evidence may be authenticated with evidence that "a purported public record or statement is from the office where items of this kind are kept." The ATO's transcripts and findings were sent by the ATO to Wright. *See Whiting v. Boston Edison Co.*, No. 88-mc-2125, 1990 WL 150010, at *2 (D. Mass. Sept. 24, 1990) (document obtained from government authenticated under Rule 901(7)); *Loque v. State Farm Fire & Cas. Co.*, No. 06-cv-2881, 2007 WL 2229287, at *1 (E.D. La. Aug. 1, 2007) (government report authenticated under Rule 901(7)). Moreover, documents memorializing the ATO's findings—which are on the ATO's letterhead—are "publication[s] purporting to be issued by a public authority" and, therefore, self-authenticating under Rule 902(5). *See Assoc. of Irritated Residents v. Fred Schakel Dairy*, No. 1:05-cv-00707, 2008 WL 850136, at *4 (E.D. Cal. Mar. 28, 2008) (finding that permit and other documents were self-authenticating under Rule 902(5), where documents "contain[ed] the letterhead of [a government agency]").

---

[11] Wright produced copies of the evidence leaked by Gizmodo in discovery so the Gizmodo-sourced documents Plaintiff relied on in its complaint are not necessary.

*Third*, Wright's claim that the ATO transcripts do not "accurately reflect the discussions in the meetings" (Br. 9) does not establish that the transcripts cannot be authenticated. Although Wright contends that "[t]here is no evidence that the company that prepared [the transcripts] requested and received input from either the ATO or others present at the [relevant] meetings to confirm the accuracy of the transcripts" (*id.*), he is wrong. Indeed, in this litigation, Wright produced documents indicating that the ATO specifically asked him and his representatives whether they had any corrections to the transcripts. (*See, e.g.*, Ex. 11.) This demonstrates not only that the ATO reviewed the transcripts, but also that Wright approved them.

Wright further asserts that "the transcripts are facially incomplete and inaccurate as reflected in numerous ellipses and failure to always identify the speaker." (Br. 9.) Wright overstates the presence of these elements in the transcripts. In any event, any "unintelligible portions" of the transcripts—to the extent that there even are any—are not "so substantial as to render the [transcripts] as a whole untrustworthy." *United States v. Jubiel*, 377 F. App'x 925, 929 (11th Cir. 2010) (explaining that "partially inaudible" tapes are admissible unless "the unintelligible portions are so substantial as to render the recording as a whole untrustworthy").

*Fourth*, the fact that Gizmodo obtained some of the ATO Evidence does not render the ATO Evidence admissible, especially to the extent that such evidence was produced by Wright

## <u>CONCLUSION</u>

WHEREFORE, Plaintiffs respectfully request the Court deny Defendant's motion *in limine*.

Dated: May 22, 2020

Respectfully submitted,

*/s/ Andrew S. Brenner*
Andrew S. Brenner, Esq.
Florida Bar No. 978663
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd Street, Suite 2800
Miami, Florida 33131
abrenner@bsfllp.com

Velvel (Devin) Freedman, Esq.
Florida Bar No. 99762
**ROCHE CYRULNIK FREEDMAN LLP**
200 S. Biscayne Blvd, Suite 5500
Miami, Florida  33131
Telephone: (305) 357-3861
vel@rcfllp.com
nbermond@rcfllp.com

Kyle W. Roche, Esq.
Joseph M. Delich, Esq.
*Admitted Pro Hac Vice*
**ROCHE CYRULNIK FREEDMAN LLP**
99 Park Avenue, Suite 1910
New York City, NY 10016
kyle@rcfllp.com
jdelich@rcfllp.com

*Counsel to Plaintiff Ira Kleiman as Personal
Representative of the Estate of David Kleiman
and W&K Info Defense Research, LLC*

**<ins>CERTIFICATE OF SERVICE</ins>**

I HEREBY CERTIFY that on May 22, 2020 a true and correct copy of the foregoing was

filed under Seal with CM/ECF, and served by E-mail to all counsel of record.


<span style="margin-left:40%">*<ins>s/ Andrew S. Brenner</ins>*  
ANDREW S. BRENNER</span>