# CONTRACT FOR THE SALE OF SHARES OF
# A COMPANY OWNING BUSINESS

**PARTIES**

**Dave Kleiman for W & K Info Defense LLC**
(Vendor)

**AND**

**Craig Wright R&D**
**ABN 97 481 146 384**
(Purchaser)

**AND**

**W&K Info Defense LLC**
(Company)

Ref: CEWK03

**THIS AGREEMENT** dated 02 day of April 2013

**BETWEEN**

> Dave Kleiman of W&K Info Defense LLC (Florida)

> (Vendor)

And

> Craig Wright of Craig Wright R&D
> ABN 97 481 146 384

> (Purchaser)

And

> W&K Info Defense LLC

> (Company)

## RECITALS

A. The vendor is the owner of all issued shares in the company being ordinary class shares. Ownership is 50% in the vendor's name and 50% in trust held for the purchaser.

B. The company is the owner of and conducts the business known as Bitcoin mining and Software development / Research.

C. The vendor has agreed to sell and the purchaser has agreed to purchase the vendor's shares for the price and upon the terms set out hereunder.

D. As the purchaser will succeed to the business of the company on completion of the acquisition of these shares, the parties agree that they will incorporate into this agreement those agreements contained in the attached contract for the sale of a business to the intent that they shall in relation to the sale of the shares have the rights and obligations contained in such contract as part of this agreement.

E. The company has consented to and agreed to be bound by the terms of this agreement.

F. The company includes all software, research material and other aspects of the business.

G. The parties wish to commit the terms of their agreement to writing in the manner hereinafter set out.

Page 1 of 9

CONFIDENTIAL

DEF_00013695

## OPERATIVE PART

### 1.   Interpretation

This agreement is governed by the laws of the state of NSW, and the parties, submit to the non-exclusive jurisdiction of the courts of that state/country.

In the interpretation of this agreement:

(a)   References to legislation or provisions of legislation include changes or re-enactments of the legislation and statutory instruments and regulations issued under, the legislation;

(b)   Words denoting the singular include the plural and vice versa; words denoting individuals or persons include bodies corporate and vice versa; references to documents or agreements also mean those documents or agreement as changed, novated or replaced, and words denoting one gender include all genders;

(c)   Grammatical forms of defined words or phrases have corresponding meanings;

(d)   Parties must perform their obligations on the dates and times fixed by reference to the capital city of the state of Sydney;

(e)   Reference to an amount of money is a reference to the amount in the lawful currency of the Commonwealth of Australia;

(f)   If the day on or by which anything is to be done is a Saturday, a Sunday or a public holiday in the place in which it is to be done, then it must be done on the next business day;

(g)   References to a party are intended to bind their executors, administrators and permitted transferees; and

(h)   Obligations under this agreement affecting more than one party bind them jointly and each of them severally.

### 2.   The vendor hereby agrees to sell and the purchaser hereby agrees to purchase ordinary class shares in the company for the purchase price as noted below:

(a)   Two (2) loans issued under deed "CEWK01" are agreed to be repaid in full for the consideration of 300,000 Bitcoin agreed in the contract. The repayments as a one off of both loans for $20,000,000 with a total value of

CONFIDENTIAL                                                          DEF_00013696

$40,000,000 are deemed paid in full for the above value. This is noted as consideration from the purchaser and is issued in forbearance of the requirements of the contract signed 22 April 2011 between the Vendor/Company and the purchaser (designated CEWK01).

(b) The vendor agrees that the paper wallet with address "1933phfhK3ZgFQNLGSDXvqCn32k2buXY8a" held in escrow will be released to the purchaser.

(c) Due to the unexpected rise in the value of Bitcoin, it is agreed that two transfers (in Bitcoin) of BTC 125,000 and BTC 125,500 when taken in conjunction with the supply of the software, will suffice to fulfil the contract.

3. Hence, the vendor will:

(a) Pay (transfer to) the purchaser 250,500 BTC on 30 April 2013,

(b) Accept transfer of the escrowed Bitcoin paper wallet to the purchaser,

(c) Transfer the ASC hardware to the purchaser,

(d) Release the source code to the purchaser,

(e) Transfer the Vistomail email account.

(f) Transfer all research materials from the four (4) DHS BAA research projects to the purchaser with all notes, data and results, and

(g) Transfer any shares in the company to the purchaser by 30 April 2013.

4. The Purchaser will:

(a) Accept the new terms in full satisfaction of the contract with Reference CEWK01 made between the vendor/company and the purchaser on 22 April 2013.

(b) Accept the vendor's 323,000 remaining "mined" Bitcoin as a 49.5% stake in a new venture to be formed in Australia (to be called Coin-Exch Pty Ltd) between the vendor and the purchaser for the exploitation of the joint and to be pooled Bitcoin

(c) Accept the transfer of the 323,000 Bitcoin (to be made on the 30th April 2013) as capital and note that shares in the new enterprise will be issued at this point.

CONFIDENTIAL

(d) Provide $30,000,000 in capital into Coin-Exch Pty Ltd (to be formed) and the software developed in the prior venture.

5. Settlement shall be effected on 30 April 2013.

6. So far as they are relevant the agreements contained in the incorporated contract for the sale of a business shall be agreements between the parties herein.

7. In the event of either party failing to complete this agreement on the settlement date then the other shall be entitled at any time thereafter to serve a notice to complete requiring the other to complete within 14 days from the date of service of the notice, which time period is considered reasonable by both parties. For the purpose of this contract, such notice to complete shall be deemed both at law and in equity sufficient to make time of the essence of this contract.

8. On the settlement date the vendors shall:
   (a) Deliver up to the purchaser possession of the business conducted by the company and in all respects shall have complied with the terms of the business sale contract incorporated herein;
   (b) Deliver up to the purchaser duly executed instruments of transfer of their shares;
   (c) Cause a meeting of the directors of the company to be held at which the directors shall approve and consent to the sale and transfer by the vendors to the purchaser of the vendors' shares.
   (d) Send all software developed under the various DHS BAA filings to the purchaser (incl. source code and documentation).
   (e) Provide the location and access rights to the ASC mining hardware hosted at a site known to Mr Kleiman will be returned with this transfer. This has a nominal value of $8,828,571.29 before depreciation. This is a
   (f) Solutions to the Agent and Merkle Tree problems developed by Professor David Reese.
   (g) Bitcoin agent software and suit of C/C++/C# and Python Blockchain software source codes.

CONFIDENTIAL

(h)     Exchange Bitcoin holdings as noted in the contract.

9.     The company hereby agrees to take all steps and carry out all acts to procure the registration on the settlement date of the purchaser as the registered holder of tile to the vendors' shares.

10.    The purchaser will make all reasonable endeavours to have the new venture (Coin-Exch Pty Ltd) registered for GST and under the Australian Corporations act provisions before settlement on the 30th April 2013.

11.    The parties hereto agree to execute and perform all such acts, deeds, documents and things whatsoever as may be necessary and desirable to better carry into effect the provisions of this agreement.

12.  **Vendor's warranties**
     (a)  **Vendor's authority to sell**
          (i)    The vendors are the registered and beneficial owners of their shares in the company.
          (ii)   The vendors have full power and authority to sell and transfer to the purchaser good legal and equitable title to the shares without the consent or authorisation of any person except only consents required by the company.
     (b)  **The company's financial statements**
          Other than matters disclosed to the purchaser in writing the books and accounts of the company truly and fairly reflect the company's affairs.
     (c)  **Books and records**
          The company's books, records and registers are in the possession of the company, and accurately record the details of all of the company's transactions, finances, assets and liabilities.
     (d)  **Taxation**
          (i)    Other than disclosed to the purchaser in writing the company has lodged or filed all tax and duty returns for all taxes including GST, income tax, sales tax, fringe benefits tax, payroll tax, group tax and WorkCare levies.

Page 5 of 9

DEF_00013699

(ii)     No claim has or will be made against the company for payment by the company pursuant to the provisions of the Income Tax Assessment Act 1936 of any tax which is not shown or included as a liability or provision in the balance sheet contained in the accounts.

(iii)     Neither the commissioner nor any federal, state or municipal body has any dispute with the company concerning the company's affair.

(e)   **Compliance with applicable laws**

(i)     Neither the vendor nor the company has breached, or caused a breach of the company's memorandum or articles of association; any contract, agreement or instrument which binds the company; or any judgment, order, injunction or decree of any court, commission or administrative body relating to the company or to the shares.

(ii)     Neither the company nor any of its officers, agents or employees (while performing their duties for the company) has breached the law. The company has not been notified that it has, or may have, breached the law regulating its affairs or the conduct of its business.

(f)   **Litigation and indebtedness**

Other than as disclosed to the purchaser in writing:

(i)     The company is not a party to, or threatened with, any claim, litigation, prosecution or arbitration in any court, tribunal or otherwise;

(ii)     There are no unsatisfied judgments or arbitral awards against the company;

(iii)     The company is not being investigated for any breach of the law. Neither the company nor any of its directors is aware of any breach of the law or of any circumstances, which would give rise to a breach of the law other than as disclosed to the purchaser in writing;

(iv)     The company has met all deadlines for repayment of its debts;

(v)     No petitions, notices or proceedings have come to the company's notice, which could result in it being wound up. No orders or resolutions have been made or passed to place the company in liquidation or provisional liquidation.

CONFIDENTIAL

DEF_00013700

(g) **Accuracy of disclosed information**

    (i)    The vendor has disclosed to the purchaser all information, which would be material for a purchaser in forming a decision whether or not to purchase the shares.

    (ii)    If either the vendor or the company becomes aware of anything which may constitute a breach of, or be inconsistent with any representation, warranty or undertaking in this agreement, they will notify the purchaser of its particulars promptly in writing.

(h) **Warranties and indemnities**

    (i)    It is a condition of this agreement that each warranty is true and correct in every respect and shall be construed separately.

    (ii)    The vendor acknowledges that the warranties have been given with the intention and for the purpose of inducing the purchaser to enter into this agreement.

    (iii)    The purchaser has entered into this agreement and agreed to the purchase price payable for the shares on the basis of and in full reliance upon the warranties.

    (iv)    Prior to the settlement date the vendor will take all such steps and provide all such information and documents with regard to the company as the purchaser may reasonably require and will give the purchaser and its professional advisers full and free access to the records and accounts of the company (whether financial or otherwise) to enable them to fully investigate the accuracy of the warranties.

## 13. Notices

A communication required by this agreement, by a party to another, must be in writing and may be given to them by being:

(a) Delivered personally; or

(b) Posted to their address specified in this agreement, or as later notified by them, in which case it will be treated as having been received on the second business day after posting; or

(c)  Faxed to the facsimile number of the party with acknowledgment of receipt received electronically by the sender, when it will be treated as received on the day of sending; or

(d)  Sent by email to their email address, when it will be treated as received on that day.

## 14.  Waiver or variation

(a)  A party's failure or delay to exercise a power or right does not operate as a waiver of that power or right.

(b)  The exercise of a power or right does not preclude:

(i)  Its future exercise; or

(ii)  The exercise of any other power or right.

(c)  The variation or waiver of a provision of this agreement or a party's consent to a departure from a provision by another party will be ineffective unless in writing executed by the parties.

## 15.  Counterparts

This agreement may be executed in any number of counterparts each of which will be an original but such counterparts together will constitute one and the same instrument and the date of the agreement will be the date on which it is executed by the last party.

## 16.  Further assurance

Each party will from time to time do all things (including executing all documents) necessary or desirable to give full effect to this agreement.

## 17.  Costs

Each party will pay their own costs in relation to this agreement.

CONFIDENTIAL

DEF_00013702

**SIGNED AS AN AGREEMENT**

Executed by
W & K Info Defense LLC                    )

Dave Kleiman
DIRECTOR

Executed by
Craig Wright R&D (A.B.N. 97 481 146 384)

Craig S Wright

Page 9 of 9

DEF_00013703

# DEED OF LOAN

## PARTIES

**Design by Human Ltd (08248988) UK**
(Mortgagee)

**AND**

**Craig Wright R&D (ABN 97 481 146 384)**
(Mortgagor)

**AND**

**Denariuz Seychelles Trust**
(Guarantor)

CRAIG S WRIGHT

Confidential
Not to be disclosed.

Uyen T. Nguyen

THIS DEED dated 23 day of October 2012

**BETWEEN:**

Uyen Nguyen of Design by Human Ltd (08248988) UK

**(Mortgagee)**

And

Craig Steven Wright of Craig Wright R&D (ABN 97 481 146 384)

**(Mortgagor)**

And

Panopticrypt Pty Ltd for Denariuz Seychelles International Trust

**(Guarantor)**

**RECITALS**

A.   The mortgagee has, at the request of the guarantor, if applicable, agreed to lend money (in the form of Bitcoin) to the mortgagor in accordance with and subject to the terms of this deed.

B.   The guarantor, if any, and the mortgagor acknowledge that the money referred to in this deed has been received by the mortgagor.

C.   It is noted that the Mortgagee holds a sum of Bitcoin (in wallets noted in appendix A) for a trust that wishes to extend the uptake and value of Bitcoin globally.

**OPERATIVE PART**

1.   **Loan**

(a)   The mortgagee has at the request of the guarantor, agreed to lend to the mortgagor the principal sum shown in the first schedule on the drawdown date shown in the first schedule.

(b)   The mortgagee may at the request of the mortgagor lend further amounts of money to the mortgagor and all such amounts shall be deemed to be money lent by the mortgagee to the mortgagor pursuant to this clause provided always that the mortgagee shall not be obliged or required to lend such further money to the mortgagor hereunder.

2.   **Interest**

The mortgagor covenants with the mortgagee to pay to the mortgagee interest in respect of the principal sum calculated in accordance with the provisions of the second schedule at the time and in the manner therein set forth and to duly

Uyen T. Nguyen

Page 1 of 7

and punctually observe and perform every other obligation contained in the second schedule.

3. **Repayment**

   (a) The mortgagor covenants with the mortgagee to repay the principal sum or so much thereof as is then unpaid to the mortgagee on the due date shown in the first schedule.

   (b) The mortgagor further covenants with the mortgagee that the money owing will be repaid upon written demand being made by the mortgagee at any time after the happening of any of the following events:

   (i) Default being made by the mortgagor in the due or punctual payment to the mortgagee of any money which comprises part of the money owing;

   (ii) The failure of the mortgagor to rectify a default in the due or punctual observance or performance of any other obligations on the part of the mortgagor under this deed within 7 days of being requested to do so by the mortgagee;

   (iii) Any collateral security or any mortgage, charge or encumbrance ranking in priority to or pari passu with any collateral security becoming enforceable;

   (iv) If any collateral security is or becomes wholly or partly void, voidable or unenforceable or is claimed to be so by the mortgagor; and

   (v) If any event occurs that renders a collateral security enforceable.

4. **Early repayment**

   The mortgagor shall be entitled to repay the whole of the principal sum or the amount then unpaid at any time with interest to the date of repayment.

5. **Security**

   (a) In consideration of the mortgagee advancing money to the mortgagor under or pursuant to this deed each of the mortgagor and the guarantor, if any, agrees to execute or upon demand from the mortgagee procure the

Uyen T. Nguyen

DEF_00051506

execution in favour of the mortgagee of the securities referred to in the third schedule.

(b) The mortgagor and the guarantor, if any, agree that each of the securities described in the third schedule is a collateral security to the intent that the money owing is secured thereby. Default under any of the collateral securities shall constitute default under this deed.

(c) Collateral security means any mortgage, charge or other encumbrance affecting any real or personal property now in existence or which may in the future be given to the mortgagee by the mortgagor or any other person as security for the payment of the whole or any part of the money owing whether or not any other money is also secured thereby.

6. **Governing laws and jurisdiction**

The laws in force in Seychelles govern this deed.

7. **Guarantors guarantee and indemnity**

(a) The guarantor agrees that the guarantee and indemnity is a continuing guarantee, and extends to the ultimate balance owing under this deed, and that the guarantor remains fully liable under the guarantee and indemnity despite the fact that the mortgagee might have done something which may otherwise have the effect at law or in equity of varying or discharging the guarantor's liability.

(b) The mortgagee need not first exercise its rights against any of the mortgagors or against the mortgagors' security before exercising its rights under this guarantee against the guarantors.

8. **Costs**

The mortgagor shall pay all costs fees and duties in relation to this deed and any collateral security.

THE FIRST SCHEDULE

| Item 1 | **Principal sum 650,000 BTC** |
| Item 2 | **Due date** 30 June 2020 |
| Item 3 | **Drawdown date 01st July 2013** |

Page 3 of 7

## THE SECOND SCHEDULE

**Interest only loan**

The mortgagor will pay to the mortgagee the principal sum, or so much thereof as shall remain unpaid on 30 June 2020 and in meantime may pay multiples of BTC 50,000 in reduction of the principal sum on any due day for payment and interest shall reduce accordingly from the date of such partial reduction in the principal sum.

In the meantime the mortgagor will pay interest only to the mortgagee on any amount payable under this deed at the rate of 0.05% per annum calculated on monthly rests and payable on the first day of each and every month commencing on the 30th day of July 2016 and compounding monthly from the date upon which the amount becomes due until payment. Such interest may be capitalised by the mortgagee as it deems appropriate and the mortgagor shall pay interest on the capitalised interest at the same rate and calculated in the same manner. Provided always, and it is hereby agreed and declared, that if the mortgagor shall on every day on which interest is hereinbefore made payable under this security, or within 14 days after each such days respectively, pay to the mortgagee interest on the principal sum or on so much thereof as shall for the time being remain unpaid at the rate of 0.05% per annum, and shall also duly observe and perform each and every covenant on the mortgagor's part herein contained or implied then the mortgagee shall accept interest on the said principal sum or on so much thereof as shall for the time being remain unpaid at the rate of 0.05% per annum in lieu of 0.05% per annum for every month for which such interest shall be paid to the mortgagee within such 14 days aforesaid.

The mortgagor agrees, as an independent obligation which will not merge in any judgment or order, to pay interest on any judgement or order for the payment of all or any part of the money secured at the higher of the rate payable under the judgment or order or interest calculated at the rate and in the manner set out in the preceding sub-clause.

OR

**Reducible mortgage principal and interest repayments**

Uyen T. Nguyen

Page 4 of 7

DEF_00051508

The mortgagor will pay to the mortgagee the principal sum, or so much thereof as shall remain unpaid on 30 June 2018.

In the meantime the mortgagor will pay the principal and interest on the principal sum or on so much thereof as for the time being shall remain unpaid, and upon any judgment or order in which this or the preceding covenant may become merged at the rate of 0.05% per annum as follows, namely, by equal monthly payments on the first day of each and every month in each and every year until the principal sum and interest shall be fully paid and satisfied, the first of such payments computed from 01st July 2017 to be made on 01st July 2018 next. Provided always, and it is hereby agreed and declared, that if the mortgagor shall on every day on which principal and interest is hereinbefore made payable under this security, or within 14 days after each such days respectively, pay to the mortgagee interest on the principal sum or on so much thereof as shall for the time being remain unpaid at the rate of 0.05% per annum, and shall also duly observe and perform each and every covenant on the mortgagor's part herein contained or implied then the mortgagee shall accept interest on the said principal sum or on so much thereof as shall for the time being remain unpaid at the rate of 0.05% per annum in lieu of 0.05% per annum for every month for which such interest shall be paid to the mortgagee within such 14 days aforesaid.

The mortgagor agrees, as an independent obligation which will not merge in any judgment or order, to pay interest on any judgment or order for the payment of all or any part of the money secured at the higher of the rate payable under the judgment or order or interest calculated at the rate and in the manner set out in the preceding sub-clause.

**THE THIRD SCHEDULE**

(COLLATERAL SECURITY) First/Second mortgage over PERMANENT SUCCESS LIMITED UK being the whole of the shares comprised in UK company reference 08260048 and all related trusts.

Uyen T. Nguyen

DEF_00051509

**EXECUTED AS A DEED**

Design by Human Ltd (08248988) UK
(Mortgagee)

By: Uyen Nguyen
016 Lô L, cư xá Thanh Đa, phường 27, quận Bình Thạnh, Thành phố Hồ Chí Minh

Craig Wright R&D (ABN 97 481 146 384)
(Mortgagor)

By: Craig Wright
7 Eastgate Ave Gordon NSW 2072

Denariuz Seychelles Trust
(Guarantor)

Page 6 of 7

DEF_00051510

**Appendix 1:**
Bitcoin block addresses transferred:

| | |
|---|---|
| 12tLs9c9RsALt4ockxa1hB4lTCTSmxj2me | 10,000.00 |
| **1933phfhK3ZgFQNLGSDXvqCn32k2buXY8a** | 111,114.00 |
| 1FeexV6bAHb8ybZjqQMjJrcCrHGW9sb6uF | 79,957.05 |
| 1f1miYFQWTzdLiCBxtHHnNiW7WAWPUccr | 10,009.25 |
| **1MHdm5XZMrfoZFoUktEaGhYevmdiXoc4x4** | 12,950.00 |
| 18JPragfuDVHWWG8ABQ15cghJFetnXUJBD | 24,404.50 |
| 1LXc28hWx1t8np5sCAb2EaNFqPwqJCuERD | 34,512.80 |
| **1FpqQnKQCgDkJFMC94JL8FpRyHTZ3uRVZ1** | 10,689.03 |
| 1F34duy2eeMz5mSrvFepVzy7Y1rBsnAyWC | 10,770.52 |
| 1JtpgqCf3SSeCeYWEDJjkfYFH7Ruhy4Vp1 | 10,000.00 |
| **18k9tin39LKegFzHe8rxSgvJXDpuMriGJq** | 10,000.00 |
| 1HtTw9zR9wWFfgV8Jy8MqsaeVi7ZXrjdq6 | 1,014.00 |
| 18pn4NQ7NgsJjeuFjazeTdVRnsmfw5ofTz | 750.00 |
| **12fZ2HxkLjG9zn1u44XYsFFYKHM4A2zCea** | 23,249.04 |
| 12tkqA9xSoowkzoERHMWNKsTey55YEBqkv | 28,150.04 |
| 16Ls6azc76ixc9Ny7AB5ZPPq6oiEL9XwXy | 40,000.04 |
| **12HddUDLhRP2F8JjpKYeKaDxxt5wUvx5nq** | 40,000.04 |
| 1P3S1grZYmcqYDuaEDVDYobJ5Fx85E9fE9 | 50,000.04 |
| 1MyGwFAJjVtB5rGJa32M6Yh46cGirUta1K | 30,000.04 |
| **145YHsQU7HMzkRnD5SBSuFAzQgCYnAnLkN** | 10,000.00 |
| 16TPVCpvtJ6FkV5xNKBp35aMo4BWFGxiEY | 10,000.00 |
| 1KbrSKrT3GeEruTuuYYUSQ35JwKbrAWJYm | 10,000.00 |
| **1FLFnbN7m5psLfvLEwYfRUUjJ34YkmV3dM** | 3,700.00 |
| 1A6SDef1TJAM8Saw2SqmqFGhkWR1y3qMx2 | 4.65 |
| **16cou7Ht6WjTzuFyDBnht9hmvXytg6XdVT** | 53,000.00 |
| 12ib7dApVFvg82TXKycWBNpN8kFyiAN1dr | 31,000.04 |





Page 7 of 7

DEF_00051511



I Uyen Nguyen of:

016 Lô L, cư xá Thanh Đa, phường 27, quận Bình Thạnh, Thành phố Hồ Chí Minh,

Consent to act as director of the following companies from the later date of 30 June 2013:

- Design by Human Ltd (08248988) UK (Dept 2, 43 Owston Road Carcroft, Doncaster, DN6 8DA)
- PERMANENT SUCCESS LIMITED (08260048) UK (Dept 2, 43 Owston Road Carcroft, Doncaster, DN6 8DA)

I also accept the position of COO (Chief Operations Officer) of the following companies from 18 Oct 2012.

- Design by Human Ltd (08248988) UK (Dept 2, 43 Owston Road Carcroft, Doncaster, DN6 8DA)
- PERMANENT SUCCESS LIMITED (08260048) UK (Dept 2, 43 Owston Road Carcroft, Doncaster, DN6 8DA)

Signed:

# INTELLECTUAL PROPERTY LICENCE
## FUNDING AGREEMENT

**PARTIES**

**Craig Wright R&D**
ABN 97 481 146 384
(Financer)

**AND**

**W&K Info Defense LLC**
(Provider)

Ref CEWK01

CONFIDENTIAL

KLEIMAN_00561675

**THIS DEED** dated 22nd day of April 2011

**BETWEEN**

      Craig Wright of Craig Wright R&D

                                                     (Financer)

And

      Dave Kleiman for W & K Info Defense LLC

                                                     (Provider)

## RECITALS

**A.** The Financer controls the following Bitcoin (BTC) addresses:

      (a)    12hRmmSda9qSSEH656zBaKEbeisH6ZhdTm.

      (b)    12C9c9VQLMrLi4Ffzq2wDvwrKnUPaAaNFp.

**B.** The Provider desires the intellectual property for the permitted use and to extend this for other purposes desirable to both parties.

**C.** The Provider will use the funding for the development of several software products.

**D.** The provider will return the loaned finances (in Bitcoin) on or before 01 July 2013 and 30 Dec 2013.

**E.** The Provider will remain completely confidential on all matters in this deed (including even that family members do not have knowledge of the transaction).

**F.** The financer will send the following amounts (in Bitcoin) to to following address by 30 April 2011:

      (a)    165,140 BTC

      (b)    1MSUvGS9BEjpL35CKu7feF4HaPCXv2cht7

**G.** The financer will send the following amounts (in Bitcoin) to toe following address by 30 August 2011:

      (a)    50,000 BTC

      (b)    1JjtxXmbC95sgn5kE2Hm92axA7hcbDkRhK

**H.** The Financer and the Provider wish to record the licence, which has been granted to the Provider to use the intellectual property in accordance with this deed.

**I.** The Financer is the absolute owner of the entire unencumbered copyright in the works described in the schedule when complete.

**J.** The Financer has agreed to license the works to the Provider and the Provider has agreed to accept such licence on the following terms and conditions.

**K.** The provider will fund the software development using Bitcoin.

2

KLEIMAN_00561676

**L.**   The Financer will provide 1,024 core Xeon and GPU based hardware solution.

      (a)   It is acknowledged that two SGI ICE XE310 – 512 core hosts have been provided and are in a data centre specified by the provider

      (b)   The provider will use these systems to mine Bitcoin

      (c)   The provider expects to earn 12,000 BTC per month using these systems for the period to 30 June 2013

      (d)   The systems will be hosted in the US at a facility managed by the provider.

**M.**   The provider will pay for the use of the systems and the loan as follows:

      (a)   250,000 BTC to be repaid on 30 June 2013

      (b)   50,000 BTC to be repaid on 30 Dec 2013

      (c)   The developed software will be exclusively licensed perpetually to the financer (as of 30 June 2013).

      (d)   The software may be used but not distributed by the provider.

**N.**   The contract is complete when 300,000 BTC have been repaid.

**O.**   It is agreed that the value of the loan to be repaid is $ AUD 20,000,000 in two parts (for a total of $40,000,000).

**P.**   The server systems will return to the Financer at the completion of the contract.

**Q.**   On default, the contract is to be repaid in full to the financer.

3

KLEIMAN_00561677

OPERATIVE PART

1.   Definitions

In this deed:

(a)   Business means the business operated by the Provider described as such in the schedule;

(b)   Business day means a day, not being a Saturday, Sunday or gazetted public holiday, on which banks are open for commercial business where performance of an obligation under this deed is to take place;

(c)   Claim means, in relation to a person, a claim, demand, remedy, suit, injury, damage, loss, cost liability, action, proceeding, right of action, chose in action, claim for compensation or reimbursement or liability incurred by or to be made or recovered by or against the person, however arising and whether ascertained or unascertained, or immediate, future or contingent;

(d)   Commencement date means the date so specified in the schedule;

(e)   Confidential information means all technical and other information and know how, including all information and know how in any eye or machine readable form or other format, disclosed or given to the Provider from any source in respect of or incidental to:

   (i)   The product;

   (ii)   The technology;

   (iii)   The Financer; and

   (iv)   Any other information disclosed or given to the Provider by the Financer which is declared by the Financer to be confidential information;

(f)   Improvements means any improvement, modification, enhancement or derivative of the intellectual property arising during the term;

(g)   Intellectual property means:

   (i)   The confidential information;

   (ii)   The improvements;

   (iii)   The patent; and

   (iv)   The trade mark;

(h)   Licence fee means the amount calculated and paid by the Provider to the Financer specified in the schedule;

4

KLEIMAN_00561678

(i) Notice means a written notice, consent approval, direction, order or other communication;

(j) Obligation means any legal, equitable, contractual, statutory or other obligation, deed, covenant, commitment, duty, undertaking or liability;

(k) Patent means the registered patent or patent application including the provisional and complete specifications described in the schedule;

(l) Permitted use means to conduct the business to exploit market, promote, develop, integrate, research, sell and conduct and any other activity undertaken with respect to the product for profit or reward;

(m) Product means the product described as such in the schedule;

(n) Right includes a legal, equitable, contractual, statutory or other right, power, authority, benefit, privilege, remedy, discretion or cause of action;

(o) Technology means all that technical information which relates to or forms part of the product, including, without limitation, methodology, techniques, drawings, outlines, notes, algorithms, detailed designs, flow charts, results, software; partial or intermediate versions and prototypes, data, formulae and other proprietary information and know how in the Provider's possession or control or which is revealed to the Provider which relates to the product,

(p) Term means the term set out in the schedule; and

(q) Trade mark means the registered trade mark, trade mark registration application and common law trademarks described in the schedule.

## 2. Interpretation

This deed is governed by the law of NSW and the parties submit to the non-exclusive jurisdiction of the courts of that state.

In the interpretation of this deed:

(a) References to legislation or provisions of legislation include changes or re-enactments of the legislation and statutory instruments and regulations issued under the legislation;

(b) Words denoting the singular include the plural and vice versa; words denoting individuals or persons include bodies corporate and vice versa; references to documents or deeds also mean those documents or deeds

5

KLEIMAN_00561679

as changed, novated or replaced, and words denoting one gender include all genders;

(c)   Grammatical forms of defined words or phrases have corresponding meanings;

(d)   Parties must perform their obligations on the dates and times fixed by reference to the schedule;

(e)   Reference to an amount of money is a reference to the amount in the lawful currency of the Commonwealth of Australia;

(f)   If the day on or by which anything is to be done is a Saturday, a Sunday or a public holiday in the place in which it is to be done, then it must be done on the next business day;

(g)   References to a party are intended to bind their executors, administrators and permitted transferees; and

(h)   Obligations under this deed affecting more than one party bind them jointly and each of them severally.

## 3.   Licence

The Financer hereby grants to the Provider an exclusive licence to use the intellectual property for the permitted use on the terms of this deed.

In consideration of the licence fee payable hereunder the Financer grants to the Provider an exclusive transferrable licence to copy publish sell or otherwise use the works in the course of its business in Australia and/or Overseas in respect of the whole or any part of the works commencing on 01st July 2013.

In consideration of the licence hereby granted to the Provider the Provider must pay a one off licence fee of $20,000,000 (GST exclusive) to the Financer on or before the 30th June 2013. The provider will also transfer the designated account of the provider:

(a)   250,000 BTC to be repaid on 30 June 2013

(b)   50,000 BTC to be repaid on 30 Dec 2013

6

KLEIMAN_00561680

The payment is to be issued in Bitcoin as per the schedule

## 4.   Provider's promises

### (a)   Undertakings

The Provider undertakes to:

(i)   Use its reasonable commercial endeavours to:

    (1)   Preserve the value and validity of the intellectual property; and

    (2)   Create, promote, retain, and enhance the goodwill in the intellectual property;

(ii)   During the term and thereafter the termination of this deed not to allow or facilitate the use, nor exploit the intellectual property in a manner in any way detrimental to the Financer and not contravene, deny or contest the rights subsisting in the intellectual property, and take such steps as may be appropriate and available to the Provider to prevent the infringement of any and all the rights subsisting in the intellectual property;

(iii)   In connection with the permitted use not give any warranty:

    (1)   Beyond that which the Provider is obliged in law to give; or

    (2)   Which has not been approved in writing by the Financer;

(iv)   To use the intellectual property only for the permitted use and not for any other use;

(v)   Treat as confidential the confidential information except that which at the time of its disclosure to the Provider was generally available, or subsequently became known to the public provided always that this covenant shall continue in full force and effect notwithstanding that this deed has terminated; and

(vi)   Devote all reasonable commercial endeavours in the conduct and operation of the business.

### (b)   Indemnity

(i)   The Provider hereby agrees to fully, effectually, and promptly indemnify the Financer against any loss, either direct or indirect, damage or expense whatsoever which the Financer may suffer or incur in respect of:

    (1)   Any breach by the Provider of the provisions of this deed; or

7

KLEIMAN_00561681

(2)    Any claim by any person against the Financer arising out of or in respect of the exploitation of the intellectual property by the Provider; and

(ii)    The Provider hereby irrevocably releases the Financer and waives all claims which the Provider may have in the future against the Financer, in respect of any action claim or remedy whatsoever in any way attributable to the exploitation of the intellectual property by the Provider.

## 5.  Improvements

If the Provider develops any improvements, the Financer hereby irrevocably:

(a)    Grants to the Provider the right to apply for any incidental intellectual property rights available in respect of that improvement and in connection with such application, the Financer shall:

    (i)    Make, supply and assist in the preparation of all models, plans, drawings or specifications necessary or convenient for the proper understanding or development of the improvements; and

    (ii)    Grant and do all things necessary to give effect to an assignment of the intellectual property rights in respect of the improvements to the Provider;

(b)    Assigns, transfers and sets over absolutely to the Provider all right title and interest to the improvements including all claims as they relate to the improvements.

## 6.  GST

(a)    GST means a goods and services tax as defined in A New Tax System (Goods and Services Tax) Act 1999.

(b)    In respect of any taxable supply, the Provider must pay to the Financer an additional amount equal to the prevailing GST rate on the supply. The additional amount referred to in this clause is payable at the same time and in the same manner as the licence fee subject to the receipt by the Provider of a valid tax invoice, as defined in A New Tax System (Goods and Services Tax) Act 1999.

8

KLEIMAN_00561682

7. Term and termination

    (a) Term

        This deed begins on 01st July 2019 the commencement date and will continue for the term unless it is earlier terminated.

    (b) Termination on notice

        Either party may terminate this deed by notice in writing to the other if the other party commits any breach of any provision of this deed, and has failed to remedy such breach within fourteen days of receipt of notice specifying:

        (i)   The exact nature of the breach committed by the defaulting party; and

        (ii)  What is required by the defaulting party to remedy the breach;

8. Licence fee

    (a) Payment of licence fee

        The Provider must pay the licence fee specified in the schedule to the Financer during the term.

    (b) Late payment

        If the licence fee or any other monies payable by the Provider to the Financer remain unpaid for seven days after the due date for payment, whether or not formal demand has been made, then the Provider shall pay, in addition to any monies actually owing to the Financer, interest at the rate of 2% over the bank indicator lending rate nominated by the Financer on such monies from the date the payment actually fell due until such monies are recovered and paid to the Financer.

9. Warranties by Financer

The Financer warrants to the Provider that:

    (a)  The Financer has the power and authority to enter into this deed; and

    (b)  The intellectual property rights granted under this deed will not when used in accordance with this deed infringe the intellectual property rights of any person.

CONFIDENTIAL

KLEIMAN_00561683

10. **Third party claim**

    (a)   Provided that the Provider is not in breach of its obligations under this deed, if a third party makes a claim against the Provider alleging that use of the intellectual property infringes its intellectual property rights, the Financer will defend, indemnify and hold harmless the Provider from such a claim provided that the:

        (i)   The Provider notifies the Financer in writing promptly of the claim;

        (ii)   The Provider provides such information, assistance and co-operation as the Financer may reasonably request and at its expense, from time to time; and

        (iii)   The Financer has full discretion to defend, compromise or settle any such claim on such terms as the Financer deems fit.

    (b)   If the Financer cannot satisfactorily settle the claim so as to retain ownership of the intellectual property, its liability will be limited to terminating this deed, and refunding the Provider an amount equal to the portion of any licence fee paid for the period following termination.

    (c)   Nothing in this clause authorises the Provider to defend, compromise or settle any claim on the Financer's behalf.

11. **Limitation of liability**

    (a)   Other than in respect of a party's:

        (i)   Breach of the confidentiality provisions of this deed; or

        (ii)   Infringement of another party's intellectual property rights; or

        (iii)   Indemnification obligations under this deed; or

        (iv)   Wilful misconduct.

    (b)   Neither party will be liable to the other for any consequential, special or punitive damages arising out of this deed. Each party's cumulative direct damages will be limited to the licence fee payable under this deed in the prior twelve month period. This clause survives the termination or expiration of this deed.

CONFIDENTIAL

KLEIMAN_00561684

### 12. Assignment

No party may assign its rights or obligations under this deed without the prior written consent of the other parties, which consent may be given or withheld, or given on conditions, in the absolute discretion of those other parties.

### 13. Time

The parties hereto agree that time shall in all respects be of the essence in regards this deed.

### 14. Notices

A communication required by this deed, by a party to another, must be in writing and may be given to them by being:

(a)   Delivered personally; or

(b)   Posted to their address specified in this deed, or as later notified by them, in which case it will be treated as having been received on the second business day after posting; or

(c)   Faxed to the facsimile number of the party with acknowledgment of receipt received electronically by the sender, when it will be treated as received on the day of sending, or

(d)   Sent by email to their email address, when it will be treated as received on that day.

### 15. Waiver or variation

(a)   A party's failure or delay to exercise a power or right does not operate as a waiver of that power or right.

(b)   The exercise of a power or right does not preclude:

(i)   Its future exercise; or

(ii)   The exercise of any other power or right; or

(iii)   The variation or waiver of a provision of this deed or a party's consent to a departure from a provision by another party will be ineffective unless in writing executed by the parties.

11

CONFIDENTIAL

KLEIMAN_00561685

16. **Counterpart**

This deed may be executed in any number of counterparts each of which will be an original, but counterparts together will constitute one and the same instrument, and the date of the deed will be the date on which it is executed by the last party.

17. **Costs**

(a)   Each party will pay its own costs of and incidental to this deed.

(b)   The Provider will bear all duty payable on this deed and keep indemnified the Financer in respect of that liability.

(c)   The Provider will bear all GST payable in respect of any supply under this deed upon receipt of tax invoice issued by the Financer.

18. **Escrow**

(a)   The paper Bitcoin Wallet with address 1933phfhK3ZgFQNLGSDXvqCn32k2buXY8a will be held by the financer as assurance of the contract and will convert to the ownership of the financer on default of the provider.

(b)   All source code and agreements are to be held in a manner that the financer can access on default.

12

CONFIDENTIAL

KLEIMAN_00561686

### REFERENCE SCHEDULE

**Deed date:**            01st April 2011


**Licence fee:**          (a)      250,000 BTC to be repaid on 30 June 2013

                          (b)      50,000 BTC to be repaid on 30 Dec 2013

                          (ex GST) for exclusive perpetual assignment


**Product:**              Bitcoin and Exchange Software in C/C++/C#/R code


**Commencement date:**    01st July 2011


**Term:**                 Two (2) years


**Trademark:**            All Marks Associated with C01N and associated marks

                          To be filed


**Patent:**               All IP under BAA-001 / 002 / 003 / 004


13

                                                    KLEIMAN_00561687

SIGNED AS A DEED

Executed by
W & K Info Defense LLC                    )
in accordance with s.127                  )
Corporations Act 2001 (CTH) and its constitution          )

*Dave Kleiman*

Dave Kleiman
 DIRECTOR

Executed by
Craig Wright R&D (A.B.N. 97 481 146 384)

Craig S Wright

14

KLEIMAN_00561688