## SUMMARY OF AGREED TERMS

### PHASE I – STABILIZE AND CLEAN UP

- **$1,500,000 Asset Purchase.** NewCo will purchase outright all IP and technology in deMorgan ("*Company*") and all Company subsidiaries and identified entities for $1,500,000[1]. This gets the IP out of danger and puts some capital back into the company. Standard warranties regarding validity and transferability of technology and IP. These funds should first and foremost be used to clear debts to all valid creditors in preparation for eventual subsequent wind-down.

  [Notes: This immediately gets the IP out of danger, should the ATO process not conclude as intended. This also provides the first of two significant arguments in the ATO matters, demonstrating that the development costs to date were indeed commercially viable.]

- **$4,800,000 Services Agreement.** DR TECHNOLOGIES LTD. will enter into a technology development, maintenance and consulting agreement with Company for up to two (2) years on a retainer basis at a monthly retainer rate of $200,000. This service agreement will allow us to re-hire staff and recommence development ASAP. IP and technology development done during this period will accrue under the agreement to DRTL, and development will be exclusive to DRTL.

  [Notes: Serves three purposes. Firstly, this provides a stable source of funding for the operation during this interstitial period. Secondly, by establishing a long-term client relationship such as this, the ATO cannot take the position that this is not an "enterprise". Finally, this ensures that any new IP or technology developed during this subsequent period is similarly protected and vests in DRTL]

- **$2,500,000 Convertible Loan.** NewCo issues a convertible loan for $1,500,000 AU to Company, with an option for up to 1,000,000 more. The conditions of the loan are as follows:

  - Maximum 3 year term, interest rate of 0.25% per annum
  - Unless otherwise agreed in writing with NewCo, the loan shall be used only to fund solicitor fees and disbursements associated with the ATO matters, any approved patent application preparation or filings, and any

---

[1] All amounts herein are denominated in AUD unless otherwise indicated.

consulting, etc.) can be contracted back to NewCo by way of services agreements, whether to arms-length third parties or internally by way of transfer pricing arrangements. NewCo will be initially capitalized to $1,000,000 USD by the investor, then subsequent R&D and operations will be initially funded by the payment received if the R&D claims in Company are successful or, if not, by subsequent direct cash infusion by investor.]

- **Equity in NewCo.** Upon incorporation, NewCo will immediately grant to the Wrights with 37% of issued and outstanding voting common stock. This 37% holding shall be subject to non-dilution protections and NewCo shall not issue common stock or voting stock of any kind in NewCo, unless otherwise expressly agreed in writing by the Wrights. These shares shall be held in a blind trust for the Wrights or for such holding vehicle the Wrights shall nominate until such time as Company and all subsidiaries of Company are wound up and all regulatory or tax matters have been finalized properly.

    [Notes: The intention is that, once the Australian companies are properly wound down, that the Wrights own a full 37% equity stake in this entity. Directorship appointments should be discussed, both internal and external, but this has not been canvassed here. The incremental 2% equity (from 35% to 37%) shall be made available to the Wrights to make equity in their vehicle available to key personnel or staff.]

- **$3,500,000 Rights and Services Agreement.** NewCo will enter into a direct exclusive services agreement with Craig as Chief Scientist.

    [Notes: This would consist of a $1,000,000 initial rights payment, followed by an annual services arrangement for R&D of $500,000 for five years, and renewable for subsequent periods. This would provide supplemental income to the Wrights and would cover any IP developed outside of Company, and would also grant NewCo the exclusive rights to Craig's life story for subsequent publication or release (suggest NewCo retain a researcher and ghost writer to begin background research and preparation, as precautionary measure).]

- **New Research Facility.** Going forward, set up a new company as a sub of NewCo in some favorable jurisdiction where talent is available for the R&D. This entity can employ the team as a service provider to NewCo, with the IP vesting back to NewCo.



## INTERIM FINANCING OF LEGAL PROCESS

- **Bridge Financing.** Prior to the preparation of formal agreements for the Convertible Loan above, bridge financing will be made available through FIRSTLINE CONSULTANTS LTD. This loan will be paid out immediately with the proceeds of the final Convertible Loan advances once such formal agreement is in place.

IN WITNESS WHEREOF, the parties hereto have caused this letter of intent to be signed and sealed as 29 June 2015.

**DeMORGAN LTD.**

per _[signature]_
Signature

Ramona Watts
Name

29/6/15
Date

**THE STERLING GROUP**

per _[signature]_
Signature

STEFAN MATTHEWS
Name

29 June 2015
Date

**DR CRAIG WRIGHT**

_[signature]_
Signature

29 Jun 15
Date

CONFIDENTIAL
DEF_00074673