# EXHIBIT A

```
 1                 UNITED STATES DISTRICT COURT

 2                 SOUTHERN DISTRICT OF FLORIDA

 3                  CASE NO. 9:18-cv-80176-BB/BR

 4
     IRA KLEIMAN, as the personal representative
 5   of the Estate of David Kleiman, and
     W&K Info Defense Research, LLC,
 6
                Plaintiffs,
 7
     -vs-
 8
     CRAIG WRIGHT,
 9
                Defendant.
10

11   * * * * * * * * * * * * * * * * * * *

12   VIDEOTAPED DEPOSITION OF DR. MATTHEW EDMAN

13   DATE TAKEN: January 16, 2020

14   TIME: 10:10 a.m. - 2:50 p.m.

15   PLACE: 2525 Ponce de Leon Boulevard

16   Miami, Florida 33134

17
     TAKEN BEFORE: RICK E. LEVY, RPR, FPR
18                 AND NOTARY PUBLIC

19

20   * * * * * * * * * * * * * * * * * * *

21

22

23

24

25
```

```
 1   have anything to do with whether or not a clean
 2   environment was used.
 3        Q.   Dr. Edman, do you need a write blocker to
 4   ensure the opinions you've reached today are reliable,
 5   accurate and meet the standards necessary for your
 6   profession?
 7        A.   No.
 8        Q.   Why?
 9        A.   For the same reason.  Manipulations that I've
10   identified in my opinion have nothing to do with whether
11   or not a write blocker was used for when I retrieve
12   these documents.
13        Q.   So asked in another way Dr. Edman can you
14   verify that your process didn't modify anything of
15   significance without the use of a clean test
16   environment?
17        A.   Yes, that is my belief.
18        Q.   Can you verify the same that your process
19   didn't modify anything of significance without the use
20   of a write blocker?
21        A.   Yes, again that is my belief.
22        Q.   Dr. Edman, you testified earlier that it's
23   possible documents that may have been wiped would change
24   your opinion.  Do you recall making that testimony?
25        A.   Yes.
```

1      Q.   Do you have any knowledge that Dave Kleiman
2   e-mails were on hard drivers that were wiped?
3      A.   No, I have no firsthand knowledge of that.
4      Q.   You opined that many of the documents you
5   reviewed were forged or altered in 2014 and 2015; isn't
6   that correct?
7      A.   Yes, that is consistent with my analysis.
8      Q.   And Dave Kleiman died in April 2013; is that
9   correct?
10     A.   That is my understanding.
11     Q.   And you opined that the forged alterations
12  included changes to the names of the senders and
13  recipients, the times of sending and contents of those
14  documents, do you recall that?
15     A.   Yes.
16     Q.   Dr. Edman, do you believe any such e-mails
17  existed that were then wiped?
18          MR. KASS:  Objection.
19          MR. FREEDMAN:  You can answer.
20          MR. KASS:  Calls for speculation.
21          THE WITNESS:  I have no knowledge whether
22     there were any e-mails on there.
23  BY MR. FREEDMAN:
24     Q.   Do you expect such documents existed in light
25  of your opinions and findings in this case?

```
 1              MR. KASS:  Objection, calls for speculation.
 2              THE WITNESS:  No.
 3  BY MR. FREEDMAN:
 4       Q.   So when the you testified earlier that it is
 5  possible such documents would change your opinion is it
 6  fair to say that you meant it in a way of that because
 7  you are a scientist anything is possible but it is not
 8  probable?
 9       A.   Yes, I think that's a fair characterization.
10       Q.   Would you go so far as to say the proposition
11  that such documents actually existed and were wiped is
12  so remote that should not be factored into a reasonable
13  analysis conducted by a computer forensics professional?
14              MR. KASS:  Objection.
15              THE WITNESS:  I don't know exactly what you
16          mean by so remote but no, I don't believe that --
17          can you say the question again?
18  BY MR. FREEDMAN:
19       Q.   Sure.  Would you go so far to say the
20  proposition that these documents existed is so unlikely
21  that that should not be factored into a reasonable
22  analysis conducted by a computer forensics professional?
23              MR. KASS:  Objection.
24              THE WITNESS:  I can't say for sure how likely
25          whether or not these documents existed but based on
```