# EXHIBIT A

Dr. Matthew Edman
April 29, 2020

```
 1                UNITED STATES DISTRICT COURT

 2                SOUTHERN DISTRICT OF FLORIDA

 3                CASE NO. 9:18-cv-80176-BB/BR

 4
     IRA KLEIMAN, as the personal representative
 5   of the Estate of David Kleiman, and
     W&K Info Defense Research, LLC,
 6
              Plaintiffs,
 7
     -vs-
 8
     CRAIG WRIGHT,
 9
              Defendant.
10

11   * * * * * * * * * * * * * * * * *

12   TELECONFERENCE DEPOSITION OF DR. MATTHEW EDMAN

13   DATE TAKEN: April 29, 2020

14   TIME: 10:10 a.m. - 4:40 p.m.

15
     TAKEN BEFORE: RICK E. LEVY, RPR, FPR
16                 AND NOTARY PUBLIC

17

18   * * * * * * * * * * * * * * * * *

19

20

21

22

23

24

25
```

1    A.   Yes.
2    Q.   Are you opining that Dr. Wright manipulated
3  any documents?
4    A.   Same answer.
5    Q.   And by "same answer" you mean everything we
6  discussed with regards to the other question would apply
7  by switching -- modified, manipulated you'll have the
8  same answer; correct?
9         MR. ROCHE:  Objection, form.  Dr. Edman, just
10      to the extent you can answer the question I would
11      just instruct you to answer the question as opposed
12      to referring back to your last answer.
13  BY MR. KASS
14   Q.   I'll re-ask the question and then we'll see
15  how Dr. Edman does it.  Are you opining that Dr. Wright
16  has manipulated any documents?
17   A.   I am opining that a number of documents were
18  manipulated in a manner that would be consistent with
19  the defendant having performed those manipulations.
20   Q.   Are you opining that it in fact was Dr. Wright
21  who made those manipulations?
22   A.   I don't believe that's explicitly stated in my
23  report but the implication suggests that it would be
24  consistent with the defendant having performed those
25  manipulations.

1  Q. Right but that's not your actual final
2  conclusion; correct?
3       MR. ROCHE: Objection, form.
4       THE WITNESS: Can you restate the question?
5  BY MR. KASS
6  Q. Sure. I believe you stated the implication
7  was that it was Dr. Wright who made those modifications
8  but do you actually conclude that it in fact was
9  Dr. Wright who made those modifications?
10 A. Again I don't believe in my report I conclude
11 decisively that it was Dr. Wright who made the
12 modifications but the implication is that the
13 modifications are consistent with the defendant having
14 done them.
15 Q. And that would be your same opinion at trial;
16 correct?
17 A. Yes.
18 Q. Are you opining that Dr. Wright has altered
19 any documents?
20 A. Again I don't believe that's stated explicitly
21 in my report but the implication is clear that the
22 modifications would be consistent or alterations would
23 be consistent with the defendant having performed that.
24 Q. But you're not actually opining that it was
25 Dr. Wright in fact who made those alterations; correct?

1    A.   Yes, I don't believe I explicitly state so in
2  my report.
3    Q.   And that would be your same opinion at trial;
4  correct?
5    A.   Yes.
6    Q.   Are you opining that Dr. Wright has done
7  anything to make certain documents unauthentic?
8         MR. ROCHE:  Repeat that.  I didn't hear the
9     end of the question.
10 BY MR. KASS
11   Q.   Are you opining that Dr. Wright has done
12 anything to make certain documents unauthentic?
13   A.   Again I don't believe I explicitly state that
14 in the report.
15   Q.   Will you -- but will you be opining that it in
16 fact was Dr. Wright who made the documents unauthentic?
17        MR. ROCHE:  Objection, form.
18        THE WITNESS:  Again I don't believe I stated
19    that explicitly in my report but the implication
20    the evidence suggests the alterations to make the
21    documents unauthentic would be consistent with the
22    defendant having performed.
23 BY MR. KASS
24   Q.   Is that going to be your same opinion at
25 trial?

1        THE WITNESS:  I don't have any evidence to
2     suggest someone other than Dr. Wright performed
3     those manipulations.
4  BY MR. KASS
5     Q.   So is it your opinion that all the evidence
6  suggests that Dr. Wright made those manipulations?
7     A.   Again that's my opinion that the manipulations
8  are consistent with Dr. Wright --
9     Q.   And the only person you're aware of that was
10 consistent -- that fits the consistency of having made
11 those manipulations is Dr. Wright?
12    A.   To the best of my knowledge, yes.
13    Q.   Is that going to be your opinion at trial?
14    A.   Yes.
15    Q.   Are you going to be providing an opinion as to
16 whether Dr. Wright is a forgerrer?
17          MR. ROCHE:  Objection, form.
18          THE WITNESS:  Could you be more specific?
19 BY MR. KASS
20    Q.   Sure.  Are you going to be giving an opinion
21 as to whether Dr. Wright has forged any documents?
22    A.   Again my opinion is that the manipulations
23 that I observed are consistent with the defendant having
24 made them.
25    Q.   Are you going to be -- just to clarify now as

1  far as I'm going away from the manipulations meaning
2  those four different words so now I am going to be using
3  more specific terms going forward.  You understand that?
4      A.   Yes.
5      Q.   Okay.  Are you going to be providing an
6  opinion that Dr. Wright in fact forged documents?
7           MR. ROCHE:  Objection.  Seems like we're
8      splicing words here Zalman.  To the extent you want
9      to define what you mean by these words that might
10     be --
11          MR. KASS:  I'm using the word forged which he
12     uses in his report.  I think that's fair game.
13     We'll get to asking what his definition of forgery
14     is but now I'm using a word that's in his report.
15     Dr. Edman, however you understand forgery to mean
16     that's my question.
17          THE WITNESS:  Okay.  Could you please restate
18     the question?
19 BY MR. KASS
20     Q.   Sure.  Are you giving any opinion that Dr.
21 Wright forged documents?
22     A.   Again that's my opinion that forgeries were at
23 least consistent with the defendant having created them.
24     Q.   Are you opining that it was Dr. Wright in fact
25 who made that forgery?

1    A.   I don't believe I explicitly state so in my
2  report but the implication is clear.
3    Q.   And that's the same opinion you're going to be
4  giving at trial; correct?
5    A.   Yes.
6    Q.   And is it also your opinion that Dr. Wright is
7  the only person who is consistent with having made those
8  document forgeries?
9    A.   That's my opinion that the only person known
10 to me consistent with having created the forgeries is
11 the defendant.
12   Q.   Are you opining that Dr. Wright has committed
13 fraud based on the documents that you have viewed?
14        MR. ROCHE:  Objection, calls for a legal
15     conclusion.
16        THE WITNESS:  Yes.  I don't know exactly what
17     you mean by fraud.  I believe that's more of a
18     legal term of art and I don't use that term in my
19     report so I don't believe I'll be offering any
20     opinions as to whether or not any of these
21     documents constitute fraud.
22 BY MR. KASS
23   Q.   Okay.  Are you offering any opinion as to
24 whether Dr. Wright is a purgerrer?
25   A.   Not based on the documents that I have

1  reviewed.  Again I believe perjury is a legal term of
2  art, I am not a lawyer so I can't speculate or opine on
3  what constitutes perjury.
4      Q.  Are you giving any opinion that reflects on
5  Dr. Wright's truthfulness?
6          MR. ROCHE:  Objection, form.
7          THE WITNESS:  I'm opining on my review of
8      certain documents.  I believe it's up to the jury
9      and the final finder of facts to opine on the
10     defendant's truthfulness.
11 BY MR. KASS
12     Q.  Are you giving any opinion that reflects on
13 Dr. Wright's credibility?
14         MR. ROCHE:  Objection, form.
15         THE WITNESS:  Again I'm just simply reviewing
16     documents and providing my opinions based on those
17     documents.  It's not up to me to opine on how that
18     impacts the defendant's credibility.  I believe
19     that's up to the jury and the final finder of fact.
20 BY MR. KASS
21     Q.  So just to rephrase is it fair to state that
22 you are not going to be explicitly opining that Dr.
23 Wright is not credible?
24         MR. ROCHE:  Objection, form.
25         THE WITNESS:  Again I believe it's up to the

1    Q.   Now I just want to understand a little bit
2    more as to the structure of your report and just I want
3    to try and summarize it and then just let me know if
4    it's accurate or if you want to make any changes.  The
5    way I understand your report to work is that you'll
6    start off with a Roman numeral number and a header of a
7    Bates number of a certain document and I understand that
8    to be the document that you're going to be analyzing in
9    that section.  Is that correct?
10   A.   Yes, I believe that's generally the structure.
11   Q.   And then if we scroll down until the next
12   Roman numeral header there is generally going to be a
13   last paragraph in this particular case on page number
14   three it is going to be paragraph number six and it says
15   accordingly and it gives an opinion; is that correct?
16   A.   Yes.
17   Q.   So and in this particular case it's your
18   opinion that the document's not authentic and it has
19   been manipulated?  Sorry, are you waiting for me?
20   A.   My apologies, I don't believe you asked a
21   question.
22   Q.   I'm sorry.  My question was is it your opinion
23   that -- your opinion in paragraph six is that the
24   document is not an authentic invoice but instead has
25   been manipulated; correct?

```
 1      A.   Correct.
 2      Q.   And so is it fair to say that all the
 3 paragraphs between the Roman numeral header and your
 4 conclusion which is the last paragraph of that section
 5 is the basis and the facts that support your conclusion?
 6      A.   In the section, yes.
 7      Q.   That's generally throughout your report?
 8      A.   That is generally throughout my reports.
 9      Q.   Are you relying -- throughout your report are
10 you relying on any bases that are not identified in
11 those paragraphs?
12      A.   No.
13      Q.   Dr. Edman, do you recall providing an opinion
14 that certain documents are forgeries?
15      A.   Yes.
16      Q.   What does a forgery mean to you?
17           MR. ROCHE:  Objection, asked and answered.
18           THE WITNESS:  Again forgery to me is a
19      document that has been manipulated to appear to be
20      something other than what it actually is.
21 BY MR. KASS
22      Q.   So what's the difference between a forgery and
23 a manipulated document?
24           MR. ROCHE:  Objection, form.
25           THE WITNESS:  I believe that we had previously
```

1           agreed that they were all synonyms.
2  BY MR. KASS
3       Q.   Well, I just wanted to make sure that was
4  actually your opinion.  It appears like it is?
5       A.   Yes, my opinion forgery is a document that has
6  been manipulated to appear to be something other than
7  what it is thus it's a manipulated document.
8       Q.   If a document was manipulated but you don't
9  know what the intention was can that document be a
10 forgery?
11           MR. ROCHE:  Objection.
12           THE WITNESS:  Again as we discussed previously
13      I don't opine on the reason for any of these
14      manipulations or at least the ultimate purpose of
15      the manipulated documented.
16 BY MR. KASS
17      Q.   Here is my question.  My understanding of what
18 you just testified is that a forgery is when a document
19 has been manipulated to appear to be something than what
20 it actually is.  Is that accurate?
21      A.   I agree with your definition.
22      Q.   So it seems to me that there is some sort of
23 intent because you're opining when something is forged
24 that somebody was trying to make this look like it was
25 something else, correct?

1   A.   Correct.  The document was changed but as for
2   why specifically that document was changed for example
3   an e-mail from 2014 to 2011 I don't generally opine on
4   why this specific date that was chosen.
5   Q.   Let me ask you.  If I have an invoice -- this
6   is a hypothetical I'm being very clear.  If I have an
7   invoice that I prepared yesterday and I was planning on
8   sending it to a third party and I didn't get around to
9   it I'm going to send it today so I changed the date, I
10  went into PDF I used the text editor, I changed
11  yesterday's date to today's date and then I sent it out.
12  Would you agree that document has been manipulated?
13  A.   Yes.
14  Q.   Has it been altered?
15  A.   Yes.
16  Q.   Has it been modified?
17  A.   Yes.
18  Q.   Has it been forged?
19  A.   Based on your hypothetical the description it
20  was an invoice dated yesterday that was made to look
21  like an invoice dated today so in some sense you could
22  consider that a forgery.
23  Q.   Would you consider it a forgery?
24  A.   I think it depends on the context in your
25  hypothetical but based on the definitions we've agreed