UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC

    plaintiffs,

v.                                                            Case No. 9:18-cv-80176 (BB/BR)

CRAIG WRIGHT,

    defendant.
_____/

## DR. CRAIG WRIGHT'S REPLY IN
## SUPORT OF HIS MOTION FOR SUMMARY JUDGMENT

**1.  Plaintiffs' Claims Are Time-Barred**

Plaintiffs continue to demand reversible error and bad law, arguing that their claims are not time-barred on the false assertion that I.K. had no notice of the Australian lawsuits until March 2016. This assertion as indisputably false, and the more plaintiffs repeat it, the more frivolous it becomes.[1] The indisputable evidence shows that plaintiff W&K was timely served with valid process in the Australian lawsuits on October 10, 2013, which advised them to appear on October 30, 2013. Instead, plaintiffs sat on their hands for more than four years, then filed this untimely action, whose only path to this Court required them to falsely swear that they were "prevented" from appearing in the Australian Lawsuits, when the indisputable evidence shows they were timely served, told where and when to appear, urged to appear, and warned that their interests might be affected in their absence if they chose not to appear. They chose not to appear.

---

[1] As with the other frivolous assertions and theories on which plaintiffs travel, Dr. Wright reserves all rights as to plaintiffs' persistent false claim that they did not have timely, actual notice of the Australian lawsuits in October 2013, when valid service of process was made on plaintiff W&K (and signed for) at its address of record, which also was the business address of Dave Kleiman, whose brother, plaintiff I.K., had a fiduciary duty to check his deceased brother's mail as personal representative of D.K.'s estate.

Plaintiffs' receipt of timely service in the Australian lawsuits also completely undermines their frivolous attempt to invoke the "delayed discovery rule" to postpone accrual of their claims until March 2016, when they falsely claim to have first learned that W&K even existed (despite having received service of process on W&K at its and D.K.'s official business address more than two years earlier). First, "the Florida Supreme Court has held that the delayed discovery rule does not apply to claims for breach of fiduciary duty, civil theft, conversion or unjust enrichment." *Gomez v. BankUnited*, 2011 WL 114066, at *5 (S.D. Fla. 2011) (citing *Davis v. Monahan*, 832 So. 2d 708, 709 (Fla. 2002) (citing Fla. Stat. § 95.110)). Therefore, under Fla. Stat. § 95.11, there never could have been "delayed discovery" of plaintiffs' claims for conversion (Count I), unjust enrichment (Count II), breach of fiduciary duty (Count V), breach of partnership duties of loyalty and care (Count VI), civil theft (Count VIII), or permanent injunction (Count IX). *Monahan*, 832 So. 2d at 709.

As to plaintiffs' claim for fraud, "[t]he 'delayed discovery' doctrine generally provides that a cause of action does not accrue until the plaintiff either knows or ***reasonably should know*** of the tortious act giving rise to the cause of action."). *See Patten v. Winderman*, 965 So. 2d 1222, 1224 (Fla. 4th DCA 2007). Plaintiffs' entire case is based on the theory that Dr. Wright "defrauded" them through the Australian actions, in which they falsely claim they were prevented from appearing. Plaintiffs had timely notice of those lawsuits, but did nothing. Their fraud claim accrued on November 26, 2013 when the Australian judgments were entered.

"The Florida Legislature has stated that a cause of action accrues or begins to run when the last element of the cause of action occurs." *Monahan*, 832 So. 2d at 709 (citing Fla. Stat. § 95.031(1)) ("A cause of action accrues when the last element constituting the cause of action occurs."); *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294, 1309 (S.D. Fla. 2012), *aff'd*, 714

F.3d 1234 (11th Cir. 2013) ("[T]his Court must apply the general rule that 'the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues.'"). Thus, "[a]s the Florida Supreme Court stated, '[t]o hold otherwise would result in this Court rewriting the statute, and, in fact, obliterating the statute.'"). *Id*. (citing *Monahan*, 832 So. 2d at 709) (Fla. 2002)).

In short, none of plaintiffs' claims are subject to any "delayed discovery" rule, and even if they could be, plaintiffs are charged with knowledge of them as a matter of law on the date when they accrued, November 26, 2013, when the Australian judgements were entered. Plaintiffs alleged that those judgments effected and endorsed a "theft" of property they claim was theirs, but cannot dispute that they had timely notice of the Australian lawsuits and did nothing to make this argument to the Australian court before it entered the Australian judgments. Further, nowhere in their 40-page Opposition did plaintiffs present any evidence of any other time or method for the purported theft. Using plaintiffs' own allegations, Dr. Wright has demonstrated that the latest possible accrual date for plaintiffs' claims renders them time-barred.

Plaintiffs alleged that through the Australian judgments entered on November 26, 2013, Dr. Wright supposedly "stole" W&K's purported (though unidentified) intellectual property, property they have failed to this day to identify. They also failed to present any evidence of any other property or any other date on which the supposed "theft" occurred. Thus, plaintiffs are rightly stuck with what they alleged, and what they alleged requires summary judgment because all of their claims accrued no later than November 26, 2013 as a matter of law.

Plaintiffs also are stuck with their allegations of a purported three-year oral partnership between D.K. and Dr. Wright from 2008 to 2011. Quite apart from being barred by the statute of frauds, this claim, too is time-barred. D.K. was alive from 2011 until February 2013, and never said a

word to plaintiffs about any such purported oral partnership. The four-year limitations period for any claim on this purported partnership expired in 2015, three years before plaintiffs filed this action.

In opposition, plaintiffs take the ludicrous position that Dr. Wright may not rely on what they affirmatively alleged, namely an oral partnership that ended in 2011. *See* SAC ¶60;. They alleged this 2011 ending date more than once. The sole count for the Estate, for purported breach of partnership duties, also alleges a purported three-year oral partnership that ended in 2011. *See* SAC ¶ 192 ("From c. 2008 until at least the creation of W&K in 2011, Craig and Dave associated to carry on as co-owners of a business for profit to create Bitcoin, mine bitcoins, and create other block chain intellectual property."). Plaintiffs may not now run away from what they've actually alleged and argued. Moreover, plaintiffs never identified any accrual dates for their purported claims other than what they alleged, i.e., purported claims arising from entry of the Australian judgments on November 26, 2013, and purported claims on a supposed oral partnership that ended in 2011, all of which were time-barred when plaintiffs filed this action.

Further evidencing the necessary conclusion that their purported oral partnership claims are time-barred is plaintiffs' proclivity for claiming (usually under seal) that D.K. was the "real" Satoshi Nakomoto. They refer to their purported oral partnership as the "Satoshi Nakamoto Partnership," or as the "SN Partnership."[2] There is not a scintilla of evidence to suggest that D.K. ever referred to himself with a Japanese pseudonym, and even if there were, plaintiffs have conceded that "Satoshi Nakomoto" stopped bitcoin mining by 2011. *See* D.E. [I.K. depo].

After more than two years of extensive, intrusive discovery, plaintiffs have failed to articulate accrual dates for their claims other than those alleged and compelled by their allegations. Applying

---

[2] Plaintiffs have played lame name games throughout this litigation, in a silly attempt to make D.K. and Dr. Wright seem much closer than they were and involved in things they weren't. The "SN Partnership" moniker is one such attempt.

4

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) to the indisputable evidence (and lack of evidence) in the record, the accrual date for the Estate's oral partnership claim was in February 2011, when it supposedly ended. This was more than two years before D.K. died, in which there is no evidence he ever said a word about any purported partnership (or claim) to anyone. As for W&K's claims, the accrual date is November 26, 2013, when the Australian judgments were entered.

**2.    Fraudulent Concealment or Equitable Estoppel Theories Are Unavailing**

Despite having had timely, express notice of the Australian lawsuits almost (5) five years before filing this action, and having expressly alleged a purported three-year oral partnership that ended seven (7) years before filing, plaintiffs use grossly misstated "facts" to argue that "fraudulent concealment" and "equitable estoppel" might save their time-barred claims. To begin, plaintiffs bear the burden of proving that Dr. Wright engaged in fraudulent concealment. *E.g., Dee Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 832 (11th Cir. 1999). This is an impossible burden in view of plaintiffs' indisputable, timely receipt of notice of, and advice to appear in, the Australian lawsuits, as well as the fact that plaintiff I.K. already had litigation counsel in February 2014 (only 90 days after entry of the Australian Judgments), and has claimed "work product" protection for notes from that time period.

To prove fraudulent concealment, a plaintiff must prove: "(1) successful concealment of the cause of action; (2) fraudulent means to achieve that concealment; and (3) that the plaintiff exercised reasonable care and diligence in seeking to discover the facts that form the basis of the claim." *Razor Capital, LLC v. CMAX Fin. LLC*, 2017 WL 3481761, at *4 (S.D. Fla. 2017). Plaintiffs cannot satisfy any of these elements.

First, it is irrelevant that Dr. Wright first contacted D.K.'s family in February 2014, three months after the November 26, 2013 Australian judgments were entered, because plaintiffs had

5

timely, actual notice of the Australian lawsuits more than a month before the judgments were entered. Plaintiffs already were "anticipating litigation" in February 2014, and Dr. Wright had no duty to disclose that which they had a duty to investigate after being served in October 2013. Moreover, "fraudulent concealment goes beyond mere non-disclosure, and must constitute active and willful concealment." *Id*. at *5 (citing *Licul v. Volkswagen Group of Am., Inc.*, 2013 WL 6328734, at * 6 (S.D. Fla. 2013)). There is no evidence that anything like that happened here.

Second, D.K. never said anything that would support plaintiffs' purported claims, even though the purported oral partnership supposedly ended in 2011 and D.K. lived for more than another two years. Plaintiffs have no evidence that D.K. ever said anything to anyone about any purported bitcoin fortune. The estate stands in his shoes, and plaintiffs are estopped from claiming that Dr. Wright "fraudulently concealed" something that D.K. himself never told them. *E.g. Levy v. Baptist Hosp. of Miami, Inc.*, 210 So. 2d 730, 731 (Fla. 3d DCA 1968) ("The personal representative receives no more and no less than the decedent would have had he lived, i.e. subject to the strength and weakness of the decedent's cause of action had he survived[,]" and "the proper period of limitation here is the one applicable to such an action if it had been brought by the decedent, himself, had he survived.").

Third, it's undisputed that the Australian Court's timely Notice of action was received at W&K's (and D.K.'s) mailbox and signed for by one of D.K.'s actual partners. That constituted perfected service under the Hague Convention, but even if it hadn't, it would have constituted ***actual notice*** of the proceeding from which all of W&K's purported claims accrued, and the law required nothing more to trigger the limitations period. (Even improper service, if actually received, supports a finding of actual notice for limitations purposes.).

Plaintiffs argue that service was improper under Australian law. This assertion is both incorrect and irrelevant. Plaintiffs always were free to challenge service of process in Australia (they didn't), but service of process coming into the U.S. is governed by U.S. law, which means the Hague convention controls. Under the Hague of Convention, as courts of this District repeatedly have held, service of process is effectuated by international mail, so long as the "destination country" does not object to Article 10(a) of the Hague Convention, which permits service of judicial documents through postal channels. The United States does not object. *E.g., Ghostbed, Inc. v. Casper Sleep, Inc.*, 315 F.R.D. 689, 692 (S.D. Fla. 2016) ("[S]everal other judges in this district have also recognized, where the destination country does not object, service to individuals abroad can be made via postal channel[s] (such as international mail) under Federal Rule of Civil Procedure 4(f)(1).") (citing *Leon v. Continental AG,* 2016 WL 1388950, at *2 (S.D. Fla. 2016) (King, J.)).

Moreover, "[b]oth Australia and the United States are signatories [] to the Hague Convention." *Norden-Powers v. Beveridge*, 125 F. Supp. 2d 634, 637 (E.D.N.Y. 2000). Neither country objects to service by mail under Article 10(a) of the Hague Convention, which means that the Supreme Court of New South Wales' service of the Notice to W&K's official mailing address constituted perfected service of process.

Plaintiffs further argue that Dr. Wright should be equitably estopped from asserting a limitations defense on the theory that his behavior somehow caused plaintiffs to blow the four-year limitations period for all claims but their "civil theft" claim (which also accrued on November 26, 2013 as a matter of law, but had a 5-year limitations period). *See* Mot. at 22-23. This argument is devoid of merit. As demonstrated above, plaintiffs have no evidence to show that Dr. Wright's conduct unfairly caused I.K. to delay filing this action. Instead, Dr. Wright reached out to plaintiffs,

and plaintiffs seized on what Dr. Wright purportedly told them as an eventual basis for bringing this untimely action.

Finally, there is no "equitable tolling" under Florida law. "[I]n order for any doctrine, such as equitable tolling, to toll a Florida statute of limitations, it must be included in the exclusive list of conditions set forth in Florida's tolling statute, section 95.051(1)." *Mattera v. Nusbaum*, 2019 WL 1116192, at *5 (S.D. Fla. 2019) (citing *HCA Health Serv. of Fla., Inc., v. Hillman*, 906 So. 2d 1094, 1100 (Fla. 2d DCA 2004)). Section 95.051(1) does not permit equitable tolling, and therefore, "[u]nder Florida law, [] Plaintiff[s] [are] barred from relying on equitable tolling in this case." *Id*. (citing *Lopez v. Geico Cas. Co.,* 968 F. Supp. 2d 1202, 1207 (S.D. Fla. 2013) (granting motion to dismiss under Florida statute of limitations because "95.051(2) expressly precludes use of any tolling provision not listed"); *Watson v. Paul Revere Life Ins. Co.,* 2011 WL 5025120, at *4 (S.D. Fla. 2011); *Socas v. Northwestern Mut. Life Ins. Co.,* 829 F. Supp. 2d 1262, 1265 (S.D. Fla. 2011) ("[I]n Florida, the application of equitable tolling is limited to administrative proceedings."); *Pierson v. Orlando Reg'l Healthcare Sys., Inc.,* 2010 WL 1408391, at *15 (M.D. Fla. 2010) (dismissing defamation claim that accrued more than two years before filing under section 95.11; rejecting equitable tolling theory because "[e]quitable tolling . . . is not available in civil actions in Florida").

### 3. There Was No Meeting of the Minds, and No Evidence of an Oral Partnership

Plaintiffs will never be able to show a jury a written partnership agreement because none exists. They also have no evidence of an oral partnership.

With no written agreement, plaintiffs travel on a purported three-year oral contract that violates the Statute of Frauds. Florida law does not accept the "mere possibility" theory of performance within one year as an avoidance to the Statute of Frauds, and instead looks to the intent of the parties. *See LynkUs Commc'ns, Inc. v. WebMD Corp.*, 965 So. 2d 1161, 1165 (Fla. 2d DCA

2007) ("For the statute to make an agreement unenforceable, 'it must be apparent that it was the understanding of the parties that [the agreement] was not to be performed within a year from the time it was made.'"). Plaintiffs repeatedly alleged (but have zero evidence) that these parties intended a three-year oral partnership to develop and mine the very first bitcoin, and that this purported oral partnership actually existed for three years, from 2008 to 2011. That should be the end of the matter. At the eleventh hour, plaintiffs now contend that their hypothetical, purported oral partnership to develop the first successful blockchain crypto cryptocurrency (a sophisticated international digital currency), could reasonably have been performed within a year. That theory is frivolous on its face. Bitcoin's development took more than a decade, and the indisputable evidence on this frivolous assertion is *what actually happened from 2008 until 2011.*

But even if it weren't barred by the Statute of Frauds, this purported oral partnership claim would fail for indefiniteness because plaintiffs could never prove any of its essential terms. Plaintiffs bear "the burden of establishing the existence of such contract, including *all of its essential elements*," which "*is indeed, as it should be, a heavy and difficult one.*" *Vannamei Corp. v. Elite Int'l Telecomm, Inc.*, 881 So. 2d 561, 562 (Fla. 3d DCA 2004) (emphasis added); *Burger v. Hartley*, 896 F. Supp. 2d 1157, 1168 (S.D. Fla. 2012); *Conklin Shows, Inc. v. Dep't of Revenue*, 684 So. 2d 328, 332 (Fla. 4th DCA 1996)).

"A joint venture, like a partnership, may be created by express or implied contract, and the contractual relationship must consist of the following elements: (1) a common purpose; (2) a joint proprietary interest in the subject matter; (3) the right to share profits and duty to share losses; and (4) joint control or right of control." *Williams*, 314 F.3d at 1275-76 (citing *Pinnacle Port Cmty. Ass'n, Inc. v. Orenstein*, 872 F.2d 1536, 1538 (11th Cir. 1989)). Plaintiffs' obligation to establish every element of a purported oral partnership is "strictly construed and the absence of even one [element] is

9

fatal to the finding of a partnership." *Dreyfuss*, 701 So. 2d at 439; *Pinnacle*, 872 F.2d at 1539) (affirming summary judgment against party that failed to demonstrate every element of a partnership).

It would be improper to let these plaintiffs spin a yarn for the jury based on rank conjecture and hyperbole, but fail to present admissible evidence to demonstrate ***every element*** of their purported oral partnership. The jury would have no evidence of its purpose, organization, or "the distribution of partnership gains, losses, payment of business loans, payment of overhead costs, how to dissolve the partnership or the distribution of assets." *Dreyfuss v. Dreyfuss*, 701 So. 2d 437, 438-39 (Fla. 3d DCA 1997) (affirming finding of no oral partnership where "there was no meeting of the minds on the essential elements necessary to form a contractual partnership."). As noted above, the elements of an oral partnership are *strictly construed* and "preclude a finding that a partnership or joint venture exists where any factor is missing." *Williams v. Obstfeld*, 314 F.3d 1270, 1276 (11th Cir. 2002) (citing *Dreyfuss*, 701 So. 2d at 438-39 ("These requirements are strictly construed and the absence of even one is fatal to the finding of a partnership.").

More than nine (9) years after plaintiffs' purported oral partnership ended, after more than two years of litigation, plaintiffs still have no evidence that their purported three-year oral partnership ever existed, let alone evidence of each of its essential terms. Consequently, this claim is barred by the Statute of Frauds as a matter of law, but even if that were not so, summary judgment still would be required because plaintiffs' burden would be to prove all of the purported partnership's essential terms and there is no evidence to prove any of them.

## CONCLUSION

For all the foregoing good and sufficient reasons, Dr. Wright respectfully requests that the Court grant his motion for summary judgment.

Respectfully submitted,

RIVERO MESTRE LLP
*Attorneys for Dr. Craig Wright*
2525 Ponce de Leon Boulevard, Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: arolnick@riveromestre.com
Email amcgovern@riveomestre.com
Email bpaschal@riveromestre.com
Email: receptionist@riveromestre.com

By: s/ Andres Rivero
ANDRES RIVERO
Florida Bar No. 613819
AMANDA MCGOVERN
Florida Bar No. 964263
ALAN H. ROLNICK
Florida Bar No. 715085
BRYAN L. PASCHAL
Florida Bar No. 091576

## CERTIFICATE OF SERVICE

I certify that on June 2, 2020, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record either by transmission of Notices of Electronic Filing generated by CM/ECF or by U.S. Mail.

/s/Andres Rivero