UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC<br><br>  Plaintiffs,<br><br>v.<br><br>CRAIG WRIGHT<br><br>  Defendant. | CASE NO.:  9:18-cv-80176-BB/BR |

**REPLY IN SUPPORT OF PLAINTIFFS' OMNIBUS MOTION FOR SANCTIONS**

The Court previously found Wright acted in bad faith by clear and convincing evidence, and Plaintiffs believe there is ample evidence that he's continued to do so. However, to the extent the Court has any doubts, Plaintiffs welcome an evidentiary hearing on the matter.

## I. Default sanctions would not violate the Seventh Amendment

Having spent the entire lawsuit lying, forging, and cheating, Wright's opposition opens with a plea to vindicate *his* right to trial by jury, and repeatedly asserts default would violate his Seventh Amendment rights. Wright argues Plaintiffs must address their claims "to the jury."

Wright asks this Court to abandon its role as safeguard of the judicial system. Courts regularly reject this exact argument. *See, e.g.*, *KCI USA, Inc. v. Healthcare Essentials, Inc.*, 801 F. App'x 928, 936 (6th Cir. 2020); *SEC v. Blockvest, LLC*, 2020 WL 2786869, at *7 (S.D. Cal. May 29, 2020) ("courts may dismiss matters . . . without violating the Seventh Amendment"). Default is highly appropriate when "no lesser sanction will prevent the offending litigant from continuing to lie or distort the truth so pervasively that it prevents the opposing party from fairly presenting his case or defense." *Chemtall*, 992 F. Supp. at 1409 (quoting *Nichols v. Klein Tools, Inc.*, 949 F.2d 1047, 1048 (8th Cir. 1991)). Indeed,

> Use of the 'ultimate sanction' addresses not only prejudice suffered by the opposing litigants, but also vindicates the judicial system as a whole, for such misconduct threatens the very integrity of courts, which otherwise cannot command respect if they cannot maintain a level playing field amongst participants . . . Those who lie, evade and fail to tell the **whole** truth obviously enjoy an advantage over honest litigants. The victimized opponent winds up, as in this case, consuming substantial resources to respond to and "undo" the victimizer's lies and distortions . . . In the meantime, the Court itself is prevented from actually reaching the merits of the case—as well as resolving other cases—by having to stop and, as it has done here, exhaustively examine what is, at bottom, sanctionable perjury and fraud upon the Court. *Id*. at 1409–10.

Simply put, a party that "willfully violate[s] procedural rules and orders of the district court" is not "entitled to have his case heard on the merits." *Morgan v. Mass. Gen. Hosp.*, 901 F.2d 186, 195 (1st Cir. 1990). It is the obligation of the Court, not a jury, to "regulate the progress of actions before it" including by exercising its "power to sanction litigants for bad-faith litigation conduct." *Sprint Sols., Inc. v. Fils-Amie*, 83 F. Supp. 3d 1290, 1295 (S.D. Fla. 2015).

## II. Wright has engaged in bad faith conduct sufficient for default sanctions

The requirements for default sanctions are a finding that clear and convincing evidence demonstrates that "(1) a defendant acted in bad faith (2) the plaintiff was prejudiced by this conduct, and (3) lesser sanctions would not adequately serve the goals of punishment and

1

deterrence." *Sprint*, 83 F. Supp. 3d at 1295. Wright argues default sanctions are improper absent fraud on the court. Opp. at 4–5. But while Wright has repeatedly attempted to perpetrate a fraud on the Court, he misstates the law again. Terminating sanctions "require[] a finding of bad faith" which "*includes* but does not *require* a finding of fraud on the court." *Tarasewiczv v. Royal Caribbean Cruises Ltd.*, 2016 WL 3944178, at *4 (S.D. Fla. Mar. 17, 2016) (Bloom, J.) (emphasis in original).[1] To show bad faith, Plaintiffs must convince the Court either "that a fraud has been practiced upon it, or that the very temple of justice has been defiled . . . or where a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court order.'" *Id.* Courts don't hesitate to find bad faith and enter default when a party commits perjury or fabricates evidence. Indeed, "many default cases feature" misconduct that is "encapsulated by perjury," including "evidence destruction, alteration, or fabrication." *Chemtall,* 992 F. Supp. at 1408.[2]

### A. Wright's "linchpin" requirement does not exist

Wright incorrectly argues that fabricated evidence must relate to a "linchpin" issue to support default sanctions. And while Wright *has* forged "linchpin" evidence, he's wrong on the law again. "Federal courts have the inherent power to dismiss an action for misconduct that abuses the judicial process and threatens the integrity of that process—*including misconduct unrelated to the merits of the case*." *Vargas*, 910 F. Supp. at 1576-78 (emphasis added) (imposing terminating sanctions where plaintiff fabricated evidence to support claim that former employer threatened her to force her to drop the suit).[3] A good example is *Johnson v. New Destiny Christian Ctr. Church*, where the defendant repeatedly refused to comply with court orders compelling production of financial information *the court had found relevant to punitive damages, not liability*. 324 F.R.D. 404, 408, 414 (M.D. Fla. 2018). When the defendant then filed a false notice of compliance (like Wright did here) the court-imposed default sanctions. *Id.* at 414–15 (finding the false notice "tips the scales here.").

---

[1] Wright cites no case requiring fraud on the court and numerous cases (at 7-10) with terminating sanctions that did not implicate an attorney.

[2] Plaintiffs cited at least a dozen cases in their opening brief with terminating sanctions for perjury, fabricated evidence, or both. *See* Mot. at 18-19. Plaintiffs note they inadvertently stated *Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291 (S.D. Fla. 2007) entered default sanctions. That was an error. The court issued fact sanctions.

[3] *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962) (Supreme Court affirmed district court's exercise of its inherent power to dismiss claim for failure to appear at pre-trial conference); *Amway Corp. v. Shapiro Express Co*., Inc., 102 F.R.D. 564, 565–70 (S.D.N.Y.1984).

### B. *Wright perpetrated a fraud on the Court by repeatedly fabricating evidence, perjuring himself, and submitting a false notice of compliance to avoid sanctions*

Wright cites thirteen cases (at 4-5) to support his claim that perjury and fabricated evidence cannot constitute fraud-on-the-court, but *eleven* concerned motions to set aside judgments under FRCP 60.[4] But "fraud on the court" has a narrower meaning in the context of FRCP 60(d)(3), which is a savings clause for setting aside a fraudulently procured judgment after a year.[5] But that does not mean "creating fraudulent documents, making false statements, or committing perjury does not constitute a fraud on the court" (Opp. at 4) punishable by default sanctions. There is a difference between proving a completed "fraud on the court" that justifies setting aside final judgment and exposing an "attempted" fraud on the court that merits default during litigation.

Outside Rule 60, fraud on the court resists a strict definition, but is fairly characterized as when a "party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Vargas*, 901 F. Supp. at 1579.

A party that fabricates evidence to "enhance" its case is acting "in bad faith and with improper purpose in a manner which jeopardizes the integrity of the judicial system." *Id.* at 1580 (citation omitted). "When a party fabricates evidence purporting to substantiate its claims, federal case law is well established that dismissal is appropriate." *McDowell v. Seaboard Farms of Athens, Inc.*, 1996 WL 684140, at *2 (M.D. Fla. Nov. 4, 1996).

The evidence is overwhelming that Wright "set in motion some unconscionable scheme" to both "improperly influenc[e] the trier" and "unfairly hamper" Plaintiffs' claims through a sustained pattern of forgeries and perjury directed at the Plaintiffs and the Court. *Vargas*, 901 F. Supp. at 1580. He has repeatedly manufactured evidence designed to perpetrate a fraud on the Court and secure dismissal of this action on jurisdictional grounds:

- In support of his motion to dismiss on personal jurisdiction, Wright perjured himself by submitting a sworn declaration disclaiming a relationship with W&K. Mot. at 3.

---

[4] Of the remaining two, *Aguilar* imposed default sanctions after finding that there was no fraud on the court, and *Cerrato* did not involve any fabricated evidence, but alleged lies at deposition. And of the seven no-default-sanctions cases he cites at (5-6), *none* involve fabricated evidence.

[5] *See Fraud on the Court*, 11 FED. PRAC. & PROC. CIV. § 2870 (3d ed.) ("Any fraud connected with the presentation of a case to a court is a fraud upon the court, in a broad sense. That cannot be the sense in which the term is used in Rule 60(d)(3).").

- In support of his motion to dismiss for forum non conveniens, Wright perjured himself swearing he had "no documents" from "any ATO investigation." *Id.* at 3-4.
- In support of his motion for judgment on the pleadings Wright submitted two forged exhibits. *Id.* at 4.
- In response to direct Court orders, Wright submitted forged trust documents, swore to their authenticity, and provided perjured testimony. *See* ECF No. [277].
- In support of his motion for summary judgment, Wright relied on a divorce settlement that he forged since neither the Australian court, he, nor his ex-wife possessed a copy of it until he "found it."[6] *Id.* at 4-5.

But perhaps the best example is his submission of a false "notice of compliance" and the fabricated bitcoin list designed to avoid sanctions for his failure to comply with discovery orders. Specifically, the Court had stated that:

"[i]n light of the Defendant's representations that the bonded courier is scheduled to arrive . . . the Court will permit the Defendant . . . to file a notice with the Court indicating **whether or not this mysterious figure has appeared from the shadows and whether the Defendant now has access to the last key slice needed to unlock the encrypted file. In the event this occurs, and further if the Defendant produces his list of Bitcoin Holdings** as ordered by the Magistrate Judge, then this Court will not impose any additional sanctions other than the ones discussed above.

In other words, the Court specifically said Wright's sanctions would only be lifted if (1) the "bonded courier . . . appeared from the shadows," (2) provided the "last key slice," (3) that "unlocks the encrypted file," **and** (4) Wright also produces his list of Bitcoin Holdings. But

In the event the bonded courier does not arrive, and the Plaintiffs are not given access to this information, which the Court has already found directly relevant to their claims, the Court finds additional sanctions would be warranted. Specifically, pursuant Rule 37(c)(1)(B), the Court will inform the jury of the Defendant's failure to disclose the information sought by the Plaintiffs. *See* Fed. R. Civ. P. 37(c)(1)(B). Order, ECF No. [373], at 22.

Desperate to avoid sanctions, however, Wright filed a notice of compliance falsely representing "that a third party has provided the necessary information and key slice to unlock the encrypted file, and Dr. Wright has produced a list of his bitcoin holdings . . . to plaintiffs today." ECF No. [376]. But, the bonded courier never arrived, the key slice was never delivered, the encrypted file remains locked, and the list of bitcoin produced was a fabrication. Mot. at 10.

---

[6] Ms. Wright testified that she did not have a copy except one provided by Wright's counsel. ECF No. [488-17], at 127:3–128:11. Wright testified that he was not in possession of a copy of this miraculous settlement appendix either. ECF No. [550-37], at 409:11–15.

4

Obviously, Wright knew the bonded courier didn't arrive. His counsel knew too because they carefully constructed the notice of compliance to state that a "**third party**" delivered the information and purposely avoiding saying "**bonded courier**." ECF No. 376. But Wright failed to tell the Court the "bonded courier" had not come, and that he'd managed to get access to a list of his bitcoin through his alleged Kenyan counsel Wright's opposition doubles down on this purposeful misdirection, arguing he did nothing wrong since "the notice never stated the information was provided by bonded courier." *Id*.

Then, when "complying" with the Court's order to say "whether the Defendant now has access to the last key slice needed to unlock the encrypted file," the notice falsely informed the Court that the third party had provided the "key slice to unlock the encrypted file." ECF No. [376] These were both lies. The key slice was not provided and the encrypted file remained "locked." Instead, Wright claims he obtained the list because upon request his Kenyan lawyer provided his wife with a *different* encrypted file that also contained the list. Wright's opposition has the *chutzpah* to suggest (at 21) the notice was accurate because "the notice didn't identify any specific encrypted file." As if the notice's reference to "the" encrypted file that could be opened with a "key slice" could refer to anything other than the one the Court referenced in its order, that the parties had spent three days of evidentiary hearings on, and submitted extensive briefing on for months. That argument is preposterous. Wright offers no real excuse for filing this false claim to have received the "key slice" other than a general allusion to his Autism diagnosis (itself a false, desperate, and insulting attempt to excuse outright fraud).

Wright closed his fraudulent notice to the Court with a statement that he had "produced a list of his bitcoin holdings" to Plaintiffs, which was just a new round of blatant lies and fabrications. All these misrepresentations were calculated to avoid the sanctions this Court said were necessary.

Wright now appears to walk back the list's legitimacy by claiming it's what he "believed to be his bitcoin," but at the time he produced it there were no such qualifiers. ECF No. [376], [379]. Wright swore in an interrogatory that "I created" the list "in or around August 2010" and that he "recognize[d] the authenticity of the . . . list . . ." ECF No. [404-1], at 8; ECF No. [512-8], at 3. At his deposition he testified that he'd mined those bitcoins, that "[a]ll the bitcoin on that list belonged to Wright International Investments" and that "none have been spent" since the trust was established in 2011. ECF No. [511-1], at 265:8-266:5.

5

This was clearly an "unconscionable plan designed to improperly influence the court in its decision" not only on jurisdiction, but on how to instruct the jury on sanctions the Court thought were otherwise necessary. *Tarasewicz*, 2016 WL 3944176, at *4. And his "duplicitous actions during the course of litigation" leave no room to doubt that he "attempted to perpetrate a fraud upon [the Court] with the filing of the" false notice of compliance, providing a false list, and otherwise forging and perjuring himself. *Fitzpatrick v. Immune Techs., L.L.C*, No. 05-80594-CIV, 2007 WL 9707027, at *2 (S.D. Fla. Feb. 12, 2007).

### C. Wright's bad faith is clear, pervasive, and ongoing

Wright's "persistent pattern of misconduct" "covers the full range of litigation abuses." *Vargas*, 901 F. Supp. at 1581–82. This Court has already found by clear and convincing evidence that Wright acted in bad faith, *see* ECF No. [277], at 27; ECF No. [373], at 15. He has continued to act in bad faith since. Judge Reinhart found Wright "has engaged in a willful and bad faith pattern of obstructive behavior, including submitting incomplete or deceptive pleadings, filing a false declaration, knowingly producing a fraudulent trust document, and giving perjurious testimony at the evidentiary hearing." ECF No. [277], at 27. The Court agreed with Judge Reinhart's factual findings and affirmed his order. ECF No. [373], at 15. "Clearly, committing perjury is acting in 'bad faith.'" *Arnold v. Cty. of El Dorado*, 2012 WL 3276979, at *4 (E.D. Cal. Aug. 9, 2012). So is the "intentional misconduct" of "fabricating evidence." *Vargas*, 901 F. Supp. at 1581. The more recent exposure of Wright's sham "notice of compliance," forged bitcoin list, forged Tulip Trust 3 ("TT3"), and forged email from his wife, only further demonstrates his continued to efforts to deny Plaintiffs a fair hearing.

### D. Wright fails to address his non-forgery related misconduct that merits default

Wright's argument that his forgeries were immaterial or harmless fails to address the non-forgery misconduct identified in Plaintiffs opening brief. This includes reams of perjured testimony, withholding of crucial evidence, violating Court orders regarding the Tulip Trust documents, lying about complying with such orders, and attempting to prevent Plaintiffs from relying on any documents by baselessly claiming unidentified hackers tampered with unidentified documents for unidentified reasons, on unidentified dates. *See* Mot. at 3–16. In Wright's view, none of this misconduct matters. But he completely ignores that default sanctions can be imposed for conduct other than fabricating evidence, and that Plaintiffs cited several cases in their opening

6

brief that stand for that proposition. *See id.* at 19-22.[7] Those cases involved misconduct analogous to Wright's, did not involve fabricated evidence, and yet ended with default sanctions.

**III.     Plaintiffs were prejudiced by Wright's bad faith and Wright's argument that fabrications were immaterial or harmless is absurd**

Wright asserts default sanctions are inappropriate because (1) "[i]n the vast majority" of cases Plaintiffs cite, "the manufactured evidence was manufactured for the purpose of the litigation, it was relied on by the party during the litigation, and the manufactured evidence played a pivotal role," and (2) "[t]hat did not occur over here." Opp. 7. This is factually and legally wrong. Plaintiffs have been "severely prejudiced" and "would be further prejudiced by the significant costs that would be required to litigate against parties who exhibit little, if any, regard for the integrity of the judicial process." *Am. Rena*, 2015 WL 12732433, at *29.

   **A.  Wright Fabricated Evidence Concerning Pivotal Issues and Relied on that Evidence to Support his Legal Positions**

   1. Wright supported four dispositive motions with perjury or forged evidence in an attempt to prevail on jurisdictional grounds

Both times Wright moved to dismiss this lawsuit, he submitted perjurious declarations; first to support his personal jurisdiction argument and then to support his forum non conveniens argument. Mot. at 3-5. Wright then twice moved to have the case thrown out for lack of subject matter jurisdiction, and both times, submitted forged evidence to support those motions. *See id.*

Wright claims this collection of perjury and forgeries—which he's used to support four separate *dispositive* motions—cannot serve as a basis for default sanctions because "*they were only used to demonstrate that the Court lacked jurisdiction*." Opp. at 11 n.9 & 12. In other words, he *only* used fraud to try and dismiss the entire action. Although this reveals the cavalier view Wright has of his obligations, it's not an accurate statement of the law. "[F]alsifying evidence to secure a court victory undermines the most basic foundations of our judicial system." *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) (imposing terminating sanctions). That's true regardless of the specific fraudulent grounds a party attempts to secure its victory with or whether he previously forged the evidence and simply reused it here.

---

[7] For example, *Littler* demonstrates that supporting a dispositive motion with perjured testimony is grounds for terminating sanctions. *See* 2019 WL 1043256, at *5-11. *Johnson* found the same when a party lies to the Court about complying with its orders. *See* 324 F.R.D. at 414-16. And *Costa* shows terminating sanctions may be imposed for perjury at depositions and wrongfully withholding evidence. *See Costa v. Datapro, Inc.*, No. 10-cv-23172, 2011 WL 7318760, at *6-10 (S.D. Fla. Aug. 5, 2011).

2. <u>Wright fabricated evidence relating to key substantive issues</u>

Wright's fabrications are not limited to jurisdictional evidence. He has also fabricated evidence directly relevant to key substantive issues in this case. **First**, he fabricated three Tulip Trust documents (and swore that they were authentic). Although Wright claims (at 10) that these documents "simply relate to how [he] manages his finances," Wright's bitcoin trusts have been a key issue in this litigation from the outset. *See, e.g.*, ECF No. [550-25], at 7 (Wright telling ATO that the trust assets were sourced from him and Dave). Plaintiffs Second Amended Complaint alleges the partnerships bitcoin was held in trusts and Wright them by moving them to 'trusts' known only to him." ECF No. [83], ¶¶ 84–94, 111–12. But most importantly, this Court already found Wright's bitcoin holdings relevant, regardless of what Wright continues to believe. ECF No. [373], at 22.

Wright suggests that the Tulip Trust forgeries cannot serve as a basis for default sanctions because he "never has attempted to introduce any of [them], nor has he substantively relied on them." Opp. at 10. Wright's "'no harm, no foul' argument is disingenuous" at best, since "[c]learly, in filing the fraudulent evidence with this court" he "intended the court[] to rely on such evidence." *Am. Rena*, 2015 WL 12732433, at *29. Further, Wright's approach would ignore that he's destroyed or withheld the "real" documentation of the partnership between him and David; that Wright relied on these sham documents to deceive Judge Reinhart into thinking he'd complied with his order; and that he swore these documents were authentic. *See* ECF No. [373], at 5-11, 14-18; ECF No. [277], at 2-11, 16-27; ECF No. [332-2] (May 13, 2019 Declaration); *cf. Qantum*, 473 F. Supp. 2d at 1270 (imposing default sanctions against a party that "lied under oath regarding the key issue" and "failed to produce key 'smoking-gun' documents").[8] Wright's argument amounts to a claim of immunity for forging and lying so long as it's in response to coercive demand, *e.g.,* a discovery request or court order. That's absurd.

**Second**, Wright fabricated communications with David. Partner communications would have been crucial to understanding the nature and scope of David and Wright's partnership. Many of Wright's forged communications suggest that the bitcoin in trust belongs to him. *See* ECF. No. [270-4], at 9. Wright's claim that the fabricated evidence is uniformly helpful to Plaintiffs is simply

---

[8] *See also DiLuzio v. Vill. of Yorkville*, No. 2:11-cv-1102, 2016 WL 7406535, at *26-33 (S.D. Ohio Dec. 22, 2016) (default where defendant produced fabricated notes to avoid discovery); *Sun World, Inc. v. Lizarazu Olivarria*, 144 F.R.D. 384, 390-92 (E.D. Cal. 1992) (default where defendant fabricated contract to support defense).

8

untrue. The forged communications would have been key evidence at trial had the fraud gone undetected, especially since Wright has destroyed (or refused to produce) the real communications with David or the Satoshi Nakamoto partnership email accounts. Wright claims these are irrelevant because they "primarily relate to the trusts defendant set up." Opp. at 10. But that only makes those communications *more relevant* for all the reasons discussed above.[9]

***Third***, Wright fabricated communications with HighSecured. Wright claims (at 12) that these concern "innocuous" topics, but that's false. Wright swore *to the Court* that HighSecured—which was based in Panama—absconded with bitcoin held in the Tulip Trusts. *See* ECF No. [222], ¶¶ 15–16; ECF No. [512-3], at 131:12–132:23. Given Wright's statements that he and Dave both mined bitcoin into a Panama trust (*see* Mot. at 14), these communications are highly relevant. *See, e.g.*, ECF No. [500-2], at 46-57 (discussing fabricated documents).

> 3. Wright's bitcoin list is highly relevant and the evidence shows that he has withheld key evidence in bad faith

Wright maintains default sanctions are improper because Plaintiffs "fail[ed] to show" how the bitcoin list "has any bearing on the purported partnership with Dave Kleiman to mine bitcoin or to develop bitcoin-related intellectual property."[10] As an initial matter, the argument is untimely. The Court already found the list was "relevant to Plaintiffs' claim that Dr. Wright and David Kleiman formed a partnership to develop Bitcoin technology and to mine bitcoin" ECF No. [277], at 27; ECF No. [373], at 22. In fact, Wright *conceded* the point in court. ECF No. [373], at 4.

Wright's refusal to provide an accurate list despite the orders, hearings, and sanctions imposed make no sense unless the information is highly relevant to Plaintiffs' claims. Given other evidence that Wright has access to his bitcoin (including the movement of $1.6 million of bitcoin he claimed were locked in a trust and his claim to a journalist that he could have crashed the bitcoin market at anytime), the only reasonable inference is that the real list of his bitcoin holdings contains, or would inevitably lead to discovery of, evidence that establishes Wright's liability.[11]

---

[9] For the same reason, Wright's claim that WAT00000001 has "nothing to do with" the merits of this case is untrue. That email concerns Wright and Dave's bitcoin trusts. *See* ECF No. [512-16].

[10] Wright also insinuates that Plaintiffs' counsel intentionally filed the CSW Filed List publicly. *See* ECF No. [551], at 14 (stating that "plaintiffs 'forgot' to seal the most sensitive document in this case"). Plaintiffs have already explained that the list was filed inadvertently, *see* ECF No. [541], and respond no further to this baseless accusation.

[11] *Sunrider Corp. v. Bountiful Biotech Corp.*, 2010 WL 4590766, at *31 (C.D. Cal. Oct. 8, 2010) (explaining that a party's "lack of truthfulness and manipulation of discovery raises 'a reasonable inference that if there was other discoverable material harmful to its case that its adversaries did not know about, it would be hidden forever'").

9

Wright misses the point when he criticizes Plaintiffs for previously arguing the encrypted file "doesn't exist." Opp. at 27. Plaintiffs' point is that the file's supposed inaccessibility is a fabrication because Wright can open it at any time. His refusal to do so supports an inference that it contains evidence to support Plaintiffs' claims. Indeed, Wright's wife testified that the "key slices" would enable Wright to access information concerning "the beginnings of Bitcoin," including "all" of Wright's "notes on how he created Bitcoin and all the research and all the formula and algorithms." Ex. A, Watts Dep. Tr., at 103:23-105:4. **In other words, according to Wright's own wife, crucial records of the Satoshi Nakamoto partnership exist. And Wright has intentionally withheld this evidence from Plaintiffs**. *See Sunrider Corp. v. Bountiful Biotech Corp.*, No. 08-cv-1339, 2010 WL 4590766, at *28 (C.D. Cal. Oct. 8, 2010) ("A court may conclude that a party has willfully failed to produce all responsive documents even where, as here, the existence of withheld documents is not entirely certain."); *see also Wyle*, 709 F.2d at 590 n.4 (rejecting argument that "willful failure to comply ha[d] not been established because the existence of withheld documents is merely speculative").

Further, Plaintiffs have already demonstrated a lot of information can be gleaned from a list of bitcoin. Obtaining the real list would allow Plaintiffs to reveal more and different information. For example, the list could enable Plaintiffs to prove (among other things) that Wright stole the bitcoin (*e.g.*, if large amounts suddenly moved after Dave's death), that Dave was involved in mining the bitcoin (*e.g.*, if data indicated that the bitcoin was mined by multiple people), as well as help Plaintiffs establish damages by identifying the real amount of bitcoin (likely more than Wright has identified). *See* ECF No. [332], at 23–25. Whether Dave and Wright mined bitcoin in partnership, how much that partnership mined, whether that joint mining activity continued into W&K, and whether Wright converted some or all of that bitcoin are indisputably "pivotal" issues in this case. *See KCI USA, Inc. v. Healthcare Essentials, Inc.*, No. 1:14-cv-549, 2018 WL 3196950, at *10–13 (N.D. Ohio June 29, 2018) (imposing default sanctions in conversion case, where defendant refused to produce information concerning allegedly converted goods).

### B. *Wright cannot avoid default sanctions by claiming he did not fabricate evidence specifically for this litigation*

Wright claims default sanctions are inappropriate because "[t]here is little evidence [he] manufactured evidence for the purposes of *this* litigation." Opp. at 10. Predictably, Wright cites no support for this argument. Default sanctions are warranted where, as here, a party seeks "relief

10

based on information that [it] knows is false." *Secrease,* 800 F.3d at 401 (imposing terminating sanctions). There's no exception that permits a defendant to submit fabricated evidence as long as he fabricated that evidence before litigation commenced. But Wright did fabricate for this case.

1. <u>Re-purposing prior frauds for use in this litigation is still bad faith</u>

While Wright may have forged some of this evidence in prior years, his re-purposing of those forgeries in this case, constitutes a <u>new</u> crime in this litigation. For example, at the show cause hearing he testified that (i) he believed the forged bitmessages to be a communication between him and Dave and outright denied the accusation that there were a "fake." ECF No. [236], at 113:8-25, 117:4-5. The evidence is clear and convincing that Wright forged these messages. Bitmessage wasn't created yet, and Wright accidentally revealed he controlled "David's" account when he produced the private key to Plaintiffs. His perjury at the hearing was a willful adoption in this proceeding of evidence he (may have previously) forged. The same is true for forged documents submitted with his subject matter jurisdiction attacks, and the Tulip Trust and HighSecured documents he swore were "authentic."

2. <u>There is ample evidence Wright fabricated evidence for this litigation</u>

In addition to the campaign of perjury, there is plenty of evidence Wright has actively created new forgeries for this litigation. One obvious example is the CSW Filed List, which must have been created for this litigation because its replication of the "quirky" bug Shadders introduced when generating an earlier list *specifically for use in this litigation*. Mot. at 8–11. That quirk caused Plaintiffs' expert to conclude that the "CSW Filed Lists . . . could not have plausibly been produced independently of the Shadders List . . ." ECF No. [505-5] ¶ 135. Wright (at 23) misleadingly quotes a half sentence from Antonopoulos' deposition to insinuate that the Shadders Bug is too common to have significance. What Antonopoulos actually said, though, was that "it's a relatively common form of bug **with a rather peculiar manifestation in this case**." The peculiar manifestation is what led to Antonopoulos' conclusion.[12]

Tulip Trust 3 ("TT3") was also clearly manufactured for this litigation. There are three indications it is a recent forgery. First, it purportedly controlled all Wright's assets and negated all previous Tulip Trusts, but Wright never disclosed it despite a Court order to produce all trust

---

[12] If this Court orders an evidentiary hearing, Mr. Antonopoulos stands ready to clarify he meant what he said.

documents, which strongly suggests it didn't exist at the time.[13] Second, a provision that Wright couldn't possess it until December 2019 is a transparent attempt to excuse Wright's failure to produce the document earlier. Third, while TT3 is dated to 2017, mathematical evidence proves TT3 was forged after the June 2019 Shadders List.[14]

WAT00000001 was also forged for this litigation since it contains metadata showing it was created in December 2019 but was purportedly an email from 2012. Wright's excuse that this document was produced by a non-party is meaningless. The "non-party" is Wright's wife, who lives in the same house, is represented by the same lawyers, and she produced a forged document with the same type of blemish (a hidden timestamp) found in many of Wright's other forgeries.

### C. Wright should not avoid sanctions because Plaintiffs exposed his fraud

Wright also suggests default sanctions are inappropriate because he did not actually submit all of his fabricated evidence to the Court. Opp. at 10–14. Wright claims, in essence, that his conduct was harmless because Plaintiffs are "free to ignore" fabricated evidence to the extent they believe its "provenance is suspect." But Wright has already relied on much of the fabricated evidence and his willingness to lie with wild abandon has already forced Plaintiffs to try and vet every document for potential fraud.[15] In Wright's view, "one is free to lie under oath so long as one's opponent can otherwise unearth the truth and later use it to score impeachment points at trial." *Chemtall*, 992 F. Supp. at 1410 (entering default after rejecting a similar argument).

The fact he is even willing to make such an argument "further exhibits [his] continued disrespect for the legal process," *id.*, and it further underscores the need for default sanctions in this case. *See Chemtall*, 992 F. Supp. at 1410 (explaining that by making this argument, a party only "reinforce[d] the Court's finding that 'lesser sanctions will not adequately deter and punish [his] misconduct.'").

---

[13] That, or the failure to disclose TT3 in Wright's declaration was yet another purposeful perjury.

[14] Specifically, TT3 lists the SHA-256 hash of the CSW Filed list, which means it postdates it. ECF No. [507-14], at DEFHC_01518393; ECF No. [500-5] ¶ 99(d) (providing hash of CSW Filed List). SHA-256 hashes cannot be reverse engineered, which means that TT3's inclusion of the CSW Filed List hash demonstrates TT3 had to have been created *after* the CSW Filed List existed and its hash generated (*i.e.,* after the June 2019 Shadders List).

[15] If Wright has not yet "relied" on some of his forgeries, it is largely because Plaintiffs successfully exposed it before trial. *See* ECF No. [500-2], at 6–17 (communications with Dave), 20–24 (same), 43 (WAT00000001), 46–57 (communications with HighSecured).

### IV. No lesser sanctions will suffice because submitting Wright's frauds to the jury is an inadequate remedy and an ineffective deterrent

1. <u>Lesser sanctions do not suffice for systematic perjury and fabricated evidence</u>

Default sanctions are proper where "lesser sanctions would not adequately serve the goals of punishment and deterrence." *Sprint,* 83 F. Supp. 3d at 1295. Courts find default sanctions are necessary to punish a party that fabricates evidence or engages in a campaign of perjury. *Rivera v. Drake*, 767 F.3d 685, 686 (7th Cir. 2014) ("A litigant's misconduct can justify default judgment, and perjury is among the worst kinds of misconduct.") (citations omitted).

"The federal case law is well established that dismissal is the appropriate sanction where a party manufactures evidence which purports to corroborate its substantive claims." *Vargas*, 901 F. Supp. at 1581; *Forsberg v. Pefanis*, 261 F.R.D. 694, 702 (N.D. Ga. 2009), *aff'd*, 634 F. App'x 676 (11th Cir. 2015) ("The court agrees with Plaintiff that there is no sanction short of striking of the answer to adequately address the issue of fabricated evidence."). Similarly, "when a party falsely testifies to a fact material to the substance of a litigation, such is anathema to the function of the courts." *Arnold*, 2012 WL 3276979, at *4.

2. <u>Submitting Wright's fraud to the jury would be an inadequate sanction</u>

Alternative evidentiary sanctions exposing Wright's conduct to the jury "would be woefully inadequate" for the reasons outlined in *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 136 (S.D. Fla. 1987). Plaintiffs "would be compelled to litigate [their] claims without the aid of possibly dispositive evidence. *Id.* Evidentiary sanctions "would leave too much to fortuity," and the evidence of forgery "is so varied and abundant, there is the very real risk" it will "consume the jury's attention at trial." *Id.* Finally, it's "unlikely to serve as an effective deterrent against similar wrongdoing in the future" (*id*.) because litigants would "infer they have everything to gain, and nothing to lose" by continuing to engage in such misconduct. *Vargas*, 901 F. Supp. at 1582.

Default is especially appropriate when the party's misconduct continues <u>after</u> lesser sanctions have already been imposed. *See Johnson*, 324 F.R.D. at 415-16 (rejecting lesser sanctions as they'd been imposed "to no avail"). Wright was already facing sanctions that would apprise the jury of his discovery misconduct <u>before</u> he filed the false notice of compliance and manufactured the CSW Filed List. If his "bonded courier" gambit does not expose him to sanctions beyond those already faced, he will infer he has "nothing to lose" by continuing to forge and lie his way through this case. *Vargas*, 901 F. Supp. at 1582. "A sanction which invites the

unscrupulous litigant to embark upon such a cynical calculus cannot be seen as meeting th[e] requirement" for an effective deterrent. *Telectron*, 116 F.R.D. at 136.

### 3. Wright's behavior and his opposition display an utter lack of remorse

Wright has "repeatedly ignored this Court's orders and warnings regarding non-compliance," and it is unreasonable to require Plaintiffs "or this Court to engage in a constant battle against this recalcitrant and obstructionist behavior." *Coleman v. Ballentine*, 101 F.R.D. 541, 543 (N.D. Ill. 1984). A party like Wright, "who not only lies to the Court, but when called to account for it, continues to lie under oath is deserving of the most severe sanctions." *Littler*, 2019 WL 1043256, at *11. Indeed, when the Court afforded Wright a second chance to avoid sanctions, he produced a fabricated list to Plaintiffs and lied to the Court about compliance with the Court's order. As explained above, he then proceeded to create additional forgeries showing that "[t]here is no sign of repentance or any indication that this pattern of behavior would cease if this case were allowed to proceed." *Am. Rena*, 2015 WL 12732433, at *29. Even his opposition brief is devoid of any acknowledgment or explanation for the behavior Plaintiffs catalogued. Rather than say what did happen, Wright spends a lot of pages suggesting what *could* have happened. "It is telling that [defendant] has not even attempted to deny that he lied and misled plaintiffs," and the Court, about Tulip Trusts I & II for the better part of 2019. *Chemtall*, 992 F. Supp. at 1410. Instead—in naked defiance of earlier rulings[16] by Judge Reinhart and this Court that the trusts and bitcoin holdings are relevant to Plaintiffs' claims—Wright simply pronounces that "none of the trusts have any bearing on whether there was a purported partnership with Dave Kleiman to mine bitcoin or develop intellectual property." Opp. at 10. Incredibly, he also states he has never tried to introduce or rely on them, Opp. at 10, despite his extensive reliance on them in an attempt to avoid producing his bitcoin holdings.

With respect to the "notice of compliance" and the CSW Filed List, Wright suggests it simply doesn't matter because he "cleared up any resulting confusion in his interrogatory responses where he provided a detailed narrative as to how he obtained the list of bitcoin addresses." Opp. at 21. Confronted with movement of bitcoin he said was locked up, his Shamir scheme story has been casually discarded in favor of a new tale about a Kenyan lawyer with bad accounting skills. Opp. at 22–23. All of this should be rejected out-of-hand by the court because a "'newly advanced

---

[16] *E.g.*, ECF No. [373], at 22; ECF No. [277], at 8.

position,' crafted only to exonerate litigation misconduct, need not be believed." *Ayoubi v. Dart*, 640 F. App'x 524, 527-28 (7th Cir. 2016).

Likewise, Wright does not even bother to dispute that the WAT00000001 email produced by his wife is a provable forgery. He just shrugs it off as irrelevant and produced by a "non-party." Opp. at 11–12. With respect to the anachronism in the W&K Operating agreement, Wright inconceivably argues it's "entirely possible that the document contains a miscite" **to a law that didn't exist when the document was allegedly signed**. Opp. at 20–21. And with respect to the Tulip Trust III document, Wright "suggests" Plaintiffs have excluded the absurd idea that one can pick a randomly assigned government issued corporate number in advance.

The clearest illustration of Wright's utter lack of remorse is his proclamation that he "cannot accept responsibility for every document that he has produced" and his suggestion the forgeries are Plaintiffs' fault for requesting a lot of documents. Opp. at 15. Wright pretends to be baffled by Plaintiffs' motion, saying it "makes no sense when one considers that defendant has cooperated extensively in the discovery process" when nothing could be further from the truth. Opp. at 27.

Wright has not accepted any responsibility for any of his misconduct to date. In response to each exposed forgery or lie, he produces another three to take their place. He has tried to make a mockery of the federal judiciary, has made it clear he has no intention of correcting his behavior, but has the gall to invoke the protections of the U.S. Constitution. The Court should have "no confidence that [defendant] would testify truthfully to the jury" and impose default sanctions because "[a] party who lies in an attempt to secure summary judgment and then lies under oath during a hearing about her misconduct does not deserve another opportunity to commit perjury." *Littler*, 2019 WL 1043256, at *10.[17]

### V. Wright does not dispute the Court's authority to enter lesser sanctions

In any event, default sanctions are not the only remedy for litigation misconduct and inherent sanctions "may include monetary penalties, adverse inferences, and the striking of claims or defenses." *Sprint*, 83 F. Supp. 3d at 1295. They are "broader and more flexible than the authority to sanction found in the Federal Rules of Civil Procedure." *Telectron*, 116 F.R.D. at 126.

---

[17] Wright claim that the Court cannot rely on expert reports because its hearsay and doesn't reach the evidentiary standard is meritless because the Federal Rules of Evidence don't apply to motions for sanctions. *See Ceglia v. Zuckerberg*, No. 10-cv-569, 2013 WL 1208558, at *9, *14–15 (W.D.N.Y. Mar. 26, 2013), *aff'd*, 600 F. App'x 34 (2d Cir. 2015) (rejecting Wright's exact argument as "[w]ithout any merit" and imposing terminating sanctions based on expert reports); Order, ECF No. [454] at 9.

15

Dated: June 8, 2020  Respectfully submitted,

                                              *s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman, Esq.
**ROCHE CYRULNIK FREEDMAN LLP**
200 S. Biscayne Blvd.
Suite 5500 Miami, Florida 33131
vel@rcfllp.com
nbermond@rcfllp.com

Kyle W. Roche, Esq.
Joseph M. Delich, Esq.
**ROCHE CYRULNIK FREEDMAN LLP**
99 Park Avenue, 19th Floor
New York, New York 10016
kyle@rcfllp.com
jdelich@rcfllp.com

Andrew S. Brenner, Esq.
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd Street, Suite 2800
Miami, Florida 33131
abrenner@bsfllp.com

*Counsel to Plaintiffs Ira Kleiman as*
*Personal Representative of the Estate of*
*David Kleiman and W&K Info Defense Research, LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 8, 2020, a true and correct copy of the foregoing was filed with CM/ECF, which caused a copy to be served on all counsel of record.

                                              */s/ Velvel (Devin) Freedman*
                                              Velvel (Devin) Freedman