Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
- - - - - - - - - - - - - - - - - - - - - x
IRA KLEIMAN, as the personal
representative of the Estate of
David Kleiman and W&K Info Defense
Research, LLC,

        Plaintiffs,

                CASE NO.:
  -against-       9:18-CV-80176-BB/BR

CRAIG WRIGHT,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - x


        Zoom video conference deposition of
KEVIN MADURA, taken pursuant to notice,
was held remotely, commencing April 30,
2020, 9:00 a.m., before Leslie Fagin, a
Stenographic Court Reporter and Notary
Public in the State of New York.

              - - -


      MAGNA LEGAL SERVICES
  320 West 37th Street, 12th Floor
    New York, New York 10018
      (866) 624-6221



Page 188

```
 1                K. Madura
 2     position that in his consulting
 3     capacity, to the extent it relates or
 4     would have intentionally informed his
 5     opinions as they relate to his expert
 6     testimony, expert testifying testimony,
 7     you are entitled to that, but you are
 8     not entitled to everything.
 9          So the final offer I'm making is,
10     and I can send you those cases or give
11     you those case citations and you can
12     have your people check those out, but
13     what we can do, I don't want to -- I
14     don't expect you to take my word for it
15     and I won't take your word for it, but
16     if you let me do what I think the right
17     thing to do is, based on my experience
18     on the case law that I have seen thus
19     far, like I said, it's not exhaustive,
20     where I will allow him to disclose
21     information regarding his consulting
22     services, to the extent that they could
23     have any relationship to the reports,
24     then I will do that.
25          And, you know, with no prejudice to
```



Page 189

```
 1                    K. Madura
 2        your position, but if your position is
 3        going to be that I'm completely wrong
 4        and it's going to be a waiver, then I
 5        will still let him do it, if you will
 6        allow me to use a clawback, to clawback
 7        that testimony, to the extent that my
 8        reading of this case law is wrong and
 9        you are right and it's a whole waiver
10        because I don't want to do a whole
11        waiver, but I also don't want to be in a
12        position where, you know, I think that
13        if there is some information that you
14        are entitled to, but under the threat of
15        a complete waiver, I can't share that
16        with you without some sort of a clawback
17        or assurance from you.
18            Does that make sense?
19            MR. ROCHE:  I am willing -- to the
20        extent you allow him to answer, I am
21        willing to let you agree that if you
22        later determine or the court later
23        determines that that is the information
24        he revealed was privileged, then I agree
25        with your right to reserve.
```



Page 190

```
 1              K. Madura
 2          Information he discloses, when you
 3      make an objection with respect to
 4      privilege, if you just preserve the
 5      objection and let him answer, I'm
 6      willing to let you preserve that right.
 7          MS. MARKOE:  That's fine.  I will
 8      make the objection and say, essentially,
 9      based on my understanding of case law, I
10      am preserving my objection in case I am
11      wrong, but he can answer in case I'm
12      right because it does relate and I will
13      still instruct him not to answer because
14      I think it really goes way out beyond
15      the privilege.
16          MR. ROCHE:  Why don't we come up
17      with some better shorthand.  If you are
18      going to instruct him not to answer,
19      objection, not answer.  If you are going
20      to reserve a privilege, just objection,
21      privilege, you may answer.
22          MS. MARKOE:  So here is what I can
23      tell you, is that you asked two
24      questions.  I believe one was about
25      anything that he reviewed as a
```



Page 191

```
1                 K. Madura
2       consultant as it related to Dave Kleiman
3       being Satoshi Nakamoto or something to
4       that general effect.
5            Can you ask that question again and
6       I will do my objection reserving my
7       right.
8            Does that make sense?  Because,
9       like I said, I'm not trying to hinder
10      your ability to get information I
11      believe you are entitled to.
12           MR. ROCHE:  What are the questions
13      that I asked that you think I should go
14      back and ask based on your understanding
15      of the case law?  I don't want to go
16      through the entire outline again.
17           MS. MARKOE:  I think it's the one
18      that related to Dave Kleiman being
19      Satoshi Nakamoto and I think it can be
20      -- the ones that relate to review
21      materials referenced in Mr.
22      Antonopoulos' report.
23           MR. ROCHE:  You instructed him not
24      to answer questions related to Mr.
25      Antonopoulos' report?
```



Page 192

1              K. Madura

2          MS. MARKOE:  No, it was to the

3      extent that it related to his consulting

4      work, I can't remember exactly how you

5      framed the question, to be honest, but

6      it was something, I think, related to

7      the DK and CW lists.

8          MR. ROCHE:  Questions I have asked

9      about Dave Kleiman, I will go back and

10     ask those.

11         With respect to questions related

12     to Mr. Antonopoulos, I will go back and

13     ask him those questions.

14         Do you stand on your objection for

15     all the other questions I've asked him?

16         MS. MARKOE:  For the time being,

17     since I don't recall all of them, I

18     think my answer has to be yes.

19         I'm just trying to get to where I

20     think his consulting work could have had

21     some relationship or informed any of his

22     opinions or work or conclusions related

23     to his expert reports, that I think you

24     are entitled to, so those topics, you

25     can ask again with this understanding



Page 193

```
 1              K. Madura
 2       and I can have someone shoot you some of
 3       the cases.
 4            I think one of them is called
 5       Monsanto and it's 214 FRD.  I just have
 6       a short cite for it right now, which is
 7       547, and I have not read the cases in
 8       their entirety.
 9            There are two quotes.  One is, A
10       court should order disclosure when there
11       is an ambiguity as to whether the
12       material informs the expert's opinion.
13            If the subject matter directly
14       relates to the opinion in the expert
15       report, there will be at least an
16       ambiguity as to whether the materials
17       inform the expert's opinion and
18       consulting materials should be
19       disclosed.
20            There is another case that says --
21       hold on -- so that's some of the quick
22       and dirty research we have done so far.
23            MR. ROCHE:  As I understand it --
24            MS. MARKOE:  I'm trying to see --
25            MR. ROCHE:  If there is an
```



Page 194

```
 1                K. Madura
 2      ambiguity, you will allow him to answer
 3      the question?
 4          MS. MARKOE:  If there is an
 5      ambiguity as to whether as a consulting
 6      expert could have informed his opinions
 7      as a testifying expert, then, yes, but I
 8      think that it has to have a relationship
 9      to his expert testimony.
10          MR. ROCHE:  But if there is any
11      ambiguity --
12          MS. MARKOE:  It can't be on a
13      general side issue.
14          MR. ROCHE:  What does the case --
15          MS. MARKOE:  I agree, but I'm
16      saying, I will tell you if I think there
17      is legitimately any ambiguity, you and I
18      can have a difference of opinion on
19      that, but I'm going to be as -- I'm
20      going to give it my best legitimate
21      effort as to whether or not I
22      legitimately think there is an ambiguity
23      and give you that information under the
24      conditions that we have discussed.
25          MR. ROCHE:  Ready?
```



Page 195

```
 1                    K. Madura
 2              MS. MARKOE:  Yes.
 3         Q.   Mr. Madura, have you reviewed
 4    documents in this litigation that were not
 5    cited in your expert reports?
 6         A.   Yes.
 7              MS. MARKOE:  Objection, privileged.
 8              MR. ROCHE:  Are you instructing him
 9         not to answer?
10              MS. MARKOE:  No, I will instruct
11         him not to answer when I instruct him
12         not to answer.
13              MR. ROCHE:  Objection -- this is
14         the reason we don't do this.
15         Q.   Do you have a record of all the
16    documents you reviewed in this litigation?
17              MS. MARKOE:  Objection.
18              I'm going to instruct him not to
19         answer that one.
20         Q.   How would you collect all the
21    documents that you reviewed in this
22    litigation?
23              MS. MARKOE:  Objection.
24              You can answer in terms of the how.
25         A.   I would need to look at my email
```



Page 197

```
 1                K. Madura
 2           MR. ROCHE:  It's not an agreement,
 3      just to be clear for the record, I am
 4      not agreeing to -- you are saying with
 5      respect to redacting later.
 6           MS. MARKOE:  With respect to the
 7      clawback later?
 8           MR. ROCHE:  Understood.
 9           MS. MARKOE:  I'm letting him
10      answer.  This is a line I am iffy on, so
11      I want the clawback agreement and that's
12      it.
13           MR. ROCHE:  Understood.
14      A.   Yes.
15      Q.   Approximately how many documents
16  have you reviewed in Relativity in connection
17  with your litigation -- in connection with
18  your role as a consultant in this litigation?
19           MS. MARKOE:  Objection.
20           I'm going to instruct him not to
21      answer, to the extent any of those
22      documents might have helped inform any
23      of his opinions rendered as a testifying
24      expert.
25           MR. ROCHE:  I will move on to my
```



Page 202

```
 1                    K. Madura
 2         Mr. Madura may or may not have reviewed
 3         on Relativity does not have any
 4         relationship to this -- to whether or
 5         not -- let me restart.  I apologize.
 6         I'm going to object to that because
 7         every single document that Mr. Madura
 8         may or may not have reviewed on
 9         Relativity does not pertain to his
10         testimony as a testifying expert or his
11         opinions as a testifying expert.
12             If there is anything that he
13         reviewed that could have informed or
14         did, in fact, inform his opinions, then
15         we can discuss that issue more
16         specifically, but your request for all
17         documents that Mr. Madura has reviewed
18         on Relativity for any purpose whatsoever
19         is something that we will be objecting
20         to and we will not produce to you and we
21         will not provide that information.
22         Q.   Have you reviewed any evidence
23    relating to Dave -- strike that.
24             Have you reviewed any evidence
25    related to Dave Kleiman's electronic devices?
```



Page 204

```
 1                    K. Madura
 2        analysis of Dave Kleiman's electronic
 3        device is outside the scope of the
 4        report and outside the scope of his
 5        opinions and to that extent, I would
 6        instruct him not to answer.
 7        Q.   Have you seen evidence that relates
 8   to any private keys belonging to Dave Kleiman
 9   in this litigation?
10             MS. MARKOE:  Objection, outside the
11        scope.
12             MR. ROCHE:  To the extent that Dave
13        Kleiman mined early Bitcoin, it would be
14        relevant to his capacity to be Satoshi
15        Nakamoto and Mr. Madura testifies to the
16        likelihood that Mr. Kleiman was involved
17        in the development of the White paper,
18        so to the extent Mr. Kleiman possessed
19        or there is evidence to suggest that Mr.
20        Kleiman possessed early Bitcoin, then it
21        would be relevant.
22             MS. MARKOE:  I actually wholly
23        disagree with that concept.  I think
24        there were lots of -- not lots, there
25        were some people who mined early
```

