UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC,<br><br>   *Plaintiffs,*<br><br>v.<br><br>CRAIG WRIGHT,<br><br>   *Defendant.* | CASE NO.: 9:18-cv-80176-BB |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR OMNIBUS MOTION IN LIMINE**

## **TABLE OF CONTENTS**

I.     EVIDENCE RELATING TO DAVID'S CHARACTER, IRA'S RELATIONSHIP WITH DAVID, AND CRAIG'S CHILDHOOD SHOULD BE EXCLUDED ......................................... 1

    A.    MIL #1:  David and Ira's relationship ................................................................ 1

    B.    MIL #6:  Alleged drug abuse, social life and domestic violence ..................................... 2

    C.    MIL #5:  Alleged suicide ................................................................................ 3

    D.    MIL # 7: Exclude testimony or references to Dr. Wright's childhood trauma. ................ 4

II.    WRIGHT SHOULD BE PRECLUDED FROM CONTRADICTING JUDICIALLY ADMITTED DOCUMENTS ........................................................................................... 4

III.   WRIGHT SHOULD BE PRECLUDED FROM TESTIFYING THAT HE WAS HACKED ................................................................................................................. 7

IV.   THE COURT SHOULD PRECLUDE THE USE OF THE LATE DISCLOSED DOCUMENTS ................................................................................................................ 9

    A.    Wright does not address—much less deny—the significant red flags calling into question the authenticity of the late produced documents ............................................ 9

    B.    Wright sat on the late produced documents for nearly five months ................................. 9

    C.    The multimedia files Plaintiffs produced on the last day of discovery were never requested by Wright ........................................................................................ 10

CONCLUSION ................................................................................................................ 10

I. **EVIDENCE RELATING TO DAVID'S CHARACTER, IRA'S RELATIONSHIP WITH DAVID, AND CRAIG'S CHILDHOOD SHOULD BE EXCLUDED**

After successfully derailing the discovery period of this case with his "antics" (ECF No. [373], at 21), Wright now seeks to derail the trial of this case away from the merits and onto an emotional appeal where he seeks to ask the jury not to award a "bad," "undeserving," and "estranged" brother the assets that his "drug using," "strip club going," "woman abusing," and "suicidal" adopted brother created.

This case is about whether David Kleiman and Wright formed a partnership to mine bitcoin and develop blockchain related intellectual property. Wright has made clear that he intends to defend this case by debasing David, who he once described as his "best friend" and tearfully eulogized in public,[1] as an impoverished, women-beating drug addict, who visited strip clubs, hated his brother, and committed suicide. Putting aside that most of these claims lack evidentiary support, this should not be allowed.

A.  MIL #1:  David and Ira's relationship

Wright claims he needs to introduce evidence of Ira's relationship with David to attack Ira's credibility. But the extent of Ira's personal knowledge of facts germane to this lawsuit while David was alive is largely limited to Ira and David's November 26, 2009 (Thanksgiving Day) dinner conversation where David said he was making "digital money" with a "rich foreign man." *See* ECF No. [83-2], at 2.

Wright's contends he needs to tell the jury Ira was a "bad brother" to cast doubt on the Thanksgiving story since it's implausible David would tell his "estranged" brother he was creating secret digital money. First, if Wright's theory of relevance is the state of Ira and David's relationship in 2009, no post-2009 relationship evidence should come in (*e.g.*, hospital visitation). But more importantly, evidence demonstrating Ira was not close to David in 2009 has very little probative value, certainly outweighed by its prejudicial effect, given the undisputed evidence that Ira emailed this story to Wright in 2014 (before any known adversity) and **Wright responded by confirming it**. *Id*. Given this prior admission, it's obvious Wright's desire to introduce the "bad brother" evidence is not motivated by showing the conversation didn't take place, but as an effort

---

[1] Crypto Me!, *Craig Wright tribute video to friend Dave Kleiman (some say this pair is "Satoshi"). RIP (1967-2013)*, YouTube (May 10, 2018), https://youtu.be/uVtOkE5vHbY.

1

to smear Ira, and paint him as an undeserving plaintiff.[2] The Court should exclude all such evidence, *but at a minimum*, should exclude all post-2009 evidence of their relationship.

Equally unavailing is Wright's speculative contention that Ira's relationship with David could have motivated Ira to destroy David's files after his death. *See* ECF No. [523], at 11. Wright speculates that data on David's devices could have shown "that Dave did not intend for Ira, as Dave's estate's representative, to have any claim against defendant, or that Dave in fact did not have any claim against defendant." *Id.* Ira's relationship with David is completely irrelevant to Wright's baseless allegation that Ira destroyed evidence.

Wright's conduct demonstrates his desire to inject evidence of Ira and David's relationship into this trial is nothing more than a smear campaign. If Wright *actually* believed Ira destroyed evidence, he would have brought a spoliation claim and allowed the Court to determine if a remedy is necessary. *See* Fed. R. Civ. P. 37(e). Wright did not, because there's no evidence of spoliation. Instead, Wright intends to litigate his speculative and nonsensical theory before the jury. The Court should not allow this improper end-run around Rule 37(e).[3]

The Court should see these attempts for what they are. Wright wishes to portray Ira as "undeserving," in the hope that the jury will turn its focus away from the merits of the case. This case is about David and Wright's business relationship—not a sibling relationship. The state of Ira and David's relationship does not change, or even relate to, David and Wright's joint bitcoin mining and intellectually property development. To the extent testimony about the relationship has any probative value to vet a quick conversation that took place in 2009 that Wright has already confirmed the accuracy of—it is substantially outweighed by the prejudice Wright seeks to exploit.

**B.     MIL #6:  Alleged drug abuse, social life and domestic violence**

Wright's opposition confirms that he seeks to introduce improper evidence of David's alleged drug abuse, social life and domestic violence. This conduct is irrelevant to the claims and defenses in this action. *See* Fed. R. Evid. 404(a)-(b).

Wright repeatedly claims, without explanation, that David's alleged drug and domestic abuse bear on the core issues. But his sole claim that this evidence is relevant is that it counters the

---

[2] Wright's theory that Dave and Ira had an "acrimonious relationship" is belied by the fact that Dave's Will named Ira as the sole beneficiary and Personal Representative of his Estate.

[3] Further, there is no evidence that Ira deleted any of David's electronic files containing relevant evidence. Ira explained at his deposition that he only (1) "discard[ed] some papers" that "didn't look relevant to keeping" like "junk mail," and (2) reformatted two devices that did not have anything on them. ECF No. [488-14], at 44:20–45:3, 48:10–14, 49:13–17, 53:3–4.

portrayal of David as someone who refused to cash in on the massive fortune he amassed. ECF No. [523], at 15. But Wright never explains how alleged drug use or visiting adult clubs has any bearing on David's ability to honor an agreement not to touch assets. *See Murphy v. Precise*, No. 16-cv-0143, 2017 WL 6002581, at *12 (M.D. Ala. Dec. 1, 2017) (inflammatory character evidence "subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened").

Moreover, there is currently no evidence in the record whatsoever that David was "abusing drugs" or that he abused women. Instead, the record evidence on drug "abuse" is limited to a single reference in an Autopsy Report (ECF No. [497-19]) that David may have had trace amounts of cocaine in his body at his time of death.[4] But even if David had drugs in his system when he died, there is no evidence that it impacted, in any way, the question of whether he and Wright had a joint business relationship, or David's ability to honor an agreement not to touch assets. There also is no record evidence that David abused women. Wright's portrayal of David as a drug and women "abuser" is just another one of Wright's ploys to obfuscate and distract the jury.

C.      MIL #5:  Alleged suicide

The Palm Beach County Medical Examiner, the official charged with cause of death investigations (Fla. Stat. § 406.11(1)) investigated the cause of David's death, and conclusively determined it was **not** suicide, but: "NATURAL." *See* ECF No. [497-19], at 1. Yet, Wright confirms he intends to testify that David committed suicide.

Wright is a lay witness and incompetent to testify about the cause of David's death. *See Wingster v. Head*, 318 F. App'x 809, 814-15 (11th Cir. 2009) (cause of death determinations are "beyond the scope of a layperson's knowledge" and "present[] a technical and scientific issue that requires the specialized knowledge of an expert medical witness"); Fed. R. Evid. 701(c).

Further, this testimony is irrelevant because the circumstances of David's death are not at issue in this case. *See* Fed. R. Evid. 401(b). And any relevance it does have (it has none) would be substantially outweighed by the prejudice that will occur if it is admitted.

---

[4] The Autopsy Report itself is inconclusive as it indicates cocaine was found in Dave's urine screen but not his blood screen. *Id.* at 5-6.

In sum, Wright should be precluded from offering his personal opinion that "Dave intended to end his own life." ECF No. [523], at 14.[5]

### D. MIL # 7: Exclude testimony or references to Dr. Wright's childhood trauma.

Wright seeks to introduce evidence of ▮▮▮▮▮▮▮▮ trauma *he* allegedly suffered as a child "to explain his conduct, both before and during this litigation." ECF No. [523], at 17. Wright is clearly attempting to direct the jury away from the facts and improperly arouse empathy for himself.

As this Court is aware, Wright has hired an expert to opine that his mental health—specifically his never-before-diagnosed "severe" autism, Ex. 1 (Klin Dep.), at 167:4-169:7; 181:6-10—is relevant to the jury's assessment of his credibility. Plaintiffs have moved to strike this testimony. *See* ECF No. [509], at 1. However, it is notable that Dr. Klin stated he is "absolutely not" opining that Wright's alleged childhood trauma "was the cause or a contributing cause to his autism." ECF No. [497-22], at 245:21-246:5. Because Wright's alleged childhood trauma had no bearing on his ASD diagnosis, it follows that testimony related to Wright's childhood trauma is completely irrelevant to Wright's conduct and ASD. *See id.*

Wright's alternative reason for introducing evidence of his alleged abuse is to help explain "his disappearance as Satoshi Nakamoto in 2010, which was brought on by Wright's discovery that his creation—Bitcoin—had been used to facilitate abuse similar to what he had suffered as a child." ECF No. [523], at 17. This highly specious, self-serving testimony has no bearing on whether he and David formed a joint business relationship.[6] In sum, evidence of Wright's alleged childhood trauma is an irrelevant and improper attempt to garner empathy and should be excluded.

## II. WRIGHT SHOULD BE PRECLUDED FROM CONTRADICTING JUDICIALLY ADMITTED DOCUMENTS

If a document says it is from Craig Wright, and Wright says in his answer the document speaks for itself, that is an admission the document is from Craig Wright. *Graham Eng'g Corp. v.*

---

[5] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[6] Notably, Judge Reinhart already found this testimony "defies common sense and real-life experience." ECF No. [277].

4

*Adair*, 2018 WL 1907063, at *2 (M.D. Pa. Apr. 23, 2018) ("the response that a document speaks for itself is generally deemed an admission that the contents of a document are what they are purported to be"); *Kurz-Kasch, Inc. v. Holtzberg*, 2006 WL 561918, at *3 (D.N.J. Mar. 7, 2006) ("Defendants admitted to execution of the promissory note in stating that the promissory note speaks for itself").[7] Yet, Wright asks this Court to hold otherwise, and allow him to deny the authenticity of documents at trial that he admitted at the outset were authentic.

Defendant asserts that his "speaks for itself" answers are "ambiguous" and that ambiguous answers cannot be judicial admissions. But the only proper responses in an answer are admissions, denials, and statements that the pleader lacks sufficient knowledge or information to form a belief—any other response is improper and evasive, and may be deemed an admission. *See Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1030 (C.C.P.A. 1982) ("An answer which attempts to evade the pleading requirements of Rule 8 by the tactic of an equivocal admission or denial is an admission"); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied").[8]

Most cases cited by Wright on ambiguity involve less formal oral and written statements of counsel that were arguably inadvertent or inartful.[9] His primary case, *Service Source, Inc. v. Office Depot, Inc.*, 259 F. App'x 768 (6th Cir. 2008), does not say that a "speaks for itself" response cannot constitute an "express concession of fact" or a "deliberate voluntary waiver," as Wright asserts. There, the defendant stated in its answer that an alleged written contract "speaks for itself." In a later filing that "superseded the pleadings of the parties," the defendant argued that the person

---

[7] *See also Carnahan v. Alpha Epsilon Pi Fraternity, Inc.*, 2018 WL 5825310, at *3 (W.D. Wash. Nov. 7, 2018) (response that "the letter speaks for itself" deemed an admission);; *Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. S.D. Warren Co.*, 382 F. Supp. 2d 130, 138 n.7 (D. Me. 2005) (answer that the award speaks for itself construed "as an admission that Attachment B was an accurate copy of the arbitration award").

[8] *See also Kule-Rubin v. Bahari Grp. Ltd.*, 2012 WL 691324, at *3 (S.D.N.Y. Mar. 5, 2012) ("an answer that neither admits nor denies allegations is deemed to admit the truth of those allegations"); *United States v. $67,775.00 in U.S. Currency*, 278 F.R.D. 345, 347 (D. Md. 2012) (responses that "failed to specifically deny the allegations" of the complaint deemed admitted).

[9] *See MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997) (statements of counsel using words such as "probably" and "suggesting," thus "indicating that such remarks were guarded and qualified"); *United States v. Belculfine*, 527 F.2d 941, 944 (1st Cir. 1975) ("somewhat casual statement" in a footnote to a brief and trial testimony about what a witness "believed" or "thought"); *Robinson v. McNeil Consumer Healthcare*, 671 F. Supp. 2d 975, 981 (N.D. Ill. 2009) ("counsel's statements of his conception of the legal theory of a case"). Wright also cites *Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1972), which held that a party **did** judicially admit the authenticity of trial exhibits by failing to object.

who signed the document was not authorized to do so. *Id*. at 774. Stating that "the district court did not err in finding that [the defendant] had not admitted that Anderson had authority," the Sixth Circuit affirmed a defense verdict. *Id*. at 773. Notably, the defendant in that case did not claim that the subject document was not, in fact, signed by Anderson, or that it was a hacked document placed in its computer files.

No person would say a document "speaks for itself" if they truly believed the document had been fabricated from whole cloth by a malicious third party to frame them. Wright unambiguously admitted to the authenticity of the documents, and is bound by that admission.

It is true that the Court has discretion to allow Wright to amend his answer to delete his admissions, but this requires "exceptional circumstances," a showing "that the admitted fact is clearly untrue and the party was laboring under a mistake when he made the admission." *Aligned Bayshore Holdings, LLC v. Westchester Surplus Lines Ins. Co*., 2020 WL 564037, at *2 (S.D. Fla. Feb. 5, 2020); *Castellanos v. Portfolio Recovery Assocs*., 297 F. Supp. 3d 1301, 1311 (S.D. Fla. 2017). Here, Wright has not provided any grounds for the exercise of the Court's discretion. The true explanation for Wright's change of heart about these documents is obvious—Wright is a chronic liar,[10] and as the case progressed, he realized the documents are detrimental to his defense and now wants to deny their authenticity.

Leave to amend, if Wright were to formally move for it, should be denied in light of Wright's repeated perjury and bad faith. *See Local 472 v. Georgia Power Co*., 684 F.2d 721, 724 (11th Cir. 1982) (leave to amend may be denied for "undue delay in filing, bad faith or dilatory motives"); *United States v. Vehicle 2007 Mack 600 Dump Truck*, 680 F. Supp. 2d 816, 829 (E.D. Mich. 2010) (deeming admitted evasive and equivocal answers and declining to grant leave to amend because the "request is made in bad faith"). Moreover, the deadline for amendments to pleadings was almost two years ago, ECF No. [21], at 2 (deadline of July 10, 2018), and granting leave now could require additional discovery.

Finally, Plaintiffs were in no way obliged to move to strike Wright's Answer, particularly since he confirmed the authenticity of some of these documents at his 2019 deposition. Only

---

[10] Judge Reinhart found that Wright had "intentionally submitted fraudulent documents to the Court, obstructed a judicial proceeding, and gave perjurious testimony." ECF No. [277], at 28. This Court "agree[d] with [Judge Reinhart's] credibility findings relating to Defendant." ECF No. [373], at 15. This Court has also found that "the record is replete with instances in which the Defendant has proffered conflicting sworn testimony before this Court." ECF No. [265], at 10.

recently, at his March 2020 deposition, did he change his testimony. The burden was on Wright to request leave to amend, and to do so before plaintiffs moved to have the responses deemed admitted. *See Vehicle 2007*, 680 F. Supp. 2d at 829 (leave denied where not requested until "two months after the Government filed the motion to have the allegations of the Amended Complaint deemed admitted"); *Aligned Bayshore Holdings*, 2020 WL 564037, at *3 (leave denied where not sought "until after the issue was raised in the summary judgment briefing"); *Castellanos*, 297 F. Supp. 3d at 1311–12 (granting summary judgment because "Defendant offers no reason whatsoever, much less show exceptional circumstances, warranting relief from Defendant's judicial admission"). Plaintiffs' motion *in limine* on judicial admissions should be granted.

### III. WRIGHT SHOULD BE PRECLUDED FROM TESTIFYING THAT HE WAS HACKED

Plaintiffs' Motion requested two alternative forms of relief vis-à-vis Wright's unsubstantiated claims that his documents have been "hacked." First, since the claims are completely unsupported by any independent evidence, Plaintiffs asked that Wright be precluded from making that claim at trial. Second, if the Court declines to bar Wright from claiming this "hack," Plaintiffs requested that to prevent unfair surprise, Wright *at least* be required to identify all so-called "hacked" documents 30 days before trial. In his opposition brief, Wright does not specify any reason why the Court should not grant this alternative relief. Basic fairness demands no less. Wright makes two arguments in response to the primary relief sought by Plaintiffs. First, he criticizes Plaintiff for not identifying any cases on this precise issue. Second, he claims he is not making a "mockery of the judicial system" since he has previously made this same unsubstantiated claim of hacking.

As to the first charge, Wright is correct. There does not appear to be a case with this specific cornucopia of deceit. For example, the Court has already found that "there is a strong, and unrebutted, circumstantial inference that Dr. Wright willfully created the fraudulent documents." ECF No. [277], at 21. Worse, Wright has repeatedly validated and authenticated documents, only later to claim they are forgeries. Wright has claimed "document speaks for" themselves to later claim they are hacked (*see* Section b), he testified that he recognized emails with Ira and referred to an email as "mine" only to later claim he never sent the email (*see* ECF No. [510], at 11-12), and he testified a signature was his and then submitted an expert to opine that signature was a forgery (*see* ECF No. [509], at 22-23).

7

And while courts have dealt with litigants who refuse to tell the truth or otherwise forge evidence through sanctions, *see* ECF No. [512], the relief requested here is much more pointed. Specifically, Wright should not be allowed to wave off all adverse evidence with a generic and unsubstantiated claim of hacking. Why does Wright, a computer security expert[11] with an impressive number of security related certifications,[12] have no evidence?

That leads to Wright's second "defense." He cites himself, and his self-proclaimed litigation "liaison" (Ex. 4 (First J. Nguyen Dep.), at 63:7-15) for the proposition that he has been making this same "hacking" claim for years. But Mr. Nguyen admitted he's seen no evidence of the hacking beyond the say-so of Dr. and Mrs. Wright. *See* Ex. 5 (Second J. Nguyen Dep.), at 251:17-252:2. To the extent Wright has been making this hacking claim for years, it is because he has been trying to explain away inconvenient documents for years. Indeed, the pattern is the same. When facing a difficult situation, Wright manipulates and forges documents that support his position, and then, when caught accuses others of doing the same to him. *See, e.g.*, Ex. 6 (Watts Dep.), at 224:21-225:13. He has done this in his various legal proceedings in Australia, and it has led to a Court finding of deceit and his own lawyers firing him because he was using them as a conduit to transmit forged evidence to the Court. *See, e.g.*, Ex. 7 (Wright v. Ryan & Anor [2005] NSWCA 368), ¶¶ 10-13 (claiming own emails were fabricated); ECF No. [510], at 14 (terminated by attorneys based on "serious questions about the integrity of documents" he provided).

Relatedly, to "prove" a hacker exists, Wright cites his own handwriting expert's opinion[13] and claims one would not forge their own signature and keep the document. But Wright needed that document for the ATO, to whom he submitted it, and relied on it extensively for his defense there. *See* ECF No. [509], at 23 n.10; *see also* ECF No. [525], at 8-9. This argument also ignores that Wright swore he signed it at deposition. *See* ECF No. [509], at 22-23.

In sum, Defendant must not be allowed to use an unsubstantiated "hacking" claim as an excuse to disavow the documents he produced in this case. He has had ample time to come forward with any proof of this claim but has decided not to. He has hired multiple computer experts yet

---

[11] Ex. 2, About Craig (last visited June 1, 2020), available at https://craigwright.net/about/.

[12] Ex. 3, Professional Certifications (last visited June 1, 2020), available at https://craigwright.net/about/#professional-certifications.

[13] Unfortunately, the defense misrepresents the expert's opinion. Norwitch (whose opinion should be excluded) did not opine the document bore a "forged version of defendant's signature." As clarified at deposition, he does not know whether Wright signed the Deed of Loan, the represented known samples, or neither. He simply opined that the same person did not sign both.

asked none of them to investigate his hacking claim. The reason is simple – there is no evidence that his devices were hacked because they weren't. At a bare minimum, Wright should be ordered to disclose, 30 days before trial, any documents he intends to claim were the result of "hacking."

## IV.     THE COURT SHOULD PRECLUDE THE USE OF THE LATE DISCLOSED DOCUMENTS

The Court should exclude Wright's late disclosed documents from trial. However, if the Court finds that remedy too harsh, Wright should be compelled to sit for an additional 4-hour deposition to allow Plaintiffs to adequately investigate these documents and their authenticity.

### A.     Wright does not address—much less deny—the significant red flags calling into question the authenticity of the late produced documents

Plaintiffs' Motion sets out several reasons to believe these suddenly discovered, late-produced documents are, in fact, yet more forgeries from Wright, fabricated by him to help his case at trial. *See* ECF No. [510], at 18–19. While delaying production of authentic evidence alone would have been prejudicial to Plaintiffs, the late production of new forgeries poses an even greater threat because it has significantly handcuffed Plaintiffs' ability to expose the frauds. *Id.*

Wright's response "utterly fail[ed] to address" this argument, thereby "implicitly conceding the point." *Anderson v. Branch Banking & Tr. Co.*, 119 F. Supp. 3d 1328, 1345 (S.D. Fla. 2015) (Bloom, J.) (collecting cases); *see also Nat'l Union Fire Ins. Co. of Puttsburgh v. Tyco Integrated Sec., LLC*, No. 13-CIV-80371, 2015 WL 11251736, at *3 (S.D. Fla. July 29, 2015) (Bloom, J.) ("Plaintiff has elected not to address Defendant's argument with respect to Rule 37 and has thereby conceded the point.") (granting motion to exclude testimony).

The Court should treat Wright's silence as an admission that much of this evidence was, in fact, fabricated by Wright, or his wife, which alone is ample reason to exclude it.

### B.     Wright sat on the late produced documents for nearly five months

In his response, Wright argues that the "existence of those files was no secret." ECF No. [523], at 13. What Wright fails to acknowledge, however, is that he apparently obtained these files no later than December 2019 or January 2020. *See* Ex. 6 (Watts Dep.), at 142:18–25. That means Wright elected not to produce them until much later, after he was deposed, even as he was able to promptly produce other documents. *See* ECF No. [373], at 10 n.5.

Wright blames Plaintiffs for "never follow[ing] up" and failing to "demand an immediate production" after the documents were alluded to in Wright's March deposition, but he never offers any excuse for not producing them sooner or why Plaintiff would need to make demands above

those they issued under Rule 34 on May 30, 2018. *See* ECF No. [36-1], at 7 (Request 7-8).

      **C.    The multimedia files Plaintiffs produced on the last day of discovery were never requested by Wright**

Finally, Wright attempts to excuse his own conduct by accusing Plaintiffs of being equally guilty for producing materials on the last day of discovery. But context matters. The materials produced by Plaintiffs were part of a group of multimedia files that had been identified to Wright on November 26, 2019. However, per the parties' agreements, none of those files were required to be produced absent a request for specific files. Wright fails to mention that, while he eventually requested certain files, he <u>never requested</u> the ones Plaintiff produced at the close of discovery. *See* Ex. 8 (April 1, 2020 email between Zaharah Markoe and Kyle Roche). Plaintiffs voluntarily produced these files in an abundance of caution so Wright would not claim surprise if Plaintiffs used them at trial (not that this claim would be well-founded). There is simply no equivalence between how Wright and Plaintiffs have fulfilled their discovery obligations. This is true generally and as it relates to these late produced documents.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant Plaintiffs' motions *in limine*.

Respectfully submitted,

Dated: June 2, 2020

*/s/ Velvel Freedman*
Velvel (Devin) Freedman, Esq.
Florida Bar No. 99762
**ROCHE CYRULNIK FREEDMAN LLP**
200 S. Biscayne Blvd, Suite 5500
Miami, Florida 33131
Telephone: (305) 357-3861
vel@rcfllp.com
nbermond@rcfllp.com

Kyle W. Roche, Esq.
Joseph M. Delich, Esq.
*Admitted Pro Hac Vice*
**ROCHE CYRULNIK FREEDMAN LLP**
99 Park Avenue, Suite 1910
New York, NY 10016
kyle@rcfllp.com
jdelich@rcfllp.com

>Andrew S. Brenner, Esq.
>**BOIES SCHILLER FLEXNER LLP**
>100 SE 2nd Street, Suite 2800
>Miami, Florida 33131
>abrenner@bsfllp.com
>
>*Counsel to Plaintiff Ira Kleiman as Personal Representative of the Estate of David Kleiman and W&K Info Defense Research, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 2, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

>*/s/ Velvel Freedman*
>VELVEL (DEVIN) FREEDMAN