UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-80176-BLOOM/Reinhart

IRA KLEIMAN, *et al*.,

      Plaintiffs,

v.

CRAIG WRIGHT,

      Defendant.

_____/

## OMNIBUS ORDER

**THIS CAUSE** is before the Court upon Defendant's Motion *in Limine*, ECF No. [490] ("Defendant's Motion"), and Plaintiffs' Omnibus Motion *in Limine*, ECF No. [497] ("Plaintiffs' Motion")[1] (collectively, "Motions"). The Court has considered the Motions, all supporting and opposing submissions (ECF Nos. [523], [525],[2] [552], and [558][3]), the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendant's Motion is granted in part, and Plaintiffs' Motion is granted in part.

---

[1] Plaintiffs' Motion was filed under seal. On May 18, 2020, Plaintiffs' Motion was refiled with redactions. *See* ECF No. [510]. For ease of reference, the Court cites to ECF No. [497].

[2] Plaintiffs' response to Defendant's Motion was filed under seal, ECF No. [525]. On June 1, 2020, Plaintiffs refiled their response. ECF No. [547]. For ease of reference, the Court cites to ECF No. [525].

[3] Plaintiffs' reply in support of Plaintiffs' Motion was filed under seal, ECF No. [558]. On June 10, 2020, the reply was refiled with redactions, *see* ECF No. [574], but Plaintiffs' reply was later ordered unsealed. *See* ECF No. [579]. For ease of reference, the Court cites to ECF No. [558].

## I.      BACKGROUND

The Court assumes the parties' familiarity with the general factual allegations and nature of this case. *See, e.g.*, ECF Nos. [68]; [83]; [87]; [265]; [373]. Defendant's Motion seeks to preclude Plaintiffs from presenting evidence regarding the following at the upcoming trial:

1.  Motion *in Limine* Issue #1: Judicial statements about Defendant's credibility; and

2.  Motion *in Limine* Issue #2: Evidence relating to the Australian Tax Office's ("ATO") audits of non-party Australian companies.

Similarly, Plaintiffs' Motion seeks to preclude Defendant from presenting arguments and evidence at trial regarding the following:

1.  Motion *in Limine* Issue #1: Evidence or testimony about Ira Kleiman's sibling-relationship with his brother, Dave Kleiman ("Mr. Kleiman");

2.  Motion *in Limine* Issue #2: Evidence or testimony from Defendant contradicting judicially admitted documents;

3.  Motion *in Limine* Issue #3: Selective and *ad hoc* testimony from Defendant claiming that his computers were hacked or that his documents were forged;

4.  Motion *in Limine* Issue #4: Preclude Defendant's use of late-disclosed documents;

5.  Motion *in Limine* Issue #5: Testimony from Defendant that Mr. Kleiman committed suicide;

6.  Motion *in Limine* Issue #6: Evidence or testimony related to Mr. Kleiman's social habits and alleged drug use; and

7.  Motion *in Limine* Issue #7: Evidence or testimony related to Defendant's alleged childhood trauma.

The Court will address each Motion in turn.

## II.    LEGAL STANDARD

"In fairness to the parties and their ability to put on their case, a court should exclude evidence *in limine* only when it is clearly inadmissible on all potential grounds." *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010). "The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground." *Id.* "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *In re Seroquel Prods. Liab. Litig.*, Nos. 6:06-md-1769-Orl-22DAB, 6:07-cv-15733-Orl-22DAB, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009). Likewise, "[i]n light of the preliminary or preemptive nature of motions *in limine*, 'any party may seek reconsideration at trial in light of the evidence actually presented and shall make contemporaneous objections when evidence is elicited.'" *Holder v. Anderson*, No. 3:16-CV-1307-J-39JBT, 2018 WL 4956757, at *1 (M.D. Fla. May 30, 2018) (quoting *Miller ex rel. Miller v. Ford Motor Co.*, No. 2:01CV545FTM-29DNF, 2004 WL 4054843, at *1 (M.D. Fla. July 22, 2004)); *In re Seroquel Prod. Liab. Litig.*, 2009 WL 260989, at *1 ("The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion *in limine*." (citing *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989))).

Evidence is admissible if relevant, and evidence is relevant if it has any tendency to prove or disprove a fact of consequence. Fed. R. Evid. 401, 402; Advisory Comm. Notes, Fed. R. Evid. 401 ("The standard of probability under the rule is 'more probable than it would be without the evidence.'"); *United States v. Patrick*, 513 F. App'x 882, 886 (11th Cir. 2013). A district court may exclude relevant evidence under Rule 403 if "its probative value is substantially outweighed by a danger of . . .  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting

of time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Rule 403 is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *Patrick*, 513 F. App'x at 886 (citing *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011); *United States v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th Cir. 2010)). Rule 403's "major function . . . is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001). The movant has the burden to demonstrate that the evidence is inadmissible. *Gonzalez*, 718 F. Supp. 2d at 1345.

## III.   DISCUSSION

### A.   Defendant's Motion

#### i.   *Prior judicial statements*

Defendant requests the Court "exclude at trial any mention of any prior judicial statements about his credibility." ECF No. [490] at 1. His request applies to statements made by this Court, by Magistrate Judge Reinhart, and by the ATO. *Id.* at 1-3. *See also* ECF No. [552] at 1 ("Dr. Wright simply seeks to exclude reference to *prior* comments about his credibility that have been made by this Court and Magistrate Judge Reinhart[.]") (emphasis in original). According to Defendant, he "will not have a fair trial—and due process will be denied—if the jury heard judicial comments (including this Court's prior comments) about his credibility. It is wholly within the jury's province as fact finder to assess the credibility of witness testimony and weigh the evidence." ECF No. [490] at 2. In Defendant's view, comments concerning his credibility will sway the views of the jury, cause him prejudice, and in the case of Judge Reinhart's statements would be "akin to allowing him to testify at trial[.]" *Id.* at 3.[4]

---

[4] Defendant focuses particularly on certain statements made in Judge Reinhart's August 27, 2019

Plaintiffs respond that a trial judge is authorized to comment on the evidence and the credibility of witnesses, and the Motion is simply "an attempt by Defendant to ensure that his numerous misdoings, which have occurred repeatedly since the commencement of this action (and continue unabated), will have no impact nor make any appearance at this trial." ECF No. [523] at 2-3. Plaintiffs argue that Defendant is an "adjudicated perjurer who has proffered evidence and testimony that this Court has found to be incredible." *Id.* at 6. In their view, "[c]autioning the jury when Defendant offers testimony previously found to be perjurious, or when he relied on documents that have been forged or fraudulently manipulated, is firmly within this Court's power and any such commentary will not usurp the jury's role in determining credibility. Rather, it will safeguard the assumption that the jury's findings are a result of accurate and well-considered evidence." *Id.* They conclude that Defendant's Motion is not a "means to protect the fact finding function of the jury" but in reality is an effort to "chill[] the Court's power to monitor the jury's consumption of accurate evidence." *Id.*

Upon review and consideration, the Court finds Defendant's Motion as to prior judicial statements to be warranted in part. As an initial matter, "[m]otions in limine should be limited to specific pieces of evidence and not serve as reinforcement regarding the various rules governing trial, or (re)-addressing substantive motions such as motions for summary judgment." *Ctr. Hill Courts Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, No. 19-CV-80111, 2020 WL 496065, at *2 (S.D. Fla. Jan. 30, 2020) (citation omitted). A district court may deny a motion in limine when it "lacks the necessary specificity with respect to the evidence to be excluded." *Id.* (citation omitted). Here, Defendant's request broadly encompasses statements purportedly made by the ATO—which Defendant has not specifically identified or otherwise described—and certain filings entered by

---

Order on Plaintiffs' Motion to Compel, ECF No. [277] at 19-20.

this Court and by Judge Reinhart.[5] Because the ATO statements are only mentioned in the abstract, the Court denies the Motion as to the ATO comments.

As to prior comments made by Judge Reinhart and this Court, the Court agrees with Defendant that certain of these statements reflected in the filings at issue present a considerable danger of unfair prejudice and should be excluded. For instance, Defendant seeks to exclude the following statements made by Judge Reinhart in his August 27, 2020 Order:

> During his testimony, Dr. Wright's demeanor did not impress me as someone who was telling the truth. When it was favorable to him, Dr. Wright appeared to have an excellent memory and a scrupulous attention to detail. Otherwise, Dr. Wright was belligerent and evasive. He did not directly and clearly respond to questions. He quibbled about irrelevant technicalities. When confronted with evidence indicating that certain documents had been fabricated or altered, he became extremely defensive, tried to sidestep questioning, and ultimately made vague comments about his systems being hacked and others having access to his computers. None of these excuses were corroborated by other evidence.
>
> Sadly, Dr. Wright does not write on a clean slate. As Judge Bloom recently noted in denying Dr. Wright's Motion for Judgment on the Pleadings, Dr. Wright has taken directly conflicting factual positions at different times during this litigation. DE 265 at 10 ("[T]he record is replete with instances in which the Defendant has proffered conflicting sworn testimony before this Court.). As discussed below, that behavior continued before me. D.E. 277 19-20.

*Id.* at [277] at 19-20.

Judge Reinhart's comments in his August 27, 2020 Order, which squarely attack Defendant's credibility—a key feature in this case—in specific and forceful ways are "strongly worded comment[s] by the court" "questioning the defendant's credibility" that "may well

---

[5] In the reply, Defendant identifies five public filings from this Court's docket that contain "prior comments about his credibility," which comments he seeks to exclude: (i) ECF No. [265], the Court's August 15, 2019 Order on Defendant's motion for judgment on the pleadings; (ii) ECF No. [277], Judge Reinhart's August 27, 2019 Order on Plaintiffs' Motion to Compel; (iii) ECF No. [373], the Court's January 10, 2020 Order on Defendant's objection to Magistrate Order "deeming" certain facts established and "striking" certain affirmative defenses; (iv) ECF No. [420], Judge Reinhart's March 9, 2020 Order on Discovery; and (v) ECF No. [454], the Court's April 13, 2020 Order on Defendant's objection to Magistrate Order on discovery.

overbear the jury's ability to make independent fact findings." *United States v. Anton*, 597 F.2d

371, 374 (3d Cir. 1979). For instance, Defendant was characterized in that Order as someone who

"does not write on a clean slate" and whose demeanor "did not impress me as someone who was

telling the truth." ECF No. [277] at 19-20. Additional prior statements that reflect upon

Defendant's credibility include the following:

> "Dr. Wright's story not only was not supported by other evidence in the record, it
> defies common sense and real-life experience. . . He is a latter-day Dr. Frankenstein
> whose creation turned to evil when hijacked by drug dealers, human traffickers,
> and other criminals. . . . If the courier does not appear, Dr. Wright has lost his ability
> to access billions of dollars worth of bitcoin, and he does not care. Inconceivable.
> . . . Dr. Wright had many reasons not to tell the truth. . . . I have found that Dr.
> Wright intentionally submitted fraudulent documents to the Court, obstructed a
> judicial proceeding, and gave perjurious testimony. No conduct is more antithetical
> to the administration of justice."

ECF No. [277] at 19-20, 28.

> "Oh! What a tangled web we weave when first we practice to deceive. . . . Indeed,
> the Court notes that the Defendant has made *several conflicting statements*
> regarding even his own ownership of W&K. . . . Defendant has failed to present
> any *credible* evidence showing that any of the parties he suggests are *members* of
> W&K. . . . Unfortunately, the record is replete with instances in which the
> Defendant has proffered conflicting sworn testimony before this Court. In weighing
> the evidence, the Court simply does not find the Defendant's testimony to be
> credible."

ECF No. [265] at 4-5, 10 (emphasis in original) (August 15, 2019 Order on judgment on the

pleadings).

> "The Court has also reviewed the transcripts from the Evidentiary Hearing held by
> Judge Reinhart and agrees with his credibility findings related to Defendant.
> Indeed, in answering opposing counsel's questions, the Defendant was evasive,
> refused to give and interpret words in their very basic meanings, was combative,
> and became defensive when confronted with previous inconsistencies."

ECF No. [373] at 15 (January 10, 2020 Order on Defendant's objections).

> "Particularly given my prior finding that Dr. Wright has produced forged
> documents in this litigation, I decline to rely on this kind of document, which could
> easily have been generated by anyone with word processing software and a pen. . . .

> I give no weight to sworn statements of Dr. Wright that advance his interests but that have not been challenged by cross-examination and for which I cannot make a credibility determination. I have previously found that Dr. Wright gave perjured testimony in my presence."

ECF No. [420] at 6 (March 9, 2020 Order on discovery).

> "[T]he Court is puzzled by Defendant's apparent argument that Judge Reinhart must blindly accept items produced by Defendant such that Judge Reinhart cannot rely on his past experiences with Defendant in this litigation (including his history of providing forged materials and giving perjured testimony) in evaluating whether Defendant has carried his burden as to privilege."

ECF No. [454] at 9 (April 13, 2020 Order on Defendant's objections).

Although both parties agree that judges are permitted to examine evidence and comment on witness credibility at trial, strict limitations govern such judicial commentary.

> This privilege of the judge to comment on the facts has its inherent limitations. His discretion is not arbitrary and uncontrolled, but judicial, to be exercised in conformity with the standards governing the judicial office. In commenting upon testimony he may not assume the role of a witness. He may analyze and dissect the evidence, but he may not either distort it or add to it. His privilege of comment in order to give appropriate assistance to the jury is too important to be left without safeguards against abuses. The influence of the trial judge on the jury 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling.' This court has accordingly emphasized the duty of the trial judge to use great care that an expression of opinion upon the evidence 'should be so given as not to mislead, and especially that it should not be one-sided[.]'

*Quercia v. United States*, 289 U.S. 466, 470 (1933).

As in *Quercia*, the statements at issue are "of a sort most likely to remain firmly lodged in the memory of the jury and to excite a prejudice which would preclude a fair and dispassionate consideration of the evidence." *Id.* at 472. While the Court does not agree that the admission of prior judicial statements in this case is "akin" to allowing Judge Reinhart or this Court to testify at trial, the statements are likely to influence the jury to the extent that a cautionary jury instruction will not adequately cure potential prejudice. *See, e.g.*, *Anton*, 597 F.2d at 375 (explaining that jury

instruction was insufficient "to overcome the effect on the jurors of the judge's strongly worded statement that [defendant] was devoid of credibility" and noting that "[w]here a court has expressed its opinion on a pivotal issue in the case, and has expressed that opinion in a strong, unequivocal and one-sided fashion, abstract instructions regarding the jury's role as fact finder are not a sufficient remedy"); *United States v. Cisneros*, 491 F.2d 1068, 1074-76 (5th Cir. 1974)[6] (explaining that a court "must in no way trespass on the jury's functions and responsibilities, among the most important of which . . . is the right to assess credibility in finding the facts," and determining that jury instruction was inadequate remedy where the "credibility issues before the jury were close, difficult, and extremely important" and the judicial comments were "too harmful to be cured"); *United States v. Fischer*, 531 F.2d 783, 786-87 (5th Cir. 1976) (determining that judge's remarks about defense witnesses' credibility constituted reversible error where witness credibility was a "decisive issue" in the case); *see also Georgou v. Fritzshall*, No. 93 C 997, 1995 WL 248002, at *4 (N.D. Ill. Apr. 26, 1995) (noting that a "judge's testimony is likely to bear additional weight in the mind of jurors because of his position and authority, and because it automatically bears the imprimatur of character, credibility and reliability emanating from the judge's position") (internal citations omitted). Accordingly, Defendant's Motion as to issue #1 is granted as to the prior judicial statements reflected above in the filings at issue. Only these portions of the public filings are excluded.

### ii.   Australian Tax Office's audits

Defendant requests the Court to exclude evidence "relating to the Australian Tax Office's audits of non-party Australian companies." ECF No. [490] at 3. According to Defendant, "[a]ll

---

[6] The Eleventh Circuit has adopted, as binding precedent, all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

issues in this case relate to whether the late [Mr. Kleiman] and [Defendant] were in a partnership to mine bitcoin and develop bitcoin-related intellectual property. None of the issues in this case concern the ATO's audits of non-party Australian companies." *Id.* at 3-4. He makes four arguments for excluding evidence of ATO audits. First, ATO tax documents are "wholly irrelevant" and "have nothing to do" with an alleged partnership to mine bitcoin or to develop bitcoin-related intellectual property. *Id.* at 4, 6-7. Second, even if the materials are relevant, they would be inadmissible under Rule 403, Fed. R. Evid., due to confusion of issues, unfair prejudice, and misleading the jury. *Id.* at 4-5, 7-8. Third, the ATO tax documents are hearsay documents for which no exception applies. *Id.* at 5-6, 8-9. Finally, certain of the tax documents were "illegally obtained" and the documents cannot be authenticated. *Id.* at 6, 9. *See also* ECF No. [552] at 3 (arguing that admission of ATO documents will "create a very complex trial-with-a-trial about Australian tax audits and tax issues").

Plaintiffs respond that the ATO evidence largely consists of documents "provided by the Australian government to [Defendant] and subsequently produced by [Defendant] in this action." ECF No. [525] at 7 (emphasis omitted). According to Plaintiffs, ATO materials "not only provide[] the necessary context for Plaintiffs' claims, but also include[] a trove of relevant admissions from [Defendant] concerning his partnership with Dave Kleiman. These highly probative admissions—made to the Australian government in the course of its investigation—are not hearsay and are plainly admissible. The rest of the ATO Evidence is likewise admissible, as it directly supports Plaintiffs' fraud and IP-related claims and provides the jury with the information that it needs to understand [Defendant's] conduct and key evidence in this action." *Id.* Plaintiffs argue four main points. First, ATO evidence is relevant to resolving key issues in this case. *Id.* at 11-15. In their view, "many facts in this case would make little sense without the context that the ATO Evidence

provides." *Id.* at 14. Second, the probative value of the ATO evidence outweighs any unfair prejudice. *Id.* at 15-18. Third, the ATO evidence is not inadmissible hearsay. *Id.* at 18-20. And fourth, the ATO evidence can be authenticated. *Id.* at 20-22.

Upon consideration, the Court concludes that Defendant has not carried his burden to demonstrate that ATO materials—which particular evidence Defendant has not specifically identified but instead generally refers to as "tax documents"—should be excluded writ large. To begin, the Court does not agree that *all* materials associated with the ATO investigation are irrelevant. "The standard of what constitutes relevant evidence is a low one: evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *United States v. La Rosa*, 236 F. App'x 584, 588 (11th Cir. 2007) (citation omitted). As noted by Plaintiffs, ATO evidence implicates matters connected to W&K's alleged transfer of intellectual property in Australia to Defendant, statements regarding the business relationship between Mr. Kleiman and Defendant, bitcoin mining and intellectual property development, Defendant's alleged fraud, post-February 2014 communications between the parties, and it provides context and fullness for the jury to understand and evaluate evidence. ECF No. [525] at 7-15. Therefore, while Defendant challenges that the "lion's share of the thousands of tax documents produced in this case is wholly irrelevant to this action," at least certain of the unidentified materials do not fall within that class.

Further, the Court is unconvinced that ATO materials—again, in the abstract—are so prejudicial, confusing, or misleading that Rule 403 should bar their admission. Rule 403 is an "extraordinary remedy" that should be invoked "sparingly, and the balance should be struck in favor of admissibility." *Patrick*, 513 F. App'x at 886. Against this backdrop, even assuming that ATO materials carry some prejudicial aspect, Defendant has not demonstrated that the potential

danger of such prejudice substantially outweighs its probative value. Likewise, Defendant has not persuaded the Court that admitting ATO evidence would lead to litigation of collateral issues. As Plaintiffs' maintain in their response, they "do not intend to relitigate the issue of whether [Defendant's] companies 'were entitled to tax offsets.'" ECF No. [525] at 18. Rather, according to Plaintiffs, materials from the ATO are intended to "complete the story" and put into context the nature of why Defendant engaged in certain alleged actions. *See id.* at 13-14, 16-17. *See also United States v. Battle*, 473 F. Supp. 2d 1185, 1198-99 (S.D. Fla. 2006) (rejecting Rule 403 exclusion argument where the evidence "gives the jury the necessary context for understanding the full evolution and extent of" defendant's schemes); *United States v. Howard*, No. CRIM. 12-0043-KD, 2012 WL 1970268, at *3 (S.D. Ala. June 1, 2012) (collecting Eleventh Circuit cases and rejecting Rule 403 exclusion argument "particularly in light of the decisional authority . . . touting the importance of allowing the Government to complete the story of the crime even when that story works prejudice on the defendant").

The Court, separately, cannot conclude at this juncture that ATO evidence is inadmissible hearsay meeting no exception where the Court does not have the specific ATO evidence to consider. Notably, Defendant represents that the "vast majority" of ATO materials "contain multiple layers of hearsay, for which there is no exception." ECF No. [490] at 5. Not only does that imply that at least some of the ATO materials do not contain hearsay or hearsay for which an exception applies, Defendant's argument that his alleged party admissions, such as correspondence between him and the ATO, ECF No. [490] at 8, is hearsay is unavailing. *See* Fed. R. Evid. 801(d)(2) (a statement is not hearsay if it is "offered against an opposing party" and "was made by the party in an individual or representative capacity" or "is one the party manifested that it adopted or believed to be true"). While certain ATO materials ultimately may not be admissible, the Court

is unwilling on this record to find that all ATO evidence is inadmissible hearsay. The same holds true for Defendant's assertion that ATO documents cannot be authenticated.

While Defendant argues that "some" documents were "somehow illegally obtained and then published on an internet tabloid website," that does not mean that the evidence cannot be authenticated. *See* Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). And merely because Defendant "denies" that transcripts "accurately reflect the discussions in the meetings" does not support the proposition that the transcripts cannot be authenticated. Indeed, although Defendant challenges that "[t]here is no evidence that the company that prepared them (Auscript) requested and received input from either the ATO or others present at the meeting to confirm the accuracy of the transcripts," ECF No. [490] at 9, Plaintiffs have produced an email chain involving Defendant and the ATO in which a request was made to review the transcript and minutes and advise of "any errors or omissions," and Defendant himself noted a transcription error where the word "chords" was used rather than "cores." ECF No. [525-11]. Accordingly, Defendant's Motion as to issue #2 is denied. The parties may address the specific evidence and objections to ATO evidence, as appropriate, when they arise at trial.

### B.    Plaintiffs' Motion

#### i.    *Motion in limine issue #1*

Plaintiffs request the Court exclude testimony about Ira Kleiman's sibling-relationship with his brother, Mr. Kleiman. ECF No. [497] at 4-7. According to Plaintiffs, Defendant "will seek to portray the brothers as estranged or otherwise not close," and Defendant may put forth evidence that Mr. Kleiman was adopted. *Id.* at 4. Plaintiffs assert that Ira Kleiman's relationship with his

brother or with the Kleiman family is irrelevant to the issues in dispute in this lawsuit. In particular, they argue that Ira Kleiman was appointed the personal representative of Mr. Kleiman's estate, he is not a party to this suit in a personal capacity, his first-hand knowledge of relevant facts regarding Mr. Kleiman's work with Defendant while alive is limited, and the facts that Ira Kleiman has "the most personal knowledge, namely his conversations with Dr. Wright, all occurred after Dave [Kleiman] died." *Id.* at 4-5. In Plaintiff's view, Defendant endeavors to "paint Ira [Kleiman] as an underserving Plaintiff because he was not close to his brother, didn't see him 'enough,' and therefore doesn't 'deserve' the massive wealth his brother accumulated with Dr. Wright. However, this is not a wrongful death suit, and Ira [Kleiman] is not seeking damages for the loss of his brother. Instead, Ira [Kleiman] is fulfilling his legal obligation as Personal Representative to marshal the assets of [Mr. Kleiman's] estate. The fact that those monies will ultimately flow to Ira [Kleiman] as a beneficiary of the estate does not put his relationship with his brother at issue." *Id.* at 6. They add that any probative value of such evidence is substantially outweighed by the danger of unfair prejudice, confusion of issues, and misleading the jury. *See also* ECF No. [558] at 4 (arguing that "at a minimum" the Court should "exclude all post-2009 evidence of their relationship").

Defendant responds that the Kleiman siblings had a "very acrimonious relationship" and evidence regarding that relationship is "directly relevant to the reason why Ira [Kleiman], Dave's estate's personal representative, haphazardly destroyed [Mr. Kleiman's] data and documents which, if [P]laintiffs' theory of this case is to be believed, could have contained the proof necessary for [P]laintiffs' claims, or more likely, contained just the opposite." ECF No. [523] at 1. Defendant states that while Plaintiffs contend that Mr. Kleiman's alleged involvement in Bitcoin and developing related intellectual property was secretive and kept from family and friends, Plaintiffs

"ignore a key piece of evidence," which is that Mr. Kleiman and Ira Kleiman had a conversation on Thanksgiving in 2009 in which Mr. Kleiman made comments suggesting that he was developing Bitcoin with another person. *Id.* at 10-11. In Defendant's view, this alleged conversation is "*the only evidence*" Plaintiffs have to substantiate their claims apart from what Defendant provided them, and thus the Kleimans' relationship is "highly probative" and "essential" to his defense. *Id.* at 11 (emphasis in original).

The Court agrees in part with Plaintiffs. While evidence related to the alleged 2009 Thanksgiving dinner conversation is relevant to whether Mr. Kleiman was involved in Bitcoin and working with Defendant, post-2009 relationship evidence has little bearing, if any, on material issues in dispute in this case. Ira Kleiman is not a party to this lawsuit in his personal capacity, Defendant has presented no evidence that Ira Kleiman destroyed any of Mr. Kleiman's items predicated on a "motive" connected to the Thanksgiving dinner conversation, ECF No. [523] at 11, or that relevant evidence was destroyed;[7] and the quality of the siblings' relationship does not make Plaintiffs' claims or Defendant's defenses more or less probable. Indeed, whether Ira Kleiman visited his brother at the hospital, spoke to him infrequently, or whether Mr. Kleiman mentioned Ira Kleiman to others has limited probative value but substantial capacity to cause undue prejudice.

These matters raise significant concerns that the jury will "make a decision in this case premised on how 'good' of a brother Ira [Kleiman] was or whether [he] 'deserves' Dave [Kleiman's] fortune – instead of basing their decision on the facts and merits of the case." ECF

---

[7] Plaintiffs note that Ira Kleiman testified that, following Mr. Kleiman's death, he "only (1) 'discard[ed] some papers' that 'didn't look relevant to keeping' like 'junk mail,' and (2) reformatted two devices that did not have anything on them." ECF No. [558] at 4 n.3 (citations omitted).

No. [497] at 7. *See* Fed. R. Evid. 403 advisory committee's notes (1972) (unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"). Accordingly, Plaintiff's Motions as to issue #1 is granted. Evidence about Ira Kleiman's sibling-relationship with Mr. Kleiman is excluded except as to the Thanksgiving Day 2009 dinner conversations.

### ii.    Motion in limine issue #2

Plaintiffs next seek to preclude Defendant from "contradicting judicially admitted documents." ECF No. [497] at 7-12. In particular, they "request an order precluding [Defendant] from contradicting the plain meaning of the documents that come from him, were drafted by him, or were signed by him and which he judicially admitted, 'speak for themselves' in his Answer." *Id.* at 12.[8] They maintain that Defendant, in his Amended Answer, ECF No. [87], to the Second Amended Complaint, ECF No. [83] ("SAC"), stated that numerous documents referenced in the SAC "speak for themselves,"[9] and therefore the Court "should hold [Defendant] to his admission" because "[c]ommon sense says that if a document says it is from Craig Wright, and that document speaks for itself, then that document is, indeed, from Craig Wright." ECF No. [497] at 9. Plaintiffs conclude that once Defendant stated that a document "speaks for itself," Defendant "cannot later

---

[8] Plaintiffs' request refers to the following documents: ECF Nos. [83-2]; [83-4]; [83-5]; [83-6]; [83-7]; [83-8]; [83-10]; [83-11]; [83-13]; [83-14]; [83-15]; [83-19]; [83- 20]; [83-23]; [83-24]; [83-26]; [83-27]; [83-28]; [83-30]; [83-31]; [83-32].

[9] Defendant's answer generally contained the following language:

> The allegations in paragraph [x] of the Second Amended Complaint are based on an email that speaks for itself, and Dr. Wright denies any erroneous, incomplete, or out-of-context characterization of it, and any inaccurate inferences or conclusions derived from it.

ECF No. [87] at ¶ 55.

elect to speak for it and say, for example, that while it says it came from me – it actually didn't, or while it bears my signature – it actually doesn't." *Id.* at 12. *See also* ECF No. [558] at 8-9 (arguing that while the Court has discretion to allow Defendant to amend his pleading to rephrase his answers, it should not do so).

In response, Defendant contends that the Court should not find that his answers to the SAC constitute a "judicial admission," but even if they were admissions, they do not go as far as Plaintiffs request. ECF No. [523] at 3. He makes three points. First, the mere statement that a document "speaks for itself" is not a judicial admission because it is not an express concession of a fact, it is not clear and unequivocal, nor does it act as a "deliberate voluntary waiver" that expressly concedes for trial purposes the truth of the alleged fact. *Id.* at 4 (citations omitted). Second, even if the statement is a judicial admission, Plaintiffs misconstrue the import of that statement. Specifically, rather than admitting that the document is authentic, its contents are true, or that Plaintiffs' interpretation of the "plain meaning" of the document controls, all that the statement "admits" in the context of Defendant's pleading is that the "words appear in the document that [P]laintiffs rely on" in the SAC. *Id.* at 7. Finally, were the Court inclined to consider any remedy, it should be to permit Defendant to amend his answer given that he will otherwise suffer "great prejudice" and be "effectively prohibit[ed] [] from testifying about emails and documents that [P]laintiffs maintain were drafted and sent" by him. *Id.*

Upon review, the Court does not agree with Plaintiffs that Defendant's statement that a document "speaks for itself" constitutes a judicial admission that binds Defendant to the authenticity, veracity, and supposed plain meaning of each document. The pleading's statement invokes none of these qualities other than generally noting that the allegation at issue is based on an email or document that "speaks for itself" but for which Defendant "denies any erroneous,

incomplete, or out-of-context characterization of it, and any inaccurate inferences or conclusions derived from it." Although Defendant did not expressly deny the referenced allegation in the SAC in and of itself, the very first sentence of the Amended Answer explicitly stated that Defendant "denies each and every allegation" in the SAC "[e]xcept to the extent expressly admitted here." ECF No. [87] at 1. Further, Defendant's pleading stated that he "does not admit the accuracy, validity, admissibility, or appropriateness of any of the [e]xhibits to the" SAC. *Id.*

Plaintiffs do not cite any binding authorities holding that an answer that a document "speaks for itself" is a judicial admission much less one that admits that the document is authentic, accurate, and subject to the meaning reflected on document's face. In fact, the only in-circuit authority Plaintiffs cite, while decrying the use of this phrase, nonetheless permitted leave to amend while commenting that the statement that a "document speaks for itself" "did not really admit anything." *F.D.I.C. v. Stovall*, No. 2:14-CV-00029-WCO, 2014 WL 8251465, at *12 (N.D. Ga. Oct. 2, 2014). Moreover, the Court does not agree that this response functions as a judicial admission. *See Lawrence v. United States*, No. 8:11-CV-2735-T-17, 2012 WL 9491751, at *2 (M.D. Fla. Oct. 3, 2012) (accepting "as sufficient" the response that a document "speaks for itself" but noting that "going forward" such a response "may not suffice"); *Pushko v. Klebener*, No. 3:05-CV-211-J-25HTS, 2008 WL 10505502, at *2 (M.D. Fla. Mar. 31, 2008) ("If Defendants did admit or deny the exhibit, the question arises: What are they admitting or denying? One could reasonably conclude that such short and plan averments are simply directed to whether the exhibits are in fact attached as alleged in the complaint; another could reasonably conclude that the averments were directed to the authenticity of the documents; and yet another could reasonably conclude that Defendants were admitting or denying the substance of the exhibits. Defendants' response that 'the exhibit speaks for itself' seems a reasonable response to Plaintiffs' allegations that such

exhibits are attached. At most, the Court will interpret Defendants' failure to use Rule 8's language

as an admission that the exhibits are, in fact, attached to the Complaint as Plaintiffs allege.");

*Agrelo v. Meloni Law Firm*, No. 14-21192-CIV, 2017 WL 10636451, at *1 (S.D. Fla. Sept. 22,

2017) (refusing to deem as admitted response that stated that document "speaks for itself" and

which also denied allegations, but requiring amendment "to clarify the ambiguity" raised);

*Westgate Fin. Corp. v. Cotswold Indus., Inc.*, No. 1:09-CV-2627-WSD, 2009 WL 10211922, at

*5 (N.D. Ga. Dec. 31, 2009) (denying motion to strike portions of answer where the responses

contained the phrase "the document speaks for itself" along with admissions and denials of

allegations).[10]

A judicial admission "is a statement by a party or its counsel that removes a factual issue

from dispute in a litigation and binds both parties on trial and appeal. To be binding, a judicial

---

[10] Plaintiffs' non-circuit authorities involving responses that a "document speaks for itself" are distinguishable. For instance, in *Charleston v. Salon Secrets Day Spa, Inc.*, No. CIV.A. 08-5889, 2009 WL 1795529, at *1 (E.D. Pa. June 24, 2009), the defendant expressly conceded that when it stated the "document speaks for itself," "this is equivalent to an admission," and the court granted leave to amend. In *In re Cotter*, No. 08-12504 NLW, 2011 WL 5900811, at *8 (Bankr. D.N.J. Oct. 24, 2011), the court deemed admitted the defendant's responses as to the information in the documents rather than striking the answer because the debtor did not allege any prejudice or harm from the responses that the "document speaks for itself" and defendant explained that its response was "merely attempting to respond to Debtor's legal conclusions that were masquerading as factual assertions in the Complaint." And in *Graham Eng'g Corp. v. Adair*, No. 1:16-CV-2521, 2018 WL 1907063, at *2 (M.D. Pa. Apr. 23, 2018), which relied on *Charleston* and *In re Cotter*, the court found defendant's responses "unduly burden[ed]" plaintiff with the "task of speculating as to which specific document [defendant] refers and what allegation he denies" because none of the complaint's allegations "explicitly or implicitly refer to documents, rendering [defendant's] responses ambiguous." Finally, in *Kurz-Kasch, Inc. v. Holtzberg*, No. CIV. 05-519 (GEB), 2006 WL 561918, at *3 (D.N.J. Mar. 7, 2006), the defendants "admitted to execution of the promissory note in stating that the promissory note speaks for itself" where one defendant "conceded that he signed the note, received the money, and acknowledged that he is liable for repayment" in action for default on a promissory note. Here, by contrast, Defendant does not concede that his responses were equivalent to an admission, the responses are tied to specific documents, and he explicitly denied "any erroneous, incomplete, or out-of-context characterization of [the document], and any inaccurate inferences or conclusions derived from it." Thus, to the extent Defendant admitted anything, it was not as to the documents' authenticity, interpretation, or correctness.

admission must be 'unequivocal' and 'unambiguous.' Judicial admissions 'must be statements of fact that require evidentiary proof, not statements of legal theories.'" *Starbuck v. R.J. Reynolds Tobacco Co.*, 349 F. Supp. 3d 1223, 1233 (M.D. Fla. 2018) (internal citations omitted); *Reynolds v. Roberts*, 202 F.3d 1303, 1318 n.24 (11th Cir. 2000) (noting that judicial admissions must be "deliberate, clear, and unequivocal") (citation omitted). Indeed, "'judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.' 'A statement must be 'deliberate, clear, and unambiguous' to be considered a judicial admission. In order to satisfy these elements, the statement in context must amount to an express concession of a fact. 'Because of their binding consequences, judicial admissions generally arise only from deliberate voluntary waivers that expressly concede an alleged fact.'" *In re Kattouah*, 452 B.R. 604, 608 (E.D. Mich. 2011) (internal citations omitted; ellipses omitted) (finding no abuse of discretion in rejecting argument that debtor's response was a binding judicial admission where debtor's response was "inartfully drafted" but not "deliberate, clear, or unambiguous" regarding property's value).

Here, there is no deliberate, clear, and unambiguous admission by Defendant that the emails and other documents referenced in the SAC are accurate, authentic, or otherwise subject to Plaintiffs' interpretation. Instead, the response admitted only that the words reflected in the exhibit appear in the document at issue. *See Pushko*, 2008 WL 10505502, at *2. The Amended Answer does not operate so broadly under the present circumstances to "admit" as unchallenged the documents' validity, meaning, and accuracy.

In any event, "[e]ven if a statement is an admission, the trial court has 'broad discretion to relieve parties from the consequences of judicial admissions in appropriate cases.'" *In re Kattouah*, 452 B.R. at 608 (noting that inadvertence, mistake, and internal contradictions are grounds for

relief from an admission). The Court agrees with Defendant that deeming his statements as binding admissions, as Plaintiffs seek, is unduly harsh. This is all the more so as Plaintiffs deposed Defendant "on multiple occasions as to the authorship and contents of certain documents that 'speak for themselves,'" and if Defendant had "judicially admitted the authenticity of those documents and the veracity of the statements contained within them, then there would have been no need" to ask him questions about the documents. ECF No. [523] at 5-6. *See Best Canvas Prod. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983) ("[F]acts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them."). Plaintiffs' Motion as to issue #2 is denied.

### iii.     *Motion in limine issue #3*

Plaintiffs request the Court preclude Defendant from "selectively claiming his computers were hacked or his documents were forged." ECF No. [497] at 12. They maintain that while Defendant has produced a large volume of documents in discovery, Defendant asserts that certain documents are "'hacked,' 'forged,' or otherwise inauthentic." *Id.* at 13. According to Plaintiffs, they face a trial by ambush because they do not know "which of the hundreds of thousands of documents Dr. Wright has produced . . . will suddenly and without warning, [be] disavow[ed] as the result of hacking, forgery[.]" *Id.* at 14. Plaintiffs request either (i) the Court preclude Defendant from claiming that his computers were hacked or that his signatures were forged, or alternatively, (ii) compel Defendant to disclose "at least 30 days before trial, all documents he has produced that he claims are the result of hacking, are forged, or are otherwise inauthentic, with a detailed and sworn explanation for who, how, when, and why this hacking occurred." *Id.* at 17. *See also* ECF No. [558] at 9 (arguing that "basic fairness" demands that either Defendant be precluded from

testifying that he was hacked or that he be compelled to identify the allegedly hacked evidence in advance of trial).

Defendant responds that Plaintiffs' Motion does not cite cases "support[ing] their extraordinary request," and that there is "ample evidence" supporting his testimony that he was hacked. ECF No. [523] at 8. In particular, (i) "private and privileged communications that appear to be between [D]efendant and his Australian counsel were obtained by a 'hacker' and posted online;" (ii) there are "many documents" pre-dating the lawsuit discussing a hack of Defendant's computers, *see* ECF Nos. [523-1] and [523-2]; (iii) a forensic document examiner opined that certain documents contain a forged version of Defendant's signature; and (iv) testimony from Jimmy Nguyen that Defendant informed him that he had been hacked by "former disgruntled employees, staff" and that hacking was an issue in his case with the ATO, ECF No. [523-3]. According to Defendant, Plaintiffs have known for "at least a year" that Defendant had been hacked, and the jury is positioned to give whatever weight it wants to Defendant's evidence regarding hacking. ECF No. [523] at 9.

The Court does not find the relief requested in Plaintiffs' Motion as to issue #3 to be warranted. It is up to the jury to evaluate the plausibility of Defendant's hacking claims, to assess the extent of evidence in support of it, and to weigh such evidence (whether it be Defendant's sole testimony or corroborating evidence) against the rest of the evidence presented. In this regard, the Court notes that Defendant has produced evidence from individuals, including Ira Kleiman, discussing potential hacking of Defendant's computers. *See* ECF No. [523-1] (email from Ira Kleiman to Defendant stating that "[t]here is a reporter going around town talking to everyone Dave [Kleiman] knows. He says an anonymous source (disgruntled employee of yours or hacker) provided him with documents between you and Dave [Kleiman]."); ECF No. [523-2] (email from

Patrick Paige to Kimon Andreou about Mr. Kleiman's alleged involvement in Bitcoin and noting that "[w]e've been sitting on this since last year after Dave [Kleiman's] death . . . Didn't have enough proof until someone hacked [Defendant's] email"). Therefore, Plaintiffs are incorrect to state that Defendant's hacking claims have no foundation.

Additionally, the Court rejects the assertion that Plaintiffs are subject to a trial by ambush or allowing Defendant's alleged "'hacking' and forgery gambits to proceed is a threat to the integrity of the [judicial] system." ECF No. [497] at 17. As Defendant rightly points out, Plaintiffs have probed Defendant's claims of hacking during discovery, including Defendant's and Mr. Nguyen's depositions, ECF Nos. [497-11]; [523-3], and the defense is not newly-asserted. Should Defendant wish to proceed with such a defense, he carries the same risk that all litigants face in a jury trial of needing to put forth a convincing, coherent, and credible claim. Against this backdrop, the adversarial system exists to expose weak defenses, shaky theories, and less-than-credible assertions. Plaintiffs provide no basis to demonstrate that they are prejudiced and unable to prepare for any evidence put forth concerning alleged hacking or forgery. Plaintiffs' Motion as to issue #3 is denied.

### iv.    Motion in limine issue #4

Plaintiffs represent that Defendant produced nearly 2000 pages of documents after his deposition and the expert discovery cutoff. They now seek an Order either (i) precluding Defendant from using those materials at trial; or (ii) requiring Defendant "to sit for an additional deposition so Plaintiffs may explore the newly disclosed information, after which Plaintiffs should be entitled to update their expert disclosures if necessary." ECF No. [497] at 17. In particular, the Court's scheduling order, ECF No. [441], set April 10, 2020 as the deadline for the parties to disclose expert witness summaries or reports, April 17, 2020 as the deadline to exchange rebuttal expert

reports or summaries, and May 1, 2020 as the cutoff for all fact and expert discovery. Plaintiffs maintain that Defendant was deposed in mid-March 2020, but three of his document productions occurred on March 25, 2020, April 6, 2020, and April 24, 2020. ECF No. [497] at 18. According to Plaintiffs, they have identified "significant red flags" with some of the materials produced, and they assert that due to the "late production," they are unable to use written or oral discovery to probe the documents' content and reliability. *Id.* at 18-19; ECF No. [558] at 11-12.

Defendant responds that the Court should not preclude Defendant's use of "timely" disclosed documents. ECF No. [523] at 12. He contends that Plaintiffs "fail to cite to any law or caselaw that would support" the requested remedies. *Id.* He argues that Plaintiffs overlook the nearly two million documents he produced prior to May 1, 2020, and Plaintiffs themselves produced "critical documents" up to two hours and twenty-one minutes before the close of discovery, *id.* (citing ECF No. [523-8]), and produced over sixty thousand pages of documents after their depositions. *Id.* According to Defendant, the existence of the supposedly belated files was "no secret" because he informed Plaintiffs at his deposition that he had recently gained access to the files, he was asked questions about the files at the deposition, but Plaintiffs did not follow up after about the records or demand an immediate production. *Id.* at 13.

The Court finds Plaintiffs' Motion as to issue #4 to be unavailing. Contrary to Plaintiffs' representation, the materials Defendant produced were not untimely. They were all produced before May 1, 2020, and as Judge Reinhart stated during the January 2, 2020 discovery hearing, Plaintiffs "have asked for a lot in this case" and have been "given a lot[.]" ECF No. [497-17]. Although Plaintiffs now challenge that they have been "handcuffed" by Defendant's rolling production, they did not seek to compel production of the documents following Defendant's March 2020 deposition, despite inquiring about the materials nor did they file a motion with the Court

demanding an immediate production at any time prior to the close of discovery. Likewise, even though Plaintiffs point out that, from their perspective, they have identified "red flags"[11] with the materials (which suggests that they are not so prejudiced in their ability to use the documents at trial or in their trial preparation), exclusion of the evidence or requiring *another* deposition of Defendant is not warranted. Indeed, as Defendant points out, Plaintiffs have not cited any authority supporting their requests. The record reveals that both parties exchanged voluminous amounts of materials after depositions and even right up to the discovery cutoff deadline. Plaintiffs' Motion as to issue #4, accordingly, is denied.

### v.      *Motion in limine issue #5*

Plaintiffs next seek to preclude Defendant from putting forth any evidence or testimony that Mr. Kleiman committed suicide. ECF No. [497] at 21. According to them, Defendant has made "unsolicited, unsubstantiated, and provably wrong" statements that Mr. Kleiman committed suicide as a "purposeful attempt to malign Dave[] [Kleiman's] memory[.]" *Id.* at 20. They maintain that this statement is both irrelevant to the issues in this case and is "directly contrary" to the autopsy report that listed Mr. Kleiman's cause of death as coronary artery disease and his manner of death as "natural." *Id.* (citing ECF No. [497-19]). *See also* ECF No. [558] at 5 (arguing that Defendant is a "lay witness and incompetent to testify about the cause of [Mr. Kleiman's] death," his testimony is irrelevant because the circumstances of Mr. Kleiman's death are not at issue, and any relevance would be substantially outweighed by prejudice).

---

[11] Plaintiffs cite no authority supporting their contention that Defendant's alleged failure to address their "red flag" concerns in his response to Plaintiffs' Motion somehow means that he has admitted that "much of this evidence was, in fact, fabricated by [Defendant], or his wife[.]" ECF No. [558] at 11. Plaintiffs dedicate two sentences to the "red flags" they identified, ECF No. [497] at 18, and their threadbare descriptions that an unidentified document "appears to be unsupported by MYOB's export function" or contains metadata reflecting a different law firm does not justify the conclusion that any document is fabricated let alone by specific individuals.

Defendant responds that evidence surrounding Mr. Kleiman's release from the VA hospital in March 2013 demonstrates that Mr. Kleiman intended to commit suicide by discontinuing his medical treatments. ECF No. [523] at 14. He adds that in the month leading up to Mr. Kleiman's death, Mr. Kleiman "did nothing to distribute the fortune [P]laintiffs claim[] they are entitled to, nor to inform anyone, including his brother Ira [Kleiman] . . . of the keys necessary to access his bitcoin wallet." *Id.* In his view, Mr. Kleiman's failure to transfer those keys "or in any way preserve his assets" is "inconsistent with the state of mind of someone who allegedly obtained and owned hundreds of millions of dollars' worth of bitcoin." *Id.* Accordingly, Defendant asserts that evidence related to Mr. Kleiman's supposed suicide is relevant to whether Mr. Kleiman was a co-inventor of Bitcoin and whether he had a "treasure trove" of bitcoin intended for his estate. *Id.*

Upon review, the Court agrees with Plaintiffs as to issue #5. While Mr. Kleiman's abilities to mine bitcoin and develop intellectual property up until his death are relevant matters, the cause of his death is irrelevant. Indeed, whether Mr. Kleiman died of natural causes (as demonstrated by medical records) or by his own actions (as theorized by Defendant) has no bearing on his alleged pre-death business relationship and dealings with Defendant. It is undisputed that Mr. Kleiman passed away. His purported desire to end his life, even if true, does not weaken the veracity of Plaintiffs' claims. Moreover, while Defendant posits that Mr. Kleiman "surely . . . would have known that without passing on those keys, which only he could have known about, his supposed fortune would have been lost forever at his death," ECF No. [523] at 14, none of this speculation on Defendant's part makes any material issue in this case any more or less probable. Accordingly, Plaintiffs' Motion on this point is granted.

Case No. 18-cv-80176-BLOOM/Reinhart

> ### vi.  Motion in limine issue #6

Plaintiffs request an order precluding Defendant from presenting evidence or testimony regarding Mr. Kleiman's drug use and social habits. ECF No. [497] at 21. In their view, evidence about Mr. Kleiman's alleged drug use, visits to strip clubs, and his dating life are irrelevant and, even if relevant, substantially outweighed by the danger of unfair prejudice. *Id. See also* ECF No. [558] at 5 (arguing that even if Mr. Kleiman had drugs in his system when he died, there is "no evidence that it impacted, in any way, the question of whether he and [Defendant] had a joint business relationship").

Defendant responds that Plaintiffs' "attempt to whitewash Dave Kleiman's character and sanitize his actions" will "distort the truth." ECF No. [523] at 1-2. He maintains that Mr. Kleiman's "habits" are at issue, and he should have the right to present evidence related to Mr. Kleiman's "significant financial distress towards the end of his life," his history of being a spendthrift, substance abuse issues, and even domestic violence episodes. *Id.* at 15. He adds that evidence of Mr. Kleiman's drug use and social habits is "highly probative as to whether [Mr. Kleiman] was in fact a co-developer of bitcoin," and bears directly on Plaintiffs' own portrayal of Mr. Kleiman. *Id.* at 16.

The Court agrees in part with Plaintiffs. Although Mr. Kleiman's ability to mine bitcoin and develop intellectual property when he was hospitalized and released is relevant (including potential impacts caused by medications or drugs), the Court fails to see how Mr. Kleiman's "habit" of visiting adult clubs has any relevance to this dispute. *Hall v. Mayor Aldermen of City of Savannah, Ga.*, No. 403CV248, 2005 WL 8156263, at *3 (S.D. Ga. Oct. 3, 2005) (excluding evidence that defendant work off-duty hours at a strip club as "too irrelevant and prejudicial" in sexual harassment lawsuit). It clearly carries overt prejudicial overtones with no discernible

probative force. The Court, separately, does not agree with Plaintiffs that all evidence of Defendant's "social habits," including his dating life, are irrelevant and unduly prejudicial. Certain aspects of Mr. Kleiman's "dating life" are relevant, such as potential discussions he may have had with his girlfriend about his alleged work with Defendant or his alleged involvement with creating Bitcoin. Those items have a tendency to make the claims or defenses in this case more or less probable. However, Mr. Kleiman's supposed domestic violence episodes are irrelevant to any material issue in this case and are unduly prejudicial, especially as they reportedly involve throwing hot oil and a sharp knife at Mr. Kleiman's girlfriend. Accordingly, Plaintiff's Motion as to issue #6 is granted in part and denied in part.

### vii.    *Motion in limine issue #7*

Plaintiffs seek to exclude testimony or references to alleged abuse and traumatic events Defendant suffered during his childhood. ECF No. [497] at 21. Plaintiffs contend that these matters are irrelevant and are highly prejudicial. In their view, matters related to Defendant's childhood have no relevance to matters involving Defendant's actions as an adult, and they have "potential to influence the jury to make decisions based on sympathy rather than on the pertinent facts germane to the issues of this case." *Id.* at 21-22. *See also* ECF No. [558] at 6 (arguing that Defendant's alleged childhood trauma has no bearing on his alleged Autism Spectrum Disorder diagnosis).

Defendant responds that his character has been put at issue, and he intends to offer evidence of his childhood trauma to "place his character in context and explain his conduct, both before and during this litigation, including his disappearance as Satoshi Nakamato in 2010, which was brought on by [D]efendant's discovery that his creation – bitcoin – had been used to facilitate abuse similar to what he had suffered as a child." ECF No. [523] at 17. According to Defendant, this evidence

is "highly probative and is not substantially outweighed by the potential prejudice to [P]laintiffs[.]" *Id.*

Upon consideration, the Court agrees with Plaintiffs that Defendant's alleged childhood trauma is irrelevant to issues in dispute in this case. Indeed, his childhood trauma is "absolutely not" even a contributing cause to his autism diagnosis, which itself is offered to place Defendant's trial testimony and evidence into a proper context for a jury. *See* ECF No. [497-22]. As an initial matter, none of the SAC's underlying allegations took part during Defendant's childhood, concern issues relating to childhood abuse, nor implicate either general or specific instances of abuse Defendant may have endured. Nor do any of Plaintiffs' claims regarding Defendant's relationship with Mr. Kleiman become lessened in any way by events that happened at some point during Defendant's childhood. In this respect, Defendant offers at most a highly attenuated connection between his childhood traumas and his alleged adult-era disappearance as Satoshi Nakamoto in 2010 because he "discovered" that Bitcoin "facilitate[d] abuse similar to what he suffered as a child." ECF No. [523] at 17. Even accepting the latter's premise that Bitcoin somehow enabled abuse by others, Defendant's personal experiences with childhood trauma are of no consequence to resolving material disputes in this case. Accordingly, Plaintiffs' Motion as to issue #7 is granted.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion, **ECF No. [490]**, is **GRANTED IN PART AND DENIED IN PART** and Plaintiffs' Motion, **ECF No. [497]**, is **GRANTED IN PART AND DENIED IN PART** as set forth above.

Case No. 18-cv-80176-BLOOM/Reinhart

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 17, 2020.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record