## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC

    plaintiffs,

v.                                             **Case No. 9:18-cv-80176 (BB/BR)**

CRAIG WRIGHT,

    defendant.

_____/

## DR. CRAIG WRIGHT'S MOTION TO SUPPLEMENT
## THE COURT'S CIVIL JUROR QUESTIONNAIRE

Dr. Craig Wright moves for an order supplementing the Court's Juror Questionnaire in Civil Cases[1] with two additional questions set forth on the proposed questionnaire attached as Exhibit "B."[2] In support of this motion, Dr. Wright states as follows:

### INTRODUCTION

Dr. Wright seeks to supplement the Court's existing juror questionnaire with two additional questions. The proposed questions concern sensitive subject matter and will provide the Court and counsel with essential information about prospective jurors' ability to serve. In addition to attaching the proposed, supplemented questionnaire to this Motion as Exhibit B, on January 12, 2021, undersigned counsel conferred with plaintiffs' counsel, requesting their position on the use of the supplemental questions but plaintiffs' counsel does not agree to the relief requested here.

---

[1] A copy of the Court's questionnaire is attached as Exhibit "A." U.S. District Judge Beth Bloom, Juror Questionnaire in Civil Cases, https://www.flsd.uscourts.gov/sites/flsd/files/Judge-Bloom-Civil-Jury-Questionnairerev.-7.20.pdf.

[2] Exhibit B contains 14 questions. Questions 1 through 12 are from the Court's Juror Questionnaire in Civil Cases. Dr. Wright's proposed questions are Questions 13 and 14 of Exhibit B.

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 47(a) provides courts with broad discretion in conducting jury selection. *E.g., Morrissey v. B.G. Danis Co., Inc.*, 1985 WL 13810, at *1 (6th Cir. 1985). "The court may permit the parties or their attorneys to examine prospective jurors or may itself do so. If the court examines the jurors, it must permit the parties or their attorneys to make any further inquiry it considers proper, or must itself ask any of their additional questions it considers proper." Fed. R. Civ. P. 47(a). "When the trial judge conducts the voir dire, it must be conducted so competently, completely, and thoroughly that the prospective jurors' histories and personal prejudices are revealed." *Lips v. City of Hollywood*, 350 Fed. Appx. 328, 338 (11th Cir. 2009).

The right to trial by jury embodies the "right to present [one's] case to neutral and detached observers capable of rendering a fair and impartial verdict." *Ham v. South Carolina*, 409 U.S. 524, 532 (1973) (Marshall, J., concurring and dissenting in part); *Kiernan v. Van Schaik*, 347 F.2d 775, 778 (3d Cir. 1965) ("The right to an impartial jury in the federal courts in civil and criminal cases is guaranteed by the Constitution. . . . Amendment VII preserves 'the right of trial by jury' in civil cases, and although the impartiality of the jury is not expressly mentioned it is inherent in the right of trial by jury and is implicit in the requirement of the Fifth Amendment . . . .").

The right to an impartial jury includes the concomitant right to take reasonable steps to ensure that the jury is impartial. *Ham.* The jury challenge is important to ensuring impartiality, however, "the right to challenge has little meaning if it is unaccompanied by the right to ask relevant questions on voir dire upon which the challenge for cause can be predicated." *Id.* (citation omitted); *accord McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984) ("*Voir dire* examination serves to protect [the right to an impartial trier of fact] by exposing possible biases, both known and unknown, on the part of potential jurors").

In short, voir dire should elicit sufficient information to permit a party to "intelligently exercise both his for-cause and peremptory challenges." *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1036 (11th Cir. 2005) (citation omitted). Meaningful voir dire examination uncovers possible prejudice and bias of any juror so that a fair and impartial jury may be impaneled. *See United States v. Ledee*, 549 F.2d 990, 993 (5th Cir. 1977).

Jurors often are unaware of their own prejudices and preconceptions, which they do not acknowledge when asked general questions on voir dire, including whether there are any reasons they cannot be fair and impartial. *See United States v. Dennis,* 339 U.S. 162, 183 (1950) (Frankfurter, J., dissenting) ("[O]ne cannot have confident knowledge of influences that may play and prey unconsciously upon judgment."); *United States v. Dellinger,* 472 F.2d 340, 367 (7th Cir. 1972) ("We do not believe that a prospective juror is so alert to his own prejudices" as to reveal prejudice in response to a general question. Thus, it is essential to explore the backgrounds and attitudes of the jurors to some extent in order to discover actual bias, or cause."). The Eleventh Circuit has recognized that general inquiries often fail to reveal jurors' unconscious or unacknowledged bias. *United States v. Shavers*, 615 F.2d 266, 268 (5th Cir. 1980) (district court's voir dire questions were "too broad," and such questions "might not reveal latent prejudice").

Written questionnaires are an effective and efficient tool for eliciting bias. In this case, reasons to use a supplemental written questionnaire include:

- Written questionnaires are more private and encourage honesty, particularly about sensitive issues involving bias and prejudice that are critical in this case;
- Written questionnaires reduce the influence of "evaluation anxiety," which causes potential jurors to temper their voir dire answers because they know they are being evaluated by a federal judge and a courtroom full of lawyers;

- Written responses are not influenced by answers given by other members of the venire;
- Written responses containing prejudicial information from one potential juror will not taint the entire jury pool as an oral response might;
- Written responses are not influenced by the characteristics or qualities of the interviewer;
- Written questionnaires provide more information, in less time, about each potential juror than can be elicited through live questioning;
- Written questionnaires streamline the jury selection process by allowing the court and counsel to focus more quickly in voir dire on areas of genuine concern.

*See* Deborah L. Forman, *What Difference Does It Make? Gender and Jury Selection*, 2 UCLA WOMEN'S L.J. 35, 73 (1992) (citing to an empirical study, which found that "[t]he more jurors reported being anxious and tense, the more dishonest they said they were in their answers"); *accord* Lin S. Lilley, *Let Jurors Speak the Truth, in Writing*, 41-JUL TRIAL 64 (2005); American Bar Association Principles for Juries and Jury Trials, SL044 ALI-ABA 653 (2005), Principle 7 Subsection A.5[3], Principle 11 Subsection A.1 (suggesting use, in appropriate cases, of a "specialized questionnaire addressing particular issues that may arise"); Valerie P. Hans & Alayna Jehle, *Avoid Bald Men and People with Green Socks? Other Ways to Improve the Voir Dire Process in Jury Selection*, 78 CHI.-KENT L. REV. 1179 (2003).

---

[3] "Questionnaires permit jurors to reveal sensitive and personal information in their written responses, rather than publicly. Such techniques serve to alleviate some of the discomfort that prospective jurors would otherwise feel." American Bar Association Principles for Juries and Jury Trials, SL044 ALI-ABA 653, 699 (2005) (citation omitted).

## ARGUMENT

### I. Dr. Wright's Proposed Question Regarding Disability Will Allow Jurors to Confidentially Address Sensitive Issues in Private, Facilitating Honest and Candid Answers

The Court and counsel have the delicate task of eliciting sufficient information about venire members' opinions and experiences to determine whether those opinions or experiences will interfere with their impartiality, while also ensuring that individual prospective jurors' opinions or biases do not affect or influence other prospective jurors. Asking questions about sensitive topics in open court runs the risk of tainting the entire jury pool and selection process. *See United States v. Tegzes*, 715 F.2d 505 (11th Cir. 1983) (assessing whether a prospective juror's remark about seeing her son overdose as a teenager tainted the jury panel in a drug prosecution).

On the other hand, presenting the issue as a written question will permit venire members to privately disclose intimate, sensitive facts and opinions about themselves, their families and friends, without fear of disclosing this private information to a large group of strangers.[4] Further, answering written questions in private will obviate the risk of venire members feeling any pressure to go along with the answers of other venire members, which is an inherent risk of raising these sensitive topics in open court. Prospective jurors must be able to disclose sensitive information freely, without shame or fear, so the Court can determine whether they hold biases that could interfere with their duty to render a fair and impartial verdict, or otherwise prevent them from serving on the jury. *See Lowery v. City of Albuquerque*, 2012 WL 1372273, at *5 (D.N.M. 2012).

---

[4] To illustrate, the proposed additional questions include a question regarding prospective jurors' experiences with developmental disabilities such as Autism or Asperger's Syndrome. These are inherently private and sensitive subjects for most people. It is important to address this issue with prospective jurors because "[u]nfortunately, misperceptions regarding individuals with autism often result in questions about their credibility as witnesses." Carolyn Gammicchia and Catriona Johnson, *Autism Information for Advocates, Attorneys, and Judges*, Living with Autism, https://www.autism-society.org/wp-content/uploads/2014/04/Advocates_Attorneys_and_Judges.pdf.

The proposed question number 13 (set forth on Ex. B) has been crafted to confidentially reveal relevant aspects of potential jurors' histories and prejudices in order to protect the right to an impartial jury.

## II.     Pretrial Publicity in This Case Supports a Supplemental Written Question

The trial of a case that has attracted extensive pretrial media coverage, as has this one, requires a "careful and searching voir dire examination." *United States v. Lentz*, 352 F. Supp. 2d 718, 722 (E.D. Va. 2005) (citation and quotation omitted); *ABC, Inc. v. Stewart*, 360 F.3d 90, 94 (2d Cir. 2004) (noting the district court's use of a two-part voir-dire process that included the use of a lengthy juror questionnaire, in a case that had attracted a high level of media attention); *United States v. Bieganowski*, 313 F.3d 264, 273 (5th Cir. 2002) (The "adequacy of voir dire frequently arise[s] in situations where the trial is surrounded by significant publicity."); *United States v. Bobbitt*, 2000 WL 102925, at *4 (4th Cir. 2000) (affirming trial court decision to ask "the entire venire a series of questions regarding pretrial publicity.").

In addition to Bitcoin's abiding mystery and mystique to the general public (the citizens who comprise the venire), plaintiffs' claims in this case involve the otherwise mythological question of Satoshi Nakamoto's identity. This question has provoked and continues to provoke debate (and animus toward Dr. Wright). As Justice Sotomayor has observed, "the more intense the public's antipathy toward a defendant, the more careful a court must be to prevent that sentiment from tainting the jury." *Skilling v. United States*, 561 U.S. 358, 427 (2010) (Sotomayor, J., concurring and dissenting in part). The proposed supplemental question will root out such antipathy without prejudicing other members of the venire or tainting it altogether.

## CONCLUSION

For the foregoing good and sufficient reasons, Dr. Wright respectfully requests that the Court grant this motion to supplement the Court's civil juror questionnaire.

## S.D. FLA. L.R. 7.1 CERTIFICATION

In accordance with S.D. Fla. L.R. 7.1(a)(3), counsel for Dr. Wright has conferred with plaintiffs' counsel. Plaintiffs have objected to the relief requested here.

Respectfully submitted,

RIVERO MESTRE LLP
*Attorneys for Dr. Craig Wright*
2525 Ponce de Leon Boulevard, Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: amcgovern@riveromestre.com
Email: arolnick@riveromestre.com
Email: zmarkoe@riveromestre.com
Email: ndagley@riveromestre.com
Secondary: receptionist@riveromestre.com

By: s/ Andres Rivero
ANDRES RIVERO
Florida Bar No. 613819
AMANDA MCGOVERN
Florida Bar No. 964263
ALAN H. ROLNICK
Florida Bar No. 715085
NEHA S. DAGLEY
Florida Bar No. 831751

## CERTIFICATE OF SERVICE

I certify that on January 13, 2021, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record either by transmission of Notices of Electronic Filing generated by CM/ECF or by U.S. Mail.

/s/ Andres Rivero
ANDRES RIVERO