```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF FLORIDA
 2                  WEST PALM BEACH DIVISION
                  CASE NO. 9:18-cv-80176-BB
 3

 4   IRA KLEIMAN, as the personal representative
     of the Estate of David Kleiman, and W&K Info
 5   Defense Research, LLC

 6          Plaintiffs,                  May 11, 2021
                                         1:48 p.m.
 7          vs.

 8   CRAIG WRIGHT,

 9          Defendant.                  Pages 1 THROUGH 22

10   _____

11                 TRANSCRIPT OF STATUS CONFERENCE
12                    VIA THE ZOOM PLATFORM
                 BEFORE THE HONORABLE BETH BLOOM
13                  UNITED STATES DISTRICT JUDGE

14
     Appearances:
15
     FOR THE PLAINTIFF:  ROCHE FREEDMAN, LLP
16                       DEVIN FREEDMAN, ESQ.
                         200 South Biscayne, Suite 5500
17                       Miami, Florida 33131

18
                         ROCHE FREEDMAN, LLP
19                       KYLE W. ROCHE, ESQ.
                         99 Park Avenue, Suite 1910
20                       New York, NY 10016

21
                         BOIES SCHILLER & FLEXNER
22                       MAXWELL V. PRITT, ESQ.
                         44 Montgomery Street, 41st Floor
23                       San Francisco, California 94104

24

25
```

```
1    APPEARANCES CONTINUED:

2    FOR THE DEFENDANT:     RIVERO MESTRE, LLP
                            ANDRES RIVERO, ESQ.
3                           AMANDA M. MCGOVERN, ESQ.
                            2525 Ponce de Leon Boulevard, Suite 1000
4                           Coral Gables, Florida 33134

5
     COURT REPORTER:        Yvette Hernandez
6                           U.S. District Court
                            400 North Miami Avenue, Room 10-2
7                           Miami, Florida 33128
                            yvette_hernandez@flsd.uscourts.gov
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1         (Call to order of the Court, 1:48 p.m.)

2         THE COURT:  All right.  Good afternoon to everyone.

3    I'm not certain who we are waiting for.

4         MR. FREEDMAN:  Good afternoon, Your Honor.  (Audio

5    distortion.)

6         THE COURT:  I'm getting a little bit of an echo.  I

7    want to make sure -- Yvette, are you getting the echo as well?

8         Okay.  All right.  I think someone may have a second

9    device, perhaps, that is on.  Let me make sure that we've muted

10   all the participants that are not counsel of record.

11        (Pause in proceedings.)

12        THE COURT:  All right.  Let's try this again.

13        Good afternoon to everyone.  Let's go ahead and call

14   the case and we'll have appearances.

15        COURTROOM DEPUTY:  Calling Civil Case Number 18-80176,

16   Kleiman v. Wright.

17        Counsel, please state your appearances for the record,

18   starting with Plaintiffs' counsel.

19        MR. FREEDMAN:  Good afternoon, Your Honor.  Vel

20   Freedman on behalf of Plaintiffs.

21        MR. ROCHE:  Good afternoon, Your Honor.  Kyle Roche on

22   behalf of Plaintiffs.

23        THE COURT:  Good afternoon.

24        MR. PRITT:  Good afternoon, Your Honor.  Maxwell

25   Pritt, Boies Schiller Flexner, on behalf of Plaintiffs.
```

```
 1              THE COURT:  Good afternoon.

 2              MR. RIVERO:  Judge, I believe the Plaintiffs have

 3    introduced themselves.  For Dr. Wright, Andres Rivero.

 4              THE COURT:  All right.  Good afternoon to you as well.

 5              MS. MCGOVERN:  Your Honor, I'd also like to introduce

 6    myself for the record.  My name is Amanda McGovern.  I'm also

 7    making an appearance today on behalf of Dr. Wright.

 8              THE COURT:  All right.  Good afternoon to you as well.

 9              The purpose of this afternoon's proceeding is there

10    was a request for a status conference, so the Court did

11    schedule this following the Court's entry of its order on the

12    parties' joint motion to reset the trial date, reset the

13    calendar call, and extend the due date for demonstrative and

14    summary exhibits.

15              Let me first state for the record that we are

16    proceeding with this status conference by Zoom, a

17    videoconferencing platform.  I know we are all well-aware of

18    that platform at this point.  I am the only individual in the

19    courtroom, along with the court security officer, and we have

20    scheduled this by Zoom.

21              As well, we have placed on the docket notice to appear

22    so this is an open proceeding and the courtroom is also open.

23    But I do not see any individuals that have entered the

24    courthouse.  The courthouse certainly is open, although we are

25    limiting individuals.
```

1        The Court did schedule this case for trial at the

2   request of the parties to extend the trial period.  And it is

3   now scheduled, specially set, for November 1st, at 9:00 a.m.  I

4   feel confident that given the time that has passed, the Chief

5   Judge's latest administrative order continuing jury trials

6   until July 6th, and the fact that the Southern District has

7   embarked on a pilot trial in a civil case, that we can proceed

8   as scheduled with this case in November.

9        Given that, there should be no reason why the parties

10  cannot adhere to the schedules that are set forth in the

11  Court's order.  And if there are issues that need to be

12  addressed, we can certainly address them.  I know last time we

13  discussed issues relating to travel bans of witnesses and we

14  certainly discussed the issue of mediation.  I'm not certain if

15  there are still issues with regard to the witnesses for the

16  November 1st date.  But let me hear from the parties and then

17  we'll address the issues.

18        MR. FREEDMAN:  Your Honor, from the Plaintiffs'

19  perspective, the personal representative resides in Florida, so

20  there's no travel issues.

21        MS. MCGOVERN:  Your Honor, this is Amanda McGovern.

22  With respect to Dr. Wright, he resides in the UK and presently

23  there is a travel ban with respect to his ability to travel.

24  We are hopeful that there will be no issue for the trial on

25  November 1st.  We're simply raising it so that we will let the

1    Court know and the parties know that we're monitoring it.  If

2    anything comes up closer to trial, we'll let you know.  But

3    that's the only concern, is that he actually would not be able

4    to come into the United States.

5         THE COURT:  All right.  Well, as we get closer --

6    obviously, we do have a calendar call that's scheduled.

7    Although, given that there are -- at least one individual, the

8    Defendant, but there -- I would suspect that there are some

9    witnesses that may be coming from out of the district,

10   certainly out of the country.  I do want to give you sufficient

11   time to make arrangements for those individuals to appear.

12        Have the parties discussed, in the event that there

13   are some issues related to travel, including a travel ban, that

14   may still be in place, whether there would be an agreement to

15   have some of the witnesses appear by videoconference?

16        MS. MCGOVERN:  Your Honor, we did have a meet and

17   confer yesterday for the purpose of trying to actually identify

18   whatever issues might be helpful to the Court today.

19        We've talked in the past about the travel ban with

20   respect to Dr. Wright.  He expresses his, you know, desire to

21   be present for the trial.  So that would be very problematic

22   for us.  But we have not -- did not include that in our

23   discussion yesterday with the Plaintiffs.

24        THE COURT:  And putting aside the parties to this

25   case, with regard to some of the witnesses, do you anticipate

1    that there may be issues with some of the witnesses'

2    availability to be here in person in the Southern District?

3             MS. MCGOVERN:  The only other issue -- the only other

4    witness that it could potentially affect, Your Honor, is Ramona

5    Watts, who is also a witness, who -- but it is unclear whether

6    that would be a complete prohibition to proceeding.  Again, it

7    would only be to the extent that there would be a travel ban.

8    Ramona Watts is Dr. Wright's wife and she also resides in the

9    UK.

10            THE COURT:  All right.  Mr. Freedman, do you

11   anticipate there being issues with regard to the Plaintiffs'

12   witnesses?

13            MR. FREEDMAN:  No, Your Honor.

14            THE COURT:  All right.  Well, perhaps you can advise

15   the Court.  What issues did you discuss yesterday in your meet

16   and confer that we can address today?

17            MS. MCGOVERN:  Certainly, Your Honor.  We discussed

18   the fact that the parties have a combined list -- or it's not a

19   joint list.  But the Plaintiffs have 708 exhibits on the

20   Plaintiffs' exhibit list, which was submitted on the March 16th

21   deadline, and the Defendants have 363 exhibits presently on

22   their list that was also submitted at that time.  And we did

23   discuss the following, Your Honor, which we would like to

24   present to you for your thoughts and guidance on it.

25            And that is, what is the best way for us to present

1    what is a fairly substantial amount of exhibits in the case

2    right now -- and of course, the parties have objected to, you

3    know, almost all of them.  And so there's a procedure that we

4    thought might be helpful, which I can present now.  And it was

5    discussed with the Plaintiffs, and I think I do so -- and of

6    course, I know Mr. Freedman and Mr. Roche will tell me if I

7    have misstated it in any way.  I don't mean to do that.

8           We'd like to work together to try to streamline the

9    exhibits more and also try to address amongst ourselves our

10   respective objections to those exhibits to see whether we can

11   narrow it, and then submit exhibit lists that do so at a date

12   that would be consistent with sort of the time frame that the

13   Court had envisioned when the trial was set for June 1st, and

14   the -- and the exhibit lists were due on March 16th, which is a

15   little bit -- two months and some before the trial.  We're

16   thinking that perhaps at the same time as the demonstrative

17   exhibits are due, where the Court in the last order extended

18   that deadline at our request, we would submit the respective

19   exhibit lists at that time, with the concerted effort to try to

20   minimize objections, streamline the documents.

21          And then also we were wondering if perhaps it would be

22   a good idea for us to set aside a period, a day, or half a day,

23   or whatever time the Court would have under the circumstances

24   to try to address the parties' objections in advance to make

25   the trial, I don't know, less -- you know, more efficient, less

1    interruption, if that's possible.  The goal, of course, trying

2    to make it more efficient for the Court, for the parties, and

3    the jury.

4              THE COURT:  Mr. Freedman, are you in agreement with

5    what Ms. McGovern has stated?

6              MR. FREEDMAN:  Yes, Your Honor.

7              THE COURT:  All right.  Then I would -- well, first,

8    let me ask the question.  Of the 1,071 exhibits, is there any

9    overlap?  Are there some joint exhibits within --

10             MS. MCGOVERN:  There are.  There are.  We've noticed,

11   Your Honor, that, in fact, there are some documents that are on

12   both the parties' lists, and it's not a perfect situation.

13   There are objections to documents that are on both the parties'

14   lists.  So you know, I'm not quite sure how that happened.

15   It's not a lot, but it's a little bit of a cleanup.  And, you

16   know, not casting any aspersions to anybody on the call right

17   now, just simply letting the Court know.

18             But that really wasn't the reason for this request.

19   It was really more looking at the Court's order and figuring

20   out, okay, what is the best way to get so many documents before

21   the Court.  I know the Court has asked us to submit copies of

22   the exhibits, in fact, multiple copies of the exhibits, for

23   purposes of going over them.  And so it's just a lot.  And our

24   thought was maybe we take another effort at streamlining, and

25   then ask the Court what is the best method for you and, you

1    know, the members of the court for having them, addressing

2    them; how would you like to receive them; is it better in

3    paper; is it better in a Dropbox.  I mean, we'd like to work in

4    any way we can to make this easier and more efficient.

5         THE COURT:  Certainly.

6         Well, first and foremost, I would suggest that all of

7    the exhibits be electronically filed.

8         Second, I would suggest that if there are joint

9    exhibits, that the parties confer and file a joint exhibit list

10   that has, for example:  "Joint Exhibit 1."  And those would be

11   the exhibits that both parties have agreed with regard to the

12   relevance and the authenticity and there is no issue that those

13   exhibits are admissible at the time of trial.

14        Putting aside the joint exhibits, I would then take

15   those out of the 708 exhibits for the Plaintiff and the 363

16   exhibits for the Defendant, and whatever is left I would file

17   separate Plaintiffs' exhibit list and the Defendant's exhibit

18   list.  And from those two lists, the parties can certainly

19   advise the Court of the objections that they have.  And that's

20   obviously consistent with our local rule as to what objection

21   is to be made with regard to each of the exhibits.

22        And then, if appropriate, the Court will certainly

23   rule on those objections well before the calendar call.

24   Oftentimes, with regard to relevance, hearsay, it's very hard

25   for the Court to know how that exhibit is going to be

1    introduced, who it's going to be introduced through, and the

2    context and the foundation.  So oftentimes it is not an issue

3    that can be addressed before the trial and before the exhibit

4    is sought to be introduced.  So I would suggest that you

5    organize the exhibits in that fashion and then file the

6    exhibits accordingly, file them electronically.

7            I would suggest with our jury that we do the same.

8    And that is that you be prepared to publish each of the

9    exhibits electronically through -- certainly, we have a

10   significant amount of equipment here in the courtroom.  You are

11   free to, as we get closer to the trial -- although we're here

12   and my courtroom deputy is here as well.  If you wanted to make

13   arrangements to come into the courtroom, see the equipment that

14   we have, we can certainly give you access to someone from our

15   IT department and allow you to bring in someone from your IT

16   department so that you can understand what equipment we have,

17   make sure that it's adaptable to the equipment that you have,

18   and any extension cords or other electronic equipment that

19   you're going to need, that you make those arrangements because

20   you do need permission to bring them into the courtroom.  So

21   then I would file that motion to bring those electronic devices

22   into the courtroom.

23           As well, any non-attorney also needs permission to

24   bring any electronic device, including a phone.  So I would

25   make those arrangements ahead of time as well.

```
 1              But back to the exhibits, we've discussed the
 2      publishing of the exhibits.  I recognize that there may be some
 3      exhibits that are unique, and perhaps you want that exhibit to
 4      be shown to the jury, but I think we also need to take into
 5      consideration that -- and I'm looking here at my jury box --
 6      that we are going to be separating the jurors to at least three
 7      feet.  So they are going to be placed in probably every other,
 8      if not, two seats between them.  And to that extent, we have
 9      screens.  And I would suggest that it may be easier to just see
10      how the jury is going to be viewing those exhibits once they're
11      introduced and you seek to publish them.  But I think that that
12      is the easiest way, as opposed to handing exhibits to the
13      jurors.
14              So unless you tell me otherwise, and unless there's a
15      unique exhibit -- obviously, this does not include the
16      demonstrative exhibits -- but unless you tell me otherwise, I
17      think that that would be the suggestion that I would make.
18              MS. MCGOVERN:  Thank you, Your Honor.
19              THE COURT:  So what other issues do we need to discuss
20      today?
21              MR. FREEDMAN:  On that one issue, Your Honor, is the
22      Court amenable to extending the deadline to submit those new
23      exhibits to around the same time as the demonstrative exhibits
24      are due?
25              THE COURT:  Did you discuss that yesterday?
```

```
 1            MS. MCGOVERN:  Yes.

 2            MR. FREEDMAN:  We did.

 3            THE COURT:  That the parties would be seeking an

 4    extension?

 5            MR. FREEDMAN:  Yeah.  I think technically, Your Honor,

 6    the exhibits are already on file with you.  But like

 7    Ms. McGovern said, there are issues that need to be resolved.

 8    So we were looking to have an opportunity to kind of refine

 9    that for you.

10            THE COURT:  All right.  Then I would suggest that now

11    that you're going to be listing the joint exhibits separately

12    after another meet and confer, that perhaps the Court extend

13    the date for the exhibits, both the Plaintiffs' exhibits, the

14    Defendant's exhibits, and the joint exhibits, to the same date

15    as the demonstrative summary exhibits of August 31st.

16            Is that acceptable to both attorneys?

17            MS. MCGOVERN:  That is acceptable, Your Honor, with

18    one caveat.  We did agree yesterday that this is not a -- for

19    lack of a better phrase, do-over.  We've already put in a lot

20    of work on this in a three-day meet and confer.  So this is not

21    a sort of "do it all over again."  It's just to make this

22    streamlined, fix any snafus, and make it more efficient for

23    everybody, and of course follow the Court's procedures you've

24    just outlined.

25            THE COURT:  Well, thank you for saying what I was
```

1    thinking, Ms. McGovern.  This is not a do-over.  There's a

2    thousand and 71 exhibits, from what you've advised, and that's

3    the world.  So we'll work on those exhibits on the meet and

4    confer.

5              MS. MCGOVERN:  Thank you, Your Honor.

6              MR. FREEDMAN:  Your Honor, I do think both parties did

7    speak about adding a few exhibits on both sides.  Ms. McGovern,

8    is that wrong or --

9              MS. MCGOVERN:  Yes, we did.  Yes.  We don't have a

10   problem with that.  We just wanted to make it clear that this

11   isn't a complete rehash.

12             MR. FREEDMAN:  A hundred percent it's not a complete

13   rehash.  But as -- obviously, as we've continued preparation,

14   other exhibits have -- we've noticed other exhibits, and there

15   are multiple versions of the same exhibit.  So a hundred

16   percent it's a cleanup.  But I just didn't -- I just wanted to

17   address the Court's statement before that the universe is a

18   thousand 71 exhibits.  It may shrink.  It may get a little

19   bigger, but it's certainly not a do-over.

20             THE COURT:  So back to the trial date and issues with

21   regard to witnesses.  While I understand that it is somewhat up

22   in the air with regard to out-of-district witnesses, have each

23   of you spoken to your respective witnesses with regard to the

24   special set date of November 1st?  And is there an issue with

25   this date, first and foremost, with regard to any critical or

```
 1    essential witness?

 2              MR. FREEDMAN:  From the Plaintiffs' perspective, Your

 3    Honor, from the -- the Plaintiff himself is available.  We have

 4    not reached out to every other witness, but we certainly can do

 5    so.

 6              MS. MCGOVERN:  Your Honor, we have reached out to the

 7    witnesses that we've placed under subpoena for trial.  And thus

 8    far, we have received no objection to the new November 1st

 9    trial date.

10              THE COURT:  All right.  And at the last setting, we

11    did discuss the disparity between the estimated trial time.

12    The Plaintiff is estimating 15 days.  The Defendant is

13    estimating 27 days.  I am devoting three weeks for the trial.

14    And to the extent that there's a longer period of time, then

15    we'll adjust accordingly.  We will need to take into

16    consideration that there is at least one holiday that will run

17    up during that time.  And I just want to make sure that -- from

18    the Court's standpoint that I'm devoting those three weeks.

19    That would take us right before the Thanksgiving holiday.  But

20    I recognize that there will be individuals that anticipate

21    traveling, and I think it is incumbent upon the attorneys to

22    confirm with your witnesses that they are available, so that we

23    are not addressing at the calendar call rescheduling a

24    three-week block of time.

25              And I say that most respectfully because this is a
```

1    civil case.  The civil cases right now in the district will not

2    be taking priority once we get started with our criminal cases.

3    So to the extent that the Court is going to be taking that

4    period of time to try this case, I want to ensure that the

5    parties understand that the Court is making a commitment and as

6    well you and your witnesses need to make the corresponding

7    commitment.

8            MS. MCGOVERN:  Thank you, Your Honor.

9            MR. FREEDMAN:  Understood.

10            THE COURT:  And Ms. McGovern, have you discussed the

11    possibility of a second mediation or have you --

12            MS. MCGOVERN:  Your Honor, we have, we believe, done

13    everything we can to try to resolve this case.  And we'd like

14    to thank Judge Scott in those efforts.  But to be perfectly

15    candid, I think we have exhausted those efforts.

16            MR. FREEDMAN:  I agree, Your Honor.

17            THE COURT:  Mr. Freedman, you are in agreement, sir?

18            MR. FREEDMAN:  I am, Your Honor.

19            THE COURT:  All right.  At the calendar call, I think

20    we can certainly discuss the number of witnesses.  We'll be in

21    a better -- excuse me -- the number of jurors.  We'll be in a

22    better position to know how many jurors are going to be called

23    in.  I say that because right now, given the numbers and where

24    we are with regard to the pandemic, we certainly are limiting

25    the number of jurors that come into the courthouse.  So I think

1    I'll have a better indication for each of you and we'll know

2    certainly what we can anticipate in terms of bringing in panels

3    to select the jury.

4           But do you have any questions that I can answer about

5    the trial on November 1st?

6           MR. FREEDMAN:  Not for the Plaintiff, Your Honor.

7           MR. RIVERO:  Judge, I do have a question, Your Honor.

8    How will the Court approach -- how many venire people will be

9    in the court at one time?  I'm assuming that we'll conduct jury

10   selection in person.  Is the -- I assume the Court's going to

11   limit the number of people at one time and then bring

12   additional groups in.  I'm just trying to get an idea of how

13   this will work.

14          THE COURT:  That's correct, Mr. Rivero.  Ordinarily, I

15   would bring in 44 jurors.  But I don't anticipate that we will

16   be able to accommodate that many jurors in the gallery.

17   Normally, I'd place them in the gallery, but we certainly

18   cannot fit eight individuals on each of the benches.  So we'll

19   need to adjust accordingly where we are in terms of the CDC

20   guidelines and where we are in terms of jurors that have been

21   vaccinated.

22          It's something that I did want to speak with you --

23   but I think at this point it's a little too premature with

24   regard to the requirement or whether the jurors are going to

25   require that all of the attorneys and the witnesses are

```
1    vaccinated or whether that's going to be an issue down the

2    road.  I think that's something that we can address once we get

3    closer to the trial.

4              MR. RIVERO:  Judge -- and I assume, just to -- I

5    assume that we'll have to play it by ear in terms of -- I know

6    the Court would ordinarily ask one question that would cover

7    the entire venire, and we'll just have to deal with this, I

8    assume, as we go, and you'll let us know how to do it.

9              THE COURT:  Well, as you know, the Court does use a

10   questionnaire, and I did advise the parties that I would

11   discuss the Court's oral process in terms of asking questions.

12   I believe that as we get closer, if there are specific

13   questions that you want the Court to ask the jurors, I

14   certainly will.  This is a unique case.  So I would anticipate

15   that there will be some questions that you want the Court to

16   ask.

17             And then, of course, if I haven't stated it

18   previously, I am of the philosophy that I do allow the

19   attorneys an opportunity to question the jurors as well.

20             MR. RIVERO:  Thank you, Judge.

21             THE COURT:  Are there -- I wish I could give you more

22   answers in terms of the jury process, but it's a different

23   world now.  But we will -- as Mr. Rivero stated, and as I

24   stated, we're going to limit the number of jurors that will

25   come in.
```

1          I must say that Judge Ungaro is conducting a trial now

2     and it is going very well.  She was able to pick a jury in less

3     than a day.  So I anticipate that we'll have -- any issues with

4     regard to bringing jurors in, bringing them into the jury room,

5     bringing them into the elevator in terms of having a system.

6     Each of the jurors has a bag of -- you know, of a face mask,

7     sanitizing wipes.  So we've made many arrangements to prepare

8     us to bring in jurors.  I think we'll be in a better position

9     come September at the calendar call.

10         So are there any other questions that I can answer?

11         MR. FREEDMAN:  Not for the Plaintiffs.

12         MS. MCGOVERN:  None for the Defendant, Your Honor.

13         THE COURT:  All right, then.  The one thing that I do

14    want to make sure -- and I don't think -- yes.  I do not have

15    that.  And I think that that would be helpful -- is your

16    witness list.  If you can give the Court -- since the Court is

17    going to be reading the list of witnesses that will be

18    testifying, if you can just give me a little bit of their

19    background, you know, what their position is with a particular

20    company, where they live, so that I can advise -- for

21    example -- I'm just looking at the witness list now and I just

22    want to make sure that -- like, for example, Robert Radvanovsky

23    resides in Chicago, Illinois.  He's a cybersecurity researcher.

24    If you can just give me a little bit more information, for

25    example, what company he works for.  Because if I ask the

1  jurors if they have any familiarity with that individual, it

2  may be through a relationship with a particular company.

3          So if you can give me a little bit more information.

4  And when you file your exhibit lists, if you will do that for

5  each of your witnesses, I would appreciate that.  Just

6  anticipate that the jury's going to need to understand who that

7  witness is.

8          MR. FREEDMAN:  Absolutely.

9          MS. MCGOVERN:  Yes.  Absolutely.

10          THE COURT:  Well, if there is nothing further ...

11          MR. FREEDMAN:  Nothing further from Plaintiffs, Your

12  Honor.  Thank you for your help and navigation through these

13  interesting times.

14          THE COURT:  Of course.

15          Ms. McGovern?

16          MS. MCGOVERN:  Thank you very much, Your Honor.  Very

17  helpful.

18          THE COURT:  All right.  Then everyone take good care.

19  I have given you the deadline with regard to the joint exhibit

20  list and the Plaintiff and the Defendant's exhibit list.

21          I would also suggest that you take the opportunity to

22  look at the courtroom, if you have not been in this courtroom,

23  so that you can make those arrangements on your end with your

24  IT folks, and we certainly have someone to assist you.

25          And my courtroom deputy, Liz Gariazzo, can certainly

1    be contacted and make those arrangements for you.

2              MR. FREEDMAN:  Thank you, Your Honor.

3              MS. MCGOVERN:  Thank you, Your Honor.

4              THE COURT:  All right.  Everyone take good care.

5              MR. RIVERO:  All right, Judge.

6              THE COURT:  Thank you.

7          (Proceedings concluded at 2:14 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    UNITED STATES OF AMERICA      )

2    ss:

3    SOUTHERN DISTRICT OF FLORIDA  )

4                    C E R T I F I C A T E

5           I, Yvette Hernandez, Certified Shorthand Reporter in

6    and for the United States District Court for the Southern

7    District of Florida, do hereby certify that I was present at

8    and reported in machine shorthand the proceedings had the 11th

9    day of May, 2021, in the above-mentioned court; and that the

10   foregoing transcript is a true, correct, and complete

11   transcript of my stenographic notes.  Please note:  This

12   hearing occurred during the COVID-19 pandemic and is therefore

13   subject to the technological limitations of reporting remotely.

14          I further certify that this transcript contains pages

15   1 - 22.

16          IN WITNESS WHEREOF, I have hereunto set my hand at

17   Miami, Florida this 17th day of May, 2021.

18

19                    /s/Yvette Hernandez
                      _____
20                    Yvette Hernandez, CSR, RPR, CLR, CRR
                      400 North Miami Avenue, 10-2
                      Miami, Florida 33128
21                    (305) 523-5698
                      yvette_hernandez@flsd.uscourts.gov
22

23

24

25