```
 1                 IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF FLORIDA
 2                     WEST PALM BEACH DIVISION
                     CASE NO. 9:18-cv-80176-BB
 3

 4    IRA KLEIMAN, as the personal representative
      of the Estate of David Kleiman, and W&K Info
 5    Defense Research, LLC

 6            Plaintiffs,                 August 27, 2021
                                         11:00 a.m.
 7        vs.

 8    CRAIG WRIGHT,

 9            Defendant.                  Pages 1 THROUGH 41

10    _____

11                TRANSCRIPT OF STATUS CONFERENCE
12                   VIA THE ZOOM PLATFORM
                 BEFORE THE HONORABLE BETH BLOOM
13                UNITED STATES DISTRICT JUDGE

14
      Appearances:
15
      FOR THE PLAINTIFF:  ROCHE FREEDMAN, LLP
16                        DEVIN FREEDMAN, ESQ.
                          200 South Biscayne, Suite 5500
17                        Miami, Florida 33131

18
                          BOIES SCHILLER & FLEXNER
19                        ANDREW BRENNER, ESQ.
                          100 Southeast 2nd Street, Suite 2800
20                        Miami, Florida33131

21
                          BOIES SCHILLER & FLEXNER
22                        MAXWELL V. PRITT, ESQ.
                          44 Montgomery Street, 41st Floor
23                        San Francisco, California 94104

24

25
```

```
1    APPEARANCES CONTINUED:

2    FOR THE DEFENDANT:     RIVERO MESTRE, LLP
                            ANDRES RIVERO, ESQ.
3                           AMANDA M. MCGOVERN, ESQ.
                            ZAHARAH R. MARKOE, ESQ.
4                           2525 Ponce de Leon Boulevard, Suite 1000
                            Coral Gables, Florida 33134
5

6    COURT REPORTER:        Yvette Hernandez
                            U.S. District Court
7                           400 North Miami Avenue, Room 10-2
                            Miami, Florida 33128
8                           yvette_hernandez@flsd.uscourts.gov

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1          (Call to order of the Court, 11:00 a.m.)

 2              THE COURT:  Hi.  Good morning.  Good morning to

 3    everyone.

 4              Let's go ahead and call the case and we can get

 5    started.

 6              COURTROOM DEPUTY:  Calling Civil Case Number 18-80176,

 7    Ira Kleiman v. Craig Wright.

 8              Counsel, please state your appearances, starting with

 9    Plaintiffs' counsel.

10              MR. FREEDMAN:  Good morning, Your Honor.  Vel

11    Freedman, with Roche Cyrulnik, for the Plaintiffs.

12              MR. BRENNER:  Good morning, Your Honor.  Andrew

13    Brenner, from Boies Schiller, on behalf of the Plaintiffs.

14              MR. PRITT:  Also, Maxwell Pritt from Boies Schiller on

15    behalf of the Plaintiffs.  Good morning.

16              THE COURT:  Good morning.

17              MS. MCGOVERN:  Good morning, Your Honor.  Amanda

18    McGovern for the Defendant, from Rivero Mestre.

19              MR. RIVERO:  Good morning, Judge.  Andres Rivero for

20    Craig Wright.

21              MS. MARKOE:  Good morning, Your Honor.  Zaharah Markoe

22    on behalf of Dr. Wright as well.

23              THE COURT:  All right.  Good morning to each of you.

24              I know that we have several observers.  The purpose of

25    this morning's proceeding is to get us all ready for trial.
```

```
1            I have our jury administrator, Liz Chapas, who has

2    joined us.  And I do want to reconfirm that this trial is

3    currently special set to begin on Monday, November 1st, until

4    Tuesday, November 23rd.

5            On Monday, we will be 10 weeks before the jury

6    selection.  And as such, Liz Chapas, on behalf of the jury

7    pool, will be sending out a letter for those potential jurors,

8    advising them of this civil case that is specially set and the

9    length of the civil trial.

10           I want to, first and foremost, ensure that we are all

11   in agreement that we will begin on November 1st of this year.

12   Is that correct?

13           MR. BRENNER:  From the Plaintiffs, yes.

14           THE COURT:  I would suggest that since we are going to

15   be together until at least November 23rd, that we begin each

16   morning at 10:00 a.m.  That will allow the Court to schedule

17   other cases during that period of time.  And we would proceed

18   until 5:00 p.m. or at the appropriate time, depending upon a

19   given witness.  Is that acceptable to both sides?

20           MR. BRENNER:  Yes, Your Honor.

21           MR. RIVERO:  Yes, Judge.

22           THE COURT:  You may have specific questions with

23   regard to the prospective panel, and that's why I've asked Liz

24   Chapas to join us.  So first, on behalf of the Plaintiff, and

25   then the Defendant, are there any specific questions that you
```

```
 1    may have?

 2            MR. BRENNER:  What -- go ahead.

 3            MR. RIVERO:  Your Honor?

 4            I'm sorry.  Go ahead.

 5            MR. BRENNER:  No.  I was just going to ask Your Honor:

 6    What should we expect to get prior to seeing the panel, if

 7    anything, by way of the Court's general questionnaire?  Would

 8    we get that before the day of jury selection or we get that on

 9    the day of jury selection?

10            THE COURT:  All right.  So that would be a question

11    for me.  In terms of actually drawing this random group of

12    individuals for jury service, are there any questions that you

13    have specifically for the jury administrator?

14            MR. RIVERO:  I do, Your Honor.  Is the jury pool going

15    to include both persons who are vaccinated and unvaccinated or

16    is the Court making restrictions that would affect the pool?

17            MS. CHAPAS:  They will be both vaccinated and

18    unvaccinated.  We will not have that information.

19            MR. RIVERO:  Thank you.

20            MR. FREEDMAN:  Does the Court know whether -- or the

21    jury coordinator know whether the jurors will be required to

22    wear a mask at this point?  I know it's predicting out to

23    November, but ...

24            MS. CHAPAS:  Yes.  Everybody entering the courthouse

25    at this time is mandated to wear a mask.
```

```
1              THE COURT:  Are there any additional questions?

2              Yes, Mr. Rivero -- and this would be for the jury

3    administrator.  And I can certainly ask specific questions with

4    regard to once the jurors are brought into the courtroom for

5    selection.

6              MR. RIVERO:  And Judge, I appreciate it because I

7    guess we're all on sort of new territory.  Is there enough

8    experience at this point -- I know that the Court has had a

9    trial -- I'm not sure how many jury trials.  Will there be any

10   issue -- is there any issue anticipated in getting an adequate

11   number of persons to appear for service?

12             MS. CHAPAS:  We have not had an issue with bringing in

13   jurors.

14             MR. RIVERO:  Thank you.

15             THE COURT:  And in terms of specifics, we intend to

16   bring in 80 qualified jurors into the jury pool, with the

17   intention that we would begin jury selection on day one with 40

18   individuals.  And if we needed the second group of individuals,

19   we would bring them in on Tuesday and we would begin selection

20   with regard to the other 40 individuals.

21             All right.  Liz, I want to thank you for your time.

22   And I think I can answer all the questions in terms of the

23   jurors coming into the courtroom.  But I did want to allow you

24   an opportunity to ask any questions to the jury administrator,

25   since obviously this is a special set trial.  We will be
```

1      together for a long period of time with the jurors.  So we

2      would certainly want to ensure that if you had any questions

3      regarding their safety or our protocol, that Liz Chapas is here

4      to answer those questions.

5            MR. RIVERO:  And Judge, I just want to thank

6      Ms. Chapas for being present to give us that information.

7            Thank you.

8            MR. FREEDMAN:  Your Honor, I'm not sure if this is a

9      question for you or Ms. Chapas.  But is the Court increasing

10     the number of alternates in the event -- just because of the

11     pandemic, in the event somebody becomes ill or ...

12           THE COURT:  Yes.  And we're going to discuss that.  My

13     thought is given the length of time that we're together, is I

14     would anticipate that we would select 12, which would give us

15     six alternates during that period of time.  Would that be

16     acceptable?

17           MR. BRENNER:  Your Honor, will only six deliberate or

18     will everyone left at the end deliberate?

19           THE COURT:  We may anticipate -- and I certainly

20     anticipate that not all 12 will be with us, and I think the

21     remainder should all go back given the amount of time that

22     they've spent on this case.  There's no reason in this civil

23     case not to allow those jurors who, even though they may have

24     been chosen as alternates -- unless there is some objection to

25     be made, why all of them cannot go back to deliberate.  Would

```
 1    there be an agreement with regard to that?
 2            MR. BRENNER:  Your Honor, can I just ask one follow-up
 3    question on that?
 4            THE COURT:  Certainly.
 5            MR. BRENNER:  Which is that, if that's the route we
 6    go, effectively, they're all jurors.  There really is no
 7    difference in status between a regular juror and an alternate
 8    juror.  Would you anticipate there being a strike process that
 9    treats them all the same or a panel strike and an alternate
10    strike process?
11            THE COURT:  And that's something that I did want to
12    speak with each of you in terms of the number of peremptories
13    and the agreement that we can have moving forward.  But if we
14    agree that we will select 12, with the understanding that we
15    hope to have six or more -- and I think that they should be
16    treated the same.  And that's why we have, at least at this
17    point, made arrangements so that we can qualify 80 in order to
18    bring in those jurors for jury selection.  I would expect that
19    each side would be entitled to three peremptories, unless you
20    tell me otherwise.
21            All right.  So let us begin a discussion with regard
22    to the jury trial.  Certainly, we are in the midst of a
23    pandemic and there are certain safety precautions that we will
24    need to take and safety precautions that have already taken
25    place in the courthouse and in the courtroom.
```

1          I do want to let you know that we will have an air

2     purifier in the courtroom throughout the proceedings.  We have

3     enhanced filters in our air filtration system.  All individuals

4     will be required to wear masks at all times.  We do have

5     Plexiglas dividers.  And I know that some of you have taken the

6     opportunity to come into the courtroom, not only to look at the

7     equipment and to test the equipment.  I would invite you, once

8     again, to come into the courtroom so that you have an

9     understanding of how the courtroom is set up.  We will have

10    additional Plexiglas placed between the jurors.  Social

11    distancing will be required at all times.

12         And with regard to the jury deliberating, we've made

13    arrangements and the jury deliberation will occur in a large

14    conference room that we have that is adjoined to the chambers.

15    Certainly, everyone will be walled off, so the jury has their

16    privacy, but it is a much larger room than the jury room.  And

17    I'm happy to show you that room.  But our concern is obviously

18    maintaining social distancing, but giving each of the jurors an

19    opportunity certainly to deliberate together.

20         With regard to any breaks, the jurors will be required

21    to leave the courtroom through the jury room, but the court

22    security officer will ensure that they maintain social

23    distancing, that their breaks are taken where they are within

24    the vestibule.  Some of them will be in the jury room.  They

25    certainly are able to go outside for lunch and other breaks.

1       So our breaks may be extended.

2           We do have restrooms right across the hall for the

3   attorneys and the litigants, and we have made extra precautions

4   with regard to the bathroom itself and in terms of bringing the

5   jurors inside and outside of the courtroom.

6           With regard to individuals coming into the courthouse,

7   we do have temperature scans.  The information with regard to

8   jurors' vaccination status, that will be asked in the jury

9   pool.  So you will have on the jury questionnaire -- and I

10  think I told you at our status conference on May 11th that I do

11  use a standard questionnaire and I do have a philosophy that

12  you are entitled to your own voir dire with the witness.  But

13  if there are specific questions that you want the Court to ask,

14  then I am happy to incorporate that in my initial questioning

15  to the jurors.

16          With regard to the vaccination status, are the

17  attorneys of the mindset that you want to know the jurors'

18  vaccination status, even though they will be masked at all

19  times and maintaining social distancing?

20          On behalf of the -- and if I can just have the record

21  clear.  On behalf of the Plaintiff, do you want to know the

22  jurors' vaccination status?

23          MR. BRENNER:  We would defer to the Court on that,

24  Your Honor.  We don't have a preference.

25          THE COURT:  On behalf of the Defendant?

1        MR. RIVERO:  Your Honor, I suppose that the -- I would

2   have a question -- I don't know if the Court's had jury trials

3   already or the -- not just you, Your Honor, but all the judges.

4   And I assume there hasn't been any issue with contagion from

5   the procedures that are being followed, no one's -- there

6   hasn't been any outbreak.

7        THE COURT:  We have not had that issue.

8        Now, this would be the first trial that I'm aware of

9   that would last over the course of almost four weeks, four

10  trial weeks.  So that's why I want to ensure that any security

11  and safety precautions that are required, that we take those

12  precautions and we discuss them at length before we begin to

13  bring the jurors in.

14       MR. RIVERO:  Judge, I'm thinking about this -- I think

15  it's an important question.  And I'm just thinking about this

16  out loud.  I haven't had a chance to consult with my

17  colleagues.  But I do think that there is an argument for

18  knowing, Your Honor.  Many employers -- we haven't taken the

19  step.  But many employers have imposed vaccination

20  requirements.  I'm not suggesting that the Court should do

21  that.  But to know might be important information for the

22  parties and the Court.

23       So I guess what I would say is I would want to have a

24  little more time to think about it, Judge, but there may be

25  considerations.  And I think at the end of the day we're going

1    to do this the way -- I think the Court's obviously showing a

2    lot of concern about keeping everybody healthy.  So in that

3    sense, I'm sure at the end, we'll --

4         THE COURT:  Well, certainly we can have the jurors'

5    vaccination status to the extent that they are willing to

6    provide that information on the juror questionnaire.  It can

7    either be a "V" that they are vaccinated, "U," unvaccinated.

8    Unvaccinated could be that perhaps they don't care to respond

9    to the question, so we'll deem them unvaccinated.

10        But I did also want to ask with regard to the

11   attorneys and the litigants, and as far as the witnesses,

12   whether you want to know ahead of time and what safety

13   precautions you are suggesting that we take.

14        MR. FREEDMAN:  Your Honor, you know, I didn't know --

15   I don't know about the rest of my colleagues.  I didn't know

16   you were going to ask these questions today, and obviously some

17   of them are important.  It might make sense if we could have a

18   couple days to discuss amongst our teams and amongst each

19   other, and then get back to the Court either through a filing

20   or another status conference.  I don't want to take up more of

21   your time.

22        THE COURT:  All right.  So Mr. Rivero, is that how you

23   feel on behalf of the Defendant?

24        MR. RIVERO:  Judge, listen, I do -- I actually agree

25   with Mr. Freedman.  We're not trying to be overcautious, Judge.

1    But I think everybody's trying to stay safe, and we do have an

2    issue in Florida.  So I think I would agree with Mr. Freedman.

3    If we could have a couple days and not just discuss within our

4    team, but also with the Plaintiffs' team, and then, you know,

5    see if we have any suggestions to the Court about how we think

6    it should be done.

7         THE COURT:  All right.  That would be extremely

8    important moving forward with regard to what your particular

9    comfort, and perhaps discomfort, may be, and how we can best

10   protect everyone moving forward.

11        I do want to advise that in the Southern District we

12   do not have the ability to rapid test or provide PCR testing to

13   any individual.  The Court staff -- we are vaccinated.  But

14   once again, we will be masked and we will maintain the social

15   distancing.

16        Perhaps -- I think, at this point, the reason why I

17   scheduled the status conference is I do know that we will need

18   to send out these letters to the jurors and begin to assemble

19   jurors that are willing to serve during this period of November

20   1st through at least the 23rd.  We'll see where we are as we

21   get closer.  But I did want to ensure that everyone certainly

22   is available, your respective witnesses are available.  I know

23   on May 11th we discussed the issue of Dr. Wright and Ms. Watts,

24   who are out of the country, and at that time there was a travel

25   ban.  I'm not certain if there are issues that need to be

1   brought to the Court's attention with regard to the

2   availability of witnesses.

3          On behalf of the Plaintiff?

4          MR. BRENNER:  None that we're -- we were planning

5   on the -- we've been planning on the November 1st day.  And

6   we've checked with our witnesses as recently as a week ago.

7   We're all systems go.

8          THE COURT:  Okay.  On behalf of the Defendant?

9          MS. MCGOVERN:  Your Honor, this is Amanda McGovern.  I

10  can't see everybody on the screen, so I apologize if I'm

11  stating the obvious.

12         Yes, we did want to raise this.  Of course, we're

13  cautious about raising it because we do not want to suggest any

14  postponement or any change.  And obviously this status

15  conference is extremely appreciated with all this information.

16  But we have been trying since April to get Dr. Wright to the

17  United States for preparation and obviously for trial.  We

18  haven't been able to do it.

19         Counsel in the UK and counsel in the United States

20  have made full-court-press efforts with the US Embassy in

21  London.  It has been denied twice.  Border Patrol in Miami and

22  US -- and the embassy in London has also denied it because the

23  exception is so narrow.  The National Interest Exception is the

24  only way to get the waiver coming in from the UK, and it's been

25  denied.

1          The NIE is required for both Dr. Wright, as well as

2     Ramona Watts, who is on our witness list.  And we have just

3     been advised because of the Afghanistan crisis it is completely

4     bottlenecked.  All efforts are being geared in London towards

5     those efforts to get people out of Afghanistan.  So we're

6     concerned that -- the bottom line is we are concerned.

7          We're still working on it and we're working directly

8     with counsel on it.  And we do not raise this for purposes of

9     suggesting that we now need to talk about another trial date.

10    At the same time, however, it is completely outside of our

11    control.  And for purposes of preparing, it's been extremely

12    difficult because we haven't been able to secure Dr. Wright

13    entry into the United States.

14          Of course, I say that without a solution because we

15    don't have one right now.  All I can tell you is -- give you a

16    status of our efforts.

17          We also have -- we wanted to advise the Court -- if we

18    weren't going to have this status conference, we were going to

19    advise the Court of this situation in any event with a filing.

20    But all of our efforts have been documented.  And we have --

21    and the contacts that we're trying to work with are in the US

22    Embassy.  But frankly, with the political situation, and the

23    pandemic, and the travel ban, we're not getting the -- we're

24    not securing his entry into the United States at this juncture.

25          THE COURT:  So Ms. McGovern, are you suggesting that

1  Dr. Wright appear remotely?

2        MS. MCGOVERN:  No.  We think it is extremely important

3  for Dr. Wright to be present at this trial.  There are a lot of

4  issues with the presentation of witnesses.  But he is the

5  Defendant.  And the ability for him to be able to communicate

6  effectively, openly, and without sort of any type of -- I don't

7  want to say bias, but any distraction that could come with the

8  assessment of credibility that could be affected, you know, by

9  a virtual presentation.  I think it's very important.

10        Dr. Wright also wants to be present for the whole

11  trial.  He wants to be there every day.  I mean, as you can

12  imagine, his entire life is on the line here, not just from an

13  economic perspective, but from, you know, a perspective of who

14  he is as a man.

15        So it's very important for him to be able to be

16  present.  Again, we raise this because we're still working on

17  getting him to the United States.  And we are open to any

18  suggestion that the Court has to facilitating that.  We've used

19  every sort of top original thought possible within the bounds

20  of, obviously, reason and ethics to present our case to fit

21  within an NIE waiver exception, and it simply hasn't been

22  successful.

23        The other problem, of course, too, is that we are not

24  getting the kind of immediate relief because there are other

25  factors that are considered, you know, more pressing at this

1    juncture.  But we have been trying for months.  It's not just

2    we've made efforts within the last few days and, of course,

3    we've got the Afghanistan crisis right now.  It's we were

4    denied before that, before those events took place.

5         What I could suggest, Your Honor, is that we keep the

6    Court apprised.  There is a different avenue that we're going

7    to try, to see if we're able to request the waiver outside of

8    London, and to see whether, in fact, that would be more

9    effective.  And we are pressing forward on that front as well.

10   But again, it doesn't just affect Dr. Wright.  It also affects

11   Ramona Watts, who is listed as a witness in our witness list.

12        MR. FREEDMAN:  Ms. McGovern, we looked into this for a

13   different client, and I'm not -- we never had to go down the

14   full route.  But there -- we were aware of some ability if the

15   (audio distortion) like Mexico or another jurisdiction for some

16   time, and that jurisdiction isn't on the prohibited entry list,

17   they can then enter the United States.  That might be something

18   you can look at.

19        MS. MCGOVERN:  Yeah.  We were looking at that as well.

20   I mean, you know, it's difficult to prepare for trial in a

21   foreign country.  And it's difficult to prepare, you know, for

22   this trial in a foreign country and be there for two weeks

23   before trial starts.

24        So it is definitely an obstacle, but it is an avenue.

25   So if the Court were inclined to sort of conclude that that's

1    something that we simply would have to do, Your Honor, that's

2    what we would do.  It is not ideal.  And we want to bring our

3    efforts to the Court's attention for that reason.  Because

4    having, you know, lead trial counsel in a foreign country

5    preparing two weeks -- and in fact, the circumstances regarding

6    that avenue are sort of complex because you go to the foreign

7    country and it has to be an absolute 14-day stay.  Then you

8    have to test negative and then be able to come in with your

9    ESTA into the United States.

10         So the concern we have -- and we just want to express

11   it on the record -- is that there are things outside of our

12   control which affect Dr. Wright's ability to be present, and we

13   simply don't have a complete handle on all of those factors.

14   That's the concern.

15         THE COURT:  Understood.  And I'll allow his attorneys,

16   who are excellent attorneys, to resolve the issue with regard

17   to Dr. Wright.

18         Are there any other witnesses that present a problem

19   coming into this courtroom to testify during that trial period?

20         MR. RIVERO:  Judge, just to repeat what Ms. McGovern

21   already indicated, the same (audio distortion) for Dr. Wright's

22   wife, Ramona Watts.

23         THE COURT:  So it would be Dr. Wright's wife, Ramona

24   Watts, as well?

25         MS. MCGOVERN:  Yes.

```
1            MR. RIVERO:  Yes.

2            THE COURT:  All right.  Would there be anyone else?

3            MS. MCGOVERN:  Not for the Defendant, Your Honor.

4            THE COURT:  All right.  Well, at this point, I'm not

5    certain if you're requesting any relief.  But as the parties

6    are aware, we've worked very hard to arrange for this special

7    set trial.  So we'll keep it on for November 1st, and you'll

8    advise the Court as we move forward where we are with regard to

9    the Defendant, as well as the witness.

10           MR. RIVERO:  Judge, I have only one more small item on

11   this.  We have not -- we're working with very good immigration

12   counsel both from the US and in the UK.  And it hasn't come to

13   this, but we have, at different points, consulted about the

14   question whether anything from the Court might help in terms of

15   the Immigration authorities.  If we believe it might, we'll

16   come back to you and let you know and maybe something from the

17   Court might assist us.

18           THE COURT:  All right.  Well, you'll let the Court

19   know if there is any information that you may need that may

20   facilitate the Defendant's arrival, as well as the witness.

21           All right.  I know that we have exhibits that are due

22   on August 31st.  I would suggest as we get closer -- and you've

23   had the opportunity.  I would, once again, suggest that you

24   reach out to Liz Gariazzo, who is my courtroom deputy, make

25   arrangements to come into the courtroom and look at the
```

1   equipment, have it tested.  You can work with our IT

2   department.  And if there are -- is equipment that you want to

3   bring into the courtroom that adapts to the courtroom -- the

4   equipment we have here, I would request that you file an

5   appropriate motion so that that can be granted ahead of time.

6          Please remember that if you are not an attorney, any

7   of the witnesses, that they will be precluded from bringing an

8   electronic device into the federal courthouse, certainly into

9   the courtroom, unless the Court signs an appropriate order.

10          At this point, are there any issues that we can

11   discuss?  I know that certainly with regard to the

12   questionnaire, if I have not provided that to you, it is on the

13   website, but we're happy to email it to the attorneys, that we

14   use in our civil cases.

15          If there are specific questions that you would like me

16   to ask the jurors, I would ask that that be provided to the

17   Court, if it has not been filed already.  I would request that

18   that be done at the same time that you are filing your exhibit

19   list, which is August 31st.

20          And are there any issues that we need to address at

21   this point?

22          MR. RIVERO:  Judge, I'm sorry.  I do have a couple of

23   questions.  You had said that masks would be required.  Would

24   the examining lawyer and the witness also be wearing masks

25   during examination?

```
 1              THE COURT:  Well, let me suggest -- we do have these

 2    clear, transparent face masks, and I'm not certain -- I don't

 3    know if you can see.  I'm not -- we have some here that the

 4    witness can use, so that you're able to, as well as certainly

 5    the jury -- to see the witness as the witness is testifying.

 6    And if you would like to use the transparent face masks, we do

 7    have those available.  But in answer to your question,

 8    Mr. Rivero, yes, all of the witnesses, the jurors, the

 9    litigants, the lawyers will be required to maintain their face

10    masks at all times.

11              MR. RIVERO:  Thank you, Judge.

12              And one other question -- and I heard this from an

13    AUSA friend, that the Court has, I believe -- or this may be

14    out-of-date information -- a limitation on the number of

15    persons who can be in the elevators.  Is that still in effect,

16    Judge?

17              THE COURT:  Yes.  That limitation is still in effect.

18    And I did want to speak with you in terms of individuals in the

19    courtroom.  I know we have a lot of individuals observing and

20    we will attempt to make arrangements for an overflow courtroom.

21    But with regard to the critical members that do need to be in

22    the courtroom to try the case, can the parties advise how many

23    attorneys each side anticipates will need to be in the

24    courtroom and the parties and any IT individuals.

25              So if we can start perhaps with Mr. Freedman or
```

```
 1    Mr. Brenner.  I'm not certain who's speaking on behalf of the
 2    Plaintiff.
 3          MR. FREEDMAN:  If you could give us just a minute,
 4    Your Honor, I could try to tabulate that information for you.
 5    If Mr. Rivero has it handy, if you can come right back to us,
 6    it would be 30 seconds.
 7          THE COURT:  I'm having a hard time hearing you,
 8    Mr. Freedman.
 9          MR. FREEDMAN:  Sorry.  Can you hear me now?
10          THE COURT:  Yes.  Thank you.
11          MR. FREEDMAN:  Okay.  I said I need to just tabulate
12    that information to give you a rough estimate.  I just need 10.
13    If Mr. Rivero has that information, maybe ask him and come back
14    to me.
15          MR. RIVERO:  Judge, I'm glad to address it.
16    Ms. McGovern and I have been trying to determine this.  And we
17    know we'll have one IT person, Judge, and a paralegal.  We're
18    not sure -- we believe it would be four lawyers.  So that would
19    be a total of six, Your Honor.  But we had some -- about seven.
20    So it would be -- just to reiterate, we believe four lawyers,
21    an IT, and a paralegal.  That's what we believe right now.
22          THE COURT:  All right.  I'm looking out at the
23    courtroom, since I am here, and we will need to mark off and
24    arrange the chairs so that we can accommodate that number.
25          Mr. Freedman?  How about on behalf of the Plaintiffs?
```

```
1            MR. FREEDMAN:  Depending on the day, Your Honor, and

2       the witness, I would imagine we'll be between seven or eight

3       for the Plaintiffs' side.

4            THE COURT:  All right.  Can you tell me first how many

5       lawyers will need to be in the courtroom, sir?

6            MR. FREEDMAN:  Four, maybe five.

7            THE COURT:  And who else will need to be in the

8       courtroom -- and when I say:  "In the courtroom," I'm talking

9       about in the well, that will actually need to be at counsel

10      table trying the case.

11           MR. FREEDMAN:  Your Honor, like Mr. Rivero, one

12      paralegal and one IT person.

13           THE COURT:  All right.  So six for each side.

14           MR. BRENNER:  And plus one client and one client

15      representative on our side, too, Your Honor.

16           MR. RIVERO:  Judge, I forgot to mention that, too.

17      Obviously, the client needs to be present.

18           THE COURT:  We may need to reconfigure the tables.

19      And I'd like the attorneys to take the opportunity -- the

20      courtroom is open.  The courthouse is open -- to come to

21      Courtroom 10-2 and provide the Court with some suggestions as

22      to how to arrange the tables, so that we can accommodate seven

23      on each side.

24           I will take the time to make sure that within the

25      courtroom, in the gallery, as well as the jury box, that we're
```

1   able to accommodate 20 jurors at one time.  And I believe that

2   we can.  My concern is with regard to the well and how best to

3   not only accommodate your seating and maintaining the social

4   distancing, but also to be able to facilitate your presentation

5   of the evidence, which will be electronically.

6          MR. BRENNER:  Your Honor, if I could ask a

7   question/make a suggestion.  Is it possible that in each side

8   the first row of the gallery can also be reserved for the trial

9   teams?  And that would help us, I think, reduce at any given

10  time the amount of people in the actual well.

11         THE COURT:  And that's a great suggestion.  That's

12  actually what I'm looking out to see.  And I think that we can

13  certainly do that and allow enough room for the public.  And as

14  I stated, we'll make arrangements for an overflow courtroom.

15         I know that there are many individuals in the public

16  that are interested in this proceeding.  I also did want to

17  discuss with you your openness to allowing the proceeding to be

18  by Zoom for those individuals that may not be able to come into

19  the courtroom, but still want to observe the proceedings.

20  Would there be any objection or concern with regard to that?

21         MR. RIVERO:  Judge, I do have one.  And I'm sorry to

22  jump ahead of the Plaintiffs.  I do have one concern.  In

23  general, I don't.  I know the court's supposed to be open.  But

24  we did have an incident, which I've never seen in 35 years of

25  practicing before this Court, of a recording of some type or a

1   broadcast of some -- a broadcast, Judge, of some type out of

2   hearings with Magistrate Judge Reinhart.  And I have never seen

3   anything like it, Judge.  It is absolutely, as you know,

4   verboden in our court.

5         So with regard to Zoom, I'd just ask -- I don't know

6   how it works.  I know there's a Zoom professional and there are

7   measures that can be taken to prevent that kind of recording

8   and broadcasting, Judge.  But we want the same protection that

9   all litigants have before this Court.  That's just not the rule

10  of court that things are allowed to be taped or broadcast.

11        THE COURT:  Well, why don't we take it one step at a

12  time.  Certainly, the courthouse doors are open.  But because

13  of the pandemic, we will need to follow CDC guidelines and

14  limit the number of individuals that may be able to observe,

15  perhaps with an overflow courtroom that will also have the

16  capability to allow those individuals to also view the

17  proceedings.  Then we may not need to broadcast, so to speak.

18        Now, in terms of someone -- and I'm not exactly

19  certain what may have taken place before Judge Reinhart.  But

20  if, in fact, someone was using a camera, obviously, that

21  violates our rules and that individual should be admonished.

22  And certainly that statement will be provided by the Court

23  every morning to all the observers, so that everyone knows

24  their obligations.

25        MR. RIVERO:  Judge, I raise it because I didn't know

```
 1    the Court wasn't aware.  But my recollection now is there was
 2    an individual who used a cell phone to use something called --
 3    an app that I'm not familiar with called Periscope, which
 4    allows some form of broadcasting.  I don't know if it was video
 5    or audio.  But to my understanding, we had someone who was
 6    remote, somebody related to the business in some way, who saw
 7    this on the Internet.
 8            So I do want to bring it to the Court's attention.
 9    Because, Judge, this -- in a certain -- perhaps it's a small
10    section of the Internet that I don't understand, but this is an
11    extraordinarily high-profile matter and somebody took it upon
12    themselves to do that.  And I know Judge Reinhart had the
13    marshals bring him in and I know they talked to him.  So I
14    appreciate it, Judge.
15            THE COURT:  Yes.  And I would certainly take the same
16    action.  And that is indeed unfortunate.
17            What other questions may I answer and what other
18    issues would you like to have discussed?
19            I know that we will have another proceeding.  We'll
20    have a calendar call as we get closer.  But I did want to make
21    sure that I'm available to each of you, so that you can
22    properly prepare for trial.
23            MR. BRENNER:  Your Honor, one thing you mentioned -- I
24    may have just missed one of the details -- on the prohibition
25    on electronic phones or things in the courtroom.  I thought I
```

```
 1   heard you say that it doesn't apply to the lawyers.  It would
 2   apply to the witnesses, absent permission from the Court.  But
 3   what about for non-lawyers that are part of the trial team, for
 4   example paralegals?  Are they in the lawyer camp or are they in
 5   the witness camp?
 6             THE COURT:  They're in the non-lawyer camp.  And
 7   that's why I would stress that if there is a team that you want
 8   to bring in, and you want the team to bring in their electronic
 9   devices, whether it's a laptop, a phone, that you file the
10   appropriate motion so that I can have an order for you to
11   provide to the marshal as you come into the courthouse.
12             MR. BRENNER:  Understood.
13             THE COURT:  Thank you.
14             Are there any other questions or issues that you may
15   have?
16             MR. BRENNER:  Well, I guess I have at least one other.
17   Again, as I think of them.  But you mentioned you are going to
18   allow, which you mentioned before, some attorney voir dire.  Do
19   you have -- have you already in your mind -- do you have a time
20   limit on that or is that something we need to discuss with you
21   at the calendar call?
22             THE COURT:  I don't have a time in my mind,
23   Mr. Brenner.  And if you would like to discuss it now, I'm
24   certainly open to that.  How much time do you believe the
25   Plaintiffs would need for voir dire?
```

1          MR. BRENNER:  You said we're going to have panels of

2    40, is the goal?

3          THE COURT:  Yes.

4          MR. BRENNER:  And Your Honor will be doing a written

5    questionnaire.  Will Your Honor also be doing oral voir dire

6    yourself --

7          THE COURT:  I will.

8          MR. BRENNER:  -- before the lawyers?

9          I think that probably 60 to 90 minutes would be plenty

10   per side, per panel.

11         THE COURT:  And on behalf of the Defendant,

12   Ms. McGovern or Mr. Rivero?

13         MR. RIVERO:  Judge, we would not have an objection to

14   that -- to that amount of time.

15         THE COURT:  All right.  So each side -- I think one

16   hour is a fair amount of time.  And again, if there are

17   questions that you feel uncomfortable asking, and you would

18   like me to ask them, once again, if you will provide the

19   questions to the Court, I'll certainly review them and we'll

20   ask those questions.

21         MR. BRENNER:  Your Honor, another issue which jumped

22   out at me when we were talking about the vaccination -- and

23   maybe this hasn't happened with jury trials.  But I can

24   certainly envision a situation where jurors are going to want

25   to know the vaccination status of their fellow jurors and

1     express an -- and some may express an unwillingness to serve

2     either in the absence of that information or if they get the

3     information in a way they feel is unsafe for them.

4            So this is sort of a brave new world for all of us.

5     I'm just wondering how the Court intends to deal with what I'll

6     call either vaccine- or COVID-related requests to be excused by

7     jurors.

8            THE COURT:  All right.  Why don't we start with the

9     questions that the jurors may ask.  And I would anticipate that

10    some of the jurors may ask that question.  And that's why I did

11    want to discuss -- and I understand you're not quite ready to

12    discuss a type of vaccination protocol or disclosure of

13    vaccination status.  But I think it is important that the

14    jurors are provided information.  That is, if one of the jurors

15    who is vaccinated wants to know if his or her fellow jurors are

16    vaccinated or if attorneys are vaccinated, I think they should

17    be given an accurate answer.

18           To that extent, regardless of vaccination status, if

19    one does not feel comfortable serving, given the length of the

20    trial, or given the fact that we will be together for a good

21    number of hours each day, then I think that we have to

22    certainly accommodate that -- that concern with regard to, you

23    know, whether we want that juror to serve.

24           But I think it begins with a philosophy that even

25    though we are in the midst of a pandemic we can take

1   precautions to ensure that those who are not vaccinated,

2   whether for medical or his or her own reasons -- that we can

3   ensure that those individuals are able to come into the

4   courtroom and to do it safely.

5        Now, I did state that we do not have any mandatory

6   testing.  We don't have PCR tests here or rapid tests for the

7   unvaccinated.  I would leave it to the attorneys to come up

8   with some type of protocol.  If you want, moving forward, to

9   ensure that individuals are tested, are required to be tested,

10  or accommodations made for testing, we can certainly discuss

11  that.

12       But Mr. Brenner, I think that as we move forward we

13  are all concerned about our safety and the safety of our

14  families.  And that is why I started out by ensuring you that

15  we have done everything here in the courtroom and the

16  courthouse to make it as safe as possible, not only for each of

17  you, for the litigants, certainly for our court family, and the

18  jurors.  And that will be impressed upon them as they come into

19  the courthouse.  They will have their own packet that they'll

20  be given with an extra face mask, with wipes, sanitizer.  And I

21  will go through the protocols that we will have in place to

22  ensure that we maintain the social distancing.

23       But I think -- when it's all said and done, I think

24  the jurors have the right, if they choose to ask for the

25  information, to know the vaccination status.  And I believe

1    that the lawyers should make a decision, if we want to move

2    forward, to disclose that information.  And if they're

3    unwilling to disclose it, then I think we have to get to the

4    next step as to whether this is the right time to try the case.

5           We are available and ready and willing to try the

6    case.  But I want to make sure that everyone feels comfortable

7    and that we are COVID-free as we arrive on November 23rd.

8           MR. BRENNER:  Judge, I'm sure I speak for all counsel.

9    And we really appreciate the open discussion and trying to

10   figure this out.  In a sense, we're all in this together.  And

11   when I say "all," it includes the jurors, too.  So we

12   appreciate the care and attention Your Honor has given to it.

13   And as issues come up, we'll address them collaboratively.

14          MR. RIVERO:  Judge, I couldn't agree more.  And it's

15   caused me to think about some of this.  And one reason I think

16   both sides want to consult among themselves is because perhaps

17   we hadn't thought about it as deeply as we should have.

18          Judge, one related question.  The hearing of September

19   14th -- it wasn't clear to us -- is that in person or is that

20   remote?

21          THE COURT:  Well, might I suggest that at that time we

22   make arrangements to be here in person, unless you are

23   uncomfortable?  I think it's important for all of us to be in

24   the courtroom, since we are going to be trying the case in this

25   courtroom, to make sure that if there are specific issues --

```
 1    I'm looking out at the courtroom, I've been here every day, but

 2    you're not familiar with this courtroom.  And if we're going to

 3    spend the amount of time that we've devoted to this trial

 4    together, I want you to be comfortable.  So is there any

 5    opposition to having our calendar call in person?

 6            MR. FREEDMAN:  Not from the Plaintiffs.

 7            MR. RIVERO:  Not from the Defendants, Your Honor.

 8            THE COURT:  All right.  And I know that we have many

 9    members of the public that are interested.  Certainly, we'll

10    mark off the areas where individuals can sit.  I'll seek to

11    provide some type of accommodation for an overflow courtroom.

12    Perhaps Judge Martinez is not using his courtroom and we can

13    perhaps broadcast over to his courtroom.  I'm actually thinking

14    out loud as I say this.  It may just be that the calendar call

15    can only accommodate so many individuals.

16            I mean, we have a large gallery.  But the large

17    gallery, is -- you know, certainly does not anticipate three

18    feet between individuals.

19            MR. RIVERO:  Judge, the Court will advise us, because

20    I guess this is a question -- and we'll try to make whatever

21    suggestion in terms of the configuration for appearances on the

22    14th.  And Judge, in terms of time, should we plan the rest of

23    the afternoon on the 14th, after -- I believe it's starting at

24    2:00?

25            THE COURT:  I'm sorry.  The rest of the afternoon?  I
```

1    didn't hear your last part, Mr. Rivero?

2           MR. RIVERO:  Yeah.  In other words, as to the status

3    conference, from 2:00 until the close of business.  Is that

4    essentially what we should plan on?

5           THE COURT:  I don't anticipate we'll need to be

6    together that long, but I'm here for you.  Let me see if I have

7    anything else that afternoon.

8           So that I'm prepared, are there additional issues that

9    you want to discuss at the calendar call, other than -- as we

10   move closer, I am going to ask for a daily schedule of

11   witnesses that will be coming in, so that we can ensure that

12   those individuals -- and once again, we do need to address the

13   issue with regard to vaccination status, if they are

14   COVID-free.  If you are suggesting that there be certain

15   protocols of testing before witnesses come into the courtroom,

16   those are issues that we do want to solidify before we start

17   this trial.

18          So perhaps you can let the Court know.  On the 14th,

19   right now, I am open that afternoon after 2:00.  So what issues

20   can we discuss?  I know there were some objections with regard

21   to some demonstrative exhibits.  Do you want to bring in those

22   exhibits, if there are specific concerns that each of you may

23   have or have those issues been resolved?  What other issues can

24   we address at that time?

25          MR. RIVERO:  Judge, I didn't -- I perhaps

1    misunderstood.  I didn't know if it was the Court's practice to

2    address any evidentiary issues.  There will be, of course,

3    objections to exhibits.  For example, there might be objections

4    to deposition designations.  I expect there will be.  And I

5    didn't know if that was something that you addressed at this

6    calendar call time or if there was another moment that the

7    Court would do that.

8         THE COURT:  Ordinarily, I address deposition

9    designations when the deposition is being introduced, only

10   because the trial is fluid and the context has to be -- has to

11   be given.  And oftentimes it's relevance, but yet, we don't

12   know whether it is relevant depending upon what may be

13   presented.

14        So I'm happy to labor through certain issues that you

15   may have, if you -- if you have, you know, some concern as to

16   whether it inhibits your ability to prepare for trial.  So why

17   don't we do this:  I would like the attorneys to confer and to

18   speak with your respective clients with regard to the

19   vaccination issue, with regard to witnesses and lawyers, jurors

20   who are vaccinated, unvaccinated, and arrive at some

21   suggestions.

22        I would like the lawyers, if you have not already, to

23   take the time to come into the courtroom and make sure that any

24   issue with regard to the configuration, that we address.

25        Similarly, I would like the parties to provide to the

1    Court a list of issues that -- including deposition

2    designations, certain issues with regard to the demonstrative

3    exhibits.  I have your objections with regard to certain

4    exhibits, that if there are specific issues that you would like

5    to have discussed, then we can reserve the afternoon of

6    September 14th.  But I would like the parties to provide a

7    report to the Court, so I know precisely what the issues are

8    that you would like to discuss.

9         Ordinarily, at the calendar call, I would discuss

10   witness availability, any issues of witnesses being out of the

11   district, agreements with regard to depositions being read at

12   trial, as opposed to certain witnesses -- and I think the

13   parties have come to an agreement with regard to those

14   depositions -- making sure we have readers for those portions

15   of the deposition, and that we make sure that we adhere to the

16   Rule of Completeness and have one party read the entire portion

17   of both -- whether it's the Plaintiff or the Defendant -- but

18   the other party's side, so that it's not choppy, so that the

19   jury has an opportunity to understand the extent of the

20   testimony.

21        We don't have any issues here with regard to

22   interpreters, so we don't have that issue.  We certainly have a

23   lot of exhibits.  I think at the last time we had a thousand

24   exhibits.  And we spoke about joint exhibits, and I think the

25   parties are going to provide the joint exhibits and then the

1   separate exhibits, separately by way of a filing on August

2   31st, and I look forward to seeing that.

3        All of the exhibits, save any unusual or unique

4   exhibits that you let me know about, will be presented to the

5   jury electronically.  I think when you come into the courtroom,

6   you'll see that we have screens for each of the jurors, as well

7   as a screen for the witness in order to lay the foundation

8   before it's actually published.  And then we -- we will discuss

9   issues related to availability of witnesses.  I do want a daily

10  list of which witnesses are going to come in.  I don't want to

11  have gaps in time, especially since we're devoting a lot of

12  time ourselves, but we're taking a lot of time from these

13  jurors.  So I don't want to have issues where a witness is not

14  able to come in for an hour.  So we do need to have a list of

15  witnesses who are coming in one after the other and ready to

16  go.

17       MR. FREEDMAN:  Your Honor, you mentioned earlier about

18  reading depositions.  I just want to make sure -- does the

19  Court have an issue with -- to the extent a deposition has been

20  video recorded, that we could actually play the video of the

21  witness?  Is that okay with the Court or ...

22       THE COURT:  Yes.  Of course.  It is okay.  And we

23  would make those arrangements.

24       Now, in terms of a video deposition, if there are

25  objections, that's unique, as opposed to a written deposition.

```
1    If it's going to be shown, then your IT individual is going to

2    need to make redactions.  So that's something that we should

3    address earlier rather than later.  So if you can provide in

4    that report the list of video depositions and what objections

5    are being made to the testimony, because the Court's ruling

6    needs to be made in time for the video to be edited in order to

7    be shown to the jury.

8         As well, if you are showing the video deposition on

9    your own laptop, please make accommodations -- we've had this

10   occur, unfortunately, enough times to know that you need to

11   make sure that your laptop is compatible with the equipment

12   here.  So please take the time -- I invite you to come in as

13   often as you would like into the courtroom to test your

14   equipment, so that you're ready to go and that you're prepared

15   to make that presentation.

16        MR. BRENNER:  Your Honor, what is -- what date should

17   we get you the pre-September 14th report by?

18        THE COURT:  Well, how long do you need?

19        MR. BRENNER:  I mean, I can't imagine we need more

20   than 10 days to do that.

21        THE COURT:  Is that acceptable to Ms. McGovern and

22   Mr. Rivero?

23        MR. RIVERO:  It is, Judge.

24        THE COURT:  All right.  And that will also give you

25   the opportunity to have already filed your joint exhibit list
```

1    and your separate exhibit list on the 31st.  So why don't we

2    just say that by -- I know that's right after the long holiday.

3    So why don't we just say by September 8th.  Would that be

4    acceptable?

5          MR. RIVERO:  Yes, Your Honor.

6          MR. BRENNER:  Yes.

7          THE COURT:  Are there any other issues or discussions

8    that you would like to have?

9          MR. FREEDMAN:  Your Honor?

10          THE COURT:  Mr. Freedman?

11          MR. FREEDMAN:  September 8th is the second day of Rosh

12    Hashanah --

13          THE COURT:  My apologies.

14          Of course.  Of course.  My apologies.  And would

15    September 9th work for you, Mr. Freedman?

16          MR. FREEDMAN:  Yes.  Thank you.

17          THE COURT:  Okay.  Of course.

18          Are there any other issues -- anything else that we

19    can discuss?  I know you've been working very hard to get

20    prepared for the trial, and I'm looking forward to working with

21    each of you.

22          No other questions about any -- any issues in the

23    case, any protocols here in the courthouse?  I'm happy to

24    answer any other questions.

25          MR. RIVERO:  I'm sure something will occur to me in 10

```
 1   minutes, but not right now.  Thank you so much for all the

 2   time.

 3            THE COURT:  All right.  Well, please confer and let me

 4   know exhaustively the issues that we can discuss on the 14th by

 5   way of that filing on the 9th.  I would appreciate that.

 6            As well, I believe you have filed all of the

 7   transcripts for the depositions that you intend to use.  If

 8   there are others that have not been filed, please make sure

 9   that I have all of the filing.

10            Okay.  Is there anything else at all that we can

11   discuss?

12            MR. BRENNER:  No.  But I imagine once we confer with

13   each other and come back on the 14th, we'll have plenty --

14   we'll have plenty more to discuss.

15            THE COURT:  All right.  Let me also stress that I am

16   sensitive that we are in the midst of a pandemic.  And if there

17   is a concern, but you don't want to voice it now, with regard

18   to any member of the trial team, of coming in on the 14th, we

19   can certainly make accommodations to appear again through the

20   Zoom platform.  Just let the Court know.  But we'll plan on

21   scheduling it in the courtroom.  If there is a concern, we can

22   easily convert it to a Zoom hearing.

23            MR. BRENNER:  Thank you.

24            MR. RIVERO:  Thank you, Judge.

25            MS. MCGOVERN:  Thank you, Judge.
```

1          THE COURT:  All right, then.  It's good to see

2     everyone.  Everyone take good care, remain safe, and I'll look

3     forward to seeing each of you on the 14th.

4          MR. BRENNER:  Thank you, Judge.

5          MS. MCGOVERN:  Thank you, Judge.

6          THE COURT:  Okay.  All right.  Be well.

7        (Proceedings concluded at 11:57 a.m.)

```
1    UNITED STATES OF AMERICA      )

2    ss:

3    SOUTHERN DISTRICT OF FLORIDA  )

4                      C E R T I F I C A T E

5            I, Yvette Hernandez, Certified Shorthand Reporter in

6    and for the United States District Court for the Southern

7    District of Florida, do hereby certify that I was present at

8    and reported in machine shorthand the proceedings had the 27th

9    day of August, 2021, in the above-mentioned court; and that the

10   foregoing transcript is a true, correct, and complete

11   transcript of my stenographic notes.  Please note:  This

12   hearing occurred during the COVID-19 pandemic and is therefore

13   subject to the technological limitations of reporting remotely.

14           I further certify that this transcript contains pages

15   1 - 41.

16           IN WITNESS WHEREOF, I have hereunto set my hand at

17   Miami, Florida this 2nd day of September, 2021.

18

19                         /s/Yvette Hernandez
                           Yvette Hernandez, CSR, RPR, CLR, CRR, RMR
20                         400 North Miami Avenue, 10-2
                           Miami, Florida 33128
21                         (305) 523-5698
                           yvette_hernandez@flsd.uscourts.gov
22

23

24

25
```