UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC

    plaintiffs,

v.                                                                                                               Case No. 9:18-cv-80176 (BB/BR)

CRAIG WRIGHT,

    defendant.
_____/

**DR. CRAIG WRIGHT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' BRIEF
IN SUPPORT OF THE PURPORTED ADMISSIBILITY OF THE DEMONSTRATIVE
THEY INTEND TO USE IN OPENING**

Plaintiffs wish to use a timeline containing quotes allegedly made by Dr. Wright as a demonstrative aid in their opening argument. Three of the entries on this timeline (August 11, 2014, March 18, 2016, and June 30, 2016) are inadmissible. In their brief in support of the admissibility of the demonstrative, plaintiffs mischaracterize the underlying documents from which the three entries are derived, in an attempt to circumvent the Federal Rules of Evidence. The case law, however, is clear: a demonstrative may not be used in opening if the underlying documents are inadmissible. *See United States v. Lizon-Barias*, 252 F. App'x 976, 978 (11th Cir. 2007) ("Because the purpose of an opening statement is to advise the jury of the facts of the case, the parties should avoid referring to evidence during opening statement that is even of questionable admissibility."). As such, the Court should not permit plaintiffs to include the three disputed entries as part of any demonstrative aid during opening.[1]

---

[1] Although Dr. Wright does not dispute the use of the remaining entries in plaintiffs' proposed demonstrative aid during opening, Dr. Wright reserves the right to object to the admissibility of the underlying documents for the remaining entries during trial.

I. **The Underlying Document for the August 11, 2014, Entry is Inadmissible**

The underlying document from which the August 11, 2014, entry of plaintiffs' proposed demonstrative aid comes from a purported transcription of a tape-recorded meeting with the Australian Tax Office ("ATO") prepared after he fact by Auscript Pty. Ltd. ("Auscript"). *See* P172. The transcription cannot be authenticated, constitutes inadmissible hearsay, is impermissibly confusing, would mislead the jury, and is not reliable.

### A. Documents produced by a party are not automatically authenticated

Plaintiffs incorrectly argue that the transcript is authenticated merely because it was produced by Dr. Wright during discovery. The mere fact that a document is produced by an adverse party during discovery, without more, is not conclusive of the document's authenticity. *See Railroad Mgmt. Co., L.L.C. v. CFS La. Midstream Co.*, 428 F.3d 214, 219–20 (5th Cir. 2005) (finding that mere production of a record in discovery will not alone satisfy authentication requirements)). Authentication of a document produced in discovery by the opposing party requires presence of additional factors, such as the opposing party's signature or affirmation by the opposing party of the truth of the document's contents through testimony. *Long v. C.M. Long, Inc.*, 2017 WL 9440685, at *5 (W.D. La. 2017) (citing *Railroad Mgmt. Co.*, 428 F.3d at 219–20); *see Klayman v. Jud. Watch, Inc.*, 297 F. Supp. 3d 80, 88 (D.D.C. 2018) (finding evidence to admit an email chain insufficient where the witness was "unable to identify the thread, specifically remember it, or recall the general context"); *Lawrence v. Great Lakes Dredge & Dock Co., LLC of Louisiana*, 2018 WL 6047074, at *1–2 (E.D. La. 2018) (The mere fact that the defendant produced a document during discovery was insufficient for authentication.).

Plaintiffs ignore these requirements and argue that merely because Dr. Wright produced the transcript during discovery, it should be deemed authenticated and admissible as evidence at trial. Plaintiffs' argument that any production of documents is sufficient to establish authenticity ignores the rules regarding authentication and would nullify the evidentiary rules regarding authenticity. *See* Fed. R. Evid. 901, 902; *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 2020 WL 6687777, at *9 (S.D. Fla. 2020) (In a pretrial order regarding a deposition protocol in a multi-district litigation, Judge Rosenberg held that "[a]ny Party-Produced evidence marked as an exhibit in a deposition of that producing party and/or its employees or former employees" as authentic but permitted the producing party to challenge the authenticity and object.); *United States v. Everglades Coll., Inc.*, 2014 WL 11576085, at *1 (S.D. Fla. 2014) (denying a plaintiff's request to "deem authentic all exhibits produced" by defendant).

Plaintiffs rely on distinguishable cases. All but one were decided on motions for summary judgment, on which the evidence did not need to be admissible if it could be reduced to admissible form at trial. *See Wells v. XPEDX*, 2007 WL 2696566 (M.D Fla. 2007); *Slone v. Judd*, 2011 WL 1124618 (M.D. Fla. 2011); *Nola Fine Art, Inc. v. Ducks Unlimited, Inc.*, 88 F. Supp. 3d 602 (E.D. La. 2015); *Schaghticoke Tribal Nation v. Kempthorne*, 587 F. Supp. 2d 389 (D. Conn. 2008). Demonstrating the authenticity of a document for admission *at trial* is not the same as establishing authenticity of documents in support of a motion for summary judgment. *Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005) ("On motions for summary judgment, we may consider only that evidence which can be reduced to an admissible form.").

*John Paul Mitchell Sys. v. Quality King Distribs, Inc.*, 106 F. Supp 2d 462 (S.D.N.Y. 2000) also is distinguishable. There the court found that documents produced by CDM's records custodian in response to a subpoena were authenticated as records maintained by CDM. *See id.*

at 472. It was logical to conclude that a company would maintain and keep the documents produced by its records custodian in response to a subpoena for company documents. In contrast, here, the transcript was *not* produced by the ATO's (or even Auscript's) records custodian.

Instead, plaintiffs argue that a purported transcript of a recording of a meeting with the ATO, which Dr. Wright produced in response to an order to produce all materials that hit on agreed search terms [D.E. 231], should be deemed authenticated merely because he produced it. Such a conclusion is both at odds with the case law and manifestly illogical. *See Kirby v. Anthem, Inc.*, 2001 WL 1168166, at *5 (S.D. Ind. Aug. 8, 2001) ("The mere fact of production is not sufficient by itself to establish the authenticity of the document to support its admission into evidence . . . document requests may extend to all documents in a person's 'possession, custody or control.' Parties may have in their possession, custody, or control documents from many sources and of unknown origin. . . . . In essence, the broader the request, the less meaningful the act of production is likely to be."). As such, the mere production by Dr. Wright is insufficient to establish authenticity at trial.

### B. The transcript cannot be authenticated under Rule 901(a)(7)(B)

Plaintiffs improperly maintain that the transcript can be authenticated under Rule 901(a)(7)(B). Federal Rule of Evidence 901(a)(7)(B) states:

> **(a) In General.** To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.
> **(b) Examples.** The following are examples only--not a complete list--of evidence that satisfies the requirement:
> \*\*\*
> **(7) Evidence About Public Records.** Evidence that:
> \*\*\*
> **(B)** a purported public record or statement is from the office where items of this kind are kept.

Here, the transcript is neither sworn nor certified, and nothing on the transcript indicates whether it is a true and correct copy of a transcript issued or maintained by the ATO. *See* P172. Further, plaintiffs have not offered any evidence that the transcript is from the ATO or that the ATO keeps these kinds of transcripts. Plaintiffs cannot offer any such evidence because they have neither provided any deposition testimony of an ATO records custodian, nor do they have any such records custodian on their witness list. Plaintiffs' statement that Dr. Wright received the transcript from the ATO is simply not sufficient to authenticate the documents. *See Wells*, 2007 WL 2696566, at *3 (Plaintiff failed to authenticate EEOC documents because he failed to prove custody, or that the documents were from the public office where items of this nature were kept. Plaintiffs' statement that he received the documents from the EEOC were insufficient to authenticate them); *Grow v. Garcia*, 2010 WL 455118, at *n4 (D. Nev. 2010) (Nevada State Personal Commission Hearing Officer's statement could not be authenticated under Rule 901(b)(7) where "there is no indication that the decision was 'recorded' or 'filed' in the Nevada State Personnel Commission office or was received from that office in this litigation . . . [and d]efendants have not provided an affidavit or deposition testimony of the custodian of such records.").

Finally, the purported transcript does not qualify as a "public record." A public record is defined as a record that a governmental unit is required by law to keep and is generally open to view by the public. *See* Black's Law Dictionary (11th ed. 2019); Fed. R. Evid. 902 ("an official record . . . or a document that was recorded or filed in a public office as authorized by law."). Here, the transcript was not recorded or filed with the ATO where the public has access to it. In addition, the underlying recording of the meeting with ATO is not available to the public. As such, the transcript cannot be authenticated under Rule 901(b)(7)(b).

### C. The transcript is inadmissible hearsay

Even if the purported transcript could be authenticated (it cannot), it would remain inadmissible hearsay, as was demonstrated more fully in in Dr. Wright's Motion to Exclude the Australian Taxation Office's Tax Audit Documents and adopted herein. [D.E. 697 at p. 2-7]. More specifically, the transcript is an incomplete and uncorrected document that purports to be a summary "transcript" of a recording of a purported meeting conducted in connection with the ATO's audit of a non-party Australian company, of which Dr. Wright was a shareholder, which was prepared by Auscript[2], a service that creates transcriptions after the fact using a person to "listen" to a recording. No stenographer was present at any of the purported meetings. The transcript is inherently unreliable hearsay, and every purported statement it contains is embedded hearsay. *See e.g., Sloat v. Hewlett Packard Enter. Co.*, 2020 WL 6059867, at *14 (E.D. Tenn. 2020) (A party's "statements and the reproduction of those statements in [a] transcript are both out-of-court statements used for the truth of the matter asserted, and thus [a] transcript constitutes double hearsay."). As a result, even if statements by Dr. Wright could be held to be non-hearsay under Rule 801(d)(2), they would remain inadmissible because the transcript containing them is inadmissible hearsay, which is precluded under Rule 805.

Moreover, Dr. Wright is not the only speaker. The transcript also contains embedded hearsay statements by other purported speakers, for which there is no conceivable hearsay exception. For example, the August 11, 2014 entry contains purported statements of not only Dr. Wright, but also an ATO official, Mr. O'Mahoney. Plaintiffs attempt to disguise this hearsay within the proposed demonstrative by making it look as though the entire August 11, 2014 entry

---

[2] *At Auscript, We Offer More Than Just Transcripts.*, AUSCRIPT, https://www.auscript.com/en-AU/about/ (last visited Sept. 30, 2021).

is a statement from Dr. Wright: "There was a trust set up to put a number of bitcoin that Dade was mining and everything like that into," which was used as a "funding mechanism . . . [f]or research . . . ." [D.E. 700 at Exhibit B]. If you look at the actual transcript, however, you can see that the quote is incomplete and misattributed to Dr. Wright:

| | Wright | There was a trust set up to put a number of bitcoin that Dave was mining and everything like that into and maintain, the idea being that we would use that to further the goals we were doing, which were all to do with promotion of bitcoin and cryptocurrencies we have there. |
| 35 | O'Mahoney | So was it the case that the trust in Panama was set up as a funding mechanism? |
| | Wright | For research, yes. |

P172 at DEF_00068671. Mr. O'Mahoney's statements are hearsay as to which there is no hearsay exception, and plaintiffs' attempt to attribute statements of a non-party to Dr. Wright is plainly impermissible.

### D. The transcript is confusing and misleading to the jury while offering little in the way of probative value

Even if the purported transcript could be authenticated and was subject to hearsay exceptions at every level, Federal Rule of Evidence 403 still would require exclusion of the transcript because it is highly prejudicial and has limited probative value, demonstrated by Dr. Wright's Motion to Exclude the Australian Taxation Office's Tax Audit Documents and adopted herein. [D.E. 697 at p. 14-15].

The transcript also refers to documents that are not attached and is littered with missing words, phrases and/or identification of purported speakers, as shown by the following table:

| Defects of the Transcript | | | |
|---|---|---|---|
| Exhibit | Total Number of Pages of Transcription | Total Number of Pages with missing words/ phrases or that do not reflect a speaker's identity | Example of Pages with missing words/phrases, that do not reflect a speaker's identity or reference a document that is not attached |
| P172 | 45 | 41 | 4-44 |

Such poor-quality evidence would inherently mislead and confuse the jury and should, therefore, be excluded as set forth in Dr. Wright's Motion to Exclude the Australian Taxation Office's Tax Audit Documents and adopted herein. [D.E. 697 at p. 15].[3]

In weighing the limited probative value of the transcript against the significant risk of confusing and misleading the jury, the Court should find that the balance weighs in favor of excluding the transcript and, therefore, the August 11, 2014 entry on plaintiffs' proposed demonstrative.

### E. The transcript does not accurately reflect the original recording of the meeting with the ATO

Plaintiffs incorrectly argue that the transcript is an original writing, not a duplicate, and thus is admissible under the best evidence rule. *See* Fed. R. Evid. 1002 ("An original writing, recording, or photograph is required in order to prove its content unless these rules or federal statutes provides otherwise). Plaintiffs attempt to support their theory by stating that the "ATO transcript explicitly states that the meeting was 'TRANSCRIBED BUT NOT RECORDED.'" [D.E. 700 at p. 7]. Plaintiffs intentionally omit the remainder of what it states, on its cover page, namely: "TRANSCRIBED BUT NOT RECORDED *BY AUSCRIPT AUSTALASIA PTY LIMITED."* (emphasis added). Plaintiffs purposefully omitted the attribution to "AUSCRIPT AUSTALASIA PTY LIMITED" because it would reveal that the meeting was not transcribed in person, but instead that a recording of the meeting was transcribed after the fact by Auscript. As such, the recording of the meeting would actually be the "original," and the transcript is merely an inaccurate duplicate.

---

[3] For the same reasons, the transcript would also be speculative, as the jury would have to speculate as to the missing words, phrases, and other errors.

Finally, a duplicate never may be used unless it "accurately reproduces the original." Fed. R. Evid. 1002 ("A 'duplicate' means a counterpart produced by a mechanical, photographic, chemical, electronic, or other equivalent process or technique that accurately reproduces the original."). As demonstrated above, the purported transcript is inaccurate and is riddled with missing words, phrases, and other errors. In sum, the transcript violates the best evidence rule.

## II. The Underlying Document for the March 18, 2016 Entry Is Inadmissible

The March 18, 2016 entry on plaintiffs' proposed demonstrative aid is derived from P318, a document prepared by a media consultant in preparing Dr. Wright for an interview. P318 is *not* (contrary to plaintiffs' description) a "transcript" of statements made by Dr. Wright during an interview. As such, P318 cannot be authenticated and is inadmissible hearsay,

### A. P318 is not authenticated merely because it was produced during discovery.

Plaintiffs again argue that because P318 was produced in discovery by Dr. Wright that it is authenticated. As demonstrated above, this argument fails because documents produced by a party are not automatically authenticated.

### B. P318 is Impermissible Hearsay

P318 is hearsay for which no exception applies. Plaintiffs incorrectly characterize P318 as a transcript of an interview of Dr. Wright. P318, however, is not a transcript of anything, but rather a media training document prepared by a media consultant, not Dr. Wright. *See*, *e.g.*, D.E. 611-18 at 65:15-17; 93:15-22. Indeed, plaintiffs agree that it was not prepared by Dr. Wright. *See, e.g.*, D.E. 611-18 at 98:3-6. In fact, P318 was prepared by Nick Caley at the Outside Organization, a public relations firm[4] that was not hired by Dr. Wright. Further, plaintiffs

---

[4] https://outside-org.co.uk/#team

themselves refer to that firm as "McGregor's PR consultant." D.E. 611-18 at 102:24-25. As such, there are no statements or "quotes" in P318 that can be attributed to Dr. Wright.[5]

In addition, P318 and the statements within it are not ones that Dr. Wright manifested that he adopted or believed to be true (commonly referred to as an adopted admission). *See* Fed. R. Evid. 801(d)(2)(B). "To constitute an adoptive admission, the statement must be such that a person who does not adopt it would normally be induced to respond, and there must be sufficient foundational facts from which the trier of fact could infer that the person heard, understood and acquiesced in the statement." *Edwards v. Trade Pub. Ltd.*, 2011 WL 5416190, at *8 (M.D. Fla. July 20, 2011), *report and recommendation adopted in part, rejected in part*, 2011 WL 5459549 (M.D. Fla. Aug. 18, 2011); *accord United States v. Joshi,* 896 F.2d 1303 (11th Cir.1990). That is not the case here.[6] Indeed, Dr. Wright testified as follows regarding P318 and the statements contained in it: "[I]t's not an answer, it's a statement, not a transcription from myself. It is a statement that I guess people wanted me to say, so that's not an answer." D.E. 611-18 at 70:9-12. He also testified: "A: Again, this is not a transcription, no, I cannot read what a transcription has put down. Q: How do you know this is not a transcription, Dr. Wright? A: Because this is not what I would ever have said. This is what people like Rob wanted me to say." D.E. 611-18 at 70:18-25; *see also id.* at 72:3-73:11; 75:1-11; 94:25-95:3. Dr. Wright further denied actually saying what people asked him to say, because it was not true. *See*, *e.g.*, D.E. 611-18 at 74:2-17;

---

[5] Plaintiffs again attempt to conceal hearsay from the Court and circumvent the Rules of Evidence by making the March 18, 2016 entry appear as if it is comprised of direct quotes from Dr. Wright.

[6] Mere possession of written statements is insufficient to establish an adoptive admission. *United States v. Ordonez*, 737 F.2d 793, 800–01 (9th Cir. 1983) (Ledgers possessed by defendants were inadmissible where there was no finding or evidence that defendants had manifested their adoption of the statements within them or had demonstrated belief in their truth, noting that "possession of a document standing alone" was insufficient.).

78:4-7; 78:15-79:4; 79:15-80:11; 82:6-83:1; 84:10-85:9; 88:16-89:16; 89:23-90:1; 91:11-25. Dr. Wright testified: "I do not agree with anything in any of these documents." D.E. 611-18 at 105:3-4. The clearest evidence that Dr. Wright never adopted these statements is that there is no media interview with him during this time in which he made any of these statements. If there had been, plaintiffs would surely have included any such interviews in their exhibit list, but they did not. As such, P318 constitutes inadmissible hearsay.

### III. The Underlying Statements of the June 30, 2016 Entry Are Inadmissible

The statements that comprise the June 30, 2016 entry on plaintiffs' proposed demonstrative aid come from a publication called "*The Satoshi Affair: Andrew O'Hagan on the Many Lives of Satoshi Nakamato*" ("*The Satoshi Affair*"), a minimally relevant, salacious novela that casts a negative light on Dr. Wright, and is on plaintiffs' exhibit list as P306. Plaintiffs' effort is akin to seeking admission of a 96-page tabloid and is unduly prejudicial.

Further, courts are clear that "[n]ewspaper articles, in general, are classic hearsay when offered primarily to prove the truth of the matters therein." *Moon v. Advanced Med. Optics, Inc.*, 2010 WL 11509121, at *2 (N.D. Ga. 2010); *United States v. Baker*, 432 F.3d 1189, 1211 (11th Cir. 2005) (holding that "Miami Herald articles are also inadmissible hearsay, as they are relevant primarily to establish the truth of their contents."); *Dallas Cty. v. Com. Union Assur. Co.*, 286 F.2d 388, 391–92 (5th Cir. 1961) ("Of course, a newspaper article is hearsay, and in almost all circumstances is inadmissible."); *Miller v. Tony & Susan Alamo Found.*, 924 F.2d 143, 147 (8th Cir.1991) (holding that newspaper articles are "rank hearsay."). Since *The Satoshi Affair* is itself "rank hearsay" and is not subject to any hearsay exception, the article's description of Dr. Wright's statements cannot be admitted for its purported "truth." *See Nooner v. Norris*,

594 F.3d 592, 603 (8th Cir. 2010) (refusing to admit into evidence article that contained statement of a party opponent) (internal citations and quotations omitted).

In yet another attempt to circumvent the Rules of Evidence, plaintiffs are attempting to introduce excerpts of *The Satoshi Affair* through its author's deposition testimony. The designation of that testimony is a backdoor attempt to introduce *The Satoshi Affair*, which plaintiffs know will not be admissible. Such testimony also is inadmissible hearsay. *See Walker v. Werner Enter., Inc.*, 2008 WL 2816248, at *2 (M.D. Fla. 2008) (sustaining plaintiffs' argument to exclude testimony of a reporter about his article because he had no first-hand knowledge and any testimony he would offer would be inadmissible hearsay).

Moreover, with regard to the first two alleged statements in the June 30, 2016 entry on plaintiffs' proposed demonstrative, Dr. Wright objected in Mr. O'Hagan's deposition to the form of the questions and answers from which those statements are taken, and the Court has not yet ruled on those objections. Consequently, the Court should not permit plaintiffs to include the June 30, 2016 entry as part of its demonstrative exhibit during opening.

## CONCLUSION

For all these good and sufficient reasons, the Court should exclude the August 11, 2014, March 18, 2016, and June 30, 2016 entries from plaintiffs' proposed demonstrative aid during opening.

Date: October 6, 2021,

                                                  Respectfully submitted,

By: s/Amanda McGovern
ANDRES RIVERO
Florida Bar No. 613819
AMANDA MCGOVERN
Florida Bar No. 964263
ALAN H. ROLNICK
Florida Bar No. 715095
ZAHARAH MARKOE
Florida Bar No. 504734
SCHNEUR KASS
Florida Bar No. 100554

RIVERO MESTRE LLP
2525 Ponce de Leon Boulevard,
Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: amcgovern@riveromestre.com
Email: arolnick@riveromestre.com
Email: zmarkoe@riveromestre.com
Email: zkass@riveromestre.com
Email: receptionist@riveromestre.com

## CERTIFICATE OF SERVICE

I CERTIFY that on October 6, 2021, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/*Amanda McGovern