UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC<br><br>*Plaintiffs,*<br><br>v.<br><br>CRAIG WRIGHT<br><br>*Defendant.* | CASE NO.: 9:18-cv-80176-BB |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE IMPROPER CHARACTER EVIDENCE AT TRIAL**

Plaintiffs hereby respond to Defendant's Motion to Exclude Improper Character Evidence at Trial:

**INTRODUCTION**

At the Calendar Call, Defendant's counsel told the Court that they believed some of Plaintiffs' exhibits contain "impermissible extrinsic character evidence," and requested leave to provide briefing to "flesh out the reason why we believe these documents should be excluded[.]" Hr'g Tr. at 72:19-73:6, attached hereto as **Exhibit A**. In response, the Court instructed Defendant to "identify specifically" the documents with which he takes issue, and to "set forth the law" and present argument on the "basis why the Court should not allow that into evidence." *Id.* at 74:25-75:11; 75:15-24.

On September 30, 2021, Defendant filed the instant motion. DE [698]. But instead of doing what the Court instructed and presenting argument on specific documents and why they purportedly are inadmissible, Defendant simply lists *categories* of documents he contends are inadmissible and cites to generic law on relevance and the use of character evidence (citing Rules

1

of Evidence 403, 404 and 608).  What Defendant did *not* do, and the discussion below illustrates why, is discuss what the individual documents actually say and why their admission would run afoul of the rules of evidence, which, again, Defendant only generically discussed.  In short, Defendant's motion falls short of what the Court asked for, and equally important, falls on the merits too.

## DISCUSSION

In his motion, Defendant makes a blanket statement that the categories of documents he lists have "little, if any, relevance to the claims in this case." DE [698], at 3.  Oddly, Defendant then fails to quote meaningfully from a single document, or even attach the supposedly inadmissible documents to his Motion for the Court to review.  In essence, Defendant asks this Court to accept blindly his assertions that the documents say what he says they do (as discussed below, those assertions are inaccurate).  Then, having created that straw man, Defendant proceeds to try to knock it down with generic citations to the law on relevance, prejudice, and character evidence.

This generalized request to exclude whole categories of evidence prior to trial runs afoul of the law and this Court's prior rulings.  As the Court explained in its Omnibus Order on the parties' Motions *in Limine*, evidence should only be excluded "when it is clearly inadmissible on *all* potential grounds." DE [623], at 3 (emphasis added).  Unless the "movant [here, Defendant] can meet this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Id.*  Not surprisingly, a review of many of the documents cited in Defendant's Motion reveal that they are different than Defendant's characterization of them, and are both relevant and admissible. Defendant's Motion also wholly fails to grapple with the way these documents fit into the overall

case. Accordingly, rulings on these documents should be made a trial, when the Court is in a better position to assess their admission because it can see the context in which the evidence is being used.

A review of Defendant's blanket, category objections is set forth below:

***First***, Defendant seeks to exclude Plaintiffs' Exhibit 679 because it purportedly "demonstrate[s] that Dr. Wright 'cheated' on his ex-wife."[1] DE [698], at 2 ¶ 1. This contention is nonsensical. Defendant sent the email to Ramona Ang in 2011, after he had formally separated from his first wife. Dep. of Lynn Wright, at 73:15-16 (Q: So you separated in November of 2010? A: Yes.). And the content of the email does not demonstrate, or even insinuate, any marital infidelity by Defendant. Rather, the document is clearly admissible because what Defendant does not inform the Court is that in the email he specifically discusses Dave Kleiman and describes him as a "courageous," "brave" and "remarkable man." P679 ("I see people like Dave K as courageous…. Dave is brave. He is a remarkable man and I do hope you can meet him before he passes."). This is a far different picture of Dave Kleiman than the one Defendant intends to try to paint at trial.

Defendant's mischaracterization of this document as demonstrating that he "cheated" on his wife should not be used as a basis to exclude it for the simple reason that it does not say that, nor is it being used for that purpose.[2]

---

[1] Although Plaintiffs have no interest in delving into Defendant's infidelity (a fact that it is not in dispute), the timing and nature of his relationship with Ms. Ang is also relevant to her credibility and bias as a witness.

[2] Of course, should a document contain some inadmissible material (this one does not), the remedy is not to exclude the document but instead to redact the offending material or craft an appropriate limiting instruction.

3

*Second*, Defendant seeks to exclude Plaintiffs' Exhibit 770 because it mentions Defendant "'stealing' some items as a child, teenager, and young adult, including books and a radio." DE [698], at 2 ¶ 2. That is accurate as to *some* of the contents of the email, but it contains much more than just that. Specifically, in this email, which Defendant sent to his first wife, Defendant admits not just to individual theft, but to being a habitual thief – and not just as a child: "I learned all I could of theft and then put it into practice…. I have actually stolen many times since then, but very few times as a child."

In the email, Defendant also expressly admits (indeed brags about) being a computer hacker. Again, not discrete acts of hacking but to being a "true hacker" and one of the founding members of "Legion of Doom," which was once considered to the be most capable hacking groups in the world. *See https://en.wikipedia.org/wiki/Legion_of_Doom_(hacking)*. Recall, Defendant has attempted to use "hacking" as shield against damning documents he has authored, but as this document reveals Defendant himself has used "hacking" as a sword, and would be in a position to "hack himself" for cover. Moreover, Plaintiffs will adduce substantial evidence that Defendant seeks to introduce into evidence documents that he himself has manipulated or forged. By injecting "hacking" as a pillar of his defense to his manipulation and forgery of documents, Defendant cannot in turn ask this Court to exclude his admissions to being a hacker and doing what he now, conveniently, accuses of others of doing.

In short, Plaintiffs' Exhibit 770 is not merely about Defendant shoplifting as a child or young adult, and Defendant's attempt to characterize it as such is mere obfuscation. There is no question that Defendant's admissions relating to stealing and hacking computers are directly relevant to issues at the heart of this case and should not be excluded. It is admissible for the reasons articulated herein.

*Third*, Defendant seeks to exclude Plaintiff's Exhibit 317 because it contains evidence "that in 2015 Dr. Wright lied about his academic credentials." DE [698], at 2 ¶ 3. But Defendant himself has made his academic credentials (and Dave Kleiman's alleged lack thereof), a central tenet of his defense.

It is no secret that Defendant hopes to convince the jury that Dave Kleiman did not have the academic credentials or technical training to be his partner in creating Bitcoin. Indeed, Defendant hired an expert to opine on whether Dave had the "requisite skills and experience to have written the original Bitcoin core software." Rep. of Kevin Madura, at 3. Defendant goes even farther than merely maligning the skills of his now deceased "best friend and business partner." *See* P459 ("Sorry. My best frined [sic] and business partner died a few days back and I am in a class right now"). Defendant's expert report unambiguously reinforces Defendant's asserted educational accolades while simultaneously insinuating that Dave Kleiman was uneducated and did not have the learned technical skills necessary to code or write the Bitcoin protocol.

Defendant also has affirmatively touted his own asserted academic record and purported technical prowess to argue that he and he alone created Bitcoin. For example, one of the demonstratives that Defendant plans to use at trial is his own 2007 PhD dissertation proposal.[3] Given that Defendant has placed his academic credentials at issue in this case, he cannot exclude evidence that he lied about those same credentials by labeling them improper "character" evidence.

---

[3] The authenticity of this dissertation proposal has been challenged by Plaintiffs, and is one of the subjects of the supplemental expert report recently issued by Dr. Edman. *See* attached hereto as **Exhibit B**.

*Fourth*, and most bold of Defendant's protestations, is his desire to exclude a number of documents related to his dealings with the ATO.[4] These include Plaintiffs' Exhibits 606, 063, 238, 239, 240, 661, 136, 170, 192-97, 199, 204-206, 613, 616, 617, 652, and Dr. Edman's Second Supplemental Report at ¶¶ 1-6, 40-92. *See* DE [698], at 2-3 ¶¶ 5-8. For starters, this Court has already ruled on the issue of whether Defendant's dealings with ATO are relevant (DE [623], at 11), finding that that "ATO evidence implicates matters connected to W&K's alleged transfer of intellectual property in Australia to Defendant, statements regarding the business relationship between Mr. Kleiman and Defendant, bitcoin mining and intellectual property development, Defendant's alleged fraud, post February 2014 communications between the parties, and it provides context and fullness for the jury to understand and evaluate evidence." DE [623], at 11. And in regards to any argument that such evidence is prejudicial, the Court already held it was "unconvinced" that the ATO materials are so prejudicial, confusing, or misleading that Rule 403 bars them. *Id.*[5]

---

[4] It is unclear what specific evidentiary rules Defendant believes these documents violate and why. His failure to provide this information and argument is a sufficient ground alone to deny this Motion.

[5] There are two other categories of documents described in Defendant's Motion. One category is documents and testimony involving Deborah Kobzah, an ATO filing, and a potentially forged contract with Ms. Kobzah and CloudCroft Pty Ltd. *See* DE [698], at 2 ¶ 4. It is entirely unclear as to what Defendant takes issue with in this evidence, but to the extent these exhibits pertain to the relevance of the ATO documents, Plaintiffs address such issues in their Response to Defendant's Motion to Exclude ATO Tax Audit Documents, filed contemporaneously with this Response. Further, to the extent Defendant seeks to exclude Ms. Kobzah's testimony, such evidence is better addressed in the context of her deposition designations.

The other category is news articles and a Twitter post discussing Defendant's submission of fake documents in this case. Defendant's request for a blanket of exclusion of these documents, before trial and without any context, is premature and unsupported. Should Plaintiffs attempt to introduce any such evidence at trial, Defendant will have an opportunity to object before the information is shared with the jury.

Defendant already sought a second bite of that apple and filed a separate motion directly solely at documents related to the ATO, DE [697], which Plaintiffs respond to separately.[6] Here, Defendant tries to take a *third* bite of the ATO apple, and seeks to exclude documents that show he submitted forged emails and altered invoices in connection with his dealings with the ATO. DE [698], at 2-3.

The incongruity of this request should not be lost on the Court. To explain, in their Omnibus Motion *in Limine*, Plaintiffs sought to exclude testimony related to Defendant's numerous claims that the forgeries and alterations in Defendant's documents were a result of hacking attempts on Defendant's computers. Defendant vehemently opposed that motion and reiterated how, according to him, it has been "known for at least a year – and for much longer – that [he] was the victim of hacks." DE [523], at 9. He argued that his status as a "high-profile figure in the bitcoin community" has resulted in numerous "[h]acks and online attacks." *Id.* He even cited testimony from other witnesses in this case claiming that certain documents submitted to the ATO have been altered. *See e.g.*, DE [523-C], Dep. of Jimmy Nyugen, at 137:8-11 ("[Defendant] has been the subject of many hack attempts. That that was an issue in his case with the Australian Tax Office that someone hacked his company computers and tried to changed documents.").

The Court denied Plaintiffs' Motion, deciding that the jury would ultimately decide this issue. DE [623], at 23. Now, having successfully convinced the Court that a jury will decide this issue and *he* should be permitted to claim he was the victim of hacking, Defendant asks the Court to prevent Plaintiffs from introducing evidence that indicates these manipulations were not the

---

[6] Additional evidentiary issues related to the ATO documents are more fully addressed in Plaintiff's contemporaneous Response to Defendant's Motion to Exclude Australian Taxation Office's Tax Audit Documents.

result of some unknown hacker, but rather were forgeries by Defendant. The documents have other relevance as well. For example, Defendant seeks to exclude Plaintiffs' Exhibit 063, which is an email from Defendant describing Dave Kleiman's signature on a Shareholder's Agreement. The Shareholder's Agreement, which is attached to the email, purports to contain Dave's PGP digital signature. P063 ("The signature is Dave's. It is signed using PGP. I can demonstrate how this is signed."). In a case that centers (at least in part) around a claim that Defendant forged documents to steal Plaintiffs' intellectual property, there is no question that such a document is relevant and admissible.

In short, it would be unfair to allow Defendant to claim freely at trial that any of his emails that are prejudicial to his case are the result of him allegedly being "hacked," while at the same time asking this Court to exclude any documents evidencing that Defendant himself has submitted altered or forged emails, including to obtain all of Plaintiff W&K's intellectual property through a "Consent Judgment." As Defendant argued earlier, it "is for the jury to determine what weight to give the ample evidence that defendant was hacked – not plaintiffs…. [the] attempt to usurp the role of the jury is unwarranted." *See e.g.* DE [523], at 9. What is good for the goose is good for the gander.

## **CONCLUSION**

Defendant failed to comply with this Court's instructions to identify specific exhibits and present argument as to why he believes each should be excluded, leaving Plaintiffs unable to meaningfully rebut or respond to his Motion. Even still, the exhibits Defendant did cite are documents related to concepts that Defendant has put at issue for trial. Accordingly, the Court should deny Defendant's motion and address any remaining objections to Plaintiffs' exhibits at trial.

Dated:  October 6, 2021

Respectfully submitted,

By: */s/ Andrew S. Brenner*
Andrew S. Brenner, Esq.
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd Street, Suite 2800
Miami, Florida 33131
abrenner@bsfllp.com

Velvel (Devin) Freedman, Esq.
**ROCHE FREEDMAN LLP**
One SE 3rd Avenue
Suite 1240
Miami, Florida 33131
vel@rochefreedman.com

Kyle W. Roche, Esq.
Joseph M. Delich
**ROCHE FREEDMAN LLP**
99 Park Avenue, 19th Floor
New York, New York 10016
kyle@rcfllp.com
jdelich@rcfllp.com

*Counsel to Plaintiffs Ira Kleiman as Personal Representative of the Estate of David Kleiman and W&K Info Defense Research, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 6, 2021, a true and correct copy of the foregoing was filed with CM/ECF, which caused a copy to be served on all counsel of record.

*/s/ Andrew S. Brenner*
ANDREW S. BRENNER

9