# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

IRA KLEIMAN, as the personal representative
of the Estate of David Kleiman, and W&K Info
Defense Research, LLC

      *Plaintiffs,*

v.

CRAIG WRIGHT

      *Defendant.*

CASE NO.:  9:18-cv-80176-BB

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE AUSTRALIAN TAXATION OFFICE'S TAX AUDIT DOCUMENTS

In his Motion, Defendant concedes he previously moved to exclude evidence related to his dealings with the Australian Tax Office ("ATO"). But he mischaracterizes the Court's denial of that motion, implying that the Court merely deferred its ruling, subject to identification of specific documents. To the contrary, the Court addressed the relevance of the ATO documents, holding that the that "ATO evidence implicates matters connected to W&K's alleged transfer of intellectual property in Australia to Defendant, statements regarding the business relationship between Mr. Kleiman and Defendant, bitcoin mining and intellectual property development, Defendant's alleged fraud, post February 2014 communications between the parties, and it provides context and fullness for the jury to understand and evaluate evidence." DE [623], at 11. The Court was similarly "unconvinced" by Defendant's claims of unfair prejudice, *id.*, and addressed other matters raised again in this Motion, noting, for example, that Defendant's own statements are not hearsay, and that even if documents contain some inadmissible material it does not render the entire document inadmissible. *Id.* at 12.

Undeterred, Defendant is back again mischaracterizing and seeking to exclude evidence

1

arising out of his dealings with the ATO. He rehashes previous arguments about relevance, authenticity, and hearsay but offers no substantive reasons why the Court's previous observations on these issues are no longer applicable. Accordingly, for the reasons already stated by the Court in denying Defendant's prior motion and those articulated below, Defendant's Motion should be denied.

## BACKGROUND

### I.     The ATO Documents are central parts of the case.

Plaintiffs intend to prove at trial that (1) Defendant and Dave Kleiman partnered to mine bitcoin and that Defendant misappropriated that bitcoin after Mr. Kleiman's death; DE [83] ¶¶ 55–78, 95, 117–31; and (2) Defendant and Dave Kleiman jointly developed intellectual property and that Defendant misappropriated that intellectual property after Mr. Kleiman's death including by obtaining a "Consent Judgment" from an Australian court that purported to transfer intellectual property from W&K to Defendant. *See id.* ¶¶ 117–31. Evidence related to each of these claims is found in Defendant's dealings with the ATO in the years following Mr. Kleiman's death.

In 2014, the ATO was investigating Defendant's companies to determine whether those entities had properly sought certain tax benefits. *See, e.g.*, P742, at DEF_01099811; P127, at DEF_00051770 (Defendant's agent identifying the companies as belonging to Defendant); P637, at DEF_00067367, 7370 (documenting relationship among Defendant's companies and Defendant). That investigation concerned, among other things, whether Defendant's companies were entitled to millions of dollars in tax benefits in connection with their "acquisition" of intellectual property from W&K. *Id.* Defendant claimed that (1) he had paid millions of dollars in taxes as a result of his acquisition of W&K's intellectual property, and (2) he and his companies were entitled to a tax refund for that amount. *See, e.g.*, P605, at DEF_00053965; P742, at DEF_01099814. The relevant acquisition purportedly occurred when Defendant secured "Consent

Judgments" against W&K in Australian court—the same consent judgments that Plaintiffs allege Defendant used to misappropriate their intellectual property assets. *See, e.g.*, P742, at DEF_01099813. Thus, the ATO's investigation concerned the validity of one of the *same transactions* that Plaintiffs challenge here.

As a result, many documents Plaintiffs use to support their claims were initially submitted by Defendant in connection with the ATO's investigation. For example, Defendant sought to bolster his tax claims—premised on his claim that he legitimately acquired over $50 million in intellectual property from W&K—with the purported contracts referenced in the Second Amended Complaint. *See, e.g.*, P605, at DEF_00053965. He also sought to support those claims by submitting to the ATO a "Deed of Loan," which included a handwritten annotation stating, "as agreed, all wallets to be held in UK in trust until all regulatory issues solved and Group Company formed with Dave K and CSW." P724, at DEFAUS_01758186.

Likewise, over the course of the ATO investigation, Defendant and his agents made several statements regarding his business relationship with Mr. Kleiman and W&K, including statements relating to the development of bitcoin, W&K's intellectual property, and bitcoin mining. *See* P123; P127; P143; P172; P173; P610. For example, in meetings with the ATO, Defendant admitted that he placed bitcoin Dave Kleiman mined in trusts with assets he now contends are solely his. P173, at DEFAUS_00560323. Defendant also told the ATO that he and Mr. Kleiman had 1.1 million bitcoin which was worth "[w]hen we were starting probably $20 million," but by "Dave's death, that had gone up to . . . $100 million." P172, at DEFAUS_00068675; *see also* P127, at DEF_00051770. Defendant also told the ATO that Mr. Kleiman put bitcoin into a trust to fund their joint research activities. P172, at DEFAUS_00068671. Defendant and his agents also described his relationship with Mr. Kleiman in terms of business partnership. P172, at

DEFAUS_00068669; P127, at DEF_00051770 (John Chesher: Defendant "then started up W&K Info Defense LLC (W&K) with Mr Dave Kleiman. W&K was an entity created for the purpose of mining Bitcoins.").

Because of the connection between the ATO's investigation and Plaintiffs' rights, Plaintiffs allege that Defendant expected that the ATO would contact them, and that Defendant knew that if Plaintiffs got the full story, they would likely pursue legal action against him. Based on this concern, Plaintiffs allege that Defendant (1) preemptively contacted the Kleiman family in February 2014 (almost a year after Mr. Kleiman's death), (2) told them that Mr. Kleiman helped create bitcoin but had agreed to exchange his fortune for shares in one of Defendant's companies, and (3) promised them shares in that company. DE [83] ¶¶ 14, 132–40. Nevertheless, as Plaintiffs allege, Defendant never provided *any* benefit to Plaintiffs. Instead, he engaged in a range of delay tactics—including blaming his inability to pay Plaintiffs on his ongoing dispute with the ATO— to string Plaintiffs along and prevent them from exercising their rights. *See id.* ¶ 149.

Defendant did not prevail in his dispute with the ATO. *See* P220; P320; P565; P604; P605; P607; P637; P724; P742; P795. Indeed, not only did the ATO find that Defendant was not entitled to the tax benefits that he had claimed in connection with his "acquisition" of W&K's intellectual property, *see* P605, at DEF_00053956, but the ATO also imposed a $1.9 million penalty on Defendant for making "false or misleading statements" to the Australian government, P220, at KLEIMAN_00398967; P565, at DEF_00029211; DE [547-6], at DEF_00002141. In fact, the ATO made specific findings about the legitimacy of the "Consent Judgments" that Defendant purportedly obtained against W&K, including that (1) there was no evidence that either Jamie Wilson or Defendant could have properly represented W&K in those proceedings and that (2) Defendant did not provide W&K with the $20M "bond" that Defendant claimed led to W&K's

debt. P742, at DEF_01099816–9818. The ATO carefully cataloged conflicting statements made by Defendant in the ATO audit process related to these issues. P637, at DEF_00067371–7385. Likewise, the ATO concluded that Defendant had submitted evidence that had "been proven to have been fabricated" to support his claim for tax benefits and that he had "manufactured" evidence "in an attempt to deceive" the Australian government. P795, at DEF_00057148.

## II.   Defendant renews the same challenges to the ATO Documents that the Court already rejected.

Following the Calendar Call, Defendant filed the instant Motion, which raises the same four types of challenges to the ATO Documents that he raised previously, focusing this time on his hearsay and Rule 403 challenges while asserting in passing that the ATO Documents cannot be authenticated, and, particularly in his Rule 403 argument, that they are irrelevant or only minimally relevant.

In the Motion, Defendant challenges 16 exhibits offered by Plaintiffs, placing them in four groups. Defendant challenges the "Transcriptions," which are transcripts made by Auscript Australasia Pty Limited from recordings of four interviews *of Defendant* by the ATO, at least three of which were provided to Defendant contemporaneously for any corrections; the "Notes" (P127), which are minutes of a meeting *with Defendant's agent* prepared by an ATO agent and provided to Defendant for any corrections he had; the "GAAR Submission" (P637), which is a report prepared by the ATO for Australia's General Anti-Avoidance Rules Panel about the ATO's findings on Defendant's conduct; and the "ATO Decision Exhibits" (P220, P320, P565, P604, P605, P607, P724, P742, P795), which contain the ATO's findings and decisions on the tax audits of Defendant's companies. All of the ATO Documents were produced by Defendant.[1] Defendant

---

[1] P220 uses Plaintiffs' bates stamps, but the same ATO document was produced by Defendant. *See* DE [547-6].

makes no attempt to identify any specific portions of the documents he seeks to exclude if other parts of the documents are admitted, instead *again* seeking wholesale exclusion of all of the ATO Documents.

## LEGAL STANDARDS

*Authentication*: When addressing the authentication of documents, the Eleventh Circuit has explained that "[a]uthentication or identification under rule 901 merely involves the process of presenting sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be." *United States v. Caldwell*, 776 F.2d 989, 1001–02 (11th Cir. 1985). Once that prima facie case is made, the evidence is admitted and authenticity is decided by the finder of fact. *Id.* at 1002.

*Hearsay*: Statements offered against an opposing party that would otherwise constitute hearsay are not hearsay if they are made "by the party in an individual or representative capacity," are ones "the party manifested that it adopted or believed to be true," are "made by a person whom the party authorized to make a statement on the subject," or are "made by the party's agent or employee on a matter within the scope of that relationship while it existed." Fed. R. Evid. 801(d)(2).

Even if a statement is hearsay, it is admissible under exceptions to the rule against admission of hearsay evidence if it "describ[es] or explain[s] an event or condition" and is "made while or immediately after a declarant perceived it" (Fed. R. Evid. 803(1)); if it is a "record or statement of a public office" that "sets out: (i) the office's activities; (ii) a matter observed while under a legal duty to report . . .; or (iii) in a civil case . . ., factual findings from a legally authorized investigation; and [] the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness" (Fed. R. Evid. 803(8)); or if it "is supported by

sufficient guarantees of trustworthiness—after considering the totality of the circumstances under which it was made and evidence, if any, corroborating the statement; and . . . is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts" so long as the "adverse party" has "reasonable notice of the intent to offer the statement" (Fed R. Evid. 807).

*Relevance*: "The standard of what constitutes relevant evidence is a low one: evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002) (quoting Fed. R. Evid. 401).

*Rule 403*: Courts "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Because it allows a trial court to exclude evidence that is probative, Rule 403 is 'an extraordinary remedy which should be used sparingly.'" *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1069 (11th Cir. 2014) (quoting *United States v. King*, 713 F.2d 627, 631 (11th Cir. 1983)).

## ARGUMENT

### I. The ATO Documents can be authenticated for purposes of admission.

Oddly, Defendant never actually claims any of the documents at issue are not authentic, instead relying on general assertions that Plaintiffs will not be able to authenticate them for admission purposes. *See, e.g.*, Motion at 2, 3, 8, 9, 11, 12 n.7, 14, 17. To the contrary, the ATO Documents can be authenticated on several independent bases more than sufficient to "make out a prima facie case that the proffered evidence is what it purports to be." *United States v. Lanzon*, 639 F.3d 1293, 1301 (11th Cir. 2011); *see United States v. Bereznak*, No. 20-1921, 2021 WL

2822183, at *2 (3d Cir. July 7, 2021) (discussing the "'slight'" burden of authentication for admissibility (quoting *United States v. Turner*, 718 F.3d 226, 232 (3d Cir. 2013))).

### A. The ATO Documents are presumed to be authentic based on their production by Defendant.

Here, all of the ATO Documents were produced by Defendant and so are presumptively authentic. *John Paul Mitchell Sys. v. Quality King Distribs., Inc.*, 106 F. Supp. 2d 462, 472 (S.D.N.Y. 2000); *Wells v. XPEDX*, No. 8:05-CV-2193-T-EAJ, 2007 WL 2696566, at *4 (M.D. Fla. Sept. 11, 2007) ("Documents produced during discovery are deemed authentic when offered by a party opponent." (internal citations and quotations omitted)).

### B. The ATO Documents can alternatively be authenticated as foreign public documents.

Federal Rule of Evidence 902(3) treats as authentic any document "the purports to be signed or attested by a person who is authorized by a foreign country's law to do so." While the rule generally calls for a final certification of authenticity, if "all parties have been given a reasonable opportunity to investigate the document's authenticity and accuracy," a court may "order that it be treated as presumptively authentic without final certification" if there is a showing of "good cause." Fed R. Evid. 902(3)(A); *see Raphaely Int'l, Inc. v. Waterman SS Corp.*, 972 F.2d 498, 503 (2d Cir. 1992).

Here, all of the ATO Documents satisfy the foreign public documents method of authentication. All the transcripts reflect the logo and cover sheet of Auscript as well as a statement that the documents were "transcribed but not recorded by Auscript Australasia Pty Limited," and the ATO used Auscript to transcribe the interviews. *See, e.g.*, P123, at DEFAUS_00115520. The Notes conclude with "Author's name: Jenifer Trinh" and the date of the document, and Ms. Trinh was an ATO employee involved in the audits of Defendant's companies. P127, at DES_00051779. The ATO Decision Exhibits and GAAR Submission have the ATO's official seal (e.g. P565), or

both an attestation from an authorized official and the agency's official seal (e.g. P220, P604, P637). The requirement that the documents purport "to be signed or attested by a person who is authorized by" Australia's law "to do so" is therefore satisfied. Again, Defendant is not actually denying the documents are authentic, despite the long time in which he could have done so, thereby providing further good cause to find the ATO Documents authenticated for admission purposes. *See Raphaely Int'l*, 972 F.2d at 503.

### C.  The ATO Documents can be authenticated as public records or statements.

Evidence may also be authenticated under Federal Rule of Evidence 901(b)(7)(B), if there is support for the proposition that "a purported public record or statement is from the office where items of this kind are kept." *See Whiting v. Boston Edison Co.*, No. 88-mc-2125, 1990 WL 150010, at *2 (D. Mass. Sept. 24, 1990) (document obtained from government authenticated under Rule 901(b)(7)); *Loque v. State Farm Fire & Cas. Co.*, No. 06-cv-2881, 2007 WL 2229287, at *1 (E.D. La. Aug. 1, 2007) (government report authenticated under Rule 901(b)(7)).

Here, the ATO re-produced to Defendant in response to a public records request for "transcripts and audio or video recordings" five documents, including two of the transcripts, and withheld other documents. *See* Ex. A. And all of the ATO Documents reflect that they came from the ATO based on the ATO official seal or otherwise. *See supra*, at 8. That the record contains emails transmitting many of these documents to Defendant or his agents, and that all of these documents came from Defendant and so were provided to him, further supports that the ATO Documents are "from the office where items of this kind are kept." Fed. R. Evid. 901(b)(7)(B).

### D.  Defendant's authentication arguments fail.

Perhaps Defendant intends to testify that that his own emails that he produced with the

ATO Documents as attachments are inauthentic.[2] To date, he has not provided such a sworn statement as one would expect in support of the instant Motion. Even if he does, as the Court observed in denying Defendant's Motion in Limine on this issue, "merely because Defendant 'denies' that transcripts 'accurately reflect the discussions in the meetings' does not support the proposition that the transcripts cannot be authenticated." DE [623], at 13.[3]

## II.   The ATO Documents are not hearsay or fall within exceptions to the hearsay rule.

Defendant makes a blanket assertion that all of the ATO Documents constitute inadmissible hearsay. In so arguing, though, he overlooks applicable exclusions from hearsay and exceptions to the hearsay rule, presumes the entire documents will be offered for the truth of the matters asserted rather than another purpose, and fails to identify specific portions of the documents to which he objects instead targeting the entirety of all the exhibits.

### A.  The Transcriptions are not inadmissible hearsay.

Defendant argues that all the Transcriptions are inadmissible hearsay. But the transcripts are of statements made by Defendant and his agents and, as such are party admissions and not hearsay. The others' statements in those transcripts are offered to provide context for Defendant's statements rather than for their truth.

Defendant cannot and largely does not contest that his statements and those of his agents in the Transcriptions are party admissions that are not hearsay if introduced by Plaintiffs. *See* Fed.

---

[2] *In re Guillet*, No. 05-10551, 2008 WL 304728, at *3 (Bankr. E.D. Tex. 2008), is therefore distinguishable, including because of the significant evidence about the authenticity of the "sources, authors [and] the content" of these documents.

[3] Defendant also argues that the Notes are not foreign public documents because he asserts they do not fall within the definition of a public document in the Hague Convention Abolishing the Requirement of Legalisation for Foreign Public Documents ("Hague Convention"). Motion at 8. The Hague Convention provides for an apostille process that can stand in for the "final certification" in Rule 902(3). *See Chem. v. Petroleum*, No. 10-23512-CIV, 2016 WL 5661629, at *5 n.3 (S.D. Fla. Sept. 30, 2016). But the Hague Convention does not purport to govern what is a foreign public document under Rule 901 generally.

R. Evid. 801(d)(2); DE [623], at 12 (recognizing that alleged party admissions are admissible). *But see* Motion at 2 (stating the Motion will show "the lack of merit to" Plaintiffs "claims that 1) 'any admission from [Dr.] Wright, or his representative that is contained in the ATO Evidence is not itself hearsay . . . .'" (alteration in original)).

Instead, Defendant focuses on an argument that the creation of a transcript of the interview recordings renders the Transcriptions inadmissible. But most cases discussing hearsay objections to transcripts take as a given that recording an admissible statement in a transcript does not make it inadmissible. *See United States v. Ross*, 33 F.3d 1507, 1514 n.9 (11th Cir. 1994) ("Appellant also maintains, without authority, that, even if the best evidence rule applies, the transcripts should have been excluded as inadmissible hearsay. However, the court did not abuse its discretion by concluding that the statements in the transcripts were made by either Appellant or his alleged coconspirators and thus were admissible as, respectively, admissions or coconspirator statements." (citations omitted)); *United States v. Johnson*, 820 F. App'x 927, 930 (11th Cir. 2020) (rejecting an argument that transcript of recorded conversation was hearsay based on co-conspirator statement hearsay exception, taking as given that the transcript did not create a layer of hearsay);.*United States v. Dadamuratov*, No. 5:08CR18/RS, 2008 WL 11438269, at *2 (N.D. Fla. Aug. 13, 2008) ("Defendant's first contention is that it is, as a matter of law, improper to admit a transcript into evidence when the recording on which the transcript is made has been destroyed is baseless."), *aff'd United States v. Dadamuratov*, 340 F. App'x 540, 547 (11th Cir. 2009) ("the statements in the transcript were admissions by Dadamuratov, a party-opponent, and thus were not hearsay when offered as evidence against him"). Under these cases, the Transcriptions are admissible.[4]

---

[4] The underlying logic of these cases may be that a transcriber acts as an agent for both parties. *Cf. United States v.*

The Transcriptions are also adopted party admissions under Rule 801(d)(2)(B) based on the ATO providing them to Defendant for his review and any corrections. The Court explained in denying the Motion in Limine on this issue that, contrary to Defendant's argument that there was no opportunity to comment on the transcripts, Plaintiffs had identified an email "in which a request was made to review the transcript and minutes and advise of 'any errors or omissions,' and Defendant himself noted a transcription error where the word 'chords' was used rather than 'cores.'" DE [623], at 13 (quoting DE [525-11]). Defendant ignores in the Motion that he had a chance to review at least three of the four transcripts (and probably all four). *See, e.g.*, P123, at DEFAUS_00115519; P143, at DEF_00053141; P127, at DEF_00051768; P220, at KLEIMAN_00398981; Ex. B (DEFAUS_00630971). That Defendant did not respond that his statements had been transcribed incorrectly, especially in the serious context of a tax audit where millions of dollars were at stake, shows that he was adopting the transcripts as reliable.

Even if they were hearsay, the Transcriptions would represent present sense impressions under Rule 803(1), relating to what the transcriber perceived the speakers to have spoken. Because Auscript listened to the tapes and wrote down the words, the transcripts are statements "describing or explaining an event"—the speakers' words—"made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1).[5]

---

*Alvarez*, 755 F.2d 830, 859–60 (11th Cir. 1985).

[5] Defendant argues that the Transcriptions cannot satisfy the present sense impression exception, citing *Ackerman v. Nawrocki*, No. 16-CV-00627-MEH, 2017 WL 2311201, at *2 (D. Colo. May 26, 2017), but the district court there focused on the lack of trustworthiness in the transcription, which appeared to lead the court to conclude that a present sense impression would only apply if the transcriber had seen the underlying events. Similarly, *United States v. Scrima*, 819 F.2d 996, 1000 (11th Cir. 1987), and *AAMCO Transmissions, Inc. v. Baker*, 591 F. Supp. 2d 788, 796 (E.D. Pa. 2008), are inapplicable because they are not about transcripts but about later retellings of earlier conversations distinct from the transcripts here. Meanwhile, Defendant's reliance on *Trustees of the University of Pennsylvania v. Lexington Insurance Co.*, 815 F.2d 890, 905 (3d Cir. 1987), is similarly misplaced as that case focused on the potential hearsay in underlying testimony in a transcript while it is clear here that Defendant's statements and those of his agents are non-hearsay party admissions.

Finally, the Transcriptions satisfy the requirements for the residual exception to the hearsay rule as there is no reason to suspect that the ATO did not accurately capture the statements made by Defendant and his agents. These are government-ordered transcripts, provided to Defendant upon his request, reviewed by him, and not challenged. Further supporting the accuracy of the transcripts, when the ATO reviewed two recordings against the transcripts in the context of Defendant's request for the recordings, the ATO was "satisfied that the contents of the interview recordings' transcripts accurately reflect the recordings themselves." Ex. A, at ATO_00000159. All together, the accuracy of the transcripts "is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence . . . corroborating the statement." Fed R. Evid. 807.[6]

Defendant's primary argument on hearsay for the Transcriptions appears to be that there are asserted transcription errors and missing identifications of speakers. But the Court rejected this argument in the context of the Motions in Limine. DE [623], at 13. Especially given Defendant's opportunity to review the transcripts, these sorts of issues do not make the Transcriptions inadmissible hearsay.[7]

### B. The Notes are not inadmissible hearsay.

The Notes are also not inadmissible hearsay. They convey the statements made by participants in the meeting. As with the Transcriptions, Defendant largely does not challenge that the statements by his agent, John Chesher, are party admissions. Instead, Defendant argues that the inclusion of Mr. Chesher's statements in the Notes forms a new layer of hearsay. But the detail

---

[6] Because the Transcriptions are admissible on several other bases, Defendant's arguments that the business or public records exceptions to the hearsay rule do not apply are beside the point. It is telling, though, that Defendant refers to his own statements to the ATO as "a collection of unreliable witness statements." Motion at 6.

[7] Defendant also broadly suggests that transcripts are inadmissible hearsay but the case he cites, *Sloat v. Hewlett Packard Enterprises Co.*, No. 3:18-CV-371, 2020 WL 6059867, at *14 (E.D. Tenn. Sept. 17, 2020), admitted the transcripts at issue.

of the Notes, and their instruction to "ensure an accurate and contemporaneous record is kept," suggest that they represent present sense impressions by their preparer, Jennifer Trinh, on what was said. P127, at DEF_00051769. There is therefore "sufficient evidence . . . to conclude that these notes were taken contemporaneously with" the interview they document such that they satisfy the "hearsay exception Rule 803(1)." *United States v. Perl*, 492 F. App'x 37, 40 (11th Cir. 2012).

The Notes are also admissible as adopted admissions. As with the Transcriptions, Defendant received and reviewed the Notes. P127, at DEF_00051768. Indeed, Defendant identified an immaterial transcription error in the Notes where ATO employee Jennifer Trinh had written "chords" when Mr. Chesher had likely said "cores." DE [547-11]. That there is no evidence Defendant wrote back to the ATO with any other change shows that he otherwise adopted the Notes as "an accurate reflection of the discussion." P127, at DEF_00051768.

The Notes also satisfy the residual hearsay exception. Defendant had a chance to comment on or correct the Notes. P127, at DEF_00051768 ("Could you please review these and advise of any errors or omissions."). The ATO called the Notes the "minutes of our meeting." *Id.* Defendant has identified no indicia of unreliability despite having had the Notes for more than seven years, having full notice of Plaintiffs' intent to rely on the Notes, and having challenged admissibility for the Notes already in the Motions in Limine.[8]

---

[8] None of these bases for admission existed in the cases Defendant cites. *O'Neal v. City of Hiram*, No. 4:19-CV-0177-TWT-WEJ, 2021 WL 1178075, at *14 (N.D. Ga. Feb. 19, 2021), *report and recommendation adopted*, No. 4:19-CV-177-TWT, 2021 WL 1171930 (N.D. Ga. Mar. 26, 2021), did not concern a verbatim account of a meeting or circumstances supporting adopted admissions. *O'Neal* also criticized the investigator's report as unreliable in various respects. *See id.* at *14 n.32; *see Maus v. Lesatz*, No. 17-CV-65-PP, 2020 WL 1158572, at *6 (E.D. Wis. Mar. 10, 2020) (same); *Thomas v. City of Cedar Park*, No. A-07-CA-002-LY, 2008 WL 11415902, at *4 (W.D. Tex. May 7, 2008), *report and recommendation adopted*, No. A-07-CA-002-LY, 2008 WL 11417090 (W.D. Tex. June 3, 2008) (same); *Wells v. Xpedx*, No. 8:05-CV-2193-T-EAJ, 2007 WL 9723786, at *1 (M.D. Fla. Aug. 22, 2007) (same). And the party seeking discovery of law enforcement notes in *United States v. Cartagena-Albaladejo*, 299 F. Supp. 3d 378, 387 (D.P.R. 2018), made "no argument regarding the purported admissibility of the testimony or documents." Also,

### C.  The ATO Decision Exhibits and GAAR Submission are not inadmissible hearsay.

The ATO Decision Exhibits and the GAAR Submission fall within both the public records and residual exceptions to the hearsay rule. As for the public records exception, as explained above, they are all "record[s] or statement[s] of a public office," the ATO. Fed. R. Evid. 803(8). They "set[] out: (i) the office's activities" in the investigations of potential tax evasion by Defendant's companies; (ii) matters that the ATO "observed while under a legal duty to report"; and (iii) "factual findings from [the] legally authorized investigation" of Defendant's companies. *Id.* Finally, Defendant has made no showing "that the source of information or other circumstances indicate a lack of trustworthiness." *Id.*[9]

To the extent that Defendant intends to argue the ATO Decision Exhibits or GAAR Submission are somehow incorrect or not credible, that is an issue for the jury and does not go to trustworthiness for purposes of the hearsay analysis. *Chem. v. Petroleum*, No. 10-23512-CIV, 2016 WL 5661629, at *8 (S.D. Fla. Sept. 30, 2016) ("With regard to trustworthiness, the focus of inquiry is on whether the method by which a report was prepared is reliable. Courts have distinguished this determination from a report's credibility, which can still be left to the fact finder, even upon a finding of reliability.").

---

as with the Transcriptions, because the Notes are admissible on several other bases, Defendant's arguments that the business or public records exceptions to the hearsay rule do not apply are beside the point.

[9] Defendant argues in a footnote that two of the ATO Decision Exhibits cannot satisfy the public records exception because their conclusions could have been changed. But these documents, sent to Defendant, satisfy the requirements for Rule 803(8). *See Mamani v. Berzain*, 309 F. Supp. 3d 1274, 1295 (S.D. Fla. 2018) (holding investigatory report by Bolivian prosecutors appointed by Bolivia's Chief Prosecutor to investigate events surrounding extrajudicial killings in Bolivia fell within scope of public records exception to hearsay rule, even though Bolivian government ultimately declined to adopt the report). These ATO Decision Exhibits, unlike the "Directives" in *New Jersey Turnpike Authority v. PPG Industries, Inc.*, 197 F.3d 96, 110 (3d Cir. 1999), reflect the ATO's factual findings following significant engagement with Defendant and his agents, not "a form of notice pleading." *Id.* Defendant also argues that one ATO Decision Exhibit contains legal conclusions. But he does not identify the portions of the exhibit to which he objects and the case he cites, *Hines v. Brandon Steel Decks, Inc.*, 886 F.2d 299, 302 (11th Cir. 1989), makes clear the breadth of conclusions that are properly admissible as part of the public records hearsay exception. No ATO Document is being admitted for a legal conclusion.

The ATO Decision Exhibits and GAAR Submission also satisfy the residual exception to the hearsay rule because they are "supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances" and are "more probative on the" issues discussed above as to their findings "than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807.

Defendant asserts that the ATO Decision Exhibits are inadmissible "because they are replete with embedded hearsay." Motion at 12. But the few examples he points to are unavailing:

- Defendant challenges a finding by AusIndustry, but that constitutes a public record as well given that AusIndustry is part of an Australian government agency statutorily empowered to undertake the investigation and reach the findings that it did. *See* P320 ¶ 44; P607 ¶ 42.

- Defendant challenges references to ATO audits and rulings given to others of his related Australian entities, but the ATO's findings about all of his related entities are admissible. P320 ¶ 137; P607 ¶ 135.

- Defendant objects to references to the Australian consent judgment documents, but those references are admissible based on the public, official nature of those documents and the fact that they were referenced in a document relied on by Defendant in the ATO audits. P742 ¶ 36–38.

- Defendant challenges references to expert reports that he commissioned, which would be admissible under Federal Rule of Evidence 801(d)(2)(C) and (D) because Defendant authorized the expert to make the statement including by providing the reports to the ATO and the expert was the Defendant's "agent or employee on a matter within the scope of that relationship and while it existed."

- Plaintiffs do not currently anticipate highlighting the limited portions of P604, P795, P565, and P320 discussing statements by the Rees family or information provided by Hewlett-Packard and Silicon Graphics Pty Ltd to the ATO. The discussion of these statements is limited to just a few paragraphs in only some of the Decision Exhibits. Even the limited paragraphs identified by Defendant are only partially based on this information. *See, e.g.*, P795 ¶ 267 (mostly based on internal inconsistencies in Defendant's statements and the ATO's investigation). And this information is admissible for its effect on the ATO in reaching its conclusions.

Defendant also objects to and enumerates the number of "unattached exhibits" to the ATO Decision Exhibits. Motion at 12. But he has not identified, and Plaintiffs have not found, any case requiring documents falling within the public records or residual exceptions to the hearsay rule to

attach all the documents it could be construed to reference. And Defendant contends that the ATO Decision Exhibits contain inadmissible assessments of Defendant's credibility. But, contrary to Defendant's argument, credibility determinations may be central to the factual findings underlying admissibility under Rule 803(8)(A)(iii). *See Osterneck v. E.T. Barwick Indus., Inc.*, 106 F.R.D. 327, 334 (N.D. Ga. 1984) ("The Committee explicitly states that it did not make any credibility determinations. Thus, the Report does not appear to be the type of "evaluative" report contemplated by Rule 803(8)[(A)(iii)].").

Defendant argues that the GAAR Submission is also inadmissible because it "purports to contain and reflect statements that third parties . . . made to the ATO" and "extensive summaries of underlying documents, including unattached court files." Motion at 11. Setting aside Defendant's hyperbolic language compared to the few limited examples he identifies, the GAAR Submission reflects the ATO's "own observations and knowledge" constituting "factual findings that are based upon the knowledge or observations of the preparer of the report" rather than the mere "collection of statements from a witness" in *Mamani v. Sanchez Bustamante*, 968 F.3d 1216, 1241– 42 (11th Cir. 2020) (internal quotation marks and citations omitted). *Accord Lockwood v. McMillan*, 237 F. Supp. 3d 840, 850 (S.D. Ind. 2017); *Doe v. City of Miami Gardens*, 389 F. Supp. 3d 1118, 1124 (S.D. Fla. 2019); *Stolarczyk ex rel. Est. of Stolarczyk v. Senator Int'l Freight Forwarding, LLC*, 376 F. Supp. 2d 834, 839 (N.D. Ill. 2005); *Lewis v. Velez*, 149 F.R.D. 474, 487 (S.D.N.Y. 1993). As *Wetherill v. University of Chicago*, 518 F. Supp. 1387, 1390 (N.D. Ill. 1981), recognizes, "'[f]actual findings' as used in Rule 803[(a)(iii)] has been and should be given an expansive reading." Defendant does not even argue here that the ATO merely provided "an assessment and discussion of the literature relating to" tax evasion "coupled with the personal opinions of the members of the" ATO. *Id.*; *Bland v. Browner*, No. 97 C 2017, 1998 WL 111681, at *2 (N.D. Ill. Mar. 12, 1998)

(highlighting the extremely limited nature of the findings assessed in *Wetherill*).

Defendant's objections to the Australian consent judgment documents (the "unattached court files") are frivolous given the official and public nature of those documents and Defendant's involvement in the consent judgment scheme. *Compare Kibler v. G.M.C.*, No. C94-1494R, 1996 WL 767417, at *2 (W.D. Wash. July 9, 1996) (involving documents to be relied on for their truth and observing that the "inability to . . . examine the underlying documents forming the basis for the" report created "a lack of trustworthiness with respect to the report," while here Defendant had every opportunity to affect the ATO's conclusions and can readily examine the underlying documents and in fact provided them to the ATO). And statements by third parties, along with providing context for Defendant's statements, are admissible as non-hearsay for their effect on the ATO in reaching its findings. *Compare Lewis v. Velez*, 149 F.R.D. 474, 489 (S.D.N.Y. 1993), *with Papyrus Tech. Corp. v. New York Stock Exch., LLC*, 653 F. Supp. 2d 402, 411 (S.D.N.Y. 2009), *aff'd*, 396 F. App'x 702 (Fed. Cir. 2010) (holding *Lewis* did not apply because the court there "determined that a prison official's investigative report . . . did not adequately evaluate or filter the incorporated hearsay statements from correction officers"). In any event, neither argument is a reason to exclude the full GAAR Submission.

Defendant attempts to distinguish the GAAR Submission from the ATO Decision Exhibits by suggesting that its phrasing as seeking legal guidance from the GAAR means it is not a public record, relying on *Smith v. Isuzu Motors Ltd.*, 137 F.3d 859, 862 (5th Cir. 1998). But the GAAR Submission, an official report from the ATO to the GAAR, is different from the report prepared by a staff member and disavowed by his agency in *Isuzu.* The Fifth Circuit later distinguished *Isuzu* on this exact point, explaining that it set out "a narrow restriction to 803(8)(iii)" that "when an agency disavows ('declines to accept') a report prepared by a staff member, that report does not

qualify for the 803(8)(iii) exclusion. Conversely, if the agency takes no action, then a report prepared by a staff member in the ordinary course of duty and circulated outside the agency is exactly the sort of "factual findings from a legally authorized investigation" that 803(8)(iii) is designed to exclude from the prohibition on hearsay." *United States v. Gluk*, 831 F.3d 608, 613 (5th Cir. 2016). That fact pattern matches the GAAR Submission, which reflects factual findings from a legally authorized ATO investigation circulated outside the ATO. Indeed, the GAAR Submission would still be admissible as a public record even if it had later been withdrawn, which it was not. *See Mamani*, 309 F. Supp. 3d at 1295. [10]

### III.   Defendant's blanket Rule 403 challenge fails.

The Court has previously rejected Defendant's blanket Rule 402 challenged to evidence related to the ATO. The Court held that it was "unconvinced that ATO materials—again, in the abstract—are so prejudicial, confusing, or misleading that Rule 403 should bar their admission." DE [623], at 11. Defendant has presented no new detail to change this conclusion. As explained above, Rule 403 is "'an extraordinary remedy which should be used sparingly.'" *Aycock*, 769 F.3d at 1069 (quoting *King*, 713 F.2d at 631). "Accordingly, the balance should be struck in favor of admissibility." *Id.* (citing *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011)).

The ATO Documents are key to the jury's understanding of Defendant's alleged scheme with respect to his partnership with Dave Kleiman, his fraudulent contracts with W&K, his self-dealing in the Australian consent judgment proceedings, and more. *See supra*, at 2–5; *United States v. Battle*, 473 F. Supp. 2d 1185, 1198-99 (S.D. Fla. 2006) (rejecting Rule 403 exclusion argument where the evidence "gives the jury the necessary context for understanding the full evolution and

---

[10] Again, because of the other bases for admitting the ATO Decision Exhibits and GAAR Submission, Defendant's arguments about the business records exception and whether these documents reflect the required certificate of authenticity are beside the point.

extent of" the defendant's schemes).

Defendant contends that the Transcriptions and Notes are largely irrelevant or will be cumulative of his testimony in court. Motion at 14–15. But he does not deny that these exhibits contain relevant information (including that identified in the Background section) and identifies no risk that the jury will be confused or that Plaintiffs will offer evidence cumulatively.

Defendant makes two arguments for excluding the GAAR Submission and ATO Decision Exhibits under Rule 403: (1) that the jury will give them undue weight because they are issued by an Australian government agency; and (2) the adverse credibility determinations in the documents will unfairly influence the jury. Neither argument is a basis to exclude the exhibits. As to the first issue, the Court will likely tell the jury from the outset that they are the factfinders at trial. *See* 11th Cir. Pattern Jury Instruction 1.1. If a limiting instruction is warranted, the Court can provide one.

As to the issue of Defendant's credibility, Plaintiffs do not intend to admit the ATO Decision Exhibits and GAAR Submission for any bare credibility determinations. Defendant has identified only two purported examples of such determinations, neither of which he accurately describes. When the documents set out Defendant's conflicting statements or explain the impossibility of his contentions, the documents are highly probative, and that probative value is not substantially outweighed by unfair prejudice. The cases Defendant cites are not to the contrary. *See Cambra v. Rest. Sch.*, No. CIV.A.04-2688, 2005 WL 2886220, at *5 (E.D. Pa. Nov. 2, 2005) (excluding bare credibility determination); *Randle v. Tregre*, 147 F. Supp. 3d 581, 599 (E.D. La. 2015), *aff'd*, 670 F. App'x 285 (5th Cir. 2016) (same); *Klein v. Vanek*, 86 F. Supp. 2d 812, 820 (N.D. Ill. 2000) (excluding credibility determination "based on incomplete evidence," reached without conducting "face to face" interviews, and relying on an unsupported assumption).

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion as to the ATO Documents should be denied.

Dated:  October 6, 2021

Respectfully submitted,

By: */s/ Andrew S. Brenner*
Andrew S. Brenner, Esq.
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd Street, Suite 2800
Miami, Florida 33131
abrenner@bsfllp.com

Velvel (Devin) Freedman, Esq.
**ROCHE FREEDMAN LLP**
200 S. Biscayne Blvd.
Suite 5500 Miami, Florida 33131
vel@rcfllp.com

Kyle W. Roche, Esq.
Joseph M. Delich
**ROCHE FREEDMAN LLP**
99 Park Avenue, 19th Floor
New York, New York 10016
kyle@rcfllp.com
jdelich@rcfllp.com

*Counsel to Plaintiffs Ira Kleiman as*
*Personal Representative of the Estate of*
*David Kleiman and W&K Info Defense*
*Research, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 6, 2021, a true and correct copy of the foregoing

was filed with CM/ECF, which caused a copy to be served on all counsel of record.

*/s/ Andrew S. Brenner*
ANDREW S. BRENNER