UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC

    plaintiffs,
v.                                                                                            **Case No. 9:18-cv-80176 (BB/BR)**

CRAIG WRIGHT,

    defendant.
_____/

**DR. CRAIG WRIGHT'S REPLY IN SUPPORT OF HIS MOTION TO INTRODUCE
DAVE KLEIMAN'S ELECTRONIC DATA STORAGE DEVICES AT TRIAL**

## I.     INTRODUCTION

Plaintiffs concede[1] in their Opposition that Fed. R. Civ. P. 45 permits the Court to enforce Dr. Wright's trial subpoena requiring plaintiffs to bring to trial the fifteen electronic devices that were in Dave Kleiman's possession at the time of his death (the "Electronic Devices"). Plaintiffs also concede, contrary to what they've argued since the beginning of this case, that the Electronic Devices contain no confidential or personal materials. Instead, plaintiffs now claim it would be "unduly burdensome" for them to bring the Electronic Devices to trial because Ira Kleiman might be injured if the devices were stolen in transport, and that they are irrelevant and unduly prejudicial.

Plaintiffs' claims of undue burden are pretextual. If Ira Kleiman really were concerned, he would be storing the devices in a bank vault, not in a backpack at his home. Ira Kleiman Depo. Tr. Apr. 8, 2019, p. 92–93 D.E. 488-14.

As for relevance and undue prejudice, the Electronic Devices are highly relevant because they make it less likely that Dr. Wright stole any bitcoin from Dave Kleiman. *See* Defendant's Motion to Introduce Dave Kleiman's Electronic Devices at 4–5, D.E. 699 [Mot.]. Plaintiffs also have failed to show how introducing the Electronic Devices would be "unduly prejudicial." They are not blood splatter, weapons, illegal substances, or anything that would inflame the jury or arouse its sympathies.

Photographs or exemplars of the Electronic Devices are not an adequate substitute for the evidence itself—especially in a case where plaintiffs intend to argue that anything which benefits Dr. Wright is "forged or manipulated." Plaintiffs' Opposition to Defendant's Motion to Exclude

---

[1] "[A]rguments that could have been presented in opposition to the original motion but were not, are waived." *First Fla. Bank v. Fed. Deposit Ins. Corp. for First Integrity Bank, N.A.*, 2009 WL 10670071, at *1 (M.D. Fla. 2009).

Character Evidence at 7–8, D.E. 704 [Opp.]. Plaintiffs state in their Opposition that they promise not to "object on authenticity grounds if Wright seeks to introduce as evidence photographs of the Devices taken by Plaintiffs." *See* Opp. at 3 n.1, D.E. 705. Regardless, the jury surely would wonder where the original devices are, and whether the photographs of the devices are genuine. Being limited to photographs of the Electronic Devices would also preclude Dr. Wright from showing the jury their unique characteristics,[2] and using exemplars could lead to mistaken witness testimony and further jury confusion. Mot. at 8.

Rule 45 clearly obligates Ira Kleiman to bring the Electronic Devices at trial. Consistent with those obligations, the Electronic Devices should be in the courthouse, for use before the jury, on day one. This will permit Dr. Wright to properly defend himself against the billion-dollar claims launched against him.

## II. ARGUMENT

### A. Plaintiffs Have Failed to Identify Any Undue Burden That Would Justify Quashing Dr. Wright's Valid Trial Subpoena

In their Opposition, plaintiffs concede that they are not concerned about the safety or confidentiality of the Electronic Devices' contents. Instead, they now claim it would be "unduly burdensome" for plaintiffs to comply with the subpoena to bring the Electronic Devices to trial because Ira Kleiman might be "robbed or worse, in transporting the Devices." Opp. at 3. To support that argument, plaintiffs cite the purported concerns of a confidential witness. *Id.*

---

[2] For example, a few of the Electronic Devices, are "[e]ncased in a military-style aluminum housing that's waterproof to 200 meters" and "[p]rotected from vibration or impact damage through the use of a molded shock damping collar." *See* CORSAIR, https://www.corsair.com/us/en/Categories/Products/Storage/USB-Drives/flash-survivor-stealth-config/p/CMFSS3B-1TB (last visited Oct. 12, 2021); NEWEGG, https://www.newegg.com/corsair-model-cmfss3b-128gb/p/N82E16820233806 (last visited Oct. 12, 2021).

However, plaintiffs neglect a key distinction. *Ira Kleiman is the plaintiff in this case, and he is suing Dr. Wright for billions of dollars*. The confidential witness is a non-party who has no interest in the outcome of the case.

It is Ira Kleiman who (1) alleges in his complaint that Dave Kleiman "min[ed] a substantial amount of bitcoin through the use of computer equipment located within this District," (2) tried to sell the Electronic Devices to a venture capitalist because they "*may hold over 300,000 BTC,*" and (3) also alleges that Dr. Wright stole Dave Kleiman's bitcoin. *See* 2nd Am. Compl. at ¶ 5, D.E. 83; June 23, 2016, email from Ira Kleiman, D.E. 699-5. For that reason, Ira Kleiman has placed these Electronic Devices directly at issue and must comply with the subpoena so they may be introduced at trial. It is beyond inequitable for Ira Kleiman to sue Dr. Wright for purported theft—but then refuse to bring to trial—critical evidence that could exonerate Dr. Wright—because he purportedly is "afraid" to bring the evidence to trial.[3]

Ira Kleiman's purported "fear" is a mere pretext[4] to deprive Dr. Wright of critical trial evidence. Ira Kleiman already has testified, under oath, that he stores the Electronic Devices in a backpack at his home—and not a secure offsite location, such as a safe deposit box.

> Q: Are the [Electronic Devices] in a backpack or safety deposit box?
> A: In a back pack.
> Q: So you never put them in a safety deposit box?

---

[3] For this reason, the two cases that plaintiffs cite are inapplicable. In *Staley v. U.S. Bank, N.A.*, the burden would have been imposed on a third-party witness, and in *Doe v. MacLeod*, the burden would have been imposed on an entire prison population, who would have been at risk of catching Covid-19. *Staley v. U.S. Bank, N.A.*, 2013 WL 393325, at *1-2 (D. Idaho 2013); *Doe v. MacLeod*, 2020 WL 2039214, at *3-4 (C.D. Ill. 2020). Further, in both cases, there was a legitimate health risk. In *Staley,* an oncologist said the non-party witness could not attend trial because of legitimate health concerns, and in *MacLeod,* the Covid pandemic had just begun, was spreading rapidly and killing thousands of people. As will be further demonstrated below, Ira Kleiman's "concerns" are speculative and pretextual.

[4] Even if Ira Kleiman's concerns were legitimate (which has not been demonstrated), he would face no more risk than Dr. Wright—who Ira Kleiman insists must travel from the U.K. to testify personally in Miami—and who Ira Kleiman claims controls bitcoin worth billions of dollars.

3

> A: I was thinking about them [sic] putting them in a save [sic] deposit. Then I decided to keep them where I found them.

*See* Ira Kleiman Depo. Tr. April 8, 2019, p. 92–93, D.E. 488-14. As such, it is hard to fathom what additional risk Ira Kleiman would be taking in transporting the devices to trial. But even if there were, *Rule 45 does not require him to personally bring the devices to Court*. Fed. R. Civ. P. 45(d)(2)(A) ("A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection. . . ."). There are several means by which the Electronic Devices can be secured at the courthouse without putting Ira Kleiman at "risk" or even involving him in the transport. The Electronic Devices can be brought to the courthouse via armored car at an undisclosed time—and they can be stored there overnight in a secure location.

Further, Ira Kleiman ignores the fact that it also has been widely publicized that any bitcoin on the Electronic Devices either were destroyed when he deleted and overwrote Dave Kleiman's data, or were encrypted beyond decryption by Dave Kleiman. *See* Ira Kleiman Depo. Tr., Jan. 10, 2020, 45:21-46:17, 50:22-51:2 D.E. 488-13; Kimon Andreou Depo. Tr. Dec. 3, 2019, D.E. 488-3. As such, there is little risk of any theft of the Electronic Devices.

### B. Dave Kleiman's Electronic Devices are Relevant

Plaintiffs next argue that Fed. R. Evid. 104(b) makes the Electronic Devices irrelevant and thus inadmissible. According to plaintiffs, "the Devices are only relevant if they were, in fact, used by Dave Kleiman to store private keys for bitcoin owned by his partnership with Wright . . . and there is [no] non-speculative evidence to support that fact." Opp. at 5. This is plainly incorrect. The existence of bitcoin on those devices need not be "proven" under Rule 104(b) to make them relevant.

Contrary to plaintiffs' assertions, Rule 104(b) does not require that only highly probative direct evidence may be introduced—if it did, circumstantial evidence would never be admissible. *E.g.*, *United States v. Maravilla*, 907 F.2d 216, 222 (1st Cir. 1990) ("[T]he government is perfectly free to introduce weak, as well as strong, evidence."). Unsurprisingly, courts have found that "[e]vidence that defendant had thrown into a fire a piece of iron which could have been used to commit the murder with which he was charged was admissible even 'without direct proof that the particular instrument was in fact the one used,'" as was "[e]vidence that [the] knife belonging to the defendant had been found about a block from where he lived … even [with] no direct evidence that the knife had been used to commit the murders." *Id.* (citations omitted).

Rule 104(b) applies only "when the relevance of evidence depends on whether a fact exists." *See* Fed. R. Evid. 104(b). For example, in the cases cited by *Maravilla*, Rule 104(b) would have required the prosecutor to present some evidence that that the murder victim was killed with a blunt object (as opposed to a gunshot). If the victim had been shot, the fact that a suspect tossed a piece of iron into a fire would have been irrelevant. The method of death would have been the "conditional fact," and whether the defendant used the piece of iron to murder the victim for the jury to decide.[5]

---

[5] All the cases plaintiffs cite support this proposition: that the conditional fact—"A"—must exist for the disputed evidence—"B"—to be relevant. *E.g.*, *Goodwin v. Richland Cty., Ohio*, 832 F. App'x 354, 358 (6th Cir. 2020) (Whether police followed "suicide by cop" protocols was only relevant if there was in fact a such a suicide.); *Nassar v. Jackson*, 779 F.3d 547, 553 (8th Cir. 2015) (Post-contractual damages are only relevant if the contract would have actually been renewed.); *Tate v. Robbins & Myers, Inc.*, 790 F.2d 10, 12 (1st Cir. 1986) (Duty to warn theory was only relevant if defendants knew that plaintiff purchased hoist.); *Moreno v. City of Los Angeles*, 2008 WL 11338274, at *2 (C.D. Cal. 2008) (Destruction of evidence was only relevant if evidence was destroyed after Defendant was on notice that the evidence was relevant.). Here, the "A" is that the devices are capable of storing bitcoin, and the inference for the jury is that they do contain bitcoin ("the B"). Dr. Wright need not prove the "B" for the devices to be relevant.

Here, it is up to the jury to decide if any allegedly stolen bitcoin remain on Dave Kleiman's Electronic Devices in encrypted form, or alternatively, if Ira Kleiman destroyed them by overwriting the devices. The only "conditional facts" that Dr. Wright might have to demonstrate under Rule 104(b) is that the Electronic Devices belonged to Dave Kleiman, that he had access to them, and that they could be used to store bitcoin private keys. Each of these conditional facts already have been established through Ira Kleiman's interrogatory responses and plaintiffs' own complaint.[6]

Having disposed of plaintiffs' Rule 104(b) theory, Dr. Wright turns to the actual inquiry, whether Dave Kleiman's Electronic Devices are relevant. They plainly are. "A brick is not a wall." *United States v. Sloan*, 65 F.3d 152, 154 (10th Cir. 1995) (citation and internal quotations omitted). "An item of evidence, being but a single link in the chain of proof, need not prove conclusively the proposition for which it is offered. . . . It is enough if the item could reasonably show that a fact is slightly more probable than it would appear without that evidence." *Id.*

Plaintiffs allege that "*David Kleiman mined bitcoin in this District*." *See* 2nd Am. Compl. ¶¶ 2, 5, Jan. 14, 2019, D.E. 83. This is the basis of their claim. When one mines bitcoin, one

---

[6] Pls.' Resp. to Def.'s Interrogatories. 2–3, March 21, 2019, ECF No. 699-2 (identifying Dave Kleiman's devices owned or possessed at the time of his death); Second Am. Compl. ¶ 21, Jan. 14, 2019, ECF 83 ("[W]allets are separate computer files dedicated to storing information about specific bitcoins."). Thus, this case is unlike the cases plaintiffs cite, where proponents failed to put on any evidence from which a jury could find that the conditional fact existed by a preponderance of the evidence. *E.g.*, *Moreno*, 2008 WL 11338274, at *2 ("Plaintiff presents no evidence that relevant evidence was destroyed."); *Goodwin*, 832 F. App'x at 358 ("The plaintiff presented no evidence to support [its] proposition."); *Nassar*, 779 F.3d at 553 (failure to provide even "some evidence that the contract would have been renewed but for the denial of due process"); *Tate*, 790 F.2d at 12 (Evidence to support conditional fact was insufficient where witness had no recollection.); *White v. McKinley*, 2009 WL 813001, at *13 (W.D. Mo. 2009), *aff'd*, 605 F.3d 525 (8th Cir. 2010) ("Detective McKinley offered, and still offers, no actual evidence….").

generates private keys that typically are stored on electronic devices.[7] As a computer professional, Dave Kleiman almost certainly would have stored any such private keys on his Electronic Devices, which were found with him in this district. This is corroborated by the testimony of Dave Kleiman's business partner, Patrick Paige, and his close friend, Kimon Andreou:

> **Q:** Can you describe that thumb drive?
> **A:** He had – it was a Corsair silver in color sort of indestructible thumb drive. It was round. Screwed in top.
> **Q:** Did he have that on him frequently?
> **A:** He never went anywhere without it.
> **Q:** Do you know what he kept on that thumb drive?
> **A:** I never saw the contents of it.
> **Q:** Based on knowing Dave would you believe that whatever was on that thumb drive was important to Dave?
> **A:** Yes, absolutely.

Patrick Page Depo. Tr. Dec. 10, 2019, p. 20–21;

> **Q:** The thumb drive, what did he keep on that?
> **A: That's where he had passwords and other things on there.** I don't know. I never got to see it. It was just – he really protected that.
> **Q:** You said that he protected the thumb drive. What do you mean by that?
> **A:** He would not let anyone see what he was typing to access it nor what was on it. At least he never let me.
> **Q:** Did he ever talk about it?
> **A:** Nope.
> **Q:** Did he always keep it on him?
> **A:** Yes.
> **Q:** Where?
> **A:** I want to say it was with his keys and backpack.
> **Q:** The backpack was always in the hospital room with him?
> **A:** Yes, never left his sight.
> **Q:** The thumb drive was encrypted?
> **A:** Yes I believe so. From what he told me it was encrypted. That was where he

---

[7] According to plaintiffs' complaint, "Wallets are separate computer files dedicated to storing information about specific bitcoins. Each wallet is also assigned a "private Key." Second Am. Compl. ¶¶ 2, 5, Jan. 14, 2019, ECF 83.

> had his personal – his secure – whenever he wanted something secure he would access that drive.

Kimon Andreou Depo. Tr. Dec. 3, 2019, p. 49–53, (emphasis added). For that reason, the mere existence of the Electronic Devices helps establish that Dr. Wright never stole Dave Kleiman's alleged bitcoin.[8]

If that weren't enough, long after Ira Kleiman "discovered" Dr. Wright's alleged fraud, cut ties with Dr. Wright,[9] and retained counsel,[10] *Ira Kleiman still tried selling Dave Kleiman's Electronic Devices and represented to the potential purchaser that it was "computer equipment that may hold over 300,000 BTC."* [11] *See* June 23, 2016, email from Ira Kleiman, D.E. 699-5. Ira Kleiman cannot now plausibly contend that there is no basis to believe the Electronic Devices contain the allegedly stolen bitcoin.

Finally, even if the existence of bitcoin on the devices were a conditional fact that needed to be proven under Rule 104(b)—to be clear, it isn't—the preliminary 104(b) finding by the Court requires a less exacting standard than the one the jury must apply at trial. *Handley v. United States*, 2020 WL 4692388, at *7 (N.D. Ala. 2020). Under Rule 104(b), "the trial court neither weighs credibility nor makes a finding that the [proponent of the evidence] proved the

---

[8] It is undisputed that Dr. Wright never has had access to the Electronic Devices. Hence, he could not have stolen any bitcoin stored on them.
[9] According to plaintiffs' complaint, Dr. Wright and Ira Kleiman "essentially stopped" communicating on October 9, 2015. 2nd Am. Compl. ¶ 150, Jan. 14, 2019, D.E. 83.
[10] Per the plaintiffs' privilege log, Ira Kleiman first retained counsel on February 25, 2014, to pursue a claim against Dr. Wright and had 83 privileged or work-product communications by June 2016, when he attempted to sell the Electronic Devices. *See* D193 (Plaintiffs' Privilege Log).
[11] Ira Kleiman's attempted sale of the Electronic Devices forecloses any argument that "the only reason Ira has mentioned the Devices might contain the keys is because Wright told him so while defrauding him." Opp. at 5. Ira Kleiman attempted to sell the devices on his own volition, for his own personal gain, and admitted that "the funds [he] hope[d] to raise from the sale of his equipment will help pay for a lawsuit against Craig." *Id.* Ira Kleiman either believes the Electronic Devices contain bitcoin, or was intentionally trying to defraud the venture capitalist.

conditional fact by a preponderance of the evidence." *Huddleston v. United States*, 485 U.S. 681, 690 (1988). The Court need only find that "a reasonable jury could make the requisite factual determination based on the evidence before it." *Handley*, 2020 WL 4692388, at *7. Given this low standard, at this juncture, Dr. Wright has made a sufficient showing that the Electronic Devices contain Dave Kleiman's bitcoin.[12]

### C. Plaintiffs Have Not Demonstrated Any Undue Prejudice

Plaintiffs argue in their Opposition that the Electronic Devices are "unduly prejudicial," and accuse Dr. Wright of having "predictably chosen the most unfairly prejudicial way to make his point that Dave Kleiman owned encrypted devices: bringing the impressive-looking Devices to trial, where his attorneys will presumably demonstrate and discuss the Device's sophisticated features." Opp. at 8. Plaintiffs' overblown rhetoric misses the point. "*Relevant evidence is inherently prejudicial*; but it is only Unfair prejudice, Substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979) (emphasis added);[13] *accord United States v. Candelaria-Silva*, 162 F.3d 698, 705 (1st Cir. 1998) (The evidence in question "must not only be prejudicial, but be unfairly prejudicial, and not only outweigh relevance but substantially outweigh relevance."). Plaintiffs have utterly failed to articulate why the Electronic Devices are unduly prejudicial.

---

[12] In the alternative, if the Court were to find that Dr. Wright has not provided sufficient evidence from which a reasonable inference can be drawn to establish the purported conditional fact that the Electronic Devices contain the allegedly stolen bitcoin, Dr. Wright requests that the court admit the evidence conditionally under Rule 104(b), and then allow the jurors to make the final determination of whether the predicate fact was established. *United States v. Puttick*, 288 F. App'x 242, 246 (6th Cir. 2008) ("It is permissible for the judge to make a preliminary determination as to [the existence of the conditional fact], admit the evidence conditionally under Rule 104(b), and then allow the jurors to be the final arbiters of whether [the conditional fact was established].").

[13] Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding on courts of the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

Evidence is unduly prejudicial if it appeals to the "jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case." *Sec. & Exch. Comm'n v. Ferrone*, 163 F. Supp. 3d 549, 556 (N.D. Ill. 2016). The Electronic Devices do nothing of the sort. They aren't blood splattered, prohibited by law, or used as a murder weapon.[14] They are inoffensive data storage devices, the likes of which can be found in office supply stores and purchased without restriction.

Plaintiffs also argue that the devices will "confus[e] the issues and wast[e] time." Opp. at 8. Once again, plaintiffs fail to articulate any basis for this assertion. To the contrary, the devices will streamline trial by ensuring that the jury views the actual Electronic Devices owned by Dave Kleiman without needing to explain that they are mere exemplars or representations of those devices. This also will ensure no erroneous or mistaken testimony as to what devices were Dave Kleiman's, which could occur with inexact exemplars. *See* Mot. at 4–5 ("Dr. Wright searched for exemplars, but could only find exact exemplars for about half of the devices.").

### III.    CONCLUSION

For all these good and sufficient reasons, Dr. Wright respectfully requests that the Court enforce the trial subpoena and compel plaintiffs to bring Dave Kleiman's Electronic Devices to trial.

---

[14] For this reason, every case plaintiffs cite is inapposite. In each, there was a real danger that the jury would decide the case on an emotional basis and not the evidence. In *Candelaria-Silva*, it was, among other things, a gun; in *De La Torre*, it was machine guns, revolvers and ammunition. *See United States v. Candelaria-Silva*, 162 F.3d 698, 705 (1st Cir. 1998); *United States v. De La Torre*, 634 F.2d 792, 795-96 (5th Cir. 1981). Further, with respect to *Ravich*, the challenged evidence included guns allegedly used for a bank robbery, and the court permitted the guns and ammunition to be shown at trial. *United States v. Ravich*, 421 F.2d 1196, 1203-05 (2d Cir. 1970).

Date: October 12, 2021                                Respectfully submitted,

By: s/ Andres Rivero
ANDRES RIVERO
Florida Bar No. 613819
AMANDA MCGOVERN
Florida Bar No. 964263
ZAHARAH MARKOE
Florida Bar No. 504734
SCHNEUR KASS
Florida Bar No. 100554

RIVERO MESTRE LLP
2525 Ponce de Leon Boulevard,
Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: amcgovern@riveromestre.com
Email: zmarkoe@riveromestre.com
Email: zkass@riveromestre.com
Email: receptionist@riveromestre.com

## CERTIFICATE OF SERVICE

I CERTIFY that on October 12, 2021, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

                                           */s/* Andres Rivero