UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC<br><br>    *Plaintiffs,*<br><br>v.<br><br>CRAIG WRIGHT<br><br>    *Defendant.* | CASE NO.: 9:18-cv-80176-BB |

**PLAINTIFFS' REPLY IN SUPPORT OF THE ADMISSIBILITY OF
THE DEMONSTRATIVE THEY INTEND TO USE IN OPENING**

Plaintiffs propose to use a basic timeline of the Defendant's own statements in their opening statement. Defendant has withdrawn most of his objections, and now challenges only three entries on the timeline derived from three distinct pieces of evidence.[1] All three entries are directly attributable to patently admissible evidence. More importantly, Plaintiffs have demonstrated a <u>good faith belief</u> that this evidence will be admitted, which is all that's necessary to allow Plaintiffs to reference it in their opening demonstrative.

**I.   Plaintiffs are Entitled to Refer to Anticipated Evidence in Opening Provided There is a Good Faith Belief in its Admissibility**

"Attorneys may comment on the evidence during their opening statements and closing arguments. Opening statements set out what the attorneys expect the evidence will show." *Julio Garcia, Iv v. Sec'y, Dep't of Corr.*, No. 8:17-CV-2374-TKK-MAAS, 2021 WL 1516070, at *14 (M.D. Fla. Apr. 16, 2021). Defendant's own authorities acknowledge that "lawyers are given leeway to state what they believe the evidence will show with the expectation that they will support

---

[1] Aug. 11, 2014: ATO Transcript, Trial Ex. P172 (DEF_00068665); Mar. 18, 2016: Mock Interview Transcripts, Trial Ex. P318 (DEF_00172509); June 30, 2016: Andrew O'Hagan's Deposition Testimony.

their statements with evidence later" during the trial. *Sabal Trail Transmission, LLC v. 18.27 Acres of Land in Levy Cty.*, No. 1:16-CV-93-MW/GRJ, 2019 WL 10375615, at *1 (N.D. Fla. Jan. 22, 2019), *aff'd*, 824 F. App'x 621 (11th Cir. 2020).

**II.  Andrew O'Hagan's Testimony is Admissible**

O'Hagan testified that Wright made the statements reported in the Satoshi Affair to him directly, and therefore his testimony reflects first-hand knowledge of statements by a party opponent. Nothing more is required to render his deposition testimony admissible. The authority cited by Dr. Wright is inapposite for two reasons.

*First*, all but one of Defendant's cases concerned hearsay statements reported in newspaper articles. *See United States v. Baker*, 432 F.3d 1189, 1211 (11th Cir. 2005) (statements not by party opponent); *Miller v. Tony & Susan Alamo Found.*, 924 F.2d 143,147 (8th Cir.1991) (same); *Dallas Cty. v. Com. Union Assur. Co.*, 286 F.2d 388, 391–92 (5th Cir. 1961) (same); *Moon v. Advanced Med. Optics, Inc.*,2010 WL 11509121, at *2 (N.D. Ga. 2010) (same); *Walker v. Werner Enter., Inc.*, 2008 WL 2816248, at *2 (M.D. Fla. 2008) (same).

*Second*, none of the authority cited by Defendant concerned the admissibility of deposition testimony from a reporter with first-hand knowledge of party opponent statements. *Nooner v. Norris*, 594 F.3d 592, 603 (8th Cir. 2010) (excluding article offered without deposition testimony); *Walker v. Werner Enter., Inc.*, 2008 WL 2816248, at *2 (M.D. Fla. 2008) (excluding reporter's testimony because he lacked first-hand knowledge of the party opponent statements).

While hearsay is still hearsay even when reported in a newspaper, non-hearsay statements by a party opponent are patently admissible. Because Plaintiffs' timeline does not depend on the

admission of any newspaper articles, bur rather deposition testimony, Wright's motion should be denied.[2]

### III. The ATO and Mock Interview Transcripts Are Admissible

Defendant objects that the two transcripts are inadmissible because they cannot be authenticated and violate the prohibition on hearsay. Defendant is wrong on both counts.

#### A. Plaintiffs' Have a Good Faith Belief the Transcripts Will Be Authenticated

Overcoming an authenticity objection is a low bar, as the federal rules only require Plaintiffs to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a); *see also United States v. Lanzon*, 639 F.3d 1293, 1301 (11th Cir.2011) ("The proponent need only present enough evidence to make out a prima facie case that the proffered evidence is what it purports to be."). Here, the bar is even lower, since Plaintiffs only need a good faith basis for believing the transcripts will be authenticated at trial. Plaintiffs can easily satisfy this standard for all three documents.

##### 1. Documents Produced By Defendant Are Presumptively Authentic

Because Defendant produced both transcripts in discovery, he "implicitly authenticated the documents." *John Paul Mitchell Sys. v. Quality King Distributors, Inc.*, 106 F. Supp. 2d 462, 472 (S.D.N.Y. 2000); *see also* DE [700], at 3 (collecting cases). Wright argues that Plaintiffs' authorities for this proposition are distinguishable as summary judgment decisions, but he never clearly articulates why this should matter.

---

[2] Defendant points also to "form" objections made at O'Hagan's deposition, but fails to elaborate on them. To the extent they are genuinely distinct objections, Wright's failure to meaningfully brief them should foreclose his ability to use them as a basis for hamstringing Plaintiffs' opening. *See, e.g., Sevi v. Israel Disc. Bank of New York*, No. 13-21922-CIV, 2015 WL 12533087, at *3 (S.D. Fla. May 29, 2015) ("The Court deems Defendant's failure to brief the issue, as the Court requested, an abandonment of the argument.").

On summary judgment, courts may only consider material that could "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c). The cases that Defendant attempts to distinguish determined that documents could be considered on summary judgment precisely because they were authenticated by the party opponent's production, which in turn rendered them likely to be admissible. *See, e.g.*, *Wells v. XPEDX*, 2007 WL 2696566, at *4 (M.D. Fa. Sept. 11, 2007) ("Documents produced during discovery are deemed authentic when offered by a party opponent. Moreover, the emails would likely be admissible at trial because they can be reduced to admissible form.") (internal quotations and citations omitted).

Even where courts stop short of ruling <u>every</u> document produced in discovery will be authenticated, a party's production of a document remains a highly significant factor in authenticity determinations. For instance, Defendant cites to a court's discovery protocol that provided a rebuttable presumption of authenticity for documents offered as deposition exhibits against the party that produced them. *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 2020 WL 6687777, at *9 (S.D. Fla. 2020).

### 2. Additional Factors Support Authentication of Both Transcripts

Even when mere production is insufficient for authentication, any additional supporting factor will be enough to tip the scales. Rule 901 provides a non-exhaustive list of evidence sufficient for authentication, including testimony by a witness with knowledge "that an item is what it is claimed to be," and the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b). Any circumstantial evidence that tends to corroborate a document's authenticity will usually suffice. *E.g.*, *Pohl v. MH Sub I, LLC*, 332 F.R.D. 713, 721 (N.D. Fla. 2019) ("[C]ourts generally hold that an affidavit of a witness, when viewed in combination with circumstantial indicia of authenticity (such as the existence of the URL, date of printing, or other identifying

information) would support a reasonable juror in the belief that the documents are what the proponent says they area.") (internal quotation marks and citation omitted); *In re Enron Corp. Sec., Derivative & "Erisa" Litig.*, No. CIV.A. H-01-3624, 2003 WL 23316646, at *2 (S.D. Tex. Mar. 27, 2003) ("In determining admissibility, the judge may consider circumstantial evidence, such as where the document is located, or indicia on the document providing evidence of authenticity.").

To try and frustrate Plaintiffs' ability to authenticate the transcripts, Defendant has denied the accuracy of the ATO Transcript, and even denied that the mock interview transcripts are transcripts at all. There are many reasons to doubt the truth of such self-serving representations from someone who has repeatedly perjured himself over the course of this litigation, but ultimately the Court's authenticity analysis does not hinge on assessing the veracity of Dr. Wright's assertions. "The ultimate responsibility for determining whether evidence is what its proponent says it is rests with the jury." *United States v. Barlow*, 568 F.3d 215, 220 (5th Cir. 2009); *United States v. Jimenez Lopez*, 873 F.2d 769, 772 (5th Cir. 1989). That said, there also additional factors beyond Wright's production of the transcripts to sufficiently authenticate them.

      a. There is Sufficient Evidence to Authenticate the Mock Interview Transcripts

The mock interview transcripts were sent to Defendant and his wife with the following message: "Craig and Ramona Please find attached notes and transcripts from the first two media training session to consider ahead of our next one." P318, DEF _00172509. Both attachments appear to be transcripts of interviews with an individual addressed as "Craig." P318, DEF _00172510, DEF _00172514; DEF _00172541.

In other words, the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances," Fed. R. Evid. 901(b)(7),

5

such as the Defendant's production of the documents in discovery, provide no shortage of evidence to support a finding that this is an authentic transcript of a mock interviews conducted with Defendant, no matter how vigorously Defendant denies it.

          b. There is Sufficient Evidence to Authenticate the ATO Transcript

The Court previously ruled that Plaintiffs can use email correspondence produced by Defendant to authenticate the ATO transcript. Order on MIL, DE [623], at 12-13. Defendant now advances almost identical arguments, yet never explains why the Court's findings are not still fatal to his objections now. Nor does Defendant bother to address the specific email correspondence (Trial Ex. P223, DEF_00052514) identified by the Court despite Plaintiffs' express reliance on that finding in their opening brief, DE [700], at 4-5, 7. This silence all but concedes that Defendant's emails with the ATO about corrections to the transcript are an additional factor that will be sufficient to authenticate it. *Cf. Korman*, 2009 WL 2195136, at *1 (S.D. Fla. Apr. 23, 2009) (failure to address merits of opposing arguments "may constitute an abandonment of the issues").

          3. The ATO Transcript Can Also Be Authenticated Under Rule 901(b)(7)

Public records may be authenticated with evidence "a purported public record or statement is from the office where items of this kind are kept." Fed. R. Evid. 901(b)(7)(B). An email produced in discovery shows Defendant received the transcript from an official in the Australian Tax Office. Trial Ex. P223, DEF_00052514. This evidence is sufficient to authenticate that the transcript is "from the office where items of this kind are kept." Fed. R. Evid. 901(b)(7)(B).

Defendant disagrees, but for support cites only cases involving authentication under Rule 901(b)(7)(A), not Rule 901(b)(7)(B). *See Wells*, 2007 WL 2696566, at *3 (quoting Fed. R. Evid. 901(b)(7)(A); *Grow v. Garcia*, 2010 WL 455118, at *n4 (D. Nev. 2010) (same). Defendant also

complains that the transcript is not sworn or certified, but neither is required by Rule 901(b)(7), and Defendant cites no authority for such a requirement.

Defendant appears to be conflating Rule 901 with Rule 902's more specific requirements for self-authenticating evidence. This likely also explains the misguided argument the "transcript does not qualify as a 'public record'" under Rule 902(4).[3] The main problem with these arguments is that Plaintiffs have never contended that the transcript was self-authenticating under Rule 902.

### B. Plaintiffs Possess a Good Faith Belief That The Transcripts Are Not Hearsay

#### 1. The ATO Transcript is Not Hearsay

The Court already rejected Defendant's hearsay objections to "his alleged party admissions" as "unavailing" in denying his motion in limine to exclude all ATO materials. DE [623], at 12. Defendant's latest hearsay objections are largely identical to his prior ones, and they are equally unavailing.

Defendant argues that statements by speakers other than himself also constitute inadmissible hearsay, but these are being offered to provide essential context for Defendant's statements, not for the truth of the matter. Nor does the transcript itself pose hearsay problems since a "transcript of Defendant's own statement is not hearsay, but clearly qualifies as an admission by a party-opponent under Fed. R. Evid. 801(d)(2)(A)." *United States v. Dadamuratov*, No. 5:08-CR-18/RS, 2008 WL 11438269, at *4 (N.D. Fla. Aug. 13, 2008).

#### 2. The Mock Interview Transcripts Are Not Hearsay

Wright's primary argument in support of his hearsay objection to the mock interview transcripts is that the transcripts are not, in fact, transcripts, which he supports with citations to his deposition testimony averring the same. According to Wright, since he has disclaimed making the

---

[3] Rule 902(4) does not actually purport to define public records, but rather provides for certain certified public records to be self-authenticating.

statements in the transcripts, they must have been made my someone else, and therefore constitute impermissible hearsay. This simply repackages Wright's authenticity objection as a hearsay objection, since he is arguing that the transcript is not authentic because he did not make those statements. But for the same reason there is sufficient evidence to authenticate the mock interview transcripts, there is also sufficient evidence to establish that they are non-hearsay statements by a party opponent.

### C. The ATO Transcript is Not Unduly Prejudicial or Speculative

As a fallback, Wright argues that the ATO transcript should be excluded as unduly prejudicial because it will confuse the jury while offering little probative value. DE [703], at 7. Defendant argues that the ATO transcript is likely to confuse because there are allegedly missing words. Wright also argues these "defects" render the ATO transcript "speculative," because "the jury would have to speculate as to the missing words, phrases, and other errors." *Id.*

However, Wright never explains why Plaintiffs' timeline entries lack probative value, nor does he offer any direct response to the theories of relevance articulated by Plaintiffs. In fact, Wright goes so far as to concede these documents contain relevant information and makes no effort to downplay their probative value. DE [697], at 14-15. Instead, Wright argues that this relevant information exists amongst a such a large amount of irrelevant information that it cannot be admitted. Even if true, that has no bearing on the probative value of the information that is relevant, which is the most important factor in determining whether to uphold a Rule 403 objection.

The failure to address the probative value of the statements is fatal to Wright's undue prejudice objections. Rule 403 establishes a balancing test with a bias in favor of admissibility. *See, e.g.*, "Rule 403 is an 'extraordinary remedy' that should be invoked 'sparingly, and the balance should be struck in favor of admissibility.'" DE [623], at 11 (quoting *United States v. Patrick*, 513

F. App'x 882, 886 (11th Cir. 2013)). Wright's failure to address one side of that balance should preclude him from tipping it away from the presumption of admissibility.

In any event, Wright's allegations of confusing "defects" are specious. He offers no detail about these purported defects beyond an allegation that 41 pages of the ATO Transcript are "missing words/phrases" or "do not reflect a speaker's identity." DE [697], at 6; DE [703], at 7.

But the portions of the transcript used in Plaintiffs' demonstrative do not suffer from any such defects. *See* Exhibit A. At a minimum, these relevant and "non-defective" portions of the transcript are reducible to admissible form, as any risk of confusion elsewhere in the transcript could be addressed with redactions. *United States v. Gari*, 572 F.3d 1352, 1363 (11th Cir. 2009) ("Trial courts routinely redact inadmissible portions of documents prior to their admission in evidence."). Plaintiffs therefore have a good faith basis for believing the transcript can be reduced to an admissible form without the risk of jury confusion or speculation.

### D. The ATO Transcript Does Not Violate the Best Evidence Rule

Wright also argues that the ATO Transcript violates the best evidence rule on the grounds it is not the original recording, but he offers no response[4] to Plaintiffs' argument that even if it is a duplicate, Plaintiffs are entitled to "prove the content of a writing, recording, or photograph by the testimony, deposition, or written statement of the party against whom the evidence is offered" and "need not account for the original." Fed. R. Evid. 1007. Because Plaintiffs will be able offer Defendant's prior statements—including his emails with the ATO concerning corrections to the transcript—to prove the content, Plaintiffs possess a good faith belief that the transcript will be admitted at trial. *See Stinson v. Nat'l Credit Sys. Inc.,* No. 1:17-CV-1105-SCJ-JKL, 2018 WL

---

[4] *Cf. Korman*, 2009 WL 2195136, at *1 (S.D. Fla. Apr. 23, 2009) (failure to address merits of opposing arguments "may constitute an abandonment of the issues").

3954763, at *7 (N.D. Ga. June 26, 2018) ("Rule 1007 allows a party to offer a party-opponent's statements about the content of a writing, regardless of what happened to the original document").

## CONCLUSION

For the foregoing reasons, the Court should allow the use of Plaintiff's proposed demonstrative to be used during their opening.

Dated:  October 12, 2021

Respectfully submitted,

By: */s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman, Esq.
**ROCHE FREEDMAN LLP**
One SE 3rd Avenue, Suite 1240
Miami, FL 33131
vel@rochefreedman.com

Kyle W. Roche, Esq.
Joseph M. Delich
**ROCHE FREEDMAN LLP**
99 Park Avenue, 19th Floor
New York, New York 10016
kyle@rochefreedman.com
jdelich@rochefreedman.com

Andrew S. Brenner, Esq.
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd Street, Suite 2800
Miami, Florida 33131
abrenner@bsfllp.com

*Counsel to Plaintiffs Ira Kleiman as Personal Representative of the Estate of David Kleiman and W&K Info Defense Research, LLC.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 12, 2021 a true and correct copy of the foregoing was filed with CM/ECF, which caused a copy to be served on all counsel of record.

*/s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman

# EXHIBIT A

### Side-by-side comparison of timeline text with transcript Excerpts:

| Timeline Text | Transcript Text |
|---|---|
| "A long-term friend of mine, Dave Kleiman and I, started that so that we could start building an exchange platform,…Dave and I had been friends and sort of partners that way for a long time."[5] | Wright: A long-term friend of mine, Dave Kleiman and I, started that so that we could start building an exchange platform, particularly in Australia. We had been developing product etcetera for a number of years beforehand. Dave and I had been friends and sort of partners that way for a long time. We had worked on a number of patents together, everything from using electron microscope to ..... recover data from hard drives that had been wiped, to one time Windows logins and similar types. We worked on some books together and he acted, well, as my editor ..... myself. |
| "There was a trust set up to put a number of bitcoin that Dave was mining and everything like that into," which was used as a "funding mechanism . . . [f]or research..."[6] | that was established? <br><br> Wright: There was a trust set up to put a number of bitcoin that Dave was mining everything like that into and maintain, the idea being that we would use th further the goals we were doing, which were all to do with promotion of bi and cryptocurrencies we have there. <br><br> O'Mahoney: So was it the case that the trust in Panama was set up as a funding mechanism? <br><br> Wright: For research, yes. |
| "When we were starting originally, we looked at a bitcoin value of probably $20 million. By the time we started looking at actually capitalising that and around Dave's death, that had gone up to, I think, $100 million."[7] | months of its existence? <br><br> Wright: When we were starting originally, we looked at a bitcoin value of probably $20 million. By the time we started looking at actually capitalising that and around Dave's death, that had gone up to, I think, $100 million. <br><br> O'Mahoney: So, sorry, can you just explain that – when you say bitcoin's value, $20 |

---

[5] DEFAUS_00068669.
[6] DEFAUS_00068671.
[7] DEFAUS_00068675.