## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC

       plaintiffs,

v.                                                    **Case No. 9:18-cv-80176 (BB/BR)**

CRAIG WRIGHT,

       defendant.

_____/

## DR. CRAIG WRIGHT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

During ten days of trial, plaintiffs have had ample opportunity to present their case. Given the record, the Court should enter judgment as a matter of law ("JMOL") in Dr. Wright's favor on Counts I-II and V-VIII of Plaintiffs' Second Amended Complaint ("SAC") (D.E. 83) and on plaintiffs' claims for damages, disgorgement, and punitive damages. This result is warranted by plaintiffs' failure to meet their burden of establishing all necessary elements of their claims and adducing non-speculative evidence of their purported damages. Even viewing evidence in plaintiffs' favor, "a reasonable jury would not have a legally sufficient evidentiary basis to find for [plaintiffs]." Fed. R. Civ. P. 50(a)(1), (b); *e.g.*, *Kellner v. NCL (Bah.), Ltd.*, 2016 WL 4440510, at *2 (S.D. Fla. 2016) (granting JMOL as to liability), *aff'd*, 753 F. App'x 662 (11th Cir. 2018); *Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*, 432 F. Supp. 2d 1319, 1351 (S.D. Fla. 2006) (granting JMOL as to damages), *aff'd,* 294 F. App'x 501 (11th Cir. 2008).

## **ARGUMENT**

### 1. **Plaintiffs Failed to Provide Any Competent Evidence that Would Permit the Jury to Value the Bitcoin and Intellectual Property at Issue in this Case**

Plaintiffs failed to carry their burden of offering any evidence that would permit the jury to appropriately value the sizeable number of purported bitcoins that are at issue in this case. Given the number of alleged bitcoins at issue—at least 300,000 (SAC ¶ 112), and as many as 550,000 (half of 1.1 million) (Nov. 1, 2021, Tr. 184:2-3)[1]—, the historically low trading volume (Nov. 2, 2021, Tr. 106:4-6), as well as Bitcoin's significant price volatility (*id.* at Tr. 29:12-21), plaintiffs may not rely on any purported spot price of Bitcoin to calculate damages, which

---

[1] Except where otherwise noted, all transcript references in this motion are to the final transcripts prepared for this case.

appears to be their only "damages"[2] evidence. Plaintiffs also failed to offer any non-speculative evidence of how to value the unidentified intellectual property for which they seek recovery.

"Under [Florida's] certainty rule, which applies in both contract and tort actions, recovery is denied where the fact of damages and the extent of damages cannot be established within a reasonable degree of certainty." *Iron Bridge Tools, Inc. v. Meridian Int'l Co., USA*, 2016 WL 8716673, at *8 (S.D. Fla. 2016). The certainty requirement is a "threshold necessary to be considered legally probative of the amount or extent of damages" suffered by a plaintiff. *In re Sherwood Inv's Overseas Ltd. Inc.*, 2015 WL 4486470, at *27 (M.D. Fla. 2015). "It is incumbent upon a plaintiff in a trial court to present evidence to justify an award of damages in [a] definite amount." *United Steel & Strip Corp. v. Monex Corp*., 310 So. 2d 339, 342 (Fla. 3d DCA 1975). If a damages calculation is based on speculation or conjecture, then JMOL is appropriate. *See, e.g., Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172 (11th Cir. 2002).

Plaintiffs seek recovery for the value of more than 300,000 bitcoins. To calculate damages based on the number of bitcoins at issue, plaintiffs appear to have suggested two methods: either through a one-time sale of all the bitcoins in question, or a series of hypothetical sales over time. Nov. 2, 2021, Tr. 105:21-24 (one-time sale); 113:2-6 (sales over time). Here, however, a one-time sale would "probably" not be viable, given the large number of bitcoins that are the subject of the claim. *Id.* at Tr. 105:21-106:2. Indeed, plaintiffs' "spot price" witness conceded that the spot prices to which he testified would not be realizable even for a sale of 10,000 bitcoins, let alone 300,000. *Id.* at Tr. 105:15-20. The conclusion that a large amount of

---

[2] The purported "damages" evidence was not provided by an expert admitted on valuation issues or by a damages expert. It bears noting that, in denying Dr. Wright's *Daubert* motion regarding Anotonpolous, the Court relied on "Plaintiffs['] represent[ation] that Mr. Antonopolous [would] not opin[e] on the ultimate damages to be awarded." D.E. 622 at 66-67.

bitcoins cannot be sold all at once at a historical spot price without depressing the market (and the price) triggers Florida's "blockage rule" for valuing large blocks of traded assets. *See Fla. Nat. Bank Jacksonville v. Simpson*, 59 So. 2d 751, 768-769 (Fla. 1952) (stocks).[3]

"The blockage rule provides that, when [assets] are being valued, the size of the holding, and not simply the quoted price per share is a relevant consideration." *Rushton v. C. I. R.*, 498 F.2d 88, 89 (5th Cir. 1974) (stocks). "This principle recognizes the market fact that a block of shares may be so large in relation to the usual trading volume or to the number of shares outstanding that it would necessarily alter its price." *Id.*; *see, e.g., Cleary v. Higley*, 154 Misc. 158, 166 (Sup. Ct. 1934) aff'd 246 App. Div. 97 (1st Dep't 1935) ("The proof of market value of a small number of shares is obviously no criterion to establish the value of a tremendous block of one million six hundred thousand shares which were twice as many as were then on the market."). None of these facts are recognized by plaintiffs' speculative damages theory, by which they propose to simply multiply the spot price on a given day by hundreds of thousands. There is absolutely no testimony about what price, if any, would be realizable from a one-time, open-market sale of more than 300,000 bitcoins.

As for plaintiffs' second proffered scenario of hypothetical sales over time, there is no evidence as to how any such hypothetical sales would have been conducted, the time frame during which such sales would take place, or the realizable prices of such sales that would provide the jury with legally sufficient guidance on how to calculate such damages. *See Kane v. Shearson Lehman Hutton, Inc.*, 916 F.2d 643, 647 (11th Cir. 1990) (Plaintiff's alleged damages from "anticipated profits based [ ] on his claim that he would have sold [ ] securities at the

---

[3] Plaintiffs' witness Andreas Antonopoulos testified that the price of Bitcoin is determined in the same way as the price of publicly traded shares of stock. Nov. 2, 2021, Tr. 25:15-19.

optimal time" was speculative.). Expert testimony is typically required in cases such as this one, which involve asset valuation and complex financial calculations of damages. *See, e.g.*, *Morgan Stanley & Co. Inc. v. Coleman (Parent) Holdings Inc*., 955 So. 2d 1124, 1128 (Fla. 4th DCA 2007) ("As a general rule, plaintiffs alleging securities fraud rely on expert proof to establish both the fact of damage and the appropriate method of calculation."); *Kingsway Fin. Servs. v. Pricewaterhouse-Coopers LLP*, 2006 WL 1520227, at *1 (S.D.N.Y. 2006) (expert testimony required when damages are not the product of a "simple mathematical calculation"); *Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992).

Nonetheless, Plaintiffs did not present any such expert testimony. In fact, Mr. Antonopoulos was not admitted as an expert, and did not testify, regarding damages or valuation. Nov. 2, 2021, Tr. 101:21-22, 102:2-4 (admitting he was not a "trained economist" or holding himself out as one). Antonopoulos merely provided testimony as to the historical price of Bitcoin (on four specific dates chosen by plaintiffs' counsel) (*id.* at Tr. 99:2-11), admitted that the historical "price" was not equivalent to the market price of Bitcoin (*id.* at Tr. 105:7-20), and conceded that he didn't know what, if any, quality controls existed for determining a daily "spot" price of Bitcoin. *Id.* at Tr. 98:23-99:1. Moreover, he failed to verify any of the data upon which he relied since he did not compile the spot prices of which he testified. *Id.* at Tr. 106:7-9.

Given the "total absence of any evidence (by expert opinion or otherwise) or logical explanation describing how the jury could have [calculated damages]," any damages here would be impermissibly speculative, which precludes a finding for plaintiffs a matter of law. *See, e.g., Alvarez v. All Star Boxing, Inc.*, 258 So. 3d 508, 513 (Fla. 3d DCA 2018); *Soltero v. Swire Dev. Sales, Inc.*, 2010 WL 11506701, at *7-8 (S.D. Fla. 2010), *aff'd*, 485 Fed. Appx. 377 (11th Cir. 2012) (setting aside compensatory damages award as a matter of law where plaintiff "retained a

4

real estate valuation expert, but chose not to call him as a witness to provide opinions as to the actual value of" the unit and there was no testimony justifying the damages claim); *Trailer Ranch, Inc. v. Levine*, 523 So. 2d 629, 632-33 (Fla. 4th DCA 1988) ("[T]he evidence . . . was totally insufficient to support [the] . . . judgment awarding damages for loss of business value" where lay witness "was familiar with the day-to-day operation of the business" but did not "have any real concept of the value of the business."); *Williams v. Mosaic Fertilizer, LLC*, No. 2017 WL 5307920, at *4 (M.D. Fla. 2017), *aff'd*, 889 F.3d 1239 (11th Cir. 2018) (affirming summary judgment for failure to prove damages after exclusion of lay witness' testimony that her property could not be sold at any price, because it "lacked foundation and was purely speculative").

Plaintiffs also failed to offer any competent evidence of the alleged value of the purported intellectual property at issue. The evidence introduced conclusively demonstrated plaintiffs' reliance on assumptions that are, at the very least, improperly speculative. For example, the Business Reports and Values[4] ("BRV") cost-basis valuation plaintiffs presented did nothing more than speculate as to future costs that four Bitcoin-related companies "[would incur in creating the IP.]" Ex. P-183, p. 12. Underscoring the speculative nature of BRV's valuation, the report itself makes clear that a cost-basis projection "is in *no way relevant* to the value of that software." *Id.* (emphasis added).[5] Finally, BRV's valuation concedes that "the benefits deriving from the software will not be accessible for a number of years" because the technologies were still in the development stage. Ex. P-183, p. 12.

---

[4] Watts testified that she could not confirm whether this report was in final or draft form. Watts Depo., Tr. 196:08-11, 17-21; 197:15-17; 198:10-11.

[5] As Ramona Watts' video deposition testimony at trial made clear, at least two of the four entities never came to fruition. Watts Depo., Tr. 202:24-203:5 ("I know that we never finished the [C01N] wallet. As with Coin-Exch we did not have the resources and we did not have the people. So I can tell you that this was not finished, it wasn't even half done.").

Further, the draft IP valuation analysis from Baker McKenzie (Ex. P-457) conceded that the blockchain industry is in its infancy, and used comparables from unrelated technology industries' "commercial potential" in uncommercialized and highly uncertain markets. Ex. P-457, pp. 5, 11.[6] Finally, the Baker McKenzie draft valuation did not specify the IP it was valuing as it related to David Kleiman, but instead solely related to EITC Holding Ltd.'s "blockchain technology currently being developed by the group" (circa 2016). Ex. P-457, p. 4.

The WKID Cost Estimation plaintiffs introduced almost at the close of their case fares no better. Ex.P-166. As its title clearly states, this document is not more than a prediction of costs. The document contains the estimated cost of developing a new software under three alternative hypothetical scenarios. Ex.P-166, p. 28. It is unclear who prepared the document, their qualifications, the assumptions made, if the appropriate variables were used, and even which, if any, alternative scenario ultimately occurred.  An unsupported future cost projection prepared in 2014 by an unknown source is insufficient to establish the value of the intellectual property purportedly owned by W&K.

Put simply, plaintiffs did not offer any expert testimony to support their proffered valuation (or ay valuation) of the intellectual property. When a party's valuation figure is not supported by competent, substantial evidence, it fails as a matter of law. *See Nunez v. Nunez*, 29

---

[6] Evidence presented at trial from Jimmy Nguyen's video deposition testimony underscored the fact that Baker & McKenzie's draft valuation of a "new company as well as a new IP portfolio [was] just not believable," because the company was "young" and was built on IP that had not "been monetized yet." Nguyen Depo., Tr. 179:03-14, 18-21. Nguyen's testimony was based on his experience with intellectual property, and the commonsense notion that IP gains value with time, after obtaining a patent (a lengthy process), surviving patent challenges, exploiting the patent and ultimately monetizing it. Nguyen Depo., Tr. 179:20-180:23. Most damning to plaintiffs' case is Nguyen's testimony that "the report was assuming too much, assuming that you just file the application and boom there's all this automatic millions of dollars of value per application that's not how it works." Nguyen Depo., Tr. 181:5-7.

So. 3d 1191, 1192 (Fla. 5th DCA 2010) (reversing valuation of corporation, holding that trial court could not base valuation solely on letter of intent to purchase); *Sheffield v. Sheffield*, 522 So. 2d 986, 986 (Fla. 1st DCA 1988) (reversing valuation of corporations in dissolution proceeding because trial court had based valuation solely on tax returns, which did not reveal the actual fair value of the corporations).

Because Plaintiffs have closed their case in chief without submitting necessary expert testimony regarding damages, method of calculation, and valuation, they have not met their burden and JMOL should be entered for Mr. Wright as to plaintiffs' damages claims.

## 2. <u>No Reasonable Jury Could Find for Plaintiffs on Count I (Conversion)</u>

### A. *No Reasonable Jury Could Find Dr. Wright Liable for Conversion*

Under Florida law, "[i]t is apodictic . . . that a plaintiff's initial proof of a prima facie case of both conversion and tortious interference in [his] case-in-chief requires more than proof of liability. Prima facie proof of damages is required as well." *Saewitz v. Saewitz*, 79 So. 3d 831, 833 (Fla. 3d DCA 2012). To that end, a party "is entitled to a damage award amounting to the market value of the subject property on the date of the conversion plus interest accruing from that date." *Talbot v. Rosenbaum*, 142 So. 3d 965, 968 (Fla. 4th DCA 2014); *accord Ox Labs Inc. v. BitPay, Inc.*, 848 F. App'x 795, 797 (9th Cir. 2021) ("The applicable California law does not compel us to award a remedy that we have concluded would be manifestly unjust, given the massive increase in Bitcoin price in the period after conversion of the assets up to this time").

At trial, plaintiffs were required, but failed, to present any evidence demonstrating the value of Bitcoin and intellectual property on the date of the alleged conversion. They offered testimony of the spot price of Bitcoin on three dates— February 14, 2018 (when this lawsuit was filed); October 20, 2021 (highest price of Bitcoin to date); and October 30, 2021 (two days

before trial)—all of which were long after any claim for conversion would have accrued and are thus irrelevant as a matter of law. *See Saewitz*, 79 So. 3d at 833. Plaintiffs further failed to offer a scintilla of evidence explaining how the Bitcoin spot price on April 26, 2013 (the first to which Antonopolous testified), or on any other date before the filing of the Complaint, could mark the start of a "legally relevant time period" for calculating damages. *See id.* Nor did Plaintiffs offer a shred of evidence as to the value of the intellectual property at issue at the time it allegedly was converted. *See, e.g.,* Ex. P-183 (date of valuation of November 13, 2014); Ex. P-457 (draft valuation in October  2016) As such, Dr. Wright cannot be held liable for conversion, and the Court should enter JMOL as to plaintiffs' conversion claim.

### B.    *No Reasonable Jury Could Find Dr. Wright Liable for Punitive Damages for Conversion*

Even if plaintiffs' conversion claim were legally sufficient and viable, plaintiffs are not entitled to an award of punitive damages because they have not met the requisite burden of proof. Because there is no basis, "the court should withdraw [punitive damages] from the consideration of the jury." *DeWitt v. Seaboard Coast Line R. Co.*, 268 So. 2d 177, 179 (Fla. 2d DCA 1972). "[P]unitive damages are allowable only 'where the circumstances surrounding the conversion are such to show fraud, actual malice, deliberate violence or oppression, or such gross negligence as to indicate a wanton disregard of the rights of others.'" *Sporting Goods Distrib., Inc. v. Whitney*, 498 F. Supp. 1088, 1092 (N.D. Fla. 1980). Here, there is a dearth of evidence that Dr. Wright's actions met this threshold. *Id.*; *Stearns v. Landmark First Nat'l Bank of Fort Lauderdale*, 498 So. 2d 1001 (Fla. 4th DCA 1986).

**3.  No Reasonable Jury Could Find for Plaintiffs on Count II (Unjust Enrichment)**

  *A.      No Reasonable Jury Could Find Dr. Wright Liable for Unjust Enrichment*

Under Florida law, a claim of unjust enrichment cannot be predicated on wrongful acts such as theft. *State of Fla., Office of Atty. Gen., Dep't of Legal Affairs v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1309 (S.D. Fla. 2005) (unjust enrichment claim dismissed where it was predicated on purported RICO violations and theft); *Group Assets, LLC. v. Fortress Inv. Group*, 2010 WL 2951508, at *4 (M.D. Fla. 2010). At trial, plaintiffs repeatedly claimed that Dr. Wright stole from the estate of David Kleiman. *See e.g.*, Nov. 3, 2021, Tr. 161:14-66 ("Q. Sir, you allege that Craig Wright stole bitcoin from David Kleiman, don't you? A. Yes."). As such, Dr. Wright is entitled to JMOL on plaintiffs' unjust enrichment claim.

  *B.       No Reasonable Jury Could Find Dr. Wright Liable for Restitution after the Filing of the Complaint*

The purpose of restitutionary claims is not to punish, but rather to return a plaintiff to the position it was in before the defendant received the benefit. *See Engelke v. Athle-Tech Computer Sys., Inc.*, 982 So. 2d 3, 8-9 (Fla. 2d DCA 2008). "Under Florida law . . . an unjust enrichment claim accrues when the benefit is conferred." *In re Burton Wiand Receivership Cases Pending in the Tampa Div. of the Middle Dist. of Fla.*, 2008 WL 818504, at *8 (M.D. Fla. 2008); *Beltran v. Vincent P. Miraglia, M.D., P.A.*, 125 So. 3d 855, 859 (Fla. 4th DCA 2013) ("[U]njust enrichment or quantum meruit claims generally begin to run" when "defendant obtained the subject property or goods."). Thus, any restitutionary damages for plaintiffs' claim would be measured by the date on which the alleged benefit was conferred. Plaintiffs further failed to offer a scintilla of evidence explaining why the purported spot price of Bitcoin on April 26, 2013 or any other date before the filing of the Complaint is a legally relevant date for calculating the value of the bitcoins at issue. Nor did Plaintiffs offer any evidence as to the value of the intellectual property

at issue during the relevant time period. Finally, any damages calculation based on (or after) the date when plaintiffs filed their Second Amended Complaint would be an inappropriate measure of damages as a matter of law.

### 4.   No Reasonable Jury Could Find for Plaintiffs on Count V <u>(Breach of Fiduciary Duty)</u>

#### A.   *No Reasonable Jury Could Find Dr. Wright Liable for Breach of Fiduciary Duty*

Plaintiffs failed to prove that Dr. Wright breached any fiduciary duty to plaintiffs. At trial, plaintiffs admitted evidence that W&K was a manager-managed LLC. *See* JE 001. In a manager-managed LLC, a manager owes fiduciary duties of loyalty and care to the limited liability company and its members. *See* Fla. Stat. § 605.04091(1). Plaintiffs introduced evidence that David Kleiman was a manager of W&K but did not admit any evidence that Dr. Wright was a manager of W&K. *See* JE 001. Because plaintiffs failed to prove that Dr. Wright owed any fiduciary duties to plaintiffs, Dr. Wright is entitled to JMOL.

#### B.   *No Reasonable Jury Could Find Dr. Wright Liable for Damages for Breach of Fiduciary Duty*

The date for calculating damages for a breach of fiduciary duty is the date of the breach. *E.g., Haddad v. Rav Bahamas, Ltd.*, 589 F. Supp. 2d 1302, 1307 (S.D. Fla. 2008) ("Like damages for breach of contract, damages for breach of fiduciary duty are measured as of the date of the breach."). Here, plaintiffs allege that Dr. Wright breached fiduciary duties owed to W&K by transferring assets that belonged to David Kleiman or W&K to himself or companies that he controlled. SAC ¶ 195. This claim appears to be based on conduct occurring on (or soon after) April 26, 2013, and no later than November 4, 2013. *See* Ex. P-709, P-710.

Plaintiffs failed to introduce any evidence explaining why the purported spot price of Bitcoin on April 26, 2013 or any other date before the filing of the Complaint is a legally

relevant date for calculating the value of the bitcoins at issue.[7] The dates for which plaintiffs offered "spot" prices are thus legally irrelevant to the calculation of damages for Dr. Wright's alleged breach of fiduciary duty. Plaintiffs also failed to introduce any evidence as to the value of the intellectual property at the time of the alleged breach. As such, plaintiffs are unable to prove damages for an alleged breach of fiduciary duty as a matter of law. Further, as demonstrated above, there is no legal basis for plaintiffs to recover damages based on purported spot prices on the date when the complaint was filed or any date thereafter.

### 5. No Reasonable Jury Could Find for Plaintiff Ira Kleiman on Count VI <u>(Breach of Partnership Duties of Loyalty and Care)</u>

#### A.   *No Reasonable Jury Could Find Dr. Wright Liable for Breach of the Partnership Duties of Loyalty and Care*

In their opening, Plaintiffs claimed that David Kleiman and Dr. Wright had a "partnership" to mine bitcoin together from 2008 through 2011, but plaintiffs introduced no written partnership agreement. In the absence of a written agreement, plaintiffs travel on a purported three-year oral contract (which violates the statute of frauds). Even if that were not so, plaintiffs failed to carry "the burden of establishing the existence of such contract, including *all of its essential elements*," which "*is indeed, as it should be, a heavy and difficult one.*" *Vannamei Corp. v. Elite Int'l Telecomm, Inc.*, 881 So. 2d 561, 562 (Fla. 3d DCA 2004) (emphasis added).

To prove that a binding contract existed, plaintiffs were required to put on evidence of a meeting of the minds on the essential terms necessary to form a partnership, including the contract's duration, the parties' obligations to one another, the parties' corresponding rights and duties, and the financial specifics of the alleged partnership, including whether partnership profits would be gross or net, split equally, stated as revenue, profit, or income. *E.g., Dreyfuss v.*

---

[7] Further, the consent judgments transferring assets from W&K to Dr. Wright concern only the intellectual property owned by W&K, not Bitcoin. Ex. P-709, P-710.

*Dreyfuss*, 701 So. 2d 437, 438-39 (Fla. 3d DCA 1997) ("finding that there was competent, substantial evidence in support of the trial court's conclusion that no contract was formed"). "A partnership is only established when both parties contribute to the capital or labor of the business, have a mutuality of interest in both profits and losses, and agree to share in the assets and liabilities of the business." *Id.* at 439.

Here, plaintiffs adduced no evidence of *any* of the essential terms of their purported oral partnership agreement. Plaintiffs presented absolutely no evidence that David Kleiman and Dr. Wright ever agreed to share any "partnership" profits (let alone the manner in which the purported oral partnership would distribute profits), which is the *sine qua non* of a partnership under Florida's Revised Uniform Partnership Act. Fla. Stat. § 620.8202.  Plaintiffs further failed to demonstrate that David Kleiman and Dr. Wright: distributed any profits from this purported oral partnership; agreed to be jointly responsible for losses or share exposure to any potential liability; filed any tax returns; or circulated K-1 schedules showing a profit or loss (either actual or on paper). Absent any evidence of an alleged oral partnership between David Kleiman and Dr. Wright, there can be no breach of any purported duties of care or loyalty between them. *See, e.g.*, *Williams v. Skylink Jets, Inc.*, 314 F.3d 1275, 1275 (11th Cir. 2002) (affirming judgment of no oral partnership where plaintiff put on no evidence regarding the "distribution of partnership gains, losses, payment of business loans, payment of overhead costs, how to dissolve the partnership or the distribution of assets").

**B.      *No Reasonable Jury Could Find Dr. Wright Liable for Damages Proximately Resulting from a Breach of Partnership Duties of Loyalty and Care***

Even if plaintiffs could have introduced legally sufficient evidence of an oral partnership between David Kleiman and Dr. Wright, they failed to prove any damages for the alleged breaches of the duties of care and loyalty. They alleged that the oral partnership ended in 2011 when W&K was formed (SAC ¶200), but introduced no evidence of the value of Bitcoin at the

time the purported partnership allegedly was dissolved and wound up, how many bitcoins it had

at that time, and what intellectual property it had produced (let alone its value).

The latest conceivable date for calculating any damages would be the date of David

Kleiman's death, because that is when Dr. Wright allegedly breached duties of care and loyalty

owed to the purported partnership and David Kleiman. *Id.*; *see Haddad*, 589 F. Supp. 2d at 1307

("Like damages for breach of contract, damages for breach of fiduciary duty are measured as of

the date of the breach.").[8] As a result plaintiffs may not recover damages based on any purported

Bitcoin spot price on any date after April 26, 2013, or any evidence of the value of any alleged

intellectual property belonging to the "partnership" after April 26, 2013. Under no circumstances

could there be any legal basis for plaintiffs to recover damages based on purported spot prices on

the date the complaint was filed or at any time thereafter.

### 6. No Reasonable Jury Could Find for Plaintiffs on Count VII (Fraud)

#### A. *No Reasonable Jury Could Find Dr. Wright Liable for Fraud*

To succeed on their common-law fraud claim, plaintiffs were required to provide record

evidence that proved: (1) a material misrepresentation of fact; (2) known by the defendant to be

false when it was made; (3) made for the purpose of inducing [plaintiffs] to act in reliance on it;

(4) action by the plaintiffs in reliance on the correctness of the representations; and (5)

proximately resulting damages. *Biscayne Cove Condo. Ass'n v. QBE Ins. Corp.*, 971 F. Supp. 2d

1121, 1145 (S.D. Fla. 2013)). Plaintiffs were further obligated to prove "that [they] had a right to

---

[8] Section 620.8701, Fla. Stat., provides that when a partner disassociates from a partnership, the partnership must cause that partner's interest to be purchased for the amount that would have been distributable to that partner **on the date of disassociation.** Further, a partner disassociates from a partnership upon his death **as a matter of law**. Fla. Stat. § 620.8601(7)(a). Thus, the date of Dave Kleiman's death would be the latest date on which any damages could be measured for any purported breach of fiduciary duty to the alleged oral partnership.

rely on the representations." *Pettinelli v. Danzig*, 722 F.2d 706, 709 (11th Cir. 1984) (citing *Columbus Hotel Corp. v. Hotel Mgmt. Co.,* 116 Fla. 464, 156 So. 893 (1934)).

Judgment as a matter of law on plaintiffs' fraud claims is required because plaintiffs had no right to rely on any of Dr. Wright's statements after April 2014. Under Florida law, a plaintiff may not reasonably rely on representations made by someone the plaintiff already distrusts. *E.g., Mergens v. Dryfoos*, 166 F.3d 1114, 1117-19 (11th Cir. 1999) (collecting cases). At trial, Ira Kleiman testified that he did not trust Dr. Wright as early as April 15, 2014. *See* Nov. 5, 2021, Tr. 31:19-32:4; *see, e.g.,* Ex. P-156. Ira Kleiman first contacted Dr. Wright in February 15, 2014 (Nov. 3, 2021, Tr. 40:5-7; D-285), and within two months, by April 15, 2014, plaintiffs already distrusted Dr. Wright and were investigating claims against him. Because Ira Kleiman no longer trusted Dr. Wright's representations, he had no right to rely on anything Dr. Wright purportedly said after April 15, 2014. *E.g., Moriber v. Dreiling*, 194 So. 3d 369, 374 (Fla. 3d DCA 2016) ("There can be no ground for complaint against representations where the hearer lacked the right to rely thereon, because he had reason to doubt the truth of the representation.").

Thus, plaintiffs had only two months during which they could have reasonably relied on Dr. Wright's allegedly fraudulent statements.[9] However, there is no evidence of any such statements, let alone any proximately resulting fraudulent "injury" during that two-month period. Further, the Australian court's judgment was entered on November 6, 2013, three months before Ira Kleiman contacted Dr. Wright, so nothing he might have later said could have "induced"

---

[9] The Court has not admitted plaintiffs' privilege log (D193) into evidence, but its mere existence and documents from as early as February 2014 that plaintiffs produced in redacted form on work-product grounds (D399) confirm the fact that Ira Kleiman was acting in anticipation of litigation as early as February 25, 2014. These facts demonstrate that plaintiffs were adverse to Dr. Wright almost from their first contact, which dispositively undermines any claim of reasonable reliance. Dr. Wright respectfully requests that the Court reconsider its ruling in connection with D.E. 767.

plaintiffs' failure to appear or act in those proceedings, of which they had express notice, let alone their failure to challenge those judgments in Australia. Finally, judgment as a matter of law on plaintiff W&K's fraud claim also is required because plaintiffs put on no evidence of any fraudulent statements made to anyone connected with W&K in the pertinent time period.

### B.       No Reasonable Jury Could Find Dr. Wright Liable for Damages for Fraud

Plaintiffs also failed to identify any damages they sustained as a proximate result of Dr. Wright's alleged fraud. Plaintiffs did not introduce (and could not have introduced) evidence of any actual damages proximately resulting from anything Dr. Wright said to them. "It is fundamental that actual damages and the measure of those damages are essential to establishing a claim of fraud[,]" and "[w]ithout proof of actual damage the fraud is not actionable." *Caledonian Bank & Tr. Ltd. v. Fifth Third Bank*, 2015 WL 5542544, at *3 (M.D. Fla. 2015) (granting JMOL). None of plaintiffs' alleged damages were even connected to, much less proximately caused by, any of Dr. Wright's purported statements, which compels judgment as a matter of law. The record evidence cannot support a claim that plaintiffs' purported damages could include any purported time and resources they spent in ***voluntarily*** talking to the ATO.

Because the evidence demonstrates that plaintiffs distrusted and were adverse to Dr. Wright by April 15, 2014, at the latest, they could not have relied on any statements by Dr. Wright. Under Florida law, "the crucial time for the measurement [of a fraud claim] is the time of the fraudulent representation." *Hollister Inc. v. Zassi Holdings, Inc.*, 752 F. App'x 888, 893 (11th Cir. 2018); *Soltero*, 485 F. App'x at 379 (plaintiff must provide the jury evidence of the "*actual value of the property* in question" at the time of the fraudulent misrepresentation); *Minotty v. Baudo*, 42 So. 3d 824, 835 (Fla. 4th DCA 2010) (holding that failure to establish the fair market value of the stock at the time of the fraud was fatal to fraud claim). Thus, plaintiffs could only seek damages suffered between February and April 2014. *See Totale, Inc. v. Smith*,

877 So. 2d 813, 815 (Fla. 4th DCA 2004) ("Later appreciation or depreciation of the property
that is subject of the false representation generally does not alter the fraud damage
computation."). Plaintiffs offered no evidence of damages during that time period, which
required JMOL as to their fraud claim because damages are an essential part of that claim.[10]  *See
QBE Ins. Corp.*, 971 F. Supp. 2d at 1145. In any event, as demonstrated above, there could be no
legal basis for plaintiffs to recover damages based on spot prices on the date the complaint was
filed or any date thereafter.

Finally, because plaintiffs may not recover any damages on their fraud claims as a matter
of law, it necessarily follows that they may not recover punitive damages, either. On this record,
an award of punitive damages is improper as a matter of law. *See Soltero*, 485 F. App'x at 380.

### 7.   No Reasonable Jury Could Find for Plaintiffs on Count VIII (Constructive Fraud)

#### A.      *No Reasonable Jury Could Find Dr. Wright Liable for Constructive Fraud*

Under Florida law, "[c]onstructive fraud may be based on misrepresentation or
concealment, or the fraud may consist of taking an improper advantage of the fiduciary
relationship at the expense of the confiding party." *Beers v. Beers*, 724 So. 2d 109, 116-17 (Fla.
5th DCA 1998). "Constructive fraud will not lie where the parties are dealing at arms-length
because there is no duty imposed on either party to protect or benefit the other." *Am. Honda
Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005).

As demonstrated above, there is no evidence of any misrepresentation or concealment by
Dr. Wright that proximately caused plaintiffs any injury. Furthermore, Ira Kleiman offered no

---

[10] Plaintiffs acknowledged there were no communications between Dr. Wright and Ira Kleiman
after October 9, 2015. SAC ¶150.  As a result, it would be improper to calculate the value of the
Bicoin or intellectual property based on any information after October 9, 2015 since Dr. Wright
made no possible fraudulent representations that could have affected plaintiffs' alleged rights to
such items after that date.

evidence at trial of any confidential or fiduciary relationship with Dr. Wright. All the evidence points the other way and demonstrates that an adversarial relationship already existed when the parties communicated at arms-length in April 2014 (at the very latest). *See* Nov. 5, 2021, Tr. 31:19-32:4; *see, e.g.,* Ex. P-156. Thus, JMOL as to plaintiff Ira Kleiman's constructive fraud claim is warranted. Further, as demonstrated above, no fiduciary relationship existed between Dr. Wright and W&K, which requires JMOL on W&K's constructive fraud claim.

### B.      No Reasonable Jury Could Find Dr. Wright Liable for Damages for Constructive Fraud

"In a tort action, the measure of damages is that which is necessary to restore the injured party to the position he would have been in had the wrong not been committed." *Glades Oil Co., Inc. v. R.A.I. Mgmt., Inc.*, 510 So. 2d 1193, 1195 (Fla. 4th DCA 1987). To the extent that plaintiffs' claim is based on conduct reflecting an intent to defraud, the measure of damages would be the same as discussed in Section 6.B., above. *See QBE Ins. Corp.*, 971 F. Supp. 2d at 1145. Where a constructive fraud claim is based on alleged abuse of a fiduciary relationship, damages must have accrued when that duty was violated. *See Haddad*, 589 F. Supp. 2d at 1307.

In either case, plaintiffs failed to adduce any legally relevant evidence of their purported damages, and any purported damages calculation based on the date when the Complaint was filed, or any date after that, would be an impermissible measure of damages. Finally, because plaintiffs are not entitled to any damages on their fraud claim as a matter of law, it follows that an award of punitive damages also would be improper. *See Soltero*, 485 F. App'x at 380.

### 8.   No Reasonable Jury Could Find Dr. Wright Liable for Damages on Count X (Civil Theft)

"To state a claim for civil theft under Florida law, plaintiff must allege an injury resulting from [Defendant's] violation of the criminal theft statute, Fla. Stat. § 812.014." *Inglis v. Wells*

*Fargo Bank N.A.*, 2015 WL 5772030, at *3 (M.D. Fla. 2015). In that connection, damages under the civil theft statute consist of the fair market value of the taken property at the time of the purported taking. *See Koster v. Phillips*, 2013 WL 8433654, at *1 (Fla. Cir. Ct. June 12, 2013); *cf. Carter v. State*, 77 So. 3d 849, 851 (Fla. 2d DCA 2012) ("When the State offers evidence of solely the purchase price of an item without any testimony establishing the value at the time of the theft, courts have found the evidence insufficient to sustain a conviction for grand theft."); *K.W. v. State*, 13 So. 3d 90, 91 (Fla. 3rd DCA 2009). Moreover, "[a] civil theft plaintiff must prove actual damages by clear and convincing evidence." *Wright v. Logan*, 2011 WL 13175744, at *6 (M.D. Fla. 2011).

At trial, plaintiffs had an opportunity, but failed, to present clear and convincing evidence demonstrating the value of the purported bitcoins and intellectual property on the date of the alleged theft. Again, they offered only a purported "spot" price of Bitcoin on three dates— February 14, 2018; October 20, 2021; and October 30, 2021. All these dates are years after any claim for civil theft would have accrued, and are irrelevant as a matter of law. Plaintiffs also failed to offer any evidence to demonstrate how a purported Bitcoin spot price on April 26, 2013 or any other date before the filing of the Complaint could be legally relevant to calculating damages for their civil theft claim. Nor did Plaintiffs offer a shred of evidence as to the value of the intellectual property at issue at the time of the alleged theft. Thus, Dr. Wright cannot be held liable for compensatory damages for violation of the civil theft statute and the Court should enter JMOL on this issue.

### 9. To the Extent They are Premised on The Alleged Wrongful Taking of Bitcoin, <u>Counts I, II, V, and VI are Time-Barred</u>

Plaintiffs commenced this case on February 14, 2018. Under Fla. Stat. § 95.031(1), "[a] cause of action accrues when the last element constituting the cause of action occurs." *See also*

18

*Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294, 1309 (S.D. Fla. 2012), aff'd, 714 F.3d 1234 (11th Cir. 2013). Counts I, II, V and VI are governed by the four-year limitations period of Fla. Stat. § 95.11(3), and all are time-barred.

Plaintiffs allege that Dr. Wright took sole ownership or control of all bitcoins owned by David Kleiman's after his death on April 26, 2013 through fraudulent contracts. *E.g.*, SAC ¶¶95, 202. Those contracts, which are part of the record of proceedings before the Supreme Court of New South Wales, were prepared no later than November 4, 2013. Ex. P-710. To the extent plaintiffs' claims are based on the alleged wrongful transfer of bitcoins, each of the following claims accrued on (or soon after) April 26, 2013, and no later than November 4, 2013:

- ***Count I (Conversion)***: "The statute of limitations applicable to conversion . . . begins to run at the time of the conversion, except when the conversion is fraudulently concealed." *Small Bus. Admin. v. Echevarria*, 864 F. Supp. 1254, 1260 (S.D. Fla. 1994);

- ***Count II (Unjust Enrichment)***: "Under Florida law . . . an unjust enrichment claim accrues when the benefit is conferred." *In re Burton Wiand Receivership Cases Pending in the Tampa Div. of the Middle Dist. of Fla.,* 2008 WL 818504 at *8 (M.D. Fla. 2008);

- ***Count V (Breach of Fiduciary Duty)***: "The cause of action accrues as soon as plaintiffs suffer damages resulting from the breach." *Ducat Fla., LP v. Wells Fargo Bank, N.A.*, 2013 WL 6667038, at *6 (S.D. Fla. 2013); and

- ***Count VI (Breach of Partnership Duties of Loyalty and Care)***: This claim also alleges a breach of fiduciary duty and is duplicative of Count V. Therefore, the cause of action accrues as soon as plaintiffs suffer damages resulting from the breach.

It is undisputed that, prior to February 15, 2014, there were no communications between Dr. Wright and Ira Kleiman. Beyond mere non-disclosure, plaintiffs do not point to any action on the part of Dr. Wright prior to February 15, 2014 that resulted in "successful concealment of the cause of action" plaintiffs brought for the alleged taking of bitcoins. *See Licul v. Volkswagen Grp. of Am., Inc.*, 2013 WL 6328734, at *6 (S.D. Fla. 2013) ("[I]naction and non-disclosure are wholly insufficient to supply the affirmative steps taken to prevent Plaintiffs from discovering

the basis of their claims that would be necessary before tolling based on fraudulent concealment becomes appropriate.").

As demonstrated in Section 6(a), Ira Kleiman first contacted Dr. Wright on February 15, 2014 and, within two months, by April 15, 2014, admittedly began to distrust Dr. Wright.  If there were any period during which fraudulent concealment tolling could be applicable, it would have been that two month period. *See Speier-Roche v. Volksw Agen Grp. of Am. Inc.*, at *7 (S.D. Fla. 2014).[11]  Such tolling, even if it applied, would be insufficient to save plaintiffs' claims alleging a wrongful taking of bitcoins, because the limitations period would have run between June 21, 2017 (assuming an accrual date of April 26, 2013 and adding two-months of tolling) and January 2, 2018 (assuming an accrual date of November 4, 2013 and adding two-months of tolling). Accordingly, the Court should enter JMOL on Dr. Wright's affirmative defense of statute of limitations as to all portions of plaintiffs' claims based on an alleged taking of bitcoins.

## CONCLUSION

For all these good and sufficient reasons, Dr. Wright has a right to Judgment as a Matter of Law on damages, and on Counts I-II and V-VIII of the Second Amended Complaint. Accordingly, Dr. Wright respectfully requests that this Court enter JMOL for him on those Counts, and as to damages. Alternatively, plaintiffs should be precluded from seeking damages and/or disgorgement measured on, or after, the date on which they filed their Complaint.

---

[11] There is no dispute that Plaintiffs claims would have been timely in April of 2014, which is when Ira Kleiman began to distrust Dr. Wright. This is therefore not a case where equitable estoppel is applicable because Dr. Wright's conduct did not cause plaintiffs to forebear from bringing this case within applicable time limits. *See Zainulabeddin v. Univ. of S. Fla. Bd. of Trustees*, 749 F. App'x 776, 786 (11th Cir. 2018) ("Because USF's conduct did not prevent her from filing on time, we conclude that equitable estoppel does not apply.").

Date: November 16, 2021,                    Respectfully submitted,

By: s/ Andres Rivero
ANDRES RIVERO
Florida Bar No. 613819
AMANDA MCGOVERN
Florida Bar No. 964263
JORGE A. MESTRE
Florida Bar No. 88145
ZAHARAH MARKOE
Florida Bar No. 504734
SCHNEUR KASS
Florida Bar No. 100554

RIVERO MESTRE LLP
2525 Ponce de Leon Boulevard,
Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: amcgovern@riveromestre.com
Email: jmestre@riveromestre.com
Email: zmarkoe@riveromestre.com
Email: zkass@riveromestre.com
Email: receptionist@riveromestre.com

MICHAEL A. FERNÁNDEZ
(*Pro Hac Vice*)

RIVERO MESTRE LLP
565 Fifth Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 880-9451
Email: mfernandez@riveromestre.com

*Counsel for Dr. Craig S. Wright*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(3)

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that undersigned counsel for the movant has conferred with all parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues.

*/s/ Andres Rivero*

## CERTIFICATE OF SERVICE

I CERTIFY that on November 16, 2021, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Andres Rivero*