# EXHIBIT B

```
 1               UNITED STATES DISTRICT COURT

 2               SOUTHERN DISTRICT OF FLORIDA

 3               CASE NO. 9:18-cv-80176-BB/BR

 4
      IRA KLEIMAN, as the personal representative
 5    of the Estate of David Kleiman, and
      W&K Info Defense Research, LLC,
 6
              Plaintiffs,
 7
      -vs-
 8
      CRAIG WRIGHT,
 9
              Defendant.
10

11    * * * * * * * * * * * * * * * * * *

12    VIDEOTAPED DEPOSITION OF DAVID KUHARCIK

13    DATE TAKEN: December 9, 2019

14    TIME: 1:05 p.m. - 2:25 p.m.

15    PLACE: 401 East Las Olas Boulevard

16    Ft. Lauderdale, Florida 33301

17
      TAKEN BEFORE: RICK E. LEVY, RPR, FPR
18                  AND NOTARY PUBLIC

19

20    * * * * * * * * * * * * * * * * * *

21

22

23

24

25
```

```
 1    APPEARANCES:

 2    On behalf of the Plaintiff:

 3         ANDREW BRENNER, ESQUIRE
           BOIES SCHILLER & FLEXNER, P.A.
 4         100 S.E 2nd Avenue
           Suite 2800
 5         Miami, Florida 33131
           abrenner@bsfllp.com

 6

 7         VEL FREEDMAN, ESQUIRE (via phone)
           ROCHE FREEDMAN, P.A.
 8         200 S. Biscayne Boulevard
           Suite 5500
 9         Miami, Florida 33131

10

11    On behalf of the Defendant:

12         ZALMAN KASS, ESQUIRE
           RIVERO MESTRE, P.A.
13         2525 Ponce de Leon Boulevard
           Suite 1000
14         Coral Gables, Florida 33134

15    Also Present: Carlos Coello, The Videographer

16

17

18

19

20

21

22

23

24

25
```

3

```
 1                    -  -  -
                   I N D E X
 2                    -  -  -

 3   WITNESS:      DIRECT    CROSS    REDIRECT    RECROSS
     DAVID KUHARCIK
 4   BY MR. KASS:     5                  53
     BY MR. BRENNER:           48
 5

 6                    -  -  -
                  E X H I B I T S
 7                    -  -  -

 8
     NUMBER                        PAGE
 9   DEFENDANT'S EX. 1               8
     DEFENDANT'S EX. 2              37
10   DEFENDANT'S EX. 3              38

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    Were there any things in particular that you had in

2    common with Dave?

3           MR. BRENNER:  Object to the form.

4           THE WITNESS:  Early on maybe a mutual interest

5       in computers and such.  We liked to drink beer

6       sometimes.

7    BY MR. KASS:

8       Q.   Are you aware that at some point in time Dave

9    was hospitalized?

10      A.   Yes.

11      Q.   What do you know about that hospitalization?

12      A.   I know that he had some undisclosed to me at

13   that point complications from his being an invalid.

14      Q.   Did this occur 2012, 2013; do you recall?

15      A.   It was sometime near the end.

16      Q.   Did you ever visit David in the hospital?

17      A.   No.

18      Q.   In general throughout the years when you

19   were -- stated that you were buddies with David would

20   you have conversations with him?

21      A.   Yes.

22      Q.   Were there any areas of conversation in

23   particular that you would have with Dave?

24          MR. BRENNER:  Just we're going to take this

25      slowly.  There could be certain communications you

1    had with Dave that will be privileged that the

2    we'll assert privilege.  I won't know that by how

3    he's asking.  The general thing we're going to

4    invoke privilege or at least decide whether to is

5    conversations regarding confidential accounting

6    type information.

7         So social conversations all that is fine.  So

8    if you go to a place that I may have to cut you off

9    or you think it's going to call for that I would

10   ask you to give me the heads up and then we can

11   confirm whether it does or whether to invoke the

12   privilege.

13        I don't know -- his question is fine because

14   it could call for both privileged and

15   non-privileged information.  I just don't know that

16   until you start answering.

17   BY MR. KASS:

18        Q.   I'll make this easier.  So putting aside any

19   communications related to accounting type stuff what

20   type of communications would you have with Dave?

21        A.   Talking about ex-wives, talking about some of

22   our history from back in the late '80s when we first got

23   together.  You know, just basic interactions on maybe

24   some computer related generalities.

25        Q.   You mentioned that you were -- I believe you

1    mentioned you were interested in computers?

2        A.   Yes.

3        Q.   So was that a point in common you had with

4    David?

5        A.   Yes.  Early on.

6        Q.   Would Dave ever talk to you about his work?

7        A.   As it pertained to his business and his

8    accounting or tax.

9        Q.   Other than where he's trying to get tax advice

10   from you related to his work would he just tell you the

11   type of work that he was doing?

12           MR. BRENNER:   And I appreciate the limitation

13       that counsel is making.  I would just add tax

14       advice or other accounting advice but other than

15       that you can answer the question.

16           THE WITNESS:   Repeat the question.

17   BY MR. KASS:

18       Q.   So other than tax advice or accounting related

19   activities would Dave just mention, you know, what type

20   of cases he's working on, what's going on at work,

21   things like that?

22       A.   No.

23       Q.   Would he talk to you about some sort of papers

24   that he was working on?

25       A.   No.

1      Q.    How about books that he was authoring?

2      A.    No.

3      Q.    How about technology related topics?

4      A.    Yes.

5      Q.    Do you recall any technology topics in

6    particular that he conversed about?

7      A.    Yes, virtual machines.

8      Q.    Do you recall any additional ones?

9      A.    No.

10      Q.    Did he ever speak to you about Bitcoin?

11      A.    No.

12      Q.    Did Dave ever talk to you about his friends?

13      A.    No.

14      Q.    Are you aware of any of Dave's friends as to

15    who they are?

16      A.    No.

17      Q.    Did Dave ever mention Craig Wright to you?

18      A.    No.

19      Q.    You mentioned that Dave and you would speak

20    about ex-wives; correct?

21      A.    Yes.

22      Q.    Could you give me a little bit more detail as

23    to what Dave would speak about?

24      A.    I don't really recall.  It was probably just

25    for comedic purposes.

1    had --

2         Q.   Do you know how Dave obtained his income?

3              MR. BRENNER:  First just answer that question

4         yes or no if you know.  We can address further if

5         you do.

6              THE WITNESS:  Yes.

7    BY MR. KASS:

8         Q.   Is the source of that information from when

9    you prepared his tax returns?

10        A.   Yes.

11        Q.   Do you have any other source of information

12   other than preparing his tax returns where he obtained

13   his income?

14        A.   No.

15        Q.   Are you able to describe Dave's financial

16   situation in the years 2010 through 2013?

17             MR. BRENNER:  Again I guess first I need you

18        to ask if he has that information and how he has it

19        and then we'll assess it.

20   BY MR. KASS:

21        Q.   I'll ask the question again.  Are you able to

22   describe Dave's financial situation in the years 2010

23   through 2013?

24        A.   Only my impression.

25        Q.   What was -- how did you form that impression?

```
 1

 2                    CERTIFICATE OF REPORTER

 3              THE STATE OF FLORIDA

 4              COUNTY OF BROWARD

 5

 6        I, Rick Levy, Registered Professional Reporter
      and Notary Public in and for the State of Florida at
 7    large, do hereby certify that I was authorized to
      and did report said deposition in stenotype of DAVID
 8    KUHARCIK; and that the foregoing pages, numbered
      from 1 to 54, inclusive, are a true and correct
 9    transcription of my shorthand notes of said
      deposition.
10
          I further certify that said deposition was
11    taken at the time and place hereinabove set forth
      and that the taking of said deposition was commenced
12    and completed as hereinabove set out.

13        I further certify that I am not attorney or
      counsel of any of the parties, nor am I a relative
14    or employee of any attorney or counsel of party
      connected with the action, nor am I financially
15    interested in the action.

16        The foregoing certification of this transcript
      does not apply to any reproduction of the same by
17    any means unless under the direct control and/or
      direction of the certifying reporter.
18
          IN WITNESS WHEREOF, I have hereunto set my hand
19    this 9TH day of December, 2019.

20
               _____
21
               Rick Levy, RPR, FPR, Notary Public
22             in and for the State of Florida
               My Commission Expires:  12/8/2023
23             My Commission No.:  GG937684

24

25
```

```
1                        CERTIFICATE OF OATH

2    THE STATE OF FLORIDA

3            COUNTY OF BROWARD

4

5        I, Rick Levy, REGISTERED PROFESSIONAL REPORTER,

6    Notary Public, State of Florida, certify that DAVID

7    KUHARCIK personally appeared before me on the 9th

8    day of December, 2019 and was duly sworn.

9

10           Signed this 10th day of December, 2019.

11

12

13

14

15             _____

16                   Rick Levy, RPR, FPR
                     Notary Public - State of Florida
                     My Commission Expires:  12/8/2023
17                   My Commission No.:  GG937684

18

19

20

21

22

23

24

25
```

```
 1           E R R A T A   S H E E T

 2    IN RE:  IRA KLEIMAN VS CRAIG WRIGHT

 3    DEPOSITION OF:  DAVID KUHARCIK

 4    TAKEN: 12/9/2019

 5        DO NOT WRITE ON TRANSCRIPT - ENTER CHANGES HERE

 6    PAGE #  LINE #   CHANGE                 REASON

 7    _____

 8    _____

 9    _____

10    _____

11    _____

12    _____

13    _____

14    _____

15    _____

16    _____

17    Please forward the original signed errata sheet to
      this office so that copies may be distributed to all
18    parties.

19    Under penalty of perjury, I declare that I have read
      my deposition and that it is true and correct
20    subject to   any changes in form or substance
      entered here.

21

22    DATE: _____

23

24    SIGNATURE OF
      DEPONENT:_____
25
```

```
 1   DATE:       December 10, 2019

 2   TO:         DAVID KUHARCIK
                 860 US Highway 1
 3               Suite 207B
                 North Palm Beach, Florida 33408
 4
     IN RE:      Ira Kleiman vs Craig Wright
 5

 6   Dear Mr. Kuharcik:

 7   Enclosed please find the original errata page with
     your copy of the transcript so DAVID KUHARCIK may
 8   read and sign their transcript.  Please have him/her
     make whatever changes are necessary on the errata
 9   page and sign it.  Then place the original errata
     page back into the original transcript.  Please then
10   forward the original errata page back to our office
     @1080 Woodcock Road, Suite 100, Orlando, Florida
11   32803.

12   If the errata page is not signed by the witness
     within 30 days after this letter has been furnished,
13   we will then process the transcript without a signed
     errata page.  If your client wishes to waive their
14   right to read and sign, please have him/her sign
     their name at the bottom of this letter and send it
15   back to the office.

16        Your prompt attention to this matter is

17   appreciated.

18   Sincerely,

19   _____
     RICK E. LEVY, RPR
20
     I do hereby waive my signature:
21
     _____
22   DAVID KUHARCIK

23   cc via transcript:  Kass Zalman, Esq.
                         Andrew Brenner, Esq.
24   file copy

25
```