**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K INFO DEFENSE RESEARCH, LLC<br><br>*Plaintiffs,*<br><br>v.<br><br>CRAIG WRIGHT<br><br>*Defendant.* | CASE NO.: 9:18-cv-80176-BB |

**REQUEST FOR ADVERSE INFERENCE JURY INSTRUCTION OR, ALTERNATIVELY, JUDICIAL ADMISSION JURY INSTRUCTION**

Throughout this litigation, Plaintiffs Ira Kleiman as personal representative of the Estate of David Kleiman and W&K Info Defense Research, LLC ("Plaintiffs") have found attempts to prove their case hindered by Defendant Craig Wright's lies and obfuscation, violations of Court orders, and forgeries. Defendant's misconduct has continued during trial and may have given the jury a misleading impression of the evidence supporting Plaintiffs' claims. Defendant has even walked away at trial from his own repeated representations to Plaintiffs and to the Court in response to Court orders about his bitcoin holdings. Plaintiffs request that the Court provide the jury with instructions tied to Defendant's misconduct in this case regarding: (1) his bitcoin holdings, and (2) spoliation.[1]

---

[1] The text of the spoliation jury instruction attached as Exhibit B is identical to the spoliation instruction submitted with Plaintiffs' proposed jury instructions (ECF No. [618] at 37), and is included here for the Court's convenience and to identify the evidence from trial supporting its use.

1

I.  **BACKGROUND**[2]

**A.  Defendant's Continued Misrepresentations About His Bitcoin Holdings.**

A great deal of time and effort has been dedicated by Plaintiffs and the Court (both Your Honor and Magistrate Judge Reinhart) in this litigation to identifying Defendant's bitcoin holdings, and Defendant's account has shifted significantly over time. As detailed below, the Court previously denied a request for an adverse inference instruction on this issue based on Dr. Wright's representation (through counsel) certifying that he had provided Plaintiffs with a list of "his bitcoin holdings." See P446, now in evidence. However, at trial he has disavowed that certification. Accordingly, the Court should issue the adverse instruction previously contemplated.

The history of Dr. Wright's statements on this issue is convoluted. Initially, Defendant represented that he could not identify his own bitcoin holdings because he needed to wait for a mysterious "bonded courier" to arrive in January 2020. Nonetheless, he repeatedly represented that he mined at least through Block 70 in the blockchain. ECF No. [211], at 3–5. In part because Defendant asserted that a bonded courier was coming with the information necessary to identify his holdings, the Court reversed issue sanctions entered against Defendant for not complying with a Court Order to produce his list of bitcoin (ECF No. [217] but ordered him to file a notice of compliance with the order to produce a list of his bitcoin holdings by February 3, 2020. ECF No. [373]. The Court explained that "[i]n the event the bonded courier does not arrive, and the Plaintiffs are not given access to this information, which the Court has already found[] directly relevant to their claims, the Court finds additional sanctions would be warranted. Specifically, pursuant Rule

---

[2] Plaintiffs focus in this background section on new evidence of misconduct supporting their requested adverse inference jury instructions, and incorporate by reference the fuller history of Defendant's misconduct in this case that Plaintiffs set forth in their Omnibus Sanctions Motion, ECF No. [507].

37(c)(1)(B), the Court will inform the jury of Defendant's failure to disclose the information sought by the Plaintiffs." *Id.* at 22. On January 14, 2020, Defendant filed a notice of compliance that he had "produced a list of his bitcoin holdings, as ordered by the Magistrate Judge, to plaintiffs today." ECF No. [376].[3] He nonetheless assured Plaintiffs that this list was authentic. *See* Dr. Craig Wright's Suppl. Response to Plaintiffs' Interrogatories at 2 (March 12, 2020) (stating that "[t]he receipt of these documents and my inspection of them allowed me to recognize the authenticity of the other documents, including the list of bitcoin public addresses"). In denying Plaintiffs' subsequent motion for default sanctions, the Court explained that it had "previously left open the possibility that it would impose an adverse inference sanction . . . conditioned on Defendant not producing his list of bitcoin holdings" but would decline to impose an adverse inference sanction because Defendant had by then produced such a list. ECF No. [595], at 39.

At trial, however, Defendant refused to acknowledge that the list he previously certified was accurate, claiming now that only the first 15 blocks (750 bitcoin) are his and that the remainder on the list are his company's bitcoin (or perhaps his wife's). Specifically he testified:

> Q. And you eventually produced such a list that you claimed were your Bitcoin; isn't that correct Dr. Wright?
>
> A. That is not correct.
>
> Q. Vs. Ms. Vela can you please put up P554 for just the witness and counsel. Do you recognize this Exhibit Dr. Wright? A. It looks like a file that I forwarded.
>
> Q. Dr. Wright is this the list you provided in response to the Court's order?
>
> A. I responded with everything I received. The original list that I gave of only the first 15 address addresses is the -- basically what I mined as me. So I've done both. Blocks 1 to 15 are the addresses that Craig Wright with mined as Craig Wright. In full, in completion, the end. On top of that, I've sent

---

[3] The number of bitcoin identified in that list was approximately 300,000 less than the evidence shows he mined with Dave Kleiman.

3

> other files as well.
>
> Q. Is this the list that you provided to satisfy the Court's order that you identify the Bitcoin you mined before December 31st, 2013?
>
> A. No. The list of the first 15 addresses is the list of Bitcoin I mined as Craig Wright, the Defendant. This is another list that I was given I'm not a trustee –
>
> Q. So you -- sorry please finish?
>
> A. So I've given every file I've received. I've given every computer for staff members at the time. I've given computers for my accountants at the time. I have not checked them. I have not validated them. I have not verified them. I get something, I hand it to my lawyers and to give into the case. That is my duty. I take my duty seriously.

Trial Tr. Day 7 at 149:3–150:12. In addition, in response to the question "Dr. Wright you claim you mined the bitcoin on this list by yourself without Dave; isn't that correct?," Defendant responded "No, I did not." *Id.* at 155:7-9. And then, on the following trial day, Defendant testified:

> Q.
>
> MR. FREEDMAN: Okay. Then let's publish P446 also, please.
>
> Q. Dr. Wright, this filing that was filed on your behalf says Dr. Wright notifies the Court that the third party has provided the necessary information and key slice to unlock the corporate repped file and Dr. Wright has produced a list of his Bitcoin holdings as ordered by the magistrate judge to Plaintiffs today. Do you see that?
>
> A. Yes. And as I specified, the first 15 were mine. The others were corporate. So I have testified and I stick by the fact the first 15 are mine. I agree. The others belong to the company. I don't know which ones belong to the company. I testified and I stand by it the first 15 are mine.
>
> Q. Is it your Bitcoin holdings or is it not your Bitcoin holdings?
>
> A. The first 15 are my Bitcoin hol[d]ings. The first 15.

Trial Tr. Day 9 PM (Rough) at 30:5-31:11 ("Q"); *id.* at 32:1–3.

Plaintiffs also recently discovered that Defendant distanced himself from the list of his bitcoin holdings that he filed in this Court in connection with certain ongoing U.K. judicial

4

proceedings, making statements inconsistent with his representations to this Court and Plaintiffs. *See* First Witness Statement of Dr Craig Steven Wright, *Tulip Trading Limited and Bitcoin Ass'n for BSV*, Claim No. BL-2021-000313 (U.K. High Court of Justice, filed Apr. 29, 2011), at 25 (representing that he "did not personally collate the list" of Bitcoin holdings submitted to the Court" and "the purpose of the list was not to assert ownership over all of those addresses."); *id.* at 14 (representing that he has the private keys to his Bitcoin holdings at his home and could have accessed the holdings if he had wanted to). A copy of Defendant's filing in the U.K. is attached as Exhibit C.

An adverse inference instruction is warranted.

### B.  Defendant's Reliance on Fraudulent Documents.

With their proposed jury instructions, Plaintiffs submitted a proposed spoliation of evidence instruction. ECF No. [618], at 37. That instruction is warranted based on the overwhelming evidence admitted at trial regarding Defendant's forgeries and spoliation of evidence. *See, e.g.*, P240 (Letter from Australian counsel terminating representation based on "serious questions about the integrity of documents provided by Dr Craig Wright, both to [his] office and to the Australian Taxation Office"); P637, ¶¶ 52–53. 101 (Defendant forged contracts with W&K) and pp. 118–32 (chart of Defendant's "discrepancies," including false statements and forged/altered documents at issue in this case); *see also id.*, ¶¶ 12 n.14 (Defendant "admitted to backdating several documents" involving Coin-Exch), 111 (finding documents submitted by Defendant were a "sham"), 115 (finding Defendant submitted documents as "disguise for either difference transactions, or no transactions"); P795, ¶¶ 220–23 (discussing "numerous anomalies and inconsistencies" in the evidence presented by Defendant and his agents, concluding contract with W&K "amounts to a sham," and finding that Defendant "fabricated" electronic evidence in connection with Dave Kleiman and W&K), 227 ("documentation was created by [Defendant] in

5

order to fraudulently decide the ATO and support [his] false and misleading statements"), 228.8 (forgery of Dave Kleiman's signature), 228–29 (discussing "inconsistencies and anomalies relating to" purported contract with W&K); P30, ¶¶ 267-68 (forgeries of David Kleiman's signature); P565, ¶¶ 21.1, 38.1 (finding Defendant made false or misleading statements involving W&K), 38.7 (finding emails produced by Defendant were "false or doctored" and questioning "the veracity and genuineness" of other electronic communications, including Bitmessages), 68 and 74-78 (finding documents and statements by Defendant relating to W&K "false or misleading"); P604 & P605, ¶¶ 176-77 ("In the present case there are numerous anomalies and inconsistencies in the purported agreement between [Defendant] and W&K that lead us to conclude that no liability arose from it.")

Testimony at trial further confirms that Defendant forged and spoliated evidence in this case. *See* Trial Tr. (Dr. Edman) Day 9 PM (Rough) at 43:15–25, 45:25–46:6, 47:4-7 (P823 is a forgery), 56:13–18 (no evidence anyone other than Defendant forged P823), 56:20–25 (no evidence any of forgeries created by anyone but Defendant); Trial Tr. (Dr. Edman) Day 10 PM (Rough) at 14:11-13 (P546 is a forgery), 19:3-14 (P135 is a forgery), 22:16-18 (P55 is a forgery), 26:25–27:4 (P452 is a forgery), 34:9-16 (P807 is a forgery), 41:25–43:2 (P808 is a forgery), 51:4–10 and P822 (Defendant swearing to authenticity of documents submitted to Court that are forgeries), 51:17–24 (P35 is a forgery), 73:15–17 (P538 is a forgery), 82:14–17 (P36 is a forgery). In addition to the several documents he specifically discussed with the jury, Dr. Edman testified that he had identified approximately 25-30 additional forgeries Defendant produced in this case. *Id.* at 86:16–25.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 37(c)(1)(B) provides that if a party fails to provide documents or information, "the court, on motion and after giving an opportunity to be heard: . . .

6

(B) may inform the jury of the party's failure." An "adverse inference makes a finding or imposes a rebuttable presumption that the missing evidence would have been unfavorable to the party engaging in the misconduct." *Fed. Trade Comm'n v. First Universal Lending, LLC*, 773 F. Supp. 2d 1332, 1352 (S.D. Fla. 2011). "There are different types of adverse inferences: (1) a jury may be instructed that certain facts are deemed admitted and must be accepted as true; (2) the Court may impose a mandatory, albeit rebuttable, presumption; or (3) the jury must presume that the lost evidence is relevant and favorable to the innocent party, but also consider the spoliating party's rebuttal evidence, and then decide whether to draw an adverse inference." *Penick v. Harbor Freight Tools, USA, Inc.*, 481 F. Supp. 3d 1286, 1295 (S.D. Fla. 2020) (Bloom, J.) (quotation marks omitted).

"A jury instruction on spoliation of evidence is required 'only when the absence of that evidence is predicated on bad faith.'" *Cox v. Target Corp.*, 351 F. App'x 381, 383 (11th Cir. 2009) (quoting *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997)). No showing of malice is required for a spoliation instruction. *See, e.g.*, *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009).

### III.   ARGUMENT

#### A. The Court Should Instruct the Jury On Defendant's Bitcoin Holdings.

The Court should provide the jury with an instruction to address the prejudice created by Defendant's apparent failure to produce a list of his complete bitcoin holdings as ordered by the Court.

As the Court held in its January 10, 2020 order, Defendant's bitcoin holdings is "directly relevant to" Plaintiffs' claims, and the appropriate sanction for this clearly willful failure to produce that information is to "inform the jury of the Defendant's failure to disclose the information sought by the Plaintiffs." ECF No. [373], at 22 (citing Fed. R. Civ. P. 37(c)(1)(B)).

The Court may appropriately instruct the jury that the evidence shows identification of at least 1,100,111 bitcoin held by Defendant as of April 26, 2013. *See* Exhibit A at 1. Defendant has acted in bad faith to obscure his bitcoin holdings from this Court, the jury, and Plaintiffs to try to gain an unfair advantage. It is therefore appropriate for the Court to instruct the jury that it can believe Defendant's own representation that he mined more than 1.1 million bitcoin with Dave Kleiman, notwithstanding his failure to identify the entirety of those holdings. *See, e.g.*, *Penick*, 481 F. Supp. 3d at 1295

At a minimum, the Court should alternatively hold Defendant to his representations to the Court in his Notice of Compliance, ECF No. [376], and the Court should instruct the jury that Defendant certified that he holds at least the 820,200 bitcoin in his filed list, and instruct the jury to accept Defendant's judicial admission on that point as true. *See* Exhibit A at 2 (alternative instruction).

### B. The Court Should Instruct the Jury On Defendant's Spoliation Of Evidence,

Particularly in light of Dr. Edman's unrebutted testimony at trial, it is clear that the spoliation instruction proposed by Plaintiffs in the Joint Proposed Jury Instructions, ECF No. [618], at 37, is needed. The evidence shows Defendant altered evidence in this case to frustrate Plaintiffs' discovery and presentation of evidence, and to support his defense against Plaintiffs' claims. Plaintiffs have attached this instruction as Exhibit B, adding citations to the trial transcript in support.

A spoliation instruction "is required 'only when the absence of that evidence is predicated on bad faith.'" *Cox*, 351 F. App'x at 383 (quoting *Bashir*, 119 F.3d at 931). Florida district courts regularly instruct juries on spoliation, even when there is no direct evidence of the destruction or alteration of evidence, and even when there is no evidence of malice. *Austrum v. Fed. Cleaning Contractors, Inc.*, 149 F. Supp. 3d 1343, 1351 (S.D. Fla. 2016); *see Penick v. Harbor Freight*

8

*Tools, USA, Inc.*, 481 F. Supp. 3d 1286, 1295–96 (S.D. Fla. 2020); *Wilsey v. NCL (Bahamas) Ltd.*, 2017 WL 7803804, at *3 (S.D. Fla. Nov. 3, 2017); *Alabama Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 746–47 (N.D. Ala. 2017); *Smith v. Sohaan Dev., Inc.*, No. 2013 WL 5720163, at *4 (M.D. Fla. Oct. 1, 2013); *St. Cyr v. Flying J Inc.*, 2007 WL 1716365, at *5 (M.D. Fla. June 12, 2007).

As discussed in the Background section above, the evidence in this case—particularly the evidence related to the ATO proceedings and the trial testimony from Dr. Edman—demonstrates that Defendant has manipulated the record in this case to favor himself. Plaintiffs' proposal of a rebuttable presumption that the forgeries were done to support Defendant's case leaves Defendant free to argue and point to any contrary evidence. The permissive inference proposed by Plaintiffs is the mildest available adverse inferences and is appropriate here. *See, e.g.*, *Penick*, 481 F. Supp. 3d at 1295.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court give the jury one of the two instructions attached as Exhibits A, and give the spoliation instruction attached as Exhibit B.

Dated:  November 20, 2021

Respectfully submitted,

By: */s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman
**ROCHE FREEDMAN LLP**
200 S. Biscayne Blvd.
Suite 5500 Miami, Florida 33131
vel@rcfllp.com

Kyle W. Roche
**ROCHE FREEDMAN LLP**
99 Park Avenue, 19th Floor
New York, New York 10016
kyle@rcfllp.com

Andrew S. Brenner
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd Street, Suite 2800
Miami, Florida 33131
abrenner@bsfllp.com

Maxwell V. Pritt
Alexander J. Holtzman
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, Floor 41
San Francisco, CA 94104
mpritt@bsfllp.com
aholtzman@bsfllp.com

*Counsel to Plaintiffs Ira Kleiman as Personal Representative of the Estate of David Kleiman and W&K Info Defense Research, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 20, 2021 a true and correct copy of the foregoing was filed with CM/ECF, which caused a copy to be served on all counsel of record.

 */s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman

10