### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

### Case No. 18-cv-80176-BLOOM/Reinhart

IRA KLEIMAN, *et al*.,

       Plaintiffs,

v.

CRAIG WRIGHT,

       Defendant.

_____/

## ORDER ON MOTION FOR JUDGMENT AS A MATTER OF LAW

**THIS CAUSE** is before the Court upon Defendant's Motion for Judgment as a Matter of

Law, ECF No. [780] ("Motion"), filed on November 16, 2021. Plaintiffs filed a Response in

Opposition to the Motion, ECF No. [789-1] ("Response"). The Court has carefully reviewed the

Motion, all supporting and opposing submissions, the evidence presented at trial, the record in this

case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion

is denied.

### I.      BACKGROUND

The Court assumes the parties' familiarity with the general factual allegations and nature

of this case.

### II.     LEGAL STANDARD

A motion for judgment as a matter of law is governed by Rule 50 of the Federal Rules of

Civil Procedure. Under Rule 50(a), "[i]f a party has been fully heard on an issue during a jury trial

and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to

find for the party on that issue, the court may resolve the issue against the party." Fed. R. Civ. P.

50(a). The Eleventh Circuit has instructed that Rule 50 motions "should be granted . . . when the

plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action." *Howard v. Walgreen Co.*, 605 F.3d 1239, 1242 (11th Cir. 2010); *see Chaney v. City of Orlando, Fla.*, 483 F.3d 1221, 1227 (11th Cir. 2007) ("Under Rule 50, a party's motion for judgment as a matter of law can be granted at the close of evidence or, if timely renewed, after the jury has returned its verdict, as long as there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party." (internal quotation marks omitted) (citations omitted)).

When reviewing a motion under Rule 50, the Court is obligated to review the evidence in the light most favorable to the non-moving party. *See Hanes v. Greyhound Lines, Inc.*, 316 F. App'x 841, 842 (11th Cir. 2008) (citing *Daniel v. City of Tampa*, 38 F.3d 546, 549 (11th Cir. 1994)); *see also Sherrod v. Palm Beach Cnty. Sch. Dist.*, 424 F. Supp. 2d 1341, 1344 (S.D. Fla. 2006) ("[The Court] must view the evidence in a light most favorable to the plaintiff, and must not weigh the evidence nor assess witness credibility." (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000))). Thus, as the Eleventh Circuit has noted, "[w]here there is no change in the evidence, the same evidentiary dispute that got the plaintiff past a summary judgment motion asserting [a particular argument] will usually get that plaintiff past a Rule 50(a) motion asserting the [same argument], although the district court is free to change its mind." *Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir. 2002) (citing *Abel v. Dubberly*, 210 F.3d 1334 (11th Cir. 2000)).

## III.    DISCUSSION

Pursuant to Fed. R. Civ. P. 50(a), Defendant requests judgment as a matter of law in its favor. The Motion makes nine primary arguments as to Count I (Conversion); Count II (Unjust Enrichment); Count V (Breach of Fiduciary Duty); Count VI (Breach of Partnership Loyalty &

Care); Count VII (Fraud); Count VIII (Constructive Fraud); and Count IX (Civil Theft). The Court addresses each argument in turn.

### A. Damages: Valuation of Bitcoin and Intellectual Property

Defendant argues that Plaintiffs have failed to provide legally sufficient evidence from which a reasonable jury could value the Bitcoin and intellectual property at issue in this case. Specifically, Defendant maintains that Plaintiff cannot rely on the number and market price of Bitcoins to calculate damages under Florida's "blockage rule" and "reasonable certainty rule." Additionally, Defendant avers that Plaintiffs failed to offer any expert testimony to support valuation of the Bitcoin and intellectual property, and any purported valuation is not supported by competent, substantial evidence.

#### 1. Valuation of Bitcoin

##### a. Blockage Rule

Defendant first argues that the jury cannot rely on the market price of Bitcoin to calculate damages under "Florida's 'blockage rule' for valuing large blocks of traded assets." ECF No. [780] at 3-4. "The blockage rule provides that, when securities are being valued, the size of the holding, and not simply the quoted price per share is a relevant consideration." *Rushton v. Comm'r*, 498 F.2d 88, 90 (5th Cir. 1974). This principle recognizes "the market fact that a block of shares may be so large in relation to the usual trading volume or to the number of shares outstanding that it would necessarily go at a discount." *Id.*; *see also Fla. Nat. Bank of Jacksonville v. Simpson*, 59 So. 2d 751, 769 (Fla. 1952) ("The 'Blockage Rule' does not necessarily or inevitably contemplate an immediate or single sale of all shares of a large block of stock which might drop the value thereof almost to the vanishing point *but it anticipates a planned sales program which would be followed by a prudent businessman*[.]" (emphasis added)).

"The 'Blockage Discount Theory' is properly classified as a rule of evidence. It should be considered or applied when and to the extent that the facts and circumstances of the case as disclosed by the evidence require." *Simpson*, 59 So. 2d at 769; *see also Est. of Sawade v. Comm'r*, T.C. Memo. 1984-626, 1984 WL 15317, *aff'd*, 795 F.2d 45 (8th Cir. 1986) ("Blockage is not a law of economics, a principle of law or a rule of evidence. . . . Blockage is not a rule of law, but a question of fact." (citations omitted)). Notably, "[t]here is no presumption of blockage" and the person seeking to invoke the rule bears the burden of proof. *Sawade*, 1984 WL 15317; *see also Simpson*, 59 So. 2d at 767 ("The majority concurs in this view and is further of the opinion that the burden of showing the necessity or probability of a sale, or some facts which would make the rule or doctrine applicable, was on the plaintiffs[.]").

Upon review, the Court cannot conclude that the blockage rule bars recovery for the value of the Bitcoin at issue. Indeed, as Plaintiffs correctly set forth, the burden of proof regarding the application of the blockage rule is upon Defendant. Defendant cites to the testimony of Andreas Antonopoulos for the proposition that "a one-time sale would 'probably' not be viable, given the large number of bitcoins that are the subject of the claim." ECF No. [780] at 3; *see also* Nov. 2, 2021, Trial Tr. 105:15-106:2. However, Defendant has not introduced affirmative evidence demonstrating that "the block is so big in comparison with the amounts of [Bitcoin] which have been traded in on [sic] the exchange where it is listed" such that "it could not be sold on such market at its quoted prices *within a reasonable time* by skilled brokers following prudent practices of liquidation." *Sawade*, 1984 WL 15317 (emphasis added) (citations omitted); *see also Simpson*, 59 So. 2d at 769. As such, Defendant has not sustained his burden of proof that he is entitled to a blockage discount in valuing the Bitcoin.

### b. Reasonable Certainty Rule

Next, Defendant argues that Bitcoin's market price cannot be used to calculate damages under Florida's "reasonable certainty" rule. "Under the certainty rule, *which applies in both contract and tort actions*, recovery is denied where the fact of damages and the extent of damages cannot be established within a reasonable degree of certainty." *Iron Bridge Tools, Inc. v. Meridian Int'l Co., USA*, No. 13-61289-CIV, 2016 WL 8716673, at *8 (S.D. Fla. Feb. 2, 2016) (emphasis in original) (quoting *Miller v. Allstate Ins. Co.*, 573 So. 2d 24, 27-28 (Fla. 3d DCA 1990))). "The 'reasonable certainty' requirement is a 'threshold necessary to be considered legally probative of the amount or extent of damages' suffered by a plaintiff." *In re Sherwood Invs. Overseas Ltd., Inc.*, No. 6:10-AP-00158-KSJ, 2015 WL 4486470, at *27 (Bankr. M.D. Fla. July 22, 2015), *aff'd*, No. 6:15-CV-1469-ORL-40TBS, 2016 WL 5719450 (M.D. Fla. Sept. 30, 2016).

In the Motion, Defendant conclusively argues that the reasonable certainty rule should bar recovery. To the extent Defendant contends that the amount of damages is speculative, that argument fails. Indeed, "uncertainty as to the precise amount of, or difficulty in proving damages, does not preclude recovery if there is some reasonable basis in the evidence for the amount awarded." *Clearwater Assocs. v. Hicks Laundry Equip. Corp.*, 433 So. 2d 7, 8 (Fla. 2d DCA 1983); *see also United Steel & Strip Corp. v. Monex Corp.*, 310 So. 2d 339, 342 (Fla. 3d DCA 1975) ("It is incumbent upon a plaintiff in a trial court to present evidence to justify an award of damages in definite amount. Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating an amount in money with reasonable certainty."). The Court is satisfied that the evidence presented at trial affords a sufficient basis for estimating the amount of damages with reasonable certainty.

Specifically, the amount of Bitcoin and its market price provide an adequate basis for the jury to calculate damages. *See Rensel v. Centra Tech, Inc.*, No. 17-24500-CIV, 2019 WL 6828270,

at *5 (S.D. Fla. Dec. 13, 2019) (calculating dollar value of Bitcoin and Ethereum on date of sale); *Rensel*, No. 17-24500-CIV, ECF No. [260-3]; *see also Ox Labs, Inc. v. Bitpay, Inc.*, No. CV 18-5934-MWF (KSX), 2019 WL 6729667, at *7 (C.D. Cal. Sept. 27, 2019) ("[I]t seems equitable to determine the value of the 200 Bitcoins based on the market value of the 200 Bitcoins on the day that Plaintiff erroneously credited Defendant."); 17 Fla. Jur 2d Damages § 67 ("The appropriate economic market to be used in approximating its reasonable market value is the usual market where the property or goods had been purchased.").

Here, Mr. Antonopoulos testified at trial as to the market price of Bitcoin and Bitcoin forks on various dates as retrieved from the CoinCap price aggregator. Nov. 2, 2021, Trial Tr. 29:8-36:14, 102:12-13. To the extent Defendant contends that Mr. Antonopoulos is not qualified to testify about the spot market price of Bitcoin and Bitcoin forks, the Court previously rejected this argument in addressing Defendant's Motion to Exclude Opinion Testimony of Plaintiffs' Expert Witnesses, ECF No. [500]. ECF No. [622] ("*Daubert* Order") at 66-67. Further, Defendant has failed to explain how the damage calculation at issue involves complex financial calculations, as opposed to simple arithmetic. *See Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*, 678 F. App'x 839, 860 n.13 (11th Cir. 2017) (affirming exclusion of expert testimony that performed "simple arithmetic . . . which was 'within the understanding' of a jury." (quoting Fed. R. Evid. 702 ("establishing that expert testimony is appropriate based on 'scientific, technical, or other specialized knowledge'"))). Based on the foregoing, the Court is not persuaded that the evidence presented at trial fails to justify an award of damages in a definite amount.

### 2.   Valuation of Intellectual Property ("IP")

Defendant further argues that "Plaintiffs also failed to offer any competent evidence of the alleged value of the purported intellectual property at issue." ECF No. [780] at 6. Defendant contends that the evidence introduced at trial—namely, the Business Reports and Values cost

based valuation of the IP, the Baker McKenzie draft IP valuation, and the WKID Cost Estimation of the IP—demonstrates "[P]laintiff's reliance on assumptions that are, at the very least, improperly speculative." *Id.* at 6-7. Viewing the evidence in the light most favorable to Plaintiff, the Court is satisfied that there is sufficient evidence from which the jury can value the IP at issue.

First, Defendant's statements of the value of the IP are competent evidence.[1] *See Daniec v. Boatarama, Inc.*, 588 F. App'x 947, 950 (11th Cir. 2014) (Under Florida law, a property owner can testify as to his opinion of the value of the property (collecting cases)); *Meredith v. Hardy*, 554 F.2d 764, 765 (5th Cir. 1977) ("An owner is always competent to give his opinion on the value of his property. As to whether the owner's opinion is accurate, that is a matter for cross-examination and goes merely to the weight and not to admissibility." (internal citation omitted)). Here, the evidence presented at trial demonstrates that Defendant told the Australian Tax Office ("ATO") that the intellectual property that he acquired after David Kleiman's death was $56 million. Ex. [P172] at 42. Additionally, in 2014, Defendant also circulated a report regarding "the valuation of the W&K software" which estimated the market price for W&K's software at $303,895,458 AUD. Ex. [P166]; *id.* at 56. Notably, the e-mail correspondence demonstrates that the report was compiled by Allan Pederson based on data provided by Defendant. *Id.* at 1-3, 5.

Moreover, with respect to the BVR Report, it provides that the "software has a value of $378,475,713." Ex. [P183] at 24. The BVR Report was created by Lee Goldstein, who Defendant hired and testified was "a valuer that is highly regarded by the tax office[.]" Nov. 15, 2021, Trial Tr. at 50:16-19. While Defendant contends that this report does "nothing more than speculate as to future costs that four Bitcoin-related companies 'would incur in creating the IP[,]" the Court fails to recognize anything in the BVR Report suggesting that the IP had not been developed at the

---

[1] While Defendant challenges the valuations of the intellectual property, that goes to weight of the evidence.

time of the valuation. ECF No. [780] at 6; Ex. [P183] at 13 ("As the benefits deriving from the software will not be accessible for a number of years, this is the only valuation approach that can be used.").

Based on the foregoing, the Court finds no basis to award judgment as a matter of law in favor of Defendant as to damages.

## B. Count I – Conversion

Defendant seeks judgment as a matter of law on Plaintiffs' claim for conversion, in which he challenges Plaintiffs' requests for compensatory and punitive damages. ECF No. [780] at 8-9.

Under the circumstances presented, the appropriate measure of compensatory damages is the highest value of the Bitcoin and IP at issue between the time of the conversion and the date of the jury's verdict. *See Moody v. Caulk*, 14 Fla. 50, 52-53 (1872); *Haddad v. Cura*, 674 So. 2d 168, 169 (Fla. 3d DCA 1996); *see also Wright v. Skinner*, 16 So. 335 (Fla. 1916); *Skinner v. Pinney*, 19 Fla. 42, 51 (1882); *Foley v. Dick*, 436 So. 2d 139, 141 (Fla. 2d DCA 1983). Viewing the evidence in the light most favorable to Plaintiffs, the jury has ample evidence to support an award of compensatory damages for conversion. *See supra* III.A.

As to punitive damages, the Court is also satisfied that there is sufficient evidence to support such an award. *See Palm Beach Atl. Coll., Inc. v. First United Fund, Ltd.*, 928 F.2d 1538, 1546 (11th Cir. 1991) ("[U]nder Florida law, an award of punitive damages is proper when a defendant's conduct is characterized by willfulness, wantonness, maliciousness, gross negligence or recklessness, oppression, outrageous conduct, deliberate violence, moral turpitude, insult, or fraud." (internal quotation marks omitted) (citations omitted)). Viewing the evidence in the light most favorable to Plaintiffs, Plaintiffs have provided grounds for a jury to determine that Defendant forged documents, made misrepresentations to the Australian courts to obtain fraudulent judgments against W&K, and made numerous fraudulent misrepresentations to Ira

Kleiman, and involved innocent third-party Debra Kobza and her nonprofit to further his purported

fraud, with knowledge of the high likelihood of resulting injury to the Plaintiffs. Exs. [P117],

[P122], [P156] [P229], [P509], [P710], & [P748]; *see also* J. Wilson Dep. Tr. at 33:9-14; D. Kobza

Dep. Tr. at 19:9-25.

### C. Count II – Unjust Enrichment

Defendant seeks judgment as a matter of law on Plaintiffs' claim for unjust enrichment.

ECF No. [780] at 10-11. "The elements of a claim for unjust enrichment are: (1) a benefit conferred

upon the defendant by the plaintiff, (2) appreciation by the defendant of such benefit, and (3)

acceptance and retention of such benefit by the defendant under such circumstances that it would

be inequitable for him to retain it without paying the value thereof." *Hercules, Inc. v. Pages,* 814

F. Supp. 79, 80 (M.D. Fla. 1993) (citing *Henry M. Butler, Inc. v. Trizec Properties, Inc.*, 524 So.

2d 710, 712 (Fla. 2d DCA 1988)).

Defendant first maintains that no reasonable jury could find him liable for unjust

enrichment because such a claim "cannot be predicated on wrongful acts such as theft." ECF No.

[780] at 10 ("[A]t trial, plaintiffs repeatedly claimed that Dr. Wright stole from the estate of David

Kleiman").[2]  While some courts have held that a claim for unjust enrichment may not be predicated

on a wrong committed by a defendant, other courts reject this position and maintain that Florida

law makes no distinction between wrongful enrichment and unjust enrichment—i.e., that a claim

for unjust enrichment may be predicated on a wrong. *Compare State of Fla., Off. of Atty. Gen.,*

---

[2] To the extent Defendant suggests that a claim for unjust enrichment cannot be based on the same wrongful conduct as a legal claim, that proposition is contrary to the Eleventh Circuit's holding in *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 F. App'x 714, 722 (11th Cir. 2011), *rev'd in part on other grounds*, 824 F.3d 1311 (11th Cir. 2014) (The general rule "that equitable remedies are not available under Florida law when adequate legal remedies exist . . . does not apply to unjust enrichment claims. . . . 'It is only upon a showing that an express contract exists between the parties that the unjust enrichment . . . count fails.'" (alterations adopted) (quoting *Williams v. Bear Stearns & Co.*, 725 So.2d 397, 400 (Fla. 5th DCA 1998))).

*Dep't of Legal Affs. v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1309 (S.D. Fla. 2005), *with State Farm Fire & Cas. Co. v. Silver Star Health and Rehab Inc.*, No. 6:10-cv-1103-Orl-31GJK, 2011 WL 6338496, at *6 (M.D. Fla. Dec. 19, 2011), *aff'd sub nom. State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579 (11th Cir. 2013) (the Eleventh Circuit did not address the question of whether an unjust enrichment claim may be predicated on a wrong).[3]

Irrespective of whether an unjust enrichment claim can be predicated on a wrong, viewing the evidence in the light most favorable to Plaintiffs, the record amply supports that Plaintiffs conferred significant benefits on Defendant, which he voluntarily accepted and retained that benefit, and that it would be inequitable for Defendant to retain the benefit without paying the value of the benefit to Plaintiffs. *See Silver Star*, 739 F.3d at 584 ("Florida courts have long recognized a cause of action for unjust enrichment 'to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity." (quoting *Butler v. Trizec Props., Inc.*, 524 So. 2d 710, 711 (Fla. 2d DCA 1988))). Further, with respect to damages, there is sufficient evidence to support a determination of the benefit Plaintiffs conveyed on Defendant. *See supra* III.A.[4] As such, the Court is satisfied that Plaintiffs have set a *prima facie* case with respect to the essential elements of their unjust enrichment claim.

---

[3] *But see Rajput v. City Trading, LLC*, 476 F. App'x 177, 180 (11th Cir. 2012) (reversing dismissal of plaintiff's complaint alleging facts connecting defendants to the alleged fraud sufficient "to support a claim of unjust enrichment based on Defendants' control of funds illicitly gained through the fraud").

[4] *See Levine v. Fieni McFarlane, Inc.*, 690 So. 2d 712, 713 (Fla. 4th DCA 1997) (damages for unjust enrichment are based on value from standpoint of the recipient of the benefits); *see also Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 806 n.5 (11th Cir. 1999) (Unjust enrichment is "measured in terms of the benefit to the owner, not the cost to the provider").

### D.  Count V – Breach of Fiduciary Duty

Defendant seeks judgment as a matter of law on Plaintiffs' claim for breach of fiduciary duty. ECF No. [780] at 11-12. "The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002) (citations omitted). Under Florida law, "[f]iduciary relationships are either expressly or impliedly created. . . . Courts have found a fiduciary relationship implied in law when 'confidence is reposed by one party and a trust accepted by the other.'" *Regions Bank v. Kaplan*, 258 F. Supp. 3d 1275, 1293 (M.D. Fla. 2017)

Defendant first argues that Plaintiffs failed to introduce any evidence that Defendant was in a fiduciary relationship with W&K. However, viewing the evidence in the light most favorable to Plaintiffs, there is sufficient evidence from which a reasonable jury could conclude that Defendant assumed a position of trust with W&K. Specifically, Defendant told Ira Kleiman that "Dave owned 50% of a US company that controlled a Belize based trust[,]" Ex. [P120] at 1, and also told Patrick Paige that he and Dave "had a project in the US" that "mined Bitcoin[,]" Ex. [P122] at 4. Additionally, Defendant represented to the Australian courts that he held a position of trust with W&K and owned shares in W&K. *See* Ex. [P105] at 1 (sole director for the company and holds 51% of shares); *see also* Ex. [P509] at 1 (holds 100% of shares); Ex. [P710] at 29 (holds 50% of shares); *id.* at 139 ("Director/Australian Agent" of the company).

Defendant next argues that no reasonable jury could find Defendant liable for damages for breach of fiduciary duty. ECF No. [780] at 11-12. Specifically, Defendant contends that Plaintiff has failed to set forth any evidence as to the value of the Bitcoin or intellectual property at the time of the alleged breach. *Id.* (citing *Haddad v. Rav Bahamas, Ltd.*, 589 F. Supp. 2d 1302, 1307 (S.D. Fla. 2008) ("[D]amages for breach of fiduciary duty are measured as of the date of breach.")). Plaintiffs, however, respond that the appropriate measure of damages is the benefit of the bargain

improperly received by Defendant. ECF No. [789-1] at 15 (citing *Cabot E. Broward 2 LLC v. Cabot*, No. 16-61218-CIV, 2018 WL 11309825, at *5 (S.D. Fla. July 26, 2018)).

Upon review of the parties' submissions, the Court agrees that Plaintiff may seek damages under the "benefit of the bargain rule." Indeed, while the Court in *Haddad* set forth that "damages for breach of fiduciary duties are measured as of the date of the breach," such calculation would not restore Plaintiffs to the position they would have been absent Defendant's purported breach given the increased value of the Bitcoin and IP at issue. *See supra* III.A.; *see also Cabot*, 2018 WL 11309825, at *4 (distinguishing *Haddad* where plaintiff's damages included the loss of ownership rights and lost profits, not just a "single unauthorized withdrawal of funds[.]"); *see also Gregg v. U.S. Indus., Inc.*, 887 F.2d 1462, 1467 n.4 (11th Cir. 1989) ("[U]nder Florida law, 'in tort actions, the measure of damages seeks to restore the victim to the position he would be in had the wrong not been committed." (citations omitted)). As set forth above, there is sufficient evidence to determine the benefits received by Defendant from his purported breach. *See supra* III.A.

### E.  Count VI – Breach of Partnership Duties of Loyalty & Care

Defendant seeks judgment as a matter of law on Plaintiff's claim for breach of the partnership duties of loyalty and care.[5] ECF No. [780] at 12-14. Defendant contends that Plaintiffs have adduced no evidence to support the existence of a partnership between David Kleiman and Defendant. Notably, however, Defendant raises the same legal and factual arguments that the Court already rejected in denying Defendant's Motion for Summary Judgment, ECF No. [487]. *See* ECF No. [615] ("MSJ Order"). The Court finds no basis to disturb its prior ruling that there is sufficient evidence in the record from which a reasonable jury could conclude that David Kleiman and Defendant entered into an oral partnership. *Id.* at 54-62. This is especially true given that much

---

[5] Count VI is asserted on behalf of the Estate of David Kleiman only ("Estate"). ECF No. [83] at 42.

of the evidence the Court relied on in the MSJ Order has been admitted into evidence. *See* Exs. [P042], [P051], [P059], [P074], [P097], [P112], [P117], [P119], [P120], [P134], [P138], [P139], [P157], [P160], [P167], [P172], [P173], [P200], [P439], [P454], [P459], [P464], & [P731].

Additionally, as to damages, Defendant argues that Plaintiffs have failed to prove any damages for the purported breach[6] and that "the date of Dave Kleiman's death would be the latest date on which any damages could be measured for any purported breach of fiduciary duty to the alleged oral partnership." ECF No. [780] at 14 n.8 (citing Fla. Stat. § 620.8701). Section 620.8701(1) provides: "If a partner is disassociated from a partnership without resulting in a dissolution and winding up of the partnership business under s. 620.8801, the partnership shall cause the dissociated partner's interest in the partnership to be purchased for a buyout price determined pursuant to subsection (2)." Fla. Stat. 620.8701(1); *see also* Fla. Stat. § 620.8601(7)(a) ("A partner is disassociated from a partnership upon the occurrence of . . . [t]he partner's death").

Plaintiffs respond that "RUPA's buyout provisions do *not* apply to two-person partnerships where one person dies, because the partnership ceases to be a partnership." ECF No. [789-1] at 20 (emphasis in original). Alternatively, Plaintiffs argue that even if the Court were to find that RUPA's buyout provision applies, Defendant failed to distribute the value of the Estate's interest in the partnership as required by law. *Id.* at 20-21.

Upon review, the Court finds Defendant's argument unpersuasive. Indeed, as the Court recognized in the MSJ Order, "[w]hile the death of a partner normally terminates the partnership, a 'surviving partner's fiduciary obligations extend to the deceased partner's heirs and beneficiaries.'" ECF No. [615] at 76 (quoting *Matter of Estate of Thomas*, 532 N.W.2d 676, 684 (N.D. 1995) (collecting cases)); *see also Biers v. Sammons*, 242 So. 2d 158, 161 (Fla. 3d DCA

---

[6] As addressed above, Plaintiffs presented sufficient evidence during the presentation of their case from which the jury may award damages. *See supra* III.A.

1970) ("[I]f the surviving or remaining partners continue the partnership business with the partnership assets they are required to account to the withdrawing or deceased partner's estate . . . [and] they act as trustees" (citations omitted)). As such, the Estate is entitled to the value of its interest in the partnership.

### F.  Count VII – Fraud

Defendant seeks judgment as a matter of law on Plaintiffs' claim for fraud. ECF No. [780] at 14-17. "An aggrieved party proves common law fraud by establishing that: (1) the opposing party made a misrepresentation of a material fact, (2) the opposing party knew or should have known the falsity of the statement, (3) the opposing party intended to induce the aggrieved party to rely on the false statement and act on it, and (4) the aggrieved party relied on that statement to his or her detriment." *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 595 n.2 (Fla. 2013).

As with Defendant's arguments with respect to Count VI, the Court already determined in the MSJ Order that there is sufficient evidence in the record to support Plaintiffs' claim for common law fraud, as well as actual damages resulting from Defendant's alleged fraud.  ECF No. [615] at 69-74. However, Defendant now adds that judgment as a matter of law is appropriate because Ira Kleiman testified at trial that he did not trust Defendant as early as April 15, 2014 and, therefore, he could not rely on anything Defendant said after that date. ECF No. [780] at 15. Viewing the evidence in the light most favorable to Plaintiffs, there is sufficient evidence presented at trial demonstrating that Ira Kleiman continued to trust and rely on Defendant after April 15, 2014 and into 2015. Ex. [P156], [P160], [P218], & [P256]. As such, the Court finds no basis to disturb its prior ruling.[7]

---

[7] In a footnote, Defendant requests that the Court reconsider its ruling in connection with his Bench Memorandum Requesting Reconsideration of Trial Rulings Concerning the Work Product Privilege and the Admissibility of Plaintiffs' Privilege Log, ECF No. [767]. According to Defendant, the privilege log confirms "that Ira Kleiman was acting in anticipation of litigation as early as February 25, 2014" and

### G.  Count VIII – Constructive Fraud

Defendant seeks judgment as a matter of law on Plaintiffs' claim for constructive fraud. ECF No. [780] at 16-17. Under Florida law, constructive fraud occurs "when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken." *Levy v. Levy*, 862 So. 2d 48, 53 (Fla. 3d DCA 2003). It "may be based on a misrepresentation or concealment, or the fraud may consist of taking an improper advantage of the fiduciary relationship at the expense of the confiding party." *Id.*

Here, viewing the evidence in the light most favorable to Plaintiffs, the record amply supports Defendant's liability and damages for constructive fraud. Again, Defendant highlights the same purported deficiencies the Court already considered and rejected in the MSJ Order. ECF No. [615] at 74-77; *see also* Ex. [P160], [P241], & [P246]. Additionally, as stated above, the Court is not persuaded that the parties communicated at arms-length beginning April 2014. *See supra* III.F. Lastly, the Court finds that Plaintiffs have provided sufficient evidence of damages. *See supra* III.A.

### H.  Count IX – Civil Theft

Defendant seeks judgment as a matter of law on Plaintiffs' claim for civil theft, in which he argues that there is insufficient evidence of civil theft damages. ECF No. [780] at 17-18. For the reasons addressed above, the jury has ample evidence to support an award of damages for civil theft. *See supra* III.A.

---

"dispositively undermines any claim of reasonable reliance." ECF No. [780] at 15 n.9. Defendant's request is not well taken, and reconsideration is not warranted under the circumstances. *See PaineWebber Income Props. Three Ltd. Partnership v. Mobil Oil Corp.*, 902 F. Supp. 1514, 1521 (M.D. Fla. 1995) ("A motion for reconsideration should raise new issues, not merely readdress issues litigated previously."); *see also Lamar Advertising of Mobile, Inc. v. City of Lakeland*, 189 F.R.D. 480, 490 (M.D. Fla. 1999) ("A motion to reconsider is not a vehicle for rehashing arguments the Court has already rejected and should be applied with finality and with conservation of judicial resources in mind." (internal quotation marks omitted)).

**I.    Statute of Limitations re: Counts I, II, V, VI**

Lastly, Defendant seeks judgment as a matter of law on Counts I, II, V, and VI, arguing that they "are governed by the four-year limitations period of Fla. Stat. § 95.11(3), and all are time barred." ECF No. [780] at 20. Specifically, Defendant contends that "to the extent plaintiffs' claims are based on the alleged wrongful transfer of bitcoins, each of the [ ] claims [for conversion, unjust enrichment, breach of fiduciary duty, and breach of partnership duties of loyalty and care] accrued on (or soon after) April 26, 2013, and no later than November 4, 2013[.]" *Id.* As the Court already set forth in the MSJ Order, "the Court cannot conclude as a matter of fact and law that November 6, 2013 triggered the relevant statutes of limitations." ECF No. [615] at 41-45; *see also* Exs. [P709], [P710], & [D010]. Additionally, viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could "find that Defendant's conduct could lead to the application of the doctrines of fraudulent concealment and equitable estoppel[.]" ECF No. [615] at 46-53, 86-87; *see also* Exs. [P117], [P212], [P256], [P709], [P710], [P731], [P799], [P862], [JE014], & [JE014].

**IV.    CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [780]**, is **DENIED**, consistent with this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 22, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record