UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Ira Kleiman, as Personal Representative )
of the Estate of David Kleiman, )
 )
and )
 ) **Case No.: 18-cv-80176-BB**
W&K Info Defense Research, LLC )
 )
    Plaintiffs, )
 )
v. )
 )
Craig Wright, )
 )
    Defendant. )
_____ )

**NON-PARTY ANDREW O'HAGAN'S REPLY TO PLAINTIFFS' RESPONSE TO O'HAGAN'S MOTION FOR ORDER COMPELLING
PLAINTIFFS TO PAY FEES AND COSTS RELATED TO
DOCUMENT AND DEPOSITION DISCOVERY IN ENGLAND**

Non-party witness Andrew O'Hagan ("**O'Hagan**"), through undersigned counsel, hereby Replies to Plaintiffs' Response (the "**Response**") [DE 806] to O'Hagan's Motion for Order Compelling Plaintiffs To Pay Fees and Costs Related to Document and Depositions Discovery in England (the "**Motion**") [DE 768] and states:

    **I.**    **Introduction**

The Response boils down to a set of misrepresentations, followed by a rhetorical *non sequitur*, wrapped up by a concession. The Plaintiffs, after thoroughly misstating and mischaracterizing the simple (yet egregious) facts of this matter, go on to argue in opposition to relief O'Hagan *is not* seeking, while utterly ignoring O'Hagan's arguments for the relief he *is* seeking. The Court should accordingly grant O'Hagan's Motion.

## II. The Facts Mischaracterized and Misrepresented in the Response

Plaintiffs contend in the Response that the process leading up to O'Hagan's deposition was not "contentious, oppressive, and burdensome." This is false. Everything about Plaintiffs' attack on O'Hagan's privileges and privacy was "contentious, oppressive, and burdensome" – to say nothing of costly. Plaintiffs sought from the outset an offensively deep and invasive trawl of privileged journalistic materials to which they were not entitled. Plaintiffs caused O'Hagan to spend large sums defending his journalistic privileges by limiting the unjustifiably broad scope of the discovery Plaintiffs sought, as well as – since then – in trying to get paid by Plaintiffs for the fees and costs of doing so – fees Plaintiffs promised to pay, that the UK court ordered them to pay, and that this Court anticipated they would pay.

Plaintiffs filed a motion on July 19, 2019, under the Hauge Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "**Hague Convention**"), and on July 24, 2019, Magistrate Judge Reinhart signed a Request for International Judicial Assistance. ("**Request**") [DE 253]. The Request sought questioning of O'Hagan in four categories – general background, the accuracy of quotes in the article, all statements made by Craig Wright and his agents, and all statements by anyone else O'Hagan interviewed. Request at pp. 4-5. The Request also sought the video and audio recordings of O'Hagan's interviews, as well as all the documents upon which O'Hagan relied. *Id.* at p. 5.

Plaintiffs provided O'Hagan no notice of their Motion or the Request, but they did promise in the Request, which Magistrate Judge Reinhart signed, that the "fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention *will be borne by Plaintiffs*."[1] *Id.* at 8 (emphasis supplied).

---

[1] Those provisions of the Hague Convention provide in pertinent part:

2

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208

Still without notice to O'Hagan, Plaintiffs then initiated an *ex parte* application in England on November 11, 2019, (the "**First Application**") seeking to compel O'Hagan to provide the same testimony and documents set forth in the Request. A copy of the 15-page First Application ***with its more than 400 pages of exhibits*** is attached as Exhibit A. Plaintiffs omit from the Response that they again promised in *this* First Application to pay "O'Hagan's costs of attending the deposition." First Application at p. 12. On November 14, 2019, Justice Butcher of the English Commercial Court in London issued an Order compelling O'Hagan to provide the extensive and invasive testimony and documents Plaintiffs sought. A copy of the Order is attached as Exhibit B. The Order was the first word O'Hagan had that Plaintiffs were using the Courts to go after him and it gave him just 7 days to respond.

---

**Article 14**

\* \* \*

The requested authority whose law obliges the parties themselves to secure evidence, and which is not able itself to execute the Letter, may, after having obtained the consent of the requesting authority, appoint a suitable person to do so. When seeking this consent the requested authority shall indicate the approximate costs which would result from this procedure. If the requesting authority gives its consent it shall reimburse any costs incurred; without such consent the requesting authority shall not be liable for the costs.

**Article 26**
A Contracting State, if required to do so because of constitutional limitations, may request the reimbursement by the State of origin of fees and costs, in connection with the execution of Letters of Request, for the service of process necessary to compel the appearance of a person to give evidence, the costs of attendance of such persons, and the cost of any transcript of the evidence.

Where a State has made a request pursuant to the above paragraph, any other Contracting State may request from that State the reimbursement of similar fees and costs.

O'Hagan, who of course did not choose to be a witness – and certainly not on the Plaintiffs' invasive, privilege-busting terms – immediately hired counsel to address the encyclopedic demands and Justice Butcher's order. They rushed to file O'Hagan's response on November 22, 2019 seeking to set aside the Order. A copy of his response is attached as Exhibit C. In his 14-page response to the Order, O'Hagan argued strenuously that Plaintiffs were not entitled to his privileged journalistic materials and that his sources for the articles, as well as the information they provided, should remain confidential.

The proceedings, even at this stage, were very certainly "contentious, oppressive, and burdensome," despite Plaintiffs' claims now to the contrary. O'Hagan was battling a voluminous surprise request that went to the very core of his professional privilege and practice. In response to this massed assault, he was mounting an urgent and full-throated defense. But this was only the beginning.

Despite the Response's false claims to the contrary (Response at p. 2), Plaintiffs did *not* react to O'Hagan's defense of his privacy by agreeing to limit "the deposition to protect O'Hagan's journalistic privileges." Instead, Plaintiffs fired another barrage. On December 6, 2019, they filed a second statement arguing that the detailed source material should be produced (the "**Second Application**"). The 13-page Second Application and its *over 400 entirely new pages of exhibits* are attached as Exhibit D. At this point, O'Hagan was fighting off over 900 pages of submissions from the Plaintiffs who were seeking a plenary invasion of his most sacrosanct professional privileges – "contentious, oppressive, and burdensome" by any measure. Plaintiffs once again omit from the Response that their Second Application reiterated their promise to reimburse O'Hagan's "reasonable legal costs relating to compliance with [Justice Butcher's Order]." Second Application at p. 13.

4

And still Plaintiffs fought O'Hagan at every turn. For example, Plaintiffs would not even agree to transfer the case to the Media and Communications Court, where cases such as this are typically heard. Over Plaintiffs' objections, O'Hagan had to work to secure this transfer, which was granted on December 11, 2019. A copy of this 5-page order of transfer is attached as Exhibit E. There, on December 14, 2019, O'Hagan had to file a second statement in support of his arguments concerning his journalistic privileges. A copy of this 11-page statement is attached as Exhibit F.

It was not until all of this briefing was complete, and the case was set for a hearing before the Media and Communications Court on December 20, 2019, that Plaintiffs *finally* conceded what they should have admitted at the start: that their quest to pierce O'Hagan's journalistic privileges was not supported by the law. Only then did Plaintiffs, reluctantly and at long last, agree to limit the deposition to background and the accuracy of the quotes in the article, and to permit O'Hagan fully to maintain his journalistic privileges. O'Hagan had never objected to providing *this* limited discovery; the extensive and expensive fight to which Plaintiffs subjected him was all for naught.

Crucially, Plaintiffs at this point *agreed again* to pay O'Hagan's reasonable fees and costs. All of this was memorialized in a Consent Order dated December 18, 2019. A copy of the Consent Order, bearing the seal of the UK court, is attached as Exhibit G. (A copy of the Consent Order without the seal was attached as Exhibit A to the Motion.)

But even though Plaintiffs were obligated (by their promises, by the Hague Convention, and by the order of the UK court) to pay O'Hagan's fees, Plaintiffs – having obtained the testimony they sought – then resisted making that payment at every turn, continuing their practice of subjecting O'Hagan to "contentious, oppressive, and burdensome" proceedings.

5

O'Hagan submitted his fees to Plaintiffs on March 30, 2020. Plaintiffs disputed the amount and forced O'Hagan to proceed to a hearing where the English court determined the *balance* of fees owed was £92,707.48. See Order dated March 23, 2021 attached as Exhibit C to the Motion.[2] Extensive correspondence between Plaintiffs' and O'Hagan's counsel from March 30, 2020 to March 16, 2021, demonstrates Plaintiffs' refusal to pay what O'Hagan was fairly due in responding to Plaintiffs' onerous and legally unsupported discovery.

Now, after all of this, Plaintiffs also omit from the Response that on November 8, 2021 they made use in this Court of the discovery they obtained by way of their "contentious, oppressive, and burdensome" practices. On that day they played to the jury nearly an hour of O'Hagan's videotaped deposition as part of their case in chief. A minute entry of the Court reflecting this is attached as Exhibit H.

### III. Argument

The Response relies on irrelevant authority to oppose relief O'Hagan *is not* seeking; it ignores (and thereby concedes) the arguments O'Hagan *is* making for the relief he *is* seeking; and it continues to flaunt the standards of the Hague Convention, belie the promises Plaintiffs made, and defy the orders of both the UK Court and of this Court in the Request.

### A. O'Hagan isn't asking this Court to "enforce a foreign judgment."

The bulk of the Response – and the only citations to any authority[3] within it – are given over to the Plaintiffs' firm contention that this Court cannot enforce the foreign judgment

---

[2] Plaintiffs did not simply "agree to advance £34,988 of O'Hagan's fees" as they falsely claim in the Response. Response at p. 2. This sum was merely an interim payment, it was accounted for in the March 23 Order, and never intended to be the total amount owed O'Hagan. Rather, the English court ordered Plaintiffs to pay *all* of O'Hagan's fees.

[3] It therefore could go without saying – although we will say it – that the caselaw upon which Plaintiffs rely in their Response is wildly inapposite to the issues raised or relief sought in the

6

against them that O'Hagan domesticated in the State of Florida. To that argument O'Hagan says: "Agreed," and "So what?"

As the Motion makes abundantly clear, O'Hagan is not asking this Court to "enforce a foreign judgment."[4] For that purpose O'Hagan has domesticated the judgment in Florida and can and will proceed through the Florida courts to collect that judgment, as need be. But O'Hagan's plea to this Court is just what the Motion said it was – that the Court require litigants before it to pay the costs of non-party discovery they compelled for use before it. As the Motion made clear, there are at least three bases (which we will not reargue here) upon which the Court can and should order that payment: The fee-shifting provisions of Rule 45(d)(1) of the Federal Rules of Civil procedure; to uphold principles of comity by giving meaning to the orders of the English courts entered in aid of the litigation now just concluded before this Court; and in simple equity on the basis of this Court's broad inherent powers.

### B. Having ignored O'Hagan's actual arguments, Plaintiffs have effectively conceded them.

Because Plaintiffs chose in the Response to couch every argument in terms of denying O'Hagan relief he didn't seek, they have failed even to address the issue of the relief O'Hagan is seeking, or the grounds upon which he is seeking it. In doing so, they have conceded those grounds.

---

Motion. The Court can and should simply disregard Plaintiffs' citations to caselaw and statutes that all concern a matter not before it.

[4] The judgment does provide a definitive, liquidated amount for the fees and costs that the UK court determined were fairly owed to O'Hagan. But, as the Motion makes abundantly clear, O'Hagan is not seeking to execute on the judgment through the power of this Court, but rather to have this Court enforce the underlying orders of the UK court and to do equity of its own, based on the principles in Rule 45(d)(1) and through its own inherent powers.

7

Having entirely ignored O'Hagan's Rule 45 arguments (the Rule simply doesn't appear in the Response), Plaintiffs' Response gives a glancing nod to the arguments made with respect to international comity and the Court's inherent powers, but only to argue that those principles don't support enforcement of a domesticate foreign judgment – which O'Hagan isn't seeking. Response at pp. 3 – 4. This might be characterized as a red herring, or perhaps as a chimera, but however it is called, it's a beast that will not serve. Because in resting every argument on the simply false notion that O'Hagan is asking this Court to enforce a foreign judgment, Plaintiffs never engage with the argument that O'Hagan *did* make: That the Court should order them to pay the fees and costs[5] they forced him to incur; that they repeatedly promised (in the UK and before this Court) to pay; that the UK court ordered paid in proceedings were undertaken at the request of this Court and which are entirely ancillary to *this* Court; that Rule 45 authorizes paying; and that this Court has the power to order paid.

Having thus ignored the claims and arguments O'Hagan actually made, Plaintiffs have conceded them. *See GVB MD v. Aetna Health Inc.*, 2020 WL 1692635, at *4, note 5 (S.D. Fla.

---

[5] At this point, Plaintiffs' stubborn opposition to an order requiring them to pay those fees and costs should now subject them – in equity and as a sanction – to pay the substantial fees O'Hagan has been forced to incur in the filing of his Motion and this Reply. 28 USC § 1927 is custom made to shift the costs of unnecessary proceedings like these to the *attorneys* responsible for them. It states in full:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Plaintiffs' responsibility for the fees and costs O'Hagan incurred is so patent, their counsel's "arguments" in opposition are so frivolous, that that Plaintiffs' opposition very certainly multiplied these proceedings "unreasonably and vexatiously." The Court can and should order Plaintiffs' counsel to make good the fees associated with the Motion and this Reply.

8

Apr. 7, 2020) ("A party who aspires to oppose a motion must spell out his arguments squarely and distinctly, or else forever hold his peace. ***And failing to respond to an argument in a motion is equal to conceding that argument.***") (internal quotations and citations omitted, emphasis supplied). *See also GolTV, Inc. v. Fox Sports Latin America Ltd.*, 277 F. Supp. 3d, 1301, 1311, note 7 (S.D. Fla. Sept. 19, 2017) ("When a party fails to respond to an argument or address a claim in a responsive brief, such argument or claim can be deemed abandoned.") (*citing Hartford Steam Boiler Inspection & Ins. Co. v. Brickellhouse Condo. Ass'n, Inc.*, 2016 WL 5661636, at *3 (S.D. Fla. Sept. 30, 2016)).

### C. Events in this Court since the Motion further support granting it.

Finally, the events that have unfolded in this Court since the Motion was filed only further support O'Hagan's request to this Court, and hew perfectly to O'Hagan's bases for that request. Any question of whether the discovery Plaintiffs obtained from O'Hagan was in service to their litigation before this Court was put to rest during the trial of this matter. Plaintiffs played almost one hour of O'Hagan's video deposition to the jury during their case in chief. And that testimony was part of what the jury considered in rendering a verdict in Plaintiffs' favor for $100,000,000.00.[6]

### IV. Conclusion

For the reasons stated herein and in the Motion, O'Hagan respectfully requests the Court enter an order directing Plaintiffs to pay the fees and costs he incurred as a result of Plaintiffs' discovery demands, in an amount set forth in the Judgment; awarding O'Hagan the fees and costs associated with this Motion; and granting such other relief as the Court deems just.

---

[6] The verdict also disposes of Plaintiffs' attorneys' unsupported assertion that "neither of the Plaintiffs have [sic] any assets." That claim was always irrelevant to whether this Court should order O'Hagan's fees and costs paid. Now, besides being irrelevant, it is false.

9

Dated: December 8, 2021.

        Respectfully submitted,

        DEVINE GOODMAN & RASCO, LLP
        2800 Ponce de Leon Blvd., Suite 1400
        Coral Cables, FL 33134
        Tel.: 305-374-8200
        grasco@devinegoodman.com

        */s/ Guy A. Rasco*
        Guy A. Rasco, Esq. (F.B.N.: 727520)
        Robert J. Kuntz, Jr., Esq. (F.N.B.: 094668)
        *Attorneys for Andrew O'Hagan*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the CM/ECF Filing System this 8th day of December, 2021, on counsel of record.

        */s/ Robert J. Kuntz, Jr.*
        Robert J. Kuntz, Jr., Esq.

10

Devine Goodman & Rasco, LLP 2800 Ponce De Leon Boulevard, Suite 1400, Coral Gables, Florida 33134 P 305.374.8200 F 305.374.8208