IN THE HIGH COURT OF JUSTICE      Claim no: CL-2019-000695
QUEEN'S BENCH DIVISION

*11 Dec 2019*
*CL-2019-000695*

THE HONOURABLE MR JUSTICE WARBY, Judge in Charge of the Media and Communications List

Wednesday 11th December 2019

BETWEEN

        (1) **IRA KLEIMAN**
    As the personal representative of the Estate of David Kleiman
        (2) **W&K Info Defense Research LLC**

                                   **Claimants**

– and –

**ANDREW O'HAGAN**

                                   **Defendant**

_____

**ORDER**

_____

**UPON** the application of the Defendant dated 10 December 2019, for orders (1) that these proceedings be transferred to the Media and Communications List, pursuant to PD53A and CPR r. 30.5 ("the Transfer Application"), and (2) that the hearing of the Defendant's application to set aside the Order of Butcher J dated 14 November 2019 ("the Set-Aside Application") be expedited ("the Expedition Application")

**AND UPON** reading the evidence in Part C of the Application Notice and the copy correspondence between the parties in relation to the issue of transfer attached to the Application Notice

**AND UPON** noting that notice of the Transfer Application has been given to the Judge in Charge of the Commercial Court

**WITHOUT A HEARING** pursuant to CPR 23.8(b)

**IT IS ORDERED AND DIRECTED THAT**

1. The Transfer Application is granted. The proceedings are transferred to the Media and Communications List of the Queen's Bench Division, at the Royal Courts of Justice.

2. The Expedition Application is granted. The Set-Aside Application shall be listed for hearing before a Media and Communications List Judge at the earliest convenient date, with a time estimate of half a day.

3. The parties must liaise with one another and with Queen's Bench Judges' Listing to arrange the hearing date. They must keep the time estimate under review and advise the Court forthwith if they consider it can be reduced.

4. By no later than 4pm on Monday 16 December 2019 the Defendant must file a hearing bundle.

5. Costs reserved.

**REASONS**

*The background*

1. In these proceedings the Claimants seek orders for the provision of evidence for use in a legal action brought by them in Florida against Dr Craig Wright, pursuant to a Letter Rogatory from the Southern District Court of Florida, dated 22 July 2019. The Defendant is a journalist at the London Review of Books.

2. On 11 November 2019 the Claimants applied without notice to the Defendant for an order pursuant pursuant to the Evidence (Proceedings in other Jurisdictions) Act 1975 and CPR 34.17 and 34.18(b), for the Defendant to be examined by way of deposition and to produce certain categories of documents. The application was supported by a witness statement of Mr Velvel Freedman.

3. On 14 November 2019, without a hearing, Butcher J granted such an order ("the Disclosure Order"). The Disclosure Order included an order for the production by the Defendant of recordings of interviews conducted by him with Craig Wright, and "*all documents relied on on reviewed in preparing for, and drafting, The Satoshi Affair*", and other documents. Paragraph 3 of the Order permitted the Defendant to apply within 7 days to set it aside, vary or stay it.

4. On 22 November 2019, the Defendant filed the Set-Aside Application. The order sought is that the Disclosure Order "*be revoked or, in the alternative, be varied so as to limit any questioning of [the Defendant] to matters that do not reveal*

*or require the production of source material or journalistic material*". The grounds of objection to the order include, though they are not limited to, a contention that it is inconsistent with the protection for journalistic source material conferred by domestic law, and Article 10 of the Convention, and protected by section 3(1) of the 1975 Act.

5. Thereafter, the Defendant applied in writing to me for an order transferring the proceedings to the Media and Communications ("MAC") List. I declined to deal with this on the basis proposed, namely that I act of my own initiative and make a transfer order. I required the Defendant to file an application notice and to give notice to the Judge in Charge of the Commercial Court, pursuant to PD53A paras 2 and 3. By 10 December 2019 that had been done.

6. In the meantime, I note from the file, the Claimants have filed a second witness statement from Mr Velvel Freedman dated 9 December 2019, which seeks to narrow the evidence sought and contains proposed revisions to paragraph 1 of the disclosure order. I have not seen any response from the Defendant to this change of stance. I proceed on the assumption that there remains a real issue to be resolved, but that it will be narrower in scope than first appeared.

*Issues*

7. Two questions arise from the correspondence:
   (1)   Are these proceedings within the scope of the Media and Communications List, and in particular the powers of transfer, as set out in CPR 53 and PD53A?
   (2)   If so, is it appropriate to make the order for transfer?

*Scope*

8. The Claimants' first ground of opposition is that the Set-Aside Application is not a "claim" within the meaning of CPR 53, with the consequence that the transfer powers in PD53A do not apply.

9. This is in part misdirected. The Defendant's application is not only to transfer the Set-Aside Application. He applies for the transfer of the entire proceedings to the MAC List, that is to say the Claimant's application, and the Set-Aside Application. I am not persuaded that it is right to say that

these proceedings are not a "claim" for the purposes of CPR 53.1(3) and (4). The term is undefined, and the use of the term "proceedings" in PD53 para 1 indicates that it is being used in a broad, non-technical sense. The word "claim" in this context seems to me apt to encompass an originating application for the Court to make an order for disclosure, as is commonly done under the *Norwich Pharmacal* jurisdiction. See n 31.18.3 to the White Book 2019, which speaks of such an application as a "claim for disclosure and production". See also n 31.18.11 which points out that Norwich Pharmacal applications are made by claim form, normally using the "Alternative procedure for *claims*" provided for by CPR Part 8 (my emphasis). In my view the word "claim" in Part 53 is equally apt to refer to a claim for disclosure pursuant to the Hague Convention.

10. Secondly, the Claimants suggest that "the types of claim intended for the [MAC] List by CPR 53.1 are solely those that relate to harm arising from a publication or threatened publication". It is suggested that CPR 53.1(4)(b) should be read, in context, as confining the jurisdiction to claims where harm arises from "activities of the media". The Claimants' application relates, they say, to commercial dealings between two parties, and disclosure relating to that claim.

11. I do not believe this interpretation of r 53.1(4)(b) can be sustained. A "claim" falls within that sub-paragraph if it "arises from … activities of the media" other than those specified in r 53.1(4)(a). There is no reason to limit the scope of such "other" claims. Put another way, if the claim arises from any activity of the media other than "the publication or threatened publication of information via the media, online or in speech", it falls within sub-paragraph (b). The Claimants' claim here arises from the Defendant's conduct as a journalist.

*Discretion*

12. The Claimants suggest that even if (as they put it) the Set-Aside Application raises questions about Article 10 of the Convention "the general list of the Queen's Bench Division would be the more appropriate forum". No reasons are given for saying this. I disagree. The application plainly does engage Article 10, indeed the main burden of the Defendant's case is reliance on journalistic privileges protected by s 10 of the Contempt of Court Act 1981, because that is necessary in order

to give effect to Article 10. MAC List Judges are more familiar with the relevant jurisprudence than those who are not MAC List Judges. These proceedings seem to me to be apt for transfer.

*Expedition*

13. An additional reason in favour of exercising the Court's discretion to transfer (though it would not of course be sufficient of itself), is the fact that it appears that the claim is or at least may be capable of more expeditious resolution in the MAC List, which has more resources available at present than the Commercial Court. The mid-January deadline for discovery in the Florida proceedings means that it is highly desirable to resolve these issues, or at least to hold a hearing on the matter, before the impending vacation. I cannot be confident that will be possible at this late stage, but my enquiries suggest that it may be possible.

14. The narrowed scope of the claim seems likely to have some impact on the time estimate, and the parties are required to give attention to that, and to communicate with the court promptly if the estimate can be reduced.