Pages 1 - 140

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Before The Honorable Beth Bloom, Judge

```
IRA KLEIMAN, et al.            )
                               )
          Plaintiffs,          )
                               )
   VS.                         )    NO. 18-CV-80176-BB
                               )
CRAIG WRIGHT,                  )
                               )
          Defendant.           )
_____)
```

Miami, Florida
Thursday, November 18, 2021

**TRANSCRIPT OF JURY TRIAL, DAY 12**

**(AFTERNOON SESSION)**

**APPEARANCES**:

For Plaintiffs:

ROCHE FREEDMAN, LLP
One Southeast Third Avenue, Suite 1240
Miami, Florida 33131
BY: **DEVIN FREEDMAN, ESQ.**

ROCHE FREEDMAN, LLP
99 Park Avenue, Suite 1910
New York, New York 10016
BY: **KYLE ROCHE, ESQ.**
**STEPHEN LAGOS, ESQ.**

BOIES SCHILLER FLEXNER
100 Southeast Second Street, Suite 2800
Miami, Florida 33131-2144
BY: **ANDREW SCOTT BRENNER, ESQ.**
**STEPHEN N. ZACK, ESQ.**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported by:   James C. Pence-Aviles, RMR, CRR, CSR No. 13059
Official Court Reporter

 1   **APPEARANCES:   (CONTINUED)**

 2   For Plaintiffs:
                         BOIES SCHILLER FLEXNER LLP
 3                       44 Montgomery Street, 41st Floor
                         San Francisco, California 94104
 4                  **BY:  ALEXANDER J. HOLTZMAN, ESQ.**

 5   For Defendant:
                         RIVERO MESTRE LLP
 6                       2525 Ponce de Leon Boulevard, Suite 1000
                         Coral Gables, Florida 33134
 7                  **BY:  ANDRES RIVERO, ESQ.**
                         **JORGE ALEJANDRO MESTRE, ESQ.**
 8                       **AMANDA MARIE MCGOVERN, ESQ.**
                         **SCHNEUR ZALMAN KASS, ESQ.**

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              **I N D E X**

2      Thursday, November 18, 2021 - Day 12

3      **DEFENDANT'S WITNESSES**                          **PAGE**   **DAY**

4      **ANDREOU, KIMON**
       (PREVIOUSLY SWORN)                                    8    12
5      Direct Examination (Resumed) by Mr. Mestre            8    12
       Cross-Examination by Mr. Brenner                     17    12
6
       **CONRAD, CARTER**
7      (SWORN)                                              34    12
       Direct Examination by Mr. Mestre                     34    12
8      Cross-Examination by Mr. Freedman                    72    12

9      **KUHARCIK, DAVID**
       (SWORN)                                             102    12
10     Direct Examination by Ms. McGovern                  103    12

11                          **E X H I B I T S**

12     **DEFENDANT'S EXHIBITS**                   **IDEN**   **EVID**  **VOL.**

13      D-41                                       47     48    12

14      D-56                                       55     56    12

15      D-57                                       57     59    12

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | **Thursday - November 18, 2021**                              **1:58 p.m.** |

2                          **P R O C E E D I N G S**

3                              **---000---**

4      (Proceedings were heard out of the presence of the jury:)

5               **THE COURT:**  Welcome back.

6      Is there anything that we need to address at this time?

7               **MR. ROCHE:**  Your Honor, one issue we just wanted to

8  flag --

9               **THE COURT:**  Yes.  Go ahead and have a seat, then.

10     Mr. Roche?

11              **MR. ROCHE:**  -- for -- I understand that Mr. David

12  Kuharcik is going to be called via Zoom around 3:00 o'clock

13  today.

14     We just wanted to flag ahead of time, under Florida law,

15  Mr. Kuharcik was David Kleiman's accountant.  We understand

16  that he was his accountant for roughly 30 years, and -- or

17  excuse me -- dating back to the early 90's.

18     And just to flag to the Court, to the extent there's any

19  discussions about the investments or the accounting advice that

20  Mr. Kuharcik raised, we intend to invoke the privilege in

21  relation to that -- those discussions.

22              **MS. MCGOVERN:**  Your Honor, it doesn't look like we're

23  going to be able to call Mr. Kuharcik today.  It depends upon

24  how we do, but I understand the objection.  We obviously don't

25  agree, and --

 1          (Court reporter requests clarification for the record.)

 2          **MS. MCGOVERN:**  Hi.

 3      I don't believe we're going to actually get to Mr.

 4  Kuharcik today because we have a witness after Mr. Andreou.  So

 5  I believe we're going to end up having this tomorrow morning.

 6  But to the extent that there's an issue raised -- and I think

 7  it's dependent upon the question asked -- I don't think it will

 8  apply.

 9          **THE COURT:**  All right.  Well, I think it's clear in

10  sum and substance.

11      So are you going to be inquiring about any advice that

12  might have been given or discussions related to --

13          **MS. MCGOVERN:**  No.

14          **THE COURT:**  Again, I'm not really sure how far you're

15  going into --

16          **MS. MCGOVERN:**  No, Your Honor.

17          **THE COURT:**  -- the questioning, but for -- for

18  purposes of -- of the testimony, I just -- I would hope that we

19  can address that ahead of time so we don't have objections

20  while we have a witness on Zoom.

21          **MS. MCGOVERN:**  I do not intend, Your Honor -- I'll be

22  doing the examination.  I don't intend to invade the

23  accountant/client privilege.

24          **MR. ROCHE:**  Okay.  Then we shouldn't have any issues.

25          **THE COURT:**  Okay.  All right.  And I do want to let

1   you know I've asked Liz to inquire as to whether the jurors --

2   since tomorrow we are going to be ending early, if the jurors

3   could come in earlier.  She has asked about tomorrow, and they

4   are willing to come in at 9:30.

5       Would that be acceptable to -- to both sides?

6           **MR. MESTRE:**  Acceptable to us, Your Honor.

7           **MS. MCGOVERN:**  I'm sorry.  I didn't --

8           **THE COURT:**  We'll start tomorrow at 9:30 as opposed to

9   10:00 o'clock.

10          **MS. MCGOVERN:**  No problem, Your Honor.

11          **MR. MESTRE:**  That's acceptable to us, Your Honor.

12          **MR. BRENNER:**  That's fine with the plaintiffs, too,

13  Your Honor.

14          **THE COURT:**  Okay.  And I've asked her to inquire about

15  next week, and hopefully we'll have some information to provide

16  you at the end of today.

17          **MS. MCGOVERN:**  Your Honor, if I can just raise one

18  thing with respect to the point that was just made with

19  Mr. Kuharcik.

20      With respect to the boundaries on the accountant/client

21  privilege in Federal Court, I just want to reserve our right to

22  be able to address an objection that's raised because I think

23  there's going to be a debate about:

24      A.  Whether, in fact, I'm asking that question, and I want

25  to be able to address with Your Honor the legal issue as to

1   whether the accountant/client privilege that is being applied

2   to a question I ask actually applies.

3        I think there is a question, and I just want to be able to

4   look at it a little bit more carefully before I make a

5   representation to the Court.

6        But before we call Mr. Kuharcik, I'll certainly state, you

7   know, the specific legal position.  But it goes to the issue of

8   really what our -- if any, the boundaries of the

9   accountant/client privilege in Federal Court.

10            **THE COURT:**  Okay.  Thank you.

11            **MS. MCGOVERN:**  All right.

12            **THE COURT:**  Okay.  Thank you.

13       Okay.  Let's bring in the jury.

14            **COURT SECURITY OFFICER:**  All rise for the jury,

15   please.

16                 (Court and court reporter confer.)

17            **THE COURT:**  I did want to let you know that James has

18   been kind enough to work with us this afternoon as opposed to

19   Yvette.  If you'd just be kind enough just the first time, so

20   that he can be introduced to you, just to state your name so

21   that the record's clear.

22       Thanks, James.

23       (Proceedings were heard in the presence of the jury:)

24            **THE COURT:**  Okay.  Welcome back, ladies and gentlemen.

25       Please be seated, everyone.  I trust you had a pleasant

ANDREOU - DIRECT / MESTRE

 1  lunch and ready to get back to work, and we'll continue with

 2  the questioning.

 3       Mr. Mestre?

 4            MR. MESTRE:  Thank you.

 5       And just to introduce myself, as you just asked, I'm Jorge

 6  Mestre for Craig Wright.

 7                          **KIMON ANDREOU**,

 8  called as a witness for the Defendant, having been previously

 9  duly sworn, testified further as follows:

10                 **DIRECT EXAMINATION (RESUMED)**

11  BY MR. MESTRE:

12  Q.   So I want to go back to the text messages.

13            MR. MESTRE:  Mr. Reed, if you could go to Kimon 30,

14  and if you can highlight the date and then call out the rest of

15  the page.

16  BY MR. MESTRE:

17  Q.   So the date of this text is Thursday, November 26th, 2009.

18       Do you see that?

19  A.   Yes.

20  Q.   So there's then a lot of discussion in this case about

21  conversations that took place on Thanksgiving 2009.  So here,

22  can you read what -- what Dave says and what you respond?

23            MR. MESTRE:  Oh.  Thank you.

24       Can you publish it to the jury?

25            THE CLERK:  Is it in evidence?

ANDREOU - DIRECT / MESTRE

| | |
|---|---|
| 1 | **MS. GONZALEZ:**  Yes. |
| 2 | **THE CLERK:**  Okay. |
| 3 | **BY MR. MESTRE:** |
| 4 | **Q.**  Okay.  Can you read that first line? |
| 5 | **A.**  "Gobble, gobble, gobble.  Happy T-Day." |
| 6 | **Q.**  And then you respond? |
| 7 | **A.**  "Gobble, gobble." |
| 8 | **Q.**  It was Thanksgiving? |
| 9 | **A.**  Yes. |
| 10 | **Q.**  2009? |
| 11 | **A.**  Yes. |
| 12 | **Q.**  Were you his best friend on November 26th, 2009? |
| 13 | **A.**  I don't know if I was his best friend, but I was one of |
| 14 | his closest friends, yes. |
| 15 | **Q.**  Okay.  On that -- |
| 16 | **MR. MESTRE:**  Can you keep it how it was, please. |
| 17 | Thank you, Mr. Reed. |
| 18 | **BY MR. MESTRE:** |
| 19 | **Q.**  So on -- on that date, did he tell you that he was working |
| 20 | on Bitcoin? |
| 21 | **A.**  No. |
| 22 | **Q.**  On that date, did he mention a Bitcoin logo? |
| 23 | **A.**  No. |
| 24 | **Q.**  On that date, did you -- did he tell you he had had a |
| 25 | conversation with his brother Ira about Bitcoin? |

**ANDREOU - DIRECT / MESTRE**

1   **A.**   No.

2   **Q.**   Did he ever tell you that he had a conversation with his

3   brother Ira about Bitcoin?

4   **A.**   No.

5   **Q.**   So, Mr. Andreou, this -- the exhibit that we've been going

6   through, these texts, are about -- well, I'll tell you, not

7   "about," because they're Bates-numbered -- exactly 200 pages,

8   and they run from 2009 until about -- until exactly April 18th,

9   2013.

10       You produced this; correct?

11  **A.**   Yes.

12  **Q.**   Okay.  And these were all the texts that you had --

13  **A.**   Yes.

14  **Q.**   -- with Dave Kleiman?

15       Anywhere in these texts was there any mention of Bitcoin?

16  **A.**   No.

17  **Q.**   Okay.  I want to move on from the texts and talk about

18  what you know about Craig Wright.  So in other words, now I'm

19  moving from -- well, strike that.

20       So let me ask you a question.  Did you ever -- did you

21  ever meet Dr. Wright?

22  **A.**   No.

23  **Q.**   Did Dave Kleiman ever mention Dr. Wright to you?

24  **A.**   Yes, he did.

25  **Q.**   Did he admire him?

1    **A.**    Yes.

2    **Q.**    Did he tell you that he had written that data whitepaper

3    with Dr. Wright?

4    **A.**    Yes.

5    **Q.**    And he was proud of coauthoring with Dr. Wright?

6    **A.**    Yes.

7    **Q.**    During his lifetime, during Dave Kleiman's lifetime, the

8    entire time that you knew him, did he ever tell you that he was

9    working on Bitcoin?

10   **A.**    No.

11   **Q.**    During his lifetime, during the entire time that you knew

12   him, did Dave Kleiman ever tell you that he was mining Bitcoin?

13   **A.**    No.

14   **Q.**    During Dave Kleiman's lifetime and the entire time that

15   you knew him, did he ever tell you that he had formed a

16   business partnership with Dr. Craig Wright to either mine or

17   invent Bitcoin?

18   **A.**    No.

19   **Q.**    Did he ever tell you that he had hundreds of millions of

20   dollars in Bitcoin?

21   **A.**    No.

22   **Q.**    I want to pull up -- and this is already in evidence --

23   Plaintiffs' 767.

24        **MR. MESTRE:**  Not that one.  Not that one.  There's a

25   redacted 767, Mr. Reed.  The redaction's important.

ANDREOU - DIRECT / MESTRE

1           He's pulling up -- he's pulling up the redacted version,

2    Your Honor.  I apologize.

3               **THE COURT:**  All right.

4               **MR. MESTRE:**  That's it.

5           So this one is already in evidence, this redacted version,

6    if you can publish that to the jury and to the witness and to

7    counsel and to everybody.

8                         (Laughter)

9    **BY MR. MESTRE:**

10   **Q.**   So, Mr. Andreou --

11   **A.**   Yes.

12   **Q.**   -- do you see here -- so is this -- is this your email

13   address?

14   **A.**   Yes, it is.

15   **Q.**   So this is an email from you?

16   **A.**   Yes.

17   **Q.**   Okay.  So let me take you -- there's been a lot of

18   discussion about this email.  Let me take you to the -- the

19   fourth paragraph, where it says, "If all the documents are

20   authentic, then with the addition of the anecdotal information

21   we have from discussions with Dave, all point to Dave and Craig

22   indeed being behind Bitcoin."

23          Now, the anecdotal information that you're talking

24   about -- was that information that you got from Ira Kleiman?

25              **MR. BRENNER:**  Objection.  Leading.

 1          **THE COURT:**  Overruled.  I'll allow it.

 2          **THE WITNESS:**  This is information that did not come

 3   from me.  I didn't -- I don't have firsthand information.  So

 4   it either came from Ira or from someone else or read online.

 5   **BY MR. MESTRE:**

 6   **Q.**   You never spoke to Dave about Bitcoin?

 7   **A.**   Never.

 8   **Q.**   So when you say "anecdotal information," do you mean to

 9   say that it was a conversation between you and Dave Kleiman?

10          **MR. BRENNER:**  Objection.  Leading.

11          **THE COURT:**  Sustained.

12   **BY MR. MESTRE:**

13   **Q.**   The plaintiff, about this email, Ira Kleiman, was asked,

14   "What is the basis for Kimon's opinion that he was convinced

15   that Craig and Dave are the cocreators of Bitcoin?"

16          And what Ira Kleiman said was that you had had a

17   discussion with Dave Kleiman.  Is that true?

18   **A.**   No.  That is false.

19   **Q.**   So --

20          **MR. MESTRE:**  If you can remove the pullout.

21   **BY MR. MESTRE:**

22   **Q.**   So where it says, "I am convinced Craig and Dave are the

23   cocreators of Bitcoin," what did you mean?

24          **MR. MESTRE:**  You don't have to call it out.

25          **THE WITNESS:**  What I meant by that was by everything

ANDREOU - DIRECT / MESTRE

1  that I had seen at that time and that had been posted online

2  and that I just heard after it hit the news, it seemed very

3  plausible, and I was convinced at the time that they were the

4  co- -- that they were the cocreators of Bitcoin.

5  **BY MR. MESTRE:**

6  **Q.**  So that statement is based on information after Dave

7  Kleiman's passing?

8         **MR. BRENNER:**  Objection.  Leading.

9         **THE COURT:**  Sustained.

10 **BY MR. MESTRE:**

11 **Q.**   Is that information -- what is that information based

12 upon?  What is that opinion based upon?

13 **A.**   I had no idea that Dave was -- Dave's name was at all

14 involved with Bitcoin until long after his death and I saw an

15 edit happen on his Wikipedia page talking about it.  So

16 everything that I heard or learned about Dave and Bitcoin came

17 after that fact.

18 **Q.**   Okay.  So do you think that Dave Kleiman could have been

19 the coder behind Bitcoin?

20 **A.**   No.

21 **Q.**   Do you think that Dave Kleiman could have been the

22 programmer behind Bitcoin?

23 **A.**   No.

24 **Q.**   Could Dave Kleiman ever have been the

25 hands-on-the-keyboard person behind Bitcoin?

**ANDREOU - DIRECT / MESTRE**

1    A.    Not doing programming, you know?

2    Q.    So is it fair to say that this statement was your

3    speculation?

4              MR. BRENNER:   Objection.   Leading.

5              THE COURT:   Sustained.

6    BY MR. MESTRE:

7    Q.    Were you speculating when you made this statement?

8    A.    Yes.

9    Q.    Now, if you go down to the Tuesday, May 17th, email, do

10   you see -- do you see that email address?   Who is that from?

11   A.    That's Ira's email address.

12   Q.    Ira Kleiman?

13   A.    Yes.

14   Q.    When did you meet Ira Kleiman?

15   A.    I've never met him.

16   Q.    You've only emailed with him?

17   A.    And I believe one phone call.

18   Q.    And that was after Dave died?

19   A.    Yes.

20   Q.    Now, Ira says to you, "I think Craig's motives are

21   questionable."   Did he -- at this point in time, did Ira

22   believe what Craig was telling him?

23             MR. BRENNER:   Objection.   Calls for speculation.

24             THE COURT:   Sustained.

25   ///

ANDREOU - DIRECT / MESTRE

1    BY MR. MESTRE:

2    Q.   Do you know if Ira at this point had seen a lawyer?

3         MR. BRENNER:   Objection.   Lack of foundation.

4         THE COURT:   Sustained.

5    BY MR. MESTRE:

6    Q.   Do you know if Ira was contemplating litigation at this

7    point?

8         MR. BRENNER:   Objection.   Lack of foundation.

9    Relevance.

10        THE COURT:   Sustained.

11   BY MR. MESTRE:

12   Q.   Did Dave Kleiman ever tell you that Dr. Craig Wright had

13   stolen anything from him?

14        MR. BRENNER:   Objection.   Leading.

15        THE COURT:   I'll allow it.   Overruled.

16        THE WITNESS:   He never mentioned anything like that.

17   BY MR. MESTRE:

18   Q.   Did Dave Kleiman ever tell you that he was developing

19   intellectual property with Dr. Wright?

20   A.   Not to my recollection, no.

21   Q.   Is it fair to say that you have absolutely no personal

22   knowledge one way or the other whether Dave Kleiman was

23   involved in the creation or mining of Bitcoin?

24        MR. BRENNER:   Objection.   Leading.

25        THE COURT:   Overruled.   I'll allow it.

ANDREOU - CROSS / BRENNER

```
1              THE WITNESS:  I have no factual firsthand knowledge of
2    that, no.
3              MR. MESTRE:  If I may consult, Your Honor --
4              THE COURT:  Certainly.
5              MR. MESTRE:  -- I think I'm finished.
6         I have no further questions, Your Honor.
7         Thank you, Mr. Andreou.
8              THE COURT:  All right.  Cross-examination?
9              MR. BRENNER:  Thank you, Judge.
10                        CROSS-EXAMINATION
11   BY MR. BRENNER:
12   Q.   Good afternoon, sir.
13   A.   Good afternoon.
14   Q.   Good afternoon.
15   A.   Good afternoon.
16             MR. BRENNER:  Mr. Court Reporter, my name is Andrew
17   Brenner, B-r-e-n-n-e-r.
18   BY MR. BRENNER:
19   Q.   Let me just start by getting you -- have you pronounce
20   your last name for you -- for me so I can get it right.
21   A.   "Andreou."
22   Q.   "Andreou"?
23   A.   Yeah.
24   Q.   Okay.  Mr. Andreou, we -- we met once before; correct?
25   A.   Correct.
```

1   Q.   It was actually -- the defendant had -- had taken your

2   deposition, but I was there.  Do you remember that?

3   A.   Yes.

4   Q.   Okay.  You told us that you first met Dave while working

5   at -- it's S Dock or Security Dock?

6   A.   It's the same name.  It's -- one is the alias of the

7   other.

8   Q.   Okay.  And as you -- as you just testified to, you and

9   Dave developed a friendship while you were working there;

10  correct?

11  A.   Correct.

12  Q.   And that friendship lasted after he left -- or after you

13  guys no longer worked together; right?

14  A.   Correct.

15  Q.   You guys liked to do stuff, you know, going out, hanging

16  out, eating -- eating at restaurants, stuff like that; right?

17  A.   Yes.

18  Q.   Okay.  It's fair to say that although you two were close,

19  neither of you acted as a financial adviser to the other?

20  That's not something you dealt -- that's not -- that was not

21  part of your relationship; right?

22  A.   Right.

23  Q.   Okay.  Now, you said Dave -- I think you used the words --

24  he was one of your closest friends.  Dave was a great guy;

25  right?

1    **A.**    Yes.

2    **Q.**    Trusting guy?  Honest guy?

3    **A.**    Honest, yeah.

4    **Q.**    He's the kind of guy that you would have and probably did

5    confide in; right?

6    **A.**    Yeah.

7    **Q.**    And if you confided in him -- when you confided in him,

8    you expected that, if it was your desire, he would keep that

9    secret; right?

10   **A.**    Yes.

11   **Q.**    And you never saw any -- you never saw him violate that

12   trust, did you?

13   **A.**    No.

14   **Q.**    You visited Dave, I think, basically every workday for --

15   when he was in the last hospitalization?

16   **A.**    Correct.

17   **Q.**    All right.  You were working over at the Port of Miami,

18   and he was in the Jackson area; right?

19   **A.**    Yeah.

20   **Q.**    When you visited Dave, he always had his computer with

21   him; isn't that right?

22   **A.**    Correct.

23   **Q.**    In fact, he was -- he was working on his computers; right?

24   **A.**    Yes.

25   **Q.**    In fact, there were times when you visited him in the

ANDREOU - CROSS / BRENNER

1   hospital where he was running not one but two computers at the

2   same time while sitting on his hospital bed?

3   **A.**   Yes.

4   **Q.**   And these were not just run-of-the-mill computers.  They

5   were very powerful laptops; right?

6   **A.**   Yes.

7   **Q.**   And Dave liked powerful laptops; right?

8   **A.**   Yes.

9   **Q.**   He used something called Alienware, which is owned by

10  Dell?

11  **A.**   Now it is, yes.

12  **Q.**   Okay.  Now, Dave shared with you some information about

13  things he was doing professionally, but he didn't share with

14  you everything; isn't that correct?

15  **A.**   Correct.

16  **Q.**   You knew -- and you said it on direct examination.  You

17  said that -- you told Mr. Mestre that Dave was a very private

18  person.  That's a fair description; right?

19  **A.**   Yes.

20  **Q.**   He was very private and didn't like to confide in a lot of

21  other people; right?

22  **A.**   Yes.

23  **Q.**   You did tell Mr. Mestre and the jury that Dave did mention

24  to you that he had been doing work with Dr. Wright; correct?

25  **A.**   Yes.

1   **Q.**   He mentioned to you that they were publishing things

2   together; correct?

3   **A.**   Yes.

4   **Q.**   And the things they were working on were in the technology

5   field; correct?

6   **A.**   Yes.

7   **Q.**   You don't know what else they were working on together;

8   correct?

9   **A.**   Correct.

10   **Q.**   In fact, you told us that it could have been a lot of

11   different things.  You just don't know; correct?

12   **A.**   I don't know what I don't --

13        **MR. MESTRE:**  I object to the -- objection.

14   Mischaracterizes the testimony.

15        **THE COURT:**  Overruled.  I'll allow it.

16   **BY MR. BRENNER:**

17   **Q.**   That's correct, isn't it, sir?

18   **A.**   I don't know what I don't know.  That's correct.

19   **Q.**   You don't know what you don't know.  You know he's the

20   kind of guy that didn't tell you everything.  You don't know

21   what he didn't tell you; right?

22   **A.**   Yeah.

23   **Q.**   Okay.  After leaving S Dock, you went -- well, tell me,

24   did you immediately go to Royal Caribbean?  Because I know you

25   were working there at some point.

SIDEBAR

1    **A.**   I stayed for another company for about a month, month and

2    a half, and then I jumped over.

3    **Q.**   And when did you work at Royal Caribbean?

4    **A.**   Started in September of 2006.

5    **Q.**   Until when?

6    **A.**   Until May of this year.

7    **Q.**   So just recently -- you just left Royal Caribbean.

8        Your boss at Royal Caribbean was a woman named Cristina

9    Mestre Quintero; right?

10   **A.**   Correct.

11   **Q.**   And Ms. Quintero --

12           **MR. MESTRE:**  Objection.  Relevance.

13           **MR. BRENNER:**  I'm just establishing there's some

14   relation between Counsel and the witness.

15           **THE COURT:**  All right.  Over- --

16           **MR. MESTRE:**  Your Honor, can we have a sidebar?

17   Totally inappropriate, Your Honor.

18           **THE COURT:**  Come on forward.  Come on forward.

19       (The following proceedings were heard at the sidebar:)

20           **THE COURT:**  All right.  So --

21           **MR. BRENNER:**  I'm sorry.  I don't have my mask.  I'm

22   sorry, Judge.

23           **MR. MESTRE:**  It's absolutely irrelevant.  It is silly.

24   I have three sisters.  This -- one of them happened to work at

25   Royal Caribbean.

SIDEBAR

```
 1              THE COURT:  Okay.

 2              MR. MESTRE:  Worked with him for some time.

 3              THE COURT:  Okay.

 4              MR. MESTRE:  Never met him, don't know him, never

 5    heard of him, I mean, never spoke to him in my life, never

 6    heard of him in my life.  And to use that my sister happens to

 7    work at Royal Caribbean to impeach this witness's credibility

 8    is 403, if there ever was, and I'm disappointed that Mr.

 9    Brenner is taking this tact.

10              THE COURT:  Okay.  Response?

11              MR. BRENNER:  Well, I had no -- I had no idea that

12    this would be such a sensitive --

13              THE COURT:  Well, is there any evidence that this was

14    the reason why Mr. Andreou came to --

15              MR. BRENNER:  Well, here's what I know.

16              THE COURT:  -- to court or that he gave favorable

17    testimony one way or the other?

18              MR. BRENNER:  I'll tell you what the evidence is.

19              THE COURT:  Because I may not -- there's a wide net

20    when it comes to bias, but --

21              MR. BRENNER:  Right.  Here's all --

22              THE COURT:  -- there's a limit.

23              MR. MESTRE:  I also have cousins, uncles, aunts.

24    Please.

25              MR. BRENNER:  Okay.  Here's all I'm doing.
```

SIDEBAR

1       The next question is going to be "Is she the sister of Mr.

2   Mestre?"

3       He's going to say, "Yes."

4       And I'm going to say, "After you" -- "you had a meeting

5   with the lawyers?  You sat down with them for, you know, for an

6   hour and a half?"

7       I'll go through the last questions, that she's his sister,

8   they met up.  That's it.

9           MR. MESTRE:  I wasn't -- I wasn't there.  I apologize,

10  Your Honor.

11          THE COURT:  Okay.  Unless there's a good-faith belief

12  that the sister is the reason he's giving favorable testimony

13  to the defense -- well, I don't want to limit you on bias.

14          MR. BRENNER:  Well, it just seems --

15          THE COURT:  I just -- I want to understand the

16  parameter.

17          MR. BRENNER:  Yeah.  It seems like a reasonable

18  inference.  It's a reasonable bias question to show that the --

19  when he's meeting with him, discussing the case, his boss is

20  the sister of the lawyer.  I think the jury can take something

21  from it or not take something from it.  It's not prejudicial.

22  I don't know why --

23          MR. MESTRE:  It is completely prejudicial because it's

24  a bias that's not real.  It's invented.  It's 403.  I wasn't at

25  that meeting that you're talking about.  I haven't spoken to

ANDREOU - CROSS / BRENNER

 1   this man until 30 days -- it's beyond the pale.

 2          MR. BRENNER:  Yeah.  He obviously knows when he's

 3   meeting the lawyers -- the firm's name is Rivero Mestre

 4   obviously.

 5       Your Honor, I obviously did not think this was even --

 6          THE COURT:  Right.

 7          MR. MESTRE:  It's inappropriate.

 8          MR. BRENNER:  It's one more question.

 9          THE COURT:  It's not 403 because it's bias.  So if

10   that's the extent of your question --

11          MR. BRENNER:  The next question -- I promise you, it's

12   one more question.

13       (Proceedings were heard in the presence of the jury:)

14          THE COURT:  All right.  You may continue.

15          MR. BRENNER:  Mr. Court Reporter, are you set back up?

16          THE REPORTER:  I am.

17   BY MR. BRENNER:

18   Q.   Okay.  The -- your boss named Cristina Mestre Quintero --

19   she was the -- she is the sister of Mr. Mestre; correct?

20   A.   Yes.

21   Q.   Okay.  Now, you had a meeting before your deposition.

22       Okay.  You had a meeting with Dr. -- Dr. Wright's lawyers.

23   Do you recall that?

24   A.   Yes.

25   Q.   I think -- and correct me if I'm wrong.  I think it was

ANDREOU - CROSS / BRENNER

1    Mr. Rivero that you met with.

2    **A.**   Yes.

3    **Q.**   Any other lawyers?

4    **A.**   Brian Paschal, I believe.

5    **Q.**   Brian Paschal.

6         Okay.  And you had the meeting at Royal Caribbean;

7    correct?

8    **A.**   In the cafeteria, yes.

9    **Q.**   Okay.  You met for an hour and a half, I think my notes

10   say.  Does that sound about right?

11   **A.**   That sounds right.

12   **Q.**   Okay.  At that meeting, you -- Dr. Wright's lawyers,

13   Mr. Rivero and Mr. Paschal, asked you a bunch of questions;

14   right?

15   **A.**   Yes.

16   **Q.**   And among the questions they asked you was -- one was

17   Dave -- was Dave involved in Bitcoin.  Do you remember them

18   asking you that?

19   **A.**   Yes.

20   **Q.**   And similarly, whether Dave could have created Bitcoin;

21   right?

22   **A.**   Yeah.

23   **Q.**   And this meeting took place in 2000 -- I think it was

24   2019.  Does that sound right?

25   **A.**   Could be.  I don't remember.

ANDREOU - CROSS / BRENNER

1    Q.   Certainly after that email we just looked at; right?

2    A.   Yes.

3    Q.   Okay.  So after that, you have a meeting with them.  They

4    ask you about whether Dave was involved in Bitcoin and whether

5    Dave could have created Bitcoin.  So we're on the same page?

6    A.   Yeah.

7    Q.   Okay.  And what you told them at that time is "Yeah, it's

8    possible Dave could have helped created Bitcoin," didn't you?

9    A.   Yes.

10   Q.   Okay.  Now, I want to go back up to the exhibit we were

11   just looking at, which was P-767.

12        MR. BRENNER:  The redacted version, please, Ms. --

13   Ms. Vela.

14   BY MR. BRENNER:

15   Q.   And here's what I'd like you to do.

16        MR. BRENNER:  Can we -- we're good?

17        Okay.  Thank you.

18   BY MR. BRENNER:

19   Q.   Here's -- here's what I want to do.  I want to start at

20   the paragraph that says, "If all documents..." and I want to go

21   through the words "anecdotal" -- "anecdotal information."

22   A.   Okay.

23        MR. BRENNER:  Okay.  So let's get that highlighted, if

24   we could.  No, up -- up a little bit.  No, just through

25   "anecdotal information."

ANDREOU - CROSS / BRENNER

 1          Okay.  Just -- okay.  One more word.

 2          Perfect.  Thank you, Ms. Vela.

 3  **BY MR. BRENNER:**

 4  **Q.**  Okay.  Do you see that?

 5  **A.**  Yes.

 6  **Q.**  So that's where your discussion with Mr. Mestre just was;

 7  right?

 8  **A.**  Yes.

 9  **Q.**  It was about anecdotal information?

10  **A.**  Yes.

11  **Q.**  And you said, "I don't know.  They had a discussion with

12  Ira.  I don't" -- "I have no idea what the anecdotal

13  information was"; right?

14  **A.**  Yeah.  I don't recall what --

15  **Q.**  Okay.

16          **MR. MESTRE:**  Objection.  Mischaracterizes the

17  testimony.

18  **BY MR. BRENNER:**

19  **Q.**  Okay.  Let's read the --

20          **THE COURT:**  Overruled.  I'll allow it at this point.

21  **BY MR. BRENNER:**

22  **Q.**  Let's read the rest -- the next four, five -- one, two,

23  three, four, five, six words.

24          You know where the anecdotal information came from, sir,

25  don't you?

ANDREOU - CROSS / BRENNER

1    **A.**   It says from discussions with Dave but not my discussions

2    with Dave.

3    **Q.**   Oh.  So you're writing to Ira that some other people, not

4    you, had discussions with Dave where Dave was saying he was the

5    creator of Bitcoin?  That's what this email means?

6    **A.**   Yeah.  I never spoke to Dave about Bitcoin.

7    **Q.**   Okay.  So explain -- so when you write here in the email,

8    "If all the documents are authentic, then with the addition of

9    the anecdotal information, we" -- you're talking about you;

10   right?  You're part of "we"?

11   **A.**   Okay.

12   **Q.**   -- "we have from discussions with Dave."

13        So the word "We have from discussions with Dave" -- the

14   "we" there is "we" meaning everyone but you?  Is that your

15   recollection now?

16   **A.**   I am not changing what I'm saying.  I never spoke to Dave

17   about Bitcoin, and the "we" was provided to me or that I read

18   or that we found.  When I wrote this email, I wasn't writing it

19   thinking that it would be evidence admitted to court.

20   **Q.**   Right.

21   **A.**   So I --

22   **Q.**   Right.

23   **A.**   I wasn't trying to choose my words to be perfect.

24   **Q.**   Okay.  So as you now read -- the email you wrote -- would

25   it be fair to say as a general matter, as a general matter,

**ANDREOU - CROSS / BRENNER**

 1  that you were -- your memory of events is better closer in time

 2  to the event?  So for example -- let me make it -- let me try

 3  to simplify it.

 4      If -- if you had -- if you had dinner at a restaurant --

 5  okay?  Just a regular dinner.

 6  **A.**   Uh-huh.

 7  **Q.**   You're out with your friend, your -- I don't know your

 8  personal -- you're out with someone socially; right?  And you

 9  had dinner with them, and you got home from dinner, and someone

10  said to you, "What did you have for dinner tonight?"  You're

11  probably going to know that; right?

12  **A.**   Yeah.

13  **Q.**   Right?

14      Not a hugely memorable event, but it's right then; right?

15  **A.**   Correct.

16  **Q.**   Now, if someone asks you a week later, you'll be less

17  likely to know what you had then -- right? -- for that

18  particular dinner if it wasn't anything special?

19  **A.**   Most likely.

20  **Q.**   Right.  And as we get further in time, our memories get

21  hazier --

22  **A.**   Most likely.

23  **Q.**   -- right?

24      So you would agree with me that your memory of these

25  events regarding whether or not you've had discussions with

ANDREOU - CROSS / BRENNER

1    Dave about Bitcoin would be fresher in your mind in 2016 than

2    they would be in a courtroom in 2021?  Can we at least agree on

3    that?

4    **A.**   It's more likely -- since it was closer, it's more likely

5    that I remember more then than I do now.

6    **Q.**   Right.  And you -- you would at least agree with me that

7    maybe it was inartful, but what you wrote in 2016 was that you

8    had discussions with Dave which led you to believe that he was,

9    in fact, behind the creation of Bitcoin.  That's what the words

10   say?

11        **MR. MESTRE:**  Objection.  That's not what the words

12   say.  The document speaks for itself.

13        **THE COURT:**  The objection is overruled.  I'll allow

14   it.

15        **THE WITNESS:**  I don't have any memory of speaking

16   about Bitcoin with Dave.  So I can't say that --

17   **BY MR. BRENNER:**

18   **Q.**   Right.  As you sit here today in 2021, you told Mr.

19   Mestre, you told the jury you don't remember having discussions

20   with Dave about Bitcoin?  You made that crystal-clear?

21   **A.**   Yeah.

22   **Q.**   And all I'm saying is:  Can we at least agree that the

23   words that you put down on paper in 2016 in an email is not

24   consistent with that, meaning that at that point you remembered

25   having discussions with Dave about the creation of Bitcoin?

ANDREOU - CROSS / BRENNER

1   That's what the words say; right?

2   **A.**   I'm not sure I agree.   I'm not saying that I had

3   discussions here.

4   **Q.**   Okay.

5   **A.**   So that's what I'm --

6   **Q.**   And that's because the word "we" is talking about someone

7   other than you?

8   **A.**   No.   It's like "we" --

9           **MR. MESTRE:**   Objection.   Argumentative.

10          **THE WITNESS:**   That doesn't necessarily mean that I

11   asked this question.

12          **THE COURT:**   Sustained.

13   **BY MR. BRENNER:**

14   **Q.**   Okay.   And then if we could go -- you didn't just leave it

15   there.   So it wasn't, like, "Well, I heard" -- the way you made

16   it sound today is "Well, I heard some things."

17   **A.**   Uh-huh.

18   **Q.**   "I read some things.   I wasn't really sure."   That's not

19   what you said in 2016, is it, sir?

20          **MR. MESTRE:**   Objection.   Argumentative.

21          **THE COURT:**   Sustained.

22   **BY MR. BRENNER:**

23   **Q.**   Okay.   Let's look at what you said in 2016, if we can go

24   down just two more paragraphs.   You wrote, "I am convinced that

25   Craig and Dave are the cocreators of Bitcoin."

1          That's what you wrote in 2016?

2  **A.**   Yes, I did.

3  **Q.**   That's what you believed in 2016?

4  **A.**   Yes, I did.

5          **MR. BRENNER:**  Okay.  Your Honor, may I consult with

6  counsel -- my colleagues?

7          **THE COURT:**  Certainly.

8          **MR. BRENNER:**  Mr. Andreou, I have no further

9  questions.  Thank you for your time.

10         **THE COURT:**  All right.  Any redirect?

11         **MR. MESTRE:**  Your Honor, no redirect.

12         Thank you, Mr. Andreou.

13         **THE COURT:**  All right.  Ladies and gentlemen, you have

14 the right to ask Mr. Andreou questions.  Does anyone have any

15 questions for the witness?  If so, just raise your hand just so

16 I can give you the time to write your question.  Are there any

17 questions for the witness?

18         All right.  Seeing no hands raised, is Mr. Andreou

19 excused?

20         **MR. MESTRE:**  Yes, Your Honor.

21         **THE COURT:**  On behalf of the plaintiffs?

22         **MR. BRENNER:**  Yes.  Yes, Your Honor.

23         **THE COURT:**  All right.  Thank you, sir.  You are

24 excused.

25         And the defendant's next witness?

CONRAD - DIRECT / MESTRE

```
 1              MR. MESTRE:  The defense calls Carter Conrad, please.
 2      Okay.  Okay.  Got it.
 3              THE COURT:  Hi.  Good afternoon, sir.
 4              THE WITNESS:  Good afternoon.
 5              THE COURT:  If you'll step forward right over here,
 6      sir.
 7          Let me ask that you remain standing.  Raise your right
 8      hand to be placed under oath.
 9              THE CLERK:  Please raise your right hand.
10                          CARTER CONRAD,
11      called as a witness for the Defendant, having been duly sworn,
12      testified as follows:
13              THE WITNESS:  I do.
14              THE CLERK:  Thank you.
15              COURT SECURITY OFFICER:  Right here.
16              THE COURT:  Go ahead and have a seat, sir.
17          Mr. Conrad, consistent with CDC guidelines, if you are
18      fully -- fully vaccinated and you feel comfortable, you are
19      permitted to take your mask off while you're testifying.
20              THE WITNESS:  Thank you, Your Honor.
21                        DIRECT EXAMINATION
22      BY MR. MESTRE:
23      Q.  Good afternoon.
24          Can you --
25      A.  Good afternoon.
```

CONRAD - DIRECT / MESTRE

 1  **Q.**   -- please describe your educational background for the

 2  jury, please.

 3        **THE COURT:**  If I can just have the witness state his

 4  full name for the record, please.

 5        **MR. MESTRE:**  Oh.  I thought he had.  I apologize.

 6  **BY MR. MESTRE:**

 7  **Q.**   Please state your full name for the record.

 8  **A.**   Carter Conrad, C-o-n-r-a-d.

 9  **Q.**   And can you briefly describe your educational background

10  for the jury?

11  **A.**   So my formal education is some college with no degree.  I

12  have several security and computer forensic certifications.

13  **Q.**   And can you briefly describe your work background?

14  **A.**   So I've been in the security business since the early

15  90's.  In the early 2000's, that changed into verification of

16  data, aggregation of data and verification.  And then in the

17  mid-2000's, that changed into a computer forensics practice.

18  **Q.**   And did there come a time where you met David Kleiman?

19  **A.**   Yes.

20  **Q.**   And when was that?

21  **A.**   That was in the mid-2000's.  I don't know specifically,

22  somewhere between 2006 and 2007.

23  **Q.**   And had you heard of him before you met him?

24  **A.**   I did, yes.  We held a couple of certifications that were

25  similar in nature, and I was acquainted with him through

CONRAD - DIRECT / MESTRE

1  various list servers that -- those certifications.

2  **Q.**   And did you have an opinion about him?

3  **A.**   Yes.  I -- he was highly respected.

4  **Q.**   And did there come a time where you developed a

5  friendship?

6  **A.**   Yes.

7  **Q.**   And how did that happen?

8  **A.**   We had some verbal correspondence and email correspondence

9  for some time.  Dave then invited me, I believe, again, in

10  2007 -- maybe it was 2008, around that timeframe -- to attend a

11  presentation that he was part of at FIU, University -- Florida

12  International University here in Miami-Dade.

13  **Q.**   What type of presentation was it?

14  **A.**   It was an FBI/InfraGard presentation.  So that's an

15  FBI-sponsored organization where individuals that are public

16  sector law enforcement and private sector are -- participate in

17  some training.

18  **Q.**   Was that the first time you met him in person?

19  **A.**   Yes, it was.

20  **Q.**   Okay.  After that first time you met him, how is it that

21  you developed a friendship with Mr. Kleiman?

22  **A.**   Well, in addition to some of the same certifications, it

23  was interesting that when I first met him that day, we had the

24  exact same phone.  It was a phone that folded out with a key --

25  keyboard.  It wasn't just -- I noted it.  The backpack on his

CONRAD - DIRECT / MESTRE

1   wheelchair was the exact backpack that I used to carry around a

2   computer.  It just started a friendly conversation, and that

3   developed into a friendship.

4   Q.   Would you do social things with him?

5   A.   Not a great deal.  There was times when we'd go out to eat

6   or different things, but most of our activity was related to

7   computer forensics and the work that that involved.

8   Q.   So how often would you speak to him?

9   A.   I'd speak to Dave on a daily basis, yeah.

10   Q.   Would it be fair that you even spoke to him multiple times

11   a day?

12   A.   Yes.

13   Q.   Would it also be fair to say that you spoke to him about a

14   variety of subjects?

15   A.   Yes.

16   Q.   Personal and work?

17          MR. FREEDMAN:  Objection.  Leading.

18          THE COURT:  I'll allow it.  Overruled.

19          THE WITNESS:  I'm sorry.

20          THE COURT:  You may answer the question, sir.

21          THE WITNESS:  So primarily work-related, but there was

22   some personal aspects, personal conversations.

23   BY MR. MESTRE:

24   Q.   So after this friendship developed and after you met him,

25   did there come a time where you started working on professional

**CONRAD - DIRECT / MESTRE**

1  engagements together?

2  **A.**   So initially -- yes is the answer.  Initially, it would be

3  jobs that he would have gotten, you know, through his own

4  activity.  If it was an acquisition of computers that needed to

5  be done in a work environment, it was difficult for him to

6  reach under the desk, unplug the cables, that sort of thing.

7  So I would assist him in those collections, just that part of

8  it.

9       He would perform the preservation of the hard drives.  He

10  would do the analysis.  I was sort of in, you know -- in a way

11  his legs to just help assist him with that collection.

12  **Q.**   When you say you were his legs, do you mean outside of the

13  house or in the house?

14  **A.**   Well, what I was describing would be a work environment

15  like an office.  Say there was ten or 15 computers that need to

16  be harvested as far as the data, forensically imaged.  So if

17  those computers were in an awkward area where it would be

18  difficult to reach under a desk or in some other area, a server

19  room that was small, where access was limited -- he was in a

20  wheelchair.

21       So I would assist in helping him to get access to those

22  devices.

23  **Q.**   Did you ever visit him at home in addition to the setting

24  you were just describing?

25  **A.**   Yes.

**CONRAD - DIRECT / MESTRE**

1  **Q.**   And did you do the same kind of thing for him at home?

2  **A.**   At home, he was fairly self-sufficient from that

3  standpoint.  He had networked his computers so that he could

4  get remote access to those.

5  **Q.**   Do you know if he had help at home because of his physical

6  limitations?

7  **A.**   I know that there was an individual that worked in the

8  information technology networking and support group.  His name

9  was Jodie, and he's also deceased at this point.  Jodie would

10  assist him in various -- various things.  I don't know the

11  scope of all of them, though.

12  **Q.**   Did you know Jodie?

13  **A.**   I only spoke to him on the phone.  I was more acquainted

14  with the owner of the business that he worked for.

15  **Q.**   And who was that?

16  **A.**   His name is Robert Bell.  He goes by Bob, Bob Bell.

17  **Q.**   Do you know if Jodie ever stayed over at Dave Kleiman's

18  house in order to help him?

19  **A.**   I believe so, but I couldn't -- I can't give an

20  affirmative answer to that.  I just believe so.

21  **Q.**   What -- what was the -- other than what you've described,

22  going for the cables, you know, working the hard drives and

23  different things that you described, what -- what other type of

24  help did you observe that Dave Kleiman needed in his work life?

25  **A.**   There was a conference in 2009, is my recollection, in

CONRAD - DIRECT / MESTRE

1   Orlando, the CEIC conference, which was a vendor conference.

2   EnCase Forensic Software was the sponsor of that conference.

3   Dave had a presentation there, and he asked me for some

4   assistance relative to, you know, that presentation.

5   **Q.**   Is it fair to say that you would help him physically so

6   that he could fulfill some of his responsibilities on these

7   engagements that you had together?

8   **A.**   Yes.

9           **MR. FREEDMAN:**  Objection.  Leading.

10          **THE COURT:**  Overruled.  I'll allow it.

11          **THE WITNESS:**  Yes, that's -- that -- that's fair.

12  **BY MR. MESTRE:**

13  **Q.**   Okay.  So did there come a time where you created a

14  business partnership with Dave Kleiman?

15  **A.**   Yes.

16          **MR. FREEDMAN:**  Objection.  Leading.

17          **THE COURT:**  Overruled.  I'll allow it.

18          **THE WITNESS:**  Yes.

19  **BY MR. MESTRE:**

20  **Q.**   What was that business called?

21  **A.**   Computer Forensics, LLC.

22  **Q.**   And why was Computer Forensics, LLC created?

23  **A.**   My recollection is that it was sometime -- January or

24  February of 2012, so almost ten years ago.  And at that point,

25  Dave had had -- had been in the hospital.  He was continuing to

**CONRAD - DIRECT / MESTRE**

 1  attract inquiries as to additional work.

 2      I was assisting him with that.  I was performing some of

 3  the work.  He would refer it out.  And depending on, you know,

 4  the nature of the engagement, I would either just bill it out

 5  for myself or I would bill it out and we would do some sort of

 6  sharing for the fee.

 7      So that started around 2010, is my recollection, when Dave

 8  was in the hospital.  This ongoing business generation was --

 9  continued to occur, and I approached Dave, and I said,

10  "It's" -- "it's really time for us to formally, you know,

11  create an entity."  And we did that, again, early in 2012.

12  **Q.**  Was Dave Kleiman excited about it?

13  **A.**  Yes, I believe -- I believe so.

14  **Q.**  Were you excited about it?

15  **A.**  I was -- I was certainly excited.

16  **Q.**  Was Dave Kleiman dedicated to it?

17  **A.**  Yes.

18  **Q.**  Do you remember whether you had a domain name?

19  **A.**  Yes.

20  **Q.**  Do you remember who found it?

21  **A.**  I believe I did.

22  **Q.**  And how did Dave -- did you ultimately tell Dave Kleiman

23  that you had found a domain name?

24  **A.**  Immediately upon knowing that Computer Forensics, LLC was

25  available -- ComputerForensicsLLC.com was available, we

**CONRAD - DIRECT / MESTRE**

1  immediately registered the name, is my recollection, and we

2  formed the LLC subsequent to that -- directly subsequent to

3  that.

4  **Q.**   How did he respond when you told him you found this domain

5  name?

6  **A.**   It was with some excitement.  I -- I was genuinely

7  surprised that in 2012, a domain that so specifically

8  identified the scope and the type of work that we were doing

9  would be available.

10      And from the standpoint of keyword-searching and other

11  ways of -- of -- of generating interest in the business, I

12  thought it was advisable that we move on it as quickly as

13  possible.

14  **Q.**   And during the time that you had Computer Forensics, were

15  there engagements that you had to take over for Dave?

16  **A.**   I don't recall with clarity that.  Again, we're talking

17  about almost ten years ago now at this point.  But I will say

18  to you that the business that was generated went into the

19  funnel of -- of the business proper of Computer Forensics, LLC

20  as -- as an entity.

21  **Q.**   Do you know if there were times when -- when Dave wasn't

22  able to complete the engagement that maybe Patrick would take

23  over the engagement?

24  **A.**   So, again, I don't have clear recollection of that, but I

25  will say to you Patrick came into the business later in the

CONRAD - DIRECT / MESTRE

1    year in 2012.  So it was originally myself and David Kleiman

2    that formed the LLC.

3        If there was any -- if there was any action within an

4    engagement, a split of -- of whatever those fees were would

5    occur.  And each person, based on the percentage of the work

6    that they did, would receive those fees after the company

7    received its -- that's the way it was structured, that the

8    company received a percentage off the top for overhead.

9        And then subsequent to that, each -- each analyst or each

10   examiner would -- would have the proceeds after that.

11   **Q.**   So let me -- let me show you what's -- and I think this is

12   already in evidence, D-40.

13            **MR. MESTRE:**  Is that in evidence?

14        **MS. GONZALEZ:**  It is.

15            **MR. MESTRE:**  Okay.  So we can publish it to the jury.

16   **BY MR. MESTRE:**

17   **Q.**   So I'm just going to show you --

18            **THE CLERK:**  Is it in evidence?

19            **THE COURT:**  Hold on one second.  Let me just --

20        **MR. MESTRE:**  Hold up.

21            **THE COURT:**  It's in evidence, Mr. Mestre?

22        **MR. MESTRE:**  I'm told it is.

23            **THE COURT:**  Yes, it is.

24        **MR. MESTRE:**  I believe it is.

25            **THE COURT:**  It is.

CONRAD - DIRECT / MESTRE

1          **MR. MESTRE:**  Thank you.

2     BY MR. MESTRE:

3     Q.   So, Mr. Conrad, in this -- this is an email from Dave to a

4     whole bunch of folks, Maren Sheppard.  And you see that it

5     says, "It's with deepest regrets that I have to inform you I am

6     unable to continue to assist as the expert in the matter of

7     *U.S. v. Garcia* for medical reasons."  And then it goes on, and

8     then, you know, lower, it says, "But Patrick is available."

9          Does this refresh your recollection as to whether or not

10    Patrick would help him with engagements he wasn't able to

11    perform?

12    **A.**   Well, I don't have direct recollection, and I assume this

13    to be authentic.  I have no reason to think it's not authentic.

14    This is not -- it certainly would be accurate, you know, my

15    recollection, although I don't distinctly remember this case.

16          **MR. MESTRE:**  You can take that down.

17    BY MR. MESTRE:

18    **Q.**   Would you bill by the hour on engagements?

19    **A.**   Most of the time.  Sometimes there was a flat fee.

20    **Q.**   Okay.  When you billed -- when you -- when Computer

21    Forensics would bill by the hour, would you each keep track of

22    the time that you spent?

23    **A.**   Yes.

24    **Q.**   Okay.  And you've already said you would -- you developed

25    a friendship with Dave Kleiman.  So in your business

 1  partnership with him, even though you were friends, did you

 2  have an operating agreement?

 3  **A.**   We did.

 4  **Q.**   Okay.  I'm going to show you D-005.  This one, I know, is

 5  in evidence.  And if you could go -- it's a complaint, but if

 6  you can go to the very last page of the complaint.

 7       So do you recognize this document?

 8            **MR. MESTRE:**  Maybe call it out and make it bigger.

 9  It's hard to see.

10            **THE WITNESS:**  Yes, I do.

11  **BY MR. MESTRE:**

12  **Q.**   What is this document?

13  **A.**   It was the operating agreement that I created that -- this

14  one has Patrick's signature on it, but this was -- would be

15  mostly duplicative of the one that was between -- that was with

16  Dave and I originally.  And then subsequent, again, on

17  February 2013, Patrick was added to it.

18  **Q.**   Okay.  So I want to go through this a little bit.

19       In this operating agreement, did it include a description

20  of the owners of Capital Forensics?  I say "Capital," but I

21  mean "Computer."

22  **A.**   So yes.  The first line there says, "Computer Forensics,

23  LLC shall be owned equally by Carter Conrad, Dave Kleiman, and

24  Patrick Paige."

25  **Q.**   Did it define the managing member of Computer Forensics?

CONRAD - DIRECT / MESTRE

1   **A.**   So each individual shall be a managing member of Computer

2   Forensics, LLC.

3   **Q.**   Did it define the percentage ownership that each of you

4   had?

5   **A.**   So 33.33 percent interest of Computer Forensics.

6   **Q.**   Did it define the way that revenues would be distributed?

7   **A.**   Yes, it did.

8   **Q.**   Did it set forth how expenses were going to be paid?

9   **A.**   I believe so.

10  **Q.**   I'll take you to it.  There you go.

11      It deals with expenses?

12  **A.**   Yes.  So the -- the 20 percent, as I described previously,

13  off -- off the top.  So any gross that would come in -- if it

14  was a hundred dollars, $20 of that gross would go to the

15  company to be used for overhead and expenses.  The other

16  80 percent would be designated to whichever member or members

17  were part of that project.

18  **Q.**   Okay.  Did it -- did this operating agreement also provide

19  for the ownership of intellectual property?

20  **A.**   Yes, it did.

21      **MR. MESTRE:**  Okay.  You can take that down, Mr. Reed.

22  **BY MR. MESTRE:**

23  **Q.**   So I want to keep talking about the business and the

24  formalities that you all had in the business beyond the

25  operating agreement.

CONRAD - DIRECT / MESTRE

1        So did Computer Forensics have an accountant?

2   A.   Yes, it did.

3   Q.   Who was that accountant?

4   A.   David Kuharcik, who's a CPA.

5   Q.   Was Dave Kleiman involved in choosing that accountant?

6   A.   Yes.  David Kuharcik had worked with -- with Dave Kleiman

7   previously, but there was a discussion between us.  I

8   interviewed someone that I knew for the position.  Ultimately,

9   the company decided on Mr. Kuharcik.

10       (Defendant's Exhibit D-41 marked for identification)

11  BY MR. MESTRE:

12  Q.   I'm going to show you and not the jury -- I don't believe

13  this is in evidence -- Defendant's 41.

14       Mr. Conrad, do you recognize this document?

15  A.   I don't recognize it directly, but it seems like something

16  that would have been produced as part of the business, yes.

17  Q.   Do you recognize -- let's start at the -- these -- these

18  emails go in reverse order.  So why don't we go to the back.

19       Do you recognize the first email as an email from Dave to

20  David Kuharcik?

21  A.   Again, while I don't recognize it directly, it's -- it's

22  very much consistent with an email that Dave would have sent.

23  The address in West Palm Beach is the corporate address that we

24  were using at the time.

25           MR. MESTRE:  Okay.  I -- Your Honor, I would move to

CONRAD - DIRECT / MESTRE

 1   admit D-41 into evidence.

 2           MR. FREEDMAN:  Objection, Your Honor.  Foundation and

 3   authentication.

 4           THE COURT:  Overruled.  It will be admitted into

 5   evidence.

 6       (Defendant's Exhibit D-41 received in evidence)

 7           MR. MESTRE:  Okay.  So if we can go to the -- and you

 8   can publish it to the jury, Mr. Reed, please.  So the second

 9   page.

10   BY MR. MESTRE:

11   Q.   So the earliest email says, "Hi, David."  And this is an

12   email from Dave to David, two Daves, so from Dave to David

13   Kuharcik.  And you see it's Dave Kleiman saying first, "What

14   would your annual fees be..."  That's the first part of the

15   first sentence.

16       Is that Dave Kleiman asking Mr. Kuharcik what he would

17   charge?

18   A.   Yes.

19   Q.   Okay.  And then later in that sentence, he says, "With

20   annual gross expected to be somewhere between 150 and 300 for

21   the next two years."

22       Do you see that?

23   A.   I do, yes.

24   Q.   Is that an estimate of revenues by David Kleiman?

25   A.   Yes, it is.

CONRAD - DIRECT / MESTRE

1          **MR. MESTRE:**  Okay.  And then if you go to the next

2  paragraph -- the next paragraph, Mr. Reed, the 80/20 percent.

3  **BY MR. MESTRE:**

4  **Q.**   Do you see that, Mr. Conrad?

5  **A.**   I do, yes.

6  **Q.**   So is that an explanation -- an explanation of how the

7  business was going to split revenues and expenses to

8  Mr. Kuharcik?

9          **MR. FREEDMAN:**  Objection.  Leading.

10          **THE COURT:**  Sustained.

11          **THE WITNESS:**  Yes.

12  **BY MR. MESTRE:**

13  **Q.**   What is that?

14  **A.**   I'm sorry.

15          **THE COURT:**  Yeah.

16          **MR. MESTRE:**  I'll rephrase.

17          **THE COURT:**  Not a problem.  Just rephrase, please.

18          **MR. MESTRE:**  Apologies.

19  **BY MR. MESTRE:**

20  **Q.**   What is -- what is the 80/20?

21  **A.**   80/20 is a representation of the gross revenue and how

22  80 percent would go to the individual or -- or individuals that

23  were working on the project.  20 percent would stay with the

24  company for overhead and expenses.

25  **Q.**   Okay.  So let me take you to the next email in the chain

**CONRAD - DIRECT / MESTRE**

1   now, which is on Thursday, January 24th.  And there, Dave

2   Kleiman is sending an email to you and Patrick, and he says, "I

3   have personally known since 1990."  So "This is what I sent to

4   the CPA.  I've personally known him since 1990."

5       Was that a factor in choosing Mr. Kuharcik?

6   **A.**   I believe so, yeah.

7   **Q.**   Okay.  Let's go to the next email above that -- or the

8   next part of the chain.  The Thursday, January 24th email,

9   exactly.  So let's take this one by one.

10      So on Paragraph -- in Paragraph 2, it says, "Even though

11  we're an LLC, we can elect" -- "we can elected [sic] to be

12  treated as a corporation or an S corporation for tax purposes."

13      Do you see that?

14  **A.**   I do.

15  **Q.**   Do you know what that means?

16  **A.**   So there's some flexibility -- and I'm not an accountant.

17  So this is the --

18  **Q.**   Me neither.

19  **A.**   -- layman's version.  There is some flexibilities with a

20  Limited Liability Company in the State of Florida.  The way the

21  internal structure -- you can be -- for your tax returns, you

22  can be a corporation but still be an LLC.  It's a little beyond

23  my grasp of accounting, but my recollection is that we chose to

24  use that flexibility for filing purposes.

25  **Q.**   Was -- was Dave Kleiman taking charge of communicating

CONRAD - DIRECT / MESTRE

1  with the accountant about these issues?

2  **A.**   Taking charge?  I don't know how to answer that.  But

3  certainly in this case, he was -- he had direct communication,

4  and he was distributing that information to Patrick and myself.

5  **Q.**   Did Computer Forensics file tax returns?

6  **A.**   Yes, sir.

7  **Q.**   And that was important?

8  **A.**   It was important?

9  **Q.**   It's the law?

10  **A.**   Yes.

11  **Q.**   Okay.  Was Computer Forensics registered to do business in

12  Florida?

13  **A.**   Yes.

14  **Q.**   Okay.  So I talk to you now a little bit about Dave's --

15  Dave Kleiman's illness.

16       So do you know that there came a time where Dave Kleiman

17  was hospitalized?

18  **A.**   Yes.

19  **Q.**   Okay.  Did you visit Dave Kleiman in the hospital?

20  **A.**   I did.

21  **Q.**   How many times did you visit?

22  **A.**   I don't have an accurate number, but there was certainly a

23  period of time when I would see him weekly.  I visited him.  He

24  was initially at the VA Hospital in Palm Beach County north of

25  here, and then he was moved to the VA in Miami because they

CONRAD - DIRECT / MESTRE

1   have a spinal cord injury unit.  And there was a period of

2   time -- once he moved to Miami, I would see him at least

3   weekly.

4   **Q.**   Would you -- on these visits, would you -- would you talk

5   to him about business issues?

6   **A.**   Yes.

7   **Q.**   Would you talk to him about -- about personal issues?

8   **A.**   Yes.

9   **Q.**   Random things?  I guess -- here's what I'm getting at.

10  Would you -- would you -- would you talk about a lot of

11  different things with him?

12  **A.**   Yes.

13  **Q.**   Okay.  I'm going to talk about Bitcoin now, and I'm

14  focused on his lifetime, what actually happened during Dave

15  Kleiman's lifetime, not afterwards.

16      Any time during Dave Kleiman's lifetime, did he ever

17  mention anything about Bitcoin to you?

18  **A.**   No.

19  **Q.**   During Dave Kleiman's lifetime, did he ever tell you that

20  he mined Bitcoin?

21  **A.**   No.

22  **Q.**   During Dave Kleiman's lifetime, did he ever tell you that

23  he had a partnership with Dr. Craig Wright to either mine or

24  invent Bitcoin?

25  **A.**   No.

CONRAD - DIRECT / MESTRE

1   Q.   How would you communicate -- when you weren't with him,

2   how would you communicate with him?  I mean, you had a

3   business.  Did you all have -- you know, in our law firm, we

4   have an email server.  Did you have something like that?

5   A.   We would communicate with phone, text message, and email.

6   Q.   Okay.  Did you have -- did you have access to Dave's

7   emails?

8   A.   No.

9   Q.   Okay.  Did he ever send you an email mentioning Bitcoin or

10  a text?

11  A.   No.

12  Q.   Or anything at all?

13  A.   No.

14  Q.   Okay.  So I'm going to show you what I believe is already

15  admitted into evidence as -- it's D-10.

16        MR. MESTRE:  All right.  It is.

17     Okay.  So I'm told it is, Your Honor.

18        THE COURT:  Yes, it's in evidence.

19        MR. MESTRE:  May I publish?

20     Okay.  So let's publish this to the jury, please.

21  BY MR. MESTRE:

22  Q.   Do you recognize this document?

23  A.   I do.

24        MR. MESTRE:  Okay.  Let me actually start with the

25  second page, Mr. Reed.

CONRAD - DIRECT / MESTRE

1    BY MR. MESTRE:

2    **Q.**   Okay.  So this is -- this is the second page of this

3    document.  Is that your handwriting where it says,

4    "Received" -- or it says, "RECVD"?

5    **A.**   Yes.

6    **Q.**   Okay.  Do you remember receiving this document?

7    **A.**   I have a recollection at my office in Boynton Beach,

8    Florida, which was not the Northlake Boulevard address that's

9    on the envelope.

10       I'm not really certain as to how it got to Boynton Beach

11   with the Northlake Boulevard address on it, but I do have a

12   recollection of seeing it and opening it and then deciding to

13   memorialize that date and time by using a sharpie and writing

14   on it the date of October 10th, 2013.

15           **MR. MESTRE:**  Your Honor, I'm told I made a -- I didn't

16   ask for the admission of D-56.

17       Oh, I see.  I see.  Apologies.  Three steps behind.

18           **THE COURT:**  Okay.

19           **MR. MESTRE:**  So that's a mistake.  I'll come back to

20   D-56.

21           **THE COURT:**  All right, then.

22   BY MR. MESTRE:

23   **Q.**   So back to -- to this exhibit -- let me take a step back.

24   Do you recognize the address where it says, "W&K Info Defense

25   Research, LLC"?

CONRAD - DIRECT / MESTRE

1   **A.**   I do.  The Northlake Boulevard address, Box 34 -- 314 was

2   an address that David Kleiman used.

3   **Q.**   So that address on this document is an address that David

4   Kleiman would use?

5   **A.**   Correct.

6   **Q.**   Okay.  Why did you think it was important to memorialize

7   it when you got it?

8   **A.**   The prior page seemed to be some sort of legal --

9   **Q.**   Go back to it.

10  **A.**   -- notice.  "Notice of Listing" is how it's labeled there,

11  and generally I look to legal documents as something that are

12  important and not to be ignored.

13          **MR. MESTRE:**  Okay.  I want to go back -- if I can pull

14  up -- this is not in evidence yet.

15      So if we can just show this to the witness and counsel and

16  the Court, D-56.

17      (Defendant's Exhibit D-56 marked for identification)

18  **BY MR. MESTRE:**

19  **Q.**   Do you recognize this document?

20  **A.**   Yes.

21  **Q.**   Okay.  What is this document?

22  **A.**   It is Dave Kleiman letting David Kuharcik know that he

23  would be taking on the assignment as -- as our CPA.

24  **Q.**   Do you recognize David Kuharcik's signature block?

25  **A.**   I'm sorry.  Not specifically.  I mean, it looks -- it

CONRAD - DIRECT / MESTRE

1    looks accurate, but I couldn't --

2    **Q.**   I don't mean the look of it, Mr. Conrad.  I mean, do you

3    recognize the address, for instance?

4    **A.**   I do not.

5    **Q.**   Do you recognize his email address?

6    **A.**   Yes, I do.

7           **MR. MESTRE:**  Okay.  Your Honor, I'd move for the

8    admission of D-56.

9           **MR. FREEDMAN:**  No objection, Your Honor.

10          **THE COURT:**  All right.  Admitted into evidence.

11       (Defendant's Exhibit D-56 received in evidence)

12   **BY MR. MESTRE:**

13   **Q.**   And just since -- since I've gone through this trouble, is

14   this -- did this email, in fact, let Mr. Kuharcik know that he

15   had been selected to be the accountant?

16   **A.**   Yes.

17          **MR. MESTRE:**  Okay.  And if you go to the next page,

18   Mr. Reed.

19   **BY MR. MESTRE:**

20   **Q.**   Is that the registration with the Florida Department of

21   State for Computer Forensics, LLC?

22   **A.**   Yes.

23   **Q.**   Okay.  And if you keep going to the -- the next page,

24   that -- this -- can you tell me what this is?

25   **A.**   It appears to be a profit-and-loss statement from

CONRAD - DIRECT / MESTRE

1   QuickBooks.

2   **Q.**   Would Computer Forensics keep -- keep books?

3   Profit-and-loss?

4   **A.**   Yes.

5   **Q.**   Okay.  And if you go to the next page, do you recognize

6   this?

7   **A.**   It's a profit-and-loss detail page which is for Computer

8   Forensics, LLC.

9   **Q.**   Okay.  So is it -- is it fair to say that Computer

10  Forensics, LLC was very careful about the books and records it

11  kept?

12          **MR. FREEDMAN:**  Objection, Your Honor.  Leading.

13          **THE COURT:**  Sustained.

14  **BY MR. MESTRE:**

15  **Q.**   Was Computer Forensics careful about the books and records

16  it maintained?

17  **A.**   Yes.

18  **Q.**   Okay.  So did -- did Dave Kleiman ever mention Dr. Wright

19  to you?

20  **A.**   Yes.

21          **MR. MESTRE:**  Oh.  I think I did it again.  I don't

22  think I asked for the admission of D-57.  Give me one minute.

23      Let's pull up D-57 but just for the Court and counsel and

24  the witness.

25      (Defendant's Exhibit D-57 marked for identification)

CONRAD - DIRECT / MESTRE

1    **BY MR. MESTRE:**

2    **Q.**   So, Mr. -- Mr. Conrad, the same question:  Do you

3    recognize Dave Kleiman's address -- email address?

4    **A.**   Yes.

5    **Q.**   Do you recognize David Kuharcik's email address?

6    **A.**   Yes.

7    **Q.**   What does -- what is this document?

8    **A.**   The -- I guess -- I'm assuming there were some attachments

9    that were part of this email chain, 1099's for work performed

10   that we had received for work done in 2012.

11   **Q.**   Okay.  Let's put -- I'm going to show you the attachments.

12        **MR. MESTRE:**  Can you scroll?

13   **BY MR. MESTRE:**

14   **Q.**   This was one of the attachments.  A 1099?

15   **A.**   Yes.

16   **Q.**   Does this look like the attachment that the email was

17   referring to?

18   **A.**   Yes, sir.

19        **MR. MESTRE:**  Okay.  Your Honor, I'd move for the

20   admission of D-57.

21        **MR. FREEDMAN:**  Your Honor, we don't have an objection

22   per se to the document, just -- there are 1099's and tax

23   records associated with a currently operating business that's

24   not represented here.

25        So I just want to make that clear, but beyond that, I

CONRAD - DIRECT / MESTRE

1  don't really have an objection.

2        MR. MESTRE:  We can -- so don't show -- Mr. Reed,

3  don't show them -- and, in fact, I'm not going to ask any

4  questions about this document.

5     So, Your Honor, we're happy to redact.

6        THE COURT:  All right.  So --

7        MR. MESTRE:  We'll work with counsel to redact

8  whatever is appropriate.

9        THE COURT:  All right.  With the understanding that

10 the redactions will be made, Exhibit D-57 is admitted into

11 evidence.

12    (Defendant's Exhibit D-57 received in evidence)

13       MR. MESTRE:  Thank you, Your Honor.

14       THE WITNESS:  May I approach the Court just for one

15 second?

16    Your Honor, there was a details page from QuickBooks, a

17 profit-and-loss, that had similar information that I observed

18 in it with our client information.  I would respectfully ask

19 that --

20       MR. MESTRE:  We don't need that in evidence, Mr.

21 Conrad.

22       THE COURT:  Yeah.  Let's ensure that that information

23 is not included.

24    Is there a need to introduce all of the attachments?

25       MR. MESTRE:  Yeah.  We'll redact -- we want it -- let

CONRAD - DIRECT / MESTRE

 1  me be clear.  We -- we want the email in evidence, the

 2  attachments in evidence.  Whatever information is confidential,

 3  we will absolutely redact.

 4          **THE COURT:**  But it's hard to know, based on what Mr.

 5  Conrad is saying, what information he feels is privileged

 6  versus what information that the attorneys feel is privileged

 7  here in the courtroom.

 8      So to -- to address the matter, perhaps the attorneys can

 9  look at the -- at the attachments and decide that some may not

10  properly -- or should not be properly included as part of the

11  exhibit as opposed to the redaction of -- of the attachments.

12      Might -- might you do that now?

13          **THE WITNESS:**  Your Honor -- Your Honor, if I may --

14          **THE COURT:**  Yeah.

15      And -- and, Mr. Conrad, I certainly understand your

16  concern, and that's why I'm trying to resolve it now so that

17  you can -- you can feel comfortable knowing that your clients

18  are not going to be disclosed.

19          **THE WITNESS:**  Thank you, Your Honor.

20          **MR. FREEDMAN:**  Your Honor, I also just have a concern

21  that this may be in a back door to get into a privilege issue

22  we discussed with the Court earlier this -- this morning

23  about --

24          **THE COURT:**  Understood.

25      And perhaps what we can do is agree to admit the first

CONRAD - DIRECT / MESTRE

1  page of D-57 and have the attorneys look at all of the

2  attachments and make sure that -- only the necessary ones with

3  regard to Mr. Kleiman and not including any current clients

4  with regard to any other businesses.

5       Would that be acceptable?

6            MR. FREEDMAN:  So for us, Your Honor, yes, except, you

7  know, the members of -- Mr. Kleiman was a former member of

8  Computer Forensics.  He's obviously passed on, and the two

9  members remain operating the business --

10           THE COURT:  Right.

11           MR. FREEDMAN:  -- and they don't have counsel.

12           MR. MESTRE:  We're going to have a break at 3:30.  We

13  can -- we're happy to work with counsel and see if we can agree

14  on the redactions -- I can't imagine we won't agree -- and with

15  Mr. Conrad, of course, to mete this concern.

16           THE COURT:  That would be acceptable.

17           MR. FREEDMAN:  I feel confident we can work with

18  counsel, but the issue is this is the witness's business that's

19  currently operating, and he has -- doesn't have counsel

20  present.

21           THE COURT:  Right.  So I think that's -- that's a

22  fair -- that's a fair compromise.

23       And since we are going to be taking a recess probably

24  before Mr. Conrad's testimony is concluded, then you can take

25  the time with Mr. Conrad looking at the exhibit so that he can

 1  feel comfortable that that information is not disclosed.  Okay?

 2           THE WITNESS:  Thank you, Your Honor.

 3           MR. MESTRE:  Thank you.

 4           THE COURT:  All right.

 5           MR. MESTRE:  And, Mr. Conrad, we will work with you.

 6  So -- okay.

 7  BY MR. MESTRE:

 8  Q.   So getting back to the question, in terms of -- I want to

 9  talk to you about Dr. Wright now.

10       So did Dave Kleiman ever mention Dr. Wright to you?

11  A.   Yes.

12  Q.   Okay.  Did he ever mention that he was working on a paper

13  with Dr. Wright?

14  A.   He did.

15  Q.   Okay.  The paper that Dave Kleiman mentioned -- did it

16  have to do with the analysis of data from a hard drive if that

17  data had been overwritten?

18  A.   Yes.

19  Q.   And would it be fair to call that paper a -- a data white

20  fallacy paper?

21           MR. FREEDMAN:  Objection, Your Honor.  Leading.

22           THE COURT:  Sustained.

23  BY MR. MESTRE:

24  Q.   Have you -- have you ever heard -- did you ever hear Dave

25  Kleiman call it a data white fallacy paper?

CONRAD - DIRECT / MESTRE

1   A.   We're going back many, many years.  So I don't know

2   that -- that particular description, but when we would discuss

3   it, we both understood it to be the efficacy of overriding data

4   on a hard drive, how many times would be necessary in order to

5   effectively override data.

6   Q.   And -- and did that paper have absolutely anything at all

7   to do with Bitcoin?

8        MR. FREEDMAN:  I'm sorry.  I didn't hear the question.

9        MR. MESTRE:  I'm sorry.

10  BY MR. MESTRE:

11  Q.   And that paper had absolutely nothing to do with Bitcoin?

12  A.   No.

13  Q.   Okay.  Did he -- did Dave Kleiman ever tell you that he

14  was working on any other projects with Dr. Wright or papers?

15  A.   I don't recall.

16  Q.   During his lifetime, did he ever say that he had a

17  partnership to mine or invest -- invent Bitcoin with

18  Dr. Wright?

19  A.   No.

20  Q.   During his lifetime, did Dave Kleiman ever say that he

21  mined Bitcoin?

22  A.   No.

23  Q.   During his lifetime, did Dave Kleiman ever say anything

24  negative about Dr. Wright?

25       MR. FREEDMAN:  Objection.  Foundation.

**CONRAD - DIRECT / MESTRE**

1              **THE COURT:**  Sustained.

2    **BY MR. MESTRE:**

3    **Q.**   Did Dave Kleiman ever tell you that Dr. Wright had stolen

4    anything from him?

5    **A.**   No.

6    **Q.**   I want to talk to you a moment about Dave's financial

7    situation.

8          Okay.  Were you aware of Dave Kleiman's financial

9    circumstances?

10   **A.**   I was.

11   **Q.**   Would it be fair to call it dire?

12   **A.**   Yes.

13             **MR. FREEDMAN:**  Objection.  Leading.

14             **THE COURT:**  Overruled.  I'll allow it.

15   **BY MR. MESTRE:**

16   **Q.**   So he talked to you about bills and things that may have

17   come in the mail.

18         Did you ever pick up his mail?

19   **A.**   Multiple times.

20   **Q.**   Why were you picking up his mail?

21   **A.**   He was in the hospital, and mail was collecting at his --

22   the mailbox inside his neighborhood, and it needed to be

23   collected.

24   **Q.**   So when picking up his mail, did you ever find debt

25   collection notices for credit cards?

CONRAD - DIRECT / MESTRE

1    **A.**    Yes.

2    **Q.**    Did you ever find -- find notices related to a foreclosure

3    of the house?

4    **A.**    Yes.

5    **Q.**    Did you ever find -- strike that.

6          Did he ever have trouble paying his phone bill?

7    **A.**    Yes.

8    **Q.**    Did you ever give him money in order to pay for his phone

9    bill?

10   **A.**    I did.

11   **Q.**    Did he ever say anything like, "If only I could get my 200

12   gazillion dollars of Bitcoin, perhaps I could have paid for

13   this phone bill"?

14         **MR. FREEDMAN:**  Objection.  Leading.

15         **THE COURT:**  Sustained.

16         Rephrase, please.

17   **BY MR. MESTRE:**

18   **Q.**    If Dave Kleiman had had -- forget hundreds of millions of

19   dollars.  If he had had hundreds of thousands of dollars, would

20   he have paid for his cell phone bill?

21         **MR. FREEDMAN:**  Objection.  Speculation.

22         **THE COURT:**  Overruled.

23         **THE WITNESS:**  Maybe you can just rephrase the question

24   for me.

25   ///

CONRAD - DIRECT / MESTRE

1  BY MR. MESTRE:

2  Q.   I'll -- I'll move on.

3       Did -- did there come a time where Ira Kleiman sued you?

4  A.   Yes.

5            MR. FREEDMAN:  Objection.  Leading.

6            THE COURT:  I'm sorry.  The basis of the objection?

7            MR. FREEDMAN:  Leading.

8            THE COURT:  Overruled.  I'll allow it.

9  BY MR. MESTRE:

10 Q.   Did he sue you personally?

11 A.   Yes.

12 Q.   Did he also sue Computer Forensics, LLC?

13 A.   Yes.

14 Q.   Did he also sue Patrick Paige?

15 A.   Yes.

16 Q.   Okay.  Before he sued you, did you know him?

17           MR. FREEDMAN:  Objection, Your Honor.  Can -- may we

18 approach?  There's a court -- I mean, there's a court order

19 that I believe is implicated by this question.  I don't see the

20 relevance otherwise.

21           THE COURT:  With regard to this witness's

22 relationship, overruled.

23           THE WITNESS:  I'm sorry.  Can you ask --

24 BY MR. MESTRE:

25 Q.   Before -- before Ira Kleiman sued you, did you know him?

CONRAD - DIRECT / MESTRE

1  **A.**  I had never met him in person.  We had exchanged some

2  email.

3        **MR. MESTRE:**  Okay.  Can you pull up D-005?  And if you

4  could go to Paragraph 35.

5        It's in evidence.  You can publish this.  I'm not sure

6  what you're pointing at.

7  **BY MR. MESTRE:**

8  **Q.**  Okay.  So the second sentence:  "To the extent that

9  Computer Forensics" -- and Computer Forensics is the company

10  that you had with Dave Kleiman?

11  **A.**  Correct.

12  **Q.**  "To the extent that Computer Forensics, Paige, or

13  Conrad" -- is "Conrad" you?

14  **A.**  Yes, sir.

15  **Q.**  Okay.  "To the extent that Computer Forensics, Paige, or

16  Conrad have retained any Bitcoin wallets that were the personal

17  property of Dave" -- "David Kleiman, Computer Forensics should

18  be enjoined from monetizing, transferring, or otherwise

19  converting such Bitcoin to its use or the use of its

20  principals" -- were you a principal?

21  **A.**  Yes.

22  **Q.**  -- "or third parties."

23        Do you see that?

24  **A.**  I do.

25  **Q.**  Did I read that accurately?

CONRAD - DIRECT / MESTRE

1    **A.**    Yes, sir.

2    **Q.**    Did you ever have any of Dave Kleiman's Bitcoin?

3    **A.**    No.

4    **Q.**    Do you have any of Dave Kleiman's Bitcoin today?

5    **A.**    No.

6    **Q.**    Do you know if he ever had any Bitcoin?

7    **A.**    I do not.

8    **Q.**    In that lawsuit, did Ira Kleiman recover any Bitcoin from

9    you or Patrick Paige or Computer Forensics?

10   **A.**    No.

11              **MR. MESTRE:**  Your Honor, if I can have one moment --

12              **THE COURT:**  All right.

13              **MR. MESTRE:**  -- I may be finished.

14        I have no further questions, Your Honor.

15              **THE COURT:**  All right.

16              **MR. MESTRE:**  Thank you, Mr. Conrad.

17              **THE COURT:**  Cross-examination?

18              **MR. FREEDMAN:**  Your Honor, it's about five minutes

19   before we normally take our break.  Do you want to take the

20   break now, or do you want me to start for five minutes?

21              **THE COURT:**  It's --

22              **MR. FREEDMAN:**  I'd prefer to take the break now and

23   then come back and finish the cross.

24              **THE COURT:**  All right.  Let's go ahead and do that,

25   and why don't we take the time during the break to speak with

```
 1    Mr. Conrad.
 2         All right.  Ladies and gentlemen, we're on a 20-minute
 3    recess.
 4              COURT SECURITY OFFICER:  All rise for the jury.
 5         (Proceedings were heard out of the presence of the jury:)
 6         THE COURT:  All right.  Mr. Conrad, if you can go over
 7    to counsel table and speak with the attorneys so -- and we're
 8    on a 20-minute recess.
 9                   (Recess taken at 3:20 p.m.)
10                   (Proceedings resumed at 3:38 p.m.)
11              COURT SECURITY OFFICER:  All rise.
12         THE CLERK:  This Court's back in session.
13         THE COURT:  All right.  All right.  Back on the
14    record.
15         Before we bring the jury back in, have we addressed the
16    issue with regard to the exhibit and the attachments?
17         MS. MCGOVERN:  Yes, Your Honor.  We were able to work
18    with Mr. Roche and our IT person.  We've asked for Mr. Conrad
19    to -- to check the redactions that have been made, and I
20    believe it's correct to represent that Mr. Conrad reviewed them
21    and is comfortable.
22         THE WITNESS:  Yes, ma'am.
23         THE COURT:  All right.  Wonderful.
24         And just have a seat for just a moment because I did want
25    to -- go ahead and have a seat, sir.  Before we proceed with --
```

1   with bringing the jury out, I did want to discuss scheduling

2   only because I believe that the jury needs some direction

3   before they go home this evening.

4        So, Ms. McGovern, can you advise the Court how much more

5   time is needed on the defendant's side?

6             MS. MCGOVERN:  Your Honor, we are moving at a steady

7   pace.  We're going to be calling a witness as soon as we finish

8   with Mr. Conrad, and I believe that we are on schedule.  I

9   just, again, don't know if we're going to finish all of our

10  witnesses in order for there to be closings and deliberations

11  by Tuesday of next week honestly.

12            THE COURT:  So how much more time do you believe you

13  need for your witnesses?

14            MS. MCGOVERN:  I believe -- one second, Your Honor.

15       Your Honor, we are not 100-percent sure that we're going

16  to be finished with our witnesses on Monday in order for

17  closings and deliberation on Tuesday.  We're striving to do

18  that.  I believe we can represent to the Court by the close of

19  tomorrow where we are so there is a firm understanding of what

20  we need.

21       Right now, it's just tough in light of -- I don't know if

22  we're going to finish with Mr. Kuharcik this afternoon.  That

23  will, of course, affect things.  We have a full day tomorrow,

24  but it's a short day, until 3:30.

25            THE COURT:  Well, how many more witnesses does the

 1  defendant have?

 2          MS. MCGOVERN:  We have -- we have four and potentially

 3  five, Your Honor.

 4          THE COURT:  Do you believe that you can finish by

 5  Monday afternoon?

 6          MS. MCGOVERN:  I believe that it is possible.  It

 7  depends upon the fifth witness, Your Honor.  And, again, if we

 8  could simply have 24 hours to make that final decision and let

 9  the Court know by Friday, we would appreciate it.

10          THE COURT:  All right.  Well, let me state for

11  tomorrow, the jurors are available to come in at 9:30.  So

12  tomorrow, we'll start at 9:30, and we'll conclude as requested

13  by -- by 3:00 p.m.

14          MS. MCGOVERN:  Thank you, Your Honor.

15          THE COURT:  Okay.  All right.  Then I'll let the

16  jurors know that we'll have a better understanding as to

17  whether we're -- we're moving into the week following

18  Thanksgiving.

19      I do want to let you know that Liz did confirm with the

20  jurors.  They are not available on the 24th.  Some have

21  doctor's appointments, and they would not be available --

22  available to come in that Wednesday.  So if need be, we would

23  bring them back on the 29th if we needed to move into that next

24  week.

25          MS. MCGOVERN:  Understood, Your Honor.

 1          **THE COURT:**  Okay.  All right.  All right.  Let's bring

 2     in the jurors.

 3          **COURT SECURITY OFFICER:**  All rise for the jury.

 4       (Proceedings were heard in the presence of the jury:)

 5          **THE COURT:**  All right.  Welcome back, ladies and

 6     gentlemen.  Please be seated, and we'll continue with the

 7     testimony.

 8       Mr. Freedman?

 9          **MR. FREEDMAN:**  Mr. Court Reporter, my name is Vel

10     Freedman for the record.

11                    **CROSS-EXAMINATION**

12     **BY MR. FREEDMAN:**

13     **Q.**   Good afternoon, Mr. Conrad.

14     **A.**   Good afternoon, Mr. Freedman.

15     **Q.**   Oh.

16       Can you hear me now?

17     **A.**   Yes.

18     **Q.**   Sorry.

19       Mr. Conrad, after Dave passed away, you emailed some of

20     his friends to relay the sad news; correct?

21     **A.**   To inform individuals prior to some sort of public

22     notification, I felt it necessary to let associates and close

23     friends of Dave know.

24     **Q.**   Courteous thing to do?

25     **A.**   Yes.

CONRAD - CROSS / FREEDMAN

1   **Q.**   And one of those individuals that was on that email was

2   the defendant, Craig Wright?

3   **A.**   Yes, sir.

4   **Q.**   And do you recall whether he responded the next day to

5   your email?

6   **A.**   So my recollection is there were multiple people who

7   responded that same day.  It was a Monday morning that I sent

8   it out, and then when I got into work the following Tuesday,

9   there was a response.

10   **Q.**   From Dr. Wright?

11   **A.**   Yes, that's correct.  I'm sorry.

12   **Q.**   He was in Australia.  So he responded at a different time

13   zone, and by the time you came into the office the next

14   morning, there was a response waiting for you in your inbox?

15   **A.**   Yes.

16   **Q.**   And you notified Dr. Wright and others on April 30th --

17   sorry -- rather, April 29th, and Dr. Wright responded on

18   April 30th.  Do you recall that?

19   **A.**   Yes.

20   **Q.**   And then after those first few emails from him about

21   Dave's passing in April of 2013, you didn't hear from him again

22   for a while; right?

23   **A.**   I've never spoken to Craig Wright.  I've never emailed

24   directly with him.

25   **Q.**   But there eventually came a time when he emailed you -- so

CONRAD - CROSS / FREEDMAN

1    let me back up for a second.

2        You emailed Dr. Wright on -- in April 2013.  He responds,

3    "Dave passed away."  He acknowledges that Dave passed away.

4    That's April 30th.  There's a gap in time, and then eventually

5    he emails you and Patrick Paige again; right?

6    **A.**   I don't have clear recollection of that.  I'm sure in the

7    emails that were produced during discovery, there would be --

8    that would be memorialized.  I -- I just simply don't know the

9    dates, and with the gap in time --

10   **Q.**   That's fair.  It's been a long time.  This isn't a test.

11           **MR. FREEDMAN:**  Let's -- D-0- -- D-042, please,

12   Ms. Vela, which is in evidence, if we can publish that to the

13   jury.

14   **BY MR. FREEDMAN:**

15   **Q.**   Mr. Conrad, do you recognize this as your email announcing

16   that Dave Kleiman had passed away?

17   **A.**   I do.

18   **Q.**   And one of the recipients is Dr. Wright.  He's the last --

19   he's the last two words on the first line, Craig S. Wright.

20       Do you see that?

21   **A.**   I do, yes.

22           **MR. FREEDMAN:**  And then can you -- Ms. Vela, can you

23   scroll down to Dr. Wright's -- or scroll up to Dr. Wright's

24   response?  I guess it's up.

25   ///

CONRAD - CROSS / FREEDMAN

1   BY MR. FREEDMAN:

2   **Q.**   And that's Dr. Wright's response.  It says it's actually

3   the day before, but that's the time -- that's the time

4   difference; right?

5   **A.**   Yes, sir.

6   **Q.**   And that's April of 2013; correct?

7   **A.**   That's correct.

8         **MR. FREEDMAN:**   And then, Ms. Vela, can you put P-122

9   on the screen for Mr. Carter -- Mr. Conrad, which is also in

10  evidence, if we can publish to the jury.

11        And can we go to Page 1, please.  Sorry, the last page.

12  BY MR. FREEDMAN:

13  **Q.**   Can you see that, Mr. Conrad?  Is that up in front of you?

14  **A.**   It is, yes.

15  **Q.**   Okay.  Is this the next time you heard from Craig Wright

16  after the initial condolences emails?

17  **A.**   Again, as I testified previously, I don't have clear

18  recollection.  We produced correspondence.  We produced email

19  as part of the discovery in this matter.  If this is the next

20  in that chain, then I would say yes, but I don't know it

21  clearly.

22  **Q.**   That's fair.

23        Well, I'll represent to you as an Officer of the Court

24  this is the next in your email -- email production.  Okay?

25  **A.**   Yes, sir.

CONRAD - CROSS / FREEDMAN

1  **Q.**  So this is February 2014.  That's nine and a half months

2  after the condolences email in April; right?

3  **A.**  Yes, sir.

4  **Q.**  So in this email, Dr. Wright says to you, "Dave and I had

5  a project in the U.S.  He ran it there.  We kept what we did a

6  secret."

7      Do you see that?

8  **A.**  I do.

9          **MR. MESTRE:**  Your Honor, objection.  This is outside

10  the scope of direct.

11          **THE COURT:**  Overruled.

12  **BY MR. FREEDMAN:**

13  **Q.**  And he then says to you that the company that he ran there

14  mined Bitcoin; right?

15  **A.**  Yes, sir.

16  **Q.**  And, in fact, Mr. Conrad, Dave did keep this a secret

17  because he never said anything to you about it; right?

18          **MR. MESTRE:**  Objection.  Argumentative.  Speculative.

19          **THE COURT:**  Sustained on the second ground.

20      Rephrase.

21  **BY MR. FREEDMAN:**

22  **Q.**  Did Dave ever tell anything to you -- strike that.

23      Did Dave ever tell you anything about this business with

24  Craig Wright to mine Bitcoin in the United States?

25  **A.**  No, sir.

CONRAD - CROSS / FREEDMAN

1   Q.   Now, I believe in the email, he says, "It's an amount too

2   large to email."

3        Do you see that?

4   A.   That's correct.

5   Q.   David didn't tell you about that, either?

6   A.   No.

7   Q.   So Dave kept it a secret; right?

8   A.   He never told me about it.

9   Q.   Okay.  Did you -- were you aware -- were you aware, Mr.

10  Conrad, that within day -- days before this email was sent,

11  Dr. Wright had received inquiries from the Australian Taxation

12  Office about W&K?

13           MR. MESTRE:  Objection.  Foundation.  Outside the

14  scope.

15           THE COURT:  Overruled.

16           THE WITNESS:  I knew nothing about the ATO until

17  subsequent to -- or this proceeding -- as part of this

18  proceeding and part of the discovery.

19  BY MR. FREEDMAN:

20  Q.   So at the time you received this email from Dr. Wright,

21  you were not aware that he had just received inquiries from the

22  Australian Tax Office about W&K Info Defense Research; right?

23           MR. MESTRE:  Objection.  Asked and answered.

24           THE COURT:  Sustained.

25  ///

CONRAD - CROSS / FREEDMAN

1   BY MR. FREEDMAN:

2   Q.   So this email is dated February 12th, 20 -- 2014.

3        Do you see that?

4   A.   Yes, sir.

5   Q.   And then do you recall whether or not Dr. Wright

6   eventually provided some information to you on where you might

7   be able to find Dave's assets?

8            MR. MESTRE:   Objection.   Foundation.

9            THE COURT:   Overruled.

10           THE WITNESS:   I would say I know there was some

11  correspondence or perhaps conversation with Patrick regarding

12  keywords, if we had any storage of any ESI to look through.

13  There were various keywords that were part of that request.

14  BY MR. FREEDMAN:

15  Q.   So can you bring us to Page 1 of this email chain?

16       Do you see Dr. Wright's response to Patrick Paige on

17  February 16th, 2014?

18  A.   I do.

19  Q.   Is this the names -- keywords that you were referring to

20  that he gave to Patrick Paige?

21  A.   So I do recognize "W&K."   I recognize "the GICSR trust."

22  The other number and the alphanumeric characters, I don't

23  recall.   I do remember "Belize" being part of that request or,

24  you know, keyword search.

25  Q.   And at the time that you received -- Mr. Paige received

CONRAD - CROSS / FREEDMAN

1   this email from Dr. Wright, were you aware of the organization

2   called GICSR?

3           **MR. MESTRE:**  Objection.  Speculative.

4           **THE COURT:**  If the witness is aware.  Overruled.

5           **THE WITNESS:**  There was a conference call that Dave

6   and I were on.  I don't remember the woman's name, Deb

7   something.

8   **BY MR. FREEDMAN:**

9   **Q.**   Kobza?

10  **A.**   I don't recall her last name, but -- but I believe it was

11  in reference to GICSR.

12  **Q.**   And had you ever heard of a GICSR trust?

13  **A.**   I had not.

14  **Q.**   Are you aware this Ms. Kobza has testified in this

15  proceeding that there was no such thing?  Ms. Debra Kobza?

16          **MR. MESTRE:**  Objection.  Argumentative.

17          **THE COURT:**  Sustained.

18  **BY MR. FREEDMAN:**

19  **Q.**   Are you aware of whether or not Ms. Kobza has testified in

20  this litigation?

21  **A.**   No.

22  **Q.**   You tried to find some of these assets; right?

23  **A.**   I don't recall exactly.  I would submit to you that, in

24  all likelihood, a search of email or any sort of case files

25  that we had were likely searched.  I don't recall when that was

CONRAD - CROSS / FREEDMAN

1    or to what extent, if -- it -- I do not believe, if it was

2    done, that any results came out of it.

3    **Q.**   You were not able to find anything; right?

4    **A.**   There was nothing -- if the keyword searches were done on

5    what was available to us, there was -- there was no responsive

6    items.

7    **Q.**   So this information never assisted you in finding any

8    assets that belonged to David Kleiman; right?

9    **A.**   That's correct.

10   **Q.**   Mr. Conrad, when Dr. Wright's attorneys were up here, they

11   showed you a document from the Australian court system.  Do you

12   recall that?

13   **A.**   I do, yes.

14   **Q.**   Ms. -- Dr. Wright didn't send that envelope, did he?

15           **MR. MESTRE:**  Objection.  Foundation.

16           **THE COURT:**  Overruled.  If the witness knows.

17           **THE WITNESS:**  The return address, I believe, was the

18   court system, not Dr. Wright.

19   **BY MR. FREEDMAN:**

20   **Q.**   It was sent from the Australian court system; right?

21   **A.**   That's my recollection.

22           **MR. FREEDMAN:**  Ms. Vela, can you put D-010 in -- on

23   the screen for us?  No, D-010.  Thank you.

24       And can you go first to the -- to the second page, which

25   is the envelope?

CONRAD - CROSS / FREEDMAN

 1          And can we publish this to the jury?  This is in evidence.

 2               **THE COURT:**  Yes.  It's in evidence.

 3               **MR. FREEDMAN:**  Thank you, Your Honor.

 4    **BY MR. FREEDMAN:**

 5    **Q.**   Top left corner, Mr. Conrad.  It's the return address of

 6    the Supreme Court of New South Wales, Australia, right, just

 7    like you said?

 8    **A.**   That's correct.

 9               **MR. FREEDMAN:**  And, Ms. Vela, can you bring us to

10    the -- the first page of the document?

11    **BY MR. FREEDMAN:**

12    **Q.**   It's written on the letterhead of the Supreme Court of New

13    South Wales?

14    **A.**   That's correct.

15    **Q.**   It has the Court's address on it?

16    **A.**   Yes, sir.

17    **Q.**   The Court's email address on it?

18    **A.**   That's correct.

19    **Q.**   The Court's phone number on it?

20    **A.**   Yes.

21    **Q.**   You don't even know if Dr. Wright was even aware that the

22    Court had sent this to you; isn't that true?

23    **A.**   It was all news.  It was all brand-new.  Again, I felt it

24    was important enough to memorialize it and retain a copy of it.

25    **Q.**   But you don't know whether or not Dr. Wright was aware the

CONRAD - CROSS / FREEDMAN

1    courts had emailed -- I'm sorry -- had mailed out this letter;

2    correct?

3              **MR. MESTRE:**  Objection.  Speculative.

4              **THE COURT:**  If the witness knows.  Overruled.

5              **THE WITNESS:**  I do not know.

6    **BY MR. FREEDMAN:**

7    **Q.**   Do you see the case number?  Right underneath the case

8    number, it says, "Case Titled Craig Steven Wright versus W&K

9    Info Defense"?

10   **A.**   I do.

11   **Q.**   And this Notice of Listing is dated September of 2013.

12        Do you see that?

13   **A.**   Yes.

14   **Q.**   And the lawsuit that was filed was in July and August of

15   2013.  Are you aware of that?

16   **A.**   I am not.

17   **Q.**   You didn't receive any notification from Dr. Wright that

18   he had filed a lawsuit against W&K in July of 2013, did you?

19   **A.**   I don't recall receiving any notification.

20   **Q.**   You didn't receive any; correct?

21   **A.**   I don't -- no.

22   **Q.**   And you didn't receive anything letting you know that he

23   filed a lawsuit in August of 2013, either; right?

24   **A.**   No.

25   **Q.**   And you didn't receive a notification from him in

CONRAD - CROSS / FREEDMAN

1   September of 2019, when this document is dated; right?

2   **A.**   No, sir.

3   **Q.**   But he had your email address?

4   **A.**   Yes, sir.

5   **Q.**   He had it for a long time already; correct?

6   **A.**   That's correct.

7   **Q.**   And he knew you and Dave were close friends and that you

8   trusted Dave; right?  "Dave trusted you" I believe were his

9   words?

10  **A.**   That's what he stated in the email, yes.

11  **Q.**   Were you aware that -- were you aware that by the time he

12  emailed you in February of 2014, he had already secured a

13  consent judgment from the Australian courts taking W&K's

14  intellectual property?

15  **A.**   No, sir, I was not aware.

16  **Q.**   But he told you to look for W&K to find assets; right?

17  **A.**   That's correct.

18  **Q.**   He didn't mention --

19  **A.**   Or it was Patrick, but --

20  **Q.**   Pat -- I think you were on the email, too, though; right?

21       Oh, no, no.  You're right.  You're right.  It was Patrick.

22  It was Patrick, but Patrick talked to you about it?

23  **A.**   He communicated it to me, yes.

24  **Q.**   When he told you to look at W&K to find assets, he didn't

25  tell you he had stripped all the assets out, did he?

CONRAD - CROSS / FREEDMAN

1    A.   No, sir.

2    Q.   Prior to receiving this notice, you had never heard of

3    W&K; correct?

4    A.   That's correct.

5    Q.   And when you received this notice, you had no idea what it

6    was, just that it was important?  It looked important?

7    A.   It certainly looked important.  Again, as I've already

8    said, legal document -- I don't -- I try not to ignore those.

9    There are repercussions for doing that.

10   Q.   And it -- the notice didn't say anything about Dave

11   Kleiman on it; right?

12   A.   It -- it had -- no, there was nothing directly saying Dave

13   Kleiman, but the address, the Northlake Boulevard address, was

14   one that Dave used.  I recognized that.

15   Q.   And when you received it, you didn't know that this W&K

16   issue had anything at all to do with Dave Kleiman; correct?

17   A.   I knew nothing about it at all.

18   Q.   And for that reason, you didn't tell his brother or the

19   personal representative of the estate because you didn't know

20   what it related to; right?

21   A.   I don't recall when it was communicated to the plaintiff

22   in this matter.  I do not have any recollection.

23   Q.   Certainly not when you received it because at that point,

24   you didn't even know who it related to; correct?

25   A.   Yes, sir.

1  **Q.**   It wasn't until sometime later that eventually Dr. Wright

2  told you that W&K was related to Dave, and eventually you told

3  Ira Kleiman -- or Patrick Paige, who told Ira Kleiman about

4  this; right?

5  **A.**   That's correct.  All those communications were not with --

6  any communications with Dr. Wright were not with me excepting

7  the emails that you showed previously, that we looked at

8  previously.  There was a point in time when all of those

9  communications were directly with Patrick.

10 **Q.**   And does it -- does it help refresh your recollection if I

11 suggest to you that it was 2016 when you finally -- not you but

12 Patrick finally conveyed this information about the listing to

13 Ira Kleiman?

14 **A.**   I wish I had clear recollection.  I'm sorry, Mr. Freedman.

15 **Q.**   No.  That's fair.  It's been a long time.

16      Certainly, that could -- that's -- that's possible; right?

17 **A.**   Yeah, it's possible, sir.

18 **Q.**   So I think the record is clear on this, but I just want to

19 make sure.  You have zero recollection about talking to Ira

20 about this listing at any time; right?

21 **A.**   I don't recall any conversation.

22 **Q.**   Ever mentioning to him, ever writing to him, ever

23 communicating to him --

24      **MR. MESTRE:**  Objection.  Asked and answered.

25      **THE COURT:**  Sustained.

CONRAD - CROSS / FREEDMAN

1          **MR. FREEDMAN:**  Thank you, Ms. Vela.  You can take that

2    down.

3          Can you put D-005 on the screen?  And let's go to the last

4    page of that PDF.  That's in evidence.  Can we zoom on the

5    signatures, please, just the signatures.  No, no, no.  Yeah.

6    Thank you.

7          Could we put that off on the left-hand side of the screen

8    for a moment?

9    **BY MR. FREEDMAN:**

10   **Q.**  And before we do anything else, Mr. Conrad, do you

11   recognize Dave Kleiman's signature on this document?

12   **A.**  I do.

13   **Q.**  It says, "Dave Kleiman's Digital Signature"; right?

14   **A.**  Yes.

15   **Q.**  And he would regularly use a cryptographic signature like

16   this to digitally sign documents; right?

17   **A.**  Yes.

18   **Q.**  And it had that Adobe marking and all the information next

19   to his signature; right?

20   **A.**  Correct.

21   **Q.**  And the Adobe watermark on it also; right?

22   **A.**  The watermark meaning --

23   **Q.**  Well, it's hard to see on this document actually, but --

24   never mind.  Strike that.  Forget I asked that.

25          **MR. FREEDMAN:**  Ms. Vela, can you -- can you bring up

CONRAD - CROSS / FREEDMAN

1  on the right-hand side P-710?  Let's go to Page 13.

2  **BY MR. FREEDMAN:**

3  **Q.**  This is a contract at issue in this case, Mr. Conrad, that

4  purports to be between Dave Kleiman, Craig Wright, and W&K.

5            **MR. FREEDMAN:**  Ms. Vela, can you bring us to Page 21?

6            **MR. MESTRE:**  Objection, Your Honor.  Beyond the scope.

7            **THE COURT:**  Overruled.  I'll allow it.

8  **BY MR. FREEDMAN:**

9  **Q.**  Do you see the words "Dave Kleiman" on the right-hand side

10  in computer font?

11  **A.**  I do.

12  **Q.**  That's not a cryptographic signature; right?

13  **A.**  No, sir.

14  **Q.**  You've never seen Dave Kleiman sign like that, have you?

15  **A.**  I haven't.  I'm more familiar with either a hand signature

16  or the one that's being presented on the screen.

17  **Q.**  And that is not his hand signature; correct?

18  **A.**  It's -- I'm not -- it's not familiar to me at all.

19            **MR. FREEDMAN:**  Thank you, Ms. Vela.  You can take

20  those down, please.

21  **BY MR. FREEDMAN:**

22  **Q.**  Mr. Conrad, I'd like to talk to you a little bit about

23  Dave.

24       Dave was a brilliant guy; right?

25  **A.**  He was very intelligent, yes.

**CONRAD - CROSS / FREEDMAN**

1  **Q.**  He was extremely talented in cryptography; right?

2  **A.**  He had a great interest and aptitude in cryptography.

3  **Q.**  And he was very talented in data security; right?

4  **A.**  Yes.

5  **Q.**  And he was very talented in networking; right?  Computer

6  networking?

7  **A.**  Yes.

8  **Q.**  In fact, he was internationally known for his computer

9  forensic skills; right?

10  **A.**  He had a reputation and exceedingly positive reputation

11  internationally, yes.

12  **Q.**  So I'd like to pivot for a moment and talk to you for a

13  moment about Dave's work.

14      You knew him for a long time; right?

15  **A.**  Yes, sir.

16  **Q.**  You worked with him for a long time; right?

17  **A.**  Unfortunately not as long as I would have liked, but

18  officially we worked together about a year.

19  **Q.**  You were close friends?

20  **A.**  We were good friends, yes.

21  **Q.**  He was one of your best friends?

22  **A.**  Dave made everybody feel like you were his best friend,

23  but we were very close.

24  **Q.**  There came a time when Dave was admitted to the hospital;

25  right?

CONRAD - CROSS / FREEDMAN

1  A.    Yes.

2  Q.    And -- but even when he was in the hospital, you continued

3  to have daily conversations with him; right?

4  A.    I did.  There was a period of time when he was in Palm

5  Beach VA Hospital, and he was segregated in an infectious

6  disease section.  So it was difficult to see him personally.  I

7  did visit him there, but even still, it -- it was a challenge

8  even to talk on the phone at that point.

9  Q.    But you emailed with him?

10  A.    I did, yes.

11  Q.    You texted with him?

12  A.    I did.

13  Q.    And how long was that period he was in the --

14  A.    I don't have clear recollection, but the Palm Beach VA did

15  not have a spinal cord injury.  And when he was originally

16  injured back in the 90's, he had rehabbed at the facility --

17  the VA facility here in Miami.  And so then he was transferred

18  from Palm Beach to -- to the Miami facility.

19  Q.    And these daily discussions that you had with him -- they

20  were about work; right?  Not just work, but they included work;

21  right?

22  A.    Yes, sir.

23  Q.    And they included research into Computer Forensics'

24  issues; right?

25  A.    That's correct.

CONRAD - CROSS / FREEDMAN

1  Q.   And they also included personal and just -- niceties and

2  things friends talk about; right?

3  A.   That's correct.

4  Q.   And he worked when he was in the hospital; right?

5  A.   He did.

6  Q.   He even gave webinars from his hospital room, didn't he?

7  A.   I do recall at least one webinar, one training that he did

8  from the Miami VA Hospital.

9  Q.   And isn't it true that his laptop was always --

10  essentially always near him in the hospital?

11  A.   Yes, that's correct.

12  Q.   Dave wasn't unproductive in the hospital, was he?

13  A.   He had times when he was recovering from surgeries, and

14  certainly there was downtime then.  But once he had moved on

15  from that, he was -- he was unhappy when he wasn't working.  So

16  he had a strong desire to continue to work and be productive.

17  Q.   Are you aware that he turned down medical services so that

18  he could continue working -- medical treatments so he could

19  continue working?

20  A.   So I don't have distinct recollection of that, but I know

21  he had cases that he was working in that time when he was in

22  the hospital.

23  Q.   He wasn't a lazy person?

24  A.   Dave was certainly not a lazy person.

25  Q.   He worked hard?

CONRAD - CROSS / FREEDMAN

1    **A.**   Dave was a very hard worker, yes.

2    **Q.**   And he did contribute to projects and work while he was in

3    the hospital; right?

4    **A.**   That's correct.

5    **Q.**   And he was -- I think you said he was really talented with

6    computer networks; right?

7    **A.**   Yes.

8    **Q.**   And isn't it true that he remotely controlled computers

9    and computer-related devices from wherever he was through

10   networks?

11   **A.**   I know for a certainty he would be in his bedroom or in

12   his bed and there were computers in another part of the house,

13   another bedroom that was an office, and he could remote into

14   those devices, you know, from his bed.  I know that for sure.

15   **Q.**   All right.  Are you familiar with scripting?

16   **A.**   Yes.

17   **Q.**   It's a form of programming?  Coding?

18   **A.**   Yes.

19   **Q.**   And you never talked with Dave about his coding ability;

20   right?

21           **MR. MESTRE:**  Objection.  Beyond the scope.

22           **THE COURT:**  Sustained.

23   BY MR. FREEDMAN:

24   **Q.**   Was Dave able to write computer scripts?

25           **MR. MESTRE:**  Objection.  Beyond the scope.

 1    THE COURT:  Overruled.  I'll allow that.

 2    THE WITNESS:  Part of Dave's -- excuse me.  His

 3 presentations, particularly for event log extraction, timeline

 4 information -- much like the one I described earlier on in my

 5 testimony, in 2009 at the CEIC conference in Orlando, he would

 6 use scripts in order to facilitate the extraction of

 7 information from those event logs that -- the Windows computer

 8 event logs to reconstruct timelines.

 9    So I know he used scripts.  Whether -- I don't know that I

10 recall seeing him construct them, but he got them from

11 somewhere.  So it's -- there's a great likelihood that he

12 built -- he built them, but I don't know that for a fact.

13 BY MR. FREEDMAN:

14 Q.   Were you aware that he's the technical editor of a book on

15 Perl scripting?

16 A.   I know he contributed to several publications.  As an

17 Officer of the Court, if you stipulate that that's the case,

18 I -- it wouldn't be out of -- out of the scope of my

19 understanding of what he did.

20 Q.   And eventually, Mr. Conrad, you entered into a formal

21 partnership with Dave Kleiman in Computer Forensics, LLC;

22 right?

23 A.   That's correct.  Yes, sir.

24 Q.   Your business with Dave wasn't a secret; correct?

25 A.   It was not a secret.

CONRAD - CROSS / FREEDMAN

1   **Q.**   You never asked Dave to keep your business with him a

2   secret; right?

3   **A.**   I did not ask him to keep it a secret.

4   **Q.**   You never asked Dave to delete all the records of your

5   partnership; correct?

6   **A.**   No.

7   **Q.**   You never told anyone that your partnership with Dave was

8   a secret; right?

9   **A.**   I never told anyone my partnership with Dave was a secret,

10   no.

11   **Q.**   And your partnership with Dave Kleiman did not result in

12   the creation of a digital currency as a market capital of over

13   a trillion dollars; right?

14   **A.**   No, sir.

15         **MR. MESTRE:**   Objection.   Argumentative.

16         **THE COURT:**   Sustained.

17   **BY MR. FREEDMAN:**

18   **Q.**   You had a formal operating agreement as part of Computer

19   Forensics, LLC.   We saw that; right?

20   **A.**   That's correct.

21   **Q.**   Isn't it true that Dave Kleiman was a "My word is my bond"

22   type of guy?

23   **A.**   Dave valued personal relationships and -- and

24   interpersonal agreements.   If he committed to do something, he

25   was the type of person that would -- that would perform a task

 1   just based on his word or agreement to do it.

 2   **Q.**   He had no problem signing the formal agreement you

 3   presented him with; right?

 4   **A.**   No, there was no -- no problem with that.

 5   **Q.**   He also wouldn't have had a problem doing it on a

 6   handshake; right?

 7            **MR. MESTRE:**  I'm sorry.  I didn't hear that question.

 8   BY MR. FREEDMAN:

 9   **Q.**   He also would not have had a problem doing it on a

10   handshake; right?

11            **MR. MESTRE:**  Objection.  Speculative.

12            **THE COURT:**  Overruled.

13            **THE WITNESS:**  There was some insistence -- not --

14   "insistence" is the wrong word.  I wanted -- I wanted the

15   agreement -- the corporate papers to be without any question

16   and particularly regarding who owned what and what percentage.

17   So Dave was amenable to signing that agreement that laid that

18   out very clearly.

19   BY MR. FREEDMAN:

20   **Q.**   And as a lawyer, I'm proud of you, but I want to focus on

21   Dave.

22        He had no problem signing that agreement, but you were the

23   driving force behind documenting Computer Forensics for the

24   good of the corporate order; right?

25            **MR. MESTRE:**  Objection.  Asked and answered.

CONRAD - CROSS / FREEDMAN

```
 1   Speculative and misleading.
 2            THE COURT:  Overruled.
 3            THE WITNESS:  I would submit to you I brought it to
 4   bear.  I -- I brought the subject up, and Dave was amenable
 5   to -- to form the LLC in that fashion much like I was amenable
 6   to selecting the CPA that he used.  We were, you know --
 7   BY MR. FREEDMAN:
 8   Q.   Partners?
 9   A.   We were working together in -- you know, for the good of
10   the -- of the LLC.
11   Q.   So you were in a partnership with Dave; right?
12   A.   Yes.
13   Q.   You were his good friend?
14   A.   Yes.
15   Q.   You knew him well?
16   A.   Yes.
17   Q.   Dave was a proud man?
18   A.   He was very proud.
19   Q.   He didn't want to ask for help?
20   A.   He found it difficult to ask for help.
21   Q.   At the end of his life, he needed financial help?
22   A.   That's correct.
23   Q.   And it's true that it's never made sense to you why, if
24   Dave personally owned millions of dollars in Bitcoin, he
25   wouldn't have sold some to get out of debt; right?
```

CONRAD - CROSS / FREEDMAN

1  **A.**   I struggle -- I struggle with that.  He was in a very bad

2  financial situation.  His health was not good.  I didn't think

3  it was as bad as it was ultimately, but I've struggled with the

4  idea if he had access to -- to any sort of assets -- that he

5  wouldn't use them, but -- but he didn't.

6  **Q.**   Isn't it true, Mr. Conrad, that Dave was an honorable

7  person?

8  **A.**   Highly.  Highly honorable.

9  **Q.**   His word was meaningful to him?

10  **A.**   It was meaningful.

11  **Q.**   His word was his honor?

12  **A.**   Correct.

13  **Q.**   And if the Bitcoin belonged to a partnership but not Dave

14  personally, then Dave would never put his hand in the cookie

15  jar without his partner's permission; right?

16         **MR. MESTRE:**  Objection.  Speculative.  Argumentative.

17         **THE COURT:**  Sustained.

18  **BY MR. FREEDMAN:**

19  **Q.**   Isn't it true, Mr. Conrad, that if the Bitcoin belonged to

20  a partnership and not Dave personally, then it would make sense

21  to you why Dave never sold Bitcoin?

22         **MR. MESTRE:**  Objection.  Speculative.  Argumentative.

23         **THE COURT:**  Sustained.

24         **MR. FREEDMAN:**  Your Honor, can we -- may we approach?

25         **THE COURT:**  The objection's sustained.  You may

CONRAD - CROSS / FREEDMAN

 1  continue, sir.

 2  **BY MR. FREEDMAN:**

 3  **Q.**   All right.  You said it wouldn't have made sense to you if

 4  it belonged to him personally; right?

 5          **MR. MESTRE:**  I'm sorry.  I don't understand the --

 6          **THE COURT:**  I'm sorry.

 7  **BY MR. FREEDMAN:**

 8  **Q.**   You said -- you said that Dave not selling Bitcoin to get

 9  out of debt never made sense to you if he personally owned

10  Bitcoin; correct?  That was your testimony today?

11  **A.**   Yes.  I believe my testimony was I've struggled with that

12  concept with someone being in such dire financial

13  circumstances, if there were assets available to alleviate

14  that, that, you know -- so those -- those are ifs, but if

15  something existed -- I knew the financial situation.

16         He -- he didn't want help from outside.  He would rather

17  have had it from himself, you know?  So yes, I've struggled

18  over the years understanding if there was funds, why wouldn't

19  they have been used.

20  **Q.**   Now, I want to focus on that, not what Dave would have

21  done.  I want to focus on your struggle to understand that.

22  Okay?

23  **A.**   Yes.

24  **Q.**   Would you struggle to understand it if Bitcoin belonged to

25  a partnership and not Dave Kleiman?

CONRAD - CROSS / FREEDMAN

```
 1                MR. MESTRE:  Objection.  Relevance.

 2                THE COURT:  Sustained.

 3     BY MR. FREEDMAN:

 4     Q.    You knew Dave Kleiman well?

 5     A.    Yes.

 6     Q.    Did he ever steal from the assets of your partnership with

 7     him?

 8     A.    Never.

 9     Q.    Would he have ever stolen from the assets of any

10     partnership?

11     A.    I -- I don't think Dave was a thief.  He was an honorable

12     person.  That was my testimony.

13     Q.    Did he ever take from the assets of your partnership

14     without your permission?

15     A.    Never.

16     Q.    Would he have ever taken from the assets of your

17     partnership without permission?

18                MR. MESTRE:  Objection.  Asked and answered.

19     Relevance.

20                THE COURT:  Sustained.

21     BY MR. FREEDMAN:

22     Q.    Even though he was in dire straits?

23                MR. MESTRE:  Same objection.

24                THE COURT:  Sustained.

25                MR. FREEDMAN:  Your Honor, if I can have a moment to
```

```
 1    consult.
 2              THE COURT:  Certainly.
 3              MR. FREEDMAN:  Your Honor, we have no further
 4    questions.
 5              THE COURT:  All right.  Any redirect?
 6              MR. MESTRE:  No redirect, Your Honor.
 7              THE COURT:  All right.  Ladies and gentlemen, you have
 8    the right to ask Mr. Conrad some questions.  Is there anyone
 9    that has a question for Mr. Conrad?  If you'd just raise your
10    hand just so I can give you the opportunity to write down your
11    question, are there any questions for Mr. Conrad?
12         I'm seeing no hands raised.
13         All right.  Is Mr. Conrad excused on behalf of the
14    defendant?
15              MR. MESTRE:  Yes, Your Honor.
16              THE COURT:  On behalf of the plaintiffs?
17              MR. FREEDMAN:  Yes, Your Honor.
18              THE COURT:  Thank you, sir.  You are excused.
19              THE WITNESS:  Thank you.
20              THE COURT:  And the defendant's next witness?
21              MS. MCGOVERN:  Your Honor, Dr. Wright calls David
22    Kuharcik via video.
23              THE COURT:  All right.
24              MR. ROCHE:  Your Honor, do you anticipate us both --
25    both sides logging into the Zoom?
```

 1          THE COURT:  I'm sorry?

 2          MR. ROCHE:  Should both sides log into the Zoom?

 3          THE COURT:  Yes.

 4          MR. ROCHE:  Okay.

 5          THE COURT:  And I am as well.

 6          MR. ROCHE:  Okay.

 7          THE COURT:  So just give us a moment.

 8          MR. RIVERO:  Your Honor, I'm sorry.  Just to

 9  understand, if I wanted to observe, I would have to log in as

10  well?  Is that how it works?

11          THE COURT:  Yes.  You should have each brought your

12  laptops.

13          MR. RIVERO:  I do.  I have it.

14          THE COURT:  All right.  So everybody has the meeting

15  ID and the passcode?

16          MS. MCGOVERN:  I pressed the wrong button.  I

17  apologize.

18      Logging in now, Your Honor.

19          THE COURT:  I am as well.

20          MS. MCGOVERN:  Your Honor, just so I understand, will

21  the video deposition be played on the screens in front of the

22  jury?

23          THE CLERK:  Yes.

24          MS. MCGOVERN:  Okay.

25          THE CLERK:  Now --

1           **MS. MCGOVERN:**  I just didn't know if there was a --

2           **THE CLERK:**  I need everybody's computer that's --

3   that's logging on from here to be on mute.

4           **COMPUTER:**  Recording in progress.

5           **MS. MCGOVERN:**  I just wonder whether I also need to

6   be --

7           **THE CLERK:**  Everybody's computer needs to be on mute.

8   If not, we're going to get this feedback.

9           **MS. MCGOVERN:**  I don't know if Mr. Kuharcik has logged

10  in.  I don't -- I don't see that Mr. Kuharcik has logged in

11  yet.

12          **MR. RIVERO:**  Your Honor, it is not relevant --

13          **MS. MCGOVERN:**  It says it's waiting for the host to

14  let him in.

15          **THE CLERK:**  I know.

16          **MS. MCGOVERN:**  Oh.  Is that you?  Okay.

17          **THE CLERK:**  I'm trying to get this done first.

18          **THE COURT:**  Yeah.  Liz will let him in.  Just let us

19  set up.

20          **MR. RIVERO:**  Your Honor, there's some feedback, but

21  this screen has stopped working.  I will watch it on my laptop.

22  For the next witness, it's not working.

23          **THE COURT:**  Right, but the screen -- actually, Mr.

24  Rivero doesn't need his screen, but I need an attorney on the

25  defendant's -- Ms. McGovern's here.  So we're -- we're good on

 1   this end.  I can -- I can mute for now, and I can unmute if

 2   there's an objection.

 3          THE CLERK:  Okay.

 4          THE COURT:  Yeah, because I think we're going to get

 5   some feedback.

 6          THE CLERK:  Yeah.  Okay.

 7          THE COURT:  All right.  I'm just going to ask the

 8   attorneys, because we want to make sure there isn't any -- any

 9   feedback with the microphone, that if there is an objection,

10   just allow me to unmute so I can rule on the objection once

11   it's made.  And if we can advise the witness as well once he

12   comes in.

13          MS. MCGOVERN:  Would you like me to proceed,

14   Your Honor?

15          THE COURT:  All right.  Mr. Kuharcik, I'm going to

16   need you to unmute.

17      We're going to have to -- members of the jury, are you

18   able to see the individuals on the screen?

19      All right.  Mr. Kuharcik, before you proceed with your

20   testimony, let me ask that you stand to raise your right hand

21   to be placed under oath, sir.

22          THE WITNESS:  Okay.

23                    **DAVID KUHARCIK**,

24   called as a witness for the Defendant, having been duly sworn,

25   testified as follows:

1          THE WITNESS:  I do.

2          THE CLERK:  Thank you.

3      Could you please state your name and also spell it for the

4  record.

5          THE WITNESS:  Yes.

6      My name is David Kuharcik.  That's K-u-h-a-r-c-i-k.

7          THE CLERK:  Thank you.

8                      <u>**DIRECT EXAMINATION**</u>

9  BY MS. MCGOVERN:

10  Q.   Good afternoon, Mr. Kuharcik.

11  A.   Good afternoon.

12  Q.   Mr. Kuharcik, do you know Dave -- did you know David

13  Kleiman?

14  A.   Yes, I did.

15  Q.   How did you know David Kleiman?  How did you know David

16  Kleiman?  How did you know David Kleiman?

17  A.   David was a friend of mine.

18          THE CLERK:  Okay.  So here's the thing.  Without yours

19  being on, he's not going to be able to hear you.

20          THE WITNESS:  And also -- once I became a CPA, I also

21  helped him in his income tax matters.

22  BY MS. MCGOVERN:

23  Q.   Okay.  What is your profession?

24  A.   I'm a certified public accountant.

25          THE CLERK:  Hold on.  Hold on.  I'm sorry.  We need to

 1  stop.  Hold on.  We need to have the judge's mike on and yours

 2  off because we're going to keep getting this feedback,

 3  Ms. McGovern.

 4          **MS. MCGOVERN:**  I just mooted -- muted my computer.

 5          **THE CLERK:**  Right, but then he's not going to be

 6  able -- he's not going to be able to hear without the judge's

 7  computer on.  So let's try it that way --

 8          **MS. MCGOVERN:**  Okay.

 9          **THE CLERK:**  -- and see if he can hear, like, that.

10  **BY MS. MCGOVERN:**

11  **Q.**   Mr. Kuharcik, can you hear me?

12  **A.**   Yes, I can.

13  **Q.**   Perfect.  Let me start again.

14       How did you know David Kleiman?

15  **A.**   I knew him from when we were younger in the late 1980's.

16  We were friends, and, you know, I had a social -- social

17  friendship.  And then I became his accountant, you know, later

18  on as he was in business for himself and, of course, as I was

19  certified.

20  **Q.**   Okay.  So you say that you met him in the 80's.  Do you

21  recall generally in the 80's when that would have been?  Would

22  it be the late 1980's when you first met David Kleiman?

23  **A.**   Yeah, probably mid to late 1980's.

24  **Q.**   All right.  So you were in your 20's -- or David Kleiman

25  was approximately how old when you first met him?

**KUHARCIK - DIRECT / MCGOVERN**

1   **A.**   We were in our 20's.

2   **Q.**   Okay.  And did you meet him -- how did you meet David

3   Kleiman?

4   **A.**   I guess through my, at that point, in-laws.  They were

5   friends with him, and then we subsequently became friendly.

6   **Q.**   Okay.  And when you say that you became friendly, what

7   type of a friendship did you have with David Kleiman after you

8   met him through your in-laws?

9   **A.**   Well, we might get together, him and his wife and me and

10  my wife, and we might watch a ball game, have dinner, you know,

11  socialize, see a movie.

12  **Q.**   Okay.  Would you go out and have a beer?

13  **A.**   No, not at that time.

14  **Q.**   Okay.  Did your relationship develop over time?  Did it

15  become -- did it develop into something beyond just a

16  friendship when -- after you first met him in the late 1980's?

17  **A.**   No.  We were pretty much friends, and -- yes.

18  **Q.**   So you met David Kleiman in the 19- -- a long time ago,

19  late 1980's.  And you socialized, David Kleiman and his wife,

20  you and your wife.  Did there come a point in time when your

21  friendship turned into something professional?  Did you at some

22  point provide professional services in some capacity for David

23  Kleiman?

24  **A.**   Yes, I did.

25  **Q.**   Okay.  What -- what were those professional services that

KUHARCIK - DIRECT / MCGOVERN

1   you provided?

2   **A.**   I prepared his income tax returns.

3   **Q.**   What is your profession, Mr. Kuharcik?

4   **A.**   I'm a certified public accountant.

5   **Q.**   Okay.  When did you become -- how long have you been --

6   are you a certified public accountant now?

7   **A.**   Yes, I am.

8   **Q.**   Okay.  And when did you first become a certified public

9   accountant?  How long have you been engaged in that profession?

10  **A.**   Since 1983.

11  **Q.**   Okay.  When you first -- when you first met David Kleiman,

12  you were already a CPA; is that right?

13  **A.**   Yes, I was.

14  **Q.**   Okay.  And what does your -- what does it mean to be a

15  certified public accountant?  What exactly does a CPA do?

16  **A.**   Well, there's a number of things that they could do.  They

17  could provide audits for financial statements, business

18  consultation, financial planning, income tax preparation and

19  planning.  They could engage in private industry as financial

20  controllers and such.

21  **Q.**   Does it include tax planning?

22  **A.**   Tax planning?  Yes, it does.

23  **Q.**   What does it take to become a certified public accountant?

24  What type of education do you have to have in order to be a

25  CPA?

**KUHARCIK - DIRECT / MCGOVERN**

1    **A.**   I'm not sure of the current requirements for becoming a

2    CPA.

3    **Q.**   What did you have to obtain in order to become a CPA?

4    **A.**   I had to have a Bachelor's degree in Accounting and a

5    year's experience with a public accounting firm.

6    **Q.**   Where did you -- could you briefly describe your

7    educational background, please.

8    **A.**   Yeah.  I attended Florida Atlantic University, received my

9    degree, and that was it.

10   **Q.**   And did you receive a degree in Accounting from Florida

11   Atlantic?

12   **A.**   Yes.  Yes, I did.

13   **Q.**   How long does it take to get a degree in Accounting from

14   Florida Atlantic?  Is that a four-year program?

15   **A.**   It was a four-year program --

16   **Q.**   Did --

17   **A.**   -- two-year program, I think, at that point because you

18   had the Palm Beach Junior College at that time.  I think it's

19   Palm Beach Community or Palm Beach State College now.  So it

20   used to be a two-year and then a two-year, so four years all

21   together.

22   **Q.**   Four years all together.

23        And after that, I think you said you worked in some

24   capacity in that field; is that -- is that right?

25   **A.**   Yes, I did.

KUHARCIK - DIRECT / MCGOVERN

1   **Q.**   What did you do?

2   **A.**   Well, I was a staff accountant at a public accounting

3   firm.

4   **Q.**   Which one?

5   **A.**   Frank Berman CPA, PA.

6   **Q.**   And what sort of things did you do in the capacity -- or

7   in that capacity?  What sort of things did you do in -- for

8   that company as an -- as an accountant?

9   **A.**   Mainly income tax preparation, possibly some financial

10  statement preparation, maybe some tax planning, basically it.

11  **Q.**   And did you have to take an exam of some type in order to

12  practice as a CPA?

13  **A.**   Yes, I did.

14  **Q.**   And what exam is that?  What exam did you take in order to

15  become a certified public accountant?

16  **A.**   The CPA exam.

17  **Q.**   And when you took the CPA exam, was that taken in one fell

18  swoop, or did you have to take it on multiple days?  How --

19  sort of what is involved with the CPA?  I've heard -- I've

20  heard it's quite an extensive exam; is that right?

21  **A.**   Yeah.  Well, back at that point, it was a four-part exam,

22  and I don't remember if it was given over more than one day.  I

23  think it was just one day, but I could be mistaken.

24  **Q.**   Did you pass it the first time?

25  **A.**   No.  I think I passed it the second time.

**KUHARCIK - DIRECT / MCGOVERN**

1  **Q.**   Okay.  And after you -- how long did that -- what was the

2  next position that you took after passing the CPA, after you

3  obtained your license for CPA?  What was the first position

4  that you held?

5  **A.**   Well, that was with -- staff accountant at Frank Berman,

6  CPA, PA.

7  **Q.**   And I think you said you were there for two years; is that

8  right?

9  **A.**   I was there for a couple of years.

10  **Q.**   Okay.  And what did you do after that?

11  **A.**   Then I started my own firm.

12  **Q.**   Okay.  And during this period of time, you -- you were

13  friends with Dave Kleiman; is that right?

14  **A.**   Later in this period of time.

15  **Q.**   You became friends with Dave Kleiman.

16       And have you been a CPA continuously, Mr. Kuharcik, since

17  then?

18  **A.**   Yes, I have.

19  **Q.**   Okay.  And, sir, could you describe briefly the

20  responsibilities that you have as an accountant?

21  **A.**   Well, I have to be independent and objective with respect

22  to my clients.  I have certain confidential communications with

23  clients.  And, you know, I owe the clients due care and, you

24  know, professional, you know, competence in those engagements

25  that I take on.

KUHARCIK - DIRECT / MCGOVERN

1   **Q.**   Is there a general sort of know-your-customer duty as an

2   accountant of a client, that you need to know sort of the --

3   you need to know your customer in order to be able to properly

4   fulfill your duties as that client's accountant?

5            **MR. ROCHE:**   Objection.   Leading.

6            **THE COURT:**   I'm sorry.   The objection is?

7            **MR. ROCHE:**   Leading.

8            **THE COURT:**   I'll allow it.   Overruled.

9            **THE WITNESS:**   Well, yeah.   You -- you would have to

10  have some familiarity in any -- any specifics pertaining to the

11  client, their industry or business that they might be in.

12  **BY MS. MCGOVERN:**

13  **Q.**   Well, let me just step back for a second in terms of this

14  sort of know-your-customer overall responsibility.

15           Are there departments that -- that regulate the business

16  and professional responsibility of an accountant in the State

17  of Florida as an accountant?

18  **A.**   Oh, yes.

19  **Q.**   Could you tell us what they are, please.

20  **A.**   Well, yeah.   The Department of Business and Professional

21  Regulation.

22  **Q.**   What is that?

23  **A.**   That's a Florida regulatory body that regulates the -- I

24  guess a variety of different professions and activities,

25  including public accountancy.

1   **Q.**   Any other regulatory agency that oversees your work,

2   Mr. Kuharcik?

3   **A.**   No.

4   **Q.**   Okay.  When you prepare a tax return for a client, what

5   sort of things do you need to have in order to prepare a

6   complete and accurate return?

7   **A.**   Well, you would like to -- need to have -- of course, you

8   would have to have their income tax documentation or records

9   that accurately reflect their income and expenses or

10  deductions.

11      It might be helpful to have some prior year of returns for

12  comparison's sake or to, you know, review their -- their

13  historical data, you know, basically, of course, interviewing

14  the client for any specifics, things like that.

15  **Q.**   Okay.  And all of this is necessary in order to ensure a

16  complete and accurate return.  Is that fair?

17  **A.**   Yes.

18  **Q.**   And preparing a complete and accurate return -- why is

19  that important, Mr. Kuharcik?  In preparing a tax return for a

20  client, why is it important to prepare a complete and accurate

21  one?

22          **MR. ROCHE:**   Objection.  Relevance.

23          **MS. MCGOVERN:**   Your Honor, this goes directly to the

24  issues in the case.

25          **THE COURT:**   All right.  Perhaps we can get there.  The

KUHARCIK - DIRECT / MCGOVERN

1    objection is overruled at this point.

2         **THE WITNESS:**  Okay.  Could you repeat the question,

3    please.

4    **BY MS. MCGOVERN:**

5    **Q.**  Yeah.

6         Why is it important, Mr. Kuharcik, to prepare a complete

7    and accurate return for a client?

8    **A.**  Well, because you're filing your tax return with the

9    federal government, and so you want to ensure that, you know,

10   what you're filing is complete and accurate so that you comply

11   with the federal income tax codes and you don't violate the

12   law.

13   **Q.**  It's the law, isn't it?

14        **MR. ROCHE:**  Objection.  Relevance.

15        **THE WITNESS:**  It is.

16        **THE COURT:**  Sustained.

17   **BY MS. MCGOVERN:**

18   **Q.**  Let me ask you a little bit about Dave Kleiman and your

19   preparation of his complete and accurate returns, Mr. Kuharcik.

20        When did you first, if you recall, engage or accept an

21   engagement to prepare a complete and accurate return for

22   Mr. Kleiman?  Do you recall the year, Mr. Kuharcik?

23   **A.**  No, I don't.

24   **Q.**  Would it refresh your recollection if you began doing that

25   in the 1990's?

1          **MR. ROCHE:**  Objection.  Leading.

2          **MS. MCGOVERN:**  I'm refreshing the recollection.

3          **THE COURT:**  Overruled.

4          **THE WITNESS:**  Okay.  Yeah, it was probably sometime in

5     the 1990's.

6     **BY MS. MCGOVERN:**

7     **Q.**   Okay.  And were you his -- were you Dave Kleiman's

8     accountant from that period through his death in 2013,

9     Mr. Kuharcik?

10    **A.**   Yes, I was.

11    **Q.**   And did you prepare his complete and accurate federal tax

12    returns consistently for each of those years, Mr. Kuharcik?

13    **A.**   Yes.

14    **Q.**   Was there an exception for the last year that he -- 2012,

15    Mr. Kuharcik?

16         **MR. ROCHE:**  Objection.

17    **BY MS. MCGOVERN:**

18    **Q.**   Do you recall?

19         **MS. MCGOVERN:**  I'm simply trying to -- let me rephrase

20    that.

21         **THE COURT:**  Well, what's -- what's the basis of the

22    objection?

23         **MR. ROCHE:**  We're getting close to the line of the

24    accountant privilege that we discussed earlier, Your Honor,

25    and -- the general questioning is fine, but once we get into

1  the -- the particular nature of the conversations, I think

2  we're stepping beyond the privilege line.

3            **MS. MCGOVERN:**  I think --

4            **THE COURT:**  Ms. -- Ms. McGovern?

5            **MS. MCGOVERN:**  Yes.  Hi.

6       I just simply wanted to make sure that the years were

7  accurately reflected.  I can rephrase.

8            **THE COURT:**  All right.  But let's make sure that

9  Mr. Kuharcik understands the parameters with regard to the

10  testimony.

11  **BY MS. MCGOVERN:**

12  **Q.**   Mr. Kuharcik, just to be clear, I don't want you to give

13  me any information regarding any tax advice you provide -- you

14  provided to David Kleiman during the years that you were his

15  accountant and prepared his federal tax returns, just to be

16  clear.

17       So please don't sort of blurt anything out that might be

18  tax advice because I'm not soliciting that, and that would --

19  and I do not want to invade that privilege.

20  **A.**   Okay.

21  **Q.**   So let me be clear.  Just so the record is clear, you

22  began working with Mr. Kleiman in the 1990's, preparing his

23  federal tax returns every single year until he died.  Was there

24  a year in which his federal tax return was not prepared by you,

25  Mr. Kuharcik, if you recall?

1    **A.**    Oh.  In that timeframe up until when he died, the 2012

2    return was not prepared.

3    **Q.**    So other than the 2012 year, every other tax return, is it

4    fair to say, you prepared?

5    **A.**    To the best of my knowledge, yes.

6    **Q.**    Okay.  I want to ask you a little bit about the

7    information that Mr. Kleiman would give you in connection with

8    your preparation of his federal tax return so that it could be

9    complete and accurate.

10        What did Mr. Kleiman provide to you, without detailing the

11   underlying information in terms of numbers or anything else,

12   but generally categories?  Do you recall what sort of

13   information he would provide to you in order for you to prepare

14   that return?

15        **MR. ROCHE:**  Objection.  Privileged.

16        **MS. MCGOVERN:**  Your Honor, I'm not asking for anything

17   specific, but I think --

18        **THE COURT:**  All right.  Let me just make sure that

19   it's very clear to -- to the parties and also to Mr. Kuharcik

20   that the accountant/client privilege applies in this case.

21        And that is, sir, you are prohibited from disclosing a

22   communication between you and your client.  Those

23   communications are confidential, and they are not to be

24   disclosed.

25        So to the extent that the testimony seeks to disclose

 1   communications between you and Mr. Kleiman, then the Court will

 2   sustain any objection and will -- will not allow its

 3   introduction.  All right, sir?

 4          **THE WITNESS:**  Yes, Your Honor.

 5   **BY MS. MCGOVERN:**

 6   **Q.**   So if I may ask, Mr. Kuharcik, what sort of information

 7   did you require -- did you request from Mr. Kleiman in order to

 8   prepare his annual federal tax return?

 9          **MR. ROCHE:**  Objection.  Privilege.  This goes to the

10   substance of the confidential communications which were --

11          **THE COURT:**  To the extent that it's not a

12   communication and it refers to particular information, then the

13   objection is overruled.

14          **THE WITNESS:**  Okay.  So 1099 forms, any information

15   returns he might receive from third parties, perhaps schedules

16   or other underlying data, maybe banking records, things along

17   those lines.

18   **BY MS. MCGOVERN:**

19   **Q.**   Did Mr. Kleiman work with you in connection with your

20   preparation and completion of the federal tax return each year,

21   Mr. Kuharcik?

22          In other words, to be specific, without giving the details

23   of what you discussed, did Mr. Kleiman engage in the process of

24   exchanging information with you so that you could prepare a

25   complete and accurate return on his behalf?

 1              **MR. ROCHE:**  Objection.  Asked and answered.

 2         Your Honor, if we might have a sidebar to discuss --

 3              **MS. MCGOVERN:**  It's a completely different question.

 4              **THE COURT:**  I don't believe that there's a sidebar

 5    that's necessary.  The Court is listening carefully, and as I

 6    advised Mr. Kuharcik, the contents of any communication between

 7    Mr. Kuharcik and -- and Mr. Kleiman are not to be disclosed.

 8    So to that extent, the objection is overruled.

 9         The question calls for a yes-or-no response.  Did you

10    understand the question, sir?

11              **THE WITNESS:**  Please repeat the question.

12    **BY MS. MCGOVERN:**

13    **Q.**   My question, Mr. Kuharcik, was whether or not Mr. Kleiman

14    worked with you -- engaged in the process of exchanging

15    information in order to allow -- permit you to prepare his

16    complete and accurate return each year?

17    **A.**   Yes.

18              **MS. MCGOVERN:**  Okay.  If you could please show

19    Defendant's -- before -- before we do so, 362, which I believe

20    is admitted into evidence unless I'm mistaken.

21              **THE COURT:**  Exhibit 362 is in evidence.

22              **MS. MCGOVERN:**  If you could please show 362, and I'm

23    not sure if Mr. Kuharcik is going to be able to see this.

24              **THE CLERK:**  If you want him to see it, it has to be

25    shown as a shared screen.

1          **MS. GONZALEZ:**  Perfect.  It worked.

2          **THE CLERK:**  Okay.

3          **MS. MCGOVERN:**  Thank you.

4    **BY MS. MCGOVERN:**

5    **Q.**  Mr. Kuharcik, this document has already been admitted into

6    this litigation -- into this lawsuit.  It is before the jury

7    right now, and I'm just telling you this because you're doing

8    this by Zoom and I want to make sure you understand what's

9    going on.

10         So we -- this is an email from Dave Kleiman to a number of

11   people, including, if you see in the "To" line -- and I'll be

12   asking about -- you about this a little bit later -- Craig

13   Wright.  If you could highlight that name for me, please, I'm

14   going to be asking you about that name later, Mr. Kuharcik.

15         But for now, this is an email dated October 13th, 2008,

16   two weeks before Halloween, from David Kleiman and others.  And

17   it says, "Importance:  High."

18         And Mr. Kleiman states, "All, I apologize for not" -- "for

19   being a holdup on my portion of this.  No excuse.  However, I

20   forgot my accountant filed an extension for me on taxes this

21   year, and October 15th" -- I can't see the rest of that because

22   of things there.

23         But it states, "October 15th is the cutoff.  I have been

24   working on that nonstop until the wee hours of the morning for

25   the past few days and just finishing up."

1          Do you see that, Mr. Kuharcik?

2   **A.**    Yes, I do.

3   **Q.**    Were you Mr. Kleiman's accountant in October 2008?

4   **A.**    Yes.

5   **Q.**    So this is consistent, isn't it, with Mr. Kleiman working

6   with you and getting you all the information you needed to

7   prepare a complete and accurate return on his behalf, isn't it?

8          **MR. ROCHE:**  Objection to the -- she's asking whether

9   or not this email is consistent with the communications they

10  had.

11         **THE COURT:**  Sustained.

12         **MS. MCGOVERN:**  No.  Let me rephrase, Your Honor, if I

13  might.

14  **BY MS. MCGOVERN:**

15  **Q.**    I'm not asking, Mr. Kuharcik, about your communications

16  with Mr. Kleiman -- ever am I asking that.  I'm simply asking:

17  What you stated is that Mr. Kleiman worked with you in

18  connection with preparing the tax return, whether his statement

19  that in October of 2008 he's working nonstop -- whether that is

20  consistent with the manner in which you engaged in preparing

21  the tax return.  That's all I'm asking.

22         **MR. ROCHE:**  Your Honor, that's the -- same objection.

23  To the extent how they worked, Mr. Kuharcik and Mr. Kleiman

24  together, that goes to the communication.

25         **THE COURT:**  The question calls for a yes-or-no

1  response without disclosing the content of any communication.

2       You may respond, Mr. Kuharcik.

3            **THE WITNESS:**  Okay.  Repeat the question, please.

4  **BY MS. MCGOVERN:**

5  **Q.**  Is it consistent, Mr. Kuharcik, with the manner in which

6  Mr. Kleiman engaged in the preparation with you of his annual

7  return?

8  **A.**  I guess I don't quite understand.  It seems in the -- this

9  correspondence, he's telling people that he's working to obtain

10  information for his taxes.  So --

11  **Q.**  My question simply was whether or not that was consistent,

12  but that's okay, Mr. Kuharcik.  I'll move on.

13       With respect to the tax year 2008, you stated, I believe,

14  that you were Mr. -- Mr. Kleiman's accountant during that time.

15  Mr. Kleiman, did Mr. Kuharcik -- for the tax year ending 2008,

16  did you --

17  **A.**  Yes.

18  **Q.**  -- ever -- did you ever speak with Mr. Kleiman about a

19  legal partnership that he had with Dr. Craig Wright?

20            **MR. ROCHE:**  Objection.  Privileged.

21            **THE COURT:**  Sustained.

22  **BY MS. MCGOVERN:**

23  **Q.**  Were you aware in the preparation of the tax return for

24  the period ending October -- December 31st, 2008, whether

25  Mr. Kleiman had a legal partnership with Dr. Craig Wright?

KUHARCIK - DIRECT / MCGOVERN

 1            **MR. ROCHE:**  Objection.  Privileged.

 2            **THE COURT:**  Sustained.

 3            **MS. MCGOVERN:**  Your Honor, I know there's only about

 4   five more minutes, but I have two questions, and then we can --

 5            **THE COURT:**  All right.  Why don't we finish with this

 6   witness.  We spent a good amount of time getting him here.

 7            **MS. MCGOVERN:**  Mr. -- well, Mr. -- we're not finished

 8   with this witness right now, but I'd like --

 9            **THE COURT:**  Right, but why don't we finish with

10   Mr. Kuharcik today.

11            **MS. MCGOVERN:**  Judge, we're not going to be able to

12   finish with him today.

13            **THE COURT:**  I'd like to try.  We've taken a lot of

14   effort with this Zoom hearing.

15            **MS. MCGOVERN:**  Okay.  Well --

16            **THE COURT:**  All right.  So let's continue.

17   **BY MS. MCGOVERN:**

18   **Q.**  Mr. -- I'd like to show -- if you can look, please, at

19   Defendant's 18, Mr. Kuharcik, I believe it was provided to you

20   earlier.

21            **MS. MCGOVERN:**  If you could pull that up, please.

22   **BY MS. MCGOVERN:**

23   **Q.**  Mr. Kuharcik --

24   **A.**  Yes, ma'am.

25   **Q.**  -- did you -- do you -- do you recognize -- this document

1   has been admitted into evidence.  So I'll ask you directly:  Do

2   you recognize this tax return -- U.S. tax return for 2010?

3   **A.**   Yes, I do.

4   **Q.**   And did you prepare this tax return for Mr. Kleiman for

5   2010?

6   **A.**   Yes, I did.

7   **Q.**   And could you please tell us on this tax return whether

8   the business income for the tax year -- for the tax return for

9   2010 is reflected on this document.

10  **A.**   Yes, it is.

11  **Q.**   And could you please tell us what that business income is.

12  **A.**   The gross income or net income?

13  **Q.**   The gross income, please.

14  **A.**   The gross income was $39,848.

15  **Q.**   And the net income?

16  **A.**   It was $14,102.

17  **Q.**   And if you could scroll through this document for me,

18  please.  And as you see it, Mr. Kuharcik, if you could tell me

19  whether anything in this tax return for 2010 reflects a legal

20  partnership regarding Bitcoin.

21       **MR. ROCHE:**  Objection.  Privilege.  The document

22  speaks for itself.

23       **THE COURT:**  The document is in evidence.  Is there a

24  reason for Mr. Kuharcik to comb through the document?  Is there

25  a part within the -- the exhibit that you want to point him to?

1      **MS. MCGOVERN:**  I'm simply asking whether anything in

2  this document reflects anything related to Bitcoin for this --

3  for 2010, Your Honor.  That's all I'm asking.

4      **THE COURT:**  Well, that's not -- that wasn't the

5  question, but if you want to ask the question -- but perhaps we

6  could, since it's on the screen, just refer Mr. Kuharcik to the

7  particular page or perhaps ask him a more narrow question so

8  that we can -- we can --

9      **MS. MCGOVERN:**  Okay.

10      **THE COURT:**  -- get to the next document.

11      **MS. MCGOVERN:**  Your Honor, if we can go to the first

12  page, please, the first page of the -- of the document, please.

13  BY MS. MCGOVERN:

14  **Q.**  Let me -- let me ask it this way, Mr. Kuharcik.  Your

15  reference to the gross and the net income for 2010 -- is there

16  anything in this tax return for either of those figures that

17  reflects either profits or losses or expenses, business

18  expenses, in connection with a legal partnership regarding

19  Bitcoin -- relating to Bitcoin?

20      **MR. ROCHE:**  Objection.  The document speaks for itself

21  and privilege.

22      **THE COURT:**  The objection's sustained.

23      **MS. MCGOVERN:**  I'm going to ask the same question,

24  Your Honor, with D-19.

25      If you could please pull it up.

KUHARCIK - DIRECT / MCGOVERN

1      I'd ask to be allowed to state my -- my questions for the

2   record, Your Honor, with respect to Mr. Kleiman's accountant.

3          **THE COURT:**  Could we focus on the particular portion

4   that you want the witness to look to?

5          **MS. MCGOVERN:**  Your Honor, the -- the tax return --

6          **THE COURT:**  No.  I understand the tax return, but

7   there are many pages.  There are 13 pages here.  So it would be

8   helpful for the witness if we could point to the particular

9   page.

10         **MS. MCGOVERN:**  Yeah.  With respect to the first page,

11  Your Honor -- I think we have to go back to D-18.

12      With respect to the first page, Your Honor, I simply asked

13  whether in the 14,102 figure, for the net income for the

14  year -- for the 2010 year -- whether or not that figure

15  reflects any profits or -- or business expenses related to a

16  partnership involving Bitcoin.

17      That was my question, Your Honor.  That's a very specific

18  number that I'm asking for on the very first page of the

19  document.  That was my question.

20         **MR. ROCHE:**  And, again, Your Honor, this -- the

21  document speaks for itself.  And to the extent we're going

22  outside the number, that gets into privilege -- of the

23  accountant privilege.

24         **MS. MCGOVERN:**  Your Honor, Mr. --

25         **THE COURT:**  To the extent, Mr. Kuharcik, that the

```
 1    document itself reflects the businesses, if there are certain

 2    schedules that you can point the -- the jury to and to -- to

 3    Ms. McGovern and Mr. Roche and the Court, then that may be

 4    helpful, sir.

 5         But to the extent that the question calls for

 6    communication between you and Mr. Kleiman, the Court will not

 7    permit it.

 8              THE WITNESS:  So communication as to where the numbers

 9    might be derived from would be --

10              THE COURT:  Are there attachments or schedules that

11    you can assist with in answering Ms. McGovern's question?

12              THE WITNESS:  Well, all of his business activity is

13    reflected on the Schedule C, which I think is the third page of

14    the exhibit.

15              MS. MCGOVERN:  It is.

16         If you can please bring it to the Schedule C.

17         And I can direct, Your Honor -- I can direct my question

18    to Schedule C.

19    BY MS. MCGOVERN:

20    Q.   The profit or loss from business in Schedule C,

21    Mr. Kuharcik -- is there anything in this schedule that

22    reflects either profit or business expenses related to a

23    partnership involving Bitcoin?

24              MR. ROCHE:  Object -- again, objection.  The document

25    speaks to itself, and to the extent --
```

1          **THE COURT:**  The objection's sustained.

2    **BY MS. MCGOVERN:**

3    **Q.**   Mr. -- Mr. Kuharcik, does -- does -- in connection with

4    the preparation of -- of this tax return, the 2010 tax return,

5    did you receive a ledger of any kind regarding the partnership

6    that is reflected in Schedule C from Mr. Kleiman?  In order to

7    prepare Schedule C, did you receive a general ledger or any

8    other information that would reflect the numbers that are --

9    that are contained in Schedule C?

10   **A.**   I don't recall specifically what documentation I received

11   for this return.

12   **Q.**   Do you -- do you recall, Mr. -- Mr. Kuharcik, if at any

13   period of time from the -- in connection with your providing

14   accounting services to David Kleiman -- whether you ever became

15   aware of any profits or any business expenses related to a

16   legal partnership involving Bitcoin with Mr. Kleiman?

17          **MR. ROCHE:**  Objection.  Privileged.

18          **THE COURT:**  Sustained.

19          **MS. MCGOVERN:**  One second, Your Honor, please.

20   **BY MS. MCGOVERN:**

21   **Q.**   Mr. Kuharcik, if I can please bring your attention to Line

22   13 on Schedule C, and it --

23   **A.**   Yes.

24   **Q.**   -- it refers to depreciation in Section 179, "Expense

25   Deduction."

1      Do you see that?

2  **A.**   Yes, I do.

3  **Q.**   Is there anything in that -- in that section of Schedule C

4  on this publically filed federal tax return which reflects

5  expenses related to the purchase of computer servers?

6          **MR. ROCHE:**  Objection.  The document speaks for itself

7  and privilege.  Your Honor, this whole line of questioning is

8  going to try to expand the scope of what the document states.

9  I think it's inappropriate.

10         **THE COURT:**  The objection is sustained.

11         **MS. MCGOVERN:**  Your Honor, if we could speak with you

12  for a moment about --

13         **THE COURT:**  All right.  Come on -- come on forward

14  because -- let's -- let's address this.

15     (The following proceedings were heard at the sidebar:)

16         **THE COURT:**  All right.

17         **MS. MCGOVERN:**  I didn't bring my mask.

18         **THE COURT:**  That's all right.  I think everyone else

19  has their mask on.

20         **MS. MCGOVERN:**  Your Honor, this case is about whether

21  David Kleiman had a legal partnership with Dr. Wright.

22         **THE COURT:**  I know what the case is about.

23         **MS. MCGOVERN:**  I understand, but if I can just make my

24  statement here, we are not asking for privileged information

25  with him.  He's prepared a tax return, and there's information

**SIDEBAR**

 1    on that tax return that either supports and makes more probable

 2    or not a material fact that's in this case.

 3        The objection on privilege is being used overbroadly.  The

 4    accountant/client privilege is not supposed to be used

 5    prophylactically.  It's not the attorney-client privilege.

 6    Case law is clear on that, Your Honor.

 7        And it seems that what we should be able to ask

 8    Mr. Kuharcik in order to be able to get the facts in front of

 9    the jury --

10            **THE COURT:**  Uh-huh.

11            **MS. MCGOVERN:**  -- with respect to whether, in fact,

12    Mr. Kleiman took the actions consistent with the partnership --

13            **MR. ROCHE:**  Your Honor --

14            **MS. MCGOVERN:**  -- without invading the privilege.

15            **THE COURT:**  Response?

16            **MR. ROCHE:**  Your Honor, I brought up some case law,

17    but it looks like you already have it there in front of you.

18            **THE COURT:**  I have it.

19            **MR. ROCHE:**  Okay.

20            **THE COURT:**  So is there a response?

21            **MR. ROCHE:**  The response is I think the case law in

22    front of you says even if the evidence is needed for the case,

23    the privilege -- attorney/client -- or the accountant/client

24    privilege protects that information.  You can't go beyond the

25    four walls of what's on the returns.  You can't go into

**SIDEBAR**

 1   communications.

 2       I don't think you can go into the nature of the documents

 3   that are exchanged because if I say -- if I say, "Well, did he

 4   provide you anything related to Bitcoin," well, that goes to --

 5   that goes to what he did and didn't provide.  And so I do think

 6   the nature of what is provided to -- by Mr. Kleiman to

 7   Mr. Kuharcik during the context of the accountant

 8   relationship -- that is all privileged.

 9       They want them to -- if they want Mr. Kuharcik to read

10   certain lines and ask if -- I think that's -- under the law,

11   that's the scope of what's permissible.

12       **THE COURT:**  Ms. McGovern, what you're specifically

13   asking with regard to that figure, the 10,000-some-odd dollars,

14   is you're asking whether that amount contains certain monies or

15   certain assets related to a partnership.  That is directly tied

16   to a communication between Mr. Klein -- Mr. Kleiman and

17   Mr. Kuharcik.  We had a discussion before lunch with regard to

18   the accountant/client privilege.

19       This Court is sitting in diversity, and because this Court

20   is sitting in diversity, Florida law applies, and the privilege

21   applies.  And specifically, let me state with regard to the

22   cases, Florida's accountant/client privilege is set forth in

23   90.5055.

24       It's clear to the Court from the cases that I've read,

25   specifically a case from April of 2021 here in the Southern

**SIDEBAR**

1   District, that the privilege applies to any communication

2   between the accountant and the client -- in this case

3   specifically, Ira Kleiman as the personal representative of the

4   deceased client -- is able to raise the privilege as a result.

5   There are no exceptions that would apply.

6        And the communication between an accountant and the

7   accountant's client is confidential, and that's where I think

8   there's a problem here.  If there are attachments and schedules

9   that you want to refer to -- but to ask him specifically with

10  regard to a figure and what information is contained within

11  that lump figure goes right to the heart of communications

12  between the accountant and the client, and I can't permit it.

13        **MS. MCGOVERN:**  Your Honor, I understand what you're

14  saying.  I'm not actually pushing back even on that.  I'm

15  simply saying that the -- the sword and the shield they're

16  applying here -- we're not -- we're simply asking whether

17  Mr. Kuharcik was ever -- ever -- ever preparing the tax return

18  with information relating to Bitcoin.  That -- we're not asking

19  what David Kleiman told him, what Dave --

20        **THE COURT:**  But that's -- the only way he would know

21  is if he was given communications through Mr. Kleiman.  I've

22  given you full range to ask about documents that may be

23  attached as part of the exhibit, but -- but any other

24  communication, I can't permit it.

25        Let me say specifically with regard to the case law, it's

1  the Eleventh Circuit of *Mesa v. Clarendon National Insurance*
2  *Company*, 799 F.3d, 1353, and the recent case of *List Industries*
3  *v. Wells Fargo*, and that is in 2021 Westlaw 319661.  There
4  is -- there is no basis to carve out an exception in this case,
5  and the questions that you are asking go to the heart of those
6  communications.
7      So I -- the objection is sustained.  So what other
8  guidance do you need from the Court?
9          MS. MCGOVERN:  I think the only thing that I would
10 say, Your Honor, is we have -- we have a short line of
11 questioning with respect to the work that was performed, not
12 specifically with respect to Computer Forensics but simply the
13 difference and the manner in which he prepared a return for
14 Computer Forensics and the manner in which -- that's all we're
15 going to ask.
16     But I have to say one thing about the -- about the
17 information that is not being permitted here with respect to
18 the Bitcoin.  To the extent that there were communications that
19 they were having -- because they were also friends -- outside
20 of the accountant/client privilege, we have the right to ask
21 Mr. Kuharcik whether Dave Kleiman ever, in his capacity as a
22 friend -- because they were also friends -- ever raised Bitcoin
23 to him.
24     And I don't --
25         THE COURT:  I -- response?

**SIDEBAR**

1   **MR. ROCHE:**  Your Honor, anything related under

2   attorney/client -- accountant/client privilege under Florida

3   law is broad.  If it contains anything that is said in the

4   context of communications concerning the tax return, to the

5   extent they're trying to get around it by applying some

6   friendship, I think that's inappropriate.

7        So, look, Your Honor, I think this whole line of

8   questioning is broad, and I want to address -- hold on one

9   second.  There was one thing that was brought up in

10  relationship to Computer Forensics.  I can't assert the

11  privilege on behalf of Computer Forensics, but I do think

12  there's a problem.

13       I just had Mr. Conrad up here, who was a representative of

14  Computer Forensics.  To the extent they're going to get into

15  Computer Forensics, questions about their --

16       **MS. MCGOVERN:**  That's not what we're trying to do.

17       **MR. ROCHE:**  I think the documents they admitted --

18       **THE COURT:**  All right.  At this point, let's -- let's

19  just get through this witness.

20       Yes.

21       **MS. MCGOVERN:**  One point.

22       Mr. Kuharcik was deposed.  Mr. Brenner never said, "As

23  long as you're asking for tax information, you can inquire

24  about this area."

25       And the prelude to every question was "We're not asking

SIDEBAR

1  for tax advice.  We simply want to know whether or not, in

2  fact, you ever became aware at any point of time over those 20

3  years that Dave Kleiman had a legal partnership with Craig

4  Wright."  That's all we asked.

5       **THE COURT:**  But the awareness is based on

6  communications by the client.

7       **MS. MCGOVERN:**  The objection wasn't made in the

8  deposition.

9       **THE COURT:**  But it's been raised now.

10      **MS. MCGOVERN:**  I understand.

11      **THE COURT:**  I have a responsibility to rule correctly.

12  I don't want to try this case again.

13      **MS. MCGOVERN:**  I understand.  I understand.

14      **MR. RIVERO:**  The Court has ruled -- I'm sorry.  I know

15  the Court has ruled -- has ruled many times in this proceeding

16  about waiver -- the failure to assert -- they represented W&K.

17  Michelle has made an appearance.  The failure to object at

18  deposition constitutes a waiver that is an exception to

19  privilege.

20      And, Judge --

21      **THE COURT:**  Well, you can provide some case law, but

22  it's been asserted here before the Court.

23      **MR. ROCHE:**  It isn't asserted in a deposition.

24      **THE COURT:**  I don't know about a particular

25  circumstance where you ask a question in a deposition and all

 1    of a sudden it becomes admissible at the trial.

 2            **MR. RIVERO:**  Judge, if I can say for the record it is

 3    clear as to attorney and accountant/client privilege that if a

 4    represented party fails to assert privilege at any time, that

 5    constitutes a waiver.  It doesn't matter -- it doesn't have to

 6    wait until the minute you get to the trial court.  If they did

 7    that in deposition, which they did, they allowed the

 8    questioning.  They did not object.

 9            **MR. ROCHE:**  Your Honor, that --

10            **MR. RIVERO:**  That constitutes a waiver, and the waiver

11    isn't an exception to the privilege.

12            **THE COURT:**  Okay.  I don't have the benefit of

13    Mr. Kuharcik's deposition to even -- to even --

14            **MR. ROCHE:**  Right.

15            **THE COURT:**  -- address that at this point.

16        Let me state that I'm a little concerned because it's now

17    ten after 5:00.  We have the jury here.  We have -- we've made

18    a lot of arrangements for this -- this Zoom.

19        So can we get -- how much more time do you have?

20            **MR. RIVERO:**  Your Honor, I'm going to discuss this

21    with Ms. McGovern, and we are going to do what we need to do

22    with this witness, Your Honor.  So I cannot be pressed into

23    doing this because we have an issue with this ruling as well --

24            **THE COURT:**  All right.

25            **MR. RIVERO:**  -- if we can establish that, in fact,

1    there was a waiver.

2        So with all due respect, Your Honor, I understand the

3    Court wanted to stop ten minutes ago, but, you know, we don't

4    agree.  We asked these questions at deposition.  They did not

5    assert these -- these objections.  Those are waived, and I have

6    a responsibility to try to --

7            THE COURT:  All right.  Then --

8            MR. ROCHE:  Your Honor --

9            THE COURT:  Then let's do this right.  File

10   Mr. Kuharcik's deposition with the Court.  Provide the case law

11   to the Court this evening.  I will see the parties here at

12   9:15, and give the Court the case law for the Court to consider

13   that the -- the privilege has been waived.  All right?

14           MS. MCGOVERN:  Thank you, Your Honor.

15       And should we --

16           THE COURT:  All right.

17       (Proceedings were heard in the presence of the jury:)

18           THE COURT:  All right.  Where is Mr. Kuharcik?

19           THE CLERK:  I brought him back into the room.  I had

20   taken him out.  So he --

21           THE COURT:  With the same invitation.

22       All right.  Mr. Kuharcik?

23       I'm not certain where the gentleman went.

24           THE WITNESS:  Yes.

25           THE COURT:  Maybe we can get the document off the

1    screen, and he may appear.

2         All right.  Mr. Kuharcik, we will see you tomorrow morning

3    at 9:30, sir, for the continuation of your testimony.  All

4    right, sir?

5              **THE WITNESS:**  Very good.

6         Thank you, Your Honor.

7              **THE COURT:**  All right.  Just use the same invitation

8    that was used today, sir.

9              **THE WITNESS:**  I will do so.

10             **THE COURT:**  All right, sir.

11             **THE CLERK:**  Thank you very much.

12             **THE WITNESS:**  Thank you.

13             **THE COURT:**  All right.  Ladies and gentlemen, as you

14   can see -- and I apologize -- it is well past 5:00 o'clock.  I

15   understand that Liz spoke with you about coming in a little bit

16   early since we are going to be ending early at 3:00 o'clock.

17   So I'll see you bright and early at 9:30, if you'll be in the

18   jury room ready to come into the courtroom.

19        I know that several of you have asked about the schedule.

20   I do want to advise you that Liz did let me know that we would

21   not be in session -- to the extent that we are not able to

22   finish on Tuesday, we'll have a better indication tomorrow, but

23   we will not be in session on Wednesday.  I know that several of

24   you had some conflicts with Wednesday.  So we will not be in

25   session that day.

1        In terms of the following week, which would start on

2   November 29th, I will be in a better position after I speak

3   with the attorneys tomorrow to give you some guidance.

4        Okay.  All right.  Please remember as you leave you are

5   not to do any independent research.  You're not to speak with

6   anyone or permit anyone to speak with you.  Everything learned

7   about the case is learned in the courtroom.

8        Have a pleasant evening.  I'll see you tomorrow morning at

9   9:30.

10           **COURT SECURITY OFFICER:**  All rise for the jury.

11       (Proceedings were heard out of the presence of the jury:)

12           **THE COURT:**  All right.  Go ahead and have a seat.

13       All right.  Then as I stated, if you will provide that to

14  the Court tonight -- have you previously filed Mr. Kuharcik's

15  deposition?

16           **MR. ROCHE:**  Your Honor, I don't know if Mr. Kuharcik's

17  deposition has been previously filed, but I do think we might

18  be able to short-circuit this.

19       On November 9th, 2019 -- I've got the letter in front of

20  me, and we're working on showing it to the jury [sic] now.  But

21  Andrew -- my counsel -- co-counsel Andrew Brenner sent a letter

22  to Mr. Kuharcik advising him of the privilege and in context of

23  the deposition that was set to take place in this case, and it

24  was cc'ed to both my firm and Rivero Mestre.

25       And it reads -- is it on the screen yet?  Oh, great --

1    "Dear Mr. Kuharcik, please be advised this firm represents Ira

2    Kleiman, as personal representative of David Kleiman.  We

3    understand that you provided accounting services to David

4    Kleiman."

5         "We have been advised that the law firm Rivero Mestre, the

6    attorneys representing defendant Craig Wright, intend to serve

7    you with a subpoena for testimony and documents.  I am

8    enclosing a copy of the same for your review."

9         "Please take notice that on behalf of the Estate of David

10   Kleiman is hereby invoking all accountant/client privileges

11   pursuant to, but not limited to, the privilege set forth in

12   Florida Statute 90.5055."

13   So, Your Honor -- I mean, I can read the rest of the

14   letter.  I'll bring up the parts of the deposition where we did

15   object on the ground of privilege, but the idea that there was

16   a waiver here is borderline frivolous.

17        **MR. RIVERO:**  Your Honor, Mr. Brenner -- I want to be

18   very clear.  Mr. Brenner was present at the deposition.  I'm

19   looking at the testimony.  This is -- Your Honor, it is past

20   the Court's time to hear this, but there is a specific question

21   about whether Bitcoin was discussed between David Kleiman and

22   Mr. Kuharcik which was not objected to.  I'm looking at it in

23   the transcript.

24        Therefore, Judge, it is not frivolous.  I don't care what

25   they said beforehand.  They sat in deposition, they heard the

1  question, and there is no objection.  So --

2       **MR. ROCHE:**  Your Honor -- Your Honor, that's -- I'm

3  reading the client's 27 -- Page 27:

4       "Mr. Brenner:  Just -- we're going to take this slowly.

5  There could be certain communications you had with Dave that

6  will be privileged, that will assert the privilege.  I won't

7  know that by how he's asking.  The general thing -- we're going

8  to invoke privilege or at least decide whether to --

9  conversations regarding confidential accounting-type

10  information.  So social conversations -- all that is fine."

11       I can go on, but, Your Honor, this is --

12       **MR. RIVERO:**  Your --

13       **MR. ROCHE:**  I think this is, respectfully, not an

14  appropriate use of -- of our time.

15       **MR. RIVERO:**  No, Your Honor.  I couldn't disagree more

16  with Mr. Roche.

17       **THE COURT:**  All right.  Well, it would be helpful if I

18  could look at the deposition transcript.  So if you'd be kind

19  enough to -- to file it for the Court so -- so I can review it.

20       And if there is some case law for the Court to consider --

21  and I would also like the letter to be filed with the Court

22  because I have not -- I have not looked at that letter, either.

23  All right?

24       **MR. RIVERO:**  We'll do so overnight, Judge.  We'll do

25  that --

1          **THE COURT:**  All right.  So I do wish to advise you

2    we're starting tomorrow morning at 8:30, but it is a

3    naturalization ceremony that is remote.

4          So I will be here, but I'll -- I'll be on screen, and I

5    say that to you because you're free to come in and set up so

6    that we are ready to go by -- by 9:15.  To the extent that the

7    ceremony goes a little bit over 9:00 o'clock, you're free to

8    come into the courtroom.

9          **MR. RIVERO:**  Your Honor, just logistically, to the

10   extent that we normally remove everything, do we need to do

11   that tonight?

12         **THE COURT:**  No, you do not need to remove -- because I

13   just need this laptop.  So you can leave everything here, and

14   the -- the courtroom will be locked, and I'll see the parties

15   tomorrow morning at 9:15.

16         **MR. RIVERO:**  Good night, Your Honor.

17         **THE COURT:**  Okay.  Have a nice evening.

18         **COURT SECURITY OFFICER:**  All rise.

19             (Proceedings adjourned at 5:18 p.m.)

20

21

22

23

24

25

1

2

3                    **CERTIFICATE OF REPORTER**

4           I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:   Tuesday, November 23, 2021

8

9

10

11               _____/S/ James C. Pence-Aviles_____

12          James C. Pence-Aviles, RMR, CRR, CSR No. 13059
                       U.S. Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25

**$**

**$14,102 [1]** 122/16
**$20 [1]** 46/14
**$39,848 [1]** 122/14

**-**

**---000 [1]** 4/3

**/**

**/S [1]** 141/11

**0**

**000 [1]** 4/3
**005 [3]** 45/4 67/3 86/3
**010 [2]** 80/22 80/23
**042 [1]** 74/11

**1**

**10 [1]** 53/15
**10,000-some-odd [1]** 129/13
**100 [1]** 1/21
**100-percent [1]** 70/15
**1000 [1]** 2/6
**10016 [1]** 1/19
**1099 [2]** 58/14 116/14
**1099's [2]** 58/9 58/22
**10:00 o'clock [1]** 6/9
**10th [1]** 54/14
**12 [1]** 1/12
**122 [1]** 75/8
**1240 [1]** 1/16
**12th [1]** 78/2
**13 [3]** 87/1 124/7 126/22
**13059 [2]** 1/25 141/12
**1353 [1]** 131/2
**13th [1]** 118/15
**14,102 [1]** 124/13
**140 [1]** 1/1
**15 [1]** 38/15
**150 [1]** 48/20
**15th [2]** 118/21 118/23
**16th [1]** 78/17
**179 [1]** 126/24
**17th [1]** 15/9
**18 [4]** 1/11 4/1 121/19 124/11
**18-CV-80176-BB [1]** 1/7
**18th [1]** 10/8
**19 [2]** 105/18 123/24
**1910 [1]** 1/18
**1980's [5]** 104/15 104/22 104/23
  105/16 105/19
**1983 [1]** 106/10
**1990 [2]** 50/3 50/4
**1990's [3]** 112/25 113/5 114/22
**1:58 [1]** 4/1

**2**

**20 [4]** 49/20 49/21 78/2 133/2
**20 percent [2]** 46/12 49/23
**20's [2]** 104/24 105/1
**20-minute [2]** 69/2 69/8
**200 [2]** 10/7 65/11
**2000 [1]** 26/23
**2000's [3]** 35/15 35/17 35/21
**2006 [2]** 22/4 35/22
**2007 [2]** 35/22 36/10
**2008 [7]** 36/10 118/15 119/3
  119/19 120/13 120/15 120/24
**2009 [7]** 8/17 8/21 9/10 9/12
  10/8 39/25 92/5
**2010 [9]** 41/7 122/2 122/5 122/9
  122/19 123/3 123/15 124/14

126/4
301/20
58/10 113/14 115/1 115/3
**2013 [11]** 10/9 45/17 54/14
  73/21 74/2 75/6 82/11 82/15
  82/18 82/23 113/8
**2014 [4]** 76/1 78/2 78/17 83/12
**2016 [8]** 31/1 31/7 31/23 32/19
  32/23 33/1 33/3 85/11
**2019 [3]** 26/24 83/1 137/19
**2021 [7]** 1/11 4/1 31/2 31/18
  129/25 131/3 141/7
**21 [1]** 87/5
**2144 [1]** 1/22
**23 [1]** 141/7
**24 [1]** 71/8
**24th [3]** 50/1 50/8 71/20
**2525 [1]** 2/6
**26th [2]** 8/17 9/12
**27 [2]** 139/3 139/3
**2800 [1]** 1/21
**29th [3]** 71/23 73/17 137/2

**3**

**30 [3]** 4/16 8/13 25/1
**300 [1]** 48/20
**30th [3]** 73/16 73/18 74/4
**314 [1]** 55/1
**319661 [1]** 131/3
**31st [1]** 120/24
**33.33 percent [1]** 46/5
**33131 [1]** 1/16
**33131-2144 [1]** 1/22
**33134 [1]** 2/6
**34 [1]** 55/1
**35 [1]** 67/4
**362 [3]** 117/19 117/21 117/22
**3:00 [1]** 71/13
**3:00 o'clock [2]** 4/12 136/16
**3:20 [1]** 69/9
**3:30 [1]** 61/12 70/24
**3:38 [1]** 69/10

**4**

**40 [1]** 43/12
**403 [3]** 23/8 24/24 25/9
**41 [4]** 47/10 47/13 48/1 48/6
**41st [1]** 2/3
**44 [1]** 2/3

**5**

**56 [6]** 54/16 54/20 55/16 55/17
  56/8 56/11
**57 [7]** 57/22 57/23 57/25 58/20
  59/10 59/12 61/1
**5:00 [1]** 134/17
**5:00 o'clock [1]** 136/14
**5:18 [1]** 140/19

**7**

**710 [1]** 87/1
**767 [3]** 21/23 11/25 27/11
**799 [1]** 131/2

**8**

**80 percent [2]** 46/16 49/22
**80's [2]** 104/20 104/21
**80/20 [2]** 49/20 49/21
**80/20 percent [1]** 49/2
**8:30 [1]** 140/2

**9**

**90's [3]** 4/17 35/15 89/16

**90.5055 [2]** 129/23 138/12
**91 [3]** 129/23 138/12
**99 [1]** 1/18
**9:00 o'clock [1]** 140/7
**9:15 [3]** 135/12 140/6 140/15
**9:30 [7]** 6/4 6/8 71/11 71/12
  136/3 136/17 137/9
**9th [1]** 137/19

**A**

**ability [1]** 91/19
**able [22]** 4/23 6/22 6/25 7/3
  42/22 44/10 69/17 78/7 80/3
  91/24 102/18 103/19 104/6 104/6
  110/3 117/23 121/11 128/7 128/8
  130/4 136/21 137/18
**about [99]** 4/19 5/11 6/3 6/14
  6/23 8/20 9/25 10/3 10/6 10/7
  10/8 10/17 10/18 12/18 12/24
  13/6 13/13 14/15 14/16 20/12
  22/1 24/25 26/10 27/4 28/9 29/6
  29/9 29/17 31/1 31/16 31/20
  31/25 32/6 36/2 37/13 41/12
  41/14 42/17 46/23 51/1 51/14
  52/5 52/7 52/7 52/10 52/13
  52/17 57/10 57/15 59/4 60/23
  62/9 63/24 64/6 64/16 68/18
  73/20 76/17 76/23 77/5 77/8
  77/12 77/16 77/22 83/22 84/10
  84/17 85/3 85/12 85/19 85/20
  87/22 88/13 88/18 89/20 90/2
  91/19 112/18 115/6 118/12
  118/12 118/14 119/15 120/18
  121/3 127/12 127/20 127/22
  130/22 131/16 131/16 132/2 132/5
  132/24 133/16 133/24 136/15
  136/19 137/7 138/21
**above [2]** 50/7 141/5
**above-entitled [1]** 141/5
**absolutely [5]** 16/21 22/23 60/3
  63/6 63/11
**accept [1]** 112/20
**acceptable [5]** 6/5 6/6 6/11
  61/5 61/16
**access [5]** 38/19 38/21 39/4
  53/6 96/4
**accountancy [1]** 110/25
**accountant [49]** 4/15 4/16 5/23
  6/20 7/1 7/9 47/1 47/3 47/5
  50/16 51/1 56/15 103/24 104/17
  106/4 106/6 106/9 106/15 106/20
  108/2 108/8 108/15 109/5 109/20
  110/2 110/4 110/16 110/17 113/8
  113/24 114/15 115/20 118/20
  119/3 120/14 124/2 124/23 128/4
  128/23 129/7 129/18 129/22
  130/2 130/6 130/12 131/20 132/2
  134/3 138/10
**accountant's [1]** 130/7
**accountant/client [13]** 5/23
  6/20 7/1 7/9 115/20 128/4
  128/23 129/18 129/22 131/20
  132/2 134/3 138/10
**accounting [10]** 4/19 50/23
  107/4 107/5 107/10 107/13 108/2
  126/14 138/3 139/9
**accounting-type [1]** 139/9
**accurate [16]** 44/14 51/22 56/1
  111/6 111/16 111/18 111/20
  112/7 112/10 112/19 112/21
  113/11 115/9 116/25 117/16
  119/7
**accurately [3]** 67/25 111/9

**accurately... [1]**  114/7
**acknowledges [1]**  74/3
**acquainted [2]**  35/25 39/13
**acquisition [1]**  38/4
**acted [1]**  18/19
**action [1]**  43/3
**actions [1]**  128/12
**activities [1]**  110/24
**activity [3]**  37/6 38/4 125/12
**actually [9]**  5/3 7/2 18/1 52/14
53/24 75/2 86/23 101/23 130/14
**added [1]**  45/17
**addition [4]**  12/20 29/8 36/22
38/23
**additional [1]**  41/1
**address [32]**  4/6 5/19 6/22 6/25
12/13 15/10 15/11 47/23 47/23
54/8 54/11 54/24 55/1 55/2 55/3
55/3 56/3 56/5 58/3 58/3 58/5
60/8 80/17 81/5 81/15 81/17
83/3 84/13 84/13 127/14 132/8
134/15
**addressed [1]**  69/15
**adjourned [1]**  140/19
**admire [1]**  10/25
**admissible [1]**  134/1
**admission [4]**  54/16 56/8 57/22
58/20
**admit [2]**  48/1 60/25
**admitted [10]**  29/19 48/4 53/15
56/10 59/10 88/24 117/20 118/5
122/1 132/17
**Adobe [2]**  86/18 86/21
**advice [5]**  4/19 5/11 114/13
114/18 133/1
**advisable [1]**  42/12
**advise [4]**  70/4 102/11 136/20
140/1
**advised [3]**  117/6 138/1 138/5
**adviser [1]**  18/19
**advising [1]**  137/22
**affect [1]**  70/23
**affirmative [1]**  39/20
**after [30]**  5/4 14/2 14/6 14/14
14/17 15/18 18/12 18/12 21/23
24/4 27/1 27/3 36/20 37/24
37/24 43/6 43/10 72/19 73/20
75/16 76/2 105/7 105/16 107/23
109/1 109/2 109/2 109/10 134/17
137/2
**afternoon [16]**  1/13 7/18 17/12
17/13 17/14 17/15 34/3 34/4
34/23 34/25 70/22 71/5 72/13
72/14 103/10 103/11
**afterwards [1]**  52/15
**again [19]**  5/14 36/9 41/11
42/16 42/24 45/16 47/21 57/21
70/9 71/7 73/21 74/5 75/17
81/23 84/7 104/13 124/20 125/24
133/12
**against [1]**  82/18
**agency [1]**  111/1
**aggregation [1]**  35/16
**ago [4]**  40/24 42/17 105/18
135/3
**agree [10]**  4/25 30/24 31/2 31/6
31/22 32/2 60/25 61/13 61/14
135/4
**agreement [11]**  45/2 45/13 45/19
46/18 46/25 93/18 94/1 94/2
94/15 94/17 94/22

**agreements [1]**  93/24
**ahead [7]**  4/5 4/5 55/1 62/22
68/24 69/25 137/12
**al [1]**  1/5
**ALEJANDRO [1]**  2/7
**ALEXANDER [1]**  2/4
**alias [1]**  18/6
**Alienware [1]**  20/9
**all [119]**  5/9 5/25 7/11 7/14
10/12 12/3 12/19 12/21 14/13
17/8 19/17 22/15 22/20 23/21
23/25 25/14 27/20 29/8 31/22
33/10 33/13 33/18 33/23 39/11
46/24 53/3 53/12 53/16 54/21
56/10 59/6 59/9 59/24 61/1 62/4
63/6 68/12 68/15 68/24 69/2
69/4 69/6 69/11 69/13 69/13
69/23 70/9 71/10 71/15 72/1
72/1 72/3 72/5 79/24 81/23
81/23 83/25 84/16 84/17 85/5
85/8 86/18 87/18 91/15 93/4
97/3 99/5 99/7 99/13 99/23
100/14 102/7 102/15 102/19
104/24 107/20 107/22 111/15
111/25 114/8 115/18 116/3
118/18 119/6 119/21 121/5
121/16 123/3 125/12 127/13
127/16 127/18 129/8 131/14
132/18 133/4 133/25 134/24
135/2 135/7 135/13 135/16
135/18 135/22 136/2 136/3 136/7
136/10 136/13 137/4 137/10
137/12 137/13 138/10 139/10
139/17 139/23 140/1 140/18
**alleviate [1]**  97/13
**allow [10]**  13/1 16/15 16/25
21/15 28/20 31/13 37/18 40/10
40/17 64/14 66/8 87/7 92/1
102/10 110/8 116/2 117/15
**allowed [2]**  124/1 134/7
**almost [4]**  40/24 42/17
**along [1]**  116/16
**alphanumeric [1]**  78/22
**already [11]**  11/22 12/5 43/12
44/24 53/14 83/5 83/12 84/7
106/12 118/5 128/17
**also [20]**  23/23 37/13 39/9
46/18 60/20 66/12 66/14 75/9
86/21 90/1 94/5 94/9 101/5
103/3 103/20 103/20 115/19
131/19 131/22 139/21
**although [2]**  18/18 44/15
**always [3]**  19/20 90/9 90/10
**am [11]**  13/22 25/16 29/16 32/24
44/5 82/16 100/5 100/19 106/7
119/16 138/7
**AMANDA [1]**  2/8
**amenable [3]**  94/17 95/4 95/5
**among [1]**  26/16
**amount [3]**  77/1 121/6 129/14
**analysis [2]**  38/10 62/16
**analyst [1]**  43/9
**ANDREOU [14]**  3/4 5/4 8/7 10/5
12/10 17/7 17/21 17/22 17/24
23/14 33/8 33/12 33/14 33/18
**ANDRES [1]**  2/7
**ANDREW [4]**  1/22 17/16 137/21
137/21
**anecdotal [10]**  12/20 12/23 13/8
27/21 27/21 27/25 28/9 28/12
28/24 29/9
**announcing [1]**  74/15
**annual [4]**  48/14 48/20 116/8

**120/6
**answer [4]**  37/20 38/2 39/20
51/2
**answered [5]**  77/23 85/24 94/25
98/18 117/1
**answering [1]**  125/11
**anticipate [1]**  99/24
**any [65]**  4/18 5/11 5/24 7/8
10/15 19/11 23/13 26/3 31/15
33/10 33/14 33/16 43/3 43/3
46/13 52/16 59/3 61/3 61/4
63/14 67/16 68/2 68/4 68/6 68/8
78/12 78/12 79/24 80/2 80/7
82/17 82/19 82/20 84/22 85/6
85/20 85/21 94/15 96/4 98/9
99/5 99/11 102/8 102/8 110/10
110/10 111/1 111/14 114/13
114/13 116/2 116/14 117/6 120/1
124/15 126/5 126/7 126/12
126/15 126/15 130/1 130/23
133/2 134/4 137/5
**anyone [6]**  33/14 93/7 93/9 99/8
137/6 137/6
**anything [30]**  4/6 16/13 16/16
30/18 52/17 53/12 63/6 63/23
64/4 65/11 76/17 76/22 76/23
80/3 82/22 84/10 84/16 86/10
114/17 115/11 115/16 122/19
123/1 123/2 123/16 125/21 127/3
129/4 132/1 132/3
**Anywhere [1]**  10/15
**Apologies [2]**  49/18 54/17
**apologize [6]**  12/2 24/9 35/5
100/17 118/18 136/14
**appear [1]**  136/1
**appearance [1]**  133/17
**APPEARANCES [3]**  1/14 1/24 2/1
**appears [1]**  56/25
**applied [1]**  7/1
**applies [5]**  7/2 115/20 129/20
129/21 130/1
**apply [2]**  5/8 130/5
**applying [2]**  130/16 132/5
**appointments [1]**  71/21
**appreciate [1]**  71/9
**approach [3]**  59/14 66/18 96/24
**approached [1]**  41/9
**appropriate [2]**  59/8 139/14
**approximately [1]**  104/25
**April [10]**  10/8 73/16 73/17
73/18 73/21 74/2 74/4 75/6 76/2
129/25
**April 18th [1]**  10/8
**April 2013 [1]**  74/2
**April 29th [1]**  73/17
**April 30th [3]**  73/16 73/18 74/4
**aptitude [1]**  88/2
**are [61]**  5/11 6/2 6/4 10/6
12/19 13/15 13/22 15/20 25/15
29/8 32/25 33/16 33/23 34/17
34/18 36/15 36/16 55/11 58/22
60/18 61/23 70/6 70/8 70/15
70/19 71/11 71/24 79/4 79/19
82/15 84/9 90/17 91/15 97/14
99/11 99/18 102/17 106/6 110/15
110/19 115/21 115/23 115/23
117/7 124/7 124/7 125/1 125/10
126/8 126/9 127/24 129/3 130/5
130/8 131/5 134/21 135/5 136/16
136/21 137/4 140/6
**area [4]**  19/18 38/17 38/18
132/24

**A**

**Argumentative [7]**   32/9 32/20
76/18 79/16 93/15 96/16 96/22
**around [5]**   4/12 36/10 37/1 41/7
132/5
**arrangements [1]**   134/18
**as [87]**   6/1 6/8 6/25 7/18 8/5
8/8 8/9 18/8 18/8 18/19 29/24
29/25 29/25 30/20 31/18 34/11
34/12 38/16 38/16 41/1 42/12
42/12 42/20 42/20 44/6 44/9
46/12 47/16 47/19 50/12 53/15
54/10 55/11 55/23 55/23 60/10
60/11 70/7 70/7 71/12 71/16
74/15 75/17 75/19 75/23 77/17
84/7 88/17 88/17 92/16 93/12
93/18 94/20 96/3 96/3 100/5
100/9 100/19 102/11 102/24
102/25 104/18 104/18 106/19
108/8 108/8 108/12 109/20 110/1
110/4 110/17 117/5 117/25
122/18 125/8 130/3 130/4 130/23
131/21 132/22 132/23 134/3
134/23 136/13 137/4 137/13
138/2
**ask [31]**   7/2 10/20 27/4 33/14
34/7 54/16 59/3 59/18 66/23
93/3 95/19 95/20 99/8 102/7
102/20 112/18 115/6 116/6 122/1
123/5 123/7 123/14 123/23 124/1
128/7 129/10 130/9 130/22
131/15 131/20 133/25
**asked [24]**   5/7 6/1 6/3 6/14 8/5
13/13 26/13 26/16 32/11 40/3
57/22 69/18 77/23 85/24 86/24
93/1 93/4 94/25 98/18 117/1
124/12 133/4 135/4 136/19
**asking [23]**   6/24 26/18 48/16
115/16 118/12 118/14 119/8
119/15 119/16 119/16 119/21
123/1 123/3 124/18 127/24
129/13 129/14 130/16 130/18
131/5 132/23 132/25 139/7
**asks [1]**   30/16
**aspects [1]**   37/22
**assert [5]**   132/10 133/16 134/4
135/5 139/6
**asserted [2]**   133/22 133/23
**assets [13]**   78/7 79/22 80/8
83/16 83/24 83/25 96/4 97/13
98/6 98/9 98/13 98/16 129/15
**assignment [1]**   55/23
**assist [6]**   38/7 38/11 38/21
39/10 44/6 125/11
**assistance [1]**   40/4
**assisted [1]**   80/7
**assisting [1]**   41/2
**associated [1]**   58/23
**associates [1]**   72/22
**assume [1]**   44/12
**assuming [1]**   58/8
**Atlantic [3]**   107/8 107/11
107/14
**ATO [1]**   77/16
**attached [1]**   130/23
**attachment [1]**   58/16
**attachments [11]**   58/8 58/11
58/14 59/24 60/2 60/9 60/11
61/2 69/16 125/10 130/8
**attend [1]**   36/10
**attended [1]**   107/8
**attention [1]**   126/21

**attorney [5]**   101/24 128/5
**attorney-client [1]**   128/5
**attorney/client [2]**   128/23
132/2
**attorneys [8]**   60/6 60/8 61/1
69/7 80/10 102/8 137/3 138/6
**attract [1]**   41/1
**audits [1]**   106/17
**August [2]**   82/14 82/23
**aunts [1]**   23/23
**Australia [2]**   73/12 81/6
**Australian [5]**   77/11 77/22
80/11 80/20 83/13
**authentic [4]**   12/20 29/8 44/13
44/13
**authentication [1]**   48/3
**available [10]**   41/25 41/25 42/9
44/8 71/11 71/20 71/21 71/22
80/5 97/13
**Avenue [2]**   1/16 1/18
**Aviles [3]**   1/25 141/11 141/12
**aware [19]**   64/8 77/9 77/9 77/21
79/1 79/4 79/14 79/19 81/21
81/25 82/15 83/11 83/11 83/15
90/17 92/14 122/23 126/15 133/2
**awareness [1]**   133/5
**away [4]**   72/19 74/3 74/3 74/16
**awkward [1]**   38/17

**B**

**B-r-e-n-n-e-r [1]**   17/17
**Bachelor's [1]**   107/4
**back [29]**   4/5 4/17 7/24 8/1
8/12 25/15 27/10 47/18 54/19
54/23 54/23 55/9 55/13 60/21
62/8 63/1 68/23 69/12 69/13
69/15 71/23 72/5 74/1 89/16
108/21 110/13 124/11 130/14
135/19
**background [4]**   35/1 35/9 35/13
107/7
**backpack [2]**   36/25 37/1
**bad [2]**   96/1 96/3
**ball [1]**   105/10
**banking [1]**   116/16
**based [7]**   14/6 14/11 14/12 43/5
60/4 94/1 133/5
**basically [3]**   19/14 108/10
111/13
**basis [5]**   13/14 37/9 66/6
113/21 131/4
**Bates [1]**   10/7
**Bates-numbered [1]**   10/7
**BB [1]**   1/7
**be [138]**   4/12 4/23 5/11 5/21
6/2 6/5 6/22 6/23 6/25 7/3 7/19
7/20 7/25 23/12 24/1 26/25
29/19 29/23 29/25 30/16 31/1
31/2 34/8 37/10 37/13 38/2 38/5
38/14 38/16 38/17 42/9 44/13
44/14 45/14 45/23 46/1 46/6
46/8 46/15 46/16 48/4 48/14
48/20 50/11 50/21 50/22 50/22
55/8 55/12 55/23 56/15 56/25
59/10 60/1 60/10 60/18 60/21
61/5 61/16 61/23 62/19 63/3
63/4 64/11 64/22 67/18 68/13
70/7 70/10 70/16 71/21 71/22
72/6 74/7 74/8 78/7 87/4 90/16
91/11 92/18 94/15 100/21 101/3
101/6 101/7 102/21 103/19 104/5
104/6 104/22 106/14 106/24

107/20 108/23 109/21 110/3
114/17 114/21 115/8 115/23
116/22 117/7 117/23 117/24
118/11 118/14 121/11 124/1
124/7 125/3 125/9 125/9 128/4
128/7 128/8 130/22 134/22
136/16 136/17 136/21 136/23
136/24 137/2 137/18 138/1
138/17 139/5 139/6 139/17
139/18 139/21 140/4 140/4
140/14
**Beach [10]**   47/23 51/24 54/7
54/10 89/5 89/14 89/18 107/18
107/19 107/19
**bear [1]**   95/4
**became [7]**   103/20 104/17 105/5
105/6 109/15 126/14 133/2
**because [33]**   5/4 6/22 10/7
21/24 23/19 24/23 25/9 32/6
39/5 51/25 69/24 70/2 76/17
84/19 84/23 102/4 102/8 104/2
107/17 112/8 114/18 118/7
118/21 127/14 129/3 129/19
131/19 131/22 134/16 134/23
139/22 140/5 140/12
**become [6]**   105/15 106/5 106/8
106/23 107/3 108/15
**becomes [1]**   134/1
**becoming [1]**   107/1
**bed [3]**   20/2 91/12 91/14
**bedroom [1]**   91/11 91/13
**been [34]**   5/12 7/18 8/8 10/5
12/17 14/1 14/18 14/21 14/24
20/24 21/10 34/11 35/14 40/25
47/16 56/15 62/17 69/19 74/10
85/15 97/19 102/24 104/21 106/5
106/9 109/16 118/5 118/23 122/1
133/9 133/22 135/13 137/17
138/5
**beer [1]**   105/12
**before [24]**   1/4 7/4 7/6 17/24
25/21 35/23 61/24 66/16 66/25
66/25 68/19 69/15 69/25 70/3
75/3 77/10 86/10 102/19 117/19
117/19 118/6 118/16 129/17
133/22
**beforehand [1]**   138/25
**began [2]**   112/24 114/22
**behalf [7]**   33/21 99/13 99/16
116/25 119/7 132/11 138/9
**behind [7]**   12/22 14/19 14/22
14/25 31/9 54/17 94/23
**being [9]**   7/1 12/22 78/23 87/16
97/12 103/19 118/19 128/3
131/17
**belief [1]**   24/11
**believe [36]**   5/3 5/5 15/17
15/22 26/4 31/8 36/9 39/19
39/20 41/13 41/13 41/21 43/24
46/9 47/12 50/6 53/14 66/19
69/20 70/2 70/8 70/12 70/14
70/18 71/4 71/6 77/1 79/10 80/1
80/17 83/8 97/11 117/4 117/19
120/13 121/19
**believed [1]**   33/3
**Belize [1]**   78/23
**Bell [2]**   39/16 39/16
**belonged [5]**   80/8 96/13 96/19
97/4 97/24
**benefit [1]**   134/12
**Berman [2]**   108/5 109/5
**best [5]**   9/12 9/13 88/21 88/22

**B**

**best...** [1]  115/5
**Beth** [1]  1/4
**better** [4]  30/1 71/16 136/22
137/2
**between** [16]  13/9 22/14 35/22
45/15 47/7 48/20 87/4 115/22
116/1 117/6 125/6 129/16 130/2
130/6 130/12 138/24
**beyond** [10]  25/1 46/24 50/22
58/25 87/6 91/21 91/25 105/15
114/2 128/24
**bias** [5]  23/20 24/13 24/18
24/24 25/9
**bigger** [1]  45/8
**bill** [8]  41/4 41/5 44/18 44/21
65/6 65/9 65/13 65/20
**billed** [1]  44/20
**bills** [1]  64/16
**bit** [10]  7/4 27/24 45/18 51/14
87/22 112/18 115/6 118/12
136/15 140/7
**Bitcoin** [71]  9/20 9/22 9/25
10/3 10/15 11/9 11/12 11/17
11/20 12/22 13/6 13/15 13/23
14/4 14/14 14/16 14/19 14/22
14/25 16/23 26/17 26/20 27/4
27/5 27/8 29/5 29/6 29/17 31/1
31/9 31/16 31/20 31/25 32/25
52/13 52/17 52/20 52/24 53/9
63/7 63/11 63/17 63/21 65/12
67/16 67/19 68/2 68/4 68/6 68/8
76/14 76/24 95/24 96/13 96/19
96/21 97/8 97/10 97/24 122/20
123/2 123/19 123/19 124/16
125/23 126/16 129/4 130/18
131/18 131/22 138/21
**block** [1]  55/24
**Bloom** [1]  1/4
**blurt** [1]  114/17
**Bob** [2]  39/16 39/16
**body** [1]  110/23
**BOIES** [2]  1/21 2/2
**bond** [1]  93/21
**book** [1]  92/14
**books** [3]  57/2 57/10 57/15
**borderline** [1]  138/16
**boss** [3]  22/8 24/19 25/18
**both** [6]  6/5 63/3 99/24 99/25
100/2 137/24
**Boulevard** [5]  2/6 54/8 54/11
55/1 84/13
**boundaries** [2]  6/20 7/8
**Box** [1]  55/1
**Boynton** [2]  54/7 54/10
**brand** [1]  81/23
**brand-new** [1]  81/23
**break** [5]  61/12 68/19 68/20
68/22 68/25
**BRENNER** [8]  1/22 17/17 23/9
132/22 137/21 138/17 138/18
139/4
**Brian** [2]  26/4 26/5
**briefly** [4]  35/9 35/13 107/6
109/19
**bright** [1]  136/17
**brilliant** [1]  87/24
**bring** [12]  7/13 69/15 71/23
72/1 78/15 81/9 86/25 87/5
125/16 126/21 127/17 138/14
**bringing** [1]  70/1
**broad** [2]  132/3 132/8

**brother** [3]  9/25 10/3 84/18
116/20
**brought** [4]  7/16 100/13 103/12
128/16 132/9 135/19
**built** [2]  92/12 92/12
**bunch** [2]  26/13 44/4
**business** [37]  11/16 35/14 39/14
40/14 40/20 41/8 42/11 42/18
42/19 42/25 44/25 46/23 46/24
47/16 49/7 51/11 52/5 53/3
58/23 61/9 61/18 76/23 92/24
93/1 104/18 106/17 110/11
110/15 110/20 122/8 122/11
123/17 124/15 125/12 125/20
125/22 126/15
**businesses** [2]  61/4 125/1
**button** [1]  100/16

**C**

**C-o-n-r-a-d** [1]  35/8
**cables** [2]  38/6 39/22
**cafeteria** [1]  26/8
**California** [1]  2/3
**call** [10]  4/23 7/6 8/14 13/24
15/17 45/8 62/19 62/25 64/11
79/5
**called** [7]  4/12 8/8 20/9 34/11
40/20 79/2 102/24
**calling** [1]  70/7
**calls** [6]  15/23 34/1 99/21
117/9 119/25 125/5
**came** [10]  13/4 14/16 23/14
28/24 42/25 51/16 73/13 73/25
80/2 88/24
**can** [113]  5/19 6/17 7/20 8/14
8/22 8/24 9/4 9/16 12/6 13/20
17/20 22/16 24/20 27/16 31/2
31/22 32/23 33/16 34/24 35/3
35/9 35/13 43/15 44/16 45/6
46/21 48/7 48/8 50/11 50/11
50/21 50/22 55/13 55/15 56/24
58/12 59/2 60/8 60/17 60/17
60/25 61/13 61/13 61/17 61/24
61/25 65/23 66/17 66/23 67/3
67/5 68/11 69/6 70/4 70/18 71/4
72/16 74/12 74/22 74/22 75/8
75/10 75/11 75/13 78/15 80/22
80/24 81/1 81/9 86/1 86/3 86/4
86/25 86/25 87/5 87/19 96/24
98/25 99/10 102/1 102/1 102/1
102/10 102/11 104/9 104/11
104/12 111/25 114/7 121/4
121/18 123/8 123/8 123/11 125/2
125/11 125/16 125/17 125/17
126/21 127/23 129/2 132/23
133/21 134/2 134/19 134/25
135/25 136/14 138/13 139/11
139/19 140/13
**can't** [9]  31/16 39/19 61/14
118/21 128/24 128/25 130/12
130/24 132/10
**cannot** [1]  134/22
**capacity** [5]  105/22 107/24
108/6 108/7 131/21
**capital** [3]  45/20 45/20 93/12
**cards** [1]  64/25
**care** [2]  109/23 138/24
**careful** [2]  57/10 57/15
**carefully** [2]  7/4 117/5
**Caribbean** [7]  21/24 22/3 22/7
22/8 22/25 23/7 26/6
**carry** [1]  37/1
**Carter** [5]  34/1 34/10 35/8
45/23 75/9

**carve** [1]  131/4
**cases** [12]  42/19 42/24 79/21
79/24 82/7 82/7 82/8 87/3 92/17
111/24 115/20 127/20 127/22
128/2 128/6 128/16 128/21
128/22 129/25 130/2 130/25
131/2 131/4 133/12 133/21
135/10 135/12 137/7 137/23
139/20
**cases** [3]  90/21 129/22 129/24
**categories** [1]  115/12
**cc'ed** [1]  137/24
**CDC** [1]  34/17
**CEIC** [2]  40/1 92/5
**cell** [1]  65/20
**ceremony** [2]  140/3 140/7
**certain** [8]  54/10 109/22 125/1
129/10 129/14 129/15 135/23
139/5
**certainly** [15]  7/6 17/4 27/1
33/7 41/15 44/14 51/3 51/22
60/15 84/7 84/23 85/16 90/14
90/24 99/2
**certainty** [1]  91/11
**CERTIFICATE** [1]  141/3
**certifications** [4]  35/12 35/24
36/1 36/22
**certified** [8]  103/24 104/19
106/4 106/6 106/8 106/15 106/23
108/15
**certify** [1]  141/4
**chain** [5]  49/25 50/8 58/9 75/20
78/15
**challenge** [1]  89/7
**changed** [2]  35/15 35/17
**changing** [1]  29/16
**characters** [1]  78/22
**charge** [3]  48/17 50/25 51/2
**check** [1]  69/19
**choose** [1]  29/23
**choosing** [2]  47/5 50/5
**chose** [1]  50/23
**circuit** [2]  131/1 137/18
**circumstance** [1]  133/25
**circumstances** [2]  64/9 97/13
**Clarendon** [1]  131/1
**clarification** [1]  5/1
**clarity** [1]  42/16
**clear** [20]  5/9 7/21 31/20 42/24
58/25 60/1 74/6 75/17 85/14
85/18 89/14 114/12 114/16
114/21 114/21 115/19 128/6
129/24 134/3 138/18
**clearly** [2]  75/21 94/18
**client** [29]  5/23 6/20 7/1 7/9
59/18 110/2 110/11 111/4 111/14
111/20 112/7 115/20 115/22
128/4 128/5 128/23 128/23
129/18 129/22 130/2 130/4 130/7
130/12 131/20 132/2 132/2 133/6
134/3 138/10
**client's** [2]  110/4 139/3
**clients** [5]  60/17 61/3 109/22
109/23 109/23
**close** [7]  18/18 70/18 72/22
83/7 88/19 88/23 113/23
**closer** [2]  30/1 31/4
**closest** [2]  9/14 18/24
**closings** [2]  70/10 70/17
**co** [2]  14/4 137/21
**co-counsel** [1]  137/21
**coauthoring** [1]  11/5
**cocreators** [4]  13/15 13/23 14/4

C

**cocreators... [1]** 32/25
**coder [1]** 14/19
**codes [1]** 112/11
**coding [2]** 91/17 91/19
**colleagues [1]** 33/6
**collected [1]** 64/23
**collecting [1]** 64/21
**collection [2]** 38/11 64/25
**collections [1]** 38/7
**college [3]** 35/11 107/18 107/19
**comb [1]** 122/24
**come [22]** 6/3 6/4 13/2 22/18 22/18 35/18 36/4 37/25 40/13 46/13 54/19 64/17 66/3 68/23 71/11 71/22 105/20 127/13 127/13 136/18 140/5 140/8
**comes [2]** 23/20 102/12
**comfortable [4]** 34/18 60/17 62/1 69/21
**coming [1]** 136/15
**committed [1]** 93/24
**communicate [3]** 53/1 53/2 53/5
**communicated [2]** 83/23 84/21
**communicating [2]** 50/25 85/23
**communication [12]** 51/3 115/22 116/12 117/6 119/24 120/1 125/6 125/8 129/16 130/1 130/6 130/24
**communications [17]** 85/5 85/6 85/9 109/22 115/23 116/1 116/10 119/9 119/15 129/1 130/11 130/21 131/6 131/18 132/4 133/6 139/5
**Community [1]** 107/19
**company [11]** 22/1 43/6 43/8 46/15 47/9 49/24 50/20 67/9 76/13 108/8 131/2
**comparison's [1]** 111/12
**competence [1]** 109/24
**complaint [2]** 45/5 45/6
**complete [14]** 42/22 111/6 111/16 111/18 111/20 112/6 112/10 112/19 112/21 113/11 115/9 116/25 117/16 119/7
**completely [2]** 24/23 117/3
**completion [1]** 116/20
**comply [1]** 112/10
**compromise [1]** 61/22
**computer [54]** 19/20 35/12 35/17 37/2 37/7 40/21 40/22 41/24 42/14 42/19 44/20 45/21 45/22 45/25 46/1 46/5 47/1 51/5 51/11 56/21 57/2 57/7 57/9 57/15 61/8 66/12 67/9 67/9 67/12 67/15 67/17 68/9 87/10 88/5 88/8 89/23 91/6 91/9 92/4 92/7 92/21 93/18 94/23 101/2 101/7 104/4 104/7 127/5 131/12 131/14 132/10 132/11 132/14 132/15
**computer-related [1]** 91/9
**ComputerForensicsLLC.com [1]** 41/25
**computers [9]** 19/23 20/1 20/4 38/4 38/15 38/17 39/3 91/8 91/12
**concept [1]** 97/12
**concern [3]** 60/16 60/20 61/15
**concerned [1]** 134/16
**concerning [1]** 132/4
**conclude [1]** 71/12
**concluded [1]** 61/24
**condolences [2]** 75/16 76/2

**confer [1]** 7/16
**conference [2]** 7/9 40/25
**confererence [2]** 19/5 99/15
**conferred [2]** 19/5 40/2 79/5 92/5
**confide [2]** 19/5 20/20
**confided [2]** 19/7 19/7
**confident [1]** 61/17
**confidential [6]** 60/2 109/22 115/23 116/10 130/7 139/9
**confirm [1]** 71/19
**conflicts [1]** 115/7
**connection [6]** 115/7 116/19 119/18 123/18 126/3 126/13
**Conrad [45]** 34/1 34/10 34/17 35/8 44/3 45/23 47/14 49/4 56/2 58/2 59/21 60/5 60/15 61/15 61/25 62/5 67/13 67/13 67/16 68/16 69/1 69/6 69/18 69/20 70/8 72/13 72/19 74/15 75/9 75/13 76/16 77/10 80/10 81/5 86/10 87/3 87/22 92/20 96/6 96/19 99/8 99/9 99/11 99/13 132/13
**Conrad's [1]** 61/24
**consent [1]** 83/13
**consider [2]** 135/12 139/20
**consistent [9]** 31/24 34/17 47/22 119/5 119/9 119/20 120/5 120/11 128/12
**consistently [1]** 113/12
**constitutes [3]** 133/18 134/5 134/10
**construct [1]** 92/10
**consult [3]** 17/3 33/5 99/1
**consultation [1]** 106/18
**contained [2]** 126/9 130/10
**contains [2]** 129/14 132/3
**contemplating [1]** 16/6
**content [1]** 120/1
**contents [1]** 117/2
**context [3]** 129/7 132/4 137/22
**continuation [1]** 136/3
**continue [9]** 8/1 25/14 44/6 72/6 90/16 90/18 90/19 97/1 121/16
**continued [4]** 1/24 2/1 41/9 89/2
**continuing [1]** 40/25
**continuously [1]** 109/16
**contract [1]** 87/3
**contribute [1]** 91/2
**contributed [1]** 92/16
**controlled [1]** 91/8
**controllers [1]** 106/20
**conversation [6]** 9/25 10/2 13/9 37/2 78/11 85/21
**conversations [6]** 8/21 37/22 89/3 114/1 139/9 139/10
**converting [1]** 67/19
**conveyed [1]** 85/12
**convinced [4]** 13/14 13/22 14/3 32/24
**cookie [1]** 96/14
**copy [2]** 81/24 138/8
**Coral [1]** 2/6
**cord [2]** 52/1 89/15
**corner [1]** 81/5
**corporate [3]** 47/23 94/15 94/24
**corporation [3]** 50/12 50/12 50/22
**correct [59]** 10/10 17/24 17/25 18/10 18/11 18/14 19/16 19/22 20/14 20/15 20/24 21/2 21/5 21/8 21/9 21/11 21/17 21/18

22/10 25/19 25/25 26/7 30/15 27/10 27/24 32/14 39/3 40/6 45/5 65/11 65/12 67/4 71/8 85/16 86/7 90/18 90/18 91/13 103/3 106/16 106/17 106/19 107/6 108/23 109/19 110/19 112/2 115/8 116/24 117/18 117/22 118/13 121/21 122/7 122/11 122/17 122/18 123/6 123/25 124/3 124/8 127/11 139/5 139/18
**correctly [1]** 133/11
**correspondence [5]** 36/8 36/8 75/18 78/11 120/9
**could [50]** 6/3 8/13 14/18 14/21 14/24 21/10 26/20 26/25 27/5 27/8 27/24 32/14 39/3 40/6 45/5 65/11 65/12 67/4 71/8 85/16 86/7 90/18 90/18 91/13 103/3 106/16 106/17 106/19 107/6 108/23 109/19 110/19 112/2 115/8 116/24 117/18 117/22 118/13 121/21 122/7 122/11 122/17 122/18 123/6 123/25 124/3 124/8 127/11 139/5 139/18
**couldn't [3]** 39/19 56/1 139/15
**counsel [13]** 12/7 22/14 33/6 55/15 57/23 59/7 61/11 61/13 61/18 61/19 69/7 137/21 137/21
**County [1]** 51/24
**couple [2]** 35/24 109/9
**course [5]** 61/15 70/23 104/18 111/7 111/13
**court [53]** 1/2 1/25 4/18 5/1 6/21 7/5 7/9 7/16 7/16 17/16 23/16 25/15 29/19 55/16 57/23 59/14 60/22 66/18 66/18 70/4 70/18 71/9 72/9 75/23 80/11 80/18 80/20 81/6 81/12 81/22 92/17 116/1 117/5 125/3 125/6 129/19 129/19 129/24 131/8 133/14 133/15 133/22 134/6 135/3 135/10 135/11 135/12 135/12 137/14 139/19 139/20 139/21 141/12
**Court's [5]** 69/12 81/15 81/17 81/19 138/20
**Courteous [1]** 72/24
**courtroom [6]** 31/2 60/7 136/18 137/7 140/8 140/14
**courts [2]** 82/1 83/13
**cousins [1]** 23/23
**CPA [19]** 47/4 50/4 55/23 95/6 103/20 106/12 106/15 106/25 107/2 107/3 108/5 108/12 108/16 108/17 108/19 109/2 109/3 109/9 109/16
**CRAIG [23]** 1/8 8/6 10/18 11/16 12/21 13/15 13/22 15/22 16/12 32/25 52/23 73/2 73/23 74/19 75/15 76/24 82/8 87/4 118/12 120/19 120/25 133/3 138/6
**Craig's [1]** 15/20
**create [1]** 41/11
**created [6]** 26/20 27/5 27/8 40/13 40/22 45/13
**creation [4]** 16/23 31/9 31/25 93/12
**creator [1]** 29/5
**credibility [1]** 23/7
**credit [1]** 64/25
**Cristina [2]** 22/8 25/18
**cross [5]** 17/8 17/10 68/17 68/23 72/11
**Cross-examination [4]** 17/8 17/10 68/17 72/11

**C**

CRR [2]   1/25 141/12
cryptographic [2]   86/15 87/12
cryptography [2]   88/1 88/2
crystal [1]   31/20
crystal-clear [1]   31/20
CSR [2]   1/25 141/12
currency [1]   93/12
current [2]   61/3 107/1
currently [2]   58/23 61/19
customer [3]   110/1 110/3 110/14
cutoff [1]   118/23
CV [1]   1/7

**D**

D-0 [1]   74/11
D-005 [3]   45/4 67/3 86/3
D-010 [2]   80/22 80/23
D-042 [1]   74/11
D-10 [1]   53/15
D-18 [1]   124/11
D-19 [1]   123/24
D-40 [1]   43/12
D-41 [3]   47/10 48/1 48/6
D-56 [6]   54/16 54/20 55/16
 55/17 56/8 56/11
D-57 [7]   57/22 57/23 57/25
 58/20 59/10 59/12 61/1
Dade [1]   36/12
daily [3]   37/9 89/3 89/19
data [13]   11/2 35/16 35/16
 38/16 62/16 62/17 62/19 62/25
 63/3 63/5 88/3 111/13 116/16
date [8]   8/14 8/17 9/19 9/22
 9/24 54/13 54/14 141/7
dated [4]   78/2 82/11 83/1
 118/15
dates [1]   74/9
dating [1]   4/17
Dave [173]
Dave's [8]   14/13 51/14 53/6
 64/6 73/21 78/7 88/13 92/2
Daves [1]   48/12
David [45]   4/11 4/15 35/18 43/1
 47/4 47/6 47/20 48/11 48/12
 48/12 48/24 55/2 55/3 55/22
 55/24 58/5 67/17 77/5 80/8
 99/21 102/23 103/6 103/12
 103/15 103/16 103/16 103/17
 104/14 104/22 104/24 105/2
 105/7 105/18 105/19 105/22
 106/11 114/14 118/16 126/14
 127/21 130/19 138/2 138/3 138/9
 138/21
day [14]   1/12 3/3 9/5 36/23
 37/11 70/23 70/24 73/4 73/7
 75/3 77/10 108/22 108/23 136/25
days [4]   25/1 77/10 108/18
 118/25
de [1]   2/6
deal [1]   37/5
deals [1]   46/11
dealt [1]   18/20
Dear [1]   138/1
death [2]   14/14 113/8
Deb [1]   79/6
debate [1]   6/23
Debra [1]   79/15
debt [3]   64/24 95/25 97/9
deceased [2]   39/9 130/4
December [1]   120/24
December 31st [1]   120/24

decide [2]   60/9 139/8
deciding [1]   54/12
deciding [1]   54/12
decision [1]   71/8
dedicated [1]   41/16
Deduction [1]   126/25
deductions [1]   111/10
deepest [1]   44/5
defendant [10]   1/9 2/5 8/8 18/1
 34/11 71/1 73/2 99/14 102/24
 138/6
defendant's [15]   3/3 3/12 33/25
 47/10 47/13 48/6 55/17 56/11
 57/25 59/12 70/5 99/20 101/25
 117/19 121/19
defense [5]   24/13 34/1 54/24
 77/22 82/9
define [3]   45/25 46/3 46/6
degree [5]   35/11 107/4 107/9
 107/10 107/13
delete [1]   93/4
deliberation [1]   70/17
deliberations [1]   70/10
Dell [1]   20/10
Department [2]   56/20 110/20
departments [1]   110/15
dependent [1]   5/7
depending [1]   41/3
depends [2]   4/23 71/7
deposed [1]   132/22
deposition [18]   18/2 25/21
 100/21 133/8 133/18 133/23
 133/25 134/7 134/13 135/4
 135/10 137/15 137/17 137/23
 138/14 138/18 138/25 139/18
depreciation [1]   126/24
derived [1]   125/9
describe [5]   35/1 35/9 35/13
 107/6 109/19
described [4]   39/21 39/23 46/12
 92/4
describing [2]   38/14 38/24
description [3]   20/18 45/19
 63/2
designated [1]   46/16
desire [2]   19/8 90/16
desk [2]   38/6 38/18
detail [1]   57/7
detailing [1]   115/10
details [2]   59/16 116/22
develop [2]   105/14 105/15
developed [6]   18/9 36/4 36/21
 37/3 37/24 44/24
developing [1]   16/18
devices [3]   38/22 91/9 91/14
DEVIN [1]   1/17
did [191]
didn't [33]   6/7 13/3 20/13
 20/20 21/20 21/21 27/8 32/14
 54/15 63/8 73/21 77/5 80/14
 82/17 82/20 82/22 82/25 83/18
 83/24 84/10 84/15 84/18 84/19
 84/24 90/6 94/7 95/19 96/2 96/5
 97/16 101/1 127/17 129/5
died [3]   15/18 114/23 115/1
difference [2]   75/4 131/13
different [7]   21/11 37/6 39/23
 52/11 73/12 110/24 117/3
difficult [4]   38/5 38/18 89/6
 95/20
digital [2]   86/13 93/12
digitally [1]   86/16
dinner [7]   30/4 30/5 30/9 30/9
 30/10 30/18 105/10

direct [9]   8/10 20/16 34/21
 44/12 51/3 76/10 103/8 125/17
 125/17
direction [1]   70/2
directly [9]   42/2 47/15 47/21
 73/24 84/12 85/9 111/23 122/1
 129/15
disagree [1]   139/15
disappointed [1]   23/8
disclose [1]   115/25
disclosed [4]   60/18 62/1 115/24
 117/7
disclosing [2]   115/21 120/1
discovery [3]   74/7 75/19 77/18
discuss [4]   63/2 70/1 117/2
 134/20
discussed [4]   60/22 113/24
 116/23 138/21
discussing [1]   24/19
discussion [3]   8/20 12/18 13/17
 28/6 28/11 47/7 129/17
discussions [15]   4/19 4/21 5/12
 12/21 29/1 29/1 29/4 29/12
 29/13 30/25 31/8 31/19 31/25
 32/3 89/19
disease [1]   89/6
distinct [1]   90/20
distinctly [1]   44/15
distributed [1]   46/6
distributing [1]   51/4
DISTRICT [3]   1/2 1/3 130/1
diversity [2]   129/19 129/20
do [156]
Dock [3]   18/5 18/5 21/23
doctor's [1]   71/21
document [37]   31/12 45/7 45/12
 47/14 53/22 54/3 54/6 55/3
 55/19 55/21 58/7 58/22 59/4
 80/11 81/10 83/1 84/8 86/11
 86/23 118/5 121/25 122/9 122/17
 122/21 122/23 122/24 123/2
 123/10 123/12 123/20 124/19
 124/21 125/1 125/24 127/6 127/8
 135/25
documentation [2]   111/8 126/10
documenting [1]   94/23
documents [9]   1/19 27/20 29/8
 55/11 86/16 129/2 130/22 132/17
 138/7
does [18]   26/10 26/24 33/14
 44/9 58/7 58/16 70/25 85/10
 85/10 106/14 106/14 106/15
 106/21 106/22 106/23 107/13
 126/3 126/3
doesn't [6]   4/22 32/10 61/19
 101/24 134/5 134/5
doing [12]   5/22 15/1 20/13
 20/24 23/25 42/8 84/9 94/5 94/9
 112/24 118/7 134/23
dollars [8]   11/20 46/14 65/12
 65/19 65/19 93/13 95/24 129/13
domain [4]   41/18 41/23 42/4
 42/7
don't [98]   4/24 5/3 5/7 5/19
 5/22 9/13 13/3 13/24 21/7 21/11
 21/12 21/12 21/18 21/18 21/19
 21/19 21/20 22/21 23/4 24/13
 24/22 26/25 28/11 28/12 28/14
 28/14 30/7 31/15 31/19 35/21
 39/10 42/16 42/24 44/12 44/15
 47/12 47/15 47/18 47/21 51/2

# D

**don't... [58]** 51/22 56/2 57/21
58/21 59/1 59/2 59/3 59/20
61/11 63/1 63/15 66/19 68/25
70/9 70/21 74/6 74/8 75/17
75/20 78/22 79/6 79/10 79/23
79/25 81/21 81/25 82/19 82/21
84/8 84/21 85/21 89/14 90/20
92/9 92/12 97/5 98/11 101/9
101/10 101/10 108/22 112/11
112/23 114/12 114/17 117/4
120/8 121/5 121/9 126/10 129/2
131/24 133/12 133/24 134/12
135/3 137/16 138/24
**done [6]** 38/5 58/10 80/2 80/4
97/21 101/17
**door [1]** 60/21
**down [11]** 15/9 24/5 31/23 32/24
44/16 46/21 74/23 86/2 87/20
90/17 99/10
**downtime [1]** 90/14
**Dr [1]** 25/22
**Dr. [45]** 10/21 10/23 11/3 11/5
11/16 16/12 16/19 20/24 25/22
26/12 52/23 57/18 62/9 62/10
62/13 63/14 63/18 63/24 64/3
73/10 73/16 73/17 74/2 74/18
74/23 74/23 75/2 76/4 77/11
77/20 78/5 78/16 79/1 80/10
80/14 80/18 81/21 81/25 82/17
85/1 85/6 99/21 120/19 120/25
127/21
**Dr. Craig [5]** 11/16 16/12 52/23
120/19 120/25
**Dr. Wright [33]** 10/21 10/23
11/3 11/5 16/19 20/24 57/18
62/9 62/10 62/13 63/14 63/18
63/24 64/3 73/10 73/16 73/17
74/2 74/18 76/4 77/11 77/20
78/5 79/1 80/14 80/18 81/21
81/25 82/17 85/1 85/6 99/21
127/21
**Dr. Wright's [7]** 25/22 26/12
74/23 74/23 75/2 78/16 80/10
**drive [2]** 62/16 63/4
**drives [2]** 38/9 39/22
**driving [1]** 94/23
**due [2]** 109/23 135/2
**duly [3]** 8/9 34/11 102/24
**duplicative [1]** 45/15
**during [19]** 11/7 11/7 11/11
11/11 11/14 42/14 52/14 52/16
52/19 52/22 63/16 63/20 63/23
68/25 74/7 109/12 114/14 120/14
129/7
**duties [1]** 110/4
**duty [1]** 110/1

# E

**each [11]** 43/5 43/9 43/9 43/9
44/21 46/1 46/3 100/11 113/12
116/20 117/16
**earlier [5]** 6/3 60/22 92/4
113/24 121/20
**earliest [1]** 48/11
**early [8]** 4/17 6/2 35/14 35/15
41/11 136/16 136/16 136/17
**eat [1]** 37/5
**eating [2]** 18/16 18/16
**edit [1]** 14/15
**editor [1]** 92/14
**education [2]** 35/11 106/24

**educational [3]** 35/1 35/9 107/7
108/2
**efficacy [1]** 63/3
**effort [1]** 121/14
**either [12]** 11/16 13/4 41/4
52/23 77/5 82/23 87/15 123/16
123/17 125/22 128/1 139/22
**elect [1]** 50/11
**elected [1]** 50/11
**Eleventh [1]** 131/1
**else [5]** 13/4 21/7 86/10 115/11
127/18
**email [58]** 12/12 12/15 12/18
13/13 15/9 15/10 15/11 27/1
29/5 29/7 29/18 29/24 31/23
36/8 44/3 47/19 47/19 47/22
48/11 48/12 49/25 50/2 50/7
50/8 53/4 53/5 53/9 56/5 56/14
58/3 58/5 58/9 58/16 60/1 67/2
73/1 73/5 74/15 75/18 75/24
75/24 76/2 76/4 77/1 77/2 77/10
77/20 78/2 78/15 79/1 79/24
81/17 83/3 83/10 83/20 118/10
118/15 119/9
**emailed [8]** 15/16 72/19 73/23
73/25 74/2 82/1 83/12 89/9
**emails [7]** 47/18 53/7 73/20
74/5 74/7 75/16 85/7
**EnCase [1]** 40/2
**enclosing [1]** 138/8
**end [4]** 5/5 6/16 95/21 102/1
**ending [4]** 6/2 120/15 120/24
136/16
**enforcement [1]** 36/16
**engage [3]** 106/19 112/20 116/23
**engaged [4]** 106/9 117/14 119/20
120/6
**engagement [5]** 41/4 42/22 42/23
43/4 112/21
**engagements [6]** 38/1 40/7 42/15
44/10 44/18 109/24
**enjoined [1]** 67/18
**enough [4]** 7/18 7/19 81/24
139/19
**ensure [3]** 59/22 111/15 112/9
**entered [1]** 92/20
**entire [3]** 11/8 11/11 11/14
**entitled [1]** 141/5
**entity [2]** 41/11 42/20
**envelope [3]** 54/9 80/14 80/25
**environment [2]** 38/5 38/14
**equally [1]** 45/23
**ESI [1]** 78/12
**ESQ [10]** 1/17 1/19 1/20 1/22
1/23 2/4 2/7 2/7 2/8 2/8
**essentially [1]** 90/10
**establish [1]** 134/25
**establishing [1]** 22/13
**estate [2]** 84/19 138/9
**estimate [1]** 48/24
**et [1]** 1/5
**even [16]** 25/5 37/10 45/1 50/10
81/21 81/21 84/24 89/2 89/7
89/8 90/6 98/22 128/22 130/14
134/13 134/13
**evening [4]** 70/3 135/11 137/8
140/17
**event [5]** 30/2 30/14 92/3 92/7
92/8
**events [2]** 30/1 30/25
**eventually [6]** 73/25 74/4 78/6
85/1 85/2 92/20
**ever [57]** 10/2 10/20 10/21

10/23 11/8 11/12 11/15 11/19
27/23 28/7 29/20 33/1 38/12
39/17 52/16 52/19 52/22 53/9
63/13 63/16 63/20 63/23 64/3
64/18 64/24 65/2 65/5 65/6 65/8
65/11 68/2 68/6 76/22 76/23
79/12 85/22 85/22 85/22 98/6
98/9 98/13 98/16 119/16 120/18
120/18 126/14 130/17 130/17
130/17 131/21 131/22 133/2
**every [4]** 19/14 114/23 115/3
132/25
**everybody [3]** 12/7 88/22 100/14
**everybody's [2]** 101/2 101/7
**everyone [3]** 7/25 29/14 127/18
**everything [7]** 13/25 14/16
20/14 21/20 137/6 140/10 140/13
**EVID [1]** 3/12
**evidence [36]** 8/25 11/22 12/5
23/13 23/18 29/19 43/12 43/13
43/18 43/21 45/5 47/13 48/1
48/5 48/6 53/15 53/18 55/14
56/10 56/11 59/11 59/12 59/20
60/1 60/2 67/5 74/12 75/10 81/1
81/2 86/4 117/20 117/21 122/1
122/23 128/22
**exact [2]** 36/24 37/1
**exactly [5]** 10/7 10/8 50/9
79/23 106/15
**exam [7]** 108/11 108/14 108/14
108/16 108/17 108/20 108/21
**examination [9]** 5/22 8/10 17/8
17/10 20/16 34/21 68/17 72/11
103/8
**examiner [1]** 43/10
**example [1]** 30/2
**exceedingly [1]** 88/10
**except [1]** 61/6
**excepting [1]** 85/6
**exception [4]** 113/14 131/4
133/18 134/11
**exceptions [1]** 130/5
**exchanged [2]** 67/1 129/3
**exchanging [2]** 116/24 117/14
**excited [3]** 41/12 41/14 41/15
**excitement [1]** 42/6
**excuse [3]** 4/17 92/2 118/19
**excused [4]** 33/19 33/24 99/13
99/18
**exhibit [17]** 10/5 27/10 47/10
48/6 54/23 55/17 56/11 57/25
59/10 59/12 60/11 61/25 69/16
117/21 122/25 125/14 130/23
**EXHIBITS [1]** 3/12
**existed [1]** 97/15
**expand [1]** 127/8
**expected [2]** 19/8 48/20
**Expense [1]** 126/24
**expenses [12]** 46/8 46/11 46/15
49/7 49/24 111/9 123/17 123/18
124/15 125/22 126/15 127/5
**experience [1]** 107/5
**expert [1]** 44/6
**explain [1]** 29/7
**explanation [2]** 49/6 49/6
**extension [1]** 118/20
**extensive [1]** 108/20
**extent [21]** 4/18 5/6 25/10 67/8
67/12 67/15 80/1 115/25 116/11
117/8 119/23 124/21 124/25
125/5 125/25 131/18 132/5
132/14 136/21 140/6 140/10

**E**

extraction [2]   92/3 92/6
extremely [1]   88/1

**F**

F.3d [1]   131/2
facilitate [1]   92/6
facility [3]   89/16 89/17 89/18
fact [15]   6/24 14/17 19/23
  19/25 21/10 31/9 56/14 59/3
  76/16 88/8 92/12 128/2 128/11
  133/2 134/25
factor [1]   50/5
facts [1]   128/8
factual [1]   17/1
fails [1]   134/4
failure [2]   133/16 133/17
fair [19]   15/2 16/21 18/18
  20/18 29/25 37/10 37/13 40/5
  40/11 57/9 61/22 61/22 62/19
  64/11 74/10 75/22 85/15 111/16
  115/4
fairly [1]   39/2
faith [1]   24/11
fallacy [2]   62/20 62/25
false [1]   13/18
familiar [3]   87/15 87/18 91/15
familiarity [1]   110/10
far [2]   5/14 38/16
Fargo [1]   131/3
fashion [1]   95/5
favorable [2]   23/16 24/12
FBI [2]   36/14 36/15
FBI-sponsored [1]   36/15
FBI/InfraGard [1]   36/14
February [6]   40/24 45/17 76/1
  78/2 78/17 83/12
February 12th [1]   78/2
February 16th [1]   78/17
February 2013 [1]   45/17
February 2014 [1]   76/1
federal [12]   6/21 7/9 112/9
  112/11 113/11 114/15 114/23
  114/24 115/8 116/8 116/20 127/4
fee [2]   41/6 44/19
feedback [5]   101/8 101/20 102/5
  102/9 104/2
feel [6]   34/18 60/6 60/17 61/17
  62/1 88/22
feels [1]   60/5
fees [3]   43/4 43/6 48/14
fell [1]   108/17
felt [2]   72/22 81/23
few [2]   73/20 118/25
field [2]   21/5 107/24
fifth [1]   71/7
figure [5]   124/13 124/14 129/13
  130/10 130/11
figures [1]   123/16
file [3]   51/5 135/9 139/19
filed [8]   82/14 82/18 82/23
  118/20 127/4 137/14 137/17
  139/21
files [1]   79/24
filing [3]   50/24 112/8 112/10
final [1]   71/8
finally [2]   85/11 85/12
financial [11]   18/19 64/6 64/8
  95/21 96/2 97/12 97/15 106/17
  106/18 106/19 108/9
find [9]   64/24 65/2 65/2 65/5
  78/7 79/22 80/3 83/16 83/24

finding [1]   80/7
fine [2]   128/20 131/13
finish [9]   68/23 70/7 70/9
  70/22 71/4 121/5 121/9 121/12
  136/22
finished [4]   17/5 68/13 70/16
  121/7
finishing [1]   118/25
firm [8]   53/3 70/19 107/5 108/3
  109/11 137/24 138/1 138/5
firm's [1]   25/3
first [31]   7/19 9/4 18/4 36/18
  36/20 36/23 45/22 47/19 48/13
  48/14 48/15 60/25 73/20 74/19
  80/24 81/10 101/17 104/22
  104/25 105/16 106/8 106/11
  106/11 108/24 109/3 112/20
  123/11 123/12 124/10 124/12
  124/18
firsthand [2]   13/3 17/1
FIU [1]   36/11
five [6]   28/22 28/23 68/18
  68/20 71/3 121/4
flag [3]   4/8 4/14 4/18
flat [1]   44/19
flexibilities [1]   50/19
flexibility [2]   50/16 50/24
FLEXNER [1]   1/21 2/2
Floor [1]   2/3
FLORIDA [19]   1/3 1/10 1/16 1/22
  2/6 4/14 36/11 50/20 51/12 54/8
  56/20 107/8 107/10 107/14
  110/17 110/23 129/20 132/2
  138/12
Florida's [1]   129/22
focus [4]   94/20 97/20 97/21
  124/3
focused [1]   52/14
folded [1]   36/24
folks [1]   44/4
following [6]   1/24 22/19 71/17
  73/8 127/15 137/1
follows [3]   8/9 34/12 102/25
font [1]   87/10
force [1]   94/23
foreclosure [1]   65/2
foregoing [1]   141/4
forensic [3]   35/12 40/2 88/9
forensically [1]   38/16
forensics [38]   35/17 37/7 40/21
  40/22 41/24 42/14 42/19 44/21
  45/20 45/22 45/25 46/2 46/5
  47/1 51/5 51/11 56/21 57/2 57/8
  57/10 57/15 61/8 66/12 67/9
  67/9 67/12 67/15 67/17 68/9
  92/21 93/19 94/23 131/12 131/14
  132/10 132/11 132/14 132/15
Forensics' [1]   89/23
forget [2]   65/18 86/24
forgot [1]   118/20
form [2]   91/17 95/5
formal [4]   35/11 92/20 93/18
  94/2
formalities [1]   46/24
formally [1]   41/10
formed [3]   11/15 42/2 43/2
former [1]   61/7
forms [1]   116/14
forth [3]   46/8 129/22 138/11
forward [4]   22/18 22/18 34/5
  127/13
found [5]   29/18 41/20 41/23
  42/4 95/20

foundation [7]   16/3 16/8 48/2
  48/21 79/20 131/18 139/7
four [9]   28/22 28/23 71/2
  107/14 107/15 107/20 107/22
  108/21 128/25
four-part [1]   108/21
four-year [2]   107/14 107/15
fourth [1]   12/19
Francisco [1]   2/3
Frank [2]   108/5 109/5
free [2]   140/5 140/7
FREEDMAN [7]   1/15 1/17 1/18
  72/8 72/10 72/14 85/14
fresher [1]   31/1
Friday [1]   71/9
friend [7]   9/12 9/13 30/7 88/22
  95/13 103/17 131/22
friendly [3]   37/2 105/5 105/6
friends [9]   9/14 18/24 45/1
  72/20 72/23 83/7 88/19 88/20
  88/21 90/2 104/16 105/5 105/17
  109/13 109/15 131/19 131/22
friendship [12]   18/9 18/12 36/5
  36/21 37/3 37/24 44/25 104/17
  105/7 105/16 105/21 132/6
frivolous [2]   138/16 138/24
front [6]   75/13 100/21 128/8
  128/17 128/22 137/19
fulfill [2]   40/6 110/4
full [4]   35/4 35/7 70/23 130/22
fully [2]   34/18 34/18
funds [1]   97/18
funnel [1]   42/19
further [6]   8/9 17/6 30/20 33/8
  68/14 99/3

**G**

Gables [1]   2/6
game [1]   105/10
gap [2]   74/4 74/9
Garcia [1]   44/7
gave [3]   23/16 78/20 90/6
gazillion [1]   65/12
general [6]   29/25 29/25 110/1
  113/25 126/7 139/7
generally [3]   55/11 104/21
  115/12
generated [1]   42/18
generating [1]   42/11
generation [1]   41/8
gentleman [1]   135/23
gentlemen [6]   7/24 33/13 69/2
  72/6 99/7 136/13
genuinely [1]   42/6
get [27]   5/3 8/1 17/20 27/23
  30/20 30/20 38/21 39/4 60/21
  65/11 95/25 97/8 101/8 101/17
  102/4 105/9 107/13 111/25
  113/25 123/10 128/8 132/5
  132/14 132/19 134/6 134/19
  135/25
gets [1]   124/22
getting [7]   17/19 52/9 62/8
  104/2 113/23 119/6 121/6
GICSR [4]   78/21 79/2 79/11
  79/12
give [10]   33/16 39/19 57/22
  65/8 99/10 100/7 114/12 115/7
  135/12 137/3
given [4]   5/12 108/22 130/21
  130/22
giving [2]   24/12 116/22
go [46]   4/9 8/12 8/13 15/9

**G**

**go... [42]** 21/24 24/7 27/10
27/20 32/14 32/23 34/16 37/5
45/5 45/6 45/18 46/10 46/14
47/18 47/18 48/7 49/1 49/22
50/7 55/9 55/13 56/17 57/5 67/4
68/24 69/6 69/25 70/3 75/11
80/24 86/3 87/1 105/12 123/11
124/11 128/24 128/25 129/2
131/5 137/12 139/11 140/6
**gobble [5]** 9/5 9/5 9/5 9/7 9/7
**goes [10]** 7/7 39/16 44/7 111/23
116/9 119/24 129/4 129/5 130/11
140/7
**going [56]** 4/12 4/23 5/3 5/5
5/11 5/15 6/2 6/23 10/5 18/15
24/1 24/3 24/4 30/11 39/22
43/17 45/4 46/8 47/12 49/7
52/13 53/14 56/23 58/11 59/3
60/18 61/12 61/23 63/1 70/7
70/9 70/15 70/22 101/8 102/4
102/7 102/15 102/17 103/19
104/2 104/5 104/6 117/23 118/9
118/14 121/11 123/23 124/21
127/8 131/15 132/14 134/20
134/21 136/16 139/4 139/7
**gone [1]** 56/13
**good [23]** 17/12 17/13 17/14
17/15 24/11 27/16 34/3 34/4
34/23 34/25 72/13 72/14 88/20
94/24 95/9 95/13 96/2 101/25
103/10 103/11 121/6 136/5
140/16
**good-faith [1]** 24/11
**got [8]** 12/24 30/9 34/2 54/10
55/7 73/8 92/10 137/19
**gotten [1]** 38/3
**government [1]** 112/9
**grasp [1]** 50/23
**great [5]** 18/24 37/5 88/2 92/11
137/25
**gross [8]** 46/13 46/14 48/20
49/21 122/12 122/13 122/14
123/15
**ground [2]** 76/19 138/15
**group [2]** 39/8
**guess [6]** 52/9 58/8 74/24 105/4
110/24 120/8
**guidance [2]** 131/8 137/3
**guidelines [1]** 34/17
**guy [7]** 18/24 19/2 19/2 19/4
21/20 87/24 93/22
**guys [2]** 18/13 18/15

**H**

**had [120]** 7/25 9/24 9/24 10/2
10/12 11/2 11/15 11/19 13/16
13/16 14/1 14/1 14/13 16/2
16/12 18/1 18/1 19/20 20/24
23/11 23/11 24/4 25/21 25/22
26/6 28/11 29/4 30/4 30/4 30/9
30/17 30/25 31/8 32/2 35/5
35/23 36/8 36/23 39/3 39/5 40/3
40/7 40/25 40/25 40/25 41/18
41/23 42/14 42/15 46/4 46/24
47/6 51/3 52/23 53/2 56/15
58/10 59/17 62/17 63/11 63/16
64/3 65/18 65/18 65/19 65/19
67/1 67/1 67/10 68/6 74/16 76/4
77/11 77/21 78/12 79/12 79/13
79/25 81/22 82/1 82/1 82/18
83/3 83/5 83/12 83/25 84/2 84/5

84/12 84/16 85/14 86/18 88/2
88/22 88/24 89/9 89/11 89/15
90/16 90/21 93/18 94/2 94/5
94/9 94/22 96/4 97/17 104/16
107/4 107/18 119/10 120/19
120/25 127/21 129/17 132/13
133/3 135/19 136/24 139/5
**half [4]** 22/2 24/6 26/9 76/1
**Halloween [1]** 118/16
**hand [11]** 33/15 34/8 34/9 86/7
87/1 87/9 87/15 87/17 96/14
99/10 102/20
**hands [3]** 14/25 33/18 99/12
**hands-on-the-keyboard [1]** 14/25
**handshake [2]** 94/6 94/10
**handwriting [1]** 54/3
**hanging [1]** 18/15
**happen [2]** 14/15 36/7
**happened [2]** 22/24 52/14
**happens [1]** 23/6
**happy [3]** 9/5 59/5 61/13
**hard [9]** 38/9 39/22 45/9 60/4
62/16 63/4 86/23 90/25 91/1
**harvested [1]** 38/16
**has [22]** 6/3 7/17 45/14 61/19
79/14 79/19 81/15 99/9 100/14
101/9 101/10 101/21 117/24
118/5 122/1 127/19 133/14
133/15 133/15 133/17 135/13
137/17
**have [168]**
**haven't [2]** 24/25 87/15
**having [7]** 5/5 8/8 31/19 31/25
34/11 102/24 131/19
**hazier [1]** 30/21
**he [229]**
**he's [21]** 12/1 12/1 19/4 21/19
24/3 24/12 24/19 25/2 39/9 61/8
74/18 74/19 92/14 103/19 104/5
104/6 119/19 120/9 120/9 127/25
139/7
**health [1]** 96/2
**hear [10]** 62/24 63/8 72/16
73/21 94/7 103/19 104/6 104/9
104/11 138/20
**heard [23]** 4/4 7/23 14/2 14/16
22/19 23/5 23/6 25/13 32/15
32/16 35/23 62/24 69/5 72/4
75/15 79/12 84/2 108/19 108/20
127/15 135/17 137/11 138/25
**hearing [1]** 121/14
**heart [2]** 130/11 131/5
**held [2]** 35/24 109/4
**help [11]** 38/11 39/5 39/18
39/24 40/5 44/10 85/10 95/19
95/20 95/21 97/16
**helped [2]** 27/8 103/21
**helpful [4]** 111/11 124/8 125/4
139/17
**helping [1]** 38/21
**her [2]** 6/14 79/10
**here [29]** 8/21 12/12 29/7 31/18
32/3 34/5 34/15 36/12 51/25
58/24 60/7 80/10 89/17 101/3
101/25 121/6 124/7 127/24
129/25 130/8 130/16 131/17
132/13 133/22 134/17 135/11
138/16 140/4 140/13
**here's [8]** 23/15 23/21 23/25
27/15 27/19 27/19 52/9 103/18
**hereby [1]** 138/10
**Hi [4]** 5/2 34/3 48/11 114/5
**High [1]** 118/17

**highlight [2]** 8/14 118/13
**highly [3]** 36/3 96/8 96/8
**him [107]** 10/25 11/8 11/12
11/15 15/15 15/16 15/22 16/13
19/7 19/7 19/11 19/21 19/25
23/2 23/4 23/4 23/5 23/5 23/6
24/19 35/23 35/23 35/25 36/2
36/18 36/20 36/23 37/4 37/8
37/10 37/13 37/24 38/5 38/7
38/11 38/21 38/23 39/1 39/10
39/13 39/18 40/5 41/2 42/4
44/10 45/1 50/4 51/23 51/23
52/2 52/5 52/7 52/11 53/1 53/2
64/4 65/8 66/16 66/25 67/1
73/20 73/21 73/24 82/25 85/22
85/22 85/23 88/14 88/16 89/3
89/6 89/7 89/9 89/11 89/19
90/10 92/10 93/1 93/3 94/3
95/15 96/9 97/4 98/7 101/14
101/18 103/21 104/15 104/20
104/25 105/2 105/5 105/8 105/9
105/16 117/24 121/6 121/12
122/25 123/7 127/25 130/9
130/19 131/23 135/19 135/20
137/22
**himself [2]** 97/17 104/18
**his [86]** 4/16 9/12 9/13 9/14
9/25 10/2 11/7 11/11 14/14
14/15 19/20 19/23 20/2 24/7
24/19 35/3 36/25 38/3 38/11
38/12 39/3 39/5 39/8 39/16
39/24 40/6 52/14 56/5 63/16
63/20 63/23 64/18 64/20 64/21
64/22 64/24 65/6 65/8 65/20
72/20 83/8 84/18 86/19 87/17
88/8 88/22 90/6 90/9 91/11
91/12 91/14 91/19 92/2 94/1
95/13 95/21 96/2 96/9 96/11
96/11 96/14 96/15 101/24 103/21
104/17 105/9 105/19 106/2
112/19 113/7 113/8 113/11
114/14 114/15 114/22 114/24
115/8 116/8 116/25 117/15 119/7
119/18 120/6 120/10 125/12
131/21
**historical [1]** 111/13
**hit [1]** 14/2
**hold [6]** 43/19 43/20 103/25
103/25 104/1 132/8
**holdup [1]** 118/19
**HOLTZMAN [1]** 2/4
**home [6]** 30/9 38/23 39/1 39/2
39/5 70/3
**Honest [2]** 19/2 19/3
**honestly [1]** 70/11
**honor [118]** 4/7 4/22 5/16 5/21
6/6 6/10 6/11 6/13 6/17 6/25
12/2 17/3 17/6 22/16 22/17
24/10 25/5 33/5 33/11 33/20
33/22 34/20 47/25 48/2 53/17
54/15 56/7 56/9 57/12 58/19
58/21 59/5 59/13 59/16 60/13
60/13 60/19 60/20 61/6 62/2
62/21 66/17 68/11 68/14 68/18
69/17 70/6 70/14 70/15 71/3
71/7 71/14 71/25 76/9 81/3 87/6
96/11 96/24 98/25 99/3 99/6
99/15 99/17 99/21 99/24 100/8
100/18 100/20 101/12 101/20
102/14 112/3 113/24 115/16
116/4 117/2 119/12 119/22 121/3
123/3 123/11 123/24 124/2 124/5

## H

**honor...** [34]  124/11 124/12
124/17 124/20 124/24 125/17
126/19 127/7 127/11 127/20
128/6 128/13 128/16 130/13
131/10 132/1 132/7 134/9 134/20
134/22 135/2 135/8 135/14 136/6
137/16 138/13 138/17 138/19
139/2 139/2 139/11 139/15 140/9
140/16
**honorable** [4]  1/4 96/6 96/8
98/11
**hope** [1]  5/18
**hopefully** [1]  6/15
**hospital** [17]  20/1 20/2 40/25
41/8 51/19 51/24 64/21 88/24
89/2 89/5 90/4 90/6 90/8 90/10
90/12 90/22 91/3
**hospitalization** [1]  19/15
**hospitalized** [1]  51/17
**host** [1]  101/13
**hour** [4]  24/6 26/9 44/18 44/21
**hours** [2]  71/8 118/24
**house** [5]  38/13 38/13 39/18
65/3 91/12
**how** [37]  4/24 5/14 9/16 36/7
36/20 37/8 41/22 42/4 46/8 49/6
49/21 51/2 51/21 53/1 53/2
54/10 55/10 63/4 70/4 70/12
70/25 89/13 100/10 103/15
103/15 103/16 104/14 104/25
105/2 106/5 106/9 107/13 108/18
109/1 119/23 134/19 139/7
**However** [1]  118/19
**hugely** [1]  30/14
**huh** [3]  30/6 32/17 128/10
**hundred** [1]  46/14
**hundreds** [3]  11/19 65/18 65/19

## I

**I'd** [11]  27/15 37/9 56/7 58/19
68/22 87/22 88/12 121/8 121/13
121/18 124/1
**I'll** [35]  5/21 7/6 10/6 13/1
16/15 16/25 21/15 23/18 24/7
28/20 31/13 37/18 40/10 40/17
46/10 49/16 54/19 64/14 66/2
66/2 66/8 71/15 75/23 87/7 92/1
110/8 118/11 120/12 122/1
136/17 137/8 138/14 140/4 140/4
140/14
**I'm** [87]  5/14 6/7 6/24 8/5
23/8 23/25 24/4 25/25 29/16
31/22 32/2 32/2 32/5 37/19
43/17 43/22 45/4 47/12 49/14
50/16 52/9 52/13 52/13 53/14
53/17 54/10 54/15 55/25 58/8
58/11 59/3 60/16 63/8 63/9 66/6
66/23 67/5 73/11 74/6 82/1
85/14 87/15 87/18 94/7 94/20
97/5 97/6 99/12 100/1 100/8
101/17 102/7 102/15 103/24
103/25 106/4 107/1 110/6 113/2
113/19 114/18 115/16 117/20
117/22 118/7 118/13 119/15
119/16 119/21 123/1 123/3
123/23 124/18 130/14 130/14
133/14 134/16 134/20 135/23
138/18 138/22 139/2
**I've** [17]  6/1 6/14 15/15 35/14
50/4 56/13 73/23 73/23 84/7

**96/3 97/11 97/17 108/19 108/19**
**ID** [1]  100/15
**idea** [6]  14/13 23/11 28/12 84/5
96/4 138/15
**IDEN** [1]  3/12
**identification** [3]  47/10 55/17
57/25
**identified** [1]  42/8
**ifs** [1]  97/14
**ignore** [1]  84/8
**ignored** [1]  55/12
**illness** [1]  51/15
**imaged** [1]  38/16
**imagine** [1]  61/14
**immediately** [3]  21/24 41/24
42/1
**impeach** [1]  23/7
**implicated** [1]  66/19
**Importance** [1]  118/17
**important** [12]  11/25 51/7 51/8
55/6 55/12 81/24 84/6 84/6 84/7
111/19 111/20 112/6
**in-laws** [2]  105/4 105/8
**inappropriate** [4]  22/17 25/7
127/9 132/6
**inartful** [1]  31/7
**inbox** [1]  73/14
**include** [2]  45/19 106/21
**included** [5]  59/23 60/10 89/20
89/23 90/1
**including** [3]  61/3 110/25
118/11
**income** [16]  103/21 106/2 106/18
108/9 111/8 111/9 112/11 122/8
122/11 122/12 122/12 122/13
122/14 122/15 123/15 124/13
**indeed** [1]  12/22
**independent** [2]  109/21 137/5
**indication** [1]  136/22
**individual** [3]  39/7 46/1 49/22
**individuals** [5]  36/15 49/22
72/21 73/1 102/18
**Industries** [1]  131/2
**industry** [2]  106/19 110/11
**infectious** [1]  89/5
**inference** [1]  24/18
**Info** [3]  54/24 77/22 82/9
**inform** [2]  44/5 72/21
**information** [52]  6/15 12/20
12/23 12/24 13/2 13/3 13/8 14/6
14/11 14/11 20/12 27/21 27/25
28/9 28/13 28/24 29/9 39/8 51/4
59/17 59/18 59/22 60/2 60/5
60/6 62/1 78/6 80/7 85/12 86/18
92/4 92/7 114/13 115/7 115/11
115/13 116/6 116/12 116/14
116/24 117/15 119/6 120/10
126/8 127/24 127/25 128/24
130/10 130/18 131/17 132/23
139/10
**InfraGard** [1]  36/14
**initial** [1]  75/16
**initially** [3]  38/2 38/2 51/24
**injured** [1]  89/16
**injury** [2]  52/1 89/15
**inquire** [3]  6/1 6/14 132/23
**inquiries** [3]  41/1 77/11 77/21
**inquiring** [1]  5/11
**inside** [1]  64/22
**insistence** [2]  94/13 94/14
**instance** [1]  56/3
**Insurance** [1]  131/1

**intellectual** [1]  16/19 46/19
**intelligent** [1]  87/25
**intend** [4]  4/20 5/21 5/22 138/6
**interest** [3]  42/11 46/5 88/2
**interesting** [1]  36/23
**internal** [1]  50/21
**International** [1]  36/12
**internationally** [2]  88/8 88/11
**interpersonal** [1]  93/24
**interviewed** [1]  47/8
**interviewing** [1]  111/13
**introduce** [2]  8/5 59/24
**introduced** [1]  7/20
**introduction** [1]  116/3
**invade** [2]  5/22 114/19
**invading** [1]  128/14
**invent** [3]  11/17 52/24 63/17
**invented** [1]  24/24
**invest** [1]  63/17
**investments** [1]  44/24
**invitation** [2]  135/21 136/7
**invited** [1]  36/9
**invoke** [2]  4/20 139/8
**invoking** [1]  138/10
**involved** [7]  14/14 16/23 26/17
27/4 37/7 47/5 108/19
**involving** [3]  124/16 125/23
126/16
**IRA** [24]  1/5 9/25 10/3 12/24
13/4 13/13 13/16 15/12 15/14
15/20 15/21 16/2 16/6 28/12
29/3 66/3 66/25 68/8 85/3 85/3
85/13 85/19 130/3 138/1
**Ira's** [1]  15/11
**irrelevant** [1]  22/23
**is** [263]
**isn't** [16]  19/21 20/14 21/17
74/10 81/22 90/9 91/8 93/21
96/6 96/19 102/8 112/13 119/5
119/7 133/23 134/11
**issue** [10]  4/7 5/6 6/25 7/7
60/21 61/18 69/16 84/16 87/3
134/23
**issues** [6]  5/24 51/1 52/5 52/7
89/24 111/24
**it** [331]
**it's** [79]  5/7 5/9 18/5 18/6
18/6 18/18 22/23 24/18 24/21
24/23 24/24 24/24 25/1 25/7
25/8 25/9 25/9 25/11 27/7 30/14
31/4 31/4 32/8 41/10 41/10
43/21 44/5 44/13 45/5 45/9
47/21 47/21 48/13 50/22 51/9
53/15 53/18 55/10 57/7 60/4
67/5 68/18 68/21 69/20 70/21
70/24 74/10 74/24 75/2 77/1
81/2 81/5 81/12 85/15 85/17
86/23 87/18 87/18 91/17 92/11
95/23 95/23 101/13 101/22
102/11 107/18 108/20 112/13
115/19 116/11 117/3 123/6 127/9
128/5 129/24 130/25 133/9
133/22 134/16
**items** [1]  80/6
**its** [4]  43/7 67/19 67/19 116/2
**itself** [7]  31/12 122/22 123/20
124/21 125/1 125/25 127/6

## J

**Jackson** [1]  19/18
**James** [5]  1/25 7/17 7/22 141/11
141/12

**J**

January [3]  40/23 50/1 50/8
January 24th [2]  50/1 50/8
jar [1]  96/15
jobs [1]  38/3
Jodie [4]  39/9 39/9 39/12 39/17
JORGE [2]  2/7 8/5
Judge [8]  1/4 17/9 22/22 121/11
133/20 134/2 134/19 139/24
judge's [2]  104/1 104/6
judgment [1]  83/13
July [2]  82/14 82/18
jumped [1]  22/2
Junior [1]  107/18
jurors [6]  6/1 6/2 71/11 71/16
71/20 72/2
jury [38]  1/12 4/4 7/13 7/14
7/23 8/24 12/6 20/23 24/20
25/13 31/19 35/2 35/10 43/15
47/12 48/8 53/20 69/4 69/5
69/15 70/1 70/2 72/3 72/4 74/13
75/10 81/1 100/22 102/17 118/6
125/2 128/9 134/17 135/17
136/18 137/10 137/11 137/20
just [94]  4/7 4/14 4/18 5/18
6/17 6/18 6/21 7/3 7/19 7/19
7/20 8/5 8/5 14/2 17/19 18/8
20/4 21/11 22/7 22/7 22/13
24/14 24/15 27/1 27/11 27/24
28/1 28/6 30/5 32/14 32/24
33/15 33/15 35/3 36/25 37/2
38/7 38/11 38/24 39/20 41/4
43/17 43/19 49/17 55/15 56/13
57/23 58/22 58/25 59/14 60/20
65/23 69/24 69/24 70/9 70/21
74/8 77/21 81/6 84/6 85/18 86/5
89/20 90/1 94/1 99/9 99/10
100/7 100/8 100/20 101/1 101/5
101/18 102/7 102/10 104/4
105/15 108/23 110/13 114/6
114/12 114/15 114/21 115/18
118/7 118/25 123/6 127/23
132/13 132/19 136/7 139/4 140/9
140/13

**K**

K's [1]  83/13
K-u-h-a-r-c-i-k [1]  103/6
KASS [1]  2/8
keep [11]  9/16 19/8 44/21 46/23
56/23 57/2 57/2 76/16 93/1 93/3
104/2
kept [3]  57/11 76/5 77/7
key [1]  36/24
keyboard [2]  14/25 36/25
keyword [3]  42/10 78/24 80/4
keyword-searching [1]  42/10
keywords [3]  78/12 78/13 78/19
KIMON [3]  3/4 8/7 8/13
Kimon's [1]  13/14
kind [7]  7/18 7/19 19/4 21/20
39/1 126/5 139/18
KLEIMAN [128]  1/5 10/14 10/23
11/12 12/24 13/9 13/13 13/16
13/17 14/18 14/21 14/24 15/12
15/14 16/12 16/18 16/22 35/18
36/21 39/24 40/14 41/12 41/16
41/22 43/1 44/25 45/23 47/5
47/6 48/13 48/16 48/24 50/2
50/25 51/16 51/19 55/2 55/4
55/22 57/18 61/3 61/7 62/10
62/15 62/25 63/13 63/20 63/23

64/3 65/18 66/3 66/25 67/10
67/12 67/25 68/3 68/8 69/9 69/16
84/13 84/16 85/3 85/3 85/13
87/4 87/9 87/14 92/21 93/11
93/21 97/25 98/4 103/13 103/15
103/16 103/16 104/14 104/22
104/24 105/3 105/7 105/18
105/19 105/23 106/11 109/13
109/15 112/18 112/22 114/14
114/22 115/7 115/10 116/1 116/7
116/19 116/23 117/7 117/13
118/10 118/16 118/18 119/5
119/16 119/17 119/23 120/6
120/15 120/18 120/25 122/4
125/6 126/6 126/14 126/16
127/21 128/12 129/6 129/16
130/3 130/19 130/21 131/21
133/3 138/2 138/2 138/4 138/10
138/21
Kleiman's [20]  4/15 11/7 11/14
14/7 39/17 51/15 52/15 52/16
52/19 52/22 58/3 64/8 68/2 68/4
86/11 86/13 113/7 119/3 120/14
124/2
Klein [1]  129/16
knew [13]  11/8 11/11 11/15
20/16 47/8 77/16 83/7 84/17
88/14 95/15 97/15 98/4 104/15
know [119]  6/1 7/7 7/17 9/13
10/18 15/1 16/2 16/6 18/15 21/7
21/11 21/12 21/18 21/18 21/19
21/19 21/19 21/20 21/24 23/4
23/15 24/5 24/22 28/11 28/24
30/7 30/11 30/17 35/21 38/3
38/10 39/5 39/7 39/10 39/12
39/17 39/22 40/4 41/3 41/10
42/21 44/8 44/14 45/4 50/15
51/2 51/16 53/3 55/22 56/14
60/4 61/7 63/1 66/16 66/25 68/6
70/9 70/21 71/9 71/16 71/19
72/23 74/8 75/20 78/10 78/24
81/21 81/25 82/5 82/22 84/15
84/19 84/24 90/20 91/11 91/14
91/14 92/9 92/9 92/12 92/16
95/6 95/9 97/14 97/17 101/1
101/9 101/15 103/12 103/12
103/15 103/15 103/16 104/14
104/16 104/17 105/10 109/23
109/24 109/24 110/1 110/2 110/3
110/14 111/12 111/13 112/9
121/3 127/22 130/20 133/1
133/14 133/24 135/3 136/19
136/20 136/23 137/16 139/7
know-your-customer [2]  110/1
110/14
knowing [2]  41/24 60/17
knowledge [3]  16/22 17/1 115/5
known [3]  50/3 50/4 88/8
knows [3]  25/2 80/16 82/4
Kobza [4]  79/9 79/14 79/15
79/19
Kuharcik [82]  4/12 4/15 4/20
4/23 5/4 6/19 7/6 47/4 47/6
47/9 47/20 48/13 48/16 49/8
50/5 55/22 56/14 70/22 99/22
101/9 101/10 102/15 102/19
102/23 103/6 103/10 103/12
104/11 106/3 109/16 111/2
111/19 112/6 112/19 112/22
113/9 113/12 113/15 114/9
114/12 114/25 115/19 116/6
116/21 117/6 117/7 117/13
117/23 118/5 118/14 119/1

119/15 119/23 120/2 120/5
121/23 122/18 122/24 123/6
123/14 124/25 125/21 126/3
126/12 126/21 128/8 129/7 129/9
127/17 130/17 131/21 132/22
135/18 135/22 136/2 137/22
138/1 138/22
Kuharcik's [6]  55/24 58/5
134/13 135/10 137/14 137/16
KYLE [1]  1/19

**L**

labeled [1]  55/10
Lack [2]  16/3 16/8
ladies [6]  7/24 33/13 69/2 72/5
99/7 136/13
LAGOS [1]  1/20
laid [1]  94/17
laptop [3]  90/9 101/21 140/13
laptops [3]  20/5 20/7 100/12
large [1]  77/2
last [10]  17/20 19/15 24/7 45/6
74/18 74/19 75/11 79/10 86/3
113/14
lasted [1]  18/12
late [5]  104/15 104/22 104/23
105/16 105/19
later [8]  30/16 42/25 48/19
85/1 104/17 109/14 118/12
118/14
Laughter [1]  12/8
law [18]  4/14 36/16 51/9 53/3
112/12 112/13 128/6 128/16
128/21 129/10 129/20 130/25
132/3 133/21 135/10 135/12
138/5 139/20
laws [2]  105/4 105/8
lawsuit [5]  68/8 82/14 82/18
82/23 118/6
lawyer [3]  16/2 24/20 94/20
lawyers [5]  24/5 25/3 25/22
26/3 26/12
layman's [1]  50/19
lazy [2]  90/23 90/24
Leading [19]  12/25 13/10 14/8
15/4 16/14 16/24 37/17 40/9
40/16 49/9 57/12 62/21 64/13
65/14 66/5 66/7 110/5 110/7
113/1
learned [3]  14/16 137/6 137/7
least [6]  31/2 31/6 31/22 52/2
90/7 139/8
leave [3]  32/14 137/4 140/13
leaving [1]  21/23
led [1]  31/8
ledger [2]  126/5 126/7
left [4]  18/12 22/7 81/5 86/7
left-hand [1]  86/7
legal [12]  6/25 7/7 55/8 55/11
84/8 120/19 120/25 122/19
123/18 126/16 127/21 133/3
legs [2]  38/11 38/12
Leon [1]  2/6
less [1]  30/16
let [40]  5/25 7/17 10/20 12/17
12/18 17/19 30/2 30/2 34/7
43/11 43/11 43/19 49/25 53/24
54/23 56/14 59/25 71/8 71/10
71/15 71/19 72/22 74/1 101/14
110/18 101/18 102/20 104/13
110/13 112/18 113/19 114/21
115/18 119/12 123/14 123/14

**L**

**let...** **[4]**   129/21 130/25 134/16
136/20
**let's** **[25]**   7/13 27/23 28/19
28/22 32/23 47/17 50/7 50/9
53/20 57/23 58/11 59/22 68/24
72/1 74/11 86/3 87/1 104/7
114/8 121/16 127/14 127/14
132/18 132/18 135/9
**letter** **[6]**   82/1 137/19 137/21
138/14 139/21 139/22
**letterhead** **[1]**   81/12
**letting** **[2]**   55/22 82/22
**Liability** **[1]**   50/20
**license** **[1]**   109/3
**life** **[4]**   23/5 23/6 39/24 95/21
**lifetime** **[12]**   11/7 11/7 11/11
11/14 52/14 52/15 52/16 52/19
52/22 63/16 63/20 63/23
**light** **[1]**   70/21
**like** **[30]**   4/22 16/16 18/16
20/20 24/17 27/15 32/8 32/15
38/15 47/15 53/4 58/16 65/11
81/7 86/15 87/14 87/22 88/12
88/22 92/4 95/5 102/13 104/9
111/7 111/14 121/8 121/13
121/18 128/17 139/21
**liked** **[3]**   18/15 20/7 88/17
**likelihood** **[2]**   79/24 92/11
**likely** **[6]**   30/17 30/19 30/22
31/4 31/4 79/25
**limit** **[2]**   23/22 24/13
**limitations** **[1]**   39/6
**limited** **[3]**   38/19 50/20 138/11
**line** **[10]**   9/4 45/22 74/19
113/23 114/2 118/11 126/21
127/7 131/10 132/7
**lines** **[2]**   116/17 129/10
**list** **[2]**   36/1 131/2
**listening** **[1]**   117/5
**listing** **[4]**   55/10 82/11 85/12
85/20
**litigation** **[3]**   16/6 79/20 118/6
**little** **[12]**   7/4 27/24 45/18
50/22 51/14 87/22 112/18 115/6
118/12 134/16 136/15 140/7
**Liz** **[5]**   6/1 71/19 101/18 136/15
136/20
**LLC** **[19]**   40/21 40/22 41/24 42/2
42/19 43/2 45/23 46/2 50/11
50/22 54/25 56/21 57/8 57/10
66/12 92/21 93/19 95/5 95/10
**LLP** **[4]**   1/15 1/18 2/2 2/5
**locked** **[1]**   140/14
**log** **[3]**   92/3 100/2 100/9
**logged** **[2]**   101/9 101/10
**logging** **[3]**   99/25 100/18 101/3
**logistically** **[1]**   140/9
**logo** **[1]**   9/22
**logs** **[2]**   92/7 92/8
**long** **[14]**   14/14 74/10 83/5
85/15 88/14 88/16 88/17 89/13
105/18 106/5 106/9 107/13 109/1
132/23
**longer** **[1]**   18/13
**look** **[15]**   4/22 7/4 32/23 55/11
56/2 58/16 60/9 61/1 78/12
83/16 83/24 121/18 124/4 132/7
139/18
**looked** **[5]**   27/1 84/6 84/7 85/7
139/22
**looking** **[4]**   27/11 61/25 138/19

138/22
**loop** **[3]**   109/5 109/5 109/5
**loss** **[5]**   56/25 57/3 57/7 59/17
125/20
**losses** **[1]**   123/17
**lot** **[7]**   8/20 12/17 20/20 21/10
52/10 121/13 134/18
**lower** **[1]**   44/8
**lump** **[1]**   130/11
**lunch** **[2]**   8/1 129/17

**M**

**ma'am** **[2]**   69/22 121/24
**made** **[15]**   6/18 15/7 31/20 32/15
54/15 59/10 69/19 88/22 95/23
97/3 97/9 102/11 133/7 133/17
134/17
**mail** **[5]**   64/17 64/18 64/20
64/21 64/24
**mailbox** **[1]**   64/22
**mailed** **[1]**   82/1
**Mainly** **[1]**   108/9
**maintained** **[1]**   57/16
**make** **[14]**   7/4 30/2 45/8 58/25
61/2 71/8 85/19 96/20 102/8
114/6 114/8 115/18 118/8 127/23
**makes** **[1]**   128/1
**man** **[2]**   25/1 95/17
**managing** **[2]**   45/25 46/1
**manner** **[4]**   119/20 120/5 131/13
131/14
**many** **[7]**   51/21 63/1 63/1 63/4
70/25 124/7 133/15
**Maren** **[1]**   44/4
**MARIE** **[1]**   2/8
**marked** **[3]**   47/10 55/17 57/25
**market** **[1]**   93/12
**marking** **[1]**   86/18
**mask** **[4]**   22/21 34/19 127/17
127/19
**material** **[1]**   128/2
**matter** **[8]**   29/25 29/25 44/6
60/8 75/19 84/22 134/5 141/5
**matters** **[1]**   103/21
**may** **[22]**   15/9 17/3 22/6 23/19
25/14 33/5 37/20 53/19 59/14
60/9 60/13 60/21 64/16 66/17
68/13 96/24 96/25 116/6 120/2
125/3 130/22 136/1
**May 17th** **[1]**   15/9
**maybe** **[8]**   31/7 36/10 42/22 45/8
65/23 108/10 116/16 135/25
**MCGOVERN** **[7]**   2/8 70/4 104/3
114/4 125/3 129/12 134/21
**McGovern's** **[2]**   101/25 125/11
**me** **[61]**   4/17 10/20 12/17 12/18
13/3 17/19 17/20 21/23 25/25
29/17 30/2 30/2 30/24 31/6 34/7
36/9 40/3 43/11 43/11 43/19
49/25 50/18 53/24 54/23 56/24
57/22 60/1 65/24 68/20 71/10
72/16 74/1 77/8 83/23 85/6
87/18 92/2 102/10 102/13 102/20
104/11 104/13 105/9 110/13
112/18 113/19 114/13 114/21
115/18 118/13 118/20 119/12
122/17 122/18 123/14 123/14
129/21 130/25 134/16 136/20
137/20
**mean** **[13]**   13/8 13/23 23/5 32/10
38/12 45/21 53/2 55/25 56/2
56/2 66/18 106/14 138/13
**meaning** **[3]**   29/14 31/24 86/22

**meaningful** **[2]**   96/9 96/10
**meant** **[1]**   13/25
**medical** **[3]**   44/7 90/17 90/18
**meet** **[4]**   10/21 15/14 105/2
105/2
**meeting** **[11]**   24/4 24/19 24/25
25/3 25/21 25/22 26/6 26/12
26/23 27/3 100/14
**member** **[4]**   45/25 46/1 46/16
61/7
**members** **[4]**   46/16 61/7 61/9
102/17
**memorable** **[1]**   30/14
**memorialize** **[3]**   54/13 55/6
81/24
**memorialized** **[1]**   74/8
**memories** **[1]**   30/20
**memory** **[3]**   30/1 30/24 31/15
**mention** **[9]**   9/22 10/15 10/23
20/23 52/17 57/18 62/10 62/12
83/18
**mentioned** **[3]**   16/16 21/1 62/15
**mentioning** **[2]**   53/9 85/22
**Mesa** **[1]**   131/1
**message** **[1]**   53/5
**messages** **[1]**   8/12
**MESTRE** **[16]**   2/5 2/7 8/3 8/6
20/17 20/23 22/9 24/2 25/3
25/18 25/19 28/6 31/19 43/21
137/24 138/5
**met** **[21]**   15/15 17/24 18/4 23/4
24/8 26/1 26/9 35/18 35/23
36/18 36/20 36/23 37/24 67/1
104/20 104/22 104/25 105/8
105/16 105/18 106/11
**mete** **[1]**   61/15
**Miami** **[10]**   1/10 1/16 1/22 19/17
36/12 51/25 52/2 89/17 89/18
90/8
**Miami-Dade** **[1]**   36/12
**Michelle** **[1]**   133/17
**microphone** **[1]**   102/9
**mid** **[3]**   35/17 35/21 104/23
**mid-2000's** **[2]**   35/17 35/21
**might** **[14]**   5/12 60/12 60/12
78/6 105/9 105/10 110/11 111/11
114/17 116/15 117/2 119/13
125/9 137/17
**mike** **[1]**   104/1
**mill** **[1]**   20/4
**millions** **[3]**   11/19 65/18 95/24
**mind** **[2]**   31/1 86/24
**mine** **[5]**   11/16 52/23 63/17
76/24 103/17
**mined** **[3]**   52/20 63/21 76/14
**mining** **[2]**   11/12 16/23
**minute** **[4]**   57/22 69/2 69/8
134/6
**minutes** **[4]**   68/18 68/20 121/4
135/3
**Mischaracterizes** **[2]**   21/14
28/16
**misleading** **[1]**   95/1
**mistake** **[1]**   54/19
**mistaken** **[2]**   108/23 117/20
**moment** **[9]**   64/6 68/11 69/24
86/8 88/12 88/13 98/25 100/7
127/12
**Monday** **[3]**   70/16 71/5 73/7
**monetizing** **[1]**   67/18
**money** **[1]**   65/8
**monies** **[1]**   129/14

**M**

Montgomery [1]   2/3
month [2]   22/1 22/1
months [1]   76/1
mooted [1]   104/4
more [19]   7/4 25/8 25/12 28/1
  31/4 31/4 31/5 32/24 39/13 70/4
  70/12 70/25 87/15 108/22 121/4
  123/7 128/1 134/19 139/15
morning [9]   5/5 60/22 73/7
  73/14 118/24 136/2 137/8 140/2
  140/15
most [4]   30/19 30/22 37/6 44/19
mostly [1]   45/15
motives [1]   15/20
move [8]   10/17 42/12 47/25 56/7
  58/19 66/2 71/23 120/12
moved [3]   51/25 52/2 90/14
movie [1]   105/11
moving [3]   10/19 70/6 71/17
Mr [79]   5/3 8/3 8/13 9/17 11/25
  17/16 20/17 20/23 23/8 24/1
  25/15 25/19 28/6 31/18 34/17
  43/21 44/3 46/21 47/14 48/8
  49/2 49/4 53/25 56/2 56/18 58/2
  58/2 59/2 59/20 60/4 60/15
  61/15 61/24 61/25 62/5 68/16
  69/1 69/6 69/18 69/20 70/8 72/8
  72/9 72/13 72/14 72/19 74/15
  75/9 75/13 76/16 77/9 80/10
  81/5 85/14 86/10 87/3 87/22
  92/20 96/6 96/19 99/8 99/9
  99/11 99/13 101/23 120/14 121/7
  121/7 121/18 124/24 126/3
  126/12 129/16 132/13 132/22
  138/1 138/17 138/18 139/4
Mr. [128]   4/10 4/11 4/15 4/20
  4/23 5/4 6/19 7/6 10/5 12/10
  17/7 17/24 23/14 26/1 26/13
  26/13 33/8 33/12 33/14 33/18
  36/21 47/9 48/16 49/8 50/5
  56/14 61/3 61/7 69/18 70/22
  75/9 78/25 101/9 101/10 102/15
  102/19 103/10 103/12 104/11
  106/3 109/16 111/2 111/19 112/6
  112/19 112/22 112/22 113/9
  113/12 113/15 114/9 114/12
  114/22 114/25 115/7 115/10
  115/19 116/1 116/6 116/7 116/19
  116/21 116/23 117/6 117/7 117/7
  117/13 117/13 117/23 118/5
  118/14 118/18 119/1 119/3 119/5
  119/15 119/16 119/17 119/23
  119/23 120/2 120/5 120/6 120/12
  120/14 120/15 120/15 120/18
  120/25 121/10 121/19 121/23
  122/4 122/18 122/24 123/6
  123/14 124/2 124/25 125/3 125/6
  125/21 126/3 126/6 126/12
  126/16 126/21 128/8 128/12
  129/6 129/7 129/9 129/16 129/17
  130/17 130/21 131/21 132/22
  134/13 135/10 135/18 135/22
  136/2 137/14 137/16 137/22
  138/22 139/16
Mr. Andreou [10]   5/4 10/5 12/10
  17/7 17/24 23/14 33/8 33/12
  33/14 33/18
Mr. Carter [1]   75/9
Mr. David [1]   4/11
Mr. Kleiman [30]   36/21 61/3
  61/7 112/22 114/22 115/7 115/10

Mr. Kleiman's [3]   119/3 120/14
  124/2
Mr. Kuharcik [71]   4/15 4/20
  4/23 6/19 7/6 47/9 48/16 49/8
  50/5 56/14 70/22 101/9 101/10
  102/15 102/19 103/10 103/12
  104/11 106/3 109/16 111/2
  111/19 112/6 112/19 112/22
  113/9 113/12 113/15 114/9
  114/12 114/25 115/19 116/6
  116/21 117/6 117/7 117/13
  117/23 118/5 118/14 119/1
  119/15 119/23 120/2 120/5
  120/12 120/15 121/10 121/19
  121/23 122/18 122/24 123/6
  123/14 124/25 125/21 126/3
  126/12 126/21 128/8 129/7 129/9
  129/17 130/17 131/21 132/22
  135/18 135/22 136/2 137/22
  138/22
Mr. Kuharcik's [4]   134/13
  135/10 137/14 137/16
Mr. Paige [1]   78/25
Mr. Paschal [1]   26/13
Mr. Rivero [2]   26/1 26/13
Mr. Roche [4]   4/10 69/18 125/3
  139/16
Ms [6]   27/12 79/14 80/14 101/25
  114/4 114/4
Ms. [20]   22/11 27/13 28/2 70/4
  74/12 74/22 75/8 79/15 79/19
  80/22 81/9 86/1 86/25 87/5
  87/19 104/3 125/3 125/11 129/12
  134/21
Ms. Debra [1]   79/15
Ms. Kobza [1]   79/19
Ms. McGovern [5]   70/4 104/3
  125/3 129/12 134/21
Ms. McGovern's [1]   125/11
Ms. Quintero [1]   22/11
Ms. Vela [11]   27/13 28/2 74/12
  74/22 75/8 80/22 81/9 86/1
  86/25 87/5 87/19
much [8]   47/22 70/4 70/12 92/4
  95/5 105/17 134/19 136/11
multiple [4]   37/10 64/19 73/6
  108/18
mute [3]   101/3 101/7 102/1
muted [1]   104/4
my [52]   16/20 17/16 22/21 23/5
  23/6 23/6 26/9 29/1 29/23 33/6
  35/11 39/25 40/23 41/7 42/1
  44/14 50/23 50/23 54/7 65/11
  72/9 73/6 80/21 92/4 92/18 93/9
  93/21 93/21 97/11 98/12 101/21
  103/6 104/4 105/4 105/10 107/8
  109/11 109/22 115/5 117/13
  118/19 118/20 120/11 124/1
  124/1 124/17 124/19 125/17
  127/17 127/23 137/21 137/24
myself [4]   8/5 41/5 43/1 51/4

**N**

name [21]   7/20 14/13 17/16
  17/20 18/6 25/3 35/4 35/7 39/8
  39/16 41/18 41/23 42/1 42/5
  72/9 79/6 79/10 103/3 103/6

116/1 116/7 116/19 116/23 117/7
  119/17 119/23 120/6 120/15
  120/18 120/25 122/4 125/6 126/6
  126/16 128/12 129/6 129/16
Mr. Kleiman's [3]   119/3 120/14
  124/2
Mr. Kuharcik [71]   4/15 4/20

118/13 118/14
names [1]   78/19
narrow [1]   123/7
National [1]   131/1
naturalization [1]   140/3
nature [5]   35/25 41/4 114/1
  129/2 129/6
near [1]   90/10
necessarily [1]   32/10
necessary [5]   61/2 63/4 72/22
  111/15 117/5
need [23]   4/6 38/15 59/20 59/24
  70/13 70/20 71/22 101/2 101/5
  101/24 101/24 102/16 103/25
  104/1 110/2 110/3 111/5 111/7
  131/8 134/21 140/10 140/12
  140/13
needed [8]   38/4 39/24 64/22
  70/5 71/23 95/21 119/6 128/22
needs [2]   70/2 101/7
negative [1]   63/24
neighborhood [1]   64/22
neither [2]   18/19 50/18
net [5]   23/19 122/12 122/15
  123/15 124/13
networked [1]   39/3
networking [3]   39/8 88/5 88/6
networks [2]   91/6 91/10
never [33]   13/6 13/7 15/15
  16/16 19/11 19/11 23/4 23/4
  23/5 23/5 29/6 29/16 67/1 73/23
  73/23 76/17 77/8 80/7 84/2
  86/24 87/14 91/19 93/1 93/4
  93/7 93/9 95/23 96/14 96/21
  97/9 98/8 98/15 132/22
new [5]   1/19 1/19 81/6 81/12
  81/23
news [3]   14/2 72/20 81/23
next [26]   6/15 24/1 25/11 28/22
  33/25 48/21 49/1 49/2 49/25
  50/7 50/8 56/17 56/23 57/5
  70/11 71/23 73/4 73/13 75/15
  75/19 75/24 86/18 99/20 101/22
  109/2 123/10
nice [1]   140/17
niceties [1]   90/1
night [1]   140/16
nine [1]   76/1
no [99]   1/7 1/25 5/13 5/16 6/10
  9/21 9/23 10/1 10/4 10/16 10/22
  11/10 11/13 11/18 11/21 13/18
  14/13 14/20 14/23 16/20 16/21
  17/1 17/2 17/6 18/13 19/13
  23/11 23/11 27/24 27/24 28/12
  32/8 33/8 33/11 33/18 35/11
  44/13 52/18 52/21 52/25 53/8
  53/11 53/13 56/9 63/12 63/19
  63/22 64/5 68/3 68/5 68/10
  68/14 76/25 77/6 79/15 79/21
  80/5 80/23 82/21 82/24 83/2
  83/15 83/21 83/21 84/1 84/5
  84/12 85/15 86/5 86/5 86/5
  87/13 93/6 93/10 93/14 94/2
  94/4 94/4 94/4 94/22 99/3 99/6
  99/12 105/13 105/17 108/25
  111/3 112/23 117/9 118/19
  119/12 119/25 124/6 130/5 131/4
  139/1 139/15 140/12 141/12
nonstop [2]   118/24 119/19
normally [2]   68/19 140/10
north [1]   51/24
Northlake [4]   54/8 54/11 55/1

**N**

Northlake... **[1]** 84/13
not **[148]**
noted **[1]** 36/25
notes **[1]** 26/9
nothing **[5]** 63/11 77/16 80/4
84/12 84/17
notice **[7]** 55/10 55/10 82/11
84/2 84/5 84/10 138/9
notices **[2]** 64/25 65/2
notification **[4]** 72/22 82/17
82/19 82/25
notified **[1]** 73/16
November **[7]** 1/11 4/1 8/17 9/12
137/2 137/19 141/7
November 26th **[2]** 8/17 9/12
November 29th **[1]** 137/2
November 9th **[1]** 137/19
now **[37]** 10/18 12/23 15/9 15/20
18/23 20/11 20/12 25/21 27/10
29/15 29/24 30/16 31/5 42/17
50/1 51/14 52/13 60/12 60/16
62/9 68/20 68/22 70/21 72/16
77/1 97/20 100/18 100/25 102/1
106/6 107/19 118/7 118/15 121/8
133/9 134/16 137/20
number **[9]** 51/22 78/22 81/19
82/7 82/8 106/16 118/10 124/18
124/22
numbered **[1]** 10/7
numbers **[3]** 115/11 125/8 126/8

**O**

o'clock **[5]** 4/12 6/9 136/14
136/16 140/7
oath **[2]** 34/8 102/21
object **[5]** 21/13 125/24 133/17
134/8 138/15
objected **[1]** 138/22
objection **[87]** 4/24 6/22 12/25
13/10 14/8 15/4 15/23 16/3 16/8
16/14 16/24 21/13 22/12 28/16
31/11 31/13 32/9 32/20 37/17
40/9 40/16 48/2 49/9 56/9 57/12
58/21 59/1 62/21 63/25 64/13
65/14 65/21 66/5 66/6 66/17
76/9 76/18 77/13 77/23 78/8
79/3 79/16 80/15 82/3 85/24
87/6 91/21 91/25 93/15 94/11
94/25 96/16 96/22 98/1 98/18
98/23 102/2 102/9 102/10 110/5
110/6 111/22 112/1 112/14 113/1
113/16 113/22 115/15 116/2
116/9 116/13 117/1 117/8 119/8
119/22 120/20 121/1 122/21
123/20 125/24 126/17 127/6
127/10 128/3 131/7 133/7 139/1
objection's **[3]** 96/25 123/22
126/1
objections **[2]** 5/19 135/5
objective **[1]** 109/21
observe **[2]** 39/24 100/9
observed **[1]** 59/17
obtain **[2]** 107/3 120/9
obtained **[1]** 109/3
obviously **[5]** 4/24 25/2 25/4
25/5 61/8
occur **[2]** 41/9 43/5
October **[7]** 54/14 118/15 118/21
118/23 119/3 119/19 120/24
October 10th **[1]** 54/14
October 13th **[1]** 118/15

October 15th **[2]** 118/21 118/23
October 20th **[1]** 119/3
odd **[1]** 129/13
off **[7]** 34/19 43/8 46/13 46/13
86/7 104/2 135/25
office **[6]** 38/15 54/7 73/13
77/12 77/22 91/13
Officer **[2]** 75/23 92/17
Official **[1]** 1/25
officially **[1]** 88/18
often **[1]** 37/8
Oh **[11]** 8/23 29/3 35/5 54/17
57/21 72/15 83/21 101/16 110/18
115/1 137/25
okay **[150]**
old **[1]** 104/25
once **[7]** 17/24 52/2 90/14
102/10 102/11 103/20 113/25
one **[48]** 1/16 4/7 6/17 9/13
11/24 11/24 12/5 15/17 16/22
18/6 18/24 20/1 22/24 23/17
25/8 25/12 26/16 28/1 28/22
43/19 45/4 45/14 45/15 50/9
50/9 57/22 58/14 59/14 68/11
70/14 73/1 74/18 84/14 87/16
88/21 90/7 90/7 92/4 108/4
108/17 108/22 108/23 111/21
126/19 131/16 132/8 132/9
132/21
ones **[1]** 61/2
ongoing **[1]** 41/8
online **[2]** 13/4 14/1
only **[8]** 15/16 39/13 61/2 65/11
70/2 121/3 130/20 131/9
opening **[1]** 54/12
operating **[9]** 45/2 45/13 45/19
46/18 46/25 58/23 61/9 61/19
93/18
opinion **[3]** 13/14 14/12 36/2
opportunity **[1]** 99/10
opposed **[3]** 6/8 7/18 60/11
order **[21]** 39/18 47/18 63/4
65/8 66/18 70/10 70/16 92/6
94/24 106/24 107/3 108/11
108/14 110/3 111/5 111/15
115/13 116/7 117/15 126/6 128/8
organization **[2]** 36/15 79/1
originally **[3]** 43/1 45/16 89/15
Orlando **[2]** 40/1 92/5
other **[25]** 10/18 16/22 18/7
18/19 20/21 23/17 26/3 29/3
32/7 38/18 39/21 39/23 42/10
46/15 61/4 63/14 78/22 111/1
115/3 115/3 116/16 116/22 126/8
130/23 131/7
others **[2]** 73/16 118/16
otherwise **[2]** 66/20 67/18
our **[13]** 6/21 7/8 30/20 37/6
53/3 55/23 59/18 68/19 69/18
70/9 70/16 105/1 139/14
out **[29]** 4/4 8/14 13/24 18/15
18/16 30/7 30/8 36/24 37/5 41/3
41/4 41/5 45/8 69/5 70/1 73/8
80/2 82/1 83/25 92/18 92/18
94/18 95/25 97/9 105/12 114/17
131/4 135/20 137/11
outside **[6]** 38/12 76/9 77/13
97/16 124/22 131/19
over **[14]** 19/17 22/2 22/15 34/5
39/17 42/15 42/23 69/6 93/12
97/18 105/14 108/22 133/2 140/7
overall **[1]** 110/14
overbroadly **[1]** 128/3

overhead **[3]** 43/8 46/15 49/24
override **[1]** 63/5
overriding **[1]** 63/3
overruled **[29]** 13/1 16/15 16/25
21/15 28/20 31/13 37/18 40/10
40/17 48/4 64/14 65/22 66/8
66/22 76/11 77/15 78/9 79/4
80/16 82/4 87/7 92/1 94/12 95/2
110/8 112/1 113/3 116/13 117/8
oversees **[1]** 111/1
overwritten **[1]** 62/17
owe **[1]** 109/23
own **[2]** 38/3 109/11
owned **[5]** 20/9 45/23 94/16
95/24 97/9
owner **[1]** 39/14
owners **[1]** 45/20
ownership **[2]** 46/3 46/19

**P**

P-122 **[1]** 75/8
P-710 **[1]** 87/1
P-767 **[1]** 27/11
p.m **[5]** 4/1 69/9 69/10 71/13
140/19
PA **[2]** 108/5 109/6
pace **[1]** 70/7
page **[33]** 1/24 3/3 8/15 14/15
27/5 45/6 48/9 53/25 54/2 55/8
56/17 56/23 57/5 57/7 59/16
61/1 75/11 75/11 78/15 80/24
81/10 86/4 87/1 87/5 123/7
123/12 123/12 124/9 124/10
124/12 124/18 125/13 139/3
Page 1 **[2]** 75/11 78/15
Page 27 **[1]** 139/3
pages **[4]** 1/1 10/7 124/7 124/7
paid **[5]** 46/8 65/12 65/20
Paige **[10]** 45/24 66/14 67/12
67/15 68/9 74/5 78/16 78/20
78/25 85/3
pale **[1]** 25/1
Palm **[8]** 47/23 51/24 89/4 89/14
89/18 107/18 107/19 107/19
paper **[8]** 31/23 62/12 62/15
62/19 62/20 62/25 63/6 63/11
papers **[2]** 63/14 94/15
paragraph **[7]** 12/19 27/20 49/2
49/2 50/10 50/10 67/4
Paragraph 2 **[1]** 50/10
Paragraph 35 **[1]** 67/4
paragraphs **[1]** 32/24
parameter **[1]** 24/16
parameters **[1]** 114/9
Park **[1]** 1/18
part **[21]** 18/21 29/10 36/11
38/7 46/17 47/16 48/14 50/8
58/9 60/10 75/19 77/17 77/18
78/13 78/23 91/12 92/2 93/18
108/21 122/25 130/23
participate **[1]** 36/16
particular **[8]** 30/18 63/2 114/1
116/12 123/7 124/3 124/8 133/24
particularly **[2]** 92/3 94/16
parties **[5]** 67/22 115/19 116/15
135/11 140/14
partner's **[1]** 96/15
Partners **[1]** 95/8
partnership **[30]** 11/16 40/14
45/1 52/23 63/17 92/21 93/5
93/7 93/9 93/11 95/11 96/13
96/20 97/25 98/6 98/10 98/13

**P**

**partnership... [13]** 98/17
120/19 120/25 122/20 123/18
124/16 125/23 126/5 126/16
127/21 128/12 129/15 133/3
**parts [1]** 138/14
**party [1]** 134/4
**Paschal [3]** 26/4 26/5 26/13
**pass [1]** 108/24
**passcode [1]** 100/15
**passed [6]** 61/8 72/19 74/3 74/3
74/16 108/25
**passing [3]** 14/7 73/21 109/2
**past [3]** 118/25 136/14 138/19
**Pat [1]** 83/20
**Patrick [21]** 42/22 42/25 44/8
44/10 45/17 45/24 50/2 51/4
66/14 68/9 74/5 78/11 78/16
78/20 83/19 83/21 83/22 83/22
85/3 85/9 85/12
**Patrick's [1]** 45/14
**pay [1]** 65/8
**paying [1]** 65/6
**PDF [1]** 86/4
**Pence [3]** 1/25 141/11 141/12
**Pence-Aviles [3]** 1/25 141/11
141/12
**people [5]** 20/21 29/3 73/6
118/11 120/9
**per [1]** 58/22
**percent [7]** 46/5 46/12 46/16
49/2 49/22 49/23 70/15
**percentage [4]** 43/5 43/8 46/3
94/16
**perfect [4]** 28/2 29/23 104/13
118/1
**perform [3]** 38/9 44/11 93/25
**performed [2]** 58/9 131/11
**performing [1]** 41/2
**perhaps [8]** 60/8 60/25 65/12
78/11 111/25 116/15 123/5 123/7
**period [9]** 51/23 52/1 89/4
89/13 109/12 109/14 113/8
120/24 126/13
**Perl [1]** 92/15
**permissible [1]** 129/11
**permission [3]** 96/15 98/14
98/17
**permit [5]** 117/15 125/7 130/12
130/24 137/6
**permitted [2]** 34/19 131/17
**person [11]** 14/25 20/18 36/18
43/5 67/1 69/18 90/23 90/24
93/25 96/7 98/12
**personal [12]** 16/21 30/8 37/16
37/22 37/22 52/7 67/16 84/19
90/1 93/23 130/3 138/2
**personally [9]** 50/3 50/4 66/10
89/6 95/24 96/14 96/20 97/4
97/9
**pertaining [1]** 110/10
**phone [11]** 15/17 36/24 36/24
39/13 53/5 65/6 65/8 65/13
65/20 81/19 89/8
**physical [1]** 39/5
**physically [1]** 40/5
**pick [1]** 64/18
**picking [2]** 64/20 64/24
**pivot [1]** 88/12
**place [3]** 8/21 26/23 137/23
**placed [2]** 34/8 102/21
**plaintiff [2]** 13/13 84/21

**plaintiffs [6]** 1/6 1/15 2/2
11/23
**Plaintiffs' [1]** 11/23
**planning [3]** 106/18 106/19
106/21 106/22 108/10
**plausible [1]** 14/3
**played [1]** 100/21
**pleasant [2]** 7/25 137/8
**please [45]** 7/15 7/25 9/16
23/24 27/12 34/1 34/9 35/1 35/2
35/4 35/7 48/8 49/17 53/20
65/16 72/6 74/11 75/11 86/5
87/20 103/3 107/7 110/19 112/3
114/17 117/11 117/18 117/22
118/13 120/3 121/18 121/21
122/7 122/11 122/13 122/18
123/12 123/12 123/25 125/16
126/19 126/21 137/4 138/1 138/9
**point [27]** 6/18 12/21 15/21
16/2 16/7 21/25 28/20 31/24
39/9 40/24 42/17 84/23 85/8
89/8 105/4 105/20 105/22 107/17
108/21 112/1 122/25 124/8 125/2
132/18 132/21 133/2 134/15
**pointing [1]** 67/6
**Ponce [1]** 2/6
**Port [1]** 19/17
**portion [2]** 118/19 124/3
**position [5]** 7/7 47/8 109/2
109/3 137/2
**positive [1]** 88/10
**possible [5]** 27/8 42/13 71/6
85/16 85/17
**possibly [1]** 108/9
**posted [1]** 14/1
**potentially [1]** 71/2
**powerful [2]** 20/5 20/7
**practice [2]** 35/17 108/12
**prefer [1]** 68/22
**prejudicial [2]** 24/21 24/23
**prelude [1]** 132/25
**preparation [9]** 106/18 108/9
108/10 112/19 115/8 116/20
120/6 120/23 126/4
**prepare [13]** 111/4 111/5 111/20
112/6 112/21 113/1 115/13
116/8 116/24 117/15 119/7 122/4
126/7
**prepared [7]** 106/2 114/15
114/24 115/2 115/4 127/25
131/13
**preparing [6]** 111/18 111/19
114/22 119/18 119/20 130/17
**presence [7]** 4/4 7/23 25/13
69/5 72/4 135/17 137/11
**present [2]** 61/20 138/18
**presentation [5]** 36/11 36/13
36/14 40/3 40/4
**presentations [1]** 92/3
**presented [2]** 87/16 94/3
**preservation [1]** 38/9
**pressed [2]** 100/16 134/22
**pretty [1]** 105/17
**previously [8]** 8/8 46/12 47/7
75/17 85/7 85/8 137/14 137/17
**primarily [1]** 37/21
**principal [1]** 67/20
**principals [1]** 67/20
**prior [4]** 55/8 72/21 84/2
111/11
**private [4]** 20/17 20/20 36/16
106/19
**privilege [40]** 4/20 5/23 6/21

7/1 7/9 60/21 113/24 114/2
123/21 124/22 124/23 127/7
128/3 128/4 128/5 128/14 128/23
128/24 129/18 129/20 129/22
130/1 130/4 131/20 132/2 132/11
133/19 134/3 134/4 134/11
135/13 137/22 138/11 138/15
139/6 139/8
**privileged [9]** 60/5 60/6 115/15
120/20 121/1 126/17 127/24
129/8 139/6
**privileges [1]** 138/10
**probable [1]** 128/1
**probably [5]** 19/4 30/11 61/23
104/23 113/4
**problem [9]** 6/10 49/17 94/2
94/4 94/5 94/9 94/22 130/8
132/12
**proceed [3]** 69/25 102/13 102/19
**proceeding [4]** 77/17 77/18
79/15 133/15
**proceedings [12]** 4/4 7/23 22/19
25/13 69/5 69/10 72/4 127/15
135/17 137/11 140/19 141/5
**proceeds [1]** 43/10
**process [2]** 116/23 117/14
**produced [5]** 10/10 47/16 74/7
75/18 75/18
**production [1]** 75/24
**productive [1]** 90/16
**profession [3]** 103/23 106/3
106/9
**professional [7]** 37/25 105/21
105/22 105/25 109/24 110/16
110/20
**professionally [1]** 20/13
**professions [1]** 110/24
**profit [6]** 56/25 57/3 57/7
59/17 125/20 125/22
**profit-and-loss [4]** 56/25 57/3
57/7 59/17
**profits [3]** 123/17 124/15
126/15
**program [3]** 107/14 107/15
107/17
**programmer [1]** 14/22
**programming [2]** 15/1 91/17
**progress [1]** 101/4
**prohibited [1]** 115/21
**project [3]** 46/17 49/23 76/5
**projects [2]** 63/14 91/2
**promise [1]** 25/11
**pronounce [1]** 17/19
**proper [1]** 42/19
**properly [3]** 60/10 60/10 110/3
**property [4]** 16/19 46/19 67/17
83/14
**prophylactically [1]** 128/5
**protects [1]** 128/24
**proud [4]** 11/5 94/20 95/17
95/18
**provide [12]** 6/15 46/18 105/22
106/17 114/13 115/10 115/13
129/4 129/5 133/21 135/10
137/13
**provided [7]** 29/17 78/6 106/1
114/14 121/19 129/6 138/3
**providing [1]** 126/13
**public [12]** 36/15 72/21 103/24
106/4 106/6 106/18 106/23
107/5 108/2 108/15 110/25
**publically [1]** 127/4

## P

publications [1]   92/16
publish [10]   8/24 12/6 43/15
 48/8 53/19 53/20 67/5 74/12
 75/10 81/1
publishing [1]   21/1
pull [6]   11/22 55/13 57/23 67/3
 121/21 123/25
pulling [1]   12/1 12/1
pullout [1]   13/20
purchase [1]   127/5
purports [1]   87/4
purposes [3]   5/18 50/12 50/24
pursuant [1]   138/11
pushing [1]   130/14
put [7]   31/23 58/11 75/8 80/22
 86/3 86/7 96/14

## Q

question [45]   5/7 6/24 7/2 7/3
 10/20 24/1 24/18 25/8 25/10
 25/11 25/12 32/11 33/16 37/20
 58/2 62/8 63/8 65/23 66/19 94/7
 94/15 99/9 99/11 112/2 117/3
 117/9 117/10 117/11 117/13
 119/25 120/3 120/11 123/5 123/5
 123/7 123/23 124/17 124/19
 125/5 125/11 125/17 132/25
 133/25 138/20 139/1
questionable [1]   15/21
questioning [7]   5/17 8/2 113/25
 127/7 131/11 132/8 134/8
questions [18]   17/6 24/7 26/13
 26/16 33/9 33/14 33/15 33/17
 59/4 68/14 99/4 99/8 99/11
 121/4 124/1 131/5 132/15 135/4
QuickBooks [2]   57/1 59/16
quickly [1]   42/12
Quintero [3]   22/9 22/11 25/18
quite [2]   108/20 120/8

## R

raise [7]   6/17 33/15 34/7 34/9
 99/9 102/20 130/4
raised [7]   4/20 5/6 6/22 33/18
 99/12 131/22 133/9
ran [2]   76/5 76/13
Random [1]   52/9
range [1]   130/22
rather [2]   73/17 97/16
reach [2]   38/6 38/18
read [12]   8/22 9/4 13/4 28/19
 28/22 29/17 29/24 32/18 67/25
 129/9 129/24 138/13
reading [1]   139/3
reads [1]   137/25
ready [3]   8/1 136/18 140/6
real [1]   24/24
really [7]   5/14 7/8 32/18 41/10
 54/10 59/1 91/5
reason [5]   23/14 24/12 44/13
 84/18 122/24
reasonable [2]   24/17 24/18
reasons [1]   44/7
recall [25]   25/23 28/14 42/16
 63/15 73/4 73/18 78/5 78/23
 79/10 79/23 79/25 80/12 82/19
 84/21 85/21 90/7 92/10 104/21
 112/20 112/22 113/18 114/25
 115/12 126/10 126/12
receive [9]   43/6 82/17 82/20
 82/22 82/25 107/10 116/15 126/5
 126/7
recently [2]   54/4 56/11 58/10 59/12 77/11
 77/20 77/21 78/25 78/25 84/5
 84/15 84/23 107/8 126/10
receiving [3]   54/6 82/19 84/2
recent [1]   131/2
recently [1]   22/7
recess [4]   61/23 69/3 69/8 69/9
recipients [1]   74/18
recognize [21]   45/7 47/14 47/15
 47/17 47/19 47/21 53/22 54/24
 55/19 55/24 56/3 56/5 57/5 58/3
 58/5 74/15 78/21 78/21 86/11
 121/25 122/2
recognized [1]   84/14
recollection [25]   16/20 29/15
 39/25 40/23 41/7 42/1 42/24
 44/9 44/12 44/15 52/23 54/7
 54/12 73/6 74/6 75/18 80/21
 84/22 85/10 85/14 85/19 89/14
 90/20 112/24 113/2
reconstruct [1]   92/8
record [11]   5/1 35/4 35/7 69/14
 72/10 85/18 103/4 114/21 124/2
 134/2 141/5
record's [1]   7/21
Recording [1]   101/4
records [6]   57/10 57/15 58/23
 93/4 111/8 116/16
recover [1]   68/8
recovering [1]   90/13
RECVD [1]   54/4
redact [4]   59/5 59/7 59/25 60/3
redacted [4]   11/25 12/1 12/5
 27/12
redaction [1]   60/11
redaction's [1]   11/25
redactions [3]   59/10 61/14
 69/19
redirect [4]   33/10 33/11 99/5
 99/6
Reed [9]   8/13 9/17 11/25 46/21
 48/8 49/2 53/25 56/18 59/2
refer [3]   41/3 123/6 130/9
reference [2]   79/11 123/15
referring [2]   58/17 78/19
refers [2]   116/12 126/24
reflect [2]   111/9 126/8
reflected [4]   114/7 122/9
 125/13 126/6
reflects [7]   122/19 123/2
 123/17 124/15 125/1 125/22
 127/4
refresh [3]   44/9 85/10 112/24
refreshing [1]   113/2
regard [10]   61/3 61/4 66/21
 69/16 114/9 129/13 129/17
 129/21 130/10 130/25
regarding [8]   30/25 78/11 94/16
 114/13 122/20 123/18 126/5
 139/9
registered [2]   42/1 51/11
registration [1]   56/20
regrets [1]   44/5
regular [1]   30/5
regularly [1]   86/15
regulate [1]   110/15
regulates [1]   110/23
Regulation [1]   110/21
regulatory [1]   110/23 111/1
rehabbed [1]   89/16
related [16]   5/12 37/6 37/21

65/2 84/20 84/24 85/2 91/9
 127/5 129/4 129/15 132/1
relating [2]   123/19 130/18
relation [2]   4/21 22/14
relationship [5]   18/21 66/22
 105/14 129/8 132/10
relationships [1]   93/23
relative [1]   40/4
relay [1]   72/20
relevance [7]   16/9 22/12 66/20
 98/1 98/19 111/22 112/14
relevant [1]   101/12
remain [2]   34/7 61/9
remember [13]   18/2 26/17 26/25
 31/5 31/19 41/18 41/20 44/15
 54/6 78/23 79/6 108/22 137/4
remembered [1]   31/24
remote [3]   39/4 91/13 140/3
remotely [1]   91/8
remove [3]   13/20 140/10 140/12
repeat [3]   112/2 117/11 120/3
repercussions [1]   84/9
rephrase [8]   49/16 49/17 65/16
 65/23 76/20 113/19 114/7 119/12
Reported [1]   1/25
reporter [8]   1/25 5/1 7/16
 17/16 25/15 72/9 141/3 141/12
represent [3]   69/20 70/18 75/23
representation [2]   7/5 49/21
representative [4]   84/19 130/3
 132/13 138/2
represented [3]   58/24 133/16
 134/4
representing [1]   138/6
represents [1]   138/1
reputation [2]   88/10 88/10
request [3]   78/13 78/23 116/7
requested [1]   71/12
requests [1]   5/1
require [1]   116/7
requirements [1]   107/1
research [4]   54/25 77/22 89/23
 137/5
reserve [1]   6/21
resolve [1]   60/16
respect [12]   6/18 6/20 109/21
 120/13 124/2 124/10 124/12
 128/11 131/11 131/12 131/17
 135/2
respected [1]   36/3
respectfully [2]   59/18 139/13
respond [4]   8/22 9/6 42/4 120/2
responded [4]   73/4 73/7 73/12
 73/17
responds [1]   74/2
response [12]   23/10 73/9 73/14
 74/24 75/2 78/16 117/9 120/1
 128/15 128/20 128/21 131/25
responsibilities [2]   40/6
 109/20
responsibility [2]   110/14
 110/16 133/11 135/6
responsive [1]   80/5
rest [4]   8/14 28/22 118/21
 138/13
restaurant [1]   30/4
restaurants [1]   18/16
result [2]   93/11 130/4
results [1]   80/2
resumed [2]   8/10 69/10
retain [1]   81/24
retained [1]   67/16

**R**

**return [42]** 80/17 81/5 111/4
111/6 111/16 111/18 111/19
112/7 112/8 112/21 114/24 115/2
115/3 115/8 115/14 116/8 116/20
116/25 117/16 119/7 119/18
119/21 120/7 120/23 122/2 122/2
122/4 122/7 122/8 122/19 123/16
124/5 124/6 126/4 126/4 126/11
127/4 127/25 128/1 130/17
131/13 132/4
**returns [10]** 50/21 51/5 106/2
111/11 112/19 113/12 114/15
114/23 116/15 128/25
**revenue [1]** 49/21
**revenues [3]** 46/6 48/24 49/7
**reverse [1]** 47/18
**review [3]** 111/12 138/8 139/19
**reviewed [1]** 69/20
**right [199]**
**right-hand [2]** 87/1 87/9
**rise [6]** 7/14 69/4 69/11 72/3
137/10 140/18
**RIVERO [8]** 2/5 2/7 25/3 26/1
26/13 101/24 137/24 138/5
**RMR [2]** 1/25 141/12
**Robert [1]** 39/16
**ROCHE [7]** 1/15 1/18 1/19 4/10
69/18 125/3 139/16
**room [4]** 38/19 90/6 135/19
136/18
**roughly [1]** 4/16
**Royal [7]** 21/24 22/3 22/7 22/8
22/25 23/7 26/6
**rule [2]** 102/10 133/11
**ruled [3]** 133/14 133/15 133/15
**ruling [1]** 134/23
**run [2]** 10/8 20/4
**run-of-the-mill [1]** 20/4
**running [1]** 20/1

**S**

**sad [1]** 72/20
**said [22]** 13/16 18/23 20/16
20/17 28/11 30/10 32/19 32/23
41/9 44/24 76/17 81/7 84/8 91/5
97/3 97/8 97/8 107/23 109/7
132/3 132/22 138/25
**sake [1]** 111/12
**same [14]** 18/6 20/2 27/5 36/22
36/24 39/1 58/2 73/7 98/23
119/22 123/23 135/21 136/7
138/8
**San [1]** 2/3
**sat [2]** 24/5 138/25
**saw [4]** 14/14 19/11 19/11 93/19
**say [38]** 13/8 13/9 15/2 16/21
18/18 24/3 24/4 26/10 29/25
31/10 31/12 31/16 32/1 37/13
38/12 38/15 40/5 42/17 42/25
45/20 57/9 63/16 63/20 63/23
65/11 75/20 78/10 84/10 104/20
105/6 115/4 129/3 129/3 130/25
131/10 131/16 134/2 140/5
**saying [9]** 29/4 29/16 31/22
32/2 48/13 60/5 84/12 130/14
130/15
**says [25]** 8/22 12/19 13/22
15/20 27/20 29/1 44/5 44/8
45/22 48/11 48/19 50/2 50/10
54/3 54/4 54/24 75/2 76/4 76/13
77/1 82/8 86/13 101/13 118/17

128/22
**schedule [14]** 119/10 121/22
125/16 125/18 125/20 125/21
126/6 126/7 126/9 126/22 127/3
136/19
**schedules [4]** 116/15 125/2
125/10 130/8
**scheduling [1]** 70/1
**SCHILLER [2]** 1/21 2/2
**SCHNEUR [1]** 2/8
**scope [10]** 39/11 42/8 76/10
77/14 87/6 91/21 91/25 92/18
127/8 129/11
**SCOTT [1]** 1/22
**screen [14]** 75/9 80/23 86/3
86/7 87/16 101/21 101/23 101/24
102/18 117/25 123/6 136/1
137/25 140/4
**screens [1]** 100/21
**scripting [2]** 91/15 92/15
**scripts [3]** 91/24 92/6 92/9
**scroll [4]** 58/12 74/23 74/23
122/17
**se [1]** 58/22
**search [2]** 78/24 79/24
**searched [1]** 79/25
**searches [1]** 80/4
**searching [1]** 42/10
**seat [5]** 4/9 34/16 69/24 69/25
137/12
**seated [2]** 7/25 72/6
**second [15]** 1/21 43/19 48/8
53/25 54/2 59/15 67/8 70/14
74/1 76/19 80/24 108/25 110/13
126/19 132/9
**secret [10]** 19/9 76/6 76/16
77/7 92/24 92/25 93/2 93/3 93/8
93/9
**section [3]** 89/6 126/24 127/3
**sector [2]** 36/16 36/16
**secured [1]** 83/12
**security [4]** 18/5 35/12 35/14
88/3
**see [46]** 8/18 12/12 15/10 15/10
28/4 44/4 45/9 48/13 48/22 49/4
50/13 51/23 52/2 54/17 54/17
61/13 66/19 67/23 74/20 75/13
76/7 77/3 78/3 78/16 82/7 82/12
86/23 87/9 89/6 101/10 102/18
104/9 105/11 117/23 117/24
118/11 118/21 119/1 122/18
127/1 135/11 136/2 136/14
136/17 137/8 140/14
**seeing [4]** 33/18 54/12 92/10
99/12
**seeks [1]** 115/25
**seemed [2]** 14/2 55/8
**seems [5]** 24/14 24/17 47/15
120/8 128/7
**seen [3]** 14/1 16/2 87/14
**segregated [1]** 89/5
**selected [1]** 56/15
**selecting [1]** 95/6
**self [1]** 39/2
**self-sufficient [1]** 39/2
**selling [1]** 97/8
**send [2]** 53/9 80/14
**sending [1]** 50/2
**sense [4]** 95/23 96/20 97/3 97/9
**sensitive [1]** 23/12
**sent [7]** 47/22 50/3 73/7 77/10
80/20 81/22 137/21
**sentence [3]** 48/15 48/19 67/8

**September [3]** 22/4 82/11 83/1
137/8 137/18 138/8
**server [2]** 38/18 53/4
**servers [2]** 36/1 127/5
**services [5]** 90/17 105/22
105/25 126/14 138/3
**session [5]** 1/13 69/12 136/21
136/23 136/25
**set [7]** 25/15 46/8 101/19
129/22 137/23 138/11 140/5
**setting [1]** 38/23
**several [4]** 35/12 92/16 136/19
136/23
**shall [2]** 45/23 46/1
**share [1]** 20/13
**shared [2]** 20/12 117/25
**sharing [1]** 41/6
**sharpie [1]** 54/13
**she [4]** 6/3 24/1 25/19 25/19
**she's [2]** 24/7 119/8
**Sheppard [1]** 44/4
**shield [1]** 130/15
**short [3]** 70/24 131/10 137/18
**short-circuit [1]** 137/18
**should [6]** 60/10 67/17 100/2
100/11 128/7 135/15
**shouldn't [1]** 5/24
**show [3]** 24/18 43/11 43/17
45/4 47/12 53/14 55/15 58/11
59/2 59/3 117/18 117/22 121/18
**showed [2]** 80/11 85/7
**showing [1]** 137/20
**shown [1]** 117/25
**sic [2]** 50/11 137/20
**side [4]** 70/5 86/7 87/1 87/9
**sidebar [5]** 22/16 22/19 117/2
117/4 127/15
**sides [3]** 6/5 99/25 100/2
**sign [2]** 86/16 87/14
**signature [9]** 45/14 55/24 86/11
86/13 86/15 86/19 87/12 87/15
87/17
**signatures [2]** 86/5 86/5
**signing [3]** 94/2 94/17 94/22
**silly [1]** 22/23
**similar [2]** 35/25 59/17
**similarly [1]** 26/20
**simplify [1]** 30/3
**simply [12]** 71/8 74/8 113/19
114/6 119/16 120/11 123/1
124/12 130/15 130/16 131/12
133/1
**since [12]** 6/2 31/4 35/14 50/3
50/4 56/13 56/13 61/23 106/10
109/16 123/6 136/16
**single [1]** 114/23
**sir [45]** 17/12 21/17 28/24
32/19 33/23 34/3 34/6 34/16
37/20 51/6 58/18 67/14 68/1
69/25 73/3 75/5 75/25 76/3
76/15 76/25 78/4 81/16 83/2
83/4 83/15 84/1 84/25 85/17
87/13 88/15 89/22 92/23 93/14
97/1 99/18 102/21 109/19 115/21
116/3 117/10 125/4 136/3 136/4
136/8 136/10
**sister [6]** 23/6 24/1 24/7 24/12
24/20 25/19
**sisters [1]** 22/24
**sit [1]** 31/18
**sitting [3]** 20/2 129/19 129/20
**situation [3]** 64/7 96/2 97/15
**six [1]** 28/23

**S**

**skills [1]** 88/9
**slowly [1]** 139/4
**small [1]** 38/19
**so [213]**
**social [4]** 37/4 104/16 104/16 139/10
**socialize [1]** 105/11
**socialized [1]** 105/19
**socially [1]** 30/8
**Software [1]** 40/2
**sold [2]** 95/25 96/21
**soliciting [1]** 114/18
**some [53]** 6/15 20/12 21/25 22/13 23/2 29/3 32/16 32/18 35/11 36/8 36/9 36/17 36/22 37/22 38/18 40/3 40/6 41/2 41/5 42/6 50/16 50/19 55/8 58/8 60/9 67/1 70/2 71/20 72/19 72/21 78/6 78/10 79/22 94/13 95/25 99/8 101/20 102/5 105/21 105/22 107/23 108/9 108/10 108/11 110/10 111/11 128/16 129/13 132/5 133/21 136/24 137/3 139/20
**someone [7]** 13/4 30/8 30/9 30/16 32/6 47/8 97/12
**something [12]** 18/20 20/9 24/20 24/21 47/15 53/4 55/11 79/7 93/24 97/15 105/15 105/21
**sometime [3]** 40/23 85/1 113/4
**Sometimes [1]** 44/19
**somewhere [3]** 35/22 48/20 92/11
**soon [1]** 70/7
**sorry [24]** 6/7 22/21 22/22 37/19 49/14 55/25 63/8 63/9 66/6 66/23 72/18 73/11 73/17 75/11 82/1 85/14 94/7 97/5 97/6 100/1 100/8 103/25 110/6 133/14
**sort [17]** 38/6 38/10 41/5 55/8 72/21 79/24 96/4 108/6 108/7 108/19 110/1 110/2 110/14 111/5 114/17 115/12 116/6
**sound [3]** 26/10 26/24 32/16
**sounds [1]** 26/11
**South [1]** 81/6 81/13
**Southeast [2]** 1/16 1/21
**SOUTHERN [2]** 1/3 129/25
**speak [9]** 37/8 37/9 68/25 69/7 120/18 127/11 137/2 137/5 137/6
**speaking [1]** 31/15
**speaks [6]** 31/12 122/22 123/20 124/21 125/25 127/6
**special [1]** 30/18
**specific [5]** 7/7 115/17 116/22 124/17 138/20
**specifically [11]** 35/21 42/7 55/25 126/10 129/12 129/21 129/25 130/3 130/19 130/25 131/12
**specifics [2]** 110/10 111/14
**speculating [1]** 15/7
**speculation [3]** 15/3 15/23 65/21
**Speculative [7]** 76/18 79/3 82/3 94/11 95/1 96/16 96/22
**spell [1]** 103/3
**spent [2]** 44/22 121/6
**spinal [2]** 52/1 89/15
**split [2]** 43/4 49/7
**spoke [8]** 13/6 23/5 29/6 29/16 37/10 37/13 39/13 136/15

**spoken [2]** 24/25 73/23
**spot [2]** 30/22 31/19
**sponsored [1]** 36/15
**staff [2]** 108/2 109/5
**stand [1]** 102/20
**standing [1]** 34/7
**standpoint [2]** 39/3 42/10
**start [9]** 6/8 17/19 27/19 47/17 53/24 68/20 71/12 104/13 137/1
**started [5]** 22/4 37/2 37/25 41/7 109/11
**starting [1]** 140/2
**state [13]** 7/6 7/20 35/3 35/7 50/20 56/21 71/10 103/3 107/19 110/16 124/1 129/21 134/16
**stated [4]** 83/10 119/17 120/13 137/13
**statement [7]** 14/6 15/2 15/7 56/25 108/10 119/18 127/24
**statements [1]** 106/17
**states [5]** 1/2 76/24 118/18 118/23 127/8
**Statute [1]** 138/12
**stay [1]** 49/23
**stayed [2]** 22/1 39/17
**steady [1]** 70/6
**steal [1]** 98/6
**step [3]** 34/5 54/23 110/13
**STEPHEN [1]** 1/20 1/23
**stepping [1]** 114/2
**steps [1]** 54/17
**Steven [1]** 82/8
**still [2]** 50/22 89/7
**stipulate [1]** 92/17
**stolen [3]** 16/13 64/3 98/9
**stop [2]** 104/1 135/3
**stopped [1]** 101/21
**storage [1]** 78/12
**straits [1]** 98/22
**Street [2]** 1/21 2/3
**strike [4]** 10/19 65/5 76/22 86/24
**stripped [1]** 83/25
**striving [1]** 70/17
**strong [1]** 90/16
**structure [1]** 50/21
**structured [1]** 43/7
**struggle [4]** 96/1 96/1 97/21 97/24
**struggled [3]** 96/3 97/11 97/17
**stuff [2]** 18/15 18/16
**subject [1]** 95/4
**subjects [1]** 37/14
**submit [2]** 79/23 95/3
**subpoena [1]** 138/7
**subsequent [5]** 42/2 42/2 43/9 45/16 77/17
**subsequently [1]** 105/5
**substance [2]** 5/10 116/10
**such [5]** 23/12 67/19 79/15 97/12 106/20
**sudden [1]** 134/1
**sue [3]** 66/10 66/12 66/14
**sued [3]** 66/3 66/16 66/25
**sufficient [1]** 39/2
**suggest [1]** 85/11
**Suite [4]** 1/16 1/18 1/21 2/6
**sum [1]** 5/10
**support [1]** 39/8
**supports [1]** 128/1
**supposed [1]** 128/1
**Supreme [2]** 81/6 81/12
**sure [16]** 5/14 32/2 32/18 61/2

67/5 70/15 74/6 85/19 91/14
117/23 118/8
**surgeries [1]** 90/13
**surprised [1]** 42/7
**sustain [1]** 116/2
**sustained [34]** 13/11 14/9 15/5 15/24 16/14 16/10 32/12 32/21 49/10 57/13 62/22 64/1 65/15 76/19 77/24 79/17 85/25 91/22 93/16 96/17 96/23 96/25 98/2 98/20 98/24 112/16 119/11 120/21 121/2 123/22 126/1 126/18 127/10 131/7
**swoop [1]** 108/18
**sword [1]** 130/15
**sworn [3]** 8/9 34/11 102/24
**system [3]** 80/11 80/18 80/20

**T**

**T-Day [1]** 9/5
**table [1]** 69/7
**tact [1]** 23/9
**take [30]** 12/17 12/18 24/20 24/21 34/19 42/15 42/22 44/16 46/10 46/21 49/25 50/9 54/23 61/24 68/19 68/19 68/22 68/25 86/1 87/19 98/13 106/23 107/13 108/11 108/14 108/18 109/25 137/23 138/9 139/4
**taken [6]** 18/1 69/9 98/16 108/17 121/13 135/20
**taking [6]** 3/9 50/25 51/2 55/23 61/23 83/13
**talented [4]** 88/1 88/3 88/5 91/5
**talk [10]** 17/5 51/14 52/4 52/7 52/10 52/13 62/9 64/6 87/22 88/12 89/8 90/2
**talked [3]** 64/16 83/22 91/19
**talking [8]** 12/23 14/15 24/25 29/9 32/6 42/16 46/23 85/19
**task [1]** 93/25
**tax [51]** 50/12 50/21 51/5 58/22 77/22 103/21 106/2 106/18 106/21 106/22 108/9 108/10 111/4 111/8 111/19 112/8 112/11 113/11 114/13 114/15 114/18 114/23 114/24 115/3 115/8 116/8 116/20 119/18 119/21 120/13 120/15 120/23 122/2 122/2 122/4 122/7 122/8 122/8 122/19 123/16 124/5 124/6 126/4 126/4 127/4 127/25 128/1 130/17 132/4 132/23 133/1
**Taxation [1]** 77/11
**taxes [2]** 118/20 120/10
**technical [1]** 92/14
**technology [2]** 21/4 39/8
**tell [31]** 9/19 9/24 10/2 10/6 11/2 11/8 11/12 11/15 11/19 16/12 16/18 20/23 21/20 21/21 21/23 23/18 41/22 52/19 52/22 56/24 63/13 64/3 76/22 76/23 77/5 83/25 84/18 110/19 122/7 122/11 122/18
**telling [3]** 15/22 118/7 120/9
**ten [5]** 38/15 40/24 42/17 134/17 135/3
**terms [4]** 62/8 110/13 115/11 137/1
**test [1]** 74/10
**testified [7]** 8/9 18/8 34/12

**testified...** **[4]**  75/17 79/14
79/19 102/25
**testifying** **[1]**  34/19
**testimony** **[17]**  5/18 21/14 23/17
24/12 28/17 61/24 72/7 92/5
97/10 97/11 98/12 102/20 114/10
115/25 136/3 138/7 138/19
**text** **[4]**  8/12 8/17 53/5 53/10
**texted** **[1]**  89/11
**texts** **[4]**  10/6 10/12 10/15
10/17
**than** **[6]**  31/1 31/5 32/7 39/21
108/22 115/3
**Thank** **[35]**  7/10 7/12 8/4 8/23
9/17 17/7 17/9 27/17 28/2 33/9
33/12 33/23 34/14 34/20 44/1
59/13 60/19 62/2 62/3 68/16
71/14 80/23 81/3 86/1 86/6
87/19 99/18 99/19 103/2 103/7
118/3 135/14 136/6 136/11
136/12
**Thanks** **[1]**  7/22
**Thanksgiving** **[3]**  8/21 9/8 71/18
**that** **[633]**
**that's** **[93]**  6/11 6/12 6/22 12/4
15/11 18/20 18/20 20/18 21/17
21/18 24/8 24/24 25/10 28/6
29/5 31/9 31/11 32/1 32/5 32/6
32/18 33/1 33/3 36/14 40/11
40/11 43/7 48/14 54/8 54/19
58/23 60/16 61/18 61/21 61/21
61/22 73/11 74/4 74/10 75/2
75/3 75/3 75/6 75/7 75/22 76/1
77/4 80/9 80/21 81/8 81/14
81/18 83/6 83/10 83/17 84/4
85/5 85/15 85/16 85/16 86/4
87/12 87/16 89/25 90/3 90/11
91/4 92/17 92/23 93/20 95/22
101/2 101/3 103/6 110/23 117/5
119/21 119/22 120/12 123/3
123/4 124/17 127/18 128/2
129/10 129/11 130/7 130/20
131/14 132/6 132/16 133/4 139/2
**their** **[7]**  110/11 111/8 111/9
111/12 111/12 127/19 132/15
**them** **[15]**  22/24 24/5 26/17 27/3
27/7 30/9 39/11 59/3 69/20
71/23 92/10 92/10 92/12 96/5
129/9
**then** **[51]**  4/9 5/24 8/14 8/20
9/6 12/20 22/2 29/8 30/14 30/17
31/5 32/14 35/16 36/9 43/9 44/7
44/8 45/16 48/19 49/1 51/25
54/12 54/21 61/24 68/23 71/15
73/8 73/20 74/4 74/22 75/8
75/20 76/13 78/5 89/17 90/14
96/14 96/20 104/5 104/17 105/5
107/20 109/11 109/17 116/1
116/12 121/4 125/3 135/7 135/9
137/13
**there** **[107]**  4/6 7/3 10/15 18/2
18/9 19/25 21/25 23/8 23/13
24/9 29/14 32/15 33/16 35/18
36/4 37/5 37/21 37/25 38/15
39/7 39/25 40/3 40/13 42/15
42/21 43/3 43/3 44/19 45/22
46/10 47/7 50/1 50/19 51/16
51/22 52/1 55/10 58/8 58/22
59/16 59/24 66/3 70/10 70/19
73/6 73/9 73/14 73/25 74/7 76/5
76/13 78/10 78/13 79/5 79/15

**80/4 80/5 80/5 84/9 84/12 85/8**
86/8 89/6 91/24 93/11 94/1
94/4 94/13 97/13 97/18 99/8
99/11 101/1 102/8 102/9 105/20
109/7 109/9 110/1 110/15 111/25
113/14 114/23 118/22 122/23
122/24 123/15 124/7 124/7 125/1
125/10 125/21 127/3 128/17
128/20 130/5 130/8 131/3 131/4
131/18 132/9 135/1 138/15
138/20 139/1 139/5 139/20
**there's** **[23]**  4/18 5/6 6/23 8/20
11/24 12/17 22/13 23/19 23/22
24/11 50/16 66/18 66/18 74/4
92/11 101/20 102/2 106/16 117/4
121/3 127/25 130/8 132/12
**Therefore** **[1]**  138/24
**these** **[15]**  10/6 10/12 10/15
20/4 30/24 40/6 47/17 47/17
51/1 52/4 79/22 89/19 135/4
135/5 135/5
**they** **[49]**  6/3 10/8 14/3 14/4
20/4 21/1 21/4 21/7 24/8 26/16
27/3 28/11 31/2 43/6 51/25
61/11 70/3 71/20 71/21 80/10
89/19 89/20 89/23 90/1 97/19
105/4 106/16 106/16 106/19
110/11 110/19 115/23 119/9
119/23 129/9 129/9 131/19
131/19 131/22 132/17 133/16
134/6 134/7 134/7 134/8 135/4
138/25 138/25 138/25
**they're** **[4]**  10/7 130/15 132/5
132/14
**thief** **[1]**  98/11
**thing** **[10]**  6/18 38/6 39/1 72/24
79/15 103/18 131/9 131/16 132/9
139/7
**things** **[22]**  20/13 21/1 21/4
21/11 32/16 32/18 37/4 37/6
39/10 39/23 52/9 52/11 64/16
70/23 90/2 106/16 108/6 108/7
111/5 111/14 116/16 118/22
**think** **[54]**  5/6 5/7 5/9 6/22 7/3
14/18 14/21 15/20 17/5 18/23
19/14 24/20 25/5 25/25 25/25
26/9 26/23 43/11 44/13 55/6
57/21 57/22 61/21 83/20 85/18
91/5 96/2 98/11 102/4 107/17
107/18 107/23 108/23 108/25
109/7 114/1 114/3 115/17 124/11
125/13 127/9 127/18 128/21
129/2 129/5 129/10 130/7 131/9
132/6 132/7 132/11 132/17
137/17 139/13
**thinking** **[1]**  29/19
**third** **[4]**  1/16 67/22 116/15
125/13
**this** **[216]**
**those** **[27]**  4/21 36/1 38/7 38/17
38/21 39/4 43/4 43/6 73/1 73/20
84/8 85/5 85/8 87/20 91/14 92/7
97/14 97/14 105/25 109/24
113/12 115/22 116/17 123/16
131/5 133/2 135/5
**though** **[5]**  39/11 45/1 50/10
83/20 98/22
**thought** **[2]**  35/5 42/12
**thousands** **[1]**  65/19
**three** **[3]**  22/24 28/23 54/17
**through** **[17]**  10/6 24/7 27/21
27/24 35/25 38/3 45/18 56/13
78/12 91/9 105/4 105/8 113/8

**122/17 122/24 130/21 132/19**
50/8
**tied** **[1]**  129/15
**time** **[77]**  4/6 4/14 5/19 7/19
11/8 11/11 11/14 14/1 14/3
15/21 20/2 23/2 27/7 30/1 30/20
33/9 33/16 35/18 36/4 36/9
36/18 36/20 37/25 40/13 41/10
42/14 44/19 44/22 47/24 51/16
51/23 52/2 52/16 54/13 61/25
66/3 68/25 70/5 70/12 73/12
73/13 73/25 74/4 74/9 74/10
75/3 75/3 75/15 77/20 78/25
83/5 83/11 85/8 85/15 85/20
88/14 88/16 88/24 89/4 90/21
105/13 105/14 105/18 105/20
107/18 108/24 108/25 109/12
109/14 120/14 121/6 126/13
133/2 134/4 134/19 138/20
139/14
**timeframe** **[2]**  36/10 115/1
**timeline** **[1]**  92/3
**timelines** **[1]**  92/8
**times** **[9]**  19/25 37/5 37/10
42/21 51/21 63/4 64/19 90/13
133/15
**Titled** **[1]**  82/8
**today** **[11]**  4/13 4/23 5/4 6/16
31/18 32/16 68/4 97/10 121/10
121/12 136/8
**together** **[11]**  18/13 21/2 21/7
38/1 40/7 88/18 95/9 105/9
107/21 107/22 119/24
**told** **[19]**  18/4 20/17 21/10 27/7
31/18 31/19 42/4 43/22 53/17
54/15 77/8 83/16 83/24 85/2
85/2 85/3 93/7 93/9 130/19
**tomorrow** **[14]**  5/5 6/2 6/3 6/8
70/19 70/23 71/11 71/12 136/2
136/22 137/3 137/8 140/2 140/15
**tonight** **[3]**  30/10 137/14 140/11
**too** **[3]**  6/12 77/1 83/20
**took** **[5]**  8/21 26/23 108/17
109/2 128/12
**top** **[3]**  43/8 46/13 81/5
**Totally** **[1]**  22/17
**tough** **[1]**  70/21
**track** **[1]**  44/21
**training** **[2]**  36/17 90/7
**transcript** **[4]**  1/12 138/23
139/18 141/4
**transferred** **[1]**  89/17
**transferring** **[1]**  67/18
**treated** **[1]**  50/12
**treatments** **[1]**  90/18
**trial** **[3]**  1/12 134/1 134/6
**tried** **[1]**  79/22
**trillion** **[1]**  93/13
**trouble** **[2]**  56/13 65/6
**true** **[8]**  13/17 81/22 90/9 91/8
93/21 95/23 96/6 96/19
**trust** **[4]**  7/25 19/12 78/21
79/12
**trusted** **[2]**  83/8 83/8
**Trusting** **[1]**  19/2
**try** **[7]**  30/2 84/8 104/7 121/13
127/8 133/12 135/6
**trying** **[6]**  29/23 60/16 101/17
113/19 132/5 132/16
**Tuesday** **[6]**  15/9 70/11 70/17
73/8 136/22 141/7
**turned** **[2]**  90/17 105/21

**T**

**two [14]**   18/18 20/1 28/22 32/24
48/12 48/21 61/8 74/19 107/17
107/20 107/20 109/7 118/16
121/4

**two-year [3]**   107/17 107/20
107/20

**type [9]**   36/13 39/23 42/8 93/22
93/25 105/7 106/24 108/11 139/9

**U**

**U.S [4]**   44/7 76/5 122/2 141/12
**Uh [3]**   30/6 32/17 128/10
**Uh-huh [3]**   30/6 32/17 128/10
**ultimately [3]**   41/22 47/8 96/3
**unable [1]**   44/6
**uncles [1]**   23/23
**under [8]**   4/14 34/8 38/6 38/18
102/21 129/10 132/1 132/2
**underlying [2]**   115/11 116/16
**underneath [1]**   82/7
**understand [22]**   4/11 4/15 4/24
24/15 60/15 97/5 97/21 97/24
100/9 100/20 117/10 118/8 120/8
124/6 127/23 130/13 133/10
133/13 133/13 135/2 136/15
138/3
**understanding [5]**   59/9 70/19
71/16 92/19 97/18
**understands [1]**   114/9
**understood [3]**   60/24 63/3 71/25
**Unfortunately [1]**   88/17
**unhappy [1]**   90/15
**unit [1]**   52/1
**UNITED [2]**   1/2 76/24
**University [3]**   36/11 36/12
107/8
**unless [2]**   24/11 117/20
**unmute [3]**   102/1 102/10 102/16
**unplug [1]**   38/6
**unproductive [1]**   90/12
**until [13]**   10/8 10/8 14/14 22/5
22/6 25/1 70/24 77/16 85/1
114/23 115/1 118/24 134/6
**up [33]**   5/5 11/22 12/1 12/1
24/8 25/15 27/10 27/24 27/24
43/20 55/14 57/23 64/18 64/20
64/24 67/3 74/1 74/23 74/24
75/13 80/10 86/25 95/4 101/19
115/1 118/25 121/21 123/25
128/16 132/9 132/13 138/14
140/5
**upon [6]**   4/23 5/7 14/12 14/12
41/24 71/7
**us [19]**   6/6 6/11 7/18 18/4
21/10 41/10 47/7 61/6 78/15
80/5 80/23 81/9 87/5 99/24
100/7 101/18 110/19 122/7
122/11
**use [10]**   23/6 50/24 55/4 67/19
67/19 86/15 92/6 96/5 136/7
139/14
**used [13]**   18/23 20/9 37/1 46/15
55/2 84/14 92/9 95/6 97/19
107/20 128/3 128/4 136/8
**using [2]**   47/24 54/13

**V**

**VA [6]**   51/24 51/25 89/5 89/14
89/17 90/8
**vaccinated [1]**   34/18
**valued [1]**   93/23

**variety [2]**   37/14 110/24
**various [2]**   26/6 81/6
78/13
**Vel [1]**   72/9
**Vela [11]**   27/13 28/2 74/12
74/22 75/8 80/22 81/9 86/1
86/25 87/5 87/19
**vendor [1]**   40/1
**verbal [1]**   36/8
**verification [2]**   35/15 35/16
**version [4]**   12/1 12/5 27/12
50/19
**versus [2]**   60/6 82/8
**very [21]**   14/2 20/5 20/17 20/20
45/6 47/22 57/10 87/25 88/3
88/5 88/23 91/1 94/18 95/18
96/1 115/19 124/17 124/18 136/5
136/11 138/18
**via [2]**   4/12 99/22
**video [2]**   99/22 100/21
**violate [2]**   19/11 112/11
**visit [4]**   38/23 51/19 51/21
89/7
**visited [4]**   19/14 19/20 19/25
51/23
**visits [1]**   52/4
**VOL [1]**   3/12

**W**

**wait [1]**   134/6
**waiting [2]**   73/14 101/13
**waived [2]**   135/5 135/13
**waiver [7]**   133/16 133/18 134/5
134/10 134/10 135/1 138/16
**Wales [2]**   81/6 81/13
**wallets [1]**   67/16
**walls [1]**   128/25
**want [51]**   5/25 6/21 6/24 7/3
7/17 8/12 10/17 11/22 24/13
24/15 27/10 27/19 27/19 27/20
45/18 46/23 55/13 58/25 59/25
60/1 62/8 64/6 68/19 68/20
69/24 70/1 71/19 85/18 94/20
95/19 97/16 97/20 97/21 102/8
112/9 114/12 114/19 115/6
117/24 118/8 122/25 123/5 124/4
129/9 129/9 130/9 132/8 133/1
133/12 136/20 138/17
**wanted [7]**   4/7 4/14 94/14 94/14
100/9 114/6 135/3
**was [303]**
**wasn't [18]**   24/9 24/9 24/24
29/18 29/23 30/18 32/15 32/18
36/25 42/21 44/10 85/1 90/12
90/15 90/23 92/24 123/4 133/7
**watch [2]**   101/21 105/10
**watermark [2]**   86/21 86/22
**way [10]**   16/22 23/17 32/15
38/10 43/7 46/6 50/20 104/7
123/14 130/20
**ways [1]**   42/11
**we [181]**
**we'd [1]**   37/5
**we'll [12]**   6/8 6/15 8/1 59/7
59/25 71/12 71/12 71/16 72/6
136/22 139/24 139/24
**we're [41]**   4/22 5/3 5/5 27/5
27/16 42/16 50/11 59/5 61/12
61/13 63/1 69/2 69/7 70/7 70/9
70/15 70/17 70/22 71/7 71/17
71/8 101/25 101/25 102/4
102/17 104/2 113/23 114/2 121/7
121/11 124/21 130/16 130/16

130/18 131/14 132/16 132/25
**we've [4]**   10/5 69/18 121/13
134/17
**webinar [1]**   90/7
**webinars [1]**   90/6
**Wednesday [3]**   71/22 136/23
136/24
**wee [1]**   118/24
**week [6]**   6/15 30/16 70/11 71/17
71/24 137/1
**weekly [2]**   51/23 52/3
**weeks [1]**   118/16
**Welcome [3]**   4/5 7/24 72/5
**well [46]**   5/9 10/6 10/19 21/23
23/11 23/13 23/15 24/13 24/14
32/15 32/16 36/22 38/14 44/12
70/25 71/10 75/23 86/23 95/15
98/4 100/5 100/10 100/19 102/11
105/9 106/16 108/2 108/21 109/5
109/21 110/9 110/13 110/20
111/7 112/8 113/21 121/7 121/15
123/4 125/12 129/3 129/4 133/21
134/23 136/14 139/17
**Wells [1]**   131/3
**went [3]**   21/23 42/18 135/23
**were [105]**   4/4 7/23 9/12 10/12
14/3 14/4 15/7 18/9 18/18 19/17
19/25 20/4 20/5 21/1 21/4 21/4
21/7 21/25 22/19 25/13 27/10
30/1 35/24 38/12 38/17 38/24
41/14 42/8 42/14 42/21 43/4
45/1 46/8 46/17 47/24 49/23
58/8 58/9 64/8 64/20 67/16
67/20 69/5 69/17 72/4 73/6 74/7
77/9 77/9 77/21 78/13 78/13
78/19 79/1 79/6 79/25 80/3 80/4
80/10 83/7 83/8 83/11 83/11
83/20 85/5 85/6 85/9 88/19
88/20 88/22 88/23 89/20 91/12
92/14 94/22 95/6 95/9 95/11
95/13 97/13 104/15 104/16
104/24 105/1 105/4 105/17
105/25 106/12 109/7 109/12
113/7 113/7 114/6 114/14 116/10
119/3 120/14 120/23 127/15
131/18 131/19 131/19 131/22
135/17 137/11
**weren't [1]**   53/1
**West [1]**   47/23
**Westlaw [1]**   131/3
**what [121]**   7/8 8/2 8/22 8/22
10/18 13/14 13/16 13/23 13/25
14/11 14/12 15/22 21/7 21/12
21/18 21/19 21/21 23/15 23/18
27/7 27/15 27/19 28/12 28/14
29/5 29/16 30/10 30/17 31/7
31/9 31/11 32/1 32/5 32/19
32/23 33/1 33/3 36/13 38/14
39/21 39/21 39/21 39/23 39/23
40/20 45/12 48/13 48/16 49/13
49/20 49/20 50/3 50/15 52/9
52/14 53/14 55/21 56/24 58/7
58/7 60/4 60/5 60/6 60/25 67/6
70/19 76/5 80/1 80/5 83/10 84/5
84/20 92/19 94/16 94/16 97/20
103/23 105/6 105/25 105/25
106/3 106/14 106/14 106/15
106/23 106/24 107/3 108/1 108/6
108/7 108/14 108/14 108/19
109/1 109/3 109/10 110/19
110/22 111/4 112/10 115/10
115/12 116/6 116/23 119/17

**W**

**what... [16]** 122/11 126/10
127/8 127/22 128/7 129/5 129/6
129/12 130/10 130/13 130/19
130/19 131/7 132/16 134/21
138/24

**what's [6]** 43/11 113/21 113/21
118/8 128/25 129/11

**whatever [3]** 43/4 59/8 60/2

**wheelchair [2]** 37/1 38/20

**when [65]** 13/8 15/7 15/14 19/7
19/15 19/20 19/25 22/3 22/5
23/20 24/19 25/2 29/7 29/18
35/20 36/23 37/5 38/12 41/7
42/4 42/21 42/21 44/20 44/20
44/20 51/23 53/1 55/7 63/2
64/24 73/8 73/25 79/25 80/10
83/1 83/24 84/5 84/15 84/21
84/23 85/8 85/11 88/24 89/2
89/4 89/15 90/4 90/13 90/15
90/21 104/15 104/21 104/22
104/25 105/6 105/16 105/20
106/5 106/8 106/11 106/11
108/17 111/4 112/20 115/1

**where [26]** 12/19 13/22 20/1
28/6 28/24 29/4 35/18 36/4
36/15 37/25 38/17 38/19 40/13
51/16 54/3 54/24 66/3 70/19
78/6 107/6 125/8 130/7 133/25
135/18 135/23 138/14

**wherever [1]** 91/9

**whether [37]** 6/1 6/24 7/1 16/22
26/20 27/4 27/4 30/25 41/18
44/9 71/17 73/4 78/5 79/19
81/25 92/9 101/5 117/13 119/8
119/18 119/19 120/11 120/24
122/7 122/19 123/1 124/13
124/14 126/14 127/20 128/11
129/14 130/16 131/21 133/1
138/21 139/8

**which [23]** 20/9 27/11 31/8 40/1
50/1 54/8 57/7 74/12 75/9 80/24
108/4 114/24 116/10 117/19
119/20 120/5 125/13 127/4
131/13 131/14 134/7 137/1
138/22

**whichever [1]** 46/16

**while [8]** 5/20 18/4 18/9 20/2
34/19 47/21 73/22 91/2

**white [2]** 62/19 62/25

**whitepaper [1]** 11/2

**who [9]** 15/10 39/15 41/20 47/3
73/6 84/24 85/3 94/16 132/13

**who's [1]** 47/4

**whole [3]** 44/4 127/7 132/7

**why [16]** 23/14 24/22 40/22
47/18 55/6 60/16 64/20 68/25
95/23 96/21 97/18 111/18 111/20
112/6 121/5 121/9

**wide [1]** 23/19

**wife [4]** 105/9 105/10 105/19
105/20

**Wikipedia [1]** 14/15

**will [26]** 5/7 42/17 42/25 48/4
59/10 60/3 62/5 70/23 100/20
101/18 101/21 116/1 116/2 116/2
125/6 135/11 136/2 136/9 136/23
136/24 137/2 137/13 139/6 139/6
140/4 140/14

**willing [1]** 6/4

**Windows [1]** 92/7

**wish [2]** 85/14 140/1

**within [4]** 43/3 77/10 122/25
138/18

**without [10]** 94/15 96/15 98/14
98/17 103/18 104/6 115/10
116/22 120/1 128/14

**witness [27]** 5/4 5/20 8/8 12/6
22/14 33/15 33/17 33/25 34/11
35/3 55/15 57/24 70/7 71/7 79/4
80/16 82/4 99/20 101/22 102/11
102/24 121/6 121/8 124/4 124/8
132/19 134/22

**witness's [3]** 23/7 61/18 66/21

**witnesses [5]** 3/3 70/10 70/13
70/16 70/25

**woman [1]** 22/8

**woman's [1]** 79/6

**won't [2]** 61/14 139/6

**wonder [1]** 101/5

**Wonderful [1]** 69/23

**word [8]** 28/1 29/13 32/6 93/21
94/1 94/14 96/9 96/11

**words [13]** 10/18 18/23 27/21
28/23 29/23 31/9 31/11 31/23
32/1 74/19 83/9 87/9 116/22

**work [34]** 7/18 8/1 20/24 22/3
22/24 23/7 35/13 37/7 37/16
37/21 38/5 38/14 39/24 41/1
41/3 42/8 43/5 58/9 58/10 59/7
61/13 61/17 62/5 69/17 73/8
88/13 89/20 89/20 89/20 90/16
90/1 111/1 116/19 131/11

**work-related [1]** 37/21

**workday [1]** 19/14

**worked [14]** 18/13 23/2 39/7
39/14 47/6 88/16 88/18 90/4
90/25 107/23 117/14 118/1
119/17 119/23

**worker [1]** 91/1

**working [27]** 9/19 11/9 18/4
18/9 19/17 19/23 21/4 21/7
21/25 37/25 39/22 49/23 62/12
63/14 90/15 90/18 90/19 90/21
95/9 101/21 101/22 114/22
118/24 119/5 119/19 120/9
137/20

**works [1]** 100/10

**would [121]** 5/18 6/5 19/4 19/8
23/12 29/19 29/24 30/24 31/1
31/2 31/6 37/4 37/8 37/10 37/13
38/2 38/3 38/7 38/9 38/10 38/14
38/17 38/21 39/9 40/5 41/3 41/4
41/5 41/5 42/9 42/22 43/4 43/6
43/10 43/10 44/10 44/14 44/18
44/21 44/21 44/24 45/14 46/6
46/13 46/14 46/16 47/16 47/22
47/25 48/14 48/16 49/22 49/23
51/23 52/2 52/4 52/4 52/4 52/7
52/10 52/10 52/10 53/1 53/2
53/5 55/4 55/23 57/2 59/18 61/5
61/16 62/19 63/2 63/4 64/11
65/19 71/9 71/21 71/22 74/7
74/8 75/20 78/10 79/23 86/15
88/17 91/11 92/5 93/25 93/25
94/9 95/3 96/14 96/20 97/16
97/20 97/24 98/9 98/16 100/9
102/13 104/21 104/21 105/12
110/9 111/7 111/8 112/24 114/18
115/7 115/13 124/7 125/9 126/8
130/5 130/20 131/9 136/20 137/1
139/17 139/21

**wouldn't [6]** 92/18 94/5 95/25
96/5 97/3 97/18

**WRIGHT [51]** 1/8 8/6 10/18 10/21

10/23 11/3 11/5 11/16 16/12
62/10 62/13 63/14 63/18 63/24
64/3 73/2 73/10 73/16 73/17
73/23 74/2 74/18 74/19 75/15
76/4 76/24 77/11 77/20 78/5
79/1 80/14 80/18 81/21 81/25
82/8 82/17 85/1 85/6 87/4 99/21
118/13 120/19 120/25 127/21
133/4 138/6

**Wright's [7]** 25/22 26/12 74/23
74/23 75/2 78/16 80/10

**write [4]** 29/7 33/16 91/24
99/10

**writing [4]** 29/3 29/18 54/13
85/22

**written [2]** 11/2 81/12

**wrong [3]** 25/25 94/14 100/16

**wrote [5]** 29/18 29/24 31/7
32/24 33/1

**Y**

**yeah [33]** 17/23 19/3 19/6 19/19
21/22 24/17 25/2 26/22 27/6
27/7 28/14 29/6 30/12 31/21
37/9 49/15 50/6 59/22 59/25
60/14 85/17 86/5 101/18 102/4
102/6 104/23 107/8 108/21 110/9
110/20 112/5 113/4 124/10

**year [22]** 22/6 43/1 88/18
107/14 107/15 107/17 107/20
107/20 111/11 112/22 113/14
114/23 114/24 115/3 116/20
117/16 118/21 120/13 120/15
122/8 124/14 124/14

**year's [1]** 107/5

**years [14]** 4/16 40/24 42/17
48/21 63/1 97/18 107/20 107/22
109/7 109/9 113/12 114/6 114/14
133/3

**yes [202]**

**yes-or-no [2]** 117/9 119/25

**yet [3]** 55/14 101/11 137/25

**York [2]** 1/19 1/19

**you [783]**

**you'd [3]** 7/19 99/9 139/18

**you'll [3]** 30/16 34/5 136/17

**you're [23]** 5/14 12/23 24/25
29/3 29/9 29/10 30/7 30/8 30/10
34/19 67/6 83/21 83/21 112/8
112/10 118/7 129/12 129/14
130/13 132/23 137/5 140/5 140/7

**you've [5]** 15/16 30/25 39/21
44/24 87/14

**younger [1]** 104/15

**your [207]**

**Your Honor [99]** 4/7 4/22 5/21
6/6 6/10 6/11 6/13 6/17 6/25
12/2 17/3 17/6 22/16 24/10 25/5
33/5 33/11 33/20 47/25 48/2
53/17 54/15 56/7 56/9 57/12
58/19 58/21 59/16 60/13 60/13
60/20 61/6 62/21 66/17 68/11
68/14 68/18 70/6 70/14 70/15
71/3 71/7 71/25 76/9 87/6 96/24
98/25 99/3 99/6 99/21 99/24
100/8 100/18 100/20 101/12
101/20 102/14 111/23 113/24
115/16 116/4 117/2 119/12
119/22 121/3 123/3 123/11
123/24 124/2 124/5 124/11
124/12 124/17 124/20 124/24
125/17 126/19 127/7 127/11

**Y**

**Your Honor... [20]**   127/20 128/6
 128/13 130/13 131/10 132/1
 132/7 134/9 134/20 134/22 135/2
 135/8 137/16 138/13 138/17
 138/19 139/2 139/2 140/9 140/16
**yours [2]**   103/18 104/1
**Yvette [1]**   7/19

**Z**

**ZACK [1]**   1/23
**ZALMAN [1]**   2/8
**zero [1]**   85/19
**zone [1]**   73/13
**zoom [8]**   4/12 5/20 86/4 99/25
 100/2 118/8 121/14 134/18