Pages 1 - 119

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Before The Honorable Beth Bloom, Judge

| | | |
|---|---|---|
| IRA KLEIMAN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| VS. | ) | NO. 18-CV-80176-BB |
| | ) | |
| CRAIG WRIGHT, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Miami, Florida
Monday, November 22, 2021

**TRANSCRIPT OF JURY TRIAL, DAY 14**

**(AFTERNOON SESSION)**

**APPEARANCES**:

For Plaintiffs:

ROCHE FREEDMAN, LLP
One Southeast Third Avenue, Suite 1240
Miami, Florida 33131
BY: **DEVIN FREEDMAN, ESQ.**

ROCHE FREEDMAN, LLP
99 Park Avenue, Suite 1910
New York, New York 10016
BY: **KYLE ROCHE, ESQ.**

BOIES SCHILLER FLEXNER
100 Southeast Second Street, Suite 2800
Miami, Florida 33131-2144
BY: **ANDREW SCOTT BRENNER, ESQ.**
**STEPHEN N. ZACK, ESQ.**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported by:    James C. Pence-Aviles, RMR, CRR, CSR No. 13059
                Official Court Reporter

 1   **APPEARANCES**:   (CONTINUED)

 2   For Plaintiffs:
                          BOIES SCHILLER FLEXNER LLP
 3                        44 Montgomery Street, 41st Floor
                          San Francisco, California 94104
 4                  BY:   **MAXWELL V. PRITT, ESQ.**

 5   For Defendant:
                          RIVERO MESTRE LLP
 6                        2525 Ponce de Leon Boulevard, Suite 1000
                          Coral Gables, Florida 33134
 7                  BY:   **ANDRES RIVERO, ESQ.**
                          **JORGE ALEJANDRO MESTRE, ESQ.**
 8                        **AMANDA MARIE MCGOVERN, ESQ.**
                          **AMANDA LARA FERNANDEZ, ESQ.**
 9                        **SCHNEUR ZALMAN KASS, ESQ.**

10                        RIVERO MESTRE LLP
                          565 Fifth Avenue, Seventh Floor
11                        New York, New York 10017
                   BY:    **MICHAEL A. FERNANDEZ, ESQ.**
12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                      I N D E X

 2   Monday, November 22, 2021 - Day 14

 3   DEFENDANT'S WITNESSES                    PAGE   DAY

 4   WRIGHT, CRAIG
     (PREVIOUSLY SWORN)                          6   14
 5   Cross-Examination by Mr. Freedman            6   14

 6                    E X H I B I T S

 7   PLAINTIFFS' EXHIBITS             IDEN   EVID   DAY

 8    P-156.1                          26     26    14

 9    P-157.1                          27     27    14

10    P-160.1                          24     24    14

11    P-727.1                          28     28    14

12    P-733.1                          30     30    14

13   DEFENDANT'S EXHIBITS             IDEN   EVID   DAY

14    D-20                                    95    14

15    D-85                                    98    14

16    D-158                                   99    14

17    D-159                                  100    14

18    D-179                                  101    14

19    D-180                                  101    14

20    D-181                                  103    14

21    D-331                                  104    14

22

23

24

25
```

1   <u>**Monday - November 22, 2021**</u>                              <u>**1:45 p.m.**</u>

2                        <u>**P R O C E E D I N G S**</u>

3                              **---oOo---**

4        (Proceedings were heard out of the presence of the jury:)

5            **THE COURT:**  All right.  Welcome back.

6        **MR. FREEDMAN:**  Your Honor, plaintiffs have one

7   housekeeping thing to raise.

8            **THE COURT:**  All right.  Go ahead and have a seat.

9        **MR. FREEDMAN:**  We wanted to make sure we raised this

10  before the jury was back in, Your Honor.

11       On the stand today and a few days ago, Dr. Wright

12  testified that the reason his marriage with Lynn Wright fell

13  apart was because of his dedication to Bitcoin.

14       We had no intention of raising this, but now we believe

15  he's opened the door to the fact that Ms. Lynn Wright actually

16  testified the reason his marriage fell apart with her was

17  because Dr. Wright had an affair with Ms. Watts.

18       **MR. RIVERO:**  Your Honor, I think that's classic 403.

19  I'm not sure what an allegation of infidelity would bear on the

20  merits of the case, and I would request that that not be

21  granted.

22           **THE COURT:**  Well --

23       **MR. FREEDMAN:**  I mean, your Honor --

24       **THE COURT:**  -- how has Dr. Wright not opened the door

25  when he himself stated that the marriage was -- the breaking of

1   the marriage was as a result of his involvement in Bitcoin?

2        **MR. RIVERO:**  Well, Judge, I think, first, the two are

3   not mutually exclusive, Your Honor, Number 1.  So I don't think

4   that it opens the door in the sense that a marriage could be in

5   trouble for a lot of reasons and then come to an end for

6   another.  Infidelity, Judge, is, of course, a matter that

7   people take quite seriously and react to.

8        And so in the balancing, I don't see where it advances

9   the -- what the relevance is to establish the reason why his

10  marriage -- what we're bidding on is what's the real reason for

11  the marriage falling apart.  It's not going to establish he

12  wasn't involved in Bitcoin, that there was the infidelity.

13  That doesn't work that way.

14       So -- but this is to establish that the marriage fell

15  apart for another reason.  That's really not relevant, Judge,

16  and people tend to be prejudiced about that for obvious

17  reasons.  So for that reason, I would -- I would request it not

18  be granted.

19       **THE COURT:**  I agree.  On balance, the statement was

20  innocuous.  To the extent that the defendant persists with

21  regard to that area of testimony, then it will open the door.

22  But I -- I agree at this point that the probative value is

23  certainly outweighed by the danger of unfair prejudice, and the

24  Court will not permit it for purposes of impeachment.

25       Anything further?

1    **MR. FREEDMAN:**  Not for plaintiffs, Your Honor.

2         **THE COURT:**  Okay.  Let's bring in the jury.

3         **COURT SECURITY OFFICER:**  All rise for the jury.

4    (Proceedings were heard in the presence of the jury:)

5         **THE COURT:**  All right.  Welcome back, ladies and

6    gentlemen.  Please be seated.

7    I trust that you each had a pleasant lunch and ready to

8    get back to work, and we'll continue with the questioning.

9                        **CRAIG WRIGHT**,

10   called as a witness for the Defendant, having been previously

11   duly sworn, testified further as follows:

12                      **CROSS-EXAMINATION**

13   BY MR. FREEDMAN:

14   **Q.**  Good afternoon, Dr. Wright.

15   **A.**  Good afternoon.

16   **Q.**  Dr. Wright, this morning when Mr. Rivero was asking you

17   questions, he asked you about the history of editing the

18   Bitcoin whitepaper.  Do you recall those questions?

19   **A.**  I recall.

20   **Q.**  Dr. Wright, do you want a pad and pen for my questioning

21   also?

22   **A.**  I have one.  Thank you.  I've still got the same one.

23   **Q.**  And you testified this morning in direct that you did --

24   you had a 60-page version that you did not share with Dave

25   Kleiman.  Do you recall?

1   **A.**   Yes, I recall.

2   **Q.**   And you testified you had a 20-page version that you did

3   not share with Dave Kleiman.  Do you recall that?

4   **A.**   I recall that.

5   **Q.**   And you testified that you had a 10-page version, and that

6   was the final one you shared with Dave Kleiman; right?

7   **A.**   Yes.

8        **MR. FREEDMAN:**  Ms. Vela, can you put on for counsel,

9   please, and the Court Day 9 of the trial testimony from Dr.

10  Wright, Page 12, Line 21, through Page 13, Line 15.

11      May I proceed, Your Honor?

12        **THE COURT:**  You may.

13  **BY MR. FREEDMAN:**

14  **Q.**   Dr. Wright, you recall on Day 9 you were under

15  testimony -- sworn testimony in this court before this judge

16  and this jury, and I asked you the following questions, and you

17  gave the following answers?

18      "Question:  Dr. Wright, do you then recall that I showed

19  you this email from yourself to now Ira Kleiman dated

20  February 14th, 2014, where you tell him that Dave Kleiman was

21  involved with that PDF, the Bitcoin whitepaper.  He had the

22  Vistomail account, Satoshi Nakamoto's Vistomail account, and

23  that he should start looking for private keys and wallet.dat

24  files?  Do you recall that?"

25      "Answer:  I certainly do.  And as I said to you, Dave was

WRIGHT - CROSS / FREEDMAN

1  crucial because when he first looked at and edited the

2  whitepaper that I started writing by hand following doing the

3  code, it was horrendously long.  I mean, it is much better now.

4  It is only a short easy-to-read paper."

5      "When I first wrote it, I, like many academics, put in too

6  much -- I'm sorry.  I'm Australian, but the only word I can

7  think of is wankery.  It's a good way of describing what

8  academics get like.  It was nearly 60 pages long.  There was a

9  whole lot of complete BS that no one needed to know."

10     "And Dave told me to get rid of it.  I did.  So yes, if it

11  had been a 60-page paper full of academic wankery, no one would

12  read it.  So he was critical in that."

13     Do you recall those questions and those answers, Dr.

14  Wright?

15  **A.**   I do.

16  **Q.**   Do you remember, Dr. Wright, this morning on direct

17  examination Mr. Rivero asked you about racks of computer

18  servers that you had at Bagnoo and Lisaraw?

19  **A.**   Lisarow, yes.

20  **Q.**   Lisarow.  Thank you.

21     And you also said that you had racks of machine mining

22  Bitcoin in Malaysia and Tokyo and, in fact, at churches.  Do

23  you recall that?

24          **MR. RIVERO:**  Objection.  Misstates -- mischaracterizes

25  the testimony.

1          **THE COURT:**  Overruled.

2      You may answer.

3  **BY MR. FREEDMAN:**

4  **Q.**   Do you recall that?

5  **A.**   I do.

6          **MR. FREEDMAN:**  Ms. Vela, can you please play Clip

7  Number 112 from Dr. Wright's April 4th -- April 4th, 2019,

8  deposition.  For the record, that's Page 194, Lines 8 through

9  24.

10      That's the wrong clip, Ms. Vela.  110.

11          **MR. RIVERO:**  May I have the -- may I have the

12  reference again?  I'm sorry.

13          **MR. FREEDMAN:**  Yes.  It is April 4th, 2019, 194, 8

14  through 28.

15      Go ahead, Ms. Vela.

16      Can we have sound?  We don't have sound?

17          **THE COURT:**  Let's try it one more time.

18          **THE CLERK:**  Try again.

19          **MR. FREEDMAN:**  Nope.

20          **THE COURT:**  Hmm.

21          **THE CLERK:**  Everything's going.

22          **MR. FREEDMAN:**  I'm being told it may help if we

23  restart the Court's audio system.

24          **THE CLERK:**  I don't know if I can do that.  That's

25  going to take a bit if I do that.

WRIGHT - CROSS / FREEDMAN

```
 1          THE COURT:  Do you want to call someone in IT?

 2          THE CLERK:  I'll turn it off and back on, but it's

 3   going to be a little bit.

 4          MR. FREEDMAN:  I'm sorry?

 5          THE CLERK:  I said I'll turn it off and back on, but

 6   it's going to be a couple minutes.

 7          THE COURT:  All right.

 8          MR. FREEDMAN:  Actually, since it's been so long,

 9   while we're waiting, Mr. Court Reporter, would you mind reading

10   back the last two questions and answers?

11                         (Record read.)

12          THE CLERK:  Okay.  I've reset everything.

13          MR. FREEDMAN:  Ms. Vela --

14          THE CLERK:  Let's try it again.

15          MR. FREEDMAN:  -- can you -- can you see if Clip 110

16   will work for us now?  Do you have audio playing?  Are you

17   hooked up and everything?

18       It still doesn't appear to be working.

19          THE COURT:  It does not.

20       All right.  If we can call in IT, please.

21       While we're waiting for IT, can we go to another area --

22          MR. FREEDMAN:  Yes, Your Honor.

23          THE COURT:  -- and then we'll come back?

24          MR. FREEDMAN:  Absolutely.  I was just looking at

25   that.
```

WRIGHT - CROSS / FREEDMAN

1      Ms. Vela, can you please pull up Document D-164 on the

2   screen.  Ms. Vela, can we get D-164 on the screen, please.  And

3   I believe this is in evidence.

4      If we can -- perfect.  Thank you.

5   **BY MR. FREEDMAN:**

6   **Q.**   Dr. Wright, do you recall testifying about this document

7   at -- at -- during your direct testimony?

8   **A.**   Yes.

9   **Q.**   And, Dr. Wright, you're familiar with metadata.  You are a

10  forensic expert; correct?

11  **A.**   I have been in the past, yes.

12  **Q.**   And this particular document that we're looking at right

13  here is a scan of a paper document; correct?

14  **A.**   On the screen, it is, yes.

15  **Q.**   You can even see the little binder holes in the left-hand

16  side of this document; right?

17  **A.**   Yes.

18  **Q.**   And that means that the only metadata, that hidden

19  computer meta- -- can we put that back up, please.  And that

20  means the only metadata or the hidden computer data about this

21  particular document is from what the scanner added onto it when

22  it was scanned into a computer file; correct?

23  **A.**   No.

24  **Q.**   Because when you create a handwritten document, Dr.

25  Wright, there's no computer data associated with that; correct?

**WRIGHT - CROSS / FREEDMAN**

 1   **A.**   Not necessarily.  That's incorrect.

 2   **Q.**   So is it your testimony that when you write with a pen and

 3   paper on a piece of document, you create metadata?

 4   **A.**   No.

 5   **Q.**   So when this document was created by you, whenever that

 6   was, there's no computer data associated with that; correct?

 7   **A.**   Not correct.

 8   **Q.**   And it only gets computer data associated with it once it

 9   is scanned and put into computer files somehow; correct?

10   **A.**   No.  There are printed dots.

11   **Q.**   There are printed dots on it.

12       Okay.  Have you had an expert come and talk to you about

13   the printed dots?

14   **A.**   Not about printed dots, no.

15   **Q.**   This document -- the printed dots will tell you about only

16   the part of the document that was printed when it was first

17   printed; right?  When it was blank; correct?

18   **A.**   Yes.

19   **Q.**   And there is no metadata associated with your handwritten

20   annotations on this document; correct?

21   **A.**   Technically, no, that's not correct.

22   **Q.**   And you realize, Dr. Wright, that by producing a

23   handwritten document like this, you have prevented Dr. Edman

24   from examining whether or not it's a forgery through metadata;

25   correct?

WRIGHT - CROSS / FREEDMAN

1   **A.**   No.

2   **Q.**   There is nothing that could have stopped you from drafting

3   that document six months ago, writing "August '07" on it,

4   scanning it into a computer, and producing it to us; isn't that

5   correct?

6   **A.**   No, that's wrong.

7   **Q.**   Dr. Wright, in your direct testimony, you talked about

8   setting up 69 computers costing $600,000.  Do you recall that?

9   **A.**   That's not accurate in what you said, no.  What I said was

10   69 computers plus other equipment.

11   **Q.**   $600,000 in equipment?

12   **A.**   636,000 approximately, yes.

13   **Q.**   To set up Bitcoin?

14   **A.**   To -- sorry?

15   **Q.**   To set up the operations of what became Bitcoin?

16   **A.**   In part.

17   **Q.**   And $11,000 in electricity?

18   **A.**   Not entirely.

19   **Q.**   Per month?

20   **A.**   That was my personal expense.

21   **Q.**   And do you recall during cross-examination, I asked you

22   about whether you and Dave kept your Bitcoin partnership a

23   secret, and you responded that "At least 3- or 400 people knew

24   that I was Satoshi in Australia" and that you registered

25   Information Defense and recorded it with the Government?

WRIGHT - CROSS / FREEDMAN

 1   **A.**   Yes.

 2   **Q.**   You also testified that, "I had claimed Bitcoin in

 3   June 2009 as an asset.  The tax office said there was no value

 4   to this thing called Bitcoin.  It is a hobby.  I claimed

 5   expenses of 2.2 million in setting up Bitcoin.  The tax office

 6   said it is a sham because this stuff thereby is never worth

 7   anything."

 8        Do you recall that?

 9        **MR. RIVERO:**  Objection, Your Honor.  Objection,

10   Your Honor.  It's just publication of prior testimony.

11        **THE COURT:**  The --

12        **MR. RIVERO:**  I'm sorry, Judge.  It's just publication

13   of prior testimony.  It's neither impeachment nor a question.

14        **THE COURT:**  Overruled.

15   **BY MR. FREEDMAN:**

16   **Q.**   Do you recall that?

17   **A.**   Yes.

18   **Q.**   And that was on behalf of Integyrs and Information

19   Defense; right?

20   **A.**   I mentioned those companies, yes.

21   **Q.**   Dr. Wright, do you know that the Australian Tax Office

22   found that the audit reports for those entities contains no

23   reference to Bitcoin whatsoever?

24        **MR. RIVERO:**  Objection.  Beyond the scope.

25        **THE COURT:**  Overruled.

WRIGHT - CROSS / FREEDMAN

1          THE WITNESS:  I disagree.

2          MR. FREEDMAN:  Ms. Vela, can you please bring up

3    P-320.  It's in evidence.  Let's go to Page 52, and let's zoom

4    in, please, on Paragraph 275.

5    BY MR. FREEDMAN:

6    Q.    "Dr. Wright has stated that he mined the 1.1 million

7    Bitcoin and tried to sell the rights to it to Information

8    Defense and Integyrs and that the ATO disallowed his personal

9    deductions related to mining and did not accept the transfer to

10   the two companies."

11         MR. RIVERO:  Judge -- Judge --

12   BY MR. FREEDMAN:

13   Q.    "He has conversely stated that it was mined by Information

14   Defense and Integyrs.  The ATO audit report for these entities

15   contains no reference to Bitcoin."

16         MR. RIVERO:  Objection, Your Honor.  The direct

17   specifically avoided discussion of any controversy --

18         THE COURT:  I understand.  If you're saying that it's

19   outside the scope of -- of direct, I -- there was testimony

20   with regard to Bitcoin.  The Court will allow it.

21   BY MR. FREEDMAN:

22   Q.    Do you see that, Dr. Wright?

23   A.    I see that.

24         MR. FREEDMAN:  Ms. Vela, can you bring us to Page 50,

25   and can you zoom in on Paragraph 260?

WRIGHT - CROSS / FREEDMAN

1    BY MR. FREEDMAN:

2    Q.    "We dispute Dr. Wright's contention that the ATO audited

3    and disallowed deductions related to Bitcoin mining on the

4    basis that Bitcoin mining was a hobby and that he tried to

5    transfer equitable interest in Bitcoin to related companies.

6    The audit report contains no references to Bitcoin."

7         Do you see that, Dr. Wright?

8              MR. RIVERO:   Same objection.

9              THE COURT:   The objection is noted.   It's overruled.

10             THE WITNESS:   I see that line.

11             MR. FREEDMAN:   Ms. Vela, can you please bring us to

12   Page 25, and can we zoom in on Paragraphs 140 through 142,

13   please.   140 to 142.

14   BY MR. FREEDMAN:

15   Q.    "The taxpayer contends that the following adverse ATO

16   audit outcomes where the ATO disallowed Dr. Wright's deductions

17   for Bitcoin mining disallowed the sale of rights to Bitcoin he

18   had mined to Information Defense and Integyrs.   Dr. Wright

19   transferred his 1.1 million Bitcoin to David Kleiman, a

20   U.S.-based friend and business associate of Dr. Wright who died

21   in April 2013."

22        "The taxpayer has provided a blog post as evidence of his

23   intention.   ATO forensics advises it is possible to backdate

24   blog posts.   We note that the audit record of these entities do

25   not refer to any transactions involving Bitcoin."

WRIGHT - CROSS / FREEDMAN

```
 1          Do you see that, Dr. Wright?

 2              MR. RIVERO:  Your Honor, may I have a standing

 3   objection?

 4              THE WITNESS:  I see that line.

 5              THE COURT:  You certainly may.

 6              MR. FREEDMAN:  Is our -- is our audio working now?

 7   BY MR. FREEDMAN:

 8   Q.   Okay.  Dr. Wright, I asked you about your direct testimony

 9   about mining at Bagnoo, Lisarow, Tokyo, Malaysia, and churches.

10   Do you recall a few moments ago I asked you about that?

11   A.   Yes.

12              MR. FREEDMAN:  Ms. Vela, please play us Clip 110.

13                  (Video was played but not reported.)

14              MR. FREEDMAN:  Ms. Vela, can you play Clip 112,

15   please.

16              MR. RIVERO:  Can we have the cites?

17              MR. FREEDMAN:  Yes.  For the record, it is -- hold on.

18   I actually don't know.  196, 9 through 13, same deposition.

19         Ms. Vela, please.

20                  (Video was played but not reported.)

21              MR. FREEDMAN:  Ms. Vela, can you please bring up

22   P-2 -- P-002 on the screen.

23              THE CLERK:  Is that in evidence?

24              THE COURT:  It's in evidence.

25              MR. FREEDMAN:  It is in evidence, yes.
```

WRIGHT - CROSS / FREEDMAN

 1          Can we please publish.

 2   **BY MR. FREEDMAN:**

 3   **Q.**   Dr. Wright, do you recall Mr. Rivero asking you about this

 4   email?

 5   **A.**   Yes.

 6   **Q.**   You testified about RCJBR when he asked you about it.  Do

 7   you recall that?

 8   **A.**   Yes.

 9   **Q.**   You said that you had registered RCJBR sometime after this

10   email was sent; right?

11   **A.**   It's public information, yes.

12          **MR. FREEDMAN:**  Ms. Vela, can you please play Clip 111

13   from Dr. Wright's deposition.  That's March 16th, 2020,

14   Page 152, Lines 13 through 21.

15          **MR. RIVERO:**  One moment before you put that up.

16          **MR. FREEDMAN:**  It's a party -- party deposition.

17   We're allowed to play it; right, Your Honor?

18          **THE COURT:**  You are.

19          **MR. FREEDMAN:**  Please play it, Ms. Vela.

20             (Video was played but not reported.)

21          **MR. FREEDMAN:**  Ms. Vela, can you please put P-856 on

22   the screen.  Can you zoom in on the relevant portion?

23          Yeah.  Thank you.

24   **BY MR. FREEDMAN:**

25   **Q.**   Dr. Wright, this purports to be an email from yourself to

WRIGHT - CROSS / FREEDMAN

 1   yourself on April 16th, 2014, with a message that purports to

 2   be from David Kleiman.

 3        Do you see that?

 4   A.   I see that, but I don't see the email address.  So I can't

 5   comment on that.  Sorry.

 6             MR. FREEDMAN:  Ms. Vela, can you please put up P-807

 7   side by side with P-856.

 8   BY MR. FREEDMAN:

 9   Q.   Dr. Wright, on the right side of the screen is P-807.

10   That's also in evidence.  These two emails are virtually

11   identical except the one on the right appears to come from Dave

12   Kleiman and go to Uyen Nguyen -- oh -- two years earlier or so.

13        Do you see that?

14   A.   Yes, I do.

15   Q.   You were in the courtroom when Dr. Edman opined that both

16   of these emails were forgeries; correct?

17   A.   I was.

18   Q.   I want to focus on P-856, the one that has your email

19   addresses on them.  Okay?

20   A.   It doesn't have my email address.  Sorry.

21   Q.   Is your email -- your name on the top; right?

22   A.   It has "Craig S. Wright" and "Craig Wright," but I don't

23   use "Craig Wright" for my email at all.

24   Q.   Do you recall, Dr. Wright, that Dr. Edman showed us that

25   this email's header noted it originated from a particular IP

WRIGHT - CROSS / FREEDMAN

1   address; correct?

2   **A.**   No.   Sorry.   I don't recall.

3   **Q.**   Well, that was the 58.160.32.123 IP address that you

4   discussed this morning in your direct; correct?

5   **A.**   Yes, I remember that email.   That's the email address.

6          **MR. FREEDMAN:**   Ms. Vela, can you put P-856.1 on the

7   screen, please.   Let's leave these side by side for now.   Thank

8   you.   And it's in evidence, P-856.1.

9          And Line 51, Ms. Vela.   Can you highlight that for us?

10  There it is.

11  **BY MR. FREEDMAN:**

12  **Q.**   58.160.32.123; correct?

13  **A.**   That's what it says, yes.

14  **Q.**   And I'm sure you recall, Dr. Wright, that Dr. Edman used

15  something called Geo IP to trace that IP address to Eastern

16  Australia; right?

17  **A.**   He put it into a tool.   He didn't actually really do it

18  himself, but yes.   Yes.

19         **MR. FREEDMAN:**   Ms. Vela, let's bring -- let's put down

20  on the right side P-856.1, and let's bring up Geo IP Lookup,

21  P-856.2.

22  **BY MR. FREEDMAN:**

23  **Q.**   There it is again, 58.160.32.123; right?

24         **MR. FREEDMAN:**   Ms. Vela, actually, under the "IP

25  Address" column, the first one, if you don't mind.

WRIGHT - CROSS / FREEDMAN

1   **BY MR. FREEDMAN:**

2   **Q.**   Do you see that?

3           **MR. FREEDMAN:**  Ms. Vela, can we actually zoom in a

4   little bit?  It's kind of small.  Maybe just -- yeah.

5           Thank you.

6   **BY MR. FREEDMAN:**

7   **Q.**   Do you see that?

8   **A.**   Yes.

9   **Q.**   And you lived in Eastern Australia; right?

10  **A.**   I've lived in Eastern Australia, but as I said, I lived in

11  Sydney 900 kilometers away.

12  **Q.**   So the document says, "Wooloowin," and you're saying

13  that's about ten hours' drive from you in today's highways;

14  right?

15  **A.**   About that today.  Back then, longer.

16  **Q.**   And, in fact, in your direct today -- in your direct

17  testimony today, you suggested to us -- or you testified to us

18  that Jamie Wilson lives near Wooloowin; right?

19  **A.**   He has two properties, one in Post Code Area 2074, one in

20  4030.  Oh.  Sorry.  4074 and one at 4 -- I'll start again.  One

21  in 4074 and one in 4030.

22  **Q.**   And so it is your testimony that -- well, did you send

23  this email, P-856, that's on the left-hand side of the screen?

24  **A.**   No, I did not.

25  **Q.**   Did Jamie Wilson send it?

WRIGHT - CROSS / FREEDMAN

 1   **A.**   I can't say.  That IP address is associated with Jamie

 2   Wilson.  I don't know whether he sent it.

 3   **Q.**   Is it associated with you?

 4   **A.**   No, it is not.

 5          **MR. FREEDMAN:**  Ms. Vela, can you put down P-856 in the

 6   left-hand side of the screen?  Let's put down the call-out.

 7   Yes.

 8       Now, let's move P-856.2 with our IP address on the left to

 9   the left, and please bring up P-160 on the right.

10   **BY MR. FREEDMAN:**

11   **Q.**   Dr. Wright, do you recall you testified in this court

12   before this jury and under oath that this was an email from you

13   to Ira Kleiman on April 24th, 2014?

14   **A.**   I said I remembered an email and that I directed emails to

15   be sent.  I don't recollect whether that's the actual email

16   because I can't see an email address or anything.  So --

17          **MR. FREEDMAN:**  Ms. Vela, can we show the witness and

18   counsel Trial Day 7, Page 54, Dr. Wright's testimony?  I'm

19   looking at Lines 7 through 16.  Lines 7 through 16.  Thank you.

20       May I proceed?

21          **THE COURT:**  You may.

22   **BY MR. FREEDMAN:**

23   **Q.**   Dr. Wright, on Day 7 of trial, I asked you the following

24   questions.  You gave the following answers.

25          **MR. FREEDMAN:**  Ms. Vela, can you please bring up

WRIGHT - CROSS / FREEDMAN

1   P-160, and let's go to Page 1.

2   **BY MR. FREEDMAN:**

3   **Q.**   And right in the opening, "This is an email from" -- I

4   made sure we could publish it to the jury.  I said, "Dr.

5   Wright, this is an email from you to Ira Kleiman on April 24th,

6   2014?"

7       "Answer:  Yes."

8           **MR. FREEDMAN:**  Thank you, Ms. Vela.  You can put down

9   the trial transcript.

10      Ms. Vela, we're looking at the PDF of P-160.  Can you pull

11  up the -- oh.  And can we publish to the jury, please.  This is

12  already in evidence.

13          **THE COURT:**  You may.  It's in evidence.

14          **MR. FREEDMAN:**  We're looking at the -- the PDF of

15  P-160, but the parties' ESI agreement calls for production of

16  natives.  Can you bring the native of P-160 on the screen,

17  please.

18      Now, Ms. Vela, can you make sure that we can see the email

19  headers associated with the native file, please.

20          **MR. RIVERO:**  Judge, I do not believe the document on

21  the right-hand side is marked as an exhibit in this case, and I

22  don't think it's --

23          **THE COURT:**  Can you identify the document on the

24  right?

25          **MR. FREEDMAN:**  It's P-160.  It's the native file of

WRIGHT - CROSS / FREEDMAN

1    P-160.  The parties in the ESI agreement called for production

2    of native files and PDF files, including metadata associated

3    with those files like email headers.

4         MR. RIVERO:  Judge, that wasn't my -- my point was

5    that obviously the document on the left has a plaintiffs'

6    exhibit number.  The one on the right does not and has never

7    been identified in any way.

8         THE COURT:  Let's identify it now, please.

9         MR. FREEDMAN:  Okay.  It will be P-160.1.

10        (Plaintiffs' Exhibit P-160.1 marked for identification)

11        MR. FREEDMAN:  Your Honor, we can't stick a label on a

12   native file, but --

13        THE COURT:  All right.  160.1.

14   You may proceed.

15        MR. FREEDMAN:  Ms. Vela, can you please bring up the

16   native file again.

17   Your Honor, since we're marking it as a separate document,

18   I'd like to move P-160.1 into evidence.

19        THE COURT:  Any objection?

20        MR. RIVERO:  One moment, Your Honor.

21   No objection.

22        THE COURT:  All right.  Admitted into evidence.

23        (Plaintiffs' Exhibit P-160.1 received in evidence)

24        MR. FREEDMAN:  Ms. Vela, can you make sure we can see

25   the email headers of this document, please.

1      Ms. Vela, on the left-hand side, the P-160 PDF, can you

2 replace it with our Geo IP Lookup?  That would be P-856 -- no.

3 No.  On the left-hand side.  So let's leave up the native with

4 the headers on the right.

5        **MR. PRITT:**  No.  No.  You've got to take it down and

6 then put it back up.

7        **MR. FREEDMAN:**  Oh.  Okay.  Got it.  Learn something

8 new every day.

9      Okay.  Perfect.  And can you highlight the IP address for

10 us on the left-hand side, the one from Wooloowin, Australia?

11 **BY MR. FREEDMAN:**

12 **Q.**  Dr. Wright, I'm looking at the email header from the email

13 you testified was from you to Ira Kleiman, "Received From

14 CraigASUS."

15      Do you see that?

16 **A.**  I see that line.

17 **Q.**  And right underneath it, 58.160.32.123.

18      Do you see that, Dr. Wright?

19 **A.**  Yes, I do.

20 **Q.**  You testified this morning that IP addresses don't change

21 unless you personally sign off on them, didn't you?

22 **A.**  No.  That's actually misstating what I said.  Sorry.

23 **Q.**  Dr. Wright, you sent this email to Ira Kleiman, and you

24 sent the forgery, Number 6, didn't you?

25 **A.**  No.

WRIGHT - CROSS / FREEDMAN

1    **Q.**   That's your IP address, isn't it, Dr. Wright?

2    **A.**   No.   I don't use BigPond, and I didn't use BigPond at that

3    stage.

4            **MR. FREEDMAN:**   Ms. Vela, can you put the native of

5    P-160 down for us, and can you bring up the native of P-156,

6    which is in evidence?

7        Let's call this P-156.1, please.

8        (Plaintiffs' Exhibit P-156.1 marked for identification)

9            **MR. FREEDMAN:**   Your Honor, we move for the admission

10   of P-56.1 -- P-156.1 into evidence.

11           **THE COURT:**   Any objection?

12           **MR. RIVERO:**   No objection.

13           **THE COURT:**   Admitted into evidence.

14       (Plaintiffs' Exhibit P-156.1 received in evidence)

15   **BY MR. FREEDMAN:**

16   **Q.**   An email from yourself to Ira Kleiman, Dr. Wright.   That's

17   already in evidence.

18       Do you see it?

19   **A.**   I do.

20           **MR. FREEDMAN:**   Ms. Vela, can you show us the email

21   headers?

22   **BY MR. FREEDMAN:**

23   **Q.**   "Received From CraigASUS," and right underneath it, Dr.

24   Wright, 58.160.32.123.

25       Do you see that match with the Geo IP Lookup; Dr. Wright?

**WRIGHT - CROSS / FREEDMAN**

1  **A.**    Yes, I see the IP in Wooloowin.

2  **Q.**    It was not Jamie Wilson.  It was you that sent these

3  emails; isn't that correct?

4  **A.**    No.  On that day, I was in Sydney at a meeting.

5          **MR. FREEDMAN:**  Ms. Vela, can you please put down

6  P-156.1, and let's bring up P-157 in native form.

7      Your Honor, we're going to mark it as P-157.1 and move for

8  its admission.

9          (Plaintiffs' Exhibit P-157.1 marked for identification)

10          **THE COURT:**  Any objection?

11          **MR. RIVERO:**  Without objection.

12          **THE COURT:**  All right.  Admitted into evidence.

13          (Plaintiffs' Exhibit P-157.1 received in evidence)

14          **MR. FREEDMAN:**  Ms. Vela, can you show us the email

15  headers?

16  **BY MR. FREEDMAN:**

17  **Q.**    Dr. Wright, we are looking at P-157.1 that is already in

18  evidence, and the email header says, "Received From CraigASUS."

19      Do you see that?

20  **A.**    I do.

21  **Q.**    And, again, Dr. Wright, 58.160.32.123.

22      Do you see that?

23  **A.**    I do.

24          **MR. FREEDMAN:**  Ms. Vela, can you put down P-157.1 and

25  bring up P-727, which is also in evidence?

WRIGHT - CROSS / FREEDMAN

1        We'll mark this P-727.1, Your Honor, and move for its

2   admission.

3        (Plaintiffs' Exhibit P-727.1 marked for identification)

4        **MR. FREEDMAN:**  P-727.1.

5        **THE COURT:**  Any objection?

6        **MR. RIVERO:**  Judge, I thought -- I don't see P-727.

7   Is this the document here?

8        **MR. FREEDMAN:**  On the right side is P-727 in its

9   native form.

10       **MR. RIVERO:**  No objection, Judge.

11       **MR. FREEDMAN:**  Ms. Vela, can you show us the email

12  headers, please.

13       **THE COURT:**  Hold on.

14  Without objection, admitted into evidence.

15       (Plaintiffs' Exhibit P-727.1 received in evidence)

16       **MR. RIVERO:**  Judge, I thought there was -- I thought

17  there was a 727.  Is this 727.1?

18       **THE COURT:**  This is 727.1, native file.

19       **MR. RIVERO:**  Oh.  Thank you.

20       **MR. FREEDMAN:**  May I proceed, Your Honor?

21       **THE COURT:**  You may.

22  BY MR. FREEDMAN:

23  **Q.**   Dr. Wright, on the right-hand side, we have P-727.1, which

24  is an email from yourself to Andrew Sommer, your lawyer, and

25  Ira Kleiman that is already in evidence.

**WRIGHT - CROSS / FREEDMAN**

1          Do you see the email headers?

2    **A.**   I do.

3    **Q.**   This is "Received From Craig C. Wright."

4          Do you see that?

5    **A.**   I do.

6    **Q.**   The email that sent it is Craig@RCJBR.org; right?

7    **A.**   That's what it says, yes.

8    **Q.**   Ramona, Craig -- what's the J?

9    **A.**   Josh.

10   **Q.**   Josh, Ben?

11   **A.**   Yes.

12   **Q.**   Rachel?

13   **A.**   Yes.

14   **Q.**   And, Dr. Wright, again, 58.160.32.123.

15         Do you see that?

16   **A.**   I certainly do.

17   **Q.**   This email, you sent; correct?

18   **A.**   Like I said, I instructed a lot, and I sent others.  I

19   don't remember every particular one, but if I didn't send, I

20   instructed ones.

21         **MR. FREEDMAN:**  Thank you, Ms. Vela.  Can you put that

22   down and please bring up P-733-point -- the native of P-733.

23         Your Honor, we'll mark this as P-733.1 and move for its

24   admission.

25   ///

WRIGHT - CROSS / FREEDMAN

 1            (Plaintiffs' Exhibit P-733.1 marked for identification)

 2            MR. RIVERO:  No objection.

 3            THE COURT:  All right.  Admitted into evidence.

 4            (Plaintiffs' Exhibit P-733.1 received in evidence)

 5            MR. FREEDMAN:  Ms. Vela, can you show us the email

 6       header from P-733.1?

 7       BY MR. FREEDMAN:

 8       Q.   Again, Dr. Wright, from RCJBR.org; again, from CWright;

 9       and again, 58.160.32.123.

10            Do you see that, Dr. Wright?

11       A.   I do.

12       Q.   Each document matches the Geo IP Lookup of the document

13       you claim Jamie Wilson might have sent; isn't that correct?

14       A.   It certainly does.  They're all matching Wooloowin, yes.

15       Q.   Including emails you sent; correct?

16       A.   As I said, if things had been forwarded or otherwise done,

17       I don't know, but I instructed emails or sent emails with those

18       contents.

19       Q.   From Sydney?

20       A.   Yes.

21       Q.   Are you aware, Dr. Wright, that in this litigation, you

22       have produced over 75 emails from you that contain that exact

23       same IP address?

24       A.   No.  What I produced were staff computers, and they had

25       emails.

SIDEBAR

```
 1            MR. FREEDMAN:  Your Honor, may I have a moment to
 2   consult?
 3            THE COURT:  Certainly.
 4            MR. FREEDMAN:  Your Honor, we have no further
 5   questions.
 6            THE COURT:  All right.  Any redirect?
 7            MR. RIVERO:  Your Honor, we stand on Dr. Wright's
 8   testimony.
 9            THE COURT:  All right.  Ladies and gentlemen, you have
10   the right to ask Dr. Craig Wright any questions.  Does anyone
11   have any questions for Dr. Craig Wright?  If -- if you do, just
12   raise your hand so I can give you some time to write your
13   question down.
14       All right.  Take the time you need.  Once you've completed
15   writing your question, will you provide it to the court
16   security officer?
17       And if I may see the attorneys sidebar, please.
18       Ladies and gentlemen, are there any other questions?  If
19   you'll raise your hand just so I can give you the time.
20       All right.  I have all the questions.
21       (The following proceedings were heard at the sidebar:)
22            THE COURT:  All right.  Let's see.
23       "Did you" -- the question reads as follows:  "Did you use
24   the same computer for your security company from mining
25   Bitcoin, too?"
```

SIDEBAR

 1          **MR. FREEDMAN:**  No objection.

 2          **MR. RIVERO:**  No objection.

 3          **THE COURT:**  Okay.

 4      (Proceedings were heard in the presence of the jury:)

 5          **THE COURT:**  All right.  Ladies and gentlemen, your

 6   question is proper, and I will ask Dr. Craig Wright the

 7   question, and the question reads as follows:

 8      Did you use the same computer for your security company

 9   for mining Bitcoin, too?

10          **THE WITNESS:**  I had a number of different computers.

11      So in the first year of 2009, I had those initial

12   computers.  I replaced my computers in 2010, my personal ones,

13   and I upgraded some of the servers.  The servers were upgraded

14   a couple times.  The old machines were donated to charity each

15   year.

16      And then later, in 2012, with the testnet mining, a new

17   system was built altogether.

18          **THE COURT:**  All right.  Any further questions?

19      All right.  Seeing no further questions, Dr. Wright, you

20   may join your attorneys at counsel table.

21      On behalf of the defendant, any -- your next witness,

22   please.

23          **THE WITNESS:**  Thank you, Your Honor.

24          **MR. RIVERO:**  Your Honor, at this point, with the

25   exception of introducing certain -- seeking introduction of

```
 1   certain exhibits, the defense would rest.
 2           THE COURT:  All right.  Is there any rebuttal evidence
 3   by the plaintiffs?
 4           MR. RIVERO:  Your Honor, if I can just ask, would
 5   we -- how would the Court -- would the Court permit us to
 6   address the documents after --
 7           THE COURT:  Yes, of course.
 8           MR. RIVERO:  Thank you.
 9           THE COURT:  Of course.
10           MR. FREEDMAN:  Your Honor, we have a motion to make,
11   but before we do -- before we address the rebuttal evidence,
12   can I just confer with counsel for a moment?
13           THE COURT:  Certainly.
14           MR. RIVERO:  I'm sorry, Your Honor.  We have a motion
15   to make as well.
16           THE COURT:  I assumed that the defendant would have a
17   motion as well.
18       Is this something that we need to take up at this time,
19   Mr. Freedman?
20           MR. FREEDMAN:  No, Your Honor.
21       Your Honor, the plaintiffs have no rebuttal evidence.
22           THE COURT:  All right.  Then, ladies and gentlemen,
23   let's go ahead and take a 15-minute recess.  Let me speak with
24   the attorneys.  All right?
25           COURT SECURITY OFFICER:  All rise for the jury.
```

```
 1            (Proceedings were heard out of the presence of the jury:)

 2            THE COURT:  All right.  Go ahead and have a seat.

 3       Yes.  On behalf of the defendant?

 4            MR. RIVERO:  I'm sorry, Judge.  In terms of -- we have

 5  a motion, but I think Mr. Fernandez -- Mr. Fernandez, are you

 6  addressing the issue?

 7       I don't know if the Court would entertain it now or if we

 8  just state that we have a motion to make.

 9            THE COURT:  Well, is -- what is the motion?

10            MR. FERNANDEZ:  Your Honor, just simply to renew our

11  motion for judgment as a matter of law up through the close of

12  evidence with all information that's come in through --

13  through -- and we saw your order this morning, Your Honor.  So

14  we understand.

15       But just -- we just want to make sure that it includes all

16  the evidence and that your decision accounts for all the

17  evidence up through close of evidence.

18            THE COURT:  All right.  A response by the plaintiffs?

19            MR. FREEDMAN:  Your Honor, if I may, I'm going to let

20  my colleague Maxwell Pritt address the renewed JMOL motion for

21  the defense.

22            THE COURT:  All right.

23            MR. PRITT:  Thank you, Your Honor.

24       May it please the Court -- oh.  Yeah.  Oh.  Right.  Well,

25  we would stand on our papers in response to their motion.
```

1      **THE COURT:**  Well, the papers that were filed with

2  regard to the defendant's first motion for judgment as a matter

3  of law require that the Court look at the evidence in a light

4  most favorable to the plaintiffs, taking all inferences in the

5  plaintiffs' favor.

6      Is the -- is the review by the Court a little bit

7  different now?

8      **MR. BRENNER:**  Your Honor, I'll handle -- I'll handle

9  the defense motion.

10     Your Honor, we don't believe anything -- excuse me.  We

11  don't believe anything that came in the defense case changes

12  Your Honor's view of the evidence.  The evidence we put forward

13  in the plaintiffs' case, which Your Honor cited in her order,

14  was more than sufficient to get to a jury.

15     There's nothing the defendant put on their case either

16  through Dr. Klin or Dr. Wright that contradicted any of that

17  evidence as a matter of law that no jury could find in favor of

18  the plaintiffs.

19     So we renew our opposition and just point out that the

20  defendant had not introduced any evidence that would impact the

21  basis for Your Honor's ruling.

22     **THE COURT:**  All right.  Anything further on behalf of

23  the defendant?

24     **MR. FERNANDEZ:**  I'll submit, Your Honor.

25     So, Your Honor, with respect to the motion for judgment --

 1            **MR. RIVERO:**  Mr. Fernandez, please remove your mask.

 2            **THE COURT:**  Only if you feel comfortable, sir.

 3            **MR. FERNANDEZ:**  Thank you, Your Honor.

 4       So we'll rest on our papers and as well -- in terms of

 5  just the motion, it's just to ensure that -- for record

 6  preservation purposes that your decision takes into account all

 7  the evidence currently submitted through the close of the case.

 8       Your Honor, with respect -- and I don't know if you'd

 9  prefer that we do it now or in connection with the jury

10  instructions.  We will have certain arguments to be made with

11  respect to the time upon which some of the claims were to be

12  measured in terms of the measurements of damages.

13       That's --

14            **MR. FREEDMAN:**  Your Honor, we're having trouble

15  hearing Mr. Fernandez.

16       Mr. Fernandez, if you can talk into the microphone,

17  maybe -- that might help.

18            **MR. FERNANDEZ:**  I don't know if this is a little

19  better now.

20            **MR. FREEDMAN:**  Much.  Thank you.

21            **THE COURT:**  Yes.

22            **MR. FERNANDEZ:**  Much better?

23       Okay.  Sorry.  So -- and just -- I'll very -- to be very

24  brief, Your Honor, just -- but basically we -- the purpose of

25  our motion is to ensure that your decision on the motion for

```
 1    judgment as a matter of law accounts for all the evidence up

 2    through the close of all evidence for record-preservation

 3    purposes.

 4         We do have some points that we'd like to make in

 5    connection particularly with the time upon which some of the

 6    claims are to be measured for purposes of damages.  If

 7    Your Honor would like, we can raise those now or in connection

 8    with the jury instructions since those are issues that are kind

 9    of intertwined with the jury instructions as well.

10         THE COURT:  What do you believe is the standard that

11    the Court must look at your motion?

12         MR. FERNANDEZ:  In terms of -- so for the current

13    motion, Your Honor --

14         THE COURT:  Yes.

15         MR. FERNANDEZ:  -- it's -- I believe the standard you

16    outline in your order is the appropriate standard.  It's

17    taking -- it's in the light most favorable to the nonmovant.

18    So it's simply -- the standard is going to be essentially one

19    of a summary judgment standard.  So in terms of that, that's

20    the overarching standard.

21         With respect to -- we have certain points with respect to

22    the measurements of damages, I think, particularly because I

23    noted -- and we'd be happy to raise those at this juncture or

24    in connection with the jury instructions because, as I noted,

25    they're intertwined issues.
```

1    **THE COURT:**  Yes.  Mr. Fernandez, the standard is

2    whether reasonable jurors could differ with regard to the

3    claims that are asserted by Ira Kleiman on behalf of the Estate

4    of David Kleiman and W&K.

5        And with regard to the statute of limitations and laches,

6    the two affirmative defenses raised by Dr. Craig Wright, could

7    reasonable jurors differ based on the issue that the plaintiffs

8    have put forth with regard to fraudulent concealment?

9        **MR. FERNANDEZ:**  Yes, Your Honor.  That's the -- that's

10   the standard, and that's -- I should rephrase.

11       Basically, what -- the points we'd like to raise with

12   Your Honor now or at jury instruction is when the -- when the

13   damages would be measured, so the date of the measurement.

14       So, for instance, with respect to conversion, whether it's

15   at the time of the conversion or up through the verdict, those

16   are -- those are the issues, I think, that we'd like to take up

17   with Your Honor in connection --

18       **THE COURT:**  Well, certainly.

19       So you want to address the issues of law and the -- the

20   instructions that the Court should give to the jury?

21       **MR. FERNANDEZ:**  Sure.

22       **THE COURT:**  But with regard to your motion at this

23   time, is there -- is there any claim that the Court should look

24   to to find that reasonable jurors could not differ?

25       **MR. FERNANDEZ:**  Only with respect to -- I think,

1   Your Honor -- and we'll stand on our papers, but the only other

2   point is with respect to the dates upon which -- our position

3   is that it should not -- that damages should not be measured

4   after the complaint was filed certainly.  Then there's a

5   dispute as to when, within the period precomplaint, damages

6   should have been measured from.

7       But that -- that's an issue that we'd be happy to argue

8   now or in connection with the jury instructions, Your Honor.

9       **THE COURT:**  Perhaps we should wait until we have a

10  charge conference.

11      But addressing the motion on behalf of the -- of the

12  defendant, I do believe that reasonable jurors could differ

13  with regard to each of the claims that have been asserted,

14  particularly because the testimony certainly hinges on the

15  credibility or lack of credibility of the witnesses that are

16  before the Court.

17      There have been experts that have testified as well, and

18  the jury can accept or reject or accept in part.  And I think

19  that based on the testimony that has been presented and the

20  evidence that has been submitted for the jury's

21  consideration -- that certainly there is a question of fact

22  with regard to each of these claims as well as the two

23  affirmative defenses that have been asserted.

24      Thank you, Mr. Fernandez.

25      **MR. FERNANDEZ:**  Thank you, Your Honor.

1    **THE COURT:**  All right.  I did this morning --

2    **MR. BRENNER:**  Oh.

3    **THE COURT:**  -- provide -- yes.

4    **MR. BRENNER:**  Oh.  Your Honor, the plaintiffs wanted

5    to make a motion as well.

6    **THE COURT:**  All right.  And the plaintiffs' motion?

7    **MR. BRENNER:**  And Mr. Pritt -- Mr. Pritt's going to do

8    that.

9    **MR. PRITT:**  Thank you, Your Honor.  Maxwell Pritt for

10   the plaintiffs.

11   Our motion is directed at defendant's timing defenses.  We

12   believe plaintiffs are entitled to judgment as a matter of law

13   on both the statute of limitations and laches defenses.  As a

14   matter of law, taking just the Estate, its claims could not and

15   did not accrue until February 2016, when Ira Kleiman was

16   appointed as personal representative of the Estate.

17   Now, we raised this already in our opposition to the

18   judgment of matter of law at Pages 23 to 25.  And, Your Honor,

19   *In Doe Number 60*, 2017 Westlaw 2212429 at 6, has previously

20   held that the statute of limitations for a claim cannot accrue

21   until a plaintiff exists who is able to sue on the claim,

22   citing the Florida Supreme Court in *Berger*.

23   Now, that same principle has been applied by the Florida

24   courts to an estate.  So in *Matthews v. Matthews*, 177 So.2d,

25   497 at 502 -- that's Florida Second DCA, 1965.  The Court

1    explained that the law -- and I'm quoting, quote, "The law in

2    Florida," unquote, is that, quote, "where a cause of action

3    does not accrue until after the death of one of the parties,

4    the limitations will not begin to run on the claim of the

5    estate of the deceased person until an administrator or

6    executor authorized to collect or enforce payment of the claim

7    has been appointed," unquote.

8        The Court -- I mean, that -- if you look at the Florida

9    Civil Practice Before Trial, Statute of Limitations, Section

10   10.5A in 2020, citing *Berger*, citing several other cases, it

11   says the same thing.

12       The Florida Fifth DCA in 2001 in *Onofrio v. Johnston &*

13   *Sasser PA*, 782 So.2d, 1019 at 1021, also held, quote, "We

14   conclude that the four-year statute of limitations began

15   running when Onofrio was appointed as personal representative."

16       So if we simply apply the existing case law in Florida to

17   this case, we know in the record at P-83 that Mr. Kleiman was

18   appointed personal representative of the Estate on

19   February 4th, 2016.  And so it would be undisputed, based on

20   that date, that the statute of limitations on the Estate's

21   claims did not begin to accrue until February 4th, 2016.

22       And it is undisputed that would be well within the

23   four-year statute of limitations since the complaint was filed

24   on February 14th, 2018.  So we believe that the plaintiffs --

25   the Estate is entitled to judgment as a matter of law on the

```
 1   statute-of-limitations defense.
 2        We also believe the Court should grant judgment of a
 3   matter of law as to W&K because the claims did not accrue
 4   outside of the limitations period for W&K.
 5        The Court has already held twice in the motion to dismiss
 6   and summary judgment that the defendant has asserted the wrong
 7   accrual dates as a matter of law when it stated that the
 8   accrual date was first Dave Kleiman's death and then later the
 9   Australian court proceedings.  That's ECF Number 68 at 29 --
10   that's the motion to dismiss -- rejecting those dates.
11        And then ECF 615 at 41, summary judgment, where the Court
12   said, "The Australian lawsuits did not start the clock on
13   claims to the extent they seek a return of Bitcoins or
14   otherwise" -- and then if we go on to the next sentence, "or
15   otherwise for claims seeking a return of intellectual
16   property."
17        Finally, as to laches, we would also move for judgment of
18   a matter of law as to both plaintiffs.  There is no evidence
19   introduced in the defense case that Dr. Wright was prejudiced
20   in any way by any delay in plaintiffs' filing of their claims.
21   That's the second prong of laches.
22        And as to the first prong, there is also no evidence that
23   was introduced that plaintiffs inexcusably delayed in bringing
24   any of their claims, which is the first prong.
25        Thank you, Your Honor.
```

1      THE COURT:  All right.  Thank you, Mr. Pritt.

2   Response?

3      MR. FERNANDEZ:  So, Your Honor, this is an example of

4   trying to have your cake and eat it, too.  Many of plaintiffs'

5   claims are based on conduct occurring in 2014 and 2015, and now

6   the suggestion is that the claims don't accrue until 2016,

7   relying in pertinent -- in pertinent part upon *Matthews v.*

8   *Matthews* and other cases along those lines.

9      THE COURT:  Well, what -- what case should the Court

10  look to that -- with regard to the Estate that the Estate's

11  causes of action do not accrue until the time when the personal

12  representative is appointed and the -- the Estate is

13  established?

14     MR. FERNANDEZ:  So, Your Honor, there isn't much case

15  law on this issue.

16     THE COURT:  Well, is there any case that the Court

17  should look to that would support the defendant's argument that

18  the Court should look at the accrual of the cause of action

19  before the -- the death of David Kleiman?

20     MR. FERNANDEZ:  So, Your Honor, the issue with the

21  case -- and here's -- if Your Honor will indulge me, the issue

22  here is that the *Matthews* case is based upon the interpretation

23  of Florida Statute 70 -- 733.1041 as it existed in 1965.

24     In 1974, Your Honor, the statute was replaced with a

25  different version providing for the running of the 12-month

1    period to start from the decedent's death instead of the

2    granting of letters, which was the language of the statute

3    previously.

4         And then the statute was yet again amended in 2001 so that

5    it now reads that if a person entitled to bring an action dies

6    before the expiration of the time limited for the commencement

7    of the action and the cause of action survives, the action may

8    be commenced by that person's personal representative before

9    the later of the expiration of the time limited for the

10   convince -- for the commencement of the action or 12 months

11   after the decedent's death.

12        So given the changes in the wording of the statute,

13   Your Honor, and the basis upon which the accrual now exists, I

14   would submit that the -- the statutory changes require a

15   different analysis and that under the statute as it's currently

16   drafted, nothing in the wording of Florida Statute 70 --

17   733.1041 suggests that a plaintiff can wait for almost five

18   years until after the decedent's death to bring their cause of

19   action.

20            **THE COURT:**  So in looking at each of the causes of

21   action with regard to the Estate, when do you believe that the

22   breach of partnership accrued?

23            **MR. FERNANDEZ:**  So, Your Honor, the issues -- and I

24   think that my position is plaintiffs haven't established their

25   own exact date for accrual and have never taken a position on

1    the issue of accrual.

2        But with respect to the claims -- and as we noted in our

3    motion for judgment as a matter of law, we believe that the

4    causes of action accrued sometime arguably between April 26th,

5    2013, and November 4th, 2013.

6        So it's within that window that there would have been an

7    accrual of the causes of action because that's, you know,

8    crediting and assuming that certain conduct took place which

9    was -- which caused the misappropriation of Bitcoin or -- or

10   IP -- it presumably occurred in that time period.

11       So we believe that that's the -- that's the period within

12   which the claim for accrual would have been measured from.

13           THE COURT:  So that would be before David Kleiman's

14   death?

15           MR. FERNANDEZ:  That would be after -- after David

16   Kleiman's death, Your Honor, but before he -- before Dr. Craig

17   Wright entered into contact with Mr. Ira Kleiman.

18           THE COURT:  And what about the conversion?

19           MR. FERNANDEZ:  Your Honor -- well, that's the same

20   period.  It would have occurred presumably either sometime

21   before or sometime after but presumably by no later than

22   November 4th, 2013, given that plaintiffs allege in their

23   complaint that there were certain documents that were the basis

24   for the alleged conversion.  And those documents were filed

25   with the New South Wales court no later than November 4th,

1    2013.

2        So to the extent that those documents came into existence,

3    it would have come into existence sometime before November 4th,

4    2013.

5        **THE COURT:**  And is Mr. Pritt accurate?  Was there any

6    evidence presented with regard to the second prong of laches

7    that the delay caused the defendant undue prejudice?

8        **MR. FERNANDEZ:**  Well, Your Honor, the undue prejudice

9    would be here the -- the appreciation of the spot price of the

10   Bitcoin, for example, and the evidence that -- you know,

11   looking at the significant increase in the spot price.  That is

12   a basis for laches, Your Honor.

13       And there's case law -- and I don't remember the case

14   offhand right now, Your Honor, but there's a Fifth Circuit

15   case -- and I can certainly quickly look at it and get you the

16   citation for it, but an older Fifth Circuit case basically

17   noting the prejudice resulting from a long delay in bringing a

18   suit particularly in the conversion context.

19       **THE COURT:**  But here, the only delay that you're

20   asserting is the difference in the value of the Bitcoin?

21       **MR. FERNANDEZ:**  Well, Your Honor, certainly the value

22   of the Bitcoin, the appreciation, and the increased injury

23   would be one form of injury here that would accrue to -- to --

24   to the -- to Dr. Wright certainly in terms of just -- that, I

25   think, is significant in terms of the issues with the prejudice

```
 1   that he'd be suffering from from just that delay.

 2            THE COURT:  All right.  And, Mr. Fernandez, do you

 3   know the name of the Fifth Circuit case that you're referring

 4   to?

 5            MR. FERNANDEZ:  If Your Honor will indulge me, I can

 6   quickly return that information to you very shortly.

 7            THE COURT:  All right.  Is there any further argument

 8   other than providing the Fifth Circuit case?

 9            MR. FERNANDEZ:  No, Your Honor.

10            THE COURT:  All right.  And, Mr. Pritt, is there

11   anything further on behalf of the plaintiffs?

12            MR. PRITT:  The only thing would be that some of the

13   case law I cited is post-2001, when the statute was amended.

14   And the Court has never overturned *Berger*.  If anything, it has

15   repeatedly reaffirmed the principle from *Berger*, as this Court

16   also held.

17        Thank you.

18            THE COURT:  All right.  Well, why don't you take the

19   time to provide the Court with the Fifth Circuit case, and I'll

20   certainly reserve with regard to the -- the plaintiffs' motion

21   relating to the affirmative defenses asserted by Dr. Wright.

22        And let's talk a little bit about scheduling.  Now that

23   both sides have rested their cases, obviously, the Court will

24   instruct the jury on the law before the parties proceed to

25   closing argument.
```

 1        But I would like to have an idea of -- since each side has

 2   requested 90 minutes, of what you anticipate we should do with

 3   the rest of today and what your thoughts are moving forward.

 4        **MR. FREEDMAN:**  Your Honor, for plaintiffs, I think it

 5   would be helpful, if the Court was intending to, to hold a

 6   charge conference for the rest of the day.  If that's not the

 7   case, then -- or if the Court doesn't intend to hold one, then

 8   I would say we'll go home and prepare for closing tomorrow

 9   morning as soon as you charge the jury.

10        Just -- we didn't -- we weren't able to prepare because we

11   didn't have the instructions until this morning, and obviously

12   we've been in court.  So --

13        **THE COURT:**  Mr. Rivero?

14        **MR. RIVERO:**  Your Honor, Number 1, I'm pleasantly

15   surprised and corrected about the time that it would take to

16   finish the case.

17        Your Honor, I think at this point -- I'm not sure what the

18   Court's experience is.  I don't know, but if we could -- I

19   think we should just move forward.  We're getting up against

20   the Thanksgiving holiday.

21        Judge, I don't want to press the Court into doing

22   instructions at the end of the day when the jury might be

23   tired, and I see the advantage of the morning.  But I think we

24   should advance as much as we can.  If it's possible to conclude

25   the instructions, I would suggest that we try to do that.

1    I don't know if the Court is -- is in agreement.

2         **THE COURT:**  Well, my thought is that if you can

3  provide me with the case law -- I've already -- by virtue of

4  the instructions that I have given to the parties, I've

5  certainly looked at the law relating to spoliation and the

6  proffered instructions.  And I think, by -- by the Court's

7  instructions that I've given you today, I've ruled on those

8  issues.

9         So your -- your request is -- and any related motion with

10  regard to having the jury instructed with regard to certain

11  parts of the law has already been preserved.  I just don't -- I

12  don't want to spend hours on end going through each individual

13  instruction when I think that there are, you know, a finite

14  number of claims and a finite number of affirmative defenses.

15        With regard to this pending motion, I would like to see

16  the law with regard to laches and with regard to the statute of

17  limitations.  I'll look at 733.1041 and *Berger* and *Matthews* and

18  see if it's going to change the Court's analysis in terms of

19  presenting that to the jury.

20        But I would suggest, since it's only 10:00 to 3:00, that

21  perhaps the better course is for us to labor through the

22  instructions on the law and allow the Court to -- to instruct

23  the jury today, if possible, and then give you the opportunity

24  tomorrow to present your -- your closing arguments.

25        Now, that's with the understanding that you're ready to go

1    in terms of clean laptops, the agreement with regard to the

2    exhibits, you have all of the exhibits uploaded on the laptops,

3    you have one exhibit list that we can provide to the jury so

4    that when we can -- when we're done with the closing arguments,

5    we can go right into giving final instructions and sending the

6    jury back to the jury room.

7            **MR. RIVERO:**  Judge, I understand that.  So we need at

8    least a few minutes to confirm on that set of conditions.  It

9    makes complete sense, but I want to be able to say that with

10   certainty before I confirm for the defense.

11           **THE COURT:**  All right.  So why don't -- why don't we

12   do this.

13       Let's take a 15-minute recess, and then let's come back,

14   and we'll discuss where we want to go because my thought is if

15   we start at 9:30 tomorrow, that takes us to 11:00 o'clock on

16   the first -- well, depending upon how the plaintiff wants to

17   break up the -- the closing -- and we haven't talked about

18   that.

19       But I want to get to a point where there's a reasonable

20   amount of time for the jury to deliberate, and then I would

21   then bring them back on Monday, if need be.

22           **MR. RIVERO:**  And, Judge, I know you're -- you're -- I

23   understand, and I know that the Court is going to excuse us.  I

24   just want to remind the Court that we did want to move the

25   admission of certain exhibits.  So if the Court can just --

1          **THE COURT:**  Okay.  Let's go ahead and do that because

2    that will relate to the housekeeping of the exhibits that are

3    on one list.

4          **MR. RIVERO:**  Yes.  Yes, Your Honor.

5          **MR. BRENNER:**  Judge, we -- I'm just making sure I'm

6    following where we're going.

7        So is it the Court's intention now to do the exhibits --

8    that we'll do the exhibit housekeeping, and then you're going

9    to give the parties an opportunity to raise specific objections

10   to the instructions on the law?

11         **THE COURT:**  We can certainly have a charge conference

12   with regard to any additional instructions.  There's a pending

13   motion that directly relates to the affirmative defenses.

14         **MR. BRENNER:**  Right.

15         **THE COURT:**  But what I'm suggesting is that if we were

16   to engage in that charge conference, I think there's enough

17   time to -- to charge the jury tonight.  However, it really is

18   dependent upon where you are with -- with regard to the

19   exhibits and -- and being ready to give it -- give everything

20   to them tomorrow.

21         **MR. BRENNER:**  So I think on the exhibits -- at least

22   when I left the office this morning -- that I don't think

23   there's a disagreement as to which exhibits are in.  I guess if

24   something happened today, it could be changed up, but I don't

25   think that's going to be a big issue.  And I think we are

 1    either in agreement or just about in agreement on the

 2    appropriate redactions.

 3         There's really one document in particular that I think

 4    they were -- the parties were going back and forth on.  So I

 5    don't think the exhibit issues are going to take much, if at

 6    all, of the Court's time, although we'll have to compare our

 7    final list.

 8         And then as far as the computers and that stuff, my

 9    understanding is that between the two sides, we'll be able to

10    give the jury three computers.  It's going to be some sort of

11    share file.  I don't know this stuff that well, but they're

12    clean computers that will have the exhibits preloaded.

13         As far as the exhibit list, I'll need to check on the

14    status of that, but I don't think that's -- if we agree on the

15    number -- we agree on the numbers, I think the list should

16    follow.  And it will just be a single list and then list all

17    the -- list all the exhibits.

18         So that's where I think we are on exhibits.

19              **MR. RIVERO:**  Judge --

20              **MR. BRENNER:**  And if I can make a phone call, I can

21    find out to be even more certain.

22              **THE COURT:**  Sure.

23         And I just need to know, Mr. Rivero, what additional

24    exhibits you want to introduce.

25              **MR. RIVERO:**  Yeah.  Judge -- by the way, I don't

1  disagree -- I'm not disagreeing with what Mr. Brenner is

2  saying.  I'm just saying if the Court can give us a few

3  minutes, I think we can confirm all that between us.

4       Your Honor, I have a set of exhibits, but I would also

5  suggest that I be able to confer because perhaps we can

6  agree --

7            THE COURT:  Sure.

8            MR. RIVERO:  -- on a number of these exhibits.

9            MR. BRENNER:  I think that makes sense.

10           THE COURT:  Let's go ahead and -- we'll take a

11 15-minute recess.

12           MR. BRENNER:  Thank you, Judge.

13           THE COURT:  See you back here in 15 minutes.

14           COURT SECURITY OFFICER:  All rise.

15                    (Recess taken at 2:56 p.m.)

16                (Proceedings resumed at 3:23 p.m.)

17           COURT SECURITY OFFICER:  All rise.

18           THE CLERK:  This Court is back in session.

19           THE COURT:  All right.  Welcome back.  Please be

20 seated.

21      Mr. Fernandez, I didn't get that case from you, sir.  Do

22 you have the Fifth Circuit case?

23           MR. FERNANDEZ:  Certainly, Your Honor.  The case is

24 *White v. United States*.  The cite is 202 F 501, Fifth Circuit,

25 1913.

1     And, Your Honor, if I can very briefly add in terms of the

2  issue on laches and potential prejudice, it's the fact that

3  the -- Mr. David Kleiman died in April of 2013, and there was a

4  delay in filing for nearly five years.  In that time, that --

5  generally what happens is emails, documents may be lost.

6     So that -- that kind of prejudice --

7          **THE COURT:**  I'm sorry.  You said they may be lost?

8  Was there any evidence presented that the documents were, in

9  fact, lost?

10         **MR. FERNANDEZ:**  Your Honor -- well, I don't believe

11 there was any evidence introduced -- the devices were

12 overwritten, Your Honor, continuously during that time period.

13 There -- that kind of issue with respect to the documents and

14 the devices, we believe, would be prejudicial in terms of just

15 the ability to defend against the claims at issue here.

16         **THE COURT:**  All right.

17         **MS. MCGOVERN:**  Your Honor, would you mind if I make

18 one small additional point?  I think it's significant, and I

19 know it's two lawyers, and I apologize.  But I've been working

20 on this case for a long time, and so it's just unfair of

21 Michael to have him sort of know it all.

22     Yes, there's evidence that emails are missing.  In fact,

23 it's the central theme in their case that there's some sort of

24 secret phone booth that accounts for the absence of

25 communications in the regular course of business between what

1    purports to be two partners in a partnership.

2        We have produced a lot of emails.  We've submitted those

3    emails.  We've presented testimony of those emails.  Those

4    emails will be presented in closing argument.  What do those

5    emails show, Your Honor?  They show an absence of

6    communications you would normally expect in a partnership to

7    invent and mine Bitcoin.

8        There are simply none during critical periods.  It is a

9    cognitive dissonance that cannot be overlooked.  Why is it

10   important that it took five years to file this lawsuit,

11   Your Honor?  Because we did not obtain the gmail accounts from

12   Dave Kleiman that we believe would have shown a similar pattern

13   of communications.

14       It's not that we believe there's some smoking gun in those

15   communications or perhaps not even in the devices, Your Honor,

16   but you know what might have been there?  The abs- --

17   communications that absolutely establish as a matter of

18   evidence and fact that there was no partnership to do this.

19   There was no partnership to invent and mine Bitcoin.

20       And the communications between the two of them would have

21   been similar to the communications we have.  We can't have

22   those.  We don't have those.  We weren't even aware we should

23   go get those for five years after Dave Kleiman died.  That's

24   the prejudice, and it's palpable.

25       Thank you, Your Honor.

 1          **THE COURT:**  All right.  Thank you.

 2      What I would like to do is rule on the motion correctly,

 3  and I would suggest that we proceed to a charge conference.  I

 4  have given you proposed jury instructions and verdict form.  I

 5  think, within the objections that will be made today, certainly

 6  the Court can -- can rule on the pending motion and address any

 7  issues with regard to the instructions.

 8      My suggestion is rather than rushing to give us an

 9  additional 45 minutes or an hour -- is that at this point I

10  will let the jury know that -- that I would like to work with

11  the attorneys, let them know that tomorrow I will give them the

12  instructions on the law, the attorneys will present their

13  closing arguments, and then they will begin to deliberate.

14      And we can use that time to address the instructions, the

15  verdict form, and certainly give you the opportunity to make

16  sure that the exhibits comport with the list, that we have all

17  of the exhibits uploaded, and that we are ready to give the

18  laptops to the jury once they begin their deliberations.

19      Would that be acceptable to both sides?

20          **MR. RIVERO:**  Yes, Your Honor.

21          **MR. FREEDMAN:**  It is --

22          **MR. BRENNER:**  Your Honor, we had one question that we

23  need to clear up quickly, and it will help us get --

24          **THE COURT:**  Certainly.

25          **MR. BRENNER:**  There was -- again, a lot of smart

1    lawyers are having difficulty understanding what the list is

2    supposed to be.

3        So I think now -- now the question is -- we understand the

4    list should be -- just say, "Exhibit List" on top, not

5    "Plaintiff" or "Defendant," list all the numbers and add a

6    description.  I think the defendant thinks the same exact

7    except there should be no description, just numbers.

8        **THE COURT:**  No.  I think the description that the

9    parties provided is helpful to the jury.

10        **MR. BRENNER:**  That's what I thought, too.  So --

11        **THE COURT:**  Yes.  And it can just say, "Exhibits

12    Admitted at Trial" --

13        **MR. BRENNER:**  Yes.

14        **THE COURT:**  -- so that the jury knows what they're

15    looking at.

16        **MR. BRENNER:**  Yes.

17        **THE COURT:**  But certainly, I believe the descriptions

18    by the parties are -- are enough to allow the jurors to look at

19    certain documents.

20        **MR. BRENNER:**  Yeah.  What I was going to suggest just

21    as a slight variation is that if there's a particular

22    description that -- for example, if the defendant thinks ours

23    is sort of prejudicial, the way it's described, or vice versa,

24    we can -- I think they're all fine, but to give each other an

25    opportunity to do that but otherwise just use what was

 1   submitted to the Court as the exhibit descriptions.

 2            THE COURT:  Okay.  Is that acceptable, Ms. McGovern?

 3            MS. MCGOVERN:  Yes, it is, Your Honor.

 4            THE COURT:  All right, then.  So I'm going to bring

 5   the jury in, we'll excuse them for the evening, and we'll have

 6   them come tomorrow morning.

 7         I just want to make sure, Liz.  Are they available at

 8   9:30?

 9            THE CLERK:  Tomorrow?  Yes, Judge.

10            THE COURT:  Okay.  All right.  And we're available as

11   well.

12         All right.  So we'll bring them tomorrow morning at 9:30,

13   and then we'll continue with the case.

14            COURT SECURITY OFFICER:  All rise for the jury.

15         (Proceedings were heard in the presence of the jury:)

16            THE COURT:  All right.  Welcome back, ladies and

17   gentlemen.  Please be seated.

18         As you have heard, both the plaintiffs and the defendant

19   have rested their respective cases.  The next stage of the

20   trial would be instruction on the law that you are to apply to

21   the facts as you determine them to be, and the attorneys will

22   have an opportunity to present their closing arguments.

23         What I would like to do this afternoon is use the time to

24   spend time with the attorneys to be ready tomorrow morning to

25   instruct you on the law, and the attorneys will present their

```
 1    closing arguments, and then you will have the opportunity to
 2    deliberate and decide your vote.
 3         I would make arrangements, as I stated, since we're not
 4    going to be together on Wednesday, that you do make
 5    arrangements -- to the extent that your deliberations will
 6    continue through next week, to make arrangements for Monday and
 7    Tuesday.  But certainly, tomorrow will be a full day.
 8         And as we discussed, we will see you at 9:30 tomorrow
 9    morning.  Please make your way into the jury room so we are
10    ready to go right at 9:30.
11         Please remember tonight as we adjourn for the evening
12    you're not to discuss this case with anyone or permit anyone to
13    speak with you.  Everything learned about the case is learned
14    within the courtroom.  You're not to conduct any independent
15    research.
16         Have a pleasant evening, and I'll see you tomorrow morning
17    at 9:30.
18              COURT SECURITY OFFICER:  All rise for the jurors.
19         (Proceedings were heard out of the presence of the jury:)
20              THE COURT:  All right.  Go ahead and have a seat.
21         MR. BRENNER:  Your Honor, with your permission, I'm
22    going to go to the back and help review some exhibits that the
23    defendant is trying to move in.  I'm going to review some
24    exhibits the defendant wants to move in.
25         So I'm going to be behind the bar.
```

```
 1            THE COURT:  Yes, of course.
 2        Why don't we go ahead and take care of that housekeeping
 3    issue first.
 4            MR. FREEDMAN:  Your Honor, I think Mr. Brenner was
 5    telling you that he's going to complete review of those
 6    exhibits, and he wanted -- he just wanted to let you know he'll
 7    be sitting behind the bar while he does that.
 8            THE COURT:  Oh.  I thought you were ready to review
 9    now.  We had -- oh.
10            MR. BRENNER:  No.  No.  I have to -- they gave us a
11    list.  I need to review it.
12            THE COURT:  Oh.  All right.  I didn't know how long
13    the list was.
14        All right.  Then let's proceed to a charge conference.
15    The Court did give the parties the proposed instructions and
16    the verdict form.  Why don't we first address the instructions
17    to the jury.
18        Are there any additional objections or changes to the
19    Court's instruction?
20            MS. FERNANDEZ:  Yes, Your Honor.  Amanda Fernandez on
21    behalf of the defendant Mr. Craig -- Dr. Craig Wright.  We have
22    some objections to the proposed jury instructions.
23            THE COURT:  All right.
24            MS. FERNANDEZ:  Your Honor, first, as to the
25    partnership instructions, as to the partnership assets --
```

```
 1              THE COURT:  Could you give the page for all of us?

 2              MS. FERNANDEZ:  Yes.  That is Page 9 of the Court's

 3     proposed jury instructions.

 4              THE COURT:  All right.

 5              MS. FERNANDEZ:  As the instruction is written now,

 6     Your Honor, it does not -- it is not the correct measure of

 7     damages as stated by the law or the statute.  Right now, the --

 8     as written, the instruction states that after the

 9     partnership -- after Mr. Kleiman passed away, that the

10     partnership continued and that Mr. -- Dr. Wright continued with

11     the partnership assets as the surviving partner.

12         If that is the case, Your Honor, then the damages need to

13     be measured as of the time of the dissolution or -- of the

14     partnership, and the case of Swann v. Mitchell is on point

15     Your Honor.  That's 435 So.2d, 797.

16         It states, "Where some or all of the partners retain

17     possession of any of the assets after dissolution of the

18     partnership, whether their purpose is to use those assets to

19     continue the business in another form or otherwise, they should

20     be required to account to the partnership for the value of

21     those assets at the time of dissolution."

22         And, Your Honor, we would request that that be included in

23     the instruction, that the time for valuing the assets is at the

24     time of the dissolution.

25         As to the --
```

```
 1           THE COURT:  Hold on one second.

 2           MS. FERNANDEZ:  Sorry.

 3           THE COURT:  "The partnership is at the time of..."

 4      Who's responding on behalf of the plaintiffs?

 5           MR. PRITT:  I am, Your Honor.  Maxwell Pritt on behalf

 6    of plaintiffs.

 7           THE COURT:  And, Mr. Pritt, is that a correct

 8    statement of the law, that the time for valuing the partnership

 9    is at the time of dissolution, consistent with the Swann case?

10           MR. PRITT:  No, Your Honor.  That is inconsistent with

11    RUPA.  We briefed this in our opposition to the motion for

12    judgment of matter of law at Page 16.

13      It's also inconsistent with Biers, which the Court relied

14    on in its summary judgment order and, again, in its order

15    denying the motion for judgment of matter of law.

16           MS. FERNANDEZ:  Your Honor, if I could just respond

17    briefly.

18           THE COURT:  Certainly.

19           MS. FERNANDEZ:  In their response, they contradict

20    this exact instruction that they have here.  In their response,

21    they say that because Mr. Kleiman has passed away that the

22    partnership no longer exists and has dissolved.  However, in

23    this instruction, they're saying that the partnership

24    continues -- continued because Dr. Craig Wright continued with

25    the partnership assets.
```

 1          They need to choose one way or the other.  Either it

 2     dissolved or it continued.  If it continued, then it would be

 3     under RUPA.  They'd have to follow RUPA, and it would be at the

 4     time of dissociation because under Section -- Section 620.8601,

 5     it says that a partner's death is an event causing partner's

 6     dissociation.

 7          And in that case, under RUPA as well, once a partner

 8     disassociates, then you would value the assets at the time of

 9     the dissociation.  That is in Section 620.8701, Your Honor, of

10     RUPA.  However, if they're going to go the route that it is

11     dissolved, then it would follow the case that we cited,

12     Your Honor, *Swann v. Mitchell*, where, at the time of

13     dissolution, the damages are -- are valued.

14          And that also follows the restatement, Your Honor.

15               **MR. PRITT:**  Your Honor, I would simply point --

16               **THE COURT:**  All right.

17               **MR. PRITT:**  -- to Number 19 of our opposition to the

18     motion for judgment of matter of law.

19          Florida has not addressed this, but clearly when you have

20     a two-person partnership and one dies, there is no

21     dissociation.  The partnership continues until the other

22     partner actually does the buyout remedy.

23          And California has addressed this repeatedly.  We cite the

24     California cases.  And, again, it is the identical provision of

25     RUPA.  California has said exactly what we said in our

 1   opposition, and it's also, again, in your order.

 2        **MS. FERNANDEZ:**  Your Honor, I would argue we're not in

 3   California.

 4        **THE COURT:**  All right.  I've had an argument,

 5   response, rebuttal.

 6        Let's move to the next argument.

 7        **MS. FERNANDEZ:**  Yes, Your Honor.

 8        If you -- on that same page, Page 9 of the Court's

 9   proposed jury instructions, is the partnership defined.  The

10   instruction does not follow what the statute says.  The statute

11   just is very simple, that a partnership means an association

12   between two or more persons, and you don't have to intend to

13   form a partnership.  The rest of the language is unnecessary.

14        In addition, Your Honor, we cited in our proposed

15   instruction for the definition of an oral partnership that

16   there is case law that states that for -- to have an oral

17   partnership, there are certain requirements that need to be met

18   such as join -- joint ownership, profit-and-loss.

19        We would argue that that is not in contradiction with the

20   statute, and the cases that we cited in our proposed

21   instruction are actually dated after RUPA was enacted,

22   Your Honor.  Therefore, that should also be included, that

23   language in the partnership instruction of the definition of

24   partnership.

25        **THE COURT:**  All right.  Response?

1      **MR. PRITT:**  Yes, Your Honor.

2      Those cases have not discussed RUPA.  The case law that we

3   have cited from Florida, including *Rafael J. Roca* that came

4   after, did distinguish those cases in part based on RUPA's

5   default partnership rules and explain that RUPA, of course --

6      **THE COURT:**  Well, Mr. Pritt, should the jury be

7   instructed on what constitutes an oral partnership as opposed

8   to a partnership?

9      **MR. PRITT:**  Well, yes, Your Honor.  So I thought we

10  were just doing the other side's objections.

11     One of our objections to the partnership defined is the

12  defendants themselves don't dispute that a partnership may be

13  oral.  They actually propose that in ECF 618 at 41 and made

14  that quite a large part of their defense, that, in fact, Dave

15  Kleiman is the type of person who does written agreements.

16     He did that with an LLC, which, of course, is different

17  than a partnership.  They don't dispute that.  I think the jury

18  would be confused if we do not add a sentence at the end that

19  says, "A partnership does not require a written agreement."

20     And so we would ask the Court to add that sentence.

21     **MS. FERNANDEZ:**  Your Honor, if they're going to

22  include language that says it doesn't require a written

23  agreement, we would again request that it does say that there

24  does need to be an agreement and that there are certain

25  requirements to that agreement, which is in our proposed

1    instruction, Your Honor, that there needs to be a meeting of

2    the minds as to the profits and that there has to be joint

3    ownership -- I'm sorry, Your Honor.  I'm just trying to pull up

4    our proposed instruction.

5          If you would just give me one moment.

6            **MR. PRITT:**  Your Honor, I'm not sure if you want to

7    hear again, but I'm happy to respond.

8            **MS. FERNANDEZ:**  Yes, Your Honor.  Sorry.

9          It was in the filing that we did on Sunday.  It's DE 795

10   on Page 9, the definition of an oral partnership.

11         "Under Florida law, an oral partnership may exist when two

12   or more persons join together in a business or venture.

13   Although not based on a written contract," which is what

14   they're suggesting, "an oral partnership must include each of

15   the following elements, the specifics of which are known and

16   agreed to by each partner:"

17         "A common purpose."

18         "A joint proprietary interest in the subject matter or

19   purpose of the oral partnership."

20         "The right to share profits and the duty to share losses."

21         "And joint control or right of control over the

22   partnership."

23         Those cases that are cited -- *Williams v. Obstfeld* and

24   *Dreyfuss v. Dreyfuss* -- are cases that were decided after RUPA

25   was enacted in -- I believe it was 1994, Your Honor, or '96.

1  And the jury --

2       THE COURT:  Well, I'm not certain why the Court

3  wouldn't just follow the language of 620.8202, and that appears

4  to be what the Court has done, that the associate --

5  association of two or more persons to carry on as co-owners of

6  a business for profit forms a partnership.

7       Why is that definition not appropriate?

8       MS. FERNANDEZ:  We don't think it's inappropriate,

9  Your Honor.  We think, in addition to, that the language of

10  what is necessary for an oral partnership to exist should be

11  added.  We think that it's not -- it's -- the case law is in

12  addition to RUPA, not that they're in contradiction to each

13  other.

14       THE COURT:  All right.

15       MS. FERNANDEZ:  I also have another case, Your Honor,

16  I'm trying to locate.  It is also a breach of an oral

17  partnership where they do also cite to RUPA and, again -- and

18  they cite and rely on *Dreyfuss*.

19       THE COURT:  All right.  I have the *Williams* and

20  *Dreyfuss* case.  All right.

21       MS. FERNANDEZ:  Sorry, Your Honor.

22       It is the *Rafael Roca v. Lytal, Reiter, Clark, Roca,*

23  *Fountain and Williams* case.  In that case, they discuss RUPA,

24  and they discuss *Dreyfuss*.  And they do state that you do need

25  to find the elements that are in the *Dreyfuss* case for an oral

1    partnership as well, even though it is a RUPA case.

2        The cite is 856 S -- So.2d, 1, Your Honor.  Although they

3    didn't find that there was --

4            **THE COURT:**  I'm sorry.  So.2d --

5            **MS. FERNANDEZ:**  So.2d, 1.

6            **THE COURT:**  1.

7        All right.  Thank you.

8            **MS. FERNANDEZ:**  Yes.

9        I was just going to add, Your Honor, although in that case

10   they don't find that there was a breach of an oral partnership,

11   they still find that those requirements need to be met.  And in

12   that case, they did meet them.

13           **THE COURT:**  Okay.  All right.  Let's move to -- to the

14   next objection.

15           **MS. FERNANDEZ:**  Yes, Your Honor.

16       Your Honor, I'm going to jump now to the "Damages" section

17   of the instructions, which begins on Page 17.

18           **THE COURT:**  All right.

19           **MS. FERNANDEZ:**  The damages for the Estate's interest

20   in partnership -- we would argue that that is incorrect.

21       If -- if the other instruction about the partnership asset

22   stands as it is, then this would be an incorrect argument as

23   well because it's just saying to use that instruction and then

24   split it 50/50 unless there's some other evidence of what the

25   partnership split is.

1            THE COURT:  Based on the dissolution at the time of

2    the death?

3            MS. FERNANDEZ:  Correct.

4            THE COURT:  All right.

5            MS. FERNANDEZ:  It either needs to be dissolution and

6    it's valued at the time of the dissolution, or if they're

7    arguing that it's a dissociation, then it's at the time of the

8    dissociation.

9        And, again, Your Honor, in the statute, as far as

10   dissolution, it states that after a partner passes away that

11   the date of dissolution would be 90 days after that,

12   Your Honor.  And that is in -- that is in Section 620.8801, I

13   believe.

14       Yes, Your Honor.  It says within 90 days after a partner's

15   dissociation by death, that is when dissolution would be

16   measured under the statute, and that would be the time of

17   valuation.

18           THE COURT:  Response, Mr. Pritt?

19           MR. PRITT:  Thank you, Your Honor.

20       This is the same issue that was addressed previously.  So

21   we would point Your Honor to Pages 16 and 19 again.  There is

22   no buyout for a two-person partnership, as the several

23   California cases applying the same provision of RUPA held.  And

24   there is no contrary Florida case law.

25           MS. FERNANDEZ:  Would Your Honor like me to move on to

1   the next one?

2           **THE COURT:**  Unless there's any further argument.

3           **MS. FERNANDEZ:**  No.  No, Your Honor.

4           **THE COURT:**  Okay.  Let's continue.

5           **MS. FERNANDEZ:**  Thank you.

6       On Page 18, the damages for conversion, we would argue,

7   Your Honor, that this instruction does not state the correct

8   law.  It says here in the proposed instruction that they're

9   entitled to the highest value of the assets between the time of

10  the conversion and the date of your verdict.

11      We have several cases, Your Honor, which state that the

12  conversion is actually measured as of the date of the

13  conversion or reasonable time thereafter.  And the case law has

14  found that more than a year is not a reasonable time

15  thereafter.

16      The cases, Your Honor, are -- so it's the restatement

17  first of restitution -- I'm sorry.  Restitution?  Restitution

18  Section 151 states that -- I'm sorry.  927.  Okay.  I

19  apologize, Your Honor.  It is -- okay.  I'll just read the case

20  law for now.  Sorry.

21      In the *Moody v. Caulk* case -- it's 14 Fla. 50 -- it states

22  the measure of damages in conversion is the market value at the

23  time of conversion.

24      In *Klein v. Newburger*, which is 151 So.2d, 879, it states

25  that damages in conversion cases are generally to be measured

1  by value of converted property at time and place of conversion.

2  And it also states that damages for conversion of stock are to

3  be measured by value of stock within a reasonable time after

4  conversion.

5       We also have *Scott v. National City Bank of Tampa*, 107

6  Fla. 818, which also says the same thing, that the conversion

7  is measured at the time that the conversion occurs.

8       *Grimes v. Holt*, 225 So.2d, 566; *Berman v. Airlift*

9  *International, Inc.*, 302 Florida Supp. [sic], 1203.  And the --

10          **THE COURT:**  I'm sorry.  The case that you just

11  cited -- 3 -- 302 --

12          **MS. FERNANDEZ:**  302 F- --

13          **THE COURT:**  F.Supp?

14          **MS. FERNANDEZ:**  -- -Supp., 1203.

15          **THE COURT:**  All right.

16          **MS. FERNANDEZ:**  And *Florida Jurisprudence, Second*

17  *Edition*, which states that in actions involving conversion of

18  corporate stock, which we've discussed that this is similar to

19  that, to a commodity -- the damages recoverable are measured by

20  the market value thereof within a reasonable time after the

21  conversion of it by the defendant.

22          **THE COURT:**  And did you look at the more recent cases

23  of *Haddad v. Cura* from the Third District or *Foley v. Dick* from

24  the Second District with regard to the -- the measure of

25  compensatory damages?

1          **MS. FERNANDEZ:**  Your Honor, in the *Foley* case, we

2    would argue that that is dicta.  In the case, it says it's not

3    relying upon that or making a decision in that case based on --

4    on that.

5          **THE COURT:**  In both cases or just *Foley*?  How about

6    the *Haddad* case?

7          **MS. FERNANDEZ:**  And -- and *Moody* as well, Your Honor,

8    is also dicta.

9          **THE COURT:**  All right.  Okay.  Response?

10         **MR. PRITT:**  Thank you, Your Honor.

11       Again, this was addressed in our opposition at Pages 9 to

12   10.  We agree with Your Honor's order.  *Moody*, for example,

13   states at 52 to 53 that the proper value is the highest value

14   after conversion.  So do the other cases that the other side

15   says are dicta.  We disagree.

16         **THE COURT:**  Okay.  Is there anything further on this

17   point?

18         **MS. FERNANDEZ:**  Your Honor, we would argue that maybe

19   it is the highest value up to conversion but within a

20   reasonable time.  The reasonable time is the cutoff, and that

21   language should be included in the instruction.

22         **MR. PRITT:**  That is not what those cases say.

23         **THE COURT:**  All right.  Well, I certainly don't want

24   to take our time delving into Westlaw, but I'm certainly aware

25   of the argument.  All right?

1        **MS. FERNANDEZ:**  Thank you, Your Honor.

2        **THE COURT:**  The next -- the next objection?

3        **MS. FERNANDEZ:**  As to the damages for fraud and

4   constructive fraud on Page 18 as well, we would argue that

5   "from the time" should be "as of the time" in -- because that

6   is the --

7        **THE COURT:**  Okay.  "As of the time"?

8        **MS. FERNANDEZ:**  Right.

9     And then for damages for breach of the fiduciary duty,

10  instead of "from," it should be "as of the time."

11       **THE COURT:**  Is there any objection to that?

12       **MR. PRITT:**  I'm sorry.  I missed it.

13    Can you please restate it, Counsel.

14       **THE COURT:**  So it's on Page 18, the damages for fraud

15  and constructive fraud.  It would say calculated not from the

16  time but as of the time the defendant committed the fraud or

17  the constructive fraud.

18       **MR. PRITT:**  Yes, Your Honor, we would object to that.

19  That's an entirely different measure of damages.  Would you

20  like an explanation?

21       **MS. FERNANDEZ:**  Your Honor --

22       **THE COURT:**  Yeah.  Did you want to --

23       **MR. PRITT:**  Yeah.

24    So Florida subscribes to the --

25       **THE COURT:**  -- give me a case that tells me that it's

1   from the time?

2           MR. PRITT:  Of course, Your Honor.

3       We address this in our opposition again, but Florida

4   subscribes to the flexibility theory of fraud damages, which

5   allows both out-of-pocket and benefit-of-the-bargain damages.

6   That's *Bluesky Greenland Environmental Solstice, LLC*.  That's

7   at 2014 Westlaw 12515274 at 2.  That's the Southern District

8   here, July 22nd, 2014.

9       So we agree with Your Honor's jury instruction that the

10  appropriate measure here is the difference in value of the

11  chattels or the assets between what they would have been worth

12  at the time of sale and what they were worth at the time

13  received.  That's *Srybnik v. Ice Tower, Inc.*, 162 So.2d, 294 at

14  296, Florida Third DCA in 1964.

15      And as for constructive fraud, that's simply the same as

16  fraud.

17          THE COURT:  All right.  And with regard to the breach

18  of fiduciary duty?

19          MR. PRITT:  So breach of fiduciary duty is also a

20  benefit of the bargain that was improperly received by

21  defendant.  That's *Cabot E Broward 2, LLC*.  We cited this in

22  our opposition.  It's 2018 Westlaw 11309825, Pin Cite 4,

23  Southern District of Florida, July 26th, 2018.

24          MS. FERNANDEZ:  Your Honor, if I may briefly respond,

25  as to the constructive fraud, the time for measuring the

1    damages at the appropriate time would be when the -- the --

2              **MR. PRITT:**  I'm sorry, Your Honor.  I just can't hear.

3              **MS. FERNANDEZ:**  The appropriate time for measuring the

4    damages would be when the fraud actually occurred.  Again,

5    constructive fraud is tied to a breach of -- I'm sorry, Your

6    Honor -- not when the fraud occurred but when the breach of

7    fiduciary duty occurred as constructive fraud is tied to the

8    fiduciary duty.  It's a violation of that duty.

9        And under *Haddad*, the time to measure a breach of

10   fiduciary duty is as of the time of the breach; and therefore,

11   both of those follow the same case law, Your Honor, and that is

12   the appropriate time for the measure of damages.  In addition,

13   Your Honor, as to the breach of fiduciary duty -- I can't find

14   it.

15       Okay.  Your Honor -- yes.  I apologize.  We're going to

16   rely on *Haddad*.  And, again, the argument is that the breach --

17   the time to value the damages at the time of the breach and

18   constructive fraud -- fraud follows the breach of the fiduciary

19   duty.

20             **THE COURT:**  All right.  Thank you.  That's on the

21   fiduciary duty.

22       And then moving through the instructions, any further

23   objections?

24             **MS. FERNANDEZ:**  If I can just have one moment,

25   Your Honor, to confer.

```
1                THE COURT:  Yes, of course.

2                MS. FERNANDEZ:  Your Honor, just a few brief typos, I

3      guess.

4                THE COURT:  Yes.

5                MS. FERNANDEZ:  On Page 6, in the responsibility for

6      proof, it says, "However, you should consider each affirmative

7      defense only as to the claim of claims."  I believe it should

8      say "claim or claims which it is directed."

9                THE COURT:  Thank you, Ms. Fernandez.

10               MS. FERNANDEZ:  And then on Page 16 in the "Fraudulent

11     Concealment" instruction, the second paragraph that starts,

12     "Ira Kleiman and W&K..."  It says, "Claims should be been

13     delayed."  I believe it should say, "Claims should be delayed."

14          And one more objection, Your Honor --

15               THE COURT:  Okay.  Thank you.

16               MS. FERNANDEZ:  -- as to the "Damages for Unjust

17     Enrichment Instruction," which is on Page 18.

18               THE COURT:  Okay.

19               MS. FERNANDEZ:  We would argue that in addition to the

20     instruction that it is added that the measure of recovery for

21     the benefit -- that it's to be measured at the time of its

22     improper acquisition of the property.  And it's -- this would

23     be the Restatement -- Re- -- the Restatement of Restitution

24     Section 151, Your Honor.

25               THE COURT:  Okay.  Anything further?
```

1            **MS. FERNANDEZ:**  Unless they have a response to the --

2            **THE COURT:**  Yeah.  I'm going to -- I'm going to --

3            **MS. FERNANDEZ:**  I'm just -- no.  That's it,

4    Your Honor.  Thank you.

5            **THE COURT:**  All right.  On the unjudged -- unjust

6    enrichment, the measure of recovery measured at the time?

7            **MR. PRITT:**  Yes.  Thank you, Your Honor.

8        This, again, is also addressed in our opposition, Pages --

9    I just had it.  Sorry.

10       All right.  Page 13.  For example, Section 3 of the

11   Restatement, the Restitution on Unjust Enrichment, says, "The

12   whole of the resulting gain is to be treated as unjust

13   enrichment."  We also cite Eleventh Circuit case law in that

14   same page.

15       So we would submit on that.

16           **THE COURT:**  All right.

17           **MS. FERNANDEZ:**  Your Honor --

18           **THE COURT:**  Yes.

19           **MS. FERNANDEZ:**  -- we have no further objections.  We

20   would just like to preserve the proposed instructions and the

21   authority that was in our proposed jury instructions and the

22   law cited in our motion for judgment as a matter of law in

23   support of our instructions.

24           **THE COURT:**  Yes.  They are preserved.

25           **MS. FERNANDEZ:**  Thank you.

1          **THE COURT:**  All right.  On behalf of the plaintiffs,

2    any objections to be addressed that have not already been

3    addressed?

4          **MR. PRITT:**  Yes, Your Honor.

5       If we can start at Page 5, the Court twice includes -- if

6    you look at the second first full paragraph, it starts with "If

7    the proof fails..."

8          **THE COURT:**  Uh-huh.

9          **MR. PRITT:**  That same paragraph is repeated almost

10   word for word three paragraphs down.  Again, it starts with "If

11   the proof fails..."  We would ask the Court to just give one of

12   those paragraphs.  It's just a sentence on both.

13         **THE COURT:**  Okay.  Thank you.

14      I don't think there's any objection to that.

15         **MS. FERNANDEZ:**  No objection, Your Honor.

16         **THE COURT:**  All right.  The next change?

17         **MR. PRITT:**  Yes.

18      On Page 7, "Definition of an LLC," the clause in the

19   second sentence that says, "Whereby the owners are not

20   personally liable for the company's debts or liabilities."  We

21   think that is confusing and potentially misleading because

22   certainly the -- anyone who owes a fiduciary duty or any one --

23   member or anyone like that does owe a duty to each other.

24      So we would ask that the Court actually strike that, and

25   so instead the sentence would read, "A Limited Liability

1    Company or LLC is a business structure that combines some

2    characteristics of a corporation with those of a partnership."

3         Alternatively, the Court could add two others at the end

4    of that first sentence -- second sentence.  Then the next

5    sentence, the third sentence, that says, "LLC's are managed by

6    their" -- yeah.  Sorry.  I mean "outside the LLC" -- "through

7    others outside the LLC" if you want the alternative.

8         The third sentence that says, "LLC's are managed by their

9    members..."  We think that sentence improperly suggests that

10   the defendant didn't have a fiduciary duty in this case just

11   because he wasn't a member, and we think that would be

12   confusing to the jury.

13        Finally, the last paragraph that starts with "An LLC that

14   has been administratively dissolved..."  I would ask the Court

15   to exclude that as both irrelevant and because the LLC has been

16   reinstated.  So, again, it is confusing as well.

17        **THE COURT:**  Response?

18        **MS. FERNANDEZ:**  Your Honor, the -- that instruction, I

19   believe, is the standard jury instruction for an LLC.  In

20   addition, they have a -- there is an instruction as to

21   fiduciary duty.  So I don't believe this is confusing.  There's

22   an instruction -- a complete separate instruction for -- for

23   fiduciary duty and what a fiduciary duty entails.

24        In addition, Your Honor, there was a time when the LLC was

25   administratively dissolved during this case, regardless of

1    whether or not it was reinstated by Mr. Kleiman, which we

2    argued, I believe, that it was improperly reinstated.

3    Therefore, the -- the instruction should stay, Your Honor,

4    as -- as stated in the proposed jury instructions.

5              THE COURT:  And what is the import of instructing the

6    jury on the definition of a Limited Liability Company as -- as

7    it applies to plaintiff W&K?  Why does the jury need that

8    information?  This is the defendant's proposed instruction.

9              MS. FERNANDEZ:  Your Honor -- so that they understand

10   that W&K is a separate party aside from Mr. Kleiman and -- and

11   Dr. Wright.  It gives an understanding to what a Limited

12   Liability Company is and what the duties of that company would

13   be in order to find the claims that have been brought by W&K in

14   this case.

15             THE COURT:  All right.  Anything further on behalf of

16   the plaintiffs?

17             MR. PRITT:  No, Your Honor, except that I'm fairly

18   certain that the last paragraph is not in the model

19   instruction.  As to the remainder, I would have to get the

20   number of the model instruction to confirm.

21             MS. FERNANDEZ:  It would be the law, though,

22   Your Honor.  It's the LLC Statutes 605.0304 and 605.0407 and

23   605.0714.

24             THE COURT:  It's in each of those statutes?

25             MS. FERNANDEZ:  Correct, Your Honor.  This -- the law

 1   that's in this instruction is found in those statutes.

 2          **THE COURT:**  All right.  Thank you.

 3       And the next objection by the plaintiffs?

 4          **MR. PRITT:**  Thank you, Your Honor.

 5       Page 12.  This is the tail end of the second half of the

 6   "Conversion" instruction.  It seems on Number 2, where it says,

 7   "This property belonged to the Estate of David Kleiman," that

 8   that should then say "and/or W&K" just like Number 3 says

 9   "and/or W&K."

10          **THE COURT:**  Okay.

11          **MR. PRITT:**  And then the sentence after Number 3,

12   which is "In an action for conversion of property such as

13   money, the money must be specific, capable of identification,

14   and not simply a general assertion over an amount owed."

15       First, Your Honor, there's been no finding that Bitcoin is

16   money.  It is not, in fact.  It is a commodity.  And so this

17   identifiable requirement does not apply to Bitcoin, and we are

18   not aware of any case that has ever held that it does apply.

19       In any event, even if it were to be considered money, it

20   can just be a number or amount of money that's in a specific

21   location.  And that's *Gary v. D. Agustini & Associates*, 865

22   F.Supp., 818, 26, Southern District of Florida, 1994.

23       This is also where our "Adverse Inference" instruction

24   came in.  It was as to this.

25          **THE COURT:**  Can you give me the cite?  865 F.Supp.,

1   818, 26?

2             **MR. PRITT:**  818, Pin Cite 826.

3             **THE COURT:**  Okay.  Thank you.

4             **MR. PRITT:**  Also, although Florida hasn't addressed

5   it, the Middle District of Alabama in the *Ledbetter v. United*

6   *Insurance Company of America*, 837 F.Supp., 381, Pin Cite 387,

7   said this issue isn't for the jury because this issue is

8   effectively just -- is there any evidence in the record.

9        If -- if it goes to the jury -- if the Court were to find

10  that Bitcoin is money and thus this is a requirement, then it's

11  just a matter of whether it's in the record, not whether the

12  jury -- the jury does not have to identify any specific money,

13  even if this did address -- did involve money.

14       So we would respectfully ask that the Court -- even if it

15  considers this going forward, for example, in post-trial

16  motions as a requirement, that it not be given to the jury.

17            **THE COURT:**  All right.  Response?

18            **MS. FERNANDEZ:**  Yes, Your Honor.

19       They've referred to the Bitcoin in this case several times

20  as digital money, as money.  Their own expert, Andreas

21  Antonopoulos, called it money several times.  We believe the

22  instruction is appropriate.  If the jurors want to find that

23  it's not money and treat it as a commodity or some other sort

24  of valuation, then they would just not apply that instruction.

25       But as of now, the Circuits are actually split,

```
1    Your Honor, as to whether Bitcoin is treated as money or as a
2    commodity; and therefore, we think the instruction is
3    appropriate.  In their own proposed jury instructions, they
4    cite to an article, Your Honor, which discusses this exact
5    fact, that it's confusing whether or not Bitcoin is money or a
6    commodity.
7        And therefore, we believe the instruction is appropriate.
8        MR. PRITT:  Your Honor, respectfully, it's not
9    confusing.  The CFTC has held that it's a commodity.  And if
10   the Court were to instruct the jury such as money, I think a
11   reasonable person would think the Court is saying that Bitcoin
12   is money.
13       And also, this instruction wouldn't apply to the
14   intellectual property.  There is no requirement of
15   identification for intellectual property.  So it would also be
16   confusing for that respect.
17       THE COURT:  Okay.  Next objection?
18       MR. PRITT:  For -- the next page, Page 13, the "Fraud"
19   instruction.  Number 1, I believe the Court may have omitted
20   "after false statement or omission."  That is also what the
21   Court wrote in 3 and 4 and 5, and that is what the Court agreed
22   with in its motion for summary judgment order, ECF 615 at 70.
23       THE COURT:  That's correct.
24       No objection, Ms. Fernandez?
25       MS. FERNANDEZ:  No, Your Honor.
```

1          **THE COURT:**  All right.  The next objection?

2          **MR. PRITT:**  The next one is on Page 15.  This is

3   "Fraudulent Concealment," the last sentence that starts on that

4   page.  It says, "Fraudulent concealment goes beyond the

5   defendant's mere nondisclosure of fact.  It must constitute

6   active and willful concealment."

7          We don't disagree with that except the case law makes

8   clear that that applies only in the absence of a fiduciary

9   relationship -- that's a quotation from a case I'll give you --

10  or, quote, "where the defendant or other party does not have

11  equal opportunity to become appraised of the fact."

12         Both of those are from *Ramel v. Chasebrook Construction*

13  *Company*, 135 So.2d, 876, Pin Cite 882, Florida DCA, 1961.  So

14  we would just ask that the Court add those two qualifications

15  before the sentence.

16         So the sentence would read, "In the absence of a fiduciary

17  relationship or where the defendant" -- or sorry -- "or where

18  the other party does not have equal opportunity to become

19  appraised of the fact, fraudulent concealment must go beyond

20  the defendant's mere nondisclosure of fact.  It must constitute

21  active and willful concealment."

22         Then we would ask the Court to add a sentence that says,

23  "Fraudulent concealment can include omissions."  That is from

24  *Varner v. Domestic Corporation*, 2007 Westlaw 3730618, Pin Cite

25  7, Southern District of Florida, 2017.

1          Finally, the last two paragraphs of this that starts with

2     "Ira Kleiman and W&K claim..."  We just don't think it's

3     necessary.  We think it's confusing and suggests that the

4     plaintiffs concede or -- that the statute of limitations was

5     already -- did already accrue.

6          And so this was something that was suggested, I believe,

7     in the defendant's -- this type of instruction was suggested in

8     the defendant's proposed jury instructions for many of the

9     instructions -- and the Court did not include it -- where it's

10    just an explanation of what the claim and denial is.

11         So we would ask the Court to strike out those last two

12    sentences and paragraphs.

13         **THE COURT:**  Response?

14         **MS. FERNANDEZ:**  Yes, Your Honor.

15         As to the law that fraudulent concealment goes beyond a

16    defendant's mere nondisclosure of a fact, that was in our

17    proposed instruction.  We cite to the -- and our authorities to

18    the case law that supports that position.

19         In addition, Your Honor, the defendants had ample

20    opportunity to add additional language to the instruction or to

21    propose, you know, when we did these joint proposed jury

22    instructions and again on Sunday, and they did not.  They're

23    trying to add additional language to an instruction now, and

24    they had ample opportunity to previously do that.

25         And then in addition, as to the argument about the last

```
 1    two paragraphs describing it, there are several descriptions in
 2    your other -- in your other instructions about the positions of
 3    the parties; and therefore, we find it's appropriate and in
 4    line with the other instructions that you're giving to the
 5    Court -- or to the jury.
 6              THE COURT:  All right.  Anything further?
 7              MR. PRITT:  And just to be clear, Your Honor, we did
 8    not propose that sentence "The fraudulent concealment goes
 9    beyond a mere nondisclosure."  That was defendant's language.
10              THE COURT:  Yeah.
11              MR. PRITT:  We don't have that in our proposed
12    instruction.  So we're not adding anything.
13              THE COURT:  Okay.  The next objection?
14              MR. PRITT:  Let's see.
15         So the last -- I believe the last one is Page 18, "Damages
16    for Civil Theft."  The only comment is that when the Court --
17    the Court says the date for calculating damages, the date of
18    the civil theft, the -- as far as we're aware, the case law and
19    the secondary authority says that civil theft damages should be
20    treated the same as conversion damages.
21         And that's from Anthony Distributors, 941 F.Supp., 1567.
22    We cited this in our opposition to the motion for judgment of
23    matter of law.  And if not, as we also explain in our motion
24    for judgment of a matter of law, at a minimum, it would be the
25    date of the filing of the complaint.
```

```
 1          And so we would ask the Court to, if the Court doesn't

 2    want to treat it the same as conversion and give the

 3    instruction it did for conversion -- to -- to instruct that the

 4    date of the complaint is when the damages should be calculated

 5    from for civil theft.

 6          THE COURT:  All right.  The next -- I'm sorry.

 7    Response to --

 8          MS. FERNANDEZ:  Yes.

 9          THE COURT:  -- the civil theft?

10          MS. FERNANDEZ:  Yes, Your Honor.

11          We believe that the instruction as proposed is the correct

12    law.  In the proposed jury instruction -- additional jury

13    instruction that we submitted in DE 795, we cite to the law

14    that would support that proposition, which is Carter v. State,

15    77 So.3d, 849; Koster v. Phillips, 2013 Westlaw 8433654; and

16    Wright v. Logan, 2011 Westlaw 13175744, which states that the

17    date for calculating the damages is the date of the purported

18    theft.

19          THE COURT:  Anything further or next objection?

20          MR. PRITT:  No other objections, Your Honor.  I just

21    would like to preserve all of our objections and maintain our

22    request for the instructions we submitted plus the ones over

23    the weekend on the adverse inferences.

24          THE COURT:  All right.  Certainly.

25          MS. FERNANDEZ:  Your Honor -- I apologize, Your Honor.
```

1    **THE COURT:**  Yes.  That's okay.

2    **MS. FERNANDEZ:**  There was one instruction that I

3    failed to mention previously, a proposed instruction that we

4    believe should be included, which we filed in DE 795.  It's our

5    "Speculative Damages" instruction.

6    We believe this instruction should be included.  It is the

7    law that damages cannot be based on speculation, conjecture, or

8    guesswork, and that -- we believe that the instruction as

9    proposed in our proposed instructions should be included in the

10   instructions for the jury.

11   In addition, Your Honor, this also follows the language of

12   the -- there's a "Speculative Damages" instruction in the --

13   the standard jury instructions for contract and business cases.

14   **THE COURT:**  Any response?

15   **MR. PRITT:**  Well, Your Honor, this is a brand-new

16   instruction that was proposed over the weekend, despite

17   Your Honor saying that we shouldn't be proposing new

18   instructions.  So I'm happy to get on my computer and look at

19   the cases because I already -- I have it on my computer if you

20   want to respond to the cases.

21   **MS. FERNANDEZ:**  Your -- Your -- Your Honor did give us

22   an opportunity on Sunday to submit additional instructions --

23   **THE COURT:**  That's correct.

24   **MS. FERNANDEZ:**  -- to conform with the evidence.  So

25   we would request that that be included in those instructions

```
 1   for the jury.

 2           MR. PRITT:  Well, that's not how we read Your Honor's

 3   order, but if that's the case, that's fine.  We read these case

 4   laws.  They do not stand for the proposition.  We think this

 5   instruction is both irrelevant and highly prejudicial to try

 6   and suggest that the damages that you've already found survived

 7   JMOL should go to the jury are somehow speculative.

 8           THE COURT:  All right.  Thank you for the argument.

 9   I'll certainly include it if it comports with the law and the

10   cases that were cited.

11       Is there anything further by way of objections to the

12   proposed jury instructions?

13           MS. FERNANDEZ:  No, Your Honor.

14           THE COURT:  All right.  Then moving to the verdict

15   form, are there any objections to the form of verdict?

16           MS. FERNANDEZ:  Yes, Your Honor.

17       In the verdict form, there is now a -- on Page -- I

18   apologize.  On Page 7, for the amount of Bitcoin, we believe

19   this is inappropriate for the verdict form.

20       They're seeking conflicting, inconsistent damages,

21   Your Honor.  They want the jury to decide monetary damages for

22   Bitcoin and IP that was allegedly misappropriated, but at the

23   same time, they want the jury to determine an amount of Bitcoin

24   so that Your Honor could possibly enter equitable damages to

25   return the Bitcoin or -- or to return the Bitcoin.
```

 1          They can't have it both ways, Your Honor.  We would argue

 2    that they need to determine and choose or elect the remedy as

 3    these remedies are inconsistent.

 4          **THE COURT:**  The plaintiffs aren't allowed to elect

 5    their remedy following the jury's verdict where they're seeking

 6    equitable relief?

 7          **MS. FERNANDEZ:**  Your Honor, we would argue that they

 8    have to do it before the verdict comes back.

 9          **THE COURT:**  All right.  Response?

10          **MS. FERNANDEZ:**  We believe that is the appropriate

11    case law.

12          **THE COURT:**  Okay.  And is there a case that the Court

13    should look to that the election of remedies, where there is

14    a -- a claim for equitable relief that would include

15    disgorgement -- that the Court should require that the

16    plaintiffs elect their remedy prior to the rendition of the

17    verdict?

18          **MS. FERNANDEZ:**  Your Honor, I do not have the case

19    number or the citation on hand, but I can definitely submit

20    that to the Court.

21          **THE COURT:**  And do you believe that it's appropriate,

22    if the Court were tasked with determining an equitable remedy

23    such as injunctive relief or disgorgement, that the Court can

24    ask the jury to return an advisory verdict in the form of an

25    interrogatory?

1          **MS. FERNANDEZ:**  Yes, Your Honor.  They can do an

2    interrogatory verdict, but we would suggest -- or the case law

3    states that those would be inconsistent for them to be able to

4    get a return of Bitcoin and at the same time seek monetary

5    damages for that same Bitcoin.  It would be double-dipping.

6        They can't have it both ways, Your Honor.  They need to

7    elect a remedy.

8          **THE COURT:**  All right.  Response?

9          **MR. PRITT:**  No.  We agree with Your Honor.  We're not

10   aware of any case law that suggests that plaintiffs can't elect

11   their remedy after the jury returns its verdict.

12       We have a constructive trust claim.  It's equitable in

13   nature.  The Court can always ask the jury to advise on any

14   findings of fact that it is required to make, and it's sitting

15   in its equity.

16         **THE COURT:**  Is there anything further?

17         **MS. FERNANDEZ:**  No, Your Honor.

18         **THE COURT:**  All right.  Any other objections to the

19   form of verdict?

20         **MS. FERNANDEZ:**  We don't have any, Your Honor.

21         **THE COURT:**  Okay.  On behalf of the plaintiffs?

22         **MR. PRITT:**  None from the plaintiffs.

23         **THE COURT:**  All right.  Then I would like to take the

24   time to review the case law that was newly provided to the

25   Court and then have a review of the cases consistent with the

1  argument that was made here in the court.

2      Let me discuss timing.  Since the plaintiff is entitled to

3  provide an opening argument and then a rebuttal argument, how

4  much time is the plaintiff requesting?  I know that there's 90

5  minutes total, but how much time do you want for the opening

6  argument so that we can look at the schedule for the jury?

7          MR. FREEDMAN:  Your Honor, if I have to choose now,

8  I'd say 20 minutes for rebuttal.

9          THE COURT:  So you're asking for 70 minutes on the

10  front and then 20 in rebuttal?

11          MR. FREEDMAN:  Yes, although if -- you know, if -- if

12  it's all right with the Court, I would say if I end up going 80

13  minutes, then I just lose time from the -- the rebuttal, if

14  that's okay.

15          THE COURT:  Okay.  So with 70 and then obviously 90 --

16  I'm just trying to see where we -- we give the jury a break.

17          MR. RIVERO:  And, Your Honor, I will note -- I

18  understand the Court stated its preference, I believe.  But I

19  do know cases, and I have been in courts where there is not a

20  rebuttal.  And so I would request of the Court that there not

21  be rebuttal and that the time be 90 and 90.

22          THE COURT:  I am certainly going to give the

23  plaintiffs an opportunity for a rebuttal argument.

24      I do also provide the jury with written instructions since

25  many individuals, such as all of us, are visual learners.  So I

1   do provide them with a complete set of the jury instructions.

2   So I do plan on instructing them before the parties proceed

3   with argument.

4        So I would suggest that we start -- in the morning, I'll

5   plan on seeing each of you here at 9:30.  I will have a full

6   set of the instructions as well as the proposed form of verdict

7   based on the objections that were made today.  If -- if it's

8   preferable, I can -- I can file them if that allows you to

9   prepare for your closing arguments.

10       Would that be better for each of you?

11       **MR. FREEDMAN:**  If that's possible, Your Honor, yes.

12   It would be much appreciated.

13       **THE COURT:**  All right.  I would suggest that -- I'll

14   give the instructions.  That would take us to about 10:00,

15   10:15.  Then perhaps we'll take a 15-minute recess, and then

16   we'll begin with the -- the plaintiffs' argument, and then

17   we'll take another recess.

18       I'm trying to figure out where we're going to have our --

19   our one-hour lunch break.  I certainly don't want to interrupt

20   anyone's closing argument.  Let's see.  70 -- maybe what we'll

21   do is take an early -- maybe an early lunch break.  Let me

22   figure out the time period so this -- this way, I don't

23   interrupt any of the time that you've requested, and I can give

24   you the full 70 minutes.

25       I can give the defendant -- and I'm not certain who's

 1   making the arguments, but whoever's making it on behalf of the

 2   defendant -- the full 90 minutes.  And then we'll take a break

 3   after that and -- a short break, and then we'll proceed with

 4   any rebuttal and then obviously the final instructions that the

 5   Court has.

 6        Can I leave it to the attorneys to take the time to review

 7   the exhibits?  Or, Mr. Rivero, are we ready to --

 8             **MR. RIVERO:**  I think Ms. McGovern --

 9             **THE COURT:**  -- advise the Court what exhibits are

10   going to be introduced?

11             **MS. MCGOVERN:**  Yes, Your Honor.

12             **MR. RIVERO:**  Ms. McGovern is going to address that.

13        But, Judge, I just want to understand -- I know you're

14   going to tell us.

15        So there's 70 minutes, and then at 10:15, which -- if you

16   play that straight through, it would take us to about 11:00.

17   Then would the Court propose to take a break and then have --

18   we continue until the lunch hour at 1:00?  Is that the

19   agreement?

20             **THE COURT:**  Well, we've been pretty much doing that,

21   having our lunch recess from 1:00 to 2:00.  So it depends on --

22   I'm not certain if we're going to be starting later than

23   expected --

24             **MR. RIVERO:**  Right.

25             **THE COURT:**  -- but if -- I think it really --

1          **MR. RIVERO:**  It depends.

2          **THE COURT:**  -- depends on where we are, but I -- I

3     will make every effort to ensure that -- that neither side's --

4     other than what you've requested in terms of the open and

5     close, that your 90 minutes is not broken, neither are your 70

6     minutes or, for that matter, the rebuttal.  I think that

7     that -- we can certainly fashion the breaks around -- around

8     the time.

9          Mr. Rivero, did you want to advise the Court what exhibits

10    you want to enter -- or Ms. McGovern?

11         **MS. MCGOVERN:**  Yes, Your Honor.

12         **THE COURT:**  Yes.

13         **MS. MCGOVERN:**  I was going to do that.

14    Do you mind if I just do it sitting down?  I wanted to --

15         **THE COURT:**  Yes, of course.

16         **MS. MCGOVERN:**  Okay.  So we've had the opportunity to

17    confer with Mr. Brenner.  There's an agreement on D-20 to be

18    admitted without objection.

19         **THE COURT:**  All right.

20         **MR. BRENNER:**  That's correct.

21         (Defendant's Exhibit D-20 received in evidence)

22         **MS. MCGOVERN:**  All of the other exhibits that we

23    requested consideration for admission -- and there are ten of

24    them, Your Honor.

25         **THE COURT:**  Okay.

1          **MS. MCGOVERN:**  They -- they do not agree to their

2     admission.

3          The reason for our request -- these are primarily

4     communications with Dave Kleiman, whether it be with Dr. Wright

5     or with Patrick Paige or others.  I can go over those.  We can

6     present them on the monitor to be reviewed, whatever Your

7     Court's preference is.

8          But we would ask for the Court's consideration because

9     they're primarily admissions by a party opponent.

10         **MR. BRENNER:**  Your Honor, I think we can break them

11    down in categories and do it really quickly.

12         **THE COURT:**  All right.

13         **MR. BRENNER:**  Okay.  So one of them, D-20, was agreed

14    to.  One of them is the privilege log again.  I don't --

15         **MS. MCGOVERN:**  Well, if we can go in order because I

16    have them here, Mr. Brenner.

17         **MR. BRENNER:**  I propose -- well --

18         **MS. MCGOVERN:**  I can do this myself.  If we just go

19    one by one, I have the documents.

20         **THE COURT:**  Okay.

21         **MS. MCGOVERN:**  If you would like --

22         **MR. BRENNER:**  That's fine.

23         **MS. MCGOVERN:**  -- we can present them on the monitor.

24         **THE COURT:**  What's after D-20?

25         **MS. MCGOVERN:**  D-20 is admitted.

1       The next document is D-85, Your Honor.  And this is an

2   email to Dave Kleiman, and it's dated February 16th, 2011, and

3   it -- it specifically addresses -- if you could pull it up,

4   please, just for purposes of review.  Oh.  Somebody has to be

5   there.

6       It just refers, Your Honor, to the DHS tenders that form

7   the basis for the intellectual property for W&K.  So this is an

8   email from Dr. Wright to Dave Kleiman and Lynn Wright, and

9   it -- and it refers specifically to the four DHS tenders, and

10  we would ask for the admission of this document.

11      **MR. BRENNER:**  Right.  The reason I tried to do these

12  in categories.

13      So this is a document that was never used or mentioned

14  with a witness.  So there's, like, five or six of these.  It's

15  along the same lines of other documents you'd admitted.  I --

16  our position was if it wasn't admitted because of oversight --

17  for example, with D-20, both sides talked about it.  I just

18  think it was an oversight that neither side moved it in.  So I

19  said, "Fine."

20      There's several here -- this is one of them -- that were

21  just never mentioned or used.  That's -- that's why I objected

22  to their admission, but I will -- also, the Court -- I will

23  tell Your Honor that it's consistent with other documents you

24  did admit that were -- that were mentioned or brought up during

25  the examination.  Primarily -- primarily, it was the

1  examination of Mr. Kleiman.

2      So that's why I said we can do those in categories, but

3  that's our objection.  It was never used or mentioned with a

4  witness.

5          THE COURT:  All right.  But in fairness, if, in fact,

6  this is a communication between David Kleiman and Craig

7  Wright --

8          MR. BRENNER:  It's consistent with what you have --

9  yes.

10          THE COURT:  Yeah.

11      Then the Court will allow its admission, D-85.

12          MR. BRENNER:  Okay.

13      (Defendant's Exhibit D-85 received in evidence)

14          THE COURT:  The next one?

15          MS. MCGOVERN:  Your Honor, the next document is D-158.

16  Again, this is a document from David Kleiman to Patrick Paige

17  and Shawn Dorsey.  It's dated December 3rd, 2012, and we would

18  also request its admission as a party opponent.

19      And the reason for this request, Your Honor, is because it

20  is a contemporaneous communication from Dave Kleiman referring

21  to a witness in this case, Patrick Paige, as his business

22  partner.  And it's during the relevant time period, Your Honor.

23          MR. BRENNER:  Yeah.  So this is one, Your Honor,

24  that -- had they used it with Patrick Paige, we would have

25  asked him about it, too.

1    This is unlike the DHS contracts, which Your Honor did

2    admit.  This document is sort of its own -- it's its own

3    category.  It is -- it is a -- it would be a different subject

4    in which we would have asked Patrick to explain what that

5    meant.

6        So unlike the DHS, I think this is a different category.

7            THE COURT:  I mean, it's -- it's being introduced

8    because --

9            MS. MCGOVERN:  It's being introduced -- yeah.

10           THE COURT:  -- it refers to Patrick Paige being his

11   business partner?

12           MS. MCGOVERN:  That is correct, and it's -- it's an

13   admission by a party opponent, Your Honor.

14           THE COURT:  The Court will allow its admission.

15       (Defendant's Exhibit D-158 received in evidence)

16           MS. MCGOVERN:  The next document, Your Honor, is

17   D-159.  Again, this is an email communication between David

18   Kleiman and Patrick Paige dated March 11th, 2013.

19           MR. BRENNER:  Your Honor, the objection would be the

20   same, but your ruling, to be consistent, would seem to be --

21   seem to follow from your ruling on the prior document.

22           MS. MCGOVERN:  And, again, Your Honor --

23           THE COURT:  All right.

24           MS. MCGOVERN:  -- this is -- it's for the purpose of

25   reflecting communications during Dave's lifetime during the

```
 1   relevant time period, and it's an admission by a party
 2   opponent.
 3             THE COURT:  And the basis of the objection, Mr.
 4   Brenner, is, I imagine, relevance?
 5             MR. BRENNER:  It was just an objection as -- as --
 6   yeah.  We would have -- had they put it in in the normal
 7   course, we would have had an opportunity to ask Patrick Paige
 8   about it, but same objection I made to the last one, which
 9   Your Honor ruled.
10             THE COURT:  But it shows the relationship.  Is
11   there -- I mean, is there any reason why the Court would not
12   admit an email that was from David Kleiman?
13             MR. BRENNER:  None other than what I've stated, no.
14             THE COURT:  All right.  159 is admitted into evidence.
15        (Defendant's Exhibit D-159 received in evidence)
16             MS. MCGOVERN:  Your Honor, the next document is D-179.
17   Again, it's a -- it's an email from David Kleiman, and it's
18   actually to Ira Kleiman, and it's dated May 6th, 2009.
19        And this refers to a communication during the time period
20   within the Court's ruling regarding the motion in limine, and
21   it's a communication with Ira Kleiman, which we believe
22   relevant because it specifically refers to communications and
23   recommendations regarding investments and stock.  That was
24   specifically discussed, and there's transcript testimony from
25   Ira Kleiman about this very type of exchange.
```

1      And it was -- it was not admitted.  And, again, it's an

2   admission by a party opponent, which -- we would ask for its

3   admission now.

4          **MR. BRENNER:**  Again, same objection.  We would have --

5   we would have had an opportunity to talk to the witness about

6   it, but it is -- it is from Dave Kleiman.  The subject matter

7   was discussed with Ira Kleiman.  So this -- the subject matter

8   of giving stock tips, for lack -- for lack of a better word.

9      So our objection is similar to what has been on the prior

10  documents, which is it should have been introduced in the

11  normal course so the witnesses could have been questioned about

12  it.

13         **THE COURT:**  All right.  I'll allow its introduction.

14      (Defendant's Exhibit D-179 received in evidence)

15         **MS. MCGOVERN:**  The next document, Your Honor, is

16  D-180.  And, again, this is another communication along the

17  same lines, an admission by a party -- party opponent.  It's

18  from Dave Kleiman to Ira Kleiman during the relevant time

19  period on the same subject matter, and we ask for its

20  admission.

21         **MR. BRENNER:**  We object but for the same reasons you

22  just overruled 179.

23         **THE COURT:**  All right.  It will be admitted, D-180.

24      (Defendant's Exhibit D-180 received in evidence)

25         **MS. MCGOVERN:**  The next document, Your Honor, is

1    D-193.

2           MR. BRENNER:  Did you skip 181?

3           MS. MCGOVERN:  I'm going to wait on 181 because we're

4    in the same bucket of --

5           MR. BRENNER:  Okay.

6           MS. MCGOVERN:  I'm following your advice --

7           MR. BRENNER:  Okay.

8           MS. MCGOVERN:  -- in trying to keep it thematic.  I'm

9    just trying to keep it thematic.

10                        (Laughter)

11          MS. MCGOVERN:  This is an email from Dave Kleiman to

12   Ira Kleiman dated January 22nd, 2010.

13          MR. BRENNER:  Yeah.  That's the problem, is the

14   numbers got switched.  This is actually 193.

15          MS. MCGOVERN:  Oh.  I'm sorry.

16          MR. BRENNER:  That's why I asked you.

17          MS. MCGOVERN:  Oh.  Okay.

18          MR. BRENNER:  You should probably do 181.

19          MS. MCGOVERN:  193?

20      Oh.  This is 193.  Okay.

21          MS. FERNANDEZ:  181.

22          MS. MCGOVERN:  So -- okay.  Your Honor, this -- the --

23   if we -- if -- yes.  This is the one I have in front of me, if

24   you don't mind.  This -- this is an email from Dave Kleiman to

25   Ira Kleiman dated January 22nd, 2010.

```
 1         And, again, it's along the same lines with respect to the

 2    type of communications that Ira Kleiman would have with -- Dave

 3    Kleiman would have with Ira Kleiman during the relevant time

 4    period.  It was discussed during his testimony, and we ask for

 5    its admission for the same reasons.

 6              MR. BRENNER:  Same objection, but Your Honor's rulings

 7    for 179 and 180 --

 8              THE COURT:  All right.  Admitted into evidence.

 9          (Defendant's Exhibit D-181 received in evidence)

10              MS. MCGOVERN:  Okay.  Could you go to the next one,

11    please.

12              MR. BRENNER:  Yes, it is.

13         Oh.  Can we go back to 181 for just one second?

14         Okay, Your Honor.  Nothing further on 181.

15              MS. MCGOVERN:  Could we please move to the next one.

16         193, Your Honor, is the privilege log.

17         Okay.  I understand.

18              THE COURT:  Is there an objection?

19              MR. BRENNER:  Yes, there's an objection.

20              THE COURT:  Sustained.

21              MS. MCGOVERN:  I'd like to move to the next one,

22    please.  The next one, Your Honor, is -- is D-331.  This is an

23    email from Dave Kleiman to Craig Wright three days after the

24    release -- the public open-source release of the Bitcoin

25    blockchain code, and it's a communication between Dave and
```

1    Craig.  We believe it is relevant to the subject matter, and it

2    is an admission by a party opponent, and we move for its

3    admission.

4        **MR. BRENNER:**  Just restate our prior objections

5    regarding no use through a witness.

6        **THE COURT:**  The document will be admitted into

7    evidence.

8        (Defendant's Exhibit D-331 received in evidence)

9        **MS. MCGOVERN:**  Could we go to the next one, please.

10   D-379, Your Honor.  Again, this is contemporaneous

11   communications between Craig Wright and David Kleiman,

12   February 16th, 2011, after the formation of W&K specifically

13   addressing the intellectual property that is the subject of

14   this litigation.  And we move for its admission.

15       **MR. BRENNER:**  Go for it, Vel.

16       **MR. FREEDMAN:**  Your Honor --

17       **MR. BRENNER:**  Excuse me.

18       **MR. FREEDMAN:**  Your Honor, the problem -- I understand

19   the Court's rulings on past emails between Dave Kleiman and

20   Craig Wright, and those made sense when the plaintiffs produced

21   the documents.  There's been substantial evidence of forgeries

22   in this litigation.  This is produced by the defendant, and we

23   did not cross-examine him because they did not raise it.

24       I don't know, standing here today, this document is a

25   forgery.  I also don't know it's not, and we would object to

 1   its admission in this way without the proper foundation being

 2   laid with Dr. Wright.

 3         **THE COURT:**  All right.  So this does not have a

 4   plaintiffs' Bates-stamp?

 5         **MR. FREEDMAN:**  No, Your Honor.  And the one before it,

 6   I didn't get to see when it was on the screen.  It just moved

 7   so quickly.  I don't know if the same objection applies to the

 8   one before, but this is a defense Bates-stamp.

 9         **MS. MCGOVERN:**  This is Defendant 379, Your Honor.

10      If I could respond to the prophylactic forgery objection

11   just briefly, Your Honor, the documents that have been produced

12   in this case have been produced in this case for over two

13   years.  The testimony from Dr. Edman is that he had complete

14   access to the documents and reviewed all the documents for

15   forgeries.

16      The claim that we can't introduce or shouldn't be able to

17   introduce contemporaneous communication that was in the

18   plaintiffs' hands now for years because it might be forged, I

19   believe, is an unreasonable objection.

20         **MR. FREEDMAN:**  Your Honor, Dr. Edman's testimony was

21   actually that -- at trial that he could not and it was

22   impossible to review every single document that was produced in

23   the case.

24      Again, I don't know it's a forgery.  I don't know it's not

25   a forgery.  But had they cross-examined Dr. Wright about it --

1  or had they admitted it through Dr. Wright, we would have

2  cross-examined him on it, and this is an improper way to shield

3  him from that examination.

4        MS. MCGOVERN:  Your Honor, I don't believe that the

5  cross-examination with respect to forgery really applies here.

6  What would have happened is it would have been part of one of

7  the first, second, or third or supplemental reports from

8  Dr. Edman.  They were allowed to supplement their expert report

9  just two weeks before the trial of this case.

10       So I just don't think that the objection is well founded.

11       THE COURT:  Well, I certainly have been allowing the

12  introduction of communications between David Kleiman and Craig

13  Wright because I believe that they're relevant.  But where the

14  plaintiff has not had an opportunity to produce it and it was

15  produced by the defendant and if there's an objection, then the

16  Court would normally require that the foundation be laid.

17       So at what point was this discussed during the testimony?

18  Is this just an inadvertent failure to -- to introduce at the

19  time that --

20       MS. MCGOVERN:  Well, Your Honor --

21       THE COURT:  -- someone was on the stand?

22       MS. MCGOVERN:  Yeah.

23       THE COURT:  I mean, at this point --

24       MS. MCGOVERN:  It's interesting because --

25       THE COURT:  -- if the objection is being raised, then

1   I'm not certain how the Court would overrule the objection when

2   there -- there may be a question or at least there's presented

3   a question with regard to its authenticity.

4           MS. MCGOVERN:  Your Honor, with respect to the subject

5   matter, they're moving for damages based upon the intellectual

6   property.  These emails go to the intellectual property that

7   are the subject of the New South Wales proceeding.  These are

8   simply emails that address exactly what that intellectual

9   property is.

10      Part of our objection, Your Honor, in the case is that the

11  plaintiffs have failed to specifically identify the

12  intellectual property.  It's a very vague claim.

13      And so to the extent that there's going to be a

14  consideration of intellectual property, its ownership, its

15  development, and its value, this is an email that would -- I

16  think the plaintiffs would be hard-pressed to challenge as

17  inauthentic.

18          THE COURT:  Mr. Freedman, are you challenging it, or

19  do you believe that -- I mean, I wasn't part of the discovery,

20  but if -- is this, in fact, an authentic email from Dave

21  Kleiman and Craig Wright?

22          MR. FREEDMAN:  I don't know, Your Honor.  That's the

23  problem.  I mean, I don't -- I'm not a forensic expert.  I

24  don't have Dr. Edman here.  He can't whip out his computer and

25  check it.

1       Had they done this, we would have -- we would have at

2   least cross-examined on the basis of it, and this is an attempt

3   to -- I'm not saying it's a purposeful attempt, but the

4   basis -- the outcome of this is that we have been deprived of

5   an opportunity to ensure that it was properly authenticated,

6   and that's not fair.

7       There's an authentication objection.  They haven't

8   authenticated it.  And, you know, the idea that, you know,

9   prophylactic forgery -- there's a lot of forgeries in the case.

10  I don't know if this is one of them.  I can't tell you it is.

11  I can't tell you it's not.

12       **MR. RIVERO:**  Your Honor, if I may briefly, I know

13  there's been a change of counsel on the other side.  This is a

14  subject that I examined about, and it is actually the same

15  bucket.  It was raised earlier.

16       These are the TTA's on the W&K.  And, Your Honor, a number

17  of these documents did come in.  This is one in a series.  It

18  merely completes the series.  There was no issue raised about

19  authenticity as to the other TTA's.  And, in fact, I think one

20  of the earlier ones, Tulip, may have been produced by the other

21  side.

22       But, Judge, frankly, the fact that there is a number --

23  there are a number of surrounding documents around it,

24  including a document that explains TTA01, which is in evidence,

25  lends this authenticity, puts it in a series.

```
 1        This is not a controversial subject.  Nobody has -- in
 2   fact, there was no -- they had an opportunity to examine
 3   about -- examine about the W&K -- the W&K TTA's and did not
 4   challenge them because it is essentially an unchallenged fact
 5   in the case.
 6        In fact, Judge, just briefly -- I'm sorry to go on.  It
 7   was plaintiffs who asked the Department of Homeland Security
 8   for the information about the TTA's that gave us the basis to
 9   understand what the TTA's were.
10        THE COURT:  Is that correct, Mr. Freedman?  Does this
11   relate to the TTA that's already in evidence?
12        MR. FREEDMAN:  I don't know if that is correct or
13   incorrect.  I accept Mr. Rivero's representation, though.
14   Again, I just -- plaintiffs are making an authentication
15   objection.  They haven't authenticated it properly.
16        MR. RIVERO:  Your Honor, I understand that Mr.
17   Freedman says he doesn't know.  But, Judge, it was TTA1, TTA3,
18   TTA5 --
19        THE COURT:  Just give me -- give me an exhibit number
20   to look --
21        MR. FREEDMAN:  Your Honor, the TTA's are mentioned in
22   the -- in the affidavit from the -- from the Australian court
23   proceeding, where there was clear forgeries and perjury, you
24   know, that took place in those proceedings.  Just because
25   something says, "TTA" doesn't mean it's authentic.  Again --
```

```
 1              THE COURT:  I understand.
 2              MR. FREEDMAN:  -- I'm not saying this is -- this is a
 3    forgery.  I don't know.  I just don't think it's the proper --
 4    the proper foundation has been laid to admit this document.
 5              MS. MCGOVERN:  Your Honor, if I may just respond.
 6              THE COURT:  All right.  I think --
 7              MS. MCGOVERN:  Okay.
 8              THE COURT:  You can certainly respond, but I think at
 9    this point the Court is certainly allowing this housekeeping
10    because it appears that these were inadvertent failures to
11    introduce documents.  But where there is a true question with
12    regard to its authenticity, absent a witness to properly lay
13    the foundation, I'm not going to admit it.
14         The objection is sustained.
15              MS. MCGOVERN:  Your Honor --
16              MR. FREEDMAN:  Your Honor, can we just --
17              MS. MCGOVERN:  -- if I can move to the next document,
18    please.
19              THE COURT:  Yes.
20              MR. FREEDMAN:  Your Honor, I just -- D-331, the
21    document that was shown just before this one -- I didn't get to
22    see if it was a production from us, in which case we would not
23    have an objection.
24              THE COURT:  All right.  Let's move forward rather than
25    backward.
```

1          **MS. MCGOVERN:**  Yes.  Could we move to the next one,

2     please.  355, Your Honor.

3          Your Honor, 355 is an email from Dave Kleiman to Craig

4     Wright, October 24th, 2008, communicating with each other

5     regarding the exchange of information.  And this is an

6     admission by a party opponent, it's relevant, and we move for

7     its admission.

8          **MR. FREEDMAN:**  Same objection, Your Honor.  This has

9     been produced by the defendant.  It's not been properly

10    authenticated.

11         **MS. MCGOVERN:**  And, Your Honor, the -- with respect to

12    this email as well, there was a series of questions and answers

13    that were presented to Dr. Edman specifically about these types

14    of communications and --

15         **THE COURT:**  I'm at a loss as to why this wasn't

16    introduced either through that witness or through an

17    appropriate witness.  I mean, this is not the time to -- to

18    bring the Court back to testimony that may have -- have been

19    presented when this has been produced by the defendant.  The

20    authenticity is being questioned.

21         There's an objection that's been made, and you're asking

22    the Court to just relax completely the Rules of Evidence when

23    there's -- there's a question as to -- it may -- it may be

24    relevant, but the question is with regard to its authenticity.

25         So at this point --

```
 1              MS. MCGOVERN:  But can I just raise the last document,
 2    Your Honor, just to complete our position on the record?
 3         And, again, we -- one of the -- one of the purposes really
 4    for these housekeeping measures -- we did the same thing with
 5    respect to all of the documents that were on their timeline
 6    with respect to the purported admissions by -- by Dr. Wright.
 7    We looked at those, and we just -- you know, we made a decision
 8    with them.
 9         I understand the Court's position, but if I could just
10    raise the last document, Your Honor, present it to you --
11              THE COURT:  All right.
12              MS. MCGOVERN:  -- and make -- and make -- and state
13    our position --
14              MR. FREEDMAN:  But, Your Honor --
15              MS. MCGOVERN:  -- for the record.
16              MR. FREEDMAN:  -- I don't think you got to rule --
17    actually say your ruling.
18              THE COURT:  I -- I sustained the objection.
19              MR. FREEDMAN:  Oh.  Thank you, Your Honor.
20              MS. MCGOVERN:  So, Your Honor, this is the -- the last
21    document we would ask for you to review, if you could go all
22    the way to the top so we can see the beginning.
23         Okay.  So this is a document that has been, I believe,
24    produced by -- by the plaintiffs, Your Honor.  It's redacted by
25    the plaintiffs.  It's a plaintiffs-produced document.
```

1       And if we can just scroll out so we can see the whole

2  thing and go to the second page.  The -- yeah.  Yeah.  Yeah.

3          **THE COURT:**  What is this?

4          **MS. MCGOVERN:**  Your Honor, this is a document that

5  dovetailed with the -- with the privilege log entry and whereby

6  Ira Kleiman states the first time in which he began to, as he

7  put it, suspect Dr. Wright's position.

8       And we've -- we've requested obviously the -- you know,

9  the presentation of the privilege log along with these redacted

10  provisions on it.  And they go together, Your Honor, for the

11  purpose of establishing that an equitable tolling would have

12  to -- would not be able to go past this date.

13       We think it's important because they have a fraud claim.

14  We've just gone over the jury instructions.  And the -- and the

15  real concern is that without an understanding of Ira Kleiman's

16  state of mind at a relevant point in time -- that that

17  fraudulent concealment can go beyond and take on a meaning that

18  goes beyond what the evidence reflects.

19          **MR. FREEDMAN:**  Your Honor, this is -- these are

20  redacted for privilege.  This was produced to them with a

21  privilege log that indicated the redactions were privileged.

22  Those redactions were never challenged.

23       This is an inappropriate attempt to use privilege as a

24  sword.  It's just -- it's just irrelevant.  This document is

25  irrelevant and an inappropriate use of a privileged redaction.

```
 1                THE COURT:  The objection's sustained.
 2                MS. MCGOVERN:  Thank you, Your Honor.  That's all.
 3                THE COURT:  All right.
 4                MR. FREEDMAN:  Your Honor, I just -- can I just
 5     raise -- we had the same objection to D-331 in that it's a
 6     defense-produced document, and we have an authentication
 7     objection.  It's the only other document I see that meets that
 8     criteria, and I just -- it just went by so quickly.  I wasn't
 9     able to see that until they went back while we were talking.
10                THE COURT:  Okay.
11                MR. FREEDMAN:  So we'd ask that you would sustain that
12     objection on the same authentication grounds.
13                THE COURT:  The Court's already ruled with regard --
14     Mr. Brenner was before the Court, and the Court has already
15     ruled.
16                MR. FREEDMAN:  Okay.  Thank you, Your Honor.
17                MS. MCGOVERN:  Thank you, Your Honor.
18                THE COURT:  Are there any additional issues to address
19     at this time --
20                MR. FREEDMAN:  If I can have --
21                THE COURT:  -- on behalf of the plaintiffs?
22                MR. FREEDMAN:  -- just one moment -- one moment,
23     Your Honor.
24                MS. MCGOVERN:  Your Honor, may I -- may I ask a
25     question with respect to whether the picture -- whether the
```

```
 1   picture of the devices, which is D-145, can go back with the
 2   juror -- with the jury?
 3           THE COURT:  So the picture is in evidence.
 4           MS. MCGOVERN:  Yes.
 5           THE COURT:  The board --
 6           MS. MCGOVERN:  Yes.
 7           THE COURT:  -- will not go into evidence.  That's a
 8   demonstrative aid.
 9           MS. MCGOVERN:  Okay.  The picture will go in?
10           THE COURT:  Well, I believe it was introduced --
11           MS. MCGOVERN:  Yes, it was, Your Honor.
12           THE COURT:  -- as evidence, wasn't it?
13           MR. BRENNER:  The picture was.
14           MS. MCGOVERN:  You're absolutely right.
15      Thank you, Your Honor.
16           MR. BRENNER:  There was one other issue, a redaction
17   issue, if we could ask to bring up D-20.
18           MS. MCGOVERN:  Was this D-20?
19           MR. BRENNER:  No.  No, not D-20.  D-8.  D-8.
20           MS. MCGOVERN:  D-8?
21           MR. BRENNER:  D-8.
22           MR. RIVERO:  Wait a minute.  The defendants were going
23   to raise it, but I think there is a redaction issue -- issue on
24   D-20, Mr. Brenner, that you raised during trial.
25           MS. MCGOVERN:  No.
```

```
 1          MR. BRENNER:  No.  It's D-8.

 2          MR. RIVERO:  It's a different one?

 3          MS. MCGOVERN:  Yes.

 4          MR. RIVERO:  I'm sorry.

 5          MR. BRENNER:  So, Your Honor, this is -- you remember

 6   this document was the -- the letter that had the reference to

 7   the relationship between the brothers, and the only -- the

 8   black, both sides agree, is redacted.

 9       So the only question is those -- I don't know -- eight or

10   nine words there.  The plaintiffs' position is it -- those --

11   what's highlighted there should also be redacted.

12       Am I right about that?

13          MS. MCGOVERN:  Yeah.

14       Your Honor, our position is we've already addressed this

15   with Your Honor.  This is really a reconsideration of what you

16   already decided.

17       What happened on this letter was the redactions were to

18   make sure that we adhere to your ruling regarding the personal

19   relationship between Ira Kleiman and his brother Dave Kleiman

20   and that we didn't, you know, ignore that by putting a document

21   in front of the jury that suggested they were estranged.

22       So they were redacted appropriately, but this letter

23   that's in yellow -- I mean -- I'm sorry -- this statement

24   that's in yellow doesn't have anything to do with that personal

25   relationship.
```

```
1         So if -- if they -- if the letter is being used, then the
2    only proper redactions would be -- that -- would be redactions
3    to suggest the estrangement and not the other statements in the
4    letter.
5              MR. BRENNER:  You know what, Your Honor?  I agree with
6    Ms. McGovern.
7              THE COURT:  All right.
8              MR. RIVERO:  Doctor -- Judge, I have a point of
9    personal privilege, if I may.
10        The date of this subject -- and it's been weeks ago, but I
11   just want to say this to the Court because it bothered me
12   afterwards.  The Court said to me, "There's a statement here
13   about the relationship between the brothers," I believe.  I
14   read the transcript later, Judge.
15        I understood in the heat of the moment the judge -- the
16   Court was saying I had published the statement, which I had
17   not.  That's why I said, "No."  Later when I read it,
18   Your Honor, I had misheard you, and I want to clarify the
19   record because the letter does indeed say that.  It is now
20   properly redacted.
21        But I want to be clear with the Court that when I
22   responded in that moment at sidebar, I was not misrepresenting
23   what the letter said but, rather, representing what I had read
24   to the jury.
25             THE COURT:  Of course.
```

```
 1            MR. RIVERO:  I just wanted to make that clear.

 2            THE COURT:  Yes, of course.  All right.

 3            MR. BRENNER:  I think what you see on the screen

 4   will -- that's the appropriate redaction.  Obviously, the

 5   highlighting will just be unhighlighted, but it will be -- the

 6   text will be in.

 7            THE COURT:  Okay.  Well, I'm going to leave it to each

 8   of you --

 9            MR. BRENNER:  Yes.

10            THE COURT:  -- to redact and then to upload the -- the

11   exhibits.

12            MR. BRENNER:  Yes.

13            THE COURT:  Are there any other issues first on behalf

14   of the plaintiffs?

15            MR. FREEDMAN:  No, Your Honor.

16            THE COURT:  On behalf of the defendant?

17            MS. MCGOVERN:  No, Your Honor.

18            THE COURT:  All right.  Then let me review the law

19   with regard to the jury instructions and verdict form.  I will

20   have it uploaded before the end of the evening to give you an

21   opportunity to -- to use the instructions and the verdict form

22   tomorrow in your closing arguments.

23       I will give you a schedule tomorrow morning based on when

24   we begin.  My hope is that we begin promptly at 9:30, but I --

25   I certainly want to give you the opportunity for any additional
```

1    issues that may be raised based on the jury instructions and

2    the verdict form.  I don't need a reargument, but if there are

3    any additional arguments, I certainly don't want to preclude

4    any preservation of the record.

5         If there are no further issues, have a pleasant evening.

6    Take the time that you need to leave the courtroom.  I do want

7    to remind you that we do have a proceeding in the morning at

8    9:00 o'clock.  So I will need use of counsel tables.

9         Okay.  Have a nice evening.

10             **COURT SECURITY OFFICER:**  All rise.

11             **ALL:**  Thank you, Your Honor.

12                  (Proceedings adjourned at 4:49 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1
2
3                    **CERTIFICATE OF REPORTER**

4        I certify that the foregoing is a correct transcript

5  from the record of proceedings in the above-entitled matter.

6

7  DATE:   Wednesday, November 24, 2021

8
9
10
11                _____/S/ James C. Pence-Aviles_____

12        James C. Pence-Aviles, RMR, CRR, CSR No. 13059
                       U.S. Court Reporter
13
14
15
16
17
18
19
20
21
22
23
24
25

**$**

**$11,000 [1]**   14:13/17
**$600,000 [2]**   14:13/8 14:13/11

**'**

**'07 [1]**   14:13/3
**'96 [1]**   14:66/25

**-**

**---000 [1]**   14:4/3
**-Supp [1]**   14:71/14

**/**

**/S [1]**   14:120/11

**0**

**000 [1]**   14:4/3
**002 [1]**   14:17/22

**1**

**1.1 [1]**   14:16/19
**1.1 million [1]**   14:15/6
**10 [1]**   14:72/12
**10-page [1]**   14:7/5
**10.5A [1]**   14:41/10
**100 [1]**   1:1/21
**1000 [1]**   1:2/6
**10016 [1]**   1:1/19
**10017 [1]**   1:2/11
**1019 [1]**   14:41/13
**1021 [1]**   14:41/13
**107 [1]**   14:71/5
**10:00 [2]**   14:49/20 14:93/14
**10:15 [2]**   14:93/15 14:94/15
**110 [3]**   14:9/10 14:10/15
 14:17/12
**111 [1]**   14:18/12
**112 [2]**   14:9/7 14:17/14
**11309825 [1]**   14:74/22
**119 [1]**   1:1/1
**11:00 [1]**   14:94/16
**11:00 o'clock [1]**   14:50/15
**11th [1]**   14:99/18
**12 [3]**   14:7/10 14:44/10 14:81/5
**12-month [1]**   14:43/25
**1203 [2]**   14:71/9 14:71/14
**1240 [1]**   1:1/16
**12515274 [1]**   14:74/7
**13 [5]**   14:7/10 14:17/18
 14:18/14 14:77/10 14:83/18
**13059 [2]**   1:1/25 14:120/12
**13175744 [1]**   14:87/16
**135 [1]**   14:84/13
**14 [2]**   1:1/12 14:70/21
**140 [2]**   14:16/12 14:16/13
**142 [2]**   14:16/12 14:16/13
**145 [1]**   14:115/1
**14th [2]**   14:7/20 14:41/24
**15 [3]**   14:7/10 14:53/13 14:84/2
**15-minute [4]**   14:33/23 14:50/13
 14:53/11 14:93/15
**151 [3]**   14:70/18 14:70/24
 14:76/24
**152 [1]**   14:18/14
**156 [1]**   14:26/5
**156.1 [5]**   14:26/7 14:26/8
 14:26/10 14:26/14 14:27/6
**1567 [1]**   14:86/21
**157 [1]**   14:27/6
**157.1 [5]**   14:27/7 14:27/9
 14:27/13 14:27/17 14:27/24
**158 [2]**   14:98/15 14:99/15

**159 [3]**   14:99/17 14:100/14
 14:74/23
**16 [5]**   14:22/19 14:22/19
 14:62/12 14:69/21 14:76/10
**160 [9]**   14:22/9 14:23/1
 14:23/10 14:23/15 14:23/16
 14:23/25 14:24/1 14:25/1
 14:26/5
**160.1 [5]**   14:24/9 14:24/10
 14:24/13 14:24/18 14:24/23
**162 [1]**   14:74/13
**164 [2]**   14:11/1 14:11/2
**16th [4]**   14:18/13 14:19/1
 14:97/2 14:104/12
**17 [1]**   14:68/17
**177 [1]**   14:40/24
**179 [4]**   14:100/16 14:101/14
 14:101/22 14:103/7
**18 [5]**   14:70/6 14:73/4 14:73/14
 14:76/17 14:86/15
**18-CV-80176-BB [1]**   1:1/7
**180 [4]**   14:101/16 14:101/23
 14:101/24 14:103/7
**181 [7]**   14:102/2 14:102/3
 14:102/18 14:102/21 14:103/9
 14:103/13 14:103/14
**19 [2]**   14:63/17 14:69/21
**1910 [1]**   1:1/18
**1913 [1]**   14:53/25
**193 [5]**   14:102/1 14:102/14
 14:102/19 14:102/20 14:103/16
**194 [2]**   14:9/8 14:9/13
**196 [1]**   14:17/18
**1961 [1]**   14:84/13
**1964 [1]**   14:74/14
**1965 [2]**   14:40/25 14:43/23
**1974 [1]**   14:43/24
**1994 [2]**   14:66/25 14:81/22
**1:00 [1]**   14:94/18
**1:00 to [1]**   14:94/21
**1:45 [1]**   14:4/1

**2**

**2.2 [1]**   14:14/5
**20 [12]**   14:92/8 14:92/10
 14:95/17 14:95/21 14:96/13
 14:96/24 14:96/25 14:97/17
 14:115/17 14:115/18 14:115/19
 14:115/24
**20-page [1]**   14:7/2
**2001 [3]**   14:41/12 14:44/4
 14:47/13
**2007 [1]**   14:84/24
**2008 [1]**   14:111/4
**2009 [3]**   14:14/3 14:32/11
 14:100/18
**2010 [3]**   14:32/12 14:102/12
 14:102/25
**2011 [3]**   14:87/16 14:97/2
 14:104/12
**2012 [2]**   14:32/16 14:98/17
**2013 [9]**   14:16/21 14:45/5
 14:45/5 14:45/22 14:46/1
 14:46/4 14:54/3 14:87/15
 14:99/18
**2014 [7]**   14:7/20 14:19/1
 14:22/13 14:23/6 14:43/5
 14:74/7 14:74/8
**2015 [1]**   14:43/5
**2016 [4]**   14:40/15 14:41/19
 14:41/21 14:43/6
**2017 [2]**   14:40/19 14:84/25
**2018 [3]**   14:41/24 14:74/22

 14:74/23
**202 [1]**   14:53/24
**2020 [2]**   14:18/13 14:41/10
**2021 [3]**   1:1/11 14:4/1 14:120/7
**2074 [1]**   14:21/19
**21 [2]**   14:7/10 14:18/14
**2144 [1]**   1:1/21
**22 [2]**   1:1/11 14:4/1
**2212429 [1]**   14:40/19
**225 [1]**   14:71/8
**22nd [4]**   14:74/8 14:102/12
 14:102/25
**23 [1]**   14:40/18
**24 [2]**   14:9/9 14:120/7
**24th [3]**   14:22/13 14:23/5
 14:111/4
**25 [2]**   14:16/12 14:40/18
**2525 [1]**   1:2/6
**26 [2]**   14:81/22 14:82/1
**260 [1]**   14:15/25
**26th [2]**   14:45/4 14:74/23
**275 [1]**   14:15/4
**28 [1]**   14:9/14
**2800 [1]**   1:1/21
**29 [1]**   14:42/9
**294 [1]**   14:74/13
**296 [1]**   14:74/14
**2:00 [1]**   14:94/21
**2:56 [1]**   14:53/15

**3**

**302 [3]**   14:71/9 14:71/11
 14:71/12
**320 [1]**   14:15/3
**331 [4]**   14:103/22 14:104/8
 14:110/20 14:114/5
**33131 [1]**   1:1/16
**33131-2144 [1]**   1:1/21
**33134 [1]**   1:2/6
**355 [2]**   14:111/2 14:111/3
**3730618 [1]**   14:84/24
**379 [2]**   14:104/10 14:105/9
**381 [1]**   14:82/6
**387 [1]**   14:82/6
**3:00 [1]**   14:49/20
**3:23 [1]**   14:53/16
**3rd [1]**   14:98/17

**4**

**400 [1]**   14:13/23
**403 [1]**   14:4/18
**4030 [2]**   14:21/20 14:21/21
**4074 [2]**   14:21/20 14:21/21
**41 [2]**   14:42/11 14:65/13
**41st [1]**   1:2/3
**435 [1]**   14:61/15
**44 [1]**   1:2/3
**45 [1]**   14:56/9
**497 [1]**   14:40/25
**4:49 [1]**   14:119/12
**4th [9]**   14:9/7 14:9/7 14:9/13
 14:41/19 14:41/21 14:45/5
 14:45/22 14:45/25 14:46/3

**5**

**50 [3]**   14:15/24 14:68/24
 14:70/21
**50/50 [1]**   14:68/24
**501 [1]**   14:53/24
**502 [1]**   14:40/25
**51 [1]**   14:20/9
**52 [2]**   14:15/3 14:72/13

**5**
**53 [1]**   14:72/13
**54 [1]**   14:22/18
**56.1 [1]**   14:26/10
**565 [1]**   1:2/10
**566 [1]**   14:71/8
**58.160.32.123 [8]**   14:20/3
 14:20/12 14:20/23 14:25/17
 14:26/24 14:27/21 14:29/14
 14:30/9

**6**
**60 [2]**   14:8/8 14:40/19
**60-page [2]**   14:6/24 14:8/11
**605.0304 [1]**   14:80/22
**605.0407 [1]**   14:80/22
**605.0714 [1]**   14:80/23
**615 [2]**   14:42/11 14:83/22
**618 [1]**   14:65/13
**620.8202 [1]**   14:67/3
**620.8601 [1]**   14:63/4
**620.8701 [1]**   14:63/9
**620.8801 [1]**   14:69/12
**636,000 [1]**   14:13/12
**68 [1]**   14:42/9
**69 [2]**   14:13/8 14:13/10
**6th [1]**   14:100/18

**7**
**70 [9]**   14:43/23 14:44/16
 14:83/22 14:92/9 14:92/15
 14:93/20 14:93/24 14:94/15
 14:95/5
**727 [4]**   14:27/25 14:28/6
 14:28/8 14:28/17
**727.1 [7]**   14:28/1 14:28/3
 14:28/4 14:28/15 14:28/17
 14:28/18 14:28/23
**733 [1]**   14:29/22
**733.1 [4]**   14:29/23 14:30/1
 14:30/4 14:30/6
**733.1041 [3]**   14:43/23 14:44/17
 14:49/17
**75 [1]**   14:30/22
**77 [1]**   14:87/15
**782 [1]**   14:41/13
**795 [3]**   14:66/9 14:87/13
 14:88/4
**797 [1]**   14:61/15

**8**
**80 [1]**   14:92/12
**807 [2]**   14:19/6 14:19/9
**818 [4]**   14:71/6 14:81/22
 14:82/1 14:82/2
**826 [1]**   14:82/2
**83 [1]**   14:41/17
**837 [1]**   14:82/6
**8433654 [1]**   14:87/15
**849 [1]**   14:87/15
**85 [3]**   14:97/1 14:98/11
 14:98/13
**856 [7]**   14:18/21 14:19/7
 14:19/18 14:21/23 14:22/5
 14:25/2 14:68/2
**856.1 [3]**   14:20/6 14:20/8
 14:20/20
**856.2 [2]**   14:20/21 14:22/8
**865 [2]**   14:81/21 14:81/25
**876 [1]**   14:84/13
**879 [1]**   14:70/24
**882 [1]**   14:84/13

**9**
**90 [9]**   14:48/2 14:69/11
 14:69/14 14:92/4 14:92/15
 14:92/21 14:92/21 14:94/2
 14:95/5
**900 kilometers [1]**   14:21/11
**927 [1]**   14:70/18
**941 [1]**   14:86/21
**94104 [1]**   1:2/3
**99 [1]**   1:1/18
**9:00 o'clock [1]**   14:119/8
**9:30 [8]**   14:50/15 14:58/8
 14:58/12 14:59/8 14:59/10
 14:59/17 14:93/5 14:118/24

**A**
**ability [1]**   14:54/15
**able [9]**   14:40/21 14:48/10
 14:50/9 14:52/9 14:53/5 14:91/3
 14:105/16 14:113/12 14:114/9
**about [45]**   14:5/16 14:6/17
 14:8/17 14:11/6 14:11/20
 14:12/12 14:12/14 14:12/15
 14:13/7 14:13/22 14:17/8
 14:17/9 14:17/10 14:18/3
 14:18/6 14:18/6 14:21/13
 14:21/15 14:45/18 14:47/22
 14:48/15 14:50/17 14:52/1
 14:59/13 14:68/21 14:72/5
 14:85/25 14:86/2 14:93/14
 14:94/16 14:97/17 14:98/25
 14:100/8 14:100/25 14:101/5
 14:101/11 14:105/25 14:108/14
 14:108/18 14:109/3 14:109/3
 14:109/8 14:111/13 14:116/12
 14:117/13
**above [1]**   14:120/5
**above-entitled [1]**   14:120/5
**abs [1]**   14:55/16
**absence [4]**   14:54/24 14:55/5
 14:84/8 14:84/16
**absent [1]**   14:110/12
**absolutely [3]**   14:10/24
 14:55/17 14:115/14
**academic [1]**   14:8/11
**academics [2]**   14:8/5 14:8/8
**accept [4]**   14:15/9 14:39/18
 14:39/18 14:109/13
**acceptable [2]**   14:56/19 14:58/2
**access [1]**   14:105/14
**account [4]**   14:7/22 14:7/22
 14:36/6 14:61/20
**accounts [4]**   14:34/16 14:37/1
 14:54/24 14:55/11
**accrual [8]**   14:42/7 14:42/8
 14:43/18 14:44/13 14:44/25
 14:45/1 14:45/7 14:45/12
**accrue [9]**   14:40/15 14:40/20
 14:41/3 14:41/21 14:42/3
 14:43/6 14:43/11 14:46/23
 14:85/5
**accrued [2]**   14:44/22 14:45/4
**accurate [2]**   14:13/9 14:46/5
**acquisition [1]**   14:76/22
**action [13]**   14:41/2 14:43/11
 14:43/18 14:44/5 14:44/7
 14:44/7 14:44/7 14:44/10
 14:44/19 14:44/21 14:45/4
 14:45/7 14:81/12
**actions [1]**   14:71/17
**active [2]**   14:84/6 14:84/21
**actual [1]**   14:22/15

**actually [19]**   14:4/15 14:10/8
 14:21/3 14:25/22 14:63/22
 14:64/21 14:65/13 14:70/12
 14:75/4 14:78/24 14:82/25
 14:100/18 14:102/14 14:105/21
 14:108/14 14:112/17
**add [10]**   14:54/1 14:57/5
 14:65/18 14:65/20 14:68/9
 14:79/3 14:84/14 14:84/22
 14:85/20 14:85/23
**added [3]**   14:11/21 14:67/11
 14:76/20
**adding [1]**   14:86/12
**addition [10]**   14:64/14 14:67/9
 14:67/12 14:75/12 14:76/19
 14:79/20 14:79/24 14:85/19
 14:85/25 14:88/11
**additional [12]**   14:51/12
 14:52/23 14:54/18 14:56/9
 14:60/18 14:85/20 14:85/23
 14:87/12 14:88/22 14:114/18
 14:118/25 14:119/3
**address [25]**   14:19/4 14:19/20
 14:20/1 14:20/3 14:20/5
 14:20/15 14:20/25 14:22/1
 14:22/8 14:22/16 14:25/9
 14:26/1 14:30/23 14:33/6
 14:33/11 14:34/20 14:38/19
 14:56/6 14:56/14 14:60/16
 14:74/3 14:82/13 14:94/12
 14:107/8 14:114/18
**addressed [9]**   14:63/19 14:63/23
 14:69/20 14:72/11 14:77/8
 14:78/2 14:78/3 14:82/4
 14:116/14
**addresses [3]**   14:19/19 14:25/20
 14:97/3
**addressing [3]**   14:34/6 14:39/11
 14:104/13
**adhere [1]**   14:116/18
**adjourn [1]**   14:59/11
**adjourned [1]**   14:119/12
**administratively [2]**   14:79/14
 14:79/25
**administrator [1]**   14:4/5
**admission [25]**   14:26/9 14:27/8
 14:28/2 14:29/24 14:50/25
 14:95/23 14:96/2 14:97/10
 14:97/22 14:98/11 14:98/18
 14:99/13 14:99/14 14:100/1
 14:101/2 14:101/3 14:101/17
 14:101/20 14:103/5 14:104/2
 14:104/3 14:104/14 14:105/1
 14:111/6 14:111/7
**admissions [2]**   14:96/9 14:112/6
**admit [5]**   14:97/24 14:99/2
 14:100/12 14:110/4 14:110/13
**admitted [16]**   14:24/22 14:26/13
 14:27/12 14:28/14 14:30/3
 14:57/12 14:95/18 14:96/25
 14:97/15 14:97/16 14:100/14
 14:101/1 14:101/23 14:103/8
 14:104/6 14:106/1
**advance [1]**   14:48/24
**advances [1]**   14:5/8
**advantage [1]**   14:48/23
**adverse [3]**   14:16/15 14:81/23
 14:87/23
**advice [1]**   14:102/6
**advise [3]**   14:91/13 14:94/9
 14:95/9
**advises [1]**   14:16/23

**A**

advisory **[1]**   14:90/24
affair **[1]**   14:4/17
affidavit **[1]**   14:109/22
affirmative **[6]**   14:38/6
  14:39/23 14:47/21 14:49/14
  14:51/13 14:76/6
after **[29]**   14:18/9 14:33/6
  14:39/4 14:41/3 14:44/11
  14:44/18 14:45/15 14:45/15
  14:45/21 14:55/23 14:61/8
  14:61/9 14:61/17 14:64/21
  14:65/4 14:66/24 14:69/10
  14:69/11 14:69/14 14:71/3
  14:71/20 14:72/14 14:81/11
  14:83/20 14:91/11 14:94/3
  14:96/24 14:103/23 14:104/12
afternoon **[4]**   1:1/13 14:6/14
  14:6/15 14:58/23
afterwards **[1]**   14:117/12
again **[43]**   14:9/12 14:9/18
  14:10/14 14:20/23 14:21/20
  14:24/16 14:27/21 14:29/14
  14:30/8 14:30/8 14:30/9 14:44/4
  14:56/25 14:62/14 14:63/24
  14:64/1 14:65/23 14:66/7
  14:67/17 14:69/9 14:69/21
  14:72/11 14:74/3 14:75/4
  14:75/16 14:77/8 14:78/10
  14:79/16 14:85/22 14:96/14
  14:98/16 14:99/17 14:99/22
  14:100/17 14:101/1 14:101/4
  14:101/16 14:103/1 14:104/10
  14:105/24 14:109/14 14:109/25
  14:112/3
against **[2]**   14:48/19 14:54/15
ago **[4]**   14:4/11 14:13/3
  14:17/10 14:117/10
agree **[11]**   14:5/19 14:5/22
  14:52/14 14:52/15 14:53/6
  14:72/12 14:74/9 14:91/9
  14:96/1 14:116/8 14:117/5
agreed **[3]**   14:66/16 14:83/21
  14:96/13
agreement **[12]**   14:23/15 14:24/1
  14:49/1 14:50/1 14:52/1 14:52/1
  14:65/19 14:65/23 14:65/24
  14:65/25 14:94/19 14:95/17
agreements **[1]**   14:65/15
Agustini **[1]**   14:81/21
ahead **[8]**   14:4/8 14:9/15
  14:33/23 14:34/2 14:51/1
  14:53/10 14:59/20 14:60/2
aid **[1]**   14:115/8
Airlift **[1]**   14:71/8
al **[1]**   1:1/5
Alabama **[1]**   14:82/5
ALEJANDRO **[1]**   1:2/7
all **[131]**
allegation **[1]**   14:4/19
allege **[1]**   14:45/22
alleged **[1]**   14:45/24
allegedly **[1]**   14:89/22
allow **[6]**   14:15/20 14:49/22
  14:57/18 14:98/11 14:99/14
  14:101/13
allowed **[3]**   14:18/17 14:90/4
  14:106/8
allowing **[2]**   14:106/11 14:110/9
allows **[2]**   14:74/5 14:93/8
almost **[2]**   14:44/17 14:78/9
along **[5]**   14:43/8 14:97/15

  14:101/16 14:103/1 14:113/9
  14:107/23 [illegible] 14:110/7
  14:27/17 14:28/25 14:40/17
  14:42/5 14:49/3 14:49/11
  14:78/2 14:85/5 14:85/5
  14:88/19 14:89/6 14:109/11
  14:114/13 14:114/14 14:116/14
  14:116/16
also **[37]**   14:6/21 14:8/21
  14:14/2 14:19/10 14:27/25
  14:41/13 14:42/2 14:42/17
  14:42/22 14:47/16 14:53/4
  14:62/13 14:63/14 14:64/1
  14:64/22 14:67/15 14:67/16
  14:67/17 14:71/2 14:71/5
  14:71/6 14:72/8 14:74/19
  14:77/8 14:77/13 14:81/23
  14:82/4 14:83/13 14:83/15
  14:83/20 14:86/23 14:88/11
  14:92/24 14:97/22 14:98/18
  14:104/25 14:116/11
alternative **[1]**   14:79/7
Alternatively **[1]**   14:79/3
although **[6]**   14:52/6 14:66/13
  14:68/2 14:68/9 14:82/4
  14:92/11
altogether **[1]**   14:32/17
always **[1]**   14:91/13
am **[3]**   14:62/5 14:92/22
  14:116/12
AMANDA **[3]**   1:2/8 1:2/8 14:60/20
amended **[2]**   14:44/4 14:47/13
America **[1]**   14:82/6
amount **[5]**   14:50/20 14:81/14
  14:81/20 14:89/18 14:89/23
ample **[2]**   14:85/19 14:85/24
analysis **[2]**   14:44/15 14:49/18
and/or **[2]**   14:81/8 14:81/9
Andreas **[1]**   14:82/20
ANDRES **[1]**   1:2/7
ANDREW **[2]**   1:1/22 14:28/24
annotations **[1]**   14:12/20
another **[7]**   14:5/6 14:5/15
  14:10/21 14:61/9 14:67/15
  14:93/17 14:101/16
answer **[3]**   14:7/25 14:9/2
  14:23/7
answers **[5]**   14:7/17 14:8/13
  14:10/10 14:22/24 14:111/12
Anthony **[1]**   14:86/21
anticipate **[1]**   14:48/2
Antonopoulos **[1]**   14:82/21
any **[55]**   14:15/17 14:16/25
  14:24/7 14:24/19 14:26/11
  14:27/10 14:28/5 14:31/6
  14:31/10 14:31/11 14:31/18
  14:32/18 14:32/21 14:33/2
  14:35/16 14:35/20 14:38/23
  14:42/20 14:42/20 14:42/24
  14:43/16 14:46/5 14:47/7
  14:49/9 14:51/12 14:54/8
  14:54/11 14:56/6 14:59/14
  14:60/18 14:61/17 14:70/2
  14:73/11 14:75/22 14:78/2
  14:78/14 14:78/22 14:81/18
  14:81/18 14:82/8 14:82/12
  14:88/14 14:89/15 14:91/10
  14:91/13 14:91/18 14:91/20
  14:93/23 14:94/4 14:100/11
  14:114/18 14:118/13 14:118/25
  14:119/3 14:119/4
anyone **[5]**   14:31/10 14:59/12
  14:59/12 14:78/22 14:78/23

anyone's **[1]**   14:93/20
  14:112/6 [illegible] 14:12/22
  14:22/16 14:35/10 14:35/11
  14:35/22 14:47/11 14:47/14
  14:72/16 14:76/25 14:80/15
  14:86/6 14:86/12 14:87/19
  14:89/11 14:91/16 14:116/24
apart **[4]**   14:4/13 14:4/16
  14:5/11 14:5/15
apologize **[5]**   14:54/19 14:70/19
  14:75/15 14:87/25 14:89/18
appear **[1]**   14:10/18
APPEARANCES **[3]**   1:1/14 1:1/24
  1:2/1
appears **[3]**   14:19/11 14:67/3
  14:110/10
applied **[1]**   14:40/23
applies **[4]**   14:80/7 14:84/8
  14:105/7 14:106/10
apply **[6]**   14:41/16 14:58/20
  14:81/17 14:81/18 14:82/24
  14:83/13
applying **[1]**   14:69/23
appointed **[5]**   14:40/16 14:41/7
  14:41/15 14:41/18 14:43/12
appraised **[2]**   14:84/11 14:84/19
appreciated **[1]**   14:93/12
appreciation **[2]**   14:46/9
  14:46/22
appropriate **[15]**   14:37/16
  14:52/2 14:67/7 14:74/10
  14:75/1 14:75/3 14:75/12
  14:82/22 14:83/3 14:83/7
  14:86/3 14:90/10 14:90/21
  14:111/17 14:118/4
appropriately **[1]**   14:116/22
approximately **[1]**   14:13/12
April **[9]**   14:9/7 14:9/7 14:9/13
  14:16/21 14:19/4 14:22/13
  14:23/5 14:45/4 14:54/3
April 16th **[1]**   14:19/1
April 2013 **[1]**   14:16/21
April 24th **[2]**   14:22/13 14:23/5
April 26th **[1]**   14:45/4
April 4th **[3]**   14:9/7 14:9/7
  14:9/13
are **[82]**   14:5/2 14:10/16
  14:11/9 14:12/10 14:12/11
  14:18/18 14:19/10 14:27/17
  14:30/21 14:31/18 14:34/5
  14:37/6 14:37/8 14:37/8 14:38/3
  14:38/16 14:38/16 14:39/15
  14:40/12 14:43/5 14:48/3
  14:49/13 14:51/2 14:51/18
  14:51/23 14:51/25 14:52/5
  14:52/18 14:54/22 14:55/8
  14:56/17 14:57/1 14:57/18
  14:57/18 14:58/7 14:58/20
  14:59/9 14:60/18 14:63/13
  14:63/13 14:64/17 14:64/21
  14:65/24 14:66/15 14:66/23
  14:66/24 14:67/25 14:70/16
  14:70/25 14:71/2 14:71/19
  14:72/15 14:77/24 14:78/19
  14:79/5 14:79/8 14:81/17
  14:82/25 14:84/12 14:86/1
  14:89/7 14:89/15 14:90/3
  14:92/25 14:94/7 14:94/9
  14:95/2 14:95/5 14:95/23
  14:96/3 14:107/7 14:107/7
  14:107/14 14:108/16 14:108/23
  14:109/14 14:109/21 14:113/19
  14:114/18 14:118/13 14:119/2

are... **[1]**   14:119/5
**area [3]**   14:5/21 14:10/21
14:21/19
**aren't [1]**   14:90/4
**arguably [1]**   14:45/4
**argue [11]**   14:39/7 14:64/2
14:64/19 14:68/20 14:70/6
14:72/2 14:72/18 14:73/4
14:76/19 14:90/1 14:90/7
**argued [1]**   14:80/2
**arguing [1]**   14:69/7
**argument [20]**   14:43/17 14:47/7
14:47/25 14:55/4 14:64/4
14:64/6 14:68/22 14:70/2
14:72/25 14:75/16 14:85/25
14:89/8 14:92/1 14:92/3 14:92/3
14:92/6 14:92/23 14:93/3
14:93/16 14:93/20
**arguments [10]**   14:36/10
14:49/24 14:50/4 14:56/13
14:58/22 14:59/1 14:93/9
14:94/1 14:118/22 14:119/3
**around [3]**   14:95/7 14:95/7
14:108/23
**arrangements [3]**   14:59/3
14:59/5 14:59/6
**article [1]**   14:83/4
**as [143]**
**aside [1]**   14:80/10
**ask [24]**   14:31/10 14:32/6
14:33/4 14:65/20 14:78/11
14:78/24 14:79/14 14:82/14
14:84/14 14:84/22 14:85/11
14:87/1 14:90/24 14:91/13
14:96/8 14:97/10 14:100/7
14:101/2 14:101/19 14:103/4
14:112/21 14:114/11 14:114/24
14:115/17
**asked [12]**   14:6/17 14:7/16
14:8/17 14:13/21 14:17/8
14:17/10 14:18/6 14:22/23
14:98/25 14:99/4 14:102/16
14:109/7
**asking [4]**   14:6/16 14:18/3
14:92/9 14:111/21
**asserted [5]**   14:38/3 14:39/13
14:39/23 14:42/6 14:47/21
**asserting [1]**   14:46/20
**assertion [1]**   14:81/14
**asset [2]**   14:14/3 14:68/21
**assets [10]**   14:60/25 14:61/11
14:61/17 14:61/18 14:61/21
14:61/23 14:62/25 14:63/8
14:70/9 14:74/11
**associate [2]**   14:16/20 14:67/4
**associated [8]**   14:11/25 14:12/6
14:12/8 14:12/19 14:22/1
14:22/3 14:23/19 14:24/2
**Associates [1]**   14:81/21
**association [2]**   14:64/11
14:67/5
**assumed [1]**   14:33/16
**assuming [1]**   14:45/8
**ATO [6]**   14:15/8 14:15/14
14:16/2 14:16/15 14:16/16
14:16/23
**attempt [3]**   14:108/2 14:108/3
14:113/23
**attorneys [9]**   14:31/17 14:32/20
14:33/24 14:56/11 14:56/12
14:58/21 14:58/24 14:58/25

14:94/6
and **[123]** Entered on FLSD   Do
14:17/6
**audit [5]**   14:14/22 14:15/14
14:16/6 14:16/16 14:16/24
**audited [1]**   14:16/2
**August [1]**   14:13/3
**Australia [5]**   14:13/24 14:20/16
14:21/9 14:21/10 14:25/10
**Australian [5]**   14:8/6 14:14/21
14:42/9 14:42/12 14:109/22
**authentic [2]**   14:107/20
14:109/25
**authenticated [4]**   14:108/5
14:108/8 14:109/15 14:111/10
**authentication [4]**   14:108/7
14:109/14 14:114/6 14:114/12
**authenticity [6]**   14:107/3
14:108/19 14:108/25 14:110/12
14:111/20 14:111/24
**authorities [1]**   14:85/17
**authority [2]**   14:77/21 14:86/19
**authorized [1]**   14:41/6
**available [2]**   14:58/7 14:58/10
**Avenue [3]**   1:1/16 1:1/18 1:2/10
**Aviles [3]**   1:1/25 14:120/11
14:120/12
**avoided [1]**   14:15/17
**aware [6]**   14:30/21 14:55/22
14:72/24 14:81/18 14:86/18
14:91/10
**away [4]**   14:21/11 14:61/9
14:62/21 14:69/10

---

**B**

**back [25]**   14:4/5 14:4/10 14:6/5
14:6/8 14:10/2 14:10/5 14:10/10
14:10/23 14:11/19 14:21/15
14:25/6 14:50/6 14:50/13
14:50/21 14:52/4 14:53/13
14:53/18 14:53/19 14:58/16
14:59/22 14:90/8 14:103/13
14:111/18 14:114/9 14:115/1
**backdate [1]**   14:16/23
**backward [1]**   14:110/25
**Bagnoo [2]**   14:8/18 14:17/9
**balance [1]**   14:5/19
**balancing [1]**   14:5/8
**Bank [1]**   14:71/5
**bar [2]**   14:59/25 14:60/7
**bargain [2]**   14:74/5 14:74/20
**based [15]**   14:16/20 14:38/7
14:39/19 14:41/19 14:43/5
14:43/22 14:65/4 14:66/13
14:69/1 14:72/3 14:88/7 14:93/7
14:107/5 14:118/23 14:119/1
**basically [3]**   14:36/24 14:38/11
14:46/16
**basis [10]**   14:16/4 14:35/21
14:44/13 14:45/23 14:46/12
14:97/7 14:100/3 14:108/2
14:108/4 14:109/8
**Bates [2]**   14:105/4 14:105/8
**Bates-stamp [2]**   14:105/4
14:105/8
**BB [1]**   1:1/7
**be [149]**
**bear [1]**   14:4/19
**became [1]**   14:13/15
**because [43]**   14:4/13 14:4/17
14:8/1 14:11/24 14:14/6
14:22/16 14:37/22 14:37/24
14:39/14 14:42/3 14:45/7

14:48/10 14:50/14 14:51/1
14:62/24 14:63/4 14:68/23
14:73/5 14:78/21 14:79/11
14:79/15 14:82/7 14:88/19
14:96/8 14:96/15 14:97/16
14:98/19 14:99/8 14:100/22
14:102/3 14:104/23 14:105/18
14:106/13 14:106/24 14:109/4
14:109/24 14:110/10 14:113/13
14:117/11 14:117/19
**become [2]**   14:84/11 14:84/18
**been [49]**   14:6/10 14:8/11
14:10/8 14:11/11 14:24/7
14:30/16 14:39/6 14:39/13
14:39/17 14:39/19 14:39/20
14:39/23 14:40/23 14:41/7
14:45/6 14:45/12 14:48/12
14:49/11 14:54/19 14:55/16
14:55/21 14:74/11 14:76/12
14:78/2 14:79/14 14:79/15
14:80/13 14:81/15 14:92/19
14:94/20 14:101/9 14:101/10
14:101/11 14:104/21 14:105/11
14:105/12 14:106/6 14:106/11
14:108/4 14:108/13 14:108/20
14:110/4 14:111/9 14:111/9
14:111/18 14:111/19 14:111/21
14:112/23 14:117/10
**before [28]**   1:1/4 14:4/10
14:7/15 14:18/15 14:22/12
14:33/11 14:33/11 14:39/16
14:41/9 14:43/19 14:44/6
14:44/8 14:45/13 14:45/16
14:45/16 14:45/21 14:46/3
14:47/24 14:50/10 14:84/15
14:90/8 14:93/2 14:105/5
14:105/8 14:106/9 14:110/21
14:114/14 14:118/20
**began [2]**   14:41/14 14:113/6
**begin [7]**   14:41/4 14:41/21
14:56/13 14:56/18 14:93/16
14:118/24 14:118/24
**beginning [1]**   14:112/22
**begins [1]**   14:68/17
**behalf [17]**   14:14/18 14:32/21
14:34/3 14:35/22 14:38/3
14:39/11 14:47/11 14:60/21
14:62/4 14:62/5 14:78/1
14:80/15 14:91/21 14:94/1
14:114/21 14:118/13 14:118/16
**behind [2]**   14:59/25 14:60/7
**being [9]**   14:9/22 14:51/19
14:99/7 14:99/9 14:99/10
14:105/1 14:106/25 14:111/20
14:117/1
**believe [48]**   14:4/14 14:11/3
14:23/20 14:35/10 14:35/11
14:37/10 14:37/15 14:39/12
14:40/12 14:41/24 14:42/2
14:44/21 14:45/3 14:45/11
14:54/10 14:54/14 14:55/12
14:55/14 14:57/17 14:66/25
14:69/13 14:76/7 14:76/13
14:79/19 14:79/21 14:80/2
14:82/21 14:83/7 14:83/19
14:85/6 14:86/15 14:87/11
14:88/4 14:88/6 14:88/8
14:89/18 14:90/10 14:90/21
14:92/18 14:100/21 14:104/1
14:105/19 14:106/4 14:106/13
14:107/19 14:112/23 14:115/10
14:117/13

**B**

belonged [1] 14:81/7
Ben [1] 14:29/10
benefit [3] 14:74/5 14:74/20
 14:76/21
benefit-of-the-bargain [1]
 14:74/5
Berger [5] 14:40/22 14:41/10
 14:47/14 14:47/15 14:49/17
Berman [1] 14:71/8
Beth [1] 1:1/4
better [6] 14:8/3 14:36/19
 14:36/22 14:49/21 14:93/10
 14:101/8
between [17] 14:45/4 14:52/9
 14:53/3 14:54/25 14:55/20
 14:64/12 14:70/9 14:74/11
 14:98/6 14:99/17 14:103/25
 14:104/11 14:104/19 14:106/12
 14:116/7 14:116/19 14:117/13
beyond [7] 14:14/24 14:84/4
 14:84/19 14:85/15 14:86/9
 14:113/17 14:113/18
bidding [1] 14:5/10
Biers [1] 14:62/13
big [1] 14:51/25
BigPond [2] 14:26/2 14:26/2
binder [1] 14:11/15
bit [5] 14:9/25 14:10/3 14:21/4
 14:35/6 14:47/22
Bitcoin [47] 14:4/13 14:5/1
 14:5/12 14:6/18 14:7/21 14:8/22
 14:13/13 14:13/15 14:13/22
 14:14/2 14:14/4 14:14/5
 14:14/23 14:15/7 14:15/15
 14:15/20 14:16/3 14:16/4
 14:16/5 14:16/6 14:16/17
 14:16/17 14:16/19 14:16/25
 14:31/25 14:32/9 14:45/9
 14:46/10 14:46/20 14:46/22
 14:55/7 14:55/19 14:81/15
 14:81/17 14:82/10 14:82/19
 14:83/1 14:83/5 14:83/11
 14:89/18 14:89/22 14:89/23
 14:89/25 14:89/25 14:91/4
 14:91/5 14:103/24
Bitcoins [1] 14:42/13
black [1] 14:116/6
blank [1] 14:12/17
blockchain [1] 14:103/25
blog [2] 14:16/22 14:16/24
Bloom [1] 1:1/4
Bluesky [1] 14:74/6
board [1] 14:115/5
BOIES [2] 1:1/20 1:2/2
booth [1] 14:54/24
both [17] 14:19/15 14:40/13
 14:42/18 14:47/23 14:56/19
 14:58/18 14:72/5 14:74/5
 14:75/11 14:78/12 14:79/15
 14:84/12 14:89/5 14:90/1
 14:91/6 14:97/17 14:116/8
bothered [1] 14:117/11
Boulevard [1] 1:2/6
brand [1] 14:88/15
brand-new [1] 14:88/15
breach [14] 14:44/22 14:67/16
 14:68/10 14:73/9 14:74/17
 14:74/19 14:75/5 14:75/6
 14:75/9 14:75/10 14:75/13
 14:75/16 14:75/17 14:75/18
break [8] 14:50/17 14:92/16
 14:93/19 14:93/21 14:94/2
breaking [1] 14:4/25
breaks [1] 14:95/7
BRENNER [8] 1:1/22 14:53/1
 14:60/4 14:95/17 14:96/16
 14:100/4 14:114/14 14:115/24
brief [2] 14:36/24 14:76/2
briefed [1] 14:62/11
briefly [6] 14:54/1 14:62/17
 14:74/24 14:105/11 14:108/12
 14:109/6
bring [22] 14:6/2 14:15/2
 14:15/24 14:16/11 14:17/21
 14:20/19 14:20/20 14:22/9
 14:22/25 14:23/16 14:24/15
 14:26/5 14:27/6 14:27/25
 14:29/22 14:44/5 14:44/18
 14:50/21 14:58/4 14:58/12
 14:111/18 14:115/17
bringing [2] 14:42/23 14:46/17
broken [1] 14:95/5
brother [1] 14:116/19
brothers [2] 14:116/7 14:117/13
brought [2] 14:80/13 14:97/24
Broward [1] 14:74/21
BS [1] 14:8/9
bucket [2] 14:102/4 14:108/15
built [1] 14:32/17
business [9] 14:16/20 14:54/25
 14:61/19 14:66/12 14:67/6
 14:79/1 14:88/13 14:98/21
 14:99/11
buyout [2] 14:63/22 14:69/22

**C**

Cabot [1] 14:74/21
cake [1] 14:43/4
calculated [2] 14:73/15 14:87/4
calculating [2] 14:86/17
 14:87/17
California [6] 1:2/3 14:63/23
 14:63/24 14:63/25 14:64/3
 14:69/23
call [5] 14:10/1 14:10/20
 14:22/6 14:26/7 14:52/20
call-out [1] 14:22/6
called [5] 14:6/10 14:14/4
 14:20/15 14:24/1 14:82/21
calls [1] 14:23/15
came [4] 14:35/11 14:46/2
 14:65/3 14:81/24
can [118] 14:7/8 14:8/6 14:9/6
 14:9/16 14:9/24 14:10/15
 14:10/15 14:10/20 14:10/21
 14:11/1 14:11/2 14:11/4
 14:11/15 14:11/19 14:15/2
 14:15/24 14:15/25 14:16/11
 14:16/12 14:17/14 14:17/16
 14:17/21 14:18/1 14:18/12
 14:18/21 14:18/22 14:19/6
 14:20/6 14:20/9 14:21/3 14:22/5
 14:22/17 14:22/25 14:23/8
 14:23/10 14:23/11 14:23/16
 14:23/18 14:23/18 14:23/23
 14:24/15 14:24/24 14:24/24
 14:25/1 14:25/9 14:26/4 14:26/5
 14:26/20 14:27/5 14:27/14
 14:27/24 14:28/11 14:29/21
 14:30/5 14:31/12 14:31/19
 14:33/4 14:33/12 14:36/16
 14:37/7 14:39/18 14:44/17
 14:46/15 14:47/5 14:48/24
 14:49/2 14:50/3 14:50/4 14:50/5
 14:52/20 14:53/2 14:53/3
 14:53/5 14:54/1 14:56/6 14:56/6
 14:56/14 14:57/11 14:57/24
 14:73/13 14:75/24 14:78/5
 14:81/20 14:81/25 14:84/23
 14:90/19 14:90/23 14:91/1
 14:91/13 14:92/6 14:93/8
 14:93/8 14:93/23 14:93/25
 14:94/6 14:95/7 14:96/5 14:96/5
 14:96/10 14:96/15 14:96/18
 14:96/23 14:98/2 14:103/13
 14:110/8 14:110/16 14:110/17
 14:112/1 14:112/22 14:113/1
 14:113/1 14:113/17 14:114/4
 14:114/20 14:115/1
can't [14] 14:19/4 14:22/1
 14:22/16 14:24/11 14:55/21
 14:75/2 14:75/13 14:90/1
 14:91/6 14:91/10 14:105/16
 14:107/24 14:108/10 14:108/11
cannot [3] 14:40/20 14:55/9
 14:88/7
capable [1] 14:81/13
care [1] 14:60/2
carry [1] 14:67/5
Carter [1] 14:87/14
case [87] 14:4/20 14:23/21
 14:35/11 14:35/13 14:35/15
 14:36/7 14:41/16 14:41/17
 14:42/19 14:43/9 14:43/14
 14:43/16 14:43/21 14:43/22
 14:46/13 14:46/13 14:46/15
 14:46/16 14:47/3 14:47/8
 14:47/13 14:47/19 14:48/7
 14:48/16 14:49/3 14:53/21
 14:53/22 14:53/23 14:54/20
 14:54/23 14:58/13 14:59/12
 14:59/13 14:61/12 14:61/14
 14:62/9 14:63/7 14:63/11
 14:64/16 14:65/2 14:67/11
 14:67/15 14:67/20 14:67/23
 14:67/23 14:67/25 14:68/1
 14:68/9 14:68/12 14:69/24
 14:70/13 14:70/19 14:70/21
 14:71/10 14:72/1 14:72/2
 14:72/3 14:72/6 14:73/25
 14:75/11 14:77/13 14:79/10
 14:79/25 14:80/14 14:81/18
 14:82/19 14:84/7 14:84/9
 14:85/18 14:86/18 14:89/3
 14:89/3 14:90/11 14:90/12
 14:90/18 14:91/2 14:91/10
 14:91/24 14:98/21 14:105/12
 14:105/12 14:105/23 14:106/9
 14:107/10 14:108/9 14:109/5
 14:110/22
cases [24] 14:41/10 14:43/8
 14:47/23 14:58/19 14:63/24
 14:64/20 14:65/2 14:65/4
 14:66/23 14:66/24 14:69/23
 14:70/11 14:70/16 14:70/25
 14:71/22 14:72/5 14:72/14
 14:72/22 14:88/13 14:88/19
 14:88/20 14:89/10 14:91/25
 14:92/19
categories [3] 14:96/11
 14:97/12 14:98/2
category [2] 14:99/3 14:99/6
Caulk [1] 14:70/21
cause [4] 14:41/2 14:43/18
 14:44/7 14:44/18

**C**

**caused [2]** 14:45/9 14:46/7
**causes [4]** 14:43/11 14:44/20 14:45/4 14:45/7
**causing [1]** 14:63/5
**central [1]** 14:54/23
**certain [17]** 14:32/25 14:33/1 14:36/10 14:37/21 14:45/8 14:45/23 14:49/10 14:50/25 14:52/21 14:57/19 14:64/17 14:65/24 14:67/2 14:80/18 14:93/25 14:94/22 14:107/1
**certainly [37]** 14:5/23 14:7/25 14:17/5 14:29/16 14:30/14 14:31/3 14:33/13 14:38/18 14:39/4 14:39/14 14:39/21 14:46/15 14:46/21 14:46/24 14:47/20 14:49/5 14:51/11 14:53/23 14:56/5 14:56/15 14:56/24 14:57/17 14:59/7 14:62/18 14:72/23 14:72/24 14:78/22 14:87/24 14:89/9 14:92/22 14:93/19 14:95/7 14:106/11 14:110/8 14:110/9 14:118/25 14:119/3
**certainty [1]** 14:50/10
**CERTIFICATE [1]** 14:120/3
**certify [1]** 14:120/4
**CFTC [1]** 14:83/9
**challenge [2]** 14:107/16 14:109/4
**challenged [1]** 14:113/22
**challenging [1]** 14:107/18
**change [4]** 14:25/20 14:49/18 14:78/16 14:108/13
**changed [1]** 14:51/24
**changes [4]** 14:35/11 14:44/12 14:44/14 14:60/18
**characteristics [1]** 14:79/2
**charge [8]** 14:39/10 14:48/6 14:48/9 14:51/11 14:51/16 14:51/17 14:56/3 14:60/14
**charity [1]** 14:32/14
**Chasebrook [1]** 14:84/12
**chattels [1]** 14:74/11
**check [2]** 14:52/13 14:107/25
**choose [3]** 14:63/1 14:90/2 14:92/7
**churches [2]** 14:8/22 14:17/9
**Circuit [8]** 14:46/14 14:46/16 14:47/3 14:47/8 14:47/19 14:53/22 14:53/24 14:77/13
**Circuits [1]** 14:82/25
**citation [2]** 14:46/16 14:90/19
**cite [15]** 14:53/24 14:63/23 14:67/17 14:67/18 14:68/2 14:74/22 14:77/13 14:81/25 14:82/2 14:82/6 14:83/4 14:84/13 14:84/24 14:85/17 14:87/13
**cited [12]** 14:35/13 14:47/13 14:63/11 14:64/14 14:64/20 14:65/3 14:66/23 14:71/11 14:74/21 14:77/22 14:86/22 14:89/10
**cites [1]** 14:17/16
**citing [3]** 14:40/22 14:41/10 14:41/10
**City [1]** 14:71/5
**civil [6]** 14:41/9 14:86/16 14:86/18 14:86/19 14:87/5 14:87/9

**claim [16]** 14:30/13 14:38/23 14:40/20 14:40/20 14:41/5 14:41/6 14:45/12 14:76/7 14:76/8 14:85/2 14:85/10 14:90/14 14:91/12 14:105/16 14:107/12 14:113/13
**claimed [2]** 14:14/2 14:14/4
**claims [22]** 14:36/11 14:37/6 14:38/3 14:39/13 14:39/22 14:40/14 14:41/21 14:42/3 14:42/13 14:42/15 14:42/20 14:42/24 14:43/5 14:43/6 14:45/2 14:49/14 14:54/15 14:76/7 14:76/8 14:76/12 14:76/13 14:80/13
**clarify [1]** 14:117/18
**Clark [1]** 14:67/22
**classic [1]** 14:4/18
**clause [1]** 14:78/18
**clean [2]** 14:50/1 14:52/12
**clear [6]** 14:56/23 14:84/8 14:86/7 14:109/23 14:117/21 14:118/1
**clearly [1]** 14:63/19
**clip [6]** 14:9/6 14:9/10 14:10/15 14:17/12 14:17/14 14:18/12
**clock [1]** 14:42/12
**close [5]** 14:34/11 14:34/17 14:36/7 14:37/2 14:95/5
**closing [12]** 14:47/25 14:48/8 14:49/24 14:50/4 14:50/17 14:55/4 14:56/13 14:58/22 14:59/1 14:93/9 14:93/20 14:118/22
**co [1]** 14:67/5
**co-owners [1]** 14:67/5
**code [3]** 14:8/3 14:21/19 14:103/25
**cognitive [1]** 14:55/9
**colleague [1]** 14:34/20
**collect [1]** 14:41/6
**column [1]** 14:20/25
**combines [1]** 14:79/1
**come [9]** 14:5/5 14:10/23 14:12/12 14:19/11 14:34/12 14:46/3 14:50/13 14:58/6 14:108/17
**comes [1]** 14:90/8
**comfortable [1]** 14:36/2
**commenced [1]** 14:44/8
**commencement [2]** 14:44/6 14:44/10
**comment [2]** 14:19/5 14:86/16
**committed [1]** 14:73/16
**commodity [6]** 14:71/19 14:81/16 14:82/23 14:83/2 14:83/6 14:83/9
**common [1]** 14:66/17
**communicating [1]** 14:111/4
**communication [8]** 14:98/6 14:98/20 14:99/17 14:100/19 14:100/21 14:101/16 14:103/25 14:105/17
**communications [14]** 14:54/25 14:55/6 14:55/13 14:55/15 14:55/17 14:55/20 14:55/21 14:96/4 14:99/25 14:100/22 14:103/2 14:104/11 14:106/12 14:111/14
**companies [3]** 14:14/20 14:15/10 14:16/5
**company [8]** 14:31/24 14:32/8

**company's [1]** 14:78/20
**compare [1]** 14:52/6
**compensatory [1]** 14:71/25
**complaint [5]** 14:39/4 14:41/23 14:45/23 14:86/25 14:87/4
**complete [7]** 14:8/9 14:50/9 14:60/5 14:79/22 14:93/1 14:105/13 14:112/2
**completed [1]** 14:31/14
**completely [1]** 14:111/22
**completes [1]** 14:108/18
**comport [1]** 14:56/16
**comports [1]** 14:89/9
**computer [14]** 14:8/17 14:11/19 14:11/20 14:11/22 14:11/25 14:12/6 14:12/8 14:12/9 14:13/4 14:31/24 14:32/8 14:88/18 14:88/19 14:107/24
**computers [9]** 14:13/8 14:13/10 14:30/24 14:32/10 14:32/12 14:32/12 14:52/8 14:52/10 14:52/12
**concealment [11]** 14:38/8 14:76/11 14:84/3 14:84/4 14:84/6 14:84/19 14:84/21 14:84/23 14:85/15 14:86/8 14:113/17
**concede [1]** 14:85/4
**concern [1]** 14:113/15
**conclude [2]** 14:41/14 14:48/24
**conditions [1]** 14:50/8
**conduct [3]** 14:43/5 14:45/8 14:59/14
**confer [4]** 14:33/12 14:53/5 14:75/25 14:95/17
**conference [6]** 14:39/10 14:48/6 14:51/11 14:51/16 14:56/3 14:60/14
**confirm [4]** 14:50/8 14:50/10 14:53/3 14:80/20
**conflicting [1]** 14:89/20
**conform [1]** 14:88/24
**confused [1]** 14:65/18
**confusing [8]** 14:78/21 14:79/12 14:79/16 14:79/21 14:83/5 14:83/9 14:83/16 14:85/3
**conjecture [1]** 14:88/7
**connection [6]** 14:36/9 14:37/5 14:37/7 14:37/24 14:38/17 14:39/8
**consider [1]** 14:76/6
**consideration [4]** 14:39/21 14:95/23 14:96/8 14:107/14
**considered [1]** 14:81/19
**considers [1]** 14:82/15
**consistent [5]** 14:62/9 14:91/25 14:97/23 14:98/8 14:99/20
**constitute [2]** 14:84/5 14:84/20
**constitutes [1]** 14:65/7
**Construction [1]** 14:84/12
**constructive [9]** 14:73/4 14:73/15 14:73/17 14:74/15 14:74/25 14:75/5 14:75/7 14:75/18 14:91/12
**consult [1]** 14:31/2
**contact [1]** 14:45/17
**contain [1]** 14:30/22
**contains [3]** 14:14/22 14:15/15 14:16/6
**contemporaneous [3]** 14:98/20 14:104/10 14:105/17

**C**

**contends [1]**   14:16/15
**contention [1]**   14:16/2
**contents [1]**   14:30/18
**context [1]**   14:46/18
**continue [6]**   14:6/8 14:58/13
14:59/6 14:61/19 14:70/4
14:94/18
**continued [8]**   1:1/24 1:2/1
14:61/10 14:61/10 14:62/24
14:62/24 14:63/2 14:63/2
**continues [2]**   14:62/24 14:63/21
**continuously [1]**   14:54/12
**contract [2]**   14:66/13 14:88/13
**contracts [1]**   14:99/1
**contradict [1]**   14:62/19
**contradicted [1]**   14:35/16
**contradiction [2]**   14:64/19
14:67/12
**contrary [1]**   14:69/24
**control [2]**   14:66/21 14:66/21
**controversial [1]**   14:109/1
**controversy [1]**   14:15/17
**conversely [1]**   14:15/13
**conversion [26]**   14:38/14
14:38/15 14:45/18 14:45/24
14:46/18 14:70/6 14:70/10
14:70/12 14:70/13 14:70/22
14:70/23 14:70/25 14:71/1
14:71/2 14:71/4 14:71/6 14:71/7
14:71/17 14:71/21 14:72/14
14:72/19 14:81/6 14:81/12
14:86/20 14:87/2 14:87/3
**converted [1]**   14:71/1
**convince [1]**   14:44/10
**Coral [1]**   1:2/6
**corporate [1]**   14:71/18
**corporation [2]**   14:79/2
14:84/24
**correct [33]**   14:11/10 14:11/13
14:11/22 14:11/25 14:12/6
14:12/7 14:12/9 14:12/17
14:12/20 14:12/21 14:12/25
14:13/5 14:19/16 14:20/1
14:20/4 14:20/12 14:27/3
14:29/17 14:30/13 14:30/15
14:61/6 14:62/7 14:69/3 14:70/7
14:80/25 14:83/23 14:87/11
14:88/23 14:95/20 14:99/12
14:109/10 14:109/12 14:120/4
**corrected [1]**   14:48/15
**correctly [1]**   14:56/2
**costing [1]**   14:13/8
**could [26]**   14:5/4 14:13/2
14:23/4 14:35/17 14:38/2
14:38/6 14:38/24 14:39/12
14:40/14 14:48/18 14:51/24
14:61/1 14:62/16 14:79/3
14:89/24 14:97/3 14:101/11
14:103/10 14:103/15 14:104/9
14:105/10 14:105/21 14:111/1
14:112/9 14:112/21 14:115/17
**counsel [7]**   14:7/8 14:22/18
14:32/20 14:33/12 14:73/13
14:108/13 14:119/8
**couple [2]**   14:10/6 14:32/14
**course [15]**   14:5/6 14:33/7
14:33/9 14:49/21 14:54/25
14:60/1 14:65/5 14:65/16
14:74/2 14:76/1 14:95/15
14:100/7 14:101/11 14:117/25
14:118/2

**court [105]**   1:1/2 1:1/25
1:2/24 2:1/4 14:9/1 14:14/17
14:15/20 14:22/11 14:31/15
14:33/5 14:33/5 14:34/7
14:34/24 14:35/3 14:35/6
14:37/11 14:38/20 14:38/23
14:39/16 14:40/22 14:40/25
14:41/8 14:42/2 14:42/5 14:42/9
14:42/11 14:43/9 14:43/16
14:43/18 14:45/25 14:47/14
14:47/15 14:47/19 14:47/23
14:48/5 14:48/7 14:48/12
14:48/21 14:49/1 14:49/22
14:50/23 14:50/24 14:50/25
14:53/2 14:53/18 14:56/6
14:58/1 14:60/15 14:62/13
14:65/20 14:67/2 14:67/4
14:78/5 14:78/11 14:78/24
14:79/3 14:79/14 14:82/9
14:82/14 14:83/10 14:83/11
14:83/19 14:83/21 14:83/21
14:84/14 14:84/22 14:85/9
14:85/11 14:86/5 14:86/16
14:86/17 14:87/1 14:87/1
14:90/12 14:90/15 14:90/20
14:90/22 14:90/23 14:91/13
14:91/25 14:92/1 14:92/12
14:92/18 14:92/20 14:94/5
14:94/9 14:94/17 14:95/9
14:97/22 14:98/11 14:99/14
14:100/11 14:106/16 14:107/1
14:109/22 14:110/9 14:111/18
14:111/22 14:114/14 14:114/14
14:117/11 14:117/12 14:117/16
14:117/21 14:120/12
**Court's [15]**   14:9/23 14:48/18
14:49/6 14:49/18 14:51/7
14:52/6 14:60/19 14:61/2
14:64/8 14:96/7 14:96/8
14:100/20 14:104/19 14:112/9
14:114/13
**courtroom [3]**   14:19/15 14:59/14
14:119/6
**courts [2]**   14:40/24 14:92/19
**CRAIG [25]**   1:1/8 1:3/4 14:6/9
14:19/22 14:19/22 14:19/23
14:29/3 14:29/6 14:29/8
14:31/10 14:31/11 14:32/6
14:38/6 14:45/16 14:60/21
14:60/21 14:62/24 14:98/6
14:103/23 14:104/1 14:104/11
14:104/20 14:106/12 14:107/21
14:111/3
**CraigASUS [3]**   14:25/14 14:26/23
14:27/18
**create [2]**   14:11/24 14:12/3
**created [1]**   14:12/5
**credibility [2]**   14:39/15
14:39/15
**crediting [1]**   14:45/8
**criteria [1]**   14:114/8
**critical [2]**   14:8/12 14:55/8
**cross [7]**   14:6/12 14:13/21
14:104/23 14:105/25 14:106/2
14:106/5 14:108/2
**cross-examination [3]**   14:6/12
14:13/21 14:106/5
**cross-examine [1]**   14:104/23
**cross-examined [3]**   14:105/25
14:106/2 14:108/2
**CRR [2]**   1:1/25 14:120/12
**crucial [1]**   14:8/1
**CSR [2]**   1:1/25 14:120/12

**Cura [1]**   14:71/23
**currently [2]**   14:36/7 14:44/15
**cutoff [1]**   14:72/20
**CV [1]**   1:1/7
**CWright [1]**   14:30/8

**D**

**D-145 [1]**   14:115/1
**D-158 [2]**   14:98/15 14:99/15
**D-159 [2]**   14:99/17 14:100/15
**D-164 [2]**   14:11/1 14:11/2
**D-179 [2]**   14:100/16 14:101/14
**D-180 [3]**   14:101/16 14:101/23
14:101/24
**D-181 [1]**   14:103/9
**D-193 [1]**   14:102/1
**D-20 [10]**   14:95/17 14:95/21
14:96/13 14:96/24 14:96/25
14:97/17 14:115/17 14:115/18
14:115/19 14:115/24
**D-331 [4]**   14:103/22 14:104/8
14:110/20 14:114/5
**D-379 [1]**   14:104/10
**D-8 [5]**   14:115/19 14:115/19
14:115/20 14:115/21 14:116/1
**D-85 [3]**   14:97/1 14:98/11
14:98/13
**damages [43]**   14:36/12 14:37/6
14:37/22 14:38/13 14:39/3
14:39/5 14:61/7 14:61/12
14:63/13 14:68/16 14:68/19
14:70/6 14:70/22 14:70/25
14:71/2 14:71/19 14:71/25
14:73/3 14:73/9 14:73/14
14:73/19 14:74/4 14:74/5
14:75/1 14:75/4 14:75/12
14:75/17 14:76/16 14:86/15
14:86/17 14:86/19 14:86/20
14:87/4 14:87/17 14:88/5
14:88/7 14:88/12 14:89/6
14:89/20 14:89/21 14:89/24
14:91/5 14:107/5
**danger [1]**   14:5/23
**data [4]**   14:11/20 14:11/25
14:12/6 14:12/8
**date [16]**   14:38/13 14:41/20
14:42/8 14:44/25 14:69/11
14:70/10 14:70/12 14:86/17
14:86/17 14:86/25 14:87/4
14:87/17 14:87/17 14:113/12
14:117/10 14:120/7
**dated [8]**   14:7/19 14:64/21
14:97/2 14:98/17 14:99/18
14:100/18 14:102/12 14:102/25
**dates [3]**   14:39/2 14:42/7
14:42/10
**Dave [27]**   14:6/24 14:7/3 14:7/6
14:7/20 14:7/25 14:8/10
14:13/22 14:19/11 14:42/8
14:55/12 14:55/23 14:65/14
14:96/4 14:97/2 14:97/8
14:98/20 14:101/6 14:101/18
14:102/11 14:102/24 14:103/2
14:103/23 14:103/25 14:104/19
14:107/20 14:111/3 14:116/19
**Dave's [1]**   14:99/25
**David [15]**   14:16/19 14:19/2
14:38/4 14:43/19 14:45/13
14:45/15 14:54/3 14:81/7
14:98/6 14:98/16 14:99/17
14:100/12 14:100/17 14:104/11
14:106/12

day [13]   1:1/12 1:3/3 1:3/7
   1:3/13 14:7/9 14:7/14 14:22/18
   14:22/23 14:25/8 14:27/4
   14:48/6 14:48/22 14:59/7
days [4]   14:4/11 14:69/11
   14:69/14 14:103/23
DCA [4]   14:40/25 14:41/12
   14:74/14 14:84/13
de [4]   1:2/6 14:66/9 14:87/13
   14:88/4
death [11]   14:41/3 14:42/8
   14:43/19 14:44/1 14:44/11
   14:44/18 14:45/14 14:45/16
   14:63/5 14:69/2 14:69/15
debts [1]   14:78/20
deceased [1]   14:41/5
decedent's [3]   14:44/1 14:44/11
   14:44/18
December [1]   14:98/17
December 3rd [1]   14:98/17
decide [2]   14:59/2 14:89/21
decided [2]   14:66/24 14:116/16
decision [5]   14:34/16 14:36/6
   14:36/25 14:72/3 14:112/7
dedication [1]   14:4/13
deductions [3]   14:15/9 14:16/3
   14:16/16
default [1]   14:65/5
defend [1]   14:54/15
defendant [34]   1:1/9 1:2/5
   14:5/20 14:6/10 14:32/21
   14:33/16 14:34/3 14:35/15
   14:35/20 14:35/23 14:39/12
   14:42/6 14:46/7 14:57/5 14:57/6
   14:57/22 14:58/18 14:59/23
   14:59/24 14:60/21 14:71/21
   14:73/16 14:74/21 14:79/10
   14:84/10 14:84/17 14:93/25
   14:94/2 14:104/22 14:105/9
   14:106/15 14:111/9 14:111/19
   14:118/16
defendant's [20]   1:3/3 1:3/13
   14:35/2 14:40/11 14:43/17
   14:80/8 14:84/5 14:84/20
   14:85/7 14:85/8 14:85/16
   14:86/9 14:95/21 14:98/13
   14:99/15 14:100/15 14:101/14
   14:101/24 14:103/9 14:104/8
defendants [3]   14:65/12
   14:85/19 14:115/22
defense [16]   14:13/25 14:14/19
   14:15/8 14:15/14 14:16/18
   14:33/1 14:34/21 14:35/9
   14:35/11 14:42/1 14:42/19
   14:50/10 14:65/14 14:76/7
   14:105/8 14:114/6
defense-produced [1]   14:114/6
defenses [7]   14:38/6 14:39/23
   14:40/11 14:40/13 14:47/21
   14:49/14 14:51/13
defined [2]   14:64/9 14:65/11
definitely [1]   14:90/19
definition [6]   14:64/15
   14:64/23 14:66/10 14:67/7
   14:78/18 14:80/6
delay [6]   14:42/20 14:46/7
   14:46/17 14:46/19 14:47/1
   14:54/4
delayed [3]   14:42/23 14:76/13
   14:76/13
deliberate [3]   14:50/20

14:56/13 14:59/2
14:58/21 14:59/2
14:59/5
delving [2]   14:15/8
demonstrative [1]   14:115/8
denial [1]   14:85/10
denying [1]   14:62/15
Department [1]   14:109/7
dependent [1]   14:51/18
depending [1]   14:50/16
depends [3]   14:94/21 14:95/1
   14:95/2
deposition [4]   14:9/8 14:17/18
   14:18/13 14:18/16
deprived [1]   14:108/4
described [1]   14:57/23
describing [2]   14:8/7 14:86/1
description [4]   14:57/6 14:57/7
   14:57/8 14:57/22
descriptions [3]   14:57/17
   14:58/1 14:86/1
despite [1]   14:88/16
determine [3]   14:58/21 14:89/23
   14:90/2
determining [1]   14:90/22
development [1]   14:107/15
devices [4]   14:54/11 14:54/14
   14:55/15 14:115/1
DEVIN [1]   1:1/17
DHS [4]   14:97/6 14:97/9 14:99/1
   14:99/6
Dick [1]   14:71/23
dicta [3]   14:72/2 14:72/8
   14:72/15
did [43]   14:6/23 14:6/24 14:7/2
   14:8/10 14:15/9 14:21/22
   14:21/24 14:21/25 14:31/23
   14:31/23 14:32/8 14:40/1
   14:40/15 14:41/21 14:42/3
   14:42/12 14:50/24 14:55/11
   14:60/15 14:65/4 14:65/16
   14:66/9 14:68/12 14:71/22
   14:73/22 14:82/13 14:82/13
   14:85/5 14:85/9 14:85/21
   14:85/22 14:86/7 14:87/3
   14:88/21 14:95/9 14:97/24
   14:99/1 14:102/2 14:104/23
   14:104/23 14:108/17 14:109/3
   14:112/4
didn't [14]   14:20/17 14:25/21
   14:25/24 14:26/2 14:29/19
   14:48/10 14:48/11 14:53/21
   14:60/12 14:68/3 14:79/10
   14:105/6 14:110/21 14:116/20
died [3]   14:16/20 14:54/3
   14:55/23
dies [2]   14:44/5 14:63/20
differ [4]   14:38/2 14:38/7
   14:38/24 14:39/12
difference [2]   14:46/20
   14:74/10
different [9]   14:32/10 14:35/7
   14:43/25 14:44/15 14:65/16
   14:73/19 14:99/3 14:99/6
   14:116/2
difficulty [1]   14:57/1
digital [1]   14:82/20
dipping [1]   14:91/5
direct [10]   14:6/23 14:8/16
   14:11/7 14:13/7 14:15/16
   14:15/19 14:17/8 14:20/4
   14:21/16 14:21/16
directed [3]   14:22/14 14:40/11

14:76/9
14:76/12
disagree [4]   14:15/1 14:53/1
   14:72/15 14:84/7
disagreeing [1]   14:53/1
disagreement [1]   14:51/23
disallowed [4]   14:15/8 14:16/3
   14:16/16 14:16/17
disassociates [1]   14:63/8
discovery [1]   14:107/19
discuss [5]   14:50/14 14:59/12
   14:67/23 14:67/24 14:92/2
discussed [8]   14:20/4 14:59/8
   14:65/2 14:71/18 14:100/24
   14:101/7 14:103/4 14:106/17
discusses [1]   14:83/4
discussion [1]   14:15/17
disgorgement [2]   14:90/15
   14:90/23
dismiss [2]   14:42/5 14:42/10
dispute [4]   14:16/2 14:39/5
   14:65/12 14:65/17
dissociation [7]   14:63/4
   14:63/6 14:63/9 14:63/21
   14:69/7 14:69/8 14:69/15
dissolution [12]   14:61/13
   14:61/17 14:61/21 14:61/24
   14:62/9 14:63/13 14:69/1
   14:69/5 14:69/6 14:69/10
   14:69/11 14:69/15
dissolved [5]   14:62/22 14:63/2
   14:63/11 14:79/14 14:79/25
dissonance [1]   14:55/9
distinguish [1]   14:65/4
Distributors [1]   14:86/21
DISTRICT [9]   1:1/2 1:1/3
   14:71/23 14:71/24 14:74/7
   14:74/23 14:81/22 14:82/5
   14:84/25
do [110]   14:6/18 14:6/20
   14:6/25 14:7/3 14:7/18 14:7/24
   14:7/25 14:8/13 14:8/15 14:8/16
   14:8/22 14:9/4 14:9/5 14:9/24
   14:9/25 14:10/1 14:10/16
   14:11/6 14:13/8 14:13/21
   14:14/8 14:14/16 14:14/21
   14:15/22 14:16/7 14:16/24
   14:17/1 14:17/10 14:18/3
   14:18/6 14:19/3 14:19/13
   14:19/14 14:19/24 14:20/17
   14:21/2 14:21/7 14:22/11
   14:23/20 14:25/15 14:25/18
   14:25/19 14:26/18 14:26/19
   14:26/25 14:27/19 14:27/20
   14:27/22 14:27/23 14:29/1
   14:29/2 14:29/4 14:29/5
   14:29/15 14:29/16 14:30/10
   14:30/11 14:31/11 14:33/11
   14:36/9 14:37/4 14:37/10
   14:39/12 14:40/7 14:43/11
   14:44/21 14:47/2 14:48/2
   14:48/25 14:50/12 14:51/1
   14:51/7 14:51/8 14:53/21
   14:55/4 14:55/18 14:56/2
   14:57/25 14:58/23 14:59/4
   14:65/18 14:67/17 14:67/24
   14:67/24 14:72/14 14:85/24
   14:89/4 14:90/8 14:90/18
   14:90/21 14:91/1 14:92/5
   14:92/19 14:92/24 14:93/1
   14:93/2 14:93/21 14:95/13
   14:95/14 14:95/14 14:96/1
   14:96/11 14:96/18 14:97/11

**D**

do... [6]  14:98/2 14:102/18
14:107/19 14:116/24 14:119/6
14:119/7
**Doctor [1]**  14:117/8
**document [53]**  14:11/1 14:11/6
14:11/12 14:11/13 14:11/16
14:11/21 14:11/24 14:12/3
14:12/5 14:12/15 14:12/16
14:12/20 14:12/23 14:13/3
14:21/12 14:23/20 14:23/23
14:24/5 14:24/17 14:24/25
14:28/7 14:30/12 14:30/12
14:52/3 14:97/1 14:97/10
14:97/13 14:98/15 14:98/16
14:99/2 14:99/16 14:99/21
14:100/16 14:101/15 14:101/25
14:104/6 14:104/24 14:105/22
14:108/24 14:110/4 14:110/17
14:110/21 14:112/1 14:112/10
14:112/21 14:112/23 14:112/25
14:113/4 14:113/24 14:114/6
14:114/7 14:116/6 14:116/20
**documents [20]**  14:33/6 14:45/23
14:45/24 14:46/2 14:54/5
14:54/8 14:54/13 14:57/19
14:96/19 14:97/15 14:97/23
14:101/10 14:104/21 14:105/11
14:105/14 14:105/14 14:108/17
14:108/23 14:110/11 14:112/5
**Doe [1]**  14:40/19
**does [24]**  14:10/19 14:24/6
14:30/14 14:31/10 14:41/3
14:60/7 14:61/6 14:63/22
14:64/10 14:65/15 14:65/19
14:65/23 14:65/24 14:70/7
14:78/23 14:80/7 14:81/17
14:81/18 14:82/12 14:84/10
14:84/18 14:105/3 14:109/10
14:117/19
**doesn't [9]**  14:5/13 14:10/18
14:19/20 14:48/7 14:65/22
14:87/1 14:109/17 14:109/25
14:116/24
**doing [4]**  14:8/2 14:48/21
14:65/10 14:94/20
**Domestic [1]**  14:84/24
**don't [76]**  14:5/3 14:5/8
14:9/16 14:9/24 14:17/18
14:19/4 14:19/22 14:20/2
14:20/25 14:22/2 14:22/15
14:23/22 14:25/20 14:26/2
14:28/6 14:29/19 14:30/17
14:34/7 14:35/10 14:35/11
14:36/8 14:36/18 14:43/6
14:46/13 14:47/18 14:48/18
14:48/21 14:49/1 14:49/11
14:49/12 14:50/11 14:50/11
14:51/22 14:51/24 14:52/5
14:52/11 14:52/14 14:52/25
14:54/10 14:55/22 14:60/2
14:60/16 14:64/12 14:65/12
14:65/17 14:67/8 14:68/10
14:72/23 14:78/14 14:79/21
14:84/7 14:85/2 14:86/11
14:91/20 14:93/19 14:93/22
14:96/14 14:102/24 14:104/24
14:104/25 14:105/7 14:105/24
14:105/24 14:106/4 14:106/10
14:107/22 14:107/23 14:107/24
14:108/10 14:109/12 14:110/3
14:110/3 14:112/16 14:116/9

**done [4]**  14:30/16 14:50/4
14:67/4 14:108/1
**door [4]**  14:4/15 14:4/24 14:5/4
14:5/21
**Dorsey [1]**  14:98/17
**dots [5]**  14:12/10 14:12/11
14:12/13 14:12/14 14:12/15
**double [1]**  14:91/5
**double-dipping [1]**  14:91/5
**dovetailed [1]**  14:113/5
**down [13]**  14:20/19 14:22/5
14:22/6 14:23/8 14:25/5 14:26/5
14:27/5 14:27/24 14:29/22
14:31/13 14:78/10 14:95/14
14:96/11
**Dr [61]**  14:4/11 14:4/17 14:4/24
14:6/14 14:6/16 14:6/20 14:7/9
14:7/14 14:7/18 14:8/13 14:8/16
14:9/7 14:11/6 14:11/9 14:11/24
14:12/22 14:13/7 14:14/21
14:15/6 14:15/22 14:16/2
14:16/7 14:16/16 14:16/18
14:16/20 14:17/1 14:17/8
14:18/3 14:18/13 14:18/25
14:19/9 14:19/24 14:20/14
14:22/11 14:22/23 14:23/4
14:25/12 14:25/18 14:25/23
14:26/1 14:26/16 14:26/23
14:26/25 14:27/17 14:27/21
14:28/23 14:29/14 14:30/8
14:30/10 14:30/21 14:31/7
14:32/19 14:42/19 14:47/21
14:61/10 14:80/11 14:97/8
14:105/22 14:105/25 14:106/1
14:113/7
**Dr. [22]**  14:12/23 14:19/15
14:19/24 14:20/14 14:22/18
14:31/10 14:31/11 14:32/6
14:35/16 14:35/16 14:38/6
14:45/16 14:46/24 14:60/21
14:62/24 14:96/4 14:105/13
14:105/20 14:106/8 14:107/24
14:111/13 14:112/6
**Dr. Craig [7]**  14:31/10 14:31/11
14:32/6 14:38/6 14:45/16
14:60/21 14:62/24
**Dr. Edman [8]**  14:12/23 14:19/15
14:19/24 14:20/14 14:105/13
14:106/8 14:107/24 14:111/13
**Dr. Edman's [1]**  14:105/20
**Dr. Klin [1]**  14:35/16
**Dr. Wright [4]**  14:35/16
14:46/24 14:96/4 14:112/6
**Dr. Wright's [1]**  14:22/18
**drafted [1]**  14:44/16
**drafting [1]**  14:13/2
**Dreyfuss [6]**  14:66/24 14:66/24
14:67/18 14:67/20 14:67/24
14:67/25
**drive [1]**  14:21/13
**duly [1]**  14:6/11
**during [15]**  14:11/7 14:13/21
14:54/12 14:55/8 14:79/25
14:97/24 14:98/22 14:99/25
14:99/25 14:100/19 14:101/18
14:103/3 14:103/4 14:106/17
14:115/24
**duties [1]**  14:80/12
**duty [17]**  14:66/20 14:73/9
14:74/18 14:74/19 14:75/7
14:75/8 14:75/8 14:75/10

14:119/2 14:119/3
14:119/3
14:30/16
**done [4]**
14:75/13 14:75/19 14:75/21
14:79/21 14:79/23 14:79/23

**E**

**each [19]**  14:6/7 14:30/12
14:32/14 14:39/13 14:39/22
14:44/20 14:48/1 14:49/12
14:57/24 14:66/14 14:66/16
14:67/12 14:76/6 14:78/23
14:80/24 14:93/5 14:93/10
14:111/4 14:118/7
**earlier [3]**  14:19/12 14:108/15
14:108/20
**early [2]**  14:93/21 14:93/21
**Eastern [3]**  14:20/15 14:21/9
14:21/10
**easy [1]**  14:8/4
**easy-to-read [1]**  14:8/4
**eat [1]**  14:43/4
**ECF [4]**  14:42/9 14:42/11
14:65/13 14:83/22
**edited [1]**  14:8/1
**editing [1]**  14:6/17
**Edition [1]**  14:71/17
**Edman [8]**  14:12/23 14:19/15
14:19/24 14:20/14 14:105/13
14:106/8 14:107/24 14:111/13
**Edman's [1]**  14:105/20
**effectively [1]**  14:82/8
**effort [1]**  14:95/3
**eight [1]**  14:116/9
**either [6]**  14:35/15 14:45/20
14:52/1 14:63/1 14:69/5
14:111/16
**elect [5]**  14:90/2 14:90/4
14:90/16 14:91/7 14:91/10
**election [1]**  14:90/13
**electricity [1]**  14:13/17
**elements [2]**  14:66/15 14:67/25
**Eleventh [1]**  14:77/13
**email [46]**  14:7/19 14:18/4
14:18/10 14:18/25 14:19/4
14:19/18 14:19/20 14:19/23
14:19/23 14:20/5 14:20/5
14:21/23 14:22/12 14:22/14
14:22/15 14:22/16 14:23/3
14:23/5 14:23/18 14:24/3
14:24/25 14:25/12 14:25/12
14:25/23 14:26/16 14:26/20
14:27/14 14:27/18 14:28/11
14:28/24 14:29/1 14:29/6
14:29/17 14:30/5 14:97/2
14:97/8 14:99/17 14:100/12
14:100/17 14:102/11 14:102/24
14:103/23 14:107/15 14:107/20
14:111/3 14:111/12
**email's [1]**  14:19/25
**emails [19]**  14:19/10 14:19/16
14:22/14 14:27/3 14:30/15
14:30/17 14:30/17 14:30/22
14:30/25 14:54/5 14:54/22
14:55/2 14:55/3 14:55/3 14:55/4
14:55/5 14:104/19 14:107/6
14:107/8
**enacted [2]**  14:64/21 14:66/25
**end [8]**  14:5/5 14:48/22
14:49/12 14:65/18 14:79/3
14:81/5 14:92/12 14:118/20
**enforce [1]**  14:41/6
**engage [1]**  14:51/16
**enough [2]**  14:51/16 14:57/18
**enrichment [4]**  14:76/17 14:77/6

E

enrichment... [2] 14:77/11
14:77/13
ensure [4] 14:36/5 14:36/25
14:95/3 14:108/5
entails [1] 14:79/23
enter [2] 14:89/24 14:95/10
entered [1] 14:45/17
entertain [1] 14:34/7
entirely [2] 14:13/18 14:73/19
entities [3] 14:14/22 14:15/14
14:16/24
entitled [6] 14:40/12 14:41/25
14:44/5 14:70/9 14:92/2
14:120/5
entry [1] 14:113/5
Environmental [1] 14:74/6
equal [2] 14:84/11 14:84/18
equipment [2] 14:13/10 14:13/11
equitable [7] 14:16/5 14:89/24
14:90/6 14:90/14 14:90/22
14:91/12 14:113/11
equity [1] 14:91/15
ESI [2] 14:23/15 14:24/1
ESQ [11] 1:1/17 1:1/19 1:1/22
1:1/22 1:2/4 1:2/7 1:2/7 1:2/8
1:2/8 1:2/9 1:2/11
essentially [2] 14:37/18
14:109/4
establish [4] 14:5/9 14:5/11
14:5/14 14:55/17
established [2] 14:43/13
14:44/24
establishing [1] 14:113/11
estate [11] 14:38/3 14:40/14
14:40/16 14:40/24 14:41/5
14:41/18 14:41/25 14:43/10
14:43/12 14:44/21 14:81/7
Estate's [3] 14:41/20 14:43/10
14:68/19
estranged [1] 14:116/21
estrangement [1] 14:117/3
et [1] 1:1/5
even [8] 14:11/15 14:52/21
14:55/15 14:55/22 14:68/1
14:81/19 14:82/13 14:82/14
evening [6] 14:58/5 14:59/11
14:59/16 14:118/20 14:119/5
14:119/9
event [2] 14:63/5 14:81/19
ever [1] 14:81/18
every [4] 14:25/8 14:29/19
14:95/3 14:105/22
everything [4] 14:10/12
14:10/17 14:51/19 14:59/13
Everything's [1] 14:9/21
EVID [2] 1:3/7 1:3/13
evidence [73] 14:11/3 14:15/3
14:16/22 14:17/23 14:17/24
14:17/25 14:19/10 14:20/8
14:23/12 14:23/13 14:24/18
14:24/22 14:24/23 14:26/6
14:26/10 14:26/13 14:26/14
14:26/17 14:27/12 14:27/13
14:27/18 14:27/25 14:28/14
14:28/15 14:28/25 14:30/3
14:30/4 14:33/2 14:33/11
14:33/21 14:34/12 14:34/16
14:34/17 14:34/17 14:35/3
14:35/12 14:35/12 14:35/17
14:35/20 14:36/7 14:37/1
14:37/2 14:39/20 14:42/18

14:42/22 14:46/6 14:46/10
14:55/18 14:68/24 14:82/8
14:88/24 14:95/21 14:98/13
14:99/15 14:100/14 14:100/15
14:101/14 14:101/24 14:103/8
14:103/9 14:104/7 14:104/8
14:104/21 14:108/24 14:109/11
14:111/22 14:113/18 14:115/3
14:115/7 14:115/12
exact [5] 14:30/22 14:44/25
14:57/6 14:62/20 14:83/4
exactly [2] 14:63/25 14:107/8
examination [7] 14:6/12 14:8/17
14:13/21 14:97/25 14:98/1
14:106/3 14:106/5
examine [3] 14:104/23 14:109/2
14:109/3
examined [4] 14:105/25 14:106/2
14:108/2 14:108/14
examining [1] 14:12/24
example [7] 14:43/3 14:46/10
14:57/22 14:72/12 14:77/10
14:82/15 14:97/17
except [4] 14:19/11 14:57/7
14:80/17 14:84/7
exception [1] 14:32/25
exchange [2] 14:100/25 14:111/5
exclude [1] 14:79/15
exclusive [1] 14:5/3
excuse [4] 14:35/10 14:50/23
14:58/5 14:104/17
executor [1] 14:41/6
exhibit [27] 14:23/21 14:24/6
14:24/10 14:24/23 14:26/8
14:26/14 14:27/9 14:27/13
14:28/3 14:28/15 14:30/1
14:30/4 14:50/3 14:51/8 14:52/5
14:52/13 14:57/4 14:58/1
14:95/21 14:98/13 14:99/15
14:100/15 14:101/14 14:101/24
14:103/9 14:104/8 14:109/19
exhibits [28] 1:3/7 1:3/13
14:33/1 14:50/2 14:50/2
14:50/25 14:51/2 14:51/7
14:51/19 14:51/21 14:51/23
14:52/12 14:52/17 14:52/18
14:52/24 14:53/4 14:53/8
14:56/16 14:56/17 14:57/11
14:59/22 14:59/24 14:60/6
14:94/7 14:94/9 14:95/9
14:95/22 14:118/11
exist [2] 14:66/11 14:67/10
existed [1] 14:43/23
existence [2] 14:46/2 14:46/3
existing [1] 14:41/16
exists [3] 14:40/21 14:44/13
14:62/22
expect [1] 14:55/6
expected [1] 14:94/23
expense [1] 14:13/20
expenses [1] 14:14/5
experience [1] 14:48/18
expert [5] 14:11/10 14:12/12
14:82/20 14:106/8 14:107/23
experts [1] 14:39/17
expiration [2] 14:44/6 14:44/9
explain [3] 14:65/5 14:86/23
14:99/4
explained [1] 14:41/1
explains [1] 14:108/24
explanation [2] 14:73/20
14:85/10

extent [5] 14:5/20 14:42/13
14:42/19 14:42/19 14:43/1

F

F.Supp [5] 14:71/13 14:81/22
14:81/25 14:82/6 14:86/21
fact [24] 14:4/15 14:8/22
14:21/16 14:39/21 14:54/2
14:54/9 14:54/22 14:55/18
14:65/14 14:81/16 14:83/5
14:84/5 14:84/11 14:84/19
14:84/20 14:85/16 14:91/14
14:98/5 14:107/20 14:108/19
14:108/22 14:109/2 14:109/4
14:109/6
facts [1] 14:58/21
failed [2] 14:88/3 14:107/11
fails [2] 14:78/7 14:78/11
failure [1] 14:106/18
failures [1] 14:110/10
fair [1] 14:108/6
fairly [1] 14:80/17
fairness [1] 14:98/5
falling [1] 14:5/11
false [1] 14:83/20
familiar [1] 14:11/9
far [4] 14:52/8 14:52/13
14:69/9 14:86/18
fashion [1] 14:95/7
favor [2] 14:35/5 14:35/17
favorable [2] 14:35/4 14:37/17
February [7] 14:7/20 14:40/15
14:41/19 14:41/21 14:41/24
14:97/2 14:104/12
February 14th [2] 14:7/20
14:41/24
February 16th [2] 14:97/2
14:104/12
February 2016 [1] 14:40/15
February 4th [2] 14:41/19
14:41/21
feel [1] 14:36/2
fell [3] 14:4/12 14:4/16
14:5/14
FERNANDEZ [14] 1:2/8 1:2/11
14:34/5 14:34/5 14:36/1
14:36/15 14:36/16 14:38/1
14:39/24 14:47/2 14:53/21
14:60/20 14:76/9 14:83/24
few [5] 14:4/11 14:17/10
14:50/8 14:53/2 14:76/2
fiduciary [16] 14:73/9 14:74/18
14:74/19 14:75/7 14:75/8
14:75/10 14:75/13 14:75/18
14:75/21 14:78/22 14:79/10
14:79/21 14:79/23 14:79/23
14:84/8 14:84/16
Fifth [9] 1:2/10 14:41/12
14:46/14 14:46/16 14:47/3
14:47/8 14:47/19 14:53/22
14:53/24
figure [2] 14:93/13 14:93/22
file [9] 14:11/22 14:23/19
14:23/25 14:24/12 14:24/16
14:28/18 14:52/11 14:55/10
14:93/8
filed [5] 14:35/1 14:39/4
14:41/23 14:45/24 14:88/4
files [5] 14:7/24 14:12/9
14:24/2 14:24/2 14:24/3
filing [4] 14:42/20 14:54/4
14:66/9 14:86/25
final [4] 14:7/6 14:50/5

**F**

final... **[2]** 14:52/7 14:94/4
Finally **[3]** 14:42/17 14:79/13
14:85/1
find **[12]** 14:35/17 14:38/24
14:52/21 14:67/25 14:68/3
14:68/10 14:68/11 14:75/13
14:80/13 14:82/9 14:82/22
14:86/3
finding **[1]** 14:81/15
findings **[1]** 14:91/14
fine **[4]** 14:57/24 14:89/3
14:96/22 14:97/19
finish **[1]** 14:48/16
finite **[2]** 14:49/13 14:49/14
first **[21]** 14:5/2 14:8/1 14:8/5
14:12/16 14:20/25 14:32/11
14:35/2 14:42/8 14:42/22
14:42/24 14:50/16 14:60/3
14:60/16 14:60/24 14:70/17
14:78/6 14:79/4 14:81/15
14:106/7 14:113/6 14:118/13
five **[5]** 14:44/7 14:54/4
14:55/10 14:55/23 14:97/14
Fla **[2]** 14:70/21 14:71/6
flexibility **[1]** 14:74/4
FLEXNER **[2]** 1:1/20 1:2/2
Floor **[1]** 1:2/3 1:2/10
FLORIDA **[28]** 1:1/3 1:1/10
1:1/16 1:1/21 1:2/6 14:40/22
14:40/23 14:40/25 14:41/2
14:41/8 14:41/12 14:41/16
14:43/23 14:44/16 14:63/19
14:65/3 14:66/11 14:69/24
14:71/9 14:71/16 14:73/24
14:74/3 14:74/14 14:74/23
14:81/22 14:82/4 14:84/13
14:84/25
focus **[1]** 14:19/18
Foley **[3]** 14:71/23 14:72/1
14:72/5
follow **[7]** 14:52/16 14:63/3
14:63/11 14:64/10 14:67/3
14:75/11 14:99/21
following **[12]** 1:1/24 14:7/16
14:7/17 14:8/2 14:16/15
14:22/23 14:22/24 14:31/21
14:51/6 14:66/15 14:90/5
14:102/6
follows **[6]** 14:6/11 14:31/23
14:32/7 14:63/14 14:75/18
14:88/11
foregoing **[1]** 14:120/4
forensic **[2]** 14:11/10 14:107/23
forensics **[1]** 14:16/23
forged **[1]** 14:105/18
forgeries **[5]** 14:19/16
14:104/21 14:105/15 14:108/9
14:109/23
forgery **[9]** 14:12/24 14:25/24
14:104/25 14:105/10 14:105/24
14:105/25 14:106/5 14:108/9
14:110/3
form **[19]** 14:27/6 14:28/9
14:46/23 14:56/4 14:56/15
14:60/16 14:61/19 14:64/13
14:89/15 14:89/15 14:89/17
14:89/19 14:90/24 14:91/19
14:93/6 14:97/6 14:118/19
14:118/21 14:119/2
formation **[1]** 14:104/12
forms **[1]** 14:67/6

forth **[2]** 14:38/8 14:52/4
forward **[1]** 14:48/9
14:48/19 14:82/15 14:110/24
forwarded **[1]** 14:30/16
found **[4]** 14:14/22 14:70/14
14:81/1 14:89/6
foundation **[4]** 14:105/1
14:106/16 14:110/4 14:110/13
founded **[1]** 14:106/10
Fountain **[1]** 14:67/23
four **[3]** 14:41/14 14:41/23
14:97/9
four-year **[2]** 14:41/14 14:41/23
Francisco **[1]** 1:2/3
frankly **[1]** 14:108/22
fraud **[18]** 14:73/3 14:73/4
14:73/14 14:73/15 14:73/16
14:73/17 14:74/4 14:74/15
14:74/16 14:74/25 14:75/4
14:75/5 14:75/6 14:75/7
14:75/18 14:75/18 14:83/18
14:113/13
fraudulent **[9]** 14:38/8 14:76/10
14:84/3 14:84/4 14:84/19
14:84/23 14:85/15 14:86/8
14:113/17
FREEDMAN **[7]** 1:1/15 1:1/17
1:1/18 14:33/19 14:107/18
14:109/10 14:109/17
friend **[1]** 14:16/20
front **[3]** 14:92/10 14:102/23
14:116/21
full **[6]** 14:8/11 14:59/7
14:78/6 14:93/5 14:93/24
14:94/2
further **[20]** 14:5/25 14:6/11
14:31/4 14:32/18 14:32/19
14:35/22 14:47/7 14:47/11
14:70/2 14:72/16 14:75/22
14:76/25 14:77/19 14:80/15
14:86/6 14:87/19 14:89/11
14:91/16 14:103/14 14:119/5

**G**

Gables **[1]** 1:2/6
gain **[1]** 14:77/12
Gary **[1]** 14:81/21
gave **[4]** 14:7/17 14:22/24
14:60/10 14:109/8
general **[1]** 14:81/14
generally **[2]** 14:54/5 14:70/25
gentlemen **[6]** 14:6/6 14:31/9
14:31/18 14:32/5 14:33/22
14:58/17
Geo **[5]** 14:20/15 14:20/20
14:25/2 14:26/25 14:30/12
get **[15]** 14:6/8 14:8/8 14:8/10
14:11/2 14:35/14 14:46/15
14:50/19 14:53/21 14:55/23
14:56/23 14:80/19 14:88/18
14:91/4 14:105/6 14:110/21
gets **[1]** 14:12/8
getting **[1]** 14:48/19
give **[33]** 14:31/12 14:31/19
14:38/20 14:49/23 14:51/9
14:51/19 14:51/19 14:52/10
14:53/2 14:56/8 14:56/11
14:56/15 14:56/17 14:57/24
14:60/15 14:61/1 14:66/5
14:73/25 14:78/11 14:81/25
14:84/9 14:87/2 14:88/21
14:92/16 14:92/22 14:93/14
14:93/23 14:93/25 14:109/19

14:109/19 14:118/20 14:118/23
given **[6]** 14:44/12 14:45/22
14:49/4 14:49/7 14:56/4
14:82/16
gives **[1]** 14:80/11
giving **[3]** 14:50/5 14:86/4
14:101/8
gmail **[1]** 14:55/11
go **[40]** 14:4/8 14:9/15 14:10/21
14:15/3 14:19/12 14:23/1
14:33/23 14:34/2 14:42/14
14:48/8 14:49/25 14:50/5
14:50/14 14:51/1 14:53/10
14:55/23 14:59/10 14:59/20
14:59/22 14:60/2 14:63/10
14:84/19 14:89/7 14:96/5
14:96/15 14:96/18 14:103/10
14:103/13 14:104/9 14:104/15
14:107/6 14:109/6 14:112/21
14:113/2 14:113/10 14:113/12
14:113/17 14:115/1 14:115/7
14:115/9
goes **[5]** 14:82/9 14:84/4
14:85/15 14:86/8 14:113/18
going **[46]** 14:5/11 14:9/21
14:9/25 14:10/3 14:10/6 14:27/7
14:34/19 14:37/18 14:40/7
14:49/12 14:49/18 14:50/23
14:51/6 14:51/8 14:51/25
14:52/4 14:52/5 14:52/10
14:57/20 14:58/4 14:59/4
14:59/22 14:59/23 14:59/25
14:60/5 14:63/10 14:65/21
14:68/9 14:68/16 14:75/15
14:77/2 14:77/2 14:82/15
14:92/12 14:92/22 14:93/18
14:94/10 14:94/12 14:94/14
14:94/22 14:95/13 14:102/3
14:107/13 14:110/13 14:115/22
14:118/7
gone **[1]** 14:113/14
good **[3]** 14:6/14 14:6/15 14:8/7
got **[5]** 14:6/22 14:25/5 14:25/7
14:102/14 14:112/16
Government **[1]** 14:13/25
grant **[1]** 14:42/2
granted **[2]** 14:4/21 14:5/18
granting **[1]** 14:44/2
Greenland **[1]** 14:74/6
Grimes **[1]** 14:71/8
grounds **[1]** 14:114/12
guess **[2]** 14:51/23 14:76/3
guesswork **[1]** 14:88/8
gun **[1]** 14:55/14

**H**

had **[42]** 14:4/14 14:4/17 14:6/7
14:6/24 14:7/2 14:7/5 14:7/21
14:8/11 14:8/18 14:8/21
14:12/12 14:14/2 14:16/18
14:18/9 14:30/16 14:30/24
14:32/10 14:32/11 14:35/20
14:56/22 14:60/9 14:64/4
14:77/9 14:85/9 14:85/24
14:95/16 14:98/24 14:100/6
14:100/7 14:101/5 14:105/13
14:105/25 14:106/1 14:106/14
14:108/1 14:109/2 14:114/5
14:116/6 14:117/16 14:117/16
14:117/18 14:117/23
Haddad **[4]** 14:71/23 14:72/6
14:75/9 14:75/16

**H**

half [1]   14:81/5
hand [12]   14:8/2 14:11/15
14:21/23 14:22/6 14:23/21
14:25/1 14:25/3 14:25/10
14:28/23 14:31/12 14:31/19
14:90/19
handle [2]   14:35/8 14:35/8
hands [1]   14:105/18
handwritten [3]   14:11/24
14:12/19 14:12/23
happened [3]   14:51/24 14:106/6
14:116/17
happens [1]   14:54/5
happy [4]   14:37/23 14:39/7
14:66/7 14:88/18
hard [1]   14:107/16
hard-pressed [1]   14:107/16
has [42]   14:4/24 14:15/6
14:15/13 14:16/22 14:19/18
14:19/22 14:21/19 14:24/5
14:24/6 14:39/19 14:39/20
14:40/19 14:40/23 14:41/7
14:42/5 14:42/6 14:47/14
14:47/14 14:48/1 14:49/11
14:62/21 14:62/22 14:63/19
14:63/23 14:63/25 14:66/2
14:67/4 14:70/13 14:79/14
14:79/15 14:81/18 14:83/9
14:94/5 14:97/4 14:101/9
14:106/14 14:109/1 14:110/4
14:111/8 14:111/19 14:112/23
14:114/14
hasn't [1]   14:82/4
have [154]
haven't [4]   14:44/24 14:50/17
14:108/7 14:109/15
having [5]   14:6/10 14:36/14
14:49/10 14:57/1 14:94/21
he [28]   14:4/25 14:5/11 14:6/17
14:7/21 14:7/23 14:8/1 14:8/12
14:15/6 14:15/13 14:16/4
14:16/17 14:18/6 14:20/17
14:20/17 14:21/19 14:22/2
14:45/16 14:60/6 14:60/6
14:60/7 14:65/16 14:79/11
14:105/13 14:105/21 14:107/24
14:109/17 14:113/6 14:113/6
he'd [1]   14:47/1
he'll [1]   14:60/6
he's [2]   14:4/15 14:60/5
header [4]   14:19/25 14:25/12
14:27/18 14:30/6
headers [8]   14:23/19 14:24/3
14:24/25 14:25/4 14:26/21
14:27/15 14:28/12 14:29/1
hear [2]   14:66/7 14:75/2
heard [8]   14:4/4 14:6/4
14:31/21 14:32/4 14:34/1
14:58/15 14:58/18 14:59/19
hearing [1]   14:36/15
heat [1]   14:117/15
held [7]   14:40/20 14:41/13
14:42/5 14:47/16 14:69/23
14:81/18 14:83/9
help [4]   14:9/22 14:36/17
14:56/23 14:59/22
helpful [2]   14:48/5 14:57/9
her [2]   14:4/16 14:35/13
here [20]   14:11/13 14:28/7
14:43/22 14:46/9 14:46/19
14:46/23 14:53/13 14:54/15

14:62/20 14:70/8 14:74/8
14:76/16 14:77/11 14:78/3
14:96/16 14:97/20 14:104/24
14:106/5 14:107/24 14:117/12
here's [1]   14:43/21
hidden [2]   14:11/18 14:11/20
highest [3]   14:70/9 14:72/13
14:72/19
highlight [2]   14:20/9 14:25/9
highlighted [1]   14:116/11
highlighting [1]   14:118/5
highly [1]   14:89/5
highways [1]   14:21/13
him [6]   14:7/20 14:54/21
14:98/25 14:104/23 14:106/2
14:106/3
himself [2]   14:4/25 14:20/18
hinges [1]   14:39/14
his [13]   14:4/12 14:4/13
14:4/16 14:5/1 14:5/9 14:15/8
14:16/19 14:16/22 14:98/21
14:99/10 14:103/4 14:107/24
14:116/19
history [1]   14:6/17
Hmm [1]   14:9/20
hobby [2]   14:14/4 14:16/4
hold [5]   14:17/17 14:28/13
14:48/5 14:48/7 14:62/1
holes [1]   14:11/15
holiday [1]   14:48/20
Holt [1]   14:71/8
home [1]   14:48/8
Homeland [1]   14:109/7
Honor [269]
Honor's [6]   14:35/12 14:35/21
14:72/12 14:74/9 14:89/2
14:103/6
Honorable [1]   1:1/4
hooked [1]   14:10/17
hope [1]   14:118/24
horrendously [1]   14:8/3
hour [3]   14:56/9 14:93/19
14:94/18
hours [1]   14:49/12
hours' [1]   14:21/13
housekeeping [6]   14:4/7 14:51/2
14:51/8 14:60/2 14:110/9
14:112/4
how [9]   14:4/24 14:33/5
14:50/16 14:60/12 14:72/5
14:89/2 14:92/3 14:92/5
14:107/1
However [4]   14:51/17 14:62/22
14:63/10 14:76/6
huh [1]   14:78/8

**I**

I'd [3]   14:24/18 14:92/3
14:103/21
I'll [17]   14:10/2 14:10/5
14:21/20 14:35/8 14:35/8
14:35/24 14:36/23 14:47/19
14:49/17 14:52/13 14:59/16
14:70/19 14:84/9 14:89/9
14:93/4 14:93/13 14:101/13
I'm [65]   14:4/19 14:8/6 14:8/6
14:9/12 14:9/22 14:10/4
14:14/12 14:20/14 14:22/18
14:25/12 14:33/14 14:34/4
14:34/19 14:41/1 14:48/14
14:48/17 14:51/5 14:51/5
14:51/15 14:53/1 14:53/2
14:54/7 14:58/4 14:59/21

14:59/23 14:59/25 14:66/3
14:67/16 14:68/4 14:68/16
14:67/16 14:68/4 14:68/16
14:70/17 14:70/18 14:71/10
14:72/24 14:73/12 14:75/2
14:75/5 14:77/2 14:77/2 14:77/3
14:80/17 14:87/6 14:88/18
14:92/16 14:93/18 14:93/25
14:94/22 14:102/3 14:102/6
14:102/8 14:102/15 14:107/1
14:107/23 14:108/3 14:109/6
14:110/2 14:110/13 14:111/15
14:116/4 14:116/23 14:118/7
I've [10]   14:6/22 14:10/12
14:21/10 14:49/3 14:49/4
14:49/7 14:49/7 14:54/19
14:64/4 14:100/13
Ice [1]   14:74/13
idea [2]   14:48/1 14:108/8
IDEN [2]   1:3/7 1:3/13
identical [2]   14:19/11 14:63/24
identifiable [1]   14:81/17
identification [7]   14:24/10
14:26/8 14:27/9 14:28/3 14:30/1
14:81/13 14:83/15
identified [1]   14:24/7
identify [4]   14:23/23 14:24/8
14:82/12 14:107/11
ignore [1]   14:116/20
imagine [1]   14:100/4
impact [1]   14:35/20
impeachment [2]   14:5/24
14:14/13
import [1]   14:80/5
important [2]   14:55/10
14:113/13
impossible [1]   14:105/22
improper [2]   14:76/22 14:106/2
improperly [3]   14:74/20 14:79/9
14:80/2
inadvertent [2]   14:106/18
14:110/10
inappropriate [4]   14:67/8
14:89/19 14:113/23 14:113/25
inauthentic [1]   14:107/17
Inc [2]   14:71/9 14:74/13
include [6]   14:65/22 14:66/14
14:84/23 14:85/9 14:89/9
14:90/14
included [7]   14:61/22 14:64/22
14:72/21 14:88/4 14:88/6
14:88/9 14:88/25
includes [2]   14:34/15 14:78/5
including [4]   14:24/2 14:30/15
14:65/3 14:108/24
inconsistent [5]   14:62/10
14:62/13 14:89/20 14:90/3
14:91/3
incorrect [4]   14:12/1 14:68/20
14:68/22 14:109/13
increase [1]   14:46/11
increased [1]   14:46/22
indeed [1]   14:117/19
independent [1]   14:59/14
indicated [1]   14:113/21
individual [1]   14:49/12
individuals [1]   14:92/25
indulge [2]   14:43/21 14:47/5
inexcusably [1]   14:42/23
Inference [1]   14:81/23
inferences [1]   14:35/4 14:87/23
infidelity [3]   14:4/19 14:5/6
14:5/12

**I**

**information [11]** 14:13/25
14:14/18 14:15/7 14:15/13
14:16/18 14:18/11 14:34/12
14:47/6 14:80/8 14:109/8
14:111/5
**initial [1]** 14:32/11
**injunctive [1]** 14:90/23
**injury [2]** 14:46/22 14:46/23
**innocuous [1]** 14:5/20
**instance [1]** 14:38/14
**instead [3]** 14:44/1 14:73/10
14:78/25
**instruct [5]** 14:47/24 14:49/22
14:58/25 14:83/10 14:87/3
**instructed [5]** 14:29/18
14:29/20 14:30/17 14:49/10
14:65/7
**instructing [2]** 14:80/5 14:93/2
**instruction [59]** 14:38/12
14:49/13 14:58/20 14:60/19
14:61/5 14:61/8 14:61/23
14:62/20 14:62/23 14:64/10
14:64/15 14:64/21 14:64/23
14:66/1 14:66/4 14:68/21
14:68/23 14:70/7 14:70/8
14:72/21 14:74/9 14:76/11
14:76/17 14:76/20 14:79/18
14:79/19 14:79/20 14:79/22
14:79/22 14:80/3 14:80/8
14:80/19 14:80/20 14:81/1
14:81/6 14:81/23 14:82/22
14:82/24 14:83/2 14:83/7
14:83/13 14:83/19 14:85/7
14:85/17 14:85/20 14:85/23
14:86/12 14:87/3 14:87/11
14:87/12 14:87/13 14:88/2
14:88/3 14:88/5 14:88/6 14:88/8
14:88/12 14:88/16 14:89/5
**instructions [55]** 14:36/10
14:37/8 14:37/9 14:37/24
14:38/20 14:39/8 14:48/11
14:48/22 14:48/25 14:49/4
14:49/6 14:49/7 14:49/22
14:50/5 14:51/10 14:51/12
14:56/4 14:56/7 14:56/12
14:56/14 14:60/15 14:60/16
14:60/22 14:60/25 14:61/3
14:64/9 14:68/17 14:75/22
14:77/20 14:77/21 14:77/23
14:80/4 14:83/3 14:85/8 14:85/9
14:85/22 14:86/2 14:86/4
14:87/22 14:88/9 14:88/10
14:88/13 14:88/18 14:88/22
14:88/25 14:89/12 14:92/24
14:93/1 14:93/6 14:93/14
14:94/4 14:113/14 14:118/19
14:118/21 14:119/1
**Insurance [1]** 14:82/6
**Integyrs [4]** 14:14/18 14:15/8
14:15/14 14:16/18
**intellectual [10]** 14:42/15
14:83/14 14:83/15 14:97/7
14:104/13 14:107/5 14:107/6
14:107/8 14:107/12 14:107/14
**intend [2]** 14:48/7 14:64/12
**intending [1]** 14:48/5
**intention [3]** 14:4/14 14:16/23
14:51/7
**interest [3]** 14:16/5 14:66/18
14:68/19
**interesting [1]** 14:106/24

**International [1]** 14:71/9
**interrogatory [1]** 14:90/25
14:91/2
**interrupt [2]** 14:93/19 14:93/23
**intertwined [2]** 14:37/9
14:37/25
**introduce [5]** 14:52/24
14:105/16 14:105/17 14:106/18
14:110/11
**introduced [10]** 14:35/20
14:42/19 14:42/23 14:54/11
14:94/10 14:99/7 14:99/9
14:101/10 14:111/16 14:115/10
**introducing [1]** 14:32/25
**introduction [3]** 14:32/25
14:101/13 14:106/12
**invent [2]** 14:55/7 14:55/19
**investments [1]** 14:100/23
**involve [1]** 14:82/13
**involved [2]** 14:5/12 14:7/21
**involvement [1]** 14:5/1
**involving [2]** 14:16/25 14:71/17
**IP [18]** 14:19/25 14:20/3
14:20/15 14:20/15 14:20/20
14:20/24 14:22/1 14:22/8
14:25/2 14:25/9 14:25/20
14:26/1 14:26/25 14:27/1
14:30/12 14:30/23 14:45/10
14:89/22
**IRA [25]** 1:1/5 14:7/19 14:22/13
14:23/5 14:25/13 14:25/23
14:26/16 14:28/25 14:38/3
14:40/15 14:45/17 14:76/12
14:85/2 14:100/18 14:100/21
14:100/25 14:101/7 14:101/18
14:102/12 14:102/25 14:103/2
14:103/3 14:113/6 14:113/15
14:116/19
**irrelevant [4]** 14:79/15 14:89/5
14:113/24 14:113/25
**is [366]**
**isn't [6]** 14:13/4 14:26/1
14:27/3 14:30/13 14:43/14
14:82/7
**issue [20]** 14:34/6 14:38/7
14:39/7 14:43/15 14:43/20
14:43/21 14:45/1 14:51/25
14:54/2 14:54/13 14:54/15
14:60/3 14:69/20 14:82/7
14:82/7 14:108/18 14:115/16
14:115/17 14:115/23 14:115/23
**issues [13]** 14:37/8 14:37/25
14:38/16 14:38/19 14:44/23
14:46/25 14:49/8 14:52/5
14:56/7 14:114/18 14:118/13
14:119/1 14:119/5
**it [297]**
**it's [123]**
**its [31]** 14:27/8 14:28/1
14:28/8 14:29/23 14:40/14
14:62/14 14:62/14 14:76/21
14:83/22 14:91/11 14:91/15
14:92/18 14:98/11 14:98/18
14:99/2 14:99/2 14:99/14
14:101/2 14:101/13 14:101/19
14:103/5 14:104/2 14:104/14
14:105/1 14:107/3 14:107/14
14:107/14 14:107/15 14:110/12
14:111/7 14:111/24

**J**

**James [3]** 1:1/25 14:120/11

14:120/12
**interrogatories [1]** 14:90/24
14:22/1 14:27/2 14:30/13
**January [2]** 14:102/12 14:102/25
**January 22nd [2]** 14:102/12
14:102/25
**JMOL [2]** 14:34/20 14:89/7
**Johnston [1]** 14:41/12
**join [3]** 14:32/20 14:64/18
14:66/12
**joint [5]** 14:64/18 14:66/2
14:66/18 14:66/21 14:85/21
**JORGE [1]** 1:2/7
**Josh [2]** 14:29/9 14:29/10
**judge [29]** 1:1/4 14:5/2 14:5/6
14:5/15 14:7/15 14:14/12
14:15/11 14:15/11 14:23/20
14:24/4 14:28/6 14:28/10
14:28/16 14:34/4 14:48/21
14:50/7 14:50/22 14:51/5
14:52/19 14:52/25 14:53/12
14:58/9 14:94/13 14:108/22
14:109/6 14:109/17 14:117/8
14:117/14 14:117/15
**judgment [21]** 14:34/11 14:35/2
14:35/25 14:37/1 14:37/19
14:40/12 14:40/18 14:41/25
14:42/2 14:42/6 14:42/11
14:42/17 14:45/3 14:62/12
14:62/14 14:62/15 14:63/18
14:77/22 14:83/22 14:86/22
14:86/24
**July [2]** 14:74/8 14:74/23
**July 22nd [1]** 14:74/8
**July 26th [1]** 14:74/23
**jump [1]** 14:68/16
**juncture [1]** 14:37/23
**June [1]** 14:14/3
**June 2009 [1]** 14:14/3
**Jurisprudence [1]** 14:71/16
**juror [1]** 14:115/2
**jurors [7]** 14:38/2 14:38/7
14:38/24 14:39/12 14:57/18
14:59/18 14:82/22
**jury [91]** 1:1/12 14:4/4 14:4/10
14:6/2 14:6/3 14:6/4 14:7/16
14:22/12 14:23/4 14:23/11
14:32/4 14:33/25 14:34/1
14:35/14 14:35/17 14:36/9
14:37/8 14:37/9 14:37/24
14:38/12 14:38/20 14:39/8
14:39/18 14:47/24 14:48/9
14:48/22 14:49/10 14:49/19
14:49/23 14:50/3 14:50/6
14:50/6 14:50/20 14:51/17
14:52/10 14:54/4 14:56/10
14:56/18 14:57/9 14:57/14
14:58/5 14:58/14 14:58/15
14:59/9 14:59/19 14:60/17
14:60/22 14:61/3 14:64/9
14:65/6 14:65/17 14:67/1
14:74/9 14:77/21 14:79/12
14:79/19 14:80/4 14:80/6
14:80/7 14:82/7 14:82/9
14:82/12 14:82/12 14:82/16
14:83/3 14:83/10 14:85/8
14:85/21 14:86/5 14:87/12
14:87/12 14:88/10 14:88/13
14:89/1 14:89/7 14:89/12
14:89/21 14:89/23 14:90/24
14:91/11 14:91/13 14:92/6
14:92/16 14:92/24 14:93/1
14:113/14 14:115/2 14:116/21

**J**

jury... **[3]** 14:117/24 14:118/19
14:119/1
**jury's [2]** 14:39/20 14:90/5
**just [114]** 14:10/24 14:14/10
14:14/12 14:21/4 14:31/11
14:31/19 14:33/4 14:33/12
14:34/8 14:34/10 14:34/15
14:34/15 14:35/19 14:36/5
14:36/5 14:36/23 14:36/24
14:40/14 14:46/24 14:47/1
14:48/10 14:48/19 14:49/11
14:50/24 14:50/25 14:51/5
14:52/1 14:52/16 14:52/23
14:53/2 14:54/14 14:54/20
14:57/4 14:57/7 14:57/11
14:57/20 14:57/25 14:58/7
14:60/6 14:62/16 14:64/11
14:65/10 14:66/3 14:66/5
14:67/3 14:68/9 14:68/23
14:70/19 14:71/10 14:72/5
14:75/2 14:75/24 14:76/2
14:77/3 14:77/9 14:77/20
14:78/11 14:78/12 14:79/10
14:81/8 14:81/20 14:82/8
14:82/11 14:82/24 14:84/14
14:85/2 14:85/10 14:86/7
14:87/20 14:92/13 14:92/16
14:94/13 14:95/14 14:96/18
14:97/4 14:97/6 14:97/17
14:97/21 14:100/5 14:101/22
14:102/9 14:103/13 14:104/4
14:105/6 14:105/11 14:106/9
14:106/10 14:106/18 14:109/6
14:109/14 14:109/19 14:109/24
14:110/3 14:110/5 14:110/16
14:110/20 14:110/21 14:111/22
14:112/1 14:112/2 14:112/7
14:112/9 14:113/1 14:113/14
14:113/24 14:113/24 14:114/4
14:114/4 14:114/8 14:114/8
14:114/22 14:117/11 14:118/1
14:118/5

**K**

**KASS [1]** 1:2/9
**keep [2]** 14:102/8 14:102/9
**kept [1]** 14:13/22
**keys [1]** 14:7/23
**kilometers [1]** 14:21/11
**kind [4]** 14:21/4 14:37/8
14:54/6 14:54/13
**KLEIMAN [65]** 1:1/5 14:6/25
14:7/3 14:7/6 14:7/19 14:7/20
14:16/19 14:19/2 14:19/12
14:22/13 14:23/5 14:25/13
14:25/23 14:26/16 14:28/25
14:38/3 14:38/4 14:40/15
14:41/17 14:43/19 14:45/17
14:54/3 14:55/12 14:55/23
14:61/9 14:62/21 14:65/15
14:76/12 14:80/1 14:80/10
14:81/7 14:85/2 14:96/4 14:97/2
14:97/8 14:98/1 14:98/6
14:98/16 14:98/20 14:99/18
14:100/12 14:100/17 14:100/18
14:100/21 14:100/25 14:101/6
14:101/7 14:101/18 14:101/8
14:102/11 14:102/12 14:102/24
14:102/25 14:103/2 14:103/3
14:103/3 14:103/23 14:104/11
14:104/19 14:106/12 14:107/21

14:111/3 14:113/6 14:116/19
14:116/24
**Kleiman's [4]** 14:42/8 14:45/13
14:45/16 14:113/15
**Klein [1]** 14:70/24
**Klin [1]** 14:35/16
**knew [1]** 14:13/23
**know [51]** 14:8/9 14:9/24
14:14/21 14:17/18 14:22/2
14:30/17 14:34/7 14:36/8
14:36/18 14:41/17 14:45/7
14:46/10 14:47/3 14:48/18
14:49/1 14:49/13 14:50/22
14:50/23 14:52/11 14:52/23
14:54/19 14:54/21 14:55/16
14:56/10 14:56/11 14:60/6
14:60/12 14:85/21 14:92/4
14:92/11 14:92/19 14:94/13
14:104/24 14:104/25 14:105/7
14:105/24 14:105/24 14:107/22
14:108/8 14:108/8 14:108/10
14:108/12 14:109/12 14:109/17
14:109/24 14:110/3 14:112/7
14:113/8 14:116/9 14:116/20
14:117/5
**known [1]** 14:66/15
**knows [1]** 14:57/14
**Koster [1]** 14:87/15
**KYLE [1]** 1:1/19

**L**

**label [1]** 14:24/11
**labor [1]** 14:49/21
**laches [8]** 14:38/5 14:40/13
14:42/17 14:42/21 14:46/6
14:46/12 14:49/16 14:54/2
**lack [3]** 14:39/15 14:101/8
14:101/8
**ladies [6]** 14:6/5 14:31/9
14:31/18 14:32/5 14:33/22
14:58/16
**laid [3]** 14:105/2 14:106/16
14:110/4
**language [11]** 14:44/2 14:64/13
14:64/23 14:65/22 14:67/3
14:67/9 14:72/21 14:85/20
14:85/23 14:86/9 14:88/11
**laptops [3]** 14:50/1 14:50/2
14:56/18
**LARA [1]** 1:2/8
**large [1]** 14:65/14
**last [13]** 14:10/10 14:79/13
14:80/18 14:84/3 14:85/1
14:85/11 14:85/25 14:86/15
14:86/15 14:100/8 14:112/1
14:112/10 14:112/20
**later [8]** 14:32/16 14:42/8
14:44/9 14:45/21 14:45/25
14:94/22 14:117/14 14:117/17
**Laughter [1]** 14:102/10
**law [63]** 14:34/11 14:35/3
14:35/17 14:37/1 14:38/19
14:40/12 14:40/14 14:40/18
14:41/1 14:41/1 14:41/16
14:41/25 14:42/3 14:42/7
14:42/18 14:43/15 14:45/3
14:46/13 14:47/13 14:47/24
14:49/3 14:49/5 14:49/11
14:49/16 14:49/22 14:51/10
14:56/12 14:58/20 14:58/25
14:61/7 14:62/8 14:62/12
14:62/15 14:63/18 14:64/16
14:65/2 14:66/11 14:67/11

14:69/24 14:70/8 14:70/13
14:77/22 14:77/22 14:80/21
14:80/20 14:84/7 14:85/15
14:85/18 14:86/18 14:86/23
14:86/24 14:87/12 14:87/13
14:88/7 14:89/9 14:90/11
14:91/2 14:91/10 14:91/24
14:118/18
**laws [1]** 14:89/4
**lawsuit [1]** 14:55/10
**lawsuits [1]** 14:42/12
**lawyer [1]** 14:28/24
**lawyers [2]** 14:54/19 14:57/1
**lay [1]** 14:110/12
**Learn [1]** 14:25/7
**learned [2]** 14:59/13 14:59/13
**learners [1]** 14:92/25
**least [5]** 14:13/23 14:50/8
14:51/21 14:107/2 14:108/2
**leave [5]** 14:20/7 14:25/3
14:94/6 14:118/7 14:119/6
**Ledbetter [1]** 14:82/5
**left [10]** 14:11/15 14:21/23
14:22/6 14:22/8 14:22/9 14:24/5
14:25/1 14:25/3 14:25/10
14:51/22
**left-hand [6]** 14:11/15 14:21/23
14:22/6 14:25/1 14:25/3
14:25/10
**lends [1]** 14:108/25
**Leon [1]** 1:2/6
**let [8]** 14:33/23 14:34/19
14:56/10 14:56/11 14:60/6
14:92/2 14:93/21 14:118/18
**let's [30]** 14:6/2 14:9/17
14:10/14 14:15/3 14:15/3
14:20/7 14:20/19 14:20/19
14:20/20 14:22/6 14:22/8
14:23/1 14:24/8 14:25/3 14:26/7
14:27/6 14:31/22 14:33/23
14:47/22 14:50/13 14:50/13
14:51/1 14:53/10 14:60/14
14:64/6 14:68/13 14:70/4
14:86/14 14:93/20 14:110/24
**letter [7]** 14:116/6 14:116/17
14:116/22 14:117/1 14:117/4
14:117/19 14:117/23
**letters [1]** 14:44/2
**liabilities [1]** 14:78/20
**Liability [3]** 14:78/25 14:80/6
14:80/12
**liable [1]** 14:78/20
**lifetime [1]** 14:99/25
**light [2]** 14:35/3 14:37/17
**like [25]** 14:8/5 14:8/8
14:12/23 14:24/3 14:24/18
14:29/18 14:37/4 14:37/7
14:38/11 14:38/16 14:48/1
14:49/15 14:56/2 14:56/10
14:58/23 14:69/25 14:73/20
14:77/20 14:78/23 14:81/8
14:87/21 14:91/23 14:96/21
14:97/14 14:103/21
**limine [1]** 14:100/20
**limitations [12]** 14:38/5
14:40/13 14:40/20 14:41/4
14:41/9 14:41/14 14:42/20
14:41/23 14:42/1 14:42/4
14:49/17 14:85/4
**limited [5]** 14:44/6 14:44/9
14:78/25 14:80/6 14:80/11
**line [7]** 14:7/10 14:7/10

**L**

line... **[5]**   14:16/10 14:17/4
14:20/9 14:25/16 14:86/4
**Line 15 [1]**   14:7/10
**Line 51 [1]**   14:20/9
**lines [8]**   14:9/8 14:18/14
14:22/19 14:22/19 14:43/8
14:97/15 14:101/17 14:103/1
**Lisaraw [1]**   14:8/18
**Lisarow [3]**   14:8/19 14:8/20
14:17/9
**list [15]**   14:50/3 14:51/3
14:52/7 14:52/13 14:52/15
14:52/16 14:52/16 14:52/17
14:56/16 14:57/1 14:57/4
14:57/4 14:57/5 14:60/11
14:60/13
**litigation [3]**   14:30/21
14:104/14 14:104/22
**little [6]**   14:11/10 14:11/15
14:21/4 14:35/6 14:36/18
14:47/22
**lived [3]**   14:21/9 14:21/10
14:21/10
**lives [1]**   14:21/18
**Liz [1]**   14:58/7
**LLC [12]**   14:65/16 14:74/6
14:74/21 14:78/18 14:79/1
14:79/6 14:79/7 14:79/13
14:79/15 14:79/19 14:79/24
14:80/22
**LLC's [2]**   14:79/5 14:79/8
**LLP [5]**   1:1/15 1:1/18 1:2/2
1:2/5 1:2/10
**locate [1]**   14:67/16
**location [1]**   14:81/21
**log [5]**   14:96/14 14:103/16
14:113/5 14:113/9 14:113/21
**Logan [1]**   14:87/16
**long [6]**   14:8/3 14:8/8 14:10/8
14:46/17 14:54/20 14:60/12
**longer [2]**   14:21/15 14:62/22
**look [16]**   14:35/3 14:37/11
14:38/23 14:41/8 14:43/10
14:43/17 14:43/18 14:46/15
14:49/17 14:57/18 14:71/22
14:78/6 14:88/18 14:90/13
14:92/6 14:109/20
**looked [3]**   14:8/1 14:49/5
14:112/7
**looking [11]**   14:7/23 14:10/24
14:11/12 14:22/19 14:23/10
14:23/14 14:25/12 14:27/17
14:44/20 14:46/11 14:57/15
**Lookup [4]**   14:20/20 14:25/2
14:26/25 14:30/12
**lose [1]**   14:92/13
**loss [2]**   14:64/18 14:111/15
**losses [1]**   14:66/20
**lost [3]**   14:54/5 14:54/7
14:54/9
**lot [6]**   14:5/5 14:8/9 14:29/18
14:55/2 14:56/25 14:108/9
**lunch [5]**   14:6/7 14:93/19
14:93/21 14:94/18 14:94/21
**Lynn [3]**   14:4/12 14:4/15
14:97/8
**Lytal [1]**   14:67/22

**M**

**machine [1]**   14:8/21
**machines [1]**   14:32/14

**made [10]**   14:23/4 14:36/10
14:73/25 14:90/25 14:93/6
14:93/7 14:100/8 14:104/20
14:111/21 14:112/7
**maintain [1]**   14:87/21
**make [23]**   14:4/9 14:23/18
14:24/24 14:33/10 14:33/15
14:34/8 14:34/15 14:37/4
14:40/5 14:52/20 14:54/17
14:56/15 14:58/7 14:59/3
14:59/4 14:59/6 14:59/9
14:91/14 14:95/3 14:112/12
14:112/12 14:116/18 14:118/1
**makes [3]**   14:50/9 14:53/9
14:84/7
**making [5]**   14:51/5 14:72/3
14:94/1 14:94/1 14:109/14
**Malaysia [2]**   14:8/22 14:17/9
**managed [2]**   14:79/5 14:79/8
**many [4]**   14:8/5 14:43/4 14:85/8
14:92/25
**March [2]**   14:18/13 14:99/18
**March 11th [1]**   14:99/18
**March 16th [1]**   14:18/13
**MARIE [1]**   1:2/8
**mark [3]**   14:27/7 14:28/1
14:29/23
**marked [6]**   14:23/21 14:24/10
14:26/8 14:27/9 14:28/3 14:30/1
**market [2]**   14:70/22 14:71/20
**marking [1]**   14:24/17
**marriage [8]**   14:4/12 14:4/16
14:4/25 14:5/1 14:5/4 14:5/10
14:5/11 14:5/14
**mask [1]**   14:36/1
**match [1]**   14:26/25
**matches [1]**   14:30/12
**matching [1]**   14:30/14
**matter [29]**   14:5/6 14:34/11
14:35/2 14:35/17 14:37/1
14:40/12 14:40/14 14:40/18
14:41/25 14:42/3 14:42/7
14:42/18 14:45/3 14:55/17
14:62/12 14:62/15 14:63/18
14:66/18 14:77/22 14:82/11
14:86/23 14:86/24 14:95/6
14:101/6 14:101/7 14:101/19
14:104/1 14:107/5 14:120/5
**Matthews [6]**   14:40/24 14:40/24
14:43/7 14:43/8 14:43/22
14:43/22
**MAXWELL [4]**   1:2/4 14:34/20
14:40/9 14:62/5
**may [38]**   14:7/11 14:7/12 14:9/2
14:9/11 14:9/11 14:9/22 14:17/2
14:17/15 14:22/20 14:22/21
14:23/13 14:24/14 14:28/20
14:28/21 14:31/1 14:31/17
14:32/20 14:34/19 14:34/24
14:44/7 14:54/5 14:54/7
14:65/12 14:66/11 14:74/24
14:83/19 14:100/18 14:107/2
14:108/12 14:108/20 14:110/5
14:111/18 14:111/23 14:111/23
14:114/24 14:114/24 14:117/9
14:119/1
**May 6th [1]**   14:100/18
**maybe [5]**   14:21/4 14:36/17
14:72/18 14:93/20 14:93/21
**MCGOVERN [6]**   1:2/8 14:58/2
14:94/8 14:94/12 14:95/10
14:117/6
**me [20]**   14:8/10 14:33/23

14:35/10 14:43/21 14:47/5
14:73/25 14:73/25 14:81/25
14:92/2 14:93/21 14:102/23
14:104/17 14:109/19 14:109/19
14:117/11 14:117/12 14:118/18
**mean [12]**   14:4/23 14:8/3
14:41/8 14:79/6 14:99/7
14:100/11 14:106/23 14:107/19
14:107/23 14:109/25 14:111/17
14:116/23
**meaning [1]**   14:113/17
**means [3]**   14:11/18 14:11/20
14:64/11
**meant [1]**   14:99/5
**measure [9]**   14:61/6 14:70/22
14:71/24 14:73/19 14:74/10
14:75/9 14:75/12 14:76/20
14:77/6
**measured [15]**   14:36/12 14:37/6
14:38/13 14:39/3 14:39/6
14:45/12 14:61/13 14:69/16
14:70/12 14:70/25 14:71/3
14:71/7 14:71/19 14:76/21
14:77/6
**measurement [1]**   14:38/13
**measurements [2]**   14:36/12
14:37/22
**measures [1]**   14:112/4
**measuring [2]**   14:74/25 14:75/3
**meet [1]**   14:68/12
**meeting [2]**   14:27/4 14:66/1
**meets [1]**   14:114/7
**member [2]**   14:78/23 14:79/11
**members [1]**   14:79/9
**mention [1]**   14:88/3
**mentioned [6]**   14:14/20 14:97/13
14:97/21 14:97/24 14:98/3
14:109/21
**mere [4]**   14:84/5 14:84/20
14:85/16 14:86/9
**merely [1]**   14:108/18
**merits [1]**   14:4/20
**message [1]**   14:19/1
**MESTRE [3]**   1:2/5 1:2/7 1:2/10
**met [2]**   14:64/17 14:68/11
**meta [1]**   14:11/19
**metadata [7]**   14:11/9 14:11/18
14:11/20 14:12/3 14:12/19
14:12/24 14:24/2
**Miami [3]**   1:1/10 1:1/16 1:1/21
**MICHAEL [2]**   1:2/11 14:54/21
**microphone [1]**   14:36/16
**Middle [1]**   14:82/5
**might [5]**   14:30/13 14:36/17
14:48/22 14:55/16 14:105/18
**million [3]**   14:14/5 14:15/6
14:16/19
**mind [6]**   14:10/9 14:20/25
14:54/17 14:95/14 14:102/24
14:113/16
**minds [1]**   14:66/2
**mine [2]**   14:55/7 14:55/19
**mined [3]**   14:15/6 14:15/13
14:16/18
**minimum [1]**   14:86/24
**mining [9]**   14:8/21 14:15/9
14:16/3 14:16/4 14:16/17
14:17/9 14:31/24 14:32/9
14:32/16
**minute [5]**   14:33/23 14:50/13
14:53/11 14:93/15 14:115/22
**minutes [15]**   14:10/6 14:48/2

**M**

minutes... **[13]** 14:50/8 14:53/3
14:53/13 14:56/9 14:92/5
14:92/8 14:92/9 14:92/13
14:93/24 14:94/2 14:94/15
14:95/5 14:95/6
misappropriated **[1]** 14:89/22
misappropriation **[1]** 14:45/9
mischaracterizes **[1]** 14:8/24
misheard **[1]** 14:117/18
misleading **[1]** 14:78/21
misrepresenting **[1]** 14:117/22
missed **[1]** 14:73/12
missing **[1]** 14:54/22
Misstates **[1]** 14:8/24
misstating **[1]** 14:25/22
Mitchell **[2]** 14:61/14 14:63/12
model **[2]** 14:80/18 14:80/20
moment **[10]** 14:18/15 14:24/20
14:31/1 14:33/12 14:66/5
14:75/24 14:114/22 14:114/22
14:117/15 14:117/22
moments **[1]** 14:17/10
Monday **[4]** 1:1/11 14:4/1
14:50/21 14:59/6
monetary **[2]** 14:89/21 14:91/4
money **[16]** 14:81/13 14:81/13
14:81/16 14:81/19 14:81/20
14:82/10 14:82/12 14:82/13
14:82/20 14:82/20 14:82/21
14:82/23 14:83/1 14:83/5
14:83/10 14:83/12
monitor **[2]** 14:96/6 14:96/23
Montgomery **[1]** 1:2/3
month **[2]** 14:13/19 14:43/25
months **[2]** 14:13/3 14:44/10
Moody **[3]** 14:70/21 14:72/7
14:72/12
more **[9]** 14:9/17 14:35/14
14:52/21 14:64/12 14:66/12
14:67/5 14:70/14 14:71/22
14:76/14
morning **[19]** 14:6/16 14:6/23
14:8/16 14:20/4 14:25/20
14:34/13 14:40/1 14:48/9
14:48/11 14:48/23 14:51/22
14:58/6 14:58/12 14:58/24
14:59/9 14:59/16 14:93/4
14:118/23 14:119/7
most **[2]** 14:35/4 14:37/17
motion **[39]** 14:33/10 14:33/14
14:33/17 14:34/5 14:34/8
14:34/9 14:34/11 14:34/20
14:34/25 14:35/2 14:35/9
14:35/25 14:36/5 14:36/25
14:36/25 14:37/11 14:37/13
14:38/22 14:39/11 14:40/5
14:40/6 14:40/11 14:42/5
14:42/10 14:45/3 14:47/20
14:49/9 14:49/15 14:51/13
14:56/2 14:56/6 14:62/11
14:62/15 14:63/18 14:77/22
14:83/22 14:86/22 14:86/23
14:100/20
motions **[1]** 14:82/16
move **[22]** 14:22/8 14:24/18
14:26/9 14:27/7 14:28/1
14:29/23 14:42/17 14:48/19
14:50/24 14:59/23 14:59/24
14:64/6 14:68/13 14:69/25
14:103/15 14:103/21 14:104/2
14:104/14 14:110/17 14:110/24

14:111/1 14:111/6
14:111/12 14:115/25
moving **[4]** 14:48/3 14:75/22
14:89/14 14:107/5
Mr **[26]** 14:6/16 14:8/17 14:10/9
14:8/13 14:33/19 14:34/5
14:40/7 14:48/13 14:52/23
14:53/1 14:60/4 14:60/21
14:61/10 14:62/7 14:69/18
14:94/7 14:95/9 14:95/17
14:96/16 14:100/3 14:107/18
14:109/10 14:109/13 14:109/16
14:114/14 14:115/24
Mr. **[21]** 14:34/5 14:36/1
14:36/15 14:36/16 14:38/1
14:39/24 14:40/7 14:41/17
14:43/1 14:45/17 14:46/5
14:47/2 14:47/10 14:53/21
14:54/3 14:61/9 14:62/21
14:65/6 14:80/1 14:80/10
14:98/1
Mr. David **[1]** 14:54/3
Mr. Fernandez **[8]** 14:34/5
14:36/1 14:36/15 14:36/16
14:38/1 14:39/24 14:47/2
14:53/21
Mr. Ira **[1]** 14:45/17
Mr. Kleiman **[6]** 14:41/17
14:61/9 14:62/21 14:80/1
14:80/10 14:98/1
Mr. Pritt **[5]** 14:40/7 14:43/1
14:46/5 14:47/10 14:65/6
Ms **[5]** 14:58/2 14:94/8 14:94/12
14:95/10 14:117/6
Ms. **[44]** 14:4/15 14:4/17 14:7/8
14:9/4 14:9/10 14:9/15 14:10/13
14:11/1 14:11/2 14:15/2
14:15/24 14:16/11 14:17/12
14:17/14 14:17/19 14:17/21
14:18/12 14:18/19 14:18/21
14:19/6 14:20/6 14:20/9
14:20/19 14:20/24 14:21/3
14:22/5 14:22/17 14:22/25
14:23/8 14:23/10 14:23/18
14:24/15 14:24/24 14:25/1
14:26/4 14:26/20 14:27/5
14:27/14 14:27/24 14:28/11
14:29/21 14:30/5 14:76/9
14:83/24
Ms. Fernandez **[2]** 14:76/9
14:83/24
Ms. Lynn **[1]** 14:4/15
Ms. Vela **[40]** 14:7/8 14:9/6
14:9/10 14:9/15 14:10/13
14:11/1 14:11/2 14:15/2
14:15/24 14:16/11 14:17/12
14:17/14 14:17/19 14:17/21
14:18/12 14:18/19 14:18/21
14:19/6 14:20/6 14:20/9
14:20/19 14:20/24 14:21/3
14:22/5 14:22/17 14:22/25
14:23/8 14:23/10 14:23/18
14:24/15 14:24/24 14:25/1
14:26/4 14:26/20 14:27/5
14:27/14 14:27/24 14:28/11
14:29/21 14:30/5
Ms. Watts **[1]** 14:4/17
much **[11]** 14:8/3 14:8/6
14:36/20 14:36/22 14:43/14
14:48/24 14:52/5 14:92/4
14:92/5 14:93/12 14:94/20
must **[6]** 14:37/11 14:66/14
14:81/13 14:84/5 14:84/19

14:84/20
14:110/24
my **[17]** 14:6/20 14:13/20
14:19/20 14:19/23 14:24/4
14:24/4 14:32/12 14:32/12
14:34/20 14:44/24 14:49/2
14:50/14 14:52/8 14:56/8
14:88/18 14:88/19 14:118/24
myself **[1]** 14:96/18

**N**

Nakamoto's **[1]** 14:7/22
name **[2]** 14:19/21 14:47/3
National **[1]** 14:71/5
native **[13]** 14:23/16 14:23/19
14:23/25 14:24/2 14:24/12
14:24/16 14:25/3 14:26/4
14:26/5 14:27/6 14:28/9
14:28/18 14:29/22
natives **[1]** 14:23/16
nature **[1]** 14:91/13
near **[1]** 14:21/18
nearly **[2]** 14:8/8 14:54/4
necessarily **[1]** 14:12/1
necessary **[2]** 14:67/10 14:85/3
need **[20]** 14:31/14 14:33/18
14:50/7 14:50/21 14:52/13
14:52/23 14:56/23 14:60/11
14:61/12 14:63/1 14:64/17
14:65/24 14:67/24 14:68/11
14:80/7 14:90/2 14:91/6
14:119/2 14:119/6 14:119/8
needed **[1]** 14:8/9
needs **[2]** 14:66/1 14:69/5
neither **[4]** 14:14/13 14:95/3
14:95/5 14:97/18
never **[8]** 14:14/6 14:24/6
14:44/25 14:47/14 14:97/13
14:97/21 14:98/3 14:113/22
new **[10]** 1:1/19 1:1/19 1:2/11
1:2/11 14:25/8 14:32/16
14:45/25 14:88/15 14:88/17
14:107/7
Newburger **[1]** 14:70/24
newly **[1]** 14:91/24
next **[33]** 14:32/21 14:42/14
14:58/19 14:59/6 14:64/6
14:68/14 14:70/1 14:73/2
14:73/2 14:78/16 14:79/4
14:81/3 14:83/17 14:83/18
14:84/1 14:84/2 14:86/13
14:87/6 14:87/19 14:97/1
14:98/14 14:98/15 14:99/16
14:100/16 14:101/15 14:101/25
14:103/10 14:103/15 14:103/21
14:103/22 14:104/9 14:110/17
14:111/1
Nguyen **[1]** 14:19/12
nice **[1]** 14:119/9
nine **[1]** 14:116/10
no **[87]** 1:1/7 1:1/25 14:4/14
14:8/9 14:8/11 14:11/23
14:11/25 14:12/4 14:12/6
14:12/10 14:12/14 14:12/19
14:12/21 14:13/1 14:13/6
14:13/9 14:14/3 14:14/22
14:15/15 14:16/6 14:20/2
14:21/24 14:22/4 14:24/21
14:25/2 14:25/3 14:25/5 14:25/5
14:25/22 14:25/25 14:26/2
14:26/12 14:27/4 14:28/10
14:30/2 14:30/24 14:31/4
14:32/1 14:32/2 14:32/19

**N**

**no...** **[47]**   14:33/20 14:33/21
14:35/17 14:42/18 14:42/22
14:45/21 14:45/25 14:47/9
14:55/18 14:55/19 14:57/7
14:57/8 14:60/10 14:60/10
14:62/10 14:62/22 14:63/20
14:69/22 14:69/24 14:70/3
14:70/3 14:77/3 14:77/19
14:78/15 14:80/17 14:81/15
14:83/14 14:83/24 14:83/25
14:87/20 14:89/13 14:91/9
14:91/17 14:100/13 14:104/5
14:105/5 14:108/18 14:109/2
14:115/19 14:115/19 14:115/25
14:116/1 14:117/17 14:118/15
14:118/17 14:119/5 14:120/12
**Nobody** **[1]**   14:109/1
**nondisclosure** **[4]**   14:84/5
14:84/20 14:85/16 14:86/9
**none** **[3]**   14:55/8 14:91/22
14:100/13
**nonmovant** **[1]**   14:37/17
**Nope** **[1]**   14:9/19
**normal** **[2]**   14:100/6 14:101/11
**normally** **[2]**   14:55/6 14:106/16
**not** **[131]**
**note** **[2]**   14:16/24 14:92/17
**noted** **[5]**   14:16/9 14:19/25
14:37/23 14:37/24 14:45/2
**nothing** **[4]**   14:13/2 14:35/15
14:44/16 14:103/14
**noting** **[1]**   14:46/17
**November** **[7]**   1:1/11 14:4/1
14:45/5 14:45/22 14:45/25
14:46/3 14:120/7
**November 4th** **[4]**   14:45/5
14:45/22 14:45/25 14:46/3
**now** **[39]**   14:4/14 14:7/19 14:8/3
14:10/16 14:17/6 14:20/7
14:22/8 14:23/18 14:24/8
14:34/7 14:35/7 14:36/9
14:36/19 14:37/7 14:38/12
14:39/8 14:40/17 14:40/23
14:43/5 14:44/5 14:44/13
14:46/14 14:47/22 14:49/25
14:51/7 14:57/3 14:57/3 14:60/9
14:61/5 14:61/7 14:68/16
14:70/20 14:82/25 14:85/23
14:89/17 14:92/7 14:101/3
14:105/18 14:117/19
**number** **[24]**   14:5/3 14:9/7
14:24/6 14:25/24 14:32/10
14:40/19 14:42/9 14:48/14
14:49/14 14:49/14 14:52/15
14:53/8 14:63/17 14:80/20
14:81/6 14:81/8 14:81/11
14:81/20 14:83/19 14:90/19
14:108/16 14:108/22 14:108/23
14:109/19
**Number 1** **[2]**   14:48/14 14:83/19
**Number 19** **[1]**   14:63/17
**Number 2** **[1]**   14:81/6
**Number 3** **[2]**   14:81/8 14:81/11
**Number 6** **[1]**   14:25/24
**Number 60** **[1]**   14:40/19
**Number 68** **[1]**   14:42/9
**numbers** **[4]**   14:52/15 14:57/5
14:57/7 14:102/14

**O**

**o'clock** **[2]**   14:50/15 14:119/8

**oath** **[1]**   14:22/12
**objected** **[1]**   14:97/21
**objection** **[61]**   14:8/24 14:14/9
14:14/9 14:14/24 14:15/16
14:16/8 14:16/9 14:17/3
14:24/19 14:24/21 14:26/11
14:26/12 14:27/10 14:27/11
14:28/5 14:28/10 14:28/14
14:30/2 14:32/1 14:32/2
14:68/14 14:73/2 14:73/11
14:76/14 14:78/14 14:78/15
14:81/3 14:83/17 14:83/24
14:84/1 14:86/13 14:87/19
14:95/18 14:98/3 14:99/19
14:100/3 14:100/5 14:100/8
14:101/4 14:101/9 14:103/6
14:103/18 14:103/19 14:105/7
14:105/10 14:105/19 14:106/10
14:106/15 14:106/25 14:107/1
14:107/10 14:108/7 14:109/15
14:110/14 14:110/23 14:111/8
14:111/21 14:112/18 14:114/5
14:114/7 14:114/12
**objection's** **[1]**   14:114/1
**objections** **[16]**   14:51/9 14:56/5
14:60/18 14:60/22 14:65/10
14:65/11 14:75/23 14:77/19
14:78/2 14:87/20 14:87/21
14:89/11 14:89/15 14:91/18
14:93/7 14:104/4
**Obstfeld** **[1]**   14:66/23
**obtain** **[1]**   14:55/11
**obvious** **[1]**   14:5/16
**obviously** **[7]**   14:24/5 14:47/23
14:48/11 14:92/15 14:94/4
14:113/8 14:118/4
**occurred** **[5]**   14:45/10 14:45/20
14:75/4 14:75/6 14:75/7
**occurring** **[1]**   14:43/5
**occurs** **[1]**   14:71/7
**October** **[1]**   14:111/4
**October 24th** **[1]**   14:111/4
**off** **[3]**   14:10/2 14:10/5
14:25/21
**offhand** **[1]**   14:46/14
**office** **[4]**   14:14/3 14:14/5
14:14/21 14:51/22
**officer** **[1]**   14:31/16
**Official** **[1]**   1:1/25
**oh** **[18]**   14:19/12 14:21/20
14:23/11 14:25/7 14:28/19
14:34/24 14:34/24 14:40/2
14:40/4 14:60/8 14:60/9
14:60/12 14:97/4 14:102/15
14:102/17 14:102/20 14:103/13
14:112/19
**okay** **[54]**   14:6/2 14:10/12
14:12/12 14:17/8 14:19/19
14:24/9 14:25/7 14:25/9 14:32/3
14:36/23 14:51/1 14:58/2
14:58/10 14:68/13 14:70/4
14:70/18 14:70/19 14:72/9
14:72/16 14:73/7 14:75/15
14:76/15 14:76/18 14:76/25
14:78/13 14:81/10 14:82/3
14:83/17 14:86/13 14:88/1
14:90/12 14:91/21 14:92/14
14:92/15 14:95/16 14:95/25
14:96/13 14:96/20 14:98/12
14:102/5 14:102/7 14:102/17
14:102/20 14:102/22 14:103/10

14:103/14 14:103/17 14:110/7
14:110/13 14:110/14 14:110/17
14:115/9 14:118/7 14:119/9
**old** **[1]**   14:32/14
**older** **[1]**   14:46/16
**omission** **[1]**   14:83/20
**omissions** **[1]**   14:84/23
**omitted** **[1]**   14:83/19
**once** **[4]**   14:12/8 14:31/14
14:56/18 14:63/7
**one** **[73]**   1:1/16 14:4/6 14:6/22
14:6/22 14:7/6 14:8/9 14:8/11
14:9/17 14:18/15 14:19/11
14:19/18 14:20/25 14:21/19
14:21/19 14:21/20 14:21/20
14:21/21 14:24/6 14:24/20
14:25/10 14:29/19 14:37/18
14:41/3 14:46/23 14:48/7
14:50/3 14:51/3 14:52/3
14:54/18 14:56/22 14:62/1
14:63/1 14:63/20 14:65/11
14:66/5 14:70/1 14:75/24
14:76/14 14:78/11 14:78/22
14:84/2 14:86/15 14:88/2
14:93/19 14:96/13 14:96/14
14:96/19 14:96/19 14:97/20
14:98/14 14:98/23 14:100/8
14:102/23 14:103/10 14:103/13
14:103/15 14:103/21 14:103/22
14:104/9 14:105/5 14:105/8
14:106/6 14:108/10 14:108/17
14:108/19 14:110/21 14:111/1
14:112/3 14:112/3 14:114/22
14:114/22 14:115/16 14:116/2
**one-hour** **[1]**   14:93/19
**ones** **[4]**   14:29/20 14:32/12
14:87/22 14:108/20
**only** **[19]**   14:8/4 14:8/6
14:11/18 14:11/20 14:12/8
14:12/15 14:36/2 14:38/25
14:39/1 14:46/19 14:47/12
14:49/20 14:76/7 14:84/8
14:86/16 14:114/7 14:116/7
14:116/9 14:117/2
**Onofrio** **[2]**   14:41/12 14:41/15
**open** **[3]**   14:5/21 14:95/4
14:103/24
**open-source** **[1]**   14:103/24
**opened** **[2]**   14:4/15 14:4/24
**opening** **[3]**   14:23/3 14:92/3
14:92/5
**opens** **[1]**   14:5/4
**operations** **[1]**   14:13/15
**opined** **[1]**   14:19/15
**opponent** **[8]**   14:96/9 14:98/18
14:99/13 14:100/2 14:101/2
14:101/17 14:104/2 14:111/6
**opportunity** **[20]**   14:49/23
14:51/9 14:56/15 14:57/25
14:58/22 14:59/1 14:84/11
14:84/18 14:85/20 14:85/24
14:88/22 14:92/23 14:95/16
14:100/7 14:101/5 14:106/14
14:108/5 14:109/2 14:118/21
14:118/25
**opposed** **[1]**   14:65/7
**opposition** **[10]**   14:35/19
14:40/17 14:62/11 14:63/17
14:64/1 14:72/11 14:74/3
14:74/22 14:77/8 14:86/22
**oral** **[12]**   14:64/15 14:64/16
14:65/7 14:65/13 14:66/10
14:66/11 14:66/14 14:66/19

Q

oral... **[4]**   14:67/10  14:67/16
 14:67/25  14:68/10
**order [11]**   14:34/13  14:35/13
 14:37/16  14:62/14  14:62/14
 14:64/1  14:72/12  14:80/13
 14:83/22  14:89/3  14:96/15
**originated [1]**   14:19/25
**other [37]**   14:13/10  14:31/18
 14:39/1  14:41/10  14:43/8
 14:47/8  14:57/24  14:63/1
 14:63/21  14:65/10  14:67/13
 14:68/21  14:68/24  14:72/14
 14:72/14  14:78/23  14:82/23
 14:84/10  14:84/18  14:86/2
 14:86/2  14:86/4  14:87/20
 14:91/18  14:95/4  14:95/22
 14:97/15  14:97/23  14:100/13
 14:108/13  14:108/19  14:108/20
 14:111/4  14:114/7  14:115/16
 14:117/3  14:118/13
**others [4]**   14:29/18  14:79/3
 14:79/7  14:96/5
**otherwise [5]**   14:30/16  14:42/14
 14:42/15  14:57/25  14:61/19
**our [53]**   14:17/6  14:17/6
 14:22/8  14:25/2  14:34/10
 14:34/25  14:35/19  14:36/4
 14:36/25  14:39/1  14:39/2
 14:40/11  14:40/17  14:45/2
 14:52/6  14:62/11  14:63/17
 14:63/25  14:64/14  14:64/20
 14:65/11  14:65/25  14:66/4
 14:72/11  14:72/24  14:74/3
 14:74/22  14:77/8  14:77/21
 14:77/22  14:77/23  14:81/23
 14:85/16  14:85/17  14:86/11
 14:86/22  14:86/23  14:87/21
 14:87/21  14:88/4  14:88/9
 14:93/18  14:93/19  14:94/21
 14:96/3  14:97/16  14:98/3
 14:101/9  14:104/4  14:107/10
 14:112/2  14:112/13  14:116/14
**ours [1]**   14:57/22
**out [12]**   14:4/4  14:22/6  14:34/1
 14:35/19  14:52/21  14:59/19
 14:74/5  14:85/11  14:93/18
 14:93/22  14:107/24  14:113/1
**out-of-pocket [1]**   14:74/5
**outcome [1]**   14:108/4
**outcomes [1]**   14:16/16
**outline [1]**   14:37/16
**outside [4]**   14:15/19  14:42/4
 14:79/6  14:79/7
**outweighed [1]**   14:5/23
**over [8]**   14:30/22  14:66/21
 14:81/14  14:87/22  14:88/16
 14:96/5  14:105/12  14:113/14
**overarching [1]**   14:37/20
**overlooked [1]**   14:55/9
**overrule [2]**   14:107/1
**overruled [5]**   14:9/1  14:14/14
 14:14/25  14:16/9  14:101/22
**oversight [2]**   14:97/16  14:97/18
**overturned [1]**   14:47/14
**overwritten [1]**   14:54/12
**owe [1]**   14:78/23
**owed [1]**   14:81/14
**owes [1]**   14:78/22
**own [5]**   14:44/25  14:82/20
 14:83/3  14:99/2  14:99/2
**owners [2]**   14:67/5  14:78/19

**ownership [3]**   14:64/18  14:66/3
 14:66/25  14:67/3

P

**P-002 [1]**   14:17/22
**P-156 [1]**   14:26/5
**P-156.1 [5]**   14:26/7  14:26/8
 14:26/10  14:26/14  14:27/6
**P-157 [1]**   14:27/6
**P-157.1 [5]**   14:27/7  14:27/9
 14:27/13  14:27/17  14:27/24
**P-160 [9]**   14:22/9  14:23/1
 14:23/10  14:23/15  14:23/16
 14:23/25  14:24/1  14:25/1
 14:26/5
**P-160.1 [4]**   14:24/9  14:24/10
 14:24/18  14:24/23
**P-2 [1]**   14:17/22
**P-320 [1]**   14:15/3
**P-56.1 [1]**   14:26/10
**P-727 [3]**   14:27/25  14:28/6
 14:28/8
**P-727.1 [5]**   14:28/1  14:28/3
 14:28/4  14:28/15  14:28/23
**P-733 [1]**   14:29/22
**P-733-point [1]**   14:29/22
**P-733.1 [4]**   14:29/23  14:30/1
 14:30/4  14:30/6
**P-807 [2]**   14:19/6  14:19/9
**P-83 [1]**   14:41/17
**P-856 [6]**   14:18/21  14:19/7
 14:19/18  14:21/23  14:22/5
 14:25/2
**P-856.1 [3]**   14:20/6  14:20/8
 14:20/20
**P-856.2 [2]**   14:20/21  14:22/8
**p.m [4]**   14:4/1  14:53/15
 14:53/16  14:119/12
**PA [1]**   14:41/13
**pad [1]**   14:6/20
**page [41]**   1:1/24  1:3/3  14:6/24
 14:7/2  14:7/5  14:7/10  14:7/10
 14:8/11  14:9/8  14:15/3  14:15/24
 14:16/12  14:18/14  14:22/18
 14:23/1  14:61/1  14:61/2
 14:62/12  14:64/8  14:64/8
 14:66/10  14:68/17  14:70/6
 14:73/4  14:73/14  14:76/5
 14:76/10  14:76/17  14:77/10
 14:77/14  14:78/5  14:78/18
 14:81/5  14:83/18  14:83/18
 14:84/2  14:84/4  14:86/15
 14:89/17  14:89/18  14:113/2
**Page 15 [1]**   14:84/2
**Page 152 [1]**   14:18/14
**Page 16 [2]**   14:62/12  14:76/10
**Page 18 [2]**   14:73/14  14:86/15
**Page 194 [1]**   14:9/8
**Page 25 [1]**   14:16/12
**Page 5 [1]**   14:78/5
**Page 6 [1]**   14:76/5
**Page 7 [2]**   14:78/18  14:89/18
**Page 9 [3]**   14:61/2  14:64/8
 14:66/10
**pages [6]**   1:1/1  14:8/8  14:40/18
 14:61/20  14:72/11  14:77/8
**Paige [7]**   14:96/5  14:98/16
 14:98/21  14:98/24  14:99/10
 14:99/18  14:100/7
**palpable [1]**   14:55/24
**paper [4]**   14:8/4  14:8/11
 14:11/13  14:12/3
**papers [4]**   14:34/25  14:35/1

 14:36/4  14:39/1
 14:76/11  14:78/6  14:78/9
 14:79/13  14:80/18
**Paragraph 260 [1]**   14:15/25
**Paragraph 275 [1]**   14:15/4
**paragraphs [6]**   14:16/12
 14:78/10  14:78/12  14:85/1
 14:85/12  14:86/1
**Park [1]**   1:1/18
**part [9]**   14:12/16  14:13/16
 14:39/18  14:43/7  14:65/4
 14:65/14  14:106/6  14:107/10
 14:107/19
**particular [6]**   14:11/12
 14:11/21  14:19/25  14:29/19
 14:52/3  14:57/21
**particularly [4]**   14:37/5
 14:37/22  14:39/14  14:46/18
**parties [11]**   14:24/1  14:41/3
 14:47/24  14:49/4  14:51/9
 14:52/4  14:57/9  14:57/18
 14:60/15  14:86/3  14:93/2
**parties' [1]**   14:23/15
**partner [7]**   14:61/11  14:63/7
 14:63/22  14:66/16  14:69/10
 14:98/22  14:99/11
**partner's [3]**   14:63/5  14:63/5
 14:69/14
**partners [2]**   14:55/1  14:61/16
**partnership [50]**   14:13/22
 14:44/22  14:55/1  14:55/6
 14:55/18  14:55/19  14:60/25
 14:60/25  14:61/9  14:61/10
 14:61/11  14:61/14  14:61/18
 14:61/20  14:62/3  14:62/8
 14:62/22  14:62/23  14:62/25
 14:63/20  14:63/21  14:64/9
 14:64/11  14:64/13  14:64/15
 14:64/17  14:64/23  14:64/24
 14:65/5  14:65/7  14:65/8
 14:65/11  14:65/12  14:65/17
 14:65/19  14:66/10  14:66/11
 14:66/14  14:66/19  14:66/22
 14:67/6  14:67/10  14:67/17
 14:68/1  14:68/10  14:68/20
 14:68/21  14:68/25  14:69/22
 14:79/2
**parts [1]**   14:49/11
**party [14]**   14:18/16  14:18/16
 14:80/10  14:84/10  14:84/18
 14:96/9  14:98/18  14:99/13
 14:100/1  14:101/2  14:101/17
 14:101/17  14:104/2  14:111/6
**passed [2]**   14:61/9  14:62/21
**passes [1]**   14:69/10
**past [3]**   14:11/11  14:104/19
 14:113/12
**Patrick [8]**   14:96/5  14:98/16
 14:98/21  14:98/24  14:99/4
 14:99/10  14:99/18  14:100/7
**pattern [1]**   14:55/12
**payment [1]**   14:41/6
**PDF [5]**   14:7/21  14:23/10
 14:23/14  14:24/2  14:25/1
**pen [2]**   14:6/20  14:12/2
**Pence [3]**   1:1/25  14:120/11
 14:120/12
**Pence-Aviles [3]**   1:1/25
 14:120/11  14:120/12
**pending [3]**   14:49/15  14:51/12
 14:56/6
**people [3]**   14:5/7  14:5/16

P

people... [1] 14:13/23
Per [1] 14:13/19
perfect [2] 14:11/4 14:25/9
perhaps [5] 14:39/9 14:49/21
  14:53/5 14:55/15 14:93/15
period [13] 14:39/5 14:42/4
  14:44/1 14:45/10 14:45/11
  14:45/20 14:54/12 14:93/22
  14:98/22 14:100/1 14:100/19
  14:101/19 14:103/4
periods [1] 14:55/8
perjury [1] 14:109/23
permission [1] 14:59/21
permit [3] 14:5/24 14:33/5
  14:59/12
persists [1] 14:5/20
person [6] 14:41/5 14:44/5
  14:63/20 14:65/15 14:69/22
  14:83/11
person's [1] 14:44/8
personal [11] 14:13/20 14:15/8
  14:32/12 14:40/16 14:41/15
  14:41/18 14:43/11 14:44/8
  14:116/18 14:116/24 14:117/9
personally [2] 14:25/21
  14:78/20
persons [3] 14:64/12 14:66/12
  14:67/5
pertinent [2] 14:43/7 14:43/7
Phillips [1] 14:87/15
phone [2] 14:52/20 14:54/24
picture [5] 14:114/25 14:115/1
  14:115/3 14:115/9 14:115/13
piece [1] 14:12/3
Pin [5] 14:74/22 14:82/2
  14:82/6 14:84/13 14:84/24
place [3] 14:45/8 14:71/1
  14:109/24
plaintiff [8] 14:40/21 14:44/17
  14:50/16 14:57/5 14:80/7
  14:92/2 14:92/4 14:106/14
plaintiffs [44] 1:1/6 1:1/15
  1:2/2 14:4/6 14:6/1 14:33/3
  14:33/21 14:34/18 14:35/4
  14:35/18 14:38/7 14:40/4
  14:40/10 14:40/12 14:41/24
  14:42/18 14:42/23 14:44/24
  14:45/22 14:47/11 14:48/4
  14:58/18 14:62/4 14:62/6
  14:78/1 14:80/16 14:81/3
  14:85/4 14:90/4 14:90/16
  14:91/10 14:91/21 14:91/22
  14:92/23 14:104/20 14:107/11
  14:107/16 14:109/7 14:109/14
  14:112/24 14:112/25 14:112/25
  14:114/21 14:118/14
plaintiffs' [22] 1:3/7 14:24/5
  14:24/10 14:24/23 14:26/8
  14:26/14 14:27/9 14:27/13
  14:28/3 14:28/15 14:30/1
  14:30/4 14:35/5 14:35/13
  14:40/6 14:42/20 14:43/4
  14:47/20 14:93/16 14:105/4
  14:105/18 14:116/10
plaintiffs-produced [1]
  14:112/25
plan [2] 14:93/2 14:93/5
play [7] 14:9/6 14:17/12
  14:17/14 14:18/12 14:18/17
  14:18/19 14:94/16
played [3] 14:17/13 14:17/20

14:18/20
pleasant [3] 14:6/7 14:59/16
  14:119/5
pleasantly [1] 14:48/14
please [49] 14:6/6 14:7/9
  14:9/6 14:10/20 14:11/1 14:11/2
  14:11/19 14:15/2 14:15/4
  14:16/11 14:16/13 14:17/12
  14:17/15 14:17/19 14:17/21
  14:18/1 14:18/12 14:18/19
  14:18/21 14:19/6 14:20/7
  14:22/9 14:22/25 14:23/11
  14:23/17 14:23/19 14:24/8
  14:24/15 14:24/25 14:26/7
  14:27/5 14:28/12 14:29/22
  14:31/17 14:32/22 14:34/24
  14:36/1 14:53/19 14:58/17
  14:59/9 14:59/11 14:73/13
  14:97/4 14:103/11 14:103/15
  14:103/22 14:104/9 14:110/18
  14:111/2
plus [2] 14:13/10 14:87/22
pocket [1] 14:74/5
point [20] 14:5/22 14:24/4
  14:29/22 14:32/24 14:35/19
  14:39/2 14:48/17 14:50/19
  14:54/18 14:56/9 14:61/14
  14:63/15 14:69/21 14:72/17
  14:106/17 14:106/23 14:110/9
  14:111/25 14:113/16 14:117/8
points [3] 14:37/4 14:37/21
  14:38/11
Ponce [1] 1:2/6
portion [1] 14:18/22
position [11] 14:39/2 14:44/24
  14:44/25 14:85/18 14:97/16
  14:112/2 14:112/9 14:112/13
  14:113/7 14:116/10 14:116/14
positions [1] 14:86/2
possession [1] 14:61/17
possible [4] 14:16/23 14:48/24
  14:49/23 14:93/11
possibly [1] 14:89/24
post [4] 14:16/22 14:21/19
  14:47/13 14:82/15
post-2001 [1] 14:47/13
post-trial [1] 14:82/15
posts [1] 14:16/24
potential [1] 14:54/2
potentially [1] 14:78/21
Practice [1] 14:41/9
preclude [1] 14:119/3
precomplaint [1] 14:39/5
prefer [1] 14:36/9
preferable [1] 14:93/8
preference [2] 14:92/18 14:96/7
prejudice [8] 14:5/23 14:46/7
  14:46/8 14:46/17 14:46/25
  14:54/2 14:54/6 14:55/24
prejudiced [2] 14:5/16 14:42/19
prejudicial [3] 14:54/14
  14:57/23 14:89/5
preloaded [1] 14:52/12
prepare [3] 14:48/8 14:48/10
  14:93/9
presence [6] 14:4/4 14:6/4
  14:32/4 14:34/1 14:58/15
  14:59/19
present [7] 14:49/24 14:56/12
  14:58/22 14:58/25 14:96/6
  14:96/23 14:112/10
presentation [1] 14:113/9

presented [8] 14:39/19 14:46/6
  14:107/2 14:111/13 14:111/19
presenting [1] 14:49/19
preservation [3] 14:36/6
  14:37/2 14:119/4
preserve [2] 14:77/20 14:87/21
preserved [2] 14:49/11 14:77/24
press [1] 14:48/21
pressed [1] 14:107/16
presumably [3] 14:45/10
  14:45/20 14:45/21
pretty [1] 14:94/20
prevented [1] 14:12/23
previously [6] 14:6/10 14:40/19
  14:44/3 14:69/20 14:85/24
  14:88/3
price [2] 14:46/9 14:46/11
primarily [4] 14:96/3 14:96/9
  14:97/25 14:97/25
principle [2] 14:40/23 14:47/15
printed [7] 14:12/10 14:12/11
  14:12/13 14:12/14 14:12/15
  14:12/16 14:12/17
prior [6] 14:14/10 14:14/13
  14:90/16 14:99/21 14:101/9
  14:104/4
PRITT [11] 1:2/4 14:34/20
  14:40/7 14:40/9 14:43/1 14:46/5
  14:47/10 14:62/5 14:62/7
  14:65/6 14:69/18
Pritt's [1] 14:40/7
private [1] 14:7/23
privilege [8] 14:96/14
  14:103/16 14:113/5 14:113/9
  14:113/20 14:113/21 14:113/23
  14:117/9
privileged [2] 14:113/21
  14:113/25
probably [1] 14:102/18
probative [1] 14:5/22
problem [3] 14:102/13 14:104/18
  14:107/23
proceed [9] 14:7/11 14:22/20
  14:24/14 14:28/20 14:47/24
  14:56/3 14:60/14 14:93/2
  14:94/3
proceeding [3] 14:107/7
  14:109/23 14:119/7
proceedings [12] 14:4/4 14:6/4
  14:31/21 14:32/4 14:34/1
  14:42/9 14:53/16 14:58/15
  14:59/19 14:109/24 14:119/12
  14:120/5
produce [1] 14:106/14
produced [16] 14:30/22 14:30/24
  14:55/2 14:104/20 14:104/22
  14:105/11 14:105/12 14:105/22
  14:106/15 14:108/20 14:111/9
  14:111/19 14:112/24 14:112/25
  14:113/20 14:114/6
producing [2] 14:12/22 14:13/4
production [3] 14:23/15 14:24/1
  14:110/22
proffered [1] 14:49/6
profit [2] 14:64/18 14:67/6
profit-and-loss [1] 14:64/18
profits [2] 14:66/2 14:66/20
promptly [1] 14:118/24
prong [4] 14:42/21 14:42/22
  14:42/24 14:46/6
proof [3] 14:76/6 14:78/7
  14:78/11

**P**

**proper [6]**   14:32/6 14:72/13
14:105/1 14:110/3 14:110/4
14:117/2
**properly [5]**   14:108/5 14:109/15
14:110/12 14:111/9 14:117/20
14:21/19
**properties [1]**   14:21/19
**property [14]**   14:42/16 14:71/1
14:76/22 14:81/7 14:81/12
14:83/14 14:83/15 14:97/7
14:104/13 14:107/6 14:107/6
14:107/9 14:107/12 14:107/14
**prophylactic [2]**   14:105/10
14:108/9
**propose [5]**   14:65/13 14:85/21
14:86/8 14:94/17 14:96/17
**proposed [27]**   14:56/4 14:60/15
14:60/22 14:61/3 14:64/9
14:64/14 14:64/20 14:65/25
14:66/4 14:70/8 14:77/20
14:77/21 14:80/4 14:80/8
14:83/3 14:85/8 14:85/17
14:85/21 14:86/11 14:87/11
14:87/12 14:88/3 14:88/9
14:88/9 14:88/16 14:89/12
14:93/6
**proposing [1]**   14:88/17
**proposition [2]**   14:87/14
14:89/4
**proprietary [1]**   14:66/18
**provide [8]**   14:31/15 14:40/3
14:47/19 14:49/3 14:50/3
14:92/3 14:92/24 14:93/1
**provided [3]**   14:16/22 14:57/9
14:91/24
**providing [2]**   14:43/25 14:47/8
**provision [2]**   14:63/24 14:69/23
**provisions [1]**   14:113/10
**public [2]**   14:18/11 14:103/24
**publication [2]**   14:14/10
14:14/12
**publish [3]**   14:18/1 14:23/4
14:23/11
**published [1]**   14:117/16
**pull [4]**   14:11/1 14:23/10
14:66/3 14:97/3
**purported [3]**   14:87/17 14:112/6
**purports [3]**   14:18/25 14:19/1
14:55/1
**purpose [6]**   14:36/24 14:61/18
14:66/17 14:66/19 14:99/24
14:113/11
**purposeful [1]**   14:108/3
**purposes [6]**   14:5/24 14:36/6
14:37/3 14:37/6 14:97/4
14:112/3
**put [23]**   14:7/8 14:8/5 14:11/19
14:12/9 14:18/15 14:18/21
14:19/6 14:20/6 14:20/17
14:20/19 14:22/5 14:22/6
14:23/8 14:25/6 14:26/4 14:27/5
14:27/24 14:29/21 14:35/12
14:35/15 14:38/8 14:100/6
14:113/7
**puts [1]**   14:108/25
**putting [1]**   14:116/20

**Q**

**qualifications [1]**   14:84/14
**question [18]**   14:7/18 14:14/13
14:31/13 14:31/15 14:31/23
14:32/6 14:32/7 14:32/7

---

14:39/21 14:56/22 14:57/3
14:111/3 14:111/24 14:114/25
14:116/9
**questioned [2]**   14:101/11
14:111/20
**questioning [2]**   14:6/8 14:6/20
**questions [14]**   14:6/17 14:6/18
14:7/16 14:8/13 14:10/10
14:22/24 14:31/5 14:31/10
14:31/11 14:31/18 14:31/20
14:32/18 14:32/19 14:111/12
**quickly [6]**   14:46/15 14:47/6
14:56/23 14:96/11 14:105/7
14:116/23
**quite [2]**   14:5/7 14:65/14
**quotation [1]**   14:84/9
**quote [4]**   14:41/1 14:41/2
14:41/13 14:84/10
**quoting [1]**   14:41/1

**R**

**Rachel [1]**   14:29/12
**racks [2]**   14:8/17 14:8/21
**Rafael [2]**   14:65/3 14:67/22
**raise [12]**   14:4/7 14:31/12
14:31/19 14:37/7 14:37/23
14:38/11 14:51/9 14:104/23
14:112/1 14:112/10 14:114/5
14:115/23
**raised [8]**   14:4/9 14:38/6
14:40/17 14:106/25 14:108/15
14:108/18 14:115/24 14:119/1
**raising [1]**   14:4/14
**Ramel [1]**   14:84/12
**Ramona [1]**   14:29/8
**rather [3]**   14:56/8 14:110/24
14:117/23
**RCJBR [2]**   14:18/6 14:18/9
**RCJBR.org [2]**   14:29/6 14:30/8
**Re [1]**   14:76/23
**react [1]**   14:5/7
**read [11]**   14:8/4 14:8/12
14:10/11 14:70/19 14:78/25
14:84/16 14:89/2 14:89/3
14:117/14 14:117/17 14:117/23
**reading [1]**   14:10/9
**reads [3]**   14:31/23 14:32/7
14:44/5
**ready [8]**   14:6/7 14:49/25
14:51/19 14:56/17 14:58/24
14:59/10 14:60/8 14:94/7
**reaffirmed [1]**   14:47/15
**real [2]**   14:5/10 14:113/15
**realize [1]**   14:12/22
**really [9]**   14:5/15 14:20/17
14:51/17 14:52/3 14:94/25
14:96/11 14:106/5 14:112/3
14:116/15
**reargument [1]**   14:119/2
**reason [10]**   14:4/12 14:4/16
14:5/9 14:5/10 14:5/15 14:5/17
14:96/3 14:97/11 14:98/19
14:100/11
**reasonable [12]**   14:38/2 14:38/7
14:38/24 14:39/12 14:50/19
14:70/13 14:70/14 14:71/3
14:71/20 14:72/20 14:72/20
14:83/11
**reasons [4]**   14:5/5 14:5/17
14:101/21 14:103/5
**rebuttal [13]**   14:33/2 14:33/11
14:33/21 14:64/5 14:92/3

---

14:92/8 14:92/10 14:92/13
14:94/1 14:95/6
**recall [24]**   14:6/18 14:6/19
14:6/25 14:7/1 14:7/3 14:7/4
14:7/14 14:7/18 14:7/24 14:8/13
14:8/23 14:9/4 14:11/6 14:13/8
14:13/21 14:14/8 14:14/16
14:17/10 14:18/3 14:18/7
14:19/24 14:20/2 14:20/14
14:22/11
**received [19]**   14:24/23 14:25/13
14:26/14 14:26/23 14:27/13
14:27/18 14:28/15 14:29/3
14:30/4 14:74/13 14:74/20
14:95/21 14:98/13 14:99/15
14:100/15 14:101/14 14:101/24
14:103/9 14:104/8
**recent [1]**   14:71/22
**recess [7]**   14:33/23 14:50/13
14:53/11 14:53/15 14:93/15
14:93/17 14:94/21
**recollect [1]**   14:22/15
**recommendations [1]**   14:100/23
**reconsideration [1]**   14:116/15
**record [14]**   14:9/8 14:10/11
14:16/24 14:17/17 14:36/5
14:37/2 14:41/17 14:82/8
14:82/11 14:112/2 14:112/15
14:117/19 14:119/4 14:120/5
**record-preservation [1]**   14:37/2
**recorded [1]**   14:13/25
**recoverable [1]**   14:71/19
**recovery [2]**   14:76/20 14:77/6
**redact [1]**   14:118/10
**redacted [7]**   14:112/24 14:113/9
14:113/20 14:116/8 14:116/11
14:116/22 14:117/20
**redaction [4]**   14:113/25
14:115/16 14:115/23 14:118/4
**redactions [6]**   14:52/2
14:113/21 14:113/22 14:116/17
14:117/2 14:117/2
**redirect [1]**   14:31/6
**refer [1]**   14:16/25
**reference [4]**   14:9/12 14:14/23
14:15/15 14:116/6
**references [1]**   14:16/6
**referred [1]**   14:82/19
**referring [2]**   14:47/3 14:98/20
**refers [5]**   14:97/6 14:97/9
14:99/10 14:100/19 14:100/22
**reflecting [1]**   14:99/25
**reflects [1]**   14:113/18
**regard [29]**   14:5/21 14:15/20
14:35/2 14:38/2 14:38/5 14:38/8
14:38/22 14:39/13 14:39/22
14:43/10 14:44/21 14:46/6
14:47/20 14:49/10 14:49/16
14:49/15 14:49/16 14:49/16
14:50/1 14:51/12 14:51/18
14:56/7 14:71/24 14:74/17
14:107/3 14:110/12 14:111/24
14:114/13 14:118/19
**regarding [5]**   14:100/20
14:100/23 14:104/5 14:111/5
14:116/18
**regardless [1]**   14:79/25
**registered [2]**   14:13/24 14:18/9
**regular [1]**   14:54/25
**reinstated [3]**   14:79/16 14:80/1
14:80/2
**Reiter [1]**   14:67/22

**R**

**reject [1]**  14:39/18
**rejecting [1]**  14:42/10
**relate [2]**  14:51/2 14:109/11
**related [4]**  14:15/9 14:16/3
14:16/5 14:49/9
**relates [1]**  14:51/13
**relating [2]**  14:47/21 14:49/5
**relationship [7]**  14:84/9
14:84/17 14:100/10 14:116/7
14:116/19 14:116/25 14:117/13
**relax [1]**  14:111/22
**release [2]**  14:103/24 14:103/24
**relevance [2]**  14:5/9 14:100/4
**relevant [12]**  14:5/15 14:18/22
14:98/22 14:100/1 14:100/22
14:101/18 14:103/3 14:104/1
14:106/13 14:111/6 14:111/24
14:113/16
**relied [1]**  14:62/13
**relief [3]**  14:90/6 14:90/14
14:90/23
**rely [2]**  14:67/18 14:75/16
**relying [2]**  14:43/7 14:72/3
**remainder [1]**  14:80/19
**remedies [2]**  14:90/3 14:90/13
**remedy [7]**  14:63/22 14:90/2
14:90/5 14:90/16 14:90/22
14:91/7 14:91/11
**remember [6]**  14:8/16 14:20/5
14:29/19 14:46/13 14:59/11
14:116/5
**remembered [1]**  14:22/14
**remind [2]**  14:50/24 14:119/7
**remove [1]**  14:36/1
**rendition [1]**  14:90/16
**renew [2]**  14:34/10 14:35/19
**renewed [1]**  14:34/20
**repeated [1]**  14:78/9
**repeatedly [2]**  14:47/15
14:63/23
**rephrase [1]**  14:38/10
**replace [1]**  14:25/2
**replaced [2]**  14:32/12 14:43/24
**report [3]**  14:15/14 14:16/6
14:106/8
**reported [4]**  1:1/25 14:17/13
14:17/20 14:18/20
**Reporter [4]**  1:1/25 14:10/9
14:120/3 14:120/12
**reports [2]**  14:14/22 14:106/7
**representation [1]**  14:109/13
**representative [5]**  14:40/16
14:41/15 14:41/18 14:43/12
14:44/8
**representing [1]**  14:117/23
**request [11]**  14:4/20 14:5/17
14:49/9 14:61/22 14:65/23
14:87/22 14:88/25 14:92/20
14:96/3 14:98/18 14:98/19
**requested [5]**  14:48/2 14:93/23
14:95/4 14:95/23 14:113/8
**requesting [1]**  14:92/4
**require [6]**  14:35/3 14:44/14
14:65/19 14:65/22 14:90/15
14:106/16
**required [2]**  14:61/20 14:91/14
**requirement [4]**  14:81/17
14:82/10 14:82/16 14:83/14
**requirements [3]**  14:64/17
14:65/25 14:68/11
**research [1]**  14:59/15

**reserve [1]**  14:47/20
**respect [18]**  14:35/25 14:36/8
14:36/11 14:37/21 14:37/21
14:38/14 14:38/25 14:39/2
14:45/2 14:54/13 14:83/16
14:103/1 14:106/5 14:107/4
14:111/11 14:112/5 14:112/6
14:114/25
**respectfully [2]**  14:82/14
14:83/8
**respective [1]**  14:58/19
**respond [7]**  14:62/16 14:66/7
14:74/24 14:88/20 14:105/10
14:110/5 14:110/8
**responded [2]**  14:13/23
14:117/22
**responding [1]**  14:62/4
**response [17]**  14:34/18 14:34/25
14:43/2 14:62/19 14:62/20
14:64/5 14:64/25 14:69/18
14:72/9 14:77/1 14:79/17
14:82/17 14:85/13 14:87/7
14:88/14 14:90/9 14:91/8
**responsibility [1]**  14:76/5
**rest [5]**  14:33/1 14:36/4
14:48/3 14:48/6 14:64/13
**restart [1]**  14:9/23
**restate [2]**  14:73/13 14:104/4
**restatement [5]**  14:63/14
14:70/16 14:76/23 14:76/23
14:77/11
**rested [2]**  14:47/23 14:58/19
**restitution [5]**  14:70/17
14:70/17 14:70/17 14:76/23
14:77/11
**result [1]**  14:5/1
**resulting [2]**  14:46/17 14:77/12
**resumed [1]**  14:53/16
**retain [1]**  14:61/16
**return [7]**  14:42/13 14:42/15
14:47/6 14:89/25 14:89/25
14:90/24 14:91/4
**returns [1]**  14:91/11
**review [13]**  14:35/6 14:59/22
14:59/23 14:60/5 14:60/8
14:60/11 14:91/24 14:91/25
14:94/6 14:97/4 14:105/22
14:112/21 14:118/18
**reviewed [2]**  14:96/6 14:105/14
**rid [1]**  14:8/10
**right [137]**
**right-hand [2]**  14:23/21
14:28/23
**rights [2]**  14:15/7 14:16/17
**rise [7]**  14:6/3 14:33/25
14:53/14 14:53/17 14:58/14
14:59/18 14:119/10
**RIVERO [10]**  1:2/5 1:2/7 1:2/10
14:6/16 14:8/17 14:18/3
14:48/13 14:52/23 14:94/7
14:95/9
**Rivero's [1]**  14:109/13
**RMR [2]**  1:1/25 14:120/12
**Roca [3]**  14:65/3 14:67/22
14:67/22
**ROCHE [3]**  1:1/15 1:1/18 1:1/19
**room [2]**  14:50/6 14:59/9
**route [1]**  14:63/10
**rule [3]**  14:56/2 14:56/6
14:112/16
**ruled [4]**  14:49/7 14:100/9
14:114/13 14:114/15

**rules [2]**  14:65/5 14:111/22
**ruling [3]**  14:99/14 14:99/22
14:99/21 14:100/20 14:112/17
14:116/18
**rulings [2]**  14:103/6 14:104/19
**run [1]**  14:41/4
**running [2]**  14:41/15 14:43/25
**RUPA [15]**  14:62/11 14:63/3
14:63/3 14:63/7 14:63/10
14:63/25 14:64/21 14:65/2
14:65/5 14:66/24 14:67/12
14:67/17 14:67/23 14:68/1
14:69/23
**RUPA's [1]**  14:65/4
**rushing [1]**  14:56/8

**S**

**said [24]**  14:7/25 14:8/21
14:10/5 14:13/9 14:13/9 14:14/3
14:14/6 14:18/9 14:21/10
14:22/14 14:23/4 14:25/22
14:29/18 14:30/16 14:42/12
14:54/7 14:63/25 14:63/25
14:82/7 14:97/19 14:98/2
14:117/12 14:117/17 14:117/23
**sale [2]**  14:16/17 14:74/12
**same [40]**  14:6/22 14:16/8
14:17/18 14:30/23 14:31/24
14:32/8 14:40/23 14:41/11
14:45/19 14:57/6 14:64/8
14:69/20 14:69/23 14:71/6
14:74/15 14:75/11 14:77/14
14:78/9 14:86/20 14:87/2
14:89/23 14:91/4 14:91/5
14:97/15 14:99/20 14:100/8
14:101/4 14:101/17 14:101/19
14:101/21 14:102/4 14:103/1
14:103/5 14:103/6 14:105/7
14:108/14 14:111/8 14:112/4
14:114/5 14:114/12
**San [1]**  1:2/3
**Sasser [1]**  14:41/13
**Satoshi [2]**  14:7/22 14:13/24
**saw [1]**  14:34/13
**say [17]**  14:22/1 14:48/8
14:50/9 14:57/4 14:57/11
14:62/21 14:65/23 14:72/22
14:73/15 14:76/8 14:76/13
14:81/8 14:92/8 14:92/12
14:112/17 14:117/11 14:117/19
**saying [11]**  14:15/18 14:21/12
14:53/2 14:53/2 14:62/23
14:68/23 14:83/11 14:88/17
14:108/3 14:110/2 14:117/16
**says [28]**  14:20/13 14:21/12
14:27/18 14:29/7 14:41/11
14:63/5 14:64/10 14:65/19
14:65/22 14:69/14 14:70/8
14:71/6 14:72/2 14:72/15
14:76/4 14:76/12 14:77/11
14:78/19 14:79/5 14:79/8
14:81/6 14:81/8 14:84/4
14:84/22 14:86/17 14:86/19
14:109/17 14:109/25
**scan [1]**  14:11/13
**scanned [2]**  14:11/22 14:12/9
**scanner [1]**  14:11/21
**scanning [1]**  14:13/4
**schedule [2]**  14:92/6 14:118/23
**scheduling [1]**  14:47/22
**SCHILLER [1]**  1:1/20 1:2/2
**SCHNEUR [1]**  1:2/9
**scope [2]**  14:14/24 14:15/19

**S**

SCOTT [2]   1:1/22 14:71/5
screen [12]   14:11/2 14:11/2
14:11/14 14:17/22 14:18/22
14:19/9 14:20/7 14:21/23
14:22/6 14:23/16 14:105/6
14:118/3
scroll [1]   14:113/1
seat [3]   14:4/8 14:34/2
14:59/20
seated [3]   14:6/6 14:53/20
14:58/17
second [15]   1:1/21 14:40/25
14:42/21 14:46/6 14:62/1
14:71/16 14:71/24 14:76/11
14:78/6 14:78/19 14:79/4
14:81/5 14:103/13 14:106/7
14:113/2
secondary [1]   14:86/19
secret [2]   14:13/23 14:54/24
section [9]   14:41/9 14:63/4
14:63/4 14:63/9 14:68/16
14:69/12 14:70/18 14:76/24
14:77/10
security [4]   14:31/16 14:31/24
14:32/8 14:109/7
see [49]   14:5/8 14:10/15
14:11/15 14:15/22 14:15/23
14:16/7 14:16/10 14:17/1
14:17/4 14:19/3 14:19/4 14:19/4
14:19/13 14:21/2 14:21/7
14:22/16 14:23/18 14:24/24
14:25/15 14:25/16 14:25/18
14:26/18 14:26/25 14:27/1
14:27/19 14:27/22 14:28/6
14:29/1 14:29/4 14:29/15
14:30/10 14:31/17 14:31/22
14:48/23 14:49/15 14:49/18
14:53/13 14:59/8 14:59/16
14:86/14 14:92/16 14:93/20
14:105/6 14:110/22 14:112/22
14:113/1 14:114/7 14:114/9
14:118/3
seeing [2]   14:32/19 14:93/5
seek [2]   14:42/13 14:91/4
seeking [4]   14:32/25 14:42/15
14:89/20 14:90/5
seem [2]   14:99/20 14:99/21
seems [1]   14:81/6
sell [1]   14:15/7
send [3]   14:21/22 14:21/25
14:29/19
sending [1]   14:50/5
sense [4]   14:5/4 14:50/9
14:53/9 14:104/20
sent [12]   14:18/10 14:22/2
14:22/15 14:25/23 14:25/24
14:27/2 14:29/6 14:29/17
14:29/18 14:30/13 14:30/15
14:30/17
sentence [18]   14:42/14 14:65/18
14:65/20 14:78/12 14:78/19
14:78/25 14:79/4 14:79/4
14:79/5 14:79/5 14:79/8 14:79/9
14:81/11 14:84/3 14:84/15
14:84/16 14:84/22 14:86/8
sentences [1]   14:85/12
separate [3]   14:24/17 14:79/22
14:80/10
series [4]   14:108/17 14:108/18
14:108/25 14:111/12
seriously [1]   14:5/7

servers [3]   14:8/18 14:32/13
14:42/13
session [2]   1:1/13 14:53/18
set [6]   14:13/13 14:13/15
14:50/8 14:53/4 14:93/1 14:93/6
setting [2]   14:13/8 14:14/5
Seventh [1]   1:2/10
several [7]   14:41/10 14:69/22
14:70/11 14:82/19 14:82/21
14:86/1 14:97/20
sham [1]   14:14/6
share [5]   14:6/24 14:7/3
14:52/11 14:66/20 14:66/20
shared [1]   14:7/6
Shawn [1]   14:98/17
shield [1]   14:106/2
short [2]   14:8/4 14:94/3
shortly [1]   14:47/6
should [44]   14:7/23 14:38/10
14:38/20 14:38/23 14:39/3
14:39/3 14:39/6 14:39/9 14:42/2
14:43/9 14:43/17 14:43/18
14:48/2 14:48/19 14:48/24
14:52/15 14:55/22 14:57/4
14:57/7 14:61/19 14:64/22
14:65/6 14:67/10 14:72/21
14:73/5 14:73/10 14:76/6
14:76/7 14:76/12 14:76/13
14:76/13 14:80/3 14:81/8
14:86/19 14:87/4 14:88/4
14:88/6 14:88/9 14:89/7
14:90/13 14:90/15 14:101/10
14:102/18 14:116/11
shouldn't [2]   14:88/17
14:105/16
show [7]   14:22/17 14:26/20
14:27/14 14:28/11 14:30/5
14:55/5 14:55/5
showed [2]   14:7/18 14:19/24
shown [2]   14:55/12 14:110/21
shows [1]   14:100/10
sic [1]   14:71/9
side [20]   14:11/16 14:19/7
14:19/7 14:19/9 14:20/7 14:20/7
14:20/20 14:21/23 14:22/6
14:23/21 14:25/1 14:25/3
14:25/10 14:28/8 14:28/23
14:48/1 14:72/14 14:97/18
14:108/13 14:108/21
side's [2]   14:65/10 14:95/3
sidebar [3]   14:31/17 14:31/21
14:117/22
sides [5]   14:47/23 14:52/9
14:56/19 14:97/17 14:116/8
sign [1]   14:47/23
significant [3]   14:46/11
14:46/25 14:54/18
similar [4]   14:55/12 14:55/21
14:71/18 14:101/9
simple [1]   14:64/11
simply [8]   14:34/10 14:37/18
14:41/16 14:55/8 14:63/15
14:74/15 14:81/14 14:107/8
since [9]   14:10/8 14:24/17
14:37/8 14:41/23 14:48/1
14:49/20 14:59/3 14:92/2
14:92/24
single [2]   14:52/16 14:105/22
sir [2]   14:36/2 14:53/21
sitting [3]   14:60/7 14:91/14
14:95/14
six [3]   14:13/3 14:97/14
skip [1]   14:102/2

slight [1]   14:57/21
small [2]   14:57/24 14:77/24
smart [1]   14:56/25
smoking [1]   14:55/14
so [132]
So.2d [10]   14:40/24 14:41/13
14:61/15 14:68/2 14:68/4
14:68/5 14:70/20 14:71/8
14:74/13 14:84/13
So.3d [1]   14:87/15
Solstice [1]   14:74/6
some [16]   14:31/12 14:32/13
14:36/11 14:37/4 14:37/5
14:47/12 14:52/10 14:54/23
14:55/14 14:59/22 14:59/23
14:60/22 14:61/16 14:68/24
14:79/1 14:82/23
Somebody [1]   14:97/4
somehow [2]   14:12/9 14:89/7
someone [2]   14:10/1 14:106/21
something [6]   14:20/15 14:25/7
14:33/18 14:51/24 14:85/6
14:109/25
sometime [5]   14:18/9 14:45/4
14:45/20 14:45/21 14:46/3
Sommer [1]   14:28/24
soon [1]   14:48/9
sorry [34]   14:8/6 14:9/12
14:10/4 14:13/14 14:14/12
14:19/5 14:19/20 14:20/2
14:21/20 14:25/22 14:33/14
14:34/4 14:36/23 14:54/7
14:62/2 14:66/3 14:66/8
14:67/21 14:68/4 14:70/17
14:70/18 14:70/20 14:71/10
14:73/12 14:75/2 14:75/5
14:77/9 14:79/6 14:84/17
14:87/6 14:102/15 14:109/6
14:116/4 14:116/23
sort [6]   14:52/10 14:54/21
14:54/23 14:57/23 14:82/23
14:99/2
sound [2]   14:9/16 14:9/16
source [1]   14:103/24
South [2]   14:45/25 14:107/7
Southeast [2]   1:1/16 1:1/21
SOUTHERN [5]   1:1/3 14:74/7
14:74/23 14:81/22 14:84/25
speak [2]   14:33/23 14:59/13
specific [4]   14:51/9 14:81/13
14:81/20 14:82/12
specifically [8]   14:15/17
14:97/3 14:97/9 14:100/22
14:100/24 14:104/12 14:107/11
14:111/13
specifics [1]   14:66/15
speculation [1]   14:88/7
speculative [3]   14:88/12
14:88/12 14:89/7
spend [2]   14:49/12 14:58/24
split [3]   14:68/24 14:68/25
14:82/25
spoliation [1]   14:49/5
spot [2]   14:46/9 14:46/11
Srybnik [1]   14:74/13
staff [1]   14:30/24
stage [2]   14:26/3 14:58/19
stamp [2]   14:105/4 14:105/8
stand [6]   14:4/11 14:31/7
14:34/25 14:39/1 14:89/4
14:106/21
standard [10]   14:37/10 14:37/15
14:37/16 14:37/18 14:37/19

**S**

standard... [5]  14:37/20
 14:38/1 14:38/10 14:79/19
 14:88/13
standing [2]  14:17/2 14:104/24
stands [1]  14:68/22
start [7]  14:7/23 14:21/20
 14:42/12 14:44/1 14:50/15
 14:78/5 14:93/4
started [1]  14:8/2
starting [1]  14:94/22
starts [6]  14:76/11 14:78/6
 14:78/10 14:79/13 14:84/3
 14:85/1
state [7]  14:34/8 14:67/24
 14:70/7 14:70/11 14:87/14
 14:112/12 14:113/16
stated [9]  14:4/25 14:15/6
 14:15/13 14:42/7 14:59/3
 14:61/7 14:80/4 14:92/18
 14:100/13
statement [6]  14:5/19 14:62/8
 14:83/20 14:116/23 14:117/12
 14:117/16
statements [1]  14:117/3
states [15]  1:1/2 14:53/24
 14:61/8 14:61/16 14:64/16
 14:69/10 14:70/18 14:70/21
 14:70/24 14:71/2 14:71/17
 14:72/13 14:87/16 14:91/3
 14:113/6
status [1]  14:52/14
statute [24]  14:38/5 14:40/13
 14:40/20 14:41/9 14:41/14
 14:41/20 14:41/23 14:42/1
 14:43/23 14:43/24 14:44/2
 14:44/4 14:44/12 14:44/15
 14:44/16 14:47/13 14:49/16
 14:61/7 14:64/10 14:64/10
 14:64/20 14:69/9 14:69/16
 14:85/4
statute-of-limitations [1]
 14:42/1
statutes [3]  14:80/22 14:80/24
 14:81/1
statutory [1]  14:44/14
stay [1]  14:80/3
STEPHEN [1]  1:1/22
stick [1]  14:24/11
still [3]  14:6/22 14:10/18
 14:68/11
stock [5]  14:71/2 14:71/3
 14:71/18 14:100/23 14:101/8
stopped [1]  14:13/2
straight [1]  14:94/16
Street [2]  1:1/21 1:2/3
strike [2]  14:78/24 14:85/11
structure [1]  14:79/1
stuff [3]  14:14/6 14:52/8
 14:52/11
subject [12]  14:66/18 14:99/3
 14:101/6 14:101/7 14:101/19
 14:104/1 14:104/13 14:107/4
 14:107/7 14:108/14 14:109/1
 14:117/10
submit [5]  14:35/24 14:44/14
 14:77/15 14:88/22 14:90/19
submitted [6]  14:36/7 14:39/20
 14:55/2 14:58/1 14:87/13
 14:87/22
subscribes [2]  14:73/24 14:74/4
substantial [1]  14:104/21

such [5]  14:64/18 14:81/12
 14:97/17
sue [1]  14:40/21
suffering [1]  14:47/1
sufficient [1]  14:35/14
suggest [10]  14:48/25 14:49/20
 14:53/5 14:56/3 14:57/20
 14:89/6 14:91/2 14:93/4
 14:93/13 14:117/3
suggested [4]  14:21/17 14:85/6
 14:85/7 14:116/21
suggesting [2]  14:51/15
 14:66/14
suggestion [2]  14:43/6 14:56/8
suggests [4]  14:44/17 14:79/9
 14:85/3 14:91/10
suit [1]  14:46/18
Suite [4]  1:1/16 1:1/18 1:1/21
 1:2/6
summary [5]  14:37/19 14:42/6
 14:42/11 14:62/14 14:83/22
Sunday [3]  14:66/9 14:85/22
 14:88/22
Supp [2]  14:71/9 14:71/14
supplement [1]  14:106/8
supplemental [1]  14:106/7
support [3]  14:43/17 14:77/23
 14:87/14
supports [1]  14:85/18
supposed [1]  14:57/2
Supreme [1]  14:40/22
sure [16]  14:4/9 14:4/19
 14:20/14 14:23/4 14:23/18
 14:24/24 14:34/15 14:38/21
 14:48/17 14:51/5 14:52/22
 14:53/7 14:56/16 14:58/7
 14:66/6 14:116/18
surprised [1]  14:48/15
surrounding [1]  14:108/23
survived [1]  14:89/6
survives [1]  14:44/7
surviving [1]  14:61/11
suspect [1]  14:113/7
sustain [1]  14:114/11
sustained [4]  14:103/20
 14:110/14 14:112/18 14:114/1
Swann [3]  14:61/14 14:62/9
 14:63/12
switched [1]  14:102/14
sword [1]  14:113/24
sworn [2]  14:6/11 14:7/15
Sydney [3]  14:21/11 14:27/4
 14:30/19
system [2]  14:9/23 14:32/17

**T**

table [1]  14:32/20
tables [1]  14:119/8
tail [1]  14:81/5
take [25]  14:5/7 14:9/25
 14:25/5 14:31/14 14:33/18
 14:33/23 14:38/16 14:47/18
 14:48/15 14:50/13 14:52/5
 14:53/10 14:60/2 14:72/24
 14:91/23 14:93/14 14:93/15
 14:93/17 14:93/21 14:94/2
 14:94/6 14:94/16 14:94/17
 14:113/17 14:119/6
taken [2]  14:44/25 14:53/15
takes [2]  14:36/6 14:50/15
taking [3]  14:35/4 14:37/17
 14:40/14
talk [4]  14:12/12 14:36/16

 14:47/22 14:101/5
 14:97/17
talking [1]  14:114/9
Tampa [1]  14:71/5
tasked [1]  14:90/22
tax [3]  14:14/3 14:14/5
 14:14/21
taxpayer [2]  14:16/15 14:16/22
Technically [1]  14:12/21
tell [6]  14:7/20 14:12/15
 14:94/14 14:97/23 14:108/10
 14:108/11
telling [1]  14:60/5
tells [1]  14:73/25
ten [2]  14:21/13 14:95/23
tend [1]  14:5/16
tenders [2]  14:97/6 14:97/9
terms [12]  14:34/4 14:36/4
 14:36/12 14:37/12 14:37/19
 14:46/24 14:46/25 14:49/18
 14:50/1 14:54/1 14:54/14
 14:95/4
testified [13]  14:4/12 14:4/16
 14:6/1 14:6/23 14:7/2 14:7/5
 14:14/2 14:18/6 14:21/17
 14:22/11 14:25/13 14:25/20
 14:39/17
testifying [1]  14:11/6
testimony [25]  14:5/21 14:7/9
 14:7/15 14:7/15 14:8/25 14:11/7
 14:12/2 14:13/7 14:14/10
 14:14/13 14:15/19 14:17/8
 14:21/17 14:21/22 14:22/18
 14:31/8 14:39/14 14:39/19
 14:55/3 14:100/24 14:103/4
 14:105/13 14:105/20 14:106/17
 14:111/18
testnet [1]  14:32/16
text [1]  14:118/6
than [11]  14:35/14 14:45/21
 14:45/25 14:47/8 14:56/8
 14:65/17 14:70/14 14:94/22
 14:95/4 14:100/13 14:110/24
Thank [46]  14:6/22 14:8/20
 14:11/4 14:18/23 14:20/7
 14:21/5 14:22/19 14:23/8
 14:28/19 14:29/21 14:32/23
 14:33/8 14:34/23 14:36/3
 14:36/20 14:39/24 14:39/25
 14:40/9 14:42/25 14:43/1
 14:47/17 14:53/12 14:55/25
 14:56/1 14:68/7 14:69/19
 14:70/5 14:72/10 14:73/1
 14:75/20 14:76/9 14:76/15
 14:77/4 14:77/7 14:77/25
 14:78/13 14:81/2 14:81/4
 14:82/3 14:89/8 14:112/19
 14:114/2 14:114/16 14:114/17
 14:115/15 14:119/11
Thanksgiving [1]  14:48/20
that [644]
that's [83]  14:4/18 14:5/15
 14:9/8 14:9/10 14:9/24 14:12/1
 14:12/21 14:13/6 14:13/9
 14:18/13 14:19/10 14:20/5
 14:20/13 14:21/13 14:21/23
 14:22/15 14:25/22 14:26/1
 14:26/16 14:29/7 14:34/12
 14:36/13 14:37/19 14:38/9
 14:38/9 14:38/10 14:39/7
 14:40/25 14:42/9 14:42/10
 14:42/21 14:45/7 14:45/11

**that's... [50]**  14:45/11
14:45/19  14:48/6  14:49/25
14:51/25  14:52/14  14:52/18
14:55/23  14:57/10  14:61/15
14:73/19  14:74/6  14:74/6
14:74/7  14:74/13  14:74/15
14:74/21  14:75/20  14:77/3
14:81/1  14:81/20  14:81/21
14:83/23  14:84/9  14:86/21
14:88/1  14:88/23  14:89/2
14:89/3  14:89/3  14:92/14
14:93/11  14:95/20  14:96/22
14:97/21  14:97/21  14:98/2
14:98/3  14:102/13  14:102/16
14:107/22  14:108/6  14:109/11
14:111/21  14:114/2  14:115/7
14:116/23  14:116/24  14:117/17
14:118/4
**theft [6]**  14:86/16  14:86/18
14:86/19  14:87/5  14:87/9
14:87/18
**their [29]**  14:34/25  14:35/15
14:42/20  14:42/24  14:44/18
14:44/24  14:45/22  14:47/23
14:54/23  14:56/12  14:56/18
14:58/19  14:58/22  14:58/25
14:61/18  14:62/19  14:62/20
14:65/14  14:79/6  14:79/8
14:82/20  14:83/3  14:90/5
14:90/16  14:91/11  14:96/1
14:97/22  14:106/24  14:112/5
**them [28]**  14:19/19  14:25/21
14:50/21  14:51/20  14:55/20
14:56/11  14:56/11  14:58/5
14:58/6  14:58/12  14:58/25
14:68/12  14:91/3  14:93/1
14:93/2  14:93/8  14:95/24
14:96/6  14:96/10  14:96/13
14:96/14  14:96/16  14:96/23
14:97/20  14:108/10  14:109/4
14:112/8  14:113/20
**thematic [2]**  14:102/8  14:102/9
**theme [1]**  14:54/23
**themselves [1]**  14:65/12
**then [66]**  14:5/5  14:5/21
14:7/18  14:10/23  14:21/15
14:25/6  14:32/16  14:33/22
14:39/4  14:42/8  14:42/11
14:42/14  14:44/4  14:48/7
14:48/7  14:49/23  14:50/13
14:50/20  14:50/21  14:51/8
14:52/8  14:52/16  14:56/13
14:58/4  14:58/13  14:59/1
14:60/14  14:61/12  14:63/2
14:63/8  14:63/11  14:68/22
14:68/23  14:69/7  14:73/9
14:75/22  14:76/10  14:79/4
14:81/8  14:81/11  14:82/10
14:82/24  14:84/22  14:85/25
14:89/14  14:91/23  14:91/25
14:92/3  14:92/10  14:92/13
14:92/15  14:93/15  14:93/15
14:93/16  14:94/2  14:94/3
14:94/4  14:94/15  14:94/17
14:94/17  14:98/11  14:106/15
14:106/25  14:117/1  14:118/10
14:118/18
**theory [1]**  14:74/4
**there [88]**  14:5/12  14:8/8
14:12/10  14:12/11  14:12/19
14:13/2  14:14/3  14:15/19

14:20/10  14:20/23  14:28/16
14:38/23  14:38/23  14:39/17
14:39/21  14:42/18  14:42/22
14:43/14  14:43/16  14:45/6
14:45/23  14:46/5  14:47/7
14:47/10  14:49/13  14:54/3
14:54/8  14:54/11  14:54/13
14:55/8  14:55/16  14:55/18
14:55/19  14:56/25  14:57/7
14:60/18  14:63/20  14:64/16
14:64/17  14:65/23  14:65/24
14:66/1  14:66/2  14:68/3
14:68/10  14:69/21  14:69/24
14:72/16  14:73/11  14:79/20
14:79/24  14:82/8  14:83/14
14:86/1  14:88/2  14:89/11
14:89/15  14:89/17  14:90/12
14:90/13  14:91/16  14:92/19
14:92/20  14:95/23  14:97/5
14:100/11  14:100/11  14:103/18
14:107/2  14:107/2  14:108/18
14:108/22  14:108/23  14:109/2
14:109/23  14:110/11  14:111/12
14:114/18  14:115/16  14:115/23
14:116/10  14:116/11  14:118/13
14:119/2  14:119/5
**there's [39]**  14:11/25  14:12/6
14:35/15  14:39/4  14:46/13
14:46/14  14:50/19  14:51/12
14:51/16  14:51/23  14:52/3
14:54/22  14:54/23  14:55/14
14:57/21  14:68/24  14:70/2
14:78/14  14:79/21  14:81/15
14:88/12  14:92/4  14:94/15
14:95/17  14:97/14  14:97/20
14:100/24  14:103/19  14:104/21
14:106/15  14:107/2  14:107/13
14:111/21  14:111/23  14:111/23
14:117/12
**thereafter [2]**  14:70/13
14:70/15
**thereby [1]**  14:14/6
**therefore [6]**  14:64/22  14:75/10
14:80/3  14:83/2  14:83/7  14:86/3
**thereof [1]**  14:71/20
**these [23]**  14:15/14  14:16/24
14:19/10  14:19/16  14:20/7
14:27/2  14:39/22  14:53/8
14:85/21  14:89/3  14:90/3
14:96/3  14:97/11  14:97/14
14:107/6  14:107/7  14:108/16
14:108/17  14:110/10  14:111/13
14:112/4  14:113/9  14:113/19
**they [62]**  14:30/24  14:42/13
14:52/4  14:54/7  14:55/5
14:56/13  14:56/18  14:58/7
14:60/10  14:61/19  14:62/19
14:62/20  14:62/21  14:63/1
14:65/13  14:65/17  14:67/17
14:67/18  14:67/23  14:67/24
14:67/24  14:68/2  14:68/10
14:68/11  14:68/12  14:74/11
14:74/12  14:77/1  14:77/24
14:79/20  14:80/9  14:82/24
14:83/3  14:85/22  14:85/24
14:89/4  14:89/21  14:89/23
14:90/1  14:90/2  14:90/7  14:91/1
14:91/6  14:91/6  14:96/1  14:96/1
14:98/24  14:100/6  14:104/23
14:105/25  14:106/1  14:106/8
14:108/1  14:108/7  14:109/2

14:109/15  14:113/10  14:113/13
14:117/1
**They'd [1]**  14:63/3
**they're [18]**  14:30/14  14:37/25
14:52/11  14:57/14  14:57/24
14:62/23  14:63/10  14:65/21
14:66/14  14:67/12  14:69/6
14:70/8  14:85/22  14:89/20
14:90/5  14:96/9  14:106/13
14:107/5
**They've [1]**  14:82/19
**thing [7]**  14:4/7  14:14/4
14:41/11  14:47/12  14:71/6
14:112/4  14:113/2
**things [1]**  14:30/16
**think [67]**  14:4/18  14:5/2
14:5/3  14:8/7  14:23/22  14:34/5
14:37/22  14:38/16  14:38/25
14:39/18  14:44/24  14:46/25
14:48/4  14:48/17  14:48/19
14:48/23  14:49/6  14:49/13
14:51/16  14:51/21  14:51/22
14:51/25  14:51/25  14:52/3
14:52/5  14:52/14  14:52/15
14:52/18  14:53/3  14:53/9
14:54/18  14:56/5  14:57/3
14:57/6  14:57/8  14:57/24
14:60/4  14:65/17  14:67/8
14:67/9  14:67/11  14:78/14
14:78/21  14:79/9  14:79/11
14:83/2  14:83/10  14:83/11
14:85/2  14:85/3  14:89/4  14:94/8
14:94/25  14:95/6  14:96/10
14:97/18  14:99/6  14:106/10
14:107/16  14:108/19  14:110/3
14:110/6  14:110/8  14:112/16
14:113/13  14:115/23  14:118/3
**thinks [2]**  14:57/6  14:57/22
**third [6]**  1:1/16  14:71/23
14:74/14  14:79/5  14:79/8
14:106/7
**this [208]**
**those [52]**  14:6/18  14:8/13
14:8/13  14:14/20  14:14/22
14:24/3  14:30/17  14:32/11
14:37/7  14:37/8  14:37/23
14:38/15  14:38/16  14:42/10
14:43/8  14:45/24  14:46/2
14:49/7  14:55/2  14:55/3  14:55/3
14:55/4  14:55/14  14:55/22
14:55/22  14:55/23  14:60/5
14:61/18  14:61/21  14:65/2
14:65/4  14:66/23  14:68/11
14:72/22  14:75/11  14:78/12
14:79/2  14:80/24  14:81/1
14:84/12  14:84/14  14:85/11
14:88/25  14:91/3  14:96/5
14:98/2  14:104/20  14:109/24
14:112/7  14:113/22  14:116/9
14:116/10
**though [3]**  14:68/1  14:80/21
14:109/13
**thought [8]**  14:28/6  14:28/16
14:28/16  14:49/2  14:50/14
14:57/10  14:60/8  14:65/9
**thoughts [1]**  14:48/3
**three [3]**  14:52/10  14:78/10
14:103/23
**through [27]**  14:7/10  14:9/8
14:9/14  14:12/24  14:16/12
14:17/18  14:18/14  14:22/19
14:22/19  14:34/11  14:34/12

**T**

**through...** **[16]** 14:34/13
14:34/17 14:35/16 14:36/7
14:37/2 14:38/15 14:49/12
14:49/21 14:59/6 14:75/22
14:79/6 14:94/16 14:104/5
14:106/1 14:111/16 14:111/16
**thus** **[1]** 14:82/10
**tied** **[2]** 14:75/5 14:75/7
**time** **[91]** 14:9/17 14:31/12
14:31/14 14:31/19 14:33/18
14:36/11 14:37/5 14:38/15
14:38/23 14:43/11 14:44/6
14:44/9 14:45/10 14:47/19
14:48/15 14:50/20 14:51/17
14:52/6 14:54/4 14:54/12
14:54/20 14:56/14 14:58/23
14:58/24 14:61/13 14:61/21
14:61/23 14:61/24 14:62/3
14:62/8 14:62/9 14:63/4 14:63/8
14:63/12 14:69/1 14:69/6
14:69/7 14:69/16 14:70/9
14:70/13 14:70/14 14:70/23
14:71/1 14:71/3 14:71/7
14:71/20 14:72/20 14:72/20
14:72/24 14:73/5 14:73/5
14:73/7 14:73/10 14:73/16
14:73/16 14:74/1 14:74/12
14:74/12 14:74/25 14:75/1
14:75/3 14:75/9 14:75/10
14:75/12 14:75/17 14:75/17
14:76/21 14:77/6 14:79/24
14:89/23 14:91/4 14:91/24
14:92/4 14:92/5 14:92/13
14:92/21 14:93/22 14:93/23
14:94/6 14:95/8 14:98/22
14:100/1 14:100/19 14:101/18
14:103/3 14:106/19 14:111/17
14:113/6 14:113/16 14:114/19
14:119/6
**timeline** **[1]** 14:112/5
**times** **[3]** 14:32/14 14:82/19
14:82/21
**timing** **[2]** 14:40/11 14:92/2
**tips** **[1]** 14:101/8
**tired** **[1]** 14:48/23
**today** **[11]** 14:4/11 14:21/15
14:21/16 14:21/17 14:48/3
14:49/7 14:49/23 14:51/24
14:56/5 14:93/7 14:104/24
**today's** **[1]** 14:21/13
**together** **[3]** 14:59/4 14:66/12
14:113/10
**Tokyo** **[2]** 14:8/22 14:17/9
**told** **[2]** 14:8/10 14:9/22
**tolling** **[1]** 14:113/11
**tomorrow** **[14]** 14:48/8 14:49/24
14:50/15 14:51/20 14:56/11
14:58/6 14:58/9 14:58/12
14:58/24 14:59/7 14:59/8
14:59/16 14:118/22 14:118/23
**tonight** **[2]** 14:51/17 14:59/11
**too** **[6]** 14:8/5 14:31/25 14:32/9
14:43/4 14:57/10 14:98/25
**took** **[3]** 14:45/8 14:55/10
14:109/24
**tool** **[1]** 14:20/17
**top** **[3]** 14:19/21 14:57/4
14:112/22
**total** **[1]** 14:92/5
**Tower** **[1]** 14:74/13
**trace** **[1]** 14:20/15

**transactions** **[1]** 14:16/25
**transcript** **[1]** 1:1/13
**transfer** **[2]** 14:16/25
14:100/24 14:117/14 14:120/4
**transfer** **[2]** 14:15/9 14:16/5
**transferred** **[1]** 14:16/19
**treat** **[2]** 14:82/23 14:87/2
**treated** **[3]** 14:77/12 14:83/1
14:86/20
**trial** **[12]** 1:1/12 14:7/9
14:22/18 14:22/23 14:23/9
14:41/9 14:57/12 14:58/20
14:82/15 14:105/21 14:106/9
14:115/24
**tried** **[3]** 14:15/7 14:16/4
14:97/11
**trouble** **[2]** 14:5/5 14:36/14
**true** **[1]** 14:110/11
**trust** **[2]** 14:6/7 14:91/12
**try** **[5]** 14:9/17 14:9/18
14:10/14 14:48/25 14:89/5
**trying** **[9]** 14:43/4 14:59/23
14:66/3 14:67/16 14:85/23
14:92/16 14:93/18 14:102/8
14:102/9
**TTA** **[2]** 14:109/11 14:109/25
**TTA's** **[6]** 14:108/16 14:108/19
14:109/3 14:109/8 14:109/9
14:109/21
**TTA01** **[1]** 14:108/24
**TTA1** **[1]** 14:109/17
**TTA3** **[1]** 14:109/17
**TTA5** **[1]** 14:109/18
**Tuesday** **[1]** 14:59/7
**Tulip** **[1]** 14:108/20
**turn** **[2]** 14:10/2 14:10/5
**twice** **[2]** 14:42/5 14:78/5
**two** **[24]** 14:5/2 14:10/10
14:15/10 14:19/10 14:19/12
14:21/19 14:38/6 14:39/22
14:52/9 14:54/19 14:55/1
14:55/20 14:63/20 14:64/12
14:66/11 14:67/5 14:69/22
14:79/3 14:84/14 14:85/1
14:85/11 14:86/1 14:105/12
14:106/9
**two-person** **[2]** 14:63/20
14:69/22
**type** **[4]** 14:65/15 14:85/7
14:100/25 14:103/2
**types** **[1]** 14:111/13
**typos** **[1]** 14:76/2

**U**

**U.S** **[1]** 14:120/12
**U.S.** **[1]** 14:16/20
**U.S.-based** **[1]** 14:16/20
**Uh** **[1]** 14:78/8
**Uh-huh** **[1]** 14:78/8
**unchallenged** **[1]** 14:109/4
**under** **[10]** 14:7/14 14:20/24
14:22/12 14:44/15 14:63/3
14:63/4 14:63/7 14:66/11
14:69/16 14:75/9
**underneath** **[2]** 14:25/17
14:26/23
**understand** **[14]** 14:15/18
14:34/14 14:50/7 14:50/23
14:57/3 14:80/9 14:92/18
14:94/13 14:103/17 14:104/18
14:109/9 14:109/16 14:110/1
14:112/9
**understanding** **[5]** 14:49/25
14:52/9 14:57/1 14:80/11

14:113/15
**UNITED** **[1]** 1:1/1
**undisputed** **[2]** 14:41/19
14:41/22
**undue** **[2]** 14:46/7 14:46/8
**unfair** **[2]** 14:5/23 14:54/20
**unhighlighted** **[1]** 14:118/5
**UNITED** **[3]** 1:1/2 14:53/24
14:82/5
**unjudged** **[1]** 14:77/5
**unjust** **[4]** 14:76/16 14:77/5
14:77/11 14:77/12
**unless** **[4]** 14:25/21 14:68/24
14:70/2 14:77/1
**unlike** **[1]** 14:99/1 14:99/6
**unnecessary** **[1]** 14:64/13
**unquote** **[2]** 14:41/2 14:41/7
**unreasonable** **[1]** 14:105/19
**until** **[13]** 14:39/9 14:40/15
14:40/21 14:41/3 14:41/5
14:41/21 14:43/6 14:43/11
14:44/18 14:48/11 14:63/21
14:94/18 14:114/9
**up** **[38]** 14:10/17 14:11/1
14:11/19 14:13/8 14:13/13
14:13/15 14:14/5 14:15/2
14:17/21 14:18/15 14:19/6
14:20/20 14:22/9 14:22/25
14:23/11 14:24/15 14:25/3
14:25/6 14:26/5 14:27/6
14:27/25 14:29/22 14:33/18
14:34/11 14:34/17 14:37/1
14:38/15 14:38/16 14:48/19
14:50/17 14:51/24 14:56/23
14:66/3 14:72/19 14:92/12
14:97/3 14:97/24 14:115/17
**upgraded** **[2]** 14:32/13 14:32/13
**upload** **[1]** 14:118/10
**uploaded** **[3]** 14:50/2 14:56/17
14:118/20
**upon** **[10]** 14:36/11 14:37/5
14:39/2 14:43/7 14:43/22
14:44/13 14:50/16 14:51/18
14:72/3 14:107/5
**us** **[32]** 14:10/16 14:13/4
14:15/24 14:16/11 14:17/12
14:19/24 14:20/9 14:21/17
14:21/17 14:25/10 14:26/5
14:26/20 14:27/14 14:28/11
14:30/5 14:33/5 14:49/21
14:50/15 14:50/23 14:53/2
14:53/3 14:56/8 14:56/23
14:60/10 14:61/1 14:88/21
14:92/25 14:93/14 14:94/14
14:94/16 14:109/8 14:110/22
**use** **[15]** 14:19/23 14:26/2
14:26/2 14:31/23 14:32/8
14:56/14 14:57/25 14:58/23
14:61/18 14:68/23 14:104/5
14:113/23 14:113/25 14:118/21
14:119/8
**used** **[6]** 14:20/14 14:97/13
14:97/21 14:98/3 14:98/24
14:117/1
**Uyen** **[1]** 14:19/12

**V**

**vague** **[1]** 14:107/12
**valuation** **[2]** 14:69/17 14:82/24
**value** **[17]** 14:5/22 14:14/3
14:46/20 14:46/21 14:61/20
14:63/8 14:70/9 14:70/22
14:71/1 14:71/3 14:71/20

**V**

**value... [6]**  14:72/13 14:72/13
14:72/19 14:74/10 14:75/17
14:107/15
**valued [2]**  14:63/13 14:69/6
**valuing [2]**  14:61/23 14:62/8
**variation [1]**  14:57/21
**Varner [1]**  14:84/24
**Vel [1]**  14:104/15
**Vela [40]**  14:7/8 14:9/6 14:9/10
14:9/15 14:10/13 14:11/1
14:11/2 14:15/2 14:15/24
14:16/11 14:17/12 14:17/14
14:17/19 14:17/21 14:18/12
14:18/19 14:18/21 14:19/6
14:20/6 14:20/9 14:20/19
14:20/24 14:21/3 14:22/5
14:22/17 14:22/25 14:23/8
14:23/10 14:23/18 14:24/15
14:24/24 14:25/1 14:26/4
14:26/20 14:27/5 14:27/14
14:27/24 14:28/11 14:29/21
14:30/5
**venture [1]**  14:66/12
**verdict [20]**  14:38/15 14:56/4
14:56/15 14:60/16 14:70/10
14:89/14 14:89/15 14:89/17
14:89/19 14:90/5 14:90/8
14:90/17 14:90/24 14:91/2
14:91/11 14:91/19 14:93/6
14:118/19 14:118/21 14:119/2
**versa [1]**  14:57/23
**version [4]**  14:6/24 14:7/2
14:7/5 14:43/25
**very [7]**  14:36/23 14:36/23
14:47/6 14:54/1 14:64/11
14:100/25 14:107/12
**vice [1]**  14:57/23
**Video [3]**  14:17/13 14:17/20
14:18/20
**view [1]**  14:35/12
**violation [1]**  14:75/8
**virtually [1]**  14:19/10
**virtue [1]**  14:49/3
**Vistomail [2]**  14:7/22 14:7/22
**visual [1]**  14:92/25
**vote [1]**  14:59/2

**W**

**wait [4]**  14:39/9 14:44/17
14:102/3 14:115/22
**waiting [2]**  14:10/9 14:10/21
**Wales [2]**  14:45/25 14:107/7
**wallet.dat [1]**  14:7/23
**wankery [2]**  14:8/7 14:8/11
**want [34]**  14:6/20 14:10/1
14:19/18 14:34/15 14:38/19
14:48/21 14:49/12 14:50/9
14:50/14 14:50/19 14:50/24
14:66/6 14:72/23 14:73/22
14:79/7 14:82/22 14:87/2
14:88/20 14:89/21 14:89/23
14:92/5 14:93/19 14:94/13
14:95/9 14:95/10 14:117/11
14:117/18 14:117/21 14:118/25
14:119/3 14:119/6
**wanted [6]**  14:4/9 14:40/4
14:60/6 14:60/6 14:95/14
14:118/1
**wants [2]**  14:50/16 14:59/24
**was [141]**

**wasn't [8]**  14:5/12 14:24/4
14:111/21 14:114/3 14:115/12
14:111/15 14:114/8 14:115/12
**Watts [1]**  14:4/17
**way [13]**  14:5/13 14:8/7 14:24/7
14:42/20 14:52/25 14:57/23
14:59/9 14:63/1 14:89/11
14:93/22 14:105/1 14:106/2
14:112/22
**ways [2]**  14:90/1 14:91/6
**we [268]**
**we'd [6]**  14:37/4 14:37/23
14:38/11 14:38/16 14:39/7
14:114/11
**we'll [22]**  14:6/8 14:10/23
14:28/1 14:29/23 14:36/4
14:39/1 14:48/8 14:50/14
14:51/8 14:52/6 14:52/9
14:53/10 14:58/5 14:58/5
14:58/12 14:58/13 14:93/15
14:93/16 14:93/17 14:93/20
14:94/2 14:94/3
**we're [23]**  14:5/10 14:10/9
14:10/21 14:11/12 14:18/17
14:23/10 14:23/14 14:24/17
14:27/7 14:36/14 14:48/19
14:50/4 14:51/6 14:58/10
14:59/3 14:64/2 14:75/15
14:86/12 14:86/18 14:91/9
14:93/18 14:94/22 14:102/3
**we've [10]**  14:48/12 14:55/2
14:55/3 14:71/18 14:94/20
14:95/16 14:113/8 14:113/8
14:113/14 14:116/14
**Wednesday [2]**  14:59/4 14:120/7
**week [1]**  14:59/6
**weekend [2]**  14:87/23 14:88/16
**weeks [2]**  14:106/9 14:117/10
**Welcome [4]**  14:4/5 14:6/5
14:53/19 14:58/16
**well [49]**  14:4/22 14:5/2
14:20/3 14:21/22 14:33/15
14:33/17 14:34/9 14:34/24
14:35/1 14:36/4 14:37/9
14:38/18 14:39/17 14:39/22
14:40/5 14:41/22 14:43/9
14:43/16 14:45/19 14:46/8
14:46/21 14:47/18 14:49/2
14:50/16 14:52/11 14:54/10
14:58/11 14:63/7 14:65/6
14:65/9 14:67/2 14:68/1
14:68/23 14:72/7 14:72/23
14:73/4 14:79/16 14:88/15
14:89/2 14:93/6 14:94/20
14:106/11 14:106/20 14:111/12
14:115/10 14:118/7
**went [2]**  14:114/8 14:114/9
**were [48]**  14:4/4 14:6/4 14:7/14
14:19/15 14:19/16 14:30/24
14:31/21 14:32/4 14:32/13
14:32/14 14:34/1 14:35/1
14:36/11 14:45/23 14:45/23
14:45/24 14:51/15 14:52/4
14:52/4 14:54/8 14:54/11
14:58/15 14:59/19 14:60/8
14:65/10 14:66/24 14:74/12
14:81/19 14:82/9 14:83/10
14:89/10 14:90/22 14:93/7
14:97/20 14:97/24 14:97/24
14:106/8 14:109/9 14:110/10
14:111/13 14:112/5 14:113/21
14:113/22 14:114/9 14:115/22

14:116/17 14:116/21 14:116/22
**Westlaw [7]**  14:40/19 14:72/24
14:74/7 14:74/22 14:84/24
14:87/15 14:87/16
**what [72]**  14:4/19 14:5/9
14:5/10 14:8/7 14:11/21 14:13/9
14:13/9 14:13/15 14:20/13
14:25/22 14:29/7 14:30/24
14:34/9 14:37/10 14:38/11
14:43/9 14:43/9 14:45/18
14:48/2 14:48/3 14:48/17
14:51/15 14:52/23 14:53/1
14:54/5 14:54/25 14:55/4
14:55/16 14:56/2 14:57/1
14:57/10 14:57/14 14:57/20
14:57/25 14:58/23 14:63/25
14:64/10 14:65/7 14:66/13
14:67/4 14:67/10 14:68/24
14:72/22 14:74/11 14:74/12
14:79/23 14:80/5 14:80/11
14:80/12 14:83/20 14:83/21
14:85/10 14:93/20 14:94/9
14:95/4 14:95/9 14:98/8 14:99/4
14:100/13 14:101/9 14:106/6
14:106/17 14:107/8 14:109/9
14:113/3 14:113/18 14:116/15
14:116/17 14:117/5 14:117/23
14:117/23 14:118/3
**what's [4]**  14:5/10 14:29/8
14:96/24 14:116/11
**whatever [1]**  14:96/6
**whatsoever [1]**  14:14/23
**when [45]**  14:4/25 14:6/16
14:8/1 14:8/5 14:11/21 14:11/24
14:12/2 14:12/5 14:12/16
14:12/17 14:18/6 14:19/15
14:38/12 14:38/12 14:39/5
14:40/15 14:41/15 14:42/7
14:43/11 14:44/21 14:47/13
14:48/22 14:49/13 14:50/4
14:50/4 14:51/22 14:63/19
14:66/11 14:69/15 14:75/1
14:75/4 14:75/6 14:75/6
14:79/24 14:85/21 14:86/16
14:87/4 14:104/20 14:105/6
14:107/1 14:111/19 14:111/22
14:117/17 14:117/21 14:118/21
**whenever [1]**  14:12/5
**where [28]**  14:5/8 14:7/20
14:16/16 14:41/2 14:42/11
14:50/14 14:50/19 14:51/6
14:51/18 14:52/18 14:61/16
14:63/12 14:67/17 14:81/6
14:81/23 14:84/10 14:84/17
14:84/17 14:85/9 14:90/5
14:90/13 14:92/16 14:92/19
14:93/18 14:95/2 14:106/13
14:109/23 14:110/11
**whereby [2]**  14:78/19 14:113/5
**whether [15]**  14:12/24 14:13/22
14:22/2 14:22/15 14:38/2
14:38/14 14:61/18 14:80/1
14:82/11 14:82/11 14:83/1
14:83/5 14:96/4 14:114/25
14:114/25
**which [46]**  14:26/6 14:27/25
14:28/23 14:35/13 14:36/11
14:37/5 14:39/2 14:42/24
14:44/2 14:44/13 14:45/8
14:45/9 14:45/12 14:51/23
14:62/13 14:65/16 14:65/25
14:66/13 14:66/15 14:68/17

# W

**which... [26]** 14:70/11 14:70/24
14:71/6 14:71/17 14:71/18
14:74/4 14:76/8 14:76/17
14:80/1 14:81/12 14:83/4
14:87/14 14:87/16 14:88/4
14:94/15 14:99/1 14:99/4
14:100/8 14:100/21 14:101/2
14:101/10 14:108/24 14:110/22
14:113/6 14:115/1 14:117/16
**while [4]** 14:10/9 14:10/21
14:60/7 14:114/9
**whip [1]** 14:107/24
**White [1]** 14:53/24
**whitepaper [3]** 14:6/18 14:7/21
14:8/2
**who [5]** 14:16/20 14:40/21
14:65/15 14:78/22 14:109/7
**who's [2]** 14:62/4 14:93/25
**whoever's [1]** 14:94/1
**whole [3]** 14:8/9 14:77/12
14:113/1
**why [16]** 14:5/9 14:47/18
14:50/11 14:50/11 14:55/9
14:60/2 14:60/16 14:67/2
14:67/7 14:80/7 14:97/21
14:98/2 14:100/11 14:102/16
14:111/15 14:117/17
**will [47]** 14:5/21 14:5/24
14:10/16 14:12/15 14:15/20
14:24/9 14:31/15 14:32/6
14:36/10 14:41/4 14:43/21
14:47/5 14:47/23 14:51/2
14:52/12 14:52/16 14:55/4
14:56/5 14:56/10 14:56/11
14:56/12 14:56/13 14:56/23
14:58/21 14:58/25 14:59/1
14:59/5 14:59/7 14:59/8
14:92/17 14:93/5 14:95/3
14:97/22 14:97/22 14:98/11
14:99/14 14:101/23 14:104/6
14:115/7 14:115/9 14:118/4
14:118/5 14:118/5 14:118/6
14:118/19 14:118/23 14:119/8
**willful [2]** 14:84/6 14:84/21
**Williams [3]** 14:66/23 14:67/19
14:67/23
**Wilson [5]** 14:21/18 14:21/25
14:22/2 14:27/2 14:30/13
**window [1]** 14:45/6
**within [11]** 14:39/5 14:41/22
14:45/6 14:45/11 14:56/5
14:59/14 14:69/14 14:71/3
14:71/20 14:72/19 14:100/20
**without [5]** 14:27/11 14:28/14
14:95/18 14:105/1 14:113/15
**witness [11]** 14:6/10 14:22/17
14:32/21 14:97/14 14:98/4
14:98/21 14:101/5 14:104/5
14:110/12 14:111/16 14:111/17
**witnesses [3]** 1:3/3 14:39/15
14:101/11
**Wooloowin [5]** 14:21/12 14:21/18
14:25/10 14:27/1 14:30/14
**word [4]** 14:8/6 14:78/10
14:78/10 14:101/8
**wording [2]** 14:44/12 14:44/16
**words [1]** 14:116/10
**work [4]** 14:5/13 14:6/8
14:10/16 14:56/10
**working [3]** 14:10/18 14:17/6
14:54/19

**worth [3]** 14:14/6 14:74/11
14:74/12
**would [157]**
**wouldn't [2]** 14:67/3 14:83/13
**WRIGHT [84]** 1:1/8 1:3/4 14:4/11
14:4/12 14:4/15 14:4/17 14:4/24
14:6/9 14:6/14 14:6/16 14:6/20
14:7/10 14:7/14 14:7/18 14:8/14
14:8/16 14:11/6 14:11/9
14:11/25 14:12/22 14:13/7
14:14/21 14:15/6 14:15/22
14:16/7 14:16/18 14:18/3
14:17/1 14:17/8 14:18/3
14:18/25 14:19/9 14:19/22
14:19/22 14:19/23 14:19/24
14:20/14 14:22/11 14:22/23
14:23/5 14:25/12 14:25/18
14:25/23 14:26/1 14:26/16
14:26/24 14:26/25 14:27/17
14:27/21 14:28/23 14:29/3
14:29/14 14:30/8 14:30/10
14:30/21 14:31/10 14:31/11
14:32/6 14:32/19 14:35/16
14:38/6 14:42/19 14:45/17
14:46/24 14:47/21 14:60/21
14:61/10 14:62/24 14:80/11
14:87/16 14:96/4 14:97/8
14:97/8 14:98/7 14:103/23
14:104/11 14:104/20 14:105/2
14:105/25 14:106/1 14:106/13
14:107/21 14:111/4 14:112/6
**Wright's [7]** 14:9/7 14:16/2
14:16/16 14:18/13 14:22/18
14:31/7 14:113/7
**write [2]** 14:12/2 14:31/12
**writing [3]** 14:8/2 14:13/3
14:31/15
**written [7]** 14:61/5 14:61/8
14:65/15 14:65/19 14:65/22
14:66/13 14:92/24
**wrong [3]** 14:9/10 14:13/6
14:42/6
**wrote [2]** 14:8/5 14:83/21

# Y

**yeah [20]** 14:18/23 14:21/4
14:34/24 14:52/25 14:57/20
14:73/22 14:73/23 14:77/2
14:79/6 14:86/10 14:98/10
14:98/23 14:99/9 14:100/6
14:102/13 14:106/22 14:113/2
14:113/2 14:113/2 14:116/13
**year [5]** 14:32/11 14:32/15
14:41/14 14:41/23 14:70/14
**years [7]** 14:19/12 14:44/18
14:54/4 14:55/10 14:55/23
14:105/13 14:105/18
**yellow [2]** 14:116/23 14:116/24
**yes [97]** 14:7/1 14:7/7 14:8/10
14:8/19 14:9/13 14:10/22
14:11/8 14:11/11 14:11/14
14:11/17 14:12/18 14:13/12
14:14/1 14:14/17 14:14/20
14:17/11 14:17/17 14:17/25
14:18/5 14:18/8 14:18/11
14:19/14 14:20/5 14:20/13
14:20/18 14:20/18 14:21/8
14:22/7 14:23/7 14:25/19
14:27/1 14:29/7 14:29/11
14:29/13 14:30/14 14:30/20
14:33/7 14:34/3 14:36/21
14:37/14 14:38/1 14:38/9
14:40/3 14:51/4 14:51/4

14:54/22 14:56/20 14:57/11
14:58/9 14:60/1 14:60/20
14:61/2 14:64/7 14:65/1 14:65/9
14:66/8 14:68/8 14:68/15
14:69/14 14:73/18 14:75/15
14:76/1 14:76/4 14:77/7
14:77/18 14:77/24 14:78/4
14:78/17 14:82/18 14:85/14
14:87/8 14:87/10 14:88/1
14:89/16 14:91/1 14:92/11
14:93/11 14:94/11 14:95/11
14:95/12 14:95/15 14:98/9
14:102/23 14:103/12 14:103/19
14:110/19 14:111/1 14:115/4
14:115/6 14:115/11 14:116/3
14:118/2 14:118/9 14:118/12
**yet [1]** 14:44/4
**York [4]** 1:1/19 1:1/19 1:2/11
1:2/11
**you [338]**
**you'd [2]** 14:36/8 14:97/15
**you'll [1]** 14:31/19
**you're [16]** 14:11/9 14:15/18
14:21/12 14:46/19 14:47/3
14:49/25 14:50/22 14:50/22
14:51/8 14:59/12 14:59/14
14:86/4 14:92/9 14:94/13
14:111/21 14:115/14
**you've [5]** 14:25/5 14:31/14
14:89/6 14:93/23 14:95/4
**your [333]**
**your Honor [206]**
**Your Honor's [6]** 14:35/12
14:35/21 14:72/12 14:74/9
14:89/2 14:103/6
**yourself [5]** 14:7/19 14:18/25
14:19/1 14:26/16 14:28/24

# Z

**ZACK [1]** 1:1/22
**ZALMAN [1]** 1:2/9
**zoom [5]** 14:15/3 14:15/25
14:16/12 14:18/22 14:21/3