| | |
|---|---|
| **From**: | dave kleiman [dave@davekleiman.com] |
| **Sent**: | 4/22/2008 3:37:15 PM |
| **To**: | Craig Wright [Craig.Wright@bdo.com.au] |
| **Subject**: | FW: Authorship offer: (ISC)2 Press Series - ISSMP |
| **Attachments**: | ISSMP Law, Investigations, Forensics and Ethics Contributor Contract.doc |

Craig,

I know you have a bizillion initials after your name, cannot remember if CISSP, ISSMP are among them.
If so do you have any interest in writing this?  It would be writing for (ISC)2 and their new official guide.
I have not been doing too well lately, I and I am not going to be able to fulfill the requirements.
If you would like this opportunity, let me know and I will make a formal introduction.

Dave


-----Original Message-----
From: Marc Himebaugh [mailto:mhimebaugh@isc2.org]
Sent: Wednesday, April 16, 2008 16:32
To: dave@davekleiman.com;
Cc: O'Hanley, Rich; Hal Tipton; Kevin Henry
Subject: FW: Authorship offer: (ISC)2 Press Series - ISSMP

Dave,


I just wanted to follow up with you on our invitation to write the Law chapter for the ISSMP textbook. …  We seem to have a tough time connecting. I am hopeful that this email gets past the mischievous junk mail filters and you actually receive this note with the Authors Contract attached.  If you are still interested in writing the chapter, please sign the above document as your earliest convenience and send it back to Rich O'Hanley at Auerbach Publications (the address below mine). We'll then send you materials to help you get started.


Please let me know how you would like to proceed.


Thanks


Marc Himebaugh

Senior Product Development Manager

(ISC)²

33920 US Highway 19 North

Suite 205

Palm Harbor, FL 34684

mhimebaugh@isc2.org <mailto:mhimebaugh@isc2.org>

+1.727.785.0189 x202



Richard O'Hanley

Dr. Wright Ex.

D335

DEFAUS_00688405

Publisher, Auerbach Publications

Taylor & Francis Group

270 Madison Avenue

New York NY 10016

Telephone 917-351-7146

Fax 212-947-3027

www.auerbach-publications.com

From: Marc Himebaugh
Sent: Thursday, April 03, 2008 5:19 PM
To: 'dave kleiman'
Cc: Rich Ohanley; Hal Tipton; Kevin Henry; Elise Yacobellis
Subject: RE: Authorship offer: (ISC)2 Press Series - ISSMP

Dave,

You should have gotten the below email from Rich on 3/20/08 with the above contract attachment.  Did your junk mail filter take it out for some reason.

Marc H.

From: O'Hanley, Rich [mailto:rich.ohanley@taylorandfrancis.com]
Sent: Thursday, March 20, 2008 12:31 PM
To: dave@davekleiman.com
Cc: Marc Himebaugh
Subject: RE: Authorship offer: (ISC)2 Press Series - ISSMP

Attached are the contract, NDA, and non-compete for the "Law, Investigations, Forensics & Ethics" chapter for the first edition of the Official (ISC)2 Guide to the ISSMP CBK.

Once I received the signed agreement, I'll send you

The Course Outline

A .pdf and a Word version of the current chapter

Author Guidelines

Also, if you request, I'll provide you with access to our online information security library, www.infosecuritynetbase.com <http://www.infosecuritynetbase.com/> , to help with your research.

DEFAUS_00688406

We're looking for a first draft by July 31, 2008, and following a two-week (ISC)2 tech review, the final manuscript by August 31, 2008.

Thanks

Rich

******************************************

Richard O'Hanley

Publisher, Auerbach Publications

Taylor & Francis Group

270 Madison Avenue

New York NY 10016

Telephone 917-351-7146

Fax 212-947-3027

www.auerbach-publications.com

-----Original Message-----
From: dave kleiman [mailto:dave@davekleiman.com]
Sent: Thursday, April 03, 2008 5:08 PM
To: Marc Himebaugh
Cc: Rich Ohanley; Hal Tipton; Kevin Henry; Elise Yacobellis
Subject: RE: Authorship offer: (ISC)2 Press Series - ISSMP

Marc,

Never heard anything further on this, is it still a go??

Dave

Respectfully,

Dave Kleiman - http://www.davekleiman.com

4371 Northlake Blvd #314

Palm Beach Gardens, FL 33410

561.310.8801

```
-----Original Message-----
From: dave kleiman [mailto:dave@davekleiman.com]
Sent: Tuesday, March 04, 2008 07:26
To: 'Marc Himebaugh'
Cc: 'Rich Ohanley'; 'Hal Tipton'; 'Kevin Henry'; 'Elise Yacobellis'
Subject: RE: Authorship offer: (ISC)2 Press Series - ISSMP
```

Hi Marc,

Do we have an outline, authors writing style guide/template. A possible content count (number of pages required for this chapter etc.). My presumption since you mentioned ISSMP is this would be from the Security Managers perspective?

My only requirement is my name appear on the cover as contrib-author or whatever you are designating, and my name and BIO appear in the book.

Attached is my CV.

Dave

```
    -----Original Message-----
    From: Marc Himebaugh [mailto:mhimebaugh@isc2.org]
    Sent: Monday, March 03, 2008 16:08
    To: dave Kleiman - mobile; dave@isecureu.com;
isc2@davekleiman.com
    Cc: Rich Ohanley; Hal Tipton; Kevin Henry; Elise Yacobellis
    Subject: RE: Authorship offer: (ISC)2 Press Series - ISSMP


    Excellent!  Thank you


    -----Original Message-----
```

DEFAUS_00688408

```
From: dave Kleiman - mobile [mailto:dave@davekleiman.com]
Sent: Monday, March 03, 2008 4:00 PM
To: Marc Himebaugh; dave@isecureu.com; isc2@davekleiman.com
Cc: Rich Ohanley; Hal Tipton; Kevin Henry; Elise Yacobellis
Subject: RE: Authorship offer: (ISC)2 Press Series - ISSMP


Yes I would be interested.  I am mobile right now will respond fully
later tonight, or tomorrow.


Respectfully,

Dave Kleiman
From Dave's Phone - 561.310.8801
http://www.davekleiman.com




-----Original Message-----
From: Marc Himebaugh <mhimebaugh@isc2.org>
Sent: Monday, March 03, 2008 15:09
To: dave@isecureu.com; isc2@davekleiman.com
Cc: O'Hanley, Rich <rich.ohanley@taylorandfrancis.com>; Hal Tipton
<haltip@sbcglobal.net>; Kevin Henry <khenry@isc2.org>; Elise
Yacobellis <eyacobellis@isc2.org>
Subject: Authorship offer: (ISC)2 Press Series - ISSMP


Mr. Dave Kleiman,




(ISC)2 Press is ready to start a project to publish for the first
time, the "Official (ISC)2 Guide to the ISSMP CBK".  As a recognized
expert in this field, your name was naturally discussed as a
potential author for the Law, Investigations, Forensics & Ethics
```

DEFAUS_00688409

```
    domain in the new ISSMP textbook.



    Are you interested in participating in this royalty based
authorship
    opportunity?  And equally important, does your professional and
    personal schedule allow you to devote the time to this project.
If
    you are writing for the new ISSMP textbook, you will be given
    approximately 120 days to write the Law, Investigations,
Forensics &
    Ethics domain with a 1st draft due within 90 days of a start
date.
    The ISSMP textbook is tentatively targeted to start in May.



    If you are interested in the prestige and recognition of being
a
    published author of the (ISC)2 Press Series and want to
participate
    in this royalty based opportunity,  please reply to this email
by
    saying:



    1.      'Yes', I would like to write the Law, Investigations,
    Forensics & Ethics domain for the ISSMP CBK Guide.
    2.      'Yes', I can devote the time needed to complete the
project.



    If you do not think you can take on one or more parts of this
work,
    please let me know that as well. You can also refer a trusted
peer
```

DEFAUS_00688410

for our consideration as a replacement.

Your answers will be referred to Richard O'Hanley, the (ISC)2 Press Series publisher for the next steps.

Thank you for your thoughtful and timely response to this query.

Marc Himebaugh

Senior Product Development Manager

(ISC)²

33920 US Highway 19 North

Suite 205

Palm Harbor, FL 34684

mhimebaugh@isc2.org

+1.727.785.0189 x202

DEFAUS_00688411

DEFAUS_00688412

## AUTHOR AGREEMENT{PRIVATE }

THIS WORK FOR HIRE AGREEMENT is made and entered into by and between David Kleiman (hereinafter referred to, whether one or more, and whether an author or an editor, as the "Author") and Auerbach Publications, an imprint of Taylor & Francis LLC, a limited liability company, having its principal place of business at 6000 Broken Sound Parkway NW, Boca Raton, Florida 33487, U.S.A. (hereinafter referred to as the "Publisher").

The Publisher and the Author hereby agree as follows:

1.  PREPARATION AND DELIVERY OF MANUSCRIPT.

    (a) The Author shall write the textual material (hereinafter called the "Manuscript") and furnish all original artwork and photographs (hereinafter called the "Illustrations"), and 20 test questions with answers and rationalizations according to Schedule A, Production Standards, attached to this Agreement, for a work (hereinafter called the "Work") tentatively titled:

    "Law, Investigations, Forensics and Ethics" in Official (ISC)$^2$ Guide to the ISSMP CBK, First Edition

    or such other title as may be determined by the Publisher in consultation with the Author.

    (b) The Work shall consist of approximately 100 manuscript pages and include approximately 25 camera-ready Illustrations to yield a completed work of approximately 50 printed pages. Two (2) copies of the Manuscript will be submitted to the Publisher: one (1) in an electronic form specified by the Publisher and one (1) copy of the electronic version printed on 8½" x 11" ("A4") white paper, double-spaced on one side and otherwise prepared in accordance with the Publisher's Instruction Guide for Authors, a copy of which will be delivered to the Author. The Illustrations submitted to the Publisher shall be in an electronic format or in camera-ready condition suitable for scanning, placement, or reproduction in the form specified by the Publisher. Should the Author be unable to supply a suitable electronic files for the Manuscript or the Illustrations, the Publisher will prepare a suitable version and apply those charges against the Author's royalty account.

    (c) The Author agrees to deliver the electronic files of the completed Work to the Publisher on or before July 31, 2008. The Author shall retain at all times at least one (1) copy of the Manuscript and the Illustrations. As deemed necessary, the Publisher agrees to touch up, redraw or otherwise convert line drawings into an acceptable electronic format for reproduction, the reasonable cost of which will be applied against the Author's royalty account.

    (d) The Author shall make every reasonable effort to obtain original material for the Work. In the event the material must taken from sources in which the copyright is owned by a person or entity other than the Author or the Contributors, the Author must identify or cause to be identified all such materials. The Author shall obtain, or cause to be obtained without expense to the Publisher, from each owner of such copyrighted material, written permission to reproduce such copyrighted material in all media including electronic form in the Work and deliver a copy of each written permission to the Publisher with the completed Work. The Author shall (at the time the work is submitted) prepare, or cause to be prepared, a list setting forth the location in the Work of all material in the Work which requires permission and submit it to the Publisher along with all the written permissions on the list. Each permission that the Author is obligated to obtain under this Agreement must be as broad as with the rights obtained by the Publisher in the Work pursuant to this Agreement. The Publisher shall make available to the Author permission forms that have been approved by the Publisher. The review of such permissions by the Publisher shall not relieve the Author of his obligations under this paragraph.

2.  MANUSCRIPT EDITING.

    The Publisher may edit the Work in accordance with the Publisher's style of capitalization, punctuation, spelling, and usage.

ISSMP, Page 1 of 12

CONFIDENTIAL

3. AUTHOR'S CORRECTIONS.

Following an (ISC)² technical review, the Author agrees to read, correct, and promptly return within fourteen (14) days a revision of the Work to the Publisher in accordance with the Publisher's specified schedule. In the event that correction of proofs is not returned within fourteen (14) days, the Publisher shall have the right to publish the Work without the Author's approval and terminate this agreement.

The Author agrees to read, correct, and promptly return within fourteen (14) days all proofs of the Work to the Publisher in accordance with the Publisher's specified schedule. Author alteration costs in excess of ten percent (10%) of the cost of the original composition, and any expenses incurred by the Publisher in the making of Illustrations replacing those originally submitted with the Work, shall be charged to the Royalty Account. In the event that correction of proofs is not returned within fourteen (14) days the Publisher shall have the right to publish the Work without the Author's approval.

4. PRODUCTION AND SALE.

The Publisher will, subject to the terms and conditions of this Agreement, publish the Work in a format and style that it deems appropriate, and: (i) except as provided in Paragraph 3 above, assume all costs of the Publisher's editing, proofreading, typesetting, lithography, engraving, printing, binding, packaging, and all other manufacturing processes, and (ii) pay all costs of promoting, advertising, and selling the Work, the extent of which shall be determined by the Publisher. The Publisher shall have the sole right to determine the price at which the Work will be sold and the manner in which it will be promoted, advertised and marketed.

5. COPYRIGHT.

The Author hereby expressly grants, transfers, and assigns to the Publisher full and exclusive rights to the Work, including, without limitation, the copyright in the Work, all revisions thereof, and the right to prepare translations and other derivative works based upon the Work in all forms and languages for the full term of copyright, and all renewals and extensions thereof, throughout the world. The Publisher's exclusive rights include, without limitation, the right to reproduce, publish, sell, and distribute copies of the Work, selections therefrom, and translations and other derivative Works based upon the Work, in print, audio-visual, electronic, or by any and all media now or hereafter known or devised, and the right to license or authorize others to do any or all of the foregoing throughout the world.

The Publisher will register copyright in the Work in the name of the Publisher and International Information Systems Security Certification Consortium, Inc. ((ISC)²) in compliance with the United States Copyright Law. If the Publisher supplies artwork (including artwork for the cover of the Work), it may register copyright separately therein in a manner satisfactory to the Publisher.

6. ROYALTIES.

(a) The Publisher agrees to pay the Author, and the Author shall accept as payment in full for writing and delivering the Manuscript, Illustrations, and the Index, for the performance of all of the obligations of the Author hereunder, and for all the rights granted to the Publisher pursuant to this Agreement, the following amounts:

(b) For copies of the English language editions of the Work sold by the Publisher in the United States of America, one percent (1%) of the Publisher's net receipts (as defined below).

(c) On translations, licensing sales, electronic database sales, excerpts, abridgments, direct response sales, deep discount sales (sales at a discount of fifty percent (50%) or greater of the Publisher's established list price of the Work), and on all sales of copies of the Work outside the United States of America, the Publisher shall pay royalties at one half (½) the rate set forth in Paragraph 6(b) above in respect of the Publisher's net receipts. In the event the Work is included in an electronic database with other works, or is otherwise exploited in combination with other works, royalties will be apportioned by Publisher in its sole discretion, exercised in good faith.

ISSMP, Page 2 of 12

CONFIDENTIAL

DEFAUS_00688414

(d) In the event the Publisher exercises any of the rights of the Publisher pursuant to Paragraph 5 above and a royalty is not specifically provided for, the royalty which shall be payable to the Author shall be one-half (½) of the rate set forth in Paragraph 6(b) above in respect of the Publisher's net receipts.

(e) Notwithstanding the above, no royalty will be paid on copies of the Work furnished gratis for review, advertising, promotion, bonus, sample, or like purposes, or on copies of the Work sold at less than Publisher's cost, or on any copies returned to Publisher for any reason, or on copies of the Work sold to the Author. Free use of the rights granted herein may be made by the Publisher to promote the sale of copies of the Work and the rights therein. The Publisher may create a reasonable reserve for returns when calculating royalties.

(f) For purposes of this Agreement, the Publisher's "net receipts" from sales shall mean monies received by the Publisher from such sales less adjustments for discounts, credits and returns. Royalties will not be paid on prepaid transportation, postage, insurance and taxes. The Publisher's "net receipts" from licensing or assignment shall mean monies received by the Publisher less any specified costs of such licensing or assignment.

(g) All payments made under the terms of this Agreement will be subject to Federal income tax withholding, as required by the United States Internal Revenue Code.

(h) All royalties and other income accruing to the Author under this Agreement shall be credited to an account maintained on the records of the Publisher (the "Royalty Account"), which Royalty Account will be charged for all amounts paid or payable to Author, including any advance payments, and for all amounts Author is charged, or obligated to pay, pursuant to this Agreement.

7. ACCOUNTS.

(a) The Publisher will render to the Author statements of sales made, the Publisher's net receipts, fees, and other monies received from licensing, if any. These statements will be rendered semi-annually in August of each year for the six (6) months ending as of the preceding June 30th, and in February of each year for the six (6) months ending as of the preceding December 31st. Subject to the provisions of this Agreement, the statement will be accompanied by a check for any monies shown to be due by such statement. If less than fifty dollars ($50.00) is shown to be due in any accounting period, the Publisher may defer payment thereof until the next period in which fifty dollars ($50.00) or more is shown to be due.

(b) If any person comprising the Author has received an overpayment of money from the Publisher or has an outstanding monetary obligation to the Publisher, whether arising out of this Agreement or any other agreement with the Publisher, the Publisher may deduct the amount of such overpayment or outstanding obligation from the Royalty Account or any sums due to such person under this Agreement.

8. FREE AND DISCOUNT COPIES.

Upon first publication of the Work in book form, each Author named herein shall be entitled to receive from the Publisher, without charge, one (1) copy of print edition of the Work. The Author shall also be entitled to purchase additional copies of the Work for the Author's personal use at a discount of twenty-five percent (25%) off the suggested retail price of the Work, plus the cost of shipping and handling, while the Work remains in print. No royalties shall be paid on copies of the Work purchased by the Author.

9. AUTHOR'S WARRANTIES.

(a) The Author represents and warrants that: the Author has the full right and authority to enter into this Agreement and to grant the rights granted to the Publisher hereunder; the Author has not previously assigned, transferred, or otherwise encumbered such rights; and the Work shall be original with Author.

ISSMP, Page 3 of 12

CONFIDENTIAL

(b)     The Author represents and warrants that: the Work will not infringe upon any statutory or common law copyright or violate any law or government regulation; the Work will contain no matter which will be libelous or otherwise injurious or in violation of any right of privacy or any other personal or proprietary right of any third party; the Work contains no material which to the best of the Author's knowledge and belief is inaccurate, or any statement, instruction, material, or formula that involves the foreseeable risk of injury to readers or users of the Work.

(c)     Should any material be submitted for publication in the Work, which in the opinion of the Publisher may result in a breach of any of the foregoing warranties, the Publisher shall have the right to publish the Work without such material or not to publish the Work at all. Nothing contained herein shall be deemed to impose upon the Publisher any duty of independent investigation, nor shall any independent investigation by the Publisher relieve the Author of the Author's obligations hereunder.

(d)     The Author represents and warrants that, except as previously disclosed to the Publisher in writing, the Author has not aided in the preparation of and is not under any obligation to any other publisher or person to prepare any publication directly competitive with the Work, or which could interfere with his or her performance of this Agreement or interfere with or impair the sale of the Work.

(e)     The Author and Publisher shall each promptly inform the other of any claim, demand or suit made against it in connection with the Work. The Author shall fully indemnify and hold the Publisher harmless against any loss, damage, cost, or expense (including reasonable counsel fees) which may be sustained or incurred by the Publisher by reason of any claim, demand, investigation, suit, or recovery arising out of the breach or alleged breach of any of the foregoing warranties.

(f)     The Publisher shall have the right to defend any such suit through counsel of its own choice and the right to settle any such suit on such terms as the Publisher shall deem advisable; provided, however, that the Author shall not be responsible for indemnifying the Publisher for any settlement made without the Author's consent, which consent shall not be unreasonably withheld or delayed.

(g)     In the event of a claim or suit against the Publisher which, if sustained, would constitute a breach of any of the Author's warranties, the Publisher shall have the right to withdraw the Work from distribution and withhold royalties which become due to the Author pursuant to this Agreement pending a final determination of such claim or suit. The Publisher shall have the right to apply any such withheld royalties to the reduction of any of the obligations of the Author to the Publisher contained in this Paragraph 9.

(h)     Author's representations, warranties and indemnities as stated herein may be extended by Publisher to third party licenses and grantees and Author shall be liable thereon as if such representations, warranties and indemnities were originally made by Author to them.

(i)     The provisions of this Paragraph 9 shall survive the termination of this Agreement.

10.     OTHER PUBLICATIONS.

The Author agrees that so long as the Work remains in print, the Author will not participate in the preparation or publication of, or allow his or her name to be used in connection with, any work which might directly compete with the Work or the exercise of any rights granted Publisher hereunder. The Author may, however, draw on and refer to material contained in the Work in preparing articles for publication in professional journals, for teaching purposes, and for delivery at professional meetings and symposia, provided appropriate credit is given to the Publisher and the Work.

11.     DESIGNATION AS AUTHOR.

The Publisher shall have the right to designate the Author as the author of the Work, and, if the Author be more than one, in such manner and order as the Publisher may determine in its reasonable judgment fairly reflects

their relative contributions to the Work, and to use the Author's name and likeness in advertising and promoting the Work and derivative works based on the Work, and other commercial use in connection with the Work. Where there is more than one author a single author shall be designated lead author for the purpose of dealing with the Publisher.

12. IMPRINT.

The Work will be published initially under the imprint of Auerbach Publications and (ISC)$^2$ Press or such other imprint as the Publisher deems suitable for the Work.

13. REVISIONS OR NEW EDITIONS.

(a) Subject to the terms and conditions hereof, if the Publisher determines that a revision or new edition of the Work is desirable, it shall request each person comprising the Author to participate in the preparation of the revision or new edition pursuant to a schedule established by the Publisher. Each person so requested to participate shall advise the Publisher in writing within ninety (90) days whether he or she will participate in the preparation of such revision or new edition.

(b) The Publisher may select a successor to any person comprising the Author to participate in the preparation of a revision or new edition, or may designate the remaining persons comprising the Author to complete such revision or new edition.

(c) Any royalties or other compensation payable to any successor of a person comprising the Author in respect of any revision or new edition of the Work shall be deducted from any royalties or other compensation which may be or become due to the person or persons comprising the Author who is or are succeeded. In the event any person comprising the Author does not participate in a revision or new edition of the Work, the Publisher shall have no obligation to request such person to participate in any subsequent revision or new edition of the Work.

(d) When publishing revisions or new editions, and in the promotion thereof, the Publisher may give credit to the Author and any successor of a person comprising the Author in such order and manner which, in the judgment of the Publisher, fairly reflects their relative contributions to such revision or new edition, and, if appropriate, in the reasonable judgment of the Publisher, omit the name or names of the person or persons comprising the Author who do not participate or collaborate in such revision or new edition.

(e) All terms and conditions of this Agreement applicable to the first edition of the Work, excluding any grants and advance payments, shall apply to each revision or new edition thereof, unless otherwise provided herein.

14. OUT-OF-PRINT PROVISIONS.

If at any time, the Publisher determines that the demand for the Work is insufficient to warrant its continued publication, the Publisher may declare the Work out of print. In such event, the Author shall have the right to purchase the Publisher's stock of the Work, if any, at one-quarter (¼) of the Publisher's established list price, but not below cost. The Work will not be deemed out of print if it is on sale by the Publisher in any form permitted hereunder, or if it is under option, or if any license granted by the Publisher is outstanding.

If the Publisher declares the Work out of print, then upon the Author's written demand, the rights granted by the Author under this Agreement will revert to the Author, subject to any outstanding licenses and this Agreement will terminate, subject to such outstanding licenses, and except for Paragraph 9. If there are multiple authors under this Agreement, they will take individual ownership, in proportion to their respective shares of the royalties under this Agreement, of all rights jointly owned by them at the time of termination. The termination of this Agreement will not affect the Publisher's continuing right to sell all remaining bound copies and sheets of the Work and derivative works on hand at the time of termination.

15. NON-DELIVERY OF THE WORK.

CONFIDENTIAL

DEFAUS_00688417

(a) The Author agrees to keep the Publisher informed of any condition or circumstance preventing the Author from delivering the materials described in, and in accordance with the provisions of, Paragraph 1 of this Agreement. In such event, or if the Author for any reason fails to deliver to the Publisher any of the materials as set forth in Paragraph 1 of this Agreement in form and content satisfactory to the Publisher by agreed upon dates, the Publisher shall have the right, upon thirty (30) days written notice to the Author, to terminate this Agreement, without any further obligation or liability to the Author (except as provided in Paragraph 15(b) below), or to engage a person or persons to provide, complete, or revise the late or unacceptable material and to charge the cost thereof (including, without limitation, compensation payable to other authors) against any sums accruing to the Author under this Agreement. The Publisher may also give appropriate credit to such other contributors to the Work.

(b) In the event that this Agreement is terminated by the Publisher pursuant to Paragraph 15(a), the Author shall return to the Publisher all payments, if any, theretofore made to the Author hereunder within one hundred and twenty (120) days of the date of termination of this Agreement, and the Publisher shall return all unpublished materials to the Author. Upon the return of any materials to the Author, or upon such termination if the Publisher has no obligation to return any materials, the parties hereto shall be released and discharged from any and all claims which either may have against the other relating to the Work, except that the Publisher does not release the Author from the Author's obligation to return to the Publisher all payments, if any, made to the Author under this Agreement. The provisions of this Paragraph 15 shall, at the option of the Publisher, apply separately to each individual comprising the Author (if there be more than one), and shall, in any event, survive the termination of this Agreement.

16. GENERAL PROVISIONS.

(a) This Agreement is the entire agreement between the parties relating to the Work. It supersedes all previous oral or written representations or agreements relating to the Work and may not be modified or amended, nor may any of its terms or provisions be waived, except by a written instrument executed by the party affected by such modification, amendment, or waiver.

(b) All obligations, liabilities, warranties, and covenants of the Author pursuant to this Agreement shall be joint and several, so that each person comprising the Author shall be obligated with respect to the performance of the Author as if he or she were the sole Author.

(c) This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors, heirs, personal representatives, and assigns, except that the Author's obligations may not be assigned without the Publisher's prior written consent, and any assignment without such consent shall be null and void.

(d) The Author shall, at the Publisher's cost and expense, but without any additional compensation, execute and deliver to the Publisher such further documents and instruments as the Publisher may reasonably require to carry out the transactions contemplated by this Agreement.

(e) It is agreed that the Author is for all purposes of this Agreement an independent contractor, and the Author is in no respect an agent, employee or joint venture of Publisher. The Author shall have the privilege of engaging, at the Author's own expense, such assistants as the Author may desire. Assistants shall be employed by the Author only for the Author's own account, and in no event shall any assistant or assistants be deemed to have been employed by the Publisher, or engaged by the Author for the account or on behalf of the Publisher; provided, however, that the Author shall disclose in writing to the Publisher all work of such assistants.

(f) Neither the Author nor the Publisher shall be liable, nor shall the Work be deemed out of print, because of any delay caused by acts of God, restrictions imposed by law or government regulation, shortages in supply of material or labor necessary for the preparation or production of the Work, or other similar or dissimilar acts beyond their reasonable control. In no event shall either the Author or the Publisher be liable for special, incidental, or consequential damages.

ISSMP, Page 6 of 12

(g)  The waiver of, or the failure to claim, a breach or a default under any of the provisions of this Agreement shall not be, or deemed to be, a waiver of any subsequent breach or default, whether of the same or similar nature, and shall not in any way affect the other terms of this Agreement.

(h)  This Agreement, regardless of the place of its physical execution, shall in all respects be governed by and construed in accordance with the internal law, and not the law pertaining to conflicts or choice of law, of the State of Florida.

(i)  Each of the parties to this Agreement hereby expressly and irrevocably agrees and consents that any suit, action, or proceeding arising out of or relating to this Agreement shall be instituted exclusively and only on a state or federal court sitting in Miami, Florida, and, by execution of this Agreement, each of the parties hereto expressly waives any objection that it may have now or hereafter to the laying of venue or to the jurisdiction of any such suit, action, or proceeding in Miami, Florida, and each of the parties to this Agreement further irrevocably, exclusively, and unconditionally submits to the personal jurisdiction of any state or federal court sitting in Miami, Florida in connection with any such suit, action or proceeding.

16. **MISCELLANEOUS PROVISIONS.**

The Author agrees to sign and comply with the provisions of an (ISC)² Non-Disclosure Agreement (Schedule B) and Non-Compete Agreement (Schedule C).

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement.

_____    _____
AUTHOR: David Kleiman                                           Date

Social Security No.: _____

Place of Birth: _____  Citizenship: _____

Business Address:

Telephone No.: _____      Fax No.:_____      Email: _____

Permanent Domicile:

Telephone No.:  _____


_____    _____
PUBLISHER: Richard A. O'Hanley                           Date


ISSMP, Page 7 of 12

CONFIDENTIAL                                                                                                                    DEFAUS_00688419

## SCHEDULE A: Production Standards

- Carefully follow the manual, "Welcome to Taylor & Francis: An Author's Guide to Publishing," for style and typing instructions; e.g., double-spaced manuscript pages. Please do not try to make the manuscript look as if it were the final book.
- Provide all permission verification forms, permission letters, and contributor agreements when sending in manuscript.
- Provide complete front matter when sending in manuscript: preface, biographies, table of contents, and list of contributors. Please be sure all information for project participants is current.
- Provide separate electronic files for text and art, and matching hard copies printed at 100%. The acceptable electronic format is compact disks (CDs). Please label each disk with the following: author name, book title, chapter numbers, software used to create the file (including the version number), and the date of creation.
- Please do not embed into the text any art objects (such as figures) from other applications.
- Provide original electronic art files (placed in separate, clearly labeled folders), drawn in an illustration program such as Adobe Illustrator, and saved (in order of preference) in one of the following acceptable formats: .ai (Adobe Illustrator), .pdf (set to the highest level of resolution), .eps, .gif, .jpg, or .tif. First-generation prints or transparencies are also acceptable.
- Unacceptable art includes scanned printed figures, halftones, grayscales, photocopies, faxes, or any printed material.
- Prepare your index from corrected page proofs, following the directions of our guides, "Inputting Your Index" and "Indexing Instructions for Authors," which will be provided by your Acquiring Editor.

*Please use any of the following acceptable software programs:*

TEXT, TABLES AND EQUATIONS
- Microsoft Word
- Microsoft Excel
- PowerPoint
- MathType (Mac and PC)
- T$_E$X or LaT$_E$X (PC only. Use must be discussed in advance with Publisher.)

GRAPHICS
Illustrator, Photoshop, Freehand (Mac and PC)

**GRAPHICS SHOULD BE SAVED IN AN .AI, .PDF, .EPS, .TIF, .GIF, OR .JPG FORMAT FOR PLACEMENT OR MANIPULATION**

ISSMP, Page 8 of 12

CONFIDENTIAL

DEFAUS_00688420

Schedule B: (ISC)2 Non-Disclosure Agreement

This Non-Disclosure Agreement (the "Agreement") is made and entered into as of the latter of the two signature dates below.

NAME:  International Information Systems Security Certification Consortium, Inc.
ADDRESS:  33920 U.S. Highway 19 North, Suite 205
Palm Harbor, Florida 34684
USA

(Also referred to as "Party A")   (Also referred to as "(ISC)²")

Sign: _____   Sign: _____

Name: _____   Name: _____
Title: _____   Title: _____
Signature Date: _____   Signature Date: _____

1. <u>Definition of Confidential Information and Exclusions</u>.

    (a) "Confidential Information" means nonpublic information that a party to this Agreement ("Disclosing Party ") designates as being confidential to the party that receives such information ("Receiving Party") or which, under the circumstances surrounding disclosure ought to be treated as confidential by the Receiving Party. "Confidential Information" includes, without limitation, information intangible or intangible form relating to and/or including released or unreleased Disclosing Party certifications, membership lists, training materials or methodology, the marketing and promotion of any Disclosing Party product, Disclosing Party's business policies or practices, and information received from others that Disclosing Party is obligated to treat as confidential. Except as otherwise indicated in this Agreement, the term "Disclosing Party" also includes all Affiliates of the Disclosing Party and except as otherwise indicated the term "Receiving Party "also includes all Affiliates of the Receiving Party. An "Affiliate "means any person, partnership, joint venture, corporation or other form of the enterprise, domestic or foreign, including but not limited to subsidiaries, that directly or indirectly control, are controlled by, or are under common control with a party. Prior to the time that any Confidential Information is shared with an Affiliate who has not signed this Agreement, the Receiving Party that executed this Agreement (the "Signatory Receiving Party") shall have entered into an appropriate written Agreement with an affiliate sufficient to enabled Disclosing Party and/or the Signatory Receiving Party to enforce all of the provisions of this Agreement against such Affiliate.

    (b) Confidential Information shall not include any information, however designated, that: (i) is or subsequently becomes publicly available without Receiving Party's breach of any obligation go Disclosing Party; (ii) became known to Receiving Party prior to Disclosing Party's disclosure of such information to Receiving Party pursuant to the terms of this Agreement; (iii) became known to Receiving Party from a source other than Disclosing Party other than by the breach of an obligation of confidentiality owed to Disclosing Party; (iv) is independently developed by Receiving Party; or, (v) constitutes Feedback (as defined in Section 5 of this Agreement).

2. <u>Obligations Regarding Confidential Information</u>

    (a) Receiving Party shall:

        i. refrain from disclosing any Confidential Information of the Disclosing Party to third parties for two (2) years following either the termination of this Agreement or the conclusion of the business or

ISSMP, Page 9 of 12

CONFIDENTIAL

DEFAUS_00688421

      discussion that is the basis for the disclosure of Confidential Information to Receiving Party, except as expressly provided in Sections 2(b) and 2(c) of this Agreement;

    ii.    take reasonable security precautions, at least as great as the precautions it takes to protect its own Confidential Information but no less than reasonable care, to keep confidential the Confidential Information of the Disclosing Party; and,

    iii.    refrain from disclosing, reproducing, summarizing or distributing Confidential Information of the Disclosing Party except in pursuance of Receiving Party's business relationship with Disclosing Party, and only as otherwise provided hereunder.

(b) Receiving Party may disclose Confidential Information of Disclosing Party in accordance with a judicial or other governmental order, provided that Receiving Party gives the Disclosing Party reasonable notice prior to such disclosure to allow Disclosing Party a reasonable opportunity to seek a protective order or equivalent.

(c) The Receiving Party may disclose Confidential Information only to Receiving Party's employees and consultants on a need-to-know basis. The Receiving Party will have executed or shall execute appropriate written Agreements with its employees and consultants sufficient to enable Receiving Party to enforce all the provisions of this Agreement.

(d) The Receiving Party shall notify the Disclosing Party immediately upon discovery of any unauthorized use or disclosure of Confidential Information or any other breach of this Agreement by Receiving Party and its employees and consultants, and cooperate with Disclosing Party in every reasonable way to help Disclosing Party regain possession of the Confidential Information and prevent its further unauthorized use or disclosure.

(e) Receiving Party shall, at Disclosing Party's request, return all originals, copies, reproductions, and summaries of Confidential Information and all other tangible materials and devices provided to the Receiving Party as Confidential Information, or at Disclosing Party's option, certify destruction of the same.

3. <u>Remedies</u>

The parties acknowledge that monetary damages may not be sufficient remedy for unauthorized disclosure of Confidential Information and that Disclosing Party shall be entitled, without waiving any other rights or remedies, to such injunctive or equitable relief as may be deemed proper by a court of competent jurisdiction.

4. <u>Miscellaneous</u>

(a) All Confidential Information is and shall remain the property of Disclosing Party. By disclosing Confidential Information to Receiving Party, Disclosing Party does not grant any express or implied right to Receiving Party to or under any patents, copyrights, trademarks, or trade secret information except as otherwise provided herein. Disclosing Party reserves without prejudice the ability to protect its rights under any such copyrights, trademarks, or trade secrets except as otherwise provided herein.

(b) The parties agree to comply with all applicable international and national laws that apply to any Confidential Information, including the U.S. Export Administration Regulations, as well as end-user, end-use and destination restrictions issued by U.S. and other governments.

(c) During the performance of this Agreement, and for twelve (12) months following termination of such Agreement for any reason, Party A shall not compete with (ISC)² in the training or assisting others to prepare for any (ISC)2-related exam, nor shall Party A prepare material or systems for others to utilize in preparing others for any (ISC)2-related exam, either individually or as an employee, officer, director, partner, or contractor, from or for any entity.

CONFIDENTIAL

(d) If either Disclosing Party or the Receiving Party employs attorneys to enforce any rights arising out of or relating to this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs. This Agreement shall be construed and controlled by the laws of the Commonwealth of Massachusetts, and the parties further consent to the exclusive jurisdiction and venue in federal courts sitting in Massachusetts, unless no federal subject matter jurisdiction exist, in which case the parties consent to the exclusive jurisdiction and venue in the Superior Court of Massachusetts. The parties waive all defenses of lack of personal jurisdiction and forum non-conveniens. Process may be served on either party in the manner authorized by applicable law or court rule.

(e) This Agreement shall be binding upon and inure to the benefit of each party's respective successors and lawful assigns: provided, however, that neither party may assign this Agreement (whether by operation of law, sale of securities or assets, merger or otherwise), in whole or in part, without the prior written approval of the other party. Any attempted assignment in violation of this Section shall be void.

(f) If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid or unenforceable, the remaining provisions shall remain in full force and effect.

(g) Either party may terminate this Agreement with or without cause upon 90-days written notice to the other party sent to the address listed above (and if to (ISC)², with a cc: to its General Counsel). All Sections of this Agreement shall survive any such termination.

(h) This copy of this Agreement may not be altered except to complete any blanks in the signature blocks about (e.g. signature date), and any other modifications, additions, or other alterations are void and not part of this Agreement. This Agreement shall not be modified except by a written Agreement dated subsequent to the date of this Agreement and signed by both parties.

(i) This Agreement constitutes the entire Agreement between the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous non-disclosure Agreements or communications. It shall not be modified except by a written Agreement dated subsequent to the date of this Agreement and signed on behalf of the parties by their respective duly authorized representatives.

5. Suggestions and Feedback

The Receiving Party may from time to time provide suggestions, comments or other Feedback to the Disclosing Party with respect to Confidential Information provided originally by the Disclosing Party Both parties agree that all Feedback is and shall be given voluntarily. Feedback, even if designated as confidential by the party offering the Feedback, shall not, absent a separate written Agreement, create any confidentiality obligation for the receiver of the Feedback. Receiving Party will not give Feedback that is subject to license terms that seek to require any Disclosing Party product, technology, service or documentation incorporating or derived from such Feedback, or any Disclosing Party intellectual property, to be licensed or otherwise shared with any third party. Furthermore, accept as provided herein or in a separate subsequent written Agreement between the parties, the receiver of the Feedback shall be free to use, disclose, reproduce, license or otherwise distribute and exploit the Feedback provided to it as it sees fit, entirely without obligation or restriction of any kind on account of intellectual property rights or otherwise.

CONFIDENTIAL

## Schedule B: (ISC)2 Non-Compete Agreement

Author agrees that during the term of this Agreement and for such period as the Work that is the subject of this Agreement remains "in print", Author shall not, directly or indirectly, engage, participate, or assist in any business organization with respect to activities which are directly competitive with the activities of (ISC)$^2$ in information security certification or education related to (ISC)² certifications, whether as owner, stockholder, partner, director, officer, trustee, employee, agent, consultant or in any other capacity, on its own behalf or on behalf of any other entity, unless otherwise authorized by this Agreement or its attached Exhibits.