| | |
|---|---|
| **From:** | Miller, Andrew <andrew.miller@ato.gov.au> |
| **Sent:** | Tuesday, April 15, 2014 6:19 AM |
| **To:** | clocktime2020@gmail.com |
| **Cc:** | McMaster, Des |
| **Subject:** | Request for Information [DLM=Sensitive] |
| **Attachments:** | Judgement-Order_Supreme Court Order_Case No 2013-225983.pdf; Judgement-Order_Supreme Court Order_Case No 2013-245661.pdf; Statement of Claim Case No 2013-225983.pdf; Statement of Claim Case No 2013-245661.pdf; 1.Contract for the Sale of Shares_ref-CEWK03.pdf; 2.Intellectual Property Licence Funding Agreement_Ref CEWK01.pdf; Consent order 2013-225983_245661.pdf; UTN as US resident Director.pdf; 20140415 Request for Information Kleiman Estate.pdf |

**P-862**
Case No. 9:18-CV-89176-BB

To the Executor of the Estate for Dave Kleiman,

The Australian Taxation Office is conducting third-party enquiries in relation to ongoing compliance activities. We would appreciate your assistance in responding to the attached request for information. Your details have been provided to us by a former colleague of Mr Kleiman. We have also provided documents to you (in your capacity as Executor for the Director of W&K Info Defense Research LLC) to assist you in answering our queries.

If you have any questions in relation to our request, please do not hesitate to contact us.

Thanks and regards,

Andrew Miller
Auditor | Indirect Tax
Australian Taxation Office
Phone: (02) 9354 6379 | Mobile: 0401 684 338
Facsimile: (02) 6225 0929
ATO | Working for all Australians

*******************************************************************
IMPORTANT
    The information transmitted is for the use of the intended recipient only and may contain confidential and/or legally privileged material. Any review, re-transmission, disclosure, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited and may result in severe penalties. If you have received this e-mail in error please notify the Privacy Hotline of the Australian Taxation Office, telephone 13 2869 and delete all copies of this transmission together with any attachments.
*******************************************************************

1

 KLEIMAN_00005121

Form 43
UCPR 36.11

## JUDGMENT/ORDER

### COURT DETAILS

Court              Supreme Court of NSW
Division           Common Law
List               Common Law General
Registry           Supreme Court Sydney
Case number        2013/00225983

### TITLE OF PROCEEDINGS

First Plaintiff    Craig Steven Wright

First Defendant    W&K Info Defense Research LLC

### DATE OF JUDGMENT/ORDER

Date made or given   6 November 2013
Date entered         6 November 2013

### TERMS OF JUDGMENT/ORDER

BY CONSENT
Orders/Judgment:
1. Judgment in the sum of $28,254,666.00 in favour of the plaintiff.
2. No order as to costs.
3. The court notes the agreement of the parties that the plaintiff will
accept the transfer of Intellectual property held by the plaintiff in full
and final satisfaction of the judgment.
4. A deed of transfer for the Intellectual Property is to be completed
before 01 Sept 2013.

### SEAL AND SIGNATURE



Signature          N. Langi (l.s.)

If this document was issued by means of the Electronic Case Management System (ECM), pursuant to the Uniform Civil
Procedure Rules (UCPR) 3.7, this document has taken to have been signed if the person's name is printed where his or
her signature would otherwise appear.

Capacity           Chief Clerk
Date               8 November 2013

NL0009052006

Page 1 of 1

Form 43
UCPR 36.11

## JUDGMENT/ORDER

### COURT DETAILS
Court                    Supreme Court of NSW
Division              Common Law
List                      Common Law General (default)
Registry              Supreme Court Sydney
Case number       2013/00245661

### TITLE OF PROCEEDINGS
First Plaintiff          Craig Steven Wright

First Defendant      W & K Info Defense Research LLC

### DATE OF JUDGMENT/ORDER
Date made or given   6 November 2013
Date entered         6 November 2013

### TERMS OF JUDGMENT/ORDER
BY CONSENT
Orders/Judgment:
1. Judgment in the sum of $28,534,049.79 in favour of the plaintiff.
2. No order as to costs.
3. The court notes the agreement of the parties that the plaintiff will accept the transfer of Intellectual property held by the plaintiff in full and final satisfaction of the judgment.

### SEAL AND SIGNATURE



Signature          N. Langi (l.s.)

If this document was issued by means of the Electronic Case Management System (ECM), pursuant to the Uniform Civil Procedure Rules (UCPR) 3.7, this document has taken to have been signed if the person's name is printed where his or her signature would otherwise appear.

Capacity           Chief Clerk
Date               8 November 2013

CONFIDENTIAL                        KLEIMAN_00005123

Form 3B (version 4)
UCPR 6.2

# STATEMENT OF CLAIM

**COURT DETAILS**

| | |
|---|---|
| Court | NSW Supreme Court |
| Division | General division |
| List | |
| Registry | Sydney |
| Case number | |

**TITLE OF PROCEEDINGS**

Plaintiff  **Craig Steven Wright (ABN 97 481 146 384)**

Defendant  **W&K INFO DEFENSE RESEARCH LLC**

**FILING DETAILS**

Filed for  **Craig S Wright**

Plaintiff

Contact name and telephone  Craig S Wright

0417 683 914

Contact email  Craig S Wright (craigswright@acm.org)

**TYPE OF CLAIM**

Mercantile Law - Sale of Goods and Services -- Contract

Mercantile Law -- Other -- Money Lent

2

## RELIEF CLAIMED

1    That the defendant pay the plaintiff the total amount claimed below.

| | |
|---|---|
| Amount of claim | $ 28,253,633.00 |
| Interest | $ 0 |
| Filing fees | $ 999.00 |
| Service fees | $ 34.00 |
| Solicitors fees | $ 0.00 |
| TOTAL | $ 28,254,666.00 |

## PLEADINGS AND PARTICULARS

1    Between 2011 and 2013 the plaintiff provided contract labour services to the defendant. The plaintiff loaned money to the defendant to the defendant at a set interest rate with a commercial expectation that the said monies would be repaid in full when a project was completed.

2    The defendant is a company that operates from Palm Beach, FL, USA and does research in homeland security research.

3    By contract dated 27 October 2008, the Defendant agreed to pay the Plaintiff for property and consulting services to complete research. The contract was bonded against the intellectual property of the defendant.

4    The material terms of the purchase contract were:

   a.  The Plaintiff was the contractor and financier

   b.  The Defendant was the Vendor

   c.  Completion was to take place on 30 June 2013.

   d.  Time was of the essence of the contract.

   e.  That in the event that the Purchaser breached the contract, the Seller could either affirm or terminate the contract with a full return of value.

5    The plaintiff conducted four (4) projects associated with the DHS (Dept. of Homeland Security USA) with the defendant under contract.

   a.  BAA 11-02-TTA 01-0127-WP: TTA 01 - Software Assurance: Software Assurance through Economic Measures

KLEIMAN_00005125

3

    b. BAA 11-02-TTA 05-0155-WP: TTA 05 - Secure, Resilient Systems and Networks

    c. BAA 11-02-TTA 09-0049-WP: TTA 09 - Cyber Economics

    d. BAA 11-02-TTA 14-0025-WP: TTA 14 - Software Assurance MarketPlace (SWAMP)

6    In May 2013 the primary director of the defendant died leaving the project not transferred to the plaintiff and not returning funds. These funds were rated as:

    a. TTA 01    US$ 650,000

    b. TTA 05    US$ 1,8000,000

    c. TTA 09    US$ 2,200,000

    d. TTA 14    US$ 1,200,000

7    The contract was executed with an agreement that all created intellectual property reverts to the ownership of the plaintiff with interest if the project concludes without assignment of shares in the defendant.

8    The contract set the interest rate at 8% calculated annually.

9    The exchange rate was contracted with a formula to be $1.12 at the point of breach.

10    The funding was supplied using Bitcoin and Gold bonds

11    A bond of Au $20,000,000.00 was provided to cover funding aspects of the research.

12    The contract stated that a breach would lead to liquidated damages to the amounts stated as the project limits. If the liquidated amount is not paid all IP returns to the sole ownership of the plaintiff.

13    The IP is software and code used by the US Military, DHS and other associated parties.

14    The defendant is unable to complete its responsibilities due to the death of its director, Mr Kleiman.

15    The debt of US$ 5,850,000 comes to $6,552,000 in Australian $. The interest on this amount is calculated at $AU 1,701,633.00.

16    The plaintiff claims:

Debt of $ 28,253,633.00

    KLEIMAN_00005126

4

Interest pursuant to section 100 Civil Procedure Act 2005 from 01 July 2013 to judgement.

**SIGNATURE**

I acknowledge that court fees may be payable during these proceedings.  These fees may include a hearing allocation fee.

Signature

Capacity                                        Plaintiff

Date of signature

5

## NOTICE TO DEFENDANT

If you do not file a defence within 28 days of being served with this statement of claim:

* You will be in default in these proceedings.
* The court may enter judgment against you without any further notice to you.

The judgment may be for the relief claimed in the statement of claim and for the plaintiff's costs of bringing these proceedings. The court may provide third parties with details of any default judgment entered against you.

## HOW TO RESPOND

**Please read this statement of claim very carefully. If you have any trouble understanding it or require assistance on how to respond to the claim you should get legal advice as soon as possible.**

You can get further information about what you need to do to respond to the claim from:

* A legal practitioner.
* LawAccess NSW on 1300 888 529 or at www.lawaccess.nsw.gov.au.
* The court registry for limited procedural information.

You can respond in one of the following ways:

1   If you intend to dispute the claim or part of the claim, by filing a defence and/or making a cross-claim.

2   If money is claimed, and you believe you owe the money claimed, by:

   * Paying the plaintiff all of the money and interest claimed. If you file a notice of payment under UCPR 6.17 further proceedings against you will be stayed unless the court otherwise orders.
   * Filing an acknowledgement of the claim.
   * Applying to the court for further time to pay the claim.

3   If money is claimed, and you believe you owe part of the money claimed, by:

   * Paying the plaintiff that part of the money that is claimed.
   * Filing a defence in relation to the part that you do not believe is owed.

Court forms are available on the UCPR website at www.lawlink.nsw.gov.au/ucpr or at any NSW court registry.

## REGISTRY ADDRESS

| | |
|---|---|
| Street address | 184 Phillip St, Sydney NSW 2000 |
| Postal address | Supreme Court of NSW, GPO Box 3, Sydney NSW 2001 Australia 2000 |
| Telephone | (02) 9377 5840 |

KLEIMAN_00005128

6

## #AFFIDAVIT VERIFYING

| | |
|---|---|
| Name | Craig Steven Wright |
| Address | 43 St Johns Ave Gordon NSW 2072 |
| Occupation | Lecturer/Director |
| Date | 23 July 2012 |

I say on oath:

1    I am the plaintiff.

2    I believe that the allegations of fact in the statement of claim are true.

| | |
|---|---|
| SWORN at | Gordon |
| Signature of deponent | |
| Name of witness | Craig Steven Wright     Karlie Wiggins |
| Address of witness | KARLIE WIGGINS |
| | Reg. No. 194194 |
| | A Justice of the Peace in and for the |
| | State of New South Wales |
| Capacity of witness | Justice of the peace |

**Ku·ring·gai Council**
818 Pacific Highway, Gordon
Locked Bag 1056, Pymble, NSW 2073
ABN: 84 408 856 411

And as a witness, I certify the following matters concerning the person who made this affidavit (the deponent):

1    #I saw the face of the deponent [OR *delete whichever option is inapplicable*]
     #I did not see the face of the deponent because the deponent was wearing a face covering, but I am satisfied that the deponent had a special justification for not removing the covering.*

2    #I have known the deponent for at least 12 months *[OR *delete whichever option is inapplicable*]
     #I have confirmed the deponent's identity using the following identification document:

NSW D/L   12510410

Identification document relied on (may be original or certified copy) †

Signature of witness

Note: The deponent and witness must sign each page of the affidavit. See UCPR 35.7B.

---

[* The only "special justification" for not removing a face covering is a legitimate medical reason (at April 2012).]

[† "Identification documents" include current driver licence, proof of age card, Medicare card, credit card, Centrelink pension card, Veterans Affairs entitlement card, student identity card, citizenship certificate, birth certificate, passport or see Oaths Regulation 2011.]

CONFIDENTIAL

KLEIMAN_00005129

CONFIDENTIAL

KLEIMAN_00005130

8

# #PARTY DETAILS

## PARTIES TO THE PROCEEDINGS

**Plaintiff**

Craig Steven Wright

**Defendant**

W&K INFO DEFENSE RESEARCH LLC

4371 Norhtlake Blvd #314

Palm Beach

FL 33410 - 6253 [Defendant]

## FURTHER DETAILS ABOUT PLAINTIFF[S]

**Plaintiff**

Name

Address

Craig Steven Wright

43 St Johns Ave

Gordon NSW 2072

## Contact details for plaintiff acting in person or by authorised officer

Address for service

Telephone

Email

as above

0417 683 914

craigswright@acm.org

## DETAILS ABOUT DEFENDANT

**Defendant**

Name

Address

W&K INFO DEFENSE RESEARCH LLC

4371 Norhtlake Blvd #314

Palm Beach

FL 33410 - 6253

KLEIMAN_00005131

Form 3B (version 4)
UCPR 6.2

# STATEMENT OF CLAIM

## COURT DETAILS

| | |
|---|---|
| Court | NSW Supreme Court |
| Division | General division / Common Law |
| List | General |
| Registry | Sydney |
| Case number | |

## TITLE OF PROCEEDINGS

| | |
|---|---|
| Plaintiff | **Craig Steven Wright (ABN 97 481 146 384)** |
| Defendant | **W&K INFO DEFENSE RESEARCH LLC** |

## FILING DETAILS

| | |
|---|---|
| Filed for | **Craig S Wright** |
| | Plaintiff |
| Contact name and telephone | Craig S Wright |
| | 0417 683 914 |
| Contact email | Craig S Wright (craigswright@acm.org) |

## TYPE OF CLAIM

Mercantile Law - Sale of Goods and Services – Contractual Dispute

Mercantile Law – Other – Money Lent

KLEIMAN_00005132

**RELIEF CLAIMED**

1     That the defendant pay the plaintiff the total amount claimed below.

| | |
|---|---|
| Amount of claim | $ $28,533,016.79 |
| Interest | $ 0 |
| Filing fees | $ 999.00 |
| Service fees | $ 34.00 |
| Solicitors fees | $ 0.00 |
| **TOTAL** | **$ $28,534,049.79** |

**PLEADINGS AND PARTICULARS**

1     Between 2011 and 2013 the plaintiff provided contract labour services to the defendant. The plaintiff loaned money to the defendant to the defendant at a set interest rate with a commercial expectation that the said monies would be repaid in full when a project was completed.

2     This was issued in Bitcoin. The value at the current date is $13,917,775.

3     The Software and SDK developed under this project is guaranteed against the amounts of this claim.

4     The defendant is a company that operates from Palm Beach, FL, USA and does research in homeland security research.

5     By contract dated 8 January 2009, the Defendant agreed to pay the Plaintiff for property and consulting services to complete research. The contract was bonded against the intellectual property of the defendant.

6     The material terms of the purchase contract were:

    a.  The Plaintiff was the contractor and financier

    b.  The Defendant was the Vendor

    c.  Completion was to take place on 30 June 2013.

    d.  Time was of the essence of the contract.

    e.  That in the event that the Purchaser breached the contract, the Seller could either affirm or terminate the contract with a full return of value.

7     The plaintiff conducted a project for the development of a Bitcoin SDK and exchange.

KLEIMAN_00005133

8    The contract was executed with an agreement that all created Intellectual property reverts to the ownership of the plaintiff with interest if the project concludes without assignment of shares in the defendant.

9    The contract set the interest rate at 12% calculated annually.

10   The exchange rate was contracted with a formula to be $1.12 at the point of breach.

11   The funding was supplied using Bitcoin and Gold bonds.

12   A bond of Au $20,000,000.00 was provided to cover funding aspects of the research and for the provision of ASC hardware as a pooled amount with a depreciated capitals value of $8,828,571.29 with straight line depreciation which has 5 years remaining.

13   The contract stated that a breach would lead to liquidated damages to the amounts stated as the project limits. If the liquidated amount is not paid all IP and systems returns to the sole ownership of the plaintiff.

14   The IP is software and code used in the creation of a Bitcoin system.

15   The defendant is unable to complete its responsibilities due to the death of its director, Mr Kleiman.

16   The total debt after depreciation of the hardware comes to $22,746,346.29 in Australian dollars. The Interest on this amount is calculated at $AU 5,786,670.50.

17   The plaintiff claims:

Debt of $ $28,533,016.79.

Interest pursuant to section 100 Civil Procedure Act 2005 from 01 July 2013 to judgement.

**SIGNATURE**

I acknowledge that court fees may be payable during these proceedings.  These fees may include a hearing allocation fee.

Signature
Capacity                    Plaintiff
Date of signature

CONFIDENTIAL

**NOTICE TO DEFENDANT**

**If you do not file a defence within 28 days of being served with this statement of claim:**

- **You will be in default in these proceedings.**
- **The court may enter judgment against you without any further notice to you.**

The judgment may be for the relief claimed in the statement of claim and for the plaintiff's costs of bringing these proceedings. The court may provide third parties with details of any default judgment entered against you.

**HOW TO RESPOND**

**Please read this statement of claim very carefully. If you have any trouble understanding it or require assistance on how to respond to the claim you should get legal advice as soon as possible.**

You can get further information about what you need to do to respond to the claim from:

- A legal practitioner.
- LawAccess NSW on 1300 888 529 or at www.lawaccess.nsw.gov.au.
- The court registry for limited procedural information.

You can respond in one of the following ways:

1  **If you intend to dispute the claim or part of the claim,** by filing a defence and/or making a cross-claim.

2  **If money is claimed, and you believe you owe the money claimed,** by:

- Paying the plaintiff all of the money and interest claimed. If you file a notice of payment under UCPR 6.17 further proceedings against you will be stayed unless the court otherwise orders.
- Filing an acknowledgement of the claim.
- Applying to the court for further time to pay the claim.

3  **If money is claimed, and you believe you owe part of the money claimed,** by:

- Paying the plaintiff that part of the money that is claimed.
- Filing a defence in relation to the part that you do not believe is owed.

Court forms are available on the UCPR website at www.lawlink.nsw.gov.au/ucpr or at any NSW court registry.

**REGISTRY ADDRESS**

Street address        184 Phillip St, Sydney NSW 2000

Postal address        Supreme Court of NSW, GPO Box 3, Sydney NSW 2001
                      Australia  2000

Telephone             (02) 9377 5840

KLEIMAN_00005135

**#AFFIDAVIT VERIFYING**

| | |
|---|---|
| Name | Craig Steven Wright |
| Address | 43 St Johns Ave Gordon NSW 2072 |
| Occupation | Lecturer/Director |
| Date | 12 Aug 2013 |

I say on oath:

1        I am the plaintiff.

2        I believe that the allegations of fact in the statement of claim are true.

| | |
|---|---|
| SWORN at | Gordon |
| Signature of deponent | _____ |
| Name of witness | Craig Steven Wright |
| Address of witness | |

Capacity of witness        Justice of the peace

And as a witness, I certify the following matters concerning the person who made this affidavit (the **deponent**):

1        #I saw the face of the deponent. [OR, delete whichever option is inapplicable]
        #I did not see the face of the deponent because the deponent was wearing a face covering, but I am satisfied that the deponent had a special justification for not removing the covering.*

2        #I have known the deponent for at least 12 months. [OR, delete whichever option is inapplicable]
        #I have confirmed the deponent's identity using the following identification document:

        _____
        Identification document relied on (may be original or certified copy) †

Signature of witness        _____

Note: The deponent and witness must sign each page of the affidavit. See UCPR 35.7B.

_____

[* The only "special justification" for not removing a face covering is a legitimate medical reason (at April 2012).]

[†"Identification documents" include current driver licence, proof of age card, Medicare card, credit card, Centrelink pension card, Veterans Affairs entitlement card, student identity card, citizenship certificate, birth certificate, passport or see Oaths Regulation 2011.]

KLEIMAN_00005136

# #PARTY DETAILS

## PARTIES TO THE PROCEEDINGS

| Plaintiff | Defendant |
|---|---|
| Craig Steven Wright | W&K INFO DEFENSE RESEARCH LLC |
| | 4371 Norhtlake Blvd #314 |
| | Palm Beach |
| | FL 33410 - 6253 [Defendant] |

## FURTHER DETAILS ABOUT PLAINTIFF[S]

**Plaintiff**

| | |
|---|---|
| Name | Craig Steven Wright |
| Address | 43 St Johns Ave |
| | Gordon NSW 2072 |

**Contact details for plaintiff acting in person or by authorised officer**

| | |
|---|---|
| Address for service | as above |
| Telephone | 0417 683 914 |
| Email | craigswright@acm.org |

## DETAILS ABOUT DEFENDANT

**Defendant**

| | |
|---|---|
| Name | W&K INFO DEFENSE RESEARCH LLC |
| Address | 4371 Norhtlake Blvd #314 |
| | Palm Beach |
| | FL 33410 - 6253 |

CONFIDENTIAL

KLEIMAN_00005137

# CONTRACT FOR THE SALE OF SHARES OF A COMPANY OWNING BUSINESS

**PARTIES**

**Dave Kleiman for W & K Info Defense LLC**
(Vendor)

**AND**

**Craig Wright R&D**
**ABN 97 481 146 384**
(Purchaser)

**AND**

**W&K Info Defense LLC**
(Company)

Ref: CEWK03

**THIS AGREEMENT** dated 02 day of April 2013

**BETWEEN**

Dave Kleiman of W&K Info Defense LLC (Florida)

(Vendor)

And

Craig Wright of Craig Wright R&D
ABN 97 481 146 384

(Purchaser)

And

W&K Info Defense LLC

(Company)

**RECITALS**

A.  The vendor is the owner of all issued shares in the company being ordinary class shares. Ownership is 50% in the vendor's name and 50% in trust held for the purchaser.

B.  The company is the owner of and conducts the business known as Bitcoin mining and Software development / Research.

C.  The vendor has agreed to sell and the purchaser has agreed to purchase the vendor's shares for the price and upon the terms set out hereunder.

D.  As the purchaser will succeed to the business of the company on completion of the acquisition of these shares, the parties agree that they will incorporate into this agreement those agreements contained in the attached contract for the sale of a business to the intent that they shall in relation to the sale of the shares have the rights and obligations contained in such contract as part of this agreement.

E.  The company has consented to and agreed to be bound by the terms of this agreement.

F.  The company includes all software, research material and other aspects of the business.

G.  The parties wish to commit the terms of their agreement to writing in the manner hereinafter set out.

CONFIDENTIAL                                                                                        KLEIMAN_00005139

OPERATIVE PART

1.  Interpretation

This agreement is governed by the laws of the state of NSW, and the parties submit to the non-exclusive jurisdiction of the courts of that state/country.

In the interpretation of this agreement:

(a)  References to legislation or provisions of legislation include changes or re-enactments of the legislation and statutory instruments and regulations issued under the legislation;

(b)  Words denoting the singular include the plural and vice versa; words denoting individuals or persons include bodies corporate and vice versa; references to documents or agreements also mean those documents or agreement as changed, novated or replaced, and words denoting one gender include all genders;

(c)  Grammatical forms of defined words or phrases have corresponding meanings;

(d)  Parties must perform their obligations on the dates and times fixed by reference to the capital city of the state of Sydney;

(e)  Reference to an amount of money is a reference to the amount in the lawful currency of the Commonwealth of Australia;

(f)  If the day on or by which anything is to be done is a Saturday, a Sunday or a public holiday in the place in which it is to be done, then it must be done on the next business day;

(g)  References to a party are intended to bind their executors, administrators and permitted transferees; and

(h)  Obligations under this agreement affecting more than one party bind them jointly and each of them severally.

2.  The vendor hereby agrees to sell and the purchaser hereby agrees to purchase ordinary class shares in the company for the purchase price as noted below:

(a)  Two (2) loans issued under deed "CEWK01" are agreed to be repaid in full for the consideration of 300,000 Bitcoin agreed in the contract. The repayments as a one off of both loans for $20,000,000 with a total value of

CONFIDENTIAL

KLEIMAN_00005140

$40,000,000 are deemed paid in full for the above value. This is noted as consideration from the purchaser and is issued in forbearance of the requirements of the contract signed 22 April 2011 between the Vendor/Company and the purchaser (designated CEWK01).

(b) The vendor agrees that the paper wallet with address "1933phfhK3ZgFQNLGSDXvqCn32k2buXY8a" held in escrow will be released to the purchaser.

(c) Due to the unexpected rise in the value of Bitcoin, it is agreed that two transfers (in Bitcoin) of BTC 125,000 and BTC 125,500 when taken in conjunction with the supply of the software, will suffice to fulfil the contract.

3.  Hence, the vendor will:

(a) Pay (transfer to) the purchaser 250,500 BTC on 30 April 2013.

(b) Accept transfer of the escrowed Bitcoin paper wallet to the purchaser.

(c) Transfer the ASC hardware to the purchaser.

(d) Release the source code to the purchaser.

(e) Transfer the Vistomail email account.

(f) Transfer all research materials from the four (4) DHS BAA research projects to the purchaser with all notes, data and results, and

(g) Transfer any shares in the company to the purchaser by 30 April 2013.

4.  The Purchaser will:

(a) Accept the new terms in full satisfaction of the contract with Reference CEWK01 made between the vendor/company and the purchaser on 22 April 2013.

(b) Accept the vendor's 323,000 remaining "mined" Bitcoin as a 49.5% stake in a new venture to be formed in Australia (to be called Coin-Exch Pty Ltd) between the vendor and the purchaser for the exploitation of the joint and to be pooled Bitcoin

(c) Accept the transfer of the 323,000 Bitcoin (to be made on the 30th April 2013) as capital and note that shares in the new enterprise will be issued at this point.

CONFIDENTIAL

KLEIMAN_00005141

(d)   Provide $30,000,000 in capital into Coin-Exch Pty Ltd (to be formed) and the software developed in the prior venture.

5.   Settlement shall be effected on 30 April 2013.

6.   So far as they are relevant the agreements contained in the incorporated contract for the sale of a business shall be agreements between the parties herein.

7.   In the event of either party failing to complete this agreement on the settlement date then the other shall be entitled at any time thereafter to serve a notice to complete requiring the other to complete within 14 days from the date of service of the notice, which time period is considered reasonable by both parties. For the purpose of this contract, such notice to complete shall be deemed both at law and in equity sufficient to make time of the essence of this contract.

8.   On the settlement date the vendors shall:

(a)   Deliver up to the purchaser possession of the business conducted by the company and in all respects shall have complied with the terms of the business sale contract incorporated herein;

(b)   Deliver up to the purchaser duly executed instruments of transfer of their shares;

(c)   Cause a meeting of the directors of the company to be held at which the directors shall approve and consent to the sale and transfer by the vendors to the purchaser of the vendors' shares.

(d)   Send all software developed under the various DHS BAA filings to the purchaser (incl. source code and documentation).

(e)   Provide the location and access rights to the ASC mining hardware hosted at a site known to Mr Kleiman will be returned with this transfer. This has a nominal value of $8,828,671.29 before depreciation. This is a

(f)   Solutions to the Agent and Merkle Tree problems developed by Professor David Reese.

(g)   Bitcoin agent software and suit of C/C++/C# and Python Blockchain software source codes.

CONFIDENTIAL   KLEIMAN_00005142

(h)   Exchange Bitcoin holdings as noted in the contract.

9.   The company hereby agrees to take all steps and carry out all acts to procure the registration on the settlement date of the purchaser as the registered holder of title to the vendors' shares.

10.   The purchaser will make all reasonable endeavours to have the new venture (Coin-Exch Pty Ltd) registered for GST and under the Australian Corporations act provisions before settlement on the 30th April 2013.

11.   The parties hereto agree to execute and perform all such acts, deeds, documents and things whatsoever as may be necessary and desirable to better carry into effect the provisions of this agreement.

12.   **Vendor's warranties**

(a)   **Vendor's authority to sell**

(i)   The vendors are the registered and beneficial owners of their shares in the company.

(ii)   The vendors have full power and authority to sell and transfer to the purchaser good legal and equitable title to the shares without the consent or authorisation of any person except only consents required by the company.

(b)   **The company's financial statements**

Other than matters disclosed to the purchaser in writing the books and accounts of the company truly and fairly reflect the company's affairs.

(c)   **Books and records**

The company's books, records and registers are in the possession of the company, and accurately record the details of all of the company's transactions, finances, assets and liabilities.

(d)   **Taxation**

(i)   Other than disclosed to the purchaser in writing the company has lodged or filed all tax and duty returns for all taxes including GST, income tax, sales tax, fringe benefits tax, payroll tax, group tax and WorkCare levies.

CONFIDENTIAL

KLEIMAN_00005143

       (ii)   No claim has or will be made against the company for payment by the company pursuant to the provisions of the Income Tax Assessment Act 1936 of any tax which is not shown or included as a liability or provision in the balance sheet contained in the accounts.

       (iii)  Neither the commissioner nor any federal, state or municipal body has any dispute with the company concerning the company's affair.

(e)   **Compliance with applicable laws**

       (i)    Neither the vendor nor the company has breached, or caused a breach of the company's memorandum or articles of association; any contract, agreement or instrument which binds the company; or any judgment, order, injunction or decree of any court, commission or administrative body relating to the company or to the shares.

       (ii)   Neither the company nor any of its officers, agents or employees (while performing their duties for the company) has breached the law. The company has not been notified that it has, or may have, breached the law regulating its affairs or the conduct of its business.

(f)   **Litigation and indebtedness**

Other than as disclosed to the purchaser in writing:

       (i)    The company is not a party to, or threatened with, any claim, litigation, prosecution or arbitration in any court, tribunal or otherwise;

       (ii)   There are no unsatisfied judgments or arbitral awards against the company;

       (iii)  The company is not being investigated for any breach of the law. Neither the company nor any of its directors is aware of any breach of the law or of any circumstances, which would give rise to a breach of the law other than as disclosed to the purchaser in writing;

       (iv)  The company has met all deadlines for repayment of its debts;

       (v)   No petitions, notices or proceedings have come to the company's notice, which could result in it being wound up. No orders or resolutions have been made or passed to place the company in liquidation or provisional liquidation.

CONFIDENTIAL

KLEIMAN_00005144

(g)   **Accuracy of disclosed information**

    (i)   The vendor has disclosed to the purchaser all information, which would be material for a purchaser in forming a decision whether or not to purchase the shares.

    (ii)   If either the vendor or the company becomes aware of anything which may constitute a breach of, or be inconsistent with any representation, warranty or undertaking in this agreement, they will notify the purchaser of its particulars promptly in writing.

(h)   **Warranties and indemnities**

    (i)   It is a condition of this agreement that each warranty is true and correct in every respect and shall be construed separately

    (ii)   The vendor acknowledges that the warranties have been given with the intention and for the purpose of inducing the purchaser to enter into this agreement.

    (iii)   The purchaser has entered into this agreement and agreed to the purchase price payable for the shares on the basis of and in full reliance upon the warranties.

    (iv)   Prior to the settlement date the vendor will take all such steps and provide all such information and documents with regard to the company as the purchaser may reasonably require and will give the purchaser and its professional advisers full and free access to the records and accounts of the company (whether financial or otherwise) to enable them to fully investigate the accuracy of the warranties.

13.   **Notices**

A communication required by this agreement, by a party to another, must be in writing and may be given to them by being:

(a)   Delivered personally; or

(b)   Posted to their address specified in this agreement, or as later notified by them, in which case it will be treated as having been received on the second business day after posting; or

CONFIDENTIAL

(c)   Faxed to the facsimile number of the party with acknowledgment of receipt received electronically by the sender, when it will be treated as received on the day of sending; or

(d)   Sent by email to their email address, when it will be treated as received on that day.

14.   **Waiver or variation**

(a)   A party's failure or delay to exercise a power or right does not operate as a waiver of that power or right.

(b)   The exercise of a power or right does not preclude:

(i)   Its future exercise, or

(ii)   The exercise of any other power or right.

(c)   The variation or waiver of a provision of this agreement or a party's consent to a departure from a provision by another party will be ineffective unless in writing executed by the parties.

15.   **Counterparts**

This agreement may be executed in any number of counterparts each of which will be an original but such counterparts together will constitute one and the same instrument and the date of the agreement will be the date on which it is executed by the last party.

16.   **Further assurance**

Each party will from time to time do all things (including executing all documents) necessary or desirable to give full effect to this agreement.

17.   **Costs**

Each party will pay their own costs in relation to this agreement.

CONFIDENTIAL

KLEIMAN_00005146

SIGNED AS AN AGREEMENT

Executed by
W & K Info Defense LLC          )

*Dave Kleiman*

Dave Kleiman
DIRECTOR


Executed by
Craig Wright R&D (A.B.N. 97 481 146 384)

Craig S Wright

CONFIDENTIAL

KLEIMAN_00005147

# INTELLECTUAL PROPERTY LICENCE
# FUNDING AGREEMENT

## PARTIES

### Craig Wright R&D
ABN 97 481 146 384
(Financer)

### AND

### W&K Info Defense LLC
(Provider)

Ref: CEWK01



CONFIDENTIAL

KLEIMAN_00005148

**THIS DEED** dated 22nd day of April 2011

**BETWEEN**

    Craig Wright of Craig Wright R&D

                                                    (Financer)

And

    Dave Kleiman for W & K Info Defense LLC

                                                    (Provider)

**RECITALS**

**A.**    The Financer controls the following Bitcoin (BTC) addresses:

        (a)    12hRmmSda9qSSEH656zBaKEbeisH6ZhdTm.

        (b)    12C9c9VQLMrLi4Ffzq2wDvwrKnUPaAaNFp.

**B.**    The Provider desires the intellectual property for the permitted use and to extend this for other purposes desirable to both parties.

**C.**    The Provider will use the funding for the development of several software products.

**D.**    The provider will return the loaned finances (in Bitcoin) on or before 01 July 2013 and 30 Dec 2013.

**E.**    The Provider will remain completely confidential on all matters in this deed (including even that family members do not have knowledge of the transaction).

**F.**    The financer will send the following amounts (in Bitcoin) to to following address by 30 April 2011:

        (a)    165,140 BTC

        (b)    1MSUvGS9BEjpL35CKu7feF4HaPCXv2cht7

**G.**    The financer will send the following amounts (in Bitcoin) to toe following address by 30 August 2011:

        (a)    50,000 BTC

        (b)    1JjtxXmbC95sgn5kE2Hm92axA7hcbDkRhK

**H.**    The Financer and the Provider wish to record the licence, which has been granted to the Provider to use the intellectual property in accordance with this deed.

**I.**    The Financer is the absolute owner of the entire unencumbered copyright in the works described in the schedule when complete.

**J.**    The Financer has agreed to license the works to the Provider and the Provider has agreed to accept such licence on the following terms and conditions.

**K.**    The provider will fund the software development using Bitcoin.

2

CONFIDENTIAL

KLEIMAN_00005149

**L.**   The Financer will provide 1,024 core Xeon and GPU based hardware solution.

   (a)   It is acknowledged that two SGI ICE XE310 – 512 core hosts have been provided and are in a data centre specified by the provider

   (b)   The provider will use these systems to mine Bitcoin

   (c)   The provider expects to earn 12,000 BTC per month using these systems for the period to 30 June 2013

   (d)   The systems will be hosted in the US at a facility managed by the provider.

**M.**   The provider will pay for the use of the systems and the loan as follows:

   (a)   250,000 BTC to be repaid on 30 June 2013

   (b)   50,000 BTC to be repaid on 30 Dec 2013

   (c)   The developed software will be exclusively licensed perpetually to the financer (as of 30 June 2013).

   (d)   The software may be used but not distributed by the provider.

**N.**   The contract is complete when 300,000 BTC have been repaid.

**O.**   It is agreed that the value of the loan to be repaid is $ AUD 20,000,000 in two parts (for a total of $40,000,000).

**P.**   The server systems will return to the Financer at the completion of the contract.

**Q.**   On default, the contract is to be repaid in full to the financer.

3

CONFIDENTIAL

KLEIMAN_00005150

## OPERATIVE PART

1.  **Definitions**

    In this deed:

    (a)   Business means the business operated by the Provider described as such in the schedule;

    (b)   Business day means a day, not being a Saturday, Sunday or gazetted public holiday, on which banks are open for commercial business where performance of an obligation under this deed is to take place;

    (c)   Claim means, in relation to a person, a claim, demand, remedy, suit, injury, damage, loss, cost liability, action, proceeding, right of action, chose in action, claim for compensation or reimbursement or liability incurred by or to be made or recovered by or against the person, however arising and whether ascertained or unascertained, or immediate, future or contingent;

    (d)   Commencement date means the date so specified in the schedule;

    (e)   Confidential information means all technical and other information and know how, including all information and know how in any eye or machine readable form or other format, disclosed or given to the Provider from any source in respect of or incidental to: 

          (i)    The product;

          (ii)   The technology;

          (iii)  The Financer; and

          (iv)   Any other information disclosed or given to the Provider by the Financer which is declared by the Financer to be confidential information;

    (f)   Improvements means any improvement, modification, enhancement or derivative of the intellectual property arising during the term;

    (g)   Intellectual property means:

          (i)    The confidential information;

          (ii)   The improvements;

          (iii)  The patent; and

          (iv)   The trade mark;

    (h)   Licence fee means the amount calculated and paid by the Provider to the Financer specified in the schedule;

4

KLEIMAN_00005151

(i)  Notice means a written notice, consent approval, direction, order or other communication;

(j)  Obligation means any legal, equitable, contractual, statutory or other obligation, deed, covenant, commitment, duty, undertaking or liability;

(k)  Patent means the registered patent or patent application including the provisional and complete specifications described in the schedule;

(l)  Permitted use means to conduct the business to exploit market, promote, develop, integrate, research, sell and conduct and any other activity undertaken with respect to the product for profit or reward;

(m)  Product means the product described as such in the schedule;

(n)  Right includes a legal, equitable, contractual, statutory or other right, power, authority, benefit, privilege, remedy, discretion or cause of action;

(o)  Technology means all that technical information which relates to or forms part of the product, including, without limitation, methodology, techniques, drawings, outlines, notes, algorithms, detailed designs, flow charts, results, software: partial or intermediate versions and prototypes, data, formulae and other proprietary information and know how in the Provider's possession or control or which is revealed to the Provider which relates to the product;

(p)  Term means the term set out in the schedule; and

(q)  Trade mark means the registered trade mark, trade mark registration application and common law trademarks described in the schedule.

2.  Interpretation

This deed is governed by the law of NSW and the parties submit to the non-exclusive jurisdiction of the courts of that state.

In the interpretation of this deed:

(a)  References to legislation or provisions of legislation include changes or re-enactments of the legislation and statutory instruments and regulations issued under the legislation;

(b)  Words denoting the singular include the plural and vice versa; words denoting individuals or persons include bodies corporate and vice versa; references to documents or deeds also mean those documents or deeds

5

CONFIDENTIAL

KLEIMAN_00005152

as changed, novated or replaced, and words denoting one gender include all genders;

(c)   Grammatical forms of defined words or phrases have corresponding meanings;

(d)   Parties must perform their obligations on the dates and times fixed by reference to the schedule;

(e)   Reference to an amount of money is a reference to the amount in the lawful currency of the Commonwealth of Australia;

(f)   If the day on or by which anything is to be done is a Saturday, a Sunday or a public holiday in the place in which it is to be done, then it must be done on the next business day;

(g)   References to a party are intended to bind their executors, administrators and permitted transferees; and

(h)   Obligations under this deed affecting more than one party bind them jointly and each of them severally.

3.   Licence

The Financer hereby grants to the Provider an exclusive licence to use the intellectual property for the permitted use on the terms of this deed.

In consideration of the licence fee payable hereunder the Financer grants to the Provider an exclusive transferrable licence to copy publish sell or otherwise use the works in the course of its business in Australia and/or Overseas in respect of the whole or any part of the works commencing on 01st July 2013.

In consideration of the licence hereby granted to the Provider the Provider must pay a one off licence fee of $20,000,000 (GST exclusive) to the Financer on or before the 30th June 2013. The provider will also transfer the designated account of the provider:

(a)   250,000 BTC to be repaid on 30 June 2013
(b)   50,000 BTC to be repaid on 30 Dec 2013

6

CONFIDENTIAL

KLEIMAN_00005153

The payment is to be issued in Bitcoin as per the schedule.

4.   **Provider's promises**

   (a)   **Undertakings**

      The Provider undertakes to:

      (i)   Use its reasonable commercial endeavours to:

          (1)   Preserve the value and validity of the intellectual property; and

          (2)   Create, promote, retain, and enhance the goodwill in the intellectual property;

      (ii)   During the term and thereafter the termination of this deed not to allow or facilitate the use, nor exploit the intellectual property in a manner in any way detrimental to the Financer and not contravene, deny or contest the rights subsisting in the intellectual property, and take such steps as may be appropriate and available to the Provider to prevent the infringement of any and all the rights subsisting in the intellectual property;

      (iii)   In connection with the permitted use not give any warranty:

          (1)   Beyond that which the Provider is obliged in law to give; or

          (2)   Which has not been approved in writing by the Financer;

      (iv)   To use the intellectual property only for the permitted use and not for any other use;

      (v)   Treat as confidential the confidential information except that which at the time of its disclosure to the Provider was generally available, or subsequently became known to the public provided always that this covenant shall continue in full force and effect notwithstanding that this deed has terminated; and

      (vi)   Devote all reasonable commercial endeavours in the conduct and operation of the business.

   (b)   **Indemnity**

      (i)   The Provider hereby agrees to fully, effectually, and promptly indemnify the Financer against any loss, either direct or indirect, damage or expense whatsoever which the Financer may suffer or incur in respect of:

          (1)   Any breach by the Provider of the provisions of this deed; or

CONFIDENTIAL

KLEIMAN_00005154

       (2)   Any claim by any person against the Financer arising out of or in respect of the exploitation of the intellectual property by the Provider; and

    (ii)   The Provider hereby irrevocably releases the Financer and waives all claims which the Provider may have in the future against the Financer, in respect of any action claim or remedy whatsoever in any way attributable to the exploitation of the intellectual property by the Provider.

## 5.   Improvements

If the Provider develops any improvements, the Financer hereby irrevocably:

(a)   Grants to the Provider the right to apply for any incidental intellectual property rights available in respect of that improvement and in connection with such application, the Financer shall:

    (i)   Make, supply and assist in the preparation of all models, plans, drawings or specifications necessary or convenient for the proper understanding or development of the improvements; and

    (ii)   Grant and do all things necessary to give effect to an assignment of the intellectual property rights in respect of the improvements to the Provider;

(b)   Assigns, transfers and sets over absolutely to the Provider all right title and interest to the improvements including all claims as they relate to the improvements.

## 6.   GST

(a)   GST means a goods and services tax as defined in A New Tax System (Goods and Services Tax) Act 1999.

(b)   In respect of any taxable supply, the Provider must pay to the Financer an additional amount equal to the prevailing GST rate on the supply. The additional amount referred to in this clause is payable at the same time and in the same manner as the licence fee subject to the receipt by the Provider of a valid tax invoice, as defined in A New Tax System (Goods and Services Tax) Act 1999.

8

CONFIDENTIAL
KLEIMAN_00005155

7.  **Term and termination**

   (a)  **Term**

   This deed begins on 01st July 2015 the commencement date and will continue for the term unless it is earlier terminated.

   (b)  **Termination on notice**

   Either party may terminate this deed by notice in writing to the other if the other party commits any breach of any provision of this deed, and has failed to remedy such breach within fourteen days of receipt of notice specifying

   (i)  The exact nature of the breach committed by the defaulting party; and

   (ii)  What is required by the defaulting party to remedy the breach;

8.  **Licence fee**

   (a)  **Payment of licence fee**

   The Provider must pay the licence fee specified in the schedule to the Financer during the term

   (b)  **Late payment**

   If the licence fee or any other monies payable by the Provider to the Financer remain unpaid for seven days after the due date for payment, whether or not formal demand has been made, then the Provider shall pay, in addition to any monies actually owing to the Financer, interest at the rate of 2% over the bank indicator lending rate nominated by the Financer on such monies from the date the payment actually fell due until such monies are recovered and paid to the Financer.

9.  **Warranties by Financer**

   The Financer warrants to the Provider that:

   (a)  The Financer has the power and authority to enter into this deed; and

   (b)  The intellectual property rights granted under this deed will not when used in accordance with this deed infringe the intellectual property rights of any person.

9

CONFIDENTIAL

KLEIMAN_00005156

10. **Third party claim**

    (a)   Provided that the Provider is not in breach of its obligations under this deed, if a third party makes a claim against the Provider alleging that use of the intellectual property infringes its intellectual property rights, the Financer will defend, indemnify and hold harmless the Provider from such a claim provided that the:

        (i)   The Provider notifies the Financer in writing promptly of the claim;

        (ii)   The Provider provides such information, assistance and co-operation as the Financer may reasonably request and at its expense, from time to time; and

        (iii)   The Financer has full discretion to defend, compromise or settle any such claim on such terms as the Financer deems fit.

    (b)   If the Financer cannot satisfactorily settle the claim so as to retain ownership of the intellectual property, its liability will be limited to terminating this deed, and refunding the Provider an amount equal to the portion of any licence fee paid for the period following termination.

    (c)   Nothing in this clause authorises the Provider to defend, compromise or settle any claim on the Financer's behalf.

11. **Limitation of liability**

    (a)   Other than in respect of a party's:

        (i)   Breach of the confidentiality provisions of this deed; or

        (ii)   Infringement of another party's intellectual property rights; or

        (iii)   Indemnification obligations under this deed; or

        (iv)   Wilful misconduct.

    (b)   Neither party will be liable to the other for any consequential, special or punitive damages arising out of this deed. Each party's cumulative direct damages will be limited to the licence fee payable under this deed in the prior twelve month period. This clause survives the termination or expiration of this deed.

10

CONFIDENTIAL

KLEIMAN_00005157

12. **Assignment**

No party may assign its rights or obligations under this deed without the prior written consent of the other parties, which consent may be given or withheld, or given on conditions, in the absolute discretion of those other parties.

13. **Time**

The parties hereto agree that time shall in all respects be of the essence in regards this deed.

14. **Notices**

A communication required by this deed, by a party to another, must be in writing and may be given to them by being:

(a)   Delivered personally; or

(b)   Posted to their address specified in this deed, or as later notified by them, in which case it will be treated as having been received on the second business day after posting; or

(c)   Faxed to the facsimile number of the party with acknowledgment of receipt received electronically by the sender, when it will be treated as received on the day of sending, or

(d)   Sent by email to their email address, when it will be treated as received on that day.

15. **Waiver or variation**

(a)   A party's failure or delay to exercise a power or right does not operate as a waiver of that power or right.

(b)   The exercise of a power or right does not preclude.

(i)    Its future exercise; or

(ii)   The exercise of any other power or right; or

(iii)  The variation or waiver of a provision of this deed or a party's consent to a departure from a provision by another party will be ineffective unless in writing executed by the parties.

11

CONFIDENTIAL

KLEIMAN_00005158

16.  Counterpart

This deed may be executed in any number of counterparts each of which will be an original, but counterparts together will constitute one and the same instrument, and the date of the deed will be the date on which it is executed by the last party.

17.  Costs

(a)   Each party will pay its own costs of and incidental to this deed.

(b)   The Provider will bear all duty payable on this deed and keep indemnified the Financer in respect of that liability.

(c)   The Provider will bear all GST payable in respect of any supply under this deed upon receipt of tax invoice issued by the Financer.

18.  Escrow

(a)   The paper Bitcoin Wallet with address 1933phfhK3ZgFQNLGSDXvqCn32k2buXY8a will be held by the financer as assurance or the contract and will convert to the ownership of the financer on default of the provider.

(b)   All source code and agreements are to be held in a manner that the financer can access on default.

12

CONFIDENTIAL

KLEIMAN_00005159

## REFERENCE SCHEDULE

**Deed date:**          01st April 2011

**Licence fee:**        (a)      250,000 BTC to be repaid on 30 June 2013

                        (b)      50,000 BTC to be repaid on 30 Dec 2013

                        (ex GST) for exclusive perpetual assignment

**Product:**            Bitcoin and Exchange Software in C/C++/C#/R code

**Commencement date:**  01st July 2011

**Term:**               Two (2) years

**Trademark:**          All Marks Associated with C01N and associated marks

                        To be filed

**Patent:**             All IP under BAA-001 / 002 / 003 / 004

13

CONFIDENTIAL

KLEIMAN_00005160

SIGNED AS A DEED

Executed by
W & K Info Defense LLC                    )
in accordance with s.127                  )
Corporations Act 2001 (CTH) and its constitution        )


*Dave Kleiman*


Dave Kleiman
 DIRECTOR



Executed by
Craig Wright R&D (A.B.N. 97 481 146 384)


Craig S Wright


14

CONFIDENTIAL                                                    KLEIMAN_00005161

As director of W&K Info Defense LLC I accept the consent orders in:

2013/225983

2013/245661

In consideration of the amounts due, W&K Info Defense hereby accepts the offer to transfer all

agreed items to Craig Wright R&D for the agreed consideration.

Date                                          Signature

9/1/2013

Uyen T. Nguyen

CONFIDENTIAL

KLEIMAN_00005162

I Uyen T. Nguyen accept the position of US resident director of W&K info Defense LLC of

Florida for the 2013 income tax year.

Date                          Signature

1/7/2013

Uyen T. Nguyen

CONFIDENTIAL

KLEIMAN_00005163

GPO Box 9990 IN YOUR CAPITAL CITY



The Executor of the Estate of Dave Kleiman
C/- Ira Kleiman
7101 Geminata Oak Court
Palm Beach Gardens, FL. 33410

| | |
|---|---|
| Reply to: | PO Box 9977 |
| | Parramatta NSW 2124 |
| Our reference: | 1-55NM97X |
| Contact officer: | Andrew Miller |
| Phone: | (02) 9354 6379 |
| Fax: | (02) 6225 0929 |

15 April 2014

**Request for Information**

To the Executor of the Estate of Dave Kleiman,

The Australian Taxation Office is seeking to conduct a third-party enquiry in relation to ongoing compliance activities. We request that you assist our enquiries by answering some questions below.

A colleague of the late Mr Kleiman has provided us with your details and advised that you are the Executor of Mr Kleiman's estate. Legal action has been taken in Australia, against a company associated with Mr Kleiman, W&K Info Defense Research LLC (W&K). We have attached documents pertaining to W&K, and they are provided to you in your capacity as the Executor for the Estate of the Director. These documents may assist you in responding to our queries.

Could you please provide the following information:

1. Are you aware of the legal actions taken by Dr Craig Wright against W&K?

2. Did Mr Kleiman or W&K complete projects for the Department of Homeland Security as listed in the court documents?

3. Did Mr Kleiman or W&K receive any Government funding for these projects?

4. Did Mr Kleiman hold intellectual property/software in the United States of America as stated in the court documents?

5. Did Mr Kleiman receive an $AU40,000,000 bond from Dr Craig Wright (or another entity) to fund the projects of W&K?

6. Was W&K served with the statement of claim in the New South Wales Supreme Court or provided with the judgements in these cases?

7. We are informed that paper copies of the court notices were forwarded to 3119 Contego Lane, Riviera Beach, FL 33418-6512. Did Mr Kleiman operate from this address?

8. Ms Uyen T Nguyen, born 23 January 1993 in Saigon Vietnam, of
      3128 Merced Ave,
      El Monte
      California 91733-1208 USA
   accepted the offer to be the resident Director of W&K on 1/7/2013.  Did Mr Kleiman request that Ms Nguyen become the Director of W&K?

CONFIDENTIAL

70126.004858-07-2011

KLEIMAN_00005164

9.  Are you aware of the settlement where the parties agreed that Dr Craig Wright will accept the transfer of the Intellectual Property held by W&K in full satisfaction of the $AU56,788,715 judgement debt?

10. Did you agree to, or instruct Ms Nguyen to accept, the settlement in these matters?

11. W&K was registered with the Florida Department of State on 14 February 2011 and was administratively dissolved on 28 September 2012.  Did you instruct Ms Nguyen to re instate W&K on 28 March 2014?

12. Are you aware of the attached contracts (CEWK01 and CEWK03)?

13. Are there any other contracts or documents between W&K or Mr Kleiman and Dr Craig Wright?  If so could you please supply a copy of them?

14. Has the estate been contacted with a request to provide software or intellectual property? If so, has the Estate provided these to Dr Wright?

We appreciate any assistance you can provide in these enquiries.

Thanks and regards,

Andrew Miller

CONFIDENTIAL

KLEIMAN_00005165