```
 1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF FLORIDA
 2                      WEST PALM BEACH DIVISION
                       CASE NO. 9:18-cv-80176-BB
 3
      IRA KLEIMAN, as the personal representative
 4    of the Estate of David Kleiman, and W&K Info
      Defense Research, LLC,
 5
                  Plaintiffs,                November 29, 2021
 6                                           2:59 p.m.
            vs.
 7
      CRAIG WRIGHT,
 8
                  Defendant.                 Pages 1 THROUGH 33
 9    _____
                     TRANSCRIPT OF TRIAL DAY 16
10                BEFORE THE HONORABLE BETH BLOOM
                    UNITED STATES DISTRICT JUDGE
11                       And a Jury of 10

12    Appearances:
      FOR THE PLAINTIFF:    ROCHE FREEDMAN, LLP
13                          DEVIN FREEDMAN, ESQ.
                            KYLE ROCHE, ESQ.
14                          200 South Biscayne, Suite 5500
                            Miami, Florida 33131
15
                            BOIES SCHILLER & FLEXNER
16                          ANDREW BRENNER, ESQ.
                            ALEXANDER J. HOLTZMAN, ESQ.
17                          SAMANTHA LICATA, ESQ.
                            100 Southeast 2nd Street, Suite 2800
18                          Miami, Florida 33131

19    FOR THE DEFENDANT:    RIVERO MESTRE, LLP
                            ANDRES RIVERO, ESQ.
20                          AMANDA M. MCGOVERN, ESQ.
                            2525 Ponce de Leon Boulevard, Suite 1000
21                          Coral Gables, Florida 33134

22    COURT REPORTER:       Yvette Hernandez
                            U.S. District Court
23                          400 North Miami Avenue, Room 10-2
                            Miami, Florida 33128
24                          yvette_hernandez@flsd.uscourts.gov

25
```

```
 1        (Call to order of the Court, 2:59 p.m.)

 2             THE COURT:  All right.  Good afternoon to everyone.

 3   Go ahead and have a seat.

 4             I trust everyone had a nice holiday weekend and it's

 5   good to see everyone.

 6             If I may, before we proceed, if we can just have a

 7   record of who is present in the courtroom, so let us formally

 8   call the case.

 9             COURTROOM DEPUTY:  Calling Civil Case Number 18-80176,

10   Ira Kleiman v. Dr. Craig Wright.

11             Counsel, please state your appearances, starting with

12   Plaintiffs counsel.

13             MR. FREEDMAN:  Good afternoon, Your Honor.  Vel

14   Freedman and Kyle Roche, from Roche Freedman.  And Andrew

15   Brenner, Samantha Licata, Alex Holtzman, and Judy Little, from

16   Boies Schiller & Flexner on behalf of Plaintiffs.

17             MR. RIVERO:  Good afternoon, Your Honor.  Andres

18   Rivero for Dr. Craig Wright.

19             MS. McGOVERN:  Good afternoon, Your Honor.  Amanda

20   McGovern for Dr. Wright.

21             THE COURT:  Good afternoon once again to everyone.

22             As you know, the jury began its deliberations this

23   morning at approximately 9:30.  At 2:17 p.m., I did receive a

24   note from the jurors.  It is in the form of a question that

25   reads as follows:  "Unjust enrichment.  We would like the
```

1    simple definition word 'conferred,'" signed by the foreperson,

2    dated today at 2:17 p.m.

3        MR. BRENNER:  Judge, I didn't catch the -- simple

4    definition.  What was the last word?

5        THE COURT:  "Unjust enrichment.  We would like the

6    simple definition word 'conferred.'"

7        MR. BRENNER:  "Word conferred"?

8        MR. FREEDMAN:  They want the definition of the word

9    "conferred."

10       THE COURT:  I'm reading verbatim from the note.

11       As you know, the instructions set forth the three

12   elements of unjust enrichment, but did not define the word

13   "confer."  To assist the parties, we have taken the liberty, in

14   preparation for each of the attorneys being present in the

15   courtroom, to provide for a suggestion, the Black's Law

16   Dictionary definition of the word "confer," which from the 2019

17   edition states:  "To grant, paren, something, as a gift,

18   benefit, or honor."

19       MS. McGOVERN:  Yeah.  That's what I see.

20       THE COURT:  So let me give you a few moments and I'm

21   open to suggestions.

22       MR. BRENNER:  Okay.

23     (Pause in proceedings.)

24       THE COURT:  And while we're doing that, I'm just going

25   to ask the court security officer to just show you the note, so

```
 1    you can understand how it's been phrased.

 2            MR. RIVERO:  Thank you, Judge.

 3        (Pause in proceedings.)

 4            THE COURT:  A response from either the Plaintiffs or

 5    the Defendant?

 6            MR. FREEDMAN:  Your Honor, can we just have 30 more

 7    seconds?

 8            THE COURT:  Yes.  Of course.  Of course.

 9        (Pause in proceedings.)

10            MR. BRENNER:  Judge, on behalf of the Plaintiffs, we

11    don't like the Black's concept just because the concept of

12    gifting seems strange for an unjust enrichment claim.  So we're

13    trying to work with it to try to make it as -- I don't know --

14    as conversational as possible or as plain as possible.  We

15    thought maybe it would read:  "David Kleiman and/or W&K

16    provided a benefit to Dr. Craig Wright."  So the word "on"

17    becomes "to" and "conferred" becomes "provided."

18            THE COURT:  Well, they have asked for the definition

19    of the word "conferred."

20            MR. BRENNER:  Oh.  I guess it would be -- I guess

21    "provided."

22            MR. RIVERO:  Judge, we --

23            MR. BRENNER:  Or -- oh, I'm sorry.  Or in another

24    form, instead of "conferred," it could be:  "Caused to receive"

25    also.
```

1          MR. RIVERO:  Judge, we agree with the Court going to

2     Black's Law Dictionary.  If I can just say a word about that,

3     Judge.  The Black's Law Dictionary has been taken over by Bryan

4     Garner, who is one of the respected grammarians and linguistic

5     specialists in the law in the United States.  So we think the

6     Court has it right in going with "granted" as Black's Law says.

7          THE COURT:  Well, where would the word "provided" be

8     found as synonymous with "conferred," Mr. Brenner?

9          MR. BRENNER:  Where would it be -- I'm sorry?

10          THE COURT:  Yes.  You've suggested "provided" or

11     "caused to receive" and I'm just wondering where you found

12     that.

13          MR. BRENNER:  Oh, I didn't go online and go into

14     Webster's.  I can do that and see how Webster's defines it.

15     I'm concerned with the idea of using something that's -- oh, so

16     apparently the Merriam-Webster synonym is "give" or "gave,"

17     which is fine with us too.  I'm just concerned with "gifting."

18     It's something that's not been in any -- it's really not what

19     unjust enrichment is.

20          MR. FREEDMAN:  Your Honor, I'm looking at the

21     Merriam-Webster definition online, Your Honor.  It says -- the

22     second definition says:  "To give, open paren, something such

23     as a property or characteristic to someone or something."  Of

24     course, the dictionary definition doesn't really -- I mean, I

25     understand they've asked for the dictionary definition, but

```
1    that doesn't mean they're entitled to it.  Because the cause of
2    action is more than just a dictionary definition.  It is a
3    concept in the law.
4         And we are extremely concerned that if we inject the
5    concept of a gift into the definition, as Black's Law
6    Dictionary -- which while Bryan Garner is a very fine lawyer,
7    he was not defining the word for this use -- that would
8    prejudice the Plaintiffs.
9         THE COURT:  Well, would the parties be amenable, since
10   they've only asked for the word "conferred," C-O-N-F-E-R-R-E-D,
11   for the Court to give a present perfect of to give or to grant?
12   Would that be acceptable?
13        MR. FREEDMAN:  Your Honor, there's also the word
14   "provide" as one of the words related to confer on
15   Merriam-Webster.  We think that that's a little bit more
16   synonymous with the intent behind an unjust enrichment claim.
17        MR. RIVERO:  Judge, I actually don't -- I don't agree.
18   I think we're getting far, far afield.  "Provide" has many
19   different meanings.  To give or grant.  I mean, "give" was one
20   of the words that it pointed to.  It's a very simple version of
21   "grant."
22        "Grant" is simply a word with perhaps some more legal
23   connotation.  I think "grant" is the precise word.  "Give" is a
24   general word, which they suggested.  I think the Court's
25   splitting the difference very nicely and we think that's a very
```

1    reasonable accommodation to the Plaintiffs' request.

2            THE COURT:  All right.  So I would suggest that the

3    Court -- since they've asked for a simple definition of the

4    word "conferred," for the Court to say:  "Confer means to,

5    quote, give or grant."  Would that be acceptable?

6            MR. FREEDMAN:  Your Honor, to the Plaintiffs -- we

7    would like the word "provide" in there.  So if we say:  "To

8    give, to grant, or to provide"?

9            THE COURT:  By where would the Court find the word

10   "provide."

11           MR. FREEDMAN:  I'm looking at Merriam-Webster

12   thesaurus, "confer."  And it's listed as one of the words

13   related to confer; "provide."

14           Because Your Honor, the problem is the concept of

15   giving implies that there is an affirmative act to give.  And

16   we all know that unjust enrichment doesn't necessarily require

17   the affirmative act of one on the other.  It requires one party

18   to obtain a benefit from the other that is unjust for that

19   person to keep.  And so the concept of giving, we believe,

20   inappropriately defines the cause of action.  So if we say:

21   "Provide," we think that cures that issue.

22           THE COURT:  How about if I just say:  "Confer means to

23   grant," which would be from the Black's Law Dictionary?  Would

24   that be acceptable to both sides?

25           MR. FREEDMAN:  Same problem for us, Your Honor.

```
 1            MR. RIVERO:  It would be acceptable to us as well,

 2     Your Honor, as the other suggestion the Court made.

 3            MR. FREEDMAN:  If Your Honor wants to give us --

 4            MR. RIVERO:  If I may.

 5            MR. FREEDMAN:  Sorry.

 6            MR. RIVERO:  Either of the suggestions the Court has

 7     made are acceptable to us and we think very reasonable,

 8     especially because we don't need the word "provide" when we're

 9     looking at any dictionary definition.

10            THE COURT:  Yeah.  Where would the Court find

11     "provide"?  If I look in the Webster's?

12            MR. FREEDMAN:  I'm on Webster's thesaurus, Your Honor.

13            MR. RIVERO:  Thesaurus?  Your Honor --

14            MR. FREEDMAN:  If I may, Mr. Rivero.

15            Your Honor, we just heard this word from you three

16     minutes ago.  We're doing our best.  If the Court warrants to

17     take a 15-minute recess we can start looking at dictionary --

18            THE COURT:  I can do that.  But as you were

19     conferring, the court security officer gave me another written

20     list of questions from the jury.

21            So why don't we do this:  Let me -- I think the

22     definition of "conferred" is a little bit easier, but let me

23     read the second note from the jury, that reads as follows: "How

24     much of intellectual property does W&K currently have under the

25     estate," question mark.
```

1           "Do we need to select an amount for Bitcoin and

2    intellectual property," question mark.

3           "When answering yes to a question requiring an amount,

4    must we follow a certain formula or can we leave it blank?

5    Many of us do not feel comfortable adjudicating" --

6    A-D-J-C-A-T-I-N-G -- "an amount" -- "adjudicating our amount."

7           MR. FREEDMAN:  Is it "adjudicating" potentially?

8           THE COURT:  It's A-D-G -- I'm sorry.

9    A-D-J-C-A-T-I-N-G.

10          And I'll ask the court security officer to again

11   provide the parties with the three questions from the jurors.

12          The response to those questions may take a little bit

13   of time and may require the jurors to come into the courtroom,

14   but let me give you a few minutes to confer.

15          MR. RIVERO:  Your Honor, may we take a photograph

16   or -- I don't know if that's permitted, so that we can continue

17   to look at it, or the Court prefers us to just read it?

18          THE COURT:  Yeah.  I do not feel comfortable with a

19   photograph being taken in the courtroom.  But please take the

20   time to review it.

21          MR. RIVERO:  We will.

22          MR. FREEDMAN:  Your Honor, what about a photocopy so

23   each party can have --

24          THE COURT:  Yes.  Of course.  Of course.  We'll

25   provide a photocopy.

```
 1              Let me give a copy -- well, I actually started the
 2   response to the jury question on the definition of "conferred."
 3   So I'd like to finish this one.  And then we'll make a copy of
 4   that for you.
 5              And I'll go ahead and look at the dictionaries.
 6              Just for the record, the Webster dictionary of
 7   "confer" is:  "To give or bestow."
 8              MR. FREEDMAN:  Your Honor, I'm being told by my
 9   co-counsel that I have been overruled and we will accept the
10   definition read by the Court.
11              THE COURT:  And which one?  Is it:  "To give or grant"
12   or --
13              MR. FREEDMAN:  "To give or bestow," Your Honor.
14              THE COURT:  "Give or bestow."  Is there any objection
15   to that?
16              MR. RIVERO:  One moment, Your Honor.
17         (Pause in proceedings.)
18              MR. RIVERO:  Yes, Judge.  We agree.
19              THE COURT:  Okay.  "To give or bestow."
20              All right.  So the Court's written response will
21   state:  "Confer means to give or bestow."
22              Any objection?
23              MR. RIVERO:  None from the Defense, Your Honor.
24              MR. FREEDMAN:  No, Your Honor.
25              Thank you.
```

```
 1          THE COURT:  All right.  At 3:15, I'm going to direct

 2     the court security officer to bring in the Court's written

 3     response.  And then, once it's provided -- actually, do you

 4     want to look at it?  Because it's going to be in the jury's --

 5     in the jury room and I don't want to have to go back in just to

 6     make a copy.  So why don't you look at the Court's written

 7     response.

 8          Liz is now giving you a copy of the second set of

 9     questions, and we can take the time now to either formulate

10     written responses or to provide further instruction to the

11     jury.

12     (Pause in proceedings.)

13          THE COURT:  Yeah.  We can bring that one in.  And

14     we're going to work on the second set.

15          Okay.  And just let me know when we're ready to

16     address the second set of questions.

17     (Pause in proceedings.)

18          MR. BRENNER:  Any luck -- oh, the word "currently" is

19     at the end of the first line after "W&K"?

20          MR. FREEDMAN:  Yes.

21          THE COURT:  Yeah.  "Currently have under the estate."

22     (Pause in proceedings.)

23          THE COURT:  Does either side have a response to any of

24     the questions?

25          MR. FREEDMAN:  We're getting there, Your Honor.  Maybe
```

1       another five minutes.

2              THE COURT:  All right.

3         (Pause in proceedings.)

4              MR. FREEDMAN:  Your Honor, we have a proposed

5       response.

6              THE COURT:  All right.

7              MR. FREEDMAN:  For question number one, we would tell

8       the jury that:  "You must rely on your collective memory."

9              Question number two, we would say:  "Yes."

10             For question number three, we would say:  "Yes.  The

11      Court has instructed you on how to calculate the amount of

12      damages for each claim and you must follow those instructions."

13             I can read any of those back.  I know I went kind of

14      fast and you are not a stenographer, Your Honor.

15             THE COURT:  On behalf of the Defendant?

16             MS. MCGOVERN:  Your Honor, with respect to question

17      number one, the Defense position is that the intellectual

18      property in this case remains with W&K.

19             With respect to question number two, we believe

20      definitively that the answer is:  "No."  They are not obligated

21      to select an amount for Bitcoin and intellectual property.

22             Number three, the Defense position is:  "There is no

23      specific formula and you may enter a zero or leave the amount

24      blank.  In any event, all questions of fact must depend upon

25      your memory based on the evidence presented."

```
 1              THE COURT:  All right.  Let's --

 2              MR. FREEDMAN:  Your Honor, we can respond to the

 3    Defendant's proposal, if the Court is amenable.  I just wanted

 4    to wait till you had them both down.

 5              THE COURT:  All right.  Mr. Freedman.

 6              MR. FREEDMAN:  For number one, Your Honor, we think

 7    it's entirely inappropriate for the Court to instruct the jury

 8    on the position of who owns the intellectual property.

 9    Obviously, if that was the case, we would have asked you to

10    tell them that the estate has nothing.  But we just don't

11    believe that's an appropriate instruction to the jury.  And so

12    that's why we came up with:  "You must rely on your collective

13    memory" as the response.

14              For number two, we believe they do have to select an

15    amount.  That amount could be zero.  That is true.  But they

16    must select an amount.

17              And for three, Your Honor, again, there is a

18    formulation for damages.  There is -- the Court has instructed

19    them on the price of Bitcoin, either the current price of

20    Bitcoin or the highest price of Bitcoin.  And so there is a

21    formulation that they must follow and they are obligated to

22    follow those instructions.

23              THE COURT:  I would suggest the following:  With

24    regard to the first question:  "How much of intellectual

25    property does W&K currently have under the estate," my
```

1   suggestion is to advise them that all the evidence has been

2   received and they must rely on their collective memory of the

3   evidence in this case, which I believe is appropriate given the

4   question that's being asked.

5        With regard to the second question:  "Do we need to

6   select an amount for Bitcoin and intellectual property," I

7   would suggest that the Court reread the portion of the damages

8   instruction that states that:  "If you find for the estate of

9   David Kleiman and/or W&K on any of its claims, you must

10  consider the matter of damages.  Generally, you should award an

11  amount of money that the preponderance of the evidence shows

12  will fairly and adequately compensate the estate of David

13  Kleiman and/or W&K for its damages."

14       And I would suggest that the Court just remind them to

15  rely on the Court's instructions with regard to the claims and

16  with regard to the damages.

17       Would that be acceptable to both sides?

18       MS. MCGOVERN:  Your Honor, may I respond to that

19  question?

20       THE COURT:  Yes.

21       MS. McGOVERN:  Do you mind if I remain seated?

22       THE COURT:  Not at all.

23       MS. MCGOVERN:  I don't want to use an overformality on

24  this.

25       With respect to the second question, the concern that

1   we have, Your Honor, is that it seems that the jury is confused

2   and believes that it must come up with a number.  And that

3   number can be zero.  And without explaining to the jury, it

4   implies that they must come up with a positive figure.  In

5   other words, it seems the question is:  "Do we need to select

6   an amount for Bitcoin and intellectual property," I think

7   believing that zero is not an amount.

8          So without a clarification, it's going to lead to

9   something that the jury has not determined with that

10  understanding, and that would be the concern with respect to

11  number two.

12         I think the same problem could arise with respect to

13  number three, when asked about a certain formula.  I don't

14  think you can reasonably read the jury instructions to believe

15  that the jury must come up with a formula based upon the price

16  of Bitcoin times a number.  I think they're asking again -- "We

17  don't feel comfortable.  Some of us don't feel comfortable

18  adjudicating this amount."  That's an element of the claim.  So

19  with a clarification that doesn't explain that that amount is

20  part of the claim, it isn't a clarification that actually

21  helps.

22         MR. FREEDMAN:  Your Honor, we believe your instruction

23  is appropriate.  To the extent the jury has reached the amount

24  of damages, that means they have already determined that we

25  have made out a cause of action and that therefore zero is not

1      a proper number.

2            THE COURT:  Well, I do agree with Ms. McGovern to the

3      extent that, in looking at the Verdict Form, there are lines

4      for them to complete.  And if they have found that one or more

5      of the Plaintiffs is entitled to receive any amount of damages,

6      they're asking specifically:  "Do we need to select an amount

7      for Bitcoin and intellectual property?"

8            I'm emphasizing "and."  I don't know if their request

9      is:  "Do we need to select an amount for Bitcoin" or "an amount

10     for Bitcoin and intellectual property," or they're asking for

11     an amount for the Bitcoin and an amount for intellectual

12     property.

13            But regardless of how we interpret it, I do agree with

14     Ms. McGovern that they are asking for a specific answer.  And I

15     think the answer is if they find consistent with the jury

16     instructions that one or more of the Plaintiffs is entitled to

17     recovery, then they need to select an amount.  That can be

18     zero.  It can be more than zero.  But they do need to put a --

19     some type of a number on the line.  And that's my concern, is

20     that they may leave that blank.  And that's where I think we're

21     going to have some issues with regard to an inconsistent

22     verdict.  And I would rather give them some direction.

23            MR. FREEDMAN:  Your Honor, if we may have one moment.

24         (Pause in proceedings.)

25            THE COURT:  And let me also state that with regard to

 1    the third question, there is no formula.  But in response to

 2    their question:  "Can we leave it blank," I think that's where

 3    I would suggest that the Court read to them the portion of the

 4    damages and then refer -- damages instruction and then refer

 5    them back to the jury instructions.  But specifically:  "Can we

 6    leave it blank," if they find for one or more of the parties,

 7    then they must respond appropriately consistent with the

 8    guidance that's provided in the Verdict Form.

 9              MR. FREEDMAN:  So Your Honor, our concern is that, for

10    example, if you look at the fiduciary duty claim, one of the

11    elements of the claim is damages.  And now when you get down

12    to -- and you answer -- if there's an answer yes, for

13    example -- or:  In the partnership claim, if there's an answer

14    yes, now there must be a damages amount listed.

15              I understand that it could be, you know, a number on

16    the top line and a zero on the bottom line, but it can't be a

17    zero on both lines.  That would be an inconsistent verdict.

18    And so we're concerned that you can't tell the jury that they

19    can put a zero on both lines, essentially, if they have gotten

20    to that next question.

21              If they've answered "yes" to question one, for

22    example, they can't put a zero on both lines in question two.

23    But they could, as the Court has pointed out, put a zero on one

24    and a number on the other.

25              Of course --

18

1          THE COURT:  Well, that's why I believe that the Court

2     should instruct them:  "Read the instruction on damages.  You

3     are to award an amount you feel comports with the evidence,"

4     and specifically with regard to selecting an amount for Bitcoin

5     and intellectual property, that they're to complete the Verdict

6     Form based on the questions that they have been asked.  And there is

7     no -- well, actually, I don't even want to say that.

8          I think that with regard to:  "Must we follow a

9     certain formula," I think it's important for the Court to

10    remind them that all of the instructions on the law and all of

11    the instructions with regard to completing the Verdict Form

12    have been given to them.  So there's no further instruction

13    with regard to any formula.

14          But with regard to leaving it blank, I agree with

15    Ms. McGovern that I think the Court should say to them that:

16    "Consistent with answering each question to your ability, given

17    the instructions, with regard to a leaving it blank, that you

18    cannot leave it blank based on the questions that are asked"

19    because it directs you to move to another question if they

20    find, you know, one way or the other.

21          So I'm hesitant to answer question three with a number

22    other than to say:  "Comports with the evidence.  It may be --

23    it can be zero.  It can be more than zero."  So at least that

24    they're directed to complete the Verdict Form.  That's where I

25    think it's a little tricky to say anything other than remind

1    them of the directions that were given in the Verdict Form.

2           MS. MCGOVERN:  Your Honor, if I may just make one

3    point with respect to question three.  I don't think it's

4    appropriate for us to be using these questions and applying it

5    to a specific count.  We don't know what triggered this

6    question from the jury.  I think the questions are very

7    straightforward.  They want to know whether or not they must

8    follow a specific formula.  And I think that the response that

9    the Court has just stated, which is:  "There is not an

10   additional instruction here and there is no specific

11   formula" -- I think if the number -- if the jury determines

12   that it has answered yes to a question requiring an amount, I

13   think they're entitled to know that there's not a specific

14   formula, the jury instructions control, the evidence controls,

15   their memory controls.  And whatever number it's going to be,

16   as opposed to leaving it blank, can include zero.

17           I think it's confusing because there are two blanks

18   there.  And they simply want to know whether the number can

19   include a zero, and it can.

20           MR. FREEDMAN:  Your Honor, I'm not sure that that's

21   what was asked at all.  And in fact, if I were to guess -- and

22   we're all just guessing at what was meant by the question --

23   there is some hesitation because there's potentially

24   significant amounts of money at issue in the case.  The jury

25   has to know that they can't not fill out significant amounts of

1    money just because they are uncomfortable writing down

2    significant amounts of money.  They must answer the questions.

3    This is what they were charged to do.  It is not appropriate to

4    put zero if they have gotten down to the question of damages

5    because they have now found for the Plaintiffs.

6            THE COURT:  Well, it actually is, Mr. Freedman.  For

7    example, with regard to unjust enrichment, they may find with

8    regard to -- and I'm looking specifically at question 19 that

9    if they find yes for unjust enrichment, they could certainly

10   find with regard to the estate of David Kleiman that perhaps

11   he's entitled to a certain number of Bitcoin, but perhaps he's

12   not entitled to intellectual property.  And if they find yes

13   for W&K, maybe they find that W&K is entitled to some

14   intellectual property, but not entitled to a numerical amount

15   owed from Bitcoin.

16           So I can understand where there might be some

17   confusion when they ask the question:  "Do we need to select an

18   amount for Bitcoin and intellectual property?"

19           To that extent, I believe that they do need to have

20   some guidance because it doesn't say:  "You must provide a

21   number on both lines."  But they must give some answer.  And

22   that's where I agree with Ms. McGovern that I believe that we

23   should be able to say to them:  "It can be zero.  It can be

24   more than zero."

25           MR. FREEDMAN:  But the problem with that response,

1    Your Honor, is it impies it could be zero on both lines.

2            So I agree with you that you could have zero on one

3    line.  You can't have zero on both lines.  So I think that the

4    Court's response -- I think if the Court would like to give the

5    jury insight on this, then the Court's response has to say:

6    "If you have reached a question -- if you have answered yes,

7    and the question has a slot for Bitcoin and for intellectual

8    property, you must place an amount on either Bitcoin or

9    intellectual property.  You do not have to place it on both,

10   but you also could do it on both."

11           It just gets a little confusing.  But the Court cannot

12   say to them that they can do zero on both lines.  That would be

13   inappropriate in our --

14           THE COURT:  Be acceptable to the Defendant?

15           MS. McGOVERN:  Your Honor, no, it would not.

16           And the reason for this is we cannot assume that the

17   jury must find damages in this case for two reasons.  First,

18   the evidence in the case specifically stated that the

19   intellectual property is currently with W&K.

20           Second, there's a question of whether or not the keys

21   are on the encrypted hard drive that were found on Dave

22   Kleiman's body.

23           We can't assume that the jury must find damages

24   because they have determined yes.  This is -- the case is with

25   the jury.  The jury is going to make a determination on those

```
 1    elements.  There's language here that I'm simply reading

 2    verbatim.  "Many of us -- many of us -- do not feel

 3    comfortable."  I think we have to let the jury determine and

 4    simply know that there's not a specific formula and that the

 5    damages must be based on evidence, whatever that number is.

 6            We do not -- the Defense does not agree with any

 7    insinuation that there must be an amount of damages found

 8    simply because a claim of yes is answered to a question.

 9            MR. FREEDMAN:  Your Honor, if you look at the jury

10    instructions, the elements of the claims include damages.  So

11    I'm looking at -- just at 11, "Fiduciary Duty," that this

12    breach was a legal cause of damages to W&K.

13            At, you know, "Civil Theft.  Dr. Wright's actions were

14    a legal cause of damages to the estate of Dave Kleiman and

15    W&K."

16            You know, three:  "It would be inequitable or unfair

17    to retain the benefit.  Fraud.  The false statement or omission

18    caused damage."  I mean, it goes on, but -- in "Constructive

19    Fraud.  Proximately caused one or more of the Plaintiffs to

20    suffer damages.  It is simply untrue they can check yes and

21    then put zero down for damages for both lines.

22            THE COURT:  I believe it's appropriate to give them

23    the damage instruction, refer them back to the instructions

24    with regard to the determination of damages, remind them to

25    follow the instructions, tell them they are to award an amount
```

```
 1   that they feel comports with the evidence.  That with regard to

 2   responding to each question, the Verdict Form gives them

 3   instructions.

 4          And with regard to number two:  "Do we need to select

 5   an amount for Bitcoin and intellectual property," to advise

 6   them that they are to answer each question to the best of their

 7   ability given the instructions.

 8          MR. FREEDMAN:  We have no objection, Your Honor.

 9          MS. McGOVERN:  Again, Your Honor, we simply believe

10   that the appropriate answer to question number two is:  "No."

11          I think that the Verdict Form as it reads suggests

12   that if you find yes, then you must find a number for both.

13   And that's not, in fact, the intended meaning of the question.

14   It's a legitimate question.  And it's simply:  "No."  Or at a

15   minimum, if the answer is zero, that number can include zero.

16          THE COURT:  Okay.  Would the parties be comfortable

17   with the Court saying:  "The answer can be zero.  It can be

18   more than zero"?

19          MR. FREEDMAN:  No, Your Honor, not unless the Court

20   also gives an instruction that the answer cannot be zero for

21   both lines.

22          MS. McGOVERN:  We're comfortable with that, Your

23   Honor, not comfortable with what Mr. Freedman has just

24   suggested.  We think what you have just suggested answers the

25   question.
```

1           MR. FREEDMAN:  It's simply not consistent that the

2     jury can find zero on both lines after having found a cause of

3     action in the Plaintiffs' favor.  And the Court's response

4     would imply that they can find zero on both lines, and that

5     would be improper in our position, Your Honor.

6           And we think that the Court's prior suggestion to

7     direct the jury back to the instructions is the appropriate way

8     to go in this case.

9           MS. McGOVERN:  Your Honor, I don't think that a

10    question that the jury has asked us to contemplate and help

11    them with is answered by simply bringing them back to where

12    they were without an answer.

13           I think that with respect to number two, the specific

14    question is:  "Do we need to select an amount for Bitcoin and

15    intellectual property?"  Going beyond that question and saying:

16    "You must find a number for one of them," goes beyond the

17    question.  That's not what they've asking.

18           THE COURT:  Then what I would suggest, if the parties

19    are not in agreement -- and it's specifically with regard to

20    question two:  "Do we need to select an amount for Bitcoin and

21    intellectual property?"  -- that if the parties feel

22    comfortable, I will respond by asking them for more detail

23    regarding their second question.  Would that be acceptable?

24           MR. FREEDMAN:  That's fine for us, Your Honor.

25           MS. McGOVERN:  That's fine, Your Honor.

```
 1        (Pause in proceedings.)

 2            THE COURT:  All right.  "The Court is requesting a

 3     clarification as to the second question above."

 4            Is that acceptable?

 5            MS. McGOVERN:  For the Defense it is, Your Honor.

 6            MR. FREEDMAN:  Yes, Your Honor.

 7            THE COURT:  All right.  Can you bring this in to the

 8     jury and ask them to provide a written response.

 9            Thank you.

10        (Pause in proceedings.)

11            THE COURT:  Okay.  We have a response from the jury to

12     my request for a clarification.  And the response reads as

13     follows:  "If we answer yes, do we decide on a monetary value?

14     Do we follow the amounts the Plaintiff presented to us?"

15            Response by either side?

16            MR. FREEDMAN:  Your Honor, just one moment.

17        (Pause in proceedings.)

18            MR. BRENNER:  Can I ask you to read that one more

19     time, please.

20            THE COURT:  "If we answer yes, do we decide on a

21     monetary value?  Do we follow the amounts the Plaintiff

22     presented to us?"

23            MS. McGOVERN:  Your Honor, the Defense position is no.

24            MR. FREEDMAN:  Your Honor, the Plaintiffs' position

25     is -- to the first question, which is:  "Do we determine
```

1   amounts," the answer is:  "Yes."

2          And to the second question:  "Do we have to follow the

3   amounts the Plaintiff has given you," we believe the Court

4   should refer the jury back to the instructions and advise them

5   the Court's instructed them on how to calculate damages.

6          THE COURT:  Okay.  The Court is going to respond as

7   follows:  With regard to:  "How much intellectual property does

8   W&K have under the estate," the response will be:  "All the

9   evidence has been received.  You must rely on your collective

10  memory of the evidence in this case."

11         With regard to question two:  "Do we need to select an

12  amount for Bitcoin and intellectual property," that has been

13  clarified:  "If we answer yes, do we decide on a monetary

14  value, do we follow the amounts the Plaintiff presented to us,"

15  the Court is going to refer them back to the damage

16  instruction, read them the portion with regard to:  "If you

17  find for the estate of David Kleiman" on Page 16 and ends on

18  Page 17.  Then I'm going to let them know that they have

19  additional instructions with regard to damages and they are to

20  award an amount that they feel comports with the evidence.

21         With regard to question three:  "When answering yes to

22  a question requiring an amount, must we follow a certain

23  formula or can we leave it blank," the answer is going to be:

24  "No additional instructions will be provided.  All of the

25  instructions have been provided to you with regard to the

1    claims and damages if you find they're appropriate."

2           Okay.  Anything further?

3           MS. MCGOVERN:  Yes, Your Honor.  With respect to

4    question two, we ask that the Court include the ability for the

5    jury to follow its own formula and include zero if they believe

6    that that is appropriate.  Doesn't have to be that specific

7    language, Your Honor.  But by referring the jury specifically

8    back to the jury instruction, without allowing them or giving

9    them the clarification that it can be zero, they may believe

10   that they have to follow what the Plaintiff has requested.

11   That's the question that they've asked for:  "Must we follow

12   what the Plaintiff presented?"

13          I think the answer to that clarified question is:

14   "No.  You do not have to follow what the Plaintiff presented.

15   Please refer back to the jury instructions."

16          THE COURT:  And I don't think the Court needs to

17   answer a yes or no, other than referring the jury back to the

18   instructions.

19          Okay.  All right.  We are going to bring the jury in

20   because I am going to respond verbally in the courtroom by

21   reading their question and then providing an answer.

22          So if there's nothing further, all rise for the jury.

23       (Before the Jury, 3:53 p.m.)

24          THE COURT:  All right.  Good afternoon, Ladies and

25   Gentlemen.

1          Please be seated.

2          It's good to see each of you.  I know that you arrived

3  timely this morning and you have been deliberating, and it is

4  now 10 to 4:00.

5          I have received a second question.  The first

6  question, the Court did respond in writing to you after

7  conferring with the attorneys.

8          The second note the Court received reads as follows --

9  and I will respond in kind based on the three questions that

10  were asked.  Number one is:  "How much of intellectual property

11  does W&K currently have under the estate?"

12          The answer, Ladies and Gentlemen, is all the evidence

13  has been received.  You must rely on your collective memory of

14  the evidence in this case.

15          The second question is:  "Do we need to select an

16  amount for Bitcoin and intellectual property?"

17          I did request a clarification as to the second

18  question, which states:  "If we answer yes, do we decide on a

19  monetary value?  Do we follow the amounts the Plaintiff

20  presented to us?"

21          Ladies and Gentlemen, you have been provided jury

22  instructions, including the instruction with regard to damages.

23  And I will refer you to Page 16 of the jury instructions and

24  also read that:  "If you find for the estate of David Kleiman

25  and/or W&K on any of its claims, you must consider the matter

1   of damages.  Generally, you should award an amount of money

2   that the preponderance of the evidence shows will fairly and

3   adequately compensate the estate of David Kleiman and/or W&K

4   for its damages."  The Court then further gave you further

5   instructions with regard to specific items of damages.

6        With regard to question three:  "When answering yes to

7   a question requiring an amount, must we follow a certain

8   formula or can we leave it blank?  Many of us do not feel

9   comfortable adjudicating" -- A-D-J-C-A-T-I-N-G -- "an amount."

10       Ladies and Gentlemen, there are no additional

11  instructions to be given regarding any formula.  All of the

12  instructions with regard to the claims and the amount of

13  damages, if you find that damages are appropriate, have been

14  provided to you.  I would suggest that you review the jury

15  instructions and follow the Verdict Form that has been very

16  specific with regard to giving you instructions on how to

17  answer each question.

18       All right.  The Court has responded to each of your

19  questions and I would ask that you return to the jury room to

20  continue your deliberations.

21     (Jury not present, 3:56 p.m.)

22       THE COURT:  All right.  A copy of the questions and

23  the Court's response will be provided to the attorneys.

24       Let me also provide some housekeeping.  What I plan to

25  do moving forward, to the extent that the jury continues its

1   deliberations to the next day, is excuse the -- or adjourn for

2   the evening at 5:00, give the jury the admonishment with regard

3   to not speaking to anybody about the case or doing any

4   independent research.

5        The jury has specifically requested of Liz that they

6   be allowed to come in at 10:00.  It was hard for some of the

7   jurors to be here at 9:30.  And I just want to make sure that

8   that's appropriate for the attorneys.  As well, they would like

9   to leave at 5:00.  Is there any objection to that?

10        MR. FREEDMAN:  No objection from Plaintiffs, Your

11   Honor.

12        MR. RIVERO:  No objection from the Defense, Your

13   Honor.

14        THE COURT:  Okay.  I know it's five to 4:00 and

15   there's another hour.  So certainly you're free to remain.

16   We'll go ahead and just lock the courtroom for security

17   reasons.  But you're free to use the conference rooms or to sit

18   outside.  And I'll see you back here at 5:00.

19     (Recess from 3:57 p.m. to 5:01 p.m.)

20        THE COURT:  All right.  Welcome back.  Good to see

21   everyone.

22        Is there anything we need to address before we adjourn

23   for the evening and excuse the jury for the evening?

24        MR. FREEDMAN:  Nothing for Plaintiffs, Your Honor.

25        MR. RIVERO:  Nothing from the Defense, Your Honor.

1          THE COURT:  Okay.  Let's bring the jury back in.

2      (Before the Jury, 5:01 p.m.)

3          THE COURT:  All right.  Welcome back, Ladies and

4     Gentlemen.  Please be seated.

5          As you can see, it is now 5:00 and we will adjourn for

6     the evening.

7          It's my understanding that you have requested of the

8     courtroom deputy to come in tomorrow morning at 10:00 a.m.

9     That's fine.

10         I would ask that you abide by the same instructions.

11    That is, if you'll meet in the vestibule, the court security

12    officer will come and get you and bring you into the jury room

13    that will be locked until all 10 of you have arrived tomorrow

14    morning at 10:00 a.m.

15         Please remember, as we adjourn for the evening, you're

16    not to discuss this case with anyone, nor permit anyone to

17    speak with you.  All the evidence has been received.  You are

18    not to conduct any independent research.

19         And the court security officer, as well as the

20    courtroom deputy, will see you tomorrow morning at 10:00 a.m.

21         Have a pleasant evening.

22      (Jury not present, 5:02 p.m.)

23         THE COURT:  All right.  If there's nothing further,

24    have a pleasant evening.

25         I would suggest that we follow the same procedure.

1    That is, please be at hand in the event that the jury has a

2    question or arrives at a verdict.  And I will see you at some

3    point tomorrow.

4            MS. McGOVERN:  Thank you, Your Honor.

5            MR. RIVERO:  Good night, Your Honor.

6            THE COURT:  Have a nice evening.

7        (Proceedings adjourned at 5:03 p.m.)

1    UNITED STATES OF AMERICA       )

2    ss:

3    SOUTHERN DISTRICT OF FLORIDA  )

4                    C E R T I F I C A T E

5           I, Yvette Hernandez, Certified Shorthand Reporter in

6    and for the United States District Court for the Southern

7    District of Florida, do hereby certify that I was present at

8    and reported in machine shorthand the proceedings had the 29th

9    day of November, 2021, in the above-mentioned court; and that

10   the foregoing transcript is a true, correct, and complete

11   transcript of my stenographic notes.

12          I further certify that this transcript contains pages

13   1 - 33.

14          IN WITNESS WHEREOF, I have hereunto set my hand at

15   Miami, Florida this 2nd day of December, 2021.

16

17                         /s/Yvette Hernandez
                           Yvette Hernandez, CSR, RPR, CLR, CRR, RMR
18                         400 North Miami Avenue, 10-2
                           Miami, Florida 33128
19                         (305) 523-5698
                           yvette_hernandez@flsd.uscourts.gov
20

21

22

23

24

25