## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K INFO DEFENSE RESEARCH, LLC<br><br>       *Plaintiffs,*<br><br>v.<br><br>CRAIG WRIGHT<br><br>       *Defendant.* | CASE NO.:  9:18-cv-80176-BB |

## THE ESTATE OF DAVID KLEIMAN'S MOTION FOR A NEW TRIAL BASED ON VIOLATIONS OF ORDER EXCLUDING SIBLING RELATIONSHIP EVIDENCE

Plaintiff Ira Kleiman, as the personal representative of the Estate of David Kleiman (referred to herein as the "Estate"), hereby files this Motion for New Trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, and states as follows:

In preparing for trial, the Estate anticipated Defendant would try to inject Ira Kleiman's relationship with his brother David Kleiman into the trial as an attempt to persuade the jury that the Estate should not recover because Ira Kleiman (the Estate's personal representative and beneficiary) was somehow undeserving.

Understanding the potency and prejudice of this issue, the parties vigorously litigated Defendant's ability to make these improper arguments in pretrial motions in limine. The Court, after full briefing, excluded evidence about the brothers' relationship except as to dinner conversations on Thanksgiving Day 2009.

As detailed below, Defendant tried to evade the Court's ruling throughout trial and when that failed, simply violated it. Repeatedly.

Immediately after Plaintiffs' opening statement, Defendant's counsel asserted that Plaintiffs had opened the door to evidence and argument about the brothers' relationship. Ignoring the Court's confirmation that no door had been opened and that evidence on this issue was still excluded pursuant to the Court's prior Order, Defendant's counsel nevertheless repeatedly injected the issue into the trial. Counsel twice raised the issue at the start of Ira Kleiman's cross-examination – pointing out that 2009, *i.e.*, over three and a half years before David's passing, was

the last time Ira had seen his brother in person. This pattern continued thereafter. In fact, Defendant inappropriately focused the jury's attention on the brothers' relationship more than ten times during trial.

Defendant's wrongdoing, and the prejudice caused to the Estate, is further exacerbated because the Estate followed the rules. Specifically, cognizant of the Court's order, Plaintiffs presented no evidence about the favorable relationship between the brothers apart from the Thanksgiving dinner conversation. Accordingly, the only evidence the jury heard on this issue was from the Defendant. Defendant's efforts to inject this issue into the trial were not lost on the jury. Indeed, a prominent legal media outlet secured an interview with a juror, who related that (as anticipated by the parties and the Court) the sibling relationship *did* affect the jury's verdict.

Defendant's repeated and fruitful misconduct in injecting this excluded issue into the trial warrants a new trial on the Estate's claims. No new trial is sought or required on W&K Info Defense Research LLC's claims, which were not affected by the sibling relationship issue.

## BACKGROUND

Before trial, the Estate expected Defendant would seek to inject the purported nature of the relationship between Ira and David Kleiman into trial, despite the highly prejudicial nature of this evidence and lack of any probative value. ECF No. [510], at 4–7. To that end, Plaintiffs moved in limine to exclude it. In doing so, Plaintiffs identified examples of objectionable questions asked of Ira Kleiman and others in their depositions, including questions about whether Ira had visited David in the hospital and the last time Ira saw David. *Id.* at 5–6; *id.* Exs. 1, 2, 3. Plaintiffs explained that the lack of any probative value in evidence about the sibling relationship (*id.* at 4–5) and the prejudice its introduction would cause demonstrated Defendant was improperly attempting to use this evidence to paint Ira as underserving. *Id.* at 6–7 ("Such evidence would severely prejudice Plaintiffs in front of a jury that may make a decision in the case premised on how 'good' of a brother Ira was or whether Ira 'deserves' Dave's fortune – instead of basing their decision on the facts and merits of the case."). Finally, Plaintiffs pointed out that it was essential to exclude this evidence before trial because "the harm done by allowing the [testimony or evidence about the purported nature of the sibling relationship would] not be erased from the minds of the jury by an objection or curative instruction." *Id.* at 7. Indeed, forcing Plaintiffs to object would only exacerbate the prejudice. Defendant opposed Plaintiffs' Motion in Limine on this issue. ECF No. [523], at 10–12.

The Court granted the Motion in Limine as to this issue and held that "[e]vidence about Ira Kleiman's sibling-relationship with Mr. Kleiman is excluded except as to the Thanksgiving Day 2009 dinner conversations." ECF No. [623], at 16. The Court held that "the quality of the siblings' relationship does not make Plaintiffs' claims or Defendant's defenses more or less probable." *Id.* at 15. "Indeed, **whether Ira Kleiman visited his brother at the hospital**, **spoke to him infrequently**, or **whether Mr. Kleiman mentioned Ira Kleiman to others** ha[d] limited probative value but substantial capacity to cause undue prejudice." *Id.* (emphasis added) (quoting Plaintiffs' motion in limine that the excluded "matters raise[d] significant concerns that the jury w[ould] 'make a decision in this case premised on how "good" of a brother Ira [Kleiman] was or whether [he] "deserves" Dave [Kleiman's] fortune – instead of basing their decision on the facts and merits of the case'").

Despite the clarity of the Court's order, Defendant violated it several times during the trial. Counsel first tried to inject the sibling relationship issue in opening statements, arguing to the Court that Plaintiffs had opened the door to its introduction, a view the Court rejected. Trial Tr. Day 1 at 210:16–211:21. Undeterred, defense counsel asked Ira Kleiman twice in the very first moments of his cross-examination (his fourth and fifth questions) to confirm that the Thanksgiving Day dinner in 2009 was the "last day [Ira] saw his brother in life." While the Estate immediately objected, the objections were overruled and the Estate's request for sidebar was denied:

> Q. All right. You spoke very little -- if I remember correctly, the only thing you commented on in the period between 2008 and April of 2013 is Thanksgiving Day 2009; isn't that right?
> A. Yes.
> Q. Okay. And that was a -- that was November 26th, 2009, right?
> A. Correct.
> **Q. Okay. And you know that date because that's the last day you saw your brother in life, correct?**
> MR. BRENNER: Objection. May we approach?
> MR. RIVERO: Judge, I'll --
> THE COURT: The objection is overruled at this point.
> BY MR. RIVERO:
> Q. Sir?
> A. I'm not exactly certain if that's the very last day. But that's the -- I guess the best memory of last seeing him. I may have seen him other times after that, but I just don't recall it.
> **Q. Sir, your testimony under oath and your best memory is that that was the last day you saw your brother in life, is it not?**
> MR. BRENNER: Same objection, Your Honor.

> THE WITNESS: Like I said, I'm not certain that that was --
> THE COURT: The objection is noted. It's overruled at this point.
> THE WITNESS: I could have possibly seen him other days.

Trial Tr. Day 3 at 149:22–150:24 (emphasis added) (relevant excerpts of the trial transcripts are attached as Exhibit A).

The cross examination of Ira Kleiman continued the next day. Defense counsel circled back to this forbidden issue twice more, again twice asking Ira whether Thanksgiving 2009 was the last time he saw David in person. Only then was a renewed objection to the question sustained:

> **Q. Right. The last time you spoke to David Kleiman in life was in 2009, right?**
> A. Correct -- well, no, no. Actually, I shouldn't say that.
> Q. I said that the wrong way.
> A. That's the last time I recall seeing him.
> Q. Are you finished, Mr. Kleiman?
> A. Yes.
> **Q. Let me restate the question. The last time you saw your brother in person was in 2009?**
> MR. BRENNER: Your Honor, just renew the objection from yesterday on this issue.
> THE COURT: I'm sorry. The objection is?
> MR. BRENNER: It violates an order of the Court.
> THE COURT: Sustained.

Trial Tr. Day 4 at 23:12–24:1 (emphasis added). The need for the Estate to object itself brought attention to the issue of the sibling relationship in a way that the Motion in Limine and resulting Order was meant to prevent.

A bit later on that same day, Counsel violated the Motion in Limine Order again and asked Ira a question the Court had expressly forbidden:

> **Q. You never saw him in the hospital?**
> A. No.

Trial Tr. Day 4 at 84:1–2 (emphasis added); *compare* ECF No. [623], at 16 ("Indeed, **whether Ira Kleiman visited his brother at the hospital** . . . has limited probative value but substantial capacity to cause undue prejudice.").

Counsel used every opportunity to suggest to the jury, in violation of the Court's order, that there was an estrangement between David and Ira. For example, although probative of no claim or defense in the case, counsel had Ira confirm that he didn't find out Dave had died until days after, he'd passed away and his body has been found:

> **Q. All right. To be clear, just to make this crystal clear, you**

**didn't learn of Dave's death until a few days after his body was found?**
    A. Yes.
    **Q. And he -- you don't know the exact date, but he had died some days before?**
    A. I believe so.

Trial Tr. Day 4 at 135:22–136:3 (emphasis added).

    Plaintiffs expected Defendant's counsel to redact portions of otherwise admissible exhibits that violated the Court's orders (as Plaintiffs did), but notably—they did not. Instead, defense counsel specifically highlighted portions of an exhibit the Court held violated its order on the motion in limine regarding the brothers' relationship, and later ordered that portion redacted (*see* ECF No. [828-3]):

    Q. Mr. Kleiman --
    **MR. RIVERO: Mr. Shah, if you could highlight the first two sentences of Paragraph 3.**
    BY MR. RIVERO:
    **Q. "Ira is David's brother. He had limited contact and personal knowledge as to David's financial affairs throughout David's life." Correct?**
    A. Correct.
    MR. BRENNER: Your Honor, I have to ask to approach.
    THE COURT: I'm sorry?
    MR. BRENNER: I have to ask to approach, Your Honor, and ask that it be taken down during the sidebar.
    THE COURT: All right. If we can take it down for a moment.

Trial Tr. Day 4 at 173:13–25 (emphasis added). Defendant's counsel also showed the jury—unredacted—portions of the exhibit stating that "**Ira never saw [David] at the hospital**" and "**may have seen David one time when David took a leave from the hospital**," both of which were later redacted as inconsistent with the Motion in Limine Order. *Compare* D008 (emphasis added), *with* ECF No. [828-3].

    The next day, Defendant's counsel took the opportunity to, once again, improperly insinuate that Ira did not speak with David as frequently as a deserving brother should during the last year of David's life:

    BY MR. RIVERO:
    Q. Mr. Kleiman, before I come back to these email exchanges between your brother and Craig Wright, I just want to talk with you about one other subject and that is your telephone communications with David Kleiman. **Would you agree with me that between March 12 and April 7th, 2013, on the cell phone at least, you spoke with David Kleiman six**

> **times?**
>
> A. What time again?
>
> **Q. This is between -- this is in the last year, the last 13 months of
> your brother's life.**
>
> MR. BRENNER: Objection, Your Honor. Subject to court order.
>
> THE COURT: The objection is sustained.
>
> MR. RIVERO: I'll move on.

Trial Tr. Day 5 at 68:7–21 (emphasis added).

Defense counsel's inappropriate attempts to violate the Court's Motion in Limine Order
permeated not just their actual questions to Ira on cross examination, but also extended to using
argument on admissibility of an exhibit in open court improperly to suggest to the jury that there
was a lack of communication between David and Ira in the last year of David's life:

> **MR. RIVERO: Judge, it's the absence of voice mails and that is
> highly relevant.**
>
> MR. BRENNER: Yeah, Judge. And also, understand, subject to the
> Court's order, too.
>
> THE COURT: Yeah. That's where -- the objection is sustained.

Trial Tr. Day 5 at 70:16–71:3 (emphasis added).

The misconduct was not constrained to the cross-examination of Ira Kleiman because
counsel also asked Patrick Paige about whether he had heard from David about Ira over the course
of the relationship between Paige and David, again violating a specific direction the Court provided
in its Motion in Limine Order:

> Q. So you knew David Kleiman for about 20 years.
>
> A. Yeah. I believe it was about 20 years.
>
> **Q. During that time, how many times did you hear of Ira
> Kleiman?**
>
> **A. I can't really recall of any offhand, other than he had a
> brother.**

Trial Tr. Day 2 at 184:19–24 (emphasis added).

Unlike Defendant, the Estate was careful not to introduce evidence about the sibling
relationship, which would have revealed that the relationship Defendant's attorneys tried to paint
as estranged was a multifaceted relationship with strong positive aspects as well. For example, Ira
Kleiman was very often in touch with David Kleiman while the latter was in the hospital, including
more than 100 phone calls between the two just during David's final hospitalization. *See, e.g.*,
P721. And Plaintiffs did not highlight how David's decision to make Ira the sole beneficiary of his
estate, his personal representative, and his healthcare proxy likewise reflects positively on the

relationship between the brothers. *See* JE22 at 3 (will naming Ira Kleiman as personal representative of the estate and sole beneficiary); D99 at 787; D102 at 25, 173 ("According to Mr. Kleiman, his brother Ira is his health care surrogate."), 184 (same), 274 ("Mr. Kleiman appointed his brother Ira Kleiman, as his health care surrogate."), 277. Nor did Mr. Kleiman testify that he also listed his brother as a beneficiary of his own estate. The Estate was punished, in effect, by its compliance with the Court's order in not introducing the positive aspects of David and Ira's relationship while Defendant disregarded that ruling.

These violations were salient, and not subtle. For example, the sibling relationship was extensively explored in media coverage of the trial. An article on Yahoo!, for example, reported that "Andres Rivero, lead counsel for Wright's defense, focused his cross-examination of Ira on his strained relationship with his brother Dave before the latter's death, in an attempt to depict Ira as purely motivated by financial gain." *See* Cheyenne Ligon, *Day 4 of Kleiman v. Wright: Craig Wright's Testimony Delayed*, Yahoo!, Nov. 4, 2021, https://www.yahoo.com/now/day-4-kleiman-v-wright-235110145.html (attached as Exhibit B).

Defense counsel's inappropriate suggestions about the sibling relationship were clearly noticed by the media present in the courtroom. One article related that "despite living only a few miles apart, that Thanksgiving dinner was the last time the brothers ever saw each other face-to-face. . . . Ira's disinterest in Dave's welfare seems to have been matched only by his disinterest in (a) preserving the integrity of Dave's digital devices . . . ." Steven Stradbrooke, *Ira Kleiman Serves Up a Bitcoin Turkey in Wright Lawsuit Testimony*, Coingeek, Nov. 5, 2021, https://coingeek.com/ira-kleiman-serves-up-a-bitcoin-turkey-in-wright-lawsuit-testimony/.[1] Another article suggested that cross-examination of Ira "showed that Ira Kleiman did not really know his brother Dave that well and that he had little to no knowledge of the matters going on in Dave's life until after he passed away." Patrick Thompson, *Kleiman v Wright Day 4 Recap: What Ira Kleiman Knew About Dave Kleiman*, Coingeek, Nov. 5, 2021, https://coingeek.com/kleiman-v-wright-day-4-recap-what-ira-kleiman-knew-about-dave-kleiman/. And it quoted a portion of an exhibit specifically excluded by the Court, suggesting the exhibit was visible to the jury for long enough for a juror

---

[1] Plaintiffs attach the full Coingeek articles, which discuss the sibling relationship at even greater length, as Exhibit C through Exhibit F. The sibling relationship was also highlighted in videos released by Coingeek about the trial. Coingeek, *Kleiman vs Wright*, YouTube, https://www.youtube.com/playlist?list=PLTpDsXEwfAQqeKnLhhKMq4blGCqX_ecoY (last visited Jan. 4, 2022).

(like the reporter) to copy down the prejudicial portion. *Id.* ("'He [Ira] had limited contact and personal knowledge of David's financial affairs throughout Dave's life,' wrote Ira Kleiman's lawyer Joseph Karp in a letter to the Director of Treasury."). Another article explained that "the defense" had "emphasized" in cross-examining Ira "that Ira did not actually know much about critical issues or issues of importance in his brother's life." Patrick Thompson, *Ira Kleiman Shows Up on Day 3 of Kleiman v Wright Trial*, Coingeek, Nov. 4, 2021, https://coingeek.com/ira-kleiman-shows-up-on-day-3-of-kleiman-v-wright-trial/. Yet another article stated that "despite Dave's health declining steeply from then until his death in 2013, Ira never visited Dave in hospital. Nor did he ask or attempt to find out about what became of Dave's world-changing project of digital money, which Ira undoubtedly should have found at odds with Dave's predicament and apparent poverty. Ira Kleiman didn't seem to mind." Jordan Atkins, *Satoshi Nakamoto Trial, the Biggest Revelations From Week 1 of Kleiman v Wright*, Coingeek, Nov. 6, 2021, https://coingeek.com/satoshi-nakamoto-trial-the-biggest-revelations-from-week-1-of-kleiman-v-wright/.[2]

Following trial, Law360 secured an interview with one of the ten jurors who served on the case. That interview confirmed the obvious, confirmed what the Estate was concerned about all along, and confirmed the Court was correct in excluding these highly prejudicial comments from trial.

Defendant's violations of the Court's Motion in Limine Order impacted the consideration of the evidence and affected the verdict. *See* Carolina Bolado, *No Proof Bitcoin 'Inventor' Owed Friend, Juror Tells Law360*, Law360, Dec. 23, 2021, https://www.law360.com/articles/1451020/no-proof-bitcoin-inventor-owed-friend-juror-tells-law360 (attached as <u>Exhibit G</u>). The article explained that Ira's failure to visit Dave in the hospital affected their decision: "In three years he didn't go to the hospital?" the juror said. 'That clouded my view as far as what the actual record stated.'" *Id.*

### LEGAL STANDARDS

"The standard for determining whether a jury verdict should be set aside as a result of misconduct of counsel is whether the conduct was such as to impair gravely the calm and dispassionate consideration of the case by the jury." *BankAtlantic v. Blythe Eastman Paine*

---

[2] If one of these publications made its way to the jury, that would of course also be extremely prejudicial to Plaintiffs and would independently be the basis of a new trial.

*Webber*, 955 F.2d 1467 (11th Cir. 1992). Relevant factors in making the determination of whether a new trial is necessary include "the number of errors, the closeness of the factual disputes, the prejudicial effect of the evidence, the instructions given, and whether counsel intentionally elicited the evidence and focused on it during the trial." *Aetna Cas. & Sur. Co. v. Gosdin*, 803 F.2d 1153, 1160 (11th Cir. 1986) (vacating a judgment and remanding for a new trial based on two impermissible questions from counsel and five references to the unfairly prejudicial issue in the apparent absence of a pretrial ruling on the issue).

## ARGUMENT

A new trial is necessary on the Estate's claims because defense counsel repeatedly violated the Court's order, the issues in dispute were close, the violations were prejudicial, and counsel intentionally elicited the information and focused on it during the trial. A partial (rather than full) retrial is appropriate because defense counsel's comments and questions on the sibling relationship targeted the Estate, not W&K.

### I.    Counsel's Violations Prejudiced the Estate and Require a New Trial.

Counsel for Defendant's many violations strongly prejudiced the Estate and warrant a new trial for at least five reasons: (1) the references to the sibling relationship suggested an improper basis for decision; (2) counsel made several references to the sibling relationship; (3) early objections to impermissible sibling relationship lines of questioning were overruled; (4) the Estate could not correct misleading aspersions Defendant cast on the sibling relationship; and (5) there is direct information here suggesting the prejudicial effect of the improper comments on the jury's decision.

As predicted by Plaintiffs' Motion in Limine, the more than ten references to the relationship between David and Ira Kleiman by counsel for Defendant improperly suggested to the jury that the sibling relationship was a valid consideration in deciding the Estate's claims. "While [the Eleventh Circuit has] recognize[d] that a jury may render a verdict at odds with the evidence or the law, neither the court nor counsel should encourage jurors to violate their oath," as Defendant's counsel did here. *United States v. Trujillo*, 714 F.2d 102, 106 (11th Cir. 1983). "Verdicts based on unfettered and subjective notions of 'morality' and 'justice' 'are lawless, a denial of due process and constitute an exercise of erroneously seized power.'" *In re Engle Cases*, 3:09-CV-10000-J-32, 2009 WL 9119991, at *18 (M.D. Fla. Nov. 27, 2009) (quoting *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983)).

A new trial on the Estate's claims is appropriate. For example, in *Christopher v. Florida*, 449 F.3d 1360, 1365 (11th Cir. 2006), the Eleventh Circuit affirmed the district court's grant of a new trial when plaintiff's counsel "ignored the court's earlier grant of qualified immunity to defendants for all alleged acts other than an intentional blow to the head" by injecting argument which "was a clear invitation to the jury" to ignore the court's prior holding. *Id.* at 1366. In *McWhorter v. City of Birmingham*, 906 F.2d 674 (11th Cir. 1990), the Eleventh Circuit affirmed the district court's grant of a new trial when counsel impermissibly referred to other litigation that the court had excluded. *Id.* at 676. And in *Goodman v. Safeco Insurance Co. of Illinois*, No. 8:13-CV-2641-T-30EAJ, 2015 WL 898696 (M.D. Fla. Mar. 3, 2015), the court held that the defendant was "entitled to a new trial" based on a comment by the plaintiff's counsel that "encouraged the jury to decide the case not on the merits, but on the idea that the insurance company would be cheating an innocent and injured third party" because the reference "had no probative value, invited the jury to ignore the law, and was highly prejudicial." *Id.* at *4.

The at least ten violations here are more numerous than those in cases holding a new trial was appropriate. Several cases granting new trials involve just a single violation, to which the opposing counsel did not object. *See McWhorter*, 906 F.2d at 677 (single violation in closing argument to which the opposing party did not object); *Chistopher*, 449 F.3d at 1365 (same); *Goodman*, 2015 WL 898696, at *4 (same). Here, counsel made at least ten improper references to the sibling relationship, and Plaintiffs' counsel objected to many violations. Defendant's counsel raised the excluded issue by the fourth question in the cross-examination of Ira Kleiman (12 transcript lines into the cross-examination), making clear that Defendant had a premeditated plan to raise the issue. The timing, number, and manner of references shows that Defendant intentionally elicited the evidence about the relationship between David and Ira and meant to focus the jury's attention on the issue.[3]

---

[3] Subjective intent by a party to violate the Court's orders is not the relevant factor. *See Aetna*, 803 F.2d at 1160 (explaining "Aetna's counsel clearly intended to have this evidence come before the jury" without evidence of subjective intent to violate a court order); *see also Chistopher*, 449 F.3d at 1365–66 (no analysis of subjective intent to violate the court's orders); *McWhorter*, 906 F.2d at 677 (same); *Goodman*, 2015 WL 898696, at *4–5 (same). Instead, the relevant factor is whether counsel intentionally elicited the information, which Defendant's counsel repeatedly did here, as opposed to a third party or hostile witness gratuitously introducing the evidence in response to an unrelated question.

The prejudice to the Estate was amplified by the overruling of early objections to Defendant's counsel raising the issue of the sibling relationship. The court in *Castle v. Thompson*, No. 2:07-CV-0104-WCO, 2010 WL 11507513 (N.D. Ga. Mar. 22, 2010), *aff'd sub nom. Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194 (11th Cir. 2011), recognized that the "court's error in allowing the introduction evidence at trial that had previously been ruled inadmissible, along with plaintiff's counsel's abuse of evidentiary rulings, likely affected the jury's verdict, as well as its award of punitive damages." *Id.* at *6 (conditionally granting the new trial motion because the "error on the part of the court created prejudice against the defendants"). *Soltero v. Swire Dev. Sales, Inc.*, No. 08-20260-CIV, 2010 WL 11506701 (S.D. Fla. Apr. 19, 2010), *aff'd*, 485 F. App'x 377 (11th Cir. 2012), similarly awarded a new trial on punitive damages based on comments by counsel contrary to court rulings despite attempted curative statement and citing as one basis that an initial objection was erroneously overruled. *Id.* at *12.

"As many cases have noted, the Court cannot 'unring a bell;' once the jury hears improper testimony or argument, it is presumed that it may rely upon it in its deliberation." *Goodman v. Safeco Ins. Co. of Illinois*, No. 8:13-CV-2641-T-30EAJ, 2015 WL 898696, at *5 (M.D. Fla. Mar. 3, 2015). And "repeated exposure of a jury to prejudicial information" diminishes the effectiveness of even sustained objections. *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1309 (5th Cir. 1977) ("'[Y]ou can throw a skunk into the jury box and instruct the jurors not to smell it, but it doesn't do any good.'"); *see Singh v. Caribbean Airlines Ltd.*, 13-CV-20639, 2014 WL 4101544, at *1 (S.D. Fla. Jan. 28, 2014) ("In resolving evidentiary disputes before trial, motions in *limine* avoid the need to 'unring the bell' once inadmissible evidence has been presented to the jury.").

On top of the irremediable unfair prejudice from these violations, Plaintiffs—abiding by the Court's order—did not have the opportunity to correct the misrepresentations made to the jury about the brothers' relationship. Had the Court ruled that the brothers' relationship was probative and admissible, Plaintiffs could have presented evidence of the more than 100 phone calls between Ira and David just during David's final hospitalization. *See, e.g.*, P721. And Plaintiffs could have presented documentary and witness evidence and argued to the jury about how David's decisions to make Ira the sole beneficiary of his estate, his personal representative, and his healthcare proxy likewise reflect positively on the relationship between the brothers. *See* JE22 at 3 (will naming Ira Kleiman as personal representative of the estate and sole beneficiary); D99 at 787; D102 at 25, 173 ("According to Mr. Kleiman, his brother Ira is his health care surrogate."), 184 (same), 274

11

("Mr. Kleiman appointed his brother Ira Kleiman, as his health care surrogate."), 277. But the Court rightly excluded evidence on this issue altogether (except for the Thanksgiving dinner). Plaintiffs abided by this Order. Defendant indisputably did not. As a result, the Estate was prejudiced.

The factual issues on the Estate's claims were, without question, at least close. *See Aetna*, 803 F.2d at 1160 (identifying closeness of facts as a factor in whether a new trial is appropriate). As the Court recognized in denying Defendant's broad Motions for Judgment as a Matter of Law brought at the close of Plaintiffs' case and at the close of evidence, a reasonable jury could find for the Estate on its claims. *See* ECF No. [796]. For example, the evidence of a partnership in this case included numerous statements by Defendant, himself, about a partnership with David Kleiman to develop and mine bitcoin. *See, e.g.*, P097 at 1; P117; P167 at 2; P172 at 7; P200 at 1; P439 at 4; P459 at 1–2; P464 at 5. The jury deliberated across seven days (over a 13-day period), including for four days after declaring itself deadlocked and receiving an *Allen* charge (ECF No. [813]).

Unlike the typical case granting a new trial in which the effect of a violation of a court's order on the jury's deliberations is unclear, the Law360 article provides information that Defendant's violation of the Court's Order mattered, which further supports the request for a new trial. In *McWhorter*, the presence of less direct information than is present here about the prejudicial effect of the violation—in that case a jury message that it had not received the exhibit violating the court's orders—supported the granting of a new trial because it made it more likely that the violation had affected the outcome. *See McWhorter*, 906 F.2d at 677 (holding that the new trial was appropriate "particularly in light of the jury's message that it had not received Exhibit 24"); *see id.* ("the jury noticed that the *Post–Herald* complaint was not included in the exhibits"). Here, the impression by the juror interviewed by Law360 that "'[i]n three years [Ira] didn't go to the hospital'" to visit David "'clouded [the juror's] view as far as what the actual record stated.'" Bolado, *No Proof Bitcoin 'Inventor' Owed Friend, Juror Tells Law360*.[4] Law360 is an independent media outlet without a stake in the outcome of this litigation. Thus, the available information about the prejudice from these violations by Defendant is more direct than in cases

_____

[4] Counsel for Plaintiffs has heeded the Court's instruction to not contact any of the jurors. As far as Plaintiffs are aware, the Law360 article provides the only direct information about the effect of Defendant's violations of the Court's Motion in Limine Order on the verdict.

granting a new trial (*see, e.g.*, *Christopher*, 449 F.3d at 1367 (no apparent evidence about influence on the jury); *McWhorter*, 906 F.2d at 677 (only circumstantial available information that the excluded issue influenced the jury)), and more trustworthy than in a case in which counsel for a party has secured an interview with a juror.

The media coverage during the trial described above shows that the introduction of David and Ira's relationship by Defendant was potent. As the Yahoo! article explained, the relationship came across as a focus of Defendant's cross-examination of Ira, the witness who Defendant examined for by far the longest time and a central witness by all accounts. And the issue's particular coverage across articles and videos suggests the unfairly prejudicial line of inquiry was significantly highlighted at trial and improperly beneficial to Defendant.

## II. The Violations Here Are Particularly Problematic and More Likely to Be Intentional Given the Court's Pretrial Exclusion Order.

That the prejudicial comments and questions here were violations by counsel of pretrial evidentiary rulings further supports granting a new trial because the misconduct undermines the court's authority and is more likely to be intentional and avoidable. Both *Christopher* and *McWhorter* recognized the fact that the prejudicial comments violated a previous court order as independently supporting a new trial. *See Christopher*, 449 F.3d at 1367 (A "district court's grant of a new trial serve[s] to protect the rights of Defendants and to *vindicate the authority of the court*." (emphasis in original)); *McWhorter*, 906 F.2d at 677 ("Trial counsel's closing argument was in direct violation of the district court's ruling and was thus highly improper."). Other circuits have expressed the same view that violations of previous court orders particularly support a request for a new trial. *See Adams Laboratories, Inc. v. Jacobs Eng'g Co.*, 761 F.2d 1218, 1226 (7th Cir. 1985) (counsel's reference to excluded evidence in direct contravention of the district court's order constituted prejudicial error); *Brown v. Royalty*, 535 F.2d 1024, 1028 (8th Cir. 1976) (repeated, deliberate reference to evidence excluded by district court is clear misconduct and grounds for new trial). Here, counsel's at least ten violations of the Court's pretrial exclusion of sibling relationship evidence other than Thanksgiving 2009 reflect far more violations than in either *Christopher* or *McWhorter*, both affirming the granting of a new trial.[5]

---

[5] In affirming a district court's decision to deny a new trial motion, *Sorenson v. Raymond*, 532 F.2d 496 (5th Cir. 1976), made clear the gravity of even a single violation of a court's prior

13

**CONCLUSION**

For the foregoing reasons, the Court should grant a new trial on the Estate's claims.

Dated:  January 4, 2022

Respectfully submitted,

By: */s/ Devin "Vel" Freedman*
Andrew S. Brenner
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd Street, Suite 2800
Miami, Florida 33131
abrenner@bsfllp.com

Maxwell V. Pritt
Alexander J. Holtzman
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, Floor 41
San Francisco, CA 94104
mpritt@bsfllp.com
aholtzman@bsfllp.com

Velvel (Devin) Freedman
**ROCHE FREEDMAN LLP**
1 SE 3rd Ave
Suite 1240 Miami, Florida 33131
vel@rochefreedman.com

Kyle W. Roche
**ROCHE FREEDMAN LLP**
99 Park Avenue, 19th Floor
New York, New York 10016
kyle@rochefreedman.com

*Counsel to Plaintiff Ira Kleiman as
Personal Representative of the Estate of
David Kleiman*

---

order. After counsel asked a question of a witness in violation of a previous order against introducing evidence of possible drug use by a party, "the trial judge immediately instructed the jury to disregard the question, making no further explanation to the jury only because appellants' counsel asked him not to." *Id.* at 500. Because "the question elicited no damaging information," the court could not say that "the prejudicial question made the proceeding so manifestly unfair that the trial judge abused his discretion in refusing to grant a new trial." *Id.* The repeated violations here did elicit damaging information and did prejudice the outcome.

14

## S.D. FLA. L.R. 7.1 CERTIFICATION

In accordance with S.D. Fla. L.R. 7.1(a)(3), counsel for Ira Kleiman as the personal representative of the Estate of David Kleiman conferred with Defendant's counsel who opposes the relief sought herein.

/s/ Andrew Brenner
Andrew S. Brenner, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 4, 2022 a true and correct copy of the foregoing was filed with CM/ECF, which caused a copy to be served on all counsel of record.

/s/ Devin "Vel" Freedman
Devin "Vel" Freedman, Esq.