**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC

      plaintiffs,

v.                                     **Case No. 9:18-cv-80176 (BB/BR)**

CRAIG WRIGHT,

      defendant.

_____/

**DR. CRAIG S. WRIGHT'S OPPOSITION**
**TO THE ESTATE OF DAVID KLEIMAN'S MOTION FOR NEW TRIAL**

## I.      INTRODUCTION

After a complex, three-week trial, one of the plaintiffs, the Estate of David Kleiman (the "Estate") demands a new trial because of ten questions that allegedly "explored the relationship" between Ira and David Kleiman in "violation" of the Court's interlocutory order on a Motion *in Limine*. D.E. 623 (the "Order"). Plaintiff failed to object to five of these ten questions, failed to object when they were answered, never moved to strike or for a curative instruction, and thereby waived altogether any assignment of error. Plaintiff did object to five of the ten questions. Two of its objections were overruled, and, as it did with the five questions where it sat on its hands, plaintiff never moved to strike the answers or for a curative instruction. That leaves three questions to which plaintiff objected and its objections were sustained. Those questions were not answered, and no evidence came in at all, because questions are not evidence. Thus, we begin with the mundane, but incontrovertible, observation that plaintiff has no basis for assigning any "error" to the three questions that were not answered.

As for the seven questions that were answered, plaintiff waived any assignment of error as to the five where it sat on its hands and failed to object, or to move to strike the answers, or for a curative instruction.  *Collins v. Wayne Corp.*, 621 F.2d 777, 785–86 (5th Cir. 1980) ("To hold otherwise "would permit counsel to sit silently when an error is committed at trial with the hope that they will get a new trial because of that error if they lose."). That leaves two questions as to which plaintiff objected and its objections were overruled. Allowing answers to those two questions was within the Court's discretion. Just as the Court had discretion to determine a category of exclusion on a motion *in limine*, it necessarily possessed *a priori* discretion to make a court's traditional and time-honored, *ad hoc* determination of "the relevance and admissibility of any given piece of evidence" when offered at trial. *ML Healthcare Servs., LLC v. Publix Super Mkts., Inc.*, 881 F.3d 1293, 1297 (11th Cir. 2018) (quoting *U.S. v. Clay*, 832 F.3d 1259, 1314 (11th Cir. 2016)). After all, motions *in limine* are a mere procedural convenience, aimed at streamlining trials and promoting efficiency. *Ins. House, Inc. v. Ins. Data Processing, Inc.*, 2009 WL 10670469, at *2 (N.D. Ga. 2009), *aff'd*, 367 F. App'x 1 (11th Cir. 2010) (citing *Carofino v. Forester*, 450 F. Supp. 2d 257, 270 (S.D.N.Y. 2006) ("The purpose of a motion in limine is to streamline the trial process by making advance rulings on evidentiary issues definitely set for trial to avoid interrupting the trial with lengthy argument."). They are, by definition, interlocutory and subject to modification throughout trial. *Id.* ("A district court may adjust its

ruling on a motion in limine during the course of the trial." (citing *Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 565 (7th Cir. 2006))).

Thus, even if it reasonably could be argued (it can't) that the Court's decision to admit seven answers "violated" its own interlocutory, modifiable Order on the Motion *in Limine*, plaintiff had two options when answers were given. Its first option was to object to what it now hypothesizes was a "*de facto* modification *sub silentio*" of the interlocutory Order as an abuse of discretion. Plaintiff did not object. Even if it had objected, this argument would have been frivolous, because the relationship between the brothers was directly relevant and "excluded" only pursuant to Fed. R. Evid. 403. The Court had discretion to decide on the spot that the probative value of the answers to those limited questions outweighed any potential prejudice.

Plaintiff's second option was the lawyer's traditional and time-honored, *ad hoc* objection to admission of evidence when offered, either before or after the questions were answered. Plaintiff didn't object on this basis, either, as to five of the questions (and seven of the answers). As noted above, the Court had discretion to decide on the spot that the probative value of the particular answers to these particular limited questions outweighed any potential prejudice.

The Court had discretion to allow these seven answers into evidence. Moreover, plaintiff's failure at trial to object, move to strike the answers or for a curative instruction, or object to their belatedly hypothesized "modification" of the Court's interlocutory Order on the Motion *in Limine*, waived its claim to any assignment of error, let alone a new trial.

Further, plaintiff's motion for new trial [D.E. 861] (the "Motion") cannot be granted because it wholly fails to demonstrate that (1) the district court committed error, which (2) affected the plaintiff's substantial rights or caused substantial prejudice, such that (3) the error was not merely harmless. *E,g.*, *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004). Because no abuse of discretion has been (or could have been) shown to have been committed by the Court, plaintiff's Motion fails at the very first step, and there is no basis to hypothesize about prejudice or harm. Nonetheless, its Motion is loaded with unsupported assertions of supposed harm from the challenged questions. As a matter of law and logic, those assertions cannot even properly be considered, because ***there was no error by the Court***.

However, to protect the record and avoid waiver – like remembering to object at trial to the admission of evidence – we will address plaintiff's hypothetical assertions of prejudice and harm after disposing of its ill-founded "error" theories.

## II.    ARGUMENT

### A.    There was No Violation of the Order on the Motion *in Limine*

The Court entered an Order on plaintiffs' Motion *in Limine* to exclude evidence of the "sibling relationship" between Ira and David Kleiman, except for testimony about a supposed conversation the two had at Thanksgiving in 2009. Order at 16. The Order says it did so to address plaintiffs' concern that the "jury will make a decision in this case premised on how good of a brother Ira [Kleiman] was or whether [he] deserves Dave [Kleiman's] fortune – instead of basing their decision on the facts and merits of the case." Order at 15. The Estate now argues that ten questions asked by Dr. Wright's counsel "violated" the interlocutory Order on the Motion *in Limine*. As noted above, these questions fall into three categories: five questions to which plaintiff failed to object, three questions as to which the Court sustained objections, and two questions as to which the Court overruled plaintiff's objections.

### 1.    *The Estate Waived Its Objections by Failing to Object at Trial*

As grounds for a new trial, plaintiff cites five questions as to which *it sat on its hands, never objected, never moved to strike the answers, and never asked for a curative instruction*:

> Q. Right. The last time you spoke to David Kleiman in life was
> in 2009, right?
> A. Correct -- well, no, no. Actually, I shouldn't say that.
> Q. I said that the wrong way.
> A. That's the last time I recall seeing him.
> Q. Are you finished, Mr. Kleiman?
> A. Yes.

Motion at 4 (citing Trial Tr. Day 4 at 23:12–19).

> Q. You never saw him in the hospital?
> A. No.

Motion at 4 (citing Trial Tr. Day 4 at 84:1–2).

> Q. All right. To be clear, just to make this crystal clear, you didn't learn of Dave's
> death until a few days after his body was found?
> A. Yes.
> Q. And he -- you don't know the exact date, but he had died some
> days before?
> A.  I believe so.

Motion at 4-5 (citing Trial Tr. Day 4 at 135:22–136:3).

> Q. Mr. Kleiman --
> MR. RIVERO: Mr. Shah, if you could highlight the first two
> sentences of Paragraph 3.

> BY MR. RIVERO:
> Q. "Ira is David's brother. He had limited contact and personal
> knowledge as to David's financial affairs throughout David's life."
> Correct?
> A. Correct.
> MR. BRENNER: Your Honor, I have to ask to approach.
> THE COURT: I'm sorry?
> MR. BRENNER: I have to ask to approach, Your Honor, and ask
> that it be taken down during the sidebar.
> THE COURT: All right. If we can take it down for a moment.[1]

Motion at 5 (citing Trial Tr. Day 4 at 173:12–25).

> Q. So you knew David Kleiman for about 20 years.
> A. Yeah. I believe it was about 20 years.
> Q. During that time, how many times did you hear of Ira
> Kleiman?
> A. I can't really recall of any offhand, other than he had a
> brother.

Motion at 6 (citing Trial Tr. Day 2 at 184:19–24).

The Federal Rules of Evidence make it crystal clear that a party must object *during trial*[2]

to preserve a claim of error for appeal:

> (a) Preserving a Claim of Error: A **party may claim error in a ruling** to
> admit or exclude evidence **only if** the error affects a substantial right of the
> party and:
> (1) if the ruling admits evidence, **a party, on the record:**
> (A) **timely objects or moves to strike; and**
> (B) states the specific ground, unless it was apparent from the
> context.

Fed. R. Evid. 103(a)(1) (emphasis added). The record excerpts above show that plaintiff *did not*

*object during trial to these questions*, did not move to strike the answers, and did not ask for a

curative instruction, which definitively waived any claimed error in admitting the evidence.

---

[1] Dr. Wright notes that D008 (the exhibit taken down that was being shown to the jury) had been on Dr. Wright's exhibit list from day one, but the Estate never objected to it on the theory that it purportedly violated the Order on the Motion *in Limine*. *See* D.E. 641-1, 669-1, 725-1, 731-1, 737-1, and 756-1. This stands in contrast to other exhibits, such as D252 and D255 where plaintiffs did object with a "MIL." *Id.*

[2] This should come as no surprise to the Estate. The same Order that the Estate claims Dr. Wright violated states: "[i]n light of the preliminary or preemptive nature of motions in limine, 'any party may seek reconsideration at trial in light of the evidence actually presented and **shall make contemporaneous objections when evidence is elicited."** D.E. 623 at 3 (emphasis added) (citing *Holder v. Anderson*, 2018 WL 4956757, at *1 (M.D. Fla. 2018)).

The "object or waive" rule remains applicable where solicited testimony violates a motion *in limine*.[3] *E.g.*, *Collins v. Wayne Corp.*, 621 F.2d 777, 785–86 (5th Cir. 1980)[4] (An "objection is required to preserve error when an opponent, or the court itself, violates a motion *in limine* that was granted.");[5] *U.S. v. Roenigk*, 810 F.2d 809, 815 (8th Cir. 1987) ("[A] motion *in limine* does not preserve error for review. A party whose motion *in limine* has been overruled must object when the error the party sought to prevent is about to occur at trial."); *Wilson v. Vermont Castings, Inc.*, 170 F.3d 391, 395 n.7 (3d Cir. 1999) ("Because [the plaintiff] prevailed on the motion *in limine* to limit [the defendant's] arguments, her counsel had an obligation to renew his objection once he thought [the defendant] had violated this ruling."). To hold otherwise "would permit counsel to sit silently when an error is committed at trial with the hope that they will get a new trial because of that error if they lose." *Collins*, 621 F.2d at 785–86.[6]

Undeterred, the Estate spills much ink discussing the purported evidence it claims it would have introduced at trial to show that David and Ira Kleiman had a close relationship.

---

[3] These questions did not "explore" the relationship between the brothers, but served to establish Ira's lack of personal knowledge as to David's finances and relevant time periods, including when David Kleiman died and the Estate was formed. Additionally, as will be shown below, establishing the last time the brothers spoke was critical to demonstrating the implausibility of plaintiff's Thanksgiving 2009 story. Further, Dr. Wright had a duty to preserve on the record his objections to the Order on the Motion *in Limine*, just as the Estate had a duty to object to questions they found objectionable at trial. *U.S. v. Estes*, 994 F.2d 147, 149 (5th Cir. 1993) (affirming "the district court's ruling on the motion in limine" because the defendant didn't "attempt[] to offer evidence of the conviction at trial to preserve this issue for appeal"); *Collins*, 621 F.2d at 781 ("Error may not be predicated upon a ruling which . . . excludes evidence unless . . . the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." (citing Fed. R. Evid. 103(a)(2))).

[4] *Collins* is binding precedent because former Fifth Circuit decisions rendered prior to October 1, 1981, are binding on courts of the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

[5] Unsurprisingly, recent decisions of courts in this District and Circuit cite this bedrock principle. *E.g.*, *City of S. Miami v. Desantis*, 2020 WL 7074644, at *5 (S.D. Fla. 2020) (Bloom, J.) ("Generally, a party must object to preserve error in the admission of testimony, even when a party or a court violates an *in limine* ruling."); *Vigneulle v. Tahsin Indus. Corp., USA*, 2019 WL 4409220, at *1 n.1 (N.D. Ala. 2019) (same).

[6] The Estate is familiar with such tactics. At the conclusion of discovery, plaintiffs asked the Court to impose sanctions, arguing that not all documents were produced. The Court denied this request, stating that "[p]laintiffs don't get to sit on their hands for months, wait for discovery to conclude, and then ask the Court to [sanction] [D]efendant because they believe [D]efendant failed to produce all the evidence to which they were entitled." D.E. 595 at 39 (brackets in original).

Motion at 6-7. So what? Nothing stopped it from proffering that evidence. The time for plaintiff to have made any such arguments was at trial, after timely objections on the record—not a month after the trial ended. *E.g.*, *Collins*, 621 F.2d at 785 ("Had plaintiffs' counsel promptly objected to the violations of the motion *in limine* in this case, the trial court could have either avoided the violations or given an instruction to cure any harm suffered by the plaintiffs."). Moreover, the Estate *actually did introduce much of that "evidence" at trial*,[7] and some of it could not have been introduced at trial because it violated the Court's discovery deadlines.[8]

One need not look hard to find cases where courts in the Eleventh Circuit have denied motions for new trial in circumstances such as those the Estate claims existed here.[9] In *Frederick v. Kirby Tankships, Inc.*, the court excluded certain video testimony in ruling on a motion *in limine*, yet the plaintiff "played [] videotaped testimony without excising the testimony on the spilled oil, and thus, the jury heard the inadmissible evidence." 205 F.3d 1277, 1285 (11th Cir. 2000). The Eleventh Circuit affirmed denial of a new trial motion, because the defendant "did not make a timely objection" by "not object[ing] until after the videotape testimony was played." *Id.*

Similarly, in *ML Healthcare Servs.*, the defendant solicited testimony "inconsistent with the contours of the district judge's limited ruling" on a motion *in limine* to limit evidence regarding collateral sources. 881 F.3d at 1304–05. The Eleventh Circuit held that this did not "constitute reversible error," because "Plaintiff did not object when the statements were made at

---

[7] The Estate claims it would have introduced evidence that "Ira Kleiman was very often in touch with David Kleiman while the latter was in the hospital," but Ira Kleiman *did testify to that* at trial. Motion at 6; *cf.* Trial Tr. Day 3 at 150:5-25 (Although Thanksgiving 2009 was his "best memory of last seeing [David]," he "may have seen him other times after that."); Trial Tr. Day 4 at 23:13-17 (testifying that Thanksgiving 2009 was not the last time he spoke to David). Plaintiff also argues that it would have highlighted "David's decision to make Ira the sole beneficiary of his estate [and] his personal representative," but Ira Kleiman testified to those facts on direct examination. Motion at 11; *cf.* Trial Tr. Day 3 at 35:5-23.

[8] The Estate claims it would have introduced call logs (P721) showing that Ira and David Kleiman spoke many times when David was in the hospital. This assertion is false. Plaintiffs could not have introduced any such call logs because they never produced them in discovery. *See* email from Z. Marco to J. Delich attached as **Exhibit A** (confirming that P721 was first produced on August 11, 2021); D.E. 382 ("[A]ll discovery, including fact and expert discovery, shall be completed" by May 1, 2020.).

[9] This next argument assumes *arguendo* that the Order on the Motion *in Limine* was "violated," which Dr. Wright does not concede. As demonstrated above, the questions at issue were not asked for an improper purpose.

trial, as required to preserve the issue for appeal under Federal Rule of Evidence 103." *Id.* at 1305 (citing *U.S. v. Wilson*, 788 F.3d 1298, 1313 (11th Cir. 2015)). Finally, in *Younger v. Experian Info. Sols., Inc.*, the district court granted a motion *in limine* excluding evidence of "other lawsuits, verdicts, investigations, complaints or similar actions . . . ." 2019 WL 1296256, at \*4 (N.D. Ala. 2019), *aff'd in part, vacated in part and remanded*, 817 F. App'x 862 (11th Cir. 2020). At trial, plaintiffs introduced an "Assurance of Voluntary Compliance" that the defendant had entered into with 31 states' attorneys general. *Id.* at \*3. The court denied defendant's new trial motion because defendant "did not cite the order *in limine* as grounds for objection until after the close of evidence, at a sidebar during Plaintiff's closing argument." *Id.* at \*5. If a sidebar during closing argument is too late, the Estate's motion 28 days after trial surely is, too.

### 2.    *Questions are Not Evidence*

Having disposed of the five questions that plaintiff never objected to, we now turn to three questions as to which the Court *sustained* plaintiff's objections, as to which no answers were given and no evidence adduced:

> Q. Let me restate the question. The last time you saw your
> brother in person was in 2009?
> MR. BRENNER: Your Honor, just renew the objection from
> yesterday on this issue.
> THE COURT: I'm sorry. The objection is?
> MR. BRENNER: It violates an order of the Court.
> **THE COURT: Sustained.**

Motion at 4 (emphasis added) (citing Trial Tr. Day 4 at 23:20–24:1).

> Q. Mr. Kleiman, before I come back to these email exchanges
> between your brother and Craig Wright, I just want to talk with you about
> one other subject and that is your telephone communications with David
> Kleiman. Would you agree with me that between March 12 and April
> 7th, 2013, on the cell phone at least, you spoke with David Kleiman six times?
> A. What time again?
> Q. This is between -- this is in the last year, the last 13 months of your brother's
> life.
> MR. BRENNER: Objection, Your Honor. Subject to court order.
> **THE COURT: The objection is sustained.**
> MR. RIVERO: I'll move on.

Motion at 5-6 (emphasis added) (citing Trial Tr. Day 5 at 68:7–21).

> MR. RIVERO: Judge, it's the absence of voice mails and that is
> highly relevant.
> MR. BRENNER: Yeah, Judge. And also, understand, subject to the

> Court's order, too.
> **THE COURT: Yeah. That's where -- the objection is sustained.**

Motion at 6 (emphasis added) (citing Trial Tr. Day 5 at 70:16–21).

These three (unanswered) questions cannot be grounds for a new trial because *questions are not evidence*.[10] As the Court instructed the jury on the first day of trial:

> [**T]he lawyers' questions and objections are not evidence**. Only the witnesses' answers are evidence. Do not decide that something is true just because a lawyer's questions suggests it is. For example, a lawyer may ask a witness: "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did, unless the witness agrees with it.

Trial Tr. Day 1 at 174:18–24 (emphasis added).

Further, because the Court ***sustained*** objections to these three questions, there could be no "error" here, because *no evidence was admitted*. This is expressly stated in the advisory committee's note to Fed. R. Evid. 103's 2000 amendment:

> Even where the court's ruling [on a motion in limine] is definitive, nothing in the amendment prohibits the court from revisiting its decision when the evidence is to be offered. If the court changes its initial ruling, or if the opposing party violates the terms of the initial ruling, objection must be made when the evidence is offered to preserve the claim of error for appeal. **The error, if any, in such a situation occurs only when the evidence is offered and admitted**.

Fed. R. Evid. 103 advisory committee note to 2000 amendment (emphasis added) (citing *United States Aviation Underwriters, Inc. v. Olympia Wings, Inc.*, 896 F.2d 949, 956 (5th Cir. 1990); *Roenigk*, 810 F.2d at 809). *Accord ML Healthcare Servs.*, 881 F.3d at 1305 ("The error, if any, in such a situation occurs only when the evidence is offered and admitted."); *Scott v. Dunnam*, 2016 WL 1452413 (S.D. Ga. 2016) (new trial not warranted where counsel violated prior order by asking "plaintiff whether he loves his children, including and especially one of his daughters," because the "Court interrupted defense counsel's line of questioning before any improper evidence or comment could be presented to the jury.").

Further, the Court also instructed the jury that "when I sustain an objection to a question, **you must ignore the question** and not guess what the answer might have been." Trial Tr. Day 1

---

[10] Further, those questions didn't even implicate the Order on the Motion *in Limine*. Their purpose was not to show that the brothers were estranged, but to show that David Kleiman was not working on Bitcoin and the Thanksgiving 2009 story was untrue, because the brothers never again spoke about Bitcoin and there were no references to it in David Kleiman's voicemails.

at 175:9–11 (emphasis added). And "[w]e always presume that a jury follows its instructions." *U.S. v. Colston*, 4 F.4th 1179, 1192 (11th Cir. 2021); *U.S. v. Brown*, 983 F.2d 201, 203 (11th Cir. 1993) ("[J]uries can be trusted to follow the trial court's instructions."). As such, to the extent an attorney's questioning could constitute "error" (it can't), any such error was cured by the Court's instruction that the jury should disregard questions when an objection is sustained. *U.S. v. Gallardo*, 977 F.3d 1126, 1138 (11th Cir. 2020) ("When the district court gives a curative instruction, we presume that the jury followed it.").

**3.**      ***The Court Had the Power and Discretion to Overrule Plaintiff's Objections***

Lastly, plaintiff argues that the Court "violated" its Order on the Motion *in Limine* when it overruled plaintiff's objections to two questions Dr. Wright's counsel asked at trial, as follows:

> Q. All right. You spoke very little -- if I remember correctly, the
> only thing you commented on in the period between 2008 and April of 2013
> is Thanksgiving Day 2009; isn't that right?
> A. Yes.
> Q. Okay. And that was a -- that was November 26th, 2009, right?
> A. Correct.
> Q. Okay. And you know that date because that's the last day you
> saw your brother in life, correct?
> MR. BRENNER: Objection. May we approach?
> MR. RIVERO: Judge, I'll --
> **THE COURT: The objection is overruled at this point.**
> BY MR. RIVERO:
> Q. Sir?
> A. I'm not exactly certain if that's the very last day. But that's the --
> I guess the best memory of last seeing him. I may have seen him other times
> after that, but I just don't recall it.
> Q. Sir, your testimony under oath and your best memory is that that was the last
> day you saw your brother in life, is it not?
> MR. BRENNER: Same objection, Your Honor.
> THE WITNESS: Like I said, I'm not certain that that was –
> **THE COURT: The objection is noted. It's overruled at this point.**
> THE WITNESS: I could have possibly seen him other days.

Motion at 3-4 (emphasis added) (citing Trial Tr. Day 3 at 149:22–150:24).

Even if those questions had been inconsistent with the interlocutory Order on the Motion *in Limine* (they were not, as we demonstrate below), that Order was interlocutory and subject to revision and reversal at any time throughout trial. *E.g.*, *Lopez v. Allstate Fire & Cas. Ins. Co.*, 2015 WL 11216748 (S.D. Fla. 2015). The Court, which had discretion to decide a category of

exclusion on the Motion *in Limine*, necessarily had discretion to decide "the relevance and admissibility of any given piece of evidence" when offered at trial. *ML Healthcare Servs.,* 881 F.3d at 1297. The Order was interlocutory and subject to modification throughout trial, particularly as to individual pieces of evidence. *Lopez*, 2015 WL 11216748, at *1; *Stewart v. Hooters of Am., Inc.*, 2007 WL 1752873, at *1 (M.D. Fla. 2007) ("A Motion *In Limine* presents a pretrial issue of admissibility of evidence that is likely to arise at trial, and as such, the order, like any other interlocutory order, remains subject to reconsideration by the court throughout the trial.").

Thus, the Court plainly had discretion to overrule plaintiff's two objections in light of the evidence that had been introduced, and decide that those two questions did not upset the balancing test of Rule 403, even if that might have amounted to a "modification" of the Order (it did not). *E.g.*, *Ins. House,* WL 10670469, at *2 ("A district court may adjust its ruling on a motion *in limine* during the course of the trial."). In fact, plaintiff already had "violated" the Order by introducing self-serving evidence of the brothers' relationship when it had Ira Kleiman testify on direct that David Kleiman had appointed him as his personal representative and left the proceeds of the estate to him. *See, e.g.*, Trial Tr. Day 3 at 35:5-23.

Further, the purpose of these two questions was not to elicit testimony that would have violated the Order. On direct, Ira Kleiman had testified that at a 2009 Thanksgiving dinner, his brother purportedly said he was working on a digital currency with a wealthy foreigner, and drew a "logo" of a B with one line through it. This logo did not exist as of Thanksgiving 2009, and it was essential to Dr. Wright's defense to call that testimony into doubt, because *this was only time that David Kleiman allegedly told anybody that he was working on Bitcoin*. Thus, by having Ira Kleiman confirm that Thanksgiving 2009 was the last time he saw his brother, Dr. Wright sought to prevent him from modifying his testimony and claiming that his brother drew the purported Bitcoin logo at a later date. Accordingly, the questions objected to were asked for a proper purpose, not to improperly influence the jury, and did not "violate" the Order.

Moreover, the testimony that was elicited actually *demonstrated the existence of a relationship (and not estrangement) between the brothers*. In response to both questions, Ira Kleiman testified that he might have seen his brother at other times and days, after the 2009 Thanksgiving dinner. Trial Tr. Day 3 at 150:12-15, 23-24. Accordingly, the evidence that actually was admitted favored the Estate and did not run afoul of the Order, *which was aimed at*

*excluding testimony showing that the brothers were estranged.* Order at 13-16. Finally, plaintiff failed to move to strike the answers to these two questions, or to move for a curative instruction, evidently waiting for an adverse verdict to decide to argue that they were somehow unduly prejudicial.

      **B.**      **Even if Plaintiff Could Have Demonstrated Any Error in Admitting the Answers to Two Questions to Which It Objected at Trial, or the Answers to Five Questions to Which It Did Not Object, or as to Three Questions Where its Objections Were Sustained, Such Error Would Have Been Harmless, and a New Trial Never Could be Ordered**

Plaintiff demands a new trial based on purported prejudice resulting from ten questions at trial. It waived claiming error as to five of them by failing to object at trial. Its objections to three other questions were sustained, so they weren't answered, and questions are not evidence. That leaves two questions as to which plaintiff's objections at trial were overruled, which were then answered, after which plaintiff neither moved to strike nor asked for a curative instruction. Even assuming *arguendo* that the Court (impossibly) abused its discretion by admitting answers to two questions over plaintiff's objections and five others where plaintiff sat on its hands, or by **sustaining** plaintiff's objections to three questions that **were not** answered, such error could not have been more than harmless.

However, to protect the record and avoid waiver, much like making a timely objection at trial to the admission of evidence, we next demonstrate the lack of merit to the Estate's unsupported fable of purported prejudice from the ten questions.[11] Plaintiff's new trial motion may not be granted unless it demonstrates that (1) the district court committed error that (2) affected plaintiff's substantial rights or caused substantial prejudice, so that (3) the error was not merely harmless. *Vanguard Research, Inc.*, 378 F.3d at 1162; *Scott*, 2016 WL 1452413 at *4. We demonstrated above that no error occurred, but even assuming *arguendo* that plaintiff's

---

[11] We again note that there can be no error in the Court's *sustaining plaintiff's objections* to three of the ten challenged questions, because questions are not evidence. If plaintiff had been concerned about "prejudice" from questions, it could have moved to strike them. It wasn't and didn't. It also could have moved to strike the answers to the seven questions that were answered, but didn't do that either. It also failed to ask for a curative instruction. Plaintiff's conduct at trial demonstrates that no substantial prejudice could have resulted from the questions or the answers, because plaintiff was oblivious to such alleged consequences until *weeks after* the verdict was rendered.

motion had identified any "error" regarding its ten challenged questions, such error would have been harmless.

Plaintiff's motion did not identify any substantial right[12] that could have been prejudiced by the ten questions or answers to seven of them, did not demonstrate that they were a point of emphasis at trial, let alone that they affected its outcome. No substantial prejudice could have occurred, even assuming *arguendo* that there was error (there wasn't) as to the ten questions.

> **1.** **_Even Assuming Arguendo That It Could Have Been Error to Admit Answers to Seven Of The Ten Challenged Questions, The Evidence Was Cumulative and Any Error Would Have Been Harmless_**

Even assuming *arguendo* that it could have been an abuse of discretion to admit answers to seven of the ten questions (it plainly wasn't), the improper admission of cumulative evidence is harmless. *E.g.*, *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 307 (5th Cir. 1978). Here, there was extensive other evidence in the record (some proffered by plaintiff) of a limited relationship between the brothers. *E.g.*, *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1179 (11th Cir. 2002) (Any error in admitting evidence of the parties' wealth was harmless "because there was a considerable amount of admissible evidence at trial allowing the jury to determine that both ISL and Levy were wealthy parties."); *Lockley v. Deere & Co.*, 933 F.2d 1378, 1389 (8th Cir. 1991) (Counsel's statement about defendant's sales did not support a new trial where "Deere is a well-known national company, [and] the jury was probably already aware of the wealth disparity between the parties."); *Mahaska Bottling Co., v. PepsiCo,* 2020 WL 10506243, at *9 (S.D. Iowa 2020), *aff'd sub nom*, *Mahaska Bottling Co., v. Bottling Grp., LLC*, 6 F.4th 828 (8th Cir. 2021)

---

[12] The failure to exclude evidence under Rule 403 does not implicate substantial rights. In *Bronzino v. Dunn*, the defense improperly suggested "character evidence" and "propensity reasoning" in its opening statement, by arguing that:

> [Plaintiff is] not a good man. He has a criminal record. He has no real source of income. Tenth grade dropout. He said that he worked for somebody. He says he worked for somebody, but didn't file income tax for seven years. . . . You have to look at the credibility of [the plaintiff]. He doesn't reveal the truth to his doctors. He's a harden[ed] criminal. Let's face it. He's an armed robber[ ]. He's a drug dealer. The facts show—the evidence will show that he has not learned his lesson. He's still dealing drugs.

558 F. App'x 613, 617–18 (6th Cir. 2014). On appeal, the Sixth Circuit held that this improper diatribe did not violate the plaintiff's substantive rights. *Id.* This is a strict standard that the Estate could not satisfy, even if there actually had been any error regarding the ten questions.

("[C]ounsel's references to PepsiCo's size did not cause prejudice to PepsiCo. PepsiCo's prominence in the food and beverage industry is public knowledge, and the jury could easily infer from other evidence at trial that PepsiCo was a large, multinational firm.").

Despite testifying for an entire day on direct examination, Ira Kleiman never said anything about seeing his brother during David's lifetime—except for the 2009 Thanksgiving dinner. He also did not testify to visiting his brother in the hospital. This lack of testimony demonstrated that they were not close. Further, Ira also volunteered testimony that they never discussed David's lengthy hospitalizations and health issues, as one would reasonably expect brothers to do:

> Q. Your brother knew that he was not in good health?
> A. He didn't really have those kind of discussions with me.
> I'm not exactly sure – you know, he didn't mention s
> pecifically like what kind of health condition he was in.
> Q. Your brother was hospitalized almost every day of the last two
> years of his life in the VA hospital here in Miami, was he not?
> A. Yes. But I'm just saying he didn't really discuss that
> kind of stuff with me.

Trial Tr. Day 3 at 176:18–177:1.

In stark contrast, David Kleiman's best friend, Kimon Andreou, testified that he visited David daily in the hospital and spoke to him every day. He also testified at length about their text messages, which discussed David's personal life, including his health issues. Trial Tr. Day 12 at 99:3–16; 110:6-19. The marked contrast in testimony was obvious and compelled the reasonable conclusion that the brothers had a limited relationship.[13] As such, even if there had been any error in admitting the seven answers to the ten questions (there wasn't), that evidence was cumulative, and any error would have been harmless.

### 2. The Verdict As To W&K's Claims Demonstrates That the Jury Did Not Use the Challenged Evidence For an Improper Purpose

Because the jury awarded no bitcoin-related damages to either of the plaintiffs, its verdict conclusively demonstrates that the allegedly "improper" admission of cumulative evidence

---

[13] This is not a case where an order on a motion *in limine* excluded a criminal conviction that would not otherwise be obvious to the jury. The natural import of excluding evidence of the Kleiman brothers' relationship was to influence the jury to conclude that they had no relationship. Further, if plaintiff actually has boxes of admissible evidence showing that the brothers indeed had a close relationship (as they argue in their Motion), it might have been a good idea to introduce that evidence, rather than moving to exclude it.

consistent with Ira Kleiman's own testimony about the brothers' relationship did not prejudice the Estate. Why is this? First, the Estate argues that this evidence only could have affected the Estate, on the theory that Dr. Wright's "counsel's comments and questions on the sibling relationship targeted the Estate, not W&K." Motion at 9. As such, whether the so-called "relationship evidence" had any effect on the outcome can be assessed by comparing the verdicts for the two plaintiffs.

The jury awarded no bitcoin-related damages either to the Estate or to W&K, and if plaintiff's "relationship evidence" theory were correct, W&K should have recovered such damages even if the Estate did not. This means there must have been something other than the "relationship evidence" that caused the jury to reject all of W&K's bitcoin-related damages claims.[14] No speculation is necessary, however, because the Law 360 article the Estate relies on[15] suggests that plaintiffs failed to prove David Kleiman was a bitcoin miner, much less a bitcoin coder, and this failure of proof applied equally to the claims of W&K and the Estate:

> '**They never proved to me** without a shadow of a doubt that **he was involved in bitcoin in any way**,' the juror said. '**Everybody said he wasn't a miner, he wasn't a coder**. I just felt like he may have written papers for Dr. Wright, and that's where their friendship was.'
> Jurors deliberated for more than a week, as the two holdouts in Kleiman's camp pored through all the evidence, according to the juror.
> '**They finally realized there was no positive connection with bitcoin**,' the juror said. '**That's when they agreed that as far as liability towards bitcoin, there was none**.'

Carolina Bolado, *No Proof Bitcoin 'Inventor' Owed Friend, Juror Tells Law360*, Law360 (Dec. 23, 2021), https://www.law360.com/articles/1451020/ no-proof-bitcoin-inventor-owed-friend-juror-tells-law360 [D.E. 861-7 at 1] (emphasis added). In short, the jury awarded no bitcoin-related damages to the Estate because it failed to prove its claims, not because jurors

---

[14] It wasn't for plaintiffs' lack of trying that the jurors rejected W&K's bitcoin-related claims. The trial transcript is littered with plaintiffs' assertions that W&K mined bitcoin. *E.g.*, Trial Tr. Day 2 at 156:18-157:10; Trial Tr. Day 3 at 43:8-44:8, 78:2-10, 81:4-15, 91:8-23, 92:7-93:1, 94:22-95:19, 175:13-15; Trial Tr. Day 5 at 160:21-161:25.

[15] News articles are not grounds for overturning a jury verdict. *U.S. v. Blackwell*, 459 F.3d 739, 769–70 (6th Cir. 2006); *U.S. v. Salesman*, 2010 WL 1855848, at *1 (S.D. Fla. 2010). However, if and to the extent the Court even considers the article, it should be considered in assessing Dr. Wright's Opposition as well as plaintiff's Motion.

wanted to punish Ira for "abandon[ing] his brother in his time of need," in purported "violation" of an interlocutory order on a Motion *in Limine*. *See* D.E. 512 at 7; D.E. 623 at 15.[16]

> **C.**      **The Cases the Estate Relies on are Wholly Inapposite**

Throughout its Motion, plaintiff makes scurrilous personal attacks and unfounded claims of "counsel misconduct." This shameful tactic includes urging the Court to rely on irrelevant decisions such as *McWhorter v. City of Birmingham*, 906 F.2d 674 (11th Cir. 1990) (cited nine times in the Motion), *Christopher v. Florida*, 449 F.3d 1360, 1365 (11th Cir. 2006) (cited five times in the Motion), and *Goodman v. Safeco Ins. Co. of Illinois*, 2015 WL 898696 (M.D. Fla. 2015) (cited four times in the Motion). In every one of those cases, counsel urged the jury to consider impermissible evidence for an improper purpose during closing argument.[17]

Even assuming *arguendo* that the Court abused its discretion by improperly admitting evidence here (which did not and could not have happened), Dr. Wright's counsel never urged the jury in closing argument to consider such evidence for an improper purpose (e.g., that it should not award the Estate damages because Ira Kleiman was undeserving). *Accord ML Healthcare Servs., LLC*, 881 F.3d at 1306 (affirming judgment because "Defendant did not

---

[16] The Estate relies on a cryptic sentence from the Law 360 article, but that sentence does not support its argument that the jurors used any so-called "relationship evidence" for an improper purpose. The juror is quoted as saying: "'In three years he didn't go to the hospital?'. . . . 'That clouded my view as far as what the actual record stated.'" Motion at 8. The juror did not say that he or she punished Ira Kleiman for not visiting his brother in the hospital (which might have been improper). Instead, the juror said only that it "clouded [his or her] view" of the record. In other words, this juror may have discounted the probative value of certain unidentified evidence. For example, the juror might properly have discounted the value of Ira Kleiman's "relationship" testimony that his brother broke a purported vow of silence at Thanksgiving 2009 to tell him about a secret Bitcoin project he was working on, when he never did so when his best friend visited him daily in the hospital (which would have been a proper use of the testimony).

[17] In *McWhorter*, the improper purpose was to show that the plaintiff's firing was retaliatory, which is what plaintiff's counsel did in closing, arguing that plaintiff's failure to participate in a lawsuit "[was] the motive for all of this . . . . Let's fire Hank." 906 F.2d at 676. In *Christopher*, the improper purpose was inviting a violation of defendant's qualified immunity by arguing that defendant could be liable for anything other than a blow to the head, which plaintiff's counsel did in closing, arguing that the defendant could be liable for other injuries and plaintiff need not "prove a specific blow to the head." 449 F.3d at 1365-66. In *Goodman*, the improper purpose was invoking sympathy for a co-plaintiff injured in a car accident in order to find insurance coverage. That is exactly what plaintiff's attorney did in closing, arguing that the insurer was trying to cheat Goodman and that "I hope that you find Goodman's injuries are worthy of compensation." 2015 WL 898696, at *4.

directly argue that the jury should diminish any damages []; it only provided the context of ML Healthcare's payment arrangement and implied that ML Healthcare, rather than Plaintiff, was at risk in the lawsuit."); *Cox v. Target Corp.*, 351 F. App'x 381, 383 (11th Cir. 2009) ("[T]he court did not abuse its discretion in denying [plaintiffs'] motion for a new trial" because, although defendant introduced evidence that plaintiff had sued over a "previous fall at another retail store," defendant "did not violate the court's order by suggesting that Cox was litigious."); *Younger v. Experian Info. Sols., Inc.*, 2019 WL 1296256, at *5 (N.D. Ala. 2019), *aff'd in part, vacated in part and remanded*, 817 F. App'x 862 (11th Cir. 2020) (distinguishing *McWhorter* because there, "plaintiff's counsel spoke to this [impermissible] theory during closing" and "encouraged the jury to consider [the impermissible] exhibit corroborating that theory").

Further, in the cases plaintiff travels on, there was no proper use for the evidence at issue, and it could only be (and was) used to invite the jury to decide the case on an improper basis. *E.g.*, *Goodman*, 2015 WL 898696, at *4 (Counsel's "statement encouraged the jury to decide the case not on the merits, but on the idea that the insurance company would be cheating an innocent and injured third party. It had no probative value, invited the jury to ignore the law, and was highly prejudicial."). In contrast, here there were a number of proper purposes for the challenged evidence, including establishing the date and implausibility of the Thanksgiving dinner story, when David Kleiman died, when the Estate was opened, and Ira Kleiman's lack of personal knowledge as to David Kleiman's finances.

Moreover, in the cases plaintiff cites, the improper evidence and argument were central to the case and likely to influence its outcome. *See, e.g.*, *XTec, Inc. v. Hembree Consulting Servs., Inc.*, 183 F. Supp. 3d 1245, 1271 n.15 (S.D. Fla. 2016) (distinguishing *McWhorter* because the "inadmissible facts were central to the case—evidence that the defendant fired the plaintiff because he refused to cooperate with the defendant in an ongoing lawsuit."). Here, the central issue for the jury in plaintiff's case was whether there was an oral partnership between Dr. Wright and David Kleiman to mine bitcoin and develop intellectual property. The purportedly improper evidence regarding David Kleiman's relationship with his brother had no direct connection to those central issues.

Finally, in plaintiff's cited cases there was no effective jury instruction to counter an impermissible closing argument (which didn't even occur here). In *McWhorter* and *Goodman*, the court gave no curative instruction, and in *Christopher* the jury instruction was ineffective

because it did not instruct the jury that they should not consider the improper argument. *See* 449 F.3d at 1367, n.8 (The ineffective jury instruction "was only one sentence: 'Plaintiff claims that one of the Defendants struck him on the head, causing injury,'" and "did not express that liability had to be tied to Plaintiff's establishing by evidence that he had suffered a blow to the head."). Here, in marked contrast, the Court issued multiple jury instructions to counter any purportedly impermissible evidence. The Court instructed the jury as follows:

> Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.
>
> ***
>
> You must decide the case solely on the evidence and the law before you and must not be influenced by any personal likes or dislikes, opinions, prejudices, sympathy, or biases.

Trial Tr. Day 15 at 20:9–11; *Id.* at 44:12-15. Thus, there was little risk that the jury would use the evidence for an improper purpose. *See Cephus v. CSX Transp., Inc.*, 771 F. App'x 883, 895 (11th Cir. 2019) (It was not an abuse of discretion to deny new trial motion, because "although we find that counsel's remarks were improper," the "district court did instruct the jury before its deliberations that it "must not award any damages by way of punishment or through sympathy.").

Thus, plaintiff's principal cases are inapposite and easily distinguished.[18] Instead, the Court should apply and follow the binding Eleventh Circuit decisions in *Frederick*, 205 F.3d

---

[18] Plaintiff's other cited cases also are inapposite and irrelevant. *See Aetna Cas. & Sur. Co. v. Gosdin*, 803 F.2d 1153, 1156 (11th Cir. 1986) (no proper use for statement that defendant "faced charges of pimping, pandering, possession of drugs, and distribution of drugs"); *U.S. v. Trujillo*, 714 F.2d 102, 105–06 (11th Cir. 1983) (counsel encouraged jury to ignore the law); *In re Engle Cases*, 2009 WL 9119991, at *18 (M.D. Fla. 2009) (same); *Soltero v. Swire Dev. Sales, Inc.*, 2010 WL 11506701, at *11 (S.D. Fla. 2010) (Plaintiff improperly referred "to the assets or wealth, of the other Swire entities," arguing that "even $10 million in punitive damages is chickenfeed to Swire."); *Castle v. Thompson*, 2010 WL 11507513, at *6 (N.D. Ga. 2010) (Plaintiffs repeatedly introduced evidence on claims where "[d]efendants had already received summary judgment, impermissibly expanding the scope of the case."); *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1307–08 (5th Cir. 1977) (After assuring the court "four times" that "he would not bring up [the impermissible purpose] in his final argument," counsel did so.); *Adams Lab., Inc. v. Jacobs Eng'g Co.*, 761 F.2d 1218, 1220 (7th Cir. 1985) (Plaintiff "violated an earlier district court order prohibiting any mention of [plaintiff's] financial plight" by arguing in opening that plaintiff was "a small company with little wealth in comparison to the stature and wealth that [the defendant] enjoyed in the industry."); *Brown v. Royalty*, 535 F.2d 1024, 1026-27 (8th Cir. 1976) (After the court excluded evidence that defendant never received a ticket, in closing argument, defendant argued that "there was no evidence that [the defendant] had been guilty of negligence, that he had violated an ordinance or anything of the sort.").

1277, *ML Healthcare Servs.*, 881 F.3d 1293, and *Cox*, 351 F. App'x 381, in rejecting plaintiff's motion.

At bottom, even assuming *arguendo* that the Court somehow abused its discretion in allowing answers to five questions to which plaintiff didn't object, three questions that were not answered because it sustained plaintiff's objections, and answers to two questions where it overruled plaintiff's objections, plaintiff could not (and did not) show that any of this evidence was used for an improper purpose, let alone that the admission of this evidence affected plaintiff's substantial rights or caused it substantial prejudice. Any hypothesized error here was plainly harmless, and plaintiff's motion should be denied. *Vanguard Research, Inc.*, 378 F.3d at 1162.

## III.    CONCLUSION

Just as the Court had discretion to use the administrative convenience of an interlocutory order on a motion *in limine* to exclude a category of evidence under Rule 403, it had *a priori* discretion to determine the admissibility of the particular challenged evidence when it was offered at trial, whether that be characterized as *ad hoc* balancing under Rule 403 or a "modification" of the Court's interlocutory Order. The Court plainly did not abuse its discretion in dealing with plaintiff's ten challenged questions, and did not commit any error. But even if any error had been committed, it was harmless, because it did not affect plaintiff's substantial rights or cause substantial prejudice. In sum, and for all of the good and sufficient reasons stated above, the Court should deny the Estate's motion for a new trial.

Dated: January 18, 2022                    Respectfully submitted,

                                                    By: s/ Andres Rivero
                                                    ANDRES RIVERO
                                                    Florida Bar No. 613819
                                                    JORGE A. MESTRE
                                                    Florida Bar No. 088145
                                                    AMANDA MCGOVERN
                                                    Florida Bar No. 964263
                                                    ALAN H. ROLNICK
                                                    Florida Bar No. 715085
                                                    SCHNEUR KASS
                                                    Florida Bar No. 100554

                                                    RIVERO MESTRE LLP

2525 Ponce de Leon Boulevard,
Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: jmestre@riveromestre.com
Email: amcgovern@riveromestre.com
Email: arolnick@riveromestre.com
Email: zkass@riveromestre.com
Email: receptionist@riveromestre.com

## CERTIFICATE OF SERVICE

I CERTIFY that on January 18, 2022, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Andres Rivero*