**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K INFO DEFENSE RESEARCH, LLC<br><br>*Plaintiffs,*<br><br>v.<br><br>CRAIG WRIGHT<br><br>*Defendant.* | CASE NO.: 9:18-cv-80176-BB |

**THE ESTATE OF DAVID KLEIMAN'S REPLY IN SUPPORT OF A NEW TRIAL BASED ON VIOLATIONS OF ORDER EXCLUDING SIBLING RELATIONSHIP EVIDENCE**

1

Defendant's Opposition to the Estate's Motion for a New Trial makes a few things clear:

1) There is no dispute on whether Defendant's introduction of evidence about the Kleiman brothers' relationship was intentional. Defendant's Opposition admits it was;
2) Defendant treated the Court's Order on Plaintiffs' Motion in Limine as something he could ignore so long as he believed he had a "proper purpose" for introducing clearly excluded evidence; and
3) Defendant believes (wrongly) that *10* intentional violations of an Order are not enough for a new trial.

To support his argument, Defendant mischaracterizes the legal standard, caselaw, and trial testimony, while largely ignoring the obvious effect of counsel's exceptional, persistent misconduct emphasizing the purported state of the relationship between the Kleimans in painting Ira as undeserving. Defendant denies that his questions violated the Court's Order (again, because he decided he had a good "purpose" for doing so). He chooses to ignore that the Order was clear—other than the 2009 Thanksgiving Day dinner conversation, the Court excluded all "[e]vidence about Ira Kleiman's sibling-relationship with [David] Kleiman." ECF No. [623], at 16. The Court even explained specific types of prohibited questions. *Id.* at 15 ("[W]hether Ira Kleiman visited his brother at the hospital, spoke to him infrequently, or whether Mr. Kleiman mentioned Ira Kleiman to others has limited probative value but substantial capacity to cause undue prejudice.").

Yet, Defendant decided he knew better than the Court and, without requesting permission, asked about precisely the areas the Court precluded, with his only excuse being that he a "different purpose" than exploring the brothers' relationship. And, if that does not work, Defendant asks this Court to conclude that his 10 intentional violations are not enough, or that Plaintiffs and the Court were at fault for not catching and objecting to every one of them. But Defendant has it backwards. His intentional violations put the Estate and the Court in a no-win situation because the Estate's objections and Court's rulings spotlighted the exact prejudicial issue already precluded.

Defendant's repeated and intentional violations of this Court's Order, on an issue all parties and the Court recognized was fraught with peril, demands that a new trial be granted in favor of the Estate.

## LEGAL STANDARD

Defendant's Opposition repeatedly tries to get the Court to apply the appellate review standard for evidentiary rulings. But here, where the motion for new trial is based on attorney

2

misconduct (*i.e.* intentionally introducing an issue and evidence barred by court order), the correct standard is *de novo* based on "the number of errors, the closeness of the factual disputes, the prejudicial effect of the evidence, the instructions given, and whether counsel intentionally elicited the evidence and focused on it during the trial." *Aetna Cas. & Sur. Co. v. Gosdin*, 803 F.2d 1153, 1160 (11th Cir. 1986). As a result of this improper attempt to import an abuse of discretion standard and to direct focus away from review of counsel's misconduct, Defendant mostly relies on inapposite cases involving appellate review of district court evidentiary rulings.[1] Defendant's arguments therefore depend on applying the wrong standard, but they fail even under that standard.

## ARGUMENT

Defendant repeatedly and intentionally attempted to introduce evidence he knew had been excluded by the Court. The only post hoc justification he now offers is that he had a "proper purpose" for doing so. But it was not for Defendant to decide whether his so-called "purpose" gave him license to inject the issue of the brothers' relationship in front of the jury. Indeed, the evidence over which Defendant now tries to lay of veneer of valid purpose was specifically excluded by the Court's Order. It was this parade of violations that led the media to describe the sibling relationship as a focus of Defendant's cross-examination of Ira Kleiman (*see* ECF No. [861], at 7–8), and led a juror to explain that the lack of a relationship between the siblings had "clouded my view as far as what the actual record stated." ECF No. [861-7]. Respectfully, Defendant fought hard to inject this issue into the trial in pre-trial motion practice because he knew the impact it would have on the jury. When he lost (*i.e.* the Court specifically excluded it), he went to "Plan B"; namely, he repeatedly raised and introduced the evidence to the jury in clear violation of that Order.

Now, having reaped the benefits of these repeated violations, Defendant seeks to excuse this misconduct by blaming Plaintiffs for not objecting enough or, even more implausibly, suggesting that 10 violations of the Court's Order on an incendiary issue had no impact on the jury. Further, Defendant's central case on waiver (which is an issue for appeal, not a new trial motion, and thus irrelevant) was overruled by the 2000 amendments to Rule of Evidence 103—a point Defendant fails to acknowledge. *See Collins v. Wayne Corp.*, 621 F.2d 777, 785 (5th Cir. 1980), *overruled in relevant part by* Fed. R. Evid. 103 *as identified in Mathis v. Exxon Corp.*, 302

---

[1] For example, *ML Healthcare Services, LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1297 (11th Cir. 2018), addressed the appellate review standard on evidentiary and sanctions rulings.

F.3d 448, 459 n.16 (5th Cir. 2002). Defendant's block quote of Rule 103 omits subsection (b), which states that "once the court rules definitively on the record—*either before or at trial*—a party need not renew an objection or offer of proof to preserve a claim of error for appeal." (emphasis added). Here, the Estate's motion in limine and repeated objections during trial preserved the issue of counsel's misconduct. *United States v. Roenigk*, 810 F.2d 809, 815 (8th Cir. 1987), is not to the contrary given the Estate's repeated objections. *See Wilson v. Vermont Castings, Inc.*, 170 F.3d 391, 395 n.7 (3d Cir. 1999) (same); *United States v. Estes*, 994 F.2d 147, 149 (5th Cir. 1993) (same).

**I.    Defendant clearly and repeatedly violated this Court's order, requiring a new trial.**

Defendant's central argument is that no new trial is required because counsel's repeated questions invoking the brothers' purported estrangement did not seek to violate the Court's Order. A simple comparison of counsel's questions with the Court's Order put the lie to this argument. Along with holding that "[e]vidence about Ira Kleiman's sibling-relationship with Mr. Kleiman is excluded except as to the Thanksgiving Day 2009 dinner conversations," the Court identified three specific excluded topics. Defendant focused on all three with the jury. The Court identified "whether Ira Kleiman visited his brother at the hospital" as excluded, yet counsel asked Ira Kleiman at least *five* questions on this topic.[2] The Court also held that "whether Ira Kleiman . . . spoke to [David Kleiman] infrequently" was excluded, yet Defendant asked at least *four* more questions, highlighted a section of a letter, and presented inappropriate argument in front of the jury on this topic too.[3] And the Court specifically identified "whether Mr. Kleiman mentioned Ira

---

[2] ECF No. [861-1] ("And you know that date because that's the last day you saw your brother in life, correct?" "Sir, your testimony under oath and your best memory is that that was the last day you saw your brother in life, is it not?" "The last time you spoke to David Kleiman in life was in 2009, right?" "The last time you saw your brother in person was in 2009?" "You never saw him in the hospital?"). Defendant also showed the jury a letter on this topic. *See* D008 ("Ira never saw [David] at the hospital" and "may have seen David one time when David took a leave from the hospital").

[3] ECF No. [861-1] ("[J]ust to make this crystal clear, you didn't learn of Dave's death until a few days after his body was found?" "And he – you don't know the exact date, but he had died some days before?" "[Ira] had limited contact and personal knowledge as to David's financial affairs throughout David's life." "[B]etween March 12[, 2012] and April 7th, 2013, on the cell phone at least, you spoke with David Kleiman six times?" "This is between -- this is in the last year, the last 13 months of your brother's life." "Judge, it's the absence of voice mails and that is highly relevant.").

4

Kleiman to others" as excluded, yet Defendant asked Patrick Paige: "During that time, how many times did you hear of Ira Kleiman?" ECF No. [861-1]. Defendant's violations were intentional and clear, as the Court observed during the sidebar about an exhibit that Defendant failed to redact.[4]

Given these violations, the standard for a new trial is easily met. Defendant does not identify any case denying a new trial motion with anywhere near the at least 10 violations here. He does not assert counsel did not intend to elicit evidence about the brothers' relationship or did not mean to focus the jury's attention on that issue. He seems to argue instead that he did not have a *subjective* intent to violate the Court's Order because he believed there were other uses for the evidence. *See* ECF No. [869], at 11. But counsel's subjective intent (even if supported and credited) is irrelevant. *See* ECF No. [861], at 10 n.3. Further, he does not address the closeness of the disputed factual issues, *Aetna*, 803 F.2d at 1160, seemingly conceding they were close. *See* ECF No. [861], at 12. Indeed, the overwhelming evidence—including from Defendant himself until after litigation began—established a partnership that included mining bitcoin.

## II. Defendant's argument that the Court sua sponte modified its order at trial is wrong.

Defendant's Opposition depends on the erroneous assertion that the Court's overruling of Plaintiffs' objections and denying a sidebar request moments into Defendant's cross-examination of Ira Kleiman was a reconsideration (and reversal) of the Court's Motion in Limine Order excluding the brothers' sibling relationship. *See* ECF No. [869], at 2, 10–12.[5] It plainly was not.

In ruling on the motions in limine, the Court explained that "'a court should exclude evidence *in limine* only when it is clearly inadmissible on all potential grounds.'" ECF No. [623], at 3 (quoting *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010)). It excluded the sibling relationship evidence on that basis. *Id.* at 15–16. The Court explained that a party could

---

[4] Trial Tr. Day 4 at 174:20–22 ("THE COURT: It certainly talks about the sibling relationship. That was directly what the Court ruled upon with regard to the motion in limine."), 175:3–14 ("MR. BRENNER: . . . I also believe that it is incumbent -- I mean, it's not that it's a close call. This one says: 'Never visited his brother in the hospital' -- THE COURT: It does. It does. MR. BRENNER: That's directly on point. MR. RIVERO: No, it doesn't, Judge. THE COURT: It does. MR. RIVERO: Judge, it says they didn't have contact. THE COURT: No. No. No."), 176:21–177:4 ("THE COURT: . . . And I specifically said that the sibling relationship is not relevant and should not be admissible other than the [2009] Thanksgiving Day conversation.").

[5] Defendant continues improperly to try to relitigate the motions in limine. *See* ECF No. [869], at 17 (listing purportedly probative bases for sibling relationship evidence, which Defendant argued and which were rejected by the Court when it granted the motion in limine on this issue).

5

"seek reconsideration" of an in limine ruling during trial. *Id.* at 3. Defendant twice argued that the door had been opened to sibling relationship evidence, and the Court rejected his arguments both times. Trial Tr. Day 1 at 211:20–21; Trial Tr. Day 4 at 176:13–15 ("THE COURT: Well, if you believe that he said anything to open the door with regard to the sibling relationship, he has not.").

Because he could not convince the Court to reconsider its Order, Defendant took matters into his own hands by repeatedly asking questions on areas that were clearly excluded by the Order. Forcing Plaintiffs to object repeatedly, in the presence of the jury, turned the Court's Order on its head. Indeed, intentionally violating the Court's Order at the beginning of the cross-examination of a key witness in hopes that the Court would overrule an objection on the fly, as Defendant did here, is plainly an improper (and prejudicial) method for seeking reconsideration, and Defendant's cited cases do not suggest otherwise.[6] As in *Brown v. Royalty*, 535 F.2d 1024 (8th Cir. 1976), Defendant's counsel "took advantage of every possible opportunity to suggest to the jury that" Ira and David Kleiman were estranged and that Ira therefore was underserving. *Id.* at 1028. Defendant "clearly disregarded the [C]ourt's rulings during trial that this evidence was inadmissible," and thus a new trial is warranted. *Id.*[7]

### III. The questions for which the Court sustained objections also support granting a new trial.

Even when the Court sustained Plaintiffs' objections during trial, the damage done by Defendant's improper questions and the resulting insinuations was evident. Defendant's central argument about these violations—that they were not evidence and therefore cannot support granting of a new trial—is foreclosed by precedent. A motion in limine order violation by a party

---

[6] *Insurance House, Inc. v. Insurance Data Processing, Inc.*, 2009 WL 10670469, at *2 (N.D. Ga. 2009), *aff'd*, 367 F. App'x 1 (11th Cir. 2010), cited by Defendant in his introduction, makes clear that the appropriate approach when a party seeks modification of an in limine order is to seek reconsideration of the order during trial. That is the approach envisioned by the cases Defendant cites. *See Lopez v. Allstate Fire & Cas. Ins. Co.*, 2015 WL 11216748, at *1 (S.D. Fla. Oct. 27, 2015) (motion in limine order stating rulings were subject to reconsideration based on evidence at trial); *Stewart v. Hooters of Am., Inc.*, 2007 WL 1752873, at *1 (M.D. Fla. June 18, 2007) (same); *see also ML Healthcare*, 881 F.3d at 1297 (identifying trial court's discretion in deciding motions in limine, without reference to reconsideration).

[7] Confusingly, Defendant argues the Estate should be faulted for not moving to strike or requesting a curative instruction after the Court *denied* its objections and request for a sidebar. ECF No. [869], at 1 ("Two of its objections were overruled, and . . . plaintiff never moved to strike the answers or for a curative instruction."). Defendant cites no case requiring such a futile step. There is none.

need not take the form of evidence to compel granting of a new trial. *See Christopher v. Florida*, 449 F.3d 1360, 1365 (11th Cir. 2006) (closing argument); *McWhorter v. City of Birmingham*, 906 F.2d 674, 676-78 (11th Cir. 1990) (same); *Goodman v. Safeco Ins. Co. of Ill.*, 2015 WL 898696, at *4-5 (M.D. Fla. Mar. 3, 2015) (same).

Even cases Defendant cites recognize the reality that attorneys' improper questions and argument can trigger a new trial. *Scott v. Dunnam*, 2016 WL 1452413, at *4 (S.D. Ga. Apr. 13, 2016), recognized that improper questions *can* be the basis for a new trial but that the prejudicial line of questions in that case was interrupted by the court before any prejudice occurred. Similarly, *XTec, Inc. v. Hembree Consulting Services., Inc.*, 183 F. Supp. 3d 1245 (S.D. Fla. 2016), explained that courts look to counsel's "improper assertions" in deciding whether to grant a new trial. *Id.* at 1269 (citation omitted). Defendant's contrary argument is premised on inapposite cases about trial court error in admitting evidence, not violations by counsel of motion in limine orders. *See* Fed. R. Evid. 103 advisory committee note to 2000 amendment; *ML Healthcare Servs.*, 881 F.3d at 1305 (evaluating whether "admission of evidence" was "plain error" on appeal).

Perhaps recognizing that his argument that only admitted evidence can support a new trial conflicts with controlling precedent, Defendant contends that the jury must have followed the Court's instructions and disregarded any insinuations from questions to which an objection was sustained. But Defendant ignores that his counsel's questions and argument before the jury were more accurately experienced by the jury as assertions of fact, as confirmed by the juror interview and contemporaneous media coverage described below. Further, his cited cases are inapplicable.[8] And, again, assertions by counsel can be the basis for a new trial even when those assertions are not—as here—combined with other violations of a motion in limine order. *See*, *e,g,*, *Christopher*, 449 F.3d at 1365; *McWhorter*, 906 F.2d at 676; *Goodman*, 2015 WL 898696, at *4-5.

---

[8] *See U.S. v. Colston*, 4 F.4th 1179, 1192 (11th Cir. 2021) (addressing evidentiary issues not counsel misconduct); *U.S. v. Brown*, 983 F.2d 201, 203 (11th Cir. 1993) (same); *see also U.S. v. Gallardo*, 977 F.3d 1126, 1138 (11th Cir. 2020) (discussing effect of curative instructions not present here).

## IV. Defendant's other violations of the Court's Order also support granting a new trial.

Defendant argues that the Estate did not object to some of his counsel's violations of the Court's Motion in Limine Order during trial,[9] and that this failure to object effected a waiver. However, trials are not games of Whac-A-Mole in which a party tries to sneak violations past opposing counsel and the Court. And no case supports Defendant's view of the relevant analysis.

As the Estate explained in its Motion, no objection at trial is needed to raise the effect of counsel's misconduct in a new trial motion, even though the Estate repeatedly objected here. *See* ECF [861], at 10. Defendant does not address cases including *Christopher*, *McWhorter*, and *Goodman*, all of which recognize granting a new trial is appropriate even without an objection to counsel's misconduct.[10]

Defendant's citations of cases in a more similar posture to this case are also inapposite. Defendant relies on *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1285 (11th Cir. 2000), but *Frederick* applied an abuse of discretion appellate review standard, predated the amendment to Rule 103 (even if assignment of error for appeal is relevant here, which it is not),[11] concerned only a single violation of a motion in limine order that occurred without objection, and did not acknowledge *McWhorter* or *Christopher*. *City of South Miami v. DeSantis*, 2020 WL 7074644, at *5 (S.D. Fla. Dec. 3, 2020), was a decision on a motion in limine, not an order on a new trial motion. And the parenthetical in *City of South Miami* quoted by Defendant comes from *Frederick*. *See also Vigneulle v. Tahsin Indus. Corp., USA*, 2019 WL 4409220, at *1 (N.D. Ala. Feb. 19, 2019) (same). Defendant also cites *Younger v. Experian Information Solutions, Inc.*, 2019 WL 1296256, at *5 (N.D. Ala. Mar. 21, 2019), *aff'd in part, vacated in part, remanded*, 817 F. App'x 862 (11th Cir. 2020), but the Eleventh Circuit reversed and granted judgment as a matter of law to the defendant on the relevant issue and expressly declined to address the waiver issue on appeal.

---

[9] Defendant misstates the violations that passed without objection. Despite confusion about a withdrawn question, the Estate objected to Defendant's question at the beginning of Day Four of the trial. ECF No. [861-1], Trial Tr. Day 4 at 23:12–24:1. And the Estate objected to the violative portions of D008, which led to redaction of the exhibit. *Compare* D008, *with* ECF No. [828-3].

[10] As with many of his other arguments, Defendant attempts to recast his waiver argument as if the Estate's new trial motion was an appeal from an evidentiary ruling. Even if the appellate review standard applied here (and, again, it does not), Defendant's waiver argument would fail because the Estate objected repeatedly to Defendant's violations of the Motion in Limine Order.

[11] The assignment of error issue discussed in Rule 103 should not be relevant at all to the Court's de novo consideration of a new trial motion based on counsel's misconduct.

*See Younger v. Experian Info. Sols., Inc.*, 817 F. App'x 862, 871 (11th Cir. 2020). In any event, as discussed above and in the Motion, the Estate did far more than the defendant in *Younger* to object to the violations of the Court's Motion in Limine Order. *Compare Younger*, 2019 WL 1296256, at *5 (holding that defendant had opened the door to evidence by not objecting on the correct basis).

### V. Even if Rule of Evidence 103 applied (it does not), Defendant's violations were not harmless.

Because Defendant erroneously depicts the Motion as governed by Rule 103 and the appellate standard of review for evidentiary error, he separately argues that any error was harmless. As explained above and in the Motion, however, the factors for a new trial motion are different from those under Rule 103. *See Aetna*, 803 F.2d at 1160. But even if Rule 103 applied, Defendant's violations were not harmless.

Where there are intentional and repeated violations of an order excluding evidence, the harmlessness standard is a low bar: "If one cannot say, with fair assurance, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 37 F.3d 1460, 1465 (11th Cir. 1994) (alteration and quotation omitted); *see Brown*, 535 F.2d at 1028 (reversing on prejudice and granting new trial). Several circumstances make clear the violations here were not harmless.[12]

*First*, the Court's Motion in Limine Order strongly supports the view that Defendant's violations were not harmless. ECF No. [623], at 15. Motions in limine are intended to address "matters so highly prejudicial to moving party that curative instructions cannot prevent predispositional effect on jury." *Needham v. Roho Grp.*, 2006 WL 770149, at *1 (E.D. Mich. Mar. 27, 2006) (quotation omitted); *see Singh v. Caribbean Airlines Ltd.*, 2014 WL 4101544, at *1 (S.D. Fla. Jan. 28, 2014) ("In resolving evidentiary disputes before trial, motions in limine avoid the need to 'unring the bell' once inadmissible evidence has been presented to the jury."). In deciding the motions in limine, the Court observed that the sibling relationship issues "raise significant concerns that the jury will 'make a decision in this case premised on how "good" of a brother Ira [Kleiman] was or whether [he] "deserves" Dave [Kleiman's] fortune – instead of basing their decision on the facts and merits of the case.'" ECF No. [623], at 15. As the Court anticipated,

---

[12] The interest in upholding the Court's authority independently supports granting a new trial. *See* ECF No. [861], at 13.

the relationship argumentation was potent, especially given that David, the victim of the theft, was not alive to offer evidence. *Cf.* Trial Tr. Day 1 at 230:8–10.

*Second*, the overruled objections and request for a sidebar in response to Defendant's counsel's violations of the Motion in Limine Order moments into his cross-examination of Ira Kleiman left the jury with an erroneous impression that evidence about the sibling relationship was relevant. *See Soltero v. Swire Dev. Sales, Inc.*, 2010 WL 11506701, at *12 (S.D. Fla. Apr. 19, 2010), *aff'd*, 485 F. App'x 377 (11th Cir. 2012); *Castle v. Thompson*, 2010 WL 11507513, at *6 (N.D. Ga. Mar. 22, 2010), *aff'd sub nom. Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194 (11th Cir. 2011).

*Third*, the media coverage during trial suggesting a focus on the sibling relationship undermines Defendant's argument for harmlessness of his violations. *See* ECF No. [861], at 7–8.

*Fourth*, the Law360 article following trial interviewing one of the jurors in the case demonstrates that the violations were not harmless. ECF No. [861-7] ("In three years he didn't go to the hospital?' the juror said. 'That clouded my view as far as what the actual record stated.'").

*Fifth*, that the jury awarded $100 million to W&K and nothing to the Estate shows that the violations of the Court's order were not harmless because the jury would have no reason to hold their perceptions of the sibling relationship against W&K as they evidently did against the Estate.[13]

*Sixth*, Defendant admits he intended to elicit evidence and argument about the sibling relationship before the jury. *See Ad-Vantage*, 37 F.3d at 1465. It is irrelevant that he now says he subjectively intended to use the information and evidence for other purposes. *Aetna*, 803 F.2d at 1160.

*Seventh*, absent the Court's Order, the Estate could have presented information contextualizing the relationship, so the presentation the jury received on this already unfairly prejudicial topic was also inaccurate. Contrary to Defendant's suggestion (ECF No. [869], at 7), the appropriate response to Defendant's violations was not for the Estate to offer evidence violating the Order. And Defendant's own footnote makes clear that the positive evidence about

---

[13] Defendant argues the verdict for W&K somehow supports harmlessness because neither W&K nor the Estate were awarded bitcoin. But Plaintiffs argued that the theft of intellectual property was from W&K and the theft of bitcoin was from the Estate. Trial Tr. Day 15 at 99:23–25 ("as the evidence showed, the IP was with W&K. The Bitcoin were with the partnership[,] the [E]state").

the sibling relationship did not come in. *Compare* ECF No. [861], at 6–7, *with* ECF No. [869], at 7 n.7.[14]

Defendant nonetheless argues that counsel's violations of the Court's Order were harmless because the inadmissible evidence was cumulative of other evidence about a limited sibling relationship, but the two examples Defendant identifies *establish* the prejudice here. Defendant first points to Ira not testifying about his relationship other than Thanksgiving 2009, but that was precisely the result of the Court's Order and was not cumulative of the impression Defendant pressed on the jury about the sibling relationship. Defendant's only other example of purportedly cumulative evidence is that David did not "mention [to Ira] specifically like what kind of health condition he was in," Trial Tr. Day 3 at 176:18–177:1, which is far from evidence about the quality of the sibling relationship. The Court also twice rejected Defendant's arguments that the Estate had opened the door to sibling relationship evidence, further showing that the violations were not cumulative. *See* Trial Tr. Day 1 at 211:20–21; Trial Tr. Day 4 at 176:13–15.

Defendant cites several cases about cumulative evidence but none of them resemble this case. *See Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1179 (11th Cir. 2002) ("considerable amount of admissible evidence"); *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 307 (5th Cir. 1978) (same); *Lockley v. Deere & Co.*, 933 F.2d 1378, 1389 (8th Cir. 1991) (about information the courts believed was generally known including to the jury, unlike the sibling relationship here); *Mahaska Bottling Co., Inc. v. PepsiCo, Inc.*, 2020 WL 10506243, at *9 (S.D. Iowa Mar. 12, 2020) (same), *aff'd sub nom. Mahaska Bottling Co., Inc. v. Bottling Grp., LLC*, 6 F.4th 828 (8th Cir. 2021).

Finally, Defendant also contends that pattern jury instructions offered by the Court addressed any prejudice (ECF No. [869], at 16–17), but that argument fails as well. "As many cases have noted, the Court cannot 'unring a bell;' once the jury hears improper testimony or argument, it is presumed that it may rely upon it in its deliberation." *Goodman*, 2015 WL 898696, at *5. The general instructions Defendant relies on did not address counsel's misconduct (as shown, for example, by the juror's comment to Law360). *Peat, Inc. v. Vanguard Research, Inc.*, cited by Defendant on harmlessness (ECF No. [869], at 2), held that a new trial was required when

---

[14] Defendant's attempt to dispute admissibility of a trial exhibit (ECF No. [869], at 6 n.8) is besides the point because, even if the Court had not allowed admission of the exhibit, Ira could have testified to how often he spoke with David.

11

the instructions given to the jury "did not sufficiently eliminate or reduce the prejudicial effect of the inadmissible evidence and statements." 378 F.3d 1154, 1165 (11th Cir. 2004). Similarly, *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1309 (5th Cir. 1977), recognized that an instruction to the jury was not curative when it "did nothing to alleviate the erroneous impression created in the minds of the jurors. *Id.* ("'[Y]ou can throw a skunk into the jury box and instruct the jurors not to smell it, but it doesn't do any good.'").

## CONCLUSION

For the foregoing reasons and those in the Motion, the Court should grant a new trial to the Estate.

Dated: January 25, 2022

Respectfully submitted,

By: */s/ Devin "Vel" Freedman*
Andrew S. Brenner
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd Street, Suite 2800
Miami, Florida 33131
abrenner@bsfllp.com

Maxwell V. Pritt
Alexander J. Holtzman
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, Floor 41
San Francisco, CA 94104
mpritt@bsfllp.com
aholtzman@bsfllp.com

Velvel (Devin) Freedman
**ROCHE FREEDMAN LLP**
200 S. Biscayne Blvd.
Suite 5500 Miami, Florida 33131
vel@rcfllp.com

Kyle W. Roche
**ROCHE FREEDMAN LLP**
99 Park Avenue, 19th Floor
New York, New York 10016
kyle@rcfllp.com

*Counsel to Plaintiffs Ira Kleiman as Personal Representative of the Estate of*

*David Kleiman and W&K Info Defense Research, LLC.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 25, 2022 a true and correct copy of the foregoing was filed with CM/ECF, which caused a copy to be served on all counsel of record.

<u>*/s/ Devin "Vel" Freedman*</u>
Velvel (Devin) Freedman