**P-350**

Case No. 9:18-CV-89176-BB

**BAKER & McKENZIE**

# Implementation Deed

**DeMorgan Limited**

**Calay Holdings, Inc.**

**Craig Steven Wright**

Baker & McKenzie
ABN 32 266 778 912
AMP Centre
Level 27
50 Bridge Street
Sydney NSW 2000
Australia
www.bakermckenzie.com

ATTORNEY'S EYES ONLY

## Table of contents

| | | |
|---|---|---|
| 1. | Definitions and interpretation | 1 |
| 2. | Status of Prior Term Sheet and Binding Term Sheet | 3 |
| 3. | NewCo and DeMorgan | 3 |
| 4. | Asset Purchase | 4 |
| 5. | Services Agreement | 6 |
| 6. | Convertible Loan | 7 |
| 7. | Craig Wright | 8 |
| 8. | New Research Facility | 9 |
| 9. | Bridge financing | 9 |
| 10. | Notices | 9 |
| 11. | General provisions | 10 |
| **Annexure 1** | | **14** |
| Binding Term Sheet | | 14 |
| **Annexure 2** | | **15** |
| Prior Term Sheet | | 15 |

ATTORNEY'S EYES ONLY
DEF_01884998

| | |
|---|---|
| **Title** | **Implementation Deed** |
| **Date** | 7 January 2016 |
| **Parties** | **DeMorgan Limited** (ACN 601 560 525) of 502, Level 5, 32 Delhi Road, North Ryde NSW 2113 **(DeMorgan)** |
| | **Calay Holdings, Inc, trading as "The Sterling Group"** (a company registered in the Phillipines) of 12/F Frabelle Business Centre, No. 11 Rada St. Lagaspi Vill. Makati City **(Calay)** |
| | **Craig Steven Wright** of ███████████████ **(Craig Wright)** |

## Recitals

A   On 29 June 2015, the parties entered into the Prior Term Sheet and then entered into the Binding Term Sheet which was intended to supersede and replace the Prior Term Sheet.

B   This Deed confirms the parties' agreement as to the manner in which the Binding Term Sheet has and will be implemented.

## Operative provisions

## 1.   Definitions and interpretation

### Definitions

1.1   In this Deed, unless the context requires another meaning:

**Binding Term Sheet** means the Summary of Agreed Terms between the parties dated 29 June 2015 and attached as Annexure 1.

**Business Day** means a day that is not a Saturday, Sunday, public holiday or bank holiday in Sydney.

**Convertible Loan Documentation** has the meaning given in clause 6.2.

**Craig Wright Documentation** has the meaning given in clause 7.2.

**Credit Facility Agreement** has the meaning given in clause 9.2.

**DeMorgan Vendor Entities** has the meaning given in clause 4.2(a).

**DR Technologies Agreement** has the meaning given in clause 5.2.

**IP Assignment Deed** has the meaning given in clause 4.2.

**Ncrypt Holdings** means the company described in clause 3.2.

**Prior Term Sheet** means the Summary of Agreed Terms between the parties dated 29 June 2015 and attached as Annexure 2.

1

DEF_01884999

**Interpretation**

1.2   In this Deed:

(a)   unless the context requires, a reference to:

    (i)   the singular includes the plural and vice versa;

    (ii)   a gender includes all genders;

    (iii)   a document (including this Deed) is a reference to that document (including any Schedules and Annexures) as amended, consolidated, supplemented, novated or replaced;

    (iv)   an agreement includes any undertaking, representation, deed, agreement or legally enforceable arrangement or understanding whether written or not;

    (v)   a party means a party to this Deed;

    (vi)   an item, recital, clause, schedule or annexure is to an item, recital, clause, schedule or annexure of or to this Deed;

    (vii)   a notice means a notice, approval, demand, request, nomination or other communication given by one party to another under or in connection with this Deed;

    (viii)   a person (including a party) includes:

        (A)   an individual, company, other body corporate, association, partnership, firm, joint venture, trust and government agency;

        (B)   the person's successors, permitted assigns, substitutes, executors and administrators; and

        (C)   a reference to the representative member of the GST group to which the person belongs to the extent that the representative member has assumed rights, entitlements, benefits, obligations and liabilities which would remain with the person if the person were not a member of a GST group;

    (ix)   a law includes any legislation, judgment, rule of common law or equity or rule of any applicable stock exchange, and is a reference to that law as amended, consolidated, supplemented or replaced and includes a reference to any regulation, by-law or other subordinate legislation;

    (x)   proceedings includes litigation, arbitration and investigation;

    (xi)   a judgment includes an order, injunction, decree, determination or award of any court or tribunal;

    (xii)   time is to Sydney time;

    (xiii)   day is to a day in Sydney;

    (xiv)   an outcome being "reasonably likely" is a reference to an outcome which is more likely than merely likely and is not intended to mean something which is less than likely;

ATTORNEY'S EYES ONLY                                                                 DEF_01885000

    (xv)   the words "including" and "includes" mean "including, but not limited to", and "includes, without limitation" respectively; and

    (xvi)   a "matter" is a reference to a fact, matter, circumstance or event;

(b)   where a word or phrase is defined, its other grammatical forms have a corresponding meaning;

(c)   headings are for convenience only and do not affect interpretation of this Deed;

(d)   if a payment or other act must (but for this clause) be made or done on a day that is not a Business Day, then it must be made or done on the next Business Day; and

(e)   if a period must be calculated from, after or before a day or the day of an act or event, it must be calculated excluding that day.

1.3   This Deed may not be construed adversely to a party only because that party was responsible for preparing it.

## 2.   Status of Prior Term Sheet and Binding Term Sheet

2.1   Each party acknowledges and agrees that:

(a)   on 29 June 2015 it entered into the Prior Term Sheet;

(b)   subsequently, but also on 29 June 2015, it entered into the Binding Term Sheet;

(c)   its intention on 29 June 2015 was for the Binding Term Sheet to supersede and replace the Prior Term Sheet; and

(d)   its intention on 29 June 2015 was to be bound by the terms of the Binding Term Sheet on and from 29 June 2015.

2.2   The parties therefore acknowledge and agree that:

(a)   the Prior Term Sheet was superseded and replaced by the Binding Term Sheet on 29 June 2015;

(b)   the Prior Term Sheet was terminated by the parties on entry into the Binding Term Sheet;

(c)   it has been bound by the terms of the Binding Term Sheet on and from 29 June 2015; and

(d)   the Binding Term Sheet has and will (as applicable) be interpreted and implemented as set out in clauses 3 to 9 of this Deed.

## 3.   NewCo and DeMorgan

3.1   The Binding Term Sheet refers to a company called "NewCo" entering into a number of agreements and states that:

> *NewCo should exist in a tax-efficient jurisdiction and is intended to be the repository for IP once the asset purchase is completed and for all new development and technology. Patents for all existing or subsequent IP should be filed by NewCo.*

ATTORNEY'S EYES ONLY                                                      DEF_01885001

3.2     The parties agree that "NewCo", as referred to in the Binding Term Sheet, is Ncrypt Holdings Ltd (IBC number 16734), a company incorporated and registered under the laws of the State of Antigua and Barbuda with its registered address c/o Offshore Management & Trust Services Inc, Fitzgerald House, 44 Church Street, St John's Antigua (**Ncrypt Holdings**).

3.3     The parties agree that:

    (a)     nothing in the Binding Term Sheet restricts Ncrypt Holdings from dealing, without restriction, with the intellectual property rights that are assigned to it as envisaged by the transactions set out in the Binding Term Sheet or that it owns in the future; and

    (b)     the parties' rights and obligations in relation to the filing of any patents in relation to intellectual property rights assigned to Ncrypt Holdings will be as set out in the agreements relating to the transfer of such intellectual property rights to Ncrypt.

3.4     The Binding Term Sheet refers to a company called "deMorgan" which is also referred to in the Binding Term Sheet as "the Company".

3.5     The parties agree that references to "deMorgan" or "the Company" in the Binding Term Sheet are to be read as references to DeMorgan.

3.6     The Binding Term Sheet refers to a company called "The Sterling Group". The parties agree that references to "The Sterling Group" in the Binding Term Sheet are to be read as references to Calay.

## 4.     Asset Purchase

4.1     The Binding Term Sheet states that:

> ***$1,500,000 Asset Purchase.*** *NewCo will purchase outright all IP and technology in deMorgan ("Company") and all Company subsidiaries and identified entities for $1,500,000. This gets the IP out of danger and puts some capital back into the company. Standard warranties regarding validity and transferability of technology and IP. These funds should first and foremost be used to clear debts to all valid creditors in preparation for eventual subsequent wind-down.*

4.2     The parties agree that their rights and obligations under the clause from the Binding Term Sheet that is set out at clause 4.1 above are to be interpreted as follows and implemented by way of a deed of assignment to be executed on or about the date of this Deed (**IP Assignment Deed**) as well as via the additional steps set out in clause 4.3:

    (a)     The reference to "all Company subsidiaries and identified entities" (together with DeMorgan, the **DeMorgan Vendor Entities**) includes a reference to the following companies:

        (i)     DeMorgan Holdings Pty. Ltd.;

        (ii)     Misfit Games Pty. Ltd.;

        (iii)     Panopticrypt Pty Ltd;

        (iv)     Coin-Exch Pty. Ltd.;

        (v)     Integyrz Pty Ltd;

        (vi)     Pholus Pty. Ltd.;

ATTORNEY'S EYES ONLY                                                                                    DEF_01885002

    (vii)    Cloudcroft Pty. Ltd.;

    (viii)   Chaos and Nonlinear Forecasting in Economics and Finance Pty. Ltd.;

    (ix)    C01N Pty Ltd.;

    (x)    Denariuz Pty. Ltd.;

    (xi)    Interconnected Research Pty. Ltd.;

    (xii)    Zuhl Pty. Ltd.;

    (xiii)   Daso Pty. Ltd.; and

    (xiv)   Hotwire Preemptive Intelligence Pty Ltd (subject to deed of company arrangement) (noting that Hotwire Preemptive Intelligence Pty Ltd will not be party to the IP Assignment Deed but will be dealt with as set out in clause 4.3).

(b)    The reference to "all IP and technology" is a reference to all intellectual property rights owned by the DeMorgan Vendor Entities as well as the "IP and technology" referred to in clause 4.3.

(c)    Each party acknowledges and agrees that:

    (i)    the inclusion of warranties to be given by the DeMorgan Vendor Entities under the IP Assignment Deed has been considered by the DeMorgan Vendor Entities and Ncrypt Holdings;

    (ii)   the appropriateness of giving warranties was considered by the parties in light of the intellectual property rights being transferred; and

    (iii)  as a result, the parties agreed that the IP Assignment Deed would not contain warranties regarding the validity and transferability of intellectual property rights,

and each party consents to this approach.

4.3    The parties agree that DeMorgan will, as part of its obligations under the clause from the Binding Term Sheet that is set out at clause 4.1 above, in due course following entry into this Deed:

(a)    use its best endeavours to procure an assignment of intellectual property rights from Hotwire Preemptive Intelligence Pty Ltd (subject to deed of company arrangement) (ACN 164 068 348) to Ncrypt Holdings as soon as it is able to do so, on terms similar to the terms of the IP Assignment Deed;

(b)    use its best endeavours to procure assignments of intellectual property rights to Ncrypt Holdings from:

    (i)    W&K Info Defense Research LLC (or any related body corporate) with respect to the intellectual property rights that it was required to assign to Craig Steven Wright pursuant to consent orders made by the NSW Supreme Court in Case Number 2013/225983 and Case Number 2013/245661, to the extent not previously assigned; and

    (ii)   Uyen Nguyen, with respect to intellectual property rights in all work she has carried out for, or at the request of, the DeMorgan Vendor Entities; and

ATTORNEY'S EYES ONLY                     DEF_01885003

(c) if required by Ncrypt Holdings, procure that Panopticrypt Pty Ltd:

(i) obtains consent from HighSecured.com of Suites 23, 26, and 27 Dorado Mall Building, Panama City, Panama (**HighSecured**) to novate the agreement known as the "IAAS Master Agreement" between HighSecured and Panopticrypt Pty Ltd as trustee for The Wright Family Trust which commenced on 1 April 2014 (**MSA**), to Ncrypt Holdings or its nominee; and

(ii) upon obtaining the consent required under clause 4.3(c)(i), will enter into an agreement to assign any rights under the MSA to Ncrypt Holdings; and

(d) to the extent that any agreement between a third party and a DeMorgan Vendor Entity relating to "the IP and technology" referred to in the clause from the Binding Term Sheet that is set out at clause 4.1 above is identified to DeMorgan by Ncrypt Holdings for transfer, use its best endeavours to procure an assignment or novation (as requested by Ncrypt Holdings) of any such agreement to Ncrypt Holdings or its nominee.

## 5.   Services Agreement

5.1   The Binding Term Sheet states that:

> ***$4,800,000 Services Agreement.*** *DR TECHNOLOGIES LTD. will enter into a technology development, maintenance and consulting agreement with Company for up to two (2) years on a retainer basis at a monthly retainer rate of $200,000. This service agreement will allow us to re-hire staff and recommence development ASAP. IP and technology development done during this period will accrue under the agreement to DRTL, and development will be exclusive to DRTL.*

5.2   The parties acknowledge that DR Technologies Ltd and DeMorgan entered into a Research, Development and Technical Services Agreement on 29 June 2015 (**DR Technologies Agreement**).

5.3   The parties agree that entry into the DR Technologies Agreement met the parties' obligations under the clause from the Binding Term Sheet that is set out at clause 5.1 above.

5.4   Each party acknowledges and agrees that, on or about the date of this Deed:

(a) DR Technologies Ltd will novate its rights and obligations under the DR Technologies Agreement to Ncrypt Holdings;

(b) Ncrypt Holdings and DeMorgan will amend the assignment of intellectual property rights and related obligations under the DR Technologies Agreement, at the point of novation, to remove any doubt over whether the assignment captures "all IP and technology development done during" the term of the DR Technologies Agreement as required by the clause from the Binding Term Sheet that is set out at clause 5.1 above; and

(c) DR Technologies will assign all intellectual property rights that have previously been assigned to it by DeMorgan pursuant to the DR Technologies Agreement to Ncrypt Holdings,

and each party consents to this occurring.

ATTORNEY'S EYES ONLY                                                                    DEF_01885004

## 6.    Convertible Loan

6.1     The Binding Term Sheet states that:

> **$2,500,000 Convertible Loan.** *NewCo issues a convertible loan for $1,500,000 AU to Company, with an option for up to 1,000,000 more. The conditions of the loan are as follows:*
>
> - *Maximum 3 year term, interest rate of 0.25% per annum*
>
> - *Unless otherwise agreed in writing with NewCo, the loan shall be used only to fund solicitor fees and disbursements associated with the ATO matters, any approved patent application preparation or filings, and any subsequent corporate clean-up, consolidation and wind-down.*
>
> - *NewCo will deposit the loan advance directly into the solicitor's trust account and NewCo shall have the authority to direct the ATO matters, including prosecution or settlement of same.*
>
> - *In consideration of the loan and as interest, 75% of any historical or future amounts recovered from the ATO (GST or R&D credits or other) shall be due to NewCo. These amounts will form the capital basis for the long-term research project (see below). If withholding tax on this interest is payable, it will not be deducted, but grossed up.*
>
> - *NewCo will be entitled to appoint will add up to two additional directors to Company, to be identified by NewCo. Company shall effect the resignations of existing directors only as and if requested by NewCo.*
>
> - *Outstanding loan may be converted to common voting stock of deMorgan at any time at the election of NewCo at a rate of 10 shares per dollar. No new classes of shares may be created, nor new shares issued in deMorgan or any subsidiary of deMorgan during the loan period.*

6.2     The parties agree that their rights and obligations under the clause from the Binding Term Sheet that is set out at clause 6.1 above are to be interpreted as follows and will be implemented in due course by way of formal documentation to be prepared following entry into this Deed (**Convertible Loan Documentation**):

(a)     The convertible loan will take the form of convertible loan notes issued by DeMorgan to Ncrypt Holdings.

(b)     The number "1,000,000" will be interpreted as a reference to $1,000,000 and the period during which the option to acquire a further $1,000,000 of convertible loan notes may be exercised will be the period commencing on midnight on the date of the Convertible Loan Note Documentation and ending on midnight on the date that is three years after the date of the Convertible Loan Documentation.

(c)     The permitted uses of the convertible loan proceeds shall be extended to include paying out the bridge financing as contemplated by the clause from the Binding Term Sheet that is set out at clause 9.1.

(d)     The words "NewCo will deposit the loan advance directly into the solicitor's trust account" will be interpreted as a reference only to that part of the loan advance required by DeMorgan's independent tax counsel to cover legal fees and expenses in relation to claims and proceedings involving the Commissioner of Taxation and

7

DEF_01885005

relating to any tax period or partial period up to and including 31 December 2015 (**Tax Claims**). The remainder of the loan advance will be paid into an account nominated by DeMorgan.

(e)   The words "75% of any historical or future amounts recovered from the ATO (GST or R&D credits or other) shall be due to NewCo" will be interpreted as a reference to 75% of the net amounts recovered from the Commissioner of Taxation following payment or reimbursement of any tax, fines, penalties, interest or other amounts (if any) required to be paid or reimbursed to the Commissioner of Taxation or any other government authorities in relation to any Tax Claims.

(f)   The words "NewCo will be entitled to appoint will add up to two additional directors to Company, to be identified by NewCo" will be interpreted as a reference to NCrypt Holdings being entitled to appoint, remove or replace up to two directors of DeMorgan for so long as it holds any convertible loan notes or ordinary shares issued on conversion of any loan notes.

## 7.   Craig Wright

7.1   The Binding Term Sheet states that:

> **$3,500,000 Rights and Services Agreement.**  *NewCo will enter into a direct exclusive services agreement with Craig as Chief Scientist.*

7.2   The parties agree that their rights and obligations under the clause from the Binding Term Sheet that is set out at clause 7.1 above are to be interpreted and implemented in three parts as follows:

(a)   Craig Wright has entered into an Employment Contract with Tyche Consulting Ltd dated 26 October 2015 at a salary of £160,000 (GBP) per annum. The parties acknowledge and agree that Craig Wright may subsequently become employed by a related body corporate of Ncrypt Holdings;

(b)   Craig Wright will enter into an assignment of intellectual property rights dated on or about the date of this Deed pursuant to which Craig Wright assigns all intellectual property rights that he owns to Ncrypt Holdings, and agrees to procure equivalent assignments from all other entities that he controls as well as all other entities through which he holds a beneficial interest in any intellectual property rights, in return for payment of A$250,000. This will include:

   (i)   procuring the entry by Panopticrypt Pty Ltd into an intellectual property rights assignment as trustee for the Wright Family Trust on or about the date of this Deed; and

   (ii)   procuring the entry by Hotwire Preemptive Intelligence Pty Ltd (subject to deed of company arrangement) (ACN 164 068 348) into the intellectual property rights assignment referred to in clause 4.3(a), if and when it becomes an entity that Craig Wright controls; and

   (iii)   procuring the entry by Panopticrypt Pty Ltd into the IP Assignment Deed,

   with the parties noting that the assignments referred to in (ii) and (iii) also form part of the arrangements referred to out in clause 4 above and the payment made by Ncrypt Holdings as referred to in clause 4.1 will include an amount for the intellectual property rights assigned pursuant to the agreements referred to in (ii) and (iii);

ATTORNEY'S EYES ONLY                                                                       DEF_01885006

(c)     Craig Wright will also, in due course, enter into an additional services agreement with Ncrypt Holdings (or its nominee) for completion of certain services relating to recounting and transcribing his history (with the services scope to be defined by Ncrypt Holdings (or its nominee) in more detail) in return for payment of A$750,000 in total,

together the **Craig Wright Documentation**.

7.3     The parties agree that entry into the Craig Wright Documentation in the manner set out above will fulfil the parties' obligations under the clause from the Binding Term Sheet that is set out at clause 7.1 above.

## 8.    New Research Facility

8.1     The Binding Term Sheet states that:

> **New Research Facility.** *Going forward, set up a new company as a sub of NewCo in some favourable jurisdiction where talent is available for the R&D. This entity can employ the team as a service provider to NewCo, with the IP vesting back to NewCo.*

8.2     The parties acknowledge and agree that if and when Ncrypt Holdings decides to set up a new company for R&D purposes (which the parties agree Ncrypt Holdings may set up without restriction, in any way it chooses) and nominates that entity to DeMorgan, DeMorgan must reasonably assist with the process of ensuring that all relevant individuals become employed or otherwise engaged by that entity.

## 9.    Bridge financing

9.1     The Binding Term Sheet states that:

> **Bridge Financing.** *Prior to the preparation of formal agreements for the Convertible Loan above, bridge financing will be made available through FIRSTLINE CONSULTANTS LTD. This loan will be paid out immediately with the proceeds of the final Convertible Loan advances once such formal agreement is in place.*

9.2     The parties acknowledge that Firstline Consultants Ltd and DeMorgan entered into a Credit Facility Agreement effective 29 June 2015 (**Credit Facility Agreement**).

9.3     The parties agree that entry into the Credit Facility Agreement met the parties' obligations under the clause from the Binding Term Sheet that is set out at clause 9.1 above.

## 10.    Notices

### Requirements

10.1    All notices must be:

(a)     in legible writing and in English;

(b)     addressed to the recipient at the address set out below or to such other address as that party may notify in writing to the other parties:

**to DeMorgan:**

9

                                                                                   DEF_01885007

|  |  |
|---|---|
| Address: | 502, Level 5, 32 Delhi Road, North Ryde NSW 2113 |
| Attention: | The Directors |

**to Calay :**

|  |  |
|---|---|
| Address: | 12/F Frabelle Business Centre, No. 11 Rada St. Lagaspi Vill. Makati City |
| Attention: | Stefan Matthews |

**to Craig Wright:**

|  |  |
|---|---|
| Address: | ████████████████████ |
| Attention: | Craig Wright |

(c)   signed by the party, or where the sender is a company by an authorised officer of that company or under the common seal of that company; and

(d)   sent to the recipient by hand, prepaid post (airmail if to or from a place outside Australia).

**Receipt**

10.2   Without limiting any other means by which a party may be able to prove that a notice has been received by another party, a notice will be deemed to be duly received:

(a)   if sent by hand, when left at the address of the recipient; or

(b)   if sent by pre-paid post, three days (if posted within Australia to an address in Australia) or seven days (if posted from one country to another) after the date of posting,

but if a notice is served by hand or via email on a day which is not a Business Day, or after 5:00 pm (recipient's local time) on a Business Day, the notice is deemed to be duly received by the recipient at 9:00 am (recipient's local time) on the first Business Day after that day.

## 11.   General provisions

**Entire agreement**

11.1   This Deed and any other documents referred to in this Deed or executed in connection with this Deed is the entire agreement of the parties about the subject matter of this Deed and supersedes all other representations, negotiations, arrangements, understandings or agreements and all other communications. No party has entered into this Deed relying on any representations made by or on behalf of the other, other than those expressly made in this Deed.

10

### Further assurances

11.2   Each party must, at its own expense, whenever reasonably requested by the other party, promptly do or arrange for others to do, everything reasonably necessary or desirable to give full effect to this Deed and the transactions contemplated by this Deed.

### Costs

11.3   Each party must pay its own costs in respect of this Deed and the documents and transactions contemplated by this Deed, except that DeMorgan must pay all stamp duty chargeable on this Deed, and any other documents contemplated by this Deed.

### No merger

11.4   The warranties, other representations and promises by the parties in this Deed are continuing and will not merge or be extinguished on completion of this Deed.

### Assignment

11.5   A party must not assign or otherwise transfer, create any charge, trust or other interest in, or otherwise deal in any other way with any of its rights under this Deed without the prior written consent of the other parties.

### Moratorium legislation

11.6   To the extent permitted by law, a provision of a law is excluded if it does or may, directly or indirectly:

(a)   lessen or vary in any other way a party's obligations under this Deed; or

(b)   delay, curtail or prevent or adversely affect in any other way the exercise by a party of any of its rights, remedies or powers under this Deed.

### Invalid or unenforceable provisions

11.7   If a provision of this Deed is invalid or unenforceable in a jurisdiction:

(a)   it is to be read down or severed in that jurisdiction to the extent of the invalidity or unenforceability; and

(b)   that fact does not affect the validity or enforceability of that provision in another jurisdiction or the remaining provisions.

### Waiver and exercise of rights

11.8   A provision of or of a right under this Deed may not be waived or varied except in writing signed by the person to be bound.

### Amendment

11.9   This Deed may be amended only by a document signed by all parties.

### Counterparts

11.10   This Deed may be signed in counterparts and all counterparts taken together constitute one document.

ATTORNEY'S EYES ONLY                                                                DEF_01885009

### Rights cumulative

11.11   The rights, remedies and powers of the parties under this Deed are cumulative and do not exclude any other rights, remedies or powers.

### Consents and approvals

11.12   A party may give its approval or consent conditionally or unconditionally or withhold its approval or consent in its absolute discretion unless this Deed expressly provides otherwise.

### Successors and assigns

11.13   This Deed is binding on, and has effect for the benefit of, the parties and their respective successors and permitted assigns.

### Governing law

11.14   This Deed is governed by the laws of New South Wales.

### Jurisdiction

11.15   Each party irrevocably and unconditionally:

(a)   submits to the non-exclusive jurisdiction of the courts of New South Wales; and

(b)   waives, without limitation, any claim or objection based on absence of jurisdiction or inconvenient forum.

### Service of process

11.16   Each party agrees that a document required to be served in proceedings about this Deed may be served:

(a)   by being delivered to or left at its address for service of notices under clause 10; or

(b)   in any other way permitted by law.

ATTORNEY'S EYES ONLY

DEF_01885010

## Execution

**Executed** as a deed.

**Signed sealed and delivered**
by **DeMorgan Limited**
in accordance with section 127 of the
*Corporations Act 2001* by 2 directors:

_____
Signature of director

Allan Granger
_____
Name of director

_____
Signature of director

David Jensen
_____
Name of director

**Signed sealed and delivered**
by an authorized signatory on behalf of
**Calay Holdings, Inc**

_____
Signature of authorized signatory

Stefan Matthews
_____
Name of authorized signatory

**Signed sealed and delivered**
by **Craig Steven Wright**
in the presence of:

_____
Signature of witness

_____
Signature of **Craig Steven Wright**

_____
Name of witness (please print)

ATTORNEY'S EYES ONLY                                                     DEF_01885011

## Execution

**Executed** as a deed.

**Signed sealed and delivered**
by **DeMorgan Limited**
in accordance with section 127 of the
*Corporations Act 2001* by 2 directors:

_____          _____
Signature of director                                     Signature of director


Allan Granger                                                 David Jensen
_____          _____
Name of director                                          Name of director

**Signed sealed and delivered**
by an authorized signatory on behalf of
**Calay Holdings, Inc**



_____
Signature of authorized signatory


Stefan Matthews
_____
Name of authorized signatory



**Signed sealed and delivered**
by **Craig Steven Wright**
in the presence of:

*Bethan. A. Lukey*
_____          _____
Signature of witness                                      Signature of **Craig Steven Wright**

BETHAN  LUKEY
_____
Name of witness (please print)

2654428-v4\SYDDMS                                     13                          Implementation Deed

**Annexure 1**

**Binding Term Sheet**

Implementation Deed
Final

ATTORNEY'S EYES ONLY

DEF_01885013

## SUMMARY OF AGREED TERMS

### PHASE I – STABILIZE AND CLEAN UP

- **$1,500,000 Asset Purchase.** NewCo will purchase outright all IP and technology in deMorgan ("*Company*") and all Company subsidiaries and identified entities for $1,500,000[1]. This gets the IP out of danger and puts some capital back into the company. Standard warranties regarding validity and transferability of technology and IP. These funds should first and foremost be used to clear debts to all valid creditors in preparation for eventual subsequent wind-down.

- **$4,800,000 Services Agreement.** DR TECHNOLOGIES LTD. will enter into a technology development, maintenance and consulting agreement with Company for up to two (2) years on a retainer basis at a monthly retainer rate of $200,000. This service agreement will allow us to re-hire staff and recommence development ASAP. IP and technology development done during this period will accrue under the agreement to DRTL, and development will be exclusive to DRTL.

- **$2,500,000 Convertible Loan.** NewCo issues a convertible loan for $1,500,000 AU to Company, with an option for up to 1,000,000 more. The conditions of the loan are as follows:

  - Maximum 3 year term, interest rate of 0.25% per annum

  - Unless otherwise agreed in writing with NewCo, the loan shall be used only to fund solicitor fees and disbursements associated with the ATO matters, any approved patent application preparation or filings, and any subsequent corporate clean-up, consolidation and wind-down.

  - NewCo will deposit the loan advance directly into the solicitor's trust account and NewCo shall have the authority to direct the ATO matters, including prosecution or settlement of same.

  - In consideration of the loan and as interest, 75% of any historical or future amounts recovered from the ATO (GST or R&D credits or other) shall be due to NewCo. These amounts will form the capital basis for the long-term research project (see below). If withholding tax on this interest is payable, it will not be deducted, but grossed up.

---

[1] All amounts herein are denominated in AUD unless otherwise indicated.

ATTORNEY'S EYES ONLY

o   NewCo will be entitled to appoint will add up to two additional
directors to Company, to be identified by NewCo. Company shall
effect the resignations of existing directors only as and if requested by
NewCo.

o   Outstanding loan may be converted to common voting stock of
deMorgan at any time at the election of NewCo at a rate of 10 shares
per dollar. No new classes of shares may be created, nor new shares
issued in deMorgan or any subsidiary of deMorgan during the loan
period.

## PHASE II – GOING FORWARD

* **NewCo.** NewCo should exist in a tax-efficient jurisdiction and is intended to
be the repository for IP once the asset purchase is completed and for all new
development and technology. Patents for all existing or subsequent IP should
be filed by NewCo.

* **$3,500,000 Rights and Services Agreement.** NewCo will enter into a direct
exclusive services agreement with Craig as Chief Scientist.

* **New Research Facility.** Going forward, set up a new company as a sub of
NewCo in some favorable jurisdiction where talent is available for the
R&D. This entity can employ the team as a service provider to NewCo, with
the IP vesting back to NewCo.

## INTERIM FINANCING OF LEGAL PROCESS

* **Bridge Financing.** Prior to the preparation of formal agreements for the
Convertible Loan above, bridge financing will be made available through
FIRSTLINE CONSULTANTS LTD. This loan will be paid out immediately
with the proceeds of the final Convertible Loan advances once such formal
agreement is in place.



IN WITNESS WHEREOF, the parties hereto have caused this letter of intent to be signed and sealed as 29 June 2015.

**DeMORGAN LTD.**

per

Signature

Ramona Watt

Name

29/6/15

Date

**THE STERLING GROUP**

per

Signature

STEFAN MATTHEWS

Name

29 JUNE 2015

Date

**DR CRAIG WRIGHT**

Signature

29 Jun 15

Date

ATTORNEY'S EYES ONLY

DEF_01885016

**Annexure 2**

**Prior Term Sheet**

ATTORNEY'S EYES ONLY                                                          DEF_01885017

## SUMMARY OF AGREED TERMS

### PHASE I – STABILIZE AND CLEAN UP

* **$1,500,000 Asset Purchase.** NewCo will purchase outright all IP and technology in deMorgan ("*Company*") and all Company subsidiaries and identified entities for $1,500,000[1]. This gets the IP out of danger and puts some capital back into the company. Standard warranties regarding validity and transferability of technology and IP. These funds should first and foremost be used to clear debts to all valid creditors in preparation for eventual subsequent wind-down.

  [Notes: This immediately gets the IP out of danger, should the ATO process not conclude as intended. This also provides the first of two significant arguments in the ATO matters, demonstrating that the development costs to date were indeed commercially viable.]

* **$4,800,000 Services Agreement.** DR TECHNOLOGIES LTD. will enter into a technology development, maintenance and consulting agreement with Company for up to two (2) years on a retainer basis at a monthly retainer rate of $200,000. This service agreement will allow us to re-hire staff and recommence development ASAP. IP and technology development done during this period will accrue under the agreement to DRTL, and development will be exclusive to DRTL.

  [Notes: Serves three purposes. Firstly, this provides a stable source of funding for the operation during this interstitial period. Secondly, by establishing a long-term client relationship such as this, the ATO cannot take the position that this is not an "enterprise". Finally, this ensures that any new IP or technology developed during this subsequent period is similarly protected and vests in DRTL]

* **$2,500,000 Convertible Loan.** NewCo issues a convertible loan for $1,500,000 AU to Company, with an option for up to 1,000,000 more. The conditions of the loan are as follows:

  o Maximum 3 year term, interest rate of 0.25% per annum
  o Unless otherwise agreed in writing with NewCo, the loan shall be used only to fund solicitor fees and disbursements associated with the ATO matters, any approved patent application preparation or filings, and any

---

[1] All amounts herein are denominated in AUD unless otherwise indicated.



DEF_01885018

consulting, etc.) can be contracted back to NewCo by way of services agreements, whether to arms-length third parties or internally by way of transfer pricing arrangements. NewCo will be initially capitalized to $1,000,000 USD by the investor, then subsequent R&D and operations will be initially funded by the payment received if the R&D claims in Company are successful or, if not, by subsequent direct cash infusion by investor.]

* **Equity in NewCo.** Upon incorporation, NewCo will immediately grant to the Wrights with 37% of issued and outstanding voting common stock. This 37% holding shall be subject to non-dilution protections and NewCo shall not issue common stock or voting stock of any kind in NewCo, unless otherwise expressly agreed in writing by the Wrights. These shares shall be held in a blind trust for the Wrights or for such holding vehicle the Wrights shall nominate until such time as Company and all subsidiaries of Company are wound up and all regulatory or tax matters have been finalized properly.

  [Notes: The intention is that, once the Australian companies are properly wound down, that the Wrights own a full 37% equity stake in this entity. Directorship appointments should be discussed, both internal and external, but this has not been canvassed here. The incremental 2% equity (from 35% to 37%) shall be made available to the Wrights to make equity in their vehicle available to key personnel or staff.]

* **$3,500,000 Rights and Services Agreement.** NewCo will enter into a direct exclusive services agreement with Craig as Chief Scientist.

  [Notes: This would consist of a $1,000,000 initial rights payment, followed by an annual services arrangement for R&D of $500,000 for five years, and renewable for subsequent periods. This would provide supplemental income to the Wrights and would cover any IP developed outside of Company, and would also grant NewCo the exclusive rights to Craig's life story for subsequent publication or release (suggest NewCo retain a researcher and ghost writer to begin background research and preparation, as precautionary measure).]

* **New Research Facility.** Going forward, set up a new company as a sub of NewCo in some favorable jurisdiction where talent is available for the R&D. This entity can employ the team as a service provider to NewCo, with the IP vesting back to NewCo.



ATTORNEY'S EYES ONLY

## INTERIM FINANCING OF LEGAL PROCESS

- **Bridge Financing.** Prior to the preparation of formal agreements for the Convertible Loan above, bridge financing will be made available through FIRSTLINE CONSULTANTS LTD. This loan will be paid out immediately with the proceeds of the final Convertible Loan advances once such formal agreement is in place.

IN WITNESS WHEREOF, the parties hereto have caused this letter of intent to be signed and sealed as 29 June 2015.

**DeMORGAN LTD.**

_per_

Signature

Ramona Watts

Name

29/6/15

Date

**THE STERLING GROUP**

_per_

Signature

STEFAN MATTHEW.

Name

29 JUNE 2015

Date

**DR CRAIG WRIGHT**

Signature

29 Jun 15

Date

ATTORNEY'S EYES ONLY

DEF_01885020