UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC

    plaintiffs,
v.                                                                                                  Case No. 9:18-cv-80176 (BB/BR)

CRAIG WRIGHT,

    defendant.
_____/

**DR. CRAIG WRIGHT'S RESPONSE IN OPPOSITION TO
W&K INFO DEFENSE LLC'S MOTION FOR ENTRY OF TAXABLE COSTS OF
LITIGATION AND SUPPORTING MEMORANDUM OF LAW**

This Court should deny or significantly reduce the taxable costs requested by W&K Info Defense Research, LLC (W&K) because W&K attempts to recover costs that do not relate to W&K's claims, are excessive, and are not permitted by law.

### I.     INTRODUCTION

Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorneys' fees – should be allowed to the prevailing party." This rule, while establishing a presumption that a prevailing party receives costs, also vests the district court with discretion to deny such costs. *See Delta Air Lines, Inc. v. Aug.*, 450 U.S. 346, 353 (1981) (noting that "the drafters of the Federal Rules intended . . . affirmatively to grant the district judge discretion to deny costs to the prevailing party."); *Head v. Medford*, 62 F.3d 351, 354 (11th Cir. 1995) (holding that the district court has discretion to deny a prevailing party costs, but if it exercises such discretion, it must give a reason for the denial of costs); *Myers v. Central Fla. Invests., Inc.*, 2008 WL 5100531, at *2 (M.D. Fla. 2008) (in declining to award costs, the court noted "[a]lthough there is a presumption

that costs should be awarded to the prevailing party, the presumption is not absolute."). In addition, a court may only tax costs as authorized by statute. *See U.S.E.E.O.C. v. W&O. Inc.*, 213 F. 3d 600, 620 (11th Cir. 2000).

As more particularly set forth herein, W&K attempts to seek costs which do not relate to W&K's claims, are excessive, and are not permitted by law. Although W&K may be entitled to an award of costs because it prevailed on its conversion claim against Dr. Wright, W&K does not have an unfettered right to seek all costs. Indeed, W&K is limited to the costs permitted under Federal Rule of Civil Procedure 54(d), 28 U.S.C. § 1920, and 28 U.S.C. § 1821.

For these reasons, the Court should deny or significantly reduce the taxable costs requested by W&K.

## II. ARGUMENT

### A. W&K Failed to Segregate Costs Incurred in Prosecuting its Claims

In this case, both the Estate of David Kleiman (the "Estate") and W&K brought claims against Dr. Wright. Although over a dozen claims were brought by both parties - including claims for punitive damages - the Estate failed to prevail on *any* of its claims, and W&K was successful only on its claim for conversion of intellectual property.

W&K is attempting to hold Dr. Wright liable for every expense that was incurred not only by W&K, but also by the Estate, which is not a prevailing party. Indeed, in its Bill of Costs, W&K makes no effort to isolate or apportion the costs incurred with respect to prosecuting its own claims. Instead W&K seeks costs incurred by both W&K and the Estate, without making any showing that the claims of *both* parties are so intertwined that full payment for both parties' costs is warranted. *Cf. MacNeil v. Yates*, 2010 WL 5491234, at *4 (M.D. Fla. 2010) (Denying fees and costs under 17 U.S.C. § 505 as overbroad where the moving party "makes no attempt to

limit the fees sought, but appears to seek all fees and costs incurred, without any attempt to identify or segregate fees incurred solely due to this count or any showing that all of the claims of the parties were so interrelated that full recompense for the entire litigation is warranted.").[1]

It is undisputed that the Estate is not a prevailing party and, therefore, is not entitled to an award of its taxable costs. The Estate's claims that there was allegedly an oral partnership between David Kleiman and Dr. Wright to create the Bitcoin/Blockchain protocol and related intellectual property beginning in 2008 and to mine bitcoins beginning in 2009 is distinct from W&K's claims that Dr. Wright allegedly converted intellectual property and bitcoins that belonged to W&K in 2013.[2] As such, W&K and the Estate's claims are not inextricable intertwined and there are costs that can and should be segregated.

1. *Deposition Transcript Costs that Should Be Denied*

W&K includes in its Bill of Costs the costs for several deposition transcripts which are unrelated to its claims against Dr. Wright. In its motion in support of its Bill of Costs, W&K merely lists out the transcript costs incurred without specifying how these costs are related to its claims against Dr. Wright as it is required to do. *See, e.g., Rubinstein v. Keshet Inter Vivos Trust, et al.*, 2019 WL 8275157, at *5 (S.D. Fla. 2019) ("In determining whether to award costs for deposition transcripts, a reoccurring problem arises in Plaintiff's failure to specify how these

---

[1] Plaintiffs cite to *Brown Jordan Int'l, Inc. v. Carmicle*, 2017 WL 5633312, at *7 (S.D. Fla 2017) for the proposition that the Court should make a full award of costs and not analyze whether particular costs are attributable to certain claims. W&K's reliance on *Brown Jordan*, however, is misplaced because in *Brown Jordan* the claims at issue were only being brought by one party. Here, W&K is not only attempting to recover costs incurred in bringing its claims but also the costs incurred in prosecuting the Estate's claims.

[2] In fact, the claims in this case are separable in two ways: (1) by party; and (2) by time period (the Estate's claims began in 2008 and W&K's claims could not have begun until February 2011 when W&K was established). Yet, W&K seeks all costs regardless of whether they were really incurred on behalf of W&K or the Estate.

3

costs are germane against the Yehudas. Plaintiffs appear to assume the Court will rummage through the record to determine how and to what extent the deposition was directed against the Yehudas. But this is a task that Plaintiffs should have completed before they filed their motion . . . . We therefore recommend that . . . Plaintiffs' request be reduced in half . . . .").

More specifically, W&K seeks transcript costs for the following depositions, which are not germane to its claims:

| Deponent | Amount |
|---|---|
| David Kuharcik | $385.70 |
| Andreas Antonopoulos | $270 |
| Andreas Antonopoulos | $2,169.70 |
| William Nicholson | $417.50 |
| William Nicholson | $918.50 |
| Gavin Andresen | $1,151.25 |
| Gavin Andresen | $2,233.70 |
| Gavin Andresen | $538.75 |
| Gavin Andresen | $600.75 |
| Andrew O'Hagan | $1,232.00 |
| Andrew O'Hagan | $2,228.55 |
| William Nicholson | $138.75 |
| Stefan Boedeker | $1,393.55 |
| Andreas Antonopoulos | $733.70 |
| Bill Choi | $2,418.45 |
| Kevin Madura | $2,095.90 |
| Gordon Klein | $1,417.50 |
| | **TOTAL = $20,344.25** |

David Kuharcik was David Kleiman's accountant and discussed if there was any evidence in David Kleiman's finances that David Kleiman and Dr. Wright were ever partners. Andreas Antonopoulos is a bitcoin historian and provided expert testimony regarding the history of Bitcoin and how it was developed. William Nicholson was an expert hired by Dr. Wright, who

4

discussed David Kleiman's financial situation and how David Kleiman was in debt at the time of his death. Gavin Andresen's testimony related to the identity of Satoshi Nakamoto, the alias used by the inventor of Bitcoin. Andrew O'Hagan is a journalist who wrote an inadmissible and sensational article regarding Dr. Wright's invention of the Bitcoin-Blockchain protocol, his alias as Satoshi Nakamoto, and speculated on David Kleiman's contributions to the creation of the Bitcoin-Blockchain protocol. Stefan Boedeker, one of Plaintiffs' expert witnesses, who was never called at trial, opined as to gaps occurring in bitcoin transaction data from 2009-2010, before W&K was even established. Bill Choi was one of Dr. Wright's unchallenged proposed experts whose expert report and deposition explained that picking a mere spot price of Bitcoin on a particular day and multiplying it by an amount of bitcoins is not an appropriate or accurate valuation method. Kevin Madura was another of Dr. Wright's expert witnesses, who was offered to rebut Andreas Antonopoulos and to discuss David Kleiman's lack of credentials or background to have significantly participated in the creation and development of the Bitcoin-Blockchain. Gordon Klein was an expert proffered by Plaintiffs to offer testimony related to whether there was an oral partnership between Dr. Wright and David Kleiman, and his opinion testimony was excluded by the Court. [D.E. 622 at 50-57].

Indeed, none of these depositions relate in any way to the claims brought by W&K or W&K's intellectual property that the jury determined was converted by Dr. Wright. Instead, these depositions and hearings relate directly to the Estate's claims. As such, these costs, totaling $20,344.25, should not be awarded to W&K.[3]

---

[3] To the extent the Court finds that any of these deponents' testimony relates to W&K's claims, Dr. Wright requests that the Court reduce the transcript cost for such witness pro rata by plaintiff, thus, by 50%.

### B. W&K Should Not Be Awarded any Witness Costs

In its Bill of Costs, W&K requests $365,563.13 in witness costs for nine witnesses, of which *only one* testified live at trial. These costs are not only excessive and unreasonable, but also not permitted under federal law. As such, the Court should reject W&K's claims for witness costs in its entirety.

### 1. W&K Fails to Itemize Its Costs

As shown below, W&K does not attempt to itemize its witness fees.

AO 133 (Rev. 12/09) Bill of Costs

**UNITED STATES DISTRICT COURT**

Witness Fees (computation, cf. 28 U.S.C. 1821 for statutory fees)

| NAME, CITY AND STATE OF RESIDENCE | ATTENDANCE | | SUBSISTENCE | | MILEAGE | | Total Cost Each Witness |
|---|---|---|---|---|---|---|---|
| | Days | Total Cost | Days | Total Cost | Miles | Total Cost | |
| Brendan Jay Sullivan | | | | | | | $60.00 |
| Eric Stouch, Manheim, PA | | | | | | | $48.00 |
| Tim Cindric, Mount Airy, MD | | | | | | | $110.00 |
| Deborah Kobza, Saint Augustine, FL | | | | | | | $90.00 |
| John Doe | | | | | | | $140.00 |
| Jimmy Nguyen, Seattle, WA | | | | | | | $50.00 |
| Patrick Paige, Lake Worth, FL | | | | | | | $115.00 |
| Ramona Watts, High Court of England and Wales | | | | | | | $192,388.68 |
| Andrew O'Hagan, High Court of England and Wales | | | | | | | $172,561.45 |
| | | | | | | TOTAL | $365,563.13 |

D.E. 872-1 at 3. W&K also fails to provide a single receipt or invoice in support of its request. As such, it is impossible for the Court to review and determine whether the costs requested are statutorily authorized. *See Korsing v. United States*, 2019 WL 2255577, at *4 (S.D. Fla. 2019) (While witness fees are taxable costs under 28 U.S.C. § 1920, recovery of witness fees is limited by 28 U.S.C. § 1821, which limits the fee to $40 per day plus a travel allowance.). "The party

seeking costs bears the burden of submitting a request for expenses that enables the court to determine what expenses were incurred and whether those expenses meet the proof of necessity and reasonableness under 28 U.S.C. § 1920." *Id.* at *2. Due to W&K's failure to substantiate its request with proper evidence, the Court should reduce W&K's witness costs to the statutory limit of $40.00 per witness pursuant to 28 U.S.C. § 1821.

  2. *W&K Cannot Shift Fees and Costs It Incurred in Deposing Foreign Witnesses*

W&K requests that Dr. Wright pay it £270,063.11 (or $364,950.13 USD) in "out-of-pocket costs" it claims to have incurred in securing the deposition testimony of Ramona Watts and Andrew O'Hagan in the United Kingdom ("UK"). Fist, W&K mischaracterizes these costs as "out-of-pocket" costs. Ms. Watts and Mr. O'Hagan have not been paid the majority of what the UK courts ordered. *See* D.E. 872-6 and D.E. D872-7. Despite having agreed to pay these witnesses' costs as required under UK law, plaintiffs have recognized their nonpayment and acknowledge that future payments are unlikely. *See* D.E. 806 at 4 ("In any event, there is nothing to 'compel' here. O'Hagan has a judgment against these two Plaintiffs, which he now purports to have domesticated. However, at this time, it appears that neither of the Plaintiffs have any assets from which the Judgment can be paid."). To call these unpaid judgments against W&K "out-of-pocket" costs is disingenuous.

Second, costs for "securing deposition testimony" are not within the category of recoverable witness costs allowed by Sections 1920 and 1821. In addition, W&K offers no explanation of what "securing" deposition testimony means, no itemization of costs, and no case law to support their position that the UK judgments against it are now taxable against Dr. Wright.

Even if W&K's unsupported and generalized costs could be taxable against Dr. Wright, W&K would only be entitled to the statutorily set amount of "$40 per day for each day's attendance," plus a travel allowance at the statutorily set rate. 28 U.S.C. § 1821; *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) (Section 1821 limits the amount the prevailing party can recover for witness related costs, and "absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in" those statutes.); *Goodwin Bros. Leasing v. Citizens Bank*, 587 F.2d 730, 735 (5th Cir. 1979) ("Section 1821 limits the amount of witness fees and makes no provision for the trial court's award to exceed that amount."); *Castillo v. Teledyne Cont'l Motors, Inc.*, 2011 WL 1343051, at *3 (S.D. Fla. 2011), report and recommendation adopted, 2011 WL 1337232 (S.D. Fla. 2011) (denying $105,341.21 in witness fees that exceeded the statutory limit). It is clear that W&K's witness fee computations for Ms. Watts ($192,388.68) and Mr. O'Hagan ($172,561.45) greatly exceed the statutory limit of $40.00 per day plus travel allowances.[4] Because "nothing over the statutory amount is recoverable," W&K's request for costs in the amount of $364,950.13 should be denied. *Crawford Fitting*, 482 U.S. at 445.

---

[4] The costs awarded in the UK judgments are so high because under UK law the Court is permitted to award as costs attorneys' fees incurred by the witness in challenging and responding to the witness subpoena. *See JH Shannon v Country Casuals Holdings Plc* (1997) 94(20) L.S.G. 37 (where a witness had been served with a witness summons to produce documents, he was entitled not only to conduct money, but also to the costs incurred in complying with the witness summons, which could include the cost of taking legal advice if it was reasonable for the witness to have done so). On the other hand, U.S. law explicitly prohibits the recovery of attorneys' fees as a taxable cost. *See* Fed. R. Civ. P. 54 ("[C]osts – ***other than attorneys' fees*** – should be allowed to the prevailing party.") (emphasis added). As such, W&K is not entitled to seek the recovery of the UK judgments as witness costs under U.S. law.

Plaintiffs have not pointed to any fee shifting statute which would allow the taxing of W&K's UK judgments against Dr. Wright.[5] To the contrary, Congress "'meant to impose rigid controls on cost-shifting in federal courts' and 'made its intent plain in its detailed treatment of witness fees.'" *Denny v. Westfield State Coll.*, 880 F.2d 1465, 1467 (1st Cir. 1989) (quoting *Crawford Fitting Co.*, 482 U.S. at 444). As such, "absent *explicit* statutory or contractual authorization" federal courts should strictly adhere to the statutory limits set out in Section 1821. *Id.* at 445 (emphasis in original).[6]

### 3. W&K Cannot Seek Costs for Witnesses that Were Never Deposed

W&K seeks witness costs in the amount of $218.00 for Brendan Sullivan, Eric Stouch, and Tim Cindric, even though they were never deposed and never appeared at trial. W&K fails to provide any explanation as to why it should be entitled to these costs. As such, W&K should not be able to recover any witness costs for Brendan Sullivan, Eric Stouch, or Tim Cindric.

---

[5] In fact, W&K accepted and agreed that the courts of England and Wales have jurisdiction to assess the costs related to the subpoenas served on Ms. Watts and Mr. O'Hagan. *See Skeleton Argument of Ira Kleiman and W&K Defense Research, LLC* at n.4, submitted in the case styled *Kleiman, et al. and Watts*, Claim No. CL-2019-000696, in the High Court of Justice of England and Wales, attached hereto as **Exhibit A**. Moreover, W&K also agreed to pay these reasonable costs. *See, e.g., id.* at pp. 13-14, ¶ 41 (a).

[6] As the Court has already recognized regarding Mr. O'Hagan's UK judgment against W&K,

> the discovery dispute, the reimbursement agreement between Plaintiffs and O'Hagan, and the judgment that O'Hagan ultimately secured, were litigated in the UK and are governed by British law. *See* ECF No. [768] at 2. As such, Court lacks the authority under Rule 45 to order Plaintiffs to reimburse O'Hagan for his expenses.

D.E. 873 at 4. Just as no federal statute authorizes the enforcement of the agreement between Mr. O'Hagan and W&K in federal court in the United States, no federal statute authorizes plaintiffs to tax Dr. Wright for W&K's debt to Ms. Watts and Mr. O'Hagan under the UK judgments.

9

### C. Investigation Fees Are Not Recoverable

W&K seeks the following investigation fees as part of its service of process fees:

| Witness | Investigation Fee |
|---|---|
| Eric Stouch | $292.50 |
| Tom Cindric | $390.00 |
| Michelle Seven | $390.00 |
| Dustin Trammell | $292.50 |
| Jimmy Nguyen | $487.50 |
| John Woodstock | $195.00 |
| John Doe | $195,00 |
| | **TOTAL: $2,242.50** |

Investigation fees, however, are not recoverable under 28 U.S.C. § 1920. *See Korsing*, 2019 WL 2255577, at *3 ("[I]nvestigation fees are not enumerated in 28 U.S.C. § 1920", and, therefore, are not recoverable). Accordingly, these costs should not be awarded to W&K.

### D. W&K's Service of Process Costs Should be Reduced

W&K seeks costs for service of process fees that are unreasonable and excessive. In addition, W&K provides no explanation as to why such costs are necessary. As such, the Court should reduce the amount of service of process costs requested by W&K.

10

1. *W&K Is Not Entitled to Service of Process Fees for Depositions Never Taken*

W&K attempts to recover service of process fees for the following depositions that it never took:

| Witness | Amount |
|---|---|
| Brendon Sullivan | $639.50 |
| Eric Stouch | $778.25 |
| Tom Cindric | $916.00 |
| Michelle Seven | $214.50 |
| Dustin Trammell | $214.50 |
| | **TOTAL: $2,762.75** |

"Courts generally qualify the recovery of fees for service of subpoenas to those issued to witnesses whose appearances a party 'could have reasonably believed was at least partially necessary to the litigation.'" *Rubinstein*, 2019 WL 8275157, at *3 (S.D. Fla 2019). Here, W&K did not to proceed with taking these depositions, and, therefore, these depositions could not reasonably have been necessary to the litigation. Therefore, W&K should not be awarded these costs.

2. *W&K's Service of Process Fees Are Excessive*

The costs for service of process requested by W&K are excessive and unreasonable. Private process fees may be taxed but must not exceed the amount charged by the U.S. Marshal, pursuant to 28 C.F.R. § 0.114. W&K's process server fees far exceed the $65.00 amount charged by the U.S. Marshal. 28 C.F.R. § 0.114(3). For example, W&K attempts to recover $639.50 for service on Brendan Jay Sullivan, $778.25 for service on Eric Stouch, and $916.00 for service on Tom Cindric. W&K's service of process fees clearly exceed the amount permitted by law. As such, the Court should reduce W&K's service of process costs to a reasonable amount.

11

### E. W&K Cannot Seek Costs for Fees that Have Already Been Paid by Dr. Wright

W&K included in its Bill of Costs, costs that were only partially incurred by or already paid to W&K. For example, W&K requests $387.20 for the March 7, 2019 hearing transcript, $598.95 for the March 26, 2019 hearing transcript, and $1,938.75 for the August 5, 2019. The parties agreed to split the cost for these transcripts, and in fact did so. *See* **Composite Exhibit B**. W&K, however, has included the full amount in its Bill of Costs rather than requesting only the split cost.

In addition, W&K already recovered as part of the Court's Order Granting in Part and Denying in Part Plaintiffs' Corrected Motion for Attorneys' Fees the costs for the August 5, 2019 hearing transcript ($1,938.75)[7] and the June 28, 2019 hearing transcript ($1,531.80).[8] [D.E. 429; D.E. 346-3]. As such, the Court should reduce W&K's costs in the amount of $3,963.55 (which is equivalent to half the cost of the March 7, 2019 hearing transcript, half the cost of the March 26, 2019 hearing transcript, the full cost of the August 5, 2019 hearing transcript, and the full amount of the June 28, 2019 hearing transcript).

---

[7] Dr. Wright agreed to split the cost of the August 5, 2019 hearing transcript and paid plaintiffs $987.00. *See* Composite Exhibit B at p. 7. Dr. Wright also paid for the same hearing transcript in the amount of $1,680.00 as part of the Court's Order Granting in Part and Denying in Part Plaintiffs' Corrected Motion for Attorneys' Fees and Costs. [D.E. 429; D.E. 346-3]. As such, Dr. Wright has already paid $2,667.00 for the August 5, 2019 hearing transcript, and yet W&K seeks payment again.

[8] In D.E. 346-3, there is an apparent typo as to the date of this hearing transcript. The date is listed in D.E. 346-3 as June 2, 2019, but the amount and court reporter are the same as the June 28, 2019 hearing transcript requested in W&K's Bill of Costs.

12

### III. CONCLUSION

For all the good and sufficient reasons set forth above, the Court should deny or at least significantly reduce the taxable costs requested by W&K.

Dated: February 3, 2022

Respectfully submitted,

By: *s/Amanda L. Fernandez*
ANDRES RIVERO
Florida Bar No. 613819
AMANDA MCGOVERN
Florida Bar No. 964263
AMANDA L. FERNANDEZ
Florida Bar No. 106931
ZAHARAH MARKOE
Florida Bar No. 504734

RIVERO MESTRE LLP
2525 Ponce de Leon Boulevard,
Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: amcgovern@riveromestre.com
Email: zmarkoe@riveromestre.com
Email: receptionist@riveromestre.com

### CERTIFICATE OF SERVICE

I CERTIFY that on February 3, 2022, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Amanda L. Fernandez*