*Exhibit A*

Claim No: CL-2019-000696

**IN THE HIGH COURT OF JUSTICE**
**BUSINESS AND PROPERTY COURTS OF ENGLAND AND WALES**
**COMMERCIAL COURT (QBD)**
**BEFORE: HHJ Pelling QC**
**BETWEEN:**

**(1) IRA KLEIMAN**

**(as the personal representative of the Estate of David Kleiman)**

**(2) W&K INFO DEFENSE RESEARCH, LLC**

**Applicants**

-and-

**RAMONA WATTS**

**Respondent**

**SKELETON ARGUMENT OF**
**(1) IRA KLEIMAN AND (2) W&K DEFENCE RESEARCH, LLC**
*FOR HEARING ON 5 NOVEMBER 2021 AT 2PM*

*Suggested pre-reading in addition to skeleton arguments (t/e 1 – 1 ½ hours):*

(1) Order of Butcher J dated 13.11.19 **[A/3/22]**
(2) Order of Butcher J dated 14.1.20 **[A/8/60]**
(3) Application notice dated 11.11.19 **[A/1/3]**
(4) 1st w/s of Mr Velvel Freedman ("VF1") (if time allows, and in outline only)**[A/2/6-21]**
(5) Application Notice dated 9.12.19 **[A/4/24]**
(6) 1st w/s of Mr Paul Ferguson ("PF1") **[A/5/27-44]**
(7) 2nd w/s of Mr Velvel Freedman ("VF2") **[A/6/45-49]**
(8) 2nd w/s of Mr Paul Ferguson ("PF2") **[A/7/50-59]**
(9) Letter dated 2.11.21 from Bois Schiller Flexner ("BSF") to SCA Ontier LLP ("Ontier") **[B/287]**, and response dated 3.11.21 **[B/292]** with draft Order **[B/294]**
(10) Insofar as time allows, the correspondence referred to herein

T/e for hearing: 1/2 a day.

## INTRODUCTION

1. This is the skeleton argument of Ira Kleiman (as the personal representative of the Estate of David Kleiman) and of W&K Defense Research, LLC (collectively "**Mr Kleiman/W&K**") for the hearing on 5.2.21 at 2pm. The hearing is listed to determine issues of costs pursuant to the Consent Order of Butcher J dated 14.1.20 ("**the Second Butcher Order**") **[A/8/60]** which provided at paragraph 1 that:

1

> *A hearing be listed for the next available date with a time estimate of 2 hours to determine the extent of the Applicants' liability for, and the quantum of, Ms Watts' costs of complying with the Order.*

2. At the time that Order was agreed and approved, some 21 months ago, it was estimated by Ms Ramona Watts ("**Ms Watts**") that her total costs would be "*£100,000 to £125,000*" (PF1/29 **[A/5/39]**). Ms Watts now seeks an order for summary assessment of costs in the sum of £209,608.17, nearly double her initial estimate, and over double the sum that is generally actively considered for summary assessment in the Commercial Court.[1]

3. There has been no costs budgeting. This is the first time this matter comes before the Court for a hearing. Mr Kleiman/W&K are mindful that the Court will be coming to this exercise with no familiarity with the procedural history, and there is much ground to cover. The position is aggravated because of the extraordinary delay by Ms Watts in bringing this matter on for a hearing: "*the first available date*" referred to in the Second Butcher Order of 14.1.20 has slipped to a hearing on 5.11.21. One example of Ms Watts' delay: by a 2-page letter dated 15 July 2020 Mr Kleiman/W&K's solicitors suggested hearing dates in July 2020 **[B/262]**, or in Michaelmas term 2020. It took Ms Watts' solicitors 6 months even to provide a response to that letter **[B/264]**, by which time Michaelmas term had come and gone[2].

4. By letter of 27.1.21 Mr Kleiman/W&K suggested that in view of the fact that the total costs claimed by Ms Watts had climbed to over £200,000, (i) the assessment should not be performed summarily, but rather by way of detailed assessment **[B/267]**; and (ii) that issues of principle only (not quantum) should be addressed at the Commercial Court hearing. That seemed to Mr Kleiman/W&K to be the proportionate approach in order to avoid the Court and Mr Kleiman/W&K being placed in the position of performing, in a half day hearing, summary assessment of 4 costs schedules totalling over £209,000 in a case in respect of which the Court has no familiarity. That suggestion was rejected by Ms Watts, whose solicitors said in response that the "*appropriate way forward is for a single hearing to be*

---

[1] "*Active consideration will generally be given by the Court to adopting the summary assessment procedure in all cases where the schedule of costs of the successful party is no more than £100,000, but the parties should always be prepared for the Court to assess costs summarily even where the costs exceed this amount*". See *Commercial Court Guide* at para F14.2.

[2] See also the 2 month delay in responding to Mr Kleiman/W&K's letter dated 23.2.21 **[B/273]** regarding the scope and listing of this hearing, eventually responded to on 30.4.21 **[B/275]**.

*listed […]*" and that "*Should your clients continue to disagree with this way forward, we consider the onus is on them to apply to vary the Consent Order of Butcher J dated 14 January 2020 to bifurcate issues of liability and quantum*" **[B/275-277, paras 4 and 5]**. Mr Kleiman/W&K did not consider it proportionate to launch further satellite litigation on this point, which would have caused yet further costs and delay and absorbed more Court resources. The hearing therefore proceeds by way of summary assessment *per* the Second Butcher Order, but the problems caused by Ms Watts' delay, and the enlarged sum that she now claims compared with that envisaged at the time of the Second Butcher Order, make the task of the Court and of Mr Kleiman/W&K considerably more difficult. They are evidence too of a failure to comply with the Overriding Objective[3] on the part of Ms Watts. These are matters relevant to the Court's exercise of its discretion, and Mr Kleiman/W&K will ask that they are taken into account and weighed in the balance against Ms Watts' position.

5. After this skeleton argument was substantially drafted, at 2pm on 3.11.21, Ms Watts' solicitors sent a letter in response to Mr Kleiman/W&K's solicitors' letter of 2.11.21 **[B/287]**. It is now proposed by Ms Watts, in a *volte face* from her earlier rejection of Mr Kleiman/W&K's suggestion to this effect, that there <u>should</u> be an order for detailed assessment, with a payment on account of costs. It is unclear whether the proposal will be pressed at the hearing on Friday. It is opposed by Mr Kleiman/W&K because it offers the worst of both worlds: the parties have already incurred the costs of preparing for summary assessment of Ms Watts' costs; the Court has already set aside ½ a day of valuable judicial resource to make that determination; and the costs under scrutiny are already very historic. An order for detailed assessment now would require further pleadings, further court time, and substantial additional cost and delay. Mr Kleiman/W&K wish to proceed with the hearing as planned.

6. This skeleton argument is in 3 parts: (i) summary of relevant background (paras 10-25); (ii) submissions of general application to Ms Watts' claimed costs (paras 26-36); (iii) submissions on the individual costs schedules (paras 37-42).

7. In a nutshell, the costs claimed by Ms Watts are grossly excessive and out of any proportion to the task at hand. That task was compliance with an Order that Ms Watts (i) attend a 1-

---

[3] See *inter alia* the express requirement that cases are dealt with "*expeditiously*" at CPR 1.1(2)(d).

3

day deposition in London to be asked questions about 3 narrow topics; and (ii) provide disclosure in respect of 3 targeted categories of document, which resulted in the provision of just 23 documents.

8. The costs claimed by Ms Watts are split over 4 statements of costs ("**the Costs Schedules**"), each dated 22.6.20. The issues to be determined by the Court at this hearing can be summarised as follows:

| No. | Schedule covering | Bundle Ref. | Total costs claimed | Extent of dispute / issue for the Court |
|---|---|---|---|---|
| 1 | Costs of complying with 13.11.19 Butcher Order | B/207 | £102,360 | Mr Kleiman/W&K accept liability for reasonable costs, reasonably incurred. Quantum in dispute. |
| 2 | Costs of Ms Watts' 9.12.19 Application | B/211 | £30,958 | Principle and quantum in dispute. |
| 3 | Costs of Ms Watts' Document Production | B/215 | £72,864.67 | Mr Kleiman/W&K accept liability for costs of 3rd party e-disclosure providers; and also accepts liability for reasonable legal costs, insofar as reasonably incurred. Quantum of legal costs in dispute. |
| 4 | Costs of hosting Deposition | B/219 | £3,426.00 | Not worth the candle. Mr Kleiman/W&K have agreed to pay without concession that the costs are reasonable. Nothing in dispute. |

9. Mr Kleiman/W&K have set out by letter dated 2.11.21 **[B/287]** further detail of their position in respect of each Costs Schedule. The Court is invited to read that letter.

**BACKGROUND**

10. It is necessary to set out something of the background. This does not purport to be an exhaustive narrative of events. That exercise alone would far exceed the 15-page limit on

4

skeleton arguments in the Commercial Court. The Court is referred also to the chronology attached hereto.

11. Mr Kleiman/W&K are plaintiffs in litigation in the United States District Court Southern District of Florida ("**the SDF Court**") against a Dr Craig Wright ("**Dr Wright**") ("**the SDF Proceedings**"). In the SDF Proceedings, Mr Kleiman/W&K allege that Dr Wright has unlawfully withheld Bitcoins and intellectual property assets rightfully belonging to Mr Kleiman/W&K and claim that Dr Wright's actions amount to conversion, unjust enrichment, breach of fiduciary duty, breach of partnership duties of loyalty and care, and fraud **(VF1/3.2) [A/2/8]**. Mr Kleiman/W&K claim damages of at least $11bn **(VF1/3.2) [A/2/8]**, subject to fluctuations in the price of Bitcoin.

12. On 11.11.19 Mr Kleiman/W&K issued an application (the "**November Application**") pursuant to s.1 of the Evidence (Proceedings in Other Jurisdictions) Act 1975 ("**the 1975 Act**") and Part 34 of the Civil Procedure Rules ("**the CPR**") in pursuance of a request issued by the SDF Court by way of a sealed Letter of Request dated 22 July 2019 ("**the Letter of Request**"). The November Application was supported by VF1 **[A/2/6-21]**. Mr Kleiman/W&K sought an order that Ms Watts: (i) be examined by way of deposition in a manner consistent with the US Federal Rules of Civil Procedure before an examiner of the Court; and (ii) produce certain categories of documents pursuant to s. 2(2)(b) of the 1975 Act. The scope of the Order was narrow in respect of both (i) the subjects upon which Ms Watts was to be examined and (ii) the documents to be disclosed.

13. At the time of issuing the November Application, trial in the SDF Proceedings had been set for March 2020. The deadline for discovery in those proceedings was, as at November 2019, 3.1.20, though it was subsequently extended. Mr Kleiman/W&K and Dr Wright had been engaged in good faith settlement discussions, but discussions collapsed on 30.10.19. Mr Kleiman/W&K therefore moved to issue the November Application. (SeeVF1/3.4 **[A/2/9]**.)

14. On 13.11.19, Butcher J approved the Order at **[A/3/22]** ("**the First Butcher Order**"). This required that the deposition take place not later than 20.12.19 **[A/3/22-23]**.

5

15. Ms Watts instructed solicitors SCA Ontier LLP ("**Ontier**"). On 21.11.19 Ontier wrote to solicitors of Mr Kleiman/W&K, BSF LLP ("**BSF**"), to confirm that Ms Watts had been served with the First Butcher Order and to request an extension of time to comply **[B/15-16]**. BSF agreed to the request the same day **[B/17]**. There followed inter-solicitor correspondence in relation to Ms Watts' compliance with the First Butcher Order (see page references in attached chronology), with BSF adopting a constructive approach and addressing to the best of their ability the various issues raised by Ontier. Issues between the parties were narrowing.

16. On 9.12.19, notwithstanding the progress that was being made by inter-solicitor correspondence, Ms Watts issued an application for variation of the Butcher Order **[A/4/24]** ("**the Watts Application**") seeking (in summary):

    a. An order or declaration that Mr Kleiman/W&K are liable, as a matter of principle, for her costs of complying with the First Butcher Order;

    b. Security for costs in the sum of £100,000 within 7 days;

    c. Confirmation that Ms Watts will not be required to produce documents at para 1(d) to (f) of the First Butcher Order that already form part of the document universe which has been collected for the purpose of discovery in the SDF Proceedings;

    d. Restriction on wider use of documents disclosed.

17. The Watts Application was supported by an 18-page witness statement ((PF1) **[A/5/27-44]**). BSF filed evidence in response on 30.12.19 ((VF2) **[A/6/45]**). Further evidence was filed on 7.1.20 **[A/7/50-59]** by Ontier, but that further evidence was nugatory because (as the statement itself accepts) the parties had substantially agreed matters already. The Watts Application was not pressed to a hearing. Instead, the parties agreed the Consent Order dated 14.1.20 **[A/8/60]** ("**the Second Butcher Order**"). The costs of the Watts Application remain in issue. They are addressed below at paras 38 - 42.

18. By Motion dated 20.12.19 **[B/81-85]** in the course of the SDF Proceedings, Mr Kleiman/W&K sought an Order in the SDF Court that Dr Wright make available Ms Watts,

who is his wife, for a deposition or in the alternative that Ms Watts be barred from testifying at trial. This was an attempt to cut through the areas of disagreement between Ms Watts and Mr Kleiman/W&K in London: if Ms Watts was not going to be called to give evidence in the SDF Proceedings, there would be no need for her to be deposed at all **[B/91]**, which would result in saving of time and cost in both jurisdictions. That motion was opposed by Dr Wright **[B/86-89]**, and was ultimately denied by order dated 30.12.19, but with liberty to renew **[B/110-112]**.

19. Pursuant to the offer made by Mr Kleiman/W&K in BSF's letter of 12.12.19 **[B/64, para4(d)]**, recorded by para 2 of the Second Butcher Order, £25,000 was paid to Ontier by way of security.

20. Correspondence continued. On 10.1.20 the SDF Court ruled that the time allowed for discovery would be extended **[B/135]**. By emails dated 24.2.20 and 28.2.20, it was agreed that Ms Watts would provide the documents required by the First Butcher Order by no later than 16.3.20 **[B/183,190]**.

21. On 16.3.20 Ms Watts disclosed and provided copies of 23 documents **[B/200-201]**. On 19.3.20 the deposition of Ms Watts took place. It was held at the offices of Ontier because the offices of BSF were closed from 17.3.20 due to the Covid-19 pandemic.

22. By letter dated 23.6.20 Ms Watts requested payment of her costs **[B/203-206]**. Ms Watts provided, for the first time, four N260 Statements of Costs **[B/207-222]** dated 22.6.20 and accompanying invoices from AlixPartners, the e-discovery provider in respect of the costs of collection, search, hosting and production of document **[B/223-258]**. The total sum claimed was £209,608.17.

23. By letter dated 15.7.20 Mr Kleiman/W&K declined to pay the costs sought and reiterated the previously stated position that they were disproportionate **[B/262]**. BSF suggested dates for a hearing in late July 2020 or after the Court vacation, in Michaelmas term.

24. There was no response to that letter for 6 months.

25. By letter dated 12.1.21 Ms Watts stated her intention to write to the Court to seek a hearing **[B/264]**. After further correspondence the instant hearing was listed. That further correspondence included Mr Kleiman/W&K's expression of concern, referred to above at para 4, in relation to the task of summarily assessing Ms Watts' costs in a ½-day hearing **[B/267]**).

## SUBMISSIONS OF GENERAL APPLICATION TO EACH SCHEDULE OF COSTS

### The Proper Approach

26. In summarily assessing the costs incurred by Ms Watts, the Court it is invited to adopt the usual approach to summary assessment on the standard basis, namely to arrive at a figure for costs which ensures that only reasonable and proportionate work is paid for and only a reasonable and proportionate amount is paid for that work. (See by analogy *JH Shannon v Country Casuals Holdings Plc* (1997) 94(20) L.S.G. 37, a decision of Garland J in QBD[4].)

### Proportionality

27. The first point is that the totality of the costs claimed is in excess of what is reasonable and proportionate. Total costs claimed are over £209,000 for work relating to compliance with an order for disclosure and deposition. Those costs were incurred over a period of just 5 months arising out of a non-adversarial application where there was no requirement for any pleadings, no need to marshal complex facts or draft complex witness statements, and no need to attend any hearing, contested or otherwise. On 9.12.19, Ontier estimated that Ms Watts' costs of complying with the First Butcher Order would be in the region of £100,000 - £125,000 PF/29 **[A/5/39]**. Mr Kleiman/W&K agree that quantum of that sum, though still extremely high, would bear at least some proportionality to the issues involved. The increase by 100% to the costs currently claimed is unexplained and itself indicative of disproportionality.

28. The Court will have regard to the Overriding Objective, and in particular to the factors identified at CPR 44.3(5). Mr Kleiman/W&K emphasise the following:

---

[4] This decision concerned a *subpoena duces tecum* rather than a request pursuant to the 1975 Act. Mr Kleiman/W&K accept however that, by analogy, the Court has jurisdiction summarily to assess costs in the instant case whether pursuant to s.51 Senior Courts Act or its inherent jurisdiction.

a.  *Sums in issue in proceedings*. There is no sum in issue as between Mr Kleiman/W&K and Ms Watts. In correspondence, Ms Watts has sought to argue that the proportionality should be assessed by reference to the value of the SDF Claim. That is wrong in principle. The November Application might arise out of the SDF Claim but proportionality must be assessed on its own terms and in the context of the issues with which the English Court is concerned. Ms Watts is not herself a party to the SDF Proceedings. The November Application required that Ms Watts search for documents and attend a deposition. There was no "*sum*" in issue as between her and Mr Kleiman/W&K. This is a factor that weighs heavily against Ms Watts' position.

b.  *Value of any non-monetary relief in issue*. This was not a case where injunctive relief was sought, nor any relief of "*value*" in the sense envisaged by CPR 44.3(5). The only relief sought was an order for attendance at a 1-day deposition and an order for disclosure of documents. This factor also falls against Ms Watts' position.

c.  *Complexity of the litigation*. The relevant "*litigation*" is the November Application and the steps required to be performed by the First Butcher Order. This was far from "*complex*". The order in respect of the deposition required that Ms Watts provide answers to factual questions about 3 issues, one of which was her educational background, employment history etc. Ms Watts attended a single deposition lasting 1 day at which the topics had been agreed in advance. The document production required the disclosure of documents falling into one of 3 categories, which were not sophisticated or difficult to comprehend. In the end, Ms Watts produced just over 20 documents. Again, this factor tends towards the application of a sharp knife to the costs being claimed.

d.  Factors such as *reputation* and *public importance* are not engaged because there was no reputational risk for Ms Watts, nor was her compliance of any public importance. The need for her compliance arose because of litigation to which she was not a party.

e. Finally, there was no additional work generated by the conduct of Mr Kleiman/W&K. To the contrary: see para 29(a) below.

**Quantum: general observations**

29. Of the factors listed at CPR 44.4(3) Mr Kleiman/W&K emphasise the following:

   a. *The conduct of the parties and attempts by Mr Kleiman/W&K to narrow the dispute*. Mr Kleiman/W&K have been eminently reasonable in the approach to the November Application and related issues, engaging constructively with Ms Watts in order to address her concerns, as follows:

      i. Mr Kleiman/W&K indicated their willingness to accommodate Ms Watts' concerns as early as 28.11.19: see letter BSF to SCA Ontier 28.11.19 at **[B/24]**, para 3:

         *[…] Depending on your concerns, our clients may be able to accommodate them, and would, if appropriate, be open to cooperating with your client without the need to seek direction from the Court.*

      ii. Mr Kleiman/W&K agreed to requests for extensions of time for Ms Watts to apply to the Court to set aside or vary the First Butcher Order:

         1. To 29.11.19: see email BSF to SCA Ontier dated 21.11.19 **[B/17]**
         2. To 6.12.19: see letter BSF to SCA Ontier dated 28.11.19 **[B/27]**.
         3. To 9.12.19: see email SCA Ontier to BSF dated 6.12.19 1514h **[B/41]**.

      iii. Mr Kleiman/W&K voluntarily agreed to Ms Watts' requests that (i) documents produced pursuant to the First Butcher Order would be only those outside of the universe of documents in the SDF Proceedings; and (ii) there be a restriction on use of documents disclosed. See paras 41(c) and (d) below.

      iv. Mr Kleiman/W&K volunteered to provide security for costs in the sum of £25,000.

    b. *Value involved in the proceedings/Importance of the matter to the parties*. See paras 28(a) and (b) above. The value involved in the November Application was nil. Whilst the November Application may have been of importance to the parties to the SDF Proceedings, it was not to Ms Watts.

    c. *Skill and specialised knowledge of the lawyers*. There was no need for particular skill or knowledge on the part of Ms Watts' lawyers. This was a straightforward application pursuant to s.1 of 1975 Act and CPR Part 34.

**Hourly Rate/Grade of Fee-Earner**

30. In carrying out a summary assessment of costs, the Court may have regard amongst other matters to: (a) advice from the Chief Costs Judge on costs of specialist solicitors and counsel; (b) any information published by, or provided to the Court at its request by, one or more of the specialist associations on average charges by specialist solicitors and counsel. See *Commercial Court Guide* at F14.3.

31. The Court is invited to have regard to Guideline Hourly Rates ("**GHRs**") as a matter relevant to the exercise of its discretion. The sums claimed by Ms Watts are in respect of work done between November 2019 and March 2020. Ontier are based in London, EC1. The Guideline Hourly Rates applicable for solicitors based in EC1 as at 2019 and 2020 were: Grade A: £409; Grade C: £226; Grade D: £138.

32. The rates claimed by Ms Watts are substantially higher: Grade A: £500; Grade C: £300; Grade D1 (Trainee): £175; Grade D2 (paralegals): £150; Grade D3 (paralegals): £125.

33. The GHRs in place in 2019/2020 were last updated in 2010, and their probative value for litigation nearly 10 years later shouldn't be overstated, as the Commercial Court has repeatedly noted[5]. In October 2021 the new "*Guide to Summary Assessment of Costs*" was

---

[5] See, *inter alia, per* O'Farrell J in *Ohpen Operations UK Ltd v Invesco Fund Managers Ltd* [2019] EWHC 2504 (TCC), at para 14.

11

published, which provides for revised guideline rates ("**the 2021 Guide**"). These are of probative value and the Court is invited to have regard to them.

34. The 2021 Guide distinguishes at p.17 between work that is "*very heavy commercial and corporate work*" and other work. The work required of Ontier in these proceedings was by no means "*very heavy commercial or corporate work*". The work that was involved was compliance with an order for disclosure and attendance at a deposition. Accordingly, the relevant Guideline hourly rates for "London 2" are: Grade A: £373; Grade C: £244; Grade D: £139. These serve to emphasise the unreasonableness of the rates claimed by Ontier.

35. This table shows the variance between GHRs (whether 2010 or 2021) and the rates claimed by Ms Watts:

|  | Grade A | Grade C | Grade D (Trainee) |
|---|---|---|---|
| **GHR in 2021 (ordinary commercial work)** | 373 | 244 | 139 |
| **GHR in 2019-2020** | 409 | 226 | 138 |
| **Amount claimed by Ms Watts** | 500 | 300 | 175 |

36. Mr Kleiman/W&K submit that the appropriate global reduction to the hourly rates claimed is not less than 20%.

### SUBMISSIONS SPECIFIC TO THE 3 COSTS SCHEDULES IN ISSUE

### Overview of Mr Kleiman/W&K's position

37. The Court is referred to the table contained in the letter from BSF dated 2.11.21 for a summary of the position of Mr Kleiman/W&K. Specific points in respect of the Costs Schedules (e.g. amounts of time spent; allocation of work between senior and junior lawyers etc) will be made orally.

### Costs of the Watts Application should not be paid by Mr Kleiman/W&K

38. Ms Watts seeks an order that costs of the Watts Application be paid by Mr Kleiman/W&K. For the reasons that follow, Mr Kleiman/W&K resist that order. The proper order is no order as to costs.

39. First, Ms Watts has unreasonably delayed in bringing this claim to costs to a hearing. It is highly unsatisfactory that the Court, and Mr Kleiman/W&K, should have to trawl back through events nearly 2 years ago in order to marshal submissions. By reason of her delay in bringing this matter to hearing, Ms Watts should be disentitled to her costs or, at the least, the Court should weigh that delay in the balance when determining the just order as to costs, taking into account the other points below.

40. Secondly, the Watts Application was unnecessary. As at 9.12.19 the parties had been and were still in the process of constructive engagement. Each request for an extension of time to the First Butcher Order had been agreed by Mr Kleiman/W&K. Progress was being made and issues were narrowing. The proportionate approach would have been for Ms Watts simply to request a further extension of time for compliance with the First Butcher Order and to continue to address matters in correspondence. There was no such request. Instead, Ms Watts chose to prioritise the preparation of an application. That was her prerogative, but Mr Kleiman/W&K should not bear the costs.

41. Thirdly, Ms Watts cannot be considered the "winner" on her application. The matters the subject of the application were (1) an order/declaration that Mr Kleiman/W&K would in principle be liable for costs relating to the First Butcher Order, (2) fortification of costs in the sum of £100,000, (3) clarification that documents produced to the order would be only those outside of the universe of documents in the SDF Proceedings; and (4) restriction on use of documents disclosed pursuant to the First Butcher Order. Taking each in turn:

    a. Point (1) was the subject of ongoing discussion in correspondence between the parties' solicitors. Mr Kleiman/W&K had given confirmation on 6.12.19 **[B/38, para 2]** that "*While we are in principle prepared to consider paying [Ms Watts'] reasonable costs, we consider, first, that the figures you have quoted to us are not reasonable for a single deposition and provision of a small number of documents if any, and, second, that only certain categories of spending would be reasonably reimbursable in the context of these proceedings*". Mr Kleiman/W&K then set out what costs would be reasonable. This was a reasonable invitation to engage constructively in relation to costs in order to reach an agreed position. By letter of 12.9.19 **[B/63, para 3]** BSF stated that "*As stated in our letter of 6 December 2019,*

13

> *our clients agree as a matter of principle to payment of your client's reasonable costs of compliance with the Order. As stated, reasonableness encompasses both reasonable amounts and categories of expenditure that are reasonably compensable by our clients. We are of the view that the Court would take the same approach, to including to ensure that the incurrence of costs are proportionate to the scope of the Order (which is now limited), in keeping with the CPR's overriding objective."* The letter then set out Mr Kleiman/W&K's position in respect of each category of costs. Correspondence continued. But in the event, Ms Watts chose not to press this point to a hearing and instead abandoned this part of her application. The Second Butcher Order makes no declaration that Mr Kleiman/W&K were liable for her costs, and the only relevant Order is one *"to determine the extent of the Applicants' liability for, and the quantum of, Ms Watts' costs of complying with the Order"*. Ms Watts cannot be regarded as the winner on this point.

b. Point (2) was subject to ongoing discussion in correspondence between the parties' solicitors. Security was requested by letters dated 27.11.19 **[B/22, para 13]** and 5.12.19 **[B/32 para 7]**, with the latter setting a deadline of 5pm that same day. BSF responded on 5.12.19 saying that they were taking instructions, but that the client is in the USA so a response by 5pm London time might be impossible **[B/37, para 4]**. On 6.12.19 **[B/38, paras 2-5]** BSF made comments upon the costs that it considered would be reasonable and said it was premature to consider security before agreement is reached as to the type and quantum of costs for which Mr Kleiman/W&K will be responsible. Correspondence continued in relation to security, and on 12.12.19 Mr Kleiman/W&K offered security in the sum of £25,000 **[B/64, para 4(d)]**. Ms Watts rejected that offer and continued to press for security, albeit now in the reduced sum of £50,000 [see e.g. **B/70, paras 6 and 7**]. She eventually abandoned that position and agreed, on 7.1.19, to accept security in the sum of £25,000. Ms Watts cannot be regarded as the winner on this point. She should not have issued the application at all, and in any event should have abandoned this part of her application after the reasonable offer on 12.12.19 rather than maintaining it to 7.1.19.

c. Point (3) was first raised by Ms Watts on 5.12.19 **[B/35 paras 26-30]**. It was requested alongside a request that the disclosure exercise be completed no later

than the date Ms Watts' deposition is taken – then expected to be January 2020, with 16.1.20 floated as a possible date. On 6.12.19 **[B/40 para 14]** Mr Kleiman/W&K reasonably sought an estimate of the size of data in the email account subject to the search, and confirmed that the date of examination would be 16.1.20. That estimate of data size was provided (10GB) by letter dated 10.12.19 **[B/53, para 10]**. By letter of 12.9.19, Mr Kleiman/W&K agreed to the request **[B/64 para 6]**. This was a point that did not require an application and was plainly capable of agreement by consent.

    d.  Point (4) was not raised in correspondence <u>at all</u> before the Application Notice was issued. Mr Kleiman/W&K gave the confirmation requested on 12.12.19 **[B/64, para 7]**. This too was a point that did not require an application and was plainly capable of agreement by consent.

42. In the circumstances, the Watts Application was unnecessary and/or it was not reasonable for Ms Watts to have issued it and/or pursued any part of it after 12.12.19 and/or it would not be reasonable for Mr Kleiman/W&K to be liable for the costs of the same. The Watts Application was, by Ms Watts' own admission, issued on a protective basis. No meaningful steps were taken to secure a listing of the application. The appropriate order is no order as to costs.

**<u>CONCLUSION</u>**

43. Mr Kleiman/W&K invite the Court (i) summarily to assess Ms Watts' costs in accordance with the position set out in the letter dated 2.11.21; and (ii) to make no order as to costs in respect of the Watts Application.

ALEXANDER ROBSON<br>
LITTLETON CHAMBERS<br>
4 NOVEMBER 2021<br>
ar@littletonchambers.com