UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC

    Plaintiffs,
v.                                                                                          Case No. 9:18-cv-80176 (BB/BR)

CRAIG WRIGHT,

    Defendant.
_____/

## W&K INFO DEFENSE LLC'S REPLY IN SUPPORT OF ITS MOTION FOR ENTRY OF TAXABLE COSTS OF LITIGATION AND SUPPORTING <u>MEMORANDUM OF LAW</u>

W&K Info Defense Research, LLC ("W&K"), as the prevailing party in this action, is entitled to its costs under Federal Rule of Civil Procedure 54(d) and 28 U.S.C. §1920. *See* DE [814]. As explained below, the costs it seeks reasonably relate to its claims, are not excessive, and are permitted by law.

### I.    W&K is not required to segregate its costs

Defendant argues that because W&K was only successful on its claim for conversion of intellectual property, it must isolate its request to the costs incurred prosecuting that specific claim. This is inconsistent with the law of this Circuit.

Indeed, the "Eleventh Circuit has rejected similar efforts to parse successful claims from unsuccessful claims, and instead, pursuant to the language of Rule 54, only recognizes a 'prevailing party.'" *Brown Jordan Int'l, Inc. v. Carmicle*, 2017 WL 5633312, at *7 (S.D. Fla. Aug. 7, 2017). As that prevailing party, W&K is entitled to a "full award of costs." *Id.* at *7 ("To the extent Plaintiffs did not prevail on their [other claims], this Court is not required

to sift through Plaintiffs' costs and analyze whether particular costs are primarily attributable to those claims. On the contrary, as the prevailing party, Plaintiffs are entitled to a 'full award of costs' as provided for in 28 U.S.C. § 1920."); *see also Head v. Medford*, 62 F.3d 351, 354-55 (11th Cir. 1995) (defendants prevailed on their federal claims, which although "constituted only a small part" of their total claims, entitled them to recovery of their costs); *Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1321 (11th Cir. 2001) ("A party who has obtained some relief usually will be regarded as the prevailing party even though he has not sustained all his claims… Cases from this and other circuits consistently support shifting costs if the prevailing party obtains judgment on even a fraction of the claims advanced." (ellipses in original)).

Moreover, although Defendant claims that W&K's costs should be reduced because the Estate did not prevail on any of its claims, Defendant cites no case law that supports this proposition. *See* DE [881] at 2-3 (citing only *MacNeil v. Yates*, 2010 WL 5491234, at *4 (M.D. Fla. Dec. 17, 2020), a case that concerned attorney's fees under the federal copyright statute). As between W&K and Defendant, there is only one "prevailing party"—W&K—and the costs sought here were, as explained further below, all incurred in connection with the prosecution of its claims. The fact that the Estate is not also a "prevailing party" has no bearing on *W&K's* entitlement to costs. *See Gonzalez v. Batmasian*, 2017 WL 11532266, at *1 (S.D. Fla. Aug. 16, 2017) (where one plaintiff prevails and another does not, prevailing plaintiff is entitled to costs against defendant).

**II.     All deposition transcripts in W&K's Motion were germane to prosecuting its claims**

Defendant contends that seventeen of the depositions taken in this case were "not germane to [W&K's] claims" and as such, those transcript costs should not be recoverable. Opp. at 4. The standard for whether a deposition transcript is a taxable cost is whether the depositions "appeared *reasonable in light of the facts known at the time they were taken.*" *Rivers v. Orthopedic Sys., Inc.*, 2006 WL 5838358, at *1 (S.D. Fla. Nov. 28, 2006) (emphasis

2

added).  In other words, the substance of the deposition must relate to an issue that was present in the case at the time.  *See EEOC v. W&O, Inc.*, 213 F.3d 600, 621 (11th Cir. 2000) (deposition costs are properly taxed where they are "related to an issue which was present in the case at the time the deposition was taken").  The depositions listed in W&K's Motion were indisputably relevant to the case at the time they were taken and later during trial.

*First*, Defendant clearly believes that these depositions were reasonable, given that *he himself* is seeking reimbursement for the same costs. *See* DE [871-2]. There is no basis for concluding that the depositions that Defendant identifies in his brief (at 4) related to the Estate's claims, but not to W&K's claims. Indeed, both W&K and the Estate claimed that they mined bitcoin and developed intellectual property with Defendant, and that Defendant wrongfully took those assets. *See, e.g.*, DE [83] ¶ 171-72.

*Second*, Defendant appears to argue that the depositions of individuals *he* called at trial and that *he* hired to provide expert testimony are somehow not relevant to W&K's claims. For example, he asserts (at 4) that David Kuharcik—a fact witness that Defendant called at trial—merely "discussed if there was any evidence in David Kleiman's finances that David Kleiman and Dr. Wright were ever partners."  This overly narrow characterization disregards that, at both deposition and at trial, Mr. Kuharcik was asked about whether he had performed accounting work for W&K, Dave Kleiman's company.  (*See* DE [849], Trial Tr. (Day 13 AM) at 28:6-13; DE [488-6], Kuharcik Dep. at 13:8-20.)[1]  This questioning was undoubtedly part of an ultimately unsuccessful strategy to portray W&K as an entity that had no real value. Defendant cannot take the position that a witness's testimony is relevant enough to be

---

[1] Indeed, *Defendant* subpoenaed Mr. Kuharcik prior to his deposition and requested that he produce "any documentation related to the allegation that Dr. Craig Wright stole or misappropriated crypto currency that belonged to Dave Kleiman from *W&K Defense Research, LLC*." (DE [488-6], Kuharcik Dep. at 13:13-20 (emphasis added).)

presented at trial, but then argue that the same testimony does not even relate to the claims in the case.

Similarly, Defendant argues that the depositions of his *own* experts were not germane to W&K's claims. For instance, Defendant argues that the costs associated with deposing Kevin Madura are not recoverable, but disregards that Mr. Madura testified about Dave's alleged inability to write code, an issue relevant to W&K's claims involving intellectual property. *See, e.g.*, DE [83] ¶ 137 (identifying source code as intellectual property). He likewise argues that Bill Choi's deposition was unnecessary, but ignores that Mr. Choi's expert opinion concerned the value of bitcoin that W&K alleged the Defendant converted. *See* DE [83] ¶¶ 171-72. And he argues that William Nicholson's deposition was unnecessary for W&K's claims, even though Mr. Nicholson's expert report concerned the finances of W&K's principal, Dave. Simply stated, W&K took Defendant's experts' depositions because *Defendant* decided their testimony was relevant to the issues of the case.

*Third*, depositions of Plaintiffs' experts were likewise reasonable. There is no doubt that it is reasonable for parties to depose each other's experts, as both parties did in this case. Moreover, these expert's opinions were not somehow confined to certain claims or the claims of just one party. For example, Andreas Antonopoulos testified for two days at trial about bitcoin and blockchain technology, a central issue in the intellectual property claims of W&K. Stefan Boedeker offered expert testimony at deposition concerning whether Defendant had produced a valid list of his bitcoin holdings—evidence equally relevant to the Estate and W&K's bitcoin-related claims. And although Gordon Klein's expert opinion concerned Dave Kleiman's partnership with Defendant, the opinion was not limited to Dave Kleiman acting in his individual capacity (as opposed to through W&K). *See, e.g.*, DE [83] ¶¶ 67-68.

*Finally*, depositions of the remaining fact witnesses challenged by Defendant were

reasonable. The deposition of Andrew O'Hagan, also played at trial, contained valuable testimony about Dave Kleiman's contribution to the creation of the bitcoin protocol, one of the foundations of the blockchain technology created by W&K, and later converted by Defendant. Testimony from Gavin Andresen, also played at trial, was relevant to W&K's claims for the same reason. Moreover, both of these witnesses helped tell the story of how how Craig came into position to eventually convert W&K's intellectual property.

In short, the standard is whether these depositions were reasonable in light of the facts of the case at the time they were taken. Defendant's suggestion that this review should be an after-the-fact determination is simply incorrect. In sum, all of these depositions were reasonable in light of the facts of the case and W&K is entitled to recover such costs.

### III. Witness costs sought by W&K are properly itemized and permitted by law

Defendant argues that W&K did not properly itemize its witness fees or provide receipts or invoices in support of its request for fees. This is incorrect.

In W&K's Exhibit A-1, W&K charted each witness, their respective fees, the date each fee was incurred, the invoice number, and the vendor that was used. *See* DE [872-2]. Further, Composite Exhibit A-3 contains copies of every subpoena and process server invoice for each witness. *See* DE [872-4].

Defendant also takes issue that W&K is seeking costs for deposing foreign witnesses, Ramona Watts and Andrew O'Hagan. He argues (at 7) that because the UK judgments entitling Watts and O'Hagan to be paid for their testimony have not yet been paid, they are "disingenuous[ly]" characterized as "out-of-pocket" costs. This makes no sense. Whether or not they have been fully paid yet does not change the fact that these costs have been charged to W&K. *See Rau v. Apple-Rio Mgmt. Co., Inc.*, 2000 WL 35591645, at *8 (N.D. Ga. Mar. 29, 2000) ("Plaintiff first argues that Smith is not entitled to recover costs because he has not

shown that he actually paid these costs. The court does not agree.").

Defendant's arguments about Ramona Watts are illustrative of how Defendant is trying to avoid the consequences of his own decisions. Ms. Watts is Defendant's spouse and business partner. She was listed as a witness by the Defendant, and he indicated she was likely to be called at trial up until the last moment. Indeed, her ability to attend the trial[2] was mentioned as a reason the trial may need to be delayed. There can be no dispute that Ms. Watts had highly relevant information about pertinent issues in this case. Notwithstanding that Defendant listed her as a witness and indicated that he intended to call her, he refused to voluntarily produce her for deposition. Instead, she retained her own counsel (counsel was Ontier LLP, who Defendant himself retains for numerous matters throughout the world), and forced W&K to litigate her attendance in the UK courts. Ultimately, Ms. Watts sought and obtained a nearly $200,000 judgment against Plaintiffs related to her deposition.

Then, once trial commenced, Ms. Watts traveled to the U.S. from her home in the United Kingdom voluntarily, and attended the trial *in person* (although Defendant never called her to testify). W&K designated portions of her deposition, which were read in W&K's case. After all of this, Defendant argues that W&K is only entitled to up to $40 to cover these

---

[2] Defendant and his wife reside in the United Kingdom. In the months leading up to trial, there were significant Covid-related travel restrictions which called into question the ability of Defendant and his wife to travel to the United States. *See* Aug. 27, 2021 Hrg., at 16-18; *see also* ECF No. [675], [675-1], [679] (Notice of Filing and Order Denying Judicial Assistance). Defendant raised this issue with the Court, and even sought the assistance of the Court to secure an exception to the rules precluding their travel to the United States. *Id.* Ultimately, Dr. Wright and Ms. Watts were able to obtain permission to enter the United States, allowing the trial to proceed as scheduled. Dr. Wright attended the whole trial while Ms. Watts arrived part way through the trial.

6

costs.³ W&K should not be tasked with paying hundreds of thousands of dollars simply because Defendant refused to produce a witness that he himself listed in this case. W&K is entitled to collect these costs from Defendant. See *Skellerup Indus., Ltd. v. Crystal Polymer Corp.*, 1993 WL 69697, at *2 (W.D.N.Y. Mar. 8, 1993) (ordering the costs of corporate representative depositions taken in New Zealand to "become taxable costs to be awarded to the prevailing party in this litigation").

Defendant also argues in footnote 6 of his Response that the Court has already recognized that O'Hagan's UK judgment is governed by British law and the Court has no authority under Rule 45 to reimburse O'Hagan for his expenses. However, the situation at hand differs. First, this is not an attempt by W&K to reimburse non-party O'Hagan for its fees, but rather, to collect its costs of the litigation as a prevailing party against Defendant. Second, in the O'Hagan matter, the Court did not get involved because O'Hagan already received a judgment for his costs and fees in the UK. Here, W&K attempts to obtain such a judgment against Defendant, an avenue not available to W&K in the UK.

Lastly, Defendant argues that W&K cannot recover costs for witnesses that were never deposed or appeared at trial.⁴ W&K agrees as to the following people listed by Defendant: Brendan Sullivan, Eric Stouch, and Tom Cindric, Michelle Seven, Dustin Trammell, John Woodstock.

---

³ In a footnote, the Defendant argues that the UK judgments are "so high" because they include Ms. Watt's costs in retaining counsel to challenge and respond to the witness subpoena. He argues that because the U.S. does not permit attorneys' fees to be recovered under Fed. R. Civ. P. 54, W&K cannot technically recover these witness fees anyways. This argument makes W&K's point. W&K did not force Defendant's wife to retain counsel. Defendant refused to produce her for deposition and then by his own will, chose to retain counsel for her. Doing so does not mean he gets to skirt these costs because of his coy play on Rule 54's language.

⁴ Defendant refers to these as "Investigation Fees" in his Response. See Def's Resp., at 10.

### IV. W&K is entitled to service of process costs for Deborah Kobza, Patrick Paige, John Doe, and Jimmy Nyugen

As stated above, W&K retracts all service of process fees related to the witnesses which never sat for deposition or testified at trial. The remaining service of process costs that W&K seeks are for Deborah Kobza ($488.50), Patrick Paige ($290.00), Jimmy Nguyen ($833.50), and John Doe ($226), for a total of **$1,838.00**. All of these witnesses were deposed and Nguyen, Kobza, and Paige all appeared at trial either in person or through their deposition testimony. W&K is entitled to these costs as they were reasonable and permitted by law. *See Reva v. Spanfelner*, 2021 WL 277166, at *5 (S.D. Fla. Jan. 11, 2021) (private process server fees are taxable).

### V. W&K retracts the costs of certain hearing transcripts costs previously paid to W&K

Defendant is correct that the costs of certain hearing transcripts were already paid to W&K, and therefore W&K retracts the following costs and amends its hearing transcript costs request to **$25,591.31**.

| **RETRACTED COSTS** | **AMENDED COSTS** |
|---|---|
| August 5, 2019 Hearing Transcript<br><br>**( - $1,938.75)** | March 7, 2019 Hearing Transcript<br><br>~~($387.20)~~<br><br>**($193.60)** |
| June 28, 2019 Hearing Transcript<br><br>**( - $1,531.80)** | March 26, 2019 Hearing Transcript<br><br>~~($598.95)~~<br><br>**($299.48)** |

## CONCLUSION

For the foregoing reasons, W&K respectfully requests that the Court grant its Motion for taxable costs.

Dated: February 10, 2022 　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　/s/　　Devin "Vel" Freedman
　　　　　　　　　　　　　　　　　　　　　　Andrew S. Brenner, Esq.
　　　　　　　　　　　　　　　　　　　　　　**BOIES SCHILLER FLEXNER LLP**
　　　　　　　　　　　　　　　　　　　　　　100 SE 2nd Street, Suite 2800
　　　　　　　　　　　　　　　　　　　　　　Miami, Florida 33131
　　　　　　　　　　　　　　　　　　　　　　abrenner@bsfllp.com

　　　　　　　　　　　　　　　　　　　　　　Velvel (Devin) Freedman, Esq.
　　　　　　　　　　　　　　　　　　　　　　**ROCHE FREEDMAN LLP**
　　　　　　　　　　　　　　　　　　　　　　1 SE 3rd Ave
　　　　　　　　　　　　　　　　　　　　　　Suite 1240
　　　　　　　　　　　　　　　　　　　　　　Miami, Florida 33131
　　　　　　　　　　　　　　　　　　　　　　vel@rochefreedman.com

　　　　　　　　　　　　　　　　　　　　　　Kyle W. Roche, Esq.
　　　　　　　　　　　　　　　　　　　　　　Joe Delich, Esq.
　　　　　　　　　　　　　　　　　　　　　　*Admitted Pro Hac Vice*
　　　　　　　　　　　　　　　　　　　　　　**ROCHE FREEDMAN LLP**
　　　　　　　　　　　　　　　　　　　　　　99 Park Ave
　　　　　　　　　　　　　　　　　　　　　　Suite 1910
　　　　　　　　　　　　　　　　　　　　　　NY, NY 10016
　　　　　　　　　　　　　　　　　　　　　　kyle@rochefreedman.com
　　　　　　　　　　　　　　　　　　　　　　jdelich@rochefreedman.com

　　　　　　　　　　　　　　　　　　　　　　*Counsel to Plaintiffs Ira Kleiman as Personal Representative of the Estate of David Kleiman and W&K Info Defense Research, LLC.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 10, 2022 a true and correct copy of the foregoing was filed under Seal with CM/ECF, and served by E-mail to all counsel of record.

　　　　　　　　　　　　　　　　　　　　　　/s/　　Devin "Vel" Freedman
　　　　　　　　　　　　　　　　　　　　　　　　　Devin Vel Freedman