Case 9:18-cv-80176-BB   Document 885-5   Entered on FLSD Docket 02/17/2...

P-140
Case No. 9:18-CV-89176-BB

**From:** Craig Wright
**Sent:** Sunday, March 16, 2014 10:28 AM
**To:** Ramona Watts; Andrew <asommer@claytonutz.com>
**CC:** Craig S Wright
**Subject:** RE: Draft Answers - DeMorgan and CSW
**Attachments:** image003.jpg; image002.jpg; image001.jpg; 20140311_Wright_Request doc.docx; Speci for filing Patent (1).doc

SysUserProp: 88334F2CCA0D8E51C8530404366F9B82

The Wright Document
I have attached one patent document to be completed.
8j
WK was in sole management of this arrangement
Point 19
Yes
Point 26 / 27
See DeMorgan answers.
- Cloudcroft gets SCADA / Security
- Coin-Exch gets exchange and Bitcoin systems
- HWPE gets algorithmic and risk systems

Point 47/48
?
How do you recommend stating this

Point 53
I will get these in the morning
    Tourist Refund Scheme Application:
The ATO have issued a PBR that does not include GST.
As such, the Denariuz and other sale of rights do not pass and have to be removed.
...
**Dr. Craig Wright LLM GSE GSM GSC MMiT MNSA MInfoSec CISSP/ISSMP CISM CISA**

**RCJBR.org**
Tel: + 612 8003 7553 | Mobile: + 61 417 683 914
http://www.rcjbr.org

___

**From:** Craig S Wright [mailto:craig.wright@hotwirepe.com]
**Sent:** Sunday, 16 March 2014 8:54 PM
**To:** Craig Wright
**Subject:** Fwd: Draft Answers - DeMorgan and CSW
Sent from my HTC
----- Forwarded message -----
From: "Sommer, Andrew" <asommer@claytonutz.com>
To: "John Chesher" <john.chesher@hotwirepe.com>, "Craig S Wright" <craig.wright@hotwirepe.com>
Subject: Draft Answers - DeMorgan and CSW
Date: Sun, Mar 16, 2014 18:31
John and Craig
Attached are the updated answers prepared on the basis of the information provided.
You should review the draft answers carefully to check that I have stated things correctly.
There are some sections highlighted in yellow where additional information is required.
In the answers for Dr Wright, there are some answers in green. These questions are huge in their scope. Whilst I'd like to say we can refuse to answer them, I believe that the ATO can call for this information. However, my suggestion is to dodge them in the first instance so they don't hold up the process. I'd like to discuss the risk associated with these questions.
Let me know if you have any questions.
Regards
Andrew
**Andrew Sommer, Partner**
**Clayton Utz**
Level 15, 1 Bligh Street, Sydney NSW 2000 Australia | D +61 2 9353 4837 | F +61 2 8220 6700 | M 0411 721 286 | asommer@claytonutz.com
www.claytonutz.com

This email is confidential. If received in error, please delete it from your system.

**Attachment – Questions for Dr Craig Wright**

W&K Info Defense LLC (W&K)

1.  In the statements of claim lodged with the Supreme Court of New South Wales (Supreme Court) you name the defendant as 'W&K Info Defence Research LLC'. In the Intellectual Property Licence Funding agreement and the Contract for Sale of Shares of a Company Owning Business you refer to an entity called 'W&K Info Defense LLC'.
    a.  Are they the same entity?

    Yes

    b.  If they are the same entity, why have they been referred to by different names?

    The sake of brevity, sometime a shortened version of the name has been adopted. It is acknowledged that this should not usually occur on legal agreements. However, these agreements were often prepared by the principals and not legal advisors.

    c.  Are either of these entities registered as a limited liability company (LLC), and if so, where are they registered?

    W&K Info Defense Research LLC is a limited liability company registered in Florida USA (TIN 274997114)

2.  In the Supreme Court Statement of Claims for case numbers 2013/225983 and 2013/245661 you state that you provided contract labour services and loaned money to the defendant. It is not clear from these documents whether you had received any payment in respect of your contract labour services or the loaned money during the term of the contract. If you had received payment:

    No payment was received. The debt was satisfied by the assignment of the intellectual property ordered by the NSW Surpreme Court.

    a.  How were you paid? (In Bitcoin, cash or other?)

    N/A

    b.  When were you paid?

    N/A

    c.  Have you returned this income in your Australian or the United States of America (USA) income tax returns?

    N/A

    d.  If so please provide a copy of these returns.

    N/A

3.  As a Director of W&K, please provide copies of:

It should be noted that Dr Wright was not at any stage a director of W&K. On occasion, Dr Wright has served as an alternate director on Mr Kleiman's behalf.

    a. Copies of tax returns lodged in the USA at both state and federal levels, if any;

    Dr Wright does not have access to this material. We understand that Mr Kleiman's executor is attempting to access this information but has been unable to do so to date.

    b. its Employer Identification Number (EIN), also known as a Federal Tax Identification Number, used in the USA for lodgement of tax returns;

    Dr Wright does not have access to this material. We understand that Mr Kleiman's executor is attempting to access this information but has been unable to do so to date.

    c. The operating agreement for W&K

    Dr Wright does not have access to this material. We understand that Mr Kleiman's executor is attempting to access this information but has been unable to do so to date.

4. When did you develop the Intellectual Property (IP) which was provided under the agreement with W&K? Has the value of this IP been determined or reviewed by a Government body?

Dr Wright transferred IP to W&K during the 2010 Income Year. The value was set at $5,000. This exceeded the value determined by the ATO in a review by A Westwood in respect of the 2008 – 2010 income years that had asserted the IP had a value of zero.

5. Where did you obtain the two bonds of A $20 million, comprising Bitcoins and Gold bonds, from which to fund the research? Please provide evidence of these bonds being transferred and their respective values at the time.

The bonds were obtained by W&K and not Dr Wright.

6. According to a document you have supplied to the ATO, Uyen T Nguyen accepted a position of US resident Director of W&K on 1 July 2013. You have also advised us of this fact in relation to R&D claims.

It is understood that Ms Nguyen accepted that position as of March 2013

    a. Who asked her to be a Director and under what authority?

The then sole director of W&K, Mr Kleiman

    b. What is her address and telephone number?

[redacted]

    c. Were there any other Directors as at 1 July 2013?

      Following Mr Kleiman's passing, Ms Nguyen was the sole director of W&K

    d. If so who were they?

      N/A

7. Based on a document you provided, Uyen T Nguyen, in her capacity as Director of W&K, accepted the offer to transfer 'all agreed items' to you for 'the agreed consideration'. (reproduced below)

> As director of W&K Info Defense LLC I accept the consent orders in:
>
> 2013/225983
>
> 2013/245681
>
> In consideration of the amounts due, W&K Info Defense hereby accepts the offer to transfer all agreed items to Craig Wright R&D for the agreed consideration.
>
> Date: 9/1/2013
>
> Signature: Uyen. T. Nguyen

    a. Is this date September 1st 2013 or the 9th of July 2013?

      9 July 2013

    b. What were 'all agreed items'?

      Software and related algorithms

    c. When were the items transferred?

      The software and intellectual property was possessed before Mr Kleiman died, but the purpose of action in the NSW Supreme Court was to ensure that it was clear that valid title was obtained by Dr Wright and that related issues were fully dealt with.

    d. What was the 'agreed consideration'?

      The agreed consideration was the release from existing debts.

    e. When was consideration paid?

      Pursuant to the orders of the NSW Supreme Court, the release from debts and liabilities was effective from September 2013.

8. The following questions relate to the 'Intellectual Property Licence Funding Agreement' between you (as Financer) and 'W&K Info Defence LLC' (as Provider) (Ref: CEWK01):

    a. The Deed is dated 22 April 2011, but the schedule is dated 1 April 2011 – why is there a difference in these two dates? When was the Deed signed?

CONFIDENTIAL
DEF_01915131

The Deed was completed and signed 22 April 2011.
It had been a work in progress.

It is likely that the Schedule was completed prior to the finalisation of other aspects of the Deed

b. Why wasn't the deed notarized when signed?

The deed was signed electronically to the satisfaction of the parties.

c. Who witnessed the signatures?

The deed was signed electronically to the satisfaction of the parties.

d. At what location was it signed?

The deed was signed electronically to the satisfaction of the parties.

e. Who created this document?

The deed was prepared by Dr Wright and Mr Kleiman

f. Please provide the original paper agreement. '

The deed was created and signed electronically. There is no "original" paper agreement.

g. Do you still hold the wallets/BTC Addresses referred to in the Recitals?

No

h. The deed is not clear as to the link between the $40,000,000 and the 300,000 Bitcoin. Could you explain the link between the two and whether the value of one is reflective of the other?

These are separate amounts.

Both formed part of the arrangement for the promoting of research and development in this area.

i. The deed refers only to Australian Legislation, including the law of New South Wales (NSW) and Commonwealth legislation. Why doesn't the deed refer to any American legislation or taxation obligations?

The deed refers to Australian legislation and NSW Jurisdiction as this was that with which Dr Wright was most familiar. Dr Wright is not aware of any US legislation or obligations that should have been included in the agreement and were not.

j. Please provide the address where the 'hardware' referred to in this agreement is or was physically located (as opposed to where it was hosted).

The hardware was located in a Data centre in Florida.

CONFIDENTIAL
DEF_01915132

[Address?]

The data

    k. How many Bitcoins were held in the Escrow Wallet referred to in cl 18 and do you still own this wallet?

       No. It held ▇▇▇▇▇▇▇ BTC

    l. Please provide copies of the Patents referred to in the Deed (BAA-001 / 002 / 003 / 004).

       They are/were all 'patent applied for'.

       Dr Wright does not have access to this material. We understand that Mr Kleiman's executor is attempting to access this information but has been unable to do so to date.

       We do have the software and source code for the material that is the subject of these applications.

       [The local application is attached]
       See "Speci for filing Patent (1).doc"

    m. What is the full name of the entity referred to as 'C01N' in the Deed, and was the trademark ever filed?

       It was not an entity. No trademark was filed.

    n. Where did you obtain the funding to finance this agreement?

       The funding was secured against the intellectual property contributed by Dr Wright.

9. The following questions relate to the 'Contract for the Sale of Shares of a Company Owning Business' between you (as Purchaser) and 'W&K Info Defence LLC' (as Company) (Ref:CEW03):

    a. The Deed is dated 2 April 2013, however, it refers to other contracts entered into on 22 April 2013 in the past tense (see cl 4(a)) - when was the Deed signed?

       On 2 April 2013. The reference to "22 April 2013" is an inadvertent typographical error. It could not be rectified, as Mr Kleiman died a couple days after.

    b. Why wasn't the deed notarized when signed?

       The deed was signed electronically to the satisfaction of the parties.

    c. Who witnessed the signatures?

       The deed was signed electronically to the satisfaction of the parties.

CONFIDENTIAL

DEF_01915133

d. At what location was it signed?

The deed was signed electronically to the satisfaction of the parties.

e. Who created this document?

Mr Kleiman

f. Please provide the original paper agreement.

The deed was created and signed electronically. There is no "original" paper agreement.

g. In 'Operative Part' Paragraph 4 of this Deed, reference is made to the contract in CEWK01 and it is agreed that the loans referred to in CEWK01 are 'deemed paid in full' for $40 million (cl 2). It is then stated that the purchaser will accept the new terms as 'full satisfaction of the contract with Reference CEWK01'. This suggests that all the terms of CEWK01 were satisfied by the operation of this new Deed – is this correct?

*[Would like to discuss this further]* Yes. In place of the money that was used to create the IP, I accepted the IP and released a directed payment in BTC to other parties for Dave. He made this payment.

This sounds fine to me.

h. The deed refers only to Australian Legislation, including the law of New South Wales (NSW) and Commonwealth legislation. Why doesn't the deed refer to any American legislation?

The deed refers to Australian legislation and NSW Jurisdiction as this was that with which Dr Wright was most familiar. Dr Wright is not aware of any US legislation or obligations that should have been included in the agreement and were not.

i. How and when did you acquire the source codes referred to in the agreement, which are said to be held by Mr Kleiman?

April 2013

j. Was this deed given to the Supreme Court in your claim against W&K?

Yes

As would be imagined, given the amounts involved, the Court was extremely thorough in reviewing this material.

k. The agreement stipulates that you will accept Mr Kleiman's 323,000 mined Bitcoin as a 49.5% stake in Coin-Exch Pty Ltd (Coin-Exch). Was Mr Kleiman given this stake in Coin-Exch? If so, has the Executor of his Estate made any claims in relation to this?

It says that one payment of an additional 250,000 BTC that Mr.Kleiman will be given a 49.5% stake in Coin Exch Pty Ltd. The Executor has been advised that

6 of 15

although that aspect of the contract is incomplete the estate will be given shares. An amount to be determined to the benefit of Mr. Kleiman's Father and Brother.

I. Please provide the contact details (including name, address and telephone number) of the executor of Mr Kleiman's estate.

Ira Kleiman (the brother of the late Mr Dave Kleiman)



I do not use phones and do not have this.

10. Please provide copies of all agreements (other than CEWK01 and CEWK03) between you and W&K or Dave Kleiman.

Dr Wright does not have access to this material. We understand that Mr Kleiman's executor is attempting to access this information but has been unable to do so to date.

11. Please provide copies of all agreements between W&K and entities for which you are or were a Director or shareholder. (If you have already provided these documents to the ATO state what they are and when and to whom they were provided).

Dr Wright does not have access to this material. We understand that Mr Kleiman's executor is attempting to access this information but has been unable to do so to date.

12. Other than you and Mr Kleiman who were the directors of W&K just prior to Mr Kleiman's death?

As noted above, Dr Wright was not a director of W&K at any time.

Uyen Nguyen was the only other director.

13. Were notices pertaining to this court case served on the Defendant? If so, how and where?

Served on the then director of W&K, Ms Nguyen.

14. Is the 'deed of transfer of intellectual property' referred to in the court case the agreement with Uyen T Nguyen referred to in question 7 above? If not, please provide a copy of this deed.

Yes

Judgement 1: (NSWSC 2013/00225983)

15. Was the IP the subject of the NSWSC Case 2013/00225983 specifically designed for the contracts referred to in the statement of claim?

It was designed with them in mind and customised to their needs.

16. You state in the claim that you and the defendant conducted four projects for the Department of Homeland Security USA (DHS and that the IP is software and code used

7 of 15

by the US Military and DHS.  Do these USA Government bodies own the IP and if not, why not?

It was designed with them in mind and customised to their needs.

Ownership of the IP always remained with W&K

17. Please provide the document dated 27 October 2008, referred to in the statement of claim.

[*Insert document*]

John has this document

18. Who represented the defendant (W&K) in the Supreme Court of NSW 2013/00225983?

W&K was not represented in those proceedings.

19. According to copies of invoices you provided to the ATO, you issued a tax invoice to the Trustee for Wright Family Trust (DeMorgan), dated 1 July 2013 (INV-00096). Was the invoice for the IP referred to the aforementioned court case? If not, please explain what this invoice was for.

[*Answer to be provided*]
I bundled the software and sold it.

20. Did you or W&K hold the IP on 1 July 2013?  If held by you at 1 July 2013 please explain how you acquired the IP at that date.

Title to the IP remained with W&K until the judgement of the NSW Supreme Court pursuant to which it was transferred to Dr Wright.  In accordance with that judgement, title was transferred on 1 September 2013.

Whilst the process of obtaining judgement took some time, it was not considered that there was doubt about the outcome.  Dr Wright was the sole surviving shareholder in W&K and the creditor to the company.

Possession of the relevant elements of IP and software remained with Dr Wright.  As such between 1 July 2013 and 1 September 2013 the assignment to DeMorgan was an equitable assignment, perfected at the moment title to the IP and software vested in Dr Wright on 1 September 2013.

21. If you did not hold the rights to this IP at 1 July 2013, how were you able to transfer it to another party on that date?

Possession of the relevant elements of IP and software remained with Dr Wright.  As such between 1 July 2013 and 1 September 2013 the assignment to DeMorgan was an equitable assignment, perfected at the moment title to the IP and software vested in Dr Wright on 1 September 2013.

22. You sold the IP to the Trustee for the Craig Wright Family Trust (DeMorgan) on 1 July 2013, as evidenced by a tax invoice you have provided (INV-0096).   In this invoice you

CONFIDENTIAL DEF_01915136

    reference the court case number for the statement of claim filed on 25 July 2013 and ratified on 8 November 2013.  Please explain how you knew the court case number for the sale that occurred prior to its allocation?

    See 20 & 21 above.

23.    How did you determine the value of the IP in the invoice INV-00096, dated 1 July 2013? If it was independently valued, please provide a copy of the valuation.

    The intellectual property that was the subject of the claim by Dr Wright against W&K Info Defense Research LLC was valued in accordance with the project plan agreed with Mr Kleiman and a cost model for the production of that intellectual property.

<u>Judgement 2</u>: (NSWSC 2013/00245661)

24.    Please supply the document dated 8 January 2009 referred to in the statement of claim.

    Wright Attachment 3

25.    Who represented the defendant (W&K) in the Supreme Court of NSW 2013/00245661?

    W&K was not represented in those proceedings.

26.    What is the item described as SNSWSC Trans sold by you, to Cloudcroft Pty Ltd, on 31 July 2013 (as per your tax invoice INV-00097 provided to us)?

    [*Answer to be provided*]

27.    What is the item described as 2013/Judgement 2 sold by you to DeMorgan on 1 September 2013 (as per your tax invoice INV-00098 provided to us)?

    [*Answer to be provided*]

28.    Did you or W&K hold the IP on 31 July 2013?  If held by you at 31 July 2013 please explain how you acquired the IP at that date.

    Title to the IP remained with W&K until the judgement of the NSW Supreme Court pursuant to which it was transferred to Dr Wright.  In accordance with that judgement, title was transferred on 1 September 2013.

    Whilst the process of obtaining judgement took some time, it was not considered that there was doubt about the outcome.  Dr Wright was the sole surviving shareholder in W&K and the creditor to the company.

    Possession of the relevant elements of IP and software remained with Dr Wright.  As such between 31 July 2013 and 1 September 2013 the assignment to DeMorgan was an equitable assignment, perfected at the moment title to the IP and software vested in Dr Wright on 1 September 2013.

29.    If you did not hold the rights to this IP at 31 July 2013, how were you able to transfer it to another party on that date?

    Please see above

CONFIDENTIAL    DEF_01915137

30. How was the value of the transaction on this invoice determined? If it was independently valued, please provide a copy of the valuation.

    The intellectual property that was the subject of the claim by Dr Wright against W&K Info Defense Research LLC was valued in accordance with the project plan agreed with Mr Kleiman and a cost model for the production of that intellectual property.

Bitcoins:

31. Were the Bitcoin you have obtained declared as income in Australia or the USA?

    Bitcoin mined by Dr Wright in Australia were included in assessable income in FY2010 when they were transferred outside Australia.

32. You have previously provided a number of wallet addresses to the ATO; however some of these addresses have been incomplete, incorrect or duplicated. Please provide a single list of all wallets you personally hold now and those you held since 1st January 2011?

    The wallets change over time.

    The addresses previously provided related to Bitcon Dr Wright can influence.

    It is not static.

    This information was for the interest of the ATO only.

33. What evidence do you have that you hold these Bitcoins?

    Please explain the relevance of this question.

Christopher McArdle:

34. What are Christopher McArdle's contact details? (phone number, address, e-mail)

    Dr Wright is not in contact with Mr McArdle.

35. Please provide a copy of the deed, or other information, showing satisfaction of the court order (District Court of NSW 2012/00356004), by Christopher McArdle?

    This was a confidential settlement.

36. What is the IP subject to this case, and how does it differ to the IP previously queried in this request?

    This is separate to the IP referred to above and has no relevance to the current issues.

Seychelles Trust:

37. You have advised, in a briefing paper received 26 February 2014, that the Bitcoin available to you is held in a trust formed in the Seychelles. You further advised the trustee of this trust is a UK company 'Design By Human Ltd' which has since changed its name. Please provide a copy of the trust deed for this trust, including amendments, annexures

CONFIDENTIAL                                                                                                      DEF_01915138

and other attachments and the memorandum of association and incorporation documents for the Trustee Company.

In that briefing paper it was made clear that the Bitcoin was held for Dr Wright on a bare trust in accordance with a Deed of Loan. As such, there is no trust deed.

38. Are you a Director or Shareholder of the trustee company?

Dr Wright is not a director or shareholder in the trustee company.
How many Bitcoin are held in this trust and how were they acquired?

In accordance with the Deed of Loan, 650,000 Bitcoin were held for Dr Wright by the Trustee.

39. When did the trust acquire these Bitcoin and from whom?

The Trustee holds those Bitcoin for Dr Wright pursuant to the Deed of Loan.

40. What other trust property is held?

The only property held by the Trustee for Dr Wright under the bare trust described above is the Bitcoin that are held for Dr Wright under the Deed of Loan.

41. Please provide evidence of all trust property held (this may be in the form of a comprehensive list of Bitcoin wallets)

Transactions involving these Bitcoin – such as with MJF – have been fully disclosed. We cannot understand the relevance of providing Bitcoin wallet information for the untransacted Bitcoin.

42. Please provide a list of all of the beneficiaries of this Trust

Under the Deed of Loan, the Bitcoin were held for Dr Wright. Some Bitcoin have been transferred by the Trustee at the direction of Dr Wright. Dr Wright has, as has been disclosed to the ATO, transferred an equitable interest in the Bitcoin held for Dr Wright in the bare trust to companies as part of the funding of transactions. Those companies have in turn transferred interests among themselves. These transactions have been reported on the relevant BASs lodged by the entities.

Given the problems with the ATO's treatment of Bitcoin, physical transfers of Bitcoin have not been undertaken for intragroup transactions. Generally, the only physical transfer of Bitcoin occurs where there is a dealing with third parties (such as MJF)

43. Who established the trust?

The bare trust was established pursuant to the Deed of Loan.

44. When was it established?

The bare trust was established pursuant to the Deed of Loan dated [insert]

45. Who holds the wallet addresses?

CONFIDENTIAL                                                                                           DEF_01915139

      We do not understand this notion of "holding wallet addresses".

46. Please provide a copy of the 'Deed of Loan', entered into between you and the trust.

    This has been provided previously.

47. Are you the trustee or beneficiary of any other offshore trusts? If so, please provide details of these trusts, including the trust deeds, names of the trust(s), beneficiaries and trustee(s).
    This information is not immediately available.

48. Are you a director or shareholder of any off shore companies, whether held in your own right or beneficially for you? If so please provide a list of these companies detailing their names, where they are registered and their business activities.

    This information is not immediately available.

Mark Ferrier and MJF Mining Services WA Pty Ltd (MJF):

49. You have advised that you met Mark Ferrier while speaking at a conference in Melbourne, Victoria. What was the name of this conference and on what date did you meet Mr Ferrier?

    It was some time prior to 22 February 2013. Dr Wright has skype messages on or after that date indicating he had met Mr Ferrier prior to that date.

50. Please provide all correspondence between yourself and Mark Ferrier regarding the provision of the various goods and services for which you or your related entities are or will be claiming input tax credits.

    Dr Wright can and will provide all that he has. We have engaged external legal advisors to help us pursue all options with Mr Ferrier. We look to provide evidence amassed as part of that process to the ATO.

51. Please provide copies of all contracts entered into between you or your related entities and Mark Ferrier or MJF.

    These have been provided previously.

52. You have advised that you conducted tracing activities on the Bitcoin payments you made to Mark Ferrier/MJF. Please provide copies of any documents showing the movement of Bitcoin, following your payment.

    The original wallet addresses were provided to ATO.

    We can only demonstrated initial payment and movements.

Al Baraka and Siemens:

53. Did you ever meet with anyone from the Al Baraka group? If so, please provide details (name, phone number, e-mail) of all contacts, where you meet and when.

    Dr Wright did not meet in person with anyone from the Al Baraka group.

CONFIDENTIAL DEF_01915140

Dr Wright had contact with staff of the Al Baraka group via email and skype.

*[Insert email/skype details]*

54. In the meeting on 11 February 2014 it was stated that the payment to Al Baraka was made in two transfers of Bitcoin. Please provide the wallet addresses from which these payments were made, the wallet(s) to which they were transferred, the amount transferred each time and the date of the transfer.

    This information has been provided to the ATO on prior occasions. It will be provided again.

55. Were there any other payments to Al Baraka? In what form did these payments take (e.g.: in Bitcoins, cash or other)?

    The payments took the form of multiple wallets of varying sizes. There were some initial test transfers as they determined payment process and Dr Wright determined veracity of software.

56. When, where and before whom was the agreement signed?

    The Agreement was signed electronically.

57. Please provide us with a copy of (or access to) the 'user manual' referred to in the agreement.

    Since our first meeting with Mr Celso Tomas in this audit process, there has been a standing offer for anyone from the ATO to come to our premises to view any of the material received. It is commercially sensitive.

    It was inspected by Mr Andrew Miller of the ATO on Friday 14 March 2014.

58. Please provide copies of all contracts with Siemens.

    There is no contract with Siemens. The agreement is with MJF.

59. What functions did the software from Al Baraka and Siemens perform, that the software from W&K did not?

    The al Baraka software is Islamic core banking software. It functions similarly to 'normal' banking software, but without interest as a component. The Siemens software is Automation software for manufacturing or mining applications. The purpose was to explore the software's structures and understand it preparatory to developing our automation processes for exchange, banking and our eLearning systems.

Tourist Refund Scheme Application:

60. On 10 January 2014, you made a claim under the Tourist Refund Scheme (TRS) for your acquisition of rights to a Bitcoin wallet, from Hotwire Pre-Emptive Intelligence Pty Ltd (Hotwire).

CONFIDENTIAL                                                                                              DEF_01915141

    a. Was this a wallet for Australian-held Bitcoin (as opposed to Bitcoin held in the aforementioned Seychelles trust)?

    Yes. This was an exception to the standard practice, for the purposes of transferring the Bitcoin in the wallet to Singapore.

    b. Was the invoice issued by Hotwire for rights to a wallet or ownership of the wallet?

    *[answer to be provided]*

    c. Where did Hotwire acquire this wallet from and when?

    Hotwire acquired this wallet from Dr Wright *[when?]*

    d. How did you pay for the wallet, as per this invoice?

    Payment is not yet due under the terms of the agreement between the parties.

    e. Was there a purpose for this transaction, other than to claim a refund of GST under the TRS?

    The purpose of the transaction was to transfer the Bitcoin in the wallet to Singapore.

    f. Who holds this wallet (and/or rights to it) currently?

    The wallet is in a safe deposit box in Singapore.

Other Issues:

61. In the briefing paper (received 26 February 2014), you refer to 'other transactions that have involved the actual transfer of Bitcoin'. Please provide a comprehensive list of all of these transactions, including dates, amounts, wallet addresses, transferor and transferee names and the reason for the transfer.

    This information is not immediately available.

62. In an email to Rosa Solomon of the ATO on 29 October 2013, your representative John Chesher provided an electronic copy of an agreement between you and Dave Kleiman (collectively as 'the client') and Strasan Pty Ltd. This Software Development Agreement is dated 4 April 2013. John Chesher advised in this email that this document is scanned from an original which is available for inspection. Please provide this original paper document, signed by Dave Kleiman.

    This appears to have been a miscommunication. The document was created electronically and signed electronically as was the custom of both Dr Wright and Mr Kleiman. There is no "original" paper version of the document.

63. In your tax invoices (INV-00099 and INV-00100) you provide goods GST free to DeMorgan.

    This is material relating to tertiary education courses. It was understood at the time that this would be GST-free by its nature. We now understand that this may not be correct.

CONFIDENTIAL
DEF_01915142

We are investigating the appropriate treatment of this material and if the treatment needs to be corrected a voluntary disclosure and amendment will be lodged.

Please supply your reasons and evidence to support your contention.

CONFIDENTIAL                                                                                                DEF_01915143