# Composite Exhibit A

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID LEIBOWITZ, BENJAMIN LEIBOWITZ, JASON LEIBOWITZ, AARON LEIBOWITZ, and PINCHAS GOLDSHTEIN,<br><br>     Plaintiffs,<br><br>v.<br><br>IFINEX INC., BFXNA INC., BFXWW INC., TETHER HOLDINGS LIMITED, TETHER OPERATIONS LIMITED, TETHER LIMITED, TETHER INTERNATIONAL LIMITED, DIGFINEX INC., PHILIP G. POTTER, GIANCARLO DEVASINI, LUDOVICUS JAN VAN DER VELDE, REGINALD FOWLER, CRYPTO CAPITAL CORP., and GLOBAL TRADE SOLUTIONS AG,<br><br>     Defendants. | CASE NO. 1:19-cv-09236-KPF |

## NOTICE OF MOTION TO WITHDRAW AS COUNSEL

PLEASE TAKE NOTICE that Kyle W. Roche, Esq. of Roche Freedman, LLP ("RF") respectfully moves the Court pursuant to Local Rule 1.4 to withdraw as one of the attorneys for the Proposed Class. Mr. Roche is no longer involved in RF's class action practice. Accordingly, pursuant to Local Rule 1.4, Mr. Roche respectfully requests to no longer receive docketing notifications *via* the ECF system. Mr. Roche also asks that the Court approve this withdrawal.

DATED: August 31, 2022          Respectfully Submitted,


**ROCHE FREEDMAN LLP**


*/s/ Kyle W. Roche*
Kyle W. Roche
99 Park Avenue, 19th Floor
New York, NY 10016

kyle@rochefreedman.com

*Interim Lead Counsel and Attorneys for Plaintiffs and the Proposed Class*

SO ORDERED this _____ day of _____, 2022.

_____

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on August 31, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

*/s/ Kyle W. Roche*
Kyle W. Roche

**Debevoise & Plimpton LLP**
919 Third Avenue
New York, NY 10022
+1 212 909 6000

August 31, 2022

<u>BY ECF AND EMAIL</u>

The Honorable Katherine Polk Failla
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

***Re: In re Tether and Bitfinex Crypto Asset Litigation, No. 19 Civ. 9236 (S.D.N.Y.)***

Dear Judge Failla:

We represent the B/T Defendants in the above-referenced matter and write in response to Plaintiffs' Motion for Kyle W. Roche to Withdraw as Attorney. (Dkt No. 229.) Mr. Roche's motion comes immediately following the public disclosure of a series of videos of Mr. Roche suggesting that he and his law firm are misusing the litigation process. Mr. Roche apparently has an enormous stake in a crypto company called Ava Labs, Inc., files class action lawsuits against companies in the crypto space for the purpose of harming competitors of Ava Labs, and uses market intelligence gathered through the discovery process for the benefit of Ava Labs. The videos also show Mr. Roche making several disparaging remarks about juries, class members, and the class-action process in the United States.[1]

Mr. Roche's statements raise grave concerns for the B/T Defendants regarding the motivations behind filing this lawsuit, the purpose for which certain discovery has been sought, and whether the highly sensitive, confidential information the B/T Defendants have provided is being misused. That Mr. Roche, who initially claimed that his comments were taken out of context, has now announced that he "is no longer involved" in his firm's class action practice further heightens those concerns.

The B/T Defendants' concerns are not addressed by Mr. Roche's individual withdrawal as counsel of record in this matter. Accordingly, the B/T Defendants respectfully request that Mr. Roche's firm, Roche Freedman LLP, be terminated as counsel in this case, and that Mr. Roche and Roche Freedman LLP certify to this Court that they (*i*) have returned or destroyed all documents and information produced by Defendants in this lawsuit and (*ii*) have not shared any such documents or information with Ava Labs or any other third party.

---

[1]    *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman*, CRYPTO LEAKS (Aug. 26, 2022), available at https://cryptoleaks.info/case-no-3 [https://perma.cc/N433-63SC].

The Honorable Katherine Polk Failla                    2                    August 31, 2022

## I.      The Kyle Roche Video.

Mr. Roche's withdrawal motion comes on the heels of a high profile investigative exposé published by the Crypto Leaks website on August 26, 2022 that includes a series of video clips in which Mr. Roche, a founding partner of the Roche Freedman firm, makes a number of highly disturbing comments about his significant financial interest in Ava Labs and his misuse of class action litigation.  Among other things, Mr. Roche states that:

- He personally owns approximately 1% of the Avalanche tokens ("AVAX") issued by Ava Labs, as well as 1% of the equity in Ava Labs.   (That interest is worth tens of millions, if not hundreds of millions of dollars:  the market capitalization of AVAX tokens is currently $5.7 billion and has been as high as $30 billion in the past year.)

- He uses litigation as "a strategic instrument to support Ava Labs," which he states is "a completely different way than being a lawyer."   Litigation, according to Mr. Roche, is "a fantastic tool to competition."

- Ava Labs does not file complaints against its competitors, but instead "they have me do that on behalf of the class."

- By filing lawsuits against competitors of Ava Labs, Mr. Roche "deal[s] with making sure that . . . the SEC and the CFTC have other magnets to go after," thereby protecting Ava Labs from regulatory scrutiny.

Mr. Roche's statements also give rise to a serious concern that he may be abusing the discovery process and misusing information that he learns through litigation.  He states that he is Ava Lab's "crypto expert" because he "*sue[s] half the companies in the space*" and "know[s] where this market is going" because he has "*seen the insides of every single crypto company*."   These concerns resonate strongly in this case, where Plaintiffs have served a number of document requests seeking information that has no apparent link to the claims and defenses in this lawsuit. For example, Plaintiffs have sought documents related to numerous entities and individuals with whom the B/T Defendants have business relations, as well as all documents related to the B/T Defendants' investments in other crypto companies, their efforts to raise equity and to obtain loans, and a wide array of financial information unrelated to the issues raised by Plaintiffs' complaint.

More broadly, Mr. Roche disparages the putative class members whom he seeks to represent – and to whom he and his firm owe a fiduciary duty – as "100,000 idiots out there" and dismissively refers to juries as "10 idiots" who "control the flow of all the money that happens in American class actions."

Mr. Roche has publicly confirmed that the recordings are genuine. He claims that he was "exploit[ed]" using "leading questions," and that his statements were taken out of context.[2]

## II.    Mr. Roche's Motion to Withdraw Does Not Adequately Address the Concerns Raised by the Kyle Roche Video.

In his Motion to Withdraw, Mr. Roche states that he "is no longer involved in [Roche Freedman's] class action practice." (Dkt. No. 229 at 1.) That is an extraordinary statement given that Mr. Roche is a founder of Roche Freedman LLP and the "class action practice" represents the vast majority of his firm's work. Such a drastic step is inconsistent with Mr. Roche's suggestion that his videotaped statements were taken out of context, and it validates the serious concerns caused by those statements. Indeed, it heightens those concerns.

The individual withdrawal of Mr. Roche, however, does little if anything to address the serious issues regarding the potential misuse of discovery and class action lawsuits generally. Even if he is no longer counsel of record, he would still have access to discovery materials, would retain the ability to direct the conduct of other lawyers at his firm, and would profit from any potential recovery in this lawsuit. Moreover, any conflict of interest impacting Mr. Roche is imputed to his entire firm. And, in fact, it appears that other lawyers at Roche Freedman who have entered appearances in this litigation – including Devin "Vevel" Freedman, Amos Friedland, and Edward Normand – may also own substantial amounts of AVAX tokens and have similar involvement with Ava Labs.[3]

Accordingly, the B/T Defendants respectfully request that, in response to Mr. Roche's motion to withdraw, the Court order that the entire firm of Roche Freedman LLP be terminated as counsel in this case. Such a removal would not prejudice Plaintiffs, as they would remain represented by two other large and experienced firms: Selendy Gay Elsberg PLLC and Schneider Wallace Cottrell Konecky LLP.

In order to protect the highly sensitive information that Defendants have produced in discovery, the B/T Defendants also respectfully request that the Court issue an order requiring Mr. Roche and Roche Freedman LLP to certify that they (*i*) have returned or destroyed all documents and information produced by Defendants in this lawsuit and (*ii*) have not shared any such documents or information with Ava Labs or any other third party. The documents produced by the B/T Defendants and other parties in this litigation are highly sensitive, as they include not only confidential, competitively sensitive information about Defendants' businesses but also information that, if disclosed, would threatens the privacy and security of Defendants and their

---

[2]   *See* Kyle Roche, *My Response*, MEDIUM (Aug. 29, 2022), available at https://medium.com/@kyleroche/my-response-b691563c255b [https://perma.cc/WH2G-ZD8B].

[3]   Crypto Leaks (@CryptoLeaksInfo), TWITTER (Aug. 29, 2022, 5:44 A.M.), https://twitter.com/CryptoLeaksInfo/status/1564187241949298688.

The Honorable Katherine Polk Failla          4                          August 31, 2022

customers.  The Court has already recognized the importance of protecting information about cryptocurrencies and related accounts and wallets.  (Dkt. No. 195.)

*     *     *

We thank the Court for its consideration.


Respectfully submitted,

/s/ Elliot Greenfield

LAW OFFICES OF

## MCNAUL EBEL NAWROT & HELGREN
A PROFESSIONAL LIMITED LIABILITY COMPANY

600 UNIVERSITY STREET, SUITE 2700
SEATTLE, WASHINGTON 98101-3143
TELEPHONE: (206) 467-1816
FACSIMILE: (206) 624-5128

GREGORY J. HOLLON

E-MAIL: GHOLLON@MCNAUL.COM
Direct (206) 389-9348

TIMOTHY B. FITZGERALD

E-MAIL: TFitzgerald@McNaul.com
Direct (206) 389-9338


September 1, 2022

**VIA ECF**

The Honorable Katherine Polk Failla
United States District Court for the
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    **In re Tether and Bitfinex Crypto Asset Litigation**
               **No. 19 Civ. 9236 (S.D.N.Y.)**

Dear Judge Failla:

      Together with O'Melveny & Myers, we represent Defendant Bittrex, Inc. in the referenced matter. Defendant Poloniex LLC, represented by Nelson Mullins, also joins in this letter (Bittrex and Poloniex are collectively "the Exchange Defendants"). We write to join in the requests made by the B/T Defendants in responding to Plaintiffs' Motion for Kyle W. Roche to Withdraw as Attorney (Dkt. No. 229) – namely, (1) that Roche Freedman LLP be terminated as counsel in this case, and (2) that both Mr. Roche and Roche Freedman LLP certify, in connection with their termination, that they have returned or destroyed all documents and information produced by the Exchange Defendants and that they have not shared any of those documents or information with any third party.

      In the video recordings released by Crypto Leaks, Mr. Roche states that "litigation is an underused tool," and confirms that he has used class action litigation as a "strategic instrument" to support non-party Ava Labs, a cryptocurrency company in which he and other Roche Freedman attorneys maintain a substantial interest. He states that he has used litigation against other participants in the cryptocurrency space to further the interests of Ava Labs. He goes on to state that he is Ava Labs' "crypto expert . . . because I sue half the companies in the space" and brags that he has "seen in the insides of every single crypto company." Mr. Roche describes himself in one of the videos as a "crazy mother****er" who will "take you to the end" to get a

The Honorable Katherine Polk Failla
September 1, 2022
Page 2

piece of paper saying "I own your company now," and describes that "power" as "a tool that has not been unlocked by many."

Mr. Roche's statements raise troubling questions about his firm's use of the discovery process in this matter. As the Court is aware, Plaintiffs amended their complaint in June 2020 to add the Exchange Defendants. *See* Dkt. No. 114. The Amended Complaint relies heavily on allegations that the B/T Defendants owned or controlled certain accounts on the Exchange Defendants' platforms, including specifically the "1AA6" account on Bittrex and the "1J1d" account on Poloniex, incorrectly describing those accounts as the "Bitfinex deposit address(es)." *Id.* at ¶ 207. In response to those allegations, the Exchange Defendants provided Mr. Roche and his colleagues conclusive evidence, including a sworn declaration from the actual holder of the supposed "Bitfinex deposit address(es)," that the accounts in question are not and never have been owned or controlled by the B/T Defendants; instead, they have always been exclusively owned and controlled by a foreign arbitrage trader who has no relation to the B/T Defendants. The Exchange Defendants have identified that trader, provided sworn testimony from him about his arbitrage activities, and produced documents proving that the relevant accounts are—contrary to the allegations in the Amended Complaint—not owned or controlled by the B/T Defendants.

Notwithstanding the arbitrage trader's sworn testimony about his trading, Plaintiffs say that they cannot yet re-evaluate their claims against the Exchange Defendants because "[f]ull discovery, from all Defendants, is needed to test the assertions in the Anonymous Declaration." Plaintiffs say that such discovery must include "documents and deposition testimony not only from the declarant, but also from the Exchange Defendants, Bitfinex, and their affiliates." Dkt. No. 181 at 2.

The Exchange Defendants have worked diligently in preparing a substantial production of documents to Plaintiffs.[1] Mr. Roche's recent statements raise serious concerns about the intent behind such discovery and how it will be used. While the Exchange Defendants appreciate that a protective order has been entered in this matter and that attorneys can be expected to comply with such orders, Mr. Roche's statements make clear that he has already used confidential materials produced in litigation for improper purposes. Moreover, the Court previously recognized that the protective order is not sufficient protection for certain information Defendants have produced. *See* Dkt. No. 195. Under the circumstances, simply accommodating Mr. Roche's withdrawal is not sufficient. He remains a member of Roche Freedman, and it must be assumed that, just as the actions he described in the recently released videos benefited Mr. Roche, his firm, and Ava Labs, any further access by Roche Freedman to the highly confidential materials produced in this matter may be subject to similar misuse.

For the above reasons, the Exchange Defendants respectfully join in the B/T Defendants' requests that (1) Roche Freedman LLP be terminated as counsel in the matter, and (2) Roche

---

[1] Plaintiffs originally proposed nearly 300 search terms to each of the Exchange Defendants, many of which related to broad aspects of the cryptocurrency industry but did not appear related to any of the claims or defenses in this matter.

The Honorable Katherine Polk Failla
September 1, 2022
Page 3

Freedman LLP be required to certify that is has destroyed all documents produced by the
Defendants in this matter, and that no such materials remain in the possession, custody, or
control of any principals, agents, or employees of the firm.

Given these revelations, the Exchanges Defendants reserve the right to pursue additional
relief as they obtain more information.

Respectfully,

Gregory J. Hollon
Timothy B. Fitzgerald

GJH/TBF:ln

MADHTetD

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE TETHER AND BITFINEX
CRYPTO ASSET LITIGATION,

                          19 Civ. 9236 (KPF)

                          Decision
------------------------------x
                          New York, N.Y.
                          October 13, 2022
                          2:15 p.m.

Before:

                    HON. KATHERINE POLK FAILLA,

                    District Judge

                        APPEARANCES

ROCHE FREEDMAN LLP
    Attorneys for Plaintiffs
BY:  CONSTANTINE PHILIP ECONOMIDES
    DEVIN FREEDMAN
    EDWARD JOHN NORMAND
    -and-
SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS LLP
BY:  TODD MICHAEL SCHNEIDER
    MATTHEW SINCLAIR WEILER
    -and-
SELENDY GAY ELSBERG PLLC
BY:  ANDREW RIGGS DUNLAP
    MITCHELL D. NOBEL

KIRBY McINERNEY LLP
        Attorneys for Consolidated Plaintiffs
BY:   KAREN M. LERNER
        DAVID E. KOVEL
    -and-
RADICE LAW FIRM, P.C.
BY:   JOHN D. RADICE

MADHTetD

1                          APPEARANCES (Cont'd)

2   DEBEVOISE & PLIMPTON, LLP (NYC)
         Attorneys for Defendants iFinex, BFXNA, BFXWW, Tether
3   Holdings Limited, Tether Operations Limited, Tether
    International Limited, DigFinex, Giancarlo Devasini, Ludovicus
4   Jan van der Velde, and Tether Limited
    BY:   ELLIOT GREENFIELD
5         MELANIE BURKE
       MAEVE L. O'CONNOR
6      -and-
    LAW OFFICES OF MICHAEL JASON LEE, APLC
7         Attorneys for Defendant Potter
    BY:   MICHAEL JASON LEE
8      -and-
    DILLON MILLER & AHUJA, LLP
9   BY:   SUNJINA KAUR AHUJA
          CHRISTOPHER BEAL
10
    WILLKIE FARR & GALLAGHER LLP
11        Attorneys for Defendant Potter
    BY:   CHARLES DEAN CORDING
12        AMANDA PAYNE

13  NELSON MULLINS RILEY & SCARBOROUGH LLP
         Attorneys for Defendant Poloniex, LLC
14  BY:   MATTHEW G. LINDENBAUM
          ROBERT LAURI LINDHOLM JR.
15
    McNAUL EBEL NAWROT & HELGREN PLLC
16        Attorneys for Defendant Bittrex, Inc.
    BY:   ABBY FAITH RUDZIN
17        GREGORY HOLLON

18

19

20

21

22

23

24

25

MADHTetD

1                  (The Court and all parties present remotely)

2            THE COURT:  The case has been called.  I'm not going

3  to ask the parties to identify themselves because I'm aware

4  that my deputy has already taken appearances.

5          I am now going to be giving an oral decision on the

6  applications regarding Mr. Roche and the Roche Freedman firm,

7  and I'm going to ask you all, please, to mute your phones as I

8  do so, so that there aren't interruptions once I begin.  I'll

9  give you a second or two to mute your phones at this time.

10         Now I will begin.

11         As always, I thank you, those of you who have given me

12  written and oral submissions on these points, and I do

13  genuinely and sincerely appreciate your giving me some

14  opportunities, some time, to consider what was said at the

15  October 3 oral argument and to reflect on what I think is a

16  very serious issue.  For the reasons that I am about to

17  outline, I am modifying my order appointing interim class

18  counsel to remove the Roche Freedman firm from that class

19  counsel.

20         This decision does not require extensive citation to

21  cases.  Unlike Roche Freedman's framing of the issue as one of

22  disqualification of a firm, I find that this dispute actually

23  arises under Federal Rule of Civil Procedure 23(d)(2), which

24  allows an order under Rule 23(d)(1) to be altered or amended

25  from time to time and to be combined with an order under

MADHTetD

```
 1   Rule 16.

 2          The order in question is my February 27, 2020, order

 3   by way of minute entry appointing lead plaintiff and interim

 4   class counsel, and it is the latter portion that I am being

 5   asked to revisit.  I have considered the views of the named

 6   plaintiffs in this case.  They are the putative class

 7   representative, but, ultimately, I conclude that their

 8   preferred counsel structure is not in the best interests of the

 9   class, and of course, if that causes any of the plaintiffs, the

10   named plaintiffs, to wish to exit the case, I will hear from

11   them when it is appropriate to do so.

12          But before I get to the legal analysis, I do want to

13   spend a moment on the reasons why I am revisiting my prior

14   order, and this is not to beat the proverbial dead horse, but

15   rather just to provide a factual framework for my decision.

16          In January of 2022, nearly two years after my

17   appointment of an interim class counsel team that included the

18   Roche Freedman firm and before the production of discovery in

19   this case, one of the principals at the Roche Freedman, Kyle

20   Roche, made a series of ill-advised comments suggesting, if not

21   asserting, his close ties to and financial interest in Ava

22   Labs, a research and development company that is involved in

23   developing the Avalanche platform and the AVAX cryptocurrency,

24   as well as Mr. Roche's strategic deployment of class action

25   litigation to aid Ava Labs both by focusing regulators on Ava's
```

MADHTetD

1  competitors and on obtaining confidential information

2  concerning those competitors through the class action process.

3        Mr. Roche claims that the video recordings of these

4  statements are highly edited and taken out of context, that he

5  was set up by a competitor, and that he was inebriated at the

6  time he made the statements.  All of that notwithstanding,

7  Mr. Roche has moved to withdraw from representing the class

8  plaintiffs in this case.  The Roche Freedman firm has

9  represented that it will or has walled him off financially from

10  receiving any fees from this case, and Mr. Roche is not

11  currently involved with the firm's plaintiff-side crypto-asset

12  class action practice.

13        Roche Freedman has suggested that this is sufficient

14  to allow them to remain on as one of the three interim class

15  counsel.  Their cocounsel, as well as defendants' counsel, and

16  an earlier contender for interim class counsel all disagree.

17        In an early effort to frame this issue, I considered

18  whether the factual bases for my decision to include Roche

19  Freedman in the trio of law firms appointed as interim class

20  counsel has changed.  That answer is an easy, indisputable yes.

21        At the February 24, 2020, oral argument, it was

22  Mr. Roche that I heard from first who began by explaining his

23  firm's expertise in the crypto-asset space, and in so doing

24  countering the position offering by the competing Robbins

25  Geller firm regarding the appropriate definition of the class.

MADHTetD

```
 1              Ms. Halligan then came in to explain the selling

 2    points of each firm and, more to the point, why I should

 3    appoint all three of them.  Roche Freedman for their -- her

 4    words, not mine -- unparalleled expertise in cryptocurrency;

 5    Schneider Wallace for their class action experience; and what

 6    was, I believe, then the Selendy & Gay firm, it's now Selendy

 7    Gay & Elsberg, for their experience with complex litigation and

 8    state law claims.

 9              Mr. Roche and Ms. Halligan's arguments convinced me to

10    appoint the three firms as interim class counsel despite my

11    initial expressed hesitancy to do so.

12              In my oral decision, which I believe was issued

13    February 27 of 2020, I remarked, and I'm quoting here, that

14    "what interests me about this case is that it is an interesting

15    combination of old and new.  The cryptocurrency laws is quite

16    novel and lots of issues and not a lot of resolution, but there

17    is a lot of established law out there with respect to the

18    pleading requirements, with respect to traditional antitrust

19    issues and RICO and the Commodities Exchange Act."

20              I included the Roche Freedman to address the novel

21    legal issues that were expected to arise.  I did so based

22    largely on the oral advocacy and anticipated involvement of

23    Mr. Roche, and he is no longer involved in the litigation.

24              But that analysis, while accurate, is also a bit

25    facile.  We are more than two and a half years removed from my
```

1    order appointing interim class counsel, and I daresay that we

2    all know more about crypto-assets, crypto exchanges,

3    stablecoin, and crypto commodities than we did when this

4    litigation began.  That said, Mr. Freedman, from the Roche

5    Freedman firm, has forcefully argued that the firm still has a

6    leg up on their cocounsel when it comes to this particular area

7    of the law.

8            On the other side of the equation is the additional

9    litigation that would ensue if the Roche Freedman firm were to

10   remain in the case.  Defense counsel has made it clear that

11   there will be additional litigation both during the discovery

12   phase if Roche Freedman continues to have access to materials

13   produced by the defendants under the protective order, and then

14   later in connection with the class certification stage.

15           I want to be clear, or I should say that I'm not

16   optimistic that discovery will be entirely free from disputes

17   if Roche Freedman is out of the case, particularly given the

18   disputes I've already resolved.  But I do acknowledge that

19   there will be additional litigation if and because the firm

20   remains in the case.

21           The question here distills to what counsel structure

22   is in the best interests of the putative class, and to me that

23   further distills to whether the incremental benefits of Roche

24   Freedman remaining as interim class counsel in terms of their

25   institutional knowledge and their expertise in one of the

MADHTetD

1   substantive areas of the law implicated by the case outweigh

2   the additional litigation burdens occasioned by their

3   involvement.  Ultimately, I find that the burdens outweigh the

4   benefits.

5          For starters, we are two years into this litigation.

6   Everyone has benefited from the on-the-job instruction we've

7   received on crypto-assets and crypto exchanges.  And as a

8   result, I believe that the Selendy and the Schneider firms are,

9   or quickly can be, up to speed on that area of the law.

10  Further, I believe that they already have superior expertise in

11  other areas of the law implicated by this litigation, including

12  the Sherman Act, the Commodities Exchange Act, common law

13  fraud, and issues of class action certification.  So in

14  consequence, I find that the putative class will not suffer any

15  loss in the quality of their representation if the Roche

16  Freedman firm is discontinued as interim class counsel.

17         Now, just to amend what I've just said, I said we're

18  two years into this litigation.  I think we're closer to three.

19  We've been in this litigation for several years.  Let me look

20  at the converse position, though.

21         The parties have been fighting since long before

22  Mr. Roche's disclosures were made.  I am concerned that

23  establishing another front for the parties' disputes will

24  derail this litigation.  What is more, I cannot be sure at this

25  time of the size of this new front.  So in this regard, I don't

MADHTetD

1   share Mr. Normand's view expressed in oral argument that this

2   additional litigation would be but a brief distraction and not

3   disabling.  These ancillary disputes will extend this

4   litigation, they cannot be dismissed summarily, and I don't

5   think that it's in the best interests of the class if they

6   persist.

7           Related to this point is my concern that Mr. Roche's

8   problems will extend to others at his firm or will otherwise

9   adversely impact the case before me.

10          Now, this is almost certainly a consequence of the

11  recency of these disclosures, but the fact is we, or anyone,

12  had not yet gotten to the bottom of the relationship that

13  Mr. Roche has or had with Ava Labs and, by extension, whether

14  the litigation strategies suggested in his recorded comments

15  were implemented by him with respect to Ava Labs or other

16  clients of the firm or by others at the firm.

17          It is too easy to say that Mr. Roche was drunk and

18  stupid.  His statements were coherent and logical and too

19  detailed for me to dismiss out of hand.  Roche Freedman has

20  offered a number of arguments seeking to mitigate or

21  contextualize these statements, but largely they do not

22  succeed.  For example, the firm asserts that their involvement

23  in the instant litigation, or their decision to bring the

24  instant litigation, predates the formation of or certainly the

25  retention by Ava Labs, and that may be.  But Mr. Roche's

MADHTetD

1    comments did not suggest that his strategic use of class action

2    litigation only came into existence after his dealings with Ava

3    Labs.  Similarly, even if I accept Roche Freedman's arguments

4    that the defendants in this litigation are not competitors of

5    Ava Labs, I cannot say that Mr. Roche's professed class action

6    litigation strategy was limited to that one client.

7            Furthermore, given what Mr. Roche did say on the

8    point, I am not comforted by the fact that he did not

9    specifically say in the recordings that he shared confidential

10   materials produced in discovery in this case.  And I completely

11   reject the counterargument that removing the Roche Freedman

12   firm as interim class counsel would somehow incentivize

13   misconduct by defense attorneys.

14           Nor am I persuaded after reading and considering

15   Mr. Roche's declaration that he didn't capitalize on synergies

16   between this litigation and the interests of other Roche

17   Freedman clients.  To begin, I currently don't accept his

18   current explanation that he was merely referring to

19   whistleblowers or insiders, given the comments that were made.

20           More fundamentally, the issues created by -- for

21   Mr. Roche by these disclosures are evolving.  They clearly

22   extend beyond this case.  I have only limited visibility into

23   these issues, and I will not make findings about what

24   Mr. Roche did or did not do or meant or did not mean based on a

25   two-and-a-half page declaration without a more extensive

1    investigation.

2          Now, to be clear, I acknowledge that there is a

3    difference between Mr. Roche and the Roche Freedman firm, but

4    at this point in time, I have concerns about the firm as well.

5    I acknowledge that similar disclosures haven't been made about

6    other lawyers at the firm, but it remains the case that one of

7    the two named partners at the firm, and the very person who

8    persuaded me to add the Roche Freedman firm to the interim

9    class counsel team, touted a theory of class action litigation

10   that I believe amounts to improper purposes.

11         If Mr. Roche's boasts are true -- and, again, I can't

12   reject them out of hand -- then it would actually surprise me

13   if such an ethos were limited to Mr. Roche alone.  In any

14   event, the degree to which the Roche Freedman firm has

15   attempted to minimize Mr. Roche's statements gives me concern

16   that they don't appreciate the seriousness of those statements,

17   and I've already explained the dim view with which I hold the

18   firm's arguments in mitigation.

19         I want now to return to my earlier point, and that is

20   that allowing the Roche Freedman firm to continue as interim

21   class counsel with the metaphorical baggage they now carry is

22   not in the best interests of the class.  Put somewhat

23   differently, I see this as a case of subtraction by addition,

24   wherein three law firms will have a more difficult time

25   litigating this case than two law firms because of the

1    aftershocks of Mr. Roche's comments.

2              And to repeat, I do not believe that the class will

3    suffer any diminution in their representation if the Selendy

4    and the Schneider firms remain, and for all of these reasons, I

5    am amending my prior order to remove Roche Freedman as interim

6    class counsel.

7              There is one related issue to address, and that is

8    that the Kirby Radice team of attorneys argued that the best

9    course of action here was to start with a clean slate, whereby

10   the Kirby and Radice firms would take over at interim class

11   counsel and, if and as appropriate, new class plaintiffs could

12   be substituted in.

13             While I have given this option consideration, serious

14   consideration, I have ultimately rejected it.  We are too many

15   years into this litigation to switch horses entirely, and I see

16   nothing to suggest that the Selendy and the Schneider firms

17   have comparable issues that would impact their ability to

18   represent the putative class adequately.  So the Selendy and

19   the Schneider firms will remain interim counsel.

20             In short, I am granting Mr. Roche's earlier motion to

21   withdraw because I don't believe I have done that.  I am

22   modifying my prior order to remove Roche Freedman as one of the

23   three interim class counsel.  To the extent appropriate, I will

24   direct Roche Freedman to withdraw from any relevant protective

25   order entered in this case and to return any confidential

MADHTetD

1    materials that are covered by that agreement.

2           That is my decision in this case.  I thank you all for

3    listening to it, and I appreciate your allowing me to give it

4    as an oral decision rather than a written.

5           I wish you, your families, and your clients continued

6    safety and good health in this pandemic.

7           We are adjourned.  Thank you.

8           (Adjourned)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# ALLEN & OVERY

September 2, 2022

BY ELECTRONIC CASE FILING

Honorable Andrew L. Carter, Jr.
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 435
New York, New York 10007

**Allen & Overy LLP**
1221 Avenue of the Americas
New York, NY 10020

Tel          212 610 6300
Fax          212 610 6399
Direct line   212 756 1130
todd.fishman@allenovery.com

Re:    *Messieh v. HDR Global Trading Ltd. et al.*, No. 1:20-cv-3232 (ALC)

Dear Judge Carter:

We represent HDR Global Trading Limited, ABS Global Trading Limited, 100x Holdings Limited, Shine Effort Inc Limited and HDR Global Services (Bermuda) Limited in the referenced action.[1] We write on behalf of Defendants to respond to the motion of Kyle Roche, one of Plaintiffs' attorneys, to withdraw as counsel in this action. (Dkt. 105.) Though it is not customary for counsel to take a position on such matters, we believe it is important to bring to the attention of the Court certain publicly-reported information that, we believe, provides greater context for Mr. Roche's motion to withdraw. Given the number of concerns raised by this information, including information that calls into question representations made to this Court as part of the application of Mr. Roche's law firm to be appointed as interim class counsel, we request that the Court reconsider its prior Order appointing Roche Freedman LLP as interim class counsel.

Mr. Roche's motion to withdraw follows a report published by the Crypto Leaks website on August 26, 2022 that includes a series of video clips in which Mr. Roche, a founding partner of the Roche Freedman firm, makes a number of statements about his financial interest in Ava Labs, a blockchain platform, and his misuse of class action litigation.[2] Among other things, Mr. Roche states that:

---

[1]  The individual defendants in this action are Ben Delo, Arthur Hayes, Samuel Reed and Greg Dwyer, each represented by separate counsel.

[2]  *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman*, CRYPTO LEAKS (Aug. 26, 2022), available at https://cryptoleaks.info/case-no-3 [https://perma.cc/N433-63SC].

Allen & Overy LLP is a limited liability partnership registered in England and Wales with registered number OC306763. It is authorized and regulated by the Solicitors Regulation Authority of England and Wales (SRA number 401323). Allen & Overy LLP is a multi-jurisdictional law firm with lawyers admitted to practice in a variety of jurisdictions. A list of the members of Allen & Overy LLP and their professional qualifications is open to inspection at its registered office, One Bishops Square, London, E1 6AD and at the above address. The term partner is used to refer to a member of Allen & Overy LLP or an employee or consultant with equivalent standing and qualifications.
Allen & Overy LLP or an affiliated undertaking has an office in each of: Abu Dhabi, Amsterdam, Antwerp, Bangkok, Beijing, Belfast, Boston, Bratislava, Brussels, Budapest, Casablanca, Dubai, Düsseldorf, Frankfurt, Hamburg, Hanoi, Ho Chi Minh City, Hong Kong, Istanbul, Jakarta (associated office), Johannesburg, London, Los Angeles, Luxembourg, Madrid, Milan, Moscow, Munich, New York, Paris, Perth, Prague, Rome, San Francisco, São Paulo, Seoul, Shanghai, Silicon Valley, Singapore, Sydney, Tokyo, Warsaw, Washington, D.C. and Yangon.

- He owns approximately 1% of the Avalanche tokens ("AVAX") issued by Ava Labs, as well as 1% of the equity in Ava Labs. Based on current estimates of AVAX tokens, it is possible that this financial interest is worth tens of millions of dollars.

- He agreed with a statement that he uses litigation as "a strategic instrument to support Ava Labs," which is "a completely different way than being a lawyer." He employs litigation as "a strategic tool to competition."

- Ava Labs does not file complaints against its competitors, but instead "they have me do that on behalf of the class."

- By filing lawsuits against competitors of Ava Labs, Mr. Roche "deal[s] with making sure that . . . the SEC and the CFTC have other magnets to go after."

In addition, Mr. Roche describes members of putative plaintiff classes whom he seeks to represent as "100,000 idiots out there" and refers to juries as "10 idiots" who "control the flow of all the money that happens in American class actions."

In a statement, Mr. Roche has characterized the videos as "illegally obtained, highly edited video clips that are not presented with accurate context."[3] Mr. Roche, however, does not deny that the reported statements were in fact made. Moreover, taken at face value, those statements contradict a series of statements made in Plaintiffs' motion to appoint interim class counsel. For example, Mr. Roche asserted that given his "excellent credentials" "the proposed Class will be represented by a highly capable and dedicated team of litigators." (Dkt. 21 at 3.) In addition, Mr. Roche's statements about advancing Ava Labs' interests through acting "on behalf of the class" directly impeach his "ability to fairly and adequately represent the interests of the class." (Dkt. 21 at 7.) Notably, in Plaintiffs' appointment papers, Mr. Roche touted that his firm and co-counsel were "recently appointed as interim class counsel" in another class action in this District against Bitfinex and Tether. (Dkt. 21 at 9.) Citing the Crypto Leaks report and Mr. Roche's application to withdraw as attorney, a motion has been made to remove Roche Freedman LLP as counsel in that action as well. *See In re Tether & Bitfinex Crypto Asset Litig.*, No. 19 Civ. 9236 (KPF) (S.D.N.Y.), Dkt. 230 (Aug. 31, 2022).

In his motion to withdraw, Mr. Roche states that he "is no longer involved in [Roche Freedman's] class action practice." (Dkt. 105.) This statement is hard to accept given that Mr. Roche is a founder of Roche Freedman LLP and, based on his prior declaration (Dkt. 23-1 at 5), the "class action practice" appears to comprise a majority of his firm's work.

Accordingly, Defendants respectfully request that, in response to Mr. Roche's motion to withdraw, the Court reconsider its prior Order appointing Roche Freedman LLP as interim class

---

[3] *Crypto Lawyer Kyle Roche Withdraws From Tether, Bitfinex, TRON and BitMEX Lawsuits After CryptoLeaks Scandal*, COINBASE (Aug. 31, 2022), available at https://www.coindesk.com/business/2022/08/31/crypto-lawyer-kyle-roche-withdraws-from-tether-bitfinex-tron-and-bitmex-lawsuits-after-cryptoleaks-scandal.

counsel.  Removing the Roche Freedman firm would not prejudice Plaintiffs, as they would remain represented by an experienced firm, Selendy Gay Elsberg PLLC.

We appreciate the Court's consideration of this matter.

Respectfully submitted,

*/s/ Todd S. Fishman*

Todd S. Fishman

Copy:  David C. Esseks
All Counsel of Record (by ECF)



555 California Street    415.875.2300
12th Floor              Fenwick.com
San Francisco, CA 94104

Dean S. Kristy
dkristy@fenwick.com | 415.875.2387

September 13, 2022

VIA ECF

Hon. Vernon S. Broderick
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re:     *Clifford et al. v. TRON Foundation et al.*, Case No. 1:20-cv-02804-VSB

Dear Judge Broderick:

We represent defendants TRON Foundation and Justin Sun. We write in response to
plaintiffs' August 31, 2022 Motion for Kyle Roche to Withdraw as Attorney. ECF No. 88.

This case is one of several cryptocurrency-related class actions filed in this district by Mr.
Roche's firm, Roche Freedman LLP ("Roche Freedman").  Mr. Roche filed a motion to
withdraw in four of those cases on the same day, this action being one of them.  The other
cases are *In re Tether & Bitfinex Crypto Asset Litig.*, No. 19-cv-9236-KPF,  *Messieh v. HDR
Global Trading Ltd.*, No. 20-cv-3232-ALC, and *Lee v. Binance,* No. 20-cv-2803-ALC.  In the
*Tether* and *Messieh* cases, defendants have responded by seeking removal of the Roche
Freedman firm as interim class counsel based on public statements attributed to Mr. Roche
concerning his motivations for bringing cryptocurrency-related litigation, which suggest that
the actions were brought for purposes unrelated to the merits.  In the wake of these
comments, the other plaintiff firms involved in *Tether* and *Messieh* have also sought to
remove the Roche Freedman firm as co-lead counsel (not just Mr. Roche individually).  In
*Messieh*, the Roche Freedman firm consented to withdraw after the named plaintiffs in that
action requested that the firm do so.  ECF No. 109.  In a fifth case, *Williams v. Block.one*, No.
20-cv-2809-LAK, the Roche Freedman firm moved to withdraw altogether, citing
"restructuring of its class action practice."  ECF No. 154.  For the same reasons discussed in
these parallel actions, Roche Freedman should be removed from this action.

As Mr. Roche's comments have already been subject to extensive submissions in these
similar cases, we will not repeat them all here.[1]  In short, on August 26, 2022, the Crypto
Leaks website published a report which included a series of video clips.  Those clips show

---

[1] We have attached a number of the most relevant submissions from those cases, including defense
opening and reply submissions (Ex. A), responses from Roche Freedman and Mr. Roche (Ex. B), and
submissions by other plaintiffs' counsel (Ex. C).

Hon. Vernon S. Broderick
September 13, 2022
Page 2

Mr. Roche (1) discussing his financial interest in a third-party cryptocurrency company; (2) discussing his misuse of class action litigation as a "strategic instrument" or "tool" to benefit that personal financial interest and harm cryptocurrency competitors, which is "a completely different way than being a lawyer"; and (3) making other derogatory comments about both class members and jurors.

Mr. Roche has submitted a declaration in at least one of the cases indicating that he was intoxicated when he made the comments and describing this footage as "illegally taken without my knowledge or consent." *In re Tether*, No. 19-cv-9236-KPF, ECF No. 232-1.  His firm has said the meeting that captured the footage was a "set up" and some statements made there were "intended to impress" but untrue. *Id.* at ECF No. 232 (included as Ex. B). Mr. Roche and his firm have not, however, denied that he made the statements.  In *Tether,* Judge Failla has scheduled an October 3, 2022 hearing to take up these issues.

Mr. Roche's statements are deeply troubling and raise serious issues regarding the bona fides of this lawsuit, which TRON and Mr. Sun have moved to dismiss.  Accordingly, as in these other cases, we believe it is appropriate to remove the Roche Freedman firm (not just Mr. Roche) as co-counsel for plaintiffs in this case.  We are prepared to address this matter at the Court's convenience and suggest doing so after the matter is resolved in *Tether.*[2]

Sincerely,

FENWICK & WEST LLP

/s/ Dean S. Kristy

Dean S. Kristy

DSK:jat

---

[2] As discussed in detail in the pending motion to dismiss, plaintiffs' amended complaint is fatally flawed.  Among other deficiencies, the claims are all time-barred, TRON is not a statutory seller under Section 12 of the Securities Act, and the federal securities laws do not apply extraterritorially to the claims, which involve sales of digital assets in 2017 completely outside the United States.

CRAVATH, SWAINE & MOORE LLP
Antony L. Ryan (admitted *pro hac vice*)
Kevin J. Orsini (admitted *pro hac vice*)
Lauren M. Rosenberg (admitted *pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Tel.: (212) 474-1000
Fax: (212) 474-3700
aryan@cravath.com
korsini@cravath.com
lrosenberg@cravath.com

QUINN EMANUEL URQUHART & SULLIVAN LLP
Michael E. Liftik (CA Bar No. 232430)
1300 I Street, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
michaelliftik@quinnemanuel.com
Emily C. Kapur (CA Bar No. 306724)
555 Twin Dolphin Dr., 5th Fl.
Redwood Shores, California 94065
Telephone: (650) 801-5000
emilykapur@quinnemanuel.com

*Counsel for Defendants Dfinity USA*
*Research LLC, Dfinity Foundation and*
*Dominic Williams*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

DANIEL VALENTI, Individually and on Behalf of All Others Similarly Situated,

                Plaintiff,

    v.

DFINITY USA RESEARCH LLC, DFINITY FOUNDATION and DOMINIC WILLIAMS,

                Defendants.

Case No.: 3:21-cv-06118-JD

**DEFENDANTS' MOTION TO DISQUALIFY ROCHE FREEDMAN LLP AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Date: November 17, 2022
Time: 10:00 a.m.
Courtroom: 11, 19th Floor
Judge: Hon. James Donato

## NOTICE OF MOTION AND MOTION

TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on November 17, 2022, at 10 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable James Donato, 450 Golden Gate Ave., San Francisco, CA 94102, Courtroom 11, 19th Floor, Defendants Dfinity USA Research, LLC, Dfinity Foundation, and Dominic Williams (together, "Defendants") will and do hereby move the Court for an order disqualifying Roche Freedman LLP as Lead Counsel in the above-captioned action.

This motion is made pursuant to California Rules of Professional Conduct Rule 1.7 and Rule 1.10, and is based upon this Notice of Motion and the Memorandum of Points and Authorities in Support, the Declaration of Kevin J. Orsini and exhibits attached thereto, the Request for Judicial Notice filed herewith, and such argument as may be heard.

## ISSUE TO BE DECIDED

Whether Roche Freedman LLP should be disqualified from representing Lead Plaintiffs and the putative class in the above-captioned action because Kyle Roche violated California Rule of Professional Conduct 1.7 and that violation is imputed to Roche Freedman LLP pursuant to California Rule of Professional Conduct 1.10.

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................ 1

II.    RELEVANT FACTS ................................................................................... 2

III.   LEGAL STANDARD ................................................................................ 8

IV.   ARGUMENT .............................................................................................. 9

     A.    Mr. Roche Violated the California Rules of Professional Conduct.    9

     B.    Mr. Roche's Individual Withdrawal Does Not Cure the Violation.    11

     C.    Disqualification of Roche Freedman is Appropriate.    13

V.     Conclusion ................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Anderson, et al. v. Binance, et al.*,
   20-cv-02803 (S.D.N.Y.) ...........................................................................................7

*Beltran v. Avon Prod., Inc.*,
   867 F. Supp. 2d 1068 (C.D. Cal. 2012) ...............................................................15

*Cal Pak Delivery, Inc. v. United Parcel Serv., Inc.*,
   52 Cal. App. 4th 1 (1997) ..............................................................................10, 14

*Cyrulnik v. Roche Freedman, et al.*,
   No. 2021-5837-CA-01 (Fla. 11th Cir. Ct., 2021) ............................................12, 13

*Diva Limousine, Ltd. v. Uber Techs., Inc.*,
   No. 18-cv-05546, 2019 WL 144589 (N.D. Cal. Jan. 9, 2019)...............................15

*Hardin and Williams v. TRON Foundation, et al.*,
   20-cv-02804 (S.D.N.Y.)....................................................................................7, 15

*Hitachi, Ltd. v. Tatung Co.*,
   419 F. Supp. 2d 1158 (N.D. Cal. 2006) ..........................................................12, 13

*Huston v. Imperial Credit Com. Mortg. Inv. Corp.*,
   179 F. Supp. 2d 1157 (C.D. Cal. 2001) .............................................................8, 14

*In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*,
   658 F.2d 1355 (9th Cir. 1981) ..............................................................................13

*In re Cty. of Los Angeles*,
   223 F.3d 990 (9th Cir. 2000) ..................................................................................8

*In re Tether and Bitfinex Crypto Asset Litigation*,
   19-cv-9236 (S.D.N.Y.) ...............................................................................7, 8, 15

*Jeong v. Nexo Financial LLC, et al.*,
   21-cv-02392 (N.D. Cal.) .........................................................................................7

*Kayes v. Pac. Lumber Co.*,
   51 F.3d 1449 (9th Cir. 1995) ..................................................................................9

*Kleiman v. Wright*,
   No. 22-11150 (11th Cir. September 6, 2022) .........................................................7

*Klein v. Facebook, Inc.*,
   No. 20-cv-08570, 2021 WL 3053150 (N.D. Cal. July 20, 2021) ......................8, 13

*Lockhart v. BAM Trading Services Inc., et al.*,
   22-cv-03461 (N.D. Cal.) .........................................................................................7

*Messieh v. HDR Global Trading Ltd.*,
    No. 20-cv-3232 (S.D.N.Y.)................................................................7, 15

*People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*,
    20 Cal. 4th 1135 (1999) ...........................................................8, 9, 11

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .............................................................8

*Visa U.S.A., Inc. v. First Data Corp.*,
    241 F. Supp. 2d 1100 (N.D. Cal. 2003) ...............................................8

*Williams v. Block.one, et al.*,
    20-cv-2809 (S.D.N.Y.).......................................................................14

*Young v. Solana Labs, Inc. et al.*,
    22-cv-03912 (N.D. Cal.) .....................................................................7

**Statutes & Rules**                                                    **Page(s)**

California Rule of Professional Conduct 1.7(b) ................................2, 9, 10, 11

California Rule of Professional Conduct 1.10 .................................2, 11, 13

United States District Court for the Northern District Of California Civil Local Rule 11-4...........8

Federal Rule of Civil Procedure 23 ..............................................8, 14

Private Securities Litigation Reform Act of 1995 ..........................8, 14, 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Defendants respectfully ask this Court to disqualify Roche Freedman LLP ("Roche Freedman") as Lead Counsel to Lead Plaintiff and the putative class due to violations of the California Rules of Professional Conduct recently revealed in a shocking series of video clips of Kyle Roche—a founding partner of Roche Freedman.  On camera, Mr. Roche details his misuse of the legal system to advance the commercial interests of Ava Labs, a cryptocurrency client in which he owns substantial equity.  Mr. Roche boasts that he uses litigation as a "tool [for] competition" by (1) filing lawsuits against Ava Labs' competitors on behalf of purported classes he refers to as "10,000 idiots," (2) obtaining confidential information by "su[ing] half the companies in this space" in order to "see[] the insides" of other blockchain companies to advise Ava Labs, (3) "making sure the SEC and the CFTC have other magnets to go after" to deflect attention from Ava Labs, and (4) enforcing the personal vendettas of Ava Labs' CEO.  As described herein, Mr. Roche demonstrates a disregard for the integrity of the judicial system, calling jurors and his own clients "idiots" and boasting that he has the "power" and "resources" to take Ava Labs' competitors "to the end", thus disregarding the best interests of the putative class.

In a clear attempt to avoid the disqualification of his firm, Mr. Roche *individually* withdrew as counsel of record for the putative class soon after the videos were released.  He has taken this same approach in several other class actions he and his law firm filed against other Ava Labs competitors, in which defendants and co-lead counsel have similarly moved to disqualify Roche Freedman.  *See* Declaration of Kevin J. Orsini, Exhibits 2 to 11 attached thereto ("Ex(s).").

Mr. Roche's individual withdrawal is insufficient to cure the professional conduct violations, stated conflict of interest, and impropriety that now taint Roche Freedman's representation of the putative class.  In putative class actions such as this one, appointed lead counsel are subject to a heightened standard, and must be able to show they can fairly and adequately represent the interests of the class.  Courts in this circuit have held that

-1-

disqualification in the class action context is more compelling and more likely than in individual representations, as the court has an obligation to closely scrutinize counsel's ability to represent absent class members. Here, Mr. Roche's statements reveal that Roche Freedman does not meet that heightened standard. The video clips demonstrate that Mr. Roche has violated California Rule of Professional Conduct 1.7(b), which prevents a lawyer from representing a client if there is a risk that the representation will be impacted by the lawyer's own interests or those of another client. This violation, in turn, prevents Roche Freedman from continuing as counsel pursuant to California Rule of Professional Conduct 1.10, providing for vicarious disqualification of the associated firm.

Given Roche Freedman's size—a boutique firm with fewer than ten partners—and Mr. Roche's position as a named and founding partner, disqualification of Roche Freedman is necessary to resolve the impropriety exposed in the videos. Moreover, Mr. Roche is not the sole beneficiary of Roche Freedman's agreement with Ava Labs. Other Roche Freedman partners similarly received tokens for the strategic "legal services" provided to Ava Labs, including at least one other partner who has entered an appearance in this litigation and has not withdrawn. Mr. Roche's individual withdrawal from this action serves as an admission that he is unable to adequately represent the putative class. Neither is Roche Freedman. Disqualification would not prejudice Lead Plaintiff or the putative class at this early stage of the litigation as they may be afforded sufficient time to obtain replacement counsel.

## II.     RELEVANT FACTS

On August 9, 2021, Roche Freedman filed this action on behalf of a putative class of "[a]ll persons who purchased ICP tokens from May 10, 2021, to the present". (ECF No. 1 at 28.) On October 12, 2021, Henry Rodriguez filed a motion for appointment as Lead Plaintiff and to appoint Roche Freedman as Lead Counsel. (ECF No. 21.) In emphasizing that "Roche Freedman's lawyers [] have unique and unparalleled expertise with respect to litigation involving cryptoassets like ICP", the motion identifies Mr. Roche as "a lead attorney from Roche Freedman", and "a recognized thought leader in the industry" who "has published multiple articles on the intersection of cryptoassets and the law" and "represents plaintiffs in some of the

2

most significant disputes in the crypto industry". (*Id.* at 10.) On December 20, 2021, the Court appointed Roche Freedman as Lead Counsel in this Action. (ECF No. 42.)

On August 26, 2022, *Crypto Leaks* released a report and a series of video clips in which Mr. Roche describes his firm's close ties to Ava Labs—a company that develops a blockchain called Avalanche—and its executives, his financial interest in Ava Labs, and his firm's improper use of litigation against Ava Labs' competitors. *See* Ex. 1, *Ava Labs (Avalanche) attacks Solana & cons SEC in evil conspiracy with bought law firm, Roche Freedman* (Aug. 26, 2022), https://cryptoleaks.info/case-no-3. Mr. Roche states that he formed Roche Freedman on August 1, 2019, the same day that Ava Labs launched, and that both companies shared the same co-working space.[1] Mr. Roche says he "agreed to provide legal services in exchange for a certain percentage" of the cryptocurrency tokens issued by Ava Labs ("AVAX"), and was one of the first people to receive such tokens, along with equity in Ava Labs, for his services.[2] Indeed, Mr. Roche explains that "obviously, I'm biased", as he has "an interest in Ava Labs . . . a big one. I did very well."[3] Specifically, Mr. Roche indicates that he owns approximately 1% of the AVAX token supply and the equity of Ava Labs,[4] worth tens of millions of dollars or more. Mr. Roche admits his personal bias in favor of Ava Labs, agreeing that they have the "same

---

[1] Video 1 (https://d33wubrfki0l68.cloudfront.net/1a432cb907f50390478d5c7b5c2c30c24547d110/5ca00/videos/c3-00-office-ava-labs-launch.mp4).

[2] Video 2 (https://d33wubrfki0l68.cloudfront.net/ba470e47132c5cb938f344be9ffd8261adc0eca2/6c3ea/videos/c3-01-office-deal-for-perc-token-supply.mp4). On September 13, 2022, Ava Labs co-founder Emin Gün Sirer claimed in a blog post that Mr. Roche's "equity interest in Ava Labs . . . will end". *See* Emin Gün Sirer, *My Statement about the Crypto Leaks Lies*, Medium.com (updated September 13, 2022) (https://el33th4x0r.medium.com/my-statement-about-the-crypto-leaks-lies-ef2005da752). At a recent hearing in the Southern District of New York, Roche Freedman attorneys nonetheless confirmed that at least some other partners at the Firm continue to hold interests in Ava Labs.

[3] Video 3 (https://d33wubrfki0l68.cloudfront.net/96d2fbedbfb4ac619f2656ce923aa707cfca9cbe/3d59f/videos/c3-02-office-i-got-1-point-on-both.mp4).

[4] *Id.* The market capitalization of AVAX is currently approximately $5 billion dollars, meaning Mr. Roche's interest would be worth tens of millions of dollars. Mr. Roche also explains that this interest amounts to "a third of what [Ava Labs co-founder] Kevin" Sekniqi received. Video 4 (https://d33wubrfki0l68.cloudfront.net/7360f4c61d57fad10a087c767c32f5e1551088c1/f4e42/videos/c3-03-office-one-third-of-what-kevin-got.mp4).

interests, same goals".[5]  Mr. Roche describes his relationship with Ava Labs' co-founders Emin Gün Sirer and Kevin Sekniqi as "like brothers",[6] and Mr. Roche even says he now lives with Mr. Sekniqi.[7]  Mr. Roche confirms that he helps Ava Labs "in many situations", including regarding "regulation issues" and "competitors".[8]  According to Mr. Roche, "litigation is an underused tool", one he confirms he uses as "a strategic instrument to support Ava Labs".[9]  Because Mr. Roche was "fortunate in that I did the Ava Labs deal", he claims that "it's not about the money anymore for me it's about taking you guys to trial and the sport of it".[10]  Mr. Roche emphasizes: "I don't f***ing care about settling . . . I'm just a crazy motherf***er and I have resources, and I will take you to the end.  And taking you to the end . . . it won't be a nuisance settlement.  It will be, I've got a piece of paper that says I own your company now.  That is power . . . ."[11]

Mr. Roche describes at least four ways that Roche Freedman uses litigation to support Ava Labs.  *First*, Mr. Roche states that Roche Freedman files class action lawsuits against Ava Labs' competitors, because as Mr. Roche states, "litigation can be a tool to competition . . . a fantastic tool to competition".[12]  There is no dispute that Dfinity is a competitor to Ava Labs.

---

[5] Video 5 (https://d33wubrfki0l68.cloudfront.net/61dabcad45d46c6207e4acded4ab3 4a49a0aa163/fc7a7/videos/c3-04-office-same-interests-same-goals.mp4).

[6] Video 5 (https://d33wubrfki0l68.cloudfront.net/61dabcad45d46c6207e4acded4ab3 4a49a0aa163/fc7a7/videos/c3-04-office-same-interests-same-goals.mp4).

[7] Video 7 (https://d33wubrfki0l68.cloudfront.net/789531f0f9b4b55626c52801967 703b1968bca18/b171a/videos/c3-06-office-i-live-with-kevin-in-miami.mp4).

[8] Video 4 (https://d33wubrfki0l68.cloudfront.net/7360f4c61d57fad10a087c767c32f5e15 51088c1/f4e42/videos/c3-03-office-one-third-of-what-kevin-got.mp4).

[9] Video 6 (https://d33wubrfki0l68.cloudfront.net/a799bb8bcde3170c313e3ad7662a41 148621c4d1/2fbf3/videos/c3-05-office-litigation-is-a-strategic-instrument.mp4).

[10] Video 19 (https://d33wubrfki0l68.cloudfront.net/b4a2e7900f289e01ce2b25dfa5a 254850a22496d/e7035/videos/c3-17-i-can-sue-solana.mp4).

[11] Video 18 (https://d33wubrfki0l68.cloudfront.net/2f1313a474fff7dedbb5432d16e8487 25ce51e04/4f9ab/videos/c3-16-im-a-crazy-motherfucker.mp4).

[12] Video 10 (https://d33wubrfki0l68.cloudfront.net/1edf92baa6d2ec8203a8568c7869ef 5e4b326a71/428f7/videos/c3-09-magnets-for-sec-and-competitive-attacks.mp4).

Indeed, Mr. Roche says that "litigation is the most uncorrelated asset that exists, period".[13]

Mr. Roche explains:

> Q: Has Ava Labs filed a complaint against one of their
> competitors?
> Roche: No, they have me to do that on behalf of the class. Their
> name was never . . .
> Q: Explain.
> Roche: So, I can sue Solana . . .
> Q: Yeah.
> Roche: But a plaintiff will purchase Solana. . .
> **Q: And what about Dfinity?**
> **Roche: Oh yeah.**[14]

Thus, by filing lawsuits on behalf of absent class members and unsuspecting lead plaintiffs, Mr. Roche implies that Roche Freedman is able to conceal the true party in interest, Ava Labs, while inflicting harm on Ava Labs' competitors. *Second*, Mr. Roche explains that he acts as "Ava Labs' crypto expert"—expertise he gained "because [he] sue[d] half the companies in the [cryptocurrency] space" and has "seen the insides of every single crypto company".[15] In other words, Mr. Roche implies that he uses the confidential information produced in discovery in actions Roche Freedman files against blockchain companies to support Ava Labs. *Third*, Mr. Roche agrees that he is Ava Labs' "solver", and boasts that he "deal[s] with making sure that . . . the SEC and the CFTC have other magnets to go after" instead of Ava Labs.[16] Mr. Roche emphasizes that since the CEO of Ava Labs "signed [him] up", he has "ensured that there's no

---

[13] Video 25 (https://d33wubrfki0l68.cloudfront.net/443e70d9f96180e7219809abc4926 26856fbde02/7f50a/videos/c3-23-litigation-is-the-most-uncorrelated-asset.mp4).

[14] Video 19 (https://d33wubrfki0l68.cloudfront.net/b4a2e7900f289e01ce2b25dfa5a254 850a22496d/e7035/videos/c3-17-i-can-sue-solana.mp4). Mr. Roche also confirms that Dfinity is a competitor of Ava Labs. Video 17 (https://d33wubrfki0l68.cloudfront.net/b660cb79f51a 071ece800cda7fc3521e5e21a59d/0467e/videos/c3-16-0-dfinity-is-a-competitor-to-avalanche.mp4).

[15] Video 8 (https://d33wubrfki0l68.cloudfront.net/68e1d6812f6e7b039402f74be62f 625271142a20/73af8/videos/c3-07-office-i-sue-crypto-companies-to-see-inside.mp4).

[16] Video 10 (https://d33wubrfki0l68.cloudfront.net/1edf92baa6d2ec8203a8568c7869ef 5e4b326a71/428f7/videos/c3-09-magnets-for-sec-and-competitive-attacks.mp4).

such thing as regulation for what they want to do".[17]  *Fourth*, Mr. Roche describes litigation used to enforce the personal vendettas of Ava Labs CEO, Emin Gün Sirer ("Gün").  Mr. Roche says that he "took down one of Gün's biggest archnemeses",[18] and sued another individual who criticized Gün on social media, emphasizing "that's why Gün loves me".[19]

Mr. Roche also describes his views of the legal process, particularly with respect to securities class actions: "I don't think there's any reason to settle for less than half a billion to a billion. But for me, if we get $100 million settlement we are in the front page of all the legal press and so it's good for my partners and my firm."[20]  Mr. Roche goes on to disparage the plaintiff classes he purports to represent, describing them as "100,000 idiots".  Mr. Roche says: "I go to the Court, and I say, 'hey Court, I got $100 million for these 100,000 idiots out here. Give me $30 million and then I will administer'".[21]  As for juries, Mr. Roche characterizes them as "10 idiots [who] control the flow of all the money that happens in American class actions".[22]

On September 1, 2022, following the release of these videos, Roche Freedman filed a Notice of Withdrawal of Kyle W. Roche as Counsel for Plaintiffs in this action, noting that "Mr. Roche is no longer involved in [Roche Freedman's] class action practice and is therefore withdrawing as counsel of record in this case".  (ECF No. 70.)  Around that same day, Mr. Roche filed similar notices in several other actions his law firm brought against Ava Labs

---

[17] Video 11 (https://d33wubrfki0l68.cloudfront.net/91987bc2f582f24ecb688ab4c137a485d139dfe1/b4646/videos/c3-10-office-theres-no-such-thing-as-regulation.mp4).

[18] Video 15 (https://d33wubrfki0l68.cloudfront.net/54bcd83ef86e546fa4f97c2e481fba064e228c8d/483a3/videos/c3-14-gun-goes-after-craig-wright.mp4).

[19] Video 14 (https://d33wubrfki0l68.cloudfront.net/ccce812b0d07fc6c1bb9928d1a7a99db011ed1af/13125/videos/c3-13-gun-watches-video-once-a-month.mp4); *see also* Video 12 (https://d33wubrfki0l68.cloudfront.net/09acbd864d61cc489ffeb0fe889e19f7c0fce682/6e048/videos/c3-11-troll-says-gun-member-feto.mp4).

[20] Video 23 (https://d33wubrfki0l68.cloudfront.net/6ab1d54cf47b4b43a28ec4d52d2a12be5078b5d7/8826b/videos/c3-21-no-reason-to-settle-less-than-500m.mp4).

[21] Video 24 (https://d33wubrfki0l68.cloudfront.net/ca154b2403c4f503206afd0666cf4694c23c8dd3/de306/videos/c3-22-these-100000-idiots.mp4).

[22] Video 22 (https://d33wubrfki0l68.cloudfront.net/f580f15300ae3305352a21a810a4cbce4b1247a7/73e42/videos/c3-20-ten-idiots-control-the-flow.mp4).

competitors.  *See* Ex. 2 (*Young v. Solana Labs, Inc. et al.*, 22-cv-03912 (N.D. Cal.) (ECF No. 28)); Ex. 3 (*Lockhart v. BAM Trading Services Inc., et al.*, 22-cv-03461 (N.D. Cal.) (ECF No. 33)); Ex. 4 (*Jeong v. Nexo Financial LLC, et al.*, 21-cv-02392 (N.D. Cal.) (ECF No. 70)); Ex. 5 (*Hardin and Williams v. TRON Foundation, et al.*, 20-cv-02804 (S.D.N.Y.) (ECF No. 88)); Ex. 6 (*Anderson, et al. v. Binance, et al.*, 20-cv-02803 (S.D.N.Y.) (ECF No. 80)); Ex. 7 (*Messieh v. HDR Global Trading Ltd.*, No. 20-cv-3232 (S.D.N.Y.) (ECF No. 105)); and Ex. 8 (*In re Tether and Bitfinex Crypto Asset Litigation*, 19-cv-9236 (S.D.N.Y.) (ECF No. 229)).  In another case, Roche Freedman, as a firm, voluntarily filed a motion to withdraw its representation of the putative class "[g]iven recent restructuring of its class action practice group, the press of its current business, and the early stage of this litigation".  *See* Ex. 9 (*Williams et al. v. Block.one, et al.*, 20-cv-2809 (S.D.N.Y.) (ECF No. 154)).

Counsel in at least four actions also have moved to disqualify Roche Freedman as counsel in light of these recent developments.  *See* Ex. 8 (*In re Tether and Bitfinex Crypto Asset Litigation*, 19-cv-9236 (S.D.N.Y.) (ECF Nos. 230–236, 248)); Ex. 5 (*Hardin and Williams v. TRON Foundation, et al.*, 20-cv-02804 (S.D.N.Y.) (ECF Nos. 89, 92–93)); Ex. 7 (*Messieh v. HDR Global Trading Ltd.*, No. 20-cv-3232 (S.D.N.Y.) (ECF Nos. 106–09)); Ex. 10 (Motion to Disqualify Roche Freedman LLP, *Kleiman v. Wright*, No. 22-11150 (11th Cir. September 6, 2022)).  In three of these cases, not only do counsel for *Defendants* seek to disqualify Roche Freedman, but co-Lead Counsel for the *class* also seek to have Roche Freedman removed because "Roche Freedman's continued involvement in the litigation is not in the best interests of the class".  Ex. 5 (*Hardin and Williams* (ECF No. 93)); *see also* Ex. 8 (*In re Tether and Bitfinex Crypto Asset Litigation* (ECF No. 234)) ("Roche Freedman's continued representation of the class would likely spawn significant discovery and motion practice as to the veracity and/or import of the allegations [in the videos]. These issues are likely to unnecessarily distract from the merits of this dispute, and can be avoided by the removal of Roche Freedman as class counsel."); Ex. 7 (*Messieh v. HDR Global Trading Ltd.* (ECF Nos. 107–108)) (same).

In responding to these motions, Mr. Roche did not contest the authenticity of the video clips.  Instead, he indicated that they were taken without his knowledge while he was intoxicated,

although certain video clips appear to have been taken at different times and when Mr. Roche is not drinking nor exhibiting any signs of intoxication.  *See* Ex. 8 (Affidavit of Kyle W. Roche, *In re Tether and Bitfinex Crypto Asset* (ECF No. 232-1)).

## III.    LEGAL STANDARD

Attorneys practicing in the Northern District of California must adhere to the California Rules of Professional Conduct (the "Rules").[23]  Civ. L.R. 11-4; *see also Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1103 (N.D. Cal. 2003).  Disqualification of counsel based on a violation of the Rules is governed by California state law.  *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009); *In re Cty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).  The "right to disqualify counsel is within the discretion of the trial court as an exercise of its inherent powers".  *First Data Corp.*, 241 F. Supp. 2d at 1103 (citing *United States v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996)).  In deciding a motion to disqualify counsel, "[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1145 (1999).  While clients have the "right to counsel of one's choice", that right "must yield to ethical considerations that affect the fundamental principles of our judicial process".  *Id.*

"Two requirements must be met in order for the Court to disqualify counsel.  First, counsel must have violated the Rules of Professional Conduct. . . . Second, the Court must conclude that it is appropriate to order disqualification." *Klein v. Facebook, Inc.*, No. 20-cv-08570, 2021 WL 3053150, at *4 (N.D. Cal. July 20, 2021) (internal citations omitted).  In a class action governed by Federal Rule of Civil Procedure 23 and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), "disqualification is more likely because putative class counsel are subject to a 'heightened standard' which they must meet if they are to be allowed by the Court to represent absent class members".  *Huston v. Imperial Credit Com. Mortg. Inv. Corp.*,

---

[23] On November 11, 2021, Mr. Roche and each of the other Roche Freedman attorneys appearing in this action filed Motions for leave to appear Pro Hac Vice, in which they each agreed to abide by the Local Rules of this Court including the "Standards of Professional Conduct for attorneys".  (ECF Nos. 24–27.)

179 F. Supp. 2d 1157, 1167 (C.D. Cal. 2001) (quoting *Palumbo v. Tele-Communications, Inc.*, 157 F.R.D. 129, 132–33 (D.D.C. 1994)).

## IV.    ARGUMENT

### A.    Mr. Roche Violated the California Rules of Professional Conduct.

California Rule of Professional Conduct 1.7(b) provides that "[a] lawyer shall not . . . represent a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client, a former client or a third person, or by the lawyer's own interests." Cal. R. Prof'l Conduct 1.7(b). The Comment to Rule 1.7 emphasizes: "Even where there is no direct adversity, a conflict of interest . . . under paragraph (b) exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities, interests, or relationships, whether legal, business, financial, professional, or personal." Cal. R. Prof'l Conduct 1.7, Comment 4. Attorneys "have a duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process". *SpeeDee Oil Change*, 20 Cal. 4th at 1146; *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995) ("The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel. . . . The 'appearance' of divided loyalties refers to differing and potentially conflicting interests and is not limited to instances manifesting such conflict.").

On camera, Mr. Roche vividly states—in his own words that he never thought would be discovered by the Court—that his personal interests and loyalties to Ava Labs come before, and predominate over, the interests of the putative class. Mr. Roche agrees that he uses litigation as a "strategic instrument to support Ava Labs", and specifically states that he files class action lawsuits—including against Dfinity—so that Ava Labs does not appear as plaintiff.[24]

---

[24] Video 6 (https://d33wubrfki0l68.cloudfront.net/a799bb8bcde3170c313e3ad7662a41 148621c4d1/2fbf3/videos/c3-05-office-litigation-is-a-strategic-instrument.mp4); Video 19 (https://d33wubrfki0l68.cloudfront.net/b4a2e7900f289e01ce2b25dfa5a 254850a22496d/e7035/videos/c3-17-i-can-sue-solana.mp4).

Mr. Roche's admissions regarding the use of "strategic" litigation as a competitive tool for Ava Labs provide ample evidence that Mr. Roche has compromised his ability to consider, recommend or carry out an appropriate course of action for the putative class in violation of Rule 1.7(b). Indeed, Mr. Roche states that his priorities are to use litigation as a tool against competitors of Ava Labs, obtain confidential information regarding "the companies in the [crypto] space" to benefit Ava Labs,[25] and maintain lawsuits to direct the attention of regulators to "other magnets" to avoid scrutiny of Ava Labs.[26] Mr. Roche has referred to litigation itself as a "tool to competition", and has implied that he misuses the discovery process to "see the insides" of his clients' competitors. (*Id.*)

Mr. Roche further explains that, because of the payment he has received from Ava Labs, he doesn't "care about settling". Mr. Roche specifically states that because of the compensation he has received from Ava Labs, "it's not about the money anymore for me it's about taking you guys to trial and the sport of it".[27] While he considers a large settlement "good for my partners and my firm" if it's on "the front page of all the legal press", he disparages the clients he is meant to represent as "idiots".[28] Prioritizing payment and publicity of Roche Freedman at the expense of the putative class members is a conflict of interest that directly violates the Rules. *See Cal Pak Delivery, Inc. v. United Parcel Serv., Inc.*, 52 Cal. App. 4th 1, 11 (1997) (case in which lawyer offered to "sell out" client for payment was "factually distinguishable from most of the disqualification cases, but the most notable difference is the magnitude of the ethical lapse").

---

[25] Video 8 (https://d33wubrfki0l68.cloudfront.net/68e1d6812f6e7b039402f74be62f625271142a20/73af8/videos/c3-07-office-i-sue-crypto-companies-to-see-inside.mp4).

[26] Video 10 (https://d33wubrfki0l68.cloudfront.net/1edf92baa6d2ec8203a8568c7869ef5e4b326a71/428f7/videos/c3-09-magnets-for-sec-and-competitive-attacks.mp4).

[27] Video 18 (https://d33wubrfki0l68.cloudfront.net/2f1313a474fff7dedbb5432d16e848725ce51e04/4f9ab/videos/c3-16-im-a-crazy-motherfucker.mp4); Video 19 (https://d33wubrfki0l68.cloudfront.net/b4a2e7900f289e01ce2b25dfa5a254850a22496d/e7035/videos/c3-17-i-can-sue-solana.mp4).

[28] Video 23 (https://d33wubrfki0l68.cloudfront.net/6ab1d54cf47b4b43a28ec4d52d2a12be5078b5d7/8826b/videos/c3-21-no-reason-to-settle-less-than-500m.mp4).

Mr. Roche not only demeans the putative classes he claims to represent—referring to them as "100,000 idiots"[29]—but also derisively refers to juries as "10 idiots [who] control the flow of all the money that happens in American class actions".[30]  Such statements mock the legal profession and the judicial process.

As described above, on September 1, 2022, after Mr. Roche's breach of the Rules was exposed, he withdrew as counsel of record in this action.  (ECF No. 70.)

### B.  Mr. Roche's Individual Withdrawal Does Not Cure the Violation.

California Rule of Professional Conduct 1.10 provides that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by rule[] 1.7".  "The vicarious disqualification rule recognizes the everyday reality that attorneys, working together and practicing law in a professional association, share each other's, and their clients', confidential information."  *SpeeDee Oil Change*, 20 Cal. 4th at 1153–54.  Mr. Roche has violated Rule 1.7, and pursuant to the plain language of Rule 1.10, such violation is imputed to Roche Freedman.

The individual withdrawal of Mr. Roche does not address the serious issues regarding his statements about the misuse of class action lawsuits generally and the potential misuse of discovery imputed to Roche Freedman.  Even though Mr. Roche is no longer counsel of record, there can be no dispute that, as the named partner of the small firm that he founded, should this action proceed with Roche Freedman as counsel there would be an ongoing concern about his access to discovery materials and he would retain the ability to direct the conduct of other lawyers at the firm.  Mr. Roche's declaration that he uses lawsuits such as this one as a "tool to

---

[29] Video 24 (https://d33wubrfki0l68.cloudfront.net/ca154b2403c4f503206afd0666cf4694c2 3c8dd3/de306/videos/c3-22-these-100000-idiots.mp4).

[30] Video 22 (https://d33wubrfki0l68.cloudfront.net/f580f15300ae3305352a21a810a4cbce 4b1247a7/73e42/videos/c3-20-ten-idiots-control-the-flow.mp4).

competition"[31] and that he has "seen the insides" of blockchain companies[32] offers further support for vicarious disqualification, as Mr. Roche seems to say that it was his intention all along to abuse the discovery process in order to advise Ava Labs—a client in which Mr. Roche and Roche Freedman have a substantial financial interest through their ownership of tens of millions of dollars in AVAX tokens.

These concerns are magnified by Mr. Roche's position at his namesake firm, and Roche Freedman's extensive relationship with Ava Labs. Mr. Roche is a founding and named partner of Roche Freedman, a boutique firm with fewer than ten partners across all practice areas. In a résumé filed with this Court, Roche Freedman identifies only two attorneys under "Cryptocurrency Expertise": Kyle Roche and co-founding partner Devin "Velvel" Freedman. (ECF No. 21-6.) Both Mr. Roche and Mr. Freedman apparently own substantial amounts of AVAX tokens, as do other attorneys at Roche Freedman, including Edward Normand, who has entered an appearance in this litigation and has not withdrawn. *See* Ex. 11 (Compl. Ex. A, *Cyrulnik v. Roche Freedman, et al.*, No. 2021-5837-CA-01 (Fla. 11th Cir. Ct., Mar. 9, 2021), Dkt. No. 2).[33] The small size of the firm and the widespread relationship with Ava Labs "exacerbates the problem of proximity" contemplated by Rule 1.10. *Hitachi, Ltd. v. Tatung Co.*, 419 F. Supp. 2d 1158, 1165 (N.D. Cal. 2006).

---

[31] Video 10 (https://d33wubrfki0l68.cloudfront.net/1edf92baa6d2ec8203a8568c7869ef5e4b326a71/428f7/videos/c3-09-magnets-for-sec-and-competitive-attacks.mp4).

[32] Video 8 (https://d33wubrfki0l68.cloudfront.net/68e1d6812f6e7b039402f74be62f625271142a20/73af8/videos/c3-07-office-i-sue-crypto-companies-to-see-inside.mp4).

[33] Ongoing litigation between former and current Roche Freedman partners over the distribution of tokens from Ava Labs provides further evidence of Roche Freedman's ties to Ava Labs. Mr. Roche and Roche Freedman were sued by a former Roche Freedman partner who alleges that Mr. Roche and others "illegally oust[ed]" him from the firm to take his portion of "a fee payable in cryptocurrency by one of the Firm's clients that only days before had suddenly appreciated exponentially to more than $250 million". Ex. 11 (Compl. at p. 1, *Cyrulnik v. Roche Freedman, et al.*, No. 2021-5837-CA-01 (Fla. 11th Cir. Ct., Mar. 9, 2021), Dkt. No. 2). The complaint appends a Memorandum of Understanding, which provides that "[i]n exchange for legal services, Ava Labs has agreed to pay Roche Freedman LLP a certain amount of Tokens over a thirty-six month period beginning on September 30, 2019", and identifies distribution of Ava Labs tokens to Mr. Roche, Mr. Freedman, Mr. Normand and others. *Id.* Ex. A.

Accordingly, any attempt by Roche Freedman to impose an ethical wall or screen between Mr. Roche and other attorneys at Roche Freedman would not cure the violation. *See id.* (holding that "screening procedures utilized" at small firm were "insufficient to adequately . . . prevent the appearance of impropriety"). Should this action survive Defendants' motion to dismiss, Defendants have serious concerns about proceeding to discovery based on Mr. Roche's stated intention to "see[] inside" Ava Labs' competitors for the benefit of Ava Labs. There is no doubt that Mr. Roche will continue to have "substantial contact" with the other attorneys in this practice that seek to continue to represent the class in this action (*id.*), including Mr. Normand, who remains in the case and who reportedly receives Ava Labs tokens pursuant to a firm agreement. *See* Ex. 11 (Compl. Ex. A, *Cyrulnik v. Roche Freedman, et al.*, No. 2021-5837-CA-01 (Fla. 11th Cir. Ct., Mar. 9, 2021), Dkt. No. 2). Roche Freedman should not be permitted to continue as Lead Counsel when there is even a suggestion that it may use knowledge that it gains in discovery to benefit another client. Mr. Roche's violations of the Rules must be imputed to Roche Freedman under Rule 1.10.

### C. Disqualification of Roche Freedman is Appropriate.

Mr. Roche's statements regarding his and his firm's abuse of the class action mechanism, his conflicted motivations for filing this and other suits, and improper use of confidential materials obtained in discovery, coupled with disparaging comments about clients and the judicial system, provide ample reason for this Court to disqualify Roche Freedman from serving as counsel for the class in this action. *See In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*, 658 F.2d 1355, 1360–61 (9th Cir. 1981) ("In order that the court may in fact control the conduct of attorneys appearing before it, the court should have the ability to disqualify attorneys if their conduct actually interferes with the integrity of the court, or actually produces an appearance of impropriety."). The "paramount concern" when considering a motion to disqualify "must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." *Klein*, 2021 WL 3053150, at *8 (quoting *SpeeDee Oil Change*, 20 Cal. 4th at 1145).

The critical factor that weighs heavily in favor of disqualifying Roche Freedman is that this is a putative class action governed by Fed. R. Civ. P. 23 and the PSLRA, in which class counsel is subject to a heightened standard to fairly represent absent class members. "In the class action context, the Court has an obligation to closely scrutinize the qualifications of counsel to assure that all interests, including those of as yet unnamed plaintiffs are adequately represented." *Huston*, 179 F. Supp. 2d at 1167 (citing Fed. R. Civ. P. 23(a)(4)). It is "[p]recisely because of the responsibility to absent class members" that counsel "in the class action context are subject to a heightened standard". *Cal Pak Delivery*, 52 Cal. App. 4th at 12. Accordingly, disqualification of counsel where a breach of the Rules has occurred in the class action setting is "even more compelling", *id.*, and "more likely" than individual representations, *Huston*, 179 F. Supp. 2d at 1167. This heightened standard applies even before a class is certified, during which time Lead Counsel is still obligated to "protect the interests of the putative class" and "act in the best interests of the class as a whole". Fed. R. Civ. P. 23, Advisory Committee's notes to 2003 amendments. Absent class members may not be aware of Roche Freedman's "betrayal of their interests"; if they were, they may "harbor continuing doubts about [the firm's] loyalty and the integrity of the judicial proceedings", which is reason alone to grant this motion to disqualify. *Cal Pak Delivery*, 52 Cal. App. 4th at 12.

These same issues also would prevent Roche Freedman's appointment as class counsel at the class certification stage under Fed. R. Civ. P. 23(g), which requires the Court to determine, among other things, that class counsel "fairly and adequately represent[s] the interests of the class" considering "any . . . matter pertinent to counsel's ability" to do so. Fed. R. Civ. P. 23(g)(1), (4). Indeed, Roche Freedman all but admitted it will fail to overcome this hurdle in another class action, when it recently withdrew from that action. In *Williams v. Block.one, et al.*, 20-cv-2809 (S.D.N.Y.), the court denied lead plaintiff's motion for final approval of a proposed class action settlement because lead plaintiff's interests conflicted with the class. Ex. 9 (*Block.one* (ECF No. 146)). Roche Freedman quickly filed a motion to substitute as lead plaintiff an individual that selected Roche Freedman as counsel, and to appoint Roche Freedman as co-lead counsel. *Id.* (ECF Nos. 148–49). Before its motion was decided, these videos were

released and Roche Freedman withdrew, citing "recent restructuring of its class action practice group, the press of its current business, and the early stage of this litigation". *Id.* (ECF No. 154). Roche Freedman's filing evidences its recognition that the firm is unable to fairly and adequately represent a class in an action against Ava Labs competitors. Indeed, co-lead counsel for other putative classes have sought to remove Roche Freedman as class counsel because "Roche Freedman's continued involvement in the litigation is not in the best interests of the class". Ex. 5 (*Hardin and Williams* (ECF No. 93)); *see also* Ex. 8 (*In re Tether and Bitfinex Crypto Asset Litigation* (ECF No. 234)); Ex. 7 (*Messieh v. HDR Global Trading Ltd.* (ECF Nos. 107–108)).

Disqualifying Roche Freedman would not prejudice Lead Plaintiff or the putative class, particularly given the early stage of the litigation. *See Beltran v. Avon Prod., Inc.*, 867 F. Supp. 2d 1068, 1084 (C.D. Cal. 2012) ("[P]rejudice to Plaintiff is minimal given the early stage of the litigation."). The motion to dismiss has not yet been decided, and the PSLRA automatic stay remains in effect. *See Diva Limousine, Ltd. v. Uber Techs., Inc.*, No. 18-cv-05546, 2019 WL 144589, at *14 (N.D. Cal. Jan. 9, 2019) (finding that "[non-movant] has not described any particular prejudice it would suffer as a result of" counsel's disqualification because "[t]his case is still in its early stages; no discovery has been conducted"). Accordingly, Lead Plaintiff and the putative class will not be prejudiced by identifying replacement counsel, but will benefit from lead counsel who is driven by the best interests of the putative class rather than the interests of itself and third parties.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that Roche Freedman be disqualified from representing Lead Plaintiff and the putative class in this Action.

Dated: October 4, 2022

CRAVATH, SWAINE & MOORE LLP

*/s/ Antony L. Ryan*
Antony L. Ryan (admitted *pro hac vice*)
Kevin J. Orsini (admitted *pro hac vice*)
Lauren M. Rosenberg (admitted *pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Tel.:  (212) 474-1000
Fax:  (212) 474-3700
korsini@cravath.com

*Counsel for Defendants*

QUINN EMANUEL URQUHART & SULLIVAN LLP

*/s/ Michael E. Liftik*
Michael E. Liftik (CA Bar No. 232430)
Sarah Heaton Concannon (*pro hac vice*)
1300 I Street, Suite 900
Washington, D.C. 20005
Telephone:  (202) 538-8000
michaelliftik@quinnemanuel.com
sarahconcannon@quinnemanuel.com

Emily C. Kapur (CA Bar No. 306724)
555 Twin Dolphin Dr., 5th Fl.
Redwood Shores, California 94065
Telephone:  (650) 801-5000
emilykapur@quinnemanuel.com

Brenna D. Nelinson (*pro hac vice*)
51 Madison Avenue, 22nd Fl.
New York, New York 10010
Telephone:  (212) 849-7000
brennanelinson@quinnemanuel.com

*Counsel for Defendants*

16