UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC

    plaintiffs,

v.                                              Case No. 9:18-cv-80176 (BB/BR)

CRAIG WRIGHT,

    defendant.
_____/

# DR. CRAIG WRIGHT'S OPPOSITION TO
# PLAINTIFFS' MOTION TO COMPEL COMPLETION OF FORM 1.977

W&K Info Defense Research, LLC ("W&K) has "moved to compel" Dr. Craig Wright to complete Form 1.977 within ten days. This motion is ill-founded and should be denied for a number of reasons. A motion to compel cannot be filed regarding an act a court hasn't ordered performed. But even if that were not so, this motion would require denial. Ira Kleiman lacks standing to file any purported motions on W&K's behalf. His late brother (and his brother's estate) never had more than a one-third ownership interest in W&K, let alone the 51% ownership interest required to speak for W&K on this motion, in this action, or anywhere else. Thus, Ira Kleiman's lawyers, Freedman Norman & Friedland LLP (formerly known as Roche Freedman LLP) ( "Roche Freedman")[1], and Boies Schiller Flexner LLP ("Boies Schiller"), have no standing to speak for W&K.

---

[1] It is legally irrelevant that the plaintiffs have attempted to sanitize their lawyers' record of misconduct by discharging Roche Freedman—or arranging the withdrawal of Kyle Roche just three days ago—which would properly be disqualified pursuant to Dr. Wright's motion, which this Court has jurisdiction to decide, as demonstrated below.

1

Moreover, Roche Freedman and Boies Schiller have been discharged by W&K's actual majority owners, and W&K is diligently seeking new counsel, who will appear as soon as they are engaged. Accordingly, neither the Estate nor its purported lawyers have standing to move for anything on behalf of W&K, and this purported motion is a legal nullity. Finally, because plaintiff's purported motion concedes and travels on the theory that the Court retains jurisdiction to enforce the W&K judgment, it also concedes (and consents to) this Court's jurisdiction to decide Dr. Wright's motion to disqualify Roche Freedman [ECF 900]. The instant, purported motion changes the record on which the Court denied without prejudice Dr. Wright's motion to disqualify Roche Freedman (on the theory that jurisdiction was lacking) [ECF 901]. If the Court is now inclined to exercise jurisdiction over this motion with respect to the W&K judgment (a proposition the Court appears to have accepted with its referral of the disqualification motion to the magistrate in the recent order found at ECF 909), parity of reasoning requires that it address the motion to disqualify Roche Freedman, which it should decide *before* entertaining this motion at all.

## RELEVANT FACTS

In this litigation and at trial, the claims and defenses ruled on by the Court (and jury) did not determine who owns and controls W&K. However, the question of W&K's ownership and control is the subject of a declaratory judgment action[2] pending in the Circuit Court for the 15th Judicial Circuit in Palm Beach County, which was filed on April 13, 2021. *See Ramona Ang v. Ira Kleiman*, Case No. 50-2021-CA-004758-XXXX-MB (the "Declaratory Judgment Action").

---

[2] In light of this action pending in state court, the Court should hold this motion in abeyance until the state court has reached a resolution. *Cf. Commonwealth of Pennsylvania v. Williams*, 294 U.S. 176, 185 (1935) ("It has long been accepted practice for the federal courts to relinquish their jurisdiction in favor of the state courts, where its exercise would involve control of or interference with the internal affairs of a domestic corporation of the state.")

2

In the Declaratory Judgment Action, Romana Ang, as Trustee of the Tulip Trust, seeks a declaration about the ownership interests in W&K of the Tulip Trust, Lynn Wright and the Estate of David Kleiman (the "Estate"). The ownership of W&K has never been decided in any judicial proceeding and remains in dispute. There is but one thing about which there is no question: there is ***no evidence***—and Ira Kleiman has never claimed there was—that Dave Kleiman *ever* owned a majority interest in W&K when he was alive. In fact, as shown below, all of the uncontested evidence from David Kleiman's lifetime is consistent with and supports the determination that David Kleiman owned 1/3 of W&K. After David Kleiman's death, there is no evidence whatsoever that any ownership interest was added to David Kleiman's estate. Therefore, the Estate could not possibly hold a majority interest in W&K after his death.

### A. Evidence Regarding Ownership of W&K

Following an exchange of emails discussing formation of W&K, Dr. Wright, Dave Kleiman and Lynn Wright registered W&K with the Florida Secretary of State on February 14, 2011. A copy of the Articles of Organization is attached as **Exhibit A**; a compilation of emails relating to the formation of W&K is attached as **Composite Exhibit B**. The purpose of the company was to apply for research grants from the U.S. Department of Homeland Security ("DHS"). (Comp. Ex. B at D78.) Because he was not a United States citizen, Dr. Wright did not qualify to apply for the grants on his own. (*Id.*) So he partnered with Dave Kleiman, who was a U.S. army veteran, to submit grant proposals through W&K. *Id.*

From February 1, 2011, through March 6, 2011, Dr. Wright, Dave Kleiman, and Lynn Wright exchanged emails about the formation of W&K and the review and submission of proposals to DHS. (*See generally* Comp. Ex. B). As explained by Lynn Wright in her

deposition, the three of them collaborated to decide on a name that reflected their partnership and their ownership interests:

> Q. Do you know what the "W" in W&K Information Defense Research stood for?
> A. For Wright.
> Q. Okay. And did that stand for Craig Wright or Lynn Wright?
> A. Lynn Wright.
> Q. For Lynn Wright?
> A. Yes.
> Q. And what did the "K" stand for?
> A. For Dave Kleiman.
> Q. And what did "Information Defense" stand for?
> A. That was Craig.
> Q. So the company W&K Information Defense Research stood for Lynn Wright, Dave Kleiman and Craig Wright; is that correct?
> A. Yes.

(*See* transcripts of testimony attached as **Composite Exhibit C**, L. Wright Depo. Tr. 11:23-12:13). Indeed, "W&K's corporate representative" hand-selected by Velvel Freedman[3] conceded that Lynn Wright chose the name of the company. (Comp. Ex. C, Z. Eisner Depo. Tr. 74:17-19. Dr. Wright researched and drafted the proposals, Dave Kleiman and Lynn reviewed and revised them, and Dave Kleiman (with information supplied by Dr. Wright) completed the paperwork necessary to submit the proposals to DHS. (Comp. Ex. B**)**. Dave Kleiman submitted four proposals to DHS on behalf of W&K on March 2, 2011. (*Id*. at D250.)

During her deposition, Lynn Wright testified that the parties intended to each retain a 1/3 ownership interest in W&K:

> Q. Are you a shareholder in W&K?
> A. Yes.

---

[3] Eisner testified that it was Freedman— whom he had known for about a year through a lawyer's group chat—who contacted him about acting as W&K's corporate representative. Freedman invited Eisner to lunch and "told me what he needed me for." Dep. Tr. Z. Eisner 6:5-20.

4

> Q. Do you know how you became a shareholder in W&K?
> A. When I - when the - the company was originally set up, I think it was just divided between the three of us, I guess.
>
> (Comp. Ex. C, L. Wright Depo. Tr. at 22:14-17.)
>
> Q. Okay. Besides yourself, Craig and Dave, were there any other individuals involved in W&K, at any point in time? …
> A. To the best of my knowledge, there was nobody else that was involved in it.
>
> (*Id.*, at 96:19-97:4.)

Email traffic likewise reflects that Dr. Wright *always* intended that W&K have three principals. (Comp. Ex. B at J34 & J96.)[4] And at trial, Dr. Wright likewise testified that Dave Kleiman never owned a controlling interest in W&K:

> Dave Kleiman's estate never controlled W&K. Dave Kleiman was not the person behind it. He didn't fund it. He didn't put it in. The operating agreement, I don't have a copy of. Lynn would. Lynn was nominally in charge of the company, my ex-wife. So no, Dave Kleiman never controlled it. He was just the American person who needed to be there because I needed someone who was an American, a vet, because otherwise I didn't get to file those things.

(Comp. Ex. C, Trial Tr. Day 8 at 107:7-19.)

On March 6, 2011, Dr. Wright advised Dave Kleiman that Lynn Wright would be "taking over the company," because he was moving on to other activities. (Comp. Ex. B at P31.) W&K later became inactive for failure to file an annual report as required by the Florida Secretary of State. On April 12, 2018, Ira Kleiman unilaterally—and without legal authority—acted to

---

[4] At one point in the contemporaneous emails, Dr. Wright vacillated as to who the three principals would be, stating in two emails that he, Dave Kleiman and another individual named Bob Radvanovsky would each retain a 1/3 ownership interest. (Comp. Ex. B at J34 & J96.) But there was no intimation, ever, that Dave Kleiman would hold more than a 1/3 interest in W&K.

reinstate W&K for the sole purpose of joining it as a party to this lawsuit. A copy of the Reinstatement filed with the Florida Secretary of State is attached as **Exhibit D**.

### B. The W&K Judgment

On December 6, 2021, the jury in this case awarded W&K a $100 million judgment for conversion of intellectual property on one count.[5] The jury found in favor of Dr. Wright on all other claims, and rejected all of the Estate's claims. In the year since, W&K's trial counsel at Roche Freedman and Boies Schiller took no steps to collect the judgment on behalf of W&K, although Roche Freedman did file an appeal of the Estate's loss at trial, which is pending in the Eleventh Circuit.

### C. Roche Admits to Conflicts of Interest and Abuse of the Legal System

On August 27, 2021, a shocking series of recorded statements by Kyle Roche, one of the founders of Roche Freedman, appeared on a cryptocurrency whistleblower site called Crypto Leaks. In his statements to Crypto Leaks, Roche confessed to misusing the legal system for the purpose of unlawfully advancing the commercial interests of AVA Labs ("Ava"), a then-client of Roche Freedman, and an entity in which *several* of Roche Freedman's partners—including Roche and Freedman—held ownership interests, by suing Ava's competitors in the cryptocurrency industry. Roche's admissions constituted clear evidence of a conflict of interest and a course of conduct that was unlawful on its face.

On learning of Roche's admissions, Dr. Wright immediately moved to disqualify Roche Freedman as counsel in the Eleventh Circuit appeal, in the three then-pending state court actions,

---

[5] Presumably, whoever owns W&K will share in the proceeds of that judgment if collected. But, as above, it is beyond dispute that the David Kleiman Estate (which Ira Kleiman now controls) is not the majority owner, let alone the sole owner, of W&K.

and soon thereafter in this Court as soon as Roche Freedman attempted to demand a form 1.977 in November 2022. In a fruitless attempt to cut out the poison of the improper conflict conduct, Roche initially renounced his economic interest and role in Roche Freedman's class action practice (*See* Motion to Withdraw as Counsel filed in Case No. 1:19-cv-09236-KPF (S.D.N.Y) attached as **Exhibit E**) and later resigned from Roche Freedman (*See* https://www.reuters.com/legal/legalindustry/crypto-law-firm-roche-freedman-parts-ways-with-founder-after-video-leak-2022-10-19/). On November 29, 2022, this Court denied Dr. Wright's motion to disqualify without prejudice on the theory that it lacked jurisdiction over the motion because of the Eleventh Circuit appeal. When Roche Freedman filed this motion and acknowledged that jurisdiction exists, the Court referred the disqualification motion to the magistrate.

### D. W&K's Controlling Members Discharge Roche Freedman and Boies Schiller as Counsel

On November 23, 2022, the majority members of W&K took corporate action to discharge Roche Freedman and Boies Schiller as counsel to W&K by Written Consent of Members. A copy of the Written Consent discharging Roche Freedman and Boies Schiller is attached as **Exhibit F**. W&K's former counsel received the Written Consent by overnight courier on December 5, 2022. *See* Federal Express Delivery Confirmation, attached as **Exhibit G**.

Now, without ever having sought an order requiring that Dr. Wright complete Form 1.977 pursuant to Rule 1.560, and one month after receiving notice of its discharge, Roche Freedman asks the Court for an order compelling Dr. Wright to complete Form 1.977 within ten days. It has no right to such an order.

## ARGUMENT

### I. THE ESTATE HAS NO STANDING TO BRING THIS MOTION

Ira Kleiman, and his lawyers, purport to be able to exercise ownership and control over W&K. As a matter of indisputable fact, however, Ira Kleiman has never had a controlling membership share in W&K, and neither he nor his lawyers have standing to act for W&K.

Ira Kleiman never pretended to have majority control of W&K until April 12, 2018, the day he reopened W&K from dormancy. (Ex. C). Ira Kleiman and his lawyers acted to activate W&K just four days before Dr. Wright moved to dismiss Ira Kleiman's initial lawsuit in this case for want of a necessary party, W&K. [ECF 12]. Thirty-two days later, Ira Kleiman filed an amended complaint adding W&K as a plaintiff. [ECF 24]. But Dave Kleiman, and therefore Ira Kleiman as representative of the Estate, never had a controlling interest in W&K.

W&K's history demonstrates that neither Ira Kleiman nor his brother, David Kleiman, ever had a controlling interest in W&K. Indeed, the facts and common sense establish that David Kleiman (and thus Ira Kleiman) only had a 1/3 interest. W&K started as a joint effort of David Kleiman, Dr. Craig Wright, and Lynn Wright. Over the period February 1, 2011 to March 2, 2011, Dr. Craig Wright, Dave Kleiman and Lynn Wright worked collaboratively to form W&K and, through that entity, submit research proposals to DHS. (Comp. Ex. B.) Lynn Wright was actively involved in setting up the company, registering its website, choosing its name, and reviewing and revising the proposals Dr. Wright drafted for submission to DHS. (Comp. Ex. B at J32, D73, D75, D77, D82, D343, JE13)

Notably, in the five plus years of email exchanges between Dr. Wright and Dave Kleiman, Lynn Wright is never copied *until* discussions begin about forming W&K. That, in and

8

of itself, is circumstantial evidence of her interest in W&K, as is the fact that, on March 6, 2011, Dr. Wright placed her in charge of the company. (Comp. Ex. B at P31.)

In addition, *non*e of the documents created after Dave Kleiman's death demonstrate that he owned a controlling interest in W&K. Ira Kleiman testified at trial that he believed Dave Kleiman owned a 50% interest in W&K—not 51% or any greater amount that would give him authority to act on behalf of W&K. (Comp. Ex. C, Day 3 Trial Tr. at 155:4-7.) That testimony alone should preclude him from now arguing that he has the right to do anything on behalf of W&K. Simply put, *all* the documents created *while Dave Kleiman was alive* are consistent with W&K having three principals. Further, both Lynn Wright and Craig Wright have testified that Dave Kleiman did not have a majority interest. And in life, Dave Kleiman never claimed a majority interest.[6] There is no evidence at all that could support Dave Kleiman's majority control. Since Dave Kleiman could not control W&K while he was alive, Ira Kleiman certainly cannot control W&K after his brother's death. He therefore lacks standing to bring this motion.

## II.  ROCHE FREEDMAN AND BOIES SCHILLER HAVE NO AUTHORITY TO ACT ON BEHALF OF W&K

Given the corporate action by the actual majority members of W&K removing Roche Freedman and Boies Schiller as counsel, neither firm has the authority to move for this Court to do anything. Dr. Wright expects former counsel for W&K to argue that the corporate action was invalid given that the precise ownership of W&K has not yet been determined and is the subject of a pending action in state court. Not so. Even though no court has determined the *exact* ownership stakes in W&K, as discussed above, there is *zero* evidence that the Estate holds more

---

[6] In addition, *non*e of the documents created after Dave Kleiman's death demonstrate that he owned a controlling interest in W&K. In fact, the documents W&K admitted at trial stated that Dave owned, at most, a 50% interest in W&K. *See*, *e.g.*, **Exhibit H** (excerpt from P710).

9

than a one-third interest, let alone a controlling interest, in W&K. As such, the actual controlling members of W&K—whom Dr. Wright will prove to be Lynn Wright and Ramona Ang (in her capacity as trustee for the Tulip Trust)—had every right to remove Roche Freedman and Boies Schiller as counsel.

As noted above, W&K is seeking a new firm to represent its interests. Boies Schiller and the "successor" to Roche Freedman do not have the authority to ask this Court to enforce the judgment against W&K. That alone is sufficient to warrant denial of the motion to compel.

### III. THE MOTION TO COMPEL COMPLETION OF FORM 1.977 WITHIN TEN DAYS IS IMPROPER BECAUSE THIS COURT HAS NOT ENTERED AN ORDER DIRECTING ITS COMPLETION

Rule 1.560 provides that "*a court*, at the request of the judgment creditor, shall order the judgment debtor or debtors to complete form 1.977 . . . within 45 days of the order or such other reasonable time as determined by the court." A demand by counsel that a judgment creditor complete the form is, quite obviously, not an order of the Court. *See Nixon v. Miami-Dade Cty.*, 2022 WL 1137860, at * (S.D. Fla. 2022) ("In Florida, a prevailing party may request the Court instruct the judgment debtor complete under oath the Florida Rule of Civil Procedure Form 1.977 (Fact Information Sheet)."). Thus, if Roche Freedman wanted the form completed, it should have asked the Court to enter an order requiring its completion a long time ago. It didn't.

Instead, Roche Freedman waited *eleven months after* entry of the judgment—and almost several months *after* Dr. Wright moved to disqualify the firm in the Eleventh Circuit and in related state court cases—to demand completion of the form through a procedurally defective "motion to compel." Dr. Wright bears no responsibility for this delay, never had, and doesn't have, a duty to complete the form within ten days. Roche Freedman's lassitude in seeking an

order requiring completion of the form within 45 days (as Florida law provides) demonstrates that there is no emergency requiring any such relief.[7]

IV. **IF THE COURT HAS JURISDICTION TO OVERSEE ENFORCEMENT OF THE JUDGMENT, IT MUST ALSO CONSIDER THE MERITS OF DR. WRIGHT'S MOTION TO DISQUALIFY**

The Court does, Dr. Wright contends, have jurisdiction to decide W&K's (improper) motion, because it seeks aid in execution of the judgment in W&K's favor, which is not the subject of the appeal pending before the Eleventh Circuit. *Quantum Commc'ns Corp. v. Star Broad., Inc.,* 2007 WL 9700755, at *3 (S.D. Fla. 2007) ("[A] notice of appeal does not affect the district court's jurisdiction over matters that are collateral to the questions presented on appeal . . . . Additionally, a district court may retain jurisdiction to aid in execution of a judgment, provided it has not been superseded."). However, before the Court can entertain the pending motion, the Court must decide Dr. Wright's Motion to Disqualify. By filing a motion in aid of execution of the judgment for W&K, Roche Freedman puts directly at issue the representation of W&K and the ownership structure of W&K, i.e. who would be receiving the judgment for W&K. As further shown above and in Dr. Wright's Motion to Disqualify, Roche Freedman has engaged in a pattern of misconduct, including unlawfully resuscitating W&K and adding it to this lawsuit. As such, the Court must decide the Motion to Disqualify prior to deciding this motion.

                                      Respectfully submitted,

                                      RIVERO MESTRE LLP
*Attorneys for Dr. Craig Wright*
2525 Ponce de Leon Blvd., Suite 1000
Miami, Florida 33134

---

[7] If the Court were to disregard the Estate's minority interest in W&K, and instead were to entertain this motion "to compel" completion of a Form 1.977, then Dr. Wright would request, at a minimum, the 45 days contemplated by Rule 1.560, in which to complete such a form.

11

Tel.: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: arolnick@riveromestre.com
Email: ahenry@riveromestre.com
Email: receptionist@riveromestre.com

By: /s/ Andres Rivero_____
ANDRES RIVERO
Florida Bar No. 613819
ALAN H. ROLNICK
Florida Bar No. 715085
AMY BROWN
(*Pro Hac Vice*)
ALLISON HENRY
Florida Bar No. 1003008

## CERTIFICATE OF SERVICE

I certify that on January 20, 2023, I electronically filed this document with the Clerk of the Court.

By: /s/ Andrés Rivero.

Andrés Rivero