# Exhibit H

**P-710**

Case No. 9:18-CV-89176-BB

## File Closed



F0000FW50U

| File Number: | 2013/00225983-1 |
|---|---|

Case Title: Craig Steven Wright v W&K Info Defense Research LLC

Jurisdiction: Supreme Court - Civil

Location: Supreme Court Sydney

Division/List: Common Law General

CAUSE OF ACTION

| DATE | CORAM | APPEARANCES | RESULTS OR ORDERS MADE |
|---|---|---|---|
| ① 30/10/13 | *Reg* *Walton* | | |
| ② 6/11/13 | *Reg Kerns* | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

   KLEIMAN_00560883

**THIS AGREEMENT** dated 02 day of April 2013

**BETWEEN**

Dave Kleiman of W&K Info Defense LLC (Florida)

(Vendor)

And

Craig Wright of Craig Wright R&D
ABN 97 481 146 384

(Purchaser)

And

W&K Info Defense LLC

(Company)

## RECITALS

**A.**  The vendor is the owner of all issued shares in the company being ordinary class shares. Ownership is 50% in the vendor's name and 50% in trust held for the purchaser.

**B.**  The company is the owner of and conducts the business known as Bitcoin mining and Software development / Research.

**C.**  The vendor has agreed to sell and the purchaser has agreed to purchase the vendor's shares for the price and upon the terms set out hereunder.

**D.**  As the purchaser will succeed to the business of the company on completion of the acquisition of these shares, the parties agree that they will incorporate into this agreement those agreements contained in the attached contract for the sale of a business to the intent that they shall in relation to the sale of the shares have the rights and obligations contained in such contract as part of this agreement.

**E.**  The company has consented to and agreed to be bound by the terms of this agreement.

**F.**  The company includes all software, research material and other aspects of the business.

**G.**  The parties wish to commit the terms of their agreement to writing in the manner hereinafter set out.

Page 1 of 9

KLEIMAN_00560896

$40,000,000 are deemed paid in full for the above value. This is noted as consideration from the purchaser and is issued in forbearance of the requirements of the contract signed 22 April 2011 between the Vendor/Company and the purchaser (designated CEWK01).

(b)   The vendor agrees that the paper wallet with address "1933phfhK3ZgFQNLGSDXvqCn32k2buXY8a" held in escrow will be released to the purchaser.

(c)   Due to the unexpected rise in the value of Bitcoin, it is agreed that two transfers (in Bitcoin) of BTC 125,000 and BTC 125,500 when taken in conjunction with the supply of the software, will suffice to fulfil the contract.

3.   Hence, the vendor will:

(a)   Pay (transfer to) the purchaser 250,500 BTC on 30 April 2013,

(b)   Accept transfer of the escrowed Bitcoin paper wallet to the purchaser,

(c)   Transfer the ASC hardware to the purchaser,

(d)   Release the source code to the purchaser,

(e)   Transfer the Vistomail email account.

(f)   Transfer all research materials from the four (4) DHS BAA research projects to the purchaser with all notes, data and results, and

(g)   Transfer any shares in the company to the purchaser by 30 April 2013.

4.   The Purchaser will:

(a)   Accept the new terms in full satisfaction of the contract with Reference CEWK01 made between the vendor/company and the purchaser on 22 April 2013.

(b)   Accept the vendor's 323,000 remaining "mined" Bitcoin as a 49.5% stake in a new venture to be formed in Australia (to be called Coin-Exch Pty Ltd) between the vendor and the purchaser for the exploitation of the joint and to be pooled Bitcoin

(c)   Accept the transfer of the 323,000 Bitcoin (to be made on the 30th April 2013) as capital and note that shares in the new enterprise will be issued at this point.

Page 3 of 9

CONFIDENTIAL

KLEIMAN_00560897

(d)   Provide $30,000,000 in capital into Coin-Exch Pty Ltd (to be formed) and the software developed in the prior venture.

5.   Settlement shall be effected on 30 April 2013.

6.   So far as they are relevant the agreements contained in the incorporated contract for the sale of a business shall be agreements between the parties herein.

7.   In the event of either party failing to complete this agreement on the settlement date then the other shall be entitled at any time thereafter to serve a notice to complete requiring the other to complete within 14 days from the date of service of the notice, which time period is considered reasonable by both parties. For the purpose of this contract, such notice to complete shall be deemed both at law and in equity sufficient to make time of the essence of this contract.

8.   On the settlement date the vendors shall:
(a)   Deliver up to the purchaser possession of the business conducted by the company and in all respects shall have complied with the terms of the business sale contract incorporated herein;
(b)   Deliver up to the purchaser duly executed instruments of transfer of their shares;
(c)   Cause a meeting of the directors of the company to be held at which the directors shall approve and consent to the sale and transfer by the vendors to the purchaser of the vendors' shares.
(d)   Send all software developed under the various DHS BAA filings to the purchaser (incl. source code and documentation).
(e)   Provide the location and access rights to the ASC mining hardware hosted at a site known to Mr Kleiman will be returned with this transfer. This has a nominal value of $8,828,571.29 before depreciation. This is a
(f)   Solutions to the Agent and Merkle Tree problems developed by Professor David Reese.
(g)   Bitcoin agent software and suit of C/C++/C# and Python Blockchain software source codes.

Page 4 of 9

(h)   Exchange Bitcoin holdings as noted in the contract.

9.   The company hereby agrees to take all steps and carry out all acts to procure the registration on the settlement date of the purchaser as the registered holder of tile to the vendors' shares.

10.   The purchaser will make all reasonable endeavours to have the new venture (Coin-Exch Pty Ltd) registered for GST and under the Australian Corporations act provisions before settlement on the 30th April 2013.

11.   The parties hereto agree to execute and perform all such acts, deeds, documents and things whatsoever as may be necessary and desirable to better carry into effect the provisions of this agreement.

12.   **Vendor's warranties**
   (a)   **Vendor's authority to sell**
      (i)   The vendors are the registered and beneficial owners of their shares in the company.
      (ii)   The vendors have full power and authority to sell and transfer to the purchaser good legal and equitable title to the shares without the consent or authorisation of any person except only consents required by the company.
   (b)   **The company's financial statements**
      Other than matters disclosed to the purchaser in writing the books and accounts of the company truly and fairly reflect the company's affairs.
   (c)   **Books and records**
      The company's books, records and registers are in the possession of the company, and accurately record the details of all of the company's transactions, finances, assets and liabilities.
   (d)   **Taxation**
      (i)   Other than disclosed to the purchaser in writing the company has lodged or filed all tax and duty returns for all taxes including GST, income tax, sales tax, fringe benefits tax, payroll tax, group tax and WorkCare levies.

Page 5 of 9

KLEIMAN_00560899

(ii)   No claim has or will be made against the company for payment by the company pursuant to the provisions of the Income Tax Assessment Act 1936 of any tax which is not shown or included as a liability or provision in the balance sheet contained in the accounts.

(iii)   Neither the commissioner nor any federal, state or municipal body has any dispute with the company concerning the company's affair.

(e)   **Compliance with applicable laws**

(i)   Neither the vendor nor the company has breached, or caused a breach of the company's memorandum or articles of association; any contract, agreement or instrument which binds the company; or any judgment, order, injunction or decree of any court, commission or administrative body relating to the company or to the shares.

(ii)   Neither the company nor any of its officers, agents or employees (while performing their duties for the company) has breached the law. The company has not been notified that it has, or may have, breached the law regulating its affairs or the conduct of its business.

(f)   **Litigation and indebtedness**

Other than as disclosed to the purchaser in writing:

(i)   The company is not a party to, or threatened with, any claim, litigation, prosecution or arbitration in any court, tribunal or otherwise;

(ii)   There are no unsatisfied judgments or arbitral awards against the company;

(iii)   The company is not being investigated for any breach of the law. Neither the company nor any of its directors is aware of any breach of the law or of any circumstances, which would give rise to a breach of the law other than as disclosed to the purchaser in writing;

(iv)   The company has met all deadlines for repayment of its debts;

(v)   No petitions, notices or proceedings have come to the company's notice, which could result in it being wound up. No orders or resolutions have been made or passed to place the company in liquidation or provisional liquidation.

CONFIDENTIAL

KLEIMAN_00560900

(g)  **Accuracy of disclosed information**

   (i)   The vendor has disclosed to the purchaser all information, which would be material for a purchaser in forming a decision whether or not to purchase the shares.

   (ii)  If either the vendor or the company becomes aware of anything which may constitute a breach of, or be inconsistent with any representation, warranty or undertaking in this agreement, they will notify the purchaser of its particulars promptly in writing.

(h)  **Warranties and indemnities**

   (i)   It is a condition of this agreement that each warranty is true and correct in every respect and shall be construed separately.

   (ii)  The vendor acknowledges that the warranties have been given with the intention and for the purpose of inducing the purchaser to enter into this agreement.

   (iii) The purchaser has entered into this agreement and agreed to the purchase price payable for the shares on the basis of and in full reliance upon the warranties.

   (iv)  Prior to the settlement date the vendor will take all such steps and provide all such information and documents with regard to the company as the purchaser may reasonably require and will give the purchaser and its professional advisers full and free access to the records and accounts of the company (whether financial or otherwise) to enable them to fully investigate the accuracy of the warranties.

## 13.  Notices

A communication required by this agreement, by a party to another, must be in writing and may be given to them by being:

(a)  Delivered personally; or

(b)  Posted to their address specified in this agreement, or as later notified by them, in which case it will be treated as having been received on the second business day after posting; or

CONFIDENTIAL

KLEIMAN_00560901

(c)   Faxed to the facsimile number of the party with acknowledgment of receipt received electronically by the sender, when it will be treated as received on the day of sending; or

(d)   Sent by email to their email address, when it will be treated as received on that day.

**14.   Waiver or variation**

(a)   A party's failure or delay to exercise a power or right does not operate as a waiver of that power or right.

(b)   The exercise of a power or right does not preclude:

(i)   Its future exercise; or

(ii)   The exercise of any other power or right.

(c)   The variation or waiver of a provision of this agreement or a party's consent to a departure from a provision by another party will be ineffective unless in writing executed by the parties.

**15.   Counterparts**

This agreement may be executed in any number of counterparts each of which will be an original but such counterparts together will constitute one and the same instrument and the date of the agreement will be the date on which it is executed by the last party.

**16.   Further assurance**

Each party will from time to time do all things (including executing all documents) necessary or desirable to give full effect to this agreement.

**17.   Costs**

Each party will pay their own costs in relation to this agreement.

CONFIDENTIAL

KLEIMAN_00560902

**SIGNED AS AN AGREEMENT**

Executed by
W & K Info Defense LLC                )


Dave Kleiman
 DIRECTOR


Executed by
Craig Wright R&D (A.B.N. 97 481 146 384)


Craig S Wright

Page 9 of 9

KLEIMAN_00560903

CONFIDENTIAL