# EXHIBIT D

```
                        UNITED STATES DISTRICT COURT
                        SOUTHERN DISTRICT OF FLORIDA

                          CASE NO. 18-CV-80176-BB

IRA KLEIMAN,
as the Personal Representative
of the Estate of David Kleiman,
et al.,

                                        West Palm Beach, Florida
                  Plaintiff(s),
                                        January 27,2023
            vs.

CRAIG WRIGHT,

                  Defendant(s).      Pages 1 - 27
------------------------------------------------------------

                           MOTION HEARING
             TRANSCRIBED FROM DIGITAL AUDIO RECORDING
             BEFORE THE HONORABLE BRUCE E. REINHART
                  UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE PLAINTIFF(S):  ANDREW S. BRENNER, ESQ.
                       LASELVE E. HARRISON, ESQ.
                       BOIES SCHILLER FLEXNER, LLP
                       100 SE 2nd Street
                       Miami, FL 33131
                       (305) 357-8438
                       abrenner@bsfllp.com
                       lharrison@bsfllp.com


                       DEVIN FREEDMAN, ESQ.
                       FREEDMAN NORMAND FRIEDLAND, LLP
                       1 SE 3rd Avenue
                       Miami, Florida 33131
                       (786) 924-2600
                       vel@fnf.law
```

```
 1    APPEARANCES (CONT'D)

 2
      FOR THE DEFENDANT(S):   ANDRES RIVERO, ESQ.
 3                            ROBERT KUNTZ, ESQ.
                              RIVERO MESTRE, LLP
 4                            2525 Ponce de Leon Boulevard
                              Coral Gables, FL 33134
 5                            (305) 445-2500
                              arivero@riveromestre.com
 6                            rkuntz@riveromestre.com

 7
                              AMY BROWN ESQ.
 8                            RIVERO MESTRE, LLP
                              565 Fifth Avenue
 9                            New York, NY 10017
                              (212) 880-9451
10                            abrown@riveromestre.com

11

12    TRANSCRIBED BY:         Joanne Mancari, RPR, CRR, CSR
                              Court Reporter
13                            jemancari@gmail.com

14

15

16

17

18

19

20

21

22

23

24

25
```

1    Thereupon,

2    the following proceedings were held by telephone:

3            THE COURT:  This is case No. 18 80176, Kleiman and W&K

4    Research v. Dr. Craig Wright.

5            Let me start with just appearances.  Let me ask

6    counsel for the plaintiffs to make their appearances, please.

7            Who is on the call for Ira Kleiman in his individual

8    capacity?

9            MR. BRENNER:  All right.  Your Honor, this is Andrew

10   Brenner, from Boies Schiller.  Laselve Harrison is also on the

11   phone from Boies Schiller.  We are here on behalf of the Estate

12   of Dave Kleiman, which Ira Kleiman is the personal

13   representative of, and for W&K.

14           I understand Mr. Freedman is going to make an

15   appearance and will make a statement regarding W&K, his

16   representation of W&K, which we will join in.

17           THE COURT:  OK.  Very well.

18           Mr. Freedman, why don't you go ahead and make your

19   appearance and then whatever statement you'd like to place on

20   the record, you can feel free to do that at this time.

21           MR. FREEDMAN:  Thank you, Judge.  Good afternoon.  Val

22   Freedman and Stephen Lagos, from Freedman Normand Friedland,

23   for plaintiffs.

24           Judge, just for the statement, before we activated the

25   recording equipment, when the court was taking attendance of

1    who was on the call, an attorney Huck identified himself as

2    allegedly appearing on behalf of W&K.  I assume he will do so

3    now on the record.

4         We object to that.  He has no authority to appear on

5    behalf of our client, who we have represented for five years in

6    this litigation, or four years in this litigation.  It is part

7    of a tactic being orchestrated by the defendant using his wife

8    and his ex-wife, indeed, a trust that this court has found does

9    not even exist, to purportedly assert control over W&K.

10        We intend to move to strike his appearance and for

11   sanctions, frankly, because it is an unbelievable gambit.  But

12   I just want that on the record.  We don't have to deal with

13   that today, but I just don't want to stay silent when someone

14   purports to appear on behalf of my client.

15        THE COURT:  OK.  Well, I may have to deal with that

16   today, but I understand that is your position.

17        Mr. Huck, you have entered an appearance on the

18   record, in the docket of the case.  I will allow you to make

19   your appearance.  Whatever you want to say, I will allow you to

20   say.

21        MR. HUCK:  Thank you, your Honor.  This is Paul Huck

22   on behalf of W&K.  I did file a notice of appearance.  I am new

23   to this case.  I am appearing here on behalf of the

24   corporation, which is taking corporate action and has appointed

25   me as its counsel.

```
1              THE COURT:  Understood.  OK.

2              I believe that is all the plaintiffs' side.  Let me

3    turn to the defense.

4              Mr. Rivero, if you would like to enter an appearance

5    on behalf of the defense, and I understand you also had a

6    statement you wanted to make, I will allow you to do that at

7    this time.

8              MR. RIVERO:  Thank you, Judge.  Andres Rivero for

9    Craig Wright.  Your Honor, it is a very brief statement.

10             The party who made the request -- the request is made

11   in the name of W&K.  The court has jurisdiction over W&K, of

12   course, and over Dr. Wright in the W&K judgment matter.

13             Appearances are being made, if I understand correctly,

14   for Ira Kleiman personally or potentially Ira Kleiman as the

15   representative of the estate.  That matter, Judge, is not

16   before the court and the court is divested of jurisdiction as

17   to that matter because of the pending appeal taken by these

18   counsel for Ira Kleiman as personal representative.  So they

19   can't appear here.  That is not the matter before the court

20   because the court's divested of jurisdiction as to that matter.

21             The only appearance that should be made is for the

22   party that sought this status conference, which is W&K.

23             THE COURT:  All right.  Thank you.

24             MR. BRENNER:  For the record, your Honor --

25             THE COURT:  Mr. Rivero, did you want to -- I'm sorry.
```

1    One second.

2           Mr. Rivero, did you want to note for the record who

3    else is on the call with you as counsel?

4           MR. RIVERO:  Yes, Judge.  Thank you, Judge.  I heard

5    that my partners Robert Kuntz and Amy Brown are also on this

6    telephone call for Dr. Wright.

7           THE COURT:  Thank you.

8           All right.  Let me sort through a little bit of that.

9           I originally set this hearing solely for one matter,

10   which was the motion to disqualify.  A motion to disqualify had

11   been filed as to Mr. Freedman's firm, and then there was the

12   suggestion made that if W&K was getting new counsel -- if W&K

13   was going to get different counsel, perhaps that would moot out

14   the need to resolve the motion to disqualify.  That was the

15   purpose of setting the hearing today.

16          Let me first address Mr. Rivero's point.

17          It is my position that any party who is a party to the

18   lawsuit can be present for any hearing before the court.  So I

19   think to the extent that counsel have entered an appearance on

20   behalf of Mr. Kleiman, either individually or as the personal

21   representative of the estate, it is appropriate for them to be

22   on the called.  Whether they can participate and make arguments

23   in that capacity, I don't know that that is germane to the

24   issue of disqualification.

25          So I accept that as far as that goes, Mr. Rivero, but

1    I don't have a problem with them being on the call and

2    Mr. Kleiman being represented separately in these proceedings

3    here today.

4          It sounds to me like even before I can get to the

5    issue of whether the disqualification motion has been mooted by

6    Mr. Huck's appearance, it sounds like we have to resolve the

7    question of who presently represents W&K, which I'm not

8    prepared to do at this time because I didn't know that was

9    going to be an issue and I'm not entirely sure that's been

10   referred to me by Judge Bloom.  I would need to confirm with

11   her that she wants me to handle that.

12         So I guess maybe I need to stop there for a second.

13         Mr. Rivero, do you have any thoughts or do you

14   disagree that I need to resolve that preliminary issue before

15   we can even address the question of whether the

16   disqualification motion remains ripe?

17         MR. RIVERO:  Judge, it is a thoughtful question.  I'm

18   thinking out loud, but it does appear to me that because the

19   motion purports to be made in the name of a party as to which

20   there is now a dispute about who the proper counsel is, and it

21   is a different question about whether or not the previous

22   lawyers could act because the disqualification issue is a

23   different issue, Judge.  I actually think you're right, your

24   Honor.  Nonetheless, I have much to say about the

25   disqualification motion, but I think on a procedural basis

1    you're right.  In fact, we would ask that you, your Honor, ask

2    for the referral from Judge Bloom to determine that issue that

3    you are now posing as a question precedent.

4            THE COURT:  OK.  Again, look, I appreciate -- so to

5    break that apart a little bit, I am not binding you because

6    lots of things can happen going forward, but as a kind of

7    preliminary thought, your sense is that if W&K gets new counsel

8    and Mr. Freedman's firm ceases to be one of the parties

9    representing W&K that would moot out your disqualification

10   motion?

11           I am not prejudicing you if you choose to change that

12   position after further thought, but at least preliminarily is

13   that your thought?

14           MR. RIVERO:  No, Judge, I don't have a -- look,

15   because my view is, related view is that Ira Kleiman in his

16   capacity as personal rep has his appeal and that is where he

17   has rights, yes, it would be my view that since W&K is the only

18   proper party to these proceedings in relation to the judgment,

19   if Mr. Huck were recognized as counsel for W&K, my motion to

20   disqualify is unique to the Roche Freedman and Boies Schiller

21   firms.

22           THE COURT:  OK.  You clarified.  So it is not just --

23           MR. RIVERO:  I think that is a yes, Judge.  I think it

24   is a yes.

25           THE COURT:  My question -- I am going to let the other

1    side respond -- my question was inartful.  Let me just sharpen

2    it slightly.

3           Your position is that if Mr. Huck or somebody else

4    comes into represent W&K -- let me phrase it differently.

5           As long as the Boies Schiller firm and the Freedman

6    firm no longer represent W&K and somebody else does, your

7    disqualification motion is mooted?  Am I correct about that?

8           MR. RIVERO:  Yes, Judge.  Judge, I want to say as a

9    preliminary matter, and out of respect to Mr. Brenner, the

10   basis as to Boies Schiller is different and narrower and does

11   not imply anything to do with the statements of Roche.

12          THE COURT:  OK.

13          MR. RIVERO:  I don't want to splatter that on

14   Mr. Brenner.

15          THE COURT:  Look, if it is mooted, then it is

16   inappropriate for me to hear any argument about whether or not

17   anybody ought to get disqualified.

18          MR. RIVERO:  Right.

19          THE COURT:  If it is moot, I don't have jurisdiction

20   to consider it.  I don't want to hear anything about it.  It is

21   just not appropriate for me to do that.  So that is why I am

22   trying to keep it at that level right now.

23          I appreciate you answering that, Mr. Rivero.

24          Let me turn to counsel on behalf of W&K, Mr. Freedman

25   and/or Mr. Brenner or Mr. Harrison, who are counsel of record,

1    who have not yet been substituted out nor have they withdrawn.

2    So let me hear from them -- and then, Mr. Huck, I will give you

3    a chance to be heard as well -- on whether you agree, do I need

4    to take the preliminary step of determining who represents the

5    company before I even turn to the disqualification motion, and

6    understanding you don't agree on the merits at all of the

7    disqualification motion, if you want to respond on the mootness

8    question you may, but you don't have to.

9         Let me turn to Mr. Freedman or whoever would like to

10   speak, prior counsel or first counsel who wants to be heard.

11        MR. FREEDMAN:  This is Mr. Freedman, your Honor.  I

12   would start by saying that I don't believe there actually is a

13   motion to disqualify Boies Schiller on the record.  I'm sure

14   Mr. Brenner will speak up on this, but I'm willing to take it.

15   The full force of the disqualification motion is just, I

16   believe, against Freedman Normand Friedland.  I am not sure why

17   Mr.Rivero thinks he's moved to disqualify Boies Schiller.  So

18   that is one.

19        Number two, your Honor, I think that we would be more

20   than happy for you to take up the question of whether or not

21   the entities, the Tulip Trust and Lynn Wright, who was under

22   oath saying she has no interest in W&K because of the

23   bankruptcy, have validly fired both my firm and Boies Schiller

24   and hired Mr. Huck.  We would be more than happy for you to

25   take up that question.

1          THE COURT:  OK.

2          MR. FREEDMAN:  That being said, Judge, the reason I

3    requested the status conference was because I believe the

4    Eleventh Circuit has resolved the motion to disqualify.  They

5    denied it, and therefore any motion to disqualify my firm has

6    been rendered, ruled on or law of the case, rather, by the

7    Eleventh Circuit and there should be nothing more to deal with.

8    I thought that that itself might moot the need to resolve the

9    question.  But quite frankly, Judge, I would be happy for you

10   to take up that first question.

11         THE COURT:  OK.  Well, again, let me say this.  If you

12   believe it is mooted for a different reason -- and I appreciate

13   everybody's efforts to streamline the case and focus the issues

14   and not waste each other's time.  So I appreciate all that.

15         I understood, Mr. Freedman, you were trying to avoid,

16   look, if I don't have to file or amend your response on the

17   merits to the disqualification motion, I'd like to spare the

18   time and the energy and the money to do that.  I understand

19   that completely.

20         So it might be helpful to me if you want to respond on

21   just the limited issue you just raised, which is procedurally

22   it is moot and law of the case and not address the merits, I

23   would allow you to do a limited response for that purpose, not

24   waiving your right that if we ever have to reach the merits I

25   will let you do a full-throated, separate response on the

1    merits.

2            I think it would be helpful to me if you believe it is

3    moot for that other reason to have you do a formal response,

4    and I will allow Mr. Rivero and his firm to reply to that, and

5    then if I have to reach that issue, it will be fully briefed.

6            MR. BRENNER:  Judge, could I just respond briefly?

7    I'm sorry.  I was just going to wait.  It is hard to wait --

8            THE COURT:  That is OK.  Whoever it is just identify

9    yourself on the record.

10           MR. BRENNER:  Sure.  It is Andrew Brenner, Judge.

11           THE COURT:  Yes, Mr. Brenner.  Go ahead.

12           MR. BRENNER:  So just a couple of issues.

13           One, I believe Mr. Freedman is right, there is no

14   motion to disqualify Boies Schiller.  So I just wanted that

15   clear on the record.

16           The other thing is I, too, would join in a request, if

17   it were made, to have the matter of the W&K representation

18   resolved by you.  I do, just in the interest of full

19   disclosure, though, want you to know that some combination of

20   entities affiliated with Dr. Wright, whether it be his ex-wife

21   or a trust have active lawsuits that they have filed in Palm

22   Beach County Circuit Court on this very issue that they are now

23   saying they would agree for you to it have referred to and

24   resolved.  So I just want you to know that that is out there.

25           I am happy to get to the merits.

```
1          THE COURT:  I learned of at least one of those
2    lawsuits about 20 minutes ago.  I think it is called Tulip
3    Trust v. Kleiman.
4          MR. BRENNER:  I don't know whether that is the
5    caption.
6          THE COURT:  It is assigned in Palm Beach County
7    Circuit Court.  It is assigned in Palm Beach County Circuit
8    Court to Division AF.  The presiding judge is Carolyn Bell, who
9    is my wife --
10         MR. BRENNER:  Oh, right.
11         THE COURT:  -- who called me to say, I think I have a
12   case that you're involved in; I am going to have to --
13         MR. BRENNER:  So, yes.  I wanted you to be aware of
14   that.  I don't think it changes anything that was said, but
15   just so you know, for better or for worse, at least for this
16   call, a more complete look at the landscape.
17         Those lawsuits attempt to say that Ira Kleiman was
18   either not a shareholder or not a controlling member of W&K and
19   that they have been replaced by either Lynn Wright or Tulip
20   Trust, and when Mr. Huck referred to a corporate action, he is
21   referring to those individuals have --
22         THE COURT:  OK.
23         MR. BRENNER:  -- unilaterally done a corporate action
24   to fire my firm, Mr. Freedman's firm, and hire Mr. Huck
25   apparently.  That is the issue.  I just wanted you to have the
```

1    full portrait.

2              THE COURT:  I appreciate that, Mr. Brenner.

3              Mr. Huck, you have been very patient in letting

4    everybody else talk.  Let me hear your thoughts on maybe order

5    of operations that I ought to address the many issues that have

6    arisen in this case.

7              MR. HUCK:  Right.  Thank you, your Honor.

8              I think we have unanimity here among counsel.  I also

9    agree that this is a preliminary issue that the court needs to

10   determine and should determine, and then you can turn to,

11   depending on that, you can turn to the motion to disqualify,

12   and I would assume you would also want to consider the recent

13   filings by Ira Kleiman himself, his filings with the court,

14   whatever those mean in this case.

15             THE COURT:  All right.

16             MR. HUCK:  But I think we have unanimity among counsel

17   about kind of the order of what this court needs to address.

18             THE COURT:  OK.  Very good.  So let me address that

19   one issue.

20             As to Mr. Kleiman, he is currently represented by

21   counsel in whatever capacity he is appearing and, therefore, he

22   can't file *pro se* or unilateral pleadings on his own.  So we

23   will be striking whatever he's been filing.  Those need to be

24   raised through counsel, if they are going to be raised at all.

25             So here's how I'm going to proceed.

1          I think the first thing I should resolve is actually

2     whether there is -- here is the order I would like to address.

3     I would like to first address the law of the case or a mootness

4     argument arising from the argument that this issue has been

5     resolved by somebody else, because I think that presents the

6     fewest issues that I need to reach.

7          If that issue does not resolve the case, the nice

8     thing about -- if that issue does resolve the case, and I

9     clearly have no view because I have no idea.  I haven't read

10    anything on it.  If that issue were to be dispositive of what

11    is currently before me, I don't have to reach the question of

12    who controls the company, who owns the company, who has the

13    right to hire and fire and do all that.  That's fine by me.  I

14    would prefer not to reach those issues if I don't have to, but

15    I think that would be the second thing I would address.

16         So if mootness argument, one, doesn't resolve the

17    case, then I would move to the second question which is who

18    owns the company or who has authority to act for the company.

19    Then once I resolve that issue, depending what I rule, that

20    might moot the issue.

21         Then going down the decision tree, if neither of those

22    issues resolves what is before me, then I would have to address

23    the disqualification motion on the merits, but that would be my

24    last choice.

25         So that is the order I would like to do it in.

1          I will confer with Judge Bloom and just make sure that

2     she is OK with me taking that full panoply of issues.

3          Assuming that is the order we are going to go in, the

4     next step, Mr. Freedman, would be for you to file a partial

5     response to the motion.  I guess I should go back a step.

6          Mr. Rivero, I don't know what your position is on

7     whether you have formally moved -- let me ask you.  What is

8     your position as to whether there is actually a pending motion

9     to disqualify Boies Schiller, and if there is not or if it is

10    unclear or you want to file something more formalized, I will

11    let you do that.  So why don't you address that issue for me,

12    if you will.

13          MR. RIVERO:  Judge, yes.  If I may, if the court would

14    allow me, I also want to just address the question of the

15    pending state court case which Mr. Brenner referred.

16          THE COURT:  Yes.

17          MR. RIVERO:  So on this precise question, Judge, I

18    have to consider now, given the court is striking the

19    statements of Mr. -- I understand the court's striking the

20    filings of Mr. Kleiman because he is attempting to act *pro se*

21    and wouldn't be permitted to with counsel, but, Judge, those

22    statements are nonetheless of record admissions by Mr. Kleiman.

23    Not of record, but they are admissions of Mr. Kleiman and

24    statements of Mr. Kleiman which exist.  He's made these

25    statements now.  I don't think even if the court --

1          THE COURT:  Look, there is a difference between them

2     maybe having evidentiary value --

3          MR. RIVERO:  Right.

4          THE COURT:  -- for some purpose in the future versus

5     whether they are a basis for the court to take any action.  So

6     I am not going to take any action.

7          MR. RIVERO:  That's correct, Judge.

8          THE COURT:  So again, I'm not ruling on what, if any,

9     evidentiary value they have, if they can be used.

10         MR. RIVERO:  Yes.

11         THE COURT:  So again, I will leave that to you all.

12         Let me put it this way.  If you can address the more

13    limited question, do you believe you have currently pending

14    before the court a motion to disqualify the Boies Schiller

15    firm?

16         MR. RIVERO:  No, Judge.  I believe I have a basis,

17    based on the nine -- essentially, a bill of particulars stated

18    by Mr. Kleiman yesterday.  So it would be correct to say --

19         THE COURT:  OK.  So let me -- I'm sorry.  So the

20    answer to that question is no.

21         So if you believe you have a basis to file such a

22    motion, let's set a date and time limit for you to file the

23    motion.  I will allow Mr. Brenner to respond.  I will give you

24    a reply.  Now I want to just set some deadlines.

25         How much time would you like, Mr. Rivero, to file that

1    motion?

2          MR. RIVERO:  Your Honor, ten calendar days.  Let me

3    just take a quick look at the calendar because I'm committing

4    Mr. Kuntz's and Ms. Brown's time.

5          What I would suggest, Judge, if the court would permit

6    it, if the court would permit it, the 10th of February.

7          THE COURT:  OK.  Any objection from the plaintiffs'

8    side to -- obviously, not agreeing there is any merit to the

9    argument, but, Mr. Brenner, do you object to giving them two

10   weeks to file whatever motion they want to file?

11         MR. BRENNER:  That deadline is fine, your Honor.

12         THE COURT:  OK.  Very good.

13         All right.  Mr. Freedman, if I give you the same

14   deadline to file your partial response to the motion to

15   disqualify, addressing only the mootness/law-of-the-case issue,

16   is that adequate for you?

17         MR. FREEDMAN:  That's fine, your Honor.

18         When you have a moment, though, there is one thing I

19   would like to address.

20         THE COURT:  OK.

21         MR. BRENNER:  Before we get there.  Judge, did you set

22   a response date for me to the --

23         THE COURT:  No, I am going to do that next.

24         MR. BRENNER:  OK.

25         THE COURT:  I am trying to normalize thing so we are

```
 1    all on sort of the same deadlines.
 2              So those two motions will be filed by the 10th.
 3              I am going to give the respondent, I will give
 4    Mr. Brenner, I will give you the full two weeks that the local
 5    rule allows.  I will give you until the 24th to file your
 6    response to whatever they file.
 7              I will give, I guess Mr. Freedman -- any objection,
 8    Mr. Freedman, to giving them two weeks to reply to your partial
 9    response to the motion?
10              MR. FREEDMAN:  No, your Honor.
11              THE COURT:  All right.  So the responses to those two
12    motions will be on the 24th.
13              Then I guess, Mr. Rivero, you would get to reply to
14    Mr. Brenner's response if you file a motion to disqualify.  So
15    I will give you an additional week.  I don't know when that
16    takes us to.  March.  Whatever that next Friday is.  I will
17    give you a date.  That is what the local rules allow.
18              OK.  Having set that schedule -- let me turn back to
19    Mr. Freedman -- you said you wanted to address one issue.  Go
20    ahead.
21              MR. FREEDMAN:  I did, your Honor.  I understand the
22    process the court's laid out for the decision tree, and I agree
23    it is an efficient one.  However, I do think the issue of
24    Mr. Huck's appearance in this case and his resistance to, for
25    example, our motion to compel the debtor form is going to be an
```

1    issue that is pending before the court regardless of whether

2    the court decides that we are not disqualified, right.

3         So even if the court comes and says, hey, the Eleventh

4    Circuit filed the case.  They have denied the same exact motion

5    to disqualify, therefore, it is denied here too, I still think

6    we have an open issue with Mr. Huck purporting to act on behalf

7    of my client.  So I do think that is an issue the court needs

8    to decide regardless of the disposition of the disqualification

9    motion.

10        The only portion of that decision tree that I think

11   would moot that is if the court said, well, I think Mr. Huck is

12   properly appointed, I think Freedman Normand Friedland and

13   Boies Schiller are properly terminated, then that would moot

14   the issue.

15        Barring that one narrow decision, this is going to be

16   an open issue.

17        As I heard on the call, I think all counsel have

18   consented to your resolution of this issue.  So I'd ask that

19   you resolve it.

20        THE COURT:  Well, again, I understand everybody's

21   agreed that you would like me to handle it.  I am happy to

22   handle it.  I do have to get a -- I don't believe that issue is

23   referred to me at this point, or at least it is not clearly

24   referred to me.

25        The motion to disqualify was referred to me.  I think

```
1    that is arguably incorporated with the motion to disqualify,

2    but I want to just doublecheck with Judge Bloom to make sure

3    that she is OK.  I'm sure she will be.  I just need to get her

4    blessing before I go too far on that.

5            I hear what you are saying about whether maybe I

6    should have -- so what are you suggesting, Mr. Freedman?  Is

7    there a need for parallel briefing on that or do I just need to

8    have an evidentiary hearing, hear testimony, and then I can

9    rule at that point?  What are you suggesting?

10           MR. FREEDMAN:  So, Judge, I'm suggesting to have a

11   separate track, resolution of this issue, regardless of the DQ

12   motion.

13           THE COURT:  OK.

14           MR. FREEDMAN:  Whether that can be resolved on the

15   papers or through an evidentiary hearing -- honestly, Judge,

16   quite frankly, I believe it can be resolved on the papers,

17   because I believe law of the case, not moving away from the

18   Eleventh Circuit, but the law of the case here, I believe,

19   demonstrates, through multiple decisions of Judge Bloom and

20   yourself, a finding that the entity that is purporting to act

21   on behalf of W&K doesn't even exist and Judge Bloom, finding

22   multiple times that Ira Kleiman has authority to act on behalf

23   of W&K, denying motion for judgment on the pleadings, denying

24   summary judgment on that basis, resolved this issue.

25           I think without going through a whole oral briefing, I
```

```
1    think this can be decided on the papers quite easily.

2             THE COURT:  So how do you propose to tee it up?  What

3    is it that needs to be filed and who needs to file it so that

4    we can then formalize that?

5             MR. FREEDMAN:  I would need to file --

6             THE COURT:  You were proposing to file some sort of a

7    motion to strike Mr. Huck's appearance or something to that

8    effect?

9             MR. FREEDMAN:  I would be happy --

10            MR. BRENNER:  Judge --

11            THE COURT:  Hold on.  One at a time.

12            MR. BRENNER:  This is Andrew Brenner.  I think our

13   inclination is probably to proceed by motion to strike.  Just

14   off-the-cuff, I want to make sure that is procedurally the

15   right thing.  So if you give us a deadline along the lines of

16   what you have given on the other briefing schedule to file

17   whatever we want to file on that issue, then we will get it

18   teed up.

19            THE COURT:  All right.  Mr. Rivero, any objection to

20   that?

21            MR. RIVERO:  Judge, I have a lot to fan all these

22   issues.

23            THE COURT:  I understand.

24            MR. RIVERO:  So the statements made, though, are just

25   not correct on the record, and certainly -- Judge, none of this
```

```
1    can be disposed of summarily and there is no law of the case on

2    either issue.

3           THE COURT:  I understand what Mr. Freedman is saying.

4    As a technical matter the law of the case doctrine only applies

5    to Appellate decisions, not to prior decisions of Judge Bloom.

6    I understand that.  I understand you will make an argument that

7    the world can change and who is in control of an entity

8    continues over time.  So I am anticipating where that will all

9    go.  Right now I just want to set up a procedure and a

10   framework so we can tee the issue up and I can resolve it --

11          MR. RIVERO:  No, I understand.

12          THE COURT:  -- and everybody gets to make their

13   full-slated arguments.

14          MR. RIVERO:  Right.  Understood, Judge.  All I am

15   telling the court, because Mr. Freedman got to make part of his

16   argument, is I have much to say.  I am not doing that now.

17          THE COURT:  I understand.

18          MR. RIVERO:  Judge, what I did want to say, though, is

19   while -- I was thinking out loud and I definitely stand by it,

20   I think procedurally here you'd need to look at the subject

21   about the ownership and control of W&K before other issues.

22          There is a state court matter as to who should be a

23   decision maker as between those two, the other case having been

24   pending for some time.  I would like to preserve our rights to

25   take whatever position.  But given that the procedural approach
```

1  that you suggest makes sense, Judge, and I would be agreeable

2  to the same schedule for such briefing.

3       THE COURT:  OK.  Very good.  Look, if there is some

4  sort of an abstention doctrine or a first-to-the-post kind of

5  an argument that I need to defer to the state courts, somebody

6  can make that argument and I will be happy to evaluate it as it

7  comes in.

8       OK.  We will just follow the same briefing schedule.

9  So whatever motion -- I'm sorry.

10      Mr. Huck, I haven't heard from you.  Again, everybody

11 is talking about you and I haven't given you a chance to be

12 heard on that issue.

13      Do you have any objection to proceeding along those

14 lines?  Obviously you don't agree that your appearance should

15 be stricken, but do you at least agree with the briefing

16 schedule?

17      MR. HUCK:  I'm fine with the briefing schedule, your

18 Honor.

19      THE COURT:  Thank you.

20      All right.  So we will follow the same briefing

21 schedule.  Whatever motion the plaintiffs want to file -- I

22 always get the parties confused.  Whatever motion plaintiffs

23 want to file can be filed by the 24th, with responses by the

24 other date -- by the 10th, the 24th, and then the 1st.  We will

25 tee that up.

1    Not to dip my toe into something that hasn't been

2    raised by the parties, but it seems to me I should probably

3    address this issue as well.

4    Is there -- and I apologize, I haven't looked at the

5    docket -- is there a pending motion by somebody to compel

6    somebody to fill out the debtor form?

7    MR. FREEDMAN:  There is, Judge.  This is Mr. Freedman.

8    THE COURT:  Is that your motion to compel W&K to fill

9    out the debtor form?

10   MR. FREEDMAN:  No, Judge.  This is Mr. Freedman.  This

11   is W&K's motion to compel Dr. Wright into filling out the

12   debtor form.

13   THE COURT:  OK.  And that motion is pending.

14   MR. FREEDMAN:  In aid of execution on the $143 million

15   he has not paid.

16   THE COURT:  I understand.  Again, I don't want to hear

17   argument on the merits.  I'm just trying to sort out

18   procedurally here.

19   You have a motion pending.  That's in front of Judge

20   Bloom, though.  Again, she has not referred that to me, that I

21   know.

22   Has Dr. Wright responded to that, Mr. Rivero?

23   MR. FREEDMAN:  He has.

24   THE COURT:  OK.

25   MR. RIVERO:  Judge, we have made a response.

```
 1              THE COURT:  Go ahead, Mr. Rivero.  I'm sorry.
 2              MR. RIVERO:  Judge, I just wanted to answer yes.
 3              THE COURT:  OK.  So you've responded.  Judge Bloom
 4    just hasn't ruled on it.  Presumably, I guess, she believes --
 5    I don't want to speculate as to why Judge Bloom hasn't ruled or
 6    whether she is going to rule.
 7              All right.  So that's out there as well.  OK.
 8              MR. FREEDMAN:  Your Honor, this is Mr. Freedman.  I
 9    believe Judge Bloom hasn't ruled because the reply is due
10    today.  So the motion is not yet ripe.
11              THE COURT:  I got it.  OK.  All right.
12              So the issue I was going to dip my toe into, and
13    perhaps at my own peril, is whether that motion could be
14    resolved while all this other stuff is pending or whether the
15    stuff that is in front of me has to be resolved before that can
16    be resolved.
17              Again, let me confer with Judge Bloom about whether
18    she wants to keep that one or whether she wants to kick the
19    whole mess to me because it might be more efficient for me to
20    handle everything at once.
21              OK.  That is on a separate briefing schedule in front
22    of Judge Bloom.  That is what I needed to know.
23              OK.  All right.  I think I have sorted out what I
24    needed to sort out here to try to understand where we're going
25    and to set a schedule.
```

```
 1              With that, let me turn to the plaintiffs by name

 2     because we have a lot of different people.

 3              Mr. Brenner and Mr. Harrison, anything else you wanted

 4     to raise this afternoon while we were altogether?

 5              MR. BRENNER:  No, your Honor.

 6              THE COURT:  All right.  Mr. Freedman.

 7              MR. FREEDMAN:  No, your Honor.

 8              THE COURT:  Mr. Huck.

 9              MR. HUCK:  No, your Honor.

10              THE COURT:  All right.  Thank you.

11              Mr. Rivero.

12              MR. RIVERO:  No, thank you, Judge.

13              THE COURT:  All right.  I thank all of you.

14              I realize this is somewhat procedurally complicated

15     for me and I appreciate you educating me so we can normalize

16     this.  I will look forward to the briefing.

17              I will check with Judge Bloom.  If she feels there is

18     a need to clarify my authority, I am sure she will do an order

19     today.

20              Thank you, everybody.  I will wish you all a good

21     shabbat, a good weekend, and we will be in recess.  Have a good

22     day, everybody.

23              (Adjourned)

24

25
```

C E R T I F I C A T E


    I hereby certify that the foregoing is an accurate

transcription to the best of my ability of the digital audio

recording in the above-entitled matter.


February 2, 2023      s/ Joanne Mancari
                      Joanne Mancari, RPR, CRR, CSR
                      Court Reporter
                      jemancari@gmail.com