UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC<br><br>　　Plaintiffs,<br><br>v.<br><br>CRAIG WRIGHT<br><br>　　Defendant. | CASE NO.:  9:18-cv-80176-BB |

**PLAINTIFF W&K'S MOTION TO STRIKE
PAUL C. HUCK, JR.'S NOTICE OF APPEARANCE**

Pursuant to the Court's order dated January 27, 2023 (Dkt. No. 920), Plaintiff W&K Info Defense Research, LLC ("W&K") respectfully moves to strike the Notice of Appearance filed by Paul C. Huck, Jr., from the Huck Law Firm, P.A. (Dkt. No. 917.)

Since early 2018, Ira Kleiman, as personal representative of the Estate of David Kleiman (the "Estate"), has directed W&K in this litigation. Over that ***nearly-five-year period***, W&K and the Estate have been represented by Devin "Vel" Freedman, now of Freedman Normand Friedland LLP, and Boies Schiller Flexner LLP. Indeed, those same attorneys represented W&K at trial, where W&K ultimately obtained a $100-million verdict against Defendant Craig Wright, which later converted into a $143-million final judgment.

Now, in a transparent and desperate attempt to prevent W&K from ever collecting on that nine-figure judgment, Wright has enlisted his ex-wife Lynn Wright and his current wife Ramona Watts—who purports to be the Trustee of the fictional Tulip Trust, and who is represented by Craig Wright's lawyers from Rivero Mestre LLP—to ***purportedly terminate W&K's attorneys***

1

*and replace them with an attorney of his and his family's choosing, Mr. Huck*.[1] There is no secret as to the motive here. Through Ms. Wright and Ms. Watts, Wright hopes to gain control of W&K and cause it to release its $143-million judgment against him.

This effort is wholly premised on frivolous factual and legal arguments that this Court, Judge Bloom, and the jury repeatedly rejected over the past five years of litigation. Indeed, Wright's latest story is (i) that his ex-wife Lynn Wright (who testified to be financially dependent on him) and Tulip Trust (the trustee of which is purportedly Wright's current wife, Ramona) are the true owners of W&K; (ii) that they collectively control W&K; (iii) that the Estate does not have, and never had, any authority to act on behalf of W&K; and (iv) that, after W&K obtained a $143-million final judgment against Wright, but before Wright paid a cent on that judgment, Ms. Wright and Ms. Watts concluded that W&K should terminate the attorneys that helped W&K obtain that judgment and hire Mr. Huck.

Set aside for a moment the fact that neither Ms. Wright, Ms. Watts, nor Tulip Trust ever—in nearly five years of litigation—sought to intervene in this action to stop the Estate from exercising control over W&K. And set aside for a moment that Wright swore under oath that he had "no idea" who owned W&K and that Ms. Wright and Ms. Watts testified at their depositions that they knew next to nothing about W&K. Wright's story fails *as a matter of law* because (i) Judge Bloom already found (twice) that Wright could not muster any credible evidence that showed anyone but David Kleiman was ever a member of W&K, (ii) Judge Bloom has already found (twice) that Wright's argument that the Estate lacked authority to act on behalf of W&K was meritless, and (iii) this Court already found, by clear and convincing

---

[1] Rivero Mestre LLP's representation of Ms. Watts and the Tulip Trust to assist them in obtaining control of W&K and cause it to release a judgment against Craig Wright, *also represented by Rivero Mestre LLP*, raises interesting questions.

2

evidence, that Tulip Trust was an entity that Wright fabricated to avoid his discovery obligations. Wright has not presented *any evidence or argument* that demonstrates that these findings should be revisited and reversed years later. Surely, Wright and Mr. Huck cannot vitiate those prior orders by simply filing a notice of appearance.

Indeed, W&K obtained a *final judgment* in this action. Wright has not moved for relief from that judgment under Federal Rule of Civil Procedure 60(b). He cannot frustrate W&K's ability to collect on its judgment by attempting to replace its counsel based on nothing more than his own proclamations that his fake trust, his wife, and his ex-wife are the rightful owners of W&K and that the Estate lacks authority to act on behalf of W&K—especially when those defenses failed time after time in court. He must, in short, articulate a *compelling basis* to the Court why principles of finality and res judicata must give way, and why this litigation *must* be re-opened to address— once again—his argument that someone other than the Estate controls W&K.

As the oppositions to this brief will make clear, Wright has no hope of meeting this standard. The final judgment must stand, and Wright's antics must stop. This Court sanctioned him once for these antics, but apparently, it wasn't enough. Mr. Huck has no authority to act on behalf of W&K, and his notice of appearance must be stricken.

## FACTUAL BACKGROUND

**I.   BEFORE TRIAL, THE COURT REPEATEDLY REJECTED WRIGHT'S ARGUMENTS RELATING TO THE OWNERSHIP OF W&K**

On February 24, 2018, Ira Kleiman, as personal representative of the Estate of David Kleiman (the "Estate") commenced this action against Defendant Craig Wright. (Dkt. No. 1.) On May 14, 2018, the Estate and W&K Info Defense Research, LLC ("W&K") filed an amended complaint against Wright. (Dkt. No. 24.)

On June 15, 2018, Wright moved to dismiss the amended complaint. (Dkt. No. 33.) In that motion, he argued that the Estate could not "unilaterally cause W&K to sue Dr. Wright directly" because David Kleiman's interest in W&K was less than 51 percent. (*Id.* at 15 (capitalizations omitted).) He further argued that, as a result, the Estate "would only have possessed standing" if it brought claims derivatively on behalf of W&K, which it did not do. (*Id.*) In response, Plaintiffs argued that they alleged that "Dave was the sole member of W&K." (Dkt. No. 50 at 7 (quoting Dkt. No. 24 ¶¶ 71, 192).) On December 27, 2018, Judge Bloom rejected Wright's argument and denied his motion. (Dkt. No. 68 at 13.)

On April 15, 2019, Wright tried again, this timing moving for judgment on the pleadings on the grounds that the Court lacked diversity jurisdiction because W&K had foreign members. (Dkt. No. 144.) In his opening brief, Wright argued that Uyen Nguyen, a "Vietnamese national," and Coin-Exch, "a now defunct Australian company," each held membership interests in W&K. (*Id.* at 2-3.) After "Exhibit A" to that motion was exposed as a forgery and withdrawn (Dkt. No. 154; Dkt. No. 265 at 6), Wright changed his argument, now claiming—for the first time—that his ex-wife, Lynn Wright, was a member of W&K. (Dkt. No. 171 at 6-7.)

On August 15, 2019, Judge Bloom denied Wright's motion. (Dkt. No. 265.) In that order, she observed that it was "not the first time that the Defendant has made certain representations regarding the membership of W&K," and that Wright had "made *several conflicting statements* regarding even his own ownership of W&K." (*Id.* at 4-5 (emphasis in original).) Indeed, even at that point, as Judge Bloom observed, the record was "replete with instances in which the Defendant has proffered conflicting sworn testimony before this Court." (*Id.* at 10.) This included Wright's sworn deposition testimony that he had "'**no idea**' who the owners of W&K were," which was

4

irreconcilable with his argument that his ex-wife had been a member of W&K all along. (*Id.* at 5 (emphasis in original).)

Judge Bloom thus concluded: "the Court simply does not find the Defendant's testimony to be credible." (*Id.* at 10.) In light of that finding and the evidence, Judge Bloom held that Wright had "failed to provide any credible evidence showing a lack of diversity," and had accordingly "utterly failed in his burden of production" to provide any evidence that demonstrated "additional membership in W&K other than Dave Kleiman." (*Id.*) Wright did not move for reconsideration, nor did he appeal that order after final judgment was entered against him.

During this period, the parties were engaged in a months-long discovery dispute regarding Wright's refusal to produce evidence of his bitcoin holdings. After Wright eventually took the position that it was impossible to produce such evidence because it was locked in the "Tulip Trust," the Court conducted a three-day evidentiary hearing to assess that claim. Following that hearing, the Court summed up Wright's story in one word: "Inconceivable." (Dkt. No. 277 at 19.)

Specifically, the Court concluded that Wright's "testimony that [Tulip] Trust exists was ***intentionally false***," and "***part of a sustained and concerted effort to impede discovery into his bitcoin holdings***." (*Id.* at 21 (emphasis added).) The Court made that finding by "clear and convincing evidence." (*Id.* at 21 n.11.) Wright objected to those factual findings (Dkt. No. 311 at 3-8, 13-23), but Judge Bloom affirmed them (Dkt. No. 373 at 15 ("The Court has also reviewed the transcripts from the Evidentiary Hearing held by Judge Reinhart and agrees with his credibility findings relating to Defendant. Indeed, in answering opposing counsel's questions, the Defendant was evasive, refused to give and interpret words in their very basic meanings, was combative, and became defensive when confronted with previous inconsistencies.")).

5

But Wright was undeterred. On May 8, 2020, he moved for summary judgment. (Dkt. No. 487.) In that motion, Wright again sought judgment based on the alleged foreign ownership of W&K, arguing that the Court "should find that complete diversity does not exist because the only record evidence, which is uncontroverted, establishes that W&K has foreign members," including Lynn Wright. (*Id.* at 23.) He further argued that, because the Estate did not have a majority interest in W&K, it "lacked authority" to prosecute this action on behalf of W&K. (*Id.* at 24.).

On September 21, 2020, Judge Bloom denied Wright's motion. (Dkt. No. 615.) First, she found no "basis to disturb [her] prior conclusion from the August 2019 Order that Defendant has ***failed to present credible evidence that [Lynn] Wright was a member of W&K***." (*Id.* at 34 (emphasis added).) Second, she "***reject[ed] Defendant's argument that Ira Kleiman lacked the authority to file this action on behalf of W&K*** without Ms. Wright's consent." (*Id.* at 35 (emphasis added).) Wright did not move for reconsideration, nor did he appeal that order following W&K's obtaining a $143 million judgment against him.

## II. AT TRIAL, THE JURY FURTHER REJECTED WRIGHT'S ARGUMENTS RELATING TO THE OWNERSHIP OF W&K

At trial, Plaintiff W&K submitted evidence that Wright had converted its intellectual property through fraudulent Australian lawsuits, where Wright purported to consent on W&K's behalf to transfer that intellectual property to Craig Wright R&D, an entity that he owned and controlled. (*See, e.g.*, Dkt. No. 842 at 86:1-146:16 (referencing evidence); *see also* Dkt. No. 617 at 2 (Plaintiffs "allege that, after David Kleiman died, Defendant initiated fraudulent proceedings in Australia through which he gained control over all of W&K's intellectual property.").) When confronted with this evidence, Wright took the position that W&K's ***real owners*** had authorized him to consent to judgment on W&K's behalf. Specifically, he claimed that Ms. Wright "was a member" of W&K, and that, when he consented to judgment on behalf of W&K, he was "standing

6

in the shoes of Lynn Wright, who was standing in the shoes of W&K." (Dkt. No. 842 at 105:5-15, 110:16-22; *see also id.* at 112:9-18 ("I was the representative of Lynn Wright, who was the representative of W&K.").) He further testified that he had "[c]ontrol of 51 percent of the shares" in W&K because he had been appointed by "[a] company" and his "ex-wife," who had "voting control." (*Id.* at 124:21-125:4.)

Indeed, throughout Plaintiffs' affirmative case at trial, Wright repeatedly asserted that Ms. Wright and a corporate entity owned W&K and that the Estate did not have authority to act on behalf of W&K. For example, he testified:

- "I'm aware that you have changed the ownership structure of W&K[,] and I'm also aware that both my wife as trustee and also Lynn Wright are suing you under W&K for falsification, yes." (Dkt. No. 842 at 89:24-90:10.)

- "Dave Kleiman's estate never controlled W&K. Dave Kleiman was not the person behind it. He didn't fund it. He didn't put it in. The operating agreement, I don't have a copy of. Lynn would. Lynn was nominally in charge of the company, my ex-wife. So no, Dave Kleiman never controlled it." (Dkt. No. 844 at 107:7-19.)

- "Actually my ex-wife owned a chunk of it. One of my companies owned a chunk of it." (Dkt. No. 845 at 13:16-23.)

- "W&K isn't the estate." (*Id.* at 35:15-36:2.)

- "W&K is a joint venture not between Craig and Dave, but between Dave, a vet, and an Australian incorporated company. I had an incorporated company. That formed a joint venture. That's why Information Defense." (*Id.* at 175:6-17.)

On November 15, 2021, after Plaintiffs had presented their case, Wright moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50. (Dkt. No. 780.) In that motion, he did not argue that Plaintiffs had failed to present sufficient evidence regarding the Estate's ownership interest in W&K or the Estate's authority to act on behalf of W&K. On November 22, 2021, Judge Bloom denied Wright's motion. (Dkt. No. 796.)

7

On December 6, 2021, the jury returned a $100-million verdict in W&K's favor on its conversion claim. (Dkt. No. 812.) The next day, that jury verdict was reduced to a final judgment. (Dkt. No. 814.) On March 9, 2022, the final judgment was amended to account for over $43 million in prejudgment interest. (Dkt. No. 889.) Wright did not move for a new trial, to set aside the verdict or judgment, or file an appeal.

### III. NEARLY A YEAR AFTER THE COURT ENTERED JUDGMENT AGAINST WRIGHT, LYNN WRIGHT AND TULIP TRUST PURPORTEDLY TERMINATED W&K'S COUNSEL AND HIRED MR. HUCK

On November 23, 2022, Lynn Wright and Ramona Watts, Wright's current wife, purportedly executed a "Written Consent of the Members of W&K Info Defense Research, LLC." (Dkt. No. 915-6.) In that resolution, Ms. Wright and Ms. Watts (who purports to be the trustee of the Tulip Trust and who is represented by the same attorneys from Rivero Mestre LLP that represent Wright), declared Ms. Wright and Tulip Trust the majority owners of W&K. (*Id.*) With that purported authority, they claim to have terminated Freedman Normand Friedland LLP and Boies Schiller Flexner LLP—*i.e.*, the attorneys who had represented W&K throughout this entire litigation, including at trial—from representing W&K. (*Id.*) They further directed Ira Kleiman and his attorneys to "immediately turn over all communications and files, including corporate documents relating to [W&K]" to Wright's, Ramona's, and Tulip Trust's attorneys from Rivero Mestre LLP.

Following this alleged termination, Ms. Wright and the Tulip Trust purportedly hired Mr. Huck as counsel for W&K. (*See* Dkt. No. 915 at 2 ("Roche Freedman and Boies Schiller have been discharged by W&K's actual majority owners, and W&K is diligently seeking counsel, who will appear as soon as they are engaged."), 9 ("Given the corporate action by the actual majority members of W&K removing Roche Freedman and Boies Schiller as counsel, neither firm has the

8

authority to move for this Court to do anything.").) On January 26, 2023, Mr. Huck filed his Notice of Appearance (the "Notice"), purportedly on behalf of W&K. (Dkt. No. 917.) There is no dispute that Mr. Huck has had no contact with, let alone authority from, Ira Kleiman to appear as counsel for W&K.

## LEGAL STANDARD

"A district court has the discretion to revise or reconsider interlocutory orders at any time *before final judgment* has been entered." *Onita-Olojo v. Veolette Sellers*, 2016 WL 11600719, at *1 (S.D. Fla. June 27, 2016) (emphasis added) (citations omitted); *see also In re Hubbard*, 803 F.3d 1298, 1315 (11th Cir. 2015) ("The court may revisit its order refusing to dismiss the retaliation claim because it has the authority to revisit any of its orders so long as final judgment has not yet been entered.").[2] But once a judgment becomes final, "earlier interlocutory orders merge into the final judgment," *Myers v. Sullivan*, 916 F.2d 659, 673 (11th Cir. 1990), and a party's "*only recourse*" is "to appeal, move to alter or amend the judgment, or move for relief from the final judgment," *Auto. Alignment & Body Servs., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 720 (11th Cir. 2020) (emphasis added) (internal citations omitted).[3] Under such

---

[2] Even in that context, "courts generally permit reconsideration only in very limited circumstances, such as where 'the Court has patently misunderstood a party, where there is an intervening change in controlling law or the facts of a case, or where there is manifest injustice.'" *Id.* (quoting *Vila v. Padron*, 2005 WL 6104075, at *1 (S.D. Fla. Mar. 31, 2005)). Indeed, "reconsideration of a previous order is an extraordinary remedy to be employed sparingly." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002).

[3] *See also Mahone v. Ray*, 326 F.3d 1176, 1181 (11th Cir. 2003) (finding that final judgment "could properly have been attacked in the district court only by a motion pursuant to Rule 60(b) or an independent action"); *Compulife Software, Inc. v. One Resource Grp. Corp.*, 2022 WL 837587, at *2 (S.D. Fla. Mar. 3, 2022) ("At this late juncture, the only procedural vehicle to ask the Court to reopen this case is Federal Rule of Civil Procedure 60(b), which allows for relief from a final judgment, order, or proceeding . . . ."); *AC Direct, Inc. v. Grieder*, 2007 WL 4115201, at *2 (M.D. Fla. Nov. 16, 2007) ("Because the Court's Order was a final judgment, the Court may only modify its Order only for one of the grounds set forth in Federal Rule of Civil Procedure 60(b).").

9

circumstances, the district court's "power to grant" such relief is further "tempered by the law of the case doctrine, which holds that 'important goals vital to just and efficient judicial process' can be safeguarded only if courts refrain from revisiting settled issues in a particular case unless there is a compelling justification to do so." *Annunziata v. Sch. Bd. of Miami-Dade Cty., Fla.*, 2005 WL 591205, at *2 (11th Cir. Mar. 4, 2005) (quoting *Klay v. PacifiCare Health Sys., Inc.*, 389 F.3d 1191, 1197 (11th Cir. 2004)); *see also In re Cummings*, 381 B.R. 810, 824 (S.D. Fla. 2007) ("Here, the law of the case applies to bar reconsideration of the bankruptcy court's factual findings and legal conclusions within its Summary Judgment Order since a final judgment in favor of Debtor was entered on February 2, 2006 and the IRS did not appeal the decision.").[4]

Indeed, it is "a fundamental precept of common-law adjudication" that "an issue once determined by a competent court is conclusive." *Arizona v. California*, 460 U.S. 605, 619 (1983); *see also* Wright & Miller, Federal Practice & Procedure § 4478 (3d ed. 2022) ("The core principle that a final judgment should stand is the very core of res judicata, more fundamental than the elaboration in claim preclusion and issue preclusion."). Accordingly, although "res judicata and collateral estoppel do not apply if a party moves the rendering court in the same proceeding to correct or modify its judgment," *id.*, a related doctrine—direct estoppel—does apply to protect a judgment from an attack in the rendering court. "'Direct estoppel' is a form of issue preclusion that arises 'within the confines of a single claim or cause of action.'" *DuChateau v. Camp, Dresser & McKee, Inc.*, 713 F.3d 1298, 1301 (11th Cir. 2013) (quoting Wright & Miller, Federal Practice

---

[4] Courts use the phrase "law of the case" inconsistently. *Compare, e.g., Stoufflet v. United States*, 757 F.3d 1236, 1240 (11th Cir. 2014) ("The law-of-the-case doctrine is intended to 'regulate judicial affairs *before* final judgment.'" (quoting Wright & Miller, Federal Practice & Procedure § 4478 (2d ed. 1987) (emphasis in original)), *with Vintilla v. United States*, 931 F.2d 1444, 1447 (11th Cir. 1991) ("[L]aw of the case applies only where there has been a final judgment." (quoting *Gregg v. United States Indus., Inc.*, 715 F.2d 1522, 1530 (11th Cir. 1983))).

& Procedure § 4418 (2d ed. 2002)); *see also Ermini v. Scott*, 937 F.3d 1329, 1339 (11th Cir. 2019) ("Direct estoppel, as opposed to collateral estoppel, governs the preclusive effect of a litigated issue in a separate proceeding within a single suit.").

"[T]he rule for applying either direct or collateral estoppel is well-established." *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1180 (11th Cir. 2013); *see also DuChateau*, 713 F.3d at 1303 ("[O]ur analysis 'remains the same, whether we refer to the application of estoppel principles as "direct" or "collateral."'" (quoting *United States v. Shenberg*, 89 F.3d 1461, 1478 (11th Cir. 1996))). "A party asking the court to apply estoppel must establish that (1) the issue at stake is identical to the one involved in the earlier proceeding; (2) the issue was actually litigated in the earlier proceeding; (3) the determination of the issue must have been a critical and necessary part of the earlier judgment; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue." *Tampa Bay Water*, 731 F.3d at 1180 (cleaned up). "If established, then 'estoppel operates to bar the introduction or argumentation of certain facts necessarily established in a prior proceeding.'" *Id.* (quoting *United States v. Lee*, 622 F.2d 787, 790 (5th Cir. 1980)).

## ARGUMENT

Mr. Huck's Notice is premised on Wright's position that (i) Tulip Trust and Ms. Wright are W&K's majority owners and (ii) the Estate does not have authority to act on behalf of W&K. As explained below, that position is irreconcilable with (i) prior positions taken by Wright in the litigation, (ii) both the Court's and Judge Bloom's prior orders, and (iii) the jury verdict and final judgment. Accordingly, Mr. Huck does not have authority to act on behalf of W&K, and his appearance must be stricken. *See, e.g., Freedom Envtl. Servs., Inc. v. Borish*, 2012 WL 6589708,

11

at *1-6 (M.D. Fla. July 12, 2012) (striking notice of appearance, where attorney had no authority to act on behalf of corporate entity for which he purported to appear).

> I. **WRIGHT CANNOT RELITIGATE JUDGE BLOOM'S AND THIS COURT'S PRIOR ORDERS**

As explained above, in contrast to Wright's latest story, Judge Bloom has already found (twice) that Wright had failed to produce *any* credible evidence that anyone other than David Kleiman owned an interest in W&K (Dkt. No. 265 at 10; Dkt. No. 615 at 34); Judge Bloom has already found (also twice) that Wright had failed to establish that the Estate could not act on behalf of W&K (Dkt. No. 68 at 13; Dkt. No. 615 at 35); and this Court has already found—by clear and convincing evidence—that Wright's "testimony that [Tulip] Trust exists was intentionally false," and "part of a sustained and concerted effort to impede discovery into his bitcoin holdings" (Dkt. No. 273 at 21), a finding that Judge Bloom affirmed (Dkt. No. 373 at 15). Wright cannot relitigate these issues for three primary reasons.

***First***, these issues were resolved by interlocutory orders that have since merged into W&K's final judgment. As the case law cited above makes clear, Wright can only obtain relief from a final judgment by appealing, moving to amend or alter the judgment under Rule 59, or moving for relief from the judgment under Rule 60. *See, e.g.*, *Auto. Alignment & Body Servs.*, 953 F.3d at 720. Because he failed to appeal or move to alter or amend the judgment within the allocated time, *see* Fed. R. App. P. 4(a)(1)(A); Fed. R. Civ. P. 59(e), his only option is a Rule 60(b) motion. But neither Wright nor Mr. Huck can provide *any* basis for such relief, nor have they even moved for it. *Cf. Morrel v. Nationwide Mut. Fire Ins. Co.*, 188 F.3d 218, 222-23 (4th Cir. 1999) (applying Rule 60(b) standard to defenses asserted against enforcement of judgment).

Indeed, to the extent that Wright's argument is based on "newly discovered evidence" regarding the ownership of W&K, it is untimely and meritless, especially because any such

evidence would presumably have been within his possession all along. *See, e.g.*, *Vasconcelo v. Miami Auto Max, Inc.*, 2020 WL 1452494, at *2 (S.D. Fla. Mar. 25, 2020) (motion brought less than one year after judgment was not brought within a "reasonable time," where court could not discern anything "in the record that would have prevented" movant "from seeking this evidence during discovery in this case"); *Harduvel v. Gen. Dynamics Corp.*, 801 F. Supp. 597, 604 (M.D. Fla. 1992) ("Any evidence that was in the plaintiff's possession during or prior to the trial cannot be considered 'newly discovered' within the meaning of Rule 60(b)(2)."). And to the extent that Wright's argument is based on Rule 60(b)(6)'s catchall provision, he has not—and surely cannot—show that "an 'extreme' and 'unexpected' hardship will result" if he is not granted relief, *Galbert v. W. Caribbean Airways*, 715 F.3d 1290, 1294 (11th Cir. 2013) (quoting *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984)), a fact that is underscored by his failure to seek affirmative relief. Indeed, the only hardship that would occur here is if this Court were to allow Wright to use his family to hijack W&K's judgment, and thereby enable Wright to avoid making any payment to W&K.

  ***Second***, even if there had been no final judgment, neither Wright nor Mr. Huck can provide any basis for ordinary reconsideration. Indeed, a motion for reconsideration is not "a vehicle" to "present evidence that could have been raised prior to the entry of the order," and "[r]econsideration based on an error of fact ordinarily requires a showing of clear and obvious error where the interests of justice demand correction." *Onita-Olojo*, 2016 WL 11600719, at *1 (cleaned up). Any "evidence" relating to Tulip Trust's or Lynn Wright's alleged ownership of W&K that Wright presents at this late stage certainly could have been presented long ago during discovery.

***Third***, the Court's factual findings relating to the Tulip Trust and Judge Bloom's factual findings that Wright failed to present any credible evidence that anyone other than David Kleiman was ever a member of W&K, are both entitled to preclusive effect under the doctrine of direct estoppel. Indeed, the Court's findings regarding the nonexistence of the Tulip Trust were made by clear and convincing evidence after a three-day evidentiary hearing, where both sides presented witnesses and oral argument. (Dkt. No. 277 at 11.) Those findings, moreover, were essential to the Court's order imposing sanctions against Wright (*id.* at 17-26), and were affirmed by Judge Bloom. Such findings are, in other words, "sufficiently firm to be accorded conclusive effect." *Powrzanus v. Jones Utility & Contracting Co. Inc.*, 822 F. App'x 926, 928-29 (11th Cir. 2020) (quoting *Christo v. Padgett*, 223 F.3d 1324, 1339 n.47 (11th Cir. 2000)); Wright & Miller, Federal Practice & Procedure § 4418 (3d ed. 2022) ("A wide variety of interlocutory or other orders also may qualify for direct estoppel.").

Likewise, Judge Bloom's findings that Wright had "utterly failed in his burden of production" to provide any evidence that demonstrated "additional membership in W&K other than Dave Kleiman" (Dkt. No. 265 at 10), were made after an "extensive hearing" and with reference to documentary evidence (*id.* at 1-2). As the Supreme Court has long held, "a party may be precluded under the doctrine of collateral estoppel from attempting a second time to prove a fact that he sought unsuccessfully to prove in a prior action." *Yates v. United States*, 354 U.S. 298, 335-36 (1957), *overruled on other grounds*, *Burks v. United States*, 437 U.S. 1 (1978); *cf. Stagg, P.C. v. U.S. Dep't of State*, 983 F.3d 589, 605 n.9 (2d Cir. 2020) (explaining that "any fact" upon which a court's determination of jurisdiction is based "may serve as the basis for an estoppel by judgment in any later action") (quoting *Roth v. McAllister Bros., Inc.*, 316 F.2d 143, 145 (2d Cir. 1963)). Such a result is plainly appropriate here, especially to the extent that Wright or Mr. Huck

14

seek to rely on the same evidence that Judge Bloom considered and rejected. *See Teague v. Mayo*, 553 F.3d 1068, 1073 (7th Cir. 2009) ("As to issues of fact, given an unchanged record, 'law-of-the-case reluctance to reconsider approaches maximum force.'" (quoting Wright & Miller, Federal Practice & Procedure § 4478.5 (2d ed. 2002)) (alterations omitted)).

II. **WRIGHT IS DIRECTLY ESTOPPED BY THE JURY VERDICT FROM RELITIGATING THE OWNERSHIP OF W&K AND THE ESTATE'S AUTHORITY TO ACT ON BEHALF OF W&K**

Even if the Court's and Judge Bloom's prior orders did not definitively dispose of Wright's defenses relating to the ownership of W&K, Wright is directly estopped by the jury verdict from re-asserting those defenses now.

Indeed, as explained above, Wright argued at trial that Lynn Wright and an unnamed corporate entity were the real owners of W&K, and that his actions in connection with the Australian lawsuits were therefore not improper because W&K's real owners authorized him to transfer W&K's intellectual property to himself. He further argued that neither David Kleiman nor the Estate had the right to exercise control over W&K. But notwithstanding Wright's testimony, the jury found that he converted W&K's intellectual property, and that W&K, which was being controlled by the Estate, was entitled to $100 million. The jury thus rejected the arguments that Wright raises now—*i.e.*, that Lynn Wright and a fictitious corporate entity, not David Kleiman or the Estate, control W&K—and the jury's verdict therefore estops any argument that Lynn Wright and Tulip Trust could have authorized Mr. Huck to represent W&K *See DuChateau*, 713 F.3d at 1302-03 ("The finding by the jury that DuChateau suffered no adverse employment action in her claim of retaliation bars a trial before another jury of her claim of pregnancy discrimination."); *cf. Teague*, 553 F.3d at 1073 (treating jury verdict as "law of the case"); *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504-05 (7th Cir. 2010) (same).

**CONCLUSION**

For the foregoing reasons, Plaintiff W&K respectfully requests that its motion to strike be granted. If it is not, W&K requests an evidentiary hearing to go to the merits of Mr. Huck's Notice and the basis for his "representation" of W&K.

Dated:  February 10, 2023

Respectfully submitted,

By: */s/ Velvel Devin Freedman*
Velvel (Devin) Freedman, Esq.
FREEDMAN NORMAND FRIEDLAND LLP
1 SE 3rd Ave., Suite 1240
Miami, Florida 33131
vel@fnf.law

Joseph Delich
Stephen Lagos
FREEDMAN NORMAND FRIEDLAND LLP
99 Park Avenue, Suite 1910
New York, New York 10016
jdelich@fnf.law
slagos@fnf.law

Andrew S. Brenner, Esq.
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd Street, Suite 2800
Miami, Florida 33131
abrenner@bsfllp.com

*Counsel to Plaintiffs Ira Kleiman as Personal Representative of the Estate of David Kleiman and W&K Info Defense Research, LLC.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 10, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Velvel (Devin) Freedman*
VELVEL (DEVIN) FREEDMAN