UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC<br><br>    Plaintiffs,<br><br>v.<br><br>CRAIG WRIGHT<br><br>    Defendant. | CASE NO.: 9:18-cv-80176-BB |

**PLAINTIFF W&K INFO DEFENSE RESEARCH, LLC'S AND BOIES SCHILLER FLEXNER LLP'S OPPOSITION TO DEFENDANT'S MOTION TO DISQUALIFY**

Plaintiff W&K Info Defense Research, LLC ("W&K") and Boies Schiller Flexner LLP ("BSF") hereby oppose Defendant's Motion to Disqualify BSF. ECF No. [929].

**INTRODUCTION**

Craig Wright ("Wright") brings the instant motion to disqualify BSF from representing W&K, an entity BSF has represented for approximately 5 years, and for which it helped obtain a $100 million jury verdict, and $143 million judgment against him. As addressed below, Wright's Motion is not only procedurally deficient, but he also lacks standing to bring it. Additionally, the grounds he asserts for disqualification have no merit.[1] However, a brief bit of context and history may be helpful to the Court in deciding this Motion.

---

[1] Oddly, in the instant Motion to disqualify *BSF*, Wright devotes a significant portion of his "Relevant Facts" section to a recitation of allegations regarding certain comments made by Kyle Roche long after he left BSF. Wright makes no attempt to connect those comments to BSF nor could he. Also, the allegations made by Wright concerning Mr. Roche have already been rejected by the 11th Circuit **in this case**. Wright's failure to alert the Court to this fact in his Motion cannot be an oversight, as the Motion itself references that the disqualification issue was presented to the 11th Circuit but omits that Court's ruling.

Wright does not come before the Court with clean hands, or on an empty slate. Instead, *in this case*, he has already been found to be a serial perjurer. ECF No. [277] at 27-28. This Court has also already found that Wright "has engaged in a willful and bad faith pattern of obstructive behavior" and that his conduct is "antithetical to administration of justice." *Id*. Yet, he now comes before the Court, purporting to express his deep concern that the integrity of the judicial process will somehow be damaged unless *he* takes action to ensure that his judgment creditor is adequately represented. Seriously?

Make no mistake – Wright's goal here is clear. He wants to have his wife and his ex-wife put in control of W&K for only one reason – to facilitate W&K's release of its $143 million judgment against him. The bad faith being exhibited by Wright is shocking.

As demonstrated herein, Wright's Motion achieves the rare quinella of being both laughable (on the merits) and risible (in its motive). This Court should deny the Motion to Disqualify BSF in its entirety.

## I. Wright's Motion Is Procedurally Deficient and Should Be Denied Out of Hand

To guard against motions to disqualify opposing counsel being used "for iniquitous strategic purposes," *Stopa v. Cannon*, 330 So. 3d 1033, 1035-36 (Fla. 2d DCA 2021), they "must be made under oath or be supported by an affidavit(s) . . . ." 4 Fla. Jur 2d Attorneys at Law § 372; *Dawson v. Bram*, 491 So. 2d 1275, 1276 (Fla. 2d DCA 1986) ("the court should have required that respondent's motion [to disqualify opposing counsel] be under oath or supported by an affidavit").[2] Wright's failure to do either evidences the frivolity of his Motion and warrants its swift denial.

## II. Wright Has No Standing to Bring This Motion and He Cannot Establish the Requirements for Disqualification

Wright frivolously argues that he has standing to seek to disqualify BSF because his attorneys "'are authorized to report any ethical violations committed in the case,'" quoting a case

---

[2] "Attorneys practicing in the Southern District of Florida are governed in their professional conduct by the Rules Regulating the Florida Bar." *Suchite v. Kleppin*, 784 F. Supp. 2d 1343, 1345–46 (S.D. Fla. 2011).

from half a century ago in the old Fifth Circuit, *Brown & Williamson Tobacco Corp. v. Daniel Int'l Corp.*, 563 F.2d 671 (5th Cir. 1977), which in turn relied solely on *In re Gopman*, 531 F.2d 262 (5th Cir. 1976).  But as the U.S. Supreme Court and the Eleventh Circuit have repeatedly held since then, courts cannot dispense with Article III.  *Booker v. Sec'y, Fla. Dep't of Corr.*, 22 F.4th 954, 958 (11th Cir. 2022) ("Because Article III limits our jurisdiction to cases and controversies, a party must assert *his own legal rights and interests*, and cannot rest his claim to relief on the legal rights or interests of third parties.") (quotation marks omitted) (emphasis added).  That applies to litigants moving to disqualify opposing counsel just like anything else.  *See id.* (explaining "[o]ur analysis in *Gopman* seems to have turned on prudential rather than Article III standing," and Article III was satisfied only because "Gopman's dual representation of the labor union and its officials would have made a conflict imminent") (quotation marks omitted); *Brown & Williamson*, 563 F.2d at 672-73 (opposing counsel was actively "representing supposedly adverse litigants," and thus the conflict was actual and Article III would be satisfied)[3]; *Keane v. Jacksonville Police Fire & Pension Fund Bd. of Trustees*, 2017 WL 4102302, at *7 (M.D. Fla. Sept. 15, 2017) (denying motion to disqualify opposing counsel for lack of standing, and citing Fifth Circuit caselaw holding that "[i]n the absence of [an attorney-client] relationship, the duties of loyalty and confidentiality do not arise and standing is absent") (quoting *In re Yarn Processing Patent Validity Litig.*, 530 F.30 F.2d 83, 88 (5th Cir. 1976)).  Further, Florida courts hold "[a] party does not have standing to seek disqualification where, as here, there is no privity of contract between the attorney and the party claiming a conflict of interest."  *Info. Sys. Assocs., Inc. v. Phuture World, Inc.*, 106 So. 3d 982, 984–85 (Fla. 4th DCA 2013) (cleaned up); *Akerman LLP v. MSP Recovery Claims, Series LLC*, 338 So. 3d 309, 311 (Fla. 3d DCA 2022) (party "was without standing to seek disqualification of [opposing counsel]"); *Anderson Trucking Serv., Inc. v. Gibson*,

---

[3] Courts have also explained that *Brown & Williamson* is limited to circumstances where, unlike here, "an attorney is actively representing two parties with adverse interests."  *Domain Prot., LLC v. Sea Wasp, LLC*, 2019 WL 6700955, at *2 (E.D. Tex. July 22, 2019) (declining to extend *Brown & Williamson* "to motions to disqualify based on an attorney's prior representations," because doing so would be contrary to other binding Fifth Circuit precedent).

884 So.2d 1046, 1050–51 (Fla. 5th DCA 2004) (party lacked standing to disqualify opposing counsel who never previously represented that party); *see also* 4 Fla. Jur 2d Attorneys at Law § 392 ("Generally, a party does not have standing to seek disqualification of counsel based on conflict of interest where there is no privity of contract between the attorney and that party.").

Here, Wright does not even try to explain how he satisfies Article III. Nor could he—although he makes the absurd statement that "[t]he conflict [of interest] here could not be any clearer" (Mot. at 8), he doesn't identify *any* actual or imminent conflict of interest between BSF and Ira Kleiman or W&K, and another client, existing *or* former; rather he just fabricates ineffective assistance of counsel. *See generally* Mot. at 8-10. Wright fails even the bare minimum requirement to "clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction . . . ." *Suchite*, 784 F. Supp. 2d at 1346 ("An order involving the disqualification of counsel must be tested against the standards imposed by the Florida Bar Rules of Professional Conduct.") (quotation marks and alteration omitted). Since he refers generally to a purported "conflict of interest" (*see* Mot. at 8), presumably he purports to invoke Florida Bar Rule 4-1.7. *See id.* ("Rule 4–1.7 is the general rule on conflicts of interest involving attorneys."). But the "threshold requirement" in Florida for disqualification based on a conflict of interest is the existence of an attorney-client relationship. *E.g.*, *Kaplan v. Divosta Homes, L.P.*, 20 So. 3d 459, 462 (Fla. 2d DCA 2009) ("Because no attorney-client relationship existed between the Kaplans and the Firm, the Kaplans failed to meet the threshold requirement [under Rule 4-1.7 or 4-1.9] for disqualification based on a conflict of interest"); *Stopa*, 330 So. 23d at 1035 (same). Wright of course does not—and has never had—such a relationship with BSF. Thus, even if Wright could establish standing (he cannot), he cannot meet the requirements for disqualification.

Even more meritless is Wright's attempt to seek to disqualify BSF on behalf of BSF's own client, W&K, as part of his scheme to cancel his debt through his current spouse and his ex-wife based on a notice of appearance filed by Paul Huck, Jr., who does not—and has never—represented W&K. *See* Mot. at 2-3, 7. It goes without saying that Wright has no standing to take *any* action

4

on behalf of W&K, which is presumably why he does not even try to argue otherwise in his Motion. Mr. Huck has not sought to disqualify BSF either.

### III. BSF Has Not Been Discharged By W&K

Wright's argues that BSF must be disqualified for the "simple" reason that it has allegedly been discharged by W&K. However, Wright's "evidence" of this discharge comes in the form of two unsworn "Notices of Consent" allegedly executed by Wright's ex-wife ("Ms. Wright") and his current wife ("Ms. Ang"), the first purporting to discharge BSF and the Freedman Firm, and the second purporting to hire Mr. Huck as counsel for W&K. *See* Mot., Exhibits A and B. Of course, all of this came as a complete surprise to Ira Kleiman, the person who has been acting on behalf of W&K in this litigation for the last 5 years. ECF No. [919]. Ira Kleiman did not discharge BSF or the Freedman Firm, nor did he hire Mr. Huck. *Id.* ("…the new counsel hired to represent W&K was not an action of my doing. I do not know who Paul C. Huck, Jr., Esq. of THE HUCK LAW FIRM is.").

Wright's arguments fails for many reasons.

*First*, as described above, the sole purpose of this gambit by Wright, the same gambit he is attempting in multiple state court actions, is to wrestle control of W&K and cause it to release the $143 million judgment it holds against him. Perhaps if Ms. Wright and Ms. Ang have the courage to come to our country,[4] sit for a sworn deposition subject to the penalties of perjury in this nation, and then come before the Court subject to those same penalties and be cross-examined, they can explain how they purportedly became the owners of W&K, and why it would be in the best interests of W&K to release Dr. Wright from the judgment it holds.[5] Until they do so, their self-serving Notices of Consent are meaningless and should be ignored.

---

[4] Ms. Wright and Ms. Ang reside outside the United States.
[5] The benefits to Wright and his current wife Ms. Ang of a release of the Judgment against Wright are obvious. Removing a $143 million personal judgment has its advantages. The benefit to Ms. Wright, or at least her motive for agreeing to participate in this fraud, is likewise clear given that she is financially dependent on Wright, and she recognizes the potential ramifications to her financial stability should she not do his bidding. Lynn Wright Dep. Tr., at 69-70; 111-12, 120.

*Second*, this is at least the third attempt in this case by Wright to challenge Ira Kleiman's ownership interest W&K. These efforts are set forth in detail in W&K's Motion to Strike Mr. Huck's appearance and incorporated herein by reference. ECF No. [931]. All these attempts have been rejected by Judge Bloom, for the "simple" reason that they have no basis in fact. *Id.*, at 2-7, 10-14. Indeed, Wright has not even been able to keep his *false* stories straight -- arguing alternatively throughout this litigation that he has no idea who owns W&K (ECF No. [242-1], at 233:12-14), that his ex-wife does (ECF No. [171] at 6-7), that his current wife does (ECF No. [915-6]), that a non-party to these proceedings does (ECF No. [144] at 2-3), etc. As Judge Bloom noted when discussing Wright's various claims regarding the ownership of W&K, "What a tangled web we weave when first we practice to deceive!"[6].

Third, Ms. Ang claims to own part of W&K not in any individual capacity, but instead as the "Trustee of the Tulip Trust." This is a particularly bold assertion for Wright (and, unfortunately his counsel) to make given that this Court has already found that the "totality of the evidence in the record does not substantiate that the Tulip Trust exists" and that Wright repeatedly gave false testimony about its existence and its alleged purpose. ECF No. [277] at 21.[7]

Yes, it is "simple" -- there is no competent evidence that W&K has discharged BSF or the Freedman Firm. It would be tempting for BSF to disclose the communications it has had with its client on this issue given the unsubstantiated allegations leveled against it by Wright, but the attorney-client privilege prevents it from doing so. What BSF can say is that W&K has not discharged it.

### IV.    Ira Kleiman's "Admissions" Do Not Require BSF's Disqualification

As his second basis for disqualification, Wright argues that Ira Kleiman's "admissions" require BSF's disqualification. These "admissions" relate to two written statements filed by Ira Kleiman with the Court wherein he expressed his frustration with certain trial decisions and post-

---

[6] ECF No. [265] at 4, quoting Sir Walter Scott, *Marmion* (1808).
[7] One wonders whether Mr. Huck was made aware of the provenance, or lack thereof, of the Tulip Trust before he accepted their purported retention of him.

trial collection efforts. ECF Nos. [918], [919]. In those same statements, he never purports to discharge BSF (or the Freedman Firm); however, he does specifically disavow granting any authority to Mr. Huck to appear on W&K's behalf. *Id.*

Again, BSF cannot divulge any communications it had with Mr. Kleiman at trial, in the post-trial period, or after his statements were filed with the Court. These communications are all privileged. Pertinent to the instant Motion, BSF again states that Mr. Kleiman, on behalf of W&K, has not discharged it nor does he or W&K assert any conflict with regard to the Firm's continuing representation of W&K. This should allay the concerns Wright claims to have.

But there is one part of Wright's motion BSF can address because it makes allegations regarding the *motives* of BSF. To summarize, Wright argues in his Motion that BSF did not serve a Rule 1.977 debtor form on him sooner because it was afraid that doing so would subject the Freedman Firm to the jurisdiction of the Court to adjudicate Wright's motion to disqualify it. The allegation is preposterous.

To think that four lawyers[8] got together and decided it was okay to accuse another Firm, in a filing in Federal Court, of purposely subordinating the interests of its client so that another Firm would somehow evade jurisdiction is mind-boggling. To put it bluntly, BSF did not do anything to hurt its own client (W&K) to protect the Freedman Firm (or for any other reason).[9]

Couching these accusations in the form of a cutesy "we don't know but Occam's razor strongly urges in favor of the allegations made" is not an excuse. Instead, it is an acknowledgement that the author knows its slur is unfounded and improper, but is too cowardly to own its misconduct. *See, e.g.*, *Black v. State of Mo.*, 492 F. Supp. 848, 862 (W.D. Mo. 1980) ("It should,

---

[8] The Motion is submitted by four lawyers from the Rivero Mestre Firm, including one of its namesakes.

[9] The Freedman Firm is more than capable defending itself and, in fact, has already defeated Wright's Motion to Disqualify in the 11th Circuit in this case. Wright's criticism of BSF for not "speak[ing] out" against the Freedman Firm is likewise misplaced and offensive. It would be improper for BSF to make any comment about Roche's statements, or the Freedman Firm, outside the context of this case. In this case, BSF is aware of no "unscrupulous and unlawful litigation strategies employed by Roche Freedman." Mot. at 10.

of course, be apparent to all members of the Bar that '(l)eveling the charge of impropriety at opposing counsel, which if sustained would require withdrawal, should not be a standard part of counsel's offensive armament to be used routinely or without reasonable and good faith belief in its necessity.'") (quoting *First Wis. Mortg. Trust v. First Wis. Corp.*, 584 F.2d 201, 206 (7th Cir. 1978)).

Dated: February 24, 2023

Respectfully submitted,

By: */s/ Andrew S. Brenner*
ANDREW S. BRENNER
Florida Bar No. 978663
STEPHEN N. ZACK
Florida Bar No. 145215
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd Street, Suite 2800
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile:  (305) 539-1307
szack@bsfllp.com
abrenner@bsfllp.com

MAXWELL V. PRITT
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA  94104
Telephone: (415) 293-6869
Facsimile:  (415) 293-6869
mpritt@bsfllp.com

*Counsel to Plaintiffs Ira Kleiman as Personal Representative of the Estate of David Kleiman and W&K Info Defense Research, LLC.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 24, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Andrew S. Brenner*
Andrew S. Brenner, Esq.