## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC

      plaintiffs,

v.                                   **Case No. 9:18-cv-80176 (BB/BR)**

CRAIG WRIGHT.
_____/

### RAMONA ANG'S OPPOSITION TO THE MOTION TO STRIKE THE APPEARANCE OF PAUL C. HUCK, JR.

Ramona Ang, as trustee of the Tulip Trust, opposes the motion to strike the appearance of Paul Huck on behalf of W&K Info Defense Research, LLC ("W&K") [DE 931] (the "Motion to Strike" or "Motion").

### PRELIMINARY STATEMENT

Ira Kleiman does not hold, and never could have held, the controlling interest in W&K. His years of acting like he alone owns and runs W&K are a lie, and a lie doesn't become the truth merely by retelling—not even if it is retold for five long years. Ira Kleiman doesn't get to say who W&K's lawyer should be. And neither Ira Kleiman, nor his lawyers at Roche Freedman LLP, n/k/a/ Freedman Normand Friedland LLP ("Roche Freedman"), have the authority to demand Mr. Huck's notice of appearance on W&K's behalf be stricken.

At the time Ira Kleiman initiated this lawsuit, W&K was defunct. Ira Kleiman—with the aid of, and likely at the behest of, Roche Freedman—reanimated it for the sole purpose of joining it as a party here, to maximize his and the law firm's ability to profit from the Estate of the

1

brother Ira barely knew. He then named himself the company's managing member and, with the help of Roche Freedman, spent the next five years purporting to control it.

Despite Ira's baseless claims of sole ownership, there has never been a shred of evidence that David Kleiman owned a controlling interest in W&K while alive. And if David never owned it while alive, then Ira Kleiman, as personal representative of his brother's Estate, couldn't have acquired it after David's death. At trial, Ira Kleiman testified that he believed the Estate owned a 50% interest in W&K. And in the "notice" Ira Kleiman filed with this Court just four weeks ago [DE 917], he stated that it is an "indisputable fact" that his brother owned a 50% interest in what he says was to be the successor corporation to W&K.[1] Not 50.001%, or anything more. Ira Kleiman has therefore ***admitted*** that he cannot control anything W&K does, including by attempting to strike the appearance of Mr. Huck as its new counsel.

Roche Freedman spends most of its 15-page motion reciting law relating to the law of the case and estoppel doctrines. But this Court has *never* found that Ira Kleiman owns a controlling, much less a100%, interest in W&K. That is not and never has been the law of this case. And that remains true even if the Court had made a final determination (which it didn't) that neither Lynn Wright nor the Tulip Trust is an owner of W&K. By Ira Kleiman's own admission, his brother owned only 50%, so ***someone other than Ira Kleiman*** owns the other half. Assuming, for purposes of this motion, that Ira Kleiman is correct in his current and past assertion that the Estate and Dr. Wright shared ownership 50-50 (which Mrs. Ang disputes), then no one holds a majority interest in W&K, the company is in deadlock, and a court—most

---

[1] According to Ira Kleiman, his brother owned a 50% interest in CO1N Exchange by virtue of his 50% ownership interest in W&K.

properly a Florida state court—will have to determine as a matter of Florida state law how to resolve that deadlock.

In any event, at trial, together with his recent admission that David Kleiman was only a 50% owner of W&K, constitute new evidence that prevents Roche Freedman from advancing arguments about the Court's pre-trial findings as to W&K's membership as law of the case. The doctrine of direct estoppel is likewise inapplicable because neither Mrs. Ang nor Lynn Wright were parties to the trial, the issue of W&K's ownership was not fully litigated and not adjudicated there, and, to the extent it was, the Court's collateral, pre-trial findings concerning W&K's membership were not "critical and necessary" to the judgment.

Simply put, the question of W&K's precise ownership was ***never*** a question presented to this Court or considered by the jury. To the contrary, that question is the subject of two pending state court actions, one brought by Mrs. Ang in her capacity as trustee of the Tulip Trust, and the other brought by Lynn Wright—both of whom claim ownership in the company. If any court is to determine the ownership of W&K, it should be those courts.

## RELEVANT FACTS

As Ira Kleiman admitted in his recent filing, there is one thing about which there is not and never has been a question: there is ***no evidence*** that David Kleiman ***ever*** owned a majority interest in W&K when he was alive. As the facts developed during discovery and at trial established, all of the uncontested evidence from David Kleiman's lifetime is consistent with and supports the determination that David Kleiman owned 1/3 of W&K.[2] After David Kleiman's

---

[2] These facts are set forth in Dr. Wright's Opposition to Motion to Compel Completion of Form 1.977. [DE 915.] For ease of reference, Dr. Wright repeats them here and, where applicable, also reattaches the exhibits attached to his Opposition as exhibits here.

death, no evidence suggests the Estate acquired any additional ownership in W&K. It follows

that the Estate could not possibly hold a majority interest in W&K after David's death.

A.    <u>**Evidence Regarding Ownership of W&K**</u>

Following an exchange of emails discussing the formation of W&K, Dr. Wright, David

Kleiman and Lynn Wright registered W&K with the Florida Secretary of State on February 14,

2011. A copy of the Articles of Organization is attached as **Exhibit A**; a compilation of emails

relating to the formation of W&K is attached as **Composite Exhibit B**. The purpose of the

company was to apply for research grants from the U.S. Department of Homeland Security

("DHS"). (Comp. Ex. B at D78.) Because he was not a United States citizen, Dr. Wright did not

qualify to apply for the grants on his own. (*Id*.) So he partnered with David Kleiman, who was a

U.S. army veteran, to submit grant proposals through W&K. *Id.*

From February 1, 2011, through March 6, 2011, Dr. Wright, David Kleiman, and Lynn

Wright exchanged emails about the formation of W&K and the review and submission of

proposals to DHS. (*See generally* Comp. Ex. B.). As explained by Lynn Wright in her

deposition, the three of them collaborated to decide on a name that reflected their partnership

and their ownership interests:

> Q. Do you know what the "W" in W&K Information
> Defense Research stood for?
> A.  For Wright.
> Q. Okay.  And did that stand for Craig Wright or
> Lynn Wright?
> A.  Lynn Wright.
> Q. For Lynn Wright?
> A. Yes.
> Q. And what did the "K" stand for?
> A. For David Kleiman.
> Q. And what did "Information Defense" stand for?
> A. That was Craig.
> Q. So the company W&K Information Defense Research
> stood for Lynn Wright, David Kleiman and Craig Wright; is

that correct?
A. Yes.

(*See* transcripts of testimony attached as **Composite Exhibit C**, L. Wright Depo. Tr. 11:23-12:13.) Indeed, "W&K's corporate representative," hand-picked by Roche Freedman partner Velvel Freedman,[3] conceded that Lynn Wright chose the name of the company. Comp. Ex. C, Z. Eisner Depo. Tr. 74:17-19.) Dr. Wright researched and drafted the proposals, David Kleiman and Lynn reviewed and revised them, and David Kleiman (with information supplied by Dr. Wright) completed the paperwork necessary to submit the proposals to DHS. (Comp. Ex. B.**)**. David Kleiman submitted four proposals to DHS on behalf of W&K on March 2, 2011. (*Id.* at D250.)

During her deposition, Lynn Wright testified that the parties intended to each retain a 1/3 ownership interest in W&K:

Q. Are you a shareholder in W&K?
A. Yes.
Q. Do you know how you became a shareholder in W&K?
A. When I - when the - the company was originally set up, I think it was just divided between the three of us, I guess.

(Comp. Ex. C, L. Wright Depo. Tr. at 22:14-17.)

Q. Okay. Besides yourself, Craig and David, were there any other individuals involved in W&K, at any point in time? …
A. To the best of my knowledge, there was nobody else that was involved in it.

(*Id.*, at 96:19-97:4.)

---

[3] Eisner testified that it was Freedman— whom he had known for about a year through a lawyer's group chat—who contacted him about acting as W&K's corporate representative. Freedman invited Eisner to lunch and "told me what he needed me for." (Comp. Ex. C, Dep. Tr. Z. Eisner 6:5-20.)

Email traffic likewise reflects that the company founders *always* intended that W&K have three principals. (Comp. Ex. B at J34 & J96.)[4] At trial, Dr. Wright likewise testified that David Kleiman never owned a controlling interest in W&K:

> David Kleiman's estate never controlled W&K. David Kleiman was not the person behind it. He didn't fund it. He didn't put it in. The operating agreement, I don't have a copy of. Lynn would. Lynn was nominally in charge of the company, my ex-wife. So no, David Kleiman never controlled it. He was just the American person who needed to be there because I needed someone who was an American, a vet, because otherwise I didn't get to file those things.

(Comp. Ex. C, Trial Tr. Day 8 at 107:7-19.)

W&K later became inactive for failure to file the annual report required by the Florida Secretary of State. On April 12, 2018, Ira Kleiman unilaterally—and without legal authority— acted to reinstate W&K for the sole purpose of joining it as a party to this lawsuit. A copy of the Reinstatement filed with the Florida Secretary of State is attached as **Exhibit D**.

### B.   Pre-Trial Findings Concerning W&K

The Motion to Strike relies on the Court's pre-trial findings concerning W&K at various junctures in the case to argue that the Court already has determined that the Estate owns W&K and Ira Kleiman has sole authority to control it. The findings on which it relies were inconnection with the following motions:

- **Dr. Wright's motion to dismiss.** Dr. Wright argued, among other things, that the Estate lacked standing to bring claims against Dr. Wright. [DE 33 at 15.] Plaintiffs argued that they had sufficiently alleged, for purpose of surviving a motion to dismiss, that David Kleiman was the sole owner of W&K, and the Estate therefore had standing to assert direct claims on behalf of W&K. [DE 50 at 7.] The Court denied the motion to dismiss, finding that the Estate sufficiently

---

[4] At one point in the contemporaneous emails, Dr. Wright vacillated as to who the three principals would be, stating in two emails that he, Dave Kleiman and another individual named Bob Radvanovsky would each retain a 1/3 ownership interest. (Comp. Ex. B at J34 & J96.) But there was no intimation, ever, that Dave Kleiman would hold more than a 1/3 interest in W&K.

alleged injury for loss of intellectual property and therefore had standing to sue. [DE 68 at 12.] *The Court did not—and could not at the dismissal stage—find that David Kleiman was the sole owner of W&K.*

- **Dr. Wright's motion for judgment on the pleadings**. Dr. Wright argued that the Court lacked diversity jurisdiction because W&K had foreign members. [DE 144.] The Court held that Dr. Wright had failed to meet his burden of production that W&K had foreign members, or members other than David Kleiman. [DE 265 at 10.] *The Court did not find that David Kleiman was the sole owner of W&K.*

- **Dr. Wright's motion for summary judgment**. Dr. Wright argued that the Court lacked diversity jurisdiction because W&K had foreign members, including Lynn Wright, and that the Estate lacked authority to prosecute the action on behalf of W&K because it did not hold a majority interest in the company. [DE 487, at 23-24.] The Court found that Dr. Wright had failed to meet his burden to prove that no material issue of fact existed with respect to W&K's foreign ownership and, consequently, rejected the argument that Ira Kleiman lacked authority to file the action on behalf of W&K. [DE 615 at 34-35.] *The Court did not find that David Kleiman was the sole owner of W&K.*

- **Plaintiffs' motion to compel.** Plaintiffs moved to compel Dr. Wright to provide a list of his Bitcoin holdings. Dr. Wright argued that he could not comply because the information was contained in a blind trust (Tulip Trust I), of which he was only one of several trustees. (Dr. Wright stated that there was a second Tulip Trust of which he and his wife were trustees.) [DE 211.] The Court found that Dr. Wright's testimony regarding the existence of the Tulip Trust was false, and granted the motion to compel. [Dkt. No. 277 at 21.] *W&K's ownership was not at issue on the motion to compel, and the Court made no findings with respect to it.*

As for the trial itself, despite the Motion's bald assertion otherwise [DE 931 at 15], the question of who owned W&K was ***never*** before the jury, and the jury made no findings with respect to it.[5]

### C.  Ira Kleiman's Trial Testimony

---

[5] The Motion to Strike argues that the jury necessarily rejected the argument that Lynn Wright or the Tulip Trust owned any interest in W&K because it awarded W&K damages for conversion of intellectual property by Dr. Wright, despite his testimony that his actions in connection with the Australian lawsuits were authorized by W&K's owners. [DE 931 at 15.] The former does not at all follow from the latter. The jury's verdict for W&K did not come in any detailed verdict form addressing the question of W&K's ownership. The jury simply entered an award of damages to W&K against Dr. Wright. The jury's decision that Dr. Wright has civil liability to W&K says nothing at all to establish the Estate as sole owner of W&K.

*After* the pre-trial rulings listed above—none of which amounted to a finding that David Kleiman owned 100% of W&K—Ira Kleiman testified that his brother owned only a 50% interest in W&K:

> Q. You're saying that we've seen an email where Craig Wright said there was a division 50/50 on the invention and mining of Bitcoin?
> A. That they were 50/50 partners in W&K.
> Q. Mr. Kleiman, I want to make sure I understand what you're saying. Are you telling the jury that we have seen a document today like that?
> A. You may not have seen it today.  But I believe that I have possession of emails such as that.

(Comp. Ex. C, Ira Kleiman testimony, Trial Tr. Day 3 155:4-12.) This testimony—an admission by Ira Kleiman under oath and at trial—definitively settles the question of whether David, and thereby the Estate that Ira controls, ever owned a majority interest in W&K. And this central admission was not before the Court when it made the rulings on which the Motion—and Roche Freeman—now relies.

### D.  Ira Kleiman's January 26, 2023, Filing

On January 26, 2023, one day before a status conference the Court scheduled to address the pending motion to compel and motion to disqualify, Ira Kleiman personally filed a "notice" with the Court in which he again admitted the "indisputable fact" that David Kleiman's Estate held a 50% interest in W&K. [DE 917.][6] This is a second admission, *after* the pre-trial rulings on which Roche Freedman relies and *after* the judgment was awarded, indicating that the Estate does not hold a controlling interest in W&K.

---

[6] As noted above, Ira Kleiman argues that his brother owned 50% interest in what was to be the successor to W&K (CO1N Exchange) by virtue of his 50% ownership interest in W&K.

In addition to the admission about the Estate's ownership interest in W&K, Ira Kleiman's "notice" contained a stinging rebuke of his trial counsel at Roche Freedman and Boies Schiller. Ira Kleiman detailed a bill of particulars against his lawyers for multiple failings before, during and after trial, including their failure to take any steps, until only recently, to collect the W&K judgment.

### E.   The Discharge of Roche Freedman and Boies Schiller and Engagement of the Law Firm of Paul Huck

Meanwhile, Mrs. Ang and Lynn Wright, as the true majority members of W&K (the "Majority Members") took steps to hire new counsel for W&K. On November 23, 2022, the Majority Members executed a Written Consent of Members discharging both Roche Freedman and Boies Schiller as counsel to W&K. The November 23, 2022 Written Consent is attached as **Exhibit E**. By another Written Consent effective January 24, 2023, the Majority Members engaged The Law Office of Paul Huck as counsel to W&K. The January 24, 2023 Written Consent is attached as **Exhibit F**. Mr. Huck filed a notice of appearance on January 26, 2023 [DE 917], just before Ira Kleiman filed his "notice" excoriating his counsel. [DE 918.]

### <u>ARGUMENT</u>

## I.   THIS COURT HAS NEVER FOUND THAT IRA KLEIMAN, AS PERSONAL REPRESENTATIVE OF THE ESTATE, OWNS 100% OF W&K

Neither the Court nor the jury ever made a finding that David Kleiman and, by extension, Ira Kleiman, as personal representative of his Estate, owned 100% of W&K. Yes, the Court made pre-trial findings that Dr. Wright had *failed to meet **his** burden* to show, on the evidence presented at the time, that there were foreign members of W&K. But, here, it is Roche Freedman—and presumably Ira Kleiman, if the law firm is actually acting at his direction— bringing the motion to strike Mr. Huck's appearance, and it is Ira Kleiman who now bears the

9

burden to show that he has a controlling interest in W&K and the authority to strike Mr. Huck's appearance. That is an impossible feat—especially with Ira Kleiman's recent admission that David Kleiman only owned 50% of the company while alive.

One of Roche Freedman's favorite (baseless) arguments, deployed again in the Motion, is that, because the Court did not find Dr. Wright's testimony as to the existence of the Tulip Trust to be credible, neither Mrs. Ang (as trustee of the Tulip Trust) nor Lynn Wright can possibly be members of W&K. Pretending for the sake of argument that is true (it isn't), the Court never found that David Kleiman owned 100%.[7] So, giving full effect to every finding made by this Court and the jury in this five-years-long litigation, not one of them is a finding that Ira Kleiman, through his brother's Estate, owns 100% of W&K. Ira Kleiman himself has admitted that his brother only ever owned, at best, a 50% interest in W&K. And a 50% interest does not give him the power to control W&K and strike the appearance of Mr. Huck.

## II.   NEW EVIDENCE RENDERS THE LAW OF THE CASE DOCTRINE INAPPLICABLE

"The application of the law-of-the-case doctrine is discretionary, as the doctrine is a matter of practice, and not a limit on the Court's power." *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 2016 WL 4154912, at *3 (S.D. Fla. May 24, 2016). The doctrine only bars consideration

---

[7] Notably, at the hearing on plaintiffs' motion to compel, Dr. Wright presented evidence of two trusts evidence of two trusts created in October 2012, one of which had multiple trustees who each held slices of the public keys to the Bitcoin held in the trust. The Court rejected Dr. Wright's testimony about the existence of those trusts, to which referred singularly as the "Tulip Trust." [DE 277.] The Tulip Trust of which Mrs. Ang is trustee and which owns a one-third interest in W&K, however, was created later, and was not the subject of any ruling by this Court. On April 13, 2021, Mrs. Ang commenced an action in the Circuit Court for the 15th Judicial Circuit in Palm Beach County seeking a declaratory judgment as to the ownership interests in W&K of the Tulip Trust, Lynn Wright and the Estate. *See Ramona Ang v. Ira Kleiman*, Case No. 50-2021-CA-004758-XXXX-MB. That action is still pending, and the court has not yet made any findings concerning W&K's ownership.

of "those legal issues that were actually, or by necessary implication, decided in the former proceeding." *Newman v. Ormond*, 456 F. App'x 866, 867 (11th Cir. 2012) (quoting *Oladeinde v. City of Birmingham,* 230 F.3d 1275, 1288 (11th Cir. 2000)). In addition, "exceptions to this doctrine apply when substantially different evidence is produced, when there has been a change in controlling authority, or when the prior decision was clearly erroneous and would result in manifest injustice." *Oladeinde*, 230 F.3d 1275 at 1288 (quoting *Jackson v. Ala. State Tenure Comm'n,* 405 F.3d 1276, 1283 (11th Cir.2005)).

> As to the first exception, the Eleventh Circuit has explained:

> When the record changes, which is to say when the evidence and the inferences that may be drawn from it change, the issue presented changes as well. The first exception to the doctrine recognizes that the law of the case is the law made on a given set of facts, not law yet to be made on different facts.

*Jackson v. State of Alabama St. Tenure Comm'n*, 405 F.3d 1276, 1283 (11th Cir. 2005) (reversal of award of summary judgment on appeal was not law of the case on subsequent appeal of decision awarding summary judgment where court had "limited evidence" before it at time of first appeal, but now had "new evidence" in the record that warranted summary judgment). *See also Newman*, 456 F. App'x 866 at 867 (new evidence attached to second summary judgment motion provided exception to law of the case doctrine, such that the district court did not violate doctrine in granting summary judgment based on new record before it); *Silva v. Baptist Health S. Fla., Inc.*, 838 F. App'x 376, 382-83 (11th Cir. 2020) ("Law of the case does not apply in this situation because the district court based its standing decision on a different record than did this Court when addressing the propriety of summary judgment.").

Even if the Court had previously found that David Kleiman was the sole owner of W&K and that Ira Kleiman inherited sole power to control it—which is not at all the case—Ira Kleiman's admissions at trial and in his recent filing constitute new evidence that renders the law

of the case doctrine inapplicable. Ira Kleiman is now on record *twice* admitting that, at most, his brother held a 50% ownership interest in W&K. Those admissions were not before Judge Bloom in her rulings on Dr. Wright's motion to dismiss, motion for judgment on the pleadings and motion for summary judgment. Nor were they before Judge Reinhart in his ruling on plaintiffs' motion to compel. So, to the extent the Court's prior rulings could be interpreted to have conclusively determined W&K's ownership (and they didn't), they are not binding as law of the case because of Ira Kleiman's after-the-fact admissions. Ira Kleiman has now admitted he does not have the right to control W&K and, as a result, he has no right to strike Mr. Huck's appearance.

## III.   DOCTRINES OF ESTOPPEL DO NOT BAR THE COURT'S CONSIDERATION OF W&K'S OWNERSHIP BECAUSE THOSE FINDINGS WERE NOT A CRITICAL PART OF THE JUDGMENT

The doctrines of estoppel likewise do not warrant the striking of Mr. Huck's appearance. "A party asking the court to apply estoppel must establish that (1) the issue at stake is identical to the one involved in the earlier proceeding; (2) the issue was actually litigated in the earlier proceeding; (3) the determination of the issue ... must have been a critical and necessary part of the earlier judgment; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue." *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1180–82 (11th Cir. 2013) (internal quotation marks omitted). Three of the four requirements are missing here.

Taking the fourth factor first, neither Mrs. Ang nor Lynn Wright is a party to this case and, consequently, did not have any opportunity—let alone a full and fair opportunity—to litigate their ownership interest in W&K before this Court. Answering the plaintiffs' repeated argument (drawn from pre-emancipation times): Yes, Mrs. Ang is Dr. Wright's current wife. But

12

that does not render her a mere extension of him, as Roche Freedman attorneys never tire of arguing in this and other courts. *See, e.g., Tavery v. United States*, 897 F.2d 1032, 1032–33 (10th Cir. 1990) (husband and wife are "separate and distinct taxpayers" for res judicata purposes even where filing a joint return); *Carter v. HSBC Mortg. Servs., Inc*., 2018 WL 6137628, at *7 (N.D. Ga. Oct. 12, 2018) (noting that husband and wife are not always in privity by virtue of their marriage). And surely Lynn Wright, as Dr. Wright's ex-wife—and again despite these same lawyer's repeated denial of her agency and autonomy—cannot be deemed to be in privity with him by virtue of her status as his former spouse.

The Motion makes much of the fact that neither Mrs. Ang nor Lynn Wright sought to intervene in this action. (Motion at 2.) But why would they? The question of W&K's precise ownership was never before the Court. For that reason, Mrs. Ang and Lynn Wright commenced—long before the trial in this action—their separate state court actions to determine their respective ownership interests in W&K. *See Lynn Wright v. Ira Kleiman*, 2013-CP-005060-XXXX-NB (Fla. 15th Cir. Ct.) (petition for declaratory judgment filed July 16, 2020); *Ramona Ang v. Ira Kleiman*, Case No. 50-2021-CA-004758-XXXX-MB (Fla. 15th Cir. Ct.) (filed April 13, 2021). Those courts should and will determine who holds what interest in W&K, a question this Court neither answered nor was asked to answer.[8]

---

[8] Nor, respectfully, should this be the Court to answer it. Even if the parties are willing to have this Court undertake a determination of the ownership issue, it is unclear that this Court has ancillary jurisdiction to do so. *Nat'l Mar. Servs., Inc. v. Straub,* 776 F.3d 783, 786 (11th Cir. 2015) *citing Peacock v. Thomas,* 516 U.S. 349, 354, 116 S. Ct. 862, 867, 133 L.Ed.2d 817 (1996) (discussing circumstances in which ancillary jurisdiction exists). Moreover, under the internal affairs doctrine, the state courts are properly situated to resolve the dispute over W&K's ownership. *See Commonwealth of Pennsylvania v. Williams*, 294 U.S. 176, 185 (1935) ("It has long been accepted practice for the federal courts to relinquish their jurisdiction in favor of the state courts, where its exercise would involve control of or interference with the internal affairs of a domestic corporation of the state.")

With respect to the second and third factors, the issue of W&K's ownership was not fully litigated in this case. To the extent it was litigated at all, the findings concerning it were neither critical nor necessary to the final judgment of the causes of action that *were* before the Court. Again, while questions concerning the constitution of W&K arose at various points in the litigation, the specific question of how the company's membership was divided was never the subject of any briefing or evidentiary hearing. "Lightly litigated" issues are not entitled to preclusive effect. *See Islam v. Kelley*, 2019 WL 2716318, at *2 (S.D. Fla. June 28, 2019), *aff'd sub nom. Islam v. Sec'y, Dep't of Homeland Sec*., 997 F.3d 1333 (11th Cir. 2021).

Even if the question of W&K's control had been fully litigated—and it plainly wasn't—the issue was *not* critical to the judgment in this case. Far from it. Indeed, the Motion only weakly attempts to satisfy this requirement by arguing that the Court's findings concerning the existence of the Tulip Trust were "essential to the Court's order imposing sanctions against Wright." (Motion at 14.) But the sanctions order—which Judge Bloom did not adopt—was not a *judgment* in favor of W&K. Furthermore, the jury's award of damages to W&K was based on its determination that Dr. Wright converted intellectual property belonging to W&K. The jury did not need to consider—nor did it—whether there were other members of W&K, who those members were, or the size of their ownership interest. For these reasons, no estoppel doctrine does or can require Mr. Huck's appearance to be stricken.

## <u>CONCLUSION</u>

For the reasons stated here, the motion to strike the appearance of Mr. Huck should be denied.

Respectfully submitted,

RIVERO MESTRE LLP
2525 Ponce de Leon Boulevard,
Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: abrown@riveromestre.com
Email: ahenry@riveromestre.com
Email: rkuntz@riveromestre.com
Email: receptionist@riveromestre.com
*Counsel for Ramona Ang, as Trustee for the*
*Tulip Trust*


By: s/ Andres Rivero
ANDRES RIVERO
Florida Bar No. 613819
AMY C. BROWN
Admitted *Pro Hac Vice*
ALLISON HENRY
Florida Bar No. 1003008
ROBERT KUNTZ
Florida Bar No. 94668

## **CERTIFICATE OF SERVICE**

I certify that on February 24, 2023, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.


By: /s/ Andrés Rivero.
Andrés Rivero