# Exhibit C

|          |    |                                                                              |
|----------|----|------------------------------------------------------------------------------|
| 09:05:55 | 1  | MR BRENNER:  Yeah, can you read out the Bates                                |
| 09:05:57 | 2  | number?                                                                      |
| 09:05:58 | 3  | MS MARKOE:  Sure.  DEF_00009663 through 4.                                   |
|          | 4  | BY MS MARKOE:                                                                |
| 09:06:12 | 5  | Q.  Lynn, do you have that document in front of                              |
| 09:06:14 | 6  | you?                                                                         |
| 09:06:15 | 7  | A.  Yes, I do.  It's - I'm just going over it.                               |
| 09:06:17 | 8  | It's just very small print.                                                  |
| 09:06:19 | 9  | Q.  It is very small print.  I apologize for that.                           |
| 09:06:23 | 10 | If you take a moment and just read over it, you start at                     |
| 09:06:28 | 11 | the bottom and read from the top, because it is an email                     |
| 09:06:31 | 12 | chain.                                                                       |
| 09:06:31 | 13 | A.  Oh, okay.                                                                |
| 09:06:32 | 14 | Q.  And just let me know when you're done.                                   |
| 09:07:28 | 15 | A.  Okay.                                                                    |
| 09:07:37 | 16 | Q.  Ms Wright, before I actually turn to this                                |
| 09:07:39 | 17 | document, I have another quick question for you.  You                        |
| 09:07:44 | 18 | said you're familiar with the company named W&K                              |
| 09:07:50 | 19 | Information Defense Research and you have personal                           |
| 09:07:51 | 20 | knowledge of its formation?                                                  |
| 09:07:52 | 21 | MR ROCHE:  Objection.  Form.                                                 |
|          | 22 | BY MS MARKOE:                                                                |
| 09:08:00 | 23 | Q.  Do you know what the "W" in W&K Information                              |
| 09:08:05 | 24 | Defense Research stood for?                                                  |
| 09:08:06 | 25 | A.  For Wright.                                                              |

```
09:08:10  1        Q.   Okay.  And did that stand for Craig Wright or
09:08:14  2   Lynn Wright?
09:08:16  3        A.   Lynn Wright.
09:08:20  4        Q.   For Lynn Wright?
09:08:20  5        A.   Yes.
09:08:23  6        Q.   And what did the "K" stand for?
09:08:26  7        A.   For Dave Kleiman.
09:08:29  8        Q.   And what did "Information Defense" stand for?
09:08:33  9        A.   That was Craig.
09:08:37 10        Q.   So the company W&K Information Defense Research
09:08:42 11   stood for Lynn Wright, Dave Kleiman and Craig Wright; is
09:08:47 12   that correct?
09:08:47 13        A.   Yes.
09:08:52 14        Q.   Turning back to what has been marked as
09:08:54 15   exhibit 1, does this document refresh your recollection
09:09:01 16   that W&K was formed in or about February of 2011?
09:09:08 17        A.   It doesn't.  I - I - honestly, I don't remember
09:09:12 18   it, seeing it, but that doesn't mean I didn't see it.
09:09:21 19   I - I - I thought that we - I guess it's - it's hard to
09:09:25 20   say for me.  I think we did some work together before
09:09:30 21   that date but they only, I guess, got - got together
09:09:39 22   with - to - to establish on that date.
09:09:45 23        Q.   Do you see in the second part of the email
09:09:49 24   down, from Dave Kleiman to Craig Wright and Lynn Wright,
09:09:55 25   it says:
```

```
09:22:27  1    that was needed, how it would be done, effectively how
09:22:34  2    much it would cost, that sort of thing.
09:22:40  3         Q.   During this time period when W&K was preparing
09:22:45  4    these tenders, through Craig preparing them and you
09:22:49  5    editing them and Dave submitting them, were you and Craig
09:22:54  6    submitting tenders in other places and through other
09:22:59  7    companies?
09:23:01  8         A.   No, not that I'm - I - not that I worked on,
09:23:04  9    no, and being the administration person, I think I would
09:23:14 10    have known that anything was done.  But the two big ones
09:23:17 11    were the two with Homeland Security, and that was all
09:23:22 12    that I'm aware of.
09:23:27 13         Q.   Are you aware whether or not the tenders were
09:23:30 14    accepted by the Department of Homeland Security?
09:23:33 15         A.   It took a long time.  We never heard back, and
09:23:38 16    we could - we tried and tried and tried to get in touch
09:23:41 17    with Dave, and he was not responding to phone messages
09:23:50 18    and - or to emails that I'm aware of, because at that
09:23:53 19    point he was very sick and he was in hospital.  But he
09:23:57 20    didn't let anybody know.  So to be - we don't know if the
09:24:02 21    tender was even submitted on his part.  But we never
09:24:07 22    heard anything back from - from them.
09:24:17 23         Q.   So - pardon me.  Excuse me a moment.  Lynn,
09:24:26 24    I want to sort of shift gears for a quick second.  What
09:24:29 25    is your academic background and professional background?
```

```
09:28:40  1         A.   No, I - I don't know why.  I mean, you know,
09:28:43  2    I could suppose things, but that's - that's not what
09:28:46  3    should be done.  I - I don't know why he - he didn't
09:28:51  4    respond, other than he was - we had heard that he was
09:28:55  5    very ill.
09:28:59  6         Q.   All right.  How did you hear he was very ill,
09:29:10  7    if you recall?
09:29:11  8         A.   I don't recall.  I know - it was Craig that
09:29:14  9    told me, and it may be that - it may have been that he
09:29:19 10    got in touch with Craig.  I don't know.
09:29:31 11         Q.   Are you aware of any assets, IP, or anything of
09:29:35 12    value that W&K ever had?
09:29:38 13         A.   No.
09:29:45 14         Q.   Are you a shareholder in W&K?
09:29:48 15         A.   Yes.
09:29:51 16         Q.   Do you know how you became a shareholder in
09:29:54 17    W&K?
09:29:56 18         A.   When I - when the - the company was originally
09:29:59 19    set up, I think it was just divided between the three of
09:30:04 20    us, I guess.
09:30:09 21         Q.   I'm going to have the folks at Piper hand you
09:30:16 22    what I call tab 17.  It is - for the benefit of the
09:30:22 23    plaintiffs' counsel, it is DEFAUS_01518187 and through
09:30:38 24    188.  I'm going to have this marked as exhibit 3, please
09:30:42 25         (Exhibit 3 marked for identification)
```

```
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE SOUTHERN DISTRICT OF FLORIDA
                           WEST PALM BEACH DIVISION
                        CASE NO. 9:18-cv-80176-BB

   IRA KLEIMAN, as the personal representative
   of the Estate of David Kleiman, and W&K Info
   Defense Research, LLC,

              Plaintiffs,                      November 10, 2021
                                               9:50 a.m.
              vs.

   CRAIG WRIGHT,

              Defendant.                       Pages 1 THROUGH 122
   _____
                         TRANSCRIPT OF TRIAL DAY 8
                    BEFORE THE HONORABLE BETH BLOOM
                       UNITED STATES DISTRICT JUDGE
                             And a Jury of 10

   Appearances:
   FOR THE PLAINTIFF:   ROCHE FREEDMAN, LLP
                        DEVIN FREEDMAN, ESQ.
                        KYLE ROCHE, ESQ.
                        200 South Biscayne, Suite 5500
                        Miami, Florida 33131

                        BOIES SCHILLER & FLEXNER
                        ANDREW BRENNER, ESQ.
                        STEPHEN N. ZACK, ESQ.
                        100 Southeast 2nd Street, Suite 2800
                        Miami, Florida 33131

   FOR THE DEFENDANT:   RIVERO MESTRE, LLP
                        ANDRES RIVERO, ESQ.
                        JORGE MESTRE, ESQ.
                        AMANDA M. MCGOVERN, ESQ.
                        ZALMAN KASS, ESQ.
                        MICHAEL A. FERNANDEZ, ESQ.
                        2525 Ponce de Leon Boulevard, Suite 1000
                        Coral Gables, Florida 33134

   COURT REPORTER:      Yvette Hernandez
                        U.S. District Court
                        400 North Miami Avenue, Room 10-2
                        Miami, Florida 33128
                        yvette_hernandez@flsd.uscourts.gov
```

1      Do you see that?
2   A.  I do.
3   Q.  That wasn't true, was it, Dr. Wright?
4   A.  No.  It was completely true.  But I actually tried to give
5   the shares to them.  So I guess you could say I tried to give
6   them something that was valuable.
7   Q.  Dr. Wright, isn't it true the reason you reached out to
8   Louis Kleiman was because you needed help responding to answers
9   to the Australian Tax Office about W&K, which you knew Dave
10  Kleiman's estate controlled?
11  A.  Number one, Dave Kleiman's estate never controlled W&K.
12  Dave Kleiman was not the person behind it.  He didn't fund it.
13  He didn't put it in.  The operating agreement, I don't have a
14  copy of.  Lynn would.  Lynn was nominally in charge of the
15  company, my ex-wife.
16     So no, Dave Kleiman never controlled it.  He was just the
17  American person who needed to be there because I needed someone
18  who was an American, a vet, because otherwise I didn't get to
19  file those things.
20  Q.  Dr. Wright, you finished the email saying:  "When I can, I
21  will let you know much more of Dave.  I will also help you
22  recover what Dave owned."
23     Do you see that?
24  A.  Yes.  Dave owned shares in that company, Coin-Exch.
25  Q.  Dr. Wright, isn't it true that you had no real intention of

Zachary Eisner
January 09, 2020

```
 1                UNITED STATES DISTRICT COURT

 2                SOUTHERN DISTRICT OF FLORIDA

 3                 CASE NO. 9:18-cv-80176-BB/BR

 4
     IRA KLEIMAN, as the personal representative
 5   of the Estate of David Kleiman, and
     W&K Info Defense Research, LLC,
 6
              Plaintiffs,
 7
     -vs-
 8
     CRAIG WRIGHT,
 9
              Defendant.
10

11   * * * * * * * * * * * * * * * * * *

12   VIDEOTAPED DEPOSITION OF ZACHARY EISNER

13   DATE TAKEN: January 9, 2020

14   TIME: 10:05 a.m. - 3:27 p.m.

15   PLACE: 2525 Ponce de Leon Boulevard

16   Miami, Florida 33134

17
     TAKEN BEFORE: RICK E. LEVY, RPR, FPR
18                 AND NOTARY PUBLIC

19

20   * * * * * * * * * * * * * * * * * *

21

22

23

24

25
```

```
 1   BY MR. PASCHAL:
 2       Q.   I left off with you said plaintiffs contacted
 3   you?
 4       A.   Yes.
 5       Q.   Who from plaintiffs contacted you?
 6       A.   Mr. Freedman.
 7       Q.   Did anyone else contact you?
 8       A.   No.
 9       Q.   How did he contact you?
10       A.   Phone.
11       Q.   Did he ever e-mail you?
12       A.   Possibly.
13       Q.   How long was the conversation on the phone?
14       A.   I know him from before so two minutes.  We
15   went out to lunch and he told me what he needed me for.
16       Q.   How did you you know Mr. Freedman from before?
17       A.   We're both on like a group chat, Jewish
18   lawyers chat.  Pretty much that.
19       Q.   How long did you know Mr. Freedman for?
20       A.   Close to a year.
21       Q.   What's your profession?
22       A.   I'm a lawyer.
23       Q.   Have you been deposed before?
24       A.   No.
25       Q.   Have you taken a deposition before?
```

1            MR. ROCHE:  Objection, mischaracterizes the
2       document.
3    BY MR. PASCHAL:
4       Q.   Do you see that?
5       A.   Yes.
6       Q.   Then Craig writes to Dave Kleiman and Lynn
7    Wright and he says Lynn, question mark.
8       A.   Yes, I see that.
9       Q.   What does Dave Kleiman say after that?
10      A.   Wright Kleiman Information Security dot, dot,
11   dot W&K Info Defense dot, dot, dot.
12      Q.   That is what one day before the Articles of
13   Incorporation are filed?
14      A.   Yes.
15      Q.   Then Lynn Wright says "either or, you choose."
16      A.   Yes.
17      Q.   Do you take that as they're letting Lynn
18   Wright choose the name of the company?
19      A.   Yes.
20      Q.   Then Craig responds and he says W&K Info
21   Defense Research.
22      A.   Yes.
23           (Defendant's Exhibit No. 8 was
24           marked for identification.)
25

```
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE SOUTHERN DISTRICT OF FLORIDA
                          WEST PALM BEACH DIVISION
                        CASE NO. 9:18-cv-80176-BB

IRA KLEIMAN, as the personal representative
of the Estate of David Kleiman, and W&K Info
Defense Research, LLC,

         Plaintiffs,                         November 5, 2021
                                             9:58 a.m.
         vs.

CRAIG WRIGHT,

         Defendant.                          Pages 1 THROUGH 182
_____
                      TRANSCRIPT OF TRIAL DAY 5
                  BEFORE THE HONORABLE BETH BLOOM
                    UNITED STATES DISTRICT JUDGE
                         And a Jury of 10
Appearances:
FOR THE PLAINTIFF:   ROCHE FREEDMAN, LLP
                     DEVIN FREEDMAN, ESQ.
                     KYLE ROCHE, ESQ.
                     200 South Biscayne, Suite 5500
                     Miami, Florida 33131

                     BOIES SCHILLER & FLEXNER
                     ANDREW BRENNER, ESQ.
                     STEPHEN N. ZACK, ESQ.
                     SAMANTHA LICATA, ESQ.
                     100 Southeast 2nd Street, Suite 2800
                     Miami, Florida 33131

FOR THE DEFENDANT:   RIVERO MESTRE, LLP
                     ANDRES RIVERO, ESQ.
                     JORGE MESTRE, ESQ.
                     AMANDA M. MCGOVERN, ESQ.
                     MICHAEL A. FERNANDEZ, ESQ.
                     ZALMAN KASS, ESQ.
                     2525 Ponce de Leon Boulevard, Suite 1000
                     Coral Gables, Florida 33134

COURT REPORTER:      Yvette Hernandez
                     U.S. District Court
                     400 North Miami Avenue, Room 10-2
                     Miami, Florida 33128
                     yvette_hernandez@flsd.uscourts.gov
```

```
 1    every scrap of paper they wanted to, you're saying orally Craig
 2    Wright said that to you.  Is that your testimony?
 3    A.   No.  He emailed it to me.
 4    Q.   You're saying that we've seen an email where Craig Wright
 5    said there was a division 50/50 on the invention and mining of
 6    Bitcoin?
 7    A.   That they were 50/50 partners in W&K.
 8    Q.   Mr. Kleiman, I want to make sure I understand what you're
 9    saying.  Are you telling the jury that we have seen a document
10    today like that?
11    A.   You may not have seen it today.  But I believe that I have
12    possession of emails such as that.
13    Q.   Okay, sir.  You believe you have in your possession an
14    email where Dr. Craig Wright says there was a 50/50 deal.
15    That's what you're saying?
16    A.   Something similar.  I don't remember the exact details,
17    but --
18    Q.   Can you bring that to this courtroom tomorrow morning?
19              MR. BRENNER:  Your Honor -- Your Honor, the witness
20    must be allowed to finish his answer.
21              THE COURT:  Let the witness finish his answer, please.
22              Have you concluded your answer, Mr. Kleiman?
23              THE WITNESS:  Yes.  I believe that I have seen email
24    communications where there was a division of assets that they
25    owned in W&K.
```