UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC,

    plaintiffs,
v.                                              Case No. 9:18-cv-80176 (BB/BR)

CRAIG WRIGHT.
_____/

# REPLY MEMORANDUM OF LAW IN SUPPORT OF
# MOTION TO DISQUALIFY ROCHE FREEDMAN

    Dr. Craig Wright submits this memorandum of law in response to the Limited Opposition to Motion to Disqualify (the "Opposition") [DE 930] filed by Roche Freedman LLP, n/k/a/ Freedman Normand Friedland LLP ("Roche Freedman" or "RF"), purportedly on behalf of W&K Info Defense Research, LLC ("W&K"), and in further support of his motion to disqualify Roche Freedman.

## PRELIMINARY STATEMENT

    Utterly desperate to avoid consideration of Dr. Wright's motion to disqualify on its merits, Roche Freedman argues that the Eleventh Circuit's denial of a disqualification motion late last year robs this Court of the authority to hear the motion pending before it under the "law of the case" doctrine. Roche Freedman is wrong.

    To begin with, the Eleventh Circuit's decision is not binding upon W&K because W&K is not a party to the Eleventh Circuit appeal. The Estate is the party that appealed the judgment in favor of Dr. Wright; W&K (unsurprisingly) did not appeal the judgment in its favor. As a non-

1

party to the appeal, the Eleventh Circuit's decision denying the disqualification motion is not binding on W&K as law of the case.

Even if the law of the case doctrine were applicable (and it isn't), Roche Freedman's argument would fail. It is true that the motions to disqualify Roche Freedman in the Eleventh Circuit and in this Court both arise from the clear conflict of interest to which founding RF partner, Kyle Roche, confessed on video, as reported by Crypto Leaks on August 27, 2022. It is also true that the Eleventh Circuit denied Dr. Wright's motion to disqualify Roche Freedman based on an affidavit from Velvel Freedman (the "Freedman Affidavit"), who claimed that Ira Kleiman was "informed" of the conflict and provided consent, "confirmed in writing," to Roche Freedman's continued representation of his brother's estate. In fact, the Eleventh Circuit's denial of the motion to disqualify was based *entirely* on the representations made by Freedman Affidavit in the sworn statement, which notably did not attach the written consent it referenced.

But after the Eleventh Circuit ruled as it did based on Freedman's assurance that all was as it should be between Ira Kleiman and his lawyers, on January 26, 2023, Ira Kleiman personally filed a six-page document with this Court that demonstrates all is not well, and that calls into serious question the veracity of the Freedman Affidavit. [DE 918.] In that document, Ira Kleiman castigated his attorneys at Roche Freedman (and Boies Schiller) for, among other things, doing nothing to enforce the judgment the jury awarded to W&K until only very recently, despite his repeated requests that they push for Dr. Wright's completion of form 1.977, a financial affidavit which a judgment creditor can obtain upon order of the court. Ira Kleiman outlined multiple ways in which his attorneys at Roche Freedman (and Boies Schiller) have refused to do what he has asked of them, for reasons he does not understand. Now, there appears to have been but one, obvious reason for Roche Freedman's reticence: Roche Freedman was

reluctant to take any action that might cause this Court to peek behind the curtain, uncover the sordid details underlying Kyle Roche's outrageous statements, and expose the firm's relationship with Ava Labs and its principals. Given this new evidence and change in circumstances, the law of the case doctrine does not apply—if it ever would have—and Roche Freedman cannot hide behind it to protect itself from the factual inquiry it has been dreading—and trying frantically to stave off—for the last six months.

The Eleventh Circuit is not a fact-finding body. It did not have the benefit of Ira Kleiman's exposé and, consequently, lacked insight into the neglect Mr. Kleiman apparently has suffered at the hands of Roche Freedman when ruling on Dr. Wright's motion to disqualify. Without that insight, the Eleventh Circuit trusted and relied on the bald representations of Mr. Freedman, as a member of its bar, that Roche Freedman had informed Ira Kleiman of the conflict of interest revealed by Kyle Roche and that Ira Kleiman waived that conflict in writing. That trust was, perhaps, reasonable at the time.

Things are different now, though. The first-hand complaint Ira Kleiman filed with this Court cannot be undone or ignored. With Ira Kleiman's revelations made public, the Freedman Affidavit ought not be afforded the deference given to it by the Eleventh Circuit, and Dr. Wright's motion to disqualify cannot be denied based upon the Freedman Affidavit alone. It is high time, as one judge who disqualified Roche Freeman put it, to get to the bottom of these events. It is high time to fill what another judge faced with this scandal called the evidentiary vacuum. It is high time for Roche Freedman to come clean about, and accept responsibility for, how its relationship with Ava Labs and its principals influenced how it has litigated its cases, including this case against Dr. Wright—who, in Kyle Roche's own words, is the "arch-nemesis"

3

of Ava Labs' CEO. Simply put, the motion to disqualify cannot and should not be summarily denied.

## RELEVANT FACTS

**The Many Motions to Disqualify Roche Freedman**

The scandalous video recordings of Kyle Roche made their way onto the Internet on August 27, 2022.[1] Days later, on September 6, 2022, Dr. Wright filed a motion to disqualify Roche Freedman in the Eleventh Circuit. [DE 930-1.].[2] Simultaneously, litigants across the country moved to disqualify Roche Freedman, including the defendants *In re Tether and Bitfinex Crypto Asset Litigation*, 19 Civ. 9236 (S.D.N.Y.) (KPF) (the "*Tether* Action"). At a hearing on motions to terminate Roche Freedman as class counsel in the *Tether* Action, Judge Failla characterized Roche's statements as "uniquely stupid." In her order granting those motions, Judge Failla called the statements "coherent and logical and too detailed" to "dismiss out of hand" and further noted that, if true, "it would actually surprise [her] if such an ethos were limited to Mr. Roche alone." Judge Failla made clear that no one has "yet gotten to the bottom" of all the facts underlying the Roche Freedman affair and criticized the firm's failure to take the allegations seriously. *See* Transcript of *Tether* hearing, DE 900-1 at 11, quoting Judge Failla as stating, "[T]he degree to which the Roche Freedman firm has attempted to minimize Mr. Roche's statements gives me concern that they don't appreciate the seriousness of those statements, and I've already explained the dim view with which I hold the firm's arguments in mitigation." *See also id*. at 20, 22: "It is too easy to say that Mr. Roche was drunk and stupid.… Roche Freedman

---

[1] The details of the recordings are set out in detail in Dr. Wright's motion to disqualify Roche Freedman. [DE 900.]

2

4

has offered a number of arguments seeking to mitigate or contextualize these statements, but largely they do not succeed."

Particularly relevant here was Judge Failla's refusal to dismiss the potential impact of Roche's conduct based on representations made by Roche Freedman in a short affidavit. She stated: "[T]hese disclosures are evolving. They clearly extend beyond this case. I have only limited visibility into these issues, and I will not make findings about what Mr. Roche did or did not do or meant or did not mean based on a two-and-a-half page declaration without a more extensive investigation."[3] [DE 900-1 at 10-11.]

Most recently, Judge James Donato, who is presiding over a class action captioned *Daniel Valenti v. Dfinity USA Research LLC* (No. 3:21-cv-06118) in the Northern District of California, echoed the sentiments conveyed by Judge Failla in the *Tether* action and ordered Roche Freedman to sit for a deposition on the issue of Roche Freedman's ties to Ava Labs. Judge Donato stated, "I'm not going to buy this idea that [Kyle Roche] was duped, drunk and talkative." [DE 929-3.] Discovery was necessary because that court, like this one, could not be left "operating in an evidentiary vacuum." *Id*.

**The Eleventh Circuit's Order**

On November 8, 2022, the Eleventh Circuit issued an order holding Dr. Wright's motion to disqualify Roche Freedman in abeyance pending receipt of a declaration informing the Court, among other things, as to whether Ira Kleiman had been informed of the conflict of interest set

---

[3] The Freedman Affidavit, asserting that all was in order with the client who, weeks later, regaled this court with a filing describing his relationship with his lawyers as "the crazy train," was six pages long.

forth in Dr. Wright's motion and whether the requirements of Rule 1.7(b) of the ABA Model Rules of Professional Conduct were satisfied. [DE 930-3.][4]

On November 22, 2022, Roche Freedman submitted the Freedman Affidavit in response to the Eleventh Circuit's November 8, 2022, Order. Freedman represented, under penalties of perjury, that Roche Freedman had satisfied the requirements of ABA Model Rule 1.7(b) by informing Ira Kleiman of the conflict and obtaining his informed consent, "confirmed in writing," to continued representation by Roche Freedman. [DE 930-5.] The Freedman Affidavit did not attach the written confirmation.[5]

On November 28, 2022, after Rivero Mestre received communications from Roche Freedman indicating that it intended to file on behalf of W&K a motion to compel Dr. Wright to complete a form 1.977 financial disclosure, Dr. Wright moved to disqualify Roche Freedman—which had been more or less radio silent in this matter for the preceding 10 months—in this Court.[6] [DE 900.] On November 29, 2022, the Court denied Dr. Wright's motion without prejudice on the theory that it lacked jurisdiction over the motion because of the pending Eleventh Circuit appeal. [DE 901.]

---

[4] Rule 1.7(b) of the ABA Model Rules of Professional Conduct provides that a lawyer may continue to represent a current client despite a conflict of interest if: (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing. ABA Model R. Prof. Conduct 1.7(b).

[5] On or around February 6, 2023, Dr. Wright served on Roche Freedman discovery requests seeking, among other things, the written consent referenced in the Freedman Affidavit.

[6] Dr. Wright did not file the motion to disqualify at the same time that he filed the motion in the Eleventh Circuit because the case there were no matters pending before the Court. Once Dr. Wright learned that Roche Freedman intended to move the Court to compel completion of form 1.977, he filed the motion to disqualify here.

On December 29, 2022, the Eleventh Circuit denied Dr. Wright's motion to disqualify Roche Freedman "[u]pon consideration of the affidavit of attorney Devin (Velvel) Freedman attesting that the requirements of Rule 1.7(b) of the ABA Model Rules of Professional Conduct are satisfied." [DE 930-5.][7] The Eleventh Circuit articulated no other reason for its decision apart from the representations made in the Freedman Affidavit, and conducted no fact finding.

**The Pending Motion to Disqualify Before This Court**

On January 6, 2023, Roche Freedman filed the promised motion to compel, purportedly on behalf of W&K, arguing that the Court retained jurisdiction to compel completion of the form 1.977 in aid of W&K's collection efforts. [DE 903.] Accordingly, Dr. Wright renewed his motion to disqualify Roche Freedman, as W&K had conceded the Court had the jurisdiction the Court had previously posited that it lacked. [DE 904.] The Court then referred the motion to Magistrate Reinhart for consideration. [DE 909.] Judge Reinhart scheduled a status conference for January 27, 2023. [DE 914.]

On the afternoon of January 26, 2023, just before the scheduled status conference, Ira Kleiman decided he had to be heard. He went to the Clerk's Office of this Court to file *in person* a document entitled, "Notice of Filing Documents for Courts [sic] Review," in which he asked Magistrate Reinhart to consider additional information "before the hearing you will have with my attorneys to discuss their representation." [DE 918 at 1.] In the document, Ira Kleiman detailed a bill of particulars against his lawyers for multiple failings before, during and after trial. Most striking were Ira Kleiman's complaints about his attorneys' neglect *after* trial—i.e., their

---

[7] The Eleventh Circuit dismissed Dr. Wright's motion to disqualify Kyle Roche as moot because he was not admitted to practice in the Eleventh Circuit and, accordingly, had not appeared in the appeal. The same is obviously not true here, where Roche was lead trial counsel in a years-long litigation against Dr. Wright and only withdrew in the last January, after Dr. Wright's motion to disqualify. He is subject to this Court's jurisdiction pursuant to Local Rule 11.1

7

failure to take any steps, until only recently, to collect the W&K judgment. In the closing paragraph of his filing, he stated:

> If all the above behavior wasn't bizarre enough, the crazy train kept chugging along even after receiving a favorable verdict for W&K. The co-founder of Roche Freedman then sabotaged this one positive with his "uniquely stupid" statements about the case. At this point, I honestly don't believe they want to recover the W&K judgment otherwise I wouldn't have had to pressure them into requesting the form 1.977. There is no reason to allow a year to go by before taking such simple collection efforts.

(*Id*. at 6.)

Though perhaps unknown to Ira Kleiman at the time he made his filing, the reason for Roche Freedman's delay is clear: the Court had denied the motion to disqualify for lack of jurisdiction, and any invocation of the Court's jurisdiction to aid in judgment collection efforts (such as DE 903, the motion to compel form 1.977) would likely resurrect a motion the lawyers were desperate to keep from the Court's attention. That is precisely what happened and why the parties are now before this Court on Dr. Wright's meritorious motion for disqualification.

## ARGUMENT

### I. THE LAW OF THE CASE DOCTRINE DOES NOT PROHIBIT ROCHE FREEDMAN'S DISQUALIFICATION BY THIS COURT

"The application of the law-of-the-case doctrine is discretionary, as the doctrine is a matter of practice, and not a limit on the Court's power." *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 2016 WL 4154912, at *3 (S.D. Fla. May 24, 2016). The doctrine does not apply to non-parties who have not appeared in the appellate court whose decision is argued to be binding. *Stevens v. Danek Med., Inc.*, 1999 WL 33217282, at *7 (S.D. Fla. Apr. 16, 1999); *see also United States v. Maybusher*, 735 F.2d 366, 370 (9th Cir. 1984) (law of the case doctrine did not apply to bind defendant who was not party to the appellate proceeding). W&K is not a party to

the pending Eleventh Circuit appeal and, as a result, the decision denying Dr. Wright's motion to disqualify is not binding here.[8]

Even assuming the doctrine's applicability, it only bars consideration of "those legal issues that were actually, or by necessary implication, decided in the former proceeding." *Newman v. Ormond*, 456 F. App'x 866, 867 (11th Cir. 2012) (quoting *Oladeinde v. City of Birmingham,* 230 F.3d 1275, 1288 (11th Cir. 2000)). In addition, "exceptions to this doctrine apply when substantially different evidence is produced, when there has been a change in controlling authority, or when the prior decision was clearly erroneous and would result in manifest injustice." *Oladeinde*, 230 F.3d 1275 at 1288 (quoting *Jackson v. Ala. State Tenure Com'n,* 405 F.3d 1276, 1283 (11th Cir. 2005)).

As to the first exception, the Eleventh Circuit has explained*:*

> When the record changes, which is to say when the evidence and the inferences that may be drawn from it change, the issue presented changes as well. The first exception to the doctrine recognizes that the law of the case is the law made on a given set of facts, not law yet to be made on different facts.

*Jackson v. State of Alabama State Tenure Commission*, 405 F.3d 1276, 1283 (11th Cir. 2005) (reversal of award of summary judgment on appeal was not law of the case on subsequent appeal of decision awarding summary judgment where court had "limited evidence" before it at time of first appeal, but now had "new evidence" in the record that warranted summary judgment). *See also Newman*, 456 F. App'x 866 at 867 (new evidence attached to second summary judgment

---

[8] The cases cited by Roche Freedman do not hold otherwise. (Opposition at 5.) In each of those cases, the court concluded that an appellate decision on an issue relating to one defendant should be binding *in a subsequent appeal* by the co-defendant. *See United States v. Siegelman*, 786 F.3d 1322, 1327 (11th Cir. 2015) (noting that law-of-the-case doctrine "applies to those issues decided on a co-defendant's earlier but closely related appeal"); *United States v. Montoya*, 847 F. App'x 813, 814 (11th Cir. 2021) (appellate decision applied to issue raised by co-defendant in subsequent appeal).

9

motion provided exception to law of the case doctrine, such that the district court did not violate doctrine in granting summary judgment based on new record before it); *Silva v. Baptist Health S. Fla., Inc.*, 838 F. App'x 376, 382-83 (11th Cir. 2020) ("Law of the case does not apply in this situation because the district court based its standing decision on a different record than did this Court when addressing the propriety of summary judgment.").

Ira Kleiman's "notice" excoriating his attorneys at Roche Freedman for their inaction post-judgment—and post-scandal—plainly constitutes "substantially different evidence" than that before the Eleventh Circuit and, consequently, renders the law of the case doctrine inapplicable. *Oladeinde*, 230 F.3d 1275 at 1288. His statements are admissions of a party-opponent that, if they don't directly contradict, at least call into grave doubt the representations made in the Freedman Affidavit that, in November 2022—when, as Ira Kleiman put it, "the crazy train kept chugging"—he consented to Roche Freedman's continued representation and gave properly informed consent to waive the conflicts implicated by recent revelations. [DE 918-1 at 6.]

On February 6, 2023, Dr. Wright served Roche Freedman with a subpoena requesting, among other things, a copy of the confirmation in writing referenced in the Freedman Affidavit and allegedly provided by Ira Kleiman. As of today, Roche Freedman has not provided it. Even assuming its existence, Ira Kleiman's later damning criticism of his lawyers—which he felt so important to bring to the Court's attention that he filed in hard copy, by hand delivery to the court, and on his own—indicates that he is not satisfied with Roche Freedman's representation, particularly in the wake of the scandal that has irreparably tarnished the reputation of the firm.

The law of the case doctrine does not apply on these new facts. And summary denial of Dr. Wright's disqualification motion is, for that reason, unwarranted.

## II.   THE MOTION FOR DISQUALIFICATION CANNOT BE SUMMARILY RESOLVED

Not only is denial of the motion to disqualify unjustified, but discovery on the motion is necessary. When the parties dispute material facts—as is the case here—trial courts are required to conduct an evidentiary hearing to resolve that dispute and assess whether disqualification is appropriate. *State Farm Mut. Auto. Ins. Co. v. Kugler*, 2012 WL 12868733, at *4 (S.D. Fla. June 11, 2012)*; Alpert v. Taylor*, 2010 WL 11507807, at *2 (M.D. Fla. Jan. 14, 2010) (ordering evidentiary hearing where there was a material dispute as to whether attorney conflict existed); *In re Finao Corp.*, 2005 WL 419704, at *4 (Bankr. M.D. Fla. Jan. 26, 2005) (finding that evidentiary hearing was necessary to resolve a disqualification motion where matters could not be resolved "on the basis of the statements and proffers by the parties' attorneys"); *Est. of Jones ex rel. Gay v. Beverly Health & Rehab. Servs., Inc.*, 68 F. Supp. 2d 1304, 1306 (N.D. Fla. 1999) ("an evidentiary hearing was necessary in order to make a further inquiry regarding the allegations supporting the request for disqualification"); *see also Sutton v. Seaman*, 2014 WL 12861090, at *1 (S.D. Fla. Mar. 31, 2014) (granting motion to disqualify following evidentiary hearing); *Schatt v. Aventura Limousine & Transportation Serv., Inc.*, at *1 (S.D. Fla. June 21, 2012) (same); *Harte Biltmore Ltd. v. First Pennsylvania Bank, N.A.*, 655 F. Supp. 419, 420 (S.D. Fla. 1987) (same).

Here, Roche Freedman argues that the "evidence" of Ira Kleiman's informed consent to Roche Freedman's continued representation submitted to the Eleventh Circuit demonstrates that Ira Kleiman waived any conflict of interest that exists. (Opposition at 6.) But no one has seen the actual "evidence" of Ira Kleiman's informed consent. And Ira Kleiman's own words call into question whether he gave informed—or any—consent to anything done by Roche Freedman

following the scandal that he views as having "sabotaged" his ability to collect the W&K judgment.

Ira Kleiman's "consent" aside, there is a great need for discovery on the issue of whether and how Roche Freedman's relationship with Ava Labs affected this litigation against Dr. Wright, whom Kyle Roche called the "arch-nemesis" of Ava Lab's CEO. Dr. Wright is entitled to know whether Ira Kleiman unilaterally reactivated W&K months *after* this litigation began, at the behest of Roche Freedman, perhaps to further the interests of Ava Labs. These are but some of the questions that Roche Freedman should be required to answer. An evidentiary hearing is therefore necessary to "get to the bottom" of the issue, as Judge Failla aptly put it in the *Tether* Action.

## CONCLUSION

For the reasons stated here, Dr. Wright's motion to disqualify Roche Freedman should not be summarily denied, and the Court should order discovery and an evidentiary hearing on the issues raised by the motion.

Respectfully submitted,

RIVERO MESTRE LLP
2525 Ponce de Leon Boulevard,
Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: abrown@riveromestre.com
Email: ahenry@riveromestre.com
Email: rkuntz@riveromestre.com
Email: receptionist@riveromestre.com
*Counsel for Dr. Craig Wright*

By: s/ Andres Rivero
ANDRES RIVERO
Florida Bar No. 613819
AMY C. BROWN
Admitted *Pro Hac Vice*
ALLISON HENRY
Florida Bar No. 1003008
ROBERT KUNTZ
Florida Bar No. 94668

## **CERTIFICATE OF SERVICE**

      I certify that on February 24, 2023, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

                                             By: /s/ Andrés Rivero.
                                                  Andrés Rivero