UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC

    Plaintiffs,

v.                                                   Case No. 9:18-cv-80176 (BB/BR)

CRAIG WRIGHT,

    Defendant.
_____/

## DR. WRIGHT'S REPLY IN FURTHER SUPPORT OF HIS MOTION TO DISQUALIFY BOIES SCHILLER FLEXNER LLP

Dr. Craig Wright submits this memorandum in reply to Boies Schiller & Flexner LLP's ("Boies Schiller") opposition [DE 934] to Dr. Wright's motion to disqualify Boies Schiller as counsel for W&K Info Defense Research, LLC ("W&K") [DE 929], and in further support of that motion.

### PRELIMINARY STATEMENT

Boies Schiller relies on procedural arguments, name-calling, and incorrect assumptions about Dr. Wright's motives to try to stave off disqualification. None of it works.

Boies Schiller is incorrect when it says that a motion to disqualify by opposing counsel must be either made under oath or supported by an affidavit. It is wrong in its argument that Dr. Wright—whom Kyle Roche bragged about "taking down" on video—lacks standing under Article III to bring the motion. And it would have this Court ignore the import of Ira Kleiman's admissions—as to both the Estate's non-controlling ownership interest in W&K and his utter neglect at the hands of his attorneys—in considering this motion. But this fact remains: Ira

1

Kleiman does not (and never has had) the unilateral authority to control W&K and its legal representation. That he has been acting like he has that authority for the last five years doesn't mean anything: a lie does not become the truth, however often, widely or long it is told. And Ira Kleiman has admitted that his representation by both Roche Freedman and Boies Schiller has suffered as a result of the clear conflict of interest to which Kyle Roche confessed. As Roche Freedman's co-counsel in all aspects of this case, and having been fired by the real majority members of W&K, Boies Schiller should be disqualified.

## ARGUMENT

### I. THE MOTION TO DISQUALIFY IS NOT PROCEDURALLY DEFICIENT

Boies Schiller wants the court to reject Dr. Wright's motion "out of hand" because it is procedurally deficient for failing to include a sworn affidavit. (Opposition at 2). But it isn't.

There is no requirement that a party submit an affidavit in support of a motion to disqualify, or otherwise make the motion under oath. That requirement applies to motions to disqualify *judges* on the basis of bias or prejudice against one party in favor of another. *See* 28 U.S.C § 144[1]; *Knezevich v. Ptomey*, 761 F. App'x 904, 908 (11th Cir. 2019) (denying motion to recuse judge for failure to comply with requirements of statute).

The authorities cited by Boies Schiller do not hold otherwise. (Opposition at 2.) Section 372 of Florida Jurisprudence (Second) addresses when a conflict may be imputed to a law firm when non-legal personnel (such as a secretary or paralegal) move from one firm to another.

---

[1] "Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding…. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith."

Neither the word "oath" nor "affidavit" even appears in Section 372. Likewise, the court in *Stopa v. Cannon*, 330 So.3d 1033, 1035-36 (Fla. 2d DCA 1986), relied upon by Boies Schiller, makes no mention of any affidavit or oath required to support a motion to disqualify.

The only case Boies Schiller cites that arguably supports its position (but still falls short) is *Dawson v. Bram*, 491 So.2d 1275 (Fla. 2d DCA 1986). There, the defendant, a current member of a condominium's board of directors, filed an unsworn *pro se* motion to disqualify counsel for the former members of the board. *Id*. After hearing argument on the motion, during which plaintiffs' counsel argued there was no basis for the motion, the lower court granted the motion to disqualify without allowing plaintiffs' counsel to present any evidence. *Id*. at 1276. Citing two cases from "half a century ago,"[2] the appellate court reversed, finding that the defendant should have submitted an affidavit to support his motion and the plaintiffs should have had the opportunity to submit a counter-affidavit. *Id*. But neither of those cases held that client affidavits were a necessary *precursor* to a motion to disqualify. *See Sears Roebuck & Co. v. Stansbury*, 374 So.2d 1357 (Fla. 5th DCA 1980); *Holland v. Tenebaum*, 360 So.2d 493 (Fla. 4th DCA 1978). Rather, both cases stand for the unremarkable proposition that, when there is conflicting evidence as to whether disqualification is appropriate, a court cannot grant the motion without holding an evidentiary hearing to resolve the conflict. *Sears Roebuck*, 374 So.2d at 1053-54; *Holland*, 360 So.2d at 493.[3] As it happens, Dr. Wright is and has been seeking just such

---

[2] Boies Schiller criticizes Dr. Wright for citing cases "from a half century ago," even though it does the same. (Opposition at 3.) And the criticism is silly, given that seminal cases from much longer ago remain good law and are routinely relied upon. *See, e.g., International Shoe Co. v. State of Washington*, 326 U.S. 310 (1945).

[3] Further, none of the seven cases that cite *Dawson* cite it for the proposition that a motion to disqualify is procedurally deficient absent supporting affidavits. *See State Farm Mut. Auto. Ins. Co. v. Kugler*, 2012 WL 12868733, at *4 (S.D. Fla. June 11, 2012) (citing *Dawson* for proposition that it was "error to *grant* unsworn motion to disqualify without first requiring proof of the allegations and then permitting opponent to present opposing evidence, if any") (emphasis

an evidentiary inquiry to fill what one judge dealing with the wreckage left by Kyle Roche's bombshells called an "evidentiary vacuum."

In short, there is no procedural requirement that a motion to disqualify must be supported by an affidavit or be made under oath, and Boies Schiller cannot invent one.

## II. DR. WRIGHT HAS STANDING TO BRING THE MOTION TO DISQUALIFY

### A. Dr. Wright Has Standing Under Article III

As to its argument that Dr. Wright lacks standing under Article III, Boies Schiller is wrong again.

Kyle Roche admitted *on video* that he and his firm were in bed with Ava Labs—another client in which several partners at Roche Freedman had a financial interest—and used lawsuits against other clients to advance Ava Labs' interests. Roche mentioned Dr. Wright *by name* on the video: "***I took down one of [Ava Labs'] biggest arch-nemeses. The guy who claimed to be Satoshi, Craig Wright***."[4] That is a very specific, extraordinary admission of a conflict of interest.

---

added); *Hicks v. Home Shopping Network, Inc.*, 862 So. 2d 905, 906 (Fla. Dist. Ct. App. 2003) (quoting *Dawson* as holding that, if affidavits submitted by parties dispute facts underlying disqualification motion, court must hold evidentiary hearing before deciding motion to disqualify); *Vick v. Bailey*, 777 So. 2d 1005, 1007 (Fla. Dist. Ct. App. 2000) (under *Dawson*, purpose of evidentiary hearing is to determine whether one party has unfair advantage over the other that can only be eliminated by removing the attorney); *Sch. Bd. of Broward Cnty. v. Polera Bldg. Corp.*, 722 So. 2d 971, 974 (Fla. Dist. Ct. App. 1999) (trial court erred in deciding disqualification motions without evidentiary hearing where parties submitted conflicting affidavits); *City of Apopka v. All Corners, Inc.*, 701 So. 2d 641, 643 (Fla. Dist. Ct. App. 1997) (court should conduct evidentiary hearing to determine whether one party has obtained an unfair advantage over the other which can only be alleviated by removal of the attorney); *Kusch v. Ballard*, 645 So. 2d 1035, 1040 (Fla. Dist. Ct. App. 1994) (concurring opinion citing *Dawson* for proposition that disqualification is harsh remedy that should be used sparingly and based on legal or ethical violation resulting in unfair advantage; *Esquire Care, Inc. v. Maguire,* 532 So. 2d 740, 741 (Fla. Dist. Ct. App. 1988) (court should conduct evidentiary hearing to determine whether one party has obtained an unfair advantage over the other which can only be alleviated by removal of the attorney).

[4] Cryptoleaks, Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman (video 15) (Aug. 26, 2022), https://d33wubrfki0l68.cloud

Exactly how Roche Freedman's ties and loyalty to Ava Labs affected its litigation strategy against Dr. Wright isn't clear. Dr. Wright hasn't been able to get to the bottom of that—as another judge dealing with this mess has said needs to be done—because Roche Freedman has repeatedly obstructed Dr. Wright's efforts to take discovery on the issue. But given Roche's statements, it is likely—or, at the very least, possible—that the firm's relationship with Ava Labs affected its decision-making before, during and after the trial against Dr. Wright.

Boies Schiller was not a party to the Kyle Roche debacle, and Dr. Wright has never claimed it was. But Kyle Roche and Vel Freedman were Boies Schiller lawyers when the complaint in this case was filed and when they wrongfully seized control of W&K without any good faith basis to believe that their client, Ira Kleiman, ever had majority control of that entity. And Boies Schiller was trial co-counsel to Ira Kleiman with Roche Freedman, which led the charge. Even if Boies Schiller was not the firm calling the shots, it cannot disassociate itself from the tainted Roche Freedman firm with which it worked, and still works, hand in glove, for years. The two firms cannot be untangled. They were a team, employing the same litigation strategies in concert.

Given these facts, Dr. Wright is asserting "his own legal rights and interests" in his motion to disqualify and has standing to make the motion under Article III. *Cf. Booker v. Sec'y of Fla. Dep't of Corr*., 22 F. 4th 954, 958 (11th Cir. 2002) (state did not have standing to challenge appointment of federal counsel where state could not point to actual or imminent conflict of interest that would impact litigation and defendant was not alleging existence of any conflict) (cited in Opposition at 3.)

---

front.net/54bcd83ef86e546fa4f97c2e481fba064e228c8d/483a3/videos/c3-14-Gun-goes-after craig-wright.mp4 (emphasis added).

### B. Dr. Wright Has Standing Under Rule 4-1.7 of the Rules Regulating the Florida Bar

The commentary to Rule 4-1.7 of the Rules Regulating the Florida Bar expressly provides that an opposing party has standing to bring a motion to disqualify where "the conflict clearly calls into question the fair or efficient administration of justice." *See* R. Regulating Fla. Bar, R. 4-1.7 Comment. In his motion, Dr. Wright cites *Brown & Williamson Tobacco Corp. v. Daniel Int'l Corp*., 563 F.2d 671 (5th Cir. 1977), relying on *In re Gopman*, 531 F.2d 262 (5th Cir. 1977)—a "half-century old," it is true, but still good law—for that very principle.

The cases cited by Boies Schiller, which would have this Court jettison *Brown* and *Gopman* as "old" Fifth Circuit law, acknowledge that Rule 4-1.7 still says what *Brown* and *Gopman* say it does, i.e., namely that opposing counsel has standing to move to disqualify opposing counsel where justice requires it. *See Keane v. Jacksonville Police Fire & Pension Fund Bd. of Trustees*, 2017 WL 4102302, at *7 (M.D. Fla. Sept. 15, 2017) (quoting commentary to Rule 4-1.7 to note that "opposing counsel may raise the question if the conflict clearly calls into question fair or efficient administration of justice") (cited in Opposition at 3); *Anderson Trucking Serv., Inc. v. Gibson,* 884 So. 2d 1046, 1050–51 (Fla. Dist. Ct. App. 2004) ("Where the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question.") (cited in Opposition at 3-4).[5] The reason for this rule is easily understood and non-controversial: opposing counsel *is obligated* to bring an ethical violation to a court's attention if applicable ethical rules require counsel to do so. *Brown*,

---

[5] Other courts continue to cite *Brown* and *Gopman* with approval. *See, e.g., King v. Martin*, 2012 WL 4959485, at *3 (W.D. La. Oct. 16, 2012) ("[A]ppellant has standing to seek disqualification even though it is not an aggrieved client because its attorneys are authorized to report any ethical violations committed in the case.") (quoting *Brown*); *Hughes v. Pogo Producing Co.*, 2009 WL 1938988, at *2 (W.D. La. July 6, 2009) (same).

563 F.2d at 673; *Booker*, 22 F. 4th at 958 (citing *Gopman* and noting "when an attorney knows about a possible ethical violation, he is obligated to raise the issue.") (internal quotations omitted) (cited in Opposition at 3).

Again, Kyle Roche admitted that Roche Freedman used suits against other clients to advance Ava Labs' interests. That is a plain conflict under Rule 4-1.7, and one so severe that Ira Kleiman *himself* wrote to the Court to complain that, since the Roche Freedman scandal, his attorneys—including those at Boies Schiller—have done nothing to advance *his* interests.[6] What Kyle Roche and his firm have done can and should be laid at Boies Schiller's feet given that the two firms have worked hand-in-hand throughout this litigation. At the very least, it's time to fill in the blanks and understand what motivated Boies Schiller's inertia, and whether it had anything to do with leftover loyalty to its former attorneys who, in turn, were putting their loyalty to Ava Labs over that of their clients.

For this reason, the cases on which Boies Schiller primarily relies are inapposite. In those cases, the court found that opposing counsel lacked standing to seek disqualification where its adversary's client was not alleging a conflict of interest. *See Booker*, 22 F. 4th at 958 ("Booker is not alleging—and there is no indication that he will allege—that his counsel was ineffective at any point in the state proceedings."); *Info. Sys. Assoc., Inc. v. Phuture World, Inc.*, 106 So. 3d 982, 984-986 (Fla. 4th DCA 2013) (opposing counsel lacked standing to revoke attorney's pro hac vice admission for unauthorized practice of law where client was not alleging conflict of

---

[6] Boies Schiller claims that Dr. Wright "just fabricates" ineffective assistance of counsel. Boies Schiller's own client is the one who has made that allegation. (Opposition at 4.) To say that Dr. Wright invented it out of thin air is preposterous.

7

interest). Here, Ira Kleiman's own statements reveal a conflict and Dr. Wright has standing to seek Boies Schiller's disqualification as a result of it.

### C. Even if Dr. Wright Lacks Standing, This Court Has the Power to Disqualify Boies Schiller

This Court has the absolute authority to decide which attorneys may practice before it. *See, e.g., Chambers v. NASCO, Inc*., 501 U.S. 32, 43 (1990) (A federal court's inherent power includes the authority to "control admission to its bar and to discipline attorneys who appear before it."); *In re Herman*, 632 F. App' x 580, 584 (11th Cir. 2015) (The court did not abuse its discretion in suspending an attorney from practicing before it where good cause was shown.). Courts can, and do, and this court should, use that authority where appropriate to disqualify lawyers appearing before them. *See Garbacea v. CG Ryc*, *LLC*, 2018 WL 5098985, at *2 (S.D. Fla. Aug. 30, 2018), *report and recommendation adopted*, 2018 WL 5098884 (S.D. Fla. Sept. 14, 2018).

### III. BOIES SCHILLER HAS BEEN DISCHARGED BY W&K

Unsurprisingly, Boies Schiller argues that it has not been discharged by W&K because only Ira Kleiman has the authority to fire the firm, which he hasn't done. It characterizes Dr. Wright's motion as a "gambit…to wrestle control of W&K." (Opposition at 5.)[7] But it was Ira Kleiman who did precisely that five years ago, when he reinstated W&K for the sole purpose of suing Dr. Wright. As set forth in Ramona Ang's Opposition to the Motion to Strike the

---

[7] Boies Schiller speculates that Dr. Wright's "goal" is to have Ramona Ang and Lynn Wright take control of W&K "to facilitate W&K's release of its $143 million judgment. (Opposition at 2.) That is not true. What Dr. Wright wants is to have the state courts in West Palm Beach, where Mrs. Ang and Lynn Wright have commenced actions seeking a declaratory judgment as to their ownership interest in W&K, decide who owns what so that the Estate receives only ***its share*** of the W&K judgment which, at best, is 50%, less the damage that Ira Kleiman has caused through his misuse of W&K as alleged in those actions.

Appearance of Paul Huck (the "Opposition to Motion to Strike") [DE 935], the fact that Ira Kleiman has been acting like he has complete control over W&K for the last five years doesn't mean he really does. In fact, Ira Kleiman admitted both at trial and in one of his personal court filings [DE 918] that his brother only owned a 50% interest in W&K, which means—at most—the Estate owns only 50%. It doesn't take a mathematician to understand that a 50% interest is not a controlling one.

Boies Schiller next argues that the Court has repeatedly rejected Dr. Wright's efforts "to challenge Ira Kleiman's ownership interest in W&K." (Opposition at 6.) This is a regurgitation of the law of the case argument advanced in the Motion to Strike. [DE 931.] But neither this Court nor the jury ever determined the ownership of W&K, nor was that question ever before it—until now. (Opposition to Motion to Strike at 9-10.) The question of W&K's exact constitution was simply never presented to this Court. So, the law of the case doctrine doesn't apply and, even if it ever did, it would be rendered inapplicable given Ira Kleiman's admissions that the Estate holds (at most) a 50% interest in W&K. *See Jackson v. State of Alabama State Tenure Commission*, 405 F.3d 1276, 1283 (11th Cir. 2005) (reversal of award of summary judgment on appeal was not law of the case on subsequent appeal of decision awarding summary judgment where court had "limited evidence" before it at time of first appeal, but now had "new evidence" in the record that warranted summary judgment). *See also Newman*, 456 F. App'x 866 at 867 (new evidence attached to second summary judgment motion provided exception to law of the case doctrine, such that the district court did not violate doctrine in granting summary judgment based on new record before it); *Silva v. Baptist Health S. Fla., Inc.*, 838 F. App'x 376, 382-83 (11th Cir. 2020) ("Law of the case does not apply in this situation because the district

9

court based its standing decision on a different record than did this Court when addressing the propriety of summary judgment.").

Finally, Boies Schiller repeats the familiar argument that Ramona Ang, as trustee of the Tulip Trust, cannot possibly be an owner of W&K with any authority to join with its other owner and discharge the firm because the Court already has found that the Tulip Trust doesn't exist. (Opposition at 6.) Assuming for a moment that is correct, and it isn't, that argument does not carry the day for Boies Schiller because the Court *never* found that David Kleiman held a majority, let alone a 100 percent, interest in the company. If, as Ira Kleiman has at least twice admitted, his brother held a 50% ownership in W&K, *someone else owns the remaining 50%*. That means that *someone else* has at least an equal interest in determining who represents W&K. That someone else is Ms. Ang, together with Lynn Wright, who will prove that they own a two-thirds controlling interest in W&K, which gives them the power to select its counsel.

## IV. IRA KLEIMAN'S ADMISSIONS REQUIRE BOIES SCHILLER'S DISQUALIFICATION

Boies Schiller's final argument is that Ira Kleiman's recent filings do not require its disqualification. (Opposition at 6-7.) Boies Schiller says that it wishes it could tell the Court what Ira Kleiman has said about the firm's continued representation of W&K but is prevented from doing so because of the attorney-client privilege. It doesn't matter what Ira Kleiman wants, though, if he does not hold a majority interest in W&K that would give him the power to select its counsel.

At a minimum, Ira Kleiman's personal filings—which he took the extraordinary step of filing personally with the Court just before the status conference scheduled to discuss, among other things, the representation of him and W&K—raise serious questions about the ability of Roche Freedman and Boies Schiller to continue to represent W&K. Those questions cannot be

10

ignored. And, at a minimum, Dr. Wright is entitled to discovery and an evidentiary hearing. *Alpert v. Taylor*, 2010 WL 11507807, at *2 (M.D. Fla. Jan. 14, 2010) (ordering evidentiary hearing where there was a material dispute as to whether attorney conflict existed); *In re Finao Corp.*, 2005 WL 419704, at *4 (Bankr. M.D. Fla. Jan. 26, 2005) (finding that evidentiary hearing was necessary to resolve a disqualification motion where matters could not be resolved "on the basis of the statements and proffers by the parties' attorneys"). Summary denial of the motion to disqualify would be inappropriate given the factual disputes that exist.

## CONCLUSION

For the reasons stated here, the Court should grant Dr. Wright's motion to disqualify Boies Schiller or, in the alternative, order discovery and an evidentiary hearing on the motion.

Respectfully submitted,

RIVERO MESTRE LLP
2525 Ponce de Leon Boulevard,
Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: abrown@riveromestre.com
Email: ahenry@riveromestre.com
Email: rkuntz@riveromestre.com
Email: receptionist@riveromestre.com
*Counsel for Dr. Craig S. Wright*

By: s/ Andres Rivero
ANDRES RIVERO
Florida Bar No. 613819
AMY C. BROWN
Admitted *Pro Hac Vice*
ALLISON HENRY
Florida Bar No. 1003008
ROBERT KUNTZ
Florida Bar No. 94668

## **CERTIFICATE OF SERVICE**

   I certify that on March 3, 2023, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

                By: /s/ Andrés Rivero.
                  Andrés Rivero