**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC | **CASE NO.:  9:18-cv-80176-BB/BR** |
|      Plaintiffs, | |
| v. | |
| CRAIG WRIGHT | |
|      Defendant. | |

<u>**MERITS OPPOSITION TO MOTION TO DISQUALIFY**</u>

Craig Wright has moved to disqualify Freedman Normand Friedland LLP ("FNF"), the attorneys that have represented W&K for five years in this litigation, and who led W&K to a $143-million judgment against Wright in late 2021. Wright argued FNF has a conflict, but does not argue FNF's attorneys have ever represented him. Instead, he purports to be here in the name of the fair administration of justice to protect his judgement creditor, W&K, from an allegedly conflicted representation; indeed, to protect the very system of justice itself.

The irony is palpable. Wright "intentionally submitted fraudulent documents to the Court, obstructed a judicial proceeding, and gave perjurious testimony" in this action. (DE 277 at 28.) As this Court observed: "No conduct is more antithetical to the administration of justice." (*Id.*) Perhaps unsurprisingly, in the years since, Wright has continued to attempt to defraud courts across the globe. *See, e.g., Wright v. McCormack* [2022] EWHC 2068 (QB) ¶ 111 (finding that Wright submitted "deliberately false" evidence). His counsel at Rivero Mestre, meanwhile, purport to represent both Wright and his wife Ramona Ang, who claims to own W&K—a clear conflict if there ever were one. Wright's counsel, in other words, seeks to be on both sides of the "v," representing both plaintiff and defendant in this action.

But Wright and his conflicted counsel apparently feel so strongly about protecting Wright's judgment creditor, that they (with Wright's ex-wife) have collectively filed *six motions* to disqualify FNF from representing Ira Kleiman and W&K, along with *nearly twenty* separate unauthorized and untimely discovery requests and subpoenas targeted at FNF's current and former attorneys and clients. They have done so even though W&K has made clear that it *does not want to terminate FNF*, and even though W&K has repeatedly asked Wright and his attorneys to stop this wasteful crusade. Undeterred by the fact that *three of those six motions have already been denied and none have been granted* (a fact that Wright and his counsel inexcusably omit from

their briefing), the Wrights and their counsel have refused to cease this meritless crusade. This is textbook harassment.

Indeed, the theory Wright has based these motions, subpoenas, and discovery requests on is utterly fanciful. He claims that former FNF attorney Kyle Roche commenced and prosecuted this action on behalf of "straw plaintiffs" for the secret purpose of benefiting another client, Ava Labs, and its CEO, Emin Gun Sirer, who is Wright's "nemesis." But the facts, which cannot reasonably be disputed, conclusively disprove that accusation.

For starters, (1) Ava Labs *did not even exist* when this case was commenced in February 2018 (Ex. 1), (2) Roche, a second-year associate at the time, did not even meet Ava Labs or Mr. Sirer until *more than a year after* this action was commenced (Ex. 2 at 2-3); (3) the Estate and W&K are not "straw plaintiffs" but commenced this action in good faith because they reasonably (and correctly) believed Wright had stolen their assets; (4) this action was plainly meritorious, as demonstrated by the fact that W&K obtained a *$143-million judgment* against Wright after a four-week jury trial (DE 889); and (5) FNF vigorously litigated this action on behalf of its clients, as demonstrated by the result and the 900-plus entries on the docket. If those reasons were not enough, (6) Roche is no longer at the firm and has withdrawn from this case; (7) FNF no longer represents Ava Labs or its principals in any matters; (8) there is no evidence that any attorney at FNF did anything improper in this or any other action; and (9) W&K has waived any conflict.

In short, the motion is an insult to the intelligence of its reader. It should have never been filed. And it should be summarily denied. Wright should pay the judgment instead of paying his counsel to file frivolous motions and cases aimed at avoiding the inevitable.

## FACTUAL BACKGROUND

### I.    FNF'S ATTORNEYS OBTAIN A $143-MILLION JUDGMENT FOR W&K AGAINST WRIGHT

The Estate filed this case in February 2018. (DE 1.) Three months later, the Estate and W&K, filed an amended complaint against Wright. (DE 24.) Since this case began, lead counsel for the Estate and W&K has been Vel Freedman, who left Boies Schiller Flexner LLP ("BSF") in July 2019 to start Roche Freedman, now called FNF.

Over the course of the past five years, Mr. Freedman and his colleagues at BSF and FNF have guided W&K through multiple rounds of dispositive motions filed by Wright, including a motion to dismiss (DE 68 (denied)), motion for judgment on the pleadings (DE 265 (denied)), and motion for summary judgment (DE 615 (denied)); years of discovery disputes with a defendant who repeatedly disregarded his discovery obligations (DE 277 (imposing sanctions); DE 420 (granting motion to compel)); and a four-week jury trial. In December 2021, as a result of these efforts, W&K obtained a $100 million judgment against Wright (DE 814), which was ultimately increased to $143 million to reflect prejudgment interest (DE 889). Although the Estate did not prevail at trial, FNF continues to diligently prosecute its claims on appeal with the Court of Appeals for the Eleventh Circuit. (DE 892.)

## II.   WRIGHT AND HIS FAMILY FILE FOUR LAWSUITS AGAINST THE ESTATE AND W&K IN FLORIDA STATE COURT

Over the past two-plus years, Wright's family has inundated W&K and its principal, Ira Kleiman, with lawsuits in Florida state court. In July 2020, Wright's ex-wife, Lynn Wright, filed a lawsuit against Ira Kleiman seeking to enjoin him from pursuing this action against Wright. *See* Verified Petition, *In re Estate of David Kleiman*, No. 50-2013-CP-005060-XXXX-NB (Fla. 15th Cir. Ct. July 16, 2020). In April 2021, Wright's current wife, Ms. Ang, filed a lawsuit against Mr. Kleiman, which was subsequently amended in March 2022 to effectively parrot Ms. Wright's lawsuit. *See* Am. Compl., *Ang v. Kleiman*, No. 50-2021-CA-004758-XXXX-MB (Fla. 15th Cir. Ct. Mar. 4, 2022). In June 2022, Ms. Ang filed a lawsuit against W&K, alleging that W&K (which

she now claims to control) was obligated to pay attorneys' fees she incurred in resisting a deposition in this case. *See* Civil Cover Sheet, *Watts v. W and K Info Defense LLC*, No. 50-2022-CA-005501-XXXX-MB (Fla. 15th Cir. Ct. June 7, 2022). And in November 2022, Ms. Ang served Mr. Kleiman with yet another lawsuit, this time on behalf of the fictional Tulip Trust. *See* Compl., *Tulip Trust v. Kleiman*, No. 50-2022-CA-004636-XXXX-MB (Fla. 15th Cir. Ct. May 13, 2022).

### III.   CRYPTOLEAKS RELEASES AN INFLAMMATORY ARTICLE ABOUT ROCHE AND HIS FORMER CLIENT AVA LABS

In August 2022, an anonymous tabloid website called CryptoLeaks released a series of highly edited and secretly-recorded videos of former firm attorney Kyle Roche, as part of an inflammatory article accusing Roche of participating in an "evil conspiracy" with his then-client Ava Labs to covertly bring class actions against that client's competitors. (Ex. 3.) To be sure, in the videos, Roche appears to make several concerning statements. But contrary to Wright's representation (at 3) that Roche "does not deny" engaging in such misconduct, both Roche and Ava Labs have adamantly denied any wrongdoing—including in the articles cited in Wright's own brief. (DE 900 at 5 n.7, 6 n.8.) Setting aside Roche's comments, FNF has likewise made clear, under oath, that it has not "represented Ava's interests in any litigation it has filed in which Ava is not a party" (Ex. 2 at 4-5), and that its attorneys have never and would never share confidential case information in violation of a protective order (Ex. 4). Moreover, FNF has now spent hundreds of hours investigating the statements in the videos, reviewing thousands of documents, and interviewing numerous partners, and has found no support for the CryptoLeaks allegations.

Nevertheless, given the nature of Roche's statements, he and the firm parted ways in October 2022. (Ex. 2 at 7.) The firm no longer represents Ava Labs or its principals in any matter (*id.*), and Roche has withdrawn from, and has no ongoing role, in this action. (DE 908).

### IV.    WRIGHT AND HIS FAMILY HARASS FNF AND CLIENTS WITH SIX MOTIONS TO DISQUALIFY AND RELATED DISCOVERY DEMANDS

Since the videos were released, Wright and his family have filed ***six motions to disqualify*** the firm. Each of those motions contains near-identical arguments and copied-and-pasted language. *First*, on September 6, 2022, Wright filed a motion with the Court of Appeals for the Eleventh Circuit. (DE 930-1.) *Second*, later that month, Ms. Ang (represented by Rivero Mestre LLP) filed motions to disqualify FNF in the action filed by Ms. Wright (Ex. 5), as well as in the two actions that Ms. Ang commenced in her individual capacity. (Ex. 6; Ex. 7 at 8.) *Third*, in late October, Ms. Wright filed a motion to disqualify in her action. (Ex. 8.) *Fourth*, in late November, Wright filed his motion to disqualify in this action. (DE 900.)

Wright and his wife have used these motions as an excuse to serve scores of unauthorized discovery requests and subpoenas. Indeed, over the past few months, they have served (i) FNF with two sets of RFAs (even though FNF is not a party to any of the many lawsuits filed by Wright's family), two sets of RFPs (even though, again, FNF is not a party to any of the actions), and one deposition subpoena with document requests; (ii) Mr. Freedman with three deposition subpoenas; (iii) Roche with two deposition subpoenas (one with document requests); (iv) Ava Labs with two deposition subpoenas with document requests; (v) Ava Labs executives with four deposition subpoenas (one with document requests); and (vi) Ira Kleiman with one set of document requests. These discovery requests concern obviously irrelevant issues such as, among other facially harassing requests, "[a]ll documents related to 'academic writings' in your possession authored by either you, [Ava Labs's CEO], or both," and "[a]ll documents related to Kyle Roche's residence in Florida for tax purposes." (Ex. 9 at 6-7.)

In total, nearly three years after the Court-ordered discovery cutoff in this action (DE 441), Rivero Mestre has signed ***seventeen*** separate discovery requests and subpoenas targeted at FNF's

current and former attorneys and clients in connection with Wright's campaign to end FNF's representation of W&K. Compounding the burdens on non-parties, Wright has repeatedly refused to withdraw these requests, forcing FNF to litigate a motion to compel and a motion for protective order in Florida state court. (Exs. 7 & 10.)

## V.    COURTS DENY CRYPTOLEAKS-INSPIRED MOTIONS TO DISQUALIFY

In Wright's motion, he asserts (at 2) that Roche's statements have "generated numerous motions to disqualify in courts across the country," and states that "[o]ne of those motions has already been granted." As has unfortunately become routine, Wright's account is highly misleading. (*Cf.* DE 921 at 3 n.1 (collection of orders from Judge Bloom finding that Wright's counsel had mischaracterized documents and evidence).)

*First*, the specific motion that Wright says was "granted," which was filed in the *Tether* litigation, was not decided as a motion to disqualify; instead, it was decided under Federal Rule of Civil Procedure 23 before Roche left the firm. (DE 900-1 at 14:20-15:1 ("Unlike Roche Freedman's framing of the issue as one of disqualification of a firm, I find that this dispute actually arises under Federal Rule of Civil Procedure 23(d)(2) . . . ."). Judge Failla concluded that, under that standard, the benefits for the class of keeping FNF in the case would be outweighed by the distraction and costs that would be imposed by discovery that the defendants would pursue relating to the firm's adequacy as class counsel under Rule 23. (*Id.* at 18:21-19:4.) Moreover, she did "not make findings" of fact. (*Id.* at 21:20-22:1.) The decision in that *class action*, which occurred *before* Roche left the firm, is thus irrelevant to the Court's analysis here.

*Second*, and relatedly, aside from the motions filed by Wright and his family (and one other motion that he fails to mention which was denied), the "numerous motions to disqualify" referenced in Wright's brief were each filed ***in class actions***. That distinction is meaningful not

only because of the different standard that applies in the class-action context, but also because Roche's statements **concerned class actions**, not other types of cases. Accordingly, to the extent Wright is attempting to argue that the six motions he and his family have filed against FNF are reasonable because other litigants have moved to disqualify FNF, that argument falls flat. In any event, to date, none of the motions filed in class actions other than *Tether* have succeeded (although two remain pending), and as stated above, even *Tether* wasn't a disqualification.

*Third*, although Wright discusses the irrelevant *Tether* decision extensively, he inexcusably fails to disclose to the Court that the Eleventh Circuit denied the motion **that he filed** to disqualify FNF from representing the Estate in the appeal of **this very action**. *See* Fla. R. Prof'l Conduct 4-3.3(a)(3) ("A lawyer shall not knowingly . . . fail to disclose to the tribunal legal authority in the controlling jurisdiction known to be directly adverse to the position of the client and not disclosed by opposing counsel."). As previously explained, the Eleventh Circuit denied Wright's motion in its entirety on December 29, 2022 (DE 930 at 2-4), approximately two weeks before Wright renewed his motion to disqualify in this action. That motion, moreover, is essentially identical to the motion Wright has filed here. (*Id.*)

*Fourth*, Wright similarly fails to mention that **the day before he renewed his motion to disqualify in this action**, a Florida state court denied two essentially identical motions to disqualify that Wright's wife and ex-wife filed against FNF in Ms. Wright's state-court action. In a written opinion, that court explained:

> Additionally, the Court also has reviewed the motions and concludes that they fail to demonstrate any "competent substantial evidence" providing a basis for disqualification of Freedman Normand Friedland LLP, thereby depriving Ira Kleiman and the estate of their right to choice of counsel. *Manning*, 981 So. 2d at 670-71. The content of the motions, at best, make allegations of purported misconduct by Roche (who is not counsel of record in this case) relating to cases entirely unrelated to this one, and without any showing of how that misconduct

constitutes a conflict of interest that implicates the interests of Ms. Watts/Ang and Ms. Wright. The motions indeed invite the Court's "skepticism." *Id.* at 670.

(DE 930-6 at 4.) To date, ***none*** of the Wrights' motions to disqualify FNF have succeeded.[1]

*Fifth*, Wright also fails to mention that ***no court*** has ***disqualified*** FNF based on Roche's statements. In fact, ***the only other court*** to have addressed a motion to disqualify FNF outside of the Rule 23 context denied it on the grounds that the movant lacked standing "to seek disqualification based on an asserted conflict raised by the Freedman Firm's representation of [one client] given its relationship with another client, Ava Labs," and that "it would be speculative to conclude that others" engaged in the conduct suggested by Roche's statements. (Ex. 11 at 10, 12.) As explained below, that same result is appropriate here.

## **LEGAL STANDARD**

"Motions to disqualify opposing counsel are highly disfavored in the Eleventh Circuit." *Mirabal v. USAA Cas. Ins. Co.*, 2019 WL 2121691, at *1 (S.D. Fla. Mar. 14, 2019). Indeed, "[d]isqualification of counsel is a drastic remedy" and "harsh sanction" that "works substantial hardship on the client" and should thus "be resorted to sparingly." *Flemings v. Miami-Dade Cty.*, 2021 WL 134415, at *7 (S.D. Fla. Jan. 14, 2021) (quoting *Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006)) (internal quotations omitted)). In addition, because "a disqualification motion may be used to harass or for tactical advantage, it should be viewed with caution." *Keane v. Jacksonville Police & Fire Pension Fund Bd. of Trs.*, 2017 WL 4102302, at *5 (M.D. Fla. Sept. 15, 2017) (citing *Herrmann*, 199 F. App'x at 752).

Accordingly, to "prevail" on such a motion, "the movant must show 'compelling reasons' for disqualification." *Mirabal*, 2019 WL 2121691, at *1 (quoting *Herrmann*, 199 F. App'x at 752);

---

[1] Of the other three, one was dismissed with the case. Two (including this one) remain pending.

*see also In re Application Pursuant to 28 U.S.C. § 1782*, 2023 WL 2058316, at *2 (S.D. Fla. Jan. 17, 2023) (Reinhart, J.) ("The party moving to disqualify counsel bears the burden of proving the grounds for disqualification."). To make that showing, as a threshold matter, the movant must establish opposing counsel's "violation of specific Rules of Professional Conduct." *Application*, 2023 WL 2058316, at *3. If the movant meets that burden, "the Court must look to 'various factors, such as the nature of the ethical violation; the prejudice to the parties; the effectiveness of counsel in light of the violations; the public's perception of the profession; and whether or not the attempt to disqualify an attorney is used as a tactical device or a means of harassment.'" *Id.* (quoting *Prudential Ins. Co. of Am. v. Anodyne, Inc.*, 365 F. Supp. 2d 1232, 1237 (S.D. Fla. 2005)).

## ARGUMENT

### I.      WRIGHT LACKS ARTICLE III AND PRUDENTIAL STANDING

As explained in W&K's opposition to Wright's motion to disqualify Boies Schiller Flexner LLP, Wright's motion should be denied because he lacks Article III standing. (DE 934 at 2-4.) But even if Article III were satisfied here, Wright still lacks *prudential* standing. Indeed, the "general rule" is that "a motion for disqualification based on potential conflicts of interest" must be "brought by a client, or former client, of the challenged lawyer." *F&G Research, Inc. v. Acco Brands, Inc.*, 2005 WL 8154577, at *1 (S.D. Fla. Dec. 15, 2005); *see also Keane*, 2017 WL 4102302, at *7 ("[A]s a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification." (quoting *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976))). That rule makes good sense: "Allowing a non-client to raise conflicts that do not implicate his own interests 'would allow the non-client to use the conflict rules for his own purposes where a genuine conflict might not really exist.'" *Caldwell v. Compass Entm't Grp. LLC*, 2014 WL 7070002, at *3 (M.D. Fla. Dec. 15, 2014) (quoting *Yarn*

*Processing*, 530 F.2d at 89). Wright has never been an FNF client and thus has no "dog" in the "fight" of whether there is a conflict between FNF's current representation of W&K and its previous representation of Ava Labs. *Stopa v. Cannon*, 330 So. 3d 1033, 1036 (Fla. 2d DCA 2021); *cf.* DE 939 at 3 (finding Wright has not shown why he "should have a dog in that fight" of who represents W&K). For that reason, his motion should be denied.

Wright nevertheless argues (at 4) that he "has standing" based on *Brown & Williamson Tobacco Corp. v. Daniel Int'l Corp.*, 563 F.2d 671 (5th Cir. 1976), where the Fifth Circuit stated: "[A]ppellant has standing to seek disqualification though it is not an aggrieved client because its attorneys are authorized to report any ethical violation committed in the case." *Id.* at 673. Courts have not interpreted *Brown & Williamson* so broadly. *See, e.g.*, *Domain Protection, LLC v. Sea Wasp, LLC*, 2019 WL 6700955, at *2 (E.D. Tex. July 22, 2019) (explaining that *Brown & Williamson* is limited to instances where attorney "is *actively representing* two parties with adverse interests"). Instead, in the context of an alleged conflict, a recent decision from this Court makes clear that a non-client has standing only where "there is 'a violation of the rules which is sufficiently severe to call in question the fair and efficient administration of justice.'" *Application*, 2023 WL 2058316, at *3 (quoting *McGriff v. Christie*, 477 F. App'x 673, 676-77 (11th Cir. 2012)).

Wright comes nowhere close to meeting that "very high standard," *Houston Specialty Ins. Co. v. Titleworks of Sw. Fla., Inc.*, 2016 WL 7130938, at *3 (M.D. Fla. Apr. 12, 2016), which typically requires an attorney to have obtained "an information advantage" over the movant in a prior representation, *Anderson Trucking Serv., Inc. v. Gibson*, 884 So. 2d 1046, 1050-51 (Fla. 5th DCA 2004), or to have literally switched sides over the course of the litigation, *see Cont'l Cas. Co. v. Przewoznik*, 55 So. 3d 690, 693-94 (Fla. 3d DCA 2011). Wright alleges nothing like that; in fact, he provides no explanation whatsoever as to how FNF's continued role as W&K's

attorney—a role that it has had for more than five years—could somehow render the proceedings fundamentally unfair. *See Houston Specialty*, 2016 WL 7130938, at *2-3 (denying motion, where movant's "vague and general claims" regarding harm were "not specific enough").

To the contrary, at most, Wright argues that FNF has "failed to represent [W&K] adequately by, among other things, refusing to take steps" to collect on W&K's $143-million judgment. (DE 924 at 1.) Even if that were true (and it isn't), that "does not call into question" whether these proceedings "can be fairly and efficiently administered." *Application*, 2023 WL 2058316, at *4 (movant argued that counsel was "not using the current litigation to the maximum benefit" of its client). In any event, if Wright's concern is that FNF will not pursue judgment collection on behalf of W&K (he need not be concerned), there is also an easy solution: Wright could pay the judgment, instead of filing six motions to disqualify and serving more than a dozen burdensome discovery requests and subpoenas. His failure to do so notwithstanding his purported concerns ought to "invite the Court's skepticism." (DE 930-6 at 4); *see also Caldwell*, 2014 WL 7070002, at *3 ("Because litigants ordinarily do not go out of their way to protect the interests of their opponents, courts generally take a skeptical view of such motions.").

## II.       WRIGHT CANNOT ESTABLISH THAT FNF VIOLATED RULE 4.1-7(a)(2)

### a.    <u>Wright Cannot Establish that Roche Violated Rule 4.1-7(a)(2)</u>

To establish a conflict under Rule 4-1.7(a)(2), Wright "must **prove** by a preponderance of the evidence that there is a ***substantial risk***" that FNF's representation of W&K "will be ***materially limited*** by [its] responsibilities to the other current client, to a third person, or by [its] personal interests." *Application*, 2023 WL 2058316, at *5 (emphases added). As the probate court found in addressing substantively-identical motions filed by Wright's wife and ex-wife, Wright comes

nowhere close to meeting that burden. (*See* DE 930-6 at 4 (motions "fail[ed] to demonstrate any 'competent substantial evidence' providing a basis for disqualification").)

### i. *Wright's settlement argument is meritless*

Wright's first argument is that Roche's statements regarding settlement demonstrate he puts "his and the Firm's interests ahead of those of his clients." Roche is no longer at the firm, or on this case, so his settlement views are irrelevant.[2] Moreover, clients settle cases, not lawyers.

### ii. *Wright's argument that this action was commenced to benefit Ava Labs or its principals is fanciful*

Wright's second argument is that Roche's statements indicate that he secretly commenced this action on behalf of Ava Labs's CEO, Emin Gun Sirer. The argument is frivolous.

For starters, Vel Freedman has been lead counsel in this litigation, and responsible for it since its inception in 2018. At that time. Roche was a second-year associate. The suggestion that Roche was the reason this case was filed, is absurd.

Moreover, this action was commenced ***before Ava Labs was created*** (Ex. 1), and ***more than a year before*** Roche met anyone from Ava Labs (Ex. 2 at 2-3). It ***could not have been*** commenced on behalf of Mr. Sirer. While Wright may be a "fantasist" as his counsel claims (DE 851 at 112:15-25, 123:21-25, 164:24-165:3), his counsel has Rule 11 obligations and must concede

---

[2] Wright's argument also fails because that's not what Roche said. *First*, Wright's theory—that a conflict exists because Roche stated he "will not settle any case" and because he "settles because of publicity for the Firm"—is too incoherent to meet any burden, let alone the "heavy burden" here. *Flemings*, 2021 WL 134415, at *7. *Second*, Wright's assertion that Roche "will not settle any case" is inconsistent with reality and mischaracterizes Roche's statements. For example, ***in this case***, Plaintiffs accepted a settlement on behalf of W&K in 2019, but Wright's funding partner backed out, forcing ***Wright*** to back out of the agreement. (DE 290 at 1-2.) Moreover, Roche did not say that he "will not settle any case"; he was just crassly describing an approach to settlement negotiations where the attorney "say[s] to a defendant" that he or she has "resources" and "will take you to the end." Wright does not explain how Roche's endorsement of that bargaining strategy could possibly warrant disqualification. *Third*, Wright's assertion that Roche settles "for publicity" is similarly unsupported by proper evidence. Roche's statements in a 17-second video clip that cuts off mid-sentence, and which he's said has been altered, does not support that inference and are certainly not enough to warrant disqualification.

that Roche did not meet Ava Labs's principals in September 2019, travel back in time to February 2018, find Ira Kleiman and convince him to sue Wright and get in touch with Vel Freedman, and convince Vel Freedman and Boies Schiller Flexner to sign up as counsel—all to benefit Mr. Sirer.

Nor was this action commenced with "straw plaintiffs" as Wright suggests. The Estate and W&K decided to take legal action because they believed in good faith that Wright had stolen their assets. That belief was well-founded: their claims survived multiple dispositive motions, including a motion for summary judgment (DE 615) and a motion for judgment as a matter of law (DE 796), and W&K ultimately obtained *a $143-million judgment* against Wright (DE 889). This was not, in other words, a frivolous lawsuit manufactured to harass a rival; it was a meritorious lawsuit intended to hold a thief accountable for his misconduct.

None of Roche's alleged statements suggest otherwise. In fact, in those statements, Roche says that Mr. Sirer liked that Roche "took down one of [his] biggest arch-nemeses, the guy who claimed to be Satoshi, Craig Wright," and Roche provides some background on Wright, his claim to be Satoshi Nakamoto, and this lawsuit. Roche never says Mr. Sirer asked him to bring this case or that he brought it to benefit Mr. Sirer. Wright does not (and cannot) argue that Mr. Sirer's alleged dislike of Wright establishes that Mr. Sirer and W&K have adverse interests. To the contrary, both W&K and Mr. Sirer would presumably be interested in maximizing W&K's recovery against Wright. *See Keane*, 2017 WL 4102302, at *8 (denying motion, where movant "has presented no good reason to think the asserted conflict of interest will compromise the effectiveness" of opposing counsel).

Lacking any credible evidence to support his theory, Wright claims (at 12-13) that Roche's statements regarding class actions are "Rule 404(b) evidence that Roche is engaged in a pattern and practice of secretly representing Ava's and [its CEO's] interests by using straw plaintiffs to

conceal the real parties in interest." But Roche is not at this firm anymore, this isn't a class action, Wright doesn't compete with Ava Labs, and the Estate and W&K aren't "straw plaintiffs," so that illusory "evidence" has no relevance here. (*See* Ex. 11 at 12 (denying motion to disqualify FNF in non-class action, and explaining that "[t]his case does not fit the profile of the putative class action litigation potentially filed by Roche for improper purposes").) Wright cites no authority for the proposition that a law firm can be disqualified from one case simply because a former attorney at that firm arguably stated that he or she acted improperly in another case, and, to FNF's knowledge, none exists.

Undeterred by these (or any other) facts, Wright further proclaims (at 13) that this case constitutes an "abuse of process" similar to what happened to "Emre Crypto," also known as Emre Aksoy. What Wright means is anyone's guess, but to the extent he is accusing Roche of improperly commencing a lawsuit against Mr. Aksoy to secretly benefit Ava Labs or its principals, that accusation is unfounded. Roche represented Mr. Sirer, *who was named as the plaintiff* in a meritorious defamation case against Mr. Aksoy, after Mr. Aksoy falsely labeled Mr. Sirer a "terrorist." *See* Compl., *Sirer v. Aksoy*, No. 1:21-cv-22280 (S.D. Fla. June 22, 2021). There were no "undisclosed interested parties" as Wright insinuates.

**b.  No conflict can be imputed to the firm**

Even if Wright could prove by a preponderance of the evidence that there was a substantial risk that ***Roche's*** representation of W&K would be materially limited by his responsibilities to Ava Labs or its principals, Wright cannot establish that such a conflict would be imputed to the remaining attorneys in the firm.

Wright provides ***no evidence*** to support his serious accusation (at 15) that Roche "was hardly the only partner" at FNF "to have engaged in the scandalous practices Roche catalogued in

14

his own words"—an accusation that the Florida probate court easily rejected (*see* DE 930-6 at 4 ("The content of the motions, at best, make allegations of purported misconduct by Roche.")), and that another court similarly rejected on the grounds that "it would be speculative to conclude that others were involved" (Ex. 11 at 12). And Wright provides ***no evidence*** to support his equally grave insinuation (at 15) that FNF has somehow "failed" in its "duties to this Court." To the contrary, the cited statements do not implicate any attorney other than Roche, who is no longer at the firm and who was withdrawn from this case. Wright's counsel's willingness to say anything and everything to obtain the result they want here without any fidelity to the truth, ethics, or candor to the Court is unfortunate to say the least.

More fundamentally, Wright's argument is that Roche allegedly had improper motives in pursuing this action, but Wright provides ***no evidence*** that suggests anyone at the firm shared those improper motives. And Roche's motives, to the extent that they could matter, are ***necessarily personal*** to Roche and therefore cannot be imputed to FNF. That is made abundantly clear by the only rule that Wright cites to support his argument. *See* Fla. R. Prof'l Conduct 4-1.10(a) (conflicts imputed "*unless* the prohibition is based on a personal interest of the prohibited lawyer and does not present a risk of materially limiting the representation of the client by the remaining layers in the firm") (emphasis added).

Wright nevertheless declares victory based on a filing from Ira Kleiman where Mr. Kleiman expresses frustrations about, among other things, his counsel. According to Wright, Mr. Kleiman's statements "prove" that FNF "put the interests of its owners ahead of its clients and do what best serves *themselves*, and themselves alone." (DE 924 at 2 (emphasis in original).) But that's not what Mr. Kleiman said, and his stated frustrations do not establish, or even suggest, that counsel has a conflict of interest or otherwise engaged in unethical conduct.

Wright disregards that reality and theorizes (without evidence) that FNF refused to pursue judgment-collection efforts against Wright "because they were desperate to avoid what is happening now, namely the Court's consideration of a meritorious motion to disqualify." (*Id.*) This baseless accusation is nonsensical and improper.[3] Counsel would be happy to explain any perceived delay in collection against a foreign national who resides abroad, who is an adjudicated perjurer, forger, thief, and who is backed by a billionaire litigation funder -- if permitted. Unfortunately, such disclosures would violate privilege.

Moreover, Wright's wild theory does not withstand even the slightest scrutiny. This is ***the sixth disqualification motion*** Wright and his family filed against FNF, so nothing FNF could do in this action would allow FNF to "avoid" the identical arguments that Wright and his family made ***in the other five*** motions. In addition, this motion, like the other five, is not "meritorious"; indeed, it is wholly frivolous, and two courts have already rejected the same arguments.

### c.   W&K waived any conflict

Even if there was ever a conflict between FNF's representation of W&K and its representation of Ava Labs or its principals (there wasn't), that conflict is waivable and was waived by W&K. Under Rule 4-1.7(b), a lawyer may represent a client in the face of a conflict if: "(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a position adverse to another client when the lawyer represents both clients in the same proceeding before a tribunal; and (4) each client gives

---

[3] Respectfully, Rivero Mestre's baseless accusations and frivolous filings should concern the Court. *See Williams v. Fla. Health Scis. Ctr., Inc.*, No. 8:05-CV-68-T-23EAJ, 2007 WL 641328, at *3 (M.D. Fla. Feb. 26, 2007) ("Launching allegations of fraud against opposing counsel without reasonable inquiry as to their truth is unprofessional and unethical behavior, not to mention offensive and damaging to reputable attorneys.").

informed consent, confirmed in writing or clearly stated on the record at a hearing." As the Eleventh Circuit has already found (DE 930 at 5-7), each of these requirements are satisfied.

*First*, FNF reasonably believes that it will be able to provide competent and diligent representation to W&K. FNF obtained a $143-million judgment for W&K against Wright after years of litigation. And while FNF does not believe a conflict ever existed, there is no question that none exists now that Roche is no longer at the firm and FNF no longer represents Ava Labs or any of its principals. *See Houston Specialty*, 2016 WL 7130938, at *4 ("The Court finds that Florida Bar Rule of Professional Conduct 4.1-7 does not apply to the issue of disqualification because Kaplan no longer represents Salin."). There is, in other words, no basis to conclude that FNF's ongoing representation of W&K will be materially limited in any shape or form because of Roche and Ava Labs.

*Second*, FNF's representation of W&K is not prohibited by law and does not involve the representation of two adverse clients "in the same proceeding before a tribunal." Wright cannot seriously contend otherwise.

*Third*, W&K has provided its informed consent, including ***after*** Mr. Kleiman submitted the filings referenced in Wright's supplemental brief. To the extent Wright's counsel signs a brief under Rule 11 baselessly challenging this representation, FNF would be happy to provide the Court with proof of the waiver *in camera*, and then seek the appropriate sanctions that would follow.

### III.    WRIGHT CANNOT ESTABLISH THAT FNF VIOLATED RULE 4-8.4

Wright argues without authority (at 13-14) that Roche violated Rule 4-8.4(d). Roche has withdrawn from this case and is not at FNF, so the argument is moot. To the extent Wright is arguing Roche's alleged conduct is imputed to FNF under Rule 4-1.10, that argument is meritless because that rule governs the "imputation of conflicts of interests," not generalized misconduct.

## IV.     EVEN IF WRIGHT COULD ESTABLISH A VIOLATION OF RULE 4-1.7 OR 4-8.4, DISQUALIFICATION WOULD NOT BE WARRANTED

Even if Wright could show that FNF violated a rule of professional conduct (he can't), disqualification would not be warranted. *See Application*, 2023 WL 2058316, at *4 ("[E]ven if an ethical rule has been violated, the Court must look to 'various factors, such as the nature of the ethical violation; the prejudice to the parties; the effectiveness of counsel in light of the violations; the public's perception of the profession; and whether or not the attempt to disqualify an attorney is used as a tactical device or a means of harassment.'" (quoting *Anodyne*, 365 F. Supp. 2d at 1237)); *Lanard Toys Ltd. v. Dolgencorp LLC*, 2016 WL 7326855, at *7 (M.D. Fla. Dec. 16, 2016).

*First*, disqualification would not serve the "interests of justice." *Application*, 2023 WL 2058316, at *6. Vel Freedman has represented W&K since early 2018. He took every deposition of Wright, delivered closing arguments at trial, and he and FNF have spent years mastering the record and the evidence in this case. Terminating FNF over W&K's objection would substantially prejudice W&K. *See Keane*, 2017 WL 4102302, at *7 ("[B]ecause it would be difficult to find a replacement to 'fully master factual and legal nuances' in this complex action, disqualifying the Office of General Counsel could impair the adversarial process."). At the same time, Wright would not be prejudiced if FNF remained W&K's counsel. There is, in short, no "compelling reason" why W&K should be deprived of its choice of counsel. *Application*, 2023 WL 2058316, at *6.

*Second*, as to the nature of the alleged ethical violation and the public's perception, no reasonable person could conclude that FNF's continued representation of W&K would be materially limited by FNF's duties to any other client, current or former, especially given Mr. Roche's departure and the fact that the firm no longer represents Ava Labs or any of its principals.

*Third*, there is no evidence that FNF's representation of W&K suffered as a result of the alleged conflict. Wright appears to concede this. (DE 943 at 5 (arguing it is "possible" that "the

firm's relationship with Ava Labs affected its decision-making").) Indeed, FNF obtained a ***$143-million judgment*** for W&K after a four-week trial, at which Judge Bloom complemented FNF for its "superb trial skills," "excellent service" to its clients and "our system of justice," for providing "tremendous counsel" to its clients, and for being "diligent, professional, and true officers of the Court." (DE 851 at 186:3-21.)

*Fourth*, all available evidence supports the inference that this motion was filed to harass FNF and W&K. Wright, his family, and their attorneys from Rivero Mestre LLP have filed ***six motions to disqualify*** FNF. They have served FNF, W&K, and others with ***more than a dozen unauthorized discovery requests and subpoenas*** relating to those motions. They have refused to abandon those motions even after ***two courts have found them completely meritless***. They have made extremely serious accusations against FNF attorneys, including insinuating that Mr. Freedman committed perjury, ***without any evidence*** to support those accusations. *See Flemings*, 2021 WL 134415, at *7 (finding that motion for disqualification was "abusive, harassing, and pure gamesmanship," where it included "serious charges" with "no support"). They have otherwise made inappropriate comments about FNF and its attorneys in public filings that fall far below the level of decorum expected of officers of the Court, stating, among other things, that "unethical practices are policy" at FNF (Ex. 7 at 3), and that the firm commits a "fraud upon" every court in which it appears (*id.* at 9). Their goals are clear, and this Court should not entertain this unprofessional gamesmanship.

## **CONCLUSION**

W&K respectfully requests that Wright's motion to disqualify FNF be denied.

Dated:  March 10, 2023

Respectfully submitted,

By: */s/ Velvel Devin Freedman*

Velvel (Devin) Freedman, Esq.
FREEDMAN NORMAND FRIEDLAND LLP
1 SE 3rd Ave., Suite 1240
Miami, Florida 33131
vel@fnf.law

Joseph Delich
Stephen Lagos
FREEDMAN NORMAND FRIEDLAND LLP
99 Park Avenue, Suite 1910
New York, New York 10016
jdelich@fnf.law
slagos@fnf.law

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 10, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Velvel (Devin) Freedman*
VELVEL (DEVIN) FREEDMAN