# EXHIBIT 7

IN THE CIRCUIT COURT FOR THE 15TH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

RAMONA ANG, as Trustee of the
TULIP TRUST,

CASE NO: 50-2021-CA-004758-XXXX- MB

     Plaintiff,

        v.

IRA KLEIMAN, as Personal Representative
of the Estate of David Kleiman

     Defendant,

and

W&K INFO DEFENSE RESEARCH, LLC,
and LYNN WRIGHT,

     Nominal Defendants.

_____/

## MOTION TO COMPEL

With its reputation and integrity thrown into gravest doubt by its namesake partner's scandalous public disclosures, Roche Freedman, LLP (the "Firm") now flatly refuses to participate in discovery about those admissions of wild misconduct, admissions which form the basis of Tulip Trust's Motion to Disqualify the Firm. But discovery is required for resolution of that motion, and so the Trust moves to compel it.

After Kyle Roche was recorded making scandalous disclosures about the Firm's unethical practices, the Trust – like parties in litigation with Roche Freedman across the country – moved this Court disqualify the Firm. (A copy of the Motion to Disqualify Roche Freedman, LLP, filed September 9, 202 is attached as Exhibit "A".)

1

Roche's disclosures about the Firm included Roche's on camera admissions that, *inter alia*:

- The Firm has a strategy of suing rivals of Ava Labs and its CEO, Emin Gün Sirer ("Gün"), by bringing harassing lawsuits, and fraudulent, purported class actions in the names of investors Roche referred to as "idiots";

- The Firm's business plan is never to settle a case, irrespective of its purported clients' interests, and instead to take all cases to trial, where liability and damages issues are decided by juries Roche also referred to as "idiots";

- The Firm leverages the litigation process to learn (and misuse) for Ava's benefit the confidential information and trade secrets of those it sues; and

- The Firm does all this for the express purpose of advancing the Firm's interests, making money for its partners, enforcing Gün's personal vendettas (like the one against Dr. Craig S. Wright) and "for sport."

The lawsuit before this Court is the direct progeny of another. In a federal action brought in 2018 (*Kleiman v. Wright*, Case No. 9:18-cv-80176-BB (S.D. Fla.)), the Firm first alleged a secret, oral partnership between Dr. Wright and Ira Kleiman's deceased brother, David Kleiman, supposedly to mine billions of dollars' worth of bitcoin. When it appeared the David Kleiman estate could not legally sustain those claims, the Firm had Ira Kleiman reanimate W&K Info Defense Research, LLP, falsely claiming to have ownership control,[1] and made W&K a co-plaintiff. The federal jury utterly rejected David Kleiman's estate claims of partnership but did find that W&K shared intellectual property interests with Wright. The Trust brought this action to vindicate its ownership in the company.

Through the federal trial, although the Firm purported to represent W&K, it failed to disclose what Roche has now admitted: it was, long before trial, acting for its undisclosed principal and benefactor, Ava Labs and its principal Gün, with the goal of "[taking] down one of Gün's biggest arch-nemeses . . .  Craig Wright." See the Motion to Disqualify at 9, citing

---

[1] In fact, as alleged in the Complaint pending in this matter, he does not.

Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 15) (Aug. 26, 2022).

The Firm's disqualification is mandated not merely by the scandalous admission that, at the Firm, unethical practices are policy – although that would be reason enough – but also because the central issue before this court in the underlying claim – the truth about the ownership of W&K – is directly implicated by Roche's admissions on the Firm's behalf, which call into question who really is behind Kleiman's claims of control.

In support of the motion to disqualify, and in search of the truth, the Trust propounded discovery on the Firm. The closely targeted requests for admissions (Attached as Exhibit "B") and requests for production (Attached as Exhibit "C") had a singular goal: to illumine the facts underlying Roche's outrageous boasts of his firm's unethical intentions and means. Roche and the Firm have since stated, in public and in the many other fora where their disqualification is being sought, that Roche's statements, while "inappropriate," were merely drunken boasting, or were taken out of context, or were in some way edited to mischaracterize them.

But the "but Kyle was drunk" defense recently proved unavailing for the Firm. *In re Tether and Bitfinex Crypto Asset Litig.*, No. 19-cv-09236, is a large class action matter in the Southern District of New York where the Firm was lead counsel. On Thursday, October 13, U.S. District Court Judge Katherine Polk Failla removed the Firm from its class counsel role based on the same Roche disclosures at issue in the disqualification motion before this Court. See No. 19-cv-09236 Tr. Oct. 13, 2022 attached as Exhibit "D." In so ruling, Judge Failla stated that "the degree to which the Roche Freedman firm has attempted to minimize Mr. Roche's statements gives me concern that they don't appreciate the seriousness of those statements, and I've already explained the dim view with which I hold the firm's arguments in mitigation." Ex. D, p. 11.

Furthermore, Judge Failla pointed out that "the fact is we, or anyone, had not yet gotten to the bottom of the relationship that Mr. Roche has or had with Ava Labs and, by extension, whether the litigation strategies suggested in his recorded comments were implemented by him with respect to Ava Labs or other clients of the firm or by others at the firm" Ex. D, p. 9.

The discovery sought by the Trust is the minimum inquiry needed to "get to the bottom" of these matters and to test whether the Firm's excuses and disclaimers should rescue it from disqualification.

But the Firm has flatly refused to respond at all to discovery. Its responses and objections (attached as Exhibits "E" and "F") characterize the requested admissions and documents as frivolous harassment. Based on precisely no legal authority, the Firm – with an arrogance entirely in character with Roche's bombastic description of its ethos – simply declares that "[a]bsent a court order, [the Firm] will not provide any information in response." *See, e.g.,* the Firm's Responses and Objections to the First Request for Admissions, repeated in response to each of twenty-six requests.

So the Firm has asked for a court order; the Firm ought to get one.

A motion to disqualify an attorney, let alone a law firm, is a serious business that deserves to be taken seriously. *Balaban v. Philip Morris USA Inc.*, 240 So. 3d 896, 899 (Fla. 4th DCA 2018) ("[I]mposing the remedy of disqualification may 'abrogate important societal rights, such as the right of a party to his counsel of choice and an attorney's right to freely practice her profession,' [but] courts should not hesitate to disqualify an attorney where the circumstances justify such a severe remedy.") (quoting *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1314 (5th Cir. 1995)). With stakes this high, cavalier disregard will not serve.

Indeed, disqualification is *so* serious a matter that the Court resolves a motion to disqualify upon the completion of an evidentiary hearing. *Sch. Bd. Of Broward Cty. V. Polera Bldg. Corp.*, 722 So. 2d 971, 974 (Fla. 4th DCA 1999) (requiring the trial court to conduct an evidentiary hearing on a motion to disqualify counsel, where the parties disputed material facts); *Plaza Resorts, Inc. v. Janus Am. Grp., Inc.*, 811 So. 2d 850, 851 (Fla 4th DCA 2002) (remanding to the trial court for evidentiary hearing because disqualification requires trial courts to make factual determinations and cannot issue solely based on the parties' competing affidavits); *Lewis v. Nical of Palm Beach*, 10 So. 3d 159, 163 (Fla. 4th DCA 2009) (even though counsel withdrew from representing defendants, plaintiffs demonstrated a preliminary basis for the disqualification of the opposing party's counsel and were entitled to an evidentiary hearing to present evidence on continuing misconduct and why voluntary withdraw was insufficient).  It then ineluctably follows that, because an evidentiary hearing is a futile exercise without evidence, the parties to such a hearing are entitled to gather that evidence. *See, e.g., McMillan v. Troutman,* 740 So. 2d 1227 (Fla. 4th DCA 1999) (finding parties to an evidentiary hearing are entitled to discovery regarding the subject issues of the hearing, here jurisdiction).

The Firm is not above the law, however much contempt Roche may have declared for it. Unless the Firm wishes uncharacteristically to do the right thing and simply withdraw, it is as subject to the process and procedure of this Court as anyone. The Trust has a right to test the veracity of Roche's admissions and plumb the depths of the Firm's misconduct, and the Court will need those matters fully developed to decide the proper course. Roche and his partners cannot be allowed to throw the integrity of this entire matter into question, then diminish or disclaim those disclosures, then hide behind a bald refusal to have them measured.

WHEREFORE, the Trust requests Roche Freedman, LLC be required to provide a substantive response to the Request for Production and Request for Admissions.

Respectfully submitted,

RIVERO MESTRE LLP
*Attorneys for Plaintiffs*
2525 Ponce de Leon Blvd., Suite 1000
Miami, Florida 33134
Tel.: (305) 445-2500
Fax: (305) 445-2505

By: /s/ Andrés Rivero
Andrés Rivero
Florida Bar No.: 613819
arivero@riveromestre.com
Alan H. Rolnick
Florida Bar No.: 715085
arolnick@riveromestre.com
Robert J. Kuntz, Jr.
Florida Bar No. 94668
rkuntz@riveromestre.com

## CERTIFICATE OF SERVICE

I certify that on October 18, 2022, a copy of this motion was served on all counsel of record by email, pursuant to Florida Rule of Judicial Administration 2.516(b)(1).

By: /s/ Andrés Rivero
ANDRES RIVERO

# Exhibit A

Case 9:18-cv-80176-BB   Document 945-7   Entered on FLSD Docket 03/10/2023   Page 9 of 112

|                                                                    | IN THE CIRCUIT COURT FOR THE 15TH JUDICIAL CIRCUIT IN AND FOR PALM BEACH COUNTY, FLORIDA |
|---|---|

RAMONA ANG, as Trustee of the MB
TULIP TRUST,

      Plaintiff,

        v.

IRA KLEIMAN, as Personal Representative
of the Estate of David Kleiman

      Defendant,

and

W&K INFO DEFENSE RESEARCH, LLC,
and LYNN WRIGHT,

      Nominal Defendants.

_____/

CASE   NO:   50-2021-CA-004758-XXXX-

## **MOTION TO DISQUALIFY ROCHE FREEDMAN LLP**

In a shocking series of extraordinary, recorded statements, Kyle W. Roche, founding partner of Roche Freedman LLP ("the Firm"), recently confessed to misusing and abusing the legal system to unlawfully advance the commercial interests of the Firm's undisclosed principal and benefactor, AVA Labs ("Ava"), by suing Ava's competitors and notable rivals in the cryptocurrency industry. One such abuse of process was the lawsuit the Firm filed against Dr. Craig Wright, which spawned and necessitated this action, in which the Firm is counsel of record to Defendant Ira Kleiman and nominal defendant W&K Info Defense Research, LLC ("W&K"). In light of Roche's admissions of the Firm's blatant misconduct, the Firm should be disqualified from any further representation of any party to this action.

1

The Firm's lawsuit that spawned this action, styled *Kleiman v. Wright,* Case No. 9:18-cv-80176-BB (S.D. Fla.), alleged a secret, oral partnership between Dr. Wright and Ira Kleiman's deceased brother, Dave Kleiman, to purportedly mine billions of dollars' worth of bitcoins. After a three-week trial last November, the jury rejected that claim and returned a verdict for Dr. Wright but awarded damages to co-plaintiff W&K (and nominal defendant here), on a claim that Dr. Wright and Dave Kleiman had equal interests in certain intellectual property owned by W&K. Essential to that claim were the Firm's shenanigans in re-activating W&K after Dave Kleiman died. This action seeks redress for those shenanigans. The Firm purported to represent W&K in *Kleiman v. Wright,* but failed to disclose their undisclosed principal and benefactor Ava, whose interests the Firm has secretly sought to advance for the last three years in that action, this one, and many others.

Roche recently confessed on camera to suing the rivals of Ava and its CEO, Emin Gun Sirer ("Gun"), by bringing harassing lawsuits, and fraudulent, purported class actions in the names of investors he referred to as "idiots." Roche admitted on camera that his business plan is never to settle a case, irrespective of his purported clients' interests, and instead to take all cases to trial (as the Firm did in *Kleiman v. Wright*), where liability and damages issues are decided by juries Roche also referred to as "idiots." He admitted that he does this to harm Ava's competitors, enforce Gun's personal vendettas, and keep regulators from investigating Ava, by keeping the SEC and CFTC busy investigating Ava's competitors (but not Ava) for, among other things, selling unregistered securities.

 On camera, Roche admits at length to a serious conflict of interest, undisclosed principals, a course of conduct that is unlawful on its face, and a fraud on the court in every case in which his firm has appeared, including this one. He admits that he not only brings cases for

manifestly improper purposes and ignores the interests of his purported clients to further his and

Ava's undisclosed interests, but also leverages the litigation process to learn (and misuse) for

Ava's benefit the confidential information and trade secrets of those he sues. He admits that he

does all this for the express purpose of advancing the interests of the Firm and his benefactor

Ava, to enforce the personal vendettas of Ava's Gun, as well as "for sport."

After Roche's on-camera statements were posted by a cryptocurrency whistleblower site

("Crypto Leaks"), Ava Labs proclaimed its innocence, Roche claimed he was drunk and taken

out of context when (apparently on separate occasions) he made these damning admissions,

***which he does not deny***, and attempted to personally withdraw from the Firm's fraudulent class

actions, in which the Firm now faces motions to disqualify.[1] Because of the Firm's misconduct

and undisclosed conflicts of interest, Dr. Wright has moved to disqualify the Firm from

representing Ira Kleiman on appeal from the verdict for Dr. Wright in *Kleiman v. Wright* (also

referred to here as "the federal case"), Case No. 22-11150-GG (11th Cir.). Roche's admissions of

the Firm's wrongdoing demonstrate its unlawful "business plan" and its ongoing efforts to

subvert the fair administration of justice, which heap scorn and disrepute upon the legal

---

[1] On August 31, 2022, one group of defendants in *In re Tether and Bitfinex Crypto Asset Litig.*,
1:19-cv-1936 (S.D.N.Y), moved to disqualify Roche Freedman. *See* Debevoise & Plimpton
letter, attached as part of Composite Exhibit A. On September 1, 2022, a second group of
defendants in that case moved for disqualification. *See id*. On September 2, 2022, Roche
Freedman opposed disqualification. *See id.* Also on September 2, 2022, the first group of
defendants replied in support of disqualification. *See id.* On September 2, 2022, Roche
Freedman's co-counsel moved to terminate Roche Freedman as putative class counsel, noting
that Roche Freedman had refused their request to withdraw. *See id*. More disqualification
motions have since been filed.

profession and every court (including this one) in which the Firm has appeared. The Firm should be dismissed from further representation of any party to this action.[2]

Specifically, after Dr. Wright moved to dismiss the complaint in the federal case arguing that it was legally deficient because of the absence of necessary party W&K, the Firm, acting for Ira Kleiman, filed an LLC Reinstatement for W&K (which had been administratively dissolved), listing Kleiman as registered agent. Thereafter, the Firm amended the complaint in the federal case to add W&K as a plaintiff, claiming that Ira Kleiman was W&K's managing member. As a direct result of this misconduct, Ramona Ang, as trustee of Tulip Trust, was required to file this action seeking a declaratory judgment as to the membership interests of the actual members of W&K, and an order directing Ira Kleiman to immediately cease all unauthorized activities and enjoining him from any taking any further actions that purport to be taken on W&K's behalf. Plaintiff Ramona Ang has standing to bring this motion,[3] which should be granted in the interests of justice.

## I.   **ARGUMENT**

On Saturday, August 27, 2021, extraordinary video recordings of Kyle Roche, founding partner of the Firm, were released on the internet. On camera, Roche expressly admitted to

---

[2] Defendant Ira Kleiman also is represented here by the well-respected firm of Boies, Schiller, et al. Removing Roche Freedman will not prejudice Mr. Kleiman or delay this case.

[3] The comment to Rule 4-1.7 states, "[w]here the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question." *Boca Raton Reg'l Hosp., Inc. v. Williams*, 230 So. 3d 42, 45 (Fla. 4th DCA 2017) ("[A] party may seek disqualification of opposing counsel where the conflict of interest involves representation of someone other than the movant and where it is such 'as clearly to call in question the fair or efficient administration of justice.'") (citing *State Farm Mut. Auto. Ins. Co. v. K.A.W.,* 575 So. 2d 630, 632 (Fla. 1991); *Zarco Supply Co. v. Bonnell*, 658 So.2d 151, 154 (Fla. 1st DCA 1995)).

conduct that violates his fundamental obligations as a lawyer. His statements amount to admissions of his and his firm's conflicts of interest under Rule 4-1.7 of the Florida Rules of Professional Conduct.[4] On camera, Roche admitted to bringing purported class actions in the names of purported class representatives, but actually acting on behalf of Ava—an undisclosed interested party—in which he bragged about having an enormously valuable financial stake. He also admitted that he files lawsuits to advance the financial interests, enforce the vendettas, and for the entertainment of his undisclosed benefactor and principal, Gun, Ava's CEO, as well as "for sport." In sum, on camera, Roche admitted to motives and conduct that plainly violate his fundamental obligation as a lawyer to not put his own interests before those of his clients.[5]

In the days since the recordings were posted: (1) Ava Labs released a statement claiming it would never "engage in the unlawful, unethical and just plain wrong behavior claimed in these self-serving videos . . . ," Emin Gün Sirer, *My Statement about the Crypto Leaks lies*, Medium (Aug. 29, 2022), https://el33th4x0r.medium.com/my-statement-about-the-crypto-leaks-lies-ef2005da752; (2) Roche publicly confirmed that the recordings are genuine, claiming he was "exploit[ed] using leading questions," and his statements were taken "out of context," Kyle Roche, *My Response*, Medium (Aug. 29, 2022), https://medium.com/@kyleroche/my-response-b691563c255b; (3) Roche filed motions to personally withdraw from two of his firm's class

---

[4] Although Roche is not admitted to practice in Florida, pursuant to Rules 1-3.1 and 1-3.10(a)(1) of the Rules Regulating the Florida Bar, the Firm, its Florida operations, and any lawyer "permitted to appear by this rule are subject to these Rules Regulating The Florida Bar while engaged in the permitted representation."

[5] Because "there is a substantial risk that the representation of 1 or more clients will be materially limited by [Roche's] responsibilities to another client, a former client or a third person or by a personal interest of [Roche]," he has an express conflict of interest under Florida Rule 4-1.7(a)(2).

actions against Ava's competitors; and (4) at least two of those competitors moved to disqualify him and his Firm in the *Tether* case. *See* Composite Exhibit A.

In his Motion to Withdraw from the *Tether* case, Roche stated that he "is no longer involved in [Roche Freedman's] class action practice." *See* Roche's Motion to Withdraw in *In re Tether,* 1:19-cv-1936 (S.D.N.Y) (D.E. 229 at 1), attached as part of Composite Exhibit A. Because Roche is a founder of Roche Freedman and his firm's practice concentrates on plaintiffs' class actions, this drastic step undermines his claim that the recordings misrepresented "the context" of his statements, and both underscores and heightens the disqualifying nature of those statements. Two *In re Tether* defendants have moved to disqualify Roche and the Firm. *See* Comp. Ex. A. Other such motions in other cases surely will follow.

Because Kyle Roche's own statements, now widely distributed on the internet by many outlets, are open and notorious, demonstrate a serious conflict of interest that calls into question the fair administration of justice in this matter, Ms. Ang and her counsel are compelled to seek the disqualification of Roche Freedman LLP.

### A.    THE FACTS

In 25 video clips released on August 27, 2022, Kyle Roche discloses and describes his Firm's close, improper, and previously undisclosed ties to Ava and its CEO, Gun. Roche says he founded the Firm the same day that Ava launched, on August 21, 2019, sharing the same co-working space. Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 1) (Aug. 26, 2022), https://d33wubr fki0l68.cloudfront.net/1a432cb907f50390478d5c7b5c2c30c24547d110/5ca00/videos/c3-00-office-ava-labs-launch.mp4. Roche says he was the third shareholder in Ava (after its founders, Gun and COO Kevin Sekniqi). Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC*

*in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 2) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/ba470e47132c5cb938f344be9ffd8261adc0eca2/6c3ea/videos/c3-01-office-deal-for-perc-token-supply.mp4.

On camera, Roche says he owns 1% of Ava Labs tokens and shares, which are worth tens, if not hundreds, of millions of dollars.[6] Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 3) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/96d2fbedbfb4ac619f2656ce923aa707cfca9cbe/3d59f/videos/c3-02-office-i-got-1-point-on-both.mp4. He admits his personal bias to favor Ava, and states that he has "the same interest, same goals" as Gun and Sekniqi, whom he "trust[s] like brothers." Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 5) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/61dabcad45d46c6207e4acded4ab34a49a0aa163/fc7a7/videos/c3-04-office-same-interests-same-goals.mp4.

> KR: Obviously, I'm biased. I have an interest in Ava Labs and I . . .
> Q: You have a stake in Ava Labs?
> KR: Yes.
> Q: How big?
> KR: I can't . . .  A big one. I did very well.

Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 3) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/96d2fbedbfb4ac619f2656ce923aa707cfca9cbe/3d59f/videos/c3-02-office-i-got-1-point-on-both.mp4. Roche says he now lives with Sekniqi in Miami for tax purposes. Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche*

---

[6] The market capitalization of AVAX tokens currently is $5.7 billion and has been as high as $30 billion in the past year. Avalanche Price (AVAX/USD) | Today's Price, TIME https://time.com/nextadvisor/investing/cryptocurrency/price/avalanche-avax/.

*Freedman* (video 7) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/789531f0f9b4b 55626c52801967703b1968bca18/b171a/videos/c3-06-office-i-live-with-kevin-in-miami.mp4.

### 1. The Firm Sues Ava's Competitors Using Straw Plaintiffs

Roche said he uses litigation as a "strategic instrument to support" Ava. Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 6) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/a799bb8bcde3170c 313e3ad7662a41148621c4d1/2fbf3/videos/c3-05-office-litigation-is-a-strategic-instrument.mp4.

He expressly admits that he sued Ava Labs' competitors, including Solana and Dfinity, without naming Ava Labs as a plaintiff, using purported class representatives to conceal his undisclosed principals, who, along with himself, are real parties in interest in these actions:

> Q: Has Ava Labs filed a complaint against one of their competitors?
> KR: **No, they have me to do that on behalf of the class Their name was never** . . .
> X: Explain.
> KR: **So, I can sue Solana** . . .
> X: Yeah.
> KR: **but a plaintiff will purchase Solana**.
> X: And what about Dfinity?
> KR: Oh yeah.

Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 19) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/ b4a2e7900f289e01ce2b25dfa5a254850a22496d/e7035/videos/c3-17-i-can-sue-solana.mp4 (emphasis added); Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 17) (Aug. 26, 2022), https:// d33wubrfki0l68.cloudfront.net/b660cb79f51a071ece800cda7fc3521e5e21a59d/0467e/videos/c3- 16-0-dfinity-is-a-competitor-to-avalanche.mp4 (Dfinity also is a competitor of Ava).

## 2.    The Firm Uses Other Improper Tactics to Benefit Ava

On camera, Roche brags about harassing "Emre Crypto,"[7] a Turkish "top competitor" of Gun and AVA, causing him to be "tagged" coming into the United States and recording that service of process, which Roche says Gun "enjoys" watching "once a month." Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 14) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/ccce812b0d07fc6c1bb9928d1a7a99db011ed1af/13125/videos/c3-13-gun-watches-video-once-a-month.mp4. He also boasts that **"I took down one of Gun's biggest arch-nemeses. The guy who claimed to be Satoshi, Craig Wright."** Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 15) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/54bcd83ef86e546fa4f97c2e481fba064e228c8d/483a3/videos/c3-14-gun-goes-after-craig-wright.mp4 (emphasis added).

On camera, Roche further admits that the Firm has developed and executed a strategic plan to feed tips against Ava's competitors to regulatory authorities in such volume that the regulators are drawn away from scrutinizing Ava's activities. Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 10) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/1edf92baa6d2ec8203a8568c7869ef5e4b326a71/428f7/videos/c3-09-magnets-for-sec-and-competitive-attacks.mp4 ("KR: yes, yeah, I deal with making sure that the SEC has . . . the SEC and the CFTC have other magnets to go after. . . ."); Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy*

---

[7] In the videos, Roche refers to him as "Emre Crypto." His actual name is Emre Aksoy, and he goes by the assumed name of "Kripto Emre." *See* Roche Freedman's press release about serving him at Miami Int'l Airport: https://www.rochefreedman.com/crypto-thought-leader-cant-duck-ceos-defamation-claims/

*with Bought Law Firm, Roche Freedman* (video 11) (Aug. 26, 2022), https://d33wubrfki0l68. cloudfront.net/91987bc2f582f24ecb688ab4c137a485d139dfe1/b4646/videos/c3-10-office-theres-no-such-thing-as-regulation.mp4 (". . . . since [Gun] signed me up, I've ensured that there's no such thing as regulation for what they want to do.").

###     3.      Roche Elevates His Personal Interests Above His Clients' Interests

On camera, Roche brazenly states that "I'm a crazy motherf*cker and I have resources and I will take you to the end [in a lawsuit]." Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 18) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/2f1313a474fff7dedbb5432d16e848725ce51e04/ 4f9ab/videos/c3-16-im-a-crazy-motherfucker.mp4. He says "that is power and that is what I think is a tool that has not been unlocked by very many . . . ." *Id.* He also says that because of his personal stake in Ava, "I have to ability to say 'look it's not about the money anymore for me it's about taking you guys to trial and **the sport of it**.'" Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 19) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/b4a2e7900f289e01ce2b25dfa5a254850a 22496d/e7035/videos/c3-17-i-can-sue-solana.mp4 (emphasis added).

Roche says he does not "think there's any reason to settle for less than half a billion to a billion but . . . if we get $100 million settlement we are in the front page of all the legal press and so it's good for me and my partners and my firm." Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 23) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/6ab1d54cf47b4b43a28ec4d52d2a12be50 78b5d7/8826b/videos/c3-21-no-reason-to-settle-less-than-500m.mp4. Completely absent from

Roche's explanation of his approach to litigation is any consideration of his clients' interests or their right to decide to settle or not settle.

### 4.    Roche Demonstrates Utter Contempt for the Administration of Justice

By his own admission, Roche operates without respect for his role as an attorney or his duties as an officer of the Court. Discussing jury trials, he says "what you do is, metaphorically, you pull down your pants and you tell your jury, 'here is my c*ck, now you talk . . . pull down your pants a little bit . . . .'" Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 21) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/251c0d83886aba0804637ca9f8819e12adb26238/ab979/videos/c3-19-show-me-your-cock.mp4.

Of the jury, Roche derisively states "that 10 idiots control the flow of all the money that happens in American class actions." Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 22) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/f580f15300ae3305352a21a810a4cbce4b1247a7/73e42/videos/c3-20-ten-idiots-control-the-flow.mp4. About putative class members, as to whom he is a fiduciary, he says that "I go to the Court, and I say, hey 'I got $100 million for these 100,000 idiots out here. Give me . . . give me $30 million and I will administer . . . .'" Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 24) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/ca154b2403c4f503206afd0666cf4694c23c8dd3/de306/videos/c3-22-these-100000-idiots.mp4.

### B.    THE LAW

On camera, Roche repeatedly emphasized that his personal interests come before his clients, which violates Florida Rule of Professional Conduct 4-1.7(a)(2), prohibiting

representation of a client when "there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."

When Roche says he will not settle any case and insists on going to trial to extract a larger settlement, or settles because of publicity for the Firm, he admits to expressly putting his and the Firm's interests ahead of those of his clients. The plain import of his claim that his newfound wealth frees him from the constraints on plaintiffs' lawyers is that his wealth allows him to disregard his clients' interests in the settlement process.

On camera, Roche states directly and unequivocally that he sues Ava's competitors (at its behest) in the names of straw plaintiffs and does so by filing class actions. This is, at a minimum, Rule 404(b) evidence that Roche is engaged in a pattern and practice of secretly representing Ava's and Gun's interests by using straw plaintiffs to conceal the real parties in interest. After Roche's on-camera admissions, there is a sound basis for concluding that in attempting to "take down" Gun's arch-nemesis, Dr. Craig Wright (defendant in the federal case brought by the Firm), Roche and the Firm have been acting for the benefit of Ava and Gun, who were undisclosed interested parties. Roche's admitted conduct as to "Emre Crypto," discussed above in Section 1.A.2, demonstrates an abuse of process akin to what appears to have happened to Dr. Wright, which necessitated this case. In these circumstances, Ms. Ang should be permitted to obtain all pertinent discovery, and the Court should hold an evidentiary hearing on this motion after the completion of discovery. Indeed, in *Tether,* the Firm itself has requested discovery and a hearing on the evidence regarding these very issues. *See* the Firm's letter dated September 2, 2022 attached as part of Composite Exhibit A. Discovery requests in this case are forthcoming.

12

On camera, Roche admitted to other improper conduct in furtherance of Ava's interests, including sharing with Ava the discovery obtained in the Firm's class actions against Ava's competitors (surely in violation of confidentiality orders), distracting regulators from Ava by feeding them incriminating information about Ava's competitors, and, as noted, harassing Gun's "nemeses"—such as videotaping service of process on "Emre Crypto," Gun's principal Turkish competitor—for Gun's viewing pleasure. Roche's discussion of Dr. Wright (Cryptoleaks, Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman (video 15) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/54bcd83ef86 e546fa4f97c2e481fba064e228c8d/483a3/videos/c3-14-gun-goes-after-craig-wright.mp4), strongly suggests that the federal case was motivated by Gun's rivalry with Dr. Wright.

In addition to demonstrating fundamental conflicts that Rule 4-1.7 prohibits, Roche's admitted, serial misconduct flouts and fundamentally offends the core responsibilities imposed on every lawyer to uphold the dignity of the courts, and to treat litigants and other counsel forthrightly and with respect. Florida Rule 4-8.4 embodies these obligations, which Roche has, through his statements, expressly abjured.

Florida Rule 4-8.4 bar attorneys from engaging "in conduct involving dishonesty, fraud, deceit, or misrepresentation." Roche has confessed to bringing pretextual lawsuits, for improper purposes, on behalf of undisclosed shadow clients. Florida Rule 4-8.4(d) prohibits "conduct that is prejudicial to the administration of justice." But Roche—in a shameful display that inherently prejudices the administration of justice in any court where he appears—has publicly denounced his purported clients and all jurors as "idiots," declared himself "crazy," and denigrated the entire jury-trial and class-action system as nothing more than a cynical competitive tool.

The Court need not and should not tolerate this improper conduct by attorneys who appear before it. *McGillis v. Dep't of Child. & Fam. Servs.,* 738 So. 2d 1023 (Fla. 3d DCA 1999) (citing *S.Y. v. McMillan*, 563 So.2d 807 (Fla. 1st DCA 1990) ("A court has the inherent power to control the conduct of its own proceedings in order to preserve order and decorum in the courtroom, to protect the rights of parties and witnesses, and to generally further the administration of justice.")); *Petition of Fla. Bar*, 61 So.2d 646, 647 (Fla. 1952) ("[R]egularly constituted courts have power to do anything that is reasonably necessary to administer justice within the scope of its jurisdiction, but not otherwise. Inherent power has to do with the incidents of litigation, control of the court's process and procedure, control of the conduct of its officers and the preservation of order and decorum with reference to its proceedings."); *In re Pub. Def.'s Certification of Conflict and Mot. to Withdraw Due to Excessive Case Load and Mot. for Writ of Mandamus*, 793 So.2d 1, 3 (Fla. 2d DCA 1998) ("Where litigants or attorneys have substantially interfered with the orderly process of judicial administration, courts may, and should, exercise their inherent authority to prevent abuse of the judicial system by, among other things, barring the offending party from filing further proceedings."). Here, the continued presence of Roche's Firm in this matter would be an ongoing affront and insult to the Court, the judges and lawyers who labor there, and the litigants who come before it seeking a dignified process and justice.

Lastly, Roche's misconduct must be imputed to the Firm. Florida Rule 1.10 states that "[w]hile lawyers are associated in a firm, none of them may knowingly represent a client when any 1 of them practicing alone would be prohibited from doing so by Rule 4-1.7 or 4-1.9 . . . ." Roche directs the affairs of the boutique Firm that bears his name, which lists 24 lawyers on its website as of this writing. He "lead[s] the Roche Freedman team appointed as lead counsel in over 15 class actions" and "build[s] its] legal strategies." *See* https://www.rochefreedman.com/

14

attorneys/kyle-roche/, last visited Sept. 5, 2022. From the videos, it is evident that the interests Roche seeks to protect by his confessed misconduct are not merely his own, but the interests of the entire Firm. Accordingly, Roche's conflicts not only warrant his disqualification, but also warrant disqualification of his partners and the Firm.

Disqualification of the Firm will not leave defendant without adequate representation. Andrew Brenner of Boies, Schiller is a highly capable lawyer who has been co-counsel to the Firm in this action, and the Firm's clients will suffer no harm whatsoever from the fully warranted removal of the Firm from any further role in this matter.

**II.    CONCLUSION**

For all these good and sufficient reasons, the Court should disqualify Roche Freedman LLP from any further involvement in this matter and should order such other and further relief as is warranted.

Respectfully submitted,

RIVERO MESTRE LLP
*Attorneys for Plaintiffs*
2525 Ponce de Leon Blvd., Suite 1000
Miami, Florida 33134
Tel.: (305) 445-2500
Fax: (305) 445-2505

By: /s/ Andrés Rivero
    Andrés Rivero
    Florida Bar No.: 613819
    arivero@riveromestre.com
    Alan H. Rolnick
    Florida Bar No.: 715085
    arolnick@riveromestre.com
    Robert J. Kuntz, Jr.
    Florida Bar No. 94668
    rkuntz@riveromestre.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 9, 2022, a copy of this motion was served via e-mail, pursuant to

Florida Rule of Judicial Administration 2.516(b)(1), on all counsel of record.

By: <u>/s/ Andrés Rivero</u>
ANDRES RIVERO

# Composite Exhibit A

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

DAVID LEIBOWITZ, BENJAMIN
LEIBOWITZ, JASON LEIBOWITZ, AARON
LEIBOWITZ, and PINCHAS GOLDSHTEIN,

      Plaintiffs,

v.

IFINEX INC., BFXNA INC., BFXWW INC.,
TETHER HOLDINGS LIMITED, TETHER
OPERATIONS LIMITED, TETHER LIMITED,
TETHER INTERNATIONAL LIMITED,
DIGFINEX INC., PHILIP G. POTTER,
GIANCARLO DEVASINI, LUDOVICUS JAN
VAN DER VELDE, REGINALD FOWLER,
CRYPTO CAPITAL CORP., and GLOBAL
TRADE SOLUTIONS AG,

      Defendants.

CASE NO. 1:19-cv-09236-KPF

## NOTICE OF MOTION TO WITHDRAW AS COUNSEL

PLEASE TAKE NOTICE that Kyle W. Roche, Esq. of Roche Freedman, LLP ("RF")

respectfully moves the Court pursuant to Local Rule 1.4 to withdraw as one of the attorneys for

the Proposed Class. Mr. Roche is no longer involved in RF's class action practice. Accordingly,

pursuant to Local Rule 1.4, Mr. Roche respectfully requests to no longer receive docketing

notifications *via* the ECF system. Mr. Roche also asks that the Court approve this withdrawal.

DATED: August 31, 2022          Respectfully Submitted,

**ROCHE FREEDMAN LLP**

*/s/ Kyle W. Roche*
Kyle W. Roche
99 Park Avenue, 19th Floor
New York, NY 10016

kyle@rochefreedman.com

*Interim Lead Counsel and Attorneys for Plaintiffs and the Proposed Class*

SO ORDERED this _____ day of _____, 2022.

_____

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on August 31, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

*/s/ Kyle W. Roche*
Kyle W. Roche



**Debevoise & Plimpton LLP**
919 Third Avenue
New York, NY 10022
+1 212 909 6000

August 31, 2022

<u>BY ECF AND EMAIL</u>

The Honorable Katherine Polk Failla
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

*Re: In re Tether and Bitfinex Crypto Asset Litigation*, No. 19 Civ. 9236 (S.D.N.Y.)

Dear Judge Failla:

We represent the B/T Defendants in the above-referenced matter and write in response to Plaintiffs' Motion for Kyle W. Roche to Withdraw as Attorney. (Dkt No. 229.) Mr. Roche's motion comes immediately following the public disclosure of a series of videos of Mr. Roche suggesting that he and his law firm are misusing the litigation process. Mr. Roche apparently has an enormous stake in a crypto company called Ava Labs, Inc., files class action lawsuits against companies in the crypto space for the purpose of harming competitors of Ava Labs, and uses market intelligence gathered through the discovery process for the benefit of Ava Labs. The videos also show Mr. Roche making several disparaging remarks about juries, class members, and the class-action process in the United States.[1]

Mr. Roche's statements raise grave concerns for the B/T Defendants regarding the motivations behind filing this lawsuit, the purpose for which certain discovery has been sought, and whether the highly sensitive, confidential information the B/T Defendants have provided is being misused. That Mr. Roche, who initially claimed that his comments were taken out of context, has now announced that he "is no longer involved" in his firm's class action practice further heightens those concerns.

The B/T Defendants' concerns are not addressed by Mr. Roche's individual withdrawal as counsel of record in this matter. Accordingly, the B/T Defendants respectfully request that Mr. Roche's firm, Roche Freedman LLP, be terminated as counsel in this case, and that Mr. Roche and Roche Freedman LLP certify to this Court that they (*i*) have returned or destroyed all documents and information produced by Defendants in this lawsuit and (*ii*) have not shared any such documents or information with Ava Labs or any other third party.

---

[1] *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman*, CRYPTO LEAKS (Aug. 26, 2022), available at https://cryptoleaks.info/case-no-3 [https://perma.cc/N433-63SC].

The Honorable Katherine Polk Failla      2      August 31, 2022

## I.    The Kyle Roche Video.

Mr. Roche's withdrawal motion comes on the heels of a high profile investigative exposé published by the Crypto Leaks website on August 26, 2022 that includes a series of video clips in which Mr. Roche, a founding partner of the Roche Freedman firm, makes a number of highly disturbing comments about his significant financial interest in Ava Labs and his misuse of class action litigation. Among other things, Mr. Roche states that:

- He personally owns approximately 1% of the Avalanche tokens ("AVAX") issued by Ava Labs, as well as 1% of the equity in Ava Labs. (That interest is worth tens of millions, if not hundreds of millions of dollars: the market capitalization of AVAX tokens is currently $5.7 billion and has been as high as $30 billion in the past year.)

- He uses litigation as "a strategic instrument to support Ava Labs," which he states is "a completely different way than being a lawyer." Litigation, according to Mr. Roche, is "a fantastic tool to competition."

- Ava Labs does not file complaints against its competitors, but instead "they have me do that on behalf of the class."

- By filing lawsuits against competitors of Ava Labs, Mr. Roche "deal[s] with making sure that . . . the SEC and the CFTC have other magnets to go after," thereby protecting Ava Labs from regulatory scrutiny.

Mr. Roche's statements also give rise to a serious concern that he may be abusing the discovery process and misusing information that he learns through litigation. He states that he is Ava Lab's "crypto expert" because he "*sue[s] half the companies in the space*" and "know[s] where this market is going" because he has "*seen the insides of every single crypto company*." These concerns resonate strongly in this case, where Plaintiffs have served a number of document requests seeking information that has no apparent link to the claims and defenses in this lawsuit. For example, Plaintiffs have sought documents related to numerous entities and individuals with whom the B/T Defendants have business relations, as well as all documents related to the B/T Defendants' investments in other crypto companies, their efforts to raise equity and to obtain loans, and a wide array of financial information unrelated to the issues raised by Plaintiffs' complaint.

More broadly, Mr. Roche disparages the putative class members whom he seeks to represent – and to whom he and his firm owe a fiduciary duty – as "100,000 idiots out there" and dismissively refers to juries as "10 idiots" who "control the flow of all the money that happens in American class actions."

The Honorable Katherine Polk Failla      3      August 31, 2022

Mr. Roche has publicly confirmed that the recordings are genuine. He claims that he was "exploit[ed]" using "leading questions," and that his statements were taken out of context.[2]

## II.    Mr. Roche's Motion to Withdraw Does Not Adequately Address the Concerns Raised by the Kyle Roche Video.

In his Motion to Withdraw, Mr. Roche states that he "is no longer involved in [Roche Freedman's] class action practice." (Dkt. No. 229 at 1.) That is an extraordinary statement given that Mr. Roche is a founder of Roche Freedman LLP and the "class action practice" represents the vast majority of his firm's work. Such a drastic step is inconsistent with Mr. Roche's suggestion that his videotaped statements were taken out of context, and it validates the serious concerns caused by those statements. Indeed, it heightens those concerns.

The individual withdrawal of Mr. Roche, however, does little if anything to address the serious issues regarding the potential misuse of discovery and class action lawsuits generally. Even if he is no longer counsel of record, he would still have access to discovery materials, would retain the ability to direct the conduct of other lawyers at his firm, and would profit from any potential recovery in this lawsuit. Moreover, any conflict of interest impacting Mr. Roche is imputed to his entire firm. And, in fact, it appears that other lawyers at Roche Freedman who have entered appearances in this litigation – including Devin "Vevel" Freedman, Amos Friedland, and Edward Normand – may also own substantial amounts of AVAX tokens and have similar involvement with Ava Labs.[3]

Accordingly, the B/T Defendants respectfully request that, in response to Mr. Roche's motion to withdraw, the Court order that the entire firm of Roche Freedman LLP be terminated as counsel in this case. Such a removal would not prejudice Plaintiffs, as they would remain represented by two other large and experienced firms: Selendy Gay Elsberg PLLC and Schneider Wallace Cottrell Konecky LLP.

In order to protect the highly sensitive information that Defendants have produced in discovery, the B/T Defendants also respectfully request that the Court issue an order requiring Mr. Roche and Roche Freedman LLP to certify that they (*i*) have returned or destroyed all documents and information produced by Defendants in this lawsuit and (*ii*) have not shared any such documents or information with Ava Labs or any other third party. The documents produced by the B/T Defendants and other parties in this litigation are highly sensitive, as they include not only confidential, competitively sensitive information about Defendants' businesses but also information that, if disclosed, would threatens the privacy and security of Defendants and their

---

[2]   *See* Kyle Roche, *My Response*, MEDIUM (Aug. 29, 2022), available at https://medium.com/@kyleroche/my-response-b691563c255b [https://perma.cc/WH2G-ZD8B].

[3]   Crypto Leaks (@CryptoLeaksInfo), TWITTER (Aug. 29, 2022, 5:44 A.M.), https://twitter.com/CryptoLeaksInfo/status/1564187241949298688.

The Honorable Katherine Polk Failla          4                    August 31, 2022

customers.  The Court has already recognized the importance of protecting information about cryptocurrencies and related accounts and wallets.  (Dkt. No. 195.)

*     *     *

We thank the Court for its consideration.


Respectfully submitted,

/s/ Elliot Greenfield

LAW OFFICES OF

MᴄNᴀᴜʟ Eʙᴇʟ Nᴀᴡʀᴏᴛ & Hᴇʟɢʀᴇɴ
A Pʀᴏꜰᴇssɪᴏɴᴀʟ Lɪᴍɪᴛᴇᴅ Lɪᴀʙɪʟɪᴛʏ Cᴏᴍᴘᴀɴʏ

600 UNIVERSITY STREET, SUITE 2700
SEATTLE, WASHINGTON 98101-3143
Tᴇʟᴇᴘʜᴏɴᴇ: (206) 467-1816
Fᴀᴄsɪᴍɪʟᴇ: (206) 624-5128

Gʀᴇɢᴏʀʏ J. Hᴏʟʟᴏɴ                                                 E-ᴍᴀɪʟ: GHᴏʟʟᴏɴ@MᴄNᴀᴜʟ.ᴄᴏᴍ
                                                                          Direct (206) 389-9348

Tɪᴍᴏᴛʜʏ B. Fɪᴛᴢɢᴇʀᴀʟᴅ                                         E-ᴍᴀɪʟ: TFɪᴛᴢɢᴇʀᴀʟᴅ@MᴄNᴀᴜʟ.ᴄᴏᴍ
                                                                          Direct (206) 389-9338

September 1, 2022

**VIA ECF**

The Honorable Katherine Polk Failla
United States District Court for the
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:     **In re Tether and Bitfinex Crypto Asset Litigation**
        **No. 19 Civ. 9236 (S.D.N.Y.)**

Dear Judge Failla:

Together with O'Melveny & Myers, we represent Defendant Bittrex, Inc. in the referenced matter. Defendant Poloniex LLC, represented by Nelson Mullins, also joins in this letter (Bittrex and Poloniex are collectively "the Exchange Defendants"). We write to join in the requests made by the B/T Defendants in responding to Plaintiffs' Motion for Kyle W. Roche to Withdraw as Attorney (Dkt. No. 229) – namely, (1) that Roche Freedman LLP be terminated as counsel in this case, and (2) that both Mr. Roche and Roche Freedman LLP certify, in connection with their termination, that they have returned or destroyed all documents and information produced by the Exchange Defendants and that they have not shared any of those documents or information with any third party.

In the video recordings released by Crypto Leaks, Mr. Roche states that "litigation is an underused tool," and confirms that he has used class action litigation as a "strategic instrument" to support non-party Ava Labs, a cryptocurrency company in which he and other Roche Freedman attorneys maintain a substantial interest. He states that he has used litigation against other participants in the cryptocurrency space to further the interests of Ava Labs. He goes on to state that he is Ava Labs' "crypto expert . . . because I sue half the companies in the space" and brags that he has "seen in the insides of every single crypto company." Mr. Roche describes himself in one of the videos as a "crazy mother****er" who will "take you to the end" to get a

The Honorable Katherine Polk Failla
September 1, 2022
Page 2

piece of paper saying "I own your company now," and describes that "power" as "a tool that has not been unlocked by many."

Mr. Roche's statements raise troubling questions about his firm's use of the discovery process in this matter. As the Court is aware, Plaintiffs amended their complaint in June 2020 to add the Exchange Defendants. *See* Dkt. No. 114. The Amended Complaint relies heavily on allegations that the B/T Defendants owned or controlled certain accounts on the Exchange Defendants' platforms, including specifically the "1AA6" account on Bittrex and the "1J1d" account on Poloniex, incorrectly describing those accounts as the "Bitfinex deposit address(es)." *Id.* at ¶ 207. In response to those allegations, the Exchange Defendants provided Mr. Roche and his colleagues conclusive evidence, including a sworn declaration from the actual holder of the supposed "Bitfinex deposit address(es)," that the accounts in question are not and never have been owned or controlled by the B/T Defendants; instead, they have always been exclusively owned and controlled by a foreign arbitrage trader who has no relation to the B/T Defendants. The Exchange Defendants have identified that trader, provided sworn testimony from him about his arbitrage activities, and produced documents proving that the relevant accounts are—contrary to the allegations in the Amended Complaint—not owned or controlled by the B/T Defendants.

Notwithstanding the arbitrage trader's sworn testimony about his trading, Plaintiffs say that they cannot yet re-evaluate their claims against the Exchange Defendants because "[f]ull discovery, from all Defendants, is needed to test the assertions in the Anonymous Declaration." Plaintiffs say that such discovery must include "documents and deposition testimony not only from the declarant, but also from the Exchange Defendants, Bitfinex, and their affiliates." Dkt. No. 181 at 2.

The Exchange Defendants have worked diligently in preparing a substantial production of documents to Plaintiffs.[1] Mr. Roche's recent statements raise serious concerns about the intent behind such discovery and how it will be used. While the Exchange Defendants appreciate that a protective order has been entered in this matter and that attorneys can be expected to comply with such orders, Mr. Roche's statements make clear that he has already used confidential materials produced in litigation for improper purposes. Moreover, the Court previously recognized that the protective order is not sufficient protection for certain information Defendants have produced. *See* Dkt. No. 195. Under the circumstances, simply accommodating Mr. Roche's withdrawal is not sufficient. He remains a member of Roche Freedman, and it must be assumed that, just as the actions he described in the recently released videos benefited Mr. Roche, his firm, and Ava Labs, any further access by Roche Freedman to the highly confidential materials produced in this matter may be subject to similar misuse.

For the above reasons, the Exchange Defendants respectfully join in the B/T Defendants' requests that (1) Roche Freedman LLP be terminated as counsel in the matter, and (2) Roche

---

[1] Plaintiffs originally proposed nearly 300 search terms to each of the Exchange Defendants, many of which related to broad aspects of the cryptocurrency industry but did not appear related to any of the claims or defenses in this matter.

The Honorable Katherine Polk Failla
September 1, 2022
Page 3

Freedman LLP be required to certify that is has destroyed all documents produced by the Defendants in this matter, and that no such materials remain in the possession, custody, or control of any principals, agents, or employees of the firm.

Given these revelations, the Exchanges Defendants reserve the right to pursue additional relief as they obtain more information.

Respectfully,

Gregory J. Hollon
Timothy B. Fitzgerald

GJH/TBF:ln



September 2, 2022

**VIA ECF**

The Honorable Katherine Polk Failla
United States District Court for the
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:     *In re Tether and Bitfinex Crypto Asset Litigation,* **19 Civ. 9236 (S.D.N.Y.)**

Dear Judge Failla:

We write in response to Defendants' August 31, 2020 letters asking the Court to disqualify Roche Freedman LLP ("Firm") as co-lead counsel for Plaintiffs based on statements made by Kyle Roche. We respectfully submit the Court should deny Defendants' request.

A.  **RELEVANT BACKGROUND**

On January 27, 2022, Mr. Roche attended a meeting in London to facilitate a potential venture capitalist investment. Mr. Roche believed he was attending that meeting to pursue the interests of a technology start-up initiative. But it now appears the meeting was actually a set up orchestrated by a defendant in a different class action the Firm is pursing. Roche Decl. ¶ 2.

Unfortunately, at that meeting, Mr. Roche made untrue statements apparently intended to impress the participants at the meeting. He also made inappropriate remarks disparaging jurors and class members.

As demonstrated below, the statements with which Defendants take issue are not just false, they are *demonstrably* false. Nonetheless, to protect against even the appearance of impropriety, and to avoid unnecessary distraction from the merits of this case, Mr. Roche has withdrawn from this case and the Firm has removed him from its entire class action practice. Mr. Roche has also been screened from the Firm's class actions (this case included). Finally, to ensure there is no optical concern whatsoever, Mr. Roche has also forfeited any financial interest in this litigation.

It's no surprise, however, that Defendants are using it as a litigation tactic to disqualify the entire Firm. The Firm has one of the leading litigation practice groups in this space, understands the technology exceptionally well, originated the case theory, was retained by every single client in this action, and drafted and filed the original complaint.

The Honorable Katherine Polk Failla
September 2, 2022
Page 2 of 5

## B. **THE STATEMENTS**

1. **The Firm did not use this litigation as a strategic instrument to support Ava Labs, did not file this action at Ava Labs' request, and any interest in Ava Labs or AVAX tokens doesn't present a conflict.**

The notion that Roche Freedman decided to pursue this case in order to further the interests of Ava Labs is plainly false. First and foremost, the Firm's retention in this case by the three original named plaintiffs - Jason Liebowitz, Benjamin Liebowitz and Aaron Liebowitz - pre-dates Ava Lab's retention of the Firm. Indeed, when the Firm filed the 95-page complaint in this matter, Ava Labs had only been a Firm client for a matter of days. Moreover, at that time, Ava Labs was a relatively unknown start up and the AVAX crypto-asset was not existent. The idea, therefore, that the Firm filed this case for Ava Labs, is both impossible, nonsensical, and untrue.

In fact, shortly after this incident unfolded, Ava Labs' CEO issued a statement confirming that "[n]either I, nor anyone else at Ava Labs ever directed Roche in his selection of cases."[1]

Further, Defendants' suggestion that a disqualifying conflict of interest exists owing to the fact that some Roche Freedman lawyers own AVAX tokens, or have a personal equity interest in Ava Labs, is meritless. The result of this lawsuit would not have any particularized effect on Ava Labs or the AVAX crypto-asset. Ava Labs and AVAX do not compete with the Exchange Defendants, Tether, Bitfinex, or USDT. In fact, Tether and Bitfinex leverage the AVAX ecosystem and support its efforts.[2] And the Exchange Defendants facilitate the sale of AVAX on their platforms.

But even if Defendants are competitors of Ava Labs or AVAX (they are not), it does not create a disqualifying conflict here. Lawyers that sue Microsoft on behalf of a class do not need to disclose that they hold shares in Apple. That's because "the mere existence of financial or business interests does not warrant disqualification." *Power Play 1 LLC v. Norfolk Tide Baseball Club, LLC,* No. 17CV4831, 2017 WL 5312193, at \*4 (S.D.N.Y. Nov. 13, 2017). "Rather, there must be a 'significant risk' that these interests will 'adversely affect[ ]' the lawyer's exercise of professional judgment on behalf of the client." *Id*. (citing N.Y. Rule of Prof'l Conduct 1.7(a)(2) (finding that even though a lawyer's financial arrangement simply seemed "unseemly," the movant failed to explain how the lawyer's "financial and business interests . . . would impair his professional judgment or how it was adverse to Defendants' interests"). Defendants have done nothing to show such a "significant risk" exists in this case.

None of the co-lead counsel in this case is pursuing this litigation for any collateral purpose, and there is no basis for that assertion beyond Mr. Roche's improper and false statements (which themselves don't even specifically reference this case).

---

[1] https://el33th4x0r.medium.com/my-statement-about-the-crypto-leaks-lies-ef2005da752.
[2] https://medium.com/avalancheavax/tether-token-usdt-launches-on-avalanche-baf5a313f1a7.

The Honorable Katherine Polk Failla
September 2, 2022
Page 3 of 5

**2. There could not have been, and has not been, any sharing of confidential discovery material.**

Defendants' letter also voices a "concern" that Mr. Roche may be "misusing information that he learns through litigation" including information produced in this case. First and foremost, Mr. Roche and the Firm can confirm that no confidential discovery material has ever been shared with Ava Labs (or any third party). Roche Decl. ¶ 5. Nor would we ever do that.

Importantly, Mr. Roche's comments do not actually include a statement that he shared confidential discovery materials and he's explained that is not what he meant. The actual statement was:

> because I sue half the companies in the space, I know where the market is going, I believe, better than one of the top ten people in the world. I've seen the insides of every crypto company [video cuts mid-sentence].

Mr. Roche's declaration explains that what he intended to convey was that due to the numerous suits he has filed in this space, dozens of whistleblowers and other insiders have sent him information that has proved useful in pursuing class action claims. Roche Decl. ¶ 6.

**3. Mr. Roche's comments do not reflect the Firm's beliefs about jurors, class members, or class actions.**

The inappropriate comments Mr. Roche made regarding (i) jurors and class members, and (ii) his approach to class actions and intention on how and why to resolve them, do not reflect the view of the Firm or any of the other 24 other lawyers practicing at the Firm. Indeed, Mr. Roche only made these comments under the influence of alcohol.

Nonetheless, these statements are one of the reasons he has promptly withdrawn from this case, from the Firm's other class actions, and has been screened from them.

In sum, none of the alleged factual impropriety that Defendants frame as the foundation for their request to disqualify the Firm has actually occurred, and any optical issue should be cured based on Mr. Roche's withdrawal, screening, and forfeiture.

**C. DEFENDANTS' PURPORTED CONCERNS ABOUT THE DISCOVERY PROCESS DO NOT SUPPORT THE FIRM'S DISQUALIFICATION**

In support of their request to terminate the Firm as co-lead counsel, Defendants argue that Mr. Roche's statements "raise grave concerns . . . regarding the motivations behind filing this lawsuit for which discovery has been sought, and whether the highly sensitive, confidential information the B/T Defendants have provided is being misused." This claim cannot be squared with Defendants' later recognition in their letter that Plaintiffs in this action are also represented by two other law firms. In other words, even crediting Defendants' argument that Mr. Roche's statements raise concerns about the motives for initiating this lawsuit, the complaint was also

The Honorable Katherine Polk Failla
September 2, 2022
Page 4 of 5

signed by two other law firms who have conducted a good faith inquiry into the merits of this case
and the claims have already withstood a motion to dismiss.

The same is true of Plaintiffs' discovery requests, which Defendants characterize as having
"no apparent link to the claims and defenses in this lawsuit." Obviously Plaintiffs' disagree, but
more importantly, those discovery requests were reviewed and approved by the two other law
firms that Defendants' have already told the Court should remain in the case. We appreciate that
Mr. Roche's statements and the ensuing publicity have created a regrettable distraction, but they
do not provide a basis for *the Firm's* disqualification.

Moreover, to the extent Defendants intend to create a distraction or spend further time on
this issue, the Firm's removal from this action will not prevent them from pursuing these efforts.

**D.      THE FIRM'S STATUS AS CO-COUNSEL BENEFITS THE CLASS**

**1.  RF's continued participation in this case is in the best interests of the class.**

Roche Freedman's participation as co-lead counsel will continue to benefit the proposed
class. The Firm's lawyers who would remain working on the case include the principal lawyers
who helped formulate the original complaint, *i.e.*, Vel Freedman and Joseph Delich. In addition to
those two attorneys, many of the lawyers from the Firm that would remain on this case have the
most institutional knowledge of the facts and law underlying the case. Their contribution of many
thousands of hours on the case to date have been invaluable and their removal from the case would
be detrimental to the class's interest.

Finally, these same attorneys are those working on the Firm's many other crypto-related
cases and class actions. All of these facts thus stand to continue to benefit the named Plaintiffs and
the proposed class. The Court carefully appointed three firms to represent the named Plaintiffs,
considering their respective resources and areas of expertise, and those rationales continue to
counsel in favor of the three-firm team that has been working effectively to date.

**2.  The named plaintiffs request the Firm remain as co-lead counsel.**

The named Plaintiffs request that the Firm remain as co-lead counsel. This is reflected in
their attached affidavits. Jason Leibowitz Decl.; Benjamin Leibowitz Decl.; Aaron Leibowitz
Decl.; Matt Script Decl.; Pinchas Goldshtein Decl.

Having conceived of and filed the lawsuit, the Firm has the original and closest
relationships with the named Plaintiffs. These Plaintiffs understand the relevant facts, have
reviewed the videos, read both letters from Defendants, and are adamant the Firm remain on the
case. They all state that they do not believe or see how they, or the class, would benefit from
removing the Firm's crypto-related expertise from the current team of lawyers that have been
diligently prosecuting the case.

The Honorable Katherine Polk Failla
September 2, 2022
Page 5 of 5

Moreover, they have all signed declarations stating that they "have never heard or seen anything that would in anyway support the concerns raised by the Defendants." and that "RF has only ever been concerned about the best interests of the class."

These individuals have already dedicated a substantial amount of their time and energy to the case, and they intend to remain as lead Plaintiffs. Accordingly, we respectfully submit that their views are entitled to significant weight and their opinions should be considered by the Court.

\* \* \* \* \*

We note that what is in the best interests of the proposed class in this case overlaps with what the Firm believes is fair and equitable under the circumstances. In speaking as he did, Mr. Roche engaged in a serious lapse of judgment. However, the extreme remedy of disqualifying the entire Firm, which would have the effect of punishing all of the Firm's lawyers for Mr. Roche's lapse in judgment (which amounts to statements that were either untrue or misunderstood), seems disproportionate and unwarranted.

Finally, to the extent the Court is considering a formal request to disqualify Roche Freedman from this matter, we respectfully request that the Court first schedule a conference to address these issues and allow the Firm to submit additional evidence to address any specific concerns that the Court may have.

Respectfully submitted,

*/s/ Velvel (Devin) Freedman*

Devin "Vel" Freedman
Edward Normand
Joseph M. Delich
ROCHE FREEDMAN LLP
99 Park Avenue, 19th Floor
New York, NY 10016
vel@rochefreedman.com
tnormand@rochefreedman.com
jdelich@ rochefreedman.com

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re Tether and Bitfinex Crypto Asset Litigation | Case No. 19 Civ. 9236 (KPF) |

I, Kyle Roche, declare as follows:

1.      I am a partner at Roche Freedman LLP ("Firm").

2.      I have reviewed the videos referenced by the Defendants in this action. Those videos were illegally taken without my knowledge or consent during meetings that occurred in in London on January 27, 2022. I was invited to London under the false pretense of pitching a venture capital investment, but I now understand that the real reason I was brought there was through a scheme that was executed by a defendant in a different lawsuit the Firm recently filed. The purpose of this scheme was to surreptitiously obtain comprising recordings of me.

3.      I deeply regret making many of the statements I made during these meetings as they are not only inconsistent with the manner in which I have practiced law, but also because some of the statements were false.

4.      The Firm has never filed a class action at the direction of or for the benefit of another Firm client. This case is no exception. The sole reason we filed this action was for the benefit of the named plaintiffs in this action and the other members of the class. We filed the action at the direction of the named plaintiffs. We have not shared any confidential information from this lawsuit with any third party, including other clients of the firm.

5.      I have never disclosed or used, for any collateral purpose, any confidential information from any lawsuit—including this lawsuit. Indeed, at the time the recordings took place (January 27, 2022), there had been no confidential documents produced by any party.

6.      The statement I made in one of the video recordings was: "because I sue half the companies in the space, I know where the market is going, I believe, better than one of the top ten people in the world. I've seen the insides of every crypto company [video cuts]." What I intended to convey was that due to the numerous suits I've filed in this space, many whistleblowers and other insiders send information that has proved valuable in pursuing class action claims.

7.      None of the co-lead counsel in this matter have served any discovery requests for any purpose collateral to the prosecution of the claims in this case. All of the initial discovery requests were derived from information contained in the Amended Complaint or sourced from publicly available material, including foreign documents and were solely intended to obtain information material to the claims and defenses in this matter.

8.      The comments I made regarding the nature of jury trials, jurors, and absent class members have nothing to do with the Firm's views and are not even representative of my own personal views. My comments in the video were highly inappropriate, made while I was intoxicated, and I deeply regret my statements.

9.      While the published videos are carefully edited and spliced to remove context and paint me in the worst possible light, the fact remains that my actions and words were inexcusable. I have spent years helping build the Firm's crypto-asset practice, and I'm ashamed that my conduct called into question the excellent work the attorneys at the Firm have done pursuing the interests of class members across numerous and innovative class actions in the space.

10.     I have withdrawn from this case, been screened from the matter, and will not receive any financial interest in this action.

11.     I respectfully request that this Court accept my motion to withdraw but that it not terminate the Firm as Co-Lead Counsel. The expertise of the other attorneys working on this matter from the Firm will continue to add significant value to the Proposed Class.

12.     I declare under penalty of perjury that the foregoing is true and correct.


Dated September 2, 2022


Kyle W. Roche

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Tether and Bitfinex Crypto Asset Litigation | Case No. 19 Civ. 9236 (KPF) |

### <u>Declaration of Aaron Leibowitz</u>

I, Aaron Leibowitz, based on my personal knowledge, declare as follows:

1.      I am a named plaintiff in this case.

2.      I retained Roche Freedman LLP ("RF") to pursue this action as a result of harm I suffered from the purchase of artificially inflated crypto-commodities because I believe RF is uniquely qualified to serve both the named plaintiffs and the proposed class in this action.

3.      Throughout the litigation, I have participated in monthly calls where Co-Lead Counsel provides us updates on the case.

4.      I reviewed the video clips of Kyle Roche published by the Crypto Leaks website on August 26, 2022.

5.      I understand RF has removed Kyle Roche from the case, its entire class action practice group, has screened him from receiving and/or participating in the Firm's class actions, and directed him to obtain ethics training. I also understand Mr. Roche has forfeited any financial interest in this litigation.

6.      I have also reviewed the Bitfinex, Tether, Bittrex, and Poloniex Defendants' letters seeking to have the entire RF firm be terminated as counsel from this case.

7.      In all my interactions and discussions with RF attorneys, I have never heard or seen anything that would in anyway support the concerns raised by the Defendants. RF has only ever been concerned about the best interests of the class.

8.      I retained Roche Freedman LLP on September 3, 2019. I worked with attorneys Kyle Roche, Velvel Freedman, and Joseph Delich on the drafting of the initial complaint (ECF No. 1). All allegations in that complaint were sourced from materials that were obtained through online resources – including documents Roche Freedman had to translate from foreign materials.

9.      I strongly oppose Defendants' request and believe that such relief is not in the best interests of the class. I know that the claims at issue in this case will require co-lead counsel to oversee and direct blockchain forensic experts to show the manipulation of crypto-commodities.

Given RF's unique and market leading experience in this space, their creativity, and the work done to date by RF, I believe the class will be prejudiced if RF is terminated.

10.     I also understand that if RF is terminated, Selendy Gay Elsberg PLLC and Schneider Wallace Cottrell Konecky LLP would remain on co-lead counsel in this case. That would not address my significant concerns that terminating RF would leave the class without the benefit of its crypto-asset litigation experience and thereby result in prejudice.

11.     I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 1, 2022

Aaron Leibowitz (Sep 1, 2022 21:40 EDT)

Aaron Leibowitz

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

In re Tether and Bitfinex Crypto Asset Litigation

Case No. 19 Civ. 9236 (KPF)

### Declaration of Benjamin Leibowitz

I, Benjamin Leibowitz, based on my personal knowledge, declare as follows:

1. I am a named plaintiff in this case.

2. I retained Roche Freedman LLP ("RF") to pursue this action as a result of harm I suffered from the purchase of artificially inflated crypto-commodities because I believe RF is uniquely qualified to serve both the named plaintiffs and the proposed class in this action.

3. Throughout the litigation, I have participated in monthly calls where Co-Lead Counsel provides us updates on the case.

4. I reviewed the video clips of Kyle Roche published by the Crypto Leaks website on August 26, 2022.

5. I understand RF has removed Kyle Roche from the case, its entire class action practice group, has screened him from receiving and/or participating in the Firm's class actions, and directed him to obtain ethics training. I also understand Mr. Roche has forfeited any financial interest in this litigation.

6. I have also reviewed the Bitfinex, Tether, Bittrex, and Poloniex Defendants' letters seeking to have the entire RF firm be terminated as counsel from this case.

7. In all my interactions and discussions with RF attorneys, I have never heard or seen anything that would in anyway support the concerns raised by the Defendants. RF has only ever been concerned about the best interests of the class.

8. I retained Roche Freedman LLP on September 3, 2019. I worked with attorneys Kyle Roche, Velvel Freedman, and Joseph Delich on the drafting of the initial complain (ECF No. 1). All allegations in that complaint were sourced from materials that were obtained through online resources – including documents Roche Freedman had to translate from foreign materials.

9. I strongly oppose Defendants' request and believe that such relief is not in the best interests of the class. I know that the claims at issue in this case will require co-lead counsel to oversee and direct blockchain forensic experts to show the manipulation of crypto-commodities.

Given RF's unique and market leading experience in this space, their creativity, and the work done to date by RF, I believe the class will be prejudiced if RF is terminated.

10.     I also understand that if RF is terminated, Selendy Gay Elsberg PLLC and Schneider Wallace Cottrell Konecky LLP would remain on co-lead counsel in this case. That would not address my significant concerns that terminating RF would leave the class without the benefit of its crypto-asset litigation experience and thereby result in prejudice.

11.     I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 1, 2022

*Benjamin Leibowitz*
Benjamin Leibowitz (Sep 1, 2022 21:17 EDT)

Benjamin Leibowitz

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

In re Tether and Bitfinex Crypto Asset
Litigation

Case No. 19 Civ. 9236 (KPF)

### Declaration of Jason Leibowitz

I, Jason Leibowitz, based on my personal knowledge, declare as follows:

1.      I am a named plaintiff in this case.

2.      I retained Roche Freedman LLP ("RF") to pursue this action as a result of harm I suffered from the purchase of artificially inflated crypto-commodities because I believe RF is uniquely qualified to serve both the named plaintiffs and the proposed class in this action.

3.      Throughout the litigation, I have participated in monthly calls where Co-Lead Counsel provides us updates on the case.

4.      I reviewed the video clips of Kyle Roche published by the Crypto Leaks website on August 26, 2022.

5.      I understand RF has removed Kyle Roche from the case, its entire class action practice group, has screened him from receiving and/or participating in the Firm's class actions, and directed him to obtain ethics training. I also understand Mr. Roche has forfeited any financial interest in this litigation.

6.      I have also reviewed the Bitfinex, Tether, Bittrex, and Poloniex Defendants' letters seeking to have the entire RF firm be terminated as counsel from this case.

7.      In all my interactions and discussions with RF attorneys, I have never heard or seen anything that would in anyway support the concerns raised by the Defendants. RF has only ever been concerned about the best interests of the class.

8.      I retained Roche Freedman LLP on September 3, 2019. I worked with attorneys Kyle Roche, Velvel Freedman, and Joseph Delich on the drafting of the initial complain (ECF No. 1). All allegations in that complaint were sourced from materials that were obtained through online resources – including documents Roche Freedman had to translate from foreign materials.

9.      I strongly oppose Defendants' request and believe that such relief is not in the best interests of the class. I know that the claims at issue in this case will require co-lead counsel to oversee and direct blockchain forensic experts to show the manipulation of crypto-commodities.

Given RF's unique and market leading experience in this space, their creativity, and the work done to date by RF, I believe the class will be prejudiced if RF is terminated.

10.    I also understand that if RF is terminated, Selendy Gay Elsberg PLLC and Schneider Wallace Cottrell Konecky LLP would remain on co-lead counsel in this case. That would not address my significant concerns that terminating RF would leave the class without the benefit of its crypto-asset litigation experience and thereby result in prejudice.

11.    I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 1, 2022

_Jason Leibowitz (Sep 1, 2022 20:51 EDT)_

Jason Leibowitz

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

In re Tether and Bitfinex Crypto Asset Litigation

Case No. 19 Civ. 9236 (KPF)

### Declaration of Matthew Script

I, Matthew Script, based on my personal knowledge, declare as follows:

1. I am a named plaintiff in this case.

2. I retained Roche Freedman LLP ("RF") to pursue this action as a result of harm I suffered from the purchase of artificially inflated crypto-commodities because I believe RF is uniquely qualified to serve both the named plaintiffs and the proposed class in this action.

3. Throughout the litigation, I have participated in monthly calls where Co-Lead Counsel provides us updates on the case.

4. I reviewed the video clips of Kyle Roche published by the Crypto Leaks website on August 26, 2022.

5. I understand RF has removed Kyle Roche from the case, its entire class action practice group, has screened him from receiving and/or participating in the Firm's class actions, and directed him to obtain ethics training. I also understand Mr. Roche has forfeited any financial interest in this litigation.

6. I have also reviewed the Bitfinex, Tether, Bittrex, and Poloniex Defendants' letters seeking to have the entire RF firm be terminated as counsel from this case.

7. In all my interactions and discussions with RF attorneys, I have never heard or seen anything that would in anyway support the concerns raised by the Defendants. RF has only ever been concerned about the best interests of the class.

8. I strongly oppose Defendants' request and believe that such relief is not in the best interests of the class. I know that the claims at issue in this case will require co-lead counsel to oversee and direct blockchain forensic experts to show the manipulation of crypto-commodities. Given RF's unique and market leading experience in this space, their creativity, and the work done to date by RF, I believe the class will be prejudiced if RF is terminated.

9. I also understand that if RF is terminated, Selendy Gay Elsberg PLLC and Schneider Wallace Cottrell Konecky LLP would remain on co-lead counsel in this case. That

would not address my significant concerns that terminating RF would leave the class without the benefit of its crypto-asset litigation experience and thereby result in prejudice.

10. I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 1, 2022

Matthew Script (Sep 1, 2022 20:31 EDT)

Matthew Script

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Tether and Bitfinex Crypto Asset
Litigation

Case No. 19 Civ. 9236 (KPF)

**Declaration of Pinchas Goldshtein**

I, Pinchas Goldshtein, based on my personal knowledge, declare as follows:

1.      I am a named plaintiff in this case.

2.      I retained Roche Freedman LLP ("RF") to pursue this action as a result of harm I suffered from the purchase of artificially inflated crypto-commodities because I believe RF is uniquely qualified to serve both the named plaintiffs and the proposed class in this action.

3.      Throughout the litigation, I have participated in calls with Mr. Freedman who provides me with updates on the case.

4.      I reviewed the video clips of Kyle Roche published by the Crypto Leaks website on August 26, 2022.

5.      I understand RF has removed Kyle Roche from the case, its entire class action practice group, has screened him from receiving and/or participating in the Firm's class actions, and directed him to obtain ethics training. I also understand Mr. Roche has forfeited any financial interest in this litigation.

6.      I have also reviewed the Bitfinex, Tether, Bittrex, and Poloniex Defendants' letters seeking to have the entire RF firm be terminated as counsel from this case.

7.      In all my interactions and discussions with RF attorneys, I have never heard or seen anything that would in anyway support the concerns raised by the Defendants. RF has only ever been concerned about the best interests of the class.

8.      I strongly oppose Defendants' request and believe that such relief is not in the best interests of the class. I know that the claims at issue in this case will require co-lead counsel to oversee and direct blockchain forensic experts to show the manipulation of crypto-commodities. Given RF's unique and market leading experience in this space, their creativity, and the work done to date by RF, I believe the class will be prejudiced if RF is terminated.

9.      I also understand that if RF is terminated, Selendy Gay Elsberg PLLC and Schneider Wallace Cottrell Konecky LLP would remain on co-lead counsel in this case. That

would not address my significant concerns that terminating RF would leave the class without the benefit of its crypto-asset litigation experience and thereby result in prejudice.

10. I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 1, 2022


Pinchas goldshtein (Sep 1, 2022 19:53 EDT)

Pinchas Goldshtein



**Debevoise & Plimpton LLP**
919 Third Avenue
New York, NY 10022
+1 212 909 6000

September 2, 2022

BY ECF AND EMAIL

The Honorable Katherine Polk Failla
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

**Re:  *In re Tether and Bitfinex Crypto Asset Litigation*, No. 19 Civ. 9236 (S.D.N.Y.)**

Dear Judge Failla:

We represent the B/T Defendants in the above-referenced matter and write in response to Roche Freedman's September 2, 2022 filing regarding Plaintiffs' Motion for Kyle W. Roche to Withdraw as Attorney.  (Dkt No. 232.)

While we appreciate that Mr. Roche and his firm have sought to address the issues raised in the B/T Defendants' August 31 letter to the Court (Dkt. No. 230), the evolving explanations they have offered regarding his videotaped statements – which implicate both Mr. Roche and the Roche Freedman law firm – offer little comfort with respect to the grave concerns raised by those statements.

Mr. Roche first claimed that his statements were taken "out of context" and/or were somehow elicited from him "using leading questions."[1]  Notwithstanding that initial response, Mr. Roche then took the extraordinary step of withdrawing entirely from his firm's class action practice.

In its September 2 letter, Roche Freedman states that Mr. Roche's statements are "demonstrably false" but offers no such demonstration.  That the initial complaint in this case was filed prior to when Roche Freedman reports it commenced a formal attorney-client relationship with Ava Labs says nothing about how it has conducted the lawsuit since that time, including potential misuse of the discovery process.[2]  Beyond that, Roche Freedman relies on its own denials.

---

[1]  Kyle Roche, *My Response*, MEDIUM (Aug. 29, 2022), available at https://medium.com/ @kyleroche/my-response-b691563c255b [https://perma.cc/WH2G-ZD8B].

[2]  Notably, Mr. Roche stated on video that his firm and Ava Labs launched their businesses together at the same time in the same co-working space, he already knew the CEO of Ava Labs, and he received a percentage of the AVAX token supply in September 2019, prior to the commencement of this action.

The Honorable Katherine Polk Failla          2                    September 2, 2022

In his affidavit, Mr. Roche himself states only that "some of the statements were false." The videos published on the Crypto Leaks website, however, do not show merely a discrete set of questionable statements but a comprehensive description of how Mr. Roche and his law firm abuse the class action process and discovery.

Importantly, the B/T Defendants expressed a serious and valid concern that the discovery process is being misused based on Mr. Roche's statement that he serves as Ava Lab's "crypto expert" and "know[s] where this market is going" because he "sue[s] half the companies in the space" and has "seen the insides of every single crypto company."[3] In his affidavit, relied on by Roche Freedman, Mr. Roche offers only the implausible explanation that he was not referring to information gained in discovery but to other information purportedly provided to him outside of litigation by "whistleblowers and other insiders."

Roche Freedman's assertion that Defendants have raised Mr. Roche's statements with the Court as a "litigation tactic" suggests that it fails to fully understand the egregious nature of those statements or the seriousness of the concerns they raise.

Respectfully submitted,

/s/ Elliot Greenfield

---

[3] *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm*, Roche Freedman, Crypto Leaks (Aug. 26, 2022), available at https://cryptoleaks.info/case-no-3 [https://perma.cc/N433-63SC].




September 2, 2022

<u>**Via ECF and E-mail**</u>

The Honorable Katherine Polk Failla
U.S. District Court Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007

Re:  <u>*In re Tether and Bitfinex Crypto Asset Litigation*</u>, **19-cv-09236 (KPF)**

Dear Judge Failla:

Selendy Gay Elsberg PLLC ("Selendy Gay Elsberg") and Schneider Wallace Cottrell Konecky LLP ("Schneider Wallace") write in their capacity as interim class counsel, and specifically not on behalf of the named plaintiffs, in response to the letter dated September 2, 2022, by Roche Freedman LLP ("Roche Freedman"), ECF No. 232. The named plaintiffs have all reviewed this letter and stated that they disagree with its content and recommendation; in short, the named plaintiffs express a strong preference that Roche Freedman remain in the case.[1] Undersigned counsel nevertheless believe they have a duty to the Court and the putative class to inform the Court of their views. *See* Fed. R. Civ. P. 23(g)(3) (stating interim class counsel is appointed to "act on behalf of a putative class.").

As explained below, Selendy Gay Elsberg and Schneider Wallace believe that Roche Freedman's continued involvement in the litigation is not in the best interests of the class. Accordingly, we respectfully request that the Court terminate Roche Freedman's status as interim co-lead counsel. Selendy Gay Elsberg and Schneider Wallace are ready and willing to continue representing the class as interim co-lead counsel.

Selendy Gay Elsberg and Schneider Wallace became aware of video recordings of Kyle Roche, a founding partner of Roche Freedman, when they were published online on August 26, 2022.[2] In the recordings, Mr. Roche makes statements regarding the blockchain industry and his approach to class action litigation. On August 31, 2022, Mr. Roche (though not Roche Freedman) filed a motion to withdraw as counsel. ECF No. 229. Later that day, the B/T Defendants submitted

---

[1] Selendy Gay Elsberg and Schneider Wallace were not aware of the affidavits of the class representatives until they were filed as exhibits to Roche Freedman's letter. *See* ECF Nos. 232-2–232-6. Although Selendy Gay Elsberg and Schneider Wallace respect the opinions expressed in those affidavits, they believe their duty as interim class counsel is to "the interests of the class" as a whole. *See* Fed. R. Civ. P. 23(g)(4).

[2] *See Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman*, CRYPTO LEAKS (Aug. 26, 2022), *available at* https://cryptoleaks.info/case-no-3.

a letter asking the Court to terminate Roche Freedman as counsel for the class. ECF No. 230. The Exchange Defendants filed a letter on September 1, joining this request. ECF No. 231.[3]

Given the content of the recordings—and the fact that Mr. Roche, in an August 29, 2022 public response, did not deny the recordings' authenticity[4]—Selendy Gay Elsberg and Schneider Wallace asked Roche Freedman to withdraw as counsel to protect the interests of the class. Roche Freedman declined to withdraw.

Selendy Gay Elsberg and Schneider Wallace are not able to evaluate the credibility of Roche Freedman's statements concerning Ava Labs, AVAX tokens, or Mr. Roche's position at his firm or his financial interest in this litigation. However, Roche Freedman's continued involvement as counsel in the case is contrary to the best interests of the class. Roche Freedman's continued representation of the class would likely spawn significant discovery and motion practice as to the veracity and/or import of the allegations. These issues are likely to unnecessarily distract from the merits of this dispute, and can be avoided by the removal of Roche Freedman as class counsel.

Selendy Gay Elsberg and Schneider Wallace are both experienced and capable class counsel, with expertise in litigation concerning digital assets, and will continue to prosecute this action on behalf of the class as interim co-lead counsel. For example, Selendy Gay Elsberg has been appointed as co-lead counsel in numerous class actions in this district where the plaintiffs' allegations involve the technical details of dozens of different crypto-assets.

To protect the interests of the putative class, we respectfully request that the Court terminate Roche Freedman's appointment as interim co-lead counsel.

---

[3] Selendy Gay Elsberg and Schneider Wallace disagree with Defendants' claims that Plaintiffs have sought "information that has no apparent link to the claims and defenses in this lawsuit," ECF No. 230 at 2, or which "related to broad aspects of the cryptocurrency industry but did not appear related to any of the claims or defenses in this matter," ECF No. 231 at 2 n.1. Rather than air that dispute here, Plaintiffs will continue to meet and confer with Defendants in an effort to resolve any remaining discovery issues without Court intervention. *See* ECF No. 228 at 2.

[4] https://medium.com/@kyleroche/my-response-b691563c255b

2

Respectfully submitted,

/s/ Caitlin Halligan
Philippe Z. Selendy
Caitlin Halligan
Andrew R. Dunlap
SELENDY GAY ELSBERG PLLC
1290 Sixth Avenue
New York, NY 10104
pselendy@selendygay.com
challigan@selendygay.com
adunlap@selendygay.com

/s/ Todd M. Schneider
Todd M. Schneider (*pro hac vice*)
Jason H. Kim (*pro hac vice*)
Matthew S. Weiler (*pro hac vice*)
SCHNEIDER WALLACE COTTRELL
KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
tschneider@schneiderwallace.com
jkim@schneiderwallace.com
mweiler@schneiderwallace.com

*Interim Lead Counsel and Attorneys for Plaintiffs and the Proposed Class*

# Exhibit B

IN THE CIRCUIT COURT FOR THE
15TH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

Ramona Ang, as trustee of the
Tulip Trust,

CASE NO: 50-2021-CA-004758-XXXX-MB

     plaintiff,

       v.

Ira Kleiman, as personal representative
of the Estate of David Kleiman

     defendant,

and

W&K Info Defense Research, LLC,
and Lynn Wright,

     nominal defendants.

_____/

## TULIP TRUST'S FIRST REQUEST FOR ADMISSIONS TO ROCHE FREEDMAN, LLP

Plaintiff Ramona Ang, as trustee for Tulip Trust, under Fla. R. Civ. P. 1.370, request that

Roche Freedman, LLP admit or deny each of the requests set forth below within 30 days.

## I.     INSTRUCTIONS

A.     As to each statement, you shall specifically admit or deny the statement. If denied,

the denial must fairly meet the substance of the requested admission. If you qualify your answer

or deny any part of the matter for which admission is requested, you shall admit so much of the

statement as is true and qualify or deny the remainder.

B.     If you object that a term or phrase is vague or ambiguous, you shall respond with

its understanding of the term or phrase and specifically admit or deny the statement.

## II.      DEFINITIONS

A.      The terms "RF," "you," "your," "yours," or "yourself" shall refer to Roche

Freedman, LLP, including, but not limited to, any attorney, accountant, contractor, employee, or

consultant affiliated with RF, and any person or entity acting or purporting to act on RF's behalf.

B.      The term "tokens" shall mean digital assets that are used as currency.

C.      The term "MOU" shall refer to the Memorandum of Understanding dated

December 27, 2019, and signed by the then-partners of RF.

D.      The term "Gun" shall refer to Emin Gun Sirer.

E.      The term "Ava Labs" shall refer to Ava Labs, Inc., a Delaware Corporation whose

principal place of business is 263 S. 4th St. Brooklyn NY, NY 11211.

## III.      REQUESTS FOR ADMISSION

1. Admit that Kyle Roche made the statements recorded in the videos found at https://cryptoleaks.info/case-no-3.

2. Admit that the video recorded statements found at https://cryptoleaks.info/case-no-3 made by Kyle Roche were true.

3. Admit that RF has represented Ava Labs.

4. Admit that RF owns approximately 1% of the shares in Ava Labs.

5. Admit that Ava Labs is an undisclosed principal of RF.

6. Admit that the MOU addresses how Ava Labs tokens will be distributed between the partners of RF.

7. Admit that Kyle Roche made a deal with Gun, whereby RF would provide legal services in exchange for a certain percentage of the token supply.

8. Admit that Kyle Roche was the second person listed on the Ava Labs capitalization table.

9. Admit that Kyle Roche obtained approximately one percent of Ava Labs' equity.

10. Admit that Kyle Roche obtained approximately one percent of Ava Labs' tokens.

11. Admit that Kyle has used litigation as a strategic instrument to support Ava Labs.

12. Admit that RF has used litigation as a strategic instrument to support Ava Labs.

13. Admit that Ava Labs made Kyle Roche an equity partner in appreciation for his use of litigation to as a strategic instrument for Ava Labs.

14. Admit that your lawsuits against blockchain companies or entities has enabled you to see inside their operations.

15. Admit that you sue blockchain companies or entities to be able to see inside their operations.

16. Admit that you sue blockchain companies or entities to be able to learn their secrets.

17. Admit that you sued Emre Aksoy at Gun's behest.

18. Admit that you consider Dr. Craig Wright to be Gun's archnemesis.

19. Admit that you sued Dr. Craig Wright to please Gun.

20. Admit that you sued Dr. Craig Wright to devalue Bitcoin Satoshi Vision.

21. Admit that you sued Dr. Craig Wright to "take him down."

22. Admit that the breach of partnership claims against Dr. Craig Wright were a mere pretext for a lawsuit designed to vindicate Gun's personal vendetta.

23. Admit that you do not care about settling lawsuits.

24. Admit that you would rather win a $100 million judgment for your client and get good press, than settle for $500 million.

25. Admit that you have shared with Ava Labs non-public information that you learned about its competitors.

26. Admit that you sue blockchain companies or entities to be able to learn their secrets.

Respectfully Submitted,


RIVERO MESTRE LLP
*Attorneys for Tulip Trust*
2525 Ponce de Leon Blvd., Suite 1000
Miami, Florida 33134
Tel.: (305) 445-2500
Fax: (305) 445-2505

By: /s/ Andrés Rivero
    Andrés Rivero

3

Florida Bar No.: 613819
arivero@riveromestre.com
Alan H. Rolnick
Florida Bar No.: 715085
arolnick@riveromestre.com
Robert J. Kuntz, Jr.
Florida Bar No. 94668
rkuntz@riveromestre.com

**CERTIFICATE OF SERVICE**

I certify that on September 14, 2022, a copy of this motion was served by email, pursuant to

Florida Rule of Judicial Administration 2.516(b)(1), on all counsel of record.

By: /s/ Andrés Rivero
ANDRES RIVERO

Exhibit C

IN THE CIRCUIT COURT FOR THE
15TH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

Ramona Ang, as trustee of the
Tulip Trust,

CASE NO: 50-2021-CA-004758-XXXX-MB

       plaintiff,

         v.

Ira Kleiman, as personal representative
of the Estate of David Kleiman

       defendant,

and

W&K Info Defense Research, LLC,
and Lynn Wright,

       nominal defendants.

_____/

## **TULIP TRUST'S FIRST REQUEST FOR**
## **<u>PRODUCTION OF DOCUMENTS TO ROCHE FREEDMAN, LLP</u>**

     Plaintiff Ramona Ang, as trustee for Tulip Trust, under Fla. R. Civ. P. 1.350, request that

Roche Freedman, LLP produce the requested documents for inspection and copying on or before

30 days from the date of this request.

                                        Respectfully Submitted,

                                        RIVERO MESTRE LLP
                                        *Attorneys for Tulip Trust*
                                        2525 Ponce de Leon Blvd., Suite 1000
                                        Miami, Florida 33134
                                        Tel.: (305) 445-2500
                                        Fax: (305) 445-2505

                                        By: <u>/s/ Andrés Rivero</u>
                                          Andrés Rivero
                                          Florida Bar No.: 613819
                                          arivero@riveromestre.com

Alan H. Rolnick
Florida Bar No.: 715085
arolnick@riveromestre.com
Robert J. Kuntz, Jr.
Florida Bar No. 94668
rkuntz@riveromestre.com

## CERTIFICATE OF SERVICE

I certify that on September 14, 2022, a copy of this motion was served by email, pursuant to

Florida Rule of Judicial Administration 2.516(b)(1), on all counsel of record.

By: /s/ Andrés Rivero
ANDRES RIVERO

## I.    DEFINITIONS

A.    The word "document" shall mean any written or graphic matter or other means of preserving thought or expression, and all tangible things from which information or thoughts can be processed or transcribed, and all copies containing additional matter, however produced or reproduced, of any kind and description, in your actual or constructive possession, custody, care, or control, that pertain directly or indirectly, in whole or in part, either to any of the subjects listed below or to any other matter relevant to this action, or which are themselves listed below as specific documents, including, but not limited to, the following: communications, correspondence, memoranda, notes, messages, letters, telegrams, teletype messages, facsimiles, e-mails, bulletins, diaries, chronological data, minutes, books, reports, charts, ledgers, invoices, worksheets, receipts, computer memory, word processing data, computer printouts, work-product schedules, account records, patents, licenses, legal pleadings, minutes of directors' meetings, minutes of shareholders' or other meetings, work assignments, transaction files, statistical records, financial records, bank records, security agreements, testing reports, newspaper or magazine articles, stories or clippings, affidavits, contracts, transcripts, surveys, graphic representations of any kind, photographs, graphs, microfilms, videotapes, tape recordings, or motion pictures or other films, or information maintained in any electronic medium (including, but not limited to, information found in computer hard drives, flash drives, USB drives, pocket drives, CDs, backup tapes, metadata, and pdf).

B.    "Relating to" and "related to" shall mean the following: relates to, refers to, pertains to, contains, concerns, describes, embodies, mentions, constitutes, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts, or contradicts.

C.      The term "Gun" shall refer to Emin Gun Sirer.

D.      The term "Ava Labs" shall refer to Ava Labs, Inc., a Delaware Corporation whose principal place of business is 263 S. 4th St. Brooklyn NY, NY 11211.

E.      The term "Avalanche" shall refer to Ava lab's contracting platform.

F.      The term "Sekniqi" shall refer to Kevin Sekniqi.

G.      The terms "RF," "you," "your," "yours," or "yourself" shall refer to Roche Freedman, LLP, including, but not limited to, any attorney, accountant, contractor, employee, or consultant affiliated with RF, and any person or entity acting or purporting to act on RF's behalf.

H.      The term "MOU" shall refer to the Memorandum of Understanding dated December 27, 2019, and signed by the then-partners of RF.

## II.      INSTRUCTIONS

1.      You should produce the documents as follows: (1) in the exact order in which they are kept in the ordinary course of business; or (2) classified according to the specific request(s) to which they are responsive.

2.      To the extent that you do not have possession, custody, or control of any documents identified as responsive to a particular request herein, please indicate the lack of possession, custody, existence, or control of the responsive documents in your response.

3.      All electronic documents and e-mail are requested to be produced in electronic format by a forensically sound method, with all original metadata preserved and intact.

4.      ESI should be produced as follows:

a.      Email, instant messaging, calendar, contacts, and word processing files must be derived from the original electronic media and converted to single-page .tiff images with accompanying system metadata (e.g., author,

4

recipient(s), "cc" recipient(s), "bcc" recipient(s), date and time of creation and receipt, date and time of modification, etc.) and substantive metadata (e.g., the substance of the changes, etc.), with all attachments. All chronological metadata shall be standardized to Eastern Standard Time. The Plaintiffs reserve the right to request native format production for ESI. Upon such request, you shall produce specific documents (identified by Bates number or range) in original native electronic format.

b.      Dynamic files (e.g. databases, spreadsheets, project files, etc.) shall be produced in original native format with all accompanying metadata, along with all such software necessary to interpret the produced information if such software is not readily commercially available.

c.      For all ESI not specified above, production shall be made in native format with all accompanying metadata, along with all software necessary to interpret the produced information if such software is not readily commercially available, unless Plaintiffs specifically agree to a different form of production.

5.      This Request for Production of Documents does not seek the production of documents protected by the attorney-client privilege or work-product rule.  However, if you withhold production of a document requested here as privileged, work product or on any other basis, please state the following in a privilege log for each document withheld:

a.      the type of document (e.g., correspondence, memorandum, e-mail);

b.      the date of the document;

c.      the person(s) who signed the document;

5

    d.    the person(s) who received the document or a copy of it;

    e.    the reason for non-production; and

    f.    the substance of the document.

6.    If any document requested here was previously in your possession, custody, or control, but is no longer, state the following for each document in your response to this request for production of documents:

    a.    the type of document (that is, correspondence, memorandum, e-mail, etc.);

    b.    the date of the document;

    c.    any person who signed the document;

    d.    any person who received the document or a copy of it;

    e.    any person who is presently in possession of the document;

    f.    the substance of the document; and

    g.    the disposition of the document, including the date of disposition.

### III.    DOCUMENTS REQUESTED

1. All documents related to RF's ownership interest in Ava Labs.

2. All documents related to RF's ownership interest in Ava Labs' tokens.

3. All documents related to the MOU.

4. All documents related to RF's engagement agreement with Ava Labs.

5. All documents related to Kyle Roche's ownership interest in Ava Labs.

6. All documents related to RF's ownership interest in Avalanche.

7. All documents related to Kyle Roche's ownership interest in Avalanche.

8. All documents related to Gun's ownership interest in RF.

9. All documents related to Sekniqi's ownership interest in RF.

10. All documents related to "shared workspace" between or among RF, Ava Labs, or Avalanche.

11. All documents related to any lease executed by RF for the "shared workspace" referred to in Request 10.

12. All documents related to any lease executed by the Ava Labs for the "shared workspace" referred to in Request 10.

13. All documents related to "academic writings" in your possession authored by either you, Gun, or both.

14. All documents related to Ava Labs' capitalization tables on which Kyle Roche's name appears.

15. All documents related to Ava Labs capitalization tables on which any member of RF appears.

16. All documents related to RF's use of straw plaintiffs to bring actions on behalf of Ava Labs in which Ava Labs did not appear.

17. All documents related to RF's communications with the Securities and Exchange Commission in which you attempted to direct regulator attention toward an Ava Labs' competitor.

18. All documents related to RF's communications with the Commodities Futures Trading Commission in which you attempted to direct regulator attention toward an Ava Labs' competitor.

19. All documents related to Kyle Roche's residence in Florida for tax purposes.

# Exhibit D

MADHTetD

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   IN RE TETHER AND BITFINEX
    CRYPTO ASSET LITIGATION,

4                          19 Civ. 9236 (KPF)

5                          Decision

6   ------------------------------x
                           New York, N.Y.
7                          October 13, 2022
                           2:15 p.m.
8
    Before:
9
                    HON. KATHERINE POLK FAILLA,
10
                           District Judge
11
12                         APPEARANCES

13  ROCHE FREEDMAN LLP
         Attorneys for Plaintiffs
14  BY:  CONSTANTINE PHILIP ECONOMIDES
         DEVIN FREEDMAN
15       EDWARD JOHN NORMAND
         -and-
16  SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS LLP
    BY:  TODD MICHAEL SCHNEIDER
17       MATTHEW SINCLAIR WEILER
         -and-
18  SELENDY GAY ELSBERG PLLC
    BY:  ANDREW RIGGS DUNLAP
19       MITCHELL D. NOBEL

20  KIRBY McINERNEY LLP
         Attorneys for Consolidated Plaintiffs
21  BY:   KAREN M. LERNER
          DAVID E. KOVEL
22       -and-
    RADICE LAW FIRM, P.C.
23  BY:   JOHN D. RADICE

24

25

MADHTetD

```
 1                        APPEARANCES (Cont'd)

 2   DEBEVOISE & PLIMPTON, LLP (NYC)
          Attorneys for Defendants iFinex, BFXNA, BFXWW, Tether
 3   Holdings Limited, Tether Operations Limited, Tether
     International Limited, DigFinex, Giancarlo Devasini, Ludovicus
 4   Jan van der Velde, and Tether Limited
     BY:  ELLIOT GREENFIELD
 5        MELANIE BURKE
        MAEVE L. O'CONNOR
 6     -and-
     LAW OFFICES OF MICHAEL JASON LEE, APLC
 7        Attorneys for Defendant Potter
     BY:  MICHAEL JASON LEE
 8     -and-
     DILLON MILLER & AHUJA, LLP
 9   BY:  SUNJINA KAUR AHUJA
          CHRISTOPHER BEAL
10
     WILLKIE FARR & GALLAGHER LLP
11        Attorneys for Defendant Potter
     BY:  CHARLES DEAN CORDING
12        AMANDA PAYNE

13   NELSON MULLINS RILEY & SCARBOROUGH LLP
          Attorneys for Defendant Poloniex, LLC
14   BY:  MATTHEW G. LINDENBAUM
          ROBERT LAURI LINDHOLM JR.
15
     McNAUL EBEL NAWROT & HELGREN PLLC
16        Attorneys for Defendant Bittrex, Inc.
     BY:  ABBY FAITH RUDZIN
17        GREGORY HOLLON

18

19

20

21

22

23

24

25
```

1              (The Court and all parties present remotely)

2          THE COURT:  The case has been called.  I'm not going

3    to ask the parties to identify themselves because I'm aware

4    that my deputy has already taken appearances.

5          I am now going to be giving an oral decision on the

6    applications regarding Mr. Roche and the Roche Freedman firm,

7    and I'm going to ask you all, please, to mute your phones as I

8    do so, so that there aren't interruptions once I begin.  I'll

9    give you a second or two to mute your phones at this time.

10         Now I will begin.

11         As always, I thank you, those of you who have given me

12   written and oral submissions on these points, and I do

13   genuinely and sincerely appreciate your giving me some

14   opportunities, some time, to consider what was said at the

15   October 3 oral argument and to reflect on what I think is a

16   very serious issue.  For the reasons that I am about to

17   outline, I am modifying my order appointing interim class

18   counsel to remove the Roche Freedman firm from that class

19   counsel.

20         This decision does not require extensive citation to

21   cases.  Unlike Roche Freedman's framing of the issue as one of

22   disqualification of a firm, I find that this dispute actually

23   arises under Federal Rule of Civil Procedure 23(d)(2), which

24   allows an order under Rule 23(d)(1) to be altered or amended

25   from time to time and to be combined with an order under

MADHTetD

1    Rule 16.

2           The order in question is my February 27, 2020, order

3    by way of minute entry appointing lead plaintiff and interim

4    class counsel, and it is the latter portion that I am being

5    asked to revisit.  I have considered the views of the named

6    plaintiffs in this case.  They are the putative class

7    representative, but, ultimately, I conclude that their

8    preferred counsel structure is not in the best interests of the

9    class, and of course, if that causes any of the plaintiffs, the

10   named plaintiffs, to wish to exit the case, I will hear from

11   them when it is appropriate to do so.

12          But before I get to the legal analysis, I do want to

13   spend a moment on the reasons why I am revisiting my prior

14   order, and this is not to beat the proverbial dead horse, but

15   rather just to provide a factual framework for my decision.

16          In January of 2022, nearly two years after my

17   appointment of an interim class counsel team that included the

18   Roche Freedman firm and before the production of discovery in

19   this case, one of the principals at the Roche Freedman, Kyle

20   Roche, made a series of ill-advised comments suggesting, if not

21   asserting, his close ties to and financial interest in Ava

22   Labs, a research and development company that is involved in

23   developing the Avalanche platform and the AVAX cryptocurrency,

24   as well as Mr. Roche's strategic deployment of class action

25   litigation to aid Ava Labs both by focusing regulators on Ava's

MADHTetD

1    competitors and on obtaining confidential information

2    concerning those competitors through the class action process.

3            Mr. Roche claims that the video recordings of these

4    statements are highly edited and taken out of context, that he

5    was set up by a competitor, and that he was inebriated at the

6    time he made the statements.  All of that notwithstanding,

7    Mr. Roche has moved to withdraw from representing the class

8    plaintiffs in this case.  The Roche Freedman firm has

9    represented that it will or has walled him off financially from

10   receiving any fees from this case, and Mr. Roche is not

11   currently involved with the firm's plaintiff-side crypto-asset

12   class action practice.

13           Roche Freedman has suggested that this is sufficient

14   to allow them to remain on as one of the three interim class

15   counsel.  Their cocounsel, as well as defendants' counsel, and

16   an earlier contender for interim class counsel all disagree.

17           In an early effort to frame this issue, I considered

18   whether the factual bases for my decision to include Roche

19   Freedman in the trio of law firms appointed as interim class

20   counsel has changed.  That answer is an easy, indisputable yes.

21           At the February 24, 2020, oral argument, it was

22   Mr. Roche that I heard from first who began by explaining his

23   firm's expertise in the crypto-asset space, and in so doing

24   countering the position offering by the competing Robbins

25   Geller firm regarding the appropriate definition of the class.

1           Ms. Halligan then came in to explain the selling

2   points of each firm and, more to the point, why I should

3   appoint all three of them.  Roche Freedman for their -- her

4   words, not mine -- unparalleled expertise in cryptocurrency;

5   Schneider Wallace for their class action experience; and what

6   was, I believe, then the Selendy & Gay firm, it's now Selendy

7   Gay & Elsberg, for their experience with complex litigation and

8   state law claims.

9           Mr. Roche and Ms. Halligan's arguments convinced me to

10  appoint the three firms as interim class counsel despite my

11  initial expressed hesitancy to do so.

12          In my oral decision, which I believe was issued

13  February 27 of 2020, I remarked, and I'm quoting here, that

14  "what interests me about this case is that it is an interesting

15  combination of old and new.  The cryptocurrency laws is quite

16  novel and lots of issues and not a lot of resolution, but there

17  is a lot of established law out there with respect to the

18  pleading requirements, with respect to traditional antitrust

19  issues and RICO and the Commodities Exchange Act."

20          I included the Roche Freedman to address the novel

21  legal issues that were expected to arise.  I did so based

22  largely on the oral advocacy and anticipated involvement of

23  Mr. Roche, and he is no longer involved in the litigation.

24          But that analysis, while accurate, is also a bit

25  facile.  We are more than two and a half years removed from my

1    order appointing interim class counsel, and I daresay that we

2    all know more about crypto-assets, crypto exchanges,

3    stablecoin, and crypto commodities than we did when this

4    litigation began.  That said, Mr. Freedman, from the Roche

5    Freedman firm, has forcefully argued that the firm still has a

6    leg up on their cocounsel when it comes to this particular area

7    of the law.

8         On the other side of the equation is the additional

9    litigation that would ensue if the Roche Freedman firm were to

10   remain in the case.  Defense counsel has made it clear that

11   there will be additional litigation both during the discovery

12   phase if Roche Freedman continues to have access to materials

13   produced by the defendants under the protective order, and then

14   later in connection with the class certification stage.

15        I want to be clear, or I should say that I'm not

16   optimistic that discovery will be entirely free from disputes

17   if Roche Freedman is out of the case, particularly given the

18   disputes I've already resolved.  But I do acknowledge that

19   there will be additional litigation if and because the firm

20   remains in the case.

21        The question here distills to what counsel structure

22   is in the best interests of the putative class, and to me that

23   further distills to whether the incremental benefits of Roche

24   Freedman remaining as interim class counsel in terms of their

25   institutional knowledge and their expertise in one of the

MADHTetD

1    substantive areas of the law implicated by the case outweigh

2    the additional litigation burdens occasioned by their

3    involvement.  Ultimately, I find that the burdens outweigh the

4    benefits.

5          For starters, we are two years into this litigation.

6    Everyone has benefited from the on-the-job instruction we've

7    received on crypto-assets and crypto exchanges.  And as a

8    result, I believe that the Selendy and the Schneider firms are,

9    or quickly can be, up to speed on that area of the law.

10   Further, I believe that they already have superior expertise in

11   other areas of the law implicated by this litigation, including

12   the Sherman Act, the Commodities Exchange Act, common law

13   fraud, and issues of class action certification.  So in

14   consequence, I find that the putative class will not suffer any

15   loss in the quality of their representation if the Roche

16   Freedman firm is discontinued as interim class counsel.

17         Now, just to amend what I've just said, I said we're

18   two years into this litigation.  I think we're closer to three.

19   We've been in this litigation for several years.  Let me look

20   at the converse position, though.

21         The parties have been fighting since long before

22   Mr. Roche's disclosures were made.  I am concerned that

23   establishing another front for the parties' disputes will

24   derail this litigation.  What is more, I cannot be sure at this

25   time of the size of this new front.  So in this regard, I don't

MADHTetD

```
 1    share Mr. Normand's view expressed in oral argument that this
 2    additional litigation would be but a brief distraction and not
 3    disabling.  These ancillary disputes will extend this
 4    litigation, they cannot be dismissed summarily, and I don't
 5    think that it's in the best interests of the class if they
 6    persist.
 7           Related to this point is my concern that Mr. Roche's
 8    problems will extend to others at his firm or will otherwise
 9    adversely impact the case before me.
10           Now, this is almost certainly a consequence of the
11    recency of these disclosures, but the fact is we, or anyone,
12    had not yet gotten to the bottom of the relationship that
13    Mr. Roche has or had with Ava Labs and, by extension, whether
14    the litigation strategies suggested in his recorded comments
15    were implemented by him with respect to Ava Labs or other
16    clients of the firm or by others at the firm.
17           It is too easy to say that Mr. Roche was drunk and
18    stupid.  His statements were coherent and logical and too
19    detailed for me to dismiss out of hand.  Roche Freedman has
20    offered a number of arguments seeking to mitigate or
21    contextualize these statements, but largely they do not
22    succeed.  For example, the firm asserts that their involvement
23    in the instant litigation, or their decision to bring the
24    instant litigation, predates the formation of or certainly the
25    retention by Ava Labs, and that may be.  But Mr. Roche's
```

1    comments did not suggest that his strategic use of class action

2    litigation only came into existence after his dealings with Ava

3    Labs.  Similarly, even if I accept Roche Freedman's arguments

4    that the defendants in this litigation are not competitors of

5    Ava Labs, I cannot say that Mr. Roche's professed class action

6    litigation strategy was limited to that one client.

7            Furthermore, given what Mr. Roche did say on the

8    point, I am not comforted by the fact that he did not

9    specifically say in the recordings that he shared confidential

10   materials produced in discovery in this case.  And I completely

11   reject the counterargument that removing the Roche Freedman

12   firm as interim class counsel would somehow incentivize

13   misconduct by defense attorneys.

14           Nor am I persuaded after reading and considering

15   Mr. Roche's declaration that he didn't capitalize on synergies

16   between this litigation and the interests of other Roche

17   Freedman clients.  To begin, I currently don't accept his

18   current explanation that he was merely referring to

19   whistleblowers or insiders, given the comments that were made.

20           More fundamentally, the issues created by -- for

21   Mr. Roche by these disclosures are evolving.  They clearly

22   extend beyond this case.  I have only limited visibility into

23   these issues, and I will not make findings about what

24   Mr. Roche did or did not do or meant or did not mean based on a

25   two-and-a-half page declaration without a more extensive

1    investigation.

2         Now, to be clear, I acknowledge that there is a

3    difference between Mr. Roche and the Roche Freedman firm, but

4    at this point in time, I have concerns about the firm as well.

5    I acknowledge that similar disclosures haven't been made about

6    other lawyers at the firm, but it remains the case that one of

7    the two named partners at the firm, and the very person who

8    persuaded me to add the Roche Freedman firm to the interim

9    class counsel team, touted a theory of class action litigation

10   that I believe amounts to improper purposes.

11        If Mr. Roche's boasts are true -- and, again, I can't

12   reject them out of hand -- then it would actually surprise me

13   if such an ethos were limited to Mr. Roche alone.  In any

14   event, the degree to which the Roche Freedman firm has

15   attempted to minimize Mr. Roche's statements gives me concern

16   that they don't appreciate the seriousness of those statements,

17   and I've already explained the dim view with which I hold the

18   firm's arguments in mitigation.

19        I want now to return to my earlier point, and that is

20   that allowing the Roche Freedman firm to continue as interim

21   class counsel with the metaphorical baggage they now carry is

22   not in the best interests of the class.  Put somewhat

23   differently, I see this as a case of subtraction by addition,

24   wherein three law firms will have a more difficult time

25   litigating this case than two law firms because of the

MADHTetD

1  aftershocks of Mr. Roche's comments.

2           And to repeat, I do not believe that the class will

3  suffer any diminution in their representation if the Selendy

4  and the Schneider firms remain, and for all of these reasons, I

5  am amending my prior order to remove Roche Freedman as interim

6  class counsel.

7           There is one related issue to address, and that is

8  that the Kirby Radice team of attorneys argued that the best

9  course of action here was to start with a clean slate, whereby

10  the Kirby and Radice firms would take over at interim class

11  counsel and, if and as appropriate, new class plaintiffs could

12  be substituted in.

13           While I have given this option consideration, serious

14  consideration, I have ultimately rejected it.  We are too many

15  years into this litigation to switch horses entirely, and I see

16  nothing to suggest that the Selendy and the Schneider firms

17  have comparable issues that would impact their ability to

18  represent the putative class adequately.  So the Selendy and

19  the Schneider firms will remain interim counsel.

20           In short, I am granting Mr. Roche's earlier motion to

21  withdraw because I don't believe I have done that.  I am

22  modifying my prior order to remove Roche Freedman as one of the

23  three interim class counsel.  To the extent appropriate, I will

24  direct Roche Freedman to withdraw from any relevant protective

25  order entered in this case and to return any confidential

MADHTetD

1  materials that are covered by that agreement.

2           That is my decision in this case.  I thank you all for

3  listening to it, and I appreciate your allowing me to give it

4  as an oral decision rather than a written.

5           I wish you, your families, and your clients continued

6  safety and good health in this pandemic.

7           We are adjourned.  Thank you.

8           (Adjourned)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# Exhibit E

|  | IN THE CIRCUIT COURT FOR THE 15TH JUDICIAL CIRCUIT IN AND FOR PALM BEACH COUNTY, FLORIDA |
|---|---|

RAMONA ANG, as Trustee of the Tulip Trust,

     Plaintiff,

v.

IRA KLEIMAN, as Personal Representative of the Estate of David Kleiman,

     Defendant,

and

W&K INFO DEFENSE RESEARCH, LLC, and LYNN WRIGHT,

     Nominal Defendants.

CASE NO: 50-2021-CA-004758-XXXX-MB

/

---

## ROCHE FREEDMAN LLP'S RESPONSES AND OBJECTIONS TO TULIP TRUST'S FIRST REQUEST FOR ADMISSIONS

Pursuant to Florida Rules of Civil Procedure 1.280, 1.370, and 1.410, Non-Party Roche Freedman LLP ("RF"), by and through its undersigned counsel, hereby responds and objects to Tulip Trust's First Request for Admissions dated September 14, 2022 (the "Requests" and each a "Request"), as follows:

### GENERAL OBJECTIONS

1.     RF is not a party to this action and therefore has no obligation under the Florida Rules of Civil Procedure or under Florida law to respond to requests for admission served pursuant to Florida Rule of Civil Procedure 1.370.

2.      Ms. Ang's discovery requests seek information that is not even conceivably relevant. Her requests are frivolous and appear to have been made entirely for purposes of harassing RF and its clients. RF reserves the right to move for a protective and to seek sanctions against Ms. Ang and her counsel.

3.      To the extent RF responds to a Request, that response shall be by and on behalf of RF and will be limited to information currently available to it.

4.      These responses reflect RF's present knowledge, information, and belief, and therefore remain subject to change or modification based on further discovery of facts or circumstances that may come to RF's attention.  RF reserves the right to rely on any facts, documents, evidence, or other contentions that may develop or come to its attention at a later time and to supplement or amend the responses at any time prior to the trial in this action.  RF further reserves the right to raise any additional objections deemed necessary or appropriate in light of any further review.

5.      Any response to these Requests shall be subject to the entry of an appropriate confidentiality order.

6.      RF objects to the Requests to the extent that they seek information protected by the attorney-client privilege, the work-product doctrine, and/or any other applicable privilege, protection, or immunity.  RF will withhold and redact certain information that is subject to such privileges or protections.  To the extent that any inadvertent production of such information is made in response to the Requests, such production shall not constitute a waiver of any applicable privilege or protection.  RF reserves the right to obtain the return of such information and prohibit its use in any manner, and hereby requests the return of any such inadvertently produced

privileged information and reserves the right to object to the disclosure or use of such privileged information at any stage of these or any other proceedings.

7.      RF objects to the Requests to the extent that they are redundant or duplicative of other specific Requests.  Where information may be responsive to more than one Request, RF will provide that information only once.

8.      RF objects to any factual assumptions, implications, and explicit or implicit characterizations of facts, events, circumstances, or issues in the Requests.  RF's responses herein are not intended to mean that RF agrees with any factual assumptions, implications, or any explicit or implicit characterization of facts, events, circumstances, or issues in the Requests, and are without prejudice to RF's right to dispute facts and legal conclusions assumed in the Requests.

9.      RF makes these Responses and Objections without in any way waiving or intending to waive (a) any objections as to the competency, relevance, materiality, privileged status, or admissibility as evidence, for any purpose, of any information provided in response to the Requests; (b) the right to object on any ground to use of the information produced in response to the Requests at any hearing or trial; (c) the right to object on any ground at any time to a demand for further responses to the Requests; (d) the right to revise, amend, supplement, or clarify any of the responses and objections set forth herein; and (e) the right to move the Court for a protective order with respect to the Requests.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

10.     RF objects to the "Instructions" and "Definitions" insofar as they incorporate purported facts.  RF does not adopt or confirm the accuracy of any purported facts incorporated in any of the Instructions or Definitions.

11.     RF objects to Instruction "B" because it purports to impose on RF obligations greater than those imposed by the Florida Rules of Civil Procedure and/or Florida law. To the extent that RF is required to respond to any Request, it will do so in a manner that complies with the Florida Rules of Civil Procedure and Florida law.

12.     RF objects to Definition "A" as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. RF will interpret the defined terms to mean Roche Freedman LLP.

13.     RF objects to Definition "B" as vague and ambiguous to the extent that it limits the definition of "tokens" to assets that are "used as currency." RF will interpret "tokens" to mean any digital asset.

## SPECIFIC OBJECTIONS AND RESPONSES

1.     Admit that Kyle Roche made the statements recorded in the videos found at https://cryptoleaks.info/case-no-3.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

2.     Admit that the video recorded statements found at https://cryptoleaks.info/case-no-3 made by Kyle Roche were true.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending

action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

      3.      Admit that RF has represented Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

      4.      Admit that RF owns approximately 1% of the shares in Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

      5.      Admit that Ava Labs is an undisclosed principal of RF.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not provide any information in response to this Request.

6.     Admit that the MOU addresses how Ava Labs tokens will be distributed between the partners of RF.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

7.     Admit that Kyle Roche made a deal with Gun, whereby RF would provide legal services in exchange for a certain percentage of the token supply.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

8.     Admit that Kyle Roche was the second person listed on the Ava Labs capitalization table.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of

Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not provide any information in response to this

Request.

9.      Admit that Kyle Roche obtained approximately one percent of Ava Labs' equity.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request

on the grounds that the information sought is not "relevant to the subject matter of the pending

action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of

Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not provide any information in response to this

Request.

10.      Admit that Kyle Roche obtained approximately one percent of Ava Labs' tokens.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request

on the grounds that the information sought is not "relevant to the subject matter of the pending

action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of

Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not provide any information in response to this

Request.

11.      Admit that Kyle has used litigation as a strategic instrument to support Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request

on the grounds that the information sought is not "relevant to the subject matter of the pending

action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of

Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not provide any information in response to this Request.

12.     Admit that RF has used litigation as a strategic instrument to support Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

13.     Admit that Ava Labs made Kyle Roche an equity partner in appreciation for his use of litigation to as a strategic instrument for Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

14.     Admit that your lawsuits against blockchain companies or entities has enabled you to see inside their operations.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not provide any information in response to this Request.

15. Admit that you sue blockchain companies or entities to be able to see inside their operations.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

16. Admit that you sue blockchain companies or entities to be able to learn their secrets.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

17. Admit that you sued Emre Aksoy at Gun's behest.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not provide any information in response to this Request.

18.     Admit that you consider Dr. Craig Wright to be Gun's archnemesis.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

19.     Admit that you sued Dr. Craig Wright to please Gun.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

20.     Admit that you sued Dr. Craig Wright to devalue Bitcoin Satoshi Vision.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

21.     Admit that you sued Dr. Craig Wright to "take him down."

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

22.     Admit that the breach of partnership claims against Dr. Craig Wright were a mere pretext for a lawsuit designed to vindicate Gun's personal vendetta.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

23.     Admit that you do not care about settling lawsuits.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

11

24.     Admit that you would rather win a $100 million judgment for you client and get good press, than settle for $500 million.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

25.     Admit that you have shared with Ava Labs non-public information that you learned about its competitors.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

26.     Admit that you sue blockchain companies or entities to be able to learn their secrets.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not provide any information in response to this Request.

Dated: October 14, 2022                    Respectfully submitted,

*/s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman, Esq.
Florida Bar No. 99762
**ROCHE FREEDMAN LLP**
1 SE 3rd Ave., Suite 1240
Miami, Florida 33131
Telephone: (786) 924-2900
vel@rochefreedman.com

Stephen Lagos (*pro hac vice* pending)
**ROCHE FREEDMAN LLP**
99 Park Avenue, Suite 1910
New York, NY 10016
slagos@rochefreedman.com

*Counsel to Defendant and Non-Party Roche Freedman LLP*

Exhibit F

IN THE CIRCUIT COURT FOR THE
15TH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

RAMONA ANG, as Trustee of the Tulip Trust,

      Plaintiff,

v.

IRA KLEIMAN, as Personal Representative of the Estate of David Kleiman,

      Defendant,

and

W&K INFO DEFENSE RESEARCH, LLC, and LYNN WRIGHT,

      Nominal Defendants.

CASE NO: 50-2021-CA-004758-XXXX-MB

/

## ROCHE FREEDMAN LLP'S RESPONSES AND OBJECTIONS TO TULIP TRUST'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Florida Rules of Civil Procedure 1.280, 1.350, 1.351, and 1.410, Non-Party Roche Freedman LLP ("RF"), by and through its undersigned counsel, hereby responds and objects to Tulip Trust's First Request for the Production of Documents, dated September 14, 2022 (the "Requests" and each a "Request"), as follows:

## GENERAL OBJECTIONS

1.      RF is not a party to this action. Accordingly, pursuant to the Florida Rules of Civil Procedure 1.351 and 1.410, Ms. Ang was required to serve RF with a subpoena. Because Ms. Ang failed to do so, RF has no obligation to respond to her discovery requests.

1

2.      Ms. Ang's discovery requests seek information that is not even conceivably relevant. Her requests are frivolous and appear to have been made entirely for purposes of harassing RF and its clients. RF reserves the right to move for a protective and to seek sanctions against Ms. Ang and her counsel.

3.      RF reserves the right not to produce documents to the extent that the Requests (including the "Definitions" and "Instructions" contained therein) (a) are overly broad, unduly burdensome, and/or call for information that is obtainable from some other source that is more convenient, less burdensome, or less expensive; (b) are vague, ambiguous, duplicative, cumulative, or do not identify with reasonable particularity the information sought; (c) call for information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence; (d) seek to impose obligations on RF beyond or inconsistent with those required by Florida law and the Florida Rules of Civil Procedure; (e) purport to seek documents or information not in RF's actual possession, custody, or control; or (f) call for the production of publicly available documents or information, or documents or information to which Ms. Ang has equal or better access, and thus for which the burden on RF is equal to or greater than that of Ms. Ang in obtaining the requested documents and/or information.

4.      To the extent RF responds to a Request, that response shall be by and on behalf of RF and will be limited to documents or information currently available to it. RF will not search for, collect, or produce documents in the possession of RF's advisors or attorneys or other third parties.

5.      These responses reflect RF's present knowledge, information, and belief, and therefore remain subject to change or modification based on further discovery of facts or circumstances that may come to RF's attention.  RF reserves the right to rely on any facts,

documents, evidence, or other contentions that may develop or come to its attention at a later time and to supplement or amend the responses at any time prior to the trial in this action. RF further reserves the right to raise any additional objections deemed necessary or appropriate in light of any further review.

6.      Any production in response to these Requests shall be subject to the entry of an appropriate confidentiality order.

7.      RF objects to the Requests to the extent that they seek information protected by the attorney-client privilege, the work-product doctrine, and/or any other applicable privilege, protection, or immunity. RF will withhold and redact certain information that is subject to such privileges or protections. To the extent that any inadvertent production of such documents or information is made in response to the Requests, such production shall not constitute a waiver of any applicable privilege or protection. RF reserves the right to obtain the return of such information and prohibit its use in any manner, and hereby requests the return of any such inadvertently produced privileged information and reserves the right to object to the disclosure or use of such privileged information at any stage of these or any other proceedings.

8.      RF objects to any Request seeking "all" documents or "all" communications containing, referring, or relating to any of the specific Requests on the grounds that to search for and produce such documents would impose undue burden and RF cannot ensure that it has located each and every document or communication responsive to a particular Request.

9.      RF reserves the right to produce documents responsive to the Requests on a rolling basis at a time, place, and manner to be agreed on by the parties.

10.     RF objects to the Requests to the extent that they are redundant or duplicative of other specific Requests.  Where information or a document may be responsive to more than one Request, RF will provide that information or produce that document only once.

11.     RF's assertion that it will produce documents in response to a particular Request is not to be construed as an admission that any document exists within any requested category or categories but solely as an assertion that RF will produce (consistent with these responses and objections) any non-privileged, responsive documents or information within its actual possession, custody, or control that can be located after a reasonable search conducted in good faith.

12.     RF objects to any factual assumptions, implications, and explicit or implicit characterizations of facts, events, circumstances, or issues in the Requests.  RF's responses herein are not intended to mean that RF agrees with any factual assumptions, implications, or any explicit or implicit characterization of facts, events, circumstances, or issues in the Requests, and are without prejudice to RF's right to dispute facts and legal conclusions assumed in the Requests.

13.     RF makes these Responses and Objections without in any way waiving or intending to waive (a) any objections as to the competency, relevance, materiality, privileged status, or admissibility as evidence, for any purpose, of any information provided in response to the Requests; (b) the right to object on any ground to use of the documents produced in response to the Requests at any hearing or trial; (c) the right to object on any ground at any time to a demand for further responses to the Requests; (d) the right to revise, amend, supplement, or clarify any of the responses and objections set forth herein; and (e) the right to move the Court for a protective order with respect to the Requests.

**OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS**

14.     RF objects to the "Instructions" and "Definitions" insofar as they incorporate purported facts.  RF does not adopt or confirm the accuracy of any purported facts incorporated in any of the Instructions or Definitions.

15.     RF objects to Instructions 1, 2, and 6, because they purport to impose on RF obligations greater than those imposed by the Florida Rules of Civil Procedure and/or Florida law. To the extent that RF is required to produce any responsive documents, it will do so in a manner that complies with the Florida Rules of Civil Procedure and Florida law.

16.     RF objects to Instruction 4 because it purports to impose obligations greater than those imposed by the Florida Rules of Civil Procedure and/or Florida law.  To the extent that RF is required to produce any responsive documents, it will produce a privilege log consistent with its obligations under Florida law and the Florida Rules of Civil Procedure.

17.     RF objects to Definition "A" as overbroad and unduly burdensome. RF will construe the term "document" in accordance with Florida Rule of Civil Procedure 1.350(a) to mean "electronically stored information, writings, drawings, graphs, charts, photographs, audio, visual, and audiovisual recordings, and other data compilations from which information can be obtained."

18.     RF objects to Definition "G" as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. RF will interpret the defined terms to mean Roche Freedman LLP.

**SPECIFIC OBJECTIONS AND RESPONSES**

1.     All documents related to RF's ownership interest in Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

      2.      All documents related to RF's ownership interest in Ava Labs' tokens.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

      3.      All documents related to the MOU.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

      4.      All documents related to RF's engagement agreement with Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending

6

action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

5.      All documents related to Kyle Roche's ownership interest in Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

6.      All documents related to RF's ownership interest in Avalanche.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

7.      All documents related to Kyle Roche's ownership interest in Avalanche.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not produce any documents in response to this Request.

       8.     All documents related to Gun's ownership interest in Avalanche.

     **RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

       9.     All documents related to Sekniqi's ownership interest in RF.

     **RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

      10.    All documents related to "shared workspaces" between or among RF, Ava Labs, or Avalanche.

     **RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not produce any documents in response to this Request.

11.     All documents related to any lease executed by RF for the "shared workspace" referred to in Request 10.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

12.     All documents related to any lease executed by the Ava Labs for the "shared workspace" referred to in Request 10.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

13.     All documents related to "academic writings" in your possession authored by either you, Gun, or both.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of

Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

14.     All documents related to Ava Labs' capitalization tables on which Kyle Roche's name appears.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

15.     All documents related to Ava Labs capitalization tables on which any member of RF appears.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

16.     All documents related to RF's use of straw plaintiffs to bring actions on behalf of Ava Labs in which Ava Labs did not appear.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending

action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

17.     All documents related to RF's communications with the Securities and Exchange Commission in which you attempted to direct regulator attention toward an Ava Labs' competitor.

        **RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

18.     All documents related to RF's communications with the Commodities Futures Trading Commission in which you attempted to direct regulator attention toward an Ava Labs' competitor.

        **RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

19.     All documents related to Kyle Roche's residence in Florida for tax purposes.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

Dated: October 14, 2022                    Respectfully submitted,

*/s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman, Esq.
Florida Bar No. 99762
**ROCHE FREEDMAN LLP**
1 SE 3rd Ave., Suite 1240
Miami, Florida 33131
Telephone: (786) 924-2900
vel@rochefreedman.com

Stephen Lagos (*pro hac vice* pending)
**ROCHE FREEDMAN LLP**
99 Park Avenue, Suite 1910
New York, NY 10016
slagos@rochefreedman.com

*Counsel to Defendant and Non-Party Roche Freedman LLP*