# EXHIBIT 10

IN THE 15TH JUDICIAL CIRCUIT,
IN AND FOR PALM BEACH COUNTY,
FLORIDA

CASE NO. 50-2013-CP-005060-XXXX-NB
PROBATE DIVISION

IN RE: ESTATE OF DAVID KLEIMAN,

     deceased.

_____ /

### THE ESTATE'S MOTION FOR PROTECTIVE ORDER
### AND TO QUASH DISCOVERY RELATING TO
### <u>NON-PARTY RAMONA ANG'S MOTION TO DISQUALIFY</u>

Ira Kleiman, as personal representative of the Estate of David Kleiman (the "Estate"), hereby moves pursuant to Florida Rules of Civil Procedure 1.280(c), 1.380(a)(4), and 1.410 for a protective order and to quash discovery relating to non-party Ramona Ang's Motion to Disqualify Roche Freedman LLP (n/k/a Freedman Normand Friedland LLP) ("FNF" or the "Firm"), and for fees incurred in connection with this motion.

### <u>INTRODUCTION</u>

In November 2021, on behalf of the Estate's company W&K Info Defense Research LLC ("W&K"), FNF successfully obtained a $143-million judgment against an Australian computer scientist named Craig Wright after a four-week jury trial in federal court. That judgement was one of the largest of the year. Moreover, during the course of over four years of litigation, the Firm obtained highly embarrassing orders against Wright, including findings, by clear and convincing evidence, that he is a perjurer, forger, and purposely obstructed judicial proceedings.

As explained below, this litigation is one of many revenge-suits filed by Craig Wright's extended family in retaliation for the success of the Federal Action. The underlying merits of these

many revenge-suits will be dealt with another time. In the interim, however, Wright's current wife, Ramona Ang—*who is not even a party to this action*—has sought to take advantage of certain inappropriate statements made by a former member of this Firm to frivolously seek to disqualify the entire Firm from representing the Estate. In support of that absurd motion, ***and while this action was stayed***, Wright's wife sent improper discovery to the Firm, a non-party to this litigation, and served subpoenas on the Firm's current and former attorneys and clients. Multiplying that burden, she did the same thing in two of her other lawsuits against Ira Kleiman and W&K, ultimately serving three sets of RFPs and three sets of RFAs on the Firm, in addition to several subpoenas for depositions and documents that she served on other non-parties.

The Estate brings this motion to stop this harassing, time-consuming, and baseless discovery, which has nothing to do with the merits of this action. As explained below, the discovery requests and subpoenas should be quashed because (i) they were served in violation of the Court's order staying this action, (ii) they are not permitted by the Florida Rules of Civil Procedure, (iii) discovery is not necessary to resolve Wright's wife's frivolous disqualification motion, and (iv) Wright's wife cannot make a showing that she is entitled to discovery from opposing counsel. Moreover, because Wright's wife and her counsel have baselessly refused to stop these wasteful discovery efforts, they should be ordered to pay the Estate's expenses in connection with this motion pursuant to Rules 1.280(c) and 1.380(a)(4).

## <u>SUMMARY OF ARGUMENT</u>

Velvel (Devin) Freedman of FNF has represented Ira Kleiman, the Estate of David Kleiman (the "Estate"), and the related business W&K Info Defense Research, LLC ("W&K") as lead counsel since 2018.

In September 2022, Ramona Ang nevertheless filed a motion to disqualify him and his firm and thus end that representation. Indeed, in that motion, Ms. Ang claims that the Firm has a disqualifying conflict of interest between its representation of the Estate and another client, Ava Labs. This is so, she says, because (i) her husband, Dr. Craig Wright, is Ava Labs's CEO's "nemesis" and (ii) she believes that former Firm attorney Kyle Roche prosecuted an action in federal court on behalf of the Estate and W&K against Wright to improperly benefit that CEO.

On its face, the theory is not only irrelevant to Ms. Ang who has no standing to bring this motion (*e.g.*, she is not a former client with confidential information at stake), but it is also absurd. Ms. Ang does not accuse Mr. Roche or the Firm of doing anything improper in ***this*** litigation, which was commenced by Wright's ex-wife, Lynn. Indeed, Mr. Roche, the individual with the allegedly improper motive, is no longer even with the Firm, and the Firm no longer represents Ava Labs. Moreover, the supposedly "improper" lawsuit against Dr. Wright—to the extent it has any relevance to the disqualification inquiry at all—was commenced in early 2018, before Ava Labs or the Firm even existed, while Mr. Roche was a second-year associate, and ***resulted in a $143-million judgment being entered in W&K's favor against Wright***. Ms. Ang's disqualification motion is, in short, frivolous, and nothing more than her and her husband's latest effort to frustrate W&K's ability to collect on its nine-figure judgment.

Consistent with that understanding, since filing her disqualification motion, Ms. Ang has used it as a basis to inundate the Firm and its current and former attorneys and clients with harassing and irrelevant discovery demands about the Firm's operations and former clients. As her motions in her other matters make clear, her view is that a party is entitled to discovery from opposing counsel whenever it files a motion for disqualification, regardless of whether that motion is completely frivolous. As common sense would suggest, that is not the law.

Indeed, as explained below, where a motion for disqualification can be resolved without reliance on disputed facts, no evidentiary hearing—and thus no discovery—is appropriate. That is the case here. Ms. Ang's motion for disqualification can be denied without relying on any disputed or disputable facts because (i) she lacks standing to seek disqualification, (ii) she has failed to identify that Mr. Roche had any disqualifying conflict, (iii) any such conflict would not be imputed to the Firm, and (iv) disqualification would unduly harm the Estate. Accordingly, no discovery is necessary, and Ms. Ang's many discovery requests and subpoenas should be quashed.

Even setting aside the merits of Ms. Ang's motion for disqualification, the Estate's motion should be granted for several additional and independent reasons. First, Ms. Ang's discovery requests and subpoenas were served while this action was stayed. Second, Ms. Ang has used party-based discovery mechanisms against FNF, a non-party, in disregard of the Florida Rules of Civil Procedure. Third, the discovery sought is irrelevant to the merits of this action and is therefore outside of the scope of permissible discovery delineated by Florida Rule of Civil Procedure 1.280(b). Fourth, Ms. Ang cannot meet the heavy burden that Florida courts impose on party's seeking discovery from opposing counsel.

For these reasons, Ms. Ang's harassing discovery requests and subpoenas should be quashed, and she should be precluded from seeking further discovery in connection with her motion to disqualify. She should, moreover, be ordered to pay the Estate's costs and attorneys' fees incurred in resisting this baseless discovery.

## **FACTUAL BACKGROUND**

### I.    **THE FEDERAL ACTION**

In February 2018, the Estate—represented by Vel Freedman, an attorney at Boies Schiller Flexner LLP—commenced an action in federal court against Craig Wright (the "Federal Action"),

the self-proclaimed inventor of bitcoin and husband of Ms. Ang. (*See generally* Compl., *Kleiman v. Wright*, No. 9:18-cv-80176 (S.D. Fla. Feb. 14, 2018), ECF No. 1.) Three months later, the Estate, along with the decedent David Kleiman's company, W&K Info Defense Research, LLC ("W&K"), filed an amended complaint against Wright. (*See* Am. Compl., *Kleiman*, No. 9:18-cv-80176 (S.D. Fla. May 14, 2018), ECF No. 24.) In that amended complaint, the Estate and W&K alleged that David Kleiman, Wright, and W&K obtained bitcoin and developed valuable blockchain-related intellectual property together, but that Wright stole those assets for himself after David died in April 2013. (*Id.* ¶¶ 52-131.) The Estate and W&K claimed that their resulting damages could be as high as $11 billion. (*Id.* ¶ 114.) [1]

Given his massive potential exposure, Wright repeatedly sought, often through questionable means, dismissal of Plaintiffs' claims. In April 2018, for example, he submitted a demonstrably false declaration in support of his motion to dismiss on personal jurisdiction grounds. (Mot. for Sanctions at 1-2, *Kleiman*, No. 9:18-cv-80176 (S.D. Fla. May 21, 2020), ECF No. 512.) In June 2018, he submitted another false declaration, this time in support of his motion to dismiss on *forum non conveniens* grounds. (*Id.*) And in April 2019, he was forced to withdraw "Exhibit A" to his motion for judgment on the pleadings, after that document was exposed as a forgery. (*Id.* at 2.)

Wright similarly sought to obstruct discovery. For example, Wright took the position that it was "impossible" for him to comply with his discovery obligations because the information

---

[1] In August 2019, after the Estate and W&K had successfully opposed a series of dispositive motions from Wright, Kyle Roche and Devin (Velvel) Freedman left Boies Schiller Flexner LLP ("BSF") to form their own firm, Roche Freedman LLP. (*See, e.g.*, Notice of Change of Firm, *Kleiman*, 9:18-cv-80176 (S.D. Fla. Aug. 8, 2019), ECF No. 259.)  For the duration of the litigation, which resulted in a $143-million judgment against Wright, the Estate and W&K were represented by Roche Freedman LLP and BSF.

sought was locked in the Tulip Trust, whom Ms. Ang purports to represent. (*Id.* at 3-6.) Following a multi-day evidentiary hearing, the court unequivocally rejected that claim, concluding, among other things, that Wright had "intentionally submitted fraudulent documents to the Court, obstructed a judicial proceeding, and gave perjurious testimony"; that Wright's "testimony that [the Tulip Trust] exists was intentionally false" and "part of a sustained and concerted effort to impede discovery into his bitcoin holdings"; and that Wright "willfully created the fraudulent documents." (*Id.* at 6-7.)[2]

In September 2020, the court denied Wright's motion for summary judgment (*see* Order on MSJ, *Kleiman*, No. 9:18-cv-80176 (S.D. Fla. Sept. 21, 2020), ECF No. 615), and the case proceeded to a four-week jury trial in November of 2021. The jury found that Wright converted W&K's intellectual property and was liable for $100 million in compensatory damages. (Jury Verdict, *Kleiman*, No. 9:18-cv-80176 (S.D. Fla. Dec. 6, 2021), ECF No. 812.) The court subsequently entered a final judgment against Wright for $143 million to reflect prejudgment interest. (Amended Final Judgment, *Kleiman*, No. 9:18-cv-80176 (S.D. Fla. Mar. 9, 2022), ECF No. 889.)

The jury, however, found in Wright's favor on the Estate's claims. Earlier this year, the Estate appealed the verdict on the grounds that Wright's counsel—who represents Ms. Ang here—repeatedly violated the Court's pretrial order precluding evidence concerning the relationship between Ira and David Kleiman.  (Notice of Appeal, *Kleiman*, No. 9:18-cv-80176 (S.D. Fla. Apr.

---

[2] Notwithstanding the fact that he was sanctioned for this misconduct, Wright has continued to defraud courts across the world. *See, e.g.*, Wright v. McCormack [2022] EWHC 2068 (QB), ¶¶ 110-11 (finding that Wright's case was premised on "deliberately false" evidence), https://www.judiciary.uk/wp-content/uploads/2022/08/Wright-v-McCormack-Judgment.pdf.

8, 2022), ECF No. 892). That appeal is currently pending before the Court of Appeals for the Eleventh Circuit.

## II.    THE FLORIDA ACTIONS

As the Federal Action progressed, Wright grew desperate to stop it. He then deputized his ex-wife and wife to file actions in Florida state court to derail the Federal Action, and then to obstruct W&K's ability to collect its $143 million judgment against him.

For example, in July 2020, Wright's ex-wife, Lynn Wright, commenced an adversary proceeding against Ira Kleiman in this probate proceeding. (Verified Petition, *In re Estate of David Kleiman*, No. 50-2013-CP-005060-XXXX-NB (Fla. 15th Cir. Ct. July 16, 2020).) In her complaint, she asserted that she obtained a membership interest in W&K from Tulip Trust on July 10, 2020, just a few days before she filed her lawsuit. (*Id.* ¶ 30.) She sought, among other things, an order enjoining Ira Kleiman from acting on behalf of W&K in connection with the Federal Action. (*Id.* ¶¶ 49-54.) In December 2020, this Court stayed Ms. Wright's action. (*See* Order Staying Petition of Lynn Wright, *In re Estate of David Kleiman*, No. 50-2013-CP-005060-XXXX-NB (Fla. 15th Cir. Ct. Dec. 4, 2020).)

Not giving up, Wright then turned to his current wife, Ms. Ang (also known as Ms. Watts), who commenced another lawsuit against Ira in Florida state court. In her initial complaint, she alleged that she was the trustee of the non-existent Tulip Trust, that Tulip Trust was a member of W&K, and that Ira Kleiman breached his duties to W&K by "intentionally deleting data and using [David] Kleiman's electronic devices . . . ." (Compl. ¶ 37, *Ang v. Kleiman*, No. 50-2021-CA-004758-XXXX-MB (Fla. 15th Cir. Ct. Apr. 13, 2021).)[3] But shortly after the jury found in W&K's

---

[3] The Estate believes that these allegations are knowingly false, including because Judge Reinhart concluded by clear and convincing evidence in the Federal Action that Wright lied

favor at trial in the Federal Action, Ms. Ang abruptly changed course, abandoned her tort claims, and amended her complaint to seek the same relief that Ms. Wright sought—*i.e.*, an order enjoining Ira Kleiman from acting on behalf of W&K. (Am. Compl. ¶¶ 32-54, *Ang v. Kleiman*, No. 50-2021-CA-004758-XXXX-MB (Fla. 15th Cir. Ct. Mar. 4, 2022).)

In June 2022, Ms. Ang filed yet another lawsuit in Florida state court, this time against W&K. *See* Civil Cover Sheet, *Watts v. W and K Info Defense LLC*, Case No. 50-2022-CA-005501-XXXX-MB (Fla. 15th Cir. Ct. June 7, 2022). In that action, she sought to enforce a U.K court judgment that she obtained for fees that she incurred while being deposed as a third party in the Federal Action. W&K, despite receiving no payments from Ms. Ang's husband in connection with its $143-million judgment against him, paid Ms. Ang's judgment in October 2022. Ms. Ang accordingly voluntarily dismissed that action on November 4, 2022. (Notice of Voluntary Dismissal, *Watts v. W&K Info Defense Research LLC*, No. 50-2022-CA-005501-XXXX-MB (Fla 15th Cir. Ct. Nov. 4, 2022).)

Approximately two weeks after receiving payment for that judgment, Ms. Ang served Ira with yet another lawsuit. *See* Verified Compl., *Tulip Trust v. Ira Kleiman*, Case No. 50-2022-CA-004636-XXXX-MB (Fla. 15th Cir. Ct. May 13, 2022.) In this fourth lawsuit, brought on behalf of the fictious Tulip Trust, she alleged that Tulip Trust is a member of W&K, and that Ira improperly acted on behalf of W&K in pursuing litigation against Mr. Ang's husband, Wright, and incurring

---

about the existence of the Tulip Trust. (Order on Mot. to Compel at 21, *Kleiman*, 9:18-cv-80176 (S.D. Fla. Aug. 27, 2019), ECF No. 277 ("The totality of the evidence in the record does not substantiate that the Tulip Trust exists. Combining these facts with my observations of Dr. Wright's demeanor during his testimony, I find that Dr. Wright's testimony that this Trust exists was intentionally false. . . . Although I am only required to make this finding by a preponderance of the evidence, I find clear and convincing evidence to support it.").) Notably, courts have previously found that Ms. Ang—like her husband—has provided "untruthful" evidence in litigation. *See, e.g.*, *Ang v. Reliantco Invs. Ltd.* [2020] EWHC 3242, ¶ 105, https://www.casemine.com/judgement/uk/5fc48a212c94e0481f26a9ba.

costs in connection with that litigation, including the costs of deposing Ms. Ang herself and Andrew O'Hagan, both key witnesses at the trial in the Federal Action. (*Id.* ¶¶ 19-23.)

### III.    THE CRYPTOLEAKS ARTICLE AND SPY VIDEOS

In August 2022, an anonymous tabloid website, CryptoLeaks, released an article about Kyle Roche, and one of Mr. Roche's former clients, Ava Labs. That article purports to share "extensive spy videos" of Mr. Roche, recorded without his knowledge or consent, at meetings with unidentified individuals. CryptoLeaks accuses Mr. Roche of being involved in an "evil conspiracy," suggests that he is a "psychopath," and theorizes that he "established a secret pact" with Ava Labs, pursuant to which he agreed to commence frivolous class actions against Ava Labs' competitors, for purposes of "[h]arvesting confidential information," "[h]arming competitors," and "fooling regulators." (Ex. 1 at 1, 5, 9-12, 26.) CryptoLeaks further claims that Mr. Roche used litigation to "secretly pursue" the "personal vendettas" of Ava Labs' CEO, Emin Gun Sirer. (*Id.* at 4.)

### IV.    ROCHE SEPARATES FROM THE FIRM

Although the allegations against Mr. Roche are false, and it appears Mr. Roche's comments were simply improper and untrue rodomontade, FNF was deeply concerned by the suggestion that he had engaged in unethical conduct. To address those concerns, and considering his inappropriate statements, Mr. Roche is no longer with the Firm. Moreover, neither Mr. Roche nor FNF represent Ava Labs any longer.[4]

### V.    WRIGHT AND HIS CURRENT AND FORMER SPOUSES MOVE TO DISQUALIFY ROCHE FREEDMAN LLP AND SUBSEQUENTLY FLOOD ROCHE FREEDMAN LLP WITH DISCOVERY REQUESTS

---

[4] The Firm acts as local counsel to one of Ava Labs' principals in a longstanding defamation action.

After the videos were released, Wright, Ms. Wright, and Ms. Ang each filed substantively-identical motions to disqualify Roche Freedman LLP from representing the Estate and W&K.

On September 6, 2022, Wright filed a motion before the Court of Appeals for the Eleventh Circuit in the Federal Action. (*See* Mot. for Disqualification, *Kleiman v. Wright*, No. 22-11150 (11th Cir. Sept. 6, 2022).) Around the same time, Ms. Ang filed a nearly identical motion in this action (where Ms. Wright asserts claims against the Estate), which was later joined by Ms. Wright on October 27. In mid-September, Ms. Ang filed additional motions to disqualify in her action against Ira and in her now-dismissed action against W&K. (*See* Mot. to Disqualify, *Ang v. Kleiman*, No. 50-2021-CA-004758-XXXX-MB (Fla. 15th Cir. Ct. Sept. 9, 2022); Mot. to Disqualify, *Watts v. W&K Info Defense Research LLC*, No. 50-2022-CA-005501-XXXX-MB (Fla. 15th Cir. Ct. Sept. 27, 2022).) And on November 28, Wright filed a motion to disqualify Roche Freedman LLP in the district court in the Federal Action (Mot. to Disqualify, *Kleiman v. Wright*, No. 9:18-cv-80176 (S.D. Fla. Nov. 28, 2022), ECF No. 900).)

Although Wright, his wife, and his ex-wife are not the only litigants to have sought to capitalize on Mr. Roche's statements by moving to disqualify Roche Freedman LLP from representing clients in active litigation, it bears emphasizing that the only court to consider such a motion outside of the class-action context denied it (**without discovery**) on the grounds that the accusations against the Firm were "speculative" and that, in any event, non-clients lacked standing to complain about an alleged conflict among the Firm's clients. (*See* Ex. 2, Order, *Temujin Labs Inc. v. Abittan*, Case No. 20CV372622 (Cal. Super. Ct. Nov. 21, 2022).) And unlike any other party that has sought to disqualify the Firm in light of Mr. Roche's statements, Ms. Ang has sought to burden FNF and other non-parties with extensive disqualification-related discovery. On September 27, 2022, for example, she served FNF with nineteen document requests, which seek,

among other things, "[a]ll documents related" to "Kyle Roche's residence in Florida for tax purposes" and "[a]ll documents related to 'academic writings' in your possession." (Ex. 3 at 7.) On the same day, she served FNF with twenty-six RFAs, demanding that FNF admit, among other things, that it does "not care about settling lawsuits." (Ex. 4 at 3.) She served FNF with identical RFPs and RFAs in her actions against Ira and W&K. (Exs. 5-8.) FNF timely objected to all six of these sets of requests on relevance and other grounds. (Exs. 9-14.)

But the harassing discovery did not stop there. Ms. Ang has also sought to burden current and former FNF attorneys and clients with discovery. In October, without providing any prior notice to the Estate or its counsel, *and while this action was stayed*, she served Mr. Freedman, Mr. Roche, and an Ava Labs executive with multiple subpoenas for depositions scheduled for January 2023. (*E.g.*, Ex. 15-17.) At around the same time, she served Ava Labs with document subpoenas, which requested the same nineteen categories of documents that Ms. Ang sought from FNF in her September 27, 2022, RFPs.

## VI.    MS. ANG REFUSES TO PAUSE DISCOVERY WHILE HER RELATED MOTION TO COMPEL IS PENDING

After FNF timely objected to Ms. Ang's RFPs and RFAs, Ms. Ang filed a motion to compel in her action against Ira. (*See* Ex. 18, Mot. to Compel, *Ang v. Kleiman*, No. 50-2021-CA-004758-XXXX-MB (Fla. 15th Cir. Ct. Oct. 18, 2022).) FNF filed its opposition on November 28, where it argued, among other things, that Ms. Ang was not entitled to *any* discovery relating to her disqualification motion because that motion could readily be denied without discovery (*See* Opp. to MTC at 14-23, *Ang v. Kleiman*, No. 50-2021-CA-004758-XXXX-MB (Fla. 15th Cir. Ct. Nov. 28, 2022).) Following a UMC hearing on November 29, the court directed the parties to special set Ms. Ang's motion for a 30-minute hearing.

Given that the Court could conclude at that special set hearing that Ms. Ang is not entitled to any disqualification-related discovery, the Estate requested that Ms. Ang pause all disqualification-related discovery that she was pursuing in each of the Florida Actions. Ms. Ang, through her counsel, flatly refused. (Ex. 19.) That refusal necessitated this motion, which seeks to relieve the Estate's current and former counsel, as well as the Estate's counsel's former clients, from the burdens of Ms. Ang's harassing and irrelevant discovery demands, including depositions scheduled for January 2023.

## ARGUMENT

### I.    THE ESTATE HAS STANDING TO MOVE FOR A PROTECTIVE ORDER AND TO QUASH IRRELEVANT THIRD-PARTY DISCOVERY

As a threshold matter, the Estate has standing to object to Ms. Ang's third-party discovery on relevance and reasonableness grounds. *See Sunrise Shopping Ctr., Inc. v. Allied Stores Corp.*, 270 So. 2d 32, 34-35 (Fla. 4th DCA 1972) ("Considering these several rules in pari materia, we conclude that the defendants had standing to seek an order quashing the subpoena duces tecum on the grounds that it was unreasonable and oppressive as to the witness. We might add that this view accommodates a practical approach to the not unusual situation where a witness, served with a subpoena duces tecum which he feels to be unreasonable and oppressive, will simply complain to the other party of the hardship, and that party in turn will more likely than not present the issue to the court without the necessity of the witness being put to the trouble and expense of presenting a motion on his own behalf.").

### II.   THE STAY PRECLUDES MS. ANG FROM SEEKING DISCOVERY AND VITIATES DISCOVERY REQUESTS SERVED DURING ITS PENDENCY

Ms. Ang should be barred from pursuing discovery relating to her disqualification motion because this matter is currently stayed and was stayed at the time that she served her discovery

requests and subpoenas. A stay is a court order, and a party that violates it may be held in contempt. *See State ex rel. Schwartz v. Lantz*, 440 So. 2d 446, 448 (Fla. 3d DCA 1983) ("Thus, if the stay order which was violated was clear as to its effect and operation, proof of intent is unnecessary."). Similarly, actions taken in violation of a stay are void and invalid. *See, e.g.*, *Hillsborough Cty. Hosp. Auth. v. Tampa Heart Inst.*, 472 So. 2d 748, 755 (Fla. 2d DCA 1985) ("We conclude that Florida Rule of Appellate Procedure 9.310(b)(2) automatically stayed further action by appellee HRS and the proceedings taking place after this appeal are invalid.").

***This matter, as Ms. Ang concedes in her motion to disqualify, has been stayed since December 4, 2020***. Nevertheless, in September and October 2022, in blatant and knowing violation of that order, Ms. Ang filed a motion to disqualify, served FNF with RFPs and RFAs; served Mr. Freedman, Mr. Roche, and an Ava Labs executive with deposition subpoenas; and served Ava Labs with a document subpoena. These actions are void, and each of the foregoing discovery requests should be quashed. Ms. Ang plainly cannot seek discovery while this action is stayed. Her refusal to stop this discovery is frivolous and should not be rewarded.

## III.   THE DISCOVERY SOUGHT IS NOT PERMITTED BY THE FLORIDA RULES OF CIVIL PROCEDURE

### a.   Ms. Ang Cannot Use Party Discovery Devices to Seek Discovery from FNF

The discovery requests that Ms. Ang served on FNF should be quashed because FNF is not a party to this action and therefore cannot be compelled to respond to RFPs or RFAs served pursuant to Florida Rules of Civil Procedure 1.350 or 1.370.

"The rules of civil procedure provide for certain discovery tools that may be used *only* by one party on another party," including interrogatories under Rule 1.340, requests for production under Rule 1.350, and requests for admissions under Rule 1.370. *Sjuts v. State*, 754 So. 2d 781, 782 (Fla. 2d DCA 2000) (emphasis added). These tools, courts have found, cannot be used to

obtain discovery from non-parties. *See, e.g.*, *Parker v. James*, 997 So. 2d 1225, 1227 (Fla. 2d DCA 2008) ("There is no authority under the Florida Rules of Civil Procedure or in Florida case law for propounding interrogatories to a nonparty witness, expert or not.").

But that is precisely what Ms. Ang seeks to do here. Indeed, her RFPs and RFAs (served pursuant to Florida Rules of Civil Procedure 1.350 and 1.370) are not even nominally directed at the Estate; instead, they are directed at FNF. A party's counsel is not a "party" for purposes of discovery. *See, e.g.*, *Saniefar v. Moore*, 2019 WL 3202924, at *6 (E.D. Cal. July 16, 2019) ("Plaintiff's counsel is not a party to this action and Defendants' effort to seek documents from Plaintiff's counsel under Federal Rule of Civil Procedure 34 is procedurally inappropriate. Rule 34 only permits requests for production directed at parties to the litigation."); *Carmona v. D'Alessandro*, 2015 WL 4395001, at *2 (E.D. Cal. July 16, 2015) ("[P]laintiff's request to propound interrogatories or seek documents from defendant's former counsel is inappropriate. Defendant's counsel is not a party to this action, and Rule 33 and Rule 34 of the Federal Rules of Civil Procedures only permits interrogatories and requests for production of documents to be propounded on parties."); *St. Jean v. United States*, 2008 WL 4415170, at *6 (N.D.N.Y. Sept. 23, 2008) ("[B]ecause trial counsel is not a party to this action he may not be subjected to Fed. R. Civ. P. 33 interrogatories."). Any contrary interpretation would run afoul of the fundamental principle that ordering discovery from opposing counsel is "an extraordinary step that will rarely be justified." *Iacono v. Santa Elena Holdings, LLC*, 271 So. 3d 28, 30 (Fla. 3d DCA 2018).

### b. Ms. Ang Seeks Information Outside the Scope of Rule 1.280(b)

The disqualification-related discovery that Ms. Ang seeks pursuant to Florida Rules of Civil Procedure 1.350, 1.370, and 1.410 should also be quashed because it is not relevant to the merits of this action and is therefore outside the scope of permissible discovery.

Under Florida Rule of Civil Procedure 1.280(b), "[d]iscovery in civil cases must be relevant to the subject matter of the case and must be admissible or readily calculated to lead to admissible evidence." *Capco Props., LLC v. Monterey Gardens of Pinecrest Condo.*, 982 So. 2d 1211, 1213-14 (Fla. 3d DCA 2008); *Rousso v. Hannon*, 146 So. 3d 66, 69 (Fla. 3d DCA 2014) (same). That limitation applies to requests for document production made pursuant to Rule 1.350, requests for admission made pursuant to Rule 1.370, and subpoenas issued to non-parties pursuant to Rule 1.410. *See Clemens v. Namnum*, 233 So. 3d 1146, 1148 (Fla. 4th DCA 2017) ("Florida Rule of Civil Procedure 1.370 governs requests for admissions and provides, in part, that '[a] party may serve upon any other party a written request for the admission of the truth of any matters within the scope of rule 1.280(b) set forth in the request that relate to statements or opinions of fact or of the application of law to fact.'" (quoting Fla. R. Civ. P. 1.370(a)) (alterations omitted)); *State Dep't of Highway Safety v. Kropff*, 445 So. 2d 1068, 1069 n.1 (Fla. 3d DCA 1984) ("Rule 1.350 in turn limits the scope of such a request to documents constituting or containing matters within the scope of Florida Rule of Civil Procedure 1.280(b)."); *United States Sugar Corp. v. Estate of Mullins*, 211 So. 3d 110, 112-13 (Fla. 4th DCA 2017) (applying Rule 1.280 to limit third-party discovery sought in probate proceeding). Accordingly, where a party seeks irrelevant information from non-parties, a motion for a protective order should be granted and the irrelevant discovery demands should be quashed. *See Juul Labs, Inc. v. Feldman*, 338 So. 3d 1, 1 (Fla. 4th DCA 2022) ("Because we have held that such JUUL evidence is irrelevant to the issues raised against Philip Morris in this case, we reverse the trial court's order to the extent it denied appellants' motion for a protective order and quash the orders appointing a commissioner and allowing Florida and California subpoenas to be issued for Monsees' deposition.").

To date, Ms. Ang has served (i) FNF with RFPs and RFAs pursuant to Florida Rules of Civil Procedure 1.350 and 1.370 and (ii) Mr. Roche, Mr. Freedman, an Ava Labs executive, and Ava Labs with subpoenas pursuant to Florida Rule of Civil Procedure 1.410. But **none** of the discovery that she seeks is relevant to the merits of this action. *See Compton & Assocs., P.A. v. Porlick, Poliquin, Samara, Inc.*, 662 So. 2d 428, 429 (Fla. 3d DCA 1995) (trial court "departed from the essential requirements of law in compelling the production" of irrelevant documents); *Begel v. Hirsch*, 350 So. 2d 514, 515 (Fla 4th DCA 1977) ("The trial court erred in denying Begel's motion for a protective order to the extent that the notice to produce sought production of documents on irrelevant matters."). She cannot and will not argue otherwise.

Indeed, when Ms. Ang sought to compel FNF to respond to the identical RFPs and RFAs served in her lawsuit against Ira, she made clear that the discovery concerned **only** her motion for disqualification (*see* Ex. 18, Mot. to Compel at 1, *Ang v. Kleiman*, No. 50-2021-CA-004758-XXXX-MB (Fla. 15th Cir. Ct. Oct. 18, 2022)); the subpoena served on Ava Labs is limited to these same requests. Moreover, Ms. Ang's counsel represented to Mr. Freedman that the proposed depositions of Mr. Freedman, Mr. Roche, and the Ava Labs executive relate to Ms. Ang's disqualification motion. (Ex. 20.) That comports with common sense: Ava Labs has no conceivable relevance to the merits of this action, which concerns whether Lynn Wright has a membership interest in W&K and whether Ira Kleiman had authority to act on behalf of W&K in connection with the Federal Action.

Accordingly, Ms. Ang's discovery requests and subpoenas should be quashed, and the Court should bar her from continuing to pursue disqualification-related discovery that has no bearing on the merits of this action.

## IV.    DISCOVERY IS UNNECESSARY TO RESOLVE MS. ANG'S MOTION TO DISQUALIFY

Ms. Ang's disqualification-related discovery should be quashed, and she should be barred from seeking discovery relating to her motion to disqualify, because her motion to disqualify may readily be resolved against her without any discovery. The discovery she seeks is, in other words, wholly unnecessary.

### a.   Evidentiary Hearings Are Only Required Where Material Facts are Disputed

In the motion to compel that she filed in her action against Ira, Ms. Ang argued that she is entitled to discovery because (i) an evidentiary hearing is always required to resolve a motion for disqualification and (ii) she needs evidence for that hearing. (*See* Ex. 18, Mot. to Compel at 4-5, *Ang v. Kleiman*, No. 50-2021-CA-004758-XXXX-MB (Fla. 15th Cir. Ct. Oct. 18, 2022).) But the premise of her argument—that an evidentiary hearing is required here—does not hold.

Indeed, contrary to her assertion, Ms. Ang's cited authority does not stand for the proposition "that an evidentiary hearing on every motion to disqualify counsel is required." *Allstate Ins. Co. v. Bowne*, 817 So. 2d 994, 998 (Fla. 4th DCA 2002) (distinguishing *Sch. Bd. of Broward Cty. v. Polera Bldg. Corp.*, 722 So. 2d 971 (Fla. 4th DCA 1999)). Instead, as those cases and others make clear, an evidentiary hearing on a motion to disqualify is only necessary "where material facts are in dispute." *Id.* (quoting *Sch. Bd. of Broward Cty.*, 722 So. 2d at 974). Where, as here, the motion could be resolved without relying on disputed facts, courts recognize that an evidentiary hearing would only serve "to cause the parties unnecessary expense," and resolve the motion without such a hearing. *Id.*

At bottom, Ms. Ang's position is that a party that files a motion to disqualify is *automatically* entitled to discovery. (Ex. 18 at 3.) Such a rule, if accepted, would lead to absurd consequences. Indeed, if Ms. Ang were correct, then any party that filed a motion to disqualify— regardless of how frivolous that motion was—would be permitted to obtain intrusive discovery

from opposing counsel. That would not only encourage frivolous motions to disqualify (like the one here), but it would also fly in the face of the fundamental principle that discovery from opposing counsel "will rarely be justified." *Iacono*, 271 So. 3d at 30. Fortunately, that is not the law, and Ms. Ang has not provided any authority that suggests otherwise.

### b. No Evidentiary Hearing is Necessary Because Ms. Ang's Motion to Disqualify May Be Denied Without Reference to Disputed Facts

Ms. Ang is not entitled to discovery because, as explained below, her motion for disqualification may readily be denied without reference to any disputed or disputable fact.

### i. Disqualification is Disfavored

"It is generally agreed that a client has a right to counsel of his or her choice," and that "[d]isqualification may impose extreme hardships on the client because this very valuable right is taken away." *Anderson Trucking Serv., Inc. v. Gibson*, 884 So. 2d 1046, 1049 (Fla. 5th DCA 2004). Indeed, "attorneys are not fungible items that can be removed and conveniently replaced without causing undue hardship to the client and to the attorney." *Id.* For these reasons, "the courts have consistently recognized that '[d]isqualification of a party's chosen counsel is an extraordinary remedy and should be granted sparingly.'" *Id.* (quoting *Cunningham v. Appel*, 831 So. 2d 214, 215 (Fla. 5th DCA 2002)); *see also Applied Dig. Sols., Inc. v. Vasa*, 941 So. 2d 404, 407 (Fla. 4th DCA 2006) ("Disqualification of a party's counsel is an extraordinary remedy and should be resorted to sparingly." (quoting *Alexander v. Tandem Staffing Sols., Inc.*, 881 So. 2d 607, 608-09 (Fla. 4th DCA 2004)); *Stopa v. Cannon*, 330 So. 3d 1033, 1035 (Fla. 2d DCA 2021) ("Since the remedy of disqualification strikes at the heart of one of the most important associational rights, it must be employed only in extremely limited circumstances." (quoting *Coral Reef of Key Biscayne Developers, Inc. v. Lloyd's Underwriters at London*, 911 So. 2d 155, 157 (Fla. 3d DCA 2005))).

### ii. Ms. Ang Lacks Standing to Seek Disqualification

Ms. Ang's motion to disqualify should be denied without discovery because she does not have standing. "As a general proposition, a party does not have standing to seek disqualification where, as here, there is no privity of contract between the attorney and the party claiming a conflict of interest." *THI Holdings, LLC v. Shattuck*, 93 So. 3d 419, 424 (Fla. 2d DCA 2012) (cleaned up); *Cont'l Cas. Co. v. Przewoznik*, 55 So. 3d 690, 691 (Fla. 3d DCA 2011) (same); *Info. Sys. Assocs., Inc. v. Phuture World, Inc.*, 106 So. 3d 982, 984-85 (Fla. 4th DCA 2014) (same).

Here, Ms. Ang has never had an attorney-client relationship with Mr. Roche or anyone at FNF, but she nevertheless moves to disqualify FNF on the alleged grounds that Mr. Roche has a conflict of interest under Florida Rule of Professional Conduct 4-1.7(a)(2). Indeed, her argument is that Mr. Roche puts "his and the Firm's interest ahead of those of his clients" and that he is "secretly representing" Ava Labs's interests instead of his client's interests. But even if that were true—and to be clear, it isn't—that would be none of Ms. Ang's concern. *See Stopa*, 330 So. 3d at 1036-37 (no standing where movant failed to explain how he was "harmed" by "purported conflict"); *Akerman LLP v. MSP Recovery Claims, Series LLC*, 338 So. 3d 309, 310-11 (Fla. 3d DCA 2022) (no standing where conflict did not involve movant). She does not, in other words, have a "dog in that fight," *Stopa*, 330 So. 3d at 1036, and therefore lacks standing to seek disqualification on the basis of the purported conflict (*see* Ex. 2, Order at 10, *Temujin Labs Inc. v. Abittan*, Case No. 20CV372622 (Cal. Super. Ct. Nov. 21, 2022) (holding that parties that were not former clients of Roche Freedman LLP lacked standing to seek disqualification of the Firm based on alleged conflict between the Firm's client and Ava Labs)).

Ms. Ang suggests that she has standing because Mr. Roche's alleged "conflict is such as clearly to call in question the fair or efficient administration of justice." That argument is meritless. Courts have construed that exception to apply narrowly to circumstances where the attorney

targeted by the motion obtained "an informational advantage" over the movant in a prior representation, *Anderson Trucking*, 884 So. 2d at 1050-51, or literally switched sides over the course of the litigation, *see Cont'l Cas. Co.*, 55 So. 3d at 693-94 (exception inapplicable because case did "not involve circumstances where the law firm either disclosed confidences learned from representing Respondents or switched sides in violation of the Rules of Professional Conduct"). Ms. Ang does not—and cannot—allege that anything like that happened here.

### iii.   *Ms. Ang Fails to Establish that Mr. Roche Had a Disqualifying Conflict*

Even if Ms. Ang had standing, her motion to disqualify should still be denied without discovery because she cannot establish that Mr. Roche ever had a conflict of interest in *this* case, which was brought by Wright's ex-wife, Lynn.

#### 1.   Ms. Ang Fails to Establish a Personal-Interest Conflict

As an initial matter, Ms. Ang's argument that Mr. Roche has a personal-interest conflict is not relevant in light of Mr. Roche's departure from the Firm.

That said, it is also based on an unsupportable interpretation of his illegally recorded statements and should be rejected. Indeed, she claims (at 2, 12),[5] paradoxically, that Mr. Roche has a personal-interest conflict because "his business plan is never to settle a case, irrespective of his purported clients' interests, and instead to take all cases to trial," but that he also "settles because of publicity for the Firm." But in the videos that Ms. Ang cites (at 10), Mr. Roche did not say or suggest those things. Instead, with respect to Mr. Roche's supposed ironclad policy against settlement, the video clips show that Mr. Roche was crassly describing an approach to settlement

---

[5] Citations in the form "(at __)" are to Ms. Ang's motion for disqualification, which is attached as Exhibit A to Exhibit 18.

negotiation where the attorney credibly threatens to bring a matter to trial in order to achieve a more favorable result for his or her client:

> Most plaintiff-side law firms, they don't like litigating. They want to just file a lawsuit. Settle. File a lawsuit. Settle. *You say to a defendant*, I don't f------- care about settling. I'm just a crazy motherf------ and I have resources and I will take you to the end. And taking you to the end, it won't be a nuisance settlement. It will be, I've got a piece of paper that says, "I own your company now."
>
> [video cuts]
>
> I was fortunate that I did the Ava Labs deal, *so I have the ability to say*, "Look, it's not about the money anymore for me; it's about taking you guys to trial."

Ms. Ang points to no case law—and, to the Estate's knowledge, none exists—that stands for the proposition that an attorney has a disqualifying conflict of interest where he or she expresses to opposing counsel a willingness to go to trial in order to obtain a more favorable settlement offer. Indeed, even if Mr. Roche said he would never settle (he didn't), and Mr. Roche was still at FNF (he's not), Ms. Ang's argument would still fail. If parties could disqualify opposing counsel for being willing to go to trial, it would result in havoc through the judicial system. In addition, Mr. Roche represented the *defendant* in this litigation, not the plaintiff, so the settlement argument has no relevance here.

With respect to Mr. Roche's supposed preference for settlement, the 17-second video clip that Ms. Ang cites (at 10), which cuts off during the middle of Mr. Roche's sentence, does not support the inference that Mr. Roche prioritizes the interests of his firm over clients in determining whether a case should be settled. Indeed, although Mr. Roche observed that a $100-million settlement would lead to publicity for the Firm, he doesn't say—or even suggest—that he would settle a case on that basis even if it was not in the client's best interest. In any event, given Mr. Roche's departure, any such statement would be irrelevant.

2.  <u>Ms. Ang Fails to Establish a Conflict Between Mr. Roche's Previous Representation of the Estate and Ava Labs</u>

Ms. Ang's argument (at 13) that Mr. Roche has a conflict based on his simultaneous representation of Ava Labs (which he no longer represents) and the Estate (which he no longer represents) is unsupported by evidence, completely illogical, and should be rejected.

*First*, the vast majority of Ms. Ang's "evidence" is wholly irrelevant. Indeed, although she argues at length (at 12-13) that Mr. Roche improperly filed and prosecuted class actions for the benefit of Ava Labs and that he otherwise engaged in "improper conduct" in connection with class actions, this case is not a class action. Indeed, it's the defense of an action Wright's ex-wife initiated. Moreover, Ms. Ang's accusations that Mr. Roche improperly uses litigation to harm Ava Labs's competitors is similarly irrelevant, given that Ms. Ang does not and cannot argue that she "competes" with Ava Labs.

*Second*, Ms. Ang asserts (at 12-13) that Mr. Roche brought the Federal Action against Ms. Ang's husband because Ava Labs's CEO, Emin Gun Sirer, has a "rivalry" with Wright. But Ms. Ang does not—and cannot—argue that Mr. Roche improperly brought *this* action on behalf of or for the benefit or Mr. Sirer. Indeed, Mr. Roche did not commence this action at all; Ms. Wright did. Ms. Ang cites no authority for the proposition that an attorney can be disqualified in one action because he or she commenced *a different action* on behalf of a client for an allegedly improper purpose.

*Third*, even setting that aside, the notion that the Federal Action against Wright was brought for an improper purpose is absurd. That action was filed while Mr. Roche was a second-year associate at Boies Schiller Flexner LLP, before Ava Labs even existed, more than a year before Roche Freedman LLP was formed, and more than a year before Mr. Roche met, or even heard of, Mr. Sirer. It was not, as Ms. Ang contends, commenced by a "straw" plaintiff; it was

commenced by the Estate and W&K, which both believed in good faith that they had meritorious claims against Wright, based on Ira Kleiman's communications with Wright dating back to 2014. The Estate and W&K were, it turns out, correct: their claims survived multiple dispositive motions, and W&K ultimately obtained a $143-million judgment against Wright after a four-week jury trial. *Cf. In re Flinn*, 139 F.R.D. 698, 699 (S.D. Fla. 1991) ("[I]f a reasonably clear legal justification can be shown for the filing the paper in question, no improper purpose can be found and sanctions are inappropriate.").

*Fourth*, Ms. Ang claims (at 12) that Mr. Roche's representation of Mr. Sirer in another litigation, against someone named Emre Aksoy, "demonstrates an abuse of process akin to what appears to have happened to Dr. Wright." Her apparent basis for that accusation is that both Mr. Aksoy and Wright are "nemeses" of Mr. Sirer, and Mr. Roche represented plaintiffs who sued them both. That fact is unremarkable, given that Mr. Roche represented a number of clients in the crypto space and that Wright has been labeled "Bitcoin's most hated man." In any event, as in the Federal Action, there is no basis to conclude that Mr. Roche did anything improper in connection with his representation of Mr. Sirer in the action against Mr. Aksoy. Indeed, Mr. Sirer was named as the plaintiff in that action, which was a meritorious defamation action that arose out of Mr. Aksoy's false statements that Mr. Sirer was a "terrorist." (*See* Compl. *Sirer v. Aksoy*, 1:21-cv-22280 (S.D. Fla. June 22, 2021).) Mr. Sirer's identity was not "conceal[ed]," as Ms. Ang baselessly suggests.

*Fifth*, Ms. Ang cannot establish a conflict under Rule 1.7(a)(2), the rule that she invokes. Under that rule, "[t]he critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf

23

of the client." Fla. Bar R. 4-1.7 cmt. Ms. Ang's position is that Mr. Roche was representing the Estate and W&K to further Mr. Sirer's "vendetta" against Wright. If that's true, then the Estate and Mr. Sirer have precisely the same interest: to defeat Wright and his current and former spouses.

Indeed, far from identifying a probable conflict, Ms. Ang is unable to identify even a *hypothetical* divergence in interests (which would, of course, still be insufficient). *See Matter of Sea Star Line, LLC*, 2017 WL 485700, at *2 (M.D. Fla. Feb. 6, 2017) (denying motion to disqualify, where "purported conflict" was "merely hypothetical"). That is especially true where Mr. Roche is no longer at the Firm; Mr. Roche no longer represents the Estate, W&K, or Ava Labs; and FNF no longer represents Ava Labs.

*Sixth*, the objective evidence demonstrates that Mr. Roche's representation of Ava Labs, the Estate, and W&K never conflicted. Indeed, in the Federal Action, Mr. Roche helped W&K obtain a $100-million jury verdict against Wright, one of the largest jury verdicts of 2021. As a matter of common sense, that is not the kind of outcome that stems from conflicted or deficient representation.

### iv.   Ms. Ang's Rule 4-8.4 Argument is Meritless

Ms. Ang also argues (at 13-14) that Mr. Roche—who is not representing any party in this action and who is no longer at the Firm—should be disqualified because, in her view, he engaged "in conduct involving dishonesty, fraud, deceit, or misrepresentation" in violation of Florida Rule 4-8.4. Setting aside that the argument is moot given that Mr. Roche is no longer at the Firm, Ms. Ang's argument is completely meritless.

*First*, Ms. Ang does not point to any evidence that Mr. Roche engaged in such misconduct in this action. Instead, her allegation is that—in other matters—Mr. Roche brought "pretextual

lawsuits, for improper purposes, on behalf of undisclosed shadow clients." This is a lawsuit brought by Ms. Wright, not by Mr. Roche on behalf of a client.

*Second*, Ms. Ang does not point to any precedent under which an attorney was disqualified on the grounds that he or she violated Florida Rule 4-8.4, let alone precedent under which an attorney was disqualified from one matter on the grounds that he or she violated that rule in *another matter*. If such a case exists, the Estate has been unable to find it.

*Third*, Ms. Ang asserts (at 13) that Mr. Roche "inherently prejudices the administration of justice in any court where he appears" because he "publicly denounced his purported clients and all jurors as 'idiots'" and "declared himself 'crazy.'" But Ms. Ang's representation that Mr. Roche "declared himself crazy" is a mischaracterization. Mr. Roche did make improper remarks about himself, jurors, and class members, but Ms. Ang cites no authority that suggests that those crass comments warrant disqualification.

### v.   *Mr. Roche's Conduct Is Not Imputed to the Firm*

Almost as an afterthought, Ms. Ang asserts (at 14-15) that Mr. Roche's "misconduct must be imputed to the Firm." That argument is meritless and should be rejected.

*First*, to the extent that Ms. Ang is arguing that Mr. Roche's "misconduct" under Rule 4-8.4 is imputed to the firm, she provides no authority to support that novel argument. To the contrary, Rule 4-1.10, the rule that she cites, governs the "imputation of conflicts of interest," not the imputation of any and all misconduct. Ms. Ang, moreover, provides no evidence that the remaining attorneys at the firm engaged in any of the misconduct of which she has accused Mr. Roche in this or in any other actions (*e.g.*, declaring themselves "crazy" or making inappropriate remarks about jurors or class members).

*Second*, to the extent that Mr. Roche ever had a personal-interest conflict as a result of his alleged views regarding settlement, there is no evidence to support the inference that anyone else at the Firm shared that view. *See* Fla. Bar R. 4-1.10(a) (exception to imputation of conflicts, where conflict is "based on a personal interest of the prohibited lawyer"). Indeed, on their face, Mr. Roche's statements about settlement are personal to him.

*Third*, Ms. Ang's argument is premised on her assertion that Mr. Roche "directs the affairs" of the Firm, but to the extent that was once true to any degree, it certainly no longer is. Mr. Roche has left the firm. There is, moreover, no evidence that the Firm's remaining attorneys shared Mr. Roche's allegedly improper purpose in pursuing the Federal Action against Wright or in pursuing any other matter. Indeed, a court recently concluded that another party's accusation that other FNF attorneys shared Mr. Roche's allegedly improper purpose was "speculative," did not credit those accusations, and denied the party's motion to disqualify (Ex. 2, Order at 12, *Temujin Labs Inc. v. Abittan*, Case No. 20CV372622 (Cal. Super. Ct. Nov. 21, 2022).)

*Fourth*, given that Mr. Roche is no longer at the Firm, no longer represents Ava Labs, and no longer represents the Estate or W&K, and given that the Firm no longer represents Ava Labs, there is no basis to conclude that the Firm has a conflict going forward under Rule 1.7(a)(2). *See Blake v. State*, 180 So. 3d 89, 101 (Fla. 2014) ("[D]isqualification is a prophylactic remedy for likely future prejudice, not a punishment for past wrongdoing.").

### vi.  *Disqualification Would Unfairly Harm the Estate*

Ms. Ang's motion should also be denied because disqualifying FNF would unfairly burden the Estate. *See Anderson*, 884 So. 2d at 1049 (explaining that "[d]isqualification may impose extreme hardships on the client"). The Estate has been represented by Devin Freedman of FNF since the Estate commenced the Federal Action in early 2018. (*See* Compl., *Kleiman*, No. 9:18-

cv-80176 (S.D. Fla. Feb. 14, 2018), ECF No. 1.) For this entire period, Mr. Freedman has served as lead counsel and as the primary contact for the Estate and W&K. Under these circumstances, "it is not the alleged conflict that calls into question the fair administration of justice"; rather, it would be the disqualification of the Estate's "chosen counsel." *Anderson Trucking*, 884 So. 2d at 1051.

## V.     MS. ANG CANNOT SHOW THAT SHE IS ENTITLED TO OBTAIN DISCOVERY FROM OPPOSING COUNSEL

Even if the Court were to conclude that Ms. Ang were entitled to some discovery relating to her motion to disqualify, she cannot meet the heavy burden to show that she is entitled to obtain any discovery from opposing counsel.

"[T]aking the deposition of opposing counsel in a pending case is an extraordinary step which will rarely be justified." *Eller-I.T.O. Stevedoring Co., LLC v. Pandolfo*, 167 So. 3d 495, 496 (Fla. 3d DCA 2015) (quoting *State v. Donaldson*, 763 So. 2d 1252, 1254 (Fla. 3d DCA 2000)). Such depositions "should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case." *Id.* (quoting *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)). These restrictions, commonly referred to as the *Shelton* requirements, similarly apply to document requests targeted at opposing counsel. *See, e.g.*, *Silver v. BA Sports Nutrition, LLC*, 2020 WL 6342939, at *2 (N.D. Cal. Oct. 29, 2020) (collecting cases where courts "applied the *Shelton* standard to non-deposition discovery involving opposing counsel"); *XTO Energy, Inc. v. ATD, LLC*, 2016 WL 1730171, at *31 (D.N.M. Apr. 1, 2016) (explaining that "[t]he use of a subpoena duces tecum to attempt to obtain opposing counsel's documents and files is equally improper and may be more burdensome than merely attempting to obtain testimony").

Here, Ms. Ang is plainly seeking discovery from opposing counsel. Mr. Freedman, Mr. Roche, and FNF represented the Estate in the Federal Action, which Ms. Ang claims (at 1) "spawned this action"; Mr. Freedman and FNF represent the Estate here; and Mr. Roche previously represented the Estate in this action. In addition, Ms. Ang's counsel from Rivero Mestre LLP represents Wright in the Federal Action, where the Estate's claims are currently on appeal before the Court of Appeals for the Eleventh Circuit.

Ms. Ang cannot, moreover, meet the *Shelton* requirements. *See Eller-I.T.O.*, 167 So. 3d at 497 ("Because respondents failed to satisfy Shelton's requirements, we grant the petition for writ of certiorari and quash the lower court's order without prejudice."). The information that she seeks from Mr. Freedman, Mr. Roche, and FNF—as explained above—is irrelevant to the merits of this action. It is not, and Ms. Ang cannot argue that it is, "crucial to the preparation of the case," as required by *Shelton*.

In addition, the information is privileged and protected by the work-product doctrine. Ms. Ang's motion to disqualify is premised on her accusation (at 11) that Mr. Roche commenced the Federal Action against Wright for the improper purpose of benefiting Ava Labs's CEO. Accordingly, many of the discovery requests that Ms. Ang has served on FNF concern the "purpose" of the Federal Action (*e.g.*, Ex. 4 at 3), where FNF and Mr. Freedman still represent the Estate on appeal, and where Ms. Ang's counsel represents Wright. Ms. Ang's depositions of Mr. Freedman and Mr. Roche would similarly focus on that issue.

This is precisely the kind of discovery that *Shelton* was intended to prevent. *See Zimmerman v. State*, 114 So. 3d 446, 447 (Fla. 5th DCA 2013) ("The *Shelton* test was intended to protect against the ills of deposing opposing counsel in a pending case that could potentially lead to the disclosure of the attorney's litigation strategy."). Accordingly, even if the Court concludes

that Ms. Ang may pursue some discovery in connection with her motion to disqualify, she should

be precluded from seeking discovery from Mr. Freedman, Mr. Roche, and FNF.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Estate respectfully requests that Ms. Ang's discovery

requests and subpoenas be quashed, and that she be ordered to cease pursuing discovery in

connection with her meritless motion to disqualify Roche Freedman LLP. The Estate further

requests that Ms. Ang be ordered to pay its fees and costs in connection with this motion.

Respectfully submitted,

Dated: December 23, 2022                    */s/ Velvel Freedman*
                                            Velvel (Devin) Freedman, Esq.
                                            Florida Bar No. 99762
                                            **FREEDMAN NORMAND FRIEDLAND LLP**
                                            200 S. Biscayne Blvd, Suite 5500
                                            Miami, Florida 33131
                                            Telephone: (305) 357-3861
                                            vel@fnf.law

                                            Stephen Lagos (*pro hac vice*)
                                            **FREEDMAN NORMAND FRIEDLAND LLP**
                                            99 Park Avenue, Suite 1910
                                            New York, NY 10016
                                            slagos@fnf.law

                                            *Counsel to the Estate and Non-Party Freedman*
                                            *Normand Friedland LLP*

# EXHIBIT 1

Crypto Leaks

# Ava Labs (Avalanche) attacks Solana & cons SEC in evil conspiracy with bought law firm, Roche Freedman

In his rush to hurt competitors, and distract regulators from his actions, Emin Gün Sirer is harming everyone in blockchain

**Our spy videos:** This report shares extensive spy video. All video has been collected in accordance with applicable laws.

**Whistleblower appeal:** With these disclosures, we aim to show people who are not crypto insiders what goes on behind the scenes. Do you want to be part of this movement? If you have any further information on this case and the different parties involved, become a whistleblower

for Crypto Leaks and join our movement bringing honesty and integrity back to the crypto community.

CASE #3 August 26, 2022 [UPDATED August 31]

# Ava Labs, Avalanche and Roche Freedman

Ava Labs is an American for-profit company that develops and promotes the Avalanche blockchain, which recently raised substantial funding in collaboration with Three Arrows Capital, the failed hedge fund that has been accused of acting like a Ponzi scheme. It is led by CEO and founder, Emin Gün Sirer, and claims to employ more than 150 people. The Avalanche network currently has a fully diluted market capitalization of more than $16.5 billion USD.





Roche Freedman is a law firm that widely sues people in crypto, currently running at least 25 class actions, including against Binance, the crypto exchange, and Ava Labs (Avalanche) competitors Solana Labs (Solana) and the

Dfinity Foundation (an Internet Computer contributor). It is led by founding partner, Kyle Roche, and employs more than 30 lawyers.



We can reveal that for several years they have been operating according to an extraordinary secret pact that harms the crypto industry, and has a nature so perverse that it undermines the integrity of the American legal system.

Some years ago, blockchain company Ava Labs and Amercian law firm Roche Freedman, made a deal. A pact was formed that involved Ava Labs granting Roche Freedman a massive quantity of Ava Labs stock and Avalanche cryptocurrency (AVAX), *now worth hundreds of millions of dollars, in exchange for Roche Freedman agreeing to pursue a hidden purpose*.

In a shocking series of video recordings, shared by this case investigation, Kyle Roche himself now reveals the exact nature of their ongoing operations. The case is highly disturbing in nature.

**We can reveal that the pact directs Roche Freedman and their leader Kyle Roche, to: 1) use the American legal system - gangster style - to attack and harm crypto organizations and projects that might compete with Ava Labs or Avalanche in some way, 2) sue crypto industry actors generally with the aim of creating magnets for regulators such as the SEC and CFTC that distract them**

from the highly commercial nature of Ava Labs and the Avalanche blockchain, and 3) secretly pursue Emin Gün Sirer's personal vendettas against individuals.

As usual, Crypto Leaks brings you the hard evidence that nobody else can obtain. We explain with the help of words spoken by Emin Gün Sirer's own lawyer, Kyle Roche.

## Ava Labs & Roche Freedman co-locate

August 2019, the newly formed law firm Roche Freedman moved into a co-working space *with Ava Labs*, the for-profit company that develops and promotes the Avalanche blockchain.



0:00 / 0:25

## Big money establishes a secret pact

In exchange for Roche Freedman providing what Kyle calls "legal services", Ava Labs granted them massive amounts of:

- AVAX the Avalanche blockchain's tokens.

10/18/2... Cryptoleaks Documentary #1 – Ava Labs Secretly funded regulators SEC in Avalanche blockchain platform, Kyle Roche person of ...

Case 9:18-cv-80176-BB Document 945-10 Entered on FLSD Docket 03/10/2023 Page 36 of 342

- Ava Labs corp's stock (Ava Labs holds AVAX for founders and investors).

Kyle Roche says he was the *very first person* to receive Ava Labs stock after Andreessen Horowitz, a venture capitalist that provided their initial funding.



0:00 / 0:31

**So if Ava Labs was flush with cash having just received investment from Andreessen Horowitz, why did they need to pay for "legal services" in this way?**

The answer is that they were not paying for normal legal services. The massive payments of AVAX and Ava Labs stock established a secret pact. This was so unusual, that it required the grant of assets that are worth hundreds of millions of dollars today.

Kyle boasts he has a full point on AVAX, and Ava Lab stock...

10/18/23, 2:08 PM    CryptoLeaks – Documentary – Ava Labs Secret extorted regulators, SEC, in Roche Freedman law firm, Kyle Roche admits
Case 9:18-cv-80176-BB   Document 945-10   Entered on FLSD Docket 03/10/2023   Page 37 of
342



0:00 / 0:28

Kyle says he has about a third of what Kevin Sekniqi has, who is the co-founder and current COO (Chief Operating Officer) of Ava Labs.

**Kyle says that he helps control the AVAX token supply, and helps Ava Labs with "regulation issues," and "competitors..."**



0:00 / 0:52

Kyle refers to Emin Gün Sirer by his nickname, "Goon."

He says he trusts "Goon" and Kevin "like brothers," and that they have the "same interests..."



As the conversation progresses, the truth about the pact begins to emerge: Kyle confirms that they litigate against (sue) other parties in crypto as a "strategic instrument" to "support Ava Labs" to a level where they made him an "equity partner." Kyle says litigation "is an underused tool."

Kyle describes participating in the pact as a:

 **completely different way than being a lawyer**

10/18/23, 2:52 PM
CryptoLeaks Documents: How Ava Labs Secretly Controls the Crypto Industry to Defraud the American People and Break the Law, All Disclosed in the SEC's Own Litigation Against Kyle Roche's Former Partner, Jason Cyrulnik.

Case 9:18-cv-80176-BB   Document 945-10   Entered on FLSD Docket 03/10/2023   Page 39 of 342



0:00 / 0:34

**Kyle Roche moved to Miami for "tax purposes."**

He moved in with Kevin Sekniqi, Ava Labs' COO, reflecting just how tightly the organizations work together.

In the years since he moved, Kyle Roche has failed to update his LinkedIn profile, which still lists his location as the "New York City Metropolitan Area," which is a more prestigious place to locate a law firm.

**Naturally, Kyle's profile makes no mention of Avalanche or Ava Labs.**

*Behind this elaborate smokescreen, Kyle is working from Miami with two key objectives: 1) to increase the price at which he can sell his AVAX tokens and Ava Labs stock, and 2) to reduce the amount of tax he pays when he sells.*



0:00 / 0:07

# Harvesting confidential information

As the conversation continues, the first signs of the perverse nature of the secret Ava Labs/Roche Freedman pact begin to emerge.

Kyle reveals that he started out as a "crypto expert" for Ava Labs. But how, you might ask, could a lawyer be a "crypto expert" for a company that develops and promotes a blockchain.

Kyle reveals that answer. He can contribute a special kind of expertise and knowledge — which he explains he has been able to obtain because:

 **I sue half the companies in this space**

In the USA, when you sue an individual or company, you can demand access to their confidential accounts, commercial data, email and social media communications, and more, using a special legal process known as "discovery". This has resulted in him:

 **seeing the insides of every single crypto company**

Kyle boasts that being able collect information in this way has resulted in him becoming one of the:

 **top 10 people [experts] in the world [in crypto]**

If a blockchain company could unfairly gain access to the confidential information of others, they could use it as a powerful competitive tool. It seems that Kyle sharing this special expertise with Ava Labs was one of the key factors that convinced Emin Gün Sirer to make the pact.

Until proven otherwise, we must assume that Ava Labs may even have directed Roche Freedman as to what confidential information they should harvest from the industry. It is unclear how much confidential information Ava Labs has obtained, but the potential for extreme wrongdoing is very concerning.

Naturally, you can be sure that during discovery against a target, Roche Freedman automatically demands the identities of investors, contractual agreements with partners, customer lists, payroll details, and information about every other kind of financial transacton, related to the organizations they are litigating against, and their founders and executives. They will also ask for complete email, Slack and other communication histories, which provide them with a treasure trove of information valuable to a competitor, including even technical insights.

**The many crypto industry participants who have been litigated against by Kyle Roche must now question exactly how much of their confidential data is now in the possession of Ava Labs executives.**



0:00 / 0:21

# Harming competitors and fooling regulators

Roche Freedman runs litigation against numerous people and organizations in the blockchain industry (i.e. it sues them). A favored method is to initiate class actions. Several months ago, Kyle Roche claimed to be running more than 25 class actions.

> **Roche Freedman class actions:** In their American class actions, they propose a class of people whom they claim have been harmed, for example because they lost money trading a cryptocurrency. They then create a lawsuit in their name, for example claiming that the cryptocurrency is an illegal security, and that therefore that those developing or promoting the blockchain involved, or those running crypto exchanges that enabled them to trade the cryptocurrency, are liable for the losses of everyone in the class. In the United States, they only have to find one person willing to be a representative plaintiff for the class to initiate action.

When they create class actions and other litigation against Ava Labs competitors and crypto industry participants, Kyle Roche has revealed that Roche Freedman often has two hidden purposes:

1. **Surreptitiously causing harm to a competitor.**
   If there are two horses competing in a race, and you can hack at the leg of one, the other will win. Their horse is AVAX and Ava Labs stock. Initiating a class action against their competitors can harm them in multiple ways, and so they have secretly weaponized the legal system to do this. Even when they can make only a weak case, such that with high probability they will lose the litigation, this can still harm their targets, greatly profiting them. Moving the price of AVAX by only a small amount, by harming competitors, can produce big gains for them when they make sales from their huge hoard of AVAX tokens and Ava Labs stock. Ava Labs is not ever named as the litigant — the class of plaintiffs is — disguising what is really going on.

2. **Luring regulators, including the SEC and CFTC, away from Ava Labs.**
   They often litigate against competitors in ways that make *them look guilty of regulatory transgressions*. Directing the attention of regulators towards competitors can cause further great harm to them, but also serves to *lure regulators away from Ava Labs and their ravenously commercial behavior, which regulators would otherwise be very interested in*. Kyle tells us he litigates to create "other magnets" for regulators to go after. They also do this to crypto actors who are not obvious competitors.

Here's a quick crib sheet for what is going on:

- Roche Freedman typically attacks competitors using American "class actions," in which they claim to be representing a group of people who they claim have been "harmed" (the plaintiffs). For example, they can claim another blockchain's tokens are illegal securities, and consequently some people who traded them suffered unfair losses when the price fell.

- In the United States, class action legal filings are "protected speech." This allows Roche Freedman to make damaging claims about other projects that are in reality completely false, without risk of being sued for defamation (or "libel"). For example, they filed a lawsuit against the Dfinity Foundation that

essentially parroted the false claims of Arkham Intelligence. The purpose is to damage the reputation of their targets, and/or surround their brands in FUD.

- Once Roche Freedman has initiated litigation against a target in crypto, they can collect/harvest confidential information from them using the legal discovery process, creating "expertise" that they can share with Ava Labs.

- The nature of the American class action system forces targets to spend far more on defense than Roche Freedman spends litigating against them. This is because if they lose — and juries are unpredictable — the judge can award astronomical damages against them. This drains the resources of competitors, as well as distracting them from their core work.

- Roche Freedman's financial risk is limited to the money it spends on litigating against a target. This is because another quirk of the American legal system prevents the targets of their class actions from claiming their legal costs back from Roche Freedman if they win.

- Roche Freedman can spend a few million dollars litigating against an Ava Labs competitor, and lose the case, and still come out on top, if their actions harm or suppress a blockchain that competes with Avalanche (since if their actions may drive the price of AVAX even slightly higher, such is the size of their holdings, they can make a substantial profit).

- By naming the founders and executives of blockchain ecosystems and companies in their class actions, they can threaten them with total bankruptcy if they lose. This destablizes their key leaders and innovators, also placing tremendous pressure on their families, especially when there are children involved. Naturally, if they can cause family issues for the leaders of competitors, this will further degrade their capabilities.

- Ava Labs and Roche Freedman seek to surreptitiously increase the price of AVAX in a ruthless and highly commercial manner. Their desire to promote AVAX and increase its price at any cost greatly increases the risk that the SEC would class the AVAX token as an illegal security. To divert the attention of regulators like the SEC and CFTC elsewhere, they widely litigate against other actors in the blockchain industry accusing them of regulatory transgressions. This protects them by diverting attention elsewhere, while increasing the



regulatory risk of the target, which is doubly useful to them if they are some
kind of competitor.

Kyle Roche says he is the reason Ava Labs haven't been sued. He says that to
protect them, he makes sure that:

> **the SEC and CFTC have other magnets to go after**



0:00 / 0:35

10/18/22, 2:15 PM CryptoLeaks Documentary: Ava Labs Secured Favorable Regulations by Bribing Key Government Officials with a Crypto-Mafia, read more!



0:00 / 0:46

Kyle even claims that thanks to his efforts, he has ensured that for Ava Labs, there's

 **no such thing as regulation for what they want to do**



0:00 / 0:14

10/18/22, 2:14 PM          CryptoLeaks: Documentary on Fortress Shadowy corporation, Law firm Roche freedman ...

Case 9:18-cv-80176-BB   Document 945-10   Entered on FLSD Docket 03/10/2023   Page 47 of
342

# Emin Gün Sirer's two-faced nature

Emin Gün Sirer regularly professes his support for other blockchain projects, and indicates he wishes their ecosystems the best. Here he offers support for Solana users when they were having their wallets emptied by the Slope wallet exploit, claiming kinship by saying everyone in the space was affected, and then offering apparently well-intentioned technical theories on what might be happening (all of which proved wrong).



**Nobody should be fooled. This tweet thread was created only weeks after Roche Freedman** filed a class action targeting the core of the Solana ecosystem **claiming that its SOL token is an illegal security.**

*The false narrative Emin is establishing by these attacks hurts everyone in the industry. He should consider that one day he may find himself facing exactly the same arguments that he is establishing in his rush to hurt competitors.*

# Do their actions make AVAX a security?

10/18/22, 9:59 PM    CryptoLeaks Documents — Ava Labs Secret Weaponization of US regulators and Court System to Influence Key Court Judgments, form, Roche Freedman

Case 9:18-cv-80176-BB   Document 945-10   Entered on FLSD Docket 03/10/2023   Page 48 of 342

What is most frustrating, is that Ava Labs and Roche Freedman are probably the most ruthlessly commercial operation in blockchain, which is amply revealed by their secret weaponization of the legal system against competitors. Indeed, their relentless subtle (and not so subtle) promotion of AVAX as an investment opportunity, combined with their nefarious tactics, are in fact very likely to make AVAX a security.

**Kyle Roche has implored Emin Gün Sirer not to mention the price of AVAX so as not to catch the eye of the regulators. However, Emin can't contain himself when there is a major AVAX price rally.**

During one such rally December 7 2021, Emin Gün Sirer even encouraged his followers by leading them in an adapted Paul Simon song:



**CASE UPDATE — Thanks to community**
In the tweet below, Emin announced an Ava Labs marketing campaign on the New York subway, with the strapline "It's never too late to be early." The not-so-subtle sales pitch to investors is that it is still possible to be an early investor in the AVAX token and make substantial profits. Emin's tweet announced the campaign, which ran in parallel with other Ava Labs campaigns, on December 14, 2021. That day the AVAX price was $87.30. By December 15, the price was $101.18. By December 21, the price was $123.33. At the time of writing (end August 2022) the price is around $19.



10/18/23, 1:42 PM    CryptoLeaks - How Avalanche & Emin Gün Sirer Secretly Used Roche Freedman as its Legal Dark Weapon - Unseen Lawfare Blackmail Scheme Revealed

Case 9:18-cv-80176-BB   Document 945-10   Entered on FLSD Docket 03/10/2023   Page 49 of 342



10:04 AM · Dec 14, 2021                                    ⓘ

❤️ 4K          💬 Reply          🔗 Copy link

**Read 182 replies**

Roche Freedman is continually suing other blockchain projects on the basis that they have made regulatory infractions, and are therefore liable to token traders that lost money. Yet, they have never sued Ava Labs, a blockchain project that directly markets its tokens to retail investors as investment products, who have consequently lost substantial funds.

**Kyle Roche's own words, shared by our Case #3 videos, make it amply clear why Roche Freedman have not, and will not, sue Ava Labs.**

# Emin Gün Sirer's personal vendettas

It is a great surprise that Ava Labs' legal proxy performs work prosecuting Emin Gün Sirer's *personal vendettas*. This looks like a misuse of company resources for personal purposes, which is a serious no-no in the corporate world.

His regular use of "dark power" is also most unexpected for a man who likes to brandish the title of "professor at Cornell University".

### First blood: a social media pundit

10/18/23, 9:33 PM CryptoLeaks Documentation #4 Virtuous Saint Kleiman, his Tulip addiction, and Jimmy Nguyen's con, a desperate search for a missing key. Case No. 3 — CryptoLeaks

Case 9:18-cv-80176-BB Document 945-10 Entered on FLSD Docket 03/10/2023 Page 50 of 342

Emin's first vendetta was against a Turkish social media crypto pundit who said that he "heard he was a member of FETO."



0:00 / 0:32

0:00 / 0:20

Kyle Roche found out that the social media pundit was landing in Miami for a business trip. He used the event to serve him papers, and ensnare him in the

American legal system. The moment was videoed for Emin's pleasure.

**Kyle shares that Emin now watches the video once a month — presumably to relive the shock and pain caused by the ambush — revealing troubling tendencies.**

Kyle seems very pleased, and says:

> **that's why Gün loves me...**



0:00 / 0:31

**CASE UPDATE — Thanks to community**
We have *not investigated* the rights-and-wrongs of the Crypto Emre case. However, the community has produced interesting additional information. They say that early in 2021, there was a lot of excitement about CBDCs (Central Bank Digital Currencies), and that Ava Labs ran marketing campaigns in Turkey claiming that they were in talks about running them on Avalanche with the Turkish Central Bank, the Bank of England, and the Bank Of Canada. They say that Emre then debunked the claims, by contacting the central banks involved, and then tweeting their responses (see here, here and here) and that this kind of thing was a key driver of Ava Labs' animosity towards him.

10/18/23, 2:... CryptoLeaks - Documentation of the most Scandalous Science and Legal Corruption in Blockchain History, Ava Labs, Emin Gün Sirer, Roche Freedman

Case 9:18-cv-80176-BB Document 945-10 Entered on FLSD Docket 03/10/2023 Page 52 of 342

We also note that Kyle Roche/Roche Freedman threatened Emre in February 2021 *on behalf of Ava Labs and Emin Gün Sirer*. This contrasts with Emin Gün Sirer's recent denials of close links to Roche Freedman.



## Surreptitiously attacking Craig Wright

## CORRECTION — Thanks to community

Emin Gün Sirer has marketed himself as a Cornell University professor for years. However, in fact, he appears to have ben removed from his post at the end of 2021. Regarding his actual role: Emin completed his PhD, then spent 7 years as an *assistant professor*, then transitioned to *associate professor*, where he remained for 14 years, never making it to *university professor*. We believe frustrations with his academic career led him to a grandiose sense of his own academic achievements within blockchain.

There are numerous indications that Emin Gün Sirer wishes to promote himself as the "Father of Blockchain." Recently, he had his PR people update his wikipedia page with the dramatic claim that his:



> **Karma system, published in 2003, is the first cryptocurrency that uses a distributed mint based on proof-of-work**

Experts in the field examining this paper say this claim is unjustifiable. Meanwhile, while developing Avalanche, he anonymously published a paper describing the consensus protocol he planned to use under the pseudonym

Case 9:18-cv-80176-BB Document 945-10 Entered on FLSD Docket 03/10/2023 Page 53 of 342

"Team Rocket," which he then drew attention to on social media with faux rapture, as though it heralded the return of Satoshi Nakamoto:



It was only after sustained ridicule on social media, that Emin was eventually forced to concede that it was his own team that produced the paper, thus ending his quest to emulate Satoshi through anonymous publication.

Recently, Twitter bots (i.e. fake Twitter user accounts that are directed by automated systems for the purpose of marketing), which appear controlled by Ava Labs, either directly or indirectly, have hailed Emin as the "Father of Blockchain."

Emin's grandiose sense of his own contributions to blockchain, and an envy of the Satoshi Nakamoto crown, perhaps combined with a disposition towards dark power, then led to him wanting Kyle Roche to pursue Craig Wright, who claims to be part of a small team that invented Bitcoin.

**Many people fiercely disagree with Craig Wright's claim, but most people would not secretly attack him through the legal system:**

10/18/22, 3:15 PM CryptoLeaks Exclusive Ninja Cartoons Secretly Record regulators.sec in quaker, you $20/12/22 firm, reigers $4 min of



0:00 / 0:23

Through his attacks on Craig Wright, Kyle Roche boasts how he helped massively devalue the Bitcoin Satoshi Vision (BSV) blockchain by billions of dollars. This will be of interest to Craig Wright, and every member of the BSV cryptocurrency community who sustained losses:



0:00 / 1:15

## CASE UPDATE — Thanks to community

It is important to note that Emin Gün Sirer appears to have a long history of attacking from the shadows. The /r/BSV reddit (a kind of online public forum) was squatted by anti-BSV moderators who managed to acquire complete control. They then trolled BSV enthusiasts wishing to use the forum as a place to discuss the BSV network, disrupting their community. These moderators made great efforts to remain anonymous, but now this official link to old reddit content appears to reveal that Emin Gün Sirer himself was one of those moderators.

Link: https://old.reddit.com/user/el33th4xor/



## CASE UPDATE — Thanks to community

It appears that Emin Gün Sirer gave Kyle Roche a painting of Craig Wright as a gift after the first phase of the Roche Freedman case against him was complete. This speaks to the importance of his working relationship with Emin Gün Sirer and Ava Labs.



**Christen Ager-Hanssen**
@agerhanssen · Follow

14th February 2022 in Kyle Roche @KyleWRoche office. Kyle proudly shows me the attached picture/painting of Craig Wright @Dr_CSWright that he said was a very special gift from Emin Gün Sirer @el33th4xor for "defeating" Craig Wright in the case Kleinman vs Wright

10/18/23, 2:04 PM                    CryptoLeaks: how venture fortunes Secretly used regulators to litigate, destroy form, manifest... Ind
Case 9:18-cv-80176-BB Document 945-10 Entered on FLSD Docket 03/10/2023 Page 56 of
342



4:07 AM · Aug 30, 2022                                                                       ⓘ

♥ **175**          💬 **Reply**          🔗 **Copy link**

**Read 34 replies**

## Class actions against competitors

At another venue with Kyle Roche, it quickly became clear that his favorite class actions were against obvious Ava Labs competitors. When asked, he appeared hardly able to conceal his glee when confirming that Dfinity — the not-for-profit developer of the Internet Computer blockchain, and the subject of a major Roche Freedman class action — was a competitor to Ava Labs and Avalanche.

10/18/22, 4:09 PM                    CryptoLeaks Documentary #4 CryptoLeaks Scientology Lawfare Documentary No3 | CryptoLeaks Information Platform, Research Summary

Case 9:18-cv-80176-BB  Document 945-10  Entered on FLSD Docket 03/10/2023  Page 57 of 342



0:00 / 0:13

# Kyle's personal nature emerges?

Kevin Dutton, a psychologist and writer specializing in the study of psychopathy at the University of Oxford, says that among professionals, lawyers count the second highest proportion of psychopaths, because of the opportunities the career affords them to pursue their predilections.

Psychopaths crave feelings of power and control over other people. Many display traits of grandiosity, narcissiscm, sociopathy and Machiavellianism.

We are not saying Kyle is a psychopath, as only a psychologist can classify people. However, we see these traits in his behavior, and in the following, Kyle appears to express a disturbing determination to exert power and control over others:



0:00 / 0:49

# Filing class actions on behalf of Ava Labs

Kyle Roche has been enabled to freely pursue his predilections, because of the vast amount of wealth provided by Ava Labs. He says he can sue people:

 **just for the sport of it**

Kyle boasts how he can file class actions that attack those competing with Ava Labs (Avalanche), such as *Solana Labs*, and the Dfinity Foundation, *on behalf of Ava Labs*.

**At the time we collected these recordings, Roche Freedman had already been working on *two* class actions against Dfinity, and had filed one, but had not yet filed its first class action against Solana. However, he has now filed a major class action against Solana. Everything he said proved true.**

 **So, I can sue Solana!**

Both the class actions filed so far against Solana and Dfinity make accusations that their tokens are illegal securities.

10/18/23, 2:19 PM                    Cryptoleaks - How Avalanche and Portias Securities used regulators like a company, used local courts, paid off a form, controlled tech...

Case 9:18-cv-80176-BB Document 945-10 Entered on FLSD Docket 03/10/2023 Page 59 of 342



0:00 / 0:48

# How Kyle Roche sees the legal system...

Kyle leverages the fact that judges and juries don't understand blockchain.



0:00 / 0:30

10/18/23, 2:45 PM                    CryptoLeaks Documents Volume 3 - Leaks Scandals and regulators SEC in Longley's OSD/2022 form, Kik Freedom of

Case 9:18-cv-80176-BB   Document 945-10   Entered on FLSD Docket 03/10/2023   Page 60 of
342

He has a colorful strategy for bamboozling juries and gaining their trust.



0:00 / 0:31

He calls American juries "10 idiots." He feels confident that he can work these "idiots" to control American class actions.



0:00 / 0:29

Earlier, when boasting about the large settlement he believed he could obtain from one of his class actions, he seems to say that a key deciding factor would be the interests of his law firm (i.e. *his* interests). Shouldn't the decision to settle be based soley on the interests of the class of plaintiffs he is representing?



0:00 / 0:17

Perhaps it's not surprising that he considers his own interests when deciding how to conduct a case, because he describes one of his plaintiff classes — people who lost money in crypto — as "100,000 idiots."

10/18/22, 2:50 PM    CryptoLeaks Documentation #3 - Leaks Suggest coordinated regulators SEC in Dockey, ClassActions Form, Regulatorscmm

Case 9:18-cv-80176-BB   Document 945-10   Entered on FLSD Docket 03/10/2023   Page 62 of 342



0:00 / 0:23

# Emin and Kyle's "iLO" horror

Class action lawsuits can be very destructive. They impose vicious legal costs on those being attacked that they cannot reclaim, drain attention better used for productive purposes, and can impose terrible stress for years, including on the famililies of those targeted. Class action frameworks are not intended for use "just for the sport of it," or as a "strategic tool to competition," as Kyle Roche suggests.

They are also not intended as a means for ruthless people to squeeze money out of good people, in the mode of patent trolling, say. That kind of thing should have no place in Western democracies like America.

**But to Emin Gün Sirer and Kyle Roche,** *litigation is just a for-profit opportunity*.

They plan to create a new business on Avalanche, which will support the creation of something called an Initial Litigation Offering, or iLO. The idea is that lawyers like Kyle will be enabled to propose new class actions and other litigations en masse, and then blockchain investors will fund the proposed litigation by buying tokens to share in proceeds obtained through out-of-court settlements and damages awards.

10/18/23, 2:06 PM Case 9:18-cv-80176-BB Document 945-10 Entered on FLSD Docket 03/10/2023 Page 63 of
342
CryptoLeaks Documentation — Ava Labs Scandal and regulators to invoke key provisions from, registers from

In this sociopathic business vision, litigation is just another financial asset, and they want to provide a framework that makes it easy to mint as much as possible. Kyle appears to spare no thought for the social impact of his plans.

For Kyle Roche:

 **litigation is the most uncorrelated asset that exists, period**



0:00 / 0:23

**CASE UPDATE — Evidence share**
Newly obtained correspondence from Sam Wang, Ava Labs' Director of Business Development, shows that as recently as last December, Ava Labs was introducing Kyle Roche as:

 **spearheading our litigation financing initiatives**

This reflects how this effort is a joint venture between Ava Labs and Roche Freedman, and how they work as an integrated team. This evidence also strongly contrasts with Emin Gün Sirer's recent denials of close links to Roche Freedman:

10/18/23, 2:21 PM                CryptoLeaks - Documents revealing the Defraud Scandal of regulators, the financial integrity Violations, and Corruption, and the treason of Roche freedman

Case 9:18-cv-80176-BB Document 945-10 Entered on FLSD Docket 03/10/2023 Page 64 of 342

**Sam Wang** <sam.wang@avalabs.org>                          Tue, Dec 28, 2021, 8:00 AM    ☆    ↩    ⋮

to me, Mauricio, John, Kyle ▾

Christen & Mauricio,

Allow me to introduce you to Kyle Roche who is spearheading our litigation financing initiatives. He is aware of your interest in developing something similar for the European market and will take the conversation from here. Cheers.

**Kyle Roche**

Roche Freedman LLP

(t) (646) 970-7509

(@) kyle@rochefreedman.com

Sam



**Sam Wang**

Director of Business Development – Enterprise & Institutional

sam.wang@avalabs.org | 832-863-3955

Website | Twitter | Telegram | Discord | LinkedIn

# Roche Freedman at war over its AVAX

Roche Freedman actually began as "Roche Cyrulnik Freedman". But according to ex-partner Jason Cyrulnik, once it became apparent just how valuable their haul of AVAX tokens and Ava Labs stock was, Kyle Roche and Devin Freedman conspired to expel the older man from the partnership in February 2021 by out-voting him, then keeping his almost 25% share for themselves.



10/18/22, 2:26 PM — Cryptoleaks Case No. 3 — Kyle Roche brags how he scams courts, defrauds investors and mocks the law all for the Avalanche / Ava Labs crypto firm, Emin Gün Sirer

Case 9:18-cv-80176-BB Document 945-10 Entered on FLSD Docket 03/10/2023 Page 65 of 342

Now former partner Paul Fattaruso says he was hired on promise of 2% of the firm's equity, but was not told of a secret agreement between five of the partners (Kyle Roche, Devin Freedman, Amos Friedland, Nathan Holcomb and Edward Normand) to share the AVAX tokens and Ava Labs stock exclusively between themselves. These claims are now subject to numerous ongoing lawsuits.

The moral of the story is: be careful in your choice of colleagues.

## CASE UPDATE — Evidence share

It was internal warfare within Roche Freedman that provided us with early hard evidence regarding the nefarious goings-on. In particular, we share a lawsuit filed by Jason Cyrulnik against his old partners, https://cryptoleaks.info/cyrulnik-vs-rochefreedman.pdf. This contained an early internal Roche Freedman MOU, which detailed how the AVAX tokens they received would be divided.

A payment of between 4-5M AVAX tokens was made monthly over three years, terminating September 2022.

---

**B.** *Ava Labs Tokens*

The Founding Partners understand that Roche Freedman LLP represents Ava Labs. Ava Labs is a startup company that plans to distribute a certain amount of Digital Assets (the "Tokens") as part of its plans of building a new platform for decentralized assets and applications. In exchange for legal services, Ava Labs has agreed to pay Roche Freedman LLP a certain amount of Tokens over a thirty-six month period beginning on September 30, 2019. A copy of the Roche Freedman LLP / Ava Labs retention agreement is attached to this MOU as Exhibit B. Notwithstanding, the Founding Partners understand that Roche Freedman LLP has agreed to distribute its Ava Labs Tokens according to the following breakdown:

| | |
|---|---|
| Jason Cyrulnik | 25% |
| Velvel Freedman | 32% |
| Amos Friedland | 5% |
| Nathan Holcomb | 5% |
| Edward Normand | 5% |
| Kyle Roche | 28% |

The Founding Partners understand that Kyle Roche will be the Originating Attorney for Ava Labs (i.e., he will have 100% of the Origination Credit) and any further consideration paid by Ava Labs for the Firm's services will be subject to the Firm's Partnership Compensation Model.

# Brad Garlinghouse lit the fuse

10/18/23, 1:23 PM    Crypto Leaks Case no. 3 - how crypto billionaire Emin Gün Sirer created a litigation funding law firm, a weapon to counter his enemies

Case 9:18-cv-80176-BB    Document 945-10    Entered on FLSD Docket 03/10/2023    Page 66 of 342

Before Kyle Roche founded Roche Freedman and made a pact with Ava Labs, he was a relatively lowly associate at the law firm Boies Schiller Flexner. They were representing Ripple, who were defending a lawsuit claiming their XRP token was an illegal security. According to Kyle, he proposed to their CEO, Brad Garlinghouse, that he create a new law firm that would specialize in suing others in crypto, using exactly the same kinds of tactics that were being used against Ripple. Kyle asked that Brad become his angel investor, and curiously Brad agreed — one might have expected he would want to see less of this kind of litigation across the industry.

**For whatever reasons Brad Garlinghouse invested in Kyle Roche, and supported him on his current path, it certainly didn't save him from the SEC. Ripple's current travails might be a bad omen for Emin Gün Sirer.**

# Remedies and conclusion

For anyone who cares about crypto and the blockchain industry, Crypto Leaks Case #3 should be a watershed moment. The movement was created by visionaries, theoreticians, engineers and true believers. People with integrity. But the value creation brought in cowboys and ruthless opportunists, who are just out to make money, whatever it takes. These people don't care about crypto and blockchain, and what it stands for. They only care about themselves.

We have enough bad people in crypto already. Three Arrows Capital had highly vocal and popular leaders, who played Pied Piper to the masses, but behind the scenes they ran their hedge fund like a Ponzi scheme. Those same masses have now lost billions that they thought were safe in cryto banks. People in crypto deserve an industry where not everything is smoke and mirrors, and where they can trust other people's integrity.

We must demand change.

### Cornell University

Emin Gün Sirer has traded relentlessly on his "professor at Cornell" status, using Cornell's brand to convince the masses that he primarily cares about the advancement of blockchain science and has special technical skills. In fact, his real modus operandi is more Professor Moriarty, who tries to get Ava Labs and

Avalanche ahead through clandestine attacks on competitors that involve secretly weaponizing the legal system, as well as the pursuit of personal vendettas. Cornell must decide whether it wants its reputation wielded for profit by someone who seemingly operates without a moral compass. He uses their brand to cloak himself, which directly supports his deceptive self-promotion, and masks his Machiavellian schemes, which damages individuals and their families and the wider crypto and blockchain community and industry. Cornell will not want to be part of this charade.

Here is Emin's pinned tweet, which reflects how he has branded himself since launching Ava Labs and Avalanche:



**Andreessen Horowitz and Polychain**

In the realm of traditonal startup companies, venture capitalists used to only invest in one project in each segment, so that they were never exposed to the conflict of interest involved in backing competing companies. Crypto changed all of that, with some venture capitalists investing widely into native blockchain tokens, seeing that a rising tide was "floating all boats," and to make sure they had holdings in the few that would make it big. Now the check has come due, and with the release of this report, some will now find that they have unknowingly funded a project making unacceptable, clandestine, industry-damaging and clearly immoral attacks on competitive projects that they also backed (for example, both Andreessen Horowitz and Polychain recently threw massive resources behind Solana Labs, a key target of Roche Freedman and Ava Labs). They must now do the honorable thing, and help protect the industry and projects that have made them so much money, by vocally disowning Ava Labs.

## Lawyers working for Roche Freedman

The legal system is a fundamental pillar of any democratic society, and its integrity is something we must cherish and protect. But Roche Freedman has perverted the role of a law firm, subverting and weaponizing the legal system thereby promoting the value of blockchain tokens and stock owned by a few of its partners. It undermines everything that makes the legal profession honorable. Lawyers working at Roche Freedman who were previously unaware of this behavior will not wish to condone it, accept a leader that lacks a moral compass, or work for a law firm with a hidden purpose. Most lawyers do not go through law school to end up living "Better Call Saul."

## The American Bar Association

The mission statement of The American Bar Association is: "to serve equally our members, our profession and the public by defending liberty and delivering justice as the national representative of the legal profession." They advocate for the profession as a whole, and the thousands of lawyers who work with integrity within society's understanding of what being a lawyer entails. The ABA works to "increase public understanding of and respect for the rule of law, the legal process, and the role of the legal profession." This is entirely incompatible with defending those people who have decided to follow "a completely different way then being a lawyer," by weaponizing and perverting the legal system for personal gain, which is also an assault on liberty and justice.

## American Regulators (SEC, CFTC...)

Roche Freedman and Ava Labs are attemping to make fools out of regulators. Through their nefarious weaponization of the legal system, they wish to manipulate regulators by drawing them to competitors, and away from their own activities. This behavior will undermine everyone's faith in the fairness of the regulatory system. Good actors will fear that unscrupulous competitors have bought unscrupulous lawyers using hundreds of millions of dollars worth of crypto assets, and that they are misusing the regulatory system to paint them as targets for regulators, both to harm them, and distract regulators from their own wrongdoings.

## Ava Labs shareholders and executives

According to the evidence shared in this case study, Emin Gün Sirer has used company resources to pursue his *personal vendettas*, which may now result in

reprisals that directly undermine shareholder value. This is a clear breach of fiduciary duty. When any leader runs out of control in this way, it is time for them to go. For example, John Wu, the President, could be made CEO, and Emin Gün Sirer could be removed from his post to restore confidence. This will enable the organization to reset its reputation and proceed in a more business-like manner.

## Developers building on Avalanche

Once upon a time, those driving the blockchain project were pursuing dreams. They met and discussed designs, they cooperated and collaborated, and they were passionate about what was possible. But it wasn't long before the opportunists came hunting, and they learned how to dress themselves in the clothes of those they joined. There are many projects in the blockchain space today, which often have dramatically different visions and approaches to R&D and marketing. Some also have different moral compasses. Tech has always been highly competitive, but the winners do not generally compromise their integrity. When the smoke eventually clears, it will be seen that authenticity and passion really count. Developers will prefer to work on a platform where they can be proud of the team, ecosystem and ethos. Those that wish to stay with Avalanche will demand change.

## The crypto press

Most participants in the blockchain industry do not realize quite how focused the crypto press is on promoting vested interests. It may come as a surprise to many that not only did the crypto press fail to report on our previous cases (see Case #1 and Case #2) but some parts actively suppressed information about them. For example, to address the lack of reporting, we recently attempted to purchase a paid press release on Cointelegraph, as others do, but were mysteriously blocked, presumably to protect those our cases reference. Meanwhile, Roche Freedman were able to purchase a paid press release on Cointelegraph freely, which they then used to distribute misleading statements to millions of users through Google news feeds.

Our revealing exposé of Arkham Intelligence (Case #2) was not reported on at all by the crypto press. The exposé has led to a defamation lawsuit being filed against Arkham and the New York Times, but this has only been reported on in the mainstream press by Politico . Today, DeFi and CeFi organizations once lauded unquestioningly by the crypto press have caused multi-billion dollar

losses to retail investors, and it is time to move on towards fairer plains. This is the only way our industry will ever reach maturity. We ask the crypto press to report objectively on this case investigation. The videos speak for themselves and tell a clear story that everyone in crypto needs to be aware of.

**Those being sued by Roche Freedman**
With the release of Crypto Leaks Case #3, those being sued by Roche Freedman know the true measure of their adversary. They should respond accordingly, and take the fight to the enemy. They should not settle. They must fight their corner and make their case. Together they can weaken their adversary, and can help make blockchain a better place.

Read other case investigations...

# EXHIBIT 2

Filed
November 21, 2022
Clerk of the Court
Superior Court of CA
County of Santa Clara
20CV372622
By:  afloresca

Signed: 11/21/2022 04:07 PM

ORDER ON SUBMITTED MATTER

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SANTA CLARA

| | |
|---|---|
| TEMUJIN LABS INC., | Case No.:  20CV372622 |
| Plaintiff, | **ORDER CONCERNING (1) TEMUJIN LABS INC., A DELAWARE CORPORATION, TEMUJIN LABS INC., A CAYMAN ISLANDS CORPORATION, LILY CHAO, DAMIEN DING, AND DISCREET LABS LTD.'S MOTION TO DISQUALIFY ROCHE LLP, AND TO STAY, AND TO CLARIFY, THE COURT'S AUGUST 22, 2022 ORDER; (2) CROSS-COMPLAINANTS BENJAMIN FISCH AND CHARLES LU'S MOTION TO COMPEL FURTHER RESPONSES REGARDING CROSS-DEFENDANTS' TRUE IDENTITIES** |
| vs. | |
| ARIEL ABITTAN, et al., | |
| Defendants. | |
| TEMUJIN LABS INC., | Case No.:  21CV375422 |
| Plaintiff, | **ORDER CONCERNING DEFENDANT AND CROSS-COMPLAINANT FRANK FU'S MOTION TO ENFORCE AUGUST 22, 2022 RULING AND TO COMPEL PRODUCTION OF CHINESE IDENTITY INFORMATION** |
| vs. | |
| FRANK FU, et al., | |
| Defendants. | |
| AND RELATED CROSS-ACTIONS. | |

1    These related actions arise from the business dealings of:  (1) Temujin Labs Inc., a
2    Delaware corporation ("Temujin"); (2) a related Cayman Islands corporation; and (3) Temujin's
3    co-founders, who go by the aliases of Lily Chao and Damien Ding.[1]  These business dealings
4    involve the development of Temujin as a financial technology company operating under the
5    name "Findora."

6    In Case No. 20CV372622 ("*Abittan*"), Temujin alleges that Defendants and Cross-
7    Complainants Ariel Abittan, Benjamin Fisch, and Charles Lu conspired to:  (a) assert a false
8    claim of ownership of its business; (b) misappropriate its trade secrets; (c) usurp and interfere
9    with control over its assets, such as social media accounts; and (d) interfere with its relationships
10   with investors and business partners.  Mr. Abittan, a former business partner of Ms. Chao and
11   Mr. Ding, filed a cross-complaint alleging, among other things, that Ms. Chao and Mr. Ding
12   stole from and defamed him.  Mr. Fisch and Mr. Lu filed a separate cross-complaint, asserting
13   that Ms. Chao and Mr. Ding misrepresented a host of important facts about their business and
14   activities to induce Mr. Fisch and Mr. Lu to work for Temujin.

15   In Case No. 21CV375422 ("*Fu*"), Temujin alleges that its former consultant, Defendant
16   and Cross-Complainant Franklin Fu, demanded additional under-the-table payments for himself
17   and secret payments to certain investors rather than performing his duties in good faith.  In a
18   cross-complaint, Mr. Fu alleges that Ms. Chao and Mr. Ding repeatedly lied to him about a range
19   of subjects, including Temujin's technology and even their own identities.

20   In an order filed on August 22, 2022 ("August 2022 Order"), the Court ordered Ms. Chao
21   and Mr. Ding to provide identity-related discovery, including in response to requests for
22   production of documents ("RFPs") propounded by Mr. Fisch and Mr. Lu and a form
23   interrogatory and RFP propounded by Mr. Fu.  As discussed below, disputes soon developed
24   over Ms. Chao and Mr. Ding's compliance with that order, which gave rise to some of the
25   motions now before the Court.

26
27
28

---

[1] The Temujin entities, a related entity called Discreet Labs Ltd., Ms. Chao, and Mr. Ding are referred to collectively herein as the "Temujin Parties."

1    Currently at issue are (1) the Temujin Parties' motion to disqualify Freedman Normand

2    Friedland LLP, formerly known as Roche Freedman LLP, (the "Freedman Firm") as counsel for

3    Mr. Abittan and to stay and clarify the August 2022 Order, as well as separate motions by

4    (2) Mr. Fu and (3) Mr. Fisch and Mr. Lu to compel further discovery responses concerning Ms.

5    Chao and Mr. Ding's Chinese character names.  All three motions are opposed.

6    The Court issued a tentative ruling on November 16, 2022.  It heard oral argument on

7    November 17 and took the matter under submission.  The Court now issues its final order which:

8    a) conditionally DENIES the Temujin Parties' motion to disqualify, pending the submissions of

9    certain declarations from partners in the Freedman Firm (the firm representing Mr. Abittan) and

10   modifications to the protective orders in these cases; and b) GRANTS the motions to compel

11   further responses concerning Ms. Chao and Mr. Ding's Chinese character names.

12   **I.     BACKGROUND**

13   *Abittan* was filed and deemed complex in November 2020.  The initial discovery stay

14   was lifted in May 2021.  In January 2022, the *Fu* matter was also designated complex.  The

15   Court denied Mr. Fu's motion to formally consolidate or relate the two matters, but explained

16   that "these cases will benefit from informal coordination, particularly with regard to

17   discovery…."  Stipulated protective orders were entered in both matters, and discovery

18   proceeded.

19   Following a joint case management conference for both cases, the Court issued an order

20   taking several demurrers to the various pleadings off calendar and staying the briefing for those

21   motions and any other pleadings challenges pending an anticipated mediation.  The Court tolled

22   the deadlines to file motions concerning discovery that had already been served, pending an

23   informal discovery conference ("IDC") "to focus the parties' attention on key discovery

24   necessary to lead to a productive early mediation."

25   Following the IDC, the Court issued an order memorializing the parties' agreement "to

26   meet and confer with each other regarding a briefing schedule concerning discovery related to

27   the identities and aliases of Lily Chao and Damien Ding (the 'Identity Briefing')," and their

28   further agreement "that regardless of the outcomes of the Identity Briefing, they will attend a

mediation in these matters [(tentatively set for Fall 2022)] (without waiver of any right to appeal the decisions on the Identity Briefing)."  A hearing on the Identity Briefing was scheduled for August 18, 2022, and three motions on that subject were briefed by the parties.  In the August 2022 Order, the Court largely granted those motions.

On September 21, 2022, the Temujin Parties moved to disqualify the Freedman Firm and to stay and clarify the August 2022 Order, with a hearing date set for October 27, 2022.  On September 27, 2022, Mr. Fu, joined by Mr. Fisch and Mr. Lu, moved ex parte to compel Ms. Chao and Mr. Ding's compliance with the August 2022 Order.  The Court granted that application on September 29, ordering Ms. Chao and Mr. Ding to respond to Mr. Fisch and Mr. Lu's RFPs by October 6.  The Court's order instructed Mr. Fisch, Mr. Lu, and their counsel not to share any information or documents with Mr. Abittan or his counsel until the Court confirms that this is appropriate, and stated that the Court "is not taking a position at this time whether documents identifying the Chinese character spelling of the names of Ms. Chao and Mr. Ding must be produced" pending an appropriate motion.

On October 10, 2022, Mr. Fu filed a second ex parte application seeking compliance with the August 2022 Order with regard to the discovery he propounded concerning Ms. Chao and Mr. Ding's identities, and specifically, their Chinese character names.  The Court denied that application and set an expedited briefing schedule for a motion on that issue.  Meanwhile, efforts to conduct additional discovery and to attempt mediation have come to a halt.

Mr. Fu and, separately, Mr. Fisch and Mr. Lu filed their motions to compel further discovery concerning Ms. Chao and Mr. Ding's Chinese character names on October 17, 2022.  These motions and the Temujin Parties' motion have now been fully briefed for hearing by the Court.

## II.    TEMUJIN PARTIES' MOTION TO DISQUALIFY THE FREEDMAN FIRM

The Temujin Parties move to disqualify the Freedman Firm based largely on inappropriate conduct by a former partner in the firm, Kyle Roche, which was captured in videos that were posted to the web site Crypto Leaks.

1      The Temujin Parties also seek a stay of the August 2022 Order pending the resolution of

2  the disqualification issue, an order commanding the Freedman Firm to return all confidential

3  documents produced in this action, and, finally, clarification as to whether the August 2022

4  Order requires the disclosure of Ms. Chao and Mr. Ding's Chinese character names.  The Court

5  will address the last request in the context of the two related motions before it that seek to

6  compel this discovery; first, it will address the issues related to disqualification.

7      **A.      Background and Asserted Grounds for Disqualification**

8      On August 26, 2022, the web site Crypto Leaks posted a story entitled "Ava Labs

9  (Avalanche) attacks Solana & cons SEC in evil conspiracy with bought law firm, Roche

10  Freedman."  The Crypto Leaks story includes several short video clips of Mr. Roche discussing

11  his financial interest in Ava and explaining how he uses litigation as a strategic tool to support

12  Ava ("Crypto Leaks Videos").[2]  He states that he agreed to provide legal services for Ava "in

13  exchange for a certain percentage of the token supply," and also has equity in Ava.  He was

14  Ava's "crypto expert in the beginning as well," and because he sues "half of the companies in

15  this space," he knows where the market is going, is "one of the top 10 people in the world" who

16  are knowledgeable about crypto, and has seen "the insides of every single crypto company."

17      In the videos, Mr. Roche suggests that Ava has not been sued yet because he deals "with

18  making sure that the SEC and the CFTC have other magnets to go after" and he has "ensured that

19  there's no such thing as regulation for what they want to do."  He states that he "took down" one

20  _____

21  [2] The Court GRANTS judicial notice of the existence and contents of this story, available at
   https://cryptoleaks.info/case-no-3, and of Mr. Roche's statements in the videos it contains.
22  (Evid. Code, § 452, subd. (h); see *In re Forchion* (2011) 198 Cal.App.4th 1284, 1287 [taking
   judicial notice of statements on party's own web site, where party had an opportunity to express
23  specific concerns].)  Mr. Abittan does not oppose this request, and the Freedman Firm admits
   that Mr. Roche made the statements reflected in the videos.  Mr. Roche also admits to making
24  these statements (but denies their truth) in a declaration filed in federal court, of which the Court
25  GRANTS judicial notice (Ex. 4 to the Temujin Parties' Req.).  (Evid. Code, § 452, subd. (d).)

26  The Temujin Parties also seek judicial notice of web sites purportedly reflecting Mr. Roche's and
   other individuals' responses to the Crypto Leaks story.  The Court DENIES judicial notice of
27  those web site pages (including Exs. 17 & 18 to the Temujin Parties' Req.), as the authors'
   identities are disputable.  In any event, these responses to the Crypto Leaks story are not
28  particularly relevant to this motion.

of Ava's CEO's rivals, Craig Wright (who claims to have been an inventor of Bitcoin), and emphasizes that he does not "care about settling" cases but litigates until "I've got a piece of paper that says I own your company now." Mr. Roche states that Ava does not file lawsuits against its competitors because Ava has him do that in class action lawsuits on behalf of other plaintiffs. He also says that judges and juries do not understand the blockchain space, and juries are "10 idiots" who "control the flow of all the money that happens in American class actions."

Since the Crypto Leaks Videos became public, various parties in other cases in which the Freedman Firm serves as counsel have moved to disqualify the Firm.[3] According to Freedman Firm partner Constantine P. Economides, who has served as lead counsel for Mr. Abittan in this matter, Mr. Roche has now withdrawn from the Firm.

Still, it is unclear whether members of the Freedman Firm maintain an interest in Ava Labs. On March 2, 2022, Jason Cyrulnik, a former partner in the Firm, filed counterclaims in a federal action brought against him by other partners (not including Mr. Economides), alleging that the partners schemed to oust him from the Firm so that they could take his rightful stake for themselves—including a client fee payable in cryptocurrency that had suddenly appreciated to more than $250 million.[4] In its answer, the Firm denied many specific allegations related to its interest in this cryptocurrency, but admitted that it had some kind of "potential/contingent interest in the Tokens." Mr. Cyrulnik alleged that the cryptocurrency was to be allocated 32 percent to Mr. Freedman, 28 percent to Mr. Roche, 25 percent to Mr. Cyrulnik, and five percent each to partners Normand, Friedland, and Holcomb—which the Firm denied.

---

[3] The Court GRANTS judicial notice of various filings in these other cases (Exs. 1–9 & 12–14 to Temujin Parties' Req.). (Evid. Code, § 452, subd. (d).)

The Court also takes judicial notice of an October 13, 2022 minute order reflecting that the Freedman Firm was removed as interim class counsel and ordered to return confidential materials produced in *In re Tether and Bitfinex Crypto Asset Litigation* (S.D.N.Y., No. 1:19-cv-09236-KPF). The Court understands that when this removal order was made, Mr. Roche was still part of the Freedman Firm.

[4] The Court GRANTS judicial notice of filings in this action (Exs. 10–11 to Temujin Parties' Req.). (Evid. Code, § 452, subd. (d).)

Against this background, the Temujin Parties contend that Mr. Roche would have a conflict of interest in representing Mr. Abittan, which is imputed to the Freedman Firm. The Temujin Parties further urge that Mr. Roche's conduct involved dishonesty, fraud, deceit, and/or is prejudicial to the administration of justice, in violation of both the New York and California Rules of Professional Conduct.[5]

**B.      Legal Standard**

"A judge's authority to disqualify an attorney has its origins in the inherent power of every court in the furtherance of justice to control the conduct of ministerial officers and other persons in pending judicial proceedings." (*Neal v. Health Net, Inc*. (2002) 100 Cal.App.4th 831, 840, citing Code Civ. Proc., § 128, subd. (a).)  The power is most often exercised in connection with "professional standards governing avoidance of conflicts of interest or potential adverse use of confidential information." (*Responsible Citizens v. Superior Court* (1993) 16 Cal.App.4th 1717, 1723–1724.)

The classic disqualification case involves the attorney switching sides, so that an attorney who once represented "A" now seeks to represent "B" in a matter materially related to the original representation.  Disqualification in such a case is necessary to safeguard the attorney-client relationship.  A client should not fear that confidences conveyed to his attorney in one action will return to haunt him in a later one.

In other cases, counsel may be disqualified where counsel has obtained the secrets of an adverse party in some other manner, such as where counsel's newly hired paralegal had access to the adversary's confidences while working for opposing counsel, or where counsel obtained confidential information from an expert with whom opposing counsel had consulted. Disqualification is warranted in these

---

[5] The Court GRANTS judicial notice of relevant portions of the California and New York Rules of Professional Conduct cited by the Temujin Parties (Exs. 15–16 to Temujin Parties' Req.). (Evid. Code, § 452, subds. (c), (h).)

7

1  cases, not because the attorney has a direct duty to protect the adverse party's

2  confidences, but because the situation implicates the attorney's ethical duty to

3  maintain the integrity of the judicial process.

4  (*Roush v. Seagate Technology, LLC* (2007) 150 Cal.App.4th 210, 219 (*Roush*), internal citations

5  and quotation marks omitted.)

6        In the latter type of case, "the common thread … is that the attorney obtained confidential

7  information from a source who could not ethically disclose the information without consent from

8  the adversary." (*Roush, supra*, 150 Cal.App.4th at p. 220.)  The moving party has the initial

9  burden to show that the source possessed its confidential information materially related to the

10  proceedings (see *ibid.*) and/or that counsel breached an ethical duty in obtaining or using the

11  information (see *id.* at pp. 225–226).

12        Here, the Temujin Parties raise a somewhat different issue: a concern that opposing

13  counsel will use their confidential information disclosed during discovery in this action to benefit

14  another client that is their business competitor.[6]  But as with the expert witness and related cases,

15  the concern here is that the situation implicates counsel's ethical duty to maintain the integrity of

16  the judicial process.  So the Court will apply the standard stated in those cases, placing the

17  burden on the Temujin Parties to show counsel has breached (or is likely to breach) an ethical

18  duty in obtaining or using confidential information.  Similarly, to the extent the Temujin Parties'

19  motion is based on an asserted conflict arising from the Freedman Firm's representation of Mr.

20  Abittan in light of its relationship with Ava Labs, the burden remains with the Temujin Parties to

21  show there is a conflict—and to show that they have standing to raise it.

22        In evaluating the Temujin Parties' motion, it is important to bear in mind that "[m]otions

23  to disqualify counsel present competing policy considerations":

24        "On the one hand, a court must not hesitate to disqualify an attorney when it is

25        satisfactorily established that he or she wrongfully acquired an unfair advantage

26        that undermines the integrity of the judicial process and will have a continuing

27  _____

28  [6] The Court is unaware of any authority addressing the specific asserted ground for
disqualification raised here.

1    effect on the proceedings before the court.  [Citations.]  On the other hand, it must

2    be kept in mind that disqualification usually imposes a substantial hardship on the

3    disqualified attorney's innocent client, who must bear the monetary and other

4    costs of finding a replacement.  …."

5  (*Oaks Management Corporation v. Superior Court* (2006) 145 Cal.App.4th 453, 462–463,

6  quoting *Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 300 (*Gregori*).)

7         "[A]s courts are increasingly aware, motions to disqualify counsel often pose the very

8  threat to the integrity of the judicial process that they purport to prevent," since they "can be

9  misused to harass opposing counsel, to delay the litigation, or to intimidate an adversary into

10 accepting settlement on terms that would not otherwise be acceptable."  (*Dino v. Pelayo* (2006)

11 145 Cal.App.4th 347, 352 (*Dino*), quoting *Gregori*, internal quotation marks and other notations

12 omitted.)  The importance of the competing policy concerns raised by a motion for

13 disqualification requires a careful exercise of discretion by the trial court.  (See *ibid.*)

14        **C.     Discussion**

15        The Freedman Firm admits that Mr. Roche made the statements captured on the Crypto

16 Leaks Videos.  But Mr. Abittan declares that he has never communicated with Mr. Roche, and

17 lead counsel Mr. Economides declares that Mr. Roche has never worked on this matter and has

18 withdrawn from the Freedman Firm.  Mr. Abittan urges that the Temujin Parties lack standing to

19 seek disqualification based on a conflict among the Freedman Firm's clients—and while he does

20 not believe there is any conflict, he would waive it if there were.  He stresses that he was the one

21 who was sued by Temujin in this case, and he was represented by prior counsel at that time.  And

22 he urges that even if Mr. Roche violated professional rules of conduct, there is no evidence that

23 supports imputing any such violations to the other members of the Freedman Firm.

24        With these arguments in mind, the Court will evaluate each of the grounds for

25 disqualification raised by the Temujin Parties.

26        1.     *Standing*

27        "To bring a motion to disqualify counsel, the moving party must have standing; that is,

28 the invasion of a legally cognizable interest."  (*Lynn v. George* (2017) 15 Cal.App.5th 630, 636

1    (*Lynn*).)  "Standing may arise from an attorney-client relationship between the moving party and

2    targeted counsel or from a duty of confidentiality owed by the attorney to the moving party

3    despite the absence of an attorney-client relationship." (*Id.*, pp. 636–637.)  "Thus, some sort of

4    confidential or fiduciary relationship must exist or have existed before a party may disqualify an

5    attorney predicated on the actual or potential disclosure of confidential information." (*Great*

6    *Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1356 (*Great Lakes*); see also

7    Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2021)

8    ¶ 9:406.5.)

9                                    a.       conflict of interest theory

10          Here, the Temujin Parties do not contend that they ever had an attorney-client

11   relationship with anyone at the Freedman Firm.  And they do not have standing to seek

12   disqualification based on an asserted conflict raised by the Freedman Firm's representation of

13   Mr. Abittan given its relationship with another client, Ava Labs.  (See *Great Lakes, supra*, 186

14   Cal.App.4th at pp. 1358–1359 [party did not have standing to move to disqualify opposing

15   counsel based on asserted conflict impacting opposing parties]; see generally *Jarvis v. Jarvis*

16   (2019) 33 Cal.App.5th 113, 131–133 [summarizing authorities and affirming that moving party

17   must have itself had an attorney-client relationship to disqualify counsel based on a conflict of

18   interest].)  The first ground for disqualification raised by the Temujin Parties accordingly fails.

19                                    b.       confidential information theory

20          Still, the Temujin Parties also contend that the Freedman Firm has a financial incentive to

21   breach its duties with regard to their own confidential information provided in this case.  The

22   Court is unaware of any authority holding that these duties respecting an adverse party's

23   *confidential information* give rise to a *confidential relationship* of the sort that has been found to

24   confer standing to bring a motion for disqualification.

25          The opinion in *Dino* explains this distinction.  There, the moving parties complained that

26   by jointly representing two opposing parties, opposing counsel would necessarily violate the

27   moving parties' right to mediate confidentially with each opposing party.  But *Dino* held that the

28   "exchange of confidential information as part of the mediating process" did not create a

*confidential relationship* between the moving parties and opposing counsel.  (*Dino, supra*, 145 Cal.App.4th at p. 356.)[7]  And as explained in *Barajas v. Oren Realty & Development Co*. (1997) 57 Cal.App.4th 209 (*Barajas*)—where a party attempted to disqualify opposing counsel who had mediated a related case against it on behalf of a different client—serious policy concerns would result from a rule that would disqualify counsel on the assumption they would misuse confidential information learned during mediation.  *Barajas* noted "that common practice allowed attorneys to mediate without subjecting themselves to disqualification" and held that a contrary rule would discourage mediation.  (See *Dino, supra*, 145 Cal.App.4th at pp. 354–355 [discussing *Barajas* and endorsing its reasoning].)

It would raise similar policy concerns to disqualify opposing counsel merely for investing in or representing the moving party's business competitor, on the assumption that counsel will misuse the moving party's confidential information.  The Temujin Parties do not identify any ethical rule that prohibits such representation, and such disqualification would interfere with parties' ability to choose their own counsel, negotiate their own payment terms, and perhaps even to retain qualified counsel at all.

Here, though, the Temujin Parties raise more specific concerns prompted by Mr. Roche's statements in the Crypto Leaks Videos and the inappropriate conduct they imply.  The Court will assume without deciding that the Temujin Parties have standing to move to disqualify the

---

[7] The opinion reasoned:

> Under California law, a confidential relationship is not created simply by the receipt of confidential information.  Instead, its creation generally hinges on an unequal relationship between parties in which one surrenders to the other some degree of control because of the trust and confidence which he reposes in the other.  When a confidential relationship is found to exist, the one in whom confidence was reposed may be held to a higher standard of disclosure and fairness than in an arm's-length relationship.

> Parties and their attorneys who agree to exchange confidential information during mediation are not in an unequal relationship, nor are they held to a standard of disclosure and fairness higher than in an arm's-length relationship. …

(*Dino, supra*, 145 Cal.App.4th at pp. 356–357, internal citations, quotation marks, and other notations omitted.)

Freedman Firm based on the more specific asserted threat to the appropriate treatment of their confidential information raised by Mr. Roche's statements. It turns to the merits of that theory.

### 2. *Merits of Confidential Information Theory*

Based on his own statements, there is certainly a basis to conclude that Mr. Roche engaged in conduct prejudicial to the administration of justice: specifically, misusing the litigation process to learn confidential information about business competitors to an entity in whose performance he had a large financial interest, Ava Labs, and then sharing that information with Ava, as well as using litigation to draw negative regulatory attention away from Ava and towards its competitors. But the Temujin Parties provide no authority supporting their argument that this personal conduct by Mr. Roche, who has left the Freedman Firm, should be automatically imputed to the rest of the Firm.

The Court again assumes without deciding that Mr. Roche's conduct could support an inference that other members of the Freedman Firm were participating on a sufficient factual record. But here, it would be speculative to conclude that others were involved. While there is some suggestion that other partners received compensation in the form of Ava Labs cryptocurrency, this has not been established with admissible evidence. And even if it were, the Court would hesitate to infer that other partners were complicit in the conduct described by Mr. Roche based on this fact alone.

Moreover, there is not even a suggestion that the specific attorneys who have worked substantively on this case, including Mr. Economides, have funneled confidential information to Ava Labs.[8] This case does not fit the profile of the putative class action litigation potentially filed by Mr. Roche for improper purposes—here, Mr. Abittan was sued by the Temujin Parties. And the Court does find that Mr. Abittan would be prejudiced by having to retain new counsel in a complex matter on which the Freedman Firm has worked for well over a year.

---

[8] Mr. Abittan declares that Velvel (Devin) Freedman, who may have an interest in Ava Labs cryptocurrency, was his "first point of contact," but that he has "only worked with" Mr. Economides and Brianna Pierce since then, "with some intermittent communication" with Mr. Freedman.

**D.      Conclusion**

Based on this record, the Court is inclined to conclude that the Temujin Parties have not met their burden to show that the remaining members of the Freedman Firm breached an ethical duty in obtaining or using their confidential information, or are likely to do so.  But to confirm the Court's understanding, the Court will require the following actions before making a final ruling on this motion:[9]

1.      Declarations from every partner in the Freedman Firm that she or he has not provided, and will never provide, another party's confidential information to Ava Labs in violation of a protective order or other court order.

2.      A modification of the protective orders in these cases to make crystal-clear that no confidential information of any party can be shared by any counsel with Ava Labs without the consent of that party.  (The Court understands that these modifications will require meet-and-confer discussions with all parties before they are presented to the Court for sign-off.)

The Court orders such declarations, and the draft modifications to the protective orders, to be provided to the Court by **December 16, 2022**.  Once the Court has reviewed those declarations and has agreed to the modifications to the protective orders, the Court will make a final ruling on the Temujin Parties' disqualification motion.

In addition, the Court DENIES the Temujin Parties' request for a stay of the August 2022 order pending resolution of the disqualification issue.

**III.    MOTIONS CONCERNING MS. CHAO AND MR. DING'S CHINESE CHARACTER NAMES**

In the August 2022 Order, the Court ordered Ms. Chao and Mr. Ding to serve verified, code-compliant further responses to Mr. Fu's Form Interrogatory no. 2.1 and RFP no. 24, "without objection."  It similarly ordered Temujin Labs Inc. to serve further responses to Mr. Fisch's RFP nos. 25 and 26, again "without objection."  The Temujin Parties now seek "clarification" as to "whether those parties must provide the Chinese character names of Chao

---

[9] At the November 17 oral argument on this motion, Mr. Freedman offered to take these actions, and the Court is taking him up on his offer.

and Ding, or whether the official English language versions of their names (i.e., the ones that one would utilize on a driver's license) are sufficient for discovery purposes."  Meanwhile, Mr. Fu and, separately, Mr. Fisch and Mr. Lu move to compel further discovery responses disclosing Ms. Chao and Mr. Ding's Chinese character names.

A.    **The Temujin Parties' Motion for "Clarification"**

The August 2022 Order requires full and complete responses to the requests at issue, without objection.  This includes information concerning Ms. Chao and Mr. Ding's Chinese character names.  Any specific objection that the Temujin Parties had about Chinese character names should have been raised in opposition to the motions addressed by the August 2022 Order. And indeed, Ms. Chao and Mr. Ding specifically objected to disclosing their "Chinese legal names"—objections that the Court overruled.  Temujin Labs Inc. raised the same objections, and the Court likewise overruled its objections.

The Temujin Parties' renewed request that the Court permit them to withhold their Chinese character names thus constitutes an improper motion for reconsideration.  (See *Powell v. County of Orange* (2011) 197 Cal.App.4th 1573, 1577 ["regardless of the name, a motion asking the trial court to decide the same matter previously ruled on is a motion for reconsideration under Code of Civil Procedure section 1008"].)  The Temujin Parties raise no new or different facts, circumstances, or law that would justify reconsideration.  (See Code Civ. Proc., § 1008, subd. (a).)  They simply repeat the same argument that the Court already rejected, and offer evidence consistent with that argument that could have been submitted before.[10]  This does not suffice.

_____

[10] The Court has read and considered the Declaration of Lily Chao filed on September 21, 2022, but it does not raise any new facts.  Ms. Chao claims that both Mr. Abittan and, separately, Mr. Lu and Mr. Fisch threatened to expose her identity back in 2020.  But the Temujin Parties provide no explanation as to why these asserted threats were not raised in their prior oppositions, in which they did more generally and speculatively accuse Mr. Abittan, Mr. Fisch, and Mr. Lu— as well as Mr. Fu—of "only nam[ing] Chao and Ding as cross-defendants for the purpose of harassment" by disclosing their identities.  Under these circumstances, the Court does not find Ms. Chao's declaration to be credible and it does not find her more specific allegation of harassment to be a new fact.

Ms. Chao also vaguely states that she "plan[s] on traveling to China soon" and fears various repercussions "if [her] Chinese legal name was exposed to the Chinese authorities, ... due to my

1  (See *New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212–213 ["[t]he

2  burden under section 1008 is comparable to that of a party seeking a new trial on the ground of

3  newly discovered evidence: the information must be such that the moving party could not, with

4  reasonable diligence, have discovered or produced it [before]"].)  And their request is untimely

5  since it was made much more than 10 days after the August 2022 Order.  (See Code Civ. Proc.,

6  § 1008, subd. (a).)

7        The Temujin Parties' motion to clarify the August 2022 Order is accordingly DENIED.

8        **B.     The Remaining Motions**

9        The Court construes the motions by Mr. Fu and Mr. Fisch and Mr. Lu as motions to

10  compel compliance with the August 2022 Order, and those motions are GRANTED.[11]  Within 10

11  calendar days of the filing of this order, Ms. Chao, Mr. Ding, and Temujin Labs Inc. shall

12  provide full and complete discovery responses in compliance with the August 2022 Order,

13  including with regard to Ms. Chao and Mr. Ding's Chinese character names.

14        At oral argument, Craig Hansen, counsel for Ms. Chao and Mr. Ding (and the Temujin

15  entities) stated he and his firm were going to withdraw from their representation, apparently with

16  the consent of his clients.  But Jingling Ye is going to continue to represent Ms. Chao, Mr. Ding,

17  and the Temujin entities, even after Mr. Hansen and his firm stops their representation.  Given

18

19

---

20  involvement in the crypto field."  This is also not a new fact: the August 2022 Order already
   explained why, "[e]ven assuming that Ms. Chao and Mr. Ding have some reasonable fear of

21  retaliation by the Chinese government," withholding their identities from discovery was not
   justified.  The Court stands by that analysis.

22

23

24  Finally, the evidence submitted with Ms. Chao and Mr. Ding's ex parte opposition filed on
   September 29, 2022 similarly could have been offered before and does not change the Court's

25  prior analysis.

26  [11] Code of Civil Procedure section 2031.310, subdivision (i) provides that "if a party fails to obey
   an order compelling further response, the court may make those orders that are just …."  There is

27  no statutory deadline associated with a motion pursuant to this subdivision.  (See *Kayne v. The
   Grande Holdings Limited* (2011) 198 Cal.App.4th 1470.)  Code of Civil Procedure section

28  2030.300, subdivision (e) similarly authorizes a motion to compel compliance with an order
   compelling a further response to an interrogatory.

that Ms. Chao and Mr. Ding still will have counsel, the Court sees no reason to further delay this discovery.

The Court is hopeful that once this issue is fully resolved, the parties can get back on track for an early mediation.

**IT IS SO ORDERED.**

Date:     November 19, 2022

_____
The Honorable Sunil R. Kulkarni
Judge of the Superior Court

# EXHIBIT 3

IN THE 15TH JUDICIAL CIRCUIT,
IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO. 50-2013-CP-005060-XXXX-NB
PROBATE DIVISION

IN RE: ESTATE OF DAVID ALAN KLEIMAN,

    deceased.

_____/

## RAMONA WATTS' FIRST REQUEST FOR
## <u>PRODUCTION OF DOCUMENTS TO ROCHE FREEDMAN, LLP</u>

    Ramona Watts, under Fla. R. Civ. P. 1.350, request that Roche Freedman, LLP produce

the requested documents for inspection and copying on or before 30 days from the date of this

request.

                        Respectfully Submitted,

                        RIVERO MESTRE LLP
                        *Attorneys for Ramona Watts*
                        2525 Ponce de Leon Blvd., Suite 1000
                        Miami, Florida 33134
                        Tel.: (305) 445-2500
                        Fax: (305) 445-2505

                        By: <u>/s/ Andrés Rivero</u>
                          Andrés Rivero
                          Florida Bar No.: 613819
                        arivero@riveromestre.com
                        Alan H. Rolnick
                        Florida Bar No.: 715085
                        arolnick@riveromestre.com
                        Robert J. Kuntz, Jr.
                        Florida Bar No. 94668
                        rkuntz@riveromestre.com

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on September 27, 2022, a copy of this motion was served by email, pursuant to

Florida Rule of Judicial Administration 2.516(b)(1), on all counsel of record.

By: <u>/s/ Andrés Rivero</u>
ANDRES RIVERO

## I.    DEFINITIONS

A.    The word "document" shall mean any written or graphic matter or other means of preserving thought or expression, and all tangible things from which information or thoughts can be processed or transcribed, and all copies containing additional matter, however produced or reproduced, of any kind and description, in your actual or constructive possession, custody, care, or control, that pertain directly or indirectly, in whole or in part, either to any of the subjects listed below or to any other matter relevant to this action, or which are themselves listed below as specific documents, including, but not limited to, the following: communications, correspondence, memoranda, notes, messages, letters, telegrams, teletype messages, facsimiles, e-mails, bulletins, diaries, chronological data, minutes, books, reports, charts, ledgers, invoices, worksheets, receipts, computer memory, word processing data, computer printouts, work-product schedules, account records, patents, licenses, legal pleadings, minutes of directors' meetings, minutes of shareholders' or other meetings, work assignments, transaction files, statistical records, financial records, bank records, security agreements, testing reports, newspaper or magazine articles, stories or clippings, affidavits, contracts, transcripts, surveys, graphic representations of any kind, photographs, graphs, microfilms, videotapes, tape recordings, or motion pictures or other films, or information maintained in any electronic medium (including, but not limited to, information found in computer hard drives, flash drives, USB drives, pocket drives, CDs, backup tapes, metadata, and pdf).

B.    "Relating to" and "related to" shall mean the following: relates to, refers to, pertains to, contains, concerns, describes, embodies, mentions, constitutes, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts, or contradicts.

C.      The term "Gun" shall refer to Emin Gun Sirer.

D.      The term "Ava Labs" shall refer to Ava Labs, Inc., a Delaware Corporation whose principal place of business is 263 S. 4th St. Brooklyn NY, NY 11211.

E.      The term "Avalanche" shall refer to Ava lab's contracting platform.

F.      The term "Sekniqi" shall refer to Kevin Sekniqi.

G.      The terms "RF," "you," "your," "yours," or "yourself" shall refer to Roche Freedman, LLP, including, but not limited to, any attorney, accountant, contractor, employee, or consultant affiliated with RF, and any person or entity acting or purporting to act on RF's behalf.

H.      The term "MOU" shall refer to the Memorandum of Understanding dated December 27, 2019, and signed by the then-partners of RF.

## II.      INSTRUCTIONS

1.      You should produce the documents as follows: (1) in the exact order in which they are kept in the ordinary course of business; or (2) classified according to the specific request(s) to which they are responsive.

2.      To the extent that you do not have possession, custody, or control of any documents identified as responsive to a particular request herein, please indicate the lack of possession, custody, existence, or control of the responsive documents in your response.

3.      All electronic documents and e-mail are requested to be produced in electronic format by a forensically sound method, with all original metadata preserved and intact.

4.      ESI should be produced as follows:

        a.      Email, instant messaging, calendar, contacts, and word processing files must be derived from the original electronic media and converted to single-page .tiff images with accompanying system metadata (e.g., author,

4

recipient(s), "cc" recipient(s), "bcc" recipient(s), date and time of creation
and receipt, date and time of modification, etc.) and substantive metadata
(e.g., the substance of the changes, etc.), with all attachments. All
chronological metadata shall be standardized to Eastern Standard Time.
The Plaintiffs reserve the right to request native format production for ESI.
Upon such request, you shall produce specific documents (identified by
Bates number or range) in original native electronic format.

b.      Dynamic files (e.g. databases, spreadsheets, project files, etc.) shall be
produced in original native format with all accompanying metadata, along
with all such software necessary to interpret the produced information if
such software is not readily commercially available.

c.      For all ESI not specified above, production shall be made in native format
with all accompanying metadata, along with all software necessary to
interpret the produced information if such software is not readily
commercially available, unless Plaintiffs specifically agree to a different
form of production.

5.      This Request for Production of Documents does not seek the production of
documents protected by the attorney-client privilege or work-product rule.  However, if you
withhold production of a document requested here as privileged, work product or on any other
basis, please state the following in a privilege log for each document withheld:

a.      the type of document (e.g., correspondence, memorandum, e-mail);

b.      the date of the document;

c.      the person(s) who signed the document;

5

    d.      the person(s) who received the document or a copy of it;

    e.      the reason for non-production; and

    f.      the substance of the document.

6.     If any document requested here was previously in your possession, custody, or control, but is no longer, state the following for each document in your response to this request for production of documents:

    a.  the type of document (that is, correspondence, memorandum, e-mail, etc.);

    b.  the date of the document;

    c.  any person who signed the document;

    d.  any person who received the document or a copy of it;

    e.  any person who is presently in possession of the document;

    f.  the substance of the document; and

    g.  the disposition of the document, including the date of disposition.

### III.    DOCUMENTS REQUESTED

1. All documents related to RF's ownership interest in Ava Labs.

2. All documents related to RF's ownership interest in Ava Labs' tokens.

3. All documents related to the MOU.

4. All documents related to RF's engagement agreement with Ava Labs.

5. All documents related to Kyle Roche's ownership interest in Ava Labs.

6. All documents related to RF's ownership interest in Avalanche.

7. All documents related to Kyle Roche's ownership interest in Avalanche.

8. All documents related to Gun's ownership interest in RF.

9. All documents related to Sekniqi's ownership interest in RF.

10. All documents related to "shared workspace" between or among RF, Ava Labs, or Avalanche.

11. All documents related to any lease executed by RF for the "shared workspace" referred to in Request 10.

12. All documents related to any lease executed by the Ava Labs for the "shared workspace" referred to in Request 10.

13. All documents related to "academic writings" in your possession authored by either you, Gun, or both.

14. All documents related to Ava Labs' capitalization tables on which Kyle Roche's name appears.

15. All documents related to Ava Labs capitalization tables on which any member of RF appears.

16. All documents related to RF's use of straw plaintiffs to bring actions on behalf of Ava Labs in which Ava Labs did not appear.

17. All documents related to RF's communications with the Securities and Exchange Commission in which you attempted to direct regulator attention toward an Ava Labs' competitor.

18. All documents related to RF's communications with the Commodities Futures Trading Commission in which you attempted to direct regulator attention toward an Ava Labs' competitor.

19. All documents related to Kyle Roche's residence in Florida for tax purposes.

# EXHIBIT 4

IN THE 15TH JUDICIAL CIRCUIT,
IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO. 50-2013-CP-005060-XXXX-NB
PROBATE DIVISION

IN RE: ESTATE OF DAVID ALAN KLEIMAN,

deceased.
_____/

## RAMONA WATTS' FIRST REQUEST FOR ADMISSIONS TO ROCHE FREEDMAN, LLP

Ramona Watts, under Fla. R. Civ. P. 1.370, request that Roche Freedman, LLP admit or deny each of the requests set forth below within 30 days.

### I.       INSTRUCTIONS

A.       As to each statement, you shall specifically admit or deny the statement. If denied, the denial must fairly meet the substance of the requested admission. If you qualify your answer or deny any part of the matter for which admission is requested, you shall admit so much of the statement as is true and qualify or deny the remainder.

B.       If you object that a term or phrase is vague or ambiguous, you shall respond with its understanding of the term or phrase and specifically admit or deny the statement.

### II.       DEFINITIONS

A.       The terms "RF," "you," "your," "yours," or "yourself" shall refer to Roche Freedman, LLP, including, but not limited to, any attorney, accountant, contractor, employee, or consultant affiliated with RF, and any person or entity acting or purporting to act on RF's behalf.

B.       The term "tokens" shall mean digital assets that are used as currency.

C.       The term "MOU" shall refer to the Memorandum of Understanding dated December 27, 2019, and signed by the then-partners of RF.

D.     The term "Gun" shall refer to Emin Gun Sirer.

E.     The term "Ava Labs" shall refer to Ava Labs, Inc., a Delaware Corporation whose

principal place of business is 263 S. 4th St. Brooklyn NY, NY 11211.

### III.     REQUESTS FOR ADMISSION

1. Admit that Kyle Roche made the statements recorded in the videos found at https://cryptoleaks.info/case-no-3.

2. Admit that the video recorded statements found at https://cryptoleaks.info/case-no-3 made by Kyle Roche were true.

3. Admit that RF has represented Ava Labs.

4. Admit that RF owns approximately 1% of the shares in Ava Labs.

5. Admit that Ava Labs is an undisclosed principal of RF.

6. Admit that the MOU addresses how Ava Labs tokens will be distributed between the partners of RF.

7. Admit that Kyle Roche made a deal with Gun, whereby RF would provide legal services in exchange for a certain percentage of the token supply.

8. Admit that Kyle Roche was the second person listed on the Ava Labs capitalization table.

9. Admit that Kyle Roche obtained approximately one percent of Ava Labs' equity.

10. Admit that Kyle Roche obtained approximately one percent of Ava Labs' tokens.

11. Admit that Kyle has used litigation as a strategic instrument to support Ava Labs.

12. Admit that RF has used litigation as a strategic instrument to support Ava Labs.

13. Admit that Ava Labs made Kyle Roche an equity partner in appreciation for his use of litigation to as a strategic instrument for Ava Labs.

14. Admit that your lawsuits against blockchain companies or entities has enabled you to see inside their operations.

15. Admit that you sue blockchain companies or entities to be able to see inside their operations.

16. Admit that you sue blockchain companies or entities to be able to learn their secrets.

17.  Admit that you sued Emre Aksoy at Gun's behest.

18. Admit that you consider Dr. Craig Wright to be Gun's archnemesis.

19. Admit that you sued Dr. Craig Wright to please Gun.

20. Admit that you sued Dr. Craig Wright to devalue Bitcoin Satoshi Vision.

21. Admit that you sued Dr. Craig Wright to "take him down."

22. Admit that the breach of partnership claims against Dr. Craig Wright were a mere pretext for a lawsuit designed to vindicate Gun's personal vendetta.

23. Admit that you do not care about settling lawsuits.

24. Admit that you would rather win a $100 million judgment for your client and get good press, than settle for $500 million.

25. Admit that you have shared with Ava Labs non-public information that you learned about its competitors.

26. Admit that you sue blockchain companies or entities to be able to learn their secrets.

Respectfully Submitted,


RIVERO MESTRE LLP
*Attorneys for Ramona Watts*
2525 Ponce de Leon Blvd., Suite 1000
Miami, Florida 33134
Tel.: (305) 445-2500
Fax: (305) 445-2505

By: /s/ Andrés Rivero
    Andrés Rivero
    Florida Bar No.: 613819
    arivero@riveromestre.com
    Alan H. Rolnick
    Florida Bar No.: 715085
    arolnick@riveromestre.com
    Robert J. Kuntz, Jr.
    Florida Bar No. 94668
    rkuntz@riveromestre.com

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on September 27, 2022, a copy of this motion was served by email, pursuant to

Florida Rule of Judicial Administration 2.516(b)(1), on all counsel of record.

By: <u>/s/ Andrés Rivero</u>
ANDRES RIVERO

# EXHIBIT 5

IN THE CIRCUIT COURT FOR THE
15TH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

RAMONA WATTS,                              CASE NO: 50-2022-CA-005501-XXXX-MB

    Plaintiff,

    v.

W&K INFO DEFENSE RESEARCH LLC,

    Defendant.

_____/

## RAMONA WATTS' FIRST REQUEST FOR
## PRODUCTION OF DOCUMENTS TO ROCHE FREEDMAN, LLP

    Plaintiff Ramona Watts, under Fla. R. Civ. P. 1.350, request that Roche Freedman, LLP

produce the requested documents for inspection and copying on or before 30 days from the date

of this request.

                    Respectfully Submitted,

                    RIVERO MESTRE LLP
                    *Attorneys for Ramona Watts*
                    2525 Ponce de Leon Blvd., Suite 1000
                    Miami, Florida 33134
                    Tel.: (305) 445-2500
                    Fax: (305) 445-2605

                    By: /s/ Andrés Rivero
                        Andrés Rivero
                        Florida Bar No.: 613819
                        arivero@riveromestre.com
                        Alan H. Rolnick
                        Florida Bar No.: 715085
                        arolnick@riveromestre.com
                        Robert J. Kuntz, Jr.
                        Florida Bar No. 94668
                        rkuntz@riveromestre.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 27, 2022, a copy of this motion was served by email, pursuant to

Florida Rule of Judicial Administration 2.516(b)(1), on all counsel of record.

By: <u>/s/ Andrés Rivero</u>
ANDRES RIVERO

## I.      DEFINITIONS

A.      The word "document" shall mean any written or graphic matter or other means of preserving thought or expression, and all tangible things from which information or thoughts can be processed or transcribed, and all copies containing additional matter, however produced or reproduced, of any kind and description, in your actual or constructive possession, custody, care, or control, that pertain directly or indirectly, in whole or in part, either to any of the subjects listed below or to any other matter relevant to this action, or which are themselves listed below as specific documents, including, but not limited to, the following: communications, correspondence, memoranda, notes, messages, letters, telegrams, teletype messages, facsimiles, e-mails, bulletins, diaries, chronological data, minutes, books, reports, charts, ledgers, invoices, worksheets, receipts, computer memory, word processing data, computer printouts, work-product schedules, account records, patents, licenses, legal pleadings, minutes of directors' meetings, minutes of shareholders' or other meetings, work assignments, transaction files, statistical records, financial records, bank records, security agreements, testing reports, newspaper or magazine articles, stories or clippings, affidavits, contracts, transcripts, surveys, graphic representations of any kind, photographs, graphs, microfilms, videotapes, tape recordings, or motion pictures or other films, or information maintained in any electronic medium (including, but not limited to, information found in computer hard drives, flash drives, USB drives, pocket drives, CDs, backup tapes, metadata, and pdf).

B.      "Relating to" and "related to" shall mean the following: relates to, refers to, pertains to, contains, concerns, describes, embodies, mentions, constitutes, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts, or contradicts.

C.       The term "Gun" shall refer to Emin Gun Sirer.

D.       The term "Ava Labs" shall refer to Ava Labs, Inc., a Delaware Corporation whose principal place of business is 263 S. 4th St. Brooklyn NY, NY 11211.

E.       The term "Avalanche" shall refer to Ava lab's contracting platform.

F.       The term "Sekniqi" shall refer to Kevin Sekniqi.

G.       The terms "RF," "you," "your," "yours," or "yourself" shall refer to Roche Freedman, LLP, including, but not limited to, any attorney, accountant, contractor, employee, or consultant affiliated with RF, and any person or entity acting or purporting to act on RF's behalf.

H.       The term "MOU" shall refer to the Memorandum of Understanding dated December 27, 2019, and signed by the then-partners of RF.

## II.       INSTRUCTIONS

1.       You should produce the documents as follows: (1) in the exact order in which they are kept in the ordinary course of business; or (2) classified according to the specific request(s) to which they are responsive.

2.       To the extent that you do not have possession, custody, or control of any documents identified as responsive to a particular request herein, please indicate the lack of possession, custody, existence, or control of the responsive documents in your response.

3.       All electronic documents and e-mail are requested to be produced in electronic format by a forensically sound method, with all original metadata preserved and intact.

4.       ESI should be produced as follows:

a.       Email, instant messaging, calendar, contacts, and word processing files must be derived from the original electronic media and converted to single-page .tiff images with accompanying system metadata (e.g., author,

4

recipient(s), "cc" recipient(s), "bcc" recipient(s), date and time of creation and receipt, date and time of modification, etc.) and substantive metadata (e.g., the substance of the changes, etc.), with all attachments. All chronological metadata shall be standardized to Eastern Standard Time. The Plaintiffs reserve the right to request native format production for ESI. Upon such request, you shall produce specific documents (identified by Bates number or range) in original native electronic format.

b.      Dynamic files (e.g. databases, spreadsheets, project files, etc.) shall be produced in original native format with all accompanying metadata, along with all such software necessary to interpret the produced information if such software is not readily commercially available.

c.      For all ESI not specified above, production shall be made in native format with all accompanying metadata, along with all software necessary to interpret the produced information if such software is not readily commercially available, unless Plaintiffs specifically agree to a different form of production.

5.      This Request for Production of Documents does not seek the production of documents protected by the attorney-client privilege or work-product rule.  However, if you withhold production of a document requested here as privileged, work product or on any other basis, please state the following in a privilege log for each document withheld:

a.      the type of document (e.g., correspondence, memorandum, e-mail);

b.      the date of the document;

c.      the person(s) who signed the document;

    d.      the person(s) who received the document or a copy of it;

    e.      the reason for non-production; and

    f.      the substance of the document.

6.      If any document requested here was previously in your possession, custody, or control, but is no longer, state the following for each document in your response to this request for production of documents:

    a.   the type of document (that is, correspondence, memorandum, e-mail, etc.);

    b.   the date of the document;

    c.   any person who signed the document;

    d.   any person who received the document or a copy of it;

    e.   any person who is presently in possession of the document;

    f.   the substance of the document; and

    g.   the disposition of the document, including the date of disposition.

### III.    DOCUMENTS REQUESTED

1. All documents related to RF's ownership interest in Ava Labs.

2. All documents related to RF's ownership interest in Ava Labs' tokens.

3. All documents related to the MOU.

4. All documents related to RF's engagement agreement with Ava Labs.

5. All documents related to Kyle Roche's ownership interest in Ava Labs.

6. All documents related to RF's ownership interest in Avalanche.

7. All documents related to Kyle Roche's ownership interest in Avalanche.

8. All documents related to Gun's ownership interest in RF.

9. All documents related to Sekniqi's ownership interest in RF.

10. All documents related to "shared workspace" between or among RF, Ava Labs, or Avalanche.

11. All documents related to any lease executed by RF for the "shared workspace" referred to in Request 10.

12. All documents related to any lease executed by the Ava Labs for the "shared workspace" referred to in Request 10.

13. All documents related to "academic writings" in your possession authored by either you, Gun, or both.

14. All documents related to Ava Labs' capitalization tables on which Kyle Roche's name appears.

15. All documents related to Ava Labs capitalization tables on which any member of RF appears.

16. All documents related to RF's use of straw plaintiffs to bring actions on behalf of Ava Labs in which Ava Labs did not appear.

17. All documents related to RF's communications with the Securities and Exchange Commission in which you attempted to direct regulator attention toward an Ava Labs' competitor.

18. All documents related to RF's communications with the Commodities Futures Trading Commission in which you attempted to direct regulator attention toward an Ava Labs' competitor.

19. All documents related to Kyle Roche's residence in Florida for tax purposes.

# EXHIBIT 6

IN THE CIRCUIT COURT FOR THE
15TH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

RAMONA WATTS,                              CASE NO: 50-2022-CA-005501-XXXX-MB

    Plaintiff,

    v.

W&K INFO DEFENSE RESEARCH LLC,

    Defendant.

_____/

## RAMONA WATTS' FIRST REQUEST FOR ADMISSIONS TO ROCHE FREEDMAN, LLP

Plaintiff Ramona Watts under Fla. R. Civ. P. 1.370, request that Roche Freedman, LLP admit or deny each of the requests set forth below within 30 days.

### I.    INSTRUCTIONS

A.    As to each statement, you shall specifically admit or deny the statement. If denied, the denial must fairly meet the substance of the requested admission. If you qualify your answer or deny any part of the matter for which admission is requested, you shall admit so much of the statement as is true and qualify or deny the remainder.

B.    If you object that a term or phrase is vague or ambiguous, you shall respond with its understanding of the term or phrase and specifically admit or deny the statement.

### II.    DEFINITIONS

A.    The terms "RF," "you," "your," "yours," or "yourself" shall refer to Roche Freedman, LLP, including, but not limited to, any attorney, accountant, contractor, employee, or consultant affiliated with RF, and any person or entity acting or purporting to act on RF's behalf.

    B.     The term "tokens" shall mean digital assets that are used as currency.

    C.     The term "MOU" shall refer to the Memorandum of Understanding dated

December 27, 2019, and signed by the then-partners of RF.

    D.     The term "Gun" shall refer to Emin Gun Sirer.

    E.     The term "Ava Labs" shall refer to Ava Labs, Inc., a Delaware Corporation whose

principal place of business is 263 S. 4th St. Brooklyn NY, NY 11211.

### III.    REQUESTS FOR ADMISSION

1. Admit that Kyle Roche made the statements recorded in the videos found at https://cryptoleaks.info/case-no-3.

2. Admit that the video recorded statements found at https://cryptoleaks.info/case-no-3 made by Kyle Roche were true.

3. Admit that RF has represented Ava Labs.

4. Admit that RF owns approximately 1% of the shares in Ava Labs.

5. Admit that Ava Labs is an undisclosed principal of RF.

6. Admit that the MOU addresses how Ava Labs tokens will be distributed between the partners of RF.

7. Admit that Kyle Roche made a deal with Gun, whereby RF would provide legal services in exchange for a certain percentage of the token supply.

8. Admit that Kyle Roche was the second person listed on the Ava Labs capitalization table.

9. Admit that Kyle Roche obtained approximately one percent of Ava Labs' equity.

10. Admit that Kyle Roche obtained approximately one percent of Ava Labs' tokens.

11. Admit that Kyle has used litigation as a strategic instrument to support Ava Labs.

12. Admit that RF has used litigation as a strategic instrument to support Ava Labs.

13. Admit that Ava Labs made Kyle Roche an equity partner in appreciation for his use of litigation to as a strategic instrument for Ava Labs.

14. Admit that your lawsuits against blockchain companies or entities has enabled you to see inside their operations.

15. Admit that you sue blockchain companies or entities to be able to see inside their operations.

16. Admit that you sue blockchain companies or entities to be able to learn their secrets.

17.  Admit that you sued Emre Aksoy at Gun's behest.

18. Admit that you consider Dr. Craig Wright to be Gun's archnemesis.

19. Admit that you sued Dr. Craig Wright to please Gun.

20. Admit that you sued Dr. Craig Wright to devalue Bitcoin Satoshi Vision.

21. Admit that you sued Dr. Craig Wright to "take him down."

22. Admit that the breach of partnership claims against Dr. Craig Wright were a mere pretext for a lawsuit designed to vindicate Gun's personal vendetta.

23. Admit that you do not care about settling lawsuits.

24. Admit that you would rather win a $100 million judgment for your client and get good press, than settle for $500 million.

25. Admit that you have shared with Ava Labs non-public information that you learned about its competitors.

26. Admit that you sue blockchain companies or entities to be able to learn their secrets.

Respectfully Submitted,


RIVERO MESTRE LLP
*Attorneys for Ramona Watts*
2525 Ponce de Leon Blvd., Suite 1000
Miami, Florida 33134
Tel.: (305) 445-2500
Fax: (305) 445-2505

By: /s/ Andrés Rivero
    Andrés Rivero
    Florida Bar No.: 613819
    arivero@riveromestre.com
    Alan H. Rolnick
    Florida Bar No.: 715085
    arolnick@riveromestre.com
    Robert J. Kuntz, Jr.
    Florida Bar No. 94668
    rkuntz@riveromestre.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 27, 2022, a copy of this motion was served by email, pursuant to

Florida Rule of Judicial Administration 2.516(b)(1), on all counsel of record.

By: <u>/s/ Andrés Rivero</u>
ANDRES RIVERO

# EXHIBIT 7

IN THE CIRCUIT COURT FOR THE
15TH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

Ramona Ang, as trustee of the
Tulip Trust,

CASE NO: 50-2021-CA-004758-XXXX-MB

       plaintiff,

         v.

Ira Kleiman, as personal representative
of the Estate of David Kleiman

       defendant,

and

W&K Info Defense Research, LLC,
and Lynn Wright,

       nominal defendants.

_____/

## TULIP TRUST'S FIRST REQUEST FOR
## <u>PRODUCTION OF DOCUMENTS TO ROCHE FREEDMAN, LLP</u>

      Plaintiff Ramona Ang, as trustee for Tulip Trust, under Fla. R. Civ. P. 1.350, request that

Roche Freedman, LLP produce the requested documents for inspection and copying on or before

30 days from the date of this request.

                          Respectfully Submitted,

                          RIVERO MESTRE LLP
                          *Attorneys for Tulip Trust*
                          2525 Ponce de Leon Blvd., Suite 1000
                          Miami, Florida 33134
                          Tel.: (305) 445-2500
                          Fax: (305) 445-2505

                          By: <u>/s/ Andrés Rivero</u>
                             Andrés Rivero
                             Florida Bar No.: 613819
                             arivero@riveromestre.com

Alan H. Rolnick
Florida Bar No.: 715085
arolnick@riveromestre.com
Robert J. Kuntz, Jr.
Florida Bar No. 94668
rkuntz@riveromestre.com

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on September 14, 2022, a copy of this motion was served by email, pursuant to

Florida Rule of Judicial Administration 2.516(b)(1), on all counsel of record.

By: <u>/s/ Andrés Rivero</u>
ANDRES RIVERO

## I.      DEFINITIONS

A.      The word "document" shall mean any written or graphic matter or other means of preserving thought or expression, and all tangible things from which information or thoughts can be processed or transcribed, and all copies containing additional matter, however produced or reproduced, of any kind and description, in your actual or constructive possession, custody, care, or control, that pertain directly or indirectly, in whole or in part, either to any of the subjects listed below or to any other matter relevant to this action, or which are themselves listed below as specific documents, including, but not limited to, the following: communications, correspondence, memoranda, notes, messages, letters, telegrams, teletype messages, facsimiles, e-mails, bulletins, diaries, chronological data, minutes, books, reports, charts, ledgers, invoices, worksheets, receipts, computer memory, word processing data, computer printouts, work-product schedules, account records, patents, licenses, legal pleadings, minutes of directors' meetings, minutes of shareholders' or other meetings, work assignments, transaction files, statistical records, financial records, bank records, security agreements, testing reports, newspaper or magazine articles, stories or clippings, affidavits, contracts, transcripts, surveys, graphic representations of any kind, photographs, graphs, microfilms, videotapes, tape recordings, or motion pictures or other films, or information maintained in any electronic medium (including, but not limited to, information found in computer hard drives, flash drives, USB drives, pocket drives, CDs, backup tapes, metadata, and pdf).

B.      "Relating to" and "related to" shall mean the following: relates to, refers to, pertains to, contains, concerns, describes, embodies, mentions, constitutes, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts, or contradicts.

C.       The term "Gun" shall refer to Emin Gun Sirer.

D.       The term "Ava Labs" shall refer to Ava Labs, Inc., a Delaware Corporation whose principal place of business is 263 S. 4th St. Brooklyn NY, NY 11211.

E.       The term "Avalanche" shall refer to Ava lab's contracting platform.

F.       The term "Sekniqi" shall refer to Kevin Sekniqi.

G.       The terms "RF," "you," "your," "yours," or "yourself" shall refer to Roche Freedman, LLP, including, but not limited to, any attorney, accountant, contractor, employee, or consultant affiliated with RF, and any person or entity acting or purporting to act on RF's behalf.

H.       The term "MOU" shall refer to the Memorandum of Understanding dated December 27, 2019, and signed by the then-partners of RF.

## II.       INSTRUCTIONS

1.       You should produce the documents as follows: (1) in the exact order in which they are kept in the ordinary course of business; or (2) classified according to the specific request(s) to which they are responsive.

2.       To the extent that you do not have possession, custody, or control of any documents identified as responsive to a particular request herein, please indicate the lack of possession, custody, existence, or control of the responsive documents in your response.

3.       All electronic documents and e-mail are requested to be produced in electronic format by a forensically sound method, with all original metadata preserved and intact.

4.       ESI should be produced as follows:

     a.       Email, instant messaging, calendar, contacts, and word processing files must be derived from the original electronic media and converted to single-page .tiff images with accompanying system metadata (e.g., author,

4

recipient(s), "cc" recipient(s), "bcc" recipient(s), date and time of creation and receipt, date and time of modification, etc.) and substantive metadata (e.g., the substance of the changes, etc.), with all attachments. All chronological metadata shall be standardized to Eastern Standard Time. The Plaintiffs reserve the right to request native format production for ESI. Upon such request, you shall produce specific documents (identified by Bates number or range) in original native electronic format.

b.      Dynamic files (e.g. databases, spreadsheets, project files, etc.) shall be produced in original native format with all accompanying metadata, along with all such software necessary to interpret the produced information if such software is not readily commercially available.

c.      For all ESI not specified above, production shall be made in native format with all accompanying metadata, along with all software necessary to interpret the produced information if such software is not readily commercially available, unless Plaintiffs specifically agree to a different form of production.

5.      This Request for Production of Documents does not seek the production of documents protected by the attorney-client privilege or work-product rule.  However, if you withhold production of a document requested here as privileged, work product or on any other basis, please state the following in a privilege log for each document withheld:

a.      the type of document (e.g., correspondence, memorandum, e-mail);

b.      the date of the document;

c.      the person(s) who signed the document;

      d.      the person(s) who received the document or a copy of it;

      e.      the reason for non-production; and

      f.      the substance of the document.

6.      If any document requested here was previously in your possession, custody, or control, but is no longer, state the following for each document in your response to this request for production of documents:

      a.   the type of document (that is, correspondence, memorandum, e-mail, etc.);

      b.   the date of the document;

      c.   any person who signed the document;

      d.   any person who received the document or a copy of it;

      e.   any person who is presently in possession of the document;

      f.   the substance of the document; and

      g.   the disposition of the document, including the date of disposition.

### III.    DOCUMENTS REQUESTED

1. All documents related to RF's ownership interest in Ava Labs.

2. All documents related to RF's ownership interest in Ava Labs' tokens.

3. All documents related to the MOU.

4. All documents related to RF's engagement agreement with Ava Labs.

5. All documents related to Kyle Roche's ownership interest in Ava Labs.

6. All documents related to RF's ownership interest in Avalanche.

7. All documents related to Kyle Roche's ownership interest in Avalanche.

8. All documents related to Gun's ownership interest in RF.

9. All documents related to Sekniqi's ownership interest in RF.

10. All documents related to "shared workspace" between or among RF, Ava Labs, or Avalanche.

11. All documents related to any lease executed by RF for the "shared workspace" referred to in Request 10.

12. All documents related to any lease executed by the Ava Labs for the "shared workspace" referred to in Request 10.

13. All documents related to "academic writings" in your possession authored by either you, Gun, or both.

14. All documents related to Ava Labs' capitalization tables on which Kyle Roche's name appears.

15. All documents related to Ava Labs capitalization tables on which any member of RF appears.

16. All documents related to RF's use of straw plaintiffs to bring actions on behalf of Ava Labs in which Ava Labs did not appear.

17. All documents related to RF's communications with the Securities and Exchange Commission in which you attempted to direct regulator attention toward an Ava Labs' competitor.

18. All documents related to RF's communications with the Commodities Futures Trading Commission in which you attempted to direct regulator attention toward an Ava Labs' competitor.

19. All documents related to Kyle Roche's residence in Florida for tax purposes.

# EXHIBIT 8

IN THE CIRCUIT COURT FOR THE
15TH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

Ramona Ang, as trustee of the
Tulip Trust,

CASE NO: 50-2021-CA-004758-XXXX-MB

       plaintiff,

         v.

Ira Kleiman, as personal representative
of the Estate of David Kleiman

       defendant,

and

W&K Info Defense Research, LLC,
and Lynn Wright,

       nominal defendants.

_____/

## TULIP TRUST'S FIRST REQUEST FOR ADMISSIONS TO ROCHE FREEDMAN, LLP

    Plaintiff Ramona Ang, as trustee for Tulip Trust, under Fla. R. Civ. P. 1.370, request that

Roche Freedman, LLP admit or deny each of the requests set forth below within 30 days.

## I.     INSTRUCTIONS

    A.    As to each statement, you shall specifically admit or deny the statement. If denied,

the denial must fairly meet the substance of the requested admission. If you qualify your answer

or deny any part of the matter for which admission is requested, you shall admit so much of the

statement as is true and qualify or deny the remainder.

    B.    If you object that a term or phrase is vague or ambiguous, you shall respond with

its understanding of the term or phrase and specifically admit or deny the statement.

## II.     DEFINITIONS

A.     The terms "RF," "you," "your," "yours," or "yourself" shall refer to Roche

Freedman, LLP, including, but not limited to, any attorney, accountant, contractor, employee, or

consultant affiliated with RF, and any person or entity acting or purporting to act on RF's behalf.

B.     The term "tokens" shall mean digital assets that are used as currency.

C.     The term "MOU" shall refer to the Memorandum of Understanding dated

December 27, 2019, and signed by the then-partners of RF.

D.     The term "Gun" shall refer to Emin Gun Sirer.

E.     The term "Ava Labs" shall refer to Ava Labs, Inc., a Delaware Corporation whose

principal place of business is 263 S. 4th St. Brooklyn NY, NY 11211.

## III.     REQUESTS FOR ADMISSION

1. Admit that Kyle Roche made the statements recorded in the videos found at
   https://cryptoleaks.info/case-no-3.

2. Admit that the video recorded statements found at https://cryptoleaks.info/case-no-3
   made by Kyle Roche were true.

3. Admit that RF has represented Ava Labs.

4. Admit that RF owns approximately 1% of the shares in Ava Labs.

5. Admit that Ava Labs is an undisclosed principal of RF.

6. Admit that the MOU addresses how Ava Labs tokens will be distributed between the
   partners of RF.

7. Admit that Kyle Roche made a deal with Gun, whereby RF would provide legal services
   in exchange for a certain percentage of the token supply.

8. Admit that Kyle Roche was the second person listed on the Ava Labs capitalization table.

9. Admit that Kyle Roche obtained approximately one percent of Ava Labs' equity.

10. Admit that Kyle Roche obtained approximately one percent of Ava Labs' tokens.

11. Admit that Kyle has used litigation as a strategic instrument to support Ava Labs.

12. Admit that RF has used litigation as a strategic instrument to support Ava Labs.

13. Admit that Ava Labs made Kyle Roche an equity partner in appreciation for his use of litigation to as a strategic instrument for Ava Labs.

14. Admit that your lawsuits against blockchain companies or entities has enabled you to see inside their operations.

15. Admit that you sue blockchain companies or entities to be able to see inside their operations.

16. Admit that you sue blockchain companies or entities to be able to learn their secrets.

17.  Admit that you sued Emre Aksoy at Gun's behest.

18. Admit that you consider Dr. Craig Wright to be Gun's archnemesis.

19. Admit that you sued Dr. Craig Wright to please Gun.

20. Admit that you sued Dr. Craig Wright to devalue Bitcoin Satoshi Vision.

21. Admit that you sued Dr. Craig Wright to "take him down."

22. Admit that the breach of partnership claims against Dr. Craig Wright were a mere pretext for a lawsuit designed to vindicate Gun's personal vendetta.

23. Admit that you do not care about settling lawsuits.

24. Admit that you would rather win a $100 million judgment for your client and get good press, than settle for $500 million.

25. Admit that you have shared with Ava Labs non-public information that you learned about its competitors.

26. Admit that you sue blockchain companies or entities to be able to learn their secrets.

Respectfully Submitted,


RIVERO MESTRE LLP
*Attorneys for Tulip Trust*
2525 Ponce de Leon Blvd., Suite 1000
Miami, Florida 33134
Tel.: (305) 445-2500
Fax: (305) 445-2505


By: /s/ Andrés Rivero
    Andrés Rivero

Florida Bar No.: 613819
arivero@riveromestre.com
Alan H. Rolnick
Florida Bar No.: 715085
arolnick@riveromestre.com
Robert J. Kuntz, Jr.
Florida Bar No. 94668
rkuntz@riveromestre.com

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on September 14, 2022, a copy of this motion was served by email, pursuant to

Florida Rule of Judicial Administration 2.516(b)(1), on all counsel of record.

By: /s/ Andrés Rivero
ANDRES RIVERO

# EXHIBIT 9

IN THE 15TH JUDICIAL CIRCUIT,
IN AND FOR PALM BEACH COUNTY,
FLORIDA

CASE NO. 50-2013-CP-005060-XXXX-NB
PROBATE DIVISION

IN RE: ESTATE OF DAVID KLEIMAN,

    deceased.

_____ /

## ROCHE FREEDMAN LLP'S RESPONSES AND OBJECTIONS TO RAMONA WATTS'S FIRST REQUEST FOR ADMISSIONS

Pursuant to Florida Rules of Civil Procedure 1.280, 1.370, and 1.410, Non-Party Roche Freedman LLP (n/k/a Freedman Normand Friedland LLP) ("RF"), by and through its undersigned counsel, hereby responds and objects to Ramona Watts's First Request for Admissions dated September 27, 2022 (the "Requests" and each a "Request"), as follows:

## GENERAL OBJECTIONS

1.      RF is not a party to this action and therefore has no obligation under the Florida Rules of Civil Procedure or under Florida law to respond to requests for admission served pursuant to Florida Rule of Civil Procedure 1.370.

2.      Ms. Watts's discovery requests seek information that is not even conceivably relevant. Her requests are frivolous and appear to have been made entirely for purposes of harassing RF and its clients. RF reserves the right to move for a protective and to seek sanctions against Ms. Watts and her counsel.

3.      To the extent RF responds to a Request, that response shall be by and on behalf of RF and will be limited to information currently available to it.

4.      These responses reflect RF's present knowledge, information, and belief, and therefore remain subject to change or modification based on further discovery of facts or circumstances that may come to RF's attention.  RF reserves the right to rely on any facts, documents, evidence, or other contentions that may develop or come to its attention at a later time and to supplement or amend the responses at any time prior to the trial in this action.  RF further reserves the right to raise any additional objections deemed necessary or appropriate in light of any further review.

5.      Any response to these Requests shall be subject to the entry of an appropriate confidentiality order.

6.      RF objects to the Requests to the extent that they seek information protected by the attorney-client privilege, the work-product doctrine, and/or any other applicable privilege, protection, or immunity.  RF will withhold and redact certain information that is subject to such privileges or protections.  To the extent that any inadvertent production of such information is made in response to the Requests, such production shall not constitute a waiver of any applicable privilege or protection.  RF reserves the right to obtain the return of such information and prohibit its use in any manner, and hereby requests the return of any such inadvertently produced privileged information and reserves the right to object to the disclosure or use of such privileged information at any stage of these or any other proceedings.

7.      RF objects to the Requests to the extent that they are redundant or duplicative of other specific Requests.  Where information may be responsive to more than one Request, RF will provide that information only once.

8.      RF objects to any factual assumptions, implications, and explicit or implicit characterizations of facts, events, circumstances, or issues in the Requests.  RF's responses

2

herein are not intended to mean that RF agrees with any factual assumptions, implications, or any explicit or implicit characterization of facts, events, circumstances, or issues in the Requests, and are without prejudice to RF's right to dispute facts and legal conclusions assumed in the Requests.

9.      RF makes these Responses and Objections without in any way waiving or intending to waive (a) any objections as to the competency, relevance, materiality, privileged status, or admissibility as evidence, for any purpose, of any information provided in response to the Requests; (b) the right to object on any ground to use of the information produced in response to the Requests at any hearing or trial; (c) the right to object on any ground at any time to a demand for further responses to the Requests; (d) the right to revise, amend, supplement, or clarify any of the responses and objections set forth herein; and (e) the right to move the Court for a protective order with respect to the Requests.

## <u>OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS</u>

10.      RF objects to the "Instructions" and "Definitions" insofar as they incorporate purported facts.  RF does not adopt or confirm the accuracy of any purported facts incorporated in any of the Instructions or Definitions.

11.      RF objects to Instruction "B" because it purports to impose on RF obligations greater than those imposed by the Florida Rules of Civil Procedure and/or Florida law. To the extent that RF is required to respond to any Request, it will do so in a manner that complies with the Florida Rules of Civil Procedure and Florida law.

12.      RF objects to Definition "A" as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. RF will interpret the defined terms to mean Roche Freedman LLP.

13.    RF objects to Definition "B" as vague and ambiguous to the extent that it limits the definition of "tokens" to assets that are "used as currency." RF will interpret "tokens" to mean any digital asset.

## SPECIFIC OBJECTIONS AND RESPONSES

1.    Admit that Kyle Roche made the statements recorded in the videos found at https://cryptoleaks.info/case-no-3.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

2.    Admit that the video recorded statements found at https://cryptoleaks.info/case-no-3 made by Kyle Roche were true.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

3.    Admit that RF has represented Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending

action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

4.      Admit that RF owns approximately 1% of the shares in Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

5.      Admit that Ava Labs is an undisclosed principal of RF.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

6.      Admit that the MOU addresses how Ava Labs tokens will be distributed between the partners of RF.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of

Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

7.      Admit that Kyle Roche made a deal with Gun, whereby RF would provide legal services in exchange for a certain percentage of the token supply.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

8.      Admit that Kyle Roche was the second person listed on the Ava Labs capitalization table.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

9.      Admit that Kyle Roche obtained approximately one percent of Ava Labs' equity.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of

Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

10.     Admit that Kyle Roche obtained approximately one percent of Ava Labs' tokens.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

11.     Admit that Kyle has used litigation as a strategic instrument to support Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

12.     Admit that RF has used litigation as a strategic instrument to support Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not provide any information in response to this Request.

13.     Admit that Ava Labs made Kyle Roche an equity partner in appreciation for his use of litigation to as a strategic instrument for Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

14.     Admit that your lawsuits against blockchain companies or entities has enabled you to see inside their operations.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

15.     Admit that you sue blockchain companies or entities to be able to see inside their operations.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of

Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

      16.     Admit that you sue blockchain companies or entities to be able to learn their secrets.

      **RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

      17.     Admit that you sued Emre Aksoy at Gun's behest.

      **RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

      18.     Admit that you consider Dr. Craig Wright to be Gun's archnemesis.

      **RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not provide any information in response to this Request.

      19.    Admit that you sued Dr. Craig Wright to please Gun.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

      20.    Admit that you sued Dr. Craig Wright to devalue Bitcoin Satoshi Vision.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

      21.    Admit that you sued Dr. Craig Wright to "take him down."

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

22.     Admit that the breach of partnership claims against Dr. Craig Wright were a mere pretext for a lawsuit designed to vindicate Gun's personal vendetta.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

23.     Admit that you do not care about settling lawsuits.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

24.     Admit that you would rather win a $100 million judgment for you client and get good press, than settle for $500 million.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

25.     Admit that you have shared with Ava Labs non-public information that you learned about its competitors.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

26.     Admit that you sue blockchain companies or entities to be able to learn their secrets.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

Respectfully submitted,

Dated: October 27, 2022

*/s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman, Esq.
Florida Bar No. 99762
**FREEDMAN NORMAND
FRIEDLAND LLP**
200 S. Biscayne Blvd, Suite 5500
Miami, Florida 33131
Telephone: (305) 357-3861
vel@fnf.law

Stephen Lagos (admitted *pro hac vice*)
**FREEDMAN NORMAND**
**FRIEDLAND LLP**
99 Park Avenue, Suite 1910
New York, NY 10016
slagos@fnf.law

*Counsel to the Estate and Non-Party Roche*
*Freedman LLP*

# EXHIBIT 10

IN THE 15TH JUDICIAL CIRCUIT,
IN AND FOR PALM BEACH COUNTY,
FLORIDA

CASE NO. 50-2013-CP-005060-XXXX-NB
PROBATE DIVISION

IN RE: ESTATE OF DAVID KLEIMAN,

    deceased.

_____ /

## ROCHE FREEDMAN LLP'S RESPONSES AND OBJECTIONS TO RAMONA WATTS'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

    Pursuant to Florida Rules of Civil Procedure 1.280, 1.350, 1.351, and 1.410, Non-Party Roche Freedman LLP ("RF"), by and through its undersigned counsel, hereby responds and objects to Ramona Watts's First Request for the Production of Documents, dated September 27, 2022 (the "Requests" and each a "Request"), as follows:

## GENERAL OBJECTIONS

    1.    RF is not a party to this action. Accordingly, pursuant to the Florida Rules of Civil Procedure 1.351 and 1.410, Ms. Watts was required to serve RF with a subpoena. Because Ms. Watts failed to do so, RF has no obligation to respond to her discovery requests.

    2.    Ms. Watts's discovery requests seek information that is not even conceivably relevant. Her requests are frivolous and appear to have been made entirely for purposes of harassing RF and its clients. RF reserves the right to move for a protective and to seek sanctions against Ms. Watts and her counsel.

    3.    RF reserves the right not to produce documents to the extent that the Requests (including the "Definitions" and "Instructions" contained therein) (a) are overly broad, unduly burdensome, and/or call for information that is obtainable from some other source that is more

1

convenient, less burdensome, or less expensive; (b) are vague, ambiguous, duplicative, cumulative, or do not identify with reasonable particularity the information sought; (c) call for information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence; (d) seek to impose obligations on RF beyond or inconsistent with those required by Florida law and the Florida Rules of Civil Procedure; (e) purport to seek documents or information not in RF's actual possession, custody, or control; or (f) call for the production of publicly available documents or information, or documents or information to which Ms. Watts has equal or better access, and thus for which the burden on RF is equal to or greater than that of Ms. Watts in obtaining the requested documents and/or information.

      4.     To the extent RF responds to a Request, that response shall be by and on behalf of RF and will be limited to documents or information currently available to it. RF will not search for, collect, or produce documents in the possession of RF's advisors or attorneys or other third parties.

      5.     These responses reflect RF's present knowledge, information, and belief, and therefore remain subject to change or modification based on further discovery of facts or circumstances that may come to RF's attention.  RF reserves the right to rely on any facts, documents, evidence, or other contentions that may develop or come to its attention at a later time and to supplement or amend the responses at any time prior to the trial in this action.  RF further reserves the right to raise any additional objections deemed necessary or appropriate in light of any further review.

      6.     Any production in response to these Requests shall be subject to the entry of an appropriate confidentiality order.

7.      RF objects to the Requests to the extent that they seek information protected by the attorney-client privilege, the work-product doctrine, and/or any other applicable privilege, protection, or immunity.  RF will withhold and redact certain information that is subject to such privileges or protections.  To the extent that any inadvertent production of such documents or information is made in response to the Requests, such production shall not constitute a waiver of any applicable privilege or protection.  RF reserves the right to obtain the return of such information and prohibit its use in any manner, and hereby requests the return of any such inadvertently produced privileged information and reserves the right to object to the disclosure or use of such privileged information at any stage of these or any other proceedings.

8.      RF objects to any Request seeking "all" documents or "all" communications containing, referring, or relating to any of the specific Requests on the grounds that to search for and produce such documents would impose undue burden and RF cannot ensure that it has located each and every document or communication responsive to a particular Request.

9.      RF reserves the right to produce documents responsive to the Requests on a rolling basis at a time, place, and manner to be agreed on by the parties.

10.      RF objects to the Requests to the extent that they are redundant or duplicative of other specific Requests.  Where information or a document may be responsive to more than one Request, RF will provide that information or produce that document only once.

11.      RF's assertion that it will produce documents in response to a particular Request is not to be construed as an admission that any document exists within any requested category or categories but solely as an assertion that RF will produce (consistent with these responses and objections) any non-privileged, responsive documents or information within its actual

possession, custody, or control that can be located after a reasonable search conducted in good faith.

12.     RF objects to any factual assumptions, implications, and explicit or implicit characterizations of facts, events, circumstances, or issues in the Requests.  RF's responses herein are not intended to mean that RF agrees with any factual assumptions, implications, or any explicit or implicit characterization of facts, events, circumstances, or issues in the Requests, and are without prejudice to RF's right to dispute facts and legal conclusions assumed in the Requests.

13.     RF makes these Responses and Objections without in any way waiving or intending to waive (a) any objections as to the competency, relevance, materiality, privileged status, or admissibility as evidence, for any purpose, of any information provided in response to the Requests; (b) the right to object on any ground to use of the documents produced in response to the Requests at any hearing or trial; (c) the right to object on any ground at any time to a demand for further responses to the Requests; (d) the right to revise, amend, supplement, or clarify any of the responses and objections set forth herein; and (e) the right to move the Court for a protective order with respect to the Requests.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

14.     RF objects to the "Instructions" and "Definitions" insofar as they incorporate purported facts.  RF does not adopt or confirm the accuracy of any purported facts incorporated in any of the Instructions or Definitions.

15.     RF objects to Instructions 1, 2, and 6, because they purport to impose on RF obligations greater than those imposed by the Florida Rules of Civil Procedure and/or Florida

law. To the extent that RF is required to produce any responsive documents, it will do so in a manner that complies with the Florida Rules of Civil Procedure and Florida law.

16.     RF objects to Instruction 4 because it purports to impose obligations greater than those imposed by the Florida Rules of Civil Procedure and/or Florida law.  To the extent that RF is required to produce any responsive documents, it will produce a privilege log consistent with its obligations under Florida law and the Florida Rules of Civil Procedure.

17.     RF objects to Definition "A" as overbroad and unduly burdensome. RF will construe the term "document" in accordance with Florida Rule of Civil Procedure 1.350(a) to mean "electronically stored information, writings, drawings, graphs, charts, photographs, audio, visual, and audiovisual recordings, and other data compilations from which information can be obtained."

18.     RF objects to Definition "G" as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. RF will interpret the defined terms to mean Roche Freedman LLP.

<u>**SPECIFIC OBJECTIONS AND RESPONSES**</u>

1.     All documents related to RF's ownership interest in Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

2.     All documents related to RF's ownership interest in Ava Labs' tokens.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

3.      All documents related to the MOU.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

4.      All documents related to RF's engagement agreement with Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

5.      All documents related to Kyle Roche's ownership interest in Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending

action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

      6.      All documents related to RF's ownership interest in Avalanche.

      **RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

      7.      All documents related to Kyle Roche's ownership interest in Avalanche.

      **RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

      8.      All documents related to Gun's ownership interest in Avalanche.

      **RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not produce any documents in response to this Request.

9.      All documents related to Sekniqi's ownership interest in RF.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

10.      All documents related to "shared workspaces" between or among RF, Ava Labs, or Avalanche.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

11.      All documents related to any lease executed by RF for the "shared workspace" referred to in Request 10.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not produce any documents in response to this Request.

12.     All documents related to any lease executed by the Ava Labs for the "shared workspace" referred to in Request 10.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

13.     All documents related to "academic writings" in your possession authored by either you, Gun, or both.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

14.     All documents related to Ava Labs' capitalization tables on which Kyle Roche's name appears.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of

Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not produce any documents in response to this

Request.

15.     All documents related to Ava Labs capitalization tables on which any member of

RF appears.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request

on the grounds that the information sought is not "relevant to the subject matter of the pending

action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of

Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not produce any documents in response to this

Request.

16.     All documents related to RF's use of straw plaintiffs to bring actions on behalf of

Ava Labs in which Ava Labs did not appear.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request

on the grounds that the information sought is not "relevant to the subject matter of the pending

action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of

Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not produce any documents in response to this

Request.

17.     All documents related to RF's communications with the Securities and Exchange

Commission in which you attempted to direct regulator attention toward an Ava Labs'

competitor.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

18.     All documents related to RF's communications with the Commodities Futures Trading Commission in which you attempted to direct regulator attention toward an Ava Labs' competitor.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

19.     All documents related to Kyle Roche's residence in Florida for tax purposes.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

Respectfully submitted,

Dated: October 27, 2022

*/s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman, Esq.
Florida Bar No. 99762
**FREEDMAN NORMAND**
**FRIEDLAND LLP**
200 S. Biscayne Blvd, Suite 5500
Miami, Florida 33131
Telephone: (305) 357-3861
vel@fnf.law

Stephen Lagos (admitted *pro hac vice*)
**FREEDMAN NORMAND**
**FRIEDLAND LLP**
99 Park Avenue, Suite 1910
New York, NY 10016
slagos@fnf.law

*Counsel to the Estate and Non-Party Roche*
*Freedman LLP*

# EXHIBIT 11

IN THE CIRCUIT COURT FOR THE
15TH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

Ramona Watts,                                    CASE NO: 50-2022-CA-005501-XXXX-MB

       Plaintiff,

v.

W&K Info Defense Research LLC,

       Defendant.

_____ /

**ROCHE FREEDMAN LLP'S RESPONSES AND OBJECTIONS TO
RAMONA WATTS'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

Pursuant to Florida Rules of Civil Procedure 1.280, 1.350, 1.351, and 1.410, Non-Party Roche Freedman LLP ("RF"), by and through its undersigned counsel, hereby responds and objects to Ramona Watts's First Request for the Production of Documents, dated September 27, 2022 (the "Requests" and each a "Request"), as follows:

**GENERAL OBJECTIONS**

1.      RF is not a party to this action. Accordingly, pursuant to the Florida Rules of Civil Procedure 1.351 and 1.410, Ms. Watts was required to serve RF with a subpoena. Because Ms. Watts failed to do so, RF has no obligation to respond to her discovery requests.

2.      Ms. Watts's discovery requests seek information that is not even conceivably relevant. Her requests are frivolous and appear to have been made entirely for purposes of harassing RF and its clients. RF reserves the right to move for a protective and to seek sanctions against Ms. Watts and her counsel.

3.      RF reserves the right not to produce documents to the extent that the Requests (including the "Definitions" and "Instructions" contained therein) (a) are overly broad, unduly burdensome, and/or call for information that is obtainable from some other source that is more convenient, less burdensome, or less expensive; (b) are vague, ambiguous, duplicative, cumulative, or do not identify with reasonable particularity the information sought; (c) call for information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence; (d) seek to impose obligations on RF beyond or inconsistent with those required by Florida law and the Florida Rules of Civil Procedure; (e) purport to seek documents or information not in RF's actual possession, custody, or control; or (f) call for the production of publicly available documents or information, or documents or information to which Ms. Watts has equal or better access, and thus for which the burden on RF is equal to or greater than that of Ms. Watts in obtaining the requested documents and/or information.

4.      To the extent RF responds to a Request, that response shall be by and on behalf of RF and will be limited to documents or information currently available to it. RF will not search for, collect, or produce documents in the possession of RF's advisors or attorneys or other third parties.

5.      These responses reflect RF's present knowledge, information, and belief, and therefore remain subject to change or modification based on further discovery of facts or circumstances that may come to RF's attention.  RF reserves the right to rely on any facts, documents, evidence, or other contentions that may develop or come to its attention at a later time and to supplement or amend the responses at any time prior to the trial in this action.  RF further reserves the right to raise any additional objections deemed necessary or appropriate in light of any further review.

6.      Any production in response to these Requests shall be subject to the entry of an appropriate confidentiality order.

7.      RF objects to the Requests to the extent that they seek information protected by the attorney-client privilege, the work-product doctrine, and/or any other applicable privilege, protection, or immunity.  RF will withhold and redact certain information that is subject to such privileges or protections.  To the extent that any inadvertent production of such documents or information is made in response to the Requests, such production shall not constitute a waiver of any applicable privilege or protection.  RF reserves the right to obtain the return of such information and prohibit its use in any manner, and hereby requests the return of any such inadvertently produced privileged information and reserves the right to object to the disclosure or use of such privileged information at any stage of these or any other proceedings.

8.      RF objects to any Request seeking "all" documents or "all" communications containing, referring, or relating to any of the specific Requests on the grounds that to search for and produce such documents would impose undue burden and RF cannot ensure that it has located each and every document or communication responsive to a particular Request.

9.      RF reserves the right to produce documents responsive to the Requests on a rolling basis at a time, place, and manner to be agreed on by the parties.

10.      RF objects to the Requests to the extent that they are redundant or duplicative of other specific Requests.  Where information or a document may be responsive to more than one Request, RF will provide that information or produce that document only once.

11.      RF's assertion that it will produce documents in response to a particular Request is not to be construed as an admission that any document exists within any requested category or categories but solely as an assertion that RF will produce (consistent with these responses and

3

objections) any non-privileged, responsive documents or information within its actual possession, custody, or control that can be located after a reasonable search conducted in good faith.

12.     RF objects to any factual assumptions, implications, and explicit or implicit characterizations of facts, events, circumstances, or issues in the Requests.  RF's responses herein are not intended to mean that RF agrees with any factual assumptions, implications, or any explicit or implicit characterization of facts, events, circumstances, or issues in the Requests, and are without prejudice to RF's right to dispute facts and legal conclusions assumed in the Requests.

13.     RF makes these Responses and Objections without in any way waiving or intending to waive (a) any objections as to the competency, relevance, materiality, privileged status, or admissibility as evidence, for any purpose, of any information provided in response to the Requests; (b) the right to object on any ground to use of the documents produced in response to the Requests at any hearing or trial; (c) the right to object on any ground at any time to a demand for further responses to the Requests; (d) the right to revise, amend, supplement, or clarify any of the responses and objections set forth herein; and (e) the right to move the Court for a protective order with respect to the Requests.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

14.     RF objects to the "Instructions" and "Definitions" insofar as they incorporate purported facts.  RF does not adopt or confirm the accuracy of any purported facts incorporated in any of the Instructions or Definitions.

15.     RF objects to Instructions 1, 2, and 6, because they purport to impose on RF obligations greater than those imposed by the Florida Rules of Civil Procedure and/or Florida

law. To the extent that RF is required to produce any responsive documents, it will do so in a manner that complies with the Florida Rules of Civil Procedure and Florida law.

16.     RF objects to Instruction 4 because it purports to impose obligations greater than those imposed by the Florida Rules of Civil Procedure and/or Florida law.  To the extent that RF is required to produce any responsive documents, it will produce a privilege log consistent with its obligations under Florida law and the Florida Rules of Civil Procedure.

17.     RF objects to Definition "A" as overbroad and unduly burdensome. RF will construe the term "document" in accordance with Florida Rule of Civil Procedure 1.350(a) to mean "electronically stored information, writings, drawings, graphs, charts, photographs, audio, visual, and audiovisual recordings, and other data compilations from which information can be obtained."

18.     RF objects to Definition "G" as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. RF will interpret the defined terms to mean Roche Freedman LLP.

## SPECIFIC OBJECTIONS AND RESPONSES

1.     All documents related to RF's ownership interest in Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

2.     All documents related to RF's ownership interest in Ava Labs' tokens.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

     3.     All documents related to the MOU.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

     4.     All documents related to RF's engagement agreement with Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

     5.     All documents related to Kyle Roche's ownership interest in Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending

action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

      6.     All documents related to RF's ownership interest in Avalanche.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

      7.     All documents related to Kyle Roche's ownership interest in Avalanche.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

      8.     All documents related to Gun's ownership interest in Avalanche.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not produce any documents in response to this Request.

9.     All documents related to Sekniqi's ownership interest in RF.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

10.     All documents related to "shared workspaces" between or among RF, Ava Labs, or Avalanche.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

11.     All documents related to any lease executed by RF for the "shared workspace" referred to in Request 10.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not produce any documents in response to this Request.

      12.    All documents related to any lease executed by the Ava Labs for the "shared workspace" referred to in Request 10.

      **RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

      13.    All documents related to "academic writings" in your possession authored by either you, Gun, or both.

      **RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

      14.    All documents related to Ava Labs' capitalization tables on which Kyle Roche's name appears.

      **RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of

Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

15.     All documents related to Ava Labs capitalization tables on which any member of RF appears.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

16.     All documents related to RF's use of straw plaintiffs to bring actions on behalf of Ava Labs in which Ava Labs did not appear.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

17.     All documents related to RF's communications with the Securities and Exchange Commission in which you attempted to direct regulator attention toward an Ava Labs' competitor.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

18.     All documents related to RF's communications with the Commodities Futures Trading Commission in which you attempted to direct regulator attention toward an Ava Labs' competitor.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

19.     All documents related to Kyle Roche's residence in Florida for tax purposes.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

Respectfully submitted,

Dated: October 27, 2022

*/s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman, Esq.
Florida Bar No. 99762
**FREEDMAN NORMAND**
**FRIEDLAND LLP**
200 S. Biscayne Blvd, Suite 5500
Miami, Florida 33131
Telephone: (305) 357-3861
vel@fnf.law

Stephen Lagos (*pro hac vice* pending)
**FREEDMAN NORMAND**
**FRIEDLAND LLP**
99 Park Avenue, Suite 1910
New York, NY 10016
slagos@fnf.law

*Counsel to Defendant and Non-Party Roche*
*Freedman LLP*

# EXHIBIT 12

IN THE CIRCUIT COURT FOR THE
15TH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

Ramona Watts,                                    CASE NO: 50-2022-CA-005501-XXXX-MB

      Plaintiff,

v.

W&K Info Defense Research LLC,

      Defendant.

_____ /

### ROCHE FREEDMAN LLP'S RESPONSES AND OBJECTIONS TO RAMONA WATTS'S FIRST REQUEST FOR ADMISSIONS

Pursuant to Florida Rules of Civil Procedure 1.280, 1.370, and 1.410, Non-Party Roche Freedman LLP (n/k/a Freedman Normand Friedland LLP) ("RF"), by and through its undersigned counsel, hereby responds and objects to Ramona Watts's First Request for Admissions dated September 27, 2022 (the "Requests" and each a "Request"), as follows:

### GENERAL OBJECTIONS

1.      RF is not a party to this action and therefore has no obligation under the Florida Rules of Civil Procedure or under Florida law to respond to requests for admission served pursuant to Florida Rule of Civil Procedure 1.370.

2.      Ms. Watts's discovery requests seek information that is not even conceivably relevant. Her requests are frivolous and appear to have been made entirely for purposes of harassing RF and its clients. RF reserves the right to move for a protective and to seek sanctions against Ms. Watts and her counsel.

1

3.      To the extent RF responds to a Request, that response shall be by and on behalf of RF and will be limited to information currently available to it.

4.      These responses reflect RF's present knowledge, information, and belief, and therefore remain subject to change or modification based on further discovery of facts or circumstances that may come to RF's attention.  RF reserves the right to rely on any facts, documents, evidence, or other contentions that may develop or come to its attention at a later time and to supplement or amend the responses at any time prior to the trial in this action.  RF further reserves the right to raise any additional objections deemed necessary or appropriate in light of any further review.

5.      Any response to these Requests shall be subject to the entry of an appropriate confidentiality order.

6.      RF objects to the Requests to the extent that they seek information protected by the attorney-client privilege, the work-product doctrine, and/or any other applicable privilege, protection, or immunity.  RF will withhold and redact certain information that is subject to such privileges or protections.  To the extent that any inadvertent production of such information is made in response to the Requests, such production shall not constitute a waiver of any applicable privilege or protection.  RF reserves the right to obtain the return of such information and prohibit its use in any manner, and hereby requests the return of any such inadvertently produced privileged information and reserves the right to object to the disclosure or use of such privileged information at any stage of these or any other proceedings.

7.      RF objects to the Requests to the extent that they are redundant or duplicative of other specific Requests.  Where information may be responsive to more than one Request, RF will provide that information only once.

2

8.      RF objects to any factual assumptions, implications, and explicit or implicit characterizations of facts, events, circumstances, or issues in the Requests.  RF's responses herein are not intended to mean that RF agrees with any factual assumptions, implications, or any explicit or implicit characterization of facts, events, circumstances, or issues in the Requests, and are without prejudice to RF's right to dispute facts and legal conclusions assumed in the Requests.

9.      RF makes these Responses and Objections without in any way waiving or intending to waive (a) any objections as to the competency, relevance, materiality, privileged status, or admissibility as evidence, for any purpose, of any information provided in response to the Requests; (b) the right to object on any ground to use of the information produced in response to the Requests at any hearing or trial; (c) the right to object on any ground at any time to a demand for further responses to the Requests; (d) the right to revise, amend, supplement, or clarify any of the responses and objections set forth herein; and (e) the right to move the Court for a protective order with respect to the Requests.

**<u>OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS</u>**

10.     RF objects to the "Instructions" and "Definitions" insofar as they incorporate purported facts.  RF does not adopt or confirm the accuracy of any purported facts incorporated in any of the Instructions or Definitions.

11.     RF objects to Instruction "B" because it purports to impose on RF obligations greater than those imposed by the Florida Rules of Civil Procedure and/or Florida law. To the extent that RF is required to respond to any Request, it will do so in a manner that complies with the Florida Rules of Civil Procedure and Florida law.

12.     RF objects to Definition "A" as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. RF will interpret the defined terms to mean Roche Freedman LLP.

13.     RF objects to Definition "B" as vague and ambiguous to the extent that it limits the definition of "tokens" to assets that are "used as currency." RF will interpret "tokens" to mean any digital asset.

### SPECIFIC OBJECTIONS AND RESPONSES

1.     Admit that Kyle Roche made the statements recorded in the videos found at https://cryptoleaks.info/case-no-3.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

2.     Admit that the video recorded statements found at https://cryptoleaks.info/case-no-3 made by Kyle Roche were true.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

3.      Admit that RF has represented Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

4.      Admit that RF owns approximately 1% of the shares in Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

5.      Admit that Ava Labs is an undisclosed principal of RF.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

6.      Admit that the MOU addresses how Ava Labs tokens will be distributed between the partners of RF.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

7.      Admit that Kyle Roche made a deal with Gun, whereby RF would provide legal services in exchange for a certain percentage of the token supply.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

8.      Admit that Kyle Roche was the second person listed on the Ava Labs capitalization table.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

9.      Admit that Kyle Roche obtained approximately one percent of Ava Labs' equity.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

      10.     Admit that Kyle Roche obtained approximately one percent of Ava Labs' tokens.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

      11.     Admit that Kyle has used litigation as a strategic instrument to support Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

      12.     Admit that RF has used litigation as a strategic instrument to support Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending

action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

13.     Admit that Ava Labs made Kyle Roche an equity partner in appreciation for his use of litigation to as a strategic instrument for Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

14.     Admit that your lawsuits against blockchain companies or entities has enabled you to see inside their operations.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

15.     Admit that you sue blockchain companies or entities to be able to see inside their operations.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

16.    Admit that you sue blockchain companies or entities to be able to learn their secrets.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

17.    Admit that you sued Emre Aksoy at Gun's behest.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

18.    Admit that you consider Dr. Craig Wright to be Gun's archnemesis.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

19.     Admit that you sued Dr. Craig Wright to please Gun.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

20.     Admit that you sued Dr. Craig Wright to devalue Bitcoin Satoshi Vision.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

21.     Admit that you sued Dr. Craig Wright to "take him down."

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending

action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

22.     Admit that the breach of partnership claims against Dr. Craig Wright were a mere pretext for a lawsuit designed to vindicate Gun's personal vendetta.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

23.     Admit that you do not care about settling lawsuits.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

24.     Admit that you would rather win a $100 million judgment for you client and get good press, than settle for $500 million.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending

action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

25.     Admit that you have shared with Ava Labs non-public information that you learned about its competitors.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

26.     Admit that you sue blockchain companies or entities to be able to learn their secrets.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

Respectfully submitted,

Dated: October 27, 2022                    */s/ Velvel (Devin) Freedman*
                                           Velvel (Devin) Freedman, Esq.

Florida Bar No. 99762
**FREEDMAN NORMAND**
**FRIEDLAND LLP**
200 S. Biscayne Blvd, Suite 5500
Miami, Florida 33131
Telephone: (305) 357-3861
vel@fnf.law

Stephen Lagos (*pro hac vice* pending)
**FREEDMAN NORMAND**
**FRIEDLAND LLP**
99 Park Avenue, Suite 1910
New York, NY 10016
slagos@fnf.law

*Counsel to Defendant and Non-Party Roche*
*Freedman LLP*

# EXHIBIT 13

IN THE CIRCUIT COURT FOR THE
15TH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

RAMONA ANG, as Trustee of the Tulip
Trust,

CASE NO: 50-2021-CA-004758-XXXX-MB

     Plaintiff,

v.

IRA KLEIMAN, as Personal Representative
of the Estate of David Kleiman,

     Defendant,

and

W&K INFO DEFENSE RESEARCH, LLC,
and LYNN WRIGHT,

     Nominal Defendants.

/

---

### ROCHE FREEDMAN LLP'S RESPONSES AND OBJECTIONS TO
### TULIP TRUST'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Florida Rules of Civil Procedure 1.280, 1.350, 1.351, and 1.410, Non-Party

Roche Freedman LLP ("RF"), by and through its undersigned counsel, hereby responds and

objects to Tulip Trust's First Request for the Production of Documents, dated September 14, 2022

(the "Requests" and each a "Request"), as follows:

### GENERAL OBJECTIONS

1.      RF is not a party to this action. Accordingly, pursuant to the Florida Rules of Civil

Procedure 1.351 and 1.410, Ms. Ang was required to serve RF with a subpoena. Because Ms. Ang

failed to do so, RF has no obligation to respond to her discovery requests.

2.      Ms. Ang's discovery requests seek information that is not even conceivably relevant. Her requests are frivolous and appear to have been made entirely for purposes of harassing RF and its clients. RF reserves the right to move for a protective and to seek sanctions against Ms. Ang and her counsel.

3.      RF reserves the right not to produce documents to the extent that the Requests (including the "Definitions" and "Instructions" contained therein) (a) are overly broad, unduly burdensome, and/or call for information that is obtainable from some other source that is more convenient, less burdensome, or less expensive; (b) are vague, ambiguous, duplicative, cumulative, or do not identify with reasonable particularity the information sought; (c) call for information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence; (d) seek to impose obligations on RF beyond or inconsistent with those required by Florida law and the Florida Rules of Civil Procedure; (e) purport to seek documents or information not in RF's actual possession, custody, or control; or (f) call for the production of publicly available documents or information, or documents or information to which Ms. Ang has equal or better access, and thus for which the burden on RF is equal to or greater than that of Ms. Ang in obtaining the requested documents and/or information.

4.      To the extent RF responds to a Request, that response shall be by and on behalf of RF and will be limited to documents or information currently available to it. RFwill not search for, collect, or produce documents in the possession of RF's advisors or attorneys or other third parties.

5.      These responses reflect RF's present knowledge, information, and belief, and therefore remain subject to change or modification based on further discovery of facts or circumstances that may come to RF's attention.  RF reserves the right to rely on any facts,

documents, evidence, or other contentions that may develop or come to its attention at a later time and to supplement or amend the responses at any time prior to the trial in this action. RF further reserves the right to raise any additional objections deemed necessary or appropriate in light of any further review.

6.      Any production in response to these Requests shall be subject to the entry of an appropriate confidentiality order.

7.      RF objects to the Requests to the extent that they seek information protected by the attorney-client privilege, the work-product doctrine, and/or any other applicable privilege, protection, or immunity. RF will withhold and redact certain information that is subject to such privileges or protections. To the extent that any inadvertent production of such documents or information is made in response to the Requests, such production shall not constitute a waiver of any applicable privilege or protection. RF reserves the right to obtain the return of such information and prohibit its use in any manner, and hereby requests the return of any such inadvertently produced privileged information and reserves the right to object to the disclosure or use of such privileged information at any stage of these or any other proceedings.

8.      RF objects to any Request seeking "all" documents or "all" communications containing, referring, or relating to any of the specific Requests on the grounds that to search for and produce such documents would impose undue burden and RF cannot ensure that it has located each and every document or communication responsive to a particular Request.

9.      RF reserves the right to produce documents responsive to the Requests on a rolling basis at a time, place, and manner to be agreed on by the parties.

3

10.     RF objects to the Requests to the extent that they are redundant or duplicative of other specific Requests.  Where information or a document may be responsive to more than one Request, RF will provide that information or produce that document only once.

11.     RF's assertion that it will produce documents in response to a particular Request is not to be construed as an admission that any document exists within any requested category or categories but solely as an assertion that RF will produce (consistent with these responses and objections) any non-privileged, responsive documents or information within its actual possession, custody, or control that can be located after a reasonable search conducted in good faith.

12.     RF objects to any factual assumptions, implications, and explicit or implicit characterizations of facts, events, circumstances, or issues in the Requests.  RF's responses herein are not intended to mean that RF agrees with any factual assumptions, implications, or any explicit or implicit characterization of facts, events, circumstances, or issues in the Requests, and are without prejudice to RF's right to dispute facts and legal conclusions assumed in the Requests.

13.     RF makes these Responses and Objections without in any way waiving or intending to waive (a) any objections as to the competency, relevance, materiality, privileged status, or admissibility as evidence, for any purpose, of any information provided in response to the Requests; (b) the right to object on any ground to use of the documents produced in response to the Requests at any hearing or trial; (c) the right to object on any ground at any time to a demand for further responses to the Requests; (d) the right to revise, amend, supplement, or clarify any of the responses and objections set forth herein; and (e) the right to move the Court for a protective order with respect to the Requests.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

14.     RF objects to the "Instructions" and "Definitions" insofar as they incorporate purported facts.  RF does not adopt or confirm the accuracy of any purported facts incorporated in any of the Instructions or Definitions.

15.     RF objects to Instructions 1, 2, and 6, because they purport to impose on RF obligations greater than those imposed by the Florida Rules of Civil Procedure and/or Florida law. To the extent that RF is required to produce any responsive documents, it will do so in a manner that complies with the Florida Rules of Civil Procedure and Florida law.

16.     RF objects to Instruction 4 because it purports to impose obligations greater than those imposed by the Florida Rules of Civil Procedure and/or Florida law.  To the extent that RF is required to produce any responsive documents, it will produce a privilege log consistent with its obligations under Florida law and the Florida Rules of Civil Procedure.

17.     RF objects to Definition "A" as overbroad and unduly burdensome. RF will construe the term "document" in accordance with Florida Rule of Civil Procedure 1.350(a) to mean "electronically stored information, writings, drawings, graphs, charts, photographs, audio, visual, and audiovisual recordings, and other data compilations from which information can be obtained."

18.     RF objects to Definition "G" as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. RF will interpret the defined terms to mean Roche Freedman LLP.

## SPECIFIC OBJECTIONS AND RESPONSES

1.     All documents related to RF's ownership interest in Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

      2.      All documents related to RF's ownership interest in Ava Labs' tokens.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

      3.      All documents related to the MOU.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

      4.      All documents related to RF's engagement agreement with Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending

action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

     5.     All documents related to Kyle Roche's ownership interest in Ava Labs.

     **RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

     6.     All documents related to RF's ownership interest in Avalanche.

     **RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

     7.     All documents related to Kyle Roche's ownership interest in Avalanche.

     **RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not produce any documents in response to this Request.

       8.     All documents related to Gun's ownership interest in Avalanche.

     **RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

       9.     All documents related to Sekniqi's ownership interest in RF.

     **RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

      10.    All documents related to "shared workspaces" between or among RF, Ava Labs, or Avalanche.

     **RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not produce any documents in response to this Request.

11.     All documents related to any lease executed by RF for the "shared workspace" referred to in Request 10.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

12.     All documents related to any lease executed by the Ava Labs for the "shared workspace" referred to in Request 10.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

13.     All documents related to "academic writings" in your possession authored by either you, Gun, or both.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of

Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not produce any documents in response to this

Request.

14.     All documents related to Ava Labs' capitalization tables on which Kyle Roche's

name appears.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request

on the grounds that the information sought is not "relevant to the subject matter of the pending

action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of

Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not produce any documents in response to this

Request.

15.     All documents related to Ava Labs capitalization tables on which any member of

RF appears.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request

on the grounds that the information sought is not "relevant to the subject matter of the pending

action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of

Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not produce any documents in response to this

Request.

16.     All documents related to RF's use of straw plaintiffs to bring actions on behalf of

Ava Labs in which Ava Labs did not appear.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request

on the grounds that the information sought is not "relevant to the subject matter of the pending

action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

17.     All documents related to RF's communications with the Securities and Exchange Commission in which you attempted to direct regulator attention toward an Ava Labs' competitor.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

18.     All documents related to RF's communications with the Commodities Futures Trading Commission in which you attempted to direct regulator attention toward an Ava Labs' competitor.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

19.     All documents related to Kyle Roche's residence in Florida for tax purposes.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

Dated: October 14, 2022

Respectfully submitted,

*/s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman, Esq.
Florida Bar No. 99762
**ROCHE FREEDMAN LLP**
1 SE 3rd Ave., Suite 1240
Miami, Florida 33131
Telephone: (786) 924-2900
vel@rochefreedman.com

Stephen Lagos (*pro hac vice* pending)
**ROCHE FREEDMAN LLP**
99 Park Avenue, Suite 1910
New York, NY 10016
slagos@rochefreedman.com

*Counsel to Defendant and Non-Party Roche*
*Freedman LLP*

# EXHIBIT 14

IN THE CIRCUIT COURT FOR THE
15TH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

RAMONA ANG, as Trustee of the Tulip
Trust,

CASE NO: 50-2021-CA-004758-XXXX-MB

     Plaintiff,

v.

IRA KLEIMAN, as Personal Representative
of the Estate of David Kleiman,

     Defendant,

and

W&K INFO DEFENSE RESEARCH, LLC,
and LYNN WRIGHT,

     Nominal Defendants.

/

---

## ROCHE FREEDMAN LLP'S RESPONSES AND OBJECTIONS TO TULIP TRUST'S FIRST REQUEST FOR ADMISSIONS

     Pursuant to Florida Rules of Civil Procedure 1.280, 1.370, and 1.410, Non-Party Roche

Freedman LLP ("RF"), by and through its undersigned counsel, hereby responds and objects to

Tulip Trust's First Request for Admissions dated September 14, 2022 (the "Requests" and each a

"Request"), as follows:

### GENERAL OBJECTIONS

     1.     RF is not a party to this action and therefore has no obligation under the Florida

Rules of Civil Procedure or under Florida law to respond to requests for admission served pursuant

to Florida Rule of Civil Procedure 1.370.

1

2.      Ms. Ang's discovery requests seek information that is not even conceivably relevant. Her requests are frivolous and appear to have been made entirely for purposes of harassing RF and its clients. RF reserves the right to move for a protective and to seek sanctions against Ms. Ang and her counsel.

3.      To the extent RF responds to a Request, that response shall be by and on behalf of RF and will be limited to information currently available to it.

4.      These responses reflect RF's present knowledge, information, and belief, and therefore remain subject to change or modification based on further discovery of facts or circumstances that may come to RF's attention.  RF reserves the right to rely on any facts, documents, evidence, or other contentions that may develop or come to its attention at a later time and to supplement or amend the responses at any time prior to the trial in this action.  RF further reserves the right to raise any additional objections deemed necessary or appropriate in light of any further review.

5.      Any response to these Requests shall be subject to the entry of an appropriate confidentiality order.

6.      RF objects to the Requests to the extent that they seek information protected by the attorney-client privilege, the work-product doctrine, and/or any other applicable privilege, protection, or immunity.  RF will withhold and redact certain information that is subject to such privileges or protections.  To the extent that any inadvertent production of such information is made in response to the Requests, such production shall not constitute a waiver of any applicable privilege or protection.  RF reserves the right to obtain the return of such information and prohibit its use in any manner, and hereby requests the return of any such inadvertently produced

privileged information and reserves the right to object to the disclosure or use of such privileged information at any stage of these or any other proceedings.

7.      RF objects to the Requests to the extent that they are redundant or duplicative of other specific Requests.  Where information may be responsive to more than one Request, RF will provide that information only once.

8.      RF objects to any factual assumptions, implications, and explicit or implicit characterizations of facts, events, circumstances, or issues in the Requests.  RF's responses herein are not intended to mean that RF agrees with any factual assumptions, implications, or any explicit or implicit characterization of facts, events, circumstances, or issues in the Requests, and are without prejudice to RF's right to dispute facts and legal conclusions assumed in the Requests.

9.      RF makes these Responses and Objections without in any way waiving or intending to waive (a) any objections as to the competency, relevance, materiality, privileged status, or admissibility as evidence, for any purpose, of any information provided in response to the Requests; (b) the right to object on any ground to use of the information produced in response to the Requests at any hearing or trial; (c) the right to object on any ground at any time to a demand for further responses to the Requests; (d) the right to revise, amend, supplement, or clarify any of the responses and objections set forth herein; and (e) the right to move the Court for a protective order with respect to the Requests.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

10.     RF objects to the "Instructions" and "Definitions" insofar as they incorporate purported facts.  RF does not adopt or confirm the accuracy of any purported facts incorporated in any of the Instructions or Definitions.

11.     RF objects to Instruction "B" because it purports to impose on RF obligations greater than those imposed by the Florida Rules of Civil Procedure and/or Florida law. To the extent that RF is required to respond to any Request, it will do so in a manner that complies with the Florida Rules of Civil Procedure and Florida law.

12.     RF objects to Definition "A" as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. RF will interpret the defined terms to mean Roche Freedman LLP.

13.     RF objects to Definition "B" as vague and ambiguous to the extent that it limits the definition of "tokens" to assets that are "used as currency." RF will interpret "tokens" to mean any digital asset.

## SPECIFIC OBJECTIONS AND RESPONSES

1.     Admit that Kyle Roche made the statements recorded in the videos found at https://cryptoleaks.info/case-no-3.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

2.     Admit that the video recorded statements found at https://cryptoleaks.info/case-no-3 made by Kyle Roche were true.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending

action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

     3.     Admit that RF has represented Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

     4.     Admit that RF owns approximately 1% of the shares in Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

     5.     Admit that Ava Labs is an undisclosed principal of RF.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not provide any information in response to this Request.

6.      Admit that the MOU addresses how Ava Labs tokens will be distributed between the partners of RF.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

7.      Admit that Kyle Roche made a deal with Gun, whereby RF would provide legal services in exchange for a certain percentage of the token supply.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

8.      Admit that Kyle Roche was the second person listed on the Ava Labs capitalization table.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of

Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

9.      Admit that Kyle Roche obtained approximately one percent of Ava Labs' equity.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

10.      Admit that Kyle Roche obtained approximately one percent of Ava Labs' tokens.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

11.      Admit that Kyle has used litigation as a strategic instrument to support Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not provide any information in response to this Request.

> 12.    Admit that RF has used litigation as a strategic instrument to support Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

> 13.    Admit that Ava Labs made Kyle Roche an equity partner in appreciation for his use of litigation to as a strategic instrument for Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

> 14.    Admit that your lawsuits against blockchain companies or entities has enabled you to see inside their operations.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not provide any information in response to this Request.

15.     Admit that you sue blockchain companies or entities to be able to see inside their operations.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

16.     Admit that you sue blockchain companies or entities to be able to learn their secrets.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

17.     Admit that you sued Emre Aksoy at Gun's behest.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not provide any information in response to this Request.

18.     Admit that you consider Dr. Craig Wright to be Gun's archnemesis.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

19.     Admit that you sued Dr. Craig Wright to please Gun.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

20.     Admit that you sued Dr. Craig Wright to devalue Bitcoin Satoshi Vision.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

21.     Admit that you sued Dr. Craig Wright to "take him down."

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

22.     Admit that the breach of partnership claims against Dr. Craig Wright were a mere pretext for a lawsuit designed to vindicate Gun's personal vendetta.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

23.     Admit that you do not care about settling lawsuits.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

24.     Admit that you would rather win a $100 million judgment for you client and get good press, than settle for $500 million.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

25.     Admit that you have shared with Ava Labs non-public information that you learned about its competitors.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

26.     Admit that you sue blockchain companies or entities to be able to learn their secrets.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not provide any information in response to this Request.

Dated: October 14, 2022                    Respectfully submitted,

_/s/ Velvel (Devin) Freedman_
Velvel (Devin) Freedman, Esq.
Florida Bar No. 99762
**ROCHE FREEDMAN LLP**
1 SE 3rd Ave., Suite 1240
Miami, Florida 33131
Telephone: (786) 924-2900
vel@rochefreedman.com

Stephen Lagos (_pro hac vice_ pending)
**ROCHE FREEDMAN LLP**
99 Park Avenue, Suite 1910
New York, NY 10016
slagos@rochefreedman.com

_Counsel to Defendant and Non-Party Roche Freedman LLP_

# EXHIBIT 15

COPY

IN THE 15TH JUDICIAL CIRCUIT,
IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO. 50-2013-CP-005060-XXXX-NB
PROBATE DIVISION

IN RE: ESTATE OF DAVID ALAN KLEIMAN,

deceased.

/

www.Miamiprocessserver.com
161 Bentley Drive
Miami Springs FL 33166
PH: 305-871-6477

REC'D: _____
SERVED
DATE: 12/7/2022 TIME: 5:7 pm
PS: _____
Certified in the Circuit Court of
___ Judicial Circuit Cert #
Y.Q.        3A

## SUBPOENA FOR VIDEOTAPED DEPOSITION

THE STATE OF FLORIDA:

**TO:**   Devin "Velvel" Freedman
1 SE 3rd Ave.. Suite 1240
Miami, FL 33131

*Or any place he may be found.*

**YOU ARE HEREBY COMMANDED** to appear before a person authorized by law to take depositions on **January 9, 2023, at 10:30 a.m.** at Rivero Mestre, LLP, 2525 Ponce de Leon Blvd., Suite 1000, Coral Gables, FL, 33134 for the taking of your videotaped deposition in this action.

If you fail to:

(1) appear as specified; or

(2) object to this subpoena,

you may be in contempt of court. You are subpoenaed to appear by the following attorney and unless excused from this subpoena by this attorney or the Court, you shall respond to this Subpoena as directed.

*If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Andres Rivero, Rivero Mestre LLP, 2525 Ponce de Leon Blvd., Suite 1000, (305) 445-*



# EXHIBIT 16

COPY

IN THE CIRCUIT COURT FOR THE
15TH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

RAMONA WATTS,                                    CASE NO: 50-2022-CA-005501-XXXX-MB

    Plaintiff,

    v.

W&K INFO DEFENSE RESEARCH LLC,

    Defendant.

                            /

## SUBPOENA FOR VIDEOTAPED DEPOSITION

THE STATE OF FLORIDA:

**TO:**  Devin "Velvel" Freedman
1 SE 3rd Ave.. Suite 1240
Miami, FL 33131

    *Or any place he may be found.*

    **YOU ARE HEREBY COMMANDED** to appear before a person authorized by law to take depositions on **January 9, 2023, at 10:30 a.m.** at Rivero Mestre, LLP, 2525 Ponce de Leon Blvd., Suite 1000, Coral Gables, FL, 33134 for the taking of your videotaped deposition in this action.

    If you fail to:

    (1) appear as specified; or

    (2) object to this subpoena,

you may be in contempt of court. You are subpoenaed to appear by the following attorney and unless excused from this subpoena by this attorney or the Court, you shall respond to this Subpoena as directed.



# EXHIBIT 17

COPY

IN THE CIRCUIT COURT OF THE
15TH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA

RAMONA ANG, as Trustee of the
TULIP TRUST,

CASE NO.: 50-2021-CA-004758-XXXX-MB

Plaintiff,

v.

IRA KLEIMAN, as Personal Representative
of the Estate of David Kleiman

Defendant,

and

W&K INFO DEFENSE RESEARCH, LLC,
and LYNN WRIGHT,

Nominal Defendants.

www.Miamiprocessserver.com
161 Bentley Drive
Miami Springs FL 33166
PH: 305-871-6477

REC'D:
SERVED:
DATE: 10/7/202~   TIME: 1.1 70~
PS:
            (Print /Sign Name)
Certified in the Circuit Court of
    Judicial Circuit Cert # 312
        Y.Q.

_____/

## SUBPOENA FOR VIDEOTAPED DEPOSITION

THE STATE OF FLORIDA:

**TO:**   Devin "Velvel" Freedman
         1 SE 3rd Ave.. Suite 1240
         Miami, FL 33131

*Or any place he may be found.*

**YOU ARE HEREBY COMMANDED** to appear before a person authorized by law

to take depositions on **January 9, 2023, at 10:30 a.m.** at Rivero Mestre, LLP, 2525 Ponce de

Leon Blvd., Suite 1000, Coral Gables, FL, 33134 for the taking of your videotaped deposition

in this action.

If you fail to:

(1) appear as specified; or

(2) object to this subpoena,


9 4 7 4 7 1

# EXHIBIT 18

IN THE CIRCUIT COURT FOR THE 15TH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

RAMONA ANG, as Trustee of the
TULIP TRUST,

CASE NO: 50-2021-CA-004758-XXXX- MB

     Plaintiff,

        v.

IRA KLEIMAN, as Personal Representative
of the Estate of David Kleiman

     Defendant,

and

W&K INFO DEFENSE RESEARCH, LLC,
and LYNN WRIGHT,

     Nominal Defendants.

_____/

## MOTION TO COMPEL

With its reputation and integrity thrown into gravest doubt by its namesake partner's

scandalous public disclosures, Roche Freedman, LLP (the "Firm") now flatly refuses to

participate in discovery about those admissions of wild misconduct, admissions which form the

basis of Tulip Trust's Motion to Disqualify the Firm. But discovery is required for resolution of

that motion, and so the Trust moves to compel it.

After Kyle Roche was recorded making scandalous disclosures about the Firm's

unethical practices, the Trust – like parties in litigation with Roche Freedman across the country

– moved this Court disqualify the Firm. (A copy of the Motion to Disqualify Roche Freedman,

LLP, filed September 9, 202 is attached as Exhibit "A".)

1

Roche's disclosures about the Firm included Roche's on camera admissions that, *inter alia*:

- The Firm has a strategy of suing rivals of Ava Labs and its CEO, Emin Gün Sirer ("Gün"), by bringing harassing lawsuits, and fraudulent, purported class actions in the names of investors Roche referred to as "idiots";

- The Firm's business plan is never to settle a case, irrespective of its purported clients' interests, and instead to take all cases to trial, where liability and damages issues are decided by juries Roche also referred to as "idiots";

- The Firm leverages the litigation process to learn (and misuse) for Ava's benefit the confidential information and trade secrets of those it sues; and

- The Firm does all this for the express purpose of advancing the Firm's interests, making money for its partners, enforcing Gün's personal vendettas (like the one against Dr. Craig S. Wright) and "for sport."

The lawsuit before this Court is the direct progeny of another. In a federal action brought in 2018 (*Kleiman v. Wright*, Case No. 9:18-cv-80176-BB (S.D. Fla.)), the Firm first alleged a secret, oral partnership between Dr. Wright and Ira Kleiman's deceased brother, David Kleiman, supposedly to mine billions of dollars' worth of bitcoin. When it appeared the David Kleiman estate could not legally sustain those claims, the Firm had Ira Kleiman reanimate W&K Info Defense Research, LLP, falsely claiming to have ownership control,[1] and made W&K a co-plaintiff. The federal jury utterly rejected David Kleiman's estate claims of partnership but did find that W&K shared intellectual property interests with Wright. The Trust brought this action to vindicate its ownership in the company.

Through the federal trial, although the Firm purported to represent W&K, it failed to disclose what Roche has now admitted: it was, long before trial, acting for its undisclosed principal and benefactor, Ava Labs and its principal Gün, with the goal of "[taking] down one of Gün's biggest arch-nemeses . . .  Craig Wright." See the Motion to Disqualify at 9, citing

---

[1] In fact, as alleged in the Complaint pending in this matter, he does not.

2

Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 15) (Aug. 26, 2022).

The Firm's disqualification is mandated not merely by the scandalous admission that, at the Firm, unethical practices are policy – although that would be reason enough – but also because the central issue before this court in the underlying claim – the truth about the ownership of W&K – is directly implicated by Roche's admissions on the Firm's behalf, which call into question who really is behind Kleiman's claims of control.

In support of the motion to disqualify, and in search of the truth, the Trust propounded discovery on the Firm. The closely targeted requests for admissions (Attached as Exhibit "B") and requests for production (Attached as Exhibit "C") had a singular goal: to illumine the facts underlying Roche's outrageous boasts of his firm's unethical intentions and means. Roche and the Firm have since stated, in public and in the many other fora where their disqualification is being sought, that Roche's statements, while "inappropriate," were merely drunken boasting, or were taken out of context, or were in some way edited to mischaracterize them.

But the "but Kyle was drunk" defense recently proved unavailing for the Firm. *In re Tether and Bitfinex Crypto Asset Litig.*, No. 19-cv-09236, is a large class action matter in the Southern District of New York where the Firm was lead counsel. On Thursday, October 13, U.S. District Court Judge Katherine Polk Failla removed the Firm from its class counsel role based on the same Roche disclosures at issue in the disqualification motion before this Court. See No. 19-cv-09236 Tr. Oct. 13, 2022 attached as Exhibit "D." In so ruling, Judge Failla stated that "the degree to which the Roche Freedman firm has attempted to minimize Mr. Roche's statements gives me concern that they don't appreciate the seriousness of those statements, and I've already explained the dim view with which I hold the firm's arguments in mitigation." Ex. D, p. 11.

Furthermore, Judge Failla pointed out that "the fact is we, or anyone, had not yet gotten to the bottom of the relationship that Mr. Roche has or had with Ava Labs and, by extension, whether the litigation strategies suggested in his recorded comments were implemented by him with respect to Ava Labs or other clients of the firm or by others at the firm" Ex. D, p. 9.

The discovery sought by the Trust is the minimum inquiry needed to "get to the bottom" of these matters and to test whether the Firm's excuses and disclaimers should rescue it from disqualification.

But the Firm has flatly refused to respond at all to discovery. Its responses and objections (attached as Exhibits "E" and "F") characterize the requested admissions and documents as frivolous harassment. Based on precisely no legal authority, the Firm – with an arrogance entirely in character with Roche's bombastic description of its ethos – simply declares that "[a]bsent a court order, [the Firm] will not provide any information in response." *See, e.g.,* the Firm's Responses and Objections to the First Request for Admissions, repeated in response to each of twenty-six requests.

So the Firm has asked for a court order; the Firm ought to get one.

A motion to disqualify an attorney, let alone a law firm, is a serious business that deserves to be taken seriously. *Balaban v. Philip Morris USA Inc.*, 240 So. 3d 896, 899 (Fla. 4th DCA 2018) ("[I]mposing the remedy of disqualification may 'abrogate important societal rights, such as the right of a party to his counsel of choice and an attorney's right to freely practice her profession,' [but] courts should not hesitate to disqualify an attorney where the circumstances justify such a severe remedy.") (quoting *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1314 (5th Cir. 1995)). With stakes this high, cavalier disregard will not serve.

4

Indeed, disqualification is *so* serious a matter that the Court resolves a motion to disqualify upon the completion of an evidentiary hearing. *Sch. Bd. Of Broward Cty. V. Polera Bldg. Corp.*, 722 So. 2d 971, 974 (Fla. 4th DCA 1999) (requiring the trial court to conduct an evidentiary hearing on a motion to disqualify counsel, where the parties disputed material facts); *Plaza Resorts, Inc. v. Janus Am. Grp., Inc.*, 811 So. 2d 850, 851 (Fla 4th DCA 2002) (remanding to the trial court for evidentiary hearing because disqualification requires trial courts to make factual determinations and cannot issue solely based on the parties' competing affidavits); *Lewis v. Nical of Palm Beach*, 10 So. 3d 159, 163 (Fla. 4th DCA 2009) (even though counsel withdrew from representing defendants, plaintiffs demonstrated a preliminary basis for the disqualification of the opposing party's counsel and were entitled to an evidentiary hearing to present evidence on continuing misconduct and why voluntary withdraw was insufficient).  It then ineluctably follows that, because an evidentiary hearing is a futile exercise without evidence, the parties to such a hearing are entitled to gather that evidence. *See, e.g., McMillan v. Troutman,* 740 So. 2d 1227 (Fla. 4th DCA 1999) (finding parties to an evidentiary hearing are entitled to discovery regarding the subject issues of the hearing, here jurisdiction).

The Firm is not above the law, however much contempt Roche may have declared for it. Unless the Firm wishes uncharacteristically to do the right thing and simply withdraw, it is as subject to the process and procedure of this Court as anyone. The Trust has a right to test the veracity of Roche's admissions and plumb the depths of the Firm's misconduct, and the Court will need those matters fully developed to decide the proper course. Roche and his partners cannot be allowed to throw the integrity of this entire matter into question, then diminish or disclaim those disclosures, then hide behind a bald refusal to have them measured.

WHEREFORE, the Trust requests Roche Freedman, LLC be required to provide a substantive response to the Request for Production and Request for Admissions.

Respectfully submitted,

RIVERO MESTRE LLP
*Attorneys for Plaintiffs*
2525 Ponce de Leon Blvd., Suite 1000
Miami, Florida 33134
Tel.: (305) 445-2500
Fax: (305) 445-2505

By: /s/ Andrés Rivero
   Andrés Rivero
   Florida Bar No.: 613819
   arivero@riveromestre.com
   Alan H. Rolnick
   Florida Bar No.: 715085
   arolnick@riveromestre.com
   Robert J. Kuntz, Jr.
   Florida Bar No. 94668
   rkuntz@riveromestre.com

## CERTIFICATE OF SERVICE

I certify that on October 18, 2022, a copy of this motion was served on all counsel of record by email, pursuant to Florida Rule of Judicial Administration 2.516(b)(1).

By: /s/ Andrés Rivero
   ANDRES RIVERO

# Exhibit A

IN THE CIRCUIT COURT FOR THE
15TH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

RAMONA ANG, as Trustee of the
MB
TULIP TRUST,

       Plaintiff,

          v.

IRA KLEIMAN, as Personal Representative
of the Estate of David Kleiman

       Defendant,

and

W&K INFO DEFENSE RESEARCH, LLC,
and LYNN WRIGHT,

       Nominal Defendants.

_____/

CASE   NO:   50-2021-CA-004758-XXXX-

## **MOTION TO DISQUALIFY ROCHE FREEDMAN LLP**

In a shocking series of extraordinary, recorded statements, Kyle W. Roche, founding

partner of Roche Freedman LLP ("the Firm"), recently confessed to misusing and abusing the

legal system to unlawfully advance the commercial interests of the Firm's undisclosed principal

and benefactor, AVA Labs ("Ava"), by suing Ava's competitors and notable rivals in the

cryptocurrency industry. One such abuse of process was the lawsuit the Firm filed against Dr.

Craig Wright, which spawned and necessitated this action, in which the Firm is counsel of record

to Defendant Ira Kleiman and nominal defendant W&K Info Defense Research, LLC ("W&K").

In light of Roche's admissions of the Firm's blatant misconduct, the Firm should be disqualified

from any further representation of any party to this action.

1

The Firm's lawsuit that spawned this action, styled *Kleiman v. Wright,* Case No. 9:18-cv-80176-BB (S.D. Fla.), alleged a secret, oral partnership between Dr. Wright and Ira Kleiman's deceased brother, Dave Kleiman, to purportedly mine billions of dollars' worth of bitcoins. After a three-week trial last November, the jury rejected that claim and returned a verdict for Dr. Wright but awarded damages to co-plaintiff W&K (and nominal defendant here), on a claim that Dr. Wright and Dave Kleiman had equal interests in certain intellectual property owned by W&K. Essential to that claim were the Firm's shenanigans in re-activating W&K after Dave Kleiman died. This action seeks redress for those shenanigans. The Firm purported to represent W&K in *Kleiman v. Wright,* but failed to disclose their undisclosed principal and benefactor Ava, whose interests the Firm has secretly sought to advance for the last three years in that action, this one, and many others.

Roche recently confessed on camera to suing the rivals of Ava and its CEO, Emin Gun Sirer ("Gun"), by bringing harassing lawsuits, and fraudulent, purported class actions in the names of investors he referred to as "idiots." Roche admitted on camera that his business plan is never to settle a case, irrespective of his purported clients' interests, and instead to take all cases to trial (as the Firm did in *Kleiman v. Wright*), where liability and damages issues are decided by juries Roche also referred to as "idiots." He admitted that he does this to harm Ava's competitors, enforce Gun's personal vendettas, and keep regulators from investigating Ava, by keeping the SEC and CFTC busy investigating Ava's competitors (but not Ava) for, among other things, selling unregistered securities.

 On camera, Roche admits at length to a serious conflict of interest, undisclosed principals, a course of conduct that is unlawful on its face, and a fraud on the court in every case in which his firm has appeared, including this one. He admits that he not only brings cases for

manifestly improper purposes and ignores the interests of his purported clients to further his and Ava's undisclosed interests, but also leverages the litigation process to learn (and misuse) for Ava's benefit the confidential information and trade secrets of those he sues. He admits that he does all this for the express purpose of advancing the interests of the Firm and his benefactor Ava, to enforce the personal vendettas of Ava's Gun, as well as "for sport."

After Roche's on-camera statements were posted by a cryptocurrency whistleblower site ("Crypto Leaks"), Ava Labs proclaimed its innocence, Roche claimed he was drunk and taken out of context when (apparently on separate occasions) he made these damning admissions, **which he does not deny**, and attempted to personally withdraw from the Firm's fraudulent class actions, in which the Firm now faces motions to disqualify.[1] Because of the Firm's misconduct and undisclosed conflicts of interest, Dr. Wright has moved to disqualify the Firm from representing Ira Kleiman on appeal from the verdict for Dr. Wright in *Kleiman v. Wright* (also referred to here as "the federal case"), Case No. 22-11150-GG (11th Cir.). Roche's admissions of the Firm's wrongdoing demonstrate its unlawful "business plan" and its ongoing efforts to subvert the fair administration of justice, which heap scorn and disrepute upon the legal

---

[1] On August 31, 2022, one group of defendants in *In re Tether and Bitfinex Crypto Asset Litig.*, 1:19-cv-1936 (S.D.N.Y), moved to disqualify Roche Freedman. *See* Debevoise & Plimpton letter, attached as part of Composite Exhibit A. On September 1, 2022, a second group of defendants in that case moved for disqualification. *See id*. On September 2, 2022, Roche Freedman opposed disqualification. *See id.* Also on September 2, 2022, the first group of defendants replied in support of disqualification. *See id.* On September 2, 2022, Roche Freedman's co-counsel moved to terminate Roche Freedman as putative class counsel, noting that Roche Freedman had refused their request to withdraw. *See id*. More disqualification motions have since been filed.

profession and every court (including this one) in which the Firm has appeared. The Firm should be dismissed from further representation of any party to this action.[2]

Specifically, after Dr. Wright moved to dismiss the complaint in the federal case arguing that it was legally deficient because of the absence of necessary party W&K, the Firm, acting for Ira Kleiman, filed an LLC Reinstatement for W&K (which had been administratively dissolved), listing Kleiman as registered agent. Thereafter, the Firm amended the complaint in the federal case to add W&K as a plaintiff, claiming that Ira Kleiman was W&K's managing member. As a direct result of this misconduct, Ramona Ang, as trustee of Tulip Trust, was required to file this action seeking a declaratory judgment as to the membership interests of the actual members of W&K, and an order directing Ira Kleiman to immediately cease all unauthorized activities and enjoining him from any taking any further actions that purport to be taken on W&K's behalf. Plaintiff Ramona Ang has standing to bring this motion,[3] which should be granted in the interests of justice.

I.   **ARGUMENT**

On Saturday, August 27, 2021, extraordinary video recordings of Kyle Roche, founding partner of the Firm, were released on the internet. On camera, Roche expressly admitted to

---

[2] Defendant Ira Kleiman also is represented here by the well-respected firm of Boies, Schiller, et al. Removing Roche Freedman will not prejudice Mr. Kleiman or delay this case.

[3] The comment to Rule 4-1.7 states, "[w]here the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question." *Boca Raton Reg'l Hosp., Inc. v. Williams*, 230 So. 3d 42, 45 (Fla. 4th DCA 2017) ("[A] party may seek disqualification of opposing counsel where the conflict of interest involves representation of someone other than the movant and where it is such 'as clearly to call in question the fair or efficient administration of justice.'") (citing *State Farm Mut. Auto. Ins. Co. v. K.A.W.,* 575 So. 2d 630, 632 (Fla. 1991); *Zarco Supply Co. v. Bonnell*, 658 So.2d 151, 154 (Fla. 1st DCA 1995)).

conduct that violates his fundamental obligations as a lawyer. His statements amount to admissions of his and his firm's conflicts of interest under Rule 4-1.7 of the Florida Rules of Professional Conduct.[4] On camera, Roche admitted to bringing purported class actions in the names of purported class representatives, but actually acting on behalf of Ava—an undisclosed interested party—in which he bragged about having an enormously valuable financial stake. He also admitted that he files lawsuits to advance the financial interests, enforce the vendettas, and for the entertainment of his undisclosed benefactor and principal, Gun, Ava's CEO, as well as "for sport." In sum, on camera, Roche admitted to motives and conduct that plainly violate his fundamental obligation as a lawyer to not put his own interests before those of his clients.[5]

In the days since the recordings were posted: (1) Ava Labs released a statement claiming it would never "engage in the unlawful, unethical and just plain wrong behavior claimed in these self-serving videos . . . ," Emin Gün Sirer, *My Statement about the Crypto Leaks lies*, MEDIUM (Aug. 29, 2022), https://el33th4x0r.medium.com/my-statement-about-the-crypto-leaks-lies-ef2005da752; (2) Roche publicly confirmed that the recordings are genuine, claiming he was "exploit[ed] using leading questions," and his statements were taken "out of context," Kyle Roche, *My Response*, MEDIUM (Aug. 29, 2022), https://medium.com/@kyleroche/my-response-b691563c255b; (3) Roche filed motions to personally withdraw from two of his firm's class

---

[4] Although Roche is not admitted to practice in Florida, pursuant to Rules 1-3.1 and 1-3.10(a)(1) of the Rules Regulating the Florida Bar, the Firm, its Florida operations, and any lawyer "permitted to appear by this rule are subject to these Rules Regulating The Florida Bar while engaged in the permitted representation."

[5] Because "there is a substantial risk that the representation of 1 or more clients will be materially limited by [Roche's] responsibilities to another client, a former client or a third person or by a personal interest of [Roche]," he has an express conflict of interest under Florida Rule 4-1.7(a)(2).

actions against Ava's competitors; and (4) at least two of those competitors moved to disqualify him and his Firm in the *Tether* case. *See* Composite Exhibit A.

In his Motion to Withdraw from the *Tether* case, Roche stated that he "is no longer involved in [Roche Freedman's] class action practice." *See* Roche's Motion to Withdraw in *In re Tether,* 1:19-cv-1936 (S.D.N.Y) (D.E. 229 at 1), attached as part of Composite Exhibit A. Because Roche is a founder of Roche Freedman and his firm's practice concentrates on plaintiffs' class actions, this drastic step undermines his claim that the recordings misrepresented "the context" of his statements, and both underscores and heightens the disqualifying nature of those statements. Two *In re Tether* defendants have moved to disqualify Roche and the Firm. *See* Comp. Ex. A. Other such motions in other cases surely will follow.

Because Kyle Roche's own statements, now widely distributed on the internet by many outlets, are open and notorious, demonstrate a serious conflict of interest that calls into question the fair administration of justice in this matter, Ms. Ang and her counsel are compelled to seek the disqualification of Roche Freedman LLP.

A.    THE FACTS

In 25 video clips released on August 27, 2022, Kyle Roche discloses and describes his Firm's close, improper, and previously undisclosed ties to Ava and its CEO, Gun. Roche says he founded the Firm the same day that Ava launched, on August 21, 2019, sharing the same co-working space. Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 1) (Aug. 26, 2022), https://d33wubr fki0l68.cloudfront.net/1a432cb907f50390478d5c7b5c2c30c24547d110/5ca00/videos/c3-00-office-ava-labs-launch.mp4. Roche says he was the third shareholder in Ava (after its founders, Gun and COO Kevin Sekniqi). Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC*

6

*in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 2) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/ba470e47132c5cb938f344be9ffd8261adc0eca2/6c3ea/videos/c3-01-office-deal-for-perc-token-supply.mp4.

On camera, Roche says he owns 1% of Ava Labs tokens and shares, which are worth tens, if not hundreds, of millions of dollars.[6] Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 3) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/96d2fbedbfb4ac619f2656ce923aa707cfca9cbe/3d59f/videos/c3-02-office-i-got-1-point-on-both.mp4. He admits his personal bias to favor Ava, and states that he has "the same interest, same goals" as Gun and Sekniqi, whom he "trust[s] like brothers." Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 5) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/61dabcad45d46c6207e4acded4ab34a49a0aa163/fc7a7/videos/c3-04-office-same-interests-same-goals.mp4.

> KR: Obviously, I'm biased. I have an interest in Ava Labs and I . . .
> Q: You have a stake in Ava Labs?
> KR: Yes.
> Q: How big?
> KR: I can't . . .  A big one. I did very well.

Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 3) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/96d2fbedbfb4ac619f2656ce923aa707cfca9cbe/3d59f/videos/c3-02-office-i-got-1-point-on-both.mp4. Roche says he now lives with Sekniqi in Miami for tax purposes. Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche*

---

[6] The market capitalization of AVAX tokens currently is $5.7 billion and has been as high as $30 billion in the past year. Avalanche Price (AVAX/USD) | Today's Price, TIME https://time.com/nextadvisor/investing/cryptocurrency/price/avalanche-avax/.

*Freedman* (video 7) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/789531f0f9b4b 55626c52801967703b1968bca18/b171a/videos/c3-06-office-i-live-with-kevin-in-miami.mp4.

### 1.     The Firm Sues Ava's Competitors Using Straw Plaintiffs

Roche said he uses litigation as a "strategic instrument to support" Ava. Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 6) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/a799bb8bcde3170c 313e3ad7662a41148621c4d1/2fbf3/videos/c3-05-office-litigation-is-a-strategic-instrument.mp4.

He expressly admits that he sued Ava Labs' competitors, including Solana and Dfinity, without naming Ava Labs as a plaintiff, using purported class representatives to conceal his undisclosed principals, who, along with himself, are real parties in interest in these actions:

> Q: Has Ava Labs filed a complaint against one of their competitors?
> KR: **No, they have me to do that on behalf of the class Their name was never** . . .
> X: Explain.
> KR: **So, I can sue Solana** . . .
> X: Yeah.
> KR: **but a plaintiff will purchase Solana**.
> X: And what about Dfinity?
> KR: Oh yeah.

Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 19) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/ b4a2e7900f289e01ce2b25dfa5a254850a22496d/e7035/videos/c3-17-i-can-sue-solana.mp4 (emphasis added); Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 17) (Aug. 26, 2022), https:// d33wubrfki0l68.cloudfront.net/b660cb79f51a071ece800cda7fc3521e5e21a59d/0467e/videos/c3- 16-0-dfinity-is-a-competitor-to-avalanche.mp4 (Dfinity also is a competitor of Ava).

## 2.	The Firm Uses Other Improper Tactics to Benefit Ava

On camera, Roche brags about harassing "Emre Crypto,"[7] a Turkish "top competitor" of Gun and AVA, causing him to be "tagged" coming into the United States and recording that service of process, which Roche says Gun "enjoys" watching "once a month." Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 14) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/ccce812b0d07fc6c1bb9928d1a7a99db011ed1af/13125/videos/c3-13-gun-watches-video-once-a-month.mp4. He also boasts that **"I took down one of Gun's biggest arch-nemeses. The guy who claimed to be Satoshi, Craig Wright."** Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 15) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/54bcd83ef86e546fa4f97c2e481fba064e228c8d/483a3/videos/c3-14-gun-goes-after-craig-wright.mp4 (emphasis added).

On camera, Roche further admits that the Firm has developed and executed a strategic plan to feed tips against Ava's competitors to regulatory authorities in such volume that the regulators are drawn away from scrutinizing Ava's activities. Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 10) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/1edf92baa6d2ec8203a8568c7869ef5e4b326a71/428f7/videos/c3-09-magnets-for-sec-and-competitive-attacks.mp4 ("KR: yes, yeah, I deal with making sure that the SEC has . . . the SEC and the CFTC have other magnets to go after. . . ."); Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy*

---

[7] In the videos, Roche refers to him as "Emre Crypto." His actual name is Emre Aksoy, and he goes by the assumed name of "Kripto Emre." *See* Roche Freedman's press release about serving him at Miami Int'l Airport: https://www.rochefreedman.com/crypto-thought-leader-cant-duck-ceos-defamation-claims/

9

*with Bought Law Firm, Roche Freedman* (video 11) (Aug. 26, 2022), https://d33wubrfki0l68. cloudfront.net/91987bc2f582f24ecb688ab4c137a485d139dfe1/b4646/videos/c3-10-office-theres-no-such-thing-as-regulation.mp4 (". . . . since [Gun] signed me up, I've ensured that there's no such thing as regulation for what they want to do.").

**3.      Roche Elevates His Personal Interests Above His Clients' Interests**

On camera, Roche brazenly states that "I'm a crazy motherf*cker and I have resources and I will take you to the end [in a lawsuit]." Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 18) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/2f1313a474fff7dedbb5432d16e848725ce51e04/ 4f9ab/videos/c3-16-im-a-crazy-motherfucker.mp4. He says "that is power and that is what I think is a tool that has not been unlocked by very many . . . ." *Id.* He also says that because of his personal stake in Ava, "I have to ability to say 'look it's not about the money anymore for me it's about taking you guys to trial and **the sport of it**.'" Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 19) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/b4a2e7900f289e01ce2b25dfa5a254850a 22496d/e7035/videos/c3-17-i-can-sue-solana.mp4 (emphasis added).

Roche says he does not "think there's any reason to settle for less than half a billion to a billion but . . . if we get $100 million settlement we are in the front page of all the legal press and so it's good for me and my partners and my firm." Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 23) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/6ab1d54cf47b4b43a28ec4d52d2a12be50 78b5d7/8826b/videos/c3-21-no-reason-to-settle-less-than-500m.mp4. Completely absent from

Roche's explanation of his approach to litigation is any consideration of his clients' interests or their right to decide to settle or not settle.

### 4.      Roche Demonstrates Utter Contempt for the Administration of Justice

By his own admission, Roche operates without respect for his role as an attorney or his duties as an officer of the Court. Discussing jury trials, he says "what you do is, metaphorically, you pull down your pants and you tell your jury, 'here is my c*ck, now you talk . . . pull down your pants a little bit . . . .'" Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 21) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/251c0d83886aba0804637ca9f8819e12adb26238/ab979/videos/c3-19-show-me-your-cock.mp4.

Of the jury, Roche derisively states "that 10 idiots control the flow of all the money that happens in American class actions." Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 22) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/f580f15300ae3305352a21a810a4cbce4b1247a7/73e42/videos/c3-20-ten-idiots-control-the-flow.mp4. About putative class members, as to whom he is a fiduciary, he says that "I go to the Court, and I say, hey 'I got $100 million for these 100,000 idiots out here. Give me . . . give me $30 million and I will administer . . . .'" Cryptoleaks, *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman* (video 24) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/ca154b2403c4f503206afd0666cf4694c23c8dd3/de306/videos/c3-22-these-100000-idiots.mp4.

### B.   THE LAW

On camera, Roche repeatedly emphasized that his personal interests come before his clients, which violates Florida Rule of Professional Conduct 4-1.7(a)(2), prohibiting

representation of a client when "there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."

When Roche says he will not settle any case and insists on going to trial to extract a larger settlement, or settles because of publicity for the Firm, he admits to expressly putting his and the Firm's interests ahead of those of his clients. The plain import of his claim that his newfound wealth frees him from the constraints on plaintiffs' lawyers is that his wealth allows him to disregard his clients' interests in the settlement process.

On camera, Roche states directly and unequivocally that he sues Ava's competitors (at its behest) in the names of straw plaintiffs and does so by filing class actions. This is, at a minimum, Rule 404(b) evidence that Roche is engaged in a pattern and practice of secretly representing Ava's and Gun's interests by using straw plaintiffs to conceal the real parties in interest. After Roche's on-camera admissions, there is a sound basis for concluding that in attempting to "take down" Gun's arch-nemesis, Dr. Craig Wright (defendant in the federal case brought by the Firm), Roche and the Firm have been acting for the benefit of Ava and Gun, who were undisclosed interested parties. Roche's admitted conduct as to "Emre Crypto," discussed above in Section 1.A.2, demonstrates an abuse of process akin to what appears to have happened to Dr. Wright, which necessitated this case. In these circumstances, Ms. Ang should be permitted to obtain all pertinent discovery, and the Court should hold an evidentiary hearing on this motion after the completion of discovery. Indeed, in *Tether,* the Firm itself has requested discovery and a hearing on the evidence regarding these very issues. *See* the Firm's letter dated September 2, 2022 attached as part of Composite Exhibit A. Discovery requests in this case are forthcoming.

On camera, Roche admitted to other improper conduct in furtherance of Ava's interests, including sharing with Ava the discovery obtained in the Firm's class actions against Ava's competitors (surely in violation of confidentiality orders), distracting regulators from Ava by feeding them incriminating information about Ava's competitors, and, as noted, harassing Gun's "nemeses"—such as videotaping service of process on "Emre Crypto," Gun's principal Turkish competitor—for Gun's viewing pleasure. Roche's discussion of Dr. Wright (Cryptoleaks, Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman (video 15) (Aug. 26, 2022), https://d33wubrfki0l68.cloudfront.net/54bcd83ef86 e546fa4f97c2e481fba064e228c8d/483a3/videos/c3-14-gun-goes-after-craig-wright.mp4), strongly suggests that the federal case was motivated by Gun's rivalry with Dr. Wright.

In addition to demonstrating fundamental conflicts that Rule 4-1.7 prohibits, Roche's admitted, serial misconduct flouts and fundamentally offends the core responsibilities imposed on every lawyer to uphold the dignity of the courts, and to treat litigants and other counsel forthrightly and with respect. Florida Rule 4-8.4 embodies these obligations, which Roche has, through his statements, expressly abjured.

Florida Rule 4-8.4 bar attorneys from engaging "in conduct involving dishonesty, fraud, deceit, or misrepresentation." Roche has confessed to bringing pretextual lawsuits, for improper purposes, on behalf of undisclosed shadow clients. Florida Rule 4-8.4(d) prohibits "conduct that is prejudicial to the administration of justice." But Roche—in a shameful display that inherently prejudices the administration of justice in any court where he appears—has publicly denounced his purported clients and all jurors as "idiots," declared himself "crazy," and denigrated the entire jury-trial and class-action system as nothing more than a cynical competitive tool.

The Court need not and should not tolerate this improper conduct by attorneys who appear before it. *McGillis v. Dep't of Child. & Fam. Servs.,* 738 So. 2d 1023 (Fla. 3d DCA 1999) (citing *S.Y. v. McMillan*, 563 So.2d 807 (Fla. 1st DCA 1990) ("A court has the inherent power to control the conduct of its own proceedings in order to preserve order and decorum in the courtroom, to protect the rights of parties and witnesses, and to generally further the administration of justice.")); *Petition of Fla. Bar*, 61 So.2d 646, 647 (Fla. 1952) ("[R]egularly constituted courts have power to do anything that is reasonably necessary to administer justice within the scope of its jurisdiction, but not otherwise. Inherent power has to do with the incidents of litigation, control of the court's process and procedure, control of the conduct of its officers and the preservation of order and decorum with reference to its proceedings."); *In re Pub. Def.'s Certification of Conflict and Mot. to Withdraw Due to Excessive Case Load and Mot. for Writ of Mandamus*, 793 So.2d 1, 3 (Fla. 2d DCA 1998) ("Where litigants or attorneys have substantially interfered with the orderly process of judicial administration, courts may, and should, exercise their inherent authority to prevent abuse of the judicial system by, among other things, barring the offending party from filing further proceedings."). Here, the continued presence of Roche's Firm in this matter would be an ongoing affront and insult to the Court, the judges and lawyers who labor there, and the litigants who come before it seeking a dignified process and justice.

Lastly, Roche's misconduct must be imputed to the Firm. Florida Rule 1.10 states that "[w]hile lawyers are associated in a firm, none of them may knowingly represent a client when any 1 of them practicing alone would be prohibited from doing so by Rule 4-1.7 or 4-1.9 . . . ." Roche directs the affairs of the boutique Firm that bears his name, which lists 24 lawyers on its website as of this writing. He "lead[s] the Roche Freedman team appointed as lead counsel in over 15 class actions" and "build[s] its] legal strategies." *See* https://www.rochefreedman.com/

14

attorneys/kyle-roche/, last visited Sept. 5, 2022. From the videos, it is evident that the interests

Roche seeks to protect by his confessed misconduct are not merely his own, but the interests of

the entire Firm. Accordingly, Roche's conflicts not only warrant his disqualification, but also

warrant disqualification of his partners and the Firm.

Disqualification of the Firm will not leave defendant without adequate representation.

Andrew Brenner of Boies, Schiller is a highly capable lawyer who has been co-counsel to the

Firm in this action, and the Firm's clients will suffer no harm whatsoever from the fully

warranted removal of the Firm from any further role in this matter.

**II.**     **CONCLUSION**

For all these good and sufficient reasons, the Court should disqualify Roche Freedman LLP

from any further involvement in this matter and should order such other and further relief as is

warranted.

Respectfully submitted,

RIVERO MESTRE LLP
*Attorneys for Plaintiffs*
2525 Ponce de Leon Blvd., Suite 1000
Miami, Florida 33134
Tel.: (305) 445-2500
Fax: (305) 445-2505

By: /s/ Andrés Rivero
    Andrés Rivero
    Florida Bar No.: 613819
    arivero@riveromestre.com
    Alan H. Rolnick
    Florida Bar No.: 715085
    arolnick@riveromestre.com
    Robert J. Kuntz, Jr.
    Florida Bar No. 94668
    rkuntz@riveromestre.com

## CERTIFICATE OF SERVICE

I certify that on September 9, 2022, a copy of this motion was served via e-mail, pursuant to

Florida Rule of Judicial Administration 2.516(b)(1), on all counsel of record.

By: /s/ Andrés Rivero
ANDRES RIVERO

# Composite Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID LEIBOWITZ, BENJAMIN LEIBOWITZ, JASON LEIBOWITZ, AARON LEIBOWITZ, and PINCHAS GOLDSHTEIN, | CASE NO. 1:19-cv-09236-KPF |
| Plaintiffs, | |
| v. | |
| IFINEX INC., BFXNA INC., BFXWW INC., TETHER HOLDINGS LIMITED, TETHER OPERATIONS LIMITED, TETHER LIMITED, TETHER INTERNATIONAL LIMITED, DIGFINEX INC., PHILIP G. POTTER, GIANCARLO DEVASINI, LUDOVICUS JAN VAN DER VELDE, REGINALD FOWLER, CRYPTO CAPITAL CORP., and GLOBAL TRADE SOLUTIONS AG, | |
| Defendants. | |

**NOTICE OF MOTION TO WITHDRAW AS COUNSEL**

PLEASE TAKE NOTICE that Kyle W. Roche, Esq. of Roche Freedman, LLP ("RF") respectfully moves the Court pursuant to Local Rule 1.4 to withdraw as one of the attorneys for the Proposed Class. Mr. Roche is no longer involved in RF's class action practice. Accordingly, pursuant to Local Rule 1.4, Mr. Roche respectfully requests to no longer receive docketing notifications *via* the ECF system. Mr. Roche also asks that the Court approve this withdrawal.

DATED: August 31, 2022                    Respectfully Submitted,

**ROCHE FREEDMAN LLP**

*/s/ Kyle W. Roche*
Kyle W. Roche
99 Park Avenue, 19th Floor
New York, NY 10016

kyle@rochefreedman.com

*Interim Lead Counsel and Attorneys for Plaintiffs and the Proposed Class*

SO ORDERED this _____ day of _____, 2022.

_____
HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on August 31, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

/s/ *Kyle W. Roche*

Kyle W. Roche



**Debevoise & Plimpton LLP**
919 Third Avenue
New York, NY 10022
+1 212 909 6000

August 31, 2022

BY ECF AND EMAIL

The Honorable Katherine Polk Failla
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

*Re:  In re Tether and Bitfinex Crypto Asset Litigation*, No. 19 Civ. 9236 (S.D.N.Y.)

Dear Judge Failla:

We represent the B/T Defendants in the above-referenced matter and write in response to Plaintiffs' Motion for Kyle W. Roche to Withdraw as Attorney.  (Dkt No. 229.)  Mr. Roche's motion comes immediately following the public disclosure of a series of videos of Mr. Roche suggesting that he and his law firm are misusing the litigation process.  Mr. Roche apparently has an enormous stake in a crypto company called Ava Labs, Inc., files class action lawsuits against companies in the crypto space for the purpose of harming competitors of Ava Labs, and uses market intelligence gathered through the discovery process for the benefit of Ava Labs.  The videos also show Mr. Roche making several disparaging remarks about juries, class members, and the class-action process in the United States.[1]

Mr. Roche's statements raise grave concerns for the B/T Defendants regarding the motivations behind filing this lawsuit, the purpose for which certain discovery has been sought, and whether the highly sensitive, confidential information the B/T Defendants have provided is being misused.  That Mr. Roche, who initially claimed that his comments were taken out of context, has now announced that he "is no longer involved" in his firm's class action practice further heightens those concerns.

The B/T Defendants' concerns are not addressed by Mr. Roche's individual withdrawal as counsel of record in this matter.  Accordingly, the B/T Defendants respectfully request that Mr. Roche's firm, Roche Freedman LLP, be terminated as counsel in this case, and that Mr. Roche and Roche Freedman LLP certify to this Court that they (*i*) have returned or destroyed all documents and information produced by Defendants in this lawsuit and (*ii*) have not shared any such documents or information with Ava Labs or any other third party.

---

[1]  *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman*, CRYPTO LEAKS (Aug. 26, 2022), available at https://cryptoleaks.info/case-no-3 [https://perma.cc/N433-63SC].

The Honorable Katherine Polk Failla          2          August 31, 2022

## I.  The Kyle Roche Video.

Mr. Roche's withdrawal motion comes on the heels of a high profile investigative exposé published by the Crypto Leaks website on August 26, 2022 that includes a series of video clips in which Mr. Roche, a founding partner of the Roche Freedman firm, makes a number of highly disturbing comments about his significant financial interest in Ava Labs and his misuse of class action litigation.  Among other things, Mr. Roche states that:

- He personally owns approximately 1% of the Avalanche tokens ("AVAX") issued by Ava Labs, as well as 1% of the equity in Ava Labs.   (That interest is worth tens of millions, if not hundreds of millions of dollars:  the market capitalization of AVAX tokens is currently $5.7 billion and has been as high as $30 billion in the past year.)

- He uses litigation as "a strategic instrument to support Ava Labs," which he states is "a completely different way than being a lawyer."   Litigation, according to Mr. Roche, is "a fantastic tool to competition."

- Ava Labs does not file complaints against its competitors, but instead "they have me do that on behalf of the class."

- By filing lawsuits against competitors of Ava Labs, Mr. Roche "deal[s] with making sure that . . . the SEC and the CFTC have other magnets to go after," thereby protecting Ava Labs from regulatory scrutiny.

Mr. Roche's statements also give rise to a serious concern that he may be abusing the discovery process and misusing information that he learns through litigation.  He states that he is Ava Lab's "crypto expert" because he "*sue[s] half the companies in the space*" and "know[s] where this market is going" because he has "*seen the insides of every single crypto company*."   These concerns resonate strongly in this case, where Plaintiffs have served a number of document requests seeking information that has no apparent link to the claims and defenses in this lawsuit.  For example, Plaintiffs have sought documents related to numerous entities and individuals with whom the B/T Defendants have business relations, as well as all documents related to the B/T Defendants' investments in other crypto companies, their efforts to raise equity and to obtain loans, and a wide array of financial information unrelated to the issues raised by Plaintiffs' complaint.

More broadly, Mr. Roche disparages the putative class members whom he seeks to represent – and to whom he and his firm owe a fiduciary duty – as "100,000 idiots out there" and dismissively refers to juries as "10 idiots" who "control the flow of all the money that happens in American class actions."

The Honorable Katherine Polk Failla        3        August 31, 2022

Mr. Roche has publicly confirmed that the recordings are genuine. He claims that he was "exploit[ed]" using "leading questions," and that his statements were taken out of context.[2]

## II.    Mr. Roche's Motion to Withdraw Does Not Adequately Address the Concerns Raised by the Kyle Roche Video.

In his Motion to Withdraw, Mr. Roche states that he "is no longer involved in [Roche Freedman's] class action practice." (Dkt. No. 229 at 1.) That is an extraordinary statement given that Mr. Roche is a founder of Roche Freedman LLP and the "class action practice" represents the vast majority of his firm's work. Such a drastic step is inconsistent with Mr. Roche's suggestion that his videotaped statements were taken out of context, and it validates the serious concerns caused by those statements. Indeed, it heightens those concerns.

The individual withdrawal of Mr. Roche, however, does little if anything to address the serious issues regarding the potential misuse of discovery and class action lawsuits generally. Even if he is no longer counsel of record, he would still have access to discovery materials, would retain the ability to direct the conduct of other lawyers at his firm, and would profit from any potential recovery in this lawsuit. Moreover, any conflict of interest impacting Mr. Roche is imputed to his entire firm. And, in fact, it appears that other lawyers at Roche Freedman who have entered appearances in this litigation – including Devin "Vevel" Freedman, Amos Friedland, and Edward Normand – may also own substantial amounts of AVAX tokens and have similar involvement with Ava Labs.[3]

Accordingly, the B/T Defendants respectfully request that, in response to Mr. Roche's motion to withdraw, the Court order that the entire firm of Roche Freedman LLP be terminated as counsel in this case. Such a removal would not prejudice Plaintiffs, as they would remain represented by two other large and experienced firms: Selendy Gay Elsberg PLLC and Schneider Wallace Cottrell Konecky LLP.

In order to protect the highly sensitive information that Defendants have produced in discovery, the B/T Defendants also respectfully request that the Court issue an order requiring Mr. Roche and Roche Freedman LLP to certify that they (*i*) have returned or destroyed all documents and information produced by Defendants in this lawsuit and (*ii*) have not shared any such documents or information with Ava Labs or any other third party. The documents produced by the B/T Defendants and other parties in this litigation are highly sensitive, as they include not only confidential, competitively sensitive information about Defendants' businesses but also information that, if disclosed, would threatens the privacy and security of Defendants and their

---

[2]    *See* Kyle Roche, *My Response*, MEDIUM (Aug. 29, 2022), available at https://medium.com/@kyleroche/my-response-b691563c255b [https://perma.cc/WH2G-ZD8B].

[3]    Crypto Leaks (@CryptoLeaksInfo), TWITTER (Aug. 29, 2022, 5:44 A.M.), https://twitter.com/CryptoLeaksInfo/status/1564187241949298688.

The Honorable Katherine Polk Failla          4          August 31, 2022

customers.  The Court has already recognized the importance of protecting information about cryptocurrencies and related accounts and wallets.  (Dkt. No. 195.)

*     *     *

We thank the Court for its consideration.

Respectfully submitted,

/s/ Elliot Greenfield

LAW OFFICES OF

MCNAUL EBEL NAWROT & HELGREN
A PROFESSIONAL LIMITED LIABILITY COMPANY

600 UNIVERSITY STREET, SUITE 2700
SEATTLE, WASHINGTON 98101-3143
TELEPHONE: (206) 467-1816
FACSIMILE: (206) 624-5128

GREGORY J. HOLLON                                E-MAIL: GHOLLON@MCNAUL.COM
                                                        Direct (206) 389-9348

TIMOTHY B. FITZGERALD                            E-MAIL: TFITZGERALD@MCNAUL.COM
                                                        Direct (206) 389-9338

September 1, 2022

**VIA ECF**

The Honorable Katherine Polk Failla
United States District Court for the
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    **In re Tether and Bitfinex Crypto Asset Litigation**
               **No. 19 Civ. 9236 (S.D.N.Y.)**

Dear Judge Failla:

Together with O'Melveny & Myers, we represent Defendant Bittrex, Inc. in the referenced matter. Defendant Poloniex LLC, represented by Nelson Mullins, also joins in this letter (Bittrex and Poloniex are collectively "the Exchange Defendants"). We write to join in the requests made by the B/T Defendants in responding to Plaintiffs' Motion for Kyle W. Roche to Withdraw as Attorney (Dkt. No. 229) – namely, (1) that Roche Freedman LLP be terminated as counsel in this case, and (2) that both Mr. Roche and Roche Freedman LLP certify, in connection with their termination, that they have returned or destroyed all documents and information produced by the Exchange Defendants and that they have not shared any of those documents or information with any third party.

In the video recordings released by Crypto Leaks, Mr. Roche states that "litigation is an underused tool," and confirms that he has used class action litigation as a "strategic instrument" to support non-party Ava Labs, a cryptocurrency company in which he and other Roche Freedman attorneys maintain a substantial interest. He states that he has used litigation against other participants in the cryptocurrency space to further the interests of Ava Labs. He goes on to state that he is Ava Labs' "crypto expert . . . because I sue half the companies in the space" and brags that he has "seen in the insides of every single crypto company." Mr. Roche describes himself in one of the videos as a "crazy mother****er" who will "take you to the end" to get a

The Honorable Katherine Polk Failla
September 1, 2022
Page 2

piece of paper saying "I own your company now," and describes that "power" as "a tool that has not been unlocked by many."

Mr. Roche's statements raise troubling questions about his firm's use of the discovery process in this matter. As the Court is aware, Plaintiffs amended their complaint in June 2020 to add the Exchange Defendants. *See* Dkt. No. 114. The Amended Complaint relies heavily on allegations that the B/T Defendants owned or controlled certain accounts on the Exchange Defendants' platforms, including specifically the "1AA6" account on Bittrex and the "1J1d" account on Poloniex, incorrectly describing those accounts as the "Bitfinex deposit address(es)." *Id.* at ¶ 207. In response to those allegations, the Exchange Defendants provided Mr. Roche and his colleagues conclusive evidence, including a sworn declaration from the actual holder of the supposed "Bitfinex deposit address(es)," that the accounts in question are not and never have been owned or controlled by the B/T Defendants; instead, they have always been exclusively owned and controlled by a foreign arbitrage trader who has no relation to the B/T Defendants. The Exchange Defendants have identified that trader, provided sworn testimony from him about his arbitrage activities, and produced documents proving that the relevant accounts are—contrary to the allegations in the Amended Complaint—not owned or controlled by the B/T Defendants.

Notwithstanding the arbitrage trader's sworn testimony about his trading, Plaintiffs say that they cannot yet re-evaluate their claims against the Exchange Defendants because "[f]ull discovery, from all Defendants, is needed to test the assertions in the Anonymous Declaration." Plaintiffs say that such discovery must include "documents and deposition testimony not only from the declarant, but also from the Exchange Defendants, Bitfinex, and their affiliates." Dkt. No. 181 at 2.

The Exchange Defendants have worked diligently in preparing a substantial production of documents to Plaintiffs.[1] Mr. Roche's recent statements raise serious concerns about the intent behind such discovery and how it will be used. While the Exchange Defendants appreciate that a protective order has been entered in this matter and that attorneys can be expected to comply with such orders, Mr. Roche's statements make clear that he has already used confidential materials produced in litigation for improper purposes. Moreover, the Court previously recognized that the protective order is not sufficient protection for certain information Defendants have produced. *See* Dkt. No. 195. Under the circumstances, simply accommodating Mr. Roche's withdrawal is not sufficient. He remains a member of Roche Freedman, and it must be assumed that, just as the actions he described in the recently released videos benefited Mr. Roche, his firm, and Ava Labs, any further access by Roche Freedman to the highly confidential materials produced in this matter may be subject to similar misuse.

For the above reasons, the Exchange Defendants respectfully join in the B/T Defendants' requests that (1) Roche Freedman LLP be terminated as counsel in the matter, and (2) Roche

---

[1] Plaintiffs originally proposed nearly 300 search terms to each of the Exchange Defendants, many of which related to broad aspects of the cryptocurrency industry but did not appear related to any of the claims or defenses in this matter.

The Honorable Katherine Polk Failla
September 1, 2022
Page 3

Freedman LLP be required to certify that is has destroyed all documents produced by the Defendants in this matter, and that no such materials remain in the possession, custody, or control of any principals, agents, or employees of the firm.

      Given these revelations, the Exchanges Defendants reserve the right to pursue additional relief as they obtain more information.

Respectfully,

Gregory J. Hollon
Timothy B. Fitzgerald

GJH/TBF:ln



September 2, 2022

**VIA ECF**

The Honorable Katherine Polk Failla
United States District Court for the
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:     *In re Tether and Bitfinex Crypto Asset Litigation*, 19 Civ. 9236 (S.D.N.Y.)

Dear Judge Failla:

We write in response to Defendants' August 31, 2020 letters asking the Court to disqualify Roche Freedman LLP ("Firm") as co-lead counsel for Plaintiffs based on statements made by Kyle Roche. We respectfully submit the Court should deny Defendants' request.

A. **RELEVANT BACKGROUND**

On January 27, 2022, Mr. Roche attended a meeting in London to facilitate a potential venture capitalist investment. Mr. Roche believed he was attending that meeting to pursue the interests of a technology start-up initiative. But it now appears the meeting was actually a set up orchestrated by a defendant in a different class action the Firm is pursing. Roche Decl. ¶ 2.

Unfortunately, at that meeting, Mr. Roche made untrue statements apparently intended to impress the participants at the meeting. He also made inappropriate remarks disparaging jurors and class members.

As demonstrated below, the statements with which Defendants take issue are not just false, they are *demonstrably* false. Nonetheless, to protect against even the appearance of impropriety, and to avoid unnecessary distraction from the merits of this case, Mr. Roche has withdrawn from this case and the Firm has removed him from its entire class action practice. Mr. Roche has also been screened from the Firm's class actions (this case included). Finally, to ensure there is no optical concern whatsoever, Mr. Roche has also forfeited any financial interest in this litigation.

It's no surprise, however, that Defendants are using it as a litigation tactic to disqualify the entire Firm. The Firm has one of the leading litigation practice groups in this space, understands the technology exceptionally well, originated the case theory, was retained by every single client in this action, and drafted and filed the original complaint.

The Honorable Katherine Polk Failla
September 2, 2022
Page 2 of 5

## B. **THE STATEMENTS**

1. **The Firm did not use this litigation as a strategic instrument to support Ava Labs, did not file this action at Ava Labs' request, and any interest in Ava Labs or AVAX tokens doesn't present a conflict.**

    The notion that Roche Freedman decided to pursue this case in order to further the interests of Ava Labs is plainly false. First and foremost, the Firm's retention in this case by the three original named plaintiffs - Jason Liebowitz, Benjamin Liebowitz and Aaron Liebowitz - pre-dates Ava Lab's retention of the Firm. Indeed, when the Firm filed the 95-page complaint in this matter, Ava Labs had only been a Firm client for a matter of days. Moreover, at that time, Ava Labs was a relatively unknown start up and the AVAX crypto-asset was not existent. The idea, therefore, that the Firm filed this case for Ava Labs, is both impossible, nonsensical, and untrue.

    In fact, shortly after this incident unfolded, Ava Labs' CEO issued a statement confirming that "[n]either I, nor anyone else at Ava Labs ever directed Roche in his selection of cases."[1]

    Further, Defendants' suggestion that a disqualifying conflict of interest exists owing to the fact that some Roche Freedman lawyers own AVAX tokens, or have a personal equity interest in Ava Labs, is meritless. The result of this lawsuit would not have any particularized effect on Ava Labs or the AVAX crypto-asset. Ava Labs and AVAX do not compete with the Exchange Defendants, Tether, Bitfinex, or USDT. In fact, Tether and Bitfinex leverage the AVAX ecosystem and support its efforts.[2] And the Exchange Defendants facilitate the sale of AVAX on their platforms.

    But even if Defendants are competitors of Ava Labs or AVAX (they are not), it does not create a disqualifying conflict here. Lawyers that sue Microsoft on behalf of a class do not need to disclose that they hold shares in Apple. That's because "the mere existence of financial or business interests does not warrant disqualification." *Power Play 1 LLC v. Norfolk Tide Baseball Club, LLC,* No. 17CV4831, 2017 WL 5312193, at *4 (S.D.N.Y. Nov. 13, 2017). "Rather, there must be a 'significant risk' that these interests will 'adversely affect[ ]' the lawyer's exercise of professional judgment on behalf of the client." *Id*. (citing N.Y. Rule of Prof'l Conduct 1.7(a)(2) (finding that even though a lawyer's financial arrangement simply seemed "unseemly," the movant failed to explain how the lawyer's "financial and business interests . . . would impair his professional judgment or how it was adverse to Defendants' interests"). Defendants have done nothing to show such a "significant risk" exists in this case.

    None of the co-lead counsel in this case is pursuing this litigation for any collateral purpose, and there is no basis for that assertion beyond Mr. Roche's improper and false statements (which themselves don't even specifically reference this case).

---

[1] https://el33th4x0r.medium.com/my-statement-about-the-crypto-leaks-lies-ef2005da752.

[2] https://medium.com/avalancheavax/tether-token-usdt-launches-on-avalanche-baf5a313f1a7.

The Honorable Katherine Polk Failla
September 2, 2022
Page 3 of 5

**2. There could not have been, and has not been, any sharing of confidential discovery material.**

Defendants' letter also voices a "concern" that Mr. Roche may be "misusing information that he learns through litigation" including information produced in this case. First and foremost, Mr. Roche and the Firm can confirm that no confidential discovery material has ever been shared with Ava Labs (or any third party). Roche Decl. ¶ 5. Nor would we ever do that.

Importantly, Mr. Roche's comments do not actually include a statement that he shared confidential discovery materials and he's explained that is not what he meant. The actual statement was:

> because I sue half the companies in the space, I know where the market is going, I believe, better than one of the top ten people in the world. I've seen the insides of every crypto company [video cuts mid-sentence].

Mr. Roche's declaration explains that what he intended to convey was that due to the numerous suits he has filed in this space, dozens of whistleblowers and other insiders have sent him information that has proved useful in pursuing class action claims. Roche Decl. ¶ 6.

**3. Mr. Roche's comments do not reflect the Firm's beliefs about jurors, class members, or class actions.**

The inappropriate comments Mr. Roche made regarding (i) jurors and class members, and (ii) his approach to class actions and intention on how and why to resolve them, do not reflect the view of the Firm or any of the other 24 other lawyers practicing at the Firm. Indeed, Mr. Roche only made these comments under the influence of alcohol.

Nonetheless, these statements are one of the reasons he has promptly withdrawn from this case, from the Firm's other class actions, and has been screened from them.

In sum, none of the alleged factual impropriety that Defendants frame as the foundation for their request to disqualify the Firm has actually occurred, and any optical issue should be cured based on Mr. Roche's withdrawal, screening, and forfeiture.

**C.     DEFENDANTS' PURPORTED CONCERNS ABOUT THE DISCOVERY PROCESS DO NOT SUPPORT THE FIRM'S DISQUALIFICATION**

In support of their request to terminate the Firm as co-lead counsel, Defendants argue that Mr. Roche's statements "raise grave concerns . . . regarding the motivations behind filing this lawsuit for which discovery has been sought, and whether the highly sensitive, confidential information the B/T Defendants have provided is being misused." This claim cannot be squared with Defendants' later recognition in their letter that Plaintiffs in this action are also represented by two other law firms. In other words, even crediting Defendants' argument that Mr. Roche's statements raise concerns about the motives for initiating this lawsuit, the complaint was also

The Honorable Katherine Polk Failla
September 2, 2022
Page 4 of 5

signed by two other law firms who have conducted a good faith inquiry into the merits of this case and the claims have already withstood a motion to dismiss.

The same is true of Plaintiffs' discovery requests, which Defendants characterize as having "no apparent link to the claims and defenses in this lawsuit." Obviously Plaintiffs' disagree, but more importantly, those discovery requests were reviewed and approved by the two other law firms that Defendants' have already told the Court should remain in the case. We appreciate that Mr. Roche's statements and the ensuing publicity have created a regrettable distraction, but they do not provide a basis for *the Firm's* disqualification.

Moreover, to the extent Defendants intend to create a distraction or spend further time on this issue, the Firm's removal from this action will not prevent them from pursuing these efforts.

**D.      THE FIRM'S STATUS AS CO-COUNSEL BENEFITS THE CLASS**

**1.   RF's continued participation in this case is in the best interests of the class.**

Roche Freedman's participation as co-lead counsel will continue to benefit the proposed class. The Firm's lawyers who would remain working on the case include the principal lawyers who helped formulate the original complaint, *i.e.*, Vel Freedman and Joseph Delich. In addition to those two attorneys, many of the lawyers from the Firm that would remain on this case have the most institutional knowledge of the facts and law underlying the case. Their contribution of many thousands of hours on the case to date have been invaluable and their removal from the case would be detrimental to the class's interest.

Finally, these same attorneys are those working on the Firm's many other crypto-related cases and class actions. All of these facts thus stand to continue to benefit the named Plaintiffs and the proposed class. The Court carefully appointed three firms to represent the named Plaintiffs, considering their respective resources and areas of expertise, and those rationales continue to counsel in favor of the three-firm team that has been working effectively to date.

**2.   The named plaintiffs request the Firm remain as co-lead counsel.**

The named Plaintiffs request that the Firm remain as co-lead counsel. This is reflected in their attached affidavits. Jason Leibowitz Decl.; Benjamin Leibowitz Decl.; Aaron Leibowitz Decl.; Matt Script Decl.; Pinchas Goldshtein Decl.

Having conceived of and filed the lawsuit, the Firm has the original and closest relationships with the named Plaintiffs. These Plaintiffs understand the relevant facts, have reviewed the videos, read both letters from Defendants, and are adamant the Firm remain on the case. They all state that they do not believe or see how they, or the class, would benefit from removing the Firm's crypto-related expertise from the current team of lawyers that have been diligently prosecuting the case.

---

Roche Freedman LLP

The Honorable Katherine Polk Failla
September 2, 2022
Page 5 of 5

Moreover, they have all signed declarations stating that they "have never heard or seen anything that would in anyway support the concerns raised by the Defendants." and that "RF has only ever been concerned about the best interests of the class."

These individuals have already dedicated a substantial amount of their time and energy to the case, and they intend to remain as lead Plaintiffs. Accordingly, we respectfully submit that their views are entitled to significant weight and their opinions should be considered by the Court.

\* \* \* \* \*

We note that what is in the best interests of the proposed class in this case overlaps with what the Firm believes is fair and equitable under the circumstances. In speaking as he did, Mr. Roche engaged in a serious lapse of judgment. However, the extreme remedy of disqualifying the entire Firm, which would have the effect of punishing all of the Firm's lawyers for Mr. Roche's lapse in judgment (which amounts to statements that were either untrue or misunderstood), seems disproportionate and unwarranted.

Finally, to the extent the Court is considering a formal request to disqualify Roche Freedman from this matter, we respectfully request that the Court first schedule a conference to address these issues and allow the Firm to submit additional evidence to address any specific concerns that the Court may have.

Respectfully submitted,

*/s/ Velvel (Devin) Freedman*

Devin "Vel" Freedman
Edward Normand
Joseph M. Delich
ROCHE FREEDMAN LLP
99 Park Avenue, 19th Floor
New York, NY 10016
vel@rochefreedman.com
tnormand@rochefreedman.com
jdelich@ rochefreedman.com

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Tether and Bitfinex Crypto Asset Litigation | Case No. 19 Civ. 9236 (KPF) |

I, Kyle Roche, declare as follows:

1.      I am a partner at Roche Freedman LLP ("Firm").

2.      I have reviewed the videos referenced by the Defendants in this action. Those videos were illegally taken without my knowledge or consent during meetings that occurred in in London on January 27, 2022.  I was invited to London under the false pretense of pitching a venture capital investment, but I now understand that the real reason I was brought there was through a scheme that was executed by a defendant in a different lawsuit the Firm recently filed. The purpose of this scheme was to surreptitiously obtain comprising recordings of me.

3.      I deeply regret making many of the statements I made during these meetings as they are not only inconsistent with the manner in which I have practiced law, but also because some of the statements were false.

4.      The Firm has never filed a class action at the direction of or for the benefit of another Firm client. This case is no exception. The sole reason we filed this action was for the benefit of the named plaintiffs in this action and the other members of the class.  We filed the action at the direction of the named plaintiffs. We have not shared any confidential information from this lawsuit with any third party, including other clients of the firm.

5.      I have never disclosed or used, for any collateral purpose, any confidential information from any lawsuit—including this lawsuit. Indeed, at the time the recordings took place (January 27, 2022), there had been no confidential documents produced by any party.

6.      The statement I made in one of the video recordings was: "because I sue half the companies in the space, I know where the market is going, I believe, better than one of the top ten people in the world. I've seen the insides of every crypto company [video cuts]." What I intended to convey was that due to the numerous suits I've filed in this space, many whistleblowers and other insiders send information that has proved valuable in pursuing class action claims.

7.      None of the co-lead counsel in this matter have served any discovery requests for any purpose collateral to the prosecution of the claims in this case. All of the initial discovery requests were derived from information contained in the Amended Complaint or sourced from publicly available material, including foreign documents and were solely intended to obtain information material to the claims and defenses in this matter.

8.      The comments I made regarding the nature of jury trials, jurors, and absent class members have nothing to do with the Firm's views and are not even representative of my own personal views. My comments in the video were highly inappropriate, made while I was intoxicated, and I deeply regret my statements.

9.      While the published videos are carefully edited and spliced to remove context and paint me in the worst possible light, the fact remains that my actions and words were inexcusable. I have spent years helping build the Firm's crypto-asset practice, and I'm ashamed that my conduct called into question the excellent work the attorneys at the Firm have done pursuing the interests of class members across numerous and innovative class actions in the space.

10.    I have withdrawn from this case, been screened from the matter, and will not receive any financial interest in this action.

11.    I respectfully request that this Court accept my motion to withdraw but that it not terminate the Firm as Co-Lead Counsel. The expertise of the other attorneys working on this matter from the Firm will continue to add significant value to the Proposed Class.

12.    I declare under penalty of perjury that the foregoing is true and correct.


Dated September 2, 2022


Kyle W. Roche

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

In re Tether and Bitfinex Crypto Asset Litigation

Case No. 19 Civ. 9236 (KPF)

## **Declaration of Aaron Leibowitz**

I, Aaron Leibowitz, based on my personal knowledge, declare as follows:

1.      I am a named plaintiff in this case.

2.      I retained Roche Freedman LLP ("RF") to pursue this action as a result of harm I suffered from the purchase of artificially inflated crypto-commodities because I believe RF is uniquely qualified to serve both the named plaintiffs and the proposed class in this action.

3.      Throughout the litigation, I have participated in monthly calls where Co-Lead Counsel provides us updates on the case.

4.      I reviewed the video clips of Kyle Roche published by the Crypto Leaks website on August 26, 2022.

5.      I understand RF has removed Kyle Roche from the case, its entire class action practice group, has screened him from receiving and/or participating in the Firm's class actions, and directed him to obtain ethics training. I also understand Mr. Roche has forfeited any financial interest in this litigation.

6.      I have also reviewed the Bitfinex, Tether, Bittrex, and Poloniex Defendants' letters seeking to have the entire RF firm be terminated as counsel from this case.

7.      In all my interactions and discussions with RF attorneys, I have never heard or seen anything that would in anyway support the concerns raised by the Defendants. RF has only ever been concerned about the best interests of the class.

8.      I retained Roche Freedman LLP on September 3, 2019. I worked with attorneys Kyle Roche, Velvel Freedman, and Joseph Delich on the drafting of the initial complaint (ECF No. 1). All allegations in that complaint were sourced from materials that were obtained through online resources – including documents Roche Freedman had to translate from foreign materials.

9.      I strongly oppose Defendants' request and believe that such relief is not in the best interests of the class. I know that the claims at issue in this case will require co-lead counsel to oversee and direct blockchain forensic experts to show the manipulation of crypto-commodities.

Given RF's unique and market leading experience in this space, their creativity, and the work done to date by RF, I believe the class will be prejudiced if RF is terminated.

10.     I also understand that if RF is terminated, Selendy Gay Elsberg PLLC and Schneider Wallace Cottrell Konecky LLP would remain on co-lead counsel in this case. That would not address my significant concerns that terminating RF would leave the class without the benefit of its crypto-asset litigation experience and thereby result in prejudice.

11.     I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 1, 2022

Aaron Leibowitz (Sep 1, 2022 21:40 EDT)

Aaron Leibowitz

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Tether and Bitfinex Crypto Asset Litigation | Case No. 19 Civ. 9236 (KPF) |

### Declaration of Benjamin Leibowitz

I, Benjamin Leibowitz, based on my personal knowledge, declare as follows:

1.      I am a named plaintiff in this case.

2.      I retained Roche Freedman LLP ("RF") to pursue this action as a result of harm I suffered from the purchase of artificially inflated crypto-commodities because I believe RF is uniquely qualified to serve both the named plaintiffs and the proposed class in this action.

3.      Throughout the litigation, I have participated in monthly calls where Co-Lead Counsel provides us updates on the case.

4.      I reviewed the video clips of Kyle Roche published by the Crypto Leaks website on August 26, 2022.

5.      I understand RF has removed Kyle Roche from the case, its entire class action practice group, has screened him from receiving and/or participating in the Firm's class actions, and directed him to obtain ethics training. I also understand Mr. Roche has forfeited any financial interest in this litigation.

6.      I have also reviewed the Bitfinex, Tether, Bittrex, and Poloniex Defendants' letters seeking to have the entire RF firm be terminated as counsel from this case.

7.      In all my interactions and discussions with RF attorneys, I have never heard or seen anything that would in anyway support the concerns raised by the Defendants. RF has only ever been concerned about the best interests of the class.

8.      I retained Roche Freedman LLP on September 3, 2019. I worked with attorneys Kyle Roche, Velvel Freedman, and Joseph Delich on the drafting of the initial complaint (ECF No. 1). All allegations in that complaint were sourced from materials that were obtained through online resources – including documents Roche Freedman had to translate from foreign materials.

9.      I strongly oppose Defendants' request and believe that such relief is not in the best interests of the class. I know that the claims at issue in this case will require co-lead counsel to oversee and direct blockchain forensic experts to show the manipulation of crypto-commodities.

Given RF's unique and market leading experience in this space, their creativity, and the work done to date by RF, I believe the class will be prejudiced if RF is terminated.

        10.    I also understand that if RF is terminated, Selendy Gay Elsberg PLLC and Schneider Wallace Cottrell Konecky LLP would remain on co-lead counsel in this case. That would not address my significant concerns that terminating RF would leave the class without the benefit of its crypto-asset litigation experience and thereby result in prejudice.

        11.    I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 1, 2022

*Benjamin Leibowitz*

Benjamin Leibowitz (Sep 1, 2022 21:17 EDT)

Benjamin Leibowitz

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Tether and Bitfinex Crypto Asset Litigation | Case No. 19 Civ. 9236 (KPF) |

## Declaration of Jason Leibowitz

I, Jason Leibowitz, based on my personal knowledge, declare as follows:

1.      I am a named plaintiff in this case.

2.      I retained Roche Freedman LLP ("RF") to pursue this action as a result of harm I suffered from the purchase of artificially inflated crypto-commodities because I believe RF is uniquely qualified to serve both the named plaintiffs and the proposed class in this action.

3.      Throughout the litigation, I have participated in monthly calls where Co-Lead Counsel provides us updates on the case.

4.      I reviewed the video clips of Kyle Roche published by the Crypto Leaks website on August 26, 2022.

5.      I understand RF has removed Kyle Roche from the case, its entire class action practice group, has screened him from receiving and/or participating in the Firm's class actions, and directed him to obtain ethics training. I also understand Mr. Roche has forfeited any financial interest in this litigation.

6.      I have also reviewed the Bitfinex, Tether, Bittrex, and Poloniex Defendants' letters seeking to have the entire RF firm be terminated as counsel from this case.

7.      In all my interactions and discussions with RF attorneys, I have never heard or seen anything that would in anyway support the concerns raised by the Defendants. RF has only ever been concerned about the best interests of the class.

8.      I retained Roche Freedman LLP on September 3, 2019. I worked with attorneys Kyle Roche, Velvel Freedman, and Joseph Delich on the drafting of the initial complaint (ECF No. 1). All allegations in that complaint were sourced from materials that were obtained through online resources – including documents Roche Freedman had to translate from foreign materials.

9.      I strongly oppose Defendants' request and believe that such relief is not in the best interests of the class. I know that the claims at issue in this case will require co-lead counsel to oversee and direct blockchain forensic experts to show the manipulation of crypto-commodities.

Given RF's unique and market leading experience in this space, their creativity, and the work done to date by RF, I believe the class will be prejudiced if RF is terminated.

10.    I also understand that if RF is terminated, Selendy Gay Elsberg PLLC and Schneider Wallace Cottrell Konecky LLP would remain on co-lead counsel in this case. That would not address my significant concerns that terminating RF would leave the class without the benefit of its crypto-asset litigation experience and thereby result in prejudice.

11.    I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 1, 2022

Jason Leibowitz (Sep 1, 2022 20:51 EDT)

Jason Leibowitz

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Tether and Bitfinex Crypto Asset
Litigation

Case No. 19 Civ. 9236 (KPF)

**Declaration of Matthew Script**

I, Matthew Script, based on my personal knowledge, declare as follows:

1.     I am a named plaintiff in this case.

2.     I retained Roche Freedman LLP ("RF") to pursue this action as a result of harm I suffered from the purchase of artificially inflated crypto-commodities because I believe RF is uniquely qualified to serve both the named plaintiffs and the proposed class in this action.

3.     Throughout the litigation, I have participated in monthly calls where Co-Lead Counsel provides us updates on the case.

4.     I reviewed the video clips of Kyle Roche published by the Crypto Leaks website on August 26, 2022.

5.     I understand RF has removed Kyle Roche from the case, its entire class action practice group, has screened him from receiving and/or participating in the Firm's class actions, and directed him to obtain ethics training. I also understand Mr. Roche has forfeited any financial interest in this litigation.

6.     I have also reviewed the Bitfinex, Tether, Bittrex, and Poloniex Defendants' letters seeking to have the entire RF firm be terminated as counsel from this case.

7.     In all my interactions and discussions with RF attorneys, I have never heard or seen anything that would in anyway support the concerns raised by the Defendants. RF has only ever been concerned about the best interests of the class.

8.     I strongly oppose Defendants' request and believe that such relief is not in the best interests of the class. I know that the claims at issue in this case will require co-lead counsel to oversee and direct blockchain forensic experts to show the manipulation of crypto-commodities. Given RF's unique and market leading experience in this space, their creativity, and the work done to date by RF, I believe the class will be prejudiced if RF is terminated.

9.     I also understand that if RF is terminated, Selendy Gay Elsberg PLLC and Schneider Wallace Cottrell Konecky LLP would remain on co-lead counsel in this case. That

would not address my significant concerns that terminating RF would leave the class without the benefit of its crypto-asset litigation experience and thereby result in prejudice.

      10.    I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 1, 2022

_____
Matthew Script (Sep 1, 2022 20:31 EDT)

Matthew Script

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Tether and Bitfinex Crypto Asset Litigation

Case No. 19 Civ. 9236 (KPF)

**Declaration of Pinchas Goldshtein**

I, Pinchas Goldshtein, based on my personal knowledge, declare as follows:

1.      I am a named plaintiff in this case.

2.      I retained Roche Freedman LLP ("RF") to pursue this action as a result of harm I suffered from the purchase of artificially inflated crypto-commodities because I believe RF is uniquely qualified to serve both the named plaintiffs and the proposed class in this action.

3.      Throughout the litigation, I have participated in calls with Mr. Freedman who provides me with updates on the case.

4.      I reviewed the video clips of Kyle Roche published by the Crypto Leaks website on August 26, 2022.

5.      I understand RF has removed Kyle Roche from the case, its entire class action practice group, has screened him from receiving and/or participating in the Firm's class actions, and directed him to obtain ethics training. I also understand Mr. Roche has forfeited any financial interest in this litigation.

6.      I have also reviewed the Bitfinex, Tether, Bittrex, and Poloniex Defendants' letters seeking to have the entire RF firm be terminated as counsel from this case.

7.      In all my interactions and discussions with RF attorneys, I have never heard or seen anything that would in anyway support the concerns raised by the Defendants. RF has only ever been concerned about the best interests of the class.

8.      I strongly oppose Defendants' request and believe that such relief is not in the best interests of the class. I know that the claims at issue in this case will require co-lead counsel to oversee and direct blockchain forensic experts to show the manipulation of crypto-commodities. Given RF's unique and market leading experience in this space, their creativity, and the work done to date by RF, I believe the class will be prejudiced if RF is terminated.

9.      I also understand that if RF is terminated, Selendy Gay Elsberg PLLC and Schneider Wallace Cottrell Konecky LLP would remain on co-lead counsel in this case. That

would not address my significant concerns that terminating RF would leave the class without the benefit of its crypto-asset litigation experience and thereby result in prejudice.

        10.     I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 1, 2022



                        Pinchas Goldshtein



**Debevoise & Plimpton LLP**
919 Third Avenue
New York, NY 10022
+1 212 909 6000

September 2, 2022

BY ECF AND EMAIL

The Honorable Katherine Polk Failla
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

*Re: In re Tether and Bitfinex Crypto Asset Litigation*, No. 19 Civ. 9236 (S.D.N.Y.)

Dear Judge Failla:

We represent the B/T Defendants in the above-referenced matter and write in response to Roche Freedman's September 2, 2022 filing regarding Plaintiffs' Motion for Kyle W. Roche to Withdraw as Attorney. (Dkt No. 232.)

While we appreciate that Mr. Roche and his firm have sought to address the issues raised in the B/T Defendants' August 31 letter to the Court (Dkt. No. 230), the evolving explanations they have offered regarding his videotaped statements – which implicate both Mr. Roche and the Roche Freedman law firm – offer little comfort with respect to the grave concerns raised by those statements.

Mr. Roche first claimed that his statements were taken "out of context" and/or were somehow elicited from him "using leading questions."[1] Notwithstanding that initial response, Mr. Roche then took the extraordinary step of withdrawing entirely from his firm's class action practice.

In its September 2 letter, Roche Freedman states that Mr. Roche's statements are "demonstrably false" but offers no such demonstration. That the initial complaint in this case was filed prior to when Roche Freedman reports it commenced a formal attorney-client relationship with Ava Labs says nothing about how it has conducted the lawsuit since that time, including potential misuse of the discovery process.[2] Beyond that, Roche Freedman relies on its own denials.

---

[1]  Kyle Roche, *My Response*, MEDIUM (Aug. 29, 2022), available at https://medium.com/ @kyleroche/my-response-b691563c255b [https://perma.cc/WH2G-ZD8B].

[2]  Notably, Mr. Roche stated on video that his firm and Ava Labs launched their businesses together at the same time in the same co-working space, he already knew the CEO of Ava Labs, and he received a percentage of the AVAX token supply in September 2019, prior to the commencement of this action.

The Honorable Katherine Polk Failla      2      September 2, 2022

In his affidavit, Mr. Roche himself states only that "some of the statements were false." The videos published on the Crypto Leaks website, however, do not show merely a discrete set of questionable statements but a comprehensive description of how Mr. Roche and his law firm abuse the class action process and discovery.

Importantly, the B/T Defendants expressed a serious and valid concern that the discovery process is being misused based on Mr. Roche's statement that he serves as Ava Lab's "crypto expert" and "know[s] where this market is going" because he "sue[s] half the companies in the space" and has "seen the insides of every single crypto company."[3] In his affidavit, relied on by Roche Freedman, Mr. Roche offers only the implausible explanation that he was not referring to information gained in discovery but to other information purportedly provided to him outside of litigation by "whistleblowers and other insiders."

Roche Freedman's assertion that Defendants have raised Mr. Roche's statements with the Court as a "litigation tactic" suggests that it fails to fully understand the egregious nature of those statements or the seriousness of the concerns they raise.

Respectfully submitted,

/s/ Elliot Greenfield

---

[3] *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm*, Roche Freedman, CRYPTO LEAKS (Aug. 26, 2022), available at https://cryptoleaks.info/case-no-3 [https://perma.cc/N433-63SC].




September 2, 2022

<u>**Via ECF and E-mail**</u>

The Honorable Katherine Polk Failla
U.S. District Court Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007

Re:     <u>*In re Tether and Bitfinex Crypto Asset Litigation*</u>, **19-cv-09236 (KPF)**

Dear Judge Failla:

Selendy Gay Elsberg PLLC ("<u>Selendy Gay Elsberg</u>") and Schneider Wallace Cottrell Konecky LLP ("<u>Schneider Wallace</u>") write in their capacity as interim class counsel, and specifically not on behalf of the named plaintiffs, in response to the letter dated September 2, 2022, by Roche Freedman LLP ("<u>Roche Freedman</u>"), ECF No. 232. The named plaintiffs have all reviewed this letter and stated that they disagree with its content and recommendation; in short, the named plaintiffs express a strong preference that Roche Freedman remain in the case.[1] Undersigned counsel nevertheless believe they have a duty to the Court and the putative class to inform the Court of their views. *See* Fed. R. Civ. P. 23(g)(3) (stating interim class counsel is appointed to "act on behalf of a putative class.").

As explained below, Selendy Gay Elsberg and Schneider Wallace believe that Roche Freedman's continued involvement in the litigation is not in the best interests of the class. Accordingly, we respectfully request that the Court terminate Roche Freedman's status as interim co-lead counsel. Selendy Gay Elsberg and Schneider Wallace are ready and willing to continue representing the class as interim co-lead counsel.

Selendy Gay Elsberg and Schneider Wallace became aware of video recordings of Kyle Roche, a founding partner of Roche Freedman, when they were published online on August 26, 2022.[2] In the recordings, Mr. Roche makes statements regarding the blockchain industry and his approach to class action litigation. On August 31, 2022, Mr. Roche (though not Roche Freedman) filed a motion to withdraw as counsel. ECF No. 229. Later that day, the B/T Defendants submitted

---

[1] Selendy Gay Elsberg and Schneider Wallace were not aware of the affidavits of the class representatives until they were filed as exhibits to Roche Freedman's letter. *See* ECF Nos. 232-2–232-6. Although Selendy Gay Elsberg and Schneider Wallace respect the opinions expressed in those affidavits, they believe their duty as interim class counsel is to "the interests of the class" as a whole. *See* Fed. R. Civ. P. 23(g)(4).

[2] *See Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman*, CRYPTO LEAKS (Aug. 26, 2022), *available at* https://cryptoleaks.info/case-no-3.

a letter asking the Court to terminate Roche Freedman as counsel for the class. ECF No. 230. The Exchange Defendants filed a letter on September 1, joining this request. ECF No. 231.[3]

Given the content of the recordings—and the fact that Mr. Roche, in an August 29, 2022 public response, did not deny the recordings' authenticity[4]—Selendy Gay Elsberg and Schneider Wallace asked Roche Freedman to withdraw as counsel to protect the interests of the class. Roche Freedman declined to withdraw.

Selendy Gay Elsberg and Schneider Wallace are not able to evaluate the credibility of Roche Freedman's statements concerning Ava Labs, AVAX tokens, or Mr. Roche's position at his firm or his financial interest in this litigation. However, Roche Freedman's continued involvement as counsel in the case is contrary to the best interests of the class. Roche Freedman's continued representation of the class would likely spawn significant discovery and motion practice as to the veracity and/or import of the allegations. These issues are likely to unnecessarily distract from the merits of this dispute, and can be avoided by the removal of Roche Freedman as class counsel.

Selendy Gay Elsberg and Schneider Wallace are both experienced and capable class counsel, with expertise in litigation concerning digital assets, and will continue to prosecute this action on behalf of the class as interim co-lead counsel. For example, Selendy Gay Elsberg has been appointed as co-lead counsel in numerous class actions in this district where the plaintiffs' allegations involve the technical details of dozens of different crypto-assets.

To protect the interests of the putative class, we respectfully request that the Court terminate Roche Freedman's appointment as interim co-lead counsel.

---

[3] Selendy Gay Elsberg and Schneider Wallace disagree with Defendants' claims that Plaintiffs have sought "information that has no apparent link to the claims and defenses in this lawsuit," ECF No. 230 at 2, or which "related to broad aspects of the cryptocurrency industry but did not appear related to any of the claims or defenses in this matter," ECF No. 231 at 2 n.1. Rather than air that dispute here, Plaintiffs will continue to meet and confer with Defendants in an effort to resolve any remaining discovery issues without Court intervention. *See* ECF No. 228 at 2.

[4] https://medium.com/@kyleroche/my-response-b691563c255b

Respectfully submitted,

/s/ Caitlin Halligan
Philippe Z. Selendy
Caitlin Halligan
Andrew R. Dunlap
SELENDY GAY ELSBERG PLLC
1290 Sixth Avenue
New York, NY 10104
pselendy@selendygay.com
challigan@selendygay.com
adunlap@selendygay.com

/s/ Todd M. Schneider
Todd M. Schneider (*pro hac vice*)
Jason H. Kim (*pro hac vice*)
Matthew S. Weiler (*pro hac vice*)
SCHNEIDER WALLACE COTTRELL
KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
tschneider@schneiderwallace.com
jkim@schneiderwallace.com
mweiler@schneiderwallace.com

*Interim Lead Counsel and Attorneys for Plaintiffs and the Proposed Class*

Exhibit B

IN THE CIRCUIT COURT FOR THE
15TH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

Ramona Ang, as trustee of the
Tulip Trust,

CASE NO: 50-2021-CA-004758-XXXX-MB

      plaintiff,

        v.

Ira Kleiman, as personal representative
of the Estate of David Kleiman

      defendant,

and

W&K Info Defense Research, LLC,
and Lynn Wright,

      nominal defendants.

_____/

## TULIP TRUST'S FIRST REQUEST FOR ADMISSIONS TO ROCHE FREEDMAN, LLP

    Plaintiff Ramona Ang, as trustee for Tulip Trust, under Fla. R. Civ. P. 1.370, request that

Roche Freedman, LLP admit or deny each of the requests set forth below within 30 days.

## I.     INSTRUCTIONS

    A.     As to each statement, you shall specifically admit or deny the statement. If denied,

the denial must fairly meet the substance of the requested admission. If you qualify your answer

or deny any part of the matter for which admission is requested, you shall admit so much of the

statement as is true and qualify or deny the remainder.

    B.     If you object that a term or phrase is vague or ambiguous, you shall respond with

its understanding of the term or phrase and specifically admit or deny the statement.

## II.    DEFINITIONS

A.      The terms "RF," "you," "your," "yours," or "yourself" shall refer to Roche

Freedman, LLP, including, but not limited to, any attorney, accountant, contractor, employee, or

consultant affiliated with RF, and any person or entity acting or purporting to act on RF's behalf.

B.      The term "tokens" shall mean digital assets that are used as currency.

C.      The term "MOU" shall refer to the Memorandum of Understanding dated

December 27, 2019, and signed by the then-partners of RF.

D.      The term "Gun" shall refer to Emin Gun Sirer.

E.      The term "Ava Labs" shall refer to Ava Labs, Inc., a Delaware Corporation whose

principal place of business is 263 S. 4th St. Brooklyn NY, NY 11211.

## III.    REQUESTS FOR ADMISSION

1. Admit that Kyle Roche made the statements recorded in the videos found at
   https://cryptoleaks.info/case-no-3.

2. Admit that the video recorded statements found at https://cryptoleaks.info/case-no-3
   made by Kyle Roche were true.

3. Admit that RF has represented Ava Labs.

4. Admit that RF owns approximately 1% of the shares in Ava Labs.

5. Admit that Ava Labs is an undisclosed principal of RF.

6. Admit that the MOU addresses how Ava Labs tokens will be distributed between the
   partners of RF.

7. Admit that Kyle Roche made a deal with Gun, whereby RF would provide legal services
   in exchange for a certain percentage of the token supply.

8. Admit that Kyle Roche was the second person listed on the Ava Labs capitalization table.

9. Admit that Kyle Roche obtained approximately one percent of Ava Labs' equity.

10. Admit that Kyle Roche obtained approximately one percent of Ava Labs' tokens.

11. Admit that Kyle has used litigation as a strategic instrument to support Ava Labs.

12. Admit that RF has used litigation as a strategic instrument to support Ava Labs.

13. Admit that Ava Labs made Kyle Roche an equity partner in appreciation for his use of litigation to as a strategic instrument for Ava Labs.

14. Admit that your lawsuits against blockchain companies or entities has enabled you to see inside their operations.

15. Admit that you sue blockchain companies or entities to be able to see inside their operations.

16. Admit that you sue blockchain companies or entities to be able to learn their secrets.

17.  Admit that you sued Emre Aksoy at Gun's behest.

18. Admit that you consider Dr. Craig Wright to be Gun's archnemesis.

19. Admit that you sued Dr. Craig Wright to please Gun.

20. Admit that you sued Dr. Craig Wright to devalue Bitcoin Satoshi Vision.

21. Admit that you sued Dr. Craig Wright to "take him down."

22. Admit that the breach of partnership claims against Dr. Craig Wright were a mere pretext for a lawsuit designed to vindicate Gun's personal vendetta.

23. Admit that you do not care about settling lawsuits.

24. Admit that you would rather win a $100 million judgment for your client and get good press, than settle for $500 million.

25. Admit that you have shared with Ava Labs non-public information that you learned about its competitors.

26. Admit that you sue blockchain companies or entities to be able to learn their secrets.

Respectfully Submitted,


RIVERO MESTRE LLP
*Attorneys for Tulip Trust*
2525 Ponce de Leon Blvd., Suite 1000
Miami, Florida 33134
Tel.: (305) 445-2500
Fax: (305) 445-2505


By: /s/ Andrés Rivero
    Andrés Rivero

Florida Bar No.: 613819
arivero@riveromestre.com
Alan H. Rolnick
Florida Bar No.: 715085
arolnick@riveromestre.com
Robert J. Kuntz, Jr.
Florida Bar No. 94668
rkuntz@riveromestre.com

## CERTIFICATE OF SERVICE

I certify that on September 14, 2022, a copy of this motion was served by email, pursuant to

Florida Rule of Judicial Administration 2.516(b)(1), on all counsel of record.

By: /s/ Andrés Rivero
ANDRES RIVERO

# Exhibit C

IN THE CIRCUIT COURT FOR THE
15TH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

Ramona Ang, as trustee of the
Tulip Trust,

CASE NO: 50-2021-CA-004758-XXXX-MB

      plaintiff,

        v.

Ira Kleiman, as personal representative
of the Estate of David Kleiman

      defendant,

and

W&K Info Defense Research, LLC,
and Lynn Wright,

      nominal defendants.

_____/

## TULIP TRUST'S FIRST REQUEST FOR
## <u>PRODUCTION OF DOCUMENTS TO ROCHE FREEDMAN, LLP</u>

    Plaintiff Ramona Ang, as trustee for Tulip Trust, under Fla. R. Civ. P. 1.350, request that

Roche Freedman, LLP produce the requested documents for inspection and copying on or before

30 days from the date of this request.

                        Respectfully Submitted,

                        RIVERO MESTRE LLP
                        *Attorneys for Tulip Trust*
                        2525 Ponce de Leon Blvd., Suite 1000
                        Miami, Florida 33134
                        Tel.: (305) 445-2500
                        Fax: (305) 445-2505

                        By: <u>/s/ Andrés Rivero</u>
                           Andrés Rivero
                           Florida Bar No.: 613819
                         arivero@riveromestre.com

Alan H. Rolnick
Florida Bar No.: 715085
arolnick@riveromestre.com
Robert J. Kuntz, Jr.
Florida Bar No. 94668
rkuntz@riveromestre.com

## **CERTIFICATE OF SERVICE**

I certify that on September 14, 2022, a copy of this motion was served by email, pursuant to

Florida Rule of Judicial Administration 2.516(b)(1), on all counsel of record.

By: /s/ Andrés Rivero
ANDRES RIVERO

## I.   DEFINITIONS

A.   The word "document" shall mean any written or graphic matter or other means of preserving thought or expression, and all tangible things from which information or thoughts can be processed or transcribed, and all copies containing additional matter, however produced or reproduced, of any kind and description, in your actual or constructive possession, custody, care, or control, that pertain directly or indirectly, in whole or in part, either to any of the subjects listed below or to any other matter relevant to this action, or which are themselves listed below as specific documents, including, but not limited to, the following: communications, correspondence, memoranda, notes, messages, letters, telegrams, teletype messages, facsimiles, e-mails, bulletins, diaries, chronological data, minutes, books, reports, charts, ledgers, invoices, worksheets, receipts, computer memory, word processing data, computer printouts, work-product schedules, account records, patents, licenses, legal pleadings, minutes of directors' meetings, minutes of shareholders' or other meetings, work assignments, transaction files, statistical records, financial records, bank records, security agreements, testing reports, newspaper or magazine articles, stories or clippings, affidavits, contracts, transcripts, surveys, graphic representations of any kind, photographs, graphs, microfilms, videotapes, tape recordings, or motion pictures or other films, or information maintained in any electronic medium (including, but not limited to, information found in computer hard drives, flash drives, USB drives, pocket drives, CDs, backup tapes, metadata, and pdf).

B.   "Relating to" and "related to" shall mean the following: relates to, refers to, pertains to, contains, concerns, describes, embodies, mentions, constitutes, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts, or contradicts.

C.      The term "Gun" shall refer to Emin Gun Sirer.

D.      The term "Ava Labs" shall refer to Ava Labs, Inc., a Delaware Corporation whose principal place of business is 263 S. 4th St. Brooklyn NY, NY 11211.

E.      The term "Avalanche" shall refer to Ava lab's contracting platform.

F.      The term "Sekniqi" shall refer to Kevin Sekniqi.

G.      The terms "RF," "you," "your," "yours," or "yourself" shall refer to Roche Freedman, LLP, including, but not limited to, any attorney, accountant, contractor, employee, or consultant affiliated with RF, and any person or entity acting or purporting to act on RF's behalf.

H.      The term "MOU" shall refer to the Memorandum of Understanding dated December 27, 2019, and signed by the then-partners of RF.

## II.      INSTRUCTIONS

1.      You should produce the documents as follows: (1) in the exact order in which they are kept in the ordinary course of business; or (2) classified according to the specific request(s) to which they are responsive.

2.      To the extent that you do not have possession, custody, or control of any documents identified as responsive to a particular request herein, please indicate the lack of possession, custody, existence, or control of the responsive documents in your response.

3.      All electronic documents and e-mail are requested to be produced in electronic format by a forensically sound method, with all original metadata preserved and intact.

4.      ESI should be produced as follows:

      a.      Email, instant messaging, calendar, contacts, and word processing files must be derived from the original electronic media and converted to single-page .tiff images with accompanying system metadata (e.g., author,

recipient(s), "cc" recipient(s), "bcc" recipient(s), date and time of creation and receipt, date and time of modification, etc.) and substantive metadata (e.g., the substance of the changes, etc.), with all attachments. All chronological metadata shall be standardized to Eastern Standard Time. The Plaintiffs reserve the right to request native format production for ESI. Upon such request, you shall produce specific documents (identified by Bates number or range) in original native electronic format.

b.      Dynamic files (e.g. databases, spreadsheets, project files, etc.) shall be produced in original native format with all accompanying metadata, along with all such software necessary to interpret the produced information if such software is not readily commercially available.

c.      For all ESI not specified above, production shall be made in native format with all accompanying metadata, along with all software necessary to interpret the produced information if such software is not readily commercially available, unless Plaintiffs specifically agree to a different form of production.

5.      This Request for Production of Documents does not seek the production of documents protected by the attorney-client privilege or work-product rule.  However, if you withhold production of a document requested here as privileged, work product or on any other basis, please state the following in a privilege log for each document withheld:

a.      the type of document (e.g., correspondence, memorandum, e-mail);

b.      the date of the document;

c.      the person(s) who signed the document;

     d.      the person(s) who received the document or a copy of it;

     e.      the reason for non-production; and

     f.      the substance of the document.

6.      If any document requested here was previously in your possession, custody, or control, but is no longer, state the following for each document in your response to this request for production of documents:

    a.   the type of document (that is, correspondence, memorandum, e-mail, etc.);

    b.   the date of the document;

    c.   any person who signed the document;

    d.   any person who received the document or a copy of it;

    e.   any person who is presently in possession of the document;

    f.   the substance of the document; and

    g.   the disposition of the document, including the date of disposition.

### III.    DOCUMENTS REQUESTED

1. All documents related to RF's ownership interest in Ava Labs.

2. All documents related to RF's ownership interest in Ava Labs' tokens.

3. All documents related to the MOU.

4. All documents related to RF's engagement agreement with Ava Labs.

5. All documents related to Kyle Roche's ownership interest in Ava Labs.

6. All documents related to RF's ownership interest in Avalanche.

7. All documents related to Kyle Roche's ownership interest in Avalanche.

8. All documents related to Gun's ownership interest in RF.

9. All documents related to Sekniqi's ownership interest in RF.

10. All documents related to "shared workspace" between or among RF, Ava Labs, or Avalanche.

11. All documents related to any lease executed by RF for the "shared workspace" referred to in Request 10.

12. All documents related to any lease executed by the Ava Labs for the "shared workspace" referred to in Request 10.

13. All documents related to "academic writings" in your possession authored by either you, Gun, or both.

14. All documents related to Ava Labs' capitalization tables on which Kyle Roche's name appears.

15. All documents related to Ava Labs capitalization tables on which any member of RF appears.

16. All documents related to RF's use of straw plaintiffs to bring actions on behalf of Ava Labs in which Ava Labs did not appear.

17. All documents related to RF's communications with the Securities and Exchange Commission in which you attempted to direct regulator attention toward an Ava Labs' competitor.

18. All documents related to RF's communications with the Commodities Futures Trading Commission in which you attempted to direct regulator attention toward an Ava Labs' competitor.

19. All documents related to Kyle Roche's residence in Florida for tax purposes.

# Exhibit D

MADHTetD

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE TETHER AND BITFINEX
CRYPTO ASSET LITIGATION,

                      19 Civ. 9236 (KPF)

                      Decision

------------------------------x
                      New York, N.Y.
                      October 13, 2022
                      2:15 p.m.

Before:

               HON. KATHERINE POLK FAILLA,

               District Judge

                  APPEARANCES

ROCHE FREEDMAN LLP
    Attorneys for Plaintiffs
BY:  CONSTANTINE PHILIP ECONOMIDES
    DEVIN FREEDMAN
    EDWARD JOHN NORMAND
    -and-
SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS LLP
BY:  TODD MICHAEL SCHNEIDER
    MATTHEW SINCLAIR WEILER
    -and-
SELENDY GAY ELSBERG PLLC
BY:  ANDREW RIGGS DUNLAP
    MITCHELL D. NOBEL

KIRBY McINERNEY LLP
      Attorneys for Consolidated Plaintiffs
BY:   KAREN M. LERNER
      DAVID E. KOVEL
    -and-
RADICE LAW FIRM, P.C.
BY:   JOHN D. RADICE

MADHTetD

```
 1                      APPEARANCES (Cont'd)

 2   DEBEVOISE & PLIMPTON, LLP (NYC)
          Attorneys for Defendants iFinex, BFXNA, BFXWW, Tether
 3   Holdings Limited, Tether Operations Limited, Tether
     International Limited, DigFinex, Giancarlo Devasini, Ludovicus
 4   Jan van der Velde, and Tether Limited
     BY:  ELLIOT GREENFIELD
 5        MELANIE BURKE
        MAEVE L. O'CONNOR
 6        -and-
     LAW OFFICES OF MICHAEL JASON LEE, APLC
 7        Attorneys for Defendant Potter
     BY:  MICHAEL JASON LEE
 8        -and-
     DILLON MILLER & AHUJA, LLP
 9   BY:  SUNJINA KAUR AHUJA
          CHRISTOPHER BEAL
10
     WILLKIE FARR & GALLAGHER LLP
11        Attorneys for Defendant Potter
     BY:  CHARLES DEAN CORDING
12        AMANDA PAYNE

13   NELSON MULLINS RILEY & SCARBOROUGH LLP
          Attorneys for Defendant Poloniex, LLC
14   BY:  MATTHEW G. LINDENBAUM
          ROBERT LAURI LINDHOLM JR.
15
     McNAUL EBEL NAWROT & HELGREN PLLC
16        Attorneys for Defendant Bittrex, Inc.
     BY:  ABBY FAITH RUDZIN
17        GREGORY HOLLON

18

19

20

21

22

23

24

25
```

MADHTetD

```
 1                 (The Court and all parties present remotely)

 2              THE COURT:  The case has been called.  I'm not going

 3      to ask the parties to identify themselves because I'm aware

 4      that my deputy has already taken appearances.

 5              I am now going to be giving an oral decision on the

 6      applications regarding Mr. Roche and the Roche Freedman firm,

 7      and I'm going to ask you all, please, to mute your phones as I

 8      do so, so that there aren't interruptions once I begin.  I'll

 9      give you a second or two to mute your phones at this time.

10              Now I will begin.

11              As always, I thank you, those of you who have given me

12      written and oral submissions on these points, and I do

13      genuinely and sincerely appreciate your giving me some

14      opportunities, some time, to consider what was said at the

15      October 3 oral argument and to reflect on what I think is a

16      very serious issue.  For the reasons that I am about to

17      outline, I am modifying my order appointing interim class

18      counsel to remove the Roche Freedman firm from that class

19      counsel.

20              This decision does not require extensive citation to

21      cases.  Unlike Roche Freedman's framing of the issue as one of

22      disqualification of a firm, I find that this dispute actually

23      arises under Federal Rule of Civil Procedure 23(d)(2), which

24      allows an order under Rule 23(d)(1) to be altered or amended

25      from time to time and to be combined with an order under
```

```
1    Rule 16.

2             The order in question is my February 27, 2020, order

3    by way of minute entry appointing lead plaintiff and interim

4    class counsel, and it is the latter portion that I am being

5    asked to revisit.  I have considered the views of the named

6    plaintiffs in this case.  They are the putative class

7    representative, but, ultimately, I conclude that their

8    preferred counsel structure is not in the best interests of the

9    class, and of course, if that causes any of the plaintiffs, the

10   named plaintiffs, to wish to exit the case, I will hear from

11   them when it is appropriate to do so.

12            But before I get to the legal analysis, I do want to

13   spend a moment on the reasons why I am revisiting my prior

14   order, and this is not to beat the proverbial dead horse, but

15   rather just to provide a factual framework for my decision.

16            In January of 2022, nearly two years after my

17   appointment of an interim class counsel team that included the

18   Roche Freedman firm and before the production of discovery in

19   this case, one of the principals at the Roche Freedman, Kyle

20   Roche, made a series of ill-advised comments suggesting, if not

21   asserting, his close ties to and financial interest in Ava

22   Labs, a research and development company that is involved in

23   developing the Avalanche platform and the AVAX cryptocurrency,

24   as well as Mr. Roche's strategic deployment of class action

25   litigation to aid Ava Labs both by focusing regulators on Ava's
```

MADHTetD

1   competitors and on obtaining confidential information

2   concerning those competitors through the class action process.

3        Mr. Roche claims that the video recordings of these

4   statements are highly edited and taken out of context, that he

5   was set up by a competitor, and that he was inebriated at the

6   time he made the statements.  All of that notwithstanding,

7   Mr. Roche has moved to withdraw from representing the class

8   plaintiffs in this case.  The Roche Freedman firm has

9   represented that it will or has walled him off financially from

10  receiving any fees from this case, and Mr. Roche is not

11  currently involved with the firm's plaintiff-side crypto-asset

12  class action practice.

13        Roche Freedman has suggested that this is sufficient

14  to allow them to remain on as one of the three interim class

15  counsel.  Their cocounsel, as well as defendants' counsel, and

16  an earlier contender for interim class counsel all disagree.

17        In an early effort to frame this issue, I considered

18  whether the factual bases for my decision to include Roche

19  Freedman in the trio of law firms appointed as interim class

20  counsel has changed.  That answer is an easy, indisputable yes.

21        At the February 24, 2020, oral argument, it was

22  Mr. Roche that I heard from first who began by explaining his

23  firm's expertise in the crypto-asset space, and in so doing

24  countering the position offering by the competing Robbins

25  Geller firm regarding the appropriate definition of the class.

MADHTetD

```
 1              Ms. Halligan then came in to explain the selling
 2    points of each firm and, more to the point, why I should
 3    appoint all three of them.  Roche Freedman for their -- her
 4    words, not mine -- unparalleled expertise in cryptocurrency;
 5    Schneider Wallace for their class action experience; and what
 6    was, I believe, then the Selendy & Gay firm, it's now Selendy
 7    Gay & Elsberg, for their experience with complex litigation and
 8    state law claims.
 9              Mr. Roche and Ms. Halligan's arguments convinced me to
10    appoint the three firms as interim class counsel despite my
11    initial expressed hesitancy to do so.
12              In my oral decision, which I believe was issued
13    February 27 of 2020, I remarked, and I'm quoting here, that
14    "what interests me about this case is that it is an interesting
15    combination of old and new.  The cryptocurrency laws is quite
16    novel and lots of issues and not a lot of resolution, but there
17    is a lot of established law out there with respect to the
18    pleading requirements, with respect to traditional antitrust
19    issues and RICO and the Commodities Exchange Act."
20              I included the Roche Freedman to address the novel
21    legal issues that were expected to arise.  I did so based
22    largely on the oral advocacy and anticipated involvement of
23    Mr. Roche, and he is no longer involved in the litigation.
24              But that analysis, while accurate, is also a bit
25    facile.  We are more than two and a half years removed from my
```

1    order appointing interim class counsel, and I daresay that we

2    all know more about crypto-assets, crypto exchanges,

3    stablecoin, and crypto commodities than we did when this

4    litigation began.  That said, Mr. Freedman, from the Roche

5    Freedman firm, has forcefully argued that the firm still has a

6    leg up on their cocounsel when it comes to this particular area

7    of the law.

8         On the other side of the equation is the additional

9    litigation that would ensue if the Roche Freedman firm were to

10   remain in the case.  Defense counsel has made it clear that

11   there will be additional litigation both during the discovery

12   phase if Roche Freedman continues to have access to materials

13   produced by the defendants under the protective order, and then

14   later in connection with the class certification stage.

15        I want to be clear, or I should say that I'm not

16   optimistic that discovery will be entirely free from disputes

17   if Roche Freedman is out of the case, particularly given the

18   disputes I've already resolved.  But I do acknowledge that

19   there will be additional litigation if and because the firm

20   remains in the case.

21        The question here distills to what counsel structure

22   is in the best interests of the putative class, and to me that

23   further distills to whether the incremental benefits of Roche

24   Freedman remaining as interim class counsel in terms of their

25   institutional knowledge and their expertise in one of the

MADHTetD

1    substantive areas of the law implicated by the case outweigh

2    the additional litigation burdens occasioned by their

3    involvement.  Ultimately, I find that the burdens outweigh the

4    benefits.

5           For starters, we are two years into this litigation.

6    Everyone has benefited from the on-the-job instruction we've

7    received on crypto-assets and crypto exchanges.  And as a

8    result, I believe that the Selendy and the Schneider firms are,

9    or quickly can be, up to speed on that area of the law.

10   Further, I believe that they already have superior expertise in

11   other areas of the law implicated by this litigation, including

12   the Sherman Act, the Commodities Exchange Act, common law

13   fraud, and issues of class action certification.  So in

14   consequence, I find that the putative class will not suffer any

15   loss in the quality of their representation if the Roche

16   Freedman firm is discontinued as interim class counsel.

17          Now, just to amend what I've just said, I said we're

18   two years into this litigation.  I think we're closer to three.

19   We've been in this litigation for several years.  Let me look

20   at the converse position, though.

21          The parties have been fighting since long before

22   Mr. Roche's disclosures were made.  I am concerned that

23   establishing another front for the parties' disputes will

24   derail this litigation.  What is more, I cannot be sure at this

25   time of the size of this new front.  So in this regard, I don't

MADHTetD

1   share Mr. Normand's view expressed in oral argument that this

2   additional litigation would be but a brief distraction and not

3   disabling.  These ancillary disputes will extend this

4   litigation, they cannot be dismissed summarily, and I don't

5   think that it's in the best interests of the class if they

6   persist.

7          Related to this point is my concern that Mr. Roche's

8   problems will extend to others at his firm or will otherwise

9   adversely impact the case before me.

10         Now, this is almost certainly a consequence of the

11  recency of these disclosures, but the fact is we, or anyone,

12  had not yet gotten to the bottom of the relationship that

13  Mr. Roche has or had with Ava Labs and, by extension, whether

14  the litigation strategies suggested in his recorded comments

15  were implemented by him with respect to Ava Labs or other

16  clients of the firm or by others at the firm.

17         It is too easy to say that Mr. Roche was drunk and

18  stupid.  His statements were coherent and logical and too

19  detailed for me to dismiss out of hand.  Roche Freedman has

20  offered a number of arguments seeking to mitigate or

21  contextualize these statements, but largely they do not

22  succeed.  For example, the firm asserts that their involvement

23  in the instant litigation, or their decision to bring the

24  instant litigation, predates the formation of or certainly the

25  retention by Ava Labs, and that may be.  But Mr. Roche's

MADHTetD

1    comments did not suggest that his strategic use of class action

2    litigation only came into existence after his dealings with Ava

3    Labs.  Similarly, even if I accept Roche Freedman's arguments

4    that the defendants in this litigation are not competitors of

5    Ava Labs, I cannot say that Mr. Roche's professed class action

6    litigation strategy was limited to that one client.

7            Furthermore, given what Mr. Roche did say on the

8    point, I am not comforted by the fact that he did not

9    specifically say in the recordings that he shared confidential

10   materials produced in discovery in this case.  And I completely

11   reject the counterargument that removing the Roche Freedman

12   firm as interim class counsel would somehow incentivize

13   misconduct by defense attorneys.

14           Nor am I persuaded after reading and considering

15   Mr. Roche's declaration that he didn't capitalize on synergies

16   between this litigation and the interests of other Roche

17   Freedman clients.  To begin, I currently don't accept his

18   current explanation that he was merely referring to

19   whistleblowers or insiders, given the comments that were made.

20           More fundamentally, the issues created by -- for

21   Mr. Roche by these disclosures are evolving.  They clearly

22   extend beyond this case.  I have only limited visibility into

23   these issues, and I will not make findings about what

24   Mr. Roche did or did not do or meant or did not mean based on a

25   two-and-a-half page declaration without a more extensive

MADHTetD

1    investigation.

2            Now, to be clear, I acknowledge that there is a

3    difference between Mr. Roche and the Roche Freedman firm, but

4    at this point in time, I have concerns about the firm as well.

5    I acknowledge that similar disclosures haven't been made about

6    other lawyers at the firm, but it remains the case that one of

7    the two named partners at the firm, and the very person who

8    persuaded me to add the Roche Freedman firm to the interim

9    class counsel team, touted a theory of class action litigation

10   that I believe amounts to improper purposes.

11           If Mr. Roche's boasts are true -- and, again, I can't

12   reject them out of hand -- then it would actually surprise me

13   if such an ethos were limited to Mr. Roche alone.  In any

14   event, the degree to which the Roche Freedman firm has

15   attempted to minimize Mr. Roche's statements gives me concern

16   that they don't appreciate the seriousness of those statements,

17   and I've already explained the dim view with which I hold the

18   firm's arguments in mitigation.

19           I want now to return to my earlier point, and that is

20   that allowing the Roche Freedman firm to continue as interim

21   class counsel with the metaphorical baggage they now carry is

22   not in the best interests of the class.  Put somewhat

23   differently, I see this as a case of subtraction by addition,

24   wherein three law firms will have a more difficult time

25   litigating this case than two law firms because of the

1    aftershocks of Mr. Roche's comments.

2          And to repeat, I do not believe that the class will

3    suffer any diminution in their representation if the Selendy

4    and the Schneider firms remain, and for all of these reasons, I

5    am amending my prior order to remove Roche Freedman as interim

6    class counsel.

7          There is one related issue to address, and that is

8    that the Kirby Radice team of attorneys argued that the best

9    course of action here was to start with a clean slate, whereby

10   the Kirby and Radice firms would take over at interim class

11   counsel and, if and as appropriate, new class plaintiffs could

12   be substituted in.

13         While I have given this option consideration, serious

14   consideration, I have ultimately rejected it.  We are too many

15   years into this litigation to switch horses entirely, and I see

16   nothing to suggest that the Selendy and the Schneider firms

17   have comparable issues that would impact their ability to

18   represent the putative class adequately.  So the Selendy and

19   the Schneider firms will remain interim counsel.

20         In short, I am granting Mr. Roche's earlier motion to

21   withdraw because I don't believe I have done that.  I am

22   modifying my prior order to remove Roche Freedman as one of the

23   three interim class counsel.  To the extent appropriate, I will

24   direct Roche Freedman to withdraw from any relevant protective

25   order entered in this case and to return any confidential

MADHTetD

```
1    materials that are covered by that agreement.

2            That is my decision in this case.  I thank you all for

3    listening to it, and I appreciate your allowing me to give it

4    as an oral decision rather than a written.

5            I wish you, your families, and your clients continued

6    safety and good health in this pandemic.

7            We are adjourned.  Thank you.

8            (Adjourned)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

# Exhibit E

IN THE CIRCUIT COURT FOR THE
15TH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

RAMONA ANG, as Trustee of the Tulip
Trust,

CASE NO: 50-2021-CA-004758-XXXX-MB

      Plaintiff,

v.

IRA KLEIMAN, as Personal Representative
of the Estate of David Kleiman,

      Defendant,

and

W&K INFO DEFENSE RESEARCH, LLC,
and LYNN WRIGHT,

                                /

      Nominal Defendants.

_____

**ROCHE FREEDMAN LLP'S RESPONSES AND OBJECTIONS TO
TULIP TRUST'S FIRST REQUEST FOR ADMISSIONS**

Pursuant to Florida Rules of Civil Procedure 1.280, 1.370, and 1.410, Non-Party Roche

Freedman LLP ("RF"), by and through its undersigned counsel, hereby responds and objects to

Tulip Trust's First Request for Admissions dated September 14, 2022 (the "Requests" and each a

"Request"), as follows:

**GENERAL OBJECTIONS**

1.      RF is not a party to this action and therefore has no obligation under the Florida

Rules of Civil Procedure or under Florida law to respond to requests for admission served pursuant

to Florida Rule of Civil Procedure 1.370.

2.      Ms. Ang's discovery requests seek information that is not even conceivably relevant. Her requests are frivolous and appear to have been made entirely for purposes of harassing RF and its clients. RF reserves the right to move for a protective and to seek sanctions against Ms. Ang and her counsel.

3.      To the extent RF responds to a Request, that response shall be by and on behalf of RF and will be limited to information currently available to it.

4.      These responses reflect RF's present knowledge, information, and belief, and therefore remain subject to change or modification based on further discovery of facts or circumstances that may come to RF's attention.  RF reserves the right to rely on any facts, documents, evidence, or other contentions that may develop or come to its attention at a later time and to supplement or amend the responses at any time prior to the trial in this action.  RF further reserves the right to raise any additional objections deemed necessary or appropriate in light of any further review.

5.      Any response to these Requests shall be subject to the entry of an appropriate confidentiality order.

6.      RF objects to the Requests to the extent that they seek information protected by the attorney-client privilege, the work-product doctrine, and/or any other applicable privilege, protection, or immunity.  RF will withhold and redact certain information that is subject to such privileges or protections.  To the extent that any inadvertent production of such information is made in response to the Requests, such production shall not constitute a waiver of any applicable privilege or protection.  RF reserves the right to obtain the return of such information and prohibit its use in any manner, and hereby requests the return of any such inadvertently produced

privileged information and reserves the right to object to the disclosure or use of such privileged information at any stage of these or any other proceedings.

7.      RF objects to the Requests to the extent that they are redundant or duplicative of other specific Requests.  Where information may be responsive to more than one Request, RF will provide that information only once.

8.      RF objects to any factual assumptions, implications, and explicit or implicit characterizations of facts, events, circumstances, or issues in the Requests.  RF's responses herein are not intended to mean that RF agrees with any factual assumptions, implications, or any explicit or implicit characterization of facts, events, circumstances, or issues in the Requests, and are without prejudice to RF's right to dispute facts and legal conclusions assumed in the Requests.

9.      RF makes these Responses and Objections without in any way waiving or intending to waive (a) any objections as to the competency, relevance, materiality, privileged status, or admissibility as evidence, for any purpose, of any information provided in response to the Requests; (b) the right to object on any ground to use of the information produced in response to the Requests at any hearing or trial; (c) the right to object on any ground at any time to a demand for further responses to the Requests; (d) the right to revise, amend, supplement, or clarify any of the responses and objections set forth herein; and (e) the right to move the Court for a protective order with respect to the Requests.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

10.     RF objects to the "Instructions" and "Definitions" insofar as they incorporate purported facts.  RF does not adopt or confirm the accuracy of any purported facts incorporated in any of the Instructions or Definitions.

11.     RF objects to Instruction "B" because it purports to impose on RF obligations greater than those imposed by the Florida Rules of Civil Procedure and/or Florida law. To the extent that RF is required to respond to any Request, it will do so in a manner that complies with the Florida Rules of Civil Procedure and Florida law.

12.     RF objects to Definition "A" as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. RF will interpret the defined terms to mean Roche Freedman LLP.

13.     RF objects to Definition "B" as vague and ambiguous to the extent that it limits the definition of "tokens" to assets that are "used as currency." RF will interpret "tokens" to mean any digital asset.

**SPECIFIC OBJECTIONS AND RESPONSES**

1.     Admit that Kyle Roche made the statements recorded in the videos found at https://cryptoleaks.info/case-no-3.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

2.     Admit that the video recorded statements found at https://cryptoleaks.info/case-no-3 made by Kyle Roche were true.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending

4

action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

       3.      Admit that RF has represented Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

       4.      Admit that RF owns approximately 1% of the shares in Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

       5.      Admit that Ava Labs is an undisclosed principal of RF.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not provide any information in response to this Request.

6.        Admit that the MOU addresses how Ava Labs tokens will be distributed between the partners of RF.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

7.        Admit that Kyle Roche made a deal with Gun, whereby RF would provide legal services in exchange for a certain percentage of the token supply.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

8.        Admit that Kyle Roche was the second person listed on the Ava Labs capitalization table.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of

Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not provide any information in response to this

Request.

      9.     Admit that Kyle Roche obtained approximately one percent of Ava Labs' equity.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request

on the grounds that the information sought is not "relevant to the subject matter of the pending

action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of

Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not provide any information in response to this

Request.

      10.     Admit that Kyle Roche obtained approximately one percent of Ava Labs' tokens.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request

on the grounds that the information sought is not "relevant to the subject matter of the pending

action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of

Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not provide any information in response to this

Request.

      11.     Admit that Kyle has used litigation as a strategic instrument to support Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request

on the grounds that the information sought is not "relevant to the subject matter of the pending

action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of

Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

7

harassment. Absent a court order, RF will not provide any information in response to this Request.

12.     Admit that RF has used litigation as a strategic instrument to support Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

13.     Admit that Ava Labs made Kyle Roche an equity partner in appreciation for his use of litigation to as a strategic instrument for Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

14.     Admit that your lawsuits against blockchain companies or entities has enabled you to see inside their operations.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not provide any information in response to this Request.

  15. Admit that you sue blockchain companies or entities to be able to see inside their operations.

  **RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

  16. Admit that you sue blockchain companies or entities to be able to learn their secrets.

  **RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

  17. Admit that you sued Emre Aksoy at Gun's behest.

  **RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not provide any information in response to this Request.

18.     Admit that you consider Dr. Craig Wright to be Gun's archnemesis.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

19.     Admit that you sued Dr. Craig Wright to please Gun.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

20.     Admit that you sued Dr. Craig Wright to devalue Bitcoin Satoshi Vision.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

21.     Admit that you sued Dr. Craig Wright to "take him down."

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

22.     Admit that the breach of partnership claims against Dr. Craig Wright were a mere pretext for a lawsuit designed to vindicate Gun's personal vendetta.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

23.     Admit that you do not care about settling lawsuits.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

11

24.     Admit that you would rather win a $100 million judgment for you client and get good press, than settle for $500 million.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

25.     Admit that you have shared with Ava Labs non-public information that you learned about its competitors.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not provide any information in response to this Request.

26.     Admit that you sue blockchain companies or entities to be able to learn their secrets.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not provide any information in response to this Request.

Dated: October 14, 2022                    Respectfully submitted,

                                           */s/ Velvel (Devin) Freedman*
                                           Velvel (Devin) Freedman, Esq.
                                           Florida Bar No. 99762
                                           **ROCHE FREEDMAN LLP**
                                           1 SE 3rd Ave., Suite 1240
                                           Miami, Florida 33131
                                           Telephone: (786) 924-2900
                                           vel@rochefreedman.com

                                           Stephen Lagos (*pro hac vice* pending)
                                           **ROCHE FREEDMAN LLP**
                                           99 Park Avenue, Suite 1910
                                           New York, NY 10016
                                           slagos@rochefreedman.com

                                           *Counsel to Defendant and Non-Party Roche
                                           Freedman LLP*

Exhibit F

IN THE CIRCUIT COURT FOR THE
15TH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

RAMONA ANG, as Trustee of the Tulip Trust,

      Plaintiff,

v.

IRA KLEIMAN, as Personal Representative of the Estate of David Kleiman,

      Defendant,

and

W&K INFO DEFENSE RESEARCH, LLC, and LYNN WRIGHT,

      Nominal Defendants.

CASE NO: 50-2021-CA-004758-XXXX-MB

/

_____

### ROCHE FREEDMAN LLP'S RESPONSES AND OBJECTIONS TO TULIP TRUST'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Florida Rules of Civil Procedure 1.280, 1.350, 1.351, and 1.410, Non-Party Roche Freedman LLP ("RF"), by and through its undersigned counsel, hereby responds and objects to Tulip Trust's First Request for the Production of Documents, dated September 14, 2022 (the "Requests" and each a "Request"), as follows:

### GENERAL OBJECTIONS

1.      RF is not a party to this action. Accordingly, pursuant to the Florida Rules of Civil Procedure 1.351 and 1.410, Ms. Ang was required to serve RF with a subpoena. Because Ms. Ang failed to do so, RF has no obligation to respond to her discovery requests.

1

2.      Ms. Ang's discovery requests seek information that is not even conceivably relevant. Her requests are frivolous and appear to have been made entirely for purposes of harassing RF and its clients. RF reserves the right to move for a protective and to seek sanctions against Ms. Ang and her counsel.

3.      RF reserves the right not to produce documents to the extent that the Requests (including the "Definitions" and "Instructions" contained therein) (a) are overly broad, unduly burdensome, and/or call for information that is obtainable from some other source that is more convenient, less burdensome, or less expensive; (b) are vague, ambiguous, duplicative, cumulative, or do not identify with reasonable particularity the information sought; (c) call for information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence; (d) seek to impose obligations on RF beyond or inconsistent with those required by Florida law and the Florida Rules of Civil Procedure; (e) purport to seek documents or information not in RF's actual possession, custody, or control; or (f) call for the production of publicly available documents or information, or documents or information to which Ms. Ang has equal or better access, and thus for which the burden on RF is equal to or greater than that of Ms. Ang in obtaining the requested documents and/or information.

4.      To the extent RF responds to a Request, that response shall be by and on behalf of RF and will be limited to documents or information currently available to it. RFwill not search for, collect, or produce documents in the possession of RF's advisors or attorneys or other third parties.

5.      These responses reflect RF's present knowledge, information, and belief, and therefore remain subject to change or modification based on further discovery of facts or circumstances that may come to RF's attention.  RF reserves the right to rely on any facts,

documents, evidence, or other contentions that may develop or come to its attention at a later time and to supplement or amend the responses at any time prior to the trial in this action.  RF further reserves the right to raise any additional objections deemed necessary or appropriate in light of any further review.

6.     Any production in response to these Requests shall be subject to the entry of an appropriate confidentiality order.

7.     RF objects to the Requests to the extent that they seek information protected by the attorney-client privilege, the work-product doctrine, and/or any other applicable privilege, protection, or immunity.  RF will withhold and redact certain information that is subject to such privileges or protections.  To the extent that any inadvertent production of such documents or information is made in response to the Requests, such production shall not constitute a waiver of any applicable privilege or protection.  RF reserves the right to obtain the return of such information and prohibit its use in any manner, and hereby requests the return of any such inadvertently produced privileged information and reserves the right to object to the disclosure or use of such privileged information at any stage of these or any other proceedings.

8.     RF objects to any Request seeking "all" documents or "all" communications containing, referring, or relating to any of the specific Requests on the grounds that to search for and produce such documents would impose undue burden and RF cannot ensure that it has located each and every document or communication responsive to a particular Request.

9.     RF reserves the right to produce documents responsive to the Requests on a rolling basis at a time, place, and manner to be agreed on by the parties.

10.     RF objects to the Requests to the extent that they are redundant or duplicative of other specific Requests.  Where information or a document may be responsive to more than one Request, RF will provide that information or produce that document only once.

11.     RF's assertion that it will produce documents in response to a particular Request is not to be construed as an admission that any document exists within any requested category or categories but solely as an assertion that RF will produce (consistent with these responses and objections) any non-privileged, responsive documents or information within its actual possession, custody, or control that can be located after a reasonable search conducted in good faith.

12.     RF objects to any factual assumptions, implications, and explicit or implicit characterizations of facts, events, circumstances, or issues in the Requests.  RF's responses herein are not intended to mean that RF agrees with any factual assumptions, implications, or any explicit or implicit characterization of facts, events, circumstances, or issues in the Requests, and are without prejudice to RF's right to dispute facts and legal conclusions assumed in the Requests.

13.     RF makes these Responses and Objections without in any way waiving or intending to waive (a) any objections as to the competency, relevance, materiality, privileged status, or admissibility as evidence, for any purpose, of any information provided in response to the Requests; (b) the right to object on any ground to use of the documents produced in response to the Requests at any hearing or trial; (c) the right to object on any ground at any time to a demand for further responses to the Requests; (d) the right to revise, amend, supplement, or clarify any of the responses and objections set forth herein; and (e) the right to move the Court for a protective order with respect to the Requests.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

14.      RF objects to the "Instructions" and "Definitions" insofar as they incorporate purported facts.  RF does not adopt or confirm the accuracy of any purported facts incorporated in any of the Instructions or Definitions.

15.      RF objects to Instructions 1, 2, and 6, because they purport to impose on RF obligations greater than those imposed by the Florida Rules of Civil Procedure and/or Florida law. To the extent that RF is required to produce any responsive documents, it will do so in a manner that complies with the Florida Rules of Civil Procedure and Florida law.

16.      RF objects to Instruction 4 because it purports to impose obligations greater than those imposed by the Florida Rules of Civil Procedure and/or Florida law.  To the extent that RF is required to produce any responsive documents, it will produce a privilege log consistent with its obligations under Florida law and the Florida Rules of Civil Procedure.

17.      RF objects to Definition "A" as overbroad and unduly burdensome. RF will construe the term "document" in accordance with Florida Rule of Civil Procedure 1.350(a) to mean "electronically stored information, writings, drawings, graphs, charts, photographs, audio, visual, and audiovisual recordings, and other data compilations from which information can be obtained."

18.      RF objects to Definition "G" as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. RF will interpret the defined terms to mean Roche Freedman LLP.

## SPECIFIC OBJECTIONS AND RESPONSES

1.      All documents related to RF's ownership interest in Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

2.      All documents related to RF's ownership interest in Ava Labs' tokens.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

3.      All documents related to the MOU.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

4.      All documents related to RF's engagement agreement with Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending

action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

5.      All documents related to Kyle Roche's ownership interest in Ava Labs.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

6.      All documents related to RF's ownership interest in Avalanche.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

7.      All documents related to Kyle Roche's ownership interest in Avalanche.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

7

harassment. Absent a court order, RF will not produce any documents in response to this Request.

8.      All documents related to Gun's ownership interest in Avalanche.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

9.      All documents related to Sekniqi's ownership interest in RF.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

10.     All documents related to "shared workspaces" between or among RF, Ava Labs, or Avalanche.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes

harassment. Absent a court order, RF will not produce any documents in response to this Request.

11.     All documents related to any lease executed by RF for the "shared workspace" referred to in Request 10.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

12.     All documents related to any lease executed by the Ava Labs for the "shared workspace" referred to in Request 10.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

13.     All documents related to "academic writings" in your possession authored by either you, Gun, or both.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of

Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

14.     All documents related to Ava Labs' capitalization tables on which Kyle Roche's name appears.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

15.     All documents related to Ava Labs capitalization tables on which any member of RF appears.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

16.     All documents related to RF's use of straw plaintiffs to bring actions on behalf of Ava Labs in which Ava Labs did not appear.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending

action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

17.     All documents related to RF's communications with the Securities and Exchange Commission in which you attempted to direct regulator attention toward an Ava Labs' competitor.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

18.     All documents related to RF's communications with the Commodities Futures Trading Commission in which you attempted to direct regulator attention toward an Ava Labs' competitor.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

19.     All documents related to Kyle Roche's residence in Florida for tax purposes.

**RESPONSE**: In addition to the foregoing General Objections, RF objects to this Request on the grounds that the information sought is not "relevant to the subject matter of the pending action" and is therefore outside the scope of permissible discovery set forth in Florida Rule of Civil Procedure 1.280(b). RF further objects to this Request on the grounds that it constitutes harassment. Absent a court order, RF will not produce any documents in response to this Request.

Dated: October 14, 2022                           Respectfully submitted,

*/s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman, Esq.
Florida Bar No. 99762
**ROCHE FREEDMAN LLP**
1 SE 3rd Ave., Suite 1240
Miami, Florida 33131
Telephone: (786) 924-2900
vel@rochefreedman.com

Stephen Lagos (*pro hac vice* pending)
**ROCHE FREEDMAN LLP**
99 Park Avenue, Suite 1910
New York, NY 10016
slagos@rochefreedman.com

*Counsel to Defendant and Non-Party Roche Freedman LLP*

# EXHIBIT 19

Thursday, December 22, 2022 at 22:48:13 Eastern Standard Time

| | |
|---|---|
| **Subject:** | RE: Hearing on our motion to compel discovery responses |
| **Date:** | Tuesday, November 29, 2022 at 4:48:00 PM Eastern Standard Time |
| **From:** | Amy Brown |
| **To:** | Velvel Freedman, Robert Kuntz, Stephen Lagos |
| **CC:** | Raquel Sanchez, Brandon Cruz, Andres Rivero, Paralegals, Allison Henry |
| **Attachments:** | image001.png, image002.png |

**[EXTERNAL SENDER]**

Hi Vel- Thanks for getting back to us on the order. We agree that we are not moving forward with any DQ discovery in this case until we have an order on the motion to compel. We are not agreeing to stay discovery in any other matter, or on any other issue.  Thanks.

Amy

---

**From:** Velvel Freedman <vel@fnf.law>
**Sent:** Tuesday, November 29, 2022 12:16 PM
**To:** Amy Brown <abrown@riveromestre.com>; Robert Kuntz <rkuntz@riveromestre.com>; Stephen Lagos <slagos@fnf.law>
**Cc:** Raquel Sanchez <rsanchez@riveromestre.com>; Brandon Cruz <bcruz@riveromestre.com>; Andres Rivero <arivero@riveromestre.com>; Paralegals <paralegals@riveromestre.com>; Allison Henry <ahenry@riveromestre.com>
**Subject:** [EXTERNAL] Re: Hearing on our motion to compel discovery responses

 **This Message originated outside your organization.**

---

Thanks Amy. I think we are on the same page, but I believe you all have set the deposition and perhaps sought other discovery in some of the related actions. Can you confirm all DQ discovery across all related state court cases will be held in abeyance pending resolution of the motion?

We are fine with the proposed order.

-Vel

Vel (Devin) Freedman
*Partner*
**Freedman Normand Friedland LLP**
1 SE 3rd Ave., Suite 1240
Miami, FL 33131
(t) 305.753.3675
(f) 646.392.8842
(@) vel@fnf.law

**From:** Amy Brown <abrown@riveromestre.com>
**Date:** Tuesday, November 29, 2022 at 11:50 AM
**To:** Velvel Freedman <vel@fnf.law>, Robert Kuntz <rkuntz@riveromestre.com>, Stephen Lagos <slagos@fnf.law>
**Cc:** Raquel Sanchez <rsanchez@riveromestre.com>, Brandon Cruz <bcruz@riveromestre.com>, Andres Rivero <arivero@riveromestre.com>, Paralegals <paralegals@riveromestre.com>, Allison Henry <ahenry@riveromestre.com>
**Subject:** RE: Hearing on our motion to compel discovery responses

**[EXTERNAL SENDER]**

Vel-

Robert is out of pocket at the moment.  But I can confirm that we will not pursue DQ discovery in this case until we receive an order on the motion to compel.  That aside, can you please let us know whether the proposed order is acceptable? The proposed order only seeks to reflect that the court deferred ruling on the motion and wants the hearing special set. Thank you.

Amy

**From:** Velvel Freedman <vel@fnf.law>
**Sent:** Tuesday, November 29, 2022 11:38 AM
**To:** Robert Kuntz <rkuntz@riveromestre.com>; Stephen Lagos <slagos@fnf.law>; Amy Brown <abrown@riveromestre.com>
**Cc:** Raquel Sanchez <rsanchez@riveromestre.com>; Brandon Cruz <bcruz@riveromestre.com>; Andres Rivero <arivero@riveromestre.com>; Paralegals <paralegals@riveromestre.com>; Allison Henry <ahenry@riveromestre.com>
**Subject:** [EXTERNAL] Re: Hearing on our motion to compel discovery responses

 **This Message originated outside your organization.**

Robert,

That was not our question. Please confirm you will hold DQ related discovery in abeyance, or we will move for a protective order and for fees.

-Vel

Vel (Devin) Freedman
*Partner*
**Freedman Normand Friedland LLP**
1 SE 3rd Ave., Suite 1240
Miami, FL 33131
(t) 305.753.3675
(f) 646.392.8842

(@) vel@fnf.law

---

**From:** Robert Kuntz <rkuntz@riveromestre.com>
**Date:** Tuesday, November 29, 2022 at 11:35 AM
**To:** Stephen Lagos <slagos@fnf.law>, Amy Brown <abrown@riveromestre.com>
**Cc:** Raquel Sanchez <rsanchez@riveromestre.com>, Brandon Cruz <bcruz@riveromestre.com>, Andres Rivero <arivero@riveromestre.com>, Velvel Freedman <vel@fnf.law>, Paralegals <paralegals@riveromestre.com>, Allison Henry <ahenry@riveromestre.com>
**Subject:** RE: Hearing on our motion to compel discovery responses

[EXTERNAL SENDER]

Stephen:

Attached is the proposed order.

With regard to your email below, we obviously won't pursue the discovery subject to the Motion to Compel in 004758 without a court order on the Motion to Compel.

Additionally, will you kindly be sure to copy Amy Brown and Allison Henry with correspondence in this matter? Thank you.

RIVERO MESTRE

**Robert Kuntz**
Partner
Rivero Mestre LLP
2525 Ponce de Leon Blvd., Suite 1000
Miami, Florida 33134
(O) (305) 445-2500 | (D) (786) 746-8209
(C) (786) 942-7759 | (F) (305) 445-2505
rkuntz@riveromestre.com
www.riveromestre.com | Bio | LinkedIn | Vcard

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

---

**From:** Stephen Lagos <slagos@fnf.law>
**Sent:** Tuesday, November 29, 2022 10:34 AM
**To:** Robert Kuntz <rkuntz@riveromestre.com>
**Cc:** Raquel Sanchez <rsanchez@riveromestre.com>; Brandon Cruz <bcruz@riveromestre.com>; Andres Rivero <arivero@riveromestre.com>; Velvel Freedman <vel@fnf.law>; Paralegals <paralegals@riveromestre.com>
**Subject:** [EXTERNAL] Re: Hearing on our motion to compel discovery responses

**This Message originated outside your organization.**

Robert:

In light of the court's order this morning, please confirm by Friday that you agree to pause all discovery efforts relating to your disqualification motions and to hold all disqualification-related depositions in abeyance until after the court resolves your motion to compel. If you do not agree, we intend to file a motion to quash and for a protective order and to seek fees in connection with that motion.

Best,
Stephen

Stephen Lagos
*Associate*
_____
**Freedman Normand Friedland LLP**
99 Park Ave., Suite 1910
New York, NY 10016
(t) 603.494.9245
(@) slagos@fnf.law

---

**From:** Robert Kuntz <rkuntz@riveromestre.com>
**Date:** Tuesday, October 25, 2022 at 8:51 AM
**To:** Stephen Lagos <slagos@fnf.law>
**Cc:** Raquel Sanchez <rsanchez@riveromestre.com>, Brandon Cruz <bcruz@riveromestre.com>, Andres Rivero <arivero@riveromestre.com>, Velvel Freedman <vel@fnf.law>, Paralegals <paralegals@riveromestre.com>
**Subject:** Re: Hearing on our motion to compel discovery responses

**[EXTERNAL SENDER]**

Stephen, yes, I meant "your objections," rather than "your motion." My apologies for causing you distress with that mistake.

In any event, your objections clearly stated you won't consent to answering a single RFA, or producing any document, without an order. Even if I accidently wrote "motion" rather than "objections," I have understood your postion precisely, have I not?

We will set the hearing.

_____
Robert J. Kuntz Jr., Esq.

Rivero Mestre, LLP
Partner
2525 Ponce de Leon Blvd.
Suite 1000
Miami, FL 33134
(O) 305.445.2500 | (D) 786.746.8209


Sent from my Android device

---

**From:** Stephen Lagos <slagos@fnf.law>
**Sent:** Tuesday, October 25, 2022, 8:22 AM
**To:** Robert Kuntz <rkuntz@riveromestre.com>
**Cc:** Raquel Sanchez <rsanchez@riveromestre.com>; Brandon Cruz <bcruz@riveromestre.com>; Andres Rivero <arivero@riveromestre.com>; Velvel Freedman <vel@fnf.law>; Paralegals <paralegals@riveromestre.com>
**Subject:** [EXTERNAL] Re: Hearing on our motion to compel discovery responses


**This Message originated outside your organization.**

---

Robert—obviously, we don't agree with your points below, including your false statement that we filed a "motion" requesting a "court order" relating to your discovery requests. We did no such thing. Setting that aside, it appears that we can't dissuade you from proceeding. We are available on November 29 and November 30.

Stephen Lagos
*Associate*
**Freedman Normand Friedland LLP**
99 Park Ave., Suite 1910
New York, NY 10016
(t) 603.494.9245
(@) slagos@rochefreedman.com

---

**From:** Robert Kuntz <rkuntz@riveromestre.com>
**Date:** Monday, October 24, 2022 at 12:58 PM
**To:** Stephen Lagos <slagos@fnf.law>
**Cc:** Raquel Sanchez <rsanchez@riveromestre.com>, Brandon Cruz <bcruz@riveromestre.com>, Andres Rivero <arivero@riveromestre.com>, Velvel Freedman <vel@fnf.law>, Paralegals <paralegals@riveromestre.com>
**Subject:** RE: Hearing on our motion to compel discovery responses

[EXTERNAL SENDER]

Stephen:

The court is showing no availability for any special set hearings through the year. But, in our view, the simple question of whether we are entitled to **any** discovery in support of the DQ motion is fit for motion calendar.

Now, if you are willing to concede that discovery is allowed, we can perhaps confer about what that might be, and reserve any detailed conflicts for the court at a special set while agreed upon discovery gets underway. If you position is a simple "no," then the court can resolve that issue in very short order. You are of course free to argue to the judge that the court isn't capable of making that determination at the hearing. Your motion said you wanted a court order. Let's get you one.

This back-and-forth has now lost us the mid-November days. Our obligation to consult with you on hearing dates is not meant to provide you the opportunity simply to avoid such a hearing.  Today or tomorrow we're going to notice this for motion calendar on either **29 or 30 November**, which remain open. Let me know if you have a preference on which day (or don't and we'll select one). Once again, this is UMC via Zoom, so one's availability should be easy.

As I wrote to Vel today on a related matter: We have moved to disqualify. Disqualification requires an evidentiary hearing. An evidentiary hearing requires evidence. As Judge Failla said, no one has gotten to the bottom of this yet. We intend to.



## RIVERO MESTRE

**Robert Kuntz**
Partner
Rivero Mestre LLP
2525 Ponce de Leon Blvd., Suite 1000
Miami, Florida 33134
(O) (305) 445-2500 | (D) (786) 746-8209
(C) (786) 942-7759 | (F) (305) 445-2505
rkuntz@riveromestre.com
www.riveromestre.com | Bio | LinkedIn | Vcard

This message may contain confidential and privileged information. If it has
been sent to you in error, please reply to advise the sender of the error and
then immediately delete this message.

---

**From:** Stephen Lagos <slagos@fnf.law>
**Sent:** Friday, October 21, 2022 2:34 PM
**To:** Robert Kuntz <rkuntz@riveromestre.com>
**Cc:** Raquel Sanchez <rsanchez@riveromestre.com>; Brandon Cruz <bcruz@riveromestre.com>; Andres Rivero
<arivero@riveromestre.com>; Velvel Freedman <vel@fnf.law>
**Subject:** [SUSPICIOUS MESSAGE] Re: Hearing on our motion to compel discovery responses

==This Message contains suspicious characteristics and has originated outside your organization.==

---

The fact that the motion, like every other motion, will eventually either be granted or denied has no bearing on
the amount of time required to address the arguments raised. It's fine that your position is that the 100-
plus pages of exhibits that you attached to your motion "don't need examination" at the hearing deciding
that motion (which begs the question, why attach them to begin with), but that's not our position. With that
clarification, do you agree that a longer hearing is appropriate?

Stephen Lagos
*Associate*

**Freedman Normand Friedland LLP**
99 Park Ave., Suite 1910
New York, NY 10016
(t) 603.494.9245
(@) slagos@rochefreedman.com

---

**From:** Robert Kuntz <rkuntz@riveromestre.com>
**Date:** Friday, October 21, 2022 at 2:14 PM
**To:** Stephen Lagos <slagos@fnf.law>
**Cc:** Raquel Sanchez <rsanchez@riveromestre.com>, Brandon Cruz <bcruz@riveromestre.com>, Andres
Rivero <arivero@riveromestre.com>, Velvel Freedman <vel@fnf.law>
**Subject:** RE: Hearing on our motion to compel discovery responses

**[EXTERNAL SENDER]**

Stephen:

The motion is a few pages long. The attachments don't need examination at this hearing.

Our position is "we are entitled to production and admissions in reference to the motion to disqualify."
Your position is "you're not entitled to any discovery at all."

That's a yes/no, either/or – that's motion calendar.

Later detailed objections may take more time.

We're going to notice a hearing on the UMC. You can certainly tell the judge at that hearing that you think the court cannot resolve a yes/no question on UMC.

So, I'm asking you: is someone from your team available for a Zoom hearing on 8 November?


**RIVERO MESTRE**

**Robert Kuntz**
Partner
Rivero Mestre LLP
2525 Ponce de Leon Blvd., Suite 1000
Miami, Florida 33134
(O) (305) 445-2500 | (D) (786) 746-8209
(C) (786) 942-7759 | (F) (305) 445-2505
rkuntz@riveromestre.com
www.riveromestre.com | Bio | LinkedIn | Vcard

This message may contain confidential and privileged information. If it has
been sent to you in error, please reply to advise the sender of the error and
then immediately delete this message.

---

**From:** Stephen Lagos <slagos@rochefreedman.com>
**Sent:** Friday, October 21, 2022 2:04 PM
**To:** Robert Kuntz <rkuntz@riveromestre.com>
**Cc:** Raquel Sanchez <rsanchez@riveromestre.com>; Brandon Cruz <bcruz@riveromestre.com>; Andres Rivero
<arivero@riveromestre.com>; Velvel Freedman <vel@rochefreedman.com>
**Subject:** [EXTERNAL] Re: Hearing on our motion to compel discovery responses

 **This Message originated outside your organization.**

Robert:

Your motion is 111 pages with exhibits. We don't think that it can be resolved on UMC. Given the volume of your submission, and the nature of the issue presented, we require a 45-minute hearing.

Best,
Stephen

Stephen Lagos
*Associate*
**Freedman Normand Friedland LLP**
99 Park Ave., Suite 1910
New York, NY 10016
(t) 603.494.9245
(@) slagos@rochefreedman.com

---

**From:** Robert Kuntz <rkuntz@riveromestre.com>
**Date:** Friday, October 21, 2022 at 9:37 AM
**To:** Stephen Lagos <slagos@rochefreedman.com>
**Cc:** Raquel Sanchez <rsanchez@riveromestre.com>, Brandon Cruz <bcruz@riveromestre.com>, Andres Rivero <arivero@riveromestre.com>, Velvel Freedman <vel@rochefreedman.com>
**Subject:** Hearing on our motion to compel discovery responses

[EXTERNAL SENDER]

Stephen:

We would like to set a hearing on our Motion to Compel, filed 18 October in 50-2021-CA-004758. Since there's no need to work through the discovery requests one by one, but only to address whether we're entitled to responses at all, we can get this done on UMC.

Below is what comes up this morning for available dates. Given this is an early morning UMC via Zoom, there really ought not be any trouble scheduling the thing. I'd like to set it for **8 November**, unless your whole team has an actual conflict that morning. I'm could also be clear 1 or 2 November if those days are better.

Kindly advise your availability for the hearing.



RIVERO MESTRE

**Robert Kuntz**
Partner
Rivero Mestre LLP
2525 Ponce de Leon Blvd., Suite 1000
Miami, Florida 33134

(O) (305) 445-2500 | (D) (786) 746-8209
(C) (786) 942-7759 | (F) (305) 445-2505
rkuntz@riveromestre.com
www.riveromestre.com | Bio | LinkedIn | Vcard

This message may contain confidential and privileged information. If it has
been sent to you in error, please reply to advise the sender of the error and
then immediately delete this message.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the
recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure,
copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be
unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**,
an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human
generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s)
named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If
the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby
notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is
strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original
message.

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s)
named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If
the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby
notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is
strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original
message.

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s)
named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If
the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby
notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is
strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original
message.

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s)
named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If
the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby
notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is
strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original
message.

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s)
named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If
the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby
notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is
strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original
message.

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

# EXHIBIT 20

**Thursday, December 22, 2022 at 23:03:49 Eastern Standard Time**

**Subject:** Re: Improper Depositions
**Date:** Monday, October 24, 2022 at 8:35:37 AM Eastern Daylight Time
**From:** Robert Kuntz
**To:** Velvel Freedman, Andres Rivero
**CC:** Stephen Lagos, Andrew Brenner

**[EXTERNAL SENDER]**

Vel:

We have moved to disqualify. Disqualification requires an evidentiary hearing. An evidentiary hearing requires evidence. As Judge Failla said, no one has gotten to the bottom of this yet. We intend to.

We served you with a subpoena as provided for by the rules. If you need an accommodation on the date of the deposition, I'm happy to work that out with you.

You have no basis to evade the deposition, but file whatever motions you think you need to.

_____
Robert J. Kuntz Jr., Esq.

Rivero Mestre, LLP
Partner
2525 Ponce de Leon Blvd.
Suite 1000
Miami, FL 33134
(O) 305.445.2500 | (D) 786.746.8209

Sent from my Android device

**From:** Velvel Freedman <vel@fnf.law>
**Sent:** Sunday, October 23, 2022 11:45:42 AM
**To:** Robert Kuntz <rkuntz@riveromestre.com>; Andres Rivero <arivero@riveromestre.com>
**Cc:** Stephen Lagos <slagos@fnf.law>; Andrew Brenner <abrenner@bsfllp.com>
**Subject:** [SUSPICIOUS MESSAGE] Improper Depositions

**This Message contains suspicious characteristics and has originated outside your organization.**

Andres,

You issued three subpoenas to me to attend a deposition in apparent violation of Florida Rules of Civil Procedure Rule 1.410(e), which requires notice of the deposition to be filed first. Setting that process issue aside, your attempt to take my deposition is a clear continuation of the gamesmanship you've engaged in to date on disqualification motions. Please confirm you will not be proceeding with an attempt to depose litigation counsel in cases your clients initiated by 10/28/22. Should you fail to do so, we will move both to quash and for sanctions under 57.105.

-Vel

Vel (Devin) Freedman
*Partner*

**Freedman Normand Friedland LLP**

1 SE 3rd Ave., Suite 1240
Miami, FL 33131
(t) 305.753.3675
(f) 646.392.8842
(@) vel@fnf.law

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.