UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC

      plaintiffs,

v.                                                                              Case No. 9:18-cv-80176 (BB/BR)

CRAIG WRIGHT.
_____/

## DR. CRAIG WRIGHT'S RESPONSE TO
## MERITS OPPOSITION TO MOTION TO DISQUALIFY

Dr. Craig Wright submits this memorandum of law in response to the Merits Opposition to Motion to Disqualify (the "Opposition" or "Opp.") [DE 945] filed by Roche Freedman LLP (n/k/a/ Freedman Normand and Friedland LLP) ("Roche Freedman") and in further support of his Motion to Disqualify Roche Freedman [DE 900].

### PRELIMINARY STATEMENT

Months after the Roche Freedman scandal erupted, after many of the firm's clients and adversaries across the country have challenged the firm's continued involvement in their cases, and after at least one court terminated the firm from its lead role in a class action on account of Kyle Roche's outrageous admissions about the firm, Roche Friedman has the audacity to dismiss Dr. Wright's motion to disqualify as meritless "textbook harassment." Downplaying, but never denying, the CryptoLeaks videos, the firm would have this Court ignore that firm founder Kyle Roche calls out Dr. Wright *by name* in one of the videos, bragging that he "took down" the arch nemesis of the Ava Labs principal to which Roche was financially tied. Roche Freedman's cavalier disregard won't answer here. Even if Craig

1

Wright is every awful thing Roche Freedman revels in calling him, that does *not* render his Motion to Disqualify meritless. Rather, the motion is compelled by Kyle Roche's express admissions of the firm's conflict of interest and, for that reason, is meritorious on its face. At a minimum, those admissions warrant discovery. The Motion to Disqualify should either be granted, or held in abeyance pending discovery on the issues raised by it.

## ARGUMENT

### I. WRIGHT HAS STANDING TO BRING THE MOTION TO DISQUALIFY

#### A. Dr. Wright Has Article III Standing to Bring the Motion to Disqualify

A party has Article III standing if he has "a sufficient stake in a justiciable controversy" and alleges "a palpable, distinct injury, economic or otherwise, that can be redressed by the relief sought." *Bouldry v. C.R. Bard, Inc.*, 909 F. Supp. 2d 1371, 1375–76 (S.D. Fla. 2012). Dr. Wright easily meets this standard here. Again, Kyle Roche admitted on video that he and his firm were in bed with Ava Labs—another client in which several partners at Roche Freedman had a financial interest—and improperly used lawsuits to advance Ava Labs' interests. Roche mentioned Dr. Wright *by name* on the video: "***I took down one of [Ava Labs'] biggest arch-nemeses. The guy who claimed to be Satoshi, Craig Wright***."[1] Exactly how Roche Freedman's ties and loyalty to Ava Labs affected its litigation strategy against Dr. Wright isn't yet clear because Roche Freedman has done everything in its power to dodge discovery on the issue. But given Roche's statements, it is more than likely that the firm's relationship with Ava Labs affected its decision-making before, during and after the trial against Dr. Wright.

---

[1] The cites to the various CryptoLeaks videos are set forth in the Motion to Disqualify. For sake of brevity, we do not repeat them here.

2

Roche Freedman characterizes this argument as "absurd," "fanciful," and "frivolous" (Opp. at 2, 12) because Ava Labs, it claims, did not exist when Roche Freedman commenced this litigation in February 2018, and Kyle Roche, "a second year associate[2] at the time," did not meet the Ava Labs' principal whom Roche labeled Dr. Wright's "arch-nemesis" until Summer 2019.[3] As a preliminary matter, the precise date of Ava Labs' incorporation doesn't mean anything. Corporations don't appear out of thin air; there is always a period of planning leading up to incorporation. Without discovery, no one yet knows what that period was in the case of Ava Labs. Moreover, the firm's attempt to minimize Kyle Roche's involvement by referring to him a "second-year associate" at the time the action was commenced is laughable. Roche was one of the firm's namesakes at its inception.[4]

In all events, Roche Freedman misunderstands Dr. Wright's argument. Even if W&K and the Estate were not "straw plaintiffs" represented by Roche Freedman to advance Ava Labs' interests, a conflict arose *at some point in the litigation*, when Roche Freedman—by Kyle Roche's admission—began using lawsuits brought on behalf of other clients for the benefit of Ava Labs. Given Kyle Roche's admissions about Roche Freedman

---

[3] For support, Roche Freedman cites a printout from the Florida Department of State, Division of Corporations, listing Ava Labs' incorporation date as August 21, 2018 [DE 945-1], and a redacted version of its Supplemental Opposition to Defendants' Motion to Qualify in the *Dfinity* Action (the "*Dfinity* Opposition") [DE 945-2]. The firm does not attach the deposition transcripts it "cites" in the *Dfinity* Opposition, and its self-serving characterization of those transcripts, hardly count as "facts."

[4] Argument by deflection and distraction permeates Roche Freedman's brief. Roche was the first name in the Roche Freedman firm, made the opening statement at trial, conducted important cross-examinations and was at least the equal of a fifth-year at Freedman from the outset of this litigation. And Roche was counsel in this litigation until just two months ago.

using its clients to go after Ava Labs' adversaries, *and his specific mention of Dr. Wright,* Dr. Wright is asserting his own legal rights and interests in his Motion to Disqualify and has Article III standing.

### B. Wright Has Prudential Standing to Bring the Motion to Disqualify

Roche Freedman argues that Dr. Wright lacks "prudential standing" to bring this motion. That is incorrect. True, the "general rule" is that motions for disqualification based on a conflict of interest are brought by a client or former client of the lawyer who is the subject of the motion. But the "general rule" is only that: a rule inapplicable to the extraordinary circumstances present here. Where "the conflict clearly calls into question the fair or efficient administration of justice," the opposing party has standing to bring the motion. *See* R. Regulating Fla. Bar, R. 4-1.7 Comment; *Brown & Williamson Tobacco Corp. v. Daniel Int'l Corp.*, 563 F.2d 671 (5th Cir. 1977) Though not the aggrieved party, appellant could seek disqualification because its attorneys are authorized to report any ethical violations); *Davis v. Southern Bell Tel. & Tel. Co.*, 149 F.R.D. 666, 673 (S.D. Fla. 1993) (Party has standing to bring the motion where its rights might be compromised, "regardless of whether the party is a client or former client of the attorney or firm" being challenged)[5]

Roche Freedman contends its conduct comes nowhere close to affecting "the fair or administration of justice" (Opp. at 10-11). That only evidences just how cavalierly it has treated, and continues to treat, Kyle Roche's shocking admissions.[6] According to Roche's

---

[5] Roche Freedman cites a single case for the proposition that *Brown & Williamson* is limited to instances where an attorney is "actively representing two parties with adverse interests." (Opposition at 10.) The *Dominion Protection* case is not binding on this Court, and Dr. Wright is unaware of any cases in this District that limit *Brown* in that fashion.

[6] Judge Failla criticized the firm's dismissive attitude in her order terminating Roche Freedman as class counsel in *In re Tether and Bitfinex Crypto Asset Litigation*, 19 Civ. 9236

4

confessions, the firm takes cases to trial "for the sport of it" and uses litigation as a "strategic instrument to support" Ava Labs, not to advance the individual interests of his individual clients. "It is not enough that the doors of the temple of justice are open; it is essential that the ways of approach be kept clean." *Hatfield v. King*, 184 U.S. 162, 167–68 (1902). The interests of justice *are* implicated here. Dr. Wright has both prudential and Article III standing.

## II. ROCHE FREEDMAN VIOLATED RULE 4-1.7(a)(2)

Kyle Roche's statements are *prima facie* evidence of a conflict under Rule 4.1-7(a)(2)[7] because they demonstrate that Roche Freedman's ties to Ava Labs dictated which cases Roche Freedman pursued and how they litigated them. Pretending that's not so, Roche Freedman states that Dr. Wright must prove by a preponderance of the evidence that there is a substantial risk that the firm's representation of W&K will be limited by its responsibilities to another current client, a third person, or its personal interests. (Opp. at 11.). Dr. Wright would *happily* seize the opportunity to meet that evidentiary burden if

---

(S.D.N.Y.) (KPF) (the "*Tether* Action"). "[T]he degree to which the Roche Freedman firm has attempted to minimize Mr. Roche's statements gives me concern that they don't appreciate the seriousness of those statements, and I've already explained and I've already explained the dim view with which I hold the firm's arguments in mitigation.") [DE 900-1 at 22.]

Having learned nothing about taking this seriously, Roche Freedman treats Judge Failla's decision as irrelevant because she decided the issue under the rubric of Rule 23. (Opposition at 6, 7.) That is a meaningless distinction. Judge Failla found Roche's statements to be so troubling, and the misconduct so likely to extend to others at the firm, that she decided the firm was incapable of advancing the interests of the class.

[7] Rule 4-1.7(a)(2) of the Florida Rules Regulating the Florida Bar provides that a lawyer must not represent a client if "there is a substantial risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."

5

Roche Freedman would answer any of his discovery requests, rather than baselessly objecting to them as "unauthorized." (Opp. at 5, 19.)[8] In fact, Judge James Donato, presiding over a class action captioned *Valenti v. Dfinity USA Research LLC* (No. 3:21-cv-06118) (the "*Dfinity* Action") in the Northern District of California, ordered Roche Freedman to sit for depositions on the issue of the firm's ties to Ava Labs. The court concluded that discovery was necessary because, without it, he was "operating in an evidentiary vacuum." [DE 929-3.] The same evidentiary vacuum exists here. But it needn't continue.

Roche Freedman relies on the denial of Dr. Wright's motion to disqualify before the Eleventh Circuit, and on the denial of the motions by Ramona Ang (as trustee for the Tulip Trust) and Lynn Wright in the Florida probate court, as proof Dr. Wright cannot establish a conflict here. (Opp. at 2, 12 & 19.) That argument overlooks the obvious. The Eleventh Circuit is not a fact-finding body and Kyle Roche, who is not admitted there, never appeared before it. In denying Dr. Wright's motion to disqualify, the Eleventh Circuit relied exclusively upon the affidavit from Velvel Freedman—filed before Ira Kleiman's personal filing that castigated his attorneys at Roche Freedman and Boies Schiller as utterly neglectful of him [DE 918]. The Eleventh Circuit did not have before it the information that this Court has before it today. Moreover, unlike this Court, an appellate court cannot dig deeper into this misconduct to fill the "evidentiary vacuum" that still exists.

---

[8] Courts routinely order discovery on disqualification motions, so it is not clear why Roche Freedman thinks it's immune to discovery in this case. *See Alpert v. Taylor*, 2010 WL 11507807, at *2 (M.D. Fla. Jan. 14, 2010) (ordering evidentiary hearing where there was a material dispute as to whether attorney conflict existed); *In re Finao Corp.*, 2005 WL 419704, at *4 (Bankr. M.D. Fla. Jan. 26, 2005) (same, where matters could not be resolved "on the basis of the statements and proffers by the parties' attorneys").

The probate court denied the motions to disqualify because Mr. Roche was not counsel of record, the misconduct was not related to the probate actions, and the misconduct "did not implicate the interests of Ms. Watts/Ang and Ms. Wright." (DE 930-6 at 4) (cited by Opp.at 12). But here, Roche was intimately involved in the almost five-years of litigation against Dr. Wright and called him out by name in the videos in which he admitted to Roche Freedman's unscrupulous litigation strategies. In addition, as the defendant in this case, Dr. Wright—whose interests are plainly implicated—is differently situated than Mrs. Ang and Lynn Wright, who were not parties to this suit.

### A. Wright's Arguments as to the Existence of a Conflict Are Based in Fact

Roche Freedman incorrectly claims that Dr. Wright has taken the "fanciful" position that Kyle Roche "secretly commenced" this action on behalf of Ava Labs which, Roche Freedman argues, did not even exist at the time this action was brought. (Opp. at 12-13.)[9] But the merits of Dr. Wright's motion do not depend on a finding that Roche Freedman *commenced* the litigation as a part of Emir Gun's personal vendetta against him.[10] Irrespective of whether a conflict existed at the *outset* of the litigation, a conflict *certainly arose early on* in the litigation, once Roche Freedman became beholden to Dr. Wright's "arch-nemesis." Discovery is necessary to assess the effect of that conflict on the prior litigation of the case, and on the judgment collection efforts that now follow.

### B. The Conflict Can and Should Be Imputed to Roche Freedman

Roche Freedman next claims that, even if there was a Kyle Roche conflict (which there plainly was and is), that conflict cannot be imputed to Kyle Roche's namesake law

---

[9] Although it only preceded that by a few months.

[10] Emir Gun is the CEO of Ava Labs and has been since its inception.

7

firm. (Opp. at 14-15.) It claims that Dr. Wright has "no evidence to suggest that anyone at the firm" shared Kyle Roche's improper motives (which Roche Freedman downplays and does not admit exists). (*Id.*) Wrong, again.

The "evidence" is the words from Roche's mouth, stating that *the Roche Freedman firm*—not just Roche—employed the unscrupulous and unethical strategies that Roche described on video. As Judge Failla noted in the *Tether* Action, Kyle Roche's statements were "coherent and logical and too detailed" to "dismiss out of hand" and that "it would actually surprise [her] if such an ethos were limited to Mr. Roche alone." [DE 900-1 at 22.] Judge Donato, overseeing the *Dfinity* Action, likewise found the allegations serious enough to warrant discovery from *Roche Freedman,* not merely from Kyle Roche. [DE 929-3].[11]

Roche Freedman further claims that a conflict cannot be imputed to the firm under Rule 4-1.10(a) because Roche's "improper motives were "necessarily personal" to Roche. (Opp. at 15). That argument ignores that Roche was *not* the only partner at the firm with financial ties to Ava Labs, and that certain partners, including Velvel Freedman, *still* have an interest in Ava Labs. [DE 945-2 at 6.] Those partners had the same motivation Roche had to advance Ava Labs' interests. Their conduct should, at the very least, be the subject of discovery.

---

[11] Roche Freedman relies on denial of the motion to disqualify in *RA Temujin Labs Inc. v. Abittan*, 20CV372622 (Cal. Sup. Ct.) as proof that the concerns raised by Roche's confessions do not apply outside of the class action context. There, the court provisionally denied the motion only after requiring that every partner at Roche Freedman submit a declaration indicating that "she or he has not provided, and will never provide, another party's confidential information to Ava Labs." [945-11 at 17.] But Kyle Roche had no involvement in the *Abbitan* case, and Abbitan had never even spoken to him. Not so here.

Nor does the fact that Roche left the firm less than six months ago—four plus years into this litigation—preclude imputation. The conflict was imputed to Roche Freedman the moment Roche confessed to it and cannot be "unimputed" just because Roche is no longer employed there. *See Canta v. Philip Morris USA*, 245 So. 3d 813, 817 (Fla. DCA, 3rd Dist. 2017) (conflicted lawyers' departure from the firm "did not attenuate the taint inured" when lawyer joined firm). For all these reasons, the conflict should be imputed to the firm.

### C. Ira Kleiman Has No Authority to Waive the Conflict on Behalf of W&K

Even assuming that Ira Kleiman purported to waive the conflict on behalf of W&K (Opp. at 16-17), the waiver was ineffective. Ira Kleiman, as (at most) the 50% owner of W&K, has no authority to waive the conflict—or do anything else—on behalf of W&K. *See Akerman LLP v. Cohen*, 352 So. 3d 331, 338 (Fla. Dist. Ct. App. 2022) (40% owner of company had no authority to waive privilege on behalf of company). Ira Kleiman admitted as much on the witness stand at trial and, most recently, in the document he filed personally with the Court. [DE 918].[12] Those admissions alone render any waiver ineffective.[13]

### III.  OTHER FACTORS REQUIRE ROCHE FREEDMAN'S DISQUALIFICATION

Roche Freedman argues that disqualification is unwarranted because the factors set out in *In re Application Pursuant to 28 USC § 1972*, 2023 WL 2058316 (S.D. Fla. Jan. 27, 2023)

---

[12] Predictably, Roche Freedman calls Dr. Wright's argument that it delayed its judgment collection efforts to avoid the Court's consideration of the Motion to Disqualify, "baseless," "nonsensical" and "improper." (Opp. at 16) Ira Kleiman didn't think that link was nonsensical. He tied the law firm's failures to the scandal underpinning the Motion to Disqualify. [DE 918 at 6.] As Ira Kleiman put it: "There was no reason to allow a year to go by before taking such simple collection efforts." *Id.*

[13] Details concerning W&K's filings are set forth in Dr. Wright's previous filings. [DE 915, DE 935, and DE 946].

weigh against it. (Opp. at 18.) But each of these factors actually weighs in favor of disqualification.

*First*, the violation was severe. Using litigation, and the information obtained there, on behalf of certain clients to advance the interests of another client is a serious matter.

*Second*, W&K will suffer no prejudice from Roche Freedman's disqualification. Paul Huck, appointed by the true majority members of W&K as its new counsel, is more than capable of handling the judgment collection efforts on W&K's behalf.

*Third*, Ira Kleiman has admitted that his counsel at Roche Freedman has not been effective since the time of the violation. [DE 918 at 6]. "At this point, I honestly don't believe they want to recover the W&K judgment." (*Id.*)

*Fourth*, disqualification of Roche Freedman can only improve the public's perception of the profession. Roche Freedman contends that "no reasonable person" could conclude that its continued representation of W&K would be limited going forward. (Opp. at 18.) But Judge Failla, presumably a "reasonable person," terminated the firm's representation of the *Tether* class, and Judge Donato, presumably a "reasonable person," has not dismissed these concerns.

*Finally*, though Roche Freedman loves to classify everything Dr. Wright does as "harassment," the Motion was not brought for that purpose. That should be evident from the fact that the firm faces disqualification motions in *many* of the litigations in which it is involved, not just this one. Surely not all those litigants are intent on harassing the firm.

## CONCLUSION

For the good reasons stated here, the Court should either grant the Motion to Disqualify or, at a minimum, order discovery on the Motion.

Respectfully submitted,

RIVERO MESTRE LLP
2525 Ponce de Leon Boulevard,
Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: abrown@riveromestre.com
Email: ahenry@riveromestre.com
Email: rkuntz@riveromestre.com
Email: receptionist@riveromestre.com
*Counsel for Ramona Ang, as Trustee for the Tulip Trust*

By: s/ Andres Rivero
ANDRES RIVERO
Florida Bar No. 613819
AMY C. BROWN
Admitted *Pro Hac Vice*
ALLISON HENRY
Florida Bar No. 1003008
ROBERT KUNTZ
Florida Bar No. 94668

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(3), I certify that my colleague, Amy Brown, attempted to confer with counsel for W&K on March 14, 2023, but received no response.

**CERTIFICATE OF SERVICE**

      I certify that on March 17, 2023, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

                      By: /s/ Andrés Rivero.
                         Andrés Rivero