UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC

    plaintiffs,
v.                                                        Case No. 9:18-cv-80176 (BB/BR)

CRAIG WRIGHT.
_____/

### NON-PARTY RAMONA ANG'S OPPOSITION TO APPEAL OF ORDER DENYING MOTION TO STRIKE APPEARANCE OF PAUL C. HUCK, JR.

Ramona Ang, as trustee of the Tulip Trust, submits this amicus brief in opposition to the appeal from the order denying the motion to strike the appearance of Paul C. Huck, Jr., filed by Freedman Normand & Friedland LLP and Boies Schiller Flexner LLP (together, the law firms), purportedly on behalf of W&K. [DE 955.][1]

### PRELIMINARY STATEMENT

"As always, context matters." That is how the law firms begin their appeal. Yet the law firms ignore entirely the context in which W&K was brought back to life for the sole purpose of suing Dr. Wright. They ignore the unassailable fact—which Ira Kleiman has admitted—that his brother only owned a 50% interest in W&K and, consequently, that the Estate cannot own more than that amount. Instead, they point as "context" to the falsehood that Ira Kleiman, with the

---

[1] Judge Reinhart recognized Ms. Ang as an interested non-party. Ms. Ang previously filed her Opposition to the Motion to Strike the Appearance of Paul C. Huck, Jr. [D.E. 935] which Judge Reinhart treated as an Amicus Brief [D.E. 950 at pg. 3] Ms. Ang now serves this brief in opposition to the appeal.

1

assistance of the law firms, has perpetuated for the last five years, namely, that he has the sole authority to control W&K.

This Court has *never*, however, determined the precise ownership of W&K. And though Magistrate Reinhart denied the motion to strike on jurisdictional grounds, his order recognized that the question of W&K's ownership was never before this Court. He acknowledged that the claims at issue in this action "disputed the legal rights to intellectual property and the proceeds of that intellectual property, *not who currently has authority to make decisions for W&K*." [DE 950 at 6] (emphasis added). The jury never considered that question, which is one of state corporate law, and this Court has no jurisdiction to answer it now.

Until a court decides W&K's exact ownership—and unless a court finds the Estate to be its 100% owner (which is not possible)—Mr. Huck has the right to appear on behalf of W&K. For that simple reason, the order denying the motion to strike should be affirmed.

## THE RELEVANT "CONTEXT" [2]

### A. Ira Kleiman's Resurrection of W&K for Purpose of Suing Dr. Wright

When Ira Kleiman initially commenced this action in February 2018, he commenced it on his own, as personal representative of the Estate. [DE 1.] The original complaint acknowledged that the precise ownership of W&K was unknown. [DE 1 at ¶ 66, alleging that David Kleiman owned somewhere between 50% to 100% of W&K.] And at the time of the complaint's filing, W&K was defunct. [DE 935 at 16.]

Before the parties engaged in briefing, and for purposes of satisfying meet and confer obligations, Dr. Wright advised Ira Kleiman of his intent to move to dismiss the complaint for,

---

[2] The evidence concerning W&K's ownership are set forth both in Dr. Wright's Opposition to Motion to Compel Completion of Form 1.977 [DE 915] and Ramona Ang's Opposition to the Motion to Strike [DE 935]. They are repeated here only where necessary.

among other things, lack of standing to pursue a claim against an individual (Dr. Wright) for property belonging to an LLC (W&K). [DE 12 at 50-52.]

On April 12, 2018, for the sole purpose of curing the complaint's deficiency as to standing, Ira Kleiman—unilaterally and without authority—reinstated W&K. *Id*. at Ex. D. On May 18, 2018, he filed an amended complaint that added the recently revived W&K as a party. [DE 24.] In it, Ira Kleiman alleged that a "fake contract" specified that David Kleiman held legal title to 100% of W&K, while holding 50% in trust for Craig." *Id*. at ¶ 70. He then referenced other documents indicating that David Kleiman and Dr. Wright each held a 50% interest, and stated: "[I]t makes sense Craig would have some form of indirect interest as the entity appeared to be named after them both: **W**right & **K**leiman." *Id*. The Second Amended Complaint repeated this allegation. [DE 83 at ¶ 70.]

B. <u>Counsels' Perpetuation of Ira Kleiman's Farce</u>

When it came time for discovery and, in particular, depositions, Ira Kleiman was faced with a dilemma. W&K needed a corporate representative to testify on its behalf and, of course, Ira Kleiman knew nothing about the company he had only recently reinstated. Nor did he have any information about W&K from David Kleiman, because he had almost no relationship with his brother in the years prior to his death.

So, Velvel Freedman, one of Roche Freedman's namesakes, tasked himself with finding a corporate representative for W&K. He reached out to an attorney he had met approximately one year earlier in an online attorney chat group (Zachary Eisner), called the guy up, invited him to lunch, and "told him what he needed [him] for." (**Exhibit A**, Eisner Depo. Tr. 5:15 – 6:20.) Following that lunch, Mr. Eisner had a less than 15-minute phone conversation with Ira Kleiman. (Ex. A at 13:18 – 13:22.) The only information he received to prepare for the deposition he

3

received from Roche Freedman. (Ex. A at 14:5 – 14:7, 18:4 – 25:18.) That information mainly consisted of the complaint and the exhibits attached to it.

Now, if Ira Kleiman was actually in "control" of W&K, Mr. Freedman wouldn't have needed to go out and find the company some random corporate representative who knew nothing about W&K, and who learned everything he did know from the self-serving complaint and exhibits attached to it, to testify as W&K's corporate representative. But that's what he did, apparently in an effort to imbue the company with some degree of legitimacy. And then, in the three years since, Ira Kleiman has continued to claim, without any basis, that he (through the Estate) is the sole owner of the company with the sole power to control it.

C. **Ira Kleiman's Admissions Concerning the Ownership of W&K**

At trial, however, Ira Kleiman admitted that his brother owned only a 50% interest in W&K:

Q. Now, you, sir, claim that Dave Kleiman and Craig Wright had a 50/50 partnership to invent and mine Bitcoin; isn't that right?

A. Right.

Q. Mr. Kleiman, I want to talk with you about things you know about your brother, Dave Kleiman, from during his lifetime. Do you understand me?

A. Yes.

Q. In life, Dave Kleiman never mentioned the name Craig S. Wright to you; isn't that right?

A. That is correct.

Q. And in life, he never showed you any written business partnership agreement that he had with Dr. Craig Wright to invent or mine Bitcoin, did he?

A. That's correct.

Q. And he never said to you: "I have a business partnership with Craig Wright to invent or mine Bitcoin." Right?

A. Right.

Q. And in fact, you have conceded under oath that you do not know any details of how any alleged business relationship was structured, if one existed. Have you not conceded that under oath?

…

Q. Isn't it true that you have said that you do not know the details?

A. I only know what Craig has told me.

Q. Okay. So other than anything Craig Wright said to you, you don't know anything about any details of any business arrangement, right?

A. Correct.

Q. And Craig Wright -- and you just went through it with your counsel -- Craig Wright never gave you any writing that indicated a split of profits on a 50/50 basis, did he?

A. He told me from the beginning that they were 50/50 partners.

Q. I see, sir. What your testimony to the jury is, regardless of the paper we just saw that your counsel took you through every scrap of paper they wanted to, you're saying orally Craig Wright said that to you. Is that your testimony?

A. No. He emailed it to me.

Q. You're saying that we've seen an email where Craig Wright said there was a division 50/50 on the invention and mining of Bitcoin?

A. That they were 50/50 partners in W&K.

Q. Mr. Kleiman, I want to make sure I understand what you're saying. Are you telling the jury that we have seen a document today like that?

A. You may not have seen it today. But I believe that I have possession of emails such as that.

Q. Okay, sir. You believe you have in your possession an email where Dr. Craig Wright says there was a 50/50 deal. That's what you're saying?

A. Something similar. I don't remember the exact details, but –
…
THE WITNESS: Yes. I believe that I have seen email

communications where there was a division of assets that they owned in W&K. [**Exhibit B**, Trial Tr. Day 3 153:5–155-25.].

After trial, Ira Kleiman admitted for a second time that his brother only owned a 50% interest in W&K in the notice he personally filed with the Court complaining about the inadequate representation he was receiving from the law firms. [DE 918.] There, he wrote that "there was one certainty that always existed, the indisputable fact that my brother's estate received 50% ownership in a company called CO1N-Exch," which was to be the successor to W&K. *Id*. This statement likewise constituted an admission that his brother only ever held—and the Estate could therefore ever only hold—a 50% interest in W&K.[3]

### D. The Engagement of Mr. Huck and Motion to Strike

On November 23, 2022, Ms. Ang, in her capacity as trustee of the Tulip Trust, and Lynn Wright (together, the "Majority Members") executed a Written Consent of Members discharging the law firms as counsel to W&K. [DE 935, Ex. E.] By another Written Consent effective January 24, 2023, the Majority Members engaged Mr. Huck. *Id*. Ex. F. Mr. Huck filed a notice of appearance on January 26, 2023 [DE 917], just before Ira Kleiman filed his "notice" excoriating his counsel. [DE 918.] Ira Kleiman's motion to strike followed.

### E. Magistrate Reinhart's Order Denying the Motion to Strike

Magistrate Reinhart denied the motion to strike, finding it was really a motion for declaratory judgment as to W&K's ownership that the court lacked Article III jurisdiction to

---

[3] The law firms make much of Dr. Wright's inconsistent statements as to who owns W&K. Those statements are a matter of public record and need not be regurgitated here. But whatever Dr. Wright has said, the fact remains is that there is *zero* evidence that David Kleiman ever owned more than 50% of W&K. So *someone*—whether Ms. Ang, Ms. Wright, or Dr. Wright himself—owns the other 50%.

decide. [DE 950 at 4.] Magistrate Reinhart also declined to exercise supplemental jurisdiction over the question, stating:

> Here, the question of who controls W&K does not arise from the same common nucleus of facts as the underlying dispute among W&K, the Estate, and Dr. Wright. ***Those claims disputed the legal rights to intellectual property and the proceeds of that intellectual property, not who currently has authority to make decisions for W&K***.

*Id*. at 6 (emphasis added). In other words, the current constitution of W&K was never before the Court, and the Court has no jurisdiction to consider that question now. That finding was correct and should not be disturbed.

## ARGUMENT

The law firms spend most of their brief addressing Magistrate Reinhart's determination that this Court lacked jurisdiction to consider the merits of the motion to strike.[4] But even assuming jurisdiction, the Order should be affirmed because the ownership of W&K remains in dispute, as does the question of who is authorized to represent it. Unless and until a state court determines that Ira Kleiman has the lone right to control W&K—and he doesn't—Mr. Huck's appearance should stand, as he was properly engaged by other members of W&K who together own a controlling interest in the company. *See Sec. & Exch. Comm'n v. Lauer*, 2015 WL 11005004, at *2 n.4 (S.D. Fla. Nov. 25, 2015) (attorney for individuals were "not authorized to file any requests for relief on behalf of [the companies] because they [were] not authorized to make litigation decisions on behalf of these companies.");*Denim N. Am. Holdings, LLC v. Swift*

---

[4] Notably, in their appeal, the law firms state that the Court previously determined on summary judgment that, even if diversity jurisdiction did not exist, it would exercise supplemental jurisdiction to decide the ownership of W&K [DE 955 at 9, citing DE 615 at 35]. That is a complete misrepresentation of the Court's decision. Plaintiffs argued on summary judgment that, if diversity jurisdiction was lacking, the Court should exercise supplemental jurisdiction over Ira Kleiman's common law fraud claims. [DE 533 at 30-32.] That was what the Court was referencing when it stated it would exercise supplemental jurisdiction in the absence of diversity. It had nothing to do with jurisdiction over the question of ownership.

*Textiles, LLC,* 2011 WL 97238, at *3 (M.D. Ga. Jan. 12, 2011) (counsel for 50% owners of company did not have authority to file complaint); *In re Crowder*, 2006 WL 6589000, at *2 (Bankr. N.D. Ga. July 10, 2006) ("An attorney has no business protecting an entity by filing an answer on its behalf if that entity has not authorized the attorney to do so.")

The law firms try to spin the prior, pre-trial rulings of this Court into a final determination that the Estate owns and Ira Kleiman controls 100% of W&K. There has never been any such determination by the Court. The pre-trial rulings upon which the law firms rely are the following:

- **Dr. Wright's motion to dismiss.** Dr. Wright argued, among other things, that the Estate lacked standing to bring claims against Dr. Wright. [DE 33 at 15.] Plaintiffs argued that they had sufficiently alleged, for purpose of surviving a motion to dismiss, that David Kleiman was the sole owner of W&K, and the Estate therefore had standing to assert direct claims on behalf of W&K. [DE 50 at 7.] The Court denied the motion to dismiss, finding that the Estate sufficiently alleged injury for loss of intellectual property and therefore had standing to sue. [DE 68 at 12.] *The Court did not—and could not at the dismissal stage—find that David Kleiman was the sole owner of W&K.*

- **Dr. Wright's motion for judgment on the pleadings**. Dr. Wright argued that the Court lacked diversity jurisdiction because W&K had foreign members. [DE 144.] The Court held that Dr. Wright had failed to meet his burden of production that W&K had foreign members, or members other than David Kleiman. [DE 265 at 10.] *The Court did not find that David Kleiman was the sole owner of W&K.*

- **Dr. Wright's motion for summary judgment**. Dr. Wright argued that the Court lacked diversity jurisdiction because W&K had foreign members, including Lynn Wright, and that the Estate lacked authority to prosecute the action on behalf of W&K because it did not hold a majority interest in the company. [DE 487, at 23-24.] The Court found that Dr. Wright had failed to meet his burden to prove that no material issue of fact existed with respect to W&K's foreign ownership and, consequently, rejected the argument that Ira Kleiman lacked authority to file the action on behalf of W&K. [DE 615 at 34-35.] *The Court did not find that David Kleiman was the sole owner of W&K.*

- **Plaintiffs' motion to compel.** Plaintiffs moved to compel Dr. Wright to provide a list of his Bitcoin holdings. Dr. Wright argued that he could not comply because the information was contained in a blind trust (Tulip Trust I), of which he was only one of several trustees. (Dr. Wright stated that there was a second Tulip

8

Trust of which he and his wife were trustees.) [DE 211.] The Court found that Dr. Wright's testimony regarding the existence of the Tulip Trust was false, and granted the motion to compel. [Dkt. No. 277 at 21.] *W&K's ownership was not at issue on the motion to compel, and the Court made no findings with respect to it.*

None of these rulings purported to determine the exact ownership of W&K. What's more, none of these rulings purported to determine the *current* ownership of W&K, nor could they have done so. Magistrate Reinhart made that very point in his Order when he stated: "[The] claims [at issue at trial] disputed the legal rights to intellectual property and the proceeds of that intellectual property, ***not who currently has authority to make decisions for W&K***." [DE 950 at 6.] The question was never before the Court, never presented to the jury, and is the subject of two litigations pending in Florida state court.[5]

In fact, implicit in Magistrate Reinhart's order is a finding that state court is where the question of ownership belongs. In declining to exercise supplemental jurisdiction, Magistrate Reinhart stated:

> Not all of the putative members of W&K are parties, here. They likely would be indispensable parties who would have to be joined. Fed. R. Civ. P. 19(a). ***There is pre-existing parallel litigation pending for several years in Florida state court to which all putative members are parties.*** See ECF No. 933-1. So, judicial economy would not be served by expanding this federal case. ***The dispositive rules of decision are under Florida law; no federal question is presented. So, comity would be served by deferring to the Florida courts***.

[DE 950 at 7] (emphasis added.) This is absolutely correct under the internal affairs doctrine, which provides that matters of state corporate law are for a state court to decide. *See*

---

[5] As a matter of corporate law, Ira Kleiman never had the authority to act on behalf of W&K, except as to settle his brother's Estate. Fla. Stat. Ann. § 605.0504 (West) ("If a member who is an individual dies or a court of competent jurisdiction adjudges the member to be incompetent to manage the member's person or property, the member's legal representative may exercise all of the member's rights ***for the purpose of settling the member's estate or administering the member's property***, including any power the member had to give a transferee the right to become a member." (emphasis added). That limited statutory authority does not and never did give Ira Kleiman the power to direct the company's affairs.

9

*Commonwealth of Pennsylvania v. Williams*, 294 U.S. 176, 185 (1935) ("It has long been accepted practice for the federal courts to relinquish their jurisdiction in favor of the state courts, where its exercise would involve control of or interference with the internal affairs of a domestic corporation of the state.")

And as Magistrate Reinhart observed, the state court litigations commenced by the Majority Members have been pending for a long time now. Ms. Wright filed her petition to determine her ownership interest in W&K in probate court on July 16, 2020—nearly *three years* ago and approximately *18 months before* the W&K judgment was entered. [DE 933-2.] Ms. Ang subsequently joined that litigation.[6] Since then, Ira Kleiman, through his counsel, has done everything in his power to stonewall the litigation. First, he sought and obtained a stay of discovery pending the trial in this action. The Majority Members promptly moved to lift the stay once the judgment was entered. But then Ira Kleiman sought and obtained a further stay of the litigation pending the Estate's Eleventh Circuit Appeal—***even though the W&K judgment is not before the Eleventh Circuit***. Given these delay tactics, the state court litigations have gone nowhere, and the Majority Members were forced to take action to protect their interests in W&K *in this case*. Because, surely, the Estate is not entitled to collect 100% of the W&K judgment if it does not own 100% of W&K, which is beyond dispute.

In sum, irrespective of how Magistrate Reinhart got there, he was correct in his determination that Mr. Huck's appearance should not be stricken until the state courts decide who really owns W&K and has the authority to control it.

---

[6] Ms. Ang also commenced her own declaratory judgment action circuit court. *Ramona Ang, as Trusteee of the Tulip Trust v. Ira Kleiman*, 50-2021- CA-004758-XXXXMB.

## CONCLUSION

For the reasons stated here, the Court should affirm Magistrate Reinhart's order denying the motion to strike Mr. Huck's appearance.

Respectfully submitted,

RIVERO MESTRE LLP
2525 Ponce de Leon Boulevard,
Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: abrown@riveromestre.com
Email: ahenry@riveromestre.com
Email: rkuntz@riveromestre.com
Email: receptionist@riveromestre.com
*Counsel for Ramona Ang, as Trustee of the Tulip Trust*

By: s/ Andres Rivero
ANDRES RIVERO
Florida Bar No. 613819
AMY C. BROWN
Admitted *Pro Hac Vice*
ALLISON HENRY
Florida Bar No. 1003008
ROBERT KUNTZ
Florida Bar No. 94668

## CERTIFICATE OF SERVICE

I certify that on April 17, 2023, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

By: /s/ Andrés Rivero.
Andrés Rivero