COMPOSITE EXHIBIT B

IN THE 15TH JUDICIAL CIRCUIT,
IN AND FOR PALM BEACH COUNTY,
FLORIDA

CASE NO. 50-2013-CP-005060-XXXX-NB
PROBATE DIVISION

IN RE:  ESTATE OF DAVID ALAN
KLEIMAN,

     Deceased.

---

LYNN WRIGHT,

     Petitioner,

v.

IRA KLEIMAN, as Personal Representative
of the Estate of David Kleiman,

     Respondent,

and

DR. CRAIG WRIGHT, TULIP TRUST,
UYEN T. NGUYEN, W&K INFO DEFENSE
RESEARCH, LLC, a Florida limited liability
company, and COIN-EXCH PTY, LTD., an
Australian proprietary limited company,

     Interested Parties.

**Adversary Proceeding
Case No. _____**

**RESPONDENT'S OPPOSITION TO MOTION FOR ORDER
DECLARING THAT IRA KLEIMAN HAD AND HAS NO AUTHORITY
TO ACT FOR W&K INFO DEFENSE RESEARCH , LLC**

EXHIBIT B1

Respondent Ira Kleiman, as Personal Representative of the Estate of David Kleiman, hereby responds to Petitioner Lynn Wright's Motion for Order Declaring that Ira Kleiman Had and Has No Authority to Act for W&K Info Defense Research, LLC.[1]

## INTRODUCTION

Lynn filed this action on July 16, 2020. Ira has moved to dismiss. A hearing on that motion is set before the Court on December 3, 2020.

Before filing a response to that Motion, let alone giving the Court an opportunity to rule on it, Lynn filed the instant motion essentially seeking an Order that she wins before her Petition even survives a motion to dismiss (it should not as it has no merit). Not surprisingly, Lynn fails to cite to any procedural rule allowing for her "I win, you lose" motion, because nothing exists to support this preposterous proposition.

The substance of the instant motion is no better. Lynn's basis for asking this court to enjoin W&K from pursuing a two-and-a-half-year-old federal litigation with billions of dollars at stake on the eve of trial is a **six-page motion** citing **one partially-reversed case** from **Louisiana (**a civil law jurisdiction) which interpreted a **Louisiana statute** that is (as recognized by commentators) materially different **from the applicable Florida** statute in this case.

On top of that, Lynn's motion is premised on demonstrably false "facts," including her assertion that is a member of W&K with standing to assert her claims. Even if that was true (it's not), Lynn's motion still flatly fails as a matter of law for the reasons set forth in Respondent's pending motion to dismiss, and for additional reasons set forth in this response.

Notwithstanding her frivolous argument, Lynn seeks "expedited consideration" and instructs this Court that it is "imperative" her motion be granted. The source of this urgency,

---

[1] This motion will use first names due to the two "Kleimans" and two "Wrights" at issue. No disrespect is intended.

according to Lynn, is that she "just recently learned that [the personal representative of the Estate] pledged the assets of W&K to a litigation funding company without authority." That makes no sense. Any such pledge occurred years ago and nothing "urgent" necessitates quick action by this Court. Instead, what makes sense is that Lynn's desperation—or, more accurately, her ex-husband Craig's—stems from Craig's recent loss in the Federal Action, where, on September 21, 2020, the federal court wholly denied his motion for summary judgment—**including by rejecting his argument that the Estate lacked authority to commence the Federal Action on behalf of W&K**—and granted Plaintiffs' motion for partial summary judgment on all but two of Craig's affirmative defenses.

Having suffered this setback, Craig—through his ex-wife Lynn—is using this motion in a last-ditch effort to raise the same arguments and avoid a trial on the merits in the Federal Action. This Court should reject this gambit for what it is: a frivolous motion unsupported by facts or law filed by an adjudicated perjurer and forger through his financially dependent ex-wife, to assert defenses that failed in the Federal Action. The motion should be denied.

## FACTUAL BACKGROUND

Ira included a full recitation of the facts in this case in his August 4, 2020 motion to dismiss (which is set for hearing on the same day as the instant motion). For efficiency, Ira incorporates the facts from that motion by reference, and presents a very limited overview of the most salient facts herein.

### I.     The Petition

On July 16, 2020, Lynn filed the Petition where she seeks (among other things) "a declaration, pursuant to section 86.041, Florida Statutes, that Ira did not and presently does not have authority as personal representative of the Estate to initiate the [Federal Action] against Craig

on behalf of [W&K], that he is not a member of [W&K] with the right to vote with respect to the transfer of membership interests in [W&K] and does not have authority to hold himself out as such, and that he does not have authority to act on behalf of [W&K]." (Pet. ¶ 50.) Additionally, "[p]ursuant to section 86.041(3), Florida Statutes, Lynn seeks an order directing Ira, as personal representative of the Estate and in his individual capacity, to immediately cease any and all of these unauthorized activities and enjoining Ira from further acting on behalf of [W&K] in any manner." (*Id.* ¶ 50.) Thus, Lynn seeks to obtain an order from this Court directing the Estate to dismiss W&K's claims in the Federal Action, on the basis that the Estate lacks authority to act on behalf of W&K.

Lynn alleges that she acquired her interest in W&K on July 10, 2020—**just six days before she filed the Petition and over two years after the Federal Action was filed**. (*Id.* ¶ 30.) She purportedly obtained this interest from Tulip Trust, although she does not provide any evidence the transfer actually occurred. (*Id.*) She asserts that Tulip Trust is a "foreign trust," that her ex-husband Craig is a beneficiary of that trust, and that the trustee is Craig's current wife, Ramona Ang. (*See id.* ¶¶ 6-7, 21-22.) She further claims that Craig used to be the trustee of this trust. (*See id.* ¶¶ 13, 17, 20.) Although the Petition is somewhat ambiguous on this point, it appears that Lynn alleges that Tulip Trust f/k/a Craig Wright R&D continually held an interest in W&K since its formation in February 2011. (*See id.* ¶¶ 13, 17-22, 30.)

Lynn suggests W&K may have other members, including Uyen Nguyen and Coin-Exch Pty, Ltd. ("Coin-Exch"). (*See id.* ¶¶ 25-26.) She also claims that she, along with Craig Wright R&D and Dave Kleiman, were original members of W&K, but that she transferred her entire interest to **Craig Wright R&D** in December 2012. (*See id.* ¶¶ 13-14, 19.) Thus, according to Lynn she had no interest in W&K between December 2012 and July 2020.

## II.    The Federal Action

Since early 2018, the Estate and W&K have been litigating claims against Craig in the Federal Action. In that action, plaintiffs allege Craig misappropriated billions of dollars in bitcoin and blockchain-related intellectual property shortly after Dave Kleiman died in April 2013. (*See* Am. Compl. ¶¶ 7-19, *Kleiman v. Wright*, No. 9:18-cv-80176-BB (S.D. Fla. May 14, 2018) ("*Kleiman*"), ECF No. [24].)

Craig moved to dismiss those claims in June 2018, arguing (among other things) that the Estate lacked authority to act on behalf of W&K. (*Kleiman*, ECF No. [33], at 15). In December 2018, the court rejected that argument. *Kleiman v. Wright*, No. 9:18-cv-80176, 2018 WL 6812914, at *6 (S.D. Fla. Dec. 27, 2018).

Undeterred, in April 2019, Craig moved for judgment on the pleadings arguing the court lacked subject-matter jurisdiction because W&K had alien members—including Uyen Nguyen and Coin-Exch—that defeated diversity. (*See* MJOP, *Kleiman*, ECF No. [144].). Soon after Craig filed that motion, his counsel was forced to withdraw two exhibits purportedly showing Nguyen's membership because they were exposed as forgeries. *See Kleiman v. Wright*, No. 9:18-cv-80176, 2019 WL 3841931, at *3 (S.D. Fla. Aug. 15, 2019). To try and salvage his motion, Craig argued for first time on reply—and almost a year and a half after the litigation had commenced—that his ex-wife, Lynn, may also be a member of W&K. *See Kleiman*, 2019 WL 3841931, at *4. He never argued or claimed that his "Tulip Trust" was a member of W&K.

In August 2019, the court denied the MJOP, holding that Craig had "failed to present any *credible* evidence showing that any of the parties he suggests are *members* of W&K." *Id.* at *2 (emphases in original). The only evidence Craig ever offered of Lynn's membership in W&K was an email between Dave, Lynn, and Craig that the Court concluded was, at most, ambiguous. *See*

*id.* at *4. The court further noted that Craig had failed to identify Lynn in a "sworn affidavit" purportedly identifying "all potential witnesses relevant to [the] lawsuit." *Id.* at *5.

The court concluded that Craig's testimony was simply not credible and that "the record [was] replete with instances in which [Craig] ha[d] proffered conflicting sworn testimony before [the] Court." *Id.* The court explained that Craig had "made ***several conflicting statements*** regarding even his own ownership of W&K." *Id.* at *2 (emphasis in original). The court summed up the situation by quoting Sir Walter Scott's *Marmion*: "***Oh! What a tangled web we weave when first we practice to deceive***." *Id.* (emphasis in original).

Again, Craig never once argued his Tulip Trust was a member of W&K. In fact, at that time, Craig's sworn statements—including an affidavit that he provided to the federal court in April 2018, and his sworn deposition testimony from June 2019—asserted that he had "**never** been a member of W&K," and that he had "**no idea** who the owners of W&K were." *Id.* (emphasis added). Of course, this is directly at odds with Lynn's new story that (1) Craig was the trustee, and then the beneficiary, of a trust that is the "sole member with the right to vote with respect to the transfer of membership interests of [W&K]," and (2) Craig has had an ownership interest in W&K (through his Tulip Trust) since February 2011. (*See* Pet. ¶¶ 6-7, 13, 17-22, 30.)

Around the same time Craig's MJOP was denied, the parties in the Federal Action were engaged in an intense discovery dispute. For months, Craig refused to provide evidence relating to his bitcoin holdings, despite court orders requiring him to. *See Kleiman v. Wright*, No. 9:18-cv-80176, 2019 WL 4023392, at *1-6 (S.D. Fla. Aug. 27, 2019), *order vacated in part on other grounds*, 2020 WL 113396 (S.D. Fla. Jan. 10, 2020). Craig claimed it was "impossible" for him to produce this information because it was locked in an encrypted file held by the very same "Tulip Trust." *See id.* at *4-6. As a result, federal Magistrate Judge Bruce Reinhart entered an order to

show cause and held a two-day evidentiary hearing in which Craig Wright personally appeared and testified. Plaintiffs presented evidence Craig had fabricated his evidence that this "Tulip Trust" even existed. *Id.* at \*11. At the conclusion of that hearing, Judge Reinhart found, by "clear and convincing evidence"—**that the Tulip Trust did not exist and Craig's testimony that it did was intentionally false**. *Id.* at \*11 & n.11. ("I find that Dr. Wright's testimony that [the Tulip] Trust exists was intentionally false."). More broadly the court wrote that "I have found that Dr. Wright **intentionally submitted fraudulent documents to the Court, obstructed a judicial proceeding, and gave perjurious testimony**. No conduct is more antithetical to the administration of justice.".[2] *Id*. at \*14 (emphasis added). Lynn now shamelessly claims that this same **non-existent trust** was not only a member of W&K, but that it subsequently transferred an interest in W&K to her on July 10, 2020. (*See* Pet. ¶ 30.)

On May 8, 2020, Craig sought summary judgment on six grounds, including (i) that the court lacked subject-matter jurisdiction because Lynn was a member of W&K, and (ii) that the Estate "lacked authority to file [the Federal Action] on behalf of W&K." (*See* MSJ at 30-32, *Kleiman*, ECF No. [487].) His motion relied on Lynn's January 13, 2020, deposition testimony that she has continuously owned her membership in W&K. (L. Wright Dep. at 98:22-99:5, *Kleiman*, ECF No. [488-17].) Craig asserted that, "[i]n her deposition, [Lynn] explained how and why W&K was formed, and testified that she has an ownership interest in the company." (*Id.* at 31.) Craig claimed this testimony was fatal to plaintiffs' case and had "indicia of reliability because [Lynn] has no reason to lie for Dr. Wright." (MSJ at 30-31, *Kleiman*, ECF No. [487].)

---

[2] As part of that order, Magistrate Judge Reinhart imposed sanctions that deemed certain key facts established in plaintiffs' favor. *See id.* at \*13-15. District Judge Bloom later concluded that those sanctions were improper on due-process grounds (because the deemed facts were not sufficiently related to the discovery issue pending before Judge Reinhart). **That said, she unequivocally upheld Judge Reinhart's credibility findings**. *See Kleiman*, 2020 WL 113396, at \*7 ("The Court has also reviewed the transcripts from the Evidentiary Hearing held by Judge Reinhart and agrees with his credibility findings relating to the Defendant.").

In opposition, plaintiffs explained Lynn did have an incentive to lie because "[a]t her deposition, [she] testified that she is financially dependent on [Craig] making monthly alimony payments, that she has previously complied with requests from [Craig] out of fear that he would cut off her monthly support, and that she had falsely confessed to a speeding infraction committed by [Craig]." (Opp. to MSJ at 28-29, *Kleiman*, ECF No. [549] (internal citations omitted).)

Plaintiffs further observed in contrast to the testimony Craig cited, other testimony Lynn provided indicated any interest in W&K she might have had was transferred to Craig in 2012 and therefore she unequivocally had *no interest* at the time the Federal Action was commenced. (*See id.* at 30.). With respect to Craig's argument that the Estate lacked authority, Plaintiffs argued that, "Ira was the sole member of W&K (as the properly appointed Personal Representative) and had full authority to initiate this action on W&K's behalf." (*Id.* at 33.) Indeed, W&K's corporate representative had testified "that the only individuals who have ever been members of W&K are David and (after he died) Ira Kleiman." (*Id.* at 27.)

On September 21, 2020, the court issued a 93-page order fully denying Craig's motion for summary judgment. *See Kleiman v. Wright*, No. 9:18-cv-80176, 2020 WL 5632654, at *1 (S.D. Fla. Sept. 21, 2020). With respect to Craig's subject-matter jurisdiction argument, the court held that Craig had "failed to present credible evidence that Ms. Wright was a member of W&K." *Id.* at *18. Additionally, the court completely rejected Craig's argument that the Estate lacked authority to commence the Federal Action: **"[T]he Court rejects Defendant's argument that Ira Kleiman lacked the authority to file this action on behalf of W&K without Ms. Wright's consent**, which in his view requires dismissal of W&K's claims." *Id.* at *19 (emphasis added).

In contrast, the court granted most of plaintiffs' motion for summary judgment, striking twelve of Craig's fourteen affirmative defenses. *See id.* at *38-45. Further, Craig's surviving

defenses—statute of limitations and laches—are unrelated to the issues presented in the instant Motion (and underlying Petition). *See id.* at *42.

### III.    The Motion

On October 2, 2020, *i.e.,* days after the court in the Federal Action fully denied Craig's motion for summary judgment, Lynn filed the instant Motion, for which she requests "expedited consideration" (Mot. at 1). In her motion, Lynn informs this Court that it is "imperative" it "declare, as a matter of law, that Ira was not and, is not, authorized to act for W&K." (*Id.* at 7.)

This is the same relief Lynn sought in the Petition filed July 16, 2020 (*see* Pet. ¶¶ 50-51) that Ira has moved to dismiss on August 4, 2020. Ira's motion to dismiss is currently pending, and a hearing on that motion is scheduled for the same day as this motion. Lynn has not yet filed a responsive brief, Respondent has not yet filed an answer, and discovery has not begun. In other words, Lynn is asking to be declared the prevailing party, before her Petition has even survived a motion to dismiss and before the merits of the case (or lack thereof) have been addressed.

### LEGAL STANDARD

There is no clear legal standard to apply to Lynn's motion because it is not brought under any rule of procedure. The most analogous motion would be one for summary judgment. "[W]hen the plaintiff moves for summary judgment before an answer has been filed, 'the burden is upon the plaintiff to make it appear to a certainty that no answer which the defendant might properly serve could present a genuine issue of fact.'" *Getman v. Tracey Constr., Inc.*, 62 So. 3d 1289, 1291 (Fla. 2d DCA 2011) (quoting *Settecasi v. Bd. of Pub. Instruction of Pinellas County*, 156 So. 2d 652, 654 (Fla. 2d DCA 1963)). "Thus, the standard to establish entitlement to summary judgment requires the plaintiff to establish that 'the defendant *could not* raise any genuine issue of material fact if the defendant were permitted to answer the complaint.'" *Id.* (quoting *Howell v. Ed Bebb,*

*Inc.*, 35 So. 3d 167, 168-69 (Fla. 2d DCA 2010)) (emphasis added). "The standard is extremely high and the plaintiff's burden is extremely heavy." *Id. (*emphasis added). Such a motion should be denied if it does "not negate every possible defense which could have legally been raised by way of an answer." *Beach Higher Power Corp. v. Granados*, 717 So. 2d 563, 564-65 (Fla. 3d DCA 1998) (emphasis added).

## ARGUMENT

*First*, Lynn's motion should be denied because if her petition survives the pending motion to dismiss (it shouldn't) Ira can, and will, raise genuine issues of material fact in his answer. Contrary to Lynn's allegations, she is not a member of W&K. W&K had only a single member (Dave) at the time of Dave's death. Lynn therefore lacks standing to proceed directly or derivatively in this matter. The Estate, on the other hand, became a member of W&K following Dave's death. Even if other members actually existed (they don't), their consent is unnecessary for the Estate to become a member of W&K.

*Second*, even if Lynn's baseless allegations were true, her argument still fails as a matter of law. In addition to the bases set forth in Respondent's motion to dismiss, this motion should be denied because Ira, as personal representative of the Estate, has the authority to settle the Estate's claims, including by pursuing litigation on behalf of W&K. Lynn's motion also fails because she relies on the wrong version of Florida's LLC statute for her conclusion that Dave forfeited his membership in W&K when he died in April 2013. Finally, her claim would be barred by Florida's claim-splitting doctrine.

## I.  Respondent can, and will, raise genuine issues of material fact in its answer

### a.  Lynn Lacks Standing

If Lynn was not a member of W&K at the time she commenced the Petition, then she lacks standing to assert her claim. This issue of material fact must be decided before Lynn can prevail on her petition.

Ira's position is that Lynn has never been a member of W&K. Lynn's position is that in July 2020 she received a membership interest from a trust that a Federal Magistrate Judge has found, by clear and convincing evidence, does not even exist. Since Lynn cannot have acquired a membership interest from an imaginary entity, she was not a member when she commenced the Petition and therefore lacks standing to bring her claims.

Under Florida law, only a member of an LLC may bring a derivative claim on behalf of that LLC. *See* Fla. Stat. § 605.0803 ("A derivative action to enforce a right of a limited liability company may be commenced only by a person who is a member at the time the action is commenced . . . ."); *Landmark Funding, Inc. v. Chaluts*, 213 So. 3d 1078, 1079 (Fla. 2d DCA 2017) (to have derivative standing, plaintiff must be "a member of the LLC at the time of suit").

A claim is derivative unless "(1) there is a direct harm to the shareholder or member such that the alleged injury does not flow subsequently from an initial harm to the company **and** (2) there is a special injury to the shareholder or member that is separate and distinct from those sustained by the other shareholders or members." *Dinuro Invs., LLC v. Camacho*, 141 So. 3d 731, 739-40 (Fla. 3d DCA 2014) (emphasis in original). For example, an LLC member must proceed derivatively if his or her injury results from a transfer of the LLC's property, because such harm "flow[s] from the harm to the LLC," the property's owner. *Home Title Co. of Maryland, Inc. v. LaSalla*, 257 So. 3d 640, 644 (Fla. 2d DCA 2018). The same is true when a member alleges that

someone engaged in unauthorized acts on behalf of the LLC. *See SEPTA v. Volgenau*, No. 6354-VCN, 2012 WL 4038509, at *3 n.17 (Del. Ch. Aug. 31, 2012) ("Any harm from a director's *ultra vires* action during a corporation's on-going operations would likely inure to the corporation itself, and thus, would only provide a basis for a derivative claim.").

Here, Lynn asserts that the Estate has improperly encumbered W&K's assets and otherwise acted without authority on its behalf, thereby harming W&K's "other members." (*See* Mot. at 2, 6.) Because any such harm flows from injuries allegedly suffered by W&K itself (including injuries to W&K's property), Lynn's claims are derivative, and Lynn cannot assert those claims unless she was a member of W&K at the time that she filed the Petition.[3]

At minimum, there is a dispute as to whether Lynn was a member of W&K at that time. Indeed, and as explained above, although Lynn claims to have obtained an interest in W&K from Tulip Trust on July 10, 2020 (*see* Pet. ¶ 30), the court in the Federal Action has already determined that clear and convincing evidence demonstrates the Tulip Trust does not exist. *See Kleiman*, 2019 WL 4023392, at *11 & n.11.

Even assuming the Tulip Trust *does* exist, available evidence indicates that it was never a member of W&K and therefore **could not have transferred an interest in W&K to Lynn**. As an initial matter, Craig testified in the Federal Action that he ***has no idea*** who owned W&K and that it was "not me." *See Kleiman*, 2019 WL 3841931, at *2. It strains credulity to think that Craig wouldn't know who owned W&K if his trust—that Lynn alleges *he* was a trustee of, that *he* is a beneficiary of, and that *his* current wife is now the trustee of (*See* Pet. ¶¶ 6-7, 20-22)—owned

---

[3] Even if Lynn's claims were properly construed as direct, she would still lack standing if she weren't a member of W&K. *See* Fla. Stat. § 605.0801 ("Subject to subsection (2), a *member* may maintain a direct action against another member, a manager, or the limited liability company to enforce the member's rights and otherwise protect the member's interests . . . ." (emphasis added)); *cf. Urdan v. WR Capital Partners, LLC*, No. 2018-0343-JTL, 2019 WL 3891720, at *11-12 (Del. Ch. Aug. 19, 2019) ("There is no need to parse the derivative-versus-direct distinction because, assuming for the sake of argument that the claim was direct, the plaintiffs lost their ability to assert it when they voluntarily sold their shares.").

membership interest in it. Furthermore, Craig has **twice** tried to dismiss the Federal Action on the basis that W&K had foreign members. To that end, he has claimed that Uyen Nguyen, Coin-Exch, and Lynn were all members of W&K. Indeed, he was so desperate to prove this point that he attached forged emails to his motion for judgment on the pleadings that his counsel was forced to withdraw when the public exposed the forgery. Notably, in more than two years of litigation and despite multiple attempts to destroy the Federal Court's subject matter jurisdiction—Craig *never* claimed the Tulip Trust (a foreign trust) was a member of W&K. His failure to do so is telling and creates another dispute of material fact.

### b. The Estate became a member of W&K

Lynn claims that the Estate did not become a member of W&K following Dave's death. This argument is premised on her view that, following the death of an LLC member, that member's estate is treated as an "assignee" who "may not vote or otherwise participate in the management of the LCC unless he is actually admitted to membership, ***which requires the unanimous consent in writing of the other members of the LLC***." (Mot. at 6 (emphasis added).) Even accepting that premise, Lynn's argument fails if Dave was the sole member because, under such circumstances, no consent would have been required and the Estate would automatically become a member. Lynn alleges that W&K had other members at the time of Dave's death, including the Tulip Trust f/k/a Craig Wright R&D and, possibly, Uyen Nguyen and Coin-Exch (*see* Pet. ¶¶ 11-14, 17-19, 25-26). Respondent disputes that fact. Thus, as explained below, this motion is, at best, premature.

"[T]he sole member in a single-member LLC may freely transfer the owner's entire interest in the LLC." *Olmstead v. FTC*, 44 So. 3d 76, 80 (Fla. 2010). Therefore, Florida's statute providing that "an assignee of a limited liability company interest may become a member only if all members other than the member assigning the interest consent," has "no application to the transfer of rights

in a single-member LLC." *Id.* at 81 (quoting Fla. Stat. § 608.433(1)). "In such an entity, the set of 'all members other than the member assigning the interest' is empty." *Id.* "Accordingly, ***an assignee of the membership interest of the sole member in a single-member LLC becomes a member***—and takes the full right, title, and interest of the transferor—without consent of anyone other than the transferor." *Id.* (emphasis added).[4]

Lynn concedes that the Estate was an "assignee" or "transferee" of Dave's membership interest in W&K. (*See* Mot. at 6.) To the extent that Dave was the only member of W&K when he died, Dave's entire interest—including his ability to control W&K—passed to the Estate. Indeed, Florida's LLC statute contemplates such a result: "If a member who is an individual dies, . . . the member's legal representative may exercise all of the member's rights for the purpose of settling the member's estate or administering the member's property, ***including the power to give a transferee the right to become a member***." Fla. Stat. § 605.0504 (emphasis added). As the sole member of W&K, Dave would have had "the power to give a transferee"—including the Estate— "the right to become a member" of W&K. *See Olmstead*, 44 So. 3d at 80-81.

At minimum, there is a dispute as to whether Dave was the sole member of W&K when he died. Indeed, as the court in the Federal Action recognized, W&K's corporate representative "testified that the only individuals who have ever been members of W&K are David Kleiman and Ira Kleiman, after Mr. Kleiman died." *Kleiman*, 2020 WL 5632654, at *18. Similarly, the court in

---

[4] Similarly, federal courts have repeatedly found that the right to manage a single-member LLC may be transferred by operation of law, even if applicable statutory provisions require the "consent" of all members before admitting a new member to the LLC. *See In re Cleveland*, 519 B.R. 304, 306 (D. Nev. 2014) ("Numerous bankruptcy courts have held . . . that where a debtor has a membership interest in a single-member LLC and files a petition for bankruptcy under Chapter 7, the Chapter 7 trustee succeeds to all of the debtor's rights, including the right to control that entity, and a trustee need not take any further action to comply with state law before exercising such control."). Indeed, where "there are no other members in the LLC, the entire membership interest passe[s] to the bankruptcy estate," and the trustee becomes a member. *In re Albright*, 291 B.R. 538, 540 (Bankr. D. Colo. 2003); *see In re Modanlo*, 412 B.R. 715, 730-31 (Bankr. D. Md. 2006) (holding that statutory provisions requiring consent to admit new LLC members are "inapplicable" and "meaningless" in the context of single-member LLCs).

the Federal Action has already rejected Craig's arguments that Uyen Nguyen, Coin-Exch, and Lynn were ever members of W&K. And as noted above, all available evidence indicates that Tulip Trust was never a member of W&K.

### c. If Lynn is correct that W&K has other members, her own motion is brought without authority[5]

As explained above, Lynn's legal argument is that a transferee of an interest in an LLC does not become a member of that LLC unless all other members consent. (*See* Mot. 4-7.) Lynn admits that she is a transferee, alleges that Uyen Nguyen and Coin-Exch *may* be members of W&K (but that she doesn't know whether they are), and does not allege that those entities consented to her admission as a member of W&K in July 2020. (*See* Pet. ¶¶ 30, 34.) Thus, accepting Lynn's legal argument, Lynn *could* be a member of W&K only if *neither* Ms. Nguyen nor Coin-Exch are members (because, in that case, their consent would not be necessary). That factual issue, however, cannot be resolved at this stage, especially given Lynn's equivocal allegations regarding Ms. Nguyen's and Coin-Exch's membership. *See Scott v. Strategic Realty Fund*, --- So. 3d ----, 2020 WL 2464807, at *5 (Fla. 2d DCA 2020) (grant of summary judgment cannot be based on "equivocal" evidence).[6]

## II. Lynn's Motion Fails as a Matter of Law

Putting aside the issue that Lynn's motion fails due to the abundance of factual issues that remain open for resolution, her motion also fails as a matter of law.

---

[5] To be sure, the Estate maintains there are no other members of W&K. This argument is included simply to demonstrate the frivolity of Lynn's current motion.

[6] Although Lynn claims that Tulip Trust is "the sole member with the right to vote with respect to the transfer of membership interests" of W&K, that allegation is based on "information and belief" and therefore cannot be considered for purposes of a motion for summary judgment. (*See* Pet. ¶ 7); *Elser v. Law Offices of James M. Russ, P.A.*, 679 So. 2d 309, 312 (Fla. 5th DCA 1996) (affidavit based on information and belief "was insufficient to support summary judgment because it was not made on personal knowledge").

### a. *Dave Did Not Become Dissociated from W&K When He Died*

Lynn asserts that "David Kleiman was dissociated from the LLC at his death," and, as a result, he was only able to convey a "transferable interest" in W&K to the Estate, which would not "entitle [the Estate] to participate in the management or conduct of the company's affairs." (Mot. at 4-5.) To support this argument, Lynn relies on Florida Statute Section 605.0602, which provides that "[a] person is dissociated as a member" if, "[i]n the case of an individual," "[t]he individual dies." (Mot. at 3.) But that provision was not effective until January 1, 2015, almost two years after Dave's death. *See* Fla. Stat. § 605.1108(2) ("*On or after January 1, 2015*, this chapter governs all limited liability companies." (emphasis added)). As a result, that provision could not have caused Dave to be dissociated from W&K. *See In re DeMasi*, 542 B.R. 13, 29 n.107 (Bankr. M.D. Fla. 2015) (relying on now-repealed Chapter 608 because "[a]ll of the acts alleged in the Plaintiff's complaint took place more than five years before [Chapter 605] took effect"); *cf. Estate of Harris v. Abbott Acquisition Co., LLC*, No. 16-cv-243, 2017 WL 3608138, at *8-9 (W.D. Pa. Aug. 22, 2017) (noting that "[s]ome states' LLC laws expressly provide for *termination of a member's membership* in an LLC upon the death of that member," but that, although Pennsylvania's new statute contained such a provision, Pennsylvania's older statute, which did not include such a provision, was applicable) (emphasis in original).

Instead, Chapter 608, the statute in effect when Dave died, applies to the issue of whether Dave's membership in W&K was extinguished upon his death. In contrast to Chapter 605, Chapter 608 does not provide that a member is dissociated from an LLC upon his or her death. And although Chapter 608 prohibits an "assignee" from participating in the management of the LLC, *see* Fla. Stat. § 608.432, a member's death does not lead to an "assignment" of that member's interest: ***an individual and his or her estate are treated as the same entity for purposes of Chapter***

**608**. *See* Fla. Stat. § 608.402(13) ("'Individual' means a natural person and includes the estate of a natural person."). Under this statutory scheme, Dave's membership in W&K passed to the Estate as soon as Dave died. *See Crabapple Corp. v. Elberg*, 60 N.Y.S.3d 124, 125 (App. Div. 2017) (applying New York law) ("Thus, Jacob's controlling interest in the LLCs passed to his estate upon his death, and Elberg and Pewzner, the co-executors of the estate, had the authority to act as co-managers of the LLCs.").

That the Petition for Subsequent Administration was filed in February 2016 is irrelevant; at that point, the Estate had been a member of W&K for more than two years. *See Depriest v. Greeson*, 213 So. 3d 1022, 1025-27 (Fla. 1st DCA 2017) (disagreeing with trial court and holding that when decedent died, "in the twinkling of a legal eye," his asset "became an asset of his estate," regardless of timing of appointment of personal representative).

### b. *The Estate Has Authority to Pursue Litigation on Behalf of W&K*

Lynn contends that Florida Statute § 605.0504—which provides that "[i]f a member [of an LLC] who is an individual dies . . . , the member's legal representative may exercise all of the member's rights for the purpose of settling the member's estate or administering the member's property, including any power the member had to give a transferee the right to become a member"—only entitles the Estate to receive "distributions and allocations of profits, losses, and tax items." (Mot. at 5-6.) To support this argument, Lynn cites a single case, *Succession of McCalmont*, 261 So. 3d 903 (La. Ct. App. 2018), *rev'd in part*, 271 So. 3d 194 (La. 2019). (*See id.* at 6.) Lynn fails to mention, however, that the Louisiana court in that case relied on a statute that is—as commentators have acknowledged—materially different from Florida's statute.[7]

---

[7] Commentators have contrasted Louisiana's statute with the statutes in effect in other states, such as Florida and Ohio. One commentator proposed changing Louisiana's statute to more closely resemble Florida's and Ohio's, and concluded that doing so would have the following effect: "[T]he personal representative's powers as a member would

Indeed, Louisiana's statute provides: "[I]f a member who is an individual dies . . . the member's membership ceases and the member's executor, administrator, guardian, conservator, or other legal representative shall be treated as an assignee of such member's interest in the limited liability company." *McCalmont*, 261 So. 3d at 909 (quoting La. R. S. § 12:1333(A)). It is therefore unsurprising that, based on this statutory language, the Louisiana court concluded that a member's estate does not have the right to exercise any control over the LLC. *See id.* at 909-11.

Florida's statute is very different, and empowers the personal representative to exercise "***all of the member's rights***." Fla. Stat. § 605.0504 (emphasis added). In *Holdeman v. Epperson*, the Ohio Supreme Court interpreted a nearly-identical provision: "If a member who is an individual dies . . . , his executor, administrator, guardian, or other legal representative may exercise all of his rights as a member for the purpose of settling his estate or administering his property, including any authority that he had to give an assignee the right to become a member." 857 N.E.2d 583, 586 (Ohio. 2006) (quoting R.C. 1705.21(A)). Based on this provision, the Ohio court expressly rejected the appellant's argument that an executor "has only the legal rights as an assignee of the economic interest of the member in the company, rather than the full rights of a member." *Id.* at 585. Instead, the court held that "***an executor of the estate of a deceased member of a limited liability company has all rights that the member had prior to death***, for the limited purpose of settling the member's estate or administering his property." *Id.* at 588 (emphasis added).

Accordingly, here, the Estate has all of the rights that Dave had with respect to W&K prior to his death. Lynn's argument to the contrary is based on irrelevant case law and should be rejected.

---

be effective as long as the estate were open." William A. Neilson, *Uncertainty in Death and Taxes: The Need to Reform Louisiana's Limited Liability Company Laws*, 60 Loy. L. Rev. 33, 53-55 (2014).

### c. *The Petition is Barred by Florida's Claim-Splitting Doctrine*

"Florida recognizes the rule against splitting causes of action as 'an aspect of the doctrine of res judicata.'" *Robbins v. Gen. Motors de Mexico, S. DE R.L. DE CV.*, 816 F. Supp. 2d 1261, 1263 (S.D. Fla. 2011) (quoting *Tyson v. Viacom, Inc.*, 890 So. 2d 1205, 1210 (Fla. 4th DCA 2005)).[8] The claim-splitting doctrine applies to bar a subsequent claim that "arise[s] out of the same 'wrongful acts'" as a pending action involving the same parties or their privies. *See Bowman v. Coddington*, 517 F. App'x 683, 685-86 (11th Cir. 2013) (applying Florida law); *see also Pollitz v. Halifax Health*, No. 6:15-cv-450, 2015 WL 4987732, at *2-4 (M.D. Fla. Aug. 19, 2015) (applying Florida law) (explaining that the doctrine applies if the claims involve (1) "the same circumstances" and (2) the same parties or their privies).

For purposes of claim-splitting, two actions involve the same wrongful acts if "the first suit, **assuming it were final**, would preclude the second suit" under the doctrine of res judicata. *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017) (applying federal law) (emphasis added). Under Florida law, res judicata does not bar only claims actually asserted in a prior action; instead, it applies to all "theories of recovery and defenses that **could have been presented** in the prior litigation." *Bay Fin. Sav. Bank, F.S.B. v. Hook*, 648 So. 2d 305, 307 (Fla. 2d DCA 1995) (emphasis added); *Wise v. Tucker* 399 So. 2d 500, 501-03 (Fla. 4th DCA 1981) (barring litigant from seeking specific performance because the contract wasn't raised in prior litigation); *Butler v. Richard Bertram & Co.*, 281 So. 2d 227, 228-29 (Fla. 3d DCA 1973) (barring claim in second filed action because of its close relation to failed defense in prior action).

---

[8] "When res judicata is asserted based on a prior federal judgment, Florida courts apply federal claim preclusion principles." *Aronowitz v. Home Diagnostics, Inc.*, 174 So. 3d 1062, 1065 (Fla. 4th DCA 2015). Federal common law, in turn, borrows from "the law that would be applied by the state courts in the State in which the federal diversity court sits." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). Because the court in the Federal Action, which sits in Florida, exercised diversity jurisdiction, Florida law applies. *See Kleiman*, 2020 WL 5632654, at *18.

Here, Lynn's claim is sufficiently related to Craig's defense in the Federal Action such that, ***if the Federal Action were final***, Lynn's claim would be barred by res judicata. Lynn seeks an order declaring that "Ira did not and presently does not have authority as personal representative of the Estate to initiate the suit against Craig on behalf of [W&K] or to continue to prosecute the lawsuit on behalf of [W&K]." (Pet. ¶ 50.) Craig previously made a near-identical argument in the Federal Action: "Because I.K. lacked authority to file this action on behalf of W&K, his acts are *ultra vires* and require dismissal of W&K." (*See* MSJ at 32, *Kleiman*, ECF No. [487].)

Additionally, this action and the Federal Action involve the same parties—the Estate and Craig Wright—because Craig and Lynn are in privity. This is true for the reasons provided in Respondent's Notice of Supplemental Authority and Motion for Leave to Supplement its Motion to Dismiss; *see also Pearce v. Sandler*, 219 So. 3d 961, 965 (Fla. 3d DCA 2017). Accordingly, because Lynn and Craig are in privity, and because Craig either asserted, or could have asserted, as defenses in the Federal Action all of the claims that Lynn asserts here, Lynn's claims are barred by Florida's claim-splitting doctrine.

## CONCLUSION

For the foregoing reasons, Respondent respectfully requests that Lynn's Motion for Order Declaring That Ira Kleiman Had and Has No Authority to Act for W&K Info Defense Research, LLC be denied.

Dated: November 24, 2020                    Respectfully submitted,

*/s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman, Esq.
Florida Bar No. 99762
**ROCHE CYRULNIK FREEDMAN LLP**
200 S. Biscayne Blvd, Suite 5500
Miami, Florida 33131
Tel: (305) 357-3861
vel@rcfllp.com

nbermond@rcfllp.com

Andrew S. Brenner
Florida Bar No. 978663
**BOIES SCHILLER FLEXNER LLP**
100 S.E. 2nd Street, Suite 2800
Miami, Florida 33131
Tel: (305) 539-8400
abrenner@bsfllp.com

*Counsel to Respondent Ira Kleiman as
Personal Representative of the Estate of
David Kleiman*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on the November 24, 2020, I electronically filed this Motion with the Palm Beach County Clerk of Court, which will send a notice of electronic filing to all counsel of record.

*s/ Velvel (Devin) Freedman*
VELVEL (DEVIN) FREEDMAN

IN THE 15TH JUDICIAL CIRCUIT,
IN AND FOR PALM BEACH COUNTY,
FLORIDA

CASE NO. 50-2013-CP-005060-XXXX-NB
PROBATE DIVISION

IN RE:  ESTATE OF DAVID ALAN
KLEIMAN,

      Deceased.

_____

LYNN WRIGHT,

      Petitioner,

v.

IRA KLEIMAN, as Personal Representative
of the Estate of David Kleiman,

      Respondent,

and

DR. CRAIG WRIGHT, TULIP TRUST,
UYEN T. NGUYEN, W&K INFO DEFENSE
RESEARCH, LLC, a Florida limited liability
company, and COIN-EXCH PTY, LTD., an
Australian proprietary limited company,

      Interested Parties.

**Adversary Proceeding
Case No. _____**

**RESPONDENT'S MOTION FOR AN ORDER TO SHOW CAUSE**

<span style="color:red">EXHIBIT B2</span>

Respondent Ira Kleiman, as Personal Representative of the Estate of David Kleiman, moves, pursuant to this Court's inherent powers, for an order to show cause requiring Petitioner Lynn Wright and her attorney to demonstrate that they have not attempted to defraud this Court, and that sanctions should not be imposed.[1]

## INTRODUCTION

The Petition misrepresents and obfuscates the true party-in-interest, the motivations of that party, and federal court rulings precluding the relief requested by Lynn Wright. Although the Petition is verified, it contains factual assertions that are fabricated and patently false. Moreover, although counsel for Lynn Wright may not have known of the falsity of her allegations, he does now and has not withdrawn them. This violates counsel's professional obligation of good faith and the duty of candor. There are not legitimate factual disputes about legitimate requests for relief. There is a bad faith scheme to use forged documents and lies to convince this Court to short-circuit a two-year litigation (the "Federal Action") W&K has brought against Lynn's ex-husband, Craig Wright, and to help Craig avoid billions in potential liability.[2]

Specifically, Craig has fabricated a paper trail—which contradicts the evidentiary record and rulings by Judge Bloom—to trick this court into concluding that Lynn Wright actually controls W&K. He then instructed Lynn to file this Petition. If successful in this deception, Craig will instruct Lynn to use her "control" over W&K to discontinue its participation in the Federal Action.

Indeed, the relief itself is one of two absurdities that expose Lynn's petition as a sham even *before* delving into the complete catalogue of Craig's relentless misconduct to date. Taken at face value Lynn's petition asks the Court to bar her from recovering billions of dollars from her ex-

---

[1] This motion will use first names due to the two "Kleimans" and two "Wrights" at issue. No disrespect is intended.

[2] The Federal Action is specially set to commence trial before Judge Bloom in the United States District Court for the Southern District of Florida on June 1, 2021.

husband in connection with her purported interest in W&K. Such an extreme action against self-interest is patently absurd, and it can only be explained by the fact that Lynn's petition was filed to further Craig's interest in ending the federal case against him, and not for any conceivable benefit to Lynn or W&K.

The other patent absurdity on display is the provenance of Lynn's purported interest in W&K. Lynn's Petition describes a series of events conveniently timed and laughably contrived. According to her, *just days before the petition was filed*, Craig's wife[3] transferred Craig's[4] interest in W&K[5] from a trust the federal court has found does not exist, to, of all people, Craig's ex-wife, apparently out of nowhere and in exchange for nothing. This lazy cover story is a preposterous attempt to explain why Craig can use Lynn as a proxy to accomplish what collateral estoppel bars him from doing for himself.

For those reasons, and the additional ones that follow, Ira respectfully requests this Court enter an Order to Show Cause why sanctions should not be entered for attempted fraud on the court.

## FACTUAL BACKGROUND

Since 2018, Ira and W&K have been locked in litigation with Craig to recover the bitcoin and intellectual property he stole from them that's worth ***billions of dollars***. Wright has stopped at nothing (legal or not) to get out of that case. As federal Magistrate Judge Bruce Reinhart found after a two-day evidentiary hearing, Craig "intentionally submitted fraudulent documents to the Court, obstructed a judicial proceeding, and gave perjurious testimony." Craig has repeatedly lied under oath, repeatedly submitted forged evidence, repeatedly fabricated narratives, and has been

---

[3] In her capacity as Tulip Trust trustee.

[4] In Craig's capacity as Tulip Trust beneficiary.

[5] And therefore W&K's pending claims against Craig.

sanctioned for doing so by the federal courts. Craig's efforts to stop the Federal Action have failed, however, and he imminently faces a trial on the merits. In fact, the only thing his "antics," as Judge Beth Bloom labeled them, accomplished is to destroy his credibility. *See* Ex. 1, *Kleiman v. Wright*, No. 9:18-cv-80176, 2019 WL 3841931, at \*5 (S.D. Fla. Aug. 15, 2019) ("Unfortunately, the record is replete with instances in which the Defendant has proffered conflicting sworn testimony before this Court. In weighing the evidence, the Court simply does not find the Defendant's testimony to be credible."); Ex. 2, *Kleiman v. Wright*, No. 9:18-cv-80176, 2020 WL 1139067, at \*3 (S.D. Fla. Mar. 9, 2020) ("I give no weight to sworn statements of Dr. Wright that advance his interests but have not been challenged by cross-examination and for which I cannot make a credibility determination.").

More pointedly to this action, and as discussed at length below, Craig has **three times** attempted to have the Federal Action dismissed for Ira's purported lack of authority to control W&K Info Defense Research LLC ("W&K") or other "issues" with W&K's membership. After Craig lost his **third** attempt at this defense in federal court, he enlisted the help of Lynn, his ex-wife —who has admitted that (i) she is financially dependent on him, and (ii) has previously lied for him out of fear he will cut her off—to try and re-run that same defense here.

And that's where this case comes in.

The petition in this action (the "Petition") is stylized as a "Petition to Determine Beneficiary Shares" on behalf of Lynn Wright, who alleges she currently owns an interest in W&K. The petition's main goal is to stop the Federal Action W&K has brought against her ex-husband. However, W&K is one of the two Plaintiffs in the Federal Action suing Craig for **billions** of dollars in stolen bitcoin and intellectual property. Lynn stands to benefit handsomely from the

Federal Action if she is a member of W&K (she is not), but nonetheless asks this court to stop the Federal Action as her primary form of relief.

While this fact alone screams Lynn is acting as Craig's proxy, it gets worse. The petition itself reveals this action is nothing but a fraud set up by Craig. Lynn's sworn petition states she acquired her present interest in W&K from her ex-husband's "Tulip Trust" **just six days before she filed the petition**. This action is not brought by Lynn, she's simply the marionette Craig is using to assert (contrary to his sworn testimony in the Federal Action) that he maintained an interest in W&K this whole time. And if that contrived, perfectly timed "transfer" wasn't enough to confirm the obvious, we know that Craig was planning this scheme for some time as at his deposition (which occurred months before the "transfer" or petition occurred) he testified that Lynn was "going to assert her rights and shares." Finally, if the Court had any remaining doubt Craig is behind this, the final nail in the coffin is that the news outlet owned by Craig's billionaire litigation funder published a story about this petition over a month before it was even filed.

But perhaps worse than Lynn's duplicity in bringing this action as a proxy for Craig is that—setting aside this issue—she ***could not have acquired*** any membership interest in W&K from the "Tulip Trust" because (i) it doesn't exist, and (ii) even if it did exist, Craig essentially admitted it didn't own any membership interest in W&K. Specifically, after a two-day evidentiary hearing at which Craig testified, Judge Reinhart found, by "**clear and convincing evidence**"— that **the Tulip Trust did not exist and that Craig's testimony that it did was intentionally false**. Ex. 3, *Kleiman v. Wright*, No. 9:18-cv- 80176, 2019 WL 4023392, at *11 & n.11 (S.D. Fla. Aug. 27, 2019), *order vacated in part on other grounds*, 2020 WL 113396 (S.D. Fla. Jan. 10, 2020). ("I find that Dr. Wright's testimony that [the Tulip] Trust exists was intentionally false . . . Although I am only required to make this finding by a preponderance of the evidence, I find clear

and convincing evidence to support it."). Further, even assuming the Tulip Trust *did* exist, the idea that it "owned" an interest in W&K to transfer to Lynn in July 2020 is absurd. Lynn identified Craig as the former trustee and current beneficiary of the Tulip Trust, and Craig's current wife as the present trustee. But at deposition in 2019, Craig testified that he had "no idea" who owned W&K and that it was "not me." Ex. 1, *Kleiman*, 2019 WL 3841931, at *2.

If this evidence wasn't enough to demonstrate Lynn and Craig's attempt to defraud this court, the timeline of events brings it into sharper focus.

Lynn's petition was filed just two months after Craig filed his motion for summary judgment before Judge Bloom seeking, *inter alia*, judgment preventing Ira from bringing the case for W&K. And then, ***less than two weeks*** after Judge Bloom denied Craig's motion for summary judgment—***including by rejecting his argument that the Estate lacked authority to commence the Federal Action on behalf of W&K***, "Lynn" filed a motion in this action seeking, on an expedited timeline, an order declaring that the Estate lacks authority to act on behalf of W&K.

In that motion, "Lynn" tells this Court that Craig's conduct and the Federal Action are irrelevant for purposes of deciding the Petition, and that it is "imperative" that she receive the relief she requests. She claims that "expedited consideration" is warranted because she "recently learned that Ira pledged the assets of W&K to a litigation funding company without authority." ***This is a deliberate attempt to continue to deceive this Court***.

The Petition has nothing to do with Lynn or supposed security interests and everything to do with Craig and the Federal Action. If the Petition succeeds, Craig achieves the outcome he has been lying, cheating, and forging to achieve for the past two-plus years—potential dismissal of the Federal Action, where the Estate and W&K seek to hold him personally liable for billions of dollars. In contrast, what does Lynn get? If she's a member of W&K (like she says), then she

misses out on her share of what could be a multibillion-dollar recovery. If she doesn't want to share in that recovery, why would she even bother acquiring an interest in W&K on the eve of trial? It doesn't make any sense. The Petition is by and for Craig. It does not benefit Lynn in any way, shape, or form.

**Given this history, the only thing that does make sense is that Craig and Lynn are attempting to defraud this Court into (i) believing that the Tulip Trust exists, (ii) that it owned membership interest in W&K, (iii) that it "transferred" that membership interest to Lynn, that (iv) the transfer was bona fide, that (v) Lynn has filed this action in good faith to enforce her rights, and that (vi) this Court should go behind the back of the judge presiding over the Federal Action to do what she has repeatedly refused to do and derail an imminent trial specially set for the entire month of June over which the parties, attorneys, experts, and the judiciary have spent a veritable fortune pursuing and preparing for.**

Lynn and her attorneys have, at minimum, been aware of these facts for months. Nevertheless, notwithstanding that knowledge and Respondent's request that they take remedial action, they have stubbornly refused to withdraw the fraudulent Petition. Worse, they have doubled down by filing the equally fraudulent motion for summary adjudication immediately following the federal court's denial of Craig's motion for summary judgment. Accordingly, and left with no other choice, Respondent reluctantly brings this motion for an order directing Lynn and her attorney to show cause as to why they should not be sanctioned for attempting to perpetrate a fraud on this Court.

## I.     The Estate and W&K commence the Federal Action and Craig uses fabricated evidence to attempt to dismiss that action

More than two years before Lynn filed her Petition, Ira, as personal representative of the Estate, and W&K, sued Lynn's ex-husband, Craig Wright. (*See* Ex. 4, *Kleiman et al. v. Wright*,

No. 9:18-cv-80176-BB (S.D. Fla. May 14, 2018) ("*Kleiman*"), ECF No. [24].) In that action, the Estate and W&K allege that Craig misappropriated billions of dollars in bitcoin and blockchain-related intellectual property from the Estate and W&K shortly after Dave's death. (*See id.* ¶¶ 7-19.)

Plaintiffs allege W&K was created to mine bitcoin and develop related intellectual property. (*See id.* ¶¶ 67-94.) Soon after Dave died, Craig improperly took control over W&K's assets by, among other things, fabricating contracts that purportedly transferred W&K's assets to himself, and fraudulently obtaining "consent" judgments against W&K in an Australian court. (*See id.* ¶¶ 95-131.)

In June 2018, Craig moved to dismiss plaintiffs' claims, arguing (among other things) that the Estate lacked authority to act on behalf of W&K. (*See* Ex. 5, *Kleiman*, ECF No. [33], at 15 ("Plaintiff's own allegations undermine his purported authority to act unilaterally to cause W&K to sue Dr. Wright.").) In December of that year, the court largely denied Craig's motion, including rejecting his argument that the Estate lacked authority to act on behalf of W&K. *See* Ex. 6, *Kleiman v. Wright*, No. 9:18-cv-80176, 2018 WL 6812914, at *6 (S.D. Fla. Dec. 27, 2018).

Undeterred, in April 2019, Craig moved for judgment on the pleadings. This time he argued the Court lacked subject-matter jurisdiction because W&K's members included Uyen Nguyen and Coin-Exch, who were each non-US citizens. (*See* Ex. 7, *Kleiman*, ECF No. [144].)[6] Soon after Craig filed that motion, his counsel was forced to withdraw the key "evidence" he submitted in support of it after the public and Plaintiffs' expert exposed them as forgeries. (*See* Ex. 8, ECF No.

---

[6] Craig is a non-US citizen. Thus, the federal court could lack subject-matter jurisdiction if W&K was also a non-US citizen. *See Hedge Capital Invs. Ltd. v. Sustainable Growth Grp. Holdings LLC*, 593 F. App'x 937, 941 (11th Cir. 2014) ("The black letter rule for complete diversity tells us that the issue turns on whether 'there are foreign entities on both sides of the action.'" (quoting *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 232 F.3d 854, 860 (11th Cir. 2000))); *Simon Holdings PLC Grp. of Cos. U.K. v. Klenz*, 878 F. Supp. 210, 211 (M.D. Fla. 1995) ("Complete diversity does not exist where there are aliens on both sides of the litigation.").

[159], at 10-15.) Wright then argued in his reply brief—for the first time, and almost a year and a half after the litigation had commenced—that his ex-wife, Lynn Wright, may also be a member of W&K. The Court did not buy that either and denied his second attempt to play games based on W&K's membership. *See* Ex. 1, *Kleiman*, 2019 WL 3841931, at *2.

In denying the Motion, the Court concluded Craig's testimony in support of his motion was not "credible," and that "the record [was] replete with instances in which [Craig] ha[d] proffered conflicting sworn testimony before [the] Court." *Id*. Indeed, the Court explained that Craig had "made **several conflicting statements** regarding even his own ownership of W&K." *Id.* at *2 (emphasis in original). Based on this repeated misconduct, the Court summed up Craig's conduct by quoting Sir Walter Scott's *Marmion*: "***Oh! What a tangled web we weave when first we practice to deceive***." *Id.* (emphasis in original). Notably, Craig **never** argued that the Tulip Trust was a member of W&K. His testimony was that he had "**never** been a member of W&K," and that he had "**no idea** who the owners of W&K were." *Id.*[7]

## II.     Craig is sanctioned in the Federal Action for committing perjury and submitting fabricated evidence to avoid producing evidence of his bitcoin holdings

At around the same time the Court denied Craig's motion for judgment on the pleadings, the parties in the Federal Action were engaged in a discovery dispute. For months, Craig had refused to provide evidence relating to his bitcoin holdings, despite orders from the Court requiring him to do so. *See* Ex. 3, *Kleiman*, 2019 WL 4023392, at *1-6. Craig claimed that it would be "impossible" for him to produce this information, because it was locked in an encrypted file held by none other than the "Tulip Trust." *See id.* at *4-6.

---

[7] Of course, this is directly at odds with Lynn's current (new) story that (1) Craig was the trustee, and then the beneficiary, of a trust that is the "sole member with the right to vote with respect to the transfer of membership interests of [W&K]," and (2) Craig has had an ownership interest in W&K (through a trust) since February 2011. (Pet. ¶¶ 6-7, 13, 17-22, 30.)

The Court, after holding a two-day evidentiary hearing where Craig testified, emphatically rejected this assertion and sanctioned Craig.

> *I have found that Dr. Wright intentionally submitted fraudulent documents to the Court, obstructed a judicial proceeding, and gave perjurious testimony*. No conduct is more antithetical to the administration of justice. The sanctions I am imposing are necessary to achieve the remedial and punitive purposes of Rule 37. No lesser sanction would suffice.

*Id.* at *14 (emphasis added). As for the supposed Tulip Trust in particular, the Court concluded—by "***clear and convincing evidence***"—that "***Dr. Wright's testimony that this Trust exists was intentionally false*.**" *Id.* at *11 & n.11 (emphases added).

Judge Reinhart (the Magistrate Judge presiding over the Federal Action) further concluded that Craig's misconduct, which included lying about the existence of the Tulip Trust, constituted "clear and convincing evidence that Dr. Wright's non-compliance with the Court's Orders is willful and in bad faith." *See id.* at *14.

Although Judge Bloom (the District Judge presiding over the Federal Action) subsequently vacated some of the *particular* sanctions Judge Reinhart chose to impose based on due-process concerns related to whether there was a sufficient nexus between the sanction imposed and Craig's misconduct,[8] she expressly adopted Judge Reinhart's credibility findings, including those relating to the Tulip Trust. Indeed, she described Craig's conduct as "antics" and concluded that Craig's "[c]onduct [w]arrants [s]anctions." Ex. 9, *Kleiman*, 2020 WL 113396, at *7. She explained that "the sole evidence put forward to establish the Defendant's claim of impossibility, his own testimony, was found not to be credible by Judge Reinhart." *Id.* Then, she adopted that finding as

---

[8] Judge Bloom explained that, "[t]o comply with the Due Process Clause, a court must impose sanctions that are both 'just' and 'specifically related to the particular "claim" which was at issue in the order to provide discovery." Ex. 9, *Kleiman v. Wright*, No. 9:18-cv-80176, 2020 WL 113396, at *9 (S.D. Fla. Jan. 10, 2020) (quoting *Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1151 (11th Cir. 2006)). She concluded that "[b]ecause the Court finds that the Deemed Facts do not specifically relate to the discovery issue that was pending before the Magistrate Judge, the Court agrees that the Deemed Facts imposed as a sanction was not proper." *Id.* at *10.

her own: "***The Court has also reviewed the transcripts from the Evidentiary Hearing held by Judge Reinhart and agrees with his credibility findings relating to Defendant***." *Id.* (emphasis added).

Accordingly, both the Magistrate and District Court judges presiding over the Federal Action concluded, after two rounds of briefing and two days of evidentiary hearings, that the Tulip Trust does not exist. ***Lynn now claims that this same non-existent trust was then an owner of W&K, and later conveyed an interest in W&K to her in July 2020***. (*See* Pet. ¶ 30.)

### III. Craig moves for summary judgment in the Federal Action based on Lynn's sworn testimony that she had an interest in W&K

On May 8, 2020, Craig sought summary judgment in the Federal Action on several grounds, including (i) that the court lacked subject-matter jurisdiction because Lynn was a member of W&K, and (ii) that the Estate "lacked authority to file [the Federal Action] on behalf of W&K." (*See* Ex. 10, *Kleiman*, ECF No. [487], at 30-32.) To support his subject-matter jurisdiction argument, Craig asserted that, "[i]n her deposition, [Lynn] explained how and why W&K was formed, and testified that she has an ownership interest in the company." (*Id.* at 31.) In particular, **on January 13, 2020**, Lynn testified, *under oath*, as follows:

> Q.  And do you still own W&K?
>
> A.  I guess I'm – I guess that I still have some interest in it, but I never thought it would amount to anything so I didn't pursue very – you know, anything about it.
>
> Q.  And what's your basis for assuming you still have ownership in W&K?
>
> A.  The – nothing has changed, as far as I know, from the divorce settlement.

(Ex. 11, *Kleiman*, ECF No. [488-17], at 98:22-99:5.) Craig claimed that this testimony was not only fatal to plaintiffs' case, but that it "has indicia of reliability because [Lynn] has no reason to

lie for Dr. Wright." (Ex. 10, *Kleiman*, ECF No. [487], at 30-31.).[9] Notably, throughout the 2.5+ years of litigation, and ***three*** motions attacking the membership of W&K, Craig never argued the Tulip Trust or Craig Wright R&D were members of W&K, even though Craig swore that he was the trustee of Tulip Trust (and therefore would be in the best position to know if Tulip Trust owned W&K) and that he had no idea who owned W&K. *See* Ex. 3, *Kleiman*, 2019 WL 4023392, at *5-6.

The Court rejected Craig's W&K-based arguments for summary judgment. *See* Ex. 12, *Kleiman v. Wright*, No. 9:18-cv-80176, 2020 WL 5632654, at *17–19 (S.D. Fla. Sept. 21, 2020).

### IV. Lynn and Craig plan for Lynn to file a separate action to further Craig's interests in the Federal Action

While Craig was litigating the Federal Action, he and Lynn appear to have already begun discussing the possibility of her filing a separate action against the Estate to further Craig's interests in the Federal Action. Indeed, available evidence indicates that these discussions began no later than March 2020.

For example, in his March 18, 2020 deposition, Craig testified as follows with respect to the ownership of W&K: "***I have spoken to Lynn Wright and I know that she is going to assert her rights and shares***. The court will have to decide that. What I do know is Lynn Wright asserts one-third and asserts, through her corporate ownership, another third." (*See* Ex. 13, *Kleiman*, ECF No. [511-1], at 175:17-25.). Of course, according to her own sworn Petition here, she had no interest in W&K at that time. Instead, it was supposedly transferred to her months later.

---

[9] Although Lynn initially testified at deposition that she was an owner of W&K, she had to admit that her alleged ownership had likely been lost and/or transferred to Craig due to a bankruptcy filing in or about 2012. (*See id.* at 30 (citing *Kleiman*, ECF No. [488-17], at 105:3-18).) This portion of her conflicting testimony was rejected by Craig in the Federal Action in his motions and sworn statements, where he claimed that Lynn had a current ownership interest at the time he moved for summary judgment on that basis in May 2020. Lynn's current story is that Craig, through a trust, transferred an ownership in July 2020. In other words, having lost there, Craig appears to have done a 180 in this litigation on the issue of Lynn's alleged ownership interest in W&K.

By May 2020, when the parties' summary-judgment motions were due, Lynn and Craig had apparently settled on the substance of the petition, which is reflected in a May 9, 2020 article published on Coingeek (the "Coingeek Article"), titled "Craig Wright files strong Motion for Summary Judgment against Ira Kleiman." (Ex. 14.) Coingeek is cryptocurrency-related news company controlled by Calvin Ayre, the billionaire who is funding Craig's defense in the Federal Action.[10] The Coingeek Article describes not only Craig's motion for summary judgment, but also "another piece of litigation" that the author erroneously believed had already been filed by Lynn. With respect to that "piece of litigation" (which, at that point, would not be filed for another two months in the form of the current Petition before this Court), the Coingeek Article states as follows:

> But perhaps the most significant thrust of Wright's motion for summary judgment relies on yet another piece of litigation, one filed this week by his estranged ex-wife, Lynn Wright, which if accepted by the Court undermines both Kleiman's complaint and the basis on which the Court accepted jurisdiction to hear it.
>
> Craig's ex-wife Lynn Wright filed a series of motions in the Florida court staking a claim to W&K and providing the most concrete account of the formation and structure of W&K.
>
> In this petition, Lynn asks the Court for two things:
>
> First, to determine the beneficiary shares of W&K. Supported by documentation contemporary to the earliest days of W&K, Lynn claims that the company was formed in February 2011 by herself, **Dave Kleiman** and Craig—the W (Lynn Wright), K (David Kleiman) and Info Defense (Craig) which make up the name, respectively.
>
> According to the petition, Craig transferred 50% of his interest in the company to Lynn as a part of their divorce settlement in 2011. Upon Dave's death, Lynn and Craig were the only remaining members. In light of this and assuming it is true, Kleiman's actions in the years following Dave's death—replacing Dave as the registered agent for the company with the elusive Ms. Nguyen and filings made in Florida purporting to reinstate the company with him as the managing member— become more sinister.

---

[10] *See* Ex. 15, Decl. of Non-Party Jimmy Nguyen ¶ 13, *In re Subpoena to Jimmy Nguyen*, No. 2:20-cv-00593-BJR (W.D. Wash. May 6, 2020), ECF No. [20] ("While I do not know the specific terms of the arrangement, I know that Calvin Ayre is providing legal funding to Dr. Wright in connection with defense of the [Federal Action].").

Secondly, she asks the Court to declare that Ira Kleiman did not have the authority to initiate his lawsuit against Craig Wright, that he is not a member of W&K and has no authority to represent himself as such or act on behalf of the company.

Regardless of Dave's motivations, Lynn is ultimately arguing that Ira's powers in his capacity as representative for Dave's estate entitle him to no more than an accounting of Dave's interest in W&K—and certainly does not entitle him to direct W&K—in which he himself has no interest—to sue Craig Wright. Even if he was so entitled, Dave's 1/3 interest in W&K isn't a voting majority, so in any case, Ira couldn't direct W&K to enter into litigation without the consent of at least one of the other members (Lynn or Craig).

(*Id.*)

Importantly, the Coingeek article expressly states that "*[i]t is hoped by Craig Wright* that the testimony of Lynn [from her separate "court action"] will cause the Court in the [Federal Action] to revisit" Judge Bloom's finding that the court in the Federal Action had subject matter jurisdiction. Thus, Craig and his financial backer not only knew about the Petition long before it was filed, but they also specifically intended to use the Petition as a tool to further Craig's interests in the Federal Action. Subtle, this is not.

## V. Lynn Files the petition based on her alleged receipt of an interest in W&K from the nonexistent Tulip Trust

There was an obvious roadblock Lynn needed to clear to file the instant Petition. Specifically, she knew she had previously testified that she had forfeited any interest she may have had in W&K (to be clear, she never had any) as a result of her bankruptcy filing in 2012. To overcome this roadblock, either Craig (as an alleged beneficiary) or Craig's current wife, Ramona Ang (as an alleged trustee), orchestrated a sham transfer of a nonexistent "interest" in W&K from the "Tulip Trust" to Lynn on July 10, 2020. (*See* Pet. ¶¶ 6-7, 21-22.) The "Tulip Trust" is, of course, the same entity that both federal judges in the Federal Action have concluded does not exist.

Almost immediately after Lynn purportedly obtained her interest in W&K from Craig's supposed trust, she filed the Petition. At that point (July 16), trial in the Federal Action was scheduled for October 13, 2020. (*See* Ex. 16, *Kleiman*, ECF No. [605].) Thus, the Petition arrived on the eve of trial in the Federal Action, after discovery had closed, after summary judgment motions had been filed, and after Craig's arguments regarding W&K's membership had already been rejected in the Federal Action twice.

In the Petition, "Lynn seeks a declaration, pursuant to section 86.041, Florida Statutes, that Ira did not and presently does not have authority as personal representative of the Estate to initiate the suit against Craig on behalf of [W&K] or to continue to prosecute the lawsuit on behalf of [W&K], that he is not a member of [W&K] with the right to vote with respect to the transfer of membership interests in [W&K] and does not have authority to hold himself out as such, and that he does not have authority to act on behalf of [W&K]." (Pet. ¶ 50.) Additionally, "[p]ursuant to section 86.041(3), Florida Statutes, Lynn seeks an order directing Ira, as personal representative of the Estate and in his individual capacity, to immediately cease any and all of these unauthorized activities and enjoining Ira from further acting on behalf of [W&K] in any manner." (*Id.* ¶ 51.) In other words, the Petition is a barely-veiled attempt to have this Court order a plaintiff in a federal court action to dismiss its case.

## VI.     Lynn and her attorney refuse to withdraw the fraudulent Petition

After Lynn filed the Petition on July 16, 2020, the undersigned wrote a letter to Lynn's counsel detailing the history above, and explaining how he was being used as a pawn by Craig and Lynn to effectuate a fraud on this Court. Based on the information provided in the letter and included in Respondent's motion to dismiss, Respondent notified Mr. Burger that he was "on clear notice that the Petition: (i) includes statements that are unambiguously false, (ii) includes other

statements that cannot be made in good faith and that are inconsistent with counsel's obligation of candor to the tribunal, (iii) omits material and necessary information, and (iv) is a clear fraud on the court intended to mislead and manipulate it." (Ex. 18 at 3.) Accordingly, Respondent urged that Mr. Burger "take reasonable remedial measures" with respect to the Petition, as he is obligated to do under applicable rules governing professional conduct. (*Id.* (quoting R. Regulating Fla. Bar 4-3.3(a)).) Obviously, counsel has not only chosen not to withdraw the Petition, he has now sought expedited granting of its major components in the October 2 motion in this Court.

### VII. Craig's motion for summary judgment in the Federal Action is wholly denied and Lynn files a motion seeking expedited relief here less than two weeks later

On September 21, 2020, the court in the Federal Action issued an order fully denying Craig's motion for summary judgment. *See* Ex. 12, *Kleiman*, 2020 WL 5632654, at *1. In that Order, the court held that Craig had "failed to present credible evidence that Ms. Wright was a member of W&K." *Id.* at *18. The court outright rejected Craig's argument that the Estate lacked authority to commence the Federal Action: ***"[T]he Court rejects Defendant's argument that Ira Kleiman lacked the authority to file this action on behalf of W&K*** without Ms. Wright's consent, which in his view requires dismissal of W&K's claims." *Id.* at *19.[11] Shortly thereafter Lynn filed her motion (the "Motion"), for which she requests "***expedited consideration***." (Mot. at 1.) Lynn, however, denies that the federal court's rejection of Craig's summary judgment motion was the impetus for her Motion. Instead, according to Lynn, the source of that urgency is that she "has just recently learned that Ira pledged the assets of W&K to a litigation funding company without authority." (*Id.* at 2.) In the Motion, Lynn informs this Court that it is "imperative" that it "declare,

---

[11] In contrast, the court granted most of plaintiffs' motion for summary judgment, striking twelve of Craig's fourteen affirmative defenses. *See id.* at *38-45. Further, Craig's surviving defenses—statute of limitations and laches—only remained in play due to factual disputes. *See id.* at *42.

as a matter of law, that Ira was not and, is not, authorized to act for W&K." (*Id.* at 7.) This is the same relief that Lynn sought in the Petition filed July 16, 2020 (*see* Pet. ¶¶ 50-51), and the same argument that the court in the Federal Action rejected in its September 21, 2020 order denying Craig's motion for summary judgment. It just become "imperative" and urgent because with all motions resolved, Craig is finally about to face the music in the Federal Action.

Incredibly, Lynn insists that neither Craig's conduct nor the Federal Action are relevant for purposes of the motion: "To be clear, the legal issues raised in this Motion do not rise or fall upon any alleged bad conduct of Dr. Craig Wright ('Craig'), Lynn's ex-husband, no matter how Ira tries to paint that picture. This is a matter of statutory interpretation, plain and simple." (Mot. at 2.) Naturally, they do not disclose the recent decision in the Federal Action, which denied the precise relief Lynn seeks in the Petition – nor any of the facts that demonstrate very clearly that Craig's actions are highly relevant to this elaborate fraud being perpetuated on this Court.

\* \* \*

It is now November 30. Lynn and her attorney have had months to investigate the allegations made by Respondent regarding the fraudulent nature of the Petition. Over that period, neither of them have taken any remedial action, and there is no indication that they will do so. Accordingly, Respondent respectfully requests that the Court issue an order directing Lynn and her attorney to show cause as to why they should not be sanctioned for attempting to perpetrate a fraud on this Court.

## ARGUMENT

### I. The Court possesses the inherent power to impose sanctions for litigation misconduct

"The 'inherent powers' of a court 'to perform efficiently its judicial functions, to protect its dignity, independence and integrity,' necessarily includes the authority to impose appropriate

sanctions." *Tramel v. Bass*, 672 So. 2d 78, 83 (Fla. 1st DCA 1996) (quoting *Rose v. Palm Beach Cty.*, 361 So. 2d 135, 136 n.3 (Fla. 1978)) (internal citations and alterations omitted). More specifically, "a trial court has the inherent authority to impose ***severe sanctions*** when fraud has been perpetrated on the court." *Id.* (quoting *Mercer v. Raine*, 443 So. 2d 944, 946 (Fla. 1983)) (emphasis added). Such sanctions may include not only monetary penalties such attorney's fees, but also outright dismissal. *See Hoegh v. Estate of Johnson*, 985 So. 2d 1185, 1186 (Fla. 5th DCA 2008) (imposing attorney's fees based on party's "attempt to perpetrate a fraud on the court"); *Ramey v. Haverty Furniture Cos., Inc.*, 993 So. 2d 1014, 1018 (Fla. 2nd DCA 2008) ("[A] trial court has the inherent authority to dismiss an action as a sanction when the plaintiff has perpetrated a fraud on the court." (quoting *Morgan v. Campbell*, 816 So. 2d 251, 253 (Fla. 2nd DCA 2002))).

"A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate matters by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Id.* (quoting *Jacob v. Henderson*, 840 So. 2d 1167, 1169 (Fla. 2nd DCA 2003)). Under such circumstances, dismissal "has long been an available and often favored remedy." *Empire World Towers, LLC v. CDR Creances, S.A.S.*, 89 So. 3d 1034, 1038 (Fla. 3d DCA 2012) (quoting *Bertrand v. Belhomme*, 892 So. 2d 1150, 1152 (Fla. 3rd DCA 2005)); *see also Desimone v. Old Dominion Ins. Co.*, 740 So. 2d 1233, 1234 (Fla. 4th DCA 1999) ("Our court has recognized and enforced the principle that 'where a party perpetrates a fraud on the court which permeates the entire proceedings, dismissal of the entire case is proper.'" (quoting *Savino v. Fla. Drive in Theater Mgmt., Inc.*, 697 So. 2d 1011, 1012 (Fla. 4th DCA 1997)). "The rationale underlying the sanction is that 'a party who has been guilty of fraud or misconduct in the prosecution or defense of a civil proceeding should not be

permitted to continue to employ the very institution it has subverted to achieve her ends.'" *Empire World Towers*, 90 So. 2d at 1038 (quoting *Bertrand*, 892 So. 2d at 1152).

Although Florida state courts have not had the opportunity to do so, "the Eleventh Circuit Court of [A]ppeals has found fraud on the court where a party wrongfully conceals the identity of the real party in interest in the case." *Fahmy v. Sch. Bd. of Miami-Dade Cty.*, No. 09-cv-23608, 2011 WL 13269611, at *2 (S.D. Fla. July 15, 2011). For example, in *Martin v. Automobili Lamborghini Exclusive, Inc.*, the plaintiff asserted claims under the Magnuson-Moss Act. *See* 307 F.3d 1332, 1334-35 (11th Cir. 2012). "Evidence emerged during discovery that [the plaintiff] was not the owner of the [product] and that the lawsuit was filed in bad faith." *Id.* at 1334. The Eleventh Circuit held that "[t]he district court was clearly justified in imposing [dismissal] sanctions against [the plaintiff]." *Id.* at 1336.

But even in the absence of fraud on the court (and no doubt in the presence of fraud on the court), courts may impose monetary sanctions, such as attorney's fees. "The inequitable conduct doctrine permits the award of attorney's fees where one party has exhibited egregious conduct or acted in bad faith." *Hoegh*, 985 So. 2d at 1186. Such fees may be imposed on a party or that party's attorney. *See, e.g.*, *Moakley v. Smallwood*, 826 So. 2d 221, 223-27 (Fla. 2002) (holding that fees may be imposed against attorney, based on precedent that enables courts to impose fees against parties).

Egregious conduct includes—*but is not limited to*—fraud on the court. *See id.* ("Hoegh's attempt to perpetrate a fraud on the court by knowingly seeking to have a forged will admitted to probate constituted egregious conduct."). "Bad faith may be found not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Bitterman v. Bitterman*, 741 So. 2d 356, 365 (Fla. 1998) (citations omitted). For example, in *BB Inlet Property, LLC v. 920 N. Stanley*

*Partners, LLC*, the court found bad faith where the plaintiff alleged, without any support, that a landowner fraudulently obtained a permit to build a dock, even though the plaintiff knew or should have known that its allegation was false. *See* 293 So. 3d 538, 545-46 (Fla. 4th DCA 2020) (reversing denial of sanctions).

## II. The Petition constitutes a fraud on the Court

As explained above and below, the Petition constitutes a fraud on the court. In particular, Craig, not Lynn, is the real party in interest, and the Petition is another attempt by Craig to use false and baseless allegations and evidence to obtain a dismissal of the Federal Action. Indeed, the Petition is supported by allegations that are demonstrably false. Worse, Lynn and her counsel know that those allegations are false. But to Craig (and, apparently, to Lynn), the risk of getting caught is worth the possible upside: avoiding responsibility in the Federal Action for his theft of billions of dollars in assets from the Estate and W&K.

### a. Lynn's Basis for the Petition is sham

Lynn's claims in the Petition are premised on her allegation that, on July 10, 2020, she obtained a one-third interest in W&K from Tulip Trust. (*See* Pet. ¶ 30.) This allegation is so fundamental to the Petition, that Lynn's counsel has conceded that if Lynn did not obtain such an interest, then "case over." (Ex. 17.)

#### i. *The Tulip Trust does not exist*

Lynn could not have obtained her interest from Tulip Trust because ***that entity does not exist***. This is precisely what Judge Reinhart found, by clear and convincing evidence, in the Federal Action after a two-day evidentiary hearing and months of motion practice relating to the supposed trust. As he explained, "The totality of the evidence in the record does not substantiate that the Tulip Trust exists. Combining these facts with my observations of Dr. Wright's demeanor during

his testimony, ***I find that Dr. Wright's testimony that this Trust exists was intentionally false***." Ex. 3, *Kleiman*, 2019 WL 4023392, at *11 (emphasis added). Moreover, Judge Reinhart concluded that "***clear and convincing evidence***" supported this finding. *Id.* at *11 n.11 (emphasis added).

In case Lynn or her counsel weren't aware of this, Ira has brought these findings to Lynn's attention in at least three different ways: (i) his August 4, 2020 motion to dismiss (*see* MTD at 8), (ii) his August 7, 2020 letter to Mr. Burger (*see* Ex. 18, at 1-2), and (iii) his August 31, 2020 letter to Mr. Burger (*see* Ex. 19, at 2). But even though Lynn has this information, and therefore knows that she could not have obtained an interest in W&K from Tulip Trust in July 2020, Lynn and her attorney have stubbornly refused to withdraw Lynn's petition. *Cf. Roberts v. PNC Bank, N.A.*, 263 So. 3d 119, 122 (Fla. Dist. Ct. App. 2018) ("Accordingly, we order Michael A. Saracco to show cause in writing within ten days from the date this opinion issues as to why this court should not sanction him for making what appears to be a blatant, material misrepresentation in the brief that he filed with this court and for failing to correct the misrepresentation when it was clearly and forcefully brought to his attention by opposing counsel.").

Instead, Lynn's attorney has taken the absurd position that Judge Bloom "vacat[ed] most, if not all of the factual findings" contained in Judge Reinhart's order regarding the Tulip Trust. (Ex. 17, at 2.). As demonstrated above, she did just the opposite and expressly adopted them.

### ii. *Even if the Tulip Trust did exist, it could not have transferred an interest in W&K to Lynn*

Even assuming that Tulip Trust exists, Lynn's assertion that she obtained her interest from Tulip Trust in July 2020 is demonstrably false based on Craig's statements and conduct in the Federal Action.

Lynn identified Craig as a former trustee and current beneficiary of the Tulip Trust, and Craig's current wife as its current trustee. (*See* Pet. ¶¶ 6-7, 13, 20-22.) In the Federal Action,

Craig also provided sworn testimony that he is/was a trustee of the Tulip Trust and a beneficiary of it. But in 2019, *i.e.*, way before this action arose, Craig testified at deposition that he *never* owned W&K, had "no idea" who owned W&K and that it was "not him." *See* Ex. 1, *Kleiman*, 2019 WL 3841931, at *2.

Furthermore, Craig has twice sought to dismiss plaintiffs' claims by "identifying" alien members of W&K. Despite (i) moving for this relief twice over 2.5 years of litigation, despite (ii) being the current/former trustee/beneficiary of the Tulip Trust, despite (iii) the Tulip Trust allegedly being a foreign trust, Craig ***never*** identified the Tulip Trust as a member of W&K in his jurisdictional attacks. Obviously, this latest fabrication (consistent with the balance of Craig's lies in the Federal Action) is demonstrably false.

### b. Lynn is Not the Real Party in Interest

The Petition fraudulently conceals the identity of the real party in interest, Craig Wright. This is apparent for at least the following reasons.

***First***, the relief sought in the Petition, and later sought in the Motion, is the same relief Craig sought unsuccessfully in the Federal Action. In the Federal Action, Craig twice moved to dismiss W&K's claims on the basis that the Estate lacked the authority to act on behalf of W&K. The court rejected that argument both times, first denying Craig's motion to dismiss and later denying Craig's motion for summary judgment. Likewise, in the Petition and the Motion, Lynn *also* seeks an order declaring that the Estate lacks the authority to act on behalf of W&K.

Although Lynn does not expressly request dismissal of the Federal Action, she asks this Court to enjoin the Estate from pursuing the Federal Action on behalf of W&K. Moreover, her counsel has twice refused to deny the Estate's allegation that Lynn would dismiss the Federal Action if she obtains control over W&K. (*See, e.g.*, Ex. 19 ("The fact is, you do not deny that the

Petition is 'being funded by either Craig Wright or Calvin Ayre' or that 'Lynn seeks to dismiss the Federal Action on the eve of trial.'").) Thus, the Petition is a de facto motion to dismiss the Federal Action.

**Second**, the relief sought in the Petition would benefit Craig, but not Lynn. In the Federal Action, W&K seeks to recover significant sums from Craig. (*See* Ex. 20, *Kleiman*, ECF No. [83], at 37.) Craig would therefore indisputably benefit from the dismissal of W&K's claims in that action. But Lynn, if she is a member of W&K, would not benefit if her Petition or Motion succeeded because, under those circumstances (assuming she *is* a member of W&K), she would lose the opportunity to share in W&K's significant recovery.[12]

**Third**, Lynn has testified that she was previously willing to lie for Craig, in part because she is afraid that he will cut her off financially if she fails to do what he asks. (*See* Ex. 21, *Kleiman*, ECF No. [549], at 28-29.) Lynn's willingness to comply with Craig's requests to lie for him explains why she would pursue the Petition on Craig's behalf, even though doing so is firmly against her economic interests.

**Fourth**, available evidence indicates that, at minimum, Craig and his litigation funder Calvin Ayre, were intimately involved with bringing the Petition long before it was filed, and that Craig affirmatively expected to use the Petition in the Federal Action. *See* Part IV, *supra*. This evidence—coupled with the fact that the Petition seeks the same relief that Craig sought in the Federal Action—strongly supports the inference that Lynn is nothing more than Craig's puppet in this litigation.

**Fifth**, available evidence strongly supports the inference that Craig—who was aware of the Petition's substance long before it was filed—transferred an interest in W&K to Lynn **for the**

---

[12] For the avoidance of doubt, she is clearly not a member.

*sole purpose of enabling her to file the Petition on his behalf*.[13] Craig sought to confer standing on Lynn by "transferring" an interest in W&K to Lynn (via the nonexistent Tulip Trust) on July 10, 2020. Lynn filed the Petition *just six days later*. The inescapable inference from these facts is that Craig's "transfer" was undertaken solely for the purpose of enabling Lynn to file the Petition. If Tulip Trust or Craig had an interest in W&K, why did he not raise that at any time in the Federal Action? Worse, why did he affirmatively deny any such ownership? The reason is simple – Craig knows neither he nor the Tulip Trust have any interest in W&K and he knows that the federal court has already seen through his fraud – he is cynically betting that by using his ex-wife as his stalking horse, this Court will be fooled.

**Sixth**, the timing and substance of the Motion confirm that this action is simply designed to provide Craig with one last chance to avoid a trial on the merits in the Federal Action.[14]

**Seventh**, the Petition—a backdoor attempt to dismiss the Federal Action by going behind the back of the judge presiding over that action—is precisely the kind of deceptive filing that Craig has made over the past two years in the Federal Action. As described above, Craig submitted fabricated emails in support of his motion for judgment on the pleadings. To avoid complying with court orders, he (in a months-long campaign of perjury and fabrication) invented an elaborate story about the Tulip Trust, encrypted files, and a bonded courier that was so absurd that Judge Reinhart summed it up in a single word: "Inconceivable." Ex. 3, *Kleiman*, 2019 WL 4023392, at *10. And

---

[13] Consistent with this apparently cooperative process between Lynn and Craig (and notwithstanding the direct adversity between them that exists if Lynn is, in fact, a member of W&K), Lynn's attorney has already attempted to lay the groundwork for Lynn's refusal to provide communications between Lynn and Craig concerning the Petition, pointing to "common interests" between "Mrs. Wright and others." (Ex. 17.) This would be the latest abuse of the attorney-client privilege from Craig. In March, Judge Reinhart ruled that Craig had improperly withheld approximately 11,000 documents on attorney-client privilege grounds. *See* Ex. 2, *Kleiman*, 2020 WL 1139067, at *7. Similarly, Craig's supposed litigation liaison, Jimmy Nguyen, had to be compelled to comply with a subpoena *twice* by a federal court in Seattle. (*See* Ex. 22, *In re Subpoena to Jimmy Nguyen*, No. 2:20-cv-00593-BJR (W.D. Wash. Apr. 24, 2020), ECF No. [14] (granting motion to compel); *See* Ex. 23, *In re Subpoena to Jimmy Nguyen*, No. 2:20-cv-00593-BJR (W.D. Wash. May 13, 2020), ECF No. [29] (granting motion to compel).)

[14] Trial is now specially set to commence on June 1, 2021.

23

then found that he committed perjury and submitted forged evidence. *Id.* at *14. The notion that Craig would enlist his ex-wife to do what he has been unable to do in the Federal Action (*i.e.*, obtain a dismissal of W&K's claims), and that he would have her do so with a filing littered with falsities is, unfortunately, right on message.

**Eighth**, Craig's credibility in the Federal Action has been, through his own conduct, eroded to such a degree that it is rational from his perspective to try to litigate through a proxy. In the Federal Action, Judge Reinhart has appropriately concluded, "I give no weight to sworn statements of Dr. Wright that advance his interests but have not been challenged by cross-examination and for which I cannot make a credibility determination." Ex. 2, *Kleiman*, 2020 WL 1139067, at *3.

**Ninth**, Craig or his litigation funder, Calvin Ayre, must be paying Lynn's legal bills. Lynn has testified she is financially dependent on Craig. Thus, she does not have the wherewithal to afford international litigation. Further indicating this is the fact that (i) Ayre is paying for Wright's legal defense, (ii) Ayre's newsgroup announced Lynn's petition weeks before it was even filed (and then removed the story), and that (iii) counsel has twice refused to deny that Wright or Ayre are paying for the litigation.

## CONCLUSION

For the foregoing reasons, Respondent respectfully requests that the Court issue an order to show cause to Lynn Wright and her attorney requiring them to show cause as to why they should not be sanctioned for attempting to perpetrate a fraud on this Court.

Dated: November 30, 2020

Respectfully submitted,

*/s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman, Esq.
Florida Bar No. 99762
**ROCHE CYRULNIK FREEDMAN LLP**
200 S. Biscayne Blvd, Suite 5500
Miami, Florida 33131

Tel: (305) 357-3861
vel@rcfllp.com
nbermond@rcfllp.com

Andrew S. Brenner
Florida Bar No. 978663
**BOIES SCHILLER FLEXNER LLP**
100 S.E. 2nd Street, Suite 2800
Miami, Florida 33131
Tel: (305) 539-8400
abrenner@bsfllp.com

*Counsel to Respondent Ira Kleiman as*
*Personal Representative of the Estate of*
*David Kleiman*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the November 30, 2020, I electronically filed this pleading

with the Palm Beach County Clerk of Court, which will send a notice of electronic filing to all

counsel of record.

*s/ Velvel (Devin) Freedman*
VELVEL (DEVIN) FREEDMAN

IN THE 15TH JUDICIAL CIRCUIT,
IN AND FOR PALM BEACH COUNTY,
FLORIDA

CASE NO. 50-2013-CP-005060-XXXX-NB
PROBATE DIVISION

IN RE:  ESTATE OF DAVID ALAN
KLEIMAN,

       Deceased.

_____

LYNN WRIGHT,

       Petitioner,

v.

IRA KLEIMAN, as Personal Representative
of the Estate of David Kleiman,

       Respondent,

and

DR. CRAIG WRIGHT, TULIP TRUST,
UYEN T. NGUYEN, W&K INFO DEFENSE
RESEARCH, LLC, a Florida limited liability
company, and COIN-EXCH PTY, LTD., an
Australian proprietary limited company,

       Interested Parties.

_____

**Adversary Proceeding
Case No. _____**

## RESPONDENT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

       Ira Kleiman, as Personal Representative of the Estate of David Kleiman, respectfully submits this reply memorandum in support of his motion to dismiss Petitioner Lynn Wright's Verified Petition to Determine Beneficiary Shares and for Declaratory Judgment and Injunctive Relief.

**EXHIBIT B3**

# INTRODUCTION

As will be laid out in Ira's forthcoming motion for order to show cause why Lynn and her counsel should not be sanctioned for attempting to commit a fraud on this Court, this entire case is an outrageous attempt by Craig Wright to shirk the **multi-billion dollar Federal Action** that's been pending against him for over 2.5 years on grounds the federal court already rejected multiple times. While a host of evidence demonstrates this fraud, it's easily apparent from Lynn's admission that her entire "claim" to any "interest" in W&K is contingent on an alleged transfer from "Dr. Wright" that took place **just six days before she filed this Petition,** after Craig had already lost a dismissal bid in the Federal Action premised on Lynn's ownership, and just two months after he filed a second (now failed) challenge on that basis again. (*See* Opp. 7 ("Lynn transferred her interest in W&K to Dr. Wright, who later transferred a one-third interest to her"); Pet. ¶ 30 ("On or about July 10, 2020, Tulip Trust transferred to Lynn one-third of all of the membership interest in W&K . . . ."); Ex. 1, Dr. Wright's MSJ at 32, *Kleiman v. Wright*, No. 9:18-cv-80176 (S.D. Fla. May 8, 2020), ECF No. 487 ("Because I.K. lacked authority to file this action on behalf of W&K, his actions are *ultra vires* and require dismissal of W&K.")). Such gamesmanship is wholly improper and pervades this entire sham proceeding.

The substance of the legal argument in Lynn's response fares no better. The first part of her response appears to be little more than an incorrect and bizarre conspiracy theory that alleges a multiyear plan by the Estate to defraud creditors out of $10,000. (*See* Opp. 3-5.) Of course, these desperate and baseless allegations weren't included in the Petition and are completely irrelevant to Lynn's claims since she disclaims being a creditor. (*See* Opp. 2 ("First, Lynn is an interested person but not a creditor").)

The balance of her arguments only confirm that (i) her claims are barred by Florida's nonclaim statute (they are five years too late), (ii) her allegations do not state a claim under Section 733.105 or Probate Rule 5.385 (an argument she does not even contest), and (iii) she lacks standing (under both statutory provisions she invokes).

Lynn also attempts to conceal from this Court that the court in the Federal Action recently rejected the same argument Lynn asserts in her Petition—*i.e.*, it denied Craig's motion for summary judgment predicated on his claim that (i) Lynn had an interest in W&K and (ii) that the Estate lacked authority to commence the Federal Action on behalf of W&K. (*See generally* Not. of Supp. Auth. & Mot. for Leave to Supp. MTD.) Inexplicably, she falsely represents that Lynn's ownership issue "has not been raised" in the Federal Action (*See* Opp. 2, 16.)

This Court should decline Lynn's invitation to "limit the scope" of the Federal Action—an international, multiyear, multibillion-dollar lawsuit where the presiding judge has already rejected the exact challenges Lynn raises. Lynn's Petition is fraudulent and meritless and should be dismissed with prejudice.

## ARGUMENT

I.   **Each of Respondent's arguments were properly raised through a motion to dismiss.**

Lynn asserts—without citing any relevant legal authority—that the motion "should be denied because, at best, [Respondent's] assertions are affirmative defenses, and there are numerous factual issues to be determined, which should be the subject of discovery, including Ira Kleiman's handling of this probate case." (Opp. 5.) But "Ira Kleiman's handling of this probate case" is irrelevant to Lynn's claims and this motion; indeed, the Petition contains *zero allegations* relating to that supposed issue. Moreover, although Respondent's standing and statute-of-limitations defenses are "affirmative defenses," such defenses may properly be raised through a motion to

dismiss where they appear on the "face of the complaint." (Br. 11 n.6); *see Llano Fin. Grp., LLC v. Yespy*, 228 So. 3d 108, 112 (Fla. 4th DCA 2017) (same). That's the case here because those defenses are based entirely on the allegations set forth in the Petition.[1]

## II.     Lynn failed to state a claim under Probate Rule 5.385 or Section 733.105.

In his motion to dismiss, Ira asserted that Count I should be dismissed "because it is not cognizable under the statutory provisions that Lynn invokes"—*i.e.*, (i) Probate Rule 5.385 which only applies when there is uncertainty about to whom *estate property* should be distributed and (ii) Section 733.105 which only applies when "the will is unclear." (*See* Br. 14-16.) Lynn does not (and cannot) assert either predicate to invoke these grounds for a claim. She is not claiming that the Estate currently owns 100% of W&K, but she should be entitled to some of it; instead, she claims the Estate simply doesn't own 100% of W&K. Furthermore, she is not claiming David Kleiman's will is unclear.

Tellingly, Lynn fails to offer *any* response to this argument. Accordingly, Count I must be dismissed. *Cf. S. Nat'l Track Servs., Inc. v. Gilley*, 152 So. 3d 13, 19 (Fla. 1st DCA 2014) ("As a general rule, failure to address an issue raised on appeal results in waiver . . . .").

## III.     Lynn's claim is barred by Florida's nonclaim statute.

Lynn's claim is barred by Florida's nonclaim statute, Fla. Stat. § 733.710. (*See* Br. 11-14.) That statute provides: "Notwithstanding any other provision of the code, 2 years after the death of

---

[1] Lynn's response completely failed to address Ira's failure-to-state-a-claim defense (*see* Br. 14-16) as such, she's waived any defense and the motion should be granted on that basis alone. To the extent Lynn asserts Ira's motion is improper because it described the Federal Action, her argument fails. As Lynn notes (*see* Opp. 2-3), Ira's arguments for dismissal do not depend on the Federal Action. Ira included them because this information is necessary to understand the Petition and Lynn incorporated it by reference in the Petition, which expressly mentions the Federal Action and, as relief, seeks to stop or at least materially alter that action. (*See* Pet. ¶¶ 45, 49-51.) Such information may properly be considered in evaluating the collateral estoppel defense asserted in Respondent's supplemental brief. (*See generally* Not. of Supp. Auth. & Mot. for Leave to Supp. MTD; *see also* Br. 5 n.3.)

a person, neither the decedent's estate, the personal representative, if any, nor the beneficiaries shall be liable for any claim or cause action against the decedent, whether or not letters of administration have been issued, except as provided in this section."

Lynn incorrectly argues this statute is inapplicable, because she fails to make a distinction between situations where (i) the estate received payment, or incurs liability, after the decedent's death and (ii) where someone makes a claim on "assets of the decedent held by the personal representative." *In re Estate of Kulow*, 439 So. 2d 280, 282 (Fla. 2d DCA 1983). The former is not barred whereas the latter is.

In particular, Lynn argues the nonclaim statute is inapplicable because the Probate Code defines the term "claim" to mean "a liability of the decedent" and she "is not claiming that Dave Kleiman owed her a liability prior to his death." (Opp. 6-7.) To support this argument, Lynn cites several cases that supposedly stand for the proposition that "a claim and liability arising after a decedent's death is not subject to Fla. Stat. Ann. secs. 733.702 and 733.710." (*Id.* at 8.) But these cases all involve situations where either (i) additional funds are paid to the estate following the decedent's death or (ii) the estate incurs liabilities following the decedent's death. *See Thompson v. Hodson*, 825 So. 2d 941, 948 (Fla. 1st DCA 2002) (claimant entitled to costs and fees in connection with post-death litigation with estate); *Swenszkowski v. Compton*, 662 So. 2d 772, 723 (Fla. 1st DCA 1995) (claimant entitled to money paid to estate following decedent's death); *In re Estate of Kulow*, 439 So. 2d 280, 281-83 (Fla. 2d DCA 1983) (same); *Joseph v. Joseph*, 83 So. 2d 965, 969-70 (Fla. 3d DCA 2012) (claimant entitled to portion of proceeds from sale of estate assets that occurred after decedent's death).[2]

---

[2] Two of Lynn's cases do not neatly fit within these categories, but both are distinguishable. *Estate of Richard v. C.I.R.*, 103 T.C.M. (CCH) 1924 (2012), decided by a federal administrative court, concerned property that was not owned by the decedent at all. *See id.* at *4-5. The decision in the second case, *Coba v. Craig*, 881 So. 2d 733 (Fla. 3d DCA 2004), is predicated on the fact that the claim was timely filed. *Id.*

That is not what's going on here. In this case, Lynn seeks to assert an interest in property that belonged to Dave and passed to the Estate upon Dave's death. (*See* Pet. ¶¶ 12, 31-36.) This distinction is critical. The nonclaim statutes, Fla. Stat. §§ 733.702 and 733.710, bar any "claim for personal property **in possession of the personal representative**." Fla. Stat. § 733.702(1) (emphasis added).[3] As explained by the 2nd DCA, any claims brought after the relevant period expires are barred to the extent that they concern "***assets of the decedent held by the personal representative which are claimed by others***." *Kulow*, 439 So. 2d at 282 (emphasis added).

This principle is demonstrated by *Kulow*, the very case that Lynn characterizes as seminal. (*See* Opp. 8.) There, after the decedent's death, a hospital mistakenly reimbursed the estate instead of an insurer. *See* 439 So. 2d at 280-82. When the insurer sought reimbursement from the estate, the estate argued the insurer's claim was barred as untimely by Fla. Stat. § 733.702. *See id.* at 281. That section provided that

> [1] [n]o claim or demand against the decedent's estate that arose before the death of the decedent . . .; [2] no claim for funeral or burial expenses; [3] no claim for personal property in the possession of the personal representative . . . shall be binding on the estate, on the personal representative, or on any beneficiary unless presented . . . [w]ithin 3 months from the time of the first publication of the notice of administration . . . ."

*Id.* at 281-82 (enumeration added). The estate argued the insurer's claim was barred because it both (i) "arose before the death of the decedent" and (ii) was for "personal property in the possession of the personal representative." *See id.*

---

at 733-34 ("Robert preserved any claim on the property by properly asserting same within the time frame in 733.702(1) . . . Section 733.710 does not bar Robert Coba's claim.").

[3] "If not barred by s. 733.710, [1] ***no claim or demand against the decedent that arose before the death of the decedent*** . . .; [2] no claim for funeral or burial expenses; [3] ***no claim for personal property in the possession of the personal representative***; and [4] no claim for damages, including, but not limited to, an action founded on fraud or another wrongful act or omission of the decedent, is binding on the estate, on the personal representative, or any beneficiary unless [timely filed]." Fla. Stat. § 733.702(1) (enumeration and emphases added).

The court quickly rejected the estate's first argument but found the second could not "be disposed of so easily" because money paid to the estate post-death *could* be personal property in the personal representative's possession. *Id.* at 282. Ultimately, the court rejected the second argument too because it found that for a "claim" for personal property to be barred it had to be a "liability of the decedent," which would "mean assets of the decedent held by the personal representative which are claimed by others." *Id.* Because the check proceeds weren't paid until after the decedent's death – they could not be the "assets of the decedent." *Id*.

As applicable here, *Kulow* makes it clear that, as used in the Probate Code, the phrase "claim" means a "liability of the decedent," which encompasses "assets of the decedent held by the personal representative which are claimed by others." Thus, Section 733.710—which bars all untimely "claims" asserted against the decedent—applies to assertions of ownership interests in a decedent's assets. Here, Dave's ownership interest in W&K was indisputably held by him at the time of his death, and was not transferred or obtained after his death.

**Unquestionably binding authority is in accord with this interpretation and mandates this outcome**. Specifically, in *Dobal v. Perez*, 809 So. 2d 78, 79-80 (Fla. 3d DCA 2002), the 3rd DCA held that a third party's claim for ownership in property held by the estate was barred by the nonclaim statute because it was brought after the 2-year period expired. And in *May*, the Florida Supreme Court explained that the purpose of that provision is to establish "the outside time limit to which a decedent's estate in Florida should be exposed by ***claims on the decedent's assets***." *May v. Ill. Nat'l Ins. Co.*, 771 So. 2d 1143, 1157 (Fla. 2000) (emphasis added). In the Petition, filed more than seven years after Dave's death, Lynn seeks ownership of personal property (*i.e.,* membership in W&K) that belonged to Dave at the time of his death and is currently held by the Estate. (*See* Pet. ¶ 52 (asserting "a disputed interest" in W&K).)

Lynn does not address *Dobal* (even though it was cited in Respondent's opening brief) or acknowledge the critical distinction between (i) ordinary claims against an estate and (ii) claims asserting an interest in the decedent's assets held by the estate. Instead, she asserts that Dave's 100% interest in W&K "is a disputed question of fact that precludes dismissal." (Opp. 7.) But Lynn cannot avoid the nonclaim statute by simply asserting that the claim itself—that she is entitled to some of the Estate's 100% interest in W&K—must be litigated. As the Florida Supreme Court has explained, "section 733.710 'obviously represents a decision by the legislature that 2 years from the date of death is the outside time limit to which a decedent's estate in Florida should be exposed by claims on the decedent's assets.'" *May*, 771 So. 2d at 1157 (Fla. 2000). This protection would be meaningless if Lynn were correct that a claimant could avoid it by simply alleging that the decedent did not own the relevant assets.

Lynn had 2 years from Dave's death in which to bring a claim to establish her purported membership interest in W&K. She did not. Of course, she couldn't have because she admits that she did not even "acquire" an interest in W&K until six days before she filed the Petition, *i.e.,* by the time she "acquired" it, she was five years too late.

Finally, Section 733.710 is a statue of repose. *See Comerica Bank & Tr., F.S.B. v. SDI Operating Partners, LP*, 673 So. 2d 163, 165-68 (Fla. 4th DCA 1996). Such statutes may produce seemingly harsh results, including, for some plaintiffs, the "hardship of having a claim extinguished before it is discovered, or perhaps before it even exists." *Kush v. Lloyd*, 616 So. 2d 415, 418-19 (Fla. 1992) (citations omitted). Indeed, the Florida Supreme Court has held that a claimant "cannot avoid" Section 733.710 by showing "fraud or estoppel or insufficiency of notice." *May*, 771 So. 2d at 1156 (quoting *Comerica*, 673 So. 2d at 165-67).

Accordingly, courts have repeatedly held that Section 733.710 applies "regardless of whether [a claimant] knew or should have known of its right to file a claim against [an] estate." *In re Estate of Bartkowiak*, 645 So. 2d 1082, 1083-84 (Fla. 3d DCA 1994); *see also Grijalva v. Gulf Bank*, No. 09-cv-22375, 2011 WL 282754, at *2-3 (S.D. Fla. Jan. 25, 2011) (rejecting argument that inadequate notice "should preclude the application of § 733.710"). In fact, Section 733.710 still bars a claim even if the personal representative defrauded the claimant into not asserting that claim until the expiration of the two-year period. *See In re Estate of Fleming*, 786 So. 2d 660, 661 (Fla. 4th DCA 2001) (claim barred, where "the person who became personal representative fraudulently induced [claimant] to delay filing her claim"); *Dobal*, 809 So. 2d at 79-80 (allegations that claimant was lulled into filing claim after expiration of two-period "were immaterial and irrelevant").

Here, Lynn tries to avoid Section 733.710 by arguing that the personal representative "never fulfilled any of his duties to creditors or interested parties, thereby ensuring that no one would ever get notice that they should interject themselves if necessary." (Opp. 5.) This is precisely the type of insufficient-notice argument that courts, including those cited in the preceding paragraph, have rejected time and time again. It should be rejected here, too.

Seeing the writing on the wall, Lynn attempts to recast her insufficient-notice argument as an argument about the ***timing*** of when her claim arose. In particular, she asserts that her claim did not arise until Respondent, the personal representative of the Estate, "first asserted that Dave Kleiman owned 100% of W&K years after Dave Kleiman's death." (Opp. 7.). This is wrong for two separate reasons. First, the Estate's assumption of 100% of W&K occurred by operation of law as soon as David died. *See Depriest v. Greeson*, 213 So. 3d 1022, 1025-27 (Fla. 1st DCA 2017) (holding that when decedent died, "in the twinkling of a legal eye," his asset "became an

asset of his estate"). Consequently, the claim arose the day David Kleiman died, and the failure by the Tulip Trust (or Craig or Lynn) to bring a claim within the next 2-year period ends any claim any of them might have had. Second, Lynn's argument, in reality, is no different from arguing that she ***did not learn*** that Dave, and therefore the Estate, owned 100% of W&K until it was too late. Lynn's lack of knowledge about Dave's ownership interest in W&K is simply not a basis for tolling the two-year period set forth in Section 733.710. *See Agency for Health Care Admin. v. In re Estate of Johnson*, 743 So. 2d 83, 88 (Fla. 3d DCA 1999) (Nesbitt, J., concurring in part) (stating, in context of Section 733.710, that "[s]tatutes of repose may even cause a claim to be extinguished before it is discovered or before it ever exists"); *May*, 771 So. 2d at 1156-57 (endorsing Judge Nesbitt's opinion).[4]

## IV. Lynn lacks standing to assert her claims.

### a. Lynn lacks standing under Probate Rule 5.385 because she is not an interested person under that provision.

Lynn lacks standing to assert the claim in Count I because she is not an "interested person" under the statute she invokes, Probate Rule 5.385. (*See* Br. 17-18.)[5] That rule provides: "If a personal representative or other ***interested person*** is in doubt or is unable to determine with certainty beneficiaries entitled to an estate or the shares of any beneficiary of an estate, or a beneficiary entitled to any asset or interest in an estate, the personal representative or other ***interested person*** may petition the court to determine beneficiaries." (emphases added). The

---

[4] Finally, while Lynn states without any support that "[i]t must be remembered that even if Lynn somehow falls under the non-claim statute, she nonetheless has standing as an interested party to seek declaratory relief" (Opp. 2), that position is contrary to law. *See Scott v. Reyes*, 913 So. 2d 13, 14, 19 (Fla. 2d DCA 2005) (nonclaim statute barred claim brought under section 86.041).

[5] Lynn asserts Count I under both Fla. Stat. § 733.105 and Florida Probate Rule 5.385. (*See* Pet. at 1.) In its opening brief, Respondent explained why Lynn lacks standing to assert a claim under Fla. Stat. § 733.105. (*See* Br. 17-18.) Lynn does not address that argument in her opposition. (*See* Opp. 9-12 (discussing only Probate Rule 5.385).)

phrase "interested person" is defined to mean "any person who may reasonably be expected to be affected by the outcome of ***the particular proceeding involved***." Fla. Stat. § 731.201(23) (emphasis added). Because "the particular proceeding involved" in Count I is a Rule 5.385 proceeding to determine the beneficiaries of an estate, the relevant issue is, as Lynn's authority recognizes, whether she could "reasonably" expect to be affected by ***that proceeding***. *See Hayes v. Guardianship of Thompson*, 952 So. 2d 498, 507 (Fla. 2006) (whether person has standing as an "interested person" depends on "the nature of both the proceeding and the interest asserted").

Lynn cannot reasonably expect to be affected by ***that proceeding*** and therefore lacks standing. Rule 5.385 proceedings are designed to determine to whom assets subject to administration are to be allocated, not to determine which assets are subject to administration. (*See* Br. 14-16.)[6] Lynn does not contest this point.[7] Nor does she assert that she is a beneficiary who would be affected by a determination of to whom assets subject to administration are allocated, or even a fiduciary who would be required to act in accordance with such a determination.

Instead, she asserts that she ***could*** be affected by a hypothetical court determination that she has no interest in W&K. (*See* Opp. 10-12.) Even if it were true that Lynn ***might*** have standing

---

[6] Indeed, as Respondent explained in its opening brief, "[a] third party contesting what assets the estate owns is not an 'interested person' for purposes of a probate proceeding because probate courts lack jurisdiction to even resolve such disputes." (Br. 17.) Respondent relied on *Casey v. Smith*, 134 So. 2d 846 (Fla. 2d DCA 1961), for this point, but numerous other cases support this proposition. *See, e.g.*, *Meltzer v. Estate of Norrie*, 705 So. 2d 967, 968 (Fla. 5th DCA 1998) (noting that probate courts lack "the power to adjudicate ownership in property that is not part of the probate estate"); *Warner v. Quicken Loans, Inc.*, No. 3:19-cv-1239, 2020 WL 2097981, at *8 (M.D. Fla. May 1, 2020) ("Under Florida law, because the parents owned the property as tenants by the entireties, when the mom died, the property passed to the father automatically by operation of law, the property was not an asset of the estate, and the probate court was without jurisdiction to effectuate a change in the ownership interest in the property."). For example, to resolve Lynn's claims, the Court would be required to determine who else owned an interest in W&K and the extent of such interests.

[7] To the extent that Lynn suggests that the phrase "shares," as used in Probate Rule 5.385, refers to shares in a corporate entity as opposed to shares of an estate (*see* Opp. 11), that argument should be rejected. Lynn provides no support for that argument and, to Respondent's knowledge, no such support exists.

to assert **some other claim** against the Estate regarding her alleged ownership interest in W&K, that would not confer standing for the Rule 5.385 claim she has actually asserted. *See Progressive N. Ins. Co. v. Therm Tech. Corp.*, No. 8:06-cv-1252, 2007 WL 4557206, at *3 (M.D. Fla. Dec. 21, 2007) (plaintiff lacked standing with respect to some, but not all, claims). As explained above and in Respondent's opening brief, a Rule 5.385 claim cannot be used as a vehicle to determine whether the estate owns certain property. Thus, a court could not determine **through a Rule 5.385 proceeding** whether Lynn has any ownership interest in W&K.

b. Lynn Lacks Standing Under Section 86.041.

Lynn lacks standing to assert the claim in Count II because she is not a fiduciary, beneficiary, or creditor under Section 86.041. (*See* Br. 18-19.) Under that provision (emphasis added):

> "[a]ny person **interested as** or **through** an executor, administrator, trustee, guardian, or other fiduciary, creditor, devisee, heir, next of kin, or cestui que trust, in the administration of . . . the estate of a decedent . . . may have a declaration of rights or equitable or legal relations to . . .[d]irect the executor . . . to refrain from doing any particular act in his or her fiduciary capacity."

Lynn does not claim to be a fiduciary, beneficiary, or creditor; instead, Lynn insists she has an interest "'**through**' the personal representative, in the administration of the Estate." (Opp. 12-13.) This is because, she argues, "if this Court distributes 100% of W&K to Ira Kleiman, then that judgment is good against the entire world, including Lynn." (*Id.* at 13.) This still fails to explain how she is interested "through" the personal representative. She's "interested" because she claims membership interest in W&K. That's not an interest "through" the personal representative. But more fundamentally, if Lynn were correct that any person who could be affected by a decision regarding a decedent's estate would have standing to seek declaratory or injunctive relief under Section 86.041, then approximately half of the words in that statute (everything from "as or

through" to "cestui que trust") would be superfluous. Such an interpretation—as the Florida Supreme Court has recognized since its inception—is not permissible. *See Gasden v. Jones*, 1 Fla. 332, 385 (1847) ("A statute ought, upon the whole, to be so construed that if it can be prevented no clause, sentence or word shall be superfluous, void or insignificant."); *Crews v. State*, 183 So. 3d 329, 335 (Fla. 2015) ("Every word in a statute should be given effect, and constructions should be avoided that would render any words superfluous.").

### V.     If the Court declines to dismiss this action, it should stay it pending resolution of the Federal Action.

If the Court does not dismiss the Petition, it should stay this action pending resolution of the Federal Action, because the Federal Action was filed more than two years earlier than the Petition and because both actions contain the same issue: whether the Estate had authority to commence the Federal Action on behalf of W&K. (*See* Br. 9.) Indeed, the court in the Federal Action, in denying Craig's motion for summary judgment, has already resolved that precise issue in Ira's favor. (Not. of Supp. Auth. & Mot. for Leave to Supp. MTD at 2.)[8] And while Ira believes that decision is final for purposes of collateral estoppel (*see id.* at 9-10), any potential dispute on that front could be eliminated if the federal court enters judgment in the Estate and W&K's favor following trial in June.

---

[8] Lynn inexplicably asserts that this issue was not raised in the Federal Action. (*See* Opp. 16 ("But because Lynn will not be bound by any judgment that the federal court issues and the ownership claim has not been raised in any event, a stay is not appropriate.").) She even proposes "an early hearing to determine a discrete issue, such as whether Ira Kleiman has the right to act on behalf of W&K, which might limit the scope of the federal case." (*Id.*) Lynn's "suggestion" is extremely troubling. By suggesting that this Court hold a hearing to determine whether the Estate had authority to commence the Federal Action *on the eve of trial* while blatantly misrepresenting to this Court that the federal court had never considered that issue (even though the federal court *had considered that issue and decided it in Respondent's favor*), Lynn has further sought to deceive this Court into effectively dismissing the Federal Action based on incomplete and inaccurate information. In any event, Lynn's "suggestion" demonstrates that she agrees that there is significant overlap between the issues in this action and the Federal Action.

Lynn argues that a stay is inappropriate because, in her view, the court in the Federal Action does not have jurisdiction over the issue of whether the Estate has authority to act on behalf of W&K. (*See* Opp. 14-15.) But Lynn's own cases establish that a federal court "may exercise its jurisdiction to adjudicate rights" in property in the custody of the state probate court. *Marshall v. Marshall*, 547 U.S. 293, 309 (2006) (quoting *Markham v. Allen*, 326 U.S. 490, 494 (1946)). That would, of course, include the authority to adjudicate the issue of whether the Estate has the **right** to exercise control over W&K. *See Stuart v. Hatcher*, 757 F. App'x 807, 809 (11th Cir. 2018) (explaining that a "creditor may obtain a federal judgment that he has a valid claim against the estate for one thousand dollars," but that the federal court cannot "order payment of the creditor's thousand dollars").

Lynn further argues that a stay is inappropriate because any decision in the Federal Action regarding Respondent's authority to act on behalf of W&K "cannot be res judicata as to Lynn." (Opp. 16.) Lynn cites no authority for the proposition that the principle of priority—under which a later-filed action is stayed if it involves "substantially the same subject matter and parties" as an earlier-filed action, *Inphynet Contracting Servs., Inc. v. Matthews*, 195 So. 3d 449, 464 (Fla. 4th DCA 2016)—only applies if the earlier-filed action would, as a matter of res judicata, bar the later-filed action. To Respondent's knowledge, no such authority exists.

Indeed, Florida courts find that a stay is appropriate if "the disposition of the federal case will resolve many of the issues raised in the [later-filed] state action." *State v. Harbour Island, Inc.*, 601 So. 2d 1334, 1335 (Fla. 2d DCA 1992); *see Fla. Crushed Stone Co. v. Travelers Indem. Co.*, 632 So. 2d 217, 220 (Fla. 5th DCA 1994) ("Nonetheless, we conclude a stay of the state court proceeding was warranted since the resolution of the federal action will resolve many of the issues involved in this action."). That requirement is plainly met here: the Federal Action **has already**

*resolved* one of, if not <u>the</u>, primary issue raised by the Petition—*i.e.*, whether the Estate had the authority to commence the Federal Action on behalf of W&K. (*See* Pet. ¶ 50.)

Further, and contrary to Lynn's suggestion, the principle of priority does not "require an absolute identity of parties between the two actions." *Inphynet*, 196 So. 3d at 464. But even if this rule were as rigid as the same-party requirement for res judicata or collateral estoppel (it's not), the same-party requirement would be satisfied here because Lynn and Craig are in privity. (*See* Not. of Supp. Auth. & Mot. for Leave to Supp. MTD at 6-8.)  Indeed, as set forth in the Motion for Order to Show Cause soon to be filed, it is clear that Lynn is acting as a proxy for Craig, and is pursuing his interests even at the expense of her own claimed interests.

## CONCLUSION

For the foregoing reasons, Respondent respectfully requests that the Petition be dismissed with prejudice or, at minimum, transferred to the civil division.

Respectfully submitted,

Dated: November 30, 2020

*/s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman, Esq.
Florida Bar No. 99762
**ROCHE CYRULNIK FREEDMAN LLP**
200 S. Biscayne Blvd, Suite 5500
Miami, Florida  33131
Telephone: (305) 357-3861
vel@rcfllp.com
nbermond@rcfllp.com

Andrew S. Brenner
Florida Bar No. 978663
**BOIES SCHILLER FLEXNER LLP**
100 S.E. 2nd Street, Suite 2800
Miami, Florida  33131
Tel: (305) 539-8400
abrenner@bsfllp.com

*Counsel to Respondent Ira Kleiman as*
*Personal Representative of the Estate of*
*David Kleiman*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the November 30, 2020, I electronically filed this pleading with the Palm Beach County Clerk of Court, which will send a notice of electronic filing to all counsel of record.

*s/ Velvel (Devin) Freedman*
VELVEL (DEVIN) FREEDMAN

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

PROBATE DIVISION IH
CASE NO. 50-2013-CP-005060-XXXX-NB

DAVID ALAN KLEIMAN,

      Decedent.

_____/

## ORDER STAYING PETITION OF LYNN WRIGHT

**THIS CAUSE** comes before the Court on the motion ("Motion") of Ira Kleiman ("Ira"),

as personal representative of the estate of David Alan Kleiman, to dismiss or alternatively, stay,

the petition ("Petition") filed by Lynn Wright ("Lynn") seeking a determination of her interest in

W&K Info Defense Research, LLC ("W&K") and also seeking a declaratory judgment enjoining

Ira from pursuing the action styled, *Ira Kleiman, as personal representative of the Estate of David

Kleiman and W&K Info Defense Research, LLC v. Craig Wright*, No. 9:18-cv-80176-BB (USDC

S.D. Fla.) ("the Federal Case"). (Petition, D.E. # 50.)  Ira filed his Motion on August 4, 2020

(D.E. # 53).  On November 24, 2020, Ira filed a notice of supplemental authority and motion to

supplement his motion to dismiss (D.E. # 64).  (Hearing no objection from Lynn, the motion for

leave is hereby granted, and the Court will consider the supplement.)  Lynn responded to the

Motion on November 24, 2020 (D.E. # 65).  Ira filed a reply on November 30, 2020 (D.E. #

69.)  The Court held a hearing on the Motion on December 3, 2020.  The Court has considered

the submissions of the parties and the arguments of counsel, it has reviewed the docket and

certain matters in the Federal Case, and is otherwise advised of the premises.

### BACKGROUND

      The background of this matter is complex and must be recounted in order to afford full

context to the dispute and the basis for the Court's decision.  In doing so, pursuant to section

90.202(6), Florida Statutes, the Court takes judicial notice of certain aspects of the record of

proceedings before the United States District Court for the Southern District of Florida in the

Federal Case.

      In their submissions the parties do not provide the Court any information regarding the

underlying stakes of the dispute between them, but during oral argument and in reference to the

Unique Code : CAA-FBH-BCAJJ-BIEEEHBDA-FHEHJH-D Page 1 of 11

EXHIBIT B4

pending Federal Case, the matter relates to Bitcoin. As explained by the federal court, David and Craig Wright ("Craig") allegedly created Bitcoin, a cybercurrency computer protocol/system. (Federal Case, Omnibus Order Sept. 21, 2020 at 3, ECF # 615.) Together, they allegedly "mined" bitcoins ("bitcoin," with a lower-case "b," being the term used for the unit of currency, as opposed to the Bitcoin protocol/system) and also developed "blockchain" related intellectual property. (*Id.*) (The Court will not here go into the complexities of the Bitcoin system, "mining" bitcoins, or the meaning and purpose of a "blockchain," as those matters are immaterial to the Motion before this Court.) In February 2011 David formed W&K as a Florida limited liability company, and it was allegedly through that entity that David and Craig continued their work. (*Id.*)

**(a)** **Lynn's Petition.**

According to Lynn's Petition in this case, David formed W&K as a Florida limited liability company in February 2011. (Petition, D.E. # 50, ¶ 13.) Lynn alleges in her Petition that when W&K was formed, she was an initial member and owner of one-third of the membership interest in W&K; Craig, through an entity called Craig Wright R & D, of which Craig was trustee, owned a one-third interest in W&K; and David owned the remaining one-third. (*Id.*) She alleges that on February 14, 2011, David filed the articles of organization for W&K, naming himself as the managing member. (*Id.*, ¶ 15.) She further alleges that there is no "fully executed" operating agreement for W&K. (*Id.*, ¶ 16.)

Lynn further alleges in her Petition that she was married to Craig, and they divorced effective March 15, 2013. (*Id.*, ¶ 17.) She further alleges that before their divorce, in June 2011 Craig and she agreed to a property settlement under which half of Craig Wright R & D's one-third interest in W & K Info was transferred to her, essentially making her just shy (33.33% plus 16.66%, or 49.99%) of owning half of the membership interest in W & K Info. (*Id.*)

Lynn then alleges that in December 2012 – before her divorce from Craig became final – she transferred all of her interests in W & K Info back to Craig Wright R & D. (*Id.*, ¶ 19.) This would make Craig Wright R & D the owner of two-thirds of W&K, with David still holding the remaining third.

Unique Code : CAA-FBH-BCAJJ-BIEEEHBDA-FHEHJH-D Page 2 of 11

David died on or about April 26, 2013 (the exact date of death has not been established; the death certificate states as the date of death, "FOUND ON April 26, 2013.") (Death Certificate, D.E. #6.) On October 25, 2013, Ira, as a named personal representative in David's will, initiated the proceedings before this Court by filing his Petition for Disposition of Personal Property Without Administration and also filing a copy of David's will. (D.E. # 5, 6.) The Court denied that petition on November 11, 2013 (D.E. # 11), and Ira then filed an amended petition on January 6, 2014 (D.E. # 12). He then filed a petition for subsequent administration on February 2, 2016. (D.E. 16.)

By Order filed February 4, 2016, this Court admitted the will to probate, appointed Ira as personal representative as per the will, and issued letters of administration. (D.E. # 23, 24.) Ira filed the Federal Case on February 14, 2018.

To return to the chronology alleged in Lynn's Petition, after she conveyed all of her interests in W&K back to Craig Wright R & D in December 2012, she thus had no interest in W&K at the time of David's death in April 2013. Lynn then makes a series of allegations about Craig Wright R & D changing its name to Tulip Trust at some point after David's death (D.E. # 51, ¶ 20), that Craig is not a trustee of Tulip Trust (*id.*, ¶ 21), that a person named "Ramona Ang" is a trustee of Tulip Trust, "with full right and power to make transfers from the Tulip Trust to other persons" (*id.*, ¶ 22), that a "Ms. Nguyen" came into the picture, along with an entity called Coin-Exch Pty, Ltd., and "it is believed" that Ms. Nguyen made filings with the Florida Secretary of State's Office reinstating W&K's status and changing W&K's registered agent from David to Ms. Nguyen and changing the principal place of business to California. (*Id.*, ¶ 23, 24.)

There is still more in the Petition about Ms. Nguyen and Coin-Exch, with allegations that "Ms. Nguyen may claim an interest in W&K Info Defense" and there "may be a business relationship between Ms. Nguyen and Ira to attempt to obtain control of W&K Info Defense." (*Id.*, ¶ 25, 26). Lynn then alleges that in 2018 Ira filed a reinstatement of W&K with the Florida Secretary of State, claiming to be the registered agent and managing member, and that in 2019 and 2020 Ira filed annual reports on behalf of W&K, again stating himself as registered agent

Unique Code : CAA-FBH-BCAJJ-BIEEEHBDA-FHEHJH-D Page 3 of 11

and managing member. (Id., ¶¶ 27-29.)

Lynn then alleges that on July 10, 2020 (six days prior to the filing of her Petition, as Ira points out in his submissions), Tulip Trust "transferred" to her "one-third of all of the membership interest" in W&K, representing "one-third of all voting interest" and "one-third of all the transferable economic interest" in W&K, which includes a "one percentage interest" in W&K that was "previously owned only by Tulip Trust" and not "previously owned" by Lynn. (*Id.*, ¶ 30.)

Lynn then filed her Petition on July 16, 2020. In Count I of her Petition, she seeks a "determination of beneficiary shares" in W&K. (*Id.*, ¶¶ 31-36.) (As Ira notes in his submissions, Lynn is not named as a "beneficiary" in David's will.) In Count II, she seeks a "declaratory judgment and injunctive relief" under section 86.041, Florida Statutes, seeking to prohibit Ira, as personal representative of David's estate, from acting in the capacity as a representative of W&K, including his prosecution of the Federal Case against Craig. (Id., ¶¶ 37-51.)

**(b)     The Federal Case.**

Because the pending Federal Case bears directly on the Court's decision in this Order, the Court will recount pertinent aspects of that case. Ira filed the Federal Case on February 14, 2018. The docket in the Federal Case, which consists of over 600 entries, reflects that discovery has been robust, dispositive motion practice essentially has been completed, and the case currently is set for a jury trial beginning on June 1, 2021. (ECF # 626.)

Ira's second amended complaint in the Federal Case (ECF # 83), filed January 14, 2019, is 49 pages long and contains ten counts, all of which pertain to the relationship between David and Craig and the dispute over the ownership interests in W&K, assets allegedly held by W&K, and/or assets held by David. The complaint contains detailed allegations about schemes perpetrated by Craig to take, from David and David's estate, David's interest in W&K, assets allegedly held by that entity, and/or assets held by David, individually. Review of the voluminous summary judgment submissions filed in the Federal Case by the parties demonstrates that the Federal Case turns on disputes between Ira and Craig over David's ownership of W&K and its assets and Craig's interest (if any) therein, David's own assets, the existence of trusts and

Unique Code : CAA-FBH-BCAJJ-BIEEEHBDA-FHEHJH-D Page 4 of 11

roles of trusts including the Tulip Trust, the role and involvement of Coin-Exch, the role and involvement of Uyen Nguyen with respect to W&K, and Lynn's alleged ownership interests in W&K. (Federal Case, ECF # 487, 488, 495, 511, 531, 535, 549, 550, 560, 561.)

The federal court's 93-page Omnibus Order on the motions for summary judgment (ECF # 615) demonstrates that issues regarding the ownership interests in W&K and its assets, and David's individual assets, are fundamentally intertwined with that case.

The federal court's Omnibus Order, other orders and the overall record of the federal case demonstrate that there are numerous, complicated factual issues before the federal court bearing upon the very issue that Lynn presents in her Petition before this Court; *i.e.*, her "beneficial" interest (even though she is not named as a "beneficiary" in David's will), if any, in W&K. Additionally, the Court notes that in her Petition, Lynn names all of the same individuals and entities peripherally referenced in the Federal Case that might have an interest in W&K – Ira, Lynn, Craig (as beneficiary of the Tulip Trust), Ms. Ang (as trustee of the Tulip Trust), W&K, Uyen Nguyen, and Coin-Exch. (Petition, ¶ 34.)

    **(c)**    **The Motion.**

Ira asserts in his Motion that Lynn's petition should be dismissed on three grounds, each of which is contested by Lynn. Alternatively, Ira alternatively requests the Court to stay the proceedings before it pending final resolution of the proceedings in the Federal Case. For the reasons next explained, the Court has determined that all proceedings related to Lynn's Petition should be stayed pending final resolution of the Federal Case.

**<u>ANALYSIS</u>**

The Court's focus is on Ira's alternative request to stay Lynn's petition pending resolution of the Federal Case. The Court has carefully reviewed the docket in the Federal Case (a docket that comprises over 600 entries), Florida law governing a state court's staying of proceedings in favor of a prior, pending federal action, and the so-called "probate exception" to federal diversity jurisdiction.

Unique Code : CAA-FBH-BCAJJ-BIEEEHBDA-FHEHJH-D Page 6 of 11

I.      **The principles underlying a stay of the Petition pending resolution of the Federal Case.**

"'It is well-settled that when a previously filed federal action is pending between substantially the same parties on substantially the same issues, a subsequently filed state action should be stayed pending the disposition of the federal action.'" *Robeson v. Melton*, 52 So. 3d 676, 679 (Fla. 4th DCA 2009) (quoting *Beckford v. General Motors Corp.*, 919 So. 2d 612, 613 (Fla. 3d DCA 2006). "Comity principles dictate that '[w]here a state and federal court have concurrent jurisdiction over the same parties or privies and the same subject matter, the tribunal where jurisdiction first attaches retains jurisdiction.'" *OPKO Health, Inc. v. Lipsius*, 279 So.3d 787, 791 (Fla. 3d DCA 2019) (quoting *Shooster v. BT Orlando Ltd. P'ship,* 766 So. 2d 1114, 1115 (Fla. 5th DCA 2000) (citing *Wade v. Clower*, 114 So. 548, 551 (Fla. 1927)). "'Florida law is clear that, *"the causes of action do not have to be identical ... [i]t is sufficient that the two actions involve a single set of facts and that resolution of the one case will resolve many of the issues involved in the subsequently filed case."'" Id.* (quoting *Pilevsky v. Morgans Hotel Grp. Mgmt., LLC,* 961 So. 2d 1032, 1035 (Fla. 3d DCA 2007) (quoting *Fla. Crushed Stone Co. v. Travelers Indem. Co.*, 632 So. 2d 217, 220 (Fla. 5th DCA 1994))). Likewise, complete identity of the parties and claims is not required. *In re Guardianship of Morrison*, 972 So. 2d 905, 910 (Fla. 2d DCA 2007). A stay (as opposed to abatement) does not require complete identity of both the parties and the causes of action, but requires a substantial similarity of the parties and actions. *Sauder v. Rayman*, 800 So.2d 355, 358 (Fla. 4th DCA 2001). While the decision whether to grant a stay is within the trial court's "broad discretion," the failure to stay a subsequently filed state court action in favor of a previously filed federal action involving the same parties or privies and substantially the same issues is "an abuse of discretion." *Fla. Crushed Stone, supra.*

The purposes underlying these principles are equally well settled: staying the subsequently filed state court case while the federal case proceeds to final disposition avoids "duplication of efforts and costs, as well as the possibility of inconsistent judgments." *J.M. Smucker Co. v. Rudge*, 877 So. 2d 820, 822 (Fla 3d DCA 2004.) Moreover, the disposition of the federal

action may dispose of or materially affect the claims asserted in the state court action. *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 129 So. 3d 1153, 1155 (Fla. 3d DCA 2014).

Applying these principles, the Federal Case necessarily involves the same foundational issues that Lynn's Petition presents to this Court, among them being the membership interests in W&K, both at its creation and its evolution, the assets alleged held in W&K, and the alleged transference of interests in W&K, or assets of W&K, to Craig Wright R & D, then to Tulip Trust, and/or Ms. Nguyen and Coin-Exch. Indeed, Lynn asserts as much in her own Petition. (Petition, ¶ 34.) That Lynn is not a party to the Federal Case does not militate against staying the proceedings before this Court: By the allegations of her own Petition, her interests in W&K derive from the "chain" she describes in her Petition, ending up with the alleged transfer by Tulip Trust to her in July 2020.

All of this convinces the Court that a stay of all proceedings relating to Lynn's Petition before this Court is not only warranted but would be an abuse of discretion not to do so. *Fla. Crushed Stone, supra.* If the Court were to proceed with the Petition in the face of the previously filed and greatly developed Federal Case, and if the Court were not to dispose of the Petition on Ira's pending Motion (which is well argued by both sides), the Court perceives that much of the same, voluminous discovery that has occurred in the Federal Case (which itself produced many skirmishes) would be sought in the proceedings before this Court, creating expensive duplication of effort which could be entirely meaningless in event of final disposition in the Federal Case that might entirely foreclose Lynn's Petition. Additionally, were this Court to move forward with Lynn's Petition in the face of the pending Federal Case, the hazard of inconsistent or conflicting results is starkly self-evident.

In sum, this matter is a very large onion of which only one court – the federal court, as the "first-filed" court – should peel back its several layers. Accordingly, following Florida's well-established precedent, this Court is staying its hand while the federal court completes the case before it.

Unique Code : CAA-FBH-BCAJ-BIEEEHBDA-FHEHJH-D Page 8 of 11

## II.   The "Probate Exception."

The Court also should address Lynn's contention that the so-called "probate exception" to federal court jurisdiction precludes a stay.  (Lynn response to Motion at 14-15, D.E. # 65.)  Of course, it is not within the province of this Court to determine issues regarding the federal court's jurisdiction – that is the federal court's prerogative.  However, insofar as Lynn is suggesting that this Court should rely upon the "probate exception" to forge ahead without regard to the pendency of the Federal Case, this Court will not do so.  The "probate exception" is neither as broad nor as absolute as Lynn asserts.  Contrary to Lynn's reliance on the decision in *Marshall v. Marshall*, 547 U.S. 293, 126 S.Ct. 1735 (2006), in fact that decision rejects the view she espouses and particularly rejects the notion, implied by Lynn, that a state probate court can unilaterally ignore a pending federal action and declare exclusive jurisdiction over all things that might impact interests in an estate.

As Justice Ginsburg explained in *Marshall*, the holdings in *Markham v. Allen*, 326 U.S. 490, 66 S.Ct. 296 (1946) that draw the limited contours of the "probate exception" are still good law,  and *Marshall* does not depart from them.   In *Markham*, while a state court probate administration was pending, a federal district court exercised jurisdiction in ruling that resident heirs had no interest in the estate at issue, and the Alien Property Custodian (a federal officer appointed by the President pursuant to the Trading with the Enemy Act), acting on behalf of German legatees, was entitled to the entire net estate.  *Marshall*, 527 U.S. at 309-10.  The Ninth Circuit Court of Appeals reversed, holding that the district court was without jurisdiction under the "probate exception."  *Allen v. Markham*, 147 F.2d 136 (9th Cir. 1945).

The Supreme Court in *Markham* reversed, establishing the limits of the "probate exception:"

> It is true that a federal court has no jurisdiction to probate a will or administer an estate, the reason being that the equity jurisdiction conferred by the Judiciary Act of 1789, 1 Stat. 73, and s 24(1) of the Judicial Code, which is that of the English Court of Chancery in 1789, did not extend to probate matters. . . . **But it has been established by a long series of decisions of this Court that federal courts of equity have jurisdiction to entertain suits 'in favor of creditors, legatees and**

Unique Code : CAA-FBH-BCAJJ-BIEEEHBDA-FHEHJH-D Page 9 of 11

> **heirs and other claimants against a decedent's estate 'to establish their claims' so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court.** . . .
>
> Similarly while a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, . . . **it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court.** . . .
>
> Although in this case petitioner sought a judgment in the district court ordering defendant executor to pay over the entire net estate to the petitioner upon an allowance of the executor's final account, the judgment declared only that petitioner 'is entitled to receive the net estate of the late Alvina Wagner in distribution, after the payment of expenses of administration, debts, and taxes.' **The effect of the judgment was to leave undisturbed the orderly administration of decedent's estate in the state probate court and to decree petitioner's right in the property to be distributed after its administration. This, as our authorities demonstrate, is not an exercise of probate jurisdiction or an interference with property in the possession or custody of a state court.**

*Markham*, 326 U.S. at 494-95 (citations omitted, emphasis added.)

In *Marshall*, the issue centered on disputes between Vickie Lynn Marshall (a/k/a Anna Nicole Smith) and the heirs of her late husband, J. Howard Marshall II. The particular dispute in *Marshall* was an adversary proceeding brought by Mr. Marshall's son in Ms. Marshall's Chapter 11 bankruptcy proceedings alleging that Ms. Marshall had defamed him. Ms. Marshall counterclaimed against the son for tortiously interfering with her expectancies of an inheritance or gift from Mr. Marshall upon his death. The adversary proceeding was brought while Mr. Marshall's probate was pending before a Texas probate court. The bankruptcy court for the Central District of California dismissed the son's complaint and ruled in favor of Ms. Marshall on her counterclaim. The son then moved to set aside the judgment in favor of Ms. Marshall, arguing that under the "probate exception" the bankruptcy court had no jurisdiction over her counterclaim; it was within the exclusive province of the Texas probate court. The bankruptcy court rejected the son's argument, and the federal district court confirmed the bankruptcy court's decision (as modified), relying upon *Markham*. *Marshall*, 547 U.S. at 293-94 (syllabus).

The stepson appealed to the Ninth Circuit Court of Appeals, which reversed, holding that

the "probate exception" applied to bar the bankruptcy court's jurisdiction over Ms. Marshall's counterclaim, particularly noting that the Texas probate court had ruled that it had exclusive jurisdiction over Ms. Marshall's claims. *Id.* at 294-95 (syllabus). The Supreme Court reversed. Justice Ginsburg, writing for the Court, reaffirmed the holdings of *Markham* in ruling that the "probate exception" did not apply to divest the bankruptcy court of jurisdiction. *Id.* at 308-12.

    *Markham* and *Marshall* control the question of the "probate exception." Distilled to its essence, the Federal Case involves claims and causes of action arising from the business relationships between David and Craig. Were David alive, he could have prosecuted these same claims in federal court, but he is dead, and Ira, as personal representative of David's estate, is pursuing them in his stead, as he is authorized to do. Personal representatives routinely prosecute (and defend) actions on behalf of a decedent's estate before state and federal courts, outside of proceedings before the probate court, which well might affect those claiming interests in the estate. Such actions, however, do not offend the jurisdiction of a probate court or implicate the "probate exception" recognized in federal court jurisdiction. Applying *Markham* and *Marshall*, nothing in the Federal Case suggests that the federal court, in entertaining that case, is usurping or interfering with this Court's probate jurisdiction.

Accordingly, it is hereby **ORDERED** -

    That the Petition of Lynn Wright, and all pending motions relating thereto, and all discovery relating thereto, are hereby **STAYED** pending final disposition of the Federal Case; Ira's Motion, insofar as it seeks outright dismissal of Lynn's Petition, is denied without prejudice to present those issues later, should they maintain vitality after final disposition of the Federal Case.

    **DONE AND ORDERED**, in Palm Beach Gardens, Palm Beach County, Florida this 14th day of December, 2020.



50-2013-CP-005060-XXXX-NB    12/14/2020
Dina Keever-Agrama
Judge

**COPIES TO:**

Unique Code : CAA-FBH-BCAJJ-BIEEEHBDA-FHEHJH-D Page 11 of 11

| | | |
|---|---|---|
| ADELE SMALL HARRIS | 2875 PGA BLVD STE. 100 PALM BEACH GARDENS, FL 33410 | EFILING@KARPLAW.COM aharris@karplaw.com gbrown@karplaw.com |
| ALAN M BURGER | No Address Available | aburger@mcdonaldhopkins.com ltimoteo@mcdonaldhopkins.com wpbpleadings@mcdonaldhopkins.com |
| ANDREW D. HODES | No Address Available | adh@lubellrosen.com |
| ANDREW S BRENNER | No Address Available | abrenner@bsfllp.com PMUSA@bsfllp.com tlopez@bsfllp.com |
| BRUCE A. ZIMET | No Address Available | baz@bruceazimetlaw.com jcc2878@yahoo.com |
| DEVIN VEVEL FREEDMAN | 200 SOUTH BISCAYNE BLVD SUITE 5500 MIAMI, FL 33131 | VEL@ROCHEFREEDMAN.COM vel@rcfllp.com nbermond@rcfllp.com |
| EVELYN I. SUERO | 1001 BRICKELL BAY DRIVE SUITE 2700 MIAMI, FL 33131 | ESUERO@SUEROLAWPLLC.COM |
| JOSEPH S. KARP | No Address Available | klf@karplaw.com |
| JOSEPH STUART KARP | 2875 PGA BLVD #100 PALM BEACH GDNS, FL 33410 | E-FILING@KARPLAW.COM klf@karplaw.com |
| KRISTEN M. LYNCH | 200 S ANDREWS AVE STE. 900 FT LAUDERDALE, FL 33301 | KML@LUBELLROSEN.COM anny@lubellrosen.com klynch@fowler-white.com |

IN THE 15TH JUDICIAL CIRCUIT,
IN AND FOR PALM BEACH COUNTY,
FLORIDA

CASE NO. 50-2013-CP-005060-XXXX-NB
PROBATE DIVISION

IN RE:  ESTATE OF DAVID ALAN KLEIMAN,

      Deceased.
_____/

LYNN WRIGHT,

      Petitioner,

v.

IRA KLEIMAN, as Personal Representative
of the Estate of David Kleiman,

      Respondent,

and

DR. CRAIG WRIGHT, TULIP TRUST, UYEN T. NGUYEN,
W&K INFO DEFENSE RESEARCH, LLC,
a Florida limited liability company, and
COIN-EXCH PTY, LTD., an Australian
proprietary limited company,

      Interested Parties.
_____/

### PETITIONER'S MOTION TO LIFT STAY OF PROCEEDINGS

      Petitioner, Lynn Wright ("Lynn"), by and through undersigned counsel, moves for an

Order Lifting Stay of Proceedings, stating as grounds:

      1.     On July 16, 2020, Lynn filed her Verified Petition to Determine Beneficiary

Shares and for Declaratory Judgment and Injunctive Relief ("Petition") against Ira Kleiman

("Ira"), as Personal Representative of the Estate of David Alan Kleiman, Decedent.

**EXHIBIT B5**

2.      Lynn's Petition asserts that in February 2011, W&K Info Defense Research, LLC ("W&K") was formed as a limited liability company. The ownership interests were Lynn, holding 1/3 of the membership interests, Craig Wright R&D, for which Dr. Craig Wright ("Dr. Wright") was trustee, with a 1/3 membership interest, and David Alan Kleiman ("Dave Kleiman" or "Decedent"), with a 1/3 membership interest.

3.      Ira contends that he has authority to act as a member and on behalf of W&K, because he held himself out to the State of Florida as a manager member of W&K, reinstated the LLC with the State of Florida, and listed himself as W&K's registered agent.

4.      Ira also contends that he had the authority to act as a member of W&K for the purpose of filing a lawsuit in federal court, naming W&K as one of the plaintiffs in *Ira Kleiman and W&K Info Defense Research, LLC v. Craig Wright*, Case No. 9:18-cv-80176-BB, in the United States District Court, Southern District of Florida (the "Federal Action"). The other plaintiff was Ira Kleiman, as personal representative of the Estate of David Alan Kleiman.

5.      There is a present dispute between Lynn, on the one hand, and Ira, on the other hand, with respect to Ira's ability to act as a member of W&K and to litigate the Federal Action and for any other acts he has undertaken on behalf of W&K.

6.      The Federal Action was a bitterly contested suit between Ira and Dr. Wright as to who was the inventor of Bitcoin, whether Dr. Wright and Dave Kleiman entered into a partnership, and whether Dr. Wright had improperly obtained funds that were the property of either Dave Kleiman individually or W&K or both.

7.      On August 4, 2020, Ira filed a Motion to Dismiss Lynn's Petition or, in the alternative, to stay the proceedings in this case until the resolution of the Federal Action.

8.  On December 14, 2020, following briefing and a hearing, this Court entered an Order Staying Petition of Lynn Wright, pending resolution of the Federal Action.

9.  On December 7, 2021, following a jury verdict, the court in the Federal Action entered a Final Judgment in favor of Plaintiff W&K as to its claim against Dr. Wright for conversion in the amount of $100,000,000.00. A copy of the final judgment is attached as **Exhibit A**. The jury did not find any damages in favor of the other plaintiff, Ira Kleiman, as personal representative of the Estate of David Alan Kleiman.

10.  As the Federal Action has now been resolved and the owners and/or actual or beneficial rights of the membership interests of W&K are now squarely at issue (more simply, who has what), this Court should lift the stay of proceedings and allow this matter to proceed forward.

WHEREFORE, Petitioner, Lynn Wright, respectfully requests this Court enter an order lifting the stay of proceedings in this case.

Dated this 20th day of December, 2021.

MCDONALD HOPKINS LLC
*Attorneys for Petitioner Lynn Wright*
Alan M. Burger, Esq.
Florida Bar No.: 833290
505 South Flagler Drive, Suite 300
West Palm Beach, FL 33401
Tel: 561-472-2121
Fax: 561-472-2122
aburger@mcdonaldhopkins.com
ltimeteo@mcdonaldhopkins.com

By:   */s/Alan M. Burger*
ALAN M. BURGER
Florida Bar No. 833290

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of December, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and e-served it by CM/ECF to: c/o Velvel (Devin) Freedman, Esq., vel@rcfllp.com, *Attorneys for Ira Kleiman, as Personal Representative of the Estate of David Kleiman,* Roche Cyrulnik Freedman LLP, 200 South Biscayne Blvd., Suite 5500, Miami, FL 33131; Stephen Lagos, Esq., *pro hac vice,* slagos@rcfllp.com, *Attorneys for Ira Kleiman, as Personal Representative of the Estate of David Kleiman,* Roche Cyrulnik Freedman LLP, 99 Park Avenue, Suite 1910, New York, NY 10016, any other attorneys listed on the Florida E-Portal and by email or U.S. Mail to the following:

| Name | Address |
|---|---|
| Craig Wright, as beneficiary of Tulip Trust;<br><br>Ramona Ang as Trustee of Tulip Trust | c/o Andres Rivero, Esq.<br>Rivero Mestre LLP<br>2525 Ponce de Leon Boulevard, Suite 1000<br>Miami, FL 33134<br>arivero@riveromestre.com |
| W&K Info Defense Research, LLC | 5104 Robino Circle<br>West Palm Beach, FL 33417 |
| Uyen T. Nguyen | 3128 Merced Avenue,<br>South El Monte, CA 91733 |
| Coin-Exch Pty, Ltd. | 502 / 32 Delhi Rd<br>North Ryde, NSW 02113 AU |

By:*/s/Alan M. Burger*
ALAN M. BURGER
Florida Bar No. 833290



**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.  18-cv-80176-BLOOM/Reinhart**

IRA KLEIMAN, *et al*.,

      Plaintiffs,

v.

CRAIG WRIGHT,

      Defendant.

_____/

## FINAL JUDGMENT

**THIS CAUSE** came before the Court following a jury trial held in this matter. The issues having been duly tried and the jury having duly rendered its verdict, it is **ORDERED AND ADJUDGED** as follows, consistent with the jury's verdict, ECF No. [812]:

1. Judgment is entered in favor of Plaintiff W&K Info Defense Research, LLC, as to its claim against Defendant Craig Wright for Conversion in the amount of $100,000,000.00, for which sum let execution issue.

2. The Court reserves jurisdiction to award attorneys' fees and costs.

3. Post-judgment interest shall accrue on this Judgment pursuant to 28 U.S.C. § 1961.

4. The Clerk of Court is directed to mark this case **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 7, 2021.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

IN THE 15TH JUDICIAL CIRCUIT,
IN AND FOR PALM BEACH COUNTY,
FLORIDA

CASE NO. 50-2013-CP-005060-XXXX-NB
PROBATE DIVISION

IN RE:  ESTATE OF DAVID ALAN
KLEIMAN,

      Deceased.

_____

LYNN WRIGHT,

      Petitioner,

v.

IRA KLEIMAN, as Personal Representative
of the Estate of David Kleiman,

      Respondent,

and

DR. CRAIG WRIGHT, TULIP TRUST,
UYEN T. NGUYEN, W&K INFO DEFENSE
RESEARCH, LLC, a Florida limited liability
company, and COIN-EXCH PTY, LTD., an
Australian proprietary limited company,

      Interested Parties.

_____

## RESPONDENT'S OPPOSITION TO PETITIONER'S
## MOTION TO LIFT STAY OF PROCEEDINGS

Respondent Ira Kleiman, as Personal Representative of the Estate of David Kleiman (the

"Estate"), hereby opposes Petitioner Lynn Wright's Motion to Lift Stay of Proceedings.

**EXHIBIT B6**

## **INTRODUCTION**

This is one of several sham lawsuits brought by wives (former and current) of adjudicated perjurer and serial forger Craig Wright, to derail a five-year-old, multibillion-dollar federal action between the Estate, the Estate's company (W&K Info Defense Research, LLC or "W&K"), and Craig (the "Federal Action"), and to harass the plaintiffs in that action. In this particular iteration, Craig's ex-wife, Lynn, claims that she is a member of W&K, that she received that membership interest from the "Tulip Trust" six days before filing this petition, and that the Estate lacks the authority to act on behalf of W&K in the Federal Action and otherwise. Craig's current wife, Ramona, has brought two nearly identical lawsuits in Florida state court over the past eighteen months. Make no mistake, the common purpose of each of these actions is the same – it is not to benefit W&K, but is instead to wrongfully seize control of W&K through further fabricated evidence and perjury, and direct it relieve Craig of the $143-million judgment it holds against him.

In the Federal Action, the Estate and W&K alleged Craig stole billions of dollars in assets from them after their decedent, David Kleiman, died in April 2013. Craig sought to avoid liability at all costs, and repeatedly engaged in litigation misconduct, causing the federal judges presiding over that matter to observe that the record was "replete with instances in which [Craig] has proffered conflicting sworn testimony" and to find that Craig "intentionally submitted fraudulent documents to the Court, obstructed a judicial proceeding, and gave perjurious testimony." Those federal judges sanctioned Craig and further found that he had fabricated the Tulip Trust—the entity that allegedly transferred an interest in W&K to Lynn six days before she filed her petition—as part of a concerted effort to avoid producing relevant evidence.

In December 2020, the Court stayed Lynn's action pending resolution of the Federal Action. In December 2021, after a jury found Craig liable to W&K in the Federal Action to the

tune of $100 million (later increased to $143 million to account for prejudgment interest), Lynn moved to lift the stay on the grounds that the Federal Action had been resolved.

Lynn's motion should be denied. Contrary to her argument, the Estate's claims against Craig are still pending on appeal. Those claims, moreover, go to the key issues in Lynn's action: which assets are owned by the Estate, and which assets are owned by Craig and his related entities, such as the alleged Tulip Trust.

In the event that the Court decides to lift the stay, it should transfer this action to the Civil Division so that it can be consolidated with Ramona's actions that raise the same issues. Although consolidation would not eliminate the non-trivial risk that Craig and his family will continue to file duplicative and frivolous lawsuits against the Estate, it will at least reduce the burden of litigating the duplicative and frivolous lawsuits that Craig and his family have already filed. Indeed, it will place a single judge in charge of overseeing a clear campaign by Wright's extended family to wrongfully exploit the state court system to try and frustrate a federal judgement.

**FACTUAL BACKGROUND**

**I. THE FEDERAL ACTION**

In February 2018, the Estate commenced an action in federal court against Craig Wright, the self-proclaimed inventor of bitcoin and former husband of Lynn (the "Federal Action"). (*See generally* Compl., *Kleiman v. Wright*, No. 9:18-cv-80176 (S.D. Fla. Feb. 14, 2018), ECF No. 1.) Three months later, the Estate, along with the decedent David Kleiman's company, W&K Info Defense Research, LLC ("W&K"), filed an amended complaint against Craig. (*See* Am. Compl., *Kleiman*, No. 9:18-cv-80176 (S.D. Fla. May 14, 2018), ECF No. 24.) In that amended complaint, the Estate and W&K alleged that David Kleiman, Craig, and W&K obtained bitcoin and developed valuable blockchain-related intellectual property together, but that Craig stole those assets for himself after David died in April 2013. (*Id.* ¶¶ 52-131.) Specifically, among other things, the Estate

claimed that David and Craig were business partners, that David was the sole member of W&K, that David and Craig conducted some of their partnership activities through W&K, and that Craig breached his partnership obligations by misappropriating David's share of the partnership's assets. (*Id.* ¶¶ 64-72, 197-201.)

The Federal Action was marred by Craig's pervasive litigation misconduct. For example, after Craig refused to produce documents relating to his bitcoin holdings for months (including in the face of multiple Court orders), he took the position that it was "impossible" for him to comply with his discovery obligations because the information sought was locked in the Tulip Trust. (*Id.* at 3-6.) Following a multi-day evidentiary hearing, in August 2019, Magistrate Judge Reinhart unequivocally rejected that claim, concluding, among other things, that Craig had "intentionally submitted fraudulent documents to the Court, obstructed a judicial proceeding, and gave perjurious testimony"; that Craig's "testimony that [the Tulip Trust] exists was intentionally false" and "part of a sustained and concerted effort to impede discovery into his bitcoin holdings"; and that Craig "willfully created the fraudulent documents." (*Id.* at 6-7.); *see also Kleiman v. Wright*, 2019 WL 4023392, at *11, 14 (S.D. Fla. Aug. 27, 2019), *vacated in part on other grounds*, 2020 WL 113396 (S.D. Fla. Jan. 10, 2020).[1]

In September 2020, the court denied Craig's motion for summary judgment, *see Kleiman v. Wright*, 2020 WL 5632654 (S.D. Fla. Sept. 21, 2020), and the case proceeded to a four-week

---

[1] Specifically, Judge Reinhart found by clear and convincing evidence that Wright lied about the existence of the Tulip Trust. *See Kleiman*, 2019 WL 4023392, at *11 ("The totality of the evidence in the record does not substantiate that the Tulip Trust exists. Combining these facts with my observations of Dr. Wright's demeanor during his testimony, I find that Dr. Wright's testimony that this Trust exists was intentionally false. . . . Although I am only required to make this finding by a preponderance of the evidence, I find clear and convincing evidence to support it."). The District Court affirmed Judge Reinhart's factual findings. *See Kleiman*, 2020 WL 113396, at *8 ("The Court has also reviewed the transcripts from the Evidentiary Hearing held by Judge Reinhart and agrees with his credibility findings relating to Defendant.").

jury trial in November of the following year. After lengthy deliberations, the jury found that Craig converted W&K's intellectual property and was liable for $100 million in compensatory damages, but that Craig was not liable to the Estate. (Jury Verdict, *Kleiman*, No. 9:18-cv-80176 (S.D. Fla. Dec. 6, 2021), ECF No. 812.)[2] That included the Estate's breach of partnership claim, for which the jury was instructed to decide whether David and Craig were partners and, if they were, "to determine the assets of that partnership, and what share of those assets belonged to David Kleiman, and are now owed to his Estate." (Court's Instructions to the Jury at 8-9, *Kleiman v. Wright*, No. 9:18-cv-80176 (S.D. Fla. Nov. 22, 2021), ECF No. 800-1.).

In January 2022, the Estate moved for a new trial on various grounds, including that Craig's counsel violated the Court's pretrial order precluding evidence concerning the relationship between Ira and David. (Estate's Mot. for New Trial, *Kleiman*, No. 9:18-cv-80176 (S.D. Fla. Jan. 4, 2022), ECF No. 861.) The court denied that motion on February 28, 2022, *see Kleiman v. Wright*, 2022 WL 594831 (S.D. Fla. Feb. 28, 2022), and the Estate subsequently appealed (Notice of Appeal, *Kleiman*, No. 9:18-cv-80176 (S.D. Fla. Apr. 8, 2022), ECF No. 892). The Estate's appeal is currently pending before the Court of Appeals for the Eleventh Circuit and will be fully briefed by February 9, 2023.

## II.    THE FLORIDA ACTIONS

As the Federal Action progressed and it became increasingly clear that Craig would not be able to obtain an order dismissing the Estate or W&K's claims, Craig deputized his ex-wife, Lynn, and his current wife, Ramona Ang (a/k/a Ramona Watts), to file lawsuits in Florida state court,

---

[2] The court subsequently entered a final judgment against Craig for $143 million to reflect prejudgment interest. (Amended Final Judgment, *Kleiman*, No. 9:18-cv-80176 (S.D. Fla. Mar. 9, 2022), ECF No. 889.) Craig—a self-proclaimed billionaire—has not paid a cent on that judgment.

first in an attempt to derail the Federal Action, and then in an attempt to obstruct W&K's ability to collect its $143 million judgment against him.[3]

### a. Lynn's Petition

On July 16, 2020, while Craig's motion for summary judgment in the Federal Action was pending, Lynn filed her "Petition to Determine Beneficiary Shares." In the petition, she seeks a court order declaring that she is a member of W&K (because she allegedly received shares from the Tulip Trust just days before filing her suit) and that Ira Kleiman lacks authority to act on behalf of W&K. (Pet. ¶¶ 49-54.) Notably, Lynn never attempted to intervene in the Federal Action. With respect to her purported interest in W&K, she alleges that, on July 10, 2020—***six days before filing the petition***—she received a one-third ownership interest in W&K from Tulip Trust. (*Id.* ¶ 30.)

On August 4, 2020, the Estate moved to dismiss the Petition or, in the alternative, to stay Lynn's action. While that motion was pending, Lynn served the Estate with discovery requests, including fifty RFPs.

In December 2020, the Court granted the Estate's motion in part and stayed Lynn's action "pending final disposition of the Federal Case." (Order at 10.) The Court explained:

> If the Court were to proceed with the Petition in the face of the previously filed and greatly developed Federal Case, and if the Court were not to dispose of the Petition on Ira's [motion to dismiss], the Court perceives that much of the same, voluminous discovery that has occurred in the Federal Case (which itself produced many skirmishes) would be sought in the proceedings before this Court, create expensive duplication of effort which could be entirely meaningless in event of final disposition in the Federal Case that might entirely foreclose Lynn's Petition. Additionally, were this Court to move forward with Lynn's Petition in the face of the pending Federal Case, the hazard of inconsistent or conflicting results is starkly self-evident. In sum, this matter is a very large

---

[3] Consistent with this, Lynn's counsel has indicated that his "client is acting with the full right and authority of Craig Wright" and that certain discovery requests directed from her to W&K "should" be considered as "coming from Craig Wright." (Ex. 1.)

> onion of which only one court – the federal court, as the 'first-filed'
> court – should peel back its several layers.

(Order at 7.)

On December 20, 2021, two weeks after the court entered judgment in the Federal Action but before the Estate filed its appeal, Lynn moved to lift the stay on the grounds that "[t]he Federal Action has now been resolved." (Mot. ¶ 10.) But it has not.

### b. Ramona's Lawsuits

The Petition is not the only lawsuit that the Wrights have filed in Florida state court in an effort to harass the Estate and W&K. Indeed, over the past eighteen months, the Wrights have filed three additional lawsuits against the Estate and W&K.

***First***, after Lynn's attempt to derail the federal action failed, he turned to his current wife, Ms. Ang (also known as Ms. Watts), who then filed a lawsuit against Ira in Florida state court (the "Trustee Action"). (*See* Ex. 2, Compl., *Ang v. Kleiman*, Case No. 50-2021-CA-004758-XXXX-MB (Fla. 15th Cir. Ct. Apr. 13, 2021).) Like Lynn, Ms. Ang never tried to intervene in the Federal Action. In her initial complaint, Ms. Ang alleged that she was the trustee of the fake Tulip Trust, that Tulip Trust was a member of W&K, and that Ira Kleiman breached his duties to W&K by "intentionally deleting data and using [David] Kleiman's electronic devices." (*Id.* ¶ 37.) After the jury found in W&K's favor at trial in the Federal Action, Ms. Ang abruptly changed course, abandoned her tort claims, and amended her complaint to seek the same relief that Lynn seeks here—*i.e.*, an order declaring that Ira does not have authority to act on behalf of W&K. (Ex. 3, Am. Compl. ¶¶ 32-54, *Ang v. Kleiman*, Case No. 50-2021-CA-004758-XXXX-MB (Fla. 15th Cir. Ct. Mar. 4, 2022).)

***Second***, in June 2022, Ms. Ang filed another lawsuit in Florida state court, this time against W&K. (*See* Civil Cover Sheet, *Watts v. W and K Info Defense LLC*, Case No. 50-2022-CA-

005501-XXXX-MB (Fla. 15th Cir. Ct. June 7, 2022).) In that action, she sought to enforce a U.K court judgment awarding costs incurred as a third-party deponent in the Federal Action. Despite receiving no payments from Ms. Ang's husband in connection with its $143-million judgment against him, W&K paid Ms. Ang's cost judgment in October 2022.

*Third*, approximately two weeks after receiving payment for that judgment, Ms. Ang served Ira with yet another lawsuit (the "Derivative Action"). In this action, brought derivatively by the fictitious Tulip Trust on behalf of W&K, Ms. Ang alleges that Tulip Trust is a member of W&K, and that Ira improperly acted on behalf of W&K in pursuing litigation against her husband, Craig, in the Federal Action. (Ex. 4, Compl. ¶¶ 19-23, *Tulip Trust v. Kleiman*, No. 50-2022-CA-004636-XXXX-MB (Fla. 15th Cir. Ct. May 13, 2022).)

## ARGUMENT

### I.     THE STAY SHOULD REMAIN IN PLACE

Lynn's motion to lift the stay should be denied. This Court previously concluded that it "would be an abuse of discretion not to" stay Lynn's action "pending final disposition of the Federal Case." (Order at 7, 10.) That event—"final disposition of the Federal Case"—hasn't occurred: the Estate's claims in the Federal Action are still pending on appeal. *See, e.g.*, *Cohn v. City of Stuart*, 702 So. 2d 255, 255 (Fla. 4th DCA 1997) ("We therefore reverse and remand this cause to the trial court to stay the proceedings, pending the outcome of the appeal in the federal system."). There is, accordingly, no basis to disturb the Court's prior order.

In fact, Lynn's *only* argument for lifting the stay is her factually incorrect assertion that the Federal Action has "been resolved." But the resolution of ***W&K's claims*** in the Federal Action doesn't help her position. To the contrary, the concerns animating the Court's prior order—the possibility of an "expensive duplication of effort which could be entirely meaningless in the event of final disposition in the Federal Case that might entirely foreclose Lynn's Petition" and "the

hazard of inconsistent or conflicting results"—apply with equal force to the ***Estate's claims*** in the Federal Action, which ***are*** still pending.

Indeed, as the Court previously recognized, the Federal Action and Lynn's action are "fundamentally intertwined." (Order at 5); *see also Benihana of Tokyo, Inc. v. Benihana, Inc.*, 129 So. 3d 1153, 1154-55 (Fla. 3d DCA 2014) (quashing order denying stay, where earlier-filed federal actions "include[d] common issues"). For example, in evaluating the Estate's breach of partnership claim in a new trial in the Federal Action, the jury would "determine the assets of that partnership, and what share of those assets belonged to David Kleiman, and are now owed to his Estate." (Court's Instructions to the Jury at 8-9, *Kleiman v. Wright*, No. 9:18-cv-80176 (S.D. Fla. Nov. 22, 2021), ECF No. 800-1.) Given the Estate's allegation that some of the partnership business was conducted through W&K, that inquiry would naturally concern the extent to which the Estate has an interest in W&K. Similarly, in her action, Lynn seeks an order "determining the percentage of distributions from W&K Info Defense Research, LLC to which the Estate is entitled." (Pet. at 7.)

Accordingly, the stay should remain in effect until the courts (trial and appellate) in the Federal Action have an opportunity to resolve these issues. *See OPKO Health, Inc. v. Lipsius*, 279 So. 3d 787, 791 (Fla. 3d DCA 2019) ("It is well-settled that when a previously filed federal action is pending between substantially the same parties on substantially the same issues, a subsequently filed state action should be stayed pending the disposition of the federal action." (quoting *Beckford v. Gen. Motors Corp.*, 919 So. 2d 612, 613 (Fla. 3d DCA 2006))).

## II. IF THE STAY IS LIFTED, LYNN'S ACTION SHOULD BE TRANSFERRED TO THE CIVIL DIVISION AND CONSOLIDATED WITH RAMONA'S ACTION

In the event that the Court decides to lift the stay, it should transfer this action to the Civil Division for consolidation with the other pending lawsuits brought by Craig's family regarding the membership of W&K and Ira's authority to act on behalf of W&K.

***First***, a transfer to the Civil Division is appropriate. Lynn's action seeks to determine the ownership of W&K and to enjoin the Estate from acting on behalf of W&K. That inquiry goes far beyond determining how ***Estate property*** will be allocated; instead, Lynn's petition requires the Court to determine the rights and obligations of members in a limited liability company and the ownership of ***non-Estate property***—*i.e.*, the proportion of W&K, if any, that is not owned by the Estate. Indeed, to prevail on her claims, Lynn must prove that Tulip Trust (i) existed, (ii) owned an interest in W&K, and that (iii) Tulip Trust validly transferred that interest to her. These are not probate issues. *See Meltzer v. Estate of Norrie*, 705 So. 2d 967, 968 (Fla. 5th DCA 1998) (probate court lacks "the power to adjudicate ownership in property that is not part of the probate estate"); *Coraci v. Hogan*, 515 So. 2d 1064, 1064 (Fla. 5th DCA 1987) (probate court "lacked subject matter jurisdiction" because "the mineral interest, unlike the surface estate, was not owned by the decedent and thus was not an asset of the decedent's estate but rather was a separate and distinct property interest").

***Second***, consolidation of Lynn's action with the Trustee Action and Derivative Action is likewise appropriate. "Under Florida Rule of Civil Procedure 1.270(a), '[w]hen actions involving a common question of law or fact are pending before the court . . . it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.'" *Jallali v. Christiana Tr.*, 297 So. 3d 580, 583 (Fla. 4th DCA 2020), *review denied*, 2020 WL 6266163 (Fla. Oct. 23, 2020) (quoting Fla. R. Civ. P. 1.270(a)). In determining whether consolidation is appropriate, courts consider the following factors: "(1)

whether the trial process will be accelerated due to the consolidation; (2) whether unnecessary costs and delays can be avoided by consolidation; (3) whether there is the possibility for inconsistent verdicts; (4) whether consolidation would eliminate duplicative trials that involve substantially the same core of operative facts and questions of law; and (5) whether consolidation would deprive a party of a substantive right." *Id.* (quoting *State Farm Fla. Ins. Co. v. Bonham*, 886 So. 2d 1072, 1074 (Fla. 5th DCA 2004)).

Those factors demonstrate that Lynn's action should be consolidated with the Trustee Action and the Derivative Action. Each of these actions concern ***the same core issues***—*i.e.*, (i) the membership of W&K and (ii) whether Ira has and had authority to act on behalf of W&K. In addition, each action requires the plaintiff to prove ***the same critical facts***: that Tulip Trust (i) existed, and (ii) is a member of W&K. If Lynn cannot prove those facts, then she did not receive a membership interest in W&K from Tulip Trust, and she does not have standing to claim that Ira lacks authority to act on behalf of W&K. If the plaintiffs in the Trustee and Derivative Actions cannot prove that fact, then they too will lack standing to claim that Ira does not have authority to act on behalf of W&K.

As a result, consolidation would reduce the risk of inconsistent outcomes as to these issues, while also allowing the parties—and the courts—to avoid duplicative, unnecessary, and costly litigation. *See Browncorp Constr. Contracting, Inc. v. Stoneybrook S. Cmty.*, 47 So. 3d 965, 966 (Fla. 5th DCA 2010) (quashing order denying consolidation, where actions involved common parties and issues). Eliminating such duplicative efforts would, in turn, promote the expeditious resolution of these actions. *See id.* ("Consolidating the two cases would eliminate duplicative efforts and trials, thus accelerating the trial process."). Indeed, because discovery has not

commenced in any of these actions, there is no risk that consolidation would unduly delay progress. There is, in short, no benefit to permitting these actions to proceed separately.[4]

Moreover, as mentioned above, these three suits are being brought by the extended family of Craig Wright for a singular purpose: to frustrate the federal court's judgment. For example, just recently, Lynn and Ramona's counsel have filed a "resolution" signed by their clients, who (in conflict with Judge Bloom's findings) purport to be acting as members of W&K. Through this "resolution" they purport to (i) fire opposing counsel (the undersigned firms who have represented W&K for the past four years) and (ii) direct all of W&K's files be turned over to opposing counsel. While the "resolution" is absurd, it demonstrates the lengths these parties will go to frustrate the federal court judgment and the importance of having a single jurist oversee their efforts to abuse the state court system.

## **CONCLUSION**

For these reasons, Respondent respectfully requests that Lynn's motion be denied, and the stay remain in effect pending final resolution of the Federal Action. In the alternative, Respondent respectfully requests that Lynn's action be transferred to the Civil Division for consolidation with the Trustee Action and Derivative Action.

Respectfully submitted,

Dated: December 13, 2022
/s/ Velvel Freedman
Velvel (Devin) Freedman, Esq.
Florida Bar No. 99762

---

[4] The Trustee Action and Derivative Action may be consolidated regardless of whether the claims asserted in those actions could have properly been asserted in a single complaint. *See, e.g.*, *Pages v. Dominguez ex rel. Dominguez*, 652 So. 2d 864, 867-68 (Fla. 4th DCA 1995) ("While rule 1.110(g) does not permit separate actions of distinct plaintiffs to be joined in a single lawsuit, Florid Rule of Civil Procedure 1.270 does not prevent consolidation of the separate actions."); *Taubenfeld v. Lasko*, 2019 WL 13080341, at *8 (Fla. 17th Cir. Ct. July 31, 2019) ("Should Taubenfeld choose to file a separate lawsuit on the direct or derivative claims, both lawsuits may be consolidated for discovery and trial purposes.").

**FREEDMAN NORMAND FRIEDLAND LLP**
200 S. Biscayne Blvd, Suite 5500
Miami, Florida 33131
Telephone: (305) 357-3861
vel@fnf.law

Stephen Lagos (*pro hac vice pending*)
**FREEDMAN NORMAND FRIEDLAND LLP**
99 Park Avenue, Suite 1910
New York, NY 10016
slagos@fnf.law

Andrew S. Brenner
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd Street, Suite 2800
Miami, Florida 33131
abrenner@bsfllp.com

*Counsel to Ira Kleiman, as personal*
*representative of the Estate of David Kleiman*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 13th day of December, 2022, I electronically filed this

Motion with the Palm Beach County Clerk of Court, which will send a notice of electronic filing

to all counsel of record.

_s/ Velvel (Devin) Freedman_
VELVEL (DEVIN) FREEDMAN

# EXHIBIT 1



Direct Dial: 1.561.472.2963
Email: aburger@mcdonaldhopkins.com

July 8, 2022

**VIA E-MAIL (**slagos@rochefreedman.com**)**
Stephen Lagos, Esq.
Roche Freedman LLP
99 Park Avenue, Suite 1910
New York, NY 10016

      RE:    Request Pursuant to F.S. § 605.0410
              W&K Info Defense Research LLC
              Statutory Demand for Records

Dear Mr. Lagos:

Your client's rejection of his statutory and common law obligations is, as you would put it, "patently absurd."

No matter how you view it, Mrs. Wright now derives her interests from Craig Wright and therefore those rights can not now be denied.

So, for the purposes of this response and the requests in our earlier letter, please assume that our client is acting with the full right and authority of Craig Wright and any person or entity deriving by or through Craig Wright. As such, you should consider the request as if coming from Craig Wright or his successors or assigns.

Additionally, notwithstanding the her current rights, Mrs. Wright was a member. F.S. §605.0410(4) provides inspection rights even to disassociated members.

Finally, we do not agree with your position on the cited orders.

Please have the materials ready for inspection and copying within the week.

Sincerely,

*Alan M. Burger*

Alan M. Burger

AMB/lmt

cc:    Andres Rivero, Esq. (via e-ami) (arivero@riveromestre.com)
        Client (via e-mail)

# EXHIBIT 2

Filing # 124835690 E-Filed 04/13/2021 02:37:34 PM

**IN THE 15TH JUDICIAL CIRCUIT**
**IN AND FOR PALM BEACH COUNTY, FLORIDA**

RAMONA ANG, as Trustee of the TULIP TRUST,                   Case No. _____
Successor-in-Interest to CRAIG WRIGHT R&D,

      Plaintiff,

v.

IRA KLEIMAN, as Personal Representative of the
Estate of Dave Kleiman,

      Defendant.

_____/

**COMPLAINT AND JURY DEMAND**

     Plaintiff Ramona Ang, as trustee of the Tulip Trust, sues defendant Ira Kleiman as

personal representative of the Estate of David Kleiman (the "Estate") and states as follows:

**PARTIES**

    1.    Plaintiff Ramona Ang ("Ramona") is the sole trustee of the Tulip Trust, a trust

organized under the laws of Seychelles. The Tulip Trust is successor-in-interest to the interest of

Craig Wright R&D in W&K Info Defense Research LLC ("W&K").

    2.    Craig Wright R&D, an Australian entity identified by ABN 97481146384, was a

shareholder of W&K, a Florida limited liability company. Craig Wright R&D's interest in W&K

is now held by the Tulip Trust.

    3.    Defendant Ira Kleiman ("I. Kleiman") is a resident of Palm Beach County, Florida.

He is the brother of David Kleiman ("D. Kleiman") and personal representative of the Estate. Prior

to his death, D. Kleiman was the managing member of W&K.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant Fla. Stat. § 26.012 because the amount in controversy exceeds $30,000, exclusive of costs, interest, and attorney's fees.

5.     Venue lies within this circuit under Fla. Stat. § 47.011 because defendant I. Kleiman resides in this county and because he negligently, grossly negligently, and recklessly destroyed property belonging to W&K and its members, including the Tulip Trust, in this county.

## INTRODUCTION

6.     I. Kleiman has commenced a multi-billion-dollar lawsuit (the "Lawsuit") in federal court against Craig Wright ("Dr. Wright") for, among other things, allegedly misappropriating bitcoins D. Kleiman purported to own through W&K.

7.     Prior to D. Kleiman's death, Craig Wright R&D and D. Kleiman both held an interest in W&K. In the Lawsuit, I. Kleiman as the personal representative of the Estate of D. Kleiman (the "Estate") alleges that he stepped into D. Kleiman's shoes as the managing member of W&K. As such, he owes a fiduciary duty to its members.

8.     In the Lawsuit, I. Kleiman also alleges that W&K mined bitcoins now worth billions of dollars, some held for the benefit of Craig Wright R&D, predecessor-in-interest to the Tulip Trust.

9.     Beginning shortly after D. Kleiman's death and continuing through at least October 2018, I. Kleiman systematically destroyed documents and electronic data that would have contained the private keys and information regarding those keys needed to access any bitcoins held by W&K.

10.    As a result of that destruction, the Tulip Trust has suffered substantial damages in the form of bitcoins it can no longer access.

## FACTUAL ALLEGATIONS

**I.   General Information Relating to Bitcoin and Its Storage**

11.     Bitcoin is a form of digital cash. There are no physical bitcoins, only electronic tokens of value that can be traced on a public ledger—the blockchain.

12.     To conduct transactions with bitcoins, one must have a public address in which to receive bitcoins. Each public address consists of a unique string of numbers and letters, typically anywhere from 26 to 35 characters in length. Each public address also has a private key (similar to an incredibly complex password) associated with it. The owner needs the private key associated with the public address to spend bitcoins identified by the public address.

13.     An owner can store multiple public addresses in a bitcoin "wallet."

14.     Bitcoin public addresses, private keys and wallets are often stored on a mobile device, computer, or electronic storage device. Alternatively, they can be reduced to writing and printed in hard copy.

**II.   I. Kleiman's Knowledge of Computers, Computer Forensics and Bitcoin**

15.     I. Kleiman is a website designer with extensive computer knowledge. Specifically, he has been employed in website design and marketing for 22 years and, through his work, became familiar with how to preserve, overwrite, and restore data on electronic devices.

16.     Because of I. Kleiman's computer knowledge, he knew or should have known that writing data to an electronic storage device and reformatting a computer drive could permanently delete data.

3

**III.** **I. Kleiman Grossly Negligently and Recklessly Destroyed Data as Estate Representative**

17.     After D. Kleiman's death, I. Kleiman was appointed as the personal representative of the Estate and, as alleged in the Lawsuit, stepped into D. Kleiman's shoes as managing member of W&K.

18.     In that role, I. Kleiman went to D. Kleiman's house to begin cleaning it out. He also hired a professional cleaning crew to assist him with the process. I. Kleiman did not secure D. Kleiman's work papers or electronic devices prior to the professional cleaning.

**A.** **I. Kleiman Destroyed D. Kleiman's Paper Files**

19.     During the cleaning process, I. Kleiman discarded papers he located throughout D. Kleiman's home, including in his bedroom and office. Before discarding a document, I. Kleiman read it only briefly, discarding papers without taking any steps to determine their importance.

20.     At his April 8, 2019, and January 10, 2020, depositions in the Lawsuit, I. Kleiman admitted that he could have thrown away papers containing important information relating to W&K's bitcoin holdings and the means to access those holdings.

**B.** **I. Kleiman Destroyed D. Kleiman's Electronic Data**

21.     I. Kleiman collected over 20 electronic devices from D. Kleiman's home. Those devices included the following:

| Item No. | Device Description | Type |
|---|---|---|
| 1 | Seagate Momentus | External HDD |
| 2 | WD Scorpio Blue | External HDD |
| 3 | Seagate Momentus | External HDD |
| 4 | Hitachi Travelstar | External HDD |
| 5 | WD Scorpio Black | External HDD |
| 6 | Corsair Survivor Stealth TD Black | Thumb Drive |
| 7 | Corsair Survivor Stealth TD Gray Orange | Thumb Drive |
| 8 | Corsair Survivor Stealth TD Gray Blue | Thumb Drive |
| 9 | Corsair Survivor Stealth TD Gray Blue 2 | Thumb Drive |
| 10 | IACIS TD | Thumb Drive |

NOT A CERTIFIED COPY

| Item No. | Device Description | Type |
|---|---|---|
| 11 | Micro Vault Tiny | Thumb Drive |
| 12 | Sandisk Cruzer Micro | Thumb Drive |
| 13 | CEIC 2009 | Thumb Drive |
| 14 | Key Thumbdrive | Thumb Drive |

22.     I. Kleiman reformatted, or otherwise modified, at least 11 of the above-listed devices for his personal use. He did so despite his knowledge that reformatting a device could result in the permanent deletion of data existing on the device at the time of its reformatting.

23.     Specifically, timestamps on certain file system structures indicate that I. Kleiman reformatted two thumb drives (items 10 and 12) and two Seagate hard drives (items 1 and 3).

24.     I. Kleiman also installed new operating software on the two Seagate hard drives (items 1 and 3), based on values stored within each device's Windows registry. The installation of a new operating system requires the creation of thousands of new files, which fully or partially overwrote areas of the drive marked as available and significantly reduced the ability to recover previously deleted data.

25.     File created and last modified timestamps indicate that I. Kleiman added or modified active data on all but one of the above-listed devices.

26.     As for the remaining devices that I. Kleiman found in D. Kleiman's home, I. Kleiman threw out one hard drive and gave four or five hard drives to his brother's business partner Patrick Paige. I. Kleiman did not examine the drives before giving them away.

**C.     I. Kleiman Continued to Use D. Kleiman's Devices Despite Knowing They Likely Contained W&K's Bitcoin Holdings and then Attempted to Sell Those Devices**

27.     I. Kleiman admitted to Dr. Wright that I. Kleiman threw "away a bunch of D. Kleiman's papers and format[ed] hard drives." In response, Dr. Wright told I. Kleiman to cease

NOT A CERTIFIED COPY

use of D. Kleiman's electronic devices to preserve any data existing on the devices that had not already been altered or destroyed.

28.     Despite Dr. Wright's clear advice that he stop using D. Kleiman's devices, I. Kleiman continued to use 11 of the above-listed electronic devices for his personal use until at least October 1, 2018, as evidenced by file created timestamps on those devices.

29.     I. Kleiman never attempted to recover any of the data that he deleted. Nor did he hire an expert to attempt to recover any data. Instead, I. Kleiman sought to sell D. Kleiman's electronic devices to the highest bidder.

30.     Because I. Kleiman discarded and destroyed evidence, including the bitcoin private keys and all evidence related to them, critical information regarding W&K's bitcoins is permanently lost. As such, the Tulip Trust can no longer access any bitcoins that W&K held.

<u>CLAIMS FOR RELIEF</u>

<u>COUNT ONE – NEGLIGENCE</u>

31.     The Tulip Trust incorporates paragraphs 1 through 30 of this Complaint.

32.     I. Kleiman, in his capacity as personal representative of the Estate and self-proclaimed managing member of W&K, owed a duty of care to W&K and the Tulip Trust.

33.     Defendant I. Kleiman breached his duty to the Tulip Trust by destroying documents and data on electronic devices that he knew or should have known contained critical information related to bitcoins held by W&K, including the bitcoin private keys.

34.     As a result of that breach, the Tulip Trust has irretrievably lost access to its interest in W&K's bitcoins stored on documents and electronic devices destroyed or altered by defendant I. Kleiman, rendering the bitcoins inaccessible.

## COUNT TWO – BREACH OF FIDUCIARY DUTY

35.     The Tulip Trust incorporates paragraphs 1 through 30 of this Complaint.

36.     I. Kleiman, in his capacity as personal representative of the Estate and self-proclaimed managing member of W&K, owed fiduciary duties of care and loyalty to W&K and the Tulip Trust.

37.     Defendant I. Kleiman breached his duties to the Tulip Trust by intentionally deleting data and using D. Kleiman's electronic devices, after acknowledging that those devices contained critical information needed to access the bitcoins held by W&K, including the bitcoin private keys, and after being advised by Dr. Wright to preserve them.

38.     In the alternative, defendant I. Kleiman breached his duties to the Tulip Trust by intentionally deleting data and using D. Kleiman's electronic devices after commencing the Lawsuit in February 2018 and thereby destroying critical information needed to access the bitcoins held by W&K, including the bitcoin private keys.

39.     In so doing, defendant I. Kleiman acted with gross negligence and recklessness, as he knew that his deletion of the data on D. Kleiman's devices, and his continued use of those devices, would permanently destroy critical information related to W&K's bitcoin holdings.

40.     As a result of defendant I. Kleiman's dereliction of his duties, the Tulip Trust has irretrievably lost access to its interest in W&K's bitcoins stored on documents and electronic devices destroyed and altered by defendant, rendering the value of the Tulip Trust's interest in the bitcoins held by W&K completely worthless.

WHEREFORE, the Tulip Trust demands judgment against defendant I. Kleiman awarding damages and other relief as the Court deems just, equitable and proper.

The Tulip Trust demands a jury trial for all issues triable by right.

Dated: April 13, 2021

Respectfully Submitted,

RIVERO MESTRE LLP
Attorneys for the Tulip Trust
2525 Ponce de Leon Blvd.
Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505
E-mail: arivero@riveromestre.com
E-Mail: amcgovern@riveromestre.com

By: /s/ Andres Rivero
Andrés Rivero
Florida Bar No.: 613819
arivero@riveromestre.com
Amanda McGovern
Florida Bar No.: 964263
amcgovern@riveromestre.com

**CERTIFICATE OF SERVICE+**

I certify that on April 13, 2021, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF or by U.S. Mail.

/s/Andres Rivero
Andrés Rivero

# EXHIBIT 3

IN THE CIRCUIT COURT FOR THE
15TH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

RAMONA ANG, as Trustee of the
TULIP TRUST,

CASE NO: 50-2021-CA-004758-XXXX-MB

    Plaintiff,

      v.

IRA KLEIMAN, as Personal Representative
of the Estate of David Kleiman

    Defendant,

and

W&K INFO DEFENSE RESEARCH, LLC,
and LYNN WRIGHT,

    Nominal Defendants.

_____/

## **PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff, Ramona Ang, as trustee of Tulip Trust, sues defendant, Ira Kleiman, as personal

representative of the Estate of David Kleiman, and nominal defendants, W&K Info Defense

Research, LLC, and Lynn Wright.

## **NATURE OF THE COMPLAINT**

1.      This is an action for declaratory judgment and injunctive relief. Ira Kleiman,

acting entirely without lawful justification, has claimed and is claiming that he is the managing

member of W&K Info Defense Research, LLC ("W&K"), despite the fact the company is

owned, one-third each, by the estate of Ira Kleiman's late brother, by Lynn Wright and by the

Tulip Trust.

## PARTIES

2.      W&K Info Defense Research, LLC ("W&K") is a Florida limited liability company with its principal place of business in Palm Beach County, Florida.

3.      Ramona Ang is the trustee of the Tulip Trust, a trust organized under the laws of Seychelles. Tulip Trust is a member in W&K, possessing a one-third interest in the company.

4.      Ira Kleiman is an individual, *sui juris*, who resides in Palm Beach County, Florida. Ira Kleiman is the personal representative of the Estate of David Kleiman (the "Estate") and the self-proclaimed managing member of W&K. The Estate is a member of W&K, possessing a one-third interest in the company.

5.      Lynn Wright is an individual who resides in New South Wales, Australia. Lynn Wright is a member of W&K, possessing a one-third interest in the company.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to Fla. Stat. § 86.011 because there is a bona fide dispute as to the rights and membership interests of the parties in W&K and as to Ira Kleiman's authority to act on behalf of W&K.

7.      Venue lies within this circuit under Fla. Stat. § 47.011 because Ira Kleiman resides in this county and W&K's principal place of business is in this county.

## FACTS COMMON TO ALL COUNTS

### A.  Ownership of W&K

8.      W&K was formed on February 14, 2011. The initial members of W&K were David Kleiman, Lynn Wright, and Information Defense Pty, Ltd., an Australian proprietary limited company. A copy of the Articles of Organization is attached hereto as **Exhibit A**.

9. On or about March 2011, Information Defense Pty, Ltd. sold its assets to Cloudcroft Pty. Ltd., an Australian proprietary limited company.

10. Thereafter, Cloudcroft Pty. Ltd.'s membership interests in W&K were transferred to Craig Wright R&D, an Australian entity identified by ABN 97481146384, also doing business as Craig Wright and Craig S. Wright. Dr. Craig Wright, Lynn Wright's husband at the time, was trustee for Craig Wright R&D.

11. In November 2010, Dr. Wright and Lynn Wright separated. Their divorce was finalized on March 15, 2013. Before the divorce was finalized, Dr. Wright and Lynn Wright agreed to and partly effected a property settlement agreement in June 2011. As part of the property settlement, Dr. Wright, as then trustee of Craig Wright R&D, transferred 50% of Craig Wright R&D's transferable interest in W&K to Lynn Wright. Thus, Lynn Wright became the owner of one-half of Craig Wright R&D's initial interest in W&K, in addition to her membership interest in W&K.

12. In or about December 2012, Lynn Wright transferred 100% of her transferrable interests in W&K to Craig Wright R&D.

13. The result was, that as of January 2013, ownership in W&K broke down like this: Craig Wright R&D possessed a two-third interest and David Kleiman possessed a one-third interest.

14. David Kleiman passed away on or about April 26, 2013. Ira Kleiman is the beneficiary of the Estate and its representative.

15.     On July 6, 2017, the Tulip Trust became the successor in interest to Craig Wright R&D and all its assets, including its two-third interest in W&K.

16.     On or about July 10, 2020, the Tulip Trust transferred to Lynn Wright one-third of all the membership interest in W&K, representing, without limitation, one-third of all the voting interest in W&K and one-third of all the transferable economic interest in W&K.

17.     As a result, in July 2020, the ownership of W&K broke down like this: Tulip Trust possessed a one-third interest, Lynn Wright possessed a one-third interest, and the Estate possessed a one-third interest.

**B.  Ira Kleiman's Unauthorized Acts on Behalf of W&K**

18.     In or about 2016, W&K was administratively dissolved by the Florida Secretary of State for failing to file an annual report.

19.     On February 14, 2018, Ira Kleiman, as personal representative of the Estate, filed suit against Dr. Wright in the Southern District of Florida seeking to recover bitcoin and intellectual property allegedly once owned by W&K (the "Federal Lawsuit"). *See Kleiman v. Wright*, Case No. 9:18-cv-80176-BB, in the United States District Court, Southern District of Florida.

20.     On April 16, 2018, Dr. Wright moved to dismiss Ira Kleiman's complaint, arguing (among other things) that Ira Kleiman lacked standing to bring a suit for claims that, if they existed at all, belonged to W&K, not to him.

21.     At or about the same time, Ira Kleiman filed an LLC Reinstatement for W&K with the Florida Secretary of State, listing himself as registered agent, with the principal place of business now shown as 5104 Robino Circle, West Palm Beach, Florida, a home listed as being

owned by the Louis Kleiman Trust, and listing himself as MGRM or Manager Member. A copy of the 2018 LLC Reinstatement is attached as **Exhibit B**.

22.     Thereafter, Ira Kleiman amended the complaint in the Federal Lawsuit, adding W&K as a plaintiff and purporting to be W&K's managing member.

23.     Ira Kleiman has claimed that the Estate's interest in W&K was 50% and at other times 100%.

24.     On February 22, 2019, Ira Kleiman filed an Annual Report for W&K with the Florida Secretary of State, again listing himself as registered agent and a Manager Member. A copy of the 2019 Annual Report is attached as **Exhibit C**.

25.     On March 3, 2020, Ira Kleiman filed an Annual Report for W&K with the Florida Secretary of State, again listing himself as registered agent and a Manager Member. A copy of the 2020 Annual Report is attached as **Exhibit D**.

26.     W&K did not have the funds to litigate the Federal Lawsuit. On information and belief, to fund the Federal Lawsuit, Ira Kleiman caused W&K to enter into agreements with W&K's attorneys and litigation funding companies, whereby Ira Kleiman obligated W&K to forfeit a large percentage of any damages recovered in the Federal Lawsuit.

27.     During the pendency of the Federal Lawsuit, Ira Kleiman authorized W&K to undertake costly discovery, including agreeing to pay the costs for taking the depositions of Ramona Ang and Andrew O'Hagan in the United Kingdom but failing to do so, thereby causing final judgments for attorneys' fees and costs related to those deposition to be entered against W&K in the UK in the amount of £ 270,063.11.

28.     On December 7, 2021, final judgment in the Federal Lawsuit was entered awarding W&K $100,000,000.00 for conversion of intellectual property.

29.     Due to Ira Kleiman's unauthorized acts, Tulip Trust has been and continues to be denied its right to vote its membership interest and participate in the governance of W&K.

30.     Ramona Ang, as trustee of Tulip Trust, has retained undersigned counsel and is obligated to pay them a reasonable fee for their services.

31.     All conditions precedent to bringing this action, if any, have been performed, waived, or occurred.

## COUNT I
## DECLARATORY JUDGMENT
### (Ira Kleiman, Lynn Wright, and W&K)

Ramona Ang, as trustee of Tulip Trust, incorporates the allegations contained in paragraphs 1 through 31 as if fully set forth here.

32.     Florida's declaratory judgment act provides:

> Any person claiming to be interested or who may be in doubt about his or her rights under a deed, will, contract, or other article, memorandum, or instrument in writing or whose rights, status, or other equitable or legal relations are affected by a statute, or any regulation made under statutory authority, or by municipal ordinance, contract, deed, will, franchise, or other article, memorandum, or instrument in writing may have determined any question of construction or validity arising under such statute, regulation, municipal ordinance, contract, deed, will, franchise, or other article, memorandum, or instrument in writing, or any part thereof, and obtain a declaration of rights, status, or other equitable or legal relations thereunder.

§ 86.021, Fla. Stat.

33.     Florida's declaratory judgment act also provides:

> Any person interested as or through an executor, administrator, trustee, guardian, or other fiduciary, creditor, devisee, legatee, heir, next of kin, or cestui que trust, in the administration of a trust, a

6

guardianship, or the estate of a decedent, an infant, a mental incompetent, or insolvent may have a declaration of rights or equitable or legal relations to:

(1) Ascertain any class of creditors, devisees, legatees, heirs, next of kin, or others;

(2) Direct the executor, administrator, or trustee to refrain from doing any particular act in his or her fiduciary capacity; or

(3) Determine any question relating to the administration of the guardianship, estate, or trust, including questions of construction of wills and other writings.

§ 86.041, Fla. Stat.

34.     Tulip Trust is presently a member of W&K with a one-third membership interest in W&K, with all voting rights as such member.

35.     Lynn Wright is also presently a member of W&K with a one-third interest in W&K, with all voting rights as such member.

36.     There is an actual, justiciable, and continuing dispute and controversy between the parties regarding the membership interest of W&K, the direction of the company, its undertaking of obligations and the disposition of its assets.

37.     The parties require a judicial declaration of rights to determine the membership interests in W&K, whether such members have rights to vote the direction of the company and share the assets of W&K.

38.     Unless the Court issues such a declaration, there will continue to be uncertainty and controversy over whether Tulip Trust, Lynn Wright, and Ira Kleiman, as personal representative of the Estate, have such rights, and the Tulip Trust will continue to be denied its rights to vote its membership interest and participate in corporate governance.

39.     By issuing a declaration of rights at this time, the Court will conserve judicial resources and provide guidance to the parties, which will assist in the distribution of the judgment in the Federal Lawsuit and forestall further unauthorized acts by a sole, minority member.

WHEREFORE, Ramona Ang, as Trustee of Tulip Trust, requests a declaration of rights and membership interests of Tulip Trust, Lynn Wright, and Ira Kleiman, as personal representative of the Estate, in W&K, an award of costs pursuant to § 86.081, Fla. Stat., and all other relevant statutes, and such other relief as this court deems just and proper.

### COUNT II
### DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
### (Ira Kleiman)

Ramona Ang, as trustee of Tulip Trust, incorporates the allegations contained in paragraphs 1 through 31 as if fully set forth here.

40.     On the death of David Kleiman, Craig Wright R&D was the sole remaining member of W&K with the right to vote with respect to the transfer of membership interests in W&K.

41.     After the formation of a limited liability company, a person only becomes a member with the consent of all the members. § 605.0401(3)(c), Fla. Stat. Neither Craig Wright R&D nor Tulip Trust ever gave consent to admit Ira Kleiman as a member of W&K.

42.     Section 605.0504 of the Florida Revised LLC Act governs the "Power of legal representative," stating:

> If a member who is an individual dies . . . the member's legal representative may exercise all of the member's rights for the purpose of settling the member's estate or administering the member's property, including any power the member had to give a transferee the right to become a member.

§ 605.0504, Fla. Stat. However, a legal representative does not automatically become a member of an LLC. Instead, the Estate (and ultimately the heirs) is a transferee by operation of law which only obtains a transferable interest. *See* § 605.0102(65)-(67), Fla. Stat.

43. A "transferable interest" means the right to receive distributions from a limited liability company. § 605.0102(66), Fla. Stat.

44. Section 605.0502 governs the transfer of a transferable interest:

> (1) Subject to s. 605.0503, a transfer, in whole or in part, of a transferable interest:
> ***
> (c) Does not entitle the transferee to:
>
> 1. Participate in the management or conduct of the company's activities and affairs; or
>
> 2. Except as otherwise provided in subsection (3), have access to records or other information concerning the company's activities and affairs.
>
> (2) A transferee has the right to receive, in accordance with the transfer, distributions to which the transferor would otherwise be entitled.

Therefore, Ira Kleiman did not obtain the voting rights of David Kleiman, the deceased member, and is not entitled to participate in the management and conduct of W&K, but only has the rights under § 605.0504 to settle the Estate and to receive distributions as a beneficiary of the Estate.

45. Ira Kleiman, however, has contended, continues to contend, and has acted as if he has the authority to act as a member of W&K by holding himself out to the State of Florida as a managing member of W&K, by listing himself as the registered agent and as MGRM on filings with the State of Florida, all of which he lacked authority to do.

46.     Ira Kleiman contends that he has the authority to act as a member of W&K by his act of filing the Federal Lawsuit, naming W&K as one of the plaintiffs, entering into agreements with W&K's attorneys and litigation funders, and authorizing W&K to undertake costly litigation, which he had no authority to do.

47.     Section 605.0301 of the Florida Statutes, provides:

> A person does not have the power to bind a limited liability company, except to the extent the person:
>
> (1) Is an agent of the company by virtue of s. 605.04074;
> (2) Has the authority to do so under the articles of organization or operating agreement of the company;
> (3) Has the authority to do so by a statement of authority filed under s. 605.0302; or
> (4) Has the status of an agent of the company or the authority or power to bind the company under a law other than this chapter.

Ira Kleiman fits none of these categories and, therefore, has never had the authority to act on behalf of W&K.

48.     Until W&K is dissolved and wound down, the Estate, and ultimately the heirs, are only entitled to the right to receive distributions to which David Kleiman would otherwise be entitled. "A person has a right to a distribution before the dissolution and winding up of a limited liability company only if the company decides to make an interim distribution. A person's dissociation does not entitle the person to a distribution." § 605.0404(2) Fla. Stat.

49.     Ira Kleiman has acted and continues to act completely outside his authority on behalf of W&K.

50.     An actual, justiciable, and continuing dispute and controversy therefore exists between Ramona Ang, as trustee of the Tulip Trust, on the one hand, and Ira Kleiman, on the other hand, concerning Ira Kleiman's ability to act as a member of W&K in the manner in which

he is presently acting and to which he has been acting, to appoint himself as manager of W&K, and all other actions he has taken on behalf of W&K.

51.     The parties require a judicial declaration that Ira Kleiman did not and presently does not have authority to act on behalf of W&K, that he is not a member of W&K with the right to vote, that he is not the managing member of W&K, that he is not the registered agent of W&K, and that he does not have authority to hold himself out as such.

52.     Unless the Court issues such a declaration, there will continue to be uncertainty and controversy over Ira Kleiman's ability to act as a member of W&K, and Tulip Trust will continue to be denied its right to vote its membership interest and participate in corporate governance of W&K.

53.     By issuing a declaration of rights at this time, the Court will conserve judicial resources and provide guidance to the parties.

54.     Pursuant to § 86.041(3), Fla. Stat., Ramona Ang, as trustee of the Tulip Trust, seeks an order directing Ira Kleiman immediately to cease any and all of these unauthorized activities and enjoining Ira Kleiman from further acting on behalf of W&K in any manner.

WHEREFORE, Ramona Ang, as trustee of the Tulip Trust, requests this Court enter a declaratory judgment that: (1) Ira Kleiman did not and presently does not have authority to act on behalf of W&K, that he is not a member of W&K with the right to vote, that he is not the managing member of W&K, that he is not the registered agent of W&K, and that he does not have authority to hold himself out as such; (2) order and direct Ira Kleiman forthwith and forever to cease and desist from any further action on behalf of W&K; (3) for such supplemental relief pursuant to § 86.061, Fla, Stat., as may be appropriate, including attorneys' fees and other

damages under § 605.0205. Fla. Stat.; (5) an award of costs pursuant to § 86.081, Fla. Stat.; and

(6) for such other and further relief as this Court deems just and proper.

Respectfully submitted,

RIVERO MESTRE LLP
*Attorneys for Plaintiffs*
2525 Ponce de Leon Blvd. Suite 1000
Miami, Florida 33134
Tel.: (305) 445-2500
Fax: (305) 445-2505

By: /s/ Amanda L. Fernandez
   Amanda L. Fernandez
   Florida Bar No. 106931
   afernandez@riveromestre.com
   Andrés Rivero
   Florida Bar No.: 613819
   arivero@riveromestre.com
   Robert J. Kuntz, Jr.
   Florida Bar No. 94668
   rkuntz@riveromestre.com

## CERTIFICATE OF SERVICE

I certify that on March 4, 2022, a copy of this motion was served via e-mail, pursuant to

Florida Rule of Judicial Administration 2.516(b)(1), on all counsel of record.

By: /s/ Amanda L. Fernandez
   AMANDA L. FERNANDEZ
   *Attorney for Plaintiffs*
   Florida Bar No.: 106931

# EXHIBIT A

# Electronic Articles of Organization
## For
# Florida Limited Liability Company

L11000019904
FILED 8:00 AM
February 16, 2011
Sec. Of State
tcline

## Article I

The name of the Limited Liability Company is:

W&K INFO DEFENSE RESEARCH LLC

## Article II

The street address of the principal office of the Limited Liability Company is:

3119 CONTEGO LANE
PALM BEACH GARDENS, FL. US 33418

The mailing address of the Limited Liability Company is:

4371 NORTHLAKE BLVD #314
PALM BEACH GARDENS, FL. US 33410

## Article III

The purpose for which this Limited Liability Company is organized is:

ANY AND ALL LAWFUL BUSINESS.

## Article IV

The name and Florida street address of the registered agent is:

DAVID A KLEIMAN
3119 CONTEGO LANE
PALM BEACH GARDENS, FL. 33410

Having been named as registered agent and to accept service of process for the above stated limited liability company at the place designated in this certificate, I hereby accept the appointment as registered agent and agree to act in this capacity. I further agree to comply with the provisions of all statutes relating to the proper and complete performance of my duties, and I am familiar with and accept the obligations of my position as registered agent.

Registered Agent Signature: DAVE KLEIMAN

## Article V

The name and address of managing members/managers are:

Title: MGRM
DAVID A KLEIMAN
4371 NORTHLAKE BLVD #314
PALM BEACH GARDENS, FL. 33410 US

L11000019904
FILED 8:00 AM
February 16, 2011
Sec. Of State
tcline

## Article VI

The effective date for this Limited Liability Company shall be:

02/14/2011

Signature of member or an authorized representative of a member

Electronic Signature: DAVE KLEIMAN

I am the member or authorized representative submitting these Articles of Organization and affirm that the facts stated herein are true. I am aware that false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155, F.S. I understand the requirement to file an annual report between January 1st and May 1st in the calendar year following formation of the LLC and every year thereafter to maintain "active" status.

# EXHIBIT B

## <u>2018 FLORIDA LIMITED LIABILITY COMPANY REINSTATEMENT</u>

DOCUMENT# L11000019904

**Entity Name:** W&K INFO DEFENSE RESEARCH LLC

**FILED**
**Apr 12, 2018**
**Secretary of State**
**CR3065128037**

**Current Principal Place of Business:**

5104 ROBINO CIRCLE
WEST PALM BEACH, FL 33417

**Current Mailing Address:**

5104 ROBINO CIRCLE
WEST PALM BEACH, FL 33417 US

**FEI Number: NOT APPLICABLE**                    **Certificate of Status Desired:** Yes

**Name and Address of Current Registered Agent:**

KLEIMAN, IRA
5104 ROBINO CIRCLE
WEST PALM BEACH, FL 33417 US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE:  IRA KLEIMAN                                                      04/12/2018

         Electronic Signature of Registered Agent                                       Date

**Authorized Person(s) Detail :**

| | |
|---|---|
| Title | MGRM |
| Name | KLEIMAN, IRA |
| Address | 5104 ROBINO CIRCLE |
| City-State-Zip: | WEST PALM BEACH FL 33417 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: IRA KLEIMAN                        MGRM                04/12/2018

   Electronic Signature of Signing Authorized Person(s) Detail                                Date

**EXHIBIT C**

## 2019 FLORIDA LIMITED LIABILITY COMPANY ANNUAL REPORT

DOCUMENT# L11000019904

**Entity Name:** W&K INFO DEFENSE RESEARCH LLC

**FILED**
**Feb 22, 2019**
**Secretary of State**
**1374505525CC**

**Current Principal Place of Business:**

5104 ROBINO CIRCLE
WEST PALM BEACH, FL 33417

**Current Mailing Address:**

5104 ROBINO CIRCLE
WEST PALM BEACH, FL 33417 US

**FEI Number: NOT APPLICABLE**                    **Certificate of Status Desired:** Yes

**Name and Address of Current Registered Agent:**

KLEIMAN, IRA
5104 ROBINO CIRCLE
WEST PALM BEACH, FL 33417 US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE:   IRA KLEIMAN                                                      02/22/2019

              Electronic Signature of Registered Agent                                        Date

**Authorized Person(s) Detail :**

Title            MGRM

Name           KLEIMAN, IRA

Address        5104 ROBINO CIRCLE

City-State-Zip:   WEST PALM BEACH FL 33417

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: IRA KLEIMAN                          MGRM                02/22/2019

    Electronic Signature of Signing Authorized Person(s) Detail                              Date

**EXHIBIT D**

## 2020 FLORIDA LIMITED LIABILITY COMPANY ANNUAL REPORT

DOCUMENT# L11000019904

**Entity Name:** W&K INFO DEFENSE RESEARCH LLC

**Current Principal  Place of Business:**

5104 ROBINO CIRCLE
WEST PALM BEACH,  FL  33417

**Current Mailing Address:**

5104 ROBINO CIRCLE
WEST PALM BEACH,  FL  33417  US

**FEI Number: NOT APPLICABLE**                    **Certificate of Status Desired:** No

**Name and Address of Current Registered Agent:**

KLEIMAN, IRA
5104 ROBINO CIRCLE
WEST PALM BEACH, FL  33417  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE:   IRA KLEIMAN                                                     03/03/2020

              Electronic Signature of Registered Agent                                    Date

**Authorized Person(s) Detail :**

| | |
|---|---|
| Title | MGRM |
| Name | KLEIMAN, IRA |
| Address | 5104 ROBINO CIRCLE |
| City-State-Zip: | WEST PALM BEACH FL  33417 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: IRA KLEIMAN                              MGRM                    03/03/2020

    Electronic Signature of Signing Authorized Person(s) Detail                          Date

# EXHIBIT 4

IN THE CIRCUIT COURT FOR THE
15TH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

TULIP TRUST, derivatively as a member of
and on behalf of W&K INFO DEFENSE
RESEARCH LLC,

      Plaintiff,

      v.

IRA KLEIMAN

      Defendant,

and

W&K INFO DEFENSE RESEARCH, LLC,

      Nominal Defendant.

      CASE NO:

_____/

## VERIFIED COMPLAINT

Plaintiff, Tulip Trust, derivatively as a member of and on behalf of W&K Info Defense

Research LLC, and pursuant to Fla. Stat. § 605.0802 sues defendant, Ira Kleiman, and nominal

defendant, W&K Info Defense Research, LLC, and states as follows:

### NATURE OF THE COMPLAINT

1.     This is a derivative action for breach of fiduciary duty. Ira Kleiman, acting

entirely without lawful justification, has claimed and is claiming that he is the sole and managing

member of W&K Info Defense Research, LLC ("W&K"). Acting on his unlawful claim as

managing member of W&K, Ira Kleiman has obligated the company to enormous debt, disposed

of valuable assets, and breached his fiduciary duty W&K. Plaintiff seeks to recover damages

caused by his breach of fiduciary duty.

## PARTIES

2.  W&K Info Defense Research, LLC ("W&K") is a Florida limited liability company with its principal place of business in Palm Beach County, Florida.

3.  Tulip Trust is a trust organized under the laws of Seychelles. Tulip Trust is a member in W&K. Ramona Ang, who verifies this Complaint, is the Trustee of the Tulip Trust.

4.  Ira Kleiman is an individual, *sui juris*, who resides in Palm Beach County, Florida. Ira Kleiman is the self-proclaimed managing member of W&K.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over this action pursuant to Fla. Stat. § 26.012 because the amount in controversy exceeds $30,000, exclusive of costs, interest, and attorneys' fees.

6.  Venue lies within this circuit under Fla. Stat. § 47.011 because Ira Kleiman resides in this county, W&K's principal place of business is in this county, Ira Kleiman's wrongful conduct took place in this county and, accordingly, the causes of action here accrued in this county.

## FACTS COMMON TO ALL COUNTS

7.  In or about 2016, W&K was administratively dissolved by the Florida Secretary of State for failing to file an annual report.

8.  On February 14, 2018, Ira Kleiman, as personal representative of the Estate of David Kleiman, filed suit against Dr. Craig Wright in the Southern District of Florida seeking to recover bitcoin and intellectual property allegedly once owned by W&K (the "Federal Lawsuit"). *See Kleiman v. Wright*, Case No. 9:18-cv-80176-BB, in the United States District Court, Southern District of Florida.

2

9. On April 16, 2018, Dr. Wright moved to dismiss Ira Kleiman's complaint, arguing (among other things) that Ira Kleiman lacked standing to bring a suit for claims that, if they existed at all, belonged to W&K, not to him.

10. At or about the same time, Ira Kleiman filed an LLC Reinstatement for W&K with the Florida Secretary of State, listing himself as registered agent and as MGRM or Manager Member.

11. Thereafter, Ira Kleiman amended the complaint in the Federal Lawsuit, adding W&K as a plaintiff and purporting to be W&K's managing member.

12. W&K did not have the funds to litigate the Federal Lawsuit. To fund the Federal Lawsuit, Ira Kleiman caused W&K to enter into agreements with W&K's attorneys and litigation funding companies, whereby Ira Kleiman obligated W&K to forfeit a large percentage of any damages recovered in the Federal Lawsuit.

13. During the pendency of the Federal Lawsuit, Ira Kleiman authorized W&K to undertake costly discovery, including agreeing to pay the costs for taking the depositions of Ramona Ang and Andrew O'Hagan in the United Kingdom but failing to do so, thereby causing final judgments for attorneys' fees and costs related to those depositions to be entered against W&K in the UK in the amount of £ 270,063.11.

14. On December 7, 2021, final judgment in the Federal Lawsuit was entered awarding W&K $100,000,000.00 for conversion of intellectual property, plus prejudgment interest.

15. Plaintiff has retained undersigned counsel and is obligated to compensate them for their services.

NOT A CERTIFIED COPY

16.     Irreparable injury would result if a demand were made upon Ira Kleiman as managing member of W&K to take action regarding the claims brought here, as any delay in bringing such claims may cause further injury.

17.     In accord with Fla. Stat. § 605.0802(2), such a demand would be futile. As Ira Kleiman purports to be the sole managing member of W&K, he does not acknowledge any other membership interest, and the wrongful acts described here were acts of Ira Kleiman. As such, making a demand to redress the wrongs would in effect require Ira Kleiman to institute suit against himself.

18.     All conditions precedent to bringing this action, if any, have been performed, waived, or occurred.

## COUNT I
## BREACH OF FIDUCIARY DUTY

Plaintiff incorporates the allegations contained in Paragraphs 1 through 18 as if fully set forth here.

19.     Ira Kleiman, as the self-proclaimed managing member of W&K, owed fiduciary duties of care and loyalty to W&K.

20.     Ira Kleiman breached his duties to W&K by having W&K commence a lawsuit which it did not have the resources to prosecute and, as a result, entering, without legal authority, on W&K's behalf, into agreements with W&K's attorneys and litigation funders to give away a large percentage of the final judgment obtained in the Federal Lawsuit.

21.     In addition, Ira Kleiman breached his duties by authorizing W&K to conduct costly discovery, without having the legal authority to do so, and agreeing to pay for two foreign non-party witnesses to produce documents and be deposed (even though he knew W&K did not

even have a bank account) resulting in UK courts entering two judgments against W&K for £270,063.11.

22.     Lacking good faith, Ira Kleiman exhibited a conscious, grossly negligent, and/or reckless disregard for the best interests of W&K in relation to the facts and circumstances set forth here.

23.     As a direct and proximate result of Ira Kleiman's breach of his fiduciary duty to W&K, W&K has sustained damages.

WHEREFORE, Plaintiff demands the entry of a judgment against Ira Kleiman for compensatory damages and/or restitution, interest, attorneys fees (*see* Fla. Stat. § 605.0805), costs, and for such other relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury trial on all issues and claims so triable.

NOT A CERTIFIED COPY

## <u>VERIFICATION</u>

Under penalties of perjury, I declare that I have read the foregoing, and the facts alleged

therein are true and correct to the best of my knowledge.


_____
Ramona Ang, as Trustee of Tulip Trust


Respectfully submitted,

RIVERO MESTRE LLP
*Attorneys for Plaintiffs*
2525 Ponce de Leon Blvd. Suite 1000
Miami, Florida 33134
Tel.: (305) 445-2500
Fax: (305) 445-2505

By: /s/ Robert J. Kuntz, Jr.
    Andrés Rivero
    Florida Bar No.: 613819
    arivero@riveromestre.com
    Robert J. Kuntz, Jr.
    Florida Bar No. 94668
    rkuntz@riveromestre.com
    Amanda L. Fernandez
    Florida Bar No. 106931
    afernandez@riveromestre.com

NOT A CERTIFIED COPY

6

**VERIFICATION**

Under penalties of perjury, I declare that I have read the foregoing, and the facts alleged

therein are true and correct to the best of my knowledge.

Ramona Ang, as Trustee of Tulip Trust

Respectfully submitted,

RIVERO MESTRE LLP
*Attorneys for Plaintiffs*
2525 Ponce de Leon Blvd. Suite 1000
Miami, Florida 33134
Tel.: (305) 445-2500
Fax: (305) 445-2505

By: /s/_____
    Andrés Rivero
    Florida Bar No.: 613819
    arivero@riveromestre.com
    Robert J. Kuntz, Jr.
    Florida Bar No. 94668
    rkuntz@riveromestre.com
    Amanda L. Fernandez
    Florida Bar No. 106931
    afernandez@riveromestre.com

NOT A CERTIFIED COPY

6

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND FOR PALM BEACH COUNTY, FLORIDA

PROBATE DIVISION: IA
CASE NO.: 50-2013-CP-005060-XXXX-NB

DAVID ALAN KLEIMAN,
     Decedent.

_____/

### ORDER ON PENDING MOTIONS

    **THIS CAUSE** came before the Court on the motions listed below.  The Court has considered the submissions and is otherwise advised of the premises.

    1.     **Motion to lift stay (D.E. # 74)**:

    Lynn Wright has moved the Court to lift the stay set in the Court's December 14, 2020 Order (D.E. #74), citing the jury verdict in the federal case, *Ira Kleiman et al. v. Craig Wright*, No. 9:18-cv-80176-BB (S.D. Fla.).  That case, however, has not been fully and finally resolved, as it is currently on appeal, *Ira Kleiman v. Craig Wright*, No. 22-11150 (11th Cir.).  The motion is therefore denied, and the stay shall remain in effect.

    2.     **Motion for Order to proceed with execution (D.E. # 81)**:

    Ramona Watts, a/k/a Ramona Ang, has filed a motion to proceed with execution against the estate on a judgment awarded to her by a United Kingdom court, which has been recorded in Palm Beach County, Florida.  The Clerk of the Circuit Court and Recorder has issued its certificate of no objection to the foreign judgment pursuant to section 55.604(4), Florida Statutes.  Because no objection was filed , it is now a Florida judgment that is not subject to collateral attack before this Court; it may only be attacked in the issuing Court in the United Kingdom.  *Tettamanti v. Opcion Sociedad Anonima*, 67 So. 3d 356 (Fla. 3d DCA 2011).

FILED: PALM BEACH COUNTY, FL, JOSEPH ABRUZZO, CLERK, 01/09/2023 03:48:33 PM

Unique Code : CAA-FBH-BCAJJ-CABJIAFF-FHEHJJ-F Page 1 of 5

EXHIBIT B7

This claim arose after the death of the decedent, David Kleiman, and so it is not subject to the limitations periods contained in section 733.702, Florida Statutes.  Ms. Watts/Ang may file a claim in these proceedings in accordance with section 733.703, and she may do so while the stay of these proceedings is in effect, but only for that purpose.  Consideration of the claim is otherwise stayed.  Ms. Watts/Ang's motion to proceed with execution under section 733.706 is **DENIED**.  Because of the current stay of these proceedings, and because of the potential for claims of setoff by the estate against Ms. Watts/Ang or a challenge to the judgment before the foreign court, permitting execution on the judgment would be premature and imprudent.

3.        **Motions to disqualify Kyle Roche and Roche Freedman LLP  (D.E. # 87, 94):**

Ms. Watts/Ang and Ms. Wright have moved the Court to disqualify Kyle Roche and the law firm of Roche Freedman LLP (now known as Freedman Normand Friedland LLP) ("the Firm") from representing Ira Kleiman as personal representative of the estate of David Kleiman.

> "Disqualification of a party's chosen counsel is an extraordinary remedy and should only be resorted to sparingly."  *Singer Island, Ltd. v. Budget Constr. Co.*, 714 So. 2d 651, 652 (Fla. 4th DCA 1998); *Vick v. Bailey*, 777 So. 2d 1005, 1007 (Fla. 2d DCA 2000).  Motions for disqualification are generally viewed with skepticism because disqualification of counsel impinges on a party's right to employ a lawyer of choice, and such motions are often interposed for tactical purposes. *See Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791-92 (2d Cir. 1983); *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir. 1988) (observing that "the ability to deny one's opponent the services of capable counsel, is a potent weapon").  Confronted with a motion to disqualify, a court must be sensitive to the competing interests of requiring an attorney's professional conduct and preserving client confidences and, on the other hand, permitting a party to hire the counsel of choice.

*Manning v. Cooper*, 981 So. 2d 668, 670 (Fla. 4th DCA 2008) (quoting *Alexander v. Tandem Staffing Solutions, Inc.*, 881 So. 2d 607, 608-09 (Fla. 4th DCA 2004).  "The trial court's discretion is governed by the controlling legal principles, but the appellate court will not substitute its judgment for the trial court's express or implied findings of fact which are supported by competent substantial evidence. . . ."  *Id*. at 670-71 (citation omitted).

2

The Court notes that Ms. Watts/Ang and Ms. Wright's motions contain essentially the same allegations and accusations – often verbatim – as those made in attempting such disqualification in the federal appeal, which the 11th Circuit ultimately denied. *Ira Kleiman v. Craig Wright*, No. 22-11150 (11th Cir.), Federal Appeal D.E. # 40 (motion), # 57 (December 29, 2022 order denying motion). The Court has carefully reviewed the docket entries in this action. Velvel (Devin) Freedman filed at entry of appearance when he was affiliated with Boies Schiller Flexner LLP's Miami office. (D.E. # 46.) He then submitted filings while affiliated with Roche Cyrulnik Freedman LLP, a Miami firm. (D.E. # 53, 60.) A later filing (D.E. # 66) shows that Andrew S. Brenner of Boies Schiller Flexner LLP's Miami office is co-counsel for the estate. Stephen Lagos of Roche Cyrulnik Freedman LLP's New York office filed a motion for admission pro hac vice (D.E. # 70), which was granted (D.E. # 72).

The Court has found no evidence of Kyle Roche's participation as counsel in these proceedings, and so there is no basis for disqualifying him. Additionally, the Court also has reviewed the motions and concludes that they fail to demonstrate any "competent substantial evidence" providing a basis for disqualification of Freedman Normand Friedland LLP, thereby depriving Ira Kleiman and the estate of their right to choice of counsel. *Manning*, 981 So. 2d at 670-71. The content of the motions, at best, make allegations of purported misconduct by Mr. Roche (who is not counsel of record in this case) relating to cases entirely unrelated to this one, and without any showing of how that misconduct constitutes a conflict of interest that implicates the interests of Ms. Watts/Ang and Ms. Wright. The motions indeed invite the Court's "skepticism." *Id*. at 670.

Accordingly, the motions to disqualify Kyle Roche and the law firm of Roche Freedman LLP (now known as Freedman Normand Friedland LLP) are **DENIED**.

**DONE and ORDERED** in Palm Beach County, Florida.

502013CP005060XXXXNB    01/09/2023
Laura Johnson    Circuit Judge

502013CP005060XXXXNB    01/09/2023
Laura Johnson
Circuit Judge

Unique Code : CAA-FBH-BCAJJ-CABJIIAFF-FHEHJJ-F Page 4 of 5

| Name | Address | Email |
|---|---|---|
| ADELE SMALL HARRIS | 2875 PGA BLVD STE. 100 PALM BEACH GARDENS, FL 33410 | EFILLING@KARPLAW.COM, efiling@karplaw.com, aharris@karplaw.com, gbrown@karplaw.com |
| ALAN M. BURGER | 501 SOUTH FLAGLER DRIVE SUITE 200 WEST PALM BEACH, FL 33401 | aburger@mcdonaldhopkins.com, ltimoteo@mcdonaldhopkins.com, wpbpleadings@mcdonaldhopkins.com |
| AMANDA LARA FERNANDEZ | n/a | afernandez@riveromestre.com |
| ANDRES RIVERO | n/a | arivero@riveromestre.com, sgonzalez@riveromestre.com, receptionist@riveromestre.com |
| ANDREW D. HODES | n/a | adh@lubellrosen.com |
| ANDREW S BRENNER | n/a | abrenner@bsfllp.com, PMUSA@bsfllp.com |
| BRUCE A. ZIMET | n/a | baz@bruceazimetlaw.com, jcc2878@yahoo.com |
| CHELSEA L. FURMAN | 501 SOUTH FLAGLER DRIVE SUITE 200 WEST PALM BEACH, FL 33401 | CFURMAN@MCDONALDHOPKINS.COM, jlesson@mcdonaldhopkins.com |

| Name | Address | Email |
|------|---------|-------|
| DEVIN VEVEL FREEDMAN | 200 SOUTH BISCAYNE BLVD SUITE 5500 MIAMI, FL 33131 | VEL@ROCHEFREEDMAN.COM, vel@fnf.law, nbermond@fnf.law, ecf_notifications@rochefreedman.com |
| EVELYN I. SUERO | 1001 BRICKELL BAY DRIVE SUITE 2700 MIAMI, FL 33131 | ESUERO@SUEROLAWPLLC.COM |
| JOSEPH S. KARP | n/a | klf@karplaw.com |
| JOSEPH STUART KARP | 2875 PGA BLVD #100 PALM BEACH GDNS, FL 33410 | E-FILING@KARPLAW.COM, klf@karplaw.com |
| KRISTEN M. LYNCH | 200 S ANDREWS AVE STE. 900 FT LAUDERDALE, FL 33301 | KML@LUBELLROSEN.COM, anny@lubellrosen.com, klynch@fowler-white.com |
| RAMONA WATTS | 2525 PONCE DE LEON BLVD STE. 1000 CORAL GABLES, FL 33134 | sgonzalez@riveromestre.com |
| STEPHEN LAGOS | 99 PARK AVE SUITE 1010 NEW YORK, NY 10016 | |