**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC

      plaintiffs,

v.                                     **Case No. 9:18-cv-80176 (BB/BR)**

CRAIG WRIGHT.

_____/

## CRAIG WRIGHT'S OPPOSITION TO EXPEDITED MOTION FOR SANCTIONS AND ORDER TO SHOW CAUSE WHY HE SHOULD NOT BE HELD IN CONTEMPT

Craig Wright submits this memorandum of law in opposition to the motion for sanctions

and for an order to show cause why he should not be held in contempt, filed by Freedman

Normand and Freidland LLP f/k/a Roche Freedman ("Roche Freedman") and Boies Schiller

Flexner LLP ("Boies Schiller") (together, the "law firms"), purportedly on behalf of W&K Info

Defense Research LLC ("W&K") [DE 963.]

### PRELIMINARY STATEMENT

Purporting to act on behalf of W&K, the law firms ask this Court to impose against Dr.

Wright extraordinarily severe sanctions for his alleged failure to complete Form 1.977

adequately. They seek a civil *and* criminal contempt order, per diem sanctions of $250,000, and

"if those sanctions fail to secure Wright's compliance," a warrant for Dr. Wright's arrest. All this

not because Dr. Wright refused to complete the form, but because he didn't complete it in the

way the law firms think he ought to have. They also seek a temporary restraining order

prohibiting the transfer of all assets "directly or indirectly" owned by Dr. Wright or held

"directly or indirectly" for his benefit, and an asset freeze of third-party, international bank

1

accounts as to which Dr. Wright has *no* claim or interest. An order of contempt is not necessary here, and there is no legal basis for imposing the other draconian, impermissible sanctions that the law firms seek.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On January 6, 2023, 13 months after the award of the judgment to W&K, Roche Freedman filed a motion to compel Dr. Wright to complete Form 1.977, the fact information sheet Florida state law establishes for a judgment debtor to complete upon court order. [DE 903.] Dr. Wright opposed the motion predominantly on the ground that Roche Freedman, having been discharged as counsel by the majority members of W&K and replaced by Paul C. Huck, Jr.,[1] was without authority to act for the company. [DE 915.]

On February 10, 2023, the law firms moved to strike Mr. Huck's appearance on behalf of W&K [DE 931], which W&K's majority members opposed. [DE 935, 937]. On March 1, 2023, with the motion to strike still pending and the question of W&K's ownership still unresolved, Magistrate Reinhart granted the motion to compel. [DE 939.] Soon thereafter he denied the motion to strike Mr. Huck's appearance, stating that questions of ownership of the company and the authority to direct lawyers on its behalf must be resolved in Florida courts. [DE 950.]

Dr. Wright appealed the order granting the motion to compel as premature [DE 946], given that no court had answered the predicate question as to who owns W&K and which counsel properly represents it—questions still unanswered. Dr. Wright contended, reasonably enough, that—in keeping with Judge Reinhart's ruling—a state court needed to decide who owns W&K before this Court could decide who has the right to seek relief on its behalf. On March 8,

---

[1] The majority members of W&K are Ramona Ang, as trustee of the Tulip Trust, and Lynn Wright.

2023, the Court denied Dr. Wright's appeal and ordered him to complete Form 1.977 by April 3, 2023. [DE 953.]

On April 3, 2023, Dr. Wright completed Form 1.977 and provided the form to the majority members of W&K (i.e., Ramona Ang, as trustee of the Tulip Trust, and Lynn Wright). That same day, Dr. Wright filed a notice of compliance with the Court's March 8, 2023, order. [DE 954.] On April 4, 2023, Magistrate Reinhart ordered Dr. Wright to provide the completed Form 1.977 both to the law firms and to Mr. Huck, all of whom had appeared as counsel for W&K. [DE 956.] Dr. Wright immediately complied.[2] This motion followed.

## ARGUMENT

### A. An Order of Civil Contempt is Not Necessary

Contempt is available as a sanction for discovery violations where there is a "failure to comply with a court order." F.R.C.P. 37(b)(2)(A)(vii). To establish civil contempt, the movant must show, by clear and convincing evidence, that "(1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." *Organizacion Miss America Latina v. Urquidi*, 2018 WL 4778452, at *1 (S.D. Fla. Aug. 27, 2018). A party's inability to comply with the order in question is a complete defense to civil contempt. *F.T.C. v. Leshin*, 719 F.3d 1227, 1234 (11th Cir. 2013) (when contempt is designed to coerce defendant to comply with a court order, inability to comply is complete defense); *Horne v. Potter*, 2009 WL 10666888, at *5 n.4 (S.D. Fla. Mar. 13, 2009) (denying motion for sanctions where defendant showed he was unable to comply with discovery order).

---

[2] Dr. Wright was not required to file with the Court the completed Form 1.977. Rather, in accordance with Court rules and the April 3, 2023 Order of Magistrate Reinhart, Dr. Wright provided the form to the law firms purporting to represent W&K.

With respect to much of the information requested by Form 1.977, and the alleged deficiencies cataloged in the contempt motion, Dr. Wright does not have the information the law firms say they seek, it doesn't relate to asset *he* owns, he does not have access to it and is unable to collect it. Even if he could obtain the data, it is doubtful he could disclose it under British law, with which Dr. Wright is required to comply as a resident of the United Kingdom. Specifically, British law recognizes a "duty of confidence" that prohibits Dr. Wright from disclosing the private financial information of third parties, like his wife, ex-wife and adult children. English Courts have held that documents cannot be disclosed to a U.S. Court where doing so would breach the duty of confidence. *See X AG et al. v A Bank* [1983] 2 All ER 464. Because Dr. Wright is likely prohibited by foreign law from disclosing the information, he cannot be held in contempt for his failure to do so. *Madanes v. Madanes,* 186 F.R.D. 279, 287 (S.D.N.Y.1999) ("The general nature of the plaintiff's discovery requests cuts against overriding a claim of privilege based on foreign law.").

With respect to the additional information requested on the form that Dr. Wright *is* able to provide, the Court can simply order him to provide that information now, without a finding of contempt. Again, he filled out the form when ordered to do so. He should be given the opportunity to supplement the information before being held in contempt. *Newman v. Graddick*, 740 F.2d 1513, 1524–25 (11th Cir. 1984) (district court erred in issuing civil contempt order without hearing from defendant on efforts to comply); *see also S.E.C. v. Solow*, 682 F. Supp. 2d 1312, 1325 (S.D. Fla.) ("Conduct that evinces substantial, but not complete, compliance with the court order may be excused if it was made as part of a good faith effort at compliance."), *aff'd,* 396 F. App'x 635 (11th Cir. 2010); *In re Shore*, 193 B.R. 598, 603 (S.D. Fla. 1996) ("Civil

contempt is a conditional sanction and the person in contempt is afforded the opportunity to bring himself into compliance.")

Nor should Dr. Wright be held in contempt on the basis of the law firms' bald, unsupported accusation that he provided false information on Form 1.977. Most of the "evidence" the law firms submit for this allegation are postings made by Dr. Wright on Slack and Twitter in which he boasts about how much money he has. It should go without saying that what people represent on social media isn't proof of anything. Indeed, it is a trope common beyond the need to elucidate that people often overstate their wealth, especially in conversation and social media.

The other "evidence" relied upon by the law firms consists of two witness statements filed by Dr. Wright in an English court in which Dr. Wright stated that he was the "beneficial owner" of Tulip Trading Ltd. ("TTL"), which purports to own bitcoin valued at approximately $2.5 billion. (DE 963 at 4-5, Exs. 4 & 5.) In the first place, the question of ownership and control of TTL is the very question at issue in the High Court of Justice in England under claim number (BL-2021-000313)—a litigation that has been highly publicized. Unless and until an English court determines the issue of ownership, the assets are not available to satisfy the W&K judgment and, consequently, Dr. Wright was not required to list them on Form 1.977.

In the second place, under English law, "beneficial ownership" does not necessarily connote equitable ownership, especially in the context of assets owned by a trust. Again, unless and until the High Court of Justice in England rules under claim number (BL-2021-000313) as to whether TTL is in fact the owner of the bitcoin that is the subject of the dispute, Dr. Wright's entitlement to claim any interest in them at all (beneficial or otherwise under a trust) remains undetermined.  It is Dr. Wright's own assets, or those he has the right to demand or obtain from

others, that he must disclose on Form 1.977. Dr. Wright's use of the term "beneficial ownership"

in the English proceedings therefore cannot be taken as an admission that he owns assets he did

not identify on Form 1.977.

### B.  An Order of Criminal Contempt Is Improper

The law firms also argue that Dr. Wright should be held in *criminal* contempt in this *civil*

proceeding for his discovery failings. This Court cannot, however, hold Dr. Wright in criminal

contempt based on a mere request. Rule 42 of the Federal Rules of Criminal Procedure requires

that, "[a]ny person who commits criminal contempt may be punished for that contempt after

prosecution on notice." Just like other crimes, criminal contempt must be proven beyond a

reasonable doubt. *Romero v. Drummond Co.*, 480 F.3d 1234, 1242 (11th Cir. 2007). Because of

these requirements, a district court may not use the civil contempt power in a civil proceeding to

impose a punitive or criminal contempt sanction. *SEC v. Pension Fund of Am., L.C.*, 396 Fed.

Appx. 577, 583 (11th Cir. 2010) ("Because the district court imposed what amounted to a

punitive contempt sanction in a civil proceeding, its order must be vacated."); *DuPont De*

*Nemours & Company-Benlate Litig.*, 99 F.3d 363, 369 (11th Cir. 1996) (reversible error to

impose criminal sanctions in a civil proceeding, which "did not afford [the contemnor] the

procedural protections the Constitution requires for the imposition of criminal contempt

sanctions").

For these reasons, even if Dr. Wright has violated court orders in the past, the Court

cannot impose an order of criminal contempt here without due process. The law firms know

that, of course. They just cannot help themselves from going overboard in all things related to

Dr. Wright.

### C. The Law Firms Are Not Entitled to Freeze the Assets of a Foreign Third-Party Account

With no hyperbole being too much, the law firms go so far as to seek "a freeze on all accounts that make payments to Wright or on behalf of Wright." (Motion at 8.) This is a wild overreach.

The accounts the law firms seek to freeze are third-party accounts located in Antigua and from which Dr. Wright's legal fees have been paid. (Motion at 8.) A judgment creditor, however, cannot attempt to collect a judgment from a third party *unless* that third party holds property belonging to the judgment debtor, or property as to which the judgment debtor has a claim. *See* Fla. Stat. 56:29. Even then, the judgment creditor must initiate proceedings supplementary to assert its claim to the property. *Id*. In proceedings supplementary, "the judgment creditor shall… describe any **property of the judgment debtor** not exempt from execution in the hands of any person or any property, debt, or **other obligation due to the judgment debtor** which may be applied toward the satisfaction of the judgment. *Id*. at 56:29(2) (emphasis added).

The law firms have not shown, cannot show, and have not even tried to show that Dr. Wright has any claim whatsoever to the funds in the third-party accounts from which his legal fees were paid. Even if he did (he doesn't), the law firms have not taken any steps to initiate the proceedings supplementary that would be necessary to attempt to collect any portion of the W&K judgment from those third parties. Again, this is something the law firms surely know. Their request that this Court sidestep Florida law and act by summary fiat is, besides being an invitation to clearest error, nothing more than a transparent attempt to prevent Dr. Wright from paying his lawyers so the law firms aligned against him can run amok unchecked. No matter how profound the law firms' disdain for Dr. Wright and his counsel, they have absolutely no legal basis for asking this Court to freeze the third-party accounts that pay his legal fees.

Furthermore, the foreign location of the third-party accounts is yet another reason the law firm's request must be rejected. This Court has no power to encumber third-party accounts located in Antigua. *Gucci Am., Inc. v. Cheapguccihandbagsusaoutlet.com,* 2012 WL 12874182, at \*6 (S.D. Fla. Sept. 6, 2012) ("Persons who are not actual parties to the action or in privity with any of them may not be brought within the effect of an injunctive decree merely by naming them in the order.") (cleaned up)*, report and recommendation adopted,* 2012 WL 12873542 (S.D. Fla. Sept. 21, 2012).

## D. The Law Firms Are Not Entitled to the Overbroad and Dangerously Vague Temporary Restraining Order They Seek

Nor do the law firms have any right to the sweeping restraining order they seek. To obtain a temporary restraining order ("TRO"), a party must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the TRO is not granted; (3) the threatened injury to the moving party outweighs whatever damage the proposed TRO may cause the opposing party; and (4) if issued, the TRO would not be adverse to the public interest. *Talk Fusion, Inc. v. Burling*, 2016 WL 9132932, at \*2 (M.D. Fla. June 29, 2016). A TRO should be granted only in "emergency cases to maintain the status quo." *Id*. In addition, where a party seeks to freeze assets, the TRO must be "narrowly tailored" and identify the assets subject to freeze. *Absolute Activist Value Master Fund Ltd. v. Devine*, 2015 WL 7982796, at \*3 (M.D. Fla. Dec. 7, 2015).

The law firms do not trouble themselves even to attempt to explain how the TRO sought satisfies the four-part test required for injunctive relief, or why "emergency" relief is necessary to maintain the status quo. Nor could they, given that they waited over one year to compel Dr. Wright to complete Form 1.977 even though, according to the document Ira Kleiman personally filed, he was urging his attorneys to make the motion ever since entry of the W&K judgment.

[DE 918 at 6.] If the law firms believed there was a need for emergency relief, they shouldn't have waited 13 months to seek it. Furthermore, there is no allegation, let alone a scrap of evidence, that Dr. Wright has transferred any assets after entry of the W&K judgment for purposes of avoiding its payment.

What's more, the TRO is so broad and vaguely worded as to fail on its face, seeking as it does to prohibit the transfer of assets by any entity "directly *or indirectly*" controlled by Dr. Wright or of which he is the "direct *or indirect*" beneficiary. (Motion at 8.) As worded, it is impossible to know what assets the TRO would restrain. In addition, control—let alone *indirect* control, whatever that is—is not synonymous with ownership. As discussed above, W&K is not entitled to enforce the judgment against third parties unless those parties are holding assets **owned** by Dr. Wright, or Dr. Wright assets over which he could assert a claim. Whatever "indirectly controlled" assets are, they're not that. Finally, the law firms are heedless with respect to how this hugely overbroad TRO would impact the *direct* owners of assets subject to restraint. The request for a TRO fails on these bases.

### E.  Monetary Sanctions Sought Are Wildly Excessive

"Sanctions imposed for civil contempt to coerce compliance cannot be any greater than necessary to ensure such compliance and may not be so excessive as to be punitive in nature." *Mesa v. Luis Garcia Land Serv., Co.,* 218 F. Supp. 3d 1375, 1380 (S.D. Fla. 2016). Yet the law firms ask this Court to impose a sanction of $250,000 per day for each day that Dr. Wright fails to complete Form 1.977 in the way they have requested. ***A quarter of a million dollars per day***. Unsurprisingly, we found no case law that would support such a grossly excessive sanction against an individual, no matter how wealthy. *Cf. In re Colombo Agroindustria S.A.,* 2023 WL 2560896, at *6 (S.D. Fla. Mar. 17, 2023) (imposing fine of $100 per day for failure to comply

with discovery orders); *Diamond Resorts Int'l, Inc. v. US Consumer Att'ys, P.A.*, 2021 WL

9596129, at *13 (S.D. Fla. Apr. 9, 2021) (imposing fine of $1,000 per day for failure to comply

with agreed-upon order of parties); *Friedman v. Schiano*, 2017 WL 11487873, at *3 (S.D. Fla.

Mar. 22, 2017) (imposing fine of $1,000 per day for failure to comply with injunction) (Bloom,

J.).

      None of the cases cited by the law firms involved monetary coercive sanctions remotely

as high as those sought here. *See Millennium Funding, Inc. v. 1701 Mgmt. LLC*, 2022 WL

18456536, at *2 (S.D. Fla. Dec. 12, 2022) (holding judgment debtors in contempt and imposing

sanctions of $500 per day for complete failure to complete Form 1.977 in connection with $15

million judgment), *report and recommendation adopted*, 2023 WL 371932 (S.D. Fla. Jan. 24,

2023) (Bloom, J.); *Melikhov v. Drab*, 2021 WL 247979, at *6 (M.D. Fla. Jan. 19, 2021) ($250

per day); *report and recommendation adopted*, 2021 WL 859673 (M.D. Fla. Mar. 8, 2021). And

though the law firms stand squarely on *Millennium*, and analogize Dr. Wright's conduct to the

conduct at issue there, they say this Court should impose per diem sanctions ***$249,500 more*** than

the amount imposed in that matter. Simply put, an order requiring Dr. Wright to pay $250,000

per day until he completes Form 1.977 cannot be viewed as anything but punitive and,

accordingly, is prohibited by law. *Mesa,* 218 F. Supp. 3d at 1380.

### CONCLUSION

      For the reasons stated here, the Court should deny W&K's motion for sanctions, decline

to hold Dr. Wright in contempt, and refuse to enter a TRO.

Respectfully submitted,

RIVERO MESTRE LLP
2525 Ponce de Leon Boulevard,
Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: abrown@riveromestre.com
Email: ahenry@riveromestre.com
Email: rkuntz@riveromestre.com
Email: receptionist@riveromestre.com
*Counsel for Dr. Craig Wright*

By: s/ Andres Rivero
ANDRES RIVERO
Florida Bar No. 613819
AMY C. BROWN
Admitted *Pro Hac Vice*
ALLISON HENRY
Florida Bar No. 1003008
ROBERT KUNTZ
Florida Bar No. 94668

## CERTIFICATE OF SERVICE

I certify that on April 25, 2023, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

By: /s/ Andrés Rivero.
      Andrés Rivero