UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:18-cv-80176-BB/BR

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC,

     Plaintiffs,
v.

CRAIG WRIGHT,

     Defendant.
_____/

**RIVERO MESTRE'S RESPONSE TO ORDER ON
MOTION FOR SANCTIONS AND ORDER TO SHOW CAUSE**

Rivero Mestre LLP ("Rivero Mestre") submits this response to the Court's Order on Motion for Sanctions and Order to Show Cause [DE 973].

**INTRODUCTION**

Rivero Mestre's decision to designate Dr. Craig Wright's ("Wright") Form 1.977 Fact Information Sheet ("FIS") as "Attorney's Eyes Only" ("AEO") was made in good faith based upon its legitimate and justified concern that Wright's income from nChain was private and sensitive financial information that customarily would not be disclosed in a public forum. Such disclosures are typically protected, and their dissemination restricted, to balance a judgment creditor's ability to discover facts relevant to judgment collection against the privacy rights of the judgment debtor and the possibility that third parties might use the debtor's financial information for improper purposes. In this case, Rivero Mestre made the AEO designation to guard against that risk. More specifically, Rivero Mestre made the designation to minimize the chance that either Wright's competitors or the media—which closely follows every development in this case and routinely

1

quotes filings soon after they are docketed—could use the information to harm Wright or nChain as his employer.

The sole act giving rise to the Court's May 5, 2023 Order to Show Cause is Rivero Mestre's designation of the FIS as AEO, as opposed to having designated it as "confidential" or disclosing it without restriction. But as the accompanying declarations from Rivero Mestre partners indicate, the firm made a reasoned judgment call when making the AEO designation. The firm did not act in bad faith, as would be required for sanctions under the Court's inherent powers. Nor did the firm act vexatiously or multiply the proceedings by the AEO designation, as would be required for sanctions under 28 U.S.C. § 1927. Accordingly, the Court should not sanction Rivero Mestre or its lawyers under either its inherent powers or Section 1927.

## STATEMENT OF FACTS

On March 3, 2023, the Court ordered that Wright complete the FIS by April 1, 2023. [DE 939.] Importantly, the FIS instructs the judgment debtor to serve, not file with the court, the FIS on the judgment creditor or its attorney: "**YOU MUST MAIL OR DELIVER THIS COMPLETED FORM, WITH ALL ATTACHMENTS, TO THE JUDGMENT CREDITOR OR THE JUDGMENT CREDITOR'S ATTORNEY, BUT DO NOT FILE THIS FORM WITH THE CLERK OF COURT.**" (Underline emphasis added).

On April 3, Wright delivered the FIS to W&K's collective majority members, Ramona Ang as Trustee of the Tulip Trust, and Lynn Wright. [DE 954].[1] That same day, Rivero Mestre filed a Statement of Compliance signed by Wright that notified the Court and Plaintiffs' counsel that Wright had delivered the FIS directly to the judgment creditor, W&K. *Id.*

---

[1] Because the April 1, 2023 deadline to deliver the FIS fell on a Saturday, Wright delivered the form to the majority members of W&K on April 3.

2

On April 4, the Court ordered Wright to provide the FIS to all counsel who had appeared for W&K. [DE 956]. Wright complied with the Court's April 4 order, delivering the FIS to W&K's counsel the same day.

On April 20, W&K's law firms Friedman Normand Freedland LLP, formerly Roche Freedman LLP (the "Freedman Firm") and Boies Schiller Flexner LLP (collectively the "law firms"), filed on behalf of W&K an expedited motion for contempt and sanctions ("Motion for Sanctions") against Wright. The Motion for Sanctions alleged that Wright failed to complete the FIS fully and made statements on the form that were inconsistent with his prior statements. [DE 963]. The law firms filed the Motion for Sanctions and FIS, attached as Exhibit 1 to the motion, in redacted form, and filed the unredacted FIS under seal. [DE 963-1]. In a footnote, W&K argued that the Court should order that the completed FIS be publicly filed with the clerk, or, alternatively, order the designation be modified from AEO to "confidential" so they could share the form's contents with Ira Kleiman." [DE 963 at 3, n.2]. The AEO designation was not the basis for the law firms' Motion for Sanctions. Nor did the law firms seek sanctions against Rivero Mestre for the AEO designation.

The Court followed with an Order to Show Cause on April 20 ("April 20 OSC"), ordering that by April 25, Wright "show cause why the Attorneys' Eyes Only designation for his Form 1.977 should not be stricken and the document at ECF No. 966 unsealed." [DE 967].

On April 25, Wright responded to the Motion for Sanctions on the merits, arguing that W&K was not entitled to civil or criminal contempt, a temporary restraining order freezing assets, or monetary sanctions. [DE 968].

On April 26, Wright supplemented his response to the April 20 OSC, arguing that Wright should not be held in contempt for having designated the FIS as AEO because: (1) Wright had a

3

legitimate concern that Wright's competitor, Ava Labs, a client of the Freedman Firm in which several of the firm's partners hold a financial interest, would gain access to Wright's private and sensitive financial information and abuse it; (2) Wright's private and sensitive financial information was bound to be published on social media, as has been the case with almost every other filing docketed in this case; and (3) no prejudice resulted to W&K from the AEO designation. [DE 969].

On May 2, the law firms filed a reply in support of their Motion for Sanctions, arguing that Wright produced a form "with virtually none of the required information or documents," his responses were in bad faith and incomplete, British law has no effect, and Wright's statements on the FIS were inconsistent with sworn testimony he previously had given in this case and with statements he had made on social media. On those bases, the law firms argued that the Court should find Wright in criminal contempt, freeze all assets held directly or indirectly by him, and impose sanctions in the amount of $250,000 per day for each day of non-compliance. [DE 972 at 3-7].

On May 5, the Court entered its Order on Motion for Sanctions [ECF Nos. 963, 966] and Order to Show Cause [ECF No. 967] ("May 5 OSC"), ordering that Wright <u>and Rivero Mestre</u> show cause "why they should not be sanctioned under 28 U.S.C. § 1927 and/or the Court's inherent authority for [1] having designated the Form as 'Attorney's Eyes Only,' [2] insisting that it be filed under seal, and [3] persisting in that position in response to the Court's Order to Show Cause." [DE 973 at 11].

4

<u>ARGUMENT</u>

**A. The Court Should Decline to Exercise Its Inherent Powers to Impose Sanctions Because There is Not Clear and Convincing Evidence That Rivero Mestre Acted in <u>Subjective Bad Faith</u>.**

"The key to unlocking a court's inherent power [to award sanctions against counsel] is a finding of bad faith." *Hartford Fire Ins. Co. v. New York Mart Grp., Inc.,* No. 4:18-cv-10276, 2022 WL 3682082, at *9 (S.D. Fla. Mar. 21, 2022) (internal citation omitted); *XP Glob., Inc. v. AVM, L.P.*, 2018 WL 6448383, at *3 & n.9 (S.D. Fla. Feb. 14, 2018) (same); *Barash v. Kates*, 585 F. Supp. 2d 1347, 1361–62 (S.D. Fla. 2006) (same). As Judge Bloom has previously held:

> [A] court may exercise its inherent contempt power only to address bad faith conduct which abuses the judicial process. **Bad faith** is not simply bad judgment or negligence, but rather **implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. It contemplates a state of mind affirmatively operating with furtive design or ill will**.

*Alhassid v. Nationstar Mortg., LLC*, No. 14-cv-20484, 2018 WL 5118508, at *2 (S.D. Fla. Oct. 18, 2018) (Bloom, J.) (cleaned up) (emphasis added). Judge Reinhart has interpreted the bad faith standard similarly strictly:

> The Court's inherent power is not a vehicle for it to police all behavior of a litigant or a potential litigant that a party considers questionable, suspicious, unfair, dishonest, sharp, underhanded or similarly dubious. Rather, **the Court's inherent power is reserved for rare and limited circumstances that demonstrate subjective bad faith conduct that affects the integrity of the matter pending before the Court**.

*Hunters Run Prop. Owners Ass'n, Inc. v. Centerline Real Estate LLC*, No. 18-80407-CIV, 2019 WL 12038883, at *3 (S.D. Fla. 2019) (Reinhart, J.).

"A party seeking to invoke this inherent power must prove bad faith **by clear and convincing evidence**." *Filippova v. Mogilevsky*, No. 18-80044, 2019 WL 1060447, at *6 (S.D. Fla. Mar. 6, 2019) (citing *JTR Enters., LLC v. An Unknown Quantity of Colombian Emeralds, Amethysts & Quartz Crystals*, 93 F. Supp. 3d 1331 (S.D. Fla. 2015), *aff'd sub nom.* 697 F. App'x

5

976 (11th Cir. 2017)) (emphasis added). Importantly, the test for determining bad faith under the court's inherent power is a test of the attorney's "**subjective intent**." *See Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223–24 (11th Cir. 2017) ("As a starting point, the inherent-powers standard is a subjective bad-faith standard . . . We can only sanction attorneys for meritorious claims by discerning their subjective intent."); *Cutlass Collieries, LLC v. Jones*, No. 20-CV-80001, 2021 WL 6135152, at *2 (S.D. Fla. Dec. 7. 2021) (Reinhart, J.) (citing *Purchasing Power, LLC*, 851 F.3d at 1223 (11th Cir. 2017). Subjective bad faith "is not the same as simple recklessness, which can be a starting point but requires something more to constitute bad faith." *Purchasing Power, LLC*, 851 F.3d at 1225.

Bad faith can be found in three instances: "(1) when fraud has been committed on the court; (2) when a party delays or disrupts the litigation, or hampers the enforcement of a court order; or (3) when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Hartford Fire*, 2022 WL 3682082, at *8 (internal citations omitted). "[T]he inherent powers doctrine is most often invoked where a party commits perjury or destroys or doctors evidence." *Id*. The bad faith standard has been deemed a "high bar" and even if certain conduct is considered "troubling, it falls short of bad faith" without more. *See id*. at *9.

An improper, or even reckless, confidentiality designation rarely meets the high standard of subjective bad faith. *See Lanard Toys Ltd. v. Dolgencorp, LLC*, No. 3:15-cv-849, 2021 WL 8200197, at *38 (M.D. Fla. Aug. 20, 2021), *as corrected* (Oct. 19, 2021), *supplemented,* 2022 WL 1597276 (M.D. Fla. Feb. 2, 2022) (though defendant showed "carelessness (or maybe even professional incompetence) resulting from many documents, many markings under the protective order," plaintiff failed to show "the subjective bad faith or egregious conduct required for the Court

to take the unusual step of exercising inherent authority to sanction the lawyers"). A single, reckless or erroneous confidentiality designation does not meet this "high standard." *Id*.

In its May 5 OSC, the Court cites *Sciarretta v. Lincoln Nat'l Life Ins. Co.*, 778 F.3d 1205, 1212–13 (11th Cir. 2015), a case involving the court's inherent authority to award sanctions against an attorney. *Sciaretta*, however, does not suggest that an attorney's single, improper designation of a document as AEO could amount to subjective bad faith. In contrast, in *Sciaretta*, the defendant's attorneys adopted **a pattern and practice** of directing their clients to make misrepresentations on insurance documents, and the defendant insurance company was under criminal investigation because of its misconduct. *Id*. at 1209. When plaintiff sought a deposition of the insurance company's corporate representative, the company's attorneys hired an independent expert and inadequately prepared him to testify pursuant to Rule 30(b)(6). *Id*. at 1210. The witness was unable to answer most of the questions posed to him. *Id*. at 1211. Accordingly, the district court found that the company's counsel had selectively prepared the expert to answer only those questions favorable to the company, but not questions that would have elicited evidence harmful to the company. For this, the district court sanctioned the company—**not its attorneys**—for the misconduct, and the Eleventh Circuit affirmed. *Id*. at 1213. The attorneys' misconduct in *Sciaretta* involved repeated misconduct and went well beyond Rivero Mestre's single, erroneous AEO designation of the FIS. Yet, neither district court nor the Eleventh Circuit in *Sciaretta* imposed sanctions against the attorneys.

In designating Wright's FIS as AEO, Rivero Mestre considered the following factors:[2]

---

[2] The factors considered by Rivero Mestre in making and defending the AEO designation are set forth in the May 24, 2023 declarations of Andrés Rivero and Robert J. Kuntz, Jr., attached as Exhibits A and B, respectively, to this response.

- Certain information revealed in Wright's FIS, *i.e.*, annual payments from his employer and the fact that he received monthly commissions or bonuses, was private, sensitive financial information that would customarily be protected from disclosure. (Ex. B ¶ 10.)

- Public disclosures of Wright's financial condition could influence the volatile digital currency markets. (Ex. A ¶ 7; Ex. B ¶ 10.)

- Detailed information from this case consistently appears on social media, and designating the FIS as AEO would prevent such public disclosure. (Ex. B ¶ 10.)[3]

- The former namesake of the Freedman Firm admitted on video that the firm uses discovery in various of its litigations to advance the business interests of its client, Ava Labs, an entity in which partners in the Freedman Firm hold a financial interest. (Ex. A ¶ 6; Ex. B ¶ 10.)

- Failing to designate the FIS as AEO might waive such protection down the road, if the Court required Wright to disclose other, highly confidential information requested on the FIS. (Ex. B at ¶ 10.)

- If Wright's FIS were properly designated as AEO or confidential, *i.e.*, Wright's financial information was not appropriate for public disclosure under either designation, it was incumbent upon Rivero Mestre to ensure that such information was filed under seal so as not to be disclosed publicly. In other words, making such a

---

[3] One of the media personalities that tracks Wright and the developments in this case very closely is an anonymous person who goes by the Twitter handle "Crypto Devil." Less than 24 hours after attorneys from Rabin Kammerer Johnson entered their appearances in this case, Crypto Devil sent the firm a lengthy email explaining why the firm should decline to represent Rivero Mestre or anyone associated with Wright. As Mr. Kuntz explains in his declaration (Ex. B at ¶ 18), Crypto Devil was but one of the media personalities about which he was concerned when he considered the AEO designation and possible disclosure of Wright's financial information.

- designation without requiring that the FIS be filed under seal would have defeated the purpose of the designation. (Ex. B at ¶ 10.)

- The disclosure of a person's income or financial condition is the type of information that is usually protected, and thus properly designated AEO or confidential, under a confidentiality order. (Ex. B ¶ 10.)[4]

Under Florida law, an individual's "information of a personal and confidential nature concerning their . . . income, expenses, [and] assets," has long been considered protected under an individual's right to privacy per Article I, Section 23 of the Florida Constitution. *See Fosberg v. Hous. Auth. of City of Miami Beach*, 455 So. 2d 373, 374 (1984) (Overton, J., concurring). Indeed, individuals have a recognized "privacy interest in their financial records" under the Florida Constitution. *See Network Commc'ns of Northwest Fla., Inc. v. Dep't of Revenue*, 334 So. 3d 707, 710 (Fla. 3d DCA 2022) (internal citations omitted). In this regard, "[p]rivate financial worth information is thus usually withheld from the world at large unless the courts compel such disclosure," and "[e]ven then, disclosure is made only so far as necessary." *Woodward v. Berkery*, 714 So. 2d 1027, 1035 (Fla. 4th DCA 1998). *Cf. United States v. Langford*, No. CR-08-CO-245-

---

[4] Rivero Mestre acknowledges that the Confidentiality Order in this case [DE 105-1] is more narrowly drawn and only permits a party to designate as AEO "(1) trade secrets, or (2) highly sensitive non-public commercial financial information or highly sensitive private corporate information relating to any current business in which a Party has an interest." At the time it filed its responses to the April 20 OSC and May 5 OSC, Rivero Mestre did not consider the difference between highly sensitive "commercial" financial information and the personal financial information of Dr. Wright. (Ex. A ¶¶ 8–9; Ex. B ¶ 11.) Rather, the AEO designation was based primarily on counsels' general understanding, through their years of commercial litigation experience, that personal financial information is highly confidential and, ordinarily, properly designated as AEO. In retrospect, it may have been more appropriate for Rivero Mestre, on Wright's behalf, to have moved this Court to modify the Confidentiality Order to broaden the AEO category to cover private, sensitive personal financial information, not just commercial or corporate information. But that Rivero Mestre did not take that approach does not mean that it acted in bad faith.

9

S, 2009 WL 10671719, at *5 (N.D. Ala. Aug. 14, 2009) ("Personal financial information, such as one's income or bank account balance is universally presumed to be private, not public . . . The magistrate judge sensibly concluded that [the defendant's] strong interest in privacy of his and his family's personal finances and information outweighed the common law presumption [of access] in these circumstances.") (quoting *In Re Boston Herald*, 321 F.3d 174, 190 (1st Cir. 2003)) (emphasis added).

Rivero Mestre's attorneys had a legitimate, good faith concern that: (1) Wright's personal financial information was private, sensitive financial information that would customarily be protected private information under Florida law; (2) public disclosures of Wright's financial condition could influence the volatile digital currency markets; (3) Wright's case has a history of routine, extensive publication of specific information about the parties on social media; (4) the former namesake of the Freedman Firm previously stated on camera that the firm uses discovery in certain litigations to advance the interests of its then-client, Ava Labs; (5) there was substantial concern about waiving the rights that accompany an AEO designation; and (6) confidentiality orders customarily protect both personal and commercially sensitive financial information. Given these concerns, Rivero Mestre unequivocally did **not** act in subjective bad faith—much less by a showing of clear and convincing evidence—in designating the FIS as AEO and maintaining that it should be filed under seal.

Finally, lack of prejudice is "fatal" to a request for sanctions, and W&K suffered no prejudice here. *See Hendershot v. Ostuw*, No. 20-80006-CIV, 2020 WL 13110799, at *2 (S.D. Fla. Sept. 9, 2020) (Reinhart, J.) (declining to exercise inherent power to sanction plaintiff absent showing of prejudice). Rivero Mestre produced the FIS to the law firms under the AEO designation on April 4, 2023. Given the designation, the law firms were temporarily prohibited from sharing

the form with Ira Kleiman and filed the FIS under seal when it filed the Motion for Sanctions. [DE 963, Ex. A.] One month later, on May 5, 2023, the Court ordered the document unsealed, making it available to the public and to Ira Kleiman. There was no prejudice under these circumstances, especially given that the law firms waited **more than one year** to move to compel Wright to complete the FIS and have not sought further discovery from Wright since he delivered the FIS to all counsel, who were thereafter liberated to share the form with Ira Kleiman. Given the lack of both bad faith and prejudice, the Court should not use its inherent authority to impose sanctions against Rivero Mestre.

### B. Sanctions Against Rivero Mestre Are Not Warranted Because Its Attorneys Did Not Unreasonably and Vexatiously Multiply the Proceedings

Under 28 U.S.C. § 1927, federal courts may require an attorney "who so **multiplies the proceedings** in any case **unreasonably and vexatiously**" to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." (Emphasis added). To justify an award of sanctions pursuant to Section 1927, three elements must be satisfied: "an attorney must (1) engage in unreasonable and vexatious conduct; (2) this conduct must multiply the proceedings; and (3) the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct." *McMahan v. Toto*, 256 F.3d 1120, 1128 (11th Cir. 2001). Importantly, courts strictly construe the provisions of Section 1927, including that all three requirements must be met. *See Peterson v. BMI Refractories*, 124 F.3d 1386, 1395 (11th Cir. 1997).

This Court has recognized that, in the Eleventh Circuit, Section 1927 is "penal" in nature. *Gilroy v. Baldwin*, No. 16-14521, 2021 WL 6427476, at *6 (S.D. Fla. Dec. 15, 2021) (Reinhart, J.), *report and recommendation adopted*, 2022 WL 112221 (S.D. Fla. Jan. 12, 2022). "Section 1927 is intended to sanction attorneys who willfully abuse the judicial process by conduct tantamount to bad faith." *Bertin v. Zadok Real Est. Holdings, LLC*, No. 10-24508, 2012 WL

13012463, at *11–12 (S.D. Fla. Feb. 3, 2012), *report and recommendation adopted*, 2012 WL 13012422 (S.D. Fla. Feb. 23, 2012). For these reasons, "for sanctions under Section 1927 to be appropriate, something more than a lack of merit is required." *Bertin*, 2012 WL 13012422, at *6.

In this case, there is no basis for the Court to award Section 1927 sanctions against Rivero Mestre's attorneys because the statute's requirements—[1] **unreasonable and [2] vexatious conduct [3] that multiplied the proceedings**—have not been met. Rivero Mestre's conduct in designating the FIS as AEO did not amount to "unreasonable" or "vexatious" conduct. The FIS is designed to collect personal financial information, which is considered protected private and sensitive information under the Florida Constitution. *See Fosberg*, 455 So. 2d at 374; *Dep't of Revenue*, 334 So. 3d at 710; *Woodward*, 714 So. 2d at 1035.

Wright disclosed nChain on the FIS as his employer and a "rate of pay" of $159,000 annually, plus unspecified monthly commissions or bonuses. Wright's annual compensation is highly confidential in nature—which Rivero Mestre deemed sufficient to support an AEO designation—because of the extremely competitive nature of the digital currency industry, in which a competitor might learn the compensation of nChain's Chief Scientist (Wright) and use that information to recruit scientists or other technology talent, including from nChain.[5] (Ex. A ¶ 7.)

In *Knight Cap. Partners Corp. v. Henkel AG & Co., KGaA*, No. 16-12022, 2019 WL 4261129 (E.D. Mich. Sept. 9, 2019), the defendant improperly designated as AEO 25,000, *i.e.*,

---

[5] Rivero Mestre could have redacted Wright's income information or used a lesser confidentiality designation, but that likely would have sparked the same complaint from Plaintiffs. In any case, its failure to do so does not rise to the level of "vexatious" conduct required under Section 1927. *See Berdan Cole LLC v. Technicolor USA, Inc.*, No. CV21-8109, 2022 WL 18142507, at *5 (C.D. Cal. Nov. 29, 2022) ("[W]hile the Plaintiffs likely took too casual an approach to their initial designations and their initial refusal to de-designate the documents, the Court does not find that Plaintiffs actions were tantamount to bad faith.").

30% of 85,000 documents produced. Even under those circumstances, however, the court found that Section 1927 sanctions were unwarranted against defendant's counsel:

> The plaintiff has failed to advance any sufficient record to support its allegations of a wholesale discovery whitewash by the defendant; merely pointing out that a large number of documents were designated for attorney eyes only, under the terms of a protective order which specifically permitted the AEO designation, does not suffice to establish bad faith conduct.

*Id*. at *2. "There is no indication in the record that the defendant **repeatedly** defied orders of the Court or resisted reviewing and re-designating documents on multiple occasions when its designation was called seriously into question." *Id*. at *3.

If there was no bad faith in *Knight*—where 25,000 documents were improperly designated as AEO— there could not possibly be bad faith here, where the issue at hand is whether Rivero Mestre improperly designated a *single* document as AEO. Simply put, Rivero Mestre has not "repeatedly" defied orders of the Court and has not engaged as lawyers in "vexatious conduct."

And while this Court has now rejected Rivero Mestre's rationale behind designating the FIS as AEO [DE 973, at 9], there is no evidence that the firm's attorneys engaged in "vexatious" conduct by weighing the factors set forth above in deciding to designate the FIS as AEO. As explained in the declarations of Rivero Mestre's attorneys, the firm had palpable concerns about the potential harm to Wright and nChain that could result from disclosure of Wright's personal financial information in the public domain. (Ex. A ¶¶ 6-7, 9; Ex. B ¶ 10.)

Further, the AEO designation of the FIS did not "multiply the proceedings" in any way. The only event that took place following the AEO designation was the Motion for Sanctions filed by the law firms. But the law firms inevitably would have filed that motion irrespective of how Rivero Mestre designated the form, as the Motion for Sanctions was driven predominantly by the contents of the FIS (or, more specifically, the lack thereof) and the law firms' argument that the

13

information Wright disclosed on the FIS was inconsistent with his prior statements to the Court. Indeed, the law firms only complained about the AEO designation in a footnote contained in the Motion for Sanctions. [DE 963, at 3 n.2.] The AEO designation was not the driving force behind the Motion for Sanctions. Accordingly, the designation did not multiply the proceedings at all, much less in a material way.[6] *See Amlong & Amlong, P.A. v. Denny's Inc.*, 500 F.3d 1230, 1244 (11th Cir. 2007) (denying sanctions under Section 1927 against the plaintiff's attorneys for pursuing plaintiff's claims and preparing what defendant's contended was an erroneous errata sheet, where the court held the attorneys should not be faulted for the plaintiff's conduct in filling out the errata sheet because the attorneys "did not try to prolong the case or multiply these proceeding[s] to gain a tactical advantage over their adversaries.")

In sum, Rivero Mestre did not act in bad faith under Section 1927 because it did not "vexatiously multiply the proceedings" by designating a single document as AEO. It would be fundamentally unfair to take the extraordinary step of sanctioning Rivero Mestre or its attorneys for the reasoned—even if erroneous—decision to designate the FIS as AEO to protect their client's interests in the face of legitimate concerns about the consequences that could flow from public disclosure of Wright's personal financial information. The court should deny any award of sanctions against Rivero Mestre under Section 1927.

---

[6] The Freedman Firm's concern for limiting AEO designations is inconsistent with its own conduct in other litigation arising from the Kyle Roche admissions underpinning Rivero Mestre's concerns about the public disclosure of Wright's financial information. In *Valenti v. Dfinity USA Research LLC*, pending in the Northern District of California (Case No. 21-cv-06118-JD)—where the court recently removed the Freedman Firm as class counsel—Judge James Donato chastised the firm for its efforts to designate Vel Freedman's entire 30(b)(6) deposition transcript, as AEO.

## CONCLUSION

For the reasons stated above, Rivero Mestre respectfully requests that the Court not impose sanctions against the firm or its attorneys under the Court's inherent authority or Section 1927.

Respectfully submitted,

RABIN KAMMERER JOHNSON
1601 Forum Place, Suite 201
West Palm Beach, FL 33401

By: /s Adam Rabin
    Adam Rabin
    Florida Bar 985635
    arabin@rkjlawgroup.com
    e-filing@rkjlawgroup.com
    Christopher W. Kammerer
    Florida Bar 42862
    ckammerer@rkjlawgroup.com
    Havan M. Clark
    Florida Bar 1026390
    hclark@rkjlawgroup.com

## CERTIFICATE OF SERVICE

I certify that on May 24, 2023, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

By: /s Adam Rabin.
Adam Rabin