UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:18-cv-80176-BB/BR

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC,

      plaintiffs,

v.

CRAIG WRIGHT

                                                /

## DECLARATION OF ANDRÉS RIVERO

I, Andrés Rivero, declare the following:

1. I am a lawyer admitted to practice in Florida in 1986 and have been a member in good standing of the Florida Bar for 37 years. I have practiced before this Court throughout that time.

2. I am also the founding partner of Rivero Mestre LLP. My practice focuses on complex business litigation and white-collar criminal defense.

3. Before founding Rivero Mestre, I served as an Assistant United States Attorney in the Southern District of Florida for five years, principally in the Economic Crimes and Public Corruption sections. I was also a litigation attorney and then a shareholder at Greenberg Traurig for seven years, where I handled a wide array of commercial litigation matters.

4. I have served as lead counsel for Dr. Wright in this case since March 2018.

5. I was not directly involved in the decision to designate the Form 1.977 Financial Information Sheet ("FIS") as "Attorney's Eyes Only" ("AEO"). I became aware of the AEO designation shortly after that initial decision, however, and believed it to be appropriate for all the reasons set forth in the May 24, 2023 declaration of my partner, Robert Kuntz.

6.  In my experience, personal financial information, like the income information disclosed by Dr. Wright in the FIS, is inherently confidential and private. Information about payments that Dr. Wright received from his employer, nChain UK Limited ("nChain"), is especially sensitive in this case because of: (1) the intense scrutiny and publicity this case regularly receives from mainstream, legal and social media; and (2) the video-recorded statements made by Kyle Roche (former named partner of Freedman Normand Friedland LLP f/k/a Roche Freedman (the "Firm")) that the Firm uses information obtained in litigation from business adversaries of Ava Labs—then a Firm client and one in which its partners still hold a significant financial interest—for Ava Labs' benefit. In those video recordings, which caused a national legal scandal and resulted in the removal of the Firm as counsel in two other federal litigations, Roche singled out Dr. Wright by name as one of the "arch-nemeses" of Ava Labs' CEO. Keenly aware of these facts, my colleagues and I were concerned, and very cautious about, publicly disclosing Dr. Wright's financial information.

7.  Further, through my work in this case, including as lead trial counsel, I have gained substantial knowledge about how the bitcoin blockchain and the digital currency market works. Businesses competing in the market related to blockchain technology and digital currencies are extremely competitive, especially as to the speed and scalability of their blockchains. Like many areas of advanced technology, there is intense competition for computer scientists and their compensation is highly sensitive information that would be helpful to business competitors. Dr. Wright is one of the leading computer scientists in the field. He has stated that he is Satoshi Nakamoto, the inventor of the bitcoin blockchain. Indeed, plaintiffs alleged in this case that Dr. Wright was one of the co-inventors of bitcoin, and we presented substantial evidence at trial that supported his claim. Dr. Wright is the Chief Scientist for nChain, which is building and operating

a blockchain using the ticker symbol "BSV." Disclosure of Dr. Wright's income from nChain is useful to competitors who are deciding what and how to pay their technological talent and could influence market opinions about nChain's financial stability and prospects.

8. I understand that the Court views our initial AEO designation of the FIS provided by Dr. Wright as improper because the document did not contain trade secrets or confidential corporate or commercial information, as opposed to confidential personal information belonging to Dr. Wright. [DE 973 at 9-10.]. Because I was not directly involved in the AEO designation, I did not consult the terms of the original Confidentiality Order [DE 105-1], executed in the infancy of this litigation, prior to the Court's entry of its May 5, 2023 Order to Show Cause.

9. It is my experience, however, that personal financial information is precisely the sort of information that typically is protected by a confidentiality order. Rivero Mestre's decision to designate as AEO was driven by the normally confidential nature of income information, the intense media attention given to this case, and our concern about the history of the Firm's statements on social media about developments in this case, especially because of the admissions made by Mr. Roche on video.

10. Our failure to appreciate that the Confidentiality Order in this case was more narrowly drawn than is usual was an oversight and not intentional or in bad faith. To the contrary, my colleagues and I acted in good faith in originally making the AEO designation and in defending it following the Court's April 20, 2023 Order to Show Cause. [DE 967.]. We acted only to protect the privacy interests of Dr. Wright as our client in a case that continues to receive microscopic scrutiny by the media and Dr. Wright's adversaries, including Ava Labs.

11. It is important to note that this case involved the review and production of hundreds of thousands of documents (if not more); our lawyers made thousands of decisions on how to

designate those documents under the Confidentiality Order. None of those decisions resulted in any significant controversy.

12. Over the five-year course of this litigation, there have been times when opposing counsel has requested sanctions against Rivero Mestre. This Court has denied those requests because, though our lawyers have always zealously advocated on behalf of Dr. Wright—as we must—we also have always acted with respect towards this Court and its authority, including by being candid with the Court and acting in good faith. [*See* DE 277.].

13. I know that my colleagues made the original AEO designation in good faith. My firm also defended that designation in good faith and not for any improper purpose. For these reasons, I respectfully ask that the Court not enter sanctions against Rivero Mestre or any of its attorneys.

I declare under penalty of perjury that this declaration is true and correct. Executed on May 24, 2023, in Miami, Florida.

Andrés Rivero