# Exhibit C

## OPINION

1. I am asked to advise Dr Craig Wright regarding the confidential status under English law of personal and financial information belonging to his wife Ms Ramona Ang and to Ms Ang's adult children. I am asked this question in the context of enforcement proceedings against Dr. Wright following a judgment against him in the amount of US$143m in the Federal Court in Florida, USA. As part of those proceedings Dr. Wright has been ordered to file a "Fact information Sheet- Individual" (Form 1.977) which asks, in particular, for financial information relating to his spouse and adult children.

2. The starting point is of course that Ms Ang is a separate legal person to Mr Wright. She therefore possesses the same rights and remedies against him in respect of her confidential information as she possesses against any other person. As Lord Neuberger MR confirmed in Tchenguiz v Imerman [2010] EWCA Civ 908 at [82]:

   *The notion that a husband cannot enjoy rights of confidence as against his wife in respect of information which would otherwise be confidential as against her if they were not married, seems to us to be simply unsustainable. The idea that a husband and a wife should be regarded as a single unit in law was a fiction which the law has been abandoning for a long time.*[1]

3. The position is identical as regards Ms Ang's adult children, and would be identical even if Dr Wright was their biological or adopted father (which is not the case).

4. Under English law, confidentiality obligations arise where: (i) the information is confidential by nature, and (ii) a party has notice, and/or ought reasonably to know that the information is confidential: Attorney General v Guardian Newspapers Ltd (No 2) [1990] 1 AC 109 per Lord Goff of Chieveley at 281, Vestergaard Frandsen A/S v Bestnet Europe Ltd [2013] UKSC 31 at [23].

5. The English courts also recognise a right to privacy arising out of Article 8, European Convention on Human Rights. Where a person has a reasonable expectation of privacy, a sufficiently serious and unjustified interference with that privacy is a tortious misuse of

---

[1] See also the brief history of the development of the legal personality of spouses in Lady Hale's judgment (dissenting, though not on this issue) in Radmacher v Granatino [2010] UKSC 42 at [139] *et seq*.

private information: Campbell v Mirror Group Newspapers [2004] UKHL 22, Bloomberg LP v ZXC [2022] UKSC 5.

6. Information concerning personal finances is confidential by nature, and is protected by Article 8 ECHR: Tchenguiz at [76]:

    *Communications which are concerned with an individual's private life, including his personal finances, personal business dealings, and (possibly) his other business dealings are the stuff of personal confidentiality, and are specifically covered by article 8 of the Convention, which confers the right to respect for privacy and expressly mentions correspondence.*

7. In circumstances like these, where Ms Ang or her children did in fact treat their personal financial information as confidential against Dr Wright, and were known by him to do so, such information would therefore be confidential as against Dr Wright.

8. Dr Wright accordingly would have no rights to access the information in the absence of some positive legal obligation on Ms Ang or her children to disclose it. Tchenguiz at [69]:

    *It is of the essence of the claimant's right to confidentiality that he can choose whether, and, if so, to whom and in what circumstances and on what terms, to reveal the information which has the protection of the confidence.*

9. For Dr Wright to seek to access such information without the authority of the person to whom the confidential information belonged, irrespective of the ease of doing so, would *prima facie* constitute an actionable breach of confidence: Tchenguiz at [69].

10. Depending on the circumstances, Dr Wright might also place himself at risk of criminal liability, for example for theft, under s.1 Computer Misuse Act 1990 or under s.170 Data Protection Act 2018. Tchenguiz at [92-94], [102-104].

11. Furthermore, even if Dr Wright were authorised to possess or access confidential information belonging to Ms Ang or her children, any unauthorised disclosure of such information by Dr Wright to a third party would also *prima facie* amount to a breach of confidence. It may also amount to a misuse of private information, and/or give rise to a right to compensation under s.168 Data Protection Act 2018.

12. Depending again on the circumstances, Dr Wright might also place himself at risk of criminal liability under s.170 Data Protection Act.

13. Obligations of confidentiality can be qualified where disclosure is required under compulsion of law: Tournier v National Provincial and Union Bank [1924] 1 K.B. 461 at

2

473, 481.[2] However, at least as regards foreign court orders, the English courts treat this qualification as a question of balance rather than an absolute rule. They will closely scrutinise the requirements and effect of any foreign order: X AG v A Bank [1983] 2 All E.R. 464 at 478-479. Moreover, the Court of Appeal has recently reiterated that the "*proper, courteous, respectful method of obtaining evidence*" across different jurisdictions is the letter of request regime under the Hague Convention (Gorbachev v Guriev [2022] EWCA Civ 1270 at [59]).

14. If a foreign party to civil litigation wishes to obtain evidence from Ms Ang or her children, it should therefore issue a letter of request pursuant to that Convention and seek an order of the English courts for them to be examined under the Evidence (Proceedings in Other Jurisdictions) Act 1975. Insofar as the request relates to confidential information, the English court will again adopt a balancing exercise to determine how to far to give it effect: Re State of Norway's Application [1990] 1 A.C. 723 at 783 (CA), 810 (HL).

**DAVID CAVENDER KC**

One Essex Court,

Temple,

London EC4Y 9AR

25 May 2021

---

[2] That disclosure is required by English law is also a lawful basis for data processing under Schedule 2 Part 1 para 5 Data Protection Act, and most likely a defence to a claim for misuse of private information. Obviously, US law is of no application in England.