UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and W&K Info Defense Research, LLC<br><br>Plaintiffs,<br><br>v.<br><br>CRAIG WRIGHT<br><br>Defendant. | CASE NO.: 9:18-cv-80176-BB/BER |

**PLAINTIFF W&K INFO DEFENSE RESEARCH, LLC'S
RESPONSE IN SUPPORT OF SANCTIONS**

Plaintiff W&K Info Defense Research, LLC ("W&K"), files this response in support of this Court's Order to Show Cause. ECF No. [973].

**INTRODUCTION**

Rivero Mestre's misconduct regarding the AEO designation is not in dispute – they admit it. The only question is whether that misconduct is sanctionable and, if so, what is the appropriate sanction.

Specifically, Rivero Mestre *admits* it made the subject AEO designation without bothering to read the Confidentiality Order under which it was made. Robert Kuntz, who made the decision to include the designation in the first place, states "I did not examine the Confidentiality Order … in making the decision to designate [Wright's Form 1.977] the AEO."[1] Kuntz. Aff., ¶ 11, ECF No. [982-2]. The original designation was made on April 4, 2023. After W&K moved for sanctions

---

[1] Mr. Kuntz claims he joined the defense team in April 2022 primarily to work on Wright's appeal of the judgment entered in favor of W&K against him. Kuntz Aff., ¶ 5, ECF No. [982-2]. This is odd since Wright filed no such appeal. Instead, it seems that Mr. Kuntz's efforts, at least as of late, have been to further the efforts of Wright and Rivero Mestre to frustrate W&K's efforts to collect the judgment it holds against Wright.

1

and challenged the AEO designation, this Court issued an Order to Show Cause "why the AEO designation should not be stricken." In that Order, this Court specifically quoted from the AEO portion of the parties' Stipulated Confidentiality Order, which on its face clearly did not cover the information over which Rivero Mestre asserted AEO. Nevertheless, in response to that Order, rather than withdrawing their AEO designation, Rivero Mestre doubled down and attempted to justify the designation by arguing it was necessary because "Dr. Wright reasonably believes that, if Roche Freedman is permitted to share his private financial information outside of the law firm, it could result in the disclosure of that information to non-parties." ECF No. [969], at 2. Rivero Mestre did not even attempt in that filing to justify its AEO designation under the actual terms of the governing Confidentiality Order (for the obvious reason that it is not justifiable), instead relying on irrelevant, unfounded, and subjective beliefs of their client.

Further, there can be no dispute that Rivero Mestre's conduct has unreasonably multiplied this litigation. This brief, and others that preceded it on this issue, should have been wholly unnecessary. W&K is entitled to be compensated for the time and resources it has been forced to expend. Moreover, equally if not more important than compensating W&K for its increased costs resulting from this misconduct, imposition of sanctions here will deter Rivero Mestre from continuing its ongoing campaign of bad faith and harassing litigation tactics on behalf of Wright. Unfortunately, as detailed below, Rivero Mestre's conduct since judgment was entered against Wright has gone far beyond the bounds of zealous advocacy, and unfortunately has become a tool to advance their client's illegitimate scheme to frustrate collection of the judgment W&K holds against him.

**BACKGROUND**

Judgment-Debtor Wright strenuously resisted completing Form 1.977 (the "Form"), a standard document that judgment debtors are required to complete. These efforts ranged from refusing to complete any portion of the Form voluntarily, opposing a motion to compel compliance, appealing an Order requiring compliance, providing the "completed" form not to W&K's counsel but instead to his wife and ex-wife because they now claim to own W&K, and refusing to fill out almost all of the information required by the Form or produce any of the documents required to be submitted with it (essentially thumbing his nose at this Court's Orders despite Judge Bloom's Order that Wright's failure to *complete* the Form *would* result in Wright being held in contempt, ECF No. [952] at 5).[2] At every step, Wright's willful non-compliance was done through, and with the full support of his counsel, Rivero Mestre. Indeed, Rivero Mestre also represents Wright's current wife, Ramona Ang, who has been an active participant in Wright's scheme to frustrate efforts to collect W&K's $143 million judgment against him.

Another facet of Wright's scheme was to produce his "completed" Form with an Attorneys' Eyes Only ("AEO") designation. Taking Rivero Mestre and Wright at their word, this part of the scheme was *solely* a decision by Rivero Mestre; it was not done at the direction of their client. Hence, this Response focuses primarily on Rivero Mestre's conduct.

This Court has had to issue two Orders to Show Cause regarding the AEO designation. The first (ECF No. [967]) required Wright to justify the designation or have it stricken. Mr. Kuntz admits that the AEO designation was originally made without reading the Confidentiality Order. Indeed, it's unclear if Rivero Mestre read the Confidentiality Order *after* the Court's first Order to

---

[2] A more detailed discussion of Wright's non-compliance, including the participation of his wife and ex-wife will be more fully addressed at the July 6 hearing.

3

Show Cause (ECF No. [969]), because (i) their response only quotes the portions this Court included in its Show Cause Order, (ii) Mr. Kuntz's affidavit is silent on this issue, and (iii) we know that Mr. Rivero did *not* bother to read the Confidentiality Order before *he signed* the response because his Affidavit says he only did so *after* the Court issued a *second* Order to Show Cause directed at his Firm. Rivero Aff., ¶ 8, ECF No. [982-1].

As set forth herein, Rivero Mestre's initial argument to justify the AEO designation was that Freedman Normand Friedland LLP ("FNF") was a bad actor that could not be trusted, and so, regardless of whether the information properly fell within the scope of the Confidentiality Order's AEO clause (it clearly does not), AEO should apply. Indeed, after quoting the Order permitting AEO designation over "highly sensitive private *corporate* information," Rivero Mestre simply deletes the word "corporate" and argues that Wright's "personal" information should receive the same protection. ECF No. [969], at 1–2.

This insufficient response caused the Court to issue a second Order to Show Cause, this one specifically adding Rivero Mestre as a subject of the Court's directive. This second Order to Show Cause (ECF No. [973]) provided the impetus Messrs. Rivero and Kuntz apparently needed to actually read the Confidentiality Order. However, even after finally reading it and presumably seeing that the information on Wright's Form clearly does not fall under the ambit of information subject to an AEO designation, Rivero Mestre continued to try to justify their actions, essentially arguing that the Confidentiality Order should have contained different language. This is all the more remarkable considering both that Rivero Mestre "took the lead in preparing" (ECF No. [92] at 4) the Confidentiality Order and that the parties litigated whether AEO should be available for "non-public corporate financial information"; personal or private financial or other similar information was never considered as anything but Confidential. *See id.* (Mr. Rivero: "Plaintiffs

4

seek to limit the protection of the confidentiality order's attorney-eyes-only designation to trade secrets. Dr. Wright believes this added protection should extend to non-public corporate financial information related to his current businesses."); ECF Nos. [103] & [105] (minute entry resolving dispute and subsequent joint motion submitting Confidentiality Order, signed by Mr. Rivero); *see also, e.g.*, ECF No. [474] (ordering certain information be designated Confidential to protect "privacy and personal safety interests").

As set forth below, sanctions here are warranted and necessary to deter what has unfortunately become a pattern of flagrant misconduct and recalcitrance, both by Wright and his counsel.

### I. **Rivero Mestre's excuses for their initial AEO designation does not hold water.**

Rivero Mestre implicitly recognizes that the AEO designation is not consistent with the Confidentiality Order, but asks not to be sanctioned because Mr. Rivero's repeated assertions in his Affidavit that "in [his] experience" the subject information *should have been* included in that Order.

It should go without saying—but apparently not in this case—lawyers are not free to disregard a Court's Orders because, "in their experience," the Orders should be written differently.[3] Lawyers are free to seek to have a Court reconsider, revise or even vacate its Orders— they are not free to ignore them. *E.g.*, *In re Novak*, 932 F.2d 1397, 1400 (11th Cir. 1991) ("Generally, an individual must comply with a court's order, regardless of its validity, until it is reversed. Novak disregarded the district court's order based on his own evaluation of its correctness; while we agree with Novak, for reasons different from his, that the underlying order

---

[3] As set forth below, Rivero Mestre's position here is especially misplaced considering the Court the Confidentiality Order was principally ***drafted by them*** and this Court adopted their definition of AEO.

5

in this case was invalid, we will not allow him to ignore the order with impunity.") (affirming criminal contempt conviction); *Muhammad v. HSBC Bank USA, NA*, No. CIV.A. 13-0617-WS-M, 2014 WL 3860588, at *5 (S.D. Ala. Aug. 6, 2014) ("The Court is aware of no statute, rule or case law that would preclude a magistrate judge from taking such action, much less empower a litigant to ignore such an Order if she does not like its contents.").

Rivero Mestre principally argues that its AEO designation "was made in good faith based upon its legitimate and justified concern that Wright's income from nChain was private and sensitive financial information that customarily would not be disclosed in a public forum." ECF No. [982] at 1.

*First*, this is demonstrably untrue. Wright testified at trial regarding his salary at nChain: "***I've got a 162.5 British pounds salary per annum***, which is not the biggest in the company." Trial Day 9, at 69:2–3, ECF No. [845] (emphasis added). Setting aside that this is a different amount than is represented on the Form 1.977, Wright obviously does not consider his salary information to be sensitive, private, or confidential, and indeed, had already publicly disclosed it, notwithstanding the "volatile digital currency markets" (ECF Nol. [982] at 8) or that "a competitor might learn the compensation of nChain's Chief Scientist (Wright) and use that information to recruit scientists or other technology talent, including from nChain" (*id.* at 12).

*Second*, Rivero Mestre does not bother to address why its alleged concerns about Wright's salary information warranted their decision to designate the *entire* Form AEO, as opposed to requesting redaction of the information of concern.

*Third*, if their goal was to prevent disclosure, the lesser "Confidential" designation would have sufficed. Notably, this designation would also have been improper (but that would have required that they review the Confidentiality Order).

*Third*, contrary to Rivero Mestre's suggestions, it is *not* standard practice for personal financial information to be treated as AEO in a litigation. Indeed, the template confidentiality order posted to this Court's website does not even include an AEO designation by default.[4] Rivero Mestre's attempt to undermine the validity of the Confidentiality Order by characterizing it as unusual and outside the personal "experience" of its lawyers is especially outrageous because *they took the lead in drafting it*. ECF No. [92] at 4. Not only that, this Court actually resolved a dispute between the parties over what constituted AEO, which never even considered whether private or personal information, financial or otherwise, was AEO, because it categorically is not. ECF Nos. [103] & [105]. Rivero Mestre's decision to continue to attack the Confidentiality Order rather than accept responsibility for their conduct—and their own work product—only reinforces why sanctions are warranted.

*Fourth*, Rivero Mestre's "concerns" about FNF obtaining the information in question are disingenuous and non-sensical. As an initial matter, this Court has already properly found, in the context of similar allegations by Rivero Mestre about FNF that W&K's counsel "have been highly professional [and] ethical" (ECF No. 951, at 16), and the only conduct Rivero Mestre cites to support its absurd position is the alleged, unproven, conduct of a lawyer no longer practicing at FNF or representing the clients in this case. More importantly, their position is non-sensical. If the "concern" was the integrity of FNF receiving the information, the AEO designation did nothing to keep the information from FNF. If the "concern" was that FNF would publicly disseminate the information, there is nothing that an AEO designation accomplished that a confidential designation would not have. Instead, Rivero Mestre was hoping FNF would raise the designation with the

---

[4] https://www.flsd.uscourts.gov/sites/flsd/files/Confidentiality%20Order%20NDCA.PDF.

Court, to provide it with yet another chance to raise its disingenuous accusations about a former lawyer's alleged conduct.

Rivero Mestre's attempt to deflect attention away from its own obvious misconduct by slinging mud at FNF is unseemly, yet unsurprising as it has been going on for quite some time now. *See, e.g.*, ECF Nos. [900], [915], [922], [924], [929], [936], [943], [946], [947], [949], [969], [982].

## II. Rivero Mestre offers no excuse for persisting after the first Show Cause Order.

As set forth above, it remains unclear when anyone at Rivero Mestre bothered to read the Confidentiality Order in connection with their AEO designation. We do know that they did not do so *before* the designation was made and, if they did so prior to their first defense of it in response to the Court's first Order to Show Cause, they did not rely on it in defending that designation. This omission is particularly glaring given the relevant language from the Confidentiality Order was quoted in this Court's initial show cause order. In short, either Rivero Mestre failed to read the Confidentiality Order in response to the Court's first show cause order, or they actively chose to disregard it. Both scenarios warrant sanctions.

## III. The Court should impose sanctions Under 28 U.S.C. § 1927 to deter Rivero Mestre from continuing to unreasonably multiply these proceedings.

To impose sanctions under 28 U.S.C. § 1927, the Court must find that an attorney: (1) multiplied a proceeding, (2) in an unreasonable and vexatious manner, (3) thereby increasing the cost of the proceeding. *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1281-82 (11th Cir. 2010) (affirming § 1927 sanctions for voluminous errata sheet). An attorney "unreasonably and vexatiously" multiplies proceedings when their conduct is "tantamount to bad faith." *Id.* at 1282 (quoting *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007)). This "bad faith" standard is not subjective, but rather will be satisfied if conduct is "objectively

8

reckless." *Id*.; *see also Amlong*, 500 F.3d at 1240 ("The attorney need not intend to harass or annoy by his conduct nor be guilty of conscious impropriety to be sanctioned. It is enough that an attorney acts in disregard of whether his conduct constitutes harassment or vexation.") (quoting *Cruz v. Savage*, 896 F.2d 626, 632(1st Cir. 1990)).

To make this determination, the Court should "compare the conduct at issue with how a reasonable attorney would have acted under the circumstances." *Norelus*, 628 F.3d at 1282. A "reasonable attorney" would never have designated as confidential, much less AEO, information that their client testified to in open court. A reasonable attorney would revisit that decision after opposing counsel emailed asking if they would oppose a "motion to challenge the designation to reduce it to just 'Confidential,'" instead of just stating they would "oppose any motion to reduce the designation" three minutes later. Exhibit 1. And a reasonable attorney would be even less likely to persist in asserting such a designation after being expressly advised by the Court that it was categorically not susceptible to such a designation based on the language of the Confidentiality Order. And yet Rivero Mestre did all of these things and appear to admit they did so without even reviewing the Confidentiality Order through which the designation was made. This is not how reasonable attorneys conduct themselves, and was, at a minimum, objectively reckless and deserving of sanctions.

Rivero Mestre argues that even if their conduct was objectively reckless, it did not "multiply" the litigation because Plaintiff would have moved for sanctions anyways. ECF No. [982] at 13–14. It is true that Plaintiff moved for sanctions because of Wright's failure to complete the Form, but that does not mean these proceedings have not been multiplied as there has now been an additional round of motion practice surrounding the AEO designation itself. At a minimum, Plaintiff was forced to file a motion to seal, ECF No. [962], go to the trouble of redacting

9

the motion for public filing, ECF No. [963], file a response to Rivero Mestre's defense of their designation, ECF No. [970], and now, of course, to prepare this submission. That's four filings and accompanying work that would never have occurred absent the frivolous designation of the Form as AEO. Work that would never have to have been incurred if, on reading opposing counsel's email essentially offering to reduce the designation to "confidential," Rivero Mestre had read the order and agreed. Work that would not have been done if after the Court ordered Wright to show cause on the designation, they would have read the order and withdrawn the designation.

The costs associated with this multiplication might pale in comparison to, for example, the outstanding $143 million judgment against Wright, but that does not mean they are not worthwhile. Even more than recovering Plaintiffs' fees and costs on this issue, Plaintiff hopes the Court will impose sanctions to send the message that Rivero Mestre's reckless scorched-earth lawyering, in furtherance of a client who has repeatedly exhibited a willful disregard for the authority of the Court, will not be tolerated in this action going forward.

**IV.     The Court should impose sanctions under its inherent powers.**

Unlike sanctions imposed under § 1927, sanctions under the Court's inherent powers can only be imposed upon a finding of subjective bad faith. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017). Subjective bad faith may be established by direct evidence or "if an attorney's conduct is so egregious that it could only be committed in bad faith." *Id.* at 1224–25.

> Bad faith can be found in several instances. First, bad faith may be found where the court finds that a fraud has been practiced upon it, or that the very temple of justice has been defiled. Second, bad faith may be found where a party delays or disrupts the litigation, or hampers the enforcement of a court order. Third, the Eleventh Circuit has stated that bad faith may be found where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.

10

*Kozyrev v. Ponomarenko*, No. 19-CV-60497, 2020 WL 4818904, at *11 (S.D. Fla. Aug. 18, 2020) (Bloom, J.) (quoting *Barash v. Kates*, 585 F. Supp. 2d 1347, 1362 (S.D. Fla. 2006)).

While the threshold for imposing sanctions under the Court's inherent powers might be different, it is plainly still satisfied here. Rivero Mestre and its client knew that Wright's salary information was not confidential because Wright testified about it at trial. And they had to know that the remainder of the Form, which was largely not even filled out, could not be subject to any confidentiality designation let alone AEO. They recklessly made a designation without checking the Confidentiality Order itself, recklessly persisted in that designation after opposing counsel emailed, and after the Court ordered their client to show cause. Knowingly raising a frivolous argument constitutes subjective bad faith and thus is sanctionable under the Court's inherent powers.

V. **The Court should consider issuing another show cause order requiring Rivero Mestre to answer for its broader and continuing misconduct in these post-judgment proceedings.**

Plaintiff recognizes that the Court's order to show cause was specifically addressed to the AEO designation, and Rivero Mestre's decision to persist with the designation after the initial order to show cause. Accordingly, it would be improper for the Court to impose sanctions for any other conduct without having first put Rivero Mestre sufficiently on notice.

But the truth is that Rivero Mestre, since the entry of final judgment against its client (Judgment-Debtor Wright), has gone far beyond the bounds of zealous advocacy, and has orchestrated a scorched-earth strategy designed to frustrate the legitimate efforts to collect on that judgment. The fact that this campaign has been allowed to proceed, without consequence to Rivero Mestre, only invites further abuse and misuse of the rules. *See Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.,* No. CV 03-0597-PHX-MHM, 2009 U.S. Dist. LEXIS 131813, at *23 (D. Ariz. April 14, 2009) ("there comes a point when a defendant's zealous advocacy runs so contrary

to reality that such continuing reliance on its positions, without change or reevaluation of those positions, becomes reprehensible"; imposing sanctions) (Murguia, J., now 9th Cir. Chief Judge).

      A. <u>Rivero Mestre has engaged in a relentless campaign of frivolous, harassing, and unauthorized discovery.</u>

First, notwithstanding that there is no legitimate vehicle available for them to do so, Rivero Mestre has continued to serve harassing discovery requests and subpoenas. The discovery cutoff in this case was *May 1, 2020*. DE 441. While the Federal Rules do authorize post-judgment discovery in aid of execution, they only authorize a judgment *creditor*, not a judgment debtor. Fed. R. Civ. P. 69 ("In aid of the judgment or execution, the *judgment creditor* or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located.") (emphasis added).

Despite that, Rivero Mestre, on behalf of Wright, served requests for production on February 3, 2023, and three different third-party subpoenas on February 6, 2023, purportedly issued under the authority of this Court. That these requests and subpoenas were improper and unauthorized is obvious and settled law. *Edwards v. Speedway, LLC*, No. 18-23091-CIV, 2019 WL 13066872, at *2 (S.D. Fla. Aug. 27, 2019) ("This means that 'Rule 45 subpoenas ... may not be used to circumvent the Court's discovery deadline.'") (quoting *Dear v. Q Club Hotel*, LLC, 2017 WL 5665357, at *2 (S.D. Fla. May 18, 2017)); *nSight, Inc. v. PeopleSoft, Inc.*, No. 3:04CV3836 MMC (MEJ), 2006 WL 988807, at *3 (N.D. Cal. Apr. 13, 2006) ("Many courts have found that Rule 45 subpoenas sought after the discovery cut-off are improper attempts to obtain discovery beyond the discovery period.").

Besides being indisputably served long after the discovery cutoff, the discovery sought by Wright and his counsel are facially harassing because final judgment has already been entered

against Wright (and not appealed), so none of the information sought could possibly be relevant to any claims or defenses.

Continuing to pursue discovery after the entry of an unappealed final judgment is analogous to persisting despite knowing an action is time-barred, which is something for which Courts regularly impose sanctions. *E.g.*, *Steinle v. Warren*, 765 F.2d 95 (7th Cir. 1985) (affirming § 1927 sanctions where attorney commenced action knowing it was time-barred); *Ordower v. Feldman*, 826 F.2d 1569, 8 Fed. R. Serv. 3d 1005 (7th Cir. 1987) (§ 1927 sanctions affirmed for untimely service of complaint where attorneys knew it would be dismissed on grounds of untimely service).

While Rivero Mestre claims to have served this discovery in connection with their frivolous disqualification motions, that cannot alter the above analysis. Even if those motions were both filed in good faith (they were not) *and* discovery were still open, serving discovery requests in connection with the disqualification motions would be improper without first having obtained leave from the Court (which Rivero Mestre did not even seek). *See Hesco Bastion Ltd. v. Greenberg Traurig LLP*, 2009 WL 5216932, at *4 (D.D.C. Dec. 23, 2009) (denying disqualification-related discovery) ("Hesco states that it needs the documents it sought by the Rule 45 subpoena in order to 'obtain information discovery regarding [the] potential disqualification [of Greenberg].' However, Hesco offers no authority for the proposition that a Rule 45 subpoena may be utilized for the purpose of securing documents for such purpose; nor has the undersigned located any such authority.").

The improper and harassing discovery being served by Rivero Mestre and Wright under the purported authority of this Court, is also only a part of a broader campaign of frivolous and harassing discovery requests they have undertaken in purported connection with several state court

actions seeking to upset this Court's orders and the judgment in this case. As here, Rivero Mestre and Wright have pursued baseless disqualification-related discovery in those state actions, including serving multiple subpoenas for documents and deposition on former firm clients and executives of those clients, serving requests for admission on undersigned counsel (despite the firm not being a party to the lawsuit), and serving deposition subpoenas on current and former firm attorneys.

B. Rivero Mestre persists in advancing frivolous motions and defenses.

Advancing motions and defenses that lack merit constitutes sanctionable conduct. *E.g.*, *Yurovskiy v. Impex Point*, LLC, No. 18-81288-CIV, 2020 WL 4677311, at *7 (S.D. Fla. Aug. 12, 2020) ("The Court finds here that both Mr. Grant and Mr. Petrov have acted in bad faith and vexatiously…[and] have asserted non-meritorious, frivolous, and false arguments and statements for the obvious purpose of harassing Judgment Creditor, and to frustrate and delay these proceedings.").

Rivero Mestre has filed no less than five motions to disqualify FNF, one in the Eleventh Circuit (denied), one in this Court (denied), and three in state court (one denied, one in an action that was dismissed before a ruling on the motion, and one pending). Rivero Mestre also moved to disqualify Boies Schiller Flexner LLP ("BSF") (denied). And now Rivero Mestre is attempting to appeal this Court's order denying the motions to disqualify FNF and BSF to the Eleventh Circuit (which, again, already denied a motion to disqualify FNF), and is doing so without first seeking review from Judge Bloom. ECF No. [964].

"Counsel may 'multiply' proceedings by dragging them out as well as by filing too many papers." *Samuels v. Wilder*, 906 F.2d 272, 275 (7th Cir. 1990). This is precisely the type of war that Rivero Mestre has decided to wage now that their client is staring down a nine-figure judgment. The Court should put a stop to it by reminding counsel of their professional obligations.

14

This conduct is especially problematic because of the nature of these motions, and Courts regularly sanction counsel for presenting disqualification motions for improper purposes (as Rivero Mestre has now done on six occasions and one appeal). *Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (quoting *Rice v. Baron,* 456 F.Supp. 1361, 1370 (S.D.N.Y.1978)) ("Because of this potential for abuse, disqualification motions should be subjected to "particularly strict judicial scrutiny"; affirming imposition of sanctions under § 1927 against defense counsel and holding defense motion to disqualify plaintiff's counsel was meritless, was brought solely for tactical reasons, and was brought in bad faith); *Glover v. Libman*, 578 F. Supp. 748, 769 (N.D. Ga. 1983) ("The court, however, finds . . .the motion for disqualification was brought solely for tactical reasons, and not for any sensitivity to ethical concerns. This court firmly believes that such conduct cannot be condoned and in fact warrants sanctions of its own."); *N. Am. Foreign Trading Corp. v. Zale Corp.*, 83 F.R.D. 293, 297 (S.D.N.Y. 1979) (imposing sanctions under § 1927 for frivolous motion to disqualify); *Wold v. Mins. Eng'g Co.*, 575 F. Supp. 166, 167 (D. Colo. 1983) (same).

But it is not just the disqualification motions. Rivero Mestre has advanced myriad frivolous objections and defenses, including in their opposition to the motion to compel completion of Form 1.977. *E.g.*, ECF No. [939] at 2 ("Dr. Wright's first argument is, at best, a frivolous exercise in meaningless semantics."); *see also* ECF No. [957] at 2 (where Rivero Mestre nevertheless repeated this argument).

Their recent filings also include increasingly bold misrepresentations about the record in this case, most egregiously the false attribution of statements about W&K's ownership to Ira Kleiman. *See* ECF No. [929] at 2 (misrepresenting Ira Kleiman's statements); ECF No. [935] at 2–3 (repeating misrepresentations); ECF No. [942] at 7–10 (explaining why these were

15

misrepresentations); ECF No. [943] at 1, 10 (repeating misrepresentations); ECF No. [946] at 1–2, 7 (repeating misrepresentations); ECF No. [947] at 2 (repeating misrepresentations); ECF No. [952] at 5–8 (repeating explanation of why these were misrepresentations).

In fact, Judge Bloom's June 6 Order found precisely these misrepresentations to be part of a coordinated campaign by Rivero Mestre as counsel for Wright and Ang (and Huck as their selected counsel to act on behalf of W&K):

> Indeed, Old Counsel have convincingly shown that all three of the Responses speak in unison, even when they misrepresent the record in this case. ECF No. [942] at 7 (showing how Ramona Ang, Lynn Wright, and Huck all transformed Ira Kleiman's statement that he was a 50% owner of Coin-Exch. into a purported admission that he is only a 50% owner of W&K).

ECF No. [986] at 4.

Lying to the Court is, of course, another category of sanctionable conduct. *E.g.*, *Taverna Imports, Inc. v. A&M Wine & Spirits, Inc.*, No. 15-24198-CIV, 2018 WL 11227736, at *6 (S.D. Fla. Dec. 20, 2018) ("In fact, that false affidavit is still part of the record, as Plaintiff has never rescinded it or given official record notice that it is false. This behavior demonstrates vexatious litigation and it caused the proceedings to be unreasonably multiplied.").

> C. <u>Rivero Mestre has orchestrated a scheme to wrest control of W&K, terminate its counsel, and relieve Wright of his judgment debt.</u>

Perhaps Rivero Mestre's most audacious misconduct surrounds its actions vis-à-vis W&K. As a reminder, Rivero Mestre represents Wright in litigation brought against him by W&K. That case started in 2018 and was tried at the end of 2021. A judgment was entered in favor of W&K, and against Wright, for over $143 million.

But, with the eager assistance of Rivero Mestre, fortune shone brightly on Wright (at least if you credit the positions advanced by Rivero Mestre, Wright, and his family members). According to them, the whole litigation was one big misunderstanding and it turns out W&K was

16

actually owned by Wright's ex-wife and wife, and neither ever wanted to sue Wright. So Rivero Mestre presumably prepared but definitely delivered "Written Consents of the Members of W&K Info Defense Research LLC" asserting ownership of W&K by Wright's wife and ex-wife, and purporting to fire W&K's counsel that had represented W&K throughout the litigation. ECF Nos. [929-1], [929-2]. They even hired "new counsel" for W&K, someone with no involvement in the litigation and, other than filing a Notice of Appearance and responding to a motion to strike that notice (which unsurprisingly adopted the Wright family's arguments), has sat silently in these proceedings since he was "hired" by Wright's current and former wives to represent W&K. This all sounds preposterous . . . because it is.

But not to fret, at least the interest of Wright's wife is being advanced by . . . Rivero Mestre, who now represents her in her efforts to wrest control of W&K. Yes, Rivero Mestre represents the judgment debtor and now, if you credit the scheme concocted by Wright and Rivero Mestre, they also represent the judgment creditor. Astounding! As Judge Bloom observed, "[i]t is difficult to imagine a clearer conflict of interest than simultaneous representation of a judgment debtor and a woman who claims to be a judgment creditor." ECF No. [986] at 4. Yet, to date there has been no consequence for these actions. So the train moves on and the filings in this case continue to multiply.

As this Court has presumably concluded by now, Wright is a bad actor – full stop. He is a serial perjurer and forger who has exhibited contempt and disregard for this Court's authority at every turn. He stole $100 million from W&K. Unfortunately, unless and until there are consequences for their actions, Rivero Mestre seems all too pleased to continue to enable him.

For these reasons, W&K requests the Court issue another Order to Show Cause why Rivero Mestre should not:

(1) be **disqualified** given their "simultaneous representation of a judgment debtor [(Wright)] and a woman who claims to be a judgment creditor [(Ang)]," where "[i]t is difficult to imagine a clearer conflict of interest." ECF No. [986] at 4;

(2) be **sanctioned** for

    a. serving unauthorized discovery under the purported authority of this Court;

    b. advancing frivolous and false arguments to delay collection in this case, including one the Court deemed a "frivolous exercise in meaningless semantics" and one the Judge Bloom stated was a "misrepresentation" which "transformed" a statement by Ira Kleiman into something he never said;

Dated: June 7, 2023

Respectfully submitted,

By: /s/ *Velvel Devin Freedman*
Velvel (Devin) Freedman, Esq.
FREEDMAN NORMAND FRIEDLAND LLP
1 SE 3rd Ave., Suite 1240
Miami, Florida 33131
vel@fnf.law

Joseph Delich
Stephen Lagos
FREEDMAN NORMAND FRIEDLAND LLP
99 Park Avenue, Suite 1910
New York, New York 10016
jdelich@fnf.law
slagos@fnf.law

Andrew S. Brenner, Esq.
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd Street, Suite 2800
Miami, Florida 33131
abrenner@bsfllp.com

>Maxwell V. Pritt, Esq.
>**BOIES SCHILLER FLEXNER LLP**
>44 Montgomery Street, Floor 41
>San Francisco, CA 94104
>mpritt@bsfllp.com
>
>*Counsel to Plaintiffs Ira Kleiman as Personal Representative of the Estate of David Kleiman and W&K Info Defense Research, LLC.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 7, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

>*/s/ Velvel (Devin) Freedman*
>VELVEL (DEVIN) FREEDMAN