UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:18-cv-80176-BB/BR

IRA KLEIMAN, as personal representative of
the estate of David Kleiman, and W&K INFO
DEFENSE RESEARCH, LLC,

      Plaintiffs,

v.

CRAIG WRIGHT,

      Defendant.

_____/

### RIVERO MESTRE LLP'S REPLY TO W&K INFO DEFENSE RESEARCH, LLC'S RESPONSE TO ORDER TO SHOW CAUSE

Rivero Mestre LLP ("Rivero Mestre") files this reply to W&K Info Defense Research LLC's ("W&K") response ("W&K Response") [DE 987] to the Court's May 5, 2023 Order on Motion for Sanctions and Order to Show Cause (the "May 5 OSC") [DE 973] and in further support of its argument that Rivero Mestre should not be sanctioned under either 28 U.S.C. § 1927 or the Court's inherent powers.

### INTRODUCTION

As set forth in Rivero Mestre's response to the May 5 OSC [DE 982], Rivero Mestre did not designate Dr. Wright's Fact Information Sheet ("FIS") as highly confidential or "Attorney's Eye's Only" ("AEO") in bad faith under the terms of the Stipulated Confidentiality Order ("CO") entered in this case in February 2019. [DE 105-1]. The W&K Response argues in large part that, while Rivero Mestre's attorneys offered evidence of their lack of **subjective** bad faith in designating the FIS as AEO, the Court should still sanction Rivero Mestre under 28 U.S.C. § 1927

because its attorneys' conduct was **objectively** unreasonable irrespective of their subjective intent. W&K's argument, however, is inconsistent with the facts and applicable law.

W&K bases its argument for Section 1927 sanctions primarily on its incorrect inference, from the declarations of Andrés Rivero ("Rivero Declaration") [DE 982-1] and Robert J. Kuntz ("Kuntz Declaration") [DE 982-2], that no attorney from Rivero Mestre reviewed the CO before responding to the Court's April 20, 2023 Order to Show Cause ("April 20 OSC"). In the declaration of Rivero Mestre attorney Amy C. Brown—submitted in rebuttal to W&K's incorrect inference and in support of this reply—Ms. Brown attests that she reviewed the CO before responding to the Court's April 20 OSC and that, even though she misinterpreted the AEO provision, she did not do so in bad faith.

In addition, notwithstanding that the May 5 OSC is limited to the AEO issue, W&K devotes seven pages (pages 11–17) of its response to new grievances that have **nothing** to do with the AEO designation and are outside the scope of the May 5 OSC. Based on its new allegations—which largely concern Dr. Wright and Rivero Mestre's positions in other state and federal courts against plaintiffs—W&K seeks to poison the well against Rivero Mestre by asking the Court to issue another order to show cause on these irrelevant issues. The Court, however, should reject W&K's transparent attempt to expand the May 5 OSC beyond the specific issue the Court ordered Rivero Mestre to address, *i.e.*, the propriety of the AEO designation and maintaining such designation until the Court overruled it.

#### ARGUMENT

A. **Rivero Mestre Did Not Unreasonably or Vexatiously Multiply These Proceedings in Violation of Section 1927**

The W&K Response points out that neither the Rivero Declaration nor the Kuntz Declaration explicitly states whether any Rivero Mestre attorney reviewed the CO before filing Dr. Wright's response to the April 20 OSC. [DE 987 at 3–4, 8.] From this, W&K infers the negative and argues that the Court should sanction Rivero Mestre because it "failed to read the Confidentiality Order in response to the Court's first show cause order, or they actively chose to disregard it." [*Id*. at 8.] But W&K's assertion is factually incorrect.

As set forth in her declaration, Ms. Brown attests that **she reviewed** the CO—under extraordinary circumstances—on April 26, 2023, while she was preparing a supplemental response to the Court's April 20 OSC. (*See* Declaration of Amy C. Brown, attached as Exhibit 1, at ¶ 15 ("Brown Decl.")).[1] In her declaration, Ms. Brown acknowledges she interpreted the AEO criteria in the CO (albeit incorrectly) as covering Dr. Wright's salary from nChain as "private financial compensation" received from a commercial entity in a highly competitive financial industry. (*Id*.) But Ms. Brown's mistaken interpretation, particularly under the exceptional circumstances set forth below, is not a basis for sanctions under Section 1927.

Section 1927 permits the imposition of sanctions against an attorney **only** if all three criteria are met: the attorney must "(1) engage in unreasonable and vexatious conduct; (2) this conduct must multiply the proceedings; and (3) the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct." *McMahan v. Toto*, 256 F.3d 1120, 1128 (11th Cir. 2001).

---

[1] The corrected Declaration of Robert J. Kuntz, Jr., which only corrects paragraph 5 of his prior declaration submitted on May 24, 2023 [DE 982-2], is attached as Exhibit 2.

The intent of Section 1927 is to sanction attorneys who "willfully abuse the judicial process by conduct tantamount to bad faith." *Bertin v. Zadok Real Est. Holdings, LLC*, No. 10-24508, 2012 WL 13012463, at *11–12 (S.D. Fla. Feb. 3, 2012), *report and recommendation adopted*, 2012 WL 13012422 (S.D. Fla. Feb. 23, 2012). In this regard, Section 1927 is **"penal"** in nature. *Gilroy v. Baldwin*, No. 16-14521, 2021 WL 6427476, at *6 (S.D. Fla. Dec. 15, 2021) (Reinhart, J.), *report and recommendation adopted*, 2022 WL 112221 (S.D. Fla. Jan. 12, 2022). As a result, the courts **"strictly construe"** Section 1927's three prongs when evaluating an attorney's conduct. *See Peterson v. BMI Refractories*, 124 F.3d 1386, 1395 (11th Cir. 1997).

Though Section 1927 requires courts to evaluate whether an attorney's conduct was "unreasonable and vexatious" under an objective standard, courts still must consider whether an attorney **intended** to multiply the proceedings, and what the attorney's **subjective** state of mind was when the attorney engaged in the conduct at issue. *See Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1241 (11th 2007). As the Eleventh Circuit explained:

> [A] district court may impose sanctions for egregious conduct by an attorney even if the attorney acted without the specific purpose or intent to multiply the proceedings. **That is not to say the attorney's purpose or intent is irrelevant. Although the attorney's objective conduct is the focus of the analysis, the attorney's <u>subjective state of mind is frequently an important piece of the calculus</u>, because a given act is more likely to fall outside the bounds of acceptable conduct and therefore be unreasonable and vexatious if it is done with a malicious purpose or intent**.

*Id*. at 1241 (internal quotation marks omitted) (emphasis added); *see also Agudelo v. Padron*, No. 18-22612-Civ, 2019 WL 4694145, at *3–4 (S.D. Fla. July 8, 2019) (declining to impose sanctions under Section 1927 and noting that, while the standard is objective, **attorney's subjective state of mind and intent is part of the evaluation**).

Applying these principles, imposing punitive, Section 1927 sanctions against Rivero Mestre under the extraordinary circumstances that occurred at the firm on April 25-26 is not

justified. According to Ms. Brown, after a discussion with Mr. Kuntz, Ms. Brown reviewed the AEO provision of the CO and interpreted it to apply to Dr. Wright's personal financial information. (Brown Decl. at ¶ 15.) Although Ms. Brown's interpretation was incorrect, Ms. Brown's conduct was **objectively reasonable** for two reasons.

First, Ms. Brown only joined Rivero Mestre as a full-time attorney in September 2022, after performing work for the firm on a part-time basis since the summer of 2021 and, thus, was relatively new to the firm—and, similarly, relatively new to Dr. Wright's representation. (Brown Decl. at ¶¶ 2–3.) Because of this, Ms. Brown lacked the institutional knowledge of the February 2019 CO and the negotiations that led to its formation and scope. (*Id.* at ¶ 17.) When first designating the FIS as AEO on or about April 4, 2023, the Rivero Mestre attorneys who had been primarily responsible for the day-to-day decision making regarding Dr. Wright's representation and had first-hand knowledge of the negotiations that led to the CO—namely, Amanda McGovern (now deceased) and Zaharah Markoe (no longer with the firm on April 4, 2023)—were not available to assist in that evaluation on April 26. (*Id.* at ¶ 3.)

Second, on the very day that Rivero Mestre's response to the April 20 OSC was due, *i.e.*, April 25, the attorneys at Rivero Mestre learned the tragic news that their partner and colleague, Amanda McGovern, had died. (Brown Decl. at ¶¶ 12–13.) Ms. Brown and other attorneys at the firm were in total shock. (*Id.*) While Ms. McGovern had been ill for some time with what the firm understood was "long COVID," none of the attorneys at Rivero Mestre knew that Ms. McGovern was terminally ill before learning of her death. (*Id.*) The news of Ms. McGovern's death greatly impacted and upset Ms. Brown. (*Id.* at ¶¶ 13–14.) Though Ms. Brown had only been with Rivero Mestre as a full-time attorney since September 2022, Ms. Brown had formed a personal connection

5

with Ms. McGovern as a contract attorney in 2021, joined the firm full-time based in part on that connection, and viewed Ms. McGovern as a mentor. (*Id.*)

On April 26, 2023, the morning after learning of Ms. McGovern's death, Ms. Brown first reviewed the CO in preparing a supplemental response to the April 20 OSC. (*Id.* at ¶ 15.) Understandably, Ms. Brown was emotionally taxed and distracted when she reviewed the AEO provision and lacked the institutional knowledge of the CO's scope and negotiation. (*Id.* at ¶¶ 17–18.) Considering these extraordinary circumstances—and particularly, Ms. Brown's **subjective state of mind** at the time of the conduct in question—Rivero Mestre's decision on April 26 to defend the AEO designation in response to the April 20 OSC until the Court overruled the designation on May 5, **cannot be deemed "unreasonable and vexatious" or subjectively intended to "multiply the proceedings."** *See Denny's Inc.*, 500 F.3d at 1241 ("the attorney's subjective state of mind is frequently an important piece of the calculus"); *Peer v. Lewis,* 606 F.3d 1306, 1314 (11th Cir. 2010) **("[S]anctions are not appropriate under section 1927 because [attorney] did not delay the judicial proceedings** after he filed the complaint." The attorney's alleged bad-faith conduct "**all [occurred] within a reasonable amount of time**" and **lasted "two months**" before he withdrew as counsel). This is especially true given that Ms. Brown was interpreting the CO—with which she had no prior familiarity—in the context of a firm tragedy that personally impacted her. *See Fox v. Palm Coast Plaza, Inc.,* No. 09-80097, 2010 WL 472909, at *3 (S.D. Fla. Feb. 5, 2010) ("**The Court finds that sanctions pursuant to § 1927 are also not warranted** . . . [T]he Court finds that plaintiff's **counsel's conduct does not rise to the level of bad faith**. The evidence shows that **[counsel] did not respond to a series of e-mails, but it appears that her failure was related to a <u>personal tragedy</u>. Mere negligence is not bad faith**.") (all emphasis added). Moreover, the "delay" occasioned by Ms. Brown's misinterpretation of the

6

CO lasted all of 15 days, at which time the Court issued its May 5 OSC. That short delay does not amount to a "vexatious" multiplication of the proceedings within the meaning of Section 1927.

### B. The Court Should Reject the New, Irrelevant, and Inflammatory Allegations in W&K's Response and Its Request for "Another Order to Show Cause"

The May 5 OSC directed the parties to brief the single issue of whether Dr. Wright and Rivero Mestre should be sanctioned for the AEO designation it assigned to the FIS. [DE 973 at 11 ¶ 2.] Ignoring the limited scope of the May 5 OSC, W&K uses seven pages of its response to allege **new and irrelevant facts** and request "another order to show cause" based on Rivero Mestre's litigation conduct having nothing to do with the AEO designation at issue—and much of which consists of Rivero Mestre's filings and discovery requests in other state and federal courts. Accordingly, the Court should reject the extraneous part of W&K's Response (pages 11–17) that, by W&K's own admission, disregards the scope of the May 5 OSC and seeks new relief.[2]

In support of W&K's improper assertion of new facts and request for new relief, W&K spends seven pages accusing Rivero Mestre of "orchestrating" what it describes as "a scorched-earth strategy designed to frustrate the legitimate efforts to collect on [the W&K] judgment." [DE 987 at 11.] This "campaign," as W&K calls it, purportedly consists of Rivero Mestre: (1) filing motions to disqualify Freedman Normand & Friedland (the "Freedman Firm") in this **and other courts;** (2) service of discovery requests in support of its motions to disqualify in this **and other courts**; and (3) pursuing litigation **in state court** to determine the ownership structure of W&K—

---

[2] W&K's arguments in response to RM's response to the May 5 OSC violate the long-standing principle prohibiting parties from raising new arguments or introducing new evidence after the opposing party's response. *Cf. Lage v. Ocwen Loan Servicing LLC*, 145 F. Supp. 3d 1172, 1181 (S.D. Fla. 2015), *aff'd*, 839 F.3d 1003 (11th Cir. 2016) ("[A] reply memorandum [to the opposing party's response] may not raise new arguments or evidence, particularly where the evidence was available when the underlying motion was filed and the movant was aware (or should have been aware) of the necessity of the evidence.") (internal quotation marks omitted).

a question this Court has found belongs **in state court**. [DE 950, 986.] While unequivocally irrelevant to, and beyond the scope of, the May 5 OSC, Rivero Mestre's litigation conduct described in the W&K Response consists of litigation decisions and judgment calls that it made on behalf of Dr. Wright and do not support an award of Section 1927 sanctions against Rivero Mestre—especially where the alleged conduct has occurred largely in cases **not before this Court**.

## CONCLUSION

For the reasons set forth above, Rivero Mestre requests that the Court not impose sanctions against the firm or its attorneys under either Section 1927 or the Court's inherent powers.

Respectfully submitted,

RABIN KAMMERER JOHNSON
1601 Forum Place, #201
West Palm Beach, FL 33401

By: /s Adam T. Rabin
    Adam Rabin
    Florida Bar 985635
    Christopher Kammerer
    Florida Bar 42862
    Havan M. Clark
    Florida Bar 1026390
    arabin@rkjlawgroup.com
    ckammerer@rkjlawgroup.com
    hclark@rkjlawgroup.com

**CERTIFICATE OF SERVICE**

I certify that on June 20, 2023, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

/s Adam T. Rabin
Adam T. Rabin