# EXHIBIT 5

C. S. WRIGHT<br>
RESPONDENT<br>
5TH<br>
CSW5<br>
6 NOVEMBER 2020

Claim No. CL-2018-000386

**IN THE HIGH COURT OF JUSTICE**
**BUSINESS AND PROPERTY COURTS OF ENGLAND AND WALES**
**COMMERCIAL COURT (QBD)**

BETWEEN:

**MRS RAMONA ANG**

**CLAIMANT**

-AND-

**RELIANTCO INVESTMENTS LIMITED**

**DEFENDANT / APPLICANT**

-AND-

**DR CRAIG STEVEN WRIGHT**

**RESPONDENT**

---

**FIFTH WITNESS STATEMENT OF CRAIG STEVEN WRIGHT**

---

I, Craig Steven Wright, of 21 Harebell Hill, Cobham, Surrey KT11 2RS WILL SAY AS FOLLOWS:

1. I am a computer scientist, academic, economist, programmer and businessman resident in England. I am the husband of the Claimant to these proceedings, Ms Ramona Ang, to whom I refer throughout this statement as either "Ramona" or "my wife". I am the Respondent to this application but am not a party to the underlying proceedings between my wife and Reliantco.

2. The facts and matters set out in this witness statement are true to the best of my information and belief. Where I refer to information supplied by others, the source of

- 1 -

the information is identified; facts and matters derived from other sources are true to the best of my knowledge and belief.

3. This witness statement has been prepared by me with the assistance of my lawyers, SCA ONTIER LLP ("**SCA**"), who also act for Ramona in the proceedings, over telephone calls and email communications. No privilege is intended to be waived by my reference to these communications nor by my reference anywhere in this witness statement to any advice I have received in the course of preparing it.

4. I make this witness statement, my fifth in these proceedings, in answer to the application by the Defendant ("**Reliantco**") dated 23 October 2020 seeking (i) a stay of execution of paragraph 6 of the Order of Mr Peter MacDonald Eggers QC (sitting as a Deputy High Court Judge) dated 14 September 2020 (the "**Costs Order**") ("**the Stay Application**") and (ii) an order varying the Costs Order ("**the Variation Application**"). The Costs Order was made following the effective total dismissal of Reliantco's application dated 22 July 2020 for non-party disclosure of documents said to be in my possession (the "**NPD application**").

5. There is now produced and shown to me a paginated bundle of documents marked 'CSW5'. References to documents in this witness statement are to Exhibit CSW5 unless otherwise stated.

6. I refer in this witness statement to the Eighth Witness Statement of Lydia Danon dated 23 October 2020 in support of the Application as "**Danon 8**" for ease of reference. I refer to documents exhibited to Danon 8 in the form "**LMD8, p.x**" with 'x' meaning the page number of Exhibit LMD8.

7. On 3 November 2020, Mr Justice Butcher (the "**Trial Judge**") directed that the Stay Application be determined on paper with my written submissions to be filed by 12 noon on Thursday 5 November 2020[1]. Those submissions were filed as directed (see the email and letter from SCA to the Court dated 5 November 2020 at **CSW5, p. 1-7**). Reliantco's submissions in reply are due to be filed at 12 noon on Friday, 6 November 2020. This

---

[1] This direction was formalised in the Trial Judge's Order dated 5 November 2020 **[CSW5, p. 8-9]**.

statement was prepared in advance of receiving those submissions and does not respond to any matters raised by Reliantco in those further submissions.

### A. MY POSITION IN BRIEF

8. The points I will make in answer to the Variation Application are brief:

    8.1. Reliantco invites the Court to shine a bright but very narrow spotlight on one aspect of the NPD application and penalise me in costs for my alleged conduct in opposing the entirety of the NPD application. In so doing it invites the Court to ignore the Deputy Judge's findings on the NPD application in his judgment[2] (the "**NPD Judgment**") [CSW5, pp. 10-22]. The bulk of Reliantco's NPD application was dismissed because (i) the manner in which Reliantco made its NPD application was a wide-ranging request for me to conduct a disclosure exercise and the Court determined that it did not have jurisdiction to make the orders sought; and (ii) Reliantco could and should have made the NPD application earlier and in the proceedings rather than against me as a non-party. My opposition to the NPD application was justified and reasonable and the Deputy Judge was right to order that Reliantco pay my costs;

    8.2. the matters complained of by Reliantco relate to the part of Reliantco's NPD application which was in fact successful. It appears that the Deputy Judge has therefore already taken that partial success into account when making the Costs Order and assessing my costs. Reliantco's success on this application would not put Reliantco in a better position regarding the costs of the NPD application than it is already in;

    8.3. the allegations raised by Reliantco as regards my conduct are wrong and improper and my evidence in answer to the NPD application on the issue of BT invoices was not untrue as is alleged; and

    8.4. in any event, the parties and the Court are in the same position as they would now be in had I taken the approach which Reliantco alleges I should have.

---

[2] [2020] EWHC 2529 (Comm)

9. My evidence below is mostly directed at the third and fourth points above. I am advised - without waiving any privilege - that the remaining points are more properly left to submissions). However, at the outset, I would like to make clear that I consider Reliantco's Variation Application to be disproportionate and an unnecessary use of the Court's time and resources. It ignores the fact that Reliantco's NPD application sought documents under two extremely broad categories: (i) documents relating to DeMorgan Limited; and (ii) documents relating to the VPN at 7 Oak Road. The NPD application insofar as it related to the *first* broad category of documents was dismissed on grounds entirely unrelated to the isolated points of my evidence which Reliantco now takes issue with. That evidence related only to the *second* broad category of documents sought by Reliantco on the NPD application. Therefore, even if the Court accepts everything that Reliantco says in Danon 8 about my evidence and my conduct and discounts my evidence below there is no basis on which the Costs Order could be reduced to zero.

## B. MY RESPONSE TO THE ALLEGATIONS IN DANON 8

### *(i)  Paragraphs 16-27 of Danon 8*

10. My evidence in answer to the NPD application was not untrue as alleged. The statements at: (i) paragraph 52 of my first witness statement dated 3 July 2020 ("**Wright 1**"); (ii) paragraph 45 of my second witness statement dated 18 August 2020 ("**Wright 2**") in answer to the NPD application; and (iii) my disclosure statement dated 1 October 2020 ("**Disclosure Statement**") following the Order of the Deputy Judge made on the NPD application, are accurate.

11. I do not accept the point made at paragraphs 23 and 24 of Danon 8 that that there were corrections to be made to my evidence and that it was false. I had referred in paragraph 45 of Wright 2 **[LMD8, p.34]** to addressing being provided by the "*ARNet provider organisation*", meaning RIPE. "*ARNet provider organisation*" is another way of describing a Regional Internet Registry (RIR) and as I explained in my Disclosure Statement, RIPE is "*one of the five Regional Internet Registries (RIRs) that allocates and registers blocks of internet number resources (IPv4 and IPv6 addresses) to Internet Service Providers (ISPs)*" **[LMD8, p.63]**. My not having given further detail regarding

RIPE at that time does not amount to a "failure" nor that my evidence was false as Reliantco alleges.

12. I do not accept the suggestion at paragraph 26 that Reliantco's NPD application would have proceeded any differently had I recalled further detail about the addressing provided by RIPE at the time of Wright 2. There is nothing to suggest that it would have, nor that a different costs order would have been made. Reliantco's NPD application sought "No order as to costs" from the start (see paragraph 6 of the draft order which accompanied the NPD application at **CSW5, pp. 23-25**).

13. The only point raised in Danon 8 which requires clarification is that at paragraph 18.2 and the reference in the letter of instruction from SCA to Mr Douglas on 30 October 2020 **[LMD8, p. 57]** that "*BT do not supply IP addresses to Dr Wright. He used RIPE (and others) going back to the 1980s.*". As I informed the Court during my evidence at trial[3] BT did and do supply some IP addresses (as part of the provision of commercial fibre services). However, I do not accept the strident nature of Reliantco's criticism of my conduct at or following the NPD application given that I took steps to ensure that the parties and the Court were put in the proper position. The search which I instructed SCA to conduct on my behalf included invoices from BT *and* RIPE. My Disclosure Statement sets out the extent of the search which was conducted, which included documents responsive to the following search terms **[LMD8, p.63]**:

> "*a. "British Telecommunications"*
> *b. "btlocalbusiness\* (where '\*' is a wildcard to include any suffix)*
> *c. "bt.com"*
> *d. "C01N"*
> *e. "RIPE"*
> *f. "RIPE-NCC""*

14. I therefore do not accept that I acted improperly, far less that I sought to gain an advantage from that alleged improper conduct. Reliantco has not been prejudiced as a result of the way my evidence was presented in answer to the NPD application or my subsequent actions. The practical reality is that the search I conducted and the documents I disclosed

---

[3] Transcript Day 3, 67:13-21

to Reliantco would have been identical had paragraph 45 of Wright 2 included a reference specifically to RIPE (rather than the less specific reference to "ARNet provider organisation"), and an order been made that I disclose e.g. "*invoices from BT and RIPE*".

(ii) **Paragraph 28 of Danon 8**

15. I have already responded to the points raised at paragraph 28 of Danon 8 regarding the evidence which I gave at trial in the letter from SCA to CYK dated 19 October 2020 exhibited at **LMD8, p.76**. I repeat here the matters set out in that letter:

    15.1. when I stated in my evidence at trial that I had "BT invoices" I was referring to BT invoices for products and services other than in relation to the leasing of IP addresses;

    15.2. I conducted a reasonable search for invoices from BT in relation to the leasing of IP addresses as required by paragraph 1a of the NPD Order. The extent of that search is set out in clear terms in my Disclosure Statement;

    15.3. my reasonable search did yield certain documents from BT; however, none were invoices from BT in relation to the leasing of IP addresses on the network at 7 Oak Road (instead they related to other products and services);

    15.4. my reasonable search also yielded the RIPE invoices, which did relate to the leasing of IP addresses;

    15.5. I therefore disclosed those invoices to assist the Court; and

    15.6. I have no invoices from BT in relation to the leasing of IP addresses on the network at 7 Oak Road.

16. I have nothing to add to the evidence which I gave to the Court at the trial.

*(iii) Paragraphs 29-34 of Danon 8*

17. Reliantco alleges at §§29-34 of Danon 8 that my conduct *"gamed the expert evidence process"* and *"took unfair advantage of* [my] *position as a non-party"*: Danon 8, §34. This is incorrect and ignores the practical reality of what was happening at the relevant time in hard fought proceedings between it and my wife. At the time of the NPD application there was no application for the parties to rely on expert evidence (that application was issued by Reliantco on 24 August 2020) and no expert report (Reliantco served its expert report on my wife on Sunday, 13 September 2020, the day before the hearing of the NPD application on Monday, 14 September 2020). It is not unusual, nor should it invite criticism, that I considered matters further as the issues in my wife's case developed.

18. Reliantco seek to play down my status as a non-party (describing it as *"technically correct"* but *"substantively meaningless"*: Danon 8, §34.3) but it cannot be so easily overlooked. In short, this is my wife's claim, not my own. I am a busy professional and have no desire to be involved in this more than is necessary to assist my wife.

19. As mentioned at paragraph 14 above, I do not agree that there is anything untoward in the fact that I considered in further detail the documents in my possession which I was required to provide in order to properly comply with the disclosure order made by the Deputy Judge following the NPD application and as a result gave voluntary disclosure of the RIPE invoices. If my intention was to subvert the Court's processes on the NPD application (presumably with the intention of withholding relevant documents) it does not make sense that I then volunteered disclosure of the RIPE invoices. I respect the Court and its processes. I reject Reliantco's allegations as to my conduct and honesty in Danon 8.

## C.   CONCLUSION

20. For the reasons set out above, I would respectfully request the Court dismiss Reliantco's application.

- 8 -

## Statement of Truth

I believe that the facts stated in this Witness Statement are true. I understand that proceedings for contempt of court may be brought against anyone who makes, or causes to be made, a false statement in a document verified by a statement of truth without an honest belief in its truth.

Signed: *Craig S Wright*

Dr Craig S. Wright
Respondent

Dated: 06 Nov 2020