EXHIBIT "P8"

**JULY 7, 2017**



# TRUST DOCUMENT
## LIVING ASSIGNMENT

**CRAIG S WRIGHT**
**TULIP TRUST [T000712]**
**Seychelles**



CONFIDENTIAL

DEFHC_01518378

# TRUST AGREEMENT FOR THE TULIP TRUST

THIS TRUST AGREEMENT is made on this day 06th July 2017, by and between the following parties:

- **Ramona Ang** and **Craig Steven Wright (Dr. Wright)**, Grantors, Settlers and Beneficiaries with respect to their Community Property (as designated in **Schedule "A"**) and their children and grandchildren; and

  - **Ramona Ang (Ang Mei Fong Ramona, Singaporean)**, Primary Trustee and Protector of the TULIP TRUST (hereinafter referred to as "Trustee," which designation shall include all Successor Trustees).

  - **Dennis Bosire Mayaka, Equator Consultants AG** trustee of the TULIP TRUST (hereinafter referred to as "Trustee," which designation shall include all Successor Trustees) as per the registered agreement and terms (and power of attorney).

  - **Craig Steven Wright**, may, with a super majority vote of the members of the trust become a trustee of the TULIP TRUST (hereinafter referred to as "Trustee," which designation shall include all Successor Trustees) only after June 2020 Property (as designated in **Schedule "E"**).

  - **It is a condition of this deed that no party will provide a copy of this deed to Dr. Wright and that unless all parties are jointly compelled (under their home country law) that this document will remain outside of Dr. Wright's possession from the period of at most 10th July 2017 until the 15th December 2019.**

  - **Trust Officers** may be appointed after the initial meeting and are defined in Schedule "H".

WHEREAS, Craig Steven Wright and Ramona Ang are about to convey certain real and personal property to Trustee (revoking all former trust deeds and rights), and

WHEREAS, Trustee has agreed to accept such conveyance and hold said property in trust under the terms and conditions set forth below,

WHEREAS, many rights to assets are held as bearer instruments or under informal trusts maintained by Power of Attorney instruments,

NOW, THEREFORE, the parties, intending to be legally bound hereby, agree as follows:

## 1.   NAME.

The revocable living trust created by this instrument shall be known as the **TULIP TRUST** (hereinafter referred to as "Trust").

Miscellaneous provisions to this trust document are noted in Schedule "I".

CONFIDENTIAL

DEFHC_01518379

## Contents

TRUST AGREEMENT FOR THE TULIP TRUST ............................................................................. 1

1.     NAME. ..................................................................................................................... 1

2.     DEFINITIONS. ....................................................................................................... 3

3.     TRUST PURPOSE. ................................................................................................. 3

4.     TRUSTEE AND SUCCESSOR TRUSTEE. ......................................................... 5

6.     INCAPACITY OF TRUSTEE OR GRANTOR. .................................................... 6

7.     REMOVAL OF TRUSTEE. .................................................................................... 6

8.     RIGHTS RESERVED BY GRANTOR. ................................................................. 6

9.     TRUST PROPERTY. .............................................................................................. 7

A.     SUGGESTED TRUST REGISTRATION. ............................................................ 8

B.     TAX IDENTIFICATION. ....................................................................................... 8

C.     POWERS AND DUTIES OF TRUSTEE. .............................................................. 8

D.     LIMITATIONS ON POWERS OF TRUSTEE. ................................................... 10

E.     COMPENSATION OF TRUSTEE. ...................................................................... 10

F.     LIABILITY OF TRUSTEE. .................................................................................. 10

G.     INDEMNIFICATION OF TRUSTEE. ................................................................. 10

H.     BENEFICIARIES. ................................................................................................ 11

I.     RIGHTS AND INTEREST OF BENEFICIARIES. .............................................. 11

J.     PROVISION FOR SPENDTHRIFT TRUST, SUPPORT TRUST, AND DISCRETIONARY TRUST FOR CERTAIN NON-GRANTOR BENEFICIARIES. .... ................................................................................................................................. 12

K.     ADMINISTRATION AFTER THE DEATH OF GRANTOR. ............................ 12

L.     ASSIGNMENT OF BENEFICIAL INTERESTS. ............................................... 12

M.     DISCLOSURE OF BENEFICIARIES. ................................................................ 13

N.     SMALL TRUST TERMINATION. ...................................................................... 13

O.     RECORDING OF AGREEMENT. ....................................................................... 13

P.     BINDING EFFECT. .............................................................................................. 13

Q.     ENTIRE AGREEMENT AND AMENDMENT. .................................................. 13

R.     GOVERNING LAW. ............................................................................................. 13

S.     SEVERABILITY. .................................................................................................. 13

T.     ANNUAL STATEMENTS. ................................................................................... 14

U.     PERPETUITIES. ................................................................................................... 14

V.     NOTICE. ................................................................................................................ 14

CONFIDENTIAL

DEFHC_01518380

2.     DEFINITIONS.

    a.   The term **"Trust"** refers to any trust created by this agreement.

    b.   The term **"Trustee"** includes all Successor Trustees and includes both the singular and plural.

    c.   The term **"Settlor"** and **"Grantor"** includes both the singular and plural where applicable.

    d.   The term **"Beneficiary"** includes both the singular and plural where applicable.

    e.   The term **"Protector"** includes both the singular and plural where applicable.

    f.   For the purposes of this Trust Agreement, references to **"incapacity"** shall mean that the individual in question is under a legal disability, or by reason of illness or mental or physical disability is, in the concurring written opinion of three independent board-certified doctors currently practicing medicine who have examined Trustee, unable to properly manage his or her own affairs.

    g.   For the purposes of this Trust Agreement, references to **"rehabilitation"** shall mean that the individual in question is no longer under a legal disability or is, in the concurring written opinion of three independent board-certified doctors currently practicing medicine who have examined Trustee, able to properly manage his or her own affairs.

    h.   Words including but not limited to "him," "her," "he," and "she" that are used in the singular or neuter form are to be construed in the plural, masculine, or feminine where applicable.

    i.   The **Activation date** follows the first full meeting of members after 15th December 2019 and before 30 June 2020. At this point, the management of the trust shall be turned over to the primary trustee and be managed by the members in the manner decided through the decisions of this meeting.

3.     TRUST PURPOSE.

The purpose of this Trust is for Trustee to take and hold title to the property conveyed to Trustee and to preserve and increase the same until its sale or other disposition. This Trust receives the 2014 Trust (the former Trust) and finalises this into the Registered Seychelles Trust **T000712**. The nature of this trust may not be varied nor the purpose of this trust. The location of the trust may be moved to Singapore and/or Switzerland or a combination of such locations as determined by the members. The trust may not be formed in the USA even if it holds US assets.

The Trust is formed to promote the work of Dr. Craig Wright (publicly known as the pseudonym Satoshi Nakamoto).

The Trust is to promote the legal nature of BitCoin with and in using any and all means it can. Bitcoin is designed as the first distributed Peer to Peer ledger, credit and/or money system that makes the use of the system for large scale crime difficult at best.

Trustee shall not undertake any activity which is not strictly necessary to attainment of the foregoing purpose, nor shall this Trust Agreement be deemed to be, or create, or evidence the existence of a corporation, de facto or de jure, or a Massachusetts Trust, or any other type of business trust, or an association in the nature of a corporation, or a co-partnership or joint venture by or between Trustee and Beneficiaries before January 2020. The Trustee and Beneficiaries may vote, as of January 2020 to form a registered corporate entity including in

CONFIDENTIAL

DEFHC_01518381

the form of a Massachusetts business trust for the purposes of promoting the express purpose of the trust.

Bitcoin is defined by the 2009 *"Bitcoin Whitepaper"*. Any disagreements as to the nature of Bitcoin shall be decided by Craig Wright (or by vote in his permanent incapacity).

Forked assets include any variants of Bitcoin derived from the original **Bitcoin** Genesis block. If an altered version of Bitcoin (XBT) is created (such as the planned addition of Segregated Witness would create), this is not to be considered Bitcoin, but shall remain as an asset in the trust.

The Purpose of the trust is not to hold Bitcoin, but to use this and other assets in the creation of a commercial Peer internet. This shall be a Peer to Peer system that is not funded using advertising. The family shall have rights, after 2030, to at most 100,000 **ORIGINAL** Bitcoin as a direct monetary/commodity unit (if this asset still exists) and the other assets shall be used in the furtherance of the trust goals.

The **Activation date** in January 2020 will incorporate a series of meetings to explain the rights and obligations of this trust to the beneficiaries and members. These shall be held by 31st January 2020 but not before 15th December 2019. Such meetings shall be held at least annually from this point and all records shall be formally maintained. The trust is to be incorporated formally in Singapore and/or another location (such as Switzerland) by the end of year 2025. Dr Craig Wright (or if he is not available due to permanent incapacity), Ms Ramona Ang shall act as chair for these meetings.

Dr Wright shall chair all meetings with veto until at least 2030 and whence this may be decided by vote (see schedule "E") following the quorum meeting in 2030.

The trust is tasked with ensuring that the primary parties and members to this document are protected under legal grounds and as such, there are no limits to such expenses and the trust is authorised in advance to spend $1000 on legal fees in order to stop payment of a single US dollar and adverse findings. It is noted that the assets of the trust are limited and cannot be distributed outside of the purpose of the trust which includes the legal protection of the grantors.

Other members, Trustees and Beneficiaries maybe added as beneficiaries and members following a vote by a supermajority of members.

The purpose of the trust is:

- To further Dr Wright's research and development of commercial Peer to Peer networks and systems and to exploit and commercialise the creation of globally focused systems. The full extent of this will be detailed in the first meeting of members to be held between December 2019 and December 2020. Dr Wright will provide details as to the nature of his research and the explicit goal is to be derived from that research.
- To promote education in STEM and within the members of the trust.
- To promote classical western education and philosophy in academic systems.
- To build the P2P systems envisioned by Dr Wright and which are being researched by the group founded by Dr Wright, nChain Ltd (and associated entities).
- To build a scaled financial system capable of handling commercial and machine-based transactions for all humans and to handle at least 1 trillion TPS (transactions per second).
- To create distributed overlay networks that use Bitcoin as a ledger.

**Spyder**

It is noted that Bitcoin is merely the ledger for the peer internet project started by Dr Wright in 1998 and registered as Spyder / Redback / Blacknet.

4 | P a g e

DEFHC 01518382

No investment may be made in Internet entity that profits through advertising.

Charitable events. No investment in any charity supporting socialist or collectivist aims may be made. Any member investing in such a charity will have 2 times the amount of that investment taken from any distribution that they are due (carried forward if not paid immediately). **This clause may not be removed even with a supermajority of members**. If the trust is later dissolved, 100 times the amount of any such donation will be removed from the amount paid out to that member (accounted over the life of the trust). Such foundations include Greenpeace, Sierra foundation and any organisation that promotes striking or unions.

- I.e. member A donates $100 USD to Greepeace in a year, that member will have $200 USD removed from any distribution in the following year and have a permanent reduction of $10,000 USD in any interest in the trust and this would be taken as a payment of $10,000 that was already received on the final dissolution of the trust (carried forth to the inheritors of that member).
- Any university or facility of higher learning that is being invested in must adhere to principles of Western culture. Any organisation that teaches post-modern anti-Western culture is excluded from receiving any investment from this trust under any conditions.

No member (trustee, beneficiary or other party to this trust) may be a US citizen.

**AMENDMENTS TO THE TRUST**

**Unless otherwise noted, the Trust terms may be amended, supplemented, amended and restated, or repealed, in whole (with the noted exclusions) or in part, by a majority of the Trustees then in office at any meeting of the Trustees and members (Schedule "E"), or by one or more writings signed by such a majority.**

4.  TRUSTEE AND SUCCESSOR TRUSTEE.

The Trustee of this Trust shall be Ramona Ang If Trustee cannot continue to serve for any reason, then the Successor Trustee shall be selected by a majority vote of the members who are of age (21) with the veto of the founding member to apply if he is alive and in sound mind. The voting process is defined in Schedule "E". No vote may occur before December 20th, 2019. The initial vote is defined to have occurred if and only if a special quorum of all living members are present. Members may vote with knowledge as at this age on an initial vote only and henceforth as per the terms of Schedule "E". If Ramona Ang is not able to serve in the intermediate period before 2020 for any reason, **Dennis Bosire Mayaka** shall act as a caretaker Trustee without the ability to dispose of assets other than for the protection of the majority of the assets (such as for litigation and related purposes where he shall be paid a maximum of $150,000 USD in any year before 2020 and the initial vote of the members).

If Ramona Ang is unwilling or unable to perform the duties of Trustee, or if the office of Trustee shall otherwise become vacant for any reason, then the first individual listed below (listed in priority order) who is of majority age (21) and who indicates in writing that he or she is willing and able to perform the duties of Trustee shall be designated as Trustee (subject to veto powers as granted).

When identifying a Successor Trustee from the list below, reasonable efforts shall be made to notify the individual and obtain a final written answer from him or her as to his or her willingness and ability before attempting to notify the next individual on the list. If an affirmative written answer by an individual higher on the list is received after an affirmative written answer by an individual lower on the list is received, then the Successor Trustee shall be deemed to be the individual higher on the list, regardless of the duration that has elapsed between receipt of the two affirmative written answers.

1.  ▮▮▮▮▮▮▮▮▮▮▮            (Australian / Singaporean)

**5 | P a g e**

DEFHC_01518383

2.                  (Australian)
3.                                      (Australian)
4.  Julianne Marie Laimer              (Australian)

If no individuals above are willing and able to serve as Trustee, then the then-living Beneficiaries shall elect a Successor Trustee. If Beneficiaries have not elected Successor Trustee within sixty (60) days of such vacancy, then Trustee shall convey the Trust Property to Grantor if Grantor is alive; if Grantor is not alive, then Trustee shall convey the Trust Property to Beneficiaries according to the terms of this Trust Agreement.

Trustee may resign by giving written notice to Beneficiaries of his or her intention to resign at least ninety (90) days prior to the effective date of resignation. Trustee shall, by the effective date of resignation, deliver to Successor Trustee all paper and electronic records of receipts, disbursements, and administrative matters related to the Trust, along with an itemized inventory of Trust Property (a copy of which shall also be delivered to Beneficiaries).

Successor Trustee shall have the same rights, duties, and powers as the original Trustee.

The response to force is detailed in Schedule "F".

## 6.     INCAPACITY OF TRUSTEE OR GRANTOR.

If Grantor or Beneficiaries challenge a Trustee in writing on grounds of incapacity to serve as Trustee, they may seek and rely on the medical opinions described in the "Definitions" section of this Trust Agreement. Upon such determination of incapacity, Successor Trustee shall administer the Trust until the previous Trustee is rehabilitated as described in the "Definitions" section of this Trust Agreement. Upon rehabilitation, the previous Trustee shall resume all powers and duties he or she had prior to incapacity, and Successor Trustee shall relinquish all powers and be relieved of all duties. During any period of incapacity of Grantor, Trustee or Successor Trustee shall use any amount of Trust Property necessary for Grantor's proper health care, support, maintenance, comfort, and welfare, in accordance with Grantor's accustomed manner of living.

## 7.     REMOVAL OF TRUSTEE.

A Trustee may be removed by a majority vote in interest in Trust Property (See voting, schedule "E"). Removal of Trustee shall be permitted only for the convenient administration of the Trust. For example, Trustee may be removed due to mismanagement of Trust funds, or because of lack of attention to Trust matters, or other such reason. Removal shall not be permitted for the purpose of influencing the exercise of discretion of Trustee granted by this Trust Agreement. For example, removal of Trustee who refuses to make a discretionary invasion of principal shall not be allowed. Removal of Trustee shall be effective upon delivery of written notice of removal stating the reasons for removal. Removed Trustee shall have a reasonable period to transfer assets to Successor Trustee. In the event Trustee believes his or her removal is improper, he or she may, but shall not be required to, apply to a court of competent jurisdiction, at his or her expense, for a declaration of the propriety of the removal. In such event, the removal shall be effective only upon the order of said court and after any appeal. If Trustee prevails, he or she shall be entitled to reimbursement from the Trust for reasonable litigation expenses.

## 8.     RIGHTS RESERVED BY GRANTOR.

Each Grantor, without requiring the consent of any other Grantor, reserves the following rights during his or her lifetime:

a.     Right to Amend or Terminate Trust. The right to amend any terms of or terminate this Trust Agreement, in whole or in part, at any time, without notifying any Beneficiary **does not exist**. Any amendment (not termination) shall be effective upon delivery of signed written notice to Trustee. The power to amend (not to terminate) this Trust Agreement may be voted only after 2030 by the members (see voting Schedule "E") to the trust following a super majority vote where Dr Craig Wright maintains a veto to any or all proposed changes. The trust is to run for at least 100 years from December 2020.

6 | P a g e

b.  <u>Right to Withdraw Assets.</u> The right to withdraw and direct Trustee to return to Grantor any or all assets owned and transferred by said Grantor to the Trust formally or informally, whether listed on the attached schedules or not added after the period of January 2020). The exercise of this right of withdrawal shall become effective upon delivery of written notice to Trustee. No asset added to this trust before December 31st, 2019 may be withdrawn from the trust for any purpose other than for the furtherance of the trust purpose.

c.  <u>Right to Add Assets.</u> The right to add any assets to the Trust. The exercise of this right of addition shall become effective upon delivery of written notice to Trustee. Other members including beneficiaries and secondary beneficiaries may, on written notice to the trustee, add assets to the trust.

d.  <u>Right to Occupy Real Property.</u> The right to possess and occupy any real property held as Trust Property for life rent-free (for the purposes of this erm, for an amount of one USD , or US Dollar per annum). This right is intended to give Grantor a beneficial interest in such property and to ensure Grantor does not lose eligibility for any homestead tax exemption for which he or she otherwise qualifies. Beneficiaries have a right to occupy real property owned by the trust. Any property added to the trust by a beneficiary maintains all rights as defined in section 7.d. Property owned by the trust may be leased an amount set in advance by the members of the trust for at least one US dollar per annum. Property may not be sold or otherwise disposed of if used as a residence by the beneficiary without a super majority vote by the members.

e.  <u>Right to veto and chairmanship.</u> Dr Craig Wright has a role as chairman of the group in all meetings until at least 2030 and no quorum shall exist without the presence of Dr Wright unless he is indisposed through incapacity in section 5 of this document.

## 9.    TRUST PROPERTY.

a.  Grantor hereby conveys and delivers to Trustee in trust all of Grantor's right, title, and interest in all real and personal property, tangible or intangible, of any nature, in any location, which may be owned or later acquired by Grantor, unless an exception to said conveyance of a particular property interest is specified in **Schedule "A"** attached hereto and made a part hereof. **Schedule "A"** additionally enumerates all property, to the best of Grantor's knowledge as of the execution date of this Trust Agreement, that is owned by Grantor and hereby conveyed and delivered to Trustee in trust. This property, together with any property later added to the Trust (whether *inter vivos* or by "pour-over" will provision or by income from and therefore growth in principal), shall be designated as "Trust Property." This general assignment shall override the beneficiary designations specifically noted on **Schedule "A."**

b.  If the Trust is terminated while either Grantor is not alive, the Trust Property shall be distributed as directed in **Schedule "B."**

c.  While the Trust remains in effect and both Grantors remain alive, the Beneficiary for the Trust Property shall be Grantors.

d.  While the Trust remains in effect and either Grantor is not alive, the Beneficiary for each class of Trust Property shall be as indicated in **Schedule "B."**

e.  Trustee shall hold in trust the Trust Property according to the terms and conditions of this Trust Agreement until all Trust Property has been disposed of, or until this Trust has been terminated.

f.  A voluntary conveyance by Grantor of any Trust Property which may remain registered to Grantor individually shall convey any interest held by this Trust.

g.  This trust encompasses all rights and property transfers of the previously subsumed trust structures including the formal trust of 2014 and all former trust structures created by Dr Wright.

CONFIDENTIAL

DEFHC  01518385

## A.     SUGGESTED TRUST REGISTRATION.

During the life of Grantor, assets may be registered to the Trust as follows:

"_____, Trustee, or his Successor Trustees, under the [T000712] TULIP TRUST dated [Month] [Day], [Year], and any amendments thereto."

Other forms of registration are permissible.

## B.     TAX IDENTIFICATION.

During the life of Grantor, the Trust shall be identified by the formal registration number (initially, **T000712**). If the Trust shall not be terminated after the death of Grantor.

## C.     POWERS AND DUTIES OF TRUSTEE.

It is the intention of Grantors to grant to Trustee the power to deal with all Trust Property as freely as Grantors could do individually, and the only requirement that Grantors place upon Trustee is that Trustee act as a fiduciary in the best interests of Grantor and Beneficiaries. Accordingly, subject to this fiduciary duty, Trustee shall have all authority and powers permitted under the law of the UK, which is to be seen to be governing this Trust. Trustee shall serve as Trustee of all trusts and sub-trusts under this Trust Agreement. Trustee (or Successor Trustee) shall have, but not be limited to, the power to do the following:

a.     Amend the list of Trustee candidates in Section 4 of this Trust Agreement to include additional lineal descendants of Grantors; said additions may be inserted and take priority over Trustee candidates who are not lineal descendants of Grantors.

b.     Invest Trust Property in any kind of investment, including without limitation real estate, personal property, insurance, securities of any kind, notes, mortgages, stock options, and futures – without regard to the proportion any such investment may bear to all Trust Property.

c.     Sell, convey, exchange, or otherwise dispose of any Trust Property, including without limitation real estate, personal property, insurance, securities of any kind, notes, mortgages, stock options, and futures. Bitcoin and potentially related assets held by the trust companies may be used as follows:

1.  Wright International Investments: Bitcoin mined between Jan 2009 and 2010 by Information Defense Pty Ltd may not be used, encumbered nor otherwise made subject to any dispossession prior to a full meeting of the "members" in the period between December 2019 and late 2020.

2.  Tulip Trading Ltd: any Bitcoin and associated assets obtained in 2011 by "CSW R&D", "Craig Wright R&D", Panopticrypt Pty Ltd, Wright Family Trust (Australia), Wright Family Fiduciary Trust to the extent that they are later recoverable

d.     Diversify the Trust's investments, including authority to decide that some or all the Trust Property need not produce income.

e.     Hold uninvested cash, even if the total amount so held would not be permitted without this provision, and the power to acquire or hold underproductive real or personal property.

f.     Manage trust real estate, including without limitation the power to lease said real estate; to make repairs, improvements, or alterations; to insure against loss; to adjust boundaries; to partition; to erect or demolish buildings thereon; to convert to a different use; and to insure or perfect title.

g.     Vote stock or delegate the voting of stock for any purpose, and to participate in Trust-related corporate activities in any legally permissible capacity, including serving as an officer or director.

CONFIDENTIAL

DEFHC_01518386

h.      Coordinate with other owners in carrying out foreclosure, lease, sale, incorporation, dissolution, liquidation, or reorganization of the capital or financial structure of any association or corporation in which the Trust has a financial interest.

i.      Incorporate, make elections regarding the corporate form of, operate, dissolve, liquidate, or sell any business in which the Trust has a financial interest, regardless of the business's corporate form, and with no liability on Trustee's part for any losses provided that Trustee handles such matters as a reasonably prudent person would in dealing with his or her own affairs.

j.      Borrow money for business purposes, mortgage or encumber any business assets, and engage in the redemption of stock of any business in which the Trust has a financial interest, with no liability on Trustee's part for any losses provided that Trustee handles such matters as a reasonably prudent person would in dealing with his or her own affairs.

k.      Continue, restructure, sell, or terminate any business enterprise in which Grantor owned any interest during his lifetime.

l.      Hold any or all Trust assets in Trustee's own name, or in the name of any corporation, partnership, or other legal person; the fiduciary relationship of Trustee and / or any other holder of legal title to Trust assets should generally be disclosed, unless non-disclosure is both legally permissible and reasonably appropriate to preserve the value of any Trust Property and to protect the interests of the Trust.

m.      Borrow money and encumber Trust Property on any terms and from any person or entity, if it is reasonably calculated to protect, preserve, or improve the interests of the Trust.

n.      Pay any debt obligation or encumbrance on any Trust asset.

o.      Pay any debt obligation or encumbrance on any legal event associated with the Grantors.

p.      Lend Trust funds to Grantor or Beneficiaries and to change the terms of such loans, including without limitation extending the loans beyond maturity, changing the interest rate, and consenting to any loan modification.

q.      Pay or refrain from paying any taxes, assessments, rents, or debt obligations, as well as the power to pay any costs to repair or maintain any Trust asset, so long as the foregoing is reasonably calculated to protect the interests of the Trust.

r.      Carry any insurance against any hazards, including life insurance on the life of any Grantor or Beneficiary, and to exercise or release any rights in such insurance policy or to use insurance proceeds to repair or replace assets insured.

s.      Establish bank, brokerage, or other financial accounts and deposit Trust funds in said accounts whether they are insured or uninsured by FDIC coverage, as well as enter into electronic fund transfer or safe deposit arrangements with financial institutions.

t.      Receive additional property from any source and add it to the Trust Property.

u.      Distribute any Trust Property, in whole or in part, to any Beneficiary under the terms of the trust purpose and for a limited distribution of no more than 10% of the trust in any single year between any and all members of the trust (such as for living expenses).

v.      Expend the Trust income or principal, or both, for the health and maintenance of Grantor or Beneficiaries during any period of incapacity of Grantor or Beneficiaries as defined by this Trust Agreement, or for the payment of Grantor's debts, estate taxes, and expenses of Grantor's last illness and funeral.

9 | P a g e

CONFIDENTIAL

w.     Expend all or part of the Trust income or principal, or both, during any period of incapacity of Grantor, for the health and support of any issue of Grantor who has no other financial resources and requires such distributions for his or her health and support in his or her accustomed manner of living. Trustee shall consider all financial resources available to said Beneficiary prior to making a distribution, including without limitation the ability of said Beneficiary to earn a living and the ability of said Beneficiary's spouse, if any, to earn a living. In no event may Trustee, unless he is a member of Grantor's immediate family, exercise this power in favour of himself.

x.     Employ and pay reasonable fees to accountants, lawyers, financial planners, investment experts, brokers, realtors, business managers, or technical consultants for information or advice or administration assistance relating to the Trust.

y.     Create a "Family Office" to act to maintain the assets of the trust and to enrich these.

z.     Initiate, defend against, settle, compromise on, arbitrate, or otherwise deal with legal actions concerning this Trust or concerning Grantor's affairs. It is noted that any legal action taken against the Grantor is to be executed with utmost prejudice. Any party seeking to act against the Grantor is to be pursued in every possible forum with litigation being taken to the highest levels of appeal in all instances where a positive decision has not been handed down. There are no limits to such expenses and the trust is authorised in advance to spend $1000 on legal fees in order to stop payment of a single US dollar and adverse findings. It is noted that the assets of the trust are limited and cannot be distributed outside of the purpose of the trust which includes the legal protection of the grantors.

aa.    Pay all reasonable expenses from the Trust Property in connection with the administration of this Trust.

bb.    Execute any documents necessary to administer any Trust under this Trust Agreement.

## D.     LIMITATIONS ON POWERS OF TRUSTEE.

Notwithstanding the preceding section, Trustee in his or her capacity as Trustee shall NOT have the power to:

a.     Bind Beneficiaries personally to any debt or obligation without express written consent of Beneficiaries.

b.     Exercise any power which creates adverse tax consequences to Grantor's estate or to any Beneficiaries.

## E.     COMPENSATION OF TRUSTEE.

Any Trustee who is either a Grantor or Beneficiary under the Trust shall serve without compensation, except that Trustee shall be reimbursed for reasonable expenses incurred in the administration of the Trust. All other Trustees shall be compensated for Trustee duties as set forth in **Schedule "C"** attached hereto and made a part hereof.

## F.     LIABILITY OF TRUSTEE.

Trustee shall not be personally liable for any obligation of the Trust but shall be liable only for his or her own actions and then only as a result of gross negligence, extreme recklessness, or bad faith. No Beneficiaries shall be able to bind Trustee nor contract on his or her behalf without Trustee's express written consent. Trustee and any Successor Trustee shall not be required to give a bond.

## G.     INDEMNIFICATION OF TRUSTEE.

Beneficiaries agree to indemnify, hold harmless, and defend Trustee from any and all liability incurred in his or her capacity as Trustee so long as such liability is not the result of Trustee's gross negligence, extreme recklessness, or bad faith.

CONFIDENTIAL

DEFHC 01518388

## H.  BENEFICIARIES.

Beneficiaries are the persons or legal entities identified, along with their respective interests, on **Schedule "B"** which is attached hereto and made a part hereof. Beneficiaries are entitled to all profits, earnings, and proceeds of their respective interests in the Trust Property.

## I.  RIGHTS AND INTEREST OF BENEFICIARIES.

a. The interests of Beneficiaries shall consist solely of the right to receive profits, earnings, and proceeds from the interest, income, appreciation, rental, sale, mortgage, or other disposition of the Trust Property.

b. Distributions to Grantor Beneficiaries for their ongoing maintenance and support in their accustomed manner of living must occur no less frequently than monthly once the Beneficiary turns 25, and Trustee shall have the obligation to make such distributions to Grantor Beneficiaries no less frequently than monthly; such distributions to Grantor Beneficiaries shall NOT be subject to any spendthrift trust, support trust, or discretionary trust provisions contained elsewhere in this Trust Agreement.

c. After the death of both Grantors, distributions to non-Grantor Beneficiaries who are the direct issue of Grantors, for their ongoing maintenance and support, must occur no less frequently than monthly, and Trustee shall have the obligation to make such distributions to such Beneficiaries no less frequently than monthly; however, distributions to said Beneficiaries SHALL be subject to the spendthrift trust and support trust, but NOT discretionary trust, provisions contained in this Trust Agreement. Non-Grantor Beneficiaries who are the direct issue of Grantors have the right but not obligation to refuse, pause, or postpone any distributions, in whole or in part, from Trustee. Upon written notice of refusal to accept, or request to pause or postpone, any such distributions, Trustee shall stop paying such distributions to said Beneficiaries, and shall, until written notice by said Beneficiaries cancelling or withdrawing the original refusal or request is received by Trustee, be temporarily relieved of the obligation to make distributions to said Beneficiaries.

d. Distributions to all other Beneficiaries shall be subject to the spendthrift trust, support trust, AND discretionary trust provisions contained in this Trust Agreement. All other Beneficiaries also have the right but not obligation to refuse, pause, or postpone any distributions, in whole or in part, from Trustee. Upon written notice of refusal to accept, or request to pause or postpone, any such distributions, Trustee shall stop paying such distributions to said Beneficiaries, and shall, until written notice by said Beneficiaries cancelling or withdrawing the original refusal or request is received by Trustee, be temporarily relieved of the obligation to make distributions to said Beneficiaries.

e. The foregoing rights of Beneficiaries are hereby declared to be personal property and may be assigned or otherwise transferred as such.

f. The death of any Beneficiary shall not affect the existence of the Trust nor in any way diminish or alter the powers of Trustee.

g. No Beneficiary shall have any right, title, or interest, whether legal or equitable, in the real property which is held as Trust Property. No Beneficiary shall have the right to require partition of the Trust Property.

h. No Beneficiary shall have the right to bind or otherwise contract for any other Beneficiary except as provided for elsewhere under this Agreement.

CONFIDENTIAL

DEFHC  01518389

**J.**     PROVISION FOR SPENDTHRIFT TRUST, SUPPORT TRUST, AND DISCRETIONARY TRUST FOR CERTAIN NON-GRANTOR BENEFICIARIES.

a.       It is the intention of Grantor to place the rights of certain non-Grantor Beneficiaries under this Trust in a spendthrift trust, support trust, and / or discretionary trust, and to place absolute title to Trust Property and the income therefrom in Trustee. This section shall NOT apply to Grantor Beneficiaries.

b.       Spendthrift Trust Provision. Neither principal nor income of the Trust Property, while in the hands of Trustee, shall be subject to any voluntary or involuntary conveyance, transfer, or assignment, or be pledged as security for any debt of any non-Grantor Beneficiary or other person, and shall not be subject to any claim of creditors of any non-Grantor Beneficiary or other person, through legal process or otherwise. Any such attempted sale, anticipation, assignment, or pledge of any funds or property held in the Trust, or the income therefrom, by a non-Grantor Beneficiary shall be null and void and shall not be recognized by Trustee.

c.       Support Trust Provision. For any non-Grantor Beneficiary, Trustee when making distributions shall consider all financial resources available to said Beneficiary prior to making a distribution, including without limitation the ability of said Beneficiary to earn a living and the ability of said Beneficiary's spouse, if any, to earn a living. Trustee should only make distributions to said Beneficiary for his or her ongoing health and support if Beneficiary's other financial resources are not enough for this purpose. It is the intention of Grantors that Trust Property is only distributed to a non-Grantor Beneficiary as a fallback or backup source of funds when said Beneficiary's other financial resources are not enough to provide for reasonable maintenance, health, and support. For the purposes of this paragraph, financial resources that are considered enough to provide for "reasonable maintenance, health, and support" means the median gross income in the municipality in which said Beneficiary is domiciled.

d.       Discretionary Trust Provision. For non-Grantor Beneficiaries who are NOT the direct issue of Grantors, Trustee when making distributions, in addition to the spendthrift trust and support trust provisions stated in this section, shall have discretion on whether to make any distributions to said Beneficiaries at all. It is the intention of Grantors that distributions, subject to the spendthrift trust and support trust provisions in this section, should generally occur to said Beneficiaries who genuinely need such assistance due to bad financial luck not of their own fault; however, Grantors authorize Trustee to use discretion when determining whether to make such distributions at all so that said Beneficiaries do not abuse their knowledge that Trust funds are available and do not become dependent upon such funds. The "spirit" of Grantors' intent can be summarized as follows: "Trust funds are available to help if said Beneficiaries fall on hard luck/times, but to the extent they are capable of doing so, said Beneficiaries must make a meaningful effort to become financially independent in order to qualify to receive Trust distributions."

**K.**     ADMINISTRATION AFTER THE DEATH OF GRANTOR.

a.       **Distributions.** At the death of Grantor, Trustee shall administer and distribute the Trust Property according to the respective interests set forth in **Schedule "B."**

b.       **Collection of Proceeds.** Trustee may take any action necessary to collect the proceeds of any life insurance policy, or provide for the payment of retirement plan, IRA, brokerage account, or other benefits payable to the Trust. If probate administration has not or will not be commenced, Trustee shall have the power to collect tax refunds, health insurance proceeds, refunds under any contract, death benefits, or any other item otherwise payable to the deceased Grantor's estate.

**L.**     ASSIGNMENT OF BENEFICIAL INTERESTS.

Beneficiaries have the right to assign part of their interests under this Trust with the agreement of a majority of members. No assignment shall be valid or affect the interest of a Beneficiary hereunder until written notice is delivered to Trustee and a vote is passed. Upon receipt of such notice and a vote

CONFIDENTIAL

DEFHC_01518390

in the affirmative, the Trustee shall revise **Schedule "B"** as necessary. Any assignment of the right to direct Trustee to a person who is not a Beneficiary hereunder shall not be valid unless all Beneficiaries consent in writing to said assignment.

## M.    DISCLOSURE OF BENEFICIARIES.

Trustee and Beneficiaries shall not disclose the identity of any Beneficiary without the written consent of said Beneficiary except as may be required by law or at the direction of an order of court issued by a court of competent jurisdiction. Any party who discloses the identity of a Beneficiary shall be personally liable for any and all losses and damages incurred by that Beneficiary as a result of the disclosure.

It is noted that the trust is managed within the European Union and as such the privacy of personally identifiable information and other financial affairs are protected by law. The trust is both authorised and instructed to act against any and all parties disclosing the nature of any members of this trust. The trust is authorised and instructed to take any breach seriously and to assign up to US$20 million without vote of members to start litigation against any person or group or entity that disclose information concerning the beneficiaries of this trust. This is not to be limited to individuals and will include governmental failure to redact information and documents and overseas entities.

## N,    SMALL TRUST TERMINATION.

If the aggregate value of all assets governed by this Trust Agreement falls below the sum of Twenty-Thousand Dollars ($20,000), and if the Beneficiaries entitled to receive the income therefrom have attained majority age, then Trustee may terminate the Trust. It is the intention of Grantor that Trustee NOT have the power to terminate the Trust, without court approval, on grounds of its value if the value of the Trust Property in aggregate exceeds Twenty-Thousand Dollars ($20,000). In the event of termination under this provision, Trustee shall distribute the entire corpus of Trust Property to Beneficiaries according to their respective interests set forth in **Schedule "B."**

## O.    RECORDING OF AGREEMENT.

This Trust Agreement shall not be placed of record in any jurisdiction.

## P,    BINDING EFFECT.

This Trust Agreement shall be binding upon and inure to the benefit of Grantor, Beneficiaries, and Beneficiaries' successors, heirs, and assigns.

## Q.    ENTIRE AGREEMENT AND AMENDMENT.

With the exception of extrinsic evidence described in **Schedule "D,"** this Trust Agreement contains the entire, complete, and final understanding between the parties hereto and may be amended, revoked, or terminated only by written agreement signed by Grantor; if Grantor is not alive, then the Trust Agreement may be amended, revoked, or terminated only by written agreement signed by Trustee and all then-living Beneficiaries at the time of such amendment, revocation, or termination. Upon termination of this Trust, Trustee shall execute any and all documents necessary to effectuate the transfer of Trust Property to Beneficiaries as their interest may appear in **Schedule "B."**

## R,    GOVERNING LAW.

This Trust Agreement shall be governed by, construed, and enforced in accordance with the laws of the state where Grantors are domiciled (at the time of construction, the UK and Seychelles). If Grantors are domiciled in different states, or if neither Grantor is alive, then this Trust Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of NSW, Australia and/or Antigua.

## S.    SEVERABILITY.

If any provision of this Trust Agreement is deemed unenforceable by a court of competent jurisdiction, all remaining provisions shall remain in effect.

CONFIDENTIAL

DEFHC_01518391

**T.    ANNUAL STATEMENTS.**

Any Successor Trustee, who is not Grantor, shall furnish annual statements to Beneficiaries showing reconciliations of all income, receipts, expenses, and disbursements of Trust Property for each calendar year. Successor Trustee shall also furnish an itemized annual statement of the assets of the Trust.

These records shall be independently and externally audited by a chartered accountant.

**U.    PERPETUITIES.**

If any of the terms of this Trust continue beyond the period permitted by any applicable laws of the state law governing this Trust Agreement which regulate restraints on alienation or prohibitions against perpetuities, or if the vesting of any interest under this Trust could possibly occur after the end of such permitted time period, then such offending terms, to the extent of their continuance beyond the lawful period, shall be null and void, but the remainder of the terms of the Trust shall remain valid and binding. The undistributed portion of the Trust Property held in violation of such applicable laws shall immediately be distributed to the Beneficiary of such portion.

**V.    NOTICE.**

Any notice that is given in connection with this Trust Agreement shall be given (a) to Beneficiaries at the address set forth in **Schedule "B"** as shall be changed from time to time upon notice to Trustee from Beneficiaries; and (b) to Trustee at such address as he or she may hereafter specify. The notice shall be deemed to be validly given if personally delivered or mailed to a person by first class mail, postage prepaid, at said specified address.

　

IN WITNESS WHEREOF, the parties below hereby execute this Trust Agreement on the day and year first above written.

GRANTORS:

..............................
Craig Steven Wright

TRUSTEE

..............................
Denis Bosire Mayaka

14 | P a g e

CONFIDENTIAL

DEFHC_01518392

## SCHEDULE "A"

The following is the legal description of the Trust Property contained in the foregoing Trust Agreement.

a.   Wright International Investments Ltd   (Seychelles)   (064409)
    1.   All shares held by the Grantors directly or beneficially.
    2.   BitCoin mined by Information Defense Pty Ltd (Australia) and transferred under warrant (details of asset defined in ███████████████████████████████████0d91).
    3.   Any residual Casino/Gaming income.

b.   Tulip Trading Ltd   (Seychelles)   (093344)
    1.   All shares held by the Grantors directly or beneficially.
    2.   Assets held by Mossack Fonseca & Co.
    3.   Assets held under High Secured Ltd (Panama)
    4.   All assets as far as they are recoverable from Liberty Reserve holdings
    5.   Assets created by:
        1.   Integyrs Pty Ltd (Australia)
        2.   Greyfog Pty Ltd
        3.   Cloudcroft Ltd
        4.   Panopticrypt Pty Ltd
        5.   All DeMorgan Ltd assets and IP
    and transferred under warrant.

c.   The 2014 "formalised Trust" formerly known as the "Tulip Trust".

d.   All assets in CSW R&D, Craig Wright R&D and all associated:
    1.   Sports Book systems
    2.   OnLine Casino Systems
    3.   Affiliate systems

e.   JBRUK Ltd   (UK)   (10859457)

f.   nChain Ltd
    1.   Assets (shares) held in trust for Ramona Ang following the sale of DeMorgan Ltd

g.   All Trusts and assets ever owned by Craig Wright until the formation of this trust.

CONFIDENTIAL

## SCHEDULE "B"

1.  **BENEFICIARIES.** The following are all the Beneficiaries (along with their birth dates and relationships to Grantor) who own all of the beneficial interest described in the foregoing Trust Agreement.

| Name | Relationship | Date of Birth |
|------|-------------|---------------|
| Craig Steven Wright | Self (Settlor) via CSW R&D and subsequent entities | 1970 |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

2.     **ADDRESS FOR NOTICE AND SERVICE OF PROCESS.** Notice and service of process may be delivered to all Beneficiaries at:

*The address schedule is maintained separately. This shall be updated following the first formal meeting for members.*

3.     **DISTRIBUTION TERMS UPON DEATH OF A GRANTOR.** Upon either Grantor's death, any distribution of Trust Property shall be made as follows:

a.     Trust Property that was originally contributed to the Trust as Community Property may be distributed to the deceased Grantor's spouse, if alive, as the primary Beneficiary. The spouse referenced in the preceding sentence, in order to be a primary Beneficiary, must be the same person whom the deceased Grantor was married to as of the execution date of this Trust Agreement. If the deceased Grantor's spouse as of the execution date of this Trust Agreement does not survive Grantor, then said property may only be distributed to the issue of Grantors.

4.     **ENCUMBRANCES.** All distributions of Trust Property shall pass subject to any encumbrances or liens placed upon such property as security for the repayment of a loan or debt.

5.     **PER CAPITA WITH RIGHT OF REPRESENTATION.** Any Trust Property distributed to two or more non-Grantor Beneficiaries who are either direct or indirect issue of Grantors shall be distributed per capita with right of representation (modern per stirpes) among said Beneficiaries unless the terms of this Trust Agreement (including without limitation the spendthrift trust, support trust, and discretionary trust terms) provide otherwise.

6.     **CUSTODIANSHIPS UNDER THE UNIFORM TRANSFERS TO MINORS ACT.** Any Trust Property to which a minor Beneficiary becomes entitled under this Trust Agreement shall be delivered to Trustee, if the Trust is then in effect, or to Beneficiary's then-closest living relative who agrees to expend such Trust Property solely for Beneficiary's benefit, as custodian under the Uniform Transfers to Minors Act, until said Beneficiary attains majority age, upon which time such Trust Property shall be delivered to Beneficiary.

7.     **SPECIFIC GIFTS OF TANGIBLE PERSONAL PROPERTY.** Upon the death of Grantor, Trustee shall make such gifts of tangible personal property of Grantor held or acquired by the Trust as may be directed by Grantor's Will, or as may be directed by a list, letter, or other writing of Grantor permitted by Grantor's Will, or as may be directed by this **Schedule "B"** of this Trust. The cost of storing, packing, shipping and insuring any tangible personal property gift prior to delivery to its intended recipient shall be paid by the Trust.

16 | P a g e

CONFIDENTIAL

DEFHC 01518394

## SCHEDULE "C"

Trustee shall be compensated in the amount of **$1.00** per year, or as otherwise provided, for work performed on behalf of the Trust.

**Compensation of Members**. The chair, if any, and members of any duly appointed committee (Schedule "G") shall receive such compensation and/or fees and reimbursement for expenses as from time to time may be determined by the Trustees.

CONFIDENTIAL

DEFHC_01518395

SCHEDULE "D"

In the event of any ambiguity in the terms contained in the foregoing Trust Agreement, the following extrinsic evidence shall be admissible to facilitate the interpretation of the foregoing Trust Agreement:

- **Video recording** (Initial to be made at founding meeting) **made on** Dec 2019, **between Beneficiaries and Members discussing the rights, obligations, and interpretations regarding the foregoing Trust Agreement**
- 

CONFIDENTIAL

DEFHC 01518396

**SCHEDULE "E"**

**Members.** Trustees, Beneficiaries

There shall be at least one (1) trustee at any time and never more than five (5).

1. **Chair.** The members may elect from their own number a Chair to hold office until his or her successor shall have been duly elected and qualified or until his or her earlier death, resignation, removal or disqualification. The Chair (or, if the Chair is unable to attend any such meeting, the Chair's designee) shall preside at all meetings of the Trustees and the Shareholders. The Chair shall have such other duties and powers as the Trustees may from time to time determine. The Chair shall be Dr. Craig Wright until at least 2030 or his death or inability to act (see above).

The Chair holds an initial Veto – this is not transferable unless the members vote for this power to be transferred following the appointment of a new Chairman after Dr Wright.

The Chair need not be a Trustee.

2. **Regular Meetings.** Regular meetings of the Trustees (and members) may be held without call or notice at such places (including for these purposes, by means of conference telephone circuit, video conferencing or similar communications equipment by means of which all persons participating in the meeting can hear each other as provided for in the Declaration) as the Trustees may from time to time determine.

The first meeting shall be held no earlier than 15th Dec 2019 and no later than 30 June 2020.

3. **Special Meetings.** Special meetings of the Trustees may be held at any time and at any place (including for these purposes, by means of conference telephone circuit, video conferencing or similar communications equipment by means of which all persons participating in the meeting can hear each other as provided for in the Declaration) designated in the call of the meeting when called by the Chair, the President or the Secretary or by two or more Trustees, sufficient notice thereof as described in Section 2.4 below being given to each Trustee by the Secretary or an Assistant Secretary or by the person calling the meeting.

4. **Notice of Special Meetings.** It shall be sufficient notice to a Trustee of a special meeting to send notice by overnight mail at least two days or by email or facsimile at least one day before the meeting addressed to the Trustee at his or her usual or last known business or residence address, email address or facsimile number as applicable, or to give notice in person or by telephone one day before the meeting. Notice may be sent on the day of the special meeting by email, facsimile or other electronic means, or given by telephone or in person, if under the circumstances the party calling the meeting deems more immediate action to be necessary or appropriate. Notice of a special meeting need not be given to any Trustee if a written waiver of notice, executed by him or her before or after the meeting, is filed with the records of the meeting, or to any member who attends the meeting without protesting prior thereto or at its commencement the lack of notice to him or her. Neither notice of a meeting nor a waiver of a notice need specify the purposes of the meeting.

5. **Quorum and Manner of Acting.** At any meeting of the members, most of the members shall constitute a quorum if the chair is present. Any meeting may be adjourned from time to time by most of the votes cast upon the question, whether or not a quorum is present, and the meeting may be held as adjourned without further notice. A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal from the meeting of one or more members if any action taken is approved by at least most of the required quorum for that meeting. The Declaration contains further provisions relating to the manner of acting by the members.

CONFIDENTIAL

DEFHC_01518397

6. **Actions by Consent.** If in accordance with the provisions of the Declaration any action is taken by the Trustees by a written consent of fewer than all of the members, prompt notice of any such action shall be furnished to each Trustee who did not execute such written consent, provided that the effectiveness of such action shall not be impaired by any delay or failure to furnish such notice. Any written consents may be executed and delivered by electronic means. The Declaration contains further provisions relating to action by consent of the Trustees.

7. **Counsel and Experts.** The Trustees who are not Interested Persons may, by vote of a majority of such Trustees, at the Trust's expense, hire such employees and retain such counsel, accountants, appraisers or other experts or consultants whose services such Trustees may, in their discretion, determine to be necessary or desirable from time to time, including services to one or more committees established by the Trustees, and may execute any agreements, contracts, instruments or other documents in connection therewith.

8. **Voting rights.** The members gain the following voting rights as defined below:

- Registered Grantor                           25 Points
- Act as a listed member                       10 Points
- Act as a Trustee                             25 Points
- Degrees:
  Hold a Bachelor degree[1] or above           10 Points          (Two Max)
  Hold a Masters degree or above               20 Points          (Two Max)
  Hold a Doctorate degree[2] or above          50 Points
- (Formally) Support[3] a "Green Group"        -25 Points         (E.g.
  Greenpeace)
- Age[4]        16 +                           10 Points
                18 +                           15 Points
                21 +                           20 Points
                25 +                           25 Points
                40 +                           30 Points
- Work for a "Trust Company"                   25 Points

A "Trust Company" is defined as a company founded by Dr Craig Wright or significantly owned by the trust (greater than 30% total shareholding).

---

[1] Note: A Degree musty be from an accredited University and the Chairman can (prior to enrolment at a meeting of the members) define Universities and subjects that are excluded from this list.
[2] Points are not continually cumulative – a PhD is 50 Points and not a sum of other degrees.
[3] This includes membership and public endorsement and funding thereof.
[4] Only One Age Vote Applies.

20 | P a g e

## SCHEDULE "F"

In case of any party being kidnapped (or otherwise taken), funds may not be used to pay terrorists and like-minded criminals.

The Trust shall authorise a payment for the return of the member taken as follows:
- Mercenaries shall be allowed to investigate the parties involved in any such kidnapping and a payment of not more than 10 million USD (indexed as at Jan 2020) shall be provided in escrow for the capture (dead) of each directly involved party, the children and spouses of such a party and the parents of such involved parties.
- A separate schedule for the process of the deployment shall be covered and made available only in selected jurisdictions and shall not be made available to members other than in paper copy.
- NO alterations to this clause are allowable even under super majority vote.

Duress maty not be used in the allocation of funds in this trust.

21 | P a g e

CONFIDENTIAL

DEFHC_01518399

SCHEDULE "G"

COMMITTEES

1. **Establishment and Authority**. The Declaration contains provisions relating to the establishment of committees (and sub-trusts) by the Trustees. Each committee shall have such powers and authority as shall be authorised by the Trustees, and may fix its own rules and procedures, and adopt its own charter, in each case subject to approval by the Trustees. The Trustees may abolish any such committee at any time in their sole discretion unless the committee is voted in by a super-majority of members. Any committee to which the Trustees delegate any of their powers shall maintain records of its meetings and shall report its actions to the Trustees. The Trustees shall have the power to rescind any action of any committee, but no such rescission shall have retroactive effect. The Trustees shall have the power at any time to fill vacancies in the committees. The Trustees may designate one or more Trustees as alternate members of any committee who may replace any absent member at any meeting of the committee.

2. **Quorum; Voting**. Unless the specific rules and procedures adopted by a committee in accordance with Schedule G – 1 provide otherwise, a majority of the members of any committee of the Trustees shall constitute a quorum for the transaction of business, and any action of such a committee may be taken at a meeting by a vote of a majority of the members present (a quorum being present) or evidenced by one or more writings signed by such a majority (which writings may be executed and/or delivered by electronic means). Members of a committee may participate in a meeting of such committee by means of a conference telephone circuit, video conferencing or similar communications equipment by means of which all persons participating in the meeting can hear each other at the same time and participation by such means shall constitute presence in person at a meeting.

CONFIDENTIAL

DEFHC_01518400

SCHEDULE "H"

OFFICERS

1. **Enumeration; Qualification.** The officers of the Trust shall be a Chairman, a President, a Treasurer, a Secretary, and such other officers as the Trustees from time to time may in their discretion elect, appoint or authorize in accordance with Schedule H-2 below. Any officer of the Trust may but need not be a Trustee or a Member. Any two or more offices, except those of President and Vice-President, may be held by the same person.

2. **Election.** The President, the Treasurer and the Secretary shall be elected by the Trustees upon the occurrence of a vacancy in any such office. Other officers, if any, may be elected or appointed by the Trustees at any time, or the Trustees may delegate to the President the power to appoint such other officers as the Trustees shall at any time or from time to time deem advisable. Vacancies in any such other office may be filled at any time. Each officer shall hold office at the pleasure of the Trustees.

3. **Powers.** Subject to the other provisions of these By-Laws, each officer shall have, in addition to the duties and powers herein and in the Declaration set forth, such duties and powers as are commonly incident to the office occupied by him or her as if the Trust were organized as a Delaware statutory trust and such other duties and powers as the Trustees may from time to time designate.

4. **Chairman.** The Chairman has an initial Veto over Trust decisions.  The Chair is to preside over Trust meetings.

The Trustees may elect from their own number a Chair to hold office until his or her successor shall have been duly elected and qualified or until his or her earlier death, resignation, removal or disqualification. The Chair (or, if the Chair is unable to attend any such meeting, the Chair's designee) shall preside at all meetings of the Trustees and the Shareholders. The Chair shall have such other duties and powers as the Trustees may from time to time determine.

4. **President.** Unless the Trustees otherwise provide, the President shall be the chief executive officer of the Trust.

5. **Treasurer.** Unless the Trustees provide otherwise, the Treasurer shall be the chief financial and accounting officer of the Trust, and shall, subject to the provisions of the Declaration and to any arrangement made by the Trustees with a custodian, investment adviser or manager, or transfer, shareholder servicing or similar agent, be in charge of the valuable papers, books of account and accounting records of the Trust, and shall have such other duties and powers as may be designated from time to time by the Trustees or by the President.

6. **Secretary.** The Secretary shall record all proceedings of the Beneficiaries and the Trustees in books to be kept therefor. In the absence of the Secretary from any meeting of the shareholders or Trustees, an Assistant Secretary, or if there be none or if he or she is absent, a temporary Secretary chosen at such meeting shall record the proceedings thereof in the aforesaid books.

7. **Resignations and Removals.** Any officer may resign at any time by written instrument signed by him or her and delivered to the Chair, the President or the Secretary or to a meeting

CONFIDENTIAL

DEFHC 01518401

of the Trustees. Such resignation shall be effective upon receipt unless specified to be effective at some other time. The Trustees may by action of a majority of the Trustees then in office, remove any officer with or without cause. Except to the extent expressly provided in a written agreement with the Trust, no officer resigning and no officer removed shall have any right to any compensation for any period following his or her resignation or removal, or any right to damages on account of such removal.

CONFIDENTIAL

DEFHC_01518402

SCHEDULE "I"

MISCELLANEOUS

1. **Books and Records.** The books and records of the Trust and any Series thereof, including the member ledger or ledgers, may be kept in in a location and at such office or offices of the Trust and/or its agents as may from time to time be determined by the officers of the Trust.

2. **Access to Book and Records.** The members shall only have such right to inspect the records, documents, accounts and books of the Trust or any Series thereof as may be granted from time to time by the Trustees in their sole discretion.

3. **Seal.** The Trustees may adopt a seal of the Trust which shall be in such form and shall have such inscription thereon as the Trustees may from time to time prescribe, but unless otherwise required by the Trustees, the seal shall not be necessary to be placed on, and its absence shall not impair the validity of, any document, instrument or other paper executed and delivered by or on behalf of the Trust.

4. **Execution of Papers.** All deeds, leases, contracts, notes and other obligations made by the Trustees shall be signed by the President, any Vice President elected by the Trustees, the Treasurer, the Secretary or any other officer elected by the Trustees, except as the Trustees may generally or in particular cases authorize the execution thereof in some other manner, or as otherwise provided in the trust rules.

5. **Severability.** The provisions of these rules are severable. If the Trustees determine, with the advice of counsel, that any provision hereof conflicts local laws, the conflicting provision shall be deemed never to have constituted a part of these rules; provided, however, that such determination shall not affect any of the remaining provisions of these rules or render invalid or improper any action taken or omitted prior to such determination. If any provision hereof shall be held invalid or unenforceable in any jurisdiction, such invalidity or unenforceability shall attach only to such provision only in such jurisdiction and shall not affect any other provision of these rules.

6. **Proxies.** At any meeting of members, any holder of voting rights (Schedule "E") entitled to vote thereat may vote by proxy, provided that no proxy shall be voted at any meeting unless it shall have been placed on file with the Secretary, or with such other officer or agent of the Trust as the Trustees or officers may direct, for verification prior to the time at which such vote shall be taken. In connection with the solicitation of proxies by the Trustees, a member may give instructions through telephonic or electronic methods of communication or via the Internet for another person to execute his or her proxy, if in each case such method has been authorized by the Trust by its officers, and pursuant in each case to procedures established or approved by the officers of the Trust or agents employed by the Trust for such purpose as reasonably designed to verify that such instructions have been authorised by such member; and the placing of a member's name on a proxy pursuant to such instructions shall constitute execution of such proxy by or on behalf of such member. Proxies may also be submitted via facsimile if such method has been authorized by the Trust by its officers, and pursuant to procedures established or approved by the officers of the Trust or agents employed by the Trust for such purpose. Pursuant to a vote of the Trustees, proxies may be solicited in the name of one or more Trustees and/or one or more of the officers of the Trust.

CONFIDENTIAL

DEFHC_01518403

A proxy purporting to be executed by or on behalf of a member shall be deemed valid unless challenged at or prior to its exercise, and the burden of proving invalidity shall rest on the challenger. If the holder of any such vote is a minor or a person of unsound mind, and subject to guardianship or to the legal control of any other person as regards the charge or management of such voting right, such right may be voted by such guardian or such other person appointed or having such control, and such vote may be given in person or by proxy. Unless otherwise specifically limited by their terms, proxies shall entitle the holder thereof to vote at any postponement or adjournment of a meeting, and no proxy shall be valid after eleven months from its date. A member who has submitted a proxy may revoke or withdraw the proxy with respect to any matter to be considered at a meeting or any adjournment or postponement thereof if such revocation or withdrawal is properly received prior to the vote on that matter, by delivering a duly executed proxy bearing a later date or by attending the meeting or the adjournment or postponement thereof and voting in person on the matter or matters.

**7. Conduct of Meetings.** For any matter to be properly before any meeting of members, the matter must be either specified in the notice of meeting given by or at the direction of a majority of the Trustees then in office or otherwise brought before the meeting by or at the direction of the Chair or other presiding officer.

CONFIDENTIAL

DEFHC 01518404



Date:  06th July 2017
Our Ref:  FSA-ITS031

**LEGACY TRUST COMPANY LIMITED**
**Suite 103**
**Premier Building,**
**Victoria, Mahe**

Dear Sirs,

<u>**REGISTRATION OF DECLARATION OF TRUST**</u>

This is to certify that the declaration of trust pursuant to section 75 of the International Trust Act, 1994 submitted to this office, pertaining to *THE TULIP TRUST* is hereby registered on this *06th July 2017* and is assigned the reference number *T000712*.

Yours faithfully,

Randolf Samson
<u>Director of Registry & Capital Markets & Collective</u>
<u>Investments Schemes</u>

FINANCIAL SERVICES AUTHORITY

CONFIDENTIAL

DEFHC 01518405

## DECLARATION OF TRUST

To: Craig Steven Wright holder of passport number ▓▓▓▓▓ of 210 Somerset Road, Wimbledon , London , SW19 5JE, UK ("the Beneficial Owner").

We, Equator Consultants AG of Suite B8, Orion Mall, Palm Street, Victoria , Mahe, Seychelles HEREBY UNDERTAKE AND AGREE AS FOLLOWS:

1. That we hold 100,000 shares of USD 1 in Tulip Trading Limited and are the registered holder of the shares in our name as nominee and trustee for the Beneficial Owner.

2. That we undertake and agree not to transfer, deal with or dispose of the shares save as the Beneficial Owner may from time to time direct.

3. That we undertake to hold in safe custody on behalf of the Beneficial Owner the Certificate for the shares together with a share transfer form thereof executed by us in blank and at any time and as the Beneficial Owner may direct to complete such share transfer form by inserting therein the name or names of any transferee or transferees and the date of the transfer and to complete the same in any other necessary particular and to procure the registration on behalf of the Beneficial Owner of such a transfer.

4. That we irrevocably assign to the Beneficial Owner the right to receive any dividends and profits which may be paid in respect of the Shares.

5. That we will exercise our voting power as the holder of the Shares only in such a manner and for such purposes as the Beneficial Owner may from time to time direct or determine and without liability on our part should the Beneficial Owner fail or neglect to so direct or determine.

6. The Beneficial Owner if to indemnify us against all actions, claims, costs, demands, loss or damage of any kind whatsoever and wheresoever arising out of or in connection with the holding of the shares excepting only actions, costs, demands, loss or damage arising from any fraud or breach of trust by us. In particular, but without prejudice to the generality of the foregoing, the Beneficial Owner undertakes to indemnify us against all or any of the aforesaid matters arising directly or indirectly by reason of or following upon dissolution of the Company in which the shares are held.

Dated this ......16th...... day of...... December ......2015

Denis Bosire Mayaka
For: Equator Consultants AG

CONFIDENTIAL

