# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

November 27, 2023

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  22-11150-GG
Case Style: Ira Kleiman v. Craig Wright
District Court Docket No: 9:18-cv-80176-BB

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

Enclosure(s)

MDT-1 Letter Issuing Mandate

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————

No. 22-11150

————————————

IRA KLEIMAN,
as the Personal Representative of the
Estate of David Kleiman,

Plaintiff-Appellant,

W&K INFO DEFENSE RESEARCH, LLC,

Plaintiff,

*versus*

CRAIG WRIGHT,

Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:18-cv-80176-BB

2                                                    22-11150

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion is-
sued on this date in this appeal is entered as the judgment of this
Court.

Entered: October 26, 2023

For the Court: DAVID J. SMITH, Clerk of Court


ISSUED AS MANDATE:  November 27, 2023

[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 22-11150

Non-Argument Calendar

————————————————

IRA KLEIMAN,
as the Personal Representative of the
Estate of David Kleiman,

Plaintiff-Appellant,

W&K INFO DEFENSE RESEARCH, LLC,

Plaintiff,

*versus*

CRAIG WRIGHT,

Defendant-Appellee.

————————————————

2                          Opinion of the Court                          22-11150

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:18-cv-80176-BB

_____

Before WILSON, ROSENBAUM, and LUCK, Circuit Judges.

PER CURIAM:

This appeal involves an ownership dispute stemming from the origins of the cryptocurrency Bitcoin. The Estate of David Kleiman ("Estate") sued Craig Wright, an Australian computer scientist and self-described inventor of Bitcoin, claiming that (David) Kleiman and Wright, who were friends, formed a partnership to develop the original Bitcoin protocol, to mine bitcoin, and to develop related blockchain technology. The Estate asserts that it is entitled to half of the bitcoins—purportedly worth billions—mined through the alleged partnership. A jury ultimately found that no partnership existed and returned a verdict against the Estate, which now appeals.[1]

On appeal, the Estate asserts that the verdict should not stand for three reasons. First, in the Estate's view, the district court's instructions on partnership formation did not accurately reflect current law under Florida's Revised Uniform Partnership Act of 1995 ("FRUPA"), Fla. Stat. §§ 8001 *et seq.* Second, according to

_____

[1] The jury also returned a verdict in favor of plaintiff W&K Info Defense Research, LLC, on its conversion claim in the amount of $100 million. That verdict is not at issue, and W&K is not a party to this appeal.

the Estate, the court applied the wrong legal standard and abused its discretion when it vacated sanctions imposed by the magistrate judge that would have deemed as true essential factual elements of the Estate's partnership claim.  And third, the Estate maintains that the district court abused its discretion by denying a new trial based on opposing counsel's repeated violations of an *in limine* order prohibiting evidence of the "sibling relationship" between David Kleiman and Ira Kleiman, David's brother and the personal representative of the Estate.  We consider each argument in turn, but ultimately, we affirm.

## I. JURY INSTRUCTIONS

In evaluating jury instructions, our standard of review is "simultaneously *de novo* and deferential."  *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014).  That is, "[w]e review jury instructions *de novo* to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party but give the district court wide discretion as to the style and wording employed."  *Id.* (quotation marks omitted).

Under longstanding Florida law, a "partnership is created only where both parties contribute to the labor or capital of the enterprise, have a mutuality of interest in both profits and losses, and agree to share in the assets and liabilities of the business."  *Williams v. Obstfeld*, 314 F.3d 1270, 1275 (11th Cir. 2002) (quotation marks omitted); *see Kislak v. Kreedian*, 95 So. 2d 510, 514 (Fla. 1957).  In other words, a partnership "must consist of the following elements: (1) a common purpose; (2) a joint proprietary interest in the

subject matter; (3) the right to share profits and duty to share losses; and (4) joint control or right of control." *Williams*, 314 F.3d at 1275–76. "These requirements are strictly construed and the absence of even one is fatal to the finding of a partnership." *Dreyfuss v. Dreyfuss*, 701 So. 2d 437, 439 (Fla. 3d DCA 1997); *see Austin v. Duval Cnty. Sch. Bd.*, 657 So. 2d 945 (Fla. 1st DCA 1995).

The Estate admits that the district court's instructions to the jury were consistent with this caselaw, notably *Williams* and *Dreyfuss*. But, in the Estate's view, these decisions are not controlling because the alleged partnerships at issue predated FRUPA, which took effect in 1995. The Estate maintains that FRUPA replaced the strict common-law test, which required four or five factors to be proven, "with a totality of the circumstances test, under which no single factor is dispositive."

Florida law requires statutes enacted "in derogation of the common law [to] be strictly construed." *Ady v. Am. Honda Fin. Corp.*, 675 So. 2d 577, 581 (Fla. 1996). "[A]ny legislative intent either to abolish or to limit the common law must indicate such change clearly, or else the rule of common law stands." *Larmoyeux v. Montgomery*, 963 So. 2d 813, 820 (Fla. 4th DCA 2007).

Here, the Estate has failed to show that FRUPA abrogated the common law or otherwise changed the rules of partnership formation relevant to its claim. FRUPA's general rules for partnership formation are largely unchanged from the Uniform Partnership Act ("UPA"), which Florida adopted in 1972. *Pinellas Cnty. v. Lake Padgett Pines*, 333 So. 2d 472, 474 (Fla. 2d DCA 1976); *see generally*

John Larson, *Florida's New Partnership Law: The Revised Uniform Partnership Act and Limited Liability Partnerships*, 23 Fla. St. U. L. Rev. 201, 205–06 (1995).

For instance, the Estate relies on FRUPA's definition of a partnership: "[T]he association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership." Fla. Stat. § 620.8202(1). But UPA similarly defined a partnership as "an association of two or more persons to carry on as co-owners a business for profit." Larson, *supra* at 205 n.9. FRUPA merely added the clause, "whether or not the persons intend to form a partnership," and "recast" UPA's "definition" as an "operative rule of law." Fla. Stat. § 620.8202, cmt. n.1. Notably, "[n]o substantive change in the law [was] intended" by these modifications. *Id.*

The Estate also cites FRUPA's profit-sharing presumption. Among its rules for "determining whether a partnership is formed," FRUPA provides that "[a] person who receives a share of the profits of a business is *presumed* to be a partner." Fla. Stat. § 620.8202(3)(c) (emphasis added). That marked a changed from UPA, which stated a person's receipt of profits of a business was "prima facie evidence" that the person was a partner. Larson, *supra* at 205 n.9. Thus, FRUPA "recast[s]" the sharing of profits as a "rebuttable presumption of a partnership, a more contemporary construction, rather than as prima facie evidence thereof." Fla. Stat. § 620.8202, cmt. n.3. Beyond that, though, "no substantive change [was] intended" to the profit-sharing rule. *Id.*

These minor revisions cannot sustain the Estate's claim that FRUPA substituted a new test for determining partnership formation, let alone clearly so. *See Larmoyeux*, 963 So. 2d at 820. After all, "[l]ike its predecessor, [F]RUPA makes no attempt to answer in every case whether a partnership is formed." Fla. Stat. § 620.8202, cmt. n.3. While FRUPA revised UPA's partnership definition to clarify that intent to form a partnership is not relevant to formation, intent is not one of the four required factors *Williams* identifies for establishing a partnership. 314 F.3d at 1275–76. It does not follow that, because intent is not relevant, courts must evaluate the other factors under a totality-of-the-circumstances approach.

Nor is such an approach required because FRUPA "recast" the sharing of profits as a "rebuttable presumption of a partnership, . . . rather than as prima facie evidence thereof." Fla. Stat. § 620.8202, cmt. n.3. As the party asserting its existence, the Estate bore the burden of establishing the formation of a partnership by a preponderance of the evidence. *See, e.g.*, *Watson Realty Corp. v. Quinn*, 435 So. 2d 950, 950 (Fla. 1st DCA 1983) ("[P]laintiff's burden of proof is that of a preponderance or greater weight of the evidence."). And the application of a rebuttable presumption is not inconsistent with requiring a jury to apply the four partnership factors listed above, since it's up to the jury to determine whether any such presumption has been rebutted.

Notably absent from the Estate's briefing is any Florida caselaw that supports its position. The Estate cites one Florida case that cites FRUPA but is otherwise silent about the issues here. *See*

*Rafael J. Roca, P.A. v. Lytel & Reiter, Clark, Roca, Fountain & Williams*, 856 So. 2d 1, 5–6 (Fla. 4th DCA 2003) (distinguishing but not criticizing *Dreyfuss*).  The Estate's other cases that do address similar issues are from out of state and of limited persuasive value.[2] Even assuming we would endorse a more flexible approach as a matter of first impression, we are governed by existing Florida law. And we see no indication that Florida courts have moved away from the common-law test.

For these reasons, FRUPA did not abrogate prior caselaw on partnership formation insofar as it required proof of certain factors. *See Larmoyeux*, 963 So. 2d at 820.  Accordingly, we reject the Estate's claim that the district court erred in instructing the jury on partnership formation.

## II.  SANCTIONS

"We review a district court's order denying a motion for sanctions for abuse of discretion." *Fuentes v. Classica Cruise Operator Ltd., Inc.*, 32 F.4th 1311, 1321 (11th Cir. 2022).  This standard gives the district court a "range of choice" so long as the court does not rely on an erroneous legal standard or make a clear error of judgment.  *Id.*; *see Higgs v. Costa Crociere S.P.A. Co.*, 969 F.3d 1295, 1304

---

[2] For example, *Ingram v. Deere* concerns the Texas Revised Partnership Act, which expressly listed five factors that indicated partnership formation and therefore "contemplate[d] a less formalistic and more practical approach to recognizing the formation of a partnership."  288 S.W.3d 886, 895 (Tex. 2009). No similar list is contained in FRUPA, so we cannot draw a similar inference.

(11th Cir. 2020).  "In other words, a district court has broad, yet not unbridled, discretion in deciding whether to impose evidentiary sanctions." *Fuentes*, 32 F.4th at 1321 (quotation marks omitted).

## A. Background

During litigation, the Estate sought discovery from Wright about his bitcoin holdings, which it believed were relevant to establish the universe of bitcoin mined during the alleged partnership between David Kleiman and Wright.  A magistrate judge broadly agreed and, on March 14, 2019, ordered Wright to produce a list of his bitcoin holdings as of the last day in 2013, the year David died.

Wright resisted, asserting that the information was impossible to produce.  The gist of his position, as developed over several filings and in testimony at an evidentiary hearing, was as follows.  In 2011 or 2012, Wright transferred ownership of all bitcoin he had mined or acquired or would acquire to the Tulip Trust, of which he was both a trustee and beneficiary.  Information about the Trust's bitcoin was locked in an encrypted file protected by a "Shamir's Secret Sharing Algorithm"—an algorithm created by Adi Shamir to divide a secret, such as a private encryption key, into multiple parts.  The key to the encrypted file was split into fifteen "key slices" and distributed through the Trust.  Wright controlled seven of the eight key slices required to access the bitcoin address information, and so was without access on his own.  Nonetheless, Wright indicated that, based on an arrangement with David before his death, he expected to receive another key slice by bonded courier in 2020.

Following an evidentiary hearing on the Estate's motion to compel, during which Wright testified, the magistrate judge entered an order imposing sanctions against Wright under Rule 37, Fed. R. Civ. P.  The magistrate judge completely rejected Wright's story of his inability to comply, finding that he had offered willfully false testimony, supported by fraudulent documents, about the Trust and the encrypted file as "part of a sustained and concerted effort to impede discovery into his bitcoin holdings."

The magistrate judge then turned to the "question of a proper remedy."  The magistrate judge found that Wright's "willful and bad faith pattern of obstructive behavior" had prejudiced the Estate by preventing it from obtaining evidence relevant to its partnership claim.  Finding that "[n]o lesser sanction would suffice," the magistrate judge awarded reasonable expenses and attorney's fees and "deem[ed] the following facts to be established for purposes of this action" (the "Deemed Facts"):

> (1) Dr. Wright and David Kleiman entered into a 50/50 partnership to develop Bitcoin intellectual property and to mine bitcoin;
>
> (2) any Bitcoin-related intellectual property developed by Dr. Wright prior to David Kleiman's death was property of the partnership,
>
> (3) all bitcoin mined by Dr. Wright prior to David Kleiman's death ("the partnership's bitcoin") was property of the partnership when mined; and

> (4) Plaintiffs presently retain an ownership interest in
> the partnership's bitcoin, and any assets traceable to
> them.

The magistrate judge also struck certain affirmative defenses to conform to the Deemed Facts.

Wright appealed to the district court, arguing that the magistrate's judge's order was without evidentiary support, exceeded the scope of the matters before the magistrate judge, and would deprive Wright of his rights to due process and a fair trial.

In an order entered on January 10, 2020, the district court denied relief in part and granted relief in part. The court agreed with the magistrate judge's decision to discredit Wright's testimony, which was "the sole evidence put forward to establish [his] claim of impossibility."[3] Concluding that Wright had "willfully obstructed" the discovery process and denied the Estate evidence relevant to its claim, the court found that sanctions were warranted in the form of reasonable attorney's fees and expenses.

But the district court agreed with Wright that the sanctions deeming certain facts as true, and striking certain affirmative defenses as a result, were "improperly imposed." The court stated that, in its view, the sanctions were not "specifically related to the

---

[3] The district court also stated that, even if his testimony was true, Wright still failed to show he made "in good faith all reasonable efforts to comply" with his discovery obligations, warranting sanctions.

particular discovery abuse at issue," and did little to "cure" that discovery abuse—that is, Wright's failure to identify the extent of his bitcoin holdings.  Accordingly, the court found that these sanctions were "not proper."

Notably, the district court agreed to "indulge" Wright's representations that a bonded courier could soon arrive with the key slices necessary to generate a list of his bitcoin holdings.  The court indicated that, if "this mysterious figure has appeared from the shadows" and Wright produced a list of his holdings, then no additional sanctions would be imposed.  But if the courier did not arrive, and the Estate was not given access to information "directly relevant" to their claims, the court found that "additional sanctions would be warranted."  The court specifically noted that it would inform the jury of Wright's failure to disclose the information sought by the Estate, extend the discovery period, and consider any renewed discovery requests by the Estate.

Just four days later, Wright filed a notice stating that "a third party has provided the necessary information and key slice to unlock the encrypted file," and that he had "produced a list of his bitcoin holdings, as ordered by the [m]agistrate [j]udge, to plaintiffs today."

After discovery closed and Wright had moved for summary judgment, the Estate filed an "Omnibus Sanctions Motion."  The Estate accused Wright of an ongoing and unrepentant campaign of forgery, perjury, and obstruction, making a mockery of the proceeding and preventing the Estate from proving its claims.  The

Estate requested that the district court invoke its inherent authority to sanction Wright by imposing judgment by default, or by effectively reinstating the Deemed Facts.

In a June 2020 order, the district court reviewed the Estate's allegations in detail and denied the motion for sanctions. The court was sympathetic to the Estate, stating that it depicted "unsettling issues" about whether Wright had "committed perjury, produced forgeries, and engaged in judicial abuse" since the court's January 2020 order. But the court explained that "significant factual disputes abound" over these issues, which would ordinarily be within the province of the jury to decide, and it found insufficient cause to remove the case from the jury. The court also declined to impose lesser sanctions.

### B.  Discussion

The Estate contends that the district court abused its discretion when it vacated the Deemed Facts sanctions that the magistrate judge imposed. In support of this contention, the Estate claims that the court applied an erroneous legal standard that conflicts with Rule 37, and that, even if it applied the correct standard, the court failed to account for the prejudice to the Estate's case.

We start with a point of clarification. Although the Estate references the June 2020 order denying its omnibus sanctions motion, and the allegations made therein, the Estate does not plainly and prominently appeal that ruling. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("A party fails to adequately brief a claim when he does not plainly and prominently

raise it, for instance by devoting a discrete section of his argument to those claims." (quotation marks omitted)).  Rather, the substance of its argument relates almost entirely to the January 2020 order vacating the Deemed Facts sanctions imposed by the magistrate judge.  Accordingly, the Estate has abandoned any appeal of the June 2020 ruling.  *See id.*

Thus, this appeal concerns only the January 2020 ruling.  As to that ruling, the district court did not abuse its discretion by vacating sanctions that the magistrate judge imposed that would have deemed as true essential factual elements of the Estate's partnership claims.  The Estate has not shown that the court relied on an erroneous legal standard or made a clear error of judgment.

Rule 37(b) gives "district judges broad discretion to fashion appropriate sanctions for violation of discovery orders." *Consumer Fin. Prot. Bureau v. Brown*, 69 F.4th 1321, 1330 (11th Cir. 2023) (cleaned up).  Such sanctions may include "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims," or "striking pleadings in whole or in part."  Fed. R. Civ. P. 37(b)(2)(A).

"The broad discretion of the district court to manage its affairs is governed, of course, by the most fundamental safeguard of fairness: the Due Process Clause of the Fifth Amendment." *Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1151 (11th Cir. 2006).  "To comply with the Due Process Clause, a court must impose sanctions that are both 'just' and 'specifically related to the

particular 'claim' which was at issue in the order to provide discovery." *Id.*

First, we are not convinced that the district court relied on an erroneous legal standard. The court accurately quoted and described *Serra Chevrolet*, where we vacated a Rule 37 sanction on due-process grounds for lack of a "relationship with the discovery abuse," not just the claim more broadly. 446 F.3d at 1152.

Moreover, the district court's order reflects that its sanctions decision was an exercise of its broad discretion in discovery matters, not a determination that the Deemed Facts sanctions necessarily violated due process. The court described the sanctions as "not proper," rather than "not authorized," or the like. The court also gave Wright another chance to comply and indicated it would impose additional sanctions if he again failed to provide a list of his bitcoin holdings, which reflects that the court was yet to make a final sanctions decision in relation to that discovery issue.

Second, the district court did not make a clear error of judgment in vacating the magistrate judge's Deemed Facts sanctions. When the court issued its January 2020 ruling, there was a possibility, however remote, that Wright would soon comply with the magistrate judge's discovery order and provide the Estate with the information it had requested, mitigating any prejudice to its case and reducing the need for further curative measures. So it was reasonable at that time to postpone consideration of sanctions more drastic than an award of attorney's fees until it became clear

whether the Estate would receive a list of Wright's bitcoin holdings.  Then, shortly after the court's order, Wright in fact produced a list of bitcoin holdings.  While the Estate disputes the origin and authenticity of this list, with supporting evidence, those issues were raised in the Estate's omnibus sanctions motion, filed several months later.  And the Estate has not appealed the denial of that subsequent decision, as we explained above, so we will not consider those matters here.

### III.  MOTION FOR NEW TRIAL

We review a ruling on a motion for a new trial for an abuse of discretion.  *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1255 (11th Cir. 2016).  "Deference to the district court is particularly appropriate where a new trial is denied and the jury's verdict is left undisturbed."  *Id.* (quotation marks omitted).

A party is entitled to a new trial where opposing counsel's misconduct "impaired a substantial right of the objecting party."  *Ruiz v. Wing*, 991 F.3d 1130, 1141 (11th Cir. 2021) (quotation marks omitted).  "Inappropriate statements made by counsel will not justify a new trial unless the remarks were such as to impair gravely the calm and dispassionate consideration of the case by the jury."  *Id.* (quotation marks omitted).  "We consider the entire argument, the context of the remarks, the objection raised, and the curative instruction."  *Id.* (quotation marks omitted).

Before trial, the district court granted the Estate's motion *in limine* to exclude "[e]vidence about Ira Kleiman's sibling-relation-

ship with [David] Kleiman." The one exception was an alleged dinner conversation on Thanksgiving in 2009 in which, according to Ira, David made comments suggesting that he was developing Bitcoin with another person. But, in the court's view, whether Ira "visited his brother at the hospital, spoke to him infrequently, or whether Mr. Kleiman mentioned Ira Kleiman to others has limited probative value but substantial capacity to cause undue prejudice." In particular, the court stated, it raised "significant concerns" that jurors would decide the case based "on how 'good' of a brother Ira [Kleiman] was or whether [he] 'deserves' Dave [Kleiman's] fortune."

The Estate maintains that opposing counsel knowingly and repeatedly violated the *in limine* order by putting improper information before the jury. On cross-examination, Wright's counsel questioned Ira about issues bearing on the sibling relationship, including whether Thanksgiving 2009 was the "last day you saw your brother in person," whether he ever "saw [David] in the hospital," whether he didn't "learn of Dave's death until a few days after his body was found," and how frequently he spoke with his brother in the "last 13 months of your brother's life." Wright's counsel also briefly showed the jury an exhibit with unredacted statements that Ira had "limited contact and personal knowledge as to David's financial affairs throughout David's life." And the jury may have seen another unredacted exhibit stating that "Ira never saw [David] at the hospital." Wright's counsel also asked another witness, a close friend of David's, how often he heard of Ira from David. The

Estate objected to some, but not all, this alleged misconduct, and the district court sustained some, but not all, the objections.

Following the adverse jury verdict, the Estate moved for a new trial, arguing that opposing counsel's violations of the order *in limine* so prejudiced the jury that a new trial was warranted. The district court disagreed and denied the motion. The court first found that the Estate had effectively waived its challenge by failing to object to some questions or to seek a remedy at trial, such as a curative instruction. The court further reasoned that, even assuming the claim of error was preserved, it was "not persuaded that [defense counsel's] purported misconduct was so prejudicial as to warrant a new trial."

We assume without deciding that the Estate properly preserved its objections to any alleged breaches of the *in limine* order. And we agree that some of the questions and comments—including whether Ira visited David at the hospital and how frequently he spoke with him—were improper and violated the *in limine* order.

That said, the district court, having overseen the 21-day trial, was in the best position to assess whether the misconduct gravely impaired the jury's dispassionate consideration of the case. Only the court "had the opportunity to hear the offensive remarks within the context of the arguments and to view their effects on the jury." *Vinson*, 12 F.4th at 1277 (quotation marks omitted).

The Estate has failed to show that deference to the district court's decision is not appropriate here. *See McGinnis*, 817 F.3d at 1255. For starters, the Estate has not addressed the court's finding

that some of the alleged misconduct concerned other "proper purposes," including "establishing the implausibility of the Thanksgiving Day 2009 conversation, relevant dates, and Ira Kleiman's personal knowledge of David Kleiman's finances."  And as the court observed, opposing counsel "never urged the jury at any point during trial . . . to decide the Estate's claims on an improper basis," and the court repeatedly instructed jurors that their decision must be based on the evidence presented, and that they must not be influenced by any sympathy for or prejudice against any party.  A jury is presumed to follow its instructions, and we see nothing to indicate that the jury in this case did otherwise.  *See United States v. Colston*, 4 F.4th 1179, 1192 (11th Cir. 2021) ("We always presume that a jury follows its instructions.").

The Estate largely rests its claim of prejudice on a juror's comments in a Law360 article after the trial.[4]  In the article published on December 23, 2021, an anonymous juror was quoted as stating, in regard to Ira, "In three years he didn't go to the hospital? That clouded my view as far as what the actual record stated."  But that same juror also recalled how two holdouts for the Estate had pored through all the evidence and "finally realized there was no positive connection with bitcoin," and that the Estate had failed to

---

[4] Carolina Bolado, *No Proof Bitcoin 'Inventor' Owed Friend, Juror Tells Law360*, Law360 (December 23, 2021), *available at* https://www.law360.com/articles/1451020/no-proof-bitcoin-inventor-owed-friend-juror-tells-law360 [https://perma.cc/4QVD-CQ4A].

convince the jury that David was involved in developing the Bitcoin technology or mining bitcoins.

The Law360 article does not present grounds to grant a new trial. First, the juror's comments were equivocal, at best, about the effect of the alleged misconduct, and they suggest that the jury would have found against the Estate regardless of whether any misconduct occurred. And second, these kinds of posttrial comments by jurors—relating to the jury's deliberations and a juror's mental processes—are not competent evidence to impeach a verdict. *See* Fed. R. Evid. 606(b)(1) ("During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment."); *see also Al-Amin v. Warden Ga. Dep't of Corr.*, 932 F.3d 1291, 1297 (11th Cir. 2019) (noting that federal law "permit[s] the introduction of jury testimony to impeach a verdict only in rare circumstances").

For these reasons, the Estate has failed to show that the district court abused its broad discretion by denying a new trial. *See McGinnis*, 817 F.3d at 1255.

## IV. CONCLUSION

In sum, we affirm the district court's judgment.

**AFFIRMED.**

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

October 26, 2023

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  22-11150-GG
Case Style:  Ira Kleiman v. Craig Wright
District Court Docket No:  9:18-cv-80176-BB

All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Although not required, non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website.

Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, <u>costs taxed against the appellant</u>.

Please use the most recent version of the Bill of Costs form available on the court's website at <u>www.ca11.uscourts.gov.</u>

<u>Clerk's Office Phone Numbers</u>

| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1A Issuance of Opinion With Costs